UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC | ) | |
| EIN: 72-1417930 | ) | Chapter 11 |
| | ) | |
|   Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | Case No. 20-12380-EEB |
| SKLARCO, LLC | ) | |
| EIN: 72-1425432 | ) | Chapter 11 |
|   Debtor. | ) | |

**MOTION FOR AUTHORITY TO USE CASH COLLATERAL**

The Debtors and Debtors in Possession, Sklar Exploration Company, LLC ("SEC") and Sklarco, LLC ("Sklarco") (collectively "Debtors"), by and through their attorneys, Kutner Brinen, P.C., move the Court pursuant to 11 U.S.C. § 363(c)(2) and Bankruptcy Rules 4001(b) and 9014 for entry of an order authorizing the Debtors' use of cash collateral, setting a final hearing on the use of cash collateral, and providing adequate protection to properly perfected secured creditors, and as grounds therefor state as follows:

**BACKGROUND**

1. The Debtors filed for relief under chapter 11 of the Bankruptcy Code on April 1, 2020. The Debtors remain Debtors-in-Possession.

2. SEC is engaged in business as an independent exploration and production company in the oil and gas industry. SEC is an operating company and does not own oil or gas properties. SEC has its principal business office in Boulder, Colorado and has additional offices in Shreveport, Louisiana and Brewton, Alabama. SEC's exploration and production activities are primarily located in East Texas, North Louisiana, South Mississippi, South Alabama and the Florida Panhandle. The Debtor is also developing properties and opportunities in the western United States.

3. Sklarco is a Louisiana limited liability company engaged in business as the owner of certain oil and gas leases and property interests in East Texas, North Louisiana, South Mississippi, South Alabama, the Florida Panhandle, and the western United States.

4. The Debtors operate out of their principal business office in Boulder, Colorado.

## A. Parties with Interests in Accounts and Revenue

5. On June 15, 2018, the Debtor entered into a Credit Agreement, Promissory Note, and Pledge and Security Agreement, along with various supporting loan documents (together the "Loan Documents") with East West Bank as Agent and Lead Arranger ("Bank") for a secured line of credit with an original maximum credit potential of $50,000,000. While the maximum credit was never advanced, the amount currently outstanding to the Debtors is approximately $22,350,000.

6. In accordance with the Security Agreement, the Debtors granted the Bank a secured interest in substantially all of the Debtor's assets, including its inventory, equipment, accounts, deposit accounts, investment property, accounts receivables and in the case of Sklarco, all of the oil and gas property interests owned by Sklarco, in general, all real and personal property. Separate mortgages have been prepared and recorded in the real estate records in those counties in which Sklarco owns properties.

7. The Bank has otherwise duly perfected its security interest in personal property by filing UCC-1 financing statements with appropriate Secretaries of State.

8. On June 15, 2018, the Debtors entered into an ISDA (International Swaps and Derivatives Association) 2002 Master Agreement ("Hedge Agreement"). The Hedge Agreement between the Debtors and the Bank allows the Debtors to enter into what are known as hedges that are designed to protect the Debtors and the Bank against decreases in the price of oil in future years. For example, if the price of oil went down in a future month, the hedge would allow the parties to sell a portion of their oil at a price that is higher than the current price of oil. Subsequent to the execution of the Hedge Agreement, the Debtor executed a number of put and call options with respect to the future sale of its oil. In the current time the hedges have tremendous value since the price of oil has decreased from its average January 2020 price of $57 per barrel to its April 1 price of approximately $20 per barrel as of the petition date. In the two successive days, the price has gone up demonstrating a currently erratic market. The options written against the Hedge Agreement are generally automatically exercised on a monthly basis however they could be exercised in bulk and currently have a value in excess of $2 million.

9. As of the Petition Date, the Debtors' books and records reflect that the Bank is owed approximately $22,350,000 on account of its secured claim.

10. Given the current national issues brought on by the coronavirus COVID 19 pandemic, the most populous states are subject to "shelter in place" or similar orders that are designed to stem the spread of the COVID 19 coronavirus, and in response the use of automobiles and economic activity has been curtailed significantly.  Since January 2020 the price of oil has also been affected by attempts by Russia and Saudi Arabia and the United Arab Emirates to gain market share by reducing the price of oil as opposed to targeting an overall price for sales by agreement between OPEC and Russia.

11. As a result of the precipitous plunge in the price of oil since January, it is difficult to evaluate the overall value of the oil and gas assets owned by Sklarco.  In January at prices in excess of $50 per barrel the Debtors had a combined value greatly in excess of the amount due to the Bank and the other creditors of the Debtors.  At current prices of approximately $20 per barrel as of the petition date and a subsequent rise the next day of approximately $5 per barrel to $25 it is challenging to value the overall price of the assets.  However, the one-year futures price of oil shows a return to prices of approximately $35 per barrel.  The Debtors believe that the only way to maximize value for creditors is to continue operations and allow the price of oil to return to more reasonable and stable levels.

12. In addition to the secured claim of the Bank the Debtors have a number of trade creditors and holders of working interests who are due funds for prior months.

**B.  Assets on the Date of Filing**

13. The Debtors' primary assets are its oil and gas properties in the case of Sklarco, receivables generated by SEC based upon its operating agreements and contracts, including the Hedge Agreements, and additional items of equipment and personal property.

