UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC ) | |
| EIN: 72-1417930 ) | Chapter 11 |
| ) | |
|   Debtor. ) | |
| ) | |
| ) | |
| ) | Case No. 20-12380-EEB |
| SKLARCO, LLC ) | |
| EIN: 72-1425432 ) | Chapter 11 |
|   Debtor. ) | |

**MOTION TO: 1) HONOR AND PAY OVERRIDING ROYALTY, ROYALTY, AND WORKING INTEREST OBLIGATIONS; AND 2) OFFSET JOINT INTEREST BILLING OBLIGATIONS**

The Debtors and Debtors in Possession, Sklar Exploration Company, LLC ("SEC") and Sklarco, LLC ("Sklarco" and together "Debtors"), by and through their attorneys, Kutner Brinen, P.C., move the Court for entry of an Order authorizing the Debtors to: 1) honor and pay, in their sole discretion, revenue amounts owed to the holders of overriding royalty interests and working interest holders; and 2) offset joint interest billing obligations owed to SEC against cash call advances paid by working interest holders and/or revenues owed to working interest holders. In support thereof, the Debtors state as follows:

**BACKGROUND**

1. The Debtors filed for relief under Chapter 11 of the Bankruptcy Code on April 1, 2020. The Debtors remain Debtors-in-Possession.

2. SEC is a Louisiana limited liability company engaged in business as an independent exploration and production company in the oil and gas industry. SEC has its principal business office in Boulder, Colorado and has additional offices in Shreveport, Louisiana and Brewton, Alabama. SEC's exploration and production activities are located in East Texas, North Louisiana, South Mississippi, South Alabama and the Florida Panhandle. SEC is also developing opportunities in the western United States.

3. Sklarco is a Louisiana limited liability company that holds extensive oil and gas interests in East Texas, North Louisiana, South Mississippi, South Alabama, the Florida Panhandle, Wyoming, and Montana.

4. SEC operates all production facilities comprised of between 50 and 60 wells and two gas plants. In each of the properties operated by SEC, there are different interests held by a variety of owners, including overriding royalty interests ("ORRIs"), royalty interests, and working interests.

5. "An 'overriding royalty' is an interest in oil and gas produced at the surface, *free of the expense of production*, and carved from the working interest held under an oil and gas lease, rather than from the royalty reserved by a landowner on the severance of the mineral estate." (emphasis in original) *In re Breitburn Energy, LP*, 571 B.R. 59, 65 (Bankr. S.D.N.Y. 2017)(quoting *T-Vestco Litt-Vada v. Lu-Cal One Oil Co.*, 651 S.W.2d 284, 291 (Tex. App. 1983)).

6. Owners of the properties that have leased their mineral interests to Sklarco, SEC, or other mineral lessees generally receive a royalty interest in lieu of regular monthly rental payments. Other parties may have received ORRIs through subsequent transfers or assignment by the lessor, or by agreement with Sklarco or SEC.

7. In addition to ORRIs and royalty interests, there are also a number of parties holding working interests in the wells. Working interests are generally created through joint operating agreements between the respective parties and SEC, and receive a portion of the revenue after payment to ORRIs and royalty interests. Unlike royalty interests and ORRIs, working interests also required to contribute towards the payment of expenses to the operator through payment of joint interest billing obligations ("JIBs").

8. A number of the holders of working interests provided cash call advances to pay for the drilling expenses of the well and/or the ongoing operations of the well. SEC treats these payments as a liability, and in the ordinary course of business, JIBs owed to SEC are offset against the cash call advances, reducing the cash call advance liability owed to the holders of working interests. If no cash call liability exists, the joint operating agreements generally provide SEC the right to offset JIBs against the revenue payables to the working interest holders. All offsets against cash call advances or revenues are accounted for in monthly billing statements provided to working interest holders.

9. In the ordinary course of business, SEC collects and sells all produced oil, gas, and gas condensate, collects revenue, and distributes revenue to the holders of interests in the operated properties ("Revenue Payables").

10. On the Petition Date, SEC owed a total in $1,911,423.41 in Revenue Payable, comprised of $1,311,537.36 to the working interest holders, $23,886.52 to the holders of ORRIs, and $575,990.53 to the holders of royalty interests. A full list of Revenue Payables is attached hereto as Exhibit A.

11. In addition to the Revenue Payables, SEC owes approximately $7,023,910.44 in cash call advance liabilities from working interest holders.

12. SEC's ability to manage these interests and ensure that the holders of such interests are paid is critical to SEC's ability to operate the properties, maintenance of Sklarco's oil and gas leases, and maintaining the Debtors' ongoing business operations.

## RELIEF REQUESTED

13. To ensure that the Debtors can maintain their ongoing business operations, the Debtors seek authorization to honor and pay, in their sole discretion, the Revenue Payables owed on the Petition Date and to offset JIBs from any cash call advance liabilities and/or revenue payments.

### A. Payment of Revenue Payables

14. Pursuant to 11 U.S.C. § 541(a)(1), the property of the debtor's estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." If the debtor holds "only legal title and not an equitable interest," the debtor's estate includes only such bare legal title, and does not extend to the equitable ownership of such property. 11 U.S.C. § 541(d).

15. Property held in trust by the debtor for the benefit of others is not part of the bankruptcy estate. *In re First Capital Mortg. Loan Corp.*, 917 F.2d 424, 426 (10th Cir. 1990)(citing *Begier v. Internal Revenue Serv.*, 496 U.S. 53 (1990)).

