UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE:<br><br>SKLAR EXPLORATION COMPANY, LLC<br>EIN: 72-1417930<br><br>  Debtor.<br><br>_____<br><br>SKLARCO, LLC<br>EIN: 72-1425432<br>  Debtor. | Case No. 20-12377-EEB<br><br>Chapter 11<br><br><br><br><br>Case No. 20-12380-EEB<br><br>Chapter 11 |

## DECLARATION OF HOWARD F. SKLAR

I, Howard F. Sklar, Manager and member, through the Howard F. Sklar Trust, of Sklar Exploration Company, LLC ("SEC") and Sklarco, LLC ("Sklarco") (collectively "Debtors"), make this Declaration under penalty of perjury pursuant to 28 U.S.C. §1746 as follows:

**Background**

1. The Debtors, filed their voluntary petitions pursuant to chapter 11 of the Bankruptcy Code on April 1, 2020 ("Petition Date").

2. I am the Manager of the Debtors and own the Debtors through the Howard F. Sklar Trust. The Debtors have been owned and operated by my family through the current entities or predecessors for three generations.

3. The Debtors are Louisiana limited liability companies who do business from their principal business offices located at 5395 Pearl Parkway, Suite 200, Boulder Colorado.

4. SEC is engaged in business as an independent exploration and production company in the oil and gas industry. SEC is an operating company and does not own oil or gas properties. SEC has its principal business office in Boulder, Colorado and has additional offices in Shreveport, Louisiana and Brewton, Alabama. SEC's exploration and production activities are primarily located in East Texas, North Louisiana, South Mississippi, South Alabama and the Florida Panhandle. The Debtor is also developing properties and opportunities in the western United States.

5. Sklarco is engaged in business as the owner of certain oil and gas leases and property interests in East Texas, North Louisiana, South Mississippi, South Alabama, the Florida Panhandle, and the western United States.

6. The Debtors have operated successfully for a number of years, and in 2018 and 2019 generated gross revenue in the amount of approximately $19,022,035 and $15,780,254 respectively. A more particular view of the Debtors can be found in their Balance sheets for year end 2019 and 2018, their Income Statement and their Cash Flow Statement, all attached hereto as Exhibit A. The information in the Exhibit A is unaudited and preliminary and will be subject to a January 2020 reserve report which is not finalized yet.

7. The Debtors currently employ approximately 45 people to operate their business.

8. Pre-petition, in the ordinary course of business, the Debtors provide its Employees with health insurance, dental insurance, vision insurance, life insurance and disability insurance ("Insurance Benefits").

## Assets and Secured Creditors

9. On the Petition Date, the Debtors estimate that they will have net cash in Bank accounts of approximately $2,391,756.09, broken down by account as follows:

Sklar Exploration Operating acct – $769,715.88
Sklar Exploration Benefits acct – $4,551.90
Sklar Exploration Payroll acct – $810.26
Sklar Exploration Revenue acct – $779,903.90
Sklarco LLC acct – $836,774.15

The Sklarco account balance includes a dividend of $233,000 due to be paid to the Howard F. Sklar Trust since it is based upon an investment of the Trust and not a Sklarco investment.

10. The Debtor Sklarco also has physical assets, consisting of oil and gas property interests.

11. The Debtors' assets are subject to a secured lien in favor of East West Bank ("Bank"). The Bank's claim is approximately $22,350,000.

12. On June 15, 2018, the Debtor entered into a Credit Agreement, Promissory Note, and Pledge and Security Agreement, along with various supporting loan documents (together the "Loan Documents") with East West Bank as Agent and Lead Arranger ("Bank") for a secured line of credit with an original maximum credit potential of $50,000,000. While the maximum

credit was never advanced, the amount currently outstanding to the Debtors is approximately $22,350,000.

13. In accordance with the Security Agreement, the Debtors granted the Bank a secured interest in substantially all of the Debtor's assets, including its inventory, equipment, accounts, deposit accounts, investment property, accounts receivables and in the case of Sklarco, all of the oil and gas property interests owned by Sklarco, in general, all real and personal property. Separate mortgages have been prepared and recorded in the real estate records in those counties in which Sklarco owns properties. The Bank would not have a security interest in oil and gas or other properties owned by third parties and managed or operated by the Debtors.

14. The Bank has otherwise duly perfected its security interest in personal property by filing UCC-1 financing statements with appropriate Secretaries of State and in real property by recording mortgages. It appears this has been done correctly but counsel will be in the process of reviewing the filings.

15. On June 15, 2018, the Debtors entered into an ISDA (International Swaps and Derivatives Association) 2002 Master Agreement ("Hedge Agreement"). The Hedge Agreement between the Debtors and the Bank allows the Debtors to enter into what are known as hedges that are designed to protect the Debtors and the Bank against decreases in the price of oil in future years. For example, if the price of oil went down in a future month, the hedge would allow the parties to sell a portion of their oil at a price that is higher than the current price of oil. Subsequent to the execution of the Hedge Agreement, the Debtor executed a number of put and call options with respect to the future sale of its oil. In the current time the hedges have tremendous value since the price of oil has decreased from its average January 2020 price of $57 per barrel to its April 1 price of approximately $20 per barrel as of the petition date. The options written against the Hedge Agreement are generally automatically exercised on a monthly basis however they could be exercised in bulk and currently have a value in excess of $2 million.

