## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC ) | |
| EIN: 72-1417930 ) | Chapter 11 |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |
| ) | Case No. 20-12380-EEB |
| SKLARCO, LLC ) | |
| EIN: 72-1425432 ) | Chapter 11 |
| Debtor. ) | |
| ) | |

## PRELIMINARY OBJECTION TO DEBTORS' MOTION FOR AUTHORITY TO USE CASH COLLATERAL

Secured creditor, East West Bank, a California state banking corporation ("EWB"), as lender and the administrative agent under the Credit Agreement dated June 15, 2018 (as amended, the "Credit Agreement") with Sklar Exploration Company LLC and Sklarco LLC (the "Debtors"), through counsel, files this preliminary objection to the Debtors' Motion for Authority to Use Cash Collateral (the "Cash Collateral Motion")[Doc. #34] and states as follows:

**Introduction**

1. EWB objects to the use of cash collateral because the Debtors' Cash Collateral Motion does not adequately protect EWB's security interest as required by Section 363. The budget included with the Cash Collateral Motion (the "Budget") indicates that cash collateral will diminish significantly in a matter of weeks without corresponding benefit to EWB. Specifically, EWB's net cash collateral balance would be diminished by nearly $2 million within the first three weeks of the budget, ostensibly before any final hearing on cash collateral.

2

2. Since filing of the Cash Collateral Motion and the Preliminary Hearing, the Debtors have not been able to provide EWB sufficient information to justify the Budget supporting the Cash Collateral Motion and EWB cannot be certain its security interest is adequately protected. Indeed, EWB was given no advance notice of the bankruptcy cases and only received the proposed cash collateral budget on the day it was filed.

3. EWB is and has been working toward a consensual form of order authorizing the interim use of cash collateral. However, the Debtors' Cash Collateral Motion lacks significant information and if granted, even on interim basis, could severely prejudice EWB's security position in violation of the adequate protection provisions of the Bankruptcy Code. While EWB remains hopeful that it will reach a consensual resolution of the Cash Collateral Motion, it must file this Preliminary Objection and Reservation of Rights to protect its valuable property interests in the event the parties cannot agree on a consensual form of order.

**Background**

4. EWB is the Debtors' senior secured lender pursuant to the Credit Agreement entered among EWB and the Debtors on or about June 15, 2018. Pursuant to the terms of the Credit Agreement, EWB agreed to extend credit to the Debtors consisting of a revolving line of credit (the "Line of Credit") and standby letters of credit (the "Letters of Credit," and with the Line of Credit, the "Commitments") subject to an initial Borrowing Base of $25,000,000. Based upon the Debtors' subsequent financial reporting, the Borrowing Base could increase or decrease, with the total Commitments subject to a cap in the amount of $50,000,000

5. As the Debtors acknowledge in their first day filings, the Debtors' obligations to EWB under the Credit Agreement are secured by duly perfected, first priority liens in favor of EWB in substantially all of the Debtors' real and personal property assets. *See Declaration of*

*Howard F. Sklar*, Doc. #39 at p. 2. EWB perfected its security interests in the Debtors' property pursuant to: (i) separate mortgages recorded in the real estate records of each of the counties or parishes in which the Debtors own real property; and (ii) UCC-1 financing statements filed with the appropriate Secretaries of State. *Id.*

6. Prior to filing this case, the Debtors engaged in extensive negotiations with EWB surrounding the Debtors' obligations and defaults under the Credit Agreement. While the progress of those negotiations had slowed, EWB was completely surprised by the Debtors' filing and received no prior notice of the Debtors' intent to file the cases.

7. The Debtors filed their voluntary petitions for relief pursuant to Chapter 11 of the Bankruptcy Code on April 1, 2020 ("Petition Date"). As of the Petition Date, EWB had extended credit to the Debtors in the approximate amount of $22,925,000, consisting of $22,350,000 extended under the Line of Credit and Letters of Credit issued in the amount of $575,000.[1]

8. Upon learning of the Debtors' bankruptcy filings, undersigned counsel contacted Debtors' counsel and requested draft copies of all first day motions in an attempt to resolve any issues before their filing. EWB received a copy of the Cash Collateral Motion, and only the Cash Collateral Motion, less than an hour before it was filed with the Court.

9. Since that time, EWB has requested additional information from the Debtors, attempted to gain an understanding of the line items in the Debtors' Budget, circulated an

---

[1] The amounts owed under the Credit Agreement as stated herein are intended as estimates only, and EWB reserves all rights to supplement or revise such amounts.

3

acceptable form of interim cash collateral order to Debtors' counsel, and pursued a consensual resolution to the Cash Collateral Motion.[2]

**Argument**

10. As the Court is well aware, to authorize the Debtor's use of cash collateral pursuant to section 363(c)(2) and (e) of the Bankruptcy Code, even on an interim basis, there must be a finding by the Court that EWB's interest in the cash collateral is adequately protected. The Debtor has the burden of demonstrating adequate protection. *See* 11 U.S.C. § 363(p)(1); *In re Carbone Companies, Inc.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008); *In re Podzemny*, No. 09-14226-J11, 2011 WL 576591, at *4 (Bankr. D.N.M. Feb. 8, 2011). The Debtor has failed to meet this burden of proof.

