# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC ) | |
| EIN: 72-1417930 ) | Chapter 11 |
| ) | |
|   Debtor. ) | |
| ) | |
| ) | |
| ) | Case No. 20-12380-EEB |
| SKLARCO, LLC ) | |
| EIN: 72-1425432 ) | Chapter 11 |
|   Debtor. ) | |
| ) | |

## PRELIMINARY OBJECTION TO DEBTOR'S MOTION FOR ENTRY OF ORDER AUTHORIZING PAYMENT OF PRE-PETITION JOINT INTEREST BILLING OBLIGATIONS AS CRITICAL VENDORS

Secured creditor, East West Bank, a California state banking corporation ("EWB"), as lender and the administrative agent under the Credit Agreement dated June 15, 2018 (as amended, the "Credit Agreement") with Sklarco LLC (the "Debtor"), through counsel, files this preliminary objection to the Debtor's Motion for Entry of Order Authorizing Payment of Pre-petition Joint Interest Billing Obligations as Critical Vendors (the "Critical Vendor Motion")[Doc. #41] and states as follows:

**Introduction**

1. EWB objects to the Debtor's payment of the joint billing obligations ("JIBs") because the Debtor's Critical Vendor Motion does not provide sufficient information to allow EWB or the Court to determine whether the JIBs owed by the Debtor are necessity payments or whether the operator to which the Debtor owes the JIBs are actually critical vendors.

2. As is the case with the Debtor's other first-day motions, EWB continues to pursue a consensual resolution to the Critical Vendor Motion. However, the Debtor has not been able to

601895699.2

provide EWB with sufficient information about the operators to justify payment on an expedited basis through an interim order. Nor has EWB been able to ascertain how the payment of the JIBs will impact its cash collateral security. Thus, it must file this Preliminary Objection.

**Background**

3. EWB is the Debtor's senior secured lender pursuant to the Credit Agreement entered among EWB and the Debtor on or about June 15, 2018. Pursuant to the terms of the Credit Agreement, EWB agreed to extend credit to the Debtor consisting of a revolving line of credit (the "Line of Credit") and standby letters of credit (the "Letters of Credit," and with the Line of Credit, the "Commitments") subject to an initial Borrowing Base of $25,000,000. Based upon the Debtor's subsequent financial reporting, the Borrowing Base could increase or decrease, with the total Commitments subject to a cap in the amount of $50,000,000.

4. As the Debtor acknowledges in their first day filings, the Debtor's obligations to EWB under the Credit Agreement are secured by duly perfected, first priority liens in favor of EWB in substantially all of the Debtor's real and personal property assets. *See Declaration of Howard F. Sklar*, Doc. #39 at p. 2. EWB perfected its security interests in the Debtor's property pursuant to: (i) separate mortgages recorded in the real estate records of each of the counties or parishes in which the Debtor owns real property; and (ii) UCC-1 financing statements filed with the appropriate Secretaries of State. *Id.*

5. Prior to filing this case, the Debtor engaged in extensive negotiations with EWB surrounding the Debtor's obligations and defaults under the Credit Agreement. While the progress of those negotiations had slowed, EWB was completely surprised by the Debtor's filing and received no prior notice of the Debtor's intent to file the case.

6. The Debtor filed its voluntary petitions for relief pursuant to Chapter 11 of the Bankruptcy Code on April 1, 2020 ("Petition Date"). As of the Petition Date, EWB had extended credit to the Debtor in the approximate amount of $22,925,000, consisting of $22,350,000 extended under the Line of Credit and Letters of Credit issued in the amount of $575,000.[1]

7. Upon learning that the Debtor had filed, undersigned counsel contacted Debtor's counsel and requested draft copies of all first day motions in an attempt to resolve any issues before filing. EWB did not receive a copy of the Critical Vendor Motion before it was filed with the Court.

8. In the Critical Vendor Motion, the Debtor seeks authority to pay pre-petition JIBs to third-party operators or otherwise offset the amounts owed for pre-petition JIBs against revenue owed to Sklarco for its working interests.

9. The funds the Debtors would use to pay the amounts proposed in the Critical Vendor Motion constitute EWB's cash collateral.

10. Since the filing of the Critical Vendor Motion, EWB has requested additional information from the Debtor and pursued a consensual resolution to the Critical Vendor Motion.

**Argument**

11. The Critical Vendor Motion provides no insight as to why these particular operators are critical vendors. Instead, as its only justification for the need to pay the operators immediately, Debtor states that payment of the JIBs "is necessary to ensure that Sklarco remains in compliance with its joint operation agreements . . ." *See Critical Vendor Motion*, ¶12. The Critical Vendor Motion does not assert that, without payment of the JIBs, the operators will

---

[1] The amounts owed under the Credit Agreement as stated herein are intended as estimates only, and EWB reserves all rights to supplement or revise such amounts as needed.

cease their work, nor does it set forth any long term harm Debtor would suffer if the JIBs are not paid immediately.

