UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC, ) | |
| ) | Chapter 11 |
| Debtor. ) | |
| ) | |
| In re: ) | |
| ) | Case No. 20-12380-EEB |
| SKLARCO, LLC, ) | |
| ) | Chapter 11 |
| Debtor. ) | |

**PRELIMINARY OBJECTIONS TO FIRST DAY MOTIONS**

Stoneham Drilling Corporation ("Stoneham") states its preliminary objections to Sklar Exploration Company, LLC's ("SEC") and Sklarco, LLC's ("Sklarco" and, together with SEC, the "Debtors") first day motions, as follows:

**BACKGROUND**

1. Stoneham is an oilfield service company which provides contract drilling services.

2. Pursuant to a certain Drilling Bid Proposal and Daywork Drilling Contract (the "Drilling Contract"), SEC engaged Stoneham to provide contract drilling services with respect to wells known as Corwin #5-1 and Bowdoin #2 located in Phillips County, Montana (the "Montana Wells"). Stoneham commenced operations for the Corwin #5-1 well on or about November 1, 2019.

3. SEC owes Stoneham at least $1,447,729.49 under the Drilling Contract as of April 1, 2020 (the "Petition Date"). Interest, attorneys' fees, costs, and expenses continue to accrue on Stoneham's claim.

4. Stoneham is in the process of recording a mineral lien against the Montana Wells, and all other property that may be subject to a mineral lien, pursuant to Mont. Code §§ 71-3-1001 to 71-3-1012, 11 U.S.C. §§ 362(b)(3) and 546(b), and any other applicable law.

## PRELIMINARY OBJECTIONS

**A. Motion for Authority to Use Cash Collateral [Dkt. No. 34] (the "Cash Collateral Motion").**

5. Pursuant to the Cash Collateral Motion, the Debtors seek authority to use cash collateral and provide adequate protection liens to undefined "Secured Creditors."

6. As discussed above, Stoneham asserts a statutory mineral lien against all of the Debtors' property interests in the Montana Wells, as more particularly set forth in Mont. Code §§ 71-3-1001 to 71-3-1012 and other applicable law. Stoneham is accordingly entitled to any and all adequate protection provided to secured creditors under any interim or final order approving the Cash Collateral Motion. *See* 11 U.S.C. § 363(e).

7. It is not clear from the Cash Collateral Motion whether Sklar proposes to use revenue from operation of the Montana Wells during these bankruptcy cases. Stoneham objects to the Cash Collateral Motion to the extent it does not provide Stoneham adequate protection of its interests in the Debtors' assets, including without limitation any interest in the Montana Wells, any gas produced from the Montana Wells, and the proceeds of any gas produced from the Montana Wells.

8. Based upon the Debtors' allegations, they have made various cash calls on third parties to pay the operating expenses of their wells. To the extent the Debtors have made cash calls (or similar requests or demands for funds from third parties) for the purposes of funding the Montana Wells, Stoneham asserts an interest in such funds and such funds may not be property

of the estate. *See* 11 U.S.C. § 541(d). The Court should deny any relief that does not preserve Stoneham's rights with respect to funds intended to pay for the Montana Wells.

9. Stoneham also objects to the Debtors' proposed budget to the extent it does not include funds to pay for Stoneham to demobilize its rig, as requested by the Debtors after the Petition Date. Demobilization is estimated to cost at least $334,000.

10. Pending further information from the Debtors, Stoneham reserves the right to object to the Debtors' use of cash for any particular line item in the proposed budget, including compensation for insiders and management. Based on the Debtors' current budget it does not appear that the Debtors can provide adequate protection to any parties with interest in cash. Within the first few weeks of their case, the Debtors anticipate reducing their cash position by almost $2 million.

11. Without waiver of any of its objections to the use of cash collateral, Stoneham requests the following language for any interim or final order granting the Cash Collateral Motion:

> Nothing in this Order is intended to change or otherwise modify the prepetition priorities among secured creditors of the Debtors, including any claims of the lienholders or any other mechanic or materialmen or mineral lien claimants to the extent their liens are valid, enforceable, non-avoidable and perfected, including as permitted by section 546(b) of the Bankruptcy Code, and nothing in this Order, including the granting of any adequate protection liens, shall be deemed to have changed or modified such prepetition priorities, all of which are hereby expressly preserved.

