IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: | CASE NO.: 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC<br>EIN: 72-1417930 | CHAPTER 11 |
| Debtor. | |
| _____ | |
| SKLARCO, LLC<br>EIN: 72-1425432 | CASE NO.: 20-12380-EEB |
| | CHAPTER 11 |
| Debtor. | |

_____

**LIMITED OBJECTION TO: (A) MOTION FOR AUTHORITY TO USE CASH COLLATERAL [Docket #34]; (B) MOTION FOR ENTRY OF ORDER AUTHORIZING DEBTORS TO CONTINUE USE OF EXISTING BANK ACCOUNTS [Docket #36]; and (C) MOTION TO (1) HONOR AND PAY OVERRIDING ROYALTY, ROYALTY, AND WORKING INTEREST OBLIGATIONS, AND (2) OFFSET JOINT INTEREST BILLING OBLIGATIONS [Docket #37]**

_____

Anderson Exploration Energy Company, L.C., TCP Cottonwood, L.P., and AEEC II, LLC (collectively "Anderson") make this Limited Objection to the following motions filed by one or both of Debtors Sklar Exploration Company, LLC and Sklarco, LLC (jointly "Debtors"):

- Motion for Authority to Use Cash Collateral [Doc. 34] (the "Cash Collateral Motion");

- Motion for Entry of Order Authorizing Debtors to Continue Use of Existing Bank Accounts [Docket #36] (the "Bank Account Motion"); and

- Motion to (1) Honor And Pay Overriding Royalty, Royalty, And Working Interest Obligations, and (2) Offset Joint Interest Billing Obligations [Docket #37] (the "Royalty Payment Motion").

21207114_3

## SUMMARY OF LIMITED OBJECTION

Anderson does not oppose the Debtors' continued use of their own cash that may be subject to the East West Bank's (the "Bank's") security interest, as requested in the Cash Collateral Motion. However, Anderson does object to the Debtors' use of funds that are either (1) not owned by the Debtors, including funds advanced by or due to Anderson, or (2) encumbered by a security interest in favor of Anderson. Further, Anderson objects to the Bank or any other creditor being awarded any lien on "Cash Call Advances"[1] that Anderson delivered to the Debtors pre-petition pursuant to an agreement that the funds delivered would be used on a specific well or prospect for specific purposes. Anderson also objects to the Bank or any other creditor being awarded any lien on the portion of Production Revenues owned by Anderson, as provided in the parties governing agreements. To the extent that the Debtors' continued use of their accounts at the Bank puts Anderson's property—its Cash Call Advances or Production Revenues—at risk of being encumbered or even seized by the Bank to secure debts that the Debtors owe to the Bank, Anderson objects to the Bank Account Motion's request for a variance from the standard operating procedure of requiring a debtor to open new bank accounts post-petition.

In addition, Anderson objects to the Royalty Payment Motion to the extent that it seeks to use funds that are owned by Anderson or by the Debtors' estates to pay the overriding royalty owners or related passive production payments (jointly "ORI"). ORI

---

[1] Capitalized terms not defined in the "Summary" are defined below.

interest owners have their own right to payment from their owned-portion of production proceeds. Many rights to payment of ORI are held by the Debtors' senior employees, their family members, and other insiders. Anderson objects to the Debtor paying ORI, to insiders or others, (1) from Anderson's funds, (2) from estate property, or (3) in preference or priority ahead of payments owed to working interest owners, including Anderson.

## BACKGROUND

1. Debtor Sklar Exploration Company, LLC ("Sklar Explo") and Anderson are parties to various operating agreements in which Sklar Explo serves as operator of oil and gas properties; Anderson and others hold working interest ownership (collectively, the "Owners") in those properties.

2. Pursuant to these agreements, Sklar Explo may make cash calls to the Owners of a property from time to time to advance funds for specific purposes stated in the cash call (collectively, the "Cash Call Advances"). The Owners (including Anderson) must advance funds to Sklar Explo to satisfy the Cash Call Advances or risk being deemed "non-consent" and subject to strict penalties, including, but not limited to, forfeiture of all or a part of their ownership interest. The funds advanced by the Owners are held by Sklar Explo to be used for the specific purposes stated in the cash call.

3. The Debtors' List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders [Doc. 22] indicates that Sklar Explo should be holding no less than $765,391.72 in Cash Call Advances made to it by Anderson (collectively). Sklar Explo avers that it is currently holding approximately $7,023,910.44 in Cash Call

Advances from all Owners across multiple projects.[2] Anderson has not yet received confirmation that Sklar Explo continues to hold all of Anderson's funds advanced to it other than funds spent pre-petition for a purpose identified in a Cash Call Advance.

4. In its capacity as operator for the properties, Sklar Explo is obligated to market and sell oil and gas production on behalf of the Owners.[3] Sklar Explo is also obligated to collect the revenues generated from the sale of oil and gas on behalf of the Owners, including Anderson, and other interest holders (collectively, "Production Revenues").

