IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT COLORADO

| | |
|---|---|
| In Re: ) | |
| ) | |
| **SKLAR EXPLORATION COMPANY, LLC** ) | Case No. 20-12377-EEB |
| **and SKLARCO, LLC** ) | |
| ) | Chapter 11 |
| Debtors. ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| **SKLARCO, LLC** ) | Case No. 20-12380-EEB |
| ) | |
| ) | Chapter 11 |
| ) | |

**RESPONSE OF TAUBER EXPLORATION & PRODUCTION COMPANY, CTM 2005, LTD., PICKENS FINANCIAL GROUP, LLC, AND I & L MISS I, LP TO DEBTOR'S MOTION FOR AUTHORITY TO USE CASH COLLATERAL**
**[Docket No. 34]**

Tauber Exploration & Production Company, CTM 2005, Ltd., Pickens Financial Group, LLC, and I & L Miss I, LP (collectively the "Tauber Group Non-operators"), and hereby file their Response to Debtor's Motion for Authority to Use Cash Collateral [Docket No. 34] and respectfully represent as follows:

**I.**
**Overview**

1. The Tauber Group Non-operators own non-operating working interests in various oil and gas prospects operated by Sklar Exploration and Production Company ("SEC"), located principally in Alabama, Mississippi, and Texas. Sklarco, LLC ("Sklarco") is also a non-operator owning working interests in these prospects. Sklarco and SEC shall collectively be referred to herein as "Debtors."

1

2. Contractual relationships between Debtors and the Tauber Group Non-operators are governed by Joint Operating Agreements ("JOA's"), typically utilizing the 1982 American Association of Petroleum Landmen ("AAPL") form JOA, but customized by the parties with special provisions for each prospect.

3. The Tauber Group Non-operator's interest in cash collateral of Debtors arises in two ways under the JOA's and applicable law. First, Article VII.B of each JOA, and the attached Recording Memorandum, provide for a reciprocal lien and security interest to secure the obligations of the non-operators to the operator and the operator to the non-operators. Second, as and when non-operators make cash advance payments to SEC in response to cash calls for upcoming operations, SEC admits it holds those funds in trust for the non-operators.

4. As admitted in paragraph 11 of the Motion for Authority to Pay Overriding Royalty, Royalty and Working Interest Obligations [Docket No. 37], SEC "owes approximately $7,023,910.44 in cash call advance liabilities from working interest holders." The Tauber Group Non-operators contend that the funds they have advanced to SEC in response to cash calls are not property of the estate under 11 U.S.C. § 541(d), and may not be used except for the specific operational purposes for which the funds were advanced.

5. The Motion for Authority to Use Cash Collateral should be denied unless Debtors provide adequate protection under 11 U.S.C. § 361 for Tauber Group Non-operators' non-operators' lien and security interest arising under the applicable JOA's or for the trust funds advanced by Tauber Group in response to SEC's cash calls.

6. The Budget attached to the Motion lacks specificity as to the particular projects for which operational expenditures are to be made. This degree of specificity is warranted since SEC is receiving money from non-operators to be used for specific purposes, as opposed to funding

general operating expenditures unrelated to the cash calls. Finally, the Budget includes improvident expenditures that should not be awarded on an interim (or perhaps any other) basis.

## II.
## The Relevant JOA Provisions

7. Article VII.B of the JOA's in question provide as follows:

B. Liens and Payment Defaults:

Each Non-Operator grants to Operator a lien upon its oil and gas rights in the Contract Area, and a security interest in its share of oil and/or gas when extracted and its interest in all equipment, to secure payment of its share of expense, together with interest thereon at the rate provided in Exhibit "C". To the extent that Operator has a security interest under the Uniform Commercial Code of the state, Operator shall be entitled to exercise the rights and remedies of a secured party under the Code. The bringing of a suit and the obtaining of judgment by Operator for the secured indebtedness shall not be deemed an election of remedies or otherwise affect the lien rights or security interest as security for the payment thereof. In addition, upon default by any Non-Operator in the payment of its share of expense, Operator shall have the right, without prejudice to other rights or remedies, to collect from the purchaser the proceeds from the sale of such Non-Operator's share of oil and/or gas until the amount owed by such Non-Operator, plus interest, has been paid. Each purchaser shall be entitled to rely upon Operator's written statement concerning the amount of any default. <u>Operator grants a like lien and security interest to the Non-Operators to secure payment of Operator's proportionate share of expense.</u>

(underscoring supplied).

8. The Recording Memorandum attached as Exhibit G to the JOA, contains a more extensive grant of liens and security interests:

> 3. The parties hereby grant reciprocal liens and security interests as follows:
>
> A. Each party grants to the other parties hereto a lien upon any interest it now owns or hereafter acquires in Oil and Gas Leases and Oil and Gas Interests in the Contract Area, and a security interest and/or purchase money security interest it now owns or hereafter acquires in the personal property and fixtures on or used or obtained for use in connection therewith, to secure performance of all of its obligations under this agreement and the Operating Agreement including but not limited to payment of expense, interest and fees, the proper disbursement of all monies paid under this agreement and

>the Operating Agreement, the assignment or relinquishment of interest in Oil and Gas Leases as required under this agreement and the Operating Agreement, and the proper performance of operations under this agreement and the Operating Agreement. Such lien and security interest granted by each party hereto shall include such party's leasehold interests, working interests, operating rights, and royalty and overriding royalty interests in the Contract Area now owned or hereafter acquired and in lands pooled or unitized therewith or otherwise becoming subject to this agreement and the Operating Agreement, the Oil and Gas when extracted therefrom and equipment situated thereon or used or obtained for use in connection therewith (including, without limitation, all wells, tools, and tubular goods),and accounts (including, without limitation, accounts arising from the sale of production at the wellhead), contract rights, inventory and general intangibles relating thereto or arising therefrom, and all proceeds and products of the foregoing.

