## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC ) | |
| EIN: 72-1417930 ) | Chapter 11 |
| ) | |
|   Debtor. ) | |
| ) | |
| ) | |
| ) | Case No. 20-12380-EEB |
| SKLARCO, LLC ) | |
| EIN:  72-1425432 ) | Chapter 11 |
|   Debtor. ) | |
| ) | |

### LIMITED OBJECTION TO DEBTORS' MOTION TO: 1) HONOR AND PAY OVERRIDING ROYALTY, ROYALTY, AND WORKING INTEREST OBLIGATIONS; AND 2) OFFSET JOINT INTEREST BILLING OBLIGATIONS

Secured creditor, East West Bank, a California state banking corporation ("EWB"), in its capacity as a lender and the administrative agent under the Credit Agreement dated June 15, 2018 (as amended, the "Credit Agreement") with Sklar Exploration Company LLC and Sklarco LLC (the "Debtors"), through counsel, hereby files this limited objection to the Debtors' Motion to: 1) Honor and Pay Overriding Royalty, Royalty, and Working Interest Obligations; and 2) Offset Joint Interest Billing Obligations (the "Payment Motion") [Doc. #37].  In further support of this limited objection, EWB respectfully submits as follows:

### Introduction

While EWB does not necessarily object to payment of the relevant claims *per se*, the Debtors have failed to demonstrate how they intend to pay nearly $2 million in pre-petition claims pursuant to the Payment Motion, on top of: (i) approximately $325,000 in pre-petition joint billing obligation claims (the "JIB Claims") pursuant to their Motion for Entry of Order Authorizing Payment of Pre-Petition Joint Interest Billing Obligations as Critical Vendors [Doc.

601927863.3

#41], *and* (ii) more than $4 million in other pre-petition claims to various parties based on obligations apparently associated with February revenues ("February Revenue Payments").[1] The Debtors' own cash projections do not support payment of these massive claims, particularly at this stage of their cases. Indeed, based on the current cash collateral budget, if the Debtors paid all of these pre-petition claims, EWB's cash collateral position will be reduced by over $1,400,000 in the next two weeks and by over $2,400,000 within the next five months. Obviously, this approach is not viable and utterly fails to provide adequate protection of EWB's interests.

EWB continues to attempt to work with the Debtors to resolve the bank's concerns and is reviewing an updated 13-week budget that the Debtors provided EWB on the afternoon of April 20, 2020. EWB is also reviewing the information provided in the data room established by the Debtors. Currently, however, the data room consists of only 35 agreements, some bank statements, and three excel spreadsheets cataloguing the Debtors' leases and the amounts owed working interest holders for February. The information currently available is woefully inadequate to evaluate, even superficially, the Debtors' numerous contract relationships and the proposed payments of more than $6.3 million in the aggregate.

EWB will continue to work with the Debtors, and has communicated with proposed counsel for the newly formed Official Committee of Unsecured Creditors, on a potential consensual resolution of the Payment Motion, which necessarily will require agreement on a final cash collateral order that provides adequate protection to EWB and includes an acceptable budget that addresses the Payment Motion, the JIB Claims, and the February Revenue Payments.

---

[1] The Debtors have not filed a separate motion seeking authorization for the payment of the February Revenue Payments in the amount of $4,018,459 to various unidentified interest holders, despite the pre-petition nature of the asserted obligations. Rather, the Debtors included the figure in a "payables" line item in their initial cash collateral budget. That line item was subsequently removed from the budget but remains a large issue in these cases.

Absent such a resolution, EWB must object to the payment of a substantial portion of all pre-petition claims. EWB cannot consent to granting the Debtors' sole and absolute discretion to make payment of pre-petition claims without sufficient cash in the estates, without adequate information about the nature of the underlying claims, and outside the context of a sale or confirmed chapter 11 plans.

