

Shreveport Office
401 Edwards St., Ste. 1601
Shreveport, Louisiana 71101
Phone: 318-227-8668
Facsimile: 318-227-9012

EXHIBIT D

Boulder Office
5395 Pearl Parkway, Ste. 200
Boulder, Colorado 80301
Phone: 720-961-5477
Facsimile: 303-443-1551

Tyler C. Robbins, In-House Counsel
Telephone: 720-253-1267
E-Mail: trobbins@sklarexploration.com

April 15, 2019

**VIA UPS**

TO:     Working Interest Owners

RE:     Participation Agreement
        North Pachuta Prospect
        Clarke County, Mississippi

Dear Owners:

Thank you for your participation in the above referenced prospect. Enclosed for your review and execution is the North Pachuta Prospect Participation Agreement (PA), which includes, without limitation, the following:

1.  Participation Agreement;
2.  Partial Assignment of Oil, Gas and Mineral Leases from Apple River Investments (Exhibit B-1);
3.  Assignment of Oil, Gas and Mineral Leases from Foote Oil and Gas Properties (Exhibit B-1);
4.  Initial Well AFE (Exhibit D); and
5.  Joint Operating Agreement (JOA) (Exhibit E).

For your convenience, we have included signature and acknowledgment pages to each of these documents directly behind this letter. Please execute the same as indicated by the "Sign Here" tabs and have your signature acknowledged by a Notary Public as indicated by the "Notarize Here" tabs. For certain parties, we have also included an Invoice for your share of the Prospect Fee described in Section 1.1 of the PA. Upon execution, please return all signed and notarized pages, along with your check, to us using the self-addressed UPS return envelope and label.

Should you have any questions, please feel free to call or email me.

Sincerely,

Tyler C. Robbins
In-House Counsel

Enclosures:     North Pachuta Prospect Participation Agreement
                Invoice (for certain parties)

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA 71101
(303)541-1559

# *Settlement Statement*

Tauber Exploration & Production Co
55 Waugh Drive, Suite 600
Houston, TX 77007

Account: TAUE01

Date: 04/15/2019

## Account: TAUE01 - Statement of Account:

| Date | Reference | Description | Charges | Credits |
|------|-----------|-------------|---------|---------|
| 03/31/2019 | | Balance Forward | 26,495.58 | |
| 04/09/2019 | CC304 | Cash Call- Bates 2-2 #1 | 48,065.63 | |
| 04/12/2019 | 9917 | Payment-Thank You! Ck# 283014 | | (48,065.63) |
| 04/15/2019 | 9918 | Payment-Thank You! Ck# 283022 | | (15,123.27) |
| 04/15/2019 | 9918 | Partial Payment Ck# 283022 | | (4,535.77) |
| 04/15/2019 | 9918 | Partial Payment Ck# 283022 | | (5,759.71) |
| 04/15/2019 | 9918 | Partial Payment Ck# 283022 | | (1,076.83) |
| | | New Balance Forward | 0.00 | |

## Summary by LEASE:

| Property# | Description | Expenses | You Owe |
|-----------|-------------|----------|---------|
| 1PAC01 | North Pachuta Prospect | 37,500.00 | 37,500.00 |
| | **Totals:** | **37,500.00** | **37,500.00** |

**PLEASE PAY THIS AMOUNT -----------------------^**

**Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.**

From:   Sklar Exploration Co., L.L.C.                                      For Billing Dated 04/15/2019
To:     Tauber Exploration & Production Co                        Account: TAUE01   Page   2

## LEASE: (1PAC01)  North Pachuta Prospect   County: CLARKE, MS

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Leasehold Costs** | | | | | |
| *Prospect Acquistion/Fee* | | | | | |
| 1PAC01PC | To invoice you for your proportionate share of the Prospect Fee for the North Pachuta Prospect, Clarke County, Mississippi per the Participation Agreement dated February 20, 2019. | 2 | 750,000.00 | 750,000.00 | 37,500.00 |
| | **Total Leasehold Costs** | | | **750,000.00** | **37,500.00** |

| LEASE Summary: | Wrk Int | | | Expenses | You Owe |
|---|---|---|---|---|---|
| **1PAC01** | **0.05000000** | | | **37,500.00** | **37,500.00** |

By: _____
    Wirt A. Yerger, III
    Member


SYLCO EXPLORATION, L.L.C.


By: _____
    Andrew T. Sylte
    Manager

TAUBER EXPLORATION & PRODUCTION CO.

By: _____
    Richard E. Tauber
    President

TCP COTTONWOOD, L.P.

By: TRINITY-ANDERSON, LLC
    General Partner

By: ANDERSON FEAZEL MANAGEMENT, INC.
    Manager


    By: _____
        T. Cole Anderson
        Vice-President


Attachments:

| | |
|---|---|
| Exhibit A: | Plat |
| Exhibit A-1: | Description of Leases |
| Exhibit B-1: | Assignment (Apple River Investments, L.L.C.) |
| Exhibit B-2: | Assignment (Foote Oil And Gas Properties, LLC) |
| Exhibit C: | Assignment of ORRI |
| Exhibit D: | AFE |
| Exhibit E: | JOA |
| Exhibit F: | Confidentiality Agreement |

By: _____
       Stephen Swan
       Manager

JJS WORKING INTERESTS, L.L.C.

By: Houston Bulldog Capital Management, L.L.C.,
Manager

By: _____
       Justin Simmons
       Manager

KUDZU OIL PROPERTIES, L.L.C.

By: _____
       Wirt A. Yerger, III
       Member

LECHWE, L.L.C.

By: _____
       Mark Rauch
       Agent and Attorney-in-Fact

LUCAS PETROLEUM GROUP, INC.

By: _____
       Fain Brock
       President

TAUBER EXPLORATION & PRODUCTION CO.

By: _____
       Richard E. Tauber
       President

TCP COTTONWOOD, L.P.

By: TRINITY-ANDERSON, LLC
       General Partner

By: ANDERSON FEAZEL MANAGEMENT, INC.
       Manager

By: _____
       T. Cole Anderson, Vice President

certify that Richard E. Tauber, whose name as President of TAUBER EXPLORATION & PRODUCTION CO., a Texas corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _24th_ day of _April_, 2019.

_myla Wunderlich_

NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _2-11-20_

MYLA WUNDERLICH
Notary Public, State of Texas
Commission Expires 02-11-2020
Notary ID 12482280-0

STATE OF LOUISIANA

PARISH OF CADDO

I, _____, a notary public in and for said Parish and State, hereby certify that T. Cole Anderson, whose name as Vice-President of Anderson Feazel Management, Inc., a Louisiana corporation, duly authorized Manager of Trinity-Anderson, LLC, a Louisiana limited liability company, duly authorized General Partner of TCP Cottonwood, L.P. a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2019.

_____

NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

By: _____
       Charles T. McCord, III
       President

FANT ENERGY LIMITED

By: Richard E. Fant, L.L.C., General Partner


By: _____
       Stephen Swan
       Manager

JJS WORKING INTERESTS, L.L.C.

By: Houston Bulldog Capital Management, L.L.C.,
Manager


By: _____
       Justin Simmons
       Manager

KUDZU OIL PROPERTIES, L.L.C.


By: _____
       Wirt A. Yerger, III
       Member

LECHWE, L.L.C.


By: _____
       Mark Rauch
       Agent and Attorney-in-Fact

LUCAS PETROLEUM GROUP, INC.


By: _____
       Fain Brock
       President

TAUBER EXPLORATION & PRODUCTION CO.

By: _____
       Richard E. Tauber
       President

TCP COTTONWOOD, L.P.

By: TRINITY-ANDERSON, LLC
     General Partner

By: ANDERSON FEAZEL MANAGEMENT, INC.
     Manager


By: _____

certify that Fain Brock, whose name as President of LUCAS PETROLEUM GROUP, INC., a Texas corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2019.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF TEXAS

COUNTY OF HARRIS

I, _Myla Wunderlich_____, a notary public in and for said Parish and State, hereby certify that Richard E. Tauber, whose name as President of TAUBER EXPLORATION & PRODUCTION CO., a Texas corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _24th_ day of _April_____, 2019.

MYLA WUNDERLICH
Notary Public, State of Texas
Commission Expires 02-11-2020
Notary ID 12482280-0

_Myla Wunderlich_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _2-11-20_

STATE OF LOUISIANA

PARISH OF CADDO

I, _____, a notary public in and for said Parish and State, hereby certify that T. Cole Anderson, whose name as Vice-President of Anderson Feazel Management, Inc., a Louisiana corporation, duly authorized Manager of Trinity-Anderson, LLC, a Louisiana limited liability company, duly authorized General Partner of TCP Cottonwood, L.P. a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2019.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

| LOCATION: | Sec 12 T2N-R14E (Clarke County, Mississippi) | PROJ. T.D.: | 13,500 | |
|---|---|---|---|---|
| | Set 9-5/8" at 3200'. | | | |
| | Set 5-1/2" at 13,500'. | Latest Revision: | 18-Mar-19 | |

| CODE or SUB | CLASSIFICATION: | DRY HOLE | COMPLETION | TOTAL |
|---|---|---|---|---|
| 9100 | **LEASEHOLD COSTS** | | | |
| 81 | LEGAL FEES, TITLE OPINIONS, CURATIVE | 15,000 | | 15,000 |
| 86 | LEASE BONUS | | | |
| 84 | LEASE EXTENSION | | | |
| 88 | DELAY RENTALS | | | |
| 89 | BROKERAGE | | | |
| 90 | LANDMAN COSTS | | | |
| 91 | RECORDING FEES | | | |
| | **TOTAL LEASEHOLD COSTS** | $15,000 | $0 | $15,000 |
| | | | | |
| 9200/9300 | **INTANGIBLE DRILLING & COMPLETION** | | | |
| 01 | SURVEY, DOC HEARINGS, PERMITS | 2,000 | 2,000 | 4,000 |
| 02 | LOCATION PREPARATION/DIRT WORK | 195,000 | 5,000 | 200,000 |
| 03 | LOCATION CLEAN UP & PIT CLOSURE | 50,000 | | 50,000 |
| 04 | SURFACE DAMAGES & ROW | | | |
| 05 | SETTING CONDUCTOR CASING | 18,000 | | 18,000 |
| 06 | RIG MOBILIZE/DEMOBILIZE | 150,000 | | 150,000 |
| 07 | DRILLING - FOOTAGE | | | |
| 08 | DRILLING - TURNKEY | | | |
| 10 | DAYWORK WITH DRILL PIPE (28 days @$14K, 3 days compl) | 392,000 | 42,000 | 434,000 |
| 11 | DAYWORK WITHOUT DRILL PIPE | | | |
| 12 | DAYWORK - RIG EQUIPMENT & REPAIR | | | |
| 13 | ENGINEERING & SUPERVISION: | 60,000 | 15,000 | 75,000 |
| 14 | RIG INSTRUMENTATION & MONITORING | 23,000 | | 23,000 |
| 15 | COIL TUBING UNIT | | | |
| 16 | DIRECTIONAL DRILLING TOOLS & SVCS (If needed) | 100,000 | | 100,000 |
| 17 | MUD & CHEMICALS | 92,000 | | 92,000 |
| 18 | MUD DISPOSAL | | | |
| 19 | CONSULTING | 60,000 | | 60,000 |
| 23 | MUD LOGGING | 22,000 | | 22,000 |
| 24 | CEMENTING & EQUIPMENT | 48,000 | 44,000 | 92,000 |
| 25 | CASING CREW & LAYDOWN MACHINE | 22,000 | 22,000 | 44,000 |
| 26 | PIPE TESTING | 24,000 | 4,000 | 28,000 |
| 27 | EQUIPMENT RENTALS | 70,000 | 14,000 | 84,000 |
| 28 | FISHING TOOLS & SVCS | | | |
| 29 | TELEPHONE & COMMUNICATIONS | 6,000 | | 6,000 |
| 30 | WATER | 35,000 | | 35,000 |
| 31 | FUEL | 108,000 | | 108,000 |
| 32 | BITS | 43,000 | | 43,000 |
| 33 | TRANSPORTATION & TRUCKING | 12,000 | 18,000 | 30,000 |
| 34 | CONTRACT LABOR | 15,000 | 13,000 | 28,000 |
| 35 | SAFETY & H2S TRAINING | 55,000 | 15,000 | 70,000 |
| 36 | LOGGING & WIRELINE | 65,000 | 20,000 | 85,000 |
| 37 | DRILL STEM & PRODUCTION TESTING | | 30,000 | 30,000 |
| 38 | CORING & ANALYSIS | 80,000 | | 80,000 |
| 39 | GEOLOGICAL | 10,000 | | 10,000 |
| 40 | GEOPHYSICAL | | | |
| 46 | WORKOVER RIG | | 30,000 | 30,000 |
| 47 | PERFORATION SERVICES | | 25,000 | 25,000 |
| 48 | COMPLETION FLUIDS | | 5,000 | 5,000 |
| 49 | STIMULATION SERVICES | | 40,000 | 40,000 |
| 50 | INSTALLATION OF WELL EQUIPMENT | | | |
| 51 | PIPELINE EXPENSES & ROW | | | |
| 58 | AUTO EXPENSE | | | |
| 61 | SALT WATER DISPOSAL | | 3,000 | 3,000 |
| 63 | HOT OIL SERVICE | | | |
| 64 | SWABBING UNIT | | 10,000 | 10,000 |
| 65 | PLUG & ABANDON COSTS | 40,000 | -40,000 | |
| 78 | INSURANCE | 10,000 | | 10,000 |
| 79 | COPAS OVERHEAD - DRILLING/COMPLETION | 14,000 | 2,000 | 16,000 |
| 82 | MISCELLANEOUS: ±5% contingency | 91,050 | 15,950 | 107,000 |
| | **TOTAL INTANGIBLE DRILLING & COMPLETION** | $1,912,050 | $334,950 | $2,247,000 |
| | | | | |
| 9500 | **TANGIBLE EQUIPMENT - DRILLING** | | | |
| 02 | SURFACE CASING (9-5/8")3100' @ $22.58 | 98,000 | | 98,000 |
| 03 | INTERMEDIATE CASING & LINERS | | | |
| 04 | FLOAT EQUIPMENT, HANGERS & RELATED | 4,500 | | 4,500 |
| 05 | WELLHEAD EQUIPMENT | 12,500 | | 12,500 |
| 06 | CONDUCTOR CASING | 5,000 | | 5,000 |
| | **TOTAL TANGIBLE EQUIPMENT - DRILLING** | $120,000 | $0 | $120,000 |
| | | | | |
| 9520 | **TANGIBLE EQUIPMENT - COMPLETION** | | | |
| 21 | PRODUCTION CASING & LINERS  (5-1/2") | | 205,000 | 205,000 |
| 22 | TUBING (2-7/8") | | 74,000 | 74,000 |
| 23 | PACKERS | | 17,500 | 17,500 |
| 24 | FLOAT EQUIPMENT, HANGERS & RELATED | | 5,000 | 5,000 |
| 25 | WELLHEAD EQUIPMENT | | 24,000 | 24,000 |
| 26 | RODS, DOWNHOLE PUMPS & RELATED | | | |
| 27 | ARTIFICIAL LIFT EQUIPMENT | | 60,000 | 60,000 |
| | **TOTAL TANGIBLE EQUIPMENT - COMPLETION** | $0 | $385,500 | $385,500 |
| | | | | |
| 9535 | **SURFACE PRODUCTION EQUIPMENT** | | | |
| 36 | SURFACE ARTIFICIAL LIFT EQUIPMENT | | 152,000 | 152,000 |
| 41 | SURFACE PRODUCTION EQUIPMENT | | 100,000 | 100,000 |
| 42 | COMPRESSION (VRU) | | 50,000 | 50,000 |
| 43 | TANK BATTERY COSTS | | 90,000 | 90,000 |
| 44 | FLOWLINES, FITTINGS, CONNECTIONS | | 120,000 | 120,000 |
| 45 | PIPELINE & GATHERING SYSTEM COSTS | | | |
| 46 | SALES METERING EQUIPMENT | | 25,000 | 25,000 |
| | **TOTAL SURFACE PRODUCTION EQUIPMENT** | $0 | $537,000 | $537,000 |
| | | | | |
| | **TOTAL EQUIPMENT** | $120,000 | $922,500 | $1,042,500 |
| | **TOTAL WELL** | $2,047,050 | $1,257,450 | $3,304,500 |

By: Richard E. Fant, L.L.C., General Partner

Stephen Swan
Manager

JJS WORKING INTERESTS, L.L.C.
By: Houston Bulldog Capital Management, L.L.C., Manager

Justin Simmons
Manager

KELTON COMPANY, L.L.C.

Thomas W. Sylte, Manager

KUDZU OIL PROPERTIES, L.L.C.

Wirt A. Yerger, III, Member

LECHWE, L.L.C.

Mark Rauch, Agent and Attorney-In-Fact

LUCAS PETROLEUM GROUP, INC.

Fain Brock
President

TAUBER EXPLORATION & PRODUCTION CO.

Richard E. Tauber
President

CHARLES A. MORRISON CONSULTING GEOPHYSICIST, INC.

Charles A. Morrison
President

SYLCO EXPLORATION, L.L.C.

Andrew T. Sylte
Manager

certify that Mark Rauch, whose name as Member of IZICHWE, L.L.C., a Texas limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

.

Given under my hand and notarial seal this the _____ day of _____, 2019.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF LOUISIANA

PARISH OF CADDO

I, _____, a notary public in and for said Parish and State, hereby certify that Fain Brock, whose name as President of LUCAS PETROLEUM GROUP, INC., a Texas corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2019.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF TEXAS

COUNTY OF HARRIS

I, *Myla Wunderlick*_____, a notary public in and for said Parish and State, hereby certify that Richard E. Tauber, whose name as President of TAUBER EXPLORATION & PRODUCTION CO., a Texas corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the 24th day of *April*, 2019.

MYLA WUNDERLICH
Notary Public, State of Texas
Commission Expires 02-11-2020
Notary ID 12482280-0

*Myla Wunderlich*
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

North Pachuta Prospect
Clarke County, Mississippi

THIS **PARTICIPATION AGREEMENT** (the "**Agreement**"), dated effective as of February 20, 2019 (the "**Effective Date**"), is entered into by and between the following (sometimes hereinafter referred to individually as a "**Party**" and collectively as the "**Parties**"):

> **SKLAR EXPLORATION COMPANY, L.L.C.**, a Louisiana limited liability company, whose address is 5395 Pearl Parkway, Suite 200, Boulder, Colorado 80301, represented herein by its Vice President - Land & Legal, Steven R. Hatcher, Jr. ("**SEC**" or "**Operator**");

> and

The following Parties who are sometimes hereinafter referred to as the "**Before Payout Parties:**"

> **CTM 2005, LTD.**, a Texas limited partnership, whose address is 55 Waugh Drive, Suite 515, Houston, Texas 77007, represented herein by its duly authorized General Partner, McCord Investments, Inc., a Texas Corporation, which itself is represented by its duly authorized President, Charles T. McCord, III ("**CTM**");

> **FANT ENERGY LIMITED**, a Texas limited partnership, whose address is P.O. Box 55205, Houston, Texas 77255, represented herein by its duly authorized General Partner, Richard E. Fant L.L.C., a Texas limited liability company, which itself is represented herein by its duly authorized Manager, Stephen Swan ("**Fant**");

> **JJS WORKING INTERESTS L.L.C.**, a Texas limited liability company, whose address is 2001 Kirby Drive, Suite 1110, Houston, Texas 77019, represented herein by its duly authorized Manager, Houston Bulldog Capital Management, LLC, a Texas limited liability company, which itself is represented herein by its duly authorized Manager, Justin Simons ("**JJS**");

> **LECHWE, L.L.C.**, a Texas limited liability company, whose address is P.O. Box 270415, Houston, Texas 77277, represented herein by its duly authorized Agent and Attorney-in-Fact, Mark Rauch ("**Lechwe**");

> **LUCAS PETROLEUM GROUP, INC.**, a Texas corporation, whose mailing address is 327 Congress Avenue, Suite 500, Austin, Texas 78701-3656 represented herein by its duly authorized President, Fain Brock ("**Lucas**")

> **TAUBER EXPLORATION & PRODUCTION CO.**, a Texas corporation, whose address is 55 Waugh Drive, Suite 600, Houston, Texas 77007, represented herein by its duly authorized President, Richard E. Tauber ("**Tauber**"); and

> **TCP COTTONWOOD, L.P.**, a Texas limited partnership, whose address is 333 Texas Street, Suite 2020, Shreveport, Louisiana 71101, represented herein by its duly authorized General Partner Trinity-Anderson, LLC, a Louisiana limited liability company, which itself is represented herein by its duly authorized Manager, Anderson Feazel Management, Inc., a Louisiana corporation, which itself is represented herein by its duly authorized Vice-President, T. Cole Anderson ("**TCP**");

> and

The following Parties who are sometimes hereinafter referred to as the

is 5395 Pearl Parkway, Suite 200, Boulder, Colorado 80301, represented herein by its duly authorized Vice President - Land & Legal, Steven R. Hatcher, Jr. ("**Sklarco**");

**ALABAMA OIL COMPANY**, a Mississippi partnership, whose address is P.O. Box 230, Glendora, Mississippi 38928, represented herein by its duly authorized Partner, Walker Sturdivant ("**Alabama Oil**");

**APPLE RIVER INVESTMENTS, L.L.C.,** a Michigan limited liability company, whose address is 1503 Garfield Road North, Traverse City, Michigan 49696, herein represented by its duly authorized Manager, Jordan Management Company, which itself is represented herein by its duly authorized President, Robert M. Boeve ("**Apple River**");

**CHARLES A. MORRISON CONSULTING GEOPHYSICIST, INC.,** a Mississippi corporation, whose address is P.O. Box 249, Madison, Mississippi 39130, represented herein by its duly authorized President, Charles A. Morrison ("**Morrison**");

**KELTON COMPANY, L.L.C.,** a Florida limited liability company, whose address is P.O. Box 230, Pensacola, Florida 32591, represented herein by its duly authorized Manager, Thomas W. Sylte ("**Kelton**");

**KUDZU OIL PROPERTIES, L.L.C.,** a Mississippi limited liability company, whose address is 300 Concourse Boulevard, Suite 101, Ridgeland, Mississippi 39157, represented herein by its duly authorized Manager, Wirt A. Yerger, III ("**Kudzu**"); and

**SYLCO EXPLORATION, L.L.C.,** a Mississippi limited liability company, whose address is P.O. Box 12564, Pensacola, Florida 32591, represented herein by its duly authorized Manager, Andrew T. Sylte ("**Sylco**");

(The Before Payout Parties, together with Sklarco, Alabama Oil, Apple River, and Kudzu (to the extent that each such Party owns a Prospect Payout working interest in the Leases), are sometimes hereinafter referred to individually as a "**Participant**" and collectively as the "**Participants**").

## WITNESSETH:

**WHEREAS**, Apple River, Kelton, Alabama Oil and Kudzu (sometimes hereinafter referred to collectively as "**Sellers**"), or their designee(s), own the oil, gas and mineral leases (sometimes hereinafter referred to individually as a "**Lease**" and collectively as the "**Leases**") described on **Exhibit A-1**, attached hereto and made a part hereof, covering approximately 1,506 net mineral acres located in Clarke County, Mississippi, and lying within the contract area (the "**Contract Area**") and area of mutual interest (the "**AMI**") outlined in black on the plat attached hereto as **Exhibit A**, said lands within the Contract Area and AMI being sometimes hereinafter referred to as the "**North Pachuta Prospect**" or the "**Prospect**;"

**WHEREAS**, subject to the ORRI described in Section 1.1(a) (below) and the Reversionary Back-In Working Interest described in Section 1.3 (below), Sellers desire to sell all or a portion of their right, title, and interest in and to the Leases;

**WHEREAS**, the Participants, other than Sellers, desire to acquire a portion of Sellers' right, title and interest in and to the Leases;

**WHEREAS**, the Participants desire to participate in the acquisition of Additional Leases (as defined below) lying within the boundary of the Contract Area;

**WHEREAS**, the Participants desire to participate in the drilling of the Initial Well described in Section 1.2 (below) to be operated by SEC; and

NOW, **THEREFORE**, the Parties agree as follows:

## Article I. Purchase And Sale And Development Commitments

### Section 1.1. Leases

The Participants shall tender to SEC, on behalf of Sellers, concurrent with their execution of this Agreement, unless other arrangements have been made between SEC and any Participant in advance, in the following proportions, the amount of Seven Hundred Fifty Thousand and 00/100 Dollars ($750,000.00), representing the total lease bonus, brokerage, geological, geophysical and other costs associated with the Prospect through the Effective Date (collectively, the "**Prospect Fee**"):

| Participant | Proportion | Amount |
|---|---|---|
| TCP | 15.00% | $112,500.00 |
| Fant | 5.00% | $37,500.00 |
| JJS | 5.00% | $37,500.00 |
| Lechwe | 2.00% | $15,000.00 |
| Lucas | 7.00% | $52,500.00 |
| Tauber | 5.00% | $37,500.00 |
| CTM | 3.00% | $22,500.00 |
| Sklarco | 25.00% | Already Paid |
| Alabama Oil | 8.00% | Already Paid |
| Apple River | 14.00% | Already Paid |
| Kudzu | 11.00% | Already Paid |
| Total | 100.00% | $750,000.00 |

For and in consideration of the Prospect Fee, and the reservation of the ORRI and the Reversionary Back-In Working Interest described below, the receipt and sufficiency of which are hereby acknowledged, Sellers hereby sell and agree to assign, or cause to be assigned, unto the Participants, in the same proportions shown above, an undivided interest in, to and under the Leases by means of the form of assignments attached hereto as **Exhibits B-1 and B-2** (the "**Assignments**"). The Assignments shall be: (i) made without warranty of title, express or implied, not even for return of the Prospect Fee, except Sellers agree to warrant title against all defects arising out of claims by Sellers or of persons claiming by, through or under Sellers, (ii) subject to the terms of the Leases, including Lessors' Burdens, (iii) subject to the ORRI and the Reversionary Back-In Working Interest and (iv) subject to this Agreement and the JOA described in Section 2.1 of this Agreement (below). The Assignments of interest in the Leases shall be made concurrent with the execution of this Agreement and payment of the Prospect Fee by all Participants.

### Subsection 1.1(a). Overriding Royalty Interests

As further consideration for the sale described in Section 1.1 (above), each of the Leases shall be subject to an overriding royalty interest (the "**ORRI**") in favor of the following Parties (sometimes hereinafter referred to collectively as the "**ORRI Parties**") and shared among them in the following proportions:

| Party | ORRI |
|---|---|
| Alabama Oil | 11.627907% |
| Apple River | 55.813953% |
| Kudzu | 23.255814% |
| Kelton | 9.3023260% |
| Total | 100.00000% |

The ORRI in each Lease shall be equal to the positive difference, if any, between the lessor's royalty under such lease (the "**Lessor's Burden**") and twenty-two percent (22%) of the oil gas and other minerals produced and saved under the terms and provisions of such Lease, from or attributable to any lands covered thereby. It is the intent of Sellers to deliver a seventy-eight percent (78%) of eight-eighths (8/8ths) net revenue interest in each Lease to the Participants, proportionately reduced by the interest owned by each such Participant hereunder. In the event the Lessor's Burden under a particular Lease is greater than twenty-

Participants their respective proportionate shares of such Lease at the net revenue interest at which such Lease is acquired. The ORRI shall be calculated and shall be delivered and paid to the ORRI Parties in the same manner and with the same exclusions, deductions and allocations as are provided for the calculation, delivery and payment of royalties to the lessor in each such Lease. Without limitation of the foregoing, the ORRI shall be subject to proportionate reduction in the same manner as royalty under the Leases, such that if any Lease covers less than the full and entire mineral interest in and to the property described therein, then the overriding royalty interest herein assigned applicable to such tract shall be reduced to that proportion thereof which the actual mineral interest covered by the Lease affecting the tract bears to the full mineral interest therein. Similarly, the ORRI Parties shall pay or bear such taxes and charges and other deductions attributable to the ORRI as are to be paid and borne by the lessor under each such Lease. The ORRI shall likewise attach to and apply to the Additional Leases (defined below) and any other oil and gas lease or oil and gas interest covering lands within the AMI that is acquired by any Party hereto during the term of the AMI in accordance with the provisions of Section 3.1 of this Agreement and Article XV.K of the JOA. In addition, the ORRI shall attach to and apply to any renewal, extension or new lease that covers all or a portion of lands previously covered by an oil and gas lease that is (or becomes) subject to this Agreement, so long as such renewal, extension or new lease is taken or contracted for prior to or within six (6) months after the expiration of the prior lease. Upon written request by any Seller, but in any event no later than thirty (30) days after reaching total depth in the Initial Well, the Participant's shall assign the ORRI to the ORRI Parties by means of the form of assignment attached hereto as **Exhibit C** (the "**ORRI Assignment**").

