IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT COLORADO

| | |
|---|---|
| In Re: ) | |
| ) | |
| SKLAR EXPLORATION COMPANY, LLC and ) | Case No. 20-12377-EEB |
| SKLARCO, LLC ) | |
| ) | Chapter 11 |
| Debtors. ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| SKLARCO, LLC ) | Case No. 20-12380-EEB |
| ) | |
| ) | Chapter 11 |
| ) | |

**RESPONSE OF TAUBER EXPLORATION & PRODUCTION COMPANY; CTM 2005, LTD; PICKENS FINANCIAL GROUP, LLC; I & L MISS I, LP; MER ENERGY, LTD; MR OIL & GAS, LLC; TARA RUDMAN REVOCABLE TRUST; FEATHER RIVER 75, LLC; RUDMAN FAMILY TRUST; AND THE RUDMAN PARTNERSHIP TO DEBTOR'S MOTION TO: 1) HONOR AND PAY OVERRIDING ROYALTY, ROYALTY, AND WORKING INTEREST OBLIGATIONS; AND 2) OFFSET JOINT INTEREST BILLING OBLIGATIONS**
[Docket No. 37]

Tauber Exploration & Production Company, CTM 2005, Ltd., Pickens Financial Group, LLC, I & L Miss I, LP, MER Energy, Ltd, MR Oil & Gas, LLC, Tara Rudman Revocable Trust, Feather River 75, LLC, Rudman Family Trust, and The Rudman Partnership, (collectively the "Tauber Group Non-Operators"), hereby file their Response to Debtor's Motion To: 1) Honor And Pay Overriding Royalty, Royalty, And Working Interest Obligations; And 2) Offset Joint Interest Billing Obligations [Docket No. 37] ("Motion") and respectfully represent as follows:

1

# I.
# Overview

1. The Tauber Group Non-Operators own non-operating working interests in various oil and gas prospects operated by Sklar Exploration and Production Company ("SEC"), located principally in Alabama, Mississippi, and Texas. Sklarco, LLC ("Sklarco") is also a non-operator owning working interests in these prospects. Sklarco and SEC shall collectively be referred to herein as "Debtors."

2. Contractual relationships between Debtors and the Tauber Group Non-Operators are governed by Joint Operating Agreements ("JOA's"), typically utilizing the 1982 American Association of Petroleum Landmen ("AAPL") form JOA, but customized by the parties with special provisions for each prospect. Additionally, as prospects have been developed and "units" have been formed, the parties have executed Unit Operating Agreements covering and governing operations on larger areas of land.

3. As admitted in paragraph 11 of the Motion, SEC "owes approximately $7,023,910.44 in cash call advance liabilities from working interest holders." The Tauber Group Non-Operators contend that the funds they have advanced to SEC before the Petition date in response to cash calls are not property of the estate under 11 U.S.C. § 541(d), and may not be used except for the specific operational purposes for which the funds were advanced.

4. But Debtors have also admitted that the cash call advances <u>have been spent</u>. Indeed, SEC's Schedule F acknowledges all but one of the Tauber Group Non-Operators have claims for cash advances and, with one exception, characterizes those claims as being for "Cash Call Advances,"[1] and none of such claims is listed as contingent, unliquidated or disputed.

---

[1] SEC's Schedule F does not list MER Energy, Ltd as having a claim [Dkt No. 105]. MER has a claim for cash advances on several projects, including the Myrtice Ellis 35-9#1 under AFE 317. Although SEC acknowledges an undisputed claim for I & L Miss I, LP in the amount of $18,602.86, SEC Schedule F

5.  The Tauber Group Non-Operators' objection stems from the Motion's inconsistent requests: initially, to "offset"[2] the pre-Petition cash call advance liability of SEC to the working interest owners against the post-Petition liability of working interest owners to pay joint interest billings to SEC, but simultaneously to be authorized to offset joint interest billings against post-Petition revenues of the working interest owners.

6.  SEC cannot have it both ways. It must not be allowed to offset joint interest billings against working interest owners' revenues so long as <u>any</u> liability to working interest owners for cash call advances exists. Instead, SEC must be ordered to apply the total amount of cash call advance liability owed to each working interest owner against each joint interest billing until the entire cash call advance liability is satisfied.

