# Exhibit 2



A.A.P.L. FORM 610-1982

# MODEL FORM OPERATING AGREEMENT
## (AMENDED AND RESTATED)

## MT. CARMEL PROSPECT
## ESCAMBIA COUNTY, ALABAMA &
## SANTA ROSA COUNTY, FLORIDA

OPERATING AGREEMENT

DATED

__April 8__ , __2015__ ,
<sub>year</sub>

OPERATOR   **SKLAR EXPLORATION COMPANY L.L.C.**

CONTRACT AREA   **As shown on Exhibit "A" to this Agreement.**

COUNTY OR PARISH OF   **ESCAMBIA & SANTA ROSA**   STATE OF   **AL & FL**

COPYRIGHT 1982 – ALL RIGHTS RESERVED
AMERICAN ASSOCIATION OF PETROLEUM
LANDMEN, 4100 FOSSIL CREEK BLVD., FORT
WORTH, TEXAS, 76137-2791, APPROVED
FORM. A.A.P.L. NO. 610 – 1982 REVISED

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

## TABLE OF CONTENTS

| Article | Title | Page |
|---|---|---|
| I. | DEFINITIONS | 1 |
| II. | EXHIBITS | 1 |
| III. | INTERESTS OF PARTIES | 2 |
|  | A. OIL AND GAS INTERESTS | 2 |
|  | B. INTERESTS OF PARTIES IN COSTS AND PRODUCTION | 2 |
|  | C. EXCESS ROYALTIES, OVERRIDING ROYALTIES AND OTHER PAYMENTS | 2 |
|  | D. SUBSEQUENTLY CREATED INTERESTS | 2 |
| IV. | TITLES | 2-3 |
|  | A. TITLE EXAMINATION | 2-3 |
|  | B. LOSS OF TITLE | 3 |
|  | 1. ~~Failure of Title~~ | ~~3~~ |
|  | 2. ~~Loss by Non-Payment or Erroneous Payment of Amount Due~~ | ~~3~~ |
|  | 3. ~~Other~~ Losses | 3 |
| V. | OPERATOR | 4 |
|  | A. DESIGNATION AND RESPONSIBILITIES OF OPERATOR | 4 |
|  | B. RESIGNATION OR REMOVAL OF OPERATOR AND SELECTION OF SUCCESSOR | 4 |
|  | 1. Resignation or Removal of Operator | 4 |
|  | 2. Selection of Successor Operator | 4 |
|  | C. EMPLOYEES | 4 |
|  | D. DRILLING CONTRACTS | 4 |
| VI. | DRILLING AND DEVELOPMENT | 4-5 |
|  | A. INITIAL WELL | 4-5 |
|  | B. SUBSEQUENT OPERATIONS | 5 |
|  | 1. Proposed Operations | 5 |
|  | 2. Operations by Less than All Parties | 5-6-7 |
|  | 3. Stand-By Time | 7 |
|  | 4. Sidetracking | 7 |
|  | C. TAKING PRODUCTION IN KIND | 7 |
|  | D. ACCESS TO CONTRACT AREA AND INFORMATION | 8 |
|  | E. ABANDONMENT OF WELLS | 8 |
|  | 1. Abandonment of Dry Holes | 8 |
|  | 2. Abandonment of Wells that have Produced | 8-9 |
|  | 3. Abandonment of Non-Consent Operations | 9 |
| VII. | EXPENDITURES AND LIABILITY OF PARTIES | 9 |
|  | A. LIABILITY OF PARTIES | 9 |
|  | B. LIENS AND PAYMENT DEFAULTS | 9 |
|  | C. PAYMENTS AND ACCOUNTING | 9 |
|  | D. LIMITATION OF EXPENDITURES | 9-10 |
|  | 1. Drill or Deepen | 9-10 |
|  | 2. Rework or Plug Back | 10 |
|  | 3. Other Operations | 10 |
|  | E. RENTALS, SHUT-IN WELL PAYMENTS AND MINIMUM ROYALTIES | 10 |
|  | F. TAXES | 10 |
|  | G. INSURANCE | 11 |
| VIII. | ACQUISITION, MAINTENANCE OR TRANSFER OF INTEREST | 11 |
|  | A. SURRENDER OF LEASES | 11 |
|  | B. RENEWAL OR EXTENSION OF LEASES | 11 |
|  | C. ACREAGE OR CASH CONTRIBUTIONS | 11-12 |
|  | D. MAINTENANCE OF UNIFORM INTEREST | 12 |
|  | E. WAIVER OF RIGHTS TO PARTITION | 12 |
|  | ~~F. PREFERENTIAL RIGHT TO PURCHASE~~ | ~~12~~ |
| IX. | INTERNAL REVENUE CODE ELECTION | 12 |
| X. | CLAIMS AND LAWSUITS | 13 |
| XI. | FORCE MAJEURE | 13 |
| XII. | NOTICES | 13 |
| XIII. | TERM OF AGREEMENT | 13 |
| XIV. | COMPLIANCE WITH LAWS AND REGULATIONS | 14 |
|  | A. LAWS, REGULATIONS AND ORDERS | 14 |
|  | B. GOVERNING LAW | 14 |
|  | C. REGULATORY AGENCIES | 14 |
| XV. | OTHER PROVISIONS | 14 |
| XVI. | MISCELLANEOUS | 15 |

