# Exhibit 4

## BEFORE THE STATE OIL AND GAS BOARD OF ALABAMA

### PURSUANT TO A DECISION RENDERED BY THE
### STATE OIL AND GAS BOARD OF ALABAMA ON DECEMBER 17, 2018,
### THE FOLLOWING SUPPLEMENTAL ORDER IS HEREBY PROMULGATED:

| | |
|---|---|
| **IN RE: ORDER NO. 2018-49**<br>**Southeast Unit** | **DOCKET NOS. 4-4-18-01, 4-4-18-02,**<br>**4-4-18-03, 4-4-18-04,**<br>**4-4-18-05, 4-4-18-06,**<br>**4-4-18-07, 4-4-18-08** |

The petitions in the above dockets filed by Sklar Exploration Company L.L.C. ("Sklar") and requesting the Board (1) to establish a partial field-wide Unit in the Brooklyn Field to be known as the Southeast Brooklyn Oil Unit (Docket No. 4-4-18-01) and (2) to amend the Special Field Rules for the Brooklyn Field to add certain parcels thereto (Docket No. 4-4-18-03), were heard on September 11, 12 and 13, 2018, along with related petitions filed by Sklar requesting the Board (1) to establish another partial field-wide Unit in the Brooklyn Field to be known as the Southwest Brooklyn Oil Unit (Docket No. 4-4-18-01) and (2) to establish two 80-acre production units for the Cedar Creek Land and Timber 33-6 No. 1 Well (Permit No. 16685) and the Cedar Creek Land and Timber 33-4 No. 1 Well (Permit No. 17264-B), respectively, as exceptions to Rule 3 of the Special Field Rules for the Brooklyn Field (Docket No. 4-4-18-04), and also along with petitions filed by Pruet Production Co. ("Pruet") requesting the Board (1) to establish two partial field-wide Units in the Brooklyn Field to be known as the Northeast Brooklyn Oil Unit (Docket No. 4-4-18-05) and the Northwest Brooklyn Oil Unit (Docket No. 4-4-18-06); (2) to amend the Special Field Rules for the Brooklyn Field to add certain parcels thereto (Docket No. 4-4-18-07); and (3) to delete certain parcels from the Little Cedar Creek Field in order to add those parcels to the Brooklyn Field for inclusion in the Northeast and Northwest Brooklyn Oil Units (Docket No. 4-4-18-08).

In Order No. 2018-34 issued on September 24, 2018, the Board granted the petitions with certain Stipulations, including a requirement that Sklar recalculate the Tract Participations for the Southeast Brooklyn Oil Unit in accordance with that Order and submit a revised Unit Agreement, revised Tract Participations incorporating the allocation formula in accordance with the Order, and ratifications in accordance with Section 9-17-80 *et seq.* of the *Code of Alabama* (1975).

Subsequent to the issuance of Order No. 2018-34, Sklar has recalculated the Tract Participations for the Southeast Brooklyn Oil Unit in accordance with that Order and has submitted a revised Unit Agreement and revised Tract Participations for the Southeast Brooklyn Oil Unit incorporating the allocation formula in accordance with the Order and ratifications in accordance with Section 9-17-80 *et seq.* of the *Code of Alabama* (1975). Sklar has further submitted to the Board an affidavit of testimony verifying that, as of November 29, 2018, the Unit Agreement for

the Southeast Brooklyn Oil Unit have been signed or in writing ratified or approved by the owners of at least 80.53% in interest as costs are shared under the terms of the Board-approved allocation formula in the Unit Agreement and that the Unit Agreement has been signed or in writing ratified or approved by at least 74.05% in interest of the royalty owners in the Unit Area as revenues are distributed under the terms of said allocation formula in the Unit Agreement. Copies of the ratification instruments were attached to the affidavit.

Based thereon, the Board, being fully informed and advised in the premises and after due consideration thereof and for the purpose of supplementing Order No. 2018-34 in accordance with Section 9-17-84 of the *Code of Alabama* (1975), finds and concludes as follows:

### FINDINGS OF FACT

#### I.

That Sklar has complied with the Stipulations set forth in Order No. 2018-34.

