IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SKLAR EXPLORATION COMPANY, LLC | ) | Case No. 20-12377-EEB |
| EIN: 72-1417930 | ) | |
| | ) | Chapter 11 |
| Debtor-in-Possession. | ) | |
| | ) | |
| IN RE: | ) | |
| | ) | |
| SKLARCO, LLC | ) | Case No. 20-12380-EEB |
| EIN: 72-1425432 | ) | |
| | ) | Chapter 11 |
| | ) | |
| Debtor-in-Possession. | ) | |

**KUDZU PARTIES' OBJECTION TO DEBTORS' MOTION TO USE CASH COLLATERAL ON A FINAL BASIS**

**COMES NOW**, Kudzu Oil Properties, LLC, Alabama Oil Company and Apple River Investments, LLC (collectively, the "**Kudzu Parties**"), by and through their undersigned counsel Moye White LLP, for their Objection (the "**Objection**") to the Debtors' Motion to Use Cash Collateral on a Final Basis (Docket Nos. 34 and 94). In support of the Objection, the Kudzu Parties state as follows:

### I. Introduction

1. Following statements made on the record at the first day hearing in this Chapter 11 case, the Kudzu Parties have significant concerns regarding the nature, extent and whereabouts of more than $1,166,737.70 in cash they advanced to the Debtors prepetition ("**Prepetition Cash Advances**"). The Kudzu Parties advanced cash to the Debtors for the sole and specified purpose

of future operations, prospecting and drilling or reworking specific oil and gas wells and pipelines in Alabama, Florida, and Mississippi.[1]  However, as of the date of this Objection, drilling and/or workover operations have not yet commenced on some of the projects and it appears highly unlikely that the Debtors are even financially capable of drilling and/or reworking the wells.  The Kudzu Parties may remain obligated to make additional cash advances in the future ("**Future Cash Advances**" along with the Prepetition Cash Advances are collectively, the "**Cash Advances**") if requested by the Debtors or risk forfeiture of their interests under the contracts between the parties.  The Debtors own no equitable interest in the Kudzu Parties' Prepetition Cash Advances and they are not property of the Estate.  Moreover, because the Prepetition Cash Advances may only be used for a specific exploration purpose, the cash is not property of the estate for the Debtors and/or their other creditors to use.  Accordingly, to the extent the Kudzu Parties are obligated to make Future Cash Advances, the Court should require that such Cash Advances be held in a segregated account solely dedicated to the Kudzu Parties for the specific well or project in question.   Lastly, the Court should prohibit the use of any cash collateral for payments to the Debtors' insiders including any entities in which Mr. Howard Sklar, or any of his family members, holds an interest.

## II.  Background

A. **Nature of the Kudzu Parties' Prepetition Agreements with the Debtors.**

2. Prepetition, the Kudzu Parties entered into that certain Participation Agreement[2] (the "**Participation Agreement**") and Joint Operating Agreement dated  February 20, 2020, ("**the JOA**", collectively with the Participation Agreement, the "**Agreements**") with the Debtor Sklar Exploration Company, LLC ("**SEC**"), whereby in exchange for collectively contributing (a)

---

[1] Apple River Investments, LLC, does not have any interests in Alabama or Florida.

[2] One or more of the Kudzu Parties entered into additional Participation and Joint Operating Agreements not specifically identified herein.

2

specified amount of cash, in the aggregate amount of not less than $1,166,737.70[3] in Prepetition Cash Advances, and (b) certain existing oil and gas leases, SEC would commence or cause to be commenced operations for the drilling of the Howard 12-15 No. 1 no later than June 30, 2020 (the "**Initial Well**"), in Clarke County, Mississippi, in an area commonly known as North Pachuta ("**North Pachuta**").

