UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

IN RE:                                                    )
                                                          )     Case No. 20-12377-EEB
SKLAR EXPLORATION COMPANY, LLC                            )
EIN: 721417930                                            )     Chapter 11
    Debtor.                                           )
                                                          )
_____                  )
                                                          )
SKLARCO, LLC                                              )     Case No. 20-12380-EEB
EIN:  72-1425432                                          )
    Debtor.                                           )     Chapter 11

**STRAGO GROUP'S OBJECTION TO DEBTORS' MOTION
FOR AUTHORITY TO USE CASH COLLATERAL**
***[Relates to Docket No. 34]***

Strago Petroleum Corporation ("Strago"), Meritage Energy Limited ("Meritage"), Gateway Exploration LLC ("Gateway"), GCREW Properties, LLC ("GCREW") and Harvest Gas Management, LLC ("Harvest") (collectively referred to herein as (the "Strago Group") and files this objection to the *Motion for Authority to Use Cash Collateral* [Dkt. No. 34] (the "**Cash Collateral Motion**") filed by Sklar Exploration Company, LLC ("**SEC**") and Sklarco, LLC ("**Sklarco**" and collectively with SEC, the "**Debtors**").

**I.    Summary of Objection[1]**

1.    There are two fundamental and fatal problems with the proposed cash collateral order: (1) Debtors appear to be refusing to pay, now, February revenue to its rightful owners –contradicting Debtor's admissions that such funds are not property of the estate and (2) it does not provide adequate protection for the Strago Group's cash call

---

[1] On April 9, 2020, Strago Petroleum Corporation and Meritage Energy Limited filed an Objection to the Motion to Use Cash Collateral (Dkt. No. 65).  The Strago Group adopts the allegations and arguments made therein and incorporates them here by reference.

advances.   Debtors should not be permitted to continue to use other people's money to fund its operations in this bankruptcy case.   Using other people's money, comingling funds and disregarding the separateness of accounts between legal entities is precisely what got Debtors into this situation in the first place.  As evidence trickles  in, it becomes clearer that a drop in commodity prices did not cause Debtor's financial demise. Instead, it was Debtors' own gross mismanagement of other people's money.

2.       As just one example unearthed to date, while working interest owners paid cash call advances in accordance with their obligations under the various joint operating agreements, the recently produced cash call accounting appears to show that Sklarco did not pay approximately $2,700,000 of its contractually obligated cash call advances.[2]  If this is validated, it raises serious questions regarding the fiduciary obligations of the officers and owners of SEC and Sklarco.  For example, did Sklarco know that SEC did not have the money to fund SEC's operations? Did Sklarco instruct SEC to use the cash call advances for other debts, while at the same time refusing to pay its own cash call advances out of its revenues?  Additionally, in March 2020, SEC wrote Strago a check for January production payment which SEC's bank refuses to cash.   There may be other working interest owners who also received payment for production that the bank is not honoring.  These concerns are further exacerbated by the Debtor's recent budget which, on its face seems to suggest administrative insolvency in the very near future.

---

[2] The cash call accounting data was only made available on April 21, 2020, so this analysis is preliminary and subject to further review and analysis.

3.      This Court should not allow such conduct to continue through the proposed cash collateral order.  Specifically, this Court should require Debtors to (1) pay February revenue and (2) provide adequate protection for the cash call advances.

**II.      Background Facts**

4.      The Strago Group are working interest owners under a Model Form Operating Agreement dated December 15, 2019 and the Recording Supplement to Operating Agreement and Financing Statement (collectively the "JOA").[3]  Debtor, Sklar Exploration Company LLC ("SEC"), is the operator under the JOA.  In addition, the Strago Group are also working interest owners in other wells operated by SEC and are due ongoing revenue that is being held by the Debtors.

5.      Pre-petition, Strago and Meritage provided cash call advances to SEC as required under the JOA for the drilling of the Initial Well (as defined in Article VI. A. of the JOA) which is referred to herein as the "#1 Ellis Well".

Relevant to the Cash Collateral Motion, the JOA contains the following provision:

> Operator, at its election, shall have the right from time to time to demand and receive from the other parties payment in advance of their respective shares of the estimated amount of the expense to be incurred in operations hereunder during the next succeeding month, which right may be exercised only by submission to each such party of an itemized statement of such estimated expense, together with an invoice for its share thereof.

