UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC ) | |
| EIN: 72-1417930 ) | Chapter 11 |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |
| ) | Case No. 20-12380-EEB |
| SKLARCO, LLC ) | |
| EIN: 72-1425432 ) | Chapter 11 |
| Debtor. ) | |

**STATUS REPORT ON MOTIONS SET FOR HEARING ON APRIL 27, 2020**

The Debtors, Sklar Exploration Company, LLC ("SEC") and Sklarco, LLC ("Sklarco" and together, "Debtors"), state their status report on the Motions currently pending before the Court and set for hearing on April 27, 2020, as follows:

1. The Debtors filed their voluntary petitions for relief pursuant to Chapter 11 of the Bankruptcy Code on April 1, 2020. The Debtors remain debtors-in-possession.

2. SEC is engaged in business as an independent exploration and production company in the oil and gas industry. SEC is an operating company and does not own oil or gas properties. SEC has its principal business office in Boulder, Colorado and has additional offices in Shreveport, Louisiana and Brewton, Alabama. SEC's exploration and production activities are primarily located in East Texas, North Louisiana, South Mississippi, South Alabama and the Florida Panhandle. SEC is also developing properties and opportunities in the western United States.

3. Sklarco is engaged in business as the owner of certain oil and gas leases and property interests in East Texas, North Louisiana, South Mississippi, South Alabama, the Florida Panhandle, and the western United States.

4. While SEC operates the wells, it does not hold an interest in any of its operated properties. All interests in the wells, including royalty interests, overriding royalty interests, and working interests, are held by either third parties, or by Sklarco.

5. On April 6, 2020, the Debtors filed their: 1) *Motion for Authority to Use Cash Collateral* ("Cash Collateral Motion") (Docket No. 34); 2) *Motion to: (1) Honor and Pay*

*Overriding Royalty, Royalty, and Working Interest Obligations; and (2) Offset Joint Interest Billings* ("Oil and Gas Motion") (Docket No. 37); and 3) *Motion for Authority to Pay Joint Interest Billing Obligations as Critical Vendors (Sklarco, LLC)* ("JIB Motion") (Docket No. 41).

6. An initial hearing on the Debtors' first day motions on April 9, 2020, following which the Court entered an Order authorizing the use of the Debtor's cash collateral on an interim basis through April 27, 2020, and setting a final hearing on the Cash Collateral Motion, Oil and Gas Motion, and JIB Motion for April 27, 2020.

7. The Debtors have been working diligently with the various parties to attempt to resolve issues related to cash collateral. To further the ability of the parties to fully understand the Debtors' finances, the Debtors have established a data room the contains hundreds of relevant contracts, including bank statements, joint operating agreements, lease agreements, a sampling of oil and gas leases, and a preliminary accounting of the cash call advances provided by a number of the working interest holders, and the use of those funds. The Committee has also requested additional information, which the Debtors are evaluating and discussing with the Committee.

8. A number of parties have objected to the Cash Collateral Motion, the Oil and Gas Motion, and the JIB Motion, including the primary secured lender, East West Bank ("EWB"), and number of working interest holders.

9. The Debtors have been negotiating extensively with the Bank and the Committee to resolve issues related to the pending Cash Collateral Motion, JIB Motion, and Oil and Gas Motion. However, given that the Committee was only recently appointed, and is still in the process of reviewing information provided by the Debtors, as are a number of other parties, the Debtors intend to seek only interim relief on the Cash Collateral Motion and Oil and Gas Motion as described more fully herein, and defer further issues to a final hearing on the Motions.

## *Cash Collateral Motion*

10. The Debtors do not intend to seek entry of a final cash collateral order at the April 27 hearing. Rather, the Debtors intend to request that the Court enter the Second Interim Order Authorizing Use of Cash Collateral ("Second Cash Collateral Order"), attached hereto as Exhibit A, and set a hearing on the final use of cash collateral.

11. The Objections to the Cash Collateral Motion can generally be grouped into three categories: 1) the Objection filed by EWB, 2) the Objections filed by the holders of certain working interest holders, and 3) the objections filed by certain mechanics lien creditors.

