UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC | ) | |
| EIN: 721417930 | ) | Chapter 11 |
|     Debtor. | ) | |
| _____ | ) | |
| | ) | |
| SKLARCO, LLC | ) | Case No. 20-12380-EEB |
| EIN:  72-1425432 | ) | |
|     Debtor. | ) | Chapter 11 |

**STRAGO GROUP'S MOTION FOR ORDER DIRECTING DEBTOR SKLAR
EXPLORATION COMPANY, LLC TO
<u>ASSUME OR REJECT EXECUTORY CONTRACT</u>**

Strago Petroleum Corporation ("Strago"), Meritage Energy Limited ("Meritage"), Gateway Exploration LLC ("Gateway"), GCREW Properties, LLC ("GCREW") and Harvest Gas Management, LLC ("Harvest") (collectively referred to herein as (the "Strago Group") files this Motion for Order Directing Debtor Sklar Exploration Company LLC  to Assume or Reject Executory Contract under 11 U.S.C. §365 *et. seq* and Bankruptcy Rule 6006 and would show the Court as follows:

**I.     Summary of Motion**

1.     The Strago Group asks this Court to order Sklar Exploration Company, LLC ("<u>**SEC**</u>") to assume or reject the joint operating agreement ("JOA" defined below) which is currently in default.  The Strago Group believes that it is in the best interest of the estate for SEC to assume the JOA.  The JOA obligated SEC to commence drilling operations by April 1, 2020.  SEC has collected significant cash call advances from the Strago Group and

1

other working interest owners (other than Debtor Sklarco) to drill the well and has also spent approximately $250,000 associated with preparing to drill. But SEC has not commenced drilling operations under the JOA. The specific lease underlying the well that SEC is obligated to drill expires on May 20, 2020 if drilling operations are not commenced before that date. Obviously, if the lease expires, neither the Debtors nor the other working interest owners under the JOA will be able to benefit from the potential revenues attributable to that well. Additionally, if the lease expires, the Strago Parties (defined below), who are the lessees on such lease, will lose a valuable asset. If SEC rejects the JOA, then the working interest owners must appoint a replacement operator to commence drilling operations immediately. Thus, an immediate decision on assumption or rejection is necessary.

## II.    Jurisdiction and Venue

2.    On April 1, 2020 (the "Petition Date"), Debtors filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Colorado.

3.    This Court has jurisdiction of this matter under 28 U.S.C. §§ 157 and 1334. Venue of this matter is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b).

4.    No trustee has been appointed in this case and the Debtors are operating their businesses as debtors in possession pursuant to 11 U.S.C. §1107 of the Bankruptcy Code.

2

III.    **Factual Background**

    A.    **The Strago Group, Sklarco and other working interest owners enter into a joint operating agreement.**

5.    Beginning in 2018 and through 2019, Strago entered into approximately 31 oil and gas leases, covering lands, generally, in Conecuh County, Alabama.[1]  Similarly, beginning in 2017 through 2019, Sklarco entered into approximately 27 oil and gas leases covering lands, generally, in Conecuh County, Alabama.[2]  After the execution of such leases, Strago and Sklarco, separately, entered into various agreements whereby they assigned certain portions of their interests in the leases to third parties.[3]

6.    Effective December 15, 2019, Sklarco (and its assignees), SEC, Strago (and its assignees) entered into an Amended and Restated Model Form Operating Agreement (the "JOA").[4]  In or around February 2020, the parties to the JOA executed a Recording Supplement to the Operating Agreement and Financing Statement.[5] (the "Recording Supplement").  Unless noted otherwise, the JOA and Recording Supplement may be collectively referred to herein as the JOA.

7.    Through the JOA, a drilling unit was created which is generally referred to as the Contract Area.[6]  The working interest owners were generally referred to as the

---

[1] *See* Exhibit 1 at Exhibit A-1 and Exhibit 2 at Exhibit A-1
[2] *See* Exhibit 1  at Exhibit A-1 and Exhibit 2 at Exhibit A-1
[3] 3 *See* Exhibit 1 at Exhibit A, (3) a & (3)b and Exhibit 2 at Exhibit A, (3) a & b.
[4] *See* Exhibit 1.
[5] *See* Exhibit 2.  Exhibit 2, p. 4 says that it is effective November 1, 2017.  Considering the fact that the JOA, which is referenced therein was effective December 2019 and the fact that the majority of the underlying leases were not acquired until after November 2017, the Strago Group believes that the November 1, 2017 date is a misprint.
[6] *See* Exhibit 1 at Exhibit A-2 and Exhibit 2 at Exhibit A-2.

