# OIL, GAS AND MINERAL LEASE

THIS AGREEMENT made to be effective the 20th day of November 2018, by and between, Myrtice W. Ellis, whose address is 212 Hwy. 31, Castleberry, AL 36432, as Lessor, and **Strago Petroleum Corporation**, whose address is 3209 Hamm Road, Pearland, Texas 77581, as Lessee, WITNESSETH:

1. Lessor, in consideration of TEN Dollars ($10.00) & Other Valuable Consideration, the receipt and sufficiency of which is hereby acknowledged, and the covenants and agreements of lessee hereinafter contained, does hereby grant, lease and let unto lessee the land covered hereby for the purposes and with the exclusive right of exploring, drilling, mining and operating for, producing and owning oil, gas, sulphur and all other minerals (whether or not similar to those mentioned), together with the right to re-enter or use old well bores, make surveys on said land, lay pipe lines, establish and utilize facilities for surface or subsurface disposal of salt water, construct roads and bridges, dig canals, build tanks, power stations, power lines, telephone lines, and other structures on said land, necessary or useful in lessee's operations in exploring, drilling for, producing, treating, storing and transporting minerals produced from the land covered hereby or any other land adjacent thereto. No living quarters shall be constructed on any portion of the described lands. The land covered hereby, herein called "said land," is located in the County of **Conecuh**, State of **Alabama**, and is described as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF FOR A DESCRIPTION OF THE LANDS LEASED AND FOR ADDITIONAL PROVISIONS**

The royalties on all minerals produced and marketed, including Sulphur, shall be twenty-two and one half percent (22.50%) in place of the stated amounts and fractions below. *operations are not commenced*   *MWE 12-30-19*

AP  If ~~a well is not drilled~~ within one year of the extended primary term this lease shall be null and void.

For the purpose of determining the amount of any bonus or shut-in royalty payment hereunder, said land shall be deemed to contain **168** acres, whether actually containing more or less, and the above recital of acreage in any tract shall be deemed to be the true acreage thereof. Lessor accepts the bonus as lump sum consideration for this lease and all rights, and options hereunder.

2. Unless sooner terminated or longer kept in force under other provisions hereof, this lease shall remain in force for a term of **THREE (3) MONTHS** from the effective date hereof, hereinafter called "primary term", and as long thereafter as operations, as hereinafter defined, are conducted upon said land with no cessation for more than ninety (90) consecutive days.

3. As royalty, lessee covenants and agrees: (a) To deliver to the credit of lessor, in the pipe line to which lessee may connect its wells, the equal one-eighth part of all oil produced and saved by lessee from said land, or from time to time, at the option of lessee, to pay lessor the average posted market price of such one-eighth part of such oil at the well as of the day it is run to the pipe line or storage tanks, lessor's interest, in either case, to bear one-eighth of the cost of treating oil to render it marketable pipe line oil; (b) To pay lessor on gas and casinghead gas produced from said land (1) when sold by lessee, one-eighth of the amount realized by lessee, computed at the mouth of the well, or (2) when used by lessee off said land or in the manufacture of gasoline or other products, the market value, at the mouth of the well, of one-eighth of such gas and casinghead gas, lessor's interest, in either case, to bear one-eighth of the cost of treating or processing gas to extract liquids or to render it marketable pipe line gas; (c) To pay lessor on all other minerals mined and marketed or utilized by lessee from said land, one-tenth either in kind or value at the well or mine at lessee's election, except that on sulphur mined and marketed the royalty shall be one dollar ($1.00) per long ton. If, at the expiration of the primary term or at any time or times thereafter, there is any well on said land or on lands with which said land or any portion thereof has been pooled, capable of producing gas or any other mineral covered hereby, and all such wells are shut-in, this lease shall, nevertheless, continue in force as though operations were being conducted on said land for so long as said wells are shut-in, and thereafter this lease may be continued in force as if no shut-in had occurred. Lessee covenants and agrees to use reasonable diligence to produce, utilize, or market the minerals capable of being produced from said wells, but in the exercise of such diligence, lessee shall not be obligated to install or furnish facilities other than well facilities and ordinary lease facilities of flow lines, separator, and lease tank, and shall not be required to settle labor trouble or to market gas upon terms unacceptable to lessee. If, at any time or times after the expiration of the primary term, all such wells are shut-in for a period of ninety consecutive days, and during such time there are no operations on said land, then at or before the expiration of said ninety day period, lessee shall pay or tender by check or draft of lessee, as royalty, a sum equal to one dollar ($1.00) for each acre of land then covered hereby. Lessee shall make like payments or tenders at or before the end of each anniversary of the expiration of said ninety day period if upon such anniversary this lease is being continued in force solely by reason of the provisions of this sub-paragraph. Each such payment or tender shall be made to the parties who at the time of payment would be entitled to receive the royalties which would be paid under this lease if the wells were producing or may be deposited to such parties credit in the **pay directly to the lessor at the above address** bank, or its successors which shall continue as the depositories regardless of changes in ownership of shut-in royalty. If at any time that lessee pays or tenders shut-in royalty, two or more parties are, or claim to be, entitled to receive same, lessee may in lieu of any other method of payment herein provided, pay or tender such shut-in royalty, in the manner above specified, either jointly to such parties or separately to each in accordance with their respective ownerships thereof, as lessee may elect. Any payment hereunder may be made by check or draft of lessee deposited in the mail or delivered to the party entitled to receive payment or to a depository bank provided for above on or before the last date for payment. Nothing herein shall impair lessee's right to release as provided in paragraph 5 hereof. In the event of assignment of this lease in whole or in part, liability for payment hereunder shall rest exclusively on the then owner or owners of this lease, severally as to acreage owned by each.

