# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: <br><br> SKLAR EXPLORATION COMPANY, LLC, <br><br> Debtor. | Case No. 20-12377-EEB <br><br> Chapter 11 |
| In re: <br><br> SKLARCO, LLC <br><br> Debtor. | Case No. 20-12380-EEB <br><br> Chapter 11 <br><br> **Jointly Administered Under Case No. 20-12377-EEB** |

### LIMITED OBJECTION TO
### MOTION FOR AUTHORITY TO USE CASH COLLATERAL

Come now, Pruet Production Co. ("PPC") both in its individual capacity and as agent for the certain owners of working interests (the "Owners") and Pruet Oil Company, LLC ("POC" and together with PPC, "Pruet"), creditors and parties in interest, and file this limited objection (the "Limited Objection") to the Motion for Authority to Use Cash Collateral [Docket No. 34] (the "Cash Collateral Motion") filed by Debtor Sklar Exploration Company, LLC ("SEC") and Debtor Sklarco, LLC ("Sklarco" and together with SEC, the "Debtors"). Pruet states the following in support of this Limited Objection:

### SUMMARY OF LIMITED OBJECTION

Pruet does not oppose the Debtors' continued use of its own cash that may be subject to the Bank's security interest as requested in the Cash Collateral Motion. However, Pruet does object to the Debtor's use of funds that it may be holding to the extent those funds are not owned by the Debtors (or subject to a security interest of Pruet and the Owners) and are the subject of a pre-petition breach of one or more of the governing agreements by the Debtors.

1381517.2

Further, Pruet objects to the Bank or any other creditor being awarded a replacement lien on the Cash Call Advances or the Revenues that are owned by Pruet (including PPC, the Owners, and POC) as provided in the governing agreements.

## BACKGROUND

1. SEC is party to various operating agreements with Pruet and the Owners in which SEC serves as operator of oil and gas properties in which Pruet and the Owners hold ownership interests. Prior to commencement of these cases, SEC was in breach of one or more of these operating agreements.

2. Pursuant to these operating agreements, SEC makes cash calls from time to time to Pruet and the Owners and Pruet and the Owners advance cash to SEC which is to be used solely by SEC for the purpose stated in the cash call (collectively, the "Cash Call Advances").

3. Filings by the Debtors in these cases indicate SEC holds no less than $274,562.72 in Cash Call Advances made to it by POC, and PPC has reason to believe SEC holds some amount of Cash Call Advances made by PPC and the Owners to SEC as well.

4. Also pursuant to the governing operating agreements, SEC has marketed and sold oil and gas production on behalf of Pruet and the Owners has collected revenues generated from the sale of that oil and gas on behalf of Pruet and the Owners (the "Revenues").

5. The governing operating agreements provide that the Cash Call Advances are owned by the Pruet and the Owners until either (a) used for their intended purposes by SEC or (b) applied to debts in accordance with the agreements. Revenues generated from the production of oil and gas owned by Pruet and the Owners are owned by Pruet and the Owners.

**LIMITED OBJECTION**

6. Through the Cash Collateral Motion, the Debtors seek authority to use cash purportedly subject to a security interest of East West Bank as Agent and Lead Arranger (the "Bank").

7. Pruet does not object to the Debtors' use of cash fully owned by the Debtors that may be subject to the Bank's security interest as requested in the Cash Collateral Motion.

8. However, due to these funds not being owned by the Debtors and due to the pre-petition breach of one or more of the governing agreements by the Debtors, Pruet does object to any use by either of the Debtors of the Cash Call Advances or the Revenue. Further, Pruet objects to the Bank or any other creditor being awarded a replacement lien on the Cash Call Advances or the Revenues that are owned by Pruet as provided in the governing agreements. *See generally In re McFarland*, 112 B.R. 906 (Bankr. E.D. Tenn. 1990) (stating that mere acquisition or possession of property is not sufficient to allow a debtor to grant a security interest in said property); *and In re Diversified Traffic Servs.,* Case No. 09-51227, 2010 LEXIS 1790 at *11 (Bankr. S.D. Ga. May 21, 2010) ("Fundamental to a secured party's acquisition of a security interest in property of the debtor is that the debtor have rights in the collateral.") (quoting *Anthony v. Cmty. Loan & Inv. Corp.*, 559 F.2d 1363, 1368 (5th Cir. 1977)). *See also Begier v. IRS*, 496 U.S. 53, 59 (1990) (property held by the debtor in trust for a third party is not property of the estate).

