UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC ) | |
| EIN: 72-1417930 ) | Chapter 11 |
| ) | |
|   Debtor. ) | |
| ) | |
| ) | |
| _____ ) | Case No. 20-12380-EEB |
| ) | |
| SKLARCO, LLC ) | |
| EIN:  72-1425432 ) | Chapter 11 |
|   Debtor. ) | |

**REPLY TO WORKING INTEREST OBJECTIONS TO MOTION FOR AUTHORITY TO USE CASH COLLATERAL**

The Debtors and Debtors in Possession, Sklar Exploration Company, LLC ("SEC") and Sklarco, LLC ("Sklarco") (collectively "Debtors"), by and through their attorneys, Kutner Brinen, P.C., state their reply to the objections filed by various working interest owners to the Debtors' Motion for Authority to Use Cash Collateral as follows:

**BACKGROUND**

1. The Debtors filed for relief under chapter 11 of the Bankruptcy Code on April 1, 2020. The Debtors remain Debtors-in-Possession.

**Background of Operations**

2. SEC is engaged in business as an independent exploration and production company in the oil and gas industry. SEC is an operating company and does not own oil or gas properties. SEC has its principal business office in Boulder, Colorado and has additional offices in Shreveport, Louisiana and Brewton, Alabama. SEC's exploration and production activities are primarily located in East Texas, North Louisiana, South Mississippi, South Alabama and the Florida Panhandle. SEC is also developing properties and opportunities in the western United States, though no oil or gas production has been produced from the wells in the western United States.

3. Sklarco is a Louisiana limited liability company engaged in business as the owner of certain oil and gas leases and property interests in East Texas, North Louisiana, South Mississippi, South Alabama, the Florida Panhandle, and the western United States.

4. While Sklarco is the owner of the oil and gas properties and SEC owns no properties, it is important to note that SEC is the operator of many of the wells and properties owned by Sklarco. The Sklarco wells and properties are either operated by SEC in large part or by third party unrelated operators. In each case, Sklarco must pay the operator for ongoing management and production.

5. As of the Petition Date, SEC was the operator of approximately 60 wells, and was in the process of developing several new prospects, including an oil well and helium well in Montana, a well and pipeline in Florida, and several new wells in Alabama.

6. Each of the wells operated by SEC is subject to a number of different property interests, including royalty interests ("RIs"), overriding royalty interests ("ORRIs"), and working interests ("WIs"). RIs and ORRIs are not required to contribute to the ongoing expenses and development of the operation of the wells, while WIs are required to contribute a proportionate share for ongoing operation of the operated property in which they hold a WI. The WIs are generally created through a Joint Operating Agreements ("JOA") because the holders of WIs agree to share the cost of drilling a new well. The WI interests and the rights afforded to the WI interest holders are grounded in the JOAs between the parties.

7. As the operator of the wells, in the ordinary course of business, SEC collects revenue from the sales of hydrocarbons, and distributes revenue, first to its RIs to ensure maintenance of applicable mineral leases, and then to ORRIs and WIs. The holders of WIs are also issued invoices for their proportionate share of expenses through joint interest billings ("JIBs").

8. In the ordinary course of business, revenue from the sale of hydrocarbons is generally collected the month following sale of the hydrocarbons, and funds are distributed to RIs, ORRIs, and WIs the month thereafter. By way of example, funds for hydrocarbons sold in January are received in February, and payments to RIs, ORRIs, and WIs would be made in March.

9. Sklarco, as an owner of WIs and ORRIs in properties operated by SEC, would also be entitled to payments of revenue derived from the sale of hydrocarbons. Sklarco's funds

are generally pooled at SEC and used in the ordinary course of SEC's operations, including paying employees of SEC.

**Motion for Authority to Use Cash Collateral**

10. On April 6, 2020 the Debtor filed its Motion for Authority to Use Cash Collateral in which the Debtors' prime lender East West Bank as Agent and Lead Arranger ("Bank") who currently holds a claim secured by assets of SEC and Sklarco for approximately $22,350,000 holds a secured interest. While other parties may claim an interest, those interest are believed to be very small.

