IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT COLORADO

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **SKLAR EXPLORATION COMPANY, LLC** | ) | Case No. 20-12377-EEB |
| **and SKLARCO, LLC** | ) | |
| | ) | Chapter 11 |
| Debtors. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **SKLARCO, LLC** | ) | Case No. 20-12380-EEB |
| | ) | |
| | ) | Chapter 11 |
| | ) | |

**OBJECTION OF TAUBER EXPLORATION & PRODUCTION COMPANY; CTM 2005, LTD; PICKENS FINANCIAL GROUP, LLC; I & L MISS I, LP; MER ENERGY, LTD; MR OIL & GAS, LLC; TARA RUDMAN REVOCABLE TRUST; FEATHER RIVER 75, LLC; RUDMAN FAMILY TRUST; AND THE RUDMAN PARTNERSHIP TO DEBTOR'S MOTION TO BIFURCATE CASH COLLATERAL ISSUES**
[Docket No. 223]

Tauber Exploration & Production Company, CTM 2005, Ltd., Pickens Financial Group, LLC, I & L Miss I, LP, MER Energy, Ltd, MR Oil & Gas, LLC, Tara Rudman Revocable Trust, Feather River 75, LLC, Rudman Family Trust, and The Rudman Partnership, (collectively the "Tauber Group Non-Operators"), hereby file their Objection to Debtor's Motion to Bifurcate Cash Collateral Issues [Docket No. 223] and respectfully represent as follows:

1

# I.
# Overview[1]

1. During several recent phone calls leading to Debtors' Motion to Bifurcate, the observation has been made by others that no rational DIP lender would loan money to the Debtors under current circumstances. Yet Debtors seek, through their Motion to Bifurcate and their motions to use cash collateral, to use money they know full well belongs to non-Debtor working interest owners to fund the operations of Sklar Exploration without the working interest owners' consent and without affording any of the liens, priorities, interest rates and terms expected by any <u>willing</u> DIP lender.

2. The Tauber Group Non-Operators and their fellow non-Debtor working interest owners are <u>not</u> willing DIP lenders and do not consent to the use of their production proceeds to fund Debtors' unrealistic budget and mismanaged operations.

3. Debtors' Motion to Bifurcate is a cynical attempt to deceive the Court into believing that there is some legitimate question as to what funds held by Sklar Exploration, derived from the sale of oil and gas, are owned by the non-Debtor working interest owners and what funds belong to Sklarco.[2] But, further, while this wholly artificial dispute is being worked out during adversary proceedings, Sklar Exploration wants to use the funds derived from January and February production as its cash collateral.

4. Even if the Court takes Debtors at their word concerning the existence of a dispute about ownership of proceeds, that argument cuts both ways. If the Debtors genuinely cannot say

---

[1] The Tauber Group Non-Operators filed their original Response to the Motion on April 9, 2020 [Docket No. 68], and its Supplement thereto [Docket No. 220] to which reference should be made for background information about the parties and the key arguments advanced therein, which are incorporated by reference as if set out verbatim. The Tauber Group Non-Operators also join the Objection filed by Pruet Oil Company, LLC, et al [Docket No. 248].

[2] Debtors admit that Sklar Exploration owns no oil and gas interests whatsoever.

what proceeds belong to the non-Debtor working interest owners, then they likewise cannot say what proceeds belong to Sklarco. Nor, would the Debtors have had the capacity to comply with the previous order that the Debtors' sought and obtained from this Court authorizing payments to Royalty Owners and Overriding Royalty Interest Owners, while not paying such owners who were insiders. *See* Interim Order Authorizing Payment of Overriding Royalty and Royalty Interest Obligations (April 27, 2020) [Docket No. 190] (authorizing Debtors to make "revenue payments owed to the non-insider holders of overring royalty interests and royalty interests in the total amount of $1,853,228.56"). It would follow, if one bought the Debtors' bogus argument, that Debtors have no better way to determine their own proceeds than the proceeds of non-Debtor working interest owners; so how can they meet the threshold of showing that they have an interest that constitutes cash collateral?

5. The truth is that the Debtor's know precisely the ownership of the proceeds of production for each and every month, each and every well, and each and every interest holder, and are required, both by the JOA's and applicable state law, to maintain scrupulous records regarding same.[3] The real issue is that Sklar Exploration has insufficient cash to fund its operations and needs to use non-Debtor working interest owner funds to do so. This they have no right to do. It is Debtors' burden to prove they own the funds they propose to use, not the burden of the working interest owners. Accordingly, there is no reason to bifurcate, and the Debtors' Motion to Bifurcate, and its Motions to Use Cash Collateral must be denied.

## II.
## Sklar Exploration's Duty to Account for and to Pay Revenue from Production to Working Interest Owners

---

[3] See Tauber Group Non-Operators' Supplement to Response to Debtors' Motion to Use Cash Collateral [Docket No. 220]. Also see Exhibit 1 attached hereto, which is the Debtors' detailed list of payees of the proceeds of February 2020 production revenues.

3

6. The Joint Operating Agreements ("JOAs") governing the rights and obligations of Sklar Exploration, as Operator, and the Tauber Group Non-Operators and other working interest owners, as non-operators ("Non-Operators"), as defined in the JOAs,[4] require the Operator to "keep an accurate record of the joint account hereunder, showing expenses incurred and charges and credits made and received." JOA Article VII.C.

