IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT COLORADO

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **SKLAR EXPLORATION COMPANY, LLC** | ) | Case No. 20-12377-EEB |
| **and SKLARCO, LLC** | ) | |
| | ) | Chapter 11 |
| Debtors. | ) | |
| | ) | |
| **SKLARCO, LLC** | ) | Case No. 20-12380-EEB |
| | ) | |
| | ) | Chapter 11 |
| | ) | |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF TAUBER EXPLORATION & PRODUCTION COMPANY; CTM 2005, LTD; PICKENS FINANCIAL GROUP, LLC; I & L MISS I, LP; MER ENERGY, LTD; MR OIL & GAS, LLC; TARA RUDMAN REVOCABLE TRUST; FEATHER RIVER 75, LLC; RUDMAN FAMILY TRUST; AND THE RUDMAN PARTNERSHIP TO DEBTOR'S MOTION TO ASSUME CRUDE OIL SUPPLY CONTRACTS WITH PLAINS MARKETING, L.P., AND ASSET TRANSFER AGREEMENT WITH PLAINS GAS SOLUTION, LLC**
**[Docket No. 218]**

Tauber Exploration & Production Company, CTM 2005, Ltd., Pickens Financial Group, LLC, I & L Miss I, LP, MER Energy, Ltd., MR Oil & Gas, LLC, Tara Rudman Revocable Trust, Feather River 75, LLC, Rudman Family Trust, and The Rudman Partnership (collectively the "Tauber Group Non-operators") hereby submit this limited objection and reservation of rights respecting Debtors' Motion to Assume Crude Oil Supply Contracts with Plains Marketing, L.P., and Asset Transfer Agreement with Plains Gas Solution[sic], LLC ("Debtors' Motion ") and respectfully represent as follows:

1

# I.
# Overview

1. The Tauber Group Non-operators own non-operating working interests in various oil and gas prospects operated by Sklar Exploration and Production Company ("SEC"), located principally in Alabama, Mississippi, and Texas. Sklarco, LLC ("Sklarco") is also a non-operator owning working interests in these prospects. Sklarco and SEC shall collectively be referred to herein as "Debtors."

2. Certain members of the Tauber Group Non-operators are participants in and working interest owners of oil and gas leases within the Escambia Prospect in Conecuh and Escambia Counties, Alabama. Natural gas from Escambia Prospect wells has been treated and processed at the Abbyville Plant in Conecuh County, Alabama pursuant to a Service Agreement among CDM, LLC (predecessor to Plains Gas Solutions, LLC ("PGS")), SEC, and Escambia Prospect working interest owners dated September 14, 2011 ("Abbyville Plant Service Agreement"). CDM, LLC and PGS are collectively referred to as "CDM/PGS."

3. Certain members of the Tauber Group Non-operators are participants in and working interest owners of oil and gas leases associated with other nearby prospects, including the North Beach Prospect, Alabama. Natural gas from North Beach Prospect-wells has been treated and processed at the North Beach Plant, which is adjacent to the Abbyville Plant, in Conecuh County, Alabama, pursuant to a Service Agreement among CDM, LLC, SEC, and applicable working interest owners dated June 22, 2009 ("North Beach Plant Service Agreement").

4. Under the Abbyville Plant Service Agreement, CDM, LLC agreed to construct and operate the plant. The working interest owners dedicated their production from Escambia Prospect wells to the Abbyville Plant and granted CDM/PGS security interests in prospect reserves for periods when CDM/PGS was recovering capital construction costs.

5. CDM/PGS's fees were divided into two time periods: before Payout and after Payout. For time periods prior to CDM/PGS's recovery of capital costs for such construction and a specified rate of return, CDM/PGS was entitled to 75% of the Residue Gas Net Proceeds and 100% of the gross proceeds of natural gas liquids processed through the Abbyville Plant. Following recovery of its capital costs and interests, and until March 1, 2020, the agreement provided that CDM/PGS would continue to own and operate the plant for a fee equal to 25% of the Net Proceeds of plant residue gas and product. Payout for the Abbyville Plant occured in January of 2014 by which time CDM/PGS had recovered $9 million in capital costs plus the specified rate of return from it share of the proceeds of the working interest owners' processed gas.

6. The Abbyville Plant Service Agreement provides that, "to the extent that Sklar is not in material default (after written notice and thirty (30) days opportunity to cure), and Payout has occurred . . . this Agreement shall terminate and Sklar, on behalf of the Customers, shall own and control the Abbyville Plant and Abbyville Plant Assets . . . ." The contemplated conveyance and assignment of the plant and its assets was to be made to "Sklar, on behalf of the Customers, i.e, the working interest owners who had paid for the plant and associated assets.

7. By letter dated February 13, 2020 from SEC to the Escambia Working Interest Owners, SEC confirmed that "ownership in the [Abbyville] Plant is scheduled to vest in SEC, on behalf of the Customers, effective as of March 1, 2020." The letter further advised that CDM/PGS "has agreed to provide transition services for a sixty (60) day period following the Effective Date [March 1, 2020] . . . ." For periods after the transfer of title and operational control to SEC, the letter proposed that SEC manage the plant and assess a management fee of $0.65 per MCF, after recovery of labor and operating costs. Further, the letter promised to forward title transfer "documents to the working interest group for approval prior to execution by SEC."

