UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC | ) | |
| EIN: 72-1417930 | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| | ) | Case No. 20-12380-EEB |
| SKLARCO, LLC | ) | |
| EIN:  72-1425432 | ) | Chapter 11 |
| Debtor. | ) | |

**MOTION FOR ENTRY OF ORDER AUTHORIZING DEBTORS' EMPLOYMENT OF
CR3 PARTNERS AS CHIEF RESTRUCTURING OFFICER
EFFECTIVE AS OF MAY 21, 2020**

The Debtors, Sklar Exploration Company, LLC ("SEC") and Sklarco, LLC ("Sklarco" or "Debtors"), by and through their attorneys, Kutner Brinen, P.C., move the Court for entry of an Order pursuant to 11 U.S.C. §§ 105(a) and 363(b) authorizing the Debtors to employ CR3 Partners ("CR3") as Chief Restructuring Officer ("CRO") effective as of May 21, 2020 for SEC and Sklarco, and in support thereof state as follows:

**BACKGROUND**

1.     The Debtors filed for relief under chapter 11 of the Bankruptcy Code on April 1, 2020.  The Debtors remain Debtors-in-Possession.

2.     The Office of the United States Trustee appointed an Official Committee of Unsecured Creditors ("Committee") on April 16, 2020.

3.     SEC is engaged in business as an independent exploration and production company in the oil and gas industry.  SEC is an operating company and does not own oil or gas properties. SEC has its principal business office in Boulder, Colorado and has additional offices in Shreveport, Louisiana and Brewton, Alabama.  SEC's exploration and production activities are primarily located in East Texas, North Louisiana, South Mississippi, South Alabama and the Florida Panhandle.  SEC is also developing properties and opportunities in the western United States, though no oil or gas production has been produced from the wells in the western United States.

4.      Sklarco is a Louisiana limited liability company engaged in business as the owner of certain oil and gas leases and property interests in East Texas, North Louisiana, South Mississippi, South Alabama, the Florida Panhandle, and the western United States.

5.      As of the Petition Date, SEC was the operator of approximately 60 wells, and was in the process of developing several new prospects, including an oil well and helium well in Montana, a well and pipeline in Florida, and several new wells in Alabama.

6.      On April 6, 2020 the Debtors filed their Motion for Authority to Use Cash Collateral in which the Debtors' prime lender East West Bank as Agent and Lead Arranger ("Bank") currently holds a claim secured by assets of SEC and Sklarco for approximately $22,350,000.

7.      In response to the Cash Collateral Motion, various holders of working interests ("WI") who are party to one or more Joint Operating Agreements ("JOA") with the Debtors filed objections to the Debtors' use of cash collateral.

8.      Following a two-day trial on the Debtors' continued use of cash collateral, the Court entered the Third Interim Order Authorizing Use of Cash Collateral ("Third Cash Collateral Order"). The Third Cash Collateral Order states, in relevant part,

> As additional adequate protection, the Debtors hereby consent to the appointment of a chief restructuring officer ("CRO") to manage and/or oversee the day-to-day operations and business of the Debtors during the pendency of these chapter 11 cases. The identity of the CRO and the terms of the CRO's appointment shall be agreeable to the Committee and EWB, with reasonable consultation by the Debtors and the Interest Holders, and shall be submitted for the Court's approval on motion filed by the Debtors prior to the final hearing or the next interim hearing on Cash Collateral.

9.      In consultation with the Committee and the Bank and after consideration of alternative choices by all three parties, the Debtors have agreed to the appointment of CR3 as CRO effective as of May 21, 2020 for the bankruptcy case. The Debtors understand that the Committee and Bank also support CR3's appointment as CRO.

10.     CR3 is a nationally recognized turnaround and performance improvement firm. CR3's team of over 38 professionals have a wealth of knowledge and experience providing restructuring advisory services and have an excellent reputation for services rendered in complex cases throughout the United States. A Statement of Qualifications for CR3 is attached hereto as

Exhibit A, and additional information about CR3 and its professionals can be found at https://www.cr3partners.com/.

11.     CRO services will be managed by James Katchadurian and Todd Bearup.  Mr. Katchadurian has significant experience in insolvency matters and has acted the CRO or financial advisor for numerous companies, including acting as the CRO for oil and gas producer, Northstar Offshore Group, Case No. 16-34028 (Bankr. S.D. Tex., filed August 12, 2016).  Mr. Bearup is based out of Denver, Colorado and has acted as a financial advisor for numerous companies during Chapter 11 cases.

## ENGAGEMENT OF CR3

12.     The Debtors seek authorization to employ CR3 in accordance with the terms of the Engagement Agreement attached hereto as Exhibit B.

13.     Pursuant to the Engagement Agreement, CR3 will manage the Chapter 11 cases, including managing day to day activities and SEC's cash and accounts.  CR3 will provde Mr. Katchadurian who will serve as a duly appointed officer of the Debtors and a member of the management team, and serve as the Debtors' primary representative in the case.  As a duly appointed officer, Mr. Katchadurian will consult with the Manager of the Debtors, Howard Sklar, and the other officers employed by the Debtors.  Mr. Bearup will assist Mr. Katchadurian along with other professionals as required from CR3.

14.     The full scope of CR3's authority as CRO, as agreed to by the Debtors[1], the Committee, and the Bank, includes:

a.     Operating the Debtors during the bankruptcy case and acting with authority with respect to all aspects of the Debtors' day to day business activities and operations, including budgeting, cash management and financial management;

b.     Opening and closing bank accounts of the Debtors;

c.     Negotiating with the Debtors' creditors, including the Bank, vendors, trade creditors, and the working interest holders;

d.     Hiring and terminating of non-officer employees of the Debtors;

[1] The Debtors have also provided information regarding CR3 and the proposed scope of authority to the holders of certain working interests who previously filed objections to the Debtors' Motion for Authority to Use Cash Collateral. Discussions with these parties are ongoing, and will continue while this Motion is pending.

e.     Reviewing daily operating activity, including reviewing purchases and expenditures to ensure compliance with applicable Orders and budgets, including Orders authorizing the use of cash collateral;

f.     Preparing budgets for submission to the Bankruptcy Court and creditors;

g.     Evaluating liquidity options including restructuring, refinancing, reorganizing, or a sale of the Debtors' assets pursuant to Section 363 of the Bankruptcy Code, subject to approval of the Bankruptcy Court, and developing a plan for same;

h.     Causing the Debtors to exercise the Debtors' rights under any agreements;

i.     Attending hearings and acting as the Debtors' primary representative in court hearings and providing testimony as appropriate;

j.     Acting as the authorized signor on relevant amendments to petitions and schedules;

k.     Developing and reviewing monthly operating reports and ensure they are filed on a timely basis with the Bankruptcy Court;

l.     Evaluating and pursuing any litigation and claims held by the estate;

m.     Acting as the party with ultimate authority for corporate decisions; and

n.     Performing such other advisory services and/or other functions as are customarily provided in connection with any of the services contemplated by this Engagement Agreement as requested by the Debtors or their counsel to assist the Debtors in this Chapter 11 case and mutually agreed to by CR3.


15.     In accordance with the Engagement Agreement, CR3 will bill for its services on an hourly basis.  Mr. Katchadurian bills at a rate of $725 per hour, and will be capped at $23,500 per week.  Mr. Bearup bills at a rate of $625 per hour.  CR3 may also utilize other employees to provide services for the Debtors.  A schedule of hourly rates charged by other employees is as follows:

| Partner: | $625/hr. - $795/hr. |
| Director: | $450/hr. - $625/hr. |
| Manager: | $450/hr. |
| Associate: | $300/hr. |

16.     The compensation is reasonable given the size and scope of CR3's engagement.

17.     The Debtors shall also be required to reimburse CR3 for all reasonable travel-related expenses, and an administrative charge of 1% of professional fees incurred, which will cover other costs including postage, copies, and printing charges.

18.     CR3 has also requested a retainer in the amount of $100,000 which will be held until the termination or completion of the engagement.  At the time of termination or completion, any unpaid fees and expenses due will be deducted from the retainer, and any balance will be returned to the Debtors.  A separate motion to approve the retainer is being filed concurrently herewith.

19.     The Debtors will also indemnify CR3 against any losses, claims, damages, liabilities, or expenses arising out of or related to CR3's engagement as CRO for the Debtors.

## LEGAL AUTHORITY

20.     The Debtors seeks authorization to employ CR3 as CRO pursuant to 11 U.S.C. §§ 105(a) and 363(b)(1).

21.     Pursuant to section 363(b)(1), the debtor may "use, sell or lease, other than in the ordinary course of business, property of the estate[.]"

22.     Section 105(a) further provides that, "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

23.     Numerous courts have authorized the engagement of a CRO in accordance with sections 105(a) and 363(b)(1) when doing so is a sound exercise of the debtors' business judgment. *See e.g., In re Ajubeo, LLC*, Case No. 17-17924-JGR, 2017 WL 5466655, 2017 Bankr. LEXIS 4014, at *8-9 (Bankr. D. Colo. Sept. 27, 2017)(authorizing the employment of a CRO due to unique circumstances); *In re Nine W. Holdings, Inc.*, 588 B.R. 678, 692-93 (Bankr. S.D.N.Y. 2018)(authorizing the retention of a CRO under section 363(b) and denying the United States Trustee's request to have such CRO be treated as a professional under section 327); *In re Copenhaver, Inc.*, 506 B.R. 757, 764-65 (Bankr. C.D. Ill. 2014)(authorizing the employment of a current director as CRO under section 363(b) given the "unique and compelling" circumstances).

24.     Appointment of CR3 as CRO is a sound exercise of the Debtors' business judgment and is appropriate given the unique circumstances of this case.  The Debtors will benefit from the services of a professional reorganization manager with significant experience and knowledge of the oil and gas market.  In addition, the provision of control to the CRO over the finances of the

Debtors, including but not limited to the bank accounts will provide substantial security to the creditors in this case.

