# LENDING AGREEMENT

This Lending Agreement ("Lending Agreement") is entered into as of May__, 2020 by and between Sklar Exploration Company, LLC ("SEC") and Sklarco, LLC ("Sklarco" and together "Debtors" or "Borrowers"), and Howard Sklar ("Sklar"), the Howard Sklar Trust ("Howard Trust"), Jacob Sklar Trust ("Jacob Trust"), and the Alan Sklar Trust ("Alan Trust" and together with Sklar, the Howard Trust, and Jacob Trust, the "Sklar Parties").

## RECITALS

1. SEC filed its voluntary petition for protection under Chapter 11 of the Bankruptcy Code on April 1, 2020. Case No. 20-12377-EEB.

2. Sklarco filed its voluntary petition for protection under Chapter 11 of the Bankruptcy Code on April 1, 2020. Case No. 20-12380-EEB. The cases are jointly administered under Case No. 20-12377-EEB (the "Chapter 11 Case").

3. SEC and Sklarco remain Debtors-in-Possession.

4. The Debtors' principal assets consist of interests in oil and gas wells, mineral leases held by Sklarco, and the Join Operating Agreements pursuant to which SEC operates numerous oil and gas wells.

5. The Debtors have requested, and the Sklar Parties have agreed, to provide a post-petition loan in the amount of $1,233,000 ("Loan") in accordance with the terms and conditions contained herein. The Loan is subject to approval by the Court in the Chapter 11 Case.

## AGREEMENT

NOW THEREFORE, the Parties agree as follows:

1. **Acknowledgment of Recitals**. The Recitals set forth above are true and correct and are incorporated herein by this reference as a substantive part of this Lending Agreement.

2. **Definitions**. The following terms as used herein have the following meanings:

"**Agreement**" means this Lending Agreement as it may be amended, modified or supplemented from time to time.

"**Bankruptcy Code**" means the Bankruptcy Reform Act of 1978 as amended and codified at 11 U.S.C. §101, *et seq*.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Colorado or any other court having jurisdiction over the Borrowers' Chapter 11 Case.

"**Borrowers**" has the meaning set forth in the heading of this Lending Agreement.

"**Chapter 11 Case**" means the case of the Borrowers, jointly administered under Case No. 20-12377-EEB in the United States Bankruptcy Court for the District of Colorado.

"**Default**" means any condition or event which with the giving of notice or lapse of time or both would, unless cured or waived, become an Event of Default.

"**Event of Default**" has the meaning set forth in paragraph 15.

"**Loan**" has the meaning set forth in Recital paragraph 5.

"**Loan Documents**" shall mean this Lending Agreement, the Note, and any ancillary document which is required or otherwise executed pursuant to this Lending Agreement.

"**Maturity Date**" means the earlier of: (a) the date the Note is accelerated after an Event of Default; (b) the date either of the Borrowers' Chapter 11 cases is converted to a Chapter 7 case or dismissed; or (c) one (1) year the date of this Lending Agreement.

"**Note**" means a promissory note of Borrowers payable to the order of the Sklar Parties, delivered pursuant to a request of the Borrowers in substantially the form of Exhibit A evidencing the indebtedness of the Borrowers to the Sklar Parties resulting from the Loan.

"**Parties**" means the Borrowers and Sklar Parties collectively.

"**Petition Date**" means the date on which the Borrowers' voluntary petitions were filed, April 1, 2020.

"**Post-Petition**" means and refers to any time on or after the petition date of the Borrower's Chapter 11 case.

3. **Lender Commitment**. The Sklar Parties agree, on the terms and conditions set forth in this Lending Agreement, to make the Loan to the Borrowers in the principal amount of $1,233,000, subject to the restrictions set forth herein. Such commitment shall become effective upon approval by the Bankruptcy Court.

4. **Use of Loan Proceeds**. The proceeds of the Loan shall be used by the Borrowers to provide financial strength and to fund the Borrowers' operating and administrative expenses during the continued administration of the Chapter 11 Case pursuant to budgets provided to the Sklar Parties. Borrowers agree to provide any and all profit and loss statements, financial statements and other documents as may be reasonably requested by the Sklar Parties within fifteen (15) days after a written request for such documentation.

