IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| SKLAR EXPLORATION COMPANY, LLC | § § § | Case No. 20-12377-EEB |
| _____ | § § | |
| SKLARCO, LLC | § § | Case No. 20-12380-EEB |
| *Debtors.* | § § | (Jointly Administered) |

OBJECTION, JOINDER AND RESERVATION OF RIGHTS
OF LUCAS PETROLEUM GROUP, INC. TO DEBTORS' MOTION FOR
ENTRY OF ORDER AUTHORIZING DEBTORS' EMPLOYMENT OF CR3
PARTNERS AS CHIEF RESTRUCTURING OFFICER.
(relates to Dkt. No. 341)

Lucas Petroleum Group, Inc. ("**LPG**"), a creditor and party-in-interest, files this *Objection, Joinder and Reservation of Rights to Debtors' Motion for Entry of Order Authorizing Debtors' Employment of CR3 Partners as Chief Restructuring Officer* (the "**LPG Objection**") and in support thereof states the following:

1. Background. On April 1, 2020, Sklar Exploration Company, LLC ("**SEC**") and Sklarco, LLC ("**Sklarco**," and collectively with SEC, the "**Debtors**") filed their voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code. An Official Committee of Unsecured Creditors was appointed on April 16, 2020.

2. On May 18, 2020, this Court entered its Third Interim Order Authorizing the Debtors Use of Cash Collateral ("**Third Interim Cash Collateral Order**"). [Dkt. No. 319]. The Third Interim Cash Collateral Order contained a consent by the Debtors to seek the appointment of a CRO, although the power and scope of the duties to be granted to any such CRO were not

authorized or identified.[1] At the contested hearing for the Third Interim Cash Collateral Order, this Court advised that it is the custom and practice in this District for any CRO to be appointed and authorized under the Debtors' governance documents.

3. On May 21, 2020, Debtors filed their *Motion For Entry of Order Authorizing Debtors' Employment of CR3 Partners as Chief Restructuring Officer* [Dkt No. 341] (the "**CRO Motion**"). The CRO Motion seeks to employ CR3 Partners as Chief Restructuring Officer ("**CRO**") for Debtor Sklar Exploration Company, LLC ("**SEC**"). The CRO Motion did not provide any information or copies of any such governance documents.

4. LPG's Interest. Debtors and LPG are parties to various operating agreements and participation agreements where SEC serves as the operator of oil and gas properties (collectively, the "**LPG Agreements**"). Under such agreements, LPG holds a working interest ownership in those properties. Pursuant to the LPG Agreements, LPG advanced funds for specific purposes as stated in any particular cash call (collectively, "**Cash Call Advances**"). LPG is listed in Debtors' Amended Top 20 Largest Unsecured Creditor List [Dkt. 22] as having a Cash Call Advance balance of $384,201.01 across one or more projects. LPG believes that this amount is higher.

5. As operator, SEC is obligated to market and sell oil and gas production on behalf of LPG and other working interest owners (collectively, "**WIOs**"). SEC must also collect revenues generated under the LPG Agreements on behalf of WIOs, including LPG, and make payments to each WIO based upon their proportionate share, less applicable expenses (defined as a "**Net Revenue Interest**," or "**NRI**"). The NRI is not owned by the Debtors, but rather, is owned by the WI Owners.

---

[1] Dkt. No 319, para. 10, p. 4.

6.      Objection. LPG objects to the CRO Motion on the grounds that the scope of the CRO's powers and duties, generally, are (i) inconsistent with that required of a fiduciary for any bankruptcy estate due to numerous conflicts of interest, and (ii) insufficient for the CRO to act in these estates' best interests consistent with local practice, the Debtors' governance documents, the proposed engagement letter as submitted with the CRO Motion, and the Agency Services Agreement, as amended, entered into between SEC and Sklarco, Howard Sklar and several related family trusts that purport to own the equitable interests in and to oil and gas properties listed on Sklarco's schedules.

7.      First, the CRO Motion listed CR3 Partners as the proposed CRO for only Debtor SEC. The CRO purportedly will not be the CRO for Debtor Sklarco, LLC ("**Sklarco**"). Most of these estates' valuable assets, specifically the oil and gas producing properties, are owned, at least nominally, by Sklarco. It would serve little purpose for a CRO to be named for only SEC. This is not what was contemplated by LPG and other WIOs when the Debtors' consented to the appointment of a CRO with adequate authority to act independently.[2] The WIOs and other parties-in-interest have maintained throughout these cases that, due to the actions and omissions of senior management before and after the petition date, a third-party fiduciary (or fiduciaries) need to be appointed over both SEC *and* Sklarco.[3]

8.      Second, the proposed CRO powers and duties are not adequate and there is no coordination with or reference to the Debtors' governing documents, as required by this Court. Both Debtors are owned 100% by the Howard F. Sklar Trust[4] and presumably this trust still

---

[2] See Transcript p. 61, attached hereto as *Exhibit A* – QUESTION: "Is it your contemplation that a CRO would have "the buck stops here" sign on his or her desk if they are appointed." HOWARD SKLAR ANSWER: "Yes, I assume so, yes."

