# EXHIBIT B

## AGENCY SERVICES AGREEMENT

**STATE OF LOUISIANA,**

**PARISH OF CADDO.**

    **BE IT KNOWN** That this day before me, the undersigned authority, a Notary Public in and for the said Parish, State aforesaid, duly commissioned and sworn, personally came and appeared:

        **SKLAR EXPLORATION COMPANY L.L.C.**, a Louisiana limited liability company, whose permanent mailing address is Louisiana Tower, Suite 1601, 401 Edwards Street, Shreveport, Louisiana 71101, represented herein by David A. Barlow, its Vice President – Chief Operating Officer ("**SEC**" or "**Operator**"), and

        **SKLARCO L.L.C.**, a Louisiana limited liability company, whose permanent mailing address is Louisiana Tower, Suite 1601, 401 Edwards Street, Shreveport, Louisiana 71101, represented herein by David A. Barlow, its Vice President – Chief Operating Officer ("**Sklarco**"), and

        **HOWARD F. SKLAR**, husband of Jane Sklar, a resident of Caddo Parish, Louisiana, whose permanent mailing address is Louisiana Tower, Suite 1601, 401 Edwards Street, Shreveport, Louisiana 71101, appearing herein in the following capacities (in such capacities hereinafter sometimes referred to as "**Howard**") with respect to the following described entities, trust relationships and other persons (hereinafter sometimes referred to individually as a "**Principal**" and collectively as the "**Principals**"):

        as the Manager of the **MIRIAM SKLAR L.C.** a Louisiana limited liability company, whose permanent mailing address is Louisiana Tower, Suite 1601, 401 Edwards Street, Shreveport, Louisiana 71101;

        as the Trustee of **HOWARD TRUST** (TIN: 72-6094620) (the "**Howard Trust**"), an irrevocable inter vivos trust created under the laws of the State of Louisiana, whose permanent mailing address is Louisiana Tower, Suite 1601, 401 Edwards Street, Shreveport, Louisiana 71101;

        as the Trustee of **ALAN TRUST** (TIN: 72-6157679), (the "**Alan Trust**") an irrevocable inter vivos trust created under the laws of the State of Louisiana, whose permanent mailing address is Louisiana Tower, Suite 1601, 401 Edwards Street, Shreveport, Louisiana 71101;

1810522-1

as the Trustee of **SAM TRUST** (TIN: 72-6131834), (the "**Sam Trust**") an irrevocable inter vivos trust created under the laws of the State of Louisiana, whose permanent mailing address is Louisiana Tower, Suite 1601, 401 Edwards Street, Shreveport, Louisiana 71101; and

as the duly appointed Independent Executor of the **SUCCESSION OF MIRIAM MANDEL SKLAR** (TIN: 27-6579529), (the "**Estate of Miriam**"), pursuant to that certain order dated April 21, 2010, of the First Judicial District Court, Caddo Parish, Louisiana, Suit No. 540336-B;

who declared that Operator, Principals and Sklarco have made and entered into this Agency Services Agreement (this "**Agreement**") on the following terms and conditions:

## WITNESSETH

**WHEREAS**, until the death of Miriam Mandel Sklar ("**Miriam**") on April 16, 2010 (the "**Date of Death**"), Sklarco served, pursuant to that certain "Prior Agency Services Agreement" (as defined in Section 1.5 below), as the nominee of Miriam and the other parties to the Prior Agency Services Agreement, and has held title to and maintained various rights, titles and interests in property, movable and immovable, personal and real, corporeal and incorporeal, tangible or intangible, and otherwise, co-owned by Miriam with the other parties to the Prior Agency Services Agreement (herein collectively referred to as the "**Property**");

**WHEREAS**, the Estate of Miriam is the successor to the membership interests of Miriam in Miriam Sklar L.C., as provided in the Amended and Restated Operating Agreement for Miriam Sklar L.C.; and

**WHEREAS**, as of the Date of Death, **SEC** was owned by Howard Trust and Miriam and operates oil and gas wells located on lands covered by oil, gas and other mineral leases, or lands pooled therewith, including leases that comprise a portion of the Property, and provides certain "seconded employee" services to Sklarco, as identified in Section 3.2 below; and

**WHEREAS**, effective as of the Date of Death the Membership Interest in SEC owned by Miriam was redeemed by SEC pursuant to that certain "Act of Redemption" by and among SEC and the Estate of Miriam; and

**WHEREAS**, each of the Principals desires to continue to retain Sklarco to develop, maintain and manage such Property on behalf of each Principal, including, but not limited to, the development, maintenance and management of all oil and gas properties and the acquisition and maintenance of records, accounting, personnel, equipment and legal affairs, with full authority to transact all matters relating thereto on the terms and conditions set forth in this Agreement; and

**WHEREAS**, Sklarco and each of the Principals have agreed to enter into this Agreement (1) to memorialize their agreement as to the basis by which Sklarco has provided agency

1810522-1

services, and will continue to provide such services on behalf of the Principals and the Estate of Miriam from and after the Date of Death, (2) to formalize the relationship between the parties and (3) to ratify prior acts performed by Sklarco on behalf of Miriam and each Principal, all on the terms and conditions herein set forth;

**NOW, THEREFORE**, in consideration of the premises and of the mutual covenants and agreements herein, the parties hereto agree as follows:

### AGREEMENT

1. **Powers and Authority of Sklarco.**

   1.1  To facilitate Sklarco's management of the Property each of the Principals does hereby make Sklarco its true and lawful agent and attorney in fact, for each Principal, in his name, place and stead, to do any and every act and to exercise any and every power that each of the Principals might or could do or exercise through any other person with respect to the Property, including not only all matters of administration but also all acts of ownership and the doing of whatever may appear to Sklarco to be conducive to the interests of each of the Principals. Sklarco hereby agrees to serve as the agent and attorney in fact for each of the Principals in accordance with the terms and conditions of this Agreement. Each of the Principals specifically acknowledges and agrees that the rights, titles and interests in the Property shall be recorded and held in the name of Sklarco, as nominee for each Principal.

