**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
Bankruptcy Judge Elizabeth E. Brown

| | |
|---|---|
| In re:<br><br>Sklar Exploration Company, LLC,<br>Debtor. | Case No. 20-12377 EEB<br>Chapter 11 |
| In re:<br><br>Sklarco, LLC,<br>Debtor. | Case No. 20-12380 EEB<br>Chapter 11<br><br><br>**Joint Administered Under**<br>**Case No. 20-12377 EEB** |

**OBJECTION, JOINDER AND RESERVATION OF RIGHTS OF**
**JF HOWELL INTERESTS, LP TO THE DEBTORS' MOTION TO**
**EMPLOY CHIEF RESTRUCTURING OFFICER**

**NOW INTO COURT**, through undersigned counsel, comes JF Howell Interests, LP ("Howell Interests"), a creditor and party in interest, which makes this Objection to the Motion For Entry Of Order Authorizing Debtors' Employment Of CR3 Partners As Chief Restructuring Officer Effective As Of May 21, 2020 [Doc. 341] ("CRO Motion") filed by Sklar Exploration Company, LLC ("SEC"), and Sklarco, LLC ("Sklarco") (jointly SEC and Sklarco are referred to as the "Debtors").

**SUMMARY OF OBJECTION**

Howell Interests was identified in the Court's May 18, 2020 Order [Doc. 319] on the Third Interim Order Authorizing Use Of Cash Collateral as an Interest Holder and the Debtors were ordered to provide, *inter alia*, the Interest Holders with "reasonable consultation"

- 1 -

concerning the identity and terms on which Debtors would seek Court approval of a Chief Restructuring Officer ("CRO"). *Id*. para. 10. However, in violation of the May 18th Order, Debtors completely failed to engage in any dialogue or consultation whatsoever with Howell Interest prior to the filing of the CRO Motion. Thus, Howell Interests was not able to discuss its concerns and issues and was forced to file this Objection.

Howell Interests is mindful of the fact that the Debtors indicate that the CRO Motion has been approved by the East West Bank and the Unsecured Creditors Committee (which has only been appointed for SEC). However, Howell Interests is not comfortable that either the East West Bank or the Unsecured Creditors Committee adequately represent its interests. East West Bank is a secured creditor in a much different position than Howell Interests as the East West Bank is not a working interest owner in any prospect, has no on-going responsibility for joint interest billings ("JIBs") or other expenses under the various Unit Participation Agreements and Joint Operating Agreements ("JOA") and is not subject to the punitive forfeiture provisions under the JOAs for Howell Interests late or failure to comply with the demands of SEC, as the current operator, under the various JOAs. The Unsecured Creditors Committee of SEC is composed mainly of trade creditors whose sole interest is to be paid for pre-petition debts owed by SEC. The sole working interest owner member of the Unsecured Creditors Committee, the Anderson parties, own (to the best of Howell Interests' information) significant interests in various Florida projects but have very small, even *de minimis*, interests in the most valuable assets operated by SEC, the various Alabama properties.

Accordingly, because the Debtors failed to consult in any manner whatsoever with Howell Interests and because Howell Interests does believe its interests are not adequately

represented by the Unsecured Creditors Committee, Howell Interests files this objection to the CRO Motion.

## BACKGROUND

1. Debtor, SEC and Howell Interests are parties to various operating agreements in which SEC serves as the operator of oil and gas properties while Howell Interests and others hold working interest ownership (collectively, the "Owners") in those properties. A list of the various Participation Agreements and Joint Operating Agreements to which Howell Interests and SEC are parties is set forth on the Exhibit A attached hereto.[1]

2. Pursuant to and in accordance with these agreements, SEC made "cash calls" to Howell Interests pertaining to a certain property or certain operations from time to time to advance funds for specific purposes stated in the cash call (collectively, the "Cash Call Advances"). The Debtors' Schedule D: Creditors Who Have Claims Secured by Property [Doc. #105, No. 3.195] admits that SEC should be holding no less than $19,867.99 in Cash Call Advances made to it by Howell Interests pursuant to the agreements for various projects but the Debtors have admitted that SEC spent those funds for unauthorized purposes and no longer has those funds.

