**Exhibit
C**

AMENDED AND RESTATED

OPERATING AGREEMENT

OF

SKLARCO L.L.C.

AMENDED AND RESTATED
OPERATING AGREEMENT OF
SKLARCO L.L.C.

163308-1

# TABLE OF CONTENTS

1. Definitions.................................................................................................................. 1

2. Organization ........................................................................................................... 3

    2.1    Intent of the Agreement ............................................................... 3
    2.2    Formation .................................................................................... 3
    2.3    Purposes ...................................................................................... 3
    2.4    Accounting Period ...................................................................... 3
    2.5    Term ............................................................................................ 3
    2.6    Registered Office and Agent...................................................... 4
    2.7    Other Offices .............................................................................. 4
    2.8    No State Law Partnership .......................................................... 4

3. Membership:  Company Decisions and Management..................................... 4

    3.1    Members ..................................................................................... 4
    3.2    Execution of Acknowledgment.................................................. 4
    3.3    Meetings...................................................................................... 4
    3.4    Notice of Meetings..................................................................... 4
    3.5    Quorum ....................................................................................... 5
    3.6    Voting ......................................................................................... 5
    3.7    Proxies........................................................................................ 5
    3.8    Written Consent ......................................................................... 6
    3.9    Telephone conference Calls....................................................... 6
    3.10   Reimbursement of Costs and Expenses .................................... 6
    3.11   Limitation of Liability................................................................ 6
    3.12   Company Records ....................................................................... 6
    3.13   Lack of Authority of Members .................................................. 6

4. Managers................................................................................................................. 6

    4.1    Management by Managers.......................................................... 6
    4.2    Power and Authority of Manager .............................................. 7
    4.3    Certain Restrictions on Manager's Power and Authority ........ 9
    4.4    Original Manager and Successor Managers ........................... 10
    4.5    Term of Office; Removal; Filling of Vacancies ..................... 10
    4.6    Duties ....................................................................................... 10
    4.7    Officers .................................................................................... 10

i

5.     Capital Contributions and Accounts, and Accounting Allocations ................................... 12

       5.1     Capital Contributions....................................................................... 12
       5.2     Capital Accounts.............................................................................. 12
       5.3     No Right to Return........................................................................... 13
       5.4     No Interest....................................................................................... 13
       5.5     Sharing Ratios.................................................................................. 13
       5.6     Allocation of Profits, Gains and Losses......................................... 13
       5.7     Distributions.................................................................................... 13

6.     Transfer of Interests and Termination of Membership ..................................... 13

       6.1     Limitations on Transfers and Encumbrances................................. 13
       6.2     Permitted Transfers......................................................................... 13
       6.3     Substituted Members....................................................................... 14
       6.4     Additional Limitations on Transfers............................................... 14
       6.5     Assignees......................................................................................... 15
       6.6     Further Assignments....................................................................... 15
       6.7     Lock-Up Agreement......................................................................... 15
       6.8     Notice............................................................................................... 15
       6.9     Withdrawal of a Member................................................................. 15
       6.10    Termination of Membership............................................................ 15
       6.11    Option to Purchase Interest of Terminated Member...................... 15
       6.12    Death of a Member.......................................................................... 17

7.     Dissolution and Liquidation................................................................................. 17

       7.1     Dissolution....................................................................................... 17
       7.2     Liquidation....................................................................................... 17
       7.3     Final Accounting.............................................................................. 17
       7.4     Liquidating Distributions................................................................ 17

8.     Accounting and Financial Matters; Tax Matters ................................................ 18

       8.1     Books and Records........................................................................... 18
       8.2     Accounting Basis for Tax and Reporting Purposes; Accounting Decisions.......... 18
       8.3     Fiscal Year....................................................................................... 18
       8.4     Tax Matters...................................................................................... 18

9.     Miscellaneous Substantive Agreements .............................................................. 19

       9.1     Certificates of Membership.............................................................. 19
       9.2     Indemnification ............................................................................... 20

ii

9.3     Record Date .......................................................................................................... 21

10.     Miscellaneous Provisions....................................................................................... 21

10.1    Severability of Provisions..................................................................................... 21
10.2    Entire Agreement .................................................................................................. 21
10.3    Governing Law ...................................................................................................... 21
10.4    Dispute Resolution................................................................................................ 22
10.5    Successors and Assigns......................................................................................... 23
10.6    Construction........................................................................................................... 24
10.7    Notices ................................................................................................................... 24
10.8    Membership Interests............................................................................................ 25
10.9    Multiple Counterparts .......................................................................................... 26
10.10   Additional Documents and Acts .......................................................................... 26

<u>Attachments</u>

Exhibit A - Initial Capital Contributions
Exhibit B - Members' Sharing Ratio
Exhibit C - Acknowledgment
Exhibit D - Certificate of Membership

AMENDED AND RESTATED
OPERATING AGREEMENT OF
SKLARCO L.L.C.

163308-1

**AMENDED AND RESTATED**
**OPERATING AGREEMENT**

**OF**

**SKLARCO L.L.C.**

This **Amended and Restated Operating Agreement** (the "**Agreement**") is entered into effective December ⟨14⟩, 2007, (the "**Effective Date**"), by:

> **HOWARD F. SKLAR**, in his capacity as the Trustee of the **Howard Trust** (TIN: 72-6094620), with its permanent mailing address as 401 Edwards Street, Suite 1601, Shreveport, Louisiana 71101;

who is the sole Member of **SKLARCO L.L.C.**, and who agrees as set forth herein regarding the operations and management of **SKLARCO L.L.C.**, a limited liability company, organized and existing under the laws of the State of Louisiana.

1.  **Definitions.**   As used in this Agreement, the following terms have the following meanings:

     1.1     "Acknowledgment" has the meaning given to that term in Section 6.3.

     1.2     "Act" means the Louisiana Limited Liability Company Law, La. R.S. 12:1301-1369, and any successor statute as amended.

     1.3     "Affiliate" means with respect to any Member: (a) any Person directly or indirectly controlling, controlled by or under common control with such Member or (b) any Person owning or controlling fifty percent or more of the outstanding voting interests of such Member or, (c) any member, or manager of such Member.  For purposes of this definition, the term "controls", "is controlled by" or "is under common control with" shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person or entity, whether through the ownership of voting securities, by contract or otherwise.

     1.4     "Agreement" means this Amended and Restated Operating Agreement.

     1.5     "Code" or "IRC" means the Internal Revenue Code of 1986 and any successor statute as amended.

1

1.6    "Company" means **SKLARCO L.L.C.**, a limited liability company, organized under and existing pursuant to the laws of the State of Louisiana.

1.7    "Defaulted Contribution" has the meaning given to that term in Section 5.5.2

1.8    "Defaulting Member" has the meaning given to that term in Section 5.5.2.

1.9    "Encumber" has the meaning given to that term in Section 6.1.

1.10    "Interest" means the interest of a Member in the Company.

1.11    "Majority Vote" means the written approval of, or the affirmative vote by Members holding more than fifty percent (50%) of the Votes.

1.12    "Manager" means such persons appointed pursuant to the provisions of Article 4 hereinbelow, each of whom shall act as a mandatory of the Company in the ordinary course of its business, except as otherwise provided in said Article 4.

1.13    "Member" means any Person executing this Agreement as a Member or hereafter admitted to the Company as a Member as provided in this Agreement, but does not include any Person who has ceased to be a Member in the Company.

1.14    "Permitted Transferee" has the meaning given to that term in Section 6.2.

1.15    "Person" has the meaning given that term in the Act.

1.16    "Purchasing Member" has the meaning given to that term in Section 6.11.

1.17    "Sharing Ratio" with respect to any Member means the percentage set forth in Exhibit "B," attached hereto, in which the Member shares in the income, gains, credits, expenses, losses and deductions of the Company.

1.18    "Substituted Member" has the meaning given to that term in Section 6.3.

1.19    "Terminated Member" has the meaning given to that term in Section 6.10.

1.20    "Terminating Event" has the meaning given to that term in Section 6.10.

1.21    "Transfer" has the meaning given to that term in Section 6.1.

1.22    "Unanimous Vote" means the written approval of, or the affirmative vote by Members holding one hundred percent (100%) of the Votes.

2

1.23   "Votes" has the meaning given to that term in Section 3.6.

## 2.   Organization.

2.1   **Intent of the Agreement.**   This Agreement constitutes the operating agreement of the Company.

2.2   **Formation.**   The Company has been formed as a Louisiana limited liability company by the filing of Articles of Organization (the "Articles") pursuant to the Act and the issuance of a certificate by the Secretary of State of Louisiana.

