IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT COLORADO

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **SKLAR EXPLORATION COMPANY, LLC** | ) | Case No. 20-12377-EEB |
| **and SKLARCO, LLC** | ) | |
| | ) | Chapter 11 |
| Debtors. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **SKLARCO, LLC** | ) | Case No. 20-12380-EEB |
| | ) | |
| | ) | Chapter 11 |
| | ) | |

**OBJECTION OF TAUBER EXPLORATION & PRODUCTION COMPANY; CTM 2005, LTD; PICKENS FINANCIAL GROUP, LLC; I & L MISS I, LP; MER ENERGY, LTD; MR OIL & GAS, LLC; TARA RUDMAN REVOCABLE TRUST; FEATHER RIVER 75, LLC; RUDMAN FAMILY TRUST; AND THE RUDMAN PARTNERSHIP TO DEBTORS' MOTION FOR ENTRY OF ORDER AUTHORIZING DEBTORS' EMPLOYMENT OF CR3 PARTNERS AS CHIEF RESTRUCTURING OFFICER EFFECTIVE AS OF MAY 21, 2020**
**[Docket No. 341]**

Tauber Exploration & Production Company, CTM 2005, Ltd., Pickens Financial Group, LLC, I & L Miss I, LP, MER Energy, Ltd, MR Oil & Gas, LLC, Tara Rudman Revocable Trust, Feather River 75, LLC, Rudman Family Trust, and The Rudman Partnership, (collectively the "Tauber Group Non-Operators"), hereby file their Objection to Debtors' Motion For Entry of Order Authorizing Debtors' Employment of CR3 Partners as Chief Restructuring Officer, Effective as of May 21, 2020 ("CRO Motion") [Docket No. 341] and respectfully represent as follows:

1

# I.
# Overview

1.  The Tauber Group of Non-Operators oppose the CRO Motion and stand on their Motion to Appoint a Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104, or in the Alternative, Convert the above-captioned bankruptcy cases to liquidation proceedings under Chapter 7 pursuant to 11 U.S.C. § 1112(b) ("Trustee Motion") [Docket No. 308].  Only a disinterested Trustee cloaked with all the rights and powers invested by the Bankruptcy Code can deal with the daunting issues presented by this case and these Debtors.

2.  The Court has stated on the record that the employment of a chief restructuring officer must be done in accordance with the governing organizational documents of the Debtors. There is no showing in the CRO Motion that an entity—CR3 Partners—can be an officer of either of the Debtors or that the organizational documents would permit such an outcome.

3.  The number of conflicts of interests that a CRO would face in these cases are multiple.   First, there are conflicts between the two bankruptcy estates.  Sklarco is indebted to SEC for unpaid JIB's and unpaid cash call advances. Sklarco claims that it pools its funds with SEC, but no accounting of how that arrangement plays out in dollars and cents has ever been provided.  Second, there are conflicts between the two Debtors and the sole alleged equity owner, The Howard Sklar Trust, which received $1,983,854 in cash from Sklarco during the year prior to the Petition Date. Third, there are conflicts between the duties of each Debtor to its creditors and the duties of each Debtor to various Sklar family trusts and the Estate of Miriam Mandel Sklar under what is called the "Agency Services Agreement," which appoints Sklarco as

"agent" and "nominee" to hold title to all of its assets for the trusts and the Estate of Miriam Mandel Sklar.[1]

4.     Apart from the conflicts outlined above, there are serious flaws in the CRO Motion and the proposed engagement agreement (attached as Exhibit B to the Application) that preclude approval (not the least of which is that the engagement letter does not even name Sklarco as a party). Fundamentally, the CRO Motion should be denied because it neither complies with 11 U.S.C. §327 nor incorporates or adopts the J. Alix Protocol.[2]

5.     However, even if the Court were inclined to grant the CRO Motion, substantial changes to the engagement would be reasonably necessary. First, the fees of the CRO and additional temporary employees should be subject to formal fee applications and subject to reasonableness review under section 330. Second, the Court should not approve the proposed indemnification, which indemnifies CR3 for actions taken during the course of its representation of the Debtors in contravention of *Bank of N.Y. Trust Co. v. Off'l Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229, 252 (5th Cir. 2009) ("*Pacific Lumber*"). Third, the proposed engagement agreement indicates that it has an evergreen retainer of $100,000, which

---

[1] It was not until today's deadline to object to the CRO Motion that Debtors very belatedly amended their Schedules (see Docket Nos 361, 362, 364, 365) to acknowledge the existence of the Agency Services Agreement. But they did not go far enough: they failed to amend the SOFA to reflect that Sklarco holds all of its property as agent and nominee for the "Principals," the trusts and estate named in the Agency Services Agreement and have failed to list as receivables the fees and "Intercompany Debt" owed by the Principals.

