IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT COLORADO

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **SKLAR EXPLORATION COMPANY, LLC** | ) | Case No. 20-12377-EEB |
| **and SKLARCO, LLC** | ) | |
| | ) | Chapter 11 |
| Debtors. | ) | |
| | ) | |
| **SKLARCO, LLC** | ) | Case No. 20-12380-EEB |
| | ) | |
| | ) | Chapter 11 |
| | ) | |

**LIMITED OBJECTION OF TAUBER EXPLORATION & PRODUCTION COMPANY; CTM 2005, LTD; PICKENS FINANCIAL GROUP, LLC; I & L MISS I, LP; MER ENERGY, LTD; MR OIL & GAS, LLC; TARA RUDMAN REVOCABLE TRUST; FEATHER RIVER 75, LLC; RUDMAN FAMILY TRUST; AND THE RUDMAN PARTNERSHIP TO DEBTORS' MOTION FOR APPROVAL OF LENDING AGREEMENT AND FOR AUTHORITY TO INCUR DEBT ON AN ADMINISTRATIVE, UNSECURED BASIS**
**[Docket No. 346]**

Tauber Exploration & Production Company, CTM 2005, Ltd., Pickens Financial Group, LLC, I & L Miss I, LP, MER Energy, Ltd, MR Oil & Gas, LLC, Tara Rudman Revocable Trust, Feather River 75, LLC, Rudman Family Trust, and The Rudman Partnership, (collectively the "Tauber Group Non-Operators"), hereby file their Limited Objection to Debtors' Motion For Approval of Lending Agreement and for Authority to Incur Debt on an Administrative, Unsecured Basis ("Motion") [Docket No. 346] and respectfully represent as follows:

1

# I.
# Overview

1. Folk wisdom advises not to "look a gift horse in the mouth." And viewed in that fashion, perhaps the creditors should be pleased that the so-called "Sklar Parties" are willing to make a forgivable, subordinated, unsecured loan of $1,233,000, and not make a fuss about it.

2. On the other hand, accepting the money without asking any questions could also leave the creditors like the citizens of Troy, who learned too late to "beware of Greeks bearing gifts."

3. What we do know is that the Sklar Parties received over $2,000,000 from Debtors during the year prior to the filing of this case. But there are many other unanswered questions about the relationship between the Sklar Parties and the Debtors that should be answered as a condition of approving the proposed loan: (a) how much do they owe the Debtors? (b) what ongoing obligations do they have to the Debtors? (c) what ownership interest do they have in the Debtors' assets as "Principals" under the Agency Services Agreement? and (d) what amount of money did they receive from Debtors during the four years prior to the Petition Date (which would cover the two-year look back period under Section 548 and the four-year statute of repose under most State Uniform Fraudulent Transfer Acts)?

4. As to the terms of the loan itself, The Tauber Group of Non-Operators have only a limited objection to the Motion, and it is based on the request of the lenders for the following relief:

> If any judgment is entered against the Sklar Parties for any action arising under Section 544, 547, 548, 559, or 550, the amount of such judgment shall be offset first against the balance of the Loan;

Motion ¶ 21e. at 5. The problem with this request is that it would potentially give the Sklar Parties greater relief than they would be entitled to receive under Section 502(h).

## II.
## Argument and Authorities

5. According to SEC's Amended SOFA filed May 18, 2020 [Docket No. 324], the Sklar Parties received the following amounts from Debtors during the year prior to the Petition Date:

| | |
|---|---|
| Howard Sklar Trust | $1,883,385.40 |
| Alan Sklar Trust | $ 162,833.52 |
| Jacob Sklar Trust | $ 194,402.65 |
| Total Transfers | $2,240,621.50 |

6. Debtors claim that the source of the loan will be "the proceeds of the sale of common stock held in commercial brokerage accounts by the Sklar Parties in the amount of approximately $1 million. . . [and] $223,000 consist[ing] of the Howard Trust's interest in funds from Trout Creek Ventures that are currently held in Sklarco's bank account." Motion ¶ 17 at 4.

7. As Debtors admit, the Sklar Parties received at least $2,240,621.50 in transfers during the year prior to filing bankruptcy and, because the transfers appear not to have been for any reasonably equivalent value, there would appear to be at least a prima facie case for avoidance and recovery of the transfers under Sections 544, 548 and 550 of the Bankruptcy Code. It is not unreasonable to assume that similar patterns of transfers occurred during the three years prior to that.

8. If such an avoidance action were filed by the Debtors or a trustee, and the Sklar Parties paid some or all of the avoided transfers back to the Debtors estates, it is possible they might assert a claim against the Debtors under Section 502(h) of the Bankruptcy Code for the amount repaid.

9. The Tauber Group of Non-Operators object to the Debtors' request that the Sklar Parties be allowed to offset the loan amounts against any judgment entered in a future avoidance suit because they would not qualify for a claim under Section 502(h) of the Bankruptcy Code.

