UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| SKLAR EXPLORATION COMPANY, LLC | ) | Case No. 20-12377-EEB |
| EIN:72-1417930 | ) | |
|   Debtor | ) | Chapter 11 |
| | ) | |
| SKLARCO, LLC | ) | Case No. 20-12380-EEB |
| EIN: 72-1425432 | ) | |
|   Debtor | ) | Chapter 11 |

**OBJECTION TO DEBTORS' MOTION FOR APPROVAL OF FINAL CASH
COLLATERAL ORDER [DOC. NO. 350]**

Barbara Page Lawrence and the estate of Pamela Page, deceased, through their undersigned counsel, hereby file their Objection to the Debtors' Motion For Approval Of Final Cash Collateral Order ("MOTION") [Doc. No. 350] as follows:

### I.    FACTUAL BACKGROUND

1. As admitted by the Debtors in the attached e-mail chain dated March 24, 2020 through April 22, 2020, **Lawrence Exhibit "A"** at pages 2-3 , there is no written lease, working interest, or other agreement between the Lawrence or Page parties and the Debtors. Instead their land and the underlying mineral interests in Louisiana were "force pooled" pursuant to Louisiana Revised Statute 30:10, and they are now considered unleased mineral owners in the Echo Papa Well # 10-10 of the Debtors. This is a producing well.

2. Both Barbara Page Lawrence and her now deceased sister, Pamela Page, are each one-half owners of certain real property located in Bienville Parish, Louisiana, previously owned by their deceased father.

3. As required under Louisiana law, upon the death of their father, both Ms.

1

Lawrence and Ms. Page obtained a "Judgement of Possession" from the probate court in Louisiana formally vesting title to the real property in them, **Lawrence Exhibit "A"** at page 2 and **Lawrence Exhibit "B".**

4. As admitted by the Debtors in **Lawrence Exhibit "A"** at pages 2-3, the Debtors recognize the ownership interests of Ms. Lawrence and Ms. Page, stating in part what the official recorded documentation reflects, as follows:

> Succession of Mack Stanley Page, Suit No. 6-516,. Probate Docket, 2nd Judicial District Court, Bienville Parish, Louisiana, Judgment of Possession, dated November 13, 1998 (Report. Item 24), recognizing Pamela Page and Barbara Page Lawrence as the children and sole heirs of the decedent, and placing them in sole possession of Tract 9 of the property examined} in equal l/2 interests. **Recorded** on **November 16, 1998, in Book 830, page 133, Reg. No. 98-3708** Clerk of Court in Bienville Parish, Louisiana.

5. As admitted by the Debtors in the attached e-mail chain dated May 1, 2020 to May 18, 2020, **Lawrence Exhibit "C"**, and in their own suspense funds report, **Lawrence Exhibit "D"**, at the time of the filing of this Chapter 11 case, the Debtors were holding in suspense for the estate of Pamela Page the sum of $63,310.21. The Debtor also owes payments for March, April, and May production to the Pamela Page estate.

6. The Debtors have also admitted that the funds held in suspense are in fact segregated from other Debtors' funds and solely for the estate of Pamela Page, **Lawrence Exhibit "E "** at page 1.

7. Upon representations made by counsel for East West Bank, it does not claim any liens or interest in funds not actually property of the Debtors, such as those held in suspense for the estate of Pamela Page, **Lawrence Exhibit "F"** at page 1.

8. Upon representations made by counsel for the Debtors, the adequate protection -replacement liens granted to the Bank do not attach to property belonging to third parties,

2

such as funds held for the estate of Pamela Page or those owed to Ms. Lawrence.

9. As admitted by the Debtors in their own pleadings filed herein [Doc. No 37], as of the Petition Date, the Debtors were holding the sum of $1,049.71 for Ms. Barbara Lawrence, albeit not 'in suspense'. Payments are also owed to Ms. Lawrence for March, April, and May 2020 of approximately $1,000.00 per month.

