# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| ) | |
| SKLAR EXPLORATION COMPANY, LLC ) | Case No. 20-12377-EEB |
| EIN:72-1417930 ) | |
|   Debtor ) | Chapter 11 |
| ) | |
| SKLARCO, LLC ) | Case No. 20-12380-EEB |
| EIN: 72-1425432 ) | |
|   Debtor ) | Chapter 11 |

### MOTION FOR RELEASE OF SUSPENSE FUNDS HELD IN TRUST
### BY DEBTORS IN POSSESSION

### MOTION FOR RELEASE OF SUSPENSE FUNDS HELD IN TRUST
### BY DEBTORS IN POSSESSION

Barbara Page Lawrence and the estate of Pamela Page, deceased, through their undersigned counsel, pursuant to this Court's inherit powers under 11 U.S.C. §105 to enforce the duties and obligations of the Debtors under 11 U.S.C. §1107(a) and §541(d), hereby files this Motion For Release Of Suspense Funds Held In Trust By Debtors In Possession as follows:[1]

### I.     FACTUAL BACKGROUND

1. As admitted by the Debtors in the attached e-mail dated March 24, 2020 through April 22, 2020, **Lawrence Exhibit "A"** at pages 2-3, there is no written lease, working interest, or other agreement between the Lawrence or Page parties and the Debtors. Instead their land and the underlying mineral interests in Louisiana were "force

---

[1] While not a catch basin for unauthorized actions, 11 U.S.C. §105 certainly allows this Court to use it inherent authority to enforce the duties and responsibilities of the Debtors in Possession to release funds not belonging to them.

1

pooled" pursuant to Louisiana Revised Statute 30:10, and they are now considered unleased mineral owners in the Echo Papa Well # 10-10 of the Debtors. This is a producing well.

2. Both Barbara Page Lawrence and her now deceased sister, Pamela Page, are each one-half owners of certain real property located in Bienville Parish, Louisiana, previously owned by their deceased father.

3. As required under Louisiana law, upon the death of their father, both Ms. Lawrence and Ms. Page obtained a "Judgement of Possession" from the probate court in Louisiana formally vesting title to the real property in them, **Lawrence Exhibit "A"** at page 2 and **Lawrence Exhibit "B".**

4. As admitted by the Debtors in **Lawrence Exhibit "A"** at pages 2-3, the Debtors recognize the ownership interests of Ms. Lawrence and Ms. Page, stating in part what the official recorded documentation reflects, as follows:

> Succession of Mack Stanley Page, Suit No. 6-516,. Probate Docket, 2nd Judicial District Court, Bienville Parish, Louisiana, Judgment of Possession, dated November 13, 1998 (Report. Item 24), recognizing Pamela Page and Barbara Page Lawrence as the children and sole heirs of the decedent, and placing them in sole possession of Tract 9 of the property examined} in equal l/2 interests. **Recorded** on **November 16, 1998, in Book 830, page 133, Reg. No. 98-3708** Clerk of Court in Bienville Parish, Louisiana.

5. As admitted by the Debtors in the attached e-mail chain dated May 1, 2020 to May 18, 2020, **Lawrence Exhibit "C"**, and in their own suspense funds report, **Lawrence Exhibit "D"** , at the time of the filing of this Chapter 11 case, the Debtors were holding in suspense for the estate of Pamela Page the sum of $63,310.21. The Debtor also owes payments for March, April, and May production for the Pamela Page estate.

6. The Debtors have also admitted that the funds held in suspense are in fact

2

segregated from other Debtors' funds and solely for the estate of Pamela Page, **Lawrence Exhibit "E "** at page 1.

7. Upon representations made by counsel for East West Bank, it does not claim any liens or interest in funds not actually property of the Debtors, such as those held in suspense for the estate of Pamela Page, **Lawrence Exhibit "F"** at page 1.

8. Upon representations made by counsel for the Debtors, the adequate protection-replacement liens granted to the Bank as part of the cash-collateral orders of this Court do not attach to property belonging to third parties, such as funds held for the estate of Pamela Page.

