

Escambia County Probate
Robert D. Agerton, Judge of Probate
Filed/cert. 6/28/2018 9:13 AM
TOTAL        $ 58858.00
49 Pages

2018   1330
Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM
Rosene Booker, Probate Judge
Conecuh County, Alabama
**Escambia County, Alabama**

MORTGAGE, ASSIGNMENT OF PRODUCTION, SECURITY AGREEMENT, FINANCING
STATEMENT AND FIXTURE FILING

DATED EFFECTIVE AS OF JUNE 15, 2018

FROM

**SKLARCO L.L.C.**
AND
**SKLAR EXPLORATION COMPANY L.L.C.**
EACH AS MORTGAGOR

TO

**EAST WEST BANK**, AS AGENT,
AS MORTGAGEE

Book/Ps: 2018/1330
Term/Cashier: CONECUH-SPARE-P / kcm
Tran: 15675.76912.94774
Recorded: 06-28-2018 10:46:03
INF Indexing Fee (Computer Fnd)        5.00
NTX NO TAX COLLECTED                   0.00
REC Recording Fee                    147.00
Total Fees:  $ 152.00

A CARBON, PHOTOGRAPHIC, FACSIMILE, OR OTHER REPRODUCTION OF THIS
INSTRUMENT IS SUFFICIENT AS A FINANCING STATEMENT.

A POWER OF SALE HAS BEEN GRANTED IN THIS INSTRUMENT. IN CERTAIN STATES, A
POWER OF SALE MAY ALLOW MORTGAGEE TO TAKE THE MORTGAGED PROPERTY AND
SELL IT WITHOUT GOING TO COURT IN A FORECLOSURE ACTION UPON DEFAULT BY
MORTGAGOR UNDER THIS INSTRUMENT.

THIS INSTRUMENT CONTAINS AFTER-ACQUIRED PROPERTY PROVISIONS, SECURES
PAYMENT OF FUTURE ADVANCES, AND COVERS PROCEEDS OF MORTGAGED PROPERTY
TO THE FULLEST EXTENT ALLOWED BY APPLICABLE LAW; PROVIDED, HOWEVER, THAT
THE MAXIMUM AMOUNT OF PRINCIPAL INDEBTEDNESS SECURED HEREBY SHALL NOT
EXCEED $50,000,000. THIS INSTRUMENT IS ONE OF SEVERAL INSTRUMENTS (THE OTHERS
COVERING ASSETS IN STATES OTHER THAN ALABAMA) BEING EXECUTED
CONTEMPORANEOUSLY TO PROVIDE SECURITY FOR THE SAME INDEBTEDNESS.

THIS INSTRUMENT COVERS MINERALS AND OTHER SUBSTANCES OF VALUE WHICH MAY
BE EXTRACTED FROM THE EARTH (INCLUDING WITHOUT LIMITATION OIL AND GAS)
AND WHICH WILL BE FINANCED AT THE WELLHEADS OF THE WELL OR WELLS LOCATED
ON THE PROPERTIES DESCRIBED HEREIN. ADDITIONALLY, PORTIONS OF THE
MORTGAGED PROPERTY ARE GOODS WHICH ARE OR ARE TO BECOME AFFIXED TO OR
FIXTURES ON THE LAND DESCRIBED IN OR REFERRED TO HEREIN. THIS INSTRUMENT IS
TO BE FILED OR FILED FOR RECORD, AMONG OTHER PLACES, IN THE REAL ESTATE
RECORDS OR SIMILAR RECORDS OF THE COUNTY RECORDERS OF THE COUNTIES LISTED
ON *EXHIBIT A* HERETO. MORTGAGOR HAS AN INTEREST OF RECORD IN THE REAL
ESTATE WHICH IS DESCRIBED IN *EXHIBIT A* HERETO. MORTGAGOR IS THE OWNER OF
RECORD OF INTERESTS IN THE REAL ESTATE CONCERNED. THIS INSTRUMENT IS ALSO
TO BE INDEXED IN THE INDEX OF FINANCING STATEMENTS.

2018   1331
Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM

For purposes of filing this instrument as a financing statement:  Mortgagor is the debtor and Mortgagee is the secured party.  Each Mortgagor is a limited liability company organized under the laws of the State of Louisiana, and its mailing address is 5395 Pearl Parkway, Suite 200, Boulder, CO 80301. Mortgagee's mailing address is 5001 Spring Valley Rd., Suite 825W., Dallas, TX 75244, Attn: Haylee Edwards.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**ATTENTION RECORDING OFFICER:** This instrument is a mortgage of both real and personal property and is, among other things, a Security Agreement and Financing Statement under the Uniform Commercial Code.  This instrument creates a lien on rights in or relating to lands of Mortgagor which are described in *Exhibit A* hereto or in instruments and documents described in such *Exhibit A* hereto.

THIS INSTRUMENT IS FILED AS AND SHALL CONSTITUTE A FIXTURE FILING IN ACCORDANCE WITH THE PROVISIONS OF SECTION 7-9A-502(c) OF THE UNIFORM COMMERCIAL CODE OF ALABAMA.

**PREPARED BY AND WHEN RECORDED RETURN TO**:

Haynes and Boone, LLP
1221 McKinney Street, Ste. 2100
Houston, Texas 77010
Attn:  Ashleigh Gibbs

2018 1332
Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM

## MORTGAGE, ASSIGNMENT OF PRODUCTION, SECURITY AGREEMENT, FINANCING STATEMENT AND FIXTURE FILING

This **MORTGAGE, ASSIGNMENT OF PRODUCTION, SECURITY AGREEMENT, FINANCING STATEMENT AND FIXTURE FILING** (this "*Mortgage*") is dated effective June 15, 2018 (the "*Effective Date*"), from **SKLARCO L.L.C.**, a Louisiana limited liability company, whose address for notice is 5395 Pearl Parkway, Suite 200, Boulder, CO 80301 and **SKLAR EXPLORATION COMPANY L.L.C.**, a Louisiana limited liability company, whose address for notice is 5395 Pearl Parkway, Suite 200, Boulder, CO 80301 (each referred to herein as "*Mortgagor*", and together referred to herein as "*Mortgagors*"), to **EAST WEST BANK**, as Agent (as hereinafter defined) and on behalf of the Beneficiaries (as hereinafter defined), whose address for notice is 5001 Spring Valley Rd., Suite 825W., Dallas, TX 75244, Attn: Haylee Edwards (together with its successors in such capacity, "*Mortgagee*").

### RECITALS:

A.     This Mortgage is executed in connection with, and pursuant to the terms of that certain Credit Agreement dated as of June 15, 2018 (as hereafter renewed, extended, amended, supplemented, restated or modified from time to time, the "*Credit Agreement*") among Sklar Exploration Company L.L.C. and Sklarco L.L.C., each a borrower (together in such capacity, "*Borrowers*"), the lenders party thereto from time to time (the "*Lenders*"), and East West Bank, as administrative agent for the Lenders (in such capacity, the "*Agent*") and as Issuing Bank.  Any capitalized term used in this Mortgage and not defined in this Mortgage shall have the meaning assigned to such term in the Credit Agreement.

B.     Borrowers and the other Loan Parties may from time to time enter into, or have previously entered into, one or more Hedging Agreements which constitute Obligations.

C.     Borrowers and the other Loan Parties may from time to time receive, or have previously received, one or more Banking Services which constitute Obligations.

D.     Mortgagor will directly or indirectly benefit from such Credit Agreement, Hedging Agreements and Banking Services.

THEREFORE, in order to comply with the terms and conditions of the Credit Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Mortgagor hereby agrees with Mortgagee for the benefit of the Agent, the Lenders, the Issuing Bank, each Approved Counterparty and each Banking Services Provider (the "*Beneficiaries*") in accordance with their interests as set forth in the Credit Agreement, as follows:

### ARTICLE I
### GRANT OF LIEN AND INDEBTEDNESS SECURED

**Section 1.1**     **Grant of Mortgage and Liens**.  To secure payment and performance of the Indebtedness (as defined in *Section 1.2*) and the performance of the covenants and obligations herein contained, and for and in consideration of other valuable consideration paid to Mortgagor, the receipt and sufficiency of which are hereby acknowledged, and for and in consideration of the debt hereinafter mentioned, Mortgagor does by these presents hereby MORTGAGE, GRANT, BARGAIN, SELL, CONVEY, TRANSFER, ASSIGN AND SET OVER unto and in favor of Mortgagee, and to Mortgagee's successors and assigns, for the benefit of the Beneficiaries, and grant to Mortgagee a POWER OF SALE (pursuant to this Mortgage and applicable law) with respect to all real and personal properties, rights, titles, interests and estates now owned or hereafter acquired by Mortgagor in and to the following

described properties, rights and interests, less and except the Excluded Property (as hereinafter defined) and the Excluded Interests (as defined in the Credit Agreement) (collectively called the "***Mortgaged Property***"):

(a)      all oil and gas leases and/or the oil, gas and mineral leases (herein sometimes collectively called the "***Leases***"), operating rights, forced pooling orders and farmout agreements and other contractual or other rights relating to oil, gas and mineral rights, that are located in (or relate to property located in) any county in the State of Alabama, including without limitation, those described on, or described in the instruments described on, ***Exhibit A*** that is attached hereto and made a part hereof for all purposes, or such Leases that are otherwise mentioned or referred to therein and specifically, but without limitation, Mortgagor's undivided interests in the Leases as specified on ***Exhibit A*** attached hereto and made a part hereof;

(b)      (i) the properties now or hereafter pooled or unitized with the Leases; (ii) all presently existing or future unitization, communitization and pooling agreements and declarations of pooled units and the units created thereby (including, without limitation, all units created under orders, regulations, rules or other official acts of any Federal, State or other governmental body or agency having jurisdiction) that may affect all or any portion of the Leases including, without limitation, those units that may be described or referred to in ***Exhibit A***; (iii) all operating agreements, contracts and other agreements described or referred to in this instrument that relate to any of the Leases or interests in the Leases described or referred to herein or in ***Exhibit A*** or to the production, sale, purchase, exchange, processing, gathering, compression, treating, storage or transportation of the Hydrocarbons (hereinafter defined) from or attributable to such Leases or interests; and (iv) the Leases even though Mortgagor's interests therein be incorrectly described or a description of a part or all of such Leases or Mortgagor's interests therein be omitted; it being intended by Mortgagor and Mortgagee herein to cover and affect all interests that Mortgagor may now own or may hereafter acquire in and to the Leases and interests in this ***paragraph (b)***, notwithstanding that the interests as specified in ***Exhibit A*** may be limited to particular lands, specified depths or particular types of property interests;

(c)      all oil, gas, casinghead gas, condensate, distillate, liquid hydrocarbons, gaseous hydrocarbons and all products refined therefrom and all other minerals of whatever kind or character and in whatever form or phase in and under and/or which may be produced and saved from or attributable to the Leases, the lands covered thereby, pooled or unitized therewith and/or Mortgagor's interests therein (herein collectively called the "***Hydrocarbons***"), including all oil in tanks and all rents, issues, profits, as-extracted collateral, proceeds, products, revenues and other income from or attributable to the Leases, the lands covered thereby, pooled or unitized therewith and/or Mortgagor's interests therein that are subject to the liens and security interests of this Mortgage;

(d)      all tenements, hereditaments, appurtenances and properties in anywise appertaining, belonging, affixed or incidental to the Leases, properties, rights, titles, interests and estates described or referred to in ***paragraphs (a), (b)*** and ***(c)*** above, which are now owned or which may hereafter be acquired by Mortgagor, but subject to the limitations, if any, set forth in ***Exhibit A***, including, without limitation, any and all property, real or personal, now owned or hereafter acquired and situated upon or within the geographical boundaries covered by the Leases, used, held for use, or useful in connection with the operating, working or development of any of such Leases or properties (excluding drilling rigs, automotive equipment or other personal property that may be on such premises for the purpose of drilling a well or for other similar temporary uses) and including any and all oil wells, gas wells, salt water disposal wells, injection wells or other wells including without limitation those described in ***Exhibit A*** hereto, buildings, structures, field separators, flow-lines, separators, water treatment equipment or facilities, dehydrators, field separators, compressors, liquid extraction plants, plant compressors, pumps,

2018   1334
Recorded in the Above
Mortgage  Book & Page
06-28-2018 10:45:31 AM

pumping units, field gathering systems, tanks and tank batteries, fixtures, valves, fittings, machinery and parts, engines, boilers, meters, apparatus, equipment, appliances, tools, implements, cables, wires, towers, casing, tubing and rods, surface leases, rights-of-way, easements and servitudes together with all additions, substitutions, replacements, accessions and attachments to any and all of the foregoing properties;

(e)      the easements, rights-of-way, servitudes, fee tracts, real property, and permits, licenses, orders, certificates, and related instruments (collectively herein referred to as the "*Easements*") that are located in any county in the State of Alabama, including without limitation those described in *Exhibit A* or described in any instrument or document described in *Exhibit A* and any strips and gores within or adjoining any real property included in or covered by the Easements, all rights of ingress and egress to and from such real property, all easements, servitudes, rights-of-way, surface leases, fee tracts and other surface rights affecting said Easements, and all rights appertaining to the use and enjoyment of said Easements, rights, estates, titles, claims, and interests, including, without limitation, lateral support, drainage, mineral, water, oil and gas rights (the Easements and all of the property and other rights, privileges, interests, titles, estates, and claims appurtenant thereto are herein collectively called the "*Gathering System Premises*");

(f)      all gathering systems and/or pipeline systems, and all materials, equipment, and other property now or hereafter located on the Gathering System Premises or used or held for use, regardless of where the same are located, in connection with, or otherwise related to such gathering systems and/or pipeline systems and all equipment, including, but not limited to, all fittings, furnishings, appliances, apparatus, machinery, gas processing, treatment, storage, transportation, extraction fractionation, exchange and/or manufacturing facilities and units and other units, gas, liquid product and other storage tanks, liquid product truck loading terminals, and other gathering assets now or hereafter located on or in (or, whether or not located thereon or therein, used or held for use in connection with) the Premises or such gathering systems or pipeline systems (that portion of the Mortgaged Property described in this *paragraph (f)* is herein collectively called the "*Gathering Systems*");

(g)      all materials, goods, surface or subsurface machinery, equipment, and other property now or hereafter located on the Gathering System Premises, and all other surface or subsurface machinery and equipment, line pipe and pipe connections, fittings, flanges, welds or interconnects, valves, control equipment, cathodic or electrical protection units, by-passes, regulators, drips, meters and metering stations, compression equipment, pumphouses and pumping stations, treating equipment, dehydration equipment, separation equipment, processing equipment, telephone, telegraph and other communication systems, office equipment and furniture, files and records, computer equipment and software, storage sheds, vehicles, loading docks, loading racks, towers, process tanks, storage tanks and other storage facilities, and shipping facilities, gas and electric fixtures, radiators, heaters, engines and machinery, boilers, elevators and motors, motor vehicles, pipes, faucets and other air conditioning, plumbing, and heating fixtures, refrigerators and appurtenances which relate to Mortgagor's use of the Gathering Systems (collectively, the "*Gathering System Equipment*"), and all building materials and supplies now or hereafter delivered to the Gathering System Premises and intended to be installed thereon; all other personal property of whatever kind and nature at present contained in or hereafter placed on the Gathering System Premises in which Mortgagor has a possessory or title interest; and all renewals or replacements thereof or articles in substitution thereof; and all proceeds and profits thereof, all of which shall be deemed to be a portion of the security for the Indebtedness (as hereafter defined).  If the lien of this Mortgage on any fixtures or personal property is subject to a lease agreement, conditional sales agreement or chattel mortgage covering such property, then all the right, title and interest of Mortgagor in and to any and all deposits made thereon or therefor are hereby assigned to Mortgagee, together with the benefit of any payments now or hereafter made thereon.  Mortgagor also transfers, sets over and assigns to

4826-4664-4071 v.6                                              5

2018   1335
Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM

Mortgagee, its successors and assigns, all leases and use agreements covering machinery, equipment and other personal property of Mortgagor related to the Gathering System Premises or the conduct of its business thereon, under which Mortgagor is the lessee of, or entitled to use, such items;

(h)      all inventory and all materials used or consumed in the processing of inventory, and all products thereof, now or hereafter located in or on, or stored in or on, transported through or otherwise related to the lands covered by the Leases and the Gathering System Premises (herein collectively, the "**Premises**"), including all inventory (as such term is used in the Applicable UCC (as hereafter defined)) and such other property held by Mortgagor for sale or lease (or in the possession of other persons while on lease or consignment) or furnished or to be furnished under any service contract and all raw materials, work in process and materials and supplies used or consumed in Mortgagor's business relating to the Premises, and returned or repossessed goods, together with any bill of lading, dock warrant, dock receipt, warehouse receipt or order for the delivery of such goods of Mortgagor related to the Leases and the Gathering Systems, and any other document which in the regular course of business or financing is treated as adequately evidencing that the person in possession of it is entitled to receive, hold and dispose of the document and the goods that it covers (the Mortgaged Property described in this *paragraph (h)* is herein collectively referred to as the "**Inventory**"), and all proceeds thereof and all accounts, contract rights and general intangibles under which such proceeds may arise, and together with all liens and security interests securing payment of the proceeds of the Inventory, including, but not limited to, those liens and security interests provided for under statutes enacted in the jurisdictions in which the Mortgaged Property is located;

