IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT COLORADO

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **SKLAR EXPLORATION COMPANY, LLC** and **SKLARCO, LLC** | ) ) | Case No. 20-12377-EEB |
| | ) | Chapter 11 |
| Debtors. | ) | |
| | ) ) ) ) | |
| **SKLARCO, LLC** | ) | Case No. 20-12380-EEB |
| | ) ) ) | Chapter 11 |

**REPLY TO DEBTORS' OBJECTION TO MOTION TO APPOINT CHAPTER 11 TRUSTEE PURSUANT TO 11 U.S.C. § 1104, OR IN THE ALTERNATIVE, CONVERT TO CHAPTER 7 PURSUANT TO 11 U.S.C. § 1112(b) BY TAUBER EXPLORATION & PRODUCTION COMPANY; CTM 2005, LTD; PICKENS FINANCIAL GROUP, LLC; I & L MISS I, LP; MER ENERGY, LTD; MR OIL & GAS, LLC; TARA RUDMAN REVOCABLE TRUST; FEATHER RIVER 75, LLC; RUDMAN FAMILY TRUST; AND THE RUDMAN PARTNERSHIP**
**[Docket No. 308, 376]**

Tauber Exploration & Production Company, CTM 2005, Ltd., Pickens Financial Group, LLC, I & L Miss I, LP, MER Energy, Ltd, MR Oil & Gas, LLC, Tara Rudman Revocable Trust, Feather River 75, LLC, Rudman Family Trust, and The Rudman Partnership, (collectively the "Tauber Group Non-Operators"), through undersigned counsel, hereby file their Reply to Debtors' Objection [Docket No. 376] to the Motion to Appoint a Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104, or in the Alternative, Convert the above-captioned bankruptcy cases to liquidation proceedings under Chapter 7 pursuant to 11 U.S.C. § 1112(b) [Docket No. 308] ("Motion"), and in support thereof, state as follows:

1

1. As their first legal argument, Debtors contend that the Tauber Group Non-Operators lack standing to request appointment of a Trustee or seek conversion because the Tauber Group Non-Operators have no claims against Sklarco, LLC ("Sklarco"). *Objection to Motion to Appoint Chapter 11 Trustee or, In the Alternative, Convert to Chapter* 7, ¶ 43 [Docket No. 376] ("Objection"). Yet the Tauber Group Non-Operators are undeniably parties to numerous participation agreements, JOA's and Unit Agreements (among other contracts) with Sklarco.[1] And Sklarco has breached virtually all of them by (a) failing to pay its share of expenses under JOA's; (b) failing to pay its share of cash call advances; (c) breaching the Area of Mutual Interest ("AMI") provisions[2] of numerous JOA's in the Escambia Prospect area through its undisclosed interest in a straw entity called Maevlo Production, LP (and various affiliates), which have acquired oil and gas interests in the AMI's without offering the JOA participants the right to acquire a proportionate

---

[1] *See*, *e.g.*, Participation Agreement Escambia Prospect dated November 1, 2006 (Tauber Exhibit TM-TAU-3); Escambia Prospect Operating Agreement as amended incorporated in Recording Supplement to Operating Agreement and Financing Statement (Tauber Exhibit TM-TAU-6); Participation Agreement Castleberry Prospect dated November 7, 2012 (Tauber Exhibit TM-TAU-7). The participation agreements designated as Tauber Exhibits TM-TAU 3 and 7 are JOA's to which Sklarco and several members of the Tauber Group are parties as non-operating working interest owners, including Pickens Financial Group, LLC, The Rudman Partnership, Tauber Exploration & Production Company, and Tara Rudman Revocable Trust). Liability provisions applicable to Sklarco as a non-operator include: Article III.B ("all costs and liabilities incurred in operations . . . shall be borne and paid . . . by the parties as their interests are set forth in Exhibit 'A'"; Article VI ("The entire cost and risk of conducting such operations shall be borne by the Consenting Parties in the proportions they have elected to bear"); Article VII.A ("The liability of the parties shall be several, not joint or collective. Each party shall be responsible only for its obligations, and shall be responsible only for its proportionate share of the costs of developing and operating the Contract Area.").

