UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC | ) | |
| EIN: 72-1417930 | ) | Chapter 11 |
| | ) | |
|   Debtor. | ) | |
| | ) | |
| | ) | Case No. 20-12380-EEB |
| SKLARCO, LLC | ) | |
| EIN: 72-1425432 | ) | Chapter 11 |
|   Debtor. | ) | |

**RESPONSE TO SECOND SUPPLEMENTAL OBJECTION OF TAUBER GROUP TO MOTION FOR APPROVAL OF FINAL CASH COLLATERAL ORDER**

The Debtors and Debtors in Possession, Sklar Exploration Company, LLC ("SEC") and Sklarco, LLC ("Sklarco" and together "Debtors"), by and through their attorneys, Kutner Brinen, P.C., state their response to the Second Supplemental Objection of the Tauber Group to the Motion for Approval of Final Cash Collateral Order (Docket No. 408) as follows:

1. On May 18, 2020, following a two-day evidentiary hearing on the Debtors' use of cash collateral for an interim period that extended through the end of May, the Court entered the Third Interim Order Authorizing Use of Cash Collateral ("Third Cash Collateral Order").

2. At the time that the Third Cash Collateral Order was entered, it was made clear to all parties present at the hearing that the Debtors were in the process of negotiating a final cash collateral order with the Debtors' prime lender, East West Bank ("Bank"), who currently holds a claim secured by assets of SEC and Sklarco for approximately $22,350,000.

3. During the hearing on the Debtors' interim use of cash collateral, the Tauber Group asserted an interest in the Debtors' funds, not based on an alleged lien, but rather on account of the revenue due to the Tauber Group for their interests in the wells operated by SEC. Indeed, no evidence was presented by the Tauber Group regarding an alleged lien on the Debtors' funds.

4. Following the entry of the Third Cash Collateral Order, the Debtors, Official Committee of Unsecured Creditors ("Committee"), and the Bank reached an agreement to a form of a final cash collateral order, approval of which is currently pending before the Court.

5. To accommodate the notice period required for the final cash collateral order and the anticipated hearing that would be required for the final cash collateral order while maintaining business operations, the Debtors negotiated an extension of the Third Cash Collateral Order.

6. In negotiating the extension of the use of cash collateral, the Debtors' intention was to ensure that the same protections approved by the Bankruptcy Court were carried forward for the benefit of all parties with an interest in cash collateral, and to obtain the consent of the party who had established an uncontested interest in cash collateral at the prior hearing.

7. Tauber now raises their alleged lien for the first time for no other purpose than the continue to attempt to shut down SEC operations and raise new and false allegations against the Debtors.

8. As set forth in the Bank's Statement of Position with Respect to Final Cash Collateral Order and Objections Thereto (Docket No. 413), the Bank's perfected interest in the Debtors' accounts takes priority over the alleged lien in the mineral interests. To date, the Tauber Group has failed to establish an interest in SEC's accounts beyond the revenue received by SEC on a post-petition basis, payment of which was subsequently made to the Tauber Group. As established by the Debtors at the hearing on the use of cash collateral, SEC is maintaining all revenue in a separate account, and is not using any revenues attributed to any non-insider interest holder.

9. Accordingly, because the Tauber Group did not establish an interest in the funds SEC is using on an ongoing basis, the Debtors did not believe that consent of the Tauber Group was necessary to extend the Third Cash Collateral Order.

10. The Tauber Group further uses their Second Supplemental Objection to Motion for Approval of Final Cash Collateral Order to assert new false claims against the Debtors by asserting that SEC has "surreptitiously acquir[ed] interests in royalties and overriding royalties through the use of a straw entity called 'Maevlo Production'" in the Escambia Prospect in which the Tauber Group holds a working interest, and has violated the Joint Operating Agreement by failing to offer the opportunity to the other working interest holders in the Escambia Prospect.

11. This new claim, raised for the first time within days of the hearing on the Tauber Group's Motion to Appoint a Trustee, is patently false.

12. Upon information and belief, Maevlo Production, LLC ("Maevlo") was formed in or around July 2019 by Matthew Montgomery. Neither SEC nor Sklarco holds an interest in

Maevlo, and the Debtors anticipate rejecting its contracts with Maevlo.

13. The Debtors do not dispute that they have participated with Maevlo for the acquisition of certain royalty interests nationwide pre-petition.

14. However, at no point has Maevlo Production purchased interests subject to the Escambia Prospect Area of Mutual Interest ("AMI")[1]. Given that no purchases have been made that are subject to the Escambia Prospect AMI, the Debtors are not obligated extend an invitation to participate in its joint venture with Maevlo.

15. It is a **blatantly false** accusation for the Tauber Group to claim that SEC is depriving working interest holders of any opportunity to participate in its joint venture with Maevlo Production. This argument is intended solely to distract from primary issues at bar, and should be disregarded as such.

WHEREFORE, the Debtors pray that the Court an Order approving the Final Cash Collateral Order, and for such further and additional relief as to the Court may appear proper.

DATED: June 11, 2020

Respectfully submitted,

By: /s/ Keri L. Riley
Lee M. Kutner, # 10966
Keri L. Riley, #47605
**KUTNER BRINEN, P.C.**
1660 Lincoln Street, Suite 1850
Denver, CO 80264
Telephone: (303) 832-2400
E-mail: klr@kutnerlaw.com

---

[1] The current Escambia Prospect AMI is limited to those lands covered by the leases and interests subject to the Escambia Prospect JOA. A prior AMI that encompassed other lands and leases within the AMI area described and outlined in the JOA expired in 2013.