UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC | ) | |
| EIN: 72-1417930 | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| ———————————————— | ) | Case No. 20-12380-EEB |
| SKLARCO, LLC | ) | |
| EIN:  72-1425432 | ) | Chapter 11 |
| Debtor. | ) | |

**STATUS REPORT ON MOTIONS SET FOR HEARING ON JUNE 11, 2020**

The Debtors, Sklar Exploration Company, LLC ("SEC") and Sklarco, LLC ("Sklarco" and together, "Debtors"), state their status report on the Motions currently pending before the Court and set for hearing on June 11, 2020, as follows:

1.      On May 21, 2020, the Debtors filed their *Motion for Entry of Order Authorizing Debtors' Employment of CR3 Partners as Chief Restructuring Officer* ("CRO Motion") (Docket No. 341).  On May 22, 2020, the Debtors filed their *Motion for Approval of Final Cash Collateral Order* (Docket No. 350) ("Cash Collateral Motion");  and *Motion to Approve Lending Agreement and Authority to Incur Debt on an Administrative, Unsecured Basis* ("Lending Motion") (Docket No. 346).

2.      A supplement to the CRO Motion was filed by the Debtors on June 3, addressing the terms of compensation to be paid to CR3 upon approval.

3.      The Debtors have been working diligently with the parties who filed objections to the CRO Motion, Cash Collateral Motion, and Lending Motion, as well as CR3 Partners, East West Bank ("Bank"), and the Official Committee of Unsecured Creditors ("Committee").

4.      Objections to the CRO Motion were filed by:

a.   The United States Trustee (Docket No. 355);

b.   Pruet Oil Company and Pruet Production Co. (Docket No. 358);

c.   Fant Energy Limited (Docket No. 369);

d.   Lucas Petroleum Group, Inc. (Docket No. 370);

     e.   JF Howell Interests (Docket No. 371);

     f.   The Kudzu Parties (Docket No. 373);

     g.   The Strago Group (Docket No. 374); and

     h.   The Tauber Group (Docket No. 375).

5.     The Debtors have agreed to a revised form of Order for the CRO Motion, which is attached hereto as Exhibit A.  The revised Order resolves the Limited Objection filed by the United States Trustee, the Limited Objection filed by Fant Energy Limited, and resulted in the withdrawal of the Objection filed by Pruet Oil Company and Pruet Production Company.

6.     The Debtors assert that the revised form of Order also resolve portions of the objections filed by the Lucas Petroleum Group, the Strago Group, and the Tauber Group, but has not received confirmation from those parties after circulating the revised form of Order.

7.     The Debtors have further agreed to revisions to the revised form of Order for the Lending Motion in consultation with the Committee, the Bank, and certain working interest holders. A revised form of Order for the Lending Motion is attached hereto as Exhibit B.

8.     Objections to the Cash Collateral Motion were filed by:

     a.   Barbara Lawrence and the Estate of Pamela Page (Docket No. 399);

     b.   The Anderson Group (Docket No. 406); and

     c.   The Tauber Group (Docket No. 408).

9.     The Debtors have resolved the Objection filed by Barbara Lawrence and the Estate of Pamela Page through Stipulation, which will be filed ahead of the hearing on June 11, 2020.

10.     The Debtors have further agreed to additional changes to the Final Cash Collateral Order in consultation with the Anderson Group, the Bank, and the Committee that fully resolves the Anderson Group's Objection.  The revised form of Order is attached hereto as Exhibit C.

DATED: June 11, 2020         Respectfully submitted,

     By:___*/s/  Keri L. Riley*_____
     Lee M. Kutner, # 10966
     Keri L. Riley, #47605
     **KUTNER BRINEN, P.C.**
     1660 Lincoln Street, Suite 1850
     Denver, CO 80264
     Telephone:  (303) 832-2400
     E-mail: klr@kutnerlaw.com

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

<span style="color:red">Exhibit A</span>

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC | ) | |
| EIN: 72-1417930 | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | Case No. 20-12380-EEB |
| SKLARCO, LLC | ) | |
| EIN: 72-1425432 | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

### ORDER GRANTING DEBTORS' MOTION FOR ENTRY OF ORDER AUTHORIZING DEBTORS' EMPLOYMENT OF CR3 PARTNERS AS CHIEF RESTRUCTURING OFFICER

Upon consideration of the Sklar Exploration Company, LLC's and Sklarco, LLC's (collectively the "Debtors") Motion for Entry of Order Authorizing Debtors' Employment of CR3 Partners as Chief Restructuring Officer Effective as of May 21, 2020 (the "Motion") and any response(s) to the Motion, after due and proper notice of the Motion was given and a hearing was held on the Motion, it is ORDERED that:

1.     The Motion is GRANTED as modified herein.

2.     The Debtors are authorized to engage CR3 Partners, LLC on the terms described in the Motion, subject to the following terms, which apply notwithstanding anything in the Motion or any exhibit(s) related thereto to the contrary:

(a.)     CR3 Partners, LLC and its affiliates shall not act in any other capacity (for example, and without limitation, as a financial advisor, claims agent/claims administrator, or investor/acquirer) in connection with the above-captioned cases.

(b.)     In the event the Debtors seek to have CR3 Partners, LLC personnel assume executive officer positions that are different than the position(s) disclosed in the Motion, or to materially change the terms of the engagement by either (i) modifying the functions of primary personnel, (ii) adding new personnel to oversee the engagement, or (iii) altering or expanding the scope of the engagement, a motion to modify the retention shall be filed.

(c.)     CR3 Partners, LLC shall file with the Court with copies to the United States Trustee ("U.S. Trustee") and all official committees a report of staffing on the engagement for the previous month.  Such report shall include the names and functions filled of the individuals assigned.  All staffing shall be subject to review by the Court in the event an objection is filed.

(d.)     No principal, employee or independent contractor of CR3 Partners, LLC and its affiliates shall serve as a director of any of the above-captioned Debtors during the pendency of the above-captioned cases.

(e.)     CR3 Partners, LLC shall file with the Court, and provide notice to the U.S. Trustee and all official committees, reports of compensation earned and expenses incurred on a monthly basis.  Such reports shall contain summary charts which describe the services provided, identify the compensation earned by each executive officer and staff employee provided, and itemize the expenses incurred.  Time records shall (i) be appended to the reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category.  Where personnel are providing services at an hourly rate, the time entries shall identify the time spent completing

each task in 1/10/hour increments and the corresponding charge (time multiplied by hourly rate) for each task; where personnel are providing services at a "flat" rate, the time entries shall be kept in hourly increments. All compensation shall be subject to review by the Court in the event an objection is filed.

(f.)     Success fees, transaction fees, or other back-end fees shall be approved by the Court at the conclusion of the case on a reasonableness standard and are not being pre-approved by entry of this Order.  No success fee, transaction fee or back-end fee shall be sought upon conversion of the case, dismissal of the case for cause, or appointment of a trustee.

