## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC | ) | |
| EIN: 72-1417930 | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| | ) | Case No. 20-12380-EEB |
| SKLARCO, LLC | ) | |
| EIN: 72-1425432 | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

## ORDER GRANTING DEBTORS' MOTION FOR ENTRY OF ORDER AUTHORIZING DEBTORS' EMPLOYMENT OF CR3 PARTNERS AS CHIEF RESTRUCTURING OFFICER

Upon consideration of the Sklar Exploration Company, LLC's and Sklarco, LLC's (collectively the "Debtors") Motion for Entry of Order Authorizing Debtors' Employment of CR3 Partners as Chief Restructuring Officer Effective as of May 21, 2020 (the "Motion") and any response(s) to the Motion, after due and proper notice of the Motion was given and a hearing was held on the Motion, it is ORDERED that:

1.　　The Motion is GRANTED as modified herein.

2.　　The Debtors are authorized to engage CR3 Partners, LLC on the terms described in the Motion, subject to the following terms, which apply notwithstanding anything in the Motion or any exhibit(s) related thereto to the contrary:

(a.)　　CR3 Partners, LLC and its affiliates shall not act in any other capacity (for example, and without limitation, as a financial advisor, claims agent/claims

administrator, or investor/acquirer) in connection with the above-captioned cases.

(b.) In the event the Debtors seek to have CR3 Partners, LLC personnel assume executive officer positions that are different than the position(s) disclosed in the Motion, or to materially change the terms of the engagement by either (i) modifying the functions of primary personnel, (ii) adding new personnel to oversee the engagement, or (iii) altering or expanding the scope of the engagement, a motion to modify the retention shall be filed.

(c.) CR3 Partners, LLC shall file with the Court with copies to the United States Trustee ("U.S. Trustee"), all official committees, East West Bank, and, upon request, any oil and gas lease working interest owner whose interests are operated by SEC ("Working Interest Owner"), a report of staffing on the engagement for the previous month. Such report shall include the names and functions filled of the individuals assigned. All staffing shall be subject to review by the Court in the event an objection is filed.

(d.) No principal, employee or independent contractor of CR3 Partners, LLC and its affiliates shall serve as a director of any of the above-captioned Debtors during the pendency of the above-captioned cases.

(e.) CR3 Partners, LLC shall file with the Court, and provide notice to the U.S. Trustee, all official committees, East West Bank, and, upon request, any Working Interest Owner, reports of compensation earned and expenses incurred on a monthly basis. Such reports shall contain summary charts which describe the services provided, identify the compensation earned by

2

each executive officer and staff employee provided, and itemize the expenses incurred. Time records shall (i) be appended to the reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category. Where personnel are providing services at an hourly rate, the time entries shall identify the time spent completing each task in 1/10/hour increments and the corresponding charge (time multiplied by hourly rate) for each task; where personnel are providing services at a "flat" rate, the time entries shall be kept in hourly increments. All compensation shall be subject to review by the Court in the event an objection is filed.

(f.)     Success fees, transaction fees, or other back-end fees shall be approved by the Court at the conclusion of the case on a reasonableness standard and are not being pre-approved by entry of this Order. No success fee, transaction fee or back-end fee shall be sought upon conversion of the case, dismissal of the case for cause, or appointment of a trustee.

(g.)     The Debtors are permitted to indemnify those persons serving as executive officers on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the Debtors' D&O policy.

(h.)     There shall be no indemnification of CR3 Partners, LLC or its affiliates.

(i.)     For a period of three years after the conclusion of the engagement, neither CR3 Partners, LLC, nor any of its affiliates shall make any investments in the Debtors or the Reorganized Debtors.

3

(j.)   CR3 Partners, LLC shall disclose any and all facts that may have a bearing on whether the firm, its affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to the Debtor(s), its/their creditors, or other parties in interest.  The obligation to disclose identified in this subparagraph is a continuing obligation.

