UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC ) | |
| EIN: 72-1417930 ) | Chapter 11 |
| ) | |
|   Debtor. ) | |
| ) | |
| _____ ) | |
| ) | Case No. 20-12380-EEB |
| SKLARCO, LLC ) | |
| EIN:  72-1425432 ) | Chapter 11 |
| ) | |
|   Debtor. ) | |

**MOTION PURSUANT TO 11 U.S.C. § 1121 FOR AN ORDER EXTENDING
THE EXCLUSIVITY PERIODS FOR FILING AND GAINING ACCEPTANCE
OF  A PLAN OF REORGANIZATION**

The Debtors, Sklar Exploration Company, LLC ("SEC") and Sklarco, LLC ("Sklarco"), by and through their attorneys, Kutner Brinen, P.C., move the Court for entry of an Order pursuant to 11 U.S.C. §1121(d), granting an extension of the exclusive period to file their Plan of Reorganization and to gain acceptance of their Plan of Reorganization, and as grounds therefore state as follows:

**BACKGROUND**

1.  The Debtors filed for relief under chapter 11 of the Bankruptcy Code on April 1, 2020.  The Debtors remain Debtors-in-Possession.

2.  The Office of the United States Trustee appointed an Official Committee of Unsecured Creditors ("Committee") on April 16, 2020.

3.  SEC is engaged in business as an independent exploration and production company in the oil and gas industry.  SEC is an operating company and does not own oil or gas properties.  SEC has its principal business office in Boulder, Colorado and has additional offices in Shreveport, Louisiana and Brewton, Alabama.  SEC's exploration and production activities are primarily located in East Texas, North Louisiana, South Mississippi, South Alabama and the Florida Panhandle.  SEC is also developing properties and opportunities in the western United

States, though no oil or gas production has been produced from the wells in the western United States.

4. Sklarco is a Louisiana limited liability company engaged in business as the owner of certain oil and gas leases and property interests in East Texas, North Louisiana, South Mississippi, South Alabama, the Florida Panhandle, and the western United States.

5. As of the Petition Date, SEC was the operator of approximately 60 wells and was in the process of developing several new prospects, including a helium well in Montana, a well and pipeline in Florida, and several new wells in Alabama.

6. Each of the wells operated by SEC is subject to a number of different property interests, including royalty interests ("RIs"), overriding royalty interests ("ORRIs"), and working interests ("WIs"). As the operator of the wells, in the ordinary course of business, SEC collects revenue from the sales of hydrocarbons, and distributes revenue, first to its RIs to ensure maintenance of applicable mineral leases, and then to ORRIs and WIs. The holders of WIs are also issued invoices for their proportionate share of expenses through joint interest billings ("JIBs").

7. The Debtors' assets are subject to a duly perfected secured claim in favor of the Debtors' prime lender East West Bank as Agent and Lead Arranger ("Bank"). The Bank filed Proof of Claim No. 29-1 in SEC's case asserting a secured claim in the amount of $22,989,650.74. The same claim is evidenced by Proof of Claim No. 1-1 filed in Sklarco's case.

8. In early December, the Debtors were notified for the first time by email about a default with respect to the Debtors' Current Ratio. At the time of learning about the default in the Current Ratio, the Debtors were advised that the default could be addressed with a payment in the amount of $12,500.

9. In February 2020, the Debtors received the first letter asserting a default under the Debtors' lending agreement with the Bank. At that time, the Debtors engaged in discussions with the Bank regarding a forbearance agreement that would resolve issues related to the default.

10. The Debtors' discussions were ongoing, and likely would have been successful, but for the impact of the ongoing dispute between Russia and the Organization of Petroleum Exporting Countries ("OPEC") causing a substantial decrease in oil prices, which were then compounded by the COVID-19 crisis.

