UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC | ) | |
| EIN: 72-1417930 | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| | ) | Case No. 20-12380-EEB |
| SKLARCO, LLC | ) | |
| EIN:  72-1425432 | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

**MOTION TO EXTEND TIME TO ASSUME OR REJECT NONRESIDENTIAL REAL
PROPERTY LEASES PURSUANT TO 11 U.S.C. § 365(d)(4)**

The Debtors, Sklar Exploration Company, LLC ("SEC") and Sklarco, LLC ("Sklarco"
and together "Debtors"), by and through their attorneys, Kutner Brinen, P.C., move the Court for
an entry of an Order extending the time in which the Debtors are required to assume or reject
nonresidential real property leases pursuant to Bankruptcy Code § 365(d)(4) and as grounds
therefor, respectfully state as follows:

**BACKGROUND**

1.      The Debtors filed for relief under chapter 11 of the Bankruptcy Code on April 1,
2020.  The Debtors remain Debtors-in-Possession.

2.      The Office of the United States Trustee appointed an Official Committee of
Unsecured Creditors ("Committee") on April 16, 2020.

3.      SEC is engaged in business as an independent exploration and production
company in the oil and gas industry.  SEC is an operating company and does not own oil or gas
properties.  SEC has its principal business office in Boulder, Colorado and has additional offices
in Shreveport, Louisiana and Brewton, Alabama.  SEC's exploration and production activities
are primarily located in East Texas, North Louisiana, South Mississippi, South Alabama and the
Florida Panhandle.  SEC is also developing properties and opportunities in the western United
States, though no oil or gas production has been produced from the wells in the western United
States.

4.      Sklarco is a Louisiana limited liability company engaged in business as the owner of certain oil and gas leases and property interests in East Texas, North Louisiana, South Mississippi, South Alabama, the Florida Panhandle, and the western United States.

5.      SEC is a party to three unexpired nonresidential real property leases for its offices in Shreveport, Louisiana, Brewton, Alabama, and Boulder, Colorado.  SEC is not a lessee under any mineral leases.

6.      Each of the wells operated by SEC is subject to a number of different property interests, including royalty interests ("RIs"), overriding royalty interests ("ORRIs"), and working interests ("WIs").  RIs and ORRIs are not required to contribute to the ongoing expenses and development of the operation of the wells, while WIs are required to contribute a proportionate share for ongoing operation of the operated property in which they hold a WI.

7.      On the Petition Date, Sklarco was a party to approximately 3,500 mineral leases ("Oil and Gas Leases") located across the United States.  A majority of the SEC operated leases are located in Alabama, Louisiana, Mississippi, and Texas, with a smaller number in Montana, Wyoming, and Florida.  Sklarco is also a party to numerous mineral leases on non-SEC operated properties in Alabama, Louisiana, Mississippi, Texas, Arkansas, and Arizona.  A list of the mineral leases is attached hereto as Exhibit A.

8.      While each of the Oil and Gas Leases varies, a typical Oil, Gas and Mineral Lease requires Sklarco to pay a certain amount at the time of entering into the lease in exchange for a leasehold interest in the minerals for an initial term.  An example of an Oil, Gas and Mineral Lease is attached hereto as Exhibit B.  The lease generally provides that the initial term of the lease will continue "as long thereafter as operations . . . are conducted upon said land with no cessation for more than ninety (90) consecutive days."  The Oil and Gas Leases will also generally provide for the conveyance of a royalty interest to the lessor, but does not require any ongoing rent or additional lease payments during the initial term.

9.      Because the Oil and Gas Leases are paid in full at the time the lease is executed, Sklarco does not have any ongoing payment obligations to the lessors under the Oil and Gas Leases beyond the payments owed on account of their respective RIs.  The Debtors are current on all pre- and post-petition obligations to RI holders.

10.      On June 15, 2020 the Court entered its *Order Granting Debtors' Motion For Entry Of Order Authorizing Debtors' Employment of CR3 Partners as Chief Restructuring Officer*

2

("CRO Order").

11.     The CRO Order appointed CR3 Partners ("CR3") and James Katchadurian, a partner at CR3, as the Chief Restructuring Officer ("CRO") for the Debtors during the course of the Chapter 11 cases.  CR3, along with the individuals they have selected to work on this case are a highly experienced national turnaround and advisory firm with extensive experience in assisting companies operating in Chapter 11, including oil and gas companies.  CR3 was appointed in consultation with the Committee, East West Bank, the Debtors' secured lender, and other creditors.

12.     Since their appointment, CR3 has spent significant time with the Debtors and their records to learn their businesses, analyze contracts and operations, and meet with various creditor groups.  This review process also includes a detailed review of the Oil and Gas Leases held by Sklarco to determine their value to the estate, and the need for the mineral lease in the context of the Debtors' ongoing restructuring efforts.

13.     While it is likely that all or most of the Oil and Gas Leases will be assumed, additional time is necessary to allow the CRO to complete a full and thorough review of Sklarco's mineral leases and determine if assumption of all of the mineral leases is a prudent exercise of business judgment. Given the number of Oil and Gas Leases that exist, each of the Oil and Gas Leases must be reviewed to ensure that the Leases, if non-productive, will not cause damage to Sklarco's estate, particularly because each Oil and Gas Lease may contain different terms.

14.     Each state varies in its treatment of mineral leases as real or personal property. While a majority of the courts in the states in which Sklarco holds mineral leases treat such leases as real property, some states treat the mineral leases as personal property, and some appear to be mixed.

15.     To ensure that the Debtors have sufficient time to complete a detailed and thorough review of all mineral leases, the Debtors are filing this Motion as to all nonresidential real property and mineral leases, including those located in states where they may be treated as personal property.

