# Exhibit B

## Lease Purchase Report  L050

Prospect: Castleberry
Lease No: New Lease

Lessor(s): John David Mosby          Phn: (402) 319-2197 - Nora Patterson

Address: 5830 Valley Brook Ln          SSN: 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
         Montgomery, AL  36117

### Date/Term
Date: 09/24/2019
Exp. Date: 09/24/2022
Term: 3 years

### Bonus & Royalty
Per net mineral acre:     $ 200.00
Total Paid:               $ 950.00
Royalty:                  1/4

### Description/Ownership

**TOWNSHIP 4 NORTH, RANGE 10 EAST**

Section 36:

Section 36: Northwest Quarter of the Southwest Quarter of Section 36, Township 4 North, Range 10 East, SAVE AND EXCEPT 2 acres of land situated in the Southwest corner of said forty acres, more particularly described as follows: Beginning at the Southwest corner of the Northwest Quarter of Southwest Quarter of Section 36, Township 4 North, Range 10 East, and running North a distance of 100 yards, thence East 100 yards, thence South 100 yards, thence West 100 yards to the point of beginning.

Total Gross Acres: 38.00     Total Net Acres: 4.75     Interest: 0.125

Attachments:

1) Lease Purchase Report, 2) Copy of signed Lease, 3) Plat highlighting acreage covered.
Broker: Kelly L. Baker

2019   3936
Recorded in the Above
Deed Book & Page
10-17-2019 02:01:48 PM
Stephen Flemming, Probate Judge
Conecuh County, Alabama

Producers 88 - Paid Up
With Pooling Provision

# OIL, GAS AND MINERAL LEASE

THIS AGREEMENT made to be effective 24th day of September, 2019, by and between John David Mosby, married, whose address is: 5830 Valley Brook Lane, Montgomery, AL 36117, as lessor, (whether one or more), and SKLARCO, LLC, whose address is: 5395 Pearl Parkway, Suite 200, Boulder, CO 80301, as Lessee, WITNESSETH:

1. Lessor, in consideration of TEN Dollars ($10.00) & Other Valuable Consideration, the receipt and sufficiency of which is hereby acknowledged, and the covenants and agreements of lessee hereinafter contained, does hereby grant, lease and let unto lessee the land covered hereby for the purposes and with the exclusive right of exploring, drilling, mining and operating for, producing and owning oil, gas, sulphur and all other minerals (whether or not similar to those mentioned), together with the right to make surveys on said land, lay pipe lines, establish and utilize facilities for surface or subsurface disposal of salt water, construct roads and bridges, dig canals, build tanks,  power stations, power lines, telephone lines, employee houses and other structures on said land, necessary or useful in lessee's operations in exploring, drilling for, producing, treating, storing and transporting minerals produced from the land covered hereby or any other land adjacent thereto.  The land covered hereby, herein called "said land", is located in the County of Conecuh, State of Alabama, and is described as follows:

TOWNSHIP 4 NORTH, RANGE 10 EAST

Section 36: Northwest Quarter of the Southwest Quarter of Section 36, Township 4 North, Range 10 East, SAVE AND EXCEPT 2 acres of land situated in the Southwest corner of said forty acres, more particularly described as follows:  Beginning at the Southwest corner of the Northwest Quarter of Southwest Quarter of Section 36, Township 4 North, Range 10 East, and running North a distance of 100 yards, thence East 100 yards, thence South 100 yards, thence West 100 yards to the point of beginning.

It is the intention of the Lessor to lease, and the Lessor does hereby grant, let and lease to the Lessee, all minerals owned or claimed in said Section 36, Township 4 North, Range 10 East,  whether correctly or completely  described herein or not.

Wherever the fraction of "one-eighth" (1/8) appears in Paragraph 3 below, it is hereby changed to read One-Fifth (1/5),  Twenty percent (20%).

This lease also covers and includes, in addition to that above described, all land, if any, contiguous or adjacent to or adjoining the land above described and (a) owned or claimed by lessor by limitation, prescription, possession, reversion or unrecorded instrument or (b) as to which lessor has a preference right of acquisition.  Lessor agrees to execute any supplemental instrument requested by lessee for a more complete or accurate description of said land.  For the purpose of determining the amount of any bonus or shut-in royalty payment hereunder, said land shall be deemed to contain 38 acres, whether actually containing more or less, and the above recital of acreage in any tract shall be deemed to be the true acreage thereof.  Lessor accepts the bonus as lump sum consideration for this lease and all rights, and options hereunder.

