UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC ) | |
| EIN: 72-1417930 ) | Chapter 11 |
| ) | |
| Debtor. ) | |
| ) | |
| ) | Case No. 20-12380-EEB |
| SKLARCO, LLC ) | |
| EIN: 72-1425432 ) | |
| ) | Chapter 11 |
| Debtor. ) | |

### AMENDED DEBTORS' APPLICATION FOR ORDER APPOINTING EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS, NOTICING, SOLICITATION, AND ADMINISTRATIVE AGENT

The Debtors, Sklar Exploration Company, LLC ("SEC") and Sklarco, LLC ("Sklarco" collectively, the "Debtors"), file this application (the "Application") for the entry of an Order appointing Epiq Corporate Restructuring, LLC ("Epiq") as the claims, noticing, and solicitation agent ("Claims and Administrative Agent") in these chapter 11 cases. Specifically, the Debtors request entry of an order appointing Epiq as the Claims and Administrative Agent to, among other things, (a) serve as the noticing agent to mail notices to the estates' creditors, equity security holders, and other parties in interest, (b) provide computerized claims, objection, and solicitation and balloting-related services, and (c) assist the Debtors in claim and ballot processing and other administrative services with respect to these chapter 11 cases, in each case, pursuant to the terms of the Engagement Agreement, dated July 2, 2020 (the "Engagement Agreement"), between the Debtors and Epiq, a copy of which agreement is attached hereto as **Exhibit A**. In support of this Application, the Debtors submit the *Declaration of Jaymi Helen Cook in Support of Debtors' Application for Order Appointing Epiq Corporate Restructuring, LLC as Claims, Noticing, Solicitation, and Administrative Agent* (the "Cook Declaration"), attached hereto as **Exhibit B**.

### BACKGROUND

**A.   The Chapter 11 Cases**

1. The Debtors filed their voluntary petitions for relief pursuant to Chapter 11 of the Bankruptcy Code on April 1, 2020 (the "Petition Date"). The Debtors have requested that the Chapter 11 Cases be jointly administered for procedural purposes only.

2. The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No trustee or examiner has been appointed in the Chapter 11 Cases.

3. On April 16, 2020, the Office of the United States Trustee for Region 19 (the "U.S. Trustee") organized and appointed the Official Committee of Unsecured Creditors ("Committee"), consisting of seven members: Stoneham Drilling Corporation; Mesa Fluids, LLC; TPC Cottonwood, L.P.; RAPAD Well Service Company, Inc.; Kelley Brothers Contractors, Inc.; Baker Hughes Company; and FPCC USA, Inc. (Docket No. 99).

4. SEC is engaged in business as an independent exploration and production company in the oil and gas industry. SEC is an operating company and does not own oil or gas properties. SEC has its principal business office in Boulder, Colorado and has additional offices in Shreveport, Louisiana and Brewton, Alabama. SEC's exploration and production activities are primarily located in East Texas, North Louisiana, South Mississippi, South Alabama and the Florida Panhandle. SEC is also developing properties and opportunities in the western United States, though no oil or gas production has been produced from the wells in the western United States.

5. Sklarco is a Louisiana limited liability company engaged in business as the owner of certain oil and gas leases and property interests in East Texas, North Louisiana, South Mississippi, South Alabama, the Florida Panhandle, and the western United States.

6. As of the Petition Date, SEC was the operator of approximately 60 wells and was in the process of developing several new prospects, including a helium well in Montana, a well and pipeline in Florida, and several new wells in Alabama.

**RELIEF REQUESTED**

7. The Debtors request entry of an order appointing Epiq as the Claims and Noticing Agent for the Debtors and their Chapter 11 Cases, to, among other tasks, (i) serve as the noticing agent to mail notices to the estates' creditors, equity security holders, and parties in interest;

(ii) provide computerized claims, objection, solicitation, and balloting database services; and (iii) provide expertise, consultation, and assistance in claim and ballot processing and other administrative services with respect to the Debtors' bankruptcy cases, pursuant to the provisions of the Engagement Agreement.

## BASIS FOR RELIEF

8.  The Debtors' selection of Epiq to act as the Claims and Noticing Agent is appropriate under the circumstances and is in the best interest of the estates. Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that Epiq's rates are competitive and reasonable given Epiq's quality of services and expertise. The terms of Epiq's retention are set forth in the Engagement Agreement attached hereto as **Exhibit A**.

