# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: )<br>)<br>SKLAR EXPLORATION COMPANY, LLC )<br>EIN: 72-1417930 )<br>)<br>)<br>Debtor-in-Possession. )<br>) | Case No. 20-12377-EEB<br><br>Chapter 11 |
| IN RE: )<br>)<br>SKLARCO, LLC )<br>EIN: 72-1425432 )<br>)<br>)<br>Debtor-in-Possession. )<br>) | Case No. 20-12380-EEB<br><br>Chapter 11 |

### KUDZU PARTIES' OBJECTION TO THE DEBTORS' MOTION FOR CLARIFICATION AND TO AUTHORIZE IMMEDIATE OFFSET OF JOINT INTEREST BILLING OBLIGATIONS

**COMES NOW**, Kudzu Oil Properties, LLC, Alabama Oil Company, and Apple River Investments, LLC (collectively, the "**Kudzu Parties**"), by and through their undersigned counsel Moye White LLP, for their Objection (the "**Objection**") to the Debtors' Motion for Clarification and to Authorize Immediate Offset of Joint Interest Billing Obligations (the "**Motion to Clarify**"). In support of the Objection, the Kudzu Parties state as follows:

### Background

1. Prepetition, the Kudzu Parties entered into certain Participation Agreements and Joint Operating Agreements (collectively, the "**Agreements**") with the Debtor Sklar Exploration Company, LLC ("**SEC**"), whereby in exchange for collectively contributing prepetition (a) specified amounts of cash, in the aggregate amount of not less than $1.780 million (the "**Cash**

4831-7902-8172.2

**Advances**"), and (b) certain existing oil and gas leases, SEC would commence or cause to be commenced drilling and operations for various oil and gas wells primarily in the States of Alabama, Mississippi and Florida.

2. On April 1, 2020 (the "**Petition Date**"), the Debtors commenced this Chapter 11 case when they filed their voluntary petition. (Docket No. 1).

3. On April 6, 2020, the Debtors filed their Motion for Authority to Use Cash Collateral (the "**Cash Collateral Motion**"). (Docket No. 34).

4. On April 23, 2020, the Kudzu Parties objected to the Debtor's Cash Collateral Motion on the basis, *inter alia*, that: (i) the Debtors had spent all of the prepetition Cash Advances in derogation of the purposes required under the Agreements and other applicable documents; (ii) any future Cash Advances required to be made must be segregated from the Debtors' other revenues received and used only in furtherance of the stated purposes under the Agreements; and (iii) all cash advances were not property of the Debtors' estates.

5. On May 11-12, 2020, the Court held a two day evidentiary hearing on the Debtors' Cash Collateral Motion (the "**Cash Collateral Hearing**"). As stated by Counsel for the Debtors at the Cash Collateral Hearing:

> MS. RILEY: But I do want to address the offsets that are requested here. Now in some circumstances, parties have requested to be -- to have their joint interest billings offset in future revenues. We were just asking to be able to continue to honor that requests that were made, again, for the convenience of the parties. ***Where it's not permitted by the joint operating agreement, or by some other agreement between the parties, we are not asking to just automatically offset joint interest billings against people's revenues***. As it relates to the cash call advances –
>
> THE COURT: ***Well, wait a second. So you're just saying where the parties have requested it, you want to continue that practice***.
>
> MS. RILEY: ***Exactly***.

(Docket No. 314 at p. 166, l. 10-23) (emphasis added).

4831-7902-8172.2

6. On May 18, 2020, the Court entered its *Order Authorizing Payment of Working Interest Obligations and Limited Offset of Joint Interest Billing Obligations* (Docket No. 317) (the "**Oil and Gas Order**"). The Oil and Gas Order, in relevant part, states:

> ***Sklar Exploration Company, LLC is authorized to offset joint interest billing obligations owed to it against revenue owed to a working interest holder when expressly authorized to do so in writing by that working interest holder***; provided, however, no such offset shall exceed the amount of revenues received post-petition that is specifically payable from Sklar Exploration Company, LLC, as operator, to the joint interest billing obligor;

(Docket No. 317 at ¶ 4) (emphasis added).

