# EXHIBIT A



## MASTER SERVICE AGREEMENT
Agreement Number: AGR-_____

**THIS AGREEMENT CONTAINS PROVISIONS RELATIVE TO INDEMNITY, RELEASE OF LIABILITY AND ALLOCATION OF RISK.**

This MASTER SERVICE AGREEMENT (sometimes called "MSA" or simply "Agreement") is entered into effective as of the 19th day of November, 2018 by and between Sklar Exploration Company, L.L.C., for itself and its affiliated entities (collectively "Company"), and RAPAD Well Service Company Inc., as "Contractor."

Contractor acknowledges that Company may have contracted with another person or persons to provide services of which the Work hereunder is a part. Contractor agrees that all of its obligations and covenants set forth herein shall accrue to the benefit of all such parties and all other owners of interests in the well or other Project with respect to which such Work is performed.

In consideration of the mutual promises, conditions, terms and agreements contained in this Agreement, the sufficiency of which is hereby acknowledged, the Parties hereto mutually agree as set forth below:

### ARTICLE 1: PURPOSE, APPLICATION, AND DEFINITIONS

**1.1 Scope:** This MSA applies to all services, including work in which the Contractor is to supply miscellaneous goods or materials, including rented or leased goods or equipment, in addition to labor and equipment, but is not intended to be used for work primarily involving the performance of professional services provided, however, that this MSA shall have no application to any operation or service provided by Contractor for or to Company while (i) Contractor is utilizing a drilling rig (as opposed to a workover/well service rig), and (ii) Contractor and Company have entered into a separate drilling contract regarding operations to be performed.

#### A. RENTALS

**1.2 Rentals:** If the Parties or their Affiliates elect to enter into a separate equipment rental agreement and there is any conflict between the terms of the separate equipment rental agreement and this MSA, the terms of this MSA shall prevail and govern. Unless otherwise agreed in the Work Order, the rental rate for all Contractor-owned equipment shall be approved rates set forth in the Work Order, and such rates shall not be increased without Company's prior written consent. The rental equipment shall include (a) available operating manuals and (b) the supplies and spare parts, if any, set forth in the Work Order, as hereinafter defined.

**1.3 Title, Ownership and Condition of Rentals:** Title and ownership of the equipment shall at all times remain with Contractor and shall remain the personal property of Contractor notwithstanding that the rental equipment may become affixed to real property. Company shall return the rental equipment to Contractor at the Site in the condition received by Company, less normal wear and tear. Contractor shall be responsible for, and bear the risk of, loss due to transportation of any rental equipment to and from the Site. During the rental term, Company's only responsibility for loss or damage to any rental equipment is when such equipment is in the care, custody and control of Company. Contractor shall be responsible for any loss or damage to the rental equipment at all other times. Unless Company expressly, and in writing, assumes the obligation to maintain the rental equipment, Contractor shall maintain the rental equipment in good working order throughout the rental term. Company shall not assign, sublease, or otherwise transfer the rental equipment. Company shall not cause or permit any liens or privileges to be placed against the rental equipment other than liens or privileges resulting from the actions or failures of Contractor.

**1.4 Insurance for Rentals:** Contractor shall obtain property damage insurance for the fair market value of the rental equipment. Company shall obtain property damage insurance for the fair market value of the rental equipment while it is in Company's care, custody, and control. Each insurance policy shall contain the required insurance provisions set forth in this Agreement, except that Company's insurance policy shall be primary where Company has care, custody, and control of the equipment and Contractor's insurance shall be primary at all other times.

#### B. DEFINITIONS

**1.5 "Affiliate"** means any Person controlling, controlled by, or under common control with a Party. The term "control" as used in the preceding sentence means, with respect to a corporation, the right to exercise, directly or indirectly, more than fifty percent of the voting rights attributable to the shares of the controlled corporation, and with respect to any Person other than a corporation, the possession, directly or indirectly, of the power to direct or cause the direction of such Person's management or policies.

**1.6 "Change Order"** means the order to change or modify an existing Work Order duly issued pursuant to the terms of this Agreement, the Specifications and Drawings, and all other documents, if any, which are by reference made a part of the Change Order. A Change Order that changes or modifies a Work Order which, prior to change or modification, was estimated to cost $50,000 or more shall be in writing, but may consist of an exchange of correspondence, whether by letter, telex, telegram, facsimile, or e-mail, if the exchange of correspondence is transmitted by a duly authorized representative of Company holding the title of Vice President or President and includes all material terms and conditions, and the Parties have affirmatively agreed to such terms and conditions. A Change Order that changes or modifies a Work Order which, prior to change or modification, was estimated to cost less than $50,000 may consist of oral communications or an exchange of correspondence, whether by letter, telex, telegram, facsimile, or e-mail, if the oral communications or exchange of correspondence is transmitted by a duly authorized representative of Company holding the title of Vice President or President and includes all material terms and conditions, and the Parties have affirmatively agreed to such terms and conditions. Notwithstanding the foregoing, any Change Order which involves Work which, in the aggregate, is then estimated to cost $50,000 or more shall be in writing, but may consist of an exchange of correspondence, whether by letter, telex, telegram, facsimile, or e-mail, if the exchange of correspondence is transmitted by a duly authorized representative of Company holding the title of Vice President or President and includes all material terms and conditions, and the Parties have affirmatively agreed to such terms and conditions.

**1.7 "Claim," "Claims," "Loss," or "Losses"** means all claims and/or losses of all kinds and descriptions concerning, as appropriate, bodily injury, personal injury (under workers' compensation laws, or otherwise), illness, death, property damage, including total or partial loss, temporary or permanent loss of use, including damages of all kinds and descriptions, liabilities of all kinds and descriptions, losses of all kinds and descriptions, demands of all kinds and descriptions, liens, privileges and other encumbrances of all kinds and descriptions, causes of action of any kind or description (including negligence, actions *in rem* or *in personam*, at law or in equity), obligations of any kind or description, attorneys' fees, expert fees, costs of any kind or description, judgments of any kind or description, settlements, regulatory proceedings, citations, orders, decrees, taxes of any kind or nature, fines, penalties, interest of any kind or description, and awards of any kind or description, whether created by law, statute, regulation, contract, tort, voluntary settlement, arbitration, mediation or otherwise, including where all such claims that might be brought by (or the losses suffered by) spouses, heirs, survivors or legal representatives, successors and assigns, and any other claims that may be brought or asserted against an indemnitee by any Person, Third Party or legal entity whomsoever.

**1.8 "Company Group"** means Company and its and their Affiliates, and its and their shareholders, members, managers, owners, officers, directors, employees, servants, non-operating co-owners and others for whom Company is acting as agent, partners, joint venturers, agents, assigns, representatives, managers, consultants, insurers, subrogees, and other contractors and subcontractors (with the exception of Contractor and its subcontractors) of all the foregoing.

**1.9 "Contractor Group"** means Contractor and its and their Affiliates, its and their subcontractors and employees of subcontractors, and its and their shareholders, members, managers, owners, officers, directors, employees, and servants.

**1.10 "Drawings"** means any and all drawings listed or incorporated by reference in the Work Order and any subsequent revisions thereto, and all drawings furnished by Contractor in accordance with the Work Order and reviewed and approved by Company.

**1.11 "Effective Date"** means the date written in the first paragraph on the first page of this Agreement.

1.12 "Including" means "including, without limitation" or "including, but not limited to."

1.13 "Goods" or "Materials" means all personal and/or moveable property supplied to Company by Contractor as part of or in connection with a Work Order, including, equipment, fuel, materials, tools, consumables and parts.

1.14 "Party" or "Parties" means the Persons whose names are expressly set forth in the blanks near the words "Contractor" and "Company" in the first paragraph on the first page of this Agreement.

1.15 "Person" means an individual, partnership, joint venture, corporation, limited liability company, or unincorporated organization.

1.16 "Plans" means the layout, elevation and other engineering plans prepared by or on behalf of Company and provided to Contractor and incorporated into the Work, together with any revisions and modifications thereof.

1.17 "Project" includes the Work of Contractor but may refer to the overall project endeavor of Company of which the Work is only a part.

1.18 "Specifications" means the Specifications attached to or incorporated by reference into the Work Order and made a part thereof and any subsequent revisions thereto.

1.19 "Third Party" or "Third Parties" means any Person other than a member of Contractor Group or Company Group.

1.20 "Work" or "work" as used in this Agreement, means all of the Goods, supplies, equipment, Materials, tools, labor, services and any other items furnished by Contractor pursuant to a Work Order.

1.21 "Work Order" or "Order" means the order for work duly issued pursuant to the terms of this Agreement, the Specifications and Drawings, and all other documents, if any, which are by reference made a part of the Work Order. A Work Order for work which, in the aggregate, is estimated to cost $50,000 or more shall be made on the form of Work Order contract attached to this Agreement as Exhibit "A." A Work Order for work which, in the aggregate, is estimated to cost less than $50,000 may consist of oral communications or an exchange of correspondence, whether by letter, telex, telegram, facsimile, or e-mail, if the oral communications or exchange of correspondence is transmitted by a duly authorized representative of Company holding the title of Vice President or President and includes all material terms and conditions, and the Parties have affirmatively agreed to such terms and conditions.

1.22 "Work Site," "Job Site" or "Site" means the location or locations owned or operated by Company where work under a Work Order is being performed.

## ARTICLE 2: CONTRACT ADMINISTRATION

### A. MSA

2.1 Parties Bound. This MSA shall bind Company, Contractor and their respective Affiliates.

2.2 Applicability. This MSA establishes a master service agreement contracting system consisting of two parts: (1) a master service agreement having general terms and conditions; and (2) one or more orders for Work, Materials and/or Goods, including rental equipment. The Parties hereby agree that, notwithstanding any other agreements between the Parties, any Work Orders issued pursuant to this MSA shall be governed exclusively by this MSA and not any other master service agreements or similar agreements, except as noted in Paragraph 1.1 herein.

2.3 Term and Termination. This Agreement shall commence on the Effective Date and shall terminate with the first proper Termination Notice, as hereinafter defined, or the execution of a subsequent master service agreement, whichever occurs first. By written notice ("Termination Notice"), either Party may terminate this Agreement prospectively with respect to new work. This Termination Notice must be written, and the other Party must receive it at least thirty (30) days in advance of the desired termination date. For either Party, a Termination Notice does not require any cause and may be made without any liability. Notwithstanding such Termination Notice, the terms and conditions of this Agreement shall survive for all completed and current but uncompleted Work Orders. If this Agreement contemplates action or forbearance concerning such completed and/or current Work Orders after a proper Termination Notice, then this Agreement's provisions related to such action or forbearance shall survive termination for six years or until the applicable statutes of limitation bars any Claim, whichever occurs first. If the Parties have specified specific shorter or longer survival periods in other sections of this Agreement, then those specific provisions shall control.

2.4 Entire Agreement. This MSA is the Parties' entire agreement concerning the agreed general terms and conditions while the entire agreement for the work consists of both the MSA and the Work Order, as herein defined, describing the work and any special terms and conditions, and as may be modified by a duly-executed Change Order. All prior negotiations, representations, understandings, and partial agreements concerning this Agreement's subject matter are superseded by this Agreement, merged with this Agreement, and constitute non-binding preliminary negotiations for this Agreement. Likewise, all prior negotiations, representations, understandings, and partial agreements concerning a Work Order's subject matter are superseded by the final Work Order, merged with the final Work Order, and constitute non-binding preliminary negotiations for such Work Order.

