# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br><br>Sklar Exploration Company, LLC,<br>Debtor. | Case No. 20-12377 EEB<br>Chapter 11 |
| In re:<br><br>Sklarco, LLC,<br>Debtor. | Case No. 20-12380 EEB<br>Chapter 11 |
| | **Joint Administered Under<br>Case No. 20-12377 EEB** |

## *EX PARTE* MOTION FOR EXAMINATION OF DEBTORS PURSUANT TO FED. R. BANKR. P. 2004 AND LOCAL BANKR. R. 2004-1

**NOW INTO COURT**, through undersigned counsel, comes Pickens Financial Group, LLC, The Rudman Partnership, and Tauber Exploration & Production Co. ("Movants"), creditors and parties in interest of Sklar Exploration Company, LLC, ("SEC") in the jointly-administered bankruptcy cases (the "Cases") of SEC and Sklarco, LLC ("Sklarco", and collectively with SEC, the "Debtors"), who file this *Ex Parte Motion for Examination of Debtors Pursuant to Fed. R. Bankr. P. 2004 and Local Bankr. R. 2004-1* (the "2004 Motion"), and respectfully request entry of an order authorizing Movants to examine Debtors regarding the income, expenses, assets, liabilities, financial affairs, as well as the pre-petition and post-petition operations, accounting methods, intercompany transactions, transfers and transactions of Debtors involving the Abbyville Gas Plant and Escambia Gathering System in Escambia County and Conecuh County, Alabama.

1

## BACKGROUND

1. On April 1, 2020, each of the Debtors filed a voluntary petition under Chapter 11 of the Bankruptcy Code with this Court, and by order of this Court, their corresponding bankruptcy Cases are jointly administered under Chapter 11 Case No. 20-12377. [Dkt. No. 8].

2. Movants and other parties have held non-operating working interests in the Escambia Prospect, located in Conecuh and Escambia Counties, Alabama, since the initial formation of a participating group in 2006.

3. In accordance with the terms of the Escambia Prospect Operating Agreement dated effective November 1, 2006 ("JOA"), SEC is the contract operator of oil and gas leases, wells, and associated facilities within the Escambia Prospect. Sklarco is a non-operating working interest owner with an approximate 24.8% working interest in the SEC-operated assets within the Escambia Prospect. The remaining non-operating interest owners, including Movants, own the balance of the working interests in the Escambia prospect.

4. To meet the need for a gas gathering and treating system, SEC and the original Escambia Prospect working interest owners, including Movants, entered into a Service Agreement dated September 14, 2011 ("Service Agreement") with CDM Max, LLC (now Plains Gas Solutions, LLC), pursuant to which CDM/Plains agreed to construct, own and operate a gas processing and treating plant. Additionally, the non-operating interest owners paid for the construction of a pipeline gathering system ("Escambia Gathering System") to connect wells within the Escambia Prospect area to the Abbyville Plant, the plant that was constructed and operated by CDM/Plains under the Service Agreement. Upon receiving payout of an agreed amount, ownership of the Abbyville Plant and Escambia Gathering System was to vest in Movants and the other original Escambia Prospect participants and/or their successors and assigns.

5.   By letter dated February 28, 2014, SEC informed the Escambia working interest owners that payout of the costs to construct the plant and a preferred rate of return to Plains Gas Solution had been achieved in January 2014, and that thereafter "we should receive 75% of the net revenue attributable to the proceeds from the sale of residue gas, natural gas liquids and condensate produced from our wells in the Brooklyn field and processed at the plant."  By letter dated February 13, 2020 ("February 13th Letter"), SEC informed the working interest owners that, in accordance with the terms of the Service Agreement, ownership of the plant was scheduled to vest in SEC <u>on behalf of the non-operating working interest owners</u> on March 1, 2020, exactly one month before the Petition Date.

6.   The February 13th Letter also contained a proposed amendment, which, if adopted by the working interest owners, would be added as a new "Exhibit F" to the Escambia Prospect Operating Agreement (itself Exhibit D to the Participation Agreement for the Escambia Prospect dated effective November 1, 2006).

7.   Under the proposed new arrangement proposed by SEC, any commodity risk previously borne by CDM/Plains under its 25% percentage-of-proceeds or POP arrangement[1] was to be replaced by a new plant management fee ("Management Fee") to be paid to SEC of $0.65 per thousand cubic feet ("MCF") received at the inlet of the plant ("Management Fee").  Additionally, the working interest owners would continue to pay for all the costs of operating the plant, and associated taxes, royalties, and other charges.

