# EXHIBIT 1

## Document Requests and Topics for Deposition

### DEFINITIONS

1. "SEC" means Sklar Exploration Company, LLC.

2. "Sklarco" means Sklarco, LLC.

3. "Debtors" means collectively SEC and Sklarco, along with their employees, agents, managers, members, affiliates, representatives (including advisors), consultants, attorneys and all Persons acting or purporting to act on his behalf.

4. "Bankruptcy Cases" means the jointly administered bankruptcy cases pending in the United States Bankruptcy Court for the District of Colorado, Case No. 20-12377-EEB and Case No. 20-12380-EEB.

5. "Bankruptcy Court" means the United States Bankruptcy Court for the District of Colorado in which the Bankruptcy Cases are pending.

6. "Petition Date" means April 1, 2020.

7. "*Ad Hoc* Committee" means the *Ad Hoc* Committee of Sklar Exploration Company, LLC, and Sklarco, LLC whose members presently are (i) Pruet Production Co.; (ii) JF Howell Interests, LP; and (iii) McCombs Energy, Ltd.

8. "Brooklyn Agreements" collectively means: (i) Southwest Brooklyn Oil Unit Agreement; (ii) Southwest Brooklyn Oil Unit Operating Agreement; (iii) Southeast Brooklyn Oil Unit Agreement; and (iv) Southeast Brooklyn Oil Unit Operating Agreement, each dated November 1, 2018, along with all exhibits, amendments, substitutions, replacements, addendums or any ancillary documents referenced therein.

9. "Brooklyn Oil Units" mean the Unit Areas as such terms are defined in the Brooklyn Agreements.

10. "Operations" means "Unit Operations" as defined by the Brooklyn Agreements.

11. "Plants" mean those certain processing plants situated in Conecuh County, Alabama commonly referred to as the North Beach Plant and the Abbyville Plant, and all equipment associated with those facilities.

12. "Plant Agreements" mean the agreements by and among the owners of the Plants, and with third parties relating to Plants, including without limitation the basis upon which the gas of owners in fields and units delivering gas to the Plants is processed.

13. "Gathering Lines" mean the gathering lines used by Debtors to gather gas produced from wells in the Brooklyn Field (as defined by orders entered by the AOGB).

14. "Gathering Line Agreements" mean the agreements by and among the owners of the Gathering Lines, and with third parties relating to the Gathering Lines, including without limitation the basis upon which the gas of owners in fields and units delivering gas to the Plants is transported.

15. "AOGB" means the Alabama Oil and Gas Board.

16. "NSAI" means Netherland, Sewell & Associates, Inc.

17. "Reserve Report" means that report prepared by NSAI titled *Estimates of Reserves and Future Revenue to the Combined Interests of Sklar Exploration Company, LLC and Sklarco, LLC in Certain Oil and Gas Properties located in the United States as of September 1, 2020.*

18. "Person" means, without limitation, natural persons and individuals; sole proprietorships; limited liability companies; general and limited partnerships; profit and nonprofit corporations; unincorporated associations; or any other legal or governmental entity, organization or body of any type whatsoever; as well as agents, employees, or instrumentalities of such entities.

19. "Agreement" means all oral or written understandings, formal or informal, binding or nonbinding, between more than one party, including written contracts, letter agreements, side agreements, addenda to agreements and any other such understandings however reflected.

