UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC ) | |
| EIN: 72-1417930 ) | Chapter 11 |
| ) | |
|    Debtor-in-Possession. ) | |
| ) | |
| _____ ) | |
| ) | Case No. 20-12380-EEB |
| SKLARCO, LLC ) | |
| EIN: 72-1425432 ) | Chapter 11 |
| ) | |
| Debtor-in-Possession. ) | |

**DEBTORS' RESPONSE IN OPPOSITION TO *AD HOC* COMMITTEE
MOTION TO MODIFY THE AUTOMATIC STAY**

The Debtors, Sklar Exploration Company, LLC ("SEC") and Sklarco, LLC ("Sklarco" and together, "Debtors"), by and through their attorneys, Kutner Brinen, P.C. and Armbrecht Jackson, LLP, state their Response in Opposition to the *Ad Hoc Committee of Working Interest Owners' Motion to Modify the Automatic Stay* (the "Motion") (Doc. No. 671) as follows:

**BACKGROUND**

The *Ad Hoc* Committee's Motion arises from an issue that is, at its heart, a difference of opinion with respect to the secondary recovery on the Southwest and Southeast Brooklyn Oil Units (the "South Brooklyn Units"). Secondary recovery operations involve the injection of water, gas, or other materials into an oil reservoir for the ultimate purpose of increasing total production of oil and gas. The South Brooklyn Units are located in Conecuh and Escambia Counties in Alabama and are operated by SEC. Two additional oil units, the Northeast Brooklyn Oil Unit and Northwest Brooklyn Oil Unit (the "North Brooklyn Units"), are located directly to the north of the South Brooklyn Units, and are operated by Pruet Production Company, which is a member of the *Ad Hoc* Committee. Sklarco holds a working interest in both of the South Brooklyn Units as well as in both North Brooklyn Units, and these interests hold substantial value. The Abbyville Gas Plant, which is operated by SEC, processes gas from most of the wells in the South Brooklyn Units and from some wells in the North Brooklyn Units.

The self-styled *Ad Hoc* Committee now consists of four entities: (1) Pruet Production

1

Company; (2) JF Howell Interests, LP; (3) McCombs Energy, Ltd.; and (4) FPCC USA, Inc. They assert that they are working interest owners in the South Brooklyn Units, which is technically correct.[1]  However, to couch these parties solely as working interest owners in the South Brooklyn Units misses the more significant point that Pruet Production Company ("Pruet") is the operator of the adjacent North Brooklyn Units and would obviously like to be the operator of the South Brooklyn Units instead of SEC.  In fact, Pruet has been carrying on, both publicly and behind the scenes, a campaign since at least June 2020 to take advantage of SEC's bankruptcy to boost its own operating revenues at the expense of both SEC and the other working interest owners.

Pruet's campaign, contrary at least to the spirit of the automatic stay if not the letter, began with a public letter/email-writing effort to falsely paint SEC as an imprudent operator primarily with respect to SEC's water injection programs in the two southern Brooklyn Oil Units in approximately June 2020, a program instituted in 2019 to facilitate the secondary recovery efforts for all four Brooklyn Units as approved by the State Oil and Gas Board of Alabama. Pruet initially demanded that SEC conduct a working interest owner meeting to provide a status report and answer questions related to the implementation of the secondary recovery program instituted with respect to the South Brooklyn Oil Units.  SEC did in fact conduct such a meeting, during which it provided a comprehensive overview of engineering and technical matters related to the operation of the South Brooklyn Oil Units, as well as the geological conditions impacting the water injection rates.  During this working interest owner meeting, Pruet predictably took the stage to throw rocks at SEC.  Ironically, Pruet's "rocks" consisted mainly of alleging that SEC was injecting insufficient volumes of water into the reservoir at a time when Pruet itself was injecting far less than 100% of its own projected water volumes into the two northern units.[2]

---

[1] Somewhat misleading is the claim on page 4 of the Motion that these committee members own "or represent" 38.17% of the Southwest Unit and 40.68% of the Southeast Unit.  In fact, they collectively own 27.221466% of the Southwest Unit and 14.20384% of the Southeast Unit per the exhibits attached to their Motion.  The Debtors suspect that the Committee is claiming to "represent" other owners in an effort to enhance their percentage, but no designation of any such representation has been furnished to SEC pursuant to Section 3.1 of the respective Unit Operating Agreements.  *The Ad* Hoc Committee fails to mention that two of its members, McCombs and FPCC, currently owe approximately $600,000 to SEC on outstanding JIB's, more than half of which is more than 90 days past due.

