## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SKLAR EXPLORATION COMPANY, LLC | ) | Case No. 20-12377-EEB |
| EIN: 72-1417930 | ) | |
| | ) | Chapter 11 |
| Debtor-in-Possession. | ) | |
| | ) | |
| | ) | |
| IN RE: | ) | |
| | ) | |
| SKLARCO, LLC | ) | Case No. 20-12380-EEB |
| EIN: 72-1425432 | ) | |
| | ) | Chapter 11 |
| Debtor-in-Possession. | ) | |

**_AD HOC_ COMMITTEE OF WORKING INTEREST OWNERS' REPLY IN SUPPORT OF MOTION TO MODIFY THE AUTOMATIC STAY TO: (A) HOLD A MEETING OF THE WORKING INTEREST OWNERS IN THE BROOKLYN OIL UNITS; (B) TAKE A CONTRACTUALLY AUTHORIZED VOTE TO REMOVE DEBTOR SKLAR EXPLORATION COMPANY, LLC, AS OPERATOR OF THE BROOKLYN OIL UNITS; (C) UPON AN AFFIRMATIVE VOTE TO REMOVE SEC AS OPERATOR IN ORDER TO TAKE ALL STEPS NECESSARY TO EFFECTUATE THE REMOVAL (DOCKET NO. 671)**

**COMES NOW**, the _Ad Hoc_ Committee of Working Interest Owners of Debtors Sklar Exploration Company, LLC, and Sklarco, LLC (the "**_Ad Hoc_ Committee**"), by and through their undersigned counsel, for their Reply (the "**Reply**") in Support of _Motion to Modify the Automatic Stay to: (A) Hold a Meeting of the Working Interest Owners in the Brooklyn Oil Units; (B) Take a Contractually Authorized Vote to Remove Debtor Sklar Exploration Company, LLC, as Operator of the Brooklyn Oil Units; (C) Upon an Affirmative Vote to Remove SEC as Operator in Order to Take all Steps Necessary to Effectuate the Removal_ (Docket No. 671) (the "**Motion**").[1]  In support of the Reply, the _Ad Hoc_ Committee states as follows:

---

[1] Capitalized terms not expressly defined herein shall have the meanings ascribed to them in the Motion.

4827-2975-4068.2

## Reply

As set forth in the Motion, the Working Interest Owners designate a single party to serve as the Unit Operator under the Unit Operating Agreements, who is charged with carrying out Unit Operations on the Unit Area, as provided by the Unit Operating Agreements and as directed and approved by the Working Interest Owners.  The purpose underlying the Unit Operator's actions is to maximize the value of the Working Interest Owners in the Unit Area—not to provide a stream of revenue to operator.  As set forth in the Unit Operating Agreements, the Working Interest Owners are contractually permitted to protect the value of their Working Interests by removing a Unit Operator in whom they have no confidence to fulfill the obligations of the Unit Operator under the Unit Operating Agreements.  When the Working Interest Owners have lost not only confidence in the Unit Operator, but, also trust, the value of the Working Interests are at significant risk of deterioration.  The relationship between Working Interest Owner and Unit Operator, under the Unit Operating Agreements, is akin to the relationship between shareholders and directors, and the vote to remove SEC as the operator in the Brooklyn Oil Unit is a matter of governance expressly contemplated under the Unit Operating Agreements that is not subject to the automatic stay.  Nevertheless, out of an abundance of caution, the *Ad Hoc* Committee filed the Motion so as to not run afoul of the automatic stay.

The Debtors' response to the Motion (the "**Response**") not only misconstrues the relief requested, and the basis therefore, but also contains numerous unsupported factual allegations that were outside the scope of the facts contained in the Motion necessitating this Reply.  SEC's motivations for failing to address the narrow relief requested in the Motion are obvious: (a) SEC needs to obfuscate the simple fact that the Working Interest Owners are contractually authorized to hold a vote to remove SEC as operator *either* now (assuming the Court grants the Motion), *or*

2

the first day after the Debtors' Chapter 11 plan goes effective (assuming the Debtors can even confirm a Chapter 11 plan); and (b) SEC hopes to deflect from its own shortcomings as operator during this eight (8) month old bankruptcy case and inappropriately attribute those shortcomings to certain members of the *Ad Hoc* Committee.  SEC has had ample time since these bankruptcy cases were filed to instill confidence and trust to the Working Interest Owners that it is a capable and prudent operator of the Brooklyn Oil Units.  However, notwithstanding, in the eyes of the *Ad Hoc* Committee, SEC has failed in its duties which has necessitated that request to conduct a vote to remove SEC as operator of the Brooklyn Oil Units.

