UNIT AGREEMENT

SOUTHWEST BROOKLYN OIL UNIT

BROOKLYN FIELD

CONECUH AND ESCAMBIA COUNTIES, ALABAMA

THIS AGREEMENT, entered into as of the 1st day of November, 2018, by the parties who have signed the original of this instrument, a counterpart thereof, or other instrument ratifying and agreeing to be bound by the provisions hereof;

WITNESSETH:

WHEREAS, in the interest of private and public welfare, to promote, foster and encourage conservation, to increase the ultimate recovery of oil, gas and associated minerals from the Brooklyn Field, Conecuh and Escambia Counties, Alabama (hereinafter referred to as "said field") to avoid waste, to prevent the drilling of unnecessary wells and to protect the correlative rights of all owners of the interests in said field, it is deemed necessary and desirable to enter into this agreement creating and establishing a unit comprising the Unit Area, under the applicable provisions of the laws of the State of Alabama, and to unitize the Oil and Gas Rights in and to the Unitized Interval in order to conduct Unit Operations as herein provided.

NOW, THEREFORE, in consideration of the premises and of the mutual agreements herein contained, it is agreed as follows:

ARTICLE 1

DEFINITIONS

As used in this agreement, the terms herein contained shall have the following meaning:

1.1   UNIT AREA (sometimes referred to as the "Southwest Brooklyn Oil Unit ") means the lands shown outlined on Exhibit "A" and described as a Unit and by Tracts on Exhibit "B" insofar as said lands relate to the Unitized Interval.

1.2   UNITIZED INTERVAL (sometimes referred to as the "Unitized Formation") means the subsurface portion of the Unit Area (which is within the Smackover Formation) in the interval between the depths of 12,022 feet measured depth (MD) and 12,219 feet measured depth (MD) in the CCL&T 34-14 #1 Well, Permit No. 16696-B, with a surface location 1,083 feet FSL and 1,620

Exhibit

**AHC-1**

EXHIBIT 1
AHC 000001

feet FWL of Section 34, Township 4 North, Range 12 East, Conecuh County, Alabama, as defined by the Platform Express, Array Induction -- GR-SP-Density- Neutron-Sonic log for said well and including those strata underlying the Unit Area which can be correlated therewith, which are in communication therewith, or which are productive extensions thereof.

1.3     UNITIZED SUBSTANCES means all oil, gas, gaseous substances, sulfur contained therein, condensate, distillate, and all associated and constituent liquid or liquefiable substances, other than water and Outside Substances, within or produced from the Unitized Interval.

1.4     WORKING INTEREST means an interest in Unitized Substances by virtue of a lease, operating agreement, fee title or otherwise, including a carried interest, which interest is chargeable with and obligated to pay or bear, either in cash or out of production or otherwise, all or a portion of the cost of drilling, developing, producing and operating the Unitized Interval.

1.5     ROYALTY INTEREST means a right to or interest in any portion of the Unitized Substances or proceeds thereof other than a Working Interest, including but not limited to royalty interests, overriding royalty interests and production payment rights.

1.6     ROYALTY OWNER means a party hereto who owns a Royalty Interest in the Unit Area.

1.7     WORKING INTEREST OWNER means a party hereto who owns a Working Interest in the Unit Area.  The owner of Oil and Gas Rights that are free of lease or other instrument conveying the Working Interest to another shall be regarded as a Working Interest Owner to the extent of seven-eighths (7/8ths) of his interest in Unitized Substances, and as Royalty Owner with respect to his remaining one-eighth (1/8th) interest therein.

1.8     TRACT means each parcel of land described as such and given a tract number in Exhibit "B".

1.9     UNIT OPERATING AGREEMENT means the agreement entitled "Unit Operating Agreement, Southwest Brooklyn Oil Unit, Conecuh and Escambia Counties, Alabama," of the same effective date as the Effective Date of this agreement, and which is entered into by Working Interest Owners who are parties hereto, and any amendment thereof.

1.10    UNIT OPERATOR means the Working Interest Owner or other party designated by Working Interest Owners under the Unit Operating Agreement to conduct all Unit Operations, pursuant to this Agreement and the Unit Operating Agreement.

2

AHC 000002

1.11   TRACT PARTICIPATION means the percentage shown on Exhibit "B" for allocating Unitized Substances to a Tract under this agreement.   Tract Participations were determined as set forth in Article 5.

1.12   UNIT PARTICIPATION of each Working Interest Owner shall mean the sum of the percentages obtained by multiplying such Working Interest Owner's fractional working interest (either cost bearing or net revenue) in each Tract by the Tract Participation of such Tract. When the term Unit Participation is used in reference to the interest of a Working Interest Owner or Owners, it shall be deemed to refer to the cost bearing interest of the owner(s) unless the context clearly indicates that it is intended to refer to the net revenue interest of the owner(s). Unit Participation of a Royalty Interest Owner is the sum of the percentages obtained by multiplying the Royalty Interest of such Royalty Interest Owner in each Tract by the Tract Participation of such Tract.

1.13   OUTSIDE SUBSTANCES means all substances obtained from any source other than the Unitized Interval and which are injected into the Unitized Interval.

1.14   OIL AND GAS RIGHTS means the right to explore, develop and operate lands within the Unit Area for the production of Unitized Substances, or to share in the production so obtained or the proceeds thereof.

1.15   UNIT OPERATIONS means all operations conducted by Working Interest Owners or Unit Operator pursuant to this agreement and the Unit Operating Agreement for or on account of the development and operation of the Unitized Interval for the production of Unitized Substances.

1.16   UNIT EQUIPMENT means all personal property, lease and well equipment, and other facilities and equipment taken over or otherwise acquired for use in Unit Operations pursuant to the Unit Operating Agreement.

1.17   UNIT OIL means all liquid Unitized Substances that are produced by a well and that are saved and sold or delivered for sale upstream of the Well Gas Meter for the well as oil, condensate distillate, and the constituent liquids associated therewith

1.18   UNIT RICH GAS means all Unitized Substances and Outside Substances produced in the form of gaseous substances, including the liquefiable hydrocarbons entrained therein that are separated from free liquids prior to the Well Gas Meter to which the well is connected.

1.19   UNIT EXPENDITURE or UNIT EXPENSE means a cost, expense or indebtedness

3

AHC 000003

incurred by Unit Operator on behalf of Working Interest Owners pursuant to and authorized by this Agreement and the Unit Operating Agreement for or on account of Unit Operations.

1.20   EFFECTIVE DATE means the date that this agreement becomes effective as determined by Article 16 hereof.

1.21   Unless the context otherwise clearly indicates, words used in the singular include the plural, the plural include the singular, and the neuter gender includes the masculine and the feminine.

ARTICLE 2

EXHIBITS

2.1   EXHIBITS.   Attached hereto are the following exhibits which are incorporated herein by reference:

2.1.1   EXHIBIT "A" which is a map that shows the boundary lines of the Unit Area and the Tracts therein.

2.1.2   EXHIBIT "B" which is a schedule that describes the Unit Area, each Tract in the Unit Area and the Tract Participation of each Tract.

2.1.3   EXHIBITS "C-1", "C-2," "C-3," "C-4," "C-5" and "C-6" which are isopach maps showing net porosity feet based on hydrocarbon pore volume.

2.1.4   EXHIBIT "D" which is a schedule showing the computed Tract Participation of each tract based upon the parameters shown thereon.

2.1.5   EXHIBIT "E" which is a schedule showing, as of the date it was prepared, the total Unit Participation of each Working Interest Owner (both cost bearing and net revenue) and Royalty Owner.   Exhibit "E" or a revision thereof, shall not be conclusive as to the information therein, except it may be used as showing the Unit Participations of the Working Interest Owners for purposes of this Agreement until shown to be in error (as the result of a conveyance or otherwise) or revised as herein authorized.

2.2   REFERENCE TO EXHIBITS.   When reference herein is made to an exhibit, the reference is to the Exhibit as originally attached hereto or, if revised, to the latest revision.

2.3   EXHIBITS CONSIDERED CORRECT.   Except as otherwise provided in this Agreement, an exhibit shall be considered to be correct until revised as herein provided.

2.4   ALTERATION OF TRACT PARTICIPATION.   If it subsequently appears that any

4

AHC 000004

mechanical miscalculation or clerical error has been made or that the Tract Participation of any tract within the Unit Area is incorrect because of subsequently discovered data, the Unit Operator shall correct the mistake by revising the Exhibits to conform to the facts. The revision shall not include any re-evaluation of engineering or geological interpretations used in determining Tract Participation. Each such revision of an Exhibit made prior to thirty (30) days after the Effective Date shall be effective as of the Effective Date. Each such revision thereafter made shall be effective at 7:00 a.m. on the first day of the calendar month next following the filing for record of the revised Exhibit or on such other date as may be determined by the Working Interest Owners and set forth in the revised Exhibit.

2.5  FILING REVISED EXHIBIT.  If an exhibit is revised pursuant to this agreement, Unit Operator shall certify and promptly file the revised exhibit for record in the office of the Probate Judge of Conecuh and Escambia Counties, Alabama, and with the State Oil and Gas Board of Alabama.

ARTICLE 3

CREATION AND EFFECT OF UNIT

3.1  OIL AND GAS RIGHTS UNITIZED.  Subject to the provisions of this agreement, all Oil and Gas Rights of Royalty Owners in and to the lands described in Exhibit "B" and all Oil and Gas Rights of Working Interest Owners in and to said lands, are hereby unitized, subject to the approval of the State Oil and Gas Board of Alabama, insofar as the respective Oil and Gas Rights pertain to the Unitized Interval, so that operations may be conducted as if the Unitized Interval had been included in a single lease executed by all Royalty Owners, as Lessors, in favor of all Working Interest Owners, as Lessees, and as if the lease had been subject to all of the provisions of this agreement.

3.2  PERSONAL PROPERTY EXCEPTED.  All lease and well equipment, materials, and other facilities heretofore or hereafter placed by any of the Working Interest Owners on the lands covered hereby shall be deemed to be and shall remain personal property belonging to and may be removed by Working Interest Owners. The rights and interests therein, as among Working Interest Owners, are set forth in the Unit Operating Agreement.

3.3  COSTS AND EXPENSES OF UNIT OPERATIONS.  The costs and expenses of Unit Operations, including prospective investment costs, shall be allocated and charged to each Tract in

5

AHC 000005

the proportion that each Tract shares in Unitized Substances, and shall be paid by the respective Working Interest Owners owning an interest in each such Tract, said allocation and charge being more fully set forth in the Unit Operating Agreement. Without limitation to the rights and remedies afforded Unit Operator and Working Interest Owners as provided by the Unit Operating Agreement, if the full amount of any charge made against a Tract is not paid by the Working Interest Owner or Owners owing the same, then seven-eighths (7/8ths) of the Unitized Substances allocated to such Tract, proportionately reduced to the interest of such Working Interest Owner which has not paid such charges, may be appropriated by the Unit Operator and marketed and sold for the payment of such charge, together with interest thereon at the prime rate designated by Paragraph 1.3.B of Exhibit "F" of the Unit Operating Agreement or the maximum rate allowed by law, whichever is less. A one-eighth (1/8th) part of the Unitized Substances allocated to each Tract shall in all events be regarded as royalty to be distributed to and among or the proceeds thereof paid to the respective owners of royalty, other than overriding royalty or production payments, free and clear of Unit Expenditures and free and clear of any lien therefor. The owner of any overriding royalty, production payment interest, royalty in excess of one-eighth (1/8th) of production, or other interest not primarily responsible for the payment of costs and expenses of Unit Operations shall, to the extent of such payment or deduction from its share, be subrogated to all the rights of the Unit Operator with respect to the interest or interests primarily responsible for such payment. Once the Unit Operator has recovered the full amount of any such charge, the Unit Operator will continue to appropriate, market and sell the Unitized Substances attributable to the interest of such delinquent Working Interest Owner or Owners and will distribute the proceeds therefrom to the Owner or Owners of overriding royalty, production payment interest, royalty in excess of one-eighth (1/8th) of production or other interests not primarily responsible for the payment of costs and expenses of Unit Operations, until each of such Owner has received its respective allocation of proceeds together with interest thereon at the prime rate designated by Paragraph 1.3.B of Exhibit "F" of the Unit Operating Agreement (or the maximum rate allowed by law, whichever is less) from the sale of Unitized Substances.

