BEFORE THE STATE OIL AND GAS BOARD OF ALABAMA

PURSUANT TO A DECISION RENDERED FOLLOWING SPECIAL SESSIONS OF THE
STATE OIL AND GAS BOARD OF ALABAMA ON SEPTEMBER 11, 12, AND 13, 2018,
<u>THE FOLLOWING ORDER IS HEREBY PROMULGATED;</u>

IN RE: ORDER NO. 2018-34              DOCKET NOS.  **4-4-18-01, 4-4-18-02,**
**4-4-18-03, 4-4-18-04,**
**4-4-18-05, 4-4-18-06,**
**4-4-18-07, and 4-4-18-08**

THESE CAUSES came on for hearing before the State Oil and Gas Board of Alabama

(hereinafter referred to as "Board") on the petitions of Sklar Exploration Company L.L.C.

(hereinafter referred to as "Sklar") bearing Docket Nos. 4-4-18-01, 4-4-18-02, 4-4-18-03, 4-4-18-

04, and Pruet Production Co. (hereinafter referred to as "Pruet") bearing Docket Nos. 4-4-18-05, 4-

4-18-06, 4-4-18-07, and 4-4-18-08.  In its petitions, Sklar requests the Board to enter an order

pursuant to Sections 9-17-1 et seq. and 9-17-80 through 9-17-88 of the *Code of Alabama* (1975)

(1) requesting the Board to approve and establish the plans for a partial field-wide oil Unit for

the Brooklyn Field, Conecuh and Escambia Counties, Alabama,  to be known as the "Southwest

Brooklyn Oil Unit," Docket No. 4-04-18-01, (2) approving and establishing the plans for a

partial field-wide Unit for the Brooklyn Field to be known as the "Southeast Brooklyn Oil Unit,"

Docket No. 4-4-18-02, (3) amending Rule 1 of the Special Field Rules for the Brooklyn Field to

add certain parcels to the field limits of said field, Docket No. 4-4-18-03, and (4) approving the

division of the 160-acre production unit for the Cedar Creek Land and Timber 33-4 No. 1 Well,

Permit No. 17264-B, into two 80-acre production units, Docket No. 4-4-18-04.  In its petitions

Pruet requests the Board to enter an order pursuant to Section 9-17-1 et seq. and Section 9-17-80

through 9-17-88 of the *Code of Alabama* (1975) (1) approving and establishing a partial field-

wide oil Unit in the Brooklyn Field to be known as the "Northeast Brooklyn Oil Unit," Docket

No. 4-4-18-05, (2) approving and establishing a partial fieldwide oil Unit in the Brooklyn Field

to be known as the "Northwest Brooklyn Oil Unit," Docket No. 4-04-18-06,  (3) amending Rule

1 of the Special Field Rules for the Brooklyn Field to add certain parcels to the field limits of

said field, Docket No. 4-04-18-07, and (4) amending Rule 1 of the Special Field Rules for Little

Cedar Creek Field, Conecuh County, Alabama, to delete therefrom certain parcels from said

field, Docket 4-04-18-08.

1

**Exhibit**
**AHC-28**

That the Board, after receiving and considering the evidence, finds that notice of the hearing of said cause has been given in the manner and form and for the time required by law and the rules and regulations of this Board and that proofs of publication of notice and evidence of the service of required personal notice are on file with the Board and that the Board has full jurisdiction of this case. Further, after having heard three days of testimony of all the witnesses and all parties desiring to be heard and having carefully examined the exhibits and other documentary evidence and having heard the arguments of counsel and being fully informed and advised in the premises and after due consideration thereof, finds as follows:

## GENERAL BACKGROUND

### I.

That Brooklyn Field is one of Alabama's most significant oil and gas fields in terms of quantity and value of hydrocarbons. It adjoins the Little Cedar Creek Field, another one of the State's most significant oil and gas fields.

