# EXHIBIT 2

# ALABAMA VEHICLE RETAIL INSTALLMENT CONTRACT

DATE 03/12/2020

**FORD CREDIT**
1-800-727-7000
www.fordcredit.com

Buyer (and Co-Buyer) Name and Address (Including County and Zip Code):
SKLAR EXPLORATION COMPANY LLC
319 BELLEVILLE AVE
BREWTON, AL 36426

CREDITOR (Seller Name and Address):
JOHNSON FORD INC
1828 S MAIN STREET
ATMORE, AL 36502

You, the Buyer (and Co-Buyer, if any), may buy the vehicle described below for cash or on credit. The cash price is shown below as "Cash Price." The credit price is shown below as "Total Sale Price." By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract.

| New/Used | Mileage | Year and Make | Model | Vehicle Identification Number | Use For Which Purchased |
|---|---|---|---|---|---|
| NEW | 100 | 2019 FORD | RANGER SUPER CAB | 1FTER1FH6KLA66276 | Personal use unless otherwise checked below ☐ Commercial ☐ Agricultural |

Trade-In: _____ Year and Make  $ N/A Gross Allowance  $ N/A Amount Owing

## ITEMIZATION OF AMOUNT FINANCED

1. Cash Price .................................................................. $ 31900.00 (1)
2. Down Payment
   - Third Party Rebate Assigned to Creditor ............. $ 3500.00
   - Cash Down Payment ........................................... $ N/A
   - ................................................................... $ N/A
   - Trade-In (Description Above) ............................... $ 0.00
   - Total Down Payment ............................................ $ 3500.00 (2)
3. Unpaid Balance of Cash Price (1 minus 2) ............... $ 28400.00 (3)
4. Amounts paid on your behalf (Seller may be retaining a portion of these amounts)
   - To Public Officials
     - (i) for license, title & registration fees  $ 16.50 ;
     - (ii) for filing fees  $ N/A ;
     - (iii) for taxes (not in Cash Price)  $ 1299.99 ;  $ 1316.49
   - To Insurance Companies for:
     - Credit Life Insurance ........................................ $ N/A
     - Credit Disability Insurance ............................... $ N/A
     - ............................................................... $ N/A
     - ............................................................... $ N/A
     - To N/A for N/A  $ N/A
     - To JOHNSON FORD INC for DOC FEE  $ 599.50
     - To N/A for N/A  $ N/A
     - To N/A for N/A  $ N/A
     - To N/A for N/A  $ N/A
     - To N/A for N/A  $ N/A
     - To N/A for N/A  $ N/A
     - To N/A for N/A  $ N/A
   - Total ............................................................. $ 1915.99 (4)
5. Amount Financed (3 plus 4) .................................. $ 30315.99 (5)

## INSURANCE

YOU ARE REQUIRED TO INSURE THE VEHICLE. VEHICLE INSURANCE MAY BE OBTAINED FROM A PERSON OF YOUR CHOICE. THE BUYER MAY PROVIDE SUCH INSURANCE THROUGH AN EXISTING POLICY OR A POLICY INDEPENDENTLY OBTAINED AND PAID FOR BY THE BUYER.
INSURANCE DOES NOT COVER PERSONAL LIABILITY AND PROPERTY DAMAGE CAUSED TO OTHERS.
CREDIT LIFE, CREDIT DISABILITY AND OTHER OPTIONAL INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT AND WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE PREMIUM.

Credit ☐ Life _____ Insurance Company
$ N/A Premium  _____ Insured(s)
You want Credit Life Insurance.
Buyer Signs _____
Co-Buyer Signs _____

Credit ☐ Disability _____ Insurance Company
$ N/A Premium  _____ Insured(s)
You want Credit Disability Insurance.
Buyer Signs _____
Co-Buyer Signs _____

### OTHER OPTIONAL INSURANCE

| Coverage and Insurance Company | Premium and Term in Months |
|---|---|
| GAP | $ N/A |
| By _____ | $ N/A |
| By _____ | $ N/A |
| By _____ | $ N/A |

You want the optional insurance for which premiums are included above.
Buyer Signs _____
Co-Buyer Signs _____

Credit Life and Credit Disability insurance are for the term of the contract. The amount and coverages are shown in a notice or agreement given to you today.

