# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br><br>Sklar Exploration Company, LLC,<br>Debtor. | Case No. 20-12377 EEB<br>Chapter 11 |
| In re:<br><br>Sklarco, LLC,<br>Debtor. | Case No. 20-12380 EEB<br>Chapter 11 |
| | **Joint Administered Under<br>Case No. 20-12377 EEB** |

**LIMITED OBJECTION OF PICKENS FINANCIAL GROUP LLC, THE RUDMAN PARTNERSHIP, TAUBER EXPLORATION AND PRODUCTION COMPANY, CTM 2005, LTD. AND MER ENERGY, LTD. TO DEBTORS MOTION TO  MOTION TO CONTINUE HEARING ON ADEQUACY OF DISCLOSURE STATEMENT AND SET RELATED DATES ("TAUBER GROUP")**

*[Relates to Dkt. No. 782]*

**NOW INTO COURT**, through undersigned counsel, comes the Tauber Group. ("Respondents"), creditors and parties in interest of Sklar Exploration Company, LLC, ("SEC") in the jointly-administered bankruptcy cases (the "Cases") of SEC and Sklarco, LLC ("Sklarco", and collectively with SEC, the "Debtors"), who file this *Limited Objection to Debtors' Motion to Continue Hearing on Adequacy of Disclosure Statement and set Related Dates* [Docket No. 782] (the "Motion to Continue"), and respectfully represent as follows:

## Grounds for Objection

1. Despite ample time, both before and after an inconclusive mediation, the Debtors have been unable to fix the problems with the patently unconfirmable Plan filed on December 18, 2020.  The original Plan was dead on arrival for a number of reasons:

1

- It violates the absolute priority rule, leaving equity (trusts controlled by Howard Sklar) in place as owners of the Debtors (subject to a vague and undisclosed "escrow agreement" to be held by an unknown escrow agent). The role of "equity" is further clouded by certain agreements between Debtors and the Sklar Trusts which state that Debtors are operating and holding title to assets for the benefit of the trusts. The Disclosure Statement glosses over this, as has been Debtors' practice throughout the case. This is one of the grounds for which the Tauber Group sought appointment of a Chapter 11 Trustee or conversion to Chapter 7. The Court has put that appointment of trustee motion in "abeyance" until a later date.

- It purports to "cure" the defaults in all assumed JOA's and other executory contracts with a "check's in the mail" provision for payment of cure amounts over several years.

- It admits the Plan is not feasible if the participants in the South Brooklyn Units and/or the Escambia Prospect vote to remove SEC as Operator, which a majority of non-operators fully intend to do even if the Plan is confirmed. Additionally, the Escambia Prospect non-operators own the Abbyville Gas Plant, which processes the gas produced in the Brooklyn Units. The management fees anticipated by the Debtors for management of the Abbyville Gas Plant have not been approved by the Escambia Prospect participants in accordance with the explicit requirements of the Escambia Prospect Participation Agreement. CRO Katchadurian has testified that loss of operatorship of either Brooklyn or Escambia is fatal to the Plan. The other huge hole in feasibility is the lack of any exit financing or other source of outside capital. Indeed, there was never a DIP loan in this case – not even from the existing secured lender. What does that tell you? Indeed, the reason why so much cash call money was demanded and spent on other purposes prior to the filing of this case is that the bank had cut Debtors off from further loan advances, leaving the non-operators as the de facto lenders (although they didn't know it at the time).

The Plan is also objectionable because:

- It reserves prosecution of avoidance and other actions to the Debtors. This is a non-starter for the reason that there have been massive transfers of funds from Debtors to Howard Sklar and childrens' trusts. The companies have been used as a personal piggy bank for the trusts for years. And the trusts own the companies, which explains why Debtors cannot be left in control of litigation claims.

- It does not substantively consolidate the two Debtors. From the beginning, Debtors have admitted that money flows freely between the two companies on an as needed basis and the needy Debtor has always been SEC. But SEC has also transferred funds to Sklarco under the guise of "revenue distributions" or the like, which actually the funds were immediately transferred to Sklar family trusts. The trust assets should also be substantively consolidated to the extent that is legally possible.

2

2. So while the Tauber Group would welcome an Amended Plan that could remedy all of these issues, it seems highly unlikely, especially since there has been no serious effort whatsoever by Debtors to reach out to the Tauber Group or Ad Hoc Group to address these matters. And even the Committee admits today that it still has no firm deal with the Debtors.

3. Furthermore, the mounting post-petition losses reflected in the Debtors' operating reports and the staggering professional fees being charged by Debtors' professionals and the CRO, demand that any Amended Plan be filed <u>no later than February 12</u>, and that confirmation be granted or denied on an expedited basis by the end of February. No creditor will complain about this due to the Debtors' inexcusable delays in coming up with a plan that had any possible prospect of confirmation. The Debtors' complaints should be ignored.

3. If the Court does choose to grant any additional time to file an Amended Plan and Disclosure Statement, the Tauber Group requests that (a) the Court impose a timeline that results in a confirmation, <u>or not</u>, by the last week of February; (b) there be no extension of exclusivity period, which has expired and, in any event, was not explicitly requested; and (c) Debtors comply with the procedure described by the Court on the record at the December 4, 2020 Status Hearing, that requires Debtors to file separate motions to assume executory contract as to each contract to be assumed under the terms of the plan – a procedure ignored by Debtors when they filed the original Plan on December 18, 2020. This is especially critical because Debtors' original Plan calls for a vague long term payout of cure costs which flies in the face of the Bankruptcy Code requirement that cure costs be paid promptly. All the Debtors have proposed is that "the check's in the mail."

**Prayer**

Respondents respectfully request that this Court enter an order denying Debtors' Motion to Continue unless the extension is limited in duration, is not an extension of exclusivity, and that Debtors comply with this Court's procedures requiring that at the time the plan is filed, a separate motion to assume executory contract be filed as to each executory contract to be assumed.

Dated this 4th day of February, 2021.

Respectfully submitted,

**Maynes, Bradford, Shipps & Sheftel, LLP**

/s/ Thomas H. Shipps
Thomas H. Shipps
/s/ Shay L. Denning
Shay L. Denning
Maynes, Bradford, Shipps & Sheftel, LLP
835 E. Second Ave., Suite 123
Durango, CO 81301
Telephone: (970) 247-1755
Facsimile: (970) 247-8827
Email: tshipps@mbssllp.com;
    sdenning@mbssllp.com

and

/s/ Barnet B. Skelton, Jr.
Barnet B. Skelton, Jr.
Attorney at Law
815 Walker, Suite 1502
Houston, TX 77002
Telephone: (713) 516-7450
Facsimile: (713)659-8764
Email: barnetbjr@msn.com

Counsel for Respondents

4

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that, on February 4, 2021, the foregoing instrument was electronically filed and served via CM/ECF pursuant to L.B.R. 9036-1. All attorneys and parties identified with the Court for electronic service on the record in this case were served by electronic service in accordance with the CM/ECF system on the date of filing

                                       /s/ *Barnet B. Skelton, Jr.*
                                       Barnet B. Skelton, Jr.