# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SKLAR EXPLORATION COMPANY, LLC | ) | Case No. 20-12377-EEB |
| EIN: 72-1417930 | ) | |
| | ) | Chapter 11 |
| Debtor-in-Possession. | ) | |
| | ) | |
| IN RE: | ) | |
| | ) | |
| SKLARCO, LLC | ) | Case No. 20-12380-EEB |
| EIN: 72-1425432 | ) | |
| | ) | Chapter 11 |
| | ) | |
| Debtor-in-Possession. | ) | |

**KUDZU OIL PROPERTIES, LLC'S, OBJECTION TO DEBTORS' EXPEDITED MOTION TO SET HEARING ON MOTION FOR CLARIFICATION OF ORDERS AND TO AUTHORIZE IMMEDIATE OFFSET OF JOINT INTEREST BILLING OBLIGATIONS (DOCKET NO. 777)**

**COMES NOW**, Kudzu Oil Properties, LLC ("**Kudzu**"), by and through its undersigned counsel, for its Objection (the "**Objection**") to Debtors' Expedited Motion to Set Hearing on Motion for Clarification of Orders to Authorize Immediate Offset of Joint Interest Billing Obligations (Docket No. 777) (the "**Emergency Motion**").[1] In support of the Objection, Kudzu states as follows:

### Introduction

1. The Debtors' Chapter 11 cases have stalled significantly, for reasons unrelated to the Emergency Motion, and now the Debtors seek to offset against working interest owners on

---

[1] The Emergency Motion appears to be aimed at Kudzu only and not Alabama Oil Company or Apple River Investments. However, to the extent that relief is requested against either Alabama Oil Company or Apple River Investments, they hereby join all pleadings in opposition to the Emergency Motion.

account of unpaid JIBs. Kudzu is a working interest owner that is owed no less than $1,168,752.29 on account of prepetition cash call advances and missed revenue payments that were spent by the Debtors without Kudzu's authority. The Debtors refuse to acknowledge that the dire position they find themselves in has been caused by their own conduct during these Chapter 11 cases—not working interest owners with unpaid JIBs. First, the Debtors have incurred substantial administrative expenses and professional fees which has likely rendered them administratively insolvent. Second, the Debtors will be unable to confirm a Chapter 11 plan in these cases because they do not have the cash available to timely satisfy their cure obligations as required by Section 365 of the Bankruptcy Code. In other words, absent a ***real*** funding source, the Debtors will be unable to assume any executory contracts and there will simply be nothing to reorganize around. Third, the Debtors fail to acknowledge that the JIBs they seek to offset against are also subject to recoupment claims and rejection damages claims held by working interest owners such that the parties do not know what is owed between them until such agreements have been rejected. Fourth, despite the various orders which the Debtors acknowledge were "heavily negotiated"—the Debtors flout the requirements of Fed. R. Civ. P. 60(b) and seek to clarify prior orders that are clear and unambiguous on their face. Accordingly, the Court should deny the Motion.

## Background

2. On May 18, 2020, the Court entered its *Order Authorizing Payment of Working Interest Obligations and Limited Offset of Joint Interest Billing Obligations* (Docket No. 317) (the "**Oil and Gas Order**"). The Oil and Gas Order, in relevant part, states:

> ***Sklar Exploration Company, LLC is authorized to offset joint interest billing obligations owed to it against revenue owed to a working interest holder when expressly authorized to do so in writing by that working interest holder***; provided, however, no such offset shall exceed the amount of revenues received post-petition that is specifically payable from Sklar Exploration Company, LLC, as operator, to the joint interest billing obligor;

2

(Docket No. 317 at ¶ 4) (emphasis added).

3. Following the two-day hearing, and entry of a Third Interim Order, the Court entered its "**Final Cash Collateral Order**" (Docket No. 433). The Final Cash Collateral Order, in relevant part, states:

> (b) The Budget shall provide, that at all times during these Bankruptcy Cases, Sklarco shall deposit 100% of the revenue received from non-operating working interests into the operating account of SEC, and *SEC shall pay the revenues owing to the non-insider working interest holders in accordance with the Order Authorizing Payment of Working Interest Obligations and Limited Offset of Joint Interest Billing Obligations* (Dct. No. 317)
>
> (c) The Budget shall provide, and the Debtors shall, at all times during these Bankruptcy Cases, deposit 100% of the revenue received on account of non-operating working interests ("WIO Revenue") into the revenue account maintained by SEC. . . . SEC shall account for receipt and deposit of WIO Revenue by working interest owner in accordance with best practices for the industry, and may not use funds due to noninsider working interest owner without that owner's written consent. SEC shall pay WIO Revenue to the non-insider working interest holders in accordance with the *Order Authorizing Payment of Working Interest Obligations and Limited Offset of Joint Interest Billing Obligations* [Dkt. No. 317], which payments are indefeasible subject to rights and obligations under relevant Participation Agreements, Joint Operating Agreements, or similar agreements. Subject to the Budget, *SEC and a non-insider working interest owner may agree in writing to offset any WIO Revenue due to that interest owner against any payments due from that WIO to SEC, including pre- and post-petition amounts due*.

