# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: <br><br> SKLAR EXPLORATION COMPANY, LLC, <br> EIN: 72-1417930 <br><br> Debtor. | Case No. 20-12377-EEB <br><br> Chapter 11 |
| SKLARCO, LLC, <br> EIN: 72-1425432 <br><br> Debtor. | Case No. 20-12380-EEB <br><br> Chapter 11 |

**EAST WEST BANK'S REPLY AND SUPPLEMENTAL STATEMENT OF POSITION IN SUPPORT OF DEBTORS' MOTION FOR CLARIFICATION OF ORDERS AND TO AUTHORIZE IMMEDIATE OFFSET OF JOINT INTEREST BILLING OBLIGATIONS**

Secured creditor, East West Bank, a California state banking corporation ("EWB"), in its capacity as a lender and the administrative agent under the Credit Agreement dated June 15, 2018 with Sklar Exploration Company LLC ("SEC") and Sklarco LLC ("Sklarco") (collectively, the "Debtors"), through counsel, hereby submits this reply to various "supplemental" objections of certain working interest holders. The Court will recall that EWB filed a statement of position in support of the Debtors' *Motion for Clarification of Orders and to Authorize Immediate Offset of Joint Interest Billing Obligations* (the "Motion"), on September 29, 2020.[1] EWB hereby respectfully supplements its statement of position to address the arguments of objecting parties, as follows:

## THE MOTION IS PROPER.

1. As a threshold matter, the Debtors' request for the Court to clarify and enforce its own order is proper. The objectors' arguments that a court may not review its

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

4824-9162-4155

own orders is simply contrary to the law. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders."); *In re Galaz*, 841 F.3d 316, 322 (5th Cir. 2016).

2. The Motion has become even more urgent with the further dissipation of cash (EWB's cash collateral) since the time of the initial hearing. With a plan structure now agreed upon in principle among the Debtors, the Committee, and EWB, the Debtors need the requested relief to advance through the plan confirmation process.

**THE OBJECTORS' OPPORTUNISTIC INTERPRETATIONS ARE WRONG.**

3. The objectors' substantive position is equally without merit. Throughout these cases, a small but extremely vocal and recalcitrant minority of working interest holders have appeared determined to defeat the Debtors' reorganization efforts. If proven true, such conduct could eliminate their right to vote on a plan. *E.g.*, *DISH Network Corp. v. DBSD North America Inc.*, 634 F. 3d 79 (2d Cir. 2011) (court properly designated vote of claim buyer who sought to defeat debtor's plan so that it might acquire debtor or its assets); *In re Dune Deck Owners Corp.*, 175 B.R. 839, 845 (Bankr. S.D.N.Y. 1995) (a creditor's plan vote "without regard to the treatment of its claim, but instead, to achieve some benefit or goal inconsistent with interests of the estate and its creditors, the Court must inquire into those motives in order to preserve the integrity of the Chapter 11 process"). SEC's failure would result in the JOAs being rejected, leaving hundreds of JOA counterparties with general unsecured claims rather than the opportunity for prompt cure.

4. Notably, other working interest holders, whose counsel were involved in drafting the provisions of the orders purportedly in dispute, have continued to pay their post-petition JIB obligations and do not contest the basic substance of the Motion [ECF No. 564], thus undermining the non-paying objectors' opportunistic (and patently erroneous) interpretation of those orders.

5. Read fairly and in their entirety, the orders at issue reflect the parties' contemplation that, as a matter of administrative convenience, working interest holders

could agree to the post-petition satisfaction of certain JIB obligations by a commensurate reduction in their revenue payments.[2]

6. This accommodation for working interest holders was never intended to limit nor prospectively waive the Debtors' enforcement rights to collect JIBs under the applicable JOAs and other agreements. That much is plain even from the isolated language quoted by the objecting parties.

7. In the Cash Collateral Order, for example, any agreement for setoff was always (and still is) subject to the Debtors' cash flow needs: "***Subject to the Budget***, SEC and a non-insider working interest owner may agree in writing to offset any WIO Revenue due to that interest owner against any payments due from that WIO to SEC . . . ." [ECF No. 433 at 11, ¶ (b) (emphasis added)]

8. Also under the Cash Collateral Order, the otherwise "indefeasible" revenue payments from SEC to working interest holders always remain "***subject to rights and obligations under relevant Participation Agreements, Joint Operating Agreements, or similar agreements***." [*Id*. at 11, ¶ (c) (emphasis added)]

---

[2] Debtors' counsel made this abundantly clear at the evidentiary hearing on use of cash collateral, as the Kudzu parties and, through joinder, McCombs Energy, Ltd. and FPCC USA, have acknowledged by quoting the following colloquy:

> MS. RILEY: Now in some circumstances, parties have requested to be -- to have their joint interest billings offset in future revenues. We were just asking to be able to continue to honor that requests that were made, *again, for the convenience of the parties*. *Where it's not permitted by the joint operating agreement, or by some other agreement between the parties*, we are not asking to just automatically offset joint interest billings against people's revenues . . . .
>
> THE COURT: Well, wait a second. So you're just saying where the parties have requested it, you want to continue that practice.
>
> MS. RILEY: Exactly.

