

April 12, 2012

Graddy 34-8 #1 Well
Northeast Quarter, Sec 34
Township 4 North, Range 12 East

To Whom It May Concern:

Enclosed please find a copy of the Joint Operating Agreement, for the NE/4 of Sec. 34, Township 4 North, Range 12 East, Conecuh County, Alabama. Please execute the original signature pages and have the acknowledgment pages completed by a notary public, returning original pages to my attention.

Should you have any questions, please do not hesitate to contact me.

Sincerely,

Lindsay Abernathy
Lease Analyst

Encl.

A.A.P.L. FORM 610-1982

# MODEL FORM OPERATING AGREEMENT
### Northeast Quarter (NE ¼) Section 34,
### Township 4 North, Range 12 East
### Conecuh County, Alabama

OPERATING AGREEMENT

DATED

March 15 , 2012 ,
<span style="font-size:smaller">Year</span>

OPERATOR   Sklar Exploration Company L.L.C.

CONTRACT AREA   As shown on Exhibit "A" to this Agreement.

COUNTY OR PARISH OF   Conecuh                STATE OF   Alabama

COPYRIGHT 1982 – ALL RIGHTS RESERVED
AMERICAN ASSOCIATION OF PETROLEUM
LANDMEN, 4100 FOSSIL CREEK BLVD., FORT
WORTH, TEXAS, 76137-2791, APPROVED
FORM. A.A.P.L. NO. 610 – 1982 REVISED

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

## TABLE OF CONTENTS

| Article | Title | Page |
|---|---|---|
| I. | DEFINITIONS | 1 |
| II. | EXHIBITS | 1 |
| III. | INTERESTS OF PARTIES | 1 |
| | A. OIL AND GAS INTERESTS | 2 |
| | B. INTERESTS OF PARTIES IN COSTS AND PRODUCTION | 2 |
| | C. EXCESS ROYALTIES, OVERRIDING ROYALTIES AND OTHER PAYMENTS | 2 |
| | D. SUBSEQUENTLY CREATED INTERESTS | 2 |
| IV. | TITLES | 2 |
| | A. TITLE EXAMINATION | 2 |
| | B. LOSS OF TITLE | 2-3 |
| | 3. Other Losses | 3 |
| V. | OPERATOR | 3 |
| | A. DESIGNATION AND RESPONSIBILITIES OF OPERATOR | 3 |
| | B. RESIGNATION OR REMOVAL OF OPERATOR AND SELECTION OF SUCCESSOR | 3 |
| | 1. Resignation or Removal of Operator | 3 |
| | 2. Selection of Successor Operator | 3 |
| | C. EMPLOYEES | 3 |
| | D. DRILLING CONTRACTS | 3 |
| VI. | DRILLING AND DEVELOPMENT | 3-4 |
| | A. INITIAL WELL | 4 |
| | B. SUBSEQUENT OPERATIONS | 4 |
| | 1. Proposed Operations | 4 |
| | 2. Operations by Less than All Parties | 4-5 |
| | 3. Stand-By Time | 5 |
| | 4. Sidetracking | 5-6 |
| | C. TAKING PRODUCTION IN KIND | 6 |
| | D. ACCESS TO CONTRACT AREA AND INFORMATION | 6 |
| | E. ABANDONMENT OF WELLS | 6 |
| | 1. Abandonment of Dry Holes | 6 |
| | 2. Abandonment of Wells that have Produced | 6-7 |
| | 3. Abandonment of Non-Consent Operations | 7 |
| VII. | EXPENDITURES AND LIABILITY OF PARTIES | 7 |
| | A. LIABILITY OF PARTIES | 7 |
| | B. LIENS AND PAYMENT DEFAULTS | 7 |
| | C. PAYMENTS AND ACCOUNTING | 7 |
| | D. LIMITATION OF EXPENDITURES | 7 |
| | 1. Drill or Deepen | 7 |
| | 2. Rework or Plug Back | 8 |
| | 3. Other Operations | 8 |
| | E. RENTALS, SHUT-IN WELL PAYMENTS AND MINIMUM ROYALTIES | 8 |
| | F. TAXES | 8 |
| | G. INSURANCE | 8 |
| VIII. | ACQUISITION, MAINTENANCE OR TRANSFER OF INTEREST | 9 |
| | A. SURRENDER OF LEASES | 9 |
| | B. RENEWAL OR EXTENSION OF LEASES | 9 |
| | C. ACREAGE OR CASH CONTRIBUTIONS | 9 |
| | D. MAINTENANCE OF UNIFORM INTEREST | 9 |
| | E. WAIVER OF RIGHTS TO PARTITION | 9 |
| IX. | INTERNAL REVENUE CODE ELECTION | 9 |
| X. | CLAIMS AND LAWSUITS | 9 |
| XI. | FORCE MAJEURE | 9 |
| XII. | NOTICES | 9 |
| XIII. | TERM OF AGREEMENT | 10 |
| XIV. | COMPLIANCE WITH LAWS AND REGULATIONS | 10 |
| | A. LAWS, REGULATIONS AND ORDERS | 10 |
| | B. GOVERNING LAW | 10 |
| | C. REGULATORY AGENCIES | 10 |
| XV. | OTHER PROVISIONS | 11-13 |
| XVI. | MISCELLANEOUS | 14 |

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

## OPERATING AGREEMENT

THIS AGREEMENT, entered into by and between ___Sklar Exploration Company L.L.C._____, hereinafter designated and referred to as "Operator", and the signatory party or parties other than Operator, sometimes hereinafter referred to individually herein as "Non-Operator", and collectively as "Non-Operators".

### WITNESSETH:

WHEREAS, the parties to this agreement are owners of oil and gas leases and/or oil and gas interests in the land identified in Exhibit "A", and the parties hereto have reached an agreement to explore and develop these leases and/or oil and gas interests for the production of oil and gas to the extent and as hereinafter provided,

NOW, THEREFORE, it is agreed as follows:

### ARTICLE I.
### DEFINITIONS

As used in this agreement, the following words and terms shall have the meanings here ascribed to them:

A. The term "oil and gas" shall mean oil, gas, casinghead gas, gas condensate, and all other liquid or gaseous hydrocarbons and other marketable substances produced therewith, unless an intent to limit the inclusiveness of this term is specifically stated.

B. The terms "oil and gas lease", "lease" and "leasehold" shall mean the oil and gas leases covering tracts of land lying within the Contract Area which are owned by the parties to this agreement.

C. The term "oil and gas interests" shall mean unleased fee and mineral interests in tracts of land lying within the Contract Area which are owned by parties to this agreement.

D. The term "Contract Area" shall mean all of the lands, oil and gas leasehold interests and oil and gas interests intended to be developed and operated for oil and gas purposes under this agreement. Such lands, oil and gas leasehold interests and oil and gas interests are described in Exhibit "A".

E. The term "drilling unit" shall mean the area fixed for the drilling of one well by order or rule of any state or federal body having authority. If a drilling unit is not fixed by any such rule or order, a drilling unit shall be the drilling unit as establish-ed by the pattern of drilling in the Contract Area or as fixed by express agreement of the Drilling Parties.

F. The term "drillsite" shall mean the oil and gas lease or interest on which a proposed well is to be located.

G. The terms "Drilling Party" and "Consenting Party" shall mean a party who agrees to join in and pay its share of the cost of any operation conducted under the provisions of this agreement.

H. The terms "Non-Drilling Party" and "Non-Consenting Party" shall mean a party who elects not to participate in a proposed operation.

Unless the context otherwise clearly indicates, words used in the singular include the plural, the plural includes the singular, and the neuter gender includes the masculine and the feminine.

### ARTICLE II.
### EXHIBITS

The following exhibits, as indicated below and attached hereto, are incorporated in and made a part hereof:

☑ A. Exhibit "A", shall include the following information:
    (1) Identification of lands subject to this agreement,
    (2) Restrictions, if any, as to depths, formations, or substances,
    (3) Percentages or fractional interests of parties to this agreement,
    (4) Oil and gas leases and/or oil and gas interests subject to this agreement,
    (5) Addresses of parties for notice purposes.
☑ B. Exhibit "B", Form of Lease.
☑ C. Exhibit "C", Accounting Procedure.
☑ D. Exhibit "D", Insurance.
☑ E. Exhibit "E", Gas Balancing Agreement.

If any provision of any exhibit, except Exhibits "E", is inconsistent with any provision contained in the body of this agreement, the provisions in the body of this agreement shall prevail.

### ARTICLE III.
### INTERESTS OF PARTIES

**A. Oil and Gas Interests:**

If any party owns an oil and gas interest in the Contract Area, that interest shall be treated for all purposes of this agreement and during the term hereof as if it were covered by the form of oil and gas lease attached hereto as Exhibit "B", and the owner thereof shall be deemed to own both the royalty interest reserved in such lease and the interest of the lessee thereunder.

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

**B.   Interests of Parties in Costs and Production:**

Unless changed by other provisions, all costs and liabilities incurred in operations under this agreement shall be borne and paid, and all equipment and materials acquired in operations on the Contract Area shall be owned, by the parties as their interests are set forth in Exhibit "A". In the same manner, the parties shall also own all production of oil and gas from the Contract Area subject to the payment of royalties to the extent of _____ all jointly owned lease burdens _____ which shall be borne as hereinafter set forth.

Regardless of which party has contributed the lease(s) and/or oil and gas interest(s) hereto on which royalty is due and payable, each party entitled to receive a share of production of oil and gas from the Contract Area shall bear and shall pay or deliver, or cause to be paid or delivered, to the extent of its interest in such production, / the royalty amount stipulated hereinabove and shall hold the other parties free from any liability therefor. No party shall ever be responsible, however, on a price basis higher than the price received by such party, to any other party's lessor or royalty owner, and if any such other party's lessor or royalty owner should demand and receive settlement on a higher price basis, the party contributing the affected lease shall bear the additional royalty burden attributable to such higher price.

Nothing contained in this Article III.B. shall be deemed an assignment or cross-assignment of interests covered hereby.

**C.   Excess Royalties, Overriding Royalties and Other Payments:**

Unless changed by other provisions, if the interest of any party in any lease covered hereby is subject to any royalty, overriding royalty, production payment or other burden on production / .. such party so burdened shall assume and alone bear all such excess obligations and shall indemnify and hold the other parties hereto harmless from any and all claims and demands for payment asserted by owners of such excess burden.

**D.   Subsequently Created Interests:**

If any party should hereafter create an overriding royalty, production payment or other burden payable out of production attributable to its working interest hereunder, or if such a burden existed prior to this agreement and is not set forth in Exhibit "A", or was not disclosed in writing to all other parties prior to the execution of this agreement by all parties, or is not a jointly acknowledged and accepted obligation of all parties (any such interest being hereinafter referred to as "subsequently created interest" irrespective of the timing of its creation and the party out of whose working interest the subsequently created interest is derived being hereinafter referred to as "burdened party"), and:

1.   If the burdened party is required under this agreement to assign or relinquish to any other party, or parties, all or a portion of its working interest and/or the production attributable thereto, said other party, or parties, shall receive said assignment and/or production free and clear of said subsequently created interest and the burdened party shall indemnify and save said other party, or parties, harmless from any and all claims and demands for payment asserted by owners of the subsequently created interest; and,

2.   If the burdened party fails to pay, when due, its share of expenses chargeable hereunder, all provisions of Article VII.B. shall be enforceable against the subsequently created interest in the same manner as they are enforceable against the working interest of the burdened party.

**ARTICLE IV.**
**TITLES**

**A.   Title Examination:**

Title examination shall be made on the drillsite of any proposed well prior to commencement of drilling operations or, if the Drilling Parties so request, title examination shall be made on the leases and/or oil and gas interests included, or planned to be includ-ed, in the drilling unit around such well. The opinion will include the ownership of the working interest, minerals, royalty, overriding royalty and production payments under the applicable leases. At the time a well is proposed, each party contributing leases and/or oil and gas interests to the drillsite, or to be included in such drilling unit, shall furnish to Operator all abstracts (including federal lease status reports), title opinions, title papers and curative material in its possession free of charge. All such information not in the possession of or made available to Operator by the parties, but necessary for the examination of the title, shall be obtained by Operator. Operator shall cause title to be examined by attorneys on its staff or by outside attorneys. Copies of all title opinions shall be furnished to each party hereto. The cost incurred by Operator in this title program shall be borne as follows:

      *                                          **
☑   Option No. 2:   Costs incurred by Operator in procuring abstracts /   and fees paid outside attorneys / for title examination (including preliminary, supplemental, shut-in gas royalty opinions and division order title opinions) / shall be borne by the Drilling Parties in the proportion that the interest of each Drilling Party bears to the total interest of all Drilling Parties as such interests appear in Ex-hibit "A". Operator shall make no charge for services rendered by its staff attorneys or other personnel in the performance of the above functions.

                Operator shall be responsible
/   for securing curative matter and pooling amendments or agreements required in connection with leases or oil and gas interests contributed by such party. Operator shall be responsible for the preparation and recording of pooling designations or declarations as well as the conduct of hearings before governmental agencies for the securing of spacing or pooling orders. This shall not prevent any party from appearing on its own behalf at any such hearing.

No well shall be drilled on the Contract Area until after (1) the title to the drillsite or drilling unit has been examined as above provided, and (2) the title has been approved by the examining attorney or title has been accepted by Operator.

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

This space intentionally left blank.

3. Other Losses:  All losses incurred, other than those set forth in Articles IV.B.1. and IV.B.2. above, shall be joint losses and shall be borne by all parties in proportion to their interests. There shall be no readjustment of interests in the remaining portion of the Contract Area.

\*   Curative matters and materials
\*\*  Landmen and consultants
\*\*\*and for applications and hearings

## ARTICLE V.
## OPERATOR

**A.   Designation and Responsibilities of Operator:**

__Sklar Exploration Company L.L.C._____ shall be the Operator of the Contract Area, and shall conduct and direct and have full control of all operations on the Contract Area as permitted and required by, and within the limits of this agreement. It shall conduct all such operations in a good and workmanlike manner, but it shall have no liability as Operator to the other parties for losses sustained or liabilities incurred, except such as may result from gross negligence or willful misconduct.

**B.   Resignation or Removal of Operator and Selection of Successor:**

1. Resignation or Removal of Operator:  Operator may resign at any time by giving written notice thereof to Non-Operators. If Operator terminates its legal existence, no longer owns an interest hereunder in the Contract Area, or is no longer capable of serving as Operator, Operator shall be deemed to have resigned without any action by Non-Operators, except the selection of a successor. Operator may      three (3)           be               removed           total of 51% or greater voting           by                    the affirmative vote of / or more / owning a / interest based on ownership as shown on Exhibit "A" remaining after excluding the voting interest of Operator. Such resignation or removal shall not become effective until 7:00 o'clock A.M. on the first day of the calendar month following the expiration of ninety (90) days after the giving of notice of resignation by Operator or action by the Non-Operators to remove Operator, unless a successor Operator has been selected and assumes the duties of Operator at an earlier date. Operator, after effective date of resignation or removal, shall be bound by the terms hereof as a Non-Operator. A change of a corporate name or structure of Operator or transfer of Operator's interest to any single subsidiary, parent or successor corporation shall not be the basis for removal of Operator.

2. Selection of Successor Operator:  Upon the resignation or removal of Operator, a successor Operator shall be selected by the parties. The successor Operator shall be selected from the parties owning an interest in the Contract Area at the time such successor                                                                                                                                                voting Operator is selected. The successor Operator shall be selected by the affirmative vote of two (2) or more parties owning a majority / interest based on ownership as shown on Exhibit "A"; provided, however, if an Operator which has been removed fails to vote or votes only to succeed itself, the successor Operator shall be selected by the affirmative vote of two (2) or more parties owning a majority interest based on ownership as shown on Exhibit "A" remaining after excluding the voting interest of the Operator that was removed.

**C.   Employees:**

The number of employees used by Operator in conducting operations hereunder, their selection, and the hours of labor and the compensation for services performed shall be determined by Operator, and all such employees shall be the employees of Operator.

**D.   Drilling Contracts:**

All wells drilled on the Contract Area shall be drilled on a competitive contract basis at the usual rates prevailing in the area. If it so desires, Operator may employ its own tools and equipment in the drilling of wells, but its charges therefor shall not exceed the prevailing rates in the area and the rate of such charges shall be agreed upon by the parties in writing before drilling operations are commenced, and such work shall be performed by Operator under the same terms and conditions as are customary and usual in the area in contracts of independent contractors who are doing work of a similar nature.

## ARTICLE VI.
## DRILLING AND DEVELOPMENT

**A.   Initial Well:**
                                                                    and subject to rig availability.
On or before the ____15th____ day of _____May_____ , (year) ____2012___ , / Operator shall commence the drilling of a well for oil and gas at the following location: 1579' FNL and  952' FEL of Northeast Quarter of Section 34, Township 4 North, Range 12 East, Conecuh County,
Alabama

and shall thereafter continue the drilling of the well with due diligence to 12,500 feet subsurface or a depth sufficient to test the stratigraphic equivalent of the Haynesville, Smackover and Norphlet Formations of the Upper Jurassic System,

unless granite or other practically impenetrable substance or condition in the hole, which renders further drilling impractical, is encountered at a lesser depth, or unless all parties agree to complete or abandon the well at a lesser depth.

- 3 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

Operator shall make reasonable tests of all formations encountered during drilling which give indication of containing oil and
gas in quantities sufficient to test, unless this agreement shall be limited in its application to a specific formation or formations, in which
event Operator shall be required to test only the formation or formations to which this agreement may apply.

**B.   Subsequent Operations:**

1.   Proposed Operations:   Should any party hereto desire to drill any well on the Contract Area other than the well provided
for in Article VI.A., or to rework, / deepen or plug back a dry hole drilled at the joint expense of all parties or a well jointly owned by all
                            reenter, recomplete, sidetrack
the parties and not then producing / in paying quantities, the party desiring to drill, rework, / deepen or plug back such a well shall give the
                        or capable of producing                                        reenter, recomplete, sidetrack
other parties written notice of the proposed operation, specifying the work to be performed, the location, proposed depth, objective forma-
tion and the estimated cost of the operation. The parties receiving such a notice shall have thirty (30) days after receipt of the notice
within which to notify the party wishing to do the work whether they elect to participate in the cost of the proposed operation. If a drill-
                     within the contract area
ing rig is on location / , notice of a proposal to rework, plug back or drill deeper may be given by telephone and the response period shall be
limited to  forty-eight (48) hours, exclusive of Saturday, Sunday, and legal holidays. Failure of a party receiving such notice to reply within
the period above fixed shall constitute an election by that party not to participate in the cost of the proposed operation. Any notice or
response given by telephone shall be promptly confirmed in writing.

If all parties elect to participate in such a proposed operation, Operator shall, within ninety (90) days after expiration of the notice
period of thirty (30)days (or as promptly as possible after the expiration of the forty-eight (48) hour period when a drilling rig is on loca-
tion, as the case may be), actually commence the proposed operation and complete it with due diligence at the risk and expense of all par-
ties hereto; provided, however, said commencement date may be extended upon written notice of same by Operator to the other parties,
for a period of up to thirty (30) additional days if, in the sole opinion of Operator, such additional time is reasonably necessary to obtain
permits from governmental authorities, surface rights (including rights-of-way) or appropriate drilling equipment, or to complete title ex-
amination or curative matter required for title approval or acceptance. Notwithstanding the force majeure provisions of Article XI, if the
actual operation has not been commenced within the time provided (including any extension thereof as specifically permitted herein) and
if any party hereto still desires to conduct said operation, written notice proposing same must be resubmitted to the other parties in accor-
dance with the provisions hereof as if no prior proposal had been made.

2.   Operations by Less than All Parties:   If any party receiving such notice as provided in Article VI.B.1. or VII.D.1. (Option
No. 2) elects not to participate in the proposed operation, then, in order to be entitled to the benefits of this Article, the party or parties
giving the notice and such other parties as shall elect to participate in the operation shall, within ninety (90) days after the expiration of
the notice period of thirty (30) days (or as promptly as possible after the expiration of the forty-eight (48) hour period when a drilling rig is
on location, as the case may be) actually commence the proposed operation and complete it with due diligence. Operator shall perform all
work for the account of the Consenting Parties; provided, however, if no drilling rig or other equipment is on location, and if Operator is
a Non-Consenting Party, the Consenting Parties shall either: (a) request Operator to perform the work required by such proposed opera-
tion for the account of the Consenting Parties, or (b) designate one (1) of the Consenting Parties as Operator to perform such work. Con-
senting Parties, when conducting operations on the Contract Area pursuant to this Article VI.B.2., shall comply with all terms and con-
ditions of this agreement.

If less than all parties approve any proposed operation, the proposing party, immediately after the expiration of the applicable
notice period, shall advise the Consenting Parties of the total interest of the parties approving such operation and its recommendation as
to whether the Consenting Parties should proceed with the operation as proposed. Each Consenting Party, within forty-eight (48) hours
(exclusive of Saturday, Sunday and legal holidays) after receipt of such notice, shall advise the proposing party of its desire to (a) limit par-
ticipation to such party's interest as shown on Exhibit "A" or (b) carry its proportionate part of Non-Consenting Parties' interests, and
failure to advise the proposing party shall be deemed an election under (a). In the event a drilling rig is on location, the time permitted for
such a response shall not exceed a total of forty-eight (48) hours (inclusive of Saturday, Sunday and legal holidays). The proposing party,
at its election, may withdraw such proposal if there is insufficient participation and shall promptly notify all parties of such decision.

