A.A.P.L. FORM 610-1982

# MODEL FORM OPERATING AGREEMENT
### Northwest Quarter (NW¼) Section 29,
### Township 4 North, Range 13 East
### Conecuh County, Alabama

OPERATING AGREEMENT

DATED

__December 7__ , __2011__ ,

<em>Year</em>

OPERATOR   __Sklar Exploration Company L.L.C.__

CONTRACT AREA   __As shown on Exhibit "A" to this Agreement.__

COUNTY OR PARISH OF  __Conecuh__        STATE OF    __Alabama__

COPYRIGHT 1982 – ALL RIGHTS RESERVED
AMERICAN ASSOCIATION OF PETROLEUM
LANDMEN, 4100 FOSSIL CREEK BLVD., FORT
WORTH, TEXAS, 76137-2791, APPROVED
FORM. A.A.P.L. NO. 610 – 1982 REVISED

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

## TABLE OF CONTENTS

| Article | Title | Page |
|---|---|---|
| I. | DEFINITIONS | 1 |
| II. | EXHIBITS | 1 |
| III. | INTERESTS OF PARTIES | 2 |
| | A. OIL AND GAS INTERESTS | 2 |
| | B. INTERESTS OF PARTIES IN COSTS AND PRODUCTION | 2 |
| | C. EXCESS ROYALTIES, OVERRIDING ROYALTIES AND OTHER PAYMENTS | 2 |
| | D. SUBSEQUENTLY CREATED INTERESTS | 2 |
| IV. | TITLES | 2 |
| | A. TITLE EXAMINATION | 2-3 |
| | B. LOSS OF TITLE | 3 |
| |    1.  Failure of Title | 3 |
| |    2.  Loss by Non-Payment or Erroneous Payment of Amount Due | 3 |
| |    3.  Other Losses | 3 |
| V. | OPERATOR | 4 |
| | A. DESIGNATION AND RESPONSIBILITIES OF OPERATOR | 4 |
| | B. RESIGNATION OR REMOVAL OF OPERATOR AND SELECTION OF SUCCESSOR | 4 |
| |    1.  Resignation or Removal of Operator | 4 |
| |    2.  Selection of Successor Operator | 4 |
| | C. EMPLOYEES | 4 |
| | D. DRILLING CONTRACTS | 4 |
| VI. | DRILLING AND DEVELOPMENT | 4 |
| | A. INITIAL WELL | 4-5 |
| | B. SUBSEQUENT OPERATIONS | 5 |
| |    1.  Proposed Operations | 5 |
| |    2.  Operations by Less than All Parties | 5-6-7 |
| |    3.  Stand-By Time | 7 |
| |    4.  Sidetracking | 7 |
| | C. TAKING PRODUCTION IN KIND | 7 |
| | D. ACCESS TO CONTRACT AREA AND INFORMATION | 8 |
| | E. ABANDONMENT OF WELLS | 8 |
| |    1.  Abandonment of Dry Holes | 8 |
| |    2.  Abandonment of Wells that have Produced | 8-9 |
| |    3.  Abandonment of Non-Consent Operations | 9 |
| VII. | EXPENDITURES AND LIABILITY OF PARTIES | 9 |
| | A. LIABILITY OF PARTIES | 9 |
| | B. LIENS AND PAYMENT DEFAULTS | 9 |
| | C. PAYMENTS AND ACCOUNTING | 9 |
| | D. LIMITATION OF EXPENDITURES | 9-10 |
| |    1.  Drill or Deepen | 9-10 |
| |    2.  Rework or Plug Back | 10 |
| |    3.  Other Operations | 10 |
| | E. RENTALS, SHUT-IN WELL PAYMENTS AND MINIMUM ROYALTIES | 10 |
| | F. TAXES | 10 |
| | G. INSURANCE | 11 |
| VIII. | ACQUISITION, MAINTENANCE OR TRANSFER OF INTEREST | 11 |
| | A. SURRENDER OF LEASES | 11 |
| | B. RENEWAL OR EXTENSION OF LEASES | 11 |
| | C. ACREAGE OR CASH CONTRIBUTIONS | 11-12 |
| | D. MAINTENANCE OF UNIFORM INTEREST | 12 |
| | E. WAIVER OF RIGHTS TO PARTITION | 12 |
| | F.  PREFERENTIAL RIGHT TO PURCHASE | 12 |
| IX. | INTERNAL REVENUE CODE ELECTION | 12 |
| X. | CLAIMS AND LAWSUITS | 13 |
| XI. | FORCE MAJEURE | 13 |
| XII. | NOTICES | 13 |
| XIII. | TERM OF AGREEMENT | 13 |
| XIV. | COMPLIANCE WITH LAWS AND REGULATIONS | 14 |
| | A. LAWS, REGULATIONS AND ORDERS | 14 |
| | B. GOVERNING LAW | 14 |
| | C. REGULATORY AGENCIES | 14 |
| XV. | OTHER PROVISIONS | 14 |
| XVI. | MISCELLANEOUS | 15 |

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

1                                    OPERATING AGREEMENT
2
3        THIS AGREEMENT, entered by and between ___Sklar Exploration Company L.L.C._____
4        _____, hereinafter designated and
5    referred to as "Operator", and the signatory party or parties other than Operator, sometimes hereinafter referred to individually herein
6    as "Non-Operator", and collectively as "Non-Operators".
7
8                                        WITNESSETH:
9
10       WHEREAS, the parties to this agreement are owners of oil and gas leases and/or oil and gas interests in the land identified in
11   Exhibit "A", and the parties hereto have reached an agreement to explore and develop these leases and/or oil and gas interests for the
12   production of oil and gas to the extent and as hereinafter provided,
13
14       NOW, THEREFORE, it is agreed as follows:
15
16                                          ARTICLE I.
17                                         DEFINITIONS
18
19       As used in this agreement, the following words and terms shall have the meanings here ascribed to them:
20       A. The term "oil and gas" shall mean oil, gas, casinghead gas, gas condensate, and all other liquid or gaseous hydrocarbons
21   and other marketable substances produced therewith, unless an intent to limit the inclusiveness of this term is specifically stated.
22       B. The terms "oil and gas lease", "lease" and "leasehold" shall mean the oil and gas leases covering tracts of land
23   lying within the Contract Area which are owned by the parties to this agreement.
24       C. The term "oil and gas interests" shall mean unleased fee and mineral interests in tracts of land lying within the
25   Contract Area which are owned by parties to this agreement.
26       D. The term "Contract Area" shall mean all of the lands, oil and gas leasehold interests and oil and gas interests intended to be
27   developed and operated for oil and gas purposes under this agreement. Such lands, oil and gas leasehold interests and oil and gas interests
28   are described in Exhibit "A".
29       E. The term "drilling unit" shall mean the area fixed for the drilling of one well by order or rule of any state or
30   federal body having authority. If a drilling unit is not fixed by any such rule or order, a drilling unit shall be the drilling unit as establish-
31   ed by the pattern of drilling in the Contract Area or as fixed by express agreement of the Drilling Parties.
32       F. The term "drillsite" shall mean the oil and gas lease or interest on which a proposed well is to be located.
33       G. The terms "Drilling Party" and "Consenting Party" shall mean a party who agrees to join in and pay its share of the cost of
34   any operation conducted under the provisions of this agreement.
35       H. The terms "Non-Drilling Party" and "Non-Consenting Party" shall mean a party who elects not to participate
36   in a proposed operation.
37
38       Unless the context otherwise clearly indicates, words used in the singular include the plural, the plural includes the
39   singular, and the neuter gender includes the masculine and the feminine.
40
41                                         ARTICLE II.
42                                          EXHIBITS
43
44       The following exhibits, as indicated below and attached hereto, are incorporated in and made a part hereof:
45   ☑   A. Exhibit "A", shall include the following information:
46           (1) Identification of lands subject to this agreement,
47           (2) Restrictions, if any, as to depths, formations, or substances,
48           (3) Percentages or fractional interests of parties to this agreement,
49           (4) Oil and gas leases and/or oil and gas interests subject to this agreement,
50           (5) Addresses of parties for notice purposes.
51   ☑   B. Exhibit "B", Form of Lease.
52   ☑   C. Exhibit "C", Accounting Procedure.
53   ☑   D. Exhibit "D", Insurance.
54   ☑   E. Exhibit "E", Gas Balancing Agreement.
55   ☐   F. Exhibit "F", Non-Discrimination and Certification of Non-Segregated Facilities.
56   ☐   G. Exhibit "G", Tax Partnership.
57       If any provision of any exhibit, except Exhibits "E" and "G", is inconsistent with any provision contained in the body
58   of this agreement, the provisions in the body of this agreement shall prevail.
59
60
61
62
63
64
65
66
67
68
69
70

                                            - 1 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

### ARTICLE III.
### INTERESTS OF PARTIES

**A.   Oil and Gas Interests:**

If any party owns an oil and gas interest in the Contract Area, that interest shall be treated for all purposes of this agreement and during the term hereof as if it were covered by the form of oil and gas lease attached hereto as Exhibit "B", and the owner thereof shall be deemed to own both the royalty interest reserved in such lease and the interest of the lessee thereunder.

**B.   Interests of Parties in Costs and Production:**

Unless changed by other provisions, all costs and liabilities incurred in operations under this agreement shall be borne and paid, and all equipment and materials acquired in operations on the Contract Area shall be owned, by the parties as their interests are set forth in Exhibit "A". In the same manner, the parties shall also own all production of oil and gas from the Contract Area subject to the payment of royalties to the extent of _____all jointly owned lease burdens_____ which shall be borne as hereinafter set forth.

Regardless of which party has contributed the lease(s) and/or oil and gas interest(s) hereto on which royalty is due and payable, each party entitled to receive a share of production of oil and gas from the Contract Area shall bear and shall pay or deliver, or cause to be paid or delivered, to the extent of its interest in such production, / the royalty amount stipulated hereinabove and shall hold the *royalties and other burdens* other parties free from any liability therefor. No party shall ever be responsible, however, on a price basis higher than the price received by such party, to any other party's lessor or royalty owner, and if any such other party's lessor or royalty owner should demand and receive settlement on a higher price basis, the party contributing the affected lease shall bear the additional royalty burden attributable to such higher price.

Nothing contained in this Article III.B. shall be deemed an assignment or cross-assignment of interests covered hereby.

**C.   Excess Royalties, Overriding Royalties and Other Payments:**

Unless changed by other provisions, if the interest of any party in any lease covered hereby is subject to any royalty, overriding royalty, production payment or other burden on production / in excess of the amount stipulated in Article III.B., such party so *which is not a joint obligation of the parties* burdened shall assume and alone bear all such excess obligations and shall indemnify and hold the other parties hereto harmless from any and all claims and demands for payment asserted by owners of such excess burden.

**D.   Subsequently Created Interests:**

If any party should hereafter create an overriding royalty, production payment or other burden payable out of production attributable to its working interest hereunder, or if such a burden existed prior to this agreement and is not set forth in Exhibit "A", or was not disclosed in writing to all other parties prior to the execution of this agreement by all parties, or is not a jointly acknowledged and accepted obligation of all parties (any such interest being hereinafter referred to as "subsequently created interest" irrespective of the timing of its creation and the party out of whose working interest the subsequently created interest is derived being hereinafter referred to as "burdened party"), and:

1.   If the burdened party is required under this agreement to assign or relinquish to any other party, or parties, all or a portion of its working interest and/or the production attributable thereto, said other party, or parties, shall receive said assignment and/or production free and clear of said subsequently created interest and the burdened party shall indemnify and save said other party, or parties, harmless from any and all claims and demands for payment asserted by owners of the subsequently created interest; and,

2.   If the burdened party fails to pay, when due, its share of expenses chargeable hereunder, all provisions of Article VII.B. shall be enforceable against the subsequently created interest in the same manner as they are enforceable against the working interest of the burdened party.

### ARTICLE IV.
### TITLES

**A.   Title Examination:**

Title examination shall be made on the drillsite of any proposed well prior to commencement of drilling operations or, if the Drilling Parties so request, title examination shall be made on the leases and/or oil and gas interests included, or planned to be included, in the drilling unit around such well. The opinion will include the ownership of the working interest, minerals, royalty, overriding royalty and production payments under the applicable leases. At the time a well is proposed, each party contributing leases and/or oil and gas interests to the drillsite, or to be included in such drilling unit, shall furnish to Operator all abstracts (including federal lease status reports), title opinions, title papers and curative material in its possession free of charge. All such information not in the possession of or made available to Operator by the parties, but necessary for the examination of the title, shall be obtained by Operator. Operator shall cause title to be examined by attorneys on its staff or by outside attorneys. Copies of all title opinions shall be furnished to each party hereto. The cost incurred by Operator in this title program shall be borne as follows:

☐ ~~Option No. 1:   Costs incurred by Operator in procuring abstracts and title examination (including preliminary, supplemental, shut-in-gas royalty opinions and division order title opinions) shall be a part of the administrative overhead as provided in Exhibit "C", and shall not be a direct charge, whether performed by Operator's staff attorneys or by outside attorneys.~~

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

**ARTICLE IV**
**continued**

1 ☑   Option No. 2:   Costs incurred by Operator in procuring abstracts /  and fees paid outside attorneys /  for title examination

2 (including preliminary, supplemental, shut-in gas royalty opinions and division order title opinions) / shall be borne by the Drilling Parties

3 in the proportion that the interest of each Drilling Party bears to the total interest of all Drilling Parties as such interests appear in Ex-

4 hibit "A". Operator shall make no charge for services rendered by its staff attorneys or other personnel in the performance of the above

5 functions.

6

7    / ~~Each party shall be responsible~~ **Operator shall be responsible** for securing curative matter and pooling amendments or agreements required in connection

8 with leases or oil and gas interests contributed by such party. Operator shall be responsible for the preparation and recording of pooling

9 designations or declarations as well as the conduct of hearings before governmental agencies for the securing of spacing or pooling orders.

10 This shall not prevent any party from appearing on its own behalf at any such hearing.

11

12     No well shall be drilled on the Contract Area until after (1) the title to the drillsite or drilling unit has been examined as above

13 provided, and (2) the title has been approved by the examining attorney or title has been accepted by ~~all of the parties who are to par-~~

14 ~~ticipate in the drilling of the well.~~ **Operator.**

15

16 ~~B.   Loss of Title:~~

17

18 ~~1. Failure of Title: Should any oil and gas interest or lease, or interest therein, be lost through failure of title, which loss results in a~~

19 ~~reduction of interest from that shown on Exhibit "A", the party contributing the affected lease or interest shall have ninety (90) days~~

20 ~~from final determination of title failure to acquire a new lease or other instrument curing the entirety of the title failure, which acquisi-~~

21 ~~tion will not be subject to Article VIII.B., and failing to do so, this agreement, nevertheless, shall continue in force as to all remaining oil~~

22 ~~and gas leases and interests; and.~~

23 ~~(a) The party whose oil and gas lease or interest is affected by the title failure shall bear alone the entire loss and it shall not be~~

24 ~~entitled to recover from Operator or the other parties any development or operating costs which it may have theretofore paid or incurred,~~

25 ~~but there shall be no additional liability on its part to the other parties hereto by reason of such title failure;~~

26 ~~(b) There shall be no retroactive adjustment of expenses incurred or revenues received from the operation of the interest which has~~

27 ~~been lost, but the interests of the parties shall be revised on an acreage basis, as of the time it is determined finally that the title failure has oc-~~

28 ~~curred, so that the interest of the party whose lease or interest is affected by the title failure will thereafter be reduced in the Contract~~

29 ~~Area by the amount of the interest lost;~~

30 ~~(c) If the proportionate interest of the other parties hereto in any producing well theretofore drilled on the Contract Area is~~

31 ~~increased by reason of the title failure, the party whose title has failed shall receive the proceeds attributable to the increase in such in-~~

32 ~~terest (less costs and burdens attributable thereto) until it has been reimbursed for unrecovered costs paid by it in connection with such~~

33 ~~well;~~

34 ~~(d) Should any person not a party to this agreement, who is determined to be the owner of any interest in the title which has~~

35 ~~failed, pay in any manner any part of the cost of operation, development, or equipment, such amount shall be paid to the party or parties~~

36 ~~who bore the costs which are so refunded;~~

37 ~~(e) Any liability to account to a third party for prior production of oil and gas which arises by reason of title failure shall be~~

38 ~~borne by the party or parties whose title failed in the same proportions in which they shared in such prior production; and~~

39 ~~(f) No charge shall be made to the joint account for legal expenses, fees or salaries, in connection with the defense of the interest~~

40 ~~claimed by any party hereto, it being the intention of the parties hereto that each shall defend title to its interest and bear all expenses in~~

41 ~~connection therewith.~~

42 **This space intentionally left blank.**

43

44 ~~2. Loss by Non-Payment or Erroneous Payment of Amount Due: If, through mistake or oversight, any rental, shut-in well~~

45 ~~payment, minimum royalty or royalty payment, is not paid or is erroneously paid, and as a result a lease or interest therein terminates,~~

46 ~~there shall be no monetary liability against the party who failed to make such payment. Unless the party who failed to make the required~~

47 ~~payment secures a new lease covering the same interest within ninety (90) days from the discovery of the failure to make proper payment,~~

48 ~~which acquisition will not be subject to Article VIII.B., the interests of the parties shall be revised on an acreage basis, effective as of the~~

49 ~~date of termination of the lease involved, and the party who failed to make proper payment will no longer be credited with an interest in~~

50 ~~the Contract Area on account of ownership of the lease or interest which has terminated. In the event the party who failed to make the~~

51 ~~required payment shall not have been fully reimbursed, at the time of the loss, from the proceeds of the sale of oil and gas attributable to~~

52 ~~the lost interest, calculated on an acreage basis, for the development and operating costs theretofore paid on account of such interest, it~~

53 ~~shall be reimbursed for unrecovered actual costs theretofore paid by it (but not for its share of the cost of any dry hole previously drilled~~

54 ~~or wells previously abandoned) from so much of the following as is necessary to effect reimbursement:~~

55 ~~(a) Proceeds of oil and gas, less operating expenses, theretofore accrued to the credit of the lost interest, on an acreage basis,~~

56 ~~up to the amount of unrecovered costs;~~

57 ~~(b) Proceeds, less operating expenses, thereafter accrued attributable to the lost interest on an acreage basis, of that portion of~~

58 ~~oil and gas thereafter produced and marketed (excluding production from any wells thereafter drilled) which, in the absence of such lease~~

59 ~~termination, would be attributable to the lost interest on an acreage basis, up to the amount of unrecovered costs, the proceeds of said~~

60 ~~portion of the oil and gas to be contributed by the other parties in proportion to their respective interest; and~~

61 ~~(c) Any monies, up to the amount of unrecovered costs, that may be paid by any party who is, or becomes, the owner of the interest~~

62 ~~lost, for the privilege of participating in the Contract Area or becoming a party to this agreement.~~

63

64     3. Other Losses:   All losses incurred, other than those set forth in Articles IV.B.1. and IV.B.2. above, shall be joint losses

65 and shall be borne by all parties in proportion to their interests. There shall be no readjustment of interests in the remaining portion of

66 the Contract Area.

67   *   Curative matters and materials
  **  Landmen and consultants

68 ***and for applications and hearings

69

70

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

## ARTICLE V.
## OPERATOR

**A.  Designation and Responsibilities of Operator:**

   __Sklar Exploration Company L.L.C._____ shall be the Operator of the Contract Area, and shall conduct and direct and have full control of all operations on the Contract Area as permitted and required by, and within the limits of this agreement. It shall conduct all such operations in a good and workmanlike manner, but it shall have no liability as Operator to the other parties for losses sustained or liabilities incurred, except such as may result from gross negligence or willful misconduct.

**B.  Resignation or Removal of Operator and Selection of Successor:**

   1. Resignation or Removal of Operator:  Operator may resign at any time by giving written notice thereof to Non-Operators. If Operator terminates its legal existence, no longer owns an interest hereunder in the Contract Area, or is no longer capable of serving as Operator, Operator shall be deemed to have resigned without any action by Non-Operators, except the selection of a successor. Operator may be removed ~~if it fails or refuses to carry out its duties hereunder, or becomes insolvent, bankrupt or is placed in receivership,~~ by the affirmative vote of ~~two (2)~~ or more of ~~Non-Operators~~ owning a ~~majority~~ interest based on ownership as shown on Exhibit "A" remaining after excluding the voting interest of Operator. Such resignation or removal shall not become effective until 7:00 o'clock A.M. on the first day of the calendar month following the expiration of ninety (90) days after the giving of notice of resignation by Operator or action by the Non-Operators to remove Operator, unless a successor Operator has been selected and assumes the duties of Operator at an earlier date. Operator, after effective date of resignation or removal, shall be bound by the terms hereof as a Non-Operator. A change of a corporate name or structure of Operator or transfer of Operator's interest to any single subsidiary, parent or successor corporation shall not be the basis for removal of Operator.

*(interlineation above line 17–18: "three (3)", "parties", "total of 51% or greater voting")*

   2. Selection of Successor Operator:  Upon the resignation or removal of Operator, a successor Operator shall be selected by the parties. The successor Operator shall be selected from the parties owning an interest in the Contract Area at the time such successor Operator is selected. The successor Operator shall be selected by the affirmative vote of two (2) or more parties owning a majority /interest based on ownership as shown on Exhibit "A"; provided, however, if an Operator which has been removed fails to vote or votes only to succeed itself, the successor Operator shall be selected by the affirmative vote of two (2) or more parties owning a majority interest based on ownership as shown on Exhibit "A" remaining after excluding the voting interest of the Operator that was removed.

*(interlineation above line 28: "voting")*

**C.  Employees:**

   The number of employees used by Operator in conducting operations hereunder, their selection, and the hours of labor and the compensation for services performed shall be determined by Operator, and all such employees shall be the employees of Operator.

**D.  Drilling Contracts:**

   All wells drilled on the Contract Area shall be drilled on a competitive contract basis at the usual rates prevailing in the area. If it so desires, Operator may employ its own tools and equipment in the drilling of wells, but its charges therefor shall not exceed the prevailing rates in the area and the rate of such charges shall be agreed upon by the parties in writing before drilling operations are commenced, and such work shall be performed by Operator under the same terms and conditions as are customary and usual in the area in contracts of independent contractors who are doing work of a similar nature.

## ARTICLE VI.
## DRILLING AND DEVELOPMENT

**A.  Initial Well:**

   On or before the __1st__ day of __February_____, (year) __2011__. and subject to rig availability. / Operator shall commence the drilling of a well for oil and gas at the following location: **660' FSL and 660' FEL of  Northwest ¼ of Section 29, Township 4 North, Range 13 East, Conecuh County,**

**Alabama**

and shall thereafter continue the drilling of the well with due diligence to **12,200 feet subsurface or a depth sufficient to test the**

**stratigraphic equivalent of the Haynesville, Smackover and Norphlet Formations of the Upper Jurassic System.**

unless granite or other practically impenetrable substance or condition in the hole, which renders further drilling impractical, is encountered at a lesser depth, or unless all parties agree to complete or abandon the well at a lesser depth.

   Operator shall make reasonable tests of all formations encountered during drilling which give indication of containing oil and

- 4 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

gas in quantities sufficient to test, unless this agreement shall be limited in its application to a specific formation or formations, in which event Operator shall be required to test only the formation or formations to which this agreement may apply.

~~If, in Operator's judgment, the well will not produce oil or gas in paying quantities, and it wishes to plug and abandon the well as a dry hole, the provisions of Article VI.E.1. shall thereafter apply.~~

**B.   Subsequent Operations:**

1. _Proposed Operations:_  Should any party hereto desire to drill any well on the Contract Area other than the well provided for in Article VI.A., or to rework, <sup>reenter, recomplete, sidetrack</sup> / deepen or plug back a dry hole drilled at the joint expense of all parties or a well jointly owned by all the parties and not then producing <sup>or capable of producing</sup> / <sup>reenter, recomplete, sidetrack</sup> in paying quantities, the party desiring to drill, rework, / deepen or plug back such a well shall give the other parties written notice of the proposed operation, specifying the work to be performed, the location, proposed depth, objective formation and the estimated cost of the operation. The parties receiving such a notice shall have thirty (30) days after receipt of the notice within which to notify the party wishing to do the work whether they elect to participate in the cost of the proposed operation. If a drilling rig is on location <sup>within the contract area</sup> / notice of a proposal to rework, plug back or drill deeper may be given by telephone and the response period shall be limited to forty-eight (48) hours, exclusive of Saturday, Sunday, and legal holidays. Failure of a party receiving such notice to reply within the period above fixed shall constitute an election by that party not to participate in the cost of the proposed operation. Any notice or response given by telephone shall be promptly confirmed in writing.

If all parties elect to participate in such a proposed operation, Operator shall, within ninety (90) days after expiration of the notice period of thirty (30) days (or as promptly as possible after the expiration of the forty-eight (48) hour period when a drilling rig is on location, as the case may be), actually commence the proposed operation and complete it with due diligence at the risk and expense of all parties hereto; provided, however, said commencement date may be extended upon written notice of same by Operator to the other parties, for a period of up to thirty (30) additional days if, in the sole opinion of Operator, such additional time is reasonably necessary to obtain permits from governmental authorities, surface rights (including rights-of-way) or appropriate drilling equipment, or to complete title examination or curative matter required for title approval or acceptance. Notwithstanding the force majeure provisions of Article XI, if the actual operation has not been commenced within the time provided (including any extension thereof as specifically permitted herein) and if any party hereto still desires to conduct said operation, written notice proposing same must be resubmitted to the other parties in accordance with the provisions hereof as if no prior proposal had been made.

2. _Operations by Less than All Parties:_  If any party receiving such notice as provided in Article VI.B.1. or VII.D.1. (Option No. 2) elects not to participate in the proposed operation, then, in order to be entitled to the benefits of this Article, the party or parties giving the notice and such other parties as shall elect to participate in the operation shall, within ninety (90) days after expiration of the notice period of thirty (30) days (or as promptly as possible after the expiration of the forty-eight (48) hour period when a drilling rig is on location, as the case may be) actually commence the proposed operation and complete it with due diligence. Operator shall perform all work for the account of the Consenting Parties; provided, however, if no drilling rig or other equipment is on location, and if Operator is a Non-Consenting Party, the Consenting Parties shall either: (a) request Operator to perform the work required by such proposed operation for the account of the Consenting Parties, or (b) designate one (1) of the Consenting Parties as Operator to perform such work. Consenting Parties, when conducting operations on the Contract Area pursuant to this Article VI.B.2., shall comply with all terms and conditions of this agreement.

If less than all parties approve any proposed operation, the proposing party, immediately after the expiration of the applicable notice period, shall advise the Consenting Parties of the total interest of the parties approving such operation and its recommendation as to whether the Consenting Parties should proceed with the operation as proposed. Each Consenting Party, within forty-eight (48) hours (exclusive of Saturday, Sunday and legal holidays) after receipt of such notice, shall advise the proposing party of its desire to (a) limit participation to such party's interest as shown on Exhibit "A" or (b) carry its proportionate part of Non-Consenting Parties' interests, and failure to advise the proposing party shall be deemed an election under (a). In the event a drilling rig is on location, the time permitted for such a response shall not exceed a total of forty-eight (48) hours (inclusive of Saturday, Sunday and legal holidays). The proposing party, at its election, may withdraw such proposal if there is insufficient participation and shall promptly notify all parties of such decision.

The entire cost and risk of conducting such operations shall be borne by the Consenting Parties in the proportions they have elected to bear same under the terms of the preceding paragraph. Consenting Parties shall keep the leasehold estates involved in such operations free and clear of all liens and encumbrances of every kind created by or arising from the operations of the Consenting Parties. If such an operation results in a dry hole, the Consenting Parties shall plug and abandon the well and restore the surface location at their <sup>recompleted, sidetracked</sup> sole cost, risk and expense. If any well drilled, / reworked, deepened or plugged back under the provisions of this Article results in a producer of oil and/or gas in paying quantities, the Consenting Parties shall complete and equip the well to produce at their sole cost and risk,

- 4 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

## ARTICLE VI
### continued

and the well shall then be turned over to Operator and shall be operated by it at the expense and for the account of the Consenting Parties. Upon commencement of operations for the drilling, / reworking, deepening or plugging back of any such well by Consenting Parties in accordance with the provisions of this Article, each Non-Consenting Party shall be deemed to have relinquished to Consenting Parties, and the Consenting Parties shall own and be entitled to receive, in proportion to their respective interests, all of such Non-Consenting Party's interest in the well and share of production therefrom until the proceeds of the sale of such share, calculated at the well, or market value thereof if such share is not sold, (after deducting production taxes, severance taxes, windfall profit taxes, similar taxes, excise taxes, / royalty, overriding royalty and other interests not excepted by Article III.D. payable out of or measured by the production from such well accruing with respect to such interest until it reverts) shall equal the total of the following:

(a) 200% 100% of each such Non-Consenting Party's share of the cost of any newly acquired surface equipment beyond the wellhead connections (including, but not limited to, stock tanks, separators, treaters, pumping equipment and piping), plus 200% / 100% of each such Non-Consenting Party's share of the cost of operation of the well commencing with first production and continuing until each such Non-Consenting Party's relinquished interest shall revert to it under other provisions of this Article, it being agreed that each Non-Consenting Party's share of such costs and equipment will be that interest which would have been chargeable to such Non-Consenting Party had it participated in the well from the beginning of the operations; and

(b) __500__ % of that portion of the costs and expenses of drilling, reworking, / deepening, plugging back, testing and completing, after deducting any cash contributions received under Article VIII.C., and __500__ % of that portion of the cost of newly acquired equipment in the well (to and including the wellhead connections), which would have been chargeable to such Non-Consenting Party if it had participated therein.

An election not to participate in the drilling or the deepening of a well shall be deemed an election not to participate in any reworking / or plugging back operation proposed in such a well, or portion thereof, to which the initial Non-Consent election applied that is conducted at any time prior to full recovery by the Consenting Parties of the Non-Consenting Party's recoupment account. Any such reworking / or plugging back operation conducted during the recoupment period shall be deemed part of the cost of operation of said well and there shall be added to the sums to be recouped by the Consenting Parties two 200% one hundred percent (100%) of that portion of the costs of the reworking / or plugging back operation which would have been chargeable to such Non-Consenting Party had it participated therein. If such a reworking / or plugging back operation is proposed during such recoupment period, the provisions of this Article VI.B. shall be applicable as between said Consenting Parties in said well.

During the period of time Consenting Parties are entitled to receive Non-Consenting Party's share of production, or the proceeds therefrom, Consenting Parties shall be responsible for the payment of all production, severance, excise, gathering and other taxes, and all royalty, overriding royalty and other burdens applicable to Non-Consenting Party's share of production not excepted by Article III.D.

In the case of any reworking, / plugging back or deeper drilling operation, the Consenting Parties shall be permitted to use, free of cost, all casing, tubing and other equipment in the well, but the ownership of all such equipment shall remain unchanged; and upon abandonment of a well after such reworking, / plugging back or deeper drilling, the Consenting Parties shall account for all such equipment to the owners thereof, with each party receiving its proportionate part in kind or in value, less cost of salvage.

Within sixty (60) days after the completion of any operation under this Article, the party conducting the operations for the Consenting Parties shall furnish each Non-Consenting Party with an inventory of the equipment in and connected to the well, and an itemized statement of the cost of drilling, deepening, plugging back, testing, completing, and equipping the well for production; or, at its option, the operating party, in lieu of an itemized statement of such costs of operation, may submit a detailed statement of monthly billings. Each month thereafter, during the time the Consenting Parties are being reimbursed as provided above, the party conducting the operations for the Consenting Parties shall furnish the Non-Consenting Parties with an itemized statement of all costs and liabilities incurred in the operation of the well, together with a statement of the quantity of oil and gas produced from it and the amount of proceeds realized from the sale of the well's working interest production during the preceding month. In determining the quantity of oil and gas produced during any month, Consenting Parties shall use industry accepted methods such as, but not limited to, metering or periodic well tests. Any amount realized from the sale or other disposition of equipment newly acquired in connection with any such operation which would have been owned by a Non-Consenting Party had it participated therein shall be credited against the total unreturned costs of the work done and of the equipment purchased in determining when the interest of such Non-Consenting Party shall revert to it as above provided; and if there is a credit balance, it shall be paid to such Non-Consenting Party.

*recompleting, sidetracking

- 6 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

## ARTICLE VI
### continued

If and when the Consenting Parties recover from a Non-Consenting Party's relinquished interest the amounts provided for above, the relinquished interests of such Non-Consenting Party shall automatically revert to it, and, from and after such reversion, such Non-Consenting Party shall own the same interest in such well, the material and equipment in or pertaining thereto, and the production therefrom as such Non-Consenting Party would have been entitled to had it participated in the drilling, <ins>recompleting, sidetracking</ins> / reworking, deepening or plugging back of said well. Thereafter, such Non-Consenting Party shall be charged with and shall pay its proportionate part of the further costs of the operation of said well in accordance with the terms of this agreement and the Accounting Procedure attached hereto.

Notwithstanding the provisions of this Article VI.B.2., it is agreed that without the mutual consent of all parties, no wells shall be completed in or produced from a source of supply from which a well located elsewhere on the Contract Area is producing, unless such well conforms to the then-existing well spacing pattern for such source of supply ; **provided that an exceptional well location that is approved by the State Oil and Gas Board of Alabama shall be deemed to conform to the then-existing spacing pattern.**

The provisions of this Article shall have no application whatsoever to the drilling of the initial well described in Article VI.A. except (a) as to Article VII.D.1. (Option No. 2), if selected, or (b) as to the reworking, <ins>recompleting, sidetracking</ins> / deepening and plugging back of such initial well after it has been drilled to the depth specified in Article VI.A. if it shall thereafter prove to be a dry hole or, if initially completed for pro-duction, ceases to produce in paying quantities.

3. Stand-By Time: When a well which has been drilled or deepened has reached its authorized depth and all tests have been completed, and the results thereof furnished to the parties, stand-by costs incurred pending response to a party's notice proposing a reworking, deepening, plugging back or completing operation in such a well shall be charged and borne as part of the drilling or deepen-ing operation just completed. Stand-by costs subsequent to all parties responding, or expiration of the response time permitted, whichever first occurs, and prior to agreement as to the participating interests of all Consenting Parties pursuant to the terms of the second gram-matical paragraph of Article VI.B.2., shall be charged to and borne as part of the proposed operation, but if the proposal is subsequently withdrawn because of insufficient participation, such stand-by costs shall be allocated between the Consenting Parties in the proportion each Consenting Party's interest as shown on Exhibit "A" bears to the total interest as shown on Exhibit "A" of all Consenting Par-ties.

4. Sidetracking: Except as hereinafter provided, those provisions of this agreement applicable to a "deepening" operation shall also be applicable to any proposal to directionally control and intentionally deviate a well from vertical so as to change the bottom hole location (herein call "sidetracking"), unless done to straighten the hole or to drill around junk in the hole or because of other mechanical difficulties. Any party having the right to participate in a proposed sidetracking operation that does not own an interest in the affected well bore at the time of the notice shall, upon electing to participate, tender to the well bore owners its proportionate share (equal to its interest in the sidetracking operation) of the value of that portion of the existing well bore to be utilized as follows:

(a) If the proposal is for sidetracking an existing dry hole, reimbursement shall be on the basis of the actual costs incurred in the initial drilling of the well down to the depth at which the sidetracking operation is initiated.

(b) If the proposal is for sidetracking a well which has previously produced, reimbursement shall be on the basis of the well's salvable materials and equipment down to the depth at which the sidetracking operation is initiated, determined in accordance with the provisions of Exhibit "C", less the estimated cost of salvaging and the estimated cost of plugging and abandoning.

In the event that notice for a sidetracking operation is given while the drilling rig to be utilized is on location, the response period shall be limited to forty-eight (48) hours, exclusive of Saturday, Sunday and legal holidays; provided, however, any party may request and receive up to eight (8) additional days after expiration of the forty-eight (48) hours within which to respond by paying for all stand-by time incurred during such extended response period. If more than one party elects to take such additional time to respond to the notice, stand by costs shall be allocated between the parties taking additional time to respond on a day-to-day basis in the proportion each electing par-ty's interest as shown on Exhibit "A" bears to the total interest as shown on Exhibit "A" of all the electing parties. In all other in-stances the response period to a proposal for sidetracking shall be limited to thirty (30) days.

C.   TAKING PRODUCTION IN KIND:

Each party shall / <ins>have the right to</ins> take in kind or separately dispose of its proportionate share of all oil and gas produced from the Contract Area, exclusive of production which may be used in development and producing operations and in preparing and treating oil and gas for marketing purposes and production unavoidably lost. Any extra expenditure incurred in the taking in kind or separate disposition by any

- 7 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

### ARTICLE VI
### continued

party of its proportionate share of the production shall be borne by such party. Any party taking its share of production in kind shall be required to pay for only its proportionate share of such part of Operator's surface facilities which it uses.

Each party shall execute such division orders and contracts as may be necessary for the sale of its interest in production from the Contract Area, and, except as provided in Article VII.B., shall be entitled to receive payment directly from the purchaser thereof for its share of all production.

In the event any party shall fail to make the arrangements necessary to take in kind or separately dispose of its proportionate share of the oil / produced from the Contract Area, Operator shall have the right, subject to the revocation at will by the party owning it, but not the obligation, to purchase such oil / or sell it to others at any time and from time to time, for the account of the non-taking party at the best price obtainable in the area for such production. Any such purchase or sale by Operator shall be subject always to the right of the owner of the production to exercise at any time its right to take in kind, or separately dispose of, its share of all oil / not previously delivered to a purchaser. Any purchase or sale by Operator of any other party's share of oil / shall be only for such reasonable periods of time as are consistent with the minimum needs of the industry under the particular circumstances, but in no event for a period in excess of one (1) year.

*(interlineations: "and/or gas" after "the oil"; "and/or gas" after "such oil"; "and/or gas" after "share of all oil"; "and/or gas" after "share of oil")*

In the event one or more parties' separate disposition of its share of the gas causes split-stream / deliveries to separate pipelines and/or deliveries which on a day-to-day basis for any reason are not exactly equal to a party's respective proportionate share of total gas sales to be allocated to it, the balancing or accounting between the respective accounts of the parties shall be in accordance with any gas balancing agreement between the parties hereto, whether such an agreement is attached as Exhibit "E", or is a separate agreement.

*(interlineation: "sales or" above "deliveries")*

**D. Access to Contract Area and Information:**

Each / party shall have access to the Contract Area at all reasonable times, at its sole cost and risk to inspect or observe operations, and shall have access at reasonable times to information pertaining to the development or operation thereof, including Operator's books and records relating thereto. Operator, upon request, shall furnish each of the other parties with copies of all forms or reports filed with governmental agencies, daily drilling reports, well logs, tank tables, daily gauge and run tickets and reports of stock on hand at the first of each month, and shall make available samples of any cores or cuttings taken from any well drilled on the Contract Area. The cost of gathering and furnishing information to Non-Operator, other than that specified above, shall be charged to the Non-Operator that requests the information.

*(interlineation: "consenting" above "party")*

**E. Abandonment of Wells:**

1. <u>Abandonment of Dry Holes:</u>  Except for any well drilled or deepened pursuant to Article VI.B.2., any well which has been drilled or deepened under the terms of this agreement and is proposed to be completed as a dry hole shall not be plugged and abandoned without the consent of all parties. Should Operator, after diligent effort, be unable to contact any party, or should any party fail to reply within forty-eight (48) hours (exclusive of Saturday, Sunday and legal holidays) after receipt of notice of the proposal to plug and abandon such well, such party shall be deemed to have consented to the proposed abandonment. All such wells shall be plugged and abandoned in accordance with applicable regulations and at the cost, risk and expense of the parties who participated in the cost of drilling or deepening such well. Any party who objects to plugging and abandoning such well shall have the right to take over the well and conduct further operations in search of oil and/or gas subject to the provisions of Article VI.B.

2. <u>Abandonment of Wells that have Produced:</u>  Except for any well in which a Non-Consent operation has been conducted hereunder for which the Consenting Parties have not been fully reimbursed as herein provided, any well which has been completed as a producer shall not be plugged and abandoned without the consent of all parties /. If all parties consent to such abandonment, the well shall be plugged and abandoned in accordance with applicable regulations and at the cost, risk and expense of all the parties hereto. If, within thirty (30) days after receipt of notice of the proposed abandonment of any well /, all parties do not agree to the abandonment of such well, those wishing to continue its operation from the interval(s) of the formation(s) then open to production shall tender to each of the other parties its proportionate share of the value of the well's salvable material and equipment, determined in accordance with the provisions of Exhibit "C", less the estimated cost of salvaging and the estimated cost of plugging and abandoning. Each abandoning party shall assign the non-abandoning parties, without warranty, express or implied, as to title or as to quantity, or fitness for use of the equipment and material, all of its interest in the well and related equipment, together with its interest in the leasehold estate as to, but only as to, the interval or intervals of the formation or formations then open to production. If the interest of the abandoning party is or includes an oil and gas interest, such party shall execute and deliver to the non-abandoning party or parties an oil and gas lease, limited to the interval or intervals of the formation or formations then open to production, for a term of one (1) year and so long thereafter as oil and/or gas is produced from the interval or intervals of the formation or formations covered thereby, such lease to be on the form attached as Exhibit

*(interlineations: "who have a present working interest in such well" after first "all parties"; "Failure to respond to said notice shall constitute an election to plug and abandon said well." ; "or within forty-eight (48) hours if a drilling rig is on location" after "thirty (30) days")*

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

**ARTICLE VI**
**continued**

1 ~~"B"~~ The assignments or leases so limited shall encompass the "drilling unit" upon which the well is located. The payments by, and the
2 assignments or leases to, the assignees shall be in a ratio based upon the relationship of their respective percentage of participation in the
3 Contract Area to the aggregate of the percentages of participation in the Contract Area of all assignees. There shall be no readjustment of
4 interests in the remaining portion of the Contract Area.
5
6     Thereafter, abandoning parties shall have no further responsibility, liability, or interest in the operation of or production from
7 the well in the interval or intervals then open other than the royalties retained in any lease made under the terms of this Article. Upon re-
8 quest, Operator shall continue to operate the assigned well for the account of the non-abandoning parties at the rates and charges con-
9 templated by this agreement, plus any additional cost and charges which may arise as the result of the separate ownership of the assigned
10 well. Upon proposed abandonment of the producing interval(s) assigned or leased, the assignor or lessor shall then have the option to
11 repurchase its prior interest in the well (using the same valuation formula) and participate in further operations therein subject to the pro-
12 visions hereof.
13
14     3. <u>Abandonment of Non-Consent Operations:</u> The provisions of Article VI.E.1. or VI.E.2 above shall be applicable as between
15 Consenting Parties in the event of the proposed abandonment of any well excepted from said Articles; provided, however, no well shall be
16 permanently plugged and abandoned unless and until all parties having the right to conduct further operations therein have been notified
17 of the proposed abandonment and afforded the opportunity to elect to take over the well in accordance with the provisions of this Article
18 VI.E.
19
20
21
22                       **ARTICLE VII.**
23         **EXPENDITURES AND LIABILITY OF PARTIES**
24
25 **A.**   **Liability of Parties:**
26
27     The liability of the parties shall be several, not joint or collective. Each party shall be responsible only for its obligations, and
28 shall be liable only for its proportionate share of the costs of developing and operating the Contract Area. Accordingly, the liens granted
29 among the parties in Article VII.B. are given to secure only the debts of each severally. It is not the intention of the parties to create, nor
30 shall this agreement be construed as creating, a mining or other partnership or association, or to render the parties liable as partners.
31
32 **B.**   **Liens and Payment Defaults:**
33
34     Each Non-Operator grants to Operator a lien upon its oil and gas rights in the Contract Area, and a security interest in its share
35 of oil and/or gas when extracted and its interest in all equipment, to secure payment of its share of expense, together with interest thereon
36 at the rate provided in Exhibit "C". To the extent that Operator  has a security interest under the Uniform Commercial Code of the
37 state, Operator shall be entitled to exercise the rights and remedies of a secured party under the Code. The bringing of a suit and the ob-
38 taining of judgment by Operator for the secured indebtedness shall not be deemed an election of remedies or otherwise affect the lien
39 rights or security interest as security for the payment thereof. In addition, upon default by any Non-Operator in the payment of its share
40 of expense, Operator shall have the right, without prejudice to other rights or remedies, to collect from the purchaser the proceeds from
41 the sale of such Non-Operator's share of oil and/or gas until the amount owed by such Non-Operator, plus interest, has been paid. Each
42 purchaser shall be entitled to rely upon Operator's written statement concerning the amount of any default. Operator grants a like lien
43 and security interest to the Non-Operators to secure payment of Operator's proportionate share of expense.
44
45     ~~If any party fails or is unable to pay its share of expense within sixty (60) days after rendition of a statement therefor by~~
46 ~~Operator, the non-defaulting parties, including Operator, shall, upon request by Operator, pay the unpaid amount in the proportion that~~
47 ~~the interest of each such party bears to the interest of all such parties. Each party so paying its share of the unpaid amount shall, to obtain~~
48 ~~reimbursement thereof, be subrogated to the security rights described in the foregoing paragraph.~~
49
50 **C.**   **Payments and Accounting:**
51
52     Except as herein otherwise specifically provided, Operator shall promptly pay and discharge expenses incurred in the development
53 and operation of the Contract Area pursuant to this agreement and shall charge each of the parties hereto with their respective propor-
54 tionate shares upon the expense basis provided in Exhibit "C". Operator shall keep an accurate record of the joint account hereunder,
55 showing expenses incurred and charges and credits made and received.
56
57     Operator, at its election, shall have the right from time to time to demand and receive from the other parties payment in advance
58 of their respective shares of the estimated amount of the expense to be incurred in operations hereunder during the next succeeding
59 month, which right may be exercised only by submission to each such party of an itemized statement of such estimated expense, together
60 with an invoice for its share thereof. Each such statement and invoice for the payment in advance of estimated expense shall be submitted
61 on or before the 20th day of the next preceding month. Each party shall pay to Operator its proportionate share of such estimate within
62 fifteen (15) days after such estimate and invoice is received. If any party fails to pay its share of said estimate within said time, the amount
63 due shall bear interest as provided in Exhibit "C" until paid. Proper adjustment shall be made monthly between advances and actual ex-
64 pense to the end that each party shall bear and pay its proportionate share of actual expenses incurred, and no more.
65
66 **D.**   **Limitation of Expenditures:**
67
68     1. <u>Drill or Deepen:</u> Without the consent of all parties, no well shall be drilled or deepened, except any well drilled or deepened
69 pursuant to the provisions of Article VI.B.2. of this agreement. Consent to the drilling or deepening shall include:
70

- 9 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

**ARTICLE VII**
**continued**

1  ☐  *Option No. 1:  All necessary expenditures for the drilling or deepening, testing, completing and equipping of the well, including
2  necessary tankage and/or surface facilities.

3

4  ☑  **Option No. 2:  All necessary expenditures for the drilling or deepening and testing of the well. When such well has reached its
      (including all logs)
5  authorized depth, and all tests have been completed, and the results thereof / furnished to the parties, Operator shall give immediate notice
                                                                                      twenty-four (24) hours
6  to the Non-Operators who have the right to participate in the completion costs. The parties receiving such notice shall have / forty-eight
7  (48) hours-(exclusive of Saturday, Sunday and legal holidays) in which to elect to participate in the setting of casing and the completion at-
8  tempt. Such election, when made, shall include consent to all necessary expenditures for the completing and equipping of such well, in-
9  cluding necessary tankage and/or surface facilities. Failure of any party receiving such notice to reply within the above fixed shall
10  constitute an election by that party not to participate in the cost of the completion attempt. If one or more, but less than all of the parties,
                                                                                              recompleting, sidetracking
11  elect to set pipe and to attempt a completion, the provisions of Article VI.B.2. hereof (the phrase "reworking, / deepening or plugging
12  back" as contained in Article VI.B.2. shall be deemed to include "completing") shall apply to the operations thereafter conducted by less
13  than all parties.

14

15      2. Rework or Plug Back:  Without the consent of all parties, no well shall be reworked or plugged back except a well reworked or
16  plugged back pursuant to the provisions of Article VI.B.2. of this agreement. Consent to the reworking or plugging back of a well shall
17  include all necessary expenditures in conducting such operations and completing and equipping of said well, including necessary tankage
18  and/or surface facilities.

19

20      3. Other Operations:  Without the consent of all parties, Operator shall not undertake any single project reasonably estimated
21  to require an expenditure in excess of _____Fifty Thousand and No/100————_____ Dollars ($_____50,000.00_____)
                                                                          sidetracking
22  except in connection with a well, the drilling, reworking, / deepening, completing, recompleting, or plugging back of which has been
23  previously authorized by or pursuant to this agreement; provided, however, that, in case of explosion, fire, flood or other sudden
24  emergency, whether of the same or different nature, Operator may take such steps and incur such expenses as in its opinion are required
25  to deal with the emergency to safeguard life and property but Operator, as promptly as possible, shall report the emergency to the other
26  parties. If Operator prepares an authority for expenditure (AFE) for its own use, Operator shall furnish any Non-Operator so requesting
27  an information copy thereof for any single project costing in excess of_____Ten Thousand and No/100————_____
28  Dollars ($_____10,000.00_____ ) but less than the amount first set forth above in this paragraph.

29

30  E.    Rentals, Shut-in Well Payments and Minimum Royalties:

31

32      Rentals, shut-in well payments and minimum royalties which may be required under the terms of any lease shall be paid by the
33  party or parties who subjected such lease to this agreement at its or their expense. In the event two or more parties own and have con-
34  tributed interests in the same lease to this agreement, such parties may designate one of such parties to make said payments for and on
35  behalf of all such parties. Any party may request, and shall be entitled to receive, proper evidence of all such payments. In the event of
36  failure to make proper payment of any rental, shut-in well payment or minimum royalty through mistake or oversight where such pay-
37  ment is required to continue the lease in force, any loss which results from such non-payment shall be borne in accordance with the pro-
38  visions of Article IV.B.2 3.

39

40      Operator shall notify Non-Operator of the anticipated completion of a shut-in gas well, or the shutting in or return to production
41  of a producing gas well, at least five (5) days (excluding Saturday, Sunday and legal holidays), or at the earliest opportunity permitted by
42  circumstances, prior to taking such action, but assumes no liability for failure to do so. In the event of failure by Operator to so notify
43  Non-Operator, the loss of any lease contributed hereto by Non-Operator for failure to make timely payments of any shut-in well payment
44  shall be borne jointly by the parties hereto under the provisions of Article IV.B.3.

45

46  F.    Taxes:

47

48      Beginning with the first calendar year after the effective date hereof, Operator shall render for ad valorem taxation all property
49  subject to this agreement which by law should be rendered for such taxes, and it shall pay all such taxes assessed thereon before they
50  become delinquent. Prior to the rendition date, each Non-Operator shall furnish Operator information as to burdens (to include, but not
51  be limited to, royalties, overriding royalties and production payments) on leases and oil and gas interests contributed by such Non-
52  Operator. If the assessed valuation of any leasehold estate is reduced by reason of its being subject to outstanding excess royalties, over-
53  riding royalties or production payments, the reduction in ad valorem taxes resulting therefrom shall inure to the benefit of the owner or
54  owners of such leasehold estate, and Operator shall adjust the charge to such owner or owners so as to reflect the benefit of such reduc-
55  tion. If the ad valorem taxes are based in whole or in part upon separate valuations of each party's working interest, then notwithstanding
56  anything to the contrary herein, charges to the joint account shall be made and paid by the parties hereto in accordance with the tax
57  value generated by each party's working interest. Operator shall bill the other parties for their proportionate shares of all tax payments in
58  the manner provided in Exhibit "C".

59          or Non-Operator
60      If Operator / considers any tax assessment improper, and, in the case of a Non-Operator, if any such Non-Operator timely notifies
      Operator   in   writing,   Operator   may,———   shall   at   its   discretion,   protest   within   the   time   and   manner
61  prescribed by law, and prosecute the protest to a final determination, unless all parties agree to abandon the protest prior to final deter-
62  mination. During the pendency of administrative or judicial proceedings, Operator may elect to pay, under protest, all such taxes and any
63  interest and penalty. When any such protested assessment shall have been finally determined, Operator shall pay the tax for the joint ac-
64  count, together with any interest and penalty accrued, and the total cost shall then be assessed against the parties, and be paid by them, as
65  provided in Exhibit "C".

66

67      Operator          on behalf of all parties
68      / Each party-shall pay or cause to be paid / all production, severance, excise, gathering and other taxes imposed upon or with respect
69  to the production or handling of such party's share of oil and/or gas produced under the terms of this agreement.

70

- 10 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

**ARTICLE VII**
**continued**

G. **Insurance:**

At all times while operations are conducted hereunder, Operator shall comply with the workmen's compensation law of the state where the operations are being conducted; provided, however, that Operator may be a self-insurer for liability under said compensation laws in which event the only charge that shall be made to the joint account shall be as provided in Exhibit "C". Operator shall also carry or provide insurance for the benefit of the joint account of the parties as outlined in Exhibit "D", attached to and made a part hereof. Operator shall require all contractors engaged in work on or for the Contract Area to comply with the workmen's compensation law of the state where the operations are being conducted and to maintain such other insurance as Operator may require.

In the event automobile public liability insurance is specified in said Exhibit "D", or subsequently receives the approval of the parties, no direct charge shall be made by Operator for premiums paid for such insurance for Operator's automotive equipment.

**ARTICLE VIII.**
**ACQUISITION, MAINTENANCE OR TRANSFER OF INTEREST**

A.   Surrender of Leases:

The leases covered by this agreement, insofar as they embrace acreage in the Contract Area, shall not be surrendered in whole or in part unless all parties consent thereto.

However, should any party desire to surrender its interest in any lease or in any portion thereof, and the other parties do not agree or consent thereto, the party desiring to surrender shall assign, without express or implied warranty of title, all of its interest in such lease, or portion thereof, and any well, material and equipment which may be located thereon and any rights in production thereafter secured, to the parties not consenting to such surrender. If the interest of the assigning party is or includes an oil and gas interest, the assigning party shall execute and deliver to the party or parties not consenting to such surrender an oil and gas lease covering such oil and gas interest for a term of one (1) year and so long thereafter as oil and/or gas is produced from the land covered thereby, such lease to be on the form attached hereto as Exhibit "B". Upon such assignment or lease, the assigning party shall be relieved from all obligations thereafter accruing, but not theretofore accrued, with respect to the interest assigned or leased and the operation of any well attributable thereto, and the assigning party shall have no further interest in the assigned or leased premises and its equipment and production other than the royalties retained in any lease made under the terms of this Article. The party assignee or lessee shall pay to the party assignor or lessor the reasonable salvage value of the latter's interest in any wells and equipment attributable to the assigned or leased acreage. The value of all material shall be determined in accordance with the provisions of Exhibit "C", less the estimated cost of salvaging and the estimated cost of plugging and abandoning. If the assignment or lease is in favor of more than one party, the interest shall be shared by such parties in the proportions that the interest of each bears to the total interest of all such parties.

Any assignment, lease or surrender made under this provision shall not reduce or change the assignor's, lessor's or surrendering party's interest as it was immediately before the assignment, lease or surrender in the balance of the Contract Area; and the acreage assigned, leased or surrendered, and subsequent operations thereon, shall not thereafter be subject to the terms and provisions of this agreement.

B.   Renewal or Extension of Leases:

If any party secures a renewal of any oil and gas lease subject to this agreement, all other parties shall be notified promptly, and shall have the right for a period of thirty (30) days following receipt of such notice in which to elect to participate in the ownership of the renewal lease, insofar as such lease affects lands within the Contract Area, by paying to the party who acquired it their several proper proportionate shares of the acquisition cost allocated to that part of such lease within the Contract Area, which shall be in proportion to the interests held at that time by the parties in the Contract Area.

If some, but less than all, of the parties elect to participate in the purchase of a renewal lease, it shall be owned by the parties who elect to participate therein, in a ratio based upon the relationship of their respective percentage of participation in the Contract Area to the aggregate of the percentages of participation in the Contract Area of all parties participating in the purchase of such renewal lease. Any renewal lease in which less than all parties elect to participate shall not be subject to this agreement.

Each party who participates in the purchase of a renewal lease shall be given an assignment of its proportionate interest therein by the acquiring party.

The provisions of this Article shall apply to renewal leases whether they are for the entire interest covered by the expiring lease or cover only a portion of its area or an interest therein. Any renewal lease taken before the expiration of its predecessor lease, or taken or contracted for within six (6) months after the expiration of the existing lease shall be subject to this provision; but any lease taken or contracted for more than six (6) months after the expiration of an existing lease shall not be deemed a renewal lease and shall not be subject to the provisions of this agreement.

The provisions in this Article shall also be applicable to extensions of oil and gas leases.

C.   Acreage or Cash Contributions:

While this agreement is in force, if any party contracts for a contribution of cash towards the drilling of a well or any other operation on the Contract Area, such contribution shall be paid to the party who conducted the drilling or other operation and shall be applied by it against the cost of such drilling or other operation. If the contribution be in the form of acreage, the party to whom the contribution is made shall promptly tender an assignment of the acreage, without warranty of title, to the Drilling Parties in the proportions

- 11 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

## ARTICLE VIII
### continued

~~said Drilling Parties shared the cost of drilling the well. Such acreage shall become a separate Contract Area and, to the extent possible, be governed by provisions identical to this agreement. Each party shall promptly notify all other parties of any acreage or cash contributions it may obtain in support of any well or any other operation on the Contract Area. The above provisions shall also be applicable to optional rights to earn acreage outside the Contract Area which are in support of a well drilled inside the Contract Area.~~

~~If any party contracts for any consideration relating to disposition of such party's share of substances produced hereunder, such consideration shall not be deemed a contribution as contemplated in this Article VIII.C.~~

D.   Maintenance of Uniform Interests:

For the purpose of maintaining uniformity of ownership in the oil and gas leasehold interests covered by this agreement, no party shall sell, encumber, transfer or make other disposition of its interest in the leases embraced within the Contract Area and in wells, equipment and production unless such disposition ~~covers either:~~

~~1.   the entire interest of the party in all leases and equipment and production; or~~

~~2.   an equal undivided interest in all leases and equipment and production in the Contract Area.~~

~~Every such sale, encumbrance, transfer or other disposition made by any party~~ shall be made expressly subject to this agreement and shall be made without prejudice to the right of the other parties. **Any extra expenditures incurred as a result or a partial disposition, including any additional marketing or metering expense shall be borne to the party to which such interest in is transferred.**

~~If, at any time the interest of any party is divided among and owned by four or more co-owners, Operator, at its discretion, may require such co-owners to appoint a single trustee or agent with full authority to receive notices, approve expenditures, receive billings for and approve and pay such party's share of the joint expenses, and to deal generally with, and with power to bind, the co-owners of such party's interest within the scope of the operations embraced in this agreement; however, all such co-owners shall have the right to enter into and execute all contracts or agreements for the disposition of their respective shares of the oil and gas produced from the Contract Area and they shall have the right to receive, separately, payment of the sale proceeds thereof.~~ **In the event a disposition is made to a third party who, at the time of disposition is in receivership or has filed for or has been petitioned into bankruptcy, the disposing party shall also be liable to the other parties for all amounts accrued for operations in which the disposing party chose to participate under this Agreement, attributable to the disposed interest prior to the effective date of the disposition.**

E.   Waiver of Rights to Partition:

If permitted by the laws of the state or states in which the property covered hereby is located, each party hereto owning an undivided interest in the Contract Area waives any and all rights it may have to partition and have set aside to it in severalty its undivided interest therein.

~~F.   Preferential Right to Purchase:~~

~~Should any party desire to sell all or any part of its interests under this agreement, or its rights and interests in the Contract Area, it shall promptly give written notice to the other parties, with full information concerning its proposed sale, which shall include the name and address of the prospective purchaser (who must be ready, willing and able to purchase), the purchase price, and all other terms of the offer. The other parties shall then have an optional prior right, for a period of ten (10) days after receipt of the notice, to purchase on the same terms and conditions the interest which the other party proposes to sell; and, if this optional right is exercised, the purchasing parties shall share the purchased interest in the proportions that the interest of each bears to the total interest of all purchasing parties. However, there shall be no preferential right to purchase in those cases where any party wishes to mortgage its interests, or to dispose of its interests by merger, reorganization, consolidation, or sale of all or substantially all of its assets to a subsidiary or parent company or to a subsidiary of a parent company, or to any company in which any one party owns a majority of the stock.~~

## ARTICLE IX.
### INTERNAL REVENUE CODE ELECTION

This agreement is not intended to create, and shall not be construed to create, a relationship of partnership or an association for profit between or among the parties hereto. Notwithstanding any provision herein that the rights and liabilities hereunder are several and not joint or collective, or that this agreement and operations hereunder shall not constitute a partnership, if, for federal income tax purposes, this agreement and the operations hereunder are regarded as a partnership, each party hereby affected elects to be excluded from the application of all of the provisions of Subchapter "K", Chapter 1, Subtitle "A", of the Internal Revenue Code of 1954, as permitted and authorized by Section 761 of the Code and the regulations promulgated thereunder. Operator is authorized and directed to execute on behalf of each party hereby affected such evidence of this election as may be required by the Secretary of the Treasury of the United States or the Federal Internal Revenue Service, including specifically, but not by way of limitation, all of the returns, statements, and the data required by Federal Regulations 1.761. Should there be any requirement that each party hereby affected give further evidence of this election, each such party shall execute such documents and furnish such other evidence as may be required by the Federal Internal Revenue Service or as may be necessary to evidence this election. No such party shall give any notices or take any other action inconsistent with the election made hereby. If any present or future income tax laws of the state or states in which the Contract Area is located or any future income tax laws of the United States contain provisions similar to those in Subchapter "K", Chapter 1, Subtitle "A", of the Internal Revenue Code of 1954, under which an election similar to that provided by Section 761 of the Code is permitted, each party hereby affected shall make such election as may be permitted or required by such laws. In making the foregoing election, each such party states that the income derived by such party from operations hereunder can be adequately determined without the computation of partnership taxable income.

- 12 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

### ARTICLE X.
### CLAIMS AND LAWSUITS

Operator may settle any single uninsured third party damage claim or suit arising from operations hereunder if the expenditure does not exceed   **Ten Thousand and No/100** ——————————————————————————————————————————————————————— Dollars ($_____**10,000.00**_____ ) and if the payment is in complete settlement of such claim or suit. If the amount required for settlement exceeds the above amount, the parties hereto shall assume and take over the further handling of the claim or suit, unless such authority is delegated to Operator. All costs and expenses of handling, settling, or otherwise discharging such claim or suit shall be at the joint expense of the parties participating in the operation from which the claim or suit arises. If a claim is made against any party or if any party is sued on account of any matter arising from operations hereunder over which such individual has no control because of the rights given Operator by this agreement, such party shall immediately notify all other parties, and the claim or suit shall be treated as any other claim or suit involving operations hereunder.

### ARTICLE XI.
### FORCE MAJEURE

If any party is rendered unable, wholly or in part, by force majeure to carry out its obligations under this agreement, other than the obligation to make money payments, that party shall give to all other parties prompt written notice of the force majeure with reasonably full particulars concerning it; thereupon, the obligations of the party giving the notice, so far as they are affected by the force majeure, shall be suspending during, but no longer than, the continuance of the force majeure. The affected party shall use all reasonable diligence to remove the force majeure situation as quickly as practicable.

The requirement that any force majeure shall be remedied with all reasonable dispatch shall not require the settlement of strikes, lockouts, or other labor difficulty by the party involved, contrary to its wishes; how all such difficulties shall be handled shall be entirely within the discretion of the party concerned.

The term "force majeure", as here employed, shall mean an act of God, strike, lockout, or other industrial disturbance, act of the public enemy, war, blockade, public riot, lightning, fire, storm, flood, explosion, governmental action, governmental delay, restraint or inaction, unavailability of equipment, and any other cause, whether of the kind specifically enumerated above or otherwise, which is not reasonably within the control of the party claiming suspension.

### ARTICLE XII.
### NOTICES

All notices authorized or required between the parties and required by any of the provisions of this agreement, unless otherwise specifically provided, shall be given in writing by mail or telegram, postage or charges prepaid, or by telex ^(or fax or e-mail) / or telecopier and addressed to the parties to whom the notice is given at the addresses listed on Exhibit "A". The originating notice given under any provision hereof shall be deemed given only when received by the party to whom such notice is directed, and the time for such party to give any notice in response thereto shall run from the date the originating notice is received. The second or any responsive notice shall be deemed given when deposited in the mail or with the telegraph company, with postage or charges prepaid, or sent by telex ^(or fax or e-mail) / or telecopier. Each party shall have the right to change its address at any time, and from time to time, by giving written notice thereof to all other parties.

### ARTICLE XIII.
### TERM OF AGREEMENT

This agreement shall remain in full force and effect as to the oil and gas leases and/or oil and gas interests subject hereto for the period of time selected below; provided, however, no party hereto shall ever be construed as having any right, title or interest in or to any lease or oil and gas interest contributed by any other party beyond the term of this agreement.

☐   Option No. 1:  ~~So long as any of the oil and gas leases subject to this agreement remain or are continued in force as to any part of the Contract Area, whether by production, extension, renewal, or otherwise.~~

☑   Option No. 2:  In the event the well described in Article VI.A., or any subsequent well drilled under any provision of this agreement, results in production of oil and/or gas in paying quantities, this agreement shall continue in force so long as any such well or wells produce, or are capable of production, and for an additional period of _____**180**_____ days from cessation of all production; provided, however, if, prior to the expiration of such additional period, one or more of the parties hereto are engaged in drilling, reworking, deepening, plugging back, testing or attempting to complete a well or wells hereunder, this agreement shall continue in force until such operations have been completed and if production results therefrom, this agreement shall continue in force as provided herein. In the event the well described in Article VI.A., or any subsequent well drilled hereunder, results in a dry hole, and no other well is producing, or capable of producing oil and/or gas from the Contract Area, this agreement shall terminate unless drilling, deepening, plugging back or reworking operations are commenced within _____**180**_____ days from the date of abandonment of said well.

It is agreed, however, that the termination of this agreement shall not relieve any party hereto from any liability which has accrued or attached prior to the date of such termination.

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

# ARTICLE XIV.
## COMPLIANCE WITH LAWS AND REGULATIONS

### A. Laws, Regulations and Orders:

This agreement shall be subject to the conservation laws of the state in which the Contract Area is located, to the valid rules, regulations, and orders of any duly constituted regulatory body of said state; and to all other applicable federal, state, and local laws, ordinances, rules, regulations, and orders.

### B. Governing Law:

This agreement and all matters pertaining hereto, including, but not limited to, matters of performance, non-performance, breach, remedies, procedures, rights, duties, and interpretation or construction, shall be governed and determined by the law of the state in which the Contract Area is located. If the Contract Area is in two or more states, the law of the state of _____**Alabama**_____ shall govern.

### C. Regulatory Agencies:

Nothing herein contained shall grant, or be construed to grant, Operator the right or authority to waive or release any rights, privileges, or obligations which Non-Operators may have under federal or state laws or under rules, regulations or orders promulgated under such laws in reference to oil, gas and mineral operations, including the location, operation, or production of wells, on tracts offsetting or adjacent to the Contract Area.

With respect to operations hereunder, Non-Operators agree to release Operator from any and all losses, damages, injuries, claims and causes of action arising out of, incident to or resulting directly or indirectly from Operator's interpretation or application of rules, rulings, regulations or orders of the Department of Energy or predecessor or successor agencies to the extent such interpretation or application was made in good faith. Each Non-Operator further agrees to reimburse Operator for any amounts applicable to such Non-Operator's share of production that Operator may be required to refund, rebate or pay as a result of such an incorrect interpretation or application, together with interest and penalties thereon owing by Operator as a result of such incorrect interpretation or application.

Non-Operators authorize Operator to prepare and submit such documents as may be required to be submitted to the purchaser of any crude oil sold hereunder or to any other person or entity pursuant to the requirements of the "Crude Oil Windfall Profit Tax Act of 1980", as same may be amended from time to time ("Act"), and any valid regulations or rules which may be issued by the Treasury Department from time to time pursuant to said Act. Each party hereto agrees to furnish any and all certifications or other information which is required to be furnished by said Act in a timely manner and in sufficient detail to permit compliance with said Act.

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

# ARTICLE XV.
## OTHER PROVISIONS

### A. PRECEDENCE OF OPERATIONS

Where a well that has been authorized under the terms of this Agreement by all parties, has been drilled to the proposed depth or the objective formation, or a depth at which further drilling is impractical, whichever is the lesser, and the consenting parties participating in the well cannot agree upon the sequence and timing of further operations regarding such well, the following elections shall control in the order enumerated below:

(1) an election to perform additional logging, coring or testing;
(2) an election to attempt to complete the well at the deepest drilled depth proposed for completion by any Party;

(3) an election to plug back and attempt to complete the well in a shallower depth or formation;
(4) an election to deepen the well to a new objective formation;
(5) an election to sidetrack the well;
(6) an election to rework the well by generally accepted stimulation techniques whether or not the well had previously produced in commercial quantities or is capable of commercial production;

(7) an election to plug and abandon the well.

It is provided, however, that if at any time said consenting parties are considering the above election, the wellbore is in such a condition that, in the opinion of a majority in interest (not in number) of the consenting parties, a reasonably prudent operator would not conduct the operations contemplated by the particular election involved for fear of placing the hole in jeopardy or losing the same prior to completing the well in the objective depth or objective formation, such election shall not be given the priority herein above set forth. In such event, the operation, which, in the opinion of said majority in interest is less likely to jeopardize the well, will be given priority. Should the consenting parties be equally divided in their opinion, then the opinion of the Operator shall prevail. It is further understood that if some, but not all parties, elect to participate in the additional logging, coring, or testing, they may do so at their expense and risk, but should the party or parties not participate in such additional logging, coring, or testing, later elect to participate in a proposed operation based on the information obtained from the additional logging, coring, or testing, then the party or parties so electing shall be required to pay their proportionate share of the cost of said logging, coring, or testing, and shall be entitled to the logs, cores or the results of the tests. For the purpose of this paragraph the proposed depth shall be the depth as set forth in the AFE or in the proposal for the proposed operation, and the objective formation shall be the formation as set forth in the AFE or in the proposal for the proposed operation.

### B. HOLIDAYS

The word "holidays" when used herein is defined as a legal holiday observed by the United States government and its agencies.

### C. DISPUTES AS TO PROPOSED DEPTHS

If during the drilling of any well drilled hereunder, a bona fide dispute shall exist as to whether the proposed depth has been reached in such well (as for example, whether a well has been drilled to a depth sufficient to test a particular sand or formation or if the well has reached the stratigraphic equivalent of a particular depth), the opinion of a majority of ownership of the total possessory, cost-bearing interest (and not in number) of the owners as shown by Exhibit "A" shall control and be binding upon all parties. If the parties are equally divided, the opinion of the Operator will prevail.

### D. INDEMNITY

Each Non-Operator shall defend, indemnify and hold Operator harmless against any and all liability in excess of insurance coverage carried for the joint account for injury to each such Non-Operator's officers, employees and/or agents, resulting from or in any way relating to such officers, employees, and/or agents presence on a drilling rig on the Contract Area or from such person traveling by air or water between any point and such drilling rig, including, without limitation, claims arising out of THE FAULT, LIABILITY, NEGLIGENCE OR GROSS NEGLIGENCE OF OPERATOR. Such indemnity to Operator shall also apply to any other person whose presence on the rig or transportation to or from such rig is at the request of the indemnifying Non-Operator.

### E. SEVERABILITY

If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any rule of law or public policy, all other conditions and provisions of this agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any party. Upon any binding determination that any term or other provision is invalid, illegal or incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in an acceptable and legally enforceable manner.

### F. NO WAIVERS

No failure or delay by any party in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or exercise of any other right, power or privilege. The rights and remedies herein provided shall be cumulative and not exclusive of any rights or remedies provided by law.

### G. INTERESTS OF THE PARTIES & TITLES

Subject to the provisions of Article XV.H below, the provisions set forth in this Article XV.G shall apply and govern in lieu of the provisions of Article III.B, C and D and Article IV, to the extent the provisions of this Article XV.G are inconsistent with those provisions. The Sklar Parties own Oil, Gas and Mineral Lease Nos. 1-19(hereinafter the "Sklar Leases") described in Exhibit "A-1" to this Operating Agreement. The Sklar Parties alone shall bear, in proportion to their interest in the Sklar Leases set forth in Exhibit "A" to this Operating Agreement, all burdens, losses and costs attributable to those leases, including, without limitation, the following: (i) all royalties, overriding royalties, production payments or other burdens on production to which the Sklar Leases are subject; (ii) all losses associated with the Sklar Leases, through failure of title or otherwise; and (iii) such costs attributable to the working interest in the Sklar Leases as those leases' share of the costs to drill the Initial Well. The Pruet Parties own Oil, Gas And Mineral Lease No. 20 and 21 (hereinafter the "Pruet Leases") described

in Exhibit "A-1" to this Operating Agreement. The Pruet Parties alone shall bear, in proportion to their interest in the Pruet Leases set forth in Exhibit "A" to this Operating Agreement, all burdens, losses and costs attributable to those leases, including, without limitation, the following: (i) all royalties, overriding royalties, production payments or other burdens on production to which the Pruet Leases are subject; (ii) all losses associated with the Pruet Leases, through failure of title or otherwise; and (iii) such costs attributable to the working interest in the Pruet Leases as those leases' share of the costs to drill the Initial Well.

The Sklar Parties and the Pruet Parties agree to share costs within the Contract Area in the proportion that the interest of each bears to the total interest of all of them as determined by title examination to the drilling unit for the Initial Well more particularly described as the Northwest Quarter of Section 29, Township 4 North, Range 13 East, Conecuh County, Alabama. Operator may rely upon said title examination for the purpose of invoicing costs between each of the Sklar Parties and each of the Pruet Parties. Costs attributable to any non-participating oil and gas lease shall be carried by each of the Sklar Parties and the Pruet Parties, in the same proportion. The voting interest or interest to make other decisions required or permitted by the Non-Operators hereunder shall be allocated between each of the Sklar Parties and each of the Pruet Parties, in the same manner. Notwithstanding any provisions of this paragraph or any other provisions of this Operating Agreement to the contrary, if Operator invoices the Pruet Parties and the Sklar Parties for costs associated with the Initial Well based upon title examination of the drilling unit for that well as of a date prior to the commencement of operations for the drilling of that well, and if any of the oil and gas leases described in Exhibit "A-1" terminate prior to the commencement of operations for the drilling of the Initial Well, then, in that event, Operator shall cause its title examination to the drilling unit to be updated and shall invoice the Pruet Parties and the Sklar Parties all costs associated with the Initial Well based upon the updated title examination and shall credit any amounts previously invoiced and refund any amounts previously over paid by any Non-Operators based upon the prior title examination. Nothing herein shall prevent any Non-Operator from contesting the accuracy or validity of any title opinion if it believes in good faith that the title opinion in inaccurate or invalid.

Notwithstanding anything herein to the contrary, the Sklar Parties or Operator on their behalf may perform curative work or otherwise protect the Sklar Leases against title loss, and bear no obligation to offer extensions, amendments, renewals, ratifications or other curative instruments relating to the Sklar Leases or lands covered by that lease to the Pruet Parties. The Pruet Parties or Pruet Production on their behalf may perform curative work or otherwise protect the Pruet Leases against title loss, and bear no obligation to offer extensions, amendments, renewals, ratifications or other curative instruments relating to the Pruet Leases or lands covered by those leases to the Sklar Parties.

The Sklar Parties shall be entitled to, in proportion to their interest in the Sklar Leases set forth in Exhibit "A" and subject to all burdens, the share of the proceeds from the sale of oil and gas produced from the Initial Well or Subsequent Wells drilled and completed hereunder attributable to the Sklar Leases. The Pruet Parties shall be entitled to, in proportion to their interest in the Pruet Leases set forth in Exhibit "A" and subject to all burdens, the share of the proceeds from the sale of oil and gas produced from the Initial Well or Subsequent Wells drilled and completed hereunder attributable to the Pruet Leases. The Sklar Parties and the Pruet Parties agree to share the proceeds from the sale of oil and gas produced from the Initial Well or Subsequent Wells drilled and completed hereunder in the proportion that the interest of each bears to the total interest of all as determined by title examination to the producing unit for such well. Operator may rely upon said title examination for the purpose of disbursing proceeds between each of the Sklar Parties and each of the Pruet Parties.

Pruet Production subscribes to and is a party to this Operating Agreement as agent and nominee for and on behalf of the Pruet Parties. Operator may invoice Pruet Production, as agent and nominee for the Pruet Parties, all costs attributable to the Pruet Leases and owed by the Pruet Parties. Operator may also disburse to Pruet Production, as agent and nominee for the Pruet Parties, all proceeds from the sale of oil and gas produced from wells located within the Contract Area attributable to the Pruet Leases, including proceeds attributable to royalties, overriding royalties and working interest under such leases. Any notice delivered to Pruet Production under this Operating Agreement shall be deemed to be delivered to the Pruet Parties as well. Pruet Production also agrees to act as agent and nominee with respect to non-consent interest as set forth in Article XV.I of this Operating Agreement.

## H. PRIOR AGREEMENTS

The Sklar Parties are also parties to another operating agreement (the "Sklar JOA") by and between Sklar Exploration Company L.L.C., as Operator, and the Sklar Parties, as Non-Operators, covering lands that include, among other lands, the Contract Area of this Operating Agreement. Likewise, the Pruet Parties are also parties to another operating agreement (the "Pruet JOA") by and between Pruet Production, as Operator, and the Pruet Parties, as Non-Operators covering lands that include, among other lands, the Contract Area of this Operating Agreement. The Sklar Parties do not bear any obligations under the Pruet JOA, and the Pruet Parties do not bear any obligations under the Sklar JOA. If there is a conflict between this Operating Agreement and a prior operating agreement, then, as between the parties to the prior operating agreement, the prior operating agreement shall govern and prevail. However, if there is such a conflict, then, in that event, and insofar and only insofar as the Contract Area under this Operating Agreement is concerned, this Operating Agreement, as between the Sklar Parties and the Pruet Parties, shall govern and prevail.

## I. NON-CONSENT

All of the Sklar Parties and all of the Pruet Parties have consented to participate in the drilling of the Initial Well pursuant to Article VI.A of this Operating Agreement. Elections to participate in any subsequent operations under Article VI.B of this Operating Agreement shall be made by Pruet Production on behalf of all of the interest of the Pruet Parties, and by Operator on behalf of all of the interest of the Sklar Parties. If one or more of the Sklar Parties elects not to participate in a subsequent operation, the non-consent interest shall be assumed by the remaining Sklar Parties pursuant to the terms of the Sklar JOA, whereas if one or more of the Pruet Parties elects not to participate in a subsequent operation, the non-consent interest shall be assumed by the remaining Pruet Parties pursuant to the terms of the Pruet JOA. The provisions of Article VI.B.2 of this Operating Agreement shall only apply to elections to which either Pruet Production non-consents on behalf of all of the Pruet Parties or Operator non-consents on behalf of all of the Sklar Parties.

## J. EXECUTION

This agreement shall be binding upon each party that executes this agreement without regard to whether this same instrument, or any copy or counterpart hereof shall be executed by any other parties.

## K. HEADINGS FOR CONVENIENCE

The headings used in this agreement are inserted for convenience only and shall not be regarded in construing or interpreting this Agreement.

## L. RELATIONSHIP OF THE PARTIES

In their relations with each other under this agreement, the parties shall not be considered fiduciaries or to have established a confidential relationship but rather shall be free to act on an arm's length basis in accordance with their own self interest.

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

ARTICLE XVI.
MISCELLANEOUS

This agreement shall be binding upon and shall inure to the benefit of the parties hereto and to their respective heirs, devisees, legal representatives, successors and assigns.

This instrument may be executed in any number of counterparts, each of which shall be considered an original for all purposes.

IN WITNESS WHEREOF, this agreement shall be effective as of _____ 7th _ day of **December** _____ , (year) __ **2011** __.

~~_____, who has prepared and circulated this form for execution, represents and warrants that the form was printed from and with the exception listed below, is identical to the AAPL Form 610-1982 Model Form Operating Agreement, as published in diskette form by Forms-On-A-Disk, Inc. No changes, alterations, or modifications, other than those in Articles_____, have been made to the form.~~

O P E R A T O R

SKLAR EXPLORATION COMPANY L.L.C.

_____

DAVID A. BARLOW,
President-Chief Operating Officer

N O N - O P E R A T O R S

SKLARCO L.L.C.

_____

DAVID A. BARLOW,
President-Chief Operating Officer

McCOMBS ENERGY, LTD.

_____

RICKY HAIKIN, Vice President

TAUBER EXPLORATION & PRODUCTIN COMPANY

_____

RICHARD TAUBER, President

PICKENS FINANCIAL GROUP, LLC

_____

MICHAEL K. PICKENS, Vice President

JJS WORKING INTERESTS LLC
By:Houston Bulldog Capital Management, LLC, its Manager

_____

JUSTIN SIMONS, Manager of Houston Bulldog Capital
Management, LLC

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

### ARTICLE XVI.
### MISCELLANEOUS

This agreement shall be binding upon and shall inure to the benefit of the parties hereto and to their respective heirs, devisees, legal representatives, successors and assigns.

This instrument may be executed in any number of counterparts, each of which shall be considered an original for all purposes.

IN WITNESS WHEREOF, this agreement shall be effective as of _____ 7th ___ day of __December_____ , (year) __2011__ .

~~_____, who has prepared and circulated this form for execution, represents and warrants that the form was printed from and with the exception listed below, is identical to the AAPL Form 610 1982 Model Form Operating Agreement, as published in diskette form by Forms On A Disk, Inc. No changes, alterations, or modifications, other than those in Articles _____, have been made to the form.~~

OPERATOR

SKLAR EXPLORATION COMPANY L.L.C.

_____
DAVID A. BARLOW,
President-Chief Operating Officer

NON-OPERATORS

SKLARCO L.L.C.

_____
DAVID A. BARLOW,
President-Chief Operating Officer

McCOMBS ENERGY, LTD.

_____
RICKY HAIKIN, Vice President

TAUBER EXPLORATION & PRODUCTIN COMPANY

_____
RICHARD TAUBER, President

PICKENS FINANCIAL GROUP, LLC

_____
MICHAEL K. PICKENS, Vice President

JJS WORKING INTERESTS LLC
By:Houston Bulldog Capital Management, LLC, its Manager

_____
JUSTIN SIMONS, Manager of Houston Bulldog Capital
Management, LLC.

- 15 - Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

## ARTICLE XVI.
### MISCELLANEOUS

This agreement shall be binding upon and shall inure to the benefit of the parties hereto and to their respective heirs, devisees, legal representatives, successors and assigns.

This instrument may be executed in any number of counterparts, each of which shall be considered an original for all purposes.

IN WITNESS WHEREOF, this agreement shall be effective as of _____ 7th_ day of December_____ , (year) _2011_ .

~~_____, who has prepared and circulated this form for execution, represents and warrants that the form was printed from and with the exception listed below, is identical to the AAPL Form 610-1982 Model Form Operating Agreement, as published in diskette form by Forms-On-A-Disk, Inc. No changes, alterations, or modifications, other than those in Articles _____, have been made to the form.~~

OPERATOR

SKLAR EXPLORATION COMPANY L.L.C.

_____
DAVID A. BARLOW,
President-Chief Operating Officer

NON-OPERATORS

SKLARCO L.L.C.

_____
DAVID A. BARLOW,
President-Chief Operating Officer

McCOMBS ENERGY, LTD.

_____
RICKY HAIKIN, Vice President

TAUBER EXPLORATION & PRODUCTIN COMPANY

_____
RICHARD TAUBER, President

PICKENS FINANCIAL GROUP, LLC

_____
MICHAEL K. PICKENS, Vice President

JJS WORKING INTERESTS LLC
By:Houston Bulldog Capital Management, LLC, its Manager

_____
JUSTIN SIMONS, Manager of Houston Bulldog Capital
Management, LLC

- 15 -Boothe Casey 29-6 #1

A.A.P.L. FORM 610 – MODEL FORM OPERATING AGREEMENT - 1982

### ARTICLE XVI.
### MISCELLANEOUS

This agreement shall be binding upon and shall inure to the benefit of the parties hereto and to their respective heirs, devisees, legal representatives, successors and assigns.

This instrument may be executed in any number of counterparts, each of which shall be considered an original for all purposes.

IN WITNESS WHEREOF, this agreement shall be effective as of _____ 7th _ day of _December_____ , (year) __2011__.

~~, who has prepared and circulated this form for execution, represents and warrants that the form was printed from and with the exception listed below, is identical to the AAPL Form 610-1982 Model Form Operating Agreement, as published in diskette form by Forms On-A-Disk, Inc. No changes, alterations, or modifications, other than those in Articles _____ , have been made to the form.~~

OPERATOR

SKLAR EXPLORATION COMPANY L.L.C.

_____
DAVID A. BARLOW,
President-Chief Operating Officer

NON-OPERATORS

SKLARCO L.L.C.

_____
DAVID A. BARLOW,
President-Chief Operating Officer

McCOMBS ENERGY, LTD.

_____
RICKY HAIKIN, Vice President

TAUBER EXPLORATION & PRODUCTIN COMPANY

_____
RICHARD TAUBER, President

PICKENS FINANCIAL GROUP, LLC

_____
MICHAEL K. PICKENS, Vice President

JJS WORKING INTERESTS LLC
By:Houston Bulldog Capital Management, LLC, its Manager

_____
JUSTIN SIMONS, Manager of Houston Bulldog Capital
Management, LLC

- 15 -Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

### ARTICLE XVI.
### MISCELLANEOUS

This agreement shall be binding upon and shall inure to the benefit of the parties hereto and to their respective heirs, devisees, legal representatives, successors and assigns.

This instrument may be executed in any number of counterparts, each of which shall be considered an original for all purposes.

IN WITNESS WHEREOF, this agreement shall be effective as of _____ 7th_ day of December_____ , (year) _2011_ .

~~_____, who has prepared and circulated this form for execution, represents and warrants that the form was printed from and with the exception listed below, is identical to the AAPL Form 610 1982 Model Form Operating Agreement, as published in diskette form by Forms On A Disk, Inc. No changes, alterations, or modifications, other than those in Articles_____, have been made to the form.~~

O P E R A T O R

SKLAR EXPLORATION COMPANY L.L.C.

DAVID A. BARLOW,
President-Chief Operating Officer

N O N - O P E R A T O R S

SKLARCO L.L.C.

DAVID A. BARLOW,
President-Chief Operating Officer

McCOMBS ENERGY, LTD.

RICKY HAIKIN, Vice President

TAUBER EXPLORATION & PRODUCTIN COMPANY

RICHARD TAUBER, President

PICKENS FINANCIAL GROUP, LLC

MICHAEL K. PICKENS, Vice President

JJS WORKING INTERESTS LLC
By:Houston Bulldog Capital Management, LLC, its Manager

JUSTIN SIMONS, Manager of Houston Bulldog Capital
Management, LLC

- 15 -Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

RESOURCE VENTURES, LLC

Mark Whold, General Manager

BUNDERO INVESTMENT COMPANY, L.L.C.

ROBERT P. BOWMAN, Manager

CRAFT EXPLORATION COMPANY L.L.C.

STEVEN H. CRAFT, Managing Member

DICKSON OIL & GAS, LLC

C. BICKHAM DICKSON, III, Member

FANT ENERGY LIMITED
By: Richard E. Fant, LLC, the General Partner of Fant
Energy Limited

RICHARD FANT, Manager of Richard E. Fant, LLC, the
General Partner of Fant Energy Limited

FLEET HOWELL

KUDZU OIL PROPERTIES, LLC

R. NASH NEYLAND, Executive V.P.

LANDMARK EXPLORATION, LLC

LARRY JOHNSON, Managing Member

MARKSCO, L.L.C.

MARK P. SEALY, Member

TIEMBO LTD.
By:Simba Investors L.L.C., General Partner of Tiembo Ltd.

MARK RAUCH, Member of Simba Investors L.L.C.
The General Partner of Tiembo, Ltd.

- 15 -Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

RESOURCE VENTURES, LLC

_____        _____
                                                 Mark Arnold, General Manager


_____

_J. Philip Stephens_____        BUNDERO INVESTMENT COMPANY, L.L.C.

_Lisa E. Allen_____        _____
                                                 ROBERT P. BOWMAN, Manager


                                                 CRAFT EXPLORATION COMPANY L.L.C.

_____        _____
                                                 STEVEN H. CRAFT, Managing Member

_____

                                                 DICKSON OIL & GAS, LLC

_____        _____
                                                 C. BICKHAM DICKSON, III, Member

_____

                                                 FANT ENERGY LIMITED
                                                 By: Richard E. Fant, LLC, the General Partner of Fant
                                                 Energy Limited

_____        _____
                                                 RICHARD FANT, Manager of Richard E. Fant, LLC, the
                                                 General Partner of Fant Energy Limited

_____



_____        FLEET HOWELL

_____



_____        KUDZU OIL PROPERTIES, LLC

_____        _____
                                                 R. NASH NEYLAND, Executive V.P.
_____

                                                 LANDMARK EXPLORATION, LLC

_____        _____
                                                 LARRY JOHNSON, Managing Member

_____

                                                 MARKSCO, L.L.C.

_____        _____
                                                 MARK P. SEALY, Member

_____

                                                 TIEMBO LTD.
                                                 By:Simba Investors L.L.C., General Partner of Tiembo Ltd.

_____        _____
                                                 MARK RAUCH, Member of Simba Investors L.L.C.
                                                 The General Partner of Tiembo, Ltd.

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

RESOURCE VENTURES, LLC

_____
Mark Arnold, General Manager

BUNDERO INVESTMENT COMPANY, L.L.C.

_____
ROBERT P. BOWMAN, Manager

CRAFT EXPLORATION COMPANY L.L.C.

_____
STEVEN H. CRAFT, Managing Member

DICKSON OIL & GAS, LLC

_____
C. BICKHAM DICKSON, III, Member

FANT ENERGY LIMITED
By: Richard E. Fant, LLC, the General Partner of Fant
Energy Limited

_____
RICHARD FANT, Manager of Richard E. Fant, LLC, the
General Partner of Fant Energy Limited

_____
FLEET HOWELL

KUDZU OIL PROPERTIES, LLC

_____
R. NASH NEYLAND, Executive V.P.

LANDMARK EXPLORATION, LLC

_____
LARRY JOHNSON, Managing Member

MARKSCO, L.L.C.

_____
MARK P. SEALY, Member

TIEMBO LTD.
By:Simba Investors L.L.C., General Partner of Tiembo Ltd.

_____
MARK RAUCH, Member of Simba Investors L.L.C.
The General Partner of Tiembo, Ltd.

- 15 -Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

RESOURCE VENTURES, LLC

_____

Mark Arnold, General Manager


BUNDERO INVESTMENT COMPANY, L.L.C.

_____

ROBERT P. BOWMAN, Manager


CRAFT EXPLORATION COMPANY L.L.C.

_____

STEVEN H. CRAFT, Managing Member


DICKSON OIL & GAS, LLC

_____

C. BICKHAM DICKSON, III, Member


FANT ENERGY LIMITED
By: Richard E. Fant, LLC, the General Partner of Fant
Energy Limited

_____

RICHARD FANT, Manager of Richard E. Fant, LLC, the
General Partner of Fant Energy Limited


_____
FLEET HOWELL


KUDZU OIL PROPERTIES, LLC

_____

R. NASH NEYLAND, Executive V.P.


LANDMARK EXPLORATION, LLC

_____

LARRY JOHNSON, Managing Member


MARKSCO, L.L.C.

_____

MARK P. SEALY, Member


TIEMBO LTD.
By:Simba Investors L.L.C., General Partner of Tiembo Ltd.

_____

MARK RAUCH, Member of Simba Investors L.L.C.
The General Partner of Tiembo, Ltd.

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

RESOURCE VENTURES, LLC

Mark Arnold, General Manager

BUNDERO INVESTMENT COMPANY, L.L.C.

ROBERT P. BOWMAN, Manager

CRAFT EXPLORATION COMPANY L.L.C.

STEVEN H. CRAFT, Managing Member

DICKSON OIL & GAS, LLC

C. BICKHAM DICKSON, III, Member

FANT ENERGY LIMITED
By: Richard E. Fant, LLC, the General Partner of Fant Energy Limited

RICHARD FANT, Manager of Richard E. Fant, LLC, the General Partner of Fant Energy Limited

FLEET HOWELL

KUDZU OIL PROPERTIES, LLC

R. NASH NEYLAND, Executive V.P.

LANDMARK EXPLORATION, LLC

LARRY JOHNSON, Managing Member

MARKSCO, L.L.C.

MARK P. SEALY, Member

TIEMBO LTD.
By:Simba Investors L.L.C., General Partner of Tiembo Ltd.

MARK RAUCH, Member of Simba Investors L.L.C. The General Partner of Tiembo, Ltd.

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

RESOURCE VENTURES, LLC

_____     _____
                                    Mark Arnold, General Manager


BUNDERO INVESTMENT COMPANY, L.L.C.

_____     _____
                                    ROBERT P. BOWMAN, Manager


CRAFT EXPLORATION COMPANY L.L.C.

_____     _____
                                    STEVEN H. CRAFT, Managing Member


DICKSON OIL & GAS, LLC

_____     _____
                                    C. BICKHAM DICKSON, III, Member


FANT ENERGY LIMITED
By: Richard E. Fant, LLC, the General Partner of Fant
Energy Limited

_____     _____
                                    RICHARD FANT, Manager of Richard E. Fant, LLC, the
                                    General Partner of Fant Energy Limited


_____     _____
                                    FLEET HOWELL


KUDZU OIL PROPERTIES, LLC

_____     _____
                                    R. NASH NEYLAND, Executive V.P.


LANDMARK EXPLORATION, LLC

_____     _____
                                    LARRY JOHNSON, Managing Member


MARKSCO, L.L.C.

_____     _____
                                    MARK P. SEALY, Member


TIEMBO LTD.
By:Simba Investors L.L.C., General Partner of Tiembo Ltd.

_____     _____
                                    MARK RAUCH, Member of Simba Investors L.L.C.
                                    The General Partner of Tiembo, Ltd.


- 15 -Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

RESOURCE VENTURES, LLC

_____     _____
Mark Arnold, General Manager


BUNDERO INVESTMENT COMPANY, L.L.C.

_____     _____
ROBERT P. BOWMAN, Manager


CRAFT EXPLORATION COMPANY L.L.C.

_____     _____
STEVEN H. CRAFT, Managing Member


DICKSON OIL & GAS, LLC

_____     _____
C. BICKHAM DICKSON, III, Member


FANT ENERGY LIMITED
By: Richard E. Fant, LLC, the General Partner of Fant
Energy Limited

_____     _____
RICHARD FANT, Manager of Richard E. Fant, LLC, the
General Partner of Fant Energy Limited


_____     _____
FLEET HOWELL


KUDZU OIL PROPERTIES, LLC

_____     _____
R. NASHINEYLAND, Executive V.P.


LANDMARK EXPLORATION, LLC

_____     _____
LARRY JOHNSON, Managing Member


MARKSCO, L.L.C.

_____     _____
MARK P. SEALY, Member


TIEMBO LTD.
By:Simba Investors L.L.C., General Partner of Tiembo Ltd.

_____     _____
MARK RAUCH, Member of Simba Investors L.L.C.
The General Partner of Tiembo, Ltd.

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

RESOURCE VENTURES, LLC

_____     _____
                                    Mark Arnold, General Manager


BUNDERO INVESTMENT COMPANY, L.L.C.

_____     _____
                                    ROBERT P. BOWMAN, Manager


CRAFT EXPLORATION COMPANY L.L.C.

_____     _____
                                    STEVEN H. CRAFT, Managing Member

_____


DICKSON OIL & GAS, LLC

_____     _____
                                    C. BICKHAM DICKSON, III, Member

_____


FANT ENERGY LIMITED
By: Richard E. Fant, LLC, the General Partner of Fant
Energy Limited

_____     _____
                                    RICHARD FANT, Manager of Richard E. Fant, LLC, the
                                    General Partner of Fant Energy Limited


_____     FLEET HOWELL

_____


KUDZU OIL PROPERTIES, LLC

_____     _____
                                    R. NASH NEYLAND, Executive V.P.

_____


LANDMARK EXPLORATION, LLC

_____     _____
                                    LARRY JOHNSON, Managing Member


MARKSCO, L.L.C.

_____     _____
                                    MARK P. SEALY, Member


TIEMBO LTD.
By:Simba Investors L.L.C., General Partner of Tiembo Ltd.

_____     _____
                                    MARK RAUCH, Member of Simba Investors L.L.C.
                                    The General Partner of Tiembo, Ltd.

- 15 -Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

RESOURCE VENTURES, LLC

Mark Arnold, General Manager

BUNDERO INVESTMENT COMPANY, L.L.C.

ROBERT P. BOWMAN, Manager

CRAFT EXPLORATION COMPANY L.L.C.

STEVEN H. CRAFT, Managing Member

DICKSON OIL & GAS, LLC

C. BICKHAM DICKSON, III, Member

FANT ENERGY LIMITED
By: Richard E. Fant, LLC, the General Partner of Fant
Energy Limited

RICHARD FANT, Manager of Richard E. Fant, LLC, the
General Partner of Fant Energy Limited

FLEET HOWELL

KUDZU OIL PROPERTIES, LLC

R. NASH NEYLAND, Executive V.P.

LANDMARK EXPLORATION, LLC

LARRY JOHNSON, Managing Member

MARKSCO, L.L.C.

MARK P. SEALY, Member

TIEMBO LTD.
By:Simba Investors L.L.C., General Partner of Tiembo Ltd.

MARK RAUCH, Member of Simba Investors L.L.C.
The General Partner of Tiembo, Ltd.

*Clay Erwin*

*Shelley Touchstone*
Shelley Touchstone

- 15 -Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

RESOURCE VENTURES, LLC

1
2 _____
3                                          Mark Arnold, General Manager
4
5 _____
6
7                                          BUNDERO INVESTMENT COMPANY, L.L.C.
8
9 _____                  ROBERT P. BOWMAN, Manager
10
11 _____
12
13                                         CRAFT EXPLORATION COMPANY L.L.C.
14
15 _____
16 _____                  STEVEN H. CRAFT, Managing Member
17
18 _____
19
20                                         DICKSON OIL & GAS, LLC
21
22 _____
23 _____                  C. BICKHAM DICKSON, III, Member
24
25 _____
26
27                                         FANT ENERGY LIMITED
28                                         By: Richard E. Fant, LLC, the General Partner of Fant
                                           Energy Limited
29
30 _____                  RICHARD FANT, Manager of Richard E. Fant, LLC, the
31                                          General Partner of Fant Energy Limited
32
33 _____
34 _____
35
36
37
38 _____                  FLEET HOWELL
39
40 _____
41
42
43                                         KUDZU OIL PROPERTIES, LLC
44
45 _____
46                                         R. NASH NEYLAND, Executive V.P.
47  l
48 _____
49
50                                         LANDMARK EXPLORATION, LLC
51
52 _____                  LARRY JOHNSON, Managing Member
53
54
55 _____
56
57                                         MARKSCO, L.L.C.
58
59 _____                  MARK P. SEALY, Member
60
61
62 _____
63
64                                         TIEMBO LTD.
65                                         By:Simba Investors L.L.C., General Partner of Tiembo Ltd.
66 _____                  _Mark Rauch_ (signature)
67                                          MARK RAUCH, Member of Simba Investors L.L.C.
68                                          The General Partner of Tiembo, Ltd.
69
70 _____

- 15 - Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

PRUET PRODUCTION CO.

_____
WILLIAM R. JAMES, President

MIDROC OPERATING COMPANY

_____
DONALD L. CLARK, President

RAB OIL & GAS HOLDINGS, LLC

_____
ROBERT BOURNE

DBC RESOURCES, LP

_____
DONALD L CLARK,
President of DBC Management LLC, Its General Manager

DCOD, L.L.C.

_____
DALE CLARK, Partner

_____
BOBBY COLEMAN

FOUR D LLC

_____
R. E. DOUGLAS, Manager

HARKNESS A. DUNCAN FAMILY TRUST

_____
H. A. DUNCAN, Trustee

FIDDLER INVESTMENTS

_____
HAROLD R. DUNK, General Manager

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

PRUET PRODUCTION CO.

_____
WILLIAM R. JAMES, President

MIDROC OPERATING COMPANY

_____
DONALD L. CLARK, President

RAB OIL & GAS HOLDINGS, LLC

_____
ROBERT BOURNE

DBC RESOURCES, LP

_____
DONALD L. CLARK,
President of DBC Management LLC, Its General Manager

DCOD, L.L.C.

_____
DALE CLARK, Partner

_____
BOBBY COLEMAN

FOUR D LLC

_____
R. E. DOUGLAS, Manager

HARKNESS A. DUNCAN FAMILY TRUST

_____
H. A. DUNCAN, Trustee

FIDDLER INVESTMENTS

_____
HAROLD R. DUNK, General Manager

- 15 - Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

PRUET PRODUCTION CO.

_____     _____
                                    WILLIAM R. JAMES, President

MIDROC OPERATING COMPANY

_____     _____
                                    DONALD L. CLARK, President

RAB OIL & GAS HOLDINGS, LLC

_____     _____
                                    ROBERT BOURNE

DBC RESOURCES, LP

_____     _____
                                    DONALD L. CLARK,
                                    President of DBC Management LLC, Its General Manager

DCOD, L.L.C.

_____     _____
                                    DALE CLARK, Partner

_____     _____
                                    BOBBY COLEMAN

FOUR D LLC

_____     _____
                                    R. E. DOUGLAS, Manager

HARKNESS A. DUNCAN FAMILY TRUST

_____     _____
                                    H. A. DUNCAN, Trustee

FIDDLER INVESTMENTS

_____     _____
                                    HAROLD R. DUNK, General Manager

- 15 -Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

PRUET PRODUCTION CO.

WILLIAM R. JAMES, President

MIDROC OPERATING COMPANY

DONALD L. CLARK, President

RAB OIL & GAS HOLDINGS, LLC

ROBERT BOURNE

DBC RESOURCES, LP

DONALD L. CLARK,
President of DBC Management LLC, Its General Manager

DCOD, L.L.C.

DALE CLARK, Partner

BOBBY COLEMAN

FOUR D LLC

R. E. DOUGLAS, Manager

HARKNESS A. DUNCAN FAMILY TRUST

H. A. DUNCAN, Trustee

FIDDLER INVESTMENTS

HAROLD R. DUNK, General Manager

- 15 - Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

PRUET PRODUCTION CO.

WILLIAM R. JAMES, President

MIDROC OPERATING COMPANY

DONALD L. CLARK, President

RAB OIL & GAS HOLDINGS, LLC

ROBERT BOURNE

DBC RESOURCES, LP

DONALD L. CLARK,
President of DBC Management LLC, Its General Manager

DCOD, L.L.C.

DALE CLARK, Partner

BOBBY COLEMAN

FOUR D LLC

R. E. DOUGLAS, Manager

HARKNESS A. DUNCAN FAMILY TRUST

H. A. DUNCAN, Trustee

FIDDLER INVESTMENTS

HAROLD R. DUNK, General Manager

- 15 -Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

PRUET PRODUCTION CO.

_____
WILLIAM R. JAMES, President

MIDROC OPERATING COMPANY

_____
DONALD L. CLARK, President

RAB OIL & GAS HOLDINGS, LLC

_____
ROBERT BOURNE

DBC RESOURCES, LP

_____
DONALD L CLARK,
President of DBC Management LLC, Its General Manager

DCOD, L.L.C.

_____
DALE CLARK, Partner

_____
BOBBY COLEMAN

FOUR D LLC

_____
R. E. DOUGLAS, Manager

HARKNESS A. DUNCAN FAMILY TRUST

_____
H. A. DUNCAN, Trustee

FIDDLER INVESTMENTS

_____
HAROLD R. DUNK, General Manager

A.A.P.L. FORM 610 – MODEL FORM OPERATING AGREEMENT - 1982

RAB OIL & GAS HOLDINGS, LLC

_____
ROBERT BOURNE

_____


DBC RESOURCES, LP

_____
DONALD L. CLARK,
President of DBC Management LLC, Its General Manager

_____


DCOD, L.L.C.

_____
DALE CLARK, Partner

_____


_____
BOBBY COLEMAN

_____


FOUR D LLC

_____
R. E. DOUGLAS, Manager

_____


HARKNESS A. DUNCAN FAMILY TRUST

_____
H. A. DUNCAN, Trustee

_____


FIDDLER INVESTMENTS

_____
HAROLD R. DUNK, General Manager

_____


FRANKS EXPLORATION COMPANY, LLC

_____
BOBBY E. JELKS, Manager

_____


GJR INVESTMENTS, INC.

_____
GRADY COOKSEY, President

_____

- 156 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

PRUET PRODUCTION CO.

_____
WILLIAM R. JAMES, President

_____

MIDROC OPERATING COMPANY

_____
DONALD L. CLARK, President

_____

RAB OIL & GAS HOLDINGS, LLC

_____
ROBERT BOURNE

_____

DBC RESOURCES, LP

_____
DONALD L CLARK,
President of DBC Management LLC, Its General Manager

_____

DCOD, L.L.C.

_____
DALE CLARK, Partner

_____

_____
BOBBY COLEMAN

_____

FOUR D LLC

_____
R. E. DOUGLAS, Manager

_____

HARKNESS A. DUNCAN FAMILY TRUST

_____
H. A. DUNCAN, Trustee

_____

FIDDLER INVESTMENTS

_____
HAROLD R. DUNK, General Manager

_____

- 15 -Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

PRUET PRODUCTION CO.

_____

WILLIAM R. JAMES, President

MIDROC OPERATING COMPANY

_____

DONALD L. CLARK, President

RAB OIL & GAS HOLDINGS, LLC

_____

ROBERT BOURNE

DBC RESOURCES, LP

_____

DONALD L CLARK,
President of DBC Management LLC, Its General Manager

DCOD, L.L.C.

_____

DALE CLARK, Partner

_____

BOBBY COLEMAN

FOUR D LLC

_____

R. E. DOUGLAS, Manager

HARKNESS A. DUNCAN FAMILY TRUST

_____

H. A. DUNCAN, Trustee

FIDDLER INVESTMENTS

_____

HAROLD R. DUNK, General Manager

- 15 - Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

FRANKS EXPLORATION COMPANY, LLC

_Edward E Yarbrough_

_[signature]_
BOBBY E. JELKS, Manager

GJR INVESTMENTS, INC.

GRADY COOKSEY, Jr., President

JCE GALBRAITH OIL & GAS, L.L.C.

JOAN MCDONOUGH, General Manager

GASTON OIL COMPANY

TERRY M. GASTON, Secretary/Treasurer

HALL MANAGEMENT LLC

DONALD HALL, M.D.

HANSON OPERATING CO., INC.

RAY WILLIS, President

J&A HARRIS, LP

JAMES B. HARRIS, Manager

HARRIS OIL AND LAND CORPORATION

JAMES B. HARRIS, President

HUGHES 2000 LLC

DUDLEY J. HUGHES, President

- 15 - Boothe Casey 29-6 #1

A.A.P.L. FORM 610 – MODEL FORM OPERATING AGREEMENT - 1982

FRANKS EXPLORATION COMPANY, LLC

_____
BOBBY E. JELKS, Manager


GJR INVESTMENTS, INC.

_____
GRADY COOKSEY, Jr., President


JCE GALBRAITH OIL & GAS, L.L.C.

_____
JOAN MCDONOUGH, General Manager


GASTON OIL COMPANY

_____
TERRY M. GASTON, Secretary/Treasurer


HALL MANAGEMENT LLC

_____
DONALD HALL, M.D.


HANSON OPERATING CO., INC.

_____
RAY WILLIS, President


J&A HARRIS, LP

_____
JAMES B. HARRIS, Manager


HARRIS OIL AND LAND CORPORATION

_____
JAMES B. HARRIS, President


HUGHES 2000 LLC

_____
DUDLEY J. HUGHES, President


- 15 -Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

FRANKS EXPLORATION COMPANY, LLC

_____
BOBBY E. JELKS, Manager

GJR INVESTMENTS, INC.

_____
GRADY COOKSEY, Jr., President

JCE GALBRAITH OIL & GAS, L.L.C.

_____
JOAN MCDONOUGH, General Manager

GASTON OIL COMPANY

_____
TERRY M. GASTON, Secretary/Treasurer

HALL MANAGEMENT LLC

_____
DONALD HALL, M.D.

HANSON OPERATING CO., INC.

_____
RAY WILLIS, President

J&A HARRIS, LP

_____
JAMES B. HARRIS, Manager

HARRIS OIL AND LAND CORPORATION

_____
JAMES B. HARRIS, President

HUGHES 2000 LLC

_____
DUDLEY J. HUGHES, President

- 15 -Boothe Casey 29-6 #1

A.A.P.L. FORM 610 – MODEL FORM OPERATING AGREEMENT - 1982

FRANKS EXPLORATION COMPANY, LLC

_____        BOBBY E. JELKS, Manager

_____

GJR INVESTMENTS, INC.

_____        GRADY COOKSEY, Jr., President

_____

JCE GALBRAITH OIL & GAS, L.L.C.

_____        JOAN MCDONOUGH, General Manager

_____

GASTON OIL COMPANY

*Christie Renn*
Christie Renn
*Deborah Gaston*
Deborah Gaston        TERRY M. GASTON, Secretary/Treasurer

HALL MANAGEMENT LLC

_____        DONALD HALL, M.D.

_____

HANSON OPERATING CO., INC.

_____        RAY WILLIS, President

_____

J&A HARRIS, LP

_____        JAMES B. HARRIS, Manager

_____

HARRIS OIL AND LAND CORPORATION

_____        JAMES B. HARRIS, President

_____

HUGHES 2000 LLC

_____        DUDLEY J. HUGHES, President

_____

- 15 -Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

FRANKS EXPLORATION COMPANY, LLC

_____
BOBBY E. JELKS, Manager

GJR INVESTMENTS, INC.

_____
GRADY COOKSEY, Jr., President

JCE GALBRAITH OIL & GAS, L.L.C.

_____
JOAN MCDONOUGH, General Manager

GASTON OIL COMPANY

_____
TERRY M. GASTON, Secretary/Treasurer

HALL MANAGEMENT LLC

_Anna Mitchell_          _Donald L. Hall_
                         DONALD HALL, M.D.

_Andrea Cyto_

HANSON OPERATING CO., INC.

_____
RAY WILLIS, President

J&A HARRIS, LP

_____
JAMES B. HARRIS, Manager

HARRIS OIL AND LAND CORPORATION

_____
JAMES B. HARRIS, President

HUGHES 2000 LLC

_____
DUDLEY J. HUGHES, President

- 15 -Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

FRANKS EXPLORATION COMPANY, LLC

_____
BOBBY E. JELKS, Manager

GJR INVESTMENTS, INC.

_____
GRADY COOKSEY, Jr., President

JCE GALBRAITH OIL & GAS, L.L.C.

_____
JOAN MCDONOUGH, General Manager

GASTON OIL COMPANY

_____
TERRY M. GASTON, Secretary/Treasurer

HALL MANAGEMENT LLC

_____
DONALD HALL, M.D.

HANSON OPERATING CO., INC.

_Ray Willis_
RAY WILLIS, President

J&A HARRIS, LP

_____
JAMES B. HARRIS, Manager

HARRIS OIL AND LAND CORPORATION

_____
JAMES B. HARRIS, President

HUGHES 2000 LLC

_____
DUDLEY J. HUGHES, President

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

FRANKS EXPLORATION COMPANY, LLC

BOBBY E. JELKS, Manager

GJR INVESTMENTS, INC.

GRADY COOKSEY, Jr., President

JCE GALBRAITH OIL & GAS, L.L.C.

JOAN MCDONOUGH, General Manager

GASTON OIL COMPANY

TERRY M. GASTON, Secretary/Treasurer

HALL MANAGEMENT LLC

DONALD HALL, M.D.

HANSON OPERATING CO., INC.

RAY WILLIS, President

J&A HARRIS, LP

_Angie Harris_
JAMES B. HARRIS, Manager
_Executrix of Estate of James B. Harris_

HARRIS OIL AND LAND CORPORATION

_Angie Harris_
JAMES B. HARRIS, President
_Executrix of Estate of James B. Harris_

HUGHES 2000 LLC

DUDLEY J. HUGHES, President

- 15 - Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

FRANKS EXPLORATION COMPANY, LLC

BOBBY E. JELKS, Manager

GJR INVESTMENTS, INC.

GRADY COOKSEY, Jr., President

JCE GALBRAITH OIL & GAS, L.L.C.

JOAN MCDONOUGH, General Manager

GASTON OIL COMPANY

TERRY M. GASTON, Secretary/Treasurer

HALL MANAGEMENT LLC

DONALD HALL, M.D.

HANSON OPERATING CO., INC.

RAY WILLIS, President

J&A HARRIS, LP

JAMES B. HARRIS, Manager

HARRIS OIL AND LAND CORPORATION

JAMES B. HARRIS, President

HUGHES 2000 LLC

BOBBY J. HUGHES, President
ROBBIE W. HUGHES
VICE PRESIDENT

- 15 - Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

HUGHESOIL, INC.

_____
DUDLEY J. HUGHES, President


M. JOHNSON INVESTMENT PARTNERSHIP I, LLLP

_____
MELVIN J. JOHNSON, M.D.


KMR INVESTMENTS, LLC

_____
MIKE HAYS, President


_____
W. D. MOUNGER


PAM-LIN CORPORATION

_____
DONALD L. CLARK, President


PETROLEUM INVESTMENTS, INC.

_____
CAMILLE C. DESPOT, President


_____
DON B. SAUNDERS


SAWYER DRILLING & SERVICE INC.

_____
RONALD L. SAWYER, President


JMS OIL & GAS HOLDINGS, LLC

_____
JAMES M. SENEFF, JR.


- 15 -Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

HUGHESOIL, INC.

_____
DUDLEY J. HUGHES, President

M. JOHNSON INVESTMENT PARTNERSHIP I, LLLP

_____
MELVIN J. JOHNSON, M.D.

KMR INVESTMENTS, LLC

_____
MIKE HAYS, President
Timothy C. Brown, Controller

_____
W. D. MOUNGER

PAM-LIN CORPORATION

_____
DONALD L. CLARK, President

PETROLEUM INVESTMENTS, INC.

_____
CAMILLE C. DESPOT, President

_____
DON B. SAUNDERS

SAWYER DRILLING & SERVICE INC.

_____
RONALD L. SAWYER, President

JMS OIL & GAS HOLDINGS, LLC

_____
JAMES M. SENEFF, JR.

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

HUGHESOIL, INC.

_____
DUDLEY J. HUGHES, President

M. JOHNSON INVESTMENT PARTNERSHIP I, LLLP

_____
MELVIN J. JOHNSON, M.D.

KMR INVESTMENTS, LLC

_____
MIKE HAYS, President

_____
W. D. MODESITT

PAM-LIN CORPORATION

_____
DONALD L. CLARK, President

PETROLEUM INVESTMENTS, INC.

_____
CAMILLE C. DESPOT, President

_____
DON B. SAUNDERS

SAWYER DRILLING & SERVICE INC.

_____
RONALD L. SAWYER, President

JMS OIL & GAS HOLDINGS, LLC

_____
JAMES M. SENEFF, JR.

- 15 -Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

HUGHESOIL, INC.

_____
DUDLEY J. HUGHES, President

M. JOHNSON INVESTMENT PARTNERSHIP I, LLLP

_____
MELVIN J. JOHNSON, M.D.

KMR INVESTMENTS, LLC

_____
MIKE HAYS, President

_____
W. D. MOUNGER

PAM-LIN CORPORATION

_____
DONALD L. CLARK, President

PETROLEUM INVESTMENTS, INC.

_____
CAMILLE C. DESPOT, President

_____
DON B. SAUNDERS

SAWYER DRILLING & SERVICE INC.

_____
RONALD L. SAWYER, President

JMS OIL & GAS HOLDINGS, LLC

_____
JAMES M. SENEFF, JR.

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

HUGHESOIL, INC.

_____
DUDLEY J. HUGHES, President

M. JOHNSON INVESTMENT PARTNERSHIP I, LLLP

_____
MELVIN J. JOHNSON, M.D.

KMR INVESTMENTS, LLC

_____
MIKE HAYS, President

_____
W. D. MOUNGER

PAM-LIN CORPORATION

_____
DONALD L. CLARK, President

PETROLEUM INVESTMENTS, INC.

_____
CAMILLE C. DESPOT, President

_____
DON B. SAUNDERS

SAWYER DRILLING & SERVICE INC.

_____
RONALD L. SAWYER, President

JMS OIL & GAS HOLDINGS, LLC

_____
JAMES M. SENEFF, JR.

- 15 - Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

HUGHESOIL, INC.

_____
DUDLEY J. HUGHES, President


M. JOHNSON INVESTMENT PARTNERSHIP I, LLLP

_____
MELVIN J. JOHNSON, M.D.


KMR INVESTMENTS, LLC

_____
MIKE HAYS, President


_____
W. D. MOUNGER


PAM-LIN CORPORATION

_____
DONALD L. CLARK, President


PETROLEUM INVESTMENTS, INC.

_____
CAMILLE C. DESPOT, President


_____
DON B. SAUNDERS


SAWYER DRILLING & SERVICE INC.

_____
RONALD L. SAWYER, President


JMS OIL & GAS HOLDINGS, LLC

_____
JAMES M. SENEFF, JR.

- 15 - Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

HUGHESOIL, INC.

_____
DUDLEY J. HUGHES, President

M. JOHNSON INVESTMENT PARTNERSHIP I, LLLP

_____
MELVIN J. JOHNSON, M.D.

KMR INVESTMENTS, LLC

_____
MIKE HAYS, President

_____
W. D. MOUNGER

PAM-LIN CORPORATION

_____
DONALD L. CLARK, President

PETROLEUM INVESTMENTS, INC.

_____
CAMILLE C. DESPOT, President

_____
DON B. SAUNDERS

SAWYER DRILLING & SERVICE INC.

_____
RONALD L. SAWYER, President

JMS OIL & GAS HOLDINGS, LLC

_____
JAMES M. SENEFF, JR.

- 15 -Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

HUGHESOIL, INC.

_____
DUDLEY J. HUGHES, President

M. JOHNSON INVESTMENT PARTNERSHIP I, LLLP

_____
MELVIN J. JOHNSON, M.D.

KMR INVESTMENTS, LLC

_____
MIKE HAYS, President

_____
W. D. MOUNGER

PAM-LIN CORPORATION

_____
DONALD L. CLARK, President

PETROLEUM INVESTMENTS, INC.

_____
CAMILLE C. DESPOT, President

_____
DON B. SAUNDERS

SAWYER DRILLING & SERVICE INC.

_____
RONALD L. SAWYER, President

JMS OIL & GAS HOLDINGS, LLC

_____
JAMES M. SENEFF, JR.

- 15 -Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

1
2  *Evelyn Collier*
3
4  *Brenda Pender*
5

RYCO EXPLORATION, LLC

*M. R. Smith*

M. ROBIN SMITH, President

6
7
8

SUGAR OIL PROPERTIES, LP

9  _____
10

ALAN SUGAR, President

11
12  _____
13
14
15
16
17  _____

LEONARD E. WILLIAMS

18
19
20  _____
21
22
23
24  _____

EDWARD L. YARBOROUGH, JR.

25
26
27  _____
28
29
30
31  _____

TOM YOUNGBLOOD

32
33
34  _____
35
36
37  _____

LINDA DARLENE KELLY HALL

38
39
40  _____
41
42
43
44
45
46
47
48
49  _____     _____
50
51
52
53
54  _____     _____
55
56
57
58
59
60
61
62
63
64
65
66
67
68
69
70

- 15 -Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

RYCO EXPLORATION, LLC

_____     _____
                                    M. ROBIN SMITH, President

_____

*Terry Burns*
*Terry Burns*                       SUGAR OIL PROPERTIES, LP
_____     _____
                                    ALAN SUGAR, President
*Sammye Courtney*
*SAMMYE COURTNEY*
_____

_____     _____
                                    LEONARD E. WILLIAMS

_____

_____     _____
                                    EDWARD L. YARBOROUGH, JR.

_____

_____     _____
                                    TOM YOUNGBLOOD

_____

_____     _____
                                    LINDA DARLENE KELLY HALL

_____

_____     _____

_____     _____

- 15 -Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

RYCO EXPLORATION, LLC

_____

M. ROBIN SMITH, President

SUGAR OIL PROPERTIES, LP

_____

ALAN SUGAR, President

_____

LEONARD E. WILLIAMS

_____

EDWARD L. YARBOROUGH, JR.

_____

TOM YOUNGBLOOD

_____

LINDA DARLENE KELLY HALL

- 15 - Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

RYCO EXPLORATION, LLC

———————————————   M. ROBIN SMITH, President

SUGAR OIL PROPERTIES, LP

———————————————   ALAN SUGAR, President

———————————————   LEONARD E. WILLIAMS

*Nancy S Duke*          *Edward L Yarborough g*
———————————————   EDWARD L. YARBOROUGH, JR.
*Donald C. Smith*

———————————————   TOM YOUNGBLOOD

———————————————   LINDA DARLENE KELLY HALL

- 15 -Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

RYCO EXPLORATION, LLC

_____          _____
                                           M. ROBIN SMITH, President

_____

SUGAR OIL PROPERTIES, LP

_____          _____
                                           ALAN SUGAR, President

_____

_____          _____
                                           LEONARD E. WILLIAMS

_____

_____          _____
                                           EDWARD L. YARBOROUGH, JR.

_____          _____
                                           TOM YOUNGBLOOD

_____          _____
                                           LINDA DARLENE KELLY HALL

_____

_____          _____

_____          _____

- 15 -Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

RYCO EXPLORATION, LLC

_____          _____
                                 M. ROBIN SMITH, President

_____

SUGAR OIL PROPERTIES, LP

_____          _____
                                 ALAN SUGAR, President

_____

_____          _____
                                 LEONARD E. WILLIAMS

_____

_____          _____
                                 EDWARD L. YARBOROUGH, JR.

_____

_____          _____
                                 TOM YOUNGBLOOD

*Kimi Hutchings*                 *Linda Darlene Kelly Hall*
_____          _____
                                 LINDA DARLENE KELLY HALL

*Dianne M Andrews*
_____

_____          _____

_____          _____

- 15 -Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

LEONARD E. WILLIAMS

EDWARD L. YARBOROUGH, JR.

TOM YOUNGBLOOD

LINDA DARLENE KELLY HALL

WALLACE AND WALLACE, LLC

*Ruth H. Wallace*

RUTH H. WALLACE

R.K. AND R.M. HALL IRREVOCABLE TRUST

RICHARD K. HALL

SUMMIT LLC

ALVIN BYRD

LEANNE D. FORD, LLC

LEANNE D. FORD

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

1
2  _____
3
4
5
6  _____                    _____
7                                                       LEONARD E. WILLIAMS
8
9  _____
10
11
12
13 _____                    _____
14                                                      EDWARD L. YARBOROUGH, JR.
15
16 _____
17
18
19
20 _____                    _____
21                                                      TOM YOUNGBLOOD
22
23 _____
24
25
26 _____                    _____
27                                                      LINDA DARLENE KELLY HALL
28
29 _____
30
31                                                      WALLACE AND WALLACE, LLC
32
33
34 _____                    _____
35                                                      RUTH H. WALLACE
36
37 _____
38
39
40                                                      R.K. AND R.M. HALL IRREVOCABLE TRUST
41
42                                                      _Richard. K. Hall_
43 _____                    RICHARD K. HALL
44
45
46 _____
47
48
49                                                      SUMMIT LLC
50
51
52 _____                    _____
53                                                      ALVIN BYRD
54
55
56 _____
57
58
59
60                                                      LEANNE D. FORD, LLC
61
62
63 _____                    _____
64                                                      LEANNE D. FORD
65
66 _____
67
68
69
70

- 15 -Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

LEONARD E. WILLIAMS

EDWARD L. YARBOROUGH, JR.

TOM YOUNGBLOOD

LINDA DARLENE KELLY HALL

WALLACE AND WALLACE, LLC

RUTH H. WALLACE

R.K. AND R.M. HALL IRREVOCABLE TRUST

RICHARD K. HALL

SUMMIT LLC

ALVIN BYRD

LEANNE D. FORD, LLC

LEANNE D. FORD

- 15 -Boothe Casey 29-6 #1

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

```
 1  _____
 2
 3
 4
 5
 6  _____        LEONARD E. WILLIAMS_____
 7
 8
 9  _____
10
11
12
13  _____        EDWARD L. YARBOROUGH, JR._____
14
15
16  _____
17
18
19
20  _____        TOM YOUNGBLOOD_____
21
22
23  _____
24
25
26  _____        LINDA DARLENE KELLY HALL_____
27
28
29  _____
30
31                                         WALLACE AND WALLACE, LLC
32
33
34                                         _____
35  _____        RUTH H. WALLACE
36
37  _____
38
39
40                                         R.K. AND R.M. HALL IRREVOCABLE TRUST
41
42  _____        _____
43                                         RICHARD K. HALL
44
45
46  _____
47
48
49                                         SUMMIT LLC
50
51
52  _____        _____
53                                         ALVIN BYRD
54
55
56  _____
57
58
59
60                                         LEANNE D. FORD, LLC
61
62
63                                         _____
64                                         LEANNE D. FORD
65
66
67
68
69
70
```

- 15 -Boothe Casey 29-6 #1

## ACKNOWLEDGMENTS

STATE OF LOUISIANA

PARISH OF CADDO

I, _Kim S. Elias_____, a notary public in and for said Parish and State, hereby certify that David A. Barlow, whose name as President/chief operating officer for SKLAR EXPLORATION COMPANY L.L.C., a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _8th_ day of _December_, 2011.

_Kim S. Elias_____
NOTARY PUBLIC
Kim S. Elias, Notary Public # 52698
Caddo Parish, Louisiana
My Commission is for Life

[AFFIX NOTARIAL SEAL]

My Commission Expires: _at death_

STATE OF LOUISIANA

PARISH OF CADDO

I, _Kim S. Elias_____, a notary public in and for said Parish and State, hereby certify that David A. Barlow, whose name as President/chief operating officer for SKLARCO L.L.C., a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _8th_ day of _December_, 2011.

_Kim S. Elias_____
NOTARY PUBLIC
Kim S. Elias, Notary Public # 52698
Caddo Parish, Louisiana
My Commission is for Life

[AFFIX NOTARIAL SEAL]

My Commission Expires: _at death_

STATE OF TEXAS

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Ricky Haikin, whose name as Vice President of MCCOMBS ENERGY, LTD., a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

Boothe Casey 29-6#1 Pruet/Midroc JOA

## ACKNOWLEDGMENTS

STATE OF LOUISIANA

PARISH OF CADDO

    I, _Kim S. Elias_____, a notary public in and for said Parish and State, hereby certify that David A. Barlow, whose name as President/chief operating officer for SKLAR EXPLORATION COMPANY L.L.C., a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    Given under my hand and notarial seal this the ___8th___ day of __December__, 2011.

_Kim S. Elias_____
NOTARY PUBLIC
Kim S. Elias, Notary Public # 52698
Caddo Parish, Louisiana
My Commission is for Life

[AFFIX NOTARIAL SEAL]

My Commission Expires: _at death_

STATE OF LOUISIANA

PARISH OF CADDO

    I, _Kim S. Elias_____, a notary public in and for said Parish and State, hereby certify that David A. Barlow, whose name as President/chief operating officer for SKLARCO L.L.C., a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    Given under my hand and notarial seal this the ___8th___ day of __December__, 2011.

_Kim S. Elias_____
NOTARY PUBLIC
Kim S. Elias, Notary Public # 52698
Caddo Parish, Louisiana
My Commission is for Life

[AFFIX NOTARIAL SEAL]

My Commission Expires: _at death_

STATE OF TEXAS

COUNTY OF ___Harris___

    I, _Sharon M. McDonald_____, a notary public in and for said County and State, hereby certify that Ricky Haikin, whose name as Vice President of MCCOMBS ENERGY, LTD., a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    Given under my hand and notarial seal this the ___19___ day of __December__, 2011.

_Sharon M. McDonald_____
NOTARY PUBLIC

SHARON METCALF McDONALD
Notary Public, State of Texas
Commission Expires 12-29-2013

[AFFIX NOTARIAL SEAL]

My Commission Expires: _12-29-2013_

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF TEXAS

COUNTY OF _HARRIS_

I, _MYLA WUNDERLICH_, a notary public in and for said County and State, hereby certify that Richard Tauber, whose name as President of TAUBER EXPLORATION AND PRODUCTION COMPANY, a Texas corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _3RD_ day of _JANUARY_, ~~2011~~ _2012_.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

MYLA WUNDERLICH
NOTARY PUBLIC, STATE OF TEXAS
COMMISSION EXPIRES
FEBRUARY 11, 2012

My Commission Expires: _____


STATE OF TEXAS

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Michael K. Pickens, whose name as Vice President for PICKENS FINANCIAL GROUP, LLC, a Texas limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF TEXAS

COUNTY OF HARRIS

I, the undersigned notary public in and for said County in said State, hereby certify that Justin Simons whose name as Manager of Houston Bulldog Capital Management, LLC, the Manager of JJS WORKING INTERESTS, LLC, a Texas limited liability company, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
NOTARY PUBLIC

(AFFIX NOTARIAL SEAL)

My commission expires: _____

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF TEXAS

COUNTY OF _____

      I, _____, a notary public in and for said County and State, hereby certify that Richard Tauber, whose name as President of TAUBER EXPLORATION AND PRODUCTION COMPANY, a Texas corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

      Given under my hand and notarial seal this the _____ day of _____, 2011.

                                   _____
                                   NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF TEXAS

COUNTY OF _Dallas_

      I, _Marilyn L. Fulton_, a notary public in and for said County and State, hereby certify that Michael K. Pickens, whose name as Vice President for PICKENS FINANCIAL GROUP, LLC, a Texas limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

      Given under my hand and notarial seal this the _15th_ day of _December_, 2011.

                                   _Marilyn L. Fulton_
                                   NOTARY PUBLIC

MARILYN L FULTON
My Commission Expires
June 23, 2012

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF TEXAS

COUNTY OF HARRIS

      I, the undersigned notary public in and for said County in said State, hereby certify that Justin Simons whose name as Manager of Houston Bulldog Capital Management, LLC, the Manager of JJS WORKING INTERESTS, LLC, a Texas limited liability company, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said company.

      Given under my hand and notarial seal this the _____ day of _____, 2011.

                                   _____
                                     NOTARY PUBLIC

(AFFIX NOTARIAL SEAL)

My commission expires: _____

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF TEXAS

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Richard Tauber, whose name as President of TAUBER EXPLORATION AND PRODUCTION COMPANY, a Texas corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF TEXAS

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Michael K. Pickens, whose name as Vice President for PICKENS FINANCIAL GROUP, LLC, a Texas limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF TEXAS

COUNTY OF HARRIS

I, the undersigned notary public in and for said County in said State, hereby certify that Justin Simons whose name as Manager of Houston Bulldog Capital Management, LLC, the Manager of JJS WORKING INTERESTS, LLC, a Texas limited liability company, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the 16th day of December, 2011.

_____
NOTARY PUBLIC

(AFFIX NOTARIAL SEAL)

My commission expires: 8-11-15

MARCIA A. DE LUNA
Notary Public, State of Texas
My Commission Expires
August 11, 2015

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF _Colorado_

COUNTY OF _Douglas_

I, the undersigned notary public in and for said County in said State, hereby certify that Mark Arnold whose name as General Manager of RESOURCE VENTURES, LLC, an Indiana limited liability company, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he/she, as such Manager and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _20Th_ day of _December_ 2011.

_JoAnne Schafield_
NOTARY PUBLIC

(AFFIX NOTARIAL SEAL)

My commission expires: _3/5/2013_


STATE OF LOUISIANA

PARISH OF CADDO

I, _____, a notary public in and for said Parish and State, hereby certify that Robert P. Bowman, whose name as Member of BUNDERO INVESTMENT COMPANY, LLC, a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF MISSISSIPPI

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Steven H. Craft, whose name as managing member of CRAFT EXPLORATION COMPANY L.L.C., a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF _____

COUNTY OF _____

     I, the undersigned notary public in and for said County in said State, hereby certify that Mark Arnold whose name as General Manager of RESOURCE VENTURES, LLC, an Indiana limited liability company, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he/she, as such Manager and with full authority, executed the same voluntarily for and as the act of said company.

     Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
NOTARY PUBLIC

(AFFIX NOTARIAL SEAL)

My commission expires: _____

STATE OF LOUISIANA

PARISH OF CADDO

I, Deborah W. Cox _____, a notary public in and for said Parish and State, hereby certify that Robert P. Bowman, whose name as Member of BUNDERO INVESTMENT COMPANY, LLC, a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

     Given under my hand and notarial seal this the 14th day of December, 2011.

_Deborah W. Cox_
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: for life

```
DEBORAH W. COX  24693
Notary Public
Parish of Caddo
State of Louisiana
```

STATE OF MISSISSIPPI

COUNTY OF _____

     I, _____, a notary public in and for said County and State, hereby certify that Steven H. Craft, whose name as managing member of CRAFT EXPLORATION COMPANY L.L.C., a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

     Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF _____

COUNTY OF _____

      I, the undersigned notary public in and for said County in said State, hereby certify that Mark Arnold whose name as General Manager of RESOURCE VENTURES, LLC, an Indiana limited liability company, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he/she, as such Manager and with full authority, executed the same voluntarily for and as the act of said company.

      Given under my hand and notarial seal this the _____ day of _____, 2011.

                                      _____
                                        NOTARY PUBLIC

(AFFIX NOTARIAL SEAL)

My commission expires: _____

STATE OF LOUISIANA

PARISH OF CADDO

I, _____, a notary public in and for said Parish and State, hereby certify that Robert P. Bowman, whose name as Member of BUNDERO INVESTMENT COMPANY, LLC, a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

      Given under my hand and notarial seal this the _____ day of _____, 2011.

                                        _____
                                        NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF MISSISSIPPI

COUNTY OF HINDS

      I, Shirlee Tye Lawson _____, a notary public in and for said County and State, hereby certify that Steven H. Craft, whose name as managing member of CRAFT EXPLORATION COMPANY L.L.C., a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

      Given under my hand and notarial seal this the 19 day of DECEMBER, 2011.

                                        _____
                                        NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: 4-27-2014

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF LOUISIANA

PARISH OF CADDO

I, *George Portocarrero*, a notary public in and for said Parish and State, hereby certify that C. Bickham Dickson, III, whose name as Member of the DICKSON OIL & GAS, LLC, a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such Member and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the *20th* day of *December*, 2011.

_____
Notary Public

(AFFIX NOTARIAL SEAL)

My commission expires: *For Life*

```
GEORGE PORTOCARRERO
NOTARY PUBLIC - LOUISIANA
CADDO - BOSSIER PARISH
NOTARY ID NUMBER 056297
My Commission Is For Life
```

STATE OF TEXAS

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Richard E. Fant, whose name as Manager of Richard E. Fant, LLC, the General Partner of FANT ENERGY LIMITED, a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said limited partnership.

Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
Notary Public

(AFFIX NOTARIAL SEAL)

My commission expires: _____

STATE OF LOUISIANA

PARISH OF CADDO

I, _____, a notary public in and for said Parish and State, hereby certify that JAMES FLEET HOWELL, signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he executed the same as his free act and deed.

Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
Notary Public

(AFFIX NOTARIAL SEAL)

My commission expires: _____

STATE OF LOUISIANA

PARISH OF CADDO

       I, _____, a notary public in and for said Parish and State, hereby certify that C. Bickham Dickson, III, whose name as Member of the DICKSON OIL & GAS, LLC, a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such Member and with full authority, executed the same voluntarily for and as the act of said company.

       Given under my hand and notarial seal this the _____ day of _____, 2011.

                                _____
                                      Notary Public

(AFFIX NOTARIAL SEAL)

My commission expires: _____

STATE OF TEXAS

COUNTY OF _Harris_

       I, _Brenda Witt White_, a notary public in and for said County and State, hereby certify that Richard E. Fant, whose name as Manager of Richard E. Fant, LLC, the General Partner of FANT ENERGY LIMITED, a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said limited partnership.

       Given under my hand and notarial seal this the _16th_ day of _December_, 2011.

                                  _Brenda Witt White_
                                      Notary Public

       BRENDA WITT WHITE
    Notary Public, State of Texas
      My Commission Expires
        March 23, 2015

(AFFIX NOTARIAL SEAL)

My commission expires: _march 23, 2015_

STATE OF LOUISIANA

PARISH OF CADDO

       I, _____, a notary public in and for said Parish and State, hereby certify that JAMES FLEET HOWELL, signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he executed the same as his free act and deed.

       Given under my hand and notarial seal this the _____ day of _____, 2011.

                                  _____
                                      Notary Public

(AFFIX NOTARIAL SEAL)

My commission expires: _____

STATE OF LOUISIANA

PARISH OF CADDO

I, _____, a notary public in and for said Parish and State, hereby certify that C. Bickham Dickson, III, whose name as Member of the DICKSON OIL & GAS, LLC, a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such Member and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
Notary Public

(AFFIX NOTARIAL SEAL)

My commission expires: _____

STATE OF TEXAS

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Richard E. Fant, whose name as Manager of Richard E. Fant, LLC, the General Partner of FANT ENERGY LIMITED, a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said limited partnership.

Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
Notary Public

(AFFIX NOTARIAL SEAL)

My commission expires: _____

STATE OF LOUISIANA

PARISH OF CADDO

I, _Melissa R. Ebarb_____, a notary public in and for said Parish and State, hereby certify that JAMES FLEET HOWELL, signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he executed the same as his free act and deed.

Given under my hand and notarial seal this the _14th_ day of _Dec._, 2011.

_Melissa R. Ebarb_____
Notary Public
#68375

(AFFIX NOTARIAL SEAL)

My commission expires: _is for Life_

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF MISSISSIPPI

COUNTY OF _Madison_

    I, _Pamela F Sebren_, a notary public in and for said County and State, hereby certify that R. Nash Neyland, Executive V.P. whose name as Manager of KUDZU OIL PROPERTIES, LLC, a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    Given under my hand and notarial seal this the _19_ day of _December_, 2011.

                                 _Pamela F Sebren_
                                   NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

*STATE OF MISSISSIPPI NOTARY PUBLIC ID # 63506 PAMELA F. SEBREN Commission Expires July 18, 2013 RANKIN COUNTY*

STATE OF MISSISSIPPI

COUNTY OF _____

    I, _____, a notary public in and for said County and State, hereby certify that Larry Johnson, whose name as Managing Member of LANDMARK EXPLORATION LLC, a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    Given under my hand and notarial seal this the _____ day of _____, 2011.

                                    _____
                                   NOTARY PUBLIC

(AFFIX NOTARIAL SEAL)

My commission expires: _____

STATE OF LOUISIANA

PARISH OF CADDO

    I, _____, a notary public in and for said Parish and State, hereby certify that Mark P. Sealy, whose name as Member of the MARKSCO L.L.C., a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such Member and with full authority, executed the same voluntarily for and as the act of said company.

    Given under my hand and notarial seal this the _____ day of _____, 2011.

                                    _____
                                    Notary Public

(AFFIX NOTARIAL SEAL)

My commission expires: _____

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF MISSISSIPPI

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that R. Nash Neyland, Executive V.P. whose name as Manager of KUDZU OIL PROPERTIES, LLC, a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF MISSISSIPPI

COUNTY OF _Ranlm_

I, _Lena M. Mayfield_, a notary public in and for said County and State, hereby certify that Larry Johnson, whose name as Managing Member of LANDMARK EXPLORATION LLC, a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _20_ day of _December_, 2011.

_Lena M. Mayfield_
NOTARY PUBLIC

(AFFIX NOTARIAL SEAL)

My commission expires: _2-17-2013_


STATE OF LOUISIANA

PARISH OF CADDO

I, _____, a notary public in and for said Parish and State, hereby certify that Mark P. Sealy, whose name as Member of the MARKSCO L.L.C., a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such Member and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
Notary Public

(AFFIX NOTARIAL SEAL)

My commission expires: _____

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF MISSISSIPPI

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that R. Nash Neyland, Executive V.P. whose name as Manager of KUDZU OIL PROPERTIES, LLC, a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF MISSISSIPPI

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Larry Johnson, whose name as Managing Member of LANDMARK EXPLORATION LLC, a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
NOTARY PUBLIC

(AFFIX NOTARIAL SEAL)

My commission expires: _____


STATE OF LOUISIANA

PARISH OF CADDO

I, _____, a notary public in and for said Parish and State, hereby certify that Mark P. Sealy, whose name as Member of the MARKSCO L.L.C., a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such Member and with full authority, executed the same voluntarily for and as the act of said company.

*PEGGY DAY GILL, NOTARY PUBLIC*
*CADDO PARISH, LOUISIANA*
*MY COMMISSION IS FOR LIFE*
*NOTARY NO. 2425*

Given under my hand and notarial seal this the 20th day of December 2011.

_____
Notary Public
#002425

(AFFIX NOTARIAL SEAL)

My commission expires: *at my death*

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF ~~MISSISSIPPI~~ *TEXAS*

COUNTY OF _HARRIS_

I, _PATTI L HANSON_, a notary public in and for said County and State, hereby certify that Mark Rauch, whose name as member of Simba Investors, L.L.C., The General Partner of TIEMBO, LTD., a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _19_ day of _December_, 2011.

PATTI L HANSON
MY COMMISSION EXPIRES
January 18, 2015

_Patti L Hanson_
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _1/18/2015_

STATE OF MISSISSIPPI

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that David Hilton, whose name as _____ of Pruet Production, a _____, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF TEXAS

COUNTY OF DALLAS

I, _____, a notary public in and for said County and State, hereby certify that Donald L. Clark, whose name as President of MIDROC OPERATING COMPANY, a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF MISSISSIPPI

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Mark Rauch, whose name as member of SIMBA INVESTORS, L.L.C., The General Partner of TIEMBO, LTD., a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF MISSISSIPPI

COUNTY OF _Hinds_

I, _Lynda H Grice_, a notary public in and for said County and State, hereby certify that William R. James, whose name as President of PRUET PRODUCTION CO., a _Corporation_, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _22nd_ day of _December_, 2011.

_Lynda H Grice_
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF TEXAS

COUNTY OF DALLAS

I, _____, a notary public in and for said County and State, hereby certify that Donald L. Clark, whose name as President of MIDROC OPERATING COMPANY, a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF MISSISSIPPI

COUNTY OF _____

        I, _____, a notary public in and for said County and State, hereby certify that Mark Rauch, whose name as member of Simba Investors, L.L.C., The General Partner of TIEMBO, LTD., a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

        Given under my hand and notarial seal this the _____ day of _____, 2011.

                                                _____
                                              NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF MISSISSIPPI

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that David Hilton, whose name as _____ of Pruet Production, a _____, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

        Given under my hand and notarial seal this the _____ day of _____, 2011.

                                                _____
                                              NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF TEXAS

COUNTY OF DALLAS

I, _Debbie A. Pike_____, a notary public in and for said County and State, hereby certify that Donald L. Clark, whose name as President of MIDROC OPERATING COMPANY, a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

        Given under my hand and notarial seal this the _9th_ day of _January_____, 2012.

                                       _Debbie A. Pike_____
                                       NOTARY PUBLIC

```
DEBBIE A PIKE
NOTARY PUBLIC
STATE OF TEXAS
MY COMM. EXP. 2-24-2013
```

[AFFIX NOTARIAL SEAL]

My Commission Expires: _2-24-13_____

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF _Florida_

COUNTY OF _Orange_

     I, _Mary Lee Stallings_, a notary public in and for said County and State, hereby certify that Robert Bourne, whose name as _CEO_ of the RAB OIL & GAS HOLDINGS, L.L.C., a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such _CEO_ and with full authority, executed the same voluntarily for and as the act of said company.

     Given under my hand and notarial seal this the _28th_ day of _December_, 2011.

               _Mary Lee Stallings_
               NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _7-6-2015_

> Notary Public State of Florida
> Mary Lee Stallings
> My Commission EE087113
> Expires 07/06/2015

STATE OF _____

COUNTY OF _____

     I, _____, a notary public in and for said County and State, hereby certify that Donald L. Clark, whose name as President of DBC Management L.L.C., the General Manager of DBC RESOURCES, L.P., a limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said limited partnership.

     Given under my hand and notarial seal this the _____ day of _____, 2011.

               _____
               NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

     I, _____, a notary public in and for said County and State, hereby certify that Dale Clark, whose name as Partner of DCOD, L.L.C., a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

     Given under my hand and notarial seal this the _____ day of _____, 2011.

               _____
               NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF _____

COUNTY OF _____

      I, _____, a notary public in and for said County and State, hereby certify that Robert Bourne, whose name as _____ of the RAB OIL & GAS HOLDINGS, L.L.C., a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such _____ and with full authority, executed the same voluntarily for and as the act of said company.

      Given under my hand and notarial seal this the _____ day of _____, 2011.

                      _____
                          NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _Texas_____

COUNTY OF _Dallas_____

      I, _Debbie A. Pike_____, a notary public in and for said County and State, hereby certify that Donald L. Clark, whose name as President of DBC Management L.L.C., the General Manager of DBC RESOURCES, L.P., a limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said limited partnership.

      Given under my hand and notarial seal this the _9th__ day of _January_____, 2011.

                      _Debbie J. Pike_____
                          NOTARY PUBLIC

        DEBBIE A PIKE
        NOTARY PUBLIC
        STATE OF TEXAS
        MY COMM. EXP. 2-24-2013

[AFFIX NOTARIAL SEAL]

My Commission Expires: _2-24-13___

STATE OF _____

COUNTY OF _____

      I, _____, a notary public in and for said County and State, hereby certify that Dale Clark, whose name as Partner of DCOD, L.L.C., a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

      Given under my hand and notarial seal this the _____ day of _____, 2011.

                      _____
                          NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF _Texas_

COUNTY OF _Dallas_

Personally appeared before me, the undersigned authority in and for said county and state, on this _20th_ day of _December_ _____, 2011, within my jurisdiction, the within BOBBY COLEMAN, who acknowledged that he executed the above and foregoing instrument.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _8/19/2015_

ANN SWEENEY
NOTARY PUBLIC
STATE OF TEXAS
MY COMM. EXP. 08/19/2015

STATE OF _____

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that R. E. Douglas, whose name as Manager of FOUR D L.L.C., a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that H. A. Duncan, whose name as Trustee of HARKNESS A. DUNCAN FAMILY TRUST, a _____, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said trust.

Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF _Arizona_

COUNTY OF _Maricopa_

I, _Sara Lewis_____, a notary public in and for said County and State, hereby certify that R. E. Douglas, whose name as Manager of FOUR D L.L.C., a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the __27__ day of _April_____, ~~2011~~ _2012_.

Sara Lewis
Notary Public
Maricopa County, Arizona
My Comm. Expires 11-08-15

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF _____

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that H. A. Duncan, whose name as Trustee of HARKNESS A. DUNCAN FAMILY TRUST, a _____, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said trust.

Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF _____

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Harold R. Dunk, whose name as General Manager of FIDDLER INVESTMENTS, a _____, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said _____.

Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

Personally appeared before me, the undersigned authority in and for said county and state, on this \_\_\_\_\_ day of _____, 2011, within my jurisdiction, the within BOBBY COLEMAN, who acknowledged that he executed the above and foregoing instrument.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that R. E. Douglas, whose name as Manager of FOUR D L.L.C., a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _Florida_

COUNTY OF _Seminole_

I, _Susan D. Burke_, a notary public in and for said County and State, hereby certify that H. A. Duncan, whose name as Trustee of HARKNESS A. DUNCAN FAMILY TRUST, a _____, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said trust.

Given under my hand and notarial seal this the _19th_ day of _December_, 2011.

_Susan D. Burke_
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

SUSAN D. BURKE
MY COMMISSION # DD 756413
EXPIRES: March 20, 2012
Bonded Thru Notary Public Underwriters

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF _TEXAS_

COUNTY OF _DALLAS_

    I, _Marjorie H. Turner_ a notary public in and for said County and State, hereby certify that Harold R. Dunk, whose name as General Manager of FIDDLER INVESTMENTS, a _PARTNERSHIP_, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said _PARTNERSHIP_

    Given under my hand and notarial seal this the _20ᵗʰ_ day of _December_, 2011.

                        _Marjorie G. Turner_
                            NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires:

MARJORIE G. TURNER
Notary Public, State of Texas
My Comm. Expires April 30, 2013

STATE OF _____

COUNTY OF _____

    I, _____, a notary public in and for said County and State, hereby certify that Bobby E. Jelks, whose name as Manager of FRANKS EXPLORATION COMPANY, L.L.C., a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    Given under my hand and notarial seal this the _____ day of _____, 2011.

                  _____
                         NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

    I, _____, a notary public in and for said County and State, hereby certify that Grady Cooksey, Jr., whose name as President of GJR INVESTMENTS, INC., a _____, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said _____.

    Given under my hand and notarial seal this the _____ day of _____, 2011.

                  _____
                         NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF _____

COUNTY OF _____

      I, _____, a notary public in and for said County and State, hereby certify that Harold R. Dunk, whose name as General Manager of FIDDLER INVESTMENTS, a _____, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said _____.

      Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _Louisiana_

COUNTY OF _Bossier_

      I, __Diane Marie Fong__ (~~DIANE FONG MARLOWE~~), a notary public in and for said County and State, hereby certify that Bobby E. Jelks, whose name as Manager of FRANKS EXPLORATION COMPANY, L.L.C., a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

      Given under my hand and notarial seal this the _21st_ day of _December_, 2011.

_Diane Marie Fong_
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

Diane Marie Fong, Notary Public  ID # 2731
P. O. Box 7665 - Shreveport, LA  71137-7665
Commissioned in Caddo Parish, Louisiana
Commission is for life.

STATE OF _____

COUNTY OF _____

      I, _____, a notary public in and for said County and State, hereby certify that Grady Cooksey, Jr., whose name as President of GJR INVESTMENTS, INC., a _____, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said _____.

      Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF _____

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Harold R. Dunk, whose name as General Manager of FIDDLER INVESTMENTS, a _____, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said _____.

Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF _____

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Bobby E. Jelks, whose name as Manager of FRANKS EXPLORATION COMPANY, L.L.C., a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF *Florida*

COUNTY OF *Seminole*

I, *Cindy Miaisola*, a notary public in and for said County and State, hereby certify that Grady Cooksey, Jr., whose name as President of GJR INVESTMENTS, INC., a *Corporation*, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said *Corporation*.

Given under my hand and notarial seal this the *20th* day of *December*, 2011.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: *11-17-2014*

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF _Florida_

COUNTY OF _Orange_

I, _Sherila M Steele_, a notary public in and for said County and State, hereby certify that Joan McDonough, whose name as General Manager of JCE GALBRAITH OIL & GAS, L.L.C., a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _23rd_ day of _December_, 2011.

Notary Public State of Florida
Sherila M Steele
My Commission DD852717
Expires 02/23/2013

_Sherila M Steele_
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF _____

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Terry M. Gaston, whose name as Secretary/Treasurer of GASTON OIL COMPANY, a _____, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF _____

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Donald Hall, M.D., whose name as _____ of Hall Management, LLC, a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF _____

COUNTY OF _____

       I, _____, a notary public in and for said County and State, hereby certify that Joan McDonough, whose name as General Manager of JCE GALBRAITH OIL & GAS, L.L.C., a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

       Given under my hand and notarial seal this the _____ day of _____, 2011.

                     _____
                           NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _*Louisiana*_

COUNTY OF _*Caddo*_

       I, _*Robert M. Kovalsky*_, a notary public in and for said County and State, hereby certify that Terry M. Gaston, whose name as Secretary/Treasurer of GASTON OIL COMPANY, a _*Male Individual*_, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

       Given under my hand and notarial seal this the _28_ day of _*December*_, 2011.

                     _____
                           NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

R. MICHAEL KOVALSKY, Notary Public
Caddo Parish, Louisiana
My Commission is for Life
Notary ID # 3456

STATE OF _____

COUNTY OF _____

       I, _____, a notary public in and for said County and State, hereby certify that Donald Hall, M.D., whose name as _____ of Hall Management, LLC, a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

       Given under my hand and notarial seal this the _____ day of _____, 2011.

                     _____
                           NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF _____

COUNTY OF _____

       I, _____, a notary public in and for said County and State, hereby certify that Joan McDonough, whose name as General Manager of JCE GALBRAITH OIL & GAS, L.L.C., a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

       Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

       I, _____, a notary public in and for said County and State, hereby certify that Terry M. Gaston, whose name as Secretary/Treasurer of GASTON OIL COMPANY, a _____, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

       Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF *Lousiana*

COUNTY OF *Caddo*

       I, *Walter Pipkin* _____, a notary public in and for said County and State, hereby certify that Donald Hall, M.D., whose name as *President* of Hall Management, LLC, a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

       Given under my hand and notarial seal this the *19th* day of *December*, 2011.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: *At Death*

                            **WALTER PIPKIN**
                      **NOTARY PUBLIC, Caddo Parish, LA**
                      **My commission is for life.**
                          **ID # 87506**

STATE OF _New Mexico_

COUNTY OF _Chaves_

I, _Sharon R. Hamilton_, a notary public in and for said County and State, hereby certify that Ray Willis, whose name as President of HANSON OPERATING CO., INC., a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, she, as such officer and with full authority, executed the same for and as the act of said corporation.

Given under my hand and notarial seal this the ___21___ day of _December_, 2011.

_Sharon R. Hamilton_
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _2-13-2012_

STATE OF _____

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that James B. Harris, whose name as Manager of J&A HARRIS, L.P., a limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said limited partnership.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that James B. Harris, whose name as President of HARRIS OIL AND LAND CORPORATION, a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said corporation.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF _____

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Ray Willis, whose name as President of HANSON OPERATING CO., INC., a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, she, as such officer and with full authority, executed the same for and as the act of said corporation.

Given under my hand and notarial seal this the _____ day of _____, 2011.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _LOUISIANA_

PARISH ~~COUNTY~~ OF _CADDO_

_Executive Estate of JBH_

I, _Vickie U. Kelly_____, a notary public in and for said County and State, hereby certify that James B. Harris, whose name as Manager of J&A HARRIS, L.P., a limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, she, as such officer and with full authority, executed the same for and as the act of said limited partnership.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Vickie U. Kelly_
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _with life_

STATE OF _LOUISIANA_

PARISH ~~COUNTY~~ OF _CADDO_

_Executive of Estate of JBH_

I, _Vickie U. Kelly_____, a notary public in and for said County and State, hereby certify that James B. Harris, whose name as President of HARRIS OIL AND LAND CORPORATION, a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, she, as such officer and with full authority, executed the same for and as the act of said corporation.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Vickie U. Kelly_
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF _MISSISSIPPI_

COUNTY OF _HINDS_

    I, _PAULA W. DENLEY_ , a notary public in and for said County and State, hereby certify that ~~Dudley J.~~ Hughes, whose name as ~~VICE~~ President of HUGHES 2000 L.L.C., a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                                      _Paula W. Denley_
                                        NOTARY PUBLIC  128404

[AFFIX NOTARIAL SEAL]

My Commission Expires: _04/05/13_

STATE OF _MISSISSIPPI_

COUNTY OF _HINDS_

    I, _PAULA W. DENLEY_ , a notary public in and for said County and State, hereby certify that ~~Dudley J.~~ Hughes, whose name as ~~Bobbie w.~~ President of HUGHESOIL, INC., a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said corporation.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                                         _Paula W. Denley_
                                        NOTARY PUBLIC  128404

[AFFIX NOTARIAL SEAL]

My Commission Expires: _04/05/13_

STATE OF _____

COUNTY OF _____

    Personally appeared before me, the undersigned authority in and for said county and state, on this _____ day of _____, 2011, within my jurisdiction, the within MELVIN J. JOHNSON, M.D., who acknowledged that he executed the above and foregoing instrument.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                          _____
                                NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF _____

COUNTY OF _____

    I, _____, a notary public in and for said County and State, hereby certify that Dudley J. Hughes, whose name as President of HUGHES 2000 L.L.C., a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
                    NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

    I, _____, a notary public in and for said County and State, hereby certify that Dudley J. Hughes, whose name as President of HUGHESOIL, INC., a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said corporation.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
                    NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _Florida_

COUNTY OF _Orange_

    Personally appeared before me, the undersigned authority in and for said county and state, on this 27th day of _December_, 2011, within my jurisdiction, the within MELVIN J. JOHNSON, M.D., who acknowledged that he executed the above and foregoing instrument.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Alice M. Krause_
                    NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _2-1-2014_



ALICE M KRAUSE
MY COMMISSION # DD946487
EXPIRES February 01, 2014
(407) 398-0153    FloridaNotaryService.com

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF _____

COUNTY OF _____

     Personally appeared before me, the undersigned authority in and for said county and state, on this _____ day of _____, 2011, within my jurisdiction, the within MARSHA JOHNSON, who acknowledged that he executed the above and foregoing instrument.

     IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                              _____
                                    NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

 

STATE OF *Louisiana* _____

~~COUNTY~~ *Parish* OF *Claiborne* _____

     I, *Dawn M. Williams* _____, a notary public in and for said County and State, hereby certify that ~~Mike Hayes,~~ *Floyd Hayes* whose name as President of KMR INVESTMENTS, LLC, a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

     IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                              *Dawn M. Williams*
                                    NOTARY PUBLIC  #51640

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

 

STATE OF _____

COUNTY OF _____

     Personally appeared before me, the undersigned authority in and for said county and state, on this _____ day of _____, 2011, within my jurisdiction, the within W. D. MOUNGER, who acknowledged that he executed the above and foregoing instrument.

     IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                              _____
                                    NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF _____

COUNTY OF _____

      Personally appeared before me, the undersigned authority in and for said county and state, on this _____ day of _____, 2011, within my jurisdiction, the within MARSHA JOHNSON, who acknowledged that he executed the above and foregoing instrument.

      IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                        _____
                               NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

      I, _____, a notary public in and for said County and State, hereby certify that Mike Hayes, whose name as President of KMR INVESTMENTS, LLC, a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

      IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                        _____
                               NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF *Mississippi*

COUNTY OF *Hinds*

      Personally appeared before me, the undersigned authority in and for said county and state, on this *22 nd* day of *December*, 2011, within my jurisdiction, the within W. D. MOUNGER, who acknowledged that he executed the above and foregoing instrument.

      IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                        *Montell T. Watkins*
                               NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: *02/02/14*

STATE OF MISSISSIPPI
NOTARY PUBLIC
ID # 8089
MONTELL T. WATKINS
Commission Expires
March 2, 2014
HINDS COUNTY

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF _Texas_

COUNTY OF _Dallas_

    I, _Debbie A. Pike_____, a notary public in and for said County and State, hereby certify that Donald L. Clark, whose name as President of PAM-LIN CORPORATION, a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said corporation.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Debbie A. Pike_
NOTARY PUBLIC

```
DEBBIE A PIKE
NOTARY PUBLIC
STATE OF TEXAS
MY COMM. EXP. 2-24-2013
```

My Commission Expires: _2-24-13_

STATE OF _____

COUNTY OF _____

    I, _____, a notary public in and for said County and State, hereby certify that Camille C. Despot, whose name as President of PETROLEUM INVESTMENTS, INC., a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, she, as such officer and with full authority, executed the same for and as the act of said corporation.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

    Personally appeared before me, the undersigned authority in and for said county and state, on this _____ day of _____, 2011, within my jurisdiction, the within DON B. SAUNDERS, who acknowledged that he executed the above and foregoing instrument.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF _____

COUNTY OF _____

     I, _____, a notary public in and for said County and State, hereby certify that Donald L. Clark, whose name as President of PAM-LIN CORPORATION, a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said corporation.

     IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                          _____
                               NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF _Louisiana_

COUNTY OF _Caddo_  *(Parish)*

     I, _Cynthia M. White_, a notary public in and for said ~~County~~ *Parish* and State, hereby certify that Camille C. Despot, whose name as President of PETROLEUM INVESTMENTS, INC., a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, she, as such officer and with full authority, executed the same for and as the act of said corporation.

     IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                        _Cynthia M. White_
                        NOTARY PUBLIC  _ID#60574_

[AFFIX NOTARIAL SEAL]

My Commission Expires: _at my death_

                        CYNTHIA M. WHITE
                        NOTARY PUBLIC, CADDO PARISH, LA
                        MY COMMISSION IS FOR LIFE


STATE OF _____

COUNTY OF _____

     Personally appeared before me, the undersigned authority in and for said county and state, on this _____ day of _____, 2011, within my jurisdiction, the within DON B. SAUNDERS, who acknowledged that he executed the above and foregoing instrument.

     IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                          _____
                               NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF _____

COUNTY OF _____

      I, _____, a notary public in and for said County and State, hereby certify that Donald L. Clark, whose name as President of PAM-LIN CORPORATION, a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said corporation.

      IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF _____

COUNTY OF _____

      I, _____, a notary public in and for said County and State, hereby certify that Camille C. Despot, whose name as President of PETROLEUM INVESTMENTS, INC., a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, she, as such officer and with full authority, executed the same for and as the act of said corporation.

      IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF _F l._____

COUNTY OF _ORANGE_

      Personally appeared before me, the undersigned authority in and for said county and state, on this _21st_ day of _Dec._____, 2011, within my jurisdiction, the within DON B. SAUNDERS, who acknowledged that he executed the above and foregoing instrument.

      IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Kellie P. Lallier_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

Notary Public State of Florida
Kellie P Lallier
My Commission EE111246
Expires 11/18/2013

My Commission Expires: _11/18/13_

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF _Louisiana_

~~Parish~~
~~COUNTY~~ OF _Bossier_

    I, _Tommye H. Gray_, a notary public in and for said County and State, hereby certify that Ronald L. Sawyer, whose name as President of SAWYER DRILLING & SERVICE INC., a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said corporation.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                              NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _With Life_

OFFICIAL SEAL
TOMMYE H. GRAY
NOTARY PUBLIC NO. 48944
STATE OF LOUISIANA
PARISH OF BOSSIER
My Commission is for Life

STATE OF _____

COUNTY OF _____

    I, _____, a notary public in and for said County and State, hereby certify that James M. Seneff, Jr., whose name as _____ of JMS OIL & GAS HOLDINGS, L.L.C., a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                _____
                          NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

    I, _____, a notary public in and for said County and State, hereby certify that M. Robin Smith, whose name as President of RYCO EXPLORATION, LLC, a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                _____
                          NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF _____

COUNTY OF _____

      I, _____, a notary public in and for said County and State, hereby certify that Ronald L. Sawyer, whose name as President of SAWYER DRILLING & SERVICE INC., a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said corporation.

      IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _Florida_____

COUNTY OF _Orange____

      I, _Cynara Gilreath_____, a notary public in and for said County and State, hereby certify that James M. Seneff, Jr., whose name as _____ of JMS OIL & GAS HOLDINGS, L.L.C., a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

      IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Notary Public State of Florida
Cynara Gilreath
My Commission EE064054
Expires 04/08/2015

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _4/8/2015_

STATE OF _____

COUNTY OF _____

      I, _____, a notary public in and for said County and State, hereby certify that M. Robin Smith, whose name as President of RYCO EXPLORATION, LLC, a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

      IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF _____

COUNTY OF _____

     I, _____, a notary public in and for said County and State, hereby certify that Ronald L. Sawyer, whose name as President of SAWYER DRILLING & SERVICE INC., a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said corporation.

     IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                               _____
                                    NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF _____

COUNTY OF _____

     I, _____, a notary public in and for said County and State, hereby certify that James M. Seneff, Jr., whose name as _____ of JMS OIL & GAS HOLDINGS, L.L.C., a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

     IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                               _____
                                    NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF LOUISIANA

~~COUNTY~~ PARISH OF CADDO

     I, Vickie U. Kelly _____, a notary public in and for said County and State, hereby certify that M. Robin Smith, whose name as President of RYCO EXPLORATION, LLC, a limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

     IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                           Vickie U. Kelly
                                    NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: worth life

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF _Louisiana_

COUNTY OF _Bossier_

I, _Suzette Piper_, a notary public in and for said County and State, hereby certify that Alan Sugar, whose name as President of SUGAR OIL PROPERTIES, LP, a limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said limited partnership.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _with life_

SUZETTE PIPER
NOTARY ID # 87385
STATE OF LOUISIANA
MY COMMISSION IS FOR LIFE

STATE OF _____

COUNTY OF _____

Personally appeared before me, the undersigned authority in and for said county and state, on this _____ day of _____, 2011, within my jurisdiction, the within LEONARD E. WILLIAMS, who acknowledged that he executed the above and foregoing instrument.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

Personally appeared before me, the undersigned authority in and for said county and state, on this _____ day of _____, 2011, within my jurisdiction, the within EDWARD L. YARBOROUGH, JR., who acknowledged that he executed the above and foregoing instrument.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

      I, _____, a notary public in and for said County and State, hereby certify that Alan Sugar, whose name as President of SUGAR OIL PROPERTIES, LP, a limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said limited partnership.

      IN WITNESS WHEREOF, I hereunto set my hand and official seal.


_____
NOTARY PUBLIC


[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF _Florida_

COUNTY OF _Orange_

      Personally appeared before me, the undersigned authority in and for said county and state, on this _19_ day of _December_, 2011, within my jurisdiction, the within LEONARD E. WILLIAMS, who acknowledged that he executed the above and foregoing instrument.

      IN WITNESS WHEREOF, I hereunto set my hand and official seal.


_____
NOTARY PUBLIC


[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

DEBRA L. GOSNEY
MY COMMISSION # EE 109250
EXPIRES: August 27, 2015
Bonded Thru Notary Public Underwriters


STATE OF _____

COUNTY OF _____

      Personally appeared before me, the undersigned authority in and for said county and state, on this _____ day of _____, 2011, within my jurisdiction, the within EDWARD L. YARBOROUGH, JR., who acknowledged that he executed the above and foregoing instrument.

      IN WITNESS WHEREOF, I hereunto set my hand and official seal.


_____
NOTARY PUBLIC


[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF _____

COUNTY OF _____

       I, _____, a notary public in and for said County and State, hereby certify that Alan Sugar, whose name as President of SUGAR OIL PROPERTIES, LP, a limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said limited partnership.

       IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                                  _____
                                      NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

       Personally appeared before me, the undersigned authority in and for said county and state, on this _____ day of _____, 2011, within my jurisdiction, the within LEONARD E. WILLIAMS, who acknowledged that he executed the above and foregoing instrument.

       IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                                    _____
                                      NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _Louisiana_

COUNTY OF _Bossier_

       Personally appeared before me, the undersigned authority in and for said county and state, on this _21_ day of _December_, 2011, within my jurisdiction, the within EDWARD L. YARBØROUGH, JR., who acknowledged that he executed the above and foregoing instrument.

       IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                        _Diane Marie Fong_
                                    NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

                         Diane Marie Fong, Notary Public ID # 2731
                         P. O. Box 7665 - Shreveport, LA 71137-7665
                         Commissioned in Caddo Parish, Louisiana
                              Commission is for life.

STATE OF _Louisiana_

~~COUNTY~~ Parish OF _Caddo_

16th Personally appeared before me, the undersigned authority in and for said county and state, on this _____ day of _December_____, 2011, within my jurisdiction, the within TOM YOUNGBLOOD, who acknowledged that he executed the above and foregoing instrument.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _for life___

**Lori C. Schildt**
· **Notary No. 2271**

STATE OF _____

COUNTY OF _____

Personally appeared before me, the undersigned authority in and for said county and state, on this _____ day of _____, 2011, within my jurisdiction, the within LINDA DARLENE KELLY HALL, who acknowledged that he executed the above and foregoing instrument.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF _____

~~COUNTY~~ OF _____

      Personally appeared before me, the undersigned authority in and for said county and state, on this _____ day of _____ , 2011, within my jurisdiction, the within TOM YOUNGBLOOD, who acknowledged that he executed the above and foregoing instrument.

      IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF Louisiana

~~COUNTY~~ Parish OF CAddo

      Personally appeared before me, the undersigned authority in and for said county and state, on this 21st day of December _____, 2011, within my jurisdiction, the within LINDA DARLENE KELLY HALL, who acknowledged that he executed the above and foregoing instrument.

      IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Beth J. Stephens
NOTARY PUBLIC
#5726

[AFFIX NOTARIAL SEAL]

My Commission Expires: at death

STATE OF _____

COUNTY OF _____

      Personally appeared before me, the undersigned authority in and for said county and state, on this _____ day of _____, 2011, within my jurisdiction, the within TOM YOUNGBLOOD, who acknowledged that he executed the above and foregoing instrument.

      IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
              NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

      Personally appeared before me, the undersigned authority in and for said county and state, on this _____ day of _____, 2011, within my jurisdiction, the within LINDA DARLENE KELLY HALL, who acknowledged that he executed the above and foregoing instrument.

      IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
              NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF *Mississippi*

COUNTY OF *Rankin*

      I, *Patricia Ann Griffith*, a notary public in and for said County and State, hereby certify that Ruth H. Wallace, whose name as *member* of WALLACE AND WALLACE, LLC, a limited liability corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said limited liability corporation.

      IN WITNESS WHEREOF, I hereunto set my hand and official seal.

*Patricia Ann Griffith*
              NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: *4-24-13*

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF _MS_____

COUNTY OF _Rankin_____

I, _Catherine M Scott_, a notary public in and for said County and State, hereby certify that Richard K. Hall, whose name as _Trustee_ of R.K. AND R. M. HALL REVOCABLE TRUST, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said revocable trust.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Catherine M Scott_
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _09/20/14_

STATE OF _____

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Alvin Byrd, whose name as _____ of SUMMIT, LLC, a limited liability corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said limited liability corporation.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF _____

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Leanne D. Ford, whose name as _____ of LEANNE D. FORD, LLC, a limited liability corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said limited liability corporation.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF _____

COUNTY OF _____

    I, _____, a notary public in and for said County and State, hereby certify that Richard K. Hall, whose name as _____ of R.K. AND R. M. HALL REVOCABLE TRUST, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said revocable trust.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                        _____
                              NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF _Miss_

COUNTY OF _Hinds_

    I, _Sheila D. McDaniel_, a notary public in and for said County and State, hereby certify that Alvin Byrd, whose name as _Alvin Byrd_ of SUMMIT, LLC, a limited liability corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said limited liability corporation.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                        _____
                              NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF _____

COUNTY OF _____

    I, _____, a notary public in and for said County and State, hereby certify that Leanne D. Ford, whose name as _____ of LEANNE D. FORD, LLC, a limited liability corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said limited liability corporation.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                        _____
                              NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

Boothe Casey 29-6#1 Pruet/Midroc JOA

STATE OF _____

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Richard K. Hall, whose name as _____ of R.K. AND R. M. HALL REVOCABLE TRUST, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said revocable trust.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF _____

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Alvin Byrd, whose name as _____ of SUMMIT, LLC, a limited liability corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said limited liability corporation.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF _MISSISSIPPI_

COUNTY OF _HINDS_

I, _PAULA W. DENLEY_, a notary public in and for said County and State, hereby certify that Leanne D. Ford, whose name as _MANAGER_ of LEANNE D. FORD, LLC, a limited liability corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, she, as such officer and with full authority, executed the same for and as the act of said limited liability corporation.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Paula W. Denley_
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _04/05/13_

STATE OF MISSISSIPPI
NOTARY PUBLIC
ID # 62580
PAULA W. DENLEY
Commission Expires
April 5, 2013
HINDS COUNTY

Boothe Casey 29-6#1 Pruet/Midroc JOA

EXHIBIT "A"

Attached to and made a part of that certain Operating Agreement dated December 7, 2011 by and between SKLAR EXPLORATION COMPANY, as Operator, and SKLARCO L.L.C. et al., as Non-Operators

1)   **Identification of lands subject ot this agreement:**

Contract Area

TOWNSHIP 4 NORTH, RANGE 13 EAST
CONECUH COUNTY, ALABAMA

Section 29: Northwest Quarter (NW/4).

**And being further described as all lands, oil and gas leasehold interest and oil and gas interests lying within the red boundary as shown on the plat designated as Exhibit "A-2".**

2)   **Restrictions, if any, as to depths, formations, or substances:**

There are no restrictions except as may be provided for in any lease or contract subject to this Operating Agreement.

3)   **Decimal Interest and names of Parties to this Agreement:**

a.   The following parties (who are sometimes referred to in this Exhibit "A", in the Operating Agreement to which this exhibit is attached and other exhibits thereto as the "Sklar Parties") own Oil, Gas and Mineral Lease Nos. 1 through 19 described in Exhibit "A-1" in the following fractional interests:

| Owners | Interest |
|---|---|
| Bundero Investment Company, L.L.C. | 0.01142858 |
| Craft Exploration Company L.L.C. | 0.01142857 |
| Dickson Oil & Gas, LLC | 0.01142858 |
| Fant Energy Limited | 0.11428571 |
| Fleet Howell | 0.05714286 |
| JJS Working Interests LLC | 0.13628571 |
| Resource Ventures LLC | 0.00142857 |
| Kudzu Oil Properties, LLC | 0.02285714 |
| Landmark Exploration, LLC | 0.02285714 |
| Marksco, L.L.C. | 0.02285714 |
| McCombs Energy, Ltd. | 0.30285714 |
| Pickens Financial Group, LLC | 0.05714286 |
| Sklarco, LLC | 0.17657143 |
| Tauber Exploration & Production Company | 0.02857143 |
| Tiembo Ltd. | 0.02285714 |
| **TOTAL FOR LEASE NOS. 1-19** | **1.00000000** |

b.   The following parties (who are sometimes referred to in this Exhibit "A", in the Operating Agreement to which this exhibit is attached and other exhibits thereto as the "Pruet Parties") own Oil, Gas and Mineral Lease Nos. 20 and 21 described in Exhibit "A-1" in the following fractional interests:

| Owners | Interest |
|---|---|
| Pruet Production Co. | 0.01000000 |
| RAB Oil & Gas Holdings, LLC | 0.00400000 |
| DBC Resources, LP | 0.07297000 |
| DCOD, LLC | 0.06375000 |
| Bobby Coleman | 0.01000000 |
| Four D LLC | 0.00800000 |
| Harkness A. Duncan Family Trust | 0.00800000 |
| Fiddler Investments | 0.02125000 |
| Franks Exploration Company, LLC | 0.09800000 |
| GJR Investments, Inc. | 0.00800000 |
| JCE Galbraith Oil & Gas, L.L.C. | 0.01000000 |
| Gaston Oil Company | 0.02250000 |
| Hall Management, LLC | 0.01000000 |
| Hanson Operating Co., Inc. | 0.08000000 |
| J & A Harris, LP | 0.08097000 |
| Harris Oil and Land Corporation | 0.01250000 |
| Hughes 2000 LLC | 0.13377000 |
| HughesOil, Inc. | 0.14700000 |
| M. Johnson Investment Partnership I, LLLP | 0.00800000 |
| KMR Investments, LLC | 0.02940000 |
| W. D. Mounger | 0.01000000 |
| Pam-Lin Corporation | 0.01500000 |
| Petroleum Investments, Inc. | 0.01000000 |
| Dan B. Saunders Trust | 0.00800000 |
| Sawyer Drilling & Service Inc. | 0.02000000 |
| JMS Oil & Gas Holdings, LLC | 0.00400000 |
| RYCO Exploration, LLC | 0.01166000 |
| Sugar Oil Properties, LP | 0.03000000 |
| Leonard E. Williams | 0.00800000 |
| Edward L. Yarborough, Jr. | 0.00200000 |
| Tom Youngblood | 0.02000000 |
| Linda Darlene Kelly Hall | 0.01000000 |
| Wallace and Wallace, L.L.C. | 0.00367500 |
| R.K. and R.M. Hall Revocable Trust | 0.00367500 |
| Summit, LLC | 0.00367500 |
| Leanne D. Ford, LLC | 0.00220500 |
| **TOTAL FOR LEASE NOS. 4 through 13** | 1.00000000 |

4) <u>Oil and gas lease and/or oil and gas interests subject to this agreement:</u>
   See Exhibit "A-1" Description of Leases.

5) <u>Addresses of parties for notice purposes:</u>

   **Sklar Exploration Company L.L.C., Agent and Nominee for the Sklar Parties**
   **401 Edwards Street, Suite 1601**
   **Shreveport, Louisiana   71101**

   **Sklarco, L.L.C.**
   **401 Edwards Street, Suite 1601**
   **Shreveport, LA   71101**

   **Bundero Investment Company, L.L.C.**
   **333 Texas Street, Suite 300**
   **Shreveport, Louisiana   71101**

   **Craft Exploration Company L.L.C.**
   **325 Lakeshire Parkway**
   **Canton, MS   39046**

Dickson Oil & Gas, LLC
P. O. Box 52479
Shreveport, Louisiana  71135

Fant Energy Limited
5800 Westview Drive
Houston, Texas  77055

Fleet Howell
416 Travis Street, Suite 715
Shreveport, Louisiana  71101

JJS Working Interests LLC
4295 San Felipe, Suite 207
Houston, Texas  77027

Resource Ventures LLC
8369 South Park Lane, Suite B
Littleton, CO 80120

Kudzu Oil Properties, LLC
300 Concourse Blvd., Suite 101
Ridgeland, Mississippi  39157

Landmark Exploration, LLC
P. O. Box 12004
Jackson, MS  39236

Marksco, L.L.C.
333 Texas Street, Suite 1050
Shreveport, Louisiana  71101

McCombs Energy, Ltd.
5599 San Felipe Street, Suite 1200
Houston, Texas  77056-2721

Pickens Financial Group, LLC
8499 Greenville Avenue, Suite 105
Dallas, Texas 75231-2417

Tauber Exploration & Production Company
55 Waugh Drive, Suite 601
Houston, TX 77007

Tiembo Ltd.
P. O. Box 270415
Houston, Texas  77277-0415

Pruet Production Co.
217 W. Capitol Street, Suite 201
Jackson, Mississippi 39201

Midroc Operating Company
3141 Hood Street
Dallas, Texas  75219

RAB Oil & Gas Holdings, LLC
P. O. Box 4920
Orlando, Florida  32802-4920

DBC Resources, LP
P. O. Box 191407
Dallas, Texas  75219-1407

DCOD, LLC
16250 Dallas North Parkway
Dallas, Texas  75248

Bobby Coleman
4600 Greenville Avenue, Suite 128
Dallas, Texas  75206

Four D LLC
P. O. Box 2444
Durango, CO  81302

Harkness A. Duncan Family Trust
806 Turnbull Ave., Suite 104
Altamonte Springs, FL  32701

Fiddler Investments
4601 Langland Rd., Suite 107
Dallas, Texas  75244

Franks Exploration Company, LLC
P. O. Box 7665
Shreveport, Louisiana  71137-7665

GJR Investments, Inc.
100 S. Eola Drive, #PH115
Orlando, FL 32801

JCE Galbraith Oil & Gas, L.L.C.
2032 Alameda Avenue
Orlando, Florida  32804

Gaston Oil Company
9306 Milbank
Shreveport, Louisiana  71115

Hall Management, LLC
4913 Oak Point Drive
Shreveport, Louisiana  71107

Hanson Operating Co., Inc.
P. O. Box 1515
Roswell, NM  88202-1515

J & A Harris, LP
333 Texas Street, Suite 1414
Shreveport, Louisiana  71101-3679

Harris Oil and Land Corporation
333 Texas Street, Suite 1414
Shreveport, Louisiana  71101-3679

Hughes 2000 LLC / Mirror Lake Office Plaza
2829 Lakeland Drive, #1670
Flowood, MS  39232

Hughes Oil, Inc. / Mirror Lake Office Plaza
2829 Lakeland Drive, #1670
Flowood, MS  39232

Dr. Melvin J. and Marsha Johnson
60 West Gore
Orlando, Florida  32806

KMR Investments, LLC
P. O. Box 298
Arcadia, Louisiana  71001

W. D. Mounger
200 E. Capitol St., Suite 1601
Jackson, MS  39201

Pam-Lin Corporation
P. O. Box 191407
Dallas, Texas  75219-1407

Petroleum Investments, Inc. / Mid-South Towers
416 Travis Street, Suite 612
Shreveport, LA  71101-5584

Don B. Saunders
1721 Spring Lake Dr.
Orlando, FL  32804

Sawyer Drilling & Service, Inc.
P.O. Box 5275
Bossier City, Louisiana  71111-5275

JMS Oil & Gas Holdings, LLC
P. O. Box 4920
Orlando, FL  32802-4920

RYCO Exploration, LLC
333 Texas St., Suite 1414
Shreveport, Louisiana  71101-3679

Sugar Oil Properties, LP
625 Market St., Suite 100
Shreveport, Louisiana  71101

Leonard E. Williams
2518 Norfolk Road
Orlando, FL  32803

Edward L. Yarborough, Jr.
P. O. Box 11
Belcher, LA  71004

Tom Youngblood
P. O. Box 5926
Shreveport, Louisiana  71135-5926

Linda Darlene Kelly Hall
3121 Fern Ave. #117
Shreveport, LA 71105

R.K. and R.M. Hall Revocable
Trust
116 Timbercrest Lane
Brandon, Mississippi 39047
Attn: Richard K. Hall


Leanne D. Ford LLC
742 Oakmont Parkway
Ridgeland, Mississippi 39157
Attn: Leanne D. Ford


Summit LLC
229 Dogwood Lane
Madison, Mississippi 39110
Attn: Alvin Byrd


Wallace & Wallace, LLC
6163 Kay Brook Drive
Byram, Mississippi 39272
Attn: Ruth Wallace

## EXHIBIT "A-1"

Attached to and made a part of that certain Operating Agreement dated December 7, 2011, by and between Sklar Exploration Company, L.L.C., as Operator, and Sklarco LLC, and BSAP I, Inc as Non-Operator.

## DESCRIPTION OF LEASES

### SKLAR LEASES

1.     Oil, Gas And Mineral Lease dated August 11, 2011 by and between John G. Ralls, Sr., Life Tenant, and Lisa Ellen Ralls, Remainderman, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 2011, Page 3806 of the Records of the Probate Judge of Conecuh County, Alabama.

2.     Oil, Gas And Mineral Lease dated August 10, 2011 by and between John G. Ralls, Sr., Life Tenant, and Lisa Ellen Ralls, Remainderman, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 2011, Page 4113 of the Records of the Probate Judge of Conecuh County, Alabama.

3.     Oil and Gas Lease dated March 1, 2011 by and between Black Stone Natural Resources I, L.P., as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded by Memorandum of Oil and Gas Lease in Book 2011, Page 2112 of the Records of the Probate Judge of Conecuh County, Alabama

4.     Oil, Gas And Mineral Lease dated September 9, 2011 by and between C. Kelly Johnson, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 2011, Page ___ of the Records of the Probate Judge of Conecuh County, Alabama.

5.     Oil, Gas And Mineral Lease dated September 28, 2011 by and between Susan V. Owens Harris, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 2011, Page 5262 of the Records of the Probate Judge of Conecuh County, Alabama.

6.     Oil, Gas And Mineral Lease dated September 28, 2011 by and between Kathy O. Sanders, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 2011, Page 5260 of the Records of the Probate Judge of Conecuh County, Alabama.

7.     Oil, Gas And Mineral Lease dated September 28, 2011 by and between Essie Mae Stinson, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 2011, Page 5200 of the Records of the Probate Judge of Conecuh County, Alabama.

8.     Oil, Gas And Mineral Lease dated September 27, 2011 by and between Harold Hamiter, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 2011, Page 5198 of the Records of the Probate Judge of Conecuh County, Alabama.

9.     Oil, Gas And Mineral Lease dated October 5, 2011 by and between Susie Kirksey, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 2011, Page 5192 of the Records of the Probate Judge of Conecuh County, Alabama.

10.     Oil, Gas And Mineral Lease dated September 28, 2011 by and between Edward Smith, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 2011, Page 5194 of the Records of the Probate Judge of Conecuh County, Alabama.

11.     Oil, Gas And Mineral Lease dated September 28, 2011 by and between Tom Malloy, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 2011, Page 5206 of the Records of the Probate Judge of Conecuh County, Alabama.

12.    Oil, Gas And Mineral Lease dated October 5, 2011 by and between as Earnestine Raines, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 2011, Page 5204 of the Records of the Probate Judge of Conecuh County, Alabama.

13.    Oil, Gas And Mineral Lease dated September 28, 2011 by and between Gregory O. Carter, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 2011, Page 5196 of the Records of the Probate Judge of Conecuh County, Alabama.

14.    Oil, Gas And Mineral Lease dated September 19, 2011 by and between Amaryllis E. Davis, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 2011, Page 4756 of the Records of the Probate Judge of Conecuh County, Alabama.

15.    Oil, Gas And Mineral Lease dated September 23, 2011 by and between Riley N. Kelly, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 2011, Page 4758 of the Records of the Probate Judge of Conecuh County, Alabama.

16.    Oil, Gas And Mineral Lease dated October 1, 2011 by and between John S. Cook, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 2011, Page 4774 of the Records of the Probate Judge of Conecuh County, Alabama.

17.    Oil, Gas And Mineral Lease dated October 1, 2011 by and between Anne T. Cook, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 2011, Page 4772 of the Records of the Probate Judge of Conecuh County, Alabama.

18.    Oil, Gas And Mineral Lease dated September 28, 2011 by and between Kathleen H. Adams, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 2011, Page 5202 of the Records of the Probate Judge of Conecuh County, Alabama.

19.    Oil, Gas And Mineral Lease dated September 28, 2011 by and between Evelyn Lanier, as Lessor, in favor of Sklarco L.L.C., as Lessee, recorded in Book 2011, Page 5208 of the Records of the Probate Judge of Conecuh County, Alabama.


**PRUET LEASES**

20.    Oil, Gas and Mineral Lease dated March 18, 2011, by and between Loree R. Hamiter, Harold Hamiter, and James E. Hamiter, as Lessor, and Donald L. Clark, as Lessee, recorded in Book 2011, page 1022 of the records of the Office of the Judge of Probate of Conecuh County, Alabama.

21.    Oil, Gas and Mineral Lease dated April 28, 2011, by and between Frank T. Salter, as Lessor, and Donald L. Clark, as Lessee, recorded in Book 2011, page 1958 of the records of the Office of the Judge of Probate of Conecuh County, Alabama.


**INSOFAR AND ONLY INSOFAR AS SAID OIL, GAS AND MINERAL LEASES COVER ACREAGE LYING WITHIN THE NORTHWEST QUARTER (NW/4) OF SECTION 29, TOWNSHIP 4 NORTH, RANGE 13 EAST, CONECUH COUNTY, ALABAMA.**

EXHIBIT "A-2"

Attached to and made a part of that certain Operating Agreement dated December 7, 2011 by and between SKLAR EXPLORATION COMPANY, as Operator, and SKLARCO L.L.C. et al., as Non-Operators



DRILLING UNIT: NW/4  ±160 Ac.

NOTE:
Coordinates Based On Transverse Mercator—Alabama West Zone NAD27.

WELL LOCATION
FOR
**SKLAR EXPLORATION COMPANY L.L.C.**
SECTION 29, T4N – R13E
CONECUH COUNTY, ALABAMA

BY

ENGINEERING SERVICE – MOBILE, ALABAMA

MARCH 2, 2011  REV. 7-15-11  REV. 7-28-11
REV. 11-28-11  REV. 12-6-11

3079/16;3082/34,35;3083/59,60      11M—5035      SKLAR161      A7261

EXHIBIT "B"

Producers 88 (9/70)—Paid Up (SP 4-75)
With Pooling Provision
Mississippi-Alabama-Florida

HEDERMAN BROS., RIDGELAND, MS

# OIL, GAS AND MINERAL LEASE

THIS AGREEMENT made this _____ day of _____ 20 _____ between

_____

_____

_____

_____

lessor (whether one or more), whose address is: _____

and _____, lessee, WITNESSETH:

1. Lessor, in consideration of _____ Dollars, receipt of which is hereby acknowledged, and of the covenants and agreements of lessee hereinafter contained, does hereby grant, lease and let unto lessee the land covered hereby for the purposes and with the exclusive right of exploring, drilling, mining and operating for, producing and owning oil, gas (including carbon dioxide), sulphur and all other minerals (whether or not similar to those mentioned), together with the right to make surveys on said land, lay pipe lines, establish and utilize facilities for surface or subsurface disposal of salt water, construct roads and bridges, dig canals, build tanks, power stations, power lines, telephone lines, employee houses and other structures on said land, necessary or useful in lessee's operations in exploring, drilling for, producing, treating, storing and transporting minerals produced from the land covered hereby or any other land adjacent thereto. The land covered hereby, herein called "said land", is located in the County of _____, State of _____, and is described as follows:

This lease also covers and includes, in addition to that above described, all land, if any, contiguous or adjacent to the land above described and (a) owned or claimed by lessor by limitation, prescription, possession, reversion or unrecorded instrument or (b) as to which lessor has a preference right of acquisition. Lessor agrees to execute any supplemental instrument requested by lessee for a more complete or accurate description of said land. For the purpose of determining the amount of any bonus or other payment hereunder, said land shall be deemed to contain _____ acres, whether actually containing more or less, and the above recital of acreage in any tract shall be deemed to be the true acreage thereof. Lessee accepts the bonus as lump sum consideration for this lease and all rights, and options hereunder.

2. Unless sooner terminated or longer kept in force under other provisions hereof, this lease shall remain in force for a term of ten (10) years from the date hereof, hereinafter called "primary term", and so long thereafter as operations, as hereinafter defined, are conducted upon said land with no cessation for more than ninety (90) consecutive days.

3. As royalty, lessee covenants and agrees: (a) To deliver to the credit of lessor, in the pipe line to which lessee may connect its wells, the equal one-eighth part of all oil produced and saved by lessee from said land, or from time to time, at the option of lessee, to pay lessor the average posted market price of such one-eighth part of such oil at the wells as of the day it is run to the pipe line or storage tanks, lessor's interest, in either case, to bear one-eighth of the cost of treating oil to render it marketable pipe line oil; (b) To pay lessor on gas and casinghead gas produced from said land (1) when sold by lessee, one-eighth of the amount realized by lessee, computed at the mouth of the well, or (2) when used by lessee off said land or in the manufacture of gasoline or other products, the market value, at the mouth of the well, of one-eighth of such gas and casinghead gas; (c) To pay lessor on all other minerals mined and marketed or utilized by lessee from said land, one-tenth either in kind or value at the well or mine at lessee's election, except that on sulphur mined and marketed the royalty shall be one dollar ($1.00) per long ton. If, at the expiration of the primary term or at any time or times thereafter, there is any well on said land or on lands with which said land or any portion thereof has been pooled, capable of producing gas or any other mineral covered hereby, and all such wells are shut-in, this lease shall, nevertheless, continue in force as though operations were being conducted on said land for so long as said wells are shut-in, and thereafter this lease may be continued in force as if no shut-in had occurred. Lessee covenants and agrees to use reasonable diligence to produce, utilize, or market the minerals capable of being produced from said wells, but in the exercise of such diligence, lessee shall not be obligated to furnish facilities other than well facilities and ordinary lease facilities of flow lines, separators, and lease tank, and shall not be required to settle labor trouble or to market gas upon terms unacceptable to lessee. If, at any time or times after the expiration of the primary term, all such wells are shut-in for a period of ninety consecutive days, and during such time there are no operations on said land, then at or before the expiration of said ninety day period, lessee shall pay or tender, by check or draft of lessee, as royalty, a sum equal to one dollar ($1.00) for each acre of land then covered hereby. Lessee shall make like payments or tenders at or before the end of each anniversary of the expiration of said ninety day period if upon such anniversary this lease is being continued in force solely by reason of the provisions of this sub-paragraph. Each such payment or tender shall be made to the parties who at the time of payment would be entitled to receive the royalties which would be paid under this lease if the wells were producing, or may be deposited to such parties credit in the _____ Bank

at _____ or its successors, which shall continue as the depositories, regardless of changes in the ownership of shut-in royalty. If at any time that lessee pays or tenders shut-in royalty, two or more parties are, or claim to be, entitled to receive same, lessee may, in lieu of any other method of payment herein provided, pay or tender such shut-in royalty, in the manner above specified, either jointly to such parties or separately to each in accordance with their respective ownership thereof, as lessee may elect. Any payment hereunder may be made by check or draft of lessee deposited in the mail or delivered to the party entitled to receive payment or to a depository bank provided for above on or before the last date for payment. Nothing herein shall impair lessee's right to release as provided in paragraph 5 hereof. In the event of assignment of this lease in whole or in part, liability for payment hereunder shall rest exclusively on the then owner or owners of this lease, severally as to acreage owned by each.

4. Lessee is hereby granted the right, at its option, to pool or unitize all or any part of said land and of this lease as to any or all minerals or horizons thereunder, with other lands, lease or leases, or portion or portions thereof, so as to establish units containing not more than 80 surface acres plus 10% acreage tolerance; provided, however, a unit may be established or an existing unit may be enlarged to contain not more than 640 acres plus 10% acreage tolerance, if unitized only as to gas or only as to gas and liquid hydrocarbons (condensate) which are not a liquid in the subsurface reservoir. If larger units are required, under any governmental rule or order, for the drilling or operation of a well at a regular location, or for obtaining maximum allowable from any well to be drilled, drilling, or already drilled, any such unit may be established or enlarged, to conform to the size required by such governmental order or rule. Lessee shall exercise said option as to each desired unit by executing an instrument identifying such unit and filing it for record in the public office in which this lease is recorded. Each of said options may be exercised by lessee from time to time, and whether before or after production has been established either on said land or on the portion of said land included in the unit or on other land unitized therewith and any such unit may include any well to be drilled, being drilled or already completed. A unit established hereunder shall be valid and effective for all purposes of this lease even though there may be land or mineral, royalty or leasehold interests in land within the unit which are not pooled or unitized. Any operations conducted on any part of such unitized land shall be considered, for all purposes, except the payment of royalty, operations conducted under this lease. There shall be allocated to the land covered by this lease included in any such unit that proportion of the total production of unitized minerals from wells in the unit, after deducting any used in lease or unit operations, which the number of surface acres in the land covered by this lease included in the unit bears to the total number of surface acres in the unit. The production so allocated shall be considered for all purposes, including the payment or delivery of royalty, overriding royalty, and any other payments out of production, to be the entire production of unitized minerals from the portion of said land covered hereby and not included in such unit in the same manner as though produced from said land under the terms of this lease. The owner of the reversionary estate of any term royalty or mineral estate agrees that the accrual of royalties pursuant to this paragraph or of shut-in royalties from a well on the unit shall satisfy any limitation of term requiring production of oil or gas. The formation of such unit shall not have the effect of changing the ownership of any shut-in production royalty which may become payable under this lease. Neither shall it impair the right of lessee to release as provided in paragraph 5 hereof, except that lessee may not so release as to lands within a unit while there are operations thereon for unitized minerals unless all pooled leases are released as to lands within the unit. Lessee may diesolve any unit established hereunder by filing for record in the public office where this lease is recorded a declaration to that effect, if at that time no operations are being conducted thereon for unitized minerals. Subject to the provisions of this paragraph 4, a unit once established hereunder shall remain in force so long as any lease subject thereto shall remain in force. A unit may be so established, modified or dissolved during the life of this lease.

5. Lessee may at any time and from time to time execute and deliver to lessor or file for record a release or releases of this lease as to any part or all of said land or of any mineral or horizon thereunder, and thereby be relieved of all obligations as to the released acreage or interest.

6. This is a PAID-UP LEASE. In consideration of the down cash payment, Lessor agrees that Lessee shall not be obligated except as otherwise provided herein, to commence or continue any operations during the primary term. Whenever used in this lease the word "operations" shall mean operations for and any of the following: drilling, testing, completing, reworking, recompleting, deepening, plugging back or repairing of a well in search for or an endeavor to obtain production of oil, gas, sulphur or other minerals, excavating a mine, production of oil, gas, sulphur or other mineral, whether or not in paying quantities.

7. Lessee shall have the use, free from royalty, of water, other than from lessor's water wells, and of oil and gas produced from said land in all operations hereunder. Lessee shall have the right at any time to remove all machinery and fixtures placed on said land, including the right to draw and remove casing. No well shall be drilled nearer than 200 feet to the house or barn now on said land without the consent of the lessor. Lessee shall pay for damages caused by its operations to growing crops and timber on said land.

EXHIBIT "B", continued

8. The rights and estate of any party hereto may be assigned from time to time in whole or in part and as to any mineral or horizon. All of the covenants, obligations, and considerations of this lease shall extend to and be binding upon the parties hereto, their heirs, successors, assigns, and successive assigns. No change or division in the ownership of said land, royalties, or other moneys, or any part thereof, howsoever effected, shall increase the obligations or diminish the rights of lessee, including, but not limited to, the location and drilling of wells and the measurement of production. Notwithstanding any other actual or constructive knowledge or notice thereof of or to lessee, its successors or assigns, no change or division in the ownership of said land or of the royalties, or other moneys, or the right to receive the same, howsoever effected, shall be binding upon the then record owner of this lease until thirty (30) days after there has been furnished to such record owner at his or its principal place of business by lessor or lessor's heirs, successors, or assigns, notice of such change or division, supported by either originals or duly certified copies of the instruments which have been properly filed for record and which evidence such change or division, and of such court records and proceedings, transcripts, or other documents as shall be necessary in the opinion of such record owner to establish the validity of such change or division. If any such change in ownership occurs by reason of the death of the owner, lessee may, nevertheless, pay or tender such royalties, or other moneys, or part thereof, to the credit of the decedent in a depository bank provided for above.

9. In the event lessor considers that lessee has not complied with all its obligations hereunder, both express and implied, lessor shall notify lessee in writing, setting out specifically in what respects lessee has breached this contract. Lessee shall then have sixty (60) days after receipt of said notice within which to meet or commence to meet all or any part of the breaches alleged by lessor. The service of said notice shall be precedent to the bringing of any action by lessor on said lease for any cause, and no such action shall be brought until the lapse of sixty (60) days after service of such notice on lessee. Neither the service of said notice nor the doing of any acts by lessee aimed to meet all or any of the alleged breaches shall be deemed an admission or presumption that lessee has failed to perform all its obligations hereunder. Should it be asserted in any notice given to the lessee under the provisions of this paragraph that lessee has failed to comply with any implied obligation or covenant hereof, this lease shall not be subject to cancellation for any such cause except after final judicial ascertainment that such failure exists and lessee has then been afforded a reasonable time to prevent cancellation by complying with and discharging its obligations as to which lessee has been judicially determined to be in default. If this lease is cancelled for any cause, it shall nevertheless remain in force and effect as to (1) sufficient acreage around each well as to which there are operations to constitute a drilling or maximum allowable unit under applicable governmental regulations, (but in no event less than forty acres), such acreage to be designated by lessee as nearly as practicable in the form of a square centered at the well, or in such shape as then existing spacing rules require; and (2) any part of said land included in a pooled unit on which there are operations. Lessee shall also have such easements on said land as are necessary to operations on the acreage so retained.

10. Lessor hereby warrants and agrees to defend title to said land against the claims of all persons whomsoever. Lessor's rights and interests hereunder shall be charged primarily with any mortgages, taxes or other liens, or interest and other charges on said land, but lessor agrees that lessee shall have the right at any time to pay or reduce same for lessor, either before or after maturity, and be subrogated to the rights of the holder thereof and to deduct amounts so paid from royalties or other payments payable or which may become payable to lessor and/or assigns under this lease. Lessee is hereby given the right to acquire for its own benefit, deeds, leases, or assignments covering any interest or claim in said land which lessee or any other party contends is outstanding and not covered hereby and even though such outstanding interest or claim be invalid or adverse to lessor. If this lease covers a less interest in the oil, gas, sulphur, or other minerals in all or any part of said land than the entire and undivided fee simple estate (whether lessor's interest is herein specified or not), or no interest therein, then the royalties, and other moneys accruing from any part as to which this lease covers less than such full interest, shall be paid only in the proportion which the interest therein, if any, covered by this lease, bears to the whole and undivided fee simple estate therein. All royalty interest covered by this lease (whether or not owned by lessor) shall be paid out of the royalty herein provided. This lease shall be binding upon each party who executes it without regard to whether it is executed by all those named herein as lessor.

11. If, while this lease is in force, at, or after the expiration of the primary term hereof, it is not being continued in force by reason of the shut-in well provisions of paragraph 3 hereof, and lessee is not conducting operations on said land by reason of (1) any law, order, rule or regulation, (whether or not subsequently determined to be invalid) or (2) any other cause, whether similar or dissimilar, (except financial) beyond the reasonable control of lessee, the primary term hereof shall be extended until the first anniversary date hereof occurring ninety (90) or more days following the removal of such delaying cause, and this lease may be extended thereafter by operations as if such delay had not occurred.

12. Within thirty (30) days prior to the expiration of the primary term of this lease, or if operations are being conducted on said lease or land pooled therewith at the expiration of the primary term, then within such manner as to maintain this lease in force, within thirty (30) days after the completion of a dry hole resulting from such operations, lessee may extend the primary term of this lease as to all or any part of acreage then covered hereby, for an additional five (5) years beyond the initial primary term, by written notification of action taken and by making payment to lessor or to lessor's successor in interest as reflected by notice to lessee pursuant to Paragraph 8 hereof, or to the credit of lessor or such successor in interest in any depository bank named herein or in any amendatory instrument in the sum of $_____ for each net acre as to which the lease is so extended. If this option is exercised by lessee, the lease as extended will thereafter be treated as if the original primary term had been five (5) years longer.

IN WITNESS WHEREOF, this instrument is executed on the date first above written.

_____            _____(SEAL)

_____            _____(SEAL)

_____            _____(SEAL)

### JOINT OR SINGLE ACKNOWLEDGMENT
### (MISSISSIPPI-ALABAMA-FLORIDA)

STATE OF _____

COUNTY OF _____

I hereby certify, that on this day, before me, a _____

duly authorized in the state and county aforesaid to take acknowledgments, personally appeared _____

_____

to me known to be the person _____ described in and who executed the foregoing instrument and _____ he _____

acknowledged before me that, being informed of the contents of the same, _____ he _____ voluntarily signed and delivered the within said foregoing instrument on the day and year therein mentioned.

Given under my hand and official seal, this _____ day of _____ A.D., 20 _____

(Affix Seal)            _____

_____
(Title of Official)

My commission expires _____            in and for _____ County,

### WITNESS ACKNOWLEDGMENT
### (MISSISSIPPI-ALABAMA-FLORIDA)

STATE OF _____

COUNTY OF _____

I, a _____ in and for the aforesaid jurisdiction, hereby certify that _____

_____

a subscribing witness to the foregoing instrument, known to me, appeared before me on this day, and being sworn, stated that _____

the grantor(s), having been informed of the contents thereof, voluntarily executed and delivered the same in his presence, and in the presence of the other subscribing witness, on the day the same bears date; that he attested the same in the presence of the grantor(s), and of the other witness, and that such other witness subscribed his name as a witness in his presence.

_____
(Subscribing Witness)

Given under my hand and official seal, this _____ day of _____ 20 _____

(Affix Seal)            _____

_____
(Title of Official)

My commission expires _____            in and for _____ County,

## EXHIBIT "D"

**Attached to and made a part of that certain Operating Agreement dated December 7, 2011, by and between SKLAR EXPLORATION COMPANY L.L.C., as Operator and SKLARCO L.L.C., ET AL. as Non-Operators.**

### INSURANCE

Operator shall carry the following insurance with the limits stipulated below for the joint account. Operator shall have the right to charge the joint account premiums for the insurance coverage required by this Exhibit. Such premiums shall be allocated to the joint account using a fair and reasonable method based on the nature of the operations covered by this Agreement. Non-operating working interest owners shall be named as additional insured on the liability policies. This insurance shall be primary. Certificates of insurance will be provided upon request.

I.    <u>WORKERS' COMPENSATION AND EMPLOYER'S LIABILITY</u>

Workers' Compensation and Employer's Liability Insurance covering the employees of Operator engaged in operations hereunder in compliance with the applicable State and Federal Laws.

Extension of Coverage B of policy to provide for not less than $500,000 for death or injury to one person in any one accident.

II    <u>COMPREHENSIVE GENERAL LIABILITY</u>

Coverage for all operations conducted hereunder by Operator for the Joint Account with a combined single limit each occurrence/aggregate of $2,000,000 for bodily injury and property damage. Said Comprehensive General Liability Insurance shall include contractual liability coverage.

III    <u>AUTOMOBILE LIABILITY</u>

Coverage shall include owned, non-owned and hired vehicles. Combined single limit of at least $500,000 for each occurrence for bodily injury and property damage.

IV    <u>EXCESS LIABILITY</u>

Operator shall carry excess liability insurance in an amount necessary to provide a total of $10,000,000 coverage for both Automobile Liability and Comprehensive General Liability.

Any party, at its own expense, may carry its own coverage for Excess Liability Insurance with limits as set forth in this Section IV. Any party so electing must notify Operator of such election prior to commencement of operations and provide a certificate of insurance evidencing the appropriate limits of liability. Upon timely notification such party will not be charged by Operator for the coverage.

<u>EXTRA EXPENSE LIABILITY</u>

Operator's Extra Expense coverage including control of well, seepage, pollution and contamination coverage, cleanup and/or containment coverage, redrilling and/or restoring, shall be carried by Operator, subject to limit(s) as shown below and subject to deductible not to exceed $350,000 per occurrence.

Liability Limit: $5,000,000

ANY PARTY, at its own expense, may acquire such additional insurance as it may deem necessary to protect its own interest against claims, losses, damages or destruction to property arising out of operations hereunder. Further, any party, at its own expense, may carry its own coverage for Extra Expense Liability Insurance with limits as set forth in this Section V. Any party so electing must notify Operator of such election prior to commencement of operations and provide a certificate of insurance evidencing the appropriate limits of liability. Upon timely notification such party will not be charged by Operator for the coverage.

## EXHIBIT "E"

**Attached to and made a part of that certain Operating Agreement dated December 7, 2011, by and between SKLAR EXPLORATION COMPANY L.L.C., as Operator and SKLARCO L.L.C., ET AL. as Non-Operators.**

### GAS BALANCING AGREEMENT

Subject to and under the terms of the above described Operating Agreement, the parties hereto own and are entitled to share in the oil and gas produced from the wells completed on the Joint Operating Area described in the Operating Agreement (the "JOA").

Each party shall have the right, but not the obligation, to make arrangements to sell or utilize its share of the gas produced from said JOA. However, one or more of the parties may be unable to take or market its interest in the gas production from time to time; therefore, to permit any party to produce and dispose of its interest in the gas production from the JOA with as much flexibility as possible, the parties hereto agree to the storage and balancing agreement herein set forth.

1.

Subject to the provisions of the Operating Agreement to which this Exhibit is attached, during the period or periods when any party hereto has no market for, or its purchaser is unable to take or if any party elects not to take its share of gas, the other parties, or any of them, shall be entitled to produce and take said share, and each of such taking parties shall have the right to take all or any part of its pro rata share thereof, said pro rata share being based on the ratio of its participation percentage under this Operating Agreement to the participation percentages of all taking parties. All parties hereto shall share in and own the condensate recovered at the surface in accordance with their respective interest, but each party taking such gas shall own all of the gas delivered to its purchaser. Any party whose share of gas is not marketed shall be credited with gas in storage equal to its share of the gas produced, less its share of the gas used in lease operation, vented or lost. Operator shall maintain a current account of the gas balance between the parties and shall furnish all parties hereto statements showing the total quantity of gas produced, used in lease operations, vented or lost, and the total quantity of condensate recovered.

2.

After notice to Operator, any party may begin taking or delivering its share of the gas produced. In addition to its share, each party, until it has recovered its gas in storage and balanced its gas account, shall be entitled to take or deliver a volume of gas equal to fifty percent (50%) of each overproduced party's share of gas produced. If more than one party is entitled to the stated volume of the overproduced parties' share of gas, each shall have the right to take all or any part of its pro rata share thereof, said pro rata share being based on the ration of its participation percentage under this Operating Agreement to the participating percentages of all entitled parties. Each party shall at all times use its best efforts to regulate its takes and deliveries from the Unit Area so the lease will not be shut-in for overproducing the allowable, it any, assigned thereto by the regulatory body having jurisdiction.

3.

At all times while gas is produced from the Contract Area, any party taking or marketing gas shall furnish to the Operator monthly reports of the volumes of gas delivered to its purchaser during the preceding month and to the revenue attributable thereto; and any such party shall pay to the Operator a percentage of the proceeds of such sale equal to the aggregate percentage of any and all royalties and overriding royalties which are payable on gas produced by any such party, and Operator will, in turn, make settlement for all royalties and overriding royalties which are payable on gas produced from the Contract Area. In the event that the total royalties and overriding royalties so paid to the Operator be insufficient to discharge royalty and overriding royalty obligations on gas produced and marketed from the Contract Area, then any such deficiency will be borne by the party whose interest is burdened by the royalty or overriding royalty as to which the deficiency was asserted. Any party or parties contributing separate leases to the Contract Area shall furnish the Operator with division order title opinions on which Operator shall be entitled to rely in making distribution of royalties and overriding royalties share of production of liquid hydrocarbons recovered from the gas by lease equipment.

4.

Any party producing and taking or delivering gas to the purchaser shall pay any and all production taxes due on such gas. Also, any party producing and taking or delivering gas to its purchaser shall pay, or cause to be paid, royalty and other obligations payable out of production due to its royalty owners based on the volume of gas actually taken for its account.

–1–

5.

Nothing herein shall be construed to deny any party the right, from time to time, to produce and take or deliver to the purchaser its full share of the allowable gas production to meet the deliverability tests required by its purchaser.

6.

Should production of gas from any reservoir or producing formation of each wellbore be permanently discontinued before the gas account is balanced, cash settlement will be made between the underproduced and overproduced parties.  In making such cash settlement, each overproduced party shall make payment to Operator along with sufficient accounting documentation as hereinafter described and Operator shall make disbursement to the underproduced parties.  In making such settlement, the underproduced party or parties will be paid a sum of money by the overproduced party or parties attributable to the overproduction which said overproduced party sold, less applicable production taxes and royalties theretofore paid, less any reasonable dehydration, compression, treating, processing, gathering or transportation costs actually incurred, including amortized capital costs associated with the design, construction or operation of any plants to dehydrate, compress, treat or process gas, in connection with the sale of the overproduction, at the price and based on the proceeds actually received by the overproduced party at the time and from time to time the overproduced party delivered and sold that portion of production that was attributable to the share of the underproduced party.  For gas taken but not sold, settlement shall be based on the price which the taking party would have received under its purchase agreement if the gas had been sold at the time taken, or, in absence of a contract, at the weighted average price of the parties selling gas at the time the gas was taken.

In the event any gas sold under this Agreement is subject to a regulated price by the FERC or a successor agency or governmental authority with jurisdiction thereover, the price basis shall be the rate collected, from time to time, which is not subject to possible refund, as provided by NGPA or as required by the FERC pursuant to the final determination, order, or settlement applicable to the gas sold from any reservoir (other than the general refund obligation of 18 CFR Section 273.301 or its successor regulation and the potential refund obligations arising from the lack of absolute finality provided by Section 502 (d) (1) and (2) of the NGPA plus any additional collected amount to be accounted for at such time as final determination is made with respect thereto but shall not exceed their contractually entitled price of the underproduced party). Notwithstanding the foregoing, should the underproduced party desire to receive such additional collected amount which is subject to possible refund pending the issuance of said final determination, order, or settlement, such underproduced party shall be entitled to the payment thereof from the overproduced party of parties upon the underproduced party executing and delivering to said overproduced party or parties an acceptable agreement in which the underproduced party agrees to repay to the overproduced party of parties that amount so paid that is required by said final determination, order, or settlement to be refunded, plus the interest thereon specified in the pertinent Order of the Commission.

Notwithstanding anything within this Agreement to the contrary, in no event shall an underproduced party be entitled to an overproduction payment which is attributable to a price which was higher than the underproduced party could have collected under the terms of its gas purchase contract, if in existence, at the time the gas was taken by the overproduced party.  Further, no overproduced party shall ever be required to make an overproduction payment to any underproduced party, which exceeds the amount the overproduced party actually received for the gas at the time it was produced.

7.

This Agreement shall be and remain in force and effect for a term concurrent with the term of that certain Operating Agreement between the parties described above to which it comprises the exhibit noted hereinabove.

8.

Nothing herein shall change or affect each party's obligation to pay its proportionate share of all costs and liabilities incurred in JOA operations as its share thereof is set forth in the above described Joint Operating Agreement.

9.

The terms, covenants and conditions of this Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.  The parties hereto agree to give notice of the existence of this agreement to any successor in interest and make any transfer of any interest in the lease or any part thereof subject to the terms of this Agreement.