# UNIT AGREEMENT
# NORTHEAST BROOKLYN OIL UNIT
# BROOKLYN FIELD
# CONECUH COUNTY, ALABAMA

**THIS AGREEMENT**, entered into as of the 1st day of November, 2018, by the parties who have signed the original of this instrument, a counterpart thereof, or other instrument ratifying and agreeing to be bound by the provisions hereof;

## WITNESSETH:

**WHEREAS,** in the interest of private and public welfare, to promote, foster and encourage conservation, to increase the ultimate recovery of oil, gas and associated minerals from that portion of the Brooklyn Field included within the Unit Area (as herein defined), (hereinafter referred to as "said field") to avoid waste, to prevent the drilling of unnecessary wells and to protect the correlative rights of all owners of the interests in said field, it is deemed necessary and desirable to enter into this Agreement creating and establishing a unit comprising the Unit Area, under the applicable provisions of the laws of the State of Alabama, and to unitize the Oil and Gas Rights in and to the Unitized Interval in order to conduct Unit Operations as herein provided.

**NOW, THEREFORE,** in consideration of the premises and of the mutual agreements herein contained, it is agreed as follows:

## ARTICLE 1

## DEFINITIONS

As used in this Agreement, the terms herein contained shall have the following meaning:

1.1    UNIT AREA (sometimes referred to as the "Northeast Brooklyn Oil Unit") means the lands shown outlined on Exhibit "A" and described as a unit and by Tracts on Exhibit "B" insofar as said lands relate to the Unitized Interval.

1.2    UNITIZED INTERVAL (sometimes referred to as the "Unitized Formation") means the subsurface portion of the Unit Area (which is within the Smackover Formation) productive of hydrocarbons in the interval between 11,406.3 feet measured depth (MD) and 11,610 feet measured depth (MD) in the Cedar Creek Land & Timber 28-15 # 1 Well, Permit No. 16682, with a surface location 750 feet from the South line and 1,750 feet from the East line of Section

28, Township 4 North, Range 13 East, Conecuh County, Alabama, as defined by the Halliburton Array Induction Spectral Density Dual Spaced Neutron Microlog log for said well, including those strata underlying the Unit Area which can be correlated therewith, and all zones in communication therewith and all productive extensions thereof.

      1.3    UNITIZED SUBSTANCES means all oil, gas, gaseous substances, sulfur contained therein, condensate, distillate, and all associated and constituent liquid or liquefiable substances, other than water and Outside Substances, within or produced from the Unitized Interval.

      1.4    WORKING INTEREST means an interest in Unitized Substances by virtue of a lease, operating agreement, fee title or otherwise, including a carried interest, which interest is chargeable with and obligated to pay or bear, either in cash or out of production or otherwise, all or a portion of the cost of drilling, developing, producing and operating the Unitized Interval.

      1.5    ROYALTY INTEREST means a right to or interest in any portion of the Unitized Substances or proceeds thereof other than a Working Interest, including but not limited to royalty interests, overriding royalty interests and production payment rights.

      1.6    ROYALTY OWNER means a party hereto who owns a Royalty Interest in the Unit Area.

      1.7    WORKING INTEREST OWNER means a party hereto who owns a Working Interest in the Unit Area.  The owner of Oil and Gas Rights that are free of lease or other instrument conveying the Working Interest to another shall be regarded as a Working Interest Owner to the extent of seven-eighths (7/8ths) of his interest in Unitized Substances, and as Royalty Owner with respect to his remaining one-eighth (1/8th) interest therein.

      1.8    TRACT means each parcel of land described as such and given a tract number in Exhibit "B."

      1.9    UNIT OPERATING AGREEMENT means the agreement entitled "Unit Operating Agreement, Northeast Brooklyn Oil Unit, Conecuh County, Alabama," of the same effective date as the Effective Date of this Agreement, and which is entered into by Working Interest Owners who are parties hereto, and any amendment thereof.

      1.10    UNIT OPERATOR means the Working Interest Owner or other party designated by Working Interest Owners under the Unit Operating Agreement to conduct all Unit Operations, pursuant to this Agreement and the Unit Operating Agreement.

2

1.11    TRACT PARTICIPATION means the percentage shown on Exhibit "B" for allocating Unitized Substances to a Tract under this Agreement. Tract Participations were determined as set forth in Article 5.

1.12    UNIT PARTICIPATION of each Working Interest Owner shall mean the sum of the percentages obtained by multiplying such Working Interest Owner's fractional working interest (either cost bearing or net revenue) in each Tract by the Tract Participation of such Tract. When the term Unit Participation is used in reference to the interest of a Working Interest Owner or Owners, it shall be deemed to refer to the cost bearing interest of the owner(s) unless the context clearly indicates that it is intended to refer to the net revenue interest of the owner(s). Unit Participation of a Royalty Interest Owner is the sum of the percentages obtained by multiplying the Royalty Interest of such Royalty Interest Owner in each Tract by the Tract participation of such Tract.

1.13    OUTSIDE SUBSTANCES means all substances obtained from any source other than the Unitized Interval and which are injected into the Unitized Interval.

1.14    OIL AND GAS RIGHTS means the right to explore, develop and operate lands within the Unit Area for the production of Unitized Substances, or to share in the production so obtained or the proceeds thereof.

1.15    UNIT OPERATIONS means all operations conducted by Working Interest Owners or Unit Operator pursuant to this agreement and the Unit Operating Agreement for or on account of the development and operation of the Unitized Interval for the production of Unitized Substances.

1.16    UNIT EQUIPMENT means all personal property, lease and well equipment,  and other facilities and equipment taken over or otherwise acquired for use in Unit Operations pursuant to the Unit Operating Agreement.

1.17    UNIT RICH GAS means all Unitized Substances and Outside Substances produced in the form of gaseous substances, including the liquefiable hydrocarbons entrained therein that are separated from free liquids prior to the Well Gas Meter to which the well is connected.

1.18    UNIT EXPENDITURE or UNIT EXPENSE means a cost, expense or indebtedness incurred by Working Interest Owners or Unit Operator on behalf of Working Interest Owners pursuant to this Agreement and the Unit Operating Agreement for or on account of Unit Operations.

1.19    EFFECTIVE DATE means the date that this agreement becomes effective as determined by Article 16 hereof.

3

1.20    Unless the context otherwise clearly indicates, words used in the singular include the plural, the plural include the singular, and the neuter gender includes the masculine and the feminine.

## ARTICLE 2

## EXHIBITS

2.1    EXHIBITS. Attached hereto are the following exhibits which are incorporated herein by reference:

2.1.1    EXHIBIT "A" which is a map that shows the boundary lines of the Unit Area and the Tracts therein.

2.1.2    EXHIBIT "B" which is a schedule that describes and shows the Unit Area, each Tract in the Unit Area and the Tract Participation of each Tract.

2.1.3    EXHIBITS "C-1," "C-2," and C-3" which are isopach maps showing net porosity feet based on hydrocarbon pore volume.

2.1.4    EXHIBIT "D" which is a schedule showing the computed Tract Participation of each tract based upon the parameters shown thereon.

2.1.5    EXHIBIT "E" which is a schedule showing, as of the date it was prepared, the total Unit Participation of each Working Interest Owner (both cost bearing and net revenue) and Royalty Owner. Exhibit "E" or a revision thereof, shall not be conclusive as to the information therein, except it may be used as showing the Unit Participations of the Working Interest Owners for purposes of this Agreement until shown to be in error or revised as herein authorized.

2.2    REFERENCE TO EXHIBITS. When reference herein is made to an exhibit, the reference is to the Exhibit as originally attached hereto or, if revised, to the latest revision.

2.3    EXHIBITS CONSIDERED CORRECT. An exhibit shall be considered to be correct until revised as herein provided.

2.4    ALTERATION OF TRACT PARTICIPATION.  If it subsequently appears that any mechanical miscalculation or clerical error has been made or that the Tract Participation of any Tract within the Unit Area is incorrect because of subsequently discovered data, the Unit Operator shall correct the mistake by revising the Exhibits to conform to the facts.  The revision shall not include any re-evaluation of engineering or geological interpretations used in determining Tract Participation.  Each such revision of an Exhibit made prior to thirty (30) days after the Effective Date shall be effective as of the Effective Date.  Each such revision thereafter made shall be

4

effective at 7:00 a.m. on the first day of the calendar month next following the filing for record of the revised Exhibit or on such other date as may be determined by the Working Interest Owners and set forth in the revised Exhibit.

2.5     FILING REVISED EXHIBIT.  If an exhibit is revised pursuant to this Agreement, Unit Operator shall certify and file the revised exhibit for record in the office of the Probate Judge of Conecuh County, Alabama, and with the State Oil and Gas Board.

## ARTICLE 3

## CREATION AND EFFECT OF UNIT

3.1     OIL AND GAS RIGHTS UNITIZED.  Subject to the provisions of this Agreement, all Oil and Gas Rights of Royalty Owners in and to the lands described in Exhibit "B" and all Oil and Gas Rights of Working Interest Owners in and to said lands, are hereby unitized, subject to the approval of the State Oil and Gas Board, insofar as the respective Oil and Gas Rights pertain to the Unitized Interval, so that operations may be conducted as if the Unitized Interval had been included in a single lease executed by all Royalty Owners, as Lessors, in favor of all Working Interest Owners, as Lessees, and as if the lease had been subject to all of the provisions of this Agreement.

3.2     PERSONAL PROPERTY EXCEPTED. Personal property not included in the inventory provided for in Article 10 of the Unit Operating Agreement shall be deemed to be and shall remain personal property belonging to Working Interest Owners.

3.3     COSTS AND EXPENSES OF UNIT OPERATIONS. The costs and expenses of Unit Operations, including prospective investment costs, shall be allocated and charged to each Tract in the proportion that each Tract shares in Unitized Substances, and shall be paid by the respective Working Interest Owners owning an interest in each such Tract, said allocation and charge being more fully set forth in the Unit Operating Agreement.  Without limitation to the rights and remedies afforded Unit Operator and Working Interest Owners as provided by the Unit Operating Agreement, if the full amount of any charge made against a Tract is not paid by the Working Interest Owner or Owners owing the same, then seven-eighths (7/8ths) of the Unitized Substances allocated to such Tract, proportionately reduced to the interest of such Working Interest Owner which has not paid such charges, may be appropriated by the Unit Operator and marketed and sold for the payment of such charge, together with interest thereon at the rate as provided by Paragraph 1.3.B of Exhibit "F" of the Unit Operating Agreement or the maximum rate allowed by law, whichever is less. A one-eighth (1/8th) part of the Unitized Substances allocated to each Tract

shall in all events be regarded as royalty to be distributed to and among or the proceeds thereof paid to the respective owners of royalty, other than overriding royalty or production payments, free and clear of Unit Expenditures and free and clear of any lien therefor.  The owner of any overriding royalty, production payment interest, royalty in excess of one-eighth (1/8th) of production, or other interest not primarily responsible for the payment of costs and expenses of Unit Operations shall, to the extent of such payment or deduction from his share, be subrogated to all the rights of the Unit Operator with respect to the interest or interests primarily responsible for such payment.  Once the Unit Operator has recovered the full amount of any such charge, the Unit Operator will continue to appropriate, market and sell the Unitized Substances attributable to the interest of such delinquent Working Interest Owner or Owners and will distribute the proceeds therefrom to the Owner or Owners of overriding royalty, production payment interest, royalty in excess of one-eighth (1/8th) of production or other interests not primarily responsible for the payment of costs and expenses of Unit Operations, until each of such Owners has received its respective allocation of proceeds together with interest thereon at the rate as provided by Paragraph 1.3.B of Exhibit "F" of the Unit Operating Agreement or the maximum rate allowed by law, whichever is less, from the sale of Unitized Substances .

3.4     PRIOR UNITS PRESERVED AS TRACTS.  Except as otherwise noted below in this paragraph, production units of approximately 160 acres, included within the Unit Area, established in accordance with the Special Field Rules for the Brooklyn Field by the State Oil and Gas Board constitute Tracts hereunder and are delineated and numbered as such on Exhibit "A," provided, however, that  if the producing well on a production unit is not producing from the Unitized Interval or if all wells on the unit capable of producing from the Unitized Interval have been plugged and abandoned, then the Tract includes only the portion of the unit underlain by the Unitized Interval (as reflected on Exhibit C) together with such additional, commonly owned area as is shown on Exhibits A and C. The production allocated to each portion of each Tract hereunder shall be considered as produced from each portion of such Tract by a well drilled thereon and shall have the same legal force and effect.

3.5     CONTINUATION OF LEASES AND TERM INTERESTS.  Production from any part of the Unitized Formation and Unit Operations on any Tract shall be considered, except for the purpose of determining payments to Royalty Owners, as production from or operations upon each Tract, and such production and/or operations shall continue in effect each lease or term mineral or

6

royalty interest as to all lands and formations covered thereby just as if such operations were conducted on and as if a well were producing from each Tract. It is agreed that each lease shall remain in full force and effect from the date of execution hereof until the Effective Date, and thereafter in accordance with its terms and this Agreement.

3.6     TITLES UNAFFECTED BY UNITIZATION.  Nothing herein shall be construed to result in the transfer of title to Oil and Gas Rights by any party hereto to any other party or to Unit Operator.

3.7     INJECTION RIGHTS.  Royalty Owners hereby grant Working Interest Owners the right to inject into the Unitized Formation any substances, including Unitized Substances and Outside Substances, in whatever amounts Working Interest Owners deem expedient for Unit Operations, together with the right to drill, use and maintain injection wells on the Unit Area, and to use for injection purposes any non-producing or abandoned wells or dry holes and any producing wells completed in the Unitized Interval.

## ARTICLE 4

## PLAN OF OPERATIONS

4.1     UNIT OPERATOR.  Working Interest Owners are, as of the Effective Date of this Agreement, entering into the Unit Operating Agreement designating Pruet Production Co., a Mississippi corporation, as initial Unit Operator.  Unit Operator shall have the exclusive right to conduct Unit Operations.  The operations shall conform to the provisions of the Unit Agreement and the Unit Operating Agreement.  If there is any conflict between such agreements, this Agreement shall govern.

4.2     OPERATING METHODS.  Working Interest Owners shall, with diligence and in accordance with good engineering and production practices, engage in re-pressuring or water injection operations and maintain a rate of production to the end that the quantity of Unitized Substances ultimately recovered shall be maximized and waste prevented.

4.3     CHANGE OF OPERATING METHODS.  Nothing herein shall prevent Working Interest Owners from discontinuing or changing in whole or in part any method of operations which, in their opinion, is no longer in accord with good engineering or production practices. Other methods of operation may be conducted or changes may be made by Working Interest Owners from time to time if determined by them to be feasible, necessary or desirable to increase the ultimate recovery of Unitized Substances, subject to any necessary approval of regulatory authorities.

**ARTICLE 5**

**TRACT PARTICIPATION**

5.1     TRACT PARTICIPATION.  Each Tract shall participate in the Unitized Substances produced from the Unit Area in accordance with the Tract Participation allocated thereto as set forth in Exhibit "B."  The Tract Participation of each Tract in the Unit Area has been calculated as shown on Exhibit "D" by taking into consideration pertinent geological and engineering factors and utilizing a two-part formula consisting of 50% hydrocarbon pore volume and 50% productivity, both determined as follows:

The aerial distribution of hydrocarbon pore volume ("HCPV") was established by mapping the net HCPV porosity feet ("HCFT") for the Smackover Zones in each well.  For purposes of the Northeast Brooklyn Oil Unit, HCFT means the vertical feet of hydrocarbon saturated pore space based on core porosity data, except for intervals of the Smackover Formation where core samples are not available.  Where core samples are not available, petrophysical log porosity data was used to determine HCFT for each well.  The Northeast Brooklyn Oil Unit HCFT determinations were made based on porosity cutoff factors for netting porosity-feet, which is porosity equal to, or greater than 10% for  Smackover Zone 1 and 6% for Smackover Zones 2-6, and determinations of hydrocarbon-saturated porosity-feet, in measured depth (HCFT- MD) were   made where each qualifying porosity-foot must have an oil saturation (So) of at least 55% (Maximum $Sw = 45$, $So=1-Sw$) as determined by the Archie equation using the  resistivity ($Rt$ ) as measured from the petrophysical logs for each foot, using a water resistivity ($Rw$) of 0.017.  The HCFT- MD value for each Smackover Zone in each well was corrected for true vertical depth (TVD) using a TVD factor based on each well's borehole survey, and the HCFT-MD value was converted for each Smackover Zone of each well as HCFT.  The acreage attributable to each HCFT contour within each Unit Tract was determined, and the HCPV was calculated for each Smackover Zone for each Tract.   The Tract's HCPV for each Smackover Zone was posted and summed as the HCPV totals in acre-feet for each Tract.  The HCPV totals for each Tract, were summed to determine the total HCPV for the Unit such that each Tract's percentage of the total HCPV equals the Tract's HCPV Tract Factor, which is 50% of the allocation formula.

The other 50% of the allocation formula is a productivity factor, with productivity based equally on (a) each Tract's maximum oil production during any consecutive six-month period and the gas production occurring within that same consecutive six-month period (the "Best Six

Months") and (b) each Tract's oil and gas production during the six-month period from January 2018 through June 2018 (the "Recent Six Months"), such that the Best Six Months factor shall be 25% of the allocation formula and the Recent Six Months factor shall be 25% of the allocation formula.  Production data of both oil and gas was tabulated, and this data was evaluated to determine, for each Tract, the Best Six Months production and the Recent Six Months production; provided, however, that if more than one well located on a Tract had produced from the Unitized Formation, only the well having the highest historical production data for a consecutive six-month period was utilized in calculating the Tract's Best Six Months half of the total productivity factor. The total gas production during each relevant period, for each Tract, was converted to barrels of oil equivalent (BOE) using a 13.6 Mcf/bbl BOE factor, and added to the total oil production during that period, providing either the Best Six Months production or the Recent Six Months production for each Tract, as the case may be. The Best Six Months production from each Tract determined in this manner was then divided by the total of all Tracts' Best Six Months production to determine each Tract's Best Six Months half of the total productivity factor, while the Recent Six Months production from each Tract was then divided by the total of all Tracts' Recent Six Months production to determine each Tract's Recent Six Months half of the total productivity factor.

The above allocation formula is the formula specifically approved by the State Oil and Gas Board in its Certification of Order dated September 28, 2018, entered in Docket Nos. 4-4-18-01, 4-4-18-02, 4-4-18-03, 4-4-18-04, 4-4-18-05, 4-4-18-06, 4-4-18-07 and 4-4-18-08.

## ARTICLE 6

## ALLOCATION OF UNITIZED SUBSTANCES

6.1    ALLOCATION TO TRACTS.  Subject to the provisions of Article 8 and to the other provisions of this Article 6, all Unitized Substances produced and saved shall be allocated to the several Tracts in accordance with the respective Tract Participation effective during the period that the Unitized Substances were produced.  The amount of Unitized Substances allocated to each Tract, regardless of whether it is more or less than the actual production of Unitized Substances from the well or wells, if any, on such Tract shall be deemed for all purposes to have been produced from such Tract. All Outside Substances produced and saved shall be allocated to the several Working Interest Owners in accordance with their Unit Participation effective during the period that the Outside Substances were produced subject, however, to the other provisions of this Article 6.

9

6.2     DISTRIBUTION WITHIN TRACTS.  If any Oil and Gas Rights in a Tract are now or hereafter become divided and owned in severalty as to different parts of the Tract, the owners of the divided interests, in the absence of an agreement providing for a different division, shall share in the Unitized Substances allocated to the Tract, or in the proceeds thereof, in proportion to the surface acreage of their respective parts of the Tract.  Except as otherwise provided elsewhere in this Agreement, the Unitized Substances allocated to each Tract or portion thereof shall be distributed among, or accounted for, the parties entitled to share in the production from such Tract or portion thereof in the same manner, in the same proportions and upon the same conditions as they would have participated and shared in production from such Tract or such portion thereof, or in the proceeds thereof., had this Agreement not been entered into, and with the same legal effect.

6.3     TAKING UNITIZED SUBSTANCES AND OUTSIDE SUBSTANCES IN KIND. The Unitized Substances allocated to each Tract shall be delivered to the respective parties entitled thereto by virtue of the ownership of Oil and Gas Rights therein or to the buyers of such Unitized Substances for the account of such parties; and the Outside Substances allocated to each Working Interest Owner shall be delivered to such owner or the buyer (if any) of Outside Substances for the account of such owner (subject, however, to the provisions of the Unit Operating Agreement).  Each Working Interest Owner at any time and from time to time may appoint a designee to physically receive its share of Unitized Substances, Outside Substances or revenue derived therefrom and delivery of such Unitized Substances, Outside Substance or revenue to such designee shall have the same effect as if the same had been delivered to the Working Interest Owner that made the designation. Such parties shall have the right to construct, maintain, and operate within the Unit Area all necessary facilities for that purpose, provided that they are constructed, maintained and operated so as not to interfere with Unit Operations.  Any extra expenditures incurred by Unit Operator by reason of the delivery in kind of any portion of the Unitized Substances or Outside Substances shall be borne by the receiving party. If a Royalty Owner has the right to take in kind a share of Unitized Substances and fails to do so, the Working Interest Owner whose Working Interest is subject to such Royalty Interest shall be entitled to take in kind such share of the Unitized Substances.

6.4     FAILURE TO TAKE IN KIND.  If any party fails to take in kind or separately dispose of its share of Unitized Substances or Outside Substances currently as and when produced, the Unit Operator, at the request of such party, shall use its best efforts to dispose of such production

in any reasonable manner (i) for such reasonable period of time as is consistent with the minimum needs of the industry under the particular circumstances, but in no event for a period in excess of one year, and (ii) at not less than the best price offered to Unit Operator for such production (subject to any transportation charges for transporting the same after it leaves Unit Equipment and any charges for treating, processing, marketing or the like), and the account of such party shall be charged therewith as having received the same.   The proceeds, if any, of the Unitized Substances or Outside Substances so disposed of by the Unit Operator shall be paid to the party for whose account the same is so disposed under the provisions of applicable Division Orders.

6.5     RESPONSIBILITY FOR ROYALTY SETTLEMENTS.   Any party receiving in kind or separately disposing of all or part of the Unitized Substances allocated to any Tract or receiving the proceeds therefrom shall be responsible for the payment thereof to the persons entitled thereto, and shall indemnify all parties thereto, including Unit Operator, against any liability for all royalties, overriding royalties, production payments, severance tax and all other payments chargeable against or payable out of such Unitized Substances or the proceeds therefrom.   In the event a party fails to take and dispose of its part of Unitized Substances in kind, and subject to the provisions of Article 6.4, Unit Operator or the purchaser of unitized substances will make settlement for the proceeds of such production under its Division Order.

6.6     ROYALTY ON OUTSIDE SUBSTANCES.   There shall be no royalty payable on Outside Substances.   If any Outside Substances injected into the Unitized Interval, be it liquefied petroleum hydrocarbons or other gases and the Unitized Substances subsequently produced, contain such gases or hydrocarbons as determined by fractional analysis or other appropriate tests, the Working Interest Owners shall have the right to recover such contained gases or hydrocarbons, or their equivalent value from such Unitized Substance, without payment of royalty thereof.   If any Outside Substances of value are injected into the Unitized Interval, and such Outside Substances cannot be distinguished from Unitized Substances, then fifty percent (50%) of any like substances contained in Unitized Substances subsequently produced and sold, or used for other than Unit Operations, shall be deemed to be Outside Substances until the aggregate of said fifty percent (50%) equals the accumulated volume of such Outside Substances injected into the Unitized Interval, and no payments shall be due or payable to Royalty Owners on such Outside Substances.

6.7     PRODUCED OUTSIDE SUBSTANCES WITH NO VALUE. Anything herein to the contrary notwithstanding, if any Outside Substance produced in conjunction with Unitized

Substances has no value and if that substance can be separated from the Unitized Substances by the Unit Operator, then with the approval of the Working Interest Owners, the Unit Operator shall at Unit Expense separate and re-inject or dispose of such Outside Substance.

## ARTICLE 7

## PRODUCTION AS OF THE EFFECTIVE DATE

7.1    OIL IN LEASE TANKS.  Unit Operator shall gauge all lease and other tanks within the Unit Area to ascertain the amount of merchantable oil or other liquid hydrocarbons produced from the Unitized Interval in such tanks, above the pipe line connections, as of 7:00 a.m. on the Effective Date hereof.  All such oil shall remain the property of the parties entitled thereto the same as if the Unit had not been formed.  Any such oil not promptly removed may be sold by the Unit Operator for the account of the parties entitled thereto, subject to the payment of all royalties, overriding royalties, production payments, severance tax and all other payments under the provisions of the applicable lease or other contracts.

## ARTICLE 8

## USE AND SALE OF UNITIZED SUBSTANCES

8.1    USE OF UNITIZED SUBSTANCES.  Working Interest Owners may use or consume as much of the Unitized Substances as they deem necessary for the operation and development of the Unitized Interval including, but limited to, the injection thereof into the Unitized Interval.  No royalty, overriding royalty, production or severance tax or other payments shall be payable on account of Unitized Substances, used, unavoidably lost or consumed in Unit Operations.

8.2    SALE OF UNITIZED SUBSTANCES.  Each Working Interest Owner shall have the right to take in kind its share of each Unitized Substance excluding the Unitized Substances used by Unit Operator under Article 8.1 hereof or unavoidably lost.  Each Working Interest Owner shall take such substance as and when produced or as arranged with Unit Operator.  Working Interest Owners recognize that it might be impractical to make deliveries each month of Unitized Substances in exact proportion to the Unit Participation of each Working Interest Owner; accordingly, it is agreed that any excesses or deficits in such delivering during any month will be adjusted by increasing or decreasing deliveries during the following month.  Should any Working Interest Owner fail to take in kind or separately dispose of its Unitized Substances as provided herein, the provisions of Articles 6.4 and 6.5 of the Unit Agreement shall apply.

8.3     ROYALTY SETTLEMENT.  Unit Operator is hereby authorized to deliver in kind to Royalty Owners the amount of Unitized Substances to which they are entitled under the provisions of their lease or other contract and/or the Unit Agreement and to deduct such amounts from the share of each Working Interest Owner responsible therefor.  Settlement for Royalty Interest not taken in kind shall be made by the Working Interest Owners in each Tract responsible therefor under existing contracts, laws and regulations, in accordance with the provisions of Article 6 hereof.

<div align="center">

**ARTICLE 9**

**TITLES**

</div>

9.1     WORKING INTEREST TITLES.  If title to a Working Interest fails, the rights and obligations of Working Interest Owners by reason of the failure of title shall be governed by the Unit Operating Agreement.

9.2     ROYALTY OWNER TITLES.  If title to a Royalty Interest fails, the party whose title failed shall not be entitled to share hereunder with respect to such interest.

9.3     PRODUCTION WHERE TITLE IS IN DISPUTE.  If the title or right of any party claiming the right to receive in kind all or any portion of the Unitized Substances allocated to a Tract is in dispute, Unit Operator shall either:

(a)     require that the party to whom such Unitized Substances are delivered or to whom the proceeds thereof are paid, furnish security for the proper accounting therefor to the rightful owner if the title or right of such party fails in whole or in part; or

(b)     withhold and market the portion of Unitized Substances with respect to which title or rights is in dispute, and withhold the proceeds thereof with such interest thereon as may be required under applicable laws of the State of Alabama until such time as the title or right thereto is established by a final judgment of a court of competent jurisdiction or otherwise to the satisfaction of the Working Interest Owners, whereupon the proceeds so withheld shall be paid to the party rightfully entitled thereto.

9.4     PAYMENT OF TAXES TO PROTECT TITLE.  If any taxes are not paid when due by or for any owner of surface rights to lands within the Unit Area, or severed mineral interests or Royalty Interests in such lands, or lands outside the Unit Area on which Unit Equipment is located, Unit Operator may at any time prior to tax sale, or expiration of period of redemption after tax sale, pay the tax and redeem or purchase such rights, interests or property.  Any such payment shall be a Unit Expenditure.  Unit Operator shall, if possible, withhold from any proceeds derived from the sale of Unitized Substances otherwise due any delinquent taxpayer an amount sufficient to defray the costs of such payment, such withholding to be credited to Working Interest Owners.  Such withholding shall be without prejudice to any other remedy available to Unit Operator or Working Interest Owners.

9.5     UNDERLYING AGREEMENTS.  Nothing contained herein shall be construed as altering or impairing the provisions of any leases or other agreements with reference to the proportionate reduction of royalties, overriding royalties, payments out of production, and other obligations, and irrespective of the provisions of any such leases and other agreements, it is understood and agreed that in the event any Royalty Owner or Working Interest Owner owns less than the entirety of the interest or interests claimed by or certified to him in a division order, transfer order, or other agreement, with reference to any Tract, all payments to such party shall be reduced to the proportionate interest actually owned by him in such Tract.

## ARTICLE 10

## EASEMENTS OR USE OF SURFACE

10.     GRANT OF EASEMENTS.  The parties hereto, to the extent of their rights and interests, hereby grant to Working Interest Owners the right to use as much of the surface of the land within the Unit Area as may reasonably be necessary for Unit Operations and for the transportation of Unitized and Outside Substances.

10.2     USE OF WATER.  Working Interest Owners shall have free use of water from the Unit Area for Unit Operations except water from any domestic water well, commercial lake, pond, or irrigation ditch of a Surface Owner.

10.3     SURFACE DAMAGES.  Working Interest Owners shall pay the rightful owner for damages to growing crops, timber, fences, improvement, and structures on the Unit Area that result from Unit Operations.

14

## ARTICLE 11

## ENLARGEMENT OF UNIT AREA

11.1    ENLARGEMENT OF UNIT AREA.  The Unit Area may be enlarged from time to time by approval of the State Oil and Gas Board, in accordance with Section 9-17-85 of the *Code of Alabama* (1975), and by the Working Interest Owners owning sixty-six and two-thirds percent (66 2/3rds%) in interest, as costs are shared, in the area to be added, and the written agreement to the enlargement and ratification of this Agreement by the Royalty Owners owning sixty-six and two-thirds percent (66 2/3rds%) in interest in the area to be added, all subject to the following:

11.1.1  The portion of Unitized Substances from the Unit Area, as enlarged, to be allocated to the added area shall be based on the relative contribution which such added area is expected to make, during the remaining course of Unit Operations in accordance with Section 9-17-85 of the *Code of Alabama* (1975).  The Unitized Substances so allocated to the added Unit Area shall be allocated to the Tracts therein on the basis of the relative contribution of each such Tract and, as to the area added, the effective date shall be the effective date of such enlargement.

11.1.2  The remaining portion of the Unitized Substances from the Unit Area as enlarged shall be allocated among the Tracts within the previously established Unit Area in the same proportions as elsewhere herein provided.

11.1.3  The effective date of any enlargement of the Unit Area shall be 7:00 a.m. on the first day of the calendar month following the date on which the order of the State Oil and Gas Board, after notice and hearing, approves the enlargement of the Unit Area.

11.2    NO RETROACTIVE ALLOCATION OF EXPENSES OR PRODUCTION.  There shall be no retroactive allocation or adjustment of Unit Expenditures or of interests in the Unitized Substances produced, or the proceeds thereof, by reason of an enlargement of the Unit Area; provided, however, this limitation shall not prevent an adjustment of investment among the Working Interest Owners pursuant to the Unit Operating Agreement.

11.3    DETERMINATION OF TRACT PARTICIPATION AND REVISION OF EXHIBITS.

The Unit Operator shall determine the Tract Participation of each Tract within the Unit Area, as enlarged, and upon approval by Working Interest Owners, revise Exhibits "A," "B," "C-1," "C-2," "C-3," "D" and "E" accordingly and file for record the revised Exhibits with the State Oil and Gas Board and in the office of the Probate Judge of Conecuh County, Alabama.

## ARTICLE 12

## CHANGE OF TITLE

12.1    COVENANT RUNNING WITH THE LAND.  This Agreement shall extend to, be binding upon and inure to the benefit of the respective heirs, devisees, legal representatives, successors and assigns of the parties hereto, and shall constitute a covenant running with the lands, leases and interests covered hereby.

12.2    NOTICE OF TRANSFER.  Any conveyance of all or any part of any interest owned by any party hereto with respect to any Tract shall be made expressly subject to this Agreement.  No change of title shall be binding upon the Unit Operator, or upon any party hereto other than the party so transferring, until the first day of the calendar month next succeeding the date of receipt by Unit Operator of a photocopy or a certified copy of the recorded instrument evidencing such change in ownership.

12.3    WAIVER OF RIGHTS TO PARTITION.  Each party hereto covenants that, during the existence of this Agreement, it will not resort to any action to partition the Unitized Interval within the Unit Area or the Unit Equipment, and to that extent waives the benefits of all laws authorizing such partition.

## ARTICLE 13

## RELATIONSHIP OF PARTIES

13.1    NO PARTNERSHIP.  The duties, obligations and liabilities of the parties hereto are intended to be several and not joint or collective.  This Agreement is not intended to create, and shall not be construed to create, an association or trust, or to impose a partnership duty, obligation or liability with regard to any one or more of the parties hereto.  Each party hereto shall be individually responsible for its own obligations as herein provided.

13.2    NO SHARING OF MARKET.  This Agreement is not intended to provide, and shall not be construed to provide, directly or indirectly, for any cooperative or joint sale or marketing of Unitized Substances.

13.3    ROYALTY OWNERS FREE OF COSTS.  Subject to the provisions of Article 3.3 hereof, this Agreement is not intended to impose, and shall not be construed to impose, upon any Royalty Owner any obligation to pay for Unit Expenditures unless such Royalty Owner is otherwise so obligated.

16

13.4   INFORMATION TO ROYALTY OWNERS.  Each Royalty Owner shall be entitled to all information in possession of Unit Operator to which such Royalty Owner is entitled by an existing agreement with any Working Interest Owner.

## ARTICLE 14

## LAWS AND REGULATIONS

14.1   LAWS AND REGULATIONS.  This Agreement shall be subject to the valid rules, regulations and orders of the State Oil and Gas Board, and to all other applicable Federal, State and municipal laws, rules, regulations and orders.

## ARTICLE 15

## FORCE MAJEURE

15.1   FORCE MAJEURE.  All obligations imposed by this Agreement on each party, except for the payment of money, shall be suspended while compliance is prevented, in whole or in part, by a strike, fire, war, civil disturbance, explosion, act of God, by Federal, State or municipal laws; by any rules, regulations, or order of a governmental agency; by inability to secure materials; or by any other cause or causes beyond reasonable control of the party.  No party shall be required against its will to adjust or settle any labor dispute.  Neither this Agreement nor any lease or other instrument subject thereto shall be terminated by reason of suspension of Unit Operations due to any one or more of the causes set forth in this Article.

## ARTICLE 16

## EFFECTIVE DATE

16.1   EFFECTIVE DATE.  This Agreement shall become binding upon all parties who execute or ratify it as of the date of execution or ratification by such party and shall become effective notwithstanding the fact that one or more of the Working Interest Owners or one or more of the Royalty Owners shall fail or refuse to execute or ratify this Agreement when the conditions for effectiveness have been met as follows:  (1) when the same has been executed or ratified by parties who own of record legal title to at least an undivided sixty-six and two-thirds percent (66 2/3%) in interest (cost bearing Unit Participation) of the Working Interest in the total Unit Area and by parties who own of record legal title to at least sixty-six and two-thirds percent (66 2/3%) in interest of the Royalty Interest in the total Unit Area (for the purpose of this provision, with respect to an interest which is encumbered of record with a mortgage or deed of trust, both the grantor and

grantee therein shall be considered as the record owner of legal title thereto, except that when the instrument gives the grantor in such mortgage or deed of trust the right to execute a Unit Agreement, the grantor shall be deemed the record owner); and (2) when an order has been issued by the State Oil and Gas Board approving Unit Operation of the Unit Area in accordance with the terms of this Agreement and the Unit Operating Agreement.  The Effective Date of the Unit shall be as specified in the order of the State Oil and Gas Board.  If, however, this Agreement does not become effective on or before March 24, 2019 then this Agreement shall *ipso facto* terminate and thereafter be of no further force and effect unless prior thereto at least two Working Interest Owners owning a combined Unit Participation of at least fifty percent (50%) who have become parties to this Agreement have decided to extend said termination date for a period not to exceed one (1) year.  If said termination date is extended and this Agreement does not become effective on or before said extended termination date, this Agreement shall *ipso facto* terminate on said extended termination date, and thereafter be of no further force or effect.  For the purpose of this article, and except as hereinabove specifically provided in Section 16.1, ownership shall be computed on the basis of the Tract Participation set forth in Exhibit "B."

16.2    CERTIFICATE OF EFFECTIVENESS. Unit Operator shall file for record in Conecuh County, Alabama, a Certificate to the effect that this Agreement has become effective according to its terms and stating further the Effective Date.

## ARTICLE 17

### TERM

17.1    TERM.  The term of this Agreement shall be for the time that Unitized Substances are produced or Unit Operations are conducted without a cessation of more than ninety (90) consecutive days, unless sooner terminated by Working Interest Owners in the manner herein provided.

17.2    TERMINATION BY WORKING INTEREST OWNERS.  Subject to approval by the State Oil and Gas Board after notice and hearing, this Agreement may be terminated by Working Interest Owners having a combined Unit Participation (cost bearing) of at least sixty-six and two-thirds percent (66 2/3%) whenever such Working Interest Owners determine that Unit Operations are no longer profitable or feasible.

17.3    EFFECT OF TERMINATION.  Upon termination of this Agreement, the further development and operation of the Unitized Interval as a Unit shall be abandoned; Unit Operations

shall cease; the parties' rights in and to the Unitized Substances and Outside Substances resulting from or created by this Agreement or any order of the State Oil and Gas Board approving this Agreement shall cease, with the rights to own and/or capture oil, gas and other minerals in the Unitized Interval thereafter belonging to the persons or entities who would have had those rights if this Unit had never been formed (subject, however, to the provisions of the last sentence or this paragraph); and the Tracts comprising the Unit Area shall continue to exist as separate tracts subject to the laws, rules and regulations of the State of Alabama.  Each oil and gas lease and other agreement covering lands within the Unit Area shall remain in force for sixty (60) days after the date on which this Agreement terminates, and for such further period as is provided by the lease or other agreement.

17.4     CERTIFICATE OF TERMINATION.  Unit Operator upon decision being reached to terminate this Agreement shall immediately file for record in the office or offices where a counterpart of this Agreement is recorded, a certificate to the effect that this Agreement has been terminated according to its terms and stating further the termination date.

17.5     SALVAGING EQUIPMENT UPON TERMINATION.  If not otherwise granted by the leases or other instruments affecting each Tract unitized under this Agreement, Royalty Owners hereby grant Working Interest Owners a period of one (1) year after the date of termination of this Agreement within which to salvage and remove Unit Equipment.

## ARTICLE 18

## EXECUTION

18.1     ORIGINAL, COUNTERPART, OR OTHER INSTRUMENT.  An owner of Oil and Gas Rights may become a party to this Agreement by signing the original of this instrument, a counterpart thereof, or other instrument ratifying and agreeing to be bound by the provisions hereof. The signing of any such instrument shall have the same effect as if all the parties had signed the same instrument. All signature pages to this Agreement or counterparts hereof that are executed by Owners of Oil and Gas Rights may be attached to one copy of this Agreement.

18.2     JOINDER IN DUAL CAPACITY.  Execution as herein provided by any party as either a Working Interest Owner or a Royalty Owner shall commit all interests that may be owned or controlled by such party.

18.3     APPROVAL OF UNIT OPERATING AGREEMENT.  Joinder herein shall constitute approval of the Unit Operating Agreement.

## ARTICLE 19

### DETERMINATIONS BY WORKING INTEREST OWNERS

19.1    DETERMINATIONS BY WORKING INTEREST OWNERS. All decisions, determinations, or approvals by Working Interest Owners hereunder shall be made pursuant to the voting procedure of the Unit Operating Agreement, unless otherwise provided herein.

## ARTICLE 20

### GENERAL

20.1    AMENDMENTS AFFECTING WORKING INTEREST OWNERS.  Amendments hereto or to the Unit Operating Agreement relating wholly to Working Interest Owners may be made if signed or ratified by sixty-six and two thirds percent (66 2/3%) in interest (cost bearing) of the Working Interest Owners unless otherwise provided herein.

20.2    ACTION BY WORKING INTEREST OWNERS. Except as otherwise provided in this Agreement, any action or approval required by Working Interest Owners hereunder shall be in accordance with the provisions of the Unit Operating Agreement.

20.3    SEVERABILITY OF PROVISIONS. The provisions of this Agreement are severable and if any section, sentence, clause or part thereof is held to be invalid for any reason, such invalidity shall not be construed to affect the validity of the remaining provisions of this Agreement.

## ARTICLE 21

### SUCCESSORS AND ASSIGNS

21.1    SUCCESSORS AND ASSIGNS. This Agreement shall extend to, be binding upon, and inure to the benefit of the Parties hereto and their respective heirs, devisees, legal representatives, successors, and assigns, and shall constitute a covenant running with the lands, leases, and interests covered.

**ENTERED INTO** as of the day and year first above written.

[SIGNATURE PAGES FOLLOW]

**UNIT AGREEMENT**
**NORTHEAST BROOKLYN OIL UNIT**
**BROOKLYN FIELD**
**CONECUH COUNTY, ALABAMA**

**UNIT OPERATOR**

PRUET PRODUCTION CO.

ATTEST:

BY: _____     BY: _____
Its: _Secretary_                    Its: _President_

STATE OF MISSISSIPPI    )
COUNTY OF ~~HINDS~~ Madison    )

    I, the undersigned authority, a Notary Public in and for said County in said State, hereby certify that William R. James and Rick J. Calhoon, whose names as President and Secretary, respectively, of PRUET PRODUCTION CO., a corporation, are signed to the foregoing agreement, and who are known to me, acknowledged before me on this day that, being informed of the contents of the agreement, they, as such officers and with full authority, executed the same for and as the act of said corporation.

    GIVEN under my hand this the _5th_ day of _November_, 2018.

                                Amanda Bennett
                                NOTARY PUBLIC
                                My Commission Expires: _6/19/2021_

STATE OF MISSISSIPPI
NOTARY PUBLIC
ID # 120603
AMANDA BENNETT
Commission Expires
June 19, 2021
MADISON COUNTY

**UNIT AGREEMENT**
**NORTHEAST BROOKLYN OIL UNIT**
**BROOKLYN FIELD**
**CONECUH COUNTY, ALABAMA**

## **ROYALTY OWNERS**

SIGNATURE:                                    DATE:

_____            _____

_____            _____

_____            _____

_____            _____

_____            _____

_____            _____

_____            _____

_____            _____

_____            _____

_____            _____

_____            _____

_____            _____

_____            _____

_____            _____

**UNIT AGREEMENT**
**NORTHEAST BROOKLYN OIL UNIT**
**BROOKLYN FIELD,**
**CONECUH COUNTY ALABAMA**

**<u>WORKING INTEREST OWNERS</u>**

SIGNATURE:                                      DATE:

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____



Conecuh

Escambia

4N 12E

4N 13E

3N 12E

3N 13E

PROPOSED NORTHWEST BROOKLYN OIL UNIT

LITTLE CEDAR CREEK OIL UNIT 1

PROPOSED NORTHEAST BROOKLYN OIL UNIT

PROPOSED SOUTHEAST BROOKLYN OIL UNIT

BROOKLYN FIELD

PROPOSED SOUTHWEST BROOKLYN OIL UNIT

Feagin Creek

Polly Creek

Exhibit "A"
Boundary Lines of Unit Area and Tracts

"PROPOSED BROOKLYN OIL UNITS"

PRUET PRODUCTION CO.
Jackson, Mississippi
BROOKLYN FIELD
Conecuh and Escambia Counties, Alabama

**Northeast Brooklyn Oil Unit**
**EXHIBIT "B"**

| Tract | Well | Permit No. | Description | Section | Township-Range | County, State |
|---|---|---|---|---|---|---|
| 1 | | | S/2 of the S/2 of SE/4 | 20 | 4N-13E | Conecuh Co., AL |
| 2 | BOOTHE & CASEY 29-8 | 16583 | NE/4 | 29 | 4N-13E | Conecuh Co., AL |
| 3 | THOMASSON 29-10 | 16512 | SE/4 | 29 | 4N-13E | Conecuh Co., AL |
| 4 | CCLT 32-2 | 16486 | NE/4 | 32 | 4N-13E | Conecuh Co., AL |
| 5 | | | SE/4 OF NW/4 | 21 | 4N-13E | Conecuh Co., AL |
| 6 | CCLT 21-14 | 16635 | SW/4 | 21 | 4N-13E | Conecuh Co., AL |
| 7 | JONES 28-6 | 16623 | NW/4 | 28 | 4N-13E | Conecuh Co., AL |
| 8 | CCLT 28-13 | 16597 | SW/4 | 28 | 4N-13E | Conecuh Co., AL |
| 9 | CCLT 33-4 | 16656-B | NW/4 | 33 | 4N-13E | Conecuh Co., AL |
| 10 | | | NE/4 | 21 | 4N-13E | Conecuh Co., AL |
| 11 | CCLT 21-10, 4-13 | 16570 | SE/4 | 21 | 4N-13E | Conecuh Co., AL |
| 12 | JONES 28-7, 4-13 | 16948 | NE/4 | 28 | 4N-13E | Conecuh Co., AL |
| 13 | CCLT 28-15 | 16682 | SE/4 | 28 | 4N-13E | Conecuh Co., AL |
| 14 | CCLT 33-2, 4-13 | 16788 | NE/4 | 33 | 4N-13E | Conecuh Co., AL |
| 15 | CCLT 22-6 | 16786-B-1 | NW/4 | 22 | 4N-13E | Conecuh Co., AL |
| 16 | CCLT 22-13 | 16621 | SW/4 | 22 | 4N-13E | Conecuh Co., AL |
| 17 | JACKSON 27-6 | 15415 | NW/4 | 27 | 4N-13E | Conecuh Co., AL |
| 18 | CCLT 27-13 | 16723 | SW/4 | 27 | 4N-13E | Conecuh Co., AL |
| 19 | CCLT 34-4 | 16896 | NW/4 | 34 | 4N-13E | Conecuh Co., AL |
| 20 | | | W/2 OF NE/4 | 22 | 4N-13E | Conecuh Co., AL |
| 21 | | | W/2 OF SE/4 | 22 | 4N-13E | Conecuh Co., AL |
| 22 | LEWIS 27-7 | 15710 | NE/4 | 27 | 4N-13E | Conecuh Co., AL |
| 23 | | | W/2 OF SE/4 | 27 | 4N-13E | Conecuh Co., AL |
| 24 | CCLT 34-2 | 17043-B | NE/4 | 34 | 4N-13E | Conecuh Co., AL |
| 25 | | | SW/4 of NW/4 | 35 | 4N-13E | Conecuh Co., AL |

**Total**

Unit Agreement - Northeast Brooklyn Oil Unit
Exhibit "B" as of October 19, 2018



All hydrocarbon feet values based on 10% Porsoity cutoff

PRUET PRODUCTION CO.
Jackson, Mississippi

NorthEast Brooklyn Oil Unit
Conecuh and Escambia Counties, Alabama

**Smackover Zone 1 HCFT**
Exhibit C-1

By: Robert Williams; AAPG, PG-TX #3964
March 9, 2018

Exhibit: No. _____C-1_____
Docket: No._____
Date: No._____

WELL SYMBOLS
- Oil Well
- Plugged and Abandoned
- Shut In Oil and Gas
- Temporarily Abandoned
- Producing Oil
- DRY

0        2,500
FEET



N
PROPOSED NORTHWEST BROOKLYN OIL UNIT
PROPOSED NORTHEAST BROOKLYN OIL UNIT
PROPOSED SOUTHEAST BROOKLYN OIL UNIT
20
21
22
23
26
27
28
29
35
Tract 1
Tract 2
Tract 3
Tract 4
Tract 5
Tract 6
Tract 7
Tract 8
Tract 9
Tract 10
Tract 11
Tract 12
Tract 13
Tract 14
Tract 15
Tract 16
Tract 17
Tract 18
Tract 19
Tract 20
Tract 21
Tract 22
Tract 24
Tract 25
PRUET Hamiter 20-3
SKLAR Craft-Hamiter 20-11 #1
MIDRO Ralls 19-9
PRUET CCL&T 21-2 #1
PRUET CCL&T 21-10, 4-13
PRUET CCL&T 21-14 #1
PRUET CCL&T 22-13 #1
SKLAR Ralls 30-8 #1
PRUET Boothe & Casey 29-8
PRUET Jones 28-6 #1
PRUET Jones 28-7, 4-13
PRUET Jackson 27-6
PRUET Lewis Est. 27-7
SKLAR Thomasson 29-10 #1
PRUET Salter 29-13
PRUET CCL&T 28-13 #1
PRUET CCL&T 28-15 #1
PRUET CCL&T 27-13 #1
SKLAR Hamiter 32-3 #1
PRUET CCL&T 32-2
PRUET CCL&T 33-4 #1
PRUET CCL&T 33-2, 4-13
PRUET CCL&T 34-4 #1
PRUET CCL&T 34-2 #1
SKLAR Johnston-Stewart 32-12 #1
SKLAR Bull 32-10 #1
CCL&T 33-10 #1
CCL&T 34-12 #1
0.027
0.114
0.751
0.592
4.268
0.000
All hydrocarbon feet values based on 6% Porsoity cutoff
WELL SYMBOLS
Oil Well
Plugged and Abandoned
Shut In Oll and Gas
Temporarily Abandoned
Producing Oil
DRY
0
2,500
FEET
Exhibit: No. C-2
Docket: No.
Date: No.
PRUET PRODUCTION CO.
Jackson, Mississippi
NorthEast Brooklyn Oil Unit
Conecuh and Escambia Counties, Alabama
Smackover Zone 4 HCFT
Exhibit C-2
By: Robert Williams; AAPG, PG-TX #3964
March 9, 2018



**All hydrocarbon feet values based on 6% Porsoity cutoff**

WELL SYMBOLS
- Oil Well
- Plugged and Abandoned
- Shut In Oil and Gas
- Temporarily Abandoned
- Producing Oil
- DRY

0 2,500
FEET

Exhibit: No. C-3
Docket: No.
Date: No.

PRUET PRODUCTION CO.
Jackson, Mississippi

NorthEast Brooklyn Oil Unit
Conecuh and Escambia Counties, Alabama

**Smackover Zone 5 HCFT**
**Exhibit C-3**

By: Robert Williams; AAPG, PG-TX #3964
March 9, 2018

**PRUET PRODUCTION CO.**
**EXHIBIT D**

**Northeast Brooklyn Oil Unit Tract Allocation Schedule**
**Tract Participation Schedule (50% HCPV + 25% Best Six Consecutive Months Productivity+25% January - June 2018 Productivity)**

| Tract | Well | Permit No. | Description | Section | Township-Range | Hydrocarbon Pore Volume (Acre-Ft) | HCPV Tract Factor | Best 6 Months Production Total BOE | Best 6 Months Production Tract factor | Jan 2018-June 2018 BOE | Jan 2018-June 2018 Tract factor | Total Productivity Tract factor | Total Tract Factor |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | | S/2 of the S/2 of SE/4 | 20 | 4N-13E | 1.27 | 0.0002769866 | 0 | 0.0000000000 | 0 | 0.0000000000 | 0.0000000000 | 0.0001384933 |
| 2 | BOOTHE & CASEY 29-8 | 16583 | NE/4 | 29 | 4N-13E | 247.95 | 0.0540778092 | 47327 | 0.0761659374 | 6025 | 0.0442092655 | 0.0601876014 | 0.0571327053 |
| 3 | THOMASSON 29-10 | 16512 | SE/4 | 29 | 4N-13E | 471.05 | 0.1027358421 | 65236 | 0.1049878735 | 8407 | 0.0616879470 | 0.0833379102 | 0.0930368762 |
| 4 | CCLT 32-2 | 16486 | NE/4 | 32 | 4N-13E | 447.32 | 0.0975603373 | 67046 | 0.1079008058 | 14043 | 0.1030471530 | 0.1054739794 | 0.1015171583 |
| 5 | | | SE/4 OF NW/4 | 21 | 4N-13E | 4.77 | 0.0010403354 | 0 | 0.0000000000 | 0 | 0.0000000000 | 0.0000000000 | 0.0005201677 |
| 6 | CCLT 21-14 | 16635 | SW/4 | 21 | 4N-13E | 57.27 | 0.0124905672 | 6222 | 0.0100134059 | 451 | 0.0033068330 | 0.0066601195 | 0.0095753433 |
| 7 | JONES 28-6 | 16623 | NW/4 | 28 | 4N-13E | 96.97 | 0.0211491235 | 9110 | 0.0146612228 | 1795 | 0.0131686301 | 0.0139149264 | 0.0175320250 |
| 8 | CCLT 28-13 | 16597 | SW/4 | 28 | 4N-13E | 372.88 | 0.0813249990 | 73182 | 0.1177758072 | 29349 | 0.2153545174 | 0.1665651623 | 0.1239450807 |
| 9 | CCLT 33-4 | 16656-B | NW/4 | 33 | 4N-13E | 322.63 | 0.0703654914 | 66771 | 0.1074582332 | 21403 | 0.1570464570 | 0.1322523451 | 0.1013089183 |
| 10 | | | NE/4 | 21 | 4N-13E | 56.14 | 0.0122441146 | 0 | 0.0000000000 | 0 | 0.0000000000 | 0.0000000000 | 0.0061220573 |
| 11 | CCLT 21-10, 4-13 | 16570 | SE/4 | 21 | 4N-13E | 309.74 | 0.0675541695 | 40711 | 0.0655184456 | 6106 | 0.0448027581 | 0.0551606019 | 0.0613573944 |
| 12 | JONES 28-7, 4-13 | 16948 | NE/4 | 28 | 4N-13E | 175.61 | 0.0383004803 | 664 | 0.0010686116 | 0 | 0.0000000000 | 0.0005343058 | 0.0194173930 |
| 13 | CCLT 28-15 | 16682 | SE/4 | 28 | 4N-13E | 383.81 | 0.0837088282 | 54902 | 0.0883568004 | 8703 | 0.0638579718 | 0.0761073861 | 0.0799081072 |
| 14 | CCLT 33-2, 4-13 | 16788 | NE/4 | 33 | 4N-13E | 374.03 | 0.0815758136 | 53992 | 0.0868922875 | 12446 | 0.0913253500 | 0.0891088187 | 0.0853423162 |
| 15 | CCLT 22-6 | 16786-B-1 | NW/4 | 22 | 4N-13E | 105.94 | 0.0231054774 | 26896 | 0.0432852083 | 3909 | 0.0286809087 | 0.0359830585 | 0.0295442679 |
| 16 | CCLT 22-13 | 16621 | SW/4 | 22 | 4N-13E | 136.26 | 0.0297182589 | 3848 | 0.0061927975 | 9 | 0.0000660395 | 0.0031294185 | 0.0164238387 |
| 17 | JACKSON 27-6 | 15415 | NW/4 | 27 | 4N-13E | 188.11 | 0.0410267259 | 5224 | 0.0084072698 | 20 | 0.0001467545 | 0.0042770122 | 0.0226518690 |
| 18 | CCLT 27-13 | 16723 | SW/4 | 27 | 4N-13E | 226.06 | 0.0493036078 | 14080 | 0.0226597164 | 2338 | 0.0171556057 | 0.0199076610 | 0.0346056344 |
| 19 | CCLT 34-4 | 16896 | NW/4 | 34 | 4N-13E | 401.57 | 0.0875822781 | 67420 | 0.1085027045 | 15786 | 0.1158303366 | 0.1121665206 | 0.0998743993 |
| 20 | | | W/2 OF NE/4 | 22 | 4N-13E | 6.55 | 0.0014285527 | 0 | 0.0000000000 | 0 | 0.0000000000 | 0.0000000000 | 0.0007142764 |
| 21 | | | W/2 OF SE/4 | 22 | 4N-13E | 0.51 | 0.0001112308 | 0 | 0.0000000000 | 0 | 0.0000000000 | 0.0000000000 | 0.0000556154 |
| 22 | LEWIS 27-7 | 15710 | NE/4 | 27 | 4N-13E | 60.26 | 0.0131426852 | 12195 | 0.0196260825 | 3790 | 0.0278099852 | 0.0237180339 | 0.0184303595 |
| 23 | | | W/2 OF SE/4 | 27 | 4N-13E | 34.09 | 0.0074350172 | 0 | 0.0000000000 | 0 | 0.0000000000 | 0.0000000000 | 0.0037175086 |
| 24 | CCLT 34-2 | 17043-B | NE/4 | 34 | 4N-13E | 104.18 | 0.0227216220 | 6541 | 0.0105267901 | 1704 | 0.0125034868 | 0.0115151384 | 0.0171183802 |
| 25 | | | SW/4 of NW/4 | 35 | 4N-13E | 0.09 | 0.0000196290 | 0 | 0.0000000000 | 0 | 0.0000000000 | 0.0000000000 | 0.0000098145 |
| | **Total** | | | | | 4,585.060 | 1.0000000000 | 621367 | 1.0000000000 | 136282 | 1.0000000000 | 1.0000000000 | 1.0000000000 |

**EXHIBIT E**
**TO UNIT AGREEMENT FOR THE  NORTHEAST BROOKLYN OIL UNIT**

**SUMMARY OF UNIT REVENUE INTEREST**

| Owner | Total Unit Interest | Type Interest |
|---|---|---|
| ADRIAN C ALLEN, TRUSTEE | | |
| ADRIAN C ALLEN REVOCABLE TRUST | 0.00142584 | R |
| ADRIENNE P WATKINS, TRUSTEE OF THE ADRIENNE P | | |
| WATKINS TRUST | 0.00108210 | R |
| JOHN H GRAY, TRST | | |
| ADRIENNE WATKINS IRRE MIN TRST | | |
| F/B/O JACK WATKINS, JR FAMILY | 0.00107307 | R |
| GERALD S HERMAN, TRST OF THE | | |
| ADRIENNE WATKINS IRRE MIN TRT | | |
| F/B/O ADRIENNE SNIVELY FAMILY | 0.00107307 | R |
| ALBERT CLARK TATE III | 0.00012152 | R |
| ALBERT W KEY | 0.00009003 | R |
| ALFRETINA PHARR | 0.00004621 | R |
| ALFRETINA PHARR-SANDERS | 0.00011812 | R |
| ALICIA LEWIS | 0.00000960 | R |
| ALITHIA BARHAM | 0.00006085 | R |
| ALLEN C PHILLIPS | 0.00559211 | R |
| AMANDA J  LITTLES | 0.00026151 | R |
| AMY C HAMITER PYLANT | 0.00103096 | R |
| ANDRE BURTON | 0.00000005 | R |
| ANITA E FLORENCE | 0.00001800 | R |
| ANNA DOWNING | 0.00019010 | R |
| ANTOINETTE WILSON | 0.00008217 | R |
| ARISSA WIGGS | 0.00001049 | R |
| ARTHUR HILL JR | 0.00001141 | R |
| ASHLEY PARRIMON | 0.00002950 | R |
| ATWOOD M KIMBROUGH | 0.00006753 | R |
| AUBURN UNIVERSITY | 0.00316181 | R |
| AYUANNA WIGGS | 0.00001049 | R |
| BARBARA J SCOTT | 0.00013497 | R |
| JAMES H BARROW, III, SUCCESSOR TRUSTEE OF THE | | |
| BARROW FAMILY REVOCABLE TRUST | 0.00068692 | R |
| BETTY JO ALEXANDER | 0.00009594 | R |
| BLACK STONE MINERALS COMPANY, LLC | 0.00044558 | R |
| BLACK STONE NATURAL RES I LP | 0.00040347 | R |
| BOBBIE SMALL | 0.00002028 | R |
| CAMILLA HUXFORD | 0.00106416 | R |
| CARL LIKELY | 0.00000889 | R |
| CARMEN REED | 0.00003557 | R |
| CARY PAGE | 0.00125987 | R |
| CATHERINE STRINGER | 0.00001779 | R |
| CATHRYN ABBOTT JONES | 0.00034346 | R |
| CEDAR CREEK LAND & TIMBER INC | 0.11388630 | R |
| CHANDRA JONES | 0.00001779 | R |
| CHARLES D SEARCY | 0.00005935 | R |
| CHARLES FOUNTAIN | 0.00008603 | R |
| CHARLES R GODWIN | 0.00005038 | R |
| CHARLES ROBERT TAIT III | 0.00011342 | R |
| CHARLES ROBERT TAIT JR | 0.00009073 | R |
| CHERYL ROGERS | 0.00000960 | R |
| CHARLES J SHAFFER & KATRINA J SHAFFER, CO- | | |
| TRUSEES | | |
| CK SHAFFER FAMILY TRUST | 0.00023764 | R |
| CLAUDE E HAMILTON  III | 0.00076275 | R |
| CLAYTON COBB JR | 0.00016946 | R |
| COLEMAN W FOUNTAIN | 0.00008603 | R |
| CORADINE THOMAS | 0.00008217 | R |
| COURTNEY JOANA JONES | 0.00127691 | R |
| COURTNEY JONES | 0.00000000 | R |
| CYNTHIA RILLING | 0.00047529 | R |
| DAN M DOWNING | 0.00019010 | R |
| DANIEL W MCMILLAN | 0.00064564 | R |
| DARCIA DUBOSE CHEEKS | 0.00073950 | R |
| DARREL PRESTON BRANNON | 0.00011342 | R |

## EXHIBIT E
## TO UNIT AGREEMENT FOR THE NORTHEAST BROOKLYN OIL UNIT

**SUMMARY OF UNIT REVENUE INTEREST**

| Owner | Total Unit Interest | Type Interest |
|---|---|---|
| DARRYL ANDRE PHARR | 0.00001369 | R |
| DAVID EARL MILLER | 0.00035601 | R |
| DAVID J PHARR | 0.00001369 | R |
| DAVID L BISSMEYER | 0.00000299 | R |
| DAVID LEE PHARR | 0.00008217 | R |
| DAWN HILL | 0.00001141 | R |
| DEBORAH JEAN SAMUEL GREEN | 0.00001264 | R |
| DEBORAH SHAFFER | 0.00023764 | R |
| DEBRA COBB DAVIS | 0.00000180 | R |
| DEBRA HURSEY-LEE | 0.00003042 | R |
| DEMING TIMBERLAND LLC | 0.00209019 | R |
| DENISE FRANCE | 0.00001264 | R |
| DIANA ADELE TAIT CRABTREE | 0.00011342 | R |
| DIANE WOODS CARTER | 0.00007642 | R |
| DONALD TOLLIVER | 0.00001264 | R |
| DORIS HILL DREW | 0.00004563 | R |
| DOUGLAS M LITTLES | 0.00000885 | R |
| DOUGLAS SAMUEL | 0.00000843 | R |
| DOWNING FAMILY PROPERTIES LLC | 0.00663719 | R |
| DOWNING MCDOWELL MINERALS LLC | 0.00019010 | R |
| DR WILLIAM HAMILTON  JR | 0.00076275 | R |
| E L MCMILLAN III | 0.00064564 | R |
| EARL L JONES | 0.00003557 | R |
| PAUL D OWENS, JR, ED LEIGH MCMILLAN III, DANIEL MCMILLIAN, TRUSTEES OF THE ED LEIGH MCMILLIAN TRUST | 0.00007744 | R |
| J CARROLL CHASTAIN, EXECUTOR OF THE ESTATE OF EDWARD D SCRUGGS, JR. | 0.00031033 | R |
| EDWARD MCMILLAN TATE | 0.00012152 | R |
| ELIZABETH ANN SALTER BOOTHE | 0.00217933 | R |
| ELTON CROSBY | 0.00008603 | R |
| ELVIRA MCMILLAN TATE | 0.00080523 | R |
| ELVIRA TATE HOSKINS | 0.00012152 | R |
| ERIN LEWIS | 0.00000960 | R |
| ERIN PEGROSS | 0.00001141 | R |
| EVELYN DELOIS ERVIN | 0.00002880 | R |
| EVELYN M TOUSSAINT | 0.00006225 | R |
| FELICIA HILL | 0.00000676 | R |
| FLOWING WELL LLC | 0.00293172 | R |
| FRANCETTA PHARR-WILLIAMS | 0.00008217 | R |
| FREDERICK CLARK | 0.00001054 | R |
| GEORGE LEWIS JR | 0.00002880 | R |
| GEORGE S DENNIS | 0.00003926 | R |
| GLORIA M LITTLES-ANDRADES | 0.00005410 | R |
| HAMILTON PLEUS PROPERTIES, LLC | 0.00076275 | R |
| HARDY LITTLES  JR | 0.00000885 | R |
| HAROLD W HAMITER | 0.00001385 | R |
| HAYWOOD HANNA III | 0.00015516 | R |
| HELEN HILL BROWN | 0.00002028 | R |
| HERBERT LITTLES | 0.00044865 | R |
| HERBERT PARRIMON | 0.00002950 | R |
| HERMINE M DOWNING | 0.00063084 | R |
| HERSCHEL LEE ABBOTT III | 0.00034346 | R |
| HUBERT E KIDD | 0.00001188 | R |
| IAN FLORENCE | 0.00001800 | R |
| THOMAS E MCMILLAN & DANIEL W MCMILLAN, TRUSTEES IVA LEE MCMILLAN TRUST | 0.00464642 | R |
| Adrienne P Watkins, Trustee Jack M Watkins Sr Trust | 0.00322824 | R |
| JACK WHITE | 0.00008603 | R |
| JACQUELINE COSBY-HART | 0.00000843 | R |
| JAMES A BULL | 0.00611068 | R |
| JAMES ADRIAN ALLEN | 0.00047529 | R |

**EXHIBIT E**
**TO UNIT AGREEMENT FOR THE  NORTHEAST BROOKLYN OIL UNIT**

**SUMMARY OF UNIT REVENUE INTEREST**

| Owner | Total Unit Interest | Type Interest |
|---|---|---|
| JAMES BOYD BEL | 0.00068692 | R |
| JAMES C KIMBROUGH | 0.00002251 | R |
| JAMES E HAMITER | 0.00207577 | R |
| JAMES HILL | 0.00004563 | R |
| JAMES HOWARD TOLLIVER | 0.00007199 | R |
| JAMES K COOK AND SUSAN M COOK | 0.00007913 | R |
| JANE D DUNAWAY | 0.00016898 | R |
| JEAN KIRBY JONES | 0.00053208 | R |
| JEAN MILLER STIMPSON | 0.00035601 | R |
| JEANNE BEL INGRAHAM | 0.00068692 | R |
| JEFFERY LIKELY | 0.00000889 | R |
| JENNIFER JONES-BUTLER | 0.00003557 | R |
| JENNY H MCGOWIN | 0.00038137 | R |
| JENNY H MCGOWIN | 0.00000000 | R |
| JENNY H MCGOWIN | 0.00000000 | R |
| JENNY H MCGOWIN | 0.00000000 | R |
| JEPPIE CORTEZ SAMUEL JR | 0.00001264 | R |
| JERLENE JONES STEVENSON | 0.00012450 | R |
| JERRY HUCKABY | 0.00006085 | R |
| JIMMIE LAMONT DUREN | 0.00001369 | R |
| JIMMY B JACKSON | 0.00100032 | R |
| JIMMY W ADKISSON | 0.00008603 | R |
| JOAN P BEL WHITT, TRUSTEE OF THE ERNEST F BEL FAMILY TRUST | 0.00068692 | R |
| JOE NATHAN LITTLES | 0.00005410 | R |
| JOE NATHAN LITTLES AND SARAH LITTLES | 0.00011614 | R |
| JOHN E DOWNING | 0.00016898 | R |
| JOHN K LITTLES | 0.00049390 | R |
| JOHN K LITTLES AND BESSIE M LITTLES | 0.00008732 | R |
| JOHN R MILLER III | 0.00049370 | R |
| JOHN ROBERT DOWNING | 0.00004130 | R |
| JOHNNY M JACKSON | 0.00056051 | R |
| JOSEPH R FUQUA | 0.00008603 | R |
| JOYCE A JONES | 0.00003557 | R |
| KARL R GUSTAFSON | 0.00002124 | R |
| KATHERINE M OWENS | 0.00129130 | R |
| KATHLEEN E JONES | 0.00003557 | R |
| KAY MITCHELL | 0.00015516 | R |
| KEITH DOROME HILL | 0.00004563 | R |
| KENNETH BARHAM | 0.00006085 | R |
| KENNETH CALVIN SIMMONS | 0.00000796 | R |
| KERSH GROUP LLC | 0.00121515 | R |
| KNIGHT PETROLEUM LP | 0.00000594 | R |
| LAURA W GRIER | 0.00053208 | R |
| LENARDO BURTON | 0.00073950 | R |
| LEWIS S  HAMILTON | 0.00076275 | R |
| LINDA H CHAVERS | 0.00136795 | R |
| LISA D HEATON | 0.00016898 | R |
| LISA D NORDMEYER | 0.00009505 | R |
| LYNN ELLEN COBB COLLINS | 0.00000180 | R |
| M TRAVIS HOLZBORN | 0.00031542 | R |
| MAE ADELE TAIT SHARP | 0.00009073 | R |
| MARGARET LEWIS | 0.00002880 | R |
| MARION COLLEEN CHILDRESS | 0.00111690 | R |
| MARY G TOLLIVER | 0.00009127 | R |
| MARY SHELSA FRYE ALEXANDER | 0.00008254 | R |
| MATAGORDA B1 LP | 0.00005100 | R |
| MELODY CRAWFORD, CUSTODIAN FOR THE BENEFIT OF MAKAYLA HILL | 0.00001185 | R |
| MEREDITH MCCLEARY | 0.00026092 | R |
| MICHAEL BRIAN CROOKSHANK | 0.00011342 | R |
| MICHAEL ROBBINS | 0.00000889 | R |
| MICHAEL T LEWIS | 0.00000960 | R |
| MILYN M WOODS | 0.00003821 | R |

EXHIBIT E
TO UNIT AGREEMENT FOR THE  NORTHEAST BROOKLYN OIL UNIT

**SUMMARY OF UNIT REVENUE INTEREST**

| Owner | Total Unit Interest | Type Interest |
|-------|---------------------|---------------|
| MINNIE STALLWORTH | 0.00000885 | R |
| MINNIE TATE DUBILIER | 0.00012152 | R |
| MONTE MCGOUGIN | 0.00008603 | R |
| MYRON HILL | 0.00001014 | R |
| NANCY M MELTON | 0.00035601 | R |
| NATHAN JAMES BULL | 0.00611068 | R |
| NATHANIEL ROBBINS | 0.00000889 | R |
| NEWPORT FIVE LLC | 0.00048606 | R |
| NORA REGINA PAGE | 0.00008217 | R |
| NORMAN R FINDLEY | 0.00008603 | R |
| OWEN BARHAM | 0.00006085 | R |
| PAMELA MILDRED JONES | 0.00008300 | R |
| PASIA J WOODS | 0.00001274 | R |
| PATRICIA D MCFARLAND | 0.00005679 | R |
| PATRICIA LEWIS | 0.00000960 | R |
| PATRICIA LOVELACE | 0.00008300 | R |
| PATSY R SAMUEL TILLERY | 0.00006293 | R |
| PERCY HART | 0.00001054 | R |
| PERRY L SESSIONS AND MARGARET ANN SESSIONS | 0.00316590 | R |
| PETER B HAMILTON  JR | 0.00068692 | R |
| PEYTON H CARMICHAEL | 0.00076275 | R |
| PHILIPPA PEYTON M  BETHEA | 0.00038137 | R |
| PHILLIP FLORENCE | 0.00003600 | R |
| PHILLIPS OPERATIONS LLC | 0.00242652 | R |
| PROBATE COURT CLERK FOR BUSTER JOHNSON | 0.00009483 | R |
| PROBATE COURT CLERK FOR KAREN HILL HAMILTON | 0.00002107 | R |
| PROBATE COURT CLERK FOR LEON HILL | 0.00009483 | R |
| PROBATE COURT CLERK FOR ODIELS CLIFTON HILL | 0.00002107 | R |
| RALLS PROPERTIES LLC | 0.00081853 | R |
| FARMERS NATIONAL CO, AGENT | | |
| RANDALL M GOODNER TRUST SHARE A | 0.00130142 | R |
| REBECCA LOUISE SALTER CASEY | 0.00217933 | R |
| REGINALD PHARR | 0.00008217 | R |
| RHONDA WATSON-POWERS | 0.00001521 | R |
| RICHARD COBB | 0.00003950 | R |
| ROABIE DOWNING JOHNSON | 0.00050693 | R |
| ROABIE DOWNING JOHNSON AND JERRY LEROY JOHNSON | 0.00000001 | R |
| ROBERT C MCMILLAN, TRUSTEE | | |
| ROBERT C MCMILLAN 2011 REVOC TRUST | 0.00129130 | R |
| ROBERT H KIRBY | 0.00053208 | R |
| ROBERT J SAMUEL | 0.00009439 | R |
| ROCHELLE MARIE CASLIN | 0.00001521 | R |
| ROCK SPRINGS ENERGY LLC | 0.00001197 | R |
| ROCK SPRINGS MINERALS I LLC | 0.00055075 | R |
| RODERICK L BROWN | 0.00001521 | R |
| FARMERS NATIONAL CO, AGENT | | |
| RODERICK W GOODNER TRUST SHARE A | 0.00130142 | R |
| RODNEY ALEXANDER BROWN | 0.00001521 | R |
| ROYCE L WOODS | 0.00001274 | R |
| RUSSELL ALLEN COBB | 0.00007199 | R |
| REGIONS BANK, TRUSTEE | | |
| SARA B NEAL MARITAL TRUST | 0.00077440 | R |
| SARAH ETHEL FAYE GOFF | 0.00008254 | R |
| SHAUN A WOODS | 0.00001274 | R |
| SHAW ENERGY INC | 0.00003926 | R |
| SHERONE HILL | 0.00002028 | R |
| SOURCE ROCK MINERALS II LLC | 0.00022449 | R |
| SPANISH FORT ROYALTY LLC | 0.00003926 | R |
| SSC MINERALS LLC | 0.00091136 | R |
| ST PALESTINE MISSIONARY BAPTIST | 0.00049519 | R |
| STELLA LIVINGSTON HAWKINS | 0.00050693 | R |
| STEPHANIE COBB KELLER | 0.00000180 | R |

**EXHIBIT E**
**TO UNIT AGREEMENT FOR THE  NORTHEAST BROOKLYN OIL UNIT**

**SUMMARY OF UNIT REVENUE INTEREST**

| Owner | Total Unit Interest | Type Interest |
|---|---|---|
| STIRLING H HAMILTON AND CECILIA C HAMILTON, CO-TRUSTEES OF THE STRILING H. HAMILTON, JR. ESTATE | 0.00076275 | R |
| SUSAN ALLEN WINCHESTER | 0.00047529 | R |
| SUZANNE C ALLEN, TRUSTEE | | |
| SUZANNE ALLEN REVOCABLE TRUST | 0.00142584 | R |
| SUZANNE W ZIMMER | 0.00053209 | R |
| TAMELA MCCLINTON | 0.00001369 | R |
| TED MCCLEARY | 0.00026092 | R |
| TERRENCE HILL | 0.00000676 | R |
| TERRY M JORDAN | 0.00008603 | R |
| | | |
| MICHAEL A SHAFFER & CLARISSA SHAFFER, TRUSTEES | | |
| THE SHAFFER FAMILY LIVING TRUST | 0.00023764 | R |
| THERIE HILL JR | 0.00002028 | R |
| THOMAS E MCMILLAN  JR | 0.00080524 | R |
| TITANIA CHRISTIAN | 0.00001369 | R |
| TRACE A HAMITER | 0.00103096 | R |
| TRANT L KIDD, TRUSTEE | | |
| TRANT L KIDD SPECIAL TRUST | 0.00006998 | R |
| TRINA MARVETTE DUREN | 0.00001369 | R |
| TSA FAMILY LTD PARTNERSHIP | 0.00003926 | R |
| ULANDRA HENRY | 0.00000676 | R |
| VERA FRANCES TAIT | 0.00009073 | R |
| W T NEAL FAMILY STOCK LLC | 0.00745580 | R |
| W VINCENT MASON | 0.00006225 | R |
| WALTER BYRON JONES JR | 0.00008300 | R |
| WANDA L CONERLY | 0.00001014 | R |
| WAYNE COBB | 0.00000180 | R |
| JAMES R SIMPSON, RICHARD A SIMPSON, & WENDELL P SIMPSON III, TRUSTEES | | |
| PAMELA L SIMPSON IRR TRUST DTD JUNE 16, 2016 | 0.00031033 | R |
| WILEY W DOWNING IV | 0.00009505 | R |
| WILLIAM FENNER FRYE IV | 0.00008254 | R |
| WILLIAM MACK OAKES | 0.00186800 | R |
| WILLIAM W BARROW | 0.00008603 | R |
| WILLIE IRVING LITTLES | 0.00000885 | R |
| WILLIE PEARL KINCAID | 0.00006085 | R |
| ZORA LEWIS | 0.00000960 | R |
| | | |
| ASPEN ENERGY INC | 0.00208713 | O |
| JEFFREYS & POWELL LLC | 0.00198224 | O |
| DOUGLAS LADSON MCBRIDE III | 0.00061898 | O |
| JOYCO INVESTMENTS LLC | 0.00061898 | O |
| SUE HANSON MCBRIDE | 0.00061898 | O |
| BABE DEVELOPMENT COMPANY LLC | 0.00061898 | O |
| JULIE SCOTT MCBRIDE | 0.00061898 | O |
| ROCK SPRINGS MINERALS I LLC | 0.00059895 | O |
| Ezelle Energy LLC | 0.00043185 | O |
| Eustes Energy Inc | 0.00043185 | O |
| LAWRENCE R BARIA | 0.00084545 | O |
| Daboil Resources, LC | 0.00025911 | O |
| PATRICK J MCBRIDE | 0.00014494 | O |
| SOURCE ROCK MINERALS II LLC | 0.00013589 | O |
| FRANK A PERKINS | 0.00012128 | O |
| Source Rock Minerals II, LLC | 0.00011646 | O |
| RONNIE FOUTS | 0.00010397 | O |
| MARY TAYLOR MICHAEL | 0.00010397 | O |
| Christopher Ashley Farrell | 0.00009756 | O |
| SELLARS FAMILY LLC | 0.00005605 | O |
| OPAL L KIDD FAMILY PARTNERSHIP LTD | 0.00005043 | O |
| Valhalla Royalty, LLC | 0.00004308 | O |
| OPAL L KIDD FAMILY PARTNERSHIP LTD | 0.00003644 | O |
| PFLANZER PARTNERS LTD | 0.00002899 | O |
| MAX C JOHNSON | 0.00001242 | O |

EXHIBIT E
TO UNIT AGREEMENT FOR THE  NORTHEAST BROOKLYN OIL UNIT

**SUMMARY OF UNIT REVENUE INTEREST**

| Owner | Total Unit Interest | Type Interest |
|---|---|---|
| HARVEST GAS MANAGEMENT LLC | 0.00000855 | O |
| ROCK SPRINGS ENERGY LLC | 0.00000725 | O |
| Rock Springs Oil Co. | 0.00000621 | O |
| WSK PROPERTIES LLC | 0.00000488 | O |
| TRANT L KIDD FAMILY PART LTD | 0.00000456 | O |
| DAVID L BISSMEYER | 0.00000337 | O |
| JOYCE M SELLARS, TRUSTEE OF THE SELLARS FAMILY TRUST | 0.00000193 | O |
| TRANT L KIDD, TRUSTEE | | |
| TRANT L KIDD SPECIAL TRUST | 0.00000151 | O |
| HUBERT E KIDD | 0.00000034 | O |
| M JOHNSON INVESTMENT PTN I | 0.00000033 | O |
| TRANT L KIDD FAMILY PART LTD | 0.00000032 | O |
| KNIGHT PETROLEUM LP | 0.00000017 | O |
| **TOTAL ROYALTY AND OVERRIDING ROYALTY INTEREST** | 0.24678259 | |

Working Interest Ownership

| | | |
|---|---|---|
| AEH INVESTMENTS LLC | 0.00738274 | W |
| ALFRETINA PHARR-SANDERS | 0.00000103 | W |
| ANDERSON EXPLORATION ENERGY | 0.02204462 | W |
| ANTOINETTE WILSON | 0.00000051 | W |
| ASPEN ENERGY INC | 0.01942678 | W |
| B & H Royalty | 0.00000446 | W |
| BANTAM CREEK LLC | 0.00005893 | W |
| BARBARA M SUGAR | 0.00861034 | W |
| BLACK STONE ENERGY COMPANY LLC | 0.00121042 | W |
| BROOKLYN OIL AND GAS, LLC | 0.01478339 | |
| Bundero Investment Company, L.L. | 0.00041225 | W |
| C H OIL AND GAS LLC | 0.00264538 | W |
| CENTRAL PETROLEUM INC | 0.00088179 | W |
| CHATEAU BLANCHE LLC | 0.00042836 | W |
| BOBBIE COLEMAN, TRUSTEE | | |
| COLEMAN REVOCABLE TRUST | 0.00590620 | W |
| CORADINE THOMAS | 0.00000051 | W |
| Craft Exploration Company L.L.C. | 0.00031916 | W |
| CROW PARTNERS LTD | 0.00064258 | W |
| DARCIA DUBOSE CHEEKS | 0.00000463 | W |
| DARLENE K HALL | 0.00590620 | W |
| DARRYL ANDRE PHARR | 0.00000009 | W |
| DAVID J PHARR | 0.00000009 | W |
| DAVID LEE PHARR | 0.00000051 | W |
| DBC RESOURCES LP | 0.04309751 | W |
| DCOD LLC | 0.03765200 | W |
| DENISE FRANCE | 0.00009482 | W |
| DENLENE BURTON | 0.00000023 | W |
| DENNIE L BURTON, JR | 0.00000023 | W |
| Dickson Oil & Gas, LLC | 0.00036570 | W |
| DON B SAUNDERS TRUSTEE | | |
| DON B SAUNDERS TRUST | 0.00472496 | W |
| DONALD TOLLIVER | 0.00009482 | W |
| DOUBLEPINE INVESTMENTS LTD | 0.00011787 | W |
| EDWARD L YARBROUGH JR | 0.00118124 | W |
| EL DORADO GULF COAST PRODUCTION LLC | 0.00157974 | W |
| Fant Energy Limited | 0.00365704 | W |
| FIDDLER INVESTMENTS | 0.01255062 | W |
| FOUR D LLC | 0.00472496 | W |
| FPCC USA, Inc. | 0.00451696 | W |
| Francetta Williams | 0.00000051 | W |
| FRANKS EXPLORATION CO LLC | 0.05788072 | W |
| GASTON OIL COMPANY INC | 0.01328894 | W |
| GJR INVESTMENTS INC | 0.00472496 | W |
| GOTHAM ENERGY LLC | 0.00131505 | W |

**EXHIBIT E**
**TO UNIT AGREEMENT FOR THE  NORTHEAST BROOKLYN OIL UNIT**

**SUMMARY OF UNIT REVENUE INTEREST**

| Owner | Total Unit Interest | Type Interest |
|---|---|---|
| HALL AND HALL LLC | 0.00217053 | W |
| HALL MANAGEMENT LLC | 0.00590620 | W |
| HANSON OPERATING CO INC | 0.04415410 | W |
| WELLS FARGO BANK NA, TRST | | |
| HARKNESS A DUNCAN FAMILY TRUST | 0.00472496 | W |
| HUGHES 2000 CT LLC | 0.09268150 | W |
| HUGHES OIL SOUTH LLC | 0.07097623 | W |
| J & A HARRIS LP | 0.04782247 | W |
| JCE GALBRAITH OIL & GAS LLC | 0.00590620 | W |
| JF Howell Interests, LP | 0.00168889 | W |
| JIMMIE LAMONT DUREN | 0.00000009 | W |
| JIMMY B JACKSON | 0.00020911 | W |
| JJS Interests Escambia, LLC | 0.00362364 | W |
| JMS OIL & GAS HOLDINGS LLC | 0.00232170 | W |
| JOE R WHITE JR | 0.00010002 | W |
| JOHNNY M JACKSON | 0.00020911 | W |
| JURA SEARCH INC | 0.00161449 | W |
| Kayetta B Snow | 0.00000023 | W |
| Kidd Production, Ltd | 0.00003482 | W |
| KING OIL LLC | 0.00022174 | W |
| KKS OIL & GAS LTD | 0.00157974 | W |
| KMR INVESTMENTS LLC | 0.01736422 | W |
| Krystle Burton | 0.00000023 | W |
| KUDZU OIL PROPERTIES LLC | 0.00250058 | W |
| Kwazar Resources, LLC | 0.00001161 | W |
| LAMANCHA INVESTMENTS II LLC | 0.00042836 | W |
| LANDMARK EXPLORATION LLC | 0.00238209 | W |
| LEANNE D FORD | 0.00130232 | W |
| Lenardo Burton | 0.00000348 | W |
| LEONARD E WILLIAMS | 0.00472496 | W |
| M JOHNSON INVESTMENT PTN I | 0.00440086 | W |
| M JOHNSON INVESTMENT PTN II | 0.00032410 | W |
| Marksco, L.L.C. | 0.00073141 | W |
| MARLIN EXPLORATION INC | 0.00210446 | W |
| MATAGORDA WI LLC | 0.00007271 | W |
| MAX C JOHNSON | 0.00003472 | W |
| McCombs Energy Ltd., LLC | 0.00821793 | W |
| NORA REGINA PAGE | 0.00000051 | W |
| NORTHSTAR PRODUCING I LIMITED | 0.00066138 | W |
| OPAL L KIDD FAMILY PARTNERSHIP LTD | 0.00034031 | W |
| PAM LIN CORPORATION | 0.00885929 | W |
| PATRICK J MCBRIDE | 0.00118785 | W |
| PAULA W DENLEY LLC | 0.00217053 | W |
| PETRODRILL LLC | 0.00042836 | W |
| PETROLEUM INVESTMENTS INC | 0.00590620 | W |
| PFLANZER PARTNERS LTD | 0.00096202 | W |
| Pickens Financial Group, LLC | 0.00159433 | W |
| PINE ENERGIES INC | 0.00275177 | W |
| PRUET PRODUCTION CO | 0.00590620 | W |
| RAB OIL & GAS HOLDINGS LLC | 0.00236248 | W |
| REGINALD PHARR | 0.00000051 | W |
| Resource Ventures, LLC | 0.00003980 | W |
| RIDGWAY MANAGEMENT INC | 0.00088179 | W |
| Rio Neches Properties, LLC | 0.00001339 | W |
| RIVER BOTTOM ACREAGE | 0.01114717 | W |
| Roosth 806, Ltd. | 0.00001339 | W |
| ROYALTY EXPLORATION LLC | 0.00527046 | W |
| TARA RUDMAN & IRA SILVERMAN, CO-TRSTS | | |
| RUDMAN  FAMILY TRUST | 0.00005893 | W |
| RYCO EXPLORATION LLC | 0.00688663 | W |
| SAWYER DRILLING & SERVICE INC | 0.01181239 | W |
| SELLARS FAMILY LLC | 0.00041000 | W |
| SENEFF 2007 INVESTMENT LLC | 0.00004077 | W |
| SHELLEY MARIE CHAVANNE | 0.00021966 | W |

**EXHIBIT E**
**TO UNIT AGREEMENT FOR THE  NORTHEAST BROOKLYN OIL UNIT**

**SUMMARY OF UNIT REVENUE INTEREST**

| Owner | Total Unit Interest | Type Interest |
|---|---|---|
| Sklarco, LLC | 0.00944651 | W |
| SPINDLETOP OIL & GAS CO | 0.02029627 | W |
| Steven E. Calhoun | 0.00001161 | W |
| STROUD FAMILY LLC | 0.00240003 | W |
| SUGAR OIL PROPERTIES LP | 0.00885929 | W |
| C SUGAR & T YOUNGBLOOD, CO-TRSTE | | |
| SUGAR PROPERTIES TRUST | 0.00024895 | W |
| SUMMIT LLC | 0.00217053 | W |
| TAMELA MCCLINTON | 0.00000009 | W |
| TERESA RUDMAN AS TRST | | |
| THE TARA RUDMAN REVOCABLE TRUST | 0.00005893 | W |
| Tauber Exploration & Production C | 0.00079790 | W |
| THE RUDMAN PARTNERSHIP | 0.00194479 | W |
| Tiembo Ltd. | 0.00063832 | W |
| TISDALE NATURAL RESOURCES | 0.00206344 | W |
| TITANIA CHRISTIAN | 0.00000009 | W |
| TOM YOUNGBLOOD | 0.01182031 | W |
| TRANT L KIDD FAMILY PART LTD | 0.00000537 | W |
| TRIMBLE ENERGY LLC | 0.00011787 | W |
| TRINA MARVETTE DUREN | 0.00000009 | W |
| TYLER OIL & GAS LLC | 0.00085665 | W |
| W D MOUNGER | 0.00590620 | W |
| WALLACE & WALLACE LLC | 0.00217053 | W |
| William Tavis Pate & Claudette Pate | 0.00008928 | W |
| TERESA RUDMAN AND IRA SILVERMAN, CO-EXECUTORS | | |
| OF THE ESTATE OF WOLFE E RUDMAN | 0.00059316 | W |
| WSK PROPERTIES LLC | 0.00000537 | W |
| | | |
| TOTAL WORKING INTEREST REVENUE | 0.75321741 | |
| TOTAL UNIT RESERVE INTEREST | 1.00000000 | |

**SUMMARY OF UNIT OWNERSHIP AS COST ARE SHARED**
**(Gross Working Interest)**

| Gross Working Interest | Total Unit Interest | |
|---|---|---|
| AEH INVESTMENTS LLC | 0.00991701 | GWI |
| ALFRENTINA PHARR SANDERS | 0.00000103 | GWI |
| ANDERSON EXPLORATION ENERGY | 0.02953035 | GWI |
| ANTOINETTE WILSON | 0.00000051 | GWI |
| ASPEN ENERGY INC | 0.02603069 | GWI |
| B & H ROYALTY | 0.00000446 | GWI |
| BANTAM CREEK LLC | 0.00007911 | GWI |
| BARBARA M SUGAR | 0.01156600 | GWI |
| BLACK STONE ENERGY COMPANY LLC | 0.00168422 | GWI |
| BOBBIE COLEMAN, TRUSTEE | | |
| COLEMAN REVOCABLE TRUST | 0.00793361 | GWI |
| BROOKLYN OIL AND GAS, LLC | 0.01957519 | GWI |
| Bundero Investment Company, L.L. | 0.00055930 | GWI |
| C H OIL AND GAS LLC | 0.00354366 | GWI |
| CENTRAL PETROLEUM INC | 0.00118122 | GWI |
| CHATEAU BLANCHE LLC | 0.00057397 | GWI |
| CORADINE THOMAS | 0.00000051 | GWI |
| Craft Exploration Company L.L.C. | 0.00043301 | GWI |
| CROW PARTNERS LTD | 0.00086101 | GWI |
| DARCOA DUBOSE CHEEKS | 0.00000463 | GWI |
| DARLENE K HALL | 0.00793361 | GWI |
| DARRYL ANDRE PHARR | 0.00000009 | GWI |
| DAVID JOSHUA PHARR | 0.00000009 | GWI |
| DAVID LEE PHARR | 0.00000051 | GWI |
| DBC RESOURCES LP | 0.05789144 | GWI |
| DCOD LLC | 0.05057674 | GWI |
| DENISE FRANCE | 0.00009482 | GWI |

**EXHIBIT E**
**TO UNIT AGREEMENT FOR THE  NORTHEAST BROOKLYN OIL UNIT**

**SUMMARY OF UNIT REVENUE INTEREST**

| Owner | Total Unit Interest | Type Interest |
|---|---|---|
| DENLENE BURTON | 0.00000023 | GWI |
| DENNIS L. BURTON, JR. | 0.00000023 | GWI |
| Dickson Oil & Gas, LLC | 0.00049616 | GWI |
| DON B SAUNDERS TRUSTEE | | |
| DON B SAUNDERS TRUST | 0.00634688 | GWI |
| DONALD TOLLIVER | 0.00009482 | GWI |
| DOUBLEPINE INVESTMENTS LTD | 0.00015822 | GWI |
| EDWARD L YARBROUGH JR | 0.00158672 | GWI |
| EL DORADO GULF COAST PRODUCTION LLC | 0.00211669 | GWI |
| Fant Energy Limited | 0.00496157 | GWI |
| FIDDLER INVESTMENTS | 0.01685891 | GWI |
| FOUR D LLC | 0.00634688 | GWI |
| FPCC USA, Inc. | 0.00613769 | GWI |
| FRANCETTA WILLIAMS | 0.00000051 | GWI |
| FRANKS EXPLORATION CO LLC | 0.07774933 | GWI |
| GASTON OIL COMPANY INC | 0.01785061 | GWI |
| GJR INVESTMENTS INC | 0.00634688 | GWI |
| GOTHAM ENERGY LLC | 0.00176220 | GWI |
| HALL AND HALL LLC | 0.00291560 | GWI |
| HALL MANAGEMENT LLC | 0.00793361 | GWI |
| HANSON OPERATING CO INC | 0.06346884 | GWI |
| WELLS FARGO BANK NA, TRST | | |
| HARKNESS A DUNCAN FAMILY TRUST | 0.00634688 | GWI |
| HUGHES 2000 CT LLC | 0.12449612 | GWI |
| HUGHES OIL SOUTH LLC | 0.09534012 | GWI |
| J & A HARRIS LP | 0.06423832 | GWI |
| JCE GALBRAITH OIL & GAS LLC | 0.00793361 | GWI |
| JF Howell Interests, LP | 0.00229134 | GWI |
| JIMMIE LAMONT DUREN | 0.00000009 | GWI |
| JIMMY B. JACKSON | 0.00020911 | GWI |
| JJS Interests Escambia, LLC | 0.00492729 | GWI |
| JMS OIL & GAS HOLDINGS LLC | 0.00311908 | GWI |
| JOE R WHITE JR | 0.00013388 | GWI |
| JOHNNY M. JACKSON | 0.00020911 | GWI |
| JURA SEARCH INC | 0.00203631 | GWI |
| KAYETTA B. SNOW | 0.00000023 | GWI |
| KIDD PRODUCTION, LTD | 0.00003482 | GWI |
| KING OIL LLC | 0.00029564 | GWI |
| KKS OIL & GAS LTD | 0.00211669 | GWI |
| KMR INVESTMENTS LLC | 0.02332480 | GWI |
| KRYSTLE BURTON | 0.00000023 | GWI |
| KUDZU OIL PROPERTIES LLC | 0.00334691 | GWI |
| KWAZAR RESOURCES, LLC | 0.00001161 | GWI |
| LAMANCHA INVESTMENTS II LLC | 0.00057397 | GWI |
| LANDMARK EXPLORATION LLC | 0.00320214 | GWI |
| LEANNE D FORD | 0.00174936 | GWI |
| LENARDO BURTON | 0.00000348 | GWI |
| LEONARD E WILLIAMS | 0.00634688 | GWI |
| M JOHNSON INVESTMENT PTN I | 0.00592410 | GWI |
| M JOHNSON INVESTMENT PTN II | 0.00042278 | GWI |
| Marksco, L.L.C. | 0.00099231 | GWI |
| MARLIN EXPLORATION INC | 0.00281917 | GWI |
| MATAGORDA WI LLC | 0.00010117 | GWI |
| MAX C JOHNSON | 0.00004653 | GWI |
| McCombs Energy Ltd., LLC | 0.01115177 | GWI |
| NORA REGINA PAGE | 0.00000051 | GWI |
| NORTHSTAR PRODUCING I LIMITED | 0.00088597 | GWI |
| OPAL L KIDD FAMILY PARTNERSHIP LTD | 0.00046117 | GWI |
| PAM LIN CORPORATION | 0.01190041 | GWI |
| PATRICK J MCBRIDE | 0.00159139 | GWI |
| PAULA W DENLEY LLC | 0.00291560 | GWI |
| PETRODRILL LLC | 0.00057397 | GWI |
| PETROLEUM INVESTMENTS INC | 0.00793361 | GWI |
| PFLANZER PARTNERS LTD | 0.00128902 | GWI |

**EXHIBIT E**
**TO UNIT AGREEMENT FOR THE  NORTHEAST BROOKLYN OIL UNIT**


**SUMMARY OF UNIT REVENUE INTEREST**

| Owner | Total Unit Interest | Type Interest |
|---|---|---|
| Pickens Financial Group, LLC | 0.00216505 | GWI |
| PINE ENERGIES INC | 0.00381402 | GWI |
| PRUET PRODUCTION CO | 0.00793361 | GWI |
| RAB OIL & GAS HOLDINGS LLC | 0.00317344 | GWI |
| REGINALD PHARR | 0.00000051 | GWI |
| Resource Ventures, LLC | 0.00005413 | GWI |
| RIDGWAY MANAGEMENT INC | 0.00118122 | GWI |
| RIO NECHES PROPERTIES, LLC | 0.00001339 | GWI |
| ROOSTH 806, LTD. | 0.00001339 | GWI |
| ROYALTY EXPLORATION LLC | 0.00706305 | GWI |
| RUDMAN  FAMILY TRUST | 0.00007911 | GWI |
| RYCO EXPLORATION LLC | 0.00925058 | GWI |
| SAWYER DRILLING & SERVICE INC | 0.01586721 | GWI |
| SELLARS FAMILY LLC | 0.00054967 | GWI |
| SENEFF 2007 INVESTMENT LLC | 0.00005436 | GWI |
| Shelley M. Chavanne | 0.00002755 | GWI |
| SHELLEY MARIE CHAVANNE | 0.00026809 | GWI |
| SKLARCO, LLC | 0.01285314 | GWI |
| SPINDLETOP OIL & GAS CO | 0.02720895 | GWI |
| STEVEN E. CALHOUN | 0.00001161 | GWI |
| STROUD FAMILY LLC | 0.00321532 | GWI |
| SUGAR OIL PROPERTIES LP | 0.01190041 | GWI |
| C SUGAR & T YOUNGBLOOD, CO-TRSTE | | |
| SUGAR PROPERTIES TRUST | 0.00033440 | GWI |
| SUMMIT LLC | 0.00291560 | GWI |
| TAMELA RENEE MCCLINTON | 0.00000009 | GWI |
| TERESA RUDMAN AS TRST | | |
| THE TARA RUDMAN REVOCABLE TRUST | 0.00007911 | GWI |
| Tauber Exploration & Production C | 0.00108252 | GWI |
| THE RUDMAN PARTNERSHIP | 0.00261066 | GWI |
| Tiembo Ltd. | 0.00086602 | GWI |
| TISDALE NATURAL RESOURCES | 0.00208950 | GWI |
| TITANIA CHRISTIAN | 0.00000009 | GWI |
| TOM YOUNGBLOOD | 0.01586721 | GWI |
| TRANT L KIDD FAMILY PART LTD | 0.00000460 | GWI |
| TRIMBLE ENERGY LLC | 0.00015822 | GWI |
| TRINA MARVETTE DUREN | 0.00000009 | GWI |
| TYLER OIL & GAS LLC | 0.00114782 | GWI |
| W D MOUNGER | 0.00793361 | GWI |
| WALLACE & WALLACE LLC | 0.00291560 | GWI |
| WILLIAM TAVIS PATE AND CLAUDETTE PATE | 0.00008928 | GWI |
| TERESA RUDMAN AND IRA SILVERMAN, CO-EXECUTORS | | |
| OF THE ESTATE OF WOLFE E RUDMAN | 0.00079624 | GWI |
| WSK Properties, LLC | 0.00000460 | GWI |
| | | |
| TOTAL WORKING INTEREST COST | 1.00000000 | |