14. On the Petition Date, the Debtor has cash in its Bank accounts of approximately $2,391,756.09 and its oil and gas properties and ongoing revenue based upon product sales, hedge revenue, and other assets.  A more particular view of the Debtors can be found in their Balance sheets for year end 2019 and 2018, their Income Statement and their Cash Flow Statement, all attached hereto as Exhibit A.  The information in the Exhibit A is unaudited and preliminary and will be subject to a January 2020 reserve report which is not completed yet.

15. The Debtors do conduct detailed accounting for its various producing properties

since it is required to provide such accountings to various governmental agencies and to the participants in it producing properties.

16. The Debtors must use cash collateral to continue its business operations post-petition and maintain their operations and properties. If the Debtors are not able to use cash collateral to continue to operate in the ordinary course of business, the Debtors will be forced to cease operations, resulting in the Debtors losing its contracts and risking the loss of oil and gas leases and properties.

17. Unless the Debtors are authorized to use cash collateral, the Debtors will suffer irreparable harm and injury from the inability to maintain operations.

18. The Debtors are replacing cash in the ordinary course of operations on a daily basis.

## RELIEF REQUESTED

19. The Debtors plan to continue operation of their business throughout the Chapter 11 case and propose a Plan of Reorganization which provides for the continuation of the Debtors' business. It is only through a Plan that unsecured creditors will see a recovery on account of their claims.

20. In order to pay necessary operating expenses, the Debtors must immediately use cash collateral in which the Bank, taxing authorities, or other parties (collectively the "Secured Creditors") may have an interest. The Debtors propose to use cash collateral on an interim basis until such time as the Court schedules a final hearing on the use of cash collateral. At the final hearing, the Debtors will seek relief to use cash collateral during the term of this Chapter 11 case.

21. The majority of the Debtors' revenue and available cash are derived from its oil and gas properties and its operations in the oil and gas operations market. Without the use of cash collateral, the Debtors will have insufficient funding for business operations. Therefore, the Debtors' use of cash collateral during the interim period is necessary to avoid immediate and irreparable harm to the estate. Without the use of cash collateral, the Debtors will not be able to pay employees, rent, utilities, materials and other costs associated with the performance of its contracts and the maintenance of the ownership of its oil and gas properties.

22. The Debtors will be generating accounts, cash, and cash equivalents in the course of its daily operations and will have sufficient revenue to maintain operations and preserve

assets, though value will be subject to the swing of the market for oil and gas product. Based on the recent, sudden, and unusual downward movement of the price of oil, it is expected that the price of oil will improve over time.

23. In order to provide adequate protection for the Debtors' use of cash collateral in which secured creditors hold an interest, the Debtors have proposed adequate protection for the Secured Creditors or any other creditor with a lien on cash collateral as set forth below. The proposal provides the following treatment on account of cash collateral:

a. The Debtors will provide the Secured Creditors with a post-petition lien on all post-petition accounts receivable and contracts and income derived from the operation of the business and assets, to the extent that the use of the cash results in a decrease in the value of the Secured Creditors' interest in the collateral pursuant to 11 U.S.C. § 361(2). All replacement liens will hold the same relative priority to assets as did the pre-petition liens;

b. The Debtors will only use cash collateral in accordance with the Budget attached to this Motion as Exhibit B subject to a deviation on line item expenses not to exceed 20% without the prior agreement of the Secured Creditors or an order of the Court;

c. The Debtors will keep all of the Secured Creditors' collateral fully insured in an amount consistent with pre-petition coverage;

d. The Debtors will provide the Secured Creditors with a complete accounting, on a monthly basis, of all revenue, expenditures, and collections through the filing of the Debtors Monthly Operating Reports and the same reporting as was provided on a pre-petition basis; and

e. The Debtors will maintain in normal operation their business as it existed pre-petition in order to maintain the value of the business.

24. Should the Debtors default in the provision of adequate protection, the Debtors' approved use of cash collateral will cease and the Secured Creditors will have the opportunity to obtain further relief from this Court, on notice to the Debtors.

25. The Debtors' continued operations require the ongoing use of cash collateral. By way of example, if the Debtors stop paying the other holders of overriding royalty interests,

working interests, operating costs and expenses then the Debtors' interest in oil and gas properties and in its operating agreements will be lost and/or terminated.

26. The Debtors' request to use cash collateral is made with a complete reservation of rights of secured creditors to their various claims and lien positions in and to the Debtors' assets.

27. Approval of the Debtors' use of cash collateral in accordance with this Motion is, on an interim basis and a final basis, in the best interest of the Debtors, their creditors and the estates as it will allow the Debtors to maintain ongoing business operations, allow the Debtors to generate revenue, and provide the Debtors with an opportunity to propose a meaningful Plan.

### RELIEF REQUESTED ON AN INTERIM EMERGENCY BASIS

28. Without the immediate use of cash collateral, the Debtors will not be able to fund ongoing business operations. The Debtors are filing a separate motion requesting an expedited entry of an order approving the interim use of Cash Collateral pursuant to this Motion.

WHEREFORE, the Debtors respectfully request that the Court enter an Order, authorizing the Debtors' use of cash collateral in accordance with this Motion, authorize the Debtors to provide adequate protection to the secured creditors with an interest in cash collateral in the form of that set forth herein, and for such further and additional relief as to the Court may appear proper.

DATED: April 6, 2020

Respectfully submitted,

By: /s/ Lee M. Kutner
Lee M. Kutner, # 10966
Keri L. Riley, #47605

**KUTNER BRINEN, P.C.**
1660 Lincoln Street, Suite 1850
Denver, CO 80264
Telephone: (303) 832-2400
E-mail: lmk@kutnerlaw.com
klr@kutnerlaw.com