16. Numerous courts have held that the debtor collecting proceeds from oil and gas operations for the benefit of non-operating owners of such properties has only bare legal title to such proceeds, and does not obtain an equitable interest in the proceeds. *E.g., Dahlberg v. ConocoPhillips Co. (In re Reichmann Petroleum Corp.)*, 434 B.R. 790, 797-98 (Bankr. S.D. Tex. 2010)(holding that revenue attributable to a working interest was subject to a constructive trust in

favor of the working interest holder and not an asset of the debtor's estate); *Vess Oil Corp. v. SemCrude, L.P. (In re SemCrude, L.P.)*, 418 B.R. 98, 106 (Bankr. D. Del. 2009)("[F]unds in the Defendants' possession held for third parties . . . are not part of the Defendants' bankruptcy estates."); *In re MCZ, Inc.*, 82 B.R. 40, 42 (Bankr. S.D. Tex. 1987) (holding that the debtor's possessory interest in revenues attributable to an interest holder was that of a bailee").

17. The revenues received by SEC are collected for the benefit of the holders of ORRIs, royalty interests, and working interests in the operated properties, including Sklarco. Because SEC obtains no more than bare legal title to the revenues, the revenues are not assets of SEC's estate. However, the revenue due to Sklarco is generally retained by SEC as operating capital.

18. With respect to royalty interests and working interests, this is further supported by 11 U.S.C. § 541(b)(4), which expressly excludes from the debtor's estate, "any interest in liquid or gaseous hydrocarbons to the extent that – (B)(i) the debtor has transferred such interest pursuant to a written conveyance of a production payment to an entity that does not participate in the operation of the property from which such production payment is transferred[.]"

19. The royalty interests to land owners were granted by virtue of the oil and gas leases entered into with Sklarco. The working interests were similarly created by virtue of the oil and gas leases and the joint operating agreements with SEC and Sklarco. Neither the royalty interest holders, nor the working interest holders, other than Sklarco, participate in the operation of the properties. Accordingly, revenues attributable to the royalty interests and working interests, other than that attributed to Sklarco, are expressly excluded from the Debtors' estates pursuant to 11 U.S.C. § 541(b)(4).

20. If the royalty interests are not paid, Sklarco's ability to maintain the oil and gas leases would be impaired or terminated as a result of the non-payment. The working interests could refuse to pay JIB obligation to SEC until their revenue is paid to them, or could elect to remove SEC as the operator of the properties and obtain a new operator, permanently depriving SEC from continuing to generate revenue as the operator of the properties. Failure the pay the Revenue Payables could further result in litigation against the Debtors to recover revenues that belong to third parties.

21. Authorizing payment of the Revenue Payables will ensure that the Debtors can maintain their assets and operations, will reduce the claims against the estates, and will ensure

that the Debtors are administering the assets of their respective estates, and are not using revenues properly owed to third parties.

22. It is therefore in the best interests of the Debtors, their estates, and their creditors that the Debtors be authorized, in their sole discretion, to honor and pay the Revenue Payables.

**B. Setoff of JIB Obligations**

23. The Debtors further request authorization to offset JIBs owed by working interest holders against cash call advances paid by working interest holders and/or royalty revenue owed to working interest holders.

24. The debtor's right to setoff is governed in accordance with state law pursuant to § 558. In Colorado, the setoff rights are based on the principles of equity, and can be exercised so long as the demands are mutual. *See Whitehead v. Jessup*, 43 P. 1042, 1044 (Colo. App. 1896); *Woolman v. Capital Nat'l Bank*, 31 P. 235, 235 (Colo. App. 1892).

25. As set forth above, SEC received approximately $7,023,910.44 in cash call advance liabilities from the working interest holders who are also responsible for JIB obligations for those operated properties in which they hold an interest. Allowing SEC to continue to offset JIBs against the cash call advance liabilities will ensure that cash call advances paid by working interest holders are properly used for the operation of the properties, will reduce the administrative burden of demanding and collecting JIB obligations from the working interest holders, and will reduce the overall claims against SEC's estate. A portion of these cash calls are attributable to the construction of a new pipeline in Florida which is being constructed to enable the Debtors to operate a new oil field which they discovered in 2018.

26. Authorizing SEC to offset JIB obligations against the revenues owed to the working interest holders is also warranted in this case. Authorizing SEC to offset the JIB obligations against revenues paid to working interest holders will ensure that SEC can maintain the funds necessary to pay its vendors and maintain operation of the wells.

27. SEC will continue to account for all offsets in monthly statements provided to working interest holders.

28. Authorizing the Debtors to offset JIBs against cash call advances paid by working interest holders and/or revenue owed to working interest holders is in the best interests of the Debtors, their estate, and their creditors.

WHEREFORE the Debtors pray the Court make and enter an Order authorizing the Debtors to: 1) honor and pay, in their sole discretion, revenue amounts owed to the holders of overriding royalty interests and working interest holders; 2) offset joint interest billing obligations against cash call advances paid by working interest holders and/or revenues owed to working interest holders; and 3) for such further and additional relief as to the Court may appear just and proper.

DATED: April 6, 2020                                      Respectfully submitted,

                                                                                  By:   /s/  Keri L. Riley
                                                                                     Lee M. Kutner, # 10966
                                                                                     Keri L. Riley, #47605
                                                                                     **KUTNER BRINEN, P.C.**
                                                                                     1660 Lincoln Street, Suite 1850
                                                                                     Denver, CO 80264
                                                                                     Telephone:  (303) 832-2400
                                                                                     E-mail: lmk@kutnerlaw.com
                                                                                     E-mail: klr@kutnerlaw.com