16. In addition to the secured claim of the Bank, the Debtors also owe the holders of working interests and trade vendors.

17. This Declaration is provided to support the following pleadings:

    a. Motion For Authority To Use Cash Collateral
    b. Motion For Entry of Order Authorizing Payment of Pre-Petition Joint Interest Billing Obligations as Critical Vendors

    c. Motion of Debtor and Debtor-in-Possession for an Order Authorizing (A) Payment of Pre-Petition Employee Benefits and (B) Continuation of Employee Benefit Programs

## Use of Cash Collateral

18. A majority of the Debtors' revenues and available cash are derived from its ongoing operation of oil and gas properties owned by Sklarco and other third parties. The Debtors' income is generally cash collateral, and subject to the secured claim of the Bank. The Bank's lien on cash is limited by the revenue that is received by the Debtors from other third parties on account of their independent ownership of non-debtor assets, all consistent with 11 U.S.C. §541(b)(4) and an Agency Services Agreement dated July 2, 2010.

19. In order to maintain operations, ongoing operating expenses such as inventory, employee wages, utilities, insurance, rent, telephones, and all of the expense items set forth on the Budget that accompanies the Motion for Authority To Use Cash Collateral ("Cash Collateral Motion") must be paid.

20. Therefore, the Debtors' use of cash collateral during the interim period is necessary to avoid immediate and irreparable harm to the estate. Without the use of cash collateral, the Debtors will not be able to pay employees, rent, utilities, materials and other costs associated with product being sold. Certain cash receipts and revenue is being used to enable the Debtors construction of a new pipeline in Florida which will enable the Debtor to extract oil and gas from a new oil field that was recently discovered in approximately 2018.

21. In the event the Debtors are not authorized to use cash collateral, the Debtors will be forced to stop operations and revenue production, potentially lose assets and contracts, thereby causing irreparable harm to the estates.

22. The Debtor will be replacing accounts, cash, and cash equivalents in the course of its daily operations and therefore the collateral base will remain stable and will improve over time along with the price of oil. The Debtor's cash position is projected to remain positive after meeting expenses during the initial thirty-day term of the Chapter 11 case. This is shown on the Budget which accompanies the Cash Collateral Motion.

## Employee Benefits

23. Pre-petition, in the ordinary course of business, SEC provides its Employees with health insurance, dental insurance, vision insurance, life insurance and disability insurance ("Insurance Benefits").

24. SEC also provides retirement benefits to its Employees through a 401(k) Plan ("Retirement Benefits" and collectively, the "Employee Benefits").

25. Employees who elect to receive Insurance Benefits through the Debtors rely on such benefits to ensure that they maintain medical coverage, dental coverage, and vision coverage. If the Employees lost their Insurance Benefits, it would severely undermine morale, and would impose a substantial hardship on the Employees. Without the medical coverage they had elected through the Debtors, Employees would be required to find medical coverage through another agency or forego their coverage entirely. This would cause a hardship to both Employees, and their families.

26. Employees who receive Retirement Benefits rely on their benefits to maintain their retirement savings, and expect to receive Retirement Benefits as a condition of their employment. If the Retirement Benefits are not maintained, it would severely undermine the Employees' morale, and will lead to substantial attrition in the work force which the Debtor cannot afford at this critical juncture in the Debtor's reorganization. Additionally, all funds contributed to the 401(k) plan on behalf of the Employees are withheld from their paychecks, and are not assets of the Debtors' estate.

27. If the Debtors fail to make the contributions for Employee Benefits, it will result in a substantial hardship to the Employees and will result in many of the Employees seeking other employment.

**Payment of Joint Interest Billings by Sklarco, LLC**

28. Sklarco owns a number of working interests in operated properties located in Texas, Louisiana, Mississippi, Alabama, Florida, Wyoming, and Montana. As a holder of working interests in operated properties, Sklarco is responsible for payment of a proportionate share of expenses associated with the operation of the property through payment of joint billing obligations ("JIBs").

29. On the Petition Date, Sklarco owed pre-petition JIBs to 95 creditors, in the total amount of $324,632.29.

30. Payment of the pre-petition JIBs is necessary to ensure that Sklarco remains in compliance with its joint operating agreements, to ensure that Sklarco's working interests are

maintained, and to ensure that Sklarco can continue to receive revenue from the third-party operators of the properties.

I declare under penalty of perjury that the foregoing Declaration is true and correct.

Dated: April 6, 2020

                              SKLAR EXPLORATION COMPANY, LLC

                              By: /s/ Howard F. Sklar
                                      Howard F. Sklar, Manager

                              SKLARCO, LLC

                              By: /s/ Howard F. Sklar
                                      Howard F. Sklar, Manager