11. The purpose of the adequate protection requirement is to safeguard the secured creditor's constitutionally protected property interests and to ensure that the secured creditor receives the value it bargained for pre-bankruptcy. *See* House Rep. No. 95-595, 95 Cong., 2d Sess. 53, reprinted in 1978 U.S.C.C.A.N. 5787, 5963, 6295; *In re DeSardi*, 340 B.R. 790, 797 (Bankr. S.D. Tex. 2006) ("[T]he concept of adequate protection finds its basis in the Fifth Amendment's protection of property interests."). Thus, creditor's interest in the collateral must be protected from diminution while any property, including cash collateral, is being used or retained in the bankruptcy case. *In re Gallegos Research Grp., Corp.*, 193 B.R. 577, 584 (Bankr. D. Colo. 1995).

12. Here the Debtors propose to adequately protect EWB by 1) providing a post-petition lien on all post-petition accounts receivable and contracts and income derived from the

---

[2] Debtors' Counsel and Counsel for EWB conferred on several occasions including just before the filing of this Objection. While those conferrals were fruitful, EWB has not been provided the supporting documentation it would need to agree to Debtors' proposed use of cash collateral.

operation of the business and assets; 2) only using cash collateral in accordance with the Budget attached to the Cash Collateral Motion as Exhibit B; 3) continuing pre-petition insurance; 4) providing EWB an accounting on a monthly basis; and 4) maintaining normal operations of the business.  This proposal is insufficient under the circumstances of the case.

13. While EWB hopes that it can reach an agreement with the Debtors, there are certain troubling elements about this bankruptcy case that present a clear risk to EWB's interest in cash collateral that cannot be adequately protected.

14. First, the Debtors' Budget contains significant unexplained expenses that severely deplete EWB's cash collateral in a matter of weeks.  For instance, the Debtors' Budget contains a $4,018,459 disbursement during the week of April 24th that is labeled simply "Revenue payable to others."[3]

15. This charge, in concert with expenses such as a $209,295 "Severance tax" and a $41,667 "CEO salary" payment during the week of April 17th, deplete existing cash in the Debtors' accounts from $2,184,888 on April 10th to $265,828 on April 24th.

16. Not only do the Debtors fail to explain how EWB is adequately protected in the face of a $1,919,060 diminution of cash reserves, the Debtors offer no explanation of why these expenses are necessary or why they need to be paid ahead of a final hearing on cash collateral.  Such a loss in value without any replacement adequate protection should not be authorized by this Court.

17. Second, the Debtors' Budget includes no payments to EWB.  Despite acknowledging that the recent plunge in oil prices significantly harms the value of its assets, the

---

[3] While EWB is hopeful to resolve its concerns with the Debtors prior to the first-day hearing in these cases, EWB has requested further documentation to support this line item.

601892567.2

Debtors completely ignore any payment obligations to EWB further prejudicing EWB's position during the course of the case.

18. Third, these cases run the very real risk of administratively insolvent in the near future. The Debtors have sought the Court's authorization to retain three separate law firms.[4] An official committee may be formed that would require additional professionals. Even at this stage of the case, the Debtors' Budget has no "wiggle room" for legal fees and administrative expenses, which could be significant.

19. While EWB remains hopeful that it can reach an agreement with the Debtors, it has concerns about the ultimate direction of the case and the lack of adequate protection even in the short term. EWB will continue to negotiate in good faith with the Debtors regarding the use of cash collateral. In the meantime, however, EWB preliminarily objects to the entry of the proposed order granting the Cash Collateral Motion, and reserves all rights to assert further or additional objections to the use of cash collateral that may arise during the pendency of this case.

**Conclusion**

WHEREFORE, for these reasons stated above, EWB respectfully requests the Court deny the Debtors' Cash Collateral Motion and grant such other relief as it deems is just and proper.

Dated this 8th day of April, 2020.

*s/ Craig K. Schuenemann*
Craig K. Schuenemann, CO #41068
BRYAN CAVE LEIGHTON PAISNER LLP
1700 Lincoln Street, Suite 4100
Denver, CO 80203
Phone: (303) 861-7000
Facsimile: (303) 866-0200
Email: craig.schuenemann@bclplaw.com

ATTORNEYS FOR EAST WEST BANK

---

[4] EWB reserves its rights to oppose any employment application filed in these cases.

601892567.2

## CERTIFICATE OF MAILING

The undersigned hereby certifies that on this 8th day of April, 2020, a true and correct copy of the foregoing **OBJECTION TO DEBTORS' MOTION FOR AUTHORITY TO USE CASH COLLATERAL** was filed and served via ECF on all attorneys of record:

Jeffrey S. Brinen
Lee M. Kutner
1660 Lincoln Street
Suite 1850
Denver, CO 80264
*Attorney for Debtor Sklarco, LLC*

Paul Moss
Byron G. Rogers Federal Building
1961 Stout St., Ste. 12-200
Denver, CO 80294
*Attorney for U.S. Trustee*

    */s/ Martha A. Hammond*
Martha A. Hammond Legal Secretary
Bryan Cave Leighton Paisner LLP

7

601892567.2