12. Under section 105(a) of the Bankruptcy Code, the Court may authorize the payment of prepetition claims in appropriate circumstances when essential to the continued operation of the debtor's business, pursuant to the "necessity of payment" rule. *See, e.g. In re Penn Central Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid").

13. Because critical vendor orders defeat the creditor payment priority requirements of the Bankruptcy Code, motions requesting critical vender orders "demand a stringent evidentiary test showing that the payment of the pre-Petition claims is 'critical to the Debtor's reorganization' ". *In Re. Coserv, LLC*, 273 B.R. 487, 498 (Bankr. N.D. Tex. 2002), quoting from *In Re. Just For Feet, Inc.*, 242 B.R. 821, at 826 (D. Del. 1999).

14. In *In Re. Corner Home Care*, Inc., 438 B.R. 122 (Bankr. W. Ky. 2010) the Court appropriately stated: "The beginning point in analyzing the necessity of the vendor to the successful reorganization of the debtor is to recognize this is more than mere convenience, this requires a showing of substantial necessity. . . . . For the goods of a vendor to be necessary, there can be no alternative".

15. The Debtor has not shown why payment of the JIBs is a substantial necessity. Contract counterparties in a bankruptcy case, even those whose contracts are eventually assumed, often wait substantial periods of time before receiving payment for pre-petition

4

amounts owed. Debtor has not shown why it should be different here or why the operators seeking JIBs should step ahead of other creditors.

16. In addition to a lack of demonstrated necessity, Debtor's Critical Vendor Motion fails to explain the vast differences owed to these operators or which of the JIB payments will be offset from revenue Debtor is owed for its working interests.

17. The Debtor makes passing reference to the fact that some of the JIBs would be paid out of revenue from their respective working interests but does not specify which JIBs fit into this category and which JIBs would need to be paid out of EWB's cash collateral.

18. Nor does the Debtor explain the enormous differences in the amounts owed. In one instance the Debtor owes over $150,000 to a single company but many of the other operators in JIB chart are owed small amounts or nothing at all.

19. Finally, the Debtor seeks Court authorization to pay the JIBs on "an ongoing basis" but it is not clear where these payments are accounted for in the Budget that the Debtor included with is Motion for Authority to Use Cash Collateral [Doc. #34].[2] Without this information neither EWB nor the Court can determine how the Debtor's payment of the JIBs will impact cash collateral.

20. At this time, the Debtor has not provided enough information to authorize payment of the JIBs on an interim basis. Thus, EWB preliminarily objects to the entry of the proposed order authorizing payment of pre-petition joint interest billing obligations as critical vendors, and reserves all rights to assert further or additional objections to critical vendor payments during the pendency of this case.

---

[2] Debtor's counsel informed EWB that the JIBs were accounted for in the "Lease Operating Expenses for Non-operated properties, but the dollar figure in that budget line varies significantly from the dollar figure set forth in the Critical Vendor Motion.

**Conclusion**

WHEREFORE, for these reasons stated above, EWB respectfully requests the Court deny the Debtor's Critical Vendor Motion and grant such other relief as it deems is just and proper.

Dated this 8th day of April, 2020.

*s/ Craig K. Schuenemann*
Craig K. Schuenemann, CO #41068
BRYAN CAVE LEIGHTON PAISNER LLP
1700 Lincoln Street, Suite 4100
Denver, CO 80203
Phone: (303) 861-7000
Facsimile: (303) 866-0200
Email: craig.schuenemann@bclplaw.com

ATTORNEYS FOR EAST WEST BANK

**CERTIFICATE OF MAILING**

      The undersigned hereby certifies that on this 8th day of April, 2020, a true and correct copy of the foregoing **OBJECTION TO DEBTOR'S MOTION FOR ENTRY OF ORDER AUTHORIZING PAYMENT OF PRE-PETITION JOINT INTEREST BILLING OBLIGATIONS AS CRITICAL VENDORS** was filed and served via ECF on all attorneys of record:

Jeffrey S. Brinen
Lee M. Kutner
1660 Lincoln Street
Suite 1850
Denver, CO  80264
*Attorney for Debtor Sklarco, LLC*

Paul Moss
Byron G. Rogers Federal Building
1961 Stout St., Ste. 12-200
Denver, CO  80294
*Attorney for U.S. Trustee*

                                          */s/ Martha A. Hammond*
                                          Martha A. Hammond Legal Secretary
                                          Bryan Cave Leighton Paisner LLP