> Notwithstanding anything in this Order to the contrary, to the extent that Stoneham Drilling Corporation ("Stoneham") has a valid, perfected, enforceable and unavoidable prepetition lien or security interest in any property of the Debtors as of the petition date including valid and non-avoidable liens in existence at the time of the petition date that are perfected subsequent thereto as permitted by section 546(b) of the Bankruptcy Code (the "Stoneham Collateral"), such interest shall be entitled to adequate protection, solely to secure payment of an amount equal to the decrease, if any, in the value of Stoneham's interest in such Stoneham Collateral, from and after the petition date, for any reason provided under the

Bankruptcy Code, in each case as follows: (i) postpetition replacement liens against such Stoneham Collateral including any gas that has been or may be extracted from the Stoneham Collateral (and the proceeds thereof), subject to the prepetition priorities of any parties secured by the same collateral, and (ii) superpriority adequate protection claims solely against the applicable Debtor that owns the assets upon which Stoneham's prepetition lien attaches. As further adequate protection of Stoneham's interests in any cash collateral, the Debtors (i) shall segregate and specifically account to Stoneham for the proceeds of any production from the Debtors' interest in any of the Stoneham Collateral, including without limitation the wells known as Corwin #5-1 and Bowdoin #2 located in Phillips County, Montana; and (ii) pay in cash to Stoneham the reasonable and documented professional fees, expenses and disbursements solely to the extent such fees, expenses and disbursements are allowed by the Court under section 506(b) of the Bankruptcy Code. Stoneham reserves its rights to seek other adequate protection or relief in the future, including equitable "marshaling" of assets or any similar remedy or doctrine, and nothing in this Order shall preclude the exercise of such rights. Notwithstanding anything in this Order to the contrary, Stoneham reserves all rights and claims to cash that (i) the Debtors may have held or may hold in express or equitable trust for the benefit of Stoneham or similarly situated parties, or (ii) is otherwise not property of the Debtors' estates.

**B.  Motion For Entry of Order Authorizing Payment of Pre-Petition Joint Interest Billing Obligations as Critical Vendors [Dkt. No. 41] (the "JIB Motion").**

12. Pursuant to the JIB Motion, Sklarco seeks authority to pay $324,632.29 to 95 creditors based on prepetition joint interest billing obligations.

13. At this time, Stoneham only asserts a claim against SEC and its property, but Stoneham reserves all rights, claims, and defenses against Sklarco. Nonetheless, according to the Debtors, they may commingle funds. *See* Motion for Entry of Order Authorizing the Debtors to Continue Use of Existing Bank Accounts [Dkt. No. 36]. Stoneham objects to the JIB Motion to the extent that Sklarco seeks authority to use SEC's funds to pay Sklarco's liabilities.

14. Furthermore, Sklarco's primary justification to pay the joint interest billings is that these amounts "would likely be paid upon assumption of the respective operating agreements with third-party operators." JIB Motion ¶ 13. Of course, this argument assumes that the underlying operating agreements are in fact executory contracts under section 365 of the

4833-5694-8921.1

Bankruptcy Code. At this early stage of the Debtors' cases, creditors have not had a chance to review any of the underlying agreements at issue, the Debtors have not shown that the operating agreements are executory, or that the assumption of any executory contracts would be a proper exercise of business judgment. The fact that there are executory contracts at issue likely weighs against immediate payment because the counterparties are obligated to continue performance. *See In re CoServ, L.L.C.*, 273 B.R. 487, 499 (Bankr. N.D. Tex. 2002) ("If the claimant is bound to the debtor by contract, so long as the debtor performs post-petition, so must the claimant.").

15. The Debtors have also not shown that immediate payment is appropriate under the "necessity of payment doctrine." There are no allegations that the proposed recipients of payments "supply services or material essential to the continued operations of the business." JIB Motion ¶ 11. On information and belief, Sklarco only owns certain oil and gas leases and property interests, but does not actually operate any such assets.

16. Sklarco's desire to prefer some creditors over others is not sufficient to justify immediate payment of prepetition claims while creditors such as Stoneham have not received payments on much more substantial claims.

17. Although not scheduled for the first day hearing, Stoneham maintains the same objections to the relief requested in the Motion to: 1) Honor and Pay Overriding Royalty, Royalty, and Working Interest Obligations; and 2) Offset Joint Interest Billing Obligations [Dkt. No. 37]. The Debtors request authority to pay almost $2 million without court or creditor review of any underlying contracts or property rights. Without limitation, the Debtors assert that interests such as overriding royalty interests take the proceeds of oil and gas production out of the Debtors' estates. *See* Dkt. No. 37 at ¶¶ 5, 14-22. But not all state law is consistent on the characterization of mineral interests. For instance, a debtor may reject overriding royalty

interests under Alabama law. *See In re Walter Energy, Inc.*, 2015 WL 9487718 (Bankr. N.D. Ala. Dec. 28, 2015). The Debtors' requested relief is premature and interested parties are entitled to further information before the Debtor is authorized to make significant distributions out of their estates.

    C.    **Motion of Debtor and Debtor In Possession for an Order Authorizing (A) Payment of Pre-Petition Employee Benefits and (B) Continuation of Employee Benefits Program [Dkt No. 40] (the "Employee Benefit Motion").**

    18.    Subject to Stoneham's objection to the use of cash collateral, it does not object to the general relief requested in the Employee Benefit Motion that the Debtors be authorized to maintain benefit programs for employees. Nonetheless, Stoneham requests that any order granting the Employee Benefit Motion provide that no single employee will receive prepetition wages or benefits in excess of the limits allowed under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

    19.    Stoneham specifically objects to the Debtors' payment of health insurance, life insurance, disability insurance, or 401k matching on behalf of Howard Sklar or other insiders. According to Mr. Sklar's declaration, he owns the Debtors through a trust, and "[t]he Debtors have been owned and operated by [his] family through the current entities or predecessors for three generations." Dkt. No. 39 ¶ 2. The Debtors are also proposing to pay Mr. Sklar almost $42,000 per month in salary in the cash collateral budget. Stoneham disputes that maintaining all prepetition benefits for Mr. Sklar is necessary "for the basic necessities of life, rent, food, and energy" or to ensure that Mr. Sklar will not seek other employment. *See* Employee Benefit Motion ¶ 21. Under the circumstances of these cases creditors should not have to fund insurance benefits or 401k matching for highly compensated insiders such as Mr. Sklar.

4833-5694-8921.1

20. Stoneham further requests that any order granting the Employee Benefit Motion be without limitation or prejudice to the rights of creditors to challenge or recharacterize any payments to the Debtors' insiders.

**D. Motion for Entry of Order Authorizing the Debtors to Continue Use of Existing Bank Accounts [Dkt. No. 36] (the "Bank Account Motion").**

21. Subject to Stoneham's objection to the use of cash collateral, it does not object to the general relief requested in the Bank Account Motion that the Debtors be authorized to maintain their prepetition bank accounts.

22. However, the proposed order provides that the Debtors "are authorized to continue to utilize existing pre-petition bank accounts in the same manner as it [sic] did pre-petition during the course of its [sic] Chapter 11 case." Among other things, the Debtors allege that their prepetition bank accounts were used to make EFT and ACH payments to numerous parties in the ordinary course of business. Stoneham objects to the proposed order to the extent it may be interpreted as authorizing the Debtors' to pay prepetition claims without a prior motion and Court order.

## RESERVATION OF RIGHTS

23. Stoneham files this limited objection without limitation or waiver of any objections to the Debtors' requested relief, or any rights, claims, or defenses against the Debtors or third parties.

Respectfully submitted,

/s/ James B. Bailey
James B. Bailey
Bradley Arant Boult Cummings LLP
1819 Fifth Avenue North
 Birmingham, AL  35203
Telephone:  (205) 521-8913
Email:  jbailey@bradley.com

*Counsel for Stoneham Drilling Corporation*

**CERTIFICATE OF SERVICE**

I certify that on April 9, 2020, a true and correct copy of these Preliminary Objections to First Day Motions was served on all parties authorized to receive notice through the ECF notice system in this case.

/s/ James B. Bailey
OF COUNSEL

4833-5694-8921.1