5. The governing operating agreements provide that both the Cash Call Advances and the Production Revenues due the Owners (including Anderson), defined below as Net Revenue Interests or "NRI," are held by Sklar Explo but owned by the Owners until they are either (a) used for their intended purposes by Sklar Explo; (b) applied to debts in accordance with the agreements; or (c) delivered to the Owners.

6. Through the Cash Collateral Motion, Sklar Explo seeks authority to use Production Revenues and/or Cash Call Advances for, *inter alia*, payment of lessor's royalty, ORI, and possibly operating expenses not allowed by their agreements with the Owners.

7. Anderson objects to the Debtor's use of Anderson's Cash Call Advances (which is Anderson's property) for any purpose not stated in the written cash call sent to Anderson. Anderson also objects to Debtor paying any form of royalty, to insiders or non-insiders, from NRI proceeds owned by Anderson. Anderson also objects to the

---

[2] Doc. 37, ¶ 11.

[3] Debtor Sclarco, LLC is a non-operating Owner in many, and possibly all, of the properties.

payment of any royalties (other than lessor royalties) in preference to or otherwise before paying the Owners the NRI due to them from the Production Revenues attributable to the applicable wells. Anderson also makes the other limited objections noted below.

## **LIMITED OBJECTION**

8. Through the Cash Collateral Motion, the Debtors seek authority to use cash purportedly subject to a security interest of Bank as Agent and Lead Arranger.

9. Anderson does not generally object to the Debtors' use of its cash that may be subject to the Bank's security interest as requested in the Cash Collateral Motion.

10. Anderson objects to the Debtors' use of Cash Call Advances for any purpose not stated in the written demand for a particular cash call. The Cash Call Advances are held by the Debtor, but not owned by the Debtor. The Cash Call Advances are not property of the estate under 11 U.S.C. § 541. Each Cash Call Advance is owned by the Owner who advanced the funds.

11. Further, Anderson objects to the Bank or any other creditor being awarded a replacement lien on the Cash Call Advances or on that portion of the Production Revenues that is owned by Anderson as provided in the governing agreements. *See generally In re McFarland*, 112 B.R. 906 (Bankr. E.D. Tenn. 1990) (stating that mere acquisition or possession of property is not sufficient to allow a debtor to grant a security interest in said property); *and In re Diversified Traffic Servs.,* Case No. 09-51227, 2010 LEXIS 1790 at *11 (Bankr. S.D. Ga. May 21, 2010) ("Fundamental to a secured party's acquisition of a security interest in property of the debtor is that the

debtor have rights in the collateral.") (quoting *Anthony v. Cmty. Loan & Inv. Corp.*, 559 F.2d 1363, 1368 (5th Cir. 1977)). *See also Begier v. IRS*, 496 U.S. 53, 59 (1990).

12. Generally, Production Revenues may be classified as accruing into three (3) buckets: (i) lessor's royalty, which is paid to the landowner who granted the mineral lease that gives the operator a right to produce, (ii) overriding royalty and similar production payments (collectively "ORI"), and (iii) net revenue due the Owners or working interest owners ("NRI").

13. Anderson agrees with the Debtors that timely payment of the lessor's royalty out of Production Revenue is critically important for this case. Many mineral leases include provisions stating if the lessor's royalty is not timely paid, the mineral lease is automatically terminated or may be terminated unilaterally by the lessor. The mineral leases are critical assets that must be preserved; the Debtors' failure to preserve the mineral leases would be devastating to the case and would likely create post-petition liabilities for the Debtors to the Owners. Anderson asks the Court to allow Sklar Exploration to pay the lessor's royalty from Production Revenue when due. However, payment of the lessor's royalty must not come from the Cash Call Advances or the NRI.

14. Payments of ORI and NRI are typically not necessary to preserve a mineral lease; they are not lessor obligations. An operator is obligated by contract to hold those funds for, and pay those funds to, the ORI and NRI holders. The Debtors must be current on these contracts in order to assume them as part of a confirmable plan, among other reasons.

15. The essential quality of an ORI is simply "that of a real right to receive and collect a fraction or a percentage of the production of minerals." *Total E & P USA*

*Inc. v. Kerr-McGee Oil and Gas Corp.*, 719 F.3d 424, 435 (5th Cir. 6/20/13). An ORI is therefore "a passive, non-cost bearing mineral interest carved out of the lessee's working interest and is dependent upon the continued existence of the mineral lease." *Plaquemines Parish Comm'n Council v. Delta Dev. Co., Inc.*, 486 So.2d 129, 134 (La. App. 4 Cir. 1986), *rev'd on other grounds*, 502 So.2d 1034 (La. 1987) (*citing Fontenot v. Sun Oil Co.*, 243 So.2d 783 (La. 1971)) As a passive right, an ORI does not give its owner any rights or working interest in the mineral lease from which it derives. *See Dore Energy Corp. v. Prospective Inv. & Trading Co., Ltd.*, 570 F.3d 219, 232 (5th Cir. 5/28/09) ("the overriding royalty interest owners, subject to the unchallengeable decision making by the lease owners on whether to release or not, could not sue to block enforcement of a settlement agreement by the lease owners to execute releases….").

16. Ownership interest of lessees in mineral leases (*i.e.*, the interest of Anderson as an Owner) is typically referred to as "working interest." *See Matter of Senior-G & A Operating Co., Inc.*, 957 F.2d 1290, 1296 (5th Cir. 4/13/1992). Further, the production revenues attributable to the working interest in mineral leases (and associated wells) are commonly referred to as "net revenue interest" or NRI. *Id.* at 1293-94.

17. Unlike the Owners who hold NRI interests, holders of ORI interests have not been called upon to make Cash Call Advances to drill wells or payments to keep them in operation. Holders of ORI interests do not receive monthly billings demanding continuing contributions (joint interest billings) to the cost of exploration and production; Owners do receive monthly joint interest billings, which they must pay in order to be entitled to continue to receive their NRI payments.

7

21207114_3

18. Based on Anderson's experience, the ORI interests in many of the Debtors' projects are owned directly by Debtors or their current or former key employees and family members. These insiders have not made Cash Call Advances, nor are they paying a proportionate share of ongoing operating or other expenses. If the Debtors pay ORIs without paying NRIs, the Debtors will be making payments to insiders from production made possible from the cash invested by Owners, without making any corresponding payments to Owners.

19. Payment of ORI is a contractual obligation in the same manner as Debtor's contractual obligation to pay NRI and to return unused Cash Call Advances to the Owners such as Anderson. Production Revenue attributable to ORI, like Production Revenue attributable to NRI, represents funds held by the Debtors in their Production Account at the Bank but is usually considered owned by the particular interest holder.

20. Except for funds owed to the Debtors by virtue of their ORI/NRI interests, none of the ORI or NRI proceeds currently in the Debtors' Production Account, or to be deposited into that account or another one in the future, is property of the estate. Those are funds the Debtors hold for the benefit of others.

21. Anderson objects to the Debtors using Production Revenue for any purpose, other than payment of lease royalties, until all of the NRI payments due to the Owners have been paid to the Owners. The NRI are held by the Debtor, but they belong to the Owners. Those funds should not be considered property of the estate under 11 U.S.C. § 541; in the event they are property of the estate under a particular state's law, they are encumbered by a security interest in favor of the particular Owner entitled to payment.

22. Anderson does not object to the Debtors contributing their ORI or NRI payments to the Debtors' general operating expenses or administrative expenses of the case. Anderson does not object to payment of an ORI that must be paid to maintain the interests of all parties in a lease. Anderson does object to having its Cash Call Advances or its NRI used for those purposes.

23. To the extent that the Bank may claim a security interest in Anderson's Cash Call Advances or its NRI that are now, or in the future will be, in the Debtors' bank accounts, Anderson objects to the Debtors' request to continue operating with their pre-petition accounts. Further, Anderson needs some comfort that its cash (both Cash Call Advances and NRI not yet paid) will not be pledged to, or taken by, the Bank for debts owed to the Bank by the Debtors.

## **RESERVATION OF RIGHTS**

Anderson makes no admission of fact or law and reserves any and all rights, claims, objections, and defenses that may be available to them before this Court and any other court with competent jurisdiction over the parties and the matters at issue, including in connection with the motions listed above or any other related motions, pleadings, or orders, asserted liens and interests, and any other matters involving the administration of this case, the estate, and Anderson's interests, any and all rights available to them under the Bankruptcy Code and applicable non-bankruptcy law. Anderson reserves any and all rights to supplement or amend this Limited Objection and at any hearing.

21207114_3

## JOINDER

Anderson joins in Pruet Production Co. and Pruet Oil Company, LLC's Limited Objection to Motion for Authority to Use Cash Collateral, as previously submitted by Pruet on April 8, 2020 [Doc. 57] (the "Pruet Objection"), and similar objections to the extent such objections are not inconsistent with this Limited Objection.

## CONCLUSION

Anderson requests that in the event the Cash Collateral Motion is granted, the Court clarify (i) that the Cash Call Advances and NRI are owned by and constitute the property the Owners and may not be used by the Debtors for operations or for granting security to creditors; and (ii) any lien awarded the Bank or any other creditor not attach to the Cash Call Advances or NRI. Anderson also requests that it and other Owners be protected from having their Cash Call Advances or NRI used by the Debtors for any purpose not allowed by their contractual agreements. Anderson further requests that the Debtors be ordered to pay Anderson and other Owners the NRI proceeds due to them from monthly Production Revenues before making payments to ORI interest holders or other payments to insiders not specifically authorized by this Court.

Dated: April 9, 2020                              Respectfully submitted:

KEAN MILLER LLP
/s/ J. Eric Lockridge
J. Eric Lockridge
(TX# 24013053, LA #30159)
eric.lockridge@keanmiller.com
KEAN MILLER LLP
400 Convention Street, Suite 700
P. O. Box 3513 (70821-3513)
Baton Rouge, LA 70802

21207114_3

        Telephone:  (225) 387-0999
        Telecopier: (225) 388-9133

***Counsel for TCP Cottonwood, L.P., AEEC II, LLC, and Anderson Exploration Energy Company, L.C.***

21207114_3