9. Taken together, the provisions of Article VII.B of the JOA's and the liens and security interests granted in the Recording Memorandum grant the Tauber Group Non-operators an interest in the cash collateral arising from Debtors' operations.

### III.
### Argument and Authorities

10. The Debtors admit they have cash and accounts on hand as of the Petition Date and will generate certain postpetition revenue, which could constitute "Cash Collateral," as that term is defined by section 363(a) of the Bankruptcy Code (as so defined, "Cash Collateral"). Pursuant to the Bankruptcy Code, the Debtor may not use Cash Collateral unless "each entity that has an interest in such cash collateral consents," or unless "the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2)(A)-(B) (2013).

11. For the first fourteen (14) days after the Petition Date, the Court may authorize the use of Cash Collateral only on an interim basis, and only to "avoid immediate and irreparable harm to the estate." FED. R. BANKR. P. 4001(b)(2).

12. The Debtors acknowledge that, in order to use Cash Collateral, they must provide adequate protection to all parties with interests in Cash Collateral and who do not consent to its use. *See* 11 U.S.C. § 363(e). The party requesting court approval to use cash collateral over the secured creditor's objection must prove that there is adequate protection for that creditor. *Mendoza v. Temple-Inland Mortgage Corp. (Matter of Mendoza)*, 111 F.3d 1264, 1272 (5th Cir. 1997).

13. As previously discussed, the Tauber Group Non-operators have interests in Debtors' Cash Collateral arising from the liens and security interests created under its JOA's to secured Debtors' financial obligations under the JOA's. The relative priority of these liens and security interests vis a vis other creditors, including East West Bank, is not known at this time. However, the Debtors' have not acknowledged any secured creditors other than those of East West Bank. However, creditors such as the Tauber Group Non-operators must be specifically included among those creditors with interests in Cash Collateral who are entitled to adequate protection of their interests.

14. As Debtors admit, Non-operators who have advanced funds in response to SEC's cash calls have superior equitable interests in such funds. The Tauber Group Non-operators also have superior equitable title to such funds, as to which Debtors hold, at best, legal title. *See Reserve Oil, Inc. v. Dixon*, 711 F.2d 951, 953 (10th Cir. 1983) (holding that funds advanced to further a joint operating contract are held in trust for the benefit of the party that advanced the funds); *see also Dime Box Petroleum Corp.*, 717 F.Supp. 717, 721-22 (D. Colo. 1989) (citing *Reserve Oil, Inc.*, 711 F.2d 953). As such, the advanced funds are not property of the estate under 11 U.S.C. § 541(d), which provides in pertinent part, as follows:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, …but as to which the debtor retains legal title…, becomes property of the estate under subsection (a)(1) or (2) of this section only to

> the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

The advanced funds are likewise not subject to the liens of any creditor or the Debtors, since such liens may not encumber property that is not property of Debtors. *See Hoxworth v. Blinder*, 74 F.3d 205, 211 (10th Cir. 1996) (recognizing that funds held in trust are not property of the bankruptcy estate).

15. The budget submitted as Exhibit B to the Motion for Authority to Use Cash Collateral is not sufficiently detailed to allow Non-operators who have advanced funds for specific purposes outlined in SEC's cash calls to know how their money is being used. Debtors must provide a detailed accounting of the funds it has received, and apparently has not yet used, from Non-operators, including the Tauber Group Non-operators.

16. Debtors budget is under review, but there appear to be significant, if not exorbitant, expenditures that do not constitute "emergency" expenditures eligible to be approved on an interim basis.

17. Debtors must be prohibited from using the Cash Collateral of the Tauber Group Non-operators or the cash advanced by the Tauber Group Non-operators unless the objections raised in this Response are fully addressed.

Dated this 9th day of April, 2020

Respectfully submitted,

**Maynes, Bradford, Shipps & Sheftel, LLP**

*/s/ Thomas H. Shipps*
Thomas H. Shipps
*/s/ Shay L. Denning*
Shay L. Denning
Maynes, Bradford, Shipps & Sheftel, LLP
835 E. Second Ave., Suite 123
Durango, CO 81301
Telephone: (970) 247-1755
Facsimile: (970) 247-8827
Email: tshipps@mbssllp.com;
sdenning@mbssllp.com

*/s/ Barnet B. Skelton, Jr.*
Barnet B. Skelton, Jr.
815 Walker, Suite 1502
Houston, TX 77002
Telephone: (713) 659-8761
Cell: (713) 516-7450
Facsimile: (713)659-8764
Email: barnetbjr@msn.com

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on April 9, 2020, the foregoing instrument was electronically filed and served via CM/ECF pursuant to L.B.R. 9036-1. All attorneys and parties identified with the Court for electronic service on the record in this case were served by electronic service in accordance with the CM/ECF system on the date of filing

/s/ *Kate Potemkin*
Kate Potemkin