## Factual and Procedural Background

1. The Debtors filed their voluntary petitions for relief pursuant to Chapter 11 of the Bankruptcy Code on April 1, 2020 ("Petition Date").

2. EWB is the Debtors' senior secured lender pursuant to the Credit Agreement entered among EWB and the Debtors on or about June 15, 2018. Pursuant to the terms of the Credit Agreement, EWB agreed to extend credit to the Debtors consisting of a revolving line of credit and standby letters of credit subject to an initial Borrowing Base of $25,000,000. Based upon the Debtors' subsequent financial reporting, the Borrowing Base could increase or decrease, with the total lending commitments subject to a cap in the amount of $50,000,000.

3. As the Debtors acknowledge in their first day filings, the Debtors' obligations to EWB under the Credit Agreement are secured by duly perfected, first-priority liens in favor of EWB in substantially all of the Debtors' assets. *See Declaration of Howard F. Sklar* dated April 6, 2020 [Doc. #39, at 2]. EWB perfected its security interests in the Debtors' property pursuant to: (i) separate mortgages recorded in the real estate records of each of the counties or parishes in which the Debtors own real property; and (ii) UCC-1 financing statements filed with the appropriate Secretaries of State. [*Id.*]

4. As of the Petition Date, EWB had extended credit to the Debtors in the approximate amount of $22,925,000, consisting of $22,350,000 extended under the line of credit

3

and letters of credit issued in the amount of $575,000.[2] The Debtors were in default of their obligations under the Credit Agreement and related loan and security documents.

5. Prior to the Petition Date, the Debtors engaged in negotiations with EWB to address the Debtors' defaults and outstanding indebtedness. Those negotiations were ultimately unsuccessful, and the Debtors filed voluntary bankruptcy petitions with no advance notice or prior discussion with EWB.

6. According to the Declaration of Howard F. Sklar [Doc. #39], Sklarco, LLC ("Sklarco") is liable for the pre-petition JIB Claims. It is unclear whether the other pre-petition claims are obligations of Sklarco or Sklar Exploration Company, LLC ("SEC"), or both.

7. Sklarco's primary assets consist of its oil and gas properties, which the Debtors acknowledge are currently of unknown value. [Doc. #34, at ¶¶ 11, 13 ] SEC's primary assets consist of receivables generated from its operating agreements and contracts, as well as certain equipment and personal property. [*Id*. at ¶ 13]

8. The Debtors have indicated that, on the Petition Date, Sklarco had $836,774.15 in its bank account. [Doc. #39 at ¶ 9] SEC had approximately $1.5 million in the aggregate in its four bank accounts, of which $779,903.90 was in SEC's revenue account. [*Id*.]

9. The Debtors have admitted that, prior to the Petition Date, "[d]ue to the nature of the Debtors' operations, a majority of Sklarco's funds [were] pooled with SEC to ensure that SEC [could] continue to maintain the operation of the wells." [Doc. #36, at ¶ 4] In short, funds were commingled and used by either Debtor without regard to the source of the funds.

10. The Debtors appear to have used the cash call advances and other revenues collected but owed to various interest owners to fund operations. Those funds are now largely

---

[2] The amounts owed under the Credit Agreement as stated herein are intended as estimates only, and EWB reserves all rights to supplement or revise such amounts as needed.

gone, as revealed by the aggregate beginning cash balance of $3,439,756 in the cash collateral budget for both Debtors when compared to SEC's acknowledged cash-call liabilities of $7,023,910.44 and other pre-petition liabilities of $1,911,423.41. [Doc. #37, at ¶¶ 10-11]

11. The Payment Motion seeks authorization for the immediate payment of various royalty and working interest obligations, at the Debtors' sole and absolute discretion. It also seeks authorization to offset prospectively the joint interest billing obligations owed to SEC against cash call advances paid by working interest holders and/or revenues owed to them.

12. While EWB has no objection to the latter, provided the setoffs are otherwise consistent with Debtors' cash collateral, adequate protection, and reporting obligations, the payment of nearly $2 million at this stage of the case is problematic.

## Legal Argument

As this Court is well aware, there is a strong bankruptcy policy disfavoring payment of prepetition claims outside of a confirmed plan of reorganization. *See In re Oxford Mgmt., Inc.*, 4 F.3d 1329, 1334 (5th Cir. 1993). The Debtors have failed to establish that the Payment Motion is actually consistent with applicable state law that might override the priority scheme of the Bankruptcy Code. Indeed, the Debtors' operations span multiple states under different contractual arrangements, very few of which have been adequately disclosed, and the Debtors have provided no meaningful analysis regarding any particular jurisdiction's applicable law. Nor have the Debtors demonstrated that irreparable harm will occur if the payments are deferred to a later date when the Debtors might demonstrate sustained positive cash flow and propose either a plan or sale.

The issues that arise when a debtor-in-possession owns mineral interests or is a party to mineral rights contracts, including operating agreements, are complex. Different state laws treat

5

oil and gas leases differently. There appears to be a split of authority in Louisiana, for example, on whether an oil and gas lease constitutes a property interest or an executory contract. *Compare In re WRT Energy Corp.*, 202 B.R. 579 (W.D. La. 1992), *with Texaco, Inc. v. La. Land & Exploration Co.*, 136 B.R. 658 (M.D. La. 1992). An executory contract is not terminable absent stay relief, whereas a property right might be argued to be terminable depending on the particular facts of the case. Differing state standards also may give rise to arguments regarding ownership of royalty revenues, inchoate liens, or simply unsecured claims. Even in a case involving statutory liens, a lender's security interest will often trump royalty liens asserted under state law. *See*, *e.g.*, *In re Semcrude, L.P.*, 407 B.R. 112 (Bankr. D. Del. 2009). Unfortunately, the Payment Motion provides mere generalizations and brings more confusion than clarity to many of these complex legal issues.

The primary generalization in the Payment Motion is that "property held in trust by the debtor for the benefit of others is not part of the bankruptcy estate." Payment Motion at ¶ 15. While legally true, the Debtors' observation is wholly unremarkable based on the facts of these cases. The Debtors have not held and are not holding funds in trust for the benefit of others. To the contrary, the Debtors admit that the funds on hand have been completely commingled with other revenue, apparently were never segregated for the benefit of third parties, and are a mere fraction of the $6.3 million allegedly owed in the aggregate on pre-petition royalties, working interests, and JIB Claims. In short, the Debtors are correct that the funds owed to interest holders are not property of the estate, but largely because such funds were spent prior to the Petition Date and are gone, and not because the Debtors are holding or ever held such funds in trust.

The Debtors also seem to suggest that a constructive trust arguably arises with respect to funds on hand. Payment Motion at ¶ 16. Again, the practical problem is that the Debtors admit

601927863.3

they are not holding any identifiable revenues for third parties, and whatever funds might have been argued to be subject to trust have long since been commingled or spent by the Debtors. Moreover, "[i]t is beyond peradventure that, as a general rule, any party seeking to impress a trust upon funds for purposes of exemption from a bankrupt estate must identify the trust fund in its original or substituted form." *In re Hedged-Investments Associates, Inc.*, 48 F.3d 470 (10th Cir. 1995) (quoting *First Federal of Michigan v. Barrow*, 878 F.2d 912, 915 (6th Cir. 1989)).

The Tenth Circuit has further clarified that the claimant has the burden of establishing the original trust relationship and "must prove his title, identify the trust fund or property, and where the fund or property has been mingled with the general property of the debtor, the claimant must sufficiently trace the property." *Id*. (quoting 4 *Collier on Bankruptcy,* ¶ 541.13, at 541-76 to 79 (15th ed. 1994). To the extent funds or property have "been mingled with the general property of the debtor" and "cannot be identified in its original or substituted form, the *cestui* becomes merely a general creditor of the estate." *Id*.; *see also In re Haber Oil Co., Inc.*, 12 F.3d 426, 437 (5th Cir. 1994) (under Texas law, a constructive trust can attach only "to some identifiable property which can be traced back to the original property acquired by fraud"). Notably, Louisiana law does not even recognize the notion of constructive trust. *See In re Oxford Mgmt., Inc.*, 4 F.3d 1329, 1336 (5th Cir. 1993).

Similarly, even if the royalty and working interest holders' claims fall within the definition of "production payment" under section 541(b)(4), the Debtors or claimants still must trace and identify the funds that are allegedly not estate property. The Debtors had approximately $3.4 million on hand as of the Petition Date. Short of mathematical alchemy, it's impossible that more than $6 million of claims can be traced to the $3.4 million of commingled

7

funds on hand. All of the cash on hand is presumptively subject to EWB's first-priority lien, and any diminution of EWB's lien position must be adequately protected.

To be clear, EWB is not advocating that the claimants should go unpaid or are unimportant in these cases. Indeed, the value of the estates may very well depend on preservation of the Debtors' operations with existing interest holders. Depending on the Debtors' operating performance and cash flow, payment to the claimants may become entirely appropriate. EWB currently does not even have an updated cash collateral budget or other revenue projections from the Debtors. EWB cannot accept being forced to carry the entire risk of reorganization in contravention of its undisputed lien and adequate protection rights.

EWB will continue to work with the Debtors and Committee on a final cash collateral order and budget that provides adequate protection of EWB's interests. To the extent EWB is able to resolve its concerns, payment of various claims may be entirely appropriate. Unless and until EWB receives the information necessary to evaluate the Debtors' payment requests, EWB must object to the Payment Motion and other pre-petition payments proposed by the Debtors.

### Demand for Adequate Protection

Pursuant to 11 U.S.C. §§ 361 and 363(e), EWB hereby requests that the court prohibit or condition the payment of funds requested in the Payment Motion as is necessary to provide adequate protection. EWB makes no admissions herein and expressly reserves all rights, claims, and defenses with respect to all other issues and filings, including without limitation the cash collateral motion and other filings of the Debtors in these cases.

## **Conclusion**

WHEREFORE, for these reasons stated above, EWB respectfully requests that, absent a consensual cash collateral budget and order that adequately address the Payment Motion, the Court deny the Payment Motion, and grant such other relief as it deems is just and proper.

Dated this 20th day of April, 2020.

*s/ Craig K. Schuenemann*
Craig K. Schuenemann, CO #41068
BRYAN CAVE LEIGHTON PAISNER LLP
1700 Lincoln Street, Suite 4100
Denver, CO 80203
Phone: (303) 861-7000
Facsimile: (303) 866-0200
Email: craig.schuenemann@bclplaw.com

ATTORNEYS FOR EAST WEST BANK

601927863.3

**CERTIFICATE OF MAILING**

The undersigned hereby certifies that on this 20th day of April, 2020, a true and correct copy of the foregoing **OBJECTION TO DEBTORS' MOTION TO: 1) HONOR AND PAY OVERRIDING ROYALTY, ROYALTY, AND WORKING INTEREST OBLIGATIONS; AND 2) OFFSET JOINT INTEREST BILLING OBLIGATIONS** was filed and served via ECF on all attorneys of record:

Jeffrey S. Brinen
Lee M. Kutner
1660 Lincoln Street
Suite 1850
Denver, CO 80264
*Attorney for Debtor Sklarco, LLC*

Paul Moss
Byron G. Rogers Federal Building
1961 Stout St., Ste. 12-200
Denver, CO 80294
*Attorney for U.S. Trustee*

 */s/ Martha A. Hammond*
Martha A. Hammond Legal Secretary
Bryan Cave Leighton Paisner LLP

601927863.3