### Subsection 1.1(b). Additional Leases

For the period commencing on the Effective Date and ending October 31, 2019 (the "**Joint Management Period**"), Sklarco and Apple River shall jointly manage the acquisition of additional leases, options to lease, or both (collectively, the "**Additional Leases**"), covering lands located within the Contract Area. During the Joint Management Period, Sklarco and Apple River agree to confer with one another regarding any prospective Additional Lease where the mineral owner is requesting a royalty in excess of three-sixteenths (3/16) or a lease bonus in excess of $250 per net mineral acre (a "**High Burden Lease**"), and Sklarco and Apple River agree to use best efforts to reach agreement on lease terms acceptable to both the ORRI Parties and the Participants; *provided, however,* that Sklarco and Apple River shall not incur third-party costs in excess of $433,500 in the acquisition of Additional Leases without the prior consent of the Participants. No High Burden Lease shall be acquired during the Joint Management Period without the consent of both Sklarco and Apple River. After expiration of the Joint Management Period, Sklarco shall alone manage the acquisition of Additional Leases and may acquire Additional Leases on terms which it deems acceptable, in its sole discretion.

Prior to reaching total depth in the Initial Well, each of the Participants agrees to pay its before Prospect Payout gross working interest share, as set forth in Exhibit "A" to the JOA, of all actual third-party costs incurred by or on behalf of Sklarco and/or Apple River for such Additional Leases, including, without limitation, all bonus and brokerage costs. The ORRI described above shall burden the Additional Leases. The RBWI (as defined below) shall also burden the Additional Leases. After total depth in the Initial Well is reached, the terms of the AMI (as defined in Section 3.1 of this Agreement) shall govern the acquisition of new leases in the Contract Area. The term "Additional Leases" shall refer only to leases acquired pursuant to this Subsection 1.1(b) and not to leases acquired pursuant to the AMI provisions of Section 3.1 of this Agreement.

### Section 1.2. Initial Well

### Subsection 1.2(a). Drilling Of The Initial Well

At Operator's discretion, but no later than June 30, 2020, and subject to rig availability, and subject to force majeure, Operator shall commence or cause to be commenced operations for the drilling of a well (the "**Initial Well**") at a location 50' FSL & 2,380' FEL, Section 12, Township 2 North, Range 14 East, Clarke County, Mississippi, or as near thereto as practicable, and thereafter continue the drilling of the Initial Well with due diligence to a measured depth of 13,500' in a vertical bore hole, or a depth sufficient in Operator's discretion, to test the Smackover and Norphlet Formations (the "**Objective Depth**"). The Participants agree to participate in the drilling of the Initial Well to the Objective Depth in the same proportions in which they own the Leases as set forth in Section 1.1 above. Concurrent with their execution of this Agreement, the Participants agree to execute an Authority For Expenditure ("**AFE**") attached hereto as **Exhibit D**. Notwithstanding the estimates contained in the AFE, which may be revised from time to time in Operator's discretion, the Participants are responsible for and must pay SEC their share of all actual costs to drill the Initial Well to the Objective Depth in the following manner: (i) SEC will furnish the Participants with a cash call invoice within thirty (30) days of its anticipated spud date of the Initial Well covering their share of the amount estimated in the AFE to drill the Initial Well to the Objective Depth, excluding estimated completion costs, but

including the amount estimated to plug and abandon the Initial Well in the event it is not completed as a producing well, and the Participants must tender to SEC their share within fifteen (5) days of receipt and in any event, prior to spudding the Initial Well, full payment of the cash call invoice, unless other arrangements have been made by any Participant with SEC in advance; and (ii) the Participants must tender to SEC, within 15 days of receipt of (an) invoice(s) from SEC, the difference, if any, between said advance and their share of the actual costs to drill the Initial Well to the Objective Depth.

In the event any Participant from which a request for advance payment was made does not, within the time and manner above provided, fully satisfy the request for advance payment as aforesaid, then Operator, at its option, shall make a second written request by certified mail, return receipt requested, for such advance. Participant shall pay for said advance as aforesaid within three (3) days of the receipt of such second request. If, after the receipt of a second written request as hereinabove provided, any Participant fails to pay its share of the actual costs to drill the Initial Well to the Objective Depth, in the manner and within the time deadlines set forth above, then in that event and only in that event, that Participant hereby agrees to relinquish all of its right, title and interest (excluding any ORRI or RBWI) in the entire North Pachuta Prospect, including, without limitation, the Contract Area, AMI, the Initial Well, the Leases, the Additional Leases and any other oil and gas leases acquired pursuant to this Agreement or the JOA, and agrees to execute those instruments provided by SEC necessary to convey said interest to the Participant(s) who did not fail to pay its share of the actual costs to drill the Initial Well to the Objective Depth and who so elect to accept such an additional interest or portion thereof, for no consideration, not even for return of the Prospect Fee or drilling advance. This forfeiture of interest shall be without prejudice and in addition to the rights of the Operator and Participants who paid their shares of the actual costs to drill the Initial Well to the Objective Depth to offset and/or recover all sums owed by any Participant that fails to pay its share of actual costs to drill the Initial Well to the Objective Depth.

### Subsection 1.2(b). Operations After Reaching The Objective Depth

After the Initial Well has been drilled to the Objective Depth, SEC shall make a copy of any logs, core analysis, drill-stem test analysis or results of any other tests available to a representative of the Participants at the wellsite, or if none is present, by email, facsimile or overnight delivery. SEC shall also furnish the Participants in a like manner with its recommendation regarding the disposition of the wellbore, in accordance with the JOA. The casing point election and all subsequent operations and elections shall be governed by the JOA, provided, however, that failure to respond within the time specified in any election to complete the well shall be deemed an election to participate in SEC's recommended operation.

### Section 1.3. Reversionary Back-In Working Interest

As further consideration for the sale described in Section 1.1 (above), upon reaching Prospect Payout (as defined below), an undivided twenty percent (25%) of the interest acquired by each of the Before Payout Parties pursuant to this Agreement and/or the JOA (including, but not limited to, interests in the Leases, the Additional Leases and any other oil, gas and mineral leases, any wells and related equipment, and any rights-of-way, easements, personal property, real property, seismic rights, equipment, facilities, gas processing facilities, pipelines, and production) shall automatically and permanently transfer to and vest in the After Payout Parties (the **"Reversionary Back-In Working Interest"** or **"RBWI"**) in the proportions set forth below, thereby reducing each such Before Payout Party's interest such that the Before Prospect Payout ("BPPO") gross working interests and After Prospect Payout ("APPO") gross working interests of the Parties are as follows:

| Party | BPPO | APPO |
|---|---|---|
| TCP | 15.000000% | 11.250000% |
| Fant | 5.0000000% | 3.7500000% |
| JJS | 5.0000000% | 3.7500000% |
| Lechwe | 2.0000000% | 1.5000000% |
| Lucas | 7.0000000% | 5.2500000% |
| Sklarco | 25.000000% | 25.450000% |
| Tauber | 5.0000000% | 3.7500000% |
| CTM | 3.0000000% | 2.2500000% |
| Alabama Oil | 8.0000000% | 8.5441860% |
| Apple River | 14.000000% | 20.272093% |
| Kudzu | 11.000000% | 12.838372% |
| Kelton | 0.000000% | 1.3953490% |
| Total | 1.00000000 | 1.00000000 |

Because such individual Prospects work out Payout as a different time frame and in charges that result from other provisions of this Agreement and/or provisions contained in the JOA (e.g., as the result of elections to participate or not to participate in the acquisition of a lease or the drilling of a well), Prospect Payout may occur at different times with respect to different Before Payout Parties.

Although the reversion described in this Section 1.3 occurs automatically as provided in the preceding paragraph, the conveyance of record title to that reversionary working interest shall occur as provided in this paragraph. Specifically, after Prospect Payout occurs with respect to the interest of a Before Payout Party, that Before Payout Party will, at the written request of the After Payout Parties, convey and assign the RBWI to the After Payout Parties from and effective immediately after Prospect Payout occurs as to that Before Payout Party's interest, including, without limitation, that Before Payout Party's interest in (i) the Leases and the Additional Leases (and the lessee's interest under such leases), (ii) all other leases that become subject to this Agreement or the JOA (and the lessee's interest under such leases), (iii) the Initial Well and any subsequent wells drilled pursuant to this Agreement or the JOA, (iv) the oil, gas, and other minerals from any and all such wells and all products produced or derived therefrom and the proceeds from the sale of such oil, gas and other products, and (v) any easements, rights of way, personal property, equipment, facilities, gas processing facilities and pipelines associated with such wells. Such conveyance and assignment shall contain a warranty of title and possession against the claims of anyone claiming by, through or under the assignor, including a warranty that all costs and expenses allocable or chargeable to the interest assigned to the After Payout Parties have been paid. If, prior to recordation of such conveyance and assignment, any Before Payout Party's interest, or any portion thereof, is transferred to another person or entity (e.g., as a result of a transfer or assignment, or as the result of an election not to participate by such Before Payout Party pursuant to the terms of this Agreement or the JOA), such interest shall continue to be subject to and burdened by the RBWI. Upon the occurrence of Prospect Payout, Kelton shall become a Participant under this Agreement.

"**Prospect Payout**" is defined on a Prospect (not well-by-well) basis as the first day of the calendar month following the month in which a Before Payout Party's share of the total and cumulative revenue (as defined below), equals that Before Payout Party's share of the total and cumulative costs and expenses (as defined below). For purposes of Prospect Payout, (i) the "**total and cumulative revenue**" shall consist of the Before Payout Party's share, from and after the Effective Date, of all sales proceeds received for all oil, gas and other hydrocarbons and minerals produced, saved and sold from the Contract Area and of any other revenue, including, but not limited to, insurance proceeds, allocable to or received pursuant to the interest acquired by the Before Payout Party in the Prospect (or in any portion of the Prospect) pursuant to this Agreement and/or the JOA, and (ii) the "**total and cumulative costs and expenses**" shall consist of the Before Payout Party's share, from and after the Effective Date, of all royalty and overriding royalty payments, severance, ad valorem, production and other taxes applicable to production and not measured by such party's other income, the Prospect Fee, all lease acquisition and maintenance costs of the Leases and Additional Leases (including the costs of acquiring leases in the AMI if such party elects to participate in the acquisition of such lease), all seismic survey and data costs billed to the joint account as well as geological and geophysical evaluation costs billed to the joint account, all costs for site preparation, drilling, reworking, deepening, sidetracking, logging, stimulation, testing, equipping, operating, and (if the well is abandoned before Prospect Payout) plugging and abandoning any well within the Contract Area (if the Before Payout Party participates in the well), and the cost of all surface damages, pipelines, gathering and other production handling and gas processing facilities related thereto. SEC shall submit to each Before Payout Party a quarterly report that reflects the status of Prospect Payout for that Before Payout Party.

## Article II. Operations

### Section 2.1. JOA

SEC is hereby designated Operator of all wells drilled within the Contract Area. Except as otherwise provided in this Agreement, all operations within the Contract Area shall be governed by the joint operating agreement (the "**JOA**") attached hereto as **Exhibit E**. The Parties agree to execute the JOA concurrent with their execution of this Agreement. In the event of a conflict between this Agreement and the JOA, this Agreement shall govern and control.

## Article III. Miscellaneous

### Section 3.1. AMI

The Parties have formed an AMI under the terms contained in Article XV.K of the JOA covering the lands within the black outline on the plat attached hereto as Exhibit A which shall govern the acquisition by any of the Parties of any oil and gas lease or oil and gas interest (as defined in the JOA) covering any part of the Contract Area and AMI created under this Agreement. If a lease is acquired from a third-party

lessee, the term "**Lessor's Burden**" as used in paragraph 1.1, above, shall include any overriding royalty interest, production payment, or other burden created by such lessee prior to its acquisition or reserved in the assignment of the lease to the Party which acquires the lease. The ORRI and the RBWI shall apply to and burden new leases acquired under the AMI.

## Section 3.2.  Information,

Upon execution of this Agreement, any Participant may request and shall be entitled to a copy of all of the Leases and of any other title information such as any abstracts of title or drill-site title opinions for the drill-site tract and drilling unit for the Initial Well, along with drilling and completion and log reports for the Initial Well and any subsequent wells in which such Participant participates.

## Section 3.3.  Confidentiality

The Parties agree to keep confidential and not disclose any information about this Prospect, not already disclosed or of public record, to third parties except as required by statutes, regulations, or court order for so long as this Agreement is in effect, but not to exceed five (5) years from the date of this Agreement. Notwithstanding the foregoing, however, any Party may disclose such information to a third-party consultant or a bona-fide third party prospective purchaser who is interested in purchasing all or a portion of that Party's interest in the Prospect, provided that all such third parties agree to execute a confidentiality agreement on a form attached hereto as **Exhibit F**.

## Section 3.4.  Closing

Closing shall occur by mail or by such other means and at such time and place to which the Parties mutually agree.

## Section 3.5.  Binding On Successors And Assigns

This Agreement shall inure to the benefit of and be binding upon the Parties hereto and their respective successors and assigns, subject, however, to the provisions of Section 3.13, below.

## Section 3.6.  Force Majeure

If Operator exercises reasonable efforts in good faith to timely initiate operations to fulfill any drilling or seismic operations set forth in this Agreement, but is prevented from initiating such action by reason of strikes, labor disputes, accidents, action of the elements, adverse weather conditions (or other acts of God), partial or total failure or inability to obtain materials or supplies, including a drilling rig, or in the event that the performance of such drilling or seismic operations is prevented by law, directive or regulations from any authorized agency, or the inability to secure the necessary permits or use agreements from the owners of the surface or the minerals of the subject lands to fulfill either the seismic commitments or the drilling commitments, or causes of the kind enumerated herein or otherwise beyond the control of the Operator and which, by the exercise of due diligence, Operator could not have prevented or is unable to overcome, the time required for performance of such obligations shall be extended for so long and only so long as the condition causing such force majeure continues to exist. Upon cessation of the condition constituting the force majeure, Operator shall have ninety (90) days, or for so long thereafter as may be necessary to achieve optimal seismic acquisition or drilling conditions, within which to initiate the required operation; however, such period will be reduced to the extent operations must be conducted within a fixed period of time to avoid the loss, termination or forfeiture of leasehold interests or the loss of opportunity to earn additional leasehold interests. Operator shall promptly notify the Purchasers in writing of the existence of the force majeure condition, and shall use reasonable efforts in good faith to remove or address the force majeure situation as quickly as practicable. If Operator is precluded from performing any operation hereunder by reason of force majeure and for which a cash advance has been made by a Party hereto, such cash advance shall, upon request, be returned to the Party if, in Operator's opinion, the force majeure event shall exceed sixty (60) days, in which instance Operator may make a subsequent cash advance request in accordance with the other terms of this Agreement.

## Section 3.7.  Entire Agreement

This Agreement and its attachments constitute the entire agreement of the Parties with respect to the subject matter hereof, and any other promises, inducements, representations, warranties, or agreements with respect to the subject matter hereof have been superseded hereby and are not intended to survive this Agreement.  Except as otherwise expressly provided herein, no amendment or modification of this Agreement shall be effective unless set forth in writing and signed by a duly authorized officer of each and all of the Parties.

other agreements relating to the North Pachuta Prospect between one or more of any of the Parties.

Notwithstanding anything to the contrary contained in this Section 3.7, the Parties recognize and acknowledge that Apple River, Kudzu, Alabama Oil, Kelton, Morrison and Sylco (collectively the **"Generating Parties"**), are all parties to a Letter Agreement dated January 2, 2019, as amended by Letter Agreement dated February 28, 2019, by and among themselves (collectively, the **"Prior Agreement"**). The Generating Parties represent and warrant that the Prior Agreement governs only the relationship between themselves (i.e. the manner in which they share costs prior to the Effective Date, the Prospect Fee, the ORRI, the Reversionary Back-In Working Interest and a second reversionary back-in working interest (referenced herein and in the Prior Agreement as the **"Legacy Back-In"**)), and the Prior Agreement is not enforceable against any other Party to this Agreement. As between the Parties to this Agreement, the terms and provisions of this Agreement (and its attachments) shall supersede and prevail over any conflicting terms and provisions contained in the Prior Agreement. The Generating Parties further agree to defend, indemnify and hold harmless the remaining Parties to this Agreement from and against any and all claims, demands or actions, including reasonable attorney's fees and costs, by anyone claiming by, through or under the Generating Parties, that arise out of or are related to the Prior Agreement. Except to the extent modified, supplemented or amended by this Agreement, the Prior Agreement remains in effect as between the Generating Parties and is not terminated by this Agreement. Morrison and Sylco are joining in the execution of this Agreement as they are the owners of the Legacy Back-In. By their respective execution of this Agreement, Morrison and Sylco ratify, adopt, confirm and agree to be bound by this Participation Agreement and its Exhibits as to their respective working interests should the Legacy Back-In occur and each become the owner of a working interest in the North Pachuta Prospect. At such time as Morrison and Sylco become owners of working interests in the North Pachuta Prospect, each will be considered a Participant under this Agreement.

### Section 3.8. Severability

The invalidity of any one or more of the provisions of this Agreement does not affect the remaining portions of this Agreement, and in case of any such invalidity, this Agreement should be construed as if the invalid provision(s) had not been inserted.

### Section 3.9. Notices

All notices between the Parties authorized or required by any of the provisions of this Agreement (specifically including any "written request"), unless otherwise expressly provided, shall be given in writing by email or facsimile or regular or express mail or commercial courier, addressed to those of the Parties to whom the notice is given at the email addresses or fax telephone numbers or addresses set forth in Exhibit A to the JOA. Any such notice provided by email or facsimile transmission, whether an originating notice or responsive notice, shall be conclusively deemed received by the recipient (for all purposes) upon transmission by the sender, except where the sender receives a bounce-back notification, error message or similar notification indicating that the transmission failed for any reason. Notices provided by the other methods listed above shall be deemed received in accordance with the provisions of Article XII of the JOA. Any Party may change its designated email address, fax telephone number or address at any time, and from time to time, by giving written notice thereof to the other Parties.

### Section 3.10. Headings for Convenience

The article, section, and subsection headings used in this Agreement are inserted for convenience only and shall not be regarded in construing this Agreement.

### Section 3.11. Time

Time is of the essence hereunder.

### Section 3.12. Governing Law

This Agreement shall be governed by and interpreted in accordance with the laws of the State of Mississippi.

### Section 3.13. Relationship Of The Parties

Liability of the Parties hereto shall be several and neither joint nor collective. Each Party shall make its own elections under this Agreement and shall be responsible only for its obligations as herein set out. It is not the intention of the Parties to create, nor shall this Agreement be construed as creating, a mining or other partnership, joint venture, or association between the Parties.

Section 3.14.  Assignability

The Parties to this Agreement may assign all or part of their rights and obligations hereunder, provided, however, that any such assignment must be made subject to the terms and conditions of this Agreement and the JOA, and provided further that no such assignment shall be effective as to the Operator until 30 days after the Operator shall have been provided with a certified copy of a recorded instrument evidencing the assignment and with such other documents and information as the Operator may reasonably request.

### Section 3.15.  Term

This Agreement shall remain in full force and effect as between the Parties until expiration of the last lease jointly owned by them, or any combination of the Parties, covering any part of the Contract Area and AMI created under this Agreement.

### Section 3.16.  Counterparts

This Participation Agreement may be executed in any number of counterparts and each counterpart shall constitute and shall be deemed to be an original instrument, but all such counterparts shall constitute but one instrument.

### Section 3.17.  Sophisticated Investors

By execution of this Agreement, the Participants confirm that they have a working knowledge of the oil and gas industry and that each has thoroughly investigated its participation in the Prospect.  Each Participant acknowledges that it is a sophisticated investor and it (or its owner) has a financial net worth in excess of one million dollars.  Each Participant represents it can afford to take the financial risk associated with participation in an oil and gas drilling venture, including without limitation, loss of not just its share of the Prospect Fee and drilling advance, but also its share of all other costs incurred in operations on the Prospect.  EACH PARTICIPANT ACKNOWLEDGES THERE CAN BE NO ASSURANCE THAT OIL AND/OR GAS WILL BE FOUND, OR IF FOUND, THAT IT CAN BE PRODUCED IN PROFITABLE QUANTITIES.  Each Participant further confirms and accepts that the offering of the interest herein purchased has not been registered pursuant to the Federal Securities Act of 1933, as amended, the rules and regulations of the Securities and Exchange Commission promulgated or issued thereunder or the securities laws of the State of Louisiana or any other state.  Each Participant has hereby agreed to participate in the Prospect for investment purposes only, and not with a view to or for sale in connection with any distribution of interests in the Prospect within the meaning of said laws.

**THUS DONE AND SIGNED** by each of the Parties on the dates set forth in their acknowledgments, but effective as of the Effective Date.

SKLAR EXPLORATION COMPANY L.L.C.

By: _____
        Steven R. Hatcher, Jr.
        Vice President - Land & Legal

SKLARCO L.L.C.

By: _____
        Steven R. Hatcher, Jr.
        Vice President - Land & Legal

ALABAMA OIL COMPANY

By: _____
            Walker Sturdivant
            Partner

APPLE RIVER INVESTMENTS, L.L.C.

By: Jordan Management Company, Manager

By: _____
       Robert M. Boeve
       President


CHARLES A. MORRISON CONSULTING
GEOPHYSICIST, INC.


By: _____
       Charles A. Morrison
       President

CTM 2005, LTD

By: McCord Investments, Inc., General Partner


By: _____
       Charles T. McCord, III
       President

FANT ENERGY LIMITED

By: Richard E. Fant, L.L.C., General Partner


By: _____
       Stephen Swan
       Manager

JJS WORKING INTERESTS, L.L.C.

By: Houston Bulldog Capital Management, L.L.C.,
Manager


By: _____
       Justin Simmons
       Manager

LECHWE, L.L.C.


By: _____
       Mark Rauch
       Agent and Attorney-in-Fact

LUCAS PETROLEUM GROUP, INC.


By: _____
       Fain Brock
       President

KELTON COMPANY, L.L.C.


By: _____
       Thomas W. Sylte
       Manager

KUDZU OIL PROPERTIES, L.L.C.

By: _____

      Wirt A. Yerger, III

      Member


SYLCO EXPLORATION, L.L.C.


By: _____

      Andrew T. Sylte

      Manager

TAUBER EXPLORATION & PRODUCTION CO.


By: _____

      Richard E. Tauber

      President


TCP COTTONWOOD, L.P.

By: TRINITY-ANDERSON, LLC

      General Partner

By: ANDERSON FEAZEL MANAGEMENT, INC.

      Manager


By: _____

      T. Cole Anderson

      Vice-President


Attachments:

| | |
|---|---|
| Exhibit A: | Plat |
| Exhibit A-1: | Description of Leases |
| Exhibit B-1: | Assignment (Apple River Investments, L.L.C.) |
| Exhibit B-2: | Assignment (Foote Oil And Gas Properties, LLC) |
| Exhibit C: | Assignment of ORRI |
| Exhibit D: | AFE |
| Exhibit E: | JOA |
| Exhibit F: | Confidentiality Agreement |

EXHIBIT A

Attached to and made a part of that certain Participation Agreement (North Pachuta Prospect) dated effective as of February 20, 2019, by and between Sklar Exploration Company L.L.C., Sklarco L.L.C., Alabama Oil Company, Apple River Investments, L.L.C., Charles A. Morrison Consulting Geophysicist, Inc., CTM 2005, Ltd., Fant Energy Limited, JJS Working Interests, L.L.C., Kelton Company, L.L.C., Kudzu Oil Properties, L.L.C., Lechwe, L.L.C., Lucas Petroleum Group, Inc., Sylco Exploration, L.L.C., Tauber Exploration & Production Co., and TCP Cottonwood, L.P.

PLAT

NORTH PACHUTA PROSPECT
CLARKE COUNTY, MISSISSIPPI

Attached to and made a part of that certain Participation Agreement (North Pachuta Prospect) dated effective as of February 20, 2019, by and between Sklar Exploration Company L.L.C., Sklarco L.L.C., Alabama Oil Company, Apple River Investments, L.L.C., Charles A. Morrison Consulting Geophysicist, Inc., CTM 2005, Ltd., Fant Energy Limited, JJS Working Interests, L.L.C., Kelton Company, L.L.C., Kudzu Oil Properties, L.L.C., Lechwe, L.L.C., Lucas Petroleum Group, Inc., Sylco Exploration, L.L.C., Tauber Exploration & Production Co., and TCP Cottonwood, L.P.

## OIL AND GAS LEASES

| Lease # | Lessor | Lessee | Lease Date | Lease Term | Gross Acres | Estimated Net Acres | Book/Page | T-R-S |
|---|---|---|---|---|---|---|---|---|
| 230230004 | Adams, Maxine Moore | Foote Oil and Gas Properties, LLC | 03/07/17 | 3 + 2 | 200.9400 | 25.1175 | 0194/256 | 2N-14E, 12, 13 |
| 230230100 | Allar Company, The, and EG3, Inc. | Apple River Investments, LLC | 12/26/18 | 3 | 238.0000 | 114.0000 | 0195/395 | 2N-15E, 18 |
| 230230131 | Anadarko E&P Onshore LLC | Apple River Investments, LLC | 01/14/19 | 3 | 200.0000 | 45.0000 | Pending | 2N-14E, 12, 13 |
| 230230092 | Archey, James L., sole and only heir-at-law of Winnie Sanders Archey, dec. | Foote Oil and Gas Properties, LLC | 10/29/18 | 3 + 2 | 83.0000 | 7.4107 | 0195/402 | 2N-14E, 1 |
| 230230101 | Baker, Ada R. | Foote Oil and Gas Properties, LLC | 12/07/18 | 3 + 2 | 40.0000 | 2.5000 | 0195/406 | 2N-15E, 19 |
| 230230045 | Barentine, Faye E. | Venture Oil & Gas Inc. | 05/07/14 | 5 | 40.0000 | 2.2917 | 0193/775 | 2N-14E, 1 |
| 230230098 | Black Stone Minerals Co., LP | Foote Oil and Gas Properties, LLC | 12/15/18 | 3 | 160.0000 | 38.9248 | 0195/409 | 2N-15E, 18 |
| 230230099 | Black Stone Minerals Co., LP | Foote Oil and Gas Properties, LLC | 12/15/18 | 3 | 160.0000 | 94.3333 | 0195/413 | 2N-14E, 13; 2N-15E, 18 |
| 230230050 | Black Stone Minerals Co., LP & Matagorda B1, LP | Foote Oil and Gas Properties, LLC | 06/21/17 | 3 | 120.0000 | 60.0000 | 0194/262 | 2N-14E, 13; 2N-15E, 18 |
| 230230051 | Black Stone Minerals Co., LP & Matagorda B1, LP | Foote Oil and Gas Properties, LLC | 06/21/17 | 3 | 26.5500 | 26.2000 | 0194/266 | 2N-14E, 12 |
| 230230040 | Blackburn James T. a/k/a Tommy Blackburn etux Katherine M. Blackburn | Foote Oil and Gas Properties, LLC | 04/04/17 | 3 + 2 | 3.0000 | 0.7500 | 0194/259 | 2N-14E, 12 |
| 230230054 | Boney, Charles Larry etux Patricia M. Boney | Foote Oil and Gas Properties, LLC | 09/27/18 | 3 + 2 | 61.0000 | 30.5000 | 0195/417 | 2N-15E, 19 |
| 230230055 | Boney, Johnny Ray | Foote Oil and Gas Properties, LLC | 10/24/18 | 3 + 2 | 61.0000 | 30.5000 | 0195/216 | 2N-15E, 18 |
| 230230056 | Boney, Roy Stevens, etux Linda W. Boney | Foote Oil and Gas Properties, LLC | 09/11/18 | 3 + 2 | 61.0000 | 30.5000 | 0195/422 | 2N-15E, 18, 19 |
| 230230010 | Bridges, W. P., Jr. | Foote Oil and Gas Properties, LLC | 03/07/17 | 3 + 2 | 120.0000 | 50.0000 | 0194/270 | 2N-14E, 13; 2N-15E, 18 |
| 230230057 | Buchanan Company, LLC, The | Foote Oil and Gas Properties, LLC | 09/24/18 | 3 + 2 | 120.0000 | 1.6667 | 0195/432 | 2N-15E, 18, 19 |
| 230230021 | Chavez, Jesse, Jr., etux Rita Chavez | Foote Oil and Gas Properties, LLC | 03/24/17 | 3 + 2 | 3.0200 | 0.3775 | 0194/273 | 2N-14E, 12 |
| 230230038 | Clark, Elloine M. | Foote Oil and Gas Properties, LLC | 04/05/17 | 3 | 160.9400 | 45.7673 | 0194/276 | 2N-14E, 12 |
| 230230102 | Clayton, F. L. Trust, James D. Angero, Trustee | Foote Oil and Gas Properties, LLC | 12/18/18 | 3 | 160.0000 | 20.0000 | 0195/443 | 2N-14E, 13 |
| 230230081 | Combest, Joye Evans | Foote Oil and Gas Properties, LLC | 10/15/18 | 3 + 2 | 120.0000 | 3.0770 | 0195/447 | 2N-15E, 18 |
| 230230058 | Couch, Bettye Gayle | Foote Oil and Gas Properties, LLC | 10/04/18 | 3 + 2 | 120.0000 | 7.5000 | 0195/450 | 2N-15E, 18, 19 |
| 230230018 | Cranford, Elsie S. aka Elsie Lucille Cranford Charles Tenon Cranford, AIF DPOA dated 12-14-12 | Foote Oil and Gas Properties, LLC | 03/01/17 | 3 + 2 | 77.1300 | 19.2825 | 0194/279 | 2N-14E, 12 |
| 230230017 | Cranford, Gary M. et ux Monay C. Cranford | Foote Oil and Gas Properties, LLC | 03/08/17 | 3 + 2 | 2.8700 | 0.7175 | 0194/282 | 2N-14E, 12 |

| ID | Name | Lessee | Date | Type | Acres | | Book/Page | Tract |
|---|---|---|---|---|---|---|---|---|
| 230230... | Cranford, Jonathan M. et ux | Foote Oil and Gas Properties, LLC | 02/28/17 | 3 + 2 | 40.0000 | 10.0000 | 0194/285 | 2N-14E, 13 |
| 230230059 | Cranford, Jonathan M. etux Amanda G. Cranford | Foote Oil and Gas Properties, LLC | 10/09/18 | 3 + 2 | 30.0000 | 12.3214 | 0195/453 | 2N-14E, 1 |
| 230230009 | Culver, Rennie W. | Foote Oil and Gas Properties, LLC | 03/02/17 | 3 + 2 | 160.9400 | 20.1175 | 0194/288 | 2N-14E, 12 |
| 230230001 | Davidson, William T. and LaVera S. Revocable Trust, William T. and LaVera S. Davidson, Trustees | Foote Oil and Gas Properties, LLC | 02/24/17 | 3 + 2 | 106.3000 | 19.3625 | 0194/291 | 2N-14E, 7 |
| 230230120 | Desoto Natural Resources, Inc. | Foote Oil and Gas Properties, LLC | 01/08/19 | 3 | 120.0000 | 2.1329 | 0195/457 | 2N-14E, 13 |
| 230230008 | Duvall, William P. | Foote Oil and Gas Properties, LLC | 03/09/17 | 3 + 2 | 6.1400 | 1.5350 | 0194/294 | 2N-15E, 18 |
| 230230122 | EFC Minerals, LLC | Foote Oil and Gas Properties, LLC | 01/08/19 | 3 | 120.0000 | 2.1329 | 0195/461 | 2N-14E, 13 |
| 230230121 | Embleton, James R. Family Trust U/A dated 5-23-01 Phyllis J. Embleton, Trustee | Foote Oil and Gas Properties, LLC | 01/08/19 | 3 | 120.0000 | 0.9139 | 0195/465 | 2N-14E, 13 |
| 230230060 | Evans, Alfred N. | Foote Oil and Gas Properties, LLC | 10/15/18 | 3 + 2 | 120.0000 | 3.0770 | 0195/468 | 2N-15E, 18 |
| 230230061 | Evans, James K. | Foote Oil and Gas Properties, LLC | 10/15/18 | 3 + 2 | 120.0000 | 3.0770 | 0195/471 | 2N-15E, 18 |
| 230230103 | Evans, Marie Sanders | Foote Oil and Gas Properties, LLC | 11/12/18 | 3 + 2 | 1.5000 | 1.5000 | 0195/474 | 2N-14E, 1 |
| 230230082 | Evans, Robert W., a widower | Foote Oil and Gas Properties, LLC | 10/15/18 | 3 + 2 | 119.0000 | 9.1154 | 0195/480 | 2N-15E, 18 |
| 230230083 | Evans, Stephen Ray | Foote Oil and Gas Properties, LLC | 10/15/18 | 3 + 2 | 120.0000 | 1.5385 | 0195/484 | 2N-15E, 18 |
| 230230016 | Fatherree Family Limited Partnership | Foote Oil and Gas Properties, LLC | 02/28/17 | 3 + 2 | 80.0000 | 20.0000 | 0194/297 | 2N-14E, 13 |
| 230230062 | Fatherree Family Limited Partnership | Foote Oil and Gas Properties, LLC | 10/1/2018 | 3 + 2 | 215.0000 | 120.7500 | 0195/487 | 2N-14E, 13; 2N-15E, 18, 19 |
| 230230093 | Freeman, Daniel Michael | Foote Oil and Gas Properties, LLC | 10/05/18 | 3 + 2 | 77.0000 | 9.6250 | 0195/491 | 2N-14E, 1 |
| 230230022 | Freeman, Sandra Draughn | Foote Oil and Gas Properties, LLC | 03/14/17 | 3 + 2 | 120.0000 | 3.3333 | 0194/301 | 2N-14E, 13; 2N-15E, 18 |
| 230230119 | Gardner Clark Family, LLC | Foote Oil and Gas Properties, LLC | 01/02/19 | 3 | 200.0000 | 7.5000 | 0195/439 | 2N-14E, 12, 13; 2N-15E, 18 |
| 230230039 | Gargaro, Celia Franklin Draughn | Foote Oil and Gas Properties, LLC | 03/14/17 | 3 + 2 | 120.0000 | 1.6667 | 0194/305 | 2N-14E, 13; 2N-15E, 18 |
| 230230015 | Goff, James W. | Foote Oil and Gas Properties, LLC | 03/09/17 | 3 + 2 | 9.0000 | 2.2500 | 0194/309 | 2N-15E, 18 |
| 230230104 | Great Southern Capital Corporation | Foote Oil and Gas Properties, LLC | 12/20/18 | 3 + 2 | 120.0000 | 15.0000 | 0195/494 | 2N-15E, 18, 19 |
| 230230030 | Haralson, Willie, Jr. etux Theresa H. Haralson | Foote Oil and Gas Properties, LLC | 03/31/17 | 3 + 2 | 2.0000 | 1.0000 | 0194/312 | 2N-14E, 12 |
| 230230063 | Hash, Robert Bryan Family 2006 GST Exempt Trust Robert Bryan Hash, Trustee | Foote Oil and Gas Properties, LLC | 10/16/18 | 3 + 2 | 80.0000 | 1.2500 | 0195/497 | 2N-15E, 18 |
| 230230064 | Hash, Steven Vincent Family 2006 GST Exempt Trust Steven Vincent Hash, Trustee | Foote Oil and Gas Properties, LLC | 10/16/18 | 3 + 2 | 80.0000 | 1.2500 | 0195/500 | 2N-15E, 18 |
| 230230105 | Hawk, Patricia McGlothlin Family Trust, Patricia Hawk Gano, Trustee | Foote Oil and Gas Properties, LLC | 10/16/18 | 3 + 2 | 80.0000 | 0.8333 | 0195/503 | 2N-15E, 18 |
| 230230094 | Heard, The Raymond L. and Leticia L. Revocable Trust, Raymond L. Heard and Leticia L. Heard, Trustees | Foote Oil and Gas Properties, LLC | 11/01/18 | 3 + 2 | 80.0000 | 20.0000 | 0195/506 | 2N-14E, 12 |
| 230230106 | Hemeter Properties, LLC | Foote Oil and Gas Properties, LLC | 01/02/19 | 3 | 200.0000 | 7.5000 | 0195/510 | 2N-14E, 12, 13; 2N-15E, 18 |

| 230230095 | Herring, Virginia D. | Foote Oil and Gas Properties, LLC | 11/12/18 | 3 + 2 | 77.0000 | 19.2500 | 0195/514 | 2N-14E, 1 |
| 230230107 | Hill, Cecil Morgan, Jr. | Foote Oil and Gas Properties, LLC | 11/27/18 | 3 + 2 | 40.0000 | 10.0000 | 0195/517 | 2N-15E, 19 |
| 230230108 | Hill, Dan L. | Foote Oil and Gas Properties, LLC | 11/30/18 | 3 + 2 | 40.0000 | 2.5000 | 0195/520 | 2N-15E, 19 |
| 230230109 | Hill, Dianne | Foote Oil and Gas Properties, LLC | 11/30/18 | 3 + 2 | 40.0000 | 2.5000 | 0195/523 | 2N-15E, 19 |
| 230230123 | Hillabrant, Walter John | Foote Oil and Gas Properties, LLC | 11/05/18 | 3 + 2 | 80.0000 | 0.8333 | 0195/526 | 2N-15E, 18 |
| 230230046 | Horne, Raymond L. as top leased by Gay Dawn Horne-Nelson Oil and Gas Lease to Foote Oil and Gas Properties dated 2/14/19, effective 5/2/19, for a term of 3 years + 2 year option to extend; recording pending | Venture Oil & Gas Inc. | 5/2/2014 / 5/2/2019 | 5/ Top Lease 3 + 2 | 57.0000 | 14.2500 | 0193/749 | 2N-14E, 1 |
| 230230044 | Horne-Nelson, Gay Dawn, as top leased by Oil and Gas Lease dated 2/14/19, effective 5/2/19, for a term of 3 years + 2 year option to extend; recording pending | Venture Oil & Gas Inc. | 5/2/2014 / 5/2/2019 | 5/ Top Lease 3 + 2 | 57.0000 | 14.2500 | 0193/754 | 2N-14E, 1 |
| 230230111 | Horne-Nelson, Gay Dawn | Foote Oil and Gas Properties, LLC | 11/29/18 | 3 + 2 | 20.0000 | 10.0000 | 0195/529 | 2N-14E, 1 |
| 230230023 | Howard, Mary Goff et vir Bruce A. Howard | Foote Oil and Gas Properties, LLC | 04/04/17 | 3 + 2 | 22.0000 | 15.5000 | 0194/318 | 2N-14E, 12; 2N-15E, 18 |
| 230230024 | Howard, Mary Goff et vir Bruce A. Howard | Foote Oil and Gas Properties, LLC | 04/04/17 | 3 + 2 | 49.0000 | 12.2500 | 0194/321 | 2N-14E, 12; 2N-15E, 18 |
| 230230030 | Howard, Mary Goff et vir Bruce A. Howard | Foote Oil and Gas Properties, LLC | 02/28/17 | 3 + 2 | 168.0000 | 89.0000 | 0194/315 | 2N-14E, 12, 13; 2N-15E, 18 |
| 230230037 | Huff, William H., Sr. | Foote Oil and Gas Properties, LLC | 04/13/17 | 3 | 35.0000 | 17.5000 | 0194/324 | 2N-14E, 12 |
| 230230065 | Hughes, Deborah A. | Foote Oil and Gas Properties, LLC | 09/20/18 | 3 + 2 | 80.0000 | 3.3333 | 0195/532 | 2N-15E, 18 |
| 230230084 | Hughes, F. Simpson | Foote Oil and Gas Properties, LLC | 09/24/18 | 3 + 2 | 80.0000 | 0.8333 | 0195/535 | 2N-15E, 18 |
| 230230066 | Hughes, Janie E. | Foote Oil and Gas Properties, LLC | 09/24/18 | 3 + 2 | 80.0000 | 0.8333 | 0195/538 | 2N-15E, 18 |
| 230230112 | Hughes, John A., Jr. | Foote Oil and Gas Properties, LLC | 09/24/18 | 3 + 2 | 80.0000 | 0.8333 | 0195/541 | 2N-15E, 18 |
| 230230067 | Hughes, Richard F. | Foote Oil and Gas Properties, LLC | 09/24/18 | 3 + 2 | 80.0000 | 0.8333 | 0195/0544 | 2N-15E, 18 |
| 230230049 | Ivy, Elizabeth P., as top leased by Oil and Gas Lease dated 2/15/19, effective 5/6/19, for a term of 3 years + 2 year option to extend; recording pending | Venture Oil & Gas Inc. | 5/6/2014 / 5/6/2019 | 5/ Top Lease 3 + 2 | 40.0000 | 0.5600 | 0193/759 | 2N-14E, 1 |
| 230230048 | Ivy, Lisa A., as top leased by Oil and Gas Lease dated 2/15/19, effective 5/6/19, for a term of 3 years + 2 year option to extend; recording pending | Venture Oil & Gas Inc. | 5/6/2014 / 5/6/2019 | 5/ Top Lease 3 + 2 | 19.1100 | 5.2775 | 0193/763 | 2N-14E, 1 |
| 230230025 | Jones, Susan Meyer | Foote Oil and Gas Properties, LLC | 03/03/17 | 3 + 2 | 200.9400 | 2.8235 | 0194/326 | 2N-14E, 12, 13 |
| 230230047 | Kaszei, Diane C. | Venture Oil & Gas Inc. | 05/20/14 | 5 | 40.0000 | 0.7639 | 0193/783 | 2N-14E, 1 |
| 230230042 | Kidd, Howard L., Jr. | Venture Oil & Gas Inc. | 05/07/14 | 5 | 1.0000 | 0.2500 | 0193/767 | 2N-14E, 12 |
| 230230068 | Kirkland, Carolynn N., widow and sole devisee U/W of John K. Kirkland, Jr., deceased | Foote Oil and Gas Properties, LLC | 10/08/18 | 3 + 2 | 120.0000 | 1.2500 | 0195/547 | 2N-15E, 18, 19 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 230230069 | Kirkland, Jeremiah S. | Foote Oil and Gas Properties, LLC | 10/08/18 | 3 + 2 | 120.0000 | 1.2500 0195/550 | 2N-15E, 18, 19 |
| 230230096 | Knapp, Charles Darius | Foote Oil and Gas Properties, LLC | 10/23/18 | 3 + 2 | 120.0000 | 0.6154 0195/553 | 2N-15E, 18 |
| 230230110 | Knapp, Norma Jo | Foote Oil and Gas Properties, LLC | 10/23/18 | 3 + 2 | 120.0000 | 0.6154 0195/556 | 2N-15E, 18 |
| 230230085 | Lightsey, Katie Sanders | Foote Oil and Gas Properties, LLC | 10/25/18 | 3 + 2 | 83.0000 | 7.4107 0195/559 | 2N-14E, 1 |
| 230230026 | Lucas, Kevin Wade etux Bobbie Jo Lucas | Foote Oil and Gas Properties, LLC | 03/23/17 | 3 + 2 | 6.6800 | 0.8350 0194/239 | 2N-14E, 12 |
| 230230070 | McCoy, Margie Ruth | Foote Oil and Gas Properties, LLC | 10/23/18 | 3 + 2 | 120.0000 | 0.6154 0195/562 | 2N-15E, 18 |
| 230230027 | McGowan, Debbie W. | Foote Oil and Gas Properties, LLC | 03/01/17 | 3 + 2 | 120.0000 | 5.0000 0194/332 | 2N-14E, 13; 2N-15E, 18 |
| 230230006 | Meyer, Russell | Foote Oil and Gas Properties, LLC | 03/03/17 | 3 + 2 | 200.9400 | 2.8235 0194/335 | 2N-14E, 12, 13 |
| 230230011 | Mills, Gerald D. | Foote Oil and Gas Properties, LLC | 03/02/17 | 3 + 2 | 200.9400 | 2.8235 0194/338 | 2N-14E, 12, 13 |
| 230230007 | Mills, William Courtney, Jr. | Foote Oil and Gas Properties, LLC | 03/02/17 | 3 + 2 | 200.9400 | 2.8235 0194/341 | 2N-14E, 12, 13 |
| 230230113 | Mosley, Connie R. | Foote Oil and Gas Properties, LLC | 12/04/18 | 3 + 2 | 40.0000 | 0.8333 0195/565 | 2N-15E, 19 |
| 230230086 | Mullett, Ann C. Revocable Trust dated 11/8/99, John R. Mullett, Successor Trustee | Foote Oil and Gas Properties, LLC | 09/21/18 | 3 + 2 | 120.0000 | 1.6667 0195/568 | 2N-15E, 18, 19 |
| 230230079 | Mullett, Robert H. | Foote Oil and Gas Properties, LLC | 09/21/18 | 3 + 2 | 120.0000 | 1.6667 0195/571 | 2N-15E, 18, 19 |
| 230230124 | Muths, Celia Carter | Foote Oil and Gas Properties, LLC | 01/10/19 | 3 + 2 | 120.0000 | 7.5000 0195/574 | 2N-15E, 18, 19 |
| 230230125 | Norton, Carolyn C. Trust Carolyn C. Norton, Trustee | Foote Oil and Gas Properties, LLC | 01/08/19 | 3 | 120.0000 | 2.1329 0195/577 | 2N-14E, 13 |
| 230230114 | Parawon Corporation | Foote Oil and Gas Properties, LLC | 12/20/18 | 3 | 176.9400 | 15.3089 0195/581 | 2N-14E, 12; 2N-15E, 18 |
| 230230041 | Parker, Brach | Venture Oil & Gas Inc. | 05/12/14 | 5 | 40.0000 | 2.6823 0193/779 | 2N-14E, 1 |
| 230230053 | Parker, Brian | Venture Oil & Gas Inc. | 05/20/14 | 5 | 40.0000 | 0.7639 0193/793 | 2N-14E, 1 |
| 230230115 | Parker, Dr. Paul H., Jr. | Foote Oil and Gas Properties, LLC | 12/20/18 | 3 + 2 | 160.0000 | 8.0000 0195/586 | 2N-14E, 13 |
| 230230052 | Parker, James | Venture Oil & Gas Inc. | 05/20/14 | 5 | 40.0000 | 0.7639 0193/787 | 2N-14E, 1 |
| 230230043 | Parker, James A. & Ruby P. | Venture Oil & Gas Inc. | 05/07/14 | 5 | 40.0000 | 2.2917 0193/771 | 2N-14E, 1 |
| 230230126 | Peachtree Properties, LLC | Foote Oil and Gas Properties, LLC | 01/02/19 | 3 | 200.0000 | 7.5000 0195/589 | 2N-14E, 12, 13; 2N-15E, 18 |
| 230230013 | Price, Barbara W., widow of James D. Price, Jr., dec. | Foote Oil and Gas Properties, LLC | 03/09/17 | 3 + 2 | 14.4000 | 3.6000 0194/344 | 2N-15E, 18 |
| 230230012 | Price, Robert B., III | Foote Oil and Gas Properties, LLC | 03/03/17 | 5 | 175.9600 | 5.6691 0194/347 | 2N-14E, 12, 13 |
| 230230116 | Pritchett, Dustin J., etux Whitney J. Pritchett | Foote Oil and Gas Properties, LLC | 11/13/18 | 3 + 2 | 4.0000 | 3.2857 0195/593 | 2N-14E, 1 |
| 230230127 | Rhodes, Estate of Mary Winona Parker, by Melton E. Rhodes, Executor | Foote Oil and Gas Properties, LLC | 01/04/19 | 3 + 2 | 160.0000 | 6.0000 0195/597 | 2N-14E, 13 |
| 230230080 | Roberson, William Marion, II | Foote Oil and Gas Properties, LLC | 10/08/18 | 3 + 2 | 120.0000 | 5.0000 0195/600 | 2N-15E, 18, 19 |
| 230230028 | Roszel, Norman Rikki, distributee of the Eva Marie Hunter Parrack Revocable Trust, in compliance with the Family Settlement Agreement dated November 7, 2009, joined herein by his wife, Mary Roszel | Foote Oil and Gas Properties, LLC | 03/24/17 | 3 + 2 | 200.0000 | 5.0000 0194/351 | 2N-14E, 12, 13 |

| ID | Name | Lessee | Date | Code | Acres | | Book/Page | Section |
|---|---|---|---|---|---|---|---|---|
| 230230117 | Rowell,... | Foote Oil and Gas Properties, LLC | 12/04/18 | 3 + 2 | 40.0000 | 0.8333 | 0195/603 | 2N-15E, 19 |
| 230230087 | Rowell, Julie Kirkland | Foote Oil and Gas Properties, LLC | 10/08/18 | 3 + 2 | 120.0000 | 1.2500 | 0195/606 | 2N-15E, 18, 19 |
| 230230091 | Sanders, Calvin Adams, a widower, by Margaret Gay Hardeman under POA (Life Estate) | Foote Oil and Gas Properties, LLC | 10/23/18 | 3 + 2 | 2.0000 | 1.6429 | 0195/609 | 2N-14E, 1 |
| 230230071 | Sanders, Robert M. etux Peggy T. Sanders | Foote Oil and Gas Properties, LLC | 10/17/18 | 3 + 2 | 77.0000 | 31.6250 | 0195/614 | 2N-14E, 1 |
| 230230014 | Sexton, Sue P., f/k/a Sue P. Milam | Foote Oil and Gas Properties, LLC | 03/09/17 | 3 + 2 | 15.5000 | 3.8750 | 0194/354 | 2N-15E, 18 |
| 230230029 | Sinclair, Emily | Foote Oil and Gas Properties, LLC | 03/14/17 | 3 + 2 | 160.9400 | 4.9036 | 0194/361 | 2N-14E, 12 |
| 230230019 | Sinclair, Robert E. | Foote Oil and Gas Properties, LLC | 03/14/17 | 3 + 2 | 160.9400 | 4.9036 | 0194/364 | 2N-14E, 12 |
| 230230031 | Sinclair, Susan Leigh | Foote Oil and Gas Properties, LLC | 03/14/17 | 3 + 2 | 160.9400 | 4.9036 | 0194/367 | 2N-14E, 12 |
| 230230072 | Smith, Deborah Freeman | Foote Oil and Gas Properties, LLC | 10/05/18 | 3 + 2 | 77.0000 | 9.6250 | 0195/618 | 2N-14E, 1 |
| 230230073 | Smith, Toye Evans | Foote Oil and Gas Properties, LLC | 10/15/18 | 3 + 2 | 120.0000 | 3.0770 | 0195/621 | 2N-15E, 18 |
| 230230128 | Speed, Marvin B., Executor of the Estates of James T. Speed and Mary Carter Speed | Foote Oil and Gas Properties, LLC | 01/10/19 | 3 + 2 | 120.0000 | 7.5000 | 0195/624 | 2N-15E, 18, 19 |
| 230230034 | Sullivan, Paul, Administrator of Estate of Terry Draughn Sullivan | Foote Oil and Gas Properties, LLC | 03/14/17 | 3 + 2 | 120.0000 | 3.3330 | 0194/370 | 2N-14E, 13; 2N-15E, 18 |
| 230230118 | T. R. Clark, LLC | Foote Oil and Gas Properties, LLC | 01/02/19 | 3 | 200.0000 | 7.5000 | 0195/435 | 2N-14E, 12, 13; 2N-15E, 18 |
| 230230074 | Talbot, Jean B. | Foote Oil and Gas Properties, LLC | 09/20/18 | 3 + 2 | 80.0000 | 3.3333 | 0195/627 | 2N-15E, 18 |
| 230230129 | Termo Company, The | Foote Oil and Gas Properties, LLC | 01/08/19 | 3 | 120.0000 | 15.1875 | 0195/630 | 2N-14E, 13 |
| 230230075 | Thompson, Michael James, widower of Jean Kirkland Thompson, deceased | Foote Oil and Gas Properties, LLC | 10/08/18 | 3 + 2 | 120.0000 | 1.2500 | 0195/634 | 2N-15E, 18, 19 |
| 230230088 | Tullos, Teresa C. | Foote Oil and Gas Properties, LLC | 10/12/18 | 3 + 2 | 47.0000 | 19.3036 | 0195/637 | 2N-14E, 1 |
| 230230032 | Turner, Franklin Dwayne | Foote Oil and Gas Properties, LLC | 04/04/17 | 3 + 2 | 5.7000 | 0.7125 | 0194/374 | 2N-14E, 12 |
| 230230076 | Turner, Linda Evans | Foote Oil and Gas Properties, LLC | 10/15/18 | 3 + 2 | 120.0000 | 3.0770 | 0195/641 | 2N-15E, 18 |
| 230230033 | Univestors, LLC | Foote Oil and Gas Properties, LLC | 03/30/17 | 3 + 2 | 160.9400 | 10.5875 | 0194/377 | 2N-14E, 12 |
| 230230020 | Von Wiesenberger, Leslie Sinclair | Foote Oil and Gas Properties, LLC | 03/16/17 | 3 + 2 | 160.9400 | 4.9036 | 0194/380 | 2N-14E, 12 |
| 230230097 | Waddell, Robert W., Jr. | Foote Oil and Gas Properties, LLC | 11/05/18 | 3 + 2 | 80.0000 | 0.8333 | 0195/644 | 2N-15E, 18 |
| 230230130 | Ward, Annette R. | Foote Oil and Gas Properties, LLC | 12/04/18 | 3 + 2 | 40.0000 | 0.8333 | 0195/647 | 2N-15E, 19 |
| 230230035 | Wheless, Julian Lane | Foote Oil and Gas Properties, LLC | 03/01/17 | 3 + 2 | 120.0000 | 5.0000 | 0194/383 | 2N-14E, 13; 2N-15E, 18 |
| 230230077 | Wilemon, Frances Evans, etvir Raymond Howard Wilemon | Foote Oil and Gas Properties, LLC | 10/15/18 | 3 + 2 | 120.0000 | 6.1540 | 0195/650 | 2N-15E, 18 |
| 230230005 | Williams, Beryl Vickers Price | Foote Oil and Gas Properties, LLC | 03/03/17 | 5 | 175.9600 | 5.6691 | 0194/386 | 2N-14E, 12, 13 |
| 230230089 | Williams, Edward Lee | Foote Oil and Gas Properties, LLC | 10/23/18 | 3 + 2 | 120.0000 | 0.6154 | 0195/653 | 2N-15E, 18 |
| 230230078 | Williams, Mary Gail | Foote Oil and Gas Properties, LLC | 10/23/18 | 3 + 2 | 120.0000 | 0.6154 | 0195/656 | 2N-15E, 18 |
| 230230090 | Wright, Carol Diane Evans | Foote Oil and Gas Properties, LLC | 10/15/18 | 3 + 2 | 120.0000 | 3.0770 | 0195/659 | 2N-15E, 18 |

| 23023003.6 Zebra Properties, LLC | Foote Oil and Gas Properties, LLC | 03/28/17 | 3 + 2 | 161.2000 | 10.0750 | 0194/389 | 2N-14E, 12, 13 |

|  | TOTAL | 1,461.3006 |
| --- | --- | --- |

| Pending Leases | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Burlington Resources Oil & Gas Company, LP | Foote Oil and Gas Properties, LLC | | 2 years | 120.0000 | 45.0000 | Pending | 2N-14E, 13 |

|  | TOTAL WITH PENDING | 1,506.3006 |
| --- | --- | --- |

*All instrument numbers and book and page references are to the official public records of Clarke County, Mississippi.

Attached to and made a part of that certain Participation Agreement (North Pachuta Prospect) dated effective as of February 20, 2019, by and between Sklar Exploration Company L.L.C., Sklarco L.L.C., Alabama Oil Company, Apple River Investments, L.L.C., Charles A. Morrison Consulting Geophysicist, Inc., CTM 2005, Ltd., Fant Energy Limited, JJS Working Interests, L.L.C., Kelton Company, L.L.C., Kudzu Oil Properties, L.L.C., Lechwe, L.L.C., Lucas Petroleum Group, Inc., Sylco Exploration, L.L.C., Tauber Exploration & Production Co., and TCP Cottonwood, L.P.

## PARTIAL ASSIGNMENT OF OIL, GAS AND MINERAL LEASES

STATE OF MISSISSIPPI

COUNTY OF CLARKE

**KNOW ALL MEN BY THESE PRESENTS** that:

**APPLE RIVER INVESTMENTS, L.L.C.,** a Michigan limited liability company, whose address is 1503 Garfield Road North, Traverse City, Michigan 49696, herein represented by its duly authorized Manager, Jordan Management Company, which itself is represented herein by its duly authorized President, Robert M. Boeve ("**Assignor**");

for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable

consideration, the receipt and sufficiency of which are hereby acknowledged, and subject to the overriding

royalty interest and reversionary back-in working interest described hereinbelow, does hereby grant, bargain,

sell, convey, assign, set over and transfer unto the following named parties (hereinafter sometimes referred to

collectively as the "**Assignees**" or individually as an "**Assignee**"):

**SKLARCO, L.L.C.,** a Louisiana limited liability company, whose address is 5395 Pearl Parkway, Suite 200, Boulder, Colorado 80301, represented herein by its duly authorized Vice President – Land & Legal, Steven R. Hatcher, Jr. ("**Sklarco**");

**ALABAMA OIL COMPANY**, a Mississippi partnership, whose address is P.O. Box 230, Glendora, Mississippi 38928, represented herein by its duly authorized Partner, Walker Sturdivant ("**Alabama Oil**");

**CTM 2005, LTD.,** a Texas limited partnership, whose address is 55 Waugh Drive, Suite 515, Houston, Texas 77007, represented herein by its duly authorized General Partner, McCord Investments, Inc., a Texas Corporation, which itself is represented by its duly authorized President, Charles T. McCord, III ("**CTM**");

**FANT ENERGY LIMITED,** a Texas limited partnership, whose address is P.O. Box 55205, Houston, Texas 77255, represented herein by its duly authorized General Partner, Richard E. Fant L.L.C., a Texas limited liability company, which itself is represented herein by its duly authorized Manager, Stephen Swan ("**Fant**");

**JJS WORKING INTERESTS L.L.C.,** a Texas limited liability company, whose address is 2001 Kirby Drive, Suite 1110, Houston, Texas 77019, represented herein by its duly authorized Manager, Houston Bulldog Capital Management, LLC, a Texas limited liability company, which itself is represented herein by its duly authorized Manager, Justin Simons ("**JJS**");

**KUDZU OIL PROPERTIES, L.L.C.,** a Mississippi limited liability company, whose address is 300 Concourse Boulevard, Suite 101,

**LECHWE, L.L.C.,** a Texas limited liability company, whose address is P.O. Box 270415, Houston, Texas 77277, represented herein by its duly authorized Agent and Attorney-in-Fact, Mark Rauch ("**Lechwe**");

**LUCAS PETROLEUM GROUP, INC.,** a Texas corporation, whose mailing address is 327 Congress Avenue, Suite 500, Austin, Texas 78701-3656 represented herein by its duly authorized President, Fain Brock ("**Lucas**");

**TAUBER EXPLORATION & PRODUCTION CO.,** a Texas corporation, whose address is 55 Waugh Drive, Suite 600, Houston, Texas 77007, represented herein by its duly authorized President, Richard E. Tauber ("**Tauber**"); and

**TCP COTTONWOOD, L.P.,** a Texas limited partnership, whose address is 333 Texas Street, Suite 2020, Shreveport, Louisiana 71101, represented herein by its duly authorized General Partner Trinity-Anderson, LLC, a Louisiana limited liability company, which itself is represented herein by its duly authorized Manager, Anderson Feazel Management, Inc., a Louisiana corporation, which itself is represented herein by its duly authorized Vice-President, T. Cole Anderson ("**TCP**");

an undivided interest in, to and under the Oil, Gas and Mineral Leases (the "**Leases**") described in **Exhibit A** attached hereto and by reference made a part hereof, and the rights, estates and interests of the lessee thereunder, in the following proportions:

| Assignee | Interest Assigned |
|---|---|
| Sklarco | 25.00% |
| Alabama Oil | 8.00% |
| CTM | 3.00% |
| Fant | 5.00% |
| JJS | 5.00% |
| Kudzu | 11.00% |
| Lechwe | 2.00% |
| Lucas | 7.00% |
| Tauber | 5.00% |
| TCP | 15.00% |
| *Total* | 86.00% |

Assignor does hereby except from this Assignment, and reserve unto itself, an undivided fourteen percent (14.00%) interest in, to and under the Leases, and the rights, estates and interests of the lessee thereunder.

**TO HAVE AND TO HOLD** unto the Assignees, their successors and assigns, forever, subject to, and in accordance with, the following terms and provisions:

1. This Assignment is made effective as of February 20, 2019 (the "**Effective Date**").

2. The Assignment of leasehold interest made herein is made without warranty of title, express or implied, not even return for the purchase price, except that Assignor warrants title against all defects arising out of claims by Assignor or of persons claiming by, through or under Assignor. Additionally, this Assignment is made with transfer and subrogation of all rights and warranties of Assignor and of all prior owners of the Leases and/or the Lands unto Assignees.

4       This Assignment is also made in accordance with and subject to that certain Participation Agreement, North Pachuta Prospect (the **"Participation Agreement"**), dated effective as of February 20, 2019, by and between Sklar Exploration Company L.L.C., Sklarco L.L.C., Alabama Oil Company, Apple River Investments, L.L.C., Charles A. Morrison Consulting Geophysicist, Inc., CTM 2005, Ltd., Fant Energy Limited, JJS Working Interests, L.L.C., Kelton Company, L.L.C., Kudzu Oil Properties, L.L.C., Lechwe, L.L.C., Lucas Petroleum Group, Inc., Sylco Exploration, L.L.C., Tauber Exploration & Production Co., and TCP Cottonwood, L.P., and all attachments thereto, including that certain Joint Operating Agreement attached as Exhibit E thereto, dated effective as of February 20, 2019, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators.  Without limitation of the foregoing, this Assignment is made subject to the terms and provisions of Section 1.1(a) of the Participation Agreement, providing for an overriding royalty interest (the **"ORRI"**) in favor of the ORRI Parties (identified therein), equal to the positive difference, if any, between the lessor's royalty under each such Lease and twenty-five percent (22%) of the oil gas and other minerals produced and saved under the terms and provisions of the Leases, from or attributable to, any lands covered thereby, and Section 1.3 of the Participation Agreement providing for a reversionary back-in working interest (the **"RBWI"**) after Prospect Payout (as defined therein) in favor of the After Payout Parties (as identified herein) equal to twenty percent (25%) of the interest assigned herein to certain Assignees, to be allocated in the same manner as prescribed in Section 1.3 of the Participation Agreement.  Assignments of the ORRI and RBWI shall be made by separate instruments in accordance with the terms of the Participation Agreement.

5.      Assignor and Assignees agree to take all such further actions and to execute, acknowledge and deliver all such further documentation, as are necessary or useful in carrying out the purpose of this Assignment and the Participation Agreement.

6.      This Assignment may be executed in any number of counterparts and each counterpart shall constitute and shall be deemed to be an original instrument, but all such counterparts shall constitute but one instrument.

**THUS DONE AND SIGNED** by each of the Parties on the dates set forth in their

acknowledgments, but effective as of the Effective Date.

**ASSIGNOR:**

APPLE RIVER INVESTMENTS, L.L.C.

By: Jordan Management Company, Manager

By: _____
        Robert M. Boeve
        President

**ASSIGNEES:**

SKLARCO L.L.C.

By: _____
        Steven R. Hatcher, Jr.
        Vice President - Land & Legal

ALABAMA OIL COMPANY

By:_____
        Walker Sturdivant
        Partner

CTM 2005, LTD
By: McCord Investments, Inc., General Partner

By: _____
        Charles T. McCord, III
        President

FANT ENERGY LIMITED

By: Richard E. Fant, L.L.C., General Partner

By: _____
        Stephen Swan
        Manager

JJS WORKING INTERESTS, L.L.C.

By: Houston Bulldog Capital Management, L.L.C.,
Manager

By: _____
        Justin Simmons
        Manager

KUDZU OIL PROPERTIES, L.L.C.

By: _____
        Wirt A. Yerger, III
        Member

LECHWE, L.L.C.

By: _____
        Mark Rauch
        Agent and Attorney-in-Fact

LUCAS PETROLEUM GROUP, INC.

By: _____
        Fain Brock
        President

TAUBER EXPLORATION & PRODUCTION CO.

By: _____
        Richard E. Tauber
        President

TCP COTTONWOOD, L.P.

By: TRINITY-ANDERSON, LLC
        General Partner

By: ANDERSON FEAZEL MANAGEMENT, INC.
        Manager

By: _____
        T. Cole Anderson, Vice President

STATE OF MICHIGAN

COUNTY OF GRAND TRAVERSE

I, _____, a notary public in and for said County and State, hereby certify that Robert M. Boeve, President of Jordan Management Company, the Manager of APPLE RIVER INVESTMENTS, L.L.C., a Michigan limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2019.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF COLORADO

COUNTY OF BOULDER

I, _____, a notary public in and for said County and State, hereby certify that Steven R. Hatcher, Jr., whose name as Vice President – Land & Legal of SKLARCO L.L.C., a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2019.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF MISSISSIPPI

COUNTY OF TALLAHATCHIE

I, _____, a notary public in and for said County and State, hereby certify that Walker Strudivant, whose name as Partner of ALABAMA OIL COMPANY, a Mississippi partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2019.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF TEXAS

COUNTY OF HARRIS

I, _____, a notary public in and for said County and State, hereby certify that Charles T. McCord, III, whose name as President of MCCORD INVESTMENTS, INC., a Texas corporation, duly authorized General Partner of CTM 2005, LTD., a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2019.


_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF TEXAS

COUNTY OF HARRIS

I, _____, a notary public in and for said County and State, hereby certify that Stephen Swan, whose name as Manager of RICHARD E. FANT L.L.C., a Texas limited liability company, duly authorized General Partner of FANT ENERGY LIMITED, a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2019.


_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF TEXAS

COUNTY OF HARRIS

I, _____, a notary public in and for said County and State, hereby certify that Justin Simons, whose name as Manager of HOUSTON BULLDOG CAPITAL MANAGEMENT, L.L.C., a Texas limited liability company, duly authorized Manager of JJS WORKING INTERESTS, L.L.C., a Texas limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2019.


_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF MISSISSIPPI

COUNTY OF MADISON

I, _____, a notary public in and for said County and State, hereby certify that Wirt A. Yerger, III, whose name as Member of KUDZU OIL PROPERTIES, L.L.C., a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2019.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF TEXAS

COUNTY OF HARRIS

I, _____, a notary public in and for said County and State, hereby certify that Mark Rauch, whose name as Member of LECHWE, L.L.C., a Texas limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2019.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF LOUISIANA

PARISH OF CADDO

I, _____, a notary public in and for said Parish and State, hereby certify that Fain Brock, whose name as President of LUCAS PETROLEUM GROUP, INC., a Texas corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2019.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF TEXAS

COUNTY OF HARRIS

I, _____, a notary public in and for said Parish and State, hereby certify that Richard E. Tauber, whose name as President of TAUBER EXPLORATION & PRODUCTION CO., a Texas corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2019.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF LOUISIANA

PARISH OF CADDO

I, _____, a notary public in and for said Parish and State, hereby certify that T. Cole Anderson, whose name as Vice-President of Anderson Feazel Management, Inc., a Louisiana corporation, duly authorized Manager of Trinity-Anderson, LLC, a Louisiana limited liability company, duly authorized General Partner of TCP Cottonwood, L.P. a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2019.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

EXHIBIT A

Attached to and made a part of that certain Partial Assignment of Oil, Gas and Mineral Leases dated effective as of February 20, 2019, by and between Apple River Investments, L.L.C., as Assignor, and Sklarco L.L.C., Alabama Oil Company, CTM 2005, Ltd., Fant Energy Limited, JJS Working Interests, L.L.C., Kelton Company, L.L.C., Kudzu Oil Properties, L.L.C., Lechwe, L.L.C., Lucas Petroleum Group, Inc., Tauber Exploration & Production Co., and TCP Cottonwood, L.P., as Assignees

## OIL AND GAS LEASES

| Lease # | Lessor | Lessee | Lease Date | Book/Page | T-R-S |
|---|---|---|---|---|---|
| 230230004 | Adams, Maxine Moore | Foote Oil and Gas Properties, LLC | 03/07/17 | 0194/256 | 2N-14E, 12, 13 |
| 230230100 | Allar Company, The, and EG3, Inc. | Apple River Investments, LLC | 12/26/18 | 0195/395 | 2N-15E, 18 |
| 230230131 | Anadarko E&P Onshore LLC | Apple River Investments, LLC | 01/14/19 | Pending | 2N-14E, 12, 13 |
| 230230045 | Barentine, Faye E. | Venture Oil & Gas Inc. | 05/07/14 | 0193/775 | 2N-14E, 1 |
| 230230050 | Black Stone Minerals Co., LP & Matagorda B1, LP | Foote Oil and Gas Properties, LLC | 06/21/17 | 0194/262 | 2N-14E, 13; 2N-15E, 18 |
| 230230051 | Black Stone Minerals Co., LP & Matagorda B1, LP | Foote Oil and Gas Properties, LLC | 06/21/17 | 0194/266 | 2N-14E, 12 |
| 230230040 | Blackburn James T. a/k/a Tommy Blackburn etux Katherine M. Blackburn | Foote Oil and Gas Properties, LLC | 04/04/17 | 0194/259 | 2N-14E, 12 |
| 230230010 | Bridges, W. P., Jr. | Foote Oil and Gas Properties, LLC | 03/07/17 | 0194/270 | 2N-14E, 13; 2N-15E, 18 |
| 230230021 | Chavez, Jesse, Jr., etux Rita Chavez | Foote Oil and Gas Properties, LLC | 03/24/17 | 0194/273 | 2N-14E, 12 |
| 230230038 | Clark, Elloine M. | Foote Oil and Gas Properties, LLC | 04/05/17 | 0194/276 | 2N-14E, 12 |
| 230230018 | Cranford, Elsie S. aka Elsie Lucille Cranford Charles Tenon Cranford, AIF DPOA dated 12-14-12 | Foote Oil and Gas Properties, LLC | 03/01/17 | 0194/279 | 2N-14E, 12 |
| 230230017 | Cranford, Gary M. et ux Monay C. Cranford | Foote Oil and Gas Properties, LLC | 03/08/17 | 0194/282 | 2N-14E, 12 |
| 230230002 | Cranford, Jonathan M. et ux Amanda G. Cranford | Foote Oil and Gas Properties, LLC | 02/28/17 | 0194/285 | 2N-14E, 13 |
| 230230009 | Culver, Rennie W. | Foote Oil and Gas Properties, LLC | 03/02/17 | 0194/288 | 2N-14E, 12 |
| 230230001 | Davidson, William T. and LaVera S. Revocable Trust, William T. and LaVera S. Davidson, Trustees | Foote Oil and Gas Properties, LLC | 02/24/17 | 0194/291 | 2N-15E, 7 |
| 230230008 | Duvall, William P. | Foote Oil and Gas Properties, LLC | 03/09/17 | 0194/294 | 2N-15E, 18 |
| 230230016 | Fatherree Family Limited Partnership | Foote Oil and Gas Properties, LLC | 02/28/17 | 0194/297 | 2N-14E, 13 |
| 230230022 | Freeman, Sandra Draughn | Foote Oil and Gas Properties, LLC | 03/14/17 | 0194/301 | 2N-14E, 13; 2N-15E, 18 |
| 230230039 | Gargaro, Celia Franklin Draughn | Foote Oil and Gas Properties, LLC | 03/14/17 | 0194/305 | 2N-14E, 13; 2N-15E, 18 |
| 230230015 | Goff, James W. | Foote Oil and Gas Properties, LLC | 03/09/17 | 0194/309 | 2N-15E, 18 |
| 230230030 | Haralson, Willie, Jr. etux Theresa H. Haralson | Foote Oil and Gas Properties, LLC | 03/31/17 | 0194/312 | 2N-14E, 12 |
| 230230046 | Horne, Raymond L. | Venture Oil & Gas Inc. | 05/02/14 | 0193/749 | 2N-14E, 1 |
| 230230044 | Horne-Nelson, Gay Dawn | Venture Oil & Gas Inc. | 05/02/14 | 0193/754 | 2N-14E, 1 |

| | | | | | |
|---|---|---|---|---|---|
| 230230023 | Howard, Mary Goff et vir Bruce A. Howard | Foote Oil and Gas Properties, LLC | 04/04/17 | 0194/318 | 2N-14E, 12; 2N-15E, 18 |
| 230230024 | Howard, Mary Goff et vir Bruce A. Howard | Foote Oil and Gas Properties, LLC | 04/04/17 | 0194/321 | 2N-14E, 12; 2N-15E, 18 |
| 230230030 | Howard, Mary Goff et vir Bruce A. Howard | Foote Oil and Gas Properties, LLC | 02/28/17 | 0194/315 | 2N-14E, 12, 13; 2N-15E, 18 |
| 230230037 | Huff, William H., Sr. | Foote Oil and Gas Properties, LLC | 04/13/17 | 0194/324 | 2N-14E, 12 |
| 230230049 | Ivy, Elizabeth P. | Venture Oil & Gas Inc. | 05/06/14 | 0193/759 | 2N-14E, 1 |
| 230230048 | Ivy, Lisa A. | Venture Oil & Gas Inc. | 05/06/14 | 0193/763 | 2N-14E, 1 |
| 230230025 | Jones, Susan Meyer | Foote Oil and Gas Properties, LLC | 03/03/17 | 0194/326 | 2N-14E, 12, 13 |
| 230230047 | Kaszei, Diane C. | Venture Oil & Gas Inc. | 05/20/14 | 0193/783 | 2N-14E, 1 |
| 230230042 | Kidd, Howard L., Jr. | Venture Oil & Gas Inc. | 05/07/14 | 0193/767 | 2N-14E, 12 |
| 230230026 | Lucas, Kevin Wade etux Bobbie Jo Lucas | Foote Oil and Gas Properties, LLC | 03/23/17 | 0194/239 | 2N-14E, 12 |
| 230230027 | McGowan, Debbie W. | Foote Oil and Gas Properties, LLC | 03/01/17 | 0194/332 | 2N-14E, 13; 2N-15E, 18 |
| 230230006 | Meyer, Russell | Foote Oil and Gas Properties, LLC | 03/03/17 | 0194/335 | 2N-14E, 12, 13 |
| 230230011 | Mills, Gerald D. | Foote Oil and Gas Properties, LLC | 03/02/17 | 0194/338 | 2N-14E, 12, 13 |
| 230230007 | Mills, William Courtney, Jr. | Foote Oil and Gas Properties, LLC | 03/02/17 | 0194/341 | 2N-14E, 12, 13 |
| 230230041 | Parker, Brach | Venture Oil & Gas Inc. | 05/12/14 | 0193/779 | 2N-14E, 1 |
| 230230053 | Parker, Brian | Venture Oil & Gas Inc. | 05/20/14 | 0193/793 | 2N-14E, 1 |
| 230230052 | Parker, James | Venture Oil & Gas Inc. | 05/20/14 | 0193/787 | 2N-14E, 1 |
| 230230043 | Parker, James A. & Ruby P. | Venture Oil & Gas Inc. | 05/07/14 | 0193/771 | 2N-14E, 1 |
| 230230013 | Price, Barbara W., widow of James D. Price, Jr., dec. | Foote Oil and Gas Properties, LLC | 03/09/17 | 0194/344 | 2N-15E, 18 |
| 230230012 | Price, Robert B., III | Foote Oil and Gas Properties, LLC | 03/03/17 | 0194/347 | 2N-14E, 12, 13 |
| 230230028 | Roszel, Norman Rikki, distributee of the Eva Marie Hunter Parrack Revocable Trust, in compliance with the Family Settlement Agreement dated November 7, 2009, joined herein by his wife, Mary Roszel | Foote Oil and Gas Properties, LLC | 03/24/17 | 0194/351 | 2N-14E, 12, 13 |
| 230230014 | Sexton, Sue P., f/k/a Sue P. Milam | Foote Oil and Gas Properties, LLC | 03/09/17 | 0194/354 | 2N-15E, 18 |
| 230230029 | Sinclair, Emily | Foote Oil and Gas Properties, LLC | 03/14/17 | 0194/361 | 2N-14E, 12 |
| 230230019 | Sinclair, Robert E. | Foote Oil and Gas Properties, LLC | 03/14/17 | 0194/364 | 2N-14E, 12 |
| 230230031 | Sinclair, Susan Leigh | Foote Oil and Gas Properties, LLC | 03/14/17 | 0194/367 | 2N-14E, 12 |
| 230230034 | Sullivan, Paul, Administrator of Estate of Terry Draughn Sullivan | Foote Oil and Gas Properties, LLC | 03/14/17 | 0194/370 | 2N-14E, 13; 2N-15E, 18 |
| 230230032 | Turner, Franklin Dwayne | Foote Oil and Gas Properties, LLC | 04/04/17 | 0194/374 | 2N-14E, 12 |
| 230230033 | Univestors, LLC | Foote Oil and Gas Properties, LLC | 03/30/17 | 0194/377 | 2N-14E, 12 |
| 230230020 | Von Wiesenberger, Leslie Sinclair | Foote Oil and Gas Properties, LLC | 03/16/17 | 0194/380 | 2N-14E, 12 |

| 230230035 | Wheless, Julian Lane | Foote Oil and Gas Properties, LLC | 03/01/17 | 0194/383 | 2N-14E, 13; 2N-15E, 18 |
| 230230005 | Williams, Beryl Vickers Price | Foote Oil and Gas Properties, LLC | 03/03/17 | 0194/386 | 2N-14E, 12, 13 |
| 230230036 | Zebra Properties, LLC | Foote Oil and Gas Properties, LLC | 03/28/17 | 0194/389 | 2N-14E, 12, 13 |

*All instrument numbers and book and page references are to the official public records of Clarke County, Mississippi.

EXHIBIT B-2

Attached to and made a part of that certain Participation Agreement (North Pachuta Prospect) dated effective as of February 20, 2019, by and between Sklar Exploration Company L.L.C., Sklarco L.L.C., Alabama Oil Company, Apple River Investments, L.L.C., Charles A. Morrison Consulting Geophysicist, Inc., CTM 2005, Ltd., Fant Energy Limited, JJS Working Interests, L.L.C., Kelton Company, L.L.C., Kudzu Oil Properties, L.L.C., Lechwe, L.L.C., Lucas Petroleum Group, Inc., Sylco Exploration, L.L.C., Tauber Exploration & Production Co., and TCP Cottonwood, L.P.

## ASSIGNMENT OF OIL, GAS AND MINERAL LEASES

STATE OF MISSISSIPPI

COUNTY OF CLARKE

**KNOW ALL MEN BY THESE PRESENTS** that:

**FOOTE OIL AND GAS PROPERTIES, LLC,** an Alabama limited liability company, whose address is P.O. Box 6418, Gulf Shores, Alabama 36547, herein represented by its duly authorized Member, John M. Foote ("**Assignor**");

for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and subject to the overriding royalty interest and reversionary back-in working interest described hereinbelow, does hereby grant, bargain, sell, convey, assign, set over and transfer unto the following named parties (hereinafter sometimes referred to collectively as the "**Assignees**" or individually as an "**Assignee**"):

**SKLARCO, L.L.C.,** a Louisiana limited liability company, whose address is 5395 Pearl Parkway, Suite 200, Boulder, Colorado 80301, represented herein by its duly authorized Vice President – Land & Legal, Steven R. Hatcher, Jr. ("**Sklarco**");

**ALABAMA OIL COMPANY,** a Mississippi partnership, whose address is P.O. Box 230, Glendora, Mississippi 38928, represented herein by its duly authorized Partner, Walker Sturdivant ("**Alabama Oil**");

**APPLE RIVER INVESTMENTS, L.L.C.,** a Michigan limited liability company, whose address is 1503 Garfield Road North, Traverse City, Michigan 49696, herein represented by its duly authorized Manager, Jordan Management Company, which itself is represented herein by its duly authorized President, Robert M. Boeve ("**Apple River**");

**CTM 2005, LTD.,** a Texas limited partnership, whose address is 55 Waugh Drive, Suite 515, Houston, Texas 77007, represented herein by its duly authorized General Partner, McCord Investments, Inc., a Texas Corporation, which itself is represented by its duly authorized President, Charles T. McCord, III ("**CTM**");

**FANT ENERGY LIMITED,** a Texas limited partnership, whose address is P.O. Box 55205, Houston, Texas 77255, represented herein by its duly authorized General Partner, Richard E. Fant L.L.C., a Texas limited liability company, which itself is represented herein by its duly authorized Manager, Stephen Swan ("**Fant**");

**JJS WORKING INTERESTS L.L.C.,** a Texas limited liability company, whose address is 2001 Kirby Drive, Suite 1110, Houston, Texas 77019, represented herein by its duly authorized Manager, Houston Bulldog Capital Management, LLC, a Texas limited liability company,

which itself is represented herein by its duly authorized Manager, Justin Simons ("JJS");

**KUDZU OIL PROPERTIES, L.L.C.,** a Mississippi limited liability company, whose address is 300 Concourse Boulevard, Suite 101, Ridgeland, Mississippi 39157, represented herein by its duly authorized Manager, Wirt A. Yerger, III (**"Kudzu"**);

**LECHWE, L.L.C.,** a Texas limited liability company, whose address is P.O. Box 270415, Houston, Texas 77277, represented herein by its duly authorized Agent and Attorney-in-Fact, Mark Rauch (**"Lechwe"**);

**LUCAS PETROLEUM GROUP, INC.,** a Texas corporation, whose mailing address is 327 Congress Avenue, Suite 500, Austin, Texas 78701-3656 represented herein by its duly authorized President, Fain Brock (**"Lucas"**);

**TAUBER EXPLORATION & PRODUCTION CO.,** a Texas corporation, whose address is 55 Waugh Drive, Suite 600, Houston, Texas 77007, represented herein by its duly authorized President, Richard E. Tauber (**"Tauber"**); and

**TCP COTTONWOOD, L.P.,** a Texas limited partnership, whose address is 333 Texas Street, Suite 2020, Shreveport, Louisiana 71101, represented herein by its duly authorized General Partner Trinity-Anderson, LLC, a Louisiana limited liability company, which itself is represented herein by its duly authorized Manager, Anderson Feazel Management, Inc., a Louisiana corporation, which itself is represented herein by its duly authorized Vice-President, T. Cole Anderson (**"TCP"**);

all of its right, title and interest in, to and under the Oil, Gas and Mineral Leases (the **"Leases"**) described in

**Exhibit A** attached hereto and by reference made a part hereof, and the rights, estates and interests of the lessee

thereunder, in the following proportions:

| Assignee | Interest Assigned |
|---|---|
| Sklarco | 25.00% |
| Alabama Oil | 8.00% |
| Apple River | 14.00% |
| CTM | 3.00% |
| Fant | 5.00% |
| JJS | 5.00% |
| Kudzu | 11.00% |
| Lechwe | 2.00% |
| Lucas | 7.00% |
| Tauber | 5.00% |
| TCP | 15.00% |
| *Total* | 100.00% |

**TO HAVE AND TO HOLD** unto the Assignees, their successors and assigns, forever,

subject to, and in accordance with, the following terms and provisions:

4.    This Assignment is made effective as of February 20, 2019 (the **"Effective Date"**).

5.    The Assignment of leasehold interest made herein is made without warranty of title, express or implied, not even return for the purchase price, except that Assignor warrants title against all defects arising out of claims by Assignor or of persons claiming by, through or under Assignor. Additionally, this Assignment is made with transfer and subrogation of all rights

and warranties of Assignor and of all prior owners of the Leases and/or the Lands unto Assignees.

6.    This Assignment, and the interest assigned hereunder, is made subject to the terms and conditions of the Leases.

5     This Assignment is also made in accordance with and subject to that certain Participation Agreement, North Pachuta Prospect (the "**Participation Agreement**"), dated effective as of February 20, 2019, by and between Sklar Exploration Company L.L.C., Sklarco L.L.C., Alabama Oil Company, Apple River Investments, L.L.C., Charles A. Morrision Consulting Geophysicist, Inc., CTM 2005, Ltd., Fant Energy Limited, JJS Working Interests, L.L.C., Kelton Company, L.L.C., Kudzu Oil Properties, L.L.C., Lechwe, L.L.C., Lucas Petroleum Group, Inc., Sylco Exploration, L.L.C., Tauber Exploration & Production Co., and TCP Cottonwood, L.P., and all attachments thereto, including that certain Joint Operating Agreement attached as Exhibit E thereto, dated effective as of February 20, 2019, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators. Without limitation of the foregoing, this Assignment is made subject to the terms and provisions of Section 1.1(a) of the Participation Agreement, providing for an overriding royalty interest (the "**ORRI**") in favor of the ORRI Parties (identified therein), equal to the positive difference, if any, between the lessor's royalty under each such Lease and twenty-five percent (22%) of the oil gas and other minerals produced and saved under the terms and provisions of the Leases, from or attributable to, any lands covered thereby, and Section 1.3 of the Participation Agreement providing for a reversionary back-in working interest (the "**RBWI**") after Prospect Payout (as defined therein) in favor of the After Payout Parties (as identified therein) equal to twenty percent (25%) of the interest assigned herein to certain Assignees, to be allocated in the same manner as prescribed in Section 1.3 of the Participation Agreement. Assignments of the ORRI and RBWI shall be made by separate instruments in accordance with the terms of the Participation Agreement.

5.    Assignor and Assignees agree to take all such further actions and to execute, acknowledge and deliver all such further documentation, as are necessary or useful in carrying out the purpose of this Assignment and the Participation Agreement.

7.    This Assignment may be executed in any number of counterparts and each counterpart shall constitute and shall be deemed to be an original instrument, but all such counterparts shall constitute but one instrument.

**THUS DONE AND SIGNED** by each of the Parties on the dates set forth in their acknowledgments, but effective as of the Effective Date.

**ASSIGNOR:**

FOOTE OIL AND GAS PROPERTIES, LLC

By: _____
         John M. Foote
         Member

**ASSIGNEES:**

SKLARCO L.L.C.

By: _____
         Steven R. Hatcher, Jr.
         Vice President - Land & Legal

ALABAMA OIL COMPANY

By: _____
         Walker Sturdivant
         Partner

APPLE RIVER INVESTMENTS, L.L.C.

By: Jordan Management Company, Manager

By: _____

     Robert M. Boeve
     President

CTM 2005, LTD

By: McCord Investments, Inc., General Partner

By: _____

     Charles T. McCord, III
     President

FANT ENERGY LIMITED

By: Richard E. Fant, L.L.C., General Partner

By: _____

     Stephen Swan
     Manager

JJS WORKING INTERESTS, L.L.C.

By: Houston Bulldog Capital Management, L.L.C.,
Manager

By: _____

     Justin Simmons
     Manager

KUDZU OIL PROPERTIES, L.L.C.

By: _____

     Wirt A. Yerger, III
     Member

LECHWE, L.L.C.

By: _____

     Mark Rauch
     Agent and Attorney-in-Fact

LUCAS PETROLEUM GROUP, INC.

By: _____

     Fain Brock
     President

TAUBER EXPLORATION & PRODUCTION CO.

By: _____

     Richard E. Tauber
     President

TCP COTTONWOOD, L.P.

By: TRINITY-ANDERSON, LLC
    General Partner

By: ANDERSON FEAZEL MANAGEMENT, INC.
    Manager

By: _____
     T. Cole Anderson
     Vice-President

**ACKNOWLEDGMENTS**

STATE OF ALABAMA

COUNTY OF BALDWIN

I, _____, a notary public in and for said County and State, hereby certify that John M. Foote, Member of FOOTE OIL AND GAS PROPERTIES, LLC, an Alabama limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2019.


_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF COLORADO

COUNTY OF BOULDER

I, _____, a notary public in and for said County and State, hereby certify that Steven R. Hatcher, Jr., whose name as Vice President – Land & Legal of SKLARCO L.L.C., a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2019.


_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF MISSISSIPPI

COUNTY OF TALLAHATCHIE

I, _____, a notary public in and for said County and State, hereby certify that Walker Strudivant, whose name as Partner of ALABAMA OIL COMPANY, a Mississippi partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2019.


_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF MICHIGAN

COUNTY OF GRAND TRAVERSE

  I, _____, a notary public in and for said County and State, hereby certify that Robert M. Boeve, President of Jordan Management Company, the Manager of APPLE RIVER INVESTMENTS, L.L.C., a Michigan limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

  Given under my hand and notarial seal this the _____ day of _____, 2019.


               _____
               NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF TEXAS

COUNTY OF HARRIS

  I, _____, a notary public in and for said County and State, hereby certify that Charles T. McCord, III, whose name as President of MCCORD INVESTMENTS, INC., a Texas corporation, duly authorized General Partner of CTM 2005, LTD., a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

  Given under my hand and notarial seal this the _____ day of _____, 2019.


               _____
               NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF TEXAS

COUNTY OF HARRIS

  I, _____, a notary public in and for said County and State, hereby certify that Stephen Swan, whose name as Manager of RICHARD E. FANT L.L.C., a Texas limited liability company, duly authorized General Partner of FANT ENERGY LIMITED, a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

  Given under my hand and notarial seal this the _____ day of _____, 2019.


               _____
               NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF TEXAS
COUNTY OF HARRIS

I, _____, a notary public in and for said County and State, hereby certify that Justin Simons, whose name as Manager of HOUSTON BULLDOG CAPITAL MANAGEMENT, L.L.C., a Texas limited liability company, duly authorized Manager of JJS WORKING INTERESTS, L.L.C., a Texas limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2019.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____
STATE OF MISSISSIPPI

COUNTY OF MADISON

I, _____, a notary public in and for said County and State, hereby certify that Wirt A. Yerger, III, whose name as Member of KUDZU OIL PROPERTIES, L.L.C., a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2019.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF TEXAS

COUNTY OF HARRIS

I, _____, a notary public in and for said County and State, hereby certify that Mark Rauch, whose name as Member of LECHWE, L.L.C., a Texas limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2019.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

# EXHIBIT A

Attached to and made a part of that certain Assignment of Oil, Gas and Mineral Leases dated effective as of February 20, 2019, by and between Foote Oil And Gas Properties, LLC, as Assignor, and Sklarco L.L.C., Alabama Oil Company, Apple River Investments, L.L.C., CTM 2005, Ltd., Fant Energy Limited, JJS Working Interests, L.L.C., Kelton Company, L.L.C., Kudzu Oil Properties, L.L.C., Lechwe, L.L.C., Lucas Petroleum Group, Inc., Tauber Exploration & Production Co., and TCP Cottonwood, L.P., as Assignees

## OIL AND GAS LEASES

| Lease # | Lessor | Lessee | Lease Date | Book/Page | T-R-S |
|---------|--------|--------|------------|-----------|-------|
| 230230092 | Archey, James L., sole and only heir-at-law of Winnie Sanders Archey, dec. | Foote Oil and Gas Properties, LLC | 10/29/18 | 0195/402 | 2N-14E, 1 |
| 230230101 | Baker, Ada R. | Foote Oil and Gas Properties, LLC | 12/07/18 | 0195/406 | 2N-15E, 19 |
| 230230098 | Black Stone Minerals Co., LP | Foote Oil and Gas Properties, LLC | 12/15/18 | 0195/409 | 2N-15E, 18 |
| 230230099 | Black Stone Minerals Co., LP | Foote Oil and Gas Properties, LLC | 12/15/18 | 0195/413 | 2N-14E, 13; 2N-15E, 18 |
| 230230054 | Boney, Charles Larry etux Patricia M. Boney | Foote Oil and Gas Properties, LLC | 09/27/18 | 0195/417 | 2N-15E, 19 |
| 230230055 | Boney, Johnny Ray | Foote Oil and Gas Properties, LLC | 10/24/18 | 0195/216 | 2N-15E, 18 |
| 230230056 | Boney, Roy Stevens, etux Linda W. Boney | Foote Oil and Gas Properties, LLC | 09/11/18 | 0195/422 | 2N-15E, 18, 19 |
| 230230057 | Buchanan Company, LLC, The | Foote Oil and Gas Properties, LLC | 09/24/18 | 0195/432 | 2N-15E, 18, 19 |
|  | Burlington Resources Oil & Gas Company, LP | Foote Oil and Gas Properties, LLC |  | Pending | 2N-14E, 13 |
| 230230102 | Clayton, F. L. Trust, James D. Angero, Trustee | Foote Oil and Gas Properties, LLC | 12/18/18 | 0195/443 | 2N-14E, 13 |
| 230230081 | Combest, Joye Evans | Foote Oil and Gas Properties, LLC | 10/15/18 | 0195/447 | 2N-15E, 18 |
| 230230058 | Couch, Bettye Gayle | Foote Oil and Gas Properties, LLC | 10/04/18 | 0195/450 | 2N-15E, 18, 19 |
| 230230059 | Cranford, Jonathan M. etux, Amanda G. Cranford | Foote Oil and Gas Properties, LLC | 10/09/18 | 0195/453 | 2N-14E, 1 |
| 230230120 | Desoto Natural Resources, Inc. | Foote Oil and Gas Properties, LLC | 01/08/19 | 0195/457 | 2N-14E, 13 |
| 230230122 | EFC Minerals, LLC | Foote Oil and Gas Properties, LLC | 01/08/19 | 0195/461 | 2N-14E, 13 |
| 230230121 | Embleton, James R. Family Trust U/A dated 5-23-01 Phyllis J. Embleton, Trustee | Foote Oil and Gas Properties, LLC | 01/08/19 | 0195/465 | 2N-14E, 13 |
| 230230060 | Evans, Alfred N. | Foote Oil and Gas Properties, LLC | 10/15/18 | 0195/468 | 2N-15E, 18 |
| 230230061 | Evans, James K. | Foote Oil and Gas Properties, LLC | 10/16/18 | 0195/471 | 2N-15E, 18 |
| 230230103 | Evans, Marie Sanders | Foote Oil and Gas Properties, | 11/12/18 | 0195/474 | 2N-14E, 1 |

| 230230083 | Evans, Stephen Ray | Foote Oil and Gas Properties, LLC | 10/15/18 | 0195/480 | 2N-15E, 18 |
|---|---|---|---|---|---|
| 230230083 | Evans, Stephen Ray | Foote Oil and Gas Properties, LLC | 10/15/18 | 0195/484 | 2N-15E, 18 |
| 230230062 | Fatherree Family Limited Partnership | Foote Oil and Gas Properties, LLC | 10/1/2018 | 0195/487 | 2N-14E, 13; 2N-15E, 18, 19 |
| 230230093 | Freeman, Daniel Michael | Foote Oil and Gas Properties, LLC | 10/05/18 | 0195/491 | 2N-14E, 1 |
| 230230119 | Gardner Clark Family, LLC | Foote Oil and Gas Properties, LLC | 01/02/19 | 0195/439 | 2N-14E, 12, 13; 2N-15E, 18 |
| 230230104 | Great Southern Capital Corporation | Foote Oil and Gas Properties, LLC | 12/20/18 | 0195/494 | 2N-15E, 18, 19 |
| 230230063 | Hash, Robert Bryan Family 2006 GST Exempt Trust Robert Bryan Hash, Trustee | Foote Oil and Gas Properties, LLC | 10/16/18 | 0195/497 | 2N-15E, 18 |
| 230230064 | Hash, Steven Vincent Family 2006 GST Exempt Trust Steven Vincent Hash, Trustee | Foote Oil and Gas Properties, LLC | 10/16/18 | 0195/500 | 2N-15E, 18 |
| 230230105 | Hawk, Patricia McGlothlin Family Trust, Patricia Hawk Gano, Trustee | Foote Oil and Gas Properties, LLC | 10/16/18 | 0195/503 | 2N-15E, 18 |
| 230230094 | Heard, The Raymond L. and Leticia L. Revocable Trust, Raymond L. Heard and Leticia L. Heard, Trustees | Foote Oil and Gas Properties, LLC | 11/01/18 | 0195/506 | 2N-14E, 12 |
| 230230106 | Hemeter Properties, LLC | Foote Oil and Gas Properties, LLC | 01/02/19 | 0195/510 | 2N-14E, 12, 13; 2N-15E, 18 |
| 230230095 | Herring, Virginia D. | Foote Oil and Gas Properties, LLC | 11/12/18 | 0195/514 | 2N-14E, 1 |
| 230230107 | Hill, Cecil Morgan, Jr. | Foote Oil and Gas Properties, LLC | 11/27/18 | 0195/517 | 2N-15E, 19 |
| 230230108 | Hill, Dan L. | Foote Oil and Gas Properties, LLC | 11/30/18 | 0195/520 | 2N-15E, 19 |
| 230230109 | Hill, Dianne | Foote Oil and Gas Properties, LLC | 11/30/18 | 0195/523 | 2N-15E, 19 |
| 230230123 | Hillabrant, Walter John | Foote Oil and Gas Properties, LLC | 11/05/18 | 0195/526 | 2N-15E, 18 |
| 230230111 | Horne-Nelson, Gay Dawn | Foote Oil and Gas Properties, LLC | 11/29/18 | 0195/529 | 2N-14E, 1 |
|  | Horne-Nelson, Gay Dawn | Foote Oil and Gas Properties, LLC | Dated 2/14/19, Effective 5/2/2019 | Pending | 2N-14E, 1 |
| 230230065 | Hughes, Deborah A. | Foote Oil and Gas Properties, LLC | 09/20/18 | 0195/532 | 2N-15E, 18 |
| 230230084 | Hughes, F. Simpson | Foote Oil and Gas Properties, LLC | 09/24/18 | 0195/535 | 2N-15E, 18 |
| 230230066 | Hughes, Janie E. | Foote Oil and Gas Properties, LLC | 09/24/18 | 0195/538 | 2N-15E, 18 |
| 230230112 | Hughes, John A., Jr. | Foote Oil and Gas Properties, LLC | 09/24/18 | 0195/541 | 2N-15E, 18 |

| 230230067 | Hughes, Richard F. | Foote Oil and Gas Properties, LLC | 09/24/18 | 0195/544 | 2N-15E, 18 |
|---|---|---|---|---|---|
| | Ivy, Elizabeth P. | Foote Oil and Gas Properties, LLC | Dated 2/15/19 Effective 5/6/2019 | Pending | 2N-14E, 1 |
| | Ivy, Lisa A. | Foote Oil and Gas Properties, LLC | Dated 2/15/19 Effective 5/6/2019 | Pending | 2N-14E, 1 |
| 230230068 | Kirkland, Carolynn N., widow and sole devisee U/W of John K. Kirkland, Jr., deceased | Foote Oil and Gas Properties, LLC | 10/08/18 | 0195/547 | 2N-15E, 18, 19 |
| 230230069 | Kirkland, Jeremiah S. | Foote Oil and Gas Properties, LLC | 10/08/18 | 0195/550 | 2N-15E, 18, 19 |
| 230230096 | Knapp, Charles Darius | Foote Oil and Gas Properties, LLC | 10/23/18 | 0195/553 | 2N-15E, 18 |
| 230230110 | Knapp, Norma Jo | Foote Oil and Gas Properties, LLC | 10/23/18 | 0195/556 | 2N-15E, 18 |
| 230230085 | Lightsey, Katie Sanders | Foote Oil and Gas Properties, LLC | 10/25/18 | 0195/559 | 2N-14E, 1 |
| 230230070 | McCoy, Margie Ruth | Foote Oil and Gas Properties, LLC | 10/23/18 | 0195/562 | 2N-15E, 18 |
| 230230113 | Mosley, Connie R. | Foote Oil and Gas Properties, LLC | 12/04/18 | 0195/565 | 2N-15E, 19 |
| 230230086 | Mullett, Ann C. Revocable Trust dated 11/8/99, John R. Mullett, Successor Trustee | Foote Oil and Gas Properties, LLC | 09/21/18 | 0195/568 | 2N-15E, 18, 19 |
| 230230079 | Mullett, Robert H. | Foote Oil and Gas Properties, LLC | 09/21/18 | 0195/571 | 2N-15E, 18, 19 |
| 230230124 | Muths, Celia Carter | Foote Oil and Gas Properties, LLC | 01/10/19 | 0195/574 | 2N-15E, 18, 19 |
| 230230125 | Norton, Carolyn C. Trust Carolyn C. Norton, Trustee | Foote Oil and Gas Properties, LLC | 01/08/19 | 0195/577 | 2N-14E, 13 |
| 230230114 | Parawon Corporation | Foote Oil and Gas Properties, LLC | 12/20/18 | 0195/581 | 2N-14E, 12; 2N-15E, 18 |
| 230230115 | Parker, Dr. Paul H., Jr. | Foote Oil and Gas Properties, LLC | 12/20/18 | 0195/586 | 2N-14E, 13 |
| 230230126 | Peachtree Properties, LLC | Foote Oil and Gas Properties, LLC | 01/02/19 | 0195/589 | 2N-14E, 12, 13; 2N-15E, 18 |
| 230230116 | Pritchett, Dustin J., etux Whitney J. Pritchett | Foote Oil and Gas Properties, LLC | 11/13/18 | 0195/593 | 2N-14E, 1 |
| 230230127 | Rhodes, Estate of Mary Winona Parker, by Melton E. Rhodes, Executor | Foote Oil and Gas Properties, LLC | 01/04/19 | 0195/597 | 2N-14E, 13 |
| 230230080 | Roberson, William Marion, II | Foote Oil and Gas Properties, LLC | 10/08/18 | 0195/600 | 2N-15E, 18, 19 |
| 230230117 | Rowell, Johnny H. | Foote Oil and Gas Properties, LLC | 12/10/18 | 0195/603 | 2N-15E, 19 |
| 230230087 | Rowell, Julie Kirkland | Foote Oil and Gas Properties, LLC | 10/08/18 | 0195/606 | 2N-15E, 18, 19 |

| 230230081 | Sanders, Calvin Adams, a by Margaret Gay Hardeman under POA (Life Estate) | Foote Oil and Gas Properties, LLC | | | |
| 230230071 | Sanders, Robert M. etux Peggy T. Sanders | Foote Oil and Gas Properties, LLC | 10/17/18 | 0195/614 | 2N-14E, 1 |
| 230230072 | Smith, Deborah Freeman | Foote Oil and Gas Properties, LLC | 10/05/18 | 0195/618 | 2N-14E, 1 |
| 230230073 | Smith, Toye Evans | Foote Oil and Gas Properties, LLC | 10/15/18 | 0195/621 | 2N-15E, 18 |
| 230230128 | Speed, Marvin B., Executor of the Estates of James T. Speed and Mary Carter Speed | Foote Oil and Gas Properties, LLC | 01/10/19 | 0195/624 | 2N-15E, 18, 19 |
| 230230118 | T. R. Clark, LLC | Foote Oil and Gas Properties, LLC | 01/02/19 | 0195/435 | 2N-14E, 12, 13; 2N-15E, 18 |
| 230230074 | Talbot, Jean B. | Foote Oil and Gas Properties, LLC | 09/20/18 | 0195/627 | 2N-15E, 18 |
| 230230129 | Termo Company, The | Foote Oil and Gas Properties, LLC | 01/08/19 | 0195/630 | 2N-14E, 13 |
| 230230075 | Thompson, Michael James, widower of Jean Kirkland Thompson, deceased | Foote Oil and Gas Properties, LLC | 10/08/18 | 0195/634 | 2N-15E, 18, 19 |
| 230230088 | Tullos, Teresa C. | Foote Oil and Gas Properties, LLC | 10/12/18 | 0195/637 | 2N-14E, 1 |
| 230230076 | Turner, Linda Evans | Foote Oil and Gas Properties, LLC | 10/15/18 | 0195/641 | 2N-15E, 18 |
| 230230097 | Waddell, Robert W., Jr. | Foote Oil and Gas Properties, LLC | 11/05/18 | 0195/644 | 2N-15E, 18 |
| 230230130 | Ward, Annette R. | Foote Oil and Gas Properties, LLC | 12/04/18 | 0195/647 | 2N-15E, 19 |
| 230230077 | Wilemon, Frances Evans, etvir Raymond Howard Wilemon | Foote Oil and Gas Properties, LLC | 10/15/18 | 0195/650 | 2N-15E, 18 |
| 230230089 | Williams, Edward Lee | Foote Oil and Gas Properties, LLC | 10/23/18 | 0195/653 | 2N-15E, 18 |
| 230230078 | Williams, Mary Gail | Foote Oil and Gas Properties, LLC | 10/23/18 | 0195/656 | 2N-15E, 18 |
| 230230090 | Wright, Carol Diane Evans | Foote Oil and Gas Properties, LLC | 10/15/18 | 0195/659 | 2N-15E, 18 |

*All instrument numbers and book and page references are to the official public records of Clarke County, Mississippi.

Exhibit C

Attached to and made a part of that certain Participation Agreement (North Pachuta Prospect) dated effective as of February 20, 2019, by and between Sklar Exploration Company L.L.C., Sklarco L.L.C., Alabama Oil Company, Apple River Investments, L.L.C., Charles A. Morrison Consulting Geophysicist, Inc., CTM 2005, Ltd., Fant Energy Limited, JJS Working Interests, L.L.C., Kelton Company, L.L.C., Kudzu Oil Properties, L.L.C., Lechwe, L.L.C., Lucas Petroleum Group, Inc., Sylco Exploration, L.L.C., Tauber Exploration & Production Co., and TCP Cottonwood, L.P.

## ASSIGNMENT OF OVERRIDING ROYALTY INTEREST

STATE OF MISSISSIPPI

COUNTY OF CLARKE

**KNOW ALL MEN BY THESE PRESENTS** that:

**SKLARCO, L.L.C.,** a Louisiana limited liability company, whose address is 5395 Pearl Parkway, Suite 200, Boulder, Colorado 80301, represented herein by its duly authorized Vice President – Land & Legal, Steven R. Hatcher, Jr. ("**Sklarco**");

**ALABAMA OIL COMPANY**, a Mississippi partnership, whose address is P.O. Box 230, Glendora, Mississippi 38928, represented herein by its duly authorized Partner, Walker Sturdivant ("**Alabama Oil**");

**APPLE RIVER INVESTMENTS, L.L.C.,** a Michigan limited liability company, whose address is 1503 Garfield Road North, Traverse City, Michigan 49696, herein represented by its duly authorized Manager, Jordan Management Company, which itself is represented herein by its duly authorized President, Robert M. Boeve ("**Apple River**");

**CTM 2005, LTD.,** a Texas limited partnership, whose address is 55 Waugh Drive, Suite 515, Houston, Texas 77007, represented herein by its duly authorized General Partner, McCord Investments, Inc., a Texas Corporation, which itself is represented by its duly authorized President, Charles T. McCord, III ("**CTM**");

**FANT ENERGY LIMITED,** a Texas limited partnership, whose address is P.O. Box 55205, Houston, Texas 77255, represented herein by its duly authorized General Partner, Richard E. Fant L.L.C., a Texas limited liability company, which itself is represented herein by its duly authorized Manager, Stephen Swan ("**Fant**");

**JJS WORKING INTERESTS L.L.C.,** a Texas limited liability company, whose address is 2001 Kirby Drive, Suite 1110, Houston, Texas 77019, represented herein by its duly authorized Manager, Houston Bulldog Capital Management, LLC, a Texas limited liability company, which itself is represented herein by its duly authorized Manager, Justin Simons ("**JJS**");

**KUDZU OIL PROPERTIES, L.L.C.,** a Mississippi limited liability company, whose address is 300 Concourse Boulevard, Suite 101, Ridgeland, Mississippi 39157, represented herein by its duly authorized Manager, Wirt A. Yerger, III ("**Kudzu**")

**LECHWE, L.L.C.,** a Texas limited liability company, whose address is P.O. Box 270415, Houston, Texas 77277, represented herein by its duly authorized Agent and Attorney-in-Fact, Mark Rauch ("**Lechwe**");

**LUCAS PETROLEUM GROUP, INC.,** a Texas corporation, whose mailing address is 327 Congress Avenue, Suite 500, Austin, Texas 78701-3656 represented herein by its duly authorized President, Fain Brock ("**Lucas**");

**TAUBER EXPLORATION & PRODUCTION CO.,** a Texas corporation, whose address is 55 Waugh Drive, Suite 600, Houston, Texas

77007, represented herein by its duly authorized President, Richard E.

Case:20-12377-MER Doc#:183-4  Filed:04/20/20  Entered:04/20/20 18:10:01  Page54 of 79

**TCP COTTONWOOD, L.P.,** a Texas limited partnership, whose address is 333 Texas Street, Suite 2020, Shreveport, Louisiana 71101, represented herein by its duly authorized General Partner Trinity-Anderson, LLC, a Louisiana limited liability company, which itself is represented herein by its duly authorized Manager, Anderson Feazel Management, Inc., a Louisiana corporation, which itself is represented herein by its duly authorized Vice-President, T. Cole Anderson (**"TCP"**);

(Sklarco, Alabama Oil, Apple River, CTM, Fant, JJS, Kudzu, Lechwe, Lucas, Tauber and TCP are sometimes hereinafter referred to collectively as the **"Assignors"** or individually as an **"Assignor"**);

who are the owners of 100% of the working interest in the Oil, Gas and Mineral Leases (the **"Leases"**) described on **Exhibit A**, attached hereto and by reference made a part hereof, for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, do hereby grant, bargain, sell, convey, assigned, set over, and transfer unto the following named parties (hereinafter sometimes referred to collectively as the **"Assignees"** or individually as an **"Assignee"**):

**ALABAMA OIL COMPANY,** a Mississippi partnership, whose Address is P.O. Box 230, Glendora, Mississippi 38928, represented herein by its duly authorized Partner, Walker Sturdivant (**"Alabama Oil"**);

**APPLE RIVER INVESTMENTS, L.L.C.,** a Michigan limited liability company, whose address is 1503 Garfield Road North, Traverse City, Michigan 49696, herein represented by its duly authorized Manager, Jordan Management Company, which itself is represented herein by its duly authorized President, Robert M. Boeve (**"Apple River"**);

**KELTON COMPANY, L.L.C.,** a Florida limited liability company, whose address is P.O. Box 230, Pensacola, Florida 32591, represented herein by its duly authorized Manager, Thomas W. Sylte (**"Kelton"**); and

**KUDZU OIL PROPERTIES, L.L.C.,** a Mississippi limited liability company, whose address is 300 Concourse Boulevard, Suite 101, Ridgeland, Mississippi 39157, represented herein by its duly authorized Manager, Wirt A. Yerger, III (**"Kudzu"**);

an overriding royalty interest (the **"ORRI"**), carved out of the leasehold interest held by Assignors, in, to and under the Leases, equal to the positive difference, if any, between the lessor's royalty under each such lease and twenty-two percent (22%) of the oil, gas, and other minerals produced and saved under the terms and provisions of such Lease, from or attributable to any lands covered thereby, in the following proportions:

| Party | ORRI |
|---|---|
| Alabama Oil | 11.627907% |
| Apple River | 55.813953% |
| Kudzu | 23.255814% |
| Kelton | 9.3023260% |
| Total | 100.00000% |

Provided however, in the event that the Lessor's Burden under a particular Lease is greater than twenty-two percent (22%), then no ORRI is hereby conveyed in such Lease. Each Assignor herein shall contribute

to the ORRI in proportion to its ownership in each Lease. The ORRI shall be calculated and shall be delivered and paid to the Assignees in the same manner and with the same exclusions, deductions and allocations as are provided for the calculation, delivery and payment of royalties to the lessor in each such Lease. Without limitation of the foregoing, the ORRI shall be subject to proportionate reduction in the same manner as royalty under the Leases, such that if any Lease covers less than the full and entire mineral interest in and to the property described therein, then the overriding royalty interest herein assigned applicable to such tract shall be reduced to that proportion thereof which the actual mineral interest covered by the Lease affecting the tract bears to the full mineral interest therein. Similarly, Assignees shall pay or bear such taxes and charges and other deductions attributable to the ORRI as are to be paid and borne by the lessor under each such Lease. The ORRI shall attach to and apply to any renewal, extension or new lease that covers all or a portion of lands previously covered by any Lease, so long as such renewal, extension or new lease is taken or contracted for prior to or within six (6) months after the expiration of the prior Lease.

**TO HAVE AND TO HOLD** unto Assignees, their successors and assigns, forever, subject to, and in accordance with, the following terms and provisions:

1. This Assignment is made effective as of February 20, 2019 (the "**Effective Date**")

2. The Assignment of overriding royalty interest made herein is made without warranty of title, express or implied, not even for return of the purchase price, except that Assignor warrants title against all defects arising out of claims by Assignor or of persons claiming by, through or under Assignor. Additionally, this Assignment is made with transfer and subrogation of all rights and warranties of Assignor and of all prior owners of the Leases and/or the lands unto Assignees.

3. This Assignment, and the interests assigned hereunder, is made subject to the terms and conditions of the Leases.

4. This Assignment is also made in accordance with and subject to that certain Participation Agreement, North Pachuta Prospect (the "**Participation Agreement**"), dated effective as of February 20, 2019, by and between Sklar Exploration Company, L.L.C., Sklarco L.L.C., Alabama Oil Company, Apple River Investments, L.L.C., Charles A. Morrision Consulting Geophysicist, Inc., CTM 2005, Ltd., Fant Energy Limited, JJS Working Interests, L.L.C., Kelton Company, L.L.C., Kudzu Oil Properties, L.L.C., Lechwe, L.L.C., Lucas Petroleum Group, Inc., Sylco Exploration, L.L.C., Tauber Exploration & Production Co., and TCP Cottonwood, L.P., and all attachments thereto, including that certain Joint Operating Agreement attached as Exhibit D thereto, dated effective as of February 20, 2019, by and between Sklar Exploration Company, L.L.C., as Operator, and Sklarco, L.L.C., et al, as Non-Operators.

5. Assignor and Assignees agree to take all such further actions and to execute, acknowledge, and deliver all such further documentation, as are necessary or useful in carrying out the purpose of this Assignment and the Participation Agreement.

6. This Assignment may be executed in any number of counterparts and each counterpart shall constitute and shall be deemed to be an original instrument, but all such counterparts shall constitute but one instrument.

THUS DONE AND SIGNED by each of the Parties on the dates set forth in their
acknowledgements, but effective as of the Effective Date.

Case:20-12377-MER   Doc#:133-4   Filed:04/20/20   Entered:04/20/20 18:10:01   Page56 of
79

**ASSIGNORS:**

SKLARCO L.L.C.


By: _____

   Steven R. Hatcher, Jr.
   Vice President - Land & Legal

ALABAMA OIL COMPANY


By:_____

   Walker Sturdivant
   Partner

APPLE RIVER INVESTMENTS, L.L.C.

By: Jordan Management Company, Manager


By: _____

   Robert M. Boeve
   President

CTM 2005, LTD

By: McCord Investments, Inc., General Partner


By: _____

   Charles T. McCord, III
   President

FANT ENERGY LIMITED

By: Richard E. Fant, L.L.C., General Partner


By: _____

   Stephen Swan
   Manager

JJS WORKING INTERESTS, L.L.C.

By: Houston Bulldog Capital Management, L.L.C.,
Manager


By: _____

   Justin Simmons
   Manager

KUDZU OIL PROPERTIES, L.L.C.


By: _____

   Wirt A. Yerger, III
   Member

LECHWE, L.L.C.

By: _____
         Mark Rauch
         Agent and Attorney-in-Fact

LUCAS PETROLEUM GROUP, INC.

By: _____
         Fain Brock
         President

TAUBER EXPLORATION & PRODUCTION CO.

By: _____
         Richard E. Tauber
         President

TCP COTTONWOOD, L.P.

By: TRINITY-ANDERSON, LLC
         General Partner

By: ANDERSON FEAZEL MANAGEMENT, INC.
         Manager

         By: _____
                  T. Cole Anderson
                  Vice-President

**ASSIGNEES:**

ALABAMA OIL COMPANY

By: _____
         Walker Sturdivant
         Partner

APPLE RIVER INVESTMENTS, L.L.C.

By: Jordan Management Company, Manager

By: _____
         Robert M. Boeve
         President

KUDZU OIL PROPERTIES, L.L.C.

By: _____
         Wirt A. Yerger, III
         Member

KELTON COMPANY, L.L.C.

By: _____
         Thomas W. Sylte
         Manager

STATE OF COLORADO

COUNTY OF BOULDER

    I, _____, a notary public in and for said County and State, hereby certify that Steven R. Hatcher, Jr., whose name as Vice President – Land & Legal of SKLARCO L.L.C., a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    Given under my hand and notarial seal this the _____ day of _____, 2019.


_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF MISSISSIPPI

COUNTY OF TALLAHATCHIE

    I, _____, a notary public in and for said County and State, hereby certify that Walker Strudivant, whose name as Partner of ALABAMA OIL COMPANY, a Mississippi partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    Given under my hand and notarial seal this the _____ day of _____, 2019.


_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF MICHIGAN

COUNTY OF GRAND TRAVERSE

    I, _____, a notary public in and for said County and State, hereby certify that Robert M. Boeve, President of Jordan Management Company, the Manager of APPLE RIVER INVESTMENTS, L.L.C., a Michigan limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    Given under my hand and notarial seal this the _____ day of _____, 2019.


_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

I, _____, a notary public in and for said County and State, hereby certify that Charles T. McCord, III, whose name as President of MCCORD INVESTMENTS, INC., a Texas corporation, duly authorized General Partner of CTM 2005, LTD., a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2019.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF TEXAS

COUNTY OF HARRIS

I, _____, a notary public in and for said County and State, hereby certify that Stephen Swan, whose name as Manager of RICHARD E. FANT L.L.C., a Texas limited liability company, duly authorized General Partner of FANT ENERGY LIMITED, a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2019.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF TEXAS

COUNTY OF HARRIS

I, _____, a notary public in and for said County and State, hereby certify that Justin Simons, whose name as Manager of HOUSTON BULLDOG CAPITAL MANAGEMENT, L.L.C., a Texas limited liability company, duly authorized Manager of JJS WORKING INTERESTS, L.L.C., a Texas limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2019.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF FLORIDA
COUNTY OF ESCAMBIA

I, _____, a notary public in and for said County and State, hereby certify that Thomas W. Sylte, whose name as Manager of KELTON COMPANY, L.L.C., a Florida limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2019.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF MISSISSIPPI

COUNTY OF MADISON

I, _____, a notary public in and for said County and State, hereby certify that Wirt A. Yerger, III, whose name as Member of KUDZU OIL PROPERTIES, L.L.C., a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2019.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF TEXAS

COUNTY OF HARRIS

I, _____, a notary public in and for said County and State, hereby certify that Mark Rauch, whose name as Member of LECHWE, L.L.C., a Texas limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2019.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

PARISH OF CADDO

I, _____, a notary public in and for said Parish and State, hereby certify that Fain Brock, whose name as President of LUCAS PETROLEUM GROUP, INC., a Texas corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2019.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF TEXAS

COUNTY OF HARRIS

I, _____, a notary public in and for said Parish and State, hereby certify that Richard E. Tauber, whose name as President of TAUBER EXPLORATION & PRODUCTION CO., a Texas corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2019.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF LOUISIANA

PARISH OF CADDO

I, _____, a notary public in and for said Parish and State, hereby certify that T. Cole Anderson, whose name as Vice-President of Anderson Feazel Management, Inc., a Louisiana corporation, duly authorized Manager of Trinity-Anderson, LLC, a Louisiana limited liability company, duly authorized General Partner of TCP Cottonwood, L.P. a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2019.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

LOCATION: Sec 12 T2N-R14E (Clarke County, Mississippi)

Set 9-5/8" at 3200'.
Set 5-1/2" at 13,600'.

Latest Revision: 18-Mar-19

| CODE or SUB | CLASSIFICATION: | DRY HOLE | COMPLETION | TOTAL |
|---|---|---|---|---|
| 9100 | **LEASEHOLD COSTS** | | | |
| 81 | LEGAL FEES, TITLE OPINIONS, CURATIVE | 15,000 | | 15,000 |
| 86 | LEASE BONUS | | | |
| 84 | LEASE EXTENSION | | | |
| 88 | DELAY RENTALS | | | |
| 89 | BROKERAGE | | | |
| 90 | LANDMAN COSTS | | | |
| 91 | RECORDING FEES | | | |
| | **TOTAL LEASEHOLD COSTS** | $15,000 | $0 | $15,000 |
| | | | | |
| 9200/9300 | **INTANGIBLE DRILLING & COMPLETION** | | | |
| 01 | SURVEY, DOC HEARINGS, PERMITS | 2,000 | 2,000 | 4,000 |
| 02 | LOCATION PREPARATION/DIRT WORK | 195,000 | 5,000 | 200,000 |
| 03 | LOCATION CLEAN UP & PIT CLOSURE | 50,000 | | 50,000 |
| 04 | SURFACE DAMAGES & ROW | | | |
| 05 | SETTING CONDUCTOR CASING | 18,000 | | 18,000 |
| 06 | RIG MOBILIZE/DEMOBILIZE | 150,000 | | 150,000 |
| 07 | DRILLING - FOOTAGE | | | |
| 08 | DRILLING - TURNKEY | | | |
| 10 | DAYWORK WITH DRILL PIPE (28 days @$14K, 3 days compl) | 392,000 | 42,000 | 434,000 |
| 11 | DAYWORK WITHOUT DRILL PIPE | | | |
| 12 | DAYWORK - RIG EQUIPMENT & REPAIR | | | |
| 13 | ENGINEERING & SUPERVISION: | 60,000 | 15,000 | 75,000 |
| 14 | RIG INSTRUMENTATION & MONITORING | 23,000 | | 23,000 |
| 15 | COIL TUBING UNIT | | | |
| 16 | DIRECTIONAL DRILLING TOOLS & SVCS (if needed) | 100,000 | | 100,000 |
| 17 | MUD & CHEMICALS | 92,000 | | 92,000 |
| 18 | MUD DISPOSAL | | | |
| 19 | CONSULTING | 60,000 | | 60,000 |
| 23 | MUD LOGGING | 22,000 | | 22,000 |
| 24 | CEMENTING & EQUIPMENT | 48,000 | 44,000 | 92,000 |
| 25 | CASING CREW & LAYDOWN MACHINE | 22,000 | 22,000 | 44,000 |
| 26 | PIPE TESTING | 24,000 | 4,000 | 28,000 |
| 27 | EQUIPMENT RENTALS | 70,000 | 14,000 | 84,000 |
| 28 | FISHING TOOLS & SVCS | | | |
| 29 | TELEPHONE & COMMUNICATIONS | 6,000 | | 6,000 |
| 30 | WATER | 35,000 | | 35,000 |
| 31 | FUEL | 108,000 | | 108,000 |
| 32 | BITS | 43,000 | | 43,000 |
| 33 | TRANSPORTATION & TRUCKING | 12,000 | 18,000 | 30,000 |
| 34 | CONTRACT LABOR | 15,000 | 13,000 | 28,000 |
| 35 | SAFETY & H2S TRAINING | 55,000 | 15,000 | 70,000 |
| 36 | LOGGING & WIRELINE | 65,000 | 20,000 | 85,000 |
| 37 | DRILL STEM & PRODUCTION TESTING | | 30,000 | 30,000 |
| 38 | CORING & ANALYSIS | 80,000 | | 80,000 |
| 39 | GEOLOGICAL | 10,000 | | 10,000 |
| 40 | GEOPHYSICAL | | | |
| 46 | WORKOVER RIG | | 30,000 | 30,000 |
| 47 | PERFORATION SERVICES | | 25,000 | 25,000 |
| 48 | COMPLETION FLUIDS | | 5,000 | 5,000 |
| 49 | STIMULATION SERVICES | | 40,000 | 40,000 |
| 50 | INSTALLATION OF WELL EQUIPMENT | | | |
| 51 | PIPELINE EXPENSES & ROW | | | |
| 58 | AUTO EXPENSE | | 3,000 | 3,000 |
| 61 | SALT WATER DISPOSAL | | | |
| 63 | HOT OIL SERVICE | | 10,000 | 10,000 |
| 64 | SWABBING UNIT | | | |
| 65 | PLUG & ABANDON COSTS | 40,000 | -40,000 | |
| 78 | INSURANCE | 10,000 | | 10,000 |
| 79 | COPAS OVERHEAD - DRILLING/COMPLETION | 14,000 | 2,000 | 16,000 |
| 82 | MISCELLANEOUS: ±5% contingency | 91,050 | 15,950 | 107,000 |
| | **TOTAL INTANGIBLE DRILLING & COMPLETION** | $1,912,050 | $334,950 | $2,247,000 |
| | | | | |
| 9500 | **TANGIBLE EQUIPMENT - DRILLING** | | | |
| 02 | SURFACE CASING (9-5/8")3100' @ $22.58 | 98,000 | | 98,000 |
| 03 | INTERMEDIATE CASING & LINERS | | | |
| 04 | FLOAT EQUIPMENT, HANGERS & RELATED | 4,500 | | 4,500 |
| 05 | WELLHEAD EQUIPMENT | 12,500 | | 12,500 |
| 06 | CONDUCTOR CASING | 5,000 | | 5,000 |
| | **TOTAL TANGIBLE EQUIPMENT - DRILLING** | $120,000 | $0 | $120,000 |
| | | | | |
| 9520 | **TANGIBLE EQUIPMENT - COMPLETION** | | | |
| 21 | PRODUCTION CASING & LINERS (5-1/2") | | 205,000 | 205,000 |
| 22 | TUBING (2-7/8") | | 74,000 | 74,000 |
| 23 | PACKERS | | 17,500 | 17,500 |
| 24 | FLOAT EQUIPMENT, HANGERS & RELATED | | 5,000 | 5,000 |
| 25 | WELLHEAD EQUIPMENT | | 24,000 | 24,000 |
| 26 | RODS, DOWNHOLE PUMPS & RELATED | | | |
| 27 | ARTIFICIAL LIFT EQUIPMENT | | 60,000 | 60,000 |
| | **TOTAL TANGIBLE EQUIPMENT - COMPLETION** | $0 | $385,500 | $385,500 |
| | | | | |
| 9535 | **SURFACE PRODUCTION EQUIPMENT** | | | |
| 36 | SURFACE ARTIFICIAL LIFT EQUIPMENT | | 152,000 | 152,000 |
| 41 | SURFACE PRODUCTION EQUIPMENT | | 100,000 | 100,000 |
| 42 | COMPRESSION (VRU) | | 50,000 | 50,000 |
| 43 | TANK BATTERY COSTS | | 90,000 | 90,000 |
| 44 | FLOWLINES, FITTINGS, CONNECTIONS | | 120,000 | 120,000 |
| 45 | PIPELINE & GATHERING SYSTEM COSTS | | | |
| 46 | SALES METERING EQUIPMENT | | 25,000 | 25,000 |
| | **TOTAL SURFACE PRODUCTION EQUIPMENT** | $0 | $537,000 | $537,000 |
| | | | | |
| | **TOTAL EQUIPMENT** | $120,000 | $922,500 | $1,042,500 |
| | | | | |
| | **TOTAL WELL COST** | $2,047,050 | $1,257,450 | $3,304,500 |

Attached to and made a part of that certain Participation Agreement (North Pachuta Prospect) dated effective as of February 20, 2019, by and between Sklar Exploration Company L.L.C., Sklarco L.L.C., Alabama Oil Company, Apple River Investments, L.L.C., Charles A. Morrison Consulting Geophysicist, Inc., CTM 2005, Ltd., Fant Energy Limited, JJS Working Interests, L.L.C., Kelton Company, L.L.C., Kudzu Oil Properties, L.L.C., Lechwe, L.L.C., Lucas Petroleum Group, Inc., Sylco Exploration, L.L.C., Tauber Exploration & Production Co., and TCP Cottonwood, L.P.

A.A.P.L. FORM 610-1982

# MODEL FORM OPERATING AGREEMENT

## NORTH PACHUTA PROSPECT

OPERATING AGREEMENT

DATED

February 20 , 2019 ,
*year*

OPERATOR      **SKLAR EXPLORATION COMPANY L.L.C.**

CONTRACT AREA   **As shown on Exhibit "A" to this Agreement.**

COUNTY OR PARISH OF   **CLARKE**          STATE OF   **MISSISSIPPI**

COPYRIGHT 1982 – ALL RIGHTS RESERVED AMERICAN
ASSOCIATION OF PETROLEUM LANDMEN, 4100 FOSSIL CREEK

# TABLE OF CONTENTS

| Article | Title | Page |
|---|---|---|
| I. | DEFINITIONS | 1 |
| II. | EXHIBITS | 1 |
| III. | INTERESTS OF PARTIES | 2 |
| | A. OIL AND GAS INTERESTS | 2 |
| | B. INTERESTS OF PARTIES IN COSTS AND PRODUCTION | 2 |
| | C. EXCESS ROYALTIES, OVERRIDING ROYALTIES AND OTHER PAYMENTS | 2 |
| | D. SUBSEQUENTLY CREATED INTERESTS | 2 |
| IV. | TITLES | 2-3 |
| | A. TITLE EXAMINATION | 2-3 |
| | B. LOSS OF TITLE | 3 |
| | 1. Failure of Title | 3 |
| | 2. Loss by Non-Payment or Erroneous Payment of Amount Due | 3 |
| | 3. Other Losses | 3 |
| V. | OPERATOR | 4 |
| | A. DESIGNATION AND RESPONSIBILITIES OF OPERATOR | 4 |
| | B. RESIGNATION OR REMOVAL OF OPERATOR AND SELECTION OF SUCCESSOR | 4 |
| | 1. Resignation or Removal of Operator | 4 |
| | 2. Selection of Successor Operator | 4 |
| | C. EMPLOYEES | 4 |
| | D. DRILLING CONTRACTS | 4 |
| VI. | DRILLING AND DEVELOPMENT | 4-5 |
| | A. INITIAL WELL | 4-5 |
| | B. SUBSEQUENT OPERATIONS | 5 |
| | 1. Proposed Operations | 5 |
| | 2. Operations by Less than All Parties | 5-6-7 |
| | 3. Stand-By Time | 7 |
| | 4. Sidetracking | 7 |
| | C. TAKING PRODUCTION IN KIND | 7 |
| | D. ACCESS TO CONTRACT AREA AND INFORMATION | 8 |
| | E. ABANDONMENT OF WELLS | 8 |
| | 1. Abandonment of Dry Holes | 8 |
| | 2. Abandonment of Wells that have Produced | 8-9 |
| | 3. Abandonment of Non-Consent Operations | 9 |
| VII. | EXPENDITURES AND LIABILITY OF PARTIES | 9 |
| | A. LIABILITY OF PARTIES | 9 |
| | B. LIENS AND PAYMENT DEFAULTS | 9 |
| | C. PAYMENTS AND ACCOUNTING | 9 |
| | D. LIMITATION OF EXPENDITURES | 9-10 |
| | 1. Drill or Deepen | 9-10 |
| | 2. Rework or Plug Back | 10 |
| | 3. Other Operations | 10 |
| | E. RENTALS, SHUT-IN WELL PAYMENTS AND MINIMUM ROYALTIES | 10 |
| | F. TAXES | 10 |
| | G. INSURANCE | 11 |
| VIII. | ACQUISITION, MAINTENANCE OR TRANSFER OF INTEREST | 11 |
| | A. SURRENDER OF LEASES | 11 |
| | B. RENEWAL OR EXTENSION OF LEASES | 11 |
| | C. ACREAGE OR CASH CONTRIBUTIONS | 11-12 |
| | D. MAINTENANCE OF UNIFORM INTEREST | 12 |
| | E. WAIVER OF RIGHTS TO PARTITION | 12 |
| | F. PREFERENTIAL RIGHT TO PURCHASE | 12 |
| IX. | INTERNAL REVENUE CODE ELECTION | 12 |
| X. | CLAIMS AND LAWSUITS | 13 |
| XI. | FORCE MAJEURE | 13 |
| XII. | NOTICES | 13 |
| XIII. | TERM OF AGREEMENT | 13 |
| XIV. | COMPLIANCE WITH LAWS AND REGULATIONS | 14 |
| | A. LAWS, REGULATIONS AND ORDERS | 14 |
| | B. GOVERNING LAW | 14 |
| | C. REGULATORY AGENCIES | 14 |
| XV. | OTHER PROVISIONS | 14 |
| XVI. | MISCELLANEOUS | 15 |

referred to as "Operator", and the signatory party or parties other than Operator, sometimes hereinafter referred to individually herein as "Non-Operator", and collectively as "Non-Operators".

<div align="center">

**WITNESSETH:**

</div>

WHEREAS, the parties to this agreement are owners of oil and gas leases and/or oil and gas interests in the land identified in Exhibit "A", and the parties hereto have reached an agreement to explore and develop these leases and/or oil and gas interests for the production of oil and gas to the extent and as hereinafter provided,

NOW, THEREFORE, it is agreed as follows:

<div align="center">

**ARTICLE I.**
**DEFINITIONS**

</div>

As used in this agreement, the following words and terms shall have the meanings here ascribed to them:

A. The term "oil and gas" shall mean oil, gas, casinghead gas, gas condensate, and all other liquid or gaseous hydrocarbons and other marketable substances produced therewith, unless an intent to limit the inclusiveness of this term is specifically stated.

B. The terms "oil and gas lease", "lease" and "leasehold" shall mean the oil and gas leases covering tracts of land lying within the Contract Area which are owned by the parties to this agreement.

C. The term "oil and gas interests" shall mean unleased fee and mineral interests in tracts of land lying within the Contract Area which are owned by parties to this agreement., **including royalty and overriding royalty interests.**

D. The term "Contract Area" shall mean all of the lands, oil and gas leasehold interests and oil and gas interests intended to be developed and operated for oil and gas purposes under this agreement. Such lands, oil and gas leasehold interests and oil and gas interests are described in Exhibit "A".

E. The term "drilling unit" shall mean the area fixed for the drilling of one well by order or rule of any state or federal body having authority. If a drilling unit is not fixed by any such rule or order, a drilling unit shall be the drilling unit as establish-ed by the pattern of drilling in the Contract Area or as fixed by express agreement of the Drilling Parties.

F. The term "drillsite" shall mean the oil and gas lease or interest on which a proposed well is to be located. **100% of**

G. The terms "Drilling Party" and "Consenting Party" shall mean a party who agrees to join in and pay / its share of the cost of any operation conducted under the provisions of this agreement.

H. The terms "Non-Drilling Party" and "Non-Consenting Party" shall mean a party who elects not to participate **for 100% of its share of** in  / a proposed operation.

\*

Unless the context otherwise clearly indicates, words used in the singular include the plural, the plural includes the singular, and the neuter gender includes the masculine and the feminine. **Words defined herein shall have the same meaning whether or not they are capitalized.**

<div align="center">

**ARTICLE II.**
**EXHIBITS**

</div>

The following exhibits, as indicated below and attached hereto, are incorporated in and made a part hereof:

☑ A. Exhibit "A", shall include the following information:
    (1) Identification of lands subject to this agreement,
    (2) Restrictions, if any, as to depths, formations, or substances,
    (3) Percentages or fractional interests of parties to this agreement,
    (4) Oil and gas leases and/or oil and gas interests subject to this agreement,
    (5) Addresses of parties for notice purposes.
☑ B. Exhibit "B", Form of Lease.
☑ C. Exhibit "C", Accounting Procedure.
☑ D. Exhibit "D", Insurance.
☑ E. Exhibit "E", Gas Balancing Agreement.
☐ ~~F. Exhibit "F", Non-Discrimination and Certification of Non-Segregated Facilities.~~
☐ ~~G. Exhibit "G", Tax Partnership.~~

If any provision of any exhibit, except Exhibits / ~~"E"  and  "G"~~, is inconsistent with any provision contained in the body of this agreement, the provisions in the body of this agreement shall prevail. **If any provision in Exhibits "A" and "E" is inconsistent with any provision contained in the body of this agreement, the provisions of Exhibits "A" and "E" shall prevail.** **"A" and "E"**

\*

I. The term "Deepen" shall mean a single operation whereby a well is drilled to an objective Zone below the deepest Zone in which the well was previously drilled, or below the deepest Zone proposed in the associated AFE, whichever is the lesser.

J. The term "Plug Back" shall mean a single operation whereby a deeper Zone is abandoned in order to attempt a completion in a shallower Zone.

K. The term "Recompletion" or "Recomplete" shall mean an operation whereby a Completion in one Zone is abandoned or temporarily isolated in order to attempt a Completion in or commingling with a different Zone within the existing wellbore.

L. The term "Rework" shall mean an operation conducted in the wellbore of a well after it is Completed to secure, restore, or improve production in a Zone which is currently open to production in the wellbore. Such operations include, without limitation, well stimulation operations, but exclude any routine repair or maintenance work or drilling, Sidetracking, Deepening, Completing, Re-completing or Plugging Back of a well.

M. The term "Sidetrack" shall mean the directional control and intentional deviation of a well from vertical so as to change the bottom hole location, unless done to straighten the hole or drill around junk in the hole to overcome other mechanical difficulties.

N. The term "Zone" shall mean a stratum of earth containing, or thought to contain, a common accumulation of Oil and Gas separately producible from any other common accumulation of Oil and Gas.

**A. Oil and Gas Interests:**

If any party owns an oil and gas interest in the Contract Area, that interest shall be treated for all purposes of this agreement and during the term hereof as if it were covered by the form of oil and gas lease attached hereto as Exhibit "B", and the owner thereof shall be deemed to own both the royalty interest reserved in such lease and the interest of the lessee thereunder~~.~~; **provided, however, that the provisions of this Article III.A shall be subject to the provisions of Section 3.1 of the Participation Agreement to which this agreement is attached as Exhibit "D".**

**B. Interests of Parties in Costs and Production:**

Unless changed by other provisions, all costs and liabilities incurred in operations under this agreement shall be borne and paid, and all equipment and materials acquired in operations on the Contract Area shall be owned, by the parties as their interests are set forth in Exhibit "A". In the same manner, the parties shall also own all production of oil and gas from the Contract Area subject to the payment of royalties to the extent of **all jointly owned lease burdens** which shall be borne as hereinafter set forth.

**Each of the parties hereto shall pay or deliver, or cause to be paid or delivered, its proportionate part of the royalties and overriding royalties and other leasehold burdens, as described in the attached Exhibit "A", and shall hold the other party(ies) free from any liability therefor. If the interest of any party(ies) in any oil and gas lease covered by this agreement is subject to any additional royalty, overriding royalty, production payment or other charge over and above those shown on Exhibit "A", such party(ies) shall assume and alone bear all such obligations and shall account, or cause to be accounted, for such interest(s) to the owners therof.** / ~~Regardless of which party has contributed the lease(s) and/or oil and gas interest(s) hereto on which royalty is due and payable, each party entitled to receive a share of production of oil and gas from the Contract Area shall bear and shall pay or deliver, or cause to be paid or delivered, to the extent of its interest in such production, the royalty amount stipulated hereinabove and shall hold the other parties free from any liability therefor.~~ No party shall ever be responsible, however, on a price basis higher than the price received by such party, to any other party's lessor or royalty owner, and if any such other party's lessor or royalty owner should demand and receive settlement on a higher price basis, the party contributing the affected lease shall bear the additional royalty burden attributable to such higher price.

Nothing contained in this Article III.B. shall be deemed an assignment or cross-assignment of interests covered hereby.

**C. Excess Royalties, Overriding Royalties and Other Payments:**

Unless changed by other provisions, if the interest of any party in any lease covered hereby is subject to any royalty, overriding royalty, production payment or other burden on production / **which is not a joint obligation of the parties** ~~in excess of the amount stipulated in Article III.B.~~, such party so burdened shall assume and alone bear all such excess obligations and shall indemnify and hold the other parties hereto harmless from any and all claims and demands for payment asserted by owners of such excess burden.

**D. Subsequently Created Interests:**

If any party should hereafter create an overriding royalty, production payment or other burden payable out of production attributable to its working interest hereunder, or if such a burden existed prior to this agreement and is not set forth in Exhibit "A", ~~or was not disclosed in writing to all other parties prior to the execution of this agreement by all parties,~~ or is not a jointly acknowledged and accepted obligation of all parties (any such interest being hereinafter referred to as "subsequently created interest" irrespective of the timing of its creation and the party out of whose working interest the subsequently created interest is derived being hereinafter referred to as "burdened party"), and:

1. If the burdened party is required under this agreement to assign or relinquish to any other party, or parties, all or a portion of its working interest and/or the production attributable thereto, said other party, or parties, shall receive said assignment and/or production free and clear of said subsequently created interest and the burdened party shall indemnify and save said other party, or parties, harmless from any and all claims and demands for payment asserted by owners of the subsequently created interest; and,

2. If the burdened party fails to pay, when due, its share of expenses chargeable hereunder, all provisions of Article VII.B. shall be enforceable against the subsequently created interest in the same manner as they are enforceable against the working interest of the burdened party.

## ARTICLE IV.
## TITLES

**A. Title Examination:**

Title examination shall be made on the drillsite of any proposed well prior to commencement of drilling operations or, ~~if the Drilling Parties so request~~ **at Operator's election** /, title examination shall be made on the leases and/or oil and gas interests included, or planned to be included, in the drilling unit around such well. The opinion will include the ownership of the working interest, minerals, royalty, overriding royalty and production payments under the applicable leases. At the time a well is proposed, each party contributing leases and/or oil and gas interests to the drillsite, or to be included in such drilling unit, shall furnish to Operator all abstracts (including federal lease status reports), title opinions, title papers and curative material in its possession free of charge. All such information not in the possession of or made available to Operator by the parties, but necessary for the examination of the title, shall be obtained by Operator. Operator shall cause title to be examined by attorneys on its staff or by outside attorneys. / **Upon request,** Copies of all title opinions shall be furnished to each party hereto / **provided such party has paid 100% of its share of all costs of all operations conducted under the provisions of this agreement**. The cost incurred by Operator in this title program shall be borne as follows:

☐ ~~Option No. 1: Costs incurred by Operator in procuring abstracts and title examination (including preliminary, supplemental, shut-in gas royalty opinions and division order title opinions) shall be a part of the administrative overhead as provided in Exhibit "C", and shall not be a direct charge, whether performed by Operator's staff attorneys or by outside attorneys.~~

1   ☑   Option No. 2:   Costs incurred by Operator in procuring abstracts / and fees paid outside attorneys / for title examination
2   shall be borne ~~by the Drilling Parties in the proportion each participates in the cost of drilling, as such proportion is set forth in~~ the Drilling Parties
3   in the proportion that the interest of each Drilling Party bears to the total interest of all Drilling Parties as such interests appear in Exhibit "A". Operator shall make no charge for services rendered by its staff attorneys or other personnel in the performance of the above functions.
4   * curative matters and materials   ** landmen and consultants   *** and for applications and hearings

6          Operator shall use its best efforts to secure curative matters
7   ~~Each party shall be responsible for securing curative matters~~ and pooling amendments or agreements required in connection
8   subject to this agreement and charge all costs incurred in connection with the foregoing to the joint account
    ~~with leases or oil and gas interests / contributed by such party.~~ Operator shall be responsible for the preparation and recording of pooling
9   designations or declarations as well as the conduct of hearings before governmental agencies for the securing of spacing or pooling orders.
10  This shall not prevent any party from appearing on its own behalf at any such hearing.

11

12          No well shall be drilled on the Contract Area until after (1) the title to the drillsite or drilling unit has been examined as above
13  provided, and (2) the title has been approved by the examining attorney or title has been accepted by ~~all of the parties who are to par-~~  Operator
14  ~~ticipate in the drilling of the well.~~

15

16  B.  Loss of Title:

17

18     ~~1. Failure of Title: Should any oil and gas interest or lease, or interest therein, be lost through failure of title, which loss results in a~~
19  ~~reduction of interest from that shown on Exhibit "A", the party contributing the affected lease or interest shall have ninety (90) days~~
20  ~~from final determination of title failure to acquire a new lease or other instrument curing the entirety of the title failure, which acquisi-~~
21  ~~tion will not be subject to Article VIII.B., and failing to do so, this agreement, nevertheless, shall continue in force as to all remaining oil~~
22  ~~and gas leases and interests; and,~~
23     ~~(a)  The party whose oil and gas lease or interest is affected by the title failure shall bear alone the entire loss and it shall not be~~
24  ~~entitled to recover from Operator or the other parties any development or operating costs which it may have theretofore paid or incurred,~~
25  ~~but there shall be no additional liability on its part to the other parties hereto by reason of such title failure;~~
26     ~~(b)  There shall be no retroactive adjustment of expenses incurred or revenues received from the operation of the interest which has~~
27  ~~been lost, but the interests of the parties shall be revised on an acreage basis, as of the time it is determined finally that title failure has oc-~~
28  ~~curred, so that the interest of the party whose lease or interest is affected by the title failure will thereafter be reduced in the Contract~~
29  ~~Area by the amount of the interest lost;~~
30     ~~(c)  If the proportionate interest of the other parties hereto in any producing well theretofore drilled on the Contract Area is~~
31  ~~increased by reason of the title failure, the party whose title has failed shall receive the proceeds attributable to the increase in such in-~~
32  ~~terest (less costs and burdens attributable thereto) until it has been reimbursed for unrecovered costs paid by it in connection with such~~
33  ~~well;~~
34     ~~(d)  Should any person not a party to this agreement, who is determined to be the owner of any interest in the title which has~~
35  ~~failed, pay in any manner any part of the cost of operation, development, or equipment, such amount shall be paid to the party or parties~~
36  ~~who bore the costs which are so refunded;~~
37     ~~(e)  Any liability to account to a third party for prior production of oil and gas which arises by reason of title failure shall be~~
38  ~~borne by the party or parties whose title failed in the same proportions in which they shared in such prior production; and~~
39     ~~(f)  No charge shall be made to the joint account for legal expenses, fees or salaries, in connection with the defense of the interest~~
40  ~~claimed by any party hereto, it being the intention of the parties hereto that each shall defend title to its interest and bear all expenses in~~
41  ~~connection therewith.~~

42

43     ~~2. Loss by Non-Payment or Erroneous Payment of Amount Due:   If, through mistake or oversight, any rental, shut-in well~~
44  ~~payment, minimum royalty or royalty payment, is not paid or is erroneously paid, and as a result a lease or interest therein terminates,~~
45  ~~there shall be no monetary liability against the party who failed to make such payment. Unless the party who failed to make the required~~
46  ~~payment secures a new lease covering the same interest within ninety (90) days from the discovery of the failure to make proper payment,~~
47  ~~which acquisition will not be subject to Article VIII.B., the interests of the parties shall be revised on an acreage basis, effective as of the~~
48  ~~date of termination of the lease involved, and the party who failed to make proper payment will no longer be credited with an interest in~~
49  ~~the Contract Area on account of ownership of the lease or interest which has terminated. In the event the party who failed to make the~~
50  ~~required payment shall not have been fully reimbursed, at the time of the loss, from the proceeds of the sale of oil and gas attributable to~~
51  ~~the lost interest, calculated on an acreage basis, for the development and operating costs theretofore paid on account of such interest, it~~
52  ~~shall be reimbursed for unrecovered actual costs theretofore paid by it (but not for its share of the cost of any dry hole previously drilled~~
53  ~~or wells previously abandoned) from so much of the following as is necessary to effect reimbursement:~~
54     ~~(a)  Proceeds of oil and gas, less operating expenses, theretofore accrued to the credit of the lost interest, on an acreage basis,~~
55  ~~up to the amount of unrecovered costs;~~
56     ~~(b)  Proceeds, less operating expenses, thereafter accrued attributable to the lost interest on an acreage basis, of that portion of~~
57  ~~oil and gas thereafter produced and marketed (excluding production from any wells thereafter drilled) which, in the absence of such lease~~
58  ~~termination, would be attributable to the lost interest on an acreage basis, up to the amount of unrecovered costs, the proceeds of said~~
59  ~~portion of the oil and gas to be contributed by the other parties in proportion to their respective interest; and~~
60     ~~(c)  Any monies, up to the amount of unrecovered costs, that may be paid by any party who is, or becomes, the owner of the interest~~
61  ~~lost, for the privilege of participating in the Contract Area or becoming a party to this agreement.~~

62

63     3. ~~Other~~ Losses:   All losses incurred, ~~other than those set forth in Articles IV.B.1. and IV.B.2. above,~~ shall be joint losses
64  and shall be borne by all parties in proportion to their interests. There shall be no readjustment of interests in the remaining portion of
65  the Contract Area.
66
67
68
69
70

## ARTICLE V.
## OPERATOR

**A.  Designation and Responsibilities of Operator:**

_____ SKLAR EXPLORATION COMPANY L.L.C. _____ shall be the Operator of the Contract Area, and shall conduct and direct and have full control of all operations on the Contract Area as permitted and required by, and within the limits of this agreement. It shall conduct all such operations in a good and workmanlike manner, but it shall have no liability as Operator to the other parties for losses sustained or liabilities incurred, except such as may result from gross negligence or willful misconduct.

**B.  Resignation or Removal of Operator and Selection of Successor:**

1. Resignation or Removal of Operator:  Operator may resign at any time by giving written notice thereof to Non-Operators. If Operator terminates its legal existence, ~~no longer owns an interest hereunder in the Contract Area,~~ or is no longer capable of serving as Operator, Operator shall be deemed to have resigned without any action by Non-Operators, except the selection of a successor. Operator may be removed if it fails or refuses to carry out its duties hereunder, or becomes insolvent, bankrupt or is placed in receivership, by the affirmative vote of two (2) or more Non-Operators owning a majority interest based on ownership as shown on Exhibit "A" remaining. Such vote shall not be deemed effective until a written notice has been delivered to Operator by Non-Operator(s) detailing the alleged default and Operator has failed to cure the alleged default within thirty (30) days of its receipt of said notice. after excluding the voting interest of Operator / Such resignation or removal shall not become effective until 7:00 o'clock A.M. on the first day of the calendar month following the expiration of ninety (90) days after the giving of notice of resignation by Operator or action by the Non-Operators to remove Operator, unless a successor Operator has been selected and assumes the duties of Operator at an earlier date. Operator, after effective date of resignation or removal, shall be bound by the terms hereof as a Non-Operator. A change of a corporate name or structure of Operator or transfer of Operator's interest to any single subsidiary, parent or successor corporation shall not be the basis for removal of Operator.

2. Selection of Successor Operator:  Upon the resignation or removal of Operator, a successor Operator shall be selected by the parties. The successor Operator shall be selected from the parties owning an interest in the Contract Area at the time such successor Operator is selected. The successor Operator shall be selected by the affirmative vote of two (2) or more parties owning a majority interest based on ownership as shown on Exhibit "A"; provided, however, if an Operator ~~which~~ has been removed ~~fails to vote or votes only to succeed itself,~~ the successor Operator shall be selected by the affirmative vote of two (2) or more parties owning a majority interest based on ownership as shown on Exhibit "A" remaining after excluding the voting interest of the Operator that was removed.

**C.  Employees:**

The number of employees used by Operator in conducting operations hereunder, their selection, and the hours of labor and the compensation for services performed shall be determined by Operator, and all such employees shall be the employees of Operator.

**D.  Drilling Contracts:**

except that in Operator's sole discretion, all factors, such as rig availability, equipment condition, contractor employee reliability and knowledge and drilling contractor reputation shall be taken into consideration in determining the real competitive price. All wells drilled on the Contract Area shall be drilled on a competitive contract basis at the usual rates prevailing in the area, / . If it so desires, Operator may employ its own tools and equipment in the drilling of wells, but its charges therefor shall not exceed the prevailing rates in the area ~~and the rate of such charges shall be agreed upon by the parties in writing before drilling operations are commenced,~~ and such work shall be performed by Operator under the same terms and conditions as are customary and usual in the area in contracts of independent contractors who are doing work of a similar nature.

E. Custody of Funds: Operator shall hold for the account of Non-Operators any funds of Non-Operators advanced or paid to Operator, either for the conduct of operations hereunder or as a result of the sale of production from the Contract Area, and such funds shall remain the funds of Non-Operators on whose account they are advanced or paid until used for their intended purpose or otherwise delivered to Non-Operators or applied toward the payment of debts, regardless of whether the debts arise out of the same well or operation for which the funds were advanced or from which the sales proceeds were derived. Nothing in this paragraph shall be construed to establish a fiduciary relationship between Operator and Non-Operators. Nothing in this paragraph shall require the maintenance by Operator of separate accounts for the funds of Non-Operators.

F. Statutory Employer: Operator shall be considered the statutory employer of all employees of all contractors, their sub-contractors or agents, whose goods furnished or services rendered for Operator are an integral part of or essential to Operator's ability to perform its operations as an oil and gas operator.

## ARTICLE VI.
## DRILLING AND DEVELOPMENT

**A.  Initial Well:**
The "Initial Well" is the well referred to in Section 1.2 of the Participation Agreement to which this instrument is attached as Exhibit "D".

On or before the _____ day of _____ , (year) _____ , Operator shall commence the drilling of a well for oil and gas at the following location:

and shall thereafter continue the drilling of the well with due diligence to

unless granite or other practically impenetrable substance or condition in the hole, which renders further drilling impractical, is encountered at a lesser depth, or unless all parties agree to complete or abandon the well at a lesser depth.

Operator shall make reasonable tests of all formations encountered during drilling which give indication of containing oil and gas in quantities sufficient to test, unless this agreement shall be limited in its application to a specific formation or formations, in which event Operator shall be required to test only the formation or formations to which this agreement may apply.

if, in Operator's judgment, the well will not produce oil or gas in paying quantities, and it wishes to plug and abandon the well, as a dry hole, the provisions of Article VI.E.1. shall thereafter apply.

B.   **Subsequent Operations:**

1. Proposed Operations:   Should any party hereto desire to drill any well on the Contract Area other than the well provided for in Article VI.A., or to rework, / deepen or plug back a dry hole drilled at the joint expense of all parties or a well jointly owned by all the parties and not then producing in paying quantities, *reenter, recomplete, sidetrack,* the party desiring to drill, rework, / deepen or plug back such a well shall give the other parties / written notice of the proposed operation, specifying the work to be performed, the location, proposed depth, objective formation and the estimated cost of the operation. The parties / receiving such a notice / shall have / thirty (30) days after / receipt of the notice within which to notify the party wishing to do the work whether they elect to participate in the cost of the proposed operation. If a drilling rig is on location, notice of a proposal to rework, / plug back or drill deeper may be given by telephone and the response period shall be limited to / forty-eight (48) hours, exclusive of Saturday, Sunday, and legal holidays. Failure of a party / receiving such notice to reply within the period above fixed shall constitute an election by that party not to participate in the cost of the proposed operation. Any notice or response given by telephone shall be promptly confirmed in writing. Notwithstanding this Article VI.B.1, and subject to the right of any party to non-consent a proposed operation, a proposal to rework, recomplete, sidetrack, deepen or plugback a well producing in paying quantities, which is consented by two (2) or more parties owning seventy-five percent (75%) or more of the working interest under the well may proceed and be executed on behalf of the Consenting Parties without the unanimous consent of all parties.

(interlineations: *reenter, recomplete, sidetrack,* over "drilled"; *that have not forfeited their interest in the well*; *reenter, recomplete, sidetrack,*; *to whom* / *is delivered* / *fifteen (15)* / *delivery*; *reenter, recomplete sidetrack*; *twenty-four (24)*; *to whom such notice is delivered* / *to whom such notice*)

If all parties elect to participate in such a proposed operation, Operator shall, within ninety (90) days after expiration of the notice period of / thirty (30) days (or as promptly as possible after the expiration of the / forty-eight (48)-hour period when a drilling rig is on location, as the case may be), actually commence the proposed operation and complete it with due diligence at the risk and expense of all parties hereto; provided, however, said commencement date may be extended upon written notice of same by Operator to the other parties, for a period of up to thirty (30) additional days if, in the sole opinion of Operator, such additional time is reasonably necessary to obtain permits from governmental authorities, surface rights (including rights-of-way) or appropriate drilling equipment, or to complete title examination or curative matter required for title approval or acceptance. Notwithstanding the force majeure provisions of Article XI, if the actual operation has not been commenced within the time provided (including any extension thereof as specifically permitted herein) and if any party hereto still desires to conduct said operation, written notice proposing same must be resubmitted to the other parties in accordance with the provisions hereof as if no prior proposal had been made. Operator may, at its discretion, perform preparatory work in connection with, or even actually commence, an operation for which notice has been provided under the Article VI.B prior to or during the notice period, and if such operation in one conducted by less than all parties, the Consenting Parties shall, nevertheless, be entitled to recover the risk compensation provided for hereunder.

(interlineations: *fifteen (15)*; *twenty-four (24)*)

2. Operations by Less than All Parties:   If any party / receiving such notice / as provided in Article VI.B.1. or VII.D.1. (Option No. 2) elects not to participate in the proposed operation, then, in order to be entitled to the benefits of this Article, the party or parties giving the notice and such other parties as shall elect to participate in the operation shall, / within ninety (90) days after the expiration of the notice period of / thirty (30) days (or as promptly as possible after the expiration of the / forty-eight (48)-hour period when a drilling rig is on location, as the case may be) actually commence the proposed operation and complete it with due diligence. Operator shall perform all work for the account of the Consenting Parties; provided, however, if no drilling rig or other equipment is on location, and if Operator is a Non-Consenting Party, the Consenting Parties shall either: (a) request Operator to perform the work required by such proposed operation for the account of the Consenting Parties, or (b) designate one (1) of the Consenting Parties as Operator to perform such work. Consenting Parties, when conducting operations on the Contract Area pursuant to this Article VI.B.2., shall comply with all terms and conditions of this agreement.

(interlineations: *to whom* / *is delivered*; *subject to the availability of equipment and personnel*; *fifteen (15)* / *twenty-four (24)*)

If less than all parties approve any proposed operation, the proposing party, immediately after the expiration of the applicable notice period, shall advise the Consenting Parties of the total interest of the parties approving such operation and its recommendation as to whether the Consenting Parties should proceed with the operation as proposed. Each Consenting Party, within / forty-eight (48) hours (exclusive of Saturday, Sunday and legal holidays) after / receipt of such notice, shall advise the proposing party of its desire to (a) limit participation to such party's interest as shown on Exhibit "A" or (b) carry / its proportionate part of Non-Consenting Parties' interests, and failure to advise the proposing party shall be deemed an election under (a). In the event a drilling rig is on location, the time permitted for such a response shall not exceed a total of / forty-eight (48) hours (inclusive of Saturday, Sunday and legal holidays). The proposing party, at its election, may withdraw such proposal if there is insufficient participation and shall promptly notify all parties of such decision.

(interlineations: *twenty-four (24)* / *delivery*; *all of*; *twenty-four (24)*)

The entire cost and risk of conducting such operations shall be borne by the Consenting Parties in the proportions they have elected to bear same under the terms of the preceding paragraph. Consenting Parties shall keep the leasehold estates involved in such operations free and clear of all liens and encumbrances of every kind created by or arising from the operations of the Consenting Parties. If such an operation results in a dry hole, the Consenting Parties shall / plug and abandon the well and restore the surface location at their sole cost, risk and expense / . If any well drilled, reworked, / deepened or plugged back under the provisions of this Article results in a producer of oil and/or gas in paying quantities, the Consenting Parties shall complete and equip the well to produce at their sole cost and risk, \*or one of them shall make a proposal to the other Consenting Parties to conduct further operations under Article VI.B

(interlineations: *either*; *recompleted, sidetracked,*)

and the well shall then be turned over to Operator and shall be operated by it at the expense and for the account of the Consenting Par-

ties. Upon commencement of operations for the drilling, reworking, / deepening or plugging back of any such well by Consenting Parties

in accordance with the provisions of this Article, each Non-Consenting Party shall be deemed to have relinquished to Consenting Parties,

and the Consenting Parties shall own and be entitled to receive, in proportion to their respective interests, all of such Non-Consenting **entire well and not just a particular Zone therein**

Party's interest in the / well and share of production therefrom until the proceeds of the sale of such share, calculated at the well, or **severance taxes, windfall profits taxes, similar taxes,**

market value thereof if such share is not sold, (after deducting production taxes, excise taxes, / royalty, overriding royalty and other in-**and all Zones within**

terests not excepted by Article III.D. payable out of or measured by the production from / such well accruing with respect to such interest

until it reverts) shall equal the total of the following:

(a) **500%** / 100% of each such Non-Consenting Party's share of the cost of any newly acquired surface equipment beyond the wellhead **500%**

connections (including, but not limited to, stock tanks, separators, treaters, pumping equipment and piping), plus / 100% of each such

Non-Consenting Party's share of the cost of operation of the well commencing with first production and continuing until each such Non-

Consenting Party's relinquished interest shall revert to it under other provisions of this Article, it being agreed that each Non-

Consenting Party's share of such costs and equipment will be that interest which would have been chargeable to such Non-Consenting

Party had it participated in the well from the beginning of the operations; and

(b) _____ **500** _____ % of that portion of the costs and expenses of drilling, reworking, / * deepening, plugging back, testing and completing,

after deducting any cash contributions received under Article VIII.C., and _____ **500** _____ % of that portion of the cost of newly acquired equip-

ment in the well (to and including the wellhead connections), which would have been chargeable to such Non-Consenting Party if it had

participated therein.

An election not to participate in the drilling or the deepening of a well shall be deemed an election not to participate in any re-

working / or plugging back operation proposed in such a well, or portion thereof, to which the initial Non-Consent election applied that is

conducted at any time prior to full recovery by the Consenting Parties of the Non-Consenting Party's recoupment account. Any such

reworking / or plugging back operation conducted during the recoupment period shall be deemed part of the cost of operation of said well **five** **500**

**except that** / and there shall be added to the sums to be recouped by the Consenting Parties / one hundred percent (/ 100%) of that portion of the costs of

the reworking / or plugging back operation which would have been chargeable to such Non-Consenting Party had it participated therein. If

such a reworking / or plugging back operation is proposed during such recoupment period, the provisions of this Article VI.B. shall be ap-

plicable as between said Consenting Parties in said well.

During the period of time Consenting Parties are entitled to receive Non-Consenting Party's share of production, or the

proceeds therefrom, Consenting Parties shall be responsible for the payment of all production, severance, excise, gathering and other

taxes, and all royalty, overriding royalty and other burdens applicable to Non-Consenting Party's share of production not excepted by Ar-

ticle III.D.

*

In the case of any reworking, / plugging back or deeper drilling operation, the Consenting Parties shall be permitted to use, free

of cost, all casing, tubing and other equipment in the well, but the ownership of all such equipment shall remain unchanged; and upon

abandonment of a well after such reworking, / plugging back or deeper drilling, the Consenting Parties shall account for all such equip-

ment to the owners thereof, with each party receiving its proportionate part in kind or in value, less cost of salvage.

Within sixty (60) days after the completion of any operation under this Article, the party conducting the operations for the

Consenting Parties shall furnish each Non-Consenting Party with an inventory of the equipment in and connected to the well, and an

itemized statement of the cost of drilling, deepening, plugging back, testing, completing, and equipping the well for production; or, at its

option, the operating party, in lieu of an itemized statement of such costs of operation, may submit a detailed statement of monthly bill- **quarter**

ings. Each / month thereafter, during the time the Consenting Parties are being reimbursed as provided above, the party conducting the

operations for the Consenting Parties shall furnish the Non-Consenting Parties with an itemized statement of all costs and liabilities in-

curred in the operation of the well, together with a statement of the quantity of oil and gas produced from it and the amount of proceeds **quarter**

realized from the sale of the well's working interest production during the preceding / month. In determining the quantity of oil and gas

produced during any month, Consenting Parties shall use industry accepted methods such as, but not limited to, metering or periodic

well tests. Any amount realized from the sale or other disposition of equipment newly acquired in connection with any such operation

which would have been owned by a Non-Consenting Party had it participated therein shall be credited against the total unreturned costs

of the work done and of the equipment purchased in determining when the interest of such Non-Consenting Party shall revert to it as

above provided; and if there is a credit balance, it shall be paid to such Non-Consenting Party.

* recompleting, sidetracking, re-entering

2   the relinquished interests of such Non-Consenting Party shall automatically revert to it, and, from and after such reversion, such Non-
3   Consenting Party shall own and be entitled to receive its proportionate part of the working interest in the wellbore drilling and production
recompleting, sidetracking,
4   therefrom as such Non-Consenting Party would have been entitled to had it participated in the drilling, reworking, / deepening or plugging
5   back of said well. Thereafter, such Non-Consenting Party shall be charged with and shall pay its proportionate part of the further costs of
6   the operation of said well in accordance with the terms of this agreement and the Accounting Procedure attached hereto.

7

8

9

10      Notwithstanding the provisions of this Article VI.B.2., / it is agreed that without the mutual consent of / all parties, no wells shall
11   be completed in or produced from a source of supply from which a well located elsewhere on the Contract Area is producing, unless such
12   well conforms to the then-existing well spacing pattern for such source of supply.; provided that an exceptional well location that is
approved by the Alabama Mississippi Oil and Gas Board shall be deemed to conform to the then existing well spacing pattern.
13
14   * and subject to the right of any party to non-consent the proposed operation,
  ** two (2) or more parties owning 75% or more of the working interest

15

16      The provisions of this Article shall have no application whatsoever to the drilling of the initial well described in Article VI.A.
recompleting, sidetracking,
17   except (a) as to Article VII.D.1. (Option No. 2), if selected, or (b) as to the reworking, / deepening and plugging back of such initial well
18   after if has been drilled to the depth specified in Article VI.A. if it shall thereafter prove to be a dry hole or, if initially completed for pro-
19   duction, ceases to produce in paying quantities.

20

21

22

23     3. Stand-By Time:  When a well which has been drilled or deepened has reached its authorized depth and all tests have been
24   completed, and the results thereof furnished to the parties, stand-by costs incurred pending response to a party's notice proposing a
25   reworking, deepening, plugging back or completing operation in such a well shall be charged and borne as part of the drilling or deepen-
26   ing operation just completed. Stand-by costs subsequent to all parties responding, or expiration of the response time permitted, whichever
27   first occurs, and prior to agreement as to the participating interests of all Consenting Parties pursuant to the terms of the second gram-
28   matical paragraph of Article VI.B.2., shall be charged to and borne as part of the proposed operation, but if the proposal is subsequently
29   withdrawn because of insufficient participation, such stand-by costs shall be allocated between the Consenting Parties in the proportion
30   each Consenting Party's interest as shown on Exhibit "A" bears to the total interest as shown on Exhibit "A" of all Consenting Par-
31   ties.

32

33

34

35     4. Sidetracking:  Except as hereinafter provided, those provisions of this agreement applicable to a "deepening" operation shall
36   also be applicable to any proposal to directionally control and intentionally deviate a well from vertical so as to change the bottom hole
37   location (herein call "sidetracking"), unless done to straighten the hole or to drill around junk in the hole or because of other
38   mechanical difficulties. Any party having the right to participate in a proposed sidetracking operation that does not own an interest in the
39   affected well bore at the time of the notice shall, upon electing to participate, tender to the well bore owners its proportionate share (equal
40   to its interest in the sidetracking operation) of the value of that portion of the existing well bore to be utilized as follows:

41

42

43

44     (a)  If the proposal is for sidetracking an existing dry hole, reimbursement shall be on the basis of the actual costs incurred in
45   the initial drilling of the well down to the depth at which the sidetracking operation is initiated.

46

47

48

49     (b)  If the proposal is for sidetracking a well which has previously produced, reimbursement shall be on the basis of the well's
50   salvable materials and equipment down to the depth at which the sidetracking operation is initiated, determined in accordance with the
51   provisions of Exhibit "C", less the estimated cost of salvaging and the estimated cost of plugging and abandoning.

52

53

54

55     In the event that notice for a sidetracking operation is given while the drilling rig to be utilized is on location, the response period
twenty-four (24)
56   shall be limited to / forty-eight (48) hours, exclusive of Saturday, Sunday and legal holidays; provided, however, any party may request and
twenty-four (24)
57   receive up to eight (8) additional days after expiration of the / forty-eight (48) hours within which to respond by paying for all stand-by time
58   incurred during such extended response period. If more than one party elects to take such additional time to respond to the notice, stand
59   by costs shall be allocated between the parties taking additional time to respond on a day-to-day basis in the proportion each electing par-
60   ty's interest as shown on Exhibit "A" bears to the total interest as shown on Exhibit "A" of all the electing parties. In all other in-
fifteen (15)
61   stances the response period to a proposal for sidetracking shall be limited to / thirty (30) days.

62

63

64

65 C.   TAKING PRODUCTION IN KIND

66

have the right to
67     Each party shall / take in kind or separately dispose of its proportionate share of all oil and gas produced from the Contract Area,
68   exclusive of production which may be used in development and producing operations and in preparing and treating oil and gas for
69   marketing purposes and production unavoidably lost. Any extra expenditure incurred in the taking in kind or separate disposition by any
70   party of its proportionate share of the production shall be borne by such party. Any party taking its share of production in kind shall be

required to pay for only its proportionate share of such part of Operator's surface facilities which it uses.

3     Each party shall execute such division orders and contracts as may be necessary for the sale of its interest in production from
4 the Contract Area, and, except as provided in Article VII.B., shall be entitled to receive payment directly from the purchaser thereof for
5 its share of all production.

7     In the event any party shall fail to make the arrangements necessary to take in kind or separately dispose of its proportionate share of
8 the oil produced from the Contract Area, Operator shall have the right, subject to the revocation at will by the party owning it, but not
          on the same terms as Operator is marketing Operator's and/or other Non-Operators' share of production
9 the obligation, to purchase such oil or sell it to others at any time and from time to time, for the account of the non-taking party / at the
10 best price obtainable in the area for such production. Any such purchase or sale by Operator shall be subject always to the right of the
11 owner of the production to exercise at any time its right to take in kind, or separately dispose of, its share of all oil not previously
12 delivered to a purchaser. Any purchase or sale by Operator of any other party's share of oil shall be only for such reasonable periods of
13 time as are consistent with the minimum needs of the industry under the particular circumstances, but in no event for a period in excess
14 of one (1) year.

16     In the event one or more parties' separate disposition of its share of the gas causes split-stream deliveries to separate pipelines and/or
17 deliveries which on a day-to-day basis for any reason are not exactly equal to a party's respective proportionate share of total gas sales to
18 be allocated to it, the balancing or accounting between the respective accounts of the parties shall be in accordance with any gas balancing
19 agreement between the parties hereto, whether such an agreement is attached as Exhibit "E", or is a separate agreement.

21 D.     Access to Contract Area and Information:

                                                    Consenting Party                    conducted under this
23     Except as otherwise provided herein, each Consenting Party who has paid 100% of its share of all costs of all operations conducted under this
Agreement / Each party shall have access to the Contract Area at all reasonable times, at its sole cost and risk to inspect or observe operations,
24 and shall have access at reasonable times to information pertaining to the development or operation thereof, including Operator's books
                                                                     Consenting Parties
25 and records relating thereto. Operator, upon request, shall furnish each of the other / parties with copies of all forms or reports filed with
26 governmental agencies, daily drilling reports, well logs, tank tables, daily gauge and run tickets and reports of stock on hand at the first of
27 each month, and shall make available samples of any cores or cuttings taken from any well drilled on the Contract Area. The cost of
28 gathering and furnishing information to Non-Operator, other than that specified above, shall be charged to the Non-Operator that re-
29 quests the Information.

30 0
31 E.     Abandonment of Wells:

33     1. Abandonment of Dry Holes:  Except for any well drilled or deepened pursuant to Article VI.B.2., any well which has been
34 drilled or deepened under the terms of this agreement and is proposed to be completed as a dry hole shall not be plugged and abandoned
                                    *                 **
35 without the consent of / all parties. / Should Operator, after diligent effort, be unable to contact any party, or should any party fail to reply
                  twenty-four (24) hours (inclusive
36 within / forty-eight (48) hours (exclusive of Saturday, Sunday and legal holidays) after receipt of notice of the proposal to plug and abandon
37 such well, such party shall be deemed to have consented to the proposed abandonment. All such wells shall be plugged and abandoned in
38 accordance with applicable regulations and at the cost, risk and expense of the parties who participated in the cost of drilling or deepening
                  ***          or parties owning at least eight percent (8%) interest in the well
39 such well. / Any party / who objects to plugging and abandoning such well shall have the right to take over the well and conduct further
40 operations in search of oil and/or gas subject to the provisions of Article VI.B.

42     2. Abandonment of Wells that have Produced:  Except for any well in which a Non-Consent operation has been conducted
43 hereunder for which the Consenting Parties have not been fully reimbursed as herein provided, any well which has been completed as a
                                                                              such
44 producer shall not be plugged and abandoned without the consent of / all parties. If / all parties consent to such abandonment, the well shall
45 be plugged and abandoned in accordance with applicable regulations and at the cost, risk and expense of all the parties hereto. If, within
      fifteen (15)
46 / thirty (30) days after receipt of notice of the proposed abandonment of any well, all parties do not agree to the abandonment of such well,
47 those wishing to continue its operation from the interval(s) of the formation(s) then open to production shall tender to each of the other
48 parties its proportionate share of the value of the well's salvable material and equipment, determined in accordance with the provisions of
                                                                                             *****
49 Exhibit "C", less the estimated cost of salvaging and the estimated cost of plugging and abandoning. / Each abandoning party shall assign
50 the non-abandoning parties, without warranty, express or implied, as to title or as to quantity, or fitness for use of the equipment and
51 material, all of its interest in the well and related equipment, together with its interest in the leasehold estate as to, but only as to, the in-
52 terval or intervals of the formation or formations then open to production. If the interest of the abandoning party is or includes an oil and
53 gas interest, such party shall execute and deliver to the non-abandoning party or parties an oil and gas lease, limited to the interval or in-
54 tervals of the formation or formations then open to production, for a term of one (1) year and so long thereafter as oil and/or gas is pro-
55 duced from the interval or intervals of the formation or formations covered thereby, such lease to be on the form attached as Exhibit

57 * ninety-two percent (92%) or more of the parties thereof
58 ** If the well has been drilled pursuant to Article VI.B.2, only the consent of the Consenting Parties therein shall be required.
59 *** Any cement plugs used for plugging and abandoning such well shall be in excess of that required by the regulatory body,
recommended to be a volume of one and one-half times that required.
60 **** two-thirds (66.67%) or more of the owners thereof.  If the well has been drilled or reworked pursuant to Article VI.B.2 and the
61 Consenting Parties therein have not been fully reimbursed as therein provided, only the approval of two-thirds (66.67%) of such
Consenting Parties shall be required
62 ***** Should any party fail to reply to such notice, such party shall be deemed to have consented to the proposed abandonment.

required to pay for only its proportionate share of such part of Operator's surface facilities which it uses.

Each party shall execute such division orders and contracts as may be necessary for the sale of its interest in production from the Contract Area, and, except as provided in Article VII.B., shall be entitled to receive payment directly from the purchaser thereof for its share of all production.

In the event any party shall fail to make the arrangements necessary to take in kind or separately dispose of its proportionate share of the oil and gas produced from the Contract Area, Operator shall have the right, subject to the revocation at will by the party owning it, but not the obligation, to purchase such oil and gas or sell it to others at any time and from time to time, for the account of the non-taking party at the best price obtainable in the area for such production. Any such purchase or sale by Operator shall be subject always to the right of the owner of the production to exercise at any time its right to take in kind, or separately dispose of, its share of all oil and gas not previously delivered to a purchaser. Any purchase or sale by Operator of any other party's share of oil and gas shall be only for such reasonable periods of time as are consistent with the minimum needs of the industry under the particular circumstances, but in no event for a period in excess of one (1) year. Notwithstanding the foregoing, Operator shall not make a sale, including one into interstate commerce, of any other party's share of gas production without first giving such other party thirty (30) days notice of such intended sale.

D.    Access to Contract Area and Information:

Each party shall have access to the Contract Area at all reasonable times, at its sole cost and risk to inspect or observe operations, and shall have access at reasonable times to information pertaining to the development or operation thereof, including Operator's books and records relating thereto. Operator, upon request, shall furnish each of the other parties with copies of all forms or reports filed with governmental agencies, daily drilling reports, well logs, tank tables, daily gauge and run tickets and reports of stock on hand at the first of each month, and shall make available samples of any cores or cuttings taken from any well drilled on the Contract Area. The cost of gathering and furnishing information to Non-Operator, other than that specified above, shall be charged to the Non-Operator that requests the information.

E.    Abandonment of Wells:

1. Abandonment of Dry Holes:  Except for any well drilled or deepened pursuant to Article VI.B.2., any well which has been drilled or deepened under the terms of this agreement and is proposed to be completed as a dry hole shall not be plugged and abandoned without the consent of all parties. Should Operator, after diligent effort, be unable to contact any party, or should any party fail to reply within forty-eight (48) hours (exclusive of Saturday, Sunday and legal holidays) after receipt of notice of the proposal to plug and abandon such well, such party shall be deemed to have consented to the proposed abandonment. All such wells shall be plugged and abandoned in accordance with applicable regulations and at the cost, risk and expense of the parties who participated in the cost of drilling or deepening such well. Any party who objects to plugging and abandoning such well shall have the right to take over the well and conduct further operations in search of oil and/or gas subject to the provisions of Article VI.B.

2. Abandonment of Wells that have Produced:  Except for any well in which a Non-Consent operation has been conducted hereunder for which the Consenting Parties have not been fully reimbursed as herein provided, any well which has been completed as a producer shall not be plugged and abandoned without the consent of all parties. If all parties consent to such abandonment, the well shall be plugged and abandoned in accordance with applicable regulations and at the cost, risk and expense of all the parties hereto. If, within thirty (30) days after receipt of notice of the proposed abandonment of any well, all parties do not agree to the abandonment of such well, those wishing to continue its operation from the interval(s) of the formation(s) then open to production shall tender to each of the other parties its proportionate share of the value of the well's salvable material and equipment, determined in accordance with the provisions of Exhibit "C", less the estimated cost of salvaging and the estimated cost of plugging and abandoning. Each abandoning party shall assign the non-abandoning parties, without warranty, express or implied, as to title or as to quantity, or fitness for use of the equipment and material, all of its interest in the well and related equipment, together with its interest in the leasehold estate as to, but only as to, the interval or intervals of the formation or formations then open to production. If the interest of the abandoning party is or includes an oil and gas interest, such party shall execute and deliver to the non-abandoning party or parties an oil and gas lease, limited to the interval or intervals of the formation or formations then open to production, for a term of one (1) year and so long thereafter as oil and/or gas is produced from the interval or intervals of the formation or formations covered thereby, such lease to be on the form attached as Exhibit

"B". The assignments or leases so limited shall encompass the "drilling unit" upon which the well is located. The payments by, and the accounting liability of the assignees shall be limited to their respective percentage of participation in the Contract Area to the aggregate of the percentages of participation in the Contract Area of all assignees. There shall be no reacquisition of interests in the remaining portion of the Contract Area.

Thereafter, abandoning parties shall have no further responsibility, liability, or interest in the operation of or production from the well in the interval or intervals then open other than the royalties retained in any lease made under the terms of this Article. ~~Upon request,~~ Operator ~~shall~~ / continue to operate the assigned well for the account of the non-abandoning parties at the rates and charges contemplated by this agreement, plus any additional cost and charges which may arise as the result of the separate ownership of the assigned well. Upon proposed abandonment of the producing interval(s) assigned or leased, the assignor or lessor shall then have the option to repurchase its prior interest in the well (using the same valuation formula) and participate in further operations therein subject to the provisions hereof.

3. <u>Abandonment of Non-Consent Operations:</u>  The provisions of Article VI.E.1. or VI.E.2 above shall be applicable as between Consenting Parties in the event of the proposed abandonment of any well excepted from said Articles; provided, however, no well shall be permanently plugged and abandoned unless and until all parties having the right to conduct further operations therein have been notified of the proposed abandonment and afforded the opportunity to elect to take over the well in accordance with the provisions of this Article VI.E.

## ARTICLE VII.
## EXPENDITURES AND LIABILITY OF PARTIES

**A.  Liability of Parties:**

The liability of the parties shall be several, not joint or collective. Each party shall be responsible only for its obligations, and shall be liable only for its proportionate share of the costs of developing and operating the Contract Area. Accordingly, the liens granted among the parties in Article VII.B. are given to secure only the debts of each severally. It is not the intention of the parties to create, nor shall this agreement be construed as creating, a mining or other partnership or association, or to render the parties liable as partners. **In their relationship with each other under this agreement, the parties shall not be considered fiduciaries or to have established a confidential relationship, but rather shall be free to act on an arm's length basis in accordance with their own self-interest.**

**B.  Liens and Payment Defaults:**

Each Non-Operator grants to Operator a lien upon its oil and gas rights in the Contract Area, and a security interest in its share of oil and/or gas when extracted and its interest in all equipment, to secure payment of its share of expense, together with interest thereon at the rate provided in Exhibit "C". To the extent that Operator has a security interest under the Uniform Commercial Code of the state, Operator shall be entitled to exercise the rights and remedies of a secured party under the Code. The bringing of a suit and the obtaining of judgment by Operator for the secured indebtedness shall not be deemed an election of remedies or otherwise affect the lien rights or security interest as security for the payment thereof. In addition, upon default by any Non-Operator in the payment of its share of expense, Operator shall have the right, without prejudice to other rights or remedies, to collect from the purchaser the proceeds from the sale of such Non-Operator's share of oil and/or gas until the amount owed by such Non-Operator, plus interest, has been paid. Each purchaser shall be entitled to rely upon Operator's written statement concerning the amount of any default. Operator grants a like lien and security interest to the Non-Operators to secure payment of Operator's proportionate share of expense.

If any party fails or is unable to pay its share of expense within sixty (60) days after rendition of a statement therefor by Operator, the non-defaulting parties, including Operator, shall, upon request by Operator, pay the unpaid amount in the proportion that the interest of each such party bears to the interest of all such parties. Each party so paying its share of the unpaid amount shall, ~~to obtain reimbursement thereof, be subrogated to the security rights described in the foregoing paragraph,~~ be entitled to recover the amount it paid plus five hundred percent (500%) of that amount out of the proceeds from the sale of the defaulting party's share of oil and for gas and, to secure the payment thereof, be subrogated to the security rights described in the foregoing paragraphs. Notwithstanding anything to the contrary in this Paragraph, all parties agree that this provision shall not apply to any operation requiring an AFE unless Operator its proportionate share of such estimate within fifteen (15) days after such estimate and invoice is received. If any party fails to pay its share of said estimate within said time, the amount due shall bear interest as provided in Exhibit "C" until paid. Proper adjustment shall be made monthly between advances and actual expense to the end that each party shall bear and pay its proportionate share of actual expenses incurred, and no more.

*(crossed-out text inserted; amended language reads:)* Further, notwithstanding anything to the contrary in this Paragraph, all parties agree that this provision shall not apply to any oil and gas interests contributed or made subject to this agreement.

**C.  Payments and Accounting:**

Except as herein otherwise specifically provided, Operator shall promptly pay and discharge expenses incurred in the development and operation of the Contract Area pursuant to this agreement and shall charge each of the parties hereto with their respective proportionate shares upon the expense basis provided in Exhibit "C". Operator shall keep an accurate record of the joint account hereunder, showing expenses incurred and charges and credits made and received.

Operator, at its election, shall have the right from time to time to demand and receive from the other parties payment in advance of their respective shares of the estimated amount of the expense to be incurred in operations hereunder during the next succeeding month, which right may be exercised only by submission to each party of an itemized statement of such estimated expense, together with an invoice for its share thereof. Each such statement and invoice for the payment in advance of estimated expense shall be submitted on or before the 20th day of the next preceding month. Each party shall pay to Operator its proportionate share of such estimate within fifteen (15) days after such estimate and invoice is received. If any party fails to pay its share of said estimate within said time, the amount due shall bear interest as provided in Exhibit "C" until paid. Proper adjustment shall be made monthly between advances and actual expense to the end that each party shall bear and pay its proportionate share of actual expenses incurred, and no more.

**D.  Limitation of Expenditures:**

1. <u>Drill or Deepen:</u>  Without the consent of all parties, no well shall be drilled or deepened, except any well drilled or deepened pursuant to the provisions of Article VI.B.2. of this agreement. Consent to the drilling or deepening shall include:

4 ☒     Option No. 2 / :   All necessary expenditures for the drilling or deepening and testing of the well. When such well has reached its
                                       (including all logs)
5 authorized depth, and all tests have been completed, and the results thereof / furnished to the parties, Operator shall give immediate notice
6 to the Non-Operators who have the right to participate in the completion costs. The parties receiving such notice shall have forty-eight
7 (48) hours (exclusive of Saturday, Sunday and legal holidays) in which to elect to participate in the setting of casing and the completion at-
8 tempt. Such election, when made, shall include consent to all necessary expenditures for the completing and equipping of such well, in-
9 cluding necessary tankage and/or surface facilities. Failure of any party receiving such notice to reply within the period above fixed shall
10 constitute an election by that party not to participate in the cost of the completion attempt. If one or more, but less than all of the parties,
11 elect to set pipe and to attempt a completion, the provisions of Article VI.B.2. hereof (the phrase "reworking, deepening or plugging
12 back" as contained in Article VI.B.2. shall be deemed to include "completing") shall apply to the operations thereafter conducted by less
13 than all parties. ** This Option No. 2 shall cover all wells except those expressly covered by Option No. 1, above.
14

15      2. <u>Rework or Plug Back:</u>   Without the consent of all parties, no well shall be reworked or plugged back except a well reworked or
16 plugged back pursuant to the provisions of Article VI.B.2. of this agreement. Consent to the reworking or plugging back of a well shall
17 include all necessary expenditures in conducting such operations and completing and equipping of said well, including necessary tankage
18 and/or surface facilities.
19

20      3. <u>Other Operations:</u>   Without the consent of <s>/ all parties,</s> Operator shall not undertake any single project reasonably estimated
                             two or more parties owning a majority interest
21 to require an expenditure in excess of _____ Fifty Thousand and No/100 _____ Dollars ($ 50,000.00 _____)
22 except in connection with a well, the drilling, deepening, completing, recompleting, or plugging back of which has been
23 previously authorized by or pursuant to this agreement; provided, however, that, in case of explosion, fire, flood or other sudden
24 emergency, whether of the same or different nature, Operator may take such steps and incur such expenses as in its opinion are required
25 to deal with the emergency to safeguard life and property but Operator, as promptly as possible, shall report the emergency to the other
26 parties. If Operator prepares an authority for expenditure (AFE) for its own use, Operator shall furnish any Non-Operator so requesting
27 an information copy thereof for any single project costing in excess of _____ Twenty-Five Thousand and No/100 _____
28 Dollars ($ 25,000.00 _____ ) but less than the amount first set forth above in this paragraph.
29

30 E.     Rentals, Shut-In Well Payments and Minimum Royalties:
31

32      Rentals, shut-in well payments and minimum royalties which may be required under the terms of any lease / <s>shall be paid by the</s>
                             and burdening the interest of all parties shall be paid by Operator and charged to the Joint Account,
33 <s>party or parties who subjected such lease to this agreement at its or their expense.</s> In the event two or more parties own and have con-
34 tributed interests in the same lease to this agreement, such parties may designate one of such parties to make said payments for and on
35 behalf of all such parties. Any party may request, and shall be entitled to receive, proper evidence of all such payments. In the event of
36 failure to make proper payment of any rental, shut-in well payment or minimum royalty through mistake or oversight where such pay-
37 ment is required to continue the lease in force, any loss which results from such non-payment shall be borne in accordance with the pro-
38 visions of Article IV.B.2.
39

40      Operator shall notify Non-Operator of the anticipated completion of a shut-in gas well, or the shutting in or return to production
41 of a producing gas well, <s>at least five (5) days (excluding Saturday, Sunday and legal holidays),</s> or at the earliest opportunity permitted by
42 circumstances, prior to taking such action, but assumes no liability for failure to do so. In the event of failure by Operator to so notify
43 Non-Operator, the loss of any lease contributed hereto by Non-Operator for failure to make timely payments of any shut-in well payment
44 shall be borne jointly by the parties hereto under the provisions of Article IV.B.3.
45

46 F.     Taxes:
47

48      Beginning with the first calendar year after the effective date hereof, Operator shall render for ad valorem taxation all property
49 subject to this agreement which by law should be rendered for such taxes, and it shall pay all such taxes assessed thereon before they
50 become delinquent. Prior to the rendition date, each Non-Operator shall furnish Operator information as to burdens (to include, but not
51 be limited to, royalties, overriding royalties and production payments) on leases and oil and gas interests contributed by such Non-
52 Operator. If the assessed valuation of any leasehold estate is reduced by reason of its being subject to outstanding excess royalties, over-
53 riding royalties or production payments, the reduction in ad valorem taxes resulting therefrom shall inure to the benefit of the owner or
54 owners of such leasehold estate, and Operator shall adjust the charge to such owner or owners so as to reflect the benefit of such reduc-
55 tion. If the ad valorem taxes are based in whole or in part upon separate valuations of each party's working interest, then notwithstanding
56 anything to the contrary herein, charges to the joint account shall be made and paid by the parties hereto in accordance with the tax
57 value generated by each party's working interest. Operator shall bill the other parties for their proportionate shares of all tax payments in
58 the manner provided in Exhibit "C".
59

60      If Operator / considers any tax assessment improper, / Operator may, at its discretion, protest within the time and manner
         or a Non-Operator               and in the case of a Non-Operator, such Non-Operator timely notifies Operator in writing,
61 prescribed by law, and prosecute the protest to a final determination, unless all parties agree to abandon the protest prior to final deter-
62 mination. During the pendency of administrative or judicial proceedings, Operator may elect to pay, under protest, all such taxes and any
63 interest and penalty. When any such protested assessment shall have been finally determined, Operator shall pay the tax for the joint ac-
64 count, together with any interest and penalty accrued, and the total cost shall then be assessed against the parties, and be paid by them, as
65 provided in Exhibit "C".
66

67      <s>Each party /</s> shall pay or cause to be paid / all production, severance, excise, gathering and other taxes imposed upon or with respect
       Operator            on behalf of all Parties
68 to the production or handling of such party's share of oil and/or gas produced under the terms of this agreement.
69
70

G.    Insurance:

At all times while operations are conducted hereunder, Operator shall comply with the workmen's compensation law of the state where the operations are being conducted; provided, however, that Operator may be a self-insurer for liability under said compensation laws in which event the only charge that shall be made to the joint account shall be as provided in Exhibit "C". Operator shall also carry or provide insurance for the benefit of the joint account of the parties as outlined in Exhibit "D", attached to and made a part hereof. Operator shall require all contractors engaged in work on or for the Contract Area to comply with the workmen's compensation law of the state where the operations are being conducted and to maintain such other insurance as Operator may require.

In the event automobile public liability insurance is specified in said Exhibit "D", or subsequently receives the approval of the parties, no direct charge shall be made by Operator for premiums paid for such insurance for Operator's automotive equipment.

## ARTICLE VIII.
### ACQUISITION, MAINTENANCE OR TRANSFER OF INTEREST

A.    Surrender of Leases:

The leases covered by this agreement, insofar as they embrace acreage in the Contract Area, shall not be surrendered in whole or in part unless all parties consent thereto.

However, should any party desire to surrender its interest in any lease or in any portion thereof, and the other parties do not agree or consent thereto, the party desiring to surrender shall assign, without express or implied warranty of title, all of its interest in such lease, or portion thereof, and any well, material and equipment which may be located thereon and any rights in production thereafter secured, to the parties not consenting to such surrender. If the interest of the assigning party is or includes an oil and gas interest, the assigning party shall execute and deliver to the party or parties not consenting to such surrender an oil and gas lease covering such oil and gas interest for a term of one (1) year and so long thereafter as oil and/or gas is produced from the land covered thereby, such lease to be on the form attached hereto as Exhibit "B". Upon such assignment or lease, the assigning party shall be relieved from all obligations thereafter accruing, but not theretofore accrued, with respect to the interest assigned or leased and the operation of any well attributable thereto, and the assigning party shall have no further interest in the assigned or leased premises and its equipment and production other than the royalties retained in any lease made under the terms of this Article. The party assignee or lessee shall pay to the party assignor or lessor the reasonable salvage value of the latter's interest in any wells and equipment attributable to the assigned or leased acreage. The value of all material shall be determined in accordance with the provisions of Exhibit "C", less the estimated cost of salvaging and the estimated cost of plugging and abandoning. If the assignment or lease is in favor of more than one party, the interest shall be shared by such parties in the proportions that the interest of each bears to the total interest of all such parties.

Any assignment, lease or surrender made under this provision shall not reduce or change the assignor's, lessor's or surrendering party's interest as it was immediately before the assignment, lease or surrender in the balance of the Contract Area; and the acreage assigned, leased or surrendered, and subsequent operations thereon, shall not thereafter be subject to the terms and provisions of this agreement.

B.    Renewal or Extension of Leases:

If any party secures a renewal of any oil and gas lease subject to this agreement, all other parties shall be notified promptly, and shall have the right for a period of thirty (30) days following receipt of such notice in which to elect to participate in the ownership of the renewal lease, insofar as such lease affects lands within the Contract Area, by paying to the party who acquired it their several proper proportionate shares of the acquisition cost allocated to that part of such lease within the Contract Area, which shall be in proportion to the interests held at that time by the parties in the Contract Area.

If some, but less than all, of the parties elect to participate in the purchase of a renewal lease, it shall be owned by the parties who elect to participate therein, in a ratio based upon the relationship of their respective percentage of participation in the Contract Area to the aggregate of the percentages of participation in the Contract Area of all parties participating in the purchase of such renewal lease. Any renewal lease in which less than all parties elect to participate shall not be subject to this agreement.

Each party who participates in the purchase of a renewal lease shall be given an assignment of its proportionate interest therein by the acquiring party.

The provisions of this Article shall apply to renewal leases whether they are for the entire interest covered by the expiring lease or cover only a portion of its area or an interest therein. Any renewal lease taken before the expiration of its predecessor lease, or taken or contracted for within six (6) months after the expiration of the existing lease shall be subject to this provision; but any lease taken or contracted for more than six (6) months after the expiration of an existing lease shall not be deemed a renewal lease and shall not be subject to the provisions of this agreement.

The provisions in this Article shall also be applicable to extensions of oil and gas leases.

C.    Acreage or Cash Contributions:

While this agreement is in force, if any party contracts for a contribution of cash towards the drilling of a well or any other operation on the Contract Area, such contribution shall be paid to the party who conducted the drilling or other operation and shall be applied by it against the cost of such drilling or other operation. If the contribution be in the form of acreage, the party to whom the contribution is made shall promptly tender an assignment of the acreage, without warranty of title, to the Drilling Parties in the proportions

governed by provisions identical to this agreement. Each party shall promptly notify all other parties of any acreage or cash contributions it may obtain in support of any well in which such other parties may be entitled to participate or of any acreage or cash contribution which are in support of a well drilled inside the Contract Area.

If any party contracts for any consideration relating to disposition of such party's share of substances produced hereunder, such consideration shall not be deemed a contribution as contemplated in this Article VIII.C.

**D.    Maintenance of Uniform Interests:**

~~For the purpose of maintaining uniformity of ownership in the oil and gas leasehold interests covered by this agreement, no party shall sell, encumber, transfer or make other disposition of its interest in the leases embraced within the Contract Area and in wells, equipment and production unless such disposition covers either:~~

~~1.   the entire interest of the party in all leases and equipment and production; or~~

~~2.   an equal undivided interest in all leases and equipment and production in the Contract Area.~~

Every ~~such~~ sale, encumbrance, transfer or other disposition made by any party shall be made expressly subject to this agreement and shall be made without prejudice to the right of the other parties. **Any added expenditure required as a result of disposition, including but not limited to, additional marketing or metering expense, shall be borne solely by the party transferee.**

If, at any time the interest of any party is divided among and owned by four or more co-owners, Operator, at its discretion, may require such co-owners to appoint a single trustee or agent with full authority to receive notices, approve expenditures, receive billings for and approve and pay such party's share of the joint expenses, and to deal generally with, and with power to bind, the co-owners of such party's interest within the scope of the operations embraced in this agreement; however, all such co-owners shall have the right to enter into and execute all contracts or agreements for the disposition of their respective shares of the oil and gas produced from the Contract Area and they shall have the right to receive, separately, payment of the sale proceeds thereof.

**E.    Waiver of Rights to Partition:**

If permitted by the laws of the state or states in which the property covered hereby is located, each party hereto owning an undivided interest in the Contract Area waives any and all rights it may have to partition and have set aside to it in severalty its undivided interest therein.

~~**F.    Preferential Right to Purchase:**~~

~~Should any party desire to sell all or any part of its interests under this agreement, or its rights and interests in the Contract Area, it shall promptly give written notice to the other parties, with full information concerning its proposed sale, which shall include the name and address of the prospective purchaser (who must be ready, willing and able to purchase), the purchase price, and all other terms of the offer. The other parties shall then have an optional prior right, for a period of ten (10) days after receipt of the notice, to purchase on the same terms and conditions the interest which the other party proposes to sell; and, if this optional right is exercised, the purchasing parties shall share the purchased interest in the proportions that the interest of each bears to the total interest of all purchasing parties. However, there shall be no preferential right to purchase in those cases where any party wishes to mortgage its interests, or to dispose of its interests by merger, reorganization, consolidation, or sale of all or substantially all of its assets to a subsidiary or parent company or to a subsidiary of a parent company, or to any company in which any one party owns a majority of the stock.~~

**ARTICLE IX.**
**INTERNAL REVENUE CODE ELECTION**

This agreement is not intended to create, and shall not be construed to create, a relationship of partnership or an association for profit between or among the parties hereto. Notwithstanding any provision herein that the rights and liabilities hereunder are several and not joint or collective, or that this agreement and operations hereunder shall not constitute a partnership, if, for federal income tax purposes, this agreement and the operations hereunder are regarded as a partnership, each party hereby affected elects to be excluded from the application of all of the provisions of Subchapter "K", Chapter 1, Subtitle "A", of the Internal Revenue Code of 1954, as permitted and authorized by Section 761 of the Code and the regulations promulgated thereunder. Operator is authorized and directed to execute on behalf of each party hereby affected such evidence of this election as may be required by the Secretary of the Treasury of the United States or the Federal Internal Revenue Service, including specifically, but not by way of limitation, all of the returns, statements, and the data required by Federal Regulations 1.761. Should there be any requirement that each party hereby affected give further evidence of this election, each such party shall execute such documents and furnish such other evidence as may be required by the Federal Internal Revenue Service or as may be necessary to evidence this election. No such party shall give any notices or take any other action inconsistent with the election made hereby. If any present or future income tax laws of the state or states in which the Contract Area is located or any future income tax laws of the United States contain provisions similar to those in Subchapter "K", Chapter 1, Subtitle "A", of the Internal Revenue Code of 1954, under which an election similar to that provided by Section 761 of the Code is permitted, each party hereby affected shall make such election as may be permitted or required by such laws. In making the foregoing election, each such party states that the income derived by such party from operations hereunder can be adequately determined without the computation of partnership taxable income.

CLAIMS AND LAWSUITS

Operator may settle any single uninsured third party damage claim or suit arising from operations hereunder if the expenditure does not exceed _____ **Ten Thousand and No/100** _____ Dollars ($ 10,000.00_____ ) and if the payment is in complete settlement of such claim or suit. If the amount required for settlement exceeds the above amount, the parties hereto shall assume and take over the further handling of the claim or suit, unless such authority is delegated to Operator. All costs and expenses of handling, settling, or otherwise discharging such claim or suit shall be at the joint expense of the parties participating in the operation from which the claim or suit arises. If a claim is made against any party or if any party is sued on account of any matter arising from operations hereunder over which such individual has no control because of the rights given Operator by this agreement, such party shall immediately notify all other parties, and the claim or suit shall be treated as any other claim or suit involving operations hereunder. All claims or suits involving title to any oil and gas lease subject to this agreement shall be treated as a claim or suit against all parties hereto.

## ARTICLE XI.
## FORCE MAJEURE

If any party is rendered unable, wholly or in part, by force majeure to carry out its obligations under this agreement, other than the obligation to make money payments, that party shall give to all other parties prompt written notice of the force majeure with reasonably full particulars concerning it; thereupon, the obligations of the party giving the notice, so far as they are affected by the force majeure, shall be suspending during, but no longer than, the continuance of the force majeure. The affected party shall use all reasonable diligence to remove the force majeure situation as quickly as practicable.

The requirement that any force majeure shall be remedied with all reasonable dispatch shall not require the settlement of strikes, lockouts, or other labor difficulty by the party involved, contrary to its wishes; how all such difficulties shall be handled shall be entirely within the discretion of the party concerned.

The term "force majeure", as here employed, shall mean an act of God, strike, lockout, or other industrial disturbance, act of the public enemy, war, blockade, public riot, lightning, fire, storm, flood, explosion, governmental action, governmental delay, restraint or inaction, unavailability of equipment, and any other cause, whether of the kind specifically enumerated above or otherwise, which is not reasonably within the control of the party claiming suspension.

## ARTICLE XII.
## NOTICES

All notices authorized or required between the parties and required by any of the provisions of this agreement, unless otherwise specifically provided, shall be given in writing by mail or telegram, postage or charges prepaid, or by telex or telecopier / or email or facsimile and addressed to the parties to whom the notice is given at the addresses listed on Exhibit "A". The originating notice given under any provision hereof shall be deemed given only when received by the party to whom such notice is directed, and the time for such party to give any notice in response thereto shall run from the date the originating notice is received. The second or any responsive notice shall be deemed given when deposited in the mail or with the telegraph company, with postage or charges prepaid, or sent by telex or telecopier / or email or facsimile. Each party shall have the right to change its address at any time, and from time to time, by giving written notice thereof to all other parties.*

*Any such notice provided by email or facsimile transmission, whether an originating notice or responsive notice, shall be conclusively deemed received by the recipient (for all purposes) upon transmission by the sender, except where the sender receives a bounce-back notification, error message or similar notification indicating that the transmission failed for any reason.

## ARTICLE XIII.
## TERM OF AGREEMENT

This agreement shall remain in full force and effect as to the oil and gas leases and/or oil and gas interests subject hereto for the period of time selected below; provided, however, no party hereto shall ever be construed as having any right, title or interest in or to any lease or oil and gas interest contributed by any other party beyond the term of this agreement.

☑    Option No. 1: So long as any of the oil and gas leases subject to this agreement remain or are continued in force as to any part of the Contract Area, whether by production, extension, renewal, or otherwise.

☐    Option No. 2: In the event the well described in Article VI.A., or any subsequent well drilled under any provision of this agreement, results in production of oil and/or gas in paying quantities, this agreement shall continue in force so long as any such well or wells produce, or are capable of production, and for an additional period of _____ days from cessation of all production; provided, however, if, prior to the expiration of such additional period, one or more of the parties hereto are engaged in drilling, reworking, deepening, plugging back, testing or attempting to complete a well or wells hereunder, this agreement shall continue in force until such operations have been completed and if production results therefrom, this agreement shall continue in force as provided herein. In the event the well described in Article VI.A., or any subsequent well drilled hereunder, results in a dry hole, and no other well is producing, or capable of producing oil and/or gas from the Contract Area, this agreement shall terminate unless drilling, deepening, plugging back or reworking operations are commenced within _____ days from the date of abandonment of said well.

It is agreed, however, that the termination of this agreement shall not relieve any party hereto from any liability which has accrued or attached prior to the date of such termination.

COMPLIANCE WITH LAWS AND REGULATIONS

A.   Laws, Regulations and Orders:

This agreement shall be subject to the conservation laws of the state in which the Contract Area is located, to the valid rules, regulations, and orders of any duly constituted regulatory body of said state; and to all other applicable federal, state, and local laws, ordinances, rules, regulations, and orders.

B.   Governing Law:

This agreement and all matters pertaining hereto, including, but not limited to, matters of performance, non-performance, breach, remedies, procedures, rights, duties, and interpretation or construction, shall be governed and determined by the law of the state in which the Contract Area is located. If the Contract Area is in two or more states, the law of the state of _____ **Mississippi**_____ shall govern.

C.   Regulatory Agencies:

Nothing herein contained shall grant, or be construed to grant, Operator the right or authority to waive or release any rights, privileges, or obligations which Non-Operators may have under federal or state laws or under rules, regulations or orders promulgated under such laws in reference to oil, gas and mineral operations, including the location, operation, or production of wells, on tracts offsetting or adjacent to the Contract Area.

With respect to operations hereunder, Non-Operators agree to release Operator from any and all losses, damages, injuries, claims and causes of action arising out of, incident to or resulting directly or indirectly from Operator's interpretation or application of rules, rulings, regulations or orders of the Department of Energy or predecessor or successor agencies to the extent such interpretation or application was made in good faith. Each Non-Operator further agrees to reimburse Operator for any amounts applicable to such Non-Operator's share of production that Operator may be required to refund, rebate or pay as a result of such an incorrect interpretation or application, together with interest and penalties thereon owing by Operator as a result of such incorrect interpretation or application.

Non-Operators authorize Operator to prepare and submit such documents as may be required to be submitted to the purchaser of any crude oil sold hereunder or to any other person or entity pursuant to the requirements of the "Crude Oil Windfall Profit Tax Act of 1980", as same may be amended from time to time ("Act"), and any valid regulations or rules which may be issued by the Treasury Department from time to time pursuant to said / Act. Each party hereto agrees to furnish any and all certifications or other information which is required to be furnished by said Act in a timely manner and in sufficient detail to permit compliance with said / Act.

## ARTICLE XV.
## OTHER PROVISIONS