7.  Since SEC took cash call advances that were made for very specific operations itemized in Authorizations for Expenditures ("AFE's") and then indiscriminately spent the money for whatever purpose it saw fit, the cash call advance liability should be recouped against all joint interest billings, regardless whether they relate to the projects for which the cash call advances were paid.

8.  Once the entire amount of cash call advance liability has been recouped against joint interest billings and AFE's, then the Tauber Group Non-Operators will pay their respective shares of the expenses itemized. No offsetting of revenues of a working interest owner should occur absent a payment default in accordance with the applicable JOA. The Debtors must further

---

does not identify the basis for the claim [[Dkt No. 105 at 31], No. 3.178. I & L Miss I, LLP asserts that its claim is secured and arises from a cash advance for the Myrtice Ellis 35-9#1 under AFE 317.

[2] Debtors incorrectly use the term "offset". As will be explained in more detail, it is the equitable remedy of "recoupment" that authorizes pre-petition debts of a debtor to a creditor to be applied against post-petition liabilities of a creditor to the debtor. *See In re B&L Oil Co.*, 782 F.2d 155 (10th Cir. 1986); *In re Buttes Resources Co.*, 89 B.R. 613 (D. S.D. Tex. 1988). The automatic stay does not apply to prevent recoupment. *Sacramento Mun. Util. Dist. v. Mirant Americas Energy Mktg., LP (In re Mirant Corp.),* 318 B.R. 377, 381 (Bankr. N.D. Tex. 2004).

be ordered not to use any future cash call advances or payments of joint interest billings for any purpose other than those specified in the applicable AFE or joint interest billing.

## II.
## The Relevant JOA Provisions

9. Article V.E of the JOA's in question provide as follows:

> E. Custody of Funds: Operator shall hold for the account of Non-Operators any funds of Non-Operators advanced or paid to the Operator, either for the conduct of operations hereunder or as a result of the sale of production from the Contract Area, and such funds shall remain the funds of the Non-Operators on whose account they are advance [sic] or paid until used for their intended purpose or otherwise delivered to Non-Operators or applied toward the payment of debts, regardless of whether the debts arise out of the same well or operation for which the funds were advanced or from which the sales proceeds were derived. Nothing in this paragraph shall be construed to establish a fiduciary relationship between Operator and Non-Operators. Nothing in this paragraph shall require the maintenance by Operator of separate accounts for the funds of Non-Operators.

10. This provision preserved the ownership of all funds advanced by the Tauber Group Non-Operators to SEC as Operator and required that the funds be used for their intended purpose.

## III.
## Argument and Authorities

11. The Tauber Group Non-Operators advanced funds to SEC pursuant to JOA's that required SEC (a) to hold the funds for the account of such non-operators, and (b) to use the funds for the particular purposes for which they were advanced. SEC did neither. It spent the funds and admits it did not do so for the purposes stated in the cash call advances: facts that were concealed from the Tauber Group Non-Operators until after this case was filed.

12. The Motion appears intended to address the misapplication of the cash call advances by requesting leave to "offset JIBs owed by working interest holders against cash call advances paid by working interest holders and/or royalty revenue owed to working interest

holders."[3]  While the Tauber Group Non-Operators support the satisfaction of Debtors' cash call advance liability to them by recoupment against joint interest billings and AFE's, there is no basis for allowing any "offset" against the revenue from oil and gas production attributable to the working interests of the Tauber Group Non-Operators.  All existing and future production revenues attributable to the working interests of the Tauber Group Non-Operators, after deduction of landowners' royalties and other burdens, must be paid without further offset, and without delay.

13. The distinction between setoff and recoupment was explained in *In re B&L Oil Co.*, 782 F.2d 155 (10th Cir. 1986):

> In bankruptcy, both recoupment and setoff are sometimes invoked as exceptions to the rule that all unsecured creditors of a bankrupt stand on equal footing for satisfaction. Recoupment or setoff sometimes allows particular creditors preference over others. *See Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir. 1984); 4 Collier on Bankruptcy, para. 553.03 (15th ed. 1981). Setoff is allowed in only very narrow circumstances in bankruptcy. *See* 11 U.S.C. § 553*;* 4 Collier*, supra*, at para. 553.03. But a creditor properly invoking the recoupment doctrine can receive preferred treatment even though setoff would not be permitted. *Id.* A stated justification for this is that when the creditor's claim "arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation, and application of the limitations on setoff in bankruptcy would be inequitable."

*Id.* at 617. As an example of the proper application of the recoupment remedy, the 10th Circuit cited a case where, because "a recording company paid advance royalties to a musician, it was allowed to recoup the advances from post-bankruptcy record sales, rather than being required to claim as an unsecured creditor for the outstanding overpayment total at the time of the bankruptcy filing." *Id.*  That fact pattern is closely analogous to the situation presented in this case respecting the cash call advance claims of the Tauber Group Non-Operators.

14. Recoupment plays a somewhat different role than setoff in bankruptcy. It allows a party to reduce an obligation otherwise payable to a bankruptcy estate by the amount of a claim

---

[3] Motion, ¶ 23.

against the estate. The party asserting recoupment may even reduce the payable due the estate without regard to the automatic stay. *Sacramento Mun. Util. Dist. v. Mirant Americas Energy Mktg., LP (In re Mirant Corp.),* 318 B.R. 377, 381 (Bankr. N.D. Tex. 2004).

15. Not only is recoupment (as opposed to setoff; *see* Bankruptcy Code § 362(a)(7)) exempt from the automatic stay, unlike the doctrine of setoff, recoupment allows reduction of a *prepetition* claim *against* the debtor by application of the claim to reduce a *post-petition* obligation *to* the debtor. *Id.*

16. The recoupment doctrine applies to the reciprocal relationships between operators and non-operators. In *Buttes Resources, Co. v. Enstar Petroleum Co. (In re Buttes Resources Co.)*, 89 B.R. 613 (D. S.D. Tex. 1983), an operator sought to recoup pre-petition and post-petition proceeds owed to the non-operator against prepetition costs of operation. A bank intervened and contended that the debts of the operator were a setoff, which the Bankruptcy Code does not allow where the debtor's pre-petition debts are set off against post-petition debts owing to the debtor. *Id.* The court held that the recoupment doctrine applied and that the funds so recouped were not subject to the bank's lien since the bank had no greater rights in the proceeds in question than did its borrower, who was subject to the recoupment remedy. *Id.* at 616.

17. Accordingly, the Tauber Group Non-Operators request that the Motion be granted so as to allow the payment of all pre-petition royalty, overriding royalty and working interest proceeds to the royalty, overriding royalty and working interest owners entitled thereto, and further to allow all pre-petition cash call advances of the Tauber Group Non-Operators to be recouped against present and future joint interest billings of SEC. The Motion should be denied to the extent that it requests the offset of working interest owners' proceeds of production against present and future joint interest billings and AFE's. Finally, SEC must be ordered to strictly apply any future

6

payments of cash call advances or joint interest billings issued after all pre-petition cash call advances have been recouped to be applied strictly for the purposes stated therein and no other.

Dated this 20th day of April, 2020

          Respectfully submitted,

          **Maynes, Bradford, Shipps & Sheftel, LLP**

          */s/ Thomas H. Shipps*
          Thomas H. Shipps
          */s/ Shay L. Denning*
          Shay L. Denning
          Maynes, Bradford, Shipps & Sheftel, LLP
          835 E. Second Ave., Suite 123
          Durango, CO 81301
          Telephone: (970) 247-1755
          Facsimile: (970) 247-8827
          Email: tshipps@mbssllp.com;
                 sdenning@mbssllp.com

          */s/ Barnet B. Skelton, Jr.*
          Barnet B. Skelton, Jr.
          815 Walker, Suite 1502
          Houston, TX 77002
          Telephone: (713) 659-8761
          Cell: (713) 516-7450
          Facsimile: (713)659-8764
          Email: barnetbjr@msn.com

## **CERTIFICATE OF SERVICE**

     The undersigned hereby certifies that, on April 20, 2020, the foregoing instrument was electronically filed and served via CM/ECF pursuant to L.B.R. 9036-1. All attorneys and parties identified with the Court for electronic service on the record in this case were served by electronic service in accordance with the CM/ECF system on the date of filing

          /s/ *Barnet B. Skelton, Jr.*
          Barnet B. Skelton, Jr.