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

## OPERATING AGREEMENT

1
2 THIS AGREEMENT, entered into by and between ___**SKLAR EXPLORATION COMPANY L.L.C., a Louisiana limited liability**
3 **Company, with a mailing address of 401 Edwards Street, Suite 1601, Shreveport, Louisiana 71101**___, hereinafter designated and
4 referred to as "Operator", and the signatory party or parties other than Operator, sometimes hereinafter referred to individually herein
5 as "Non-Operator", and collectively as "Non-Operators".
6
7 WITNESSETH:
8
9 WHEREAS, the parties to this agreement are owners of oil and gas leases and/or oil and gas interests in the land identified in
10 Exhibit "A", and the parties hereto have reached an agreement to explore and develop these leases and/or oil and gas interests for the
11 production of oil and gas to the extent and as hereinafter provided,
12
13 NOW, THEREFORE, it is agreed as follows:
14
15 **ARTICLE I.**
16 **DEFINITIONS**
17
18 As used in this agreement, the following words and terms shall have the meanings here ascribed to them:
19 A. The term "oil and gas" shall mean oil, gas, casinghead gas, gas condensate, and all other liquid or gaseous hydrocarbons
20 and other marketable substances produced therewith, unless an intent to limit the inclusiveness of this term is specifically stated.
21 B. The terms "oil and gas lease", "lease" and "leasehold" shall mean the oil and gas leases covering tracts of land
22 lying within the Contract Area which are owned by the parties to this agreement.
23 C. The term "oil and gas interests" shall mean unleased fee and mineral interests in tracts of land lying within the
24 Contract Area which are owned by parties to this agreement~~,~~, **including royalty and overriding royalty interests.**
25 D. The term "Contract Area" shall mean all of the lands, oil and gas leasehold interests and oil and gas interests intended to be
26 developed and operated for oil and gas purposes under this agreement. Such lands, oil and gas leasehold interests and oil and gas interests
27 are described in Exhibit "A".
28 E. The term "drilling unit" shall mean the area fixed for the drilling of one well by order or rule of any state or
29 federal body having authority. If a drilling unit is not fixed by any such rule or order, a drilling unit shall be the drilling unit as establish-
30 ed by the pattern of drilling in the Contract Area or as fixed by express agreement of the Drilling Parties.
31 F. The term "drillsite" shall mean the oil and gas lease or interest on which a proposed well is to be located.
32 G. The terms "Drilling Party" and "Consenting Party" shall mean a party who agrees to join in and pay **100% of** / its share of the cost of
33 any operation conducted under the provisions of this agreement.
34 H. The terms "Non-Drilling Party" and "Non-Consenting Party" shall mean a party who elects not to participate
35 **for 100% of its share of** ~~in/~~ a proposed operation.
36 *
37 Unless the context otherwise clearly indicates, words used in the singular include the plural, the plural includes the
38 singular, and the neuter gender includes the masculine and the feminine. **Words defined herein shall have the same meaning whether or**
39 **not they are capitalized.**
40 **ARTICLE II.**
41 **EXHIBITS**
42
43 The following exhibits, as indicated below and attached hereto, are incorporated in and made a part hereof:
44 ☑ A. Exhibit "A", shall include the following information:
45    (1) Identification of lands subject to this agreement,
46    (2) Restrictions, if any, as to depths, formations, or substances,
47    (3) Percentages or fractional interests of parties to this agreement,
48    (4) Oil and gas leases and/or oil and gas interests subject to this agreement,
49    (5) Addresses of parties for notice purposes.
50 ☑ B. Exhibit "B", Form of Lease.
51 ☑ C. Exhibit "C", Accounting Procedure.
52 ☑ D. Exhibit "D", Insurance.
53 ☑ E. Exhibit "E", Gas Balancing Agreement.
54 ☐ ~~F. Exhibit "F", Non-Discrimination and Certification of Non-Segregated Facilities.~~
55 ☐ ~~G. Exhibit "G", Tax Partnership.~~
56 If any provision of any exhibit, except Exhibits **"A" and** / "E" ~~and "G"~~, is inconsistent with any provision contained in the body
57 of this agreement, the provisions in the body of this agreement shall prevail. **If any provision in Exhibits "A" and "E" is inconsistent with**
58 **any provision contained in the body of this agreement, the provisions of Exhibits "A" and "E" shall prevail.**
59 **I. The term "Deepen" shall mean a single operation whereby a well is drilled to an objective Zone below the deepest Zone in**
60 **which the well was previously drilled, or below the deepest Zone proposed in the associated AFE, whichever is the lesser.**
61 **J. The term "Plug Back" shall mean a single operation whereby a deeper Zone is abandoned in order to attempt a completion**
**in a shallower Zone.**
62 **K. The term "Recompletion" or "Recomplete" shall mean an operation whereby a Completion in one Zone is abandoned or**
63 **temporarily isolated in order to attempt a Completion in or commingling with a different Zone within the existing wellbore.**
64 **L. The term "Rework" shall mean an operation conducted in the wellbore of a well after it is Completed to secure, restore, or**
**improve production in a Zone which is currently open to production in the wellbore. Such operations include, without limitation, well**
65 **stimulation operations, but exclude any routine repair or maintenance work or drilling, Sidetracking, Deepening, Completing, Re-**
66 **completing or Plugging Back of a well.**
67 **M. The term "Sidetrack" shall mean the directional control and intentional deviation of a well from vertical so as to change**
**the bottom hole location, unless done to straighten the hole or drill around junk in the hole to overcome other mechanical difficulties.**
68 **N. The term "Zone" shall mean a stratum of earth containing, or thought to contain, a common accumulation of Oil and Gas**
69 **separately producible from any other common accumulation of Oil and Gas.**
70

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

ARTICLE III.
INTERESTS OF PARTIES

A. **Oil and Gas Interests:**

If any party owns an oil and gas interest in the Contract Area, that interest shall be treated for all purposes of this agreement and during the term hereof as if it were covered by the form of oil and gas lease attached hereto as Exhibit "B", and the owner thereof shall be deemed to own both the royalty interest reserved in such lease and the interest of the lessee thereunder.; **provided, however, that the provisions of this Article III.A shall be subject to the provisions of Section 3.1 of the Participation Agreement to which this agreement is attached as Exhibit "D".**

B. **Interests of Parties in Costs and Production:**

Unless changed by other provisions, all costs and liabilities incurred in operations under this agreement shall be borne and paid, and all equipment and materials acquired in operations on the Contract Area shall be owned, by the parties as their interests are set forth in Exhibit "A". In the same manner, the parties shall also own all production of oil and gas from the Contract Area subject to the payment of royalties to the extent of _____**all jointly owned lease burdens**_____ which shall be borne as hereinafter set forth. **Each of the parties hereto shall pay or deliver, or cause to be paid or delivered, its proportionate part of the royalties and overriding royalties and other leasehold burdens, as described in the attached Exhibit "A", and shall hold the other party(ies) free from any liability therefor. If the interest of any party(ies) in any oil and gas lease covered by this agreement is subject to any additional royalty, overriding royalty, production payment or other charge over and above those shown on Exhibit "A", such party(ies) shall assume and alone bear all such obligations and shall account, or cause to be accounted, for such interest(s) to the owners therof.** / Regardless of which party has contributed the lease(s) and/or oil and gas interest(s) hereto on which royalty is due and payable, each party entitled to receive a share of production of oil and gas from the Contract Area shall bear and shall pay or deliver, or cause to be paid or delivered, to the extent of its interest in such production, the royalty amount stipulated hereinabove and shall hold the other parties free from any liability therefor. / No party shall ever be responsible, however, on a price basis higher than the price received by such party, to any other party's lessor or royalty owner, and if any such other party's lessor or royalty owner should demand and receive settlement on a higher price basis, the party contributing the affected lease shall bear the additional royalty burden attributable to such higher price.

Nothing contained in this Article III.B. shall be deemed an assignment or cross-assignment of interests covered hereby.

C. **Excess Royalties, Overriding Royalties and Other Payments:**

Unless changed by other provisions, if the interest of any party in any lease covered hereby is subject to any royalty, overriding royalty, production payment or other burden on production **which is not a joint obligation of the parties** / in excess of the amount stipulated in Article III.B., such party so burdened shall assume and alone bear all such excess obligations and shall indemnify and hold the other parties hereto harmless from any and all claims and demands for payment asserted by owners of such excess burden.

D. **Subsequently Created Interests:**

If any party should hereafter create an overriding royalty, production payment or other burden payable out of production attributable to its working interest hereunder, or if such a burden existed prior to this agreement and is not set forth in Exhibit "A", or was not disclosed in writing to all other parties prior to the execution of this agreement by all parties, or is not a jointly acknowledged and accepted obligation of all parties (any such interest being hereinafter referred to as "subsequently created interest" irrespective of the timing of its creation and the party out of whose working interest the subsequently created interest is derived being hereinafter referred to as "burdened party"), and:

1. If the burdened party is required under this agreement to assign or relinquish to any other party, or parties, all or a portion of its working interest and/or the production attributable thereto, said other party, or parties, shall receive said assignment and/or production free and clear of said subsequently created interest and the burdened party shall indemnify and save said other party, or parties, harmless from any and all claims and demands for payment asserted by owners of the subsequently created interest; and,

2. If the burdened party fails to pay, when due, its share of expenses chargeable hereunder, all provisions of Article VII.B. shall be enforceable against the subsequently created interest in the same manner as they are enforceable against the working interest of the burdened party.

ARTICLE IV.
TITLES

A. **Title Examination:**

Title examination shall be made on the drillsite of any proposed well prior to commencement of drilling operations or, if **at Operator's election** the Drilling Parties so request /, title examination shall be made on the leases and/or oil and gas interests included, or planned to be included, in the drilling unit around such well. The opinion will include the ownership of the working interest, minerals, royalty, overriding royalty and production payments under the applicable leases. At the time a well is proposed, each party contributing leases and/or oil and gas interests to the drillsite, or to be included in such drilling unit, shall furnish to Operator all abstracts (including federal lease status reports), title opinions, title papers and curative material in its possession free of charge. All such information not in the possession of or made available to Operator by the parties, but necessary for the examination of the title, shall be obtained by Operator. Operator shall cause title to be examined by attorneys on its staff or by outside attorneys. / Copies of all title opinions shall be furnished to each party **Upon request, provided such party has paid 100% of its share of all costs of all operations conducted under the provisions of this agreement** hereto /. The cost incurred by Operator in this title program shall be borne as follows:

☐ Option No. 1: Costs incurred by Operator in procuring abstracts and title examination (including preliminary, supplemental, shut-in gas royalty opinions and division order title opinions) shall be a part of the administrative overhead as provided in Exhibit "C", and shall not be a direct charge, whether performed by Operator's staff attorneys or by outside attorneys.

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

ARTICLE V.
OPERATOR

A. **Designation and Responsibilities of Operator:**

_____ SKLAR EXPLORATION COMPANY L.L.C. of Shreveport, Louisiana _____ shall be the Operator of the Contract Area, and shall conduct and direct and have full control of all operations on the Contract Area as permitted and required by, and within the limits of this agreement. It shall conduct its activities under this agreement / ~~all such operations~~ in a good and workmanlike manner, but it shall have no liability as Operator to the other parties for losses sustained or liabilities incurred, except such as may result from gross negligence or willful misconduct.

B. **Resignation or Removal of Operator and Selection of Successor:**

1. Resignation or Removal of Operator: Operator may resign at any time by giving written notice thereof to Non-Operators. If Operator terminates its legal existence, ~~no longer owns an interest hereunder in the Contract Area,~~ or is no longer capable of serving as Operator, Operator shall be deemed to have resigned without any action by Non-Operators, except the selection of a successor. Operator may be removed if it fails or refuses to carry out its duties hereunder, or becomes insolvent, bankrupt or is placed in receivership, by the affirmative vote of two (2) or more Non-Operators owning a majority interest based on ownership as shown on Exhibit "A" remaining after excluding the voting interest of Operator. Such vote shall not be deemed effective until a written notice has been delivered to Operator by Non-Operator(s) detailing the alleged default and Operator has failed to cure the alleged default within thirty (30) days of its receipt of said notice. / Such resignation or removal shall not become effective until 7:00 o'clock A.M. on the first day of the calendar month following the expiration of ninety (90) days after the giving of notice of resignation by Operator or action by the Non-Operators to remove Operator, unless a successor Operator has been selected and assumes the duties of Operator at an earlier date. Operator, after effective date of resignation or removal, shall be bound by the terms hereof as a Non-Operator. A change of a corporate name or structure of Operator or transfer of Operator's interest to any single subsidiary, parent or successor corporation shall not be the basis for removal of Operator.

2. Selection of Successor Operator: Upon the resignation or removal of Operator, a successor Operator shall be selected by the parties. The successor Operator shall be selected from the parties owning an interest in the Contract Area at the time such successor Operator is selected. The successor Operator shall be selected by the affirmative vote of two (2) or more parties owning a majority interest based on ownership as shown on Exhibit "A"; provided, however, if an Operator ~~which~~ has been removed ~~fails to vote or votes only to succeed itself,~~ the successor Operator shall be selected by the affirmative vote of two (2) or more parties owning a majority interest based on ownership as shown on Exhibit "A" remaining after excluding the voting interest of the Operator that was removed.

C. **Employees:**

The number of employees used by Operator in conducting operations hereunder, their selection, and the hours of labor and the compensation for services performed shall be determined by Operator, and all such employees shall be the employees of Operator.

D. **Drilling Contracts:**

except that in Operator's sole discretion, all factors, such as rig availability, equipment condition, contractor employee reliability and knowledge and drilling contractor reputation shall be taken into consideration in determining the real competitive price. All wells drilled on the Contract Area shall be drilled on a competitive contract basis at the usual rates prevailing in the area, / . If it so desires, Operator may employ its own tools and equipment in the drilling of wells, but its charges therefor shall not exceed the prevailing rates in the area ~~and the rate of such charges shall be agreed upon by the parties in writing before drilling operations are commenced,~~ and such work shall be performed by Operator under the same terms and conditions as are customary and usual in the area in contracts of independent contractors who are doing work of a similar nature.

E. Custody of Funds: Operator shall hold for the account of Non-Operators any funds of Non-Operators advanced or paid to Operator, either for the conduct of operations hereunder or as a result of the sale of production from the Contract Area, and such funds shall remain the funds of Non-Operators on whose account they are advanced or paid until used for their intended purpose or otherwise delivered to Non-Operators or applied toward the payment of debts, regardless of whether the debts arise out of the same well or operation for which the funds were advanced or from which the sales proceeds were derived. Nothing in this paragraph shall be construed to establish a fiduciary relationship between Operator and Non-Operators. Nothing in this paragraph shall require the maintenance by Operator of separate accounts for the funds of Non-Operators.

F. Statutory Employer: Operator shall be considered the statutory employer of all employees of all contractors, their sub-contractors or agents, whose goods furnished or services rendered for Operator are an integral part of or essential to Operator's ability to perform its operations as an oil and gas operator.

ARTICLE VI.
DRILLING AND DEVELOPMENT

A. **Initial Well:**
The "Initial Well" is the well referred to in Section 1.5 of the Participation Agreement to which this instrument is attached as Exhibit "D".

On or before the _____ day of _____, (year) _____, Operator shall commence the drilling of a well for oil and gas at the following location:

and shall thereafter continue the drilling of the well with due diligence to

unless granite or other practically impenetrable substance or condition in the hole, which renders further drilling impractical, is encountered at a lesser depth, or unless all parties agree to complete or abandon the well at a lesser depth.

Operator shall make reasonable tests of all formations encountered during drilling which give indication of containing oil and gas in quantities sufficient to test, unless this agreement shall be limited in its application to a specific formation or formations, in which event Operator shall be required to test only the formation or formations to which this agreement may apply.

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

## ARTICLE VI
### continued

"B". The assignments or leases so limited shall encompass the "drilling unit" upon which the well is located. The payments by, and the assignments or leases to, the assignees shall be in a ratio based upon the relationship of their respective percentage of participation in the Contract Area to the aggregate of the percentages of participation in the Contract Area of all assignees. There shall be no readjustment of interests in the remaining portion of the Contract Area.

Thereafter, abandoning parties shall have no further responsibility, liability, or interest in the operation of or production from the well in the interval or intervals then open other than the royalties retained in any lease made under the terms of this Article. Upon request, Operator shall continue to operate the assigned well for the account of the non-abandoning parties at the rates and charges contemplated by this agreement, plus any additional cost and charges which may arise as the result of the separate ownership of the assigned well. Upon proposed abandonment of the producing interval(s) assigned or leased, the assignor or lessor shall then have the option to repurchase its prior interest in the well (using the same valuation formula) and participate in further operations therein subject to the provisions hereof.

3. Abandonment of Non-Consent Operations: The provisions of Article VI.E.1. or VI.E.2 above shall be applicable as between Consenting Parties in the event of the proposed abandonment of any well excepted from said Articles; provided, however, no well shall be permanently plugged and abandoned unless and until all parties having the right to conduct further operations therein have been notified of the proposed abandonment and afforded the opportunity to elect to take over the well in accordance with the provisions of this Article VI.E.

## ARTICLE VII.
### EXPENDITURES AND LIABILITY OF PARTIES

A. **Liability of Parties:**

The liability of the parties shall be several, not joint or collective. Each party shall be responsible only for its obligations, and shall be liable only for its proportionate share of the costs of developing and operating the Contract Area. Accordingly, the liens granted among the parties in Article VII.B. are given to secure only the debts of each severally. It is not the intention of the parties to create, nor shall this agreement be construed as creating, a mining or other partnership or association, or to render the parties liable as partners. **In their relationship with each other under this agreement, the parties shall not be considered fiduciaries or to have established a confidential relationship, but rather shall be free to act on an arm's length basis in accordance with their own self-interest.**

B. **Liens and Payment Defaults:**

Each Non-Operator grants to Operator a lien upon its oil and gas rights in the Contract Area, and a security interest in its share of oil and/or gas when extracted and its interest in all equipment, to secure payment of its share of expense, together with interest thereon at the rate provided in Exhibit "C". To the extent that Operator has a security interest under the Uniform Commercial Code of the state, Operator shall be entitled to exercise the rights and remedies of a secured party under the Code. The bringing of a suit and the obtaining of judgment by Operator for the secured indebtedness shall not be deemed an election of remedies or otherwise affect the lien rights or security interest as security for the payment thereof. In addition, upon default by any Non-Operator in the payment of its share of expense, Operator shall have the right, without prejudice to other rights or remedies, to collect from the purchaser the proceeds from the sale of such Non-Operator's share of oil and/or gas until the amount owed by such Non-Operator, plus interest, has been paid. Each purchaser shall be entitled to rely upon Operator's written statement concerning the amount of any default. Operator grants a like lien and security interest to the Non-Operators to secure payment of Operator's proportionate share of expense.

If any party fails or is unable to pay its share of expense within sixty (60) days after rendition of a statement therefor by Operator, the non-defaulting parties, including Operator, shall, upon request by Operator, pay the unpaid amount in the proportion that the interest of each such party bears to the interest of all such parties. Each party so paying its share of the unpaid amount shall, ~~to obtain reimbursement thereof, be subrogated to the security rights described in the foregoing paragraph.~~ **be entitled to recover the amount it paid plus five hundred percent (500%) of that amount out of the proceeds from the sale of the defaulting party's share of oil and for gas and, to secure the payment thereof, be subrogated to the security rights described in the foregoing paragraphs. Notwithstanding anything to the contrary in this Paragraph, all parties agree that this provision shall not apply to any operation requiring an AFE unless Operator has advance billed all parties for their proportionate share of said costs in accordance with other provisions of this agreement. Further, notwithstanding anything to the contrary in this Paragraph, all parties agree that this provision shall not apply to any oil and gas interests contributed or made subject to this agreement.**

C. **Payments and Accounting:**

Except as herein otherwise specifically provided, Operator shall promptly pay and discharge expenses incurred in the development and operation of the Contract Area pursuant to this agreement and shall charge each of the parties hereto with their respective proportionate shares upon the expense basis provided in Exhibit "C". Operator shall keep an accurate record of the joint account hereunder, showing expenses incurred and charges and credits made and received.

Operator, at its election, shall have the right from time to time to demand and receive from the other parties payment in advance of their respective shares of the estimated amount of the expense to be incurred in operations hereunder during the next succeeding month, which right may be exercised only by submission to each such party of an itemized statement of such estimated expense, together with an invoice for its share thereof. Each such statement and invoice for the payment in advance of estimated expense shall be submitted on or before the 20th day of the next preceding month. Each party shall pay to Operator its proportionate share of such estimate within fifteen (15) days after such estimate and invoice is received. If any party fails to pay its share of said estimate within said time, the amount due shall bear interest as provided in Exhibit "C" until paid. Proper adjustment shall be made monthly between advances and actual expense to the end that each party shall bear and pay its proportionate share of actual expenses incurred, and no more.

D. **Limitation of Expenditures:**

1. <u>Drill or Deepen:</u> Without the consent of all parties, no well shall be drilled or deepened, except any well drilled or deepened pursuant to the provisions of Article VI.B.2. of this agreement. Consent to the drilling or deepening shall include:

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

## ARTICLE XIV.
## COMPLIANCE WITH LAWS AND REGULATIONS

A.  Laws, Regulations and Orders:

This agreement shall be subject to the conservation laws of the state in which the Contract Area is located, to the valid rules, regulations, and orders of any duly constituted regulatory body of said state; and to all other applicable federal, state, and local laws, ordinances, rules, regulations, and orders.

B.  Governing Law:

This agreement and all matters pertaining hereto, including, but not limited to, matters of performance, non-performance, breach, remedies, procedures, rights, duties, and interpretation or construction, shall be governed and determined by the law of the state in which the Contract Area is located. If the Contract Area is in two or more states, the law of the state of _____**Alabama**_____ shall govern.

C.  Regulatory Agencies:

Nothing herein contained shall grant, or be construed to grant, Operator the right or authority to waive or release any rights, privileges, or obligations which Non-Operators may have under federal or state laws or under rules, regulations or orders promulgated under such laws in reference to oil, gas and mineral operations, including the location, operation, or production of wells, on tracts offsetting or adjacent to the Contract Area.

With respect to operations hereunder, Non-Operators agree to release Operator from any and all losses, damages, injuries, claims and causes of action arising out of, incident to or resulting directly or indirectly from Operator's interpretation or application of rules, rulings, regulations or orders of the Department of Energy or predecessor or successor agencies to the extent such interpretation or application was made in good faith. Each Non-Operator further agrees to reimburse Operator for any amounts applicable to such Non-Operator's share of production that Operator may be required to refund, rebate or pay as a result of such an incorrect interpretation or application, together with interest and penalties thereon owing by Operator as a result of such incorrect interpretation or application.

Non-Operators authorize Operator to prepare and submit such documents as may be required to be submitted to the purchaser of any crude oil sold hereunder or to any other person or entity pursuant to the requirements of ~~the "Crude Oil Windfall Profit Tax Act of 1980", as same may be amended from time to time ("Act"), and~~ any valid regulations or rules which may be issued by the Treasury Department from time to time pursuant to ~~said~~/ **any** Act. Each party hereto agrees to furnish any and all certifications or other information which is required to be furnished by said Act in a timely manner and in sufficient detail to permit compliance with ~~said~~/ **such** Act.

## ARTICLE XV.
## OTHER PROVISIONS