#### II.

That the Unit Agreement for the Southeast Brooklyn Oil Unit, a copy of which is attached hereto as Exhibit "B" and made a part hereof, incorporates the provisions of Section 9-17-83 of the *Code of Alabama* (1975) and has been approved by the owners of at least 66 2/3 percent in interest as costs are shared under the terms of the allocation formula established by the Board in Order No. 2018-34 and also by at least 66 2/3 percent in interest of the royalty owners in the Unit Area as revenues are distributed under the terms of said allocation formula, and, thus, is due to be approved.

#### III.

That Sklar submitted into the record a Unit Operating Agreement for the Southeast Brooklyn Oil Unit, a copy of which is attached hereto as Exhibit "C" and made a part hereof.

### CONCLUSIONS OF LAW

#### IV.

That the establishment of the Southeast Brooklyn Oil Unit described herein complies in all respects with the oil and gas conservation laws of the State of Alabama and the rules and regulations of this Board as set forth in the *State Oil and Gas Board of Alabama Administrative Code*.

Based on the Findings of Fact and Conclusions of Law set forth hereinabove and in Order No. 2018-34, **IT IS THEREFORE, HEREBY ORDERED, ADJUDGED AND DECREED** by the State Oil and Gas Board of Alabama:

(1) That the Southeast Brooklyn Oil Unit as requested by Sklar is hereby established in accordance with Order No. 2018-34 and this Supplemental Order.

(2) That the proposed Special Field Rules, Brooklyn Field, Conecuh and Escambia Counties, Alabama, as amended are attached hereto and made a part hereof as Exhibit "A," and are hereby approved.

(3) That the Unit Agreement for the Southeast Brooklyn Oil Unit, a copy of which is attached hereto and made a part hereof as Exhibit "B," having been ratified and approved by the required number of owners in the Unit in accordance with Section 9-17-84 of the *Code of Alabama* (1975), is hereby approved.

(4) That the Unit Operating Agreement for the Southeast Brooklyn Oil Unit is attached hereto and made a part hereof as Exhibit "C."

(5) That the "Unit Area" for the Southeast Brooklyn Oil Unit is as shown on Exhibit "D" and described in Exhibit "E" attached hereto and made a part hereof, and the Tracts within the Unit Area are as shown on Exhibit "D" and described in Exhibit "F" attached hereto and made a part hereof is hereby approved.

(6) That the Tract Participations for each Tract in the Unit Area are as shown on Exhibit "G" attached hereto and made a part hereof.

(7) That the "Unitized Formation" for the Southeast Brooklyn Oil Unit consists of the subsurface portion of the Unit Area (which is within the Smackover Formation) in the interval between the depths of 12,016 feet measured depth (MD) and 12,235 feet measured depth (MD) in the CCL&T 4-1 #1 Well, Permit No. 17061-B, with a surface location 117 feet FSL and 839 feet FWL of Section 34, Township 4 North, Range 13 East, Conecuh County, Alabama, as defined by the Array Induction – SP-GR-Lithodensity- Compensated Neutron-Borehole Compensated Sonic Log for said well (a copy of which is attached hereto as Exhibit "H") and including those strata underlying the Unit Area which can be correlated therewith, which are in communication therewith, or which are productive extensions thereof.

(8) That the "Unitized Substances" for the Southeast Brooklyn Oil Unit are hereby defined to be all oil, gas, gaseous substances, condensate, distillate and all associated and constituent liquid or liquefiable substances, other than water and "Outside Substances" within or

3

produced from the Unitized Formation.

(9) That the "Outside Substances" for the Southeast Brooklyn Oil Unit are hereby defined as all substances obtained from any source other than the Unitized Formation which are injected into the Unitized Formation to enhance the recovery of hydrocarbons by secondary methods.

(10) That the "Unit Operations" for the Southeast Brooklyn Oil Unit are hereby defined to be all operations conducted by working interest owners or the Unit Operator pursuant to the Unit Agreement for or on account of development and operation of the Unitized Formation for the production of Unitized Substances.

(11) That the Allocation Formula as set forth in Exhibit "I" is hereby approved.

(12) That the initial Plan of Unit Operations as set forth on Exhibit "J," which is attached hereto and made a part hereof, is hereby approved.

(13) That Sklar Exploration Company L.L.C. is hereby appointed as initial Unit Operator.

(14) That all of the separately owned tracts or interests in tracts of land within the Unit Area are hereby unitized, force pooled and integrated, including the tracts or interests of persons asserting, claiming or owning an interest in the Unitized Substances, whether known or unknown, including those who have failed or refused to sign the Unit Agreement.

(15) That Unit Operations shall be governed by the terms of Order No. 2018-34, as supplemented by this Order, and by the terms of the Unit Agreement.

(16) That from and after the effective date of unitization of the Unit Area and Unitized Formation, all production of Unitized Substances obtained from all wells completed in the Unitized Formation and the Unit Area, and not required in the conduct of Unit Operations or unavoidably lost, shall be allocated among the various tracts or interests derived from or associated with tracts in the Unit Area in accordance with the Allocation Formula. Said allocation of production in accordance with the Tract Participations using the Allocation Formula is based upon the relative contribution which each tract or interest is expected to make during the course of Unit Operations to the total production of the Unitized Substances so allocated, pursuant to and as provided for in the terms and provisions of the Unit Agreement.

(17) That pursuant to Section 9-17-87 of the *Code of Alabama* (1975), the portion of Unit production so allocated to each separately owned Tract or interest therein within the Unit Area shall be deemed, for all purposes, to have been actually produced from such Tract, and operations with respect to the Unitized Formation within the Unit Area shall be deemed, for all purposes, to be

4

the conduct of operations for the production of Unitized Substances from and on each separately owned tract in the Unit Area.

(18) That pursuant to Section 9-17-83(4) of the *Code of Alabama* (1975), from and after the effective date of unitization of the Unit Area and Unitized Formation, an adjustment shall be made among the owners of the Unit Area (not including royalty owners) of their respective investment in the wells, tanks, pumps, machinery, materials, equipment and other things and services of value attributable to the Unit Operations. The amount to be charged to Unit Operations for any such items shall be determined by the owners of the Unit Area (not including royalty owners); provided, that, if said owners of the Unit Area are not able to agree upon the amount of such charges, or to agree upon the correctness thereof, the Board shall determine them after due notice and hearing thereon, upon the application of any interested party. The net amount charged against the owner of a separately owned tract or separately owned interest derived from or associated with a tract within the unit shall be considered expense of the Unit Operations chargeable against such tract or interest.

(19) That pursuant to Section 9-17-83(5) of the *Code of Alabama* (1975), from and after the effective date of unitization of the Unit Area and Unitized Formation, the costs and expenses of unit operation, including investment, past and prospective, shall be charged to the separately owned Tracts or interests in the same proportions that such Tracts or interests share in Unit production, as provided in the Allocation Formula. Further, said costs and expenses chargeable to a tract or interest shall be paid by the person or persons not entitled to share in production free of operating costs and who, in the absence of unit operator, would be responsible for the expense of developing and operating such tract or interest (working interest owner), and such person or person's interest in the separately owned tract or interest shall be primarily responsible therefor pursuant to the Unit Agreement.

(20) Pursuant to Section 9-17-83(7) of the *Code of Alabama* (1975), from and after the effective date of the unitization of the Southeast Brooklyn Oil Unit, when the full amount of any charge made against a separately owned Tract or interest is not paid when due by the person or persons primarily responsible therefor, as provided in Section 9-17-83(5) of the *Code of Alabama* (1975), then seven -eighths (7 /8ths) of the oil and gas production allocated to such separately owned Tract or interest may be appropriated by the Unit Operator and marketed and sold for the payment of such charge, together with interest at the rate of five percent (5%) per annum thereon (or such other rate as allowed by law). Pursuant to said Section 9-17-83(7), a one-eighth (1/8th) part of the unit production allocated to each separately owned Tract or interest

shall in all events be regarded as royalty to be distributed to and among, or the proceeds thereof paid to, the Royalty Owners, free and clear of all unit expense and free and clear of any lien therefor. The Owner of any overriding royalty, oil and gas payment, royalty in excess of one-eighth (1 / 8th) of production, or other interests, who is not primarily responsible therefor shall, to the extent of such payment or deduction from his share, be subrogated to all the rights of the Unit Operator with respect to the interest or interests primarily responsible for such payment, provided, however, such right of subrogation shall not apply, inure to or exist for the benefit of the owner of an overriding royalty, oil and gas payment, royalty in excess of one-eighth of production, or other interest, who is not responsible therefor. The owner of such overriding royalty, oil and gas payment, royalty in excess of one-eighth of production, or other interest in any oil production unit shall bear his fair share of all capital and operating cost incurred by a unit operator from the first day of the month next succeeding the month during which such enhanced recovery methods are initiated and implemented in the production unit, and the owner of such interest shall continue to bear his share of both capital and operating cost so long as such unit is producing oil or gas utilizing enhanced recovery methods. Any surplus received by the Unit Operator from any such sale of production shall be credited to the person or persons from whom it was deducted in the proportion of their respective interest.

(21) That the Tract Participations set forth in Exhibit "G" shall not hereafter be altered except as provided in Section 9-17-86 of the *Code of Alabama* (1975), as amended, and the productivity factor for a Tract shall not be altered based on production obtained from a well drilled after the date of this Order.

(22) That any revision or enlargement to the Unit Area shall be made in accordance with Section 9-17-85 of the *Code of Alabama* (1975), as amended.

(23) That this Order and Unit Operations shall become effective at 7:00 a.m. on January 1, 2019.

(24) That pursuant to Section 9-17-83(8) of the *Code of Alabama* (1975), Unit Operations shall terminate in the manner and under the circumstances as determined by the Board.

(25) That in the event of conflict between the provisions of this Order and the Unit Agreement the terms and conditions of this Order shall govern and control.

**ORDERED** this 17th day of December, 2018.

STATE OIL AND GAS BOARD OF ALABAMA

BY: *James H. Griggs*
James H. Griggs, Chairman

BY: *Charles E. Pearson*
Charles E. (Ward) Pearson, Vice Chairman

BY: _____DID NOT VOTE_____
Stephen P. French, Member

ATTEST:

*Berry H. Tew, Jr.*
Berry H. (Nick) Tew, Jr., Secretary

7

**THE FOLLOWING EXHIBITS ARE ATTACHED TO THIS ORDER:**

Exhibit "A":   Special Field Rules, as amended

Exhibit "B":   Unit Agreement

Exhibit "C":   Unit Operating Agreement

Exhibit "D":   Plat Showing Unit Area and Tracts making up Unit Area

Exhibit "E":   Description of Unit Area

Exhibit "F":   Description of the Tracts

Exhibit "G":   Tract Participation

Exhibit "H":   Type Log Showing Unitized Formation

Exhibit "I":   Allocation Formula

Exhibit "J":   Plan of Unit Operations

8

Exhibit "C" to Order No. 2018-49

# UNIT OPERATING AGREEMENT

## SOUTHEAST BROOKLYN OIL UNIT

## BROOKLYN FIELD

## CONECUH AND ESCAMBIA COUNTIES, ALABAMA

**THIS AGREEMENT**, entered into as of the 1st day of November, 2018, by the parties who have signed the original of this instrument, a counterpart thereof, or other instrument ratifying and agreeing to be bound by the provisions hereof (hereinafter referred to as the "parties hereto");

### WITNESSETH:

**WHEREAS**, the parties hereto as Working Interest Owners have executed, as of the date hereof, an agreement entitled "Unit Agreement, Southeast Brooklyn Oil Unit, Brooklyn Field, Conecuh and Escambia Counties, Alabama," herein referred to as "Unit Agreement," which, among other things, provides for a separate agreement to be entered into by Working Interest Owners to provide for the development and operation of the Unit Area as therein defined;

**NOW, THEREFORE**, in consideration of the mutual agreements herein set forth, it is agreed as follows:

### ARTICLE 1

### CONFIRMATION OF UNIT AGREEMENT

1.1 CONFIRMATION OF UNIT AGREEMENT. The Unit Agreement is hereby confirmed and by reference made a part of this Agreement. The definitions in the Unit Agreement are adopted for all purposes of this Agreement. If there is some conflict between the Unit Agreement and this Agreement, the Unit Agreement shall govern.

### ARTICLE 2

### EXHIBITS

2.1 EXHIBITS. The following exhibits are incorporated herein by reference:

2.1.1 EXHIBITS "A," "B," "C-1", "C-2," "C-3," "D," and "E" of the Unit Agreement.

2.1.2 EXHIBIT "F," attached hereto, which is the Accounting Procedure applicable to Unit Operations. If there is any conflict between this Agreement and Exhibit "F," this Agreement shall govern.

2.1.3 EXHIBIT "G," attached hereto, which contains insurance provisions applicable to

Operator pursuant to this Agreement.

## ARTICLE 11

### UNIT EXPENDITURES

11.1 BASIS OF CHARGE TO WORKING INTEREST OWNERS. Unit Operator initially shall pay all Unit Expenditures. Each Working Interest Owner shall reimburse Unit Operator for its share of Unit Expenditure. Each Working Interest Owner's share shall be the same as its Unit Participation in effect at the time the expense was incurred and paid. All charges, credits and accounting for Unit Expenditures shall be in accordance with Exhibit "F." Charges for outside attorneys, landmen and/or technical experts used in conjunction with Unit Operations, title examination, and/or hearings before Governmental Agencies will be direct charges to the Unit Joint Account. Unit Operator shall charge a reasonable fee for services rendered by its in-house personnel in the foregoing functions.

11.2 ADVANCE BILLINGS. Unit Operator shall have the right to require Working Interest Owners to advance their respective shares of estimated Unit Expenditures by submitting to Working Interest Owners, on or before the 15th day of any month, an itemized estimate thereof for the succeeding month, with a request for payment in advance. Within fifteen (15) days after receipt thereof, each Working Interest Owner shall pay to Unit Operator its share of such estimate. Adjustments between estimated and actual Unit Expenditures shall be made by Unit Operator at the close of each calendar month, and the accounts of Working Interest Owners shall be adjusted accordingly.

11.3 COMMINGLING OF FUNDS. Unit Operator shall hold for the account of the Working Interest Owners any funds of the Working Interest Owners advanced or paid to the Unit Operator, either for the conduct of operations hereunder or as a result of the sale of production from the Unit Area, and such funds shall remain the funds of the Working Interest Owners on whose account they are advanced or paid until used for their intended purpose or otherwise delivered to the Working Interest Owners or applied toward the payment of debts as provided in Section 11.5. Nothing in this paragraph shall be construed to establish a fiduciary relationship between Unit Operator and Working Interest Owners for any purpose other than to account for Working Interest Owners' funds as herein specifically provided, and no funds received by Unit Operator under this agreement need be segregated or maintained by it as a separate fund, but may be commingled with

11

its own funds.

11.4 LIEN OF UNIT OPERATOR. Each Working Interest Owner grants to Unit Operator a first and preferred lien upon its Oil and Gas Rights in each Tract, its share of Unitized Substances and Outside Substances when produced, and its interest in all Unit Equipment, as security for payment of its share of Unit Expenditures, together with interest thereon at the prime rate designated by Paragraph 1.3.B of Exhibit "F"; provided, however, if this interest rate exceeds the maximum allowed by Alabama law, then the interest rate will be limited to the maximum permitted under Alabama law. Each Working Interest Owner also grants to Unit Operator a security interest in its share of oil and/or gas when extracted and a security interest in all equipment as security for payment for its share of Unit Expenditures together with interest thereon. To the extent that Unit Operator has a security interest under the Uniform Commercial Code of Alabama, Unit Operator shall be entitled to exercise the rights and remedies of a Secured Party under the Code. The bringing of a suit and the obtaining of judgment by Unit Operator for the secured indebtedness shall not be deemed an election of remedies or otherwise affect the lien rights or security interest as security for the payment thereof. In the event any Working Interest Owner takes over as Unit Operator in the manner described elsewhere in this Agreement, Unit Operator shall thereupon grant a like lien to other Working Interest Owners. Unit Operator shall have the right to bring suit to enforce collection of such indebtedness with or without seeking foreclosure of the lien. In addition, upon default by any Working Interest Owner in the payment of its share of Unit Expenditures, Unit Operator shall have the right without prejudice to other existing remedies, to collect from the purchaser the proceeds from the sale of such Working Interest Owner's share of Unitized Substances not to exceed seven-eighths (7/8ths) of the proceeds allocated to the Tract or Tracts in which said Working Interest Owner owns a Working Interest, until the amount owed by such Working Interest Owner, plus interest as aforesaid, has been paid. However, Unit Operator shall continue to collect such proceeds and distribute same to the Owner or Owners of overriding royalty, production payment interest, royalty in excess of one-eighth (1/8th) of production or other interests not primarily responsible for the payment of Unit Expenditures in the event that any of the proceeds so appropriated by Unit Operator were attributable to the interest of said Owner or Owners. Each purchaser shall be entitled to rely upon Unit Operator's written statement concerning the amount of any default.