3. In addition to the Prepetition Cash Advances, the Participation Agreement provides that:

> ***the [Kudzu Parties] are responsible for and must pay SEC their share of all actual costs to drill the Initial Well*** *to the Objective Depth in the following manner: (i) SEC will furnish the Participants with a cash call invoice within thirty (30) days of its anticipated spud date of the Initial Well covering their share of the amount estimated in the AFB to drill the Initial Well to the Objective Depth, excluding estimated completion costs, but have been made by any Participant with SEC in advance; and (ii)* ***the [Kudzu Parties] must tender to SEC, within 15 days of receipt of (an) invoice(s) from SEC, the difference, if any, between said advance and their share of the actual costs to drill the Initial Well*** *to the Objective Depth.*

(*See* Participation Agreement at § 1.2(a)).

4. Accordingly, pursuant to Section 1.2(a) of the Participation Agreement and other similar agreements, the Kudzu Parties are obligated, upon request, to make Future Cash Advances to the Debtors to commence drilling of the Initial Well.

5. To the extent SEC requests—at any time—Future Cash Advances from any of the Kudzu Parties for any reason to drill/rework, and/or complete the Initial Well or other wells, and

---

[3] As acknowledged by the Debtors, Kudzu Oil Properties, LLC, and Apple River Investments collectively advanced at least $749,578.43 in cash prepetition in connection with cash call advances related to the Howard 12-15 No. 1, the McLeon 30-11 No. 1 Wells and other pipeline and specific exploration projects (*See* Docket No. 3). Alabama Oil Company has advanced at least $191,064.09 in cash prepetition in connection with cash call advances related to those two wells.

3

the Kudzu Parties do not advance such funds, the Participation Agreement and JOA[4] effects a complete forfeiture of the Kudzu Parties' interests under the Agreements. (*See Id.*).

6. The Cash Advances to SEC, pursuant to the express terms of the Agreements, are for the specified purpose ***only*** of prospecting and drilling the Initial Well. The JOA expressly states that such funds remain the funds of the Kudzu Parties until applied to the payment of Kudzu Parties' accounts. (*See* JOA at ¶ V.D). The Agreements do not grant SEC any discretion to use any portion of any Cash Advances for a purpose other than payment of the Kudzu Parties' *pro rata* share of prospecting and drilling under the Agreements. It is, in essence, a trust account.

7. As required under the Agreements, the Kudzu Parties made the Prepetition Cash Advances to SEC along with contributing the various leasehold interests identified therein in order to enable SEC to prospect and drill the Initial Well

8. As of the date of this Objection, SEC has not: (i) commenced, or made any efforts to commence, the drilling of the Initial Well as required under the Agreements; or (ii) filed a motion, pursuant to Section 365 of the Bankruptcy Code, to assume or reject the Agreements.

9. In addition to its interests under the Agreements, the Kudzu Parties collectively own working interests and overrides in two currently producing wells, commonly known as the Fleming 30-15 #1 the McLeod 30-11 #1 (the "**Producing Wells**"), for which SEC is the operator. Likewise, Kudzu Oil Properties, LLC owns a working interest and overrides in many additional wells that are currently producing (the "**Additional Wells**"). Attached hereto as <u>Exhibit A</u> is a list of the Additional Wells. The Producing Wells and Additional Wells generate revenue (the "**Production Revenue**") to which the Debtors are obligated to distribute to the Kudzu Parties in connection with their working interests and overrides.

---

[4] For purposes of this Objection, the Kudzu Parties make reference to one Participation Agreement and Joint Operating Agreement. Notwithstanding, there are several other similar agreements.

4

**B.     Background Regarding the Chapter 11 Case and the Requested Use of Cash Collateral.**

10.     On April 1, 2020 (the "**Petition Date**"), the Debtors commenced this Chapter 11 case when they filed their voluntary petition.  (Docket No. 1).

11.     On April 6, 2020, the Debtors filed their Motion for Authority to Use Cash Collateral (the "**Cash Collateral Motion**").  (Docket No. 34).

12.     In the Cash Collateral Motion, the Debtors allege that, as of the Petition Date, the Debtors held $2,391,756.09 in cash collateral from their "oil and gas properties and ongoing revenue based upon product sales, hedge revenue, and other assets" and that such cash collateral is subject to the lien held by their senior secured lender East West Bank (the "**Bank**"), but that the Debtors have a number of "holders of working interests who are due funds for prior months."  (*Id*. at ¶¶ 5, 12 and 14).  The Debtors requested that they be granted authority to use cash collateral for post-petition operations including maintaining their various oil and gas leasehold and contractual interests.  (*Id*. at ¶¶ 16 and 19).

13.     At the first day hearing in this Chapter 11 case, counsel for the Debtors conceded that any cash advances or deposits the Debtors received from working interest owners, *e.g.*, the Kudzu Parties' Prepetition Cash Advances, had been deposited into, and commingled with, the Debtors' operating account.  Furthermore, as set forth in the Interim Order (as defined below), the Debtors believe they do not hold any cash advances from any parties.  (*See* Docket No. 94 at ¶ 9).

14.     On April 15, 2020, the Court entered its Order granting the Debtors authority to use cash collateral on an interim basis (the "**Interim Order**").  (Docket No. 94).  With respect to the cash maintained in the Debtors' operating account, the Interim Order provides:

> ***[The Bank] asserts liens on all of the Debtors'*** cash on hand, ***revenue***, cash proceeds and other cash equivalents, and all cash and cash equivalent proceeds of other collateral.

5

(*Id*. at ¶ C) (emphasis added).

The funds in an account of either Debtor shall retain their ownership as to the individual Debtor who provided such funds into the account and/or any applicable third party that may claim ownership to such funds under applicable non-bankruptcy law.

(*Id*. at ¶ 3).

15. The Interim Order further provides that all parties with an interest in cash collateral, expressly including the Kudzu Parties, are granted the following adequate protection: (i) replacement liens on all existing and hereafter acquired property and assets of the Debtors with all such liens having the same validity, priority, and enforceability as of the Petition Date; (ii) all collateral of the Debtors will be insured; (iii) any party asserting an interest in cash collateral may review the Debtors' books and records; and (iv) the Debtors will only use such cash collateral as is necessary to avoid immediate and irreparable harm and in conjunction with their prepared budget. (*Id*. at ¶¶ 5-7).

### III. Objection

16. The Kudzu Parties provided the Prepetition Cash Advances to the Debtors for the sole, express and specific purpose of prospecting and drilling the Initial Well in North Pachuta. However, the Initial Well has not yet been drilled and the Debtors cannot account for the Prepetition Cash Advances. Reviewing the proposed budget attached to the Interim Order, it appears that drilling the Initial Well on or before June 30, 2020, absent obtaining any Future Cash Advances from the Kudzu Parties, is an impossibility. As admitted by the Debtors at their first day hearing, the Prepetition Cash Advances and all similar types of cash advances from other working interest owners have been either wrongfully spent for improper purposes or commingled

in the Debtors' operating accounts and are missing. Accordingly, the current state of affairs have the Kudzu Parties deeply concerned regarding the Debtors' trajectory in this Chapter 11 case.

A. **The Kudzu Parties are Entitled to Adequate Protection of Their Interests in Future Cash Advances.**

17. Section 363(e) of the Bankruptcy Code provides a basis to grant adequate protection to the Kudzu Parties as counterparties to the Agreements. *See* 11 U.S.C. § 363(e) ("Notwithstanding any other provision of this section, at any time, on request of an entity that has ***an interest in property used***, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.") (emphasis added). Until the Agreements are either assumed or rejected, the Kudzu Parties may be obligated to provide Future Cash Advances when called upon by the Debtors or risk forfeiture of their interests thereunder. To the extent that the Kudzu Parties are obligated to provide Future Cash Advances to the Debtors, solely in furtherance of drilling the Initial Well, the Court must require that all such Future Cash Advances be: (i) segregated in a separate account from other working interest owners' cash advances and from any cash collateral of the Bank; and (ii) used only for drilling of the Initial Well. Absent segregation, all Future Advances are subject to further commingling and, ultimately, being wrongfully dissipated for improper purposes.[5] Accordingly, requiring the Debtors to segregate Future Cash Advances is the only manner in which the Kudzu Parties' interests Future Advances are capable of being adequately protected. *See* 11 U.S.C. § 361(3) ("granting such other

---

[5] The Kudzu Parties have legitimate doubt that the prospecting and drilling of the Initial Wells is no longer feasible due to the Debtors' unauthorized use and commingling of the Prepetition Cash Advances. To the extent that the Initial Wells cannot be drilled ***solely*** with Future Cash Advances made on post-petition basis that are held in a segregated account, this Court should suspend all such payments so that they are not capable of being commingled and spent on expenditures other than those related to the Initial Wells as what occurred prepetition. At this time, the Kudzu Parties are contemplating filing a motion which suspends their obligation to make Future Cash Advances.

7

relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property."); *In re Rancher Energy Corp.*, 2010 Bankr. LEXIS 5429, at *5 (Bankr. D. Colo. Sep. 2, 2010) ("In order to encourage the Debtors' efforts in the formative period prior to the proposal of a reorganization, the court must be flexible in applying the adequate protection standard . . .") (citing *In re O'Connor*, 808 F.2d 1393, 1398 (10th Cir. 1987)).

**B.      The Kudzu Parties' Cash Advances are Not Property of the Debtors' Bankruptcy Estate.**

18.     Furthermore, because Cash Advances are made in furtherance of the narrow and specific purpose of only prospecting and drilling the Initial Well, all such funds are not property of the Debtors' bankruptcy estate. *See* 11 U.S.C. § 541(d).  The Kudzu Parties object to any other creditor being awarded a replacement lien upon the Prepetition Cash Advances—to the extent any portion thereof remains in the Debtors' operating account—and any Future Cash Advance as such advances are not property of the estate.  As set forth in the Agreements, all advances to the Debtors are specifically earmarked for the prospecting and drilling of the Initial Well.  Accordingly, all Cash Advances must only be used for the specific purposes of prospecting and drilling the Initial Well.

19.     Additionally, sharing the same concerns regarding the Prepetition Cash Advances and Future Cash Advances, *i.e.*, the Debtors' admissions that such funds cannot be accounted for because they were spent prepetition, the Kudzu Parties' interest in the Production Revenue from the Producing Wells must also be segregated in a separate account.  First, the Production Revenue is not property of the Debtors' bankruptcy estate. *See* 11 U.S.C. § 541(b)(4)(B) (excepting from property of the estate production payments to entities who do not participate in the operation of

8

the property from which such production payment is transferred). Second, the Kudzu Parties' share of the Production Revenue is effectively held in trust until it is remitted by the Debtors. *See Vess Oil Corp. v. SemCrude, L.P.*, 418 B.R. 98, 100, 106 (Bankr. D. Del. 2009) (debtor lacked equitable interest in funds intended for distribution to royalty holders). Because the Production Revenue is held in trust and the Debtors hold only bare legal title thereto, such funds cannot be used as the Debtors' cash collateral. Accordingly, the Kudzu Parties objects to any party, including the Bank, being granted a lien against any portion of Production Revenue from the Producing Wells and requests that the Court require the Debtors segregate such funds in separate accounts for each well.

20. Courts in many states have routinely and consistently held that payments owed to working interest owners from revenue are not property of the Estate and must be turned over. See *In re Reichmann Petroleum Corp.*, 434 B.R. 790, 797 (Bankr. S. D. Tex. 2010) (revenue earned by working interest owners is the property of the working interest owner, not the operator); *In re SemCrude, supra* (holding that funds in debtor's possession held on behalf of royalty interest owners were held in a resulting trust for such parties). Indeed, the 10th Circuit Court of Appeals has held that JOAs create a "trustee type relationship imposing a duty of fair dealing between the operator and the non-operator owners in the distribution of shares among the owners". *Reservoir Oil, Inc. v. Dixon,* 711 F.2d 951, 953 (10th Cir. 1983). This relationship and this duty arise out of the fact that non-operators and overriding royalty interest owners, such as the Kudzu Parties, own and control their proportionate share of the produced oil and gas. *Id.* Under the express terms of the agreements, the Kudzu Parties own the production proceeds relating to their respective interests, even though such funds may be held by the debtors. Accordingly, all Cash Advances and Production Revenue are not property of the Debtors' bankruptcy estate.

**C.     Objections to Specific Items in the Proposed Budget.**

21.     Lastly, given the serious and egregious nature of the Debtors' prepetition conduct, *i.e.*, the Debtors' unauthorized use and commingling of the Prepetition Cash Advances, the Kudzu Parties object to any post-petition payments—regardless of being characterized as salary, expense reimbursements, payment of rent, or otherwise—to any insiders of the Debtors including, but not limited to, Mr. Howard Sklar, officers, directors, and any entities or trusts to which Mr. Sklar or any of his family members have an interest. At this early stage in the Chapter 11 case, it is wholly inequitable to authorize any payments to any insiders given the commingling and disappearance of the Prepetition Cash Advances. Accordingly, any proposed payments to insiders should be stricken from the budget attached to the Cash Collateral Motion.

## IV.     Reservation of Rights

22.     The Kudzu Parties reserve their rights to: (a) compel the Debtors to make a decision regarding the assumption or rejection of the Agreements, pursuant to Section 365 of the Bankruptcy Code, and (b) file a motion suspending their obligation to make any Future Cash Advances, and nothing herein should be deemed a waiver of such right.

WHEREFORE, the Kudzu Parties respectfully request that the Court enter an order that: (i) requires the Debtors, pursuant to Section 361(3) of the Bankruptcy Code, to segregate any portion of the Prepetition Cash Advances held in their operating account and all Future Cash Advances in a separate bank account; (ii) requires the Debtors, pursuant to Section 361(3) of the Bankruptcy Code, to spend any portion of the Prepetition Cash Advances and all Future Cash Advances on expenses related solely to the prospecting and drilling of the Initial Well; (iii) prohibits any creditor from obtaining a replacement lien against any portion of the Prepetition Cash Advances and any Future Cash Advance; (iv) determines all Cash Advances are not property of

the estate under Section 541(d) of the Bankruptcy Code; (v) requires the Debtors, pursuant to Section 361(3) of the Bankruptcy Code, to segregate all Production Revenue from Producing Wells; (vi) prohibits any creditor from obtaining a replacement lien against any portion of the Production Revenue; (vii) determines that all Production Revenue is not property of the estate pursuant to Sections 541(b)(4)(B) and (d) of the Bankruptcy Code; (viii) prohibits the post-petition payment of any expenditures to any insiders for any purpose; and (ix) grants the Kudzu Parties all such other and further relief this Court deems fair and equitable under the circumstances.

Dated: April 23, 2020.	Respectfully submitted,

**ALABAMA OIL COMPANY, APPLE RIVER INVESTMENTS, LLC, AND KUDZU OIL PROPERTIES, LLC**

By: *s/Timothy M. Swanson*
Timothy M. Swanson (Colorado No. 47267)
MOYE WHITE LLP
1400 16th Street
6th Floor
Denver, Colorado 80202-1486
Tel: (303) 292-2900
Fax: (303) 292 4510
Tim.Swanson@moyewhite.com
*Counsel to Alabama Oil Company, Apple River Investments, LLC, and Kudzu Oil Properties, LLC*

--and--

Craig M. Geno (admission pending)
Law Offices of Craig M. Geno, PLLC
587 Highland Colony Parkway
Ridgeland, Mississippi 39157
Tel: (601) 427-0048
Fax: (601) 427-0050
cmgeno@cmgenolaw.com
*Counsel to Alabama Oil Company, Apple River Investments, LLC, and Kudzu Oil Properties, LLC*

**Certificate of Service**

  I hereby certify that on this 23rd day of April 2020, I caused the foregoing ***Kudzu Parties' Objection to Debtors' Motion to Use Cash Collateral on a Final Basis*** to be served *via* CM/ECF to all parties that have filed electronic appearances and requested service in this case.

              *s/Timothy M. Swanson*
              Timothy M. Swanson