See Exhibit 1 to Dkt. No. 65 at Article VII.C

---

[3] The Joint Operating Agreement and Recording Supplement were attached as Exhibits 1 & 2 to a previously filed objection by Strago and Meritage [Dkt. No. 65] and are incorporated herein.

6.      Section 3.A of the Recording Supplement to the JOA provides, in pertinent

part:

> Each party grants to the other parties hereto a lien upon any interest it now owns or hereafter acquires in Oil and Gas Leases and Oil and Gas Interests in the Contract Area, and a security interest and/or purchase money security interest in any interest it own owns or hereafter acquires in the personal property and fixtures on or used or obtained for use in connection therewith, to secure performance of all of its obligations under this agreement and the Operating Agreement including but not limited to payment of expenses, interest and fees, proper disbursement of all monies paid under this agreement and the Operating Agreement . . and the proper performance of operations under this agreement and the Operating Agreement.

(*See* Exhibit 2 at p. 2).[4]  By this provision, SEC granted the WI Owners a security interest

in the cash call advances.  Accordingly, SEC categorizes the cash call advances as

liabilities of the Debtor because such funds are only to be used for costs associated with

drilling the #1 Ellis Well.

7.      As admitted in paragraph 11 of the Motion, SEC "owes approximately

$7,023,910.44 in cash call advance liabilities from working interest holders." The Strago

Group contend that the funds they have advanced to SEC before the Petition date in

response to cash calls are not property of the estate under 11 U.S.C. § 541(d), and may not

be used except for the specific operational purposes for which the funds were advanced.

8.      But Debtors have also admitted that the cash call advances have been spent.

Indeed, SEC's Schedule F acknowledges all of the Strago Group have claims for cash

---

[4] *Id.*

advances and characterize those claims as being for "Cash Call Advances," and none of such claims is listed as contingent, unliquidated or disputed.

9.      Since SEC took cash call advances that were made for very specific operations itemized in Authorizations for Expenditures ("AFE's") and then indiscriminately spent the money for whatever purpose it saw fit, the cash call advance liability should be recouped against all joint interest billings, regardless whether they relate to the projects for which the cash call advances were paid.

## III.    Argument and Authorities

10.     The Strago Group advanced funds to SEC pursuant to JOA's that required SEC (a) to hold the funds for the account of such non-operators, and (b) to use the funds for the particular purposes for which they were advanced. SEC did neither. It spent the funds and admits it did not do so for the purposes stated in the cash call advances.

11.     On April 15, 2020, this Court entered the Interim Order Authorizing Use of Cash Collateral [Dkt. No. 94] (the "First Interim Order").  Under the First Interim Order, the Strago Group's rights to property owned by the Strago Group but held by the Debtors was preserved:

> The funds in an account of either Debtor shall retain their ownership as to the individual Debtor who provide such finds into the account and/or any applicable third party that may claim ownership to such funds under applicable non-bankruptcy law.

Dkt. No. 94 at 3, ¶.  However, since the entry of the First Amended Order it has come to counsel's attention that East West Bank and the Debtor may not have an agreement with

5

respect to segregation of funds and payment of revenue for February that is currently due.

### A. The cash call advances are not property of the estate.

12.     As set forth above, the Strago Group advanced monies to SEC for the specific identified purpose of drilling the Ellis #1 Well .  Further, in exchange for such advances, SEC granted the Strago Group a security interest in such funds.  The cash call advances were never to be used for the general operations of the Debtors.  11 U.S.C. §541(d) specifically provides that property of the estate includes property in which the debtor holds, as of the petition date, only legal title and not an equitable interest, but only to the extent of the debtor's legal title to such property and not to the extent of any equitable interest that the debtor does not hold.  On its face, §541(d) thus excludes from a debtor's estate property that the debtor holds in constructive trust for another.  *Ocker v. Quarles (in re Quarles)*, Nos. 11-36436 HRT, 1201093, 2014 Bankr. LEXIS 22, at *25 (Bankr. D. Colo. Jan. 3, 2014) (*quoting In re Ebel*, 144 B.R. 510, 515 (d. Colo. 1992); see also MCZ, Inc., 82 B.R. 40, 42-43 (requiring debtors to remit production proceeds held by the debtors "as bailee" when estate had nothing more than a "bare possessory interest"). In sum, "[p]roperty subject to a trust is not property of the bankruptcy estate."  *Hill v. Kinzler (In re Foster)*, 275 F.3d 924, 926 (10th Cir. 2001) (citations omitted).  Consequently, the cash call advances are entitled to adequate protection in any proposed order authorizing the use of cash collateral.

> **B.     The Debtors should be obligated to pay the February revenue distribution and all ongoing production proceeds owed to working interest owners**

6

13.     At the First Day Hearing, the Debtors unambiguously stated their position that February Revenue Distribution is <u>not</u> property of the Debtors' estate. First Day Hearing Tr. at 27:15-16 ("We do not believe that the revenue is really an asset of the estate.").

14.     Moreover, at such hearing, East West Bank simply requested a postponement of such payment until May 1st (as proposed by the Debtors) and at no time indicated that further extension would be necessary.  See First Day Hearing Tr. at 29:19-23.  The working interest holders have relied on the Debtors' representation that any delay of payment of the February Revenue Distribution would be minor—and in East West Bank's acquiescence to the same—in agreeing to the relief requested by the Debtors. *See, e.g.*, First Day Hearing Tr. at 42:6-9.  As such, the Debtors should be estopped from continuing to withhold the February Revenue Distribution.  *See Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005) (*quoting Davis v. Wackelee*, 156 U.S. 680, 689 (1895)) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that legal position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.")

15.     By the same token, East West Bank has had ample opportunity to "investigate" the need for the Debtors to make the February Revenue Distribution and—to the extent that it seeks to attack the validity of the interests attributable to the February Revenue Distribution—file an adversary proceeding pursuant to Federal Rule of

Bankruptcy Procedure 7001. *See* Fed. R. Bankr. P. 7001(2); *see also In re Colrud*, 45 B.R. 169, 172 n.2 (Bankr. D. Alaska 1984). East West Bank has not done so and, indeed, cannot continue to use whatever influence it has over the debtor to prevent the Debtors from remitting the February revenue.

16. More to the point, a failure of the Debtors to remit February revenue constituted a misappropriation of property that the Debtors have admitted is not property of the estate. *See Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 589 (1935) ("The bankruptcy power, like the other great substantive powers of Congress, is subject to the Fifth Amendment."). The liability accruing from the Debtors' failure to remit such non-estate property would likewise constitute an administrative claim. *See Reading Co. v. Brown*, 391 U.S. 471, 486 (1968); *In re Hildebrand*, 205 B.R. 278, 286 (Bankr. D. Colo. 1997) (relying on Reading in awarding an administrative claim); *see also Al Copeland Enters., Inc. v. State of Texas (In re Al Copeland Enters., Inc.)*, 991 F.2d 233, 239-40 (5th Cir. 1993) (*citing Reading* and concluding that because the debtor's "post-petition decision [not to carry out its obligations under applicable non-bankruptcy law] to pay sales tax revenues] resulted in monetary harm to the State," an award of interest to the State "constitute[d] an administrative expense under 11 U.S.C. § 503(b).").

17. Given the issues concerning potential administrative insolvency, the Debtors should be compelled to immediately remit the February revenue to avoid the burden of additional administrative claims from the withholding of these production proceeds. The Debtors should further be required to remit production proceeds owed to third party royalty holders and working interest owners on a going-forward basis. *See In*

8

*re MCZ, Inc.*, 82 B.R. 40, 42-43 (Bankr. S.D. Tex. 1987) (requiring debtors to remit production proceeds held by debtors "as bailee" when estate had nothing more than a "bare possessory interest").

## IV.     Conclusion

For the reasons stated herein, the Strago Group asks the Court to deny the Cash Collateral Motion to the extent it doesn't permit payment of the February revenue payments and provide adequate protection to the cash call advances.

Date: April 23, 2020.

Respectfully submitted,

BUCK KEENAN LLP


By:     */s/ Robert L. Paddock*
        ROBERT L. PADDOCK
        State Bar No.:  24002723
        2229 San Felipe, Suite 1000
        Houston, Texas  77019
        Telephone:  (713) 225-4500
        Facsimile:  (713) 225-3719
        rpaddock@buckkeenan.com

ATTORNEY FOR
STRAGO PETROLEUM CORPORATION,
MERITAGE ENERGY, LTD., GATEWAY
EXPLORATION, LLC, GCREW PROPERTIES,
LLC AND HARVEST GAS MANAGEMENT,
LLC

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing instrument has been forwarded to all known counsel of record via CM/ECF filing and in compliance with the Federal Rules of Civil Procedure, on the 23rd day of April, 2020.

*/s/ Robert L. Paddock*
ROBERT L. PADDOCK