12. The Objection filed by EWB has been resolved on an interim basis through the Second Interim Cash Collateral Order and the revised budget that accompanies the Second Interim Cash Collateral Order.

13. The revised budget and the Second Interim Cash Collateral Order contemplate the Debtors' use of cash collateral on an interim basis through the week ending May 8. The budget has been revised to provide for the payment of revenue owed to non-insider royalty interest holders and overriding royalty interest holders in the total amount of $1,853,229, and provides for payment of the continued operating expenses of SEC. The revised budget further clarifies those revenues and expenses attributed solely to Sklarco for its interests in non-SEC operated properties.

14. The Second Interim Cash Collateral Order further provides the same protections to secured parties as those provided in the first Interim Order Authorizing Use of Cash Collateral, and preserves the status quo of the parties.

15. The Objections filed by the working interest holders generally assert that cash call advances have been commingled with other funds, and that the holders of working interests should be paid for their proportionate share of the pre-petition revenues. The working interest holders further assert that all cash call advance funds should be maintained in a segregated account.

16. In accordance with the Debtors' statements during the April 9, 2020 hearing on the Cash Collateral Motion, the Debtors do not believe that SEC is currently holding any funds from cash call advances. As such, there are no cash call advance funds to hold in a segregated account. Any future cash call advances will be maintained separately from SEC's operating funds.

17. The payment of pre-petition revenues owed to the working interest holders is currently under review by EWB and the Committee. SEC currently owes working interest holders approximately $1,311,400 for revenue generated in January, and approximately $3,187,900 for revenue generated in February. Given that payment of these amounts would significantly reduce SEC's available cash for operations, a detailed review of these payments by EWB, the Committee, and SEC is warranted to determine if those amounts must be paid at this time.

18. As a result, the revised budget does not include payment to working interest holders at this time. SEC has agreed to maintain the revenue attributed to working interest holders separate from its operating account in its revenue account pending further review and agreement by the parties, or order from the Court.

19. To the extent the working interest holders assert an interest in SEC's funds, their interest is preserved by the Second Interim Cash Collateral Order.

20. The Objections filed by the mechanics lien holders generally assert an interest in the wells located in Montana. Stoneham Drilling Corporation ("Stoneham") asserts a mechanics lien in the proceeds from any hydrocarbons produced from the wells known as the Corwin #5-1, and Bowdoin #2, while Bri-Chem Supply Corp., LLC ("Bri-Chem") asserts an interest solely in the Corwin #5-1 well.

21. Pre-petition, SEC was in the process of drilling these wells and bringing them online. When Montana was placed on a stay-at-home order due to the unprecedented outbreak of COVID-19, the rigs were demobilized, and all further efforts to bring the wells online were halted.

22. No further work has been completed with respect to the Montana wells, and they remain non-operational. Given that there is no ongoing production by these wells, it is unlikely that Stoneham or Bri-Chem have an interest in the Debtors' current cash or accounts. Nonetheless, to the extent Stoneham and Bri-Chem do an have interest in cash collateral, the Second Interim Order preserves their interests.

23. To date, the Second Interim Cash Collateral Order has been approved by EWB. The Debtor has been advised that the Committee is having internal discussions. Bri-Chem and Stoneham have been silent on the Second Interim Cash Collateral Order. The working interest holders almost universally oppose the Second Interim Cash Collateral Order, asserting that the Second Interim Cash Collateral Order does not provide adequate protection for alleged interests arising out of cash call advances, and does not propose to pay the February revenues to the working interest holders. An additional objection was raised to the use of a consolidated budget for SEC, and Sklarco.

24. Sklarco does not have any operations, and is only the holder of oil and gas leases and interests in operated properties, separate budgets for each company would likely not provide any beneficial or substantive information.

25. Given the new appointment of the Committee, and the ongoing investigation into matters related to cash collateral by all parties, including the Debtors, working interest holders, and EWB, the Debtors assert that proceeding with the Second Interim Cash Collateral Order is in the best interests of the Debtors and their estates at this juncture.

*JIB Motion*

26. Sklarco does not intend to seek entry of an Order granting the JIB Motion at the April 27 hearing, and instead intend to request that the Court set this matter for hearing in connection with a hearing on the Debtors' final use of cash collateral.

27. The Objections to the JIB Motion were largely filed by creditors of SEC, and not Sklarco. EWB was the only creditor of Sklarco to object to the JIB Motion.

28. Sklarco anticipates that with additional information regarding the source of funds to pay the amounts sought in the JIB Motion, the Objections can be resolved.

*Oil and Gas Motion*

29. The Debtors do not intend to seek entry of a final Order on the Oil and Gas Motion at the April 27 hearing. Instead, the Debtors anticipate requesting entry of the Interim Order Authorizing Payment of Overriding Royalty Interests and Royalty Interest Obligations ("Interim Oil and Gas Motion"), attached hereto as Exhibit B.

30. The Interim Oil and Gas Order contemplates payment of revenue to the non-insider holders of royalty interests ("RIs") and overriding royalty interests ("ORRIs") owed by SEC for revenue generated in January and February in the combined amount of $1,853,228.56.

31. No party who has filed an Objection to the Oil and Gas Motion has objected to the payment of RIs and ORRIs. Payment of these interests is necessary to the preservation of the oil and gas leases held by Sklarco, and non-payment or a delay in the payment of these amounts would result in irreparable harm to the Debtors' estates.

32. The Interim Oil and Gas Order further contemplates setting a final hearing on the Oil and Gas Motion in connection with the final hearing on the Cash Collateral Motion to address issues related to setoffs or recoupment and payment of working interest holders.

33. The Interim Oil and Gas Order has been agreed to by EWB. The Committee is still in internal discussions regarding the Interim Oil and Gas Order and the Oil and Gas Motion. The working interest holders almost universally oppose the entry of the Interim Oil and Gas Order, largely on the basis that the Interim Oil and Gas Order does not propose payment to the working interest holders.

34. Given that the issues related to payment of working interest holders and the Debtors request to setoff certain amounts on a post-petition basis, the Debtors assert that setting these

matters in connection with a final hearing on the use of cash collateral will result in an efficient use of estate resources, and is in the best interests of the Debtors and their estates.

DATED: April 24, 2020                                    Respectfully submitted,

By: __/s/ Keri L. Riley___
Lee M. Kutner, # 10966
Keri L. Riley, #47605
**KUTNER BRINEN, P.C.**
1660 Lincoln Street, Suite 1850
Denver, CO 80264
Telephone: (303) 832-2400
E-mail: lmk@kutnerlaw.com
E-mail: klr@kutnerlaw.com

Exhibit A

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC ) | |
| EIN: 72-1417930 ) | Chapter 11 |
| ) | |
|   Debtor. ) | |
| ) | |
| ) | |
| ) | Case No. 20-12380-EEB |
| SKLARCO, LLC ) | |
| EIN: 72-1425432 ) | Chapter 11 |
|   Debtor. ) | |

**SECOND INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL**

UPON CONSIDERATION of the Motion of the Debtors and Debtors in Possession for entry of an order authorizing the use of cash collateral on an interim basis ("Motion") and setting a final hearing, and any additional papers filed in opposition thereto and in further support thereof; and having heard the arguments of counsel, if any; and having considered any evidence presented; and due and proper notice of the Motion having been provided; and for good cause shown, the Court finds and concludes as follows:

    A.    On April 1, 2020 (the "Petition Date"), Sklar Exploration Company, LLC ("SEC") and Sklarco, LLC ("Sklarco") (collectively "Debtors") filed respective voluntary petitions for relief under chapter 11, thereby commencing their chapter 11 cases, which are being jointly administered.

    B.    On April 16, 2020, the United States Trustee appointed the Official Committee of Unsecured Creditors of Sklar Exploration Company, LLC (the "Committee").

    C.    East West Bank, a California state banking corporation ("EWB"), as lender and the administrative agent under the applicable loan and security documents, asserts a secured claim in this case pursuant to a loan made to the Debtors (the "Loan") on or about June 15, 2018.

601950523.2

D.  EWB asserts a secured claim for the Debtors' outstanding indebtedness to EWB on the Loan, which as of the Petition Date exceeded $22,925,000 (the "Prepetition Indebtedness"), secured by first-priority liens in favor of EWB in substantially all of the Debtors' real and personal property assets. In addition, EWB asserts liens on all of the Debtors' cash on hand, revenue, cash proceeds and other cash equivalents, and all cash and cash equivalent proceeds of other collateral (collectively, the "Cash Collateral").

E.  Additional parties, including certain working interest holders, mechanics, materialmen, or mineral lien claimants who filed objections or responses to the Motion or appeared at the hearing held April 9, 2020 ("Objecting Parties"), also assert secured interests or other legal or equitable interests in the Debtor's funds and proceeds which may or may not constitute Cash Collateral. For the avoidance of doubt, the Objecting Parties include, but are not limited to, Strago Petroleum Corp, Meritage Energy, Ltd., FPCC USA, Inc., Tauber Exploration & Production Company, CTM 2005, Ltd., Pickens Financial Group, LLC, I & L Miss I, LP, Lucas Petroleum Group, Inc., Pruet Production Co. and Pruet Oil Company, LLC, Alabama Oil Company, LLC, Apple River Investments, LLC, Kudzu Oil Properties, LLC, Anderson Exploration Energy Company, L.C., TCP Cottonwood, L.P., AEEC II, LLC, Stoneham Drilling Corporation, and any other working interest holder who provides notice of their Objection or intent to object to counsel for the Debtors.

F.  On April 15, 2020, the Court entered an Interim Order Authorizing Use of Cash Collateral through and including April 27, 2020.

**IT IS HEREBY ORDERED THAT:**

1.  The Motion is hereby granted on an interim basis as provided in this Order.

2.  The Debtors are hereby authorized to use the Cash Collateral only to pay the post-petition operating expenses of the Debtors as set forth on the Budget for the second interim period from April 27, 2020 through and including May 8, 2020 attached hereto (the "Budget") and for no other purpose without the prior written consent of EWB, the Committee and the Objecting Parties.

601950523.2

With respect to all budgeted expenses, EWB consents to a variance not to exceed 20% of each line-item expense; provided, however, the Debtor shall not exceed 5% of the cumulative amount of all line-item expenses for any budgeted period without the prior consent of EWB or an order of the Court; provided that, the Debtors shall provide notice to the Committee and the Objecting Parties (within one business day) in the event that such consent is provided by EWB. For the avoidance of a doubt, notwithstanding any line item in the budget, the Debtors may only use Cash Collateral for the payment of post-petition expenses unless otherwise authorized by the Bankruptcy Court.

3. The funds in an account of either Debtor shall retain their ownership as to the individual Debtor who provided such funds into the account and/or any applicable third party that may claim ownership to such funds under applicable non-bankruptcy law. An accounting of such funds shall be available to creditors on a monthly basis and earlier upon reasonable request by a creditor. SEC shall be responsible for maintaining a current and contemporaneous record of all funds collected and disbursed for the Debtors or non-debtor third parties.

4. Any overriding royalty interests and/or working interests owed to Sklarco, LLC from Sklar Exploration Company, LLC, shall be maintained by Sklar Exploration Company for use in ongoing operations.

5. The Debtors' authorization to use the Cash Collateral in accordance with the terms of this Order will remain in effect through the date of the final hearing on the Motion.

6. Notwithstanding Bankruptcy Code § 552, as additional adequate protection of the interests of EWB and any other party claiming an interest in the Cash Collateral (collectively "Secured Creditors"), EWB, the Objecting Parties, and any other Secured Creditors shall have, and are hereby granted, replacement liens on all existing and hereafter acquired property and assets of the Debtors of every kind and character, to the extent (if any) and in the same validity, priority, and enforceability that they held a lien (including valid and non-avoidable liens in existence at the time of the Petition Date that are perfected subsequent thereto as permitted by section 546(b) of

the Bankruptcy Code) in such kind and character of property and assets of the Debtors as of the Petition Date (the "Replacement Liens"). The Replacement Liens shall secure EWB, the Objecting Parties, and any other Secured Creditors to the extent necessary to adequately protect them from any diminution in value of their interests in property of the Debtors' estates as a result of the entry of this Order and the use of Cash Collateral authorized hereby, and shall have the same validity, priority, and enforceability as their liens on the Debtors' assets as of the Petition Date.

7.  The Debtors shall keep EWB's, the Objecting Parties', and any other Secured Creditor's collateral insured to the same extent it was insured on a pre-petition basis, and shall maintain and preserve the operation of all such collateral.

8.  The Debtors shall make available to EWB, any other Secured Creditors, and the Committee, their counsel, and consultants, upon reasonable request, the Debtors' books and records and other financial information. The Debtors shall also provide to EWB, any other Secured Creditors, and the Committee a budgeted-versus-actual rolling cash flow report on a weekly basis during the budget periods covered by this Order, provided however that per-line item and overall variances will be evaluated on a monthly basis.

9.  Nothing in this Order shall constitute a finding that EWB's, the Objecting Parties', or any other Secured Creditor's interests are adequately protected, nor a determination of the validity, priority, or extent of any lien asserted by EWB, the Objection Parties, or any other Secured Creditor. The parties' rights are fully preserved with respect to such issues.

10. Nothing in this Order shall impair, limit, or modify the application of Section 507(b) of the Bankruptcy Code in the event that the adequate protection provided hereunder to EWB or other Secured Creditors is insufficient to compensate for any adequate protection obligations arising during these chapter 11 cases or any other subsequent cases or proceedings under the Bankruptcy Code, including, without limitation, any Chapter 7 case or proceeding.

11. To the extent the Debtors are holding any funds provided by working interest holders for cash call advances, the Debtors shall retain and account for such funds to such working

interest holders. The Debtors assert that they do not believe they are holding any funds attributable to cash call advances at this time and will investigate this point further prior to the final hearing.

12. Nothing in the Motion or this Order shall in any way limits any party's right to object to the use of cash collateral, the funds or proceeds asserted to constitute cash collateral, or the ownership of such funds for purposes of this interim order, on a final basis.

13. A final hearing on the Debtors' Motion is set for __:_0_ .m. on May __, 2020. Objections to the Debtors' use of cash collateral on a final basis shall be filed no later than seven (7) days prior to the hearing, on or before May __, 2020. If there are disputed facts requiring an evidentiary hearing, parties shall file lists of witnesses and exhibits no later than five (5) days prior to the hearing, on or before May ___, 2020.

14. The Debtors' interim use of cash collateral may be extended from week to week by written agreement of EWB, and upon three days written notice by e-mail the Committee and Objecting Parties to allow for any necessary notice procedures for further adequate protection provided to Secured Creditors. In the event the interim use of cash collateral is extended, the Debtors shall provide a summary of any proposed payments to the holders of royalty interests, overriding royalty interests, and working interests to EWB, the Committee, and the Objecting Parties prior to payment of such amounts, and any such payments shall be subject to a variance of no more than 3%.

Dated: April ____, 2020

                                                                          _____
                                                                          Honorable Elizabeth E. Brown
                                                                          United States Bankruptcy Judge

**SKLAR EXPLORATION COMPANY LLC and SKLARCO LLC**
**BUDGET**

|  | Original budget | | | Second Interim Budget | |
|---|---|---|---|---|---|
|  | Week ending | | | | |
|  | 10-Apr | 17-Apr | 24-Apr | 1-May | 8-May |

**CASH RECEIPTS**

*Sklar operated oil production volume estimate (8/8ths BBL)*
*Oil price estimate*

*Sklar operated gas production volume estimate (8/8ths MCF)*
*Gas price estimate*

| | | | | | |
|---|---|---|---|---|---|
| **Operated properties [1]** | | | | | |
| Oil | | | 2,714,652 | | |
| Gas | | | | 502,104 | |
| **Non-operated properties - Sklarco Revenue** | | | | 184,200 | |
| Alabama gas plant management fees | | | | | |
| **Hedge settlements** | 173,495 | | | | 267,500 |
| **CASH RECEIPTS** | 173,495 | - | 2,714,652 | 686,304 | 267,500 |

**CASH DISBURSEMENTS**

*January and February RI and (...)*

| | | | | | |
|---|---|---|---|---|---|
| **Revenue payable to others [2]** | | | | 1,853,229 | |
| **Severance tax** | | | | | |
| **Lease operating expenses (gross) for operated properties** | | | | | |
| Contract pumpers | 3,640 | 3,640 | 3,640 | 3,640 | 3,640 |
| Compression rentals and maintenance | 25,279 | 25,279 | 25,279 | 25,279 | 25,279 |
| Saltwater disposal | 16,256 | 16,256 | 16,256 | 16,256 | 16,256 |
| Electrical service and supply | 1,176 | 1,176 | 1,176 | 1,176 | 1,176 |
| Oilfield supply | 747 | 747 | 747 | 747 | 747 |
| Artificial lift | 404 | 404 | 404 | 404 | 404 |
| RTU - remote monitoring | 1,054 | 1,054 | 1,054 | 1,054 | 1,054 |
| Gas measurement - meter calibration and lab | 735 | 735 | 735 | 735 | 735 |
| Safety systems - testing and repairs | 674 | 674 | 674 | 674 | 674 |
| Fuel and power - | | | | | |
|     Southern Propane Supplies | 1,715 | 1,715 | 1,715 | 1,715 | 1,715 |
|     Thompson Gas | 466 | 466 | 466 | 466 | 466 |
|     Mc Phereson Lubes | 502 | 502 | 502 | 502 | 502 |
|     Herring Gas Company, Inc | 172 | 172 | 172 | 172 | 172 |
|     Southern Pine Electric | | 185,850 | | | |
|     Escambia River Electric, Inc. | 8,085 | | | | 8,085 |
|     Yazoo Valley Electric | | | 3,518 | | |
|     Mississippi Power | | | | 11,188 | |
| Chemicals | 2,916 | 2,916 | 2,916 | 2,916 | 2,916 |
| Construction | 490 | 490 | 490 | 490 | 490 |
| Environmental services | 200 | 200 | 200 | 200 | 200 |
| Slickline services / jet pump support | 257 | 257 | 257 | 257 | 257 |
| Engineering services | 368 | 368 | 368 | 368 | 368 |
| Tubulars and inspections | 49 | 49 | 49 | 49 | 49 |
| Insurance | | | | 47,851 | |
| Gas plant payroll | | | | | |
| Gas plant operating costs | 29,840 | 29,840 | 29,840 | 29,840 | 29,840 |
| **Reimbursement of operated property LOE from other WI owners** | (71,267) | (204,591) | (67,842) | (109,483) | (71,267) |
| **Lease operating expenses for non-operated properties - Sklarco Current JIBS** | 17,940 | 17,940 | 17,940 | 17,940 | 17,940 |
| **Transportation (truck pmts to Ford)** | 3,408 | | 5,143 | 2,450 | |
| **General and administrative** | | | | | |
| Outsourced IT support and general computer exp (eg, Wolfepak) | | | 4,849 | 3,320 | |
| Agency service fees | (15,000) | | | | (15,000) |
| Employee salaries and payroll taxes, exclusive of gas plant employees (see above) | | 157,680 | | 157,680 | |
| Employee portion of 401k | | | 9,000 | | 9,000 |
| CEO salary | | | | 25,000 | |
| Employee benefits - | | | | | |
|     UHC Health insurance | | | | 60,383 | |
|     Life insurance | | | | 13,338 | |
|     ST/LT Disability | | | | 1,550 | |
| Payroll processing fees | | 800 | | | |
| PTO payout for laid off employees | | | | 4,266 | |
| Misc. insurance | | | | 3,974 | |
| Sales and use tax | | | 700 | | |
| Outsourced preparation of sales and use tax | | | | 6,173 | |
| External reserve engineers | | 24,530 | | | |
| SCADA systems license fees | | | 8,713 | | |

| | | | | | |
|---|---:|---:|---:|---:|---:|
| Geology and production system license fees | | | | 71,294 | |
| Web mapping license fees (Tobin) | | 70,920 | | | |
| Office rent - | | | | | |
|     Boulder | | | | 43,137 | |
|     Shreveport | | | | 6,920 | |
|     Bretwon, AL | | | | 1,800 | |
| Boulder office / Redwave sublease income | | | | | (8,372) |
| Parking expense (Shreveport) | | | | 900 | |
| Outsourced gas plant settlement accounting fees | | 18,844 | | | |
| Fuel and mileage | | | 6,000 | | |
| Copier and postage rental and usage | | 4,500 | | | |
| Cell phones | | | 2,900 | | |
| Office utilities and maintenance | | | | 2,765 | |
| Bank - letter of credit fees | | | | 3,500 | |
| Bank - misc charges | | | | 1,660 | |
| Bank interest | | | | | |
| Legal fees - Sklar's counsel | | | | | |
| Legal fees - creditors' counsel incl. bank | | | | | |
| Critical vendors (pre-petition debts) | | | | | |
| Trustee disbursement fees | | | | | |
| Cash collateralize letters of credit for P&A bonds | | | | | |
| Property tax | | | | | |
| Escheat to various states | | | | | |
| General and misc office expenses | 8,500 | 8,500 | 8,500 | 8,500 | 8,500 |
| Controller - CO apt, travel and moving exp reimbursement | 2,875 | | | 4,109 | 2,513 |
| **COPAS reimbursement - Sklar Exploration** | (46,989) | (46,989) | (46,989) | (46,989) | (46,989) |
| **CASH DISBURSEMENTS** | **(5,510)** | **324,922** | **39,370** | **2,283,393** | **(8,652)** |
| **NET CASH FLOW** | **179,005** | **(324,922)** | **2,675,282** | **(1,597,089)** | **276,152** |
| **BEGINNING CASH BALANCE** | **3,439,756** | **3,618,761** | **3,293,839** | **5,969,121** | **4,372,033** |
| **ENDING CASH BALANCE** | **3,618,761** | **3,293,839** | **5,969,121** | **4,372,033** | **4,648,185** |

Exhibit B

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC ) | |
| EIN: 72-1417930 ) | Chapter 11 |
| ) | |
| Debtor. ) | |
| ) | |
| _____) | |
| ) | Case No. 20-12380-EEB |
| SKLARCO, LLC ) | |
| EIN: 72-1425432 ) | Chapter 11 |
| Debtor. ) | |

**INTERIM ORDER AUTHORIZING PAYMENT OF OVERRIDING ROYALTY
AND ROYALTY INTEREST OBLIGATIONS**

THIS MATTER comes before the Court on the Debtors' Motion to: 1) Honor and Pay Overriding Royalty, Royalty, and Working Interest Obligations; and 2) Offset Joint Interest Billing Obligation ("Motion"), notice having been provided, the Court having reviewed the Objections and the arguments of counsel, if any, the Court having reviewed the Motion and finding good cause for granting the requested relief, does hereby

**ORDER THAT:**

1. The Motion is GRANTED in part;

2. The Debtors are authorized, but not directed, to honor and pay, in their sole discretion, revenue payments owed to the non-insider holders of overriding royalty interests and royalty interests in the total amount of $1,853,228.56, comprised of royalty and overriding royalty amounts due and payable to the holders of such interests from revenue generated in January and February 2020, and may continue to pay overriding royalty interests and royalty interests on an ongoing basis in the ordinary course of business;

3. Any overriding royalty interests and/or working interests owed to Sklarco, LLC from Sklar Exploration Company, LLC, shall be maintained by Sklar Exploration Company for use in ongoing operations;

4. Notwithstanding the relief granted in this Interim Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to the applicable order authorizing use of cash collateral;

5. With respect to the accounts on which checks are drawn or electronic payment requests are made in payment of the obligations approved herein, East West Bank is authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and is authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

6. To the extent any party accepts payment under this Interim Order, and the Debtors' interests in such payment subsequently are recharacterized or otherwise determined by the Court, after due and proper notice and a hearing, to constitute property of the Debtors' estates, the Debtors are authorized, but not directed, to take any action necessary, including without limitation the commencement of an adversary proceeding, to avoid and recover such payment as a post-petition transfer under section 549 of the Bankruptcy Code; and

7. A final hearing on the Motion to consider the remaining relief requested, including the payment of pre-petition amounts owed to working interest holders and the Debtors' request for authorization to offset certain amounts, is set for __:_0_.m. on _____ ____, 2020.

Done and entered this _____ day of _____, 2020 at Denver, Colorado.

_____
Honorable Elizabeth E. Brown
United States Bankruptcy Judge