Sklar Parties and the Strago Parties.[7]  The Sklar Parties owned a 50% gross working interests in the Contract Area and the Strago Parties owned the other 50% gross working interest in the Contract Area.  The JOA designated SEC as the operator.[8]  To put it simply, the Sklar Parties and Strago Parties contributed their respective leases and granted SEC the right to act as the operator to explore and develop wells within the Contract Area during the term of the JOA.  Each party to the JOA agreed to contribute its proportionate share of the drilling and exploration costs in exchange for the right to receive its proportionate share of the proceeds from such drilling activities.  However, under the JOA, each party retains its respective interests in the leases it acquired and neither party assigned any of its interests in the leases to the other parties.[9]

    **B.**    **The Strago Group pays cash call advances to SEC for the drilling of the initial well.**

    8.    Article VI of the JOA sets for the obligation of SEC to drill what is referred to as the "Initial Well."[10]  The JOA obligated SEC to commence drilling operations on the Initial Well on or before April 1, 2020.[11]  Consistent with its obligation to drill the Initial Well, on or about December 17, 2019,  SEC sent the working interest owners a request for a "Cash Call" for an advancement of the costs associated with the drilling of the Initial Well (referred to herein as the "Cash Call Advance"). The total Cash Call Advance was $1,953,700.[12]  All parties to the JOA, other than Sklarko, paid their respective share of the

---

[7] *See* Exhibit 1 at Exhibit A(3)a & b and Exhibit 2 at Exhibit A(3) a&b.
[8] *See* Exhibit 1, p. 1 & p. 4 at Article V.
[9] *See* Exhibit 1 at p. 2 Art. III B.
[10] *See* Exhibit 1 at p. 4 Art. VI A. The "Initial Well" is also referred to as the Myrtice Ellis #1 Well.
[11] *Id.*
[12] *See* Exhibit 3

Cash Call Advance.[13]  The Strago Group paid SEC $939,410.09 for its share of the Cash

Call Advance.[14]   Sklarco's unpaid share of the Cash Call Advance is $328,445.70.[15]

9.      In conjunction with receiving the Cash Call Advance, SEC began expending

those funds in connection with the Initial Well.  Pre-petition, SEC spent approximately

$250,000 of the Cash Call Advance on activities associated with the Initial Well.  On a

monthly basis, SEC would notify the working interest owners of the funds expended and

identify the credit to each working interest owners' Cash Call Advance.

10.      As the April 1, 2020 deadline approached, it appeared that SEC was not

positioned to commence drilling operations consistent with its obligations under the JOA.

Despite significant efforts by the Strago to force SEC to move faster in order to meet the

April 1, 2020 deadline, SEC continued to drag its feet.  Rather than commence drilling

operations by the April 1, 2020 deadline, SEC filed this bankruptcy proceeding.

11.      The Initial Well was set to be drilled on one of the Strago Leases.

Specifically, the lease is referred to herein as the Ellis Lease and is attached as Exhibit 4.

The Ellis Lease is dated November 20, 2018 and had a primary term of three months with

an option to extend for one year.[16]  The one-year option was exercised.  Subsequently, the

lessor agreed for an additional three-month extension of the primary term which moved

---

[13] *See* Exhibit 3
[14] *See* Exhibit 3
[15] The Strago Group as well as other working interest owners have filed objections to the use of cash collateral and in such objections have argued, *inter alia,* that the cash call advances are not property of the estate and/or that they have a security interest in such funds.  Nothing in this motion should be construed as an abandonment or modification of those objections.
[16] *See* Exhibit 4

the expiration date to May 20, 2020.[17]   Neither Sklarco nor SEC are parties to the Ellis

Lease.   If oil and gas operations are not commenced by May 20, 2020, the Ellis Lease will

expire by its own terms.[18]

## IV.   Arguments and Authorities

12.   Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to

the court's approval, may assume or reject any executory contract or unexpired lease." 11

U.S.C. § 365(a).   In addition, Section 365(d)(2) provides that the court, on request of a

party to a contract, may order the trustee to determine, within a specified period of time,

whether to assume or reject and executory contract.

### A.   The JOA is an executory contract subject to assumption or rejection.

13.   The first determination to be made in order to grant relief under 11 U.S.C.

§365 is a determination that the contract at issue is an executory contract.   The Bankruptcy

Code does not define "executory contract."   Generally, a contract is executory for

purposes of §365(a) when each party to the contract has ongoing duties and obligations

such that the contract remains materially unperformed on both sides.   *In re Wagers,* 340

B.R. 391 409 (Bankr. D.Kan. 2006) (citing Collier on Bankruptcy ¶365.02[1]), s*ee also In re*

*Busetta-Silvia,* 308 B.R. 537, 540 (Bankr.D.N.M. 2004), *rev'd on other grounds,* 314 B.R. 218

(10th Cir. BAP 2004) (noting that the Tenth Circuit has defined "executory contract"

generally as "a contract that has not as yet been fully completed or preformed [sic.] and

in which future obligations remain, or in which material performance remains due on

---

[17] *See* Exhibit 4
[18] *See* Exhibit 4

both sides.")(citing *United States v. Myers (In re Myers)*, 362 F.3d 667, 672-73 (10th Cir.2004)(citations omitted.)); *In re Botter,* 261 B.R. 269, (Bankr.D.Kan. 2000) (noting that"[c]ourts typically rely on Professor Countryman's more detailed definition: 'A contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other.'")(quoting Countryman, *Executory Contracts in Bankruptcy*, 57 Minn. L.Rev. 439, 446 (1973)(remaining citations omitted).

14.     The JOA fits squarely within the definition of an executory contract.  The JOA was effective December 2019 and the parties respective obligations have only just begun.  As set forth above, while SEC is currently in default of the JOA it retained the Cash Call Advance, spent monies associated with the Initial Well and is still obligated to drill the Initial Well.  If the Initial Well is drilled, the working interest owners would be obligated to pay any additional drilling costs above the Cash Call Advance, if any.  Outside the Initial Well, the JOA allows any party to propose drilling of subsequent wells in the Contract Area.

### B.     The Court should order assumption or rejection as soon as possible in order to avoid loss of the value of the lease and loss of value of the underlying production.

15.     In determining what constitutes a reasonable time within which a debtor should assume or reject an executory contract, the court should consider: (i) whether debtor is paying or performing under the contract; (ii) whether the debtor's nonperformance could damage the non-debtor party beyond compensation available

under the Bankruptcy Code; (iii) whether the contract is the debtor's primary asset; and (iv) whether debtor has had sufficient time to formulate a plan. *See In re Burger Boys*, *Inc.* 94 F.3d 755, 761 (2d Cir.1996). The reasonableness of the specified time period is within the court's discretion and depends upon the facts and circumstances of a particular case.

16.     In this case, to the Strago Group's knowledge, SEC is not currently performing under the JOA as it is not currently taking any actions to commence drilling the Initial Well; even though SEC incurred approximately $250,000 in costs pre-petition associated with the Initial Well. There is no indication at this point whether SEC intends on commencing drilling operations on the Initial Well. As set forth above, if SEC does not commence drilling operations on the Initial Well, the Strago Parties will lose its interests in the Ellis Lease, which will cause economic damages to the Strago Parties. Further, if drilling is not commenced, the working interest owners will lose the opportunity to recover proceeds from drilling on the Ellis Lease. Finally, SEC has had sufficient time pre-petition and post-petition to determine whether it believes that drilling the Initial Well be of economic benefit to the estate. Presumptively, because it collected the Cash Call Advances and began expending those sums pre-petition, the Debtors believed that drilling the Initial Well would be beneficial and result in additional revenues to the estate. The Strago Group believes that it would be in the best interest of the Debtors to commence drilling the Initial Well.

17.     Section V B of the JOA provides that if the operator (SEC) is no longer capable of serving as the operator, then the operator will have deemed to have resigned as operator. If the SEC decides to reject the JOA, then, in effect, SEC is no longer capable

of serving as operator and will have resigned.  Under the JOA, the working interest owners will then be permitted to name a replacement operator so that such replacement operator can commence drilling operations by the May 20, 2020 deadline.  If SEC decides to reject the JOA, then the Strago Group, if necessary, and only out of an abundance of caution, may ask the Court for relief from the automatic stay to allow the other working interest parties to appoint a successor operator in accordance with the terms of the JOA.

## CONCLUSION AND PRAYER

For the reasons stated herein, the Strago Group asks that this Court enter an order directing the SEC to assume or reject the JOA as soon as possible to avoid losing a valuable asset and causing irreparable harm to the Strago Group and other working interest owners.

Date: April 30, 2020.

Respectfully submitted,

BUCK KEENAN LLP

By: ___/s/ Robert L. Paddock_____
     ROBERT L. PADDOCK
     State Bar No.:  24002723
     2229 San Felipe, Suite 1000
     Houston, Texas 77019
     Telephone: (713) 225-4500
     Facsimile:  (713) 225-3719
     rpaddock@buckkeenan.com

ATTORNEY FOR STRAGO PETROLEUM CORPORATION, MERITAGE ENERGY, LTD., GATEWAY EXPLORATION, LLC, GCREW PROPERTIES, LLC AND HARVEST GAS MANAGEMENT, LLC

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument has been forwarded to all known counsel of record via CM/ECF filing and in compliance with the Federal Rules of Civil Procedure, on the 30th day of April, 2020.

     /s/ Robert L. Paddock_____
     ROBERT L. PADDOCK