4. Lessee is hereby granted the right, at its option, to pool or unitize all or any part of said land and of this lease as to any or all minerals or horizons thereunder, with other lands, lease or leases, or portion or portions thereof, or mineral or horizon thereunder,

*[Notary seal: FELICIA CARTER, NOTARY PUBLIC, ALABAMA STATE AT LARGE, Comm. Expires April 8, ____]*   *MWE*

Exhibit 4

so as to establish units containing not more than 160 surface acres plus 10% acreage tolerance; provided, however, a unit may be established or an existing unit may be enlarged to contain not more than 640 acres plus 10% acreage tolerance, if unitized only as to gas or only as to gas and liquid hydrocarbons (condensate) which are not a liquid in the subsurface reservoir. If larger units are permitted or required, under any governmental rule or order, for the drilling or operation of a well at a regular location, for obtaining maximum allowable from any well to be drilled, drilling or already drilled, or for any other lawful purpose, any such unit may be established or enlarged, to conform to the size permitted or required by such governmental order or rule. Lessee shall exercise said option as to each desired unit by either (1) filing a drilling permit application or other application or instrument with the state oil and gas board identifying such unit, provided that any requested permit or amended permit is issued within a reasonable time thereafter, (2) obtaining a force pooling order from the state oil and gas board for a unit including all or a portion of said land, or (3) filing for record in the public office in which this lease is recorded an instrument or plat identifying the unit, whichever shall first occur. Each of said options may be exercised by lessee from time to time, and whether before or after production has been established either on said land or on the portion of said land included in the unit or on other land unitized therewith and any such unit may include any well to be drilled, being drilled or already completed. A unit established hereunder shall be valid and effective for all purposes of this lease even though there may be land or mineral, royalty or leasehold interests in land within the unit which are not pooled or unitized. Any operations conducted on any part of such unitized land shall be considered, for all purposes, except the payment of royalty, operations conducted under this lease. There shall be allocated to the land covered by this lease included in any such unit that proportion of the total production of unitized minerals from wells, in the unit, after deducting any used in lease or unit operations, which the number of surface acres in the land covered by this lease included in the unit bears to the total number of surface acres in the unit. The production so allocated shall be considered for all purposes, including the payment or delivery of royalty, overriding royalty, and any other payments out of production, to be the entire production of unitized minerals from the portion of said land covered hereby and included in such unit in the same manner as though produced from said land under the terms of this lease. The owner of the reversionary estate of any term royalty or mineral estate agrees that the accrual of royalties pursuant to this paragraph or of shut-in royalties from a well on the unit shall satisfy any limitation of term requiring production of oil or gas. The formation of such unit shall not have the effect of changing the ownership of any shut-in production royalty which may become payable under this lease. Neither shall it impair the right of lessee to release from this lease all or any portion of said land, except that lessee may not so release as to lands within a unit while there are operations thereon for unitized minerals unless all pooled leases are released as to lands within the unit. Lessee may dissolve any unit established hereunder by filing for record in the public office where this lease is recorded a declaration to that effect, if at that time no operations are being conducted thereon for unitized minerals or if the unit is reformed by the State Oil and Gas Board of Alabama. Subject to the provisions of this paragraph 4, a unit once established hereunder shall remain in force so long as any lease subject thereto shall remain in force. A unit may be so established, modified, or dissolved during the life of this lease.

5. Lessee may at any time and from time to time execute and deliver to lessor or file for record a release or releases of this lease as to any part or all of said land or of any mineral or horizon thereunder, and thereby be relieved of all obligations as to the released acreage or interest.

6. This is a PAID-UP LEASE. In consideration of the down cash payment, Lessor agrees that Lessee shall not be obligated except as otherwise provided herein, to commence or continue any operations during the primary term. Whenever used in this lease the word "operations" shall mean operations for and any of the following: drilling, testing, completing, reworking, recompleting, deepening, plugging back or repairing of a well in search for or in an endeavor to obtain production of oil, gas, sulphur or other minerals, excavating a mine, or production of oil, gas, sulphur or other mineral, whether or not in paying quantities.

7. Lessee shall have the use, free from royalty of water, other than from lessor's water wells, and of oil and gas produced from said land in all operations hereunder. Lessee shall have the right at any time to remove all machinery and fixtures placed on said land, including the right to draw and remove casing. No well shall be drilled nearer than 200 feet to the house or barn now on said land without the consent of the lessor. Lessee shall pay for damages caused by its operations to growing crops and timber on said land as well as any damage to existing gates, fences, buildings, roads and structures of any type..

8. The rights and estate of any party hereto may be assigned from time to time in whole or in part and as to any mineral or horizon. All of the covenants, obligations, and considerations of this lease shall extend to and be binding upon the parties hereto, their heirs, successors, assigns, and successive assigns. No change or division in the ownership of said land, royalties, or other moneys, or any part thereof, howsoever effected, shall increase the obligations or diminish the rights of lessee, including, but not limited to, the location and drilling of wells and the measurement of production. Notwithstanding any other actual or constructive knowledge or notice thereof of or to lessee, its successors or assigns, no change or division in the ownership of said land or of the royalties, or other moneys, or the right to receive the same, howsoever effected, shall be binding upon the then record owner of this lease until thirty (30) days after there has been furnished to such record owner at his or its principal place of business by lessor or lessor's heirs, successors, or assigns, notice of such change or division, supported by either originals or duly certified copies of the instruments which have been properly filed for record and which evidence such change or division, and of such court records and proceedings, transcripts, or other documents as shall be necessary in the opinion of such record owner to establish the validity of such change or division. If any such change in ownership occurs by reason of the death of the owner, lessee may, nevertheless, pay or tender such royalties, or other moneys, or part thereof, to the credit of the decedent in a depository bank or at the address provided for above.

9. In the event lessor considers that lessee has not complied with all its obligations hereunder, both express and implied, lessor shall notify lessee in writing, setting out specifically in what respects lessee has breached this contract. Lessee shall then have sixty (60) days after receipt of said notice within which to meet or commence to meet all or any part of the breaches alleged by lessor. The service of said notice shall be precedent to the bringing of any action by lessor on said lease for any cause, and no such action shall be brought until the lapse of sixty (60) days after service of such notice on lessee. Neither the service of said notice nor the doing of any acts by lessee aimed to meet all or any of the alleged breaches shall be deemed an admission or presumption that lessee has failed to perform all its obligations hereunder. Should it be asserted in any notice given to the lessee under the provisions of this paragraph that lessee has failed to comply with any implied obligation or covenant hereof, this lease shall not be subject to cancellation for any such cause except after final judicial ascertainment that such failure exists and lessee has then been afforded a reasonable time to prevent cancellation by complying with and discharging its obligations as to which lessee has been judicially determined to be in default. If this lease is cancelled for any cause, it shall nevertheless remain in force and effect as to (1) sufficient acreage around each well as to which there are operations to constitute a drilling or maximum allowable unit under applicable government regulations (but in no event less than forty acres), such acreage to be designated by lessee as nearly as practicable in the form of a square centered at the well, or in such shape as then existing spacing rules permit or require; and (2) any part of said land included in a pooled unit on which there are such operations, lessee shall also have such easements on said land as are necessary to operations on the acreage so retained.

10. Lessor hereby warrants and agrees to defend title to said land against the claims of all persons whomsoever. Lessor's rights and interests hereunder shall be charged primarily with any mortgages, taxes or other liens, or interest and other charges on said land, but lessor agrees that lessee shall have the right at any time to pay or reduce same for lessor, either before or after maturity, and be subrogate to the rights of the holder thereof and to deduct amounts so paid from royalties or other payments payable or which may become payable to lessor and/or assigns under this lease. Lessee is hereby given the right to acquire for its own benefit, deeds, leases, or assignments covering any interest or claim in said land which lessee or any other party contends is outstanding and not covered hereby and even though such outstanding interest or claim be invalid or adverse to lessor. If this lease covers a less interest in the oil, gas, sulphur, or other minerals in all or any part of said land than the entire and undivided fee simple estate (whether lessor's interest is herein specified or not), or no interest therein, then the royalties, and other moneys accruing from any part as to which this lease covers less than such full interest, shall be paid only in the proportion which the interest therein, if any, covered by this lease, bears to the whole and undivided fee simple estate therein. All royalty interest covered by this lease (whether or not owned by lessor) shall be paid out of the royalty herein provided. This lease shall be binding upon each party who executes it without regard to whether it is executed by all those named herein as lessor.

11. If, while this lease is in force, at, or after the expiration of the primary term hereof, it is not being continued in force by reason of the shut-in well provisions of paragraph 3 hereof, and lessee is not conducting operations on said land by reason of (1) any law, order, rule or regulation, (whether or not subsequently determined to be invalid) or (2) any other cause, whether similar or dissimilar, (except financial), beyond the reasonable control of lessee, the primary term hereof shall be extended until the first anniversary date hereof occurring ninety (90) or more days following the removal of such delaying cause, and this lease may be extended thereafter by operations as if such delay had not occurred.

12. Prior to the expiration of the three (3) month-primary term of this lease, Lessee may extend the primary term of this lease as to all or any part of the acreage covered hereby for an additional **ONE (1) YEAR** beyond the initial primary term by mailing written notification thereof to Lessor at the above address, or to Lessor's successor in interest (as reflected by notice to Lessee pursuant to Paragraph 8 hereof). If this option is exercised by Lessee, this lease will be treated as if the original primary term had been ONE (1) YEAR longer than the term specified in Paragraph 2, and Lessee agrees that, within ten (10) days after exercising said option, it will mail to Lessor, or Lessor's successor in interest (as reflected by notice to Lessee pursuant to Paragraph 8 hereof), a check in the amount of **$50.00** for each **net acre** as to which the lease is so extended. Lessee will not conduct drilling operations on any portion of the above described lands without first paying the Lessor $50.00 per each **net mineral acre** covered by this lease.

IN WITNESS WHEREOF, this instrument is executed to be effective on the date first above written.

_____
MYRTICE W. ELLIS

_____
ALEX PASTORE


STATE OF ALABAMA

COUNTY OF ~~CONECUH~~ Escambia

I hereby certify, that on this day, before me, a NOTARY PUBLIC duly authorized in the state and county aforesaid to take acknowledgments, personally appeared MYRTICE W. ELLIS, to me known to be the person described in and who executed the foregoing instrument and she acknowledged before me that, being informed of the contents of the same, she voluntarily signed and delivered the within and foregoing instrument on the day and year therein mentioned.

Given under my hand and official seal, this 23rd day of November, 2018.

[AFFIX SEAL]

My commission expires April 8, 2022

_____
(NOTARY PUBLIC) FELICIA CARTER


STATE OF ALABAMA

COUNTY OF MOBILE

I hereby certify, that on this day, before me, a NOTARY PUBLIC duly authorized in the state and county aforesaid to take acknowledgments, personally appeared Alex Pastore, to me known to be the person described in and who executed the foregoing instrument and she acknowledged before me that, being informed of the contents of the same, she voluntarily signed and delivered the within and foregoing instrument on the day and year therein mentioned.

Given under my hand and official seal, this 20th day of November, 2018.

[AFFIX SEAL]

My commission expires July 6, 2020

_____
(NOTARY PUBLIC)

JODI HYCHE
My Commission Expires
July 6, 2020

EXHIBIT "A"

Exhibit "A" to that certain Oil Gas and Mineral lease dated November 20th, 2018 between **MYRTICE W. ELLIS**, as Lessor and **Strago Petroleum Corporation**, as Lessee

Notwithstanding anything to the contrary elsewhere in this lease, in the event there is a conflict between the provisions of the lease form and the provisions contained in this Exhibit "A" then, and in that event, the provisions contained in this Exhibit "A" shall prevail.

13. **It is specifically understood by Lessor and Lessee that before commencing "operations" as defined in Paragraph 6 hereof, on any portion of the leased premises or on lands pooled therewith, Lessee must make the payment to Lessor discussed in the preceding Paragraph 12.**

14. This lease covers oil, gas and associated hydrocarbons only that can be produced from well bore and does not cover any hard rock minerals that are mined from open pits, including but not limited to coal, sand and gravel.

15. There is currently a timber contract on a portion of the captioned lands and any timber that is not harvested prior to Lessees operations under that timber contract that is required to be removed for Lessees operations will require compensation to Lessor in the amount determined by Lessors forester, Doug Link. Lessee shall inform Lessor when well location and road are going to be staked so said forester can do an inspection of the location and access road.

16. At the end of the primary term of this lease, all acreage not contained in a unit producing oil and/or gas will not be held by production unless on or before 180 days after the primary term of this lease a well is drilled in search of oil and gas, and thereafter, no more than 180 days shall elapse between the official completion of one well and the actual beginning of another well. This lease shall remain in full force and effect as long as a well is drilled every 180 days. No obligation to drill these wells is implied and the only penalty for failure to drill these wells will be the loss of all rights earned hereunder, except those lands held in producing units to the deepest depth penetrated.

17. None of Lessee's employees, agents, or contractors, or any other person under the direction or control of Lessee shall be permitted to carry firearms or any other weapon on the Lands, and such persons shall not hunt, fish, or engage in recreational activities on the Lands. Lessee will notify all of its contractors, agents, and employees that no firearms, weapons, hunting, fishing, or recreational activities will be allowed on the Lands. None of Lessee's employees, agents, or contractors, or any other persons under the direction or control of Lessee, shall possess or be under the influence of alcohol or illegal drugs while on the Lands.

18. No open fires shall be permitted on the Lands. Lessee shall take all reasonable steps to prevent fire and to promptly extinguish fire, including, but not limited to, maintaining a fire extinguisher, shovel, and bucket in each service vehicle entering upon the Lands. Lessee shall fully and promptly compensate Lessor for all damages caused by fire arising out of Lessee's operations, including, without limitation, any charges incurred by Lessee for fire suppression and the replacement of fences and other property (including timber) damaged or destroyed by fire.

19. Within six (6) months after termination of any of Lessee's operations on the Lands, Lessee shall fully restore and level the surface of the lands affected by such terminated operations as near as possible to the contours which existed prior to such operations and replant the trees which were harvested to make way for the Lessee's operations.

DESCRIPTION OF LANDS:

TOWNSHIP 4 NORTH, RANGE 10 EAST

SECTION 35: The Southeast Quarter; all of the SW1/4 of the NE1/4 lying East of Highway 31.

It is the intention of the Lessor to lease, and Lessor does herby lease all the mineral interest owned by them in the Southeast ¼ and SW1/4 of the NE1/4 of Section 35 whether accurately described herein or not.

Signed For Identification _____
  Myrtice W. Ellis

Signed For Identification _____
  Alex Pastore

END OF EXHIBIT "A"

2019    730
Recorded in the Above
Deed Book & Page
02-14-2019 01:09:47 PM
Stephen Flemming, Probate Judge
Conecuh County, Alabama
Book/Pg: 2019/730
Term/Cashier: CONECUH5-PC / CDS
Tran: 15975,78692,97189
Recorded: 02-14-2019 13:09:58
DFE Deed Tax                 1.50
DFE Deed Tax Fee (Computer Fnd)  5.00
MTX Mineral Tax              1.50
REC Recording Fee            6.00
Total Fees:    $ 14.00

Return after recording to:
Prepared by: Alex Pastore

# MEMORANDUM OF OIL, GAS AND MINERAL LEASE

STATE OF ALABAMA

COUNTY OF CONECUH

KNOW ALL MEN BY THESE PRESENTS:

That Myrtice W. Ellis, whose address is 212 Hwy. 31, Castleberry, AL 36432 (hereinafter referred to as "Lessor"), for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, has entered into an unrecorded Oil, Gas and Mineral Lease (hereinafter referred to as "Said Lease") with STRAGO PETROLEUM CORPORATION, whose mailing address is 3209 HAMM ROAD, PEARLAND, TEXAS 77581, (hereinafter referred to as "Lessee"), dated November 20, 2018, and covering the following described lands and located in the County of Conecuh, State of Alabama, and more particularly described as follows:

<u>TOWNSHIP 4 NORTH, RANGE 10 EAST</u>

Section 35:    The Southeast Quarter and all of the SW1/4 of the NE1/4 lying east of Highway 31 containing 168 acres, more or less.

Is is the intention of the Lessor to Lease and she does hereby lease all the interest owned by her in the Southeast ¼ and the SW1/4 of the NE1/4 of Section 35 whether accurately described herein or not.

Said Lease has been executed and acknowledged by both Lessor and Lessee and is for a primary term of THREE (3) MONTHS, but provides for the extension of the primary term for ONE (1) year, and continuing for as long thereafter as oil, gas and/or other minerals leased therein are produced from the leased premises, or from lands with which the leased premises are pooled or unitized, or said lease is maintained in force in any other manner therein provided. And that this Memorandum of Oil, Gas and Mineral Lease is placed of public record to give notice of the existence of Said Lease and that the parties to Said Lease maintain duplicate originals at their respective office address and are available for review during regular business hours by any party having a vested interest in Said Lease.



M WE

IN WITNESS WHEREOF, this instrument is executed this _____ day of November, 2018.

Myrtice W. Ellis  *Myrtice W. Ellis*

Alex Pastore  *[signature]*

_____

```
2019    731
Recorded in the Above
Deed  Book & Page
02-14-2019 01:09:47 PM
Stephen Flemming, Probate Judge
Conecuh County, Alabama
```

(MISSISSIPPI-ALABAMA-FLORIDA)

STATE OF ALABAMA

COUNTY OF ~~CONECUH~~ Escambia

I hereby certify, that on this day, before me, a Notary Public, duly authorized in the state and county aforesaid to take acknowledgements, personally appeared Myrtice W. Ellis, to me known to be the person described in and who executed the foregoing instrument, and she acknowledged before me that, being informed of the contents of the same, she voluntarily signed and delivered the within and foregoing instrument on the day and year therein mentioned.

Given under my hand and official seal, this 23rd day of November 2018.

(SEAL)

_Felicia Carter_

Notary Public State of Alabama atLarge

My commission Expires: April 8, 2022

STATE OF ALABAMA

COUNTY OF __MOBILE_____

I hereby certify, that on this day, before me, a NOTARY PUBLIC duly authorized in the state and county aforesaid to take acknowledgments, personally appeared Alex Pastore, to me known to be the person described in and who executed the foregoing instrument and she acknowledged before me that, being informed of the contents of the same, she voluntarily signed and delivered the within and foregoing instrument on the day and year therein mentioned.

Given under my hand and official seal, this __7th__ day of __November_____, 2018.

_____[AFFIX SEAL]    _Jodi Hyche_
(NOTARY PUBLIC)

My commission expires __July 6, 2020__

JODI HYCHE
My Commission Expires
July 6, 2020

2

## AMENDMENT OF OIL, GAS AND MINERAL LEASE

STATE OF ALABAMA § 
§ KNOW ALL MEN BY THESE PRESENTS
COUNTY OF CONECUH §

WHEREAS, effective the 20th day of November, 2018, **MYRTICE W. ELLIS**, whose address is 212 Highway 31, Castleberry, AL 36432, herein called "Lessor", granted an Oil, Gas and Mineral Lease to **STRAGO PETROLEUM CORPORATION**, whose address is 3209 Hamm Road, Pearland, Texas 77581, as "Lessee", a Memorandum of which is recorded in Book ___2019___, Page ___730___ of the records of Conecuh County, Alabama, covering the following described lands in Conecuh County, Alabama, containing **168** acres, more or less (the "Lease"):

### CONECUH COUNTY, ALABAMA

### TOWNSHIP 4 NORTH – RANGE 10 EAST

Sec. 35: The Southeast Quarter, all of the SW1/4 of the NE1/4 lying East of Highway 31

WHEREAS, the Lease provides for a three (3) month primary term, with an option to extend the term for an additional one (1) year, which said option was exercised by Lessee; and

WHEREAS, the undersigned desire to extend the Lease beyond the current term for an additional three (3) month period.

NOW THEREFORE, in consideration of the sum of Ten and No/100's Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned do hereby amend the Lease as follows:

Adding the following sentence to the end of Paragraph 12 of the Lease:

> Prior to the expiration of the current primary term of this lease, which term was extended by virtue of the payment referenced in this paragraph made by Lessee to Lessor, Lessee may extend the primary term of this lease as to all or any part of the acreage covered hereby for an additional **three (3) months** beyond the current term upon payment of $50.00 for each net acre as to which the lease is so extended.

Except as amended herein, the Lease shall remain unchanged.

**IN WITNESS WHEREOF**, the parties hereto have caused this Amendment of Oil, Gas and Mineral Lease to be executed.

**LESSOR:**

_Myrtice W. Ellis_ 1-28-20
MYRTICE W. ELLIS

**LESSEE:**

**STRAGO PETROLEUM CORPORATION**

By: _[signature]_
L.F. Goza, President

*Original sent to Alex Pastore*
*Copy via UPS 3-31-20 to take for recording*

## ACKNOWLEDGEMENTS

STATE OF Alabama §
§
COUNTY OF Conecuh §

I, the undersigned authority, a notary public, in and for the aforesaid jurisdiction, hereby certify that Myrtice W. Ellis, who is known to me, personally appeared and acknowledged before me on this day, that being informed of the contents of the foregoing instrument he voluntarily signed, executed and delivered the foregoing instrument.

Given under my hand this the 28th day of January, 2020.

Notary Public, State of Alabama at Large

My commission expires: 1/9/22

ALEXANDER PASTORE
Notary Public
Alabama State at Large

STATE OF TEXAS §
§
COUNTY OF ~~HARRIS~~ BRAZORIA §

I, the undersigned authority, a notary public, in and for the aforesaid jurisdiction, hereby certify that L.F. Goza, President of Strago Petroleum Corporation, a Texas corporation, who is known to me, personally appeared and acknowledged before me on this day, that being informed of the contents of the foregoing instrument he signed, executed and delivered the foregoing instrument voluntarily for and on behalf of said corporation, he being duly authorized to do so.

Given under my hand this the 29st day of January, 2020.

Notary Public, State of TEXAS

My commission expires:
September 1, 2022

ROBBIE L. THOMPSON
My Notary ID # 1352333
Expires September 1, 2022

Instrument prepared by:
Alex Pastore
3811 Austill Lane
Mobile, AL 36608