9. Indeed, section 541(a)(1) of the Bankruptcy Code "is not intended to expand the debtor's rights against others more than they existed at the commencement of the case." H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 367–68 (1977); *see also Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984) (holding that the "rights a debtor has in property at the commencement of the case continue in bankruptcy—no more, no less"). Courts have interpreted

section 541(d) to "expressly" provide that when a debtor holds only bare legal title in property, such property is not property of the estate. *In re Lenox Healthcare, Inc.*, 343 B.R. 96, 100 (Bankr. D. Del. 2006). As such, neither the Bank nor any other creditor can be awarded a replacement lien on the Cash Call Advances or the Revenues because no such lien existed as of the petition date.

10. To the extent the Revenues are not being paid to PPC and the Owners as they should be, the Debtors should be required to segregate these Revenues—regardless of whether they derive from operations before or after the Petition Date. Doing so will ensure that the rights of PPC, the Owners and other similarly-situated working interest owners are preserved while also allowing the Debtors to remain in operation.

## **RESERVATION OF RIGHTS**

Pruet makes no admission of fact or law and reserves any and all rights, claims, objections, and defenses that may be available to them before this Court and any other court with competent jurisdiction over the parties and the matters at issue, including in connection with the Cash Collateral Motion or any other related motions, pleadings, or orders, asserted liens and interests, and any other matters involving the administration of this case, the estate, and Pruet's interests, any and all rights available to them under the Bankruptcy Code and applicable non-bankruptcy law. Pruet reserves any and all rights to supplement or amend this Limited Objection and at any hearing.

## **JOINDER**

Pruet joins the objections of all other parties to the Cash Collateral Motion to the extent such objections are not inconsistent with this Limited Objection.

## **CONCLUSION**

Pruet requests that in the event the Cash Collateral Motion is granted, the Court clarify (i) that the Cash Call Advances and Revenues are owned by and constitute the property of Pruet and the Owners and may not be used by the Debtors; (ii) that pre-petition and post-petition Revenues be segregated from the Debtors' own funds for the time being; and (iii) any replacement lien awarded the Bank or any other creditor not attach to the Cash Call Advances or Revenues owned by Pruet and the Owners. Pruet seeks such other and different relief as the Court deems proper and just.

Dated: May 4, 2020

/s/ *Matthew J. Ochs*
Matthew J. Ochs
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
P.O. Box 8749
Denver, CO 80201-8749
Telephone: (303) 295-8299
Facsimile: (303) 416-8951
Email: mjochs@hollandhart.com

-and-

/s/ *Jeremy L. Retherford*
Jeremy L. Retherford
Balch & Bingham LLP
1901 Sixth Avenue North, Suite 1500
Birmingham, Alabama 35203-4642
Telephone: (205) 226-3479
Facsimile: (205) 488-5693
Email: jretherford@balch.com

*Attorneys for Pruet Oil Company, LLC and Pruet Production Co. in its individual capacity and as agent of the Owners.*

1381517.2　　　　　　　　　　　　　　　　5

**CERTIFICATE OF SERVICE**

    I certify that on May 4, 2020, the foregoing was electronically filed with the Court via the CM/ECF system. All attorneys and parties identified with the Court for electronic service on the record in this case were served by electronic service in accordance with the CM/ECF system on the date of filing.

                                                */s/ Matthew J. Ochs*
                                                 Matthew J. Ochs

14586702_v1

1381517.2                                                          6