11. In response to the Cash Collateral Motion, various holders of WIs who are party to one or more Joint Operating Agreements ("JOA") with the Debtors filed objections to the Debtor's use of cash collateral.

12. The WIs filing objections consist of the following parties who will be referred to as the WI Objecting Parties:

    a. Pruet Oil Company, LLC and Pruet Production Co. (Docket Nos. 57, 158, 215)

    b. Meritage Energy, Ltd. and Strago Petroleum Corporation (Docket Nos. 65, 165)

    c. AEEC, LLC, Anderson Exploration Company, LC, and TCP Cottonwood, L.P. (Docket No. 67)

    d. Tauber Exploration & Production Company, CTM 2005, LTD, Pickens Financial Group, LLC, I&L Miss I LP, MER Energy, LTD, Tara Rudman Revocable Trust, Feather River 75, LLC, Rudman Family Trust, and Rudman Partnership (Docket No. 68, 220)

    e. Lucas Petroleum Group, Inc. (Docket No. 71)

    f. Franks Exploration Company, LLC, AEH Investments, LLC, and J&A Harris, LP (Docket No. 118)

    g. Landmark Exploration, LLC, Landmark Oil and Gas, LLC, Lexington Investments, LLC, and Stone Development, LLC (Docket No. 119)

    h. JF Howells Interests, LP (Docket No. 139)

      i.      FPCC USA, Inc. (Docket No. 147)

      j.      Alabama Oil Company, Kudzu Oil Properties, LLC and Apple River Investments, LLC (Docket No. 150)

      k.      Sugar Oil Properties, LLC (Docket No. 163)

      l.      Fant Energy Limited, JJS Interests Escambia, LLC, JJS Interests Steele Kings, LLC, and JJS Working Interests (Docket No. 222)

      m.      Fletcher Group (Docket No. 216)

(collectively the "WI Objections").

13. The WI Objections generally raise two objections to the Debtors' use of cash collateral. The primary objection raised is that the WI Objecting Parties paid SEC certain advance cash calls that were to be used for the drilling and development of new wells and/or a pipeline that SEC was developing in Florida, that such funds either were required to be segregated by SEC, that the cash call advances are not assets of the Debtors' estates, and that the JOAs to which the WI Objecting Parties are parities give rise to security interests. The WI Objections further assert that SEC was in possession of funds belonging to the WI Objecting Parties derived from revenue from the sale of hydrocarbons, and that such funds were not assets of the Debtor's estate.

14. As set forth more fully herein, the WI Objecting Parties have not established an interest in the funds held by the Debtors on the Petition Date, nor have they established a security interest in the Debtors' funds, and therefore cannot assert an interest in cash collateral.

## LEGAL ARGUMENT

15. Pursuant to 11 U.S.C. § 363(c), the debtor may enter into transactions and use assets of the estate without requesting authorization from the court, however, the debtor may not use cash collateral unless each entity holding an interest consents, or the court authorizes such use after notice a hearing in accordance with section 363.

16. The Bankruptcy Code defines "cash collateral" for the purposes of section 363 as "cash . . . deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and included proceeds, products . . . or profits of property . . . whether existing before or after the commencement of a case under this title." 11 U.S.C. § 363(a).

17. The JOAs signed by the Debtors and the WI Objecting Parties are all contractual documents that control the various rights and responsibilities of the parties, none of which create an interest in the funds held by the Debtors on the Petition Date. Indeed, the only interest that the WI Objecting Parties may have is in their proportionate share of revenues from the sale of hydrocarbons.

18. The JOAs do not create any partnership between the parties, nor do they create any trusts, fiduciary obligations, or fiduciary duties. This situation is common throughout the oil and gas industry, including the industry form JOAs utilized by the Debtors. An example of one of the SEC JOAs is attached hereto as Exhibit A.

**Cash Call Advances**

19. The WI Objecting Parties assert that SEC holds "only bare legal title" to funds attributable to cash call advances, and therefore the funds are not assets of the Debtor's estate.

20. The burden to establish that funds held by the debtor are "held in trust by the debtor for a nondebtor, and therefore not estate property . . . the burden rests upon the entity seeking to exclude the property from the estate to establish the existence of the claimed fiduciary relationship." 5 Collier on Bankruptcy P 541.28 (16th 2020). If the party can establish that a trust relationship exists, then the burden rests with that party to identify or trace the funds to which such party claims an ownership interest. *Jobin v. Youth Benefits Unlimited (In re M&L Business)*, 59 F.3d 1078, 1081 (10th Cir. 1995).

21. Certain of the Objections filed by the WI Objecting Parties contain partial quotes that are take out of the JOAs in an attempt to advance their basis for a claim that the Debtors should have segregated or escrowed the cash call advances. While some of the Working Interest Holders have partially quoted the JOA language, the others have simply joined in the Objections that contain the partial quote. The quoted portion of the JOA utilized by the WI Objecting Parties reads as follows:

> Custody of Funds: Operator shall hold for the account of Non-Operators any funds of Non-Operators advanced or paid to Operator, either for the conduct of operations hereunder or as a result of the sale of production from the Contract Area, and such funds shall remain the funds of Non-Operators on whose account they are advanced or paid until used for their intended purpose or otherwise delivered to Non-Operators or applied toward the payment of debts, regardless of whether the debts arise out of the same well or operation for which the funds were advanced or from which the sales proceeds were derived.

*See e.g., FPCC USA, Inc.'s Objection to Debtors' Motion for Authority to Use Cash Collateral*, Docket No. 147, ¶ 8.

22. In fact, entire paragraph contains two additional sentences that are critical to understanding the relative rights of the parties, the full paragraph reads as follows:

> Custody of Funds: Operator shall hold for the account of Non-Operators any funds of Non-Operators advanced or paid to Operator, either for the conduct of operations hereunder or as a result of the sale of production from the Contract Area, and such funds shall remain the funds of Non-Operators on whose account they are advanced or paid until used for their intended purpose or otherwise delivered to Non-Operators or applied toward the payment of debts, regardless of whether the debts arise out of the same well or operation for which the funds were advanced or from which the sales proceeds were derived. **Nothing in this paragraph shall be construed to establish a fiduciary relationship between Operator and Non-Operators. Nothing in this paragraph shall require the maintenance by Operator of separate accounts for the funds of Non-Operators.** (Emphasis added)

23. Based upon the express language of the JOA, there was no requirement for SEC, the operator, to segregate advance cash calls, to escrow such funds or treat them as anything other than general operating funds. The was an obligation for SEC to account for the advance cash calls and provide credit to the non-operators so that their interests in the wells to be developed were fully accounted for and paid up to the amount of the advance cash call, which SEC has done.

24. Because the JOAs do not create a trust relationship, the WI Objecting Parties cannot establish that any cash call advances existing on the date of filing are excluded from SEC's estate.

25. Even to the extent the WI Objecting Parties are asserting another basis for creation of a trust, such as establishment of a constructive trust, these claims should properly be brought through an adversary proceeding, and still require the WI Objecting Parties to trace the funds to which they claim an ownership interest after the establishment of a trust relationship.

26. The Tenth Circuit has consistently held that, "It is beyond peradventure that, as a general rule, any party seeking to impress a trust upon funds for purposes of exemption from a bankrupt estate must identify the trust funds in its original and substituted form." *See Sender v. Nancy Elizabeth R. Heggland Family Trust (In re Hedged-Investments Assocs.)*, 48 F.3d 470, 474 (10th Cir. 1995) (quoting *First Federal of Michigan v. Barrow*, 878 F.2d 912, 915 (6th Cir.

1989)). *See also Cunningham v. Brown*, 265 U.S. 1, 11 (1924)(holding that where creditors can specifically trace funds held by the debtor, they are "endeavoring to get their own money, and not money in the estate of the bankrupt.").

27. When funds have been commingled, "if the trust fund or property cannot be identified in its original or substituted form, the purported beneficiary becomes merely a general creditor of the estate." 5 Collier on Bankruptcy P 541.28[50 (citing *Redmond v. Progressive Corp. (In re Brooke Corp.)*, 2012 U.S. Dist. LEXIS 80803 (D. Kan. June 12, 2012)).

28. As the SEC has stated on multiple occasions, the cash call advances were commingled with SEC's other funds. As a result, even if the WI Objecting Parties can establish a theory under which a trust is created, the commingling of the funds make the funds impossible to trace, and as a result, the WI Objecting Parties are nothing more than general unsecured creditors, and cannot establish an interest in SEC's cash or accounts resulting from the cash call advances.

**Working Interest Revenues**

29. The WI Objecting Parties further assert an interest in SEC's funds to the extent such funds are revenue attributable to the sale of hydrocarbons in which the WI Objecting Parties have an interest.

30. The JOAs generally provide that "all equipment and materials acquired in operations on the Contract Area shall be owned, by the parties as their interests are set forth in Exhibit 'A'. In the same manner, the parties shall also own all production of oil and gas from the Contract Area, subject to the payment of royalties[.]"

31. Similarly, the Unit Operating Agreements also generally provide that the holders of WIs may take their interest in the production from the applicable unit in kind and, if they do not do so, that the operator will sell the produced oil and gas and pay the funds to the holder the WI.

32. While the respective JOA may create an ownership interest in the production of oil and gas, the interest is limited to the production from the well in which the party has an interest, and the proceeds derived from the sale of such production. The ownership interest does not attach generally to all funds held by the Debtors.

33. In certain circumstances, parties may have an interest in wells that are not producing oil and gas as a result of certain temporary shut-ins, or in those circumstances where wells have not been drilled to completion or otherwise brought online.

34. As oil and gas production from the properties operated by SEC is sold, funds are generally received from the purchasers, primarily Goodway Refining, LLC and Plains Marketing, LP. The deposits of revenue are generally commingled as between each well, and do not differentiate between each WI holder.

35. Because the funds are generally commingled with revenue from other wells and with revenue attributable to other WI holders, WI holders must trace the funds to establish an interest in the funds held by the Debtors on the Petition Date in order to establish that they have an interest in such funds. The parties asserting an interest in funds held by SEC must still specifically identify the funds to which their interest applies. *See Cunningham*, 265 U.S. at 11 (holding that where creditors can specifically trace funds held by the debtor, they are "endeavoring to get their own money, and not money in the estate of the bankrupt.").

36. Furthermore, even if the WI Objecting Parties establish that they have an interest in SEC's funds, this should not constitute a basis to deny the Debtors' use of cash collateral.

37. Pursuant to 11 U.S.C. § 363(e), the court may condition the use of cash collateral on the debtors providing adequate protection to the party asserting an interest in cash collateral.

38. The Debtors have provided adequate protection by segregating all funds from revenue generated by the sale of hydrocarbons until such time as the parties agree or the Court orders the release of funds, and believe that an agreement has been reached with the Bank and the Committee to allow for the payment of revenues received and paid on a post-petition basis. Accordingly, the WI Objecting Parties interest in any revenues is adequately protected pending further order of the Court.

WHEREFORE, the Debtors respectfully request that the Court enter an Order, authorizing the Debtors' use of cash collateral in accordance with the Cash Collateral Motion and the subsequent Interim Orders Authorizing Use of Cash Collateral, deny the Objections filed by the Working Interest Holders, and for such further and additional relief as to the Court may appear proper.

DATED: May 6, 2020                                                  Respectfully submitted,


                                                        By:___/s/ Keri L. Riley_____
                                                            Lee M. Kutner, # 10966
                                                            Keri L. Riley, #47605
                                                            **KUTNER BRINEN, P.C.**
                                                            1660 Lincoln Street, Suite 1850
                                                            Denver, CO 80264
                                                            Telephone:  (303) 832-2400
                                                            E-mail: lmk@kutnerlaw.com
                                                                        klr@kutnerlaw.com

# CERTIFICATE OF SERVICE

I certify that on May 6, 2020, I served a complete copy of the foregoing **REPLY TO WORKING INTEREST OBJECTIONS TO MOTION FOR AUTHORITY TO USE CASH COLLATERAL** on the following parties in compliance with the Federal Rules of Bankruptcy Procedure and the Court's Local Rules:

Paul Moss, Esq.
US Trustee's Office
1961 Stout Street
Suite 12-200
Denver, CO 80294

Stoneham Drilling Corporation
(Representative: Heather Stickel)
c/o James B. Bailey, Esq.
Bradley Arant Boult Cummings, LLP
1819 Fifth Avenue North
Birmingham, AL 35203

Mesa Fluids, LLC
(Representative: Aaron W. Merrell)
1669 South 580 East
American Fork, UT 84057

TCP Cottonwood, L.P.
(Representative: Kyle C. McInnis)
c/o Eric Lockridge
400 Convention Street
Suite 700
Baton Rouge, LA 70801

Rapad Well Service Company, Inc.
(Representative: Chesley James)
c/o Jeremy Retherford, Esq.
Balch & Bingham, LLP
1901 Sixth Avenue North
Suite 1500
Birmingham, Alabama 35203-4642

Kelley Brothers Contractors, Inc.
(Representative: Jerry Kelley)
401 County Farm Road
Waynesboro, MS 39367

Baker Hughes Company
(Representative: Christopher J. Ryan)
2001 Rankin Road
Houston, TX 77073

FPCC USA, Inc.
(Representative: William Hu)
c/o Joseph E. Bain, Esq.
Jones & Walker LLP
811 Main Street
Suite 2900
Houston, TX 77002

Timothy C. Mohan, Esq.
Foley & Lardner, LLP
600 17th Street
Suite 2020 South
Denver, CO 80202

J. Eric Lockridge, Esq.
Kean Miller LLP
400 Convention Street
Suite 700
P.O. Box 3513
Baton Rouge, LA 70802

Craig K. Schuenemann, Esq.
Bryan Cave Leighton Paisner LLP
1700 Lincoln Street
Suite 4100
Denver, CO 80203

Giovanni M. Ruscitti, Esq.
Berg Hill Greenleaf Ruscitti, LLP
1712 Pearl Street
Boulder, CO 80302

Bryce A. Suzuki, Esq.
Bryan Cave Leighton Paisner, LLP
Two North Central Avenue
Suite 2100
Phoenix, AZ 85004-4406

James B. Bailey, Esq.
Bradley Arant Boult Cummings, LLP
1819 Fifth Avenue North
Birmingham, AL 35203

Timothy M. Riley, Esq.
Hopping Green & Sams, P.A.
P.O. Box 6526
Tallahassee, FL 32314

Michel D. Rubenstein, Esq.
Liskow & Lewis
1001 Fannin Street
Suite 1800
Houston, TX 77002

Duane J. Brescia, Esq.
Clark Hill Strasburger
720 Brazos
Suite 700
Austin, TX 78701

Kevin S. Neiman, Esq.
Law Offices of Kevin S. Neiman, P.C.
999 18th Street
Suite 1230 South
Denver, CO 80202

Robert L. Paddock, Esq.
Buck Keenan LLP
2229 San Felipe
Suite 1000
Houston, TX 77019

Jeremy L. Retherford, Esq.
Balch & Bingham, LLP
1901 Sixth Avenue North
Suite 1500
Birmingham, Alabama 35203

Matthew J. Ochs, Esq.
Holland & Hart, LLP
555 Seventeenth Street
Suite 3200
P.O. Box 8749
Denver, CO 80201-8749

Shay L. Denning, Esq.
Thomas H. Shipps, Esq.
Maynes, Bradford, Shipps & Sheftel, LLP
835 East Second Avenue
Suite 123
Durango, CO 81301

Robert Padjen, Esq.
Deanna Lee Westfall, Esq.
Assistant Attorney General
Colorado Department of Law
1300 Broadway
8th Floor
Denver, CO 80203

Timothy M. Swanson, Esq.
Moye White LLP
1400 16th Street
6th Floor
Denver, CO 80202-1486

Joseph E. Bain, Esq.
Jones Walker LLP
811 Main Street
Suite 2900
Houston, TX 77002

Madison Tucker, Esq.
Jones Walker LLP
201 St. Charles Avenue
Suite 5100
New Orleans, Louisiana 70170

Barnet B. Skelton, Jr., Esq.
815 Walker
Suite 1502
Houston, TX 77002

Amy L. Vazquez, Esq.
Jones Walker LLP
811 Main Street
Suite 2900
Houston, TX 77002

Matthew S. Okin, Esq.
John Thomas Oldham, Esq.
Okin Adams, LLP
1113 Vine Street
Suite 240
Houston, TX 77002

Christopher H. Meredith, Esq.
Copeland Cook Taylor & Bush, P.A.
1076 Highland Colony Parkway
600 Concourse, Suite 200
P.O. Box 6020
Ridgeland, Mississippi 39158-6020

Michael L. Niles, Esq.
Brian G. Rich, Esq.
Berger Singerman LLP
313 North Monroe Street
Suite 301
Tallahassee, FL 32301

Victoria Argeroplos, Esq.
Jackson Walker LLP
1401 McKinney Street
Suite 1900
Houston, TX 77010

David R. Taggart, Esq.
Bradley Murchison Kelly & Shea, LLC
401 Edwards Street
Suite 1000
Shreveport, Louisiana 71101

Jordan B. Bird, Esq.
Cook Yancey King & Galloway, APLC
333 Texas Street
Suite 1700
P.O Box 22260
Shreveport, Louisiana 71120-2260

Paul H. Stephenson III, Esq.
Jim F. Spencer, Jr., Esq.
Watkins & Eager, PLLC
P.O. Box 650
Jackson, Mississippi 39205

John D. Cornwell, Esq.
Grant M. Beiner, Esq.
Christopher D. Johnson, Esq.
Munsch Hardt Kopf & Harr, P.C.
700 Milam Street
Suite 2700
Houston, TX 77002

Michael J. Guyerson, Esq.
Buechler Law Office, LLC
999 18th Street
Suite 1230 South
Denver, CO 80202

Jordan B. Bird, Esq.
Cook Yancey King & Galloway, APLC
333 Texas Street
Suite 1700
Shreveport, Louisiana 71120-2260

Robert L. Paddock, Esq.
Buck Keenan, LLP
2229 San Felipe
Suite 1000
Houston, TX 77019

Ryan M. Seidemann, Esq.
Assistant Attorney General
Civil Division/Lands and Natural Resources
P.O. Box 94005
Baton Rouge, Louisiana 70804-9005

David M. Miller, Esq.
Spencer Fane LLP
1700 Lincoln Street
Suite 2000
Denver, CO 80203

Jennifer J. Hardy, Esq.
Willkie Farr & Gallagher, LLP
600 Travis Street
Houston, TX 77002

Duane J. Brescia, Esq.
Clark Hill Strasburger
720 Brazos Street
Suite 700
Austin, TX 78701

Andrew G. Edson, Esq.
Clark Hill Strasburger
901 Main Street
Suite 6000
Dallas, TX 75202

Craig M. Geno, Esq.
Law Offices of Craig M. Geno, PLLC
587 Highland Colony Parkway
Ridgeland, MS 39157

Christopher H. Meredith, Esq.
Glenn Gates Taylor, Esq.
Copeland Cook Taylor & Bush, P.A.
600 Concourse, Suite 200
1076 Highland Colony Parkway
P.O. Box 6020
Ridgeland, MS 39158-6020

Matthew S. Okin, Esq.
John Thomas Oldham, Esq.
Okin Adams LLP
1113 Vine Street
Suite 240
Houston, TX 77002

Curtis R. Shelton, Esq.
Jennifer Norris Soto, Esq.
Ayres Shelton Williams Benson & Paine, LLC
333 Texas Street, Suite 1400
P.O. Box 1764
Shreveport, Louisiana 71166

Armistead M. Long, Esq.
Gordon Arata Montgomery Barnett
McCollam Duplantis & Eagan, LLC
400 East Kaliste Saloon Road
Suite 4200
Lafayette, Louisiana 70508

Ryan J. Lorenz, Esq.
Clark Hill PLC
14850 North Scottsdale Road
Suite 500
Scottsdale, Arizona 85254

Brian G. Rich, Esq.
Michael J. Niles, Esq.
Berger Singerman LLP
313 North Monroe Street
Suite 301
Tallahassee, FL 32301


**/s/Vicky Martina**
**Vicky Martina**
**Kutner Brinen PC**