8. Each month, as agent for the Non-Operators, Sklar Exploration markets and receives payments for the sale of oil and gas of all Non-Operators, which are (or should be) deposited in an account at East West Bank called the "Revenue Account." Because revenues from the sale of natural gas are typically received 60 days after the month in which the gas was sold, a known or ascertainable portion of the February 2020 production revenues was received by Sklar Exploration in April 2020.[5]

9. As part of its duties in maintaining the Revenue Account, Sklar Exploration keeps records that allow it to know the amount of production of oil and gas attributable to each Non-Operator and to calculate to the penny the amount of revenue payable to each Non-Operator, as is evidenced by the spreadsheet attached hereto as Exhibit 1, which was downloaded from the Sklar

---

[4] The Accounting Procedures attached to each JOA utilized by Sklar Exploration contain the following definitions:
"Joint Property" shall mean the real and personal property subject to the agreement to which this Accounting Procedure is attached.
"Joint Operations" shall mean all operations necessary or proper for the development, operation, protection and maintenance of the Joint Property.
"Joint Account" shall mean the account showing the charges paid and credits received in the conduct of the Joint Operations and which are to be shared by the Parties.
"Operator" shall mean the party designated to conduct the Joint Operations.
"Non-Operators" shall mean the Parties to this agreement other than the Operator.

[5] Attached hereto as Exhibit 2 is a portion of the April 2020 Sklar Exploration Revenue Account, which shows all of the deposits are either proceeds of production from refineries or gas processing plants, or returned checks which were not paid due to the bankruptcy filing. The latter were payments the Debtors had already sent out pre-petition and there is absolutely no argument who was entitled to receive each and every one of those payments. The $3,245,819.83 in wires received from purchasers of production are believed to have been all for February or March production revenues.

4

Exploration Data Room. Thus far, significant portions of January 2020 production revenues and all of the February 2020 production revenues have not been paid to the Non-Operators. But it is not because there is any mystery as to the source of the revenue or the amounts each Non-Operator owned or is entitled to receive.

10. Indeed, like most states, Alabama requires the operator or purchaser of production not only to keep such records but to state in detail on a check stub or statement all of the following information accompanying each payment to an "Interest Owner"[6]:

> **(b)** Whenever payment is made for oil or gas production to an interest owner, whether pursuant to a division order, lease, servitude, or other agreement, all of the following information shall be included on or ascertainable from the check stub or on an attachment to the form of payment, unless the information is otherwise provided on a regular basis:
>
> **(1)** Lease, property or well identification number, if any, or reference to appropriate agreement with identification of the well or unit from which production is attributed.
>
> **(2)** Month and year of sales or purchases included in the payment.
>
> **(3)** Total barrels of crude oil or MCF of gas purchased or sold.
>
> **(4)** Owner's final realizable price per barrel MCF, long ton, or other appropriate measurement.
>
> **(5)** Total amount of severance and other production taxes, with the exception of windfall profit tax.
>
> **(6)** Net value of total sales from the property after taxes are deducted.
>
> **(7)** Interest owner's interest, expressed as a decimal fraction, in production from subparagraph (1) above.
>
> **(8)** Interest owner's share of the total value of sales prior to any tax deductions.
>
> **(9)** Interest owner's share of the sales value less the share of the production and severance taxes, as applicable.

Code of Ala. § 9-17-33(b).

---

[6] Defined as "A person owning a royalty interest or a working interest in an oil or gas well or unit." Code of Ala. § 9-17-33(a)(3).

11. It follows that unless Sklar Exploration has failed to maintain the Joint Account (as defined in the JOA, *see* note 4, infra) and the records pertaining thereto in accordance with the applicable JOA's, and/or has failed to comply with Alabama law or similar laws of applicable states, it must necessarily know precisely to whom and how much the remaining January and the February revenues are payable, should be able to segregate and pay those funds, and all future revenues to the rightful parties and can prepare a budget that ensures that there will be no unlawful expenditure of working interest owner revenue in connection with the Final Cash Collateral Order. As a result, the Motion to Bifurcate must be denied.

27. Debtors must be prohibited from using the Cash Collateral of the Tauber Group Non-Operators or the proceeds of production attributable to the Tauber Group Non-Operators unless the issues raised in this Objection, the Supplement and their original Response are fully addressed.

Dated this 7th day of May, 2020

      Respectfully submitted,

      **Maynes, Bradford, Shipps & Sheftel, LLP**

      */s/ Thomas H. Shipps*
      Thomas H. Shipps

      */s/ Shay L. Denning*
      Shay L. Denning
      Maynes, Bradford, Shipps & Sheftel, LLP
      835 E. Second Ave., Suite 123
      Durango, CO 81301
      Telephone: (970) 247-1755
      Facsimile: (970) 247-8827
      Email: tshipps@mbssllp.com;
            sdenning@mbssllp.com

></>
> */s/ Barnet B. Skelton, Jr.*
> Barnet B. Skelton, Jr.
> 815 Walker, Suite 1502
> Houston, TX 77002
> Telephone: (713) 659-8761
> Cell: (713) 516-7450
> Facsimile: (713)659-8764
> Email: barnetbjr@msn.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on May 7, 2020, the foregoing instrument was electronically filed and served via CM/ECF pursuant to L.B.R. 9036-1. All attorneys and parties identified with the Court for electronic service on the record in this case were served by electronic service in accordance with the CM/ECF system on the date of filing

> /s/ *Kate Potemkin*
> Kate Potemkin