8. Until the filing of Debtors' Motion on May 4, 2020, the members of the Tauber Group Non-operators participating in the Escambia Prospect, i.e. the beneficial owners-to-be of the Abbyville Plant, who had been investing in the plant since 2011, received no communication from SEC that transfer of the Abbyville plant title and associated assets had not been completed. Contrary to SEC's promise of February 13, 2020, however, SEC's President and CEO signed the Asset Transfer Agreement with an effective date of March 1, 2020, without having first submitted the document to the working interest group for approval. How operations of the plant have been conducted since March 1, 2020 is not known. And, while some members of the Tauber Group Non-operators initially concurred in the SEC proposed Abbyville Plant management fee, others have withheld consent to amend the Escambia Participation Agreement to add a new JOA Exhibit F, thereby rendering ineffective, the plant management fee Exhibit F would include if approved by all Escambia working interest owners.

## II.
## Limited Objection

9. Against this backdrop and given the nature of this case, the Tauber Group Non-operators have several concerns.

10. First, the Tauber Group Non-operators request an explanation from SEC as to how a deficiency in payment from SEC to CDM/PGS could arise since the fees collected by CDM/PGS for operation of the Abbyville Plant were netted by CDM/PGS from the proceeds obtained for plant products and residue gas.

11. Second, the Tauber Group Non-operators request confirmation that if the Asset Transfer Agreement is assumed by Debtors, the cure amounts associated with such assumption will come from the Debtors' estates and not from the non-operating working interest owners, either in the form of JIBs or otherwise.

12. Third, if the Asset Transfer Agreement is assumed and title to the Abbyville Plant and North Beach Plant (and associated assets) pass to SEC "for and on behalf of the Customers," the Tauber Group Non-operators request that, with the exception of Sklarco's undivided beneficial interest share, the remaining ownership of those assets be clearly designated as the assets of the beneficial owners and not subject to creditors liens or interests in after-acquired title applicable to the Debtors' estates.

13. Fourth, the Tauber Group Non-operators request confirmation that the assumption of the Asset Transfer Agreement not prejudice the rights of the Tauber Group Non-operators to challenge and contest the validity of the Plant Management fees sought to be imposed by SEC in accordance with its written communication of February 13, 2020 and the Debtors' Budget.

14. Fifth, that following the assumption of the Asset Transfer Agreement, the working interest owners with beneficial interests in the Abbyville Plant and associated assets seek to be permitted to direct that title to the same be transferred to a special purpose entity to be formed by said working interest owners (or as otherwise directed by the working interest owners) and removed from legal ownership or control by SEC.

### III.
### Argument and Authorities

#### A. *It is unclear that the contracts in question are executory.*

15. Generally, a contract is executory for purposes of §365(a) when each party to the contract has ongoing duties and obligations such that the contract remains materially unperformed on both sides. *In re Wagers,* 340 B.R. 391 409 (Bankr. D.Kan. 2006) (citing *Collier on Bankruptcy* ¶365.02[1]), s*ee also In re Busetta-Silvia,* 308 B.R. 537, 540 (Bankr.D.N.M. 2004), *rev'd on other grounds,* 314 B.R. 218 (10th Cir. BAP 2004) (noting that the Tenth Circuit has defined "executory

5

contract" generally as "a contract that has not as yet been fully completed or preformed [sic] and in which future obligations remain, or in which material performance remains due on both sides.") (citing *United States v. Myers (In re Myers)*, 362 F.3d 667, 672-73 (10th Cir.2004) (citations omitted.)); *In re Botter,* 261 B.R. 269, (Bankr.D.Kan. 2000) (noting that"[c]ourts typically rely on Professor Countryman's more detailed definition: 'A contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other.'") (quoting Countryman, *Executory Contracts in Bankruptcy*, 57 Minn. L.Rev. 439, 446 (1973) (remaining citations omitted).

16. The Abbyville Plant Service Agreement provides that, "to the extent that Sklar is not in material default (after written notice and thirty (30) days opportunity to cure), and Payout has occurred . . . this Agreement shall terminate and Sklar, on behalf of the Customers, shall own and control the Abbyville Plant and Abbyville Plant Assets . . . ." The Debtors do not allege that any such notice and opportunity to cure was ever given. If no such notice was given, then there is no further obligation to perform by Debtors and only the contract counterparty has failed to perform. Hence, the contract is not executory.

    B. ***In the event the contract is found to be executory, the working interest owners should not be required to fund any cure cost.***

17. SEC was obligated to ensure that all payments required in order for the Abbyville Plant to be conveyed to SEC as nominee on behalf of the working interest owners were made. Any cure cost that may be required in the event the contract is found to be executory and is assumed, must be paid by SEC, as the Tauber Group Non-Operators had no obligation to make such payment.

6

18. Finally, the documents vesting title in the plant must provide that title is held by SEC strictly as nominee for the working interest owners and that full beneficial title is vested in the working interest owners.

Dated this 19th day of May, 2020

Respectfully submitted,

**Maynes, Bradford, Shipps & Sheftel, LLP**
*/s/ Thomas H. Shipps*
Thomas H. Shipps
*/s/ Shay L. Denning*
Shay L. Denning
Maynes, Bradford, Shipps & Sheftel, LLP
835 E. Second Ave., Suite 123
Durango, CO 81301
Telephone: (970) 247-1755
Cell: (970) 749-1479; (970) 946-0846
Facsimile: (970) 247-8827
Email: tshipps@mbssllp.com;
 sdenning@mbssllp.com
and

*/s/ Barnet B. Skelton, Jr.*
Barnet B. Skelton, Jr.
815 Walker, Suite 1502
Houston, TX 77002
Telephone: (713) 659-8761
Cell: (713) 516-7450
Facsimile: (713)659-8764
Email: barnetbjr@msn.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on May 19, 2020, the foregoing instrument was electronically filed and served via CM/ECF pursuant to L.B.R. 9036-1. All attorneys and parties identified with the Court for electronic service on the record in this case were served by electronic service in accordance with the CM/ECF system on the date of filing.

/s/ *Kate Potemkin*
Kate Potemkin