25.     The appointment of CR3 as CRO will introduce a neutral party to the Debtors' continued interactions with the working interest holders, will ensure additional oversight in the Debtors' management of its ongoing operations, and will further provide additional oversight to the Debtors' compliance with its fiduciary duties, including pursuing avoidance actions held by the estate.

26.     Furthermore, the Bank has conditioned the Debtors' continued use of cash collateral on the Debtors appointment of a CRO to complete budgets for the Debtors' use of cash collateral as needed and oversee the Debtors' cash flow and expenditures.

27.     While CR3 is not being employed pursuant to section 327, to the best of Debtors' knowledge and CR3's knowledge, CR3 does not have any relationship which would result in a conflict of interest with the Debtors, the Debtors' attorneys, the creditors or any other party in interest or their respective attorneys and is "disinterested" as defined by 11 U.S.C. § 101(14).  A Declaration of Mr. Katchadurian in support of the Motion is attached hereto as Exhibit C.

28.     The appointment of CR3 as CRO is in the best interest of the Debtors, the respective estates, and the creditors, and will provide additional assurances to creditors that the Debtors are being managed efficiently and complying with their fiduciary duties under the Bankruptcy Code.

29.     While CR3 is not being employed as a professional pursuant to Section 327, CR3 will nonetheless comply with the Order Approving Interim Advance Payment Procedures and will file fee applications in this case.

30.     Notice of this Motion is being provided to the 20 largest unsecured creditors, the United States Trustee, and all parties who have entered an appearance in this case in accordance with the Order Granting *Ex Parte* Motion for Entry of Order Limiting Notice (Docket No. 263). The Debtors, Committee, and Bank agree that time is of the essence in appointing CR3 as CRO. Accordingly, the Debtors are filing a Motion to Shorten Notice concurrently herewith.

31.     To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances and that the Court waive the 14-day stay of an Order authorizing the use of property under Bankruptcy Rule 6004(h) to the extent applicable.

WHEREFORE, the Debtors pray the Court make and enter an Order authorizing the Debtors to appoint CR3 Partners as Chief Restructuring Officer effective as of May 21, 2020, and for such further and additional relief as to the Court may appear just and proper.

DATED: May 21, 2020                          Respectfully submitted,

By:   _/s/  Keri L. Riley_
        Lee M. Kutner #10966
        Keri L. Riley, #47605
        **KUTNER BRINEN, P.C.**
        1660 Lincoln St., Suite 1850
        Denver, CO 80264
        Telephone: (303) 832-2400
        E-Mail: lmk@kutnerlaw.com
        E-Mail: klr@kutnerlaw.com

Exhibit A



# STATEMENT OF QUALIFICATIONS

## for

## OIL AND GAS INDUSTRY



CR3 | PARTNERS

Partners For The Road Ahead

**May 2020**

# TABLE OF CONTENTS

**CR3 OVERVIEW AND APPROACH**

INDUSTRY OVERVIEW

OUR TEAM

OUR RATES

APPENDIX: CASE STUDIES



CR3 | PARTNERS

# WHO WE ARE

As a national restructuring, turnaround and performance-improvement firm, we assist, guide and collaborate with management teams and their constituents while they face any sort of transition, stress or distress.

# WHAT WE DO

We provide experienced leaders to identify and implement operational and financial improvements that achieve quick and measurable results, whether as CxO or advisor.



  

## CREDIBILITY

- Straight-shooting, collaborative partners
- Fast and efficient at identifying issues and roadblocks
- Rely on our experience and reputation with stakeholders
- Practical solutions
- Intelligent forecasting

## HANDS-ON LEADERSHIP

- Deep industry knowledge derived from working in operating (CxO) positions within companies
- Extensive process expertise in restructuring and turnaround
- Bias for action
- Rebuild stability, credibility and value at every step of the engagement
- Dexterity of implementation

## SERVICES

- Business assessment
- Due-diligence support
- Performance improvement
- Turnaround management
- Interim management
- Bankruptcy advisory
- Asset monetization
- Trustee, examiner and fiduciary

# OUR APPROACH



## What we do

- **We plan.** If you don't know where you're going, you'll never get there.

- **We implement.** A plan without execution is a hopeful wish.

- **We drive change.** We lead as advisor, interim manager or executive coach.

- **We achieve results.** Whatever it takes, we get it done.

## How we get there

1. **Assess** the situation – identify opportunities for improvement.

2. **Stabilize** the business – financially and organizationally.

3. **Improve** performance – clarify metrics and track progress to goals.

4. **Transition** to the next stage – an improved business model, leadership team, execution strategy and/or growth opportunity.

# OUR INDUSTRIES

We bring industry knowledge to every engagement, but we cross-pollinate as well. Bringing learning cross-industry accelerates change and helps us avoid insular thinking. Industry experts? You'll see them on every project, but we'll push for breadth of experience on our teams too.

- AEROSPACE
- AGRICULTURE
- APPAREL
- AUTOMOTIVE
- AVIATION
- BUILDING PRODUCTS
- CHEMICALS
- CONSTRUCTION/CONTRACTING
- CONSUMER PRODUCTS
- DISTRIBUTION & LOGISTICS

- ENERGY
  - EXPLORATION
  - PRODUCTION
  - REFINERY
  - SERVICES
  - MIDSTREAM
- ENGINEERING SERVICES
- ENVIRONMENTAL
- FOOD & BEVERAGE
- HEALTHCARE
- HOSPITALITY
- LIFE SCIENCE & BIOTECH
- MANUFACTURING
- MEDIA & ENTERTAINMENT

- NONPROFIT
- PROFESSIONAL SERVICES
- PUBLISHING
- REAL ESTATE
- RESTAURANTS
- RETAIL
- STAFFING
- TECHNOLOGY
- TELECOMMUNICATIONS
- TRANSPORTATION
- UTILITIES

# SERVICE OFFERINGS SUMMARY

- Interim Management - CxO
  - CR3 Professionals have acted in an interim management role in a variety of oil and gas assignments
  - Most commonly as a Chief Restructuring Officer ("CRO") reporting to the Board of Directors of a distressed company with a specific mandate – i.e. sale of assets, consummation of a restructuring, or operational turnaround
  - We have also acted in other interim management positions, including CEO, CFO, and in a financial advisory capacity, both in- and out-of-court
  - See Appendix for case studies, which represent specific situations

- Independent Director ("ID") Role -
  - Typically the purpose of appointing an ID is to provide the company independent unbiased advice on the disposition of a company
  - Typical mandates would include the sale of assets or consummation of a distressed transaction
  - ID roles can also oversee a restructured asset once a sale/foreclosure action has taken place with the mandate to monetize the asset for the benefit of creditors/equity as the situation warrants

# FIDUCIARY SERVICE OFFERINGS

- CR3 Partners have also acted in a variety of fiduciary roles, including:
  - o Receiver
  - o Examiner
  - o Trustee

- Our case experience is equally divided between in- and out-of-court matters

- All of these roles require restructuring and industry experience as well as an understanding of the available options for the monetization of assets at the appropriate time

- We are familiar with the courts in the Southern District of Texas and have appeared frequently before both Judge Isgur and Jones

- We have also appeared in courts all across the country especially in New York and Delaware

- In many instances we have testified in court on a variety of issues

# TABLE OF CONTENTS

CR3 OVERVIEW AND APPROACH

**INDUSTRY OVERVIEW**

OUR TEAM

OUR RATES

APPENDIX: CASE STUDIES



# INDUSTRY TRENDS: OIL AND GAS

To identify industry trends, we created a data set of companies from the weekly watch lists between February 2020 and April 2020:

1.  If a company appeared on the watch list during the three-month period;
2.  How many times it appeared on the watch list during the three-month period ("repeat offenses"); and
3.  How many times that company was a repeat offender in the preceding nine months ("Months 4-12").



| | |
|---|---|
| Last month's total | 58 |
| Last three months' total | 144 |
| Last 12 months' total | 412 |

# CR3 PARTNERS OIL & GAS EXPERIENCE

## DISTRIBUTION OF ENERGY RELATED MATTERS



# RELEVANT OIL & GAS EXPERIENCE

| Company | Client Description |
|---------|-------------------|
| Advanced Pipeline Services, LLC | Oil field services company, providing equipment rental |
| Age Refining | San Antonio based refinery |
| Oklahoma Based O&G Company | Oklahoma based E&P company |
| Bridas Corporation | Argentina based international energy company |
| British Petroleum Chemical Co. | International integrated oil major |
| Costilla Energy, Inc. | Public Texas based E&P company |
| Indiana E&P Company | Public Swedish base E&P company |
| Dune Energy Inc. | Shallow water E&P company |
| Eagle Geophysical, Inc. | International seismic acquisition services company |
| Empiric Energy, Inc. | Oil and gas development company |
| Enerven Compression, LLC | Gas compressor rental and servicing company |
| Houston Based Engineering Firm | Engineering and professional services company |
| EOTT Energy Partners | Oil pipeline and storage facilities company |
| EV Energy | Texas based E&P company |
| First River Energy | Oil marketer and transportation company |
| Flying J Inc. | Privately-held integrated energy company |
| Francis Drilling Fluids | Energy transporter provider |
| Frontier Oilfeld Services | Salt water disposal company |
| Halliburton Company | International energy services provider |
| HVI Cat Canyon | California based E&P company |

# RELEVANT OIL & GAS EXPERIENCE

| Company | Client Description |
|---|---|
| Lake Erie Biofuels | Pennsylvania based biofuel producer and diesel distributor |
| Oklahoma Based Drilling Company | Drilling contractor and heavy haul trucks company |
| Lockwood International | Distributor of pipe, valves, and oil and gas products |
| McCommas Partners | Landfill processing facility |
| Houston Based Oilfield Services | Oilfield services company |
| Mirant | Power generator |
| Texas Based E&P | Permian Basin E&P company |
| Murphy Energy Corporation | Energy midstream company |
| Northstar Offshore Group LLC | Gulf offshore E&P company |
| Nuverra Environmental Solutions | Water removal company for the energy industry |
| Fabricator and Lessor of Marine Vessels | Largest US based lessor and fabricator of marine vessels |
| Offshore Oilfield Services | Offshore oilfield services of vessel support and supply |
| Offshore Tool and Energy | Manufacturer of energy services related equipment |
| Orion Refining | Louisiana based refinery |
| Petsec Energy, Inc. | Exploration and Production subsidiary |
| Placid Oil Company | International integrated energy company |
| Quicksilver Resources | E&P natural gas producer in the Barnet Shale |
| Ranger Offshore Inc | Subsea construction and related support services |
| Oklahoma Based O&G Company | Oklahoma based E&P company |
| Saddle Creek Energy Development | Texas based E&P company |

# RELEVANT OIL & GAS EXPERIENCE

| Company | Client Description |
|---|---|
| Seismic Equipment Solutions II LP | Seismic land equipment company |
| Shale Support Services, LLC | Mine and manufacture frac sand |
| Southern Mineral Corporation | Publicly held international E&P company |
| Energy reseller | Energy reseller of electric and gas services |
| Sundance Resources | Natural Gas Exploration |
| Tejas Tubular Products Inc | Oilfield tubular goods processor |
| Texas Honing | Manufacturer of energy related equipment |
| TK Stanley | Oilfield services for preparation of roads and pad sites |
| Trico Marine | Offshore marine equipment for lease and rent |
| Trinity River Energy | A oil and gas producer |
| Venoco Inc. | Drilling contractor primarily in California |
| Vertex Energy Inc | Oil recycler |

# TABLE OF CONTENTS

CR3 OVERVIEW AND APPROACH

INDUSTRY OVERVIEW

**OUR TEAM**

OUR RATES

APPENDIX: CASE STUDIES



CR3 | PARTNERS

# OUR TEAM

Our professionals are seasoned advisors and executives who bring a broad base of industry experience with proven analytical and leadership skills. Whether eliminating operational inefficiencies, solving a working-capital shortfall, providing urgent crisis management or guiding a company through an out-of-court or in-court restructuring, we can quickly assess, stabilize and implement the best options for each situation.

It is not uncommon for our clients to begin with a restructuring need and evolve to a performance-improvement or Interim CxO need. Wherever you are in your organizational transition, we can bring you the right team.

At CR3 Partners, we use a reverse pyramid. We do not believe in high-leverage staffing models. Our professionals provide operational insight that can come only through years of hands-on experience. We have served in all capacities, including but not limited to CEO, COO, CFO and CRO.

**CR3 offers a beneficial mix of:**

- Great results, time after time, in all major industries

- Senior and experienced professionals

- Easy to work with in the trenches

- Outstanding customer service (never a bait-and-switch)

- Priced for the middle market but competitive in skill and pedigree with top-tier firms

# SELECT CANDIDATE PROFILES

Along with the case manager, one or more of the professionals below would be assigned to the engagement as needed. Profiles are provided for your consideration.

- William Snyder, Partner

- James Katchadurian, Partner

- Greg Baracato, Partner

- Mike Juniper, Partner

- Cade Kennedy, Director

- Todd Bearup, Director

*Please note that we do not reserve any staff for projects until receipt of signed engagement letter and retainer fee.  Availability subject to change.*



# William Snyder

## Partner, Dallas

(214) 415-7167

[william.snyder@cr3partners.com](mailto:william.snyder@cr3partners.com)

## Industries

- Oil & Gas
- Manufacturing
- Healthcare
- Restaurants & Foodservice
- Distribution
- Fashion/Apparel
- Telecommunications
- Transportation & Logistics
- Agriculture
- Retail

## Education & Certifications

- B.S., Texas A&M University, *cum laude*
- Certified Turnaround Professional
- Fellow, American College of Bankruptcy

With executive and entrepreneurial experience spanning close to 40 years, William Snyder has restructured, managed and guided a multitude of companies in a wide variety of industries. William is a broadly experienced restructuring professional who has participated in the restructuring of hundreds of companies and has acted as a fiduciary in many cases. He brings a meaningful style of results-driven leadership to complex crisis situations.

Prior to joining CR3 Partners, William served as a partner in several firms. Most recently, he was the Market Offering Leader for the Deloitte Corporate Restructuring Practice in the U.S. and the Americas. He is speaker and presenter on a wide range of turnaround topics.

## Representative Experience

- CRO of Permian Basin E&P company
- CRO of the Texas Rangers Baseball team.
- CRO of Pilgrim's Pride, an $8B poultry company.
- Court-appointed Examiner of Mirant, a $6.5B merchant energy company.
- COO of a $200MM furnishing retailer.
- Interim-CEO of a $210MM mattress retailer.
- CFO of a $250MM building products manufacturer.
- CFO of a $250MM computer manufacturer.
- CIO of an $800MM healthcare company.
- Advisor to $500MM staffing company.
- Advisor to $1.4B logistics company.
- Advisor to $2B construction contractor.



## James Katchadurian

**Partner, New York**

(914) 646-9451

james.katchadurian@cr3partners.com

### Industries

- Oil & Gas
- E&P Services
- Aviation
- Financial
- Automotive
- Healthcare
- Publishing
- Entertainment
- Real Estate
- Shipping
- Media

### Education & Certifications

- B.A., Syracuse University
- Fellow of INSOL International

James Katchadurian has significant experience in several highly visible insolvency matters. His responsibilities have focused on advising companies in all aspects of a restructuring, including preparing debtors for filing, managing, designing and implementing debtors' communications, strategic, claiming and reconciliation processes as well as plan and balloting advice, crisis management and advisor to creditors, equity investors and companies in distressed situations.

James underwent credit training at Manufacturers Hanover Trust Co. He is a Fellow of INSOL International and a member, speaker and author of the American Bankruptcy Institute (ABI) and Turnaround Management Association (TMA).

### Representative Experience

- CRO of oil and gas producer, Northstar Offshore Group, during Chapter 11 and related 363 sale process. Liquidating trustee of the Northstar creditors trust
- Bank syndicate financial advisor to a Gulf of Mexico based maritime service and construction provider with $300mm of debt – successful refinance and now ongoing monitoring
- Financial advisor to a Seismic equipment rental provider – successfully monetized assets to repay facility and achieve asset sales in a difficult oversaturated marker
- Financial advisor to Gulf of Mexico based maritime construction company – successfully consummated sale of substantially all assets
- Advisor to an advertising and media company. Oversaw plan to drive company through significant industry transformation.
- CFO and Treasurer of Regency Holdings Inc., cruise line with multinational assets as the business underwent a chapter 11 process.
- Advisory team leader for Energy Future Holdings/TXU Energy as company navigated its Chapter 11 process. Assisted in design of customer notice and communications plan to 3.5M TXU customers as well as a novel notice and communications plan to capture information from potential un-manifested asbestos claimants.
- Represented Lehman Brothers Holdings in its Chapter 11 process as well as the SIPA liquidation of its broker dealer, Lehman Brothers Inc. Led the team that gathered information from Lehman post-collapse and provided general advice to the debtors.
- Represented MF Global Inc., a broker-dealer, in liquidation as company underwent a multi-year process to unravel amounts owed to customers.
- Advised the three Icelandic banks in moratorium. Worked closely with banks, advisors and creditors to implement plan of reorganization and composition process, allowing banks to emerge from the insolvency process and distribute funds and securities to creditors.



# Greg Baracato
**Partner, Dallas**

(214) 215-3940

greg.baracato@cr3partners.com

## Industries
- Energy
- Airlines
- Distribution
- Retail
- Financial Services
- Gaming
- Mining
- Technology

## Education & Certifications
- B.S., Louisiana Tech University
- M.B.A., Louisiana Tech University
- Certified Turnaround Professional
- Certified Insolvency and Restructuring Advisor

With over 30 years of experience in business consulting, corporate management and restructuring, Greg Baracato has substantial expertise in rendering financial advisory and reorganization services on behalf of varied stakeholders in the restructuring and turnaround arena. His U.S. and international industry experience includes evaluation of operations, developing reserve based borrowing capacity models, public offerings converting debt to equity, bank group negotiations and cost reduction initiatives.

Greg is an active member of the restructuring professional community and served as president of the Dallas Turnaround Management Association.

## Representative Experience
- Officer and Financial Planning Manager for 15 years at Placid Oil Company, an international integrated energy company.
- Assisted Southern Mineral Corporation, an oil & gas exploration company in a public offering to convert debt to equity through a Chapter 11 reorganization plan.
- Assisted Petsec Energy, Inc., and oil and gas exploration company in developing a reserve based borrowing base capacity model to use in refinancing negotiations with the lender group.
- Restructuring advisor to BP Chemicals relative to its investment in facilities operated by a Debtor and assisted in negotiation of settlements with the Unsecured Creditors Committee and the Debtor; assistance included financial and strategic evaluation of various alternative settlement agreements.
- Assisted a Halliburton Company, an international energy services company, in its financial and strategic restructuring in order to eliminate the uncertainty due to its $5 billion liability from over 300,000 asbestos lawsuit claims.
- Developed a business plan and model for use in negotiations with the bank group in the restructuring of an Eagle Geophysical, an energy services company with operations in Argentina, Bolivia, Canada, United Kingdom and the US.
- Chief Restructuring Officer in the Chapter 11 reorganization of Francis Drilling Fluids. Led company in a successful balance sheet restructuring leaving the company in a stronger competitive position and improved profitability.
- Assisted Bridas Corporation a $1.6 billion Argentina multinational energy company in a dispute with a former Russian state to minimize the impact of the dispute on operations and prepared expert reports filed in an ICC arbitration resulting in damage awards in excess of $2 billion.
- Financial advisor to a 15,000 bpd crude refiner. Advisory services included preparation of business plan evaluation and interface with bank regarding same. Implemented a 13 week cash flow including projected borrowing base report for bank borrowing base compliance purposes.



## Mike Juniper
**Partner, Dallas**

(314) 374-4543
mike.juniper@cr3partners.com

### Industries
- Durable & Consumable Goods
- Distribution
- Manufacturing
- Retail
- Oil & Gas
- Biofuels
- Protein

### Education & Certifications
- B.B.A., University of Arkansas at Little Rock
- M.B.A., Washington University in St. Louis
- Certified Turnaround Professional

Mike Juniper has 15 years of experience in financial and operational analysis and improvement, turnaround and restructuring consulting, and interim management. He has served as an advisor to numerous companies through Chapter 11 proceedings.

Prior to joining CR3, Mike served in finance functions for private distribution companies. He has extensive experience in the food processing, manufacturing, and consumer products industries. He is active in the restructuring community, serving previously as Dallas/Ft. Worth TMA president and currently on the board of the Dallas/Ft. Worth TMA.

### Representative Experience
- Advisor to a $4B food manufacturing business on a performance improvement engagement
- Chief Restructuring Officer for a licensed seller of cell phones in Texas
- Chief Restructuring Officer for ALCO Stores, Inc., a 198-store general merchandise retailer
- Advisor to Tully's Coffee Shops during reorganization. Awarded 2014 TMA Turnaround of the Year – Small Transaction category
- Advisor to equity of the MLB Texas Rangers during Chapter 11 proceedings and sale of the team
- Advisor to Pilgrim's Pride, an $8.5B Fortune 500 food company during Chapter 11 proceedings
- Interim CFO for 135 location convenience store chain during Chapter 11 proceedings and sale Successfully sold all stores through a unique 363 auction.
- Restructuring advisor and Interim-CFO/COO for 110 million gallon ethanol facility
- Advisor, Controller and Acting CFO to food manufacturer and distributor
- Financial advisor to branded and private label apparel manufacturing company. Assisted with divestiture of non-core assets and other restructuring activities.
- Advisor to $200MM branded durable goods manufacturer on process improvement and debt restructuring

# Cade Kennedy

## Director, Dallas

(281) 224-9637

cade.kennedy@cr3partners.com

## Industries

- Oil & Gas
- Distribution
- Financial Services
- Manufacturing
- Real Estate
- Retail
- Transportation

## Education & Certifications

- B.B.A., Texas A&M University
- M.B.A., Rice University
- Certified Insolvency and Restructuring Advisor

Cade Kennedy is an accomplished financial and operational strategist with over 20 years of experience in building financial infrastructures, developing initiatives for corporations across various industries, and negotiating deals. He is skilled at capital analytics, treasury management, executive advisory, risk management, cash forecast modeling, and financial analysis and modeling.

Cade has earned Distressed M&A Deal of the Year Award for his work with $500MM independent oil and natural gas company and has been recognized with Turnaround Management Association's Mega Transaction of the Year Award for his work with commercial aviation business and airline holding company. He is also a Board Member for Turtle Creek Recovery Center.

## Representative Experience

- Interim management for upstream oil and gas company with $2B of debt where he assisted in vendor/critical vendor management, G&A cost take-out, contract negotiations, management of successful 363 sale process and liquidating wind-down plan for the estate's residual assets
- Interim management for $200MM paper manufacturing company where he extended the liquidity runaway, managed vendor relationships, and successfully completed 363 asset sale.
- Led numerous Chapter 11 bankruptcy filings including company preparation of first-day motions, stakeholder communications, vendor and creditor negotiation, bankruptcy reporting, and claims reconciliation.
- Assisted $9B B2B office supplies retail company where he developed $230M+ working capital improvement plan that included managing Order to Cash and Procure to Pay working capital cycles.
- Assisted $400MM manufacturing company where he created $40MM working capital improvement plan that spanned Order to Cash, Procure to Pay, and Forecast to Fulfill working capital cycles.
- Assisted oil and gas company where he led working capital optimization assessment and identified $1B gross for working capital reduction opportunities.
- Assisted $400MM upstream oil and gas company where he developed 13-week cash forecast model and budget-to-actual variance reporting package.
- Assisted $1B multi-national drilling company where he built bottoms-up budget tool and three-statement financial model.



## Todd Bearup
**Director, Denver**

(714) 882-0668

todd.bearup@cr3partners.com

### Industries
- Oil & Gas
- Durable & Consumable Goods
- Distribution
- Manufacturing
- Retail
- Agriculture
- Construction
- Restaurants & Food Service

### Education & Certifications
- B.S., Brigham Young University
- M.B.A., University of California, Irvine
- Certified Insolvency & Restructuring Advisor
- Certified Turnaround Professional

Todd Bearup has significant experience as a crisis manager and advisor to creditors, equity investors and companies in distressed situations. Through his balanced strategic, operational and financial leadership, Todd applies his experience to clients with a hands-on management approach, having worked with several companies across a variety of industries.

### Representative Experience
- Financial advisor to First River Energy, an ongoing, two plus year Chapter 11 engagement where he has worked on the creation and consistent review of the 13-week cash forecast. Continues to work with CEO on monthly basis pertaining to monthly operating reports and monthly budgets prior to submission to the Court (West Texas). Worked on various negotiations between vendors, secured lender, producers, and debtor.
- Financial advisor to leading producer of natural stone composite panels and stone veneers.  Assisted a series of CFOs thru a Chapter 11 sale process resulting in a positive outcome for the company and its senior lenders.
- Consultant for $4B Private Equity Fund. Directed recovery of $100MM portfolio of distressed debt primarily into Northern Mexico.
- Interim President/CEO for Traffic Control Service, Inc, a $60MM Multi-State Barricade and Traffic Equipment company. Directed the company through a complex Chapter 11 process that generated sufficient liquidity to enable creditors to receive a full recovery on their claims, plus interest.
- Financial advisor to $750MM multi-level marketing company. Completed a lengthy audit and positioned the company to be sold. Developed a five-year budget model with the CEO, CFO and finance team, which enabled the potential acquirer to better understand the upside relative to the equity investment.
- Financial advisor to mirror and furniture manufacturer and distributor. Worked closely with senior management on financial model development to compliment the financial and operational restructuring of the company.
- Financial advisor to $100MM food processor. Worked with company management to implement processes that focused on the cash needs of the company such as an ABC analysis as well as product and customer rationalization.
- Financial advisor to the largest lamb packing business in the USA. Advised company through series of liquidity challenges.

# TABLE OF CONTENTS

CR3 OVERVIEW AND APPROACH

INDUSTRY OVERVIEW

OUR TEAM

**OUR RATES**

APPENDIX: CASE STUDIES



# OUR RATES

## RATES:

- Partners - $695 to $795/hour
- Directors - $450 to $625/hour
- Managers /Associates - $325 to $450/ hour

# TABLE OF CONTENTS

CR3 OVERVIEW AND APPROACH

INDUSTRY OVERVIEW

OUR TEAM

OUR RATES

**APPENDIX: CASE STUDIES**



CR3 | PARTNERS

# CASE STUDY: Northstar Offshore Group

## THE SITUATION

- Offshore producer of oil and gas operating several federal and state leases, representing 16 fields, centered in the Gulf of Mexico
- Company filed Chapter 11 as a result of a severe liquidity shortfall and negotiated a DIP facility which allowed for several capital projects designed to increase production and profitability

## THE WORK

- Eliminated unprofitable leases
- Oversaw successful Chapter 11 process
- Established litigation trust to pursue D&O and other causes of action for the benefit of unsecured creditors
- Completed a marketing plan which resulted in a 363 sale of substantially all of the assets of the company
- Implemented liquidating plan and sought recoveries under the D&O and other causes of action.

## THE RESULTS

- Negotiated DIP financing with a non–traditional lender to provide drilling capital in order to recomplete several wells during the bankruptcy process, doubling production, revenue and cash-flows
- Sale of all the valuable assets at above market prices, allowing DIP facility to be repaid in full and other creditors to be repaid

# CASE STUDY: Offshore Services Company

## THE SITUATION

- Integrated offshore construction and diving company that serviced the oil and gas industry and had an expertise in offshore marine construction, such as construction of undersea pipelines and other similar structures
- Company had sustained significant losses in West Africa and Mexico and was facing severe cashflow shortfalls
- There was continuing default with company's secured line of credit
- Customers were slow to paying company, resulting in cash receipts coming in slower than expected

## THE WORK

- Engaged as CRO
- Assisted  company in creating an operating model and 13-week cash flow forecast
- Assisted in negotiations with secured lenders
- Created communications protocol with key vendors to assist in managing liquidity and completing project milestones which enabled the company to collect its receivables
- Negotiated sale of the assets of company

## THE RESULTS

- Successful sale was completed, saving jobs and company at a time when the marine construction industry was under severe price pressure and in decline
- Used financial and operational resources within company to make cost-efficient and effective decisions in a short timeline and with significant liquidity constraints

# CASE STUDY: Dune Energy

## THE SITUATION

- A CR3 professional served as CRO to a shallow water E&P company to navigate the turmoil during the downturn in the industry
- After previously completing a restructuring, the company converted its bond debt to equity and greatly expanded its reserves by drilling exploration wells with most of its value attributed to PUD's
- Due to the downturn in the industry and price of oil plummeting, new capital was not available, and the company suffered a liquidity crisis
- Mechanic and other liens were levied on the company

## THE WORK

- CR3 engaged as CRO to file for bankruptcy to deal with the issues surrounding offsets, liens, and environmental issues
- An investment banker was filed, and DIP financing was arranged to accommodate a quick sale to maximize value
- There were major impediments to selling the "good" wells and leaving the "bad" wells behind
- The reserve report was based on managements estimate of P&A costs, which were severely underestimated
- The investment banker determined the buyer would be strategic and the company was reduced to where a strategic player could absorb the team with few terminations to reduce the burn rate of cash
- Data rooms and management interviews were arranged to facilitate due diligence

## THE RESULTS

- A 363 sale was approved by the court and a liquidating plan was filed
- Although there were large amounts of P&A liability attached to the assets, a sale created value for the best possible outcome

*Prior engagement of a CR3 Professional

# CASE STUDY: Quicksilver Resources

## THE SITUATION

- Exploration and production company with primary assets in Texas and Canada
- Predominantly a natural gas producer with approximately 2,000 net-producing wells
- Company incurred in excess of $2B of debt to acquire expansive acreage in Barnett Shale, West Texas, British Columbia, and Alberta prior to commodity price drop in 2015

## THE WORK

- CR3 professionals were engaged as financial advisor
- Led a team in advising management and legal counsel to file for bankruptcy for the U.S. entities and coordinated efforts with the engaged Canadian monitor for the Canadian entity bankruptcy proceedings
- Assisted in critical vendor management and communication plans to mitigate disruption to ongoing operations
- Assisted with G&A cost take-out to reduce non-operating overhead
- Developed weekly cash forecast model and reporting packages
- Assisted with material contract negotiations and dispositions
- Assisted the company with the bankruptcy administrative reporting requirements, claims administration, interaction with creditor committee
- Developed and managed data room for company during 363-sale process
- Developed wind-down, liquidation plan, and budget

## THE RESULTS

- Successful 363-sale of substantially all the company assets
- Transferred detailed wind-down plan to liquidating trustee

*Prior engagement of a CR3 Professional

# CASE STUDY: HVI Cat Canyon

## THE SITUATION

- $24MM exploration and extraction company that produced heavy oil
- Company filed for bankruptcy to avoid foreclosure by senior secured lender
- Lenders and other creditor, included regulatory authorities, petitioned for the appointment of a Chapter 11 Trustee due to perceived mismanagement, misappropriation of funds and terrible environmental record
- Prior to engagement, company was integrated with Greka-owned entities where crude was supplied to an affiliate, which provided diluent, trucking services, workover rigs, vacuum trucks, and administrated services

## THE WORK

- CR3 Partners were engaged as CRO and CFO for the Chapter 11 Trustee
- Terminated all contracts with affiliates and outsources administrative services
- Improved environmental health and safety with new in-house hire and retained outside consultants
- Executed new crude marketing agreements and purchased new, better diluent from third party
- Post-petition financing is provided to bridge the company to a successful sale

## THE RESULTS

- CR3 Partners is currently providing CRO and CFO services to lead the company through a sales process
- Company is operating as a standalone oil and gas production company with direct relationships with crude purchasers

# CASE STUDY: Warren Resources

## THE SITUATION

- Exploration and production company with operations in California, Pennsylvania, and Wyoming
- Company operates approximately 668 gross wells across the US
- Environmental and ownership complexities embedded with company's capital structure was unsustainable due to the collapse in crude oil commodity prices

## THE WORK

- CR3 professionals were engaged as financial advisor
- Advised management and legal counsel in a pre-arranged Chapter 11 bankruptcy
- Developed weekly cash forecast budget and managed lender discussions
- Prepared initial operating report, monthly and quarterly operating reports, statements, and schedules
- Supported counsel with first-day and supplemental motions
- Assisted with claims administration and reconciliation

## THE RESULTS

- Emerged from Chapter 11 bankruptcy with agreed-upon debt for equity transaction and aligned the capital structure to the lower commodity price environment

*Prior engagement of a CR3 Professional

# CASE STUDY: Petsec Energy

## THE SITUATION

- $100MM oil and gas exploration and production subsidiary of an Australian publicly-traded company
- Company had operations in the Gulf of Mexico and offshore California
- Oil prices dropped resulting in lack of availability under the reserved-based revolving line of credit and the parent could not provide additional funding

## THE WORK

- CR3 professionals were engaged as financial advisor to CFO, international Board of Directors, and legal counsel to manage the Chapter 11 filing and Section 363-sale process
- Worked closely with management team, investment bank, lenders, and creditors in negotiating an expedited sale process
- Implemented a weekly cash collateral budget, which included reserve-based capacity model to use in refinancing negotiations with secured lender
- Provided court testimony and close of sale of four separate reserve packages

## THE RESULTS

- Secured lenders received a full recovery and unsecured lenders received significant recoveries
- Company retained operating employees after Section 363

# CASE STUDY: E&P Company

## THE SITUATION

- Company owned interest in 193 wells producing oil and natural gas in the Haynesville Shale Trend, Tuscaloosa Marine Shale Trend, and Eagle Ford Shale
- Capital structure included $215MM of second-lien debt and senior notes of $250MM

## THE WORK

- CR3 professionals were engaged as financial advisor to company's reserve-based lender
- Analyzed reserves to understand value and risks to lender as part of negotiations with the company, second-lien debtor, and secured noteholders
- Analyzed cash flow forecasts and assisted with negotiations of cash collateral terms
- Advised lender during negotiations among the stakeholders

## THE RESULTS

- Exited bankruptcy planning, which resulted in a 40% paydown of the facility
- Remaining loan was adequately serviced by restructured business

*Prior engagement of a CR3 Professional

# CASE STUDY: Bridas Corporation

## THE SITUATION

- International fully-integrated exploration and production company based in Argentina with oil fields in Turkmenistan
- Major disputed issues included the drilling costs charged to an international joint venture in Turkmenistan from an affiliated drilling company

## THE WORK

- Estimated damages from expropriation of energy assets by a foreign company and from expropriation of oil fields in Turkmenistan
- Provided expert services related to energy industry standards
- CR3 professional led a team in preparation of reports and testimony of the findings in front of an international arbitration panel

## THE RESULTS

- Expert reports filed in an ICC arbitration, which resulted in damage awards in excess of $1B

CR3 PARTNERS

*Prior engagement of a CR3 Professional*

# CASE STUDY: E&P Company

## THE SITUATION

- Small private exploration and production company with operations in Oklahoma
- Company caught in the downdraft of falling oil prices in 2014

## THE WORK

- CR3 professionals were hired to assess options and improve operations to enhance cash flow
- Reviewed lease operating expenses to reduce expenses at the wellhead
- Discovered several wells were operating at sub-optimal levels and needed major work
- Found new operators that were substantially cheaper and improved production at wells
- Negotiated delinquent payments due on wells and avoided liens at the wellhead

## THE RESULTS

- Primary lenders took over most operations and the team identified a new operator
- Secured additional funds to complete more wells and maximize production
- Entity went on to be sold at a later date

CR3 PARTNERS

*Prior engagement of a CR3 Professional

# CASE STUDY: International Integrated Oil Major

## THE SITUATION

- The company, a subsidiary of a major international oil company, owns and operates chemical facilities manufacturing numerous commodity petrochemicals worldwide
- One facility produced two commodities on behalf of the company; two units owned by the company were part of a multi-product chemical processing complex managed and operated by a third-party operator that also owned and controlled the remainder of the complex
- Operator filed bankruptcy

## THE WORK

- CR3 served as advisor to the company
- Assisted in the negotiation of tri-party settlements with the Unsecured Creditors Committee, Secured Lenders, and support agreements with the Operator
- Evaluated various financial and strategic alternative settlement plans

## THE RESULTS

- Successfully reorganized the Operator, maintaining uninterrupted production of critical supply chain products for the Company

CR3 PARTNERS

*Prior engagement of a CR3 Professional

# CASE STUDY: Venoco

## THE SITUATION

- Oil and gas production company with both on and offshore assets in Southern California
- Company filed a prepackaged Chapter 11 bankruptcy plan due to the plummeting oil prices that would eliminate $1B of debt from its balance sheet

## THE WORK

- CR3 professionals were engaged as financial advisor to assist through bankruptcy
- Assisted with cash flow forecasting and DIP financing reporting
- Prepared all supporting data for first day motions and all statements, schedules, and MOR during the case
- Prepared contract assumption and rejection analysis for all executory contracts

## THE RESULTS

- Successfully led claims reconciliation process for all classes of claims, which was critical to the debtor confirming the company's Plan of Reorganization
- Emerged from bankruptcy in under five months

CR3 PARTNERS

*Prior engagement of a CR3 Professional

# CASE STUDY: Flying J

## THE SITUATION

- Privately held $18.5B integrated energy company that distributed propane and operated multiple refineries, oil and gas exploration and production assets, pipelines, trucking, and truck stops
- Filed bankruptcy as a result of an out-of-formula condition on its pipeline line fill credit agreement

## THE WORK

- CR3 professionals were engaged as financial advisor to the Official Committee of Unsecured Lenders
- Worked with debtor to maximize value for all creditors, including filing an objection to a transaction that would have resulted in material shortfall for the unsecured creditors
- Proposed several alternative strategies, including selling company, selling distribution services, outsourcing retail at truck stops, and selling a control interest in truck stops

## THE RESULTS

- All creditors were paid in full and the existing shareholders retained several hundred million of value

*Prior engagement of a CR3 Professional

# CASE STUDY: Mirant

## THE SITUATION

- Atlanta-based power generation company with annual revenues of nearly $5B
- Company experienced a series of financial setbacks, and on the eve of its $4.5B debt restructuring, company and many of its subsidiaries filed for Chapter 11 protection resulting in the largest bankruptcy case ever filed in the Northern District of Texas and one of the largest ever filed in U.S. history
- Principal players included 83 debtors, along with two official creditor committees, one official equity committee, two ad hoc creditor committees, and thousands of creditors, holding over $11B in claims

## THE WORK

- CR3 professional was appointed Examiner, initially to investigate potential causes of action and take steps to resolve intercompany conflicts; scope of Examiner's duties broadened to the point where his mandate became one of the broadest ever given to a bankruptcy examiner
- Identified and eliminated previously undisclosed $110MM liability relating to company's "Change in Control" agreements
- Examiner was appointed chair of the valuation committee, which provided the basis for the debtors' consensual plan of reorganization
- Mediated several key disputes
- Provided legitimacy to the resolution of inter-company disputes
- Negotiated an overall post-petition employee benefits program
- Improved overall case efficiency and streamlined data flow
- Negotiated the resolution of dozens of discovery disputes
- Eased debtors' burden in providing data, greater access to key information, operating systems and senior management

## THE RESULTS

- Team efforts were instrumental to successful reorganization of the enterprise, the near-100% recovery paid to unsecured creditors, and the significant dividend paid to former shareholders
- Team operated with lean staffing and ultimately came in $1.3MM under budget
- Company emerged from Chapter 11 status and was re-listed to the New York Stock Exchange

*Prior engagement of a CR3 Professional

# CASE STUDY: Francis Drilling Fluids

## THE SITUATION

- $100MM energy services company with over 500 employees and operations in seven states
- Company affected by sustained downturn in the oil and gas industry and the reduction in activity of several significant customers
- Implemented various cost savings initiatives of over $100,000, but cash flow did not support debt structure, and company was unable to make monthly principal and interest payments

## THE WORK

- CR3 engaged as CRO to manage entirety of an orderly Chapter 11 filing and 363 sale process
- Coordinated restructuring process with the management team, investment bank, lenders, private equity owners and unsecured creditors
- Led expedited sales process negotiations with secured lenders and use of cash collateral
- Implemented weekly cash collateral budget
- Provided court testimony
- Closed sale within three months of filing Chapter 11

## THE RESULTS

- Prior private equity sponsors were the successful stalking horse bidder in the 363-sale process resulting in:
  - Payment in full to the secured lenders
  - Assumption of substantially all existing contracts, and assets
  - Continued employment of all employees

# CASE STUDY: McCommas

## THE SITUATION

- Company owned and operated the processing facility at the landfill that cleaned the gas to pipeline quality in order to sell it to the local natural gas utility, Atmos Energy
- Leased from the City of Dallas the right to collect, clean, and sell landfill gas from their landfill, one of the largest in the country
- Company was losing money as the price of natural gas dropped below the cost to convert/clean the landfill gas

## THE WORK

- CR3 professionals retained as Chapter 11 Trustee and financial advisor for the entities
- Explored potential options including building a power plant on the site or creating a co-generation plant for a high-energy use manufacturer that was interested in locating near the facility – neither option requiring the landfill gas to be processed to the degree necessary for the local utility

## THE RESULTS

- City's demand that it sell energy to the company at a price below market, otherwise unwilling to modify the lease, limited options and only allowed for the sale of pipeline quality gas
- Operation was ultimately sold to a strategic buyer with the financial capacity to operate the business until natural gas prices improved

*Prior engagement of a CR3 Professional

# CASE STUDY: Murphy Energy

## THE SITUATION

- Oil and gas midstream company with three natural gas terminals, ten crude oil terminals, and an internal transportation operation
- Working capital line was utilized for partial financing to construct a new natural gas terminal, which later significantly reduced access to short-term financing; new accounting system was poorly integrated; and the business ran multiple profitability centers under a single income statement without recognizing divisional profitability
- Relationship with existing lending institution came under duress as the company tripped multiple loan covenants and had no access to their existing line of credit; reductions in the company's borrowing base caused the revolving line of credit to be over-advanced by $40MM on a $60MM facility

## THE WORK

- CR3 engaged to assist in potential restructuring needs
- Established a transparent cash budget and weekly reporting process
- Determined highest value for the company would be achieved through an asset sale and led marketing efforts by retaining and working with an investment bank to expedite asset sales
- Helped the client understand the severity of the existing situation and the need to take quick, decisive action to remedy the situation
- Initially pursued an out-of-court sale for the enterprise, eventually filed Chapter 11, and sold majority of company assets in an orderly 363 process

## THE RESULTS

- Accomplished an 85% return on capital, including interest and fee payments, on a fully non-performing loan for the primary secured lender
- Reestablished trust between the company and its lending institution by implementing control and transparency in the cash management process
- Provided transparency on options most likely to maximize value while leading the client through the restructuring process

*Prior engagement of a CR3 Professional

# CASE STUDY: OCTG Manufacturer and Distributor

## THE SITUATION

- Leading manufacturer and supplier of Oil Country Tubular Goods (OCTG) in the petroleum industry with products including casing, tubing, couplings, production accessories, drill pipes, drill collars and drill string accessories
- Company suffered significant losses in volume and margin after oil price drop; downturn continued as company grappled with high levels of high cost inventory
- Company was left facing both financial covenant defaults and availability constraints under existing ABL facility

## THE WORK

- Financial Advisor
- Negotiated multiple forbearances, assisted with asset sales, appraised inventory, and prepared financial models
- Engaged in discussion with trade vendors and contacted potential lenders for refinancing options
- Invested significant time in managing relationships with both secured lenders and trade vendors with significant past due balances
- Oversaw operational improvements
- Identified options and assisted with the refinance of the ABL facility to a new lender

## THE RESULTS

- CR3's work coupled with the improving economic environment (higher oil prices and rig counts) resulted in EBITDA improved from losses of $14.4MM to positive EBITDA of $10.8M
- Reduced Inventory, generated sufficient proceeds to reduce senior lender debt from $50MM to $15MM
- Extended trade payables of $10MM owed to vendors were settled with payment plans that allowed company to service obligations over 12 months, which were all satisfied

# CASE STUDY: Private Drilling & Services Company

## THE SITUATION

- $160MM oil and gas drilling and heavy-haul moving company with operations in Oklahoma and Texas
- Oil prices dropped, which caused a reduction in the 40 rig fleet utilization to less than 10
- Reduction of cash flow and EBITDA and the firm defaulted under the term and revolver

## THE WORK

- CR3 professionals were engaged as financial advisor to the lender group for an assessment of the operations and to assist in negotiating out-of-court restructuring
- Worked closely with management team, investment bank, and lenders to negotiate an expedited recapitalization plan
- Developed an interim weekly cash budget and annual projection model with the lender agent, company, and investment bank to use in restructuring negotiations

## THE RESULTS

- Secured lenders received renegotiated terms for payment in full of the revolver and term loan
- Company received liquidity to continue operations under the restructuring agreement terms

# CASE STUDY: Compression Company

## THE SITUATION

- Compression company that provided equipment and services to independent drillers
- Company found itself in a liquidity and capital squeeze with its lenders

## THE WORK

- CR3 professionals were engaged to rightsize the company and sell excess equipment
- Capital was needed to fund the services provided and new upgraded fleet for larger wells

## THE RESULTS

- Company operations were reorganized and a new budget was developed
- Secured debt was restructured and a new line of credit with a new lender was negotiated for new equipment

*Prior engagement of a CR3 Professional

# CASE STUDY: Age Refining

## THE SITUATION

- Independently controlled 15,000 barrel per-day refinery in Texas
- Company was in default on certain covenants
- Cash flow projections were inadequate for secured lenders

## THE WORK

- CR3 professional was engaged as financial advisor
- Prepared a business plan evaluation and interfaced with secured lenders
- Assessed the company's cash flow projections to present findings and recommendations to the secured lenders

## THE RESULTS

- Presented a revised business plan to the secured lenders
- Implemented a more accurate 13-week cash flow projection, including projected borrowing base report for compliance

CR3 | PARTNERS

*Prior engagement of a CR3 Professional

# CASE STUDY: Electricity Supplier

## THE SITUATION

- Company was the sole electricity supplier to $700MM large publicly-held electricity retailer that sells electric and gas services through multi-level marketing as its primary sales channel
- Retailer was in covenant default on certain financial provisions of the power contract with the company
- Company exerted such control that the retailer had to consolidate for GAAP accounting purposes

## THE WORK

- CR3 professionals were engaged to prepare assessment of business plans and operations and to determine the adequacy of financial and operational data
- Evaluated existing management teams
- Developed three-year business plan model
- Identified and quantified appropriate performance and operational benchmarks to incorporate into future business dealings with retailer

## THE RESULTS

- Delivered assessment report, presented key findings and metrics, and recommendations
- Company implemented certain recommendations to monitor the restructuring progress of the retailer in order to continue providing power

CR3 PARTNERS

*Prior engagement of a CR3 Professional



www.cr3partners.com                    (800) 728-7176

**LOS ANGELES**

6171 W. Century Blvd
Suite 350
Los Angeles, CA 90045

**HOUSTON**

4801 Woodway Drive
Suite 300 East
Houston, TX 77056

**DALLAS**

13355 Noel Road
Suite 2005
Dallas, TX 75240

**CHICAGO**

30 South Wacker Drive
22nd Floor
Chicago, IL 60606

**ATLANTA**

3280 Peachtree Road
7th Floor
Atlanta, GA 30305

**CHARLOTTE**

401 North Tryon Street
10th Floor
Charlotte, NC 28202

**NEW YORK**

450 Lexington Avenue
4th Floor
New York, NY 10017

**BOSTON**

501 Boylston Street
10th Floor
Boston, MA 02216

CR3 PARTNERS

Exhibit B



May 7, 2020

**<u>BY EMAIL</u>**

Marshall Jones
Sklar Exploration Company, LLC
5395 Pearl Parkway, Suite 200
Boulder, CO 80301

Dear Marshall

Thank you for retaining CR3 for the purpose of providing a chief restructuring officer ("CRO") and other personnel to support the CRO for Sklar Exploration Company, LLC ("the Company").

The attached Engagement Agreement and its Exhibits detail the terms and conditions of our agreement.

We appreciate the opportunity to present this agreement to you and look forward to working together.

If the Engagement Agreement is acceptable please sign and return at your earliest convenience. If you have any questions or comments, please contact me.

Sincerely,

CR3 Partners, LLC

**Engagement Agreement**

**CR3 PARTNERS, LLC**
**and**
**SKLAR EXPLORATION COMPANY, LLC**

The parties to this Engagement Agreement (the "Agreement") are CR3 Partners, LLC ("CR3"), on the one hand, and Sklar Exploration Company, LLC (together with any successor, the "Company"), on the other hand. This Agreement confirms the Company's retention of CR3 for the purpose of providing a chief restructuring officer and other personnel to support the CRO.

1.   **CR3's Services.**   From the date hereof until this Agreement is terminated pursuant to paragraph 8 (the "Term"), CR3 will provide services to the Company as described in the attached Exhibit A ("Work Authorization"). The Work Authorization may be amended from time to time with the written approval of CR3 and Company. The services CR3 provides pursuant to this Agreement will be limited to those services that the Company may request within the scope of the Work Authorization. Any additional services that CR3 may agree to provide to the Company will be the subject of a separate agreement between CR3 and the Company. CR3 may without the Company's consent provide advisory services for other persons or entities whose interests may be adverse to the Company's or its affiliates in matters not substantially related to our engagement by the Company.

2.   **Compensation**.  CR3 will present an invoice to the Company each week for services performed, and expenses incurred, under this Agreement for the preceding week. Each invoice will be due upon presentment to the Company.

Company shall deliver to CR3 a retainer of $100,000 which CR3 will hold until the completion or termination of the engagement. At that time any unpaid fees and expenses will be deducted from the retainer and the balance will be returned to the Company. The Company hereby grants a security interest in the retainer to CR3 to secure payment due to CR3 of all amounts due hereunder. The Company expressly authorizes CR3 to pay itself amounts past due from the retainer. The Company acknowledges and agrees that CR3's security interest in the retainer is perfected by virtue of possession of such funds.

3.   **Expense Reimbursement**.  Each week the Company shall reimburse CR3 for all reasonable travel-related expenses incurred in connection with this engagement. CR3 shall provide weekly summaries of expenses for which reimbursement is requested by CR3. In addition, the Company will be billed and will pay an administrative charge of 1% of professional fees. This fee covers variable administrative expenses such as: postage, overnight delivery, copying, printing, record storage and retention, telephone conferences, etc.

4.   **Payments Generally**.  No amount payable to any third party, by the Company or any other person or entity in connection with the subject matter of this engagement shall reduce or otherwise affect any amount payable hereunder. CR3 will submit invoices for fees and expenses to the Company, and the Company will pay such invoices promptly following receipt.

5.      **Indemnification and Related Matters**.  The Company and CR3 agree to the provisions of the attached Exhibit B, which relates to indemnification and related matters.

6.      **Information and Reliance**.  During the Term, the Company will furnish CR3 with such information regarding the business, financial condition and prospects of the Company as CR3 reasonably requests, all of which will be accurate and complete in all material respects at the time furnished, other than projections, which will be prepared in good faith and based upon assumptions which, in light of the circumstances under which they are made, are reasonable.  During the Term, the Company will promptly notify CR3 if it learns of any material misstatement in, or material omission from, any information previously delivered to CR3.  On an ongoing basis during the Term, the Company will inform CR3 of any material developments or matters affecting the business, financial condition and prospects of the Company that occur. In performing its services hereunder, CR3 shall be entitled to rely without investigation upon the accuracy of all information supplied to it by or on behalf of the Company or its advisors, and CR3 shall not in any respect be responsible for independently verifying the accuracy or completeness of any of such information (including by conducting any independent due diligence review).

The Company acknowledges that no reliance shall be placed on draft reports, conclusions or advice, whether oral or written, issued by CR3 as the same may be subject to further work, revision and other factors which may result in such drafts being substantially different from any final report or advice issued.

The Company shall retain exclusive rights to ownership of all work output hereunder.  Work output includes reports issued pursuant to any Work Authorization, but excludes, among other things, all working papers of CR3 and any correspondence, memoranda, calculations, notes, etc. that CR3 may have used in the development of the reports above or such working papers or in the performance of any work covered by a Work Authorization.

Upon termination of the engagement, papers and property that you have provided to CR3 will, at your request, be returned to you.  Copies of papers CR3 has created for you, which you may need but no longer have, will be made available to you.  CR3 reserves the right to destroy any items described in this paragraph that CR3 retains.

7.      **Governing Law; Venue; Waiver of Jury Trial**.  This Agreement and any claim related directly or indirectly to this Agreement (including any claim concerning advice provided pursuant to this Agreement) shall be governed and construed in accordance with the laws of the State of Texas (without giving regard to the conflicts of law provisions thereof).  No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of Texas located in the City and County of Dallas or the United States District Court for the Northern District of Texas, and each of the Company and CR3 hereby submits on behalf of itself and its successors and assigns (and, to the extent permitted by applicable law, on behalf of its securityholders and creditors) to the jurisdiction of such courts.  The Company hereby waives on behalf of itself and its successors and assigns (and, to the extent permitted by applicable law, on behalf of its securityholders and creditors) any and all right to argue that this choice of forum provision is or has become unreasonable.  The Company hereby waives on behalf of itself and its successors and assigns (and, to the extent permitted by applicable law, on behalf of its securityholders and creditors) all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of this Agreement or the engagement of CR3 pursuant to, or the performance by CR3 of the services contemplated by, this Agreement.

8.    **Termination**.  This Agreement may be terminated at any time by CR3 or the Company by giving written notice to the other party, which termination will be effective upon the non-terminating party's receipt of such notice.    Upon termination the Company shall pay CR3 all weekly fees and expenses due through the termination date, and any Success Fee which may have been earned.  The provisions of this Section and of Sections 2, 3, 5, 6, 7, 10 and 12 will survive any expiration or termination of this engagement.

9.    **Personnel.** Each party hereto agrees that it will not employ personnel or representatives of the other party hereto during the period of work provided for hereunder and for a period of one (1) year after the termination of this Agreement or completion of the project or work contemplated hereunder without the written agreement of the other party. In cases where written permission is granted by CR3, a recruiting fee will be billed for an amount mutually agreed upon and not less than 33% of first year expected annual cash compensation including incentive payments.

10.   **Public Announcements**.  Notwithstanding the confidentially provisions of Section 12, the Company acknowledges and agrees that CR3 may publish an announcement or "tombstone" following the completion of its engagement, either in newspapers, journals, magazines, or other publications or by direct mailings to third parties, whereby CR3 informs the public or such parties of the fact of its engagement by the Company, the general nature of the services provided by CR3, the time period of such engagement, the general nature of the business or industry in which the Company is engaged, the relative size in financial terms of the Company, and similar information that generally describes the nature and extent of CR3's engagement by the Company.

11.   **Miscellaneous**.  This Agreement may not be assigned (other than by operation of law) by either party without the prior written consent of the other.  The provisions hereof shall inure to the benefit of and be binding upon the successors, assigns, heirs and personal representatives of the Company, CR3 and any person entitled to indemnity under the terms of Exhibit B. The Company and CR3 acknowledge and agree that CR3 has been retained under this Agreement as an independent contractor to the Company, that their respective rights and obligations are contractual in nature and that nothing herein is intended to confer any rights or remedies upon any person other than the Company (including the management, board of directors (or similar governing body) and securityholders of the Company) as against CR3.  In addition, it is understood and agreed that this Agreement and CR3's engagement do not create a fiduciary relationship between CR3 and any person (including the Company, its management, its board of directors (or similar governing body) and its securityholders), and the Company disclaims any intention to impose any fiduciary or other non-contractual obligations on CR3.  Any advice or opinion, whether written or oral, provided by CR3 is intended solely for the benefit and use of the members of the board of directors (or similar governing body) of the Company (in their capacities as such) in considering the matters to which this Agreement relates.  CR3 will not be responsible for and will not be deemed to have provided the Company with any tax, accounting, actuarial, legal or other specialist advice.  CR3 will not, as part of any aspect of this engagement, undertake any independent valuation or appraisal of, or provide any formal opinion regarding, any assets, liabilities or the solvency of the Company or any other entity.  Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.  This Agreement does not constitute a representation, warranty or agreement that a specific outcome or

outcomes will be obtained.  This Agreement, including the Exhibits hereto (which are hereby incorporated by reference in this Agreement), incorporates the entire understanding of the parties regarding the subject matter hereof, and supersedes all previous agreements or understandings regarding the same, whether written or oral.  No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby.  This Agreement may be executed in any number of counterparts, each of which may contain one or more signatures and each of which shall be deemed an original, but all of which shall constitute one and the same instrument.  Copies of this Agreement with facsimile or electronic signatures and copies of this Agreement (or pages hereof) that have been transmitted electronically (e.g., by fax or .pdf) shall be deemed to be original signed versions of this Agreement.

12.     **Confidentiality**.  CR3 shall use all confidential information provided to it by or on behalf of the Company in connection with CR3's engagement hereunder (the "Confidential Information") solely for the purpose of providing the services which are the subject of this Agreement, and, except as contemplated in connection with such services and CR3's engagement hereunder, shall keep all Confidential Information confidential; provided, however, that nothing herein shall prevent CR3 or any of its Agents (as defined below) from disclosing any Confidential Information (i) pursuant to the order of any court or administrative agency or in any pending legal or administrative proceeding, or otherwise as required by applicable law, rule or regulation or legal or administrative process, (ii) upon the request or demand of any regulatory authority having jurisdiction over CR3 or any of its Agents, (iii) to CR3's or its affiliates' officers, directors, employees, legal counsel, independent auditors and other experts or agents who need to know such information and are informed of the confidential nature of such information, (iv) to any of its affiliates (any of the persons described in clauses (iii) or (iv) to whom Confidential Information is disclosed, "Agents") or (v) for purposes of establishing a "due diligence" defense.  The term Confidential Information does not include information that (A) is or becomes publicly available other than by reason of disclosure by CR3 in violation of this Section 12; (B) was in the possession of CR3 at the time of its disclosure by or on behalf of the Company; (C) is acquired from a third party that is not, to CR3's knowledge, prohibited from disclosing such information by an obligation of confidentiality to the Company; or (D) is developed without reference to the Confidential Information.  This Section 12 and the obligations hereunder shall survive the expiration or termination of this engagement for a period of one year and shall then terminate.

*[Signature page follows.]*

Agreed to this 21ˢᵗ day of May, 2020 by:

**SKLAR EXPLORATION COMPANY, LLC**          **CR3 PARTNERS, LLC:**


By:_____          By:_____
      Name:                                        Name: James Katchadurian
      Title:                                       Title:  Partner

**EXHIBIT A**
**to**
**ENGAGEMENT AGREEMENT**

**CR3 PARTNERS, LLC**
**and**
**SKLAR EXPLORATION COMPANY, LLC**

**WORK AUTHORIZATION**

1. **CRO Services** – Provide the Company the services of James Katchadurian, as Chief Restructuring Officer ("CRO"), who will report to the Company's Board of Directors and be supported by both the CR3 engagement team, other financial advisors retained by the Company, the Company's personnel, and perform the following services:

   a. Manage the chapter 11 process, including working with the Companies' employees, professionals, secured lenders, landlords, any Committees, or other stakeholders;
   b. Operational control of the company in consultation with management, including acting as the party with ultimate authority for corporate decisions;
   c. Assist counsel and provide testimony in the chapter 11 proceeding;
   d. Establish communication protocol with all stakeholders;
   e. Assist in the preparation of financial projections and cash flow budgets, including implementing cash conservation strategies, tactics and processes where appropriate and feasible;
   f. Develop and review monthly operating reports and ensure they are filed on a timely basis with the Bankruptcy Court;
   g. Evaluating strategic and liquidity options including restructuring, refinancing, reorganizing, or a sale of the Debtors' assets pursuant to Section 363 of the Bankruptcy Code, subject to approval of the Bankruptcy Court, and develop a plan for same
   h. Identify liquidity needs and implement a cash management program with the management team, including reviewing purchases and expenses;
   i. Identify and implement short-term and/or long-term process improvement or control initiatives;
   j. Negotiate with creditors and other constituents of the Company concerning restructuring of debt, a plan of reorganization and/or a plan of liquidation;
   k. Pursue litigation and claims the estate may have; and
   l. Provide such other similar services as may be requested or required, and in keeping with our ethical responsibilities as a chapter 11 professional.

2. **Professionals and Rates** – The following professionals will be primarily responsible for the engagement. However, during the course of this engagement, we may call upon other CR3 professionals, as needed.

   **James Katchadurian** (Chief Restructuring Officer):   $725/hr. and capped at $23,500/week
   **Todd Bearup** (Director): $625/hr

   | | |
   |---|---|
   | Partner: | $795/hr. - $625/hr. |
   | Director: | $625/hr. - $450/hr. |
   | Manager: | $450/hr. - $450/hr. |

Associate:                                        $300/hr. - $300/hr.

3. **Other Conditions** – The engagement is expected to begin immediately after CR3 and the Company jointly execute this Agreement.

    (a) Simultaneously with the execution of this Agreement, the Company shall provide CR3 with evidence that the Company's board of directors have properly authorized the CRO as an officer of the Company.

    (b) Simultaneously with the execution of this Agreement, the Company shall cause the issuer of its directors and officers liability insurance to provide the CRO and CR3 with an endorsement (i) showing the CRO and CR3 as an additional insured with regard to the directors and officers liability insurance and any fiduciary liability insurance and (ii) providing that thirty (30) days' notice will be given to the CRO and CR3 prior to any cancellation of, material reduction or change in the coverage provided by or other material modification to such policy. A certificate of issuance evidencing such coverage shall be furnished promptly to the CRO and CR3 at its request. The Company shall purchase a "tail" on such directors and officers insurance policy upon the request of CR3 at the conclusion of the Engagement. Regardless, the Company shall also maintain such applicable insurance coverage for the CRO and CR3 for a period of not less than six (6) years following the date of termination of the Services.

    (c) The Company represents and warrants to CR3 that its bylaws or Operating Agreement provide for indemnification by the Company of its officers in the manner provided therein. The Company covenants and agrees not to amend or modify such bylaws or Operating Agreement insofar as they provide indemnification to the CRO without CR3's prior written consent.

**EXHIBIT B**
to
**ENGAGEMENT AGREEMENT**


**CR3 PARTNERS, LLC**
and
**SKLAR EXPLORATION COMPANY, LLC**


**INDEMNIFICATION AND RELATED MATTERS**

The Company agrees to indemnify and hold harmless each of CR3, its affiliates and their respective directors, officers, employees, agents, shareholders, controlling persons, partners, and members and each of their respective successors and assigns (each, an "Indemnified Person") against and from all losses, claims, damages, liabilities or expenses and all actions, claims, proceedings and investigations brought or threatened by or on behalf of any person (including Company Claims (as defined below)) arising out of, relating to or in connection with this Agreement or CR3's engagement hereunder (collectively, "Indemnification Claims"), and to promptly reimburse each Indemnified Person for all reasonable legal and other expenses as incurred by such Indemnified Person in connection with investigating, preparing to defend or defending any such Indemnification Claims (including expenses of CR3 personnel required to testify or otherwise assist in any litigation), whether or not such Indemnified Person is named as a party thereto; provided, however, that the Company shall not be liable for Indemnification Claims to the extent that such claims are finally determined (not subject to judicial review or appeal) to have resulted primarily from such Indemnified Person's gross negligence or willful misconduct. The Company also agrees that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or the Company's securityholders or creditors arising out of, relating to or in connection with this Agreement or CR3's engagement hereunder (collectively, "Company Claims") except to the extent that such liability is finally determined (not subject to judicial review or appeal) to have resulted primarily from such Indemnified Person's gross negligence or willful misconduct. To the extent permitted by applicable law, CR3's liability with respect to Company Claims shall be limited to the amount of any fees actually received by CR3 pursuant to this Agreement. THE INDEMNIFICATION PROVISIONS PROVIDED FOR IN THIS AGREEMENT SHALL BE APPLICABLE WHETHER OR NOT THE LOSSES, COSTS, EXPENSES AND DAMAGES IN QUESTION AROSE SOLELY OR IN PART FROM THE ACTIVE, PASSIVE OR CONCURRENT NEGLIGENCE, OR OTHER FAULT OF INDEMNIFIED PARTIES (OTHER THAN GROSS NEGLIGENCE OR WILLFUL MISCONDUCT), AND THE PARTIES ACKNOWLEDGE THAT THIS PARAGRAPH IS CONSPICUOUS.

If the foregoing indemnification and reimbursement for Indemnification Claims are for any reason insufficient or unavailable to any Indemnified Person with respect to any Indemnification Claims, the Company agrees to make contributions to any such Indemnification Claims paid or payable (or proposed to be paid) in such proportion as is appropriate to reflect the relative economic benefits received by the Company and its securityholders and creditors, on the one hand, and the Indemnified Persons, on the other hand; provided, however, that, to the extent permitted by applicable law, the Company agrees to make contributions to any such Indemnification Claims paid or payable such that in the aggregate the Indemnified Persons will not be liable for more than the fees actually received by CR3 pursuant to this Agreement. The "relative economic benefits" received by the Company and its securityholders and creditors, on the one hand, and the Indemnified Persons, on the other hand, shall be deemed to be in the same proportion as is appropriate to reflect the relative economic benefits and the relative fault of the Company and its securityholders and creditors, on the one hand, and the Indemnified Persons, on the other hand,

as well as other equitable considerations; provided, however, that, to the extent permitted by applicable law, the Company agrees to make contributions to any such Indemnification Claims paid or payable such that in the aggregate the Indemnified Persons will not be liable for more than the fees actually received by CR3 pursuant to this Agreement.

The Company further agrees that, without the prior written consent of CR3 (not to be unreasonably withheld, conditioned or delayed), the Company will not settle, compromise or consent to the entry of any judgment in any pending or threatened action, claim, proceeding or investigation with respect to which indemnification or contribution may be sought hereunder (whether or not any Indemnified Person is an actual or potential party to such action, claim, proceeding or investigation) unless such settlement, compromise or judgment includes an unconditional release of all Indemnified Persons from all liability resulting from such action, claim, proceeding or investigation.

The foregoing rights (i) shall be in addition to any other rights any Indemnified Person may have, (ii) shall not limit any other rights that any Indemnified Person may have at law or otherwise and (iii) shall survive any termination of the engagement or this Agreement .

Exhibit C

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

IN RE:                                        )
                                              )     Case No. 20-12377-EEB
SKLAR EXPLORATION COMPANY, LLC                )
EIN: 72-1417930                               )     Chapter 11
                                              )
    Debtor.                                   )
                                              )
                                              )
_____              )
                                              )     Case No. 20-12380-EEB
SKLARCO, LLC                                  )
EIN:  72-1425432                              )     Chapter 11
    Debtor.                                   )

**DECLARATION OF JAMES KATCHADURIAN**

I, James Katchadurian, make this Declaration under penalty of perjury pursuant to 28 U.S.C. §1746 as follows:

1.      I am a partner at CR3 Partners ("CR3").  CR3's main offices are located at 450 Lexington Avenue, 4th Floor, New York, NY 10017.

2.      CR3 does not represent any entity, including any creditor of the Debtors, which has a claim or interest in the Debtors.

3.      This Affidavit is submitted in support of the Debtors' Motion for Entry of Order Authorizing Debtors' Employment of CR3 Partners as Chief Restructuring Officer ("Motion") pursuant to 11 U.S.C. §§ 105(a) and 363(b) to be appointed as the Chief Restructuring Officer for the Debtors.  The statements contained in Motion are true and correct to the best of my knowledge and belief.

4.      Fees will be billed at an hourly rate.  I have agreed to perform services at an hourly rate of $725 on this case, with my fees not to exceed $23,500 per week.  A full schedule of hourly rates to be charged by professionals performing work on the Debtors' cases is included in the Motion at Paragraph 14.

5.      CR3 will make Application to the Court for approval of its fees and costs in excess of the retainer with notice and an opportunity for a hearing being provided to creditors, and will comply with the Order Approving Interim Advance Payment Procedures.

6.      To the best of my knowledge, CR3 does not represent any party in interest adverse to the interest of the Debtors and CR3 does not represent any creditor of the Debtor and does not represent any member, officer or manager.  CR3 is disinterested as defined by 11 U.S.C. § 101(14)

and does not have or represent an interest materially adverse to the interest of the estate or of any class of creditors.

7.     CR3 previously represented creditor Baker Hughes in an unrelated matter, that has fully concluded, and has no ongoing relationship with Baker Hughes.  I am not aware of any other connection with the Debtors, creditors, or any party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the Office of the United States Trustee.

Dated: May 21, 2020

By:_____
          James Katchadurian