5. **Maturity of Loans**. The Loan shall mature and the principal amount thereof shall be due and payable on the Maturity Date.

6. **Interest**. The Loan shall bear interest on the outstanding principal amount thereof, for each day from and including the date each Loan was made to the Debtor but excluding the date on which the Loan becomes due at a rate per annum (computed on the basis of the actual days elapsed over a year of 365 days) equal to 5% per annum. After default, the Loan shall bear interest in the same manner as set forth above at the rate of 10% per annum. Interest on the Loan shall accrue and be due and payable upon prepayment or at the Maturity Date for the Loan, whether by acceleration or otherwise and after the Maturity Date on demand.

7. **Priority Interest**. Pursuant to Section 364(b) of the Bankruptcy Code the Loan shall constitute an allowed administrative expense claim in the Chapter 11 Case. Notwithstanding the priority nature of the Loan during the Borrowers Chapter 11 Case, the co-equal priority shall not be grounds for disgorgement of those professional fees or other administrative expenses which have been paid by the Borrowers with the proceeds of the Loan pursuant to the terms of the Loan and prior to the Maturity Date for the Loan.

8. **Waiver of Repayment and Subordination.** Repayment of the Loan shall be waived by the Sklar Parties and subordinated to the repayment of claims held by general unsecured creditors. In the event that any judgment is entered against the Sklar Parties for any action arising under Section 544, 547,548, 559, or 550, the amount of such judgment shall be offset first against the balance of the Loan.

9. **Conditions Precedent**. The obligation of the Sklar Parties to make the Loan to the Borrowers is subject to the satisfaction of the following conditions precedent, unless waived by the Sklar Parties:

    a. The Sklar Parties shall have received the duly executed Note payable to the order of the Sklar Parties.

    b. The Sklar Parties shall have received evidence satisfactory to it that all conditions precedent to making the advance have been met.

    c. The Sklar Parties shall have received a copy of a final order from the Bankruptcy Court approving this Lending Agreement which shall have been entered by the Bankruptcy Court on such notice and with such terms as may be satisfactory to the Sklar Parties and the Borrowers and which shall have not been reversed, modified, annulled, vacated or stayed.

    d. The Sklar Parties shall have received all documents it may reasonably request.

    e. The Sklar Parties shall have received a copy of an order from the Bankruptcy Court appointing a Chief Restructuring Officer.

  f. The Sklar Parties shall have received a copy of a final cash collateral order in this case extending the Borrowers' use of cash collateral beyond June 30, 2020.

  g. The Sklar Parties shall be satisfied, in its good faith discretion, that there has been no material adverse change in Borrowers' financial condition or the prospects for a successful reorganization.

10. **Representations and Warranties**. In order to induce the Sklar Parties to make the Loans under the Facility, the Borrowers represent and warrant, as applicable, following:

  a. The Borrowers have the requisite power and authority to affect the transactions contemplated herein and has all requisite power and authority and the legal right to own and operate its property as is contemplated under this Lending Agreement.

  b. The execution, delivery and performance by the Borrowers of each of the Agreement and Note are within the power of the Borrowers, as applicable, and have been duly authorized and delivered by the Borrowers and the Note will be when executed and delivered hereunder a valid, legal and binding obligation of the Borrowers enforceable against the Borrowers in accordance with its terms and will not violate any law, regulation or Court order.

11. **Environmental Law Compliance**. The Borrowers have complied, is currently in compliance and will continue to comply in all respects with any and all environmental laws, ordinances, orders or decrees of any state, federal, municipal or other governmental body or agency applicable to the Borrowers, including but not limited to, the State of Colorado, the State of Alabama, the State of Louisiana, the State of Mississippi, the State of Texas, and those of the United States.

12. **No Defenses**. The Borrowers are justly indebted to the Sklar Parties for the obligations created by this Lending Agreement and the Borrowers do not currently have and agree that they will not at any time hereafter assert any defense, offset or counterclaim with respect to the payment of its obligations under this Lending Agreement and the Note.

13. **Affirmative Covenants**.

  a. The Borrowers shall provide the Sklar Parties with all interim statements and operating reports ("Reports") filed by the Borrowers with the Office of the United States Trustee concurrently with the filing of the Reports, either by facsimile or personal delivery. Those reports must be filed on or before the 20th day of each calendar month during the term of the Agreement unless otherwise extended by the Office of the United States Trustee, and the Debtors agree to timely file all such reports.

    b. The Borrowers shall, on request, provide the Sklar Parties with an annual balance sheet, statement of income and retained earnings and statement of changes in financial position, for the past fiscal year. Such financial statements shall be provided within ninety (90) days of the end of each fiscal year of the Borrowers during the term of this Lending Agreement. From time to time hereafter, Sklar Parties may discover that it requires further financial reports and information from the Borrowers. The Borrowers agree to fully cooperate with the Sklar Parties and provide Sklar Parties with such requested reports and information as may reasonably be requested within five business days of its receipt of the Sklar Parties' written request.

    c. The Borrowers shall permit the Sklar Parties to visit the Business at such reasonable times during normal business hours upon reasonable notice.

    d. The Borrowers will keep all material property useful and necessary in its business in good working order and condition, ordinary wear and tear excepted; will maintain, with a financially sound and reputable insurance company, insurance on all its property in at least such amounts and against at least such risks as are usually insured against by companies of established repute engaged in the same or similar business and will furnish to the Sklar Parties upon written request full information as to the insurance carrier.

    e. The Borrowers will comply with all court orders in the Chapter 11 Case.

    f. The Borrowers will pay all agreed obligations arising under this Lending Agreement after the execution of the Agreement promptly and in accordance with the terms and conditions hereof and pay and discharge promptly all taxes, assessments and governmental charges or levies imposed upon it or upon its income or profits or in respect of its property before the same shall become in default as well as all material lawful claims for labor, materials and supplies which if unpaid might become a lien or a charge upon assets of the Borrowers.

    14. **Further Assurances**. Upon the request of the Sklar Parties, the Borrowers shall duly execute and deliver or cause to be duly executed and delivered at the cost and expense of the Borrowers such further instruments as may be necessary or proper in the reasonable judgment of the Sklar Parties to carry out the provisions and purposes of this Lending Agreement.

    15. **Events of Default**. The occurrence and continuation of any one or more of the following events shall constitute an Event of Default:

    a. The Borrowers shall fail to pay within ten (10) days of the due date the obligations created by this Lending Agreement, or the Note;

b. This Lending Agreement shall cease to be in full force and effect and valid;

c. The Order approving this Lending Agreement shall be modified, vacated, supplemented or amended in any respect on the request of any party other than the Debtor;

d. The Bankruptcy Court shall enter an Order:

   i. Dismissing the Chapter 11 case(s);

   ii. converting the Chapter 11 case(s) to a case under Chapter 7 of the Bankruptcy Code; or

   iii. appointing a Trustee in the Chapter 11 case(s)

e. The Bankruptcy Court shall enter an Order approving a Disclosure Statement in connection with a Plan of Reorganization proposed by a third party which Plan does not provide for payment in full in cash of the Note on the Maturity Date or upon confirmation of the proposed Plan; or

f. There occurs any effective or actual change in control of the Borrowers absent the prior written consent of the Sklar Parties. For the avoidance of a doubt, the appointment of a Chief Restructuring Officer does not constitute an event of default;

and in every such Event of Default and at any time thereafter during the continuance of such Event of Default without further order of or application to the Bankruptcy Court the Sklar Parties may take any or all of the following actions at the same or at different times:

   i. by notice to the Borrowers declare the Note together with all interest, fees and expenses accrued thereon to be and the Note shall thereupon become immediately due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Borrowers; and

   ii. upon written notice to the Borrowers exercise such remedies as are provided for elsewhere in this Lending Agreement, the Note, or as may otherwise be available under applicable law.

16. **Notice**. Delivery of any notice required herein to be given to the Borrowers shall be deemed sufficient and complete if any such letter or notice is sent by messenger, Federal Express and/or emailed to the Borrowers and Borrowers' attorney at the following address:

>Sklar Exploration, LLC
>5395 Pearl Parkway, STE 200
>Boulder, CO 80301

**with a copy to:**

>Lee M. Kutner, Esq.
>Keri L. Riley, Esq.
>Kutner Brinen, P.C.
>1660 Lincoln St., Suite 1850
>Denver, CO 80264
>Email: lmk@kutnerlaw.com
>Email: klr@kutnerlaw.com

Notice to Sklar Parties shall be deemed sufficient and complete if such letter or notice is sent by Federal Express to:

>Howard Sklar, individually and as Trustee
>5395 Pearl Parkway, Suite 200
>Boulder, CO 80301

    17.    **Integration**. Except as expressly provided in this Lending Agreement, this Lending Agreement is the final written expression and the complete and exclusive statement of all of the agreements, conditions, promises and covenants among the parties with respect to the subject matter hereof and supersedes all prior or contemporaneous agreements, negotiations, representations, understandings and discussions among the parties and/or their respective counsel with respect to the subject matter covered hereby. Any amendment or modification to this Lending Agreement, in order to be legally binding, must be in writing specifically referring to the Agreement and signed by duly authorized representatives of all parties, or otherwise approved by the Bankruptcy Court.

    18.    **No Benefit to Nonparties**. Nothing contained in this Lending Agreement is intended nor shall it be construed or deemed to confer any rights, powers, or privileges on any person, firm, partnership, corporation or other entity not an express party hereto or a successor in interest thereof. The parties reserve all of their rights under law, equity, or otherwise with respect to such non-parties and/or successors in interest.

    19.    **Terms Binding On Trustee**. The terms and conditions of this Lending Agreement and the order entered thereon shall be binding upon any Trustee appointed in Borrower's Chapter 11 case.

    20.    **Limitation of Relationship**. The relationship of Borrowers and any Sklar Parties shall be that of borrower and creditor. Nothing contained in this Lending Agreement shall be

deemed or construed to create any partnership, tenancy-in-common, joint tenancy, joint venture, co-ownership or other relationship between a Sklar Parties and Borrowers beyond those relationship already in existence.

21. **Power of Representatives**. Any party executing this Lending Agreement in a representative capacity is duly authorized and empowered to do so.

22. **Counterparts**. This Lending Agreement may be executed in any number of counterparts, each of which shall be an original. Such counterparts shall together constitute but one and the same Instrument.

23. **Waiver**. No failure or delay by the Sklar Parties in exercising any right, power, or privilege hereunder or under the Note shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege. The rights and remedies herein provided shall be cumulative and not exclusive of any rights or remedies provided by law.

24. **Expenses**. If an Event of Default occurs, the Borrowers shall pay all out-of-pocket expenses incurred by the Sklar Parties including reasonable attorney fees and disbursements of Sklar Parties' counsel in connection with such Event of Default and collection and other enforcement proceedings resulting therefrom.

25. **Successors and Assigns**. This Lending Agreement shall be binding upon and inure to the benefit of the Sklar Parties and all further holders of the Note and their respective successors and assigns, including any Chapter 7 Trustee. This Lending Agreement shall be binding upon the Borrowers and their successors, however, the Borrowers may not assign or transfer any of their rights or obligations under this Lending Agreement without the prior written consent of the Sklar Parties.

26. **Choice of Law**. This Lending Agreement and the Note shall be construed in accordance with and governed by the laws of the State of Colorado except to the extent preempted by federal law.

27. **Effectiveness**. This Lending Agreement shall not become effective until it has been executed by the Borrowers and the Sklar Parties and a final order has been entered in the Borrowers' bankruptcy case approving this Lending Agreement.

[remainder of page intentionally left blank]

The parties hereto have caused this Lending Agreement to be duly executed as of the date first written.

**SKLAR PARTIES:**

**HOWARD SKLAR**

_____

**HOWARD SKLAR TRUST**

By: _____
Howard Sklar, Trustee

**JACOB SKLAR TRUST**

By: _____
Howard Sklar, Trustee

**ALAN SKLAR TRUST**

By: _____
Howard Sklar, Trustee

**BORROWERS:**

**SKLAR EXPLORATION, LLC**

By: _____
   _____, its _____

**SKLARCO, LLC**

By: _____
   _____, its _____

9