[3] Upon information and belief, Debtors' counsel may have conceded informally that Sklarco was intended to be and is included within the scope of the CROs purview, but the CRO Motion does not reflect any such concession.

[4] See *Statements of Financial Affairs* at Docket Nos. 41 and 324.

maintains the ultimate governing authority over these Debtors under their governing documents. The CRO Motion describes the scope of duties and powers to be granted to the CRO. Generally, this power includes:

> Operating the Debtors during the bankruptcy case and acting with authority with respect to all aspects of the Debtors' day to day business activities and operations, including budgeting, cash management and financial management.

See CRO Motion, para. 14(a). While the CRO can hire and terminate some employees, the CRO specifically *lacks* the power to terminate officers. See CRO Motion, para. 14(d). The CRO may evaluate liquidity options including restructuring, refinancing, reorganizing, selling assets and developing a plan, but the CRO must have absolutely discretion, without interference or veto from the Howard F. Sklar Trust, to pursue one or more of these options. There is also no power to assume and reject contracts under § 365, which will be a central element of any restructuring as it relates to the WIOs and their joint operating agreements. The CRO Motion does not address any of these problems.

9. Third, various intercompany debts between SEC and Sklarco may require that separate fiduciaries be appointed for each estate. LPG concedes that the retention of a CRO in this District does not require that the CRO necessarily meet the standards of 11 U.S.C. §327(a), although the Court necessarily retains the ability to overrule the Debtors' business judgment.[5] In most cases, however, one fiduciary cannot represent two related estates or owners of any debtor

---

[5] *In re Ajubeo, LLC*, 2017 WL 5466655, *3 (D. Colo. 2017)(CRO for LLC debtor does not have to be disinterested under §327 as a rule, but compelling and unique circumstances of each case warrant judicial oversight). The "Jay Alix Protocols," which have become the de facto requirements for CRO retention in the Southern District of New York and the District of Delaware, using §363(b) as its basis, still require that the CRO only serve in one capacity and its compensation shall be reviewed under a reasonableness standard at the end of the case. See Timothy Brink and James Irving, *Emerging Trends and Lingering Criticisms: A CRO Retention Update*, 32-SEP Am Bank. Inst. J. 18 (2013)(survey of rulings and standards).

where unresolvable conflicts of interest are present.[6] This court may conduct its own inquiry, even in the absence of creditor objection.[7]

10. The CRO Motion fails to identify, much less address, how an apparent conflict of interest between the estates can or should be handled by the CRO and whether the CRO has adequate authority and powers address this issue. Testimony at the May 11-12, 2020 hearing on the Third Interim Cash Collateral Order made clear that Sklarco, as a participating WIO on several joint operating agreements and unitization agreements (collectively, "**JOAs**"), has failed to pay at least $2.1MM in Cash Call Advances and other debt obligations that were required to be paid by all other WIOs.[8] Moreover, it was Debtors' custom and practice to _never_ require Sklarco to make such payments[9], although it is SEC's obligation and duty as Operator to ensure and enforce performance of all WIOs under any applicable JOA. Instead, SEC merely paid all expenses (with commingled funds) as they became due without regard to Sklarco's financial obligations.[10] The CRO Motion does not address whether one CRO, or any other type of fiduciary for that matter, is sufficient to address this intercompany debt given that Sklarco's failure to pay these debts could be grounds for forfeiture of Sklarco's interests under one or more JOAs. This issue creates an inescapable conflict. Until this conflict is addressed, the power and scope of duties of the proposed CRO are inadequate and the CRO Motion must be denied.

---

[6] _In re TMA Associates, Ltd.,_ 129 B.R. 643, 649 (Bankr. D. Colo. 1991)(under "the totality of the circumstances," attorney who represents general partners is disqualified from representing partnership); See also, _In re W.F. Development Corp.,_ 905 F.2d 883, 884 (5th Cir. 1990)("When one attorney represents both limited and general partners in bankruptcy, there will always be a potential for conflict, and disqualification is proper"); _In re Kuykendahl Place Associates, Ltd.,_ 112 B.R. 847, 851 (Bankr.S.D.Tex.1989) ("The duty and loyalty of the attorney is to the debtor and not to the partners or individuals that control the partners of the Debtor.").
[7] See _In re Ochoa,_ 74 B.R. 191, 194 (Bankr.N.D.N.Y.1987) ("Even absent creditor objection, (assuming full disclosure of the facts), the Court is not prohibited from _sua sponte_ inquiry into an apparent conflict of interest.").
[8] See Transcript pp. 32-33, 42-45, 52, 65, TAUB Ex. L-1, attached hereto as _Exhibit A_.
[9] See Transcript p. 32, attached hereto as _Exhibit A_.
[10] See Transcript p. 32, attached hereto as _Exhibit A_.

11. Fourth, on July 2, 2010, SEC and Sklarco on the one hand, and Howard Sklar and various Sklar-related family trusts (collectively, the "**Sklar Principals**") on the other hand, entered to an Agency Services Agreement, as amended on August 31, 2015 (collectively, the "**ASA**"), attached hereto as *Exhibit B*. The ASA creates another insurmountable conflict of interest between both Debtors as fiduciaries of their respective bankruptcy estates and the Sklar Principals. Under the ASA, the relationship between Sklarco and the Sklar Principals is that of principal and agent, as well as attorney-in-fact, specifically with respect to Sklarco's oil and gas properties.[11] It is a certainty that Sklarco will not be able to repay the admitted $2.1MM+ debt to SEC and the other WIOs solely from post-petition earnings. Thus, Sklarco must resort to enforcing required capital contributions from the Sklar Principals.[12] The ASA also identifies a debt of $18,165,037.52 owed to Sklarco collectively by Sklar Principals, to be repaid over time. The CRO Motion does not state whether this remains an outstanding debt and whether it could be a source of funds for Sklarco, which also creates a conflict. While a debtor's duties as a fiduciary to third parties may not always create a conflict of interest in bankruptcy cases, here, the CRO's duties for the Sklarco estate directly conflict with the duties Sklarco owes to the Sklar Principals, as their agent. Until this obvious conflict is addressed, the power and scope of duties of the proposed CRO are inadequate and the CRO Motion must be denied.[13]

---

[11] See paragraphs 3.2 (p.11) and 1.1 (p. 3) of the ASA at *Exhibit B*.
[12] See paragraph 2.5 (p.10) of the ASA at *Exhibit B*.
[13] Furthermore, the ASA states that "*Each of the Principals specifically acknowledges and agrees that the rights, titles and interests in the [O&G] Property shall be recorded and held in the name of Sklarco, as nominee for each principal.*" [See, para. 1.1, p.3 of the ASA]. Sklarco's status merely as nominee for the oil and properties it ostensibly claims to own under the Sklarco schedules raises questions as to whether these properties are truly property of the Sklarco estate under 11 U.S.C. section 541(b)(1) – "*Property of the estate does not include . . . any power that the debtor may exercise solely for the benefit of an entity other than the debtor.*" See also, *Connolly v. Baum (In re Baum)*, 22 F3d 1014, 1019 (10th Cir. 1993)(Debtor-settlor who is not the sole beneficiary of irrevocable trust could not avoid transfer under Colorado law because trust corpus is not property of the estate). Sklarco's Schedules do not delineate which properties are owned merely as nominee, so it must be assumed that all oil and gas properties are owned merely as a nominee with no equitable interest. See also, Transcript at *Exhibit A*, p. 21 – Howard Sklar – "Sklarco is the agent nominee and they own the working interest in the properties." This admission confirms that Sklarco is only an agent nominee.

12. <u>Joinder</u>. LPG joins in the objections filed by the U. S. Trustee all other WIOs, including but not limited to, those pleadings filed at Docket Nos. 355, 358 and 369.

13. <u>Reservation of Rights</u>. Based upon communications with various counsel for interested constituencies, including the Debtors, Committee and East West Bank, LPG understands that the form of order for the CRO Motion and the scope of the CRO's duties and powers continue to be discussed and altered. As such, LPG makes no admission of fact or law and reserves any and all rights, claims, objections and defenses that may be available in this and any other court over the parties and matters at issue in this LPG Objection, this case, the estate and LPG's interests.

WHEREFORE, LPG requests that (i) the CRO Motion be denied, (ii) or, alternatively, if the CRO is granted, that the Court clarify the scope of powers and duties of any CRO consistent with LPG's objections and rights as stated herein and (iii) the Court grant such other and further relief to which LPG is justly entitled.

Respectfully submitted,

/s/ *Duane J. Brescia*
Duane J. Brescia
TX State Bar No. 24025265
**CLARK HILL STRASBURGER**
720 Brazos, Suite 700
Austin, Texas 78701
512.499.3647 / 512.499.3660 (Facsimile)
dbrescia@clarkhill.com

**Attorneys for Lucas Petroleum Group, Inc.**

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of this Objection, Joinder and Reservation of Rights was served via CM/ECF to all parties entitled to such notice on this the 29th day of May 2020.

*/s/ Duane J. Brescia*
Duane J. Brescia