   1.2  Without in any manner limiting or restricting any of the foregoing, each of the Principals hereby grants unto said agent and attorney in fact, for each of the Principals and in each of the Principals' name, place and stead, full power and authority:

   (1) To accept as a gift or donation or to purchase or otherwise acquire, in any manner, all kinds of things or property, whether movable or immovable, personal or real, corporeal or incorporeal, tangible or intangible, wheresoever situated, in whole or in part, or an undivided interest therein (such property so acquired shall also be included in the term "**Property**" as used herein);

   (2) To do the following things and perform the following acts with respect to any or all of the Principals' interest, or any part thereof, or an undivided interest therein, in the Property:

   (a) To pledge, pawn, mortgage, grant security interests in, hypothecate, file or authorize the filing of UCC-1 financing statements, collaterally assign and pledge or otherwise encumber the interests of any or all of the Principals in the Property in any manner to secure the borrowings, debts, loans and other obligations incurred by Sklarco for or on

        behalf of any or all of the Principals as authorized by this Agreement;

(b) To subject the Property to options, easements or servitudes, mineral or otherwise;

(c) To grant royalty interests affecting the Property;

(d) To grant leases or subleases covering or affecting the Property, including, but without being limited to, oil, gas and mineral leases and subleases, with or without provisions for the pooling of the leased premises, in whole or in part, with other lands and mineral interests;

(e) To use, administer, build upon or otherwise improve, repair, demolish, partition, divide or subdivide the Property in any manner;

(f) To exchange, sell, convey, assign or otherwise dispose of the Property, in whole or in part, in any manner which Sklarco deems advisable;

(g) To make and sign all kinds of agreements pertaining to the Property, including, but without being limited to, the making and signing of assignments, farmout agreements, operating agreements, gas purchase agreements, pooling agreements, unitization agreements, division orders and transfer orders, and agreements supplementing, amending or rescinding such agreements, whether made by any Principal personally or through an agent, pertaining to the doing of anything which Sklarco is authorized to do hereunder;

(3) To borrow money or otherwise contract loans, to acknowledge debts, to make or endorse promissory notes, issue guaranties, and to make or accept all kinds of bills of exchange for any purpose as Sklarco may elect in its sole discretion, such purposes may include, but are not limited to, to fund the costs of any or all of the Principals in acquiring, operating, exploring, refinancing, developing, or re-developing any of the Property, or to provide funds sufficient for Sklarco to provide operating funds for the benefit of any or all of the Principals as Sklarco, in its sole discretion, may deem necessary, useful or convenient for any such Principal;

(4) To endorse, collect and receive the proceeds of any promissory note, draft, check or other bill of exchange made payable to Sklarco in its capacity as

nominee for any Principal, or to any Principal or to any Principal's order and give receipt therefor, and to endorse for deposit in or for collection by any bank or corporate institution, wheresoever situated, drafts, checks or other bills of exchange made payable to Principal or to Principal's order;

(5) To commingle any Principal's funds with other funds held by Sklarco as agent or otherwise, subject to Sklarco's obligations as to accounting and reporting set forth in this Agreement;

(6) To adjust, settle, compromise or submit to arbitration all matters concerning the Property;

(7) To demand, make allowances in respect to, remit or recover and receive anything due or belonging to any Principal and relating to the Property;

(8) To commence, prosecute, discontinue, arbitrate, compromise, settle, confess judgment or defend all kinds of claims, actions and proceedings of any Principal concerning the Property in any manner, with full power to waive citation, to accept service, to plead prescription and to apply for writs and all other process, including appeal;

(9) To prepare, execute and file any application, tax return, report, notice, statement, consent, protest, waiver, petition or agreement or document required or permitted to be filed with respect to the Property under any law, ordinance, resolution, rule, regulation or directive of the United States of America, of any State of the United States of America, or of any department of, or corporation, board, authority, agency, political subdivision or instrumentality heretofore or hereafter created, designated or established by the United States of America or any State thereof; to represent each Principal before the proper office, officer or court with respect to all such documents and the matters to which they pertain; and, without limiting or in any manner restricting the foregoing, to receive, endorse and collect checks in payment of refund of taxes, licenses, penalties or interest; and to receive and inspect confidential information with respect to each Principal's liability under any law, ordinance, resolution, rule, regulation or directive above described;

(10) To contract concerning the Property on behalf of any Principal with itself and with third parties for whom Sklarco also serves as agent and nominee;

(11) To employ any person or persons, firm or corporate institution to perform any act or acts or to do anything which Sklarco deems to be in each Principal's interest and to pay therefor from such Principal's funds and to terminate such employment;

(12)  To appoint any other person or persons as the substitute of Sklarco to do any act or exercise any power which Sklarco could do or exercise hereunder;

(13)  To exercise any and all of the powers herein granted to Sklarco, as and when, to the extent, in the manner, for such price or other consideration or reason and subject to such terms and conditions, usual or unusual, as are acceptable to Sklarco;

(14)  To execute and deliver all kinds of instruments to evidence the exercise by Sklarco of the powers herein granted to Sklarco; and

(15)  To do and perform all and every act and thing whatsoever requisite and necessary to be done in the premises, as fully and to all intents and purposes as each Principal might or could do if personally present.

    1.3    Each of the Principals hereby ratifies and confirms, and promises at all times to ratify and confirm, all and whatsoever Sklarco has done, or shall lawfully do or cause to be done under this Agreement, including anything which shall be done between the expiration or revocation of this Agreement and notice of such expiration or revocation reaching Sklarco, and each of the Principals does hereby declare that, as against each Principal and all persons claiming under such Principal, everything which Sklarco shall do or cause to be done in pursuance hereof after such expiration or revocation shall be valid, binding, enforceable and effectual in favor of any person claiming the benefit thereof who before the doing thereof shall not have had actual or constructive notice of such expiration or revocation.

    1.4    Notwithstanding anything herein to the contrary, in the event that Sklarco on behalf of any of the Principals, in its exercise of the powers and authority herein granted to Sklarco by such Principal, enters into a contract with another party and this Agreement expires or is revoked by such Principal during the term of such contract, then each such Principal does hereby declare that as against such Principal and all persons claiming under such Principal, such contract shall remain in full force and effect for the remainder of the term of such contract. In all of the instances addressed by this Section 1.4 of this Agreement, everything which Sklarco shall do or cause to be done in compliance with the obligations of such contracts prior to the termination thereof, shall be valid, binding, enforceable and effectual in favor of any person claiming the benefit thereof.

    1.5    Each of the Principals acknowledges that Sklarco has maintained and managed the Property on behalf of Miriam and each Principal prior to the effective date of this Agreement pursuant to, inter alia, that certain Agency Service Agreement dated December 14, 2007, by and among Sklarco L.L.C., as Agent, and Howard F. Sklar, in various capacities, as Principal (the "**Prior Agency Services Agreement**"). Certain of the parties to the Prior Agency Services Agreement, namely Suzy Trust, Justin S. Simons Grantor Trust and Jonathan S. Simons Grantor Trust, terminated the Prior Agency Services Agreement as between themselves and Sklarco pursuant to that certain letter agreement dated December 31, 2008, by and between Miriam,

1810522-1

Suzanne S. Simons, Justin S. Simons and Howard F. Sklar in which the signatories agreed to a Plan of Separation and Reorganization for the Sklar Family Business Enterprise (the "**Plan of Reorganization**") and/or subsequent instruments. Certain other parties to the Prior Agency Services Agreement, namely Suzhow L.L.C., SOC2 L.L.C., Sklar Acquisition Company L.L.C., Sklar Children's L.L.C. and Sklar, Inc., have distributed their oil and gas assets to their members/shareholders in accordance with the Plan of Reorganization, and, having no oil and gas assets to administer, have also terminated their agency relationship under the Prior Agency Services Agreement with Sklarco. The remaining parties to the Prior Agency Services Agreement and the Estate of Miriam as successor to Miriam are the Principals hereunder. Each of the Principals hereby ratifies and confirms all actions which Sklarco has taken with respect to its Property prior to the Effective Date which are consistent with the power and authority granted by each Principal to Sklarco under the terms of this Agreement, as fully as if this Agreement had been executed and in effect at the time of such prior acts of maintenance and management.

2. **Payments and Accounting**.

2.1 Except as herein otherwise specifically provided, Sklarco shall promptly pay and discharge expenses incurred for or on behalf of each Principal in relation to the Property. Each month Sklarco shall invoice each Principal on or before the 20th day of each month for his respective proportionate share of such expenses incurred during the preceding month, together with the Agency Services Fees as identified in Sections 2.2.1 through 2.4 below. A statement which identifies the Property involved, and all charges and credits summarized by appropriate classifications of income and expense, shall accompany such invoice. Each Principal shall pay such charges within fifteen (15) days after receipt of the invoice, or, in the alternative, Sklarco may deduct such charges from any funds held by Sklarco for each Principal's account. Sklarco shall keep an accurate record of such expenditures together with any credits to which each Principal is entitled.

2.2.1 Contemporaneously with the Plan of Reorganization, the Principals and Sklarco, acting pursuant to Section 2.2.1 of the Prior Agency Services Agreement, adjusted the monthly "Agency Services Fee" set forth in the Section 2.2 of the Prior Agency Services Agreement, commencing January 1, 2009, as follows:

2.2.1.1 From and after January 1, 2009 Howard Trust paid to Sklarco, and, in consideration of the services to be rendered by Sklarco pursuant to this Agreement, Howard Trust agrees to continue to pay to Sklarco for the duration of this Agreement, a monthly amount equal to the sum of three (3) monthly charges, namely, the (a) G&A Agency Services Fee (as defined in this Section 2.2.3 below) allocated to Howard Trust in the manner provided in Section 2.2.3, (b) the Aircraft Agency Services Fee (as defined in Section 2.3 below) allocated to Howard Trust in the manner provided in Section 2.3 below, and (c) the Interest Agency Services Fee (as defined in Section 2.4 below) allocated to Howard Trust in the manner provided in Section 2.4 below.

1810522-1

Page 7 of 14

2.2.1.2 From and after January 1, 2009, and through April 1, 2010, in consideration of the services rendered by Sklarco, Miriam and Miriam Sklar L.C. in solido paid to Sklarco a monthly amount equal to the sum of (a) the G&A Agency Services Fee allocated to Miriam and Miriam Sklar L.C. in the manner provided in Section 2.2.3, (b) the portion of the Aircraft Agency Services Fee allocated to the Miriam in the manner provided in Section 2.3 below, and (c) the Interest Agency Services Fee allocated to Miriam and Miriam Sklar L.C in the manner provided in Section 2.4 below.

2.2.1.3 From and after January 1, 2009, Alan Trust and Sam Trust each paid to Sklarco, and, in consideration of the services to be rendered by Sklarco pursuant to this Agreement, each agrees to continue to pay to Sklarco for the duration of this Agreement, a monthly amount equal to the sum of two (2) monthly charges, namely, the G&A Agency Services Fee and the Interest Agency Services Fee, allocated to each of Alan Trust and Sam Trust in the manner described in Sections 2.2.3 and 2.4 respectively.

2.2.2 From and after May 1, 2010, in consideration of the services to be rendered by Sklarco pursuant to this Agreement, the Estate of Miriam and Miriam Sklar L.C. agree in solido to pay to Sklarco a monthly amount equal to the sum of (i) $30,000.00 (the "**Agency Services Fee**") in lieu of the G&A Agency Services Fee and the Aircraft Agency Services Fee, and (ii) the Interest Agency Services Fee allocated to the Estate of Miriam and Miriam Sklar L.C in the manner provided in Section 2.4 below, until the "Intercompany Debt" (as defined in Section 2.4 below) owed by the Estate of Miriam and Miriam Sklar, L.C. is paid in full to Sklarco.

2.2.3 The "**G&A Agency Services Fee**" means the sum of (a) general and administrative costs incurred by SEC during a calendar month minus (b) operating income and any other revenues for such month (but excluding revenue or expenses associated with the Aircraft Agency Services Fee and the Interest Agency Services Fee). Each of the Principals shall bear a fraction of the G&A Agency Services Fee equal to a fraction whose numerator consists of that Principal's "**NOR**" (as defined in this Section 2.2.3 below) and whose denominator consists of all of the Principals' NOR. For purposes hereof, "**NOR**" means the monthly net operating revenue of a Principal, or of the Principals, received from the sale of oil and gas produced from wells in which each owns an interest, for each month severance and excise taxes, other revenue deductions and lease operating expenses. NOR does not include any capital expenses. Sklarco agrees with SEC that SEC shall invoice Sklarco for, and Sklarco shall owe, an amount each month equal to the total sum paid by the Principals as "G&A Agency Services Fee" and Agency Services Fee.

2.2.4 The Agency Services Fee as identified in Section 2.2.2 will be adjusted annually, as of January 1 each year, commencing January 1, 2011, based upon the percentage change in the average of the Consumer Price Index for Urban Wage Earners and Clerical Workers, U.S. City Average, for all items (1982-84=100), as published by the Department of Labor, Bureau of Labor and Statistics ("CPI-W") for the year 2009 compared to the average of the CPI-W for the year immediately preceding the date of adjustment. If the United States Department of Labor

discontinues issuing, or substantially changes the bases of this Index, Sklarco and the Estate of Miriam will substitute and apply prospectively, a different, mutually agreeable index. Likewise, if the parties in good faith discover that the Index does not provide a proper basis for its intended use, the parties will select and prospectively apply a more appropriate index to reflect the effects of inflation/deflation more accurately.

    2.3    The "**Aircraft Agency Services Fee**" means the monthly rental payment owed by SEC to Sklar Transport, L.L.C. under that certain Aircraft Lease (the "**Dry Lease**") dated effective as of October 1, 2006, by and between Sklar Transport, LLC, as Lessor, and SEC, as Lessee, as amended, together with other expenses associated with the Aircraft (as defined in the Dry Lease) borne by the Lessee under that Dry Lease, including, without limitation, fuel expenses, salaries, taxes and related personnel expenses associated with salaried pilots, costs for contract pilots, storage at the hanger owned by Sklar Transport, L.L.C. or at other hangers. The Aircraft Agency Services Fee shall be net of any payments received by SEC from individuals for personal use of the Aircraft, including, without limitation, payment received by SEC from the Estate of Miriam for payment of personal use of the Aircraft by Howard F. Sklar and Suzanne S. Simons pursuant to Section 12.3 in Exhibit "B" to the Plan of Reorganization. Until May 1, 2010, the Howard Trust and the Estate of Miriam shared the Aircraft Agency Services Fee in the proportions of 68.75% to Howard Trust and 31.25% to the Estate of Miriam. From and after May 1, 2010, Howard Trust shall bear all of the Aircraft Agency Services Fee. Sklarco agrees with SEC that SEC shall invoice Sklarco for, and Sklarco shall owe, an amount each month equal to the total sum paid by the Principals as Aircraft Agency Services Fee.

    2.4    The parties recognize that from time to time sums have been advanced to the Principals by Sklarco, and in the future additional will be advanced to the Principals by Sklarco, to pay expenses of each Principal in connection with the on-going participation of each Principal in the oil and gas business and the development, maintenance and management of the Property of each Principal. As of May 1, 2010, the unpaid balance of the advances made by Sklarco to, and owed to Sklarco by, each of the Principals (the "**Intercompany Debt**") is as follows:

| **Principal** | **Unpaid Balance of Intercompany Debt** (as of May 1, 2010) |
|---|---|
| Howard Trust | $ 10,249,544.04 |
| Estate of Miriam/Miriam Sklar L.C. | $ 7,100,540.98 |
| Alan Trust | $ 326,693.11 |
| Sam Trust | $ 488,259.39 |
| **Total Debt** | **$ 18,165,037.52** |

Until the Intercompany Debt owed by a Principal is repaid to Sklarco in full by each Principal, commencing on May 1, 2010, and on the first date of each succeeding month, each Principal shall pay to Sklarco a monthly payment (the "**Interest Agency Services Fee**"), together with such other amounts to be paid in reduction of the principal balance of the Intercompany Debt of such Principal as Sklarco determines to be appropriate. The Interest Agency Services Fee to be made each month by each Principal shall be determined in accordance with the following

1810522-1

formula:

**the product of (the quotient obtained when "PICD" is divided by "Total Debt") multiplied by "BOK Interest and Fees"**

>   where,

>   **"PICD"** = the unpaid balance of each Principal's Intercompany Debt as of the first of the month in which the monthly payment is due;

>   **"Total Debt"** = the sum of unpaid balance of all of the Principals' Incompany Debt as of the first of the month in which the monthly payment is due; and

>   **"BOK Interest and Fees"** = the total interest and fees due and payable each month to the Bank of Oklahoma, National Association (**"BOK"**), pursuant to that certain "Credit Agreement" by and between the Sklarco and Sklar Exploration Company, L.L.C., (**"SEC"**), as "Borrowers," and BOK, as Lender, dated January 4, 2008, as amended (the **"BOK Credit Agreement"**), for the month in which the monthly payment is due.

2.5 Sklarco, at its election, shall have the right from time to time to demand and receive from each Principal payment in advance of its respective share of the estimated amount of the expense to be incurred related to the Property during the next succeeding month, which right may be exercised only by submission to such Principal of an itemized statement of such estimated expense, together with an invoice for its share thereof. Each such statement and invoice for the payment in advance of estimated expense shall be submitted on or before the 15th day of the next preceding month. Each of the Principals shall pay to Sklarco its proportionate share of such estimate within ten (10) days after such estimate and invoice is received.

2.6 If any Principal fails to pay its share of the statements issued by Sklarco pursuant to Sections 2.1 and 2.5 above within the time period provided, the amount due shall bear interest monthly by means of the Interest Agency Services Fee, provided, however, that at Sklarco's option, in lieu of such Interest Agency Services Fee, Sklarco may charge interest monthly, and each Principal shall bear interest monthly on such amount due, at the prime rate in effect as published in The Wall Street Journal on the first day of the month in which such delinquency occurs plus 1%, or the maximum contract rate permitted by the applicable usury laws of the State of Louisiana, whichever is the lesser, plus attorney's fees, court costs, and other costs incurred in connection with the collection of such unpaid amounts.

2.7 Payment of any invoices issued pursuant to this Agreement shall not prejudice the right of any Principal to protest or question the correctness thereof; provided, however, all invoices and statements rendered to such Principal by Sklarco during any calendar year shall conclusively be presumed to be true and correct after twelve (12) months following the end of any such calendar year, unless within the said twelve (12) month period the Principal takes

written exception thereto and makes claim on Sklarco for adjustment. No adjustment favorable to Sklarco shall be made unless it is made within the same prescribed period.

2.8     Each of the Principals and its auditors, counsel and duly authorized agents, at such Principal's sole expense, shall be entitled at all reasonable times during normal business hours to examine any and all records, reports, accounts, plans, books, correspondence and documents of Sklarco relating to the Property, and, upon notice in writing to Sklarco, shall have the right to audit Sklarco's accounts and records relating to the Property for any calendar year within the twelve (12) month period following the end of such calendar year; provided, however, the making of an audit shall not extend the time for the taking of written exception to and the adjustments of accounts as provided in Section 2.5. Sklarco shall bear no portion of Principal's audit cost incurred under this Section unless agreed to by Sklarco. Such audit shall not be conducted more than once each year, without the prior approval of Sklarco.

3.     **Relationship of Parties**

3.1     Relationship Between the Principals and Sklarco: The relationship between each of the Principals and Sklarco hereunder is intended to be that of principal and agent, respectively. Nothing contained herein shall be construed so as to constitute the Principals and Sklarco as partners or joint venturers, or either as the employee of the other, or the employees of either as employees of the other.

3.2     Relationship Between the Operator and Sklarco: The relationship between Operator and Sklarco is intended to be that of contractor and owner, respectively. In consideration of the other terms and provisions of this Agreement, SEC agrees to provide to Sklarco, from time to time, such employees of SEC as "seconded employees" as reasonably necessary for Sklarco to perform its duties hereunder. Nothing contained herein shall be construed so as to constitute SEC and Sklarco as partners or joint venturers, or either as the employee of the other.

4.     **Term**

4.1     This Agreement shall be effective as of May 1, 2010 ("**Effective Date**"), and shall continue in full force and effect for an initial term of two years and thereafter for consecutive one-year terms; provided that either Sklarco or any Principal may elect to terminate this Agreement by giving written notice to the other party at least ninety (90) days prior to the next anniversary date of this Agreement. Upon the proper issuance of such notice of termination, this Agreement shall terminate as to the Principal affected thereby on the next anniversary date of this Agreement, subject to the provisions of Sections 1.3 and 1.4 above.

4.2     Upon the termination of this Agreement for any reason as to any Principal, Sklarco shall prepare, execute and record such assignments to such Principal covering the various interests in the Property which are held by Sklarco as nominee for such Principal pursuant to this Agreement as necessary to transfer record title to the Property to such Principal. All costs of preparing such assignments and recording same in the appropriate public records

1810522-1

shall be invoiced by Sklarco to, and paid by, the Principal. The termination of this Agreement shall be effective as of the date all of such assignments have been recorded in the Conveyance Records of all requisite parishes and counties where the Property is located. Upon the completion of the recordation of such assignments, either party may record a notice of termination of this Agreement in the Conveyance Records of Caddo Parish, Louisiana, which notice shall constitute constructive notice to third parties of the termination of this Agreement.

5. **Limitations of Liability and Indemnification**

   5.1 Limitations on Liability. In no event shall Sklarco be liable (whether in contract or in negligence, fault or strict liability) to any Principal, his agents, employees or insurers, arising from claims for any damages of any kind or character (including damages arising from claims by third parties) resulting from performance, nonperformance, or delay in performance of its obligations under this Agreement or from delay, termination or suspension of this Agreement unless such damages shall have resulted from the gross negligence or willful misconduct of Sklarco, its agents or employees.

   5.2 Survival of Liability Provisions. The provisions of this Article 5 shall apply to the full extent permitted by law and shall survive termination of this Agreement.

6. **Miscellaneous**

   6.1 Notices. All notices and other communications provided for or required by this Agreement shall be in writing and shall be deemed to have been duly given when delivered by hand or three business days after deposit in the United States mail, return receipt requested, postage prepaid, addressed to the person to whom such notice is intended to be given at the addresses specified below:

   (a) If to Sklarco:

   Sklarco, L.L.C.
   401 Edwards Street, Suite 1601
   Shreveport, Louisiana 71101
   Attention: David A. Barlow

   (b) If to any of the Principals:

   Name of Principal
   401 Edwards Street, Suite 16001
   Shreveport, LA 71101
   Attention: Howard F. Sklar

The designation of the persons to be notified, or the addresses of such persons, may be changed at any time by any party upon written notification to the other party.

1810522-1

Page 12 of 14

6.2 <u>Entire Agreement</u>. This Agreement (together with any Exhibits hereto) constitutes the entire agreement by and between the parties hereto and supersedes any other agreement, whether written or oral, that may have been made or entered into by Sklarco or Principal (or by any officer or representative of such parties) relating to the matters contemplated hereby. Without limitation upon the foregoing, this Agreement replaces and supersedes from and after the Effective Date the Prior Agency Services Agreement.

6.3 <u>Assignment</u>. Neither Sklarco nor any of the Principals shall assign this Agreement or any interest herein or rights hereunder or delegate any duties hereunder to any person or entity without the prior written consent of the other party hereto, which consent shall not be unreasonably withheld.

6.4 <u>Amendments, Supplements, Etc.</u> This Agreement or the Exhibits hereto may be amended or supplemented at any time by additional written agreements or exhibits, as may mutually be determined by the parties hereto to be necessary, desirable or appropriate to further the purposes of this Agreement or to clarify the intention of the parties hereto.

6.5 <u>Applicable Law</u>. This Agreement and the legal relations between the parties hereto shall be governed by and construed in accordance with the substantive laws of the State of Louisiana, without giving effect to the principles of conflict of laws thereof.

6.6 <u>Execution in Counterparts</u>. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

6.7 <u>References</u>. Titles and headings to sections herein are inserted for convenience of reference only, and are not intended to be a part of or to affect the meaning or interpretation of this Agreement. Where the context requires, references to the masculine shall also refer to the feminine or neuter, and references to the singular shall also refer to the plural.

6.8 <u>Severability</u>. In the event that any of the terms, covenants or conditions of this Agreement or the application of any such term, covenant or condition, shall be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other term, covenant or condition hereof and this Agreement shall be construed as if such invalid, illegal or unenforceable term, covenant or condition had never been contained herein.

**DONE AND PASSED** in the Parish of Caddo, State of Louisiana, in the presence of the two undersigned competent witnesses and me, Notary, on this 2nd day of July, 2010, but effective as of the Effective Date set forth in Section 4.1 of this Agreement.

[signatures continued on next page]

1810522-1

**WITNESSES:**

_____
Vickie M. Deaton

_____
Melissa Lamberth

_____
Vickie M. Deaton

_____
Melissa Lamberth

_____
Vickie M. Deaton

_____
Melissa Lamberth

_____
HOWARD F. SKLAR, in the representative capacities for each of the Principals as identified above
– Principal

**SKLARCO, L.L.C.**

By: _____
DAVID A. BARLOW
Vice President - Chief Operating Officer
- Agent

**SKLAR EXPLORATION COMPANY, L.L.C.**

By: _____
DAVID A. BARLOW
Vice President - Chief Operating Officer
- Operator

_____
Kim S. Elias
Notary Public
in and for Caddo Parish, Louisiana.

Kim S. Elias, Notary Public # 52698
Caddo Parish, Louisiana
My Commission is for Life

1810522-1

Page 14 of 14

# FIRST AMENDMENT TO AGENCY SERVICES AGREEMENT

**STATE OF COLORADO,**

**COUNTY OF BOULDER.**

**THIS FIRST AMENDMENT TO AGENCY SERVICES AGREEMENT** (this "**Amendment**") (the "**Effective Date**") by and among the following:

**SKLARCO L.L.C.**, a Louisiana limited liability company, whose mailing address is 5395 Pearl Parkway, Suite 200, Boulder, Colorado 80301, represented herein by David A. Barlow, its President – Chief Operating Officer ("**SKLARCO**"); and

**SKLAR EXPLORATION COMPANY L.L.C.**, a Louisiana limited liability company, whose mailing address is 5395 Pearl Parkway, Suite 200, Boulder, Colorado 80301, represented herein by David A. Barlow, its President – Chief Operating Officer ("**SEC**" or "**Operator**"); and

**HOWARD F. SKLAR**, a resident of Boulder County, Colorado, whose mailing address is 5395 Pearl Parkway, Suite 200, Boulder, Colorado 80301, appearing herein in the following capacities (in such capacities hereinafter sometimes referred to as "**Howard**") with respect to the entities, trust relationships and other persons described in the following subparagraphs (i) through (v) (hereinafter sometimes referred to individually as a "**Principal**" and collectively as the "**Principals**"):

(i) as the Manager of the **MIRIAM SKLAR L.C.** a Louisiana limited liability company;

(ii) as the Trustee of **HOWARD TRUST** (TIN: 72-6094620), an irrevocable inter vivos trust created under the laws of the State of Louisiana, whose permanent mailing address is Louisiana Tower, Suite 1601, 401 Edwards Street, Shreveport, Louisiana 71101;

(iii) as the Trustee of **ALAN TRUST** (TIN: 72-6157679), (the "**Alan Trust**") an irrevocable inter vivos trust created under the laws of the State of Louisiana;

(iv) as the Trustee of **SAM TRUST** (TIN: 72-6131834), (the "**Sam Trust**") an irrevocable inter vivos trust created under the laws of the State of Louisiana; and

(v) as the duly appointed Independent Executor of the **SUCCESSION OF MIRIAM MANDEL SKLAR** (TIN: 27-6579529), (the "**Estate of Miriam**"), pursuant to that certain order dated April 21, 2010, of the First Judicial District Court, Caddo Parish, Louisiana, Suit No. 540336-B;

1871553-1

and

**HOWARD F. SKLAR**, in his capacity as the Trustee of (i) the **JACOB GRANTOR TRUST** (TIN: 72- 6094619), (the "**Jacob Grantor Trust**"), an irrevocable inter vivos trust created under the laws of the State of Louisiana, and (ii) the **ALAN GRANTOR TRUST** (TIN: 72- 6157679), (the "**Alan Grantor Trust**") an irrevocable inter vivos trust created under the laws of the State of Louisiana (the Jacob Grantor Trust and the Alan Grantor Trust are herein collectively referred to as "**Additional Principals**"); and

who declared that the Principals, the Additional Principals, SEC and SKLARCO have made and entered into this Amendment on the following terms and conditions:

## WITNESSETH

**WHEREAS**, pursuant to that certain "Agency Services Agreement" dated effective May 1, 2010, by and among Howard in the capacities identified above for each of the Principals, SEC as "Operator," and SKLARCO, as "Agent" (the "**Agency Agreement**"), each of the Principals authorized SKLARCO to acquire, hold, develop, maintain and manage various properties and interests on behalf of each such Principal, including, but not limited to, the development, maintenance and management of various oil and gas properties and the acquisition and maintenance of records, accounting, personnel, equipment and legal affairs, with full authority to transact all matters relating thereto, all on the terms and conditions set forth in the Agency Agreement;

**WHEREAS**, effective as of October 16, 2010, the Sam Trust terminated, and pursuant to that certain "Receipt and Release (Sam Trust)" dated effective October 16, 2010, Howard F. Sklar, as Trustee of the Sam Trust, granted, assigned, transferred and delivered unto Jacob Sam Sklar, the sole beneficiary of the Sam Trust, all of the property and assets of the trust estate of the Sam Trust (the "**Sam Trust Property**"), which included of the properties and assets described and listed in Exhibit "A," annexed thereto, and Jacob Sam Sklar inter alia (a) accepted receipt of the Sam Trust Property, and (b) agreed that the interests that are part of the Sam Trust Property held by SKLARCO as "Agent, Nominee" for Howard Fred Sklar, as Trustee of the Sam Trust pursuant to the Agency Agreement would continue to be held by SKLARCO, as nominee in accordance with the Agency Agreement; and

**WHEREAS**, subsequent to the termination of the Sam Trust, Jacob Sam Sklar, as Settlor, and Howard, as Trustee, pursuant to that certain "Inter Vivos Trust (Jacob Grantor Trust)" dated effective as of October 16, 2010, established a new trust to govern all of the Sam Trust Property, and all assets which may thereafter be added to the trust estate of the Jacob Grantor Trust;

**WHEREAS**, effective as of April 21, 2015, the Alan Trust terminated, and pursuant to that certain "Receipt and Release (Alan Trust)" dated effective April 21, 2015, Howard F. Sklar, as Trustee of the Alan Trust granted, assigned, transferred and delivered unto Alan Preston Sklar, the sole beneficiary of the Alan Trust, all of the property and assets of the trust estate of the Alan Trust (the "**Alan Trust Property**"), which included of the properties and assets described and listed in Exhibit "A," annexed thereto, and Alan Preston Sklar inter alia (a) accepted

1871553-1

Page 2 of 4

receipt of the Alan Trust Property, and (b) agreed that the interests that are part of the Alan Trust Property held by SKLARCO as "Agent, Nominee" for Howard Fred Sklar, as Trustee of the Sam Trust pursuant to that certain Agency Agreement would continue to be held by SKLARCO, as nominee in accordance with the Agency Agreement; and

**WHEREAS**, subsequent to the termination of the Alan Trust, Alan Preston Sklar, as Settlor, and Howard, as Trustee, pursuant to that certain "Inter Vivos Trust (Alan Grantor Trust)" dated effective as of April 21, 2015, established a new trust to govern all of the Alan Trust Property, and all assets which may thereafter be added to the trust estate of the Alan Grantor Trust;

**WHEREAS**, SKLARCO, SEC, the Additional Principals and the Principals desire to amend the Agency Agreement (i) to substitute the Additional Principals, the Jacob Grantor Trust and the Alan Grantor Trust, as parties to the Agency Agreement, in substitution and replacement of the Sam Trust and the Alan Trust respectively, as a "Principal," so as to memorialize and formalize the agreement of each Additional Principal as to the authority and power of SKLARCO to serve as the Agent and to perform the services identified in the Agency Agreement on behalf of each of the Additional Principals, and (ii) to ratify all prior acts performed by SKLARCO and/or SEC on behalf of the Jacob Grantor Trust and the Alan Grantor Trust pursuant to the Agency Agreement, respectively, all on the terms and conditions set forth in this Amendment.

**NOW, THEREFORE**, in consideration of the premises and of the mutual covenants and agreements contained herein and in the Agency Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the above referenced parties hereto agree as follows:

## AGREEMENT

1. **Substitution of Jacob Grantor Trust as a Principal**. Effective as of as of October 16, 2010, the Agency Agreement is hereby amended to substitute the Jacob Grantor Trust, as a "**Principal**" and one of the "**Principals**," in substitution and replacement of the Sam Trust as a Principal, so that any and all references in the Agency Agreement to either the term "Principal" or the term "Principals" shall refer to the Jacob Grantor Trust. The Jacob Grantor Trust hereby ratifies all prior action taken or performed by SKLARCO and/or SEC pursuant to the Agency Agreement on behalf of said trust from and after October 16, 2010.

2. **Substitution of Alan Grantor Trust as a Principal**. Effective as of as of April 21, 2015, the Agency Agreement is hereby amended to substitute the Alan Grantor Trust, as a "**Principal**" and one of the "**Principals**," in substitution and replacement of the Alan Trust as a Principal, so that any and all references in the Agency Agreement to either the term "Principal" or the term "Principals" shall refer to the Alan Grantor Trust. The Alan Grantor Trust hereby ratifies all prior action taken or performed by SKLARCO and/or SEC pursuant to the Agency Agreement on behalf of said trust from and after April 21, 2015.

3. **Continuing Effect**. Except as specifically amended in this Amendment, all of the terms and conditions of the Agency Agreement shall remain unmodified and in full force and effect.

1871553-1

**DONE AND PASSED** in Boulder County, Colorado in the presence of the two undersigned competent witnesses and me, Notary, on this **31ST** day of **AUGUST**, 2015, but effective as to (i) the Jacob Grantor Trust as of October 16, 2010, and (ii) the Alan Grantor Trust as of April 21, 2015.

**WITNESSES:**

Print Name: _Chris Farrell_

Print Name: _Laura Medlin_

_____
**HOWARD F. SKLAR**, in the representative capacities for each of the Principals and the Additional Principals as identified above

Print Name: _Chris Farrell_

Print Name: _Laura Medlin_

**SKLARCO, L.L.C.**

By: _____
DAVID A. BARLOW
President - Chief Operating Officer
---Agent

Print Name: _Chris Farrell_

Print Name: _Laura Medlin_

**SKLAR EXPLORATION COMPANY, L.L.C.**

By: _____
DAVID A. BARLOW
President - Chief Operating Officer
---Operator

_____
NOTARY PUBLIC in and for
Boulder County, Colorado.
My Commission Expires: _AUGUST 15, 2017_

GEOFFREY DAVID NENNINGER
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20134051884
MY COMMISSION EXPIRES AUGUST 15, 2017

1871553-1

Page 4 of 4