3. The Debtors have also admitted that they lack the funds to operate the various properties and that it is critically important to the Debtors that the various working interest owners, including Howell Interests, timely pay their JIBs. It is a foregone conclusion that under the impecunious circumstances of the Debtors, for SEC to be able to operate the various oil and gas properties SEC will likely, if not certainly, again result to the issuance of Cash Call Advances to the working interest owners.

---

[1] For convenience, the agreements listed on the Exhibit "A" are numbered to correspond to the number assigned to those contracts on the Schedule G filed by Debtors [Doc.#106]. Howell Interests reserves the right to supplement the list of agreements to which it and SEC are parties through appropriate discovery.

4. Sklarco, allegedly the owner of the working interests in the various prospects owns working interests in the various Alabama prospects of a significant portion of the total working interests[2] and is thus responsible for the proper and timely payment under the JOAs of its share of both JIBs and Cash Call Advances. It will be critically important to the working interest owners, including Howell Interests, that Sklarco is compelled to comply with the terms of the JOAs in the full and timely payment of JIBs and Cash Call Advances from SEC to avoid prejudice to the working interest owners of having to carry, involuntarily, Sklarco's obligations.

5. Because the Howard F. Sklar Trust is the sole owner of 100% of the equity in both Debtors and because Howard F. Sklar is both the sole trustee of the Howard F. Sklar Trust and the sole manager of both Debtors, for the reasons set forth below, Howell Interests believes the terms of the proposed engagement of the CRO are merely illusory as the sole and exclusive powers of management and decision-making for both Debtors resides exclusively with Howard F. Sklar under the governance documents of the entities.

6. Because it appears that SEC distributed some $7 Million to Sklarco for the payment of debts and obligations of Sklarco, the exact amount and ultimate disposition of which has not yet been established, SEC as operator must not only cease the preferential treatment of Sklarco but demand full and complete compliance by Sklarco with the JOAs and pursue the recovery from Sklarco of the funds illicitly obtained by Sklarco that in fact belonged to the working interest owners other than Sklarco. On the other hand, Sklarco, which apparently holds some, if not all, of its interests as "Agent and Nominee" for various third party principals, which are believed to be Howard Sklar related or affiliated insiders, will undoubtedly resist any effort

---

[2] Upon information and belief, Sklarco is credited by SEC as the owner of: 31.877217% in Little Cedar Creek Oil Unit II, 34.353826% in Little Cedar Creek Oil Unit IV, 26.457143% in Escambia Prospect, 26.300777% in Fishpond Oil Unit, 12.592820% in Southeast Brooklyn Oil Unit, 19.649466% in Southwest Brooklyn Oil Unit, 17.3750000% in Shipps Creek Prospect and 26.750000% in Oakhay Creek Prospect.

to end the preferential treatment it had received from SEC and resist any effort by SEC to compel a return of the illicitly received funds. A house divided against itself cannot stand. Because an irresolvable and pervasive conflict of interest exists by employment of the same CRO for both SEC and Sklarco, the CRO Motion is fatally flawed.

7.   Finally, the JOAs vested in SEC as operator the contractual right to incur various costs in connection with operations and to propose various operations to the working interest owners. Howell Interests, and the other working interest owners, have lost all confidence in SEC to honestly, ethically, and competently operate the various prospects. This is important because without confidence in the full honesty and integrity of the operator, the possibility exists under the JOAs that SEC could orchestrate the forfeiture of interests by proposing unsound, unwise, unnecessary, or unduly expensive operations for the sake of generating its operating fees and forcing the working interest owners to risk the forfeiture of their investments totaling hundreds of thousands of dollars by either failing to pay a Cash Call Advance or by electing "non-consent" status and suffering a massive penalty in favor of SEC.

## **OBJECTION**

### **A. Governance Documents.**

8.   Howell Interests appreciates the Court's comments in the interim cash collateral hearings that any CRO must be a member of management of the Debtors and that is what the CRO Motion describes. However, the CRO Motion fails to appreciate the pervasive of power and authority of the Manager of the Debtors, Howard F. Sklar, under the Operating Agreements, a copy of the Operating Agreement, and amendments, for SEC as provided by Debtors' counsel is attached as Exhibit B and a copy of the Operating Agreement, and amendments, for Sklarco as provided by Debtors' counsel is attached as Exhibit C.

9. As set forth in the respective Operating Agreements, the Debtors are manager-managed entities formed under Louisiana law and Howard F. Sklar is the sole manager of each entity. The pertinent provisions are found in Section 4.7 of each Operating Agreement in which Howard F. Sklar is named the "Manager-Chairman/Chief Executive Officer" of each entity. Importantly, the manager is solely vested with the power and authority over the operations and activities of both entities (Section 4.1), with sole authority to hire such other officers and agents as he determines on such terms as he determines (Section 4.7.1) any and all of whom may be removed at any time, and apparently for any reason, by Howard F. Sklar, the manager (Section 4.7.10).

10. The CRO Motion fails to explain the specific revisions to the Operating Agreements of both Debtors to vest in the CRO power and authority to perform the functions set forth in the CRO Motion without the express approval of the manager or over the objection or contrary instruction of the manager. Because the independent action of the CRO, unfettered by any contrary demands or instructions from the current management (all of whom serve at the pleasure of the Manager), and specifically focused on the preservation and enhancement of the oil and gas prospects (not, apparently, owned by SEC) only with suitable amendments to each of the Operating Agreements will the CRO's authority be anything other than illusory at best.

11. The CRO Motion is defective and patently incomplete by failing to address this critical aspect of the employment of the CRO.

**B. Conflict of Interest.**

12. Howell Interests objects to the CRO Motion to the extent that the proposed CRO will function as the CRO for SEC and Sklarco simultaneously and only as a member of the

respective Debtors' management teams, even if the Operating Agreements are properly amended to vest plenary power in the CRO.

13. As noted earlier, the interests of SEC and Sklarco are separate and in fundamental respects in irreconcilable conflict thus subjecting the CRO to competing and conflicting interests. As the CRO of SEC, the operator of the prospects in which the working interest owners own interests, the CRO must in good faith propose, undertake, and implement operations that preserve and enhance the value of the prospects to the working interest owners, which include Sklarco. With Sklarco owning such a large working interest in the projects, and without the apparent ability to fund its Cash Call Advances and JIBs, SEC cannot help but be influenced in the decisions that it makes, or fails to make, as operator. Will the CRO of SEC fully pursue SEC's rights and obligations against Sklarco under the JOAs for Sklarco's untimely or improper payments? Will the CRO of SEC pursue the return or collection from Sklarco of the funds of the working interest owners that SEC collected pre-petition and then distributed to Sklarco, which then distributed the funds to, among others not yet known, Howard F. Sklar? It has been held, though not in this district yet, that an essential premise in a Chapter 11 case in which no trustee has been appointed is that the officers and managing employees of the debtor-in-possession owe fiduciary duties as would a trustee to the creditors of the debtor. See *In re Houston Reg'l Sports Network, L.P.*, 505 B.R. 468, 481 (Bankr. S.D. Tex. 2014). Furthermore, at least some courts have determined that debtors and its managing officers or board of directors owe fiduciary obligations to its creditors and cannot favor, or appear to favor, one creditor over another. See *In re Innkeepers USA Trust*, 442 B.R. 227, 235 (Bankr. S.D.N.Y. 2010).

14. On the other hand, as CRO of Sklarco it would be extremely advantageous to Sklarco for SEC to allow Sklarco to avoid paying Cash Call Advances, allow late payment or

non-payment of Sklarco's JIB's without invoking the punitive provisions of the JOAs. It is just impossible for the CRO to serve both SEC and Sklarco simultaneously.[3] It is difficult to see how the proposed dual engagement of CR3 Partners of both SEC and Sklarco is appropriate under 11 U.S.C. 327 (a). See *In re McDermott Int'l, Inc.*, Case No. 20-30336, 2020 WL 2569931, -- B.R. -- (Bankr. S.D. Tex. May 20, 2020).

### C. JOAs

15. Under the JOAs, SEC as operator is required to first pay all bills and expenses associated with the operations and then bill the working interest owners through the JIB process. *See* Exhibit D, pg. JFHI00104.[4] If a working interest owner fails to pay its Cash Call Advance or JIB timely, the JOA grants SEC a lien over the working interest owner's portion of the revenue and grants SEC the right of foreclosure on the interest as a secured creditor under Alabama law. *Id.*, JFHI00104-105, Sec. 11.4. This is more than a passing or academic concern to Howell Interests because Howell Interests has discovered numerous instances where SEC included bills to third parties, such as KCS Automation, on its JIBs to Howell Interests which JIBs Howell Interests timely paid only to discover that SEC had in fact NOT paid the bill to begin with. The example, KCS Automation, then filed a lien against the wells and properties thus subjecting Howell Interests, and the other working interest owners, to the prospects of having to pay twice. Absent assurance and confidence that the operator, SEC, can and has complied with the JOAs and paid the bills referenced in the JIBs, the working interest owners risk throwing money at SEC and merely hoping for the best. That position is simply untenable.

---

[3] Howell Interests notes that the proposed engagement of the CRO as an officer of the Debtors expressly provides that the CRO shall not have any fiduciary duties. Proposed Engagement Agreement, para. 11. However, the position with SEC as the operator will necessarily require the utmost good faith and avoidance of conflicts of interest by the CRO.

[4] The Exhibit D hereto was originally an exhibit by Howell Interests in connection with its Limited Objection to the Debtors' Third Interim Use of Cash Collateral Motion. For the convenience of the Court it is attached hereto as Exhibit D but retains the Bates numbered pages and the yellow highlighting in accordance with the Court's instructions for exhibits to be used at the May 11 Zoom hearing.

16. This illustrative example is a common provision of the JOAs to which Howell Interests is a party. It illustrates the problem facing Howell Interests, and really any working interest owner that is not given the preferential treatment accorded to Sklarco, when presented with JIBs or Cash Call Advances by SEC given the pre-petition track record of working interest owner funds being used for unauthorized purposes.

17. The CRO Motion gives no assurances to the working interest owners that the CRO for SEC can and will discharge the duties of the operator under the JOAs, especially if the same CRO functions as the CRO of Sklarco.

### D. Proposed engagement terms.

18. In addition, the terms of the proposed engagement are problematic in the following ways:

1. Section 7 purports to impose Texas law and mandatory venue in Dallas, Texas as to "creditors" of the Debtors, of which the working interest owners including Howell Interests are creditors. Howell Interests objects to this provision to the extent the CRO attempts to impose this condition on Howell Interests.

2. The indemnification provision is overly broad and does not subject the CRO to liability for its own negligence. Howell Interests objects to any attempt to vary the liability of the parties as established by the various operating agreements which require, at a minimum, in a good and workmanlike manner. Exhibit D, pg. JFHI00100, Sec. 7.2. Indeed, Howell Interests believes that the CRO, if appointed, should act as a fiduciary to the creditors of the Debtors.

3. Although it is unclear from the CRO Motion, out of an abundance of caution, Howell Interests objects to the financial terms of the proposed engagement to the extent that SEC plans or attempts to charge the working interest owners, including Howell Interests, with any costs or expenses associated with the employment of the CRO either through the JIB process or the Cash Call Advance process or to otherwise use or subject Howell Interests revenue to the CRO's costs or expenses.

### E. Reservation of Rights.

19. Although Howell Interests is aware of the Court's comments concerning the appointment of a CRO, Howell Interests and the working interest owners continue to uncover information that is either inconsistent with the Statements and Schedules filed by the Debtors or was not adequately disclosed by the Debtors, making the evaluation and decision-making process on the CRO Motion, and others, difficult. For example:

1. The Court recalls the admissions by the Debtors that the Schedules were flat wrong when it was stated that distributions from Sklarco went to pay JIBs to SEC when in fact the money went to distributions and salary for Howard F. Sklar, and maybe others.

2. The Court may recall that in the hearing Mr. Sklar testified that SEC owned no assets and that Sklarco owned assets including assets as "agent and nominee" for others. That disclosure resulted in a request by the Tauber Group for production of the agency agreements to which Mr. Sklar had reference and the production of those documents. *See* Tauber Group Exhibits TAU-4 and TAU-5 to the Motion to Appoint Chapter 11 Trustee Pursuant to 11 U.S.C. 1104, or in the Alternative, Convert to Chapter 7 Pursuant to 11 U.S.C. 1112(b) [Doc. 308]. For convenience, copies of those exhibits are attached hereto as Exhibits E and F. Notably, and contrary to what has thus far been understood from the Debtors, neither of the agreements

were disclosed as material contracts by Sklarco even though the agency agreements provide for substantial payments to Sklarco by its principals for "Agency Services Fee" ($30,000 per month) (Agency Services Agreement, Exhibit E, Sec. 2.2, pgs. 8-9) and for "Aircraft Agency Services Fee" (Formula amount) (Agency Services Agreement, Exhibit E, Sec. 2.3, pg. 9). Further, Section 2.4 thereof references advances to the principals by Sklarco and that future sums would be advanced to the principals by Sklarco which amounts owed to Sklarco as of May 1, 2010 amounted to more than $18 Million. (Agency Services Agreement, Exhibit E, Sec. 2.4, pg. 9).

       3. Although no schedule of covered property was attached to the documents, nor has any list of property been disclosed, the August 31, 2015 First Amendment To Agency Services Agreement, Exhibit F, pg. 2, expressly states that SEC as operator and Sklarco as Agent authorize Sklarco "to acquire, hold, develop, maintain and manage . . . ." various properties and interests of the principals. Then, as if the issues involving the agent and nominee status of SEC and Sklarco were not confusing enough, on May 29, 2020 around noon, the Debtors filed amended Schedules G and H (Doc. 360 and 361 for Sklarco; Doc. 364 and 365 for SEC) adding the Agency Services Agreement as an unexpired contract and listing as co-debtors to both SEC and Sklarco under the Agency Services Agreement the Alan Sklar Trust, the Jacob Sklar Trust, Miriam Sklar, LLC, and the Succession of Miriam Mandel Sklar. Even more puzzling is the reciprocal reference on the amended Schedule H for Sklarco listing SEC as a co-debtor of Sklarco and the reference on the amended Schedule H for SEC listing Sklarco as a co-debtor with SEC. Clearly the nature and extent of these relationships and intertwinings with the Debtors, Howard F. Sklar as well as the Howard F. Sklar Trust must be examined and explored to determine the depth, width and breadth of conflicts inherent in a single CRO attempting to represent all of the different, but as yet undetermined, interests.

4. The Court will recall the numerous statements by the Debtors that SEC owns no assets and that its interest is as a contract operator only. However, it has been discovered that in the verified "Petition To Annul and/or Recscind [sic] Contractual Spousal Support Obligation" dated April 28, 2020 attached hereto as Exhibit G and filed in the record of the First Judicial District Court, Caddo Parish, Louisiana, verified on April 27, 2020, by Howard Fred Sklar ("Petition to Annul", it is pled in paragraph 14 that:

> "**SEC owns and operates 120 oil wells** across the Southeastern and Rocky Mountains regions of the United States of America **and over 1,000 non-operated wells** across the entire United States of America. . . . ." (Emphasis added.)

This pleading allegation was expressly verified by Mr. Sklar on April 27, 2020 as true and correct to the best of his knowledge. Petition, Affidavit of Verification, para. 3. But for the fact that the statements were verified under oath by Mr. Sklar nearly one month after he verified the Debtors' filings under oath, it might be dismissed as simple error or oversight. However, at this point in time, it provides just another example of inconsistencies in representations by the Debtors as to what ought to be considered essential and material facts.

20. For the foregoing reasons, and the fact that no discovery has yet occurred in the contested matters, Howell Interests reserves its right to supplement its objections if and when additional facts or information are learned that are material to the CRO Motion or other pleading in this Court in the above matters.

21. Howell Interests specifically reserves it rights to join in the Motion referenced in paragraph 19 (2) above.

**JOINDER**

22. Howell Interests joins in the objections of all other parties to the CRO Motion to the extent such objections are not inconsistent with the objections set forth herein.

## CONCLUSION

Howell Interests requests that in the CRO Motion before the Court be denied as presented.

Dated: May 29, 2020

                                    Respectfully submitted,

                                    BRADLEY MURCHISON KELLY & SHEA LLC

                                    By:   /s/ David R. Taggart
                                            David R. Taggart (Texas Bar # 00793102)
                                   401 Edwards Street, Suite 1000
                                   Shreveport, Louisiana 71101
                                   Telephone: (318) 227-1131
                                   Facsimile: (318) 227-1141

                                   Email: dtaggart@bradleyfirm.com

**- -  Attorneys for JF Howell Interests, LP**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing was electronically filed on May 29, 2020. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

          /s/ David R. Taggart
OF COUNSEL