2.3   **Purposes.**   The Company is formed for the purpose of acquiring, owning, developing, operating, leasing and selling, either for its own account or as agent and nominee of other Persons, oil, gas and mineral interests, and wells related thereto, located in the State of Louisiana and in such other jurisdictions as the Company may qualify to do business, either directly or through other entities, and making and holding such other investments and carrying on such other businesses as the Members may from time to time deem advisable.  The Company may invest in, lease, buy or sell any form of property, whether tangible or intangible, movable or immovable, corporeal or incorporeal, and wheresoever situated.  The Company may borrow money and issue evidence of indebtedness in furtherance of such purposes and may secure such indebtedness by mortgage, pledge or other security device.  The Company may also enter into and perform contracts and engage in any other lawful activity in connection with or incidental to the accomplishment of its purposes.  In addition, the Company may engage in and conduct any lawful activity for which limited liability companies may be formed under the laws of the State of Louisiana.

2.4   **Accounting Period.**   The annual accounting period of the Company shall be the calendar year.  To the extent authorized by the Code, the method of accounting of the Company shall be the cash receipt and disbursements method of accounting.

2.5   **Term.**   The existence of the Company shall commence on the date on which its existence as an entity begins under the Act, and shall continue in perpetuity unless sooner terminated.  The Company shall dissolve upon the first to occur of the following events:

(A)   Upon the Unanimous Vote of the Members; or

(B)   Upon the entry of a decree of judicial dissolution under Louisiana Revised Statue 12:1335.

2.6   **Registered Office and Agent.**   The Company shall maintain a registered office and a registered agent in the State of Louisiana, which office and agent may be changed by the Members.

3

2.7    **Other offices.**  In addition to its registered office in Louisiana, the Company may maintain other offices and places of business at such places, both within and outside the State of Louisiana, as the Members may from time to time determine.

2.8    **No State Law Partnership.**  The Members intend that the Company not be a partnership or joint venture and that no Member or Manager be a partner or joint venturer of any other Member or Manager, for any purpose other than federal and state tax purposes, and this Agreement shall not be construed to suggest otherwise.

**3.**    **Membership:  Company Decisions and Management.**

3.1    **Members.**    The initial Members of the Company shall be those Persons who have joined in the execution of this Agreement.  Any other person who is hereafter approved for membership by the unanimous written consent of the Members may also become a Member.

3.2    **Execution of Acknowledgment.**  The admission of an additional Member shall not become effective until that Person has executed an Acknowledgment as provided in Section 6.3, pursuant to which the new Member agrees to be personally bound by and subject to all of the terms and provisions hereof and the restrictions herein.

3.3    **Meetings.**  Subject to the notice requirement of Sections 3.4, meetings of the Members may be called at any time by the Manager or by those Members holding at least 25% of the Votes.  Meetings of the Members may be held at the office of the Company, or at such other place, either within or outside the State of Louisiana, at a time and date as designated in the notice.  Failure to hold an annual meeting shall not affect or vitiate the Company's existence.

3.4    **Notice of Meetings.**  Written notice of the time and place of a meeting of Members shall be given by the Manager to all Members entitled to vote at least five (5) days and not more than sixty (60) days prior to the date fixed for said meeting.  If there is no Manager or the Manager fails or refuses to give such notice, any Member can give such notice.  Notice of any Member's meeting may be waived in writing by any Member at any time.

3.5    **Quorum.**  Except as may be provided by the Act, the Articles or this Agreement, the presence in person or by proxy, of the holders of a majority of the Votes shall be necessary to constitute a quorum at any meeting of the Members.

3.6    **Voting.**

(A)    <u>Members Entitled To Vote</u>.  Members shall be entitled to vote on all Company matters in the manner set forth hereinbelow.

(B)    <u>Definition of Vote</u>.  At any meeting of the Members, every Member having the right to vote shall be entitled to vote in person or by proxy.  There shall be one

4

hundred (100) total votes (the "Votes").  The votes shall be apportioned among the Members in the same proportion as each Member's Sharing Ratio bears to the total Sharing Ratio owned by all of the Members having the right to vote.

(C)  <u>Majority Decisions</u>.  Except as otherwise provided in the Act, the Articles or this Agreement, a Majority Vote shall decide any matter brought before the Members.

(D)  <u>Unanimous Decisions</u>.  Notwithstanding anything to the contrary contained herein, a Unanimous Vote is required to do any one of the following:

    (1)  To amend the Articles;

    (2)  To amend this Agreement;

    (3)  To admit a new Member; or

    (4)  To dissolve the Company.

(E)  <u>Written Ballot</u>.  Upon the request of any Member, the Vote on any question shall be by written ballot.

3.7  **Proxies.**   At any meeting of the Members, every Member entitled to vote may vote in person or by a proxy appointed by an instrument in writing subscribed by such Member and bearing a date not more than eleven (11) months prior to the meeting, unless the instrument provides for a longer period.  A copy of such instrument shall be filed prior to or at the meeting.  A proxy need not be a Member.

3.8  **Written Consent.**  Any action may be taken without a meeting of the Members if a consent in writing, setting forth the action so taken, shall be signed by those Members having sufficient Votes to authorize the action.  Such consent shall have the same force and effect as a vote of the Members entitled to vote.  A photostatic, facsimile or similar reproduction of a writing, signed by a Member, shall be regarded as an original for all purposes.  A consenting member entitled to vote within seven (7) days of the date of such consent.  The failure to distribute such copies shall not vitiate or affect such consent in any manner.

3.9  **Telephone Conference Calls.**  Members may participate in meetings by means of a telephone conference call or similar communication equipment, provided that all persons participating in the meeting can hear and communicate with each other.  Participation in such a meeting shall constitute presence in such a meeting, except where a person participates in the meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened.

3.10   **Reimbursement of Costs and Expenses.**  The Manager acting for and on behalf of the Company shall be entitled to reimbursement for all expenses, costs and other liabilities reasonable incurred on behalf of the Company.

3.11   **Limitation of Liability.**  No Member or Manager shall be liable, responsible or accountable in damages or otherwise to the Company or any other Member for any loss or damage incurred by the Company or the Members by reason of any act or omission performed or omitted by the Member or Manager on behalf of the Company, provided that the Member or Manager acted (i) in good faith, and (ii) in a manner reasonably believed by the Member or Manager to be within the scope of the authority granted to him by this Agreement and in the best interests of the Company.  The foregoing limitation of liability shall not apply to such losses to, or damages incurred by, the Company or the Members that result from the Member's or Manager's gross negligence, intentional misconduct or breach of a fiduciary duty owed to the Company or the Members.  Furthermore, no Member, Manager, employee or agent of the Company shall ever be liable to a third party under a judgment, decree or order of any court, agency or other tribunal in Louisiana or any other state, or any other basis, for a debt, obligation or liability of the Company.

3.12   **Company Records.**  The Company shall keep a record of all meetings in a minute book.  The Manager may certify all or any part of the Agreement or minutes to be true and correct and third parties may rely on such certification.  If there is no Manager, any Member may so certify.

3.13   **Lack of Authority of Members.**  Except upon a Majority Vote, no Member shall have the authority or power to act for or on behalf of the Company, to do any act that would be binding on the Company, or to incur any expenditure on behalf of the Company, provided, however, a Member acting in his or her capacity as Manager shall have the authority granted in the Articles and this Agreement to act on behalf of the Company.

4.   **Managers.**

4.1   **Management by Managers.**  The business of the Company shall be managed by its manager(s).  Each Manager shall be the mandatory of the Company for all matters in the ordinary course of its business, including, without limitation, the leasing and sale of property owned by the Company.  In the event that more than one Manager has been elected at any point in time, each such Manager shall have the right to act separately and independently with respect to all powers granted herein without the joinder or concurrence of the other Manager(s) to the same full extent as if he were the sole agent and attorney in fact appointed herein.  Any Member or Manager may certify resolutions setting forth the authority of a Manager (other than the certifying Manager) or other Person to act on behalf of the Company.  Third parties shall be entitled to rely on such certification without further inquiry.

AMENDED AND RESTATED
OPERATING AGREEMENT OF
SKLARCO L.L.C.

4.2 **Power and Authority of Manager.** Except as otherwise provided in Section 4.3 hereof or elsewhere in this Agreement, the Manager shall have full, exclusive and unilateral power and authority on behalf of the Company to manage, control, administer and operate the properties, business and affairs of the Company in accordance with this Agreement and to do or cause to be done any and all acts deemed by the Manager to be necessary or appropriate thereto, and the scope of such power and authority shall encompass all matters in any way connected with such business or incident thereto, including without limitation the power and authority:

(A) To serve as President of the Company as provided in Section 4.7 of the Agreement;

(B) To invest in, lease, buy, sell or acquire an option to purchase any form of property, whether tangible or intangible, movable or immovable, corporeal or incorporeal, and wheresoever situated;

(C) To enter into any agreements of joint venture or partnership or for sharing of risks, expenses or profits, with any person, firm, corporation, government or agency thereof engaged in any business or transaction in which the Company is authorized to engage;

(D) To prospect by geological, geophysical or other methods for the location of anomalies or other indications favorable to the accumulation of oil and gas, including specifically the power to contract with third parties for such purposes;

(E) To maintain, develop, operate, manage and defend Company property; to drill, test, plug and abandon or complete and equip, rework and recomplete any number of wells on leases for the production of oil and gas located thereunder; to contract with third parties for such purposes; and to do any and all other things necessary or appropriate to carry out the terms and provisions of this Agreement which would or might be done by a normal and prudent operator in the development, operation and management of its own property;

(F) To enter into and execute operating agreements, drilling contracts, farmouts, dry and bottom hole and acreage contribution letters, participation agreements, gas processing agreements and any other agreements customarily employed in the oil and gas industry in connection with the acquisition, sale, development or operation of oil and gas properties, agreements as to rights-of-way and any and all other instruments or documents considered by the Manager to be necessary or appropriate to carry on and conduct the business of the Company, for such consideration and on such terms as the Manager may determine to be in the best interests of the Company;

(G) To sell the production accruing to Company leases and to execute gas sales

7

contracts, casinghead gas contracts, transfer orders, division orders or any other instruments in connection with the sale of production from the Company's interest in such leases;

(H)    To farmout, sell, assign, convey or otherwise dispose of, for such consideration and upon such terms and conditions as the Manager may determine to be in the best interests of the Company, assets of the Company, any interest therein or any interest payable therefrom, and in connection therewith to execute and deliver such deeds, assignments and conveyances containing such warranties as the Manager may determine to be appropriate;

(I)    To purchase, lease, rent or otherwise acquire or obtain the use of facilities, machinery, equipment, tools, materials and all other kinds and types of real or personal property that may in any way be deemed necessary, convenient or advisable in connection with carrying on the business of the Company;

(J)    To pay delay rentals, bonus payments, shut-in gas royalty payments, property taxes and any other amounts necessary or appropriate to the maintenance or operation of any Company property;

(K)    To procure and maintain in force such insurance as the Manager shall deem prudent to serve as protection against liability for loss and damage which may be occasioned by the activities to be engaged in by the Company or the Manager on behalf of the Company;

(L)    To sue and be sued, complain and defend in the name of and on behalf of the Company;

(M)    To quitclaim, surrender, release or abandon any Company property, with or without consideration therefor;

(N)    To execute and deliver all checks, drafts, endorsements and other orders for the payment of Company funds;

(O)    To appear and to represent the Company before any governmental authority or regulatory agency and to make all necessary or appropriate filings before such authority or agency;

(P)    To elect to go "non-consent" under any operating agreement applicable to any Company lease or well and to elect to pay the costs and expenses of any non-consenting party under an such operating agreement;

8

(Q)     To borrow money and issue evidence of indebtedness in furtherance of the purposes set forth in Section 2.3 and to secure such indebtedness by mortgage, pledge or other security device;

(R)     To employ and dismiss attorneys, geologists, geophysicists, engineers, brokers, consultants, accountants and other employees on behalf of the Company;

(S)     To establish reasonable reserve funds from income derived from the Company's operations to provide for future requirements of the Company's operations;

(T)     To open accounts and deposit and maintain funds in the name of the Company, or in the name of nominees or agents for the Company, in banks or savings and loan associations;

(U)     To make or revoke any of the elections required or allowed to be made by the Company under the Internal Revenue Code; and

(V)     To enter into and perform contracts and engage in any other lawful activity in connection with or incidental to the accomplishment of the purposes set forth in Section 2.3.

4.3     **Certain Restrictions on Manager's Powers and Authority.**  Notwithstanding any other provisions of this Agreement to the contrary, the Manager shall not have the authority to, and shall not, without a Majority Vote, do, perform or authorize any of the following:

(A)     Guarantee in the name or on behalf of the Company the performance of any contract or other obligation of any Person;

(B)     Alienate or encumber all, or substantially all, of the assets of the Company other than in its ordinary course of business;

(C)     Borrow funds or incur indebtedness for or on behalf of the Company totaling in excess of Fifty Million ($50,000,000.00), at any given time or

(D)     Engage on behalf of the Company in any business other than the purposes of the Company.

4.4     **Original Manager and Successor Managers.**  The original Manager of the Company shall be Howard F. Sklar.  If Howard F. Sklar should die, resign, retire or be removed as Manager, then David A. Barlow shall be the Manager.  If David A. Barlow should die, resign, retire or be removed as Manager, a successor Manager or Managers may be elected by a Majority Vote.  The Manager need not be a Member.

AMENDED AND RESTATED
OPERATING AGREEMENT OF
SKLARCO L.L.C.

163308-1

4.5     **Term of Office; Removal; Filling of Vacancies.**  Except as provided in Article 4.4 above, each Manager shall hold office until his earlier death, resignation, retirement disqualification or removal from office.  A Manager may be removed from his office at any time by the affirmative vote by Members holding two-thirds of the Votes.

4.6     **Duties.**  Unless the Members entitled to vote otherwise direct, by a Majority Vote, the Manager shall see that all orders and resolutions of the Members are carried into effect; and shall generally perform all acts incident to the office of the Manager, or which are authorized or required by law, or which are incumbent upon him under the provisions of the Articles and this Agreement.

4.7     **Officers**.  The officers of the Company shall be chosen by the Manager.  The officers of the Company shall be as follows:  a President, a Vice President - Chief Operating Officer, Vice President - Exploration Manager, a Secretary and a Controller.  No officer need be a Member, and any two (2) offices may be held by the same person, except the officer of President and Secretary, which shall not be combined in the same person.

4.7.1   The Manager may appoint such other officers and agents as he shall deem necessary, who shall hold their officer for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Manager.

4.7.2   The salaries of all officers of the Company shall be fixed by the Manager.

4.7.3   In addition to the authority granted to the Manager in Section 4.1, the Manager shall be the President and Chief Executive Officer of the Company and shall generally direct its business.  He shall preside at all meetings of the Members.  The President shall prescribe the duties of the officers whose duties are not otherwise defined and may remove or discharge all officers that are appointed by him.  He shall see that all orders and resolutions of the Members are carried into effect.  He may delegate any or all of his authority to any other officer.

4.7.4   The Vice President - Chief Operating Officer, shall manage, control, administer and operate the day-to-day activities of the Company in accordance with the directions and policies of the Manager - President.  In the absence or disability of the Manager - President, he shall perform the duties and exercise the powers of the President and shall perform such other duties as the Manager - President or the Members shall prescribe.

4.7.5   The Vice President – Exploration Manager shall manage, control, administer and operate the oil and gas exploration activities of the Company in accordance with the directions and policies of the Manager - President. He shall perform such other duties as the Manager - President or the Members shall prescribe.

4.7.6   The Secretary shall attend all meetings of the Members and record all

10

AMENDED AND RESTATED
OPERATING AGREEMENT OF
SKLARCO L.L.C.

votes and the minutes of all proceedings in a book to be kept for that purpose. He shall give, or cause to be given, notice of all meetings of the Members and shall perform such other duties as may be prescribed by the Members or Manager - President, under whose supervision he shall serve.

4.7.7   The Controller shall have the custody of the Company's funds and shall keep full and accurate accounts of receipts and disbursements in books belonging to the Company and shall deposit all monies and other valuable effects in the name and to the credit of the Company in such depositories as may be designated by the Manager.  He shall disburse the funds of the Company as may be ordered by the Manager - President, taking proper vouchers for such disbursements, and shall render to the Manager - President and whenever he may require it, an account of all his transactions as Controller and of the financial condition of the Company. The Controller shall perform such other duties and have such other powers as the Manager - President may from time to time prescribe.

4.7.8   The original Officers of the Company shall be as follows:

Howard F. Sklar:          Manager - President

David A. Barlow:          Vice President - Chief Operating Officer

Cory Ezelle:               Vice President – Exploration Manager

Chris Farrell:             Controller - Secretary

4.7.9   Each officer shall hold office until his successor is chosen and qualified or until its earlier termination, death, resignation, retirement, disqualification or removal of office. Any officer other than the Manager-President, may be removed at any time by the Manager.

## 5.     Capital Contributions and Accounts, and Accounting Allocations.

5.1     **Capital Contributions.**   Each Member has contributed to the Company, as capital, the property or funds set forth as his or her Capital Contribution on the attached Exhibit "A."  The proportionate ownership in the Company of each Member, expressed as a percentage and set forth in Exhibit "B," as it may from time to time hereafter be amended, is referred to as the "Sharing Ratio" of such Member.  Thereafter, and without creating any rights in favor of any third party, the Members may, on a voluntary basis, contribute to the Company such additional sums as are reasonably required to defray the cost of acquiring properties and of developing and operating the properties in which the Company has an interest.  Upon the admission of any substituted Member in accordance with the provisions of Article 6, the Manger shall prepare and attach hereto a revised Exhibit "B" reflecting such change.

11

5.2     **Capital Accounts.**   An individual capital account shall be maintained on the books of the Company for each Member which shall be begun, determined and maintained throughout the full term of the Company in accordance with generally accepted accounting principles consistently followed and the principles of the Treasury Regulations promulgated under §704(b) of the Code, including, but not limited to, the following general principles:

5.2.1   Each Member's Capital Account shall be increased by (i) the amount of money contributed by the Member to the Company, (ii) the fair market value of property contributed by the Member to the Company (net of liabilities secured by such contributed property that the Company is considered to assume or take subject to under §752 of the Code) and (iii) allocations to the Member of profits of the Company in accordance with the Member's Sharing Ratio and the §704(b) Regulations;

5.2.2   Each Member's Capital Account shall be decreased by (i) the amount of money distributed to the Member by the Company, (ii) the fair market value of property distributed to the Member by the Company (net of liabilities secured by such distributed property that such Member is considered to assume or take subject to under §752 of the Code), and (iii) allocations of Company loss as determined in accordance with the Member's Sharing Ratio and the §704(b) Regulations.

5.2.3   The capital accounts of the members shall be adjusted to reflect a revaluation of the property of the Company in accordance with Treas. Regs. §1.704-1(b)(2)(iv)(f) upon the contribution of money or other property to the Company by a new or existing Member as consideration for an interest in the Company and upon the liquidation of the Company or a distribution of money or other property by the Company to a withdrawing Member as consideration for an interest in the Company.

Notwithstanding any other provision of this Agreement to the contrary:

(A)    No Member shall ever be required to make contributions of cash or other property to the Company to eliminate a negative balance in his capital account; and

(B)    The Members agree to a "qualified income offset" as defined in Treasury Regulations Section 1.704-1 (b)(2)(ii)(d) to allocate items of income and gain in an amount and manner sufficient to eliminate as quickly as possible any unexpected capital account deficit balance.

5.3     **No Right to Return.**   No Member has the right to require the return of all or any part of his capital or a distribution of any property from the Company prior to its termination.

5.4     **No Interest.**   No interest shall be payable on any capital contribution made to the Company or on any capital account.

12

163308-1

5.5   **Sharing Ratios.**   Each Member shall own the Company in the proportions set forth in the attached Exhibit "B," which ownership percentages are referred to throughout this Agreement as their respective "Sharing Ratios".

5.6   **Allocation of Profits, Gains and Losses**.   Subject to Section 5.2, the Members will share in the income, gains, expenses, losses, deductions and credits of the Company in accordance with their respective Sharing Ratios.

5.7   **Distributions.**   Income or net profits which are in excess of the current or projected needs of the Company may be distributed to the Members from their respective capital accounts only as the Manager deems advisable and in the best interests of the Company.

6.   **Transfer of Interests and Termination of Membership.**

6.1   **Limitations on Transfers and Encumbrances**.   Except as expressly provided in this Article 6 no Member may, directly or indirectly, transfer sell, convey, assign, bequeath, gift, or otherwise dispose (collectively, "Transfer") or mortgage, pledge, encumber, charge, or otherwise encumber ("Encumber") any interest in the Company, voluntarily or by operation of law, without obtaining the prior approval of the Members by Majority Vote (a "Transfer Vote"); provided, however, that, notwithstanding the foregoing, each Member shall be permitted to Transfer its interest in the Company, in whole or in part, to a Permitted Transferee to the extent expressly permitted by Section 6.2.  Any purported Transfer or Encumbrance in violation of this Article 6 shall be null and void and of no effect on the Company, and any Member seeking to Transfer or Encumber any interest in violation of this Article 6 shall be liable to indemnify and hold harmless the Company and each other Member from and against any loss, liability, cost, expense or attorney fees incurred or suffered thereby.

6.2   **Permitted Transfers**.   Notwithstanding the provisions of Section 3.2 and Section 6.1, but subject to Sections 6.3 and 6.4, a Member may at any time, without the consent of any other Member, Transfer (but not Encumber) any or all of its interest in the Company to any one or more Permitted Transferees, subject, however, to the terms and conditions of this Agreement. As used herein, "Permitted Transferees" shall only include:

(a)   the Company;
(b)   any Member;
(c)   any Affiliate of any Member;
(d)   any entity, all of the beneficial owners of which consist of the originally transferring Member and Persons included in Subsection 6.2(c).

A Permitted Transferee may transfer its Interests only to (a) the originally transferring Member or (b) any other Permitted Transferee(s) of such Member.

6.3   **Substituted Members**.   If any Member Transfers or assigns any limited liability

13

company interest in the Company pursuant to this Article 6 each transferee shall be admitted to the Company as a Member of the Company ("Substituted Member") only upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement substantially in the form of Exhibit "C" attached hereto (the "Acknowledgement") acknowledging that all Member Interests so transferred are and shall remain subject to this Agreement and agreeing to be personally bound hereby. All reasonable expenses, including attorneys' fees and disbursements not paid by the transferor Member, that are incurred by the Company in this connection shall be borne by such Substituted Member. Such admission shall be deemed effective immediately prior to the transfer, and, in the case of an assignment of all of any transferring Member's limited liability company interest in the Company, immediately following such admission, the transferor Member shall cease to be a Member of the Company.

6.4    **Additional Limitations on Transfers**. Notwithstanding any other provisions of this Article 6, the Transfer by any Member of limited liability company interests may only be made if:

(i)    Such Transfer would not result in a violation of applicable law, including the Securities Act and any state securities or "Blue Sky" laws applicable to the Company or the interests to be transferred;

(ii)    Such Transfer would not cause the Company to lose its status as a partnership for federal income tax purposes or to become subject to regulation under any statute, rule or regulation to which it was not subject immediately prior to such Transfer, including the Employee Retirement and Income Security Act, the Investment Company Act of 1940 or the Investment Advisors Act;

(iii)    The transferee shall have provided its tax identification number, sufficient information to determine such Transferee's initial tax basis in the interests transferred and any other information reasonably necessary to permit the Company to file all required tax returns and statements; and

(iv)    Upon request by the Company, the transferring Member shall have provided an opinion of counsel satisfactory to the Company as to the matters set forth in this Article 6.

6.5    **Assignees**. Unless and until an assignee of limited liability company interests in the Company becomes a Substituted Member in accordance with Section 6.3, such assignee shall not be entitled to vote or exercise any other rights of a Member with respect to such interests except to receive distributions with respect thereto.

6.6    **Further Assignments**. A Person who (i) is the assignee of limited liability company interests in the Company of a Member as permitted hereby but who has not become a Substituted Member and (ii) desires to make a further pledge or Transfer of any of such interests shall be subject to all of the provisions of this Article 6 to the same extent and in the same

14

manner as any Member or Substituted Member desiring to make a pledge or Transfer of its interests in the Company.

6.7     **Notice**.  If any of the Members or the Members' Permitted Transferees intend to Transfer any Member Interests to any Permitted Transferee, such transferee shall notify the Company of any such intended Transfer hereunder 10 days prior to such Transfer, giving the name and address of the intended Permitted Transferee

6.8     **Withdrawal of a Member.**  Any Member may withdraw from the Company by withdrawing express written notice to the Manager.  Upon the delivery of notice of withdrawal, the Member shall be deemed to have surrendered to the Company all of its Interest in the Company and the Manger shall prepare and attach hereto a revised Exhibit "B" reflecting such withdrawal.

6.9     **Termination of Membership.**  A Member shall cease to be a Member of the Company (and is referred to herein as a "Terminated Member") upon the occurrence of any of the following events (referred to herein as a "Terminating Event"):

(A)     The Member's death, interdiction, insanity, dissolution, termination, or bankruptcy; or

(B)     The seizure of the Interest of a Member under a writ of execution, or any other event that alienates or encumbers the Interest, or any portion thereof, or places it within the control of any Person other than the Member, if not cured, remedied, released or reacquired by the Member within 90 days.

6.10    **Option To Purchase Interest of Terminated Member.**  Upon the occurrence of a Terminating Event, other than the death of a Member, the remaining Members shall have the option to purchase the interest of the Terminated Member upon the terms and under the conditions hereinafter set forth.  Wherever the context requires or permits, a reference to the Terminated Member shall include his legal representative, seizing creditor, trustee in bankruptcy or successor in interest.

(A)     Within 30 days after the Terminating Event, the Terminated Member shall give Notice of the Terminating Event to all Members.

(B)     Within 30 days after receipt of Notice of the Terminating Event, a Member (referred to herein as the "Purchasing Member") may, by Notice to the Terminated Member, elect to purchase all of the Interest of the Terminated Member for an amount equal to its Appraised Value, as hereinafter defined.  The sale and purchase of the Interest of the Terminated Member shall be closed within 60 days after the date on which the Purchasing Member gives such Notice of his election to purchase.  Should more than one of the other Members timely elect to

AMENDED AND RESTATED
OPERATING AGREEMENT OF
SKLARCO L.L.C.

163308-1

purchase the Interest of the Terminated Member, the Purchasing Members shall purchase the Interest on a pro rata basis or in such other proportions as they shall elect.

(C)     As used in this Agreement, the term "Appraised Value" of an Interest shall mean the value of the interest as agreed upon, in writing by Terminated Member and by all of the remaining Members.  If such value cannot be agreed upon, then the "Appraised Value" of such Interest shall be the fair market value determined by appraisal using the following procedures:

(1)     The Interest shall be valued, at the expense of the Company, by an appraiser selected by the Company.

(2)     If the Terminated Member objects to the value as thus determined, he shall be entitled to have an appraisal made, at his expense, by an appraiser selected by him.

(3)     If the two appraisers are unable to agree upon a valuation of the Interest, they shall select a third appraiser whose fee shall be divided between the Company and the party whose interest is being appraised, and whose decision shall be final.

Any appraisal shall take into account the discounts for lack of marketability and, where applicable, for minority interest, customarily allowed by the Internal Revenue Service in arriving at fair market value of closely held minority business interests.

(D)     Upon delivery to the Terminated Member of certified funds in an amount equal to the Appraised Value of the Interest of the Terminated Member, the Terminated Member shall deliver to the Purchasing Member or Members, appropriate, duly executed instruments of transfer and assignment transferring to the Purchasing Member or Members the Interest of the Terminated Member, free and clear of all liens, claims and encumbrances.

6.11    **Death of a Member.**  Upon the death of a Member, the membership terminates and the executor, administrator or personal representative of the deceased Member's succession and the heirs or legatees, who succeed to his interest, shall be treated as an assignee of such Member's interest in the Company, entitled only to receive such distribution or distributions to which the deceased member was entitled and shall not become a Member without a Unanimous Vote and compliance with the provisions of Section 3.2 of this Agreement.  Absent such consent and compliance, any such assignee shall not be entitled to vote or participate in any manner in the operation of the Company.  He will, however, be bound by and subject to this Agreement and

16

the terms and conditions of any other agreement pertaining to the restrictions on the transfer of an Interest in the Company.

## 7.    Dissolution and Liquidation.

7.1    **Dissolution.**   Subject to the remaining terms of this Agreement, the Company shall be dissolved upon the occurrence of any one of the circumstances hereinafter set forth:

(A)    Upon the Unanimous Vote of the Members entitled to vote;

(B)    Upon the entry of a decree of judicial dissolution under Louisiana Revised Statute 12:1335.

7.2    **Liquidation.**   Upon dissolution of the Company, if the Company is not continued, the Manager shall proceed diligently to finalize the affairs of the Company and distribute its assets in accordance with the provisions of Section 7.4.   During this period, the Manager shall continue to operate and otherwise deal with properties of the Company consistent with the liquidation thereof, but shall have no further power or authority to bind the Company except to sell or distribute its assets and wind up its affairs in compliance herewith.

7.3    **Final Accounting.**   Upon dissolution of the Company, the Manager shall cause the Company's accountant to make, at the Company's expense, a full and proper accounting of the assets, liabilities, operations and capital accounts of the Company as of and through the last day of the month in which the dissolution occurs.

7.4    **Liquidating Distributions.**   As expeditiously as possible after the dissolution of the Company, the Manager shall cause all debts and obligations of the Company to be paid and discharged; provided, however, for this purpose the capital accounts of the Members shall not be considered as the debts or obligations of the Company.   The remaining assets shall be distributed to the Members in proportions equivalent to their respective Sharing Ratios.

## 8.    Accounting and Financial Matters; Tax Matters.

8.1    **Books and Records.**   The books and records of the Company, and a list of the names and addresses and Interests of all Members, shall be maintained by the Company at the office of the Company for a period of six years following the close of the fiscal year to which they relate and shall be available for examination there by any Member or his duly authorized representatives at any and all reasonable times.   Any Member, or his duly authorized representatives, upon paying the costs of collection, duplication and mailing, shall be entitled, for any proper purpose, to a copy of the list of names and addresses and Interests of the Members. The Company may maintain such other books and records and may provide such financial or other statements as the Company in its discretion deems advisable.

163308-1

8.2     **Accounting Basis for Tax and Reporting Purposes; Accounting Decisions.**

      8.2.1   **Cash Basis**.   The books and records, and the financial statements and reports, of the Company for tax purposes and for the purpose of reports to the Members shall be kept on a cash basis.

      8.2.2   **Accounting Decisions**.

         (i)     Subject to Section 3.6, the Manager shall make all decisions as to accounting matters, and

         (ii)    Subject to Section 3.6, if the Company chooses to have its accounts reviewed or audited by an independent public accounting firm, such firm shall be selected by the Manager.

8.3     **Fiscal Year.**   The fiscal year of the Company shall begin on January 1 of each year.

8.4     **Tax Matters**.

      8.4.1   **Tax Treatment**.   The Company shall be treated as a partnership for federal income tax purposes; provided, however, that the Members intend that the Company not otherwise be a partnership (including a limited partnership) or joint venture, and that no Member be an agent, partner, or joint venturer of any other Member, for any purposes other than tax purposes, and this Agreement shall not be construed to suggest otherwise.   No election shall be made by the TMP (as defined below) or any Member for the Company to be excluded from the application of the provisions of Subchapter K of the Code.   Each of the Members shall upon request supply the information necessary to effect any such election.

      8.4.2   **Tax Matters Partner**.   The Manager is hereby designated as the "tax matters partner" (as defined in the Code) of the Company (the "TMP") for each taxable year of the Company.   The TMP is authorized and required to represent the Company (at the Company's expense) in connection with all examinations of the Company's affairs by tax authorities, including resulting administrative and judicial proceedings, to take all other actions authorized or required by the Code for the TMP and to expend Company funds for professional services and costs associated therewith.   Any expenses incurred by the TMP in carrying out its responsibilities under this Section 8.4.2 shall constitute Company expenses for which the TMP shall be reimbursed.

      8.4.3   **Tax Returns and Elections.**   The Company shall cause the preparation and timely filing of its tax returns, shall make such tax elections and determinations as appear to be appropriate, and shall timely file all other writings required by any

governmental authority having jurisdiction to require such filing. Upon the transfer of all of a Member's interest in the Company or upon the death of a Member, or upon the distribution of any property of the Company to a Member, the Company may (but shall not be required to) file an election in accordance with the applicable Treasury regulations to cause the basis of such property to be adjusted for federal income tax purposes as provided by Sections 734 and 743, respectively, of the Code, as amended.

**9.** **Miscellaneous Substantive Agreements.**

    9.1 **Certificates of Membership.**

    (A)   Certificates. Numbered Certificates of Membership may be issued to each Member certifying the Member's Sharing Ratio in the Company as of the date of issuance. Each Certificate shall bear the restrictive legend required by Section 10.8 and contain the following notice:

    "Notice is hereby given that the sale, transfer or other disposition of the Membership Interest represented by this Certificate is subject to the terms, conditions and restrictions contained in the Operating Agreement adopted by the Members of the Company, a copy of which is on file in the Company's office."

    Such Certificates shall be in substantially the same form as set forth in Exhibit "D."

    (B)   Lost Certificates. A new Certificate may be issued in place of any Certificate previously issued upon receipt of an affidavit or bond acceptable to the Company which indemnifies the Company against any claim which may be made against it on account of the replacement of the certificate.

    (C)   Transfer of Certificates. Certificates are transferable only in accordance with the Articles of Organization and this Operating Agreement.

    9.2 **Indemnification**.

    9.2.1   Any person made a party to any civil or criminal action suit or proceeding by reason of the fact that he is or was a Member, Manager, Officer or employee of the Company, or acted on behalf of the Company or is or was serving at the request of Company as a Manager, director, officer or employee of another limited liability company, corporation, partnership, joint venture, trust or other enterprise ("Indemnified Person") shall be indemnified by the Company against the reasonable expenses, including, without limitation, attorneys' fees and amounts paid in satisfaction of judgment or in settlement, actually and reasonably incurred by him or imposed upon him in connection with, or resulting from the defense of, such civil or criminal action, suit or

19

proceeding, or in connection with, or resulting from any appeal therein, if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the Company, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction or plea of nolo contendere or its equivalent, shall not of itself create a presumption that the person did not act in good faith or in a manner that he reasonably believed to be in or not opposed to the best interest of the Company or, with respect to any criminal action, suit or proceeding, that he had reasonable cause to believe that his conduct was unlawful.

9.2.2   The Company will not pay any indemnity amount before the legal action's final disposition, unless the Indemnified Person or a person acting on his behalf agrees in writing to repay the Company any indemnified amount if it is ultimately determined that he is not entitled to indemnification by the Company. This indemnity is not exclusive and does not limit any other rights to which those persons seeking indemnity or expense reimbursement may be or may become entitled as a matter of law, by the Articles of Organization, this Agreement, insurance, vote of Members or Managers or otherwise, both as to action in his official capacity and with respect to action in another capacity while holding such office. An action amending, terminating or repealing this indemnity Section will not affect or impair a Person's indemnity rights with respect to any action, suit or proceeding arising out of, or relating to, any actions, transactions or facts occurring before the final adoption of the amendment, termination or repeal.

9.2.3   Unless otherwise provided when authorized or ratified, indemnity and expense reimbursement under this Section continues after a person has ceased to be a Member, Manager, Officer or employee and inures to the benefit of that person's heirs, executors and administrators. Anything in this Section to the contrary notwithstanding, except as may be required by applicable law, the indemnification and advancement of expenses provided for in this Section 9.2 will not apply to an Indemnified Person when actions, suits or proceedings are brought by the Company or any of its affiliates against such Indemnified Person or such Agent or by such Indemnified Person or such Agent against the Company or any of its affiliates. An affiliate of the Company means any person or entity that controls, is controlled by, or is under common control with the Company.

9.2.4   The Company may purchase and maintain insurance on a past or present Member's, Manager's, Officer's or employee's behalf or on behalf of a person serving or who has served at the Company's request in such capacity in another entity or enterprise against any liability asserted against such person and incurred by the person in that capacity, or arising out of that person's status, whether the Company would have the power to indemnify that person against that liability under applicable law or under this Agreement.

AMENDED AND RESTATED
OPERATING AGREEMENT OF
SKLARCO L.L.C.

       9.2.5  If any part of this Section 9.2 is found in any action, suit or proceeding to be invalid or ineffective, the validity and effect of the remaining parts shall not be affected thereby.

    9.3  **Record Date.**  For the purpose of determining the identity of Members entitled to notice of and to vote at a meeting, or to receive a distribution, or for any other proper purpose, the close of business on the day before the notice of the meeting is mailed, or if notice is waived, the close of business on the date before the meeting, shall be the record date for such purpose.  If neither of these dates is appropriate, the record date shall be the close of business on the date on which the resolution relating thereto shall be adopted.

## 10.  **Miscellaneous Provisions**

    10.1  **Severability of Provisions.**  Each provision of this Agreement shall be considered severable and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement that are valid, enforceable and legal.

    10.2  **Entire Agreement**.  This Agreement (including any Exhibits attached hereto, which Exhibits are incorporated herein by reference and made a part of this Agreement) constitutes the entire agreement of the parties with respect to the subject matter hereof and supercedes all prior written or oral statements, discussions and agreements relating to the subject matter hereof.

    10.3  **Governing Law**.  This Agreement shall be governed by and construed under the laws of the State of Louisiana without regard to any otherwise applicable conflict of laws principles, all rights and remedies being governed by said laws.

    10.4  **Dispute Resolution.**

    10.4.1 **Negotiations** .  In the event of any dispute, controversy or claim by or among any Members and/or the Company arising out of or relating to this Agreement, including as to its interpretation or as the arbitrability of any issue arising hereunder, the disputing parties and/or their representatives shall meet at a place mutually agreed upon by such parties as soon as reasonably possible (but not later than ten (10) days after notice from any party hereto to the other parties hereto that the party giving notice has such a dispute) and shall enter into good faith negotiations aimed at resolving the dispute.  If they are unable to resolve the dispute in a mutually satisfactory manner within ten (10) days from the date of such meeting, the disputing parties shall proceed as follows.

    10.4.2 **ADR** .  First, the disputing parties shall endeavor to: (i) choose a mutually acceptable alternative dispute resolution ("ADR") mechanism, including without limitation

AMENDED AND RESTATED
OPERATING AGREEMENT OF
SKLARCO L.L.C.

163308-1

choosing one or more third party arbitrators; and (ii) set forth the general framework for the ADR process. If the disputing parties are unable to agree to a mutually acceptable ADR mechanism within ten (10) days from the date of the initial proposal from any party with respect thereto, the disputing parties shall take the actions set forth below.

10.4.3 **Arbitration** . All disputes among the parties arising out of or relating to this Agreement that are not resolved as set forth above shall be resolved solely by binding arbitration pursuant to the United States Arbitration Act, 9 U.S.C. Section 1 et seq. All disputes as to whether any dispute is subject to arbitration shall also be settled by binding arbitration. Either party may commence arbitration proceedings at any time after the tenth (10th) day after notice from one party to the other of the inability of the parties to agree upon a mutually acceptable ADR mechanism as set forth above.

10.4.4 **Arbitrator Selection**. Any arbitration shall be conducted in the Shreveport, Louisiana, metropolitan area (or such other area mutually agreeable to all parties) before a single arbitrator mutually selected by the parties thereto or, in the event the parties shall fail to agree, by a three-person panel acting pursuant to the Commercial Arbitration Rules and, if applicable at such time, the Streamlined Arbitration Rules and Procedures then in effect of the American Arbitration Association. The three-person arbitration panel shall consist of one arbitrator selected by each disputing party (or group of parties with common interests) and one arbitrator selected by the first two arbitrators. The presentation of evidence shall be governed by the Federal Rules of Evidence. Discovery shall be controlled by the arbitrator/panel.

10.4.5 **Arbitration Award**. Unless the parties to the arbitration agree otherwise, any arbitration award made shall:

(a) be reduced to writing and, if requested by any party, set forth the arbitrator's/panel's findings of fact and conclusions of law;

(b) afford any such remedy as is within the scope of the Agreement; provided, however, that multiple, special, exemplary, consequential or punitive damages shall not be awarded except in connection with a finding of fraud or willful misconduct or except for damages of such nature as may be owing by the prevailing party to third persons where the arbitration relates to a claim for indemnity by such party for such damages;

(c) be made on an expedited basis to the extent feasible;

(d) be final and binding upon the parties, without any right of further appeal absent fraud or intentional malfeasance by the arbitrator/panel, and may be entered for enforcement in any court of competent jurisdiction, or an application may be made to any such court for a judicial acceptance of such award and an order of enforcement, as the case may be. The award shall set forth any damages awarded in U.S. dollars and shall be promptly paid by the losing party to the prevailing party in U.S. dollars, free of deduction

AMENDED AND RESTATED
OPERATING AGREEMENT OF
SKLARCO L.L.C.

163308-1

or offset except as provided for in the award, with interest thereon at the rate of ten percent (10%) from the date of any breach or violation of this Agreement, as determined as part of the award, until paid in full. To the extent allowed by applicable law, any losing party resisting enforcement of any such award shall also be responsible for reimbursing the prevailing party for any fees and expenses incurred by such prevailing party incident to the enforcement thereof.

(e)     include as part of the arbitrator's/panel's determination the responsibility among the parties for payment of the arbitrator's/panel's fees and expenses, and the prevailing party on any issue in any arbitration shall be entitled to recover from the other party all fees and expenses (including without limitation reasonable attorneys' and other professionals' fees and disbursements) incurred or paid in respect of an issue on which such party prevailed if the arbitrator/panel, in its discretion, determines that such an award is warranted, but in no event in an amount in excess of that paid by the losing party for itself in respect of such issue.

10.4.6 **Violation** .  A party refusing to allow enforcement shall pay all legal and court costs (including attorneys' fees) incurred by the other party in connection with the enforcement of the final resolution of any dispute under this Section 10.4.  Suits, actions or proceedings in connection with such enforcement shall be instituted in the United States District Court for the Western District of Louisiana, and pursuant to Title IX of the United States Code.  Each party waives any option or objection which it may now or thereafter have to the laying of the venue in any such suit, action or processing and irrevocably submits to the jurisdiction of such court in any such suit, action or proceeding.

10.4.7 **Confidentia lity.**  Each party shall participate in any such arbitration in good faith and shall (and shall cause its representatives, employees and affiliates to, and shall request each participant in any ADR mechanism and each arbitrator to) hold the existence, content and result of any dispute in confidence except to the extent that disclosure of any such information is required by law.

10.4.8 **No  Default Award**.  The arbitration shall proceed in the absence of a disputing party who, after due notice, fails to answer or appear.  An award shall not be made solely upon the default of any such party, but the arbitrator/panel shall require each party that is present to submit such evidence as the arbitrator/panel may determine is reasonably necessary to make an award.

10.4.9 **Absence  of Arbitrator**.  If an arbitrator, whether sole or part of a panel, should die, withdraw or otherwise become incapable of serving, or should such arbitrator refuse to serve, a successor arbitrator shall be selected and appointed in the same manner as the original arbitrator and, subject to the rules applicable to the ADR process or arbitration applicable in such circumstances, the dispute resolution process shall continue.

AMENDED AND RESTATED
OPERATING AGREEMENT OF
SKLARCO L.L.C.

163308-1

10.4.10   **Defense to Actions**.  This Section 10.4 shall be a complete defense to any suit, action or proceeding instituted before any court or agency with respect to any matter resolvable hereunder; provided, however, that, notwithstanding this provision, any party may seek interim judicial relief in aid of ADR or arbitration, to prevent a violation of this Agreement pending ADR or arbitration or to enforce any ADR or arbitration award.

10.5   **Successors and Assigns**.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns, and no other Person shall have any rights, interest, or claims hereunder or be entitled to any benefits under or on account of this Agreement as a third party beneficiary or otherwise and none of the provisions of this Agreement shall be construed as existing for the benefit of any creditor of any Member or of the Company; provided, however, that nothing in this Section 10.5 shall be deemed to limit the rights of any "Indemnified Party" under Section 9.2, and provided, further, that nothing contained in this Section 10.5 shall limit the effectiveness of any restriction on Transfers or Encumbrances of limited liability company interests contained herein.

10.6   **Construction**.  The captions and headings of the sections of this Agreement are for convenience of reference only and are not to be considered in construing or interpreting any provision of this Agreement.  Unless the context of this Agreement clearly requires otherwise: (i) references to the plural include the singular, the singular the plural, and the part the whole, (ii) references to one gender include all genders, (iii) "or" has the inclusive meaning frequently identified with the phrase "and/or," (iv) "including" has the inclusive meaning frequently identified with the phrase "including but not limited to" or "including without limitation," (v) references to "hereunder," "herein" or "hereof" relate to this Agreement as a whole, and (vi) the terms "dollars" and "$" refer to United States dollars.  Any accounting term used herein without specific definition shall have the meaning ascribed thereto by U.S. generally accepted accounting practices.   Section, subsection, exhibit and schedule references are to this Agreement as originally executed unless otherwise specified.  Any reference herein to any statute, rule, regulation or agreement, including this Agreement, shall be deemed to include such statute, rule, regulation or agreement as it may be modified, varied, amended or supplemented from time to time.   Any reference herein to any Person shall be deemed to include the heirs, personal representatives, successors and permitted assigns of such Person.

10.7   **Notices**.  Any notice, demand, request or other communication which may be or is required to be given, served or sent by any party to another pursuant to this Agreement shall be in writing and shall be hand delivered (including delivery by courier so long as a receipt or confirmation of delivery is obtained), sent by a recognized overnight delivery service, mailed by first-class, registered or certified mail, return receipt requested, postage prepaid or transmitted by facsimile transmission (followed by delivery of the original of such document) addressed as follows:

If to a Member, at the last known address of such Member provided to the Company.

AMENDED AND RESTATED
OPERATING AGREEMENT OF
SKLARCO L.L.C.

163308-1

If to the Company:     SKLARCO L.L.C.
Attention:  Howard F. Sklar
401 Edwards Street, Suite 1601
Shreveport, Louisiana 71101

Any party hereto may designate by notice, in the manner herein above provided, a new address to which any notice, demand, request or communication may thereafter be so given, served or sent. Each notice, demand, request or communication which shall be mailed, delivered, or transmitted in the manner described above shall be deemed sufficiently given, served, sent and received for all purposes at such time as it is delivered to the addressee (with the return receipt, the delivery receipt, the affidavit of messenger, or, in the case of facsimile, electronic confirmation of reception with verbal confirmation, being deemed conclusive evidence of such delivery) or at such time as delivery is refused by the addressee upon presentation.  Any party may change its designated recipient for notices, address and/or facsimile number upon written notice to the other parties to this Agreement.

10.8    **Membership Interests**.  Each Member understands that the Membership Interests have not been registered under the Securities Act, and agrees that none of the Membership Interests may be transferred or encumbered except in compliance with the Securities Act (and the provisions of Sections 6.1 and 6.2).  A Member will not, directly or indirectly, transfer or encumber (or solicit any offers to purchase or otherwise acquire or take a pledge of) any Membership Interests unless (i) registered pursuant to the provisions of the Securities Act, or (ii) an exemption from registration is available under the Securities Act.  Each Member has been advised that Company has no obligation, and does not intend, to cause any Membership Interests to be registered under the Securities Act, or to take any action necessary for the Member to comply with any exemption under the Securities Act that would permit such Membership Interests to be sold by the Member.  Each Member understands that the legal consequences of the foregoing mean that Member must bear the economic risk of its investment in the Company for an indefinite period of time.  Each Member further understands that, if the Member desires Transfer all or any part of the Membership Interests, Company may require Member's counsel to provide a legal opinion that the Transfer may be made without registration under the Securities Act.  Each Member understands that all certificates evidencing units of Membership Interests, issued by the Company, will bear substantially the following restrictive legend:

**THE MEMBERSHIP INTERESTS EVIDENCED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED ("THE ACT") NOR QUALIFIED UNDER THE SECURITIES LAWS OF ANY STATES, AND HAVE BEEN ISSUED IN RELIANCE UPON EXEMPTIONS FROM SUCH REGISTRATION AND QUALIFICATION FOR NONPUBLIC OFFERINGS.   ACCORDINGLY, THE SALE, TRANSFER, PLEDGE, HYPOTHECATION, OR OTHER DISPOSITION OF ANY SUCH SECURITIES OR ANY INTEREST THEREIN MAY NOT BE ACCOMPLISHED EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT AND QUALIFICATION UNDER APPLICABLE**

**STATE SECURITIES LAWS, OR PURSUANT TO AN OPINION OF COUNSEL SATISFACTORY IN FORM AND SUBSTANCE TO THE COMPANY TO THE EFFECT THAT SUCH REGISTRATION AND QUALIFICATION ARE NOT REQUIRED.**

10.9   **Multiple Counterparts**.   This Agreement may be executed in several counterparts (including by facsimile), each of which shall be deemed an original but all of which shall constitute one and the same instrument.   However, in making proof hereof it shall be necessary to produce only one copy hereof signed by the party to be charged.

10.10   **Additional Documents and Acts**.   Each Member agrees to execute and deliver such additional documents and instruments and to perform such additional acts as may be necessary or appropriate to effectuate, carry out, and perform all of the terms, provisions, and conditions of this Agreement and the transactions contemplated hereby.

**THUS DONE AND PASSED**, in multiple originals, in the presence of the undersigned competent witnesses, effective as of the Effective Date.

WITNESSES:                                HOWARD TRUST

_____        By: _____
                                                        Howard F. Sklar, Trustee
_____

26

**STATE OF LOUISIANA,**

**PARISH OF CADDO.**

On this 14th day of December, 2007, before me personally appeared **HOWARD F. SKLAR**, in his capacity as the Trustee of the **HOWARD TRUST**, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that he executed the same as his free act and deed.

**IN WITNESS WHEREOF**, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC in and for
Caddo Parish, Louisiana

MALCOM S. MURCHISON, 9836
Notary Public in and for
The State of Louisiana
My Commission is for Life

27

**EXHIBIT "A"**

TO

**AMENDED AND RESTATED
OPERATING AGREEMENT**

OF

**SKLARCO L.L.C.**

Capital Contributions

| Member | Capital Contribution |
|---|---|
| HOWARD TRUST | $1,000.00 |
| TOTAL | $1,000.00 |

## EXHIBIT "B"

TO

## AMENDED AND RESTATED
## OPERATING AGREEMENT

OF

## SKLARCO L.L.C.

Members' Sharing Ratio

| Member | Ownership Percentage "Sharing Ratio" |
|---|---|
| HOWARD TRUST | 100% |
| TOTAL | 100% |

EXHIBIT "C"

TO
AMENDED AND RESTATED
OPERATING AGREEMENT
OF
SKLARCO L.L.C.
ACKNOWLEDGEMENT

This Acknowledgement (this "Acknowledgement") is made and entered into as of this ___ day of _____ by and between SKLARCO L.L.C., a Louisiana limited liability company (the "Company"), and the person whose signature appears below (the "Additional Member").

    1.     <u>Admission.</u> The Additional Member has or shall become a Member of the Company in accordance with the Amended and Restated Operating Agreement of the Company dated effective as of March 1, 2004 (the "Agreement") upon the transfer to the Additional Member of Member Interests issued originally by the Company to _____ (the "Original Member") pursuant to the Agreement. All initially capitalized terms not otherwise defined herein shall have the same meaning as in the Agreement.

    2.     <u>Agreement to Be Bound by the Agreement.</u> The Additional Member hereby acknowledges receipt of a copy of the Agreement. The Additional Member agrees to be bound by all of the terms and conditions of the Agreement as if an original Member thereunder.

    3.     <u>GOVERNING LAW.</u> **THIS ACKNOWLEDGEMENT SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF LOUISIANA WITHOUT REGARD TO ANY OTHERWISE APPLICABLE PRINCIPLES OF CONFLICTS OF LAWS.**

    4.     <u>Counterparts.</u> This Acknowledgement may be executed in multiple counterparts and by facsimile.

This Acknowledgement is executed as of the date first written above.

**SKLARCO L.L.C.**

By: _____
Name: _____
Title: _____

**[Additional Member's Name]**

By: _____
Name: _____
Title: _____
Telecopier No. _____

**EXHIBIT "D"**

To
**AMENDED AND RESTATED
OPERATING AGREEMENT OF**

**SKLARCO L.L.C.**

(Membership Certificate)

**Certificate of Membership
of
SKLARCO L.L.C.**

Certificate No. : _____     Date: _____          Sharing Ratio: ____%

This certifies that _____ (the "Member") is a Member of **SKLARCO L.L.C.** (the "Company"), a limited liability company formed under the laws of the State of Louisiana and is entitled to all rights and privileges granted to such members.  Upon the issuance of this Certificate, the Member's Sharing Ratio, as defined in the Operating Agreement adopted by the Members, is as set forth above.

This certificate evidences membership, which class constitutes the sole class of members of the Company with voting privileges, as set forth more fully in the Operating Agreement.

NOTICE IS HEREBY GIVEN THAT THE SALE, TRANSFER OR OTHER DISPOSITION OF THE MEMBERSHIP INTEREST REPRESENTED BY THIS CERTIFICATE IS SUBJECT TO THE TERMS, CONDITIONS AND RESTRICTIONS CONTAINED IN THE OPERATING AGREEMENT ADOPTED BY THE MEMBERS OF THE COMPANY, A COPY OF WHICH IS ON FILE IN THE COMPANY'S OFFICE.

**IN WITNESS WHEREOF**, the undersigned Manager of the Company have executed this Certificate effective _____, 2007.

**WITNESSES:**

_____          _____
                                          Manager

_____

### FIRST AMENDMENT TO THE
### AMENDED AND RESTATED OPERATING AGREEMENT OF
### SKLARCO L.L.C.

**THIS FIRST AMENDMENT** ("**Amendment**") to the "**Amended and Restated Operating Agreement**" dated December 14, 2007 (the "**Agreement**") of **SKLARCO L.L.C.**, (the "**Company**"), is made effective as of the Effective Date set forth in Section 3 below by:

> **HOWARD F. SKLAR**, husband of Jane Sklar, a resident of Caddo Parish, Louisiana, whose permanent mailing address is Louisiana Tower, Suite 1601, 401 Edwards Street, Shreveport, Louisiana 71101, appearing herein in his capacity as the Trustee of the **HOWARD TRUST** (TIN: 72-6094620) (the "**HOWARD TRUST**"), an irrevocable inter vivos trust created under the laws of the State of Louisiana;

who declared as follows:

### RECITALS

A.      The HOWARD TRUST, by virtue of that certain "Assignment and Act of Conveyance" dated January 1, 2007, from Howard F. Sklar, as Assignor, to the HOWARD TRUST, as Assignee, is the sole Member of the Company and holder of 100% of the "Ownership Percentage/Sharing Ratio" in the Company.

B.      The Howard Trust, as the sole Member of the Company, has determined (1) to amend Section 3.1 of the Agreement to provide for the succession of the Interest of a Terminated Member in the event the occurrence of a Terminating Event when there is only one Member of the Company, and (2) to amend Section 4.7 of the Agreement to revise, restate and confirm the duties and responsibilities of the Officers of the Company, and to identify the persons who hold such positions as of the Effective Date, all on the terms and conditions set forth in this Amendment.

C.      In consideration of the premises, the parties desire to amend the Agreement on the terms and conditions set forth in this Amendment.

### AGREEMENT

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned hereby agree as follows effective as of the Effective Date:

1.      Amendment to Section 3.1. Section 3.1 of the Agreement is hereby deleted in its entirety and replaced with the revised Section 3.1 attached hereto and made a part hereof as Exhibit "A."

1820668-1

1

2.     Amendment to Section 4.7.  Section 4.7 of the Agreement and all subsections and subparts of Section 4.7 of the Agreement are hereby deleted in their entirety and replaced with the revised Section 4.7 attached hereto and made a part hereof as Exhibit "B."

3.     This Amendment is made and entered into effective as of April 30, 2011 (the "**Effective Date**").

4.     Continuing Effect.  Except as specifically modified in this Amendment, all of the terms and conditions of the Agreement shall remain in full force and effect.

5.     Counterparts.  This Amendment may be executed in counterparts, all of which together shall constitute one agreement binding on all parties hereto, notwithstanding that all the parties have not signed the same counterpart.

**IN WITNESS WHEREOF**, the undersigned **Howard F. Sklar,** does hereby appear and execute this Agreement in duplicate originals in the above-identified representative capacity for and on behalf of the Howard Trust, effective as of the Effective date specified in Section 3 above, in the presence of the undersigned witnesses.

**WITNESSES**:

Printed Name: Devin Cartwright

Printed Name: Vickie M Deaton

Howard F. Sklar, Trustee of the Howard Trust

## ACKNOWLEDGMENT

**STATE OF LOUISIANA,**

**PARISH OF CADDO.**

On the /4th day of April 2011, before me, Notary Public, personally appeared Howard F. Sklar, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same.

WITNESS MY HAND and official seal.

_____
NOTARY PUBLIC IN AND FOR

_____
MY COMMISSION EXPIRES: _____

Bettye M. LaCour, Notary Public # 3620
Caddo Parish, Louisiana
My Commission is for Life

3

First Amendment to Amended and Restated
Operating Agreement of
Sklarco L.L.C.

## EXHIBIT "A"

## ATTACHED TO AND MADE A PART OF THAT CERTAIN
## FIRST AMENDMENT TO AMENDED AND RESTATED
## OPERATING AGREEMENT OF
## SKLARCO L.L.C.

3.1   **Members.**   The sole Member of the Company is **HOWARD F. SKLAR**, in his capacity as the Trustee of the **HOWARD TRUST,** a resident of Caddo Parish, Louisiana, whose permanent mailing address is Louisiana Tower, Suite 1601, 401 Edwards Street, Shreveport, Louisiana 71101; provided that, notwithstanding any other provision of this Agreement to the contrary, upon the occurrence of a Terminating Event as to the Person who at such time is the only Member of the Company (the "Sole Member"), the legal successor to the Interest of such Terminated Member (*e.g.,* the executor of the Sole Member's estate during its administration in the event of the death of the Sole Member or each heir or legatee of such estate (in the absence, or upon termination, of the administration), the successor(s) to a dissolved or terminated Sole Member, the curator/guardian of the Sole Member in the event of the interdiction/insanity of the Sole Member, the trustee in bankruptcy of the Sole Member in the event of the bankruptcy of the Sole Member) shall become a Member without any further action, but with an obligation to execute a supplement to this Agreement pursuant to which the new Member agrees to be bound by and subject to all of the terms and provisions hereof.  Any other person who is hereafter approved for membership by the unanimous written consent of the Members may also become a Member.

1820668-1

4

First Amendment to Amended and Restated
Operating Agreement of
Sklarco L.L.C.

## EXHIBIT "B"

## ATTACHED TO AND MADE A PART OF THAT CERTAIN
## FIRST AMENDMENT TO AMENDED AND RESTATED
## OPERATING AGREEMENT OF
## SKLARCO L.L.C.

4.7    **Officers**.  The persons serving as officers of the Company shall be chosen by the Manager.  The officers of the Company shall be as follows:  a Chairman/Chief Executive Officer, a President - Chief Operating Officer, Vice President - Exploration Manager, Vice President – Chief Financial Officer, and a Secretary.  No officer need be a Member, and any two (2) offices may be held by the same person, except the officer of President and Secretary, which shall not be combined in the same person.

4.7.1    The Manager may appoint such other officers and agents as he shall deem necessary, who shall hold their officer for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Manager.

4.7.2    The salaries of all officers of the Company shall be fixed by the Manager.

4.7.3    In addition to the authority granted to the Manager in Section 4.1, the Manager shall be the Chairman/Chief Executive Officer of the Company (the "Manager-Chairman") and shall generally direct its business.  He shall preside at all meetings of the Members. The Manager-Chairman shall prescribe the duties of the officers whose duties are not otherwise defined and may remove or discharge all officers that are appointed by him.  He shall see that all orders and resolutions of the Members are carried into effect.  He may delegate any or all of his authority to any other officer.

4.7.4    The President - Chief Operating Officer, shall manage, control, administer and operate the day-to-day activities of the Company in accordance with the directions and policies of the Manager - Chairman.  In the absence or disability of the Manager - Chairman, he shall perform the duties and exercise the powers of the Manager-Chairman and shall perform such other duties as the Manager - Chairman or the Members shall prescribe.

4.7.5    The Vice President – Exploration Manager shall manage, control, administer and operate the oil and gas exploration activities of the Company in accordance with the directions and policies of the Manager - Chairman.  He shall perform such other duties as the Manager - Chairman or the Members shall prescribe.

4.7.6    The Vice President – Chief Financial Officer shall have the custody of the Company's funds and shall keep full and accurate accounts of receipts and disbursements in books belonging to the Company and shall deposit all monies and other valuable effects in the name and to the credit of the Company in such depositories as may be designated by the Manager-Chairman.  He shall disburse the funds of the Company as may be ordered by the

1820668-1

5

Manager - Chairman, taking proper vouchers for such disbursements, and render to the Manager - Chairman as and whenever he may require it, an account of his transactions as Vice President- Chief Financial Officer and the financial condition of the Company. The Vice President – Chief Financial Officer shall also perform such other duties and have such other powers as the Manager - Chairman may from time to time prescribe.

4.7.7    The Secretary shall attend all meetings of the Members and record all votes and the minutes of all proceedings in a book to be kept for that purpose. She shall give, or cause to be given, notice of all meetings of the Members and shall perform such other duties as may be prescribed by the Members or Manager - Chairman, under whose supervision she shall serve.

4.7.8    The Officers of the Company shall be as follows:

| | |
|---|---|
| Howard F. Sklar: | Manager – Chairman/Chief Executive Officer |
| David A. Barlow: | President - Chief Operating Officer |
| Cory Ezelle: | Vice President – Exploration Manager |
| Chris Farrell: | Vice President – Chief Financial Officer |
| Doris Almond: | Secretary |

4.7.9    Each officer shall hold office until his successor is chosen and qualified or until its earlier termination, death, resignation, retirement, disqualification or removal of office. Any officer other than the Manager-Chairman, may be removed at any time by the Manager - Chairman.