[2] Almost 20 years ago, the United States Trustee Program (USTP) entered into settlement agreements regarding the terms for the retention of firms providing Chief Restructuring Officers (CROs) and other staff to assist debtors-in-possession (DIPs) with their chapter 11 duties. These settlements, which have come to be known as the "J. Alix Protocol" (protocol) after the firm involved, apply the conflict of interest provisions of Section 327 of the Bankruptcy Code to the hiring of CROs who are charged with mixed professional and business management duties.

should not be approved by the Court. Third, the engagement letter designates courts in the Northern District of Texas as the forum for filing litigation; this Court should retain jurisdiction over any such litigation.

## II.
## Argument and Authorities

**A.     CR3 is a "professional" and must be retained, if at all, under Section 327 or, a alternatively, under the J. Alix Protocol.**

6.     Section 327(a) of the Bankruptcy Code provides that a trustee or a debtor-in possession may, with court approval "employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the Trustee's duties under this title." 11 U.S.C. § 327(a).

7.     "Other than the occupations enumerated in section 327, the statute is silent as to who is included in the catchall category 'other professional persons.'" *In re Palm Coast, Matanza Shores, Ltd. P'ship*, 101 F.3d 253, 257 (2d Cir. 1996); *see also* 11 U.S.C. § 102(3) ("'includes' and 'including' are not limiting").

8.     A determination of whether an entity is a "professional person" is made on a case by case basis. *In re Madison Mgmt. Group, Inc.*, 137 B.R. 275, 283 (Bankr. N.D. Ill. 1992). A professional person is one who plays an intimate or central role in the administration of the debtor's bankruptcy proceeding. *See In re Johns-Mansville Corp.*, 60 B.R. 612, 619 (Bankr. S.D.N.Y. 1986) (stating that a professional within the meaning of section 327 is one intimately involved in the administration of the reorganization process, for example, someone who played a part in negotiating a plan, who is involved with disposing of or acquiring assets, or who interacts with creditors); *In re Palm Coast, Matanza Shores, Ltd. P'ship*, 101 F.3d at 257 ("[F]or the

purpose of section 327(a), 'professional person' is limited to persons in those occupations which play a central role in the administration of a debtor proceeding.") (quoting *In re Seatrain Lines*, 13 B.R. 980, 981 (Bankr. S.D.N.Y. 1981)).

9. Courts examine the following six factors when determining whether an entity constitutes a "professional person":

a. Whether the entity controls, manages, administers, invests, purchases or sell assets that are significant to the debtor's reorganization;

b. Whether the entity is involved in negotiating the terms of a plan of reorganization;

c. Whether the employment is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations;

d. Whether the entity is given discretion or autonomy to exercise its professional judgment in some party of the administration of the debtor's estate;

e. The extent of the entity's involvement in the administration of the debtor's estate; and

f. Whether the entity's services involve some degree of special knowledge or skill, such that it can be considered a "professional" within the ordinary meaning of the terms.

*In re First Merchants Acceptance Corp.*, ("First Merchants"), 1997 WL 873551, at *2-4 (D. Del. Dec. 15, 1997) (finding that a business consultant who assists the debtor with its loan service operations was a professional because he will manage the debtor's receivables, a primary estate asset, his employment requires specialized skill or knowledge). Clearly, CR3 Partners is a "professional person" under Section 327.

10. By invoking sections 105(a) and 363, the Debtors are essentially attempting to impermissibly circumvent the application of section 327(a) by the use of the more general provisions of section 105(a) and 363.

11. The exercise of the bankruptcy court's inherent powers under section 105(a) "may

5

not contravene specific statutory provisions." *Law v. Siegel*, 571 U.S. 415, 421 (2014). Section 105(a) is not a "roving commission to do equity." *In re Southmark Corp.*, 49 F.3d 1111, 1116 (5th Cir. 1995). "[W]hatever equitable powers [bankruptcy courts have] must and can only be exercised within the confines of the Bankruptcy Code." *Nw. Bank Worthington, v. Ahlers*, 485 U.S. 197, 206 (1988).

12. Professionals employed under section 327(a) are officers of the court and fiduciaries. *Consolidated Bancshares*, 785 F.2d at 1256 n. 7. They can only serve one master. *Id.* Accordingly, the standards for employment "are strict," and the slightest personal interest may disqualify a candidate because bankruptcy professionals need a "high degree of impartiality and detached judgment." *Consolidated Bancshares*, 785 F.2d 1249, 1256 n. 6 (citing *In re Cropper Co.*, 25 B.R. 625, 629 (Bankr. M.D. Ga. 1983) and quoting *In re Philadelphia Athletic Club, Inc.*, 20 B.R. 328, 334 (E.D. Pa. 1982) (quoting 1 *Collier on Bankruptcy Manual* §101.13 (1981)).

13. Having failed even to attempt compliance with section 327, the CRO Motion should be denied. Especially given the conflicts that abound in this case between the Debtors, and between the Debtors and the Sklar family trusts and estate, and the central role Howard F. Sklar plays as a control person of each constituency, any professional person employed by either company must pass the higher standards of section 327 of the Bankruptcy Code, rather than the low bar set by section 363. *See In re McDermott, Int'l.* 2020 Bankr. LEXIS 1323 *32 (Bankr. S.D. Tex. May 20, 2020) (the goals of impartiality and reasonableness of compensation "are best achieved through the transparent process of § 327(a) that governs the employment of all professional persons employed by a debtor").

14. Alternatively, should the Court decide it can approve the retention under section 363, the retention of CR3 must by subject to The J. Alix Protocol, which was put in place to guard against the "inherent conflict between an advisor's duty to a debtor and its own business interests where the advisory firm serves as both a financial advisor retained under section 327 of the Bankruptcy Code and as a crisis manager and where the advisory firm's staff serve as officers of the debtor corporation." *See, e.g., In re Saint Vincents Catholic Medical Centers of New York*, 2007 WL 2492787, *3 n.3 (Aug. 29, 2007, Bankr. S.D.N.Y.). Accordingly, the CRO Motion should be denied to the extent it does not comply with the J. Alix Protocol, including the relevant conflict prohibitions of section 327(a).

**B.     CR3 and any other CRO, even if retained under section 327, will have irreconcilable conflicts as a corporate officer of Debtors.**

15. The Debtors are not companies that will change miraculously for the better simply because a skilled financial restructuring advisor has moved into the management suite. The reason for that is one man: Howard F. Sklar. His pervasive influence on the companies, and the transactions between the companies and the trusts he controls, have led the Debtors to the brink of disaster. What is needed is a Chapter 11 Trustee, a fiduciary that is not a mere corporate officer who will himself be subject to all of the conflicting obligations of the existing management, and subject to the whims of Mr. Sklar.[3]

16. The best illustration of the severe internal conflicts of interest that will make it impossible for a CRO to function effectively arise from the role of Sklarco and SEC, as "Agent"

---

[3] There is strong evidence that Howard F. Sklar has purged the management team of any dissenters and will likely do so in the future. David Barlow, who was COO for many years and a close confidant of Howard F. Sklar (having his power of attorney and having been named as alternate trustee and executor under the Will of Miriam Mandel Sklar, Howard's late mother), was summarily dismissed in 2018, not long after the Debtors entered into their Credit Agreement with East West Bank.

and "Nominee" for various family members, trusts and the Estate of Miriam Mandel Sklar, as "Principals", pursuant to that certain Agency Services Agreement dated May 1, 2010, as amended by the First Amendment to Agency Services Agreement dated August 31, 2015 ("ASA").[4] Sklarco is authorized in the ASA as Agent for the Principals to "acquire, hold, develop, maintain and manage various properties on behalf of each such Principal, including, but not limited to, the development, maintenance and management of various oil and gas properties. . . . ."

17. Literally, until the May 29, 2020 objection deadline for the CRO Motion, the only mention made of the ASA by Debtors in any filing or disclosure was in the Declaration of Howard Sklar attached to the initial Cash Collateral Motion, which at paragraph 18 stated:

> The Bank's lien on cash is limited by the revenue that is received by the Debtors from other third parties on account of their independent ownership of non-debtor assets, all consistent with 11 U.S.C. §541(b)(4) <u>and an Agency Services Agreement dated July 2, 2010.</u>

(underscoring added). After review of a copy of the ASA provided by Debtors' counsel, it became apparent that Sklarco may hold nothing but bare legal title to its assets for the benefit of the Principals named in the ASA.[5] Indeed, the ASA is unambiguous that it covers "all" oil and gas properties:

---

[4] The "Principals" named in the Agency Agreement are Howard Sklar (a) as Manager of Miriam Sklar, L.C.; (b) as Trustee of the Howard Trust; (c) as Trustee of the Alan Trust; (c) as Trustee of the Sam Trust; (d) as Independent Executor of the Succession of Miriam Mandel Sklar; and (e) as Trustee of the Jacob Grantor Trust.

[5] "[T]he legislative history of § 541 'indicates that Congress intended to exclude from the estate property of others in which the debtor had some minor interest such as a lien or bare legal title…[W]e do not now decide the outer boundaries of the bankruptcy estate. We note only that Congress plainly excluded property of others held by the debtor in trust at the time of the filing of the petition.'" *Torkelsen v. Maggio (In re Guild & Gallery Plus),* 72 F.3d 1171, 1179 (3rd Cir. 1996), quoting *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 (1983).

8

> WHEREAS, each of the Principals desires to continue to retain Sklarco to develop, maintain and manage such property on behalf of each Principal, including, but not limited to, <u>the development, maintenance and management of all oil and gas properties</u> and the acquisition and maintenance of records, accounting, personnel, equipment and legal affairs, with full authority to transact all matters relating thereto on the terms and conditions stated in this Agreement. . . .

(underscoring supplied).

18. Not only does the ASA provide for ownership of property on behalf of the Principals, it also requires the Principals to pay various fees to Debtors based upon their oil and gas operations. The Schedules, SOFA's and various budgets that have been filed by Debtors are devoid of any mention of such fees.[6]

19. A fulsome analysis of the ASA is beyond the scope of this Objection, but suffice it to say that any CRO will be an officer of the Debtors, and as a corporate officer, will likewise have duties as Agent and Nominee to the Principals named in the ASA. Especially since each of the Principals is a either a trust or estate controlled by Howard F. Sklar, the CRO and all corporate officers of the Debtors have an irreconcilable conflict of interest between their duties to the Principals and their duties to the respective bankruptcy estates.

20. It follows that appointment of a CRO will be ineffective and counterproductive. Nothing less than the appointment of a Chapter 11 trustee under 11 U.S.C. § 1104(a)(2) will suffice. Accordingly, the Tauber Group Non-Operators respectfully request that the Court enter an order denying Debtors' CRO Motion.

---

[6] The undersigned counsel for The Tauber Group of Non-Operators raised the issue of the serious deficiencies in the Schedules and SOFA's for the Debtors with Debtors' counsel on May 22, 2019 and requested confirmation whether the Debtors' intended to rectify the failures to disclose in full the ASA. The amendments to Schedule G and H filed on May 29, 2020 are cryptic at best and wholly insufficient.

WHEREFORE, The Tauber Group of Non-Operators respectfully pray that the Debtors' Motion For Entry of Order Authorizing Debtors' Employment of CR3 Partners as Chief Restructuring Officer, Effective as of May 21, 2020 [Docket No. 341], be denied.

Dated this 29th day of May, 2020.

        Respectfully submitted,

        **Maynes, Bradford, Shipps & Sheftel, LLP**

        */s/ Thomas H. Shipps*
        */s/ Shay L. Denning*
        Thomas H. Shipps
        Shay L. Denning
        Maynes, Bradford, Shipps & Sheftel, LLP
        835 E. Second Ave., Suite 123
        Durango, CO  81301
        Telephone: (970) 247-1755
        Facsimile: (970) 247-8827
        Email: tshipps@mbssllp.com;
              sdenning@mbssllp.com

        and

        */s/ Barnet B. Skelton, Jr.*
        Barnet B. Skelton, Jr.
        815 Walker, Suite 1502
        Houston, TX  77002
        Telephone: (713) 659-8761
        Cell: (713) 516-7450
        Facsimile: (713)659-8764
        Email: barnetbjr@msn.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on May 29, 2020, the foregoing instrument was electronically filed and served via CM/ECF pursuant to L.B.R. 9036-1.  All attorneys and parties identified with the Court for electronic service on the record in this case were served by electronic service in accordance with the CM/ECF system on the date of filing

        /s/ *Barnet B. Skelton, Jr.*
        Barnet B. Skelton, Jr.