10. The circumstances under which Section 502(h) may result in entitlement to a claim is explained in *Collier* as follows:

> To the extent a defendant in an avoidance action becomes a claimant by reason of the return of property to the estate, the claim, if allowable, has the status of a claim existing at the date of the filing of the petition. Thus, a creditor that returns a preferential payment under section 547 will generally receive a dollar-for-dollar claim for the amount repaid to the estate, placing the creditor in the same position as if the transfer had not occurred. The import of section 502(h), therefore, is that regardless of the circumstances by which the trustee or the debtor recovers property under section 522, 550 or 553, the claim arising from the recovery will be allowed under subsection 502(a), (b) or (c)—unless disallowed on some other basis, such as subsection 502(d) or (e)—but with the status as a prepetition claim existing at the time of the filing of the debtor's petition.
>
> Where the estate recovers a transfer that was made for value, the amount of the claim allowable under section 502(h) is not the value of the property recovered but rather the consideration paid by the transferee to the debtor for that property. This rule is grounded in the notion that, **to the extent the transferee did not give any consideration for a fraudulent transfer, it would not have had a valid claim had the transfer not occurred and there is no valid claim for section 502(h) to reinstate.**

(emphasis added). 4 Alan Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 502.09[2] at 502–72.

11. If the loan in question was instead a payment to settle fraudulent transfer claims, it would not be enough for the Sklar Parties simply to show that they paid the $1,233,000. "If the transferee did not give any consideration for the fraudulent transfer, there is nothing to reinstate, and the return of the fraudulently transferred funds does not give rise to an allowable claim." *Gowan v. HSBC Mortgage Corp. (In re Dreier LLP)*, Case No. 08-15051, 2012 WL 4867376 *3 (Bankr. S.D.N.Y. Oct. 12, 2012) ("The amount of the claim allowable under this section [502(h)] is not the value of the property recovered but rather the value of the

consideration paid by the transferee for the property recovered. Otherwise, a thief forced to return stolen property to the trustee would have a claim against the estate for the value of what he stole."). *See also Francois Freres USA, Inc. v. Weiss (In re Walldesign, Inc.),* 2018 Bankr. LEXIS 2283 (B.A.P. 9th Cir., Aug. 2, 2018).

12. Accordingly, the Court should deny the Sklar Parties any right to offset the loan amount against any future avoidance judgment against them.

13. The Tauber Group of Non-Operators also request that as a condition of approving the loan, the Court require each of the Sklar Parties to provide an accounting of the use and disposition of the $2,240,621.50 transferred to them during the year prior to the Petition Date. and file with the Court a written disclosure of the following information:

(a) an itemized accounting of all amounts they owe the Debtors;[1]

(b) an itemized accounting of all ongoing obligations they have to the Debtors (such as the various fees owed by them to Sklarco under the Agency Services Agreement) ;[2]

(c) a detailed description of all ownership interests they have in the Debtors' assets as "Principals" under the Agency Services Agreement; and

(d) an itemized accounting of all transfers of money or property they received from Debtors during the four years prior to the Petition Date.

---

[1] According to the Agency Services Agreement, as of 2010, the Sklar Parties owed Sklarco the following amounts: Howard Sklar Trust - $10,249,544.04; Alan Trust - $326,693.11; Sam Trust - $488,259.39. Debtors have not disclosed anything about the status of these debts. Agency Services Agreement ¶ 2.4 (attached as Exhibit TAU-4 to Tauber Group Non-Operators' Motion to Appoint Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104, or, In the Alternative, Convert to Chapter 7 Pursuant to 11 U.S.C. § 1112(b) [Docket No. 308-4]).

[2] The Agency Services Agreement also requires the "Principals," which include the Sklar Parties, to pay "the sum of (a) general and administrative costs incurred by SEC during a calendar month minus (b) operating income and any other revenues for such month . . . [excluding the revenues or expenses associated with the Aircraft Agency Services Fee and the Interest Agency Services Fee, as defined therein]." Agency Services Agreement ¶2.2.3. The fee is shared by the "NOR" of each Principal, which is defined as "the monthly net operating revenue of a Principal, or of the Principals, received from the sale of oil and gas produced from the wells in which each owns an interest, for each month. . . ." *Id.*

14. The affairs of the Sklar Parties cannot continue to be shrouded in secrecy. The truth about their involvement with the Debtors must be fully revealed before the proposed loan may be approved.

WHEREFORE, The Tauber Group of Non-Operators respectfully pray that the Debtors' Motion For Approval of Lending Agreement and for Authority to Incur Debt on an Administrative, Unsecured Basis ("Motion") [Docket No.346], be denied to the extent objected to herein.

Dated this 1st day of June, 2020.

Respectfully submitted,

**Maynes, Bradford, Shipps & Sheftel, LLP**

*/s/ Thomas H. Shipps*
*/s/ Shay L. Denning*
Thomas H. Shipps
Shay L. Denning
Maynes, Bradford, Shipps & Sheftel, LLP
835 E. Second Ave., Suite 123
Durango, CO 81301
Telephone: (970) 247-1755
Facsimile: (970) 247-8827
Email: tshipps@mbssllp.com;
      sdenning@mbssllp.com

and

*/s/ Barnet B. Skelton, Jr.*
Barnet B. Skelton, Jr.
815 Walker, Suite 1502
Houston, TX 77002
Telephone: (713) 659-8761
Cell: (713) 516-7450
Facsimile: (713)659-8764
Email: barnetbjr@msn.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on June 1, 2020, the foregoing instrument was electronically filed and served via CM/ECF pursuant to L.B.R. 9036-1. All attorneys and parties identified with the Court for electronic service on the record in this case were served by electronic service in accordance with the CM/ECF system on the date of filing

/s/ *Barnet B. Skelton, Jr.*
Barnet B. Skelton, Jr.