10. Upon the death of her sister, Ms. Lawrence has now obtained the appropriate "Order of Succession" and "Letters of Administration" under Louisiana law appointing Ms. Lawrence as the administrator of her deceased sister's estate, **Lawrence Exhibits "G" and "H"**.

11. Ms. Lawrence has now properly filed and recorded the required "Affidavit of Heirship" as required by Louisiana law recognizing her sole rights to the rights of her deceased sister in the subject property, and in the funds held by the Debtors in suspense for the estate of Pamela Page. **Lawrence Exhibit "I"**.

## II.    SUMMARY OF OBJECTION

12. As land owners whose property was forced pooled by the Debtors, the Page and Lawrence claimants are considered to have a protectable and separate real property interest in the oil and gas located under their property, and in the production therefrom.

13. The share of the production owned by the Page and Lawrence claimants is their separate property and is not, and never has been, the property of the Debtors.

14. As to the estate of Pamela Page, the Debtors have admitted they hold her separate property of at least $63,310.21 in a segregated suspense account and can not be heard to deny those representations.

15. The proposed final cash collateral order does not provide for the physical

3

segregation into a separate bank account the funds held in suspense for the estate of Pamela Page, or those owed to Ms. Lawrence. At a minimum, all funds held for the estate of Pamela Page should be immediately released to Ms. Lawrence as the estate administrator and sole heir, and in the interim, placed in a separate bank account funded solely for that purpose. The Debtors have refused to agree to this request.

16. As Ms. Lawrence and the Estate of Pamela Page are forced pooled UMOs, the Debtors are not permitted pursuant to La. R.S. 30:10(A)(3) to deduct any fees and expenses it occurs once the well is drilled and producing ("post-production costs") from the amounts owed to them. Accord, In *Allen Johnson, et al. v. Chesapeake Louisiana*, LP. 2019 WL 1301985 (W.D. La. Mar. 31, 2019). The Debtors must cease taking their unauthorized deductions. Any post-petition expenses and costs collected or to be collected by the Debtors form the UMOs holders are contrary to applicable Louisiana law and not property of the estate of the Debtors for cash collateral purposes.

17. While there is no immediate evidence of conversion of funds belonging to the estate of Pamela Page or Ms. Lawrence by East-West Bank, the releases given to East-West Bank in the proposed cash collateral order should be specifically limited, in writing, to carve out any claims that third parties may have against the Bank, if any.

18. Both Ms. Lawrence and the estate of Pamela Page may have claims for damages and for the recovery of moratory interest on their funds being held by the Debtors and for the improper deduction of post-production expenses from their revenue checks. The final cash collateral order should clearly state that all such claims against the Debtors are preserved for the benefit of potential claimants.

### III. LEGAL AUTHORITY AND ANALYSIS

#### A. STATUTORY FRAMEWORK

19. Under Louisiana law, the relationship between an unleased mineral owner ("UMI") or ("UMO") interest, like Ms. Lawrence and the estate of Pamela Page and the operator, is governed in part by Title 30, Section 10 of the Louisiana Mineral Code. See La. Stat. Ann. § 30:10 et. seq. Under that statute, an operator must give notice to a UMO Owner of its intent to drill a well, and a UMO Owner may elect to participate in (i.e., pay its pro-rata share of costs) the drilling of a well, but it is not required to participate. Id. If a UMO Owner does not participate, it is still responsible for its pro-rata share of the well drilling costs, but such costs may be recouped solely out of the UMO Owner's pro-rata share of unit production. Id. At the point in time when the UMO Owner's share of costs are fully recouped out of the UMI Owner's share of production, the UMI Owner is entitled to receive eight-eighths (8/8ths) of its pro rata share of unit production. Id. This point in time is sometimes referred to in the industry as "payout." If, however, a UMO Owner elects to participate from the outset in the cost, risk and expense of drilling, completing, and equipping the unit well, paying its share of the well costs in advance, then the UMO Owner is entitled to receive eight-eighths (8/8ths) of its pro-rata share of unit production from the date of first production. Id.

20. Since neither Ms. Lawrence nor the estate of Pamela Page elected to participate in the Echo Papa Well # 10-10, they are entitled to receive their net owed proportionate share of production. UMOs hold a special place under Louisiana law in that the operator of an oil and gas field is not allowed pursuant to La. R.S. 30:10(A)(3) to offset its costs and expenses from production proceeds and thus can not use those funds for its own purposes. See, Section

C below.

21. Under Bankruptcy Code sections 363(b) and (c), a trustee may use, sell or lease "property of the estate," including cash collateral, subject to various conditions. 11 U.S.C. §§ 363(b) and (c). With certain exceptions, section 541 of the Bankruptcy Code provides that all property in which a debtor has a legal or equitable interest becomes property of the estate upon commencement of a chapter 11 case. 11 U.S.C. § 541(a)(1). Section 541 does not, however, create new interests in property; rather, "property interests are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 54-55 (1979). Therefore, if the debtor does not have a legal or equitable interest in property as of Petition Date, such property does not become property of the estate and is not available for distribution to the debtor's creditors. *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 135-36 (1962) (holding that the Bankruptcy Code does "not authorize a [debtor] to distribute other people's property among a bankrupt's creditors").

### B. NATURE OF UNLEASED MINERAL OWNER INTEREST

22. Under Louisiana law, as in many other states, UMOs or unleased mineral interests, working interests, royalty interests, and overriding royalty interests are real property interests. See, e.g., La. R.S. 31:16 and 31:18, and La. Civ. Code art. 470 (oil and gas leases in Louisiana are classified as "mineral rights," which are defined as "real rights" and "incorporeal immovables"); La. R.S. 31:16, 31:18, and 31:80 and La. Civ. Code art. 470 (mineral royalties in Louisiana are classified as "mineral rights," which are defined as "real rights" and "incorporeal immovables"); *Terry v. Terry*, 565 So. 2d 997 (La. App.-1st Cir. 1990) (overriding royalties are classified as real rights and incorporeal immovables in

6

Louisiana). [1]

### C. UMO'S RIGHTS TO SEGREGATE THEIR FUNDS FROM CASH COLLATERAL USAGE AND RECOVER AMOUNTS TAKEN AND HELD FOR POST-PRODUCTION COSTS BY THE DEBTORS.

23. It is the Debtors' practice to offset and deduct from the revenue proceeds owed to Ms. Lawrence and the Estate of Pamela Page post-production fees, expenses, and an administration charge. This practice continues post-petition. See **Lawrence Exhibit "J "** which is the most recent billing from the Debtors to Ms. Lawrence.

24. As Ms. Lawrence and the Estate of Pamela Page are forced pooled UMOs, the Debtors are not permitted pursuant to La. R.S. 30:10(A)(3) to deduct any fees and expense it occurs once the well is drilled and producing ("post-production costs") from the amounts owed to them. Accord, In *Allen Johnson, et al. v. Chesapeake Louisiana*, LP. 2019 WL 1301985 (W.D. La. Mar. 31, 2019).

25. Moreover, the Debtors' cannot use the amounts it has collected and holds or may hold in the future to fund its future business operations, these funds belong to the UMO holders, Ms. Lawrence and the estate of Pamela Page. The Debtors should account for such fees and expense improperly deducted and, to the extent any such funds remain post-petition in its

---

[1] *See also Rich v. Doneghey*, 177 P. 86, 89 (Okla. 1918) (holding oil and gas lease grants "an 'incorporeal hereditament;' or more specifically, . . . a profit à prendre"); *Maralex Res., Inc. v. Chamberlain*, 320 P.3d 399, 403 (Colo. App. 2014) (finding that an oil and gas lease is an interest in real property); *Flying Diamond Oil Corp. v. Newton Sheep Co.*, 776 P.2d 618, 629 (Utah 1989) ("An oil and gas royalty is an interest in land."); *Gerhard v. Stephens*, 442 P.2d 692, 704 (Cal. 1968) (noting that under California law a perpetual privilege of drilling for oil and gas is classified as a profit à prendre, an incorporeal hereditament); *In re Antweil*, 97 B.R. 65, 66 (Bankr. D.N.M. 1989) ("Under New Mexico law an oil and gas lease creates an interest in real property."); *Nantt v. Puckett Energy Co.*, 382 N.W.2d 655, 659 (N.D. 1986) ("Oil and gas leases are interests in real property in North Dakota."); *Rucker v. DeLay*, 289 P.3d 1166, 1169 (Kan. 2012) ("In Kansas, mineral interests are real property."); *Team Bank v. Meridian Oil Inc.*, 118 N.M. 147, 149 (1994) ("[A]n overriding interest is an interest in real property[.]"); *ANR W. Coal Dev. Co. v. Basin Elec. Power Co-op.*, 276 F.3d 957, 965 (8th Cir. 2002) (recognizing that "[o]verriding royalty holders have an interest that is a form of real property under North Dakota law").

custody or control to physically segregate said funds from cash collateral funds it intends to use.

26. In March of 2019 the U.S. District Court for the Western District of Louisiana in *Allen* held that a unit operator may not recover post-production costs from an unleased mineral owner's share of production proceeds. The dispute in *Allen* involved a group of unleased mineral owners ("UMOs") who filed suit against a unit operator for deducting a litany of post-production costs against their share of production proceeds from an oil and gas unit in question. The Court described the question before it as an issue of first impression and focused on the language of La. R.S. 30:10(A)(3) to find that a unit operator may not deduct post-production costs from a UMO's share of production proceeds. Id at 3-5.

27. In its analysis, the Court first looked to the statutory language of La. R.S. 30:10(A)(3) and recognized that the statute required an UMO to receive its "pro rata share of the proceeds of the sale of production." Id at 4. The Court reasoned that this provision did not authorize post-production cost deductions against UMOs and stated that the Legislature could have phrased La. R.S. 30:10(A)(3) differently had it intended to authorize such deductions. Id at 3-4. While the unit operator argued that La. R.S. 30:10(A)(3) was merely a provision directing the time period within which operators must pay UMOs, the Court disagreed and found that the section not only addressed when the UMO is to be paid but what it is to paid.. Id. at 4.

28. In support of its conclusion, the Court stated:

> The unleased owner involuntarily loses all of his rights to explore — or not explore — his own property. He must still pay all development and operations costs if he is to see economic benefit from the compulsory pooling to which he is subject. A strict construction of [La. R.S.30:10] *simply means that, for all of this, he is given the equivalent of a "no cost" royalty clause on production proceeds. This is hardly unjust*. Id at 4-5 (Emphasis Added)

29. While the Debtors in the present case have likely already spent any pre-petition

8

post-production fees and expenses taken from the production payments owed to Ms. Lawrence and the Estate of Pamela Page, any post-petition expenses and costs collected or to be collected are contrary to applicable Louisiana law and not property of the estate of the Debtors for cash collateral purposes. Those improperly taken fees and costs including projected future fees and costs should not be part of the usage of cash collateral or part of any funding of the final cash collateral budget.

### D. FUNDS HELD FOR UMOs NOT PROPERTY OF ESTATE AND ARE HELD IN TRUST FOR THEM

30. UMO interests, and the production proceeds owed on account thereof, are property of the third-party interest owners, and are therefore outside the scope of property of the estate. *See* 11 U.S.C. § 541(a)(6) (providing that proceeds, product, offspring, rents, or profits "of or from property of the estate" constitute property of the estate under section 541 of the Bankruptcy Code) (emphasis added).

31. Furthermore, section 541(d) of the Bankruptcy Code provides:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, <u>but not to the extent of any equitable interest in such property</u> that the debtor does not hold.

11 U.S.C. § 541(d).

32. Accordingly, pursuant to section 541(d) of the Bankruptcy Code, when a debtor holds only bare legal title in property, such property is not property of the estate. *See, e.g.*, G*olden v. The Guardian (In re Lenox Healthcare, Inc*.), 343 B.R. 96, 100 (Bankr. D. Del. 2006); *In re Columbia Pac. Mortg., Inc*., 20 B.R. 259, 262–64 (Bankr. W.D. Wash. 1981) (a debtor that holds proceeds attributable to real property owned by another holds only bare legal title to such

property), *Turley v. Mahan & Rowsey, Inc. (In re Mahan & Rowsey, Inc*.), 817 F.2d 682, 684 (10th Cir. 1987); *Begier v. Internal Revenue Services,* 496 U.S. 53, 59 (1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'"). Indeed, "[w]here Debtor merely holds bare legal title to property as agent or bailee for another, Debtor's bare legal title is of no value to the estate, and Debtor should convey the property to its rightful owner." *In re MCZ, Inc.*, 82 B.R. 40, 42 (Bankr. S.D. Tex. 1987).

33. Applying these principles, courts have consistently held that payments owed to landowners, mineral interest holders, working interest owners and royalty owners are not property of the estate, but are merely held in trust, and therefore must be turned over. *In re Reichmann Petroleum Corp*., 434 B.R. 790, 797 (Bankr. S.D. Tex. 2010) (revenue earned by working interest owners is the property of the working interest owners, not the operator, even if the revenues were held by the operator); *In re SemCrude, L.P.*, 418 B.R. 98, 106 (Bankr. D. Del. 2009) (holding that funds in debtors' possession held on behalf of royalty interest holders were held in a resulting trust for such parties, debtors only held bare legal title to such property, and thus such funds were not property of the estate); *Reserve Oil, Inc. v. Dixon,* 711 F.2d 951, 953 (10th Cir. 1983) (holding that debtors have "no right to or interest in either the oil and gas or the proceeds from its sale beyond the [non-operating working interest owner's] unpaid proportionate share of the costs.").

34. For these reasons, courts across the country routinely grant first day motions to pay working interest owners, royalty owners, and other interest owners. *See, e.g., In re Memorial Production Partners LP*, No. 17-30262 (MI) (Bankr. S.D. Tex. Jan. 23, 2017) [Dkt. No. 120] and *In re Stone Energy Corporation*, No. 16-36390 (MI) (Bankr. S.D. Tex. Jan. 10, 2017) [Dkt. No.

258]. This Court has already authorized the Debtors to pay pre-petition amounts owed to ORI and NRI holders, but not to mineral owners such as the estate of Pamela Page and Ms. Lawrence.

35. To further recognize the ownership rights of mineral owners, some Districts, like the Southern District of Texas, have even instituted a procedure to require segregation of royalty accounts, working interest accounts, suspense accounts, and other accounts containing funds attributable to third parties in order to protect such interest holders. See Procedures for Complex Chapter 11 Cases for the United States Bankruptcy Court for the Southern District of Texas § 7(B) **("Post petition treatment of royalty, suspense accounts, and other accounts containing funds attributable to third parties").** All funds received after the petition date that are attributable to an overriding royalty, working interest owner and third party funds shall be maintained by the debtor in a segregated account so designated.").

36. In this case Ms. Lawrence and the estate of Pamela Page are entitled to have their funds held by the Debtors kept in a segregated account solely for that purpose until all funds held by the Debtors are released. The co-mingling of estate property and non-estate property should not be condoned by this Court.

37. In the event of conversion to chapter 7 or the appointment of a chapter 11 trustee, the segregation of funds will eliminate any future disputes over the ownership of the funds or the amounts to be distributed to these claimants.

## IV. RELIEF REQUSTED

38. The most meaningful relief this Court can grant is to order the immediate release of the funds held in suspense for the estate of Pamela Page to her sister and sole heir, Barbara Lawrence as well as any funds held for Ms. Lawrence in her own right. An estate EIN number has been obtained and an estate bank account already opened for this purpose. 11 U.S.C. §105

enables this Court to recognize that funds held for third parties are not Debtors' property and should be released to the owners thereof.

39. As a protective measure, until the funds are released the Debtors should be required to not only segregate by journal entry those funds, but to physically segregate in a separate bank account opened for that purpose, all funds belonging to Ms. Lawrence and the estate of Pamela Page.

40. The Debtors productions of offsetting post-production fees and cost against amounts owed to the UMO holders is contrary to applicable law in Louisiana and should immediately cease. The cash collateral budget should not include any fees or expenses billed or to be billed to these UMO holders.

41. The releases given to East-West Bank in the proposed cash collateral order should be specifically limited, in writing, to carve out any claims that third parties may have against the Bank, if any.

42. Both Ms. Lawrence and the estate of Pamela Page may have claims for damages and for the recovery of moratory interest on their funds being held by the Debtors, and the final cash collateral order should clearly state that all such claims against the Debtors are preserved for the benefit of potential claimants.

Wherefore, Barbara Page Lawrence and the estate of Pamela Page move this Court to

deny the Motion as submitted, but to approve it with proper procedures put into place to insure prompt payment to third parties now, and in the future, and such further relief as is appropriate.

Dated: June 5, 2020

Respectfully submitted,
BUECHLER LAW OFFICE, LLC

*/s/ Michael J. Guyerson*

_____
Michael J. Guyerson, #11279
999 18th Street, Suite 1230-S
Denver, Colorado 80202
720-381-0045 / 720-381-0382 FAX
Mike@kjblawoffice.com

## CERTIFICATE OF SERVICE

I certify that on June 5, 2020, I served a complete copy of **OBJECTION TO DEBTORS' MOTION FOR APPROVAL OF FINAL CASH COLLATERAL ORDER [DOC. NO. 350]** on the following parties in compliance with the Federal Rules of Bankruptcy Procedure and the Court's Local Rules:

**Via U.S. Mail:**

Sklar Exploration Company, LLC
Sklarco, LLC
5395 Pearl Parkway, Suite 200
Boulder, CO 80301

**Via CM/ECF:**

| | |
|---|---|
| Lee M. Kutner | Shay L. Denning |
| Jeremy L. Retherford | Paul Moss |
| Craig Schuenemann | Katherine A. Ross |
| James B. Bailey | Bryce Suzuki |
| Eric Lockridge | Keri L. Riley |
| Grant Matthew Beiner | Jeffrey S. Brinen |
| Armistead Mason Long | David M. Miller |

| | |
|---|---|
| Kevin S. Neiman | Matthew J. Ochs |
| Jordan B. Bird | Brent R. Cohen |
| Benjamin Y. Ford | Jennifer Hardy |
| Stephen K. Lecholop II | Ryan Lorenz |
| Timothy C. Mohan | Michael Niles |
| Matthew Okin | Joseph Eric Bain |
| Duane Brescia | John Cornwell |
| Craig M. Geno | Christopher D. Johnson |
| Christopher Meredith | Jennifer Norris Soto |
| John Thomas Oldham | Robert L. Paddock |
| Brian Rich | Ryan Seidemann |
| Glenn Taylor | Amy Vazquez |
| Robert Padjen | Michael D. Rubenstein |
| Thomas H. Shipps | Timothy M. Swanson |
| Madison M. Tucker | Deanna L. Westfall |
| Timothy Michael Riley | Barnet B. Skelton Jr. |
| Jim F. Spencer Jr | David R. Taggart |
| Katherine Guidry Douthitt | US Trustee |

By: /s/Teresa White
_____
Buechler Law Office, LLC

14