9. As admitted by the Debtors in their own pleadings filed herein [Doc. No 37], as of the Petition Date, the Debtors were holding the sum of $1,049.71 for Ms. Barbara Lawrence, albeit not 'in suspense'. Payments are also owed to Ms. Lawrence for March, April, and May 2020 of approximately $1000.00 per month.

10. Upon the death of her sister, Ms. Lawrence has now obtained the appropriate "Order of Succession" and "Letters of Administration" under Louisiana law appointing Ms. Lawrence as the administrator of her deceased sister's estate, **Lawrence Exhibits "G" and "H"**.

11. Ms. Lawrence has now properly filed and recorded the required "Affidavit of Heirship" as required by Louisiana law recognizing her sole rights to the rights of her deceased sister in the subject property, and in the funds held by the Debtors in suspense for the estate of Pamela Page. **Lawrence Exhibit "I"**.

12. It is the Debtors' practice to offset and deduct from the revenue proceeds owed to Ms. Lawrence and the Estate of Pamela Page post-production fees, expenses, and an

administration charge. This practice continues post-petition. See **Lawrence Exhibit "J "** which is the most recent billing from the Debtors to Ms. Lawrence.

13. Demand has been made upon the Debtors orally, by e-mail, and most recently by letter, **Lawrence Exhibit "K "** demand to release of the funds held in trust by the Debtors for these claimants and to cease the improper deductions and offset for post-production costs from the production payments, the Debtors have refused to do so.

### III. LEGAL AUTHORITY AND ANALYSIS

#### A. STATUTORY FRAMEWORK

14. Under Louisiana law, the relationship between an unleased mineral owner ("UMI") or ("UMO") interest, like Ms. Lawrence and the estate of Pamela Page and the operator, is governed in part by Title 30, Section 10 of the Louisiana Mineral Code. See La. Stat. Ann. § 30:10 et. seq. Under that statute, an operator must give notice to a UMO Owner of its intent to drill a well, and a UMO Owner may elect to participate in (i.e., pay its pro-rata share of costs) the drilling of a well, but it is not required to participate. Id. If a UMO Owner does not participate, it is still responsible for its pro-rata share of the well costs, but such costs may be recouped solely out of the UMO Owner's pro-rata share of unit production. Id. At the point in time when the UMO Owner's share of costs are fully recouped out of the UMI Owner's share of production, the UMI Owner is entitled to receive eight-eighths (8/8ths) of its pro rata share of unit production. Id. This point in time is sometimes referred to in the industry as "payout." If, however, a UMO Owner elects to participate from the outset in the cost, risk and expense of drilling, completing, and equipping the unit well, paying its share of the well costs in advance, then the UMO Owner is entitled to receive eight-eighths (8/8ths) of its pro-rata share of unit production from the date of first production. Id.

15. Since neither Ms. Lawrence nor the estate of Pamela Page elected to participate in the Echo Papa Well # 10-10, they are entitled to receive their net owed proportionate share of production. UMOs hold a special place under Louisiana law in that the operator of an oil and gas field is not allowed pursuant to La. R.S. 30:10(A)(3) to offset its costs and expenses from production proceeds and thus cannot use those funds for its own purposes. See, Section C below.

16. Under Bankruptcy Code sections 363(b) and (c), a trustee may use, sell or lease "property of the estate," including cash collateral, subject to various conditions. 11 U.S.C. §§ 363(b) and (c). With certain exceptions, section 541 of the Bankruptcy Code provides that all property in which a debtor has a legal or equitable interest becomes property of the estate upon commencement of a chapter 11 case. 11 U.S.C. § 541(a)(1). Section 541 does not, however, create new interests in property; rather, "property interests are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 54-55 (1979). Therefore, if the debtor does not have a legal or equitable interest in property as of Petition Date, such property does not become property of the estate and is not available for distribution to the debtor's creditors. *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 135-36 (1962) (holding that the Bankruptcy Code does "not authorize a [debtor] to distribute other people's property among a bankrupt's creditors").

**B. NATURE OF UNLEASED MINERAL OWNER INTEREST**

17. Under Louisiana law, as in many other states, UMOs, working interests, royalty interests and overriding royalty interests are real property interests. See, e.g., La. R.S. 31:16 and 31:18, and La. Civ. Code art. 470 (oil and gas leases in Louisiana are classified as "mineral rights," which are defined as "real rights" and "incorporeal immovables"); La. R.S.

31:16, 31:18, and 31:80 and La. Civ. Code art. 470 (mineral royalties in Louisiana are classified as "mineral rights," which are defined as "real rights" and "incorporeal immovables"); *Terry v. Terry*, 565 So. 2d 997 (La. App.-1st Cir. 1990) (overriding royalties are classified as real rights and incorporeal immovables in Louisiana). [2]

18. As UMOs the Lawrence and Page parties in this case have a real property ownership interest in the real property they own in Louisiana and in the minerals and the proceeds from those minerals located under that property. The forced pool statues in Louisiana codified those property rights. The Debtors in this case may not hold and refuse to release property which is held in trust for the benefit of others.

19. Courts have consistently held that payments owed to landowners, mineral interest holders, working interest owners and royalty owners are not property of the estate, but are merely held in trust, and therefore must be turned over. *In re Reichmann Petroleum Corp*., 434 B.R. 790, 797 (Bankr. S.D. Tex. 2010) (revenue earned by working interest owners is the property of the working interest owners, not the operator, even if the revenues were held by the operator); *In re*

---

[2] *See also Rich v. Doneghey*, 177 P. 86, 89 (Okla. 1918) (holding oil and gas lease grants "an 'incorporeal hereditament;' or more specifically, . . . a profit à prendre"); *Maralex Res., Inc. v. Chamberlain*, 320 P.3d 399, 403 (Colo. App. 2014) (finding that an oil and gas lease is an interest in real property); *Flying Diamond Oil Corp. v. Newton Sheep Co.*, 776 P.2d 618, 629 (Utah 1989) ("An oil and gas royalty is an interest in land."); *Gerhard v. Stephens*, 442 P.2d 692, 704 (Cal. 1968) (noting that under California law a perpetual privilege of drilling for oil and gas is classified as a profit à prendre, an incorporeal hereditament); *In re Antweil*, 97 B.R. 65, 66 (Bankr. D.N.M. 1989) ("Under New Mexico law an oil and gas lease creates an interest in real property."); *Nantt v. Puckett Energy Co.*, 382 N.W.2d 655, 659 (N.D. 1986) ("Oil and gas leases are interests in real property in North Dakota."); *Rucker*

*v. DeLay*, 289 P.3d 1166, 1169 (Kan. 2012) ("In Kansas, mineral interests are real property."); *Team Bank v. Meridian Oil Inc.*, 118 N.M. 147, 149 (1994) ("[A]n overriding interest is an interest in real property[.]"); *ANR W. Coal Dev. Co. v. Basin Elec. Power Co-op.*, 276 F.3d 957, 965 (8th Cir. 2002) (recognizing that "[o]verriding royalty holders have an interest that is a form of real property under North Dakota law").

*SemCrude, L.P.*, 418 B.R. 98, 106 (Bankr. D. Del. 2009) (holding that funds in debtors' possession held on behalf of royalty interest holders were held in a resulting trust for such parties, debtors only held bare legal title to such property, and thus such funds were not property of the estate); *Reserve Oil, Inc. v. Dixon,* 711 F.2d 951, 953 (10th Cir. 1983) (holding that debtors have "no right to or interest in either the oil and gas or the proceeds from its sale beyond the [non-operating working interest owner's] unpaid proportionate share of the costs.").

C. **UMO'S RIGHTS TO SEGREGATE THEIR FUNDS FROM CASH COLLATERAL USAGE AND RECOVER AMOUNTS TAKEN AND HELD FOR POST-PRODUCTION COSTS BY THE DEBTORS.**

20. As Ms. Lawrence and the Estate of Pamela Page are forced pooled UMOs, the Debtors are not permitted pursuant to La. R.S. 30:10(A)(3) to deduct any fees and expense it occurs once the well is drilled and producing ("post-production costs") from the amounts owed to them. Accord, In *Allen Johnson, et al. v. Chesapeake Louisiana*, LP. 2019 WL 1301985 (W.D. La. Mar. 31, 2019).

21. Moreover, the Debtors cannot use the amounts it has collected and holds or may hold in the future to fund its future business operations, these funds belong to the UMO holders, Ms. Lawrence and the estate of Pamela Page. The Debtors should account for such fees and expense improperly deducted and, to the extent any such funds remain post-petition in its custody or control to physically segregate said funds from cash collateral funds it intends to use and surrender those funds to the rightful owners of those funds..

22. In March of 2019 the U.S. District Court for the Western District of Louisiana in Allen held that a unit operator may not recover post-production costs from an unleased mineral owner's share of production proceeds. The dispute in Allen Johnson involved a group of unleased mineral owners ("UMOs") who filed suit against a unit operator for deducting a litany

of post-production costs against their share of production proceeds from an oil and gas unit in question. The Court described the question before it as an issue of first impression and focused on the language of La. R.S. 30:10(A)(3) to find that a unit operator may not deduct post-production costs from a UMO's share of production proceeds. Id at 3-5.

23. In its analysis, the Court first looked to the statutory language of La. R.S. 30:10(A)(3) and recognized that the statute required an UMO to receive its "pro rata share of the proceeds of the sale of production." Id at 4. The Court reasoned that this provision did not authorize post-production cost deductions against UMOs and stated that the Legislature could have phrased La. R.S. 30:10(A)(3) differently had it intended to authorize such deductions. Id at 3-4. While the unit operator argued that La. R.S. 30:10(A)(3) was merely a provision directing the time period within which operators must pay UMOs, the Court disagreed and found that the section not only addressed when the UMO is to be paid but what it is to paid.. Id. at 4.

24. In support of its conclusion, the Court stated:

> The unleased owner involuntarily loses all of his rights to explore — or not explore — his own property. He must still pay all development and operations costs if he is to see economic benefit from the compulsory pooling to which he is subject. A strict construction of [La. R.S.30:10] *simply means that, for all of this, he is given the equivalent of a "no cost" royalty clause on production proceeds. This is hardly unjust*. Id at 4-5 (Emphasis Added)

25. While the Debtors in the present case have likely already spent any pre-petition post-production fees and expenses taken from the production payments owed to Ms. Lawrence and the Estate of Pamela Page, any post-petition expenses and costs collected or to be collected are contrary to applicable Louisiana law and not property of the estate of the debtors.

26. All funds taken and still in the possession of the Debtors should be immediately surrendered to the rightful owners of those funds.

### D. FUNDS HELD FOR UMOs NOT PROPERTY OF ESTATE AND ARE HELD IN TRUST FOR THEM

27. UMO interests, and the production proceeds owed on account thereof, are property of the third-party interest owners and are therefore outside the scope of property of the estate. See 11 U.S.C. § 541(a)(6) (providing that proceeds, product, offspring, rents, or profits "of or from property of the estate" constitute property of the estate under section 541 of the Bankruptcy Code) (emphasis added).

28. Furthermore, section 541(d) of the Bankruptcy Code provides:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, <u>but not to the extent of any equitable interest in such property</u> that the debtor does not hold.

11 U.S.C. § 541(d).

29. Accordingly, pursuant to section 541(d) of the Bankruptcy Code, when a debtor holds only bare legal title in property, such property is not property of the estate. *See, e.g.*, *Golden v. The Guardian (In re Lenox Healthcare, Inc.)*, 343 B.R. 96, 100 (Bankr. D. Del. 2006); *In re Columbia Pac. Mortg., Inc.*, 20 B.R. 259, 262–64 (Bankr. W.D. Wash. 1981) (a debtor that holds proceeds attributable to real property owned by another holds only bare legal title to such property), *Turley v. Mahan & Rowsey, Inc. (In re Mahan & Rowsey, Inc.)*, 817 F.2d 682, 684 (10th Cir. 1987); *Begier v. Internal Revenue Services,* 496 U.S. 53, 59 (1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'"). Indeed, "[w]here Debtor merely holds bare legal title to property as agent or bailee for another, Debtor's bare legal title is of no value to the estate, and Debtor should convey the property to its rightful owner." *In re MCZ, Inc.*, 82 B.R. 40, 42 (Bankr. S.D.

Tex. 1987).

30. For these reasons, courts across the country routinely grant first day motions to pay working interest owners, royalty owners, and other interest owners. *See, e.g., In re Memorial Production Partners LP*, No. 17-30262 (MI) (Bankr. S.D. Tex. Jan. 23, 2017) [Dkt. No. 120] and *In re Stone Energy Corporation*, No. 16-36390 (MI) (Bankr. S.D. Tex. Jan. 10, 2017) [Dkt. No. 258]. This Court has already authorized the Debtors to pay pre-petition amounts owed to ORI and NRI holders, but not to mineral owners such as the estate of Pamela Page and Ms. Lawrence.

31. In this case Ms. Lawrence and the estate of Pamela Page are entitled to have their funds held by the Debtor in Trust for them immediately released and in the interim should be kept in a segregated account solely for that purpose until all funds held by the Debtors are released. The co-mingling of estate property and non-estate property should not be condoned by this Court.

32. In the event of conversion to chapter 7 or the appointment of a chapter 11 trustee the segregation of funds will eliminate any future disputes over the ownership of the funds or the amounts to be distributed to these claimants.

### IV.    RELIEF REQUSTED

33. As fiduciaries the Debtors should not be using the protections of chapter 11 to fail to honor its duties and obligations to CMO holders such as the estate of Pamela Page and her sister and sole heir, Barbara Lawrence. Requiring the filing on an adversary proceeding to seek the release of funds that the Debtors acknowledge are not their funds and are held for others is a perversion of the Code, placing an undue burden of rightful property owners and allowing the Debtor to hide behind the cumbersome and expensive process of adversary litigation.

34. While not a catch basin for unauthorized actions, 11 U.S.C. §105 certainly allows this Court to use it inherent authority to enforce the duties and responsibilities of the Debtors

in Possession to release funds not belonging to them.

35. There can be no competing claims or interest to the separate property of the Page and Lawrence claimants, and this is not the type of proceeding where the nature and extent and priority of competing liens is to be litigated. These are mineral owners wishing a return of their own property.

36. The most meaningful relief this Court can grant is to order the immediate release of the funds held in suspense for the estate of Pamela Page to her sister and sole heir, Barbara Lawrence as well as any funds held for Ms. Lawrence in her own right. An estate EIN number has been obtained and an estate bank account already opened for this purpose. 11 U.S.C. §105 enables this Court to recognize that funds held for third parties are not Debtors' property and should be released to the owners thereof.

37. As a protective measure, until the funds are released the Debtors should be required to not only segregate by journal entry those funds, but to physically segregate in a separate bank account opened for that purpose, all funds belonging to Ms. Lawrence and the estate of Pamela Page.

Wherefore, Barbara Page Lawrence and the estate of Pamela Page move this Court to grant this Motion and for such further relief as is just and appropriate.

Dated: June 5, 2020

Respectfully submitted,
BUECHLER LAW OFFICE, LLC

*/s/ Michael J. Guyerson*

_____
Michael J. Guyerson, #11279
999 18th Street, Suite 1230-S
Denver, Colorado 80202
720-381-0045 / 720-381-0382 FAX
Mike@kjblawoffice.com