(i)      all presently existing and hereafter created Hydrocarbon purchase agreements, Hydrocarbon sales agreements, supply agreements, raw material purchase agreements, product purchase agreements, product sales agreements, processing agreements, exchange agreements, gathering agreements, transportation agreements and other contracts and agreements which cover, affect, or otherwise relate to the transportation and/or processing of Hydrocarbons through or in the Premises or any other part of the Mortgaged Property, and all other contracts and agreements (including, without limitation, equipment leases, maintenance agreements, electrical supply contracts, hedge or swap agreements, cap, floor, collar, exchange, forward or other hedge or protection agreements or transactions relating to crude oil, natural gas or other hydrocarbons, or any option with respect to any such agreement or transaction, and other contracts and agreements) which cover, affect or otherwise relate to the Premises, or any part thereof, together with any and all amendments, modifications, renewals or extensions (now or hereafter existing) to any of the foregoing (the Mortgaged Property described in this *paragraph (i)* is herein collectively called the "**Contracts**");

(j)      all accounts, including but not limited to, (i) all of Mortgagor's rights to receive payment, whether or not earned by Mortgagor's performance and however acquired or evidenced, which arise out of or in connection with (A) Mortgagor's sale of Hydrocarbons, (B) Mortgagor's sale, assignment, lease, hiring out or allowance of use of, consignment, licensing or other voluntary disposition, whether permanent or temporary, of Inventory or other goods or property related to the Premises and/or the conduct of Mortgagor's business thereon (including, without limitation, all payments received in lieu of payment for Inventory regardless of whether such payments accrued, and/or the events that gave rise to such payments occurred, on or before or after the date hereof, including, without limitation, "take or pay" or "minimum bill" payments and similar payments, payments received in settlement of or pursuant to a judgment rendered with respect to take or pay or minimum bill or similar obligations or other obligations under a sales contract, and payments received in buyout or other settlement of a contract covered by this Mortgage), (C) rendering of services related to the Gathering Systems and/or Premises and/or the conduct of Mortgagor's business thereon or (D) any loan, advance, purchase of notes or other extension of credit made by Mortgagor; (ii) any and all rights and interests Mortgagor may have in connection with any of

the transactions described in the preceding clause (i) and relating to the Gathering Systems and/or the Premises, whether now existing or hereafter acquired, (A) to demand and receive payment or other performance from any guarantor, surety, accommodation party or other person indirectly or secondarily obligated to Mortgagor in respect of the Leases, Hydrocarbons, Gathering Systems and/or the Premises and/or the conduct of Mortgagor's business thereon, (B) arising out of the enforcement of any of Mortgagor's rights to payment or performance by means of judicial or administrative proceedings, including, without limitation, any rights to receive payment under or in connection with any settlement of such proceedings, any judgment or any administrative order or decision arising out of actions related to the Leases, Hydrocarbons, Gathering Systems and/or the Premises and/or the conduct of Mortgagor's business thereon, (C) in and to the goods or other property related to the Premises and/or the conduct of Mortgagor's business thereon that is the subject of any such transaction, including, without limitation, (1) in the case of goods, an unpaid seller's or lessor's rights of rescission, replevin or to stop such goods in transit, and all rights to such goods on return or repossession, and (2) in the case of other property, rights of an unpaid seller, assignor or licensor to rescind or cancel the applicable agreement and demand the return of such property or, if such property is intangible, of any writing or other tangible evidence of its existence and/or disposition, and (D) to proceed against any collateral security related to the Premises provided by any obligor and to realize any proceeds thereof; and (iii) all contracts and other agreements and writings, all accounts, chattel paper, documents, general intangibles and instruments, and all other items of property now or hereafter owned by Mortgagor or in that Mortgagor now has or hereafter acquires any rights or interests, whether tangible or intangible and related to the Premises that in any way constitute, embody or evidence any payment rights described in clause (i) of this ***paragraph (j)*** or any of Mortgagor's other rights and interests described in clause (ii) of this ***paragraph (j)*** (the Mortgaged Property described in this ***paragraph (j)*** are herein collectively referred to as the "***Accounts Receivable***");

(k)      all contracts, agreements, leases, permits, orders, franchises, servitudes, certificates, privileges, rights, technology, licenses and general intangibles (including, without limitation, all trademarks, trade names, and symbols) that are now or hereafter used, or held for use, in connection with or otherwise related to the Premises, the Gathering Systems, the Gathering System Equipment and/or the other items described in ***paragraph (g)***, the Inventory, the Contracts, and/or the Accounts Receivable (the Premises, the Gathering Systems, the Gathering System Equipment and the other items described in ***paragraph (g)***, the Inventory, the Contracts, and the Accounts Receivable are hereinafter collectively referred to as the "***Property***") or the conduct of Mortgagor's business on the Leases and/or Gathering System Premises whether now or hereafter created, acquired, or entered into and all right, title and interest of Mortgagor thereunder, including, without limitation, rights, incomes, profits, revenues, royalties, accounts, contract rights and general intangibles under any and all of the foregoing;

(l)      any and all data, books and records related to the Premises and Mortgagor's operations thereon, including, but not limited to, accounting records, files, computer software, employee records, engineering drawings or plans, surveys, site assessments, environmental reports, customer lists, production records, laboratory and testing records, sales and administrative records, and any other material or information relating to the ownership, maintenance, or operation of the Property (the "***Books and Records***");

(m)      all unearned premiums, accrued, accruing or to accrue under insurance policies now or hereafter obtained by Mortgagor for the Property or the conduct of Mortgagor's business on the Premises and all judgments, awards of damages and settlements hereafter made as a result of or in lieu of any taking of the Premises or any part thereof or any interest therein under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the Leases and/or Gathering System Premises or any part thereof or interest therein, including any award for change of grade of streets;

2018  1337
Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM

(n)     all proceeds of the conversion, voluntary or involuntary, of the Property or any part thereof into cash or liquidated claims, including, without limitation, proceeds of hazard and title insurance, subject to the terms and conditions of this Mortgage;

(o)     all options, extensions, improvements, betterments, renewals, substitutions and replacements of, and all additions and appurtenances to, the Property or any part thereof, hereafter acquired by, or released to, Mortgagor, or constructed, assembled or placed by Mortgagor on the Premises, and all conversions of the security constituted thereby (Mortgagor hereby acknowledging and agreeing that immediately upon such acquisition, release, construction, assembling, placement or conversion, as the case may be, and in each such case, without any further mortgage, conveyance, assignment or other act by Mortgagor, the same shall become subject to this Mortgage as fully and completely, and with the same effect, as though now owned by Mortgagor and specifically described herein);

(p)     any property that may from time to time hereafter by delivery or by writing of any kind be subjected to the lien or security interests hereof by Mortgagor or by anyone on Mortgagor's behalf; and Mortgagee is hereby authorized to receive the same at any time as additional security hereunder;

(q)     all other rights, titles and interests of every nature whatsoever now owned or hereafter acquired by Mortgagor in and to the Leases, Easements, properties, rights, titles, interests and estates and every part and parcel thereof, including, without limitation, said Leases, Easements, properties, rights, titles, interests and estates as the same may be enlarged by the discharge of any payments out of production or by the removal of any charges to which any of said Leases, Easements, properties, rights, titles, interests or estates are subject, or otherwise; together with any and all renewals and extensions of any of said Leases, Easements, properties, rights, titles, interests or estates; and all contracts and agreements supplemental to or amendatory of or in substitution for the Leases, Easements, the contracts and agreements described or mentioned above and any and all additional interests of any kind hereafter acquired by Mortgagor in and to said Leases, Easements, properties, rights, titles, interests or estates; and

(r)     all accounts, contract rights, inventory, general intangibles, insurance contracts and insurance proceeds constituting a part of, relating to or arising out of those portions of the Mortgaged Property that are described in ***paragraphs (a)*** through ***(q)*** above and all proceeds and products of all such portions of the Mortgaged Property and payments in lieu of production (such as "take or pay" payments), whether such proceeds or payments are goods, money, documents, instruments, chattel paper, securities, accounts, general intangibles, fixtures, real property, or other assets.

Any fractions or percentages specified in the attached ***Exhibit A*** in referring to Mortgagor's interests are solely for purposes of the warranties made by Mortgagor pursuant to ***Section 3.1*** hereof and shall in no manner limit the quantum of interest affected by this ***Section 1.1*** with respect to any Mortgaged Property or with respect to any unit or well identified on ***Exhibit A***.

TO HAVE AND TO HOLD the Mortgaged Property unto Mortgagee, and to its successors and assigns, forever, to secure the payment and performance of the Indebtedness, and to secure the performance of the covenants, agreements, and obligations of Mortgagor herein contained, however, upon the terms, provisions and conditions herein set forth.  Mortgagor will warrant and forever defend title to the Mortgaged Property against the claims of all persons whomsoever lawfully claiming or to claim the same or any part thereof.

Notwithstanding any provision in this ***Section 1.1*** or in this Mortgage to the contrary, in no event is any Building (as defined in the applicable Flood Insurance Regulation) or Manufactured (Mobile)

Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM

Home (as defined in the applicable Flood Insurance Regulation) included in the definition of "Mortgaged Property" or hereby encumbered by this Mortgage (the "***Excluded Property***").  As used herein, "Flood Insurance Regulations" shall mean (i) the National Flood Insurance Act of 1968, (ii) the Flood Disaster Protection Act of 1973, (iii) the National Flood Insurance Reform Act of 1994 (amending 42 USC 4001, et seq.), and (iv) the Flood Insurance Reform Act of 2004, in each case as now or hereafter in effect or any successor statute thereto and including any regulations promulgated thereunder.  Notwithstanding any provision in this Section 1.1 or in this Mortgage to the contrary, in no event are the Excluded Interests (as defined in the Credit Agreement) included in the definition of "Mortgaged Property" or hereby encumbered by this Mortgage.

       **Section 1.2**      **Indebtedness Secured.**  This Mortgage is executed and delivered by Mortgagor to secure and enforce the following indebtedness, obligations and liabilities (herein collectively called the "***Indebtedness***"):

       (a)      the Obligations (including all future advances that may from time to time be made under the Credit Agreement);

       (b)      any sums advanced or expenses or costs incurred by Mortgagee (or any receiver appointed hereunder) that are made or incurred pursuant to, or permitted by, the terms hereof or of the Credit Agreement, plus interest thereon at the rate herein or therein specified or otherwise agreed upon, from the date of the advances or the incurring of such expenses or costs until reimbursed;

       (c)      the obligations of any Loan Party to the Beneficiaries now or hereafter existing or arising, under or in connection with the Credit Agreement or any other Loan Document, whether for principal, interest, fees, costs, expenses or otherwise, and however created and whether direct or indirect, primary or secondary, fixed or absolute or contingent, joint or several (including all such amounts that would become due but for the operation of the automatic stay under Section 362(a) of the Bankruptcy Code, 11 U.S.C. §362(a), and the operation of Sections 502(b) and 506(b) of the Bankruptcy Code, 11 U.S.C. §502(b) and §506(b) and any other similar provisions arising under applicable Governmental Authority); and

       (d)      any extensions, refinancings, modifications or renewals of all such indebtedness and obligations described in ***paragraphs (a)*** through ***(c)*** above, whether or not Mortgagor executes any extension agreement or renewal instrument.  For the avoidance of doubt, the "Indebtedness" shall not include any Excluded Swap Obligations.

       **Section 1.3**      **Revolving Credit; Future Advances**.  It is contemplated and acknowledged that the Indebtedness may include revolving credit loans and advances from time to time, and that this Mortgage shall have effect as of the date hereof to secure all Indebtedness, regardless of whether any amounts are advanced on the date hereof or on a later date or, whether having been advanced, are later repaid in part or in whole and further advances made at a later date. This Mortgage secures all future advances and obligations constituting Indebtedness.

       **Section 1.4**      **Fixture Filing, Etc**.  Without in any manner limiting the generality of any of the other provisions of this Mortgage: (a) some portions of the goods described or to which reference is made herein are, or are to become, fixtures on the land described or to which reference is made herein or on attached ***Exhibit A***; (b) the security interests created hereby under applicable provisions of the Applicable UCC will attach to Hydrocarbons (minerals including oil and gas), or the accounts resulting from the sale thereof at the wellhead or minehead located on the land described or to which reference is made herein; (c) this Mortgage is to be filed of record in the real estate records as a financing statement, and (d) Mortgagor is the record owner of the real estate or interests in the real estate comprised of the Mortgaged

2018   1535
Recorded in the Above
Mortgage  Book & Page
06-28-2018 10:45:31 AM

Property.

     **Section 1.5**    <u>**Waiver**</u>.  Mortgagor specifically waives presentment, protest, notice of dishonor, intention to accelerate and acceleration.

     **Section 1.6**    <u>**Defined Terms**</u>.  Any capitalized term used in this Mortgage and not defined in this Mortgage shall have the meaning assigned to such term in the Credit Agreement.

     **Section 1.7**    <u>**Aggregate Maximum Amount**</u>.  NOTWITHSTANDING ANY PROVISION HEREOF TO THE CONTRARY, THE OUTSTANDING PRINCIPAL INDEBTEDNESS SECURED BY PROPERTY LOCATED IN ALABAMA SHALL NOT, AT ANY TIME OR FROM TIME TO TIME, EXCEED AN AGGREGATE MAXIMUM AMOUNT OF $50,000,000.

# ARTICLE II
## ASSIGNMENT OF PRODUCTION

     **Section 2.1**    <u>**Assignment**</u>.

     (a)    In addition to the conveyance to Mortgagee herein made, and to additionally secure the Indebtedness, Mortgagor has absolutely and unconditionally ASSIGNED, TRANSFERRED, AND CONVEYED, and does hereby absolutely and unconditionally ASSIGN, TRANSFER AND CONVEY unto Mortgagee, its successors and assigns, for the benefit of the Beneficiaries, pursuant to the terms and conditions set forth herein, all of its interest in the Hydrocarbons and all products obtained or processed therefrom, and the revenues and proceeds now and hereafter attributable to the Hydrocarbons and said products and all payments in lieu of the Hydrocarbons such as "take or pay" payments or settlements. Subject to the provisions of ***paragraph (g)*** below, the Hydrocarbons and products are to be delivered into transportation facilities or equipment serving the Mortgaged Property, or to the purchaser thereof, to the credit of Mortgagee, free and clear of all taxes, charges, costs and expenses; except applicable production taxes and royalties and similar burdens payable from production made under applicable agreements not prohibited by the Credit Agreement, and all such revenues and proceeds shall be paid directly to Mortgagee, at the address designated for payment under the Credit Agreement, with no duty or obligation of any party paying the same to inquire into the rights of Mortgagee to receive the same, what application is made thereof, or as to any other matter.

     (b)    Subject to the provisions of ***paragraph (g)*** below, Mortgagor agrees to perform all such acts, and to execute all such further assignments, transfers and division orders, and other instruments as may be required or desired by Mortgagee or any party in order to have said proceeds and revenues so paid to Mortgagee.

     (c)    Mortgagor hereby appoints Mortgagee as its true and lawful attorney-in-fact for Mortgagor, with full authority in the place and stead of Mortgagor and from time to time in the discretion of Mortgagee, to pursue any and all rights of Mortgagor to liens on and security interests in the Hydrocarbons securing payment of proceeds of runs attributable to the Hydrocarbons.  The power of attorney granted to Mortgagee in this ***Section 2.1(c)***, being coupled with an interest, shall be irrevocable until Security Termination (hereinafter defined) has occurred and shall be exercisable only during the continuance of any Event of Default.

     (d)    Subject to the provisions of ***paragraph (g)*** below, Mortgagee is fully authorized (i) to receive and receipt for said revenues and proceeds, (ii) to endorse and cash any and all checks and drafts payable to the order of Mortgagor or Mortgagee for the account of Mortgagor received from or in

2018   1340
Recorded in the Above
Mortgage  Book & Page
06-28-2018 10:45:31 AM

connection with said revenues or proceeds and to hold the proceeds thereof in a bank account as additional collateral securing the Indebtedness, and (iii) to execute transfer and division orders in the name of Mortgagor, or otherwise, with warranties binding Mortgagor.  All proceeds received by Mortgagee pursuant to this assignment shall be applied as provided in *Section 4.15* of this Mortgage.

(e)     Mortgagee shall not be liable for any delay, neglect, or failure to effect collection of any proceeds or to take any other action in connection therewith or hereunder; but Mortgagee shall have the right, at its election, in the name of Mortgagor or otherwise, to prosecute and defend any and all actions or legal proceedings deemed advisable by Mortgagee in order to collect such funds and to protect the interests of Mortgagee, and/or Mortgagor, with all costs, expenses and attorneys' fees incurred in connection therewith being paid by Mortgagor.

(f)     In addition to the rights granted to Mortgagee in *Section 5.1* of this Mortgage, Mortgagor hereby further collaterally transfers and assigns to Mortgagee any and all liens, security interests, financing statements or similar interests of Mortgagor attributable to its interest in the Hydrocarbons and proceeds of runs therefrom arising under or created by the provisions of § 7-9A-319 of the Applicable UCC and of any similar state or local jurisdiction statute in any state wherein the Mortgaged Property is located or by any other statutory provision, judicial decision or otherwise (collectively, the "*Assigned Liens and Security Interests*").

(g)     Until such time as an Event of Default has occurred and is continuing, Mortgagee hereby grants to Mortgagor a license to all of the Hydrocarbons and to sell, collect, receive and receipt for all revenues and proceeds from the sale of Hydrocarbons and the products obtained or processed therefrom, as well as any Assigned Liens and Security Interests, and to retain, use and enjoy same.

(h)     In the event of Security Termination or of a release of this Mortgage as to the Mortgaged Property, or any part thereof, the assignment granted in this *Section 2.1* shall terminate and be of no further force and effect with respect to all of the Mortgaged Property, in the case of Security Termination, or the Mortgaged Property so released.

**Section 2.2      No Modification of Payment Indebtedness**.  Nothing herein contained shall modify or otherwise alter the obligation of Mortgagor to make prompt payment of all principal and interest owing on the Indebtedness when and as the same become due regardless of whether the proceeds of the Hydrocarbons are sufficient to pay the same and the rights provided in accordance with the foregoing assignment provision shall be cumulative of all other security of any and every character now or hereafter existing to secure payment of the Indebtedness.

## ARTICLE III
## REPRESENTATIONS, WARRANTIES AND COVENANTS

Without limiting the representations, warranties, covenants and agreements contained in the Credit Agreement or any of the Loan Documents, Mortgagor hereby represents, warrants and covenants as follows:

**Section 3.1      Title; Mortgaged Property**.

(a)     The provisions in *Sections 7.01, 7.03, 7.04, 7.05, 7.06, 7.07, 7.09, 7.10, 7.14, 7.15, 7.16, 7.17, 7.18, 7.23, 8.02, 8.03, 8.04, 8.06, 8.08, 8.09* and *9.05* of the Credit Agreement shall apply to this Mortgage with respect to Mortgagor and the Mortgaged Property, and the provisions of *Section 12.02* of the Credit Agreement with respect to notices relating to the Credit Agreement shall apply to notices and

Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM

communications relating to this Mortgage, and all of such provisions are hereby incorporated into this *Section 3.1* by reference, *mutatis mutandis*, as a part hereof.

(b)      This Mortgage constitutes continuing (and, upon filing, enforceable against third parties) Liens on the Mortgaged Property, in favor of the Mortgagee, for the benefit of the Beneficiaries, securing the Indebtedness, enforceable against Mortgagor, except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws relating to or limiting creditors' rights generally or by equitable principles relating to enforceability (whether enforcement is sought in equity or at law).  Except as set forth in the Credit Agreement, this Mortgage is, and always will be kept, a direct first lien and security interest or privilege upon the Mortgaged Property and Mortgagor will not create or suffer to be created or permit to exist any lien, security interest, privilege or charge prior or junior to or on a parity with the lien and security interest of this Mortgage upon the Mortgaged Property or any part thereof or upon the rents, issues, revenues, profits and other income therefrom. Mortgagor will warrant and defend the title to the Mortgaged Property against the claims and demands of all other persons whomsoever and will maintain and preserve the lien and privilege created hereby so long as any of the Indebtedness secured hereby remains unpaid. Should an adverse claim be made against or a cloud develop upon the title to any part of the Mortgaged Property, Mortgagor agrees it will promptly defend against such adverse claim or take appropriate action to remove such cloud at Mortgagor's cost and expense, and Mortgagor further agrees that Mortgagee may take such other action as it deems advisable to protect and preserve its interests in the Mortgaged Property, and in such event Mortgagor will indemnify Mortgagee against any and all costs, attorneys' fees and other expenses which it may incur in defending against any such adverse claim or taking action to remove any such cloud. Such obligation of Mortgagor shall be payable on demand at the Post Default Rate.

### Section 3.2      Other General Representations, Warranties and Covenants.

(a)      Mortgagor shall maintain insurance on the Mortgaged Property as required by the Credit Agreement.  Pursuant to this Mortgage, Mortgagor is hereby granting to Mortgagee a security interest in all proceeds from such policies as additional security for the Indebtedness.

(b)      Consistent with the terms of the Credit Agreement, Mortgagor shall cure promptly any defects in the execution and delivery of this instrument. Mortgagor at Mortgagor's expense will promptly execute and deliver to Mortgagee upon reasonable request all such other and further documents, agreements and instruments in compliance with or accomplishment of the covenants and agreements of Mortgagor herein or to further evidence and more fully describe the Mortgaged Property, or to correct any omissions in this instrument, or more fully to state the security obligations set out herein, or to perfect, protect and, or, preserve any Lien or security interest created hereby, or to make any recordings, or to file any notices, or obtain any consents, all as may be necessary or appropriate in connection with any thereof. Mortgagor shall pay for all reasonable costs of preparing, recording and releasing any of the above.

(c)      All or portions of the Mortgaged Property may be comprised of interests which are other than working interests or which may be operated by a party or parties other than Mortgagor and with respect to all or any such interests and properties as may be comprised of interests other than working interests or which may be operated by parties other than Mortgagor, Mortgagor shall use reasonable commercial efforts to obtain compliance with the covenants as expressed in this *Article III* by the working interest owners or the operator or operators of such interests.

(d)      Mortgagor is not a public utility and is not otherwise subject to regulation by any public utility commission or any similar federal, state or local agency or Governmental Authority.

2018   1342
Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM

(e)      Mortgagor is not a nonresident alien, foreign corporation, foreign partnership, foreign trust, foreign estate or foreign person within the meaning of Sections 1445 or 7701 of the Internal Revenue Code of 1986, as amended, or the regulations thereto.

(f)      Mortgagor has full power and lawful authority to grant, bargain, sell, assign, transfer, mortgage and convey a Lien upon all of the Mortgaged Property and Collateral in the manner and form herein provided.

Section 3.3      **Failure to Perform**.  Mortgagor agrees that if Mortgagor fails to perform any act or to take any action which Mortgagor is required to perform or take hereunder or pay any money which Mortgagor is required to pay hereunder, Mortgagee, in its own name, may, but shall not be obligated to, perform or cause to perform such act or take such action or pay such money, and any expenses so incurred by Mortgagee and any money so paid by Mortgagee shall be a demand obligation owing by Mortgagor to Mortgagee, and Mortgagee, upon making such payment, shall be subrogated to all of the rights of (a) the Person receiving such payment and (b) the Mortgagor making such payment. Each amount due and owing by Mortgagor to Mortgagee pursuant to this Mortgage shall bear interest from the date of making such payment until paid at the Post Default Rate, and all such amounts together with such interest thereon shall be a part of the Indebtedness.

Section 3.4      **ENVIRONMENTAL INDEMNIFICATION**.   TO THE FULL EXTENT PERMITTED BY APPLICABLE LAW, MORTGAGOR AGREES TO DEFEND, INDEMNIFY AND HOLD HARMLESS MORTGAGEE, AND ITS RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, ATTORNEYS AND THE BENEFICIARIES ("***ENVIRONMENTAL INDEMNIFIED PARTIES***") FROM AND AGAINST ANY AND ALL LOSS, COST, EXPENSE OR LIABILITY (INCLUDING, WITHOUT LIMITATION, ATTORNEYS' FEES AND COURT COSTS) INCURRED BY ANY ENVIRONMENTAL INDEMNIFIED PARTY IN CONNECTION WITH OR OTHERWISE ARISING OUT OF ANY AND ALL CLAIMS OR PROCEEDINGS (WHETHER BROUGHT BY A PRIVATE PARTY, GOVERNMENTAL AGENCY OR OTHERWISE) FOR ENVIRONMENTAL CLAIMS RELATED TO HAZARDOUS MATERIALS LOCATED UPON, MIGRATING INTO, FROM OR THROUGH OR OTHERWISE RELATING TO THE MORTGAGED PROPERTY (WHETHER OR NOT THE RELEASE OF SUCH HAZARDOUS MATERIALS WAS CAUSED BY MORTGAGOR, ANOTHER OWNER OR OPERATOR OF THE MORTGAGED PROPERTY, A PRIOR OWNER OR OPERATOR OR ANY OTHER PARTY AND WHETHER OR NOT THE ALLEGED LIABILITY IS ATTRIBUTABLE TO THE HANDLING, STORAGE, GENERATION, TRANSPORTATION OR DISPOSAL OF SUCH SUBSTANCES OR THE MERE PRESENCE OF THE SUBSTANCES ON THE MORTGAGED PROPERTY), THAT ANY ENVIRONMENTAL INDEMNIFIED PARTY MAY INCUR BY REASON OF THIS MORTGAGE, THE MAKING OF THE LOANS OR THE EXERCISE OF ANY OF ITS RIGHTS UNDER THIS MORTGAGE, INCLUDING ANY LOSS, COST, EXPENSE OR LIABILITY DUE TO ANY ENVIRONMENTAL INDEMNIFIED PARTIES' NEGLIGENCE, BUT EXCLUDING ANY LOSS, CLAIM, DAMAGE, COST, EXPENSE OR LIABILITY DUE TO ANY ENVIRONMENTAL INDEMNIFIED PARTY'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OR IN RESPECT OF ANY PROCEEDING NOT RESULTING FROM AN ACT OR OMISSION BY THE MORTGAGOR OR ITS AFFILIATES, OR THEIR PREDECESSORS IN INTEREST, THAT IS BROUGHT BY AN ENVIRONMENTAL INDEMNIFIED PARTY AGAINST ANOTHER ENVIRONMENTAL INDEMNIFIED PARTY. THE PROVISIONS OF THIS ***SECTION 3.4*** SHALL SURVIVE, AND SHALL IN NO MANNER OR TO ANY EXTENT BE EXTINGUISHED, DIMINISHED, NOVATED OR AFFECTED BY, ANY FORECLOSURE OF THE LIENS CREATED BY THIS MORTGAGE OR ANY CONVEYANCE IN LIEU OF FORECLOSURE, THE OCCURRENCE OF SECURITY TERMINATION OR THE

2018  1543
Recorded in the Above
Mortgage  Book & Page
06-28-2018 10:45:31 AM

DISCHARGE AND RELEASE OF THIS MORTGAGE.

## ARTICLE IV
## RIGHTS AND REMEDIES

**Section 4.1     Event of Default**. The term "*Event of Default*" as used in this Mortgage shall mean the occurrence of any "*Event of Default*" under the Credit Agreement.

**Section 4.2     Indebtedness Due and Payable**.   Upon the occurrence and during the continuance of any such Event of Default, after any applicable grace periods, Mortgagee may, by written notice mailed to Mortgagor, addressed to Mortgagor at its address listed on the execution page of this Mortgage or at such other address as Mortgagor may furnish to Mortgagee in accordance with the provisions of *Section 12.02* of the Credit Agreement as incorporated herein by reference in **Section 3.1(a)**, declare the Indebtedness to be due and payable whereupon the Indebtedness shall become immediately due and payable. All costs and expenses (including attorneys' fees) incurred by Mortgagee or the Beneficiaries in protecting and enforcing their rights hereunder shall constitute a demand obligation owing by Mortgagor and shall draw interest at the Post Default Rate and shall constitute a portion of the Indebtedness secured hereby and shall have the benefit of the lien and security interest hereby created.

**Section 4.3     Foreclosure and Sale**. If the Indebtedness shall become due and payable and shall not be promptly paid, Mortgagee shall in accordance with the Credit Agreement have the right and option to proceed with foreclosure and to sell, to the extent permitted by law, all or any portion of the Mortgaged Property at one or more sales, as an entirety or in parcels, at such place or places in otherwise such manner and upon such notice as may be required by law, or, in the absence of any such requirement, as Mortgagee may deem appropriate, and to convey such Mortgaged Property to the purchaser or purchasers. Where the Mortgaged Property is situated in more than one county in any state, notice as above provided shall be posted and filed in all such counties (if such notices are required by law), and all such Mortgaged Property may be sold in any such county and any such notice shall designate the county where such Mortgaged Property is to be sold. Nothing contained in this **Section 4.3** shall be construed so as to limit in any way Mortgagee's rights to sell the Mortgaged Property, or any portion thereof, by private sale if, and to the extent that, such private sale is permitted under the laws of the applicable jurisdiction or by public or private sale after entry of a judgment by any court of competent jurisdiction so ordering. Mortgagor hereby irrevocably appoints Mortgagee to be the attorney-in-fact of Mortgagor with respect to the conduct of any such sale and in the name and on behalf of Mortgagor to execute and deliver any deeds, transfers, conveyances, assignments, assurances and notices with respect to such sale which Mortgagor ought to execute and deliver and do and perform any and all such acts and things with respect to such sale which Mortgagor ought to do and perform under the covenants herein contained. At any such sale: (i) whether made under the power herein contained or any other legal enactment, or by virtue of any judicial proceedings or any other legal right, remedy or recourse, it shall not be necessary for Mortgagee to have physically present, or to have constructive possession of, the Mortgaged Property (Mortgagor hereby covenanting and agreeing to deliver to Mortgagee any portion of the Mortgaged Property not actually or constructively possessed by Mortgagee immediately upon demand by Mortgagee) and the title to and right of possession of any such property shall pass to the purchaser thereof as completely as if the same had been actually present and delivered to purchaser at such sale, (ii) each instrument of conveyance executed by Mortgagee shall contain a general warranty of title, binding upon Mortgagor and its successors and assigns, (iii) each and every recital contained in any instrument of conveyance made by Mortgagee shall be *prima facie* evidence of the truth and accuracy of the matters recited therein, including, without limitation, nonpayment of the Indebtedness, advertisement and conduct of such sale in the manner provided herein and otherwise by law, (iv) any and all prerequisites to the validity thereof shall be presumed to have been performed, (v) the receipt of Mortgagee or of such other party or officer

2018  1344
Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM

making the sale shall be a sufficient discharge to the purchaser or purchasers for its purchase money and no such purchaser or purchasers, or its assigns or personal representatives, shall thereafter be obligated to see to the application of such purchase money, or be in any way answerable for any loss, misapplication or nonapplication thereof, (vi) to the fullest extent permitted by law, Mortgagor shall be completely and irrevocably divested of all of its right, title, interest, claim and demand whatsoever, either at law or in equity, in and to the property sold, and such sale shall be a perpetual bar both at law and in equity against Mortgagor, and against any and all other persons claiming or to claim the property sold or any part thereof, by, through or under Mortgagor and (vii) to the extent and under such circumstances as are permitted by law, Mortgagee shall have the right to be a purchaser at any such sale and shall, after paying or accounting for all costs of said sale or sales, credit the amount of the bid upon the amount of the Indebtedness (in the order of priority set forth in *Section 4.15* hereof) in lieu of cash payment.

(a)  Alabama.  Any sale of any part of the Mortgaged Property located in the State of Alabama shall be made in conformity to the laws thereof including: upon the occurrence and during the continuance of an Event of Default, Mortgagor hereby authorizes and empowers Mortgagee in accordance with the Credit Agreement, at any time when an Event of Default shall have occurred and be continuing to sell the Mortgaged Property at public outcry under power of sale, which is hereby given to the Mortgagee, to the highest bidder or bidders for cash in front of the court house door in the county where said Mortgaged Property, or a substantial and material part thereof, is located, either in person or by auctioneer, after having first given notice of the time, place and terms of sale, together with a description of the property to be sold, by publication once a week for three (3) successive weeks prior to said sale in some newspaper published in all counties in which a portion of the Mortgaged Property is located, and, upon payment of the purchase money, the Mortgagee or any person conducting the sale for the Mortgagee is authorized to execute to the purchaser at said sale a deed to the Mortgaged Property so purchased.  The sale shall be held between the hours of 11:00 a.m. local time and 4:00 p.m. local time on the day designated for the exercise of the power of sale hereunder.  Mortgagee or any person conducting the sale for Mortgagee, may bid at said sale and purchase said Mortgaged Property, or any part thereof, if the highest bidder therefor.  At the foreclosure sale the Mortgaged Property may be offered for sale and sold as a whole without first offering it in any other manner, or may be offered for sale and sold in any other manner the Mortgagee may elect.  A POWER OF SALE HAS BEEN GRANTED IN THIS MORTGAGE.  A POWER OF SALE MAY ALLOW MORTGAGEE OR ANY HOLDER OF THE MORTGAGED PROPERTY TO TAKE THE MORTGAGED PROPERTY AND SELL THEM WITHOUT GOING TO COURT IN A FORECLOSURE ACTION UPON DEFAULT BY MORTGAGOR UNDER THIS MORTGAGE.  Sale of a part of the Mortgaged Property shall not exhaust the power of sale.  After such sale, the Mortgagee shall make due conveyance to the purchaser or purchasers.  Sales made without maturing the Indebtedness may be made hereunder during the occurrence or continuance of an Event of Default without exhausting the power of sale granted hereby and without affecting in any way the power of sale granted under this Mortgage, the unmatured balance of the Indebtedness, or the liens securing payment of the Indebtedness.  The sale or sales of less than the whole of the Mortgaged Property shall not exhaust the power of sale herein granted, and the Mortgagee is specifically empowered to make successive sale or sales under such power until the whole of the Mortgaged Property shall be sold.  It is intended by each of the foregoing provisions of this *Section 4.3(a)* that the Mortgagee may sell all items constituting a part of the Mortgaged Property, or any part thereof, all as a unit and as a part of a single sale, or may sell any part of the Mortgaged Property separately from the remainder of the Mortgaged Property.  Mortgagor agrees that no notice of any such sale other than as set out in this paragraph and in *Section 3.1(a)* need be given by Mortgagee or any other person.  Mortgagor hereby designates as its address for the purposes of such notice, the address set out hereinabove, and agrees that such address shall be changed only in accordance with the provisions of *Section 12.02* of the Credit Agreement as incorporated herein by reference in *Section 3.1(a)*.  Upon the occurrence and during the continuance of an Event of Default, Mortgagor hereby authorizes and

Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM

empowers Mortgagee to sell the Mortgaged Property, or any interest or estate in the Mortgaged Property together or in lots or parcels, as such Mortgagee shall deem expedient, and to execute and deliver to the purchaser or purchasers of the Mortgaged Property good and sufficient deed or deeds of conveyance thereof and bills of sale with covenants of general warranty binding on Mortgagor and its successors and assigns.

(b)      Federal and Indian Lands.  Upon a sale conducted pursuant to this ***Article IV*** during any Event of Default of all or any portion of the Mortgaged Property consisting of interests in leases, easements, rights-of-way, agreements or other documents and instruments (including, without limitation, leases, easements and rights-of-way issued by the Bureau of Land Management) (the "***Federal Interests***"), Mortgagor agrees to take all action and execute all instruments necessary or advisable to transfer the Federal Interests to the purchaser at such sale, including, without limitation, to execute, acknowledge and deliver assignments of the Federal Interests on officially approved forms in sufficient counterparts to satisfy applicable statutory and regulatory requirements, to seek and request approval thereof and to take all other action necessary or advisable in connection therewith. Mortgagor hereby irrevocably appoints Mortgagee as Mortgagor's attorney-in-fact and proxy, with full power and authority in the place and stead of Mortgagor, in the name of Mortgagor or otherwise, to take any such action and to execute any such instruments on behalf of Mortgagor that Mortgagee may deem necessary or advisable to so transfer the Federal Interests, including, without limitation, the power and authority to execute, acknowledge and deliver such assignments, to seek and request approval thereof and to take all other action deemed necessary or advisable by Mortgagee in connection therewith; and Mortgagor hereby adopts, ratifies and confirms all such actions and instruments. Such power of attorney and proxy is coupled with an interest, shall survive the dissolution, termination, reorganization or other incapacity of Mortgagor and shall be irrevocable. No such action by Mortgagee shall constitute acknowledgment of, or assumption of liabilities relating to, the Federal Interests, and neither Mortgagor nor any other party may claim that Mortgagee is bound, directly or indirectly, by any such action.

**Section 4.4      Judicial Foreclosure; Receivership**.  At any time after the occurrence and during the continuance of an Event of Default, Mortgagee shall have the right and power to proceed by a suit or suits in equity or at law, whether for the specific performance of any covenant or agreement herein contained or in aid of the execution of any power herein granted, or for any foreclosure hereunder or for the sale of the Mortgaged Property under the judgment or decree of any court or courts of competent jurisdiction, or for the appointment of a receiver pending any foreclosure hereunder or the sale of the Mortgaged Property under the order of a court or courts of competent jurisdiction or under executory or other legal process, or for the enforcement of any other appropriate legal or equitable remedy.  Any money advanced by Mortgagee in connection with any such receivership shall be a demand obligation (which obligation Mortgagor hereby expressly promises to pay) owing by Mortgagor to Mortgagee and shall bear interest from the date of making such advance by Mortgagee until paid at the Post Default Rate.

**Section 4.5      Foreclosure for Installments**.  If an Event of Default shall have occurred and be continuing, Mortgagee shall also have the option to proceed with foreclosure in satisfaction of any installments of the Indebtedness which have not been paid when due either through the courts or by proceeding with foreclosure in satisfaction of the matured but unpaid portion of the Indebtedness as if under a full foreclosure, conducting the sale as herein provided and without declaring the entire principal balance and accrued interest due; such sale may be made subject to the unmatured portion of the Indebtedness, and any such sale shall not in any manner affect the unmatured portion of the Indebtedness, but as to such unmatured portion of the Indebtedness this Mortgage shall remain in full force and effect just as though no sale had been made hereunder. It is further agreed that several sales may be made hereunder without exhausting the right of sale for any unmatured part of the Indebtedness, it being the

2018  1546
Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM

purpose hereof to provide for a foreclosure and sale of the security for any matured portion of the Indebtedness without exhausting the power to foreclose and sell the Mortgaged Property for any subsequently maturing portion of the Indebtedness.

Section 4.6      **Separate Sales**.  The Mortgaged Property may be sold in one or more parcels and in such manner and order as Mortgagee, in its sole discretion, may elect, it being expressly understood and agreed that the right of sale arising out of any Event of Default shall not be exhausted by any one or more sales.

Section 4.7      **Possession of Mortgaged Property**.  Mortgagor agrees to the full extent that it lawfully may, that, if any of the Indebtedness is not paid promptly when due, then, and in every such case, Mortgagee shall have the right and power to enter into and upon and take possession of all or any part of the Mortgaged Property in the possession of Mortgagor, its successors or assigns, or its or their agents or servants, and may exclude Mortgagor, its successors or assigns, and all persons claiming under Mortgagor, and its or their agents or servants wholly or partly therefrom; and, holding the same, Mortgagee may use, administer, manage, operate and control the Mortgaged Property and conduct the business thereof to the same extent as Mortgagor, its successors or assigns, might at the time do and may exercise all rights and powers of Mortgagor, in the name, place and stead of Mortgagor, or otherwise as Mortgagee shall deem best. All costs, expenses and liabilities of every character incurred by Mortgagee in administering, managing, operating, and controlling the Mortgaged Property shall constitute a demand obligation (which obligation Mortgagor hereby expressly promises to pay) owing by Mortgagor to Mortgagee and shall bear interest from date of expenditure until paid at the Post Default Rate, all of which shall constitute a portion of the Indebtedness and shall be secured by this Mortgage and all other Security Instruments.

Section 4.8      **Occupancy After Foreclosure**.   In the event there is a foreclosure sale hereunder and at the time of such sale Mortgagor or Mortgagor's heirs, devisees, representatives, successors or assigns or any other person claiming any interest in the Mortgaged Property by, through or under Mortgagor, are occupying or using the Mortgaged Property or any part thereof, each and all shall immediately become the tenant of the purchaser at such sale, which tenancy shall be a tenancy from day to day, terminable at the will of either the landlord or tenant, at a reasonable rental per day based upon the value of the property occupied, such rental to be due daily to the purchaser; to the extent permitted by applicable law, the purchaser at such sale shall, notwithstanding any language herein apparently to the contrary, have the sole option to demand immediate possession following the sale or to permit the occupants to remain as tenants at will. In the event the tenant fails to surrender possession of said property upon demand, the purchaser shall be entitled to institute and maintain a summary action for possession of the Mortgaged Property (such as an action for forcible entry and detainer) in any court having jurisdiction.

Section 4.9      **Remedies Cumulative, Concurrent and Nonexclusive**.  Every right, power and remedy herein given to Mortgagee shall be cumulative and in addition to every other right, power and remedy herein specifically given or now or hereafter existing in equity, at law or by statute (including specifically those granted by the Applicable UCC in effect and applicable to the Mortgaged Property or any portion thereof), and each and every such right, power and remedy whether specifically herein given or otherwise existing may be exercised from time to time and so often and in such order as may be deemed expedient by Mortgagee, and the exercise, or the beginning of the exercise, of any such right, power or remedy shall not be deemed a waiver of the right to exercise, at the same time or thereafter any other right, power or remedy. No delay or omission by Mortgagee in the exercise of any right, power or remedy shall impair any such right, power or remedy or operate as a waiver thereof or of any other right, power or remedy then or thereafter existing.

Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM

**Section 4.10     No Release of Indebtedness**.  Neither Mortgagor, any guarantor, if any, nor any other person hereafter obligated for payment of all or any part of the Indebtedness shall be relieved of such obligation by reason of (a) the failure of Mortgagee to foreclose the lien of this Mortgage, to comply with any request of Mortgagor or any guarantor, or to enforce any provision hereunder or under the Credit Agreement; (b) the release, regardless of consideration, of the Mortgaged Property or any portion thereof or interest therein or the addition of any other property to the Mortgaged Property; (c) any agreement or stipulation between any subsequent owner of the Mortgaged Property and Mortgagee extending, renewing, rearranging or in any other way modifying the terms of this Mortgage without first having obtained the consent of, given notice to or paid any consideration to Mortgagor, any guarantor or such other person, and in such event Mortgagor, guarantor and all such other persons shall continue to be liable to make payment according to the terms of any such extension or modification agreement unless expressly released and discharged in writing by Mortgagee; or (d) by any other act or occurrence save and except Security Termination.

**Section 4.11     Release of and Resort to Collateral**.  Mortgagee may release, regardless of consideration, any part of the Mortgaged Property without, as to the remainder, in any way impairing, affecting, subordinating or releasing the lien or security interest created in or evidenced by this Mortgage or its stature as a first and prior lien and security interest in and to the Mortgaged Property, and without in any way releasing or diminishing the liability of any person or entity liable for the repayment of the Indebtedness. For payment of the Indebtedness, Mortgagee may resort to any other security therefor held by Mortgagee in such order and manner as Mortgagee may elect.

**Section 4.12     Waiver of Redemption, Notice and Marshalling of Assets, Etc**.  To the fullest extent permitted by law, Mortgagor hereby irrevocably and unconditionally waives and releases (a) all benefits that might accrue to Mortgagor by virtue of any present or future moratorium law or other law exempting the Mortgaged Property from attachment, levy or sale on execution or providing for any appraisement, valuation, stay of execution, exemption from civil process, redemption or extension of time for payment; provided, however, that if the laws of any state do not permit the redemption period to be waived, the redemption period is specifically reduced to the minimum amount of time allowable by statute; (b) except for notice required by the express terms of the Credit Agreement or any other Loan Document, all notices of any Event of Default or of Mortgagee's intention to accelerate maturity of the Indebtedness or of Mortgagee's election to exercise or his actual exercise of any right, remedy or recourse provided for hereunder or under the Credit Agreement; and (c) any right to a marshalling of assets or a sale in inverse order of alienation. If any law referred to in this Mortgage and now in force, of which Mortgagor or its successor or successors might take advantage despite the provisions hereof, shall hereafter be repealed or cease to be in force, such law shall thereafter be deemed not to constitute any part of the contract herein contained or to preclude the operation or application of the provisions hereof.

**Section 4.13     Discontinuance of Proceedings**.  In case Mortgagee shall have proceeded to invoke any right, remedy or recourse permitted hereunder or under the Credit Agreement and shall thereafter elect to discontinue or abandon same for any reason, Mortgagee shall have the unqualified right so to do and, in such an event, Mortgagor and Mortgagee shall be restored to their former positions with respect to the Indebtedness, this Mortgage, the Credit Agreement, the Mortgaged Property and otherwise, and the rights, remedies, recourses and powers of Mortgagee shall continue as if same had never been invoked.

**Section 4.14     Application of Proceeds**.  The proceeds of any sale of the Mortgaged Property or any part thereof and all other monies received by Mortgagee in any proceedings for the enforcement hereof or otherwise, whose application has not elsewhere herein been specifically provided for, shall be

2018  1348
Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM

applied in the order set forth in *Section 10.02(c)* of the Credit Agreement.

      **Section 4.15   Release of Proceeds Not Discharge of Lien**.  Mortgagee or any future holder or holders of the Indebtedness may at any time and from time to time release to Mortgagor or its order all or any portion of the funds received from the proceeds of oil, gas or other minerals as hereinafter provided without in any manner impairing, releasing or discharging the lien, privilege and security of this Mortgage or affecting the validity thereof.

      **Section 4.16   Resignation of Operator**.  In addition to all rights and remedies under this Mortgage, at law and in equity, if any Event of Default has occurred and be continuing and Mortgagee shall exercise any remedies under this Mortgage with respect to any portion of the Mortgaged Property (or Mortgagor shall transfer any Mortgaged Property in "lieu of foreclosure"), Mortgagee shall have the right to request that any operator of any Mortgaged Property that is Mortgagor or any affiliate of Mortgagor resign as operator under the joint operating agreement applicable thereto. No later than sixty (60) days after receipt by Mortgagor of any such request, Mortgagor shall resign (or cause such other party to resign) as operator of such Mortgaged Property.

      **Section 4.17   Default Interest**.  Interest at a rate equal to the Post Default Rate shall accrue on any judgment obtained by Mortgagee against Mortgagor, whether such judgment is foreclosure of this Mortgage or is a judgment in personam based on the Indebtedness, from the date of judgment until actual payment is made of the full amount of the judgment.

# ARTICLE V
## SECURITY AGREEMENT

      **Section 5.1   Security Interest**.  To further secure the Indebtedness and the performance of the covenants, agreements and obligations of Mortgagor herein, Mortgagor hereby grants to Mortgagee and Mortgagee's successors and assigns for the benefit of the Beneficiaries in accordance with their interests as set forth in the Credit Agreement, a security interest in all of Mortgagor's rights, titles and interests in and to the Mortgaged Property insofar as such Mortgaged Property consists of goods, equipment, accounts, contract rights, general intangibles, insurance contracts, insurance proceeds, inventory, Hydrocarbons, as-extracted collateral (including but not limited to all oil, gas, casinghead gas, natural gas liquids, natural gasoline, distillate, liquid hydrocarbons, gaseous hydrocarbons and all products refined therefrom and all other minerals), fixtures and any and all other personal property of any kind or character defined in and subject to the provisions of the Uniform Commercial Code presently in effect in the jurisdiction in which the Mortgaged Property is situated or that otherwise applies to any portion of the Mortgaged Property (the "***Applicable UCC***") including without limitation, all accessions, additions, and attachments to any thereof, and the proceeds and products from any and all of such personal property (all of the foregoing being herein collectively called the "***Collateral***"); provided that, for the avoidance of doubt, "Collateral" shall not mean or include any Excluded Property (as defined herein), or any Excluded Interests or any Other Permitted Investments (both as defined in the Credit Agreement).  Upon the occurrence and during the continuance of any Event of Default, Mortgagee is and shall be entitled to all of the rights, powers and remedies afforded a secured party by the Applicable UCC with regard to the Collateral in which Mortgagee has been granted a security interest herein, or Mortgagee in accordance with the Credit Agreement may proceed as to both the real and personal property covered hereby in accordance with the rights and remedies granted under this instrument in respect of the real property covered hereby.  Such rights, powers and remedies shall be cumulative and in addition to those granted Mortgagee under any other provision of this instrument or under any other instrument executed in connection with or as security for any of the Indebtedness.  Mortgagor, as debtor (and in this ***Article V*** and otherwise herein called "***Debtor***") covenants and agrees with Mortgagee, as secured party (and in this

2018  1549
Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM

*Article V* and otherwise herein called "***Secured Party***") that:

(a)     To the extent permitted by applicable law, Debtor expressly waives any notice of sale or other disposition of the Collateral and any other right or remedies of a Debtor or formalities prescribed by law relative to sale or disposition of the Collateral or exercise of any other right or remedy of Secured Party existing after an Event of Default hereunder; and to the extent any such notice is required and cannot be waived, Debtor agrees that if such notice is mailed to Debtor in accordance with *Section 12.02* of the Credit Agreement at least 10 (ten) Business Days before the time of the sale or disposition, such notice shall be deemed reasonable and shall fully satisfy any requirement for giving of said notice.

(b)     If an Event of Default shall have occurred and be continuing, Secured Party is expressly granted the right at its option in accordance with the Credit Agreement, to dispose of the Collateral in accordance with the Applicable UCC and to receive the monies, income, proceeds, or benefits attributable or accruing thereto and to hold the same as security for the Indebtedness or to apply it on the principal and interest or other amounts owing on any of the Indebtedness, whether or not then due, in such order or manner as Secured Party may elect. All rights to marshalling of assets of Debtor, including any such right with respect to the Collateral, are hereby waived.

(c)     All recitals in any instrument of assignment or any other instrument executed by Secured Party incident to sale, transfer, assignment or other disposition or utilization of the Collateral or any part thereof hereunder shall be *prima facie* evidence of the matter stated therein, no other proof shall be required to establish full legal propriety of the sale or other action or of any fact, condition or thing incident thereto, and all prerequisites of such sale or other action and of any fact, condition or thing incident thereto shall be presumed to have been performed or to have occurred.

(d)     All expenses of preparing for sale, or other use or disposition, selling or otherwise using or disposing of the Collateral and the like which are incurred or paid by Secured Party as authorized or permitted hereunder, including also all reasonable attorneys' fees, legal expenses and costs, shall be added to the Indebtedness.

(e)     Should Secured Party elect to exercise its rights under the Applicable UCC as to part of the Collateral, this election shall not preclude Secured Party from exercising any other rights and remedies granted by this instrument as to the remainder of the Collateral.

(f)     Any copy of this instrument may also serve as a financing statement under the Applicable UCC between the Debtor, whose present address is Mortgagor's address listed on the execution page of this Mortgage, and Secured Party, whose present address is Mortgagee's address listed on the execution page of this Mortgage.

(g)     Secured Party is authorized to file, in any applicable jurisdiction where Secured Party deems it necessary to perfect or to maintain the perfection of any security interest granted under this Mortgage, a financing statement or statements describing the Collateral, and at the request of Secured Party, Debtor will join Secured Party in delivering one or more financing statements pursuant to the Applicable UCC in form satisfactory to Secured Party, and will pay the cost of filing or recording this instrument, as a financing statement, in all public offices at any time and from time to time whenever filing or recording of any financing statement or of this instrument is deemed by Secured Party to be necessary to perfect or to maintain the perfection of any security interest granted under this Mortgage. Debtor consents to the filing by Secured Party of one or more financing statements describing the Collateral as "all assets" of Mortgagor, or using words of similar meaning; provided that Secured Party agrees to furnish Debtor, at Debtor's expense, with any releases or other documents necessary or

4826-4664-4071 v.6                                                 20

Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM

reasonably desirable for the release of any Excluded Interests or any Other Permitted Investments from any financing statements filed by Secured Party.

(h)     The office where Debtor keeps Debtor's accounting records concerning the Collateral covered by this Security Agreement is the address set forth for Mortgagor on the execution page of this Mortgage or such other address as disclosed in writing to Secured Party in accordance herewith.

**Section 5.2     As Extracted Collateral and Fixtures.**

(a)     Portions of the Collateral consist of (i) oil, gas and other minerals produced or to be produced from the lands described in the Leases (as extracted collateral), or (ii) goods which are or will become fixtures attached to the real estate constituting a portion of the Mortgaged Property, and Debtor hereby agrees that this instrument shall be filed in the real estate records of the counties in which the Mortgaged Property is located as a financing statement to perfect the security interest of Secured Party in said portions of the Collateral.  The said oil, gas and other minerals will be financed at the wellhead of the oil and gas wells located on the lands described in the Leases.  Debtor is the record owner of the Mortgaged Property.  Nothing herein contained shall impair or limit the effectiveness of this document as a security agreement or financing statement for other purposes.

(b)     Mortgagor expressly covenants and agrees that the filing of this Mortgage in the real estate records in the county where the Mortgaged Property is located shall also operate from the time of filing therein as a financing statement in accordance with Section 7-9A-502(c) of the Applicable UCC, or other applicable law.

**Section 5.3     Title to Collateral**.  Debtor further warrants and represents to Secured Party that, except for the security interest in the Collateral granted hereby, Debtor is the owner and holder of the Collateral free of any adverse claim, security interest or encumbrance, and Debtor agrees to defend the Collateral against all other claims and demands against the same or any interest therein. Debtor further warrants and represents that there are no financing statements authorized by Debtor now on file in any public office which have not been assigned to the Secured Party or terminated except those statements true and correct copies of which have been delivered to Secured Party.

## ARTICLE VI
## MISCELLANEOUS

**Section 6.1     Instrument Construed as Mortgage, Etc**. This Mortgage may be construed as a mortgage of both real/immovable and personal/movable property, chattel mortgage, conveyance, assignment, security agreement, pledge, financing statement, hypothecation or contract, or any one or more of them, in order fully to effectuate the lien hereof and the purposes and agreements herein set forth.

**Section 6.2     Release of Mortgage**.  At such time at which each of the following events shall have occurred on or prior to such time: (a) upon termination of all Commitments and payment in full of all Indebtedness (other than contingent indemnification obligations) and the expiration or termination of all Letters of Credit (other than Letters of Credit as to which other arrangements satisfactory to Agent and Issuing Bank shall have been made) and (b) the Credit Agreement is terminated ("**Security Termination**"), Mortgagee shall forthwith cause satisfaction and discharge of this Mortgage to be entered upon the record at the expense of Mortgagor and shall execute and deliver or cause to be executed and delivered all such instruments of satisfaction and reassignment as may be appropriate. Otherwise, this Mortgage shall remain and continue in full force and effect.  If any of the Collateral or Mortgaged Property shall be sold, transferred or otherwise disposed of by the Mortgagor in a transaction expressly

2018   1351
Recorded in the Above
Mortgage  Book & Page
06-28-2018 10:45:31 AM

permitted by the Credit Agreement, then the Mortgagee, at the request and sole cost and expense of the Mortgagor, shall execute and deliver to the Mortgagor all releases or other documents necessary or reasonably desirable for the release of the liens and security interest created hereby on such Collateral or Mortgaged Property permitted to be so sold or disposed. Furthermore, Mortgagee agrees to furnish to Mortgagor, at Mortgagor's expense, with any releases or other documents necessary or reasonably desirable to distinguish any Excluded Interests or any Other Permitted Investments from property encumbered hereby.

Section 6.3     **Severability**.   If any provision hereof is invalid or unenforceable in any jurisdiction, the other provisions hereof shall remain in full force and effect in such jurisdiction and the remaining provisions hereof shall be liberally construed in favor of Mortgagee in order to effectuate the provisions hereof, and the invalidity or unenforceability of any provision hereof in any jurisdiction shall not affect the validity or enforceability of any such provision in any other jurisdiction.

Section 6.4     **Successors and Assigns of Parties**.   The terms used to designate Mortgagee and Mortgagor shall be deemed to include the respective heirs, legal representatives, successors and assigns of such parties, subject to the limitations on assignment herein or in any other Loan Document.

Section 6.5     **Nature of Covenants**.   The covenants and agreements herein contained shall constitute covenants running with the land and interests covered or affected hereby and shall be binding upon the heirs, legal representatives, successors and assigns of the parties hereto.

Section 6.6     **Notices**.   All notices, requests, consents, demands and other communications required or permitted hereunder shall be given or furnished in the manner provided under the Credit Agreement. Notwithstanding the foregoing, or anything else in the Loan Documents which may appear to the contrary, any notice given in connection with a foreclosure of the liens and/or security interests created hereunder, or otherwise in connection with the exercise by any Beneficiary of their respective rights hereunder, which is given in a manner permitted by applicable law shall constitute proper notice; without limitation of the foregoing, notice given in a form required or permitted by statute shall (as to the portion of the Mortgaged Property to which such statute is applicable) constitute proper notice.

Section 6.7     **No Discharge of Mortgagor**.   In the event the ownership of the Mortgaged Property or any part thereof becomes vested in a person other than Mortgagor, Mortgagee may, without notice to Mortgagor, deal with such successor or successors in interest with reference to this Mortgage and to the Indebtedness in the same manner as with Mortgagor, without in any way vitiating or discharging Mortgagor's liability hereunder or for the payment of the Indebtedness or performance of the obligations secured hereby. No transfer of the Mortgaged Property, no forbearance on the part of Mortgagee, and no extension of the time for the payment of the Indebtedness given by any holder of the Indebtedness, in whole or in part, shall vitiate or discharge the liability of Mortgagor hereunder or for obligations secured hereby or the liability of any other person hereunder or for obligations secured hereby or the liability of any other person hereunder or for the payment of the Indebtedness.

Section 6.8     **Time**.   Time shall be of the essence in this Mortgage.

Section 6.9     **Counterparts**.   This Mortgage is being executed in several counterparts, all of which are identical, except that to facilitate recordation, if the Mortgaged Property is situated in more than one jurisdiction, descriptions of only those portions of the Mortgaged Property located in the jurisdiction in which a particular counterpart is recorded shall be attached as *Exhibit A* thereto. Each of such counterparts shall for all purposes be deemed to be an original and all such counterparts shall together constitute but one and the same instrument.

4826-4664-4071 v.6                                    22

Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM

Section 6.10     **GOVERNING LAW**.    THIS MORTGAGE AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, EXCEPT TO THE EXTENT THAT THE LAWS OF ANY OTHER JURISDICTION MANDATORILY GOVERN THE ATTACHMENT, CREATION, VALIDITY, PRIORITY, PERFECTION OR MANNER OR PROCEDURE FOR ENFORCEMENT OF THE LIENS OR SECURITY INTERESTS CREATED BY THIS MORTGAGE; PROVIDED, HOWEVER, ANY REMEDIES PROVIDED IN THIS MORTGAGE WHICH ARE VALID UNDER THE LAWS OF THE JURISDICTION WHERE PROCEEDINGS FOR THE ENFORCEMENT OF THIS MORTGAGE ARE TAKEN SHALL NOT BE AFFECTED BY ANY INVALIDITY UNDER THE LAWS OF THE STATE OF TEXAS.

Section 6.11     **SUBMISSION TO JURISDICTION; WAIVER OF JURY TRIAL**. THE PROVISIONS IN *SECTIONS 12.14(b)-(d)* OF THE CREDIT AGREEMENT ARE HEREBY INCORPORATED INTO THIS ***SECTION 6.11*** BY REFERENCE, MUTATIS MUTANDIS, AS A PART HEREOF.

Section 6.12     **EXCULPATION PROVISIONS**.  MORTGAGOR SPECIFICALLY AGREES THAT IT (I) HAS A DUTY TO READ THIS MORTGAGE AND THAT IT IS CHARGED WITH NOTICE AND KNOWLEDGE OF THE TERMS OF THIS MORTGAGE; (II) HAS IN FACT READ THIS MORTGAGE AND IS FULLY INFORMED AND HAS FULL NOTICE AND KNOWLEDGE OF THE TERMS, CONDITIONS AND EFFECTS OF THIS MORTGAGE; (III) HAS BEEN REPRESENTED BY INDEPENDENT LEGAL COUNSEL OF ITS CHOICE THROUGHOUT THE NEGOTIATIONS PRECEDING ITS EXECUTION OF THIS MORTGAGE, AND HAS RECEIVED THE ADVICE OF ITS ATTORNEY IN ENTERING INTO THIS MORTGAGE; AND (IV) RECOGNIZES THAT CERTAIN OF THE TERMS OF THIS MORTGAGE RESULT IN ONE PARTY ASSUMING THE LIABILITY INHERENT IN SOME ASPECTS OF THE TRANSACTION AND RELIEVING THE OTHER PARTY OF ITS RESPONSIBILITY FOR SUCH LIABILITY. MORTGAGOR AGREES AND COVENANTS THAT IT WILL NOT CONTEST THE VALIDITY OR ENFORCEABILITY OF ANY EXCULPATORY PROVISION OF THIS MORTGAGE ON THE BASIS THAT THE PARTY HAD NO NOTICE OR KNOWLEDGE OF SUCH PROVISION OR THAT THE PROVISION IS NOT "CONSPICUOUS."

*[Signature Pages follow]*

Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM

IN WITNESS WHEREOF, this Mortgage is executed as of the date written in the acknowledgement block below, but effective for all purposes as of the date first written above.

**MORTGAGOR:**

**SKLARCO L.L.C.**, a Louisiana limited liability company

By: _____

Name:   Howard F. Sklar

Title:   Manager, Chairman and Chief Executive Officer

| | |
|---|---|
| STATE OF COLORADO | § |
| | § |
| COUNTY OF BOULDER | § |

I, the undersigned notary public in and for said County in said State, hereby certify that Howard F. Sklar, whose name as Manager, Chairman and Chief Executive Officer of **SKLARCO L.L.C.**, a limited liability company, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he, as such Manager, Chairman and Chief Executive Officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the ‾13ᵗʰ‾ day of June, 2018.

NOTARIAL SEAL:

CARRIE WILCOXSON
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20174032181
MY COMMISSION EXPIRES AUGUST 1, 2021

_____
Notary Public

My Commission Expires: 8|1|21

Name and address of Mortgagor/Debtor:

SKLARCO L.L.C.,
5395 Pearl Parkway, Suite 200
Boulder, CO 80301

SKLAR EXPLORATION COMPANY L.L.C.,
5395 Pearl Parkway, Suite 200
Boulder, CO 80301

Name and address of Mortgagee/Secured Party:

EAST WEST BANK
5001 Spring Valley Rd., Suite 825W
Dallas, TX 75244
Attn: Haylee Edwards

*Signature Page to Mortgage (AL)*

2018 1354
Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM

IN WITNESS WHEREOF, this Mortgage is executed as of the date written in the acknowledgement block below, but effective for all purposes as of the date first written above.

**MORTGAGOR:**

**SKLAR EXPLORATION COMPANY L.L.C.**, a Louisiana limited liability company

By: _____
Name:  Howard F. Sklar
Title:   Manager, Chairman and Chief Executive Officer

STATE OF COLORADO          §
                                            §
COUNTY OF BOULDER          §

I, the undersigned notary public in and for said County in said State, hereby certify that Howard F. Sklar, whose name as Manager, Chairman and Chief Executive Officer of **SKLAR EXPLORATION COMPANY L.L.C.**, a limited liability company, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he, as such Manager, Chairman and Chief Executive Officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the 13ᵗʰ day of June, 2018.

NOTARIAL SEAL: _____

> CARRIE WILCOXSON
> NOTARY PUBLIC
> STATE OF COLORADO
> NOTARY ID 20174032181
> MY COMMISSION EXPIRES AUGUST 1, 2021

Notary Public

My Commission Expires:  8/1/21

Name and address of Mortgagor/Debtor:

SKLARCO L.L.C.,
5395 Pearl Parkway, Suite 200
Boulder, CO 80301

SKLAR EXPLORATION COMPANY L.L.C.,
5395 Pearl Parkway, Suite 200
Boulder, CO 80301

Name and address of Mortgagee/Secured Party:

EAST WEST BANK
5001 Spring Valley Rd., Suite 825W
Dallas, TX 75244
Attn: Haylee Edwards

*Signature Page to Mortgage (AL)*

2018   1355
Recorded in the Above
Mortgage  Book & Page
06-28-2018 10:45:31 AM

## EXHIBIT A

### ATTACHED TO AND MADE A PART OF MORTGAGE, ASSIGNMENT OF PRODUCTION, SECURITY AGREEMENT, FINANCING STATEMENT AND FIXTURE FILING

**DEFINITIONS:**

1.      The terms used on *Exhibit A* have the same meaning as defined in the Mortgage.

2.      The term "working interest" or abbreviation "WI" as used herein means (a) when applied to individual leases, the undivided interest owned by Mortgagor in the leasehold estate, out of which are paid Mortgagor's share of (i) all costs of drilling, completing, equipping and operating a well or wells, and (ii) all royalties, overriding royalties, production payments and other interests in or measured by production, and (b) when applied to leases described as unitized or pooled, the undivided interest owned by Mortgagor and out of which is paid all costs of drilling, completing, equipping and operating a well or wells producing oil and gas, or either of them, from the portions of the leases so unitized or pooled. The term "net revenue interest" or abbreviation "NRI" as used herein means that portion of oil and gas (or oil only, or gas only, where so limited herein) produced from the respective properties herein described to which Mortgagor is entitled after deduction of all royalties, overriding royalties, production payments and other interests in or measured by production which are borne by Mortgagor.

3.      With respect to the descriptions of each of the Mortgaged Property, if the description requires, such description may continue on several successive pages of each part of *Exhibit A*.  Certain property descriptions are in abbreviated form as to Sections, Townships and Ranges.  In such descriptions the following terms may be abbreviated as follows:

| | |
|---|---|
| Northwest Quarter as | NW, NW/4 or NW1/4; |
| Southwest Quarter as | SW, SW/4 or SW1/4; |
| Southeast Quarter as | SE, SE/4 or SE1/4; |
| Northeast Quarter as | NE, NE/4 or NE1/4; |
| North Half as | N/2 or N1/2; |
| South Half as | S/2 or S1/2; |
| East Half as | E/2 or E1/2; and |
| West Half as | W/2 or W1/2. |

The applicable Section, Township and Range may be identified by a series of three numbers, each separated by a dash, with the first number being the Section number, the second number being the Township number and the third number being the Range number.  The Township and Range numbers are followed by an N, S, E or W to indicate whether the Township or Range is North, South, East or West, respectively.  In some instances, the Section number may be stated by itself and not in conjunction with a series of dashed numbers representing the appropriate Township and Range, e.g., the description "N/2 14, SESW 21 29N 8W" means "North one half of Section 14 and Southeast quarter of Southwest quarter of Section 21, all in Township 29 North, Range 8 West." Certain descriptions merely refer to the subdivision or survey in which the property is located in whole or in part.  In such cases, the recorded Leases and any amendments thereof and any other recorded instruments affecting Mortgagor's title more particularly describe the land within such subdivision or survey in which Mortgagor owns an interest, and the descriptions contained in such instruments are incorporated herein by this reference.

4.      The term "API" shall mean that certain American Petroleum Institute number assigned to an oil and gas well by the relevant state regulatory agency and maintained in the public files of such agency.

2018   1355
Recorded in the Above
Mortgage  Book & Page
06-28-2018 10:45:31 AM

**SYMBOLS AND ABBREVIATIONS:**

1.      The abbreviation "BPO" or the term "before payout" as used herein means that the figure next to which this abbreviation appears represents Mortgagor's net income interest until such time as the operator of the well or wells situated on the described property has recovered from production from that well or those wells all costs as specified in underlying farmout assignments or other documents in the chain of title, usually including costs of drilling, completing and equipping a well or wells plus costs of operating the well or wells during the recoupment period.

2.      The abbreviation "APO" or the term "after payout" as used herein means that the figure next to which this abbreviation appears represents Mortgagor's net income interest after the point in time when the operator of the well or wells situated on the described property has recovered from production from that well or those wells all costs as specified in underlying farmout assignments or other documents in the chain of title, usually including costs of drilling, completing and equipping a well or wells plus costs of operating the well or wells during the recoupment period.

*****

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, THIS MORTGAGE COVERS ALL OF MORTGAGOR'S INTERESTS IN AND TO THE OIL, GAS AND MINERAL LEASES DESCRIBED ON *EXHIBIT A*, INCLUDING WITHOUT LIMITATION, THE LANDS DESCRIBED ON *EXHIBIT A* BY METES AND BOUNDS LOCATED THEREON, IF ANY.

Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM

## EXHIBIT A

### ESCAMBIA COUNTY, ALABAMA
### CEDAR CREEK LAND & TIMBER 13-11 #1 WELL

**Unit:**   160 acres, more or less, being the SW/4 of Section 13, Township 3 North, Range 10 East, Escambia County, Alabama.

**Oil and Gas Leases**:  Oil, Gas and Mineral Lease dated June 14, 2012, by and between Cedar Creek Land & Timber, Inc., as Lessor, in favor of Sklar Exploration Company L.L.C., as Lessee, a memorandum of which is recorded in Book 536, Page 166, of the records maintained by the Judge of Probate of Escambia County, Alabama (the "Escambia Records")

### CONECUH COUNTY, ALABAMA
### CEDAR CREEK LAND & TIMBER 3-7 #1 WELL

**Unit:**   160 acres, more or less, being the NE/4 of Section 3, Township 3 North, Range 13 East, Conecuh County, Alabama.

**Oil and Gas Leases**:  Oil, Gas and Mineral Lease dated May 9, 2015, by and between Cedar Creek Land & Timber, Inc., as Lessor, in favor of Sklarco L.L.C., as Lessee, a memorandum of which is recorded in Book 2015, Page 3266, of the records maintained by the Office of the Judge of Probate of Conecuh County, Alabama (the "Conecuh Records")

### ESCAMBIA COUNTY, ALABAMA
### CEDAR CREEK LAND & TIMBER 13-15 #1 ST WELL

**Unit:**   160 acres, more or less, being the SE/4 of Section 13, Township 3 North, Range 10 East, Escambia County, Alabama.

**Oil and Gas Leases**:  Oil, Gas and Mineral Lease dated June 29, 2016, by and between Cedar Creek Land & Timber, Inc., as Lessor, in favor of Sklar Exploration Company L.L.C., as Lessee, a memorandum of which is recorded in Book 620, Page 812, and a Ratification which is recorded in Book 635, Page 69, of the Escambia Records

### ESCAMBIA COUNTY, ALABAMA
### CEDAR CREEK LAND & TIMBER 18-13 #1 WELL

**Unit:**   160 acres, more or less, being the SW/4 of Section 18, Township 3 North, Range 11 East, Escambia County, Alabama.

**Oil and Gas Leases**: Oil, Gas and Mineral Lease dated June 29, 2016, by and between Cedar Creek Land & Timber, Inc., as Lessor, in favor of Sklar Exploration Company L.L.C., as Lessee, a memorandum of which is recorded in Book 620, Page 812, of the Escambia Records

### ESCAMBIA COUNTY, ALABAMA
### EDWARDS FAMILY TRUST 26-6 #1 WELL

2018  1358
Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM

**Unit:**   160 acres, more or less, being the S ½ of the NW/4 and the N ½ of the SW/4 of Section 26, Township 3 North, Range 10 East, Escambia County, Alabama.

**Oil and Gas Leases**: Oil, Gas and Mineral Lease dated August 2, 2015, by and between Edwards Family Trust dated May 15, 1995, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 603, Page 812, of the Escambia Records

Oil, Gas and Mineral Lease dated August 2, 2015, by and between Edwards Family Trust dated June 8, 2006, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 603, Page 807, of the Escambia Records

Oil, Gas and Mineral Lease dated April 2, 2017, by and between CSX Transportation, Inc., as Lessor, in favor of Sklarco L.L.C., as Lessee, a memorandum of which is recorded in Book 635, Page 628, of the Escambia Records

Oil, Gas and Mineral Lease dated December 12, 2014, by and between Paul D. Owens, Jr. and Katherine M. Owens, his wife, as Lessor, in favor of Rose Hill Exploration, LLC, as Lessee, a memorandum of which is recorded in Book 591, Page 233, of the Escambia Records

Oil, Gas and Mineral Lease dated August 2, 2015, by and between Stanley R. Johnson and wife, Natalie M. Johnson, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 639, Page 569, of the Escambia Records

Oil, Gas and Mineral Lease dated April 6, 2017, by and between T. Fonde Jernigan, Jr., as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 636, Page 268, of the Escambia Records

Oil, Gas and Mineral Lease dated April 6, 2017, by and between Lillian Jernigan Sharp, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 636, Page 793, of the Escambia Records

Oil, Gas and Mineral Lease dated April 6, 2017, by and between Mary Lynn Jernigan Kunkel, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 636, Page 271, of the Escambia Records

Oil, Gas and Mineral Lease dated July 5, 2017, by and between Elena A. Cross, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded as Instrument 1096591 of the Escambia Records

Oil, Gas and Mineral Lease dated April 19, 2017, by and between Marie A. LaButti, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 638, Page 189, of the Escambia Records

Oil, Gas and Mineral Lease dated April 19, 2017, by and between Katherine Birch Wilkinson, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 641, Page 220, of the Escambia Records

Oil, Gas and Mineral Lease dated July 5, 2017, by and between James F. Hinkle, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded as Instrument 0196588 of the Escambia Records

Oil, Gas and Mineral Lease dated July 5, 2017, by and between John Cuevas, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded as Instrument 0196586 of the Escambia Records

Oil, Gas and Mineral Lease dated July 5, 2017, by and between Cleva Wiggins Usry, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded as Instrument 0197125 of the Escambia Records

Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM

Oil, Gas and Mineral Lease dated July 5, 2017, by and between Hilton King Wiggins, Sr., as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded as Instrument 0196589 of the Escambia Records

Oil, Gas and Mineral Lease dated July 5, 2017, by and between Mary Ann Raley, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded as Instrument 0197480 of the Escambia Records

Oil, Gas and Mineral Lease dated July 5, 2017, by and between Randall T. Cox, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded as Instrument 0197644 of the Escambia Records

Oil, Gas and Mineral Lease dated August 14, 2017, by and between Laura Jones Borzachini, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded as Instrument 0197647 of the Escambia Records

Oil, Gas and Mineral Lease dated July 5, 2017, by and between Gary Elizabeth Edwards, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded as Instrument 0198089 of the Escambia Records

Oil, Gas and Mineral Lease dated August 14, 2017, by and between Allison Jones Downs, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded as Instrument 0198461 of the Escambia Records

Oil, Gas and Mineral Lease dated July 5, 2017, by and between Judy Jeanne Cross, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded as Instrument 0198088 of the Escambia Records

Oil, Gas and Mineral Lease dated July 5, 2017, by and between Herbert E. Cross, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded as Instrument 0198464 of the Escambia Records

Oil, Gas and Mineral Lease dated July 5, 2017, by and between Pamela Kay Richards, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded as Instrument 0198462 of the Escambia Records

Oil, Gas and Mineral Lease dated July 5, 2017, by and between Polly Ann Lemoine, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded as Instrument 0198463 of the Escambia Records

Oil, Gas and Mineral Lease dated July 5, 2017, by and between Kent W. Richards, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded as Instrument 0198680 of the Escambia Records

Oil, Gas and Mineral Lease dated August 28, 2017, by and between Patricia Lancaster Faulkner, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded as Instrument 0198935 of the Escambia Records

## ESCAMBIA COUNTY, ALABAMA
## CEDAR CREEK LAND & TIMBER 2-9 #1 WELL

**Unit:** 160 acres, more or less, being the SE/4 of Section 2, Township 3 North, Range 12 East, Escambia County, Alabama.

**Oil and Gas Leases**: Oil, Gas and Mineral Lease dated December 1, 2010, by and between Cedar Creek Land & Timber, Inc., as Lessor, in favor of Sklarco L.L.C., as Lessee, a memorandum of which is recorded in Book 508, Page 274, of the Escambia Records

Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM

Oil, Gas and Mineral Lease dated December 1, 2010, by and between Cedar Creek Land & Timber, Inc., as Lessor, in favor of Sklar Exploration Company, L.L.C., as Lessee, a memorandum of which is recorded in Book 568, Page 806, of the Escambia Records

Oil, Gas and Mineral Lease dated February 15, 2013, by and between Ben Kelly Strain, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 551, Page 960, of the Escambia Records

Oil, Gas and Mineral Lease dated February 15, 2013, by and between Steve Frances O'Neal, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 557, Page 36, of the Escambia Records

Oil, Gas and Mineral Lease dated February 15, 2013, by and between Caroline Francis O'Neal, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 551, Page 954, of the Escambia Records

Oil, Gas and Mineral Lease dated February 15, 2013, by and between Robert H. O'Neal, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 551, Page 952, of the Escambia Records

Oil, Gas and Mineral Lease dated February 15, 2013, by and between Gordon Kelly O'Neal, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 551, Page 957, of the Escambia Records

Oil, Gas and Mineral Lease dated February 15, 2013, by and between Edwin Sanford, III, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 551, Page 946, of the Escambia Records

Oil, Gas and Mineral Lease dated February 15, 2013, by and between Kelly Alford, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 551, Page 949, of the Escambia Records

Oil, Gas and Mineral Lease dated February 15, 2013, by and between Mary H. Strain Family Trust, represented by Jane S. Blount, Trustee, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 552, Page 506, of the Escambia Records

Oil, Gas and Mineral Lease dated June 24, 2014, by and between The Theodore B. Roby Trust, Established February 10, 1998, by Thomas C. Tolbert, Trustee, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 578, Page 726, of the Escambia Records

Oil, Gas and Mineral Lease dated March 19, 2013, by and between Karen A. Fulford, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 552, Page 506, of the Escambia Records

Oil, Gas and Mineral Lease dated April 24, 2013, by and between Katherine Roby DuFrain, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 552, Page 506, of the Escambia Records

Oil, Gas and Mineral Lease dated March 19, 2013, by and between John Robert Roby, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 552, Page 500, of the Escambia Records

Oil, Gas and Mineral Lease dated March 19, 2013, by and between Richard Lombard, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 557, Page 915, of the Escambia Records

Oil, Gas and Mineral Lease dated March 19, 2013, by and between Susan Lombard Wilkinson, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 554, Page 83, of the Escambia Records

2018    1561
Recorded in the Above
Mortgage  Book & Page
06-28-2018 10:45:31 AM

Oil, Gas and Mineral Lease dated March 19, 2013, by and between Sandra Ellis, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 552, Page 496, of the Escambia Records

Oil, Gas and Mineral Lease dated March 19, 2013, by and between Carol Roberts, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 552, Page 498, of the Escambia Records

Oil, Gas and Mineral Lease dated June 16, 2014, by and between Carse Casey Jackson, Jr., as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 578, Page 736, of the Escambia Records

Oil, Gas and Mineral Lease dated March 19, 2013, by and between Janice Smith, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 552, Page 494, of the Escambia Records

Oil, Gas and Mineral Lease dated June 24, 2014, by and between Samuel Alto Jackson, Jr., as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 578, Page 731, of the Escambia Records

Oil, Gas and Mineral Lease dated March 19, 2013, by and between Foster F. Fountain, III, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 552, Page 492, of the Escambia Records

Oil, Gas and Mineral Lease dated March 19, 2013, by and between Sarah Russell Tate, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 554, Page 81, of the Escambia Records

Oil, Gas and Mineral Lease dated May 23, 2013, by and between Lenis Holley and A.F. Holley, Jr., individually and as Co-Trustees of the A.F. Holley, Sr. Trust, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 556, Page 183, of the Escambia Records

Oil, Gas and Mineral Lease dated February 15, 2013, by and between John Cleveland Lovelace, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 557, Page 109, of the Escambia Records

Oil, Gas and Mineral Lease dated February 25, 2013, by and between William Yancy Lovelace, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 557, Page 111, of the Escambia Records

Oil, Gas and Mineral Lease dated February 18, 2013, by and between Hester Lovelace Gordon, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 557, Page 107, of the Escambia Records

Oil, Gas and Mineral Lease dated March 19, 2013, by and between James C. Roby, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 555, Page 139, of the Escambia Records

Oil, Gas and Mineral Lease dated March 19, 2013, by and between Syble LaJune White, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 554, Page 77, of the Escambia Records

Oil, Gas and Mineral Lease dated June 27, 2014, by and between Lovelace Properties, L.L.C., as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 582, Page 441, of the Escambia Records

Oil, Gas and Mineral Lease by acknowledgment dated July 25, 2014, by and between The Estate of Thomas E. McMillan, as Lessor, in favor of Sklarco L.L.C., as Lessee, a memorandum of which is recorded in Book 582, Page 438, of the Escambia Records

Oil, Gas and Mineral Lease dated July 21, 2014, by and between Cindy Calvert Hayes, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 580, Page 603, of the Escambia Records

Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM

Oil, Gas and Mineral Lease dated June 23, 2014, by and between James Timothy Calvert, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 578, Page 741, of the Escambia Records

## CONECUH COUNTY, ALABAMA
## CEDAR CREEK LAND & TIMBER 2-15 #1 WELL

**Unit:**   160 acres, more or less, being the SE/4 of Section 2, Township 3 North, Range 13 East, Conecuh County, Alabama.

**Oil and Gas Leases**:  Oil, Gas and Mineral Lease dated May 9, 2015, by and between Cedar Creek Land & Timber, Inc., as Lessor, in favor of Sklarco L.L.C., as Lessee, a memorandum of which is recorded in Book 2015, Page 3266, of the Conecuh Records

## CONECUH COUNTY, ALABAMA
## CEDAR CREEK LAND & TIMBER 33-4 #1 WELL

**Unit:**   160 acres, more or less, being the NW/4 of Section 33, Township 4 North, Range 12 East, Conecuh County, Alabama.

**Oil and Gas Leases**: Oil, Gas and Mineral Lease dated September 21, 2009, by and between Cedar Creek Land & Timber, Inc., as Lessor, in favor of Sklar Exploration Company L.L.C., as Lessee, a memorandum of which is recorded in Book 2009, Page 4872, of the Conecuh Records

## CONECUH COUNTY, ALABAMA
## CEDAR CREEK LAND & TIMBER 35-15 #1 WELL

**Unit:**   160 acres, more or less, being the NW/4 of Section 35, Township 4 North, Range 12 East, Conecuh County, Alabama.

**Oil and Gas Leases**: Oil, Gas and Mineral Lease dated September 21, 2009, by and between Cedar Creek Land & Timber, Inc., as Lessor, in favor of Sklar Exploration Company L.L.C., as Lessee, a memorandum of which is recorded in Book 2009, Page 4872, of the Conecuh Records

Oil, Gas and Mineral Lease dated December 1, 2010, by and between Cedar Creek Land & Timber, Inc., as Lessor, in favor of Sklar Exploration Company L.L.C., as Lessee, a memorandum of which is recorded in Book 2011, Page 157, of the Conecuh Records

Oil, Gas and Mineral Lease dated March 13, 2009, by and between Caroline C. Kennedy, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 2009, Page 1699, of the Conecuh Records

Oil, Gas and Mineral Lease dated March 14, 2009, by and between Margaret Ann Skiles, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 2009, Page 2895, of the Conecuh Records

Oil, Gas and Mineral Lease dated April 2, 2009, by and between Jo Ann Cary Langham, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 2009, Page 2893, of the Conecuh Records

Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM

Oil, Gas and Mineral Lease dated April 2, 2009, by and between Alva Nan Cary Taylor, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 2009, Page 2951, of the Conecuh Records

Oil, Gas and Mineral Lease dated April 2, 2009, by and between Juanita Cary Waters, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 2009, Page 2887, of the Conecuh Records

Oil, Gas and Mineral Lease dated April 2, 2009, by and between Robert E. Cary, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 2009, Page 2885, of the Conecuh Records

Oil, Gas and Mineral Lease dated February 24, 2011, by and between Alice Smith Cary, herein represented by Cewilla Carmon, agent and attorney-in-fact, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 2011, Page 820, of the Conecuh Records

Oil, Gas and Mineral Lease dated February 24, 2011, by and between Fannie H. Robins, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 2011, Page 822, of the Conecuh Records

Oil, Gas and Mineral Lease dated May 12, 2011, by and between Tisdale Natural Resources, LLC, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 2011, Page 3061, of the Conecuh Records

## CONECUH COUNTY, ALABAMA
## BROOKLYN FIELD
## CEDAR CREEK LAND & TIMBER 3-4 #1 (R13E) WELL

**Unit:**  160 acres, more or less, being the NW/4 of Section 3, Township 3 North, Range 13 East, Conecuh County, Alabama.

**Oil and Gas Leases**: Oil, Gas and Mineral Lease dated May 9, 2011, by and between Cedar Creek Land & Timber, Inc., as Lessor, in favor of Sklarco, L.L.C., as Lessee, a memorandum of which is recorded in Book 2011, Page 2953, of the Conecuh Records

## CONECUH COUNTY, ALABAMA
## CEDAR CREEK LAND & TIMBER 4-1 #1 WELL

**Unit:**  160 acres, more or less, being the NE/4 of Section 4, Township 3 North, Range 13 East, Conecuh County, Alabama.

**Oil and Gas Leases**: Oil, Gas and Mineral Lease dated February 9, 2012, by and between Cedar Creek Land & Timber, Inc., as Lessor, in favor of Sklarco, L.L.C., as Lessee, a memorandum of which is recorded in Book 2012, Page 562, of the Conecuh Records

## CONECUH COUNTY, ALABAMA
## LITTLE CEDAR CREEK FIELD
## CRAFT-SOTERRA LLC 27-6 #1 WELL

**Unit:**  160 acres, more or less, being the NW/4 of Section 27, Township 5 North, Range 13 East, Conecuh County, Alabama.

2018   1564
Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM

**Oil and Gas Leases**: Oil, Gas and Mineral Lease dated April 2, 2008, by and between Smurfit-Stone Container Enterprises, Inc., as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2008, Page 2099, of the Conecuh Records

Oil, Gas and Mineral Lease dated November 12, 2007, by and between Soterra, LLC, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2007, Page 4370, of the Conecuh Records

### ESCAMBIA COUNTY, ALABAMA
### CEDAR CREEK LAND & TIMBER 2-11 #1 WELL

**Unit:**   160 acres, more or less, being the SW/4 of Section 2, Township 3 North, Range 12 East, Escambia County, Alabama.

**Oil and Gas Leases**: Oil, Gas and Mineral Lease dated December 1, 2013, by and between Cedar Creek Land & Timber, Inc., as Lessor, in favor of Sklar Exploration Company L.L.C., as Lessee, a memorandum of which is recorded in Book 568, Page 806, of the Escambia Records

### ESCAMBIA COUNTY, ALABAMA
### BROOKLYN FIELD
### CEDAR CREEK LAND & TIMBER 3-2 #1 WELL

**Unit:**   160 acres, more or less, being the NE/4 of Section 3, Township 3 North, Range 12 East, Escambia County, Alabama.

**Oil and Gas Leases**: Oil, Gas and Mineral Lease dated September 21, 2009, by and between Cedar Creek Land & Timber, Inc., as Lessor, in favor of Sklar Exploration Company L.L.C., as Lessee, a memorandum of which is recorded in Book 485, Page 249, of the Escambia Records

Oil, Gas and Mineral Lease dated September 21, 2009, by and between Cedar Creek Land & Timber, Inc., as Lessor, in favor of Sklarco, L.L.C., as Lessee, a memorandum of which is recorded in Book 508, Page 274, of the Escambia Records

### CONECUH COUNTY, ALABAMA
### LITTLE CEDAR CREEK FIELD
### CRAFT-SOTERRA LLC 27-2 #1 WELL

**Unit:**   160 acres, more or less, being the NE/4 of Section 27, Township 5 North, Range 13 East, Conecuh County, Alabama.

**Oil and Gas Leases**: Oil, Gas and Mineral Lease dated June 30, 2004, by and between Olen Paul Padgett and wife, Kimberly F. Padgett, as Lessors, in favor of Craft Exploration Company, LLC, as Lessee, recorded in Book 2004, Page 2259, of the Conecuh Records

Oil, Gas and Mineral Lease dated June 24, 2004, by and between Gerald Ira Padgett and Daniel Ira Padgett, as Lessors, in favor of Craft Exploration Company, LLC, as Lessee, recorded in Book 2004, Page 2251, of the Conecuh Records

Oil, Gas and Mineral Lease dated November 12, 2007, by and between Soterra, LLC, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2007, Page 4370, of the Conecuh Records

2018 1365
Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM

### CONECUH COUNTY, ALABAMA
### LITTLE CEDAR CREEK FIELD
### CRAFT-MACK 17-4 #1 WELL

**Unit:** 160 acres, more or less, being the NW/4 of Section 17, Township 4 North, Range 13 East, Conecuh County, Alabama.

**Oil and Gas Leases**: Oil, Gas and Mineral Lease dated April 28, 2004, by and between Mary Horton Mack, as Lessor, in favor of Craft Exploration Company, LLC, as Lessee, recorded in Book 2005, Page 1220, with a memorandum thereof recorded in Book 2004, page 2217, of the Conecuh Records

### CONECUH COUNTY, ALABAMA
### BROOKLYN FIELD
### GODWIN 36-1 WELL

**Unit:** 160 acres, more or less, being the NE/4 of Section 36, Township 4 North, Range 12 East, Conecuh County, Alabama.

**Oil and Gas Leases**: Oil, Gas and Mineral Lease dated March 13, 2009, by and between Carolyn C. Kennedy, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2009, Page 1699, of the Conecuh Records

### CONECUH COUNTY, ALABAMA
### LITTLE CEDAR CREEK FIELD
### CRAFT-SMURFIT-STONE 27-12 #1 WELL

**Unit:** 160 acres, more or less, being the SW/4 of Section 27, Township 5 North, Range 13 East, Conecuh County, Alabama.

**Oil and Gas Leases**: Oil, Gas and Mineral Lease dated April 2, 2008, by and between Smurfit-Stone Container Enterprises, Inc., as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2008, Page 2099, of the Conecuh Records

Oil, Gas and Mineral Lease dated February 23, 2004, by and between Grady Lynn Ralls and wife, Willodean Ralls, as Lessors, in favor of Craft Exploration Company, LLC, as Lessee, recorded in Book 2004, Page 2275, of the Conecuh Records

Oil, Gas and Mineral Lease dated October 17, 2008, by and between Olen Paul Padgett and wife, Kimberly F. Padgett, as Lessors, in favor of Sklarco, L.L.C., as Lessee, a memorandum of which was recorded in Book 2009, Page 552, of the Conecuh Records

Oil, Gas and Mineral Lease dated June 18, 2009, by and between William T. Pate and wife, Claudette G. Pate, as Lessors, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2009, Page 2854, of the Conecuh Records

Oil, Gas and Mineral Lease dated June 24, 2009, by and between Gerald Ira Padgett and Michael Brandon Padgett, as Lessors, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2009, Page 1299, of the Conecuh Records

2018   1868
Recorded in the Above
Mortgage  Book & Page
06-28-2018 10:45:31 AM

Oil, Gas and Mineral Lease dated June 18, 2009, by and between Jason L. Pate and wife, Sharon Pate, as Lessors, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2009, Page 2866, of the Conecuh Records

**CONECUH COUNTY, ALABAMA**
**LITTLE CEDAR CREEK FIELD**
**CRAFT-RALLS 4-12 #1 WELL**

**Unit:**   160 acres, more or less, being the SW/4 of Section 4, Township 4 North, Range 13 East, Conecuh County, Alabama.

**Oil and Gas Leases**: Oil, Gas and Mineral Lease dated February 23, 2004, by and between Grady Lynn Ralls and wife, Willodean Ralls, as Lessors, in favor of Craft Exploration Company, LLC, as Lessee, recorded in Book 2004, Page 2275, of the Conecuh Records

Oil, Gas and Mineral Lease dated July 13, 2004, by and between Richard D. Holmes, as Lessor, in favor of Craft Exploration Company, LLC, as Lessee, recorded in Book 2004, Page 2189, of the Conecuh Records

Oil, Gas and Mineral Lease dated May 20, 2004, by and between Edgar C. McCreary and wife, Annie Ruth McCreary, as Lessors, in favor of Craft Exploration Company, LLC, as Lessee, recorded in Book 2004, Page 2231, of the Conecuh Records

Oil, Gas and Mineral Lease dated June 8, 2004, by and between Willie F. McClain and wife, Wanda T. McClain, as Lessors, in favor of Craft Exploration Company, LLC, as Lessee, recorded in Book 2004, Page 2229, of the Conecuh Records

Oil, Gas and Mineral Lease dated June 11, 2004, by and between M. Steven Moehle, as Lessor, in favor of Craft Exploration Company, LLC, as Lessee, recorded in Book 2004, Page 2244, of the Conecuh Records

Oil, Gas and Mineral Lease dated February 23, 2004, by and between Juanita J. Ralls, a/k/a Sarah J. Ralls, a widow, individually and the Grady Ralls Family Trust dated February 16, 1987, represented herein by Juanita J. Ralls, Trustee, as Lessors, in favor of Craft Exploration Company, LLC, as Lessee, recorded in Book 2004, Page 2280, of the Conecuh Records

Oil, Gas and Mineral Lease dated May 24, 2004, by and between Willa Hyde Cox, as Lessor, in favor of Craft Exploration Company, LLC, as Lessee, recorded in Book 2004, Page 2155, of the Conecuh Records

Oil, Gas and Mineral Lease dated May 24, 2004, by and between Mary Jo Hyde Thompson, as Lessor, in favor of Craft Exploration Company, LLC, as Lessee, recorded in Book 2004, Page 2296, of the Conecuh Records

**CONECUH COUNTY, ALABAMA**
**LITTLE CEDAR CREEK FIELD**
**CRAFT-MACK 8-2 #1 WELL**

**Unit:**   160 acres, more or less, being the NE/4 of Section 8, Township 4 North, Range 13 East, Conecuh County, Alabama.

Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM

**Oil and Gas Leases**: Oil, Gas and Mineral Lease dated April 28, 2004, by and between Mary Horton Mack, as Lessor, in favor of Craft Exploration Company, LLC, as Lessee, recorded in Book 2005, Page 1220, and a memorandum thereof recorded in Book 2004, page 2217, of the Conecuh Records

Oil, Gas and Mineral Lease dated May 20, 2004, by and between Edgar C. McCreary and wife, Annie Ruth McCreary, as Lessors, in favor of Craft Exploration Company, LLC, as Lessee, recorded in Book 2004, page 2231, of the Conecuh Records

Oil, Gas and Mineral Lease dated December 22, 2004, by and between Church of Christ of the Primitive Faith and Order at Pleasant Grove a/k/a/ Pleasant Grove Primitive Baptist Church represented herein by its Board of Deacons Willie J. Etheride, Johnny Etheridge and Zack Brunson and Elder H.L. McClain, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2005, page 42, of the Conecuh Records

### ESCAMBIA COUNTY, ALABAMA
### BROOKLYN FIELD
### CRAFT-MACK 3-4 #1 WELL

**Unit:**   160 acres, more or less, being the NW/4 of Section 3, Township 3 North, Range 12 East, Escambia County, Alabama.

**Oil and Gas Leases**: Oil, Gas and Mineral Lease dated September 21, 2009, by and between Cedar Creek Land & Timber, Inc., as Lessor, in favor of Sklar Exploration Company L.L.C., as Lessee, a memorandum of which is recorded in Book 485, Page 249, of the Escambia Records

### CONECUH COUNTY, ALABAMA
### BROOKLYN FIELD
### THOMASSON 33-12 #1 WELL

**Unit:**   160 acres, more or less, being the SW/4 of Section 33, Township 4 North, Range 13 East, Conecuh County, Alabama.

**Oil and Gas Leases**: Oil, Gas and Mineral Lease dated March 10, 2011, by and between Ross Thomasson Malloy, as Lessor, in favor of J. Bradley Jeffreys, as Lessee, recorded in Book 2011, Page 1024, of the Conecuh Records

Oil, Gas and Mineral Lease dated August 15, 2011, by and between Robert T. Feagin, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2011, Page 4275, of the Conecuh Records

Oil, Gas and Mineral Lease dated March 20, 2011, by and between Stephen Jeter, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2011, Page 501, of the Conecuh Records

Oil, Gas and Mineral Lease dated March 20, 2011, by and between John Jeter, III, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2011, Page 566, of the Conecuh Records

Oil, Gas and Mineral Lease dated March 20, 2011, by and between Sally Jeter Hammond, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2011, Page 498, of the Conecuh Records

Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM

Oil, Gas and Mineral Lease dated October 24, 2013, by and between Jacob Benjamin Logan, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2013, Page 5979, of the Conecuh Records

Oil, Gas and Mineral Lease dated October 19, 2013, by and between Janie M. Johnson, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2013, Page 6294, of the Conecuh Records

Oil, Gas and Mineral Lease dated November 20, 2006, by and between Elizabeth R. Epstein, as Lessor, in favor of John C. Albury, as Lessee, recorded in Book 2007, Page 247, of the Conecuh Records

Oil, Gas and Mineral Lease dated February 11, 2009, by and between Robert Terrell McLendon, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2009, Page 1725, of the Conecuh Records

**CONECUH COUNTY, ALABAMA**
**LITTLE CEDAR CREEK FIELD**
**HAMITER 17-16 #1 WELL**

**Unit:**   160 acres, more or less, being the SE/4 of Section 17, Township 4 North, Range 13 East, Conecuh County, Alabama.

**Oil and Gas Leases**: Oil, Gas and Mineral Lease dated May 21, 2004, by and between Scott Matthews, as Lessor, in favor of Craft Exploration Company L.L.C., as Lessee, recorded in Book 2004, Page 2225, of the Conecuh Records

**CONECUH COUNTY, ALABAMA**
**LITTLE CEDAR CREEK FIELD**
**CRAFT-RALLS 28-16 #1 WELL**

**Unit:**   160 acres, more or less, being the SE/4 of Section 28, Township 5 North, Range 13 East, Conecuh County, Alabama.

**Oil and Gas Leases**: Oil, Gas and Mineral Lease dated February 23, 2004, by and between Grady Lynn Ralls and wife, Willodean Ralls, as Lessors, in favor of Craft Exploration Company, LLC, as Lessee, recorded in Book 2004, Page 2275, of the Conecuh Records

Oil, Gas and Mineral Lease dated June 10, 2009, by and between Beavin-Jackson Lumber and Veneer Company, Inc., as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2009, Page 3593, of the Conecuh Records

Oil, Gas and Mineral Lease dated June 7, 2009, by and between Terry Padgett, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2009, Page 1309, of the Conecuh Records

Oil, Gas and Mineral Lease dated June 7, 2009, by and between Edward G. Padgett, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2009, Page 1312, of the Conecuh Records

**CONECUH COUNTY, ALABAMA**
**BROOKLYN FIELD**
**CEDAR CREEK LAND & TIMBER 33-10 #1 WELL**

Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM

**Unit:**   160 acres, more or less, being the SE/4 of Section 33, Township 4 North, Range 12 East, Conecuh County, Alabama.

**Oil and Gas Leases**: Oil, Gas and Mineral Lease dated September 21, 2009, by and between Cedar Creek Land & Timber Inc., as Lessor, in favor of Sklar Exploration Company L.L.C., as Lessee, a memorandum of which is recorded in Book 2009, Page 4872, of the Conecuh Records

### CONECUH COUNTY, ALABAMA
### LITTLE CEDAR CREEK FIELD
### CRAFT-RALLS 5-10 #1 WELL

**Unit:**   160 acres, more or less, being the SE/4 of Section 5, Township 4 North, Range 13 East, Conecuh County, Alabama.

**Oil and Gas Leases**: Oil, Gas and Mineral Lease dated February 23, 2004, by and between Juanita J. Ralls, a/k/a Sarah J. Ralls, a widow, individually and the Grady Ralls Family Trust dated February 16, 1987, represented herein by Juanita J. Ralls, Trustee, as Lessors, in favor of Craft Exploration Company, LLC, as Lessee, recorded in Book 2004, Page 2280, of the Conecuh Records

Oil, Gas and Mineral Lease dated February 23, 2004, by and between Grady Lynn Ralls and wife, Willodean Ralls, as Lessors, in favor of Craft Exploration Company, LLC, as Lessee, recorded in Book 2004, Page 2275, of the Conecuh Records

### ESCAMBIA COUNTY, ALABAMA
### FISHPOND FIELD
### CEDAR CREEK LAND & TIMBER 10-5 #1 WELL

**Unit:**   160 acres, more or less, being the NW/4 of Section 10, Township 3 North, Range 12 East, Escambia County, Alabama.

**Oil and Gas Leases**:  Oil, Gas and Mineral Lease dated December 1, 2013, by and between Cedar Creek Land & Timber, Inc., as Lessor, in favor of Sklar Exploration Company L.L.C., as Lessee, a memorandum of which is recorded in Book 568, Page 806, of the Escambia Records

### ESCAMBIA COUNTY, ALABAMA
### FISHPOND FIELD
### CEDAR CREEK LAND & TIMBER 9-8 #1 WELL

**Unit:**   160 acres, more or less, being the NE/4 of Section 9, Township 3 North, Range 12 East, Escambia County, Alabama.

**Oil and Gas Leases**: Oil, Gas and Mineral Lease dated December 1, 2013, by and between Cedar Creek Land & Timber, Inc., as Lessor, in favor of Sklar Exploration Company L.L.C., as Lessee, a memorandum of which is recorded in Book 568, Page 806, of the Escambia Records

### ESCAMBIA COUNTY, ALABAMA
### CEDAR CREEK LAND & TIMBER 24-1 #1 WELL

2018 1370
Mortgage Book & Page
06-28-2018 10:45:31 AM

**Unit:** **4**0 acres, more or less, being the NE/1 of the NE/4 of Section 24, Township 3 North, Range 10 East, Escambia County, Alabama.

**Oil and Gas Leases**: Oil, Gas and Mineral Lease dated June 14, 2012, by and between Cedar Creek Land & Timber, Inc., as Lessor, in favor of Sklar Exploration Company L.L.C., as Lessee, a memorandum of which is recorded in Book 536, Page 166, of the Escambia Records

## ESCAMBIA COUNTY, ALABAMA
## CEDAR CREEK LAND & TIMBER 13-16 #1 WELL

**Unit:** **16**0 acres, more or less, being the SE/4 of Section 13, Township 3 North, Range 10 East, Escambia County, Alabama.

**Oil and Gas Leases**: Oil, Gas and Mineral Lease dated June 14, 2012, by and between Cedar Creek Land & Timber, Inc., as Lessor, in favor of Sklar Exploration Company L.L.C., as Lessee, a memorandum of which is recorded in Book 536, Page 166, of the Escambia Records

## ESCAMBIA COUNTY, ALABAMA
## HART 17-16 #1 WELL

**Unit:** **16**0 acres, more or less, being the SE/4 of Section 17, Township 3 North, Range 13 East, Escambia County, Alabama.

**Oil and Gas Leases**: Oil, Gas and Mineral Lease dated October 3, 2011, by and between Miles L. Hart, Jr., as Lessor, in favor of Fletcher Exploration, LLC, as Lessee, recorded in Book 527, Page 433, of the Escambia Records

Oil, Gas and Mineral Lease dated October 3, 2011, by and between Anna H. Whitehead, as Lessor, in favor of Fletcher Exploration, LLC, as Lessee, recorded in Book 527, Page 438, of the Escambia Records

Oil, Gas and Mineral Lease dated October 3, 2011, by and between Dannie L. Hart, as Lessor, in favor of Fletcher Exploration, LLC, as Lessee, recorded in Book 527, Page 443, of the Escambia Records

Oil, Gas and Mineral Lease dated October 3, 2011, by and between Valerie Jo Hart, as Lessor, in favor of Fletcher Exploration, LLC, as Lessee, recorded in Book 527, Page 448, of the Escambia Records

## CONECUH COUNTY, ALABAMA
## BROOKLYN FIELD
## CEDAR CREEK LAND & TIMBER 32-9 #1 WELL

**Unit:** **16**0 acres, more or less, being the SE/4 of Section 32, Township 4 North, Range 13 East, Conecuh County, Alabama.

**Oil and Gas Leases**: Oil, Gas and Mineral Lease dated November 10, 2006, by and between Edgar McCreary and wife, Anna Ruth F. McCreary, as Lessors, in favor of John C. Albury, as Lessee, recorded in Book 2007, Page 249, of the Conecuh Records

Oil, Gas and Mineral Lease dated March 20, 2006, by and between Margaret P. Thomasson, as Lessor, in favor of J. Bradley Jeffreys, as Lessee, recorded in Book 2006, Page 1263, of the Conecuh Records

2018   1371
Mortgage Book & Page
06-28-2018 10:45:31 AM

Oil, Gas and Mineral Lease dated June 24, 2010, by and between Alex W. Feagin, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2011, Page 3105, of the Conecuh Records

Oil, Gas and Mineral Lease dated August 15, 2011, by and between Robert T. Feagin, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2011, Page 4275, of the Conecuh Records

Oil, Gas and Mineral Lease dated March 9, 2011, by and between Stephen Jeter, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2011, Page 501, of the Conecuh Records

Oil, Gas and Mineral Lease dated March 9, 2011, by and between John Jeter, III, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2011, Page 566, of the Conecuh Records

Oil, Gas and Mineral Lease dated March 9, 2011, by and between Sally Jeter Hammond, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2011, Page 498, of the Conecuh Records

Oil, Gas and Mineral Lease dated March 9, 2011, by and between Juanita C. Waters, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2011, Page 47, of the Conecuh Records

Oil, Gas and Mineral Lease dated January 4, 2013, by and between Reo Kirkland, III Trust, by Wendy L. West and James Eric Coale as Trustees, as Lessors, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2012, Page 8014, of the Conecuh Records

Oil, Gas and Mineral Lease dated April 2, 2006, by and between David Edwin Logan and wife, Karen E. Logan, as Lessors, in favor of John C. Albury, as Lessee, recorded in Book 2006, Page 3566, of the Conecuh Records

Oil, Gas and Mineral Lease dated June 6, 2011, by and between Juanita Ralls, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2011, Page 3092, of the Conecuh Records

Oil, Gas and Mineral Lease dated March 28, 2011, by and between Allene B. Ward and James Earl Beverly, as Lessors, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2011, Page 56, of the Conecuh Records

Oil, Gas and Mineral Lease dated March 28, 2011, by and between Allene B. Ward, Sandra Beverly, Brandon K. Beverly, and Holly M. Beverly, as Lessors, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2011, Page 58, of the Conecuh Records

Oil, Gas and Mineral Lease dated March 28, 2011, by and between Sandra Beverly, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2013, Page 1447, of the Conecuh Records

Oil, Gas and Mineral Lease dated March 28, 2011, by and between Holly M. Beverly, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2013, Page 1445, of the Conecuh Records

Oil, Gas and Mineral Lease dated March 28, 2011, by and between Brandon K. Beverly, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2013, Page 1449, of the Conecuh Records

Oil, Gas and Mineral Lease dated February 7, 2011, by and between Richard Cobb and wife, Norma Cobb, as Lessors, in favor of J. Bradley Jeffreys, as Lessee, recorded in Book 2011, Page 1034, of the Conecuh Records

2018  1372
Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM

Oil, Gas and Mineral Lease dated September 19, 2012, by and between Jillian B. Pate, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2012, Page 5993, of the Conecuh Records

Oil, Gas and Mineral Lease dated September 19, 2012, by and between Joshua R. Pate, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2012, Page 5991, of the Conecuh Records

Oil, Gas and Mineral Lease dated June 17, 2011, by and between Helen Pate, as Trustee for Josh and Jill Pate, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2011, Page 5334, of the Conecuh Records

Oil, Gas and Mineral Lease dated August 24, 2012, by and between Brooklyn Volunteer Fire Department, Inc., as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2012, Page 5866, of the Conecuh Records

Oil, Gas and Mineral Lease dated August 24, 2012, by and between Wanda Sue Wallace, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2012, Page 5858, of the Conecuh Records

Oil, Gas and Mineral Lease dated August 24, 2012, by and between Janice Matthews, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2012, Page 5856, of the Conecuh Records

Oil, Gas and Mineral Lease dated September 10, 2012, by and between Ralls Properties, L.L.C., as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2012, Page 5862, of the Conecuh Records

Oil, Gas and Mineral Lease dated August 25, 2011, by and between Charles R. Tait, Jr., as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2012, Page 5866, of the Conecuh Records

Oil, Gas and Mineral Lease dated August 25, 2011, by and between Charles R. Tait, III, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2012, Page 5864, of the Conecuh Records

Oil, Gas and Mineral Lease dated August 25, 2011, by and between Charles R. Tait, Jr., as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2012, Page 5866, of the Conecuh Records

Oil, Gas and Mineral Lease dated August 25, 2011, by and between Vera Frances Tait, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2012, Page 6005, of the Conecuh Records

Oil, Gas and Mineral Lease dated September 14, 2012, by and between Betty Weeks Spurlock, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2012, Page 5999, of the Conecuh Records

Oil, Gas and Mineral Lease dated September 14, 2012, by and between Ray Weeks, Jr., as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2012, Page 6001, of the Conecuh Records

Oil, Gas and Mineral Lease dated September 6, 2012, by and between Brooklyn Baptist Church, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2012, Page 5988, of the Conecuh Records

Oil, Gas and Mineral Lease dated August 24, 2012, by and between Alex B. Pate, as Worshipful Master, Gary W. Pate as Senior Warden and John Potts as Junior Warden of Dean Loge Number 112 of Free and

2018  1373
Recorded in the Above
Mortgage  Book & Page
06-28-2018 10:45:31 AM

Accepted Masons, as Lessors, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2012, Page 5995, of the Conecuh Records

Oil, Gas and Mineral Lease dated September 24, 2012, by and between Mae Adele Tait Sharp, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2012, Page 6297, of the Conecuh Records

Oil, Gas and Mineral Lease dated October 3, 2012, by and between Alan Juel Lefler, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2012, Page 6341, of the Conecuh Records

Oil, Gas and Mineral Lease dated October 3, 2012, by and between Gerald Edwin Hill, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2012, Page 6337, of the Conecuh Records

Oil, Gas and Mineral Lease dated October 3, 2012, by and between Ginger McWaters, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2012, Page 6345, of the Conecuh Records

Oil, Gas and Mineral Lease dated October 3, 2012, by and between James Walls, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2012, Page 6439, of the Conecuh Records

Oil, Gas and Mineral Lease dated October 3, 2012, by and between Terry Walls, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2012, Page 6441, of the Conecuh Records

Oil, Gas and Mineral Lease dated October 3, 2012, by and between Sarah Allen Wilson, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2012, Page 6343, of the Conecuh Records

Oil, Gas and Mineral Lease dated October 3, 2012, by and between Brenda Wise, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2012, Page 6437, of the Conecuh Records

Oil, Gas and Mineral Lease dated October 3, 2012, by and between Patrick Garrett, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2012, Page 6339, of the Conecuh Records

Oil, Gas and Mineral Lease dated September 24, 2012, by and between Carolyn A. Feagin, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2012, Page 5997, of the Conecuh Records

Oil, Gas and Mineral Lease dated September 24, 2012, by and between Michael Brian Crookshank, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2012, Page 6003, of the Conecuh Records

Oil, Gas and Mineral Lease dated September 18, 2012, by and between Darrell Preston Brannon, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2012, Page 6435, of the Conecuh Records

Oil, Gas and Mineral Lease dated August 29, 2012, by and between Jean F. Watson, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2012, Page 6433, of the Conecuh Records

Oil, Gas and Mineral Lease dated January 11, 2013, by and between Robert M. Findley, Jr., as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2013, Page 904, of the Conecuh Records

Oil, Gas and Mineral Lease dated January 11, 2013, by and between Linda Michelle Beard, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2013, Page 902, of the Conecuh Records

2018  1374
Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM

Oil, Gas and Mineral Lease dated January 11, 2013, by and between Paul J. Findley, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2013, Page 1452, of the Conecuh Records

Oil, Gas and Mineral Lease dated January 11, 2013, by and between John Christopher Findley, as Lessor, in favor of Sklarco, L.L.C., as Lessee, recorded in Book 2013, Page 1009, of the Conecuh Records

CONECUH COUNTY, ALABAMA
PATE 3-9 #1 WELL

**Unit:**   160 acres, more or less, being the SW/4 of Section 3, Township 3 North, Range 13 E, Conecuh County, Alabama.

**Oil and Gas Leases:**  Oil Gas and Mineral Lease dated 06/05/2014, by and between Joel R. Pate, as Lessor, in favor of Sklarco, LLC, as Lessee, recorded on Book 2014 Page 842, of the Conecuh Records.

Oil Gas and Mineral Lease dated 05/30/2014, by and between Christ the King Catholic Church of Andalusia Alabama, as Lessor, in favor of Sklarco, LLC, as Lessee, recorded on Book 2014 Page 1457; Ratified in Book 2014 Page 6400, of the Conecuh Records

CONECUH COUNTY, ALABAMA
PATE 3-11 #1 WELL

**Unit:**   160 acres, more or less, being the SW/4 of Section 3, Township 3 North, Range 13 E, Conecuh County, Alabama.

**Oil and Gas Leases:**  Oil Gas and Mineral Lease dated 06/05/2014, by and between Joel R. Pate, as Lessor, in favor of Sklarco, LLC, as Lessee, recorded on Book 2014 Page 842, of the Conecuh Records.

Oil Gas and Mineral Lease dated 05/30/2014, by and between Christ the King Catholic Church of Andalusia Alabama, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2014 Page 1457; Ratified in Book 2014 Page 6400, of the Conecuh Records

CONECUH COUNTY, ALABAMA
FINDLEY 2-5 WELL

**Unit:**   160 acres, more or less, being the NW/4 of Section 2, Township 3 North, Range 13 East, Conecuh County, Alabama

**Oil and Gas Leases:**  Oil Gas and Mineral Lease dated 05/09/2015, by and between Cedar Creek Land and Timber Inc., as Lessor, and Sklarco, LLC, as Lessee, recorded on 06/29/2015 Book 2015 Page 3266, of the Conecuh Records

CONECUH COUNTY, ALABAMA
KENNEDY 36-12 #1 WELL

**Unit:**   160 acres, more or less, being the SW/4 of Section 36, Township 4 North, Range 12 East, Conecuh County, Alabama

2018   1375
Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM

**Oil and Gas Leases:** Oil Gas and Mineral Lease dated 03/13/2009, by and between Carolyn C. Kennedy, as Lessor, in favor of Sklarco, LLC, as Lessee, recorded on 04/02/2009, Book 2009, Page 1699, of the Conecuh Records.

Oil Gas and Mineral Lease dated 04/02/2009, by and between Robert E. Cary, as Lessor, in favor of Sklarco, LLC, as Lessee, recorded on 6/22/2009, Book 2009 Page 2885, of the Conecuh Records.

Oil Gas and Mineral Lease dated 04/02/2009, by and between Juanita Cary Waters, as Lessor, in favor of Sklarco, LLC, as Lessee, recorded on 6/22/2009, Book 2009 Page 2887, of the Conecuh Records.

Oil Gas and Mineral Lease dated 04/02/2009, by and between Jo Ann Cary Langham, as Lessor, in favor of Sklarco, LLC, as Lessee, recorded on 6/22/2009, Book 2009 Page 289, of the Conecuh Records.

Oil Gas and Mineral Lease dated 04/02/2009, by and between Alva Nann Cary Taylor, as Lessor, in favor of Sklarco, LLC, as Lessee, recorded on 6/29/2009, Book 2009 Page 2951, of the Conecuh Records.

Oil Gas and Mineral Lease dated 02/24/2011, by and between Fannie H. Robins, as Lessor, in favor of Sklarco, LLC, as Lessee, recorded on 03/07/2011, Book 2011 Page 82, of the Conecuh Records.

Oil Gas and Mineral Lease dated 03/14/2009, by and between Rene Cary, as Lessor, in favor of Sklarco, LLC, as Lessee, recorded on 05/01/2009, Book 2009 Page 2017, of the Conecuh Records

Oil Gas and Mineral Lease dated 03/14/2009, by and between W. T. Cary, Jr., as Lessor, in favor of Sklarco, LLC, as Lessee, recorded on 06/22/2009, Book 2009 Page 2881, of the Conecuh Records

Oil Gas and Mineral Lease dated 03/14/2009, by and between Joyce Wingard, as Lessor, in favor of Sklarco, LLC, as Lessee, recorded on 06/22/2009, Book 2009 Page 2883, of the Conecuh Records

Oil Gas and Mineral Lease dated 03/14/2009, by and between Margaret Ann Skiles, as Lessor, in favor of Sklarco, LLC, as Lessee, recorded on 06/22/2009, Book 2009 Page 2895, of the Conecuh Records

Oil Gas and Mineral Lease dated 02/24/2011, by and between Alice Smith Cary, represented by Cewilla Garmon as Agent and Attonrey-In-Fact, as Lessor, in favor of Sklarco, LLC, as Lessee, recorded on 03/07/2011, Book 2011 Page 820, of the Conecuh Records

Oil Gas and Mineral Lease dated 04/30/2013, by and between Tisdale Natural Resources, LLC, as Lessor, in favor of Sklarco, LLC, as Lessee, recorded on 05/28/2013, Book 2013, Page 2977, of the Conecuh Records

CONECUH COUNTY, ALABAMA
CRAFT-HAMITER 20-11 #1 WELL

**Unit:** 160 acres, more or less, being the SW/4 of Section 20, Township 4 North, Range 13 East, Conecuh County, Alabama

**Oil and Gas Leases:** Oil, Gas and Mineral Lease dated August 10, 2013, by and between John Greel Ralls, Sr. and Lesa Ellen Ralls Johnson, as Lessors, in favor of Sklarco, LLC, as Lessee, recorded in Book 2013, Page 3929, of the Conecuh Records

Memorandum of Oil, Gas and Mineral Lease with an effective date of March 1, 2011, by and between Black Stone Natural Resources I, L.P., as Lessor, in favor of Sklarco, LLC, as Lessee, recorded in Book 2011, Page 2110, of the Conecuh Records

Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM

ESCMABIA COUNTY, ALABAMA
CEDAR CREEK LAND & TIMBER 18-16 #1

**Unit:**   160 acres, more or less, being the SE/4 of Section 18, Township 3 North, Range 11 East, Escambia County, Alabama

**Oil and Gas Leases:**  Oil Gas and Mineral Lease dated 06/29/2016, by and between Cedar Creek Land & Timber, Inc., as Lessor, in favor of Sklar Exploration Company, LLC, as Lessee, Memorandum recorded on 07/28/2016, Book 620, Page 812, of Escambia Records, and on 07/21/2016, Book 2016, Page 2192 of the Conecuh Records

ESCMABIA COUNTY, ALABAMA
CEDAR CREEK LAND & TIMBER 21-10 #1

**Unit:**   160 acres, more or less, being the SE/4 of Section 21, Township 3 North, Range 11 East, Escambia County, Alabama

**Oil and Gas Leases:**  Oil Gas and Mineral Lease dated 06/29/2016, by and between Cedar Creek Land & Timber, Inc., as Lessor, in favor of Sklar Exploration Company, LLC, as Lessee, Memorandum recorded on 07/28/2016, Book 620, Page 812, of Escambia Records, and on 07/21/2016, Book 2016, Page 2192 of the Conecuh Records

The Following Described Units as Established by the State Oil and Gas Board of Alabama

FISHPOND OIL UNIT

**Unitized Formation:**   FISHPOND OIL UNIT, as approved in Order No. 2015-51 issued by the State Oil and Gas Board of Alabama on June 25, 2015

**Unitized Area:** Township 3 North, Range 12 East, Escambia County, Alabama:

Section 9:   Northeast Quarter and the North Half of the Southeast Quarter

Section 10:   Northwest Quarter, the North Half of the Southwest Quarter, the Northwest Quarter of the Southeast Quarter, and the Southwest Quarter of the Northeast Quarter

LITTLE CEDAR CREEK OIL UNIT 1, CONECUH COUNTY, ALABAMA

**Unitized Formation:**   LITTLE CEDAR CREEK OIL UNIT 1, as approved in Order No. 2004-140, and enlarged by Order Nos. 2006-79 and 2014-70, all as issued by the   State Oil and Gas Board of Alabama

Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM

LITTLE CEDAR CREEK OIL UNIT II

**Unitized Formation:**   LITTLE CEDAR CREEK OIL UNIT II, as approved in Order Nos. 2014-23 and 2014-43 issued by the     State Oil and Gas Board of Alabama

**Unitized Area:** Township 5 North, Range 13 East, Conecuh County, Alabama

Section 32:     Southeast Quarter of Southeast Quarter of Southeast Quarter and South Half of Southwest Quarter of Southeast Quarter of Southeast Quarter

Section 33:     South Half

Township 4 North, Range 13 East, Conecuh County, Alabama

Section 4:     North Half and Southwest Quarter and West Half of Northwest Quarter of Southeast Quarter

Section 5:     All

Section 7:     Northeast Quarter

Section 8:     North Half and Southwest Quarter and four acre square in the Northwest Corner of Southeast Quarter

Section 9:     North Half of Northwest Quarter of Northwest Quarter

Section 17:     Northwest Quarter of Northwest Quarter of Northwest Quarter


LITTLE CEDAR CREEK OIL UNIT IV

**Unitized Formation:**   LITTLE CEDAR CREEK OIL UNIT IV, as approved in Order No. 2016-55 issued by the State Oil and Gas Board of Alabama

**Unitized Area:** Township 5 North, Range 13 East, Conecuh County, Alabama

Section 27: Northeast Quarter, Northwest Quarter, Southwest Quarter, North 660 feet of Northwest Quarter of Southeast Quarter, and all that part of the following tract lying within the Northwest Quarter of the Southeast Quarter of Section 27: Point of commencement is a concrete marker set by judicial litigation as the Southwest corner of the Northeast Quarter of the Southwest Quarter of Section Twenty-seven (27). From Point of Commencement run North 1 degree 01 minutes 36 seconds East for 428.45 feet to a judicial concrete marker. Then South 89 degrees 31 minutes 33 seconds East along fence for 1373.44 feet to an iron on the East right-of-way of Conecuh County Highway 43, the Point of Beginning. From Point of Beginning run along right-of-way in a curve having a central angle of 8 degrees 32 minutes 55 seconds and radius of 2000.16, for 298.43 feet to an iron. Then South 89 degrees 31 minutes 33 seconds East for 411.45 feet to an iron. Then South 28 degrees 46 minutes 21 seconds East for

20418    1578
Recorded in the Above
Mortgage Book & Page
06-28-2018 10:45:31 AM
Rosene Booker, Probate Judge
Crenshaw County, Alabama

90.00 feet to a spring leaf. Continue South 28 degrees 46 minutes 21 seconds East for 210.00 feet to an iron. Then North 89 degrees 31 minutes 33 seconds West for 415.27 feet to the Point of Beginning.

Section 28:  Southeast Quarter, East half of East half of Southwest Quarter, and South Half of Northeast Quarter

Section 33:  Northeast Quarter and East half of East half of Northwest Quarter

Section 34: Northwest Quarter of Northwest Quarter, West Half of

Northeast Quarter of Northwest Quarter, and North Half of Southwest Quarter of Northwest Quarter