[2] *See* Tauber Exhibit TM-TAU-3, Article XV, paragraph M, pp. 14-4, 5 of Other Provisions ("During the term of this AMI, if any party hereto, including related persons and entities ('Acquiring Party') directly or indirectly acquires any oil and gas lease or any oil and gas interest covering lands lying within this AMI, the Acquiring Party shall promptly advise the other parties ('Offerees') of such acquisition. In such event, each Offeree shall have the right to acquire its proportionate interest in such oil and gas lease and/or oil and gas interest in accordance with the other provisions of this AMI."). The same provision is found in Tauber Exhibit TM-TAU-7, Article XV, paragraph K, pp. 14-3, 4.

share of the newly acquired interests as required by the AMI's; and (d) siphoning money from the Sklarco and Sklar Exploration Company, LLC ("SEC") revenue account to pay Maevlo entities.

2. In asserting that the Tauber Group Non-Operators lack standing—even though admitting that they are co-investors and parties to common agreements with Sklarco—Debtors suggest that the Tauber Group Non-Operators have suffered no injury or threat of injury to a legally protected interest arising from Sklarco's conduct or misconduct and that any remedy for breach of Sklarco's obligations is available only to its sister company, SEC, as operator for the prospects. *See* Objection ¶ 47. To establish standing a party must first "have suffered an 'injury in fact'--an invasion of a legally protected interest which is (a) 'concrete and particularized' and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *Whitmore v. Arkansas,* 495 U.S. 149, 155 (1990) (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 102 (1983)). Second, there must be a causal connection between the injury claimed and the conduct complained of--the injury has to be "fairly . . . traceable to the challenged action of defendant[s], and not . . . the result [of] the independent action of some third party not before the court." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992) (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976)). Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (quoting *Simon,* 426 U.S. at 38, 43.).

3. The facts demonstrate that the Tauber Group of Non-Operators have (1) legally protected interests under their Participation Agreements and JOA's (a) that have suffered concrete and particularized injury; (b) that is actual or imminent and not conjectural or hypothetical; (2) there is a causal connection between the injuries claimed and the conduct complained of and not the result of independent action of a third party not before the court[3]; and it is likely that the injuries

---

[3] Sklarco admits Maevlo is a related party.

suffered by Sklarco's breaches of the Participation Agreements and JOA's will be redressed by a favorable decision. Accordingly, the Tauber Group of Non-Operators have standing to seek the relief requested in the Motion.

4. Moreover, Debtors' Objection flatly ignores the interconnected nature of activities and conduct of both Debtors, which, in concert have clearly resulted in the concrete, redressable injury required for standing by the Tauber Group Non-Operators. For example, each of the non-operating working interests is obligated to pay its share of expense for operations. Under the Escambia Prospect Operating Agreement, if a party does not pay its obligations, the other non-operators "shall, upon request by Operator, pay the unpaid amount in the proportion that the interest of each such party bears to the interest of all such parties." Escambia Prospect Operating Agreement, Art. VII B. Tauber Exhibit TM-TAU-3. Upon paying their share of the unpaid amount, each of the other working interest owners are "entitled to recover the amount it paid plus five hundred percent (500%) of that amount out of the proceeds from the sale of the defaulting party's share of oil and for gas, and, to secure payment thereof, be subrogated to the security rights" of the Operator. *Id.*

5. Here it is undisputed that Sklarco failed to pay JIBs, and, rather than notify other working interests of such default, which would trigger clear contractual remedies against Sklarco for the other working interest owners, SEC neither notified the working interest owners of the circumstances nor paid the deficient JIBs. Contemporaneously, Sklarco was transferring third party revenues to SEC (which was not paying the JIB creditors) for distribution to insiders, which ultimately led to these proceedings.

6. Further, both Sklarco and SEC, acting in concert, were very careful to omit material information from their respective Schedules and Statements of Financial Affairs about Maevlo. Although Sklarco's Schedule G listed an Amended and Restated Partnership Agreement of Maevlo Production, LP, there is no other mention in the Sklarco Schedules of its owning any partnership interest in Maevlo (or interest in other Maevlo affiliates). Sklarco Schedule G [Docket No. 360], Tauber Exhibit TM-TAU-43. Yet, in fact, Sklarco purchased a 17.83% limited partnership interest in Maevlo Production, L.P.,[4] for $500,000 in late 2019 (coincidentally at the same time SEC was issuing a flurry of cash call notices to the WIO's) and the Debtors were unable to pay their debts as they became due. On January 6, 2020, SEC paid $210,000.00 to Maevlo Smackover, LLC, but that transfer is not listed in either Debtor's SOFA as a payment to an insider. *See* SEC Statement of Financial Affairs at p. 21 [Docket No. 324], Tauber Exhibit TM-TAU-42.

7. The Maevlo entities[5] were created to acquire interests in the very prospect area created by Debtors as a means of avoiding the AMI provisions of the relevant AMI agreements in derogation of the rights of Sklarco's co-working interest owners for whom SEC served as the operator. There is no plausible argument that the Maevlo entities were formed for some benign purpose: they were formed to serve as an "escape pod" for Howard Sklar to shield newly acquired assets from the Debtors' creditors. Equally alarming is the apparent use of geological and other confidential information, paid for by the participating working interest owners, in violation of the

---

[4] Amended and Restated Agreement of Limited Partnership of Maevlo Production, L.P., Tauber Exhibit TM-TAU-51.

[5] *See* Articles of Organization of Maevlo Smackover-ORRI, LLC, Tauber Exhibit TM-TAU-52; Articles of Organization of Maevlo Smackover, LLC, Tauber Exhibit TM-TAU-53; Articles of Organization of Maevlo PRB 1, LLC, Tauber Exhibit TM-TAU-54; Articles of Organization of Maevlo Land Services, LLC, Tauber Exhibit TM-TAU-55; Letter Agreement between SEC and Maevlo Company, LLC dated June 24, 2019, Tauber Exhibit TM-TAU-56.

confidentiality clause in Section 3.3 of the Escambia Participation Agreement,[6] the form of which is substantially the same as all of the other participation agreements. That confidentiality provision states as follows:

> The Parties agree to keep confidential and not disclose any information about this Prospect, not already disclosed or of public record, to third parties for so long as this Agreement is in effect, except that any Party may disclose information about the Prospect to bona fide third party prospective purchasers of that Party's working interest in the Prospect.

8. Another egregious act of continuing concealment and non-disclosure by Debtors arises from the Agency Services Agreement. *See* Tauber Exhibits TM-TAU-39, 40. This Agreement between Debtors, the trusts and the Estate of Miriam Mandel Sklar was not listed in the original Schedule G as an executory contract, nor did the SOFA of either Debtor disclose what the Agency Services Agreement unambiguously provides: that Sklarco holds title to oil and gas properties for the benefit of the Howard Trust, the Alan Trust, and the Jacob Trust (which collectively received over $2.8 million from the Debtors in the year prior to the Petition Date), and the Estate of Miriam Mandel Sklar. Debtors' counsel begrudgingly disclosed the Agency Services Agreement in the Amended Sklarco Schedule G only after the undersigned counsel called their hand.

9. Yet astonishingly, Debtors now admit in their Objection that the Debtors <u>do</u> hold money and property owned by the Trusts:

> <u>In addition, Sklarco was also entitled to receive the revenue that was allocable to the Howard Trust, Jacob Sklar Trust and Alan Sklar Trust with respect to the actual WIs that such entities own, and such funds were frequently allowed to be held by SEC for operations. In essence, SEC had access to funds owned by Sklarco, the Howard Trust, the Jacob Trust and the Alan Trust to pay its expenses which included the expenses for which cash call advances were requested.</u>

---

[6] Tauber Exhibit TM-TAU-3.

Objection ¶ 26 [Docket No. 376] (emphasis added). If Sklarco or SEC holds oil and gas related property, working interests, or revenues for the trusts, that fact should have been disclosed in the SOFA's for each Debtor in answer to question 21. But instead, only interests of the trusts in various entities that are unrelated to any oil and gas interests or proceeds are listed. Debtors' continuing concealment of matters that should clearly have been disclosed at the outset in the Schedules and SOFA's can no longer be tolerated and supports the appointment of a disinterested Chapter 11 Trustee to ferret out the truth about the Debtors' assets, liabilities, and financial affairs.

10. The admissions in paragraph 26 of the Objection also contradict a later claim in paragraphs 51 and 52 that the two Debtors are <u>not</u> "intertwined" and that the two estates "could easily be separated and maintained entirely separately on a post-petition basis." But this incongruous proposition flies in the face of the admission that not only are the funds and of the two estates being commingled, but are also combined with those of the trusts. Moreover, the 2018 audited financial statements disclose the reality that Debtors have chosen to conceal from their Schedules and SOFA's:

> <u>Principles of Consolidation</u>
>
> The accompanying combined and consolidated financial statements include the accounts of Sklar Exploration Company, LLC; Sklarco, LLC; Sklar Transport Company, LLC; Howard Grantor Trust; Jacob Grantor Trust; and Alan Grantor Trust, <u>which collectively operate as the Sklar Exploration Company, LLC</u>. All intercompany accounts and transactions have been eliminated in consolidation.

SEC Combined and Consolidated Financial Statements and Independent Auditors' Report, December 31, 2018 and 2017 at 8 (emphasis added), Tauber Exhibit TM-TAU-49 ("SEC Audit"). This is about as intertwined as can be imagined and would support substantive consolidation of the estates of the Debtors and the Howard Trust, Alan Trust, Jacob Trust, and the Estate of Miriam Sklar. *See Rodriguez v. Four Dominion Drive, LLC (In re Boyd)*, 2012 Bankr. LEXIS 4968, 2012 WL

5199141, at *5, 13 (Bankr. W.D. Tex. Oct. 22, 2012) ("Even among debtors and non-debtors, substantive consolidation is appropriate in circumstances where the facts warranted it for the sake of equity. 2011 Bankr. LEXIS 555, 2011 WL 722384, at *11; *see also, e.g., In re Permian Producers Drilling, Inc.*, 263 B.R. 510, 515—17 (W.D. Tex. 2000) (discussing substantive consolidation between a debtor and alter ego corporations); *In re E'Lite Eyewear Holding, Inc.*, 2009 Bankr. LEXIS 297, 2009 WL 349832 at *3 (Bankr. E.D.Tex. 2009) (discussing how the courts are divided on whether to allow consolidation of a debtor with a nondebtor, but determining that it is allowed, just with more caution than with a *substantive consolidation* between two debtors). The main rationale behind applying substantive consolidation to certain cases is to promote equity. *In re Owens Corning,* 419 F.3d 195, 216 (3d Cir. 2005) (concluding that 'substantive consolidation at its core is equity'").

11. The SEC 2018 audited financial statements prove that the estates (and the trusts) should be substantively consolidated and also debunk Howard Sklar's testimony at the cash collateral hearing that the companies were in great financial condition until Covid 19 and the price war between Russia and Saudi Arabia:

> As of December 31, 2018, the Company had a <u>working capital deficit of $9.1 million</u>. The Company intends to fund this working capital deficit through a continued emphasis on positive EBITDAX and has the option to market certain of its oil and gas properties and other investments to generate cash flow.

SEC Audit at 8. Contrary to Howard Sklar's story, over a year prior to the pandemic and the precipitous decline in oil prices, the auditors reported that Debtors' current assets were $9.1 million less than their current liabilities! The handwriting was on the wall even before 2019.

12. The SEC Audit also discloses monthly payments from two of the trusts:

> The Company charges the Judy Trust FBO Maren Silberstein a monthly fee of $15,000 for management services related to oil and gas assets owned by the trust. Judy Sklar Silberstein is the deceased sister of Howard Sklar. The Company charges the Succession of Miriam

8

>Mandel Sklar a monthly fee of $30,000 for management services related to oil and gas assets owned by the trust.

*Id.* at 23. There is no indication in any of Debtors' filings, including the cash collateral budgets, that fees of $45,000 per month are being charged or received by Debtors.

13. Another pattern of behavior that suggests that a CRO is not an adequate remedy is the apparent termination of three key employees in 2018: David Barlow, COO; Chris Farrell, CFO; and Laura Medlin, an officer in Human Resources and accounting. Were these officers dismissed in 2018 because they disagreed with Howard Sklar? Their termination coincides with the negative working capital deficit as of the end of 2018, suggesting that the terminated officers may have been let go because they dared utter truths that Howard Sklar would not listen to or tolerate.

14. All of the foregoing facts and circumstances, together with those recited in the Motion, lead inexorably to the conclusion that half measures are simply not enough. Retaining a CRO is a band aid that will not solve any of the problems endemic to this case. The truth of the matter is that working interest owners see no benefit to the continued operation of SEC and do not want it to be operator of any of the relevant prospects. Sklarco's assets (and those of the Howard Trust, Alan Trust, Jacob Trust and the Estate of Miriam Mandel Sklar) need to be liquidated in an orderly manner and sold to satisfy the claims of creditors in this case. Avoidance actions need to be filed immediately to recover transfers of money and property to the trusts and Estate. The sad truth is that Howard Sklar has ruined the legacy and reputation of his father and grandfather and must accept the fact that neither he and his remaining officers, nor the proposed CRO, are capable of executing the actions necessary to protect the creditors and the estates of these Debtors.

WHEREFORE, the Tauber Group Non-Operators respectfully request that this Court enter an Order: (a) authorizing appointment of a Chapter 11 trustee in the above-captioned cases pursuant to 11 U.S.C. § 1104(a), or alternatively converting the cases to Chapter 7 liquidation cases pursuant

9

to 11 U.S.C. § 1112(b); (b) ordering the United States Trustee to seek approval of such appointment from this Court, pursuant to 11 U.S.C. § 1104(d) and FED. R. BANKR. P. 2007; (c) ordering the Debtors, and any other individual or entity in possession of the Debtors' documents, records, electronically stored information, and property, to immediately turn over any and all such assets and information of the estate in their possession or control as directed by the Chapter 11 trustee or Chapter 7 trustee; and (c) grant such other and further relief as this Court deems just and proper.

Dated this 10th day of June, 2020

    Respectfully submitted,

    **Maynes, Bradford, Shipps & Sheftel, LLP**

    */s/ Thomas H. Shipps*
    */s/ Shay L. Denning*
    Thomas H. Shipps
    Shay L. Denning
    Maynes, Bradford, Shipps & Sheftel, LLP
    835 E. Second Ave., Suite 123
    Durango, CO  81301
    Telephone: (970) 247-1755
    Cell: (970) 749-1479; (970) 946-0846
    Facsimile: (970) 247-8827
    Email: tshipps@mbssllp.com;
        sdenning@mbssllp.com

    and

    */s/ Barnet B. Skelton, Jr.*
    Barnet B. Skelton, Jr.
    815 Walker, Suite 1502
    Houston, TX  77002
    Telephone: (713) 659-8761
    Cell: (713) 516-7450
    Facsimile: (713)659-8764
    Email: barnetbjr@msn.com

    *Counsel to the Tauber Group of Non-Operators*

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that, on June 10, 2020, the foregoing instrument was electronically filed and served via CM/ECF pursuant to L.B.R. 9036-1. All attorneys and parties identified with the Court for electronic service on the record in this case were served by electronic service in accordance with the CM/ECF system on the date of filing.

                                                  /s/ *Kate Potemkin*
                                                  Kate Potemkin