(g.)     The Debtors are permitted to indemnify those persons serving as executive officers on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the Debtors' D&O policy.

(h.)     There shall be no indemnification of CR3 Partners, LLC or its affiliates.

(i.)     For a period of three years after the conclusion of the engagement, neither CR3 Partners, LLC, nor any of its affiliates shall make any investments in the Debtors or the Reorganized Debtors.

(j.)     CR3 Partners, LLC shall disclose any and all facts that may have a bearing on whether the firm, its affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to the Debtor(s), its/their creditors, or other parties in interest.  The obligation to disclose identified in this subparagraph is a continuing obligation.

3.      During the pendency of these chapter 11 cases and until a final non-appealable is entered (i) confirming a plan of reorganization, (ii) authorizing the resignation of CR3 Partners, LLC ("CR3") or the removal of CR3 for cause, or (iii) converting or dismissing these chapter 11 cases, the Debtors' respective operating agreements, as may have been previously supplemented, amended and/or restated (the "Operating Agreements"), are hereby deemed amended as follows:

a)  CR3 shall be the sole Manager (as defined in the Operating Agreements), the Manager-Chairman (as defined in the Operating Agreements), and the chief restructuring officer of each Debtor, and shall assume the powers and duties of the Manager, Manager-Chairman, and Chairman/Chief Executive Officer (as defined or referenced in the Operating Agreements) of each Debtor.

b)  Howard Sklar—the Debtors' current Manager, Manager-Chairman, Chairman/Chief Executive Officer—shall have no decision-making authority for the Debtors and shall have limited participation in the management of the Debtors or their business affairs, such as providing information and cooperation as reasonably directed by CR3, and advising in the operation of the wells.

c)  Notwithstanding any provision in the Operating Agreements to the contrary, no vote or approval of the members of the Debtors shall be required for CR3 to take any action within the scope of any of its duties as chief restructuring officer.

d)  Notwithstanding any provision in the Operating Agreements to the contrary, absent prior authorization by order of the Court, no member of the Debtors shall have authority or power to act on behalf of any Debtor or to challenge, limit, impede, or usurp the decisions of CR3 within the scope of any of its duties as chief restructuring officer.

e)  Notwithstanding any provision in the Operating Agreements to the contrary, CR3 shall not be entitled to any compensation or salary except as provided under the terms of its engagement as approved by this Order.

4.  The Committee shall have full investigative authority and concurrent standing to pursue actions arising under 11 U.S.C. §§ 544, 547, 548, 559, or 550.

5.  Within sixty (60) days of entry of this order, CR3 Partners, LLC shall file a status report with the Court detailing operational changes implemented by CR3, its efforts to determine the disposition of funds from cash call advances on a pre-petition basis, and its efforts undertaken in furtherance of the Debtors' reorganization. Within 120 days, CR3 will prepare a report detailing on a well by well basis, Sklar Exploration Company, LLC's receipt and disposition of funds received from working interest holders, an examination of invoices and proof of payment for expenditures on each well, and a review of the disposition of funds that should have been paid to working interest holders for the six-month period prior to the filing of the Debtors' bankruptcy petitions. CR3 reserves the right to retain any additional professionals necessary to complete such a report, including, without limitation, a qualified CPA. Following completion of the report, CR3 shall meet with East West Bank, the Committee, and Working Interest Holders requesting to attend such meeting to determine what, if any, further time periods should be examined.

BY THE COURT:

_____
The Honorable Elizabeth E. Brown
United States Bankruptcy Judge

Exhibit B

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC | ) | |
| EIN: 72-1417930 | ) | Chapter 11 |
| | ) | |
|    Debtor. | ) | |
| | ) | |
| | ) | |
| | ) | Case No. 20-12380-EEB |
| SKLARCO, LLC | ) | |
| EIN:  72-1425432 | ) | Chapter 11 |
|    Debtor. | ) | |

**ORDER APPROVING LENDING AGREEMENT
AND AUTHORIZING DEBT AS AN ADMINISTRATIVE EXPENSE SUBJECT TO
SUBORDINATION**

THIS MATTER having come before the Court on the Debtors' Motion for Approval of Lending Agreement and for Authority to Incur Debt on an Administrative, Unsecured Basis (the "Motion"), notice having been provided to creditors, cause being shown to the Court in the Motion for the granting of the requested relief, it is hereby,

ORDERED

1.    That the Debtors are authorized to borrow $1,233,000 from Howard Sklar, the Howard Sklar Trust, the Jacob Sklar Trust and the Alan Sklar Trust (the "Sklar Parties") on an unsecured administrative basis pursuant to 11 U.S.C. § 546(b) pursuant to the terms described herein;

2.    This Order is without prejudice to the rights of parties to contest the ownership of the portion of the loan consisting of $233,000, held in Sklarco's bank account, subject to further order of this Court;

3.    Each of the Sklar Parties shall be granted an administrative claim in the amount of their respective loan subject to subordination as set forth herein;

4.    Repayment of the administrative claims to the Sklar Parties shall be subordinated to all allowed unsecured claims for all purposes, with the exception of paragraph 4 below, and shall only be entitled to payment after all allowed unsecured claims are paid in full;

5.    If any judgment is entered against the Sklar Parties for any action arising under Section 544, 547, 548, 559, or 550, the amount of such judgment shall be offset first against the balance of such parties' loan; and

6.      That the Lending Agreement and Promissory Note attached to the Motion as Exhibit B, are hereby approved, and the Debtors are authorized to execute such documents and such further documentation as may be deemed reasonably necessary to evidence the subject loan; provided that, to the extent that a conflict exists between, on the one hand, this Order and, on the other, the loan documents described in this paragraph, this Order shall control; and

7.      The Bankruptcy Court shall retain jurisdiction to resolve any issues pertaining to the interpretation of this order and the loan documents with the Sklar Parties.

DONE and entered this _____ day of June, 2020 at Denver, Colorado.


_____
Honorable Elizabeth E. Brown
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

Exhibit C

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC | ) | |
| EIN: 72-1417930 | ) | Chapter 11 |
| | ) | |
|   Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | Case No. 20-12380-EEB |
| SKLARCO, LLC | ) | |
| EIN: 72-1425432 | ) | Chapter 11 |
|   Debtor. | ) | |

**FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL, GRANTING
ADEQUATE PROTECTION, AND PROVIDING RELATED RELIEF**

This matter came before the Court on the motion of the above-captioned debtors and debtors-in-possession for entry of an order authorizing the use of cash collateral [Dkt. No. 34] (the "Motion"). The Court having considered the Motion, and any oppositions filed thereto; having held an interim hearing on April 9, 2020, and entered an order granting the Motion on an interim basis [Dkt. No. 94] (the "First Interim Order"); having held a hearing on April 27, 2020, and entered an order granting the Motion on a further interim basis [Dkt. No. 189] (the "Second Interim Order"); having held a hearing on May 11, 2020, and entered an order granting the Motion on a further interim basis [Dkt. No. 319] (the "Third Interim Order"; and collectively with the First Interim Order and the Second Interim Order, the "Interim Orders"); having conducted a final hearing on the Motion on ____, 2020, and considered any evidence presented; and after due deliberation, and for good and sufficient cause shown:

**THE COURT HEREBY FINDS AND CONCLUDES** as follows:

601887961.9

1

A.      Petition Date.  On April 1, 2020 (the "Petition Date"), Sklar Exploration Company, LLC ("SEC") and Sklarco, LLC ("Sklarco," and collectively with SEC, the "Debtors") filed respective voluntary petitions for relief under chapter 11, thereby commencing these chapter 11 cases (each a "Bankruptcy Case," and collectively, the "Bankruptcy Cases").

B.      Joint Administration.  On April 2, 2020, the Court entered an order directing the joint administration of the Bankruptcy Cases. [Dkt. No. 8]

C.      Official Committee.  An official committee of unsecured creditors (the "Committee") was appointed in SEC's Bankruptcy Case on April 16, 2020. [Dkt. No. 99] No official committee has been appointed in Sklarco's Bankruptcy Case.

D.      Jurisdiction and Venue.  This Court has jurisdiction over the Bankruptcy Cases and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  The Motion presents a core proceeding as defined in 28 U.S.C. § 157(b)(2).  Venue for the Bankruptcy Cases and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

E.      Notice.  Notice of the Motion and the final hearing thereon was due, proper, and appropriate under the circumstances to prevent immediate and irreparable harm pursuant to Bankruptcy Code §§ 102(1) and 363(c), and Bankruptcy Rules 2002, 4001, and 9014.  No further notice of, or hearing on, the relief granted herein is necessary.

F.      Cash Collateral.  Subject to any future determination by this Court of any competing lien or ownership interest among parties claiming an interest in the Cash Collateral, including without limitation any working interest holder or any of the Objecting Parties as defined in the Interim Orders, as of the Petition Date and subject to the Challenge Period set forth in paragraph 12, all of the Debtors' cash, including the cash in its deposit accounts and other accounts,

601887961.9

wherever located, whether as original collateral or proceeds of other Prepetition Collateral (defined below), constitutes Cash Collateral.  For purposes of this Order, the term "Cash Collateral" shall mean and include all "cash collateral," as defined in Bankruptcy Code § 363, in or on which East West Bank, a California state banking corporation ("EWB"), or any third party has a valid and perfected lien, security interest, ownership interest, or other interest in such Cash Collateral (including, without limitation, any adequate protection liens or security interests), and shall include, without limitation: (a) all cash proceeds arising from the collection, sale, lease, or other disposition, use or conversion of any of the Debtors' property, including without limitation proceeds of insurance policies, in or on which EWB or other prepetition secured lenders or interest holders (collectively, the "Prepetition Secured Creditors") have a valid and perfected lien, or a replacement lien, or pursuant to an order of this Court or applicable law or otherwise, and the proceeds generated therefrom whether before or after the commencement of the Bankruptcy Cases; (b) all of the respective deposits, and refund claims of the Debtors on which EWB or the Prepetition Secured Creditors have a valid and perfected lien or replacement lien; and (c) the proceeds of any sale in the ordinary course of the Prepetition Collateral on which EWB or the Prepetition Secured Creditors have a valid and perfected lien or replacement lien, or pursuant to an order of this Court or applicable law.

       G.    Debtors' Acknowledgments of East West Bank's Claim and Liens.  In exchange for and in order to induce EWB, in its capacity as lender and as the administrative agent under the parties' credit agreement, to consent to the use of cash collateral as provided herein, the Debtors acknowledge, admit, represent and stipulate, each of which are subject to the rights and limitations set forth in paragraph 12 herein, as follows:

601887961.9

3

1.      The Prepetition Loan.  On or about June 15, 2018, the Debtors entered into that certain Credit Agreement dated June 15, 2018, for a senior secured revolving credit facility in the maximum amount of $50,000,000 (as supplemented and amended, the "Credit Agreement"), and made that certain Note in favor of EWB (the "Note") in the principal amount of the loan (the "Loan") made by EWB to the Debtors, as provided in the Credit Agreement.  In addition to the Credit Agreement and Note, the Loan is evidenced by, among other things, that certain Pledge and Security Agreement dated June 15, 2018 (the "Security Agreement"), those certain Letters of Credit (the "LCs"), those certain Mortgages, Deeds of Trusts, Assignments of Production, Security Agreements, Financing Statements and Fixture Filings filed or recorded with state, county, or other governmental authorities (collectively, the "Mortgage Documents"), and all other documents and instruments contemplated by the foregoing or in connection with the Loan (all of the foregoing collectively, the "Loan and Security Documents").

By and through the Loan, EWB provided a revolving credit facility to finance the Debtors' business operations on the terms and conditions set forth in the Loan and Security Documents.  Under the Loan and Security Documents, the Debtors are jointly and severally obligated to satisfy all outstanding obligations owed to EWB, including, without limitation, repayment of the Loan and all other amounts owing by the Debtors to EWB under the Loan and Security Documents (collectively, the "Obligations").  As of the Petition Date, the Debtors were indebted to EWB under the Loan in the amount of no less than $22,989,650.74, plus any accrued and unpaid interest and default interest, fees, and expenses (the "Prepetition Indebtedness"), as set forth in proofs of claim filed by EWB in the Debtors' respective Bankruptcy Cases (collectively, the "EWB Proof of Claim").

601887961.9

4

To secure payment and performance of the Obligations, the Debtors granted to EWB continuing liens and security interests (the "Prepetition Liens") in substantially all of the Debtors' real property, fixture property, and personal property of every kind and nature, wherever located, whether then owned or thereafter acquired or arising, and all proceeds, products, replacements, additions and substitutions (the "Prepetition Collateral"), subject to certain limited exceptions such as the Debtors' interest in the Bowdoin Dome Prospect, including the helium well in the State of Montana, known as the Corwin #5-1 Well (API No. 25071233390000), Phillips County, Montana (the "Montana Well"). EWB perfected its liens and security interests in the Prepetition Collateral pursuant to, among other things: (i) the Mortgage Documents and other documents or instruments recorded in the real estate records of each of the counties or parishes in which the Debtors own real property; and (ii) UCC-1 financing statements filed with the appropriate Secretaries of State.

2. <u>Validity of Obligations</u>. The Loan and Security Documents, including the documents and filings to create and perfect the Prepetition Liens, are valid and enforceable by EWB against each of the Debtors. Subject only to the Challenge Period set forth in paragraph 12 below: (i) the Obligations constitute legally binding and enforceable obligations of the Debtors, jointly and severally, and are not subject to any offset, defense, claims, counterclaims or any other diminution of any type, kind or nature whatsoever; (ii) the Loan and Security Documents are valid and enforceable against the Debtors in accordance with their terms, are not subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever, and are not subject to avoidance pursuant to any state or federal laws; (iii) the Prepetition Liens in, to, and against all of the Prepetition Collateral are valid, enforceable, properly perfected, and not subject

to avoidance under any state and federal laws; and (iv) as of the Petition Date, the Debtors and their estates have no existing claims or causes of action, whether liquidated or unliquidated, direct or indirect, and whether arising under state or federal law (including the Bankruptcy Code), against EWB arising from the Loan, the Obligations, the Prepetition Liens, or the relationships between the Debtors and EWB.  Immediately upon the Challenge Termination Date (defined below), without further order of the Court, the Obligations shall constitute allowed claims against the Debtors' estates, jointly and severally, in the full amount of the Prepetition Indebtedness set forth in the EWB Proof of Claim; *provided, however*, that except for the payment of fees pursuant to paragraph 8 below, any claim by EWB for post-petition interest, unpaid fees, and/or unpaid expenses shall not be deemed allowed nor disallowed hereunder, and EWB's rights are fully preserved pursuant to Bankruptcy Code § 506(b) and all other applicable law to seek allowance and payment of such post-petition interest, fees, and/or expenses.

3.      Releases by the Debtors.  Subject only to the provisions of paragraph 12 below, each of the Debtors and their respective estates, on their own and on behalf of their past, present, and future predecessors, successors, heirs, subsidiaries, and assigns shall, to the maximum extent permitted by applicable law, unconditionally, irrevocably, and fully forever release, acquit, relinquish, waive, and discharge EWB, in all capacities under the Loan and Security Documents and applicable law, and each of its respective current and former direct and indirect affiliates, subsidiaries, equity holders, members, partners, professionals, principals, attorneys, accountants, investment bankers, consultants, agents, advisors, other representatives, employees, directors, and officers, each in their respective capacities as such (collectively, the "Released Parties"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action,

601887961.9

6

indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every types, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute, or regulation or by contract, of every nature and description based on or arising from any events, facts, or circumstances that have occurred or exist as of the date of entry of this Order arising from the Loan, including, without limitation: (i) any so-called "lender liability" or equitable subordination claims or defenses; (ii) any and all claims or causes of action arising under the Bankruptcy Code; and (iii) any and all claims or causes of action regarding the validity, priority, enforceability, perfection, or avoidability of the Prepetition Liens or the Obligations.  The Debtors further waive and release any defense, right of counterclaim, right of setoff, or deduction to the payment or performance of the Obligations that the Debtors now have or may claim to have against the Released Parties arising out of, connected with, or relating to any and all acts, omissions, or events occurring prior to the Court's entry of this Order.

H.     Need for Use of Cash Collateral.  The Debtors do not have sufficient available sources of working capital or financing to carry on the operation of their business without the use of Cash Collateral.  The Debtors' ability to pay employees, maintain business relationships with vendors and suppliers, and otherwise finance their operations is essential to the Debtors' continued viability, and the Debtors' critical need for use of Cash Collateral is immediate.  Without the use of Cash Collateral, the continued operation of the Debtors' business would not be possible, and serious and irreparable harm to the Debtors and their estates would occur.

601887961.9

I.      No Control of the Debtors.  EWB shall not be deemed to be a control person or insider of either Debtor by virtue of any actions taken in respect of or in connection with the Loan or any of the Loan and Security Documents or any documents related thereto, nor in connection with the relief granted in the First Interim Order, the Second Interim Order, the Third Interim Order, and this Order.

J.      Consent to Use Cash Collateral.  The Debtors undertook arm's-length negotiations with EWB with respect to the use of Cash Collateral under the strict terms of this Order.  EWB is willing to allow the Debtors to continue using its Cash Collateral pursuant to the terms and conditions set forth in this Order; *provided, however*, that such consent:  (i) is expressly conditioned upon the entry of this Order; (ii) shall not be deemed to extend any post-petition financing; (iii) shall not be deemed a basis to deny, impair, or affect EWB's entitlement to adequate protection, the sufficiency of which is not admitted by EWB; and (iv) such consent shall be of no force and effect in the event this Order is not entered, is stayed pending any appeal of this Order, or any of the rights, claims, or protections granted to EWB are otherwise vacated or modified in any respect without the consent of EWB.  EWB has not agreed to any use of Cash Collateral except as set forth in this Order and the Interim Orders.

K.      Good Faith.  The terms and conditions of the proposed use of Cash Collateral pursuant to this Order are fair and reasonable, were negotiated by the parties in good faith at arm's length, and the parties otherwise acted in good faith.  Any financial accommodations made to the Debtors by EWB pursuant to this Order shall be deemed to have been extended by EWB in good faith, as that term is used in Bankruptcy Code § 363(m), and EWB shall be entitled to all protections and benefits afforded thereby.  Provided, however, nothing herein shall prejudice the

601887961.9

8

rights set forth in paragraph 12.

L.    No Surcharge.  The Debtors and their estates hereby irrevocably waive and are forever prohibited from asserting any surcharge claim under Bankruptcy Code §§ 105 or 506(c), the enhancement collateral provisions of Bankruptcy Code § 552, or any other similar legal or equitable doctrine relating to any costs and expenses incurred in connection with the Prepetition Collateral or the EWB Replacement Liens (defined below).  Subject to paragraph 10 below, upon entry of this Order, EWB shall be entitled to, and is hereby granted, a waiver of: (i) the provisions of Bankruptcy Code § 506(c); and (ii) any "equities of the case" or other claims under Bankruptcy Code § 552(b).

M.    Final Order.  Based on the record before this Court, there is good cause for the Court to authorize the Debtors' use of Cash Collateral under the terms and conditions stated herein. This Order shall not be stayed and shall be valid and fully effective immediately upon entry, notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014, or otherwise.  Based upon the foregoing findings and conclusions, and upon the record made before this Court, and good and sufficient cause appearing therefor, this Court concludes that entry of this Order is in the best interests of the Debtors' estates and creditors.

N.    Findings and Conclusions.  Each of the foregoing findings by the Court will be deemed a finding of fact if and to the full extent that it contains factual findings and a conclusion of law if and to the full extent that it makes legal conclusions.

Based upon the foregoing findings and conclusions, and upon the record before the Court, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

601887961.9

9

1.      The Motion is GRANTED on a final basis as set forth herein. Any objections to the Motion with respect to entry of this Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled.

2.      <u>Use of Cash Collateral</u>.

<u>(a)</u>      Subject to the terms and conditions set forth in this Order, the Debtors are authorized pursuant to Bankruptcy Code §§ 105, 361, 362, and 363, Bankruptcy Rules 2002, 4001, 6003, and 9014 and Local Rules 2081-1 and 4001-2 to use Cash Collateral as provided herein. For the avoidance of a doubt, this Order does not authorize the Debtors' use of any cash collateral that is the produce or of any production from the Montana Well (as defined herein) without further Order of the Court. The Cash Collateral may only be used to fund the types and corresponding amounts of itemized expenditures contained in the budget attached hereto as Exhibit 1 (the "<u>Budget</u>"); *provided, however,* that: (i) with the exception of any Segregated Unsecured Loan Funds (defined below), all use of cash by the Debtors shall be deemed to be made first from any cash that is not Cash Collateral, to the extent any such cash exists, and thereafter from the Cash Collateral of EWB, and (ii) subject to the Carve-Out (defined below) and rights set forth in paragraph 12, the Debtors, the Committee, and all other parties in interest shall not be authorized to use Cash Collateral for any purpose, including without limitation the payment of professional fees, relating to or in furtherance of any "<u>Adverse Action</u>," which is defined as and shall mean herein any Challenge (defined below) or any other assertion, claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter:  (a) challenging the legality, validity, enforceability, priority or extent of the Obligations, the Prepetition

601887961.9

10

Indebtedness or the Prepetition Liens; or (b) otherwise asserting or prosecuting any avoidance actions or any other claims, counterclaims, causes of action, objections, contests, or defenses against EWB or the Released Parties in connection with, or relating to, the Loan and Security Documents, the Obligations, the Prepetition Indebtedness, or the Prepetition Collateral.

(b)      The Budget shall provide that at all times during these Bankruptcy Cases, Sklarco shall deposit 100% of the revenue received from non-operating working interests into the operating account of SEC, and SEC shall pay the revenues owing to the non-insider working interest holders in accordance with the *Order Authorizing Payment of Working Interest Obligations and Limited Offset of Joint Interest Billing Obligations* [Dkt. No. 317].

(c)      The Budget shall provide, and the Debtors shall, at all times during these Bankruptcy Cases, deposit 100% of the revenue received on account of non-operating working interests ("WIO Revenue") into the **revenue** account maintained by SEC. Notwithstanding EWB's interest in the accounts maintained by SEC, EWB's lien shall not attach to the WIO Revenue.  SEC shall account for receipt and deposit of WIO Revenue by working interest owner in accordance with best practices for the industry, and may not use funds due to non-insider working interest owner without that owner's written consent. SEC shall pay WIO Revenue to the non-insider working interest holders in accordance with the *Order Authorizing Payment of Working Interest Obligations and Limited Offset of Joint Interest Billing Obligations* [Dkt. No. 317], which payments are indefeasible subject to rights and obligations under relevant Participation Agreements, Joint Operating Agreements, or similar agreements.  Subject to the Budget, SEC and a non-insider working

interest owner may agree in writing to offset any WIO Revenue due to that interest owner against any payments due from that WIO to SEC, including pre- and post-petition amounts due.

(d)    The Budget may be modified to the extent agreed to by the Debtors, EWB, and the Committee without further order of this Court, upon the filing of a copy of a modified budget with this Court, and each such modified budget shall be deemed to be a "Budget" as defined above for the period of time identified therein.  Any such amendments, supplements, or modifications to the Budget must be consented to in writing by EWB, the Debtors, and the Committee in their sole discretion prior to the implementation thereof. Alternatively, if the parties are unable to reach an agreement on the Budget, the Debtors shall file a proposed budget with the Court and interested parties shall have five (5) business days to object.  The Debtors' use of Cash Collateral may vary by 10% on any line item basis (a "Variance"); *provided, however*, that the aggregate Variances may not exceed 3% of all expense line items for any monthly budget period; and *provided further* that, in no event, shall the Carve-Out amount for professional fees exceed the aggregate amount allowed for each professional as set forth on the corresponding line items on the Budget.

(e)    As used in this Order, the "Segregated Unsecured Loan Funds" shall mean the lesser of $500,000 or 50% of the total amount of unsecured post-petition financing provided by Howard Sklar and/or his affiliated non-debtor entities, as contemplated in the *Debtor's Report on Issues Raised by the Court on Cash Collateral Issues* [Dkt. No. 299]. The Segregated Unsecured Loan Funds shall be segregated from the Cash Collateral, the revenue of non-insider working interest holders, and any other cash, and may be used in

601887961.9

12

the Bankruptcy Cases for any lawful purpose as determined by the chief restructuring officer to be appointed by the Debtors. The Debtors shall account for all expenditures of the Segregated Unsecured Loan Funds and shall report on such accounting as set forth in paragraph 4 below.

3.      No Avoidance of Adequate Protection or Replacement Liens.  Subject to the rights and limitations provided under paragraph 12 herein, any payments to EWB authorized in this Order and/or the EWB Replacement Liens shall not be subject to Bankruptcy Code §§ 510, 549, or 550 and shall not be subject to subordination, impairment, or avoidance for any purposes in either of the Bankruptcy Cases and any Successor Case (defined below).

4.      Reporting.  As additional protection for the Debtors' use of Cash Collateral, the Debtors shall timely provide EWB and the Committee with: (a)(i) a current accounts receivable ledger, (ii) a current accounts payable ledger, and (iii) a weekly report to be provided on Wednesday of each week comparing actual collections and expenditures (by expense category corresponding to the Budget) (a "Reconciliation Report") detailing any Variance and any use of the Segregated Unsecured Loan Funds; (b) all reporting and other information as required under the Loan and Security Documents; (c) all documents and information submitted by the Debtors to the United States Trustee; and (d) upon the reasonable request of EWB or the Committee, such other information pertaining to the Debtors' operations, financial affairs, and the Prepetition Collateral, including but not limited to bills, invoices, and receipts. Further, the Debtors shall allow EWB, the Committee, and their respective professionals and designees reasonable access, during normal business hours, to the premises of the Debtors in order to conduct appraisals, analyses, and/or audits of the Prepetition Collateral, and shall otherwise reasonably cooperate in providing

601887961.9

13

any other financial information requested by EWB and the Committee for this purpose; *provided, however*, the Debtors shall not be required to make available: (a) privileged and attorney-client work product; (b) trade secrets; (c) commercially sensitive or non-public information in relation to any sales process; and (d) information the Debtors are otherwise prohibited from disclosing pursuant to a third-party confidentiality agreement.  The Debtors shall provide counsel for the Committee with a copy of any documents or information described in this paragraph simultaneously with any transmittal of such documents to EWB.

      5.    <u>No Duty to Supervise</u>.  EWB may assume the Debtors will comply and are complying with the Budget and this Order, shall have no duty to monitor such compliance, and shall not be obligated to pay (directly or indirectly from its collateral or otherwise) any unpaid expenses incurred or authorized to be incurred pursuant to the Budget, except as required by this Order or any subsequent orders of the Court.

      6.    <u>Termination of Cash Collateral Usage</u>.

      (a)    Subject to subparagraphs (b)-(c) below, the Debtors' right to use Cash Collateral pursuant to this Order shall terminate (each, a "<u>Termination Event</u>," and the date of any such Termination Event, the "<u>Termination Date</u>") without prior written notice or order of the Court or any further action by EWB on the earliest to occur of:

          (i)    October 1, 2020, if a chapter 11 plan and disclosure statement containing terms consistent with agreements reached between, among others, the Debtors, EWB, and the Committee and a motion requesting conditional approval of the disclosure statement have not been filed by the Debtors on the docket of these Bankruptcy Cases;

          (ii)    February 1, 2021, if the effective date of a confirmed chapter 11 plan in the Bankruptcy Cases has not occurred by such date;

(iii)    the date that an order is issued by any court of competent jurisdiction denying confirmation of a chapter 11 plan or refusing to approve a related disclosure statement filed by the Debtors;

(iv)    the effective date of a confirmed chapter 11 plan in either of the Bankruptcy Cases;

(v)    five (5) business days after the expiration of the approved Budget unless a supplemental Budget has been agreed upon by the Debtors, EWB, and the Committee or, alternatively, an order of the Court is entered approving a supplemental Budget;

(vi)    the date the Debtors file, support, or acquiesce in any motion or other pleading seeking any financing under Bankruptcy Code § 364(d) secured by the Prepetition Collateral that is not of junior priority to EWB's interests or does not require the immediate payment in full of all secured obligations of EWB;

(vii)    the date of the Debtors' filing of an application, motion, or other pleading seeking to amend, modify, supplement, or extend this Order without the prior written consent of EWB or the date any court enters an order reversing, amending, supplementing, staying, vacating, or otherwise modifying any material provision of this Order without the prior written consent of EWB;

(viii)    the date an application is filed by the Debtors for the approval of any superpriority claim or any lien that is pari passu with or senior to the adequate protection liens, super-priority claims, or prepetition liens described herein without the prior written consent of EWB;

(ix)    three (3) business days after the date any court enters an order granting relief from the automatic stay to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any asset of the Debtors with a value in excess of $150,000;

(x)    the date: (A) any court enters an order dismissing either of the Bankruptcy Cases, converting either of them to cases under chapter 7 of the Bankruptcy Code, appointing a trustee in either of the Bankruptcy Cases without EWB's consent (provided that such consent will not be unreasonably withheld), or terminating the Debtors' exclusivity under Bankruptcy Code § 1121, or (B) the Debtors apply for, consent to, or acquiesce in any such dismissal, conversion, or appointment; or

(xi)    the date the Debtors file any pleading or commence any action against EWB: (A) challenging the legality, validity, enforceability, priority or extent of the Obligations, the Prepetition Liens, or the EWB Replacement Liens, (B) seeking

any surcharge claim under Bankruptcy Code § 506(c), (C) seeking relief for the enhancement collateral provisions of Bankruptcy Code § 552, or (D) seeking any other similar legal or equitable doctrine relating to any costs and expenses incurred in connection with the Prepetition Collateral and the EWB Replacement Liens.

(b)     EWB may waive the occurrence of any Termination Event.

(c)     Notwithstanding anything contained herein, the Debtors' authority to use Cash Collateral hereunder shall automatically terminate on the Termination Date; *provided, however*, upon the occurrence of a Termination Event, the Debtors and EWB consent to a hearing on an expedited basis (such hearing to be held no more than three (3) business days following a Termination Event) to consider: (i) whether the automatic stay may be lifted so that EWB may exercise any and all of its respective rights and remedies in respect of the Prepetition Collateral, in accordance with this Order or applicable law; (ii) whether, in fact, a Termination Event has occurred; or (iii) any other appropriate relief (including the Debtors' use of Cash Collateral on a nonconsensual basis). The rights of the Debtors and other parties in interest, including the Committee, to oppose any relief requested by EWB (including to request the use of Cash Collateral on a nonconsensual basis) are fully reserved.

(d)     Upon the occurrence of the Termination Date, and subject to the immediately preceding subparagraph (c), all unpaid adequate protection obligations, if any, shall be immediately due and payable, subject to prior provision for the Carve-Out, and EWB shall have all rights and remedies provided in this Order, and under applicable law. Notwithstanding anything herein or the occurrence of the Termination Date, all of the rights, remedies, benefits, and protections provided to EWB under this Order shall survive the Termination Date.

601887961.9

16

7.    <u>Adequate Protection</u>.  EWB is entitled, pursuant to Bankruptcy Code §§ 361 and 363(e), to adequate protection of its interests in the Prepetition Collateral, including, but not limited to, the Cash Collateral, for any aggregate diminution in value of its interests in the Prepetition Collateral, if any, calculated in accordance with the Bankruptcy Code and as subsequently determined by the Court (a "<u>Diminution in Value</u>"), resulting from the Debtors' use of Cash Collateral or any other Prepetition Collateral or the imposition of the automatic stay pursuant to Bankruptcy Code § 362.

8.    <u>Fees and Expenses</u>.  Subject to the other terms of this Order, solely to the extent provided for in the Budget, the Debtors are authorized and directed to pay, when due and payable any and all reasonable fees and expenses incurred by: (i) Bryan Cave Leighton Paisner LLP, as counsel to EWB; (ii) any financial advisor to EWB; and (iii) such other professionals and/or consultants reasonably retained by EWB (collectively, the "<u>EWB Professionals</u>").  The Debtors shall promptly reimburse the EWB Professionals such invoiced amounts within ten (10) business days (if no written objection is filed within such period) after delivery of an invoice describing such fees, costs, and expenses substantially in the form provided in the ordinary course of business; *provided*, *however*, that any such invoice may be redacted to protect privileged, confidential, or proprietary information.  A copy of each such invoice submitted to the Debtors shall simultaneously be sent to the U.S. Trustee and counsel for the Committee.  Any written objection to such fees, costs, or expenses must contain a specific basis for the objection and a quantification of the undisputed amount of the fees, costs, and expenses invoiced, and delivered to EWB and its counsel within five (5) business days after delivery of such invoice. If the parties are unable to resolve any written objection, the objection shall be filed with the Court within ten (10) business

601887961.9

17

days after delivery of the invoice. Failure to object with specificity or to quantify the undisputed amount of the invoice subject to such objection will constitute a waiver of any objection to such invoice. None of such fees, costs, and expenses shall be subject to Court approval, except to the extent that an objection is filed as set forth in this paragraph, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court.

9.      Replacement Liens.  Subject to the rights and limitations set forth in paragraph 12, as adequate protection and security for and solely to the extent of any aggregate Diminution in the Value of Prepetition Collateral from and after the Petition Date, EWB is hereby granted senior priority, continuing, valid, automatically perfected, nonavoidable and enforceable replacement liens upon all assets and property of the Debtors and their estates of any kind or nature whatsoever (and any proceeds therefrom), now existing or hereafter acquired, including, without limitation, the Prepetition Collateral (the "EWB Replacement Liens"), but excluding: (i) any cash (including revenue owed to working interest holders and/or unleased mineral owners) determined by final order of this Court not to constitute property of the estate; (ii) any claims and causes of action, and the products and proceeds thereof, arising under or permitted by Bankruptcy Code §§ 502(d), 506(c), 544, 545, 547, 548, 549, and 550; (iii) any claims or causes of action against EWB, any of the Released Parties, any officer, director or insider of the Debtors, any commercial tort claims, and the products and proceeds thereof; and (iv) any well project or interest that was not subject to a perfected lien held by EWB on the Petition Date including, without limitation, the Montana Well; *provided*, *however*, that the EWB Replacement Liens shall be subject and subordinate to the Carve-Out, and shall be subject and subordinate to any valid and perfected senior prepetition lien (including valid and non-avoidable liens in existence at the time of the Petition Date that are

subsequently perfected as permitted by 11 U.S.C. § 546(b)), security interest or other interest of any third party, including the Objecting Parties, as determined by final non-appealable order of the Court or by agreement between EWB and such third party.  The EWB Replacement Liens so granted: (a) are in addition to all security interests, liens, and rights of setoff existing in favor of EWB on the Petition Date; (b) are and shall be valid, perfected, enforceable, and effective as of the Petition Date without any further action of the Debtors or EWB and without the necessity of the execution, filing or recording of any financing statements, security agreements, deeds of trust, or other documents, or of obtaining control agreements over bank accounts; and (c) shall not hereafter be subordinated to or made pari passu with any other lien or security interest arising after the Petition Date under Bankruptcy Code § 364(d) or otherwise, absent the consent of EWB.  The EWB Replacement Liens shall have the same validity and priority as the liens of EWB as existed on the Petition Date.  If, however, EWB, in its sole discretion, shall determine to file any such financing statements, mortgages, notices of lien or similar instruments, or to otherwise confirm perfection of such EWB Replacement Liens, the automatic stay is hereby lifted, to the extent necessary, to allow the filing and recording of a certified copy of this Order or any such financing statements, mortgages notices of lien or similar instruments, and all such documents shall be deemed to have been filed or recorded on the date of this Order.  EWB shall not be subject to the equitable doctrine of marshaling or any similar doctrine with respect to the Prepetition Collateral or any other collateral covered by the EWB Replacement Liens.

10.     Carve-Out.  The EWB Replacement Liens shall be junior and subordinate to the following fees and expenses (the "Carve-Out"): (i) all accrued but unpaid fees and expenses (the "Professional Fees and Expenses") of the attorneys, consultants (with the exception of a Chief

601887961.9

19

Restructuring Officer, who shall be paid as an ordinary course professional pursuant to the Budget), or other professionals retained by the Debtors and the Committee appointed under Bankruptcy Code §§ 327, 328, or 1103 (collectively, the "Estate Professionals") incurred from the Petition Date through the Termination Date, whether allowed by the Court prior to or after the Termination Date, that remain unpaid after application of any retainers being held by such professionals; *provided* that all such fees and expenses shall be subject to the Budget and approval by a final order of the Court pursuant to Bankruptcy Code §§ 327, 328, 330, 331, or 363; and (ii) any unpaid fees of the Court and the U.S. Trustee under 28 U.S.C. § 1930(a).  The Professional Fees and Expenses may be paid to the extent such Professional Fees and Expenses are allowed by the Bankruptcy Court, whether by interim order, procedural order, or otherwise; *provided* that at the time of any such proposed payment: (a) no Termination Event has occurred; (b) the Budget then in effect provides for such payment; (c) the Debtors have sufficient cash on hand to make such payment; and (d) the Professional Fees and Expenses paid from the Debtors' Cash Collateral (which, for the avoidance of doubt, shall not include any approved retainers) for all Estate Professionals have not exceeded, and will not as a result of such proposed payment exceed, $875,000 in the aggregate (the "Carve-Out Cap").  Provided further that EWB may increase, and shall consider in good faith reasonable requests by the Debtors and/or the Committee (or their Estate Professionals) to increase, the Carve-Out Cap.  By way of example only, a reasonable request for an increase to the Carve-Out Cap may include a material extension of the dates or deadlines described in paragraph 6; necessary and/or unavoidable discovery, litigation activities or participation in adversary proceeding(s); and material modification, renegotiation, and/or resolicitation of a chapter 11 plan based on changed circumstances, including changes to the

601887961.9

20

commodities market and economy.  The foregoing shall not affect the right of (i) any Estate Professionals to seek the allowance and payment of any Professional Fees and Expenses in excess of the Carve-Out Cap as administrative expenses of the applicable Debtor's estate, and (ii) the Debtors, the Committee, the U.S. Trustee or any other parties in interest to object to the allowance and payment of any amounts covered by the Carve-Out or in excess of the Carve-Out Cap.

11.    <u>Super-Priority Claim</u>.  To the extent the EWB Replacement Liens do not provide EWB with adequate protection of its interests in the Cash Collateral, EWB shall have a super-priority administrative expense claim under Bankruptcy Code § 507(b) as necessary to fully compensate EWB for the use of its Cash Collateral by the Debtors (the "<u>Super-Priority Claim</u>"). The Super-Priority Claim of EWB shall have priority over all administrative expenses incurred in the Bankruptcy Cases of any kind, including such administrative expenses of the kinds specified in, or allowable under, Bankruptcy Code §§ 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b) or 726.  No costs or expenses of administration which have been or may be incurred in these proceedings, any conversion of this proceeding pursuant to Bankruptcy Code § 1112, or in any other proceeding related hereto, and no priority claims are, or will be, prior to or on a parity with the Super-Priority Claims of EWB; provided, however, that all administrative expenses which have been paid on an ongoing basis pursuant to this Order will not be subject to recall or avoidance of payments regardless of the Super-Priority Claim; and further provided that the Superpriority Claim shall not have recourse to: (i) proceeds or property recovered on account of the Debtors' or the estates' claims and causes of action against any persons or entities arising under sections 544, 545, 547, 548, and 550 (but expressly excluding section 549) of the Bankruptcy Code; or (ii)

601887961.9

21

claims or causes of action against EWB, director and officers claims, or corporate malfeasance claims or proceeds thereof; or (iii) the Carve-Out.

12.     <u>Challenge Period</u>.  As a result of the Debtors' review of the Loan and Security Documents and the facts related thereto, the Debtors have made certain agreements and acknowledgments, representations and stipulations as set forth in paragraph G above (the "<u>Stipulations</u>") and shall have no right to file a complaint pursuant to Bankruptcy Rule 7001 or otherwise, or any other pleading asserting a claim or cause of action for items stipulated to above. The Stipulations are binding upon the Debtors in all circumstances upon entry of this Order. The Stipulations shall be binding upon each other party in interest, including the Committee, unless the Committee (which shall have standing to bring a Challenge, as defined below, without need for any further order of the Court), any chapter 11 trustee, or any chapter 7 trustee (or such other party in interest with standing):  (a) commences, to the extent not already commenced, on or before July 17, 2020, or such later date as has been agreed to in writing by EWB (the "<u>Challenge Period</u>"), a contested matter, adversary proceeding, or other procedurally proper action against EWB (i) challenging the legality, validity, enforceability, priority or extent of the Obligations, the Prepetition Indebtedness or the Prepetition Liens, or (ii) otherwise asserting or prosecuting any avoidance actions or any other claims, counterclaims, causes of action, objections, contests, or defenses (each a "<u>Challenge</u>," and collectively, the "<u>Challenges</u>") against EWB or the Released Parties in connection with, or relating to, the Loan and Security Documents, the Obligations, the Prepetition Indebtedness, or the Prepetition Collateral; and (b) obtains a final, non-appealable order in favor of such party sustaining such Challenge in such timely-filed contested matter, adversary proceeding, or other procedurally proper action.  The Challenge Period shall terminate

601887961.9

22

on the first calendar day (the "Challenge Termination Date") after either: (a) no Challenge is timely commenced during the Challenge Period; or (b) with respect to a timely commenced Challenge, such Challenge is finally settled or adjudicated in favor of EWB. On the Challenge Termination Date and for all purposes in the Bankruptcy Cases and any Successor Case: (a) any and all untimely or unsuccessful Challenges by any party in interest shall be deemed to be forever released, waived, and barred; (b) the claim set forth in the EWB Proof of Claim shall be deemed to constitute a fully allowed secured claim within the meaning of Bankruptcy Code § 506; (c) the claim set forth in the EWB Proof of Claim shall be deemed to be a fully allowed claim; and (d) the Stipulations shall be binding on all parties in interest, including the Committee and any trustee appointed in either of the Bankruptcy Cases and in any Successor Case. In consideration of the Challenge Termination Date granted herein, EWB shall reasonably cooperate with the Committee in providing documents and information reasonably requested to evaluate claims and defenses subject to this Paragraph. For the avoidance of doubt, the Challenge Termination Date set forth herein applies solely with respect to EWB and the Released Parties and does not bar any claims by the Committee or other party in interest against any party other than EWB and the Released Parties.

13. <u>Reservation of Rights</u>. Nothing in this Order will be deemed or construed as an admission or waiver by EWB as to adequate protection, or any other issue in these Bankruptcy Cases. Nothing in this Order shall prejudice EWB's right to seek an order of this Court prohibiting the Debtors' use of Cash Collateral or seek any other relief that may be necessary and appropriate under the circumstances, and nothing in this Order prejudices the Debtors' or any other party in interest's right to oppose such relief requested by EWB. Nothing in this Order will be deemed or construed to establish whether EWB's claim is oversecured, and the parties' rights are fully

601887961.9

23

preserved with respect to such issue. To the extent EWB receives any adequate protection payments during the pendency of the Bankruptcy Cases, such payments will be applied to EWB's claim in accordance with the Bankruptcy Code, including section 506, and as such claim ultimately is allowed or determined by a final non-appealable order.

14.     No Third Party Rights.  Except as explicitly provided herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary, nor does it determine the extent, validity or priority of any liens or other interests.

15.     Effect of Order.  This Order shall be effective upon its entry and not subject to any stay (notwithstanding anything to the contrary contained in the Bankruptcy Rules or otherwise). The Clerk of this Court is hereby directed to enter this Order on the Court's docket in these jointly administered Bankruptcy Cases.  The provisions of this Order and any actions taken pursuant hereto shall survive the entry of any order which may be entered: (a) confirming any plan of reorganization; (b) dismissing either of the Bankruptcy Cases; (c) converting either of the Bankruptcy Cases to any other chapter under the Bankruptcy Code; (d) withdrawing of the reference of either of the Bankruptcy Cases from the Court; and (e) providing for abstention from handling or retaining of jurisdiction.  The EWB Replacement Liens, the Super-Priority Claim, and the rights and limitations set forth in paragraph 12 shall continue in the Bankruptcy Cases or after any such dismissal and shall maintain their priorities as provided in this Order and not be modified, altered, or impaired in any way by any other financing, extension of credit, incurrence of indebtedness, or any conversion of either of the Bankruptcy Cases into a case pursuant to chapter 7 of the Bankruptcy Code or dismissal of either of the Bankruptcy Cases, or by any other act or

601887961.9

24

omission until the Prepetition Indebtedness and any other Obligations are indefeasibly paid in full in cash or receive treatment as otherwise agreed to by the relevant parties or as may be subsequently ordered by the Court, subject to the rights and limitations set forth in paragraph 12 of this Order.

16.    <u>Binding on Successor Case</u>.  The terms of this Order, including but not limited to the adequate protection granted herein, shall be valid and binding upon and inure to the benefit of the Debtors, EWB, all other creditors of the Debtors, the Committee, and all other parties in interest and their respective successors and assigns, including any trustee or any fiduciary hereafter appointed in either Bankruptcy Case and any case under chapter 7 of the Bankruptcy Code upon a conversion or in any other proceeding superseding or related to any of the foregoing (collectively, a "<u>Successor Case</u>"), or upon dismissal of either Bankruptcy Case or a Successor Case.

17.    <u>Amendments and Waivers</u>.  Any amendment, modification, supplement or waiver of any provision in this Order must be in writing, signed by the Debtors, the Committee, and EWB, and approved by the Court on appropriate notice by the Debtors.

18.    <u>Third Party Reservation of Rights</u>. Nothing herein shall impair or prejudice the rights of third parties to assert or challenge any lien rights under applicable non-bankruptcy law in any other case or proceeding unrelated to the Bankruptcy Cases.  All rights and defenses with respect to the existence of such lien rights, including the validity, priority, and extent thereof, are hereby reserved.

19.    <u>Order Governs</u>.  In the event of any inconsistency between the provisions of this Order, any interim order, and the Motion, the provisions of this Order shall govern.

601887961.9

25

20.     Retention of Jurisdiction.  This Court has and will retain jurisdiction to enforce the terms of this Order.

Dated: June  _____, 2020

_____
Honorable Elizabeth E. Brown
United States Bankruptcy Judge