3.   During the pendency of these chapter 11 cases and until a final non-appealable order is entered (i) confirming a plan of reorganization, (ii) authorizing the resignation of CR3 Partners, LLC ("CR3") or the removal of CR3 for cause, or (iii) converting or dismissing these chapter 11 cases, the Debtors' respective operating agreements, as may have been previously supplemented, amended and/or restated (the "Operating Agreements"), are hereby deemed amended as follows:

a)   CR3 shall be the sole Manager (as defined in the Operating Agreements), the Manager-Chairman (as defined in the Operating Agreements), and the chief restructuring officer of each Debtor, and shall assume the powers and duties of the Manager, Manager-Chairman, and Chairman/Chief Executive Officer (as defined or referenced in the Operating Agreements) of each Debtor.

b)   Howard Sklar—the Debtors' current Manager, Manager-Chairman, Chairman/Chief Executive Officer—shall have no decision-making authority for the Debtors and shall have limited participation in the management of the Debtors or their business affairs, such as providing information and cooperation as reasonably directed by CR3, and advising in the operation of the wells.

4

c) Notwithstanding any provision in the Operating Agreements to the contrary, no vote or approval of the members of the Debtors shall be required for CR3 to take any action within the scope of any of its duties as chief restructuring officer.

d) Notwithstanding any provision in the Operating Agreements to the contrary, absent prior authorization by order of the Court, no member of the Debtors shall have authority or power to act on behalf of any Debtor or to challenge, limit, impede, or usurp the decisions of CR3 within the scope of any of its duties as chief restructuring officer.

e) Notwithstanding any provision in the Operating Agreements to the contrary, CR3 shall not be entitled to any compensation or salary except as provided under the terms of its engagement as approved by this Order.

4.     The Committee shall have full investigative authority and concurrent standing to pursue actions arising under 11 U.S.C. §§ 544, 547, 548, 549, or 550, and all estate claims against statutory and non-statutory insiders.

5.     Within sixty (60) days of entry of this order, CR3 Partners, LLC shall file a status report with the Court detailing operational changes implemented by CR3, its efforts to determine the disposition of funds from cash call advances on a pre-petition basis, and its efforts undertaken in furtherance of the Debtors' reorganization.  Within 120 days, CR3 will prepare a report detailing on a well by well basis, SEC's receipt and disposition of funds received from Working Interest Owners, an examination of invoices and proof of payment for expenditures on each well, and a review of the disposition of funds that should have been paid to Working Interest Owners for the six-month period prior to the filing of the Debtors' bankruptcy petitions.  CR3 reserves the right

to retain any additional professionals necessary to complete such a report, including, without limitation, a qualified CPA.  Following completion of the report, CR3 shall meet with East West Bank, the Committee, and Working Interest Owners requesting to attend such meeting to determine what, if any, further time periods should be examined.

      6.     As additional conditions, the Court further orders as follows:

      a)   Within twenty (20) days of entry of this Order, Howard Sklar, in his capacities as Manager of the Miriam Sklar L.C., Trustee of the Howard Trust, Trustee of the Alan Trust, as Trustee of the Sam Trust, Trustee of the Jacob Grantor Trust, Trustee of the Alan Grantor Trust, and Independent Executor of the Succession of Miriam Mandel Sklar (said entities, estates, and trusts collectively referred to as "the Sklar Family Trusts") shall make available and turn over to the Debtor SEC under the management and control of CR3 for review and inspection by CR3 and its designees, all records, reports, and other information of whatever medium the Sklar Family Trusts possess within their control, documenting: (i) the assets (whether real property, mineral or working interests or the proceeds thereof held in the name of Sklarco or SEC that are owned for the use or benefit of the Sklar Family Trusts, including but not limited to those assets held by Sklarco or SEC as agents pursuant to the Agency Services Agreement executed July 2, 2010 (tendered Tauber Exhibit TM-TAU-39), as amended by the First Amendment to Agency Services Agreement executed August 31, 2015 (Tauber Exhibit TM-TAU-40), or any subsequent amendments thereto; (ii) any books and records of the Sklar

Family Trusts or the Debtors relating to any amounts owed to each other or reflected on the books and records of the Debtors as debits and credits in their general ledger accounts; (iii) copies of the Agency Service Agreement dated effective December 14, 2007, executed by Sklarco, as Agent, and Howard F. Sklar (in various capacities), the Letter Agreement dated December 31, 2008, and the Plan of Separation and Reorganization for the Sklar Family Business Enterprise (all of which are referenced on pages 6 and 7 of the Agency Services Agreement); (iv) the receipt, distribution, or exchange of funds, other assets, or things of value, by or between either of the Debtors and any of the Sklar Family Trusts (or Howard Sklar as manager, trustee, or executor on behalf of any of the Sklar Family Trusts) having occurred for a period of [four (4)] years prior to the Petition Date in these cases and for any periods since the Petition Date,  (v) copies of all statements of account in any financial institution relating to funds, securities or investments of the Sklar Family Trusts during such time period; and (vi) a copy of any reserve report pertaining to the oil and gas reserves owned by either Debtor that was prepared within the last two years (collectively "Paragraph 6(a) Documents").

b) Subject to the proviso below, within twenty (20) days of its initial review of any such records, reports, or documentation, CR3 shall make the same available for inspection and review by East West Bank, the Committee, or any Working Interest Owner who has requested a copy of such documents. If any additional or supplemental information of a similar nature is

subsequently produced for inspection to CR3, CR3 shall make that information available to East West Bank, the Committee, or any Working Interest Owner within twenty (20) days of CR3's initial review of the same; provided, however, that no such party shall be permitted to review, inspect, or copy the Paragraph 6(a) Documents until having first agreed in writing to be bound by a Protective Order approved by the Court, as more fully described below.

c)  Within ten (10) days following entry of this Order, Debtors' counsel shall tender to the Court the form of a Protective Order, after first having conferred with counsel to any party who had originally objected to the Motion, which Protective Order shall restrict from distribution and disclosure confidential information made available hereunder; provided that form of Protective Order shall permit such information to be used by any such party for adversary proceedings, contested matters, or evidentiary hearings before the Court.

7.     Within forty-five (45) days after the date of this Order, CR3 shall obtain copies of any mineral deeds or assignments of interests in oil and gas leases, including without limitation, assignments of royalty interests, overriding royalty interests, and net profits interests, filed in the public records of Escambia or Conecuh Counties, Alabama since January 1, 2019, in which the Grantee or Assignee is Maevlo Production L.P., Maevlo Smackover, LLC, Maevlo Smackover-ORRI, LLC, Maevlo PRB 1, LLC, Maevlo Land Services, LLC, or their affiliates (collectively "Maevlo entities"), and for which the transferred interests described therein are located within the boundaries of the Revised Exhibit "A" and Revised Exhibit "A-2" for the Escambia Prospect as set forth in that Amendment to Operating Agreement dated effective November 1, 2011, by and among the Escambia Prospect Participants, which Amendment to Operating Agreement was

8

submitted to the Court as part of proposed Tauber Exhibit TM-TAU-4 at the hearing on June 11, 2020 on the Motion and other pending motions.  Upon collecting said copies, CR3 on behalf of the Debtors shall make the same available to any Working Interest Owner who requests all or a portion of such documents.  Debtors shall further provide any documents or records within their possession concerning any payment or transfer of money or property by either of the Debtors or the Sklar Family Trusts to any Maevlo entities and shall describe the purpose for or consideration for any such payment or transfer.

8.      As set forth above, CR3's engagement shall be as a Chief Restructuring Officer for both Debtors.  In exercising its powers and fulfilling its responsibilities with respect to SEC, as operator, CR3 shall refrain, and shall cause SEC to refrain, from treating Sklarco preferentially, and shall apply the provisions of all participation agreements, joint operating agreements, unitization agreements and similar or related documents (collectively, the "JOAs") equally and in a non-discriminatory manner as written, on a post-petition basis among Sklarco and other Working Interest Owners, including but not limited to, those provisions related to notification of defaults, non-payment of lease operating expenses, balloting for Authorizations for Expenditure, calls for cash advances, and enforcement of risk compensation and other remedial provisions.  In the event that CR3, as manager of either Debtor, determines (and it shall have the duty to so determine) that the exercise of its obligations as to either SEC or Sklarco presents a material post-petition conflict with its obligations as to the other Debtor, CR3 shall file a written report of such conflict with the Court, with copies of such report being also made available the other applicable Working Interest Owners (or their counsel of record in these cases), and obtain an order approving of such action prior to taking action on the articulated conflict.

9.      In the event that any party believes that the Debtors have defaulted or breached any provision of this Order, the party shall provide the Debtor with notice of the default or breach and ten calendar (10) days to cure, failing which the party may request relief in Court.

10.     If there is any conflict between this Order and the Final Order Authorizing Use of Cash Collateral, the Final Order Authorizing Use of Cash Collateral shall control, but shall not remove the obligation for CR3 to file a written report detailing any conflict and obtaining an order approving such action as set forth above.

DATED this 15th day of June, 2020

BY THE COURT:

Elizabeth E. Brown, Bankruptcy