11. The substantial drop in the price of oil, from an average price of $61.06 per barrel on January 1, 2020 to $20.48 per barrel on March 31, 2020, caused a substantial loss of revenue to the Debtors.[1] As a result of the loss of operating revenue, the Debtors became heavily dependent on the revenue from the Debtors' hedging agreements which the Debtor was fortunate to have in place, and the Debtors' ongoing discussions with the Bank were placed in jeopardy. Post-petition, the price of oil, post-petition sank as low as -$38 a barrel and has now returned to a range of approximately $40 per barrel.

12. With the breakdown in the discussions with the Bank, the Debtors' hedging agreements, which also served as collateral for the loan, were placed in jeopardy and the Debtors filed their voluntary petitions for relief pursuant to Chapter 11 of the Bankruptcy Code on April 1, 2020 to preserve the hedging agreements and reorganize while preserving the going concern value of the Debtors.

13. Following the bankruptcy filing, the Debtors were met with opposition at virtually every turn, resulting in substantial delays in the Debtors ability to make progress in their case. By way of example, the Debtors had to have a two-day trial to obtain the use of cash collateral on an interim basis over the staunch opposition of several working interest holders for a two-week period and a trial over the contested motion to compel SEC to assume an operating agreement. Additionally, the Debtors have had to address opposition to their efforts to appoint a Chief Restructuring Officer ("CRO") and the Tauber Group's Motion to Appoint a Trustee Pursuant to 11 U.S.C. § 1104 or in the Alternative, To Convert to a Case Under Chapter 7 filed within the first 60 days of the case.

14. As a result of the substantial opposition faced by the Debtors early in the case, the Debtors restructuring efforts have experienced substantial delays.

15. On June 15, 2020 the Court entered its Order Granting Debtors' Motion For Entry Of Order Authorizing Debtors' Employment of CR3 Partners as Chief Restructuring Officer ("CRO Order"). The CRO Order appointed CR3 Partners ("CR3") as the CRO for the Debtors during the course of the Chapter 11 cases. CR3, along with the individuals CR3 has selected to work on the Debtors' cases, are a highly experienced national turnaround and advisory firm with extensive experience in assisting companies operating in Chapter 11, including oil and gas companies. CR3 was the choice of the Bank, the Committee and the Debtors.

---

[1] Prices based on West Texas Intermediate Crude.

16. CR3 was charged with a number of time-consuming tasks at the time they were appointed. The tasks were set on tight time frames and CR3 is working on all of the tasks and reports. While CR3 has spent substantial time with the Debtors and their records, they are learning the business, analyzing contracts and operations, and meeting with the various creditor constituencies. All of this will be useful to CR3 at the time they can address development of a Plan with input provided by all creditor groups.

17. Additional time is necessary for the CRO to come up to speed on the Debtors' operations, complete a thorough review of the Debtors' assets and liabilities, develop a Plan, and engage in discussions regarding the Plan with the Bank, the Committee, and other parties in interest.

18. As such, as set forth more fully herein, the Debtors are requesting a 117-day extension, through and including November 25, 2020, of the exclusive period within which the Debtors may file a Plan of Reorganization to allow the Debtors to proceed with their restructuring efforts with a Plan negotiated by the CRO without facing a rush of competing Plans and unnecessary litigation over Plans.

**RELIEF REQUESTED**

19. Pursuant to 11 U.S.C. §1121(c), the Bankruptcy Code grants the Debtors, as debtors-in-possession, an exclusive period of 120 days to file a Plan of Reorganization ("Exclusivity Period"), and exclusivity period of 180 days to gain acceptance of such Plan ("Acceptance Period") .

20. Pursuant to 11 U.S.C. §1121(d), this Court may, for cause, extend the exclusive period for the Debtors to file their Plan of Reorganization and gain acceptances of their Plan of Reorganization.

21. "Cause" for the purposes of section 1121(d) is not defined by the Bankruptcy Code. *In re Adelphia Communs. Corp.*, 352 B.R. 578, 586-87 (Bankr. S.D.N.Y. 2006). In determining whether "cause" exists to extend exclusivity, the bankruptcy court will generally conduct a fact specific inquiry, and has broad discretion in determining whether cause exists to extend the exclusivity period. *Id.*

22. In determining whether cause exists to extend the exclusivity period, courts typically rely on nine factors, including:

4

      a.      The size and complexity of the case;

      b.      the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;

      c.      the existence of good faith progress toward reorganization;

      d.      the fact that the debtor is paying its bills as they become due;

      e.      whether the debtor has demonstrated reasonable prospects for filing a viable plan;

      f.      whether the debtor has made progress in negotiations with its creditors;

      g.      the amount of time which has elapsed in the case;

      h.      whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

      i.      whether an unresolved contingency exists.

*In re Akbari-Shamirzadi*, 2014 Bankr. LEXIS 4662, at *10 (Bankr. D.N.M. Nov. 7, 2014)(citing *In re Dow Corning Corp.*, 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997)).

    23.    The Debtors' cases are large and complex. Sklarco's case will require a fact specific analysis of the various mineral leases held to determine in each instance if the leases should be retained or not. In many cases the leases are real property interests but in several states the leases provide personal property interests. SEC's case will require an extensive analysis of the nature and extent of various interests asserted in the funds received by SEC, including an in-depth analysis of the relative priority of various mechanics and material supplier liens, the priority of interest holders and any liens asserted by such interest holders, and the priority of the Bank in light of the other liens asserted. The CRO will also have to determine which projects require further development and cost. In particular the CRO is looking at the Montana helium well and the completion of a gas pipeline in Florida. The first factor therefore weighs in favor of extending exclusivity.

    24.    Because of the complexity of these factors, and the delays experienced by the Debtors early in the case, additional time is necessary to permit the Debtors, through the newly appointed CRO, to attempt to negotiate a Plan and prepare a Disclosure Statement containing adequate information. Accordingly, the second factor weighs in favor of extending exclusivity.

    25.    The Debtors have made good faith efforts towards reorganizing, including substantial reductions in overhead expenses, and detailed discussions with the Bank and the

Committee. The Debtor has already established an extensive online data room where creditors can obtain significant financial data on the Debtors' ongoing and historic operations. Accordingly, the third factor weighs in favor of extending exclusivity.

26. The Debtors are current on all post-petition obligations and expenses, including payments to the Bank, payments to vendors, and distributions of post-petition revenue owed to interest holders. Revenue is segregated for interest holders and the pre-petition issues identified by certain working interest holders with the Debtors' management of cash have been corrected by the Debtors with the CRO. Accordingly, the fourth factor weighs in favor of extending exclusivity.

27. The Debtors are still evaluating options for a Plan of Reorganization, but anticipate being able to file a viable Plan within a reasonable period of time. Accordingly, the fifth factor weighs in favor of extending exclusivity.

28. The Debtors have not had the ability to engage in substantive discussions with their creditors regarding the Plan, primarily due to the opposition faced early in the case. However, a CRO was appointed on June 15, 2020 and creditors now have an individual with complete authority over the Debtors who can negotiate a Plan with creditors. The sixth factor therefore weighs in favor of the extension of exclusivity.

29. The Debtors cases are still in their relative infancy, and have been pending for less than 90 days. This is the Debtors' first request for an extension of exclusivity. Accordingly, the seventh factor weighs in favor of extending exclusivity.

30. The Debtors are not seeking an extension of the exclusivity period to pressure creditors to submit to any of the Debtors' reorganization demands. Rather, the extension is necessary to allow for an in depth and thorough analysis of the Debtors' assets, liabilities, and options for reorganization and refinancing by the CRO. Accordingly, the eighth factor weighs in favor of extending exclusivity.

31. At this time, the Debtors are not aware of any unknown contingencies.

32. Because the factors set forth above largely support a finding of cause to extend exclusivity, the Debtors request that this Court enter an order extending the Exclusivity Period and the Acceptance Period for additional 117 days, or through and including November 25, 2020, and January 24, 2021 respectively.

33. While the Debtors are requesting an extension of the Exclusive Period for 117 days, the Debtors are cognizant of the benchmark date of October 1, 2020 to propose a Plan of Reorganization in the *Final Order Authorizing Use of Cash Collateral, Granting Adequate Protection, and Providing Related Relief* (Docket No. 433). Nonetheless, the extension of 117 days is necessary to ensure that the Plan process can proceed with a jointly developed Plan.

34. Termination of the exclusivity period could result in multiple plans being filed which would delay reorganization and result in unnecessary time and litigation over competing Plans before the CRO has had time to fully understand the Debtors' business, projects, and opportunities. The Debtors should have an extended opportunity to propose and negotiate a meaningful Plan with the creditors considering the complexity of the issues in this case, the delays experienced by the Debtors in the reorganization efforts and the recent appointment of the CRO.

35. Granting the extension of exclusivity will allow the Debtors to work with the creditors and the Creditors Committee to develop a consensual Plan of Reorganization, will not unduly delay the administration of the Debtors' Chapter 11 bankruptcy cases, and will greatly assist the Debtors in their efforts to reorganize under Chapter 11 of the Bankruptcy Code and with respect to ongoing business operations.

36. Accordingly, extending the Exclusive Period and Acceptance Period for an additional 117 days is necessary and warranted in the Debtors' cases.

37. In accordance with Fed. R. Bankr. P. 2002, L.B.R. 2002-1 and 2081-2(c), and the *Order Granting Ex Parte Motion for Order Limiting Notice* (Docket No. 263), notice of this Motion is being provided to: 1) the United States Trustee; 2) the Committee; 3) the Bank; 4) all secured and priority creditors; and 5) those parties who have entered an appearance and requested notice; and 6) the 20 largest unsecured creditors.

WHEREFORE, the Debtors pray that this Court enter an Order extending the Exclusive Period and Acceptance Period for an additional 117 days, and for such further and additional relief as to the Court may appear proper.

DATED: July 2, 2020

Respectfully submitted,

By:    */s/ Keri L. Riley*
      Lee M. Kutner #10966
      Keri L. Riley, #47605
      **KUTNER BRINEN, P.C.**
      1660 Lincoln St., Suite 1850
      Denver, CO 80264
      Telephone: (303) 832-2400
      E-Mail: lmk@kutnerlaw.com
      E-Mail: klr@kutnerlaw.com

## CERTIFICATE OF SERVICE

I certify that on July 2, 2020, I served a complete copy of the foregoing **MOTION PURSUANT TO 11 U.S.C. SECTION 1121 FOR AN ORDER EXTENDING THE EXCLUSIVITY PERIODS FOR FILING AND GAINING ACCEPTANCE OF A PLAN OF REORGANIZATION** on the following parties in compliance with the Federal Rules of Bankruptcy Procedure and the Court's Local Rules:

Paul Moss, Esq.
US Trustee's Office
1961 Stout Street
Suite 12-200
Denver, CO 80294

Stoneham Drilling Corporation
(Representative: Heather Stickel)
c/o James B. Bailey, Esq.
Bradley Arant Boult Cummings, LLP
1819 Fifth Avenue North
Birmingham, AL 35203

Mesa Fluids, LLC
(Representative: Aaron W. Merrell)
1669 South 580 East
American Fork, UT 84057

TCP Cottonwood, L.P.
(Representative: Kyle C. McInnis)
c/o Eric Lockridge
400 Convention Street
Suite 700
Baton Rouge, LA 70801

Rapad Well Service Company, Inc.
(Representative: Chesley James)
c/o Jeremy Retherford, Esq.
Balch & Bingham, LLP
1901 Sixth Avenue North
Suite 1500
Birmingham, Alabama 35203-4642

Kelley Brothers Contractors, Inc.
(Representative: Jerry Kelley)
401 County Farm Road
Waynesboro, MS 39367

Baker Hughes Company
(Representative: Christopher J. Ryan)
2001 Rankin Road
Houston, TX 77073

Timothy C. Mohan, Esq.
Foley & Lardner, LLP
600 17th Street
Suite 2020 South
Denver, CO 80202

J. Eric Lockridge, Esq.
Kean Miller LLP
400 Convention Street
Suite 700
P.O. Box 3513
Baton Rouge, LA 70802

Craig K. Schuenemann, Esq.
Bryan Cave Leighton Paisner LLP
1700 Lincoln Street
Suite 4100
Denver, CO 80203

Giovanni M. Ruscitti, Esq.
Berg Hill Greenleaf Ruscitti, LLP
1712 Pearl Street
Boulder, CO 80302

Bryce A. Suzuki, Esq.
Bryan Cave Leighton Paisner, LLP
Two North Central Avenue
Suite 2100
Phoenix, AZ 85004-4406

9

James B. Bailey, Esq.
Bradley Arant Boult Cummings, LLP
1819 Fifth Avenue North
Birmingham, AL 35203

Timothy M. Riley, Esq.
Hopping Green & Sams, P.A.
P.O. Box 6526
Tallahassee, FL 32314

Michel D. Rubenstein, Esq.
Liskow & Lewis
1001 Fannin Street
Suite 1800
Houston, TX 77002

Duane J. Brescia, Esq.
Clark Hill Strasburger
720 Brazos
Suite 700
Austin, TX 78701

Kevin S. Neiman, Esq.
Law Offices of Kevin S. Neiman, P.C.
999 18th Street
Suite 1230 South
Denver, CO 80202

Robert L. Paddock, Esq.
Buck Keenan LLP
2229 San Felipe
Suite 1000
Houston, TX 77019

Jeremy L. Retherford, Esq.
Balch & Bingham, LLP
1901 Sixth Avenue North
Suite 1500
Birmingham, Alabama 35203

Matthew J. Ochs, Esq.
Holland & Hart, LLP
555 Seventeenth Street
Suite 3200
P.O. Box 8749
Denver, CO 80201-8749

Shay L. Denning, Esq.
Thomas H. Shipps, Esq.
Maynes, Bradford, Shipps & Sheftel, LLP
835 East Second Avenue
Suite 123
Durango, CO 81301

Robert Padjen, Esq.
Deanna Lee Westfall, Esq.
Assistant Attorney General
Colorado Department of Law
1300 Broadway
8th Floor
Denver, CO 80203

Timothy M. Swanson, Esq.
Moye White LLP
1400 16th Street
6th Floor
Denver, CO 80202-1486

Joseph E. Bain, Esq.
Jones Walker LLP
811 Main Street
Suite 2900
Houston, TX 77002

Madison Tucker, Esq.
Jones Walker LLP
201 St. Charles Avenue
Suite 5100
New Orleans, Louisiana 70170

Barnet B. Skelton, Jr., Esq.
815 Walker
Suite 1502
Houston, TX 77002

Amy L. Vazquez, Esq.
Jones Walker LLP
811 Main Street
Suite 2900
Houston, TX 77002

Matthew S. Okin, Esq.
John Thomas Oldham, Esq.
Okin Adams, LLP
1113 Vine Street
Suite 240
Houston, TX 77002

Christopher H. Meredith, Esq.
Copeland Cook Taylor & Bush, P.A.
1076 Highland Colony Parkway
600 Concourse, Suite 200
P.O. Box 6020
Ridgeland, Mississippi 39158-6020

Michael L. Niles, Esq.
Brian G. Rich, Esq.
Berger Singerman LLP
313 North Monroe Street
Suite 301
Tallahassee, FL 32301

Victoria Argeroplos, Esq.
Jackson Walker LLP
1401 McKinney Street
Suite 1900
Houston, TX 77010

David R. Taggart, Esq.
Bradley Murchison Kelly & Shea, LLC
401 Edwards Street
Suite 1000
Shreveport, Louisiana 71101

Jordan B. Bird, Esq.
Cook Yancey King & Galloway, APLC
333 Texas Street
Suite 1700
P.O Box 22260
Shreveport, Louisiana 71120-2260

Paul H. Stephenson III, Esq.
Jim F. Spencer, Jr., Esq.
Watkins & Eager, PLLC
P.O. Box 650
Jackson, Mississippi 39205

John D. Cornwell, Esq.
Grant M. Beiner, Esq.
Christopher D. Johnson, Esq.
Munsch Hardt Kopf & Harr, P.C.
700 Milam Street
Suite 2700
Houston, TX 77002

Michael J. Guyerson, Esq.
Buechler Law Office, LLC
999 18th Street
Suite 1230 South
Denver, CO 80202

Jordan B. Bird, Esq.
Cook Yancey King & Galloway, APLC
333 Texas Street
Suite 1700
Shreveport, Louisiana 71120-2260

Robert L. Paddock, Esq.
Buck Keenan, LLP
2229 San Felipe
Suite 1000
Houston, TX 77019

Ryan M. Seidemann, Esq.
Assistant Attorney General
Civil Division/Lands and Natural Resources
P.O. Box 94005
Baton Rouge, Louisiana 70804-9005

David M. Miller, Esq.
Spencer Fane LLP
1700 Lincoln Street
Suite 2000
Denver, CO 80203

Jennifer J. Hardy, Esq.
Willkie Farr & Gallagher, LLP
600 Travis Street
Houston, TX 77002

Duane J. Brescia, Esq.
Clark Hill Strasburger
720 Brazos Street
Suite 700
Austin, TX 78701

Andrew G. Edson, Esq.
Clark Hill Strasburger
901 Main Street
Suite 6000
Dallas, TX 75202

Craig M. Geno, Esq.
Law Offices of Craig M. Geno, PLLC
587 Highland Colony Parkway
Ridgeland, MS 39157

Christopher H. Meredith, Esq.
Glenn Gates Taylor, Esq.
Copeland Cook Taylor & Bush, P.A.
600 Concourse, Suite 200
1076 Highland Colony Parkway
P.O. Box 6020
Ridgeland, MS 39158-6020

Matthew S. Okin, Esq.
John Thomas Oldham, Esq.
Okin Adams LLP
1113 Vine Street
Suite 240
Houston, TX 77002

Curtis R. Shelton, Esq.
Jennifer Norris Soto, Esq.
Ayres Shelton Williams Benson & Paine, LLC
333 Texas Street, Suite 1400
P.O. Box 1764
Shreveport, Louisiana 71166

Armistead M. Long, Esq.
Gordon Arata Montgomery Barnett
McCollam Duplantis & Eagan, LLC
400 East Kaliste Saloon Road
Suite 4200
Lafayette, Louisiana 70508

Ryan J. Lorenz, Esq.
Clark Hill PLC
14850 North Scottsdale Road
Suite 500
Scottsdale, Arizona 85254

Brian G. Rich, Esq.
Michael J. Niles, Esq.
Berger Singerman LLP
313 North Monroe Street
Suite 301
Tallahassee, FL 32301

Katherine A. Ross, Esq.
U.S. Attorney's Office for the
  District of Colorado
Assistant United States Attorney
1801 California Street
Suite 1600
Denver, CO 80202

Ryco Exploration, LLC
401 Edwards Street
Suite 915
Shreveport, LA 71101
ATTN: M. Robin Smith

Ryco Exploration, LLC
40 Golf Club Drive
Haughton, LA 71037
ATTN: M. Robin Smith

Stephen K. Lecholop II, Esq.
Rosenthal Pauerstein, Esq.
Sandoloski Agather LLP
755 East Mulberry
Suite 200
San Antonio, TX 78212

Katherine Guidry Douthitt, Esq.
Blanchard Walker O'Quin & Roberts
P.O. Box 1126
Shreveport, Louisiana 71163

Andrew J. Shaver, Esq.
Bradley Arant Boult Cummings LLP
1819 Fifth Avenue North
Birmingham, AL 35203

Theodore J. Hartl, Esq.
Ballard Spahr LLP
1225 17th Street
Suite 2300
Denver, CO 80202-5596

John H. Smith
Quitman Tank Solutions, LLC
P.O. Box 90
Quitman, MS 39355

Belinda Harrison
58 County Road 5033
Heidelberg, MS 39439


/s/Vicky Martina
**Vicky Martina**
**Kutner Brinen PC**