### RELIEF REQUESTED

16.     Pursuant to 11 U.S.C. § 365(d)(4)(A), an unexpired nonresidential real property lease is "deemed rejected" if the debtor does not assume or reject such lease by the earlier of 120-days after the petition date, or the date of the entry of an order confirming a plan.

17.     Pursuant to 11 U.S.C. § 365(d)(4)(B), the court may extend the 120-period in which the debtor is required to assume or reject non-residential real property leases up to an additional 90 days for cause shown.

18.     "Cause" is not defined in the Bankruptcy Code for the purposes of Section 365(d)(4)(B).  In determining whether cause exists courts generally apply a variety of factors including:

    a.     The nature of the interests at stake;

    b.     The balance of hurt to the debtor versus the lessor;

    c.     The good to be achieved;

    d.     The safeguards afforded to the debtor and the lessor;

    e.     The debtor's failure or ability to satisfy post-petition obligations;

    f.     The damage that the non-debtor will suffer beyond the compensation available under the Bankruptcy Code;

    g.     The importance of the lease to the debtor's business and reorganization;

    h.     Whether the debtor has had sufficient time to evaluate its financial condition and the potential value of the leases in formulating a plan;

    i.     Whether exclusivity has been terminated; and

    j.     If the extension is necessary to permit a successful rehabilitation of the debtor.

*See e.g., Southport St. Seaport Ltd. P'ship v. Burger Boys (In re Burger Boys)*, 94 F.3d 755, 761 (2d. Cir. 1996); *In re Hawker Beechcraft, Inc.*, 483 B.R. 424, 430 (Bankr. S.D.N.Y. 2012) *In re Adelphia Communs. Corp.*, 291 B.R. 283, 293-94 (Bankr. S.D.N.Y. 2003).

19.     The 120-period in which the Debtors must assume or reject their real property leases expires on July 31, 2020. The Debtors are seeking a 90-day extension, through and including October 29, 2020, of the deadline prescribed by 11 U.S.C. § 365(d)(4)(A).

20.     Cause exists to grant an extension of the deadline by which the Debtors must assume or reject their nonresidential real property leases.

21.     The interests at stake in this case are thousands of mineral leases affecting thousands of lessors, who are also RI holders, in addition to ORRI holders, and WI holders.  The evaluation of the assumption or rejection of these interests is complex and will require a detailed factual and legal analysis on a state by state basis.  Given that the CRO was appointed on June

4

15, additional time is warranted to ensure that CR3 and the Debtors have sufficient time to complete the review and a detailed analysis.

22.     The lessors of the Oil and Gas Leases will not be harmed by granting the extension.  The Oil and Gas Leases are generally paid in full at the time that the lease is executed, and in cases where the leases have resulted in no further development of a well, no additional payment is due during the initial term unless there further development of the property, in which case the lessor will receive payment on account of their RI or other interest in a producing well.  By ensuring that the interests in the properties are preserved, the Debtors are also preserving the RIs in the mineral leases, ensuring that the RI holder will continue to receive revenue from operated properties on an ongoing basis. Additionally, for all SEC operated properties, revenue attributed to all RIs, in addition to other interest holders, is being segregated in SEC's revenue account for all operated properties and distributed to the holders of such interests on a post-petition basis.

23.     The mineral leases are the primary asset of Sklarco's estate, and hold significant value for the estate.  Granting the extension of the deadline by which the leases must be assumed or rejected will preserve the value of the mineral leases which is vital to the Debtors' reorganization efforts.  It is only by preserving the value of the mineral leases that the Debtors will be able to achieve a successful reorganization.

24.     If the extension is not granted and the mineral leases are deemed rejected, it will result in significant harm to the holders of RIs, ORRIs, and WIs.  If the leases are deemed rejected, the rejection would constitute a breach under the applicable lease, and could result in an impairment not only to the Debtor's interests in the subject mineral lease, but to the interests of other parties as well.

25.     Sklarco and SEC are current on all pre-petition and post-petition payments to landlords and the lessors for the mineral leases.

26.     As set forth above, additional time is necessary for the Debtors to evaluate the nonresidential real property leases, including the mineral leases.  Because the CRO was only appointed within the last few weeks, they need additional time to fully evaluate the various leases and ensure that assumption of all of the leases is a sound exercise of business judgment.

27.     Granting the extension of the deadline by which nonresidential real property leases must be assumed or rejected is in the best interests of the Debtors, their respective estates,

and their respective creditors.  Granting the extension will ensure that the value of the mineral leases can be preserved while a thorough analysis is completed, and will ensure that the interests in the properties are preserved, including the Debtor's interests, the RIs, the ORRIs, and the WIs.

28.     Accordingly, cause exists to grant the extension of the deadline by which nonresidential real property leases must be assumed or rejected by 90 days, through and including October 29, 2020.

29.     While Fed. R. Bankr. P. 2002 does not require notice of a motion to extend the deadline prescribed by 11 U.S.C. § 365(d)(4)(A), the Debtors are providing a copy of this motion and a notice of the same to all landlords and lessors for the mineral interests.

WHEREFORE the Debtor prays that the Court enter an Order granting the Debtor a ninety-day extension of the deadline set forth at Bankruptcy Code § 365(d)(4)(A), through and including October 29, 2020, and granting such further  and additional relief as to the Court may appear proper.

Dated: July 6, 2020                                    Respectfully submitted,

By: */s/ Keri L. Riley*
      Lee M. Kutner, #10966
      Keri L. Riley, #47605
      **KUTNER BRINEN, P.C.**
      1660 Lincoln Street, Suite 1850
      Denver, CO 80264
      Telephone:  (303) 832-2400
      E-Mail: lmk@kutnerlaw.com