2. Unless sooner terminated or longer kept in force under other provisions hereof, this lease shall remain in force for a term of Three (3) years from the effective date hereof, hereinafter called "primary term", and as long thereafter as operations, as hereinafter defined, are conducted upon said land with no cessation for more than ninety (90) consecutive days.

3. As royalty, lessee covenants and agrees:  (a) To deliver to the credit of lessor, in the pipe line to which lessee may connect its wells, the equal one-eighth part of all oil produced and saved by lessee from said land, or from time to time, at the option of lessee, to pay lessor the average posted market price of such one-eighth part of such oil at the well as of the day it is run to the pipe line or storage tanks, lessor's interest, in either case, to bear one-eighth of the cost of treating oil to render it marketable pipe line oil; (b) To pay lessor on gas and casinghead gas produced from said land (1) when sold by lessee, one-eighth of the amount realized by lessee, computed at the mouth of the well, or (2) when used by lessee off said land or in the manufacture of gasoline or other products, the market value, at the mouth of the well, of one-eighth of such gas and casinghead gas, lessor's interest, in either case, to bear one-eighth of the cost of treating or processing gas to extract liquids or to render it marketable pipe line gas; (c) To pay lessor on all other minerals mined and marketed or utilized by lessee from said land, one-fifth either in kind or value at the well or mine at lessee's election except on sulphur mined and marketed the royalty shall be one-fifth of market value per long ton.  If, at the expiration of the primary term or at any time or times thereafter, there is any well on said land or on lands with which said land or any portion thereof has been pooled, capable of producing gas or any other mineral covered hereby, and all such wells are shut-in, this lease shall, nevertheless, continue in force as though operations were being conducted on said land for so long as said wells are shut-in, and thereafter this lease may be continued in force as if no shut-in had occurred.  Lessee covenants and agrees to use reasonable diligence to produce, utilize, or market the minerals capable of being produced from said wells, but in the exercise of such diligence, lessee shall not be obligated to install or furnish facilities other than well facilities and ordinary lease facilities of flow lines, separator, and lease tank, and shall not be required to settle labor trouble or to market gas upon terms unacceptable to lessee.  If, at any time or times after the expiration of the primary term, all such wells are shut-in for a period of ninety consecutive days, and during such time there are no operations on said land, then at or before the expiration of said ninety day period, lessee shall pay or tender by check or draft of lessee, as royalty, a sum equal to one dollar ($1.00) for each acre of land then covered hereby.  Lessee shall make like payments or tenders at or before the end of each anniversary of the expiration of said ninety day period if upon such anniversary this lease is being continued in force solely by reason of the provisions of this sub-paragraph.  Each such payment or tender shall be made to the parties who at the time of payment would be entitled to receive the royalties which would be paid under this lease if the wells were producing or may be deposited to such parties credit in the   pay directly to the lessor at the above address   bank, or its successors which shall continue as the depositories regardless of changes in ownership of shut-in royalty.  If at any time that lessee pays or tenders shut-in royalty, two or more parties are, or claim to be, entitled to receive same, lessee may in lieu of any other method of payment herein provided, pay or tender such shut-in royalty, in the manner above specified, either jointly to such parties or separately to each in accordance with their respective ownerships thereof, as lessee may elect.  Any payment hereunder may be made by check or draft of lessee deposited in the mail or delivered to the party entitled to receive payment or to a depository bank provided for above on or before the last date for payment.  Nothing herein shall impair lessee's right to release as provided in paragraph 5 hereof.  In the event of assignment of this lease in whole or in part, liability for payment hereunder shall rest exclusively on the then owner or owners of this lease, severally as to acreage owned by each.

4. Lessee is hereby granted the right, at its option, to pool or unitize all or any part of said land and of this lease as to any or all minerals or horizons thereunder, with other lands, lease or leases, or portion or portions thereof, or mineral or horizon thereunder, so as to establish units containing not more than 160 surface acres plus 10% acreage tolerance; provided, however, a unit may be established or an existing unit may be enlarged to contain not more than 640 acres plus 10% acreage tolerance, if unitized only as to gas or only as to gas and liquid hydrocarbons (condensate) which are not a liquid in the subsurface reservoir.  If larger units are permitted or required, under any governmental rule or order, for the drilling or operation of a well at a regular location, for obtaining maximum allowable from any well to be drilled, drilling or already drilled, or for any other lawful purpose, any such unit may be established or enlarged, to conform to the size permitted or required by such governmental order or rule.  Lessee shall exercise said option as to each desired unit by either (1) filing a drilling permit application or other application or instrument with the state oil and gas board identifying such unit, provided that any requested permit or amended permit is issued within a reasonable time thereafter, (2) obtaining a force pooling order from the state oil and gas board for a unit including all or a portion of said land, or (3) filing for record in the public office in which this lease is recorded an instrument or plat identifying the unit, whichever shall first occur.  Each

cpa2dag100413.

2019   3937
Recorded in the Above
Deed  Book & Page
10-17-2019 02:01:48 PM

of said options may be exercised by lessee from time to time, and whether before or after production has been established either on said land or on the portion of said land included in the unit or on other land unitized therewith and any such unit may include any well to be drilled, being drilled or already completed. A unit established hereunder shall be valid and effective for all purposes of this lease even though there may be land or mineral, royalty or leasehold interests in land within the unit which are not pooled or unitized. Any operations conducted on any part of such unitized land shall be considered, for all purposes, except the payment of royalty, operations conducted under this lease. There shall be allocated to the land covered by this lease included in any such unit that proportion of the total production of unitized minerals from wells, in the unit, after deducting any used in lease or unit operations, which the number of surface acres in the land covered by this lease included in the unit bears to the total number of surface acres in the unit. The production so allocated shall be considered for all purposes, including the payment or delivery of royalty, overriding royalty, and any other payments out of production, to be the entire production of unitized minerals from the portion of said land covered hereby and included in such unit in the same manner as though produced from said land under the terms of this lease. The owner of the reversionary estate of any term royalty or mineral estate agrees that the accrual of royalties pursuant to this paragraph or of shut-in royalties from a well on the unit shall satisfy any limitation of term requiring production of oil or gas. The formation of such unit shall not have the effect of changing the ownership of any shut-in production royalty which may become payable under this lease. Neither shall it impair the right of lessee to release from this lease all or any portion of said land, except that lessee may not so release as to lands within a unit while there are operations thereon for unitized minerals unless all pooled leases are released as to lands within the unit. Lessee may dissolve any unit established hereunder by filing for record in the public office where this lease is recorded a declaration to that effect, if at that time no operations are being conducted thereon for unitized minerals or if the unit is reformed by the State Oil and Gas Board of Alabama. Subject to the provisions of this paragraph 4, a unit once established hereunder shall remain in force so long as any lease subject thereto shall remain in force. A unit may be so established, modified, or dissolved during the life of this lease.

5. Lessee may at any time and from time to time execute and deliver to lessor or file for record a release or releases of this lease as to any part or all of said land or of any mineral or horizon thereunder, and thereby be relieved of all obligations as to the released acreage or interest.

6. This is a PAID-UP LEASE. In consideration of the down cash payment, Lessor agrees that Lessee shall not be obligated except as otherwise provided herein, to commence or continue any operations during the primary term. Whenever used in this lease the word "operations" shall mean operations for and any of the following: drilling, testing, completing, reworking, recompleting, deepening, plugging back or repairing of a well in search for or in an endeavor to obtain production of oil, gas, sulphur or other minerals, excavating a mine, or production of oil, gas, sulphur or other mineral, whether or not in paying quantities.

7. Lessee shall have the use, free from royalty of water, other than from lessor's water wells, and of oil and gas produced from said land in all operations hereunder. Lessee shall have the right at any time to remove all machinery and fixtures placed on said land, including the right to draw and remove casing. No well shall be drilled nearer than 200 feet to the house or barn now on said land without the consent of the lessor. Lessee shall pay for damages caused by its operations to growing crops and timber on said land.

8. The rights and estate of any party hereto may be assigned from time to time in whole or in part and as to any mineral or horizon. All of the covenants, obligations, and considerations of this lease shall extend to and be binding upon the parties hereto, their heirs, successors, assigns, and successive assigns. No change or division in the ownership of said land, royalties, or other moneys, or any part thereof, howsoever effected, shall increase the obligations or diminish the rights of lessee, including, but not limited to, the location and drilling of wells and the measurement of production. Notwithstanding any other actual or constructive knowledge or notice thereof of or to lessee, its successors or assigns, no change or division in the ownership of said land or of the royalties, or other moneys, or the right to receive the same, howsoever effected, shall be binding upon the then record owner of this lease until thirty (30) days after there has been furnished to such record owner at his or its principal place of business by lessor or lessor's heirs, successors, or assigns, notice of such change or division, supported by either originals or duly certified copies of the instruments which have been properly filed for record and which evidence such change or division, and of such court records and proceedings, transcripts, or other documents as shall be necessary in the opinion of such record owner to establish the validity of such change or division. If any such change in ownership occurs by reason of the death of the owner, lessee may, nevertheless, pay or tender such royalties, or other moneys, or part thereof, to the credit of the decedent in a depository bank or at the address provided for above.

9. In the event lessor considers that lessee has not complied with all its obligations hereunder, both express and implied, lessor shall notify lessee in writing, setting out specifically in what respects lessee has breached this contract. Lessee shall then have sixty (60) days after receipt of said notice within which to meet or commence to meet all or any part of the breaches alleged by lessor. The service of said notice shall be precedent to the bringing of any action by lessor on said lease for any cause, and no such action shall be brought until the lapse of sixty (60) days after service of such notice on lessee. Neither the service of said notice nor the doing of any acts by lessee aimed to meet all or any of the alleged breaches shall be deemed an admission or presumption that lessee has failed to perform all its obligations hereunder. Should it be asserted in any notice given to the lessee under the provisions of this paragraph that lessee has failed to comply with any implied obligation or covenant hereof, this lease shall not be subject to cancellation for any such cause except after final judicial ascertainment that such failure exists and lessee has then been afforded a reasonable time to prevent cancellation by complying with and discharging its obligations as to which lessee has been judicially determined to be in default. **In the event that any dispute relating to this lease or to the performance of lessee hereunder results in litigation, lessor and lessee each hereby waive their right to trial by jury in any such litigation.** If this lease is cancelled for any cause, it shall nevertheless remain in force and effect as to (1) sufficient acreage around each well as to which there are operations to constitute a drilling or maximum allowable unit under applicable government regulations (but in no event less than forty acres), such acreage to be designated by lessee as nearly as practicable in the form of a square centered at the well, or in such shape as then existing spacing rules permit or require; and (2) any part of said land included in a pooled unit on which there are operations. Lessee shall also have such easements on said land as are necessary to operations on the acreage so retained.

10. Lessor hereby warrants and agrees to defend title to said land against the claims of all persons whomsoever. Lessor's rights and interests hereunder shall be charged primarily with any mortgages, taxes or other liens, or interest and other charges on said land, but lessor agrees that lessee shall have the right at any time to pay or reduce same for lessor, either before or after maturity, and be subrogated to the rights of the holder thereof and to deduct amounts so paid from royalties or other payments payable or which may become payable to lessor and/or assigns under this lease. Lessee is hereby given the right to acquire for its own benefit, deeds, leases, or assignments covering any interest or claim in said land which lessee or any other party contends is outstanding and not covered hereby and even though such outstanding interest or claim be invalid or adverse to lessor. If this lease covers a less interest in the oil, gas, sulphur, or other minerals in all or any part of said land than the entire and undivided fee simple estate (whether lessor's interest is herein specified or not), or no interest therein, then the royalties, and other moneys accruing from any part as to which this lease covers less than such full interest, shall be paid only in the proportion which the interest therein, if any, covered by this lease, bears to the whole and undivided fee simple estate therein. All royalty interest covered by this lease (whether or not owned by lessor) shall be paid out of the royalty herein provided. This lease shall be binding upon each party who executes it without regard to whether it is executed by all those named herein as lessor.

11. If, while this lease is in force, at, or after the expiration of the primary term hereof, it is not being continued in force by reason of the shut-in well provisions of paragraph 3 hereof, and lessee is not conducting operations on said land by reason of (1) any law, order, rule or regulation, (whether or not subsequently determined to be invalid) or (2) any other cause, whether similar or dissimilar, (except financial), beyond the reasonable control of lessee, the primary term hereof shall be extended until the first anniversary date hereof occurring ninety (90) or more days following the removal of such delaying cause, and this lease may be extended thereafter by operations as if such delay had not occurred.

cpa2dag100413.

IN WITNESS WHEREOF, this instrument is executed to be effective on the date first above written.

_John David Mosby_
John David Mosby

ACKNOWLEDGEMENT

STATE OF __Alabama__
COUNTY OF __Montgomery__

I, __Amber Beasley__ a notary public in and for said County in said State, hereby certify that __John David Mosby__ whose name is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he executed the same voluntarily on this day.

Given under my hand and official seal, this __3rd__ day of __October__, 2019.

(Affix Seal)

_Amber Beasley_
Notary Public

My Commission Expires 2.1.2023

My commission expires: _____.    in and for __Montgomery__ County, __Alabama__

(Seal: AMBER BEASLEY / NOTARY PUBLIC / ALABAMA STATE AT LARGE)

Instrument prepared by:

Kelly L. Baker, CPL
255 State Street
Mobile, AL 36603

Net mineral acres: 4.75 for recording purposes only.

```
2019    3938
Recorded in the Above
Deed  Book & Page
10-17-2019 02:01:48 PM
Stephen Flemming, Probate Judge
Conecuh County, Alabama

Book/Pg: 2019/3936
Term/Cashier: CONECUH5-PC / CDS
Tran: 16319.80846.99798
Recorded: 10-17-2019 14:02:25
DFE Deed Tax                            1.00
INF Indexing Fee (Computer Fnd)         5.00
MTX Mineral Tax                         1.00
REC Recording Fee                       9.00
Total Fees:   $ 16.00
```

cpa2dag100413.

# CHECK REQUEST FORM

| | |
|---|---|
| COMPANY NAME: | Sklarco, LLC (SKC) |
| DATE OF REQUEST: | Oct 7, 2019 |
| PROSPECT/WELL: | Castleberry |
| PAYABLE TO: | John David Mosby<br>5830 Valley Brook Ln<br>Montgomery, AL  36117 |
| S.S.N. / FED ID: | 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 |
| ACCOUNT #: | 9186-50 Lease Bonus |
| AMOUNT: | $950.00 |
| REQUESTED BY: | Kate Eggleston |
| GROSS ACRES OF LEASE: | 38.00 |
| NET ACRES OF LEASE: | 4.75 |
| LEASE NO. | New lease |
| ADDITIONAL INFORMATION: | |

PLEASE GIVE CHECK TO <u>KATE EGGLESTON</u> FOR FURTHER HANDLING.
THANKS.

27
26
25
RAYONIER TIMBERLANDS OPERATING CO 15/73
JAMES L. & ALICE BRADL 19/41
B.T. 16/6
PHILLIP J. & JAYNE A. BAGGETT 14/35
J.P. 551
MARGARET H. WILLIAMS 2/36
JOHN K TUCKER 7/25
JOHN RAYMOND & OUIDA FAY WALL 2/35
JAMES L. & ALICE BRADL
KENNETH W. & ESTHER T. ELLIS 3.032/130
S.E. 3.005/5
JOHN K. TUCKER 1/75
MARGARET H. WILLIAMS 2/36
PHILLIP J. & JAYNE A. BAGGETT 4/162
35
36
34
KENNETH W. & ESTHER T. ELLIS 3.003/126
CEDAR CREEK LAND TIMBER CO. 8/35
D.W. MCMILLAN TRUST 8/80
R.P. 4/9.7
MYRTICE W. ELLIS 5/197
CEDAR CREEK LAND TIMBER CO. 11/215
D.W. MCMILLAN TRUST 7/203
KENNETH W. & ESTER T. ELLIS 3/41.5
CEDAR CREEK LAND TIMBER CO. 9/44
CEDAR CREEK LAND TIMBER CO 10/29
3
31
ESCAMBIA COUNTY
© C.P.B.S. 02, REV. 2009
ESCAMBIA COUNTY