9.  The Debtors filed their schedules of assets and liabilities and statements of financial affairs (the "Schedules") on April 17, 2020 (Case No. 20-12377, Docket Nos. 103-107; Case No. 20-12380, Docket Nos. 28-32). Given the number of counterparties to unexpired executory contracts and leases, namely the mineral leases, as well as the holders of interests in the wells operated by SEC, the Debtors anticipate that there will be several thousand persons and entities to be noticed and that many of these parties will file claims. By way of example, notice of the Debtors' *Motion to Extend Time to Assume or Reject Nonresidential Real Property Leases Pursuant to 11 U.S.C. § 365(d)(4)* was served on approximately 2,900 parties, most of whom were counterparties to an oil and gas lease held by Sklarco.

10. In view of the number of anticipated notice parties and the complexity of the Debtors' businesses, the Debtors submit that the appointment of a claims and noticing agent will provide the most effective and efficient means of, and relieve the Debtors and/or the Clerk's Office of the administrative burden of, noticing, administering claims, and soliciting and tabulating votes and is in the best interests of both the Debtors' estates and their creditors.

11. The Debtors initially filed their Application for Order Appointing Epiq as Claims, Noticing, Solicitation, and Administrative Agent on July 10, 2020. The Court issued an Order and Notice of Non-Evidentiary Hearing on July 14, 2020 raising certain concerns with the Application. This Amended Application is intended to address these concerns, and includes the following changes, underlined the Amended Application and proposed Order filed herewith:

3

(a) Removal of the indemnification provisions in Paragraph 7 of the Engagement Agreement and references to the same in the Application and proposed Order;

(b) Inclusion of a requirement that Epiq file fee applications for the allowance and payment of any time incurred by consultants, director, and vice presidents in the Application and proposed Order;

(c) Clarifying that Epiq shall contact the clerk of court to coordinate the relocation of all court-filed proofs of claims, and that Epiq shall pay the costs associated with such relocation in the proposed Order; and

(d) Clarifying the scope of the Court's jurisdiction over the Engagement Agreement in light of the arbitration provisions in the Engagement Agreement in the proposed Order and Engagement Agreement.

### Epiq's Qualifications

12. Epiq is one of the country's leading chapter 11 administrators, with significant experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases. Epiq has substantial experience providing services, including claims and noticing services, in matters comparable in size and complexity to this matter. *See, e.g.*, *In re PetroQuest Energy, Inc.*, No. 18-36322 (DRJ) (Bankr. S.D. Tex. November 7, 2018); *In re EXCO Resources, Inc.,* No. 18-30155 (MI) (Bankr. S.D. Tex. Jan. 15, 2018); *In re Stone Energy Corp.*, No. 16-36390 (MI) (Bankr. S.D. Tex. Dec. 14, 2016); *In re Illinois Power Generation Co.*, No. 16-36326 (MI) (Bankr. S.D. Tex. Dec. 9, 2016); *In re Warren Res., Inc.*, No. 16-32760 (MI) (Bankr. S.D. Tex. Jun. 2, 2016); *In re Ultra Petrol. Corp.*, No. 16-32202 (MI) (Bankr. S.D. Tex. Apr. 29, 2016); *In re Energy XXI Ltd.*, No. 16-31928 (DRJ) (Bankr. S.D. Tex. Apr. 13, 2016); *In re ERG Intermediate Holdings, LLC*, No. 15-31858 (HDH) (Bankr. N.D. Tex. Apr. 30, 2015); and *In re Life Partners Holdings, Inc.*, No. 15-40289 (RFN) (Bankr. N.D. Tex. Jan. 20, 2015).

13. Prior to selecting Epiq as the proposed Claims and Administrative Agent, the Debtors requested and received quotes from a number of prospective parties. The Debtors selected Epiq based on their qualifications, and the bid submitted in relation to the Debtors' cases.

14. The appointment of Epiq as Claims and Administrative Agent in these Chapter 11 Cases will expedite the distribution of notices and the processing of claims, and the office of the Clerk of the Bankruptcy Court for the District of Colorado (the "Clerk") will be relieved of the administrative burden of processing what may be an overwhelming number of claims.

**Services to Be Provided**

15. This application pertains to the work to be performed by Epiq under section 105(a) of the Bankruptcy Code and under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c). Specifically, Epiq will perform, to the extent the Debtors request, the following services in its role as the Claims and Administrative Agent (the "Claims and Administrative Services"), as well as all quality control relating thereto:[1]

    a. preparing and serving required notices and documents in these Chapter 11 Cases in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules in the form and manner directed by the Debtors and/or the Court, including, if applicable, (i) notice of any claims bar date, (ii) notices of transfers of claims, notices of objections to claims, and objections to transfers of claims, (iii) notices of any hearings on a disclosure statement and confirmation of the Debtors' chapter 11 plan, including under Bankruptcy Rule 3017(d), (iv) notice of the effective date of any chapter 11 plan, and (v) all other notices, orders, pleadings, publications, and other documents as the Debtors and/or the Court may deem necessary or appropriate for an orderly administration of these Chapter 11 Cases;

    b. preparing and filing or causing to be filed with the Clerk an affidavit or certificate of service for all notices, motions, orders, other pleadings, or documents served within seven business days of service that includes either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

    c. assisting the Debtors with administrative tasks in the preparation of any Amended Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"), if needed, and including (as necessary): (i) coordinating with the Debtors and their advisors regarding the Schedules and Statements process,

---

[1] The list of Claims and Administrative Services to be performed by Epiq is intended to be broad and certain services may not be necessary in these Chapter 11 Cases. Only those services that are requested by the Debtors will be performed by Epiq.

5

      requirements, timelines, and deliverables; (ii) creating and maintaining databases for maintenance and formatting of Schedules and Statements data; (iii) coordinating collection of data from the Debtors and their advisors; and (iv) providing data entry and quality assurance assistance regarding Schedules and Statements;

d.    assisting the Debtors in managing the claims reconciliation and objection process;

e.    maintaining (i) a list of all potential creditors, equity holders, and other parties in interest, (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002 and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010, and (iii) a limited notice list consisting of those parties required pursuant to the *Order Granting Ex Parte Motion for Entry of Order Limiting Notice* (Docket No. 263);

f.    after a claims bar date is established, furnishing a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notifying potential creditors of the existence, amount, and classification of their respective claims as set forth in the Schedules (if applicable), which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

g.    maintaining a post office box or address for the purpose of receiving claims and returned mail, and processing all mail received;

h.    processing all proofs of claim received, including those received by the Clerk's office, and checking said processing for accuracy, and maintaining the original proofs of claim in a secure area;

i.    maintaining the official claims registers for the Debtors (the "<u>Claims Registers</u>") on behalf of the Clerk and upon the Clerk's request, providing the Clerk with certified, duplicate unofficial Claims Registers; and specifying in each of the Claims Registers the following information for each claim docketed: (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim; (iv) the amount asserted; (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, *etc.*); and (vi) any disposition of the claim;

j. periodically filing with the Court a notice of the list of claims that have been filed with Epiq;

k. implementing necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

l. recording all transfers of claims and providing any notices of such transfers as required by Bankruptcy Rule 3001(e);

m. relocating, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Epiq, not less than weekly;

n. upon completion of the docketing process for all claims received to date for each case, turning over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

o. monitoring the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed, and making necessary notations on and/or changes to the Claims Registers;

p. assisting in the dissemination of information to the public and responding to requests for administrative information regarding the cases, as directed by the Debtors and/or the Court, including through the use of a case website and/or call center;

q. 30 days prior to the close of these Chapter 11 Cases, to the extent practicable, requesting that the Debtors submit to the Court a proposed order dismissing Epiq and terminating Epiq's services upon completion of its duties and responsibilities and upon the closing of these Chapter 11 Cases;

r. at least seven days before entry of an order closing these Chapter 11 Cases, Epiq shall reconcile all proofs of claim with the Court, to ensure that all claims received by Epiq are accounted for on the Claims Register.

s. at the close of these Chapter 11 Cases, boxing and transporting all original documents, in proper format, as provided by the Clerk's office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, Missouri 64064 or (ii) any other location requested by the Clerk's Office.

t. coordinating publication of certain notices in periodicals and other media to the extent necessary;

  u.  to the extent necessary, distributing claim acknowledgement cards to creditors having filed a proof of claim or interest, as applicable;

  v.  providing balloting, solicitation, and tabulation services, including preparing ballots, producing personalized ballots, assisting in the production of solicitation materials, tabulating creditor ballots on a daily basis, preparing a certification of voting results, and providing court testimony with respect to balloting, solicitation, and tabulation matters;

  w.  providing state-of-the-art call center facility and services, including (as needed): (i) creating of frequently asked questions, call scripts, escalation procedures and call log formats; (ii) recording automated messaging; (iii) training call center staff; and (iv) maintaining and transmitting call log to the Debtors and their advisors;

  x.  creating and maintaining a public access website setting forth pertinent case information and allowing access to electronic copies of proofs of claim or proofs of interest;

  y.  providing the Debtors with consulting and computer software support regarding the reporting and information management requirements of the bankruptcy administration process;

  z.  educating and training the Debtors in the use of support software, as necessary;

  aa.  generating, assisting with, and providing strategic communications advice, strategy, and expertise, as needed;

  bb.  if requested by the Debtors, acting as disbursing agent (to the extent such services are not performed by another agent) in connection with the distributions required under a confirmed chapter 11 plan; and

  cc.  providing such other claims processing, noticing, and related administrative services as may be requested from time to time by the Debtors.

16.  The Claims Registers shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Epiq. Epiq shall not employ any past or present employee of the Debtors for work that involves these Chapter 11 Cases.

17. Epiq will follow the notice and claims procedures that conform to the guidelines promulgated by the Clerk's Office or as otherwise directed by the Court.

## Compensation

18. The Debtors propose to compensate Epiq on substantially the terms and conditions set forth in the Engagement Agreement, upon receipt of reasonably detailed invoices setting forth the services provided by Epiq during the prior month and the rates charged for such services performed. A summary of the primary applicable rates is as follows:

| Clerical/Administrative Support | $25.00 – $55.00/hr |
|---|---|
| Case Managers | $70.00 – $165.00/hr |
| Consultants/Directors/Vice Presidents | $160.00 – $195.00/hr |
| Solicitation Consultant | $195.00 |
| Printing | $0.10 per image |
| Postage / Overnight Delivery | At Cost at Preferred Rates |
| Website Hosting Fee | No Charge |
| On-Line Claim Filing | No Charge |

19. <u>Epiq has agreed that to the extent any services are provided by consultants, directors, or vice presidents, including solicitation consultants, such fees will be subject to allowance or review by the Court upon filing of interim and final fee applications in accordance with 11 U.S.C. §§ 330 and 331.</u>

20. <u>For all other fees and costs, the</u> Debtors respectfully request that the undisputed fees and expenses incurred by Epiq in the performance of the Claims and Administrative Services, in accordance with the fee schedule appended thereto, be treated as administrative expenses of the Debtors' estates pursuant to 28 U.S.C. § 156(c) and 11 U.S.C. § 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court.

21. Epiq agrees to maintain records of all services performed, showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtors and the CRO, the U.S. Trustee, counsel for the Debtors, counsel for the Commitee, and any party in interest that specifically requests service of the monthly invoices. If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and

confer in an attempt to resolve the dispute. If resolution is not achieved, the parties may seek resolution of the matter from the Court, including, as necessary, filing an application for allowance of the disputed amount as an administrative expense.

22. The Debtors will be providing Epiq a retainer in the amount of $10,000.[2] The Debtors are filing a separate motion seeking approval of the retainer concurrently herewith. Epiq seeks to hold the retainer under the Engagement Agreement during the Chapter 11 Cases as security for the payment of fees and expenses incurred in rendering the Epiq Services hereunder, with any remainder to be held as security for the payment of other approved fees and expenses incurred in rendering other services under the Engagement Agreement. After applying the retainer to any outstanding fees and costs, the balance of the retainer will be returned to the Debtors.

23. As part of the overall compensation procedures for Epiq, the Debtor has agreed to certain limitations of liability as set forth in paragraph 8 of the Engagement Agreement.

24. Notwithstanding anything to the contrary in the Engagement Agreement, the Debtors shall have no obligation to indemnify Epiq, or provide contribution or reimbursement to Epiq, for any claim or expense that is either: (a) judicially determined to have arisen from Epiq's gross negligence, willful misconduct, fraud, bad faith, self-dealing, or breach of fiduciary duty (if any); (b) for a contractual dispute in which the Debtors allege the breach of Epiq's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible under applicable law; (c) of any type for which the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to applicable law; or (d) settled prior to a judicial determination, but determined by this Court, after notice and a hearing, to be a claim or expense for which Epiq should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement as modified by this Order.

25. The Debtors and Epiq believe that the limitation of liability provisions contained in the Engagement Agreement are customary and reasonable for Epiq and comparable firms providing claims, noticing, solicitation, and related administrative services.

## Disinterestedness

---

[2] The Application and affidavit previously identified that the retainer had already been received by Epiq. The retainer has been requested by Epiq, but the Debtors have not yet paid the requested retainer.

26. Epiq has reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Cook Declaration, Epiq has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

27. In connection with its retention as Claims and Administrative Agent, Epiq represents in the Cook Declaration, among other things, that:

    a. Epiq is not a creditor of the Debtors;

    b. Epiq will not consider itself employed by the United States government and will not seek any compensation from the United States government in its capacity as the Claims and Administrative Agent in these Chapter 11 Cases;

    c. by accepting employment in these Chapter 11 Cases, Epiq waives any rights to receive compensation from the United States government in connection with the Debtors' Chapter 11 Cases;

    d. in its capacity as the Claims and Administrative Agent in these Chapter 11 Cases, Epiq will not be an agent of the United States and will not act on behalf of the United States; and

    e. Epiq is a "disinterested person" as that term is defined in Bankruptcy Code Section 101(14) with respect to the matters upon which it is to be engaged.

28. To the extent that there is any inconsistency between this application, the Order, or the Engagement Agreement, the Order will govern.

## **WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)**

29. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## **NOTICE**

30. Notice of this Motion shall be electronically served on all parties who have entered an appearance in the case pursuant to L.B.R. 5005-4. Due to the nature of the relief requested herein, the Debtors submit that no other or further notice need be provided. A separate motion to approve the proposed retainer is being filed concurrently herewith, with notice

provided to all parties required by *Order Granting Ex Parte Motion for Order Limiting Notice* (Docket No. 263).

**[remainder of page intentionally left blank]**

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

DATED: July 16, 2020

Respectfully submitted,

By: */s/ Keri L. Riley*
Lee M. Kutner, # 10966
Keri L. Riley, #47605
**KUTNER BRINEN, P.C.**
1660 Lincoln Street, Suite 1850
Denver, CO 80264
Telephone: (303) 832-2400
E-mail: klr@kutnerlaw.com

## CERTIFICATE OF SERVICE

I certify that on July 16, 2020, I served a complete copy of the foregoing **AMENDED DEBTORS' APPLICATION FOR ORDER APPOINTING EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS, NOTICING, SOLICITATION AND ADMINISTRATIVE AGENT** on the following parties in compliance with the Federal Rules of Bankruptcy Procedure and the Court's Local Rules:

Paul Moss, Esq.
US Trustee's Office
1961 Stout Street
Suite 12-200
Denver, CO 80294

Stoneham Drilling Corporation
(Representative: Heather Stickel)
c/o James B. Bailey, Esq.
Bradley Arant Boult Cummings, LLP
1819 Fifth Avenue North
Birmingham, AL 35203

Mesa Fluids, LLC
(Representative: Aaron W. Merrell)
1669 South 580 East
American Fork, UT 84057

TCP Cottonwood, L.P.
(Representative: Kyle C. McInnis)
c/o Eric Lockridge
400 Convention Street
Suite 700
Baton Rouge, LA 70801

Rapad Well Service Company, Inc.
(Representative: Chesley James)
c/o Jeremy Retherford, Esq.
Balch & Bingham, LLP
1901 Sixth Avenue North
Suite 1500
Birmingham, Alabama 35203-4642

Kelley Brothers Contractors, Inc.
(Representative: Jerry Kelley)
401 County Farm Road
Waynesboro, MS 39367

Baker Hughes Company
(Representative: Christopher J. Ryan)
2001 Rankin Road
Houston, TX 77073

Timothy C. Mohan, Esq.
Foley & Lardner, LLP
600 17th Street
Suite 2020 South
Denver, CO 80202

J. Eric Lockridge, Esq.
Kean Miller LLP
400 Convention Street
Suite 700
P.O. Box 3513
Baton Rouge, LA 70802

Craig K. Schuenemann, Esq.
Bryan Cave Leighton Paisner LLP
1700 Lincoln Street
Suite 4100
Denver, CO 80203

Giovanni M. Ruscitti, Esq.
Berg Hill Greenleaf Ruscitti, LLP
1712 Pearl Street
Boulder, CO 80302

Bryce A. Suzuki, Esq.
Bryan Cave Leighton Paisner, LLP
Two North Central Avenue
Suite 2100
Phoenix, AZ 85004-4406

James B. Bailey, Esq.
Bradley Arant Boult Cummings, LLP
1819 Fifth Avenue North
Birmingham, AL 35203

Timothy M. Riley, Esq.
Hopping Green & Sams, P.A.
P.O. Box 6526
Tallahassee, FL 32314

Michel D. Rubenstein, Esq.
Liskow & Lewis
1001 Fannin Street
Suite 1800
Houston, TX 77002

Duane J. Brescia, Esq.
Clark Hill Strasburger
720 Brazos
Suite 700
Austin, TX 78701

Kevin S. Neiman, Esq.
Law Offices of Kevin S. Neiman, P.C.
999 18th Street
Suite 1230 South
Denver, CO 80202

Robert L. Paddock, Esq.
Buck Keenan LLP
2229 San Felipe
Suite 1000
Houston, TX 77019

Jeremy L. Retherford, Esq.
Balch & Bingham, LLP
1901 Sixth Avenue North
Suite 1500
Birmingham, Alabama 35203

Matthew J. Ochs, Esq.
Holland & Hart, LLP
555 Seventeenth Street
Suite 3200
P.O. Box 8749
Denver, CO 80201-8749

Shay L. Denning, Esq.
Thomas H. Shipps, Esq.
Maynes, Bradford, Shipps & Sheftel, LLP
835 East Second Avenue
Suite 123
Durango, CO 81301

Robert Padjen, Esq.
Deanna Lee Westfall, Esq.
Assistant Attorney General
Colorado Department of Law
1300 Broadway
8th Floor
Denver, CO 80203

Timothy M. Swanson, Esq.
Moye White LLP
1400 16th Street
6th Floor
Denver, CO 80202-1486

Joseph E. Bain, Esq.
Jones Walker LLP
811 Main Street
Suite 2900
Houston, TX 77002

Madison Tucker, Esq.
Jones Walker LLP
201 St. Charles Avenue
Suite 5100
New Orleans, Louisiana 70170

Barnet B. Skelton, Jr., Esq.
815 Walker
Suite 1502
Houston, TX 77002

Amy L. Vazquez, Esq.
Jones Walker LLP
811 Main Street
Suite 2900
Houston, TX 77002

15

Matthew S. Okin, Esq.
John Thomas Oldham, Esq.
Okin Adams, LLP
1113 Vine Street
Suite 240
Houston, TX 77002

Christopher H. Meredith, Esq.
Copeland Cook Taylor & Bush, P.A.
1076 Highland Colony Parkway
600 Concourse, Suite 200
P.O. Box 6020
Ridgeland, Mississippi 39158-6020

Michael L. Niles, Esq.
Brian G. Rich, Esq.
Berger Singerman LLP
313 North Monroe Street
Suite 301
Tallahassee, FL 32301

Victoria Argeroplos, Esq.
Jackson Walker LLP
1401 McKinney Street
Suite 1900
Houston, TX 77010

David R. Taggart, Esq.
Bradley Murchison Kelly & Shea, LLC
401 Edwards Street
Suite 1000
Shreveport, Louisiana 71101

Jordan B. Bird, Esq.
Cook Yancey King & Galloway, APLC
333 Texas Street
Suite 1700
P.O Box 22260
Shreveport, Louisiana 71120-2260

Paul H. Stephenson III, Esq.
Jim F. Spencer, Jr., Esq.
Watkins & Eager, PLLC
P.O. Box 650
Jackson, Mississippi 39205

John D. Cornwell, Esq.
Grant M. Beiner, Esq.
Christopher D. Johnson, Esq.
Munsch Hardt Kopf & Harr, P.C.
700 Milam Street
Suite 2700
Houston, TX 77002

Michael J. Guyerson, Esq.
Buechler Law Office, LLC
999 18th Street
Suite 1230 South
Denver, CO 80202

Jordan B. Bird, Esq.
Cook Yancey King & Galloway, APLC
333 Texas Street
Suite 1700
Shreveport, Louisiana 71120-2260

Robert L. Paddock, Esq.
Buck Keenan, LLP
2229 San Felipe
Suite 1000
Houston, TX 77019

Ryan M. Seidemann, Esq.
Assistant Attorney General
Civil Division/Lands and Natural Resources
P.O. Box 94005
Baton Rouge, Louisiana 70804-9005

David M. Miller, Esq.
Spencer Fane LLP
1700 Lincoln Street
Suite 2000
Denver, CO 80203

Jennifer J. Hardy, Esq.
Willkie Farr & Gallagher, LLP
600 Travis Street
Houston, TX 77002

Duane J. Brescia, Esq.
Clark Hill Strasburger
720 Brazos Street
Suite 700
Austin, TX 78701

Andrew G. Edson, Esq.
Clark Hill Strasburger
901 Main Street
Suite 6000
Dallas, TX 75202

Craig M. Geno, Esq.
Law Offices of Craig M. Geno, PLLC
587 Highland Colony Parkway
Ridgeland, MS 39157

Christopher H. Meredith, Esq.
Glenn Gates Taylor, Esq.
Copeland Cook Taylor & Bush, P.A.
600 Concourse, Suite 200
1076 Highland Colony Parkway
P.O. Box 6020
Ridgeland, MS 39158-6020

Matthew S. Okin, Esq.
John Thomas Oldham, Esq.
Okin Adams LLP
1113 Vine Street
Suite 240
Houston, TX 77002

Curtis R. Shelton, Esq.
Jennifer Norris Soto, Esq.
Ayres Shelton Williams Benson & Paine, LLC
333 Texas Street, Suite 1400
P.O. Box 1764
Shreveport, Louisiana 71166

Armistead M. Long, Esq.
Gordon Arata Montgomery Barnett
McCollam Duplantis & Eagan, LLC
400 East Kaliste Saloon Road
Suite 4200
Lafayette, Louisiana 70508

Ryan J. Lorenz, Esq.
Clark Hill PLC
14850 North Scottsdale Road
Suite 500
Scottsdale, Arizona 85254

Brian G. Rich, Esq.
Michael J. Niles, Esq.
Berger Singerman LLP
313 North Monroe Street
Suite 301
Tallahassee, FL 32301

Katherine A. Ross, Esq.
U.S. Attorney's Office for the
  District of Colorado
Assistant United States Attorney
1801 California Street
Suite 1600
Denver, CO 80202

Ryco Exploration, LLC
401 Edwards Street
Suite 915
Shreveport, LA 71101
ATTN: M. Robin Smith

Ryco Exploration, LLC
40 Golf Club Drive
Haughton, LA 71037
ATTN: M. Robin Smith

Stephen K. Lecholop II, Esq.
Rosenthal Pauerstein, Esq.
Sandoloski Agather LLP
755 East Mulberry
Suite 200
San Antonio, TX 78212

Katherine Guidry Douthitt, Esq.
Blanchard Walker O'Quin & Roberts
P.O. Box 1126
Shreveport, Louisiana 71163

Andrew J. Shaver, Esq.
Bradley Arant Boult Cummings LLP
1819 Fifth Avenue North
Birmingham, AL 35203

Theodore J. Hartl, Esq.
Ballard Spahr LLP
1225 17th Street
Suite 2300
Denver, CO 80202-5596

John H. Smith
Quitman Tank Solutions, LLC
P.O. Box 90
Quitman, MS 39355

Belinda Harrison
58 County Road 5033
Heidelberg, MS 39439

**/s/Vicky Martina**
**Vicky Martina**
**Kutner Brinen PC**

18

## Exhibit A

**Engagement Agreement and Discount Letter**

**<u>Exhibit B</u>**

**Cook Declaration**