7. Following the two day hearing, and entry of a Third Interim Order, the Court entered its "**Final Cash Collateral Order**" (Docket No. 433). The Final Cash Collateral Order, in relevant part, states:

> (b) The Budget shall provide, that at all times during these Bankruptcy Cases, Sklarco shall deposit 100% of the revenue received from non-operating working interests into the operating account of SEC, and ***SEC shall pay the revenues owing to the non-insider working interest holders in accordance with the Order Authorizing Payment of Working Interest Obligations and Limited Offset of Joint Interest Billing Obligations*** (Dct. No. 317)
>
> (c) The Budget shall provide, and the Debtors shall, at all times during these Bankruptcy Cases, deposit 100% of the revenue received on account of non-operating working interests ("WIO Revenue") into the revenue account maintained by SEC. . . . SEC shall account for receipt and deposit of WIO Revenue by working interest owner in accordance with best practices for the industry, and may not use funds due to noninsider working interest owner without that owner's written consent. SEC shall pay WIO Revenue to the non-insider working interest holders in accordance with the *Order Authorizing Payment of Working Interest Obligations and Limited Offset of Joint Interest Billing Obligations* [Dkt. No. 317], which payments are indefeasible subject to rights and obligations under relevant Participation Agreements, Joint Operating Agreements, or similar agreements. Subject to the Budget, ***SEC and a non-insider working interest owner may agree in writing to offset any WIO Revenue due to that interest owner against any payments due from that WIO to SEC, including pre- and post-petition amounts due***.

(Docket No. 433 at p. 10-11, ¶ 2(b)-(c) (emphasis in bold italics added).

3

4831-7902-8172.2

8. On July 2, 2020, the Debtor filed its *Motion Pursuant to 11 U.S.C. § 1121 for an Order Extending the Exclusivity Periods for Filing and Gaining Acceptance of a Plan of Reorganization* (Docket No. 453) (the "**Exclusivity Motion**").

9. On July 27, 2020, the Court entered its Order on the Exclusivity Motion and extended the Debtors' exclusive period to file a Chapter 11 plan to November 25, 2020, and the time frame to obtain acceptance of any such Chapter 11 plan was extended an additional 117 days. (Docket No. 500).

10. In the month of June 2020, several of the Kudzu Parties received a letter from an attorney representing the Debtors, Mr. Benjamin Ford, requesting that the Kudzu Parties pay outstanding post-petition joint interest billings ("**JIBs**") or else the Debtors would seek to exercise their rights and remedies including offsetting any JIBs owed against post-petition revenue (the "**Demand Letter**"). Counsel for the Kudzu Parties promptly contacted Mr. Ford explaining that the Kudzu Parties have never agreed to an offset with the Debtors and that such action was not authorized under the Oil and Gas Order and Final Cash Collateral Order. Mr. Ford explained that he was unfamiliar with such orders and that he would follow back up with the Kudzu Parties after speaking with bankruptcy counsel for the Debtors.

11. Having not received any communication from Mr. Ford for more than a month, counsel for the Kudzu Parties conveyed an offer to Mr. Ford, in an effort to resolve the Demand Letter, that the Kudzu Parties would agree to defer payment of all post-petition JIBs until the Debtors agreed to assume the Agreements thereby allowing the parties to "true up" their respective obligations amongst each other. The Debtors rejected such offer and ultimately agreed to accept payment of all of the Kudzu Parties' post-petition JIBs commencing on August 1, 2020, going forward and that the parties would reserve their rights with respect to the interpretation of the Oil

4

4831-7902-8172.2

and Gas Order and Cash Collateral Order. A true and correct copy of the email detailing the Kudzu Parties' agreement is attached hereto as Exhibit 1.

**The Motion to Clarify**

12. On September 4, 2020, the Debtors filed the Motion to Clarify believing that the Final Cash Collateral Order and the Oil and Gas Order were ambiguous and that the Debtors, despite the plain language of the orders, intended to permit the offset of a working interest holders' post-petition revenue payment against its unpaid post-petition JIBs. The Debtors' requested that the Final Cash Collateral Order be clarified as follows:

- Debtor SEC be required to pay revenue to all working interest holders subject to the applicable agreements;

- Debtor SEC's ability to undertake collection efforts, in accordance with the applicable agreements, not be limited, including without limitation, offsetting unpaid JIBs against post-petition revenue owed to a working interest holder and/or foreclosing on a non-compliant working interest holder's interest;

- Debtor SEC not be required to obtain written consent from a non-compliant working interest holder prior to exercising any rights under the applicable agreements to offset JIBs against revenue; and

- Working interest holders be prohibited from offsetting unpaid JIBs against pre-petition revenue owed to such working holder or pre-petition cash call advances.

(Docket No. 551 at ¶ 17).

13. The Debtors further requested that they be immediately authorized to offset JIBs owed by non-compliant working interest holders including the Kudzu Parties. (*Id*. at ¶ 18).

14. In essence, the Debtors complain that if they cannot offset unpaid JIBs against post-petition revenue, they will be forced to pay all expenses associated with operating the wells solely for the benefit of working interest holders who will continue to derive the benefits of the Debtors' efforts. (*Id*. at ¶¶ 19-20).

5

4831-7902-8172.2

**Objection**

15. The Debtors' Motion to Clarify should be denied, or, in the alternative, the Court should require the Kudzu Parties to pay their post-petition JIBs on a go-forward basis commencing on August 1, 2020, and all prior post-petition JIBs can be "trued up" at the time the Debtors seek to assume the Kudzu Parties' Agreements.

16. First, the Motion to Clarify should be denied as the Final Cash Collateral Order states that working interest holder payments shall be made to working interest holders in accordance with the Oil and Gas Order. (*See supra* at ¶ 7). The Oil and Gas Order provided that Debtor SEC was only authorized to offset JIBs when expressly authorized to do so in writing by that working interest holder. (*See supra* at ¶ 6). Thus, absent the parties expressly agreeing in writing, Debtor SEC is prohibited from offsetting any JIBs against revenue. Furthermore, the structure set out in the Oil and Gas Order and Final Cash Collateral Order was a concession of the working interest holders in exchange for authorizing the Debtors to use their cash collateral, *i.e.*, the Kudzu Parties' Cash Advances and missed working interest revenue payments that were never made for the months of January and February 2020. Further, Counsel for the Debtors at the Cash Collateral Hearing stated it was not the Debtors' intention to offset JIBs unless the parties expressly agreed to the offset. (*See supra* at ¶ 5). The Kudzu Parties have never agreed to have the Debtors offset their JIBs against their working interest revenue. However, now the Debtors are reneging on the statements made at the Cash Collateral Hearing and the unambiguous relief in the Oil and Gas Order and Final Cash Collateral Order. The Kudzu Parties would have never agreed to the provisions in the Oil and Gas Order and Final Cash Collateral Order to the extent the Debtors would seek to offset post-petition JIBs.

4831-7902-8172.2

17. Moreover, to the extent that the Debtors claim any provisions of the Agreements create a right of offset in favor of the operator, which they have not, the Kudzu Parties assert that any such offset cannot occur without consideration of the substantial Cash Advances and missed working interest payments that have been misappropriated by the Debtors. The Debtors owe the Kudzu Parties collectively more than $1.780 million which is substantially more than the Debtors claim they are owed by the Kudzu Parties. (*Cf.* Docket No. 551-2 with Claims Reg. No. 111-113). Furthermore, much of the requested relief (authority to undertake collection efforts, offsetting, foreclosure, and avoiding written consent prior to exercise of remedies) must be initiated through adversary proceeding—not by motion.

18. Second, when the Debtors attempt to assume the Kudzu Parties' Agreements, and/or the Kudzu Parties seek an order compelling the assumption or rejection of the Agreements, is the appropriate time to require the Kudzu Parties to settle any unpaid post-petition JIBs. Until that time, the Court should order only that the Kudzu Parties pay all post-petition JIBs on a go-forward basis commencing on August 1, 2020, which they already are doing. The Debtors have stated that they intend to assume the Agreements. However, before doing so they will need to cure all defaults arising thereunder which would include not only rectifying the stolen prepetition Cash Advances and missed working interest payments, but would also require that Debtor Sklarco contribute its missing Cash Advances. To the extent that the pre August 2020 JIBs exceed the more than $1.780 million that the Kudzu Parties are owed, which they will clearly not, the Kudzu Parties will promptly pay any deficiency. However, requiring the Kudzu Parties to pay the pre-August 2020 post-petition JIBs is inequitable because it is unknown when the Debtors will ever file a Chapter 11 plan, let alone a confirmable Chapter 11 plan, which would trigger the cure process. Further compounding this legitimate concern is that the Debtors have already filed one

7

4831-7902-8172.2

Exclusivity Motion and there has been no effort by the Debtors to progress this case forward and/or negotiate proposed plan treatment with the Kudzu Parties—notwithstanding this case has been pending for nearly six (6) months. It is inequitable for the Kudzu Parties to be compelled, in the absence of any agreement, to fund the pre-August 2020 post-petition JIBs without any assurances the Debtors actually will and can assume the Agreements. Accordingly, the Kudzu Parties submit that if the Court is inclined to grant the Motion to Clarify that it instead require the Kudzu Parties to pay their post-petition JIBs starting on August 1, 2020, and that all other post-petition JIBs be settled during the assumption process.

### Joinder and Reservation of Rights

19. The Kudzu Parties join in the objections of all other working interest holders to the extent they are not inconsistent with this Objection.

20. The Kudzu Parties make no admission of fact or law and reserve any and all rights, claims, objections and defenses that may be available to them in any hearing on the Motion to Clarify, or any other matter pending before this Court.

WHEREFORE, the Kudzu Parties respectfully request that this Court sustain this Objection consistent herewith, and for all such other and further relief this Court finds fair and equitable under the circumstances.

4831-7902-8172.2

Dated: September 29, 2020.          Respectfully submitted,

**ALABAMA OIL COMPANY, APPLE RIVER INVESTMENTS, LLC, AND KUDZU OIL PROPERTIES, LLC**

By: */s/Timothy M. Swanson*
Timothy M. Swanson (Colorado No. 47267)
MOYE WHITE LLP
1400 16th Street
6th Floor
Denver, Colorado 80202-1486
Tel: (303) 292-2900
Fax: (303) 292 4510
Tim.Swanson@moyewhite.com
*Counsel to Alabama Oil Company, Apple River Investments, LLC, and Kudzu Oil Properties, LLC*

--and--

Craig M. Geno
Law Offices of Craig M. Geno, PLLC
587 Highland Colony Parkway
Ridgeland, Mississippi 39157
Tel: (601) 427-0048
Fax: (601) 427-0050
cmgeno@cmgenolaw.com
*Counsel to Alabama Oil Company, Apple River Investments, LLC, and Kudzu Oil Properties, LLC*

4831-7902-8172.2

**Certificate of Service**

I hereby certify that on this 29th day of September 2020, I caused the foregoing *Kudzu Parties' Objection to the Debtors' Motion for Clarification and to Authorize Immediate Offset of Joint Interest Billing Obligations* to be served *via* CM/ECF to all parties that have filed electronic appearances and requested service in this case.

*s/Timothy M. Swanson*
Timothy M. Swanson

4831-7902-8172.2