2.5 Amendment. No attempted amendment, modification, waiver, or release of this Agreement's obligations, or any obligations under a written Work Order or Change Order, shall be binding on the Parties unless a writing of like import exists that (a) identifies the amended, modified, waived, or released obligation, (b) describes the nature of the amendment, modification, waiver, or release, (c) is signed by each Party's duly authorized representative, and (d) follows any additional requirements set forth in this Article 2. No attempted amendment, modification, waiver, or release of any obligations under an oral Work Order or Change Order, or any Work Order or Change Order confirmed by an exchange of correspondence, shall be binding on the Parties unless such amendment, modification, waiver, or release is communicated or transmitted by a duly authorized representative of Company holding the title of Vice President or President and (a) identifies the amended, modified, waived, or released obligation, (b) describes the nature of the amendment, modification, waiver, or release, and (c) follows any additional requirements set forth in this Article 2.

2.6 Assignment. The Parties shall not assign this Agreement or any Work Order without the other Party's prior written consent.

2.7 Assignee Bound/Assignor Not Released. An authorized or permitted assignment shall not discharge either Party from its obligations under this Agreement. Each respective Party shall remain responsible for the acts, defaults, omissions, and neglects of any assignee as if it was their acts, defaults, omissions, and neglects. Each respective Party may demand that the other Party fulfill its obligations without first having to make such a request to that Party's assignee.

2.8 Conflict with Agreement. Upon the issuance of a Work Order and the acceptance thereof by Contractor, the terms of the Work Order shall supplement the terms of this Agreement. It is intended that the terms of this Agreement and those of any Work Order be read together giving effect to all. In the event, however, of an irreconcilable conflict between the terms of this Agreement and those of any Work Order, then the following priority shall apply:

a. If the irreconcilable provisions of the Work Order and this Agreement pertain to the scope of services, applicable Specifications or matters of a technical nature to be provided by Contractor in connection with the performance of the Work, then such provisions of the Work Order shall govern.

b. If the irreconcilable provisions of the Work Order and this Agreement pertain to the rights, duties or obligations of the Parties, then the provisions of this Agreement shall govern.

2.9 Not a Work Order. This Agreement does not obligate Company to issue any Work Order to Contractor nor does this Agreement obligate Contractor to accept any Work Order tendered by Company.

### B. WORK ORDERS

2.10 Requirements. All requests for proposals shall be issued by Company. When issued, such requests for proposal are non-binding, negotiable offers. Such offers become a binding Work Order only after Company and Contractor have affirmatively agreed to all material terms and conditions pertaining to the Work and those terms and conditions are incorporated into the Work Order. The failure of Contractor to respond to a request for proposal shall not result in a binding Work Order even though Company and Contractor may be considered "merchants" under the Uniform Commercial Code. Contractor's commencement of performance of the Work under a request for proposal shall be deemed to be acceptance of the request for proposal and the agreement of Contractor to comply with the Work Order.

2.11 No Ancillary Terms Adopted.

    A. To acknowledge or document various events during the performance of the Work, Company may from time to time sign Contractor's variously titled forms, such as delivery tickets, labor tickets, time sheets, bills of lading, sales orders, tickets or acknowledgements and rental tickets, but these forms' terms and conditions do not amend, modify, waive, or release any aspect of a Work Order or this Agreement and form no part of either.

    B. Under no circumstances will Contractor's terms and conditions on any proposal, bid, delivery ticket, work ticket, non-conforming acceptance, invoice or other document (whether printed thereon or attached thereto or otherwise incorporated by reference therein) be binding on Company. Notice is hereby given that any such additional terms and conditions are unacceptable and do not form part of the Work Order or this Agreement.

**2.12 Termination.** Work Orders may be terminated under this Agreement as a remedy for an uncured default as set forth in the default provisions of this Agreement, for *Force Majeure* conditions as set forth in the *Force Majeure* provisions of this Agreement, or under such terms and conditions as may be set forth in the Work Order.

**2.13 Identifying Subcontractors.** For Company's benefit, Contractor shall identify its proposed subcontractors, and later, if different, its retained subcontractors. Contractor shall use its reasonable efforts to identify subcontractors before subcontracts are actually let. If Contractor makes any changes in its proposed subcontractors or in its hired subcontractors, then Contractor shall notify Company of any additional, substituted, or eliminated subcontractors.

**2.14 Company's Right to Reject Subcontractors.** Within five (5) days after it receives a list of proposed subcontractors, Company shall notify Contractor in writing of any subcontractors that it rejects. Company's right to reject subcontractors is not limited to subcontractors identified in this subcontractor identification procedure. The right applies to all subcontractors retained by Contractor.

**2.15 Subcontractor Bound/Contractor Not Released.** Contractor's subcontracting shall not discharge Contractor from its obligations under any Work Order or this Agreement. Company may demand that Contractor fulfill its obligations without first having to make such a request to Contractor's subcontractor.

**2.16 Change Orders.**

> **A. Change Order Request:** Either Party may request changed items, include new items, or omit current items by issuing a change order request. Until the terms of the change order requests are accepted by Company and Contractor, they are non-binding, negotiable offers. Any change order request shall be reasonably detailed to permit the customary analysis by the other Party. The failure to respond to a change order request shall not result in a binding Change Order even though Company and Contractor may be considered "merchants" under the Uniform Commercial Code. Affirmative agreement by both Company and Contractor is required.
>
> **B. Change Order Negotiations and Performance.** The Parties shall negotiate in good faith to conclude a Change Order, but neither Party shall be obligated to conclude an agreement that results in a Change Order. Upon the Parties' approval, Contractor shall diligently perform the Change Order.
>
> **C. Disputed Change Order Requests.** If there is a dispute as to whether the work at issue is a change in the scope of the work required under the Work Order, or there is a good faith dispute as to the value of such change, or there is any other matter in controversy, Company shall be entitled to issue a directive to the Contractor to perform the additional work, and Contractor shall be obligated to proceed with, and complete performance of, such alleged change, without either Party's admitting to liability for the change or waiving its respective rights under the Work Order. No dispute involving the interpretation of this Agreement or any Work Order or change order request shall be any basis for Contractor to fail or refuse to perform according to a directive issued by Company pursuant to this Section or Section 2.52, and Contractor's compliance with the directive shall entitle Contractor to an equitable adjustment in the price for such work. Any dispute as to the amount of the equitable adjustment, whether an increase or a decrease from the original Work Order amount, shall be determined in accordance with this Agreement.

### C. RELATIONSHIP OF COMPANY AND CONTRACTOR

**2.17 Relationship: Independent Contractor.** Contractor is Company's independent contractor working at its own risk. Contractor is not Company's agent, servant, or employee. Company shall designate the work it desires, and shall supervise and direct the overall Work. Company has no control over the operative details of Contractor's performance; but Company retains the right to inspect and monitor work by Contractor hereunder or dictate certain scheduling parameters if required by the work. Notwithstanding the foregoing, unless prohibited by law, Company shall be considered the statutory employer of all employees of Contractor, Contractors' sub-contractors or agents when the work is an integral part of or essential to Company's ability to perform its operations as an oil and gas operator.

**2.18 Conflict of Interest.** Contractor shall not offer to Company's employees or officers gifts, entertainment, or other favors beyond the common courtesy usually associated with business practices. Contractor shall not pay any commissions or fees or grant any rebates or other remuneration or monetary gratuity to any employee, agent, officer or representative of Company. Contractor agrees to use reasonable efforts to have a similar provision in its subcontracts.

### D. WORK AND WORK WARRANTY

**2.19 Preparedness.**

A. Contractor shall furnish all necessary personnel, equipment, machinery, Materials, Goods, tools, supplies, expertise, transportation and supervision necessary for the full, complete, timely and proper performance of the Work. Contractor-supplied equipment shall be in proper operating condition and maintained by Contractor in good working order while on the Site. Upon completion of the Work, Contractor shall remove its equipment, machinery, Materials, Goods, tools and supplies from the Work Site, shall clean up the premises in a good and workmanlike manner, and shall pile excess or unused Materials at points or places designated by Company. If Contractor fails to remove its equipment, machinery, Materials, Goods, tools and supplies and clean up the Work Site within fifteen (15) days after completion of its operations at the Work Site, Company may at its sole option remove the equipment, machinery, Materials, Goods, tools and supplies and clean up the Work Site at Contractor's expense and deduct its cost from sums that Company owes Contractor. Contractor shall be solely responsible for any loss or damage to its equipment, machinery, Materials, Goods, tools or supplies. If Company agrees to supply items customarily supplied by Contractor, then Company's agreement to furnish such items shall be in writing. If no such writing exists, all delays related to the failure of Company to supply such items shall be at Contractor's cost.

B. Prior to accepting any Work Order issued by Company, Contractor shall conduct such investigation or examination of the proposed scope of work as Contractor shall, in the exercise of its discretion, deem necessary. By accepting any Work Order, Contractor warrants that 1) it possesses all expertise and capability to perform the Work timely and properly, 2) it has taken into account all reasonable and foreseeable contingencies affecting the proper and timely completion of the Work, and 3) Contractor is duly licensed to perform the Work.

C. Contractor shall furnish to Company upon request copies of all licenses, permits or other documents required for the Work, including such documents in effect prior to the execution of any Work Order, as well as those which become effective thereafter. Contractor shall give Company immediate notice of the modification, revocation, or cancellation of, or decision not to renew, any permit, license or approval necessary for the performance of the Work. Contractor shall indemnify and hold harmless Company for all losses, expenses, costs, fines, penalties, including attorneys' fees and costs arising out of or relating to the failure to obtain or maintain any permit, license or approval required by law for the performance of the Work by Contractor.

D. Contractor shall perform the Contract Work in strict accordance with this Agreement. The Work includes all work specifically set forth in the Work Order and includes everything necessary or customary for the proper execution, functioning, connection, completion and testing of all work referred to by the Work Order. Anything pertaining to the general nature of the Work that is mentioned in the Plans and Specifications but not shown in the Drawings, or shown in the Drawings but not mentioned in the Plans and Specifications, shall be of like effect and shall be binding on the Contractor as if shown or mentioned in both.

E. Contractor is responsible for providing Company with Material Data Safety Sheets, updated with each delivery of regulated chemicals or materials, and certification as to the maximum amount of chemical to be stored on the Work Site at any one time by Contractor or its subcontractors.

**2.20 Standard of Performance.**

A. Contractor shall perform the Work in accordance with standards of workmanship applicable to reasonably prudent, similarly-skilled workmen and in accordance with such Plans, Specifications, Drawings or directives as are incorporated into the Work through the Work Order. Further, Contractor shall use reasonable efforts to perform the Work efficiently, economically and in a manner consistent with, and with due regard for, Company's interests in the Project for which the Work is to be performed.

B. Contractor shall not deviate from the Plans and Specifications without the prior written consent of Company. Any changes in the Plans or Specifications made or prepared by the Contractor, or any other proposal of the Contractor, which may be approved by Company, shall be the Contractor's full responsibility. Contractor shall be responsible and pay for all additional costs, delays, and damages caused to Company or others as a result of any such Contractor changes which were not first approved in writing by Company.

**2.21 Warranty Work.** Deleted

**2.22 Deleted**

**2.23 WARRANTY DISCLAIMER.** EXCEPT AS EXPRESSLY PROVIDED IN THIS AGREEMENT, COMPANY ACKNOWLEDGES AND AGREES THAT CONTRACTOR HAS NOT MADE AND DOES NOT MAKE ANY REPRESENTATION, WARRANTY OR COVENANT WITH RESPECT TO MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, CONDITION, QUALITY OR DURABILITY OF THE WORK IN ANY RESPECT OR IN CONNECTION WITH, OR FOR THE PURPOSE OR USE OF COMPANY, OR ANY OTHER REPRESENTATION, WARRANTY OR COVENANT OF ANY KIND OR CHARACTER EXPRESSED OR IMPLIED WITH RESPECT THERETO.

### E. GOODS AND WARRANTY FOR GOODS

Deleted

## F. TIMING

**2.34 Time Requirements.** If a time requirement is part of a Work Order, TIME IS OF THE ESSENCE, and Contractor shall meet it. If Company changes the Work Order's time requirements, Contractor shall use reasonable efforts to meet the change. If meeting the change is possible and does not increase Contractor's cost, Contractor shall meet the change. If incurring additional costs may improve the chances of complying with the change, Contractor shall so notify Company. If exercised within a reasonable time, Company shall have the option to request the more favorable scheduling and pay such additional costs. If the Work Order does not specify a time requirement and Company later specifies one, then such time requirement shall be treated as a Change Order. If Company never specifies a time requirement in a Work Order, Contractor shall nonetheless perform the Work in an expeditious manner.

**2.35 Suspension for Company's Convenience or Contractor Endangerment.** By written notice, Company may, without cause, order Contractor to suspend a Work Order's performance. Such notice shall state the anticipated suspension period. If any such suspension lasts more than six months, Company may, at its sole election, terminate the Work. Company shall increase Contractor's compensation for any cost increases, including the effect of such cost increases on Contractor's profit, through a duly-authorized Change Order. Company shall have the right to audit Contractor without the restrictions on non-reimbursable costs and profit margins in this Agreement's audit provision as long as all Persons viewing such information sign a confidentiality agreement acceptable to each Party's representative. A Person refusing to sign such a confidentiality agreement shall not be entitled to view the information or participate in the arbitration proceedings. By written notice, and without any liability to Contractor, Company may suspend work if Company has a reasonable belief that Contractor or its subcontractors has created a health, safety, environmental, or performance threat.

**2.36 Schedule and Schedule Extension.**

A. **Schedule.** The Work shall be performed in accordance with the schedule initially established by Company and incorporated into the Work Order (the "Schedule"). The Schedule shall be updated by Contractor and provided to Company, at the interval determined by Company at the start of the Work, but in any event, no less than the frequency with which Contractor submits its invoices for services rendered under the Contract. Any proposed schedule shall first be approved in writing by Company. Only after a proposed schedule is approved by Company in writing, through a duly-authorized Change Order, shall it supersede the prior Schedule and become binding on the Parties.

B. **Schedule Extension.** If Contractor is delayed at any time in the progress of the Work by any act or neglect of Company or of its employees, or by any other contractor employed by Company, or by changes in the Work, or by strikes, lockouts, fire, unusual delay in transportation, weather conditions which exceed the 10-year baseline for the area encompassing the Work, unavoidable circumstances beyond the Contractor's control and which are not due to the fault or negligence of Contractor, or by another cause which, in the opinion of Company, justifies the delay, then the time of completion shall be extended for such reasonable time as the Company may decide through a duly-authorized Change Order. No such extension shall be made for delay occurring more than seven (7) days before a claim therefore is made in writing by the Contractor and submitted to Company.

**2.37 Substantial Completion.** At the request of Company, upon the Substantial Completion (as hereinafter defined) of the Work, Contractor shall provide notice of same to Company in the form approved by Company, which shall be provided to Contractor upon request. After receiving proper notice from Contractor, Company shall have the right to inspect the Work and Company shall notify Contractor, within thirty (30) days thereafter, of its acceptance of the Work as substantially complete (the "Notice of Substantial Completion"). Included in Company's Notice of Substantial Completion shall be any punch list items or necessary testing (the "Additional Work") that must be completed in order for the Work to reach Final Completion (as hereinafter defined). For purposes hereof, unless the Work Order provides a different definition of Substantial Completion, the term "Substantial Completion" shall mean that the Contract Work (a) has been completed, and the Work is ready to be operated in accordance with this Agreement; (b) Contractor has performed the Work according to the terms hereof; (c) the Work complies with all applicable laws and regulations and complies with all applicable permits; and (d) Contractor has delivered to Company a notice signed by Contractor, certifying that all of the foregoing conditions have been satisfied.

**2.38 Final Completion.** Upon the Final Completion of the Work, Company shall issue its "Notice of Final Completion," whereupon Company shall make the final payment in accordance with the terms hereof. For purposes hereof, unless the Work Order provides a different definition of Final Completion, the term "Final Completion" shall mean that (a) Substantial Completion has occurred or shall occur simultaneously with Final Completion; (b) the performance of the Work is 100% complete (including all Additional Work) and accepted by Company and all final documentation provided by Contractor and accepted by Company; (c) there exists no Contractor breach or default under this Agreement; and (d) Contractor has executed and delivered to Company a notice signed by Contractor, certifying that all of the foregoing conditions have been satisfied. Contractor shall request issuance of a Notice of Final Completion in the form approved by Company, which shall be provided to Contractor upon request. If no separate "Notice of Final Completion" is issued by Company, then Final Completion shall be deemed achieved by Contractor on the date of Company's payment of Contractor's final invoice under the Work Order.

## G. HEALTH AND SAFETY REQUIREMENTS

**2.39 Unauthorized Persons.** Only the authorized Persons working for Contractor or its subcontractors shall be permitted to enter any Work Site where Contractor may be working. Contractor shall take such steps as reasonably necessary to prevent unauthorized Persons from entering such Work Site, including potential clients, guests, spouses, and/or family members of authorized Persons.

**2.40 Required Compliance.**

A. Contractor and its subcontractors shall comply with all applicable governmental regulations, including those promulgated or administered by the Occupational Safety and Health Act (OSHA), Department of Transportation (DOT), Pipeline and Hazardous Materials Safety Administration, the Drug Free Workplace Act of 1988 (41 U.S.C. 701 et seq., the Department of Health and Human Services mandatory Guidelines for Federal Workplace Programs, 49 C.P.R. Part 40, Federal Energy Regulatory Commission, including Order No. 717, Environmental Protection Agency, Department of the Interior Bureau of Land Management and applicable regulations promulgated or administered by agencies located in the state in which Contractor and its subcontractors are performing work, all of which are incorporated into this Agreement and made a part hereof. Contractor shall conform, and ensure conformance by all its employees, subcontractors, and agents, with all applicable Company policies, procedures, processes, guidelines and handbooks which will be supplied to Contractor upon request. If applicable, Contractor will have programs in place to meet all requirements of 49 CFR Part 192, including Subpart N-Qualification of Pipeline Personnel (often referred to as OQ). This will include providing proof of program compliance, including, but not limited to, program compliance documentation for all individuals performing covered tasks. Payment for work may be withheld until proof of compliance with Contractor program(s) and/or Company program(s) is provided to maintain compliance records.

B. Contractor will have programs in place to meet all requirements of 49 CFR Part 199-Drug and Alcohol Testing. This includes providing proof of program compliance, including documentation for all individuals performing covered tasks on regulated facilities. Payment for work may be withheld until Contractor provides proof of compliance with Contractor program(s) and/or Company program(s).

**2.41 Communication.** Contractor and its subcontractors working at any Company Work Site must be able to understand spoken English well enough to comprehend basic emergency warnings, such as stop, keep out, evacuate. Contractor and its subcontractors must provide an adequate number of bilingual employees to communicate with their non-English speaking employees working at any Site. Some Work Sites, because of the sensitive nature of their operations, may require that Contractor and its subcontractors are fluent in reading and speaking English.

**2.42 Training.** Contractor and its subcontractors shall provide only those employees and agents who are qualified and trained to perform their required tasks and who are knowledgeable in the potential hazards related to their work. Contractor and its subcontractors shall provide Company, upon request, training records verifying such applicable and required training has occurred.

**2.43 Site Orientation.** Contractor and its subcontractors shall attend any Site-specific health and safety orientation designed to enable the Contractor's and its subcontractors' employees and agents to recognize potential hazards and understand safe work practices required for working at or providing services to any Work Site.

**2.44 Job Safety Analysis.** Contractor and its subcontractors shall conduct a job safety analysis ("JSA") prior to commencing any job requiring the preparation of a safe-work permit (e.g., hot work, excavation, confined space entry, cold work, etc.). The JSA shall list the specific tasks necessary for conducting the job, hazards associated with each task, and the engineering and/or administrative controls designed to reduce the impact associated with the hazards identified and/or the likelihood of an impact from occurring.

**2.45 Compliance Monitoring.** Contractor and its subcontractors must conduct self-inspections and audits to evaluate safe work habits and behaviors and to ensure compliance with Company policies, procedures, processes, guidelines and handbooks and Contractor's and its subcontractors' policies, procedures, processes, guidelines and handbooks. Each

4

self-inspection or audit shall be maintained in the Contractor's and its subcontractors' files with copies provided to Company upon request. Furthermore, corrective actions taken by Contractor and its subcontractors shall be documented and reviewed with the Contractor's and its subcontractors' employees and agents as well as with Company representative. Company also reserves the right to conduct periodic audits of Contractor and its subcontractors to ensure specific health and safety policies, procedures, processes, guidelines and handbooks are being followed.

**2.46 Unsafe Acts or Conditions.** If unsafe acts or conditions are observed, Company shall require corrections be made immediately and has stop work authority. Company reserves the right to require a Contractor and its subcontractors to immediately stop work, require Contractor and its subcontractors to immediately leave the Work Site, either temporarily or permanently, and/or terminate Work by Contractor and its subcontractors as to any specific Work Order immediately for any material violation of a health and safety Policy, Procedure, or requirement.

**2.47 Required Reporting.**

A. Contractor shall immediately give notice by telephone to Company of any accidents or occurrences resulting in injuries to persons or damage to property in any way arising out of or related to the Work, including Work performed by Contractor's subcontractors, and promptly follow such notice with a written report regarding such accident or occurrence.

B. Contractor shall report to Company as soon as practicable all occurrences resulting in discharge or spill of produced water, hydrocarbon or other substance. Contractor shall immediately stop the source of any spill or release, prevent the contaminant from spreading and remove all contaminant practicable. Contractor shall complete a report of loss form and retain a log of all spills.

C. Contractor shall retain all records required by paragraphs (A) and (B) for the applicable statute of limitations period for the particular jurisdiction in which the Work is performed.

## H. PERFORMANCE

**2.48 Location Access.** Company shall ensure that Contractor and its subcontractors have access to and from any Work Site where Contractor may be working and that neither the Contractor nor its subcontractors are denied reasonable access to the Site.

**2.49 Force Majeure.** "Force Majeure Event" means acts of God, floods, blizzards, ice storms, thaws, named tropical storms, and hurricanes; insurrection, terrorism, revolution, piracy, and war; strikes, lockouts, and labor disputes; federal or state laws; ordinances, standards, rules and regulations of any governmental or public authorities having or asserting jurisdiction over the premises of either or both Parties; inability to procure material, equipment, or necessary labor despite reasonable efforts; or similar causes (except financial) beyond the control and without the fault of the affected Party and which, through the exercise of diligent effort, such Party cannot overcome. Either Party shall be excused from complying with the terms and conditions of this Agreement and the applicable Work Order if, to the extent, and for as long as, such Party's compliance is delayed or prevented by a Force Majeure Event. A Force Majeure Event shall not excuse performing duties that are unrelated to the Force Majeure Event, including performing indemnity obligations. If a Party is rendered unable, wholly or in part, by a Force Majeure Event to perform, that Party shall give written notice detailing such Force Majeure Event to the other Party as soon as possible, but no later than seventy-two (72) hours after the commencement of such Force Majeure Event. If a Force Majeure Event continues without interruption for thirty (30) days, either Party may cancel the applicable Work Order by giving written cancellation notice to Contractor.

**2.50 Default.**

    A. If either Party fails to perform any of its material obligations or otherwise violates any material term or condition of this Agreement or any Work Order and such default continues for a period of seven (7) days after receipt of a written notice describing the default, then the non-defaulting Party may terminate all or part of the Work Order. The opportunity to cure shall not apply, and a Party may terminate immediately for fraud, intentional misconduct, gross negligence, bankruptcy, insolvency, and lack of creditworthiness or other actions so substantial that they impair the Work, including those that prejudice the Schedule.

    B. If Company terminates all or part of a Work Order because of Contractor's default, Company may procure Goods and/or services similar to those described in the Work Order in order to complete the work in accordance with the Work Order, and Contractor shall be liable to Company for the reasonably incurred costs for such similar items in excess of the Work Order price. Company may require Contractor to transfer title and deliver to Company any completed services or purchased Goods which have been delivered as well as any partially completed items after the payment of the portion of the Work Order price for all work timely and properly completed by Contractor prior to the termination. In addition, Contractor may retrieve any rented items after Company has procured replacements. Contractor shall continue the performance of the work under the Work Order to the extent not terminated.

    C. If Contractor terminates all or part of a Work Order because of Company's uncured default, Contractor shall receive the amounts due and not previously paid for work timely and properly completed and purchased Goods delivered prior to the termination and other reasonable and necessary amounts directly associated with the termination of the work, such as demobilization, or out-of-pocket costs associated with the cancellation or termination of any orders to purchase services or Goods required by the Work Order.

**2.51 Remedies Not Exclusive.** In addition to the remedies set forth in this Agreement, Company and Contractor shall have all other remedies available at law or in equity except for remedies specifically excluded by this Agreement.

**2.52 Directive.** Contractor agrees that if Contractor refuses or for any reason fails at any time to prosecute the Contract Work in a diligent, efficient, timely, workmanlike, skillful, cooperative, safe, and careful manner, or if Contractor fails to supply sufficient, adequate and competent supervision, or if Contractor fails to furnish a sufficient number of properly skilled workmen, or if Contractor fails to have at the Site sufficient equipment of the proper quality and quantity, or if Contractor fails to promptly correct defective work, or if Contractor fails to pay its bills and discharge its obligations with Company on any Site or under any Work Order, or if Contractor fails to perform any term or condition of any part of this Agreement, or if Contractor otherwise delays the work of Company, other contractors or other subcontractors, or if there is a disagreement as to a change order request, then Company shall have the option, upon forty-eight (48) hours written notice to Contractor (except in an emergency, in which case, no notice is required), to require Contractor to take such action as is specified in the written directive, or for Company to provide any such labor, equipment and services and to deduct the cost thereof, together with all loss or damage occasioned thereby, from any money then due or thereafter to become due to Contractor under this Agreement or any Work Order. The Company shall further have the option, but not the obligation, to use funds otherwise earned by the Contractor on this Work or other Work to pay the Contractor's past due bills and obligations, including back charges owed to Company, under any Work Order. If there is a default or a performance failure of any nature, including the Contractor's failure to pay bills or discharge obligations as they become due on any other Project or Work Order involving Company, Company may use funds otherwise owed under one Work Order to pay bills and discharge obligations under other Work Orders. Any decision made by Company pursuant to this Section shall be final and binding. No dispute by Contractor shall interfere with or impede the implementation of the decisions of Company as allowed by this Section. Compliance with Company's directive shall be without prejudice to Contractor's rights to seek such adjustment in the price or the schedule as Contractor deems necessary in accordance with the provisions of Article 6 hereof.

**2.53 Notices.**

A. This Section concerns notices, including any Termination Notice, requests, demands, and other communications required or authorized by this Agreement's other provisions. It does not apply to Company's instructions to Contractor, including written or oral directives to Contractor by Company's duly authorized on-Site representative, or Contractor's status reports to Company. All notices, requests, demands, and other communications specifically required or authorized by or convenient to be given pursuant to this Agreement shall be written and shall be (a) delivered personally to the recipient's representative identified below, (b) mailed by registered mail or certified mail, return receipt requested, postage prepaid, or by overnight courier to the recipient's address set forth below or (c) sent by facsimile transmission to the recipient's facsimile number set forth below. A Party may change its contact information by sending a notice to the other Party complying with these notice requirements.

B. A notice delivered by hand or by overnight courier shall be conclusively presumed to have been delivered on the date reflected on a written receipt acknowledging delivery that is signed by a representative of the receiving Party or receipt signed by the courier. A mailed or couriered notice shall be conclusively presumed to have been delivered on the date reflected on the returned receipt that is signed by a representative of the receiving Party. A facsimile notice shall be conclusively presumed to have been delivered on the date reflected on the sending facsimile machine's automated printout that reflects that the entire transmission was successfully sent to the receiving Party's facsimile telephone number then in effect. All notices, whether facsimile, mail, hand delivery, overnight courier or other means, received after normal business hours, on weekends, and on holidays shall be conclusively presumed to have been delivered on the next business day. Following are the only authorized Persons who receive Notice under this Agreement:

5

Contractor's Representative:

Donald Wilson;
Vice President

Address: 1309 Hillcrest Drive
Laurel, Mississippi 39440

Telephone: 601-649-0760
Facsimile:601-649-9431

Sklar Exploration Company, L.L.C.

Attn: Steven Hatcher
Vice-President, Land & Legal

Address: 5395 Pearl Parkway, Suite 200
Boulder, Colorado 80301

Telephone: 318-227-8668
Facsimile: 318-227-9012

2.54 Press Releases. Contractor shall not issue (or cause to be issued) a press release concerning this Agreement or any Work Order without the prior written consent of Company. The requirement of written consent shall not apply where the press release is required by law, rule, or regulation, including, the rules and regulations governing public companies, investments in securities, or the stock exchanges on which Contractor's shares are traded.

2.55 Confidentiality of Company Provided Information. Information provided by Company to Contractor for the purpose of performing the work (including information regarding Company's operations) is proprietary to Company and confidential. Contractor shall not divulge such information to any Person other than Company's representatives and shall take all reasonable steps to assure that Contractor's officers, directors, employees, agents, representatives, consultants, and subcontractors will not divulge such information to any Person other than Company's representatives. Contractor shall not use such information for any purpose detrimental to Company. Contractor's confidentiality and limitation of use obligation shall survive for two years following the later of the following: (i) termination of this Agreement or (ii) termination of the Work Order. The confidentiality and limitation of use obligation shall not apply where Contractor can show that (a) such information is already known to Contractor or its representatives or to others not bound by a duty of confidentiality, (b) such information is or becomes publicly available through no fault of Contractor or its representatives, (c) the furnishing or use of such information is required by, is necessary, or is appropriate in connection with legal (whether judicial, administrative, or legislative) proceedings, or (d) such information is developed by Contractor independent of this Agreement or any Work Order. Before making a disclosure in a legal proceeding, Contractor shall notify Company, in writing, of the relevant circumstances.

2.56 Contractor Provided Information. Information provided by Contractor to Company while performing work under a Work Order may be proprietary to Contractor and confidential provided that Contractor has reasonably so advised Company of the identity of the specific information that is deemed to be confidential and proprietary. Company shall not divulge any such proprietary information and shall take all reasonable steps to assure that Company's officers, directors, employees, agents, representatives, consultants, and subcontractors will not divulge such information to any Person other than Contractor's representatives. Company shall safeguard and protect all such information in its custody or control to the same extent it safeguards its own proprietary information. The obligation of confidentiality shall not apply where (a) such information is already known to Company or its representatives or to others not bound by a duty of confidentiality, (b) such information is or becomes publicly available through no fault of Company or its representatives, (c) the furnishing or use of such information is required by, is necessary, or is appropriate in connection with legal (whether judicial, administrative, or legislative) proceedings, or (d) such information is developed by Company independent of this Agreement or any Work Order. Before making a disclosure in a legal proceeding, Company shall notify Contractor, in writing, of the relevant circumstances.

2.57 Patent Warranty and Indemnity. Contractor warrants and represents that the sale or use of Contractor's or its subcontractors' Goods, work, and/or services procured pursuant to this Agreement or any Work Order does not infringe any intellectual property right (including, patent, trademark, copyright, or trade secret) of a Third Party and Contractor shall release, protect, defend, indemnify, and hold harmless Company and any user whose use comes through Company against any and all Claims for the alleged or actual infringement of the same. Contractor shall not, however, be required to hold Company harmless against claims or suits for such infringement when the alleged infringement occurred as a result of the use by Contractor of a process, machine, article of manufacture, and/or composition of matter which Company specifically requests Contractor to obtain from a Third Party or which is supplied by Company. Company shall provide Contractor with prompt notice of the commencement or threat of any such Claim. Unless Company with good reason deems itself insecure, Contractor shall have the sole control of the defense of such Claim and all negotiations for the settlement or compromise thereof. Company shall cooperate fully with Contractor in providing information, documentation, and fact witnesses relevant to such Claim. Contractor may not settle or compromise such an infringement Claim without the written consent of Company if any settlement or compromise requires Company to part with any right or make any payment for which it is not indemnified by Contractor or if any settlement or compromise subjects Company to any injunction. Subject to the foregoing, Company shall have the right, but not the obligation, at its option and expense, to retain advisory counsel to represent its interests in defending any such Claim.

ARTICLE 3: CONTRACT FINANCE

3.1 Compensation. Contractors' compensation shall be set forth in the Work Order. Upon execution of this Agreement, Contractor will supply its current price list or rate sheet to Company which shall be incorporated herein by reference, excluding, however, any commercial terms and conditions which conflict with this Agreement. All revisions of the rate sheet or price list are subject to approval by Company and acceptance through a duly-executed Amendment. Otherwise, any attempted increase will be void. All pricing in a Work Order shall be firm during the performance of the Work Order absent written approval by Company pursuant to a Change Order.

3.2 Invoicing. Unless a different payment term is specified in the Work Order, within thirty (30) days after the end of each calendar month, Contractor shall send any invoice to Company office designated by a Company representative or, if no office has been designated, then in accordance with the notice provisions of this Agreement. Invoices shall be submitted in such form and accompanied by such certification and documentation as Company may reasonably request, including the following, as applicable:

    (a) the dates and hours labor was employed in performing the work;
    (b) the types and quantities of materials or supplies, or any other item furnished by Contractor and utilized in performing the work;
    (c) the dates and hours equipment, machinery, or other chargeable items were employed in performing the work; and
    (d) properly executed lien waivers and releases.

Unless otherwise set forth in a Work Order, Work Orders with lump sum or unit prices shall be subject to a retainage of 10% or as otherwise set forth in the Work Order. Retainage is due to Contractor in Contractor's final invoice after achieving Final Completion of the work.

3.3 Payment. Company agrees to pay Contractor's invoice for services performed and Goods purchased and delivered, and Goods rented within thirty (30) days after Company's receipt of Contractor's properly completed and documented invoice. Contractor agrees to post such payments to the invoices and items therein designated by Company. Invoices remaining unpaid thirty (30) days after being due and payable shall accrue late payment interest at the rate of 1.5% per month. In addition, Contractor shall be paid its reasonable and necessary costs of collection incurred, including reasonable and necessary attorneys' fees.

3.4 Invoice Disputes. If Company disputes any invoice, in whole or in part, Company shall endeavor to notify Contractor of the dispute within the time required for payment and shall timely pay any undisputed portion. The disputed invoice shall not be deemed correct because Company fails to give such notice by the payment date.

3.5 No Waiver by Payment. Company's payment of Contractor's invoices shall not prevent it from later filing claims against Contractor or waive its rights to recover money previously paid to Contractor in error.

3.6 Arranged Procurement by Contractor. Unless otherwise set forth in the Work Order, if Contractor purchases or rents any equipment, supplies, materials, or products from a supplier, vendor, or other company at Company's direction or if Contractor procures services from a supplier, vendor, or other company at Company's direction, Company agrees to pay Contractor the actual cost of such items and/or services, less any cash discounts or rebates, plus an appropriate fee, such as a administrative, handling or stocking fee, not to exceed fifteen percent. Contractor agrees to furnish Company copies of the supplier's, vendor's or other service provider's invoices covering such items and that the same were actually paid by Contractor. Contractor shall request suppliers, vendors, or other companies to invoice Company directly if Company so advises in writing. Unless Company so advises, the invoices shall be sent to Contractor. If Company cancels any such purchase, Contractor shall make reasonable efforts to obtain full credit for the equipment, supplies, materials, or products from the supplier; however, if Contractor is unable to obtain such full credit, Company may, at Company's sole option, (i) retain such equipment, supplies, materials, or products from the supplier and reimburse Contractor for the full cost incurred in the purchase of such items, or (ii) reimburse Contractor for the amount of costs incurred in the purchase of such items not credited to Contractor by the supplier, and, in addition and in the case of either clause (i) or (ii) above, pay Contractor's administrative fee. *With respect to rental items only*, Company shall reimburse Contractor any amounts that Contractor is required to pay the rental equipment supplier under any written rental agreement that Contractor has with such supplier.

3.7 Liens and Claims for Payment. This Section is limited to the claims for labor and materials furnished to Company through Contractor and related liens and privileges arising out of the failure of Contractor to pay the same. No lien, privilege, charge, or similar encumbrance shall become fixed upon Company's or its other contractors' equipment, lands, fixtures, improvements, or other property because Contractor failed to pay its employees, suppliers, vendors, material men, or subcontractors or because its subcontractors failed to pay their employees. After being notified of the existence of such claims, charges, liens, privileges, or encumbrances, and provided that Company is not in default of its payment obligations to Contractor, Contractor agrees to take all steps necessary to remove any such liens or privileges and to further release, protect, defend, indemnify and hold harmless Company from and against all such claims, charges, liens, privileges and encumbrances. Contractor shall pay all valid claims for its labor, materials, services, supplies, and products as they become due. If Contractor fails to remove or remedy any such liens or privileges,

Company shall proceed to remove or resolve such liens or privileges and shall charge the full cost thereof to Contractor. Company reserves the right to offset any amounts due to Company by Contractor under any Work Order against sums otherwise due Contractor under any other Work Order. Before Company pays any of Contractor's invoices, Contractor shall certify that there are no unsatisfied claims for labor, materials, equipment, supplies, or products. At Company's request, Contractor shall provide reasonable supporting documentation of payments made for claims that are valid and provide proof that such claims have been released. Contractor at its expense shall protect Company from invalid claims for payment of labor or materials arising through Contractor. The provisions of this Agreement concerning Contractor's obligation to prevent the imposition of liens on Company property does not prohibit Contractor from filing its own liens or privileges if Company fails to pay Contractor's valid charges as required by this Agreement or any Work Order.

3.8 Contractor's Taxes. Contractor shall pay all taxes, licenses, and fees levied or assessed on it by any governmental agency in connection with the performance of this Agreement or any Work Order, including unemployment compensation insurance, old age benefits, social security, or any other taxes upon the wages of Contractor, its agents, employees, and representatives. Contractor will make a good faith effort to include a similar tax, license, and fee provision in its subcontracts. Contractor shall reimburse Company on demand for all such taxes or governmental charges, State or Federal that Company may be required or deem it necessary to pay on account of employees of Contractor or its subcontractors. Contractor agrees to furnish Company with the information required to enable it to make the necessary reports and to pay such taxes or charges. At its election, Company is authorized to deduct all sums so paid on behalf of Contractor for such taxes and governmental charges from such amounts as may be or become due to Contractor. Notwithstanding the foregoing, any use, privilege, sales, personal property, fixture, ad valorem, or other federal, state, county or local tax of a like or similar nature incurred by Contractor (other than income tax), or which is assessed to Contractor as a result of operations or on the equipment of Contractor used under this agreement during this agreement, whether such assessment be made during or after the term of this agreement, shall be reimbursed by Company to Contractor, such sums shall be due and payable by Company to Contractor within ten (10) days after receipt by Company of an invoice with appropriate verification as to the amount of the invoice

3.9 **Company's Taxes.** Company shall pay all sales, use and similar taxes lawfully imposed upon Company. Such payment is in addition to (and is not included in) the quoted price of Contractor's Goods and/or services. This provision is applicable unless explicit arrangements are otherwise documented in writing.

3.10 **Right to Audit.** Contractor shall maintain a true and correct set of records pertaining to its performance of each Work Order, including but not limited to daily operations reports on a form approved by Company. If the Work is to be performed on a unit price or a time and materials basis, all of Contractor's employees shall maintain a true, correct and complete weekly/hourly record of their productive time. For each calendar week, conforming to Contractor's normal work week, this time record shall be fully completed (except for hourly rates and amounts) to show, at a minimum, the period covered, Contractor employee's name, the Project or Contract Number, Contractor's Project number, and the hours worked. Contractor shall maintain a true and correct set of all records pertaining to its performance of each Work Order for a period of not less than two (2) calendar years following the calendar year in which the final invoice for such Work Order was sent. This two (2) year period is not a limitation on Company's right to audit. Any representative or representatives authorized by Company may inspect and audit any and all records of Contractor pertaining to the Goods and services provided under this Agreement or any Work Order. Such inspection and audit shall be conducted at Contractor's offices during normal business hours after 24 hours notice. Company shall not have the right to examine or audit Contractor's trade secrets, proprietary information, confidential data, non-reimbursable costs, profit margins, or Projects performed on a "turnkey" basis when Contractor assumes all risks. Contractor shall promptly reimburse Company for any overpayments discovered in the audit and Contractor hereby waives any statute of limitations or laches concerning the same. Contractor agrees to include an identical audit provision in its subcontracts.

### ARTICLE 4: INDEMNITY

4.1 EACH INDEMNIFYING PARTY REPRESENTS TO THE INDEMNIFIED PARTY (1) THAT IT, THE INDEMNIFYING PARTY, HAS CONSULTED AN ATTORNEY CONCERNING THIS AGREEMENT OR, IF IT HAS NOT CONSULTED AN ATTORNEY, THAT IT WAS PROVIDED THE OPPORTUNITY AND HAD THE ABILITY TO SO CONSULT, BUT MADE AN INFORMED DECISION NOT TO DO SO, AND (2) THAT IT, THE INDEMNIFYING PARTY, FULLY UNDERSTANDS ITS OBLIGATIONS UNDER THIS AGREEMENT.

4.2 TO THE EXTENT PERMITTED BY LAW, COMPANY SHALL PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS CONTRACTOR GROUP FROM AND AGAINST ANY LOSSES, LIABILITIES, COSTS, EXPENSES, SUITS, ACTIONS, CLAIMS, AND ALL OTHER OBLIGATIONS AND PROCEEDINGS WHATSOEVER, INCLUDING ALL JUDGMENTS RENDERED AGAINST AND ALL FINES AND PENALTIES IMPOSED UPON CONTRACTOR OR ANY MEMBER OF CONTRACTOR GROUP, AND ANY REASONABLE ATTORNEYS' FEES, EXPERT FEES, AND OTHER COSTS OF DEFENSE WITHOUT LIMIT AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF OR THE NEGLIGENCE OF ANY PARTY OR PARTIES, ARISING IN CONNECTION HEREWITH IN FAVOR OF ANY MEMBER OF COMPANY GROUP, NOTWITHSTANDING COMPANY'S IMMUNITY TO SUCH CLAIMS BASED UPON STATUTORY IMMUNITY SUCH AS WORKER'S COMPENSATION LAWS, ON ACCOUNT OF BODILY INJURY, DEATH OR DAMAGE TO PROPERTY. COMPANY'S INDEMNITY SHALL BE WITHOUT REGARD TO AND WITHOUT ANY RIGHT TO CONTRIBUTION FROM ANY INSURANCE MAINTAINED BY CONTRACTOR.

IT IS THE EXPRESS INTENTION OF THE PARTIES THAT THE INDEMNITY PROVIDED FOR IN THIS SECTION 4.2 IS AN INDEMNITY BY COMPANY TO INDEMNIFY AND PROTECT CONTRACTOR GROUP FROM THE CONSEQUENCES OF CONTRACTOR GROUP'S OWN NEGLIGENCE, FAULT, OR STRICT LIABILITY, WHETHER THAT NEGLIGENCE, FAULT OR STRICT LIABILITY IS THE SOLE, JOINT OR CONCURRING CAUSE OF THE PROPERTY DAMAGE, INJURY OR DEATH.

4.3 TO THE EXTENT PERMITTED BY LAW, CONTRACTOR SHALL PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS COMPANY GROUP, FROM AND AGAINST ANY LOSSES, LIABILITIES, COSTS, EXPENSES, SUITS, ACTIONS, CLAIMS, AND ALL OTHER OBLIGATIONS AND PROCEEDINGS WHATSOEVER, INCLUDING ALL JUDGMENTS RENDERED AGAINST AND ALL FINES AND PENALTIES IMPOSED UPON COMPANY OR ANY MEMBER OF COMPANY GROUP, AND ANY REASONABLE ATTORNEYS' FEES, EXPERT FEES, AND OTHER COSTS OF DEFENSE WITHOUT LIMIT AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF OR THE NEGLIGENCE OF ANY PARTY OR PARTIES, ARISING IN CONNECTION HEREWITH IN FAVOR OF ANY MEMBER OF CONTRACTOR GROUP (INCLUDING STATUTORY EMPLOYEES OR LEASED EMPLOYEES), NOTWITHSTANDING CONTRACTOR'S IMMUNITY TO SUCH CLAIMS BASED UPON STATUTORY IMMUNITY SUCH AS WORKER'S COMPENSATION LAWS, OR CONTRACTOR'S SUBCONTRACTORS OR THEIR EMPLOYEES, OR CONTRACTOR'S INVITEES, ON ACCOUNT OF BODILY INJURY, DEATH OR DAMAGE TO PROPERTY. CONTRACTOR'S INDEMNITY SHALL BE WITHOUT REGARD TO AND WITHOUT ANY RIGHT TO CONTRIBUTION FROM ANY INSURANCE MAINTAINED BY COMPANY.

IT IS THE EXPRESS INTENTION OF THE PARTIES THAT THE INDEMNITY PROVIDED FOR IN THIS SECTION 4.3 IS AN INDEMNITY BY CONTRACTOR TO INDEMNIFY AND PROTECT COMPANY GROUP FROM THE CONSEQUENCES OF COMPANY GROUP'S OWN NEGLIGENCE, FAULT, OR STRICT LIABILITY, WHETHER THAT NEGLIGENCE, FAULT OR STRICT LIABILITY IS THE SOLE, JOINT OR CONCURRING CAUSE OF THE PROPERTY DAMAGE, INJURY OR DEATH.

4.4 Reserved.

4.5 TO THE EXTENT PERMITTED BY LAW, AND EXCEPT AS OTHERWISE HEREIN PROVIDED, COMPANY SHALL PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS CONTRACTOR GROUP FROM AND AGAINST ANY LOSSES, LIABILITIES, COSTS, EXPENSES, SUITS, ACTIONS, CLAIMS, AND ALL OTHER OBLIGATIONS AND PROCEEDINGS WHATSOEVER, INCLUDING, WITHOUT LIMITATION, ALL JUDGMENTS RENDERED AGAINST AND ALL FINES AND PENALTIES IMPOSED UPON CONTRACTOR GROUP, AND ANY REASONABLE ATTORNEYS' FEES AND OTHER COSTS OF DEFENSE ARISING OUT OF INJURIES TO THIRD PARTIES, INCLUDING DEATH, OR DAMAGE TO PROPERTY OF THIRD PARTIES, TO THE EXTENT CAUSED BY, OR OCCURRING IN CONNECTION WITH, ANY WILLFUL MISCONDUCT OR NEGLIGENT ACT OR OMISSION OF COMPANY, ITS EMPLOYEES, AGENTS OR CONTRACTORS.

4.6 TO THE EXTENT PERMITTED BY LAW, AND EXCEPT AS OTHERWISE HEREIN PROVIDED, CONTRACTOR SHALL PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS COMPANY GROUP FROM AND AGAINST ANY LOSSES, LIABILITIES, COSTS, EXPENSES, SUITS, ACTIONS, CLAIMS, AND ALL OTHER OBLIGATIONS AND PROCEEDINGS WHATSOEVER, INCLUDING, WITHOUT LIMITATION, ALL JUDGMENTS RENDERED AGAINST AND ALL FINES AND PENALTIES IMPOSED UPON COMPANY GROUP, AND ANY REASONABLE ATTORNEYS' FEES AND OTHER COSTS OF DEFENSE ARISING OUT OF INJURIES TO THIRD PARTIES, INCLUDING DEATH, OR DAMAGE TO PROPERTY OF THIRD PARTIES, TO THE EXTENT CAUSED BY, OR OCCURRING IN CONNECTION WITH, ANY WILLFUL MISCONDUCT OR NEGLIGENT ACT OR OMISSION OF CONTRACTOR, ITS EMPLOYEES, AGENTS OR SUBCONTRACTORS.

4.7 EXCEPT FOR THIRD PARTY CLAIMS FOR WHICH AN INDEMNITY IS PROVIDED IN SECTIONS 4.5 AND 4.6 ABOVE, IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY INDIRECT OR CONSEQUENTIAL DAMAGES RESULTING FROM OR ARISING OUT OF THIS AGREEMENT, INCLUDING, WITHOUT LIMITATION, LOSS OF ANTICIPATED PROFITS FOR WORK NOT PERFORMED, BUSINESS INTERRUPTIONS, LOSS RESULTING FROM THE ALLOCATION OF EQUIPMENT, FACILITIES OR PERSONNEL, OR ANY OTHER INCIDENTAL, OR CONSEQUENTIAL DAMAGES.

4.8 Reserved.

4.9 IF SECTION 4.2 IS DEEMED UNENFORCEABLE BY A COURT OF COMPETENT JURISDICTION AND VENUE, THEN TO THE FULLEST EXTENT OF LAW, EACH PARTY (AS "INDEMNIFYING PARTY") SHALL PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS THE OTHER PARTY (AND ITS GROUP) (COLLECTIVELY, "INDEMNIFIED PARTY") FROM AND AGAINST ANY LOSSES, LIABILITIES, COSTS, EXPENSES, SUITS, ACTIONS, CLAIMS, AND ALL OTHER OBLIGATIONS AND PROCEEDINGS WHATSOEVER, INCLUDING, WITHOUT LIMITATION, ALL JUDGMENTS RENDERED AGAINST AND ALL FINES AND PENALTIES IMPOSED UPON THE INDEMNIFIED PARTY, AND ANY REASONABLE ATTORNEYS' FEES AND OTHER COSTS OF DEFENSE ARISING OUT OF INJURIES TO COMPANY'S EMPLOYEES (INCLUDING STATUTORY EMPLOYEES OR LEASED EMPLOYEES), NOTWITHSTANDING COMPANY'S IMMUNITY TO SUCH CLAIMS BASED UPON STATUTORY IMMUNITY SUCH AS WORKER'S COMPENSATION LAWS, OR COMPANY'S CONTRACTORS, SUBCONTRACTORS, OR THEIR EMPLOYEES, INCLUDING DEATH, TO THE EXTENT CAUSED BY, OR OCCURRING IN CONNECTION WITH, ANY WILLFUL MISCONDUCT OR NEGLIGENT ACT OR OMISSION OF THE INDEMNIFYING PARTY, ITS EMPLOYEES, AGENTS OR CONTRACTORS, OR THEIR EMPLOYEES.

IT IS THE EXPRESS INTENTION OF THE PARTIES THAT THIS FAULT-BASED INDEMNITY CONTAINED IN SECTION 4.9 SHALL APPLY IF AND ONLY IF THE NON-FAULT BASED INDEMNITY CONTAINED IN SECTION 4.2 AND SUPPORTING INSURANCE ARE DEEMED UNENFORCEABLE OR UNAVAILABLE BY A COURT OF COMPETENT JURISDICTION AND VENUE. Nothing in this Section 4.9 or elsewhere in this Agreement shall be construed as intent to choose the law of any State other than the State in which the Work giving rise to the Indemnity obligation is performed, without regard to the choice of law rules of that State, to govern the validity of the indemnity and supporting insurance provisions of this Agreement.

4.10 IF SECTION 4.3 IS DEEMED UNENFORCEABLE BY A COURT OF COMPETENT JURISDICTION AND VENUE, THEN TO THE FULLEST EXTENT OF LAW, EACH PARTY (AS "INDEMNIFYING PARTY") SHALL PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS THE OTHER PARTY (AND ITS GROUP) (COLLECTIVELY, "INDEMNIFIED PARTY") FROM AND AGAINST ANY LOSSES, LIABILITIES, COSTS, EXPENSES, SUITS, ACTIONS, CLAIMS, AND ALL OTHER OBLIGATIONS AND PROCEEDINGS WHATSOEVER, INCLUDING, WITHOUT LIMITATION, ALL JUDGMENTS RENDERED AGAINST AND ALL FINES AND PENALTIES IMPOSED UPON THE INDEMNIFIED PARTY, AND ANY REASONABLE ATTORNEYS' FEES AND OTHER COSTS OF DEFENSE ARISING OUT OF INJURIES TO CONTRACTOR'S EMPLOYEES (INCLUDING STATUTORY EMPLOYEES OR LEASED EMPLOYEES), NOTWITHSTANDING CONTRACTOR'S IMMUNITY TO SUCH CLAIMS BASED UPON STATUTORY IMMUNITY SUCH AS WORKER'S COMPENSATION LAWS, OR CONTRACTOR'S SUBCONTRACTORS OR THEIR EMPLOYEES, INCLUDING DEATH, TO THE EXTENT CAUSED BY, OR OCCURRING IN CONNECTION WITH, ANY WILLFUL MISCONDUCT OR NEGLIGENT ACT OR OMISSION OF THE INDEMNIFYING PARTY, ITS EMPLOYEES, AGENTS OR CONTRACTORS, OR THEIR EMPLOYEES.

IT IS THE EXPRESS INTENTION OF THE PARTIES THAT THIS FAULT-BASED INDEMNITY CONTAINED IN SECTION 4.10 SHALL APPLY IF AND ONLY IF THE NON-FAULT BASED INDEMNITY CONTAINED IN SECTION 4.3 AND SUPPORTING INSURANCE ARE DEEMED UNENFORCEABLE OR UNAVAILABLE BY A COURT OF COMPETENT JURISDICTION AND VENUE. Nothing in this Section 4.10 or elsewhere in this Agreement shall be construed as intent to choose the law of any State other than the State in which the Work giving rise to the indemnity obligation is performed, without regard to the choice of law rules of that State, to govern the validity of the indemnity and supporting insurance provisions of this Agreement.

4.12 EMPLOYMENT RELATED CLAIMS. CONTRACTOR SHALL RELEASE, PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS COMPANY GROUP FROM ANY CLAIM OR LOSS FOR EMPLOYMENT DISCRIMINATION, MEDICAL, COMPENSATION, OR OTHER BENEFITS (INCLUDING WORKER'S COMPENSATION BENEFITS) OWED TO EMPLOYEES OF CONTRACTOR OR ITS SUBCONTRACTORS, SUPPLIERS OR AFFILIATES AS A RESULT OF THE DIRECT EMPLOYMENT RELATIONSHIP OF SUCH INDIVIDUALS WITH CONTRACTOR OR ITS SUBCONTRACTORS, SUPPLIERS OR AFFILIATES EVEN IF SUCH INDIVIDUALS ARE DETERMINED TO BE THE BORROWED OR STATUTORY EMPLOYEES OF COMPANY OR ITS AFFILIATES.

4.13 POLLUTION AND CONTAMINATION: NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN EXCEPT AS PROVIDED IN SECTIONS 4.2 AND 4.3, IT IS UNDERSTOOD AND AGREED BY AND BETWEEN CONTRACTOR AND COMPANY THAT THE RESPONSIBILITY FOR POLLUTION AND CONTAMINATION SHALL BE AS FOLLOWS:

(A) CONTRACTOR SHALL ASSUME ALL RESPONSIBILITY FOR, INCLUDING CONTROL AND REMOVAL OF, AND PROTECT, DEFEND, INDEMNIFY AND SAVE COMPANY GROUP HARMLESS FROM AND AGAINST ALL LOSSES, LIABILITIES, COSTS, EXPENSES, SUITS, ACTIONS, CLAIMS AND ALL OTHER OBLIGATIONS AND PROCEEDINGS WHATSOEVER, INCLUDING ALL JUDGMENTS RENDERED AGAINST AND ALL FINES AND PENALTIES IMPOSED UPON COMPANY GROUP, AND ANY REASONABLE ATTORNEYS' FEES, EXPERT FEES, AND OTHER COSTS OF DEFENSE WITHOUT LIMIT, ARISING FROM POLLUTION OR CONTAMINATION (INCLUDING NATURALLY OCCURRING RADIOACTIVE MATERIAL) WHICH ORIGINATES ABOVE THE SURFACE OF THE LAND OR WATER FROM SPILLS OF FUELS, LUBRICANTS, MOTOR OILS, PIPE DOPE, PAINTS, SOLVENTS, BALLAST, BILGE AND GARBAGE, EXCEPT UNAVOIDABLE POLLUTION FROM RESERVE PITS, IN CONTRACTOR'S SOLE POSSESSION AND CONTROL AND SOLELY ASSOCIATED WITH CONTRACTOR'S EQUIPMENT AND FACILITIES.

(B) COMPANY SHALL ASSUME ALL RESPONSIBILITY FOR, INCLUDING CONTROL AND REMOVAL OF, AND PROTECT, DEFEND, INDEMNIFY AND SAVE CONTRACTOR GROUP HARMLESS FROM AND AGAINST ALL LOSSES, LIABILITIES, COSTS, EXPENSES, SUITS, ACTIONS, CLAIMS AND ALL OTHER OBLIGATIONS AND PROCEEDINGS WHATSOEVER, INCLUDING ALL JUDGMENTS RENDERED AGAINST AND ALL FINES AND PENALTIES IMPOSED UPON CONTRACTOR GROUP, AND ANY REASONABLE ATTORNEYS' FEES, EXPERT FEES, AND OTHER COSTS OF DEFENSE WITHOUT LIMIT, FROM ALL POLLUTION OTHER THAN THAT DESIGNATED IN PARAGRAPH 4.13 (A), INCLUDING FROM POLLUTION OR CONTAMINATION WHICH RESULTS FROM FIRE, BLOWOUT, OR ANY OTHER UNCONTROLLED FLOW OF OIL, GAS, OR WATER OUT OF THE WELLBORE.

(c) IN THE EVENT A THIRD PARTY, COMMITTING AN ACT OR OMISSION WHICH RESULTS IN POLLUTION OR CONTAMINATION FOR WHICH EITHER CONTRACTOR GROUP OR COMPANY GROUP (FOR WHOM SUCH THIRD PARTY IS PERFORMING WORK) IS HELD TO BE LEGALLY LIABLE, THEN, AS BETWEEN CONTRACTOR GROUP AND COMPANY GROUP, RESPONSIBILITY THEREFORE SHALL BE CONSIDERED, TO BE THE SAME AS IF THE PARTY FOR WHOM THE WORK WAS PERFORMED HAD PERFORMED THE SAME AND ALL OBLIGATIONS OF DEFENSE, INDEMNITY, HOLDING HARMLESS AND LIMITATION OF RESPONSIBILITY AND LIABILITY, AS SET FORTH IN PARAGRAPHS (A) AND (B) ABOVE, SHALL SPECIFICALLY APPLY.

4.14 Contractor Responsibility for Hazardous Waste. Contractor shall, at its sole expense and risk, transport and dispose of (except as otherwise mutually agreed) any hazardous waste or materials supplied by any member(s) of Contractor Group and used by any member(s) of Contractor Group in the performance of this Agreement or any Work Order.

4.15 UNDERGROUND DAMAGE. COMPANY SHALL RELEASE CONTRACTOR OF ANY LIABILITY FOR, AND SHALL DEFEND AND INDEMNIFY CONTRACTOR AGAINST ANY AND ALL CLAIMS, LIABILITY AND EXPENSE RESULTING FROM, OPERATIONS UNDER THIS AGREEMENT ON ACCOUNT OF INJURY TO, DESTRUCTION OF, OR LOSS OR IMPAIRMENT OF ANY PROPERTY RIGHT IN OR TO OIL, GAS, OR OTHER MINERALS SUBSTANCE OR WATER, IF AT THE TIME OF THE ACT OR OMISSION CAUSING SUCH INJURY, DESTRUCTION, LOSS OR IMPAIRMENT, SAID SUBSTANCE HAD NOT BEEN REDUCED TO PHYSICAL POSSESSION ABOVE THE SURFACE OF THE EARTH, AND FOR ANY LOSS OR DAMAGE TO ANY FORMATION, STRATA OR RESERVOIR BENEATH THE SURFACE OF THE EARTH.

4.16 LIABILITY FOR WILD WELL. COMPANY SHALL BE LIABLE FOR THE COST OF REGAINING CONTROL OF ANY WILD WELL AND FOR THE COST OF REMOVAL OF ANY DEBRIS. COMPANY SHALL RELEASE CONTRACTOR FROM, AND SHALL INDEMNIFY CONTRACTOR AGAINST, ANY LIABILITY FOR SUCH COST.

4.17 THE HOLE: IN THE EVENT THE HOLE SHOULD BE LOST OR DAMAGED, COMPANY SHALL BE SOLELY RESPONSIBLE FOR SUCH DAMAGE TO OR LOSS OF THE HOLE, INCLUDING THE CASING THEREIN. COMPANY SHALL RELEASE CONTRACTOR GROUP OF ANY LIABILITY FOR DAMAGE TO OR LOSS OF THE HOLE, AND SHALL PROTECT, DEFEND AND INDEMNIFY CONTRACTOR GROUP FROM AND AGAINST ANY AND ALL CLAIMS, LIABILITY, AND EXPENSE RELATING TO SUCH DAMAGE TO OR LOSS OF THE HOLE.

4.18 INDEMNITY OBLIGATION: EXCEPT AS OTHERWISE EXPRESSLY LIMITED IN THIS AGREEMENT, IT IS THE INTENT OF PARTIES HERETO THAT ALL RELEASES, INDEMNITY OBLIGATIONS AND/OR LIABILITIES ASSUMED BY SUCH PARTIES UNDER TERMS OF THIS AGREEMENT SHALL APPLY TO ALL CLAIMS, DEMANDS, CAUSES OF ACTION, DAMAGES, FINES, PENALTIES, JUDGMENTS AND AWARDS OF ANY KIND OR CHARACTER ARISING IN CONNECTION HEREWITH, AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF, INCLUDING BUT NOT LIMITED TO PRE-EXISTING CONDITIONS, DEFECT OR RUIN OF PREMISES OR EQUIPMENT, STRICT LIABILITY, REGULATORY OR STATUTORY LIABILITY, PRODUCTS LIABILITY, BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED), BREACH OF DUTY (WHETHER STATUTORY, CONTRACTUAL OR OTHERWISE), ANY THEORY

OF TORT, BREACH OF CONTRACT, FAULT, THE NEGLIGENCE OF ANY DEGREE OR CHARACTER (REGARDLESS OF WHETHER SUCH NEGLIGENCE IS SOLE, JOINT OR CONCURRENT, ACTIVE, PASSIVE OR GROSS) OF ANY PARTY OR PARTIES, INCLUDING THE PARTY SEEKING THE BENEFIT OF THE RELEASE, INDEMNITY OR ASSUMPTION OF LIABILITY, OR ANY OTHER THEORY OF LEGAL LIABILITY. EXCEPT AS EXPRESSLY PROVIDED HEREIN, ALL RELEASES, INDEMNITY OBLIGATIONS, AND ASSUMPTIONS OF LIABILITY SHALL INCLUDE THE DUTY TO DEFEND (INCLUDING PAYMENT OF REASONABLE ATTORNEYS' FEES AND COSTS OF LITIGATION).

4.19 Notice. If a claim is asserted against one of the parties to this Agreement which may give rise to a claim for indemnity against the other party hereto, the party against whom the claim is first asserted must notify the potential indemnitor in writing and give the potential indemnitor the right to defend or assist in the defense of the claim.

4.20 Defense and Participation. Contractor agrees to defend Company Group against all suits or other actions brought upon any and all Claims/Losses covered by Contractor's indemnity obligations under this Agreement, but any member of Company Group shall have the right, at its or their option, to participate at its or their own expense in the defense of any such suits or other actions without releasing Contractor from any indemnity obligation hereunder. Company agrees to defend Contractor Group against all suits or other actions brought upon any and all Claims covered by Company's indemnity obligations under this Agreement, but any member of Contractor Group shall have the right, at its or their option, to participate at its or their own expense in the defense of any such suits or other actions without releasing Company from any indemnity obligation hereunder.

4.21 CONFLICTING PROVISIONS. In the event of a conflict between the terms and provisions of this Article 4 and other terms, provisions, covenants, representations or warranties, the terms and provisions of this Article 4 shall control.

## ARTICLE 5: INSURANCE

5.1 Required Insurance Program. This Agreement sets forth the required basic insurance program for each Party. Other insurance limits or coverages may be specified in a Work Order. This required insurance program supports the Indemnifying Party's indemnity obligations and other potential liabilities, and shall apply whether or not the indemnification is valid. Throughout this Agreement's term, this required insurance program shall be:

(a) maintained by each respective Party;
(b) at the respective Party's own expense unless otherwise provided herein or in the Work Order;
(c) with reliable insurance company(ies) rated "A -VII" or better in the Best Guide for Key Ratings and authorized to do business in the jurisdiction where the work is to be performed.

5.2 Primary and Excess. The required insurance program's amounts may be satisfied by any combination of primary or excess insurance.

5.3 Qualified Self-Insurance. If the Parties agree in writing, each Party may use a qualified self-insurance program for Workers' Compensation and Automobile Liability. A Qualified Self-Insurance program is one approved by the appropriate governmental body as having sufficient reserves to pay anticipated claims.

5.4 Non-Qualified Self-Insurance. If the Parties agree in writing, either Party may self-insure all or part of the required insurance program. A Non-Qualified Self-Insurance program is one in which a Party relies on the general creditworthiness of the self-insuring Party. The Parties may, but are not required to, agree to additional credit items, such as parent company guarantees, letters of credit, or bonds.

5.5 Deductibles and Self-Insured Retention. Each Party shall be responsible for its own deductibles and self-insured retention, if applicable.

5.6 Claims Made. If either Party uses a "Claims Made" policy, it must purchase a three-year discovery period.

### A. REQUIRED INSURANCE

5.7 Workers' Compensation and Employers' Liability Insurance. The required insurance program includes:

1. Workers' Compensation Insurance, including occupational disease and, when applicable, coverage for Maritime, United States Longshoremen and Harbor Workers' Compensation Act, Outer Continental Shelf Act, Jones Act, Death on the High Seas Act and In Rem, Maritime Employer's Liability including wages, maintenance and transportation, and coverage for Master and Crews, with statutory limits in accordance with all applicable state and federal laws, including Company under the Alternate Employer/Borrowed Servant Endorsement. If the Work is performed in Texas or under Texas law and Contractor does not purchase Texas Workers' Compensation Coverage ("TWCC"), Contractor agrees to sign the current TWCC form establishing an Independent Contractor relationship under the Texas Workers' Compensation Act.

2. Employers' Liability Insurance of at least $1,000,000 per accident/occurrence in accordance with all applicable federal and state laws, including the Alternate Employer/Borrowed Servant Endorsement.

The insurance required under this part shall cover employees, partners, members, managers, owners, officers, and directors.

5.8 Commercial General Liability Insurance. The required insurance program includes Commercial General Liability Insurance with coverage of at least $1,000,000 per occurrence and $2,000,000 in the aggregate per Work Site and/or per Project for Bodily Injury and Property Damage, specifically including:

1. Contractual Liability for their respective obligations under this Agreement.
2. Products Liability.
3. Completed Operations.
4. "In Rem" endorsement (if applicable)
5. Sudden and Accidental Pollution coverage.
6. Premises Operations.
7. Independent Contractors.
8. Personal and Advertising Injury.
9. Explosion, Collapse and Underground.
10. No exclusion for "action over" claims.

5.9 Automobile Liability Insurance. The required insurance program includes Automobile Liability Insurance with $1,000,000 combined single limit for Bodily Injury and Property Damage, covering Owned, Hired, and Non-Owned Vehicles.

5.10 Excess Liability Insurance. The required insurance program includes Excess Liability Insurance over the insurance required in Article 5 of this Agreement. The Excess Liability Insurance shall have limits of at least $5,000,000, and provide coverage that follows the same coverage forms as specifically stated in the required primary policies outlined above in Section 5.8.

5.11 Physical Damage Insurance.

A. Contractor may insure or self-insure Physical Damage to property owned by Contractor provided; however, the same shall not negate any responsibility of Company for any physical damage to Contractor's property under the terms of this Agreement.

B. In the event operations covered by this Agreement require Contractor to transport, lift, install or construct property of Company, Contractor shall provide Cargo, Lift Risk, Installation, Construction Risk or other insurance satisfactory to Company, or as otherwise agreed by Company.

5.12 [Deleted]

5.13 [Deleted]

### B. REQUIRED INSURANCE PROVISIONS

5.14 Waiver of the Right of Subrogation.

A. Each Party shall obtain from its insurers a waiver of the right of subrogation on all of the policies required by this Agreement in favor of each member of their respective Group to the extent and only to the extent of the obligations, liabilities, and other duties assumed by each respective Party under this Agreement.

B. Contractor agrees to waive subrogation against Company Group (or to obtain such waiver from its insurance carrier if required by the carrier to do so) for any loss to Contractor's tools, equipment, machinery and appliances, including in-hole tools and equipment, and any watercraft and aircraft. Contractor agrees to first make claim to his insurance carrier in all instances, including but not limited to, events identified in paragraphs relating to in-hole equipment and environmental damage.

5.15 Additional Insured. Except for Workers' Compensation and Employers' Liability, each Party shall obtain agreement from its insurers to name each member of the other's Group as an additional insured under their insurance policies to the extent and only to the extent of the obligations, liabilities, and other duties assumed by such Party under this Agreement.

5.16 Separation or Severability of Interest. For all insurance policies where an additional insured has been named, such insurance policies shall also contain a separation or severability of interest clause (sometimes called cross liability coverage) so that each insured shall be treated separately under the policy. Although responsible for additional insured

9

Persons under this provision, this provision shall not cause any change of the insured risks or any change in the amount of insurance provided.

5.17 Primary Coverage. As applicable, each Party's insurance shall be deemed primary and without contribution from the other Group's insurance.

5.18 Reserved.

5.19 Insurance Certificates. Each Party agrees that prior to commencing any work under this Agreement, thirty (30) days prior to the expiration of any required coverages, and, additionally, upon the other Party's request at any time, it shall have its insurance carrier(s) furnish the requesting Party with a certificate(s) of insurance showing the types of coverage required by this Agreement and stating that the insurance company shall not cancel, non-renew, or materially change any coverage without first providing thirty (30) days notice to the other Party. Acceptance of an insurance certificate shall not constitute a waiver of any kind of any requirement. Each Party shall have the right to request and review a certified copy of any or all of the other Party's insurance policies.

5.20 Obligations Remain. Failure by a Party to obtain insurance coverage or obtain the required insurance terms and conditions shall not relieve that Party from its obligations under this Agreement.

5.21 SUBCONTRACTOR'S INSURANCE REQUIREMENT. EACH PARTY SHALL REQUIRE ALL ITS CONTRACTORS AND SUBCONTRACTORS TO PROVIDE EVIDENCE OF THE INSURANCE COVERAGE IDENTICAL TO THAT REQUIRED BY THIS ARTICLE 5, AS WELL AS ANY OTHER COVERAGES THE OTHER PARTY DEEMS NECESSARY FOR THE WORK PERFORMED. SUCH POLICIES SHALL MEET THE WAIVER OF SUBROGATION REQUIREMENTS STATED HEREIN. HOWEVER, EACH PARTY'S COMPLIANCE WITH THIS SECTION 5.21 SHALL NOT RELIEVE THAT PARTY'S OF ITS OBLIGATIONS TO MEET THE INSURANCE REQUIREMENTS OF THIS ARTICLE 5. TO THE EXTENT THAT SAID PARTY DOES NOT REQUIRE OR SAID PARTY'S SUBCONTRACTOR DOES NOT OBTAIN SUCH COVERAGE, SAID PARTY AGREES TO INDEMNIFY AND SAVE THE OTHER PARTY'S GROUP HARMLESS FROM ALL CLAIMS, DEMANDS, LOSSES, EXPENSES AND JUDGMENTS TO WHICH SAID COVERAGES WOULD HAVE APPLIED.

5.22 WARRANTY AND INDEMNIFICATION. EACH PARTY DOES HEREBY WARRANT THAT IT WILL COMPLY WITH THE INSURANCE REQUIREMENTS OF THIS ARTICLE 5 AND DOES HEREBY AGREE TO PROTECT AND INDEMNIFY THE OTHER PARTY'S GROUP FROM ANY LOSS SAID GROUP MAY SUFFER DUE TO OBLIGATED PARTY'S FAILURE TO COMPLY WITH ANY REQUIREMENT OF THIS ARTICLE 5, INCLUDING THE OBTAINING OF WAIVERS OF SUBROGATION, OR DUE TO ANY INSURANCE COVERAGE BEING INVALIDATED DUE TO THE OBLIGATED PARTY'S FAILURE TO COMPLY WITH THE TERMS, CONDITIONS AND WARRANTIES OF THE INSURANCE.

### C. STATE-SPECIFIC INSURANCE PROVISIONS

5.23 Louisiana. Notwithstanding anything herein to the contrary, to the extent that particular Work performed hereunder is performed in the State of Louisiana, Contractor agrees that all of Contractor's insurance policies (with the exception of Workers' Compensation and Employers' Liability) shall, to the extent that Contractor has expressly assumed the risks allocated to it under this Agreement, name each member of Company Group as additional insureds, provide a waiver of subrogation in favor of Company Group, and be primary as respects any other coverage in favor of Company Group, with applicable premiums being paid by Company upon billing by Contractor as set out in the following. Where this Section 5.23 is applicable, Contractor shall bill Company for all premiums incurred in obtaining additional insured coverage, waivers of subrogation, and primary endorsements as described above for Company Group. Such invoices shall be forwarded to Company for payment in accordance with the provisions of this Agreement, provided that Contractor has demonstrated to Company's satisfaction that such insurance has been obtained. Both Parties agree that Company is paying for all material parts of the insurance protection for Company Group. Contractor shall separately invoice Company and Company shall separate pay from any other of Contractor's invoices the cost of such insurance coverage.

The Parties' choice of law remains governed by Section 6.3. Nothing in this Section 5.23 shall be construed as intent to choose the law of any State other than the State in which the Work giving rise to the indemnity obligation is performed, without regard to the choice of law rules of that State, to govern the validity of the indemnity and supporting insurance provisions of this Agreement.

5.24 Texas. This Section 5.24 applies only to instances in which the particular work performed hereunder is performed in the State of Texas, or to the extent that a court of competent jurisdiction and venue determines that the indemnity and supporting insurance provisions of this Agreement are governed by Texas law. Where this Section 5.24 is applicable, the Parties expressly agree that in order to comply with the Texas Oilfield Anti-Indemnity Act, the Parties shall each obtain the required insurance of this Article 5 in the types and minimum amounts specified for the benefit of the other Party as Indemnitee. The Parties further agree that the maximum amount of such supporting insurance shall be the lower of the maximum amount carried by either Party as long as such amount is in excess of the minimum amount specified in this Article 5. Where this Section 5.24 is applicable, Company will obtain from its insurers a waiver of the right of subrogation on all of the policies supporting its indemnity obligation in favor of each member of Contractor Group to the extent and only to the extent of the obligations, liabilities, and other duties assumed by Company under this Agreement. In such circumstances, Company will also obtain agreement from its insurers to name each member of Contractor Group as an additional insured under Company's policies supporting its indemnity obligation to the extent and only to the extent of the obligations, liabilities, and other duties assumed by Company under this Agreement. The Parties further agree that if Contractor does not carry insurance in the minimum amounts specified in this Article 5, Contractor has approved self-insurance as stated in the Texas Oilfield Anti-Indemnity Act and the mutual indemnification amount shall be the maximum amount carried by Company.

The Parties' choice of law remains governed by Section 6.3. Nothing in this Section 5.23 shall be construed as intent to choose the law of any State other than the State in which the Work giving rise to the indemnity obligation is performed, without regard to the choice of law rules of that State, to govern the validity of the indemnity and supporting insurance provisions of this Agreement.

### ARTICLE 6: LEGAL ADMINISTRATION

6.1 Laws in General. Each Party shall comply with all federal, state, county (parish), and municipal laws, ordinances, statutes, codes, rules, and regulations that (a) are in effect and (b) apply to its services, products, materials, equipment, or employees to be used in performing such Work Order.

6.2 Compliance with Environmental Laws. Each Party shall give all notices and otherwise fully comply with all laws, statutes, regulations, ordinances, rules, standards, orders, rulings, decrees, or determinations of any local, state, or federal governmental authority (including related determinations, interpretations, orders, judgments or opinions by any judicial or administrative authority) which has jurisdiction over Contractor, the work, or the Work Site pertaining to protection or conservation of the air, land, water, human health, industrial hygiene, or other aspects of the environment, including the following statutes, as supplemented and amended: the Clean Air Act, the Comprehensive Environmental Response, Compensation and Liability Act, the Federal Water Pollution Control Act, the Solid Waste Disposal Act, the Resources Conservation and Recovery Act, the Safe Drinking Water Act, the Toxic Substances Control Act, the Hazardous Materials Transportation Act, the Federal Oil Pollution Act of 1990 and comparable state and local statutes and implementing rules or regulations.

6.3 Governing Law. This Agreement may govern services, products, materials, supplies, and equipment supplied by Contractor to Company in several different jurisdictions. Subject to the limitations of this Section 6.3, the law of the State of wherein the Work is performed will govern the validity of this Agreement and any Work Orders, the interpretation and performance, and remedies for contract breach or any other claims related to this Agreement or Work Order, without regard to the choice of law rules of the State wherein the Work is performed. Notwithstanding the foregoing or anything herein to the contrary, the validity of the indemnity and supporting insurance provisions of this Agreement shall be governed by the law of the State in which the Work giving rise to the indemnity obligation is performed, without regard to the choice of law rules of that State.

6.4 Forum Selection. Deleted

6.5 Mediation. As a condition precedent to litigation, any dispute arising out of or relating to this Agreement and/or any Work Order or the breach, termination, or validity thereof shall first be submitted to commercial mediation.

6.6 Provisions Deemed Amended. If any provision of this Agreement is deemed by a court of competent jurisdiction in a controversy arising under this Agreement to be unenforceable, then that provision shall be deemed amended to the minimum extent required to comply with state law.

6.7 Severability of Provisions. If any part of this Agreement is deemed by a court of competent jurisdiction in a controversy arising under this Agreement to be unenforceable, and the court finds that the provision may not be deemed amended in accordance with Section 6.6, then to the extent and only to the extent that the provision is unenforceable, such provision shall be severed from this Agreement and deemed non-binding while all other parts of this Agreement shall remain binding.

6.8 Plural/Singular. Reference to the singular includes a reference to the plural and vice versa. Reference to one gender includes a reference to the other gender.

6.9 Binding Authority. Each of the individuals executing this Agreement represents that he or she has full right and authority to execute this instrument on behalf of Company or Contractor, as the case may be, and to bind such Party.

6.10 Authority Required. The Person executing this Agreement, any Work Order, or any amendment, waiver, or other action with legal effect related to this Agreement or any Work Order, must have a title that includes one or more of the following or similar terms: "Agent,"

"Representative," "Attorney-in-fact," "Manager," "Director," "President," "Vice President," or any similar title evidencing supervisory responsibility. If such a Person executes this Agreement on behalf of a Party, the other Party is not required to obtain a power of attorney, delegation of authority, or corporate resolution evidencing such authority.

6.11 **Duplicate Originals.** This Agreement may be executed in duplicate originals, and each such instrument shall be deemed an original of this Agreement for all purposes.

6.12 **Survival.** Notwithstanding any provisions herein to the contrary, as part of the consideration for this Agreement, the Parties hereby acknowledge and agree that all release, indemnity, defense, and waiver of subrogation provisions contained in this Agreement shall specifically survive the expiration or termination of this Agreement.

[Remainder of page intentionally left blank; signature page to follow]

This Master Service Agreement is hereby executed as of the Effective Date.

| CONTRACTOR | COMPANY |
|---|---|
| By: *(signature)* | By: *(signature)* |
| Name: DONALD E. WILSON | Name: Steven Hatcher |
| Title: VICE-PRESIDENT/OPERATIONS MGR. | Title: Vice-President, Land & Legal |
| Date: 11/19/2018 | Date: 11/19/18 |
| Tax I.D. No: 64-0683312 | |