---

[1] CDM/Plains recovered its costs of constructing and operating the plant through retention of a percentage of proceeds ("POP"), specifically 25% of the proceeds, obtained from the sale of treated residue gas and natural gas liquid products ("NGLs") obtained through gas processing at the Abbyville Plant. Under that arrangement CDM/Plains retained 25% of the sales proceeds of residue and NGLs after deduction of the costs of operating the plant.

8. The Management Fee proposed by SEC was to be a new source of operating revenue for SEC in addition to the $1,543 per well per month charge being collected by SEC under the COPAS provisions of the Unit Operating Agreement, in addition to the Direct Charges that could be charged by SEC to cover actual direct labor costs for running the plant under COPAS provisions, and in addition to the labor charges and plant operating expenses that would be payable by the working interest owners as Monthly Operating Costs under the proposed Amendment to Operating Agreement.

9. Although the February 13th Letter did not indicate the threshold of participant approval needed to approve the amendment, it did contain signature lines and corresponding interest percentages for each of the owners. Several of the participants, including The Rudman Partnership and Pickens Financial Group, LLC, declined to approve the amendment. However, none of them received word from SEC as to whether the proposed amendment had been approved. Nor did Movants receive copies of the ownership transfer of the Abbyville Plant as had been promised by SEC in the February 13th Letter.

10. On April 19, 2020, Debtors made available a proposed 150-day budget showing monthly revenue from "Alabama gas plant management fees" in the amount $118,625 commencing in mid-May. There is no specific explanation of the source of the plant management fees. Absent <u>unanimous</u> approval of the parties to the Escambia Participation Agreement, the JOA cannot be amended and the Management Fee is unauthorized.[2]

11. Since SEC's taking over management of the Abbyville Gas Plant, Movants have received no revenues, even though Movants and their fellow original Escambia Prospect

---

[2] Section 3.6 of the Escambia Participation Agreement states: "This Agreement <u>and its attachments</u> constitute the entire agreement of the Parties with respect to the subject matter hereof . . . . [N]o amendment or modification of this Agreement shall be effective unless set forth in writing and signed by a duly authorized officer of each of the Parties."

participants own 100% of the plant. SEC has no ownership interest other than holding the plant for the benefit of Movants and the other participants. The same is true for the Escambia Gathering System. Movants are informed from monthly operating reports and cash collateral budgets that SEC is charging the monthly Management Fee that was not duly authorized under the terms of the Escambia Participation Agreement, but the details are sketchy.

12. The undersigned counsel for Movants made emailed Debtors' counsel on August 26 and August 31, requesting SEC to provide information about the Abbyville Gas Plant, including:

> all financial records reflecting its operations of the gas plant since SEC took over operations. This would include income and expense statements on a monthly and cumulative basis, together with statements of the volumes of gas received and processed at the plant.

No documents or information have been received to address this request, and Movants remain in the dark as to the operations of and revenues from the plant they own along with the other original Escambia Prospect participants. To the best of movants' knowledge there is no reference to revenues from the Abbyville Gas Plant on their monthly statements since March 1, 2020. For that matter, the statements received from SEC from January 2014 to March 1, 2020 are likewise vague as to the receipt of the "75% of net revenues" from the plant, as promised in the February 28, 2014 letter from SEC referenced above.

13. Accordingly, Movants request authority to examine the Debtors, by and through their designated representatives, regarding the following matters:

    a. The documents described on Exhibit A attached hereto, including the identity of Debtors' custodians of such documents and records.

    b. The names, titles and contact information of all officers and employees of Debtors involved in the management and operation of the Abbyville Gas plant and Escambia Gathering

5

System ("Abbyville Plant").

  c. The names, titles and contact information of all officers and employees of Debtors involved in maintaining the (i) financial books and records, and (ii) records of all operations relating to the Abbyville Plant.

  d. The volumes of gas, raw make, residue gas, natural gas liquids, condensate and other plant products processed, treated and transported through the Abbyville Plant for each month since SEC took over its operation on or after March 1, 2020.

  e. The gross and net revenues received from the sale, processing, treating or transporting of gas, raw make, residue gas, natural gas liquids, condensate and other plant products processed, treated and transported through the Abbyville Plant for each month since SEC took over its operation on or after March 1, 2020

  f. All capital expenditures, operating expenditures, or other costs or expenses incurred relating to the sale, processing, treating and transporting of gas, raw make, residue gas, natural gas liquids, condensate and other plant products processed through the Abbyville Plant for each month since SEC took over its operation on or after March 1, 2020.

  g. All payments to working interest owners (each to be described by name) derived from the sale, processing, treating and transporting of gas, raw make, residue gas, natural gas liquids, condensate and other plant products through the Abbyville Plant, for each month since SEC took over its operation on or after March 1, 2020.

  h. All payments withheld from any working interest owners (each to be described by name) arising from the sale, processing, treating and transporting of gas, raw make, residue gas, natural gas liquids, condensate and other plant products through the Abbyville Plant for each month since SEC took over its operation, the account number and name of financial institution where such funds are being held, and the legal or contractual basis for such withholding of funds.

  i. The amounts of any management fees charged and received by SEC respecting the Abbyville Plant, for each month since SEC took over its operations, and the amounts of such fees charged to each working interest owner each month.

  j. The gross revenues and net revenues received by SEC arising from the Abbyville Gas Plant for each month from January 2014 to the date SEC took over its operation on or after March 1, 2020.

  k. All payments to working interest owners (each to be described by name) derived from the sale, processing, treating and transporting of gas, raw make, residue gas, natural gas liquids, condensate and other plant products through the Abbyville Plant, for each month from January 2014 until SEC took over its operation on or after March 1, 2020.

  l. All insurance policies maintained by Debtors respecting the Abbyville Plant and its operations.

  m. The state and federal taxes incurred and paid respecting revenues from the Abbyville Plant.

  n. The letter dated February 13, 2020 signed by J. Marshall Jones, III on behalf of SEC to the Escambia Working Interest Owners regarding the Abbyville Gas Plant, including the financial projections contained therein and attached thereto and the documents reviewed in preparing the financial projections.

  o. The marketing agreement with Grizzly Energy Big Escambia Creek plant referenced in the February 13, 2020 letter to the Escambia Working Interest Owners.

Further, in conjunction with such examination of Debtors, Movants request leave to serve a request for documents substantially in the form attached hereto as Exhibit "A."

## BASIS FOR RELIEF

  14. Federal Rule of Bankruptcy Procedure 2004 and Local Rule of Bankruptcy Procedure 2004-1 permit the examination of any entity with respect to "discovering assets examining transactions, and determining whether wrongdoing has occurred." Fed. R. Bankr. P. 2004; L.R.B.P. 2004-1. "The purpose of a Rule 2004 examination is to determine the condition, extent, and location of the debtor's estate in order to maximize distribution to unsecured creditors." *In re Lufkin*, 255 B.R. 204, 208 (Bankr. E.D. Tenn. 2000).

  15. A party in interest therefore "may use Rule 2004 to determine the nature and extent of a bankruptcy estate and to ascertain whether wrongdoing has occurred." *In re Hilsen*, 2008 WL 2945996, at *4 (Bankr. S.D.N.Y. Jul. 25, 2008); *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) ("The purpose of a Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred."). "Any third party who has a relationship with a debtor may be made subject to a Rule 2004 investigation." *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004).

16. The scope of a Rule 2004 examination is "extremely broad," and has even been likened by some courts to a "lawful 'fishing expedition.'" *Id.* (*quoting Bank One, Columbus, N.A. v. Hammond (In re Hammond)*, 140 B.R. 197, 201 (S.D. Ohio 1992)). "The scope of a [ ] Rule 2004 examination is 'unfettered and broad.' Its purpose is to facilitate the discovery of assets and the unearthing of frauds and has been likened to a quick 'fishing expedition' into general matters and issues regarding the administration of the bankruptcy case." *In re Bakalis*, 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996) (quoting *In re GHR Energy Corp.*, 33 B.R. 451, 453 (Bankr. D. Mass. 1983). The standard for granting a Rule 2004 examination is whether the movant has established "good cause." *In re Hammond*, 140 B.R. 197, 201 (S.D. Ohio 1992).

17. Rule 2004 examinations are an appropriate tool for investigating fraudulent transfer claims in particular. *See Rhodes v. Litig. Trust of the Rhodes Cos., LLC (In re Rhodes Cos., LLC)*, 475 B.R. 733 (D. Nev. 2012) ("the subpoenas were an appropriate method of investigating potential fraudulent transfer claims"); *Kirschner v. Agoglia (In re Refco Inc.)*, 461 B.R. 181, 187 (Bankr. S.D.N.Y. 2011) (listing rule 2004 as one of the "several sections of the Bankruptcy Code [that] govern the trustee or debtor in possession's unique role in investigating … fraudulent transfer claims ….").

## PRAYER

Movants respectfully request that this Court enter an order authorizing the examination of Debtors on the issues raised herein and related to this case and the production of documents described in Exhibit "A" on no less than fourteen (14) days-notice.

Dated this 16th day of October, 2020

Respectfully submitted,

**Maynes, Bradford, Shipps & Sheftel, LLP**

*/s/ Thomas H. Shipps*
Thomas H. Shipps
*/s/ Shay L. Denning*
Shay L. Denning
Maynes, Bradford, Shipps & Sheftel, LLP
835 E. Second Ave., Suite 123
Durango, CO 81301
Telephone: (970) 247-1755
Facsimile: (970) 247-8827
Email: tshipps@mbssllp.com;
         sdenning@mbssllp.com

and

*/s/ Barnet B. Skelton, Jr.*
Barnet B. Skelton, Jr.
Attorney at Law
815 Walker, Suite 1502
Houston, TX 77002
Telephone: (713) 516-7450
Facsimile: (713)659-8764
Email: barnetbjr@msn.com

Counsel for Movants

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that, on October 16, 2020, the foregoing instrument was electronically filed and served via CM/ECF pursuant to L.B.R. 9036-1.  All attorneys and parties identified with the Court for electronic service on the record in this case were served by electronic service in accordance with the CM/ECF system on the date of filing

/s/ *Barnet B. Skelton, Jr.*
Barnet B. Skelton, Jr.

## EXHIBIT "A"

## DOCUMENTS TO BE PRODUCED

a. Documents stating, depicting or describing the volumes of gas, raw make, residue gas, natural gas liquids, condensate and other plant products processed, treated and transported through the Abbyville Plant for each month since SEC took over its operation on or after March 1, 2020.

b. Documents stating, depicting or describing the gross and net revenues received from the sale, processing, treating or transporting of gas, raw make, residue gas, natural gas liquids, condensate and other plant products processed, treated and transported through the Abbyville Plant for each month since SEC took over its operation on or after March 1, 2020.

c. Documents stating, depicting or describing all capital expenditures, operating expenditures, or other costs or expenses incurred relating to the sale, processing, treating and transporting of gas, raw make, residue gas, natural gas liquids, condensate and other plant products processed through the Abbyville Plant for each month since SEC took over its operation on or after March 1, 2020.

d. Documents stating, depicting or describing all payments to working interest owners (each to be described by name) derived from the sale, processing, treating and transporting of gas, raw make, residue gas, natural gas liquids, condensate and other plant products through the Abbyville Plant, for each month since SEC took over its operation on or after March 1, 2020.

e. Documents stating, depicting or describing all payments withheld from any working interest owners (each to be described by name) arising from the sale, processing, treating and transporting of gas, raw make, residue gas, natural gas liquids, condensate and other plant products through the Abbyville Plant for each month since SEC took over its operation on or after March 1, 2020, the account number and name of financial institution where such funds are being held, and the legal or contractual basis for such withholding of funds.

f. Documents stating, depicting or describing the amounts of any management fees charged and received by SEC respecting the Abbyville Plant, for each month since SEC took over its operations on or after March 1, 2020, and the amounts of such fees charged to each working interest owner (or third parties) each month.

g. Documents stating, depicting or describing the gross revenues and net revenues

(or losses) received by SEC arising from the Abbyville Gas Plant for each month from January 2014 until SEC took over its operation.

  h. Documents stating, depicting or describing all payments to working interest owners (each to be described by name) derived from the sale, processing, treating and transporting of gas, raw make, residue gas, natural gas liquids, condensate and other plant products through the Abbyville Plant, for each month from January 2014 until SEC took over its operation on or after March 1, 2020.

  h. All insurance policies maintained by Debtors respecting the Abbyville Plant and its operations.

  i. All returns and other documents depicting the state and federal taxes incurred and paid respecting revenues from the Abbyville Plant.

  j. The documents and inforamtion reviewed in preparing the financial projections contained in and attached to the letter dated February 13, 2020 signed by J. Marshall Jones, III on behalf of SEC to the Escambia Working Interest Owners regarding the Abbyville Gas Plant,

  k. The marketing agreement with Grizzly Energy Big Escambia Creek plant referenced in the February 13, 2020 letter to the Escambia Working Interest Owners.