20. "Document" and/or "documents" means any writing or other form of record (including any writing or data stored on electronic storage devices) within the scope of the word "document" as that term is used in Rules 26 and 34 of the Federal Rules of Civil Procedure (as incorporated by FER. R. BANKR. P. 7026 and 7034) and includes (without limitation) all types of written, typed, printed, recorded or graphic material, however produced or reproduced, of any kind and description, and whether an original, master, duplicate or copy, including (but not limited to) papers, notes of conversations, contracts, electronic mail, computer files, agreements, drawings, telegrams, tape recordings, communications, letters, memoranda, handwritten notes, reports, studies, working papers, corporate records, minutes of meetings (including board or committee meetings), notebooks, bank deposit slips, bank checks, canceled checks, diaries, diary entries, appointment books, calendars, photographs, transcriptions or sound recordings of any type of personal or telephone conversations or negotiations, notes or records of meetings or conferences, or things similar to any of the foregoing, including any data, information or statistics contained within any data storage modules, tapes, discs, or other memory device, or other information retrievable from storage systems, including (but not limited) to computer generated reports and print-outs or data compilations from which information can be obtained and translated, if necessary. Any copy containing (or having attached) any alterations, notes, comments, or other materials not included in the originals or copies referred to in the preceding sentence shall be deemed a separate document within the foregoing definition.

4822-2135-2400.5

21. "Relating to" or "relate to" means discussing, describing, pertaining to, containing, analyzing, evaluating, studying, recording, memorializing, reporting on, commenting on, reviewed in conjunction with, evidencing, setting forth, considering, recommending, or constituting, in whole or in part.

22. The term "Communication" means, without limitation, any correspondence, memoranda, voice mail, e-mail, contact, discussion, or other kind of written, oral, or electronic exchange between two or more persons, including, but not limited to, all telephone conversations, face-to-face conversations, meetings, visits, and conferences.

## INSTRUCTIONS

A. Each request shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive. Any request propounded in the singular shall also be read as if propounded in the plural and vice versa. Any request propounded in the present tense shall also be read as if propounded in the past tense and *vice versa*.

B. The documents responsive to these requests shall be produced as they have been kept in the usual course of business or shall be organized and labeled to correspond with the enumerated categories in this request. If produced as kept in the usual course of business, all documents (other than electronically stored information) shall be produced with a copy of the file folder (if any) in which the documents are kept or maintained.

C. If you object to the production of any document sought by these document requests, whether in whole or in part, on the grounds of the attorney-client privilege, work product immunity, or other privilege or immunity, as much of the document concerned as to which no claim of privilege or immunity is made shall be produced. With respect to documents or portions of documents for which a claim of privilege or immunity is made, state the following for each document:

(i) a description of the type of document withheld from production (*e.g.*, memorandum, letter, e-mail);

(ii) the date shown on the document;

(iii) the author of the document and, if applicable, the name of the person(s) to whom it was addressed and/or to whom it was copied;

(iv) a general description of the subject matter of the document that is sufficiently specific to permit a fair evaluation of the merits of Recovery Energy's reasons for not producing the document; and

(v) the reason the document was withheld from production.

D. If any document responsive to these requests has been lost, destroyed, or otherwise disposed of, such document is to be identified as completely as possible, including the following information: contents; author(s); recipient(s); sender(s); copied recipient(s) (indicated or blind);

4822-2135-2400.5

date prepared and received; date of disposal; manner of disposition; person(s) last in possession of the document; and person(s) disposing of the document.

E. Unless otherwise specified in an individual document request, the scope of the documents requested herein shall be limited to 3 years preceding the Petition Date.

## DOCUMENT REQUESTS

**Request No. 1**: All Documents and Communications relating to SEC's operations in the Brooklyn Oil Unit since November 1, 2018.

**Request No. 2**: All Documents and Communications relating to any cash call advances issued by SEC and/or made by any working interest owners in the Brooklyn Oil Units.

**Request No. 3**: All Documents and Communications relating to SEC's collection of cash call advances from Sklarco.

**Request No. 4**: All Documents and Communications relating to Sklarco's performance of all of its obligations under the Brooklyn Agreements.

**Request No. 5**: All Documents and Communications relating to non-payment of working interest holder revenue to working interest owners in the Brooklyn Oil Units.

**Request No. 6**: All Documents and Communications relating to SEC's collection of joint interest billings from Sklarco.

**Request No. 7**: All Documents and Communications between SEC and Sklarco relating to the Brooklyn Oil Units.

**Request No. 8**: All Documents and Communications between the Debtors and working interest owners in the Brooklyn Oil Units relating to the Debtors' operation of the Brooklyn Oil Units.

**Request No. 9**: All Documents evidencing the acquisition and ownership of, and encumbrances on, the Debtors' Operations, Plants and Gathering Lines.

**Request No. 10**: All Documents, including organizational charts, showing all ownership interests in any entities or business that is shared by the Debtors and any Person, whether or not scheduled, related to the Debtors' Operations, Plants and Gathering Lines.

**Request No. 11**: All Documents and Communications between the Debtors and the AOGB relating to the Brooklyn Oil Units, including those Documents and Communications relating to the secondary recovery program in the Brooklyn Oil Units.

**Request No. 12**: All Documents and Communications relating to the Brooklyn Oil Units.

4822-2135-2400.5

**Request No. 13**: All Documents and Communications relating to the formation of a working interest owner committee under the Brooklyn Agreements.

**Request No. 14**: All Documents and Communications relating to working interest owners in the Brooklyn Unit.

**Request No. 15**: All Documents and Communications relating to the sale of unitized substances from the Brooklyn Oil Units including, but, not limited to, all agreements relating to: (i) the sale of oil and condensate; (ii) the processing and transportation of raw gas; (iii) the sale of plant products and residue gas; and (iv) the fees and charges imposed by SEC on third parties to such transactions.

**Request No. 16**: All Documents and Communications between the Debtors and NSAI relating to the Reserve Report including the documents provided by the Debtors to NSAI pertaining to the Brooklyn Oil Units, including but not limited to documents and communications pertaining to recoverable reserves, unrecoverable reserves, costs to be incurred in operating the Brooklyn Oil Units including secondary recovery injection costs, costs of anticipated workover or additional operations, costs of gathering, treating and processing the Brooklyn Oil Units' future production and total *in situ* reserves from November 1, 2018 to the date of the NSAI.

**Request No. 17**: All drafts of the Reserve Report prepared by NSAI.

**Request No. 18:** All documents and communications between Debtors and any other party, including East West Bank and Unsecured Creditors Committee, concerning the Reserve Report prepared by NSAI.

## TOPICS

**Topic No. 1**: SEC's ability to perform as a capable and prudent operator as required by the Brooklyn Agreements.

**Topic No. 2**: Sklarco's ability to satisfy its contractual obligations required under the Brooklyn Agreements.

**Topic No. 3**: The Debtors' abilities to cure all defaults existing under the Brooklyn Agreements in connection with a proposed assumption of the Brooklyn Agreements under Section 365 of the Bankruptcy Code.

**Topic No. 4**: The Debtors' abilities to satisfy their obligation to provide adequate assurance of future performance of the Brooklyn Agreements in connection with a proposed assumption of the Brooklyn Agreements under Section 365 of the Bankruptcy Code.

**Topic No. 5**: SEC's duties and obligations to keep the working interest owners in the Brooklyn Unit informed as to all matters relating to unit operations, including, but, not limited to: (i) the progress of the implementation of the injection program since January 1, 2019; (ii) the actual process utilized by SEC in implementing the injection program; (iii) the procedures, and any

changes thereto, for implementation that had been previously approved by the working interest owners in the Brooklyn Units; and (iv) SEC's disclosure to working interest owners in the Brooklyn Unit of any possible adverse effects on the secondary recovery program arising from the proposed operations of SEC.

**Topic No. 6**: All matters relating to the formation of a working interest owner committee under the Brooklyn Agreements.

**Topic No. 7**: SEC's actions or efforts to implement a secondary recovery program in its Operations and the results from such actions or efforts.

**Topic No. 8**: The preparation, contents and conclusions of the Reserve Report including the valuations and assumptions contained therein relating to the Brooklyn Oil Units.