[2] The percentages of Pruet's water injection compared to projections, while varying from month to month, track relatively close to SEC's.  Pruet did not suggest the formation of a technical committee to consider why its own injection efforts in the two North Brooklyn Units remain well below projections.

2

As a result of the working interest owner meeting, SEC agreed to the formation of a technical committee that would review engineering matters with respect to the South Brooklyn Units and make recommendations for the benefit of all working interest holders. Despite its relatively small interest, Pruet, as well as *Ad Hoc* Committee member FPCC, took an active role on the technical committee to provide recommendations and comments. The ostensible purpose of the technical committee was to review and consider efforts that SEC could undertake to increase the volume of its water injection. While much discussion has occurred, none of the committee members, including Pruet and FPCC, have proposed tangible recommendations as to what SEC should do or refrain from doing that would increase the water injection rates.[3] Any disappointment in the volume of SEC's water injection thus appears to result from geologic and engineering technicalities associated with the underlying reservoir as opposed to failings on SEC's part. In short, Pruet and FPCC have no technical solution for the alleged problem, but of course that was never the real goal of the effort – the goal was to play on the unhappiness of many working interest owners at being creditors in SEC's bankruptcy case to set up the current opportunity for Pruet to take over operations.

Pruet's campaign highlights a distinction between Pruet and SEC. SEC serves as an operator in order to maximize the potential of Sklarco's and the other working interest owners' oil and gas reserves, and in turn, to provide a benefit to SEC and Sklarco's respective bankruptcy estates for the benefit of all creditors. Pruet, on the other hand, is a contract operator whose business model requires it to make most of its profit on operations. Its equity stake is extremely small; it holds a 0.201113% interest in the Southwest Unit compared to Sklarco's 19.649466% interest, and a 0.462937% interest in the Southeast Unit compared to Sklarco's 12.59282% interest.

Seen in this light, the Motion takes on a much more nefarious role in these proceedings. The hope is to disrupt as much as possible SEC's efforts to put forth a Plan of Reorganization and, if possible, cause SEC to fail, effectively removing a competitor to Pruet. This would potentially inure to the financial advantage of Pruet, but almost certainly not to the advantage of the other members of the *Ad Hoc* Committee, other working interest owners, or other unsecured

---

[3] The closest thing to a suggestion is the possibility of drilling a second injection well in the Southeast Unit, even though the Board-approved plan of operations only called for one injection well. This is a possibility that the working interest owners collectively can consider, but it hardly constitutes a technical suggestion for how SEC can increase water injection in the existing injection well.

creditors given how removing SEC as operator could affect the Plan of Reorganization.

It should also not be forgotten that there are other stakeholders in these issues – including specifically the underlying mineral and royalty interest owners. By far, the largest royalty owner in the South Brooklyn Units is Cedar Creek Land & Timber Company, a company that is likely also the largest royalty owner in the North Brooklyn Units. Cedar Creek has previously voiced its objection to any efforts to remove SEC as operator of the two southern units. *See* Letter from Cedar Creek Land & Timber attached hereto as Exhibit A. While Cedar Creek is not a working interest owner and would not have a direct vote in any effort to remove SEC, its interests should not be overlooked or ignored, nor should the interests of other mineral interest owners, each of whom benefits from SEC's maintaining its status as operator to ensure that the value of the assets are maximized for the benefit of all parties, and that stability is maintained in the operation of the South Brooklyn Units.

**RELATIONSHIP TO DEBTORS' PLAN OF REORGANIZATION**

The Motion directly impacts the Debtors' efforts to put forth a Plan of Reorganization, and appears ultimately to be an attempt to preemptively frustrate those efforts by the *Ad Hoc* Committee. The Debtors intend to propose a Joint Plan of Reorganization that contemplates, in relevant part, payment of net revenue from SEC to unsecured creditors. The South Brooklyn Units are the two largest properties that SEC operates. If SEC is removed as operator of these Units, SEC would lose significant revenue and would no longer have a reasonable prospect of rehabilitation. Instead, removal of SEC as operator of the South Brooklyn Units would likely result in a liquidation of SEC, and a significant loss of funds for unsecured creditors, as the Joint Plan provides for contribution of SEC's net revenue to payment of unsecured creditors. If SEC were unable to reorganize, and was instead forced into a liquidation, the recovery for unsecured creditors would be significantly diminished and potentially limited to recovery on avoidance actions as a result of the loss of SEC's ongoing revenue. Modifying the stay now would only serve to permit Pruet and the rest of the *Ad Hoc* Committee to hijack the Debtors' reorganization efforts for their own perceived advantage but to the decided detriment of other working interest holders, the Debtors' estates, and unsecured creditors of SEC.

As set forth more fully herein, SEC's continued operation of the Brooklyn Units is necessary to the successful reorganization of SEC, and it is in the best interests of the Debtors, their estates, and their creditors that the Motion be denied, and SEC maintain operation of the Brooklyn Units.

## STANDARD OF REVIEW

The purpose of the automatic stay is to "prevent damaging disruptions to the administration of a bankruptcy case[.]" *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1804 (2019). The automatic stay ensures that the debtor will be afforded a "breathing spell from his creditors . . . It permits the debtor to attempt a repayment or reorganization plan, or simply be relieved of the financial pressures that drove him into bankruptcy." *Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1330 (10th Cir.1984) (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 54-55 (1978), *reprinted in* 1978 U. S. Code Cong & Admin. News 5787, 5840-41).

Pursuant to 11 U.S.C. § 362(d)(1), the court may terminate or modify the automatic stay "for cause, including the lack of adequate protection of an interest." The Bankruptcy Code does not define "cause" for the purpose of section 362(d)(1), and as such, the decision as to whether to lift the stay is committed to the discretion of the judge presiding over the bankruptcy proceedings. *Pursifull v. Eakin*, 814 F.2d 1501, 1504 (10th Cir. 1987). In determining whether "cause" exists to grant relief from stay, the Court must apply a balancing test to weigh the hardships suffered by the creditor under the automatic stay against those suffered by the Debtors if the stay is lifted. *See, e.g., In re Rouse*, 301 B.R. 86, 89 (Bankr. D. Colo. 2003); *In re Caldwell,* 101 B.R. 728, 732 (Bankr.D.Utah 1989); *In re Opelika Mfg. Corp.,* 66 B.R. 444, 449 (Bankr.N.D.Ill.1986) ("Cause to lift the stay exists when the stay harms the creditor and lifting the stay will not unjustly harm the debtor or other creditors.").

## ARGUMENT

SEC's contractual rights as operator of the South Brooklyn Units are valuable assets of SEC's estate in accordance with 11 U.S.C. § 541, and as such, the *Ad Hoc* Committee must establish "cause" to take possession or control over SEC's contractual rights under the Operating Agreements for the South Brooklyn Units.

One can struggle long and hard to find in the Motion a compelling description of what the movants characterize as "cause" sufficient for the Court to interrupt the bankruptcy process and

5

lift the automatic stay. The *Ad Hoc* Committee has not alleged that SEC's continued operation of the South Brooklyn Units is causing immediate or irreparable harm to Units, nor is there a basis for such an allegation. SEC has always acted, and continues to act, as a prudent operator with the goal of maximizing and preserving the value of the interests in the South Brooklyn Units for all working interest holders, including Sklarco. As such, no working interest owner's interest is suffering any "lack of adequate protection" at this time. 11 U.S.C. § 362(d)(1).

As noted above, to the extent there is any disappointment with SEC's water injection program, neither Pruet, FPCC, nor any other members of the technical committee or the *Ad Hoc* Committee have identified any specific act or omission of SEC as operator that needs to be changed.Thus, there is no basis to assert or assume that changing the operator will result in an increase in the water injected into the South Brooklyn Units, especially given that Pruet is currently injecting far less water into the North Brooklyn Units than it had projected to the Alabama Oil and Gas Board in September 2018.

The *Ad Hoc* Committee asserts, in essence, that "cause" exists to lift the automatic stay because working interest owners have the contractual right to act and this *Ad Hoc* Committee is tired of waiting for the opportunity. However, the Motion does not limit the scope of relief from stay to merely hold a vote. Rather, the Motion presupposes that the vote will be successful, and that the working interest holders will elect to remove SEC as operator, thus removing SEC's contractual rights as operator from the estate. While the Debtors do not dispute that, but for the bankruptcy filing, the working interest owners would indeed have the right under the governing agreements to hold a vote, the *Ad Hoc* Committee fails to establish that the continued imposition of the automatic stay causes harm to creditors, including the working interest holders, nor does it address the harm that will be caused to SEC if it is removed as operator of the South Brooklyn Units, depriving SEC from ongoing revenue.

The *Ad Hoc* Committee cites two cases in support of their Motion, but neither are applicable in this context. First, they cite *In re: Johns-Manville Corp.*, 801 F.2d 60 (2nd Cir. 1986), a case involving disputed corporate governance within the debtor company. The *Johns-Manville* case did not involve relief from the automatic bankruptcy stay, but instead a motion for injunctive relief. Furthermore, unlike the motion in *Johns-Manville*, which sought only to replace the debtor's board of directors, the *Ad Hoc* Committee's Motion seeks to remove an asset from SEC's estate that is vital to its ability to reorganize, and that provides an ongoing benefit to all creditors.

The *Ad Hoc* Committee also cites *In re: Indianapolis Downs, LLC*, 486 B.R. 286 (Bankr. D. Del. 2013), which similarly did not involve relief from the automatic stay in evaluating the intersection between the Bankruptcy Code and the contractual rights of the parties. Rather the court in *Indianapolis Downs* was required to interpret the contractual rights of equity holders with respect to corporate governance after the bankruptcy case was filed.

In contrast to the *Johns-Manville* case and the *Indiana Downs* case, the vote requested by the *Ad Hoc* Committee does not relate to corporate governance of SEC or Sklarco. Rather the vote requested by the *Ad Hoc* Committee seeks to remove a valuable asset from SEC's estate; an action that will cause irreparable harm to SEC's reorganization efforts, and harm to all of SEC's unsecured creditors for an illusory benefit to a small group of working interest holders.

As indicated in the *Rouse* case cited above, this Court "must apply a balancing test to weigh the hardships suffered by the creditor under the automatic stay against those suffered by the Debtors if the stay is lifted." *In re Rouse*, 301 B.R. 86, 89 (Bankr. D. Colo. 2003). Given that no emergency exists, the *Ad Hoc* Committee members are not suffering any immediate harm in allowing SEC to continue as operator of the South Brooklyn Units. SEC's continued operation of the South Brooklyn Units is a vital part of the Debtors' reorganization efforts, and allowing the *Ad Hoc* Committee to frustrate SEC's reorganization efforts when there is no immediate harm that would be suffered by the working interest holders creates a material hardship on the Debtors, places SEC's reorganization efforts in jeopardy, and will cause irreparable harm to SEC's estate and its unsecured creditors who benefit from SEC's continued operation of the South Brooklyn Units. If SEC were removed as operator of the South Brooklyn Units, SEC would likely have to wind down its business operations and liquidate its assets, removing a revenue stream for payments to unsecured creditors of SEC under a Plan of Reorganization, and significantly decreasing the amount that would be paid to unsecured creditors. In short, the *Ad Hoc* Committee's Motion violates the objectives of Chapter 11, to "assist financially distressed business enterprises by providing them with breathing space to return to a viable state." *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1073 (5th Cir. 1986)(quoting *In re Dolton Lodge Trust No. 35188*, 22 B.R. 918, 922 (Bankr. N.D. Ill. 1982)). If SEC is removed as operator, then revenue to pay its unsecured creditors, including working interest owners, will disappear.

As the Tenth Circuit has stated, the fundamental purpose of the automatic stay "is to protect the debtor and his creditors by allowing the debtor to organize his affairs, and by

ensuring that the bankruptcy procedure may operate to provide an orderly resolution of all claims." *Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1330 (10th Cir.1984). Allowing the *Ad Hoc* Committee to waylay this process at the present time for its own competitive advantage is clearly contrary to the reorganization process, and is indeed contrary to the best interests of all creditors.

   The *Ad Hoc* Committee has failed to establish that "cause" exists to remove a valuable asset from SEC's estate. Nothing in the *Ad Hoc* Committee's Motion alleges that there will be irreparable harm to the working interest holders of the South Brooklyn Units, nor has the *Ad Hoc* Committee established that any harm experienced by the working interest holders will outweigh the harm to SEC, the Debtors' respective estates, and the creditors of the Debtors. Accordingly, because "cause" does not exist for relief from stay pursuant to 11 U.S.C. § 362(d)(1), the Motion must be denied.

   WHEREFORE, the Debtors pray the Court make and enter an Order denying the *Ad Hoc* Committee's Motion, and for such further and additional relief as to the Court may appear just and proper.

DATED: December 10, 2020         Respectfully submitted,

                By: /s/ Duane A. Graham
                  Duane A. Graham
                  Benjamin Y. Ford
                  **ARMBRECHT JACKSON LLP**
                  Post Office Box 290
                  Mobile, AL 36601
                  Telephone: (251) 405-1300
                  E-mail: dag@ajlaw.com
                  E-mail: byf@ajlaw.com

             - AND -

                By: /s/ Keri L. Riley
                  Jeffrey S. Brinen, #20565
                  Keri L. Riley, #47605
                  **KUTNER BRINEN, P.C.**
                  1660 Lincoln Street, Suite 1850
                  Denver, CO 80264
                  Telephone: (303) 832-2400
                  E-mail: klr@kutnerlaw.com

**CERTIFICATE OF SERVICE**

I certify that on December 10, 2020, I served a complete copy of the foregoing **DEBTORS' RESPONSE IN OPPOSITION TO AD HOC COMMITTEE MOTION TO MODIFY THE AUTOMATIC STAY** on the following parties in compliance with the Federal Rules of Bankruptcy Procedure and the Court's Local Rules:

Paul Moss, Esq.
US Trustee's Office
1961 Stout Street
Suite 12-200
Denver, CO 80294

Stoneham Drilling Corporation
(Representative: Heather Stickel)
c/o James B. Bailey, Esq.
Bradley Arant Boult Cummings, LLP
1819 Fifth Avenue North
Birmingham, AL 35203

Mesa Fluids, LLC
(Representative: Aaron W. Merrell)
1669 South 580 East
American Fork, UT 84057

TCP Cottonwood, L.P.
(Representative: Kyle C. McInnis)
c/o Eric Lockridge
400 Convention Street
Suite 700
Baton Rouge, LA 70801

Rapad Well Service Company, Inc.
(Representative: Chesley James)
c/o Jeremy Retherford, Esq.
Balch & Bingham, LLP
1901 Sixth Avenue North
Suite 1500
Birmingham, Alabama 35203-4642

Kelley Brothers Contractors, Inc.
(Representative: Jerry Kelley)
401 County Farm Road
Waynesboro, MS 39367

Baker Hughes Company
(Representative: Christopher J. Ryan)
2001 Rankin Road
Houston, TX 77073

Timothy C. Mohan, Esq.
Foley & Lardner, LLP
600 17th Street
Suite 2020 South
Denver, CO 80202

J. Eric Lockridge, Esq.
Kean Miller LLP
400 Convention Street
Suite 700
P.O. Box 3513
Baton Rouge, LA 70802

Craig K. Schuenemann, Esq.
Bryan Cave Leighton Paisner LLP
1700 Lincoln Street
Suite 4100
Denver, CO 80203

Giovanni M. Ruscitti, Esq.
Berg Hill Greenleaf Ruscitti, LLP
1712 Pearl Street
Boulder, CO 80302

Bryce A. Suzuki, Esq.
Bryan Cave Leighton Paisner, LLP
Two North Central Avenue
Suite 2100
Phoenix, AZ 85004-4406

James B. Bailey, Esq.
Bradley Arant Boult Cummings, LLP
1819 Fifth Avenue North
Birmingham, AL 35203

9

Timothy M. Riley, Esq.
Hopping Green & Sams, P.A.
P.O. Box 6526
Tallahassee, FL 32314

Michel D. Rubenstein, Esq.
Liskow & Lewis
1001 Fannin Street
Suite 1800
Houston, TX 77002

Duane J. Brescia, Esq.
Clark Hill Strasburger
720 Brazos
Suite 700
Austin, TX 78701

Kevin S. Neiman, Esq.
Law Offices of Kevin S. Neiman, P.C.
999 18th Street
Suite 1230 South
Denver, CO 80202

Robert L. Paddock, Esq.
Buck Keenan LLP
2229 San Felipe
Suite 1000
Houston, TX 77019

Jeremy L. Retherford, Esq.
Balch & Bingham, LLP
1901 Sixth Avenue North
Suite 1500
Birmingham, Alabama 35203

Matthew J. Ochs, Esq.
Holland & Hart, LLP
555 Seventeenth Street
Suite 3200
P.O. Box 8749
Denver, CO 80201-8749

Shay L. Denning, Esq.
Thomas H. Shipps, Esq.
Maynes, Bradford, Shipps & Sheftel, LLP
835 East Second Avenue
Suite 123
Durango, CO 81301

Robert Padjen, Esq.
Deanna Lee Westfall, Esq.
Assistant Attorney General
Colorado Department of Law
1300 Broadway
8th Floor
Denver, CO 80203

Timothy M. Swanson, Esq.
Moye White LLP
1400 16th Street
6th Floor
Denver, CO 80202-1486

Joseph E. Bain, Esq.
Jones Walker LLP
811 Main Street
Suite 2900
Houston, TX 77002

Madison Tucker, Esq.
Jones Walker LLP
201 St. Charles Avenue
Suite 5100
New Orleans, Louisiana 70170

Barnet B. Skelton, Jr., Esq.
815 Walker
Suite 1502
Houston, TX 77002

Amy L. Vazquez, Esq.
Jones Walker LLP
811 Main Street
Suite 2900
Houston, TX 77002

2

Matthew S. Okin, Esq.
John Thomas Oldham, Esq.
Okin Adams, LLP
1113 Vine Street
Suite 240
Houston, TX 77002

Christopher H. Meredith, Esq.
Copeland Cook Taylor & Bush, P.A.
1076 Highland Colony Parkway
600 Concourse, Suite 200
P.O. Box 6020
Ridgeland, Mississippi 39158-6020

Michael L. Niles, Esq.
Brian G. Rich, Esq.
Berger Singerman LLP
313 North Monroe Street
Suite 301
Tallahassee, FL 32301

Victoria Argeroplos, Esq.
Jackson Walker LLP
1401 McKinney Street
Suite 1900
Houston, TX 77010

David R. Taggart, Esq.
Bradley Murchison Kelly & Shea, LLC
401 Edwards Street
Suite 1000
Shreveport, Louisiana 71101

Jordan B. Bird, Esq.
Cook Yancey King & Galloway, APLC
333 Texas Street
Suite 1700
P.O Box 22260
Shreveport, Louisiana 71120-2260

Paul H. Stephenson III, Esq.
Jim F. Spencer, Jr., Esq.
Watkins & Eager, PLLC
P.O. Box 650
Jackson, Mississippi 39205

John D. Cornwell, Esq.
Grant M. Beiner, Esq.
Christopher D. Johnson, Esq.
Munsch Hardt Kopf & Harr, P.C.
700 Milam Street
Suite 2700
Houston, TX 77002

Michael J. Guyerson, Esq.
Buechler Law Office, LLC
999 18th Street
Suite 1230 South
Denver, CO 80202

Jordan B. Bird, Esq.
Cook Yancey King & Galloway, APLC
333 Texas Street
Suite 1700
Shreveport, Louisiana 71120-2260

Robert L. Paddock, Esq.
Buck Keenan, LLP
2229 San Felipe
Suite 1000
Houston, TX 77019

Ryan M. Seidemann, Esq.
Assistant Attorney General
Civil Division/Lands and Natural Resources
P.O. Box 94005
Baton Rouge, Louisiana 70804-9005

David M. Miller, Esq.
Spencer Fane LLP
1700 Lincoln Street
Suite 2000
Denver, CO 80203

Jennifer J. Hardy, Esq.
Willkie Farr & Gallagher, LLP
600 Travis Street
Houston, TX 77002

Duane J. Brescia, Esq.
Clark Hill Strasburger
720 Brazos Street
Suite 700
Austin, TX 78701

Andrew G. Edson, Esq.
Clark Hill Strasburger
901 Main Street
Suite 6000
Dallas, TX 75202

Craig M. Geno, Esq.
Law Offices of Craig M. Geno, PLLC
587 Highland Colony Parkway
Ridgeland, MS 39157

Christopher H. Meredith, Esq.
Glenn Gates Taylor, Esq.
Copeland Cook Taylor & Bush, P.A.
600 Concourse, Suite 200
1076 Highland Colony Parkway
P.O. Box 6020
Ridgeland, MS 39158-6020

Matthew S. Okin, Esq.
John Thomas Oldham, Esq.
Okin Adams LLP
1113 Vine Street
Suite 240
Houston, TX 77002

Curtis R. Shelton, Esq.
Jennifer Norris Soto, Esq.
Ayres Shelton Williams Benson & Paine, LLC
333 Texas Street, Suite 1400
P.O. Box 1764
Shreveport, Louisiana 71166

Armistead M. Long, Esq.
Gordon Arata Montgomery Barnett
McCollam Duplantis & Eagan, LLC
400 East Kaliste Saloon Road
Suite 4200
Lafayette, Louisiana 70508

Ryan J. Lorenz, Esq.
Clark Hill PLC
14850 North Scottsdale Road
Suite 500
Scottsdale, Arizona 85254

Brian G. Rich, Esq.
Michael J. Niles, Esq.
Berger Singerman LLP
313 North Monroe Street
Suite 301
Tallahassee, FL 32301

Katherine A. Ross, Esq.
U.S. Attorney's Office for the
  District of Colorado
Assistant United States Attorney
1801 California Street
Suite 1600
Denver, CO 80202

Ryco Exploration, LLC
401 Edwards Street
Suite 915
Shreveport, LA 71101
ATTN: M. Robin Smith

Ryco Exploration, LLC
40 Golf Club Drive
Haughton, LA 71037
ATTN: M. Robin Smith

Stephen K. Lecholop II, Esq.
Rosenthal Pauerstein, Esq.
Sandoloski Agather LLP
755 East Mulberry
Suite 200
San Antonio, TX 78212

Katherine Guidry Douthitt, Esq.
Blanchard Walker O'Quin & Roberts
P.O. Box 1126
Shreveport, Louisiana 71163

4

| | |
|---|---|
| Andrew J. Shaver, Esq.<br>Bradley Arant Boult Cummings LLP<br>1819 Fifth Avenue North<br>Birmingham, AL 35203 | Timothy M. Swanson, Esq.<br>Moye White LLP<br>1400 16th Street<br>Suite 600<br>Denver, CO 80206 |
| Theodore J. Hartl, Esq.<br>Ballard Spahr LLP<br>1225 17th Street<br>Suite 2300<br>Denver, CO 80202-5596 | Adam L. Hirsch, Esq.<br>Davis Graham & Stubbs LLP<br>1550 Seventeenth Street<br>Suite 500<br>Denver, CO 80202 |
| John H. Smith<br>Quitman Tank Solutions, LLC<br>P.O. Box 90<br>Quitman, MS 39355 | |
| Belinda Harrison<br>58 County Road 5033<br>Heidelberg, MS 39439 | |
| Casey C. Breese, Esq.<br>Welborn Sullivan Meck & Tooley, P.C.<br>1125 17th Street<br>Suite 2200 South<br>Denver, CO 80202 | **/s/Vicky Martina**<br>**Vicky Martina**<br>**Kutner Brinen PC** |
| Jeff Carruth, Esq.<br>Weycer Kaplan Pulaski & Zuber, P.C.<br>11 Greenway Plaza<br>Suite 1400<br>Houston, TX 77046 | |
| Michael E. Riddick, Esq.<br>Katherine Guidry Douthill, Esq.<br>Blanchard Walker O'Quin & Roberts, P.C.<br>333 Texas Street<br>Regions Tower<br>Suite 700<br>Shreveport, Louisiana 71101 | |
| Chris Crowley, Esq.<br>Feldmann Nagel Cantafio, PLLC<br>1875 Lawrence Street<br>Suite 730<br>Denver, CO 80202 | |