<u>First</u>, the Debtors fail to address, let alone analyze, that the relief requested is narrowly focused upon the Working Interest Owners' right to hold and take a vote to replace SEC as the Unit Operator under the Unit Operating Agreements.  The Debtors conflate the "at will" nature of the operator-working interest owner relationship under the Unit Operating Agreements with "cause" under section 362(d)(1). To be clear—the Unit Operating Agreements do not require cause for removal, just a vote. Likewise, cause under section 362(d)(1) is satisfied by the mere existence of the contractual right to take that vote. It would be contrary to the clear intent of the parties to the Unit Operating Agreements for Working Interest Owners to first have to prove that SEC was an incompetent operator before they could exercise the very simple (and negotiated) right to vote SEC out at will.  The Motion narrowly requests that the Court authorize the vote to occur to remove SEC as operator; not that the Court remove SEC as operator.  SEC cannot use the shield of the automatic stay to deflect away from its obligations as Unit Operator of the Brooklyn Oil Units and not subject itself to a contractual vote of Working Interest Owners, *i.e.*, if it is going to accept the benefits of being operator during these Chapter 11 cases it must also subject itself to the burdens including going before a vote of the Working Interest Owners.  Additionally, to the extent SEC

believes that it has prudently operated the Brooklyn Oil Units for the benefit of the Working Interest Owners, SEC can make such arguments before and during the vote of Working Interest Owners as it would outside of bankruptcy.  Moreover, as set forth in the Motion, the automatic stay does not apply to the relief requested in the Motion as a matter of governance. Notwithstanding, if the Court determines that the *Ad Hoc* Committee must show SEC's shortcomings as operator as "cause" **before** proceeding to the contractually authorized vote, the *Ad Hoc* Committee is prepared to put on such evidence at a contested hearing before the Court.

Second, without any factual support, the Debtors make numerous allegations that are immaterial as to whether the Working Interest Owners can hold a contractually authorized vote to remove SEC as operator of the Brooklyn Oil Units.  Pruet's operatorship of the North Brooklyn Units, and how it operates such units or its general business, is irrelevant—the Motion pertains to the South Brooklyn Units and the SEC's operatorship under the Unit Operating Agreements.  It is further irrelevant that employees of Pruet and FPCC are members of a study group organized and controlled by SEC (and not the Working Interest Owners) and that they may not have offered any suggestions or recommendations to SEC to improve *its* performance as operator of the Brooklyn Oil Units.[2]  As set forth in the Motion, the Working Interest Owners place their confidence in the Unit Operator, not the other way around, to maximize the value of the Working Interests on the Unit Area.  SEC further alleges that its poor performance with respect to SEC's water injection program "appears to result from geologic and engineering technicalities associated with the underlying reservoir as opposed to failings on SEC's part."  However, in passing on any responsibility as the operator for its poor performance, SEC fails to attach any factual or other

---

[2] Contrary to the assertions of SEC, the members of the study group, including the employees of Pruet and FPCC, offered suggestions to SEC in an effort to determine the issues and problems with the injection program.

4827-2975-4068.2

matter to its Response to support its allegation.[3] Accordingly, the Court should disregard the Debtors' unsupported and immaterial allegations in the Response.

Third, SEC purports to confuse the issue with the Court that the removal of SEC is opposed by certain third parties' whose interests may be affected if the Motion is granted. Specifically, SEC attaches a one (1) page undated letter from Cedar Creek Land & Timber, Inc. ("**Cedar Creek**"), one of the Debtors' royalty holders, which appears related to the appointment of the CRO, rather than a trustee, and is thus not relevant to the Motion. According to the Debtors, Cedar Creek is purportedly the largest royalty holder in the Brooklyn Oil Units. Notwithstanding its purportedly sizeable stake in the Brooklyn Oil Units, Cedar Creek has not formally opposed the Motion on its own let alone even entered an appearance in these Chapter 11 cases. Had Cedar Creek participated in these Chapter 11 cases since April of this year then it would have heard direct testimony from Mr. Howard Sklar that $5.8 million of cash call advances by Working Interest Owners were received by SEC and spent in derogation of the purposes for which the money was advanced.[4] Notwithstanding, no party other than the Debtors opposed the Motion. Such fact cuts against the Debtors' allegation that the relief requested in the Motion harms other creditors or parties in interest. Moreover, the Debtors ignore that the Motion was filed by the *Ad Hoc* Committee which consists of twenty-nine Working Interest Owners in the Brooklyn Oil Units who all support the request to take the vote to remove SEC as operator.[5]

---

[3] SEC assumes that the concerns of the *Ad Hoc* Committee are the results of the injection program. The concerns of the *Ad Hoc* Committee relate to the actions of SEC as Unit Operator and the fulfillment of its obligations under the Unit Operating Agreements.

[4] Moreover, it is difficult to determine whether Cedar Creek has even read the Motion as: (i) the *Ad Hoc* Committee is not requesting appointment of a trustee or conversion of these cases to Chapter 7; and (ii) the CRO has already been appointed. To the extent Cedar Creek opposes the relief requested in the Motion then it should have filed an actual objection. Thus, the undated Cedar Creek letter should be stricken from the Response.

[5] The members of the *Ad Hoc* Committee include Pruet individually and as agent for 25 other working interest owners in the Brooklyn Units as is noted by Exhibit 1 to the *Amended Supplemental Verified Statement pursuant to Rule 2019*

4827-2975-4068.2

Fourth, while the Debtors have not yet filed their Chapter 11 plan, the *Ad Hoc* Committee has learned through both informal discussions with the Debtors' CRO and during the CRO's deposition that the Debtors purportedly cannot propose any reorganization plan that does not include SEC being the operator of the Brooklyn Oil Units.  In fact, the CRO testified that the Brooklyn Oil Unit is a "cornerstone" of the Debtors' emergence from Chapter 11.  An impending vote to remove SEC as operator of the Brooklyn Oil Units, either during the pendency of these Chapter 11 cases or immediately after the effective date of a confirmed plan, raises serious concerns over the feasibility of any reorganization plan that has the Brooklyn Oil Units as its "cornerstone."  *See* 11 U.S.C. 1129(a)(11) ("Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization. . . ."); *In re Padda Hotels, LLC*, 2014 Bankr. LEXIS 525, at \*11 (Bankr. D.N.M. Feb. 7, 2014) ("In determining whether a plan is feasible, the bankruptcy court has an obligation to scrutinize the plan carefully to determine whether it offers a reasonable prospect of success and is workable.").  Thus, any Chapter 11 plan that proposes SEC's operatorship of the Brooklyn Oil Unit being a "cornerstone," in the absence of the Working Interest Owner vote tallying in SEC's favor, is not feasible.  Moreover, it would be a further waste of time and administrative expense, *i.e.*, further professional fees,[6] proposed cure costs under the Unit Operating Agreement and joint operating agreements *etc*., to permit the Debtors to move forward with a reorganization plan with a vote to remove SEC as operator looming post-confirmation.  Given how long this Chapter 11 case has been pending and the lack

---

filed at Document No. 670.  (*See also* Docket No. 721 noting that Fant Energy Limited is a member to the *Ad Hoc* Committee).

[6] The *Ad Hoc* Committee notes that the professional administrative expense claims in these Chapter 11 cases are already significant and will grow even further once a Chapter 11 plan is ultimately filed, negotiated and/or litigated. For instance, excluding the months of November and December where depositions were taken of the CRO and Mr. Howard Sklar, CR3 Partners alone has incurred more than $1,000,000 in professional fees since its appointment on May 21, 2020.  (*See* Docket Nos. 544, 554, 584, 642 and 718).

of progress achieved herein, the Debtors—as fiduciaries to their creditors—must take a pragmatic approach regarding their operatorship of the Brooklyn Oil Units.

The *Ad Hoc* Committee asserts that the Motion should be granted for the reasons stated therein and that the automatic stay be modified for the limited purpose of: (i) calling a meeting amongst the Working Interest Owners in the Brooklyn Oil Units; (ii) taking a vote, in accordance with the Unit Operating Agreements, to remove SEC as operator of the Brooklyn Oil Units; and (iii) depending upon the results of the vote, take all necessary steps to effectuate the removal of SEC as operator.

**[INTENTIONAL PAGE BREAK – SIGNATURE PAGE FOLLOWS]**

4827-2975-4068.2

Dated: December 14, 2020.

Respectfully submitted,

**AD HOC COMMITTEE OF WORKING INTEREST HOLDERS OF SKLAR EXPLORATION COMPANY, LLC, AND SKLARCO, LLC**

By:  */s/Timothy M. Swanson*
Timothy M. Swanson (Colorado No. 47267)
MOYE WHITE LLP
1400 16th Street
6th Floor
Denver, Colorado 80202-1486
Tel: (303) 292-2900
Fax: (303) 292 4510
Tim.Swanson@moyewhite.com
*Counsel to the Ad Hoc Committee of Working Interest Holders of Sklar Exploration Company, LLC, and Sklarco, LLC*

--and--

Craig M. Geno
Law Offices of Craig M. Geno, PLLC
587 Highland Colony Parkway
Ridgeland, Mississippi 39157
Tel: (601) 427-0048
Fax: (601) 427-0050
cmgeno@cmgenolaw.com
*Counsel to the Ad Hoc Committee of Working Interest Holders of Sklar Exploration Company, LLC, and Sklarco, LLC*

4827-2975-4068.2