3.4  PRIOR UNITS PRESERVED AS TRACTS. Except as otherwise noted below in this paragraph, production units of approximately 160 acres, included within the Unit Area, established in accordance with the Special Field Rules for the Brooklyn Field by the State Oil and Gas Board of

AHC 000006

Alabama constitute Tracts hereunder and are delineated and numbered as such on Exhibit "A;" provided, however, that:  1) the production unit that includes the CCLT 33-6 No.1 Well and the CCLT 33-4 No.1 Well (being the NW 1/4 of Section 33, T4N, R12E) was divided into 2 separate tracts, north half and south half, with only the south half of that unit and the 33-6 No.1 Well being included with the Unit Area; and 2) if the producing well on a production unit is not producing from the Unitized Interval or if all wells on the unit capable of producing from the Unitized Interval have been plugged and abandoned, then the Tract includes only the portion of the unit underlain by the  Unitized Interval (as reflected on Exhibit C) together with such additional, commonly owned area as is shown on Exhibits A and C.  The production allocated to each portion of each Tract hereunder shall be considered as produced from each portion of such Tract by a well drilled thereon and shall have the same legal force and effect.

3.5    CONTINUATION OF LEASES AND TERM INTERESTS. Production  from  any part of the Unitized Formation and Unit Operations on any Tract shall be considered, except for the purpose of determining payments to Royalty Owners, as production from or operations upon each Tract, and such production and/or operations shall continue in effect each lease or term mineral or royalty interest as to all lands and formations covered thereby just as if such operations were conducted on and as if a well were producing from each Tract.  It is agreed that each lease shall remain in full force and effect from the date of execution hereof until the Effective Date, and thereafter in accordance with its terms and this Agreement.

3.6    TITLES UNAFFECTED BY UNITIZATION.  Nothing herein shall be construed to result in the transfer of title to Oil and Gas Rights by any party hereto to any other party or to Unit Operator.

3.7    INJECTION RIGHTS.  Royalty Owners hereby grant Working Interest Owners the right to inject into the Unitized Formation any substances, including Unitized Substances and Outside Substances, in whatever amounts Working Interest Owners deem expedient for Unit Operations, together with the right to drill, use and maintain injection wells on the Unit Area, and to use for injection purposes any non-producing or abandoned wells or dry holes and any producing wells completed in the Unitized Interval.

ARTICLE 4

PLAN OF OPERATIONS

7

AHC 000007

4.1  UNIT OPERATOR.  Working Interest Owners are, as of the Effective Date of this agreement, entering into the Unit Operating Agreement designating Sklar Exploration Company L.L.C., a Louisiana limited liability company, as initial Unit Operator.  Unit Operator shall have the exclusive right to conduct Unit Operations.  The operations shall conform to the provisions of the Unit Agreement and the Unit Operating Agreement.  If there is any conflict between such agreements, this Agreement shall govern.

4.2  OPERATING METHODS.  Working Interest Owners shall, with diligence and in accordance with good engineering and production practices, engage in re-pressuring and/or water injection operations and maintain a rate of production to the end that the quantity of Unitized Substances ultimately recovered shall be maximized and waste prevented.

4.3  CHANGE OF OPERATING METHODS.  Nothing herein shall prevent Working Interest Owners from discontinuing or changing in whole or in part any method of operations which, in their opinion, is no longer in accord with good engineering or production practices.  Other methods of operation may be conducted or changes may be made by Working Interest Owners from time to time if determined by them to be feasible, necessary or desirable to increase the ultimate recovery of Unitized Substances, subject to any necessary approval of regulatory authorities.

ARTICLE 5

TRACT PARTICIPATION

5.1  TRACT PARTICIPATION.  Each Tract shall participate in the Unitized Substances produced from the Unit Area in accordance with the Tract Participation allocated thereto as set forth in Exhibit "B."  The Tract Participation of each Tract in the Unit Area has been calculated as shown on Exhibit "D" by taking into consideration pertinent geological and engineering factors and utilizing a two part formula consisting of 50% hydrocarbon pore volume and 50% productivity, both determined as follows:

The aerial distribution of hydrocarbon pore volume ("HCPV") was established by mapping the net HCPV porosity feet ("HCFT") for the Smackover Zones in each well.  For purposes of the Southwest Brooklyn Oil Unit, HCFT means the vertical feet of hydrocarbon saturated pore space based on core porosity data, except for intervals of the Smackover Formation where core samples are not available.  Where core samples are not available, petrophysical log porosity data was used to determine HCFT for each well.  The Southwest Brooklyn Oil Unit HCFT determinations were

8

AHC 000008

made based on porosity cutoff factors for netting porosity-feet, which is porosity equal to, or greater than 10% for Smackover Zone 1 and 6% for Smackover Zones 2-6, and determinations of hydrocarbon-saturated porosity-feet, in measured depth (HCFT- MD) were made where each qualifying porosity-foot must have an oil saturation (So) of at least 55% (Maximum Sw = 45, So=1-Sw) as determined by the Archie equation using the resistivity (Rt ) as measured from the petrophysical logs for each foot, using a water resistivity (Rw) of 0.017. The HCFT- MD value for each Smackover Zone in each well was corrected for true vertical depth (TVD) using a TVD factor based on each well's borehole survey, and the HCFT-MD value was converted for each Smackover Zone of each well as HCFT. The acreage attributable to each HCFT contour within each Unit Tract was determined, and the HCPV was calculated for each Smackover Zone for each Tract. The Tract's HCPV for each Smackover Zone was posted and summed as the HCPV totals in acre-feet for each Tract. The HCPV totals for each Tract, were summed to determine the total HCPV for the Unit such that each Tract's percentage of the total HCPV equals the Tract's HCPV Tract Factor, which is 50% of the allocation formula.

The other 50% of the allocation formula is a productivity factor, with productivity based equally on (a) each Tract's maximum oil production during any consecutive six-month period and the gas production occurring within that same consecutive six-month period (the "Best Six Months") and (b) each Tract's oil and gas production during the six-month period from January 2018 through June 2018 (the "Recent Six Months"), such that the Best Six Months factor shall be 25% of the allocation formula and the Recent Six Months factor shall be 25% of the allocation formula. Production data of both oil and gas was tabulated, and this data was evaluated to determine, for each Tract, the Best Six Months production and the Recent Six Months production; provided, however, that if more than one well located on a Tract had produced from the Unitized Formation, only the well having the highest historical production data for a consecutive six-month period was utilized in calculating the Tract's Best Six Months half of the total productivity factor. The total gas production during each relevant period, for each Tract, was converted to barrels of oil equivalent (BOE) using a 13.6 Mcf/bbl BOE factor, and added to the total oil production during that period, providing either the Best Six Months production or the Recent Six Months production for each Tract, as the case may be. The Best Six Months production from each Tract determined in this manner was then divided by the total of all Tracts' Best Six Months production to determine

9

AHC 000009

each Tract's Best Six Months half of the total productivity factor, while the Recent Six Months production from each Tract was then divided by the total of all Tracts' Recent Six Months production to determine each Tract's Recent Six Months half of the total productivity factor. Notwithstanding the foregoing, the productivity factor for Tract 1 was determined based on production from the Cedar Creek Land & Timber 33-6 well (with the Recent Six Months production based on the average daily production rate for the days that this well was in production applied against the entire six months) and the production numbers were divided by 2 prior to calculating the two halves of the productivity factor because only the South half of the current production unit for that well is included in the Southwest Brooklyn Unit, so that the Best Six Months production was 38,826 BOE and the Recent Six Months production was 19,370 BOE.

The above allocation formula is the formula specifically approved by the State Oil and Gas Board in its Certification of Order dated September 28, 2018, entered in Docket Nos. 4-4-18-01, 4-4-18-02, 4-4-18-03, 4-4-18-04, 4-4-18-05, 4-4-18-06, 4-4-18-07 and 4-4-18-08.

## ARTICLE 6
### ALLOCATION OF UNITIZED SUBSTANCES AND OUTSIDE SUBSTANCES

6.1 ALLOCATION TO TRACTS AND WORKING INTEREST OWNERS. All Unitized Substances produced and saved shall be allocated to the several Tracts in accordance with the respective Tract Participation effective during the period that the Unitized Substances were produced, subject, however, to the other provisions of this Article 6. The amount of Unitized Substances allocated to each Tract, regardless of whether it is more or less than the actual production of Unitized Substances from the well or wells, if any, on such Tract shall be deemed for all purposes to have been produced from such Tract. All Outside Substances produced and saved shall be allocated to the several Working Interest Owners in accordance with their Unit Participation effective during the period that the Outside Substances were produced subject, however, to the other provisions of this Article 6.

6.2 DISTRIBUTION WITHIN TRACTS. If any Oil and Gas Rights in a Tract are now or hereafter become divided and owned in severalty as to different parts of the Tract, the owners of the divided interests, in the absence of an agreement providing for a different division, shall share in the Unitized Substances allocated to the Tract, or in the proceeds thereof, in proportion to the surface acreage of their respective parts of the Tract. Except as otherwise provided elsewhere in this

10

AHC 000010

Agreement, the Unitized Substances allocated to each Tract or portion thereof shall be distributed among, or accounted for to, the parties entitled to share in the production from such Tract or portion thereof in the same manner, in the same proportions and upon the same conditions as they would have participated and shared in production from such Tract or such portion thereof, or in the proceeds thereof, had this Agreement not been entered into, and with the same legal effect.

6.3    TAKING OF PRODUCED UNITIZED SUBSTANCES AND OUTSIDE SUBSTANCES IN KIND.  The Unitized Substances allocated to each Tract shall be delivered to the respective parties entitled thereto by virtue of the ownership of Oil and Gas Rights therein or to the buyers of such Unitized Substances for the account of such parties; and the Outside Substances allocated to each Working Interest Owner shall be delivered to such owner or the buyer (if any) of Outside Substances for the account of such owner (subject, however, to the provisions of the Unit Operating Agreement).  Each Working Interest Owner at any time and from time to time may appoint a designee to physically receive its share of Unitized Substances, Outside Substances or revenue derived therefrom and delivery of such Unitized Substances, Outside Substance or revenue to such designee shall have the same effect as if the same had been delivered to the Working Interest Owner that made the designation.  If a Royalty Owner has the right to take in kind a share of Unitized Substances and fails to do so, the Working Interest Owner whose Working Interest is subject to such Royalty Interest shall be entitled to take in kind such share of the Unitized Substances.

If there is any difference in the quality of Unitized Substances or Outside Substances produced from different wells in the Unit Area and if that difference affects the value of such substances, Unit Operator shall cooperate with the parties (if any) taking such substances in kind to assure that the Unitized Substances or Outside Substances delivered to those parties are balanced both as to volume and as to quality. Parties taking Unitized Substances or Outside Substances in kind shall have the right to construct, maintain, and operate within the Unit Area all necessary facilities for that purpose, provided that they are constructed, maintained and operated so as not to interfere with Unit Operations.  Any extra expenditures incurred by Unit Operator by reason of the delivery in kind of any portion of the Unitized Substances and/or Outside Substances  shall be borne by the party taking such substances in kind.

6.4  FAILURE TO TAKE IN KIND.  If any party having a right to take in kind fails to take

11

AHC 000011

in kind or separately dispose of its share of Unitized Substances or Outside Substances currently as and when produced, the Unit Operator shall have the right but not the obligation to dispose of such production in any reasonable manner (i) for such reasonable period of time as is consistent with the minimum needs of the industry under the particular circumstances, but in no event for a period in excess of one year, and (ii) at not less than the best price offered to Unit Operator for such production (subject to any transportation charges for transporting the same after it leaves Unit Equipment and any charges for treating, processing, marketing or the like), and the account of such party shall be charged therewith as having received the same.  The net proceeds, if any, of the Unitized Substances or Outside Substances so disposed of by the Unit Operator shall be paid to the party for whose account the same is so disposed under the provisions of applicable division orders.

6.5  RESPONSIBILITY FOR ROYALTY SETTLEMENTS.  Any party receiving in kind or separately disposing of all or part of the Unitized Substances allocated to any Tract or receiving the proceeds therefrom shall be responsible for the payment thereof to the persons entitled thereto, and shall indemnify all parties hereto, including Unit Operator, against any liability for all royalties, overriding royalties, production payments, severance tax and all other payments chargeable against or payable out of such Unitized Substances or the proceeds therefrom. In the event a party fails to take and dispose of its part of Unitized Substances in kind, and subject to the provisions of Article 6.4, Unit Operator or the purchaser of unitized substances will make settlement for the proceeds of such production under its Division Order.

6.6  ROYALTY ON OUTSIDE SUBSTANCES.  There shall be no royalty payable on Outside Substances.  If any Outside Substances injected into the Unitized Interval consist of liquefied petroleum hydrocarbons or natural gases, and if the Unitized Substances subsequently produced contain such gases or hydrocarbons as determined by fractional analysis or other appropriate tests, the Working Interest Owners shall have the right to recover such contained gases or hydrocarbons, or their equivalent value from such Unitized Substance, without payment of royalty thereon.  If any Outside Substances of value are injected into the Unitized Interval, and such Outside Substances cannot be distinguished from Unitized Substances, then seventy-five percent (75%) of any like substances contained in Unitized Substances subsequently produced and sold, or used for other than Unit Operations, shall be deemed to be Outside Substances until the aggregate of said seventy-five percent (75%) equals the accumulated volume of such Outside Substances

12

AHC 000012

injected into the Unitized Interval, and no payments shall be due or payable to Royalty Owners on such Outside Substances.

6.7    PRODUCED OUTSIDE SUBSTANCES WITH NO VALUE.    Anything herein to the contrary notwithstanding, if any Outside Substance produced in conjunction with Unitized Substances has no value and if that substance can be separated from the Unitized Substances by the Unit Operator, then with the approval of the Working Interest Owners, the Unit Operator shall at Unit Expense separate and re-inject or dispose of such Outside Substance.

ARTICLE 7

PRODUCTION AS OF THE EFFECTIVE DATE

7.1  OIL IN LEASE TANKS.  Unit Operator shall gauge all lease and other tanks within the Unit Area to ascertain the amount of merchantable oil or other liquid hydrocarbons produced from the Unitized Interval in such tanks, above the pipe line connections, as of 7:00 a.m. on the Effective Date hereof.  All such oil shall remain the property of the parties entitled thereto the same as if the unit had not been formed.  Any such oil not promptly removed may be sold by the Unit Operator for the account of the parties entitled thereto, subject to the payment of all royalties, overriding royalties, production payments, severance tax and all other payments under the provisions of the applicable lease or other contracts.

ARTICLE 8

USE OF UNITIZED SUBSTANCES AND ROYALTY SETTLEMENTS

8.1  USE OF UNITIZED SUBSTANCES.  Working Interest Owners may use or consume as much of the Unitized Substances as they deem appropriate for the operation and development of the Unitized Interval including, but not limited to, the injection thereof into the Unitized Interval. No royalty, overriding royalty, production or severance tax or other payments shall be payable on account of Unitized Substances used, unavoidably lost or consumed in Unit Operations.

8.2  ROYALTY SETTLEMENT.  Unit Operator is hereby authorized to deliver in kind to Royalty Owners the amount of Unitized Substances to which they are entitled under the provisions of their lease or other contract and to deduct such amounts from the share of each Working Interest Owner responsible therefor.  Settlement for Royalty Interest not taken in kind shall be made by the Working Interest Owners in each Tract responsible therefor under existing contracts, laws and regulations, in accordance with the provisions of Article 6 hereof.

13

AHC 000013

ARTICLE 9

TITLES

9.1 WORKING INTEREST TITLES. If title to a Working Interest fails, the rights and obligations of Working Interest Owners by reason of the failure of title shall be governed by the Unit Operating Agreement.

9.2 ROYALTY OWNER TITLES. If title to a Royalty Interest fails, the party whose title failed shall not be entitled to share hereunder with respect to such interest.

9.3 PRODUCTION WHERE TITLE IS IN DISPUTE. If the title or right of any party claiming the right to receive in kind all or any portion of the Unitized Substances allocated to a Tract is in dispute, Unit Operator shall either:

(a)    require that the party to whom such Unitized Substances are delivered or to whom the proceeds thereof are paid, furnish security for the proper accounting therefor to the rightful owner if the title or right of such party fails in whole or in part; or

(b)    withhold and market the portion of Unitized Substances with respect to which title or rights is in dispute, and withhold the proceeds thereof with such interest thereon as may be required under applicable laws of the State of Alabama until such time as the title or right thereto is established by a final judgment of a court of competent jurisdiction or otherwise to the satisfaction of the Working Interest Owners, whereupon the proceeds so withheld shall be paid to the party rightfully entitled thereto.

9.4 PAYMENT OF TAXES TO PROTECT TITLE. If any taxes are not paid when due by or for any owner of surface rights to lands within the Unit Area, or severed mineral interests or Royalty Interests in such lands, or lands outside the Unit Area on which Unit Equipment is located, Unit Operator may, at any time prior to tax sale, or expiration of period of redemption after tax sale, pay the tax and redeem or purchase such rights, interests or property. Any such payment shall be a Unit Expenditure. Unit Operator shall, if possible, withhold from any proceeds derived from the sale of Unitized Substances otherwise due any delinquent taxpayer an amount sufficient to defray the costs of such payment, such withholding to be credited to Working Interest Owners. Such

14

AHC 000014

withholding shall be without prejudice to any other remedy available to Unit Operator or Working Interest Owners.

9.5   UNDERLYING AGREEMENTS.   Nothing contained herein shall be construed as altering or impairing the provisions of any leases or other agreements with reference to the proportionate reduction of royalties, overriding royalties, payments out of production, and other obligations, and irrespective of the provisions of any such leases and other agreements, it being understood and agreed that in the event any Royalty Owner or Working Interest Owner owns less than the entirety of the interest or interests claimed by or certified to him in a division order, transfer order, or other agreement, with reference to any Tract, all payments to such party shall be reduced to the proportionate interest actually owned by him in such Tract.

ARTICLE 10

EASEMENTS OR USE OF SURFACE

10.   GRANT OF EASEMENTS.   The parties hereto, to the extent of their rights and interests, hereby grant to Working Interest Owners the right to use as much of the surface of the land within the Unit Area as may reasonably be necessary for Unit Operations and for transportation of Unitized and Outside Substances.

10.2   USE OF WATER.   Working Interest Owners shall have free use of water from the Unit Area for Unit Operations except water from any domestic water well, commercial lake, pond, or irrigation ditch of a Surface Owner.

10.3   SURFACE DAMAGES.   Working Interest Owners shall pay the rightful owner for damages to growing crops, timber, fences, improvements, and structures on the Unit Area that result from Unit Operations.

ARTICLE 11

ENLARGEMENT OF UNIT AREA

11.1   ENLARGEMENT OF UNIT AREA.   The Unit Area may, with the approval of the State Oil and Gas Board in accordance with Section 9-17-85 of the Code of Alabama (1975), be enlarged from time to time to include additional acreage reasonably proved to be productive from the Unitized Interval upon the written agreement to the enlargement and ratification of this Agreement and the Unit Operating Agreement by the Working Interest Owners owning sixty-six and two-thirds percent (66 2/3%) in interest, as costs are shared, in the area to be added, and the

15

AHC 000015

written agreement to the enlargement and ratification of this Agreement by the Royalty Owners owning sixty-six and two-thirds percent (66 2/3%) in interest in the area to be added, all subject to the following:

11.1.1   As provided in Section 9-17-85 of the Code of Alabama (1975), the portion of Unitized Substances from the Unit Area as enlarged to be allocated to the added area shall be based on the relative contribution which such added area is expected to make, during the remaining course of Unit Operations, and the Unitized Substances so allocated to the added area shall be allocated to the Tracts therein on the basis of the relative contribution of each such Tract and, as to the area added, the Effective Date shall be the effective date of such enlargement.

11.1.2   The remaining portion of the Unitized Substances from the Unit Area as enlarged shall be allocated among the Tracts within the previously established Unit Area in the same proportions as elsewhere herein provided.

11.1.3   The effective date of any enlargement of the Unit Area shall be 7:00 a.m. on the first day of the calendar month following the date on which the order of the State Oil and Gas Board of Alabama, after notice and hearing, approves the enlargement and finds that the enlargement has been agreed to in compliance with the requirements of Section 9-17-85(b)(2) of the Code of Alabama (1975), as amended.

11.2   NO RETROACTIVE ALLOCATION OF EXPENSES OR PRODUCTION.  There shall be no retroactive allocation or adjustment of Unit Expenditures or of interests in the Unitized Substances produced, or the proceeds thereof, by reason of an enlargement of the Unit Area; provided, however, this limitation shall not prevent an adjustment of investment among the Working Interest Owners pursuant to the Unit Operating Agreement.

11.3   DETERMINATION OF TRACT PARTICIPATION AND REVISION OF EXHIBITS.  The Unit Operator shall determine the Tract Participation of each Tract within the Unit Area as enlarged and upon approval by Working Interest Owners, revise Exhibits "A", "B", "C-1," "C-2," "C-3," "C-4," "C-5," "C-6," "D" and "E" accordingly and file for record the revised Exhibits with the State Oil and Gas Board of Alabama and in the office of the Probate Judge of Conecuh and Escambia Counties, Alabama.

ARTICLE 12

CHANGE OF TITLE

16

AHC 000016

12.1  COVENANT RUNNING WITH THE LAND.  This agreement shall extend to, be binding upon and inure to the benefit of the respective heirs, devisees, legal representatives, successors and assigns of the parties hereto, and shall constitute a covenant running with the lands, leases and interests covered hereby.

12.2  NOTICE OF TRANSFER.  Any conveyance of all or any part of any interest owned by any party hereto with respect to any Tract shall be made expressly subject to this Agreement.  No change of title shall be binding upon the Unit Operator, or upon any party hereto other than the party so transferring, until the first day of the calendar month next succeeding the date of receipt by Unit Operator of a photocopy or a certified copy of the recorded instrument evidencing such change in ownership.

12.3  WAIVER OF RIGHTS TO PARTITION.  Each party hereto covenants that, during the existence of this Agreement, it will not resort to any action to partition the Unitized Interval within the Unit Area or the Unit Equipment, and to that extent waives the benefits of all laws authorizing such partition.

ARTICLE 13

RELATIONSHIP OF PARTIES

13.1  NO PARTNERSHIP.  The duties, obligations and liabilities of the parties hereto are intended to be several and not joint or collective.  This Agreement is not intended to create, and shall not be construed to create, an association or trust, or to impose a partnership duty, obligation or liability with regard to any one or more of the parties hereto.  Each party hereto shall be individually responsible for its own obligations as herein provided.

13.2  NO SHARING OF MARKET.  This Agreement is not intended to provide, and shall not be construed to provide, directly or indirectly, for any cooperative or joint sale or marketing of Unitized Substances.

13.3  ROYALTY OWNERS FREE OF COSTS.  Subject to the provisions of Article 3.3 hereof, this Agreement is not intended to impose, and shall not be construed to impose, upon any Royalty Owner any obligation to pay for Unit Expenditures unless such Royalty Owner is otherwise so obligated.

13.4  INFORMATION TO ROYALTY OWNERS.  Each Royalty Owner shall be entitled to all information in possession of Unit Operator to which such Royalty Owner is entitled by an

17

AHC 000017

existing agreement with any Working Interest Owner.

## ARTICLE 14

### LAWS AND REGULATIONS

14.1  LAWS AND REGULATIONS.  This agreement shall be subject to the valid rules, regulations and orders of the State Oil and Gas Board of Alabama, and to all other applicable Federal, State and municipal laws, rules, regulations and orders.

## ARTICLE 15

### FORCE MAJEURE

15.1  FORCE MAJEURE.  All obligations imposed by this Agreement on each party, except for the payment of money, shall be suspended while compliance is prevented, in whole or in part, by a strike, fire, war, civil disturbance, explosion, act of God, by Federal, State or municipal laws; by any rules, regulations, or order of a governmental agency; by inability to secure materials; or by any other cause or causes beyond reasonable control of the party.  No party shall be required against its will to adjust or settle any labor dispute.  Neither this Agreement nor any lease or other instrument subject thereto shall be terminated by reason of suspension of Unit Operations due to any one or more of the causes set forth in this Article.

## ARTICLE 16

### EFFECTIVE DATE

16.1  EFFECTIVE DATE.  This Agreement shall become binding upon all parties who execute or ratify it as of the date of execution or ratification by such party and shall become effective notwithstanding the fact that one or more of the Working Interest Owners or one or more of the Royalty Owners shall fail or refuse to execute or ratify this Agreement when the conditions for effectiveness have been met as follows:  (1) when the same has been executed or ratified by parties who own of record legal title to at least an undivided sixty-six and two-thirds percent (66 2/3%) in interest (calculated using the cost bearing Unit Participations of the Working Interest Owners) of the Working Interest in the total Unit Area and by parties who own of record legal title to at least sixty-six and two-thirds percent (66 2/3%) in interest (calculated using the allocation formula) of the Royalty Interest in the total Unit Area (for the purpose of this provision, with respect to an interest which is encumbered of record with a mortgage or deed of trust, both the grantor and grantee therein shall be considered as the record owner of legal title thereto, except that

18

AHC 000018

when the instrument gives the grantor in such mortgage or deed of trust the right to execute a Unit Agreement, the grantor shall be deemed the record owner); and (2) when an order has been issued by the State Oil and Gas Board of Alabama approving Unit Operation of the Unit Area in accordance with the terms of this Agreement and the Unit Operating Agreement. The Effective Date of the Unit shall be as specified in the order of the State Oil and Gas Board of Alabama. If, however, this Agreement does not become effective on or before March 24, 2019, then this Agreement shall _ipso facto_ terminate and thereafter be of no further force and effect unless prior thereto at least two Working Interest Owners owning a combined Unit Participation of at least fifty percent (50%) (calculated using the allocation formula) who have become parties to this Agreement have decided to extend said termination date for a period not to exceed one (1) year. If said termination date is extended and this Agreement does not become effective on or before said extended termination date, this Agreement shall _ipso facto_ terminate on said extended termination date, and thereafter be of no further force or effect. For the purpose of this article, and except as hereinabove specifically provided in Section 16.1, ownership shall be computed on the basis of the Tract Participations set forth in Exhibit "B."

16.2   CERTIFICATE OF EFFECTIVENESS. Unit Operator shall file for record in Conecuh and Escambia Counties, Alabama, a Certificate to the effect that this Agreement has become effective according to its terms and stating further the Effective Date.

ARTICLE 17

TERM

17.1   TERM. The term of this Agreement shall be for the time that Unitized Substances are produced or Unit Operations are conducted without a cessation of more than ninety (90) consecutive days, unless sooner terminated by Working Interest Owners in the manner herein provided.

17.2   TERMINATION BY WORKING INTEREST OWNERS. Subject to approval by the State Oil and Gas Board after notice and a hearing, this Agreement may be terminated by Working Interest Owners having a combined Unit Participation (cost bearing) of at least sixty-six and two-thirds percent (66 2/3%) whenever such Working Interest Owners determine that Unit Operations are no longer profitable or feasible.

17.3   EFFECT OF TERMINATION. Upon termination of this Agreement, the further

19

AHC 000019

development and operation of the Unitized Interval as a Unit shall be abandoned; Unit Operations shall cease; the parties' rights in and to the Unitized Substances and Outside Substances resulting from or created by this Agreement or any order of the State Oil and Gas Board approving this Agreement shall cease, with the rights to own and/or capture oil, gas and other minerals in the Unitized Interval thereafter belonging to the persons or entities who would have had those rights if this Unit had never been formed (subject, however, to the provisions of the last sentence or this paragraph); and the Tracts comprising the Unit Area shall continue to exist as separate tracts subject to the laws, rules and regulations of the State of Alabama.  Each oil and gas lease and other agreement covering lands within the Unit Area shall remain in force for sixty (60) days after the date on which this Agreement terminates, and for such further period as is provided by the lease or other agreement.

17.4  CERTIFICATE OF TERMINATION.  Unit Operator, upon decision being reached to terminate this Agreement, shall immediately file for record in the office or offices where a counterpart of this Agreement is recorded, a certificate to the effect that this Agreement has been terminated according to its terms and stating further the termination date.

17.5  SALVAGING EQUIPMENT UPON TERMINATION.  If not otherwise granted by the leases or other instruments affecting each Tract unitized under this Agreement, Royalty Owners hereby grant Working Interest Owners a period of one (1) year after the date of termination of this Agreement within which to salvage and remove Unit Equipment.

ARTICLE 18

EXECUTION

18.1  ORIGINAL, COUNTERPART, OR OTHER INSTRUMENT.  An owner of Oil and Gas Rights may become a party to this Agreement by signing the original of this instrument, a counterpart thereof, or other instrument ratifying and agreeing to be bound by the provisions hereof. The signing of any such instrument shall have the same effect as if all the parties had signed the same instrument.  All signature pages to this Agreement or counterparts hereof that are executed by Owners of Oil and Gas Rights may be attached to one copy of this Agreement.

18.2  JOINDER IN DUAL CAPACITY.  Execution as herein provided by any party as either a Working Interest Owner or a Royalty Owner shall commit all interests that may be owned or controlled by such party.

20

AHC 000020

18.3  APPROVAL OF UNIT OPERATING AGREEMENT.  Joinder herein shall constitute approval of the Unit Operating Agreement.

## ARTICLE 19

### DETERMINATIONS BY WORKING INTEREST OWNERS

19.1   DETERMINATIONS BY WORKING INTEREST OWNERS. All decisions, determinations, or approvals by Working Interest Owners hereunder shall be made pursuant to the voting procedure of the Unit Operating Agreement, unless otherwise provided herein.

## ARTICLE 20

### GENERAL

20.1   AMENDMENTS AFFECTING WORKING INTEREST OWNERS.   Unless otherwise provided to the contrary elsewhere herein or in the Unit Operating Agreement, amendments hereto or to the Unit Operating Agreement relating wholly to Working Interest Owners may be made if signed or ratified by Working Interest Owners having a combined Unit Participation (cost bearing) of at least sixty-six and two thirds percent (66 2/3%) and approved by the State Oil and Gas Board.

20.2  ACTION BY WORKING INTEREST OWNERS. Except as otherwise provided in this Agreement, any action or approval required by Working Interest Owners hereunder shall be in accordance with the provisions of the Unit Operating Agreement.

20.3   SEVERABILITY OF PROVISIONS. The provisions of this Agreement are severable and if any section, sentence, clause or part thereof is held to be invalid for any reason, such invalidity shall  not be construed to affect the validity of the remaining provisions of this Agreement.

## ARTICLE 21

### SUCCESSORS AND ASSIGNS

21.1   SUCCESSORS AND ASSIGNS. This Agreement shall extend to, be binding upon, and inure to the benefit of the Parties hereto and their respective heirs, devisees, legal representatives, successors, and assigns, and shall constitute a covenant running with the lands, leases, and interests covered

ENTERED INTO as of the day and year first above written.

[SIGNATURE PAGES FOLLOW]

21

AHC 000021

UNIT AGREEMENT
SOUTHWEST BRROKLYN OIL UNIT
BRROKLYN FIELD
CONECUH AND ESCMABIA COUNTIES, ALABAMA

UNIT OPERATOR

SKLAR EXPLORATION COMPANY L.L.C.

ATTEST:

By: _____
Its: _____

WORKING INTEREST OWNERS

*[Individual]*

ATTEST                     SIGNATURE                     DATE

_____        _____        _____

*[Trustee]*

ATTEST                     SIGNATURE                     DATE

_____        _____        _____

As Trustee of the following trust:

*[Legal entity]*          ENTITY NAME:

                          Sklarco LLC

ATTEST

By: _____
Its: _____      DATE  11-6-18

23

AHC 000022

<u>ROYALTY AND OVERRIDING ROYALTY OWNERS</u>

*[Individual]*

| ATTEST | SIGNATURE | DATE |
|--------|-----------|------|
| _____ | _____ | _____ |

*[Trustee]*

| ATTEST | SIGNATURE | DATE |
|--------|-----------|------|
| _____ | _____ | _____ |

As Trustee of the following trust:

*[Legal entity]*        ENTITY NAME:

ATTEST        _____

_____        DATE

By_____

Its_____        _____

AHC 000023



**Southwest Brooklyn Oil Unit, Tract Participation Schedule**

(50% HCPV + 25% Best Six Months Productivity + 25% January - June 2018 Productivity)

| Tract | Well or Tract Name | Permit No. | Location | Description | Tract Factor |
|---|---|---|---|---|---|
| 1 | CCL&T 33-8 | 16685 | NW 33-4N-12E | S/2 of NW/4 of Sec. 33-4N-R12, Conecuh County | 0.04569140 |
| 2 | Grady 34-8 | 16673 | NE 34-4N-12E | NE/4 of Sec. 34-4N-R12E, Conecuh County | 0.04906020 |
| 3 | CCL&T 35-5 | 16714-B | NW 35-4N-12E | NW/4 of Sec. 34-4N-R12E, Conecuh County | 0.07831395 |
| 4 | CCL&T 32-11 | 16956 | SW 32-4N-12E | SW/4 of Sec. 32-4N-12E, Conecuh County | 0.02731026 |
| 5 | CCL&T 32-9 | 16809 | SE 32-4N-12E | SE/4 of Sec. 32-4N-12E, Conecuh County | 0.00268983 |
| 6 | CCL&T 33-12 | 16957 | SW 33-4N-12E | SW/4 of Sec. 33-4N-12E, Conecuh County | 0.00268983 |
| 7 | CCL&T 33-10 | 16686 | SE 33-4N-12E | SE/4 of Sec. 33-4N-12E, Conecuh County | 0.04518380 |
| 8 | CCL&T 34-14 | 16656-B | SW 34-4N-12E | SW/4 of Sec. 34-4N-12E, Conecuh County | 0.05500477 |
| 9 | Grady 34-10 | 16709 | SE 34-4N-12E | SE/4 of Sec. 34-4N-12E, Conecuh County | 0.05636127 |
| 10 | CCL&T 35-11 | 16572-B | SW 35-4N-12E | SW/4 of Sec. 35-4N-12E, Conecuh County | 0.00724620 |
| 11 | CCL&T 35-10 | 16572 | SE 35-4N-12E | SE/4 of Sec. 35-4N-12E, Conecuh County | 0.10049986 |
| 12 | CCL&T 4-2 | 16729-B | NE 4-3N-12E | NE/4 of Sec. 4-3N-12E, Escambia County | 0.05975673 |
| 13 | CCL&T 3-4 | 16727 | NW 3-3N-12E | NW/4 of Sec. 3-3N-12E, Escambia County | 0.04519290 |
| 14 | CCL&T 3-2 | 16763-B | NE 3-3N-12E | NE/4 of Sec. 3-3N-12E, Escambia County | 0.05142548 |
| 15 | CCL&T 2-4 | 16798 | NW 2-3N-12E | NW/4 of Sec. 2-3N-12E, Escambia County | 0.03489254 |
| 16 | CCL&T 2-2 | 16844 | NE 2-3N-12E | NE/4 of Sec. 2-3N-12E, Escambia County | 0.04447193 |
| 17 | Holley 1-4 | 16905 | NW 1-3N-12E | NW/4 of Sec. 1-3N-12E, Escambia County | 0.08069837 |
| 18 | CCL&T 2-11 | 17032-B | SW 2-3N-12E | SW/4 of Sec. 2-3N-12E, Escambia County | 0.06123992 |
| 19 | CCL&T 2-9 | 17075-B | SE 2-3N-12E | SE/4 of Sec. 2-3N-12E, Escambia County | 0.00764070 |
| 20 | 3-12-2-12 | | SW 1-3N-12E | SW/4 of Sec. 2-3N-12E, Escambia County | 0.05738710 |
| 21 | 3-12-1-13 | | N/2 of S/2 3-3N-12E | NW/4 of SW/4 and W/2 of NE/4 of Sec. 3-3N-12E, Escambia County | 0.02015575 |
| 22 | 3-12-3-10 | | SE 4-3N-12E | SW/4 of SW/4 of Sec. 3-3N-12E, Escambia County | 0.00040903 |
| 23 | 3-12-4-9 | | SE 4-3N-12E | S/2 of Sec. 3-3N-12E, Escambia County | 0.00016635 |
| 24 | 3-12-4-3 | | NW 4-3N-12E | S/2 of SE/4 of Sec. 4-3N-12E, Escambia County | 0.00059085 |
| 25 | 3-12-4-4-1 | | NW & NE 5-3N-12E | E/2 of NW/4 of Sec. 4-3N-12E, Escambia County | 0.00005374 |
| 26 | 3-12-4-4-2 | | NW 4-3N-12E | SW/4 of NW/4 of Sec. 4-T3N-12E, Escambia County, less and except the following described tract  Commencing at the NE corner of the SW/4 of NW/4 of Sec. 4-3N-12E and run West Ten (10) chains; thence run South Ten (10) chains; thence run East Ten (10) chains; thence run North Ten (10) chains and back to the point of commencement | 0.00011343 |
| 27 | 3-12-4-4-3 | | NW 4-3N-12E | Commencing at the NE corner of the SW/4 of NW/4 of Sec. 4-3N-12E, Escambia County, and run West Ten (10) chains; thence run South Ten (10) chains; thence run North Ten (10) chains; thence run North Ten (10) chains and back to the point of commencement | 0.00040737 |
| 28 | 3-12-5-1 | | NW & NE 5-3N-12E | N/2 of N/2 and N/2 of S/2 of N/2 of Sec. 5-3N-12E, Escambia County | 0.00915710 |
| | | | | | 1.00000000 |

**TRACT PARTICIPATION SCHEDULE**

**EXHIBIT B**
TO UNIT AGREEMENT FOR
SOUTHWEST BROOKLYN OIL UNIT









AHC 000029



AHC 000030



## Southwest Brooklyn Oil Unit, Tract Allocation Schedule
### [50% HCPV + 25% Best Six Months Productivity + 25% January - June 2018 Productivity]

| Tract | Well or Tract Name | Permit No. | Location | Tract Total Pore Volume (Acre-Ft) | Pore Volume Tract Factor | Best Six Months Tract Productivity (Bbls) | Best Six Months Productivity Tract Factor | January - June 2018 Productivity (Bbls) | January - June 2018 Productivity Tract Factor | Tract Factor |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | CCLBT 33-6 | 16685 | NW 3-4N-12E | 190.90 | 0.02971856 | 36,826 | 0.05075717 | 19,370 | 0.08617130 | 0.04909140 |
| 2 | Gradby 34-8 | 16673 | NE 34-4N-12E | 357.15 | 0.05559956 | 74,076 | 0.10206927 | 22,470 | 0.09995842 | 0.07831395 |
| 3 | CCLBT 35-5 | 16714-8 | NW 35-4N-12E | 295.68 | 0.04603012 | 60,496 | 0.08338171 | 26,293 | 0.11696787 | 0.07310246 |
| 4 | CCLBT 32-11 | 16956 | SW 32-4N-12E | 34.48 | 0.00536769 | 0 | 0.00000000 | 0 | 0.00000000 | 0.00268385 |
| 5 | CCLBT 32-9 | 16809 | SE 32-4N-12E | 254.44 | 0.03960997 | 47,511 | 0.06548349 | 8,099 | 0.03603071 | 0.04518380 |
| 6 | CCLBT 33-12 | 16687 | SW 33-4N-12E | 324.07 | 0.05045009 | 72,179 | 0.09948377 | 4,495 | 0.01999511 | 0.05509477 |
| 7 | CCLBT 33-10 | 16686 | SE 33-4N-12E | 365.45 | 0.05689103 | 32,840 | 0.04526260 | 23,019 | 0.10240044 | 0.06336127 |
| 8 | CCLBT 34-14 | 16696-8 | SW 34-4N-12E | 436.39 | 0.06793591 | 53,113 | 0.07320509 | 13,467 | 0.05990788 | 0.06724620 |
| 9 | Gradby 34-10 | 16709 | SE 34-4N-12E | 627.39 | 0.09766930 | 75,022 | 0.10340233 | 23,212 | 0.10323849 | 0.10049986 |
| 10 | CCLBT 35-11 | 16672-8 | SW 35-4N-12E | 588.12 | 0.09077754 | 70,520 | 0.09719736 | 23,440 | 0.10427447 | 0.09575673 |
| 11 | CCLBT 35-10 | 16517 | SE 35-4N-12E | 267.11 | 0.04158250 | 27,689 | 0.03816391 | 13,362 | 0.05944267 | 0.04519290 |
| 12 | CCLBT 4-2 | 16729-8 | NW 4-3N-12E | 234.03 | 0.03643299 | 22,163 | 0.03054649 | 5,014 | 0.02230544 | 0.03142948 |
| 13 | CCLBT 3-4 | 16727 | NW 3-3N-12E | 270.50 | 0.04211050 | 19,124 | 0.02635904 | 2,919 | 0.01298609 | 0.03089154 |
| 14 | CCLBT 3-2 | 16763-8 | NE 3-3N-12E | 237.58 | 0.03698508 | 42,267 | 0.05825602 | 10,284 | 0.04566166 | 0.04447193 |
| 15 | CCLBT 2-4 | 16798 | NW 2-3N-12E | 632.88 | 0.09852396 | 48,489 | 0.06683262 | 13,239 | 0.05888295 | 0.08069337 |
| 16 | CCLBT 2-2 | 16844 | NE 2-3N-12E | 604.92 | 0.09417127 | 15,097 | 0.02080840 | 8,049 | 0.03580960 | 0.06223925 |
| 17 | Holley 1-4 | 16905 | NW 1-3N-12E | 85.69 | 0.01333984 | 1,488 | 0.00205029 | 412 | 0.00183280 | 0.00754970 |
| 18 | CCLBT 2-11 | 17032-8 | SW 2-3N-12E | 141.06 | 0.02195804 | 23,353 | 0.03218759 | 7,518 | 0.03344473 | 0.02738710 |
| 19 | CCLBT 2-9 | 17079-8 | SE 2-3N-12E | 242.29 | 0.03771265 | 3,281 | 0.00452284 | 149 | 0.00066284 | 0.02015575 |
| 20 | 3-12-12 | | N/2 of 5/2 3-3N-12E | 31.99 | 0.00498906 | 0 | 0.00000000 | 0 | 0.00000000 | 0.00249003 |
| 21 | 3-12-13 | | SE 4-3N-12E | 4.65 | 0.00072389 | 0 | 0.00000000 | 0 | 0.00000000 | 0.00036195 |
| 22 | 3-12-10 | | NW 4-3N-12E | 11.06 | 0.00172177 | 0 | 0.00000000 | 0 | 0.00000000 | 0.00086089 |
| 23 | 3-12-9 | | SE 4-3N-12E | 0.66 | 0.00010347 | 0 | 0.00000000 | 0 | 0.00000000 | 0.00005174 |
| 24 | 3-12-4-1 | | NW 4-3N-12E | 101.45 | 0.01579262 | 0 | 0.00000000 | 0 | 0.00000000 | 0.00789631 |
| 25 | 3-12-4-2 | | NW 4-3N-12E | 41.43 | 0.00644982 | 0 | 0.00000000 | 0 | 0.00000000 | 0.00322491 |
| 26 | 3-12-4-3 | | NW 4-3N-12E | 1.46 | 0.00022687 | 0 | 0.00000000 | 0 | 0.00000000 | 0.00011343 |
| 27 | 3-12-5-1 | | NW 4-3N-12E | 5.23 | 0.00081474 | 0 | 0.00000000 | 0 | 0.00000000 | 0.00040737 |
| 28 | | | NW & NE 5-3N-12E | 40.56 | 0.00631420 | 0 | 0.00000000 | 0 | 0.00000000 | 0.00315710 |
| | | | **Total** | 6,423.62 | 1.00000000 | 725,536 | 1.00000000 | 224,790 | 1.00000000 | 1.00000000 |

**EXHIBIT D**
TO UNIT AGREEMENT FOR
SOUTHWEST BROOKLYN OIL UNIT

SOUTHWEST BROOKLYN OIL UNIT - TRACT FACTOR
SCHEDULE OF TRACT PARAMETERS

## EXHIBIT E TO UNIT AGREEMENT FOR

## SOUTHWEST BROOKLYN OIL UNIT

### SUMMARY OF UNIT NET REVENUE INTERESTS

| Royalty and Overriding Royalty Ownership | Total Unit Interest |
|---|---|
| Abigail Dennis Salters | 0.00000063 |
| Addie D. Benjamin, for her life, then to Tammy S. Benjamin, Lillie P. Willis, and Mary J. Legon-Hall | 0.00008147 |
| Adrian C. Allen | 0.00012093 |
| Adrian C. Allen, as Trustee of the Adrian C. Allen Revocable Trust | 0.00167276 |
| Adrienne P. Watkins | 0.00008571 |
| Adrienne P. Watkins, as Trustee of the Adrienne P. Watkins Trust U/A 3/17/2005 | 0.00131449 |
| Adrienne P. Watkins, as Trustee of the Adrienne W. Snively Trust dated September 20, 2012 | 0.00008062 |
| Albert Clark Tate III | 0.00014256 |
| Albert W. Key | 0.00010563 |
| Alex Smith | 0.00005140 |
| Alexis Samuel | 0.00000051 |
| Allen C. Phillips | 0.00656055 |
| Allie Samuel | 0.00007310 |
| Almeater Bonham | 0.00006527 |
| Alva Nann Cary Taylor | 0.00008275 |
| Amy Grasty | 0.00000014 |
| Andrew J Samuel | 0.00003646 |
| Andrew L. Robins | 0.00007356 |
| Andrew R. Dufrain | 0.00001968 |
| Angela Samuel | 0.00000395 |
| Anna Downing | 0.00020774 |
| Anita Waters McIntosh | 0.00011964 |
| Ann Roby | 0.00002624 |
| Annie B. Franklin | 0.00013707 |
| Anna Lillian D. Nelson | 0.00002032 |
| Atwood M. Kimbrough | 0.00007922 |
| Auburn University | 0.00370937 |
| Avis D. Tolbert | 0.00000045 |
| Babe Development Company LLC | 0.00015533 |
| Barbara Dukes | 0.00000422 |
| Barbara S. Johnston, as Trustee of the Barbara S. Johnston Revocable Trust | 0.00492084 |
| Barbara W. Lorraine | 0.00015383 |
| Beatrice Autrey | 0.00003646 |
| Bernice Bouldin | 0.00000395 |
| Bernice Lee | 0.00000609 |
| Betty Ann Darden | 0.00000028 |
| Betty B. Toole | 0.00036710 |
| Betty Dickerson | 0.00000395 |
| Betty Johnston | 0.00013985 |
| Beverly Evans Ellison | 0.00017946 |
| Billy Ronald James | 0.00003980 |
| Brian Wilson Evans | 0.00017946 |
| Brooks H. Robins | 0.00007356 |
| Camilla Huxford | 0.00124845 |
| Carnez Williams | 0.00009138 |
| Carol Roberts | 0.00002813 |
| Carolyn C. Kennedy | 0.00047995 |

1

AHC 000033

| | |
|---|---|
| Carolyn F. O'Neal | 0.00001343 |
| Carolyn Samuel | 0.00008224 |
| Carse Casey Jackson, Jr. | 0.00002813 |
| Cathryn Abbott Jones | 0.00040294 |
| Cedar Creek Land & Timber, Inc. | 0.10195075 |
| Central Petroleum, Inc. | 0.00006173 |
| Charlene R. Lett | 0.00000608 |
| Charles James Shaffer | 0.00002016 |
| Charles James Shaffer and Katrina Jeanne Shaffer, as Trustees CK Shaffer Family Trust | 0.00027879 |
| Charles Yancey Waters | 0.00011964 |
| Charlie Mae Howard | 0.00003646 |
| Christopher A. Farrell | 0.00121911 |
| Christopher C. Dufrain | 0.00001968 |
| Cindy Calvert Hayes | 0.00001406 |
| Cindy Grasty | 0.00000045 |
| Clara Louise Findley | 0.00008150 |
| Clara Rigby | 0.00003980 |
| Claude E. Hamilton, III | 0.00089484 |
| Claudette Bradley | 0.00000084 |
| Clauzell Samuel | 0.00005483 |
| Cleveland C. Kelly | 0.00033649 |
| Cora Jones | 0.00004569 |
| Crystal Renee Stanley | 0.00008275 |
| Curtis Samuel | 0.00012875 |
| Cynthia Brooks | 0.00002643 |
| Cynthia S. Rilling | 0.00057774 |
| Cynthia William | 0.00001142 |
| Daboil Resources, L.C. | 0.00316995 |
| Dan M. Downing | 0.00022806 |
| Daniel W. McMillan | 0.00071302 |
| Darell Rushton | 0.00000914 |
| Darryl Walker | 0.00000260 |
| David Bissmeyer | 0.00000285 |
| David Earl Miller | 0.00041767 |
| David L. Johnston | 0.00030766 |
| Deborah Ann Wallace | 0.00006527 |
| Deborah Jean Shaffer | 0.00029895 |
| Debra Ann Law | 0.00000084 |
| Debra E. Williamson | 0.00003278 |
| Deidre Samuel | 0.00002056 |
| Demetrius Walker | 0.00000244 |
| Dennis Franklin | 0.00001142 |
| Donna Sue Smith | 0.00492637 |
| Doris Verna Atwood | 0.00000059 |
| Dorothy Bradley | 0.00000609 |
| Dorothy Jean Cook | 0.00000045 |
| Douglas Ladson McBride III | 0.00015533 |
| Douglas Oneal Rudolph | 0.00000608 |
| Downing Family Properties, LLC | 0.00801896 |
| Downing McDowell Minerals, LLC | 0.00022806 |
| Earlene Samuel | 0.00000318 |
| Ed Leigh McMillan III | 0.00071302 |
| Edward McMillan Tate | 0.00014256 |
| Edwin I. Sanford | 0.00000796 |
| Edwin Sanford, III | 0.00001890 |
| Eleanor James Rowell | 0.00003980 |
| Elvira M. Tate | 0.00093637 |
| Elvira Tate Hoskins | 0.00014256 |
| Emma Jean Bradley | 0.00018276 |
| Eric Earl Samuel | 0.00000395 |

2

AHC 000034

| | |
|---|---|
| Erin JoAnn Strain and William Dudley Strain, as Co-Trustees U/W Ben Kelly Strain | 0.00005371 |
| Estate of E.D. Scruggs, Jr. c/o J. Carroll Chastain, Executor | 0.00036407 |
| Estate of Ed Leigh McMillan II c/o Paul D. Owens, Jr., Executor | 0.00008058 |
| Estate of Louise Ware | 0.00000914 |
| Estate of Robert C. McMillan | 0.00000174 |
| Estate of Stirling H. Hamilton, Jr. c/o Cecelia C. Hamilton and Stirling H. Hamilton, III, Co-Executors | 0.00089484 |
| Eustes Energy, Inc. | |
| Ezelle Energy LLC | 0.00528326 |
| Fletcher Petroleum Company, LLC | 0.00528326 |
| Flowing Well, LLC | 0.00102390 |
| Foster F. Fountain, III | 0.00343944 |
| Frances L. Pope and Robert R. Crittenden, as Trustees of the Family Trust U/W Robert Downing Pope, Jr. | 0.00004219 |
| | 0.00008571 |
| Frankie Jo Patacsil | |
| Frederick Samuel | 0.00209574 |
| Gary Ann Perryman | 0.00000395 |
| Gayle Fountain | 0.00000609 |
| Geneva McCorvey | 0.00004916 |
| George Dennis Sartin | 0.00004569 |
| George Raymond Merritt | 0.00000063 |
| Gerald Stephen Herman, as Trustee of the Adrienne P. Watkins Mineral Rights Trust f/b/o Adrienne W. Snively Family dated September 29, 2011 | 0.00035893 |
| | 0.00123387 |
| Gerald W. Samuel | |
| Gerry Burford | 0.00000456 |
| Ginger Richardson | 0.00003278 |
| Glenda T. Ingraham | 0.00003278 |
| Gloria Barnes | 0.00000023 |
| Gordan Kelley O'Neal | 0.00002056 |
| Gretchen Walker Huyler | 0.00001343 |
| Gulf Coast Royalties, LLC | 0.00000260 |
| Gwendolyn Walker | 0.00014399 |
| Hamilton Pleus Properties, LLC | 0.00000244 |
| Harriett W. Strayhorn | 0.00089484 |
| Haywood Hanna, III | 0.00020977 |
| Hazel A. Nettles | 0.00018204 |
| Henry J. Bradley, Jr. | 0.00033649 |
| Hermine M. Downing | 0.00033649 |
| Herschel Lee Abbott, III | 0.00076024 |
| Hester Lovelace Gordon | 0.00040294 |
| Hubert E. Kidd | 0.00001914 |
| Inez Harrod | 0.00001403 |
| Jack M. Watkins, Jr., as Trustee of the Jack M. Watkins, Jr. Trust dated September 2, 2010 | 0.00003646 |
| | 0.00008062 |
| Jack M. Watkins, Sr., as Trustee of the Jack M. Watkins, Sr. Trust U/A 3/17/2005 | 0.00370161 |
| Jackie Royster | |
| Jacqueline Brown | 0.00000086 |
| James Adrian Allen | 0.00000914 |
| James Allen | 0.00055759 |
| James Boyd Bel | 0.00002016 |
| James C. Kimbrough | 0.00080588 |
| James C. Roby | 0.00002641 |
| James David Warr | 0.00000189 |
| | 0.00200953 |

3

AHC 000035

| | |
|---|---|
| James H. Barrow, Jr. and Jamie Barrow, as Trustees of the Barrow Family Revocable Trust | 0.00080588 |
| James L Walker, Sr. | 0.00001823 |
| James R. Simpson, Richard A. Simpson, and Wendell P. Simpson, III, as Trustees of the Pamela L. Simpson Irrevocable Trust dated June 16, 2016 | 0.00036407 |
| James Timothy Calvert (estate of) | 0.00001359 |
| James Walker, Jr. | 0.00000260 |
| Janan Goodner Cohen and Reliance Trust Company, as Co-Trustees of the Randall Montgomery Goodner Trust Share of Trust A under the Evelyn M. Britton Declaration of Trust | 0.00152680 |
| Jane Downing Dunaway | 0.00020272 |
| Jane Strain Blount, as Trustee of the Mary Hardegree Strain Family Trust | 0.00000280 |
| Janet T. Morris | 0.00000014 |
| Janice Jackson Smith | 0.00004219 |
| Jean Kirby Jones | 0.00062423 |
| Jean Miller Stimpson | 0.00041767 |
| Jeanette Purifoy | 0.00000857 |
| Jeanne Bel Ingraham | 0.00080588 |
| Jeffrey E. Dunn | 0.00017936 |
| Jeffrey R Samuel | 0.00000456 |
| Jenny H. McGowin | 0.00044742 |
| Jessica D. Harris | 0.00017936 |
| Jessie B. Samuel | 0.00000609 |
| Jessie Ree Jackson | 0.00000608 |
| Jimmie Lee Walker | 0.00000395 |
| Jo Ann Langham | 0.00008275 |
| Joan P. Bel Whitt, as Trustee of the Ernest F. Bel Family Trust | 0.00080588 |
| Joanna Johnston Foster | 0.00019666 |
| JoAnne Kelly | 0.00000395 |
| Joe Shannon Scott Luttrell | 0.00003980 |
| Joel H. Carter | 0.00005244 |
| John C. Lovelace | 0.00001914 |
| John Charles Woodson | 0.00001311 |
| John E. Downing | 0.00020048 |
| John H. Gray, Jr., as Trustee of the Adrienne P. Watkins Irrevocable Mineral Rights Trust f/b/o Jack M. Watkins, Jr. Family dated September 29, 2011 | 0.00123387 |
| John R. Miller, III | 0.00057920 |
| John Robert Downing | 0.00000024 |
| John Robert Roby | 0.00008439 |
| John Rudolph Jr. | 0.00000608 |
| Jordan S. Dennis | 0.00000063 |
| Joseph Samuel | 0.00000395 |
| Joyce Jarvis | 0.00020977 |
| Joyce Wingard | 0.00008275 |
| Joyco Investments LLC | 0.00015533 |
| Juanita Cary | 0.00008275 |
| Judi C. Byrd | 0.00004916 |
| Judith Waters Huey | 0.00011964 |
| Judy Ann Walker | 0.00000395 |
| Julie K. Nix | 0.00009783 |
| Julie Scott McBride | 0.00015533 |
| Karen A. Fulford | 0.00004502 |
| Katherine E. McMillan Owens | 0.00150661 |
| Katherine Kashae Samuel | 0.00000028 |

4

AHC 000036

| | |
|---|---|
| Kay Johnston Hall | 0.00019666 |
| Kay Mitchell | 0.00018204 |
| Kelley Alford | 0.00002546 |
| Kenneth F. James | 0.00003980 |
| Kerrick Franklin | 0.00001142 |
| Kersch Group, LLC | 0.00142559 |
| Kidd Production, Ltd. | 0.00055759 |
| Knight Petroleum, L.P. | 0.00000702 |
| Kwazar Resources, LLC | 0.00002880 |
| Larry Donald James | 0.00003980 |
| Laura L. Nix | 0.00009783 |
| Laura W. Grier | 0.00062423 |
| Leathia Walden | 0.00000914 |
| Lenis H Holley | 0.00020996 |
| Lenis Holley, individually, and Lenis Holley and A.F. Holley, Jr., as Trustees U/W of A.F. Holley, Sr. | 0.00011230 |
| Lenora Kelley Sanford Alford | 0.00000140 |
| Leon Samuel | 0.00000395 |
| Lewis S. Hamilton | 0.00089484 |
| Lillian Edwards | 0.00006527 |
| Lillie Jones | 0.00000395 |
| Linda Carter Hill | 0.00005244 |
| Linda H. Chavers | 0.00160485 |
| Linda R Wiggins | 0.00000608 |
| Lisa D. Heaton | 0.00020272 |
| Lisa D. Nordmeyer | 0.00011403 |
| Lisa Williamson Frost | 0.00003278 |
| Loletha Walker McCloud | 0.00000260 |
| Lorene Jemison | 0.00006527 |
| Louvenia Leaston | 0.00003646 |
| Lovelace Properties, LLC | 0.00006529 |
| M. Travis Holzborn | 0.00037004 |
| Majinice Seals | 0.00000042 |
| Marcus Jones | 0.00000042 |
| Margaret Ann Skiles | 0.00008275 |
| Margaret James Hoehn | 0.00003980 |
| Margaret S. Culliver | 0.00007310 |
| Marian E. Johnson | 0.00033649 |
| Martha McKenzie | 0.00009833 |
| Mary Beth Morris | 0.00007356 |
| Mary E. Samuel | 0.00007310 |
| Mary H. Strain, as Trustee of the Mary H. Strain Family Trust | 0.00003499 |
| Mary Joan James Thomas | 0.00003980 |
| Mary L. Lalor-Timmons | 0.00006527 |
| Mary R. Godwin, as Trustee of the Clara Louise Findley Irrevocable Trust | 0.00008150 |
| Mary Ruth Godwin | 0.00008150 |
| Matthew F. Williamson | 0.00004370 |
| Mattie Charley | 0.00000914 |
| Mattie Samuel | 0.00000274 |
| Maurice Seals | 0.00000042 |
| Melissa Hoercher | 0.00001311 |
| Michael Adrian Shaffer | 0.00001008 |
| Michael Adrian Shaffer and Clarissa Shaffer, as Trustees of the Shaffer Family Living Trust | 0.00027879 |
| Minnie Tate Dubilier | 0.00014256 |
| Mitzi Moorer Shanks | 0.00017946 |
| Nancy M. Melton | 0.00041767 |
| Netta V Wiley | 0.00002056 |
| Newport Five, LLC | 0.00057023 |

5

AHC 000037

| | |
|---|---|
| Ocious Samuel | 0.00002056 |
| Ola B Taliaferro | 0.00000609 |
| Otha Von Johnson | 0.00006527 |
| Patricia Ann Downing McFarland | 0.00007139 |
| Patricia Ann Williamson | 0.00004370 |
| Percy Bradley, Jr. | 0.00018276 |
| Percy Jones | 0.00018276 |
| Peter B. Hamilton, Jr. | 0.00084458 |
| Peyton H. Carmichael | 0.00085615 |
| Philippa Peyton M. Bethea | 0.00044742 |
| Phillips Operations, LLC | 0.00284674 |
| Phyllis Doss | 0.00000086 |
| Pruet Production Co. | 0.00041833 |
| Prunastean Milner | 0.00033649 |
| Rebecca Rudolph Snell | 0.00000608 |
| Richard L. Johnson | 0.00045689 |
| Richard Lewis Johnson | 0.00006527 |
| Richard L. Lombard | 0.00008156 |
| Roabie Downing Johnson | 0.00060816 |
| Robert Cary | 0.00008275 |
| Robert Earl Warr | 0.00404965 |
| Robert Early Warr and Mary L. Warr, with right of survivorship | 0.00006118 |
| Robert H. Kirby | 0.00062423 |
| Robert H. O'Neal | 0.00001343 |
| Robert N. Johnston | 0.00019666 |
| Rock Springs Energy, LLC | 0.00000263 |
| Rock Springs Minerals I, LLC | 0.00052465 |
| Rock Springs Oil Co. | 0.00000878 |
| RockTenn CP, LLC | 0.00175875 |
| Roderick Wade Goodner, Jr. and Reliance Trust Company, as Co-Trustees of the Roderick Wade Goodner Share of Trust A under the Evelyn M. Britton Declaration of Trust | 0.00152681 |
| Roosevelt Phillips, Jr., Roxanne Phillips, Rodney Phillips and Roosevelt Phillips, III | 0.00000395 |
| Sallie Nell James Hual | |
| Sally Steele | 0.00003980 |
| Samuel Alto Jackson, Jr. | 0.00003278 |
| Sandra Ellis | 0.00004219 |
| Sanford Jones (estate of) | 0.00002813 |
| Sara Beall Neal Marital Trust U/W W.T. Neal, Jr. c/o Regions Bank, Trustee | 0.00045689 |
| Sara Grasty | 0.00090851 |
| Sara L. Samuel, Jeffrey R. Samuel, Gerald Samuel, and Tracy D. Reynolds | 0.00000014 |
| Sarah Russell Tate | 0.00000427 |
| Sarah Samuel | 0.00004219 |
| Shanita Danyell Jane Pointdexter | 0.00001823 |
| Smurfit-Stone Container Corp. | 0.00000042 |
| Source Rock Minerals II, LLC | 0.00395952 |
| Source Rock Minerals, LLC | 0.00019436 |
| Spanish Fort Royalty, LLC | 0.00001949 |
| SSC Minerals, LLC | 0.00005517 |
| Stacy Samuel, Jr. | 0.00106919 |
| Stella Livingston Hawkins | 0.00000028 |
| Stephen F. O'Neal | 0.00060816 |
| Stephen L. Tolbert | 0.00001343 |
| Stephen Michael Warr | 0.00000045 |
| Steven E. Calhoun | 0.00017804 |
| Sue Hanson McBride | 0.00002880 |
| | 0.00015533 |

6

AHC 000038

| | |
|---|---|
| Susan Allen Winchester | 0.00013940 |
| Susan Lombard Wilkinson | 0.00000141 |
| Susan M. Winchester | 0.00043834 |
| Susan W. Saab | 0.00001311 |
| Suzanne C. Allen, as Trustee of the Suzanne C. Allen Revocable Trust | 0.00167277 |
| Suzanne C. Leander | |
| Suzanne W. Zimmer | 0.00000059 |
| Syble LaJune White | 0.00062423 |
| Taylor J. Moorer, Jr. | 0.00002813 |
| The Community of Christ | 0.00017946 |
| The Mary Hardegree Strain Family Trust | 0.00000028 0.00001592 |
| Thomas C. Tolbert | |
| Thomas E. McMillan, Jr. | 0.00007964 |
| Thomas E. McMillan, Jr., Ed Leigh McMillan, III, and Daniel W. McMillan, as Co-Trustees U/W Ed Leigh McMillan | 0.00085680 0.00009085 |
| Thomas E. McMillan, Jr., as Trustee U/W Iva Lee McMillan | 0.00592247 |
| Thomas Energy, LLC | |
| Thomas Stallworth Johnston | 0.00000024 |
| Tisdale Natural Resources, LLC | 0.00013985 |
| Tracey Samuel Reynolds | 0.00146877 |
| Trant L. Kidd | 0.00000456 |
| Trant L. Kidd, as Trustee of The Trant L. Kidd Special Trust | 0.00002880 0.00006259 |
| Tranum Johnston | |
| Travod Samuel | 0.00019666 |
| Trustmark National Bank, as Trustee of the John Robert Downing Management Trust Dated August 12, 2013 | 0.00000028 0.00005298 |
| Trustmark National Bank and Candy McMillan, as Co-Trustees of the Robert C. McMillan 2011 Trust under agreement dated November 29, 2011 | 0.00142553 |
| Tyrone Walker | |
| Uncertain ownerships as between Alan Garmon, Annie McAbee, Ava S. Worthy, Andrew E. Smith, Jr., Andrea S. Abel, and/or Rhonda S. Prescott | 0.00000260 0.00033100 |
| Uncertain ownerships as between James Etheridge, Christopher Scott Etheridge, Norma Jean Brown, Shirley Etheridge Palmer, Johnny Etheridge, and Lisa Etheridge Patterson | 0.00019578 |
| Valhalla Royalty, LLC | 0.00058194 |
| Ventura Samuel | 0.00000055 |
| Verdell Ammons | 0.00003646 |
| Vernita Wilks | 0.00000086 |
| Vernon J. Bradley | 0.00033649 |
| W.T. Neal Family Stock LLC | 0.00874700 |
| W. T. Cary, Jr. | 0.00008275 |
| W.E. Woodson, III | 0.00001311 |
| Wiley W. Downing, IV | 0.00011403 |
| Willene Whatley | 0.00002622 |
| William Arthur Sims | 0.00001418 |
| William Franklin, Jr. | 0.00001142 |
| William Fredrick Findley | 0.00008150 |
| William Greg Graddy | 0.00349289 |
| William Griffin | 0.00018276 |
| William Hamilton, Jr. | 0.00089484 |

7

AHC 000039

| | |
|---|---|
| William R. Rollo & Gloria R. Rollo, as Trustees of the William R. & Gloria R. Rollo Revocable Trust | 0.00009783 |
| William Yancey Lovelace | 0.00000074 |
| William Yancey Lovelace, Jr. | 0.00001840 |
| Willie C. Holmes | 0.00000274 |
| Willie Dale Holmes | 0.00000084 |
| Willie J. Samuel, Jr. | 0.00000055 |
| Willie L. Bradley | 0.00033649 |
| Willie Lewis Samuel | 0.00007310 |
| Zola Mae Bryant | 0.00000609 |

TOTAL ROYALTY/OVERRIDING ROYALTY   0.25558004

| Working Interest Ownership | Total Unit Interest |
|---|---|
| AEH INVESTMENTS LLC | 0.00189837 |
| Alex Smith | 0.00022273 |
| Alexis Samuel | 0.00000223 |
| Amy Grasty | 0.00000099 |
| Angela Samuel | 0.00001713 |
| B. Coleman and B. Coleman, as trustees of THE COLEMAN REVOC LIVING TRUST | 0.00151870 |
| Bantam Creek LLC | 0.00138206 |
| BARBARA M SUGAR | 0.00221403 |
| Baxterville, LLC | 0.00054827 |
| Bellis Investments LP | 0.00005594 |
| Bernice Bouldin | 0.00001713 |
| Betty Ann Darden | 0.00000198 |
| Betty Dickerson | 0.00001713 |
| Bundero Investment Company, L.L.C. | 0.00591052 |
| C. Sugar and T. Youngblood, as Co-Trustees of the SUGAR PROPERTIES TRUST | 0.00006401 |
| Carl Herrin Oil and Gas, L.L.C. | 0.00020996 |
| Central Exploration Co, Inc. | 0.00026949 |
| Central Petroleum, Inc. | 0.00045422 |
| Craft Exploration Company L.L.C. | 0.00442242 |
| DANIEL W MCMILLAN | 0.00004775 |
| DBC RESOURCES II LP | 0.00607479 |
| DBC RESOURCES LP | 0.00913800 |
| DCOD LLC | 0.00968169 |
| Delta S Ventures LP | 0.00054827 |
| Demetrius Walker | 0.00001058 |
| Dickson Oil & Gas, LLC | 0.00514837 |
| Dolkas Investments LP | 0.00008391 |
| Doris Verna Atwood | 0.00000414 |
| DoublePine Investments, Ltd. | 0.00276412 |
| Ed Leigh McMillan III | 0.00004775 |
| Earlene Samuel | 0.00001114 |
| Eaton Finance Corp. | 0.00054827 |
| Ed L. Dunn | 0.00092275 |
| EDWARD L YARBROUGH JR | 0.00030374 |
| ELBA Exploration LLC | 0.00046198 |
| Elvira McMillan Tate | 0.00010772 |
| Eric Earl Samuel | 0.00001713 |
| Estate of Ed Leigh McMillan, II c/o Paul D. Owners, Jr., Executor | 0.00001221 |
| Estate of Robert C. McMillan | 0.00001221 |
| Fant Energy Limited | 0.05159489 |
| FIDDLER INVESTMENTS | 0.00322723 |

8

AHC 000040

| | |
|---|---|
| Fletcher Petroleum Company, LLC | |
| FOUR D LLC | 0.00307170 |
| FPCC USA, Inc. | 0.00121496 |
| FRANKS EXPLORATION CO., LLC | 0.05961614 |
| Frederick Samuel | 0.01488322 |
| GASTON OIL COMPANY INC | 0.00001713 |
| Gerry Burford | 0.00341707 |
| Gwendolyn Walker | 0.00014203 |
| HALL MANAGEMENT LLC | 0.00001058 |
| HANSON OPERATING CO INC | 0.00151870 |
| Horace, LLC | 0.01137293 |
| HUGHES 2000 CT LLC | 0.00010445 |
| HUGHESOIL INC | 0.00613320 |
| J & A HARRIS LP | 0.03790316 |
| J. F. Howell Interests, LP | 0.01642774 |
| Jackie Royster | 0.02364464 |
| James B. Dunn | 0.00000371 |
| James Timothy Calvert (estate of) | 0.00019249 |
| Janet T. Morris | 0.00000330 |
| Janus Enterprises, LLC | 0.00000099 |
| JCE GALBRAITH OIL & GAS LLC | 0.00036551 |
| JDGP, LLC | 0.00151870 |
| Jeanette Purifoy | 0.00054827 |
| Jimmie Lee Walker | 0.00003712 |
| JJS Interests Escambia, LLC | 0.00001713 |
| JoAnne Kelly | 0.05074908 |
| Joe L. Samuel, Jr. (Estate of) | 0.00001713 |
| John C. Nix, Jr., for life, then to | 0.00001851 |
| Elba Exploration, LLC | 0.00147686 |
| John E. Downing | |
| Joseph Samuel | 0.00001568 |
| Judy Ann Walker | 0.00001713 |
| Judy Dunn | 0.00001713 |
| Katherine E. McMillan Owens | 0.00019249 |
| KMR INVESTMENTS LLC | 0.00010772 |
| Landmark Exploration, LLC | 0.00446497 |
| Leon Samuel | 0.00886706 |
| Lillie Jones | 0.00001713 |
| Lovelace Properties, LLC | 0.00001713 |
| Marco Land & Petroleum, Inc. | 0.00001155 |
| Marksco, L.L.C. | 0.00020401 |
| Martha McKenzie | 0.01034405 |
| McCombs Energy, Ltd. | 0.00021305 |
| Michael Adrian Shaffer | 0.11970405 |
| Mountain Air Enterprises, LLC | 0.00007054 |
| PAM LIN CORPORATION | 0.00036551 |
| PAULA W DENLEY LLC | 0.00227804 |
| PETROLEUM INVESTMENTS INC | 0.00061332 |
| Phyllis Doss | 0.00151870 |
| Pickens Financial Group, LLC | 0.00000371 |
| Pruet Production Co. | 0.02158571 |
| Resource Ventures, LLC | 0.00151870 |
| Ruthie Ann Phillips (Estate of) | 0.00052430 |
| RYCO EXPLORATION LLC | 0.00001713 |
| Sara Grasty | 0.00383623 |
| SAWYER DRILLING & SERVICE INC | 0.00000099 |
| Sesnon Oil Company | 0.00303739 |
| Shadow Hill, LLC | 0.00005594 |
| Sklarco L.L.C. | 0.00036551 |
| Spanish Fort Royalty, LLC | 0.14071650 |
| Strago Petroleum Corporation | 0.00011101 |
| SUGAR OIL PROPERTIES LP | 0.00054827 |
| | 0.00227804 |

9

AHC 000041

| | |
|---|---|
| Susan Lombard Wilkinson | 0.00000990 |
| Suzanne C. Leander | 0.00000414 |
| T.A. Leonard | 0.00019249 |
| Tara Rudman and Ira W. Silverman, as | 0.00151886 |
| Co-Trustees of The Rudman Family Trust | |
| Tauber Exploration & Production Co. | 0.01108383 |
| Teresa Rudman, as Trustee of the | 0.00138206 |
| Tara Rudman Revocable Trust | |
| The Community of Christ (a/k/a Reorganized | 0.00000198 |
| Church of Jesus Christ of Latter Day Saints) | |
| The Rudman Partnership, Ltd. | 0.04560793 |
| Thomas E. McMillan, Jr. | 0.00001056 |
| Thomas Energy, LLC | 0.00009716 |
| Tiembo Ltd. | 0.00886706 |
| TOM YOUNGBLOOD | 0.00303739 |
| Trimble Energy, LLC | 0.00276412 |
| Triumphant Management, LLC | 0.00043861 |
| Trustmark National Bank and Candy McMillan, | 0.00009551 |
| as Co-Trustees of the Robert C. McMillan | |
| 2011 Trust Under agreement dated | |
| November 29, 2011 | |
| Vernita Wilks | 0.00000371 |
| William R. Rollo & Gloria R. Rollo, as | 0.00124356 |
| Trustees of the William R. and Gloria | |
| R. Rollo Revocable Trust | |

| | |
|---|---|
| TOTAL WORKING INTEREST | 0.74441996 |
| TOTAL NET REVENUE INTEREST: | 1.00000000 |

10

AHC 000042

### SUMMARY OF UNIT OWNERSHIPS AS COSTS ARE SHARED
(Gross Working Interests)

| Owner | Total Unit Interest |
|---|---|
| AEH INVESTMENTS LLC | |
| Alex Smith | 0.251389% |
| Alexis Samuel | 0.027413% |
| Amy Grasty | 0.000274% |
| Angela Samuel | 0.000113% |
| B. Coleman and B. Coleman, as trustees of THE COLEMAN REVOC LIVING TRUST | 0.002109% 0.201112% |
| Bantam Creek LLC | |
| BARBARA M SUGAR | 0.181402% |
| Baxterville, LLC | 0.293190% |
| Bellis Investments LP | 0.073102% |
| Bernice Bouldin | 0.006992% |
| Betty Ann Darden | 0.002109% |
| Betty Dickerson | 0.000226% |
| Bundero Investment Company, L.L.C. | 0.002109% |
| C. Sugar and T. Youngblood, as Co-Trustees of the SUGAR PROPERTIES TRUST | 0.775813% 0.008477% |
| Carl Herrin Oil and Gas, L.L.C. | |
| Central Exploration Co, Inc. | 0.026244% |
| Central Petroleum, Inc. | 0.035932% |
| Craft Exploration Company L.L.C. | 0.057013% |
| DANIEL W MCMILLAN | 0.580463% |
| DBC RESOURCES II LP | 0.004775% |
| DBC RESOURCES LP | 0.804446% |
| DCOD LLC | 1.210088% |
| Delta S. Ventures LP | 1.282086% |
| Demetrius Walker | 0.073102% |
| Dickson Oil & Gas, LLC | 0.001302% |
| Dolkas Investments LP | 0.678660% |
| Doris Verna Atwood | 0.010488% |
| DoublePine Investments, Ltd. | 0.000473% |
| Ed Leigh McMillan III | 0.362803% |
| Earlene Samuel | 0.004775% |
| Eaton Finance Corp. | 0.001371% |
| Ed L. Dunn | 0.073102% |
| EDWARD L YARBROUGH JR | 0.121076% |
| ELBA Exploration LLC | 0.040222% |
| Elvira McMillan Tate | 0.061598% |
| Eric Earl Samuel | 0.010946% |
| Estate of Ed Leigh McMillan, II c/o Paul D. Owners, Jr., Executor | 0.002109% 0.001396% |
| Estate of Robert C. McMillan | |
| Fant Energy Limited | 0.001396% |
| FIDDLER INVESTMENTS | 6.772070% |
| Fletcher Petroleum Company, LLC | 0.427362% |
| FOUR D LLC | 0.409561% |
| FPCC USA, Inc. | 0.160889% |
| FRANKS EXPLORATION CO LLC | 8.204424% |
| Frederick Samuel | 1.970893% |
| GASTON OIL COMPANY INC | 0.002109% |
| Gerry Burford | 0.452501% |
| Gwendolyn Walker | 0.017481% |
| HALL MANAGEMENT LLC | 0.001302% |
| HANSON OPERATING CO INC | 0.201112% |
| Horace, LLC | 1.608073% |
| HUGHES 2000 CT LLC | 0.013876% |
| HUGHESOIL INC | 0.812181% 5.019280% |

11

AHC 000043

| | |
|---|---|
| J & A HARRIS LP | 2.175424% |
| J. F. Howell Interests, LP | 3.103592% |
| Jackie Royster | 0.000457% |
| James B. Dunn | 0.025666% |
| James Timothy Calvert (estate of | 0.000377% |
| Janet T. Morris | 0.000113% |
| Janus Enterprises, LLC | 0.048735% |
| JCE GALBRAITH OIL & GAS LLC | 0.201112% |
| JDGP, LLC | 0.073102% |
| Jeanette Purifoy | 0.004569% |
| Jimmie Lee Walker | 0.002109% |
| JJS Interests Escambia, LLC | 7.040535% |
| JoAnne Kelly | 0.002109% |
| Joe L. Samuel, Jr. (Estate of) | 0.002279% |
| John C. Nix, Jr., for life, then to Elba Exploration, LLC | 0.194957% |
| John E. Downing | 0.001792% |
| Joseph Samuel | 0.002109% |
| Judy Ann Walker | 0.002109% |
| Judy Dunn | 0.025666% |
| Katherine E. McMillan Owens | 0.010946% |
| KMR INVESTMENTS LLC | 0.591268% |
| Landmark Exploration, LLC | 1.163889% |
| Leon Samuel | 0.002109% |
| Lillie Jones | 0.002109% |
| Lovelace Properties, LLC | 0.001320% |
| Marco Land & Petroleum, Inc. | 0.026461% |
| Marksco, L.L.C. | 1.357758% |
| Martha McKenzie | 0.026221% |
| McCombs Energy, Ltd. | 15.712337% |
| Michael Adrian Shaffer | 0.008062% |
| Mountain Air Enterprises, LLC | 0.048735% |
| PAM LIN CORPORATION | 0.301667% |
| PAULA W DENLEY LLC | 0.081218% |
| PETROLEUM INVESTMENTS INC | 0.201112% |
| Phyllis Doss | 0.000457% |
| Pickens Financial Group, LLC | 2.909724% |
| Pruet Production Co. | 0.201113% |
| Resource Ventures, LLC | 0.072743% |
| Ruthie Ann Phillips (Estate of) | 0.002109% |
| RYCO EXPLORATION LLC | 0.508008% |
| Sara Grasty | 0.000113% |
| SAWYER DRILLING & SERVICE INC | 0.402223% |
| Sesnon Oil Company | 0.006992% |
| Shadow Hill, LLC | 0.048735% |
| Sklarco L.L.C. | 19.649466% |
| Spanish Fort Royalty, LLC | 0.013876% |
| Strago Petroleum Corporation | 0.073102% |
| SUGAR OIL PROPERTIES LP | 0.301667% |
| Susan Lombard Wilkinson | 0.001131% |
| Suzanne C. Leander | 0.000473% |
| T.A. Leonard | 0.025666% |
| Tara Rudman and Ira W. Silverman, as Co-Trustees of The Rudman Family Trust | 0.199642% |
| Tauber Exploration & Production Co. | 1.454862% |
| Teresa Rudman, as Trustee of the Tara Rudman Revocable Trust | 0.181402% |
| The Community of Christ (a/k/a Reorganized Church of Jesus Christ of Latter Day Saints) | 0.000226% |
| The Rudman Partnership, Ltd. | 5.986256% |
| Thomas E. McMillan, Jr. | 0.001206% |
| Thomas Energy, LLC | 0.009740% |

12

AHC 000044

| | |
|---|---|
| Tiembo Ltd. | 1.163889% |
| TOM YOUNGBLOOD | 0.402223% |
| Trimble Energy, LLC | 0.362803% |
| Triumphant  Management, LLC | 0.058482% |
| Trustmark National Bank and Candy McMillan, as Co-Trustees of the Robert C. McMillan 2011 Trust Under agreement dated November 29, 2011 | 0.009551% |
| Vernita Wilks | 0.000457% |
| William R. Rollo & Gloria R. Rollo, as Trustees of the William R. and Gloria R. Rollo Revocable Trust | 0.164829% |
| TOTAL UNIT INTERESTS: | 100.000000% |

13

AHC 000045