### II.

That in 2010, Fletcher Petroleum Corp. (hereinafter referred to as "Fletcher") drilled the Amos 36-3 Well, Permit No. 16376, discovery well for the Brooklyn Field. The Amos 36-3 Well, Permit No. 16376, located on a 160-acre production unit consisting of the Northwest Quarter of Section 36, T4N, R12E, is productive from the Smackover Pool, the proposed Unitized Formation. Since 2010, over seventy wells have been drilled and completed as productive oil and gas wells in the Brooklyn Field. With the drilling of new wells, the field limits have expanded so that the field presently covers over 18 square miles.

### III.

That in support of the Petitions before the Board to unitize the Brooklyn Field, Petitioners Sklar and Pruet presented evidence that included geologic exhibits, engineering and economic analyses, and testimony of expert witnesses.

AHC 000396

IV.

That in its Petitions, Sklar proposes to establish two units, the Southwest Brooklyn Unit and the Southeast Brooklyn Unit.  In its Petitions, Pruet proposes to establish two other units, the Northwest Brooklyn Unit and the Northeast Brooklyn Unit.

V.

That Petitioners presented evidence that there are six separate zones within the Smackover Oil Pool as defined for the Brooklyn Field.  Petitioners further assert that effective enhanced recovery operations should take into account these different zones.  Petitioners presented evidence that Sklar and Pruet as Unit Operators will conduct four separate water injection operations involving separate injection wells.

PROCEDURAL BACKGROUND

VI.

That Petitioners Sklar and Pruet filed their Petitions for Unitization, Docket Nos. 4-4-18-01 through 4-4-18-08, on March 9, 2018.  Subsequently, a number of parties expressed their opposition to the Sklar and Pruet Petitions on various grounds, including Fletcher Petroleum Corp., Spindletop Oil and Gas Co., Cynco Energy LLC, Southern Oil Exploration, Inc., John Sipple, Glenn Sparks, Avery Producing, LLC, Barbara Lorraine-Johnston, J.T. Snowden, and James Hamiter.  A number of parties expressed support for the Sklar and Pruet Petitions, including Regions Bank, as trustee, Southeastern Energy II, LLC, Gaston Oil Co., Inc., Cedar Creek Land and Timber, Inc., Kendall Lands, LLC, and Steven H. Craft.  Numerous mineral owners wrote similar or identical letters in support of the Petitions by Sklar and Pruet.  The Board's staff submitted two detailed sets of questions to Sklar and Pruet, one set of questions dated May 16, 2018, and another set of questions dated July 18, 2018.  In response, Sklar and Pruet submitted "joint responses" to the questions.  The Board conducted several pre-hearing conferences prior to the hearing.  The Board conducted hearings on September 11, 12, and 13, 2018, on the Petitions by Sklar and Pruet.  In this order, the Board addresses the principal issues raised by the parties and by the Board and staff.

AHC 000397

NOTICE

VII.

That due and proper notice of the hearing of these causes at these special hearings has been given in the manner and form and within the time provided by law and the rules and regulations of the Board; that Petitioners Sklar and Pruet have complied with the Notice requirements of Rule 400-1-12-.10 of the *State Oil and Gas Board of Alabama Administrative Code*. Further, Petitioners Sklar and Pruet presented evidence that Petitioners diligent and extraordinary effort, at great expense, to provide notice to the interested parties in accordance with said Rule 400-1-12-.10. Further, proofs of newspaper publications have been filed with the Board. The Board has full jurisdiction of these causes.

4

AHC 000398

## NEED FOR UNITIZATION

### VIII.

That expert witnesses for Petitioners Sklar and Pruet presented evidence that water injection as an enhanced recovery program would be the most economical and beneficial method of continued production in the Brooklyn Field and that such a program will be economically profitable for the four proposed units.  The witnesses further testified that the characteristics of the producing formations in the field are suitable for pressure maintenance and enhanced recovery through the injection of water in the proper manner and method as proposed by Petitioners.  Petitioners Sklar and Pruet presented evidence that injection of water into the reservoir at strategic locations will result in the establishment of a proper pressure maintenance and enhanced recovery program, which will result in the efficient production of hydrocarbons, substantial increase in the oil and gas yields, and an increase in the ultimate recovery of hydrocarbons.

### IX.

That Petitioners presented evidence that unitization is in the interest of conservation and that the estimated total cost of conducting the secondary recovery operations will not exceed the value of the estimated total additional hydrocarbons to be recovered through enhanced recovery methods for the four proposed units.

### X.

That Petitioners presented evidence that unitization is necessary in order to ensure that pressure maintenance and enhanced recovery operations can be initiated.

### XI.

That Petitioners presented evidence that unitization is necessary to prevent the drilling of unnecessary wells and will provide for the efficient recovery of hydrocarbons from the proposed unit area to increase the ultimate recovery of hydrocarbons.  Petitioners presented evidence that unitization will protect the correlative rights of mineral interest owners in the proposed unit area and will prevent the loss of recoverable hydrocarbons.

AHC 000399

XII.

That Petitioners presented evidence that delay in unitization will result in the loss of hydrocarbons, and that the enhanced recovery program of water injection should be initiated.

XIII.

That no party appeared or communicated to the Board opposition to unitizing the Brooklyn Field or to commence enhanced recovery operations.

XIV.

That all parties expressed agreement to the need for unitization so that a pressure maintenance program may be instituted. The Board has received numerous letters and statements from numerous mineral interest owners in the Brooklyn Field that unitization is appropriate and necessary.

NEED FOR UNITIZATION

FINDINGS OF FACT

XV.

That the evidence shows that there is need for the Brooklyn Field to be unitized. An enhanced recovery program of water injection should be implemented expeditiously in order to ensure the continuation of orderly and proper development, to protect correlative rights of mineral interest owners, and to prevent waste. Unitization will be beneficial for the successful initiation of enhanced recovery operations in the Brooklyn Field. Unitization is necessary in order to prevent the potential loss of recoverable hydrocarbons and in order to prevent the drilling of unnecessary wells in the four proposed units.

NEED FOR UNITIZATION

CONCLUSIONS OF LAW

XVI.

That unitization of the Brooklyn Field is in the interest of conservation, and enhanced recovery will result in an increase in recovery of oil and gas from said field. The increased recovery of hydrocarbons from the field is in the best interest of the mineral interest owners and the State of Alabama.

6

PROPOSAL TO ESTABLISH FOUR UNITS

XVII.

That in their petitions, Petitioners Sklar and Pruet propose to establish four units: Sklar proposes the Southwest Unit and the Southeast Unit, as partial fieldwide units in Brooklyn Field; and Pruet proposes the Northwest Unit and the Northeast Unit as partial fieldwide units in Brooklyn Field. Petitioners assert that the Alabama Unitization Statute authorizes the establishment of partial fieldwide units. Petitioners presented evidence that Sklar and Pruet operate most of the wells and own the infrastructure in the unit areas for the four proposed units. Expert engineering and geological witnesses for Sklar and Pruet presented evidence that "sentry wells" will ensure that any oil and gas migration between the units will be limited. The expert witnesses presented evidence that migration between the four units will not be material. Petitioners presented evidence that the field may not be unitized if the Board were to require a single unit for the field.

PROPOSAL TO ESTABLISH FOUR UNITS

FINDINGS OF FACT

XVIII.

That although almost all units for enhanced recovery approved by the Board are fieldwide units, the evidence indicates that the four proposed units will provide for development of oil and gas resources and increase of oil and gas production. Although on cross-examination, expert witnesses for Petitioners testified that the four units may compete against each other, the four units will provide a method for enhanced recovery, thereby increasing the ultimate recovery of oil and gas for the entire Brooklyn Field.

PROPOSAL TO ESTABLISH FOUR UNITS

CONCLUSIONS OF LAW

XIX.

That Section 9-17-80 et seq. of the *Code of Alabama* (1975) expressly provides for partial fieldwide units and the four proposed partial fieldwide units are due to be approved. Although

7

there may be migration of oil and gas across unit boundaries and although the four units may compete with each other, the establishment of the four proposed units complies with the Alabama Unitization Statute.

ALLOCATION FORMULA

XX.

That Petitioners Sklar and Pruet presented evidence that the four proposed units should have an allocation formula based fifty percent (50%) on hydrocarbon pore volume and fifty percent (50%) on the best six months of production during the life of the well.  Expert witnesses for Petitioners presented evidence that hydrocarbon pore volume is an indicator of original oil in place for the tracts within a unit.  Petitioners assert that hydrocarbon pore volume is evidence of the relative contribution that each tract in the unit is expected to make during the course of operations to the total production of hydrocarbons as allocated, which is the statutory requirement for an allocation formula pursuant to Section 9-17-83 of the *Code of Alabama* (1975).

XXI.

That expert witnesses for Petitioners presented evidence that the Board approved the same allocation formula proposed by Petitioners for Units II, III, and IV of Little Cedar Creek Field directly to the north of the proposed units.

XXII.

That expert witnesses for Petitioners presented evidence that including a productivity factor for fifty (50%) of the allocation formula will make the four formulae more reflective of the contribution each tract is expected to make during the course of unit operations.

XXIII.

That various parties stated their opposition to the allocation formula proposed by Petitioners.  The principal party opposing the allocation formula was Fletcher.  Fletcher stated its opposition to "a productivity factor that is based on each tract's maximum oil and gas production during any consecutive six-month period."  Letter from Glenn Taylor, dated June 26, 2018. Fletcher and other opponents contend that the proposed Allocation Formula does not account for

8

the years of primary production depletion that has occurred.  Fletcher and the opponents suggest that the Allocation Formula address the disparity by using the last six months of production as the productivity factor rather than best six months.

XXIV.

That Fletcher contends the allocation formula should give more weight to recent production than the formula proposed by Sklar and Pruet.  Fletcher asserts that including a productivity factor that utilizes a tract's recent production is more representative of how much each tract will contribute to the Unit than the productivity factor proposed by Sklar and Pruet.

XXV.

That Fletcher presented evidence that recent production from a well on a tract is a better indicator of how much the tract will contribute to unit production than the best six month period throughout the life of the well.

XXVI.

That Fletcher asserts that under the allocation formula proposed by Petitioners Sklar and Pruet, tracts having relatively new wells such as the Lizzie Johnson 26-10, Permit No. 17246-B, on tract 26 of the Northwest Unit, do not receive a fair tract participation.

ALLOCATION FORMULA

FINDINGS OF FACT

XXVII.

That the evidence indicates that hydrocarbon pore volume reflects original oil and gas in place.  Further, virtually all units for enhanced recovery in Alabama approved by the Board utilize hydrocarbon pore volume to some extent.

XXVIII.

That production from a well or a tract is an important factor in predicting how much a tract will contribute to the total unit production.  Many of the allocation formulae approved by

9

the Board include a productivity factor.  Thus, the allocation formula for the four units is due to include a productivity factor.

### XXIX.

That a fair and reasonable allocation formula in compliance with Section 9-17-83 of the *Code of Alabama* (1975) that reflects what each tract can reasonably be expected to contribute to total production for Brooklyn Field is a formula giving equal weight to hydrocarbon pore volume and to well productivity.  That including as a part of the productivity factor the recent production for a well on the tract will properly reflect the tract's contribution to unit production.

### XXX.

That a tract's productivity based equally on (a) each tract's maximum production during any consecutive six-month period and (b) each tract's production during the last six months of production is the proper combination for determining each tract's productivity.

## ALLOCATION FORMULA

## CONCLUSIONS OF LAW

### XXXI.

That an allocation formula for the four proposed units should be fifty percent (50%) hydrocarbon pore volume as proposed by Petitioners Sklar and Pruet and fifty percent (50%) productivity, productivity being based equally on (a) each tract's maximum production during any consecutive six-month period and (b) each tract's production during the six-month period of production from January 2018 through June 2018.  The formula established by the Board complies with Section 9-17-83 of the *Code of Alabama* (1975), protects the correlative rights of the mineral interest owners, and prevents waste.

AHC 000404

UNIT AREA – TRACTS IN THE WESTERN PART OF THE

PROPOSED NORTHWEST UNIT

XXXII.

That Fletcher asserts that "wet" or "watered out" acreage located in the western part of
the proposed Northwest Unit should not be included in the Unit Area for the proposed Northwest
Unit.  Specifically, Fletcher asserts that all or portions of Tracts 2, 5, and 7 in the proposed
Northwest Unit should be deleted from the Unit Area.  Fletcher asserts that the (CCL&T 31-1
Well, Permit No. 16854-B, (NE¼, Sec.31, T4N, R12E) located in Tract 2 was drilled, plugged,
and abandoned with no production, and the tract will not contribute to Unit Production.  Fletcher
presented evidence that Tract 5 (NW¼, Sec.32, T4N, R12E) has "watered out" and will not
contribute to Unit Production.  Further, Fletcher presented evidence that Tract 7 (NE¼, Sec.32,
T4N, R12E) is being affected by water encroachment.

XXXIII.

That Pruet contends Tracts 2, 5, and 7 are due to be included in the Unit Area for the
Northwest Unit.

XXXIV.

That Pruet presented evidence that the increase in water production in the CCL&T 32-3
#1 Well, Permit No. 16808, on Tract 5 was due primarily to a workover procedure ("an acid
job") that Pruet conducted in the well.  Pruet presented evidence that although its production is
slight, the well continues to produce some oil and gas and will contribute to unit production.

XXXV.

That Pruet presented evidence that the CCL&T 32-1 #1 Well, Permit No. 16743, on Tract
7 continues to produce oil and gas and clearly will contribute to production.  Further, Pruet
presented evidence that the injection of water as a part of the overall enhanced recovery project
will cause Tracts 2, 5, and 7 to contribute to Unit production.

11

AHC 000405

UNIT AREA – TRACTS IN THE WESTERN PART OF THE

PROPOSED NORTHWEST UNIT

FINDINGS OF FACT

XXXVI.

That although the CCL&T 31-1 Well on Tract 2 was drilled, plugged and abandoned, the evidence indicates that the well encountered a portion of the Smackover Formation above the oil-water contact indicating that Tract 2 will contribute to unit production.  Although it produces a small amount of oil, the CCL&T 32-3 #1 Well on Tract 5 continues to produce oil and gas although water production from the well has increased substantially.  The CCL&T 32-1 #1 Well on Tract 7 continues to produce a substantial amount of oil and gas.

XXXVII.

That the evidence indicates that Tracts 2, 5 and 7 in the proposed Northwest Unit will contribute to Unit Production; therefore, the Tracts should be included in the Unit Area.

XXXVIII.

That the allocation formula approved by the Board gives more weight to recent production than the formula proposed by Pruet thereby reducing the tract participation for these three Tracts in the Northwest Unit.

UNIT AREA – TRACTS IN THE WESTERN PART OF THE

PROPOSED NORTHWEST UNIT

CONCLUSIONS OF LAW

XXXIX.

That including Tracts 2, 5, and 7 in the Unit Area for the proposed Northwest Unit and approving an allocation formula that gives weight to recent production will protect the correlative rights of the mineral interest owners and prevent waste.

12

AHC 000406

UNIT AREA – NORTHWEST UNIT; SOUTHWEST UNIT;

MRS. BARBARA LORRAINE-JOHNSTON

XL.

That Mrs. Barbara Lorraine-Johnston, a mineral interest owner in Tract 2 in the proposed

Southwest Unit in which the Graddy 34-8 #1 Well, Permit No. 16673, is located, asserted in

letters to the Board that the Tract should be included in the Northwest Unit and not in the

Southwest Unit as proposed by Sklar and Pruet.  Mrs. Lorraine-Johnston asserts that the evidence

shows that Tract 2 contributes substantially more to the Northwest Unit than the Tract

contributes to the Southwest Unit.  Mrs. Lorraine-Johnston asserts that the Northwest Unit would

contribute substantially more than the Southwest Unit during Unit Operations, and therefore, her

interest would benefit from being included in the Northwest Unit.

XLI.

That Sklar presented evidence that the Graddy 34-8 #1 Well is producing from two zones

in the Smackover Oil Pool, the Unitized Formation for the four units.  Sklar presented evidence

that the Graddy 34-8 #1 Well is producing from Zone 1, which primarily contributes to the

Southwest Unit and Zone 4, which primarily contributes to the Northwest Unit.

XLII.

That Sklar presented evidence that Tract 2 will ultimately receive more production from

the Southwest Unit than from the Northwest Unit.  Sklar presented evidence that over the entire

life of the enhanced recovery operation of the Southwest Unit that Tract 2 benefits more being in

the proposed Southwest Unit.

XLIII.

That Sklar presented evidence that one of the principal mineral interest owners in Tract 2

ratified the Unit Agreement for the proposed Southwest Unit that includes Tract 2 in the

Southwest Unit.

AHC 000407

UNIT AREA – NORTHWEST UNIT; SOUTHWEST UNIT;

MRS. BARBARA LORRAINE-JOHNSTON

FINDINGS OF FACT

XLIV.

That based on the overwhelming evidence, all tracts in the four units in the Brooklyn Field will benefit greatly from the Unitization and enhanced recovery.

XLV.

That the evidence indicates that Tract 2 is due to be included in the Southwest Unit.

XLVI.

That the evidence indicates that during the entire life of the Southwest Unit, Tract 2 will benefit more from being included in the Southwest Unit.

UNIT AREA – NORTHWEST UNIT; SOUTHWEST UNIT;

MRS. BARBARA LORRAINE-JOHNSTON

CONCLUSIONS OF LAW

XLVII.

That including Tract 2 in the proposed Southwest Unit will protect the correlative rights of the mineral interest owners and prevent waste.

AHC 000408

DIVIDING THE 160-ACRE UNIT FOR THE CCL&T 33-4 and

CCL&T 33-6 WELLS INTO TWO TRACTS

XLVIII.

That in 2012, Sklar drilled and completed the CCL&T 33-6 #1 Well, Permit No. 16685, as a productive oil and gas well on a 160-acre production unit consisting of Northwest Quarter, Section 33, T4N, R12E.  The well produced 461,635 barrels of oil and 508,021 mcf of gas until the well was shut-in in February 2018.  Sklar drilled and completed the CCL&T 33-4 #1 Well, Permit No. 17264-B, as a replacement production well for the CCL&T 33-6 #1 Well on the same 160-acre production unit.  In February 2018, Sklar began producing the CCL&T 33-4 Well.


XLIX.

That Petitioners Sklar and Pruet propose to divide the 160-acre production unit into two 80-acre tracts, namely Tract 11 of the proposed Northwest Unit, on which the CCL&T 33-4 #1 Well is located, and Tract 1 of the proposed Southwest Unit, on which the CCL&T 33-6 #1 Well is located.


L.

That in their proposal, Petitioners Sklar and Pruet utilize the production from the CCL&T 33-6 #1 Well, Permit No. 16685, to calculate the productivity factor in the allocation formula for both Tracts.  Petitioners Sklar and Pruet did not utilize the CCL&T 33-4 #1 Well, Permit No 17264-B, located on Tract 11 to calculate the productivity factor for Tract 11.  Furthermore, Petitioners Sklar and Pruet propose to give a productivity factor for each 80-acre tract equal to productivity factors for other 160-acre tracts.


LI.

That Fletcher asserts that Petitioners improperly used production from a well that will be included in one proposed unit to determine the productivity factor for a well that will be included in a separate proposed unit.  The productivity calculation for the CCL&T 33-4 Well uses production from the 33-6 Well.  However, the 33-6 Well is not within the boundaries of the proposed Northwest Unit.

AHC 000409

LII.

That in the Board's staff questions dated July 18, 2018, the staff noted Petitioners' exhibits show "that the two 80-acre tracts were improperly given a full tract factor as though the two tracts were 160-acre tracts." Question 5, July 18, 2018.

LIII.

That Petitioners Sklar and Pruet assert that the productivity factor should not "be tied to the number of surface acres in the tract on which the well is located." Joint Responses to Supplemental Questions by Sklar and Pruet, July 27, 2018, p.8.  Petitioners Sklar and Pruet further assert that, "Acreage is simply not a relevant parameter for a productivity factor." Id. at p. 10

DIVIDING THE 160-ACRE UNIT FOR THE CCL&T 33-4 and

CCL&T 33-6 WELLS INTO TWO TRACTS

FINDINGS OF FACT

LIV.

That Petitioners' use of a well not in the tract nor in the unit area as a productivity factor is inconsistent with the calculation of the productivity factor on all other tracts.  Further, the proposal is contrary to the Alabama Unitization statute.

LV.

That the formula proposed by Sklar and Pruet includes a productivity factor for 80-acre tracts (Tract 11 of the proposed Northwest Unit and Tract 1 of the proposed Southwest Unit) equal to productivity factors for 160-acre tracts in the units.  This proposal unjustly enriches mineral interest owners in these 80-acre tracts.  Mathematically using the same production for one well (the CCL&T 33-6 Well) for both of the 80-acre tracts gives a higher proportional productivity factor compared to the 160-acre units in the two units.

LVI.

That the productivity factor should be calculated by utilizing the actual well on each tract. The productivity factor for Tract 11 in the Northwest Unit shall be calculated utilizing the CCL&T

16

33-4 Well.  The productivity factor for Tract 1 in the Southwest Unit should be calculated utilizing the CCL&T 33-6 #1 Well.

## DIVIDING THE 160-ACRE UNIT FOR THE CCL&T 33-4 and
## CCL&T 33-6 WELLS INTO TWO TRACTS
### CONCLUSIONS OF LAW
#### LVII.

That the proposal to (1) utilize a well that is outside a tract to calculate a productivity factor and (2) give a productivity factor for an 80-acre tract equal to 160-acre units does not protect the correlative rights of the mineral interest owners.

#### LVIII.

That each tract should utilize the actual well on each tract to calculate the productivity factor.  Tract 11 in the Northwest Unit shall utilize the CCLT 33-4 Well to calculate its productivity factor.  Tract 1 in the Southwest Unit should utilize the CCLT 33-6 #1 Well to calculate its productivity factor.  In order to protect the correlative rights of mineral interest owners in other 160-acre tracts, the productivity factor for the two 80-acre tracts shall be divided by two in calculating the productivity factor for the two 80-acre tracts.  Further, considering that each of these wells was shut in partly during the months of January through June 2018, in compliance with the Board's regulations, in determining the productivity factor, production shall be prorated over six months based on the average daily production for each well during that time period.  For convenience, the Board's staff has made the calculations set forth hereinbelow.

17

AHC 000411

SPECIAL FIELD RULES AND UNIT AGREEMENTS

LIX.

That the Petitioners Sklar and Pruet submitted amended Special Field Rules for the Brooklyn Field in accordance with the proposed unitization for the four units.  Petitioners presented evidence that the Unit Agreements for the four units are in the proper form and have incorporated the provisions of Section 9-17-80 et seq. of the *Code of Alabama* (1975).

SPECIAL FIELD RULES AND UNIT AGREEMENTS

FINDINGS OF FACT

LX.

That the Special Field Rules for the Brooklyn Field and the Unit Agreements for the four proposed units submitted into evidence are proper, and with appropriate amendments as required by this Order, the Special Field Rules and Unit Agreements are due to be approved.

SPECIAL FIELD RULES AND UNIT AGREEMENTS

CONCLUSIONS OF LAW

LXI.

That proposed Special Field Rules for the Brooklyn Field are proper and the proposed Unit Agreements for the four proposed units have incorporated the provisions of Section 9-17-80 et seq., of the *Code of Alabama* (1975), and, with appropriate amendments as required by the Order, the Special Field Rules and Unit Agreements are due to be approved.

LXII.

That in this order, the Board has in substance approved the requests set out in the petitions by Sklar bearing Docket Nos. 04-4-18-01 through 04-4-18-04 and Pruet bearing Docket Nos. 04-4-18-05 through 04-4-18-08.  The Sklar and Pruet Petitions are, therefore, due to be granted.  The Special Field Rules proposed by Sklar and Pruet are not effective until tract participations have been recalculated in accordance with this order, and revised unit agreements and revised tract participations incorporating the allocation formula in accordance with this order have been ratified in accordance with Section 9-17-80 et seq. of the *Code of Alabama* (1975).

18

COOPERATION IN IMPLEMENTING PLAN OF UNITIZATION

LXIII.

That in proposing unitization of a field or a part of a field, the Board strongly supports the

cooperation among the working interest owners and even royalty interest owners in planning the

unitization prior to filing the petition for unitization.  In fact, the oil and gas statutes addressing

unitization expressly state that "cooperative development" among owners is encouraged, and the

Board strongly supports such cooperation in proposing a plan for unitization.  Such cooperation

in developing a plan of unitization will promote timely implementation of an enhanced recovery

project.


Based on the Findings of Fact and Conclusions of Law set forth hereinabove, IT IS,

THEREFORE, ORDERED ADJUDGED and DECREED by the State Oil and Gas Board of

Alabama that the Petitions by Sklar Exploration Company L.L.C., bearing Docket Nos. 4-04-18-01,

4-4-18-02, 4-4-18-03, 4-4-18-04 and Pruet Production Co., bearing Docket Nos. 4-4-18-05, 4-4-18-

06, 4-4-18-07, and 4-4-18-08, are GRANTED with the following STIPULATIONS:

(1) That the allocation formula for the four units should be fifty percent hydrocarbon pore

volume as proposed by Petitioners Sklar Exploration Company L.L.C. and Pruet Production Co.

and fifty percent productivity, productivity being based equally on (a) each Tract's maximum

production during any consecutive six-month period and (b) each Tract's production during the

six-month period of production from January 2018 through June 2018.

(2) That Petitioners divided the original 160-acre production unit for the CCL&T 33-6 Well,

Permit No. 16685, and the CCL&T 33-4 Well, Permit No. 17264-B, into two 80-acre tracts.

Tract 11, an 80-acre tract in the Northwest Unit, and Tract 1, an 80-acre tract in the Southwest

Unit, shall utilize the actual well on each tract to calculate the productivity factor; i.e., Tract 11

in the Northwest Unit shall utilize the CCL&T 33-4 Well to calculate its productivity factor, and

Tract 1 in the Southwest Unit shall utilize the CCL&T 33-6 #1 Well to calculate its productivity

factor.  In order to protect the correlative rights of mineral interest owners in other 160-acre

tracts, the productivity factor for the two 80-acre tracts shall be divided by two in calculating the

productivity factor for the two 80-acre tracts.  Further, each of these wells was shut in partly

during the months of January through June 2018 in compliance with the Board's regulations,

19

AHC 000413

and, therefore, in determining the productivity factor, production shall be prorated over six months based on the average daily production for each well during that time period.*See Footnote.

(3) That Sklar Exploration Company L.L.C. and Pruet Production Co. shall recalculate the Tract Participations in accordance with this Order and submit revised unit agreements, revised Tract Participations incorporating the allocation formula in accordance with this Order, and ratifications in accordance with Section 9-17-80 et seq. of the *Code of Alabama* (1975).

DONE and ORDERED this 24TH day of SEPTEMBER, 2018.

STATE OIL AND GAS BOARD OF ALABAMA

By: _James H. Griggs_____
       James H. Griggs, Chairman

By: _Chas E. Pearson_____
       Charles E. Pearson, Member

By: _____Did Not  Vote_____
       Stephen P. French, Member

ATTEST:

_Berry H. Tew_____
Berry H. (Nick) Tew, Jr. Secretary

```
* In determining the productivity factor for the two 80-acre
tracts, production should be used as follows:

Maximum 6 month:  CCLT 33-6 36,826 BOE (73,652 divided by 2)
                  CCLT 33-4 10,866 BOE (21,771 divided by 2)

January 2018 through
June 2018:        CCLT 33-6 19,370 BOE (38,741 divided by 2)
                  CCLT 33-4 10,886 BOE (21,771 divided by 2)
```

AHC 000414