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf | The amount you will have paid when you have made all scheduled payments | The total cost of your purchase on credit, including your downpayment of $ 3500.00 |
| 6.5900 % | $ 5351.01 | $ 30315.99 | $ 35667.00 | $ 39167.00 |

Your Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due Monthly unless otherwise checked ☒ Semi-Annually ☐ Annually |
|---|---|---|
| 60 | 594.45 | starting 04/11/2020 |
| N/A | N/A | N/A |
| N/A | N/A | N/A |
| N/A | N/A | N/A |

**Prepayment:** If you pay off your debt early, you will not have to pay a penalty.
**Security Interest:** You are giving a security interest in the vehicle being purchased.
**Late Payment:** You must pay a late charge on the portion of each payment received more than 10 days late. The charge is 5 percent of the late amount or $18.00, whichever is greater. The charge will not exceed $100.
**Contract:** Please see this contract for additional information on security interest, nonpayment, default, the right to require repayment of your debt in full before the scheduled date, and prepayment penalty.

## BALLOON CONTRACT PROVISIONS

☐ Your last scheduled payment under this contract is a balloon payment.

**EXCESS WEAR, USE AND MILEAGE CHARGES**
If the box directly above is checked, this section, Paragraph B, and Paragraph C of this contract apply. You may be charged for excessive wear based upon our standards for normal use. If you exercise the option to transfer ownership of the vehicle to Creditor under Paragraph B, you must pay the Creditor $0. _____ per mile for each mile in excess of _____ miles shown on the odometer.

**Anti-Theft Product (Optional)**
The purchase of anti-theft product(s) is optional and not required to obtain credit, even if the product(s) is already installed on the vehicle you selected. You may purchase anti-theft product(s) from the person of your choice. By signing below, you agree to purchase the anti-theft product(s) at the price disclosed.

_____ $ N/A Term _____
_____ $ N/A Term _____
_____ $ N/A Term _____

Buyer Signs X _____

**Debt Cancellation Waiver Addendum (Optional)**
Purchase of the debt cancellation waiver is optional and is not required to obtain credit. The terms and conditions of the debt cancellation waiver are set forth in the attached Addendum which is incorporated into the contract. By signing below you agree to purchase the debt cancellation waiver for the price set forth on this contract in the Itemization of Amount Financed under section 4.

Buyer Signs _____

Any change in this contract must be in writing and signed by you and the Creditor.

Buyer Signs X *Thomas H. Sell Managing Member*
Sklar Exploration Company LLC

Co-Buyer Signs X _____

YOU ACKNOWLEDGE THAT YOU HAVE READ AND AGREE TO BE BOUND BY THE ARBITRATION PROVISION ON THE REVERSE SIDE OF THIS CONTRACT.

The Annual Percentage Rate may be negotiated with the Seller. The Seller may assign this contract and may retain its right to receive a portion of the Finance Charge.

## NOTICE TO THE BUYER

Do not sign this contract before you read it or if it contains any blank spaces. You are entitled to an exact copy of the contract that you sign.

BUYER (AND CO-BUYER) ACKNOWLEDGE THAT (I) <u>BEFORE SIGNING THIS CONTRACT</u>, BUYER (AND CO-BUYER) RECEIVED AND REVIEWED A TRUE AND COMPLETELY FILLED IN COPY OF THIS CONTRACT AND (II) <u>AT THE TIME OF SIGNING THIS CONTRACT</u>, BUYER (AND CO-BUYER) RECEIVED A TRUE AND COMPLETELY FILLED IN COPY OF THIS CONTRACT.

CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU **SIGN** IT.

Buyer Signs X *Thomas H. Sell Managing Member*
Sklar Exploration Company LLC

Co-Buyer Signs X _____

Seller JOHNSON FORD INC  By X *Ben Odom*  Title *Om*

THIS CONTRACT IS NOT VALID UNTIL YOU AND SELLER SIGN IT.

## ASSIGNMENT

Seller may transfer this contract to another person. That person will then have all Seller's rights, privileges, and remedies. By signing below, the Seller assigns this contract to _____ FORD MOTOR CREDIT COMPANY _____ ("Assignee").

Seller JOHNSON FORD INC  By X *Ben Odom*  Title *Om*

FC 17601-SI (SEP 18) (Previous editions may NOT be used.)  SEE OTHER SIDE FOR ADDITIONAL AGREEMENTS
FC 17601-B-SI

ORIGINAL
PLY 1 - ORIGINAL  PLY 2 - BUYER'S COPY  PLY 3 - CO-BUYER/GUARANTOR COPY  PLY 4 - SELLER'S COPY (NON-TRANSFERABLE)

## ADDITIONAL AGREEMENTS

**A. Payments:** You must make all payments in U.S. funds when they are due. You may prepay any amount at any time. There is a simple finance charge contract. The actual finance charge you agree to pay will depend on your payment patterns. The actual finance charge may exceed the disclosed Finance Charge if you make your payments later than the scheduled dates or in less than the scheduled amount. Your payment will be applied first to the earned and unpaid part of the Finance Charge and then to the unpaid Amount Financed. The Finance Charge is earned by applying the Annual Percentage Rate to the unpaid Amount Financed for the actual time that the unpaid Amount Financed is outstanding.

**B. Balloon Payment Contracts:** If your last scheduled payment under this contract is a balloon payment as indicated on the front of the contract, you have three options to handle the balloon payment.

First, you may pay all that you owe, and keep your motor vehicle.

Second, you may refinance all that you owe unless you are in default under this contract. If the Creditor has advanced funds to cure any default, you must pay back the Creditor before the refinancing. You also must provide proof of insurance acceptable to Creditor before the refinancing. The Annual Percentage Rate (APR) for the refinancing will be the lower of the APR contained in this contract or the maximum APR permitted by law. The refinanced monthly payment shall be the same as in this contract. The term of the refinancing will be based on the amount refinanced, the rate, and the amount of the monthly payment. If you wish to refinance, you must notify the Creditor in writing no later than 30 days prior to the balloon payment due date.

Third, you may transfer ownership of the vehicle to the Creditor, and an amount equal to your originally scheduled balloon payment will be applied toward the satisfaction of all that you owe. Creditor will add a $475 Disposal Fee to the amount that you owe and, if applicable, will add any excess mileage charges (as described on the front of the contract) and any estimated costs of vehicle repairs that are the result of excess wear and use (as described in Paragraph C). If the amount of your originally scheduled balloon payment does not satisfy all that you owe, you will pay the difference. You must take the vehicle to a place selected by the Creditor for inspection no later than 15 days prior to the balloon payment due date. After the inspection, if you decide to transfer ownership of the vehicle to the Creditor, you must give the vehicle to the Creditor no later than the balloon payment due date. At that time, you must provide the Creditor a title, which shows no liens other than the Creditor's lien, transferring ownership to the Creditor or a person selected by the Creditor. You must also provide other documents as needed. If you decide not to transfer ownership of the vehicle after inspection, you must immediately inform the Creditor if you want to refinance under the second option above.

**C. Damage Repair:** If your last scheduled payment under this contract is a balloon payment and you transfer ownership of the vehicle to the Creditor under Paragraph B, you are responsible for all repairs to the vehicle that are not the result of normal wear and use. These repairs include, but are not limited to those necessary to repair or replace: (a) tires that have sidewall damage/plugs, exposed cords/belts, or are unmatched for vehicle or unsafe; (b) electrical or mechanical defects or malfunctions; (c) glass, paint, body panels, trim and grill work that are broken, mismatched, chipped, scratched, pitted, cracked, or if applicable, dented; (d) interior rips, stains, burns or damaged areas; (e) replacement of any missing equipment or parts that were in or on the vehicle when delivered; and (f) all damage which would be covered by collision or comprehensive insurance whether or not such insurance is actually in force. Replacement of sheet metal and all other repairs must be made with Original Equipment Manufacturer parts. Your use or repair of the vehicle must not invalidate any warranty. You will owe the estimated costs of such repairs unless repairs are made at your expense prior to the transfer of ownership of the vehicle to the Creditor. You will maintain the odometer of the vehicle so that it always reflects the vehicle's actual mileage. If the odometer is at any time inoperative, you will provide reasonable evidence of the vehicle's actual mileage. If you are unable to do so, you will pay us our estimate of any reduction of the vehicle's wholesale value caused by the inability to determine the vehicle's actual mileage.

**D. Security Interest:** You give the Creditor a security interest in:
1. The vehicle and all parts or other goods put on the vehicle;
2. All money or goods received for the vehicle; and
3. All insurance premiums and service contracts financed for you.

This secures payment of all amounts you owe under this contract. It also secures your other agreements in this contract.

**E. Use of Vehicle - Warranties:** You must take care of the vehicle and obey all laws in using it. You may not sell or rent the vehicle, and you must keep it free from the claims of others. You will not use or permit the use of the vehicle outside of the United States, except for up to 30 days in Canada or Mexico, without the prior written consent of the Creditor. If the vehicle is of a type normally used for personal use and the Creditor, or the vehicle's manufacturer, extends a written warranty or service contract covering the vehicle within 90 days from the date of this contract, you get implied warranties of merchantability and fitness for a particular purpose covering the vehicle. Otherwise, you understand and agree that there are no such implied warranties, except as otherwise provided by law.

**F. Vehicle Insurance:** You must insure the vehicle against loss or damage from collision, fire or theft. You must name Creditor as the loss payee under the insurance policy. The Creditor must approve the type and amount of insurance. If the vehicle is lost, damaged or destroyed, you must pay the Creditor what is still owed.

You agree that the insurance can make a claim under the insurance policy. You authorize the insurance company to provide Creditor any information Creditor believes necessary to make a claim. You must use insurance proceeds to repair the vehicle, unless the damage to the vehicle is considered a total loss. If the damage to the vehicle is considered a total loss, you must use the insurance proceeds to pay what you owe the Creditor. If your insurance on the vehicle doesn't pay all you owe, you must pay what is still owed.

**G. Returned Insurance Premiums and Service Contract Charges:** This contract may contain charges for insurance, service contracts, or other contracts. You agree that the Creditor can claim benefits under these contracts and unless prohibited by law, terminate them to obtain refunds of unearned charges to reduce what you owe. If the Creditor gets a refund on insurance, service contracts, or other contracts, the Creditor will subtract it from what you owe. Once all amounts owed under this contract are paid, any remaining refunds will be paid to you.

**H. Returned Check Charge:** You agree to pay a returned check charge of $30.00 if a check, draft, or other order or payment that is dishonored for any reason.

**I. Default:** You will be in default if:
1. You do not make a payment when it is due; or
2. You gave false or misleading information on your credit application relating to this contract; or
3. Your vehicle is seized by any local, state, or federal authority and is not promptly and unconditionally returned to you; or
4. You file a bankruptcy petition or one is filed against you; or
5. You do not keep any other promise in this contract.

If you do not cure a default where allowed by law, Creditor can exercise Creditor's rights under this contract and Creditor's other rights under the law.

**J. Repossession:** If you do not cure a default where allowed by law, the Creditor may require you to pay at once the unpaid Amount Financed, the earned and unpaid part of the Finance Charge and all other amounts due under this contract. Creditor may repossess (take back) the vehicle, too. Creditor may also take goods found in or on the vehicle when repossessed and hold them for you.

**K. Your Right to Redeem:** If the vehicle is taken back, Creditor will send you a notice. The notice will say that you may redeem (buy back) the vehicle and will explain how to redeem the vehicle. You may redeem the vehicle up to the time the Creditor sells it or agrees to sell it. If you do not redeem the vehicle, it will be sold.

**L. Disposition of Motor Vehicle:** If the vehicle is taken back and sold, the money from the sale, less allowed expenses, will be used to pay the amount still owed on the contract. Allowed expenses include those paid as a direct result of having to retake the vehicle, hold it, prepare it for sale, and sell it. If the lawyer is not a salaried employee of the Creditor, reasonable lawyer's fees not exceeding 15 percent of the unpaid debt after default and legal costs are allowed, too. If there is any money left (surplus), it will be paid to you. If the money from the sale is not enough to pay off this contract and costs, you will pay what is still owed to the Creditor. If you do not pay the amount when the Creditor asks, the Creditor may charge you interest at the highest lawful rate until you pay.

**M. Collection Costs:** Except as otherwise provided by law, you must pay any and all expenses related to enforcing this contract, including collection expenses, lawyers' fees (If lawyer is not a salaried employee of Creditor) not exceeding 15 percent of the unpaid debt after default, and other legal expenses.

**N. Consumer Reports:** You authorize the Assignee listed on the front of this contract to obtain consumer credit reports from consumer reporting agencies (credit bureaus) for any reason and at any time in connection with this contract.

**O. Servicing and Collection:** You agree that Creditor, Creditor's affiliates, agents and service providers may monitor and record telephone calls regarding your account to assure the quality of our service or for other reasons. You also expressly consent and agree that Creditor, Creditor's affiliates, agents and service providers may use written, electronic or verbal means to contact you. This consent includes, but is not limited to, contact by manual calling methods, prerecorded or artificial voice messages, text messages, emails and/or automatic telephone dialing systems. You agree that Creditor, Creditor's affiliates, agents and service providers may use any email address or any telephone number you provide, now or in the future, including a number for a cellular phone or other wireless device, regardless of whether you incur charges as a result.

**P. Applicable Law:** You agree that this contract will be governed by the laws of the state of Alabama.

**Q. General:** This contract contains the entire agreement between Creditor and you relating to the sale and financing of the motor vehicle. If any part of this contract is not valid, all other parts stay valid. If Creditor doesn't enforce Creditor's rights every time, Creditor can still enforce them later. Creditor will exercise all of Creditor's rights in a lawful way.

Buyer acknowledges and accepts assignment of this contract to the Assignee (and any successor to Assignee). Buyer also consents to any subsequent assignment of this contract, and accepts this provision as notice of any such assignment, by Assignee or anyone else without further notice to Buyer. This consent and notice specifically includes any assignment of the security interest in the vehicle financed pursuant to this contract.

### FTC NOTICES

**NOTICE - ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.***

**Used Motor Vehicle Buyers Guide.** If you are buying a used vehicle with this contract, federal regulations may require a special Buyers Guide to be displayed on the window of the vehicle. THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

**Spanish Translation:** Guía para compradores de vehículos usados. LA INFORMACION QUE APARECE EN LA VENTANILLA DE ESTE VEHICULO FORMA PARTE DE ESTE CONTRATO. LA INFORMACION CONTENIDA EN EL FORMULARIO DE LA VENTANILLA ANULA CUALQUIER PREVISION QUE ESTABLEZCA LO CONTRARIO Y QUE APAREZCA EN EL CONTRATO DE VENTA.

*Does not apply if purchased for commercial or agricultural use. In that case, you (debtor) will not assert against any assignee or subsequent holder of this Contract any claims, defenses, or setoffs which you may have against the Seller or manufacturer of the vehicle.

### GUARANTY

To cause the Seller to sell the vehicle described on the front of this contract to the Buyer on credit, the person who signs below as a "Guarantor" guarantees the payment of this contract. This means that if the Buyer fails to pay any money that is owed on this contract, the person who signs as a guarantor will pay it when asked. The Guarantor who signs below agrees to be liable for the whole amount owed. The Guarantor also agrees to be liable even if the Creditor does one or more of the following: (a) gives the Buyer more time to pay one or more payments or, (b) releases any security. The Guarantor acknowledges receipt of a complete copy of this contract and this Guaranty at the time of signing.

Guarantor _____

Address _____

Guarantor Signs _____

### READ THIS ARBITRATION PROVISION CAREFULLY AND IN ITS ENTIRETY
### ARBITRATION

Arbitration is a method of resolving any claim, dispute, or controversy (collectively, a "Claim") without filing a lawsuit in court. Either you or Creditor ("us" or "we") (each, a "Party") may choose at any time, including after a lawsuit is filed, to have any Claim related to this contract decided by arbitration. Neither party waives the right to arbitrate by first filing suit in a court of law. Claims include but are not limited to the following: 1) Claims in contract, tort, regulatory or otherwise; 2) Claims regarding the interpretation, scope, or validity of this provision, or arbitrability of any issue except for class certification; 3) Claims between you and us, your/our employees, agents, successors, assigns, subsidiaries, or affiliates; 4) Claims arising out of or relating to your application for credit, this contract, or any resulting transaction or relationship, including that with the dealer, or any such relationship with third parties who do not sign this contract.

**RIGHTS YOU AND WE AGREE TO GIVE UP**
If either you or we choose to arbitrate a Claim, then you and we agree to waive the following rights:
- **RIGHT TO A TRIAL, WHETHER BY A JUDGE OR JURY**
- **RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR A CLASS MEMBER IN ANY CLASS CLAIM YOU MAY HAVE AGAINST US WHETHER IN COURT OR IN ARBITRATION**
- **BROAD RIGHTS TO DISCOVERY AS ARE AVAILABLE IN A LAWSUIT**
- **RIGHT TO APPEAL THE DECISION OF AN ARBITRATOR**
- **OTHER RIGHTS THAT ARE AVAILABLE IN A LAWSUIT**

**RIGHTS YOU AND WE DO NOT GIVE UP:** If a Claim is arbitrated, you and we will continue to have the following rights, without waiving this arbitration provision as to any Claim: 1) Right to file bankruptcy in court; 2) Right to enforce the security interest in the vehicle, whether by repossession or through a court of law; 3) Right to take legal action to enforce the arbitrator's decision; 4) Right to request that a court of law review whether the arbitrator exceeded its authority; and 5) Right to seek remedies in small claims court for disputes or claims within that court's jurisdiction.

You or we may choose the American Arbitration Association, or any other organization subject to our approval, to conduct the arbitration. The applicable rules (the "Rules") may be obtained from the selected organization. If there is a conflict between the Rules and this contract shall govern. This contract is subject to the Federal Arbitration Act (9 U.S.C. § 1 et seq.). The arbitration decision shall be in writing with a supporting opinion. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. To the extent that the total of your filing, administration, service or case management fee and your arbitrator or hearing fee exceeds $200, we will pay the amount in excess of $200, unless you choose to pay one-half of the total or unless the fees are reallocated in the award under applicable law or the organization's rules.

Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. Any portion of this arbitration provision that is unenforceable shall be severed, and the remaining provisions shall be enforced. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this arbitration provision shall be unenforceable. The validity and scope of the waiver of class action rights shall be decided by the court and not by the arbitrator.

FC 17601-SI (SEP 18)   (Previous editions may NOT be used.)   SEE OTHER SIDE FOR ADDITIONAL AGREEMENTS
FC 17601-B-SI