(Docket No. 433 at p. 10-11, ¶ 2(b)-(c) (emphasis in bold italics added).

4. On September 4, 2020, the Debtors filed their Motion for Clarification of Orders and to Authorize Immediate Offset of Joint Interest Billing Obligations (Docket No. 551) (the "**Clarification Motion**"). The Clarification Motion requested that the Final Cash Collateral Order entered in this case be clarified as follows:

- Debtor SEC be required to pay revenue to all working interest holders subject to the applicable agreements;

3

- Debtor SEC's ability to undertake collection efforts, in accordance with the applicable agreements, not be limited, including without limitation, offsetting unpaid JIBs against post-petition revenue owed to a working interest holder and/or foreclosing on a non-compliant working interest holder's interest;

- Debtor SEC not be required to obtain written consent from a non-compliant working interest holder prior to exercising any rights under the applicable agreements to offset JIBs against revenue; and

- Working interest holders be prohibited from offsetting unpaid JIBs against prepetition revenue owed to such working holder or pre-petition cash call advances.

- The Debtors further requested that they be immediately authorized to offset JIBs owed by non-compliant working interest holders including the Kudzu.

(Docket No. 551 at ¶¶ 17-18).

5. Kudzu previously objected to the Clarification Motion and joined in all other objections of the working interest owners (the "**Kudzu Joinder**"). (Docket No. 567).

6. On October 21, 2020, the Debtors filed their Supplement to the Clarification Motion (Docket No. 624) (the "**Supplement**").

7. On October 4, 2020, the Court held a hearing on the Clarification Motion and held the matter in abeyance pending further order of the Court. (Docket No. 630).

8. On December 18, 2020, the Debtors filed their Chapter Plan and Disclosure Statement. (Docket Nos. 739-740). The Disclosure Statement identifies which joint operating agreements the Debtors intend to assume and reject.

9. On January 22, 2021, the Debtors filed the Expedited Motion requesting the Court hold a hearing on the Clarification Motion and further alleged that progress has been made in these Chapter 11 cases due to the filing of their Disclosure Statement and Plan, and that a purported agreement has been reached between the Debtors, East-West Bank and the Official Committee of Unsecured Creditors. (Docket No. 777 at ¶ 9). The Debtors further complain that the failure to

receive JIBs from working interest owners, in the approximate amount of $2 million, is creating difficulties in cash flow. (*Id*. at ¶ 10-11).

10. On February 2, 2021, the Debtors filed their Monthly Operating Report for December 2020 (Docket No. 795) (the "**December MOR**"). The December MOR demonstrates that the Debtors have burned through substantial cash since these Chapter 11 cases were filed and have *negative* net income by more than $9 million. (Docket No. 795 at p. 28, showing that post-petition net income is negative in the amount of $9,059,387).

**Objection**

11. The Debtors attempt to place all of the blame for their administrative insolvency on a handful of working interest owners who owe post-petition JIBs while ignoring such parties' right of recoupment. However, the Debtors fail to acknowledge that even if all of the unpaid JIBs had been paid the Debtors would still have negative net income of approximately $7 million— including millions in professional fees. Furthermore, the Debtors' Plan, which remains pending, is patently unconfirmable because the Debtors are unable to cure all defaults for any assumed executory contracts as required under Section 365 of the Bankruptcy Code.[2] And unless the Debtors can find a party to provide financing or capital to fund such cure obligations any Plan, whether proposed by the Debtors or any other party, will be unconfirmable. Accordingly, the Debtors' problems run far deeper than the unpaid JIBs complained of in the Clarification Motion.

12. The Debtors acknowledge that both the Oil and Gas Order and Final Cash Collateral Order were "heavily negotiated." (*See* Clarification Motion at ¶ 9; Supplement at ¶ 6; and Emergency Motion at ¶ 3). However, the Debtors assert that these "heavily negotiated" orders: (a) have created "confusion of interpretation (Clarification Motion at ¶20); (b) contain

---

[2] The Debtors' current Plan is unconfirmable on numerous bases: (i) violation of the absolute priority rule; (ii) failure to satisfy Sections 365 and 1129(a)(1); and (iii) it is not feasible.

5

"ambiguities" (Clarification Motion at ¶21); (c) precipitated certain conduct "inadvertently (Supplement at ¶¶ 1-2); (d) produced "unintended results" (Supplement at ¶ 6); and (e) are "inequitable" (Supplement at ¶ 22). Consequently, the Debtors purportedly seek an order "clarifying" the Orders. To the contrary, the Debtors are not seeking to "clarify" the Orders; rather, they are seeking to alter or amend the Orders or obtain relief from the Orders to avoid the consequences of the "heavily negotiated" deal they struck without pleading – much less satisfying -- any of the standards of Fed. R. Bankr. P. 9023 (incorporating Fed. R. Civ. P. 59) or Fed. R. Bankr. P. 9024 (incorporating Fed. R. Civ. P. 60). The Debtors' efforts are tantamount to "buyers' remorse" because subsequent events in these Chapter 11 cases have not worked out as hoped for— despite the fact they have had nearly a year in Chapter 11 *and* oil prices have significantly risen since Final Cash Collateral Order was entered. Accordingly, the Clarification Motion, Supplement and Emergency Motion can be denied on that basis alone.

13. Furthermore, the obligations which the Debtors complain are owed are subject to the right of recoupment. The equitable remedy of recoupment is available to a creditor when the creditor's and debtor's claims "arise out of a single integrated transaction" and "are so closely intertwined that allowing the debtor to escape its obligations would be inequitable." *See In re Beaumont*, 586 F.3d 776, 781 (10th Cir. 2009) (citing *In re Peterson Distributing, Inc.*, 82 F.3d 956, 960 (10th Cir. 1996)). The agreements which the Debtors' seek to collect the unpaid JIBs on are the same agreements in which substantial prepetition revenue is owed to Kudzu. The claims for which the Debtors seek to offset are inherently intertwined with Kudzu's right to demand payment of its missing revenue payments. Thus, it is unclear whether Kudzu actually owes the Debtors anything.

6

14. Moreover, from a practical perspective, the Debtors' current Disclosure Statement and Plan identify that nearly every executory contract that Kudzu is a party is going to be rejected on the effective date of their Plan. (*See* Disclosure Statement at p. 91-95). While the current Plan is likely going to be withdrawn, there is no reason that the Debtors should delay rejecting any particular executory contracts which will fix the amount of rejection damages for each party and help true up what is exactly owed between the parties. The Debtors could easily file a motion rejecting these agreements. Instead, dragging the issue out further only increases the amount of potential damages the Debtors may ultimately seek to recoup against the working interest owners and it benefits no parties hereto.

### Joinder and Reservation of Rights

15. Kudzu joins in and incorporates the objections of all other working interest holders to the extent they are not inconsistent with this Objection.

16. Kudzu makes no admission of fact or law and reserves any and all rights, claims, objections and defenses that may be available to it in any hearing on the Motion to Clarify, or any other matter pending before this Court.

WHEREFORE, Kudzu respectfully requests that this Court sustain this Objection consistent herewith, and for all such other and further relief this Court finds fair and equitable under the circumstances.

Dated: February 5, 2021.    Respectfully submitted,

**KUDZU OIL PROPERTIES, LLC**

By: */s/Timothy M. Swanson*
Timothy M. Swanson (Colorado No. 47267)
MOYE WHITE LLP
1400 16th Street
6th Floor
Denver, Colorado 80202-1486
Tel: (303) 292-2900
Fax: (303) 292 4510
Tim.Swanson@moyewhite.com
*Counsel to Kudzu Oil Properties, LLC*

--and--

Craig M. Geno
Law Offices of Craig M. Geno, PLLC
587 Highland Colony Parkway
Ridgeland, Mississippi 39157
Tel: (601) 427-0048
Fax: (601) 427-0050
cmgeno@cmgenolaw.com
*Counsel to Kudzu Oil Properties, LLC*

## Certificate of Service

I hereby certify that on this 5th day of February 2021, I caused the foregoing **KUDZU OIL PROPERTIES, LLC'S, OBJECTION TO DEBTORS' EXPEDITED MOTION TO SET HEARING ON MOTION FOR CLARIFICATION OF ORDERS AND TO AUTHORIZE IMMEDIATE OFFSET OF JOINT INTEREST BILLING OBLIGATIONS (DOCKET NO. 777)** to be served *via* CM/ECF to all parties that have filed electronic appearances and requested service in this case.

*s/Timothy M. Swanson*
Timothy M. Swanson