Transcript of Hearing on May 12, 2020, at 166 (emphasis added by EWB counsel) [ECF Nos. 314; 568 at 3 n.1; 808 at 2].

3

4824-9162-4155

9. The Oil and Gas Order also expressly makes revenue payments subject to the Cash Collateral Order, as well as the input of EWB and the Committee: "Debtor Sklar Exploration Company is authorized and directed . . . to continue to honor and pay, *in consultation with East West Bank and the Committee and in accordance with any applicable order authorizing the use of cash collateral*, all future revenue payments owned by or owed to non-insider holders of overriding royalty interests, royalty interests, and working interests, for all oil and gas revenues received on a post-petition basis . . . ." [ECF No. 317 at 1, ¶ 2]

10. The objectors utterly ignore these and other provisions in contending that the Court somehow constrained "the Debtors to offset unpaid joint interest billings against revenue owed to a working interest holder *only* when 'expressly authorized to do so in writing by that working interest holder'" [ECF No. 804 at 2, ¶ 5 (emphasis in original)]. Such an argument is a hermeneutic stretch at best, and a blatant misreading of the orders at worst. The clearest indication of the argument's weakness is that the italicized word "only," which does the bulk of the objectors' work in the sentence quoted above, does not actually appear in the text.

11. Rather, the Oil and Gas Order merely provides: "Sklar Exploration Company, LLC is authorized to offset joint interest billing obligations owed to it against revenue owed to a working interest holder when expressly authorized to do so in writing by that working interest holder . . ." [ECF No. 317 at 2, ¶ 4]. That language does nothing to foreclose other avenues of collection.

12. The Cash Collateral Order similarly uses permissive rather than mandatory language: "Subject to the Budget, SEC and a non-insider working interest owner *may* agree in writing to offset any WIO Revenue due to that interest owner against any payments due from that WIO to SEC . . ." [ECF at 11-12, ¶ (c) (emphasis added)]. Had the parties intended for these permissive provisions to be mandatory and wholly supplant the Debtors'

4

rights under the JOAs and other agreements, they would have used exclusive language. That they did not is dispositive.

13. It is unreasonable to believe that EWB (or the Debtors or the Committee) would have agreed to allow the working interest holders to shirk their payment obligations through a court order, thereby forcing SEC to shoulder all of the expenses associated with post-petition operations without receiving any of the revenue from the oil and gas production. Indeed, the original and subsequent cash collateral budgets all contemplated the ongoing payment of JIBs, and the objectors certainly were aware of the budget at the time the orders were negotiated.

14. In short, the unreasonable interpretation promoted by the objectors does violence to the intent and plain language of the orders.

**THE OBJECTORS ARE NOT ENTITLED TO RECOUPMENT.**

15. Only one objecting party articulated a recoupment theory [ECF No. 569] until five days ago when the Kudzu parties belatedly made reference to the doctrine in their objection to the Debtors' procedural request to set a renewed hearing on the Motion [ECF No. 807]. Recoupment is not a defense to a procedural request to set a hearing. The Court should strike the belated and improper invocation of the doctrine.

16. Even if recoupment had been properly and timely invoked, however, it has no application here for the reasons set forth in the Debtors' Supplement to the Motion [ECF No. 624]. Recoupment is an equitable remedy and should not be applied when it would result in prejudice to debtors or other creditors. Inequity would certainly result here, not only by hamstringing the Debtors' reorganization efforts, but also by elevating the prepetition claims of non-paying working interest holders above similarly situated claimants, thereby penalizing the working interest holders who have honored this Court's orders and continued to pay their JIB obligations.

4824-9162-4155

## CONCLUSION

Based on the foregoing, EWB supports the Motion and the entry of an order clarifying the Oil and Gas Order and the Cash Collateral Order, and authorizing SEC immediately to offset JIBs against post-petition revenue otherwise payable to non-compliant working interest holders.

DATED this 10th day of February, 2021.

SNELL & WILMER L.L.P.

By: */s/ Bryce A. Suzuki*
Bryce A. Suzuki
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Phone: 602-382-6000
Email: bsuzuki@swlaw.com

Stephanie A. Kanan
1200 17th Street, Suite 1900
Denver, Colorado 80202
Phone: (303) 634-2086
Email: skanan@swlaw.com

4824-9162-4155

## **CERTIFICATE OF MAILING**

    The undersigned hereby certifies that on this 10th day of February 2021, a copy of the foregoing document was filed via ECF and was served by electronic transmission to all registered ECF users appearing in this case.

                                                      */s/ Bryce A. Suzuki*

4824-9162-4155