The entire cost and risk of conducting such operations shall be borne by the Consenting Parties in the proportions they have
elected to bear same under the terms of the preceding paragraph. Consenting Parties shall keep the leasehold estates involved in such
operations free and clear of all liens and encumbrances of every kind created by or arising from the operations of the Consenting Parties.
If such an operation results in a dry hole, the Consenting Parties shall plug and abandon the well and restore the surface location at their
                                                   recompleted, sidetracked
sole cost, risk and expense. If any well drilled, / reworked, deepened or plugged back under the provisions of this Article results in a pro-
ducer of oil and/or gas in paying quantities, the Consenting Parties shall complete and equip the well to produce at their sole cost and risk,
and the well shall then be turned over to Operator and shall be operated by it at the expense and for the account of the Consenting Par-
ties. Upon commencement of operations for the drilling, / reworking, deepening or plugging back of any such well by Consenting Parties
in accordance with the provisions of this Article, each Non-Consenting Party shall be deemed to have relinquished to Consenting Parties,
and the Consenting Parties shall own and be entitled to receive, in proportion to their respective interests, all of such Non-Consenting
Party's interest in the well and share of production therefrom until the proceeds of the sale of such share, calculated at the well, or
                                                                                                    severance taxes, windfall profit taxes, similar taxes,
market value thereof if such share is not sold, (after deducting production taxes, excise taxes, / royalty, overriding royalty and other in-
terests not excepted by Article III.D. payable out of or measured by the production from such well accruing with respect to such interest
until it reverts) shall equal the total of the following:

                  200%
(aof / each such Non-Consenting Party's share of the cost of any newly acquired surface equipment beyond the wellhead
                                                                                                       200%
connections (including, but not limited to, stock tanks, separators, treaters, pumping equipment and piping), plus / of each such
Non-Consenting Party's share of the cost of operation of the well commencing with first production and continuing until each such Non-
Consenting Party's relinquished interest shall revert to it under other provisions of this Article, it being agreed that each Non-
Consenting Party's share of such costs and equipment will be that interest which would have been chargeable to such Non-Consenting

- 4 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

Party had it participated in the well from the beginning of the operations; and

(b) _____500_____ % of that portion of the costs and expenses of drilling, reworking, / deepening, plugging back, testing and completing, after deducting any cash contributions received under Article VIII.C., and _____500_____ % of that portion of the cost of newly acquired equipment in the well (to and including the wellhead connections), which would have been chargeable to such Non-Consenting Party if it had participated therein.

An election not to participate in the drilling or the deepening of a well shall be deemed an election not to participate in any re-working / or plugging back operation proposed in such a well, or portion thereof, to which the initial Non-Consent election applied that is conducted at any time prior to full recovery by the Consenting Parties of the Non-Consenting Party's recoupment account. Any such reworking / or plugging back operation conducted during the recoupment period shall be deemed part of the cost of operation of said well and there shall be added to the sums to be recouped by the Consenting Parties / hundred percent  200%  / (%) of that portion of the costs of the reworking / or plugging back operation which would have been chargeable to such Non-Consenting Party had it participated therein. If such a reworking / or plugging back operation is proposed during such recoupment period, the provisions of this Article VI.B. shall be ap-plicable as between said Consenting Parties in said well.

During the period of time Consenting Parties are entitled to receive Non-Consenting Party's share of production, or the proceeds therefrom, Consenting Parties shall be responsible for the payment of all production, severance, excise, gathering and other taxes, and all royalty, overriding royalty and other burdens applicable to Non-Consenting Party's share of production not excepted by Ar-ticle III.D.

In the case of any reworking, / plugging back or deeper drilling operation, the Consenting Parties shall be permitted to use, free of cost, all casing, tubing and other equipment in the well, but the ownership of all such equipment shall remain unchanged; and upon abandonment of a well after such reworking, / plugging back or deeper drilling, the Consenting Parties shall account for all such equip-ment to the owners thereof, with each party receiving its proportionate part in kind or in value, less cost of salvage.

Within sixty (60) days after the completion of any operation under this Article, the party conducting the operations for the Consenting Parties shall furnish each Non-Consenting Party with an inventory of the equipment in and connected to the well, and an itemized statement of the cost of drilling, deepening, plugging back, testing, completing, and equipping the well for production; or, at its option, the operating party, in lieu of an itemized statement of such costs of operation, may submit a detailed statement of monthly bill-ings. Each month thereafter, during the time the Consenting Parties are being reimbursed as provided above, the party conducting the operations for the Consenting Parties shall furnish the Non-Consenting Parties with an itemized statement of all costs and liabilities in-curred in the operation of the well, together with a statement of the quantity of oil and gas produced from it and the amount of proceeds realized from the sale of the well's working interest production during the preceding month. In determining the quantity of oil and gas produced during any month, Consenting Parties shall use industry accepted methods such as, but not limited to, metering or periodic well tests. Any amount realized from the sale or other disposition of equipment newly acquired in connection with any such operation which would have been owned by a Non-Consenting Party had it participated therein shall be credited against the total unreturned costs of the work done and of the equipment purchased in determining when the interest of such Non-Consenting Party shall revert to it as above provided; and if there is a credit balance, it shall be paid to such Non-Consenting Party.

*recompleting, sidetracking

If and when the Consenting Parties recover from a Non-Consenting Party's relinquished interest the amounts provided for above, the relinquished interests of such Non-Consenting Party shall automatically revert to it, and, from and after such reversion, such Non-Consenting Party shall own the same interest in such well, the material and equipment in or pertaining thereto, and the production therefrom as such Non-Consenting Party would have been entitled to had it participated in the drilling, / recompleting, sidetracking deepening or plugging back of said well. Thereafter, such Non-Consenting Party shall be charged with and shall pay its proportionate part of the further costs of the operation of said well in accordance with the terms of this agreement and the Accounting Procedure attached hereto.

Notwithstanding the provisions of this Article VI.B.2., it is agreed that without the mutual consent of all parties, no wells shall be completed in or produced from a source of supply from which a well located elsewhere on the Contract Area is producing, unless such well conforms to the then-existing well spacing pattern for such source of supply ; provided that an exceptional well location that is approved by the State Oil and Gas Board of Alabama shall be deemed to conform to the then-existing spacing pattern.

The provisions of this Article shall have no application whatsoever to the drilling of the initial well described in Article VI.A. except (a) as to Article VII.D.1. (Option No. 2), if selected, or (b) as to the reworking, / recompleting, sidetracking deepening and plugging back of such initial well after if has been drilled to the depth specified in Article VI.A. if it shall thereafter prove to be a dry hole or, if initially completed for pro-duction, ceases to produce in paying quantities.

3. Stand-By Time:  When a well which has been drilled or deepened has reached its authorized depth and all tests have been completed, and the results thereof furnished to the parties, stand-by costs incurred pending response to a party's notice proposing a reworking, deepening, plugging back or completing operation in such a well shall be charged and borne as part of the drilling or deepen-ing operation just completed. Stand-by costs subsequent to all parties responding, or expiration of the response time permitted, whichever first occurs, and prior to agreement as to the participating interests of all Consenting Parties pursuant to the terms of the second gram-matical paragraph of Article VI.B.2., shall be charged to and borne as part of the proposed operation, but if the proposal is subsequently withdrawn because of insufficient participation, such stand-by costs shall be allocated between the Consenting Parties in the proportion each Consenting Party's interest as shown on Exhibit "A" bears to the total interest as shown on Exhibit "A" of all Consenting Par-ties.

4. Sidetracking:  Except as hereinafter provided, those provisions of this agreement applicable to a "deepening" operation shall also be applicable to any proposal to directionally control and intentionally deviate a well from vertical so as to change the bottom hole location (herein call "sidetracking"), unless done to straighten the hole or to drill around junk in the hole or because of other mechanical difficulties. Any party having the right to participate in a proposed sidetracking operation that does not own an interest in the affected well bore at the time of the notice shall, upon electing to participate, tender to the well bore owners its proportionate share (equal to its interest in the sidetracking operation) of the value of that portion of the existing well bore to be utilized as follows:

(a) If the proposal is for sidetracking an existing dry hole, reimbursement shall be on the basis of the actual costs incurred in

- 5 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

the initial drilling of the well down to the depth at which the sidetracking operation is initiated.

(b) If the proposal is for sidetracking a well which has previously produced, reimbursement shall be on the basis of the well's salvable materials and equipment down to the depth at which the sidetracking operation is initiated, determined in accordance with the provisions of Exhibit "C", less the estimated cost of salvaging and the estimated cost of plugging and abandoning.

In the event that notice for a sidetracking operation is given while the drilling rig to be utilized is on location, the response period shall be limited to forty-eight (48) hours, exclusive of Saturday, Sunday and legal holidays; provided, however, any party may request and receive up to eight (8) additional days after expiration of the forty-eight (48) hours within which to respond by paying for all stand-by time incurred during such extended response period. If more than one party elects to take such additional time to respond to the notice, stand by costs shall be allocated between the parties taking additional time to respond on a day-to-day basis in the proportion each electing party's interest as shown on Exhibit "A" bears to the total interest as shown on Exhibit "A" of all the electing parties. In all other instances the response period to a proposal for sidetracking shall be limited to thirty (30) days.

C.   TAKING PRODUCTION IN KIND:

Each party shall / take in kind or separately dispose of its proportionate share of all oil and gas produced from the Contract Area, *have the right to* exclusive of production which may be used in development and producing operations and in preparing and treating oil and gas for marketing purposes and production unavoidably lost. Any extra expenditure incurred in the taking in kind or separate disposition by any party of its proportionate share of the production shall be borne by such party. Any party taking its share of production in kind shall be required to pay for only its proportionate share of such part of Operator's surface facilities which it uses.

Each party shall execute such division orders and contracts as may be necessary for the sale of its interest in production from the Contract Area, and, except as provided in Article VII.B., shall be entitled to receive payment directly from the purchaser thereof for its share of all production.

In the event any party shall fail to make the arrangements necessary to take in kind or separately dispose of its proportionate share of the oil / produced from the Contract Area, Operator shall have the right, subject to the revocation at will by the party owning it, but not *and/or gas* the obligation, to purchase such oil / or sell it to others at any time and from time to time, for the account of the non-taking party at the *and/or gas* best price obtainable in the area for such production. Any such purchase or sale by Operator shall be subject always to the right of the owner of the production to exercise at any time its right to take in kind, or separately dispose of, its share of all oil / not previously *and/or gas* delivered to a purchaser. Any purchase or sale by Operator of any other party's share of oil / shall be only for such reasonable periods of *and/or gas* time as are consistent with the minimum needs of the industry under the particular circumstances, but in no event for a period in excess of one (1) year.

In the event one or more parties' separate disposition of its share of the gas causes split-stream / deliveries to separate pipelines and/or *sales or* deliveries which on a day-to-day basis for any reason are not exactly equal to a party's respective proportionate share of total gas sales to be allocated to it, the balancing or accounting between the respective accounts of the parties shall be in accordance with any gas balancing agreement between the parties hereto, whether such an agreement is attached as Exhibit "E", or is a separate agreement.

D.   Access to Contract Area and Information:

Each / party shall have access to the Contract Area at all reasonable times, at its sole cost and risk to inspect or observe operations, *consenting* and shall have access at reasonable times to information pertaining to the development or operation thereof, including Operator's books and records relating thereto. Operator, upon request, shall furnish each of the other parties with copies of all forms or reports filed with governmental agencies, daily drilling reports, well logs, tank tables, daily gauge and run tickets and reports of stock on hand at the first of each month, and shall make available samples of any cores or cuttings taken from any well drilled on the Contract Area. The cost of gathering and furnishing information to Non-Operator, other than that specified above, shall be charged to the Non-Operator that requests the Information.

E.   Abandonment of Wells:

   1. Abandonment of Dry Holes:  Except for any well drilled or deepened pursuant to Article VI.B.2., any well which has been drilled or deepened under the terms of this agreement and is proposed to be completed as a dry hole shall not be plugged and abandoned without the consent of all parties. Should Operator, after diligent effort, be unable to contact any party, or should any party fail to reply within forty-eight (48) hours (exclusive of Saturday, Sunday and legal holidays) after receipt of notice of the proposal to plug and abandon such well, such party shall be deemed to have consented to the proposed abandonment. All such wells shall be plugged and abandoned in accordance with applicable regulations and at the cost, risk and expense of the parties who participated in the cost of drilling or deepening such well. Any party who objects to plugging and abandoning such well shall have the right to take over the well and conduct further operations in search of oil and/or gas subject to the provisions of Article VI.B.

   2. Abandonment of Wells that have Produced:  Except for any well in which a Non-Consent operation has been conducted hereunder for which the Consenting Parties have not been fully reimbursed as herein provided, any well which has been completed as a producer shall not be plugged and abandoned without the consent of all parties /. If all parties consent to such abandonment, the well shall *who have a present working interest in such well* be plugged and abandoned in accordance with applicable regulations and at the cost, risk and expense of all the parties hereto. If, within *or within forty-eight (48) hours if a drilling rig is on location* thirty (30) days after receipt of notice of the proposed abandonment of any well /, all parties do not agree to the abandonment of such well, those wishing to continue its operation from the interval(s) of the formation(s) then open to production shall tender to each of the other parties its proportionate share of the value of the well's salvable material and equipment, determined in accordance with the provisions of *Failure to respond to said notice shall constitute an election to plug and abandon said well.* Exhibit "C", less the estimated cost of salvaging and the estimated cost of plugging and abandoning. / Each abandoning party shall assign *Such abandoning party shall assign* the non-abandoning parties, without warranty, express or implied, as to title or as to quantity, or fitness for use of the equipment and material, all of its interest in the well and related equipment, together with its interest in the leasehold estate as to, but only as to, the interval or intervals of the formation or formations then open to production. The assignments or leases so limited shall encompass the "drilling *who have a present working interest in such well* unit     upon     which     the     well     is     located.     The     payments     by,     and     the assignments or leases to, the assignees shall be in a ratio based upon the relationship of their respective percentage of participation in the Contract Area to the aggregate of the percentages of participation in the Contract Area of all assignees. There shall be no readjustment of interests in the remaining portion of the Contract Area.

Thereafter, abandoning parties shall have no further responsibility, liability, or interest in the operation of or production from the well in the interval or intervals then open other than the royalties retained in any lease made under the terms of this Article. Upon request, Operator shall continue to operate the assigned well for the account of the non-abandoning parties at the rates and charges contemplated by this agreement, plus any additional cost and charges which may arise as the result of the separate ownership of the assigned well. Upon proposed abandonment of the producing interval(s) assigned or leased, the assignor or lessor shall then have the option to repurchase its prior interest in the well (using the same valuation formula) and participate in further operations therein subject to the provisions hereof.

3. <u>Abandonment of Non-Consent Operations:</u>  The provisions of Article VI.E.1. or VI.E.2 above shall be applicable as between Consenting Parties in the event of the proposed abandonment of any well excepted from said Articles; provided, however, no well shall be permanently plugged and abandoned unless and until all parties having the right to conduct further operations therein have been notified of the proposed abandonment and afforded the opportunity to elect to take over the well in accordance with the provisions of this Article VI.E.

**ARTICLE VII.**
**EXPENDITURES AND LIABILITY OF PARTIES**

**A.   Liability of Parties:**

The liability of the parties shall be several, not joint or collective. Each party shall be responsible only for its obligations, and shall be liable only for its proportionate share of the costs of developing and operating the Contract Area. Accordingly, the liens granted among the parties in Article VII.B. are given to secure only the debts of each severally. It is not the intention of the parties to create, nor shall this agreement be construed as creating, a mining or other partnership or association, or to render the parties liable as partners.

**B.   Liens and Payment Defaults:**

Each Non-Operator grants to Operator a lien upon its oil and gas rights in the Contract Area, and a security interest in its share of oil and/or gas when extracted and its interest in all equipment, to secure payment of its share of expense, together with interest thereon at the rate provided in Exhibit "C". To the extent that Operator  has a security interest under the Uniform Commercial Code of the state, Operator shall be entitled to exercise the rights and remedies of a secured party under the Code. The bringing of a suit and the obtaining of judgment by Operator for the secured indebtedness shall not be deemed an election of remedies or otherwise affect the lien rights or security interest as security for the payment thereof. In addition, upon default by any Non-Operator in the payment of its share of expense, Operator shall have the right, without prejudice to other rights or remedies, to collect from the purchaser the proceeds from the sale of such Non-Operator's share of oil and/or gas until the amount owed by such Non-Operator, plus interest, has been paid. Each purchaser shall be entitled to rely upon Operator's written statement concerning the amount of any default. Operator grants a like lien and security interest to the Non-Operators to secure payment of Operator's proportionate share of expense.

**C.   Payments and Accounting:**

Except as herein otherwise specifically provided, Operator shall promptly pay and discharge expenses incurred in the development and operation of the Contract Area pursuant to this agreement and shall charge each of the parties hereto with their respective proportionate shares upon the expense basis provided in Exhibit "C". Operator shall keep an accurate record of the joint account hereunder, showing expenses incurred and charges and credits made and received.

Operator, at its election, shall have the right from time to time to demand and receive from the other parties payment in advance of their respective shares of the estimated amount of the expense to be incurred in operations hereunder during the next succeeding month, which right may be exercised only by submission to each such party of an itemized statement of such estimated expense, together with an invoice for its share thereof. Each such statement and invoice for the payment in advance of estimated expense shall be submitted on or before the 20th day of the next preceding month. Each party shall pay to Operator its proportionate share of such estimate within fifteen (15) days after such estimate and invoice is received. If any party fails to pay its share of said estimate within said time, the amount due shall bear interest as provided in Exhibit "C" until paid. Proper adjustment shall be made monthly between advances and actual expense to the end that each party shall bear and pay its proportionate share of actual expenses incurred, and no more.

**D.   Limitation of Expenditures:**

1. <u>Drill or Deepen:</u>  Without the consent of all parties, no well shall be drilled or deepened, except any well drilled or deepened pursuant to the provisions of Article VI.B.2. of this agreement. Consent to the drilling or deepening shall include:

☐   *Option No. 1:  All necessary expenditures for the drilling or deepening, testing, completing and equipping of the well, including necessary tankage and/or surface facilities.

☑   **Option No. 2:  All necessary expenditures for the drilling or deepening and testing of the well. When such well has reached its <ins>(including all logs)</ins> authorized depth, and all tests have been completed, and the results thereof / furnished to the parties, Operator shall give immediate notice to the Non-Operators who have the right to participate in the completion costs. The parties receiving such notice shall have / <ins>twenty-four (24) hours</ins> (exclusive of Saturday, Sunday and legal holidays) in which to elect to participate in the setting of casing and the completion attempt. Such election, when made, shall include consent to all necessary expenditures for the completing and equipping of such well, including necessary tankage and/or surface facilities. Failure of any party receiving such notice to reply within the period above fixed shall constitute an election by that party not to participate in the cost of the completion attempt. If one or more, but less than all of the parties, <ins>recompleting, sidetracking</ins> elect to set pipe and to attempt a completion, the provisions of Article VI.B.2. hereof (the phrase "reworking, / deepening or plugging back" as contained in Article VI.B.2. shall be deemed to include "completing") shall apply to the operations thereafter conducted by less than all parties.

- 7 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

2. Rework or Plug Back: Without the consent of all parties, no well shall be reworked or plugged back except a well reworked or plugged back pursuant to the provisions of Article VI.B.2. of this agreement. Consent to the reworking or plugging back of a well shall include all necessary expenditures in conducting such operations and completing and equipping of said well, including necessary tankage and/or surface facilities.

3. Other Operations: Without the consent of all parties, Operator shall not undertake any single project reasonably estimated to require an expenditure in excess of _____Fifty Thousand and No/100--------_____ Dollars ($_____50,000.00_____)
except in connection with a well, the drilling, reworking, / deepening, completing, recompleting, or plugging back of which has been
                                                  sidetracking
previously authorized by or pursuant to this agreement; provided, however, that, in case of explosion, fire, flood or other sudden emergency, whether of the same or different nature, Operator may take such steps and incur such expenses as in its opinion are required to deal with the emergency to safeguard life and property but Operator, as promptly as possible, shall report the emergency to the other parties. If Operator prepares an authority for expenditure (AFE) for its own use, Operator shall furnish any Non-Operator so requesting an information copy thereof for any single project costing in excess of _____Ten Thousand and No/100--------_____
Dollars ($_____10,000.00_____ ) but less than the amount first set forth above in this paragraph.

E.  **Rentals, Shut-in Well Payments and Minimum Royalties:**

Rentals, shut-in well payments and minimum royalties which may be required under the terms of any lease shall be paid by the party or parties who subjected such lease to this agreement at its or their expense. In the event two or more parties own and have contributed interests in the same lease to this agreement, such parties may designate one of such parties to make said payments for and on behalf of all such parties. Any party may request, and shall be entitled to receive, proper evidence of all such payments. In the event of failure to make proper payment of any rental, shut-in well payment or minimum royalty through mistake or oversight where such payment is required to continue the lease in force, any loss which results from such non-payment shall be borne in accordance with the provisions of Article IV.B. 3.

Operator shall notify Non-Operator of the anticipated completion of a shut-in gas well, or the shutting in or return to production of a producing gas well, at least five (5) days (excluding Saturday, Sunday and legal holidays), or at the earliest opportunity permitted by circumstances, prior to taking such action, but assumes no liability for failure to do so. In the event of failure by Operator to so notify Non-Operator, the loss of any lease contributed hereto by Non-Operator for failure to make timely payments of any shut-in well payment shall be borne jointly by the parties hereto under the provisions of Article IV.B.3.

F.  **Taxes:**

Beginning with the first calendar year after the effective date hereof, Operator shall render for ad valorem taxation all property subject to this agreement which by law should be rendered for such taxes, and it shall pay all such taxes assessed thereon before they become delinquent. Prior to the rendition date, each Non-Operator shall furnish Operator information as to burdens (to include, but not be limited to, royalties, overriding royalties and production payments) on leases and oil and gas interests contributed by such Non-Operator. If the assessed valuation of any leasehold estate is reduced by reason of its being subject to outstanding excess royalties, overriding royalties or production payments, the reduction in ad valorem taxes resulting therefrom shall inure to the benefit of the owner or owners of such leasehold estate, and Operator shall adjust the charge to such owner or owners so as to reflect the benefit of such reduction. If the ad valorem taxes are based in whole or in part upon separate valuations of each party's working interest, then notwithstanding anything to the contrary herein, charges to the joint account shall be made and paid by the parties hereto in accordance with the tax value generated by each party's working interest. Operator shall bill the other parties for their proportionate shares of all tax payments in the manner provided in Exhibit "C".

                          or Non-Operator
If Operator / considers any tax assessment improper, and, in the case of a Non-Operator, if any such Non-Operator timely notifies
Operator     in     writing,     Operator     shall     at     its     discretion,     protest     within     the     time     and     manner
prescribed by law, and prosecute the protest to a final determination, unless all parties agree to abandon the protest prior to final determination. During the pendency of administrative or judicial proceedings, Operator may elect to pay, under protest, all such taxes and any interest and penalty. When any such protested assessment shall have been finally determined, Operator shall pay the tax for the joint account, together with any interest and penalty accrued, and the total cost shall then be assessed against the parties, and be paid by them, as provided in Exhibit "C".

Operator                          on behalf of all parties
/ shall pay or cause to be paid / all production, severance, excise, gathering and other taxes imposed upon or with respect to the production or handling of such party's share of oil and/or gas produced under the terms of this agreement.

G.  **Insurance:**

At all times while operations are conducted hereunder, Operator shall comply with the workmen's compensation law of the state where the operations are being conducted; provided, however, that Operator may be a self-insurer for liability under said compensation laws in which event the only charge that shall be made to the joint account shall be as provided in Exhibit "C". Operator shall also carry or provide insurance for the benefit of the joint account of the parties as outlined in Exhibit "D", attached to and made a part hereof. Operator shall require all contractors engaged in work on or for the Contract Area to comply with the workmen's compensation law of the state where the operations are being conducted and to maintain such other insurance as Operator may require.

In the event automobile public liability insurance is specified in said Exhibit "D", or subsequently receives the approval of the parties, no direct charge shall be made by Operator for premiums paid for such insurance for Operator's automotive equipment.

- 8 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

## ARTICLE VIII.
### ACQUISITION, MAINTENANCE OR TRANSFER OF INTEREST

**D.    Maintenance of Uniform Interests:** For the purpose of maintaining uniformity of ownership in the oil and gas leasehold interests covered by this agreement, no party shall sell, encumber, transfer or make other disposition of its interest in the leases embraced within the Contract Area and in wells, equipment and production unless such disposition shall be made expressly subject to this agreement and shall be made without prejudice to the right of the other parties. Any extra expenditures incurred as a result or a partial disposition, including any additional marketing or metering expense shall be borne by the party to which such interest in is transferred.

In the event a disposition is made to a third party who, at the time of disposition is in receivership or has filed for or has been petitioned into bankruptcy, the disposing party shall also be liable to the other parties for all amounts accrued for operations in which the disposing party chose to participate under this Agreement, attributable to the disposed interest prior to the effective date of the disposition.

**E.    Waiver of Rights to Partition:**

If permitted by the laws of the state or states in which the property covered hereby is located, each party hereto owning an undivided interest in the Contract Area waives any and all rights it may have to partition and have set aside to it in severalty its undivided interest therein.

## ARTICLE IX.
### INTERNAL REVENUE CODE ELECTION

This agreement is not intended to create, and shall not be construed to create, a relationship of partnership or an association for profit between or among the parties hereto. Notwithstanding any provision herein that the rights and liabilities hereunder are several and not joint or collective, or that this agreement and operations hereunder shall not constitute a partnership, if, for federal income tax purposes, this agreement and the operations hereunder are regarded as a partnership, each party hereby affected elects to be excluded from the application of all of the provisions of Subchapter "K", Chapter 1, Subtitle "A", of the Internal Revenue Code of 1954, as permitted and authorized by Section 761 of the Code and the regulations promulgated thereunder. Operator is authorized and directed to execute on behalf of each party hereby affected such evidence of this election as may be required by the Secretary of the Treasury of the United States or the Federal Internal Revenue Service, including specifically, but not by way of limitation, all of the returns, statements, and the data required by Federal Regulations 1.761. Should there be any requirement that each party hereby affected give further evidence of this election, each such party shall execute such documents and furnish such other evidence as may be required by the Federal Internal Revenue Service or as may be necessary to evidence this election. No such party shall give any notices or take any other action inconsistent with the election made hereby. If any present or future income tax laws of the state or states in which the Contract Area is located or any future income tax laws of the United States contain provisions similar to those in Subchapter "K", Chapter 1, Subtitle "A", of the Internal Revenue Code of 1954, under which an election similar to that provided by Section 761 of the Code is permitted, each party hereby affected shall make such election as may be permitted or required by such laws. In making the foregoing election, each such party states that the income derived by such party from operations hereunder can be adequately determined without the computation of partnership taxable income.

## ARTICLE X.
### CLAIMS AND LAWSUITS

Operator may settle any single uninsured third party damage claim or suit arising from operations hereunder if the expenditure does not exceed     Ten Thousand and No/100 ------------------------------------------------------------------------- Dollars ($_____10,000.00_____ ) and if the payment is in complete settlement of such claim or suit. If the amount required for settlement exceeds the above amount, the parties hereto shall assume and take over the further handling of the claim or suit, unless such authority is delegated to Operator. All costs and expenses of handling, settling, or otherwise discharging such claim or suit shall be at the joint expense of the parties participating in the operation from which the claim or suit arises. If a claim is made against any party or if any party is sued on account of any matter arising from operations hereunder over which such individual has no control because of the rights given Operator by this agreement, such party shall immediately notify all other parties, and the claim or suit shall be treated as any other claim or suit involving operations hereunder.

## ARTICLE XI.
### FORCE MAJEURE

If any party is rendered unable, wholly or in part, by force majeure to carry out its obligations under this agreement, other than the obligation to make money payments, that party shall give to all other parties prompt written notice of the force majeure with reasonably full particulars concerning it; thereupon, the obligations of the party giving the notice, so far as they are affected by the force majeure, shall be suspending during, but no longer than, the continuance of the force majeure. The affected party shall use all reasonable diligence to remove the force majeure situation as quickly as practicable.

The requirement that any force majeure shall be remedied with all reasonable dispatch shall not require the settlement of strikes, lockouts, or other labor difficulty by the party involved, contrary to its wishes; how all such difficulties shall be handled shall be entirely within the discretion of the party concerned.

The term "force majeure", as here employed, shall mean an act of God, strike, lockout, or other industrial disturbance, act of the public enemy, war, blockade, public riot, lightning, fire, storm, flood, explosion, governmental action, governmental delay, restraint or inaction, unavailability of equipment, and any other cause, whether of the kind specifically enumerated above or otherwise, which is not reasonably within the control of the party claiming suspension.

## ARTICLE XII.
### NOTICES

All notices authorized or required between the parties and required by any of the provisions of this agreement, unless otherwise specifically provided, shall be given in writing by mail or telegram, postage or charges prepaid, or by telex / or telecopier and addressed to the parties to whom the notice is given at the addresses listed on Exhibit "A". The originating notice given under any provision hereof shall be deemed given only when received by the party to whom such notice is directed, and the time for such party to give any notice in response thereto shall run from the date the originating notice is received. The second or any responsive notice shall be deemed given when deposited in the mail or with the telegraph company, with postage or charges prepaid, or sent by telex / or telecopier. Each party shall have the right to change its address at any time, and from time to time, by giving written notice thereof to all other parties.

- 9 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

### ARTICLE XIII.
### TERM OF AGREEMENT

This agreement shall remain in full force and effect as to the oil and gas leases and/or oil and gas interests subject hereto for the period of time selected below; provided, however, no party hereto shall ever be construed as having any right, title or interest in or to any lease or oil and gas interest contributed by any other party beyond the term of this agreement.

☐   Option No. 1:

☑   Option No. 2: In the event the well described in Article VI.A., or any subsequent well drilled under any provision of this agreement, results in production of oil and/or gas in paying quantities, this agreement shall continue in force so long as any such well or wells produce, or are capable of production, and for an additional period of _____180_____ days from cessation of all production; provided, however, if, prior to the expiration of such additional period, one or more of the parties hereto are engaged in drilling, reworking, deepening, plugging back, testing or attempting to complete a well or wells hereunder, this agreement shall continue in force until such operations have been completed and if production results therefrom, this agreement shall continue in force as provided herein. In the event the well described in Article VI.A., or any subsequent well drilled hereunder, results in a dry hole, and no other well is producing, or capable of producing oil and/or gas from the Contract Area, this agreement shall terminate unless drilling, deepening, plugging back or reworking operations are commenced within _____180_____ days from the date of abandonment of said well.

It is agreed, however, that the termination of this agreement shall not relieve any party hereto from any liability which has accrued or attached prior to the date of such termination.

### ARTICLE XIV.
### COMPLIANCE WITH LAWS AND REGULATIONS

**A. Laws, Regulations and Orders:**

This agreement shall be subject to the conservation laws of the state in which the Contract Area is located, to the valid rules, regulations, and orders of any duly constituted regulatory body of said state; and to all other applicable federal, state, and local laws, ordinances, rules, regulations, and orders.

**B. Governing Law:**

This agreement and all matters pertaining hereto, including, but not limited to, matters of performance, non-performance, breach, remedies, procedures, rights, duties, and interpretation or construction, shall be governed and determined by the law of the state in which the Contract Area is located. If the Contract Area is in two or more states, the law of the state of _____Alabama_____ shall govern.

**C. Regulatory Agencies:**

Nothing herein contained shall grant, or be construed to grant, Operator the right or authority to waive or release any rights, privileges, or obligations which Non-Operators may have under federal or state laws or under rules, regulations or orders promulgated under such laws in reference to oil, gas and mineral operations, including the location, operation, or production of wells, on tracts offsetting or adjacent to the Contract Area.

With respect to operations hereunder, Non-Operators agree to release Operator from any and all losses, damages, injuries, claims and causes of action arising out of, incident to or resulting directly or indirectly from Operator's interpretation or application of rules, rulings, regulations or orders of the Department of Energy or predecessor or successor agencies to the extent such interpretation or application was made in good faith. Each Non-Operator further agrees to reimburse Operator for any amounts applicable to such Non-Operator's share of production that Operator may be required to refund, rebate or pay as a result of such an incorrect interpretation or application, together with interest and penalties thereon owing by Operator as a result of such incorrect interpretation or application.

Non-Operators authorize Operator to prepare and submit such documents as may be required to be submitted to the purchaser of any crude oil sold hereunder or to any other person or entity pursuant to the requirements of the "Crude Oil Windfall Profit Tax Act of 1980", as same may be amended from time to time ("Act"), and any valid regulations or rules which may be issued by the Treasury Department from time to time pursuant to said Act. Each party hereto agrees to furnish any and all certifications or other information which is required to be furnished by said Act in a timely manner and in sufficient detail to permit compliance with said Act.

- 10 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

## ARTICLE XV.
### OTHER PROVISIONS

#### A. PRECEDENCE OF OPERATIONS

Where a well that has been authorized under the terms of this Agreement by all parties, has been drilled to the proposed depth or the objective formation, or a depth at which further drilling is impractical, whichever is the lesser, and the consenting parties participating in the well cannot agree upon the sequence and timing of further operations regarding such well, the following elections shall control in the order enumerated below:

(1) an election to perform additional logging, coring or testing;

(2) an election to attempt to complete the well at the deepest drilled depth proposed for completion by any Party;

(3) an election to plug back and attempt to complete the well in a shallower depth or formation;

(4) an election to deepen the well to a new objective formation;

(5) an election to sidetrack the well;

(6) an election to rework the well by generally accepted stimulation techniques whether or not the well had previously produced in commercial quantities or is capable of commercial production;

(7) an election to plug and abandon the well.

It is provided, however, that if at any time said consenting parties are considering the above election, the wellbore is in such a condition that, in the opinion of a majority in interest (not in number) of the consenting parties, a reasonably prudent operator would not conduct the operations contemplated by the particular election involved for fear of placing the hole in jeopardy or losing the same prior to completing the well in the objective depth or objective formation, such election shall not be given the priority herein above set forth. In such event, the operation, which, in the opinion of said majority in interest is less likely to jeopardize the well, will be given priority. Should the consenting parties be equally divided in their opinion, then the opinion of the Operator shall prevail. It is further understood that if some, but not all parties, elect to participate in the additional logging, coring, or testing, they may do so at their expense and risk, but should the party or parties not participate in such additional logging, coring, or testing, later elect to participate in a proposed operation based on the information obtained from the additional logging, coring, or testing, then the party or parties so electing shall be required to pay their proportionate share of the cost of said logging, coring, or testing, and shall be entitled to the logs, cores or the results of the tests. For the purpose of this paragraph the proposed depth shall be the depth as set forth in the AFE or in the proposal for the proposed operation, and the objective formation shall be the formation as set forth in the AFE or in the proposal for the proposed operation.

#### B. HOLIDAYS

The word "holidays" when used herein is defined as a legal holiday observed by the United States government and its agencies.

#### C. DISPUTES AS TO PROPOSED DEPTHS

If during the drilling of any well drilled hereunder, a bona fide dispute shall exist as to whether the proposed depth has been reached in such well (as for example, whether a well has been drilled to a depth sufficient to test a particular sand or formation or if the well has reached the stratigraphic equivalent of a particular depth), the opinion of a majority of ownership of the total possessory, cost-bearing interest (and not in number) of the owners as shown by Exhibit "A" shall control and be binding upon all parties. If the parties are equally divided, the opinion of the Operator will prevail.

#### D. INDEMNITY

Each Non-Operator shall defend, indemnify and hold Operator harmless against any and all liability in excess of insurance coverage carried for the joint account for injury to each such Non-Operator's officers, employees and/or agents, resulting from or in any way relating to such officers, employees, and/or agents presence on a drilling rig on the Contract Area or from such person traveling by air or water between any point and such drilling rig, including, without limitation, claims arising out of THE FAULT, LIABILITY, NEGLIGENCE OR GROSS NEGLIGENCE OF OPERATOR. Such indemnity to Operator shall also apply to any other person whose presence on the rig or transportation to or from such rig is at the request of the indemnifying Non-Operator.

#### E. SEVERABILITY

If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any rule of law or public policy, all other conditions and provisions of this agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any party. Upon any binding determination that any term or other provision is invalid, illegal or incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in an acceptable and legally enforceable manner.

#### F. NO WAIVERS

No failure or delay by any party in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or exercise of any other right, power or privilege. The rights and remedies herein provided shall be cumulative and not exclusive of any rights or remedies provided by law.

#### G. INTERESTS OF THE PARTIES & TITLES

Subject to the provisions of Article XV.H below, the provisions set forth in this Article XV.G shall apply and govern in lieu of the provisions of Article III.B, C and D and Article IV, to the extent the provisions of this Article XV.G are inconsistent with those provisions. The Sklar Parties own Oil, Gas and Mineral Lease Nos. 1 through 20 (hereinafter the "Sklar Leases") described in Exhibit "A-1" to this Operating Agreement. The Sklar Parties alone shall bear, in proportion to their interest in the Sklar Leases set forth in Exhibit "A" to this Operating Agreement, all burdens, losses and costs attributable to those leases, including, without limitation, the following: (i) all royalties, overriding royalties, production payments or other burdens on production to which the Sklar Leases are subject; (ii) all losses associated with the Sklar Leases, through failure of title or otherwise; and (iii) such costs attributable to the working interest in the Sklar Leases as those lease's share of the costs to drill the Initial Well. The Pruet Parties own Oil, Gas And Mineral Lease No. 21 (hereinafter the "Pruet Lease") described in Exhibit "A-1" to this Operating Agreement. The Pruet Parties alone shall bear, in proportion to their interest in the Pruet Lease set forth in Exhibit "A" to this Operating Agreement, all burdens, losses and costs attributable to that lease, including, without limitation, the following: (i) all royalties, overriding royalties, production payments or other burdens on production to which the Pruet Lease is subject; (ii) all losses associated with the Pruet Lease, through failure of title or otherwise; and (iii) such costs attributable to the working interest in the Pruet Lease as that lease's share of the costs to drill the Initial Well. Avery Producing L.L.C. owns Oil, Gas and Mineral Lease No. 22 (hereinafter the "Avery Lease") described in Exhibit "A-1"

- 11 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

to this Operating Agreement. Avery Producing L.L.C. alone shall bear, in connection with the Avery Lease, all burdens, losses and costs attributable to that lease, including, without limitation, the following: (i) all royalties, overriding royalties, production payments or other burdens on production to which the Avery Lease is subject; (ii) all losses associated with the Avery Lease, through failure of title or otherwise; and (iii) such costs attributable to the working interest in the Avery Lease as that lease's share of the costs to drill the Initial Well.

The Sklar Parties, the Pruet Parties, and Avery Producing L.L.C. agree to share costs within the Contract Area in the proportion that the interest of each bears to the total interest of all of them as determined by title examination to the drilling unit for the Initial Well more particularly described as the Northeast Quarter of Section 34, Township 4 North, Range 12 East, Conecuh County, Alabama. Operator may rely upon said title examination for the purpose of invoicing costs between each of the Sklar Parties, the Pruet Parties, and Avery Producing L.L.C. Costs attributable to any non-participating oil and gas interest or oil and gas lease shall be carried by each of the Sklar Parties, the Pruet Parties, and Avery Producing L.L.C., in the same proportion. The voting interest or interest to make other decisions required or permitted by the Non-Operators hereunder shall be allocated between each of the Sklar Parties, the Pruet Parties, and Avery Producing L.L.C., in the same manner. Notwithstanding any provisions of this paragraph or any other provisions of this Operating Agreement to the contrary, if Operator invoices the Pruet Parties, Avery Producing L.L.C. and the Sklar Parties for costs associated with the Initial Well based upon title examination of the drilling unit for that well as of a date prior to the commencement of operations for the drilling of that well, and if any of the oil and gas leases described in Exhibit "A-1" terminate prior to the commencement of operations for the drilling of the Initial Well, then, in that event, Operator shall cause its title examination to the drilling unit to be updated and shall invoice the Pruet Parties, Avery Producing L.L.C., and the Sklar Parties all costs associated with the Initial Well based upon the updated title examination and shall credit any amounts previously invoiced and refund any amounts previously over paid by any Non- Operators based upon the prior title examination. Nothing herein shall prevent any Non-Operator from contesting the accuracy or validity of any title opinion if it believes in good faith that the title opinion is inaccurate or invalid.

Notwithstanding anything herein to the contrary, the Sklar Parties or Operator on their behalf may perform curative work or otherwise protect the Sklar Lease against title loss, and bear no obligation to offer extensions, amendments, renewals, ratifications or other curative instruments relating to the Sklar Lease or lands covered by that lease to the Pruet Parties, or Avery Producing L.L.C. The Pruet Parties or Pruet Production Co. on their behalf may perform curative work or otherwise protect the Pruet Lease against title loss, and bear no obligation to offer extensions, amendments, renewals, ratifications or other curative instruments relating to the Pruet Lease or lands covered by that lease to the Sklar Parties, or Avery Producing L.L.C. Avery Producing L.L.C. may perform curative work or otherwise protect the Avery Lease against title loss, and bear no obligation to offer extensions, amendments, renewals, ratifications or other curative instruments relating to the Avery Lease or lands covered by that lease to the Sklar Parties or Pruet Parties.

The Sklar Parties shall be entitled to, in proportion to their interest in the Sklar Leases set forth in Exhibit "A" and subject to all burdens, the share of the proceeds from the sale of oil and gas produced from the Initial Well or Subsequent Wells drilled and completed hereunder attributable to the Sklar Leases. The Pruet Parties shall be entitled to, in proportion to their interest in the Pruet Lease set forth in Exhibit "A" and subject to all burdens, the share of the proceeds from the sale of oil and gas produced from the Initial Well or Subsequent Wells drilled and completed hereunder attributable to the Pruet Lease. Avery Producing L.L.C. shall be entitled to, in connection with the Avery Lease set forth in Exhibit "A" and subject to all burdens, the share of the proceeds from the sale of oil and gas produced from the Initial Well or Subsequent Wells drilled and completed hereunder attributable to the Avery Lease. The Sklar Parties, the Pruet Parties, and Avery Producing L.L.C. agree to share the proceeds from the sale of oil and gas produced from the Initial Well or Subsequent Wells drilled and completed hereunder in the proportion that the interest of each bears to the total interest of all as determined by title examination to the producing unit for such well. Operator may rely upon said title examination for the purpose of disbursing proceeds between each of the Sklar Parties, the Pruet Parties, and Avery Producing L.L.C.

Pruet Production Co. subscribes to and is a party to this Operating Agreement as agent and nominee for and on behalf of the Pruet Parties. Operator may invoice Pruet Production Co., as agent and nominee for the Pruet Parties, all costs attributable to the Pruet Lease and owed by the Pruet Parties. Operator may also disburse to Pruet Production Co., as agent and nominee for the Pruet Parties, all proceeds from the sale of oil and gas produced from wells located within the Contract Area attributable to the Pruet Lease, including proceeds attributable to royalties, overriding royalties and working interest under such lease. Any notice delivered to Pruet Production Co. under this Operating Agreement shall be deemed to be delivered to the Pruet Parties as well. Pruet Production Co. also agrees to act as agent and nominee with respect to non-consent interest as set forth in Article XV.I of this Operating Agreement.

## H. PRIOR AGREEMENTS

The Sklar Parties are also parties to another operating agreement (the "Sklar JOA") by and between Sklar Exploration Company L.L.C., as Operator, and the Sklar Parties, as Non-Operators, covering lands that include, among other lands, the Contract Area of this Operating Agreement. Likewise, the Pruet Parties are also parties to another operating agreement (the "Pruet JOA") by and between Pruet Production Co., as successor to Midroc Operating Company, as Operator, and the Pruet Parties, as Non-Operators, covering lands that include, among other lands, the Contract Area of this Operating Agreement. Neither the Sklar Parties, nor Avery Producing L.L.C. bear any obligations under the Pruet JOA, and neither the Pruet Parties, nor Avery Producing L.L.C. bear any obligations under the Sklar JOA. If there is a conflict between this Operating Agreement and a prior operating agreement, then, as between the parties to the prior operating agreement, the prior operating agreement shall govern and prevail. However, if there is such a conflict, then, in that event, and insofar and only insofar as the Contract Area under this Operating Agreement is concerned, this Operating Agreement, as between the Sklar Parties, the Pruet Parties, and Avery Producing L.L.C., shall govern and prevail.

## I. NON-CONSENT

All of the Sklar Parties, all of the Pruet Parties, and Avery Producing L.L.C. have consented to participate in the drilling of the Initial Well pursuant to Article VI.A of this Operating Agreement. Elections to participate in any subsequent operations under Article VI.B of this Operating Agreement shall be made by Pruet Production Co. on behalf of all of the interest of the Pruet Parties, by Operator on behalf of all of the interest of the Sklar Parties and by Avery Producing L.L.C. on behalf of Avery Producing L.L.C. If one or more of the Sklar Parties elects not to participate in a subsequent operation, the non-consent interest shall be assumed by the remaining Sklar Parties pursuant to the terms of the Sklar JOA, whereas if one or more of the Pruet Parties elects not to participate in a subsequent operation, the non-consent interest shall be assumed by the remaining Pruet Parties pursuant to the terms of the Pruet JOA. The provisions of Article VI.B.2 of this Operating Agreement shall only apply to elections to which either Pruet Production Co. non-consents on behalf of all of the Pruet Parties, Operator non-consents on behalf of all of the Sklar Parties, or Avery Producing L.L.C. non-consents.

## J. EXECUTION

This agreement shall be binding upon each party that executes this agreement without regard to whether this same instrument, or any copy or counterpart hereof shall be executed by any other parties.

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

### K. HEADINGS FOR CONVENIENCE

The headings used in this agreement are inserted for convenience only and shall not be regarded in construing or interpreting this Agreement.

### L. RELATIONSHIP OF THE PARTIES

In their relations with each other under this agreement, the parties shall not be considered fiduciaries or to have established a confidential relationship but rather shall be free to act on an arm's length basis in accordance with their own self interest.

- 13 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

### ARTICLE XVI.
### MISCELLANEOUS

This agreement shall be binding upon and shall inure to the benefit of the parties hereto and to their respective heirs, devisees, legal representatives, successors and assigns.

This instrument may be executed in any number of counterparts, each of which shall be considered an original for all purposes.

IN WITNESS WHEREOF, this agreement shall be effective as of _____15th_____ day of _____March_____ . (year) __2012__ .

## O P E R A T O R

SKLAR EXPLORATION COMPANY L.L.C.

_____     _____
                                    DAVID A. BARLOW,
                                    President-Chief Operating Officer

## N O N - O P E R A T O R S

SKLARCO L.L.C.

_____     _____
                                    DAVID A. BARLOW,
                                    President-Chief Operating Officer

_____

McCOMBS ENERGY, LTD.

_____     _____
                                    RICKY HAIKIN, Vice President

_____

TAUBER EXPLORATION & PRODUCTIN COMPANY

_____     _____
                                    RICHARD TAUBER, President

_____

PICKENS FINANCIAL GROUP, LLC

_____     _____
                                    MICHAEL K. PICKENS, Vice President

_____

JJS WORKING INTERESTS LLC
Houston Bulldog Capital Management, LLC, its Manager

_____     _____
                                    JUSTIN SIMONS, Manager of Houston Bulldog Capital
                                    Management, LLC

_____

RESOURCE VENTURES, LLC

_____     _____
                                    MARK ARNOLD, General Manager

_____

- 14 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

ARTICLE XVI.
MISCELLANEOUS

This agreement shall be binding upon and shall inure to the benefit of the parties hereto and to their respective heirs, devisees, legal representatives, successors and assigns.

This instrument may be executed in any number of counterparts, each of which shall be considered an original for all purposes.

IN WITNESS WHEREOF, this agreement shall be effective as of _____15th_____ day of _____March_____ , (year) ___2012___.

OPERATOR

SKLAR EXPLORATION COMPANY L.L.C.

DAVID A. BARLOW,
President-Chief Operating Officer

NON-OPERATORS

SKLARCO L.L.C.

DAVID A. BARLOW,
President-Chief Operating Officer

McCOMBS ENERGY, LTD.

RICKY HAIKIN, Vice President

TAUBER EXPLORATION & PRODUCTIN COMPANY

RICHARD TAUBER, President

PICKENS FINANCIAL GROUP, LLC

MICHAEL K. PICKENS, Vice President

JJS WORKING INTERESTS LLC
Houston Bulldog Capital Management, LLC, its Manager

JUSTIN SIMONS, Manager of Houston Bulldog Capital
Management, LLC

RESOURCE VENTURES, LLC

MARK ARNOLD, General Manager

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

### ARTICLE XVI.
### MISCELLANEOUS

This agreement shall be binding upon and shall inure to the benefit of the parties hereto and to their respective heirs, devisees, legal representatives, successors and assigns.

This instrument may be executed in any number of counterparts, each of which shall be considered an original for all purposes.

IN WITNESS WHEREOF, this agreement shall be effective as of _____15th_____ day of _____March_____ , (year) _2012_ .

OPERATOR

SKLAR EXPLORATION COMPANY L.L.C.

_____
DAVID A. BARLOW,
President-Chief Operating Officer

NON-OPERATORS

SKLARCO L.L.C.

_____
DAVID A. BARLOW,
President-Chief Operating Officer

McCOMBS ENERGY, LTD.

_____
RICKY HAIKIN, Vice President

**Signature / Acknowledgement Pages to that certain Operating Agreement, dated March 15, 2012, Sklar Exploration Company, LLC, as Operator; Contract Area – Graddy 34-8 # 1 Well, NE/4, Section 34, T4N, R12E, Conecuh County, Alabama.**

TAUBER EXPLORATION & PRODUCTIN COMPANY

_____
RICHARD TAUBER, President

PICKENS FINANCIAL GROUP, LLC

_____
MICHAEL K. PICKENS, Vice President

JJS WORKING INTERESTS LLC
Houston Bulldog Capital Management, LLC, its Manager

_____
JUSTIN SIMONS, Manager of Houston Bulldog Capital
Management, LLC

RESOURCE VENTURES, LLC

_____
MARK ARNOLD, General Manager

- 14 -

A.A.P.L. FORM 610 – MODEL FORM OPERATING AGREEMENT - 1982

### ARTICLE XVI.
### MISCELLANEOUS

This agreement shall be binding upon and shall inure to the benefit of the parties hereto and to their respective heirs, devisees, legal representatives, successors and assigns.

This instrument may be executed in any number of counterparts, each of which shall be considered an original for all purposes.

IN WITNESS WHEREOF, this agreement shall be effective as of _____15th_____ day of _____March_____ , (year) __2012__ .

### O P E R A T O R

SKLAR EXPLORATION COMPANY L.L.C.

_____

DAVID A. BARLOW,
President-Chief Operating Officer

### N O N - O P E R A T O R S

SKLARCO L.L.C.

_____

DAVID A. BARLOW,
President-Chief Operating Officer

McCOMBS ENERGY, LTD.

_____

RICKY HAIKIN, Vice President

TAUBER EXPLORATION & PRODUCTIN COMPANY

_____

RICHARD TAUBER, President

PICKENS FINANCIAL GROUP, LLC

_____

MICHAEL K. PICKENS, Vice President

JJS WORKING INTERESTS LLC
Houston Bulldog Capital Management, LLC, its Manager

_____

JUSTIN SIMONS, Manager of Houston Bulldog Capital
Management, LLC

RESOURCE VENTURES, LLC

_____

MARK ARNOLD, General Manager

- 14 -

A.A.P.L. FORM 610 – MODEL FORM OPERATING AGREEMENT - 1982

### ARTICLE XVI.
### MISCELLANEOUS

This agreement shall be binding upon and shall inure to the benefit of the parties hereto and to their respective heirs, devisees, legal representatives, successors and assigns.

This instrument may be executed in any number of counterparts, each of which shall be considered an original for all purposes.

IN WITNESS WHEREOF, this agreement shall be effective as of _____15th_____ day of _____March_____ , (year) ___2012___ .

O P E R A T O R

SKLAR EXPLORATION COMPANY L.L.C.

_____
DAVID A. BARLOW,
President-Chief Operating Officer

N O N - O P E R A T O R S

SKLARCO L.L.C.

_____
DAVID A. BARLOW,
President-Chief Operating Officer

McCOMBS ENERGY, LTD.

_____
RICKY HAIKIN, Vice President

TAUBER EXPLORATION & PRODUCTIN COMPANY

_____
RICHARD TAUBER, President

PICKENS FINANCIAL GROUP, LLC

_____
MICHAEL K. PICKENS, Vice President

JJS WORKING INTERESTS LLC
Houston Bulldog Capital Management, LLC, its Manager

_____
JUSTIN SIMONS, Manager of Houston Bulldog Capital
Management, LLC

RESOURCE VENTURES, LLC

_____
MARK ARNOLD, General Manager

- 14 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

ARTICLE XVI.
MISCELLANEOUS

This agreement shall be binding upon and shall inure to the benefit of the parties hereto and to their respective heirs, devisees, legal representatives, successors and assigns.

This instrument may be executed in any number of counterparts, each of which shall be considered an original for all purposes.

IN WITNESS WHEREOF, this agreement shall be effective as of _____15th_____ day of _____March_____ , (year) __2012___.

OPERATOR

SKLAR EXPLORATION COMPANY L.L.C.

_____     _____
                                              DAVID A. BARLOW, L
                                              President-Chief Operating Officer

NON-OPERATORS

SKLARCO L.L.C.

_____     _____
                                              DAVID A. BARLOW, L
                                              President-Chief Operating Officer

                                              McCOMBS ENERGY, LTD.

_____

_____     _____
                                              RICKY HAIKIN, Vice President

_____     TAUBER EXPLORATION & PRODUCTIN COMPANY

_____     _____
                                              RICHARD TAUBER, President

_____

                                              PICKENS FINANCIAL GROUP, LLC

_____     _____
                                              MICHAEL K. PICKENS, Vice President

_____     JJS WORKING INTERESTS LLC
                                              Houston Bulldog Capital Management, LLC, its Manager

_____     _____
                                              JUSTIN SIMONS, Manager of Houston Bulldog Capital
                                              Management, LLC

_____     RESOURCE VENTURES, LLC

_____     _____
                                              MARK ARNOLD, General Manager

_____

- 14 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

_Lane E. Allen_
_LISA E. Allen_
_Andrew P. Tingerm_
_Andrew P. Tingman_

BUNDERO INVESTMENT COMPANY, L.L.C.

_____
ROBERT P. BOWMAN, Manager

CRAFT EXPLORATION COMPANY L.L.C.

_____
STEVEN H. CRAFT, Managing Member

DICKSON OIL & GAS, LLC

_____
C. BICKHAM DICKSON, III, Member

FANT ENERGY LIMITED
Richard E. Fant, LLC, the General Partner of Fant Energy
Limited

_____
RICHARD FANT, Manager of Richard E. Fant, LLC, the
General Partner of Fant Energy Limited

_____
FLEET HOWELL

KUDZU OIL PROPERTIES, LLC

_____
WIRT A. YERGER, III, Manager

LANDMARK EXPLORATION, LLC

_____
LARRY JOHNSON, Managing Member

MARKSCO, L.L.C.

_____
MARK P. SEALY, Member

TIEMBO LTD.
Simba Investors L.L.C., General Partner of Tiembo Ltd.

_____
MARK RAUCH, Member of Simba Investors L.L.C.
The General Partner of Tiembo, Ltd.

PRUET PRODUCTION, CO

_____
WILLIAM R. JAMES, President

- 14 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

BUNDERO INVESTMENT COMPANY, L.L.C.

_____
ROBERT P. BOWMAN, Manager


CRAFT EXPLORATION COMPANY L.L.C.

_____
STEVEN H. CRAFT, Managing Member


DICKSON OIL & GAS, LLC

_____
C. BICKHAM DICKSON, III, Member


FANT ENERGY LIMITED
Richard E. Fant, LLC, the General Partner of Fant Energy
Limited

_____
RICHARD FANT, Manager of Richard E. Fant, LLC, the
General Partner of Fant Energy Limited


_____
FLEET HOWELL


KUDZU OIL PROPERTIES, LLC

_____
WIRT A. YERGER, III, Manager


LANDMARK EXPLORATION, LLC

_____
LARRY JOHNSON, Managing Member


MARKSCO, L.L.C.

_____
MARK P. SEALY, Member


TIEMBO LTD.
Simba Investors L.L.C., General Partner of Tiembo Ltd.

_____
MARK RAUCH, Member of Simba Investors L.L.C.
The General Partner of Tiembo, Ltd.


PRUET PRODUCTION, CO

_____
WILLIAM R. JAMES, President

- 14 -

A.A.P.L. FORM 610 – MODEL FORM OPERATING AGREEMENT – 1982

BUNDERO INVESTMENT COMPANY, L.L.C.

_____
ROBERT P. BOWMAN, Manager

CRAFT EXPLORATION COMPANY L.L.C.

_____
STEVEN H. CRAFT, Managing Member

DICKSON OIL & GAS, LLC

_____
C. BICKHAM DICKSON, III, Member

FANT ENERGY LIMITED
Richard E. Fant, LLC, the General Partner of Fant Energy
Limited

_____
RICHARD FANT, Manager of Richard E. Fant, LLC, the
General Partner of Fant Energy Limited

_____
FLEET HOWELL

KUDZU OIL PROPERTIES, LLC

_____
WIRT A. YERGER, III, Manager

LANDMARK EXPLORATION, LLC

_____
LARRY JOHNSON, Managing Member

MARKSCO, L.L.C.

_____
MARK P. SEALY, Member

TIEMBO LTD.
Simba Investors L.L.C., General Partner of Tiembo Ltd.

_____
MARK RAUCH, Member of Simba Investors L.L.C.
The General Partner of Tiembo, Ltd.

PRUET PRODUCTION, CO

_____
WILLIAM R. JAMES, President

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

BUNDERO INVESTMENT COMPANY, L.L.C.

_____
ROBERT P. BOWMAN, Manager

_____

_____

CRAFT EXPLORATION COMPANY L.L.C.

_____
STEVEN H. CRAFT, Managing Member

_____

DICKSON OIL & GAS, LLC

_____
C. BICKHAM DICKSON, III, Member

_____

FANT ENERGY LIMITED
Richard E. Fant, LLC, the General Partner of Fant Energy
Limited

_____
RICHARD FANT, Manager of Richard E. Fant, LLC, the
General Partner of Fant Energy Limited

_____

_____
FLEET HOWELL

_____

KUDZU OIL PROPERTIES, LLC

_____
WIRT A. YERGER, III, Manager

_____

LANDMARK EXPLORATION, LLC

_____
LARRY JOHNSON, Managing Member

_____

MARKSCO, L.L.C.

_____
MARK P. SEALY, Member

_____

TIEMBO LTD.
Simba Investors L.L.C., General Partner of Tiembo Ltd.

_____
MARK RAUCH, Member of Simba Investors L.L.C.
The General Partner of Tiembo, Ltd.

_____

PRUET PRODUCTION, CO

_____
WILLIAM R. JAMES, President

_____

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

BUNDERO INVESTMENT COMPANY, L.L.C.

_____
ROBERT P. BOWMAN, Manager

CRAFT EXPLORATION COMPANY L.L.C.

_____
STEVEN H. CRAFT, Managing Member

DICKSON OIL & GAS, LLC

_____
C. BICKHAM DICKSON, III, Member

FANT ENERGY LIMITED
Richard E. Fant, LLC, the General Partner of Fant Energy Limited

_____
RICHARD FANT, Manager of Richard E. Fant, LLC, the General Partner of Fant Energy Limited

_____
REED HOWELL

KUDZU OIL PROPERTIES, LLC

_____
WIRT A. YERGER, III, Manager

LANDMARK EXPLORATION, LLC

_____
LARRY JOHNSON, Managing Member

MARKSCO, L.L.C.

_____
MARK P. SEALY, Member

TIEMBO LTD.
Simba Investors L.L.C., General Partner of Tiembo Ltd.

_____
MARK RAUCH, Member of Simba Investors L.L.C. The General Partner of Tiembo, Ltd.

PRUET PRODUCTION, CO

_____
WILLIAM R. JAMES, President

- 14 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

BUNDERO INVESTMENT COMPANY, L.L.C.

_____
ROBERT P. BOWMAN, Manager

CRAFT EXPLORATION COMPANY L.L.C.

_____
STEVEN H. CRAFT, Managing Member

DICKSON OIL & GAS, LLC

_____
C. BICKHAM DICKSON, III, Member

FANT ENERGY LIMITED
Richard E. Fant, LLC, the General Partner of Fant Energy
Limited

_____
RICHARD FANT, Manager of Richard E. Fant, LLC, the
General Partner of Fant Energy Limited

_____
FLEET HOWELL

KUDZU OIL PROPERTIES, LLC

_____
WIRT A. YERGER, III, Manager

LANDMARK EXPLORATION, LLC

_____
LARRY JOHNSON, Managing Member

MARKSCO, L.L.C.

_____
MARK P. SEALY, Member

TIEMBO LTD.
Simba Investors L.L.C., General Partner of Tiembo Ltd.

_____
MARK RAUCH, Member of Simba Investors L.L.C.
The General Partner of Tiembo, Ltd.

PRUET PRODUCTION, CO

_____
WILLIAM R. JAMES, President

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

BUNDERO INVESTMENT COMPANY, L.L.C.

ROBERT P. BOWMAN, Manager

CRAFT EXPLORATION COMPANY L.L.C.

STEVEN H. CRAFT, Managing Member

DICKSON OIL & GAS, LLC

C. BICKHAM DICKSON, III, Member

FANT ENERGY LIMITED
Richard E. Fant, LLC, the General Partner of Fant Energy
Limited

RICHARD FANT, Manager of Richard E. Fant, LLC, the
General Partner of Fant Energy Limited

FLEET HOWELL

KUDZU OIL PROPERTIES, LLC

WIRT A. YERGER, III, Manager

LANDMARK EXPLORATION, LLC

LARRY JOHNSON, Managing Member

MARKSCO, L.L.C.

MARK P. SEALY, Member

TIEMBO LTD.
Simba Investors L.L.C., General Partner of Tiembo Ltd.

MARK RAUCH, Member of Simba Investors L.L.C.
The General Partner of Tiembo, Ltd.

PRUET PRODUCTION, CO

WILLIAM R. JAMES, President

- 14 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

BUNDERO INVESTMENT COMPANY, L.L.C.

_____
ROBERT P. BOWMAN, Manager


CRAFT EXPLORATION COMPANY L.L.C.

_____
STEVEN H. CRAFT, Managing Member


DICKSON OIL & GAS, LLC

_____
C. BICKHAM DICKSON, III, Member


FANT ENERGY LIMITED
Richard E. Fant, LLC, the General Partner of Fant Energy
Limited

_____
RICHARD FANT, Manager of Richard E. Fant, LLC, the
General Partner of Fant Energy Limited


_____
FLEET HOWELL


KUDZU OIL PROPERTIES, LLC

_____
WIRT A. YERGER, III, Manager


LANDMARK EXPLORATION, LLC

_____
LARRY JOHNSON, Managing Member


MARKSCO, L.L.C.

_____
MARK P. SEALY, Member


TIEMBO LTD.
Simba Investors L.L.C., General Partner of Tiembo Ltd.

_____
MARK RAUCH, Member of Simba Investors L.L.C.
The General Partner of Tiembo, Ltd.


PRUET PRODUCTION, CO

_____
WILLIAM R. JAMES, President

- 14 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51
52
53
54
55
56
57
58
59
60
61
62
63
64
65
66
67
68
69
70

BUNDERO INVESTMENT COMPANY, L.L.C.

_____
ROBERT P. BOWMAN, Manager


CRAFT EXPLORATION COMPANY L.L.C.

_____
STEVEN H. CRAFT, Managing Member


DICKSON OIL & GAS, LLC

_____
C. BICKHAM DICKSON, III, Member


FANT ENERGY LIMITED
Richard E. Fant, LLC, the General Partner of Fant Energy
Limited

_____
RICHARD FANT, Manager of Richard E. Fant, LLC, the
General Partner of Fant Energy Limited




_____
FLEET HOWELL


KUDZU OIL PROPERTIES, LLC

_____
WIRT A. YERGER, III, Manager


LANDMARK EXPLORATION, LLC

_____
LARRY JOHNSON, Managing Member


MARKSCO, L.L.C.

_____
MARK P. SEALY, Member


TIEMBO LTD.
Simba Investors L.L.C., General Partner of Tiembo Ltd.

_____
MARK RAUCH, Member of Simba Investors L.L.C.,
The General Partner of Tiembo, Ltd.


PRUET PRODUCTION, CO

_____
WILLIAM R. JAMES, President

- 14 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

BUNDERO INVESTMENT COMPANY, L.L.C.

_____
ROBERT P. BOWMAN, Manager

CRAFT EXPLORATION COMPANY L.L.C.

_____
STEVEN H. CRAFT, Managing Member

DICKSON OIL & GAS, LLC

_____
C. BICKHAM DICKSON, III, Member

FANT ENERGY LIMITED
Richard E. Fant, LLC, the General Partner of Fant Energy
Limited

_____
RICHARD FANT, Manager of Richard E. Fant, LLC, the
General Partner of Fant Energy Limited

_____
FLEET HOWELL

KUDZU OIL PROPERTIES, LLC

_____
ART A. YERGER, III, Manager

LANDMARK EXPLORATION, LLC

_____
LARRY JOHNSON, Managing Member

MARKSCO, L.L.C.

_____
MARK P. SEALY, Member

TIEMBO LTD.
Simba Investors L.L.C., General Partner of Tiembo Ltd.

_____
MARK KAPLAN, Member of Simba Investors L.L.C.,
The General Partner of Tiembo, Ltd.

PRUET PRODUCTION, CO.

_____
WILLIAM R. JAMES, Manager

- 14 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

DBC RESOURCES, LP

_____
DONALD D. CLARK
President of DBC Management LLC, Its General Manager

DBC RESOURCES, II, LP

_____
DONALD D. CLARK
President of DBC Management LLC, Its General Manager

DCOD, L.L.C.

_____
DALE CLARK, Partner

_____
BOBBY COLEMAN

FOUR D LLC

_____
K. E. DOUGLAS, Manager

FIDDLER INVESTMENTS

_____
HAROLD R. DUNK, General Manager

FRANKS EXPLORATION COMPANY, LLC

_____
BOBBY E. JELKS, Manager

JCE GALBRAITH OIL & GAS, L.L.C.

_____
JOAN MCDONOUGH, General Manager

GASTON OIL COMPANY

_____
ROBERT S. GASTON, President

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

DBC RESOURCES, LP

_____
DONALD L. CLARK,
President of DBC Management L.L.C., Its General Manager

DBC RESOURCES, II, LP

_____
DONALD L. CLARK,
President of DBC Management L.L.C., Its General Manager

DODD, L.L.C.

_____
DALE CLARK, Partner

BOBBY COLEMAN

FOUR D LLC

_____
R. E. DOUGLAS, Manager

FIDDLER INVESTMENTS

_____
HAROLD R. DUNN, General Manager

FRANKS EXPLORATION COMPANY, LLC

_____
BOBBY E. JECKS, Manager

JCE GALBRAITH OIL & GAS, L.L.C.

_____
JOAN McDONOUGH, General Manager

GASTON OIL COMPANY

_____
ROBERT S. GASTON, President

HALL MANAGEMENT, LLC

_____
DONALD L. HALL, President

- 34 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

DBC RESOURCES, LP

_____
DONALD L. DEAN
President of DBC Management LLC, its General Manager

DBC RESOURCES, II, LP

_____
DONALD L. DEAN
President of DBC Management LLC, its General Manager

DODD, L.L.C.

_____
DALE ODOM, Partner

_____
BOBBY COLEMAN

FOUR D LLC

_____
R. E. DOUGLAS, Manager

FIDDLER INVESTMENTS

_____
RONALD R. DUNN, General Manager

FRANKS EXPLORATION COMPANY, LLC

_____
BOBBY B. JELKS, Manager

JOE GALBRAITH OIL & GAS, L.L.C.

_____
JOAN McDONOUGH, General Manager

GASTON OIL COMPANY

_____
ROBERT S. GASTON, Partner

HALL MANAGEMENT, LLC

_____
DONALD L. HALL, President

- 14 -

A.A.P.L. FORM 610 – MODEL FORM OPERATING AGREEMENT - 1982

DBC RESOURCES, LP

_____
DONALD L. CLARK,
President of DBC Management LLC, Its General Manager

DBC RESOURCES, II, LP

_____
DONALD L. CLARK,
President of DBC Management LLC, Its General Manager

DCOD, L.L.C.

_____
DALE CLARK, Partner

_____
BOBBY COLEMAN

FOUR D LLC

_____
R.E. DOUGLAS, Manager

FIDDLER INVESTMENTS

_____
HAROLD R. DUNK, General Manager

FRANKS EXPLORATION COMPANY, LLC

_____
BOBBY E. FELKS, Manager

JOE GALBRAITH OIL & GAS, L.L.C.

_____
JOAN MCDONOUGH, General Manager

GASTON OIL COMPANY

_____
ROBERT S. GASTON, President

HALL MANAGEMENT, LLC

_____
DONALD L. HALL, President

- 14 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

DBC RESOURCES, LP

_____
DONALD L. CLARK,
President of DBC Management LLC, Its General Manager

DBC RESOURCES, II, LP

_____
DONALD L. CLARK,
President of DBC Management LLC, Its General Manager

DCOD, L.L.C.

_____
DALE CLARK, Partner

_____
BOBBY COLEMAN

FOUR D LLC

_____
R. E. DOUGLAS, Manager

FIDDLER INVESTMENTS

_____
HAROLD R. DUNN, General Manager

FRANKS EXPLORATION COMPANY, LLC

_____
BOBBY E. JELKS, Manager

JCE GALBRAITH OIL & GAS, L.L.C.

_____
JOAN MCDONOUGH, General Manager

GASTON OIL COMPANY

_____
ROBERT S. GASTON, President

HALL MANAGEMENT, LLC

_____
DONALD L. HALL, President

- 14 -

A.A.P.L. FORM 610 – MODEL FORM OPERATING AGREEMENT – 1982

DBC RESOURCES, LP

_____
DONALD I. CLARK,
President of DBC Management LLC, Its General Manager

DBC RESOURCES, II, LP

_____
DONALD I. CLARK,
President of DBC Management LLC, Its General Manager

DCOD, L.L.C.

_____
DALE CLARK, Partner

_____
BOBBY COLEMAN

FOUR D LLC

_____
R. E. DOUGLAS, Manager

FIDDLER INVESTMENTS

_____
HAROLD R. DUNK, General Manager

_____
James M. Light, Jr.

_____
Nancy L. Duke

FRANKS EXPLORATION COMPANY, LLC

_____
BOBBY E. JECKS, Manager

JCE GALBRAITH OIL & GAS, L.L.C.

_____
JOAN MCDONOUGH, General Manager

GASTON OIL COMPANY

_____
ROBERT S. GASTON, President

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

DBC RESOURCES, LP

_____
DONALD J. CLARK,
President of DBC Management L.L.C., Its General Manager

DBC RESOURCES, II, LP

_____
DONALD J. CLARK,
President of DBC Management L.L.C., Its General Manager

DCOO, L.L.C.

_____
DALE CLARK, Partner

_____
BOBBY COLEMAN

FOUR D LLC

_____
R. E. DOUGLAS, Manager

FIDDLER INVESTMENTS

_____
HAROLD R. DUNK, General Manager

FRANKS EXPLORATION COMPANY, LLC

_____
BOBBY E. JELKS, Manager

JCE GALBRAITH OIL & GAS, L.L.C.

_____
JOAN MCDONOUGH, General Manager

GASTON OIL COMPANY

_____
ROBERT S. GASTON, President

HALL MANAGEMENT, LLC

_____
DONALD L. HALL, President

- 14 -

A.A.P.L. FORM 610 – MODEL FORM OPERATING AGREEMENT – 1982

DBC RESOURCES, LP

_____
DONALD I. CLARK,
President of DBC Management LLC, Its General Manager

DBC RESOURCES, II, LP

_____
DONALD I. CLARK,
President of DBC Management LLC, Its General Manager

DCOD, L.L.C.

_____
DALE CLARK, Partner

_____
BOBBY COLEMAN

FOUR D LLC

_____
R. E. DOUGLAS, Manager

FIDDLER INVESTMENTS

_____
HAROLD R. DUNK, General Manager

FRANKS EXPLORATION COMPANY, LLC

_____
BOBBY E. JELKS, Manager

JCE GALBRAITH OIL & GAS, L.L.C.

_____
JOAN MCDONOUGH, General Manager

GASTON OIL COMPANY

_____
ROBERT S. GASTON, President

A.A.P.L. FORM 610 – MODEL FORM OPERATING AGREEMENT - 1982

DBC RESOURCES, LP

_____
DONALD L. CLARK,
President of DBC Management LLC, Its General Manager

DBC RESOURCES, II, LP

_____
DONALD L. CLARK,
President of DBC Management LLC, Its General Manager

DCOD, L.L.C.

_____
DALE CLARK, Partner

_____
BOBBY COLEMAN

FOUR D LLC

_____
K. E. DOUGLAS, Manager

FIDDLER INVESTMENTS

_____
HAROLD R. DUNN, General Manager

FRANKS EXPLORATION COMPANY, LLC

_____
BOBBY E. JELKS, Manager

JCE GALBRAITH OIL & GAS, L.L.C.

_____
JOAN MCDONOUGH, General Manager

GASTON OIL COMPANY

_____
ROBERT S. GASTON, President

HALL MANAGEMENT, LLC

_____
DONALD L. HALL, President

*Loretta Weaver* (signature)
Loretta Weaver

*Shelley Pavatt* (signature)
Shelley Pavatt

- 14 -

A.A.P.L. FORM 610 – MODEL FORM OPERATING AGREEMENT – 1982

HANSON OPERATING CO., INC.

RAY WILLIX, President

J&A HARRIS, LP

HARRIS OIL AND LAND CORPORATION

HUGHES 2000 LLC

ROBBIE HUGHES, Vice President

HUGHESOIL, INC.

ROBBIE HUGHES, Vice President

KMR INVESTMENTS, LLC

MIKE HAYS, President

PAM-LIN CORPORATION

DONALD L. CLARK, President

PETROLEUM INVESTMENTS, INC.

CAMILLE C. DESPOT, President

SAWYER DRILLING & SERVICE INC.

RONALD L. SAWYER, President

HANSON OPERATING CO., INC.

_____
KAY WILLIS, President

J&A HARRIS, LP

_Nancy F. LaRue_

_Edna Bairnsfather_

_____
ANGIE HARRIS as Manager

HARRIS OIL AND LAND CORPORATION

_Nancy F. LaRue_

_Edna Bairnsfather_

_____
Angie Harris as President

HUGHES 2000 LLC

_____
ROBBIE HUGHES, Vice President

HUGHESOIL, INC.

_____
ROBBIE HUGHES, Vice President

KMR INVESTMENTS, LLC

_____
MIKE HAYS, President

PAM-LIN CORPORATION

_____
DONALD L. CLARK, President

PETROLEUM INVESTMENTS, INC.

_____
CAMILLE C. DESPOT, President

SAWYER DRILLING & SERVICE INC.

_____
RONALD L. SAWYER, President

RYCO EXPLORATION, LLC

_____
M. ROBIN SMITH, President

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

HANSON OPERATING CO., INC.

_____
RAY WILLIS, President

J&A HARRIS, LP

_____
                        as

HARRIS OIL AND LAND CORPORATION

_____
                        as

HUGHES 2000 LLC

_Robbie W. Hughes_
ROBBIE HUGHES, Vice President (12ES04)

HUGHESOIL, INC.

_Robbie W. Hughes_
ROBBIE HUGHES, Vice President (12E204)

KMR INVESTMENTS, LLC

_____
MIKE HAYS, President

PAM-LIN CORPORATION

_____
DONALD L. CLARK, President

PETROLEUM INVESTMENTS, INC.

_____
CAMILLE C. DESPOT, President

SAWYER DRILLING & SERVICE INC.

_____
RONALD L. SAWYER, President

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

HANSON OPERATING CO., INC.

_____        _____
                                       RAY WILLIS, President

_____

J&A HARRIS, LP

_____        _____
                                       By:

HARRIS OIL AND LAND CORPORATION

_____        _____
                                       By:

HUGHES 2000 LLC

_____        _____
                                       ROBBIE HUGHES, Vice President

HUGHESOIL, INC.

_____        _____
                                       ROBBIE HUGHES, Vice President

KMR INVESTMENTS, LLC

_____        _____
                                       Timothy G. Brown - Controller

PAM-LIN CORPORATION

_____        _____
                                       DONALD L. CLARK, President

PETROLEUM INVESTMENTS, INC

_____        _____
                                       CAMILLE C. DESPOT, President

SAWYER DRILLING & SERVICE INC.

_____        _____
                                       RONALD L. SAWYER, President

RYCO EXPLORATION, LLC

_____        _____
                                       M. ROBIN SMITH, President

- 14 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

HANSON OPERATING CO., INC.

_____
KAY WILLIS, President

J&A HARRIS, LP

_____
By _____

HARRIS OIL AND LAND CORPORATION

_____
By _____

HUGHES 2000 LLC

_____
ROBBIE HUGHES, Vice President

HUGHESOIL, INC.

_____
ROBBIE HUGHES, Vice President

KMR INVESTMENTS, LLC

_____
MIKE HAYS, President

RAM-LIN CORPORATION

_____
DONALD L. CLARK, President

PETROLEUM INVESTMENTS, INC.

_____
CAMILLE C. DESPOT, President

SAWYER DRILLING & SERVICE INC.

_____
RONALD L. SAWYER, President

A.A.P.L. FORM 610 – MODEL FORM OPERATING AGREEMENT – 1982

HANSON OPERATING CO., INC.

_____
RAY WILLIS, President

J&A HARRIS, LP

_____

HARRIS OIL AND LAND CORPORATION

_____

HUGHES 2000 LLC

_____
ROBBIE HUGHES, Vice President

HUGHESOIL, INC.

_____
ROBBIE HUGHES, Vice President

KMR INVESTMENTS, LLC

_____
MIKE HAYS, President

PAM-LIN CORPORATION

_____
DONALD L. CLARK, President

PETROLEUM INVESTMENTS, INC.

_____
CAMILLE C. DESPOT, President

SAWYER DRILLING & SERVICE INC.

_____
RONALD L. SAWYER, President

A.A.P.L. FORM 610 – MODEL FORM OPERATING AGREEMENT - 1982

HANSON OPERATING CO., INC.

_____
KAY WILLIS, President

J&A HARRIS, LP

_____
JR.

HARRIS OIL AND LAND CORPORATION

_____
JR.

HUGHES 2000, LLC

_____
ROBBIE HUGHES, Vice President

HUGHESOIL, INC.

_____
ROBBIE HUGHES, Vice President

KMR INVESTMENTS, LLC

_____
MIKE HAYS, President

PAM-LIN CORPORATION

_____
DONALD L. CLARK, President

PETROLEUM INVESTMENTS, INC.

_____
CAMILLE C. DESPOT, President

SAWYER DRILLING & SERVICE INC.

_____
RONALD L. SAWYER, President

RYCO EXPLORATION, LLC

_____
M. ROBIN SMITH, President

- 14 -

HANSON OPERATING CO., INC.

_____  KAY WILLIS, President

J&A HARRIS, LP

_____  _____, as

HARRIS OIL AND LAND CORPORATION

_____  _____, as

HUGHES 2000 LLC

_____  ROBBIE HUGHES, Vice President

HUGHESOIL, INC.

_____  ROBBIE HUGHES, Vice President

KMR INVESTMENTS, LLC

_____  MIKE HAYS, President

PAM-LIN CORPORATION

_____  DONALD L. CLARK, President

PETROLEUM INVESTMENTS, INC.

_____  CAMILLE C. DESPOT, President

SAWYER DRILLING & SERVICE INC.

_____  RONALD L. SAWYER, President

RYCO EXPLORATION, LLC

*Evelyn Collier*  *M. Robin Smith*  M. ROBIN SMITH, President

*Brenda Pender*  *34-8*

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

1  *Jerry Burns*
2  _____
3  Terry Burns
4  *Mickey Quinn*
5  _____
6  Mickey Quinn
7
8
9  _____
10
11
12  _____
13
14
15
16  _____
17
18
19
20  _____
21
22
23
24  _____
25
26
27  _____
28
29
30  _____
31
32
33
34  _____
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51
52
53
54
55
56
57
58
59
60
61
62
63
64
65
66
67
68
69
70

SUGAR OIL PROPERTIES, LP
*signature*
ALAN SUGAR, President

EDWARD L. YARBOROUGH, JR.

TOM YOUNGBLOOD

AVERY PRODUCING, LLC

JOHN C. NIX, Managing Member

THE RUDMAN PARTNERSHIP

W.R. (TREY) SISLEY, as its Attorney-in-Fact

- 14 -

A.A.P.L. FORM 610 – MODEL FORM OPERATING AGREEMENT – 1982

SUGAR OIL PROPERTIES, LP

_____
ALAN SUGAR, President

_James M. Light Jr._          _Edward L. Yarbrough Jr._
_____
EDWARD L. YARBROUGH, JR.

_Nancy S. Duke_

_____
TOM YOUNGBLOOD

AVERY PRODUCING, LLC

_____
JOHN C. NIX, Manager/Member

THE RUDMAN PARTNERSHIP

_____
W.R. (TREY) SIBLEY, as its Attorney-in-Fact

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

SUGAR OIL PROPERTIES, LP

_____
"TEXAS SUPPLIES PETRO"

_____

_____

_____
EDWARD L. YODGRODDER III, PC

_____
TOM THE YODGROD D

AVERY PRODUCING, LLC

_____
SCIENCE SUCK AND POWER'S

THE RUDMAN PARTNERSHIP

_____
W. TT. (TRUST) SHELBY, NOT TO INFIND FINE

- 14 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

SUGAR OIL PROPERTIES, LP

1
2 _____    _____
3                                     ALAN SUGAR, President
4
5 _____
6
7
8
9 _____    _____
10                                    EDWARD L. YARBOROUGH, JR.
11
12 _____
13
14
15
16 _____    _____
17                                    TOM YOUNGBLOOD
18
19 _____
20
21
22                                     AVERY PRODUCING, LLC
23
24 _____    _____
25 Cyndi D. Johnston                   JOHN C. NIX, Manager/Member
26
27 _____
28 Julie B. Dycus
29
30
31 _____    THE RUDMAN PARTNERSHIP
32
33
34 _____    _____
35                                     W.R. (TREY) SIBLEY, as its Attorney-in-Fact
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51
52
53
54
55
56
57
58
59
60
61
62
63
64
65
66
67
68
69
70

- 14 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

SUGAR OIL PROPERTIES, LP

1
2 _____     _____
3                                        ALAN SUGAR, President
4
5 _____
6
7
8
9 _____     _____
10                                       EDWARD L. YARBOROUGH, JR.
11
12 _____
13
14
15
16 _____     _____
17                                       TOM YOUNGBLOOD
18
19 _____
20
21                                       AVERY PRODUCING, LLC
22
23
24 _____     _____
25                                       JOHN C. NIX, Manager/Member
26
27 _____
28
29
30 *Frances Sullivan*                    THE RUDMAN PARTNERSHIP
31
32
33 *Kathy Quinton*                       _____
34                                       W.R. (TREY) SIBLEY, as its Attorney-in-Fact
35 _____

- 14 -

## ACKNOWLEDGMENTS

STATE OF LOUISIANA

PARISH OF CADDO

I, _Kim S. Elias_____, a notary public in and for said Parish and State, hereby certify that David A. Barlow, whose name as president/chief operating officer for SKLAR EXPLORATION COMPANY L.L.C., a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the __11th__ day of __April_____, 2012.

_Kim S. Elias_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]
My Commission Expires: _at death_

Kim S. Elias. Notary Public # 52698
Caddo Parish. Louisiana
My Commission is for Life

STATE OF LOUISIANA

PARISH OF CADDO

I, _Kim S. Elias_____, a notary public in and for said Parish and State, hereby certify that David A. Barlow, whose name as president/chief operating officer for SKLARCO L.L.C., a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the __11th__ day of __April_____, 2012.

_Kim S. Elias_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]
My Commission Expires: _at death_

Kim S. Elias. Notary Public # 52698
Caddo Parish. Louisiana
My Commission is for Life

STATE OF TEXAS

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Ricky Haikin, whose name as Vice President of MCCOMBS ENERGY, LTD., a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

## ACKNOWLEDGMENTS

STATE OF LOUISIANA

PARISH OF CADDO

    I, _Kim S. Elias_____, a notary public in and for said Parish and State, hereby certify that David A. Barlow, whose name as president/chief operating officer for SKLAR EXPLORATION COMPANY L.L.C., a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    Given under my hand and notarial seal this the __11th__ day of __April_____, 2012.

                                       _Kim S. Elias_____
                                       NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]
My Commission Expires: _at death_

                          Kim S. Elias, Notary Public # 52698
                             Caddo Parish, Louisiana
                            My Commission is for Life

STATE OF LOUISIANA

PARISH OF CADDO

    I, _Kim S. Elias_____, a notary public in and for said Parish and State, hereby certify that David A. Barlow, whose name as president/chief operating officer for SKLARCO L.L.C., a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    Given under my hand and notarial seal this the __11th__ day of __April_____, 2012.

                                         _Kim S. Elias_____
                                     NOTARY PUBLIC
                           Kim S. Elias, Notary Public # 52698
                           Caddo Parish, Louisiana

[AFFIX NOTARIAL SEAL]
My Commission Expires: _at death_

                           My Commission is for Life

STATE OF TEXAS

COUNTY OF _Harris_

    I, _Sharon M. McDonald_____, a notary public in and for said County and State, hereby certify that Ricky Haikin, whose name as Vice President of MCCOMBS ENERGY, LTD., a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    Given under my hand and notarial seal this the __16th__ day of __April_____, 2012.

                                       _Sharon M. McDonald_____
                                       NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]
My Commission Expires: _12/29/2013_

                           SHARON METCALF McDONALD
                           Notary Public, State of Texas
                           Commission Expires 12-29-2013

STATE OF TEXAS

Signature / Acknowledgement Pages to that certain Operating Agreement, dated March 15, 2012, Sklar Exploration Company, LLC, as Operator; Contract Area – Graddy 34-8 # 1 Well, NE/4, Section 34, T4N, R12E, Conecuh County, Alabama.

COUNTY OF _HARRIS_

I, _Myla Wunderich_____, a notary public in and for said County and State, hereby certify that Richard Tauber, whose name as President of TAUBER EXPLORATION AND PRODUCTION COMPANY, a Texas corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _16th_ day of _APRIL_, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

MYLA WUNDERLICH
Notary Public, State of Texas
Commission Expires 02-11-2016

STATE OF TEXAS

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Michael K. Pickens, whose name as Vice President for PICKENS FINANCIAL GROUP, LLC, a Texas limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF TEXAS

COUNTY OF HARRIS

I, the undersigned notary public in and for said County in said State, hereby certify that Justin Simons whose name as Manager of Houston Bulldog Capital Management, LLC, the Manager of JJS WORKING INTERESTS, LLC, a Texas limited liability company, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2012.

_____
NOTARY PUBLIC

(AFFIX NOTARIAL SEAL)

My commission expires: _____

STATE OF TEXAS

COUNTY OF _____

      I, _____, a notary public in and for said County and State, hereby certify that Richard Tauber, whose name as President of TAUBER EXPLORATION AND PRODUCTION COMPANY, a Texas corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

      Given under my hand and notarial seal this the _____ day of _____, 2012.

                                     _____
                                     NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF TEXAS

COUNTY OF Dallas

      I, Marilya L. Fulton, a notary public in and for said County and State, hereby certify that Michael K. Pickens, whose name as Vice President for PICKENS FINANCIAL GROUP, LLC, a Texas limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

      Given under my hand and notarial seal this the 16th day of April, 2012.

MARILYN L FULTON
My Commission Expires
June 23, 2012

                             Marilyn L. Fulton
[AFFIX NOTARIAL SEAL]             NOTARY PUBLIC

My Commission Expires: June 23, 2012

STATE OF TEXAS

COUNTY OF HARRIS

      I, the undersigned notary public in and for said County in said State, hereby certify that Justin Simons whose name as Manager of Houston Bulldog Capital Management, LLC, the Manager of JJS WORKING INTERESTS, LLC, a Texas limited liability company, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said company.

      Given under my hand and notarial seal this the _____ day of _____, 2012.

                                       _____
                                     NOTARY PUBLIC

(AFFIX NOTARIAL SEAL)

My commission expires: _____

STATE OF TEXAS

COUNTY OF _____

      I, _____, a notary public in and for said County and State, hereby certify that Richard Tauber, whose name as President of TAUBER EXPLORATION AND PRODUCTION COMPANY, a Texas corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

      Given under my hand and notarial seal this the _____ day of _____, 2012.

                                   _____
                                   NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF TEXAS

COUNTY OF _____

      I, _____, a notary public in and for said County and State, hereby certify that Michael K. Pickens, whose name as Vice President for PICKENS FINANCIAL GROUP, LLC, a Texas limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

      Given under my hand and notarial seal this the _____ day of _____, 2012.

                                   _____
                                   NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF TEXAS

COUNTY OF HARRIS

      I, the undersigned notary public in and for said County in said State, hereby certify that Justin Simons whose name as Manager of Houston Bulldog Capital Management, LLC, the Manager of JJS WORKING INTERESTS, LLC, a Texas limited liability company, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said company.

      Given under my hand and notarial seal this the 24th day of April, 2012.

                                   _____
                                   NOTARY PUBLIC

(AFFIX NOTARIAL SEAL)

My commission expires: 8/11/15

MARCIA A. DE LUNA
Notary Public, State of Texas
My Commission Expires
August 11, 2015

STATE OF _Colorado_

COUNTY OF _Douglas_

I, the undersigned notary public in and for said County in said State, hereby certify that Mark Arnold whose name as General Manager of RESOURCE VENTURES, LLC, an Indiana limited liability company, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he/she, as such Manager and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _30Th_ day of _April_, 2012.

_____
NOTARY PUBLIC

(AFFIX NOTARIAL SEAL)

My commission expires: _3/5/2013_

STATE OF LOUISIANA

PARISH OF CADDO

I, _____, a notary public in and for said Parish and State, hereby certify that Robert P. Bowman, whose name as Member of BUNDERO INVESTMENT COMPANY, LLC, a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF MISSISSIPPI

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Steven H. Craft, whose name as managing member of CRAFT EXPLORATION COMPANY L.L.C., a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _Louisiana de_

COUNTY OF _____

    I, the undersigned notary public in and for said County in said State, hereby certify that Mark Arnold whose name as General Manager of RESOURCE VENTURES, LLC, an Indiana limited liability company, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he/she, as such Manager and with full authority, executed the same voluntarily for and as the act of said company.

    Given under my hand and notarial seal this the _____ day of _____, 2012.

_____
NOTARY PUBLIC

(AFFIX NOTARIAL SEAL)

My commission expires: _____

STATE OF LOUISIANA

PARISH OF CADDO

I, _Deborah W. Cox_____, a notary public in and for said Parish and State, hereby certify that Robert P. Bowman, whose name as Member of BUNDERO INVESTMENT COMPANY, LLC, a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    Given under my hand and notarial seal this the _16th_ day of ___April____, 2012.

_Deborah W. Cox_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _for life_

DEBORAH W. COX 24633
Notary Public
Parish of Caddo
State of Louisiana

STATE OF MISSISSIPPI

COUNTY OF _____

    I, _____, a notary public in and for said County and State, hereby certify that Steven H. Craft, whose name as managing member of CRAFT EXPLORATION COMPANY L.L.C., a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    Given under my hand and notarial seal this the _____ day of _____, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

I, the undersigned notary public in and for said County in said State, hereby certify that Mark Arnold whose name as General Manager of RESOURCE VENTURES, LLC, an Indiana limited liability company, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he/she, as such Manager and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2012.

_____
NOTARY PUBLIC

(AFFIX NOTARIAL SEAL)

My commission expires: _____

STATE OF LOUISIANA

PARISH OF CADDO

I, _____, a notary public in and for said Parish and State, hereby certify that Robert P. Bowman, whose name as Member of BUNDERO INVESTMENT COMPANY, LLC, a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF MISSISSIPPI

COUNTY OF *MADISON*

I, *TYE GORDON DENSFORD*, a notary public in and for said County and State, hereby certify that Steven H. Craft, whose name as managing member of CRAFT EXPLORATION COMPANY L.L.C., a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the *17* day of *APRIL*, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: *2-14-2016*

STATE OF LOUISIANA

PARISH OF CADDO

I, _George Portocarrero_, a notary public in and for said Parish and State, hereby certify that C. Bickham Dickson, III, whose name as Member of the DICKSON OIL & GAS, LLC, a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such Member and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _19th_ day of _April_, 2012.

```
GEORGE PORTOCARRERO
NOTARY PUBLIC - LOUISIANA
CADDO - BOSSIER PARISH
NOTARY ID NUMBER 056297
My Commission Is For Life
```

_____
Notary Public

(AFFIX NOTARIAL SEAL)

My commission expires: _____

```
GEORGE PORTOCARRERO
NOTARY PUBLIC - LOUISIANA
CADDO - BOSS...
NOTARY ID NU...
My Commission Is For Life
```

STATE OF TEXAS

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Richard E. Fant, whose name as Manager of Richard E. Fant, LLC, the General Partner of FANT ENERGY LIMITED, a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said limited partnership.

Given under my hand and notarial seal this the _____ day of _____, 2012.

_____
Notary Public

(AFFIX NOTARIAL SEAL)

My commission expires: _____

STATE OF LOUISIANA

PARISH OF CADDO

I, _____, a notary public in and for said Parish and State, hereby certify that FLEET HOWELL, signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he executed the same as his free act and deed.

Given under my hand and notarial seal this the _____ day of _____, 2012.

_____
Notary Public

(AFFIX NOTARIAL SEAL)

My commission expires: _____

STATE OF LOUISIANA

PARISH OF CADDO

I, _____, a notary public in and for said Parish and State, hereby certify that C. Bickham Dickson, III, whose name as Member of the DICKSON OIL & GAS, LLC, a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such Member and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2012.

_____
Notary Public

(AFFIX NOTARIAL SEAL)

My commission expires: _____

STATE OF TEXAS

COUNTY OF _Harris_

I, _Brenda Witt White_, a notary public in and for said County and State, hereby certify that Richard E. Fant, whose name as Manager of Richard E. Fant, LLC, the General Partner of FANT ENERGY LIMITED, a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said limited partnership.

Given under my hand and notarial seal this the _16th_ day of _April_, 2012.

_Brenda Witt White_
Notary Public

BRENDA WITT WHITE
Notary Public, State of Texas
My Commission Expires
March 23, 2015

(AFFIX NOTARIAL SEAL)

My commission expires: _3.23.15_

STATE OF LOUISIANA

PARISH OF CADDO

I, _____, a notary public in and for said Parish and State, hereby certify that FLEET HOWELL, signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he executed the same as his free act and deed.

Given under my hand and notarial seal this the _____ day of _____, 2012.

_____
Notary Public

(AFFIX NOTARIAL SEAL)

My commission expires: _____

STATE OF LOUISIANA

PARISH OF CADDO

        I, _____, a notary public in and for said Parish and State, hereby certify that C. Bickham Dickson, III, whose name as Member of the DICKSON OIL & GAS, LLC, a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such Member and with full authority, executed the same voluntarily for and as the act of said company.

        Given under my hand and notarial seal this the _____ day of _____, 2012.

_____
Notary Public

(AFFIX NOTARIAL SEAL)

My commission expires: _____

STATE OF TEXAS

COUNTY OF _____

        I, _____, a notary public in and for said County and State, hereby certify that Richard E. Fant, whose name as Manager of Richard E. Fant, LLC, the General Partner of FANT ENERGY LIMITED, a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said limited partnership.

        Given under my hand and notarial seal this the _____ day of _____, 2012.

_____
Notary Public

(AFFIX NOTARIAL SEAL)

My commission expires: _____

STATE OF LOUISIANA

PARISH OF CADDO

        I, _Melissa R. Ebarb_____, a notary public in and for said Parish and State, hereby certify that FLEET HOWELL, signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he executed the same as his free act and deed.

        Given under my hand and notarial seal this the _17th_ day of _April_, 2012.

_____
Notary Public
#68325

(AFFIX NOTARIAL SEAL)

My commission ~~expires~~: _is for life_

STATE OF MISSISSIPPI

COUNTY OF _Madison_

    I, _Pamela F. Sebren_, a notary public in and for said County and State, hereby certify that Wirt A. Yerger, III, whose name as Manager of KUDZU OIL PROPERTIES, LLC, a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    Given under my hand and notarial seal this the ___16___ day of ___april___, 2012.

                                                                 _Pamela F. Sebren_
                                                                NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF MISSISSIPPI

COUNTY OF _____

    I, _____, a notary public in and for said County and State, hereby certify that Larry Johnson, whose name as Managing Member of LANDMARK EXPLORATION LLC, a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    Given under my hand and notarial seal this the _____ day of _____, 2012.

                                              _____
                                            NOTARY PUBLIC

(AFFIX NOTARIAL SEAL)

My commission expires: _____

STATE OF LOUISIANA

PARISH OF CADDO

    I, _____, a notary public in and for said Parish and State, hereby certify that Mark P. Sealy, whose name as Member of the MARKSCO L.L.C., a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such Member and with full authority, executed the same voluntarily for and as the act of said company.

    Given under my hand and notarial seal this the _____ day of _____, 2012.

                                              _____
                                              Notary Public

(AFFIX NOTARIAL SEAL)

My commission expires: _____

STATE OF MISSISSIPPI

COUNTY OF _____

    I, _____, a notary public in and for said County and State, hereby certify that Wirt A. Yerger, III, whose name as Manager of KUDZU OIL PROPERTIES, LLC, a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    Given under my hand and notarial seal this the _____ day of _____, 2012.


                                       _____
                                       NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF MISSISSIPPI

COUNTY OF _Rankin_____

    I, _Lena M. Mayfield_____, a notary public in and for said County and State, hereby certify that Larry Johnson, whose name as Managing Member of LANDMARK EXPLORATION LLC, a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    Given under my hand and notarial seal this the _16th_ day of _April_____, 2012.


                                      _Lena M. Mayfield_____
                                       NOTARY PUBLIC

(AFFIX NOTARIAL SEAL)

My commission expires: _2-17-13___

*[Notary seal: STATE OF MISS. NOTARY PUBLIC — LENA M. MAYFIELD — Commission Expires Feb. 17, 2013 — RANKIN COUNTY]*

STATE OF LOUISIANA

PARISH OF CADDO

    I, _____, a notary public in and for said Parish and State, hereby certify that Mark P. Sealy, whose name as Member of the MARKSCO L.L.C., a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such Member and with full authority, executed the same voluntarily for and as the act of said company.

    Given under my hand and notarial seal this the _____ day of _____, 2012.


                                       _____
                                       Notary Public

(AFFIX NOTARIAL SEAL)

My commission expires: _____

STATE OF MISSISSIPPI

COUNTY OF _____

    I, _____, a notary public in and for said County and State, hereby certify that Wirt A. Yerger, III, whose name as Manager of KUDZU OIL PROPERTIES, LLC, a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    Given under my hand and notarial seal this the _____ day of _____, 2012.


                           _____
                           NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF MISSISSIPPI

COUNTY OF _____

    I, _____, a notary public in and for said County and State, hereby certify that Larry Johnson, whose name as Managing Member of LANDMARK EXPLORATION LLC, a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    Given under my hand and notarial seal this the _____ day of _____, 2012.


                           _____
                           NOTARY PUBLIC

(AFFIX NOTARIAL SEAL)

My commission expires: _____

STATE OF LOUISIANA

PARISH OF CADDO

    I, *Aungel Pattison*, a notary public in and for said Parish and State, hereby certify that Mark P. Sealy, whose name as Member of the MARKSCO L.L.C., a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such Member and with full authority, executed the same voluntarily for and as the act of said company.

    Given under my hand and notarial seal this the 16 day of April, 2012.

                           *Aungel Pattison*
                           Notary Public

(AFFIX NOTARIAL SEAL)

My commission expires: _____

AUNGEL PATTISON
Embossed Hereon Is My
DeSoto, Caddo, Bossier Parishes
Louisiana Notary Public Seal
Notary ID No. 063733
My Commission Expires Upon My Death

STATE OF ~~MISSISSIPPI~~ *TEXAS*

COUNTY OF *HARRIS*

    I, *PATTI L HANSON*, a notary public in and for said County and State, hereby certify that Mark Rauch, whose name as member of Simba Investors, L.L.C., The General Partner of TIEMBO, LTD., a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    Given under my hand and notarial seal this the __30__ day of __April__, 2012.

> PATTI L. HANSON
> MY COMMISSION EXPIRES
> January 18, 2015

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _1/18/15_

STATE OF MISSISSIPPI

COUNTY OF _____

    I, _____, a notary public in and for said County and State, hereby certify that William R. James, whose name as President of PRUET PRODUCTION CO., a _____, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

    I, _____, a notary public in and for said County and State, hereby certify that Donald L. Clark, whose name as President of DBC Resources, the General Manager of DBC RESOURCES, L.P., a limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said limited partnership.

    Given under my hand and notarial seal this the _____ day of _____, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF MISSISSIPPI

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Mark Rauch, whose name as member of Simba Investors, L.L.C., The General Partner of TIEMBO, LTD., a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF MISSISSIPPI

COUNTY OF _Hinds___

I, _Lynda H Grice_____, a notary public in and for said County and State, hereby certify that William R. James, whose name as President of PRUET PRODUCTION CO., a _Delaware L(de)_____, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _13th_ day of _April____, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Donald L. Clark, whose name as President of DBC Resources, the General Manager of DBC RESOURCES, L.P., a limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said limited partnership.

Given under my hand and notarial seal this the _____ day of _____, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF MISSISSIPPI

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Mark Rauch, whose name as member of Simba Investors, L.L.C., The General Partner of TIEMBO, LTD., a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF MISSISSIPPI

COUNTY OF _Hinds_

I, _Lynda H Grice_, a notary public in and for said County and State, hereby certify that William R. James, whose name as President of PRUET PRODUCTION CO., a _Corporation_, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _13th_ day of _April_, 2012.

_Lynda H Grice_
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

STATE OF MISSISSIPPI
NOTARY PUBLIC
ID # 51182
LYNDA H. GRICE
Commission Expires
Dec. 11, 2013
HINDS COUNTY

My Commission Expires: _____

STATE OF _Texas_

COUNTY OF _Dallas_

I, _Debbie A. Pike_, a notary public in and for said County and State, hereby certify that Donald L. Clark, whose name as President of DBC Resources, the General Manager of DBC RESOURCES, L.P., a limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said limited partnership.

Given under my hand and notarial seal this the _23rd_ day of _April_, 2012.

_Debbie A. Pike_
NOTARY PUBLIC

STATE OF _Texas_

COUNTY OF _Dallas_

I, _Debbie A. Pike_, a notary public in and for said County and State, hereby certify that Donald L. Clark, whose name as President of DBC Resources, the General Manager of DBC RESOURCES, 1J, L.P., a limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said limited partnership.

Given under my hand and notarial seal this the _23rd_ day of _April_, 2012.

DEBBIE A PIKE
NOTARY PUBLIC
STATE OF TEXAS
[AFFIX NOTARIAL SEAL] MY COMM. EXP. 2-24-2013

_Debbie A. Pike_
NOTARY PUBLIC

My Commission Expires: _____


STATE OF _____

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Dale Clark, whose name as Partner of DCOD, L.L.C., a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF _____

COUNTY OF _____

Personally appeared before me, the undersigned authority in and for said county and state, on this _____ day of _____, 2012, within my jurisdiction, the within BOBBY COLEMAN, who acknowledged that he executed the above and foregoing instrument.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

STATE OF _____

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Donald L. Clark, whose name as President of DBC Resources, the General Manager of DBC RESOURCES, II, L.P., a limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said limited partnership.

Given under my hand and notarial seal this the _____ day of_____, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF *Texas*

COUNTY OF *Dallas*

I, *Ann Lageose*, a notary public in and for said County and State, hereby certify that Dale Clark, whose name as Partner of DCOD, L.L.C., a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the *18* day of *April*_____, 2012.

*Ann Lageose*
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

ANN LAGEOSE
NOTARY PUBLIC
STATE OF TEXAS
MY COMM. EXP. 04-30-2012

STATE OF _____

COUNTY OF _____

Personally appeared before me, the undersigned authority in and for said county and state, on this _____ day of _____, 2012, within my jurisdiction, the within BOBBY COLEMAN, who acknowledged that he executed the above and foregoing instrument.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

I, _____ a notary public in and for said County and State, hereby certify that Donald L. Clark, whose name as President of DBC Resources, the General Manager of DBC RESOURCES, II, L.P., a limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said limited partnership.

Given under my hand and notarial seal this the _____ day of _____, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

I, _____ a notary public in and for said County and State, hereby certify that Dale Clark, whose name as Partner of DCOD, L.L.C., a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF *Texas*

COUNTY OF *Dallas*

18th day of *April* Personally appeared before me, the undersigned authority in and for said county and state, on this _____, 2012, within my jurisdiction, the within BOBBY COLEMAN, who acknowledged that he executed the above and foregoing instrument.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

*Amber G. Stanton*
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

AMBER G. STANTON
Notary Public
State of Texas
My Comm. Expires 09-11-2013

STATE OF _A R I Z O N A_

COUNTY OF _M A R I C O P A_

I, _MARCO MARTINEZ_, a notary public in and for said County and State, hereby certify that R. E. Douglas, whose name as Manager of FOUR D L.L.C., a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _23rd_ day of _APRIL_, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _5/31/2014_

> MARCO MARTINEZ
> Notary Public - Arizona
> Maricopa County
> My Commission Expires
> May 31, 2014

STATE OF _____

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Harold R. Dunk, whose name as General Manager of FIDDLER INVESTMENTS, a _____, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said _____.

Given under my hand and notarial seal this the _____ day of _____, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Bobby E. Jelks, whose name as Manager of FRANKS EXPLORATION COMPANY, L.L.C., a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

    I, _____, a notary public in and for said County and State, hereby certify that R. E. Douglas, whose name as Manager of FOUR D L.L.C., a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    Given under my hand and notarial seal this the _____ day of _____, 2012.

                           _____
                                  NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _TEXAS_____

COUNTY OF _DALLAS_____

    I, _Marjorie A. Turner____, a notary public in and for said County and State, hereby certify that Harold R. Dunk, whose name as General Manager of FIDDLER INVESTMENTS, a _PARTNERSHIP_____, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said _PARTNERSHIP_.

    Given under my hand and notarial seal this the _18th_ day of _April_____, 2012.

                           _Marjorie G. Turner_____
                                  NOTARY PUBLIC

[AFFIX NOTARIAL SEAL] MARJORIE G. TURNER
Notary Public, State of Texas
My Commission Expires: My Comm. Expires April 30, 2013

STATE OF _____

COUNTY OF _____

    I, _____, a notary public in and for said County and State, hereby certify that Bobby E. Jelks, whose name as Manager of FRANKS EXPLORATION COMPANY, L.L.C., a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    Given under my hand and notarial seal this the _____ day of _____, 2012.

                            _____
                                  NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

       I, _____, a notary public in and for said County and State, hereby certify that R. E. Douglas, whose name as Manager of FOUR D L.L.C., a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

       Given under my hand and notarial seal this the _____ day of _____, 2012.

                             _____
                                NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

       I, _____, a notary public in and for said County and State, hereby certify that Harold R. Dunk, whose name as General Manager of FIDDLER INVESTMENTS, a _____, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said _____.

       Given under my hand and notarial seal this the _____ day of _____, 2012.

                             _____
                                NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF LOUISIANA

COUNTY OF BOSSIER

       I, DIANE MARIE FONG _____, a notary public in and for said County and State, hereby certify that Bobby E. Jelks, whose name as Manager of FRANKS EXPLORATION COMPANY, L.L.C., a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

       Given under my hand and notarial seal this the 18TH day of APRIL, 2012.

                             *Diane Marie Fong*
                                NOTARY PUBLIC

STATE OF F l

COUNTY OF Orange

I, Corie V. Comer , a notary public in and for said County and State, hereby certify that Joan McDonough, whose name as General Manager of JCE GALBRAITH OIL & GAS, L.L.C., a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the 23 day of April , 2012.

Corie V Comer
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: 6.13.15

Notary Public State of Florida
Corie V Comer
My Commission EE080234
Expires 06/13/2015

STATE OF MISSISSIPPI

COUNTY OF MADISON

I, _____, a notary public in and for said County and State, hereby certify that Robert S. Gaston, whose name as President of GASTON OIL COMPANY, a _____, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Donald L. Hall, whose name as President of HALL MANAGEMENT, LLC, a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

     I, _____, a notary public in and for said County and State, hereby certify that Joan McDonough, whose name as General Manager of JCE GALBRAITH OIL & GAS, L.L.C., a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

     Given under my hand and notarial seal this the _____ day of _____, 2012.

                       _____
                            NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF ~~MISSISSIPPI~~ *LOUISIANA*

~~COUNTY~~ *PARISH* OF ~~MADISON~~ *CADDO*

     I, *Vickie U. Kelly*, a notary public in and for said County and State, hereby certify that Robert S. Gaston, whose name as President of GASTON OIL COMPANY, a *Louisiana Corporation*, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

     Given under my hand and notarial seal this the *18th* day of *April*, 2012.

                *Vickie U. Kelly*
                       NOTARY PUBLIC #066496

[AFFIX NOTARIAL SEAL]

My Commission Expires *with life*


STATE OF _____

COUNTY OF _____

     I, _____, a notary public in and for said County and State, hereby certify that Donald L. Hall, whose name as President of HALL MANAGEMENT, LLC, a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

     Given under my hand and notarial seal this the _____ day of _____, 2012.

                       _____
                            NOTARY PUBLIC

STATE OF LOUISIANA

PARISH OF CADDO

I, _Meter Ashton Johnson_ a notary public in and for said Parish and State, hereby certify that C. Bickham Dickson, III, whose name as Member of the ~~DICKSON OIL & GAS, LLC,~~ a *Hall management, LLC* Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such Member and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _18th_ day of _April_, 2012.

_Meter Ashton Johnson_
Notary Public

_23382_

(AFFIX NOTARIAL SEAL)

My commission expires: _Life_

Meter Ashton Johnson, Notary Public
Caddo Parish, Louisiana
My Commission is For Life

STATE OF TEXAS

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Richard E. Fant, whose name as Manager of Richard E. Fant, LLC, the General Partner of FANT ENERGY LIMITED, a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said limited partnership.

Given under my hand and notarial seal this the _____ day of _____, 2012.

_____
Notary Public

(AFFIX NOTARIAL SEAL)

My commission expires: _____

STATE OF LOUISIANA

PARISH OF CADDO

I, _____, a notary public in and for said Parish and State, hereby certify that FLEET HOWELL, signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he executed the same as his free act and deed.

Given under my hand and notarial seal this the _____ day of _____, 2012.

_____
Notary Public

(AFFIX NOTARIAL SEAL)

My commission expires: _____

STATE OF _New Mexico_

COUNTY OF _Chaves_

I, _Sharon R. Hamilton_, a notary public in and for said County and State, hereby certify that Ray Willis, whose name as President of HANSON OPERATING CO., INC., a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, ṣhe, as such officer and with full authority, executed the same for and as the act of said corporation.

Given under my hand and notarial seal this the _18_ day of _April_, 2012.

_Sharon R. Hamilton_
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _Feb. 17, 2016_


STATE OF _____

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that _____, whose name as _____ of J&A HARRIS, L.P., a limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said limited partnership.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF _____

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that _____, whose name as _____ of HARRIS OIL AND LAND CORPORATION, a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said corporation.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Ray Willis, whose name as President of HANSON OPERATING CO., INC., a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, she, as such officer and with full authority, executed the same for and as the act of said corporation.

Given under my hand and notarial seal this the _____ day of _____, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF LOUISIANA
PARISH
COUNTY OF CADDO

I, Vickie U. Kelly, a notary public in and for said County and State, hereby certify that Angie Harris, whose name as Manager of J&A HARRIS, L.P., a limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said limited partnership.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Vickie U. Kelly
NOTARY PUBLIC #066496

[AFFIX NOTARIAL SEAL]

My Commission Expires: with life

STATE OF LOUISIANA
PARISH
COUNTY OF CADDO

I, Vickie U. Kelly, a notary public in and for said County and State, hereby certify that Angie Harris, whose name as President of HARRIS OIL AND LAND CORPORATION, a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said corporation.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Vickie U. Kelly
NOTARY PUBLIC #066496

[AFFIX NOTARIAL SEAL]

My Commission Expires: with life

STATE OF _MISSISSIPPI_

COUNTY OF _HINDS_

    I, _PAULA DENLEY_, a notary public in and for said County and State, hereby certify that Robbie Hughes, whose name as ~~Vice~~ President of HUGHES 2000 L.L.C., a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, she, as such officer and with full authority, executed the same for and as the act of said company.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                          _Paula Denley_
                          NOTARY PUBLIC   (28204)

[AFFIX NOTARIAL SEAL]

My Commission Expires: _04/05/13_

        STATE OF MISSISSIPPI
        NOTARY PUBLIC
        ID # 62580
        PAULA W. DENLEY
        Commission Expires
        April 5, 2013
        HINDS COUNTY

STATE OF _MISSISSIPPI_

COUNTY OF _HINDS_

    I, _PAULA DENLEY_, a notary public in and for said County and State, hereby certify that Robbie Hughes, whose name as ~~Vice~~ President of HUGHESOIL, INC., a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, she, as such officer and with full authority, executed the same for and as the act of said corporation.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                          _Paula Denley_
                          NOTARY PUBLIC   (28204)

[AFFIX NOTARIAL SEAL]

My Commission Expires: _04/05/13_

        STATE OF MISSISSIPPI
        NOTARY PUBLIC
        ID # 62580
        PAULA W. DENLEY
        Commission Expires
        April 5, 2013
        HINDS COUNTY

STATE OF _____

COUNTY OF _____

    I, _____, a notary public in and for said County and State, hereby certify that Mike Hayes, whose name as President of KMR INVESTMENTS, LLC, a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

STATE OF _____

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Robbie Hughes, whose name as Vice President of HUGHES 2000 L.L.C., a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Robbie Hughes, whose name as Vice President of HUGHESOIL, INC., a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said corporation.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF *Louisiana*

~~COUNTY~~ *Parish* OF *Claiborne*

I, *Dawn Morgan-Williams*, a notary public in and for said County and State, hereby certify that ~~Mike Hayes~~ *Timothy Brown*, whose name as President of KMR INVESTMENTS, LLC, a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

*Dawn Morgan-Williams*
NOTARY PUBLIC        *#51640*

[AFFIX NOTARIAL SEAL]

My Commission Expires: *at death*

STATE OF _Texas_____

COUNTY OF _Dallas_____

    I, _Debbie A. Pike_____, a notary public in and for said County and State, hereby certify that Donald L. Clark, whose name as President of PAM-LIN CORPORATION, a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said corporation.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

    _Debbie A. Pike_____
    NOTARY PUBLIC

DEBBIE A PIKE
NOTARY PUBLIC
STATE OF TEXAS
MY COMM. EXP. 2-24-2013

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

    I, _____, a notary public in and for said County and State, hereby certify that Camille C. Despot, whose name as President of PETROLEUM INVESTMENTS, INC., a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, she, as such officer and with full authority, executed the same for and as the act of said corporation.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

    _____
    NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

    I, _____, a notary public in and for said County and State, hereby certify that Ronald L. Sawyer, whose name as President of SAWYER DRILLING & SERVICE INC., a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said corporation.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

    _____
    NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

STATE OF _____

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Donald L. Clark, whose name as President of PAM-LIN CORPORATION, a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said corporation.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _Louisiana_

~~COUNTY~~ Parish OF _Caddo_

I, _Cynthia M. White_, a notary public in and for said County and State, hereby certify that Camille C. Despot, whose name as President of PETROLEUM INVESTMENTS, INC., a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, she, as such officer and with full authority, executed the same for and as the act of said corporation.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Cynthia M. White_
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _at my death_

Cynthia M. White
Notary Public ID #60574
Caddo Parish, LA
My Commission is
for Life.

STATE OF _____

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Ronald L. Sawyer, whose name as President of SAWYER DRILLING & SERVICE INC., a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said corporation.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

STATE OF _____

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Donald L. Clark, whose name as President of PAM-LIN CORPORATION, a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said corporation.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Camille C. Despot, whose name as President of PETROLEUM INVESTMENTS, INC., a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, she, as such officer and with full authority, executed the same for and as the act of said corporation.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _Louisiana_
Parish
COUNTY OF _Bossier_

I, _Tommye H. Gray_, a notary public in and for said County and State, hereby certify that Ronald L. Sawyer, whose name as President of SAWYER DRILLING & SERVICE INC., a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said corporation.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires _W. Life_

OFFICIAL SEAL
TOMMYE H. GRAY
NOTARY PUBLIC NO. 48944
STATE OF LOUISIANA
PARISH OF BOSSIER
My Commission is for Life

PARISH
COUNTY OF _CADDO_

    I, _Vickie U. Kelly_, a notary public in and for said County and State, hereby certify that M. Robin Smith, whose name as President of RYCO EXPLORATION, LLC, a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Vickie U. Kelly_
NOTARY PUBLIC _#066496_

[AFFIX NOTARIAL SEAL]

My Commission Expires: _With life_

STATE OF _____

COUNTY OF _____

    I, _____, a notary public in and for said County and State, hereby certify that Alan Sugar, whose name as President of SUGAR OIL PROPERTIES, LP, a limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said limited partnership.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

    Personally appeared before me, the undersigned authority in and for said county and state, on this _____ day of _____, 2012, within my jurisdiction, the within EDWARD L. YARBOROUGH, JR., who acknowledged that he executed the above and foregoing instrument.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that M. Robin Smith, whose name as President of RYCO EXPLORATION, LLC, a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                                 _____
                                      NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

---

STATE OF _Louisiana_

COUNTY OF _Bossier_

I, _Suzette Piper_, a notary public in and for said County and State, hereby certify that ~~Alex~~ Sugar, whose name as President of SUGAR OIL PROPERTIES, LP, a limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said limited partnership.

_Miles A_

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                                 _Suzette Piper_
                                    NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _with life_

                              **SUZETTE PIPER**
                           **NOTARY ID # 87385**
                         **STATE OF LOUISIANA**
                    **MY COMMISSION IS FOR LIFE**

---

STATE OF _____

COUNTY OF _____

    Personally appeared before me, the undersigned authority in and for said county and state, on this _____ day of _____, 2012, within my jurisdiction, the within EDWARD L. YARBOROUGH, JR., who acknowledged that he executed the above and foregoing instrument.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                                    _____
                                      NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

       I, _____, a notary public in and for said County and State, hereby certify that M. Robin Smith, whose name as President of RYCO EXPLORATION, LLC, a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

       IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                          _____
                                NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

       I, _____, a notary public in and for said County and State, hereby certify that Alan Sugar, whose name as President of SUGAR OIL PROPERTIES, LP, a limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said limited partnership.

       IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                          _____
                                NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _LOUISIANA_____

COUNTY OF _BOSSIER_____

       Personally appeared before me, the undersigned authority in and for said county and state, on this 18TH day of _APRIL_____, 2012, within my jurisdiction, the within EDWARD L. YARBØROUGH, JR., who acknowledged that he executed the above and foregoing instrument.

       IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                          *Diane Marie Fong*
                                  NOTARY PUBLIC

STATE OF _Louisiana_
~~PARISH~~
~~COUNTY~~ OF _Caddo_

2nd Personally appeared before me, the undersigned authority in and for said county and state, on this ___ day of March, 2012, within my jurisdiction, the within TOM WEENIGOLOOD, who acknowledged that he executed the above and foregoing instrument.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Lori C. Schildt_
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

**Lori C. Schildt**
**Notary No. 2271**


STATE OF FLORIDA

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that John C. Noe, whose name as Manager/Member of AVERY PRODUCING L.L.C., a Florida limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF _____

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that W. R. (FEREY) SIBLEY, whose name as ATTORNEY-IN-FACT of PLS SIGMAN PARTNERSHIP, a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the ___ day of _____, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

     Personally appeared before me, the undersigned authority in and for said county and state, on this _____ day of _____, 2012, within my jurisdiction, the within TOM YOUNGBLOOD, who acknowledged that he executed the above and foregoing instrument.

     IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF FLORIDA

COUNTY OF *Santa Rosa*

     I, *Cyndi D. Johnston*, a notary public in and for said County and State, hereby certify that John C. Nix, whose name as Manager/Member of AVERY PRODUCING L.L.C., a Florida limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

     IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _11/8/14_

CYNDI D. JOHNSTON
NOTARY PUBLIC
STATE OF FLORIDA
Comm# EE043167
Expires 11/18/2014

STATE OF _____

COUNTY OF _____

     I, _____, a notary public in and for said County and State, hereby certify that W. R. (TREY) SIBLEY, whose name as ATTORNEY-IN-FACT, of THE RUDMAN PARTNERSHIP, a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

     Given under my hand and notarial seal this the _____ day of _____, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

      Personally appeared before me, the undersigned authority in and for said county and state, on this _____ day of _____, 2012, within my jurisdiction, the within TOM YOUNGBLOOD, who acknowledged that he executed the above and foregoing instrument.

      IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                              _____
                                    NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF FLORIDA

COUNTY OF _____

      I, _____, a notary public in and for said County and State, hereby certify that John C. Nix, whose name as Manager/Member of AVERY PRODUCING L.L.C., a Florida limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

      IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                              _____
                                    NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _Texas_____

COUNTY OF _Dallas_____

      I, _Robert Hiram Lucius_____, a notary public in and for said County and State, hereby certify that W. R. (TREY) SIBLEY, whose name as ATTORNEY-IN-FACT, of THE RUDMAN PARTNERSHIP, a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

      Given under my hand and notarial seal this the _18th_ day of _April_____, 2012.

                              _Robert Hiram Lucius_____
                                    NOTARY PUBLIC

```
ROBERT HIRAM LUCIUS
Notary Public, State of Texas
My Commission Expires
04/15/2016
```

[AFFIX NOTARIAL SEAL]

My Commission Expires: _04-15-16___

EXHIBIT "A"

Attached to and made a part of that certain Operating Agreement dated March 15, 2012 by and
between SKLAR EXPLORATION COMPANY, as Operator, and SKLARCO L.L.C. et al.,
as Non-Operators

1)   **Identification of lands subject ot this agreement:**

Contract Area

TOWNSHIP 4 NORTH, RANGE 12 EAST
CONECUH COUNTY, ALABAMA

Section 34: Northeast Quarter (NE/4).

**And being further described as all lands, oil and gas leasehold interest and
oil and gas interests lying within the red boundary as shown
on the plat designated as Exhibit "A-2".**

2)   **Restrictions, if any, as to depths, formations, or substances:**

There are no restrictions except as may be provided for in any lease or contract subject to this
Operating Agreement.

3)   **Decimal Interest and names of Parties to this Agreement:**

a.   The following parties (who are sometimes referred to in this Exhibit "A", in the
Operating Agreement to which this exhibit is attached and other exhibits thereto as the "Sklar
Parties") own Oil, Gas and Mineral Lease Nos. 1 through 20, described in Exhibit "A-1" in the
following fractional interests:

| Owners | Interest |
|---|---|
| **Bundero Investment Company, L.L.C.** | **0.01000000** |
| **Craft Exploration Company L.L.C.** | **0.01000000** |
| **Dickson Oil & Gas, LLC** | **0.01000000** |
| **Fant Energy Limited** | **0.10000000** |
| **Fleet Howell** | **0.05000000** |
| **JJS Working Interests LLC** | **0.11925000** |
| **Resource Ventures LLC** | **0.00125000** |
| **Kudzu Oil Properties, LLC** | **0.02000000** |
| **Landmark Exploration, LLC** | **0.02000000** |
| **Marksco, L.L.C.** | **0.02000000** |
| **McCombs Energy, Ltd.** | **0.26500000** |
| **Pickens Financial Group, LLC** | **0.05000000** |
| **Sklarco, LLC** | **0.15450000** |
| **Tauber Exploration & Production Company** | **0.02500000** |
| **The Rudman Partnership** | **0.12500000** |
| **Tiembo Ltd.** | **0.02000000** |
| **TOTAL FOR LEASE NOS. 1-20** | **1.00000000** |

b.   The following parties (who are sometimes referred to in this Exhibit "A", in the
Operating Agreement to which this exhibit is attached and other exhibits thereto as
the "Pruet Parties") own Oil, Gas and Mineral Lease No. 21 described in Exhibit "A-
1" in the following fractional interests:

| Owners | Interest |
|---|---|
| Pruet Production Co. | .01000000 |
| DBC Resources, LP | .060170000 |
| DBC Resources, II, LP | .040000000 |
| DCOD, LLC | .063750000 |
| Bobby Coleman | .01000000 |
| Four D LLC | .00800000 |
| Fiddler Investments | .02125000 |
| Franks Exploration Company, LLC | .09800000 |
| JCE Galbraith Oil & Gas, L.L.C. | .01000000 |
| Gaston Oil Company | .02250000 |
| Hall Management, LLC | .01000000 |
| Hanson Operating Co., Inc. | .08000000 |
| J & A Harris, LP | .10817000 |
| Harris Oil and Land Corporation | .01250000 |
| Hughes 2000 LLC | .14700000 |
| HughesOil, Inc. | .14700000 |
| KMR Investments, LLC | .02940000 |
| Pam-Lin Corporation | .01500000 |
| Petroleum Investments, Inc. | .01000000 |
| Sawyer Drilling & Service Inc. | .02000000 |
| RYCO Exploration, LLC | .02526000 |
| Sugar Oil Properties, LP | .03000000 |
| Edward L. Yarborough, Jr. | .00200000 |
| Tom Youngblood | .02000000 |
| **TOTAL FOR LEASE NO. 2** | **1.00000000** |

c. The following parties (who are sometimes referred to in this Exhibit "A", in the Operating Agreement to which this exhibit is attached and other exhibits thereto as the "Avery Parties") own Oil, Gas and Mineral Lease No. 22 described in Exhibit "A-1" in the following fractional interests:

| Owners | Interest |
|---|---|
| Avery Producing L.L.C | 1.0000000 |

4) <u>Oil and gas lease and/or oil and gas interests subject to this agreement:</u>
See Exhibit "A-1" Description of Leases.

5) <u>Addresses of parties for notice purposes:</u>

**Sklar Exploration Company L.L.C., Agent and Nominee for the Sklar Parties**
**401 Edwards Street, Suite 1601**
**Shreveport, Louisiana 71101**

**Sklarco, L.L.C.**
**401 Edwards Street, Suite 1601**
**Shreveport, LA 71101**

**Bundero Investment Company, L.L.C.**
**333 Texas Street, Suite 300**
**Shreveport, Louisiana 71101**

**Craft Exploration Company L.L.C.**
**325 Lakeshire Parkway**
**Canton, MS 39046**

**Dickson Oil & Gas, LLC**
**P. O. Box 52479**
**Shreveport, Louisiana 71135**

**Fant Energy Limited**
**5800 Westview Drive**
**Houston, Texas 77055**

**Fleet Howell**
**416 Travis Street, Suite 715**
**Shreveport, Louisiana 71101**

**JJS Working Interests LLC**
**4295 San Felipe, Suite 207**
**Houston, Texas 77027**

**Resource Ventures LLC**
**8369 South Park Lane, Suite B**
**Littleton, CO 80120**

**Kudzu Oil Properties, LLC**
**300 Concourse Blvd., Suite 101**
**Ridgeland, Mississippi 39157**

**Landmark Exploration, LLC**
**P. O. Box 12004**
**Jackson, MS 39236**

**Marksco, L.L.C.**
**333 Texas Street, Suite 1050**
**Shreveport, Louisiana 71101**

**McCombs Energy, Ltd.**
**5599 San Felipe Street, Suite 1200**
**Houston, Texas 77056-2721**

**Pickens Financial Group, LLC**
**8499 Greenville Avenue, Suite 105**
**Dallas, Texas 75231-2417**

**Tauber Exploration & Production Company**
**55 Waugh Drive, Suite 601**
**Houston, TX 77007**

Tiembo Ltd.
P. O. Box 270415
Houston, Texas  77277-0415

The Rudman Partnership
1700 Pacific Ave., Suite 4200
Dallas, Texas 75201-4620

Pruet Production Co.
217 W. Capitol Street, Suite 201
Jackson, Mississippi 39201

DBC Resources, LP
P. O. Box 191407
Dallas, Texas  75219-1407

DBC Resources, II, LP
P. O. Box 191407
Dallas, Texas  75219-1407

DCOD, LLC
16250 Dallas North Parkway
Dallas, Texas  75248

Bobby Coleman
4600 Greenville Avenue, Suite 128
Dallas, Texas  75206

Four D LLC
P. O. Box 2444
Durango, CO  81302

Fiddler Investments
4601 Langland Rd., Suite 107
Dallas, Texas  75244

Franks Exploration Company, LLC
P. O. Box 7665
Shreveport, Louisiana  71137-7665

JCE Galbraith Oil & Gas, L.L.C.
2032 Alameda Avenue
Orlando, Florida  32804

Gaston Oil Company
9306 Milbank
Shreveport, Louisiana  71115

Hall Management, LLC
4913 Oak Point Drive
Shreveport, Louisiana  71107

Hanson Operating Co., Inc.
P. O. Box 1515
Roswell, NM  88202-1515

J & A Harris, LP
333 Texas Street, Suite 1414
Shreveport, Louisiana  71101-3679

Harris Oil and Land Corporation
333 Texas Street, Suite 1414
Shreveport, Louisiana  71101-3679

Hughes 2000 LLC / Mirror Lake Office Plaza
2829 Lakeland Drive, #1670
Flowood, MS  39232

Hughes Oil, Inc. / Mirror Lake Office Plaza
2829 Lakeland Drive, #1670
Flowood, MS  39232

KMR Investments, LLC
P. O. Box 298
Arcadia, Louisiana  71001

Pam-Lin Corporation
P. O. Box 191407
Dallas, Texas  75219-1407

Petroleum Investments, Inc. / Mid-South Towers
416 Travis Street, Suite 612
Shreveport, LA  71101-5584

Sawyer Drilling & Service, Inc.
P.O. Box 5275
Bossier City, Louisiana  71111-5275

RYCO Exploration, LLC
333 Texas St., Suite 1414
Shreveport, Louisiana  71101-3679

Sugar Oil Properties, LP
625 Market St., Suite 100
Shreveport, Louisiana  71101

Edward L. Yarborough, Jr.
P. O. Box 11
Belcher, LA  71004

Tom Youngblood
P. O. Box 5926
Shreveport, Louisiana  71135-5926

Avery Producing L.L.C.
7825 Peterson Point Road
Milton, FL 32583

## EXHIBIT "A-1"

Attached to and made a part of that certain Operating Agreement dated March 15, 2012 by and between SKLAR EXPLORATION COMPANY, as Operator, and SKLARCO L.L.C. et al., as Non-Operators

## DESCRIPTION OF LEASES

**SKLAR LEASES**

1.     Oil, Gas and Mineral Lease dated February 28, 2009, by and between Robert Earl Warr, etux, as Lessor, and Sklarco L.L.C., as Lessee, recorded in Book 2009, Page 1718, of the Probate Judge Records of Conecuh County, Alabama.

2.     Oil, Gas and Mineral Lease dated February 15, 2009, by and between Tranum Johnston, as Lessor, and Sklarco L.L.C., as Lessee, recorded in Book 2009, Page 1892, of the Probate Judge Records of Conecuh County, Alabama.

3.     Oil, Gas and Mineral Lease dated February 15, 2009, by and between Kay Johnston Hall, as Lessor, and Sklarco L.L.C., as Lessee, recorded in Book 2009, Page 1890, of the Probate Judge Records of Conecuh County, Alabama.

4.     Oil, Gas and Mineral Lease dated February 15, 2009, by and between Judi C. Byrd, as Lessor, and Sklarco L.L.C., as Lessee, recorded in Book 2009, Page 2891, of the Probate Judge Records of Conecuh County, Alabama.

5.     Oil, Gas and Mineral Lease dated February 15, 2009, by and between Gayle Fountain, as Lessor, and Sklarco L.L.C., as Lessee, recorded in Book 2009, Page 2010, of the Probate Judge Records of Conecuh County, Alabama.

6.     Oil, Gas and Mineral Lease dated February 15, 2009, by and between Ginger Richardson, as Lessor, and Sklarco L.L.C., as Lessee, recorded in Book 2009, Page 1723, of the Probate Judge Records of Conecuh County, Alabama.

7.     Oil, Gas and Mineral Lease dated February 15, 2009, by and between Sallie Steele, as Lessor, and Sklarco L.L.C., as Lessee, recorded in Book 2009, Page 1721, of the Probate Judge Records of Conecuh County, Alabama.

8.     Oil, Gas and Mineral Lease dated February 15, 2009, by and between Joanna Johnston Foster, as Lessor, and Sklarco L.L.C., as Lessee, recorded in Book 2009, Page 1716, of the Probate Judge Records of Conecuh County, Alabama.

9.     Oil, Gas and Mineral Lease dated February 15, 2009, by and between Annie Jo Johnston, as Lessor, and Sklarco L.L.C., as Lessee, recorded in Book 2009, Page 1708, of the Probate Judge Records of Conecuh County, Alabama.

10.    Oil, Gas and Mineral Lease dated March 5, 2009, by and between Pete Wolff, III, as Lessor, and Sklarco L.L.C., as Lessee, recorded in Book 2009, Page 1888, of the Probate Judge Records of Conecuh County, Alabama.

11.    Oil, Gas and Mineral Lease dated March 23, 2009, by between Debra E. Williamson, as Lessor, and Sklarco L.L.C., as Lessee, recorded in Book 2009, Page 2008, of the Probate Judge Records of Conecuh County, Alabama.

12.    Oil, Gas and Mineral Lease dated February 19, 2009, by and between William Greg Graddy, as Lessor, and Sklarco L.L.C., as Lessee, recorded in Book 2009, Page 1710, of the Probate Judge Records of Conecuh County, Alabama.

13.     Oil, Gas and Mineral Lease dated February 11, 2009, by and between Barbara S. Johnston, as Lessor, and Sklarco L.L.C., as Lessee, recorded in Book 2009, Page 1320, of the Probate Judge Records of Conecuh County, Alabama.

14.     Oil, Gas and Mineral Lease dated February 15, 2009, by and between Robert N. Johnston, as Lessor, and Sklarco L.L.C., as Lessee, recorded in Book 2009, Page 1714, of the Probate Judge Records of Conecuh County, Alabama.

15.     Oil, Gas and Mineral Lease dated February 1, 2012, by and between Harriett Strayhorn, as Lessor, and Sklarco L.L.C., as Lessee, recorded in Book 2012, Page 1570, of the Probate Judge Records of Conecuh County, Alabama.

16.     Oil, Gas and Mineral Lease dated March 6, 2012, by and between Arlene Hinote, as Lessor, and Sklarco L.L.C., as Lessee, recorded in Book 2012, Page _____, of the Probate Judge Records of Conecuh County, Alabama.

17.     Oil, Gas and Mineral Lease dated February 4, 2012, by and between Cynthia Brooks, as Lessor, and Sklarco L.L.C., as Lessee, recorded in Book 2012, Page 656, of the Probate Judge Records of Conecuh County, Alabama.

18.     Oil, Gas and Mineral Lease dated December 14, 2011, by and between Thomas Johnston, as Lessor, and Sklarco L.L.C., as Lessee, recorded in Book 2012, Page 330, of the Probate Judge Records of Conecuh County, Alabama.

19.     Oil, Gas and Mineral Lease dated December 14, 2011, by and between Donald Johnston, as Lessor, and Sklarco L.L.C., as Lessee, recorded in Book 2012, Page 378, of the Probate Judge Records of Conecuh County, Alabama.

20.     Oil, Gas and Mineral Lease dated March 5, 2009, by and between Stephen Warr, as Lessor, and Sklarco L.L.C., as Lessee, recorded in Book 2009, Page 2014, of the Probate Judge Records of Conecuh County, Alabama.

**PRUET LEASE**

21.     Oil, Gas and Mineral Lease dated March 9, 2009, by and between Clara Louise Findley, Mary Ruth Godwin and William Frederick Findley, as Lessor, and Donald L. Clark, and partially assigned to Pruet Production Co. by instrument dated July 15, 2011, recorded in Book 2011, Page 3853, of the Probate Judge Records of Conecuh County, Alabama, and partially assigned to Bobby Coleman et al. by instrument dated August 4, 2011, recorded in Book  2011, Page 4339, of the Probate Judge Records of Conecuh County, Alabama.

**AVERY LEASE**

22.     Oil, Gas and Mineral Lease dated December 8, 2010 by and between James M. and Nancy J. Findley, as Lessor, and Avery Producing L.L.C., as Lessee, recorded in Book 2010, Page 6199, of the Probate Judge Records of Conecuh County, Alabama.

**INSOFAR AND ONLY INSOFAR AS SAID OIL, GAS AND MINERAL LEASES COVER ACREAGE LYING WITHIN THE NORTHEAST QUARTER (NE/4) OF SECTION 34, TOWNSHIP 4 NORTH, RANGE 12 EAST, CONECUH COUNTY, ALABAMA.**

**EXHIBIT "A-2"**

Attached to and made a part of that certain Operating Agreement dated March 15,  2012 by and between
SKLAR EXPLORATION COMPANY, as Operator, and SKLARCO L.L.C. et al.,
as Non-Operators



EXHIBIT "B"

Producers 88 (9/70)—Paid Up (SP 4-75)
With Pooling Provision
Mississippi-Alabama-Florida

HEDERMAN BROS., RIDGELAND, MS

# OIL, GAS AND MINERAL LEASE

THIS AGREEMENT made this _____ day of _____ 20 ___ between

_____

_____

_____

lessor (whether one or more), whose address is: _____

and _____, lessee, WITNESSETH:

1. Lessor, in consideration of _____ Dollars, receipt of which is hereby acknowledged, and of the covenant and agreements of lessee hereinafter contained, does hereby grant, lease and let unto lessee the land covered hereby for the purposes and with the exclusive right of exploring, drilling, mining and operating for, producing and owning oil, gas (including casinghead gas), sulphur and all other minerals (whether or not similar to those mentioned), together with the right to make surveys on said land, lay pipe lines, establish and utilize facilities for surface or subsurface disposal of salt water, construct roads and bridges, dig canals, build tanks, power stations, power lines, telephone lines, employee houses and other structures on said land, necessary or useful in lessee's operations in exploring, drilling for, producing, treating, storing and transporting minerals produced from the land covered hereby or any other land adjacent thereto. The land covered hereby, herein called "said land", is located in the County of _____ State of _____ and is described as follows:

_____

This lease also covers and includes, in addition to that above described, all land, if any, contiguous or adjacent to or adjoining the land above described and (a) owned or claimed by lessor by limitation, prescription, possession, reversion or unrecorded instrument or (b) as to which lessor has a preference right of acquisition. Lessor agrees to execute any supplemental instrument requested by lessee for a more complete or accurate description of said land. For the purpose of determining the amount of any bonus or other payment hereunder, said land shall be deemed to contain _____ acres, whether or not it actually contains more or less, and the above recital of acreage in any tract shall be deemed to be the true acreage thereof. Lessee accepts the bonus as lump sum consideration for this lease and all rights, and options hereunder.

2. Unless sooner terminated or longer kept in force under other provisions hereof, this lease shall remain in force for a term of ten (10) years from the date hereof, hereinafter called "primary term", and as long thereafter as operations, as hereinafter defined, are conducted upon said land with no cessation for more than ninety (90) consecutive days.

3. As royalty, lessee covenants and agrees: (a) To deliver to the credit of lessor, in the pipe line to which lessee may connect its wells, the equal one-eighth part of all oil produced and saved by lessee from said land, or from time to time, at the option of lessee, to pay lessor the average posted market price of such one-eighth part of such oil at the wells as of the day it is run to the pipe line or storage tanks, lessor's interest, in either case, to bear one-eighth of the cost of treating oil to render it marketable pipe line oil; (b) To pay lessor on gas and casinghead gas produced from said land (1) when sold by lessee, one-eighth of the amount realized by lessee, computed at the mouth of the well, or (2) when used by lessee off said land or in the manufacture of gasoline or other products, the market value, at the mouth of the well, of one-eighth of such gas and casinghead gas; (c) To pay lessor on all other minerals mined and marketed or utilized by lessee from said land, one-tenth either in kind or value at the well or mine at lessee's election, except that on sulphur mined and marketed the royalty shall be one dollar ($1.00) per long ton. If, at the expiration of the primary term or at any time or times thereafter, there is any gas well on said land or on land with which said land or any portion thereof has been pooled, capable of producing gas or any other mineral covered hereby, and all such wells are shut-in, this lease shall, nevertheless, continue in force as though operations were being conducted on said land for so long as said wells are shut-in, and thereafter this lease is continued in force as if no shut-in had occurred. Lessee covenants and agrees to use reasonable diligence to produce, utilize, or market the minerals capable of being produced from said wells, but in the exercise of such diligence, lessee shall not be obligated to install or furnish facilities other than well facilities and ordinary lease facilities of flow lines, separator, and lease tank, and shall not be required to settle labor trouble or to market gas upon terms unacceptable to lessee. If, at any time or times after the expiration of the primary term, all such wells are shut-in for a period of ninety consecutive days, and during such time there are no operations on said land, then at or before the expiration of said ninety day period, lessee shall pay or tender, by check or draft of lessee, a sum equal to one dollar ($1.00) for each acre of land then covered hereby. Lessee shall make like payments or tenders at or before the end of each anniversary of the expiration of said ninety day period if upon such anniversary this lease is being continued in force solely by reason of the provisions of this sub-paragraph. Each such payment or tender shall be made to the parties who at the time of payment would be entitled to receive the royalties which would be paid under this lease if the wells were producing, or may be deposited in such parties credit in the _____ Bank at _____ or its successors, which shall continue as the depository, regardless of changes in the ownership of shut-in royalty. If at any time that lessee pays or tenders shut-in royalty, two or more parties are, or claim to be, entitled to receive same, lessee may, in lieu of any other method of payment herein provided, pay or tender such shut-in royalty, in the manner above specified, either jointly to such parties or separately to each in accordance with their respective ownership thereof, as lessee may elect. Any payment hereunder may be made by check or draft of lessee deposited in the mail or delivered to the party entitled to receive payment or to a depository bank provided for above on or before the last date for payment. Nothing herein shall impair lessee's right to release as provided in paragraph 5 hereof. In the event of assignment of this lease in whole or in part liability for payment hereunder shall rest exclusively on the then owner or owners of this lease, severally as to acreage owned by each.

4. Lessee is hereby granted the right, at its option, to pool or unitize all or any part of said land and of this lease as to any or all minerals or horizons thereunder, with other land, lease or leases, or portion or portions thereof, or mineral or horizon thereunder, so as to establish units containing not more than 80 surface acres plus 10% acreage tolerance; provided, however, a unit may be established or an existing unit may be enlarged to contain not more than 340 acres plus 10% acreage tolerance, if unitized only as to gas or only as to gas and liquid hydrocarbons (condensate) which are not a liquid in the subsurface reservoir. If larger units are required, under any governmental rule or order, for the drilling or operation of a well at a regular location, or for obtaining maximum allowable, from any well to be drilled, drilling or already drilled, any such unit may be established or enlarged to conform to the size required by such governmental order or rule. Lessee shall exercise said option as to each desired unit by executing an instrument identifying such unit and filing it for record in the public office in which this lease is recorded. Each of said options may be exercised by lessee from time to time, and whether before or after production has been established either on said land or on the portion of said land included in the unit or on other land unitized therewith and any such unit may include any well to be drilled, being drilled or already completed. A unit established hereunder shall be valid and effective for all purposes of this lease even though there may be mineral, royalty or leasehold interests in land within the unit which are not pooled or unitized. Any operations conducted on any part of such unitized land shall be considered, for all purposes, except the payment of royalty, operations conducted under this lease. There shall be allocated to the land covered by this lease included in any such unit that proportion of the total production of unitized minerals from wells in the unit, after deducting any used in lease or unit operations, which the number of surface acres in such land covered by this lease included in the unit bears to the total number of surface acres in the unit. The production so allocated shall be considered for all purposes, including payment or delivery of royalty, overriding royalty and any other payments out of production, to be the entire production of unitized minerals from the portion of said land covered hereby and included in such unit in the same manner as though produced from said land under the terms of this lease. The owner of the reversionary estate of any term royalty or mineral estate agrees that the accrual of royalties pursuant to this paragraph or of shut-in royalties from a well on the unit shall satisfy any limitation of term requiring production of oil or gas. The formation of any unit shall not have the effect of changing the ownership of any shut-in production royalty which may become payable under this lease. Neither shall it impair the right of lessee to release as provided in paragraph 5 hereof, in whole or in part, as to any one or more of the minerals or horizons, under any portion of said land covered hereby within or without the unit. Lessee may at any time, execute and file for record a written declaration that this lease no longer subject to pooling unless an existing pooled unit is also released as to minerals unless pooled unit is also released. As operations are pooled lands within the unit, lessee may dissolve any unit established hereunder by filing for record in the public office where this lease is recorded a declaration to that effect, if at that time no operations are being conducted thereon for unitized minerals. Subject to the provisions of this paragraph 4, a unit once established hereunder shall remain in force so long as any lease subject thereto shall remain in force. A unit may be so established, maintained, and dissolved during the life of this lease.

5. Lessee may at any time and from time to time execute and deliver to lessor or file for record a release or releases of this lease as to any part or all of said land or of any mineral or horizon thereunder, and thereby be relieved of all obligations as to the released acreage or interest.

*.-* This is a PAID-UP LEASE. In consideration of the down cash payment, Lessor agrees that Lessee shall not be obligated except as otherwise provided herein, to commence or continue any operations during the primary term. Whenever used in this lease the word "operations" shall mean operations for and any of the following: drilling, testing, completing, reworking, recompleting, deepening, plugging back or repairing of a well in search for or an endeavor to obtain production of oil, gas, sulphur or other minerals, excavating a mine, production of oil, gas, sulphur or other mineral, whether or not in paying quantities.

7. Lessee shall have the use, free from royalty, of water, other than from lessor's water wells, and of oil and gas produced from said land in all operations hereunder. Lessee shall have the right at any time to remove all machinery and fixtures placed on said land, including the right to draw and remove casing. No well shall be drilled nearer than 200 feet to the house or barn now on said land without the consent of the lessor. Lessee shall pay for damages caused by its operations to growing crops and timber on said land.

EXHIBIT "B", continued

8. The rights and estate of any party hereto may be assigned from time to time in whole or in part and as to any mineral or horizon. All of the covenants, obligations, and considerations of this lease shall extend to and be binding upon the parties hereto, their heirs, successors, assigns, and successive assigns. No change or division in the ownership of said land, royalty, or other moneys, or any part thereof, howsoever effected, shall increase the obligations or diminish the rights of lessee, including, but not limited to, the location and drilling of wells and the measurement of production. Notwithstanding any other actual or constructive knowledge or notice thereof of or to lessee, its successors or assigns, no change or division in the ownership of said land or of the royalties, or other moneys, or the right to receive the same, howsoever effected, shall be binding upon the then record owner of this lease until thirty (30) days after there has been furnished to such record owner at his or its principal place of business by lessor or lessee's heirs, successors, or assigns, notice of such change or division, supported by either originals or duly certified copies of the instruments which have been properly filed for record and which evidence such change or division, and of such court records and proceedings, transcripts, or other documents as shall be necessary in the opinion of such record owner to establish the validity of such change or division. If any such change in ownership occurs by reason of the death of the owner, lessee may, nevertheless, pay or tender such royalties, or other moneys, or part thereof, to the credit of the decedent in a depository bank provided for above.

9. In the event lessor considers that lessee has not complied with all its obligations hereunder, both express and implied, lessor shall notify lessee in writing, setting out specifically in what respects lessee has breached this contract. Lessee shall then have sixty (60) days after receipt of said notice within which to meet or commence to meet all or any part of the breaches alleged by lessor. The service of said notice shall be precedent to the bringing of any action by lessor on said lease for any cause, and no such action shall be brought until the lapse of sixty (60) days after service of such notice on lessee. Neither the service of said notice nor the doing of any acts by lessee aimed to meet all or any of the alleged breaches shall be deemed an admission or presumption that lessee has failed to perform all its obligations hereunder. Should it be asserted in any notice given to the lessor under the provisions of this paragraph that lessee has failed to comply with any implied obligation or covenant hereof, this lease shall not be subject to cancellation for any such cause except after final judicial ascertainment that such failure exists and lessee has then been afforded a reasonable time to prevent cancellation by complying with and discharging its obligations as to which lessee has been judicially determined to be in default. If this lease is cancelled for any cause, it shall nevertheless remain in force and effect as to (1) sufficient acreage around each well as to which there are operations to constitute a drilling or maximum allowable unit under applicable governmental regulations, (but in no event less than forty acres), such acreage to be designated by lessee as nearly as practicable in the form of a square centered at the well, or in such shape as then existing spacing rules require; and (2) any part of said land included in a pooled unit on which there are operations. Lessee shall also have such easements on said land as are necessary to operations on the acreage so retained.

10. Lessor hereby warrants and agrees to defend title to said land against the claims of all persons whomsoever. Lessee's rights and interests hereunder shall be charged primarily with any mortgage, taxes or other lien, or interest and other charges on said land, but lessor agrees that lessee shall have the right at any time to pay or reduce same for lessor, either before or after maturity, and be subrogated to the rights of the holder thereof and to deduct amounts so paid from royalties or other payments payable or which may become payable to lessor and/or assigns under this lease. Lessee is hereby given the right to acquire for its own benefit, deeds, leases, or assignments covering any interest or claim in said land which lessee or any other party contends is outstanding and not covered hereby and even though outstanding interest or claim be invalid or adverse to lessor. If this lease covers a less interest in the oil, gas, sulphur, or other minerals in all or any part of said land than the entire and undivided fee simple estate (whether lessor's interest is herein specified or not), or no interest therein, then the royalties, and other moneys accruing from any part as to which this lease covers less than such full interest, shall be paid only in the proportion which the interest therein, if any, covered by this lease, bears to the whole and undivided fee simple estate therein. All royalty interest covered by this lease (whether or not owned by lessor) shall be paid out of the royalty herein provided. This lease shall be binding upon each party who executes it without regard to whether it is executed by all those named herein as lessor.

11. If, while this lease is in force, at, or after the expiration of the primary term hereof, it is not being conducted in force by reason of the shut-in well provisions of paragraph 3 hereof, and lessee is not conducting operations on said land by reason of (1) any law, order, rule or regulation, (whether or not subsequently determined to be invalid) or (2) any other cause, whether similar or dissimilar, (except financial) beyond the reasonable control of lessee, the primary term hereof shall be extended until the first anniversary date hereof occurring ninety (90) or more days following the removal of such delaying cause, and this lease may be extended thereafter by operations as if such delay had not occurred.

12. Within thirty (30) days prior to the expiration of the primary term of this lease, or if operations are being conducted on said lease or land pooled therewith at the expiration of the primary term in such manner as to maintain this lease in force, within thirty (30) days after the completion of a dry hole resulting from such operations, lessee may extend the primary term of this lease as to all or any part of acreage then covered hereby, for an additional five (5) years beyond the initial primary term, by written notification of action taken and by mailing payment to lessor or to lessor's successor in interest as reflected by notice to lessee pursuant to Paragraph 8 hereof, or to the credit of lessor or such successor in interest in any depository bank named herein

in any amendatory instrument in the sum of $_____ (at such rate as to which the lease is so extended. If this option is executed by lessee, the lease as extended will thereafter be treated as if the original primary term had been five (5) years longer.

IN WITNESS WHEREOF, this instrument is executed on the date first above written.

_____     _____(SEAL)

_____     _____(SEAL)

_____     _____(SEAL)

JOINT OR SINGLE ACKNOWLEDGMENT
(MISSISSIPPI-ALABAMA-FLORIDA)

STATE OF _____

COUNTY OF _____

I hereby certify, that on this day, before me, a _____
duly authorized in the state and county aforesaid to take acknowledgments, personally appeared _____
to me known to be the person _____ described in and who executed the foregoing instrument and _____ he _____
acknowledged before me that, being informed of the contents of the same, _____ he _____ voluntarily signed and delivered the within and foregoing instrument on the day and year therein mentioned.

Given under my hand and official seal, this _____ day of _____ A.D. 20 _____
(Affix Seal)
_____
(Title of Official)

My commission expires _____ in and for _____ County, _____

WITNESS ACKNOWLEDGMENT
(MISSISSIPPI-ALABAMA-FLORIDA)

STATE OF _____

COUNTY OF _____

I, a _____ in and for the aforesaid jurisdiction, hereby certify that _____
a subscribing witness to the foregoing instrument, known to me, appeared before me on this day, and being sworn, stated that _____
the grantor(s), having been informed of the contents thereof, voluntarily executed and delivered the same in his presence, and in the presence of the other subscribing witness, on the day the same bears date; that he attested the same in the presence of the grantor(s), and of the other witness, and that such other witness subscribed his name as a witness in his presence.

Given under my hand and official seal, this _____ day of _____ 20 _____
(Affix Seal)
_____
(Subscribing Witness)

_____
(Title of Official)

My commission expires _____ in and for _____ County, _____