UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| IN RE: | ) | |
|---|---|---|
| | ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC | ) | |
| EIN: 72-1417930 | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| | ) | Case No. 20-12380-EEB |
| SKLARCO, LLC | ) | |
| EIN: 72-1425432 | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

**AMENDED DISCLOSURE STATEMENT TO ACCOMPANY
AMENDED JOINT PLAN OF REORGANIZATION
DATED DECEMBER 18, 2020**

**KUTNER BRINEN, P.C.**
Jeffrey S. Brinen
Keri L. Riley
1660 Lincoln St., Suite 1850
Denver, CO  80264
Telephone:  303-832-2400
Email:  klr@kutnerlaw.com

Counsel to the Debtors
and Debtors in Possession

1

<u>THE VOTING DEADLINE IS 5:00 P.M. PREVAILING MOUNTAIN TIME ON [          ],
2021 (UNLESS THE DEBTORS EXTEND THE VOTING DEADLINE</u>

TO BE COUNTED AS A VOTE TO ACCEPT OR REJECT THE PLAN, THE DEBTORS' NOTICE AND CLAIMS AGENT, [● TO BE DETERMINED] MUST <u>ACTUALLY</u> RECEIVE YOUR BALLOT ON OR BEFORE THE VOTING DEADLINE.

**IMPORTANT INFORMATION FOR YOU TO READ**

ALL CREDITORS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE DEBTORS' PLAN OF REORGANIZATION IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

THE DEBTORS ARE PROVIDING THE INFORMATION IN THIS DISCLOSURE STATEMENT FOR THEIR PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE TO HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN FOR THE PURPOSE OF SOLICITING VOTES TO ACCEPT THE PLAN. NOTHING IN THIS DISCLOSURE STATEMENT MAY BE RELIED UPON OR USED BY ANY ENTITY FOR ANY OTHER PURPOSE.

THIS DISCLOSURE STATEMENT WAS NOT FILED WITH THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE AUTHORITY AND NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE AUTHORITY HAVE PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN. THIS DISCLOSURE STATEMENT CONTAINS "FORWARD LOOKING STATEMENTS" WITHIN THE MEANING OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995. SUCH STATEMENTS CONSIST OF ANY STATEMENT OTHER THAN A RECITATION OF HISTORICAL FACT AND CAN BE IDENTIFIED BY THE USE OF FORWARD LOOKING TERMINOLOGY SUCH AS "MAY," "EXPECT," "ANTICIPATE," "ESTIMATE" OR "CONTINUE" OR THE NEGATIVE THEREOF OR OTHER VARIATIONS THEREON OR COMPARABLE TERMINOLOGY. THE READER IS CAUTIONED THAT ALL FORWARD LOOKING STATEMENTS ARE NECESSARILY SPECULATIVE AND THERE ARE CERTAIN RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL EVENTS OR RESULTS TO DIFFER MATERIALLY FROM THOSE REFERRED TO IN SUCH FORWARD LOOKING STATEMENTS. THE LIQUIDATION ANALYSIS, PROJECTIONS AND OTHER INFORMATION CONTAINED HEREIN AND ATTACHED HERETO ARE ESTIMATES ONLY, AND THE TIMING AND AMOUNT OF ACTUAL DISTRIBUTIONS TO HOLDERS OF ALLOWED CLAIMS MAY BE AFFECTED BY MANY FACTORS THAT CANNOT BE PREDICTED. THEREFORE, ANY ANALYSES, ESTIMATES OR RECOVERY PROJECTIONS MAY OR MAY NOT TURN OUT TO BE ACCURATE.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016(B) AND IS NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER SIMILAR LAWS. ANY SECURITIES DESCRIBED HEREIN WILL BE

ISSUED TO CREDITORS WITHOUT REGISTRATION UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR ANY SIMILAR FEDERAL, STATE OR LOCAL LAW, AND WILL INSTEAD RELY UPON THE EXEMPTIONS SET FORTH IN SECTION 1145 OF THE BANKRUPTCY CODE TO THE MAXIMUM EXTENT PERMITTED AND APPLICABLE. THE DEBTORS RECOMMEND THAT POTENTIAL RECIPIENTS OF ANY SECURITIES PURSUANT TO THE PLAN CONSULT THEIR OWN LEGAL COUNSEL CONCERNING THE SECURITIES LAWS GOVERNING THE TRANSFERABILITY OF ANY SUCH SECURITIES.

NO LEGAL OR TAX ADVICE IS PROVIDED TO YOU BY THIS DISCLOSURE STATEMENT. THE DEBTORS URGE EACH HOLDER OF A CLAIM OR AN EQUITY INTEREST TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY LEGAL, FINANCIAL, SECURITIES, TAX OR BUSINESS ADVICE IN REVIEWING THIS DISCLOSURE STATEMENT, THE PLAN AND EACH OF THE PROPOSED TRANSACTIONS CONTEMPLATED THEREBY. FURTHERMORE, THE BANKRUPTCY COURT'S APPROVAL OF THE ADEQUACY OF DISCLOSURE CONTAINED IN THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE MERITS OF THE PLAN.

IT IS THE DEBTORS' POSITION THAT THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION OR WAIVER. RATHER, HOLDERS OF CLAIMS AND EQUITY INTERESTS AND OTHER ENTITIES SHOULD CONSTRUE THIS DISCLOSURE STATEMENT AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS RELATED TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER PENDING OR THREATENED LITIGATION OR ACTIONS.

NO RELIANCE SHOULD BE PLACED ON THE FACT THAT A PARTICULAR LITIGATION CLAIM OR PROJECTED OBJECTION TO A PARTICULAR CLAIM IS, OR IS NOT, IDENTIFIED IN THE DISCLOSURE STATEMENT. THE DEBTORS MAY SEEK TO INVESTIGATE, FILE AND PROSECUTE CLAIMS AND MAY OBJECT TO CLAIMS AFTER THE CONFIRMATION OR EFFECTIVE DATE OF THE PLAN IRRESPECTIVE OF WHETHER THE DISCLOSURE STATEMENT IDENTIFIES ANY SUCH CLAIMS OR OBJECTIONS TO CLAIMS.

THIS DISCLOSURE STATEMENT CONTAINS, AMONG OTHER THINGS, SUMMARIES OF THE PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN EVENTS IN THE DEBTORS' CHAPTER 11 CASES AND CERTAIN DOCUMENTS RELATED TO THE PLAN THAT ARE ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE. ALTHOUGH THE DEBTORS BELIEVE THAT THESE SUMMARIES ARE FAIR AND ACCURATE, THESE SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT THE SUMMARIES DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS OR EVERY DETAIL OF SUCH EVENTS. IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THIS DISCLOSURE STATEMENT AND THE TERMS AND

PROVISIONS OF THE PLAN OR ANY OTHER DOCUMENTS INCORPORATED HEREIN BY REFERENCE, THE PLAN OR SUCH OTHER DOCUMENTS WILL GOVERN FOR ALL PURPOSES. EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED, FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTORS' MANAGEMENT. THE DEBTORS DO NOT REPRESENT OR WARRANT THAT THE INFORMATION CONTAINED HEREIN OR ATTACHED HERETO IS WITHOUT ANY MATERIAL INACCURACY OR OMISSION.

THE DEBTORS' MANAGEMENT HAS REVIEWED THE FINANCIAL INFORMATION PROVIDED IN THIS DISCLOSURE STATEMENT. ALTHOUGH THE DEBTORS HAVE USED THEIR REASONABLE BUSINESS JUDGMENT TO ENSURE THE ACCURACY OF THIS FINANCIAL INFORMATION, THE FINANCIAL INFORMATION CONTAINED IN, OR INCORPORATED BY REFERENCE INTO, THIS DISCLOSURE STATEMENT HAS NOT BEEN AUDITED.

THE DEBTORS ARE GENERALLY MAKING THE STATEMENTS AND PROVIDING THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AS OF THE DATE HEREOF WHERE FEASIBLE, UNLESS OTHERWISE SPECIFICALLY NOTED. ALTHOUGH THE DEBTORS MAY SUBSEQUENTLY UPDATE THE INFORMATION IN THIS DISCLOSURE STATEMENT, THE DEBTORS HAVE NO AFFIRMATIVE DUTY TO DO SO. HOLDERS OF CLAIMS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER THAT, AT THE TIME OF THEIR REVIEW, THE FACTS SET FORTH HEREIN HAVE NOT CHANGED SINCE THE DISCLOSURE STATEMENT WAS FILED. THE DEBTORS HAVE NOT AUTHORIZED ANY ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT. THE DEBTORS HAVE NOT AUTHORIZED ANY REPRESENTATIONS CONCERNING THE DEBTORS OR THE VALUE OF THEIR PROPERTY OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.

HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN MUST RELY ON THEIR OWN EVALUATION OF THE DEBTORS AND THEIR OWN ANALYSIS OF THE TERMS OF THE PLAN IN DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. IMPORTANTLY, PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE PLAN, EACH HOLDER OF A CLAIM IN A VOTING CLASS SHOULD CONSIDER CAREFULLY ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT AND ANY EXHIBITS HERETO, INCLUDING THE RISK FACTORS DESCRIBED IN GREATER DETAIL IN SECTION X HEREIN, "RISK TO CREDITORS."

# I.   INTRODUCTION AND OVERVIEW

Sklar Exploration Company, LLC ("SEC"), a Louisiana limited liability company, and Sklarco, LLC ("Sklarco" and together, the "Debtors"), a Louisiana limited liability, filed their voluntary petitions pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Colorado "Bankruptcy Court") on April 1, 2020 (the "Petition Date").  SEC's Chapter 11 Case is pending in the Bankruptcy Court under Case No. 20-12377-EEB.  Sklarco's Chapter 11 Case is pending in the Bankruptcy Court under Case No. 20-12380-EEB.  Both cases are jointly administered for procedural purposes under Case No. 20-12377-EEB.

The Debtors are submitting this Disclosure Statement in accordance with 11 U.S.C. § 1125 to provide information regarding the Debtors' Amended Joint Plan of Reorganization (as may be further amended, supplemented, or modified from time to time, the "Plan") dated December 18, 2020.  A copy of the Plan and ballot for acceptance or rejection of the Plan accompanies this Disclosure Statement and incorporated herein by reference.  All capitalized terms used but not otherwise defined in this Disclosure Statement shall have the meanings given to them in Article I, Section B of the Plan. The rules of interpretation set forth in Article I, Section A govern the interpretation of this Disclosure Statement.

**Voting Requirements.**  Pursuant to the Bankruptcy Code, only Classes of Claims or Interests that are Impaired and that will (or may) receive or retain property or any interest in property under the Plan are entitled to vote to accept or reject the Plan.  Classes of Claims and Interests that are not Impaired are not entitled to vote and will be deemed to accept the Plan. Classes of Claims and Interests that will not receive or retain any interest in property under the Plan are not entitled to vote and will be deemed to reject the Plan.  Voting on the Plan shall be in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules, and a voting Class shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds in amount and more than one-half in number of the Allowed Claims of such Class actually voting, without including the vote of any insider. Each holder of an Allowed Claim in Classes A through D (as to Sklarco), and 2 through 7 (as to SEC) shall be entitled to vote to accept or reject the Plan. If a holder of a Claim holds more than one Claim in any one Class on a per Debtor basis, all Claims of such holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims voting for or against the Plan.

**Recommendation.**  The Debtors believe that the Plan is fair and equitable, maximizes the value of the Debtors' respective estates, and provides the greatest likelihood for recovery to claimholders, including unsecured creditors.   Accordingly, the Debtors believe that approval of the Plan is in the best interests of their estates and their respective creditors, and urge acceptance and approval of the Plan by all creditors and interest holders.

# II.   CHAPTER 11 AND PLAN CONFIRMATION

Chapter 11 of the United States Bankruptcy Code is designed to allow for the rehabilitation and reorganization of financially troubled entities or individuals.  Chapter 11 allows the debtors to retain its assets during the administration of its Chapter 11 case as a debtor-in-possession.

Following confirmation of the Plan, Chapter 11 allows the debtors to retain their assets as a reorganized debtor or as otherwise provided in the Plan. If the Plan is approved by the Court, the Plan is the permanent restructuring of the debtors' financial obligations. The Plan also provides a means through which the debtors will restructure or repay their obligations. The Plan will provide the debtors with an opportunity to maximize the return for creditors through continued operations.

The Plan divides creditors into classes of similarly situated creditors. All creditors of the same Class are treated in a similar fashion. All Interests are also classified and treated alike. Each Class of creditors or interest holders is either impaired or unimpaired under the Plan. A Class is unimpaired if the Plan leaves unaltered the legal, equitable and contractual rights to which each creditor in the Class is entitled or if the Plan provides for the cure of a default and reinstatement of the maturity date of the claim as it existed prior to default.

The Debtors filed a Motion to Set Bar Date for Filing Claims and Requests for Allowance of Administrative Expense Claims Under Bankruptcy Code § 503(b)(9) ("Bar Date Motion"). On July 23, 2020, the Court entered an Order establishing September 28, 2020 as the as the last day: a) for filing of any Proof of Claim for a pre-petition claim or interest; and b) by which motions or requests for allowance of administrative expense claims pursuant to 11 U.S.C. §503(b)(9) must be filed ("Bar Date"). The Plan provides that Claims and Interests of all Classes shall be Allowed only if such Claims are either: a) evidenced by a timely filed Proof of Claim or Interest; or b) appear in the Schedules filed by the Debtors and are not scheduled as disputed, contingent or unliquidated, unless subsequently Allowed by the Court. Creditors may check as to whether or not their Claims are scheduled as disputed, contingent or unliquidated by reviewing the Schedules and the amendments thereto filed by the Debtors in the Bankruptcy Court for the District of Colorado, or by viewing the claims register maintained by Epiq at: https://dm.epiq11.com/case/skr/claims. Alternatively, creditors may contact counsel for the Debtors or the Debtors directly in order to determine how their claim was scheduled.

Chapter 11 does not require that each holder of a Claim or Interest vote in favor of the Plan in order for the Court to confirm the Plan. The Plan, however, must be accepted by at least one impaired Class of Claims by a majority in number and two-thirds in amount, without including insider acceptance of those Claims of such Class actually voting on the Plan. Assuming one impaired Class votes to accept the Plan, it may be confirmed over its rejection by other Classes if the Court finds that the Plan does not discriminate unfairly and is fair and equitable with respect to each Class of Claims or Interests that is impaired under and has not accepted the Plan. The Bankruptcy Code requires that if interest holders retain an interest or receive anything under the Plan, then the unsecured creditor classes must either be paid the full value of their claims or vote to accept the Plan. In this case, the Debtors are proposing to install an Independent Manager to oversee and operate Sklarco, to effectuate an orderly wind down of SEC and transition to a new operator for the operated properties, to make distributions to the Creditor Trust from Available Cash, to assume and cure certain Operating Agreements on behalf of Sklarco, and to maintain equity interests in escrow pending completion of certain events under the Plan. Since the Debtors believe that the Plan provides the best alternative for creditors, all creditors are urged to vote to accept the Plan.

If all Classes of Claims and Interests vote to accept the Plan, the Court may confirm the Plan. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation. Among other things, Section 1129 requires that the Plan be in the best interest of the holders of Claims and

Interests and be feasible through a showing that confirmation will not be followed by the need for further financial reorganization of the Debtors.

### III.   OVERVIEW OF THE PLAN AND MEANS OF EXECUTION

The Plan divides creditors and interest holders into the following nine Classes.  Treatment of each of the Classes is discussed in greater detail below and in the Plan.  The following table summarizes the Classes as to each Debtor, whether or not each such Class is impaired, and, to the extent determinable, the treatment of each Class:

#### A.   *Sklarco and Sklar Exploration Company*

| CLASS | IMPAIRMENT | TREATMENT |
|---|---|---|
| 1 – Allowed Unsecured Claims specified in Section 507(a)(4) and 507(a)(5) of the Code as having priority against SEC | Unimpaired | Paid in full on the Effective Date of the Plan unless otherwise agreed to by the Debtor and the Class 1 Claimants.  Only one (1) Class 1 Claim is believed to exist. |
| 2 and A – Allowed Secured Claim held by East West Bank | Impaired | EWB Secured Claim will be allowed in amount owed on the Confirmation Date of the Plan, and will retain all liens that secured its Claim as of the Petition Date.<br><br>EWB Secured Claim shall bear interest at a rate of 6% per annum and shall receive not less than 90% of Available Cash.<br><br>The EWB Secured Claim shall become due and payable on the second anniversary of the Effective Date of the Plan through either sale or refinance. |
| B.1 – B.7 – Allowed Secured Claim held by Mechanics Lien Claimants | Impaired | Deemed unsecured pursuant to 11 U.S.C. § 506 and treated as Class 6 general unsecured creditors holding claims against SEC. |
| 3 – Allowed Secured Claim held by Ford Motor Credit | Impaired | The Class 3 Claimant shall retain all liens securing its claim as existed on the Petition Date, and shall be paid in accordance with the contractual terms until the vehicles securing the claim are returned in accordance with the Resignation and Transition Schedule. |
| 4 – Allowed Secured Claim held by Ally Bank | Unimpaired | The Class 4 Claimant shall retain all liens securing its claim as existed on the |

7

| | | |
|---|---|---|
| | | Petition Date, and shall be paid in accordance with the contractual terms until the vehicle(s) securing the claim is returned in accordance with the Resignation and Transition Schedule. |
| 5 – Reserved | n/a | n/a |
| 6 and C – Allowed General Unsecured Claims against SEC and Sklarco | Impaired | Class 6 and Class C Creditors shall receive a beneficial interest in the Creditor Trust on the Effective Date of the Plan, and shall receive distributions of payments made on account of the Creditor Trust Obligation, which amount is not less than $22 million. The Creditor Trust shall also receive the proceeds and/or payments on account of certain assets assigned to the Creditor Trust, as well as certain distributions upon occurrence of a Monetizing Event. |
| D – Interests in Sklarco | Partially Impaired | All equity interests will be placed in escrow and subject to an escrow agreement and any valid liens until the occurrence of certain events. Class D interests will also receive certain distributions as set forth more fully herein. |
| 7 – Interests in SEC | Impaired | All equity interests will be placed in escrow and subject to an escrow agreement and any valid liens. Upon completion of the wind down by SEC, all membership interests will be canceled. |

## IV.     BACKGROUND AND EVENTS LEADING TO CHAPTER 11 FILING

### A.  *Overview of Operations for SEC and Sklarco*

SEC and Sklarco were duly formed in 1998 as Louisiana limited liability companies by Howard Sklar and certain additional members of the Sklar family.  Since its inception, SEC has operated as an independent exploration and production company, and Sklarco has operated as the owner of certain oil and gas leases and property interests in Texas, Louisiana, Mississippi, Alabama, Florida, and the Western United States, including Wyoming and Montana.

8

SEC maintains its headquarters in Boulder, Colorado, with additional offices in Shreveport, Louisiana and Brewton, Alabama.  Pre-petition, SEC operated a number of oil and gas wells for the benefit of the various interest holders.  As of the Petition Date, SEC operated approximately 60 wells and two gas plants associated with certain of the operated properties.  SEC was further engaged in several exploratory drilling operations, including a helium well in Montana, and developing a new prospect in Florida.

Pre-petition, Sklarco was engaged solely as the holder of oil and gas leases and interests in properties operated by SEC and by third-party operators.  Sklarco also held and managed certain outside investments for the benefit of the sole holder of the membership interests, the Howard Trust, and additional Sklar Family trusts.

SEC and Sklarco operated successfully for over twenty (20) years, and in 2018 and 2019 generated gross revenue in the amount of $19,022,035 and $15,780,254 respectively.  In 2018, the Debtors refinanced their existing line of credit with East West Bank ("EWB") as Agent and Lead Arranger.  On or about June 15, 2018, the Debtors entered into a Credit Agreement, Promissory Note, and Pledge and Security Agreement (together the "Loan Documents") for a secured line of credit with a maximum credit of $50,000,000.  In accordance with the Security Agreement, the Debtors granted the EWB a secured interest in substantially all of the Debtors' assets, including their inventory, equipment, accounts, deposit accounts, investment property, accounts receivables, and Sklarco's oil and gas assets.

### B. *Events Leading to Bankruptcy Filing*

Prior to the bankruptcy filing, SEC initiated a number of exploratory projects, including drilling and completing an exploratory well in Montana, and building a pipeline in the Mount Carmel prospect in Florida.  Several exploratory operations experienced significant cost overruns for SEC and Sklarco in 2019, resulting in a financial strain on SEC's ongoing operations.

In December 2019, SEC was notified for the first time of a covenant violation with respect to the current ratio required in accordance with the Loan Documents.  Following the asserted covenant violation, the Debtors engaged in negotiations with EWB to resolve the asserted covenant violation and enter into a forbearance agreement. However, beginning in March 2020, the Debtors' revenue also declined as a result of the significant decrease in the price of oil caused by ongoing attempts by Russia, Saudi Arabia, and the United Arab Emirates to gain market share by reducing the price of oil in the global market.

As a result of the decrease in the price of oil and the corresponding decrease in revenue, the Debtors became more reliant on their hedging agreements to maintain cash flow.  The COVID-19 pandemic further exacerbated the Debtors' financial issues, as the price of oil dropped from an average price of $57 per barrel in January 2020 to approximately $20 per barrel on the Petition Date.  The additional decrease in revenue made the Debtors more reliant on the hedging agreements to maintain their cash flow, however, the unresolved notice of default from EWB placed the Debtors' hedges in jeopardy of a forced sale from EWB.  As a result, SEC and Sklarco filed their voluntary petitions for relief pursuant to Chapter 11 of the Bankruptcy Code on April 1,

2020 to preserve the hedging agreements and their assets, restructure their operations, and remain going concerns.

## V.   SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASES

The Debtors have complied with all requirements of the Bankruptcy Code and of the Office of the U.S. Trustee, including attending the Initial Debtor Interview and its Meeting of Creditors, and complied with all Orders entered by the Bankruptcy Court. On April 2, 2020, the Court entered an order directing the joint administration of the Bankruptcy Cases <u>for procedural purposes only</u>. The Debtors are not substantively consolidated. The following items have also been addressed during the course of the Chapter 11 case:

### Appointment of Official Committee of Unsecured Creditors.

On April 16, 2020, the United States Trustee appointed an Official Unsecured Creditors' Committee ("Committee") in SEC's case. In accordance with the United States Trustee's Second Amended Appointment of Official Committee of Unsecured Creditors, the Committee is comprised of Stoneham Drilling Corporation, Mesa Fluids, LLC, TCP Cottonwood, L.P., Kelley Brothers Contractors, Inc. and Baker Hughes Company.

**Cash Collateral Use.**   In accordance with the Loan Documents, the Debtors' cash and accounts are subject to EWB's lien.  On April, 6, 2020, the Debtors filed their Motion for Authority to Use Cash Collateral, seeking authorization to use cash collateral on an interim and final basis. Objections to the Debtors' use of cash collateral were filed by a number of working interest holders on the basis that certain of the funds received by SEC were not property of the Debtors, as the funds included revenue attributable to other working interest holders from the oil and gas properties operated by SEC.  After extensive negotiations, the Debtors agreed to a proposed Interim Order Authorizing Use of Cash Collateral, and Second Interim Order Authorizing Use of Cash Collateral.  However, the objecting parties continued to raise objections to the Debtors' use of cash collateral, and on May 11 and May 12, 2020, the Court conducted a two-day evidentiary hearing on the Debtors' continued use of cash collateral, following which the Court entered the Third Interim Order Authorizing Use of Cash Collateral while the Debtors continued negotiations with EWB and the Committee regarding the final form of proposed Order.

On May 22, 2020, the Debtors filed their Motion for Approval of Final Cash Collateral Order, seeking approval of an agreed form of Order authorizing the Debtors use of cash collateral on a final basis.  The Final Order Authorizing Use of Cash Collateral, Granting Adequate Protection, and Providing Related Relief ("Final Cash Collateral Order") was entered by the Court on June 15, 2020.  The Debtors have been operating under the Final Cash Collateral Order during the pendency of their Chapter 11 cases, subject to periodic updates to the budget.

### Approval of Post-Petition Loan from Howard Sklar, et al.

On May 17, 2020, the Debtors filed a Motion for Approval of Lending Agreement and For Authority to Incur Debt on an Administrative, Unsecured Basis, seeking approval of a post-petition loan in the original principal amount of $1,233,000 (the "Post-Petition Loan") from Howard Sklar ("Sklar"), the Howard Sklar Trust ("Howard Trust"), the Jacob Sklar Trust ("Jacob Trust"), and the Alan Sklar Trust ("Alan Trust" and together the "Sklar Parties") to provide additional available cash for ongoing operations.

In accordance with the approved Loan Agreement, repayment of the Post-Petition Loan is subordinated to unsecured creditors, notwithstanding its status as an administrative expense claim. The Post-Petition Loan accrues interest at a rate of 5% per annum and, if any judgment is entered against the Sklar Parties for any action arising under 11 U.S.C. § 544, 547,548, 559, or 550, the amount of such judgment shall be offset first against the balance of the Loan.

The funds for the Post-Petition Loan came primarily from outside accounts held by the Sklar Parties. However, $223,000 of the funds for the Post-Petition Loan consisted of the Howard Trust's interest in funds from an outside investment, Trout Creek Ventures, that were held in Sklarco's bank account as of the Petition Date. The Chief Restructuring Officer ("CRO") later determined that Sklarco, and not the Howard Trust, held the equitable interest in the funds from Trout Creek Ventures, reducing the balance of the Post-Petition Loan to $1 million. The Howard Trust disputes this determination.

### **Debtors' Motion for Entry of Order Authorizing Debtors' Employment of CR3 Partners as Chief Restructuring Officer and Tauber Group's Motion to Appoint Chapter 11 Trustee or Convert Case to Chapter 7.**

In connection with the Debtors' ongoing use of cash collateral, the Debtors agreed to the appointment of a Chief Restructuring Officer based on the agreement of EWB and the Committee. On May 21, 2020, the Debtors filed their Motion for Entry of Order Authorizing Debtors' Employment of CR3 Partners as Chief Restructuring Officer ("CRO Motion"), seeking authorization to engage James Katchadurian and CR3 Partners to act as CRO during the Debtors' Chapter 11 cases. CR3 is a nationally recognized turnaround and performance improvement firm. CR3's team of over 38 professionals have a wealth of knowledge and experience providing restructuring advisory services and have an excellent reputation for services rendered in complex cases throughout the United States, with experience in the oil and gas industry.

The intent in engaging CR3 to act as the CRO for the Debtors was to have an independent third party take control of the Debtors' day-to-day operations, and replace Howard Sklar as the person with decision-making authority during the pendency of the Bankruptcy Cases. Appointment of a CRO was further intended to remove any internal conflict and ensure that a neutral third party was in control of the Debtors' business decisions.

Around the same time that the Debtors sought the appointment of CR3 as CRO, a group of creditors comprised of Tauber Exploration & Production Company, CTM 2005, Ltd., Pickens Financial Group, LLC, I & L Miss I, LP, MER Energy, Ltd, MR Oil & Gas, LLC, Tara Rudman Revocable Trust, Feather River 75, LLC, Rudman Family Trust, and The Rudman Partnership, (collectively the "Tauber Group"), filed a Motion to Appoint a Chapter 11 Trustee or Convert the case to one under Chapter 7 of the Bankruptcy Code (the "Trustee Motion"). The Trustee Motion alleged that the Debtors and their management breached their fiduciary duties in mismanaging funds of working interest holders, and that internal conflicts warranted appointment of a Chapter 11 trustee, or in the alternative, conversion of the cases to cases under Chapter 7. The Trustee Motion was joined by several other working interest holders.

The Official Committee of Unsecured Creditors objected to the Trustee Motion on the basis that it believed that the appointment of a CRO represented the best and most expedient option to preserve the value of the estates, protect all parties from future cash management and operational issues, investigate past accounting and cash management related matters, and proceed with the

11

Debtors' reorganization efforts. EWB similarly objected to the extraordinary remedy of appointing a Chapter 11 trustee or conversion, instead supporting the appointment of a CRO.

Debtors vehemently objected to the Trustee Motion, asserting that the pleading was nothing more than an attempt to force the Debtors into a liquidating sale for the purpose of obtaining the assets of Sklarco and control of valuable wells, which would be otherwise unavailable to SEC creditors. The Debtors further asserted that the appointment of a Chapter 11 trustee would result in significant additional administrative expense to the estate, costs which would be mitigated through the appointment of a CRO. Additionally, because the end result of a Chapter 11 trustee would undoubtedly be a liquidation of SEC's assets, the value of which are significantly less than that the amount of EWB Secured Claim, there would be no recovery for any unsecured creditors in the event of an appointment of a Chapter 11 trustee, and conversion to a Chapter 7 would have a similar result.

Following a hearing on the CRO Motion and the Trustee Motion on June 11, 2020, the Tauber Group and the parties joining in the Trustee Motion agreed to the appointment of a CRO in lieu of a Chapter 11 Trustee subject to certain revisions to the proposed form of order. The Trustee Motion has been held in abeyance since that time.

On June 15, 2020, the Court entered an Order Granting Debtors' Motion for Entry of Order Authorizing Debtors' Employment of CR3 Partners as Chief Restructuring Officer ("CRO Order"). Following entry of the CRO Order, CR3 has had control over the Debtors' ongoing business decisions, and has made all decisions related to the Debtors ongoing restructuring efforts. In accordance with the CRO Order, CR3 has also undertaken a thorough analysis of SEC's pre-petition cash management

### Assumption of Oil and Gas Leases.

On October 13, 2020, the Debtors filed their Motion to Assume Nonresidential Real Property Mineral Leases Pursuant to 11 U.S.C. § 365, seeking authorization to assume the mineral leases held by Sklarco on the Petition Date. Sklarco is a party to approximately 4,000 mineral leases (the "Mineral Leases") located across the United States, a majority of which are located in Alabama, Louisiana, Mississippi, and Texas, with a smaller number in Montana, Wyoming, Florida, Arkansas, and Arizona. The Mineral Leases form the basis of Sklarco's interest in the various properties, and are the primary source of value to Sklarco's estate. In assuming the Mineral Leases, Sklarco preserved the value of the estate for the benefit of its creditors. The Court entered an Order authorizing Sklarco's assumption of the Mineral Lease on October 30, 2020.

### Completion of Montana Helium Well

Pre-petition, SEC was in the process of drilling an exploratory helium well in Montana that, if proven, would be a significant source of revenue for the Debtors. The initial helium well was nearing completion in March 2020 when state wide shut downs required SEC to cease work on the helium well prior to completion and testing. Post-petition, SEC elected to utilize a portion of the Post-Petition Loan to complete and test the prospective helium well. Testing revealed that the initial well did not have significant measurable quantities of helium, thus rendering the well uneconomic. Given the poor results for the initial well, SEC ceased further exploratory operations in Montana, and will not be completing any further wells.

**Interpleader Actions Filed by Plains Marketing, L.P and Southeast Oil and Gas District.**

Two separate adversary proceedings have been filed against the Debtors: (1) *The Southeast Alabama Gas District v. Sklar Exploration Company LLC, Sklarco LLC, Kelley Brothers Contractors, Inc. GE Oil & Gas Pressure Control LP, and Baker Hughes Oilfield Operations*, filed on July 20, 2020. (Case No. 20-01210) and (2) *Plains Marketing, L.P. v. Sklar Exploration Company LLC, Sklarco LLC, Kelley Brothers Contractors, Inc. GE Oil & Gas Pressure Control LP, and Lufkin Industries, LLC*, filed on June 24, 2020. (Case No. 20-01191).  Both cases are interpleader actions wherein the Plaintiffs are purchasers of oil or gas produced and processed by Sklar operated wells and facilities in Alabama.  Both purchasers received notices from certain vendors of SEC asserting statutory liens against not only the property interests of the Debtors, but also the produced oil and gas and/or the proceeds from the sale of such oil and gas.  Upon receipt of the notices, the Southeast Alabama Gas District ("SEAGD") held approximately $146,949.12 payable to SEC for gas purchased in suspense following receipt of the notices pending determination by the Court or resolution of the asserted liens by the parties.  Plains Marketing, L.P. ("Plains") similarly held approximately $29,785.99 payable to SEC for oil sold to Plains in suspense pending an Order from the Court, or resolution of the asserted liens.

In both interpleader actions, SEAGD and Plains sought to interplead the funds pursuant to Fed. R. Civ. P. 22 on the basis that the funds were subject to multiple claims by various parties.  In response, the Debtors asserted that the liens filed by the vendors cannot, as a matter of Alabama Law, attach to the produced oil and gas or to the proceeds from the sale thereof.  Ultimately, the Debtors, the vendors, SEAGD and Plains entered into a global settlement agreement, pursuant to which the vendors agreed to release their liens on any produced oil or gas or the proceeds therefrom, and SEAGD and Plains agreed to release the funds held in suspense to SEC and dismiss the adversary actions.  On November 23, 2020, the Bankruptcy Court entered an Order Approving Global Settlement Agreement to Resolve Adversary Proceedings.  Pursuant to the agreement, SEAGD and Plains are to release the funds within fifteen days of the Order becoming final, following which the parties will file a stipulation for dismissal of the Adversary Proceedings.

### *Ad Hoc* Committee's Motion to Modify Automatic Stay

On November 18, 2020, the self-appointed *Ad Hoc* Committee, a group of working interest holders holding an interest in the Southeast and Southwest Brooklyn Oil Units ("South Brooklyn Oil Units") and a company that operates two adjacent units, filed a *Motion to Modify the Automatic Stay to: (A) Hold a Meeting of the Working Interest Owners in the Brooklyn Oil Units; (B) Take a Contractually Authorized Vote to Remove Sklar Exploration Company, LLC as Operator of the Brooklyn Oil Units; and (c) Upon an Affirmative Vote Take All Steps Necessary to Effectuate the Removal* ("Stay Relief Motion").  The Stay Relief Motion seeks to modify the stay to remove SEC as operator of the South Brooklyn Oil Units, ostensibly to allow the operator of the adjacent Northeast and Northwest Brooklyn Oil Units, Pruet Production Company, a member of the *Ad Hoc* Committee, to take over operation of the South Brooklyn Oil Units.

The Debtors timely filed their Objection to the Stay Relief Motion on December 10, 2020, asserting that the Stay Relief Motion failed to establish cause for removal of SEC as operator, as the interests held by the working interest holder are not diminishing in value, and the *Ad Hoc*

13

Committee likely does not have the votes to remove SEC as operator. Furthermore, SEC's continued operation of the South Brooklyn Oil Units is a necessary part of SEC's reorganization efforts, as SEC receives significant revenue from the operation of the South Brooklyn Oil Units, because of the reimbursement for general and administrative expenses associated with the Units. SEC further receives management fees from operating the gas plant located on the Brooklyn Oil Units, although the *Ad Hoc* Committee has represented that it does not intend to seek removal of SEC as operator of the gas plant.

A hearing on the Stay Relief Motion was held on December 17, 2020, following which the Court held that issues raised in the Stay Relief Motion related primarily to feasibility of a Plan of Reorganization. As a result, the Court continued the final hearing on the Stay Relief Motion to be heard in conjunction with a hearing on confirmation of the Plan.

### Collection Efforts Related to Unpaid Joint Interest Billings

During the pendency of the bankruptcy case, SEC has struggled with ongoing collection efforts with respect to joint interest billing obligations ("JIBs") owed to SEC by various working interest owners ("WIOs"). As the operator, SEC is required to distribute revenue received from the sale of oil and gas products owned by the WIOs to such parties, and relies on the payment of JIBs from such WIOs to pay its ongoing expenses and maintain operations. Post-petition, a number of WIOs began to withhold payment of JIBs in an effort to assert certain setoff or recoupment rights. As a result of the withholding of JIB payments by WIOs, SEC suffered from increasing cash shortfalls with limited ability to enforce its rights under the JOAs as a result of heavily negotiated language in the Final Cash Collateral Order.

The continued cash shortfalls for SEC resulted in additional reliance on the revenue that would otherwise be paid to Sklarco, resulting in Sklarco contributing significantly more than its proportionate share for the expenses associated with the continued operation of the wells. As a result of the continued withholding of JIBs by WIOs, on September 4, 2020 the Debtors filed a Motion for Clarification of Orders and to Authorize Immediate Offset of Joint Interest Billing Obligations ("Offset Motion"). A number of WIOs objected to the Offset Motion, and, following a preliminary hearing, the Offset Motion was held in abeyance. At the Debtors' request, a hearing on the Offset Motion was reset on February 11, 2021. The Court ultimately denied the Offset Motion as moot, holding that to the extent any JIBs owed by WIOs exceeded the amount owed for pre-petition revenue by SEC, additional JIBs were required to be paid, barring which noncompliant WIOs may be held in contempt of court.

As of the date of filing this Amended Disclosure Statement, several of the parties have become compliant with the Court's order, and SEC reserves the right to seek further remedies against parties who remain noncompliant, or become noncompliant in the future. Collection of JIBs remains, and will continue to remain an ongoing issue, particularly as SEC proceeds with a wind down and transition of operations to a new operator, as set forth in greater detail herein.

### Restructuring and Reorganization Efforts

The Debtors have made significant efforts in their restructuring process to resolve issues raised by parties in this proceeding during its bankruptcy case. The Debtors have conducted a thorough analysis of the properties to evaluate the costs associated with assumption and rejection of contracts. The Debtors further participated in a two-day mediation regarding the terms of the Joint Plan in January 2021.

The mediation resulted in an agreement with EWB and the Committee, the terms of which have been incorporated into the Amended Plan. However, a number of issues remained unresolved with WIOs holding claims against SEC regarding the calculation and treatment of claims associated with assuming JOAs by SEC to allow SEC to remain the operator of the various oil and gas properties. Despite continued efforts, the Debtors were ultimately unable to reach a resolution with the *Ad Hoc* Committee and other WIOs regarding the cure claims. With the prospect of significant litigation over cure claims and uncertainty regarding SEC's ability to retain operatorship of the properties, SEC's reorganization efforts became uneconomic.

Absent the continued uncertainty regarding SEC's continued operatorship of certain properties, SEC continuing as a going concern would provide significant value to creditors. But with the prospect of looming fights regarding operatorship and cure claims, SEC has lost support for its reorganization efforts. As a result, the Amended Plan contemplates a structured wind down of SEC's operations, including resignation of SEC as operator and an orderly transition to any duly appointed operator selected to replace SEC.

## VI.    DESCRIPTION OF ASSETS

The values of the Debtors' assets, owned on the Petition Date, are set forth in detail in the Asset Analysis which is attached as Exhibit A to this Disclosure Statement. All values are stated as of the Petition Date unless otherwise specified. Additional information about the Debtors' assets can be found in their respective Schedules and Statement of Financial Affairs.

**SEC's Assets**

SEC's assets are primarily comprised of its office equipment and furniture, accounts receivables, and its interest as an operator in the JOAs for the properties operated by SEC. The value listed for SEC's office and furniture equipment is based on prior costs and applicable tax records. SEC's office furniture and equipment is disbursed between its three office locations, and is several years old. As a result, while SEC has listed its office equipment and furniture with a combined value of approximately $1 million, the assets would likely receive significantly less in the event of a liquidation.

SEC further has an interest as an operator in the respective JOAs for its operated properties. SEC does not hold an ownership interest in any of the properties for which it is an operator, rather all revenue that is generated and collected from the sale of hydrocarbons is subject to the claims of the royalty interest holders, overriding royalty interest holders, and the working interest holders. As an operator, SEC is entitled to receive reimbursement for joint interest billings for expenditures on the operated property, and reimbursement for a percentage of administrative costs associated

with operating SEC through contractual reimbursement. The JOAs are executory contracts, and SEC is exercising its business judgment in determining which JOAs to assume, and which to reject.

SEC also has significant owed but unpaid receivables from joint interest billing obligations. As of the date of filing this Disclosure Statement, SEC has receivables in amount of $2,513,629.64, of which approximately $2,035,239.40 are past due. SEC previously sought authorization to offset unpaid joint interest billing obligations against post-petition revenue owed to working interest holders. SEC's Motion has been held in abeyance. SEC reserves the right to renew its Motion any time prior to confirmation of the Plan.

**Sklarco's Assets**

Sklarco's assets are comprised primarily of its interest in oil and gas properties, including the applicable mineral leases, and its working interests, overriding royalty interests, and royalty interests in properties operated by SEC and third-party operators. On the Petition Date, Sklarco listed the value of its oil and gas interests at $75.4 million based on a reserve report dated April 1, 2020 completed by T. W. McGuire & Associates, Inc. Post-petition, the Debtors retained Nederland Sewell & Associates ("NSAI") in consultation with EWB and the Committee to complete an updated reserve report. NSAI issued its *Estimates of Reserves and Future Revenue Report* ("NSAI Reserve Report") on November 5, 2020, in which NSAI opined that Sklarco's oil and gas interests have a combined present value of approximately $28.6 million.

Sklarco has also scheduled its interest in the well machinery, fixtures, and equipment. While the well equipment was scheduled separately, the well equipment cannot be severed from the oil and gas properties, and therefore has no independent value.

In addition to the oil and gas assets, Sklarco owns interests in certain outside investments, comprised of minority interests in outside companies and limited partnerships. A majority of the outside investments have limited value, and are not currently making distributions to interest holders, or, in some instances, have made final distributions to interest holders. As such, Sklarco has scheduled the value of the interests in outside investments as $0.

**Avoidance Actions**

Certain Avoidance Actions pursuant to 11 U.S.C. §§ 545 through 550 and related actions exist in this case. The Debtors each listed a number of payments to creditors in an amount greater than $6,825.00, the preference threshold amount, within the 90 days prior to the Petition Date and certain payments to insiders within the two years prior to filing their bankruptcy cases.

Pursuant to the Plan, all Avoidance Actions will be reserved to the Creditor Trust for the benefit of Class 6 and Class C unsecured Creditor, and may be pursued at the discretion of the Creditor Trustee after evaluation. In certain instances, the Creditor Trustee may decline to pursue an Avoidance Action based on a number of factors, and the decision to pursue or not to pursue Avoidance Actions is entirely within the discretion of the Creditor Trustee. Pursuant to 11 U.S.C. § 546(A)(1), Avoidance Actions must be commenced on or before April 1, 2022, subject to the Tolling Agreement between the Creditor Trustee and Howard Sklar. Any Avoidance Actions not commenced by that time shall be deemed abandoned.

## VII.   DESCRIPTION OF LIABILITIES

## A.      Priority Claims

Priority Claims are defined in the Plan as any pre-petition Claim entitled to a priority in payment under § 507(a) of the Code, excluding any Administrative Claim or Tax Claim.  Section 507(a) of the Code includes but is not limited to claims for: wages, salaries, or commissions, including vacation, sick leave, or severance pay owing to employees; and sales commissions earned by an individual within 180 days prior to filing the petition. 11 U.S.C. § 507(a)(1)-(4) (2019).

### 1.      Administrative Expense Claims

**Professional Fees.**  Administrative Claims are those Claims for payments of administrative expenses of the kind specified in § 503(b) or § 1114(e)(2) of the Bankruptcy Code and are entitled to priority pursuant to § 507(a)(2) of the Bankruptcy Code, including but not limited to: the actual, necessary costs and expenses of preserving the estate; payment of professional fees; fees payable to the trustee; and all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a final order of the Bankruptcy Court.  Professional fee claims have been reduced in part through payments made by the Debtor through both retainers and through interim payments allowed under the terms of the Cash Collateral Order and the interim payment of professional fee order entered during the case.  The Administrative Claims include the Professional Fees incurred during the case which remain unpaid, including fees and costs for:

| Claimant | Service | Fees and Costs incurred and paid through January 31, 2021 |
|---|---|---|
| Kutner Brinen, P.C. | Bankruptcy Counsel | Fees:$426,284.00 Costs: $5,675.17 Paid: $283,310.06 |
| Armbrecht Jackson, LLP | Special Counsel – Oil & Gas, Litigation | Fees: $229,228.50 Costs: $2,618.40 Paid: $161,001.20 |
| Munsch Hardt Kopf & Harr, P.C. | Counsel for the Official Committee of Unsecured Creditors | Fees: $422,096.50 Costs: $1,991.60 Paid: $302,050.36 |
| Epiq Corporate Restructuring, LLC | Claims & Noticing Agent | Paid: $56,081.36 |
| CR3 Partners, LLC | Chief Restructuring Officer | Fees and Costs: $1,045,380.39 Paid: $752,111.88 |

### 2.      Tax Claims

Priority Tax Claims are defined in the Plan as any Claim that is entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code and shall include interest solely to the extent that the holder of such Claim is entitled to such interest under section 507(a)(8)

of the Bankruptcy Code. The Debtors are current on all post-petition tax filings and tax payments. The claims filed by taxing authorities include:

| Debtor | Taxing Authority | Claim No. | Amount of Claim |
|---|---|---|---|
| SEC | Internal Revenue Service ("IRS") | 57 | $22,954.94 |
| SEC & Sklarco | State of Alabama, Dept. of Revenue | 62 | $247,500.78 |
| SEC & Sklarco | Louisiana Dept. of Revenue | 75 | $40,379.40 |
| SEC & Sklarco | State of Alabama, Dept. of Revenue | 85 | $166,717.36 |
| Sklarco | IRS | 91 | $1,400.00 |
| SEC | State of Florida, Dept. of Revenue | 10063 | $570.90 |
| SEC | State of Florida, Dept. of Revenue | 10064 | $5,113.77 |
| | | **Total** | **$484,637.15** |

Post-petition, SEC sought authorization to pay the severance taxes owed to the State of Alabama Department of Revenue. As such, the total amount owed on account of the Tax Claims has been reduced by $414,218.14 as a result of the payment of the pre-petition severance taxes owed to the State of Alabama, and the total amount that must be paid on the Effective Date for the Tax Claims will be $70,419.01.

### 3.    Employee Claims (Class 1).

Pursuant to 11 U.S.C. § 507(a)(4), wages, salaries and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $13,650.00 per employee earned within the 180 days prior to the Petition Date are entitled to priority. SEC was current on all employee wages as of the Petition Date, and therefore does not believe any wage claims exist. Vincent Zito filed Proof of Claim No. 78, asserting a priority claim in the amount of $21,058 for services provided to the Debtors on a pre-petition basis. The Debtors are still investigating this claim. To the extent Allowed, Mr. Zito's priority claim against SEC will be capped at $13,650, and all remaining amounts will be deemed an unsecured claim against SEC.

SEC does not believe that any other Class 1 claims arising under section 507(a)(4) or (a)(5) exist.

### 4.    U.S. Trustee Fees

All unpaid U.S. Trustee Fees shall be paid on a current and ongoing basis until the case is closed.

### B.    Secured Claims.

A summary of the known Secured Claims for the Debtor's bankruptcy estate is set forth below.

### 1.    East West Bank (Class A and Class 2).

The Class A and Class 2 Claim is secured by a lien on substantially all assets owned by SEC and Sklarco. On or about June 15, 2018, SEC and Sklarco entered into a $50,000,000 Senior

18

Secured Revolving Line of Credit Facility, evidenced by a Credit Agreement, Pledge and Security Agreement, and Promissory Note (the "Loan Documents") with East West Bank, as Agent and Lead Arranger.  Pursuant to the Loan Documents, SEC and Sklarco granted EWB a lien on: 1) all personal property and fixture property, deposit accounts, letter of credit rights, securities and all other investment property, and insurance claims; and 2) all oil and gas interests owned by, or later acquired by, SEC and Sklarco. In accordance with the Credit Agreement, EWB did not receive a lien on outside investment owned SEC or Sklarco, or on the oil and gas interests held in the name of Sklarco as nominee for the Estate of Judy Sklar Silberstein, the Judy Trust FBO Maren Silberstein, and the Estate of Miriam M. Sklar.  EWB duly perfected its interests in the Debtors' assets by filing Mortgages and Deeds of Trust in the applicable real property records in Mississippi, Louisiana, Texas, Florida, and Alabama, and by filing UCC-1 financing statements with the Bossier Parish Clerk of Court.

In accordance with the Amended Plan, on the Effective Date of the Plan, the EWB Secured Claim will be $24 million, less any amounts paid to EWB post-petition and pre-confirmation, excluding the amounts paid for EWB's attorney fees.

2. **Ford Motor Credit (Class 3).**

The Class 3 Claim is secured by a purchase money security interest in eighteen vehicles financed through Ford Motor Credit. Ford Motor Credit has filed the following Proofs of Claim:

| Claim No. | Amount | Vehicle Securing Interest |
|---|---|---|
| 1 | $45,777.55 | 2019 Ford F-150; VIN 1FTEW1E47KKF42980 |
| 2 | $26,909.72 | 2018 Ford F-150; VIN 1FTEW1EGXJFC11026 |
| 3 | $45,390.86 | 2020 Ford F-150; VIN 1FTEW1E46LFA82470 |
| 4 | $46,174.15 | 2020 Ford F-250; VIN 1FT7W2B61LEC27148 |
| 5 | $37,489.44 | 2018 Ford F-150; VIN 1FTEW1E50JKF99213 |
| 8 | $30,425.16 | 2019 Ford Ranger Super; VIN 1FTER1FH6KLA66276 |
| 9 | $37,240.69 | 2018 Ford F-150; VIN 1FTEW1EG1JFD41552 |
| 10 | $40,744.57 | 2019 Ford F-250; VIN 1FT7W2BT3KEE99379 |
| 13 | $52,191.98 | 2020 Ford F-150; VIN 1FTEW1E55LFA69055 |
| 21 | $26,447.24 | 2017 Ford F-150; VIN 1FTEW1EF5HFA31230 |
| 22 | $33,556.16 | 2019 Ford Expedition; VIN 1FMJU1JT6KEA01985 |
| 54 | $15,652.22 | 2016 Ford F-150; VIN 1FTEW1EF0GFD50856 |
| 55 | $20,856.81 | 2017 Ford F-250; VIN 1FT7W2B64HED39983 |
| 73 | $21,403.09 | 2016 Ford F-150; VIN 1FTEW1EF5GFD35009 |
| **TOTAL** | **$480,259.64** | |

3. **Ally Bank (Class 4).**

The Class 4 Claim is secured by a purchase money security interest in a 2018 Ford F-150, Vin 1FTEW1CP6JKE16174.  Ally Bank filed Proof of Claim No. 52, asserting a secured claim in the amount of $26,189.19.  The Class 4 Claim is fully secured by the value of the collateral securing the Claim.

4. **Mechanics' Lien Claims (Class B.1 through B.7)**

Classes B.1 through B.5 are comprised of the secured claims of creditors who perfected mechanics or materialmens' liens ("M&M Liens") on a pre-petition basis, or filed a notice pursuant to 11 U.S.C. § 546 on a post-petition basis. A full list of those creditors asserting mechanics' or materialmens' liens, including those who have not properly perfected their liens pursuant to Section 546, is attached hereto as Exhibit C, including those properties to which the lien attaches.

In each instance, the validity, scope of property covered, priority and enforcement of the liens is determined by State Law in the state in which the lien was filed. In Alabama, where the majority of the Debtors' operations are conducted, the liens are governed by Ala. Code § 35-11-210 *et seq*, pursuant to which properly perfected liens may be enforced against the real property and the improvements thereto upon which labor, material, or equipment was provided pursuant to a valid contract. Assuming compliance with statutory requirements in the respective state, the M&M Liens would attach to the interests in real property of the various working interest holders, including Sklarco, but would not attach to the interests held by the surface owners or mineral owners/lessors.

A majority of the parties who sent notices of M&M Liens failed to perfect their lien as to Sklarco on a pre-petition basis, or file a notice pursuant to section 546 of the Bankruptcy Code on a post-petition basis. Parties who have failed to perfect their lien as to Sklarco are not separately classified. Those parties who have perfected their liens are separately classified, and Sklarco that such claims are wholly unsecured by the value of Sklarco's interest, as the value of Sklarco's oil and gas assets is less than the first priority secured claim of EWB.

C. **Non-Priority Unsecured Creditors.**

***Sklarco***

Sklarco's Class C general unsecured creditors are generally comprised of third-party operators to whom Sklarco owed joint interest billing obligations on a pre-petition basis. Sklarco scheduled unsecured claims in the amount of $244,614.57. Based on the claims register maintained by Epiq, the total amount of unsecured claims asserted against Sklarco is approximately $877,383.14. Sklarco is in the process of investigating all claims filed, and reserves the right to object to any unsecured claims asserted against the incorrect debtor, or that do not have a basis in fact or law. Sklarco anticipates that the total amount of general unsecured claims will ultimately be reduced to less than $300,000.

***Sklar Exploration Company, LLC***

SEC's Class 6 general unsecured creditors are generally comprised of the unsecured claims of vendors and liabilities arising from cash call advances paid by working interest owners. Based on the claims register maintained by Epiq, the total amount of unsecured claims asserted against SEC are approximately $36,617,000.  SEC is in the process of investigating all claims filed, and reserves the right to object to any unsecured claims asserted against the incorrect debtor, or that do not have a basis in fact or law. Based on an initial review of the filed claims, SEC anticipates that the total amount of Class 6 claims will be reduced by at least $18 million.  The general unsecured claims arising from cash call liabilities may also be reduced prior to confirmation based on performance of work for which cash call advances were requested on a pre-petition basis.  The amount of Class 6 claims may increase based on claims arising from SEC's rejection of certain JOAs.

**D.      Leases and Executory Contracts.**

On the Effective Date of the Plan, the Debtors will assume those executory contracts and unexpired leases, which have not been rejected by Order of the Court prior to the Confirmation Date as set forth in the Plan.  On the date of the entry of an Order confirming the Plan, Debtors shall be the holder of any and all right, title, and interest to the assumed leases and contracts, and as a result, such assumed leases and contracts shall be in full force and effect and shall be binding upon Debtors and the other parties thereto.  Confirmation of the Plan shall constitute a determination that the payments to be made to said creditors pursuant to the Plan satisfy all conditions precedent to assumption and assignment set forth in 11 U.S.C. §§ 365(b) and (f).  As to any rejection of the leases and executory contracts, on the Effective Date of the Plan, the Debtor will reject the executory contracts and unexpired leases to which it is a party listed in the Plan, which have not been assumed by Order of the Court prior to the Confirmation Date.  Executory contracts and unexpired leases will be rejected pursuant to the provisions of 11 U.S.C. § 365.  Any executory contract or unexpired lease not assumed in accordance with the Plan shall be rejected. All proofs of claim with respect to claims arising from the rejection of any executory contract or unexpired lease shall be filed with the Court within twenty (20) days after the earlier of: (i) the date of the Court order approving the Debtor's rejection of such executory contract or unexpired lease; or (ii) the Confirmation Date.  Any claims not filed within such time shall be forever barred against the Debtor, its estate, and property, and as a result, any such Claims shall be disallowed in full. Claims arising from such rejection, to the extent Allowed, shall be treated as non-priority unsecured Claims.

Sklarco has filed a number of motions to assume JOAs to which Sklarco is a party as a working interest owner.  Some of the Unit Operating Agreements also include individual well-level JOAs.  A full list of contracts which Sklarco intends to assume are attached hereto as Exhibit D, and additional motions to assume will be filed ahead of confirmation of the Plan.  Sklarco asserts that it is current on all obligations under the contracts which it intends to assume, and therefore there will be no cost to Sklarco to assume the various contracts.  Included in the contracts to be assumed is the Agency Services Agreement by and between the Debtors, Howard Sklar, the Howard Trust, the Alan Trust, the Jacob Trust, and the Estate of Miriam Mandel Sklar, which generally provides for the management of certain assets for the benefit of the various Trusts and the Estate of Miriam Mandel Sklar in exchange for a management fee.

SEC intends to reject all contracts to which it is a party on the Effective Date of the Plan. SEC filed an omnibus motion to reject all JOAs to which it is a party on February 26, 2021, and

anticipates that the rejection of the JOAs will become effective upon confirmation of the Plan. Notwithstanding the Motion to Reject, SEC intends to continue to perform under the respective JOAs through confirmation and until operatorship of the various parties can be effectively transitioned to a new, duly appointed operator. SEC anticipates that the full wind down and transition will take approximately six (6) months. A full schedule of the anticipated transition and wind down will be filed with the Plan Supplement, no later than 21 days prior to a hearing on confirmation of the Plan.

## VIII.   DESCRIPTION OF PLAN

### A.    General Description

The Debtors filed their Plan of Reorganization with the United States Bankruptcy Court for the District of Colorado on December 18, 2020. The Plan provides for the reorganization of the Debtors under Chapter 11 of the Bankruptcy Code. Pursuant to the Plan, the Debtors shall restructure their debts and obligations, and Sklarco. **SEC shall be reorganized for the limited purpose of effectuating an orderly wind down and transition of operatorship to a new, duly appointed operator.** The Plan provides for the specification and treatment of all creditors and Interest holders of the Debtors. The Plan identifies whether each Class is impaired or unimpaired. A Class is unimpaired only if the Plan leaves unaltered the legal, equitable, or contractual obligations between the Debtor and the unimpaired claimants or Interest holders. The following is a brief summary of the Plan. The actual text of the Plan should be reviewed for more specific detail.

As provided in Section 1123(a)(1) of the Bankruptcy Code, the Priority Administrative and Tax Claims against the Debtor are not designated as classes. The holders of such Allowed Claims will be paid in full and are not entitled to vote on the Plan. The Plan divides the creditors into separate classes. The classes are set forth as follows:

**Sklarco**

Class A - The Allowed Secured Claim held by East West Bank.

Class B.1 through B.5– The Allowed Secured Claims held by Mechanics Lien Claimants more specifically identified as follows:

Class B.1 - The Allowed Secured Claim held by Stoneham Drilling Corporation, if any.

Class B.2 - The Allowed Secured Claim held by Premium Oilfield Services, LLC, if any.

Class B.3 - The Allowed Secured Claim held by Weatherford U.S., L.P., if any.

Class B.4 - The Allowed Secured Claim held by Liquid Gold Well Service, Inc., if any.

Class B.5 – The Allowed Secured Claim held by RAPAD Well Service, Inc., if any.

22

Class B.6 – The Allowed Secured Claim held by Pro-Tek Field Services, LLC, if any.

Class B.7 – The Allowed Secured Claim held by Pioneer Wireline Services, LLC, if any.

Class C – The Allowed Unsecured Claims against Sklarco.

Class D – The member Interest held by Howard Trust

**SEC**

Class 1 - All Allowed Unsecured Claims specified in Section 507(a)(4) and 507(a)(5) of the Code as having priority.

Class 2 - The Allowed Secured Claim held by East West Bank.

Class 3 – The Allowed Secured Claim held by Ford Motor Credit.

Class 4 – The Allowed Secured Claim held by Ally Bank.

Class 5 – Reserved.

Class 6 - The Allowed Unsecured Claims against SEC held by unsecured creditors unless separately classified.

Class 7 - The member Interest held by Howard Trust.

**B.      The Claims**

**1.      Unclassified Priority Claims**

The holders of Allowed Claims of the type specified in Section 507(a)(2) of the Bankruptcy Code, including the costs and expenses of administration, shall receive cash equal to the Allowed amount of such Claim or a lesser amount or different treatment as may be acceptable and agreed to by the particular holders of such Claims.  Such Claims shall be paid in full on the Effective Date, or treated as otherwise agreed by the particular holders of such Claims.  Administrative Claims that are Allowed by the Court after the Effective Date of the Plan shall be paid upon allowance or as otherwise agreed by the particular holders of such Claims.  At the current time the Debtor has no agreements with administrative claimants to be paid other than in full as of the effective date of the Plan.

All Administrative Claims of professionals are subject to Court approval on notice to creditors with an opportunity for a hearing.  Certain Professional Fees may be paid pursuant to interim fee applications and upon Court allowance.  The following fees and costs have been incurred by professionals in this case:

| Claimant | Service | Fees and Costs incurred and paid through November 30, 2020 | Claim Expected |
|---|---|---|---|
| Kutner Brinen, P.C. | Bankruptcy Counsel | Fees:$426,284.00 Costs: $5,675.17 Paid: $283,310.06 | To Be Determined[1] |
| Armbrecht Jackson, LLP | Special Counsel – Oil & Gas, Litigation | Fees: $229,228.50 Costs: $2,618.40 Paid: $161,001.20 | To Be Determined |
| Munsch Hardt Kopf & Harr, P.C. | Counsel for the Official Committee of Unsecured Creditors | Fees: $422,096.50 Costs: $1,991.60 Paid: $302,050.36 | To Be Determined |
| Epiq Corporate Restructuring, LLC | Claims & Noticing Agent | Paid: $56,081.36 | To Be Determined |
| CR3 Partners, LLC | Chief Restructuring Officer | Fees and Costs: $1,045,380.39 Paid: $752,111.88 | To Be Determined |

The amounts due to professionals may be reduced by interim payments prior to the Effective Date of the Plan in accordance with the *Order Approving Interim Advance Payment Procedures* and the interim allowance of fees and costs. The Debtors anticipate that they will have sufficient funds available to satisfy these claims on the Effective Date or upon allowance of such fees and costs.

2.    **Tax Claims**

Tax Claims are any Claim of a governmental unit for taxes entitled to priority pursuant to 11 U.S.C. § 507(a)(8). The Tax Claims will be paid in full on the Effective Date of the Plan. The Tax Claims that must be paid on the Effective Date are:

| Debtor | Taxing Authority | Claim No. | Amount of Claim |
|---|---|---|---|
| SEC | Internal Revenue Service ("IRS") | 57 | $22,954.94 |
| SEC & Sklarco | State of Alabama, Dept. of Revenue[2] | 62 | $0.00 |
| SEC & Sklarco | Louisiana Dept. of Revenue | 75 | $40,379.40 |
| SEC & Sklarco | State of Alabama, Dept. of Revenue | 85 | $0.00 |
| Sklarco | IRS | 91 | $1,400.00 |
| SEC | State of Florida, Dept. of Revenue | 10063 | $570.90 |
| SEC | State of Florida, Dept. of Revenue | 10064 | $5,113.77 |
|  |  | **Total** | **$70,419.01** |

3.    **Class 1 Priority Claims**

---
[1] Claim is dependent on amount of litigation over the Plan.
[2] Paid post-petition

Allowed Class 1 Priority Claims shall be paid in full on the Effective Date.  The Class 1 claims for certain pre-petition wages and employee Claims are more particularly described in Sections 507(a)(4) and 507(a)(5) of the Code.  If the claim of  Vincent Zito is an Allowed priority claim arising under Section 507(a)(4), the total Class 1 Priority Claims to be paid on the Effective Date of the Plan will be $13,650.  If Mr. Zito's claim is disallowed, SEC does not believe there are any Class 1 Priority Claims.

    **4.**        **Secured Claims**

    **a. East West Bank (Class 2 and Class A).**

Class 2 and Class A are impaired by the Plan.  The principal amount of the EWB Secured Claim will be Allowed in the amount of $24 million, less any payments received post-petition and pre-confirmation, excluding any payments for EWB's attorney fees.  The EWB Secured Claim Claim will continue to retain all liens that secured its Claim as of the Petition Date.  The EWB Secured Claim shall bear interest at a rate of 6% per annum, and shall receive not less than 90% of Available Cash, which amount shall be dependent on the amortization of the EWB Secured Claim and the amount necessary to maintain at least the same loan-to-value ratio as exists on the Effective Date of the Plan.  All payments shall be applied first to interest and then to the principal balance of the EWB Secured Claim.

In the event the market price for crude oil drops below $40/bbl for WTI Crude based on the CL1 Commodity market-close price listed at <https://www.bloomberg.com/quote/CL1:COM> for a period of five (5) or more consecutive days, EWB shall be entitled to adjust the monthly payment amount so that, based on the decline curve set forth in the NSAI Reserve Report, the loan-to-value ratio does not at any time exceed the loan-to-value ratio as of the Effective Date of the Plan (the "Plan LTV Ratio"). EWB may request, from time to time, such other Engineering Reports or Reserve Reports (each as defined in the EWB Loan and Security Documents) to the extent provided in the EWB Loan and Security Documents. A "Borrowing Base Deficiency" within the meaning of that term in the EWB Loan and Security Documents shall occur whenever the loan-to-value ratio exceeds the Plan LTV Ratio.  In the event of a Borrowing Base Deficiency, EWB may, in its sole and absolute discretion, (i) elect temporarily to waive any default based on a Borrowing Base Deficiency, (ii) make such redeterminations provided under the EWB Loan and Security Documents, or (iii) take such other actions provided under the EWB Loan and Security Documents.

The EWB Secured Claim shall become due and payable on the second anniversary of the Effective Date of the Plan through sale of assets or refinance of the EWB Secured Claim.  No later than six months prior the maturity date of the EWB Secured Claim (eighteen (18) months after the Effective Date of the Plan) the Debtors, in consultation with EWB and the Creditor Trustee, and Howard Sklar, as trustee of the Howard Sklar Trust, shall determine if a marketing and sale process must be commenced.  While the Creditor Trustee and Howard Sklar will be consulted, they shall not have the ability or authority to veto the decisions made by the Reorganized Debtors and shall not have any authority or right to interfere with EWB's sole and absolute discretion regarding the collateral securing the EWB Secured Claim in accordance with the EWB Loan and Security Documents under the Plan.  Following such consultation with EWB, the Creditor Trustee, and Howard Sklar, the Reorganized Debtors shall make an election no later than nineteen (19) months after the Effective Date either to pursue a refinancing based on a commercially reasonable

likelihood that a refinancing will occur, or to market and sell the Reorganized Debtors' assets.

If the election is made to sell the assets of the Reorganized Debtors, the Reorganized Debtors shall cooperate with EWB to engage an investment banker to market and sell mineral interests held by Sklarco and any and all other assets held by the Reorganized Debtors. Any sale, refinance, or foreclosure followed by a sale shall be treated as a Monetizing Event, as set forth more fully in Section [●] below.

The payment on account of the EWB Secured Claim will vary based on the actual revenue received by Sklarco on account of its oil and gas interests during the Plan. Based on the Projections attached hereto as Exhibit B, EWB is projected to receive payments in the amount of approximately $2.9 million during the first year of the Plan term.

**b.  Ford Motor Credit (Class 3).**

Class 3 is impaired by the Plan. The Class 3 Claim will retain all liens securing the Claim on the Effective Date of the Plan, and shall be paid in accordance with the underlying contracts until the vehicles securing the Class 3 Claim are returned in accordance with the Resignation and Transition Schedule. After return and liquidation of the Vehicles, any remaining amounts owed on account of the Class 3 Claim will be treated as a Class 6 general unsecured claim.

**c.  Ally Bank (Class 4).**

Class 4 is impaired by the Plan. The Class 4 Claim will retain all liens securing the Claim on the Effective Date of the Plan, and shall be paid in accordance with the underlying contracts until the vehicles securing the Class 4 Claim are returned in accordance with the Resignation and Transition Schedule. After return and liquidation of the Vehicles, any remaining amounts owed on account of the Class 4 Claim will be treated as a Class 6 general unsecured claim.

**d.  Mechanics Lien (Class B.1 through B.7).**

Classes B.1 through B.7 consist of the Allowed or arguably allowable classes of creditor claims held by Premium, Stoneham, Weatherford, Liquid Gold, RAPAD, Pro-Tek Field Services, LLC, and Pioneer Wireline Services, LLC all of whom assert a secured claim based on mechanics liens arising under applicable State Law for which Notices of Perfection of Liens Under Section 546(b) have been filed. The Class B.1 through B.7 Claims are impaired by the Plan. The Class B.1 through B.7 claims arise out of expenses incurred by SEC for the ongoing operation of the wells. On the Effective Date of the Plan, the Class B.1 through B.7 Claims shall be deemed unsecured pursuant to 11 U.S.C. § 506 and treated as Class 6 general unsecured claims of SEC.

**5.      General Unsecured Claims.**

**a. Class 5 – Reserved.**

**b.  Class 6 – General Unsecured Claims against SEC and Sklarco.**

Class 6 and Class C are comprised of the Allowed General Unsecured Claims against SEC and Sklarco, respectively. On the Effective Date of the Plan, all Class 6 and Class C creditors shall receive a beneficial interest in the Creditor Trust in exchange for their claims. Subject to the maintenance of the Plan LTV Ratio for the EWB Secured Claim, beginning on the Effective Date

and continuing until a Monetizing Event, the Reorganized Debtors shall pay [●]% of the remaining 10% of the Available Cash to the Creditor Trust, and the remaining [●]% shall be paid to the Howard Sklar Trust.  The Creditor Trust shall further receive all distributions from or payments on account of all assets and/or interests allocated to the Creditor Trust.

All payments received by the Creditor Trust shall be applied against the Creditor Trust Payment Obligation, which the Plan defines as the obligation of the Debtors to make one or more payments to the Creditor Trust up to the total amount of $22 million.  In a Monetizing Event, the Creditor Trust shall receive the distributions set forth in Section VIII.C below.

In the event of a refinance of the EWB Secured Claim, payments on account of the Creditor Trust Payment Obligation shall be readjusted based on the terms of the new loan issued at the time of the refinance, and shall receive the Creditor Trust Allocation as follows:

- [●]% of the Available Cash until the Creditor Trust has received $3 million towards the Creditor Trust Payment Obligation in excess of the funds it is to receive pursuant to Section 8.8(b) of the Plan;
- [●]% of the Available Cash after the Creditor Trust has received more than $3 million but less than $8 million towards the Creditor Trust Payment Obligation in excess of the funds it is to receive pursuant to Section 8.8(b) of the Plan; and
- [●]% of the Available Cash after the Creditor Trust has received $8 million towards the Creditor Trust Payment Obligation in excess of the funds it is to receive pursuant to Section 8.8(b) of the Plan.

Notwithstanding anything to the contrary, in no event shall the Creditor Trust receive less than [●]% of the Available Cash.  The Reorganized Debtors shall continue to calculate Available Cash in the same manner as before such refinance, and shall continue to make such payments after such refinance until the earlier of the date on which the balance of the Creditor Trust Payment Obligation is paid in full or all Allowed Class 6 and Class C Claims are paid in full.

The Available Cash  is set forth on the Projections.[3]  In preparing the Projections, the Debtors have used a conservative approach in estimating future revenues.  Actual revenue received is based on a variety of factors, including but not limited to commodity prices and production of the wells.  Based on the Projections, the total Available Cash after payment of the EWB Secured Claim is anticipated to be:

| Year | Projected Available Cash After EWB Payments |
|------|---------------------------------------------|
| 2021 | $467,000 |
| 2022 | $309,000 |
| 2023 | $256,000 |

---

[3] The total amount to be divided as between the Creditor Trust and the Howard Trust is set forth in the Projections as the "Total Unsecured Creditor Fund".

### *Establishment and Funding of the Creditor Trust*

On the Effective Date of the Plan, the Creditor Trust shall be established for the primary purpose of: (1) receiving and pursuing claims and Causes of Action, and distributing the proceeds of such claims and Causes of Action; and (2) receiving funds and using and distributing funds in accordance with this Plan and the Creditor Trust Agreement. The specific terms of Creditor Trust shall be set forth in the Creditor Trust Agreement. The Creditor Trust will be controlled and administered by the Creditor Trustee, which Trustee shall be selected by the Committee.

The Creditor Trustee shall pay all expenses incurred by the Creditor Trust after the Effective Date, including professional fees, disbursements, expenses, or related support services without application to the Bankruptcy Court. The Creditor Trust is also permitted to engage such professionals as it deems reasonable and necessary without application to the Bankruptcy Court. The Creditor Trust shall be funded with $250,000 ("Trust Administration Funds"), which shall be funded through monthly payments of $50,000 from the Reorganized Debtors until fully funded.

On the Effective Date, all Causes of Action belonging to the Debtors that are not ordinary-course collections, or that are not otherwise released pursuant to the Plan, shall be vested in the Creditor Trust, including any derivative Causes of Action that could have been brought, or may be brought on behalf of the Debtors. The Creditor Trustee, for the Creditor Trust, shall be vested with all right and authority of each of the Debtor corporate entities and their respective members under applicable law to assert or settle claims against directors, officers, or managers (except for claims released pursuant to this Plan).

In addition to the Trust Administration Funds and all Causes of Action, the Creditor Trust shall further receive an interest in the distributions and/or proceeds from the following assets beginning on the Effective Date of the Plan:

1. SEC's interest in THP Partners II, LP:
2. The Debtors' interests in:
   a. The Graham 5-16 Well located in Choctaw County, Alabama;
   b. The Doss E D 3 Well Located in Union, Arkansas;
   c. The East Castor Pipeline located in Bienville, Louisiana;
   d. The Finn Deep Pipeline located in Natchitoches, Louisiana;
   e. The mineral leases identified on Exhibit [●] to the Post-Confirmation Trust Agreement.

The Creditor Trust established under the Plan is established for the purpose of distributing funds transferred to the Creditor Trust, net of all claims, expenses, charges, liabilities, and obligations of the Creditor Trust, to the beneficiaries of the trust in accordance with the terms of the Plan and the Creditor Trust Agreement. The Creditor Trust shall have no objective of continuing or engaging in any trade or business except to the extent reasonably necessary to, and consistent with, the purpose of the Trust. The Creditor Trust shall not conduct business activities other than those associated with or related to the litigation of Causes of Action and distribution of trust assets. It is intended that the Creditor Trust be classified for federal income tax purposes as a

"liquidating trust" within the meaning of the Treasury Regulations Section 301.7701-4(d). All parties and beneficiaries shall treat the transfers in trust described herein as transfers to the beneficiaries for all purposes of the Internal Revenue Code of 1986, as amended (including Sections 61(a)(12), 483, 1001, 1012, and 1274 thereof). The beneficiaries shall be treated for all purposes of the Internal Revenue Code of 1986, as amended, as the grantors of the Creditor Trust and the owners of the Creditor Trust. The Creditor Trustee shall file returns for the Creditor Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a) or (b). All parties, including the beneficiaries and the Creditor Trustee, shall value the Creditor Trust Assets consistently, and such valuations shall be used for all federal income tax purposes. Beneficiaries may wish to consult with a tax professional regarding the tax consequences of holding a beneficial Interest in or receiving a Distribution from the Creditor Trust

Except as expressly provided in the Plan, the Creditor Trust is not, and shall not be deemed, a successor to the Debtors or their Estates, and the Creditor Trust shall not be responsible for any liabilities or obligations of the Debtors other than obligations and Distributions contemplated under the Plan.

6.      **Interests.**

a.      **Class 7 – Interests in SEC.**

Class 7 consists of the membership interests in SEC. Class 7 is impaired by the Plan, in that there is a loss of control for the Interest Holders, a loss of voting rights as set forth in Paragraph 8.6 of the Plan. On the Effective Date of the Plan, all membership interests shall be placed in escrow and subject to an escrow agreement and any valid liens until all payments under the Plan are completed. Following a liquidation and wind down of SEC, all membership interests in SEC will be terminated.

b.      **Class D – Interests in Sklarco.**

Class D consists of the membership interests in Sklarco. Class D is impaired by the Plan, in that there is a loss of control for the Interest Holders, a loss of voting rights as set forth in Paragraph 8.6 of the Plan. On the Effective Date of the Plan, all membership interests shall be placed in escrow and subject to an escrow agreement and any valid liens until all payments under the Plan are completed. Upon satisfaction of all obligations under the Plan, the Interests in Sklarco shall be returned to the Howard Trust.

The Class D Interest Holders shall also [●]% of the Available Cash until the occurrence of the Monetizing Event, (ii) after a Monetizing Event, the Reorganized Debtors shall pay the Howard Trust Allocation directly to the Howard Trust; and (iii) beginning on the Effective Date, Sklarco shall pay Howard Sklar in his individual capacity or as trustee (as the case may be) all revenue derived from the following assets and investments as and when realized by Sklarco, to the extent unencumbered by any lien or security interest granted to EWB:

    a.  Boulders on Fern Apartment Complex
    b.  Timber Quest
    c.  LTP Opportunity Fund
    d.  Trout Creek

     e.   1908 Brands
     f.   Assets held for Maren Silberstein Revocable Trust and the Succession of Miriam Mandel Sklar

In the event of a refinance of the EWB Secured Claim, the Howard Sklar Trust shall not receive less than [●]% of the Available Cash.  The Interest Holders shall also receive distributions solely to the extent necessary to pay taxes attributable to the Reorganized Debtors.

## C.    Distributions Following a Monetizing Event.

Upon occurrence of a Monetizing Event, which the Plan defines as the occurrence of a refinancing of the EWB Secured Claim, a sale by the Reorganized Debtors of all or substantially all of their respective assets, or a sale following a foreclosure on collateral securing the EWB Secured Claim funds shall be distributed as follows:

    a.    First, to EWB up to $21 million, less any i) post-petition and pre-confirmation payments for principal, interest, or fees, but excluding payments for attorney fees, and ii) all principal payments received post-confirmation through the date of the Monetizing Event,  and post-confirmation principal payments, excluding any payments for attorney fees, as satisfaction in full of the EWB Secured Claim;

    b.    Second, to the Creditor Trust up to the amount of $3 million flowing from the agreed allocation of the EWB Secured Claim, in addition to the amounts received from the sale of any assets in which the Creditor Trust has been granted an interest;

    c.    Third,  to the Creditor Trust and the Howard Trust in accordance with the Creditor Trust Allocation and the Howard Trust Allocation, respectively until the earlier of i) payment in full of the Creditor Trust Payment Obligation, or ii) payment in full of all Allowed Class 6 and Class C Claims;

    d.    Fourth, all remaining funds, if any, to the Class 7 and Class D Interest Holders.

For illustrative purposes, assuming the EWB Secured Claim is reduced from $24 million to approximately $17.7 million[4] on the two year anniversary of the Effective Date of the Plan, and the assets of the Reorganized Debtors not otherwise allocated to the Creditor Trust are sold for $25 million, EWB would receive $14.7 million, the Creditor Trust would receive $3 million in addition to the sale proceeds from assets allocated to the Creditor Trust, and the remaining balance of $7.3 million would be distributed in accordance with Creditor Trust Allocation and the Howard Trust Allocation.

## D.    Management and Means for Execution of the Plan.

Pursuant to the Plan, the Debtors shall restructure their debts and obligations and will continue to operate in the ordinary course of business.  Funding for the Plan shall be from income

---

[4] Assumes post-petition, pre-confirmation payments of $1.2 million, and post-confirmation payments of $5.1 million.

derived from Sklarco's ongoing revenue attributed to its oil and gas interests, and SEC's revenue derived from its ongoing operations as operator of certain oil and gas properties.

An Independent Manager(s) shall be appointed for each of the Debtors to manage their day-to-day affairs, including but not limited to:

a) Effectuating the terms of the Plan;
b) Maintaining control over all bank accounts and funds held and maintained by the Debtors;
c) Making distributions to creditors, except those distributions to be made by the Creditor Trustee, and the Howard Sklar Trust;
d) Maintaining control over expenditures;
e) Directing business decisions by the Debtors, including performance of any projects for which SEC previously received cash call advances on those Operating Agreements assumed by SEC; and
f) Pursuing collections of any outstanding receivables and enforcing any other payment obligations, including without limitation, any JIB Obligations owed to the Debtors in the ordinary course of business prior to and/or after the Effective Date, including resolution, whether through litigation, settlement, or otherwise, any claims for setoff or recoupment.

The Independent Manager shall also be responsible for and empowered to effectuate the wind down and dissolution of SEC in consultation with EWB Following confirmation of the Plan, CR3 Partners shall remain in place for a period of up to 30 days to effectuate a transition to the Independent Manager.  The Independent Manager shall remain in place until: 1) the EWB Secured Claim is refinanced and distributions are made in accordance with Section 8.8 of the Plan; and 2) satisfaction of all obligations under the Plan, including the payment in full of all obligations under the Plan.

EWB and the Debtors have made a preliminary selection of Brad Walker to act as the Independent Manager.  Mr. Walker has over 30 years of experience managing, advising, and transacting business in a variety of industries including oil and gas.  The Projections have anticipated monthly fees to the Independent Manager of $20,000.  All agreements with the Independent Manager remain subject to further documentation to be provided in the Plan Supplement.


E.      **Exculpation.**

**Except as set forth in this Plan, neither the Debtors, the Creditors' Committee, the CRO,  nor any of their agents, representatives, attorneys, accountants or advisors shall have or incur any liability in connection with, or related to formulating, negotiating, soliciting, preparing, disseminating, confirming the Plan, or any contract, instrument, release or other agreement, or document created or entered into in connection with the Plan or any other act taken or omitted to be taken in connection with the restructuring of the Debtors pursuant to the Plan during the pendency of the Debtors' Chapter 11 Cases and through the date of confirmation of the Plan; provided that the foregoing shall have no effect on the liability for**

a breach of the Plan or any other document, instrument, or agreement executed and delivered in connection with the Plan, or that otherwise results from any act or omission that is determined in a Final Order to have constituted gross negligence, bad faith, or willful misconduct; provided further that nothing in this Plan shall limit the liability of any retained attorney in violation of Rule 1.8(h)(1) of the Colorado Rules of Professional Conduct.  For the avoidance of a doubt, there shall be no liability limitation for the Debtors, its Insiders, and affiliates for their actions or omissions occurring before the Petition Date, *or after the Confirmation Date*, or their actions or omissions after the Petition Date that are not official actions made in good faith, nor shall it release the Debtor from any obligations arising under contracts entered into on a post-petition basis.


## IX.    PLAN FEASIBILITY

The Debtors' Plan is feasible based upon the Debtors ability to achieve the various components of the Plan.  The Debtors' Plan is contingent on the occurrence of certain events, and will not become effective until: 1) an Order is entered confirming the Debtors' Plan and the Order becomes final; 2) the Confirmation Date has occurred; 3) no request for revocation of the Confirmation Order under Bankruptcy Code section 1144 shall have been made, or if made, remain pending; 4) the Creditor Trust shall have been formed and all formation/organizational documents for the trust shall have been properly executed, delivered, and filed as required by this Plan and applicable law; 5) an Independent Manager(s) is selected by agreement between the Debtor and EWB.  All payments to be made under the Plan are dependent on the continued production of oil and gas from the properties in which Sklarco has an interest.  While a number of the wells are in secondary recovery, the wells are anticipated to continue producing long enough to meet the obligations under the Plan.

The Debtors' Projections support the feasibility of the Plan.  In preparing the Projections, the Debtors have used a conservative approach in estimating future revenues.  Actual revenue received is based on a variety of factors, including but not limited to commodity prices and production of the wells.  that  Because payments to creditors, including EWB are tied to the Debtors' revenue, the Debtors will be able to maintain payments to creditors, even when there are significant price fluctuations.  The Plan also prioritized payments to EWB to reduce the loan to a balance that can be refinanced once credit markets recover, which is anticipated to occur in the next two years.  In the alternative, the Plan includes contingencies in the event that the Debtors are unable to refinance the EWB Secured Claim.

The Projections use an average $37-$46 per barrel.  Given that oil prices are currently approximately $61 per barrel based on WTI NYMEX crude, the Debtors are anticipated to meet or exceed projections. The greatest risk to feasibility is the non-payment of JIBs by working interest owners as SEC effectuates a wind down and transition to a new operator.  With limited remedies under the Final Cash Collateral Order, if working interest owners do not pay their JIBs, SEC will continue to experience significant cash shortfalls, and will be unable to meet its obligations and pay expenses as it transitions to a new operator, potentially resulting in the need to shut in wells and significantly reducing revenue to Sklarco and payments to creditors.

## X.     RISK TO CREDITORS

This Disclosure Statement contains statements which look into the future.  There is no way to determine the accuracy of these statements.  The Debtors have attempted to be conservative in its analysis and believes that the Plan as proposed offers the best option for creditors. The primary risk to creditors in that the Debtors will be unable to meet their projections under the Plan, or a sustained downturn in the demand for oil and gas will drive oil prices too low for the Debtors to maintain operations.  The Debtors have attempted to mitigate this risk by tying all payments to revenue actually received, and including the ability to adjust payments to creditors based on significant and sustained drops in the price of oil.  There is a risk from major catastrophic weather events, such as hurricanes, which could result in damage to the wells, and a loss of revenue to Sklarco.

The Projections provide a conservative estimation of the Debtors' anticipated projected revenue, based on historical performance and the efforts undertaken to restructure its operations during the bankruptcy case.  The principal alternative to the Debtors' reorganization under Chapter 11 is a conversion of the case to Chapter 7 of the Bankruptcy Code.  As set forth in Section XI below, liquidation of the Debtors will assure a distribution to unsecured creditors less than that proposed by the Plan.

## XI.     TAX CONSEQUENCE

The Debtors are not providing tax advice to creditors or interest holders.  **U.S. Treasury Regulations require you to be informed that, to the extent this section includes any tax advice, it is not intended or written by the Debtors or their counsel to be used, and cannot be used, for the purpose of avoiding federal tax penalties.**  Each party affected by the Plan should consult its own tax advisor for information as to the tax consequences of Plan confirmation.  Generally, unsecured creditors should have no tax impact as a result of Plan confirmation.  The recovery of each creditor is payment on account of a debt and generally not taxable, unless the creditor wrote off the debt against income in a prior year in which case income may have to be recognized. Interest holders may have very complicated tax effects as a result of Plan confirmation.

## XII.     LIQUIDATION ANALYSIS

The principal alternative to a debtors' reorganization under Chapter 11 is a conversion of the case to Chapter 7 of the Bankruptcy Code.   Chapter 7 is the only alternative for Debtors under the Bankruptcy Code.  Chapter 7 requires the liquidation of the debtors' assets by a Trustee who is appointed by the United States Trustee's office.  In a Chapter 7 case, the Chapter 7 Trustee would take over control of the debtors' assets.  The assets would be liquidated, and the proceeds distributed to creditors in the order of their priorities.

If the Debtors' cases were converted to cases under Chapter 7, EWB would likely seek relief from stay to foreclose on the Debtors' assets.  Even if relief from stay was not granted, and assets were instead liquidated by the Chapter 7 Trustee, no funds would available for unsecured creditors. Because of the recent sustained downturn in the price of oil, and the influx of oil and gas bankruptcies, the oil and gas assets held by Sklarco would likely sell for less than 25% of the current reserve value in a liquidation, significantly less than the EWB Secured Claim.  SEC would similarly receive significantly less for its assets in a liquidation, as its assets are primarily comprised of office equipment and furniture which will have minimal liquidation value.

As a result, as set forth on the Liquidation Analysis attached hereto as Exhibit H (as to Sklarco) and Exhibit I (as to SEC), unsecured creditors of either SEC or Sklarco would receive nothing on account of their claims from the liquidation of assets. The only value to unsecured creditors would be from any Avoidance Actions brought by the Chapter 7 Trustee, the proceeds from which would go first to pay Administrative Expense Claims and Priority Claims, and then to pay unsecured creditors. In contrast, the Plan preserves the full value of the Avoidance Actions for unsecured creditors by assigning such claims to the Creditor Trust and effectuating an orderly wind down, transition, and liquidation of SEC. The Plan further provides for continued payments to creditors from Sklarco's revenue, that would be otherwise unavailable to SEC creditors in a Chapter 7 absent significant costly litigation with a highly speculative outcome. The Debtors' Plan therefore provides a significantly greater recovery for creditors of both Debtors, and the Debtors urge creditors to vote to accept the Plan.

DATED: February 26, 2021

SKLAR EXPLORATION, LLC

By: _/s/ James Katchadurian_
James Katchadurian, Chief Restructuring Officer

SKLARCO, LLC

By: _/s/ James Katchadurian_
James Katchadurian, Chief Restructuring Officer

Kutner Brinen, P.C. ("KB") has acted as legal counsel to the Debtor on bankruptcy matters during the Chapter 11 case. KB has prepared this Disclosure Statement with information provided primarily by the Debtor. The information contained herein has been approved by the Debtor. KB has not made any separate independent investigation as to the veracity or accuracy of the statements contained herein.

Counsel to the Debtor and Debtor- In-Possession:

KUTNER BRINEN, P.C.

By:   _/s/ Keri L. Riley_
Jeffrey S. Brinen
Keri L. Riley
1660 Lincoln St., Suite 1850
Denver, CO 80264
Telephone: (303) 832-2400
Email: jsb@kutnerlaw.com
Email: klr@kutnerlaw.com

34

## EXHIBITS TO DISCLOSURE STATEMENT

Exhibit A:       Asset Analysis

Exhibit B:       Projections

Exhibit C:       Summary of Mechanics' and Materialmens' Liens

Exhibit D:       Contracts to be Assumed by Sklarco

Exhibit E:       Reserved

Exhibit F:       Contracts to be Rejected by Sklarco

Exhibit G:       Contracts to be Rejected by SEC

Exhibit H:       Liquidation Analysis for Sklarco

Exhibit I:       Liquidation Analysis for SEC

Exhibit A

*Exhibit A*

*SEC Assets*

*Page 1 of 2*

| SEC Assets | Value as of Petition Date Unless Otherwise Specified |
|---|---|
| East West Bank - Operating (Current Balance) | $ 635,140.75 |
| East West Bank - Revenue (Current Balance) [1] | $ 2,757,183.30 |
| East West Bank - Payroll | $ 4,859.04 |
| East West Bank - Benefits | $ 5,636.29 |
| Note Receivable - Marshall Jones | $ 54,087.50 |
| Accounts Receivables - JIB Obligations | $ 2,513,629.64 |
| Receivable Owed by Sklar Transportation | $ 802,116.00 |
| Hedging Settlements Due as of the Petition Date | $ 173,495.00 |
| Deposit for Plug & Abandonment Obligations in Alabama; held by Acstar Insurance | $ 100,000.00 |
| Electricity Deposit - Alabama Power | $ 500.00 |
| Electricity Deposit - Mississippi Power | $ 8,400.00 |
| Electricity Deposit - Upshur Rural Electric Cooperative | $ 765.00 |
| Electricity Deposit - Cherokee County Electric Cooperative Association | $ 578.00 |
| Deposited Funds for Benny Card for Employee HRAs; heald by Werntz | $ 18,631.12 |
| Prepayment for Subscription - S&P Global Platts | $ 13,694.05 |
| Prepayment for Subscription - S&P Global Platts | $ 4,237.92 |
| Prepaid Deposit held by Omni Hotel & Resort | $ 25,805.00 |
| Workers' Comp Insurance Prepayment - J&H Insurance Service, Inc. | $ 4,662.33 |
| Prepayments for Multiple Policies, Including Crime and Travel - J&H Insurance Services, Inc. | $ 19,411.75 |
| Auto Insurance Prepayment | $ 18,278.84 |
| OEE Well Prepayment - J&H Insurance Services, Inc. | $ 10,158.59 |
| THP Partners II, LP | $ - |
| Hedging Agreements | Unknown |
| Office Furniture | $ 461,206.37 |
| Office Fixtures | $ 173,329.00 |
| Misc. Office Supplies and Computer Hardware | $ 328,857.12 |
| Software Licenses | $ - |
| Vehicles | $ 931,264.22 |
| Sklarexploration.com | $ - |
| Interests in Participation and Unit Operating Agreements as Operator | Unknown |
| **Total** | **$ 9,065,926.83** |
| | |
| [1] Apx. 18% attributed to Sklarco | |

| Sklarco Assets | Current Value |
|---|---|
| Undivided Interest in Oil and Gas Leases; Value based on NSAI Reserve Report as of September 1, 2020 | $ 28,642,000.00 |
| East West Bank Account | $ 131,828.01 |
| Interest in 1908 Brands, Inc. | $ - |
| Interest in 9.7 Conroe Joint Venture - Company is inactive | $ - |
| Interest in Boulders on Fern, LLC | $ - |
| Interest in LTP Opportunity Fund I, LP | $ - |
| Interest in LTP TimberQuest Fund, LP | $ - |
| Interest in Sanus Pharmaceuticals LLC - Company is Inactive | $ - |
| Interest in Trout Creek Ventures, LP | $ - |
| Interest in West Arcadia Pipeline, LLC | $ - |
| Maevlo Production, LP | $ - |
| | $ 28,773,828.01 |

Exhibit B

| Values in 000's ($M) | 3/1/21 | 4/1/21 | 5/1/21 | 6/1/21 | 7/1/21 | 8/1/21 | 9/1/21 | 10/1/21 | 11/1/21 | 12/1/21 |
|---|---|---|---|---|---|---|---|---|---|---|
| **SklarEx** | | | | | | | | | | |
| **Operated Volume** | | | | | | | | | | |
| OIL (BBL) | 65,340 | 63,108 | 65,304 | 63,331 | 64,633 | - | - | - | - | - |
| GAS (MCF) | 283,289 | 270,536 | 275,848 | 263,254 | 268,267 | - | - | - | - | - |
| PLANT PRODUCT (BBL) | 14,441 | 13,848 | 14,176 | 13,576 | 13,882 | - | - | - | - | - |
| *Oil Price - WTI NYMEX; 9/1/20* | *44.88* | *44.88* | *44.88* | *44.88* | *44.88* | *44.88* | *44.88* | *44.88* | *44.88* | *44.88* |
| *Gas Price - HHUB NYMEX; 9/1/20* | *2.96* | *2.96* | *2.96* | *2.96* | *2.96* | *2.96* | *2.96* | *2.96* | *2.96* | *2.96* |
| *Realized Price - Oil ($/Bbl)* | *43.98* | *43.99* | *44.00* | *44.00* | *44.01* | *-* | *-* | *-* | *-* | *-* |
| *Realized Price - Gas ($/Mcf)* | *2.67* | *2.67* | *2.67* | *2.67* | *2.67* | *-* | *-* | *-* | *-* | *-* |
| *Realized Price - NGL ($/Bbl)* | *1.12* | *1.12* | *1.12* | *1.12* | *2.24* | *-* | *-* | *-* | *-* | *-* |
| Operated Oil Revenue | $ 2,874 | $ 2,776 | $ 2,873 | $ 2,787 | $ 2,844 | $ - | $ - | $ - | $ - | $ - |
| Operated Gas Revenue | 756 | 722 | 736 | 703 | 716 | - | - | - | - | - |
| Operated NGL Revenue | 16 | 16 | 16 | 15 | 31 | - | - | - | - | - |
| **Total Operated Revenue** | **3,646** | **3,513** | **3,625** | **3,505** | **3,592** | **-** | **-** | **-** | **-** | **-** |
| Revenue Payable to Others | (3,427) | (3,303) | (3,408) | (3,295) | (3,376) | - | - | - | - | - |
| Severance Tax Payable | (219) | (211) | (218) | (210) | (215) | - | - | - | - | - |
| **Subtotal Revenue Adjustments** | **(3,646)** | **(3,513)** | **(3,625)** | **(3,505)** | **(3,592)** | **-** | **-** | **-** | **-** | **-** |
| **Net Oil & Gas Revenue** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Lease Operated Expenses** | | | | | | | | | | |
| Operating Expenses | (489) | (489) | (489) | (489) | (489) | - | - | - | - | - |
| Expenses Due From Others | 489 | 489 | 489 | 489 | 489 | - | - | - | - | - |
| COPAS Overhead Due From Others | 89 | 89 | 89 | 89 | 89 | - | - | - | - | - |
| **Net LOE** | $ 89 | $ 89 | $ 89 | $ 89 | $ 89 | $ - | $ - | $ - | $ - | $ - |
| **Oil & Gas Operating Income** | $ 89 | $ 89 | $ 89 | $ 89 | $ 89 | $ - | $ - | $ - | $ - | $ - |
| **Gas Plant Revenue** | | | | | | | | | | |
| Throughput (MCF) | 222,499 | 211,135 | 214,094 | 203,193 | 206,074 | - | - | - | - | - |
| *Realized Fee ($/Mcf)* | *0.65* | *0.65* | *0.65* | *0.65* | *0.65* | *-* | *-* | *-* | *-* | *-* |
| Processing Fee Revenue | $ 144 | $ 137 | $ 138 | $ 131 | $ 133 | $ - | $ - | $ - | $ - | $ - |
| **Subtotal Gas Plant Revenue** | $ 144 | $ 137 | $ 138 | $ 131 | $ 133 | $ - | $ - | $ - | $ - | $ - |
| **Gas Plant Expenses** | | | | | | | | | | |
| Operating Expense | (201) | (201) | (201) | (201) | (201) | - | - | - | - | - |
| Administrative Expenses | (17) | (17) | (17) | (17) | (17) | - | - | - | - | - |
| Repairs & Maintenance | (5) | (5) | (5) | (5) | (5) | - | - | - | - | - |
| Expenses Due From Others | 244 | 244 | 244 | 244 | 244 | - | - | - | - | - |
| **Net Gas Plant Expenses** | $ 21 | $ 21 | $ 21 | $ 21 | $ 21 | $ - | $ - | $ - | $ - | $ - |
| **Gas Plant Operating Income** | $ 165 | $ 157 | $ 159 | $ 152 | $ 154 | $ - | $ - | $ - | $ - | $ - |
| **Total Operating Income** | $ 253 | $ 246 | $ 248 | $ 241 | $ 242 | $ - | $ - | $ - | $ - | $ - |
| **G&A, Other** | | | | | | | | | | |
| Interest Expense | - | - | - | - | - | - | - | - | - | - |
| Payroll & Benefits | (126) | (126) | (106) | (63) | (53) | - | - | - | - | - |
| CEO Salary | - | - | - | - | - | - | - | - | - | - |
| Office Lease | (25) | (25) | (8) | (8) | (8) | - | - | - | - | - |
| Office Expenses | (16) | (16) | (13) | (13) | (8) | - | - | - | - | - |
| Software License Fees | (6) | (6) | (6) | (6) | (6) | - | - | - | - | - |
| Winddown Legal Fees | (51) | (51) | (109) | (97) | (85) | - | - | - | - | - |
| **Total G&A** | **(224)** | **(224)** | **(242)** | **(186)** | **(159)** | **-** | **-** | **-** | **-** | **-** |
| **SEC Adjusted Operating Income** | $ 29 | $ 21 | $ 5 | $ 54 | $ 83 | $ - | $ - | $ - | $ - | $ - |

| Values in 000's ($M) | | 3/1/21 | 4/1/21 | 5/1/21 | 6/1/21 | 7/1/21 | 8/1/21 | 9/1/21 | 10/1/21 | 11/1/21 | 12/1/21 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **SklarCo** | | | | | | | | | | | |
| **Net Volume** | | | | | | | | | | | |
| OIL (BBL) | | 12,533 | 12,030 | 12,421 | 12,019 | 12,243 | 12,074 | 11,533 | 11,714 | 11,160 | 11,405 |
| GAS (MCF) | | 34,034 | 32,362 | 32,861 | 31,237 | 31,711 | 31,136 | 29,587 | 30,028 | 28,529 | 28,950 |
| PLANT PRODUCT (BBL) | | 2,517 | 2,403 | 2,450 | 2,337 | 2,380 | 2,344 | 2,234 | 2,273 | 2,165 | 2,202 |
| *Oil Price - WTI NYMEX; 9/1/20* | | *44.88* | *44.88* | *44.88* | *44.88* | *44.88* | *44.88* | *44.88* | *44.88* | *44.88* | *44.88* |
| *Gas Price - HHUB NYMEX; 9/1/20* | | *2.96* | *2.96* | *2.96* | *2.96* | *2.96* | *2.96* | *2.96* | *2.96* | *2.96* | *2.96* |
| *Realized Price - Oil ($/Bbl)* | | *43.43* | *43.44* | *43.47* | *43.49* | *43.49* | *43.50* | *43.50* | *43.52* | *43.54* | *43.54* |
| *Realized Price - Gas ($/Mcf)* | | *2.51* | *2.51* | *2.51* | *2.51* | *2.51* | *2.51* | *2.51* | *2.51* | *2.52* | *2.52* |
| *Realized Price - NGL ($/Bbl)* | | *1.12* | *1.12* | *1.12* | *1.12* | *2.24* | *2.24* | *2.24* | *2.24* | *2.24* | *2.24* |
| **Oil Revenue** | | | | | | | | | | | |
| SklarEx Operated Oil Revenue | $ | 378 | 366 | 381 | 371 | 378 | 373 | 356 | 362 | 345 | 353 |
| Non-Operated Oil Revenue | | 166 | 156 | 159 | 152 | 154 | 152 | 145 | 148 | 141 | 144 |
| Subtotal Oil Revenue | | 544 | 523 | 540 | 523 | 532 | 525 | 502 | 510 | 486 | 497 |
| **Gas Revenue** | | | | | | | | | | | |
| SklarEx Operated Gas Revenue | $ | 76 | 73 | 74 | 70 | 72 | 70 | 67 | 68 | 65 | 66 |
| Non-Operated Gas Revenue | | 9 | 8 | 8 | 8 | 8 | 8 | 7 | 7 | 7 | 7 |
| Subtotal Gas Revenue | | 85 | 81 | 82 | 78 | 80 | 78 | 74 | 75 | 72 | 73 |
| **NGL Revenue** | | | | | | | | | | | |
| SklarEx Operated NGL Revenue | $ | 2 | 2 | 2 | 2 | 4 | 4 | 4 | 4 | 4 | 4 |
| Non-Operated NGL Revenue | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Subtotal NGL Revenue | | 3 | 3 | 3 | 3 | 5 | 5 | 5 | 5 | 5 | 5 |
| **Severance Taxes** | | | | | | | | | | | |
| SklarEx Operated Severance Tax | $ | (40) | (39) | (40) | (39) | (40) | (40) | (38) | (38) | (37) | (37) |
| Non-Operated Severance Tax | | (11) | (10) | (10) | (10) | (10) | (10) | (9) | (9) | (9) | (9) |
| Subtotal NGL Revenue | | (51) | (49) | (51) | (49) | (50) | (49) | (47) | (48) | (46) | (47) |
| **Total Revenue** | $ | 581 | 557 | 575 | 555 | 567 | 559 | 534 | 543 | 517 | 528 |
| **Lease Operated Expenses** | | | | | | | | | | | |
| SklarEx Operated Expenses | | (115) | (115) | (115) | (115) | (115) | (115) | (115) | (115) | (111) | (111) |
| Non-Operated Expenses | | (40) | (37) | (37) | (37) | (37) | (37) | (37) | (37) | (37) | (37) |
| Total LOE Expenses | | (155) | (152) | (152) | (152) | (152) | (152) | (152) | (152) | (148) | (148) |
| **Total Operating Income** | $ | 427 | 406 | 423 | 403 | 416 | 408 | 382 | 391 | 369 | 380 |
| **G&A, Other** | | | | | | | | | | | |
| Hedge Settlement | | 36 | 36 | 36 | 36 | - | - | - | - | - | - |
| Recurring Investment Income | | 51 | 51 | 51 | 51 | 51 | 51 | 51 | 51 | 51 | 51 |
| JUD, SMMS | | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 |
| Interest Expense | | (103) | (99) | (101) | (96) | (97) | (96) | (92) | (94) | (89) | (91) |
| Payroll & Benefits | | - | - | - | - | - | (70) | (70) | (70) | (70) | (70) |
| Independent Mgr | | - | - | - | - | - | (20) | (20) | (20) | (20) | (20) |
| Office Lease | | - | - | - | - | - | (8) | (8) | (8) | (8) | (8) |
| Office Expenses | | - | - | - | - | - | (13) | (8) | (8) | (8) | (8) |
| Software License Fees | | - | - | - | - | - | (6) | (3) | (3) | (3) | (3) |
| Subtotal SKC G&A, Other | | (6) | (2) | (4) | 1 | (36) | (152) | (139) | (141) | (137) | (139) |
| **SKC Adjusted Operating Income** | $ | 421 | 404 | 419 | 404 | 379 | 256 | 243 | 249 | 232 | 241 |
| **SEC + SKC Adjusted Operating Income** | $ | 450 | 425 | 424 | 458 | 463 | 256 | 243 | 249 | 232 | 241 |

| Values in 000's ($M) | 3/1/21 | 4/1/21 | 5/1/21 | 6/1/21 | 7/1/21 | 8/1/21 | 9/1/21 | 10/1/21 | 11/1/21 | 12/1/21 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Calculated Fields** | | | | | | | | | | |
| UCC Trust | 50 | 50 | 50 | 50 | 50 | - | - | - | - | - |
| SEC Cash Reserve | - | - | - | - | - | - | - | - | - | - |
| SKC Cash Reserve | 250 | - | - | - | - | - | - | - | - | - |
| **Total Cash Reserve Funding** | $ 300 | $ 50 | $ 50 | $ 50 | $ 50 | $ - | $ - | $ - | $ - | $ - |
| UCC Trust Reserve Balance | 50 | 100 | 150 | 200 | 250 | 250 | 250 | 250 | 250 | 250 |
| SEC Cash Reserve Balance | - | - | - | - | - | - | - | - | - | - |
| SKC Cash Reserve Balance | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| **Post-Reserve SEC Operating Cash Flow** | $ 29 | $ 21 | $ 5 | $ 54 | $ 83 | $ - | $ - | $ - | $ - | $ - |
| **Post-Reserve SKC Operating Cash Flow** | $ 121 | $ 354 | $ 369 | $ 354 | $ 329 | $ 256 | $ 243 | $ 249 | $ 232 | $ 241 |
| SEC Bank-Dedicated Cash Flow | - | - | - | - | - | - | - | - | - | - |
| SKC Bank-Dedicated Cash Flow | 109 | 318 | 332 | 319 | 296 | 230 | 219 | 224 | 209 | 217 |
| **Total Bank-Dedicated Cash Flow** | $ 109 | $ 318 | $ 332 | $ 319 | $ 296 | $ 230 | $ 219 | $ 224 | $ 209 | $ 217 |
| Beginning Loan Balance | $ 20,172 | $ 20,063 | $ 19,745 | $ 19,413 | $ 19,094 | $ 18,798 | $ 18,568 | $ 18,349 | $ 18,125 | $ 17,916 |
| Repayment | (109) | (318) | (332) | (319) | (296) | (230) | (219) | (224) | (209) | (217) |
| **Ending Loan Balance** | $ 20,063 | $ 19,745 | $ 19,413 | $ 19,094 | $ 18,798 | $ 18,568 | $ 18,349 | $ 18,125 | $ 17,916 | $ 17,699 |
| SEC Unsecured Creditor Fund | 29 | 21 | 5 | 54 | 83 | - | - | - | - | - |
| SKC Contributed Unsecured Creditor Fund | 12 | 35 | 37 | 35 | 33 | 26 | 24 | 25 | 23 | 24 |
| **Total Unsecured Creditor Fund** | $ 41 | $ 57 | $ 42 | $ 90 | $ 116 | $ 26 | $ 24 | $ 25 | $ 23 | $ 24 |
| **Unsec. Creditor Fund Beg. Balance** | $ 41 | $ 97 | $ 139 | $ 229 | $ 116 | $ 142 | $ 166 | $ 25 | $ 48 | $ 72 |
| Unsecured Creditor Fund Payments | - | - | - | (229) | - | - | (166) | - | - | (72) |
| **Unsec. Creditor Fund End. Balance** | $ 41 | $ 97 | $ 139 | $ - | $ 116 | $ 142 | $ - | $ 25 | $ 48 | $ - |
| Total PV of SKC Operating Income | 21,060 | 20,779 | 20,523 | 20,244 | 19,986 | 19,714 | 19,444 | 19,202 | 18,945 | 18,712 |
| Total PV of SKC Adj. Operating Income | 11,579 | 11,237 | 10,914 | 10,569 | 10,240 | 9,933 | 9,746 | 9,573 | 9,390 | 9,225 |
| PV SKC Oper. Income to Loan Bal | 95.3% | 95.0% | 94.6% | 94.3% | 94.1% | 94.2% | 94.4% | 94.4% | 94.6% | 94.6% |
| PV SKC Adj. Oper. Income to Loan Bal | 173.3% | 175.7% | 177.9% | 180.7% | 183.6% | 186.9% | 188.3% | 189.3% | 190.8% | 191.9% |

| Values in 000's ($M) | 1/1/22 | 2/1/22 | 3/1/22 | 4/1/22 | 5/1/22 | 6/1/22 | 7/1/22 | 8/1/22 | 9/1/22 | 10/1/22 | 11/1/22 | 12/1/22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SklarEx** | | | | | | | | | | | | |
| **Operated Volume** | | | | | | | | | | | | |
| OIL (BBL) | - | - | - | - | - | - | - | - | - | - | - | - |
| GAS (MCF) | - | - | - | - | - | - | - | - | - | - | - | - |
| PLANT PRODUCT (BBL) | - | - | - | - | - | - | - | - | - | - | - | - |
| *Oil Price - WTI NYMEX; 9/1/20* | *44.88* | *44.88* | *46.00* | *46.00* | *46.00* | *46.00* | *46.00* | *46.00* | *46.00* | *46.00* | *46.00* | *46.00* |
| *Gas Price - HHUB NYMEX; 9/1/20* | *2.96* | *2.96* | *2.63* | *2.63* | *2.63* | *2.63* | *2.63* | *2.63* | *2.63* | *2.63* | *2.63* | *2.63* |
| *Realized Price - Oil ($/Bbl)* | *-* | *-* | *-* | *-* | *-* | *-* | *-* | *-* | *-* | *-* | *-* | *-* |
| *Realized Price - Gas ($/Mcf)* | *-* | *-* | *-* | *-* | *-* | *-* | *-* | *-* | *-* | *-* | *-* | *-* |
| *Realized Price - NGL ($/Bbl)* | *-* | *-* | *-* | *-* | *-* | *-* | *-* | *-* | *-* | *-* | *-* | *-* |
| Operated Oil Revenue | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Operated Gas Revenue | - | - | - | - | - | - | - | - | - | - | - | - |
| Operated NGL Revenue | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operated Revenue** | - | - | - | - | - | - | - | - | - | - | - | - |
| Revenue Payable to Others | - | - | - | - | - | - | - | - | - | - | - | - |
| Severance Tax Payable | - | - | - | - | - | - | - | - | - | - | - | - |
| **Subtotal Revenue Adjustments** | - | - | - | - | - | - | - | - | - | - | - | - |
| **Net Oil & Gas Revenue** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| **Lease Operated Expenses** | | | | | | | | | | | | |
| Operating Expenses | - | - | - | - | - | - | - | - | - | - | - | - |
| Expenses Due From Others | - | - | - | - | - | - | - | - | - | - | - | - |
| COPAS Overhead Due From Others | - | - | - | - | - | - | - | - | - | - | - | - |
| **Net LOE** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| **Oil & Gas Operating Income** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| **Gas Plant Revenue** | | | | | | | | | | | | |
| Throughput (MCF) | - | - | - | - | - | - | - | - | - | - | - | - |
| *Realized Fee ($/Mcf)* | *-* | *-* | *-* | *-* | *-* | *-* | *-* | *-* | *-* | *-* | *-* | *-* |
| Processing Fee Revenue | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| **Subtotal Gas Plant Revenue** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| **Gas Plant Expenses** | | | | | | | | | | | | |
| Operating Expense | - | - | - | - | - | - | - | - | - | - | - | - |
| Administrative Expenses | - | - | - | - | - | - | - | - | - | - | - | - |
| Repairs & Maintenance | - | - | - | - | - | - | - | - | - | - | - | - |
| Expenses Due From Others | - | - | - | - | - | - | - | - | - | - | - | - |
| **Net Gas Plant Expenses** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| **Gas Plant Operating Income** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| **Total Operating Income** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| **G&A, Other** | | | | | | | | | | | | |
| Interest Expense | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll & Benefits | - | - | - | - | - | - | - | - | - | - | - | - |
| CEO Salary | - | - | - | - | - | - | - | - | - | - | - | - |
| Office Lease | - | - | - | - | - | - | - | - | - | - | - | - |
| Office Expenses | - | - | - | - | - | - | - | - | - | - | - | - |
| Software License Fees | - | - | - | - | - | - | - | - | - | - | - | - |
| Winddown Legal Fees | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total G&A** | - | - | - | - | - | - | - | - | - | - | - | - |
| **SEC Adjusted Operating Income** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |

| Values in 000's ($M) | 1/1/22 | 2/1/22 | 3/1/22 | 4/1/22 | 5/1/22 | 6/1/22 | 7/1/22 | 8/1/22 | 9/1/22 | 10/1/22 | 11/1/22 | 12/1/22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SklarCo** | | | | | | | | | | | | |
| **Net Volume** | | | | | | | | | | | | |
| OIL (BBL) | 11,284 | 10,087 | 11,009 | 10,654 | 11,046 | 10,676 | 11,036 | 11,008 | 10,672 | 11,003 | 10,725 | 10,537 |
| GAS (MCF) | 28,370 | 25,097 | 27,212 | 25,920 | 26,429 | 25,235 | 25,747 | 25,420 | 24,208 | 24,536 | 23,437 | 23,473 |
| PLANT PRODUCT (BBL) | 2,161 | 1,912 | 2,074 | 1,981 | 2,028 | 1,944 | 1,991 | 1,974 | 1,884 | 1,910 | 1,831 | 1,824 |
| *Oil Price - WTI NYMEX; 9/1/20* | 46.00 | 46.00 | 46.00 | 46.00 | 46.00 | 46.00 | 46.00 | 46.00 | 46.00 | 46.00 | 46.00 | 46.00 |
| *Gas Price - HHUB NYMEX; 9/1/20* | 2.63 | 2.63 | 2.63 | 2.63 | 2.63 | 2.63 | 2.63 | 2.63 | 2.63 | 2.63 | 2.63 | 2.63 |
| *Realized Price - Oil ($/Bbl)* | 44.67 | 44.67 | 44.69 | 44.69 | 44.70 | 44.71 | 44.71 | 44.72 | 44.72 | 44.73 | 44.74 | 44.71 |
| *Realized Price - Gas ($/Mcf)* | 2.18 | 2.18 | 2.19 | 2.19 | 2.19 | 2.19 | 2.19 | 2.19 | 2.20 | 2.20 | 2.20 | 2.20 |
| *Realized Price - NGL ($/bbl)* | 2.30 | 2.30 | 2.30 | 2.30 | 2.30 | 2.30 | 2.30 | 2.30 | 2.30 | 2.30 | 2.30 | 2.30 |
| **Oil Revenue** | | | | | | | | | | | | |
| SklarEx Operated Oil Revenue | $ 358 | $ 321 | $ 350 | $ 341 | $ 355 | $ 345 | $ 359 | $ 359 | $ 350 | $ 363 | $ 356 | $ 345 |
| Non-Operated Oil Revenue | 146 | 130 | 142 | 136 | 138 | 132 | 135 | 133 | 127 | 130 | 124 | 126 |
| **Subtotal Oil Revenue** | **504** | **451** | **492** | **476** | **494** | **477** | **493** | **492** | **477** | **492** | **480** | **471** |
| **Gas Revenue** | | | | | | | | | | | | |
| SklarEx Operated Gas Revenue | $ 56 | $ 50 | $ 54 | $ 52 | $ 53 | $ 51 | $ 52 | $ 51 | $ 49 | $ 49 | $ 47 | $ 47 |
| Non-Operated Gas Revenue | 6 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 4 | 4 | 4 | 4 |
| **Subtotal Gas Revenue** | **62** | **55** | **59** | **57** | **58** | **55** | **56** | **56** | **53** | **54** | **52** | **52** |
| **NGL Revenue** | | | | | | | | | | | | |
| SklarEx Operated NGL Revenue | $ 4 | $ 4 | $ 4 | $ 4 | $ 4 | $ 4 | $ 4 | $ 4 | $ 4 | $ 4 | $ 3 | $ 3 |
| Non-Operated NGL Revenue | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| **Subtotal NGL Revenue** | **5** | **4** | **5** | **5** | **5** | **4** | **5** | **5** | **4** | **4** | **4** | **4** |
| **Severance Taxes** | | | | | | | | | | | | |
| SklarEx Operated Severance Tax | $ (37) | $ (33) | $ (36) | $ (35) | $ (36) | $ (35) | $ (37) | $ (37) | $ (36) | $ (37) | $ (36) | $ (35) |
| Non-Operated Severance Tax | (9) | (8) | (9) | (8) | (9) | (8) | (8) | (8) | (8) | (8) | (8) | (8) |
| **Subtotal NGL Revenue** | **(46)** | **(41)** | **(45)** | **(43)** | **(45)** | **(44)** | **(45)** | **(45)** | **(43)** | **(45)** | **(44)** | **(43)** |
| **Total Revenue** | **$ 525** | **$ 469** | **$ 511** | **$ 494** | **$ 511** | **$ 494** | **$ 510** | **$ 508** | **$ 491** | **$ 506** | **$ 492** | **$ 484** |
| **Lease Operated Expenses** | | | | | | | | | | | | |
| SklarEx Operated Expenses | (82) | (82) | (79) | (79) | (79) | (79) | (73) | (70) | (70) | (70) | (70) | (70) |
| Non-Operated Expenses | (37) | (37) | (37) | (37) | (37) | (37) | (37) | (37) | (37) | (37) | (37) | (37) |
| **Total LOE Expenses** | **(119)** | **(119)** | **(116)** | **(116)** | **(116)** | **(116)** | **(110)** | **(107)** | **(107)** | **(107)** | **(107)** | **(107)** |
| **Total Operating Income** | **$ 406** | **$ 349** | **$ 395** | **$ 378** | **$ 395** | **$ 378** | **$ 400** | **$ 401** | **$ 385** | **$ 399** | **$ 385** | **$ 377** |
| **G&A, Other** | | | | | | | | | | | | |
| Hedge Settlement | - | - | - | - | - | - | - | - | - | - | - | - |
| Recurring Investment Income | 51 | 51 | 51 | 51 | 51 | 51 | 51 | 51 | 51 | 51 | 51 | 51 |
| JUD, SMMS | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 |
| Interest Expense | (90) | (80) | (88) | (84) | (86) | (82) | (83) | (82) | (78) | (80) | (76) | (77) |
| Payroll & Benefits | (70) | (70) | (70) | (70) | (70) | (70) | (70) | (70) | (70) | (70) | (70) | (70) |
| Independent Mgr | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) |
| Office Lease | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) |
| Office Expenses | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) |
| Software License Fees | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) |
| Subtotal SKC G&A, Other | (138) | (128) | (136) | (132) | (133) | (130) | (131) | (130) | (126) | (127) | (124) | (125) |
| **SKC Adjusted Operating Income** | **$ 268** | **$ 221** | **$ 259** | **$ 246** | **$ 262** | **$ 248** | **$ 269** | **$ 271** | **$ 259** | **$ 272** | **$ 262** | **$ 252** |
| **SEC + SKC Adjusted Operating Income** | **$ 268** | **$ 221** | **$ 259** | **$ 246** | **$ 262** | **$ 248** | **$ 269** | **$ 271** | **$ 259** | **$ 272** | **$ 262** | **$ 252** |

| Values in 000's ($M) | 1/1/22 | 2/1/22 | 3/1/22 | 4/1/22 | 5/1/22 | 6/1/22 | 7/1/22 | 8/1/22 | 9/1/22 | 10/1/22 | 11/1/22 | 12/1/22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Calculated Fields** | | | | | | | | | | | | |
| UCC Trust | - | - | - | - | - | - | - | - | - | - | - | - |
| SEC Cash Reserve | - | - | - | - | - | - | - | - | - | - | - | - |
| SKC Cash Reserve | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Cash Reserve Funding** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| UCC Trust Reserve Balance | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| SEC Cash Reserve Balance | - | - | - | - | - | - | - | - | - | - | - | - |
| SKC Cash Reserve Balance | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| **Post-Reserve SEC Operating Cash Flow** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Post-Reserve SKC Operating Cash Flow** | $ 268 | $ 221 | $ 259 | $ 246 | $ 262 | $ 248 | $ 269 | $ 271 | $ 259 | $ 272 | $ 262 | $ 252 |
| SEC Bank-Dedicated Cash Flow | - | - | - | - | - | - | - | - | - | - | - | - |
| SKC Bank-Dedicated Cash Flow | 241 | 199 | 234 | 222 | 236 | 223 | 242 | 244 | 233 | 244 | 235 | 227 |
| **Total Bank-Dedicated Cash Flow** | $ 241 | $ 199 | $ 234 | $ 222 | $ 236 | $ 223 | $ 242 | $ 244 | $ 233 | $ 244 | $ 235 | $ 227 |
| **Beginning Loan Balance** | $ 17,699 | $ 17,458 | $ 17,259 | $ 17,026 | $ 16,804 | $ 16,568 | $ 16,345 | $ 16,103 | $ 15,859 | $ 15,627 | $ 15,382 | $ 15,147 |
| Repayment | (241) | (199) | (234) | (222) | (236) | (223) | (242) | (244) | (233) | (244) | (235) | (227) |
| **Ending Loan Balance** | $ 17,458 | $ 17,259 | $ 17,026 | $ 16,804 | $ 16,568 | $ 16,345 | $ 16,103 | $ 15,859 | $ 15,627 | $ 15,382 | $ 15,147 | $ 14,920 |
| SEC Unsecured Creditor Fund | - | - | - | - | - | - | - | - | - | - | - | - |
| SKC Contributed Unsecured Creditor Fund | 27 | 22 | 26 | 25 | 26 | 25 | 27 | 27 | 26 | 27 | 26 | 25 |
| **Total Unsecured Creditor Fund** | $ 27 | $ 22 | $ 26 | $ 25 | $ 26 | $ 25 | $ 27 | $ 27 | $ 26 | $ 27 | $ 26 | $ 25 |
| **Unsec. Creditor Fund Beg. Balance** | $ 27 | $ 49 | $ 75 | $ 25 | $ 51 | $ 76 | $ 27 | $ 54 | $ 80 | $ 27 | $ 53 | $ 79 |
| Unsecured Creditor Fund Payments | - | - | (75) | - | - | (76) | - | - | (80) | - | - | (79) |
| **Unsec. Creditor Fund End. Balance** | $ 27 | $ 49 | $ 75 | $ - | $ 25 | $ 51 | $ - | $ 27 | $ 54 | $ - | $ 27 | $ 53 | $ - |
| Total PV of SKC Operating Income | 18,467 | 18,181 | 17,963 | 17,692 | 17,442 | 17,168 | 16,913 | 16,635 | 16,349 | 16,082 | 15,794 | 15,522 |
| Total PV of SKC Adj. Operating Income | 9,050 | 8,841 | 8,683 | 8,483 | 8,298 | 8,093 | 7,903 | 7,690 | 7,472 | 7,266 | 7,044 | 6,832 |
| PV SKC Oper. Income to Loan Bal | 94.5% | 94.9% | 94.8% | 95.0% | 95.0% | 95.2% | 95.2% | 95.3% | 95.6% | 95.6% | 95.9% | 96.1% |
| PV SKC Adj. Oper. Income to Loan Bal | 192.9% | 195.2% | 196.1% | 198.1% | 199.7% | 202.0% | 203.8% | 206.2% | 209.1% | 211.7% | 215.0% | 218.4% |

| Values in 000's ($M) | 1/1/23 | 2/1/23 | 3/1/23 | 4/1/23 | 5/1/23 | 6/1/23 | 7/1/23 | 8/1/23 | 9/1/23 | 10/1/23 | 11/1/23 | 12/1/23 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SklarEx** | | | | | | | | | | | | |
| **Operated Volume** | | | | | | | | | | | | |
| OIL (BBL) | - | - | - | - | - | - | - | - | - | - | - | - |
| GAS (MCF) | - | - | - | - | - | - | - | - | - | - | - | - |
| PLANT PRODUCT (BBL) | - | - | - | - | - | - | - | - | - | - | - | - |
| *Oil Price - WTI NYMEX; 9/1/20* | 46.00 | 46.00 | 46.94 | 46.94 | 46.94 | 46.94 | 46.94 | 46.94 | 46.94 | 46.94 | 46.94 | 46.94 |
| *Gas Price - HHUB NYMEX; 9/1/20* | 2.63 | 2.63 | 2.49 | 2.49 | 2.49 | 2.49 | 2.49 | 2.49 | 2.49 | 2.49 | 2.49 | 2.49 |
| *Realized Price - Oil ($/Bbl)* | - | - | - | - | - | - | - | - | - | - | - | - |
| *Realized Price - Gas ($/Mcf)* | - | - | - | - | - | - | - | - | - | - | - | - |
| *Realized Price - NGL ($/Bbl)* | - | - | - | - | - | - | - | - | - | - | - | - |
| Operated Oil Revenue | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Operated Gas Revenue | - | - | - | - | - | - | - | - | - | - | - | - |
| Operated NGL Revenue | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operated Revenue** | - | - | - | - | - | - | - | - | - | - | - | - |
| Revenue Payable to Others | - | - | - | - | - | - | - | - | - | - | - | - |
| Severance Tax Payable | - | - | - | - | - | - | - | - | - | - | - | - |
| **Subtotal Revenue Adjustments** | - | - | - | - | - | - | - | - | - | - | - | - |
| **Net Oil & Gas Revenue** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| **Lease Operated Expenses** | | | | | | | | | | | | |
| Operating Expenses | - | - | - | - | - | - | - | - | - | - | - | - |
| Expenses Due From Others | - | - | - | - | - | - | - | - | - | - | - | - |
| COPAS Overhead Due From Others | - | - | - | - | - | - | - | - | - | - | - | - |
| **Net LOE** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| **Oil & Gas Operating Income** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| **Gas Plant Revenue** | | | | | | | | | | | | |
| Throughput (MCF) | - | - | - | - | - | - | - | - | - | - | - | - |
| *Realized Fee ($/Mcf)* | - | - | - | - | - | - | - | - | - | - | - | - |
| Processing Fee Revenue | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| **Subtotal Gas Plant Revenue** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| **Gas Plant Expenses** | | | | | | | | | | | | |
| Operating Expense | - | - | - | - | - | - | - | - | - | - | - | - |
| Administrative Expenses | - | - | - | - | - | - | - | - | - | - | - | - |
| Repairs & Maintenance | - | - | - | - | - | - | - | - | - | - | - | - |
| Expenses Due From Others | - | - | - | - | - | - | - | - | - | - | - | - |
| **Net Gas Plant Expenses** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| **Gas Plant Operating Income** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| **Total Operating Income** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| **G&A, Other** | | | | | | | | | | | | |
| Interest Expense | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll & Benefits | - | - | - | - | - | - | - | - | - | - | - | - |
| CEO Salary | - | - | - | - | - | - | - | - | - | - | - | - |
| Office Lease | - | - | - | - | - | - | - | - | - | - | - | - |
| Office Expenses | - | - | - | - | - | - | - | - | - | - | - | - |
| Software License Fees | - | - | - | - | - | - | - | - | - | - | - | - |
| Winddown Legal Fees | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total G&A** | - | - | - | - | - | - | - | - | - | - | - | - |
| **SEC Adjusted Operating Income** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |

| Values in 000's ($M) | | 1/1/23 | 2/1/23 | 3/1/23 | 4/1/23 | 5/1/23 | 6/1/23 | 7/1/23 | 8/1/23 | 9/1/23 | 10/1/23 | 11/1/23 | 12/1/23 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SklarCo** | | | | | | | | | | | | | |
| **Net Volume** | | | | | | | | | | | | | |
| OIL (BBL) | | 10,380 | 9,252 | 10,065 | 9,551 | 9,738 | 9,299 | 9,482 | 9,355 | 8,934 | 9,112 | 8,703 | 8,858 |
| GAS (MCF) | | 22,840 | 20,100 | 21,696 | 20,450 | 20,594 | 19,419 | 19,565 | 19,069 | 17,995 | 18,142 | 17,128 | 17,277 |
| PLANT PRODUCT (BBL) | | 1,768 | 1,551 | 1,669 | 1,567 | 1,573 | 1,478 | 1,484 | 1,441 | 1,355 | 1,362 | 1,281 | 1,288 |
| *Oil Price - WTI NYMEX; 9/1/20* | | *46.94* | *46.94* | *46.94* | *46.94* | *46.94* | *46.94* | *46.94* | *46.94* | *46.94* | *46.94* | *46.94* | *46.94* |
| *Gas Price - HHUB NYMEX; 9/1/20* | | *2.49* | *2.49* | *2.49* | *2.49* | *2.49* | *2.49* | *2.49* | *2.49* | *2.49* | *2.49* | *2.49* | *2.49* |
| *Realized Price - Oil ($/Bbl)* | | *45.66* | *45.66* | *45.67* | *45.69* | *45.69* | *45.70* | *45.70* | *45.70* | *45.70* | *45.70* | *45.70* | *45.71* |
| *Realized Price - Gas ($/Mcf)* | | *2.06* | *2.06* | *2.06* | *2.05* | *2.05* | *2.05* | *2.05* | *2.05* | *2.05* | *2.05* | *2.05* | *2.05* |
| *Realized Price - NGL ($/Bbl)* | | *2.35* | *2.35* | *2.35* | *2.35* | *2.35* | *2.35* | *2.35* | *2.35* | *2.35* | *2.35* | *2.35* | *2.35* |
| **Oil Revenue** | | | | | | | | | | | | | |
| SklarEx Operated Oil Revenue | $ | 346 | $ 309 | $ 335 | $ 318 | $ 324 | $ 309 | $ 315 | $ 311 | $ 296 | $ 302 | $ 289 | $ 294 |
| Non-Operated Oil Revenue | | 127 | 114 | 124 | 119 | 121 | 116 | 118 | 117 | 112 | 114 | 109 | 111 |
| **Subtotal Oil Revenue** | | **474** | **422** | **460** | **436** | **445** | **425** | **433** | **428** | **408** | **416** | **398** | **405** |
| **Gas Revenue** | | | | | | | | | | | | | |
| SklarEx Operated Gas Revenue | $ | 43 | $ 38 | $ 41 | $ 39 | $ 39 | $ 37 | $ 37 | $ 36 | $ 34 | $ 34 | $ 32 | $ 33 |
| Non-Operated Gas Revenue | | 4 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 |
| **Subtotal Gas Revenue** | | **47** | **41** | **45** | **42** | **42** | **40** | **40** | **39** | **37** | **37** | **35** | **35** |
| **NGL Revenue** | | | | | | | | | | | | | |
| SklarEx Operated NGL Revenue | $ | 3 | $ 3 | $ 3 | $ 3 | $ 3 | $ 3 | $ 3 | $ 3 | $ 3 | $ 3 | $ 2 | $ 2 |
| Non-Operated NGL Revenue | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| **Subtotal NGL Revenue** | | **4** | **4** | **4** | **4** | **4** | **3** | **3** | **3** | **3** | **3** | **3** | **3** |
| **Severance Taxes** | | | | | | | | | | | | | |
| SklarEx Operated Severance Tax | $ | (35) | $ (31) | $ (33) | $ (32) | $ (32) | $ (31) | $ (31) | $ (31) | $ (29) | $ (30) | $ (28) | $ (29) |
| Non-Operated Severance Tax | | (8) | (7) | (8) | (7) | (8) | (7) | (7) | (7) | (7) | (7) | (7) | (7) |
| **Subtotal NGL Revenue** | | **(43)** | **(38)** | **(41)** | **(39)** | **(40)** | **(38)** | **(39)** | **(38)** | **(36)** | **(37)** | **(35)** | **(36)** |
| **Total Revenue** | $ | **482** | $ **430** | $ **467** | $ **443** | $ **451** | $ **430** | $ **438** | $ **432** | $ **412** | $ **420** | $ **401** | $ **408** |
| **Lease Operated Expenses** | | | | | | | | | | | | | |
| SklarEx Operated Expenses | | (70) | (70) | (70) | (67) | (67) | (67) | (67) | (67) | (67) | (67) | (67) | (67) |
| Non-Operated Expenses | | (37) | (37) | (37) | (37) | (37) | (37) | (37) | (37) | (37) | (37) | (37) | (37) |
| **Total LOE Expenses** | | **(107)** | **(107)** | **(107)** | **(104)** | **(104)** | **(104)** | **(104)** | **(104)** | **(104)** | **(104)** | **(104)** | **(104)** |
| **Total Operating Income** | $ | **376** | $ **323** | $ **360** | $ **339** | $ **347** | $ **327** | $ **335** | $ **328** | $ **308** | $ **316** | $ **297** | $ **304** |
| **G&A, Other** | | | | | | | | | | | | | |
| Hedge Settlement | | - | - | - | - | - | - | - | - | - | - | - | - |
| Recurring Investment Income | | 51 | 51 | 51 | 51 | 51 | 51 | 51 | 51 | 51 | 51 | 51 | 51 |
| JUD, SMMS | | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 |
| Interest Expense | | (76) | (68) | (74) | (70) | (72) | (68) | (70) | (69) | (66) | (67) | (64) | (65) |
| Payroll & Benefits | | (70) | (70) | (70) | (70) | (70) | (70) | (70) | (70) | (70) | (70) | (70) | (70) |
| Independent Mgr | | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) |
| Office Lease | | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) |
| Office Expenses | | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) |
| Software License Fees | | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) |
| **Subtotal SKC G&A, Other** | | **(124)** | **(115)** | **(122)** | **(118)** | **(120)** | **(116)** | **(118)** | **(117)** | **(113)** | **(115)** | **(112)** | **(113)** |
| **SKC Adjusted Operating Income** | $ | **252** | $ **207** | $ **239** | $ **221** | $ **228** | $ **210** | $ **217** | $ **212** | $ **195** | $ **201** | $ **185** | $ **191** |
| **SEC + SKC Adjusted Operating Income** | $ | **252** | $ **207** | $ **239** | $ **221** | $ **228** | $ **210** | $ **217** | $ **212** | $ **195** | $ **201** | $ **185** | $ **191** |

| Values in 000's ($M) | 1/1/23 | 2/1/23 | 3/1/23 | 4/1/23 | 5/1/23 | 6/1/23 | 7/1/23 | 8/1/23 | 9/1/23 | 10/1/23 | 11/1/23 | 12/1/23 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Calculated Fields** | | | | | | | | | | | | |
| UCC Trust | - | - | - | - | - | - | - | - | - | - | - | - |
| SEC Cash Reserve | - | - | - | - | - | - | - | - | - | - | - | - |
| SKC Cash Reserve | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Cash Reserve Funding** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| UCC Trust Reserve Balance | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| SEC Cash Reserve Balance | - | - | - | - | - | - | - | - | - | - | - | - |
| SKC Cash Reserve Balance | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| **Post-Reserve SEC Operating Cash Flow** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Post-Reserve SKC Operating Cash Flow** | $ 252 | $ 207 | $ 239 | $ 221 | $ 228 | $ 210 | $ 217 | $ 212 | $ 195 | $ 201 | $ 185 | $ 191 |
| SEC Bank-Dedicated Cash Flow | - | - | - | - | - | - | - | - | - | - | - | - |
| SKC Bank-Dedicated Cash Flow | 227 | 187 | 215 | 199 | 205 | 189 | 195 | 191 | 176 | 181 | 167 | 172 |
| **Total Bank-Dedicated Cash Flow** | $ 227 | $ 187 | $ 215 | $ 199 | $ 205 | $ 189 | $ 195 | $ 191 | $ 176 | $ 181 | $ 167 | $ 172 |
| **Beginning Loan Balance** | $ 14,920 | $ 14,693 | $ 14,506 | $ 14,291 | $ 14,092 | $ 13,887 | $ 13,698 | $ 13,503 | $ 13,312 | $ 13,137 | $ 12,955 | $ 12,789 |
| Repayment | (227) | (187) | (215) | (199) | (205) | (189) | (195) | (191) | (176) | (181) | (167) | (172) |
| **Ending Loan Balance** | $ 14,693 | $ 14,506 | $ 14,291 | $ 14,092 | $ 13,887 | $ 13,698 | $ 13,503 | $ 13,312 | $ 13,137 | $ 12,955 | $ 12,789 | $ 12,617 |
| SEC Unsecured Creditor Fund | - | - | - | - | - | - | - | - | - | - | - | - |
| SKC Contributed Unsecured Creditor Fund | 25 | 21 | 24 | 22 | 23 | 21 | 22 | 21 | 20 | 20 | 19 | 19 |
| **Total Unsecured Creditor Fund** | $ 25 | $ 21 | $ 24 | $ 22 | $ 23 | $ 21 | $ 22 | $ 21 | $ 20 | $ 20 | $ 19 | $ 19 |
| **Unsec. Creditor Fund Beg. Balance** | $ 25 | $ 46 | $ 70 | $ 22 | $ 45 | $ 66 | $ 22 | $ 43 | $ 62 | $ 20 | $ 39 | $ 58 |
| Unsecured Creditor Fund Payments | - | - | (70) | - | - | (66) | - | - | (62) | - | - | (58) |
| **Unsec. Creditor Fund End. Balance** | $ 25 | $ 46 | $ - | $ 22 | $ 45 | $ - | $ 22 | $ 43 | $ - | $ 20 | $ 39 | $ - |
| Total PV of SKC Operating Income | 15,256 | 14,979 | 14,764 | 14,506 | 14,270 | 14,022 | 13,796 | 13,560 | 13,326 | 13,113 | 12,888 | 12,683 |
| Total PV of SKC Adj. Operating Income | 6,628 | 6,418 | 6,257 | 6,061 | 5,883 | 5,695 | 5,525 | 5,347 | 5,172 | 5,013 | 4,846 | 4,695 |
| PV SKC Oper. Income to Loan Bal | 96.3% | 96.8% | 96.8% | 97.2% | 97.3% | 97.7% | 97.9% | 98.2% | 98.6% | 98.8% | 99.2% | 99.5% |
| PV SKC Adj. Oper. Income to Loan Bal | 221.7% | 226.0% | 228.4% | 232.5% | 236.1% | 240.5% | 244.4% | 249.0% | 254.0% | 258.4% | 263.9% | 268.7% |

| Values in 000's ($M) | 2021 | 2022 | 2023 |
|---|---|---|---|
| **SklarEx** | | | |
| **Operated Volume** | | | |
| OIL (BBL) | 321,716 | - | - |
| GAS (MCF) | 1,361,195 | - | - |
| PLANT PRODUCT (BBL) | 69,923 | - | - |
| *Oil Price - WTI NYMEX; 9/1/20* | *37.40* | *45.81* | *46.78* |
| *Gas Price - HHUB NYMEX; 9/1/20* | *2.47* | *2.68* | *2.51* |
| *Realized Price - Oil ($/Bbl)* | *43.99* | *-* | *-* |
| *Realized Price - Gas ($/Mcf)* | *2.67* | *-* | *-* |
| *Realized Price - NGL ($/Bbl)* | *1.34* | *-* | *-* |
| Operated Oil Revenue | $ 14,154 | $ - | $ - |
| Operated Gas Revenue | 3,633 | - | - |
| Operated NGL Revenue | 94 | - | - |
| **Total Operated Revenue** | **17,881** | **-** | **-** |
| Revenue Payable to Others | (16,808) | - | - |
| Severance Tax Payable | (1,073) | - | - |
| **Subtotal Revenue Adjustments** | **(17,881)** | **-** | **-** |
| **Net Oil & Gas Revenue** | **$ -** | **$ -** | **$ -** |
| **Lease Operated Expenses** | | | |
| Operating Expenses | (2,446) | - | - |
| Expenses Due From Others | 2,446 | - | - |
| COPAS Overhead Due From Others | 443 | - | - |
| **Net LOE** | **$ 443** | **$ -** | **$ -** |
| **Oil & Gas Operating Income** | **$ 443** | **$ -** | **$ -** |
| **Gas Plant Revenue** | | | |
| Throughput (MCF) | 1,056,996 | - | - |
| *Realized Fee ($/Mcf)* | *0.65* | *-* | *-* |
| Processing Fee Revenue | $ 684 | $ - | $ - |
| **Subtotal Gas Plant Revenue** | **$ 684** | **$ -** | **$ -** |
| **Gas Plant Expenses** | | | |
| Operating Expense | (1,007) | - | - |
| Administrative Expenses | (83) | - | - |
| Repairs & Maintenance | (26) | - | - |
| Expenses Due From Others | 1,218 | - | - |
| **Net Gas Plant Expenses** | **$ 103** | **$ -** | **$ -** |
| **Gas Plant Operating Income** | **$ 787** | **$ -** | **$ -** |
| **Total Operating Income** | **$ 1,229** | **$ -** | **$ -** |
| **G&A_Other** | | | |
| Interest Expense | - | - | - |
| Payroll & Benefits | (474) | - | - |
| CEO Salary | - | - | - |
| Office Lease | (73) | - | - |
| Office Expenses | (66) | - | - |
| Software License Fees | (30) | - | - |
| Winddown Legal Fees | (393) | - | - |
| **Total G&A** | **(1,037)** | **-** | **-** |
| **SEC Adjusted Operating Income** | **$ 193** | **$ -** | **$ -** |

| Values in 000's ($M) | 2021 | 2022 | 2023 |
|---|---|---|---|

## SklarCo

| **Net Volume** | | | |
|---|---|---|---|
| OIL (BBL) | 119,132 | 129,738 | 112,729 |
| GAS (MCF) | 310,436 | 305,083 | 234,274 |
| PLANT PRODUCT (BBL) | 23,306 | 23,514 | 17,816 |
| *Oil Price - WTI NYMEX; 9/1/20* | *37.40* | *46.00* | *46.94* |
| *Gas Price - HHUB NYMEX; 9/1/20* | *2.47* | *2.63* | *2.49* |
| *Realized Price - Oil ($/Bbl)* | *43.49* | *44.71* | *45.69* |
| *Realized Price - Gas ($/Mcf)* | *2.51* | *2.19* | *2.05* |
| *Realized Price - NGL ($/Bbl)* | *1.78* | *2.30* | *2.35* |

| **Oil Revenue** | | | | | | |
|---|---|---|---|---|---|---|
| SklarEx Operated Oil Revenue | $ | 3,663 | $ | 4,202 | $ | 3,747 |
| Non-Operated Oil Revenue | | 1,518 | | 1,598 | | 1,403 |
| **Subtotal Oil Revenue** | | **5,181** | | **5,800** | | **5,150** |

| **Gas Revenue** | | | | | | |
|---|---|---|---|---|---|---|
| SklarEx Operated Gas Revenue | $ | 701 | $ | 612 | $ | 444 |
| Non-Operated Gas Revenue | | 78 | | 57 | | 38 |
| **Subtotal Gas Revenue** | | **780** | | **668** | | **481** |

| **NGL Revenue** | | | | | | |
|---|---|---|---|---|---|---|
| SklarEx Operated NGL Revenue | $ | 33 | $ | 44 | $ | 34 |
| Non-Operated NGL Revenue | | 9 | | 10 | | 8 |
| **Subtotal NGL Revenue** | | **41** | | **54** | | **42** |

| **Severance Taxes** | | | | | | |
|---|---|---|---|---|---|---|
| SklarEx Operated Severance Tax | $ | (389) | $ | (429) | $ | (371) |
| Non-Operated Severance Tax | | (96) | | (100) | | (87) |
| **Subtotal NGL Revenue** | | **(486)** | | **(529)** | | **(458)** |

| **Total Revenue** | $ | **5,517** | $ | **5,994** | $ | **5,215** |
|---|---|---|---|---|---|---|

| **Lease Operated Expenses** | | | | |
|---|---|---|---|---|
| SklarEx Operated Expenses | | (1,141) | (902) | (811) |
| Non-Operated Expenses | | (372) | (443) | (443) |
| **Total LOE Expenses** | | **(1,513)** | **(1,346)** | **(1,254)** |

| **Total Operating Income** | $ | **4,003** | $ | **4,648** | $ | **3,961** |
|---|---|---|---|---|---|---|

| **G&A, Other** | | | |
|---|---|---|---|
| Hedge Settlement | 143 | - | - |
| Recurring Investment Income | 510 | 612 | 612 |
| JUD, SMMS | 100 | 120 | 120 |
| Interest Expense | (957) | (986) | (829) |
| Payroll & Benefits | (349) | (839) | (839) |
| Independent Mgr | (100) | (240) | (240) |
| Office Lease | (40) | (95) | (95) |
| Office Expenses | (45) | (96) | (96) |
| Software License Fees | (18) | (36) | (36) |
| **Subtotal SKC G&A, Other** | **(756)** | **(1,560)** | **(1,403)** |

| **SKC Adjusted Operating Income** | $ | **3,248** | $ | **3,088** | $ | **2,559** |
|---|---|---|---|---|---|---|

| **SEC + SKC Adjusted Operating Income** | $ | **3,440** | $ | **3,088** | $ | **2,559** |
|---|---|---|---|---|---|---|

| Values in 000's ($M) | 2021 | 2022 | 2023 |
|---|---|---|---|
| **Calculated Fields** | | | |
| | | | |
| UCC Trust | 250 | - | - |
| SEC Cash Reserve | - | - | - |
| SKC Cash Reserve | 250 | - | - |
| | | | |
| **Total Cash Reserve Funding** | $ 500 | $ - | $ - |
| UCC Trust Reserve Balance | | | |
| SEC Cash Reserve Balance | | | |
| SKC Cash Reserve Balance | | | |
| | | | |
| **Post-Reserve SEC Operating Cash Flow** | $ 193 | $ - | $ - |
| | | | |
| **Post-Reserve SKC Operating Cash Flow** | $ 2,748 | $ 3,088 | $ 2,559 |
| | | | |
| SEC Bank-Dedicated Cash Flow | - | - | - |
| SKC Bank-Dedicated Cash Flow | 2,473 | 2,780 | 2,303 |
| **Total Bank-Dedicated Cash Flow** | $ 2,473 | $ 2,780 | $ 2,303 |
| | | | |
| **Beginning Loan Balance** | $ - | $ 17,699 | $ 14,920 |
| Repayment | (2,473) | (2,780) | (2,303) |
| **Ending Loan Balance** | $ 17,699 | $ 14,920 | $ 12,617 |
| | | | |
| SEC Unsecured Creditor Fund | 193 | - | - |
| SKC Contributed Unsecured Creditor Fund | 275 | 309 | 256 |
| **Total Unsecured Creditor Fund** | $ 467 | $ 309 | $ 256 |
| | | | |
| Unsec. Creditor Fund Beg. Balance | $ - | $ 27 | $ 25 |
| Unsecured Creditor Fund Payments | (467) | (309) | (256) |
| **Unsec. Creditor Fund End. Balance** | $ - | $ - | $ - |
| | | | |
| | | | |
| Total PV of SKC Operating Income | 18,712 | 15,522 | 12,683 |
| Total PV of SKC Adj. Operating Income | 9,225 | 6,832 | 4,695 |
| | | | |
| PV SKC Oper. Income to Loan Bal | 94.6% | 96.1% | 99.5% |
| PV SKC Adj. Oper. Income to Loan Bal | 191.9% | 218.4% | 268.7% |

Confidential

Exhibit C

*Exhibit C*
*Summary of Mechanics Liens*

| M&M Lien Claimant & Properties | | Sum of Amount |
|---|---|---|
| **Baker Hughes Oilfield Operations, LLC** | **$** | **232,755.82** |
| Cedar Creek Land & Timber 2-9 #1; Cedar Creek Land & Timber 34-14 #1 | $ | 15,851.46 |
| Cedar Creek Land & Timber 2-9#1 | $ | 6,067.48 |
| Cedar Creek Land & Timber 34-14 #1 | $ | 9,783.98 |
| Corwin 5 #1 | $ | 201,052.90 |
| **Baker Petrolite, LLC** | **$** | **45,542.10** |
| Bates 2-2 #1 | $ | 9,929.80 |
| Cedar Creek Land & Timber 18-13 #1 | $ | 5,700.64 |
| Cedar Creek Land & timber 2-15 # 1 | $ | 1,304.17 |
| Cedar Creek Land & Timber 24-1 #1 Well | $ | 1,341.08 |
| Craft-Hamiter 20-11 #1 | $ | 4,116.78 |
| Fair Oil, Ltd. # 1 Well | $ | 203.47 |
| GC Williams No. 4 Well | $ | 1,054.27 |
| Hilliard Warren Estate No. 1 Well; Sun No. 1R Well; Teledyne No. 1 Well | $ | 406.95 |
| Pitnic 16-3 #1 | $ | 4,060.58 |
| Polk Estate 13-5 #1 | $ | 17,424.36 |
| **Consolidated Electrical Distributors** | **$** | **59,041.29** |
| Bates 2-2 #1 | $ | 26,311.36 |
| Pitnic 16-3 #1 | $ | 32,729.93 |
| **GE Oil & Gas Pressure** | **$** | **49,262.56** |
| Cedar Creek Land & timber 13-11 #1 Well | $ | 2,449.55 |
| Corwin 5 #1 | $ | 26,589.55 |
| Little Cedar Creek Fish Pond Unit | $ | 3,844.29 |
| Little Cedar Creek Oil Unit II | $ | 4,519.22 |
| Little Cedar Creek Oil Unit IV | $ | 4,107.71 |
| Southwest Brooklyn Unit | $ | 7,752.24 |
| **Glasgow Rental, LLC** | **$** | **9,691.60** |
| Corwin 5 #1 | $ | 9,691.60 |
| **KCS Automation, LLC** | **$** | **64,559.50** |
| CCL& T 33-10 Wl Well and Southwest Brooklyn Oil Unit | $ | 533.20 |
| Cedar Creek Land & Timber 10-5 Wl Well and Fishpond Oil Unit | $ | 11,898.80 |
| Cedar Creek Land & Timber 13-11 Wl Well and Producing Unit | $ | 790.00 |

*Exhibit C*
*Summary of Mechanics Liens*

| M&M Lien Claimant & Properties | | Sum of Amount |
|---|---|---|
| Cedar Creek Land & Timber 13-15 Wl ST Well and Producing Unit | $ | 540.00 |
| Cedar Creek Land & Timber 2-11 Wl Well and Southwest Brooklyn Oil Unit | $ | 3,296.00 |
| Cedar Creek Land & Timber 32-9 Wl Wl Well and Southeast Brooklyn Oil Unit | $ | 410.00 |
| Cedar Creek Land & Timber 33 -12 Wl Well and Southwest Brooklyn Oil Unit | $ | 438.20 |
| Cedar Creek Land & Timber 33-6 Wl Well and Southwest Brooklyn Oil Unit | $ | 808.20 |
| Cedar Creek Land & Timber 34-13 Wl WS Well and Southwest Brooklyn Oil Unit | $ | 10,121.60 |
| Cedar Creek Land & Timber 34-14 Wl Wl Well and Southwest Brooklyn Oil Unit | $ | 628.60 |
| Cedar Creek Land & Timber 35-11 Wl Well and Southwest Brooklyn Oil Unit | $ | 2,479.00 |
| Cedar Creek Land & Timber 35-5 Wl Well and Southwest Brooklyn Oil Unit | $ | 3,091.00 |
| Cedar Creek Land & Timber 4-1 Wl Wl Well and Southeast Brooklyn Oil Unit | $ | 9,386.60 |
| Cedar Creek Land & Timber 4-1Wl Wl Well and Southeast Brooklyn Oil Unit | $ | 10,176.60 |
| Cedar Creek Land & Timber 4-2 Wl Well and Southwest Brooklyn Oil Unit | $ | 438.20 |
| Craft -Rails 4-12 Wl Well and Little Cedar Creek Oil Unit II | $ | 1,307.00 |
| Craft-Rails 5-10 Wl Well and Little Cedar Creek Oil Unit II | $ | 2,298.70 |
| Graddy 34-10 Wl Well and Southwest Brooklyn Oil Unit | $ | 3,469.20 |
| Graddy 34-8 Wl Well and Southwest Brooklyn Oil Unit | $ | 548.20 |
| Southwest and Southeast Brooklyn Oil Units | $ | 1,462.20 |
| Thomasson 33-12 Wl Well and Southeast Brooklyn Oil Unit | $ | 438.20 |
| **Kelley Brothers** | **$** | **460,868.05** |
| Bates 2-2 #1 | $ | 35,710.30 |
| Cedar Creek Land & timber 13-11 #1 Well | $ | 7,084.50 |
| Cedar Creek Land & timber 13-15 #1 ST Well | $ | 5,402.00 |
| Cedar Creek Land & Timber 18-13 #1 | $ | 1,464.00 |
| Cedar Creek Land & Timber 2-15 #1 Well | $ | 1,238.00 |
| Cedar Creek Land & Timber 24-1 #1 Well | $ | 5,850.00 |
| Cedar Creek Oil Unit II | $ | 35,445.98 |
| Craft Mack 17-4#1 Wells | $ | 1,757.50 |
| Howard 12-15 No. 1 Well | $ | 220,296.36 |
| Little Cedar Creek Fish Pond Unit | $ | 19,900.17 |
| Little Cedar Creek Oil Unit IV | $ | 45,046.40 |
| Little Creek Oil Unit II | $ | 35,445.98 |
| North Beach Facility | $ | 1,547.00 |
| Pate 3-11 #1 | $ | 3,727.86 |
| Southeast Brooklyn Unit | $ | 14,156.00 |

*Exhibit C*
*Summary of Mechanics Liens*

| M&M Lien Claimant & Properties | Sum of Amount |
|---|---:|
| Southwest Brooklyn Unit | $ 26,796.00 |
| **Liquid Gold Well Services** | **$ 93,582.50** |
| Corwin 5 #1 | $ 93,582.50 |
| **Lufkin Industries, LLC** | **$ 3,727.86** |
| Pate 3-11 #1 | $ 3,727.86 |
| **Mesa Fluids, LLC** | **$ 8,501.82** |
| Corwin 5 #1 | $ 8,501.82 |
| **NexTier Completion Solution, Inc.** | **$ 489,411.78** |
| Cedar Creek Land & timber 10-5 #1 GI | $ 89,097.68 |
| Cedar Creek Land & timber 13-11 #1 Well | $ 57,905.52 |
| Cedar Creek Land & Timber 35-13 #1 | $ 57,206.66 |
| Cedar Creek Land & Timber 35-5 #1 | $ 55,007.59 |
| Craft-Mack 17-4 #1 | $ 48,508.71 |
| Craft-Ralls 5-8 #1 WI | $ 2,929.13 |
| Fleming 30-15 1 - No. 1 | $ 48,595.43 |
| McLeod 30-11 #1 | $ 67,796.00 |
| Thomasson 33-12 #1 | $ 62,365.06 |
| **Pioneer Wireline Services, LLC** | **$ 39,950.15** |
| Corwin 5 #1 | $ 39,950.15 |
| **Premium Oilfiled Services** | **$ 149,450.80** |
| Cedar Creek Land & Timber 10-5 #1 | $ 25,466.92 |
| Cedar Creek Land & Timber 34-14 #1 | $ 15,816.76 |
| Craft Rawls 5-8 #1 | $ 585.73 |
| Craft-Brye 8-4 #1 | $ 64,319.03 |
| Feld Heir #3 | $ 43,262.36 |
| **Pro-tek Field Services, LC** | **$ 220,987.26** |
| Bates 2-2 #1 | $ 18,642.02 |
| Cedar Creek Land & Timber 34-12 #1 | $ 14,370.45 |
| Cedar Creek Land & Timber 35-5 #1 | $ 1,679.54 |
| Pitnic 16-3 #1 | $ 186,295.25 |
| **RAPAD Well Service Company** | **$ 293,605.00** |
| Cedar Creek Land & Timber 10-5 #1 | $ 76,690.00 |
| Cedar Creek Land & Timber 13-11 #1 | $ 13,660.00 |
| Cedar Creek Land & Timber 32-9 #1; Cedar Creek Land & Timber 34-14 #1; Cedar Creek Land & Timber 3-2 | $ 69,475.00 |

*Exhibit C*
*Summary of Mechanics Liens*

| M&M Lien Claimant & Properties | Sum of Amount |
|---|---|
| Cedar Creek Land & Timber 4-1 #1 and Pate 3-11 #1 | $ 22,865.00 |
| Craft Mack 17-4 #1 | $ 18,215.00 |
| Craft Ralls 5-10 #1; Craft Brye 8-4 #1; Craft Ralls #5-8#1 | $ 92,700.00 |
| **Stoneham Drilling** | **$ 1,419,198.94** |
| Corwin 5 #1 | $ 1,419,198.94 |
| **Weatherford U.S. L.P** | **$ 122,490.63** |
| Corwin 5 #1 | $ 122,490.63 |
| **Grand Total** | **$ 3,762,627.66** |

# Exhibit D

## Sklarco L.L.C. - Assumed Contracts - Exhibit D

| Line # | Contract Description | Cure Amount |
|---|---|---|
| 1 | Participation Agreement covering the Escambia Prospect (Escambia and Conecuh Counties, AL), by and between Sklar Exploration Company, as Operator, and Sklarco L.L.C., et al., as Participants, which includes as Exhibit "D" an Operating Agreement (A.A.P.L. Model Form 610-1982) dated November 1, 2006 covering the Escambia Prospect (Escambia and Conecuh Counties, AL), by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators | – |
| 2 | Unit Operating Agreement dated May 11, 2015 concerning operation of the Fishpond Oil Unit, Fishpond Field, Escambia County, AL, by and between Sklar Exploration Company L.L.C., as Unit Operator, and McCombs Energy, Ltd., et al., as Non-Operators | – |
| 3 | Unit Operating Agreement dated November 1, 2018 concerning operation of the Southeast Brooklyn Oil Unit, Brooklyn Field, Conecuh & Escambia Counties, AL, by and between Sklar Exploration Company L.L.C., as Unit Operator, and McCombs Energy, Ltd., et al., as Non-Operators | – |
| 4 | Unit Operating Agreement dated November 1, 2018 concerning operation of the Southwest Brooklyn Oil Unit, Brooklyn Field, Conecuh & Escambia Counties, AL, by and between Sklar Exploration Company L.L.C., as Unit Operator, and McCombs Energy, Ltd., et al., as Non-Operators | – |
| 5 | JOA (AAPL 610-1982) dated August 1, 2015, covering Sections 1 & 2, T13N, R7W, Natchitoches Parish, LA (Rushing Et Al #2), by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators | – |
| 6 | Unit Operating Agreement dated November 1, 2018 concerning operation of the Northwest Brooklyn Oil Unit, Brooklyn Field, Conecuh & Escambia Counties, AL, by and between Pruet Production Co., as Unit Operator, and Sklarco L.L.C., et al., as Non-Operators | – |
| 7 | Amended And Restated Participation Agreement dated effective as of April 8, 2015 covering the Mt. Carmel Prospect, Escambia County, AL and Santa Rosa County, FL, by and between Sklar Exploration Company L.L.C., as Operator, and McCombs Energy, LTD., et al., as Participants, which includes as Exhibit "D" an Operating Agreement (AAPL Form 610-1982) dated April 8, 2015, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators | – |
| 8 | JOA (AAPL 610-1982) dated September 20, 1990, covering Starcke #C-1, 391.50 acre tract, re-surveyed to be 405.07 acres, located in the B. Holmes Survey, A-447, Cass County, TX, by and between Sklar & Phillips Oil Co., Operator and Crain Energy, Inc. et al as Non-Operators | – |
| 9 | Participation Agreement covering the Shipps Creek Prospect (Conecuh & Escambia Counties, AL) dated effective as of June 1, 2012, by and between Sklar Exploration Company, as Operator, and Sklarco L.L.C., et al., as Participants, which includes as Exhibit "F" an Operating Agreement (A.A.P.L. Model Form 610-1982) dated June 1, 2012 covering the Shipps Creek Prospect (Conecuh & Escambia Counties, AL), by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators | – |

DRAFT SUBJECT TO CHANGE

## Sklarco L.L.C. - Assumed Contracts - Exhibit D

| Line # | Contract Description | Cure Amount |
|--------|----------------------|-------------|
| 10 | JOA (AAPL 610-1982) dated July 5, 1989, covering lands in the Southeast Quarter and the West Half of the Southwest Quarter of the Southwest Quarter of Section 25, the Northwest Quarter of the Southwest Quarter lying west of Road of Section 31, and entire Section 36 Township 14 North Range 10 West, Red River Parish, Louisiana, by and between Sklar & Phillips Oil Co., as Operator, and Muslow Oil and Gas, Inc., et al, as Non-Operators | – |
| 11 | Participation Agreement dated effective as of June 30, 2013 covering the Oakhay Creek Prospect, Smith County, Mississippi, by and between Sklar Exploration Company L.L.C., as Operator, and Petro-Chem Operating Co., Inc., et al., as Participants, which includes as Exhibit "C" an Operating Agreement (AAPL Form 610-1989) dated June 1, 2011, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators | – |
| 12 | Participation Agreement dated July 1, 2017 covering the South Harmony Prospect, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., as Participant, which includes as Exhibit "D" an Operating Agreement (AAPL Form 610-1989) dated July 1, 2017, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators | – |
| 13 | JOA (AAPL 610-1982) dated October 29, 2018, covering the Southwest Quarter of Section 11, Township 3 North, Range 13 East, Conecuh County, Alabama, by and between Fletcher Petroleum Corp., as Operator, and Sklarco, L.L.C, et al, as Non-Operators | – |
| 14 | JOA dated October 15, 1956, and amended January 29, 1968, covering GC Williams #4, Mark H. Miller Survey, A-741, Rodessa Block #2, Cass County, TX, and Miller County, Arkansas, by and between Sam Sklar as Operator, and Union Producing Company et al, Operators | – |
| 15 | JOA covering a 682.35 acre gas unit (Vickers #1) in Freestone County, Texas, by and between Sklar & Phillips Oil Co., as Operator, and Anderson Exploration Energy Co., et al, as Non-Operators | – |
| 16 | JOA (AAPL 610-1982) dated May 15, 2018, covering the SE/4 of Section 11 (Anderson Johnson 11-9 #1 well), Township 3 North, Range 13 East, Conecuh County, Alabama, by and between Fletcher Petroleum Corp., as Operator, and Sklarco L.L.C., et al., as Non-Operators | – |
| 17 | JOA (AAPL 610-1982) dated July 15, 2014, covering the Southeast Quarter of Section 17, Township 3 North Range 13 East, by and between Fletcher Petroleum Corp., as Operator, and Sklarco, L.L.C., et al, as Non-Operators | – |
| 18 | Participation Agreement dated effective as of January 23, 2015 covering the Brewton Prospect, Escambia County, Alabama, by and between Sklar Exploration Company L.L.C., as Operator, and Rose Hill Exploration LLC, et al., as Participants, which includes as Exhibit "D" an Operating Agreement (AAPL Form 610-1982) dated January 23, 2015, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators | – |

DRAFT SUBJECT TO CHANGE

## Sklarco L.L.C. - Assumed Contracts - Exhibit D

| Line # | Contract Description | Cure Amount |
|--------|---------------------|-------------|
| 19 | JOA (AAPL 610-1982) dated January 1, 2016 (East Castor Prospect), covering certain property in, T14N, R7W, Bienville Parish, LA (Echo Papa 10-10 #1 and JB Evans 11-4 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators | – |
| 20 | Participation Agreement dated effective as of December 1, 2012 covering the West Bryceland Saddle Prospect, by and between AEEC II, L.L.C., Sklar Exploration Company L.L.C., Sklarco L.L.C., and Marshall-Wuellner, Inc., which includes as Exhibit "D" an Operating Agreement (AAPL Form 610-1982) dated December 1, 2012, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators | – |
| 21 | JOA (AAPL 910-1982) dated December 1, 2015 covering the Findley 2-5 in the Northwest Quarter of Section 2, Township 3 North, Range 13 East, Conecuh county, Alabama by and between Fletcher Petroleum Corp., as Operator and Sklarco L.L.C., et al., Non-Operators | – |
| 22 | JOA (AAPL 610-1977) dated April 11, 1985, but made effective May 1, 1983, covering Sun #1-R, Jesse E. Bean Survey, A-127, Smith County, TX, by and between Sklar & Phillips Oil Co., Operator, and Sun Exploration Company, et al, as Non-Operators | – |
| 23 | JOA (AAPL 610-1982) dated April 1, 2016, covering lands in the John Lane Survey, A-557, and the Robert G. Saunders Survey, A-871, by and between Sklar Exploration Company, L.L.C., as Operator, and Sklarco, L.L.C., et al, as Non-Operators | – |
| 24 | JOA dated April 17, 1997, covering Sections 19-22, 25-29 and 36-41, T17N, R4E, and Sections 2-7, T16N, R4E, Warren County, Mississippi (Feld Heirs #1 and Feld Heirs #3), by and between Stroud & Luke Production Company, as Operator, and Robert A. Stroud LLC, et al., as Non-Operators | – |
| 25 | JOA (AAPL 610-1956) dated March 7, 1972, covering lands in Houston County, Texas (LE Warner #1), by and between Sun Oil Company, as Operator, and Nemours Corporation, et al, as Non-Operators | – |
| 26 | Joint Operating Agreement dated July 1, 2016, by and between Fletcher Petroleum Corp, an Alabama corporation, as Operator, and the signatory party or parties to the Joint Operating Agreement other than Operator, hereinafter referred to individually as "Non-Operator", and collectively as "Non-Operators" for the Pate 3-9 Well. | – |
| 27 | Participation Agreement dated August 27, 2012 covering the Summit Extension Prospect, by and between Par Minerals Corporation, as Operator, and Sklarco L.L.C., as Participant, which includes as Exhibit "A" an Operating Agreement (AAPL Form 610-1989) dated August 27, 2012, by and between Par Minerals Corporation, as Operator, and Sklarco L.L.C., et al., as Non-Operators | – |
| 28 | JOA (AAPL 610-1989) dated August 7, 2014, covering the Southwest Quarter of the Northeast Quarter of Section 16, Township 17 South, Range 14 West, Union County, Arkansas, by and between Quanico Oil and Gas, Inc., as Operator, and Sklarco, LLC, as Non-Operator | – |

## Sklarco L.L.C. - Assumed Contracts - Exhibit D

| Line # | Contract Description | Cure Amount |
|---|---|---|
| 29 | Exploration Agreement dated October 1, 2017 covering the Hunter Benn 3D Project (the area identified and leveled "3D Shoot Area" on the plat attached as Exhibit "A") between Pruet Oil Company LLC, Crain Energy, Ltd., James Resources, Inc., JJS Working Interests, LLC, McCombs Energy, Ltd., TDX Energy, LLC, Pentad Energy, LLC, Hanson Operating Co., In., Babe Development Company, LLC, GSC Exploration LLC (as successor in interest to GulfSOuth Capital, Inc.), Sklarco L.L.C. and Justiss Oil Company, Inc. | – |
| 30 | JOA (AAPL 610-1982) dated January 19, 2007, covering the Southeast Quarter of Section 6, Township 4 North, Range 13 East, Conecuh County, Alabama, by and between Midroc Operating Company, as Operator, and Robert Bourne, et al, as Non-Operators | – |
| 31 | 0 | – |
| 32 | JOA (AAPL 610-1982) dated November 1, 2009, covering the Claude Hayes Unit, Willow Springs Field, Gregg County, TX, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators | – |
| 33 | Participation Agreement covering the Castleberry Prospect (Conecuh County, AL) dated effective as of November 7, 2012, by and between Sklar Exploration Company, as Operator, and Sklarco L.L.C., et al., as Participants, which includes as Exhibit "E" an Operating Agreement (A.A.P.L. Model Form 610-1982) dated November 7, 2012 covering the Castleberry Prospect (Conecuh County, AL), by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators | – |
| 34 | Third Amendment to the Unit Agreement dated January 31, 2014, concerning operation of the Little Cedar Creek Oil Unit, Little Cedar Creek Field, Conecuh County, AL, by and between Pruet Production Co., as Unit Operator, and the various working interest, royalty, and overriding royalty interest owners<br><br>Third Amendment to the Unit Operating Agreement dated January 31, 2014, concerning operation of the Little Cedar Creek Oil Unit, Little Cedar Creek Field, Conecuh County, AL, by and between Pruet Production Co., as Unit Operator, and Sklarco, L.L.C., et al., as Non-Operators | – |
| 35 | JOA (AAPL 610-1977) dated April 28, 1981, covering Teledyne #1, Jesse E. Bean Survey A-127, Chapel Hill Area, Smith County, TX, by and between Sklar & Phillips Oil Co., as Operator, and David A. Schlachter, et al, as Non-Operators | – |
| 36 | JOA covering lands located in Section 9, Township 23 North, Range 9 West, Webster Parish, Louisiana (Haynesville Merc. #1) | – |
| 37 | Unit Operating Agreement dated November 1, 2018 concerning operation of the Northeast Brooklyn Oil Unit, Brooklyn Field, Conecuh & Escambia Counties, AL, by and between Pruet Production Co., as Unit Operator, and Sklarco L.L.C., et al., as Non-Operators | – |

## Sklarco L.L.C. - Assumed Contracts - Exhibit D

| Line # | Contract Description | Cure Amount |
|--------|---------------------|-------------|
| 37 | Operating Agreement (AAPL Form 610-1989) covering the Bridge Creek Prospect attached and made a part of as Exhibit "D-2" to that Participation Agreement dated effective as of July 1, 2014 covering the Mule Creek and Bridge Creek Prospects, Niobrara County, Wyoming, by and between Sklar Exploration Company L.L.C., as Operator, and G&H Production Company, LLC, et al., as Participants | – |
| 38 | Operating Agreement (AAPL Form 610-1989) covering the Mule Creek Prospect attached and made a part of as Exhibit "D-1" to that Participation Agreement dated effective as of July 1, 2014 covering the Mule Creek and Bridge Creek Prospects, Niobrara County, Wyoming, by and between Sklar Exploration Company L.L.C., as Operator, and G&H Production Company, LLC, et al., as Participants | – |
| 39 | JOA (AAPL 610-1977) dated December 3, 1982, covering 100.99 acres of the M. F. Barbee Survey, A-82, Smith County, Texas, by and between Sklar & Phillips Oil Co., as Operator, and Elana Oil & Gas Co., et al, as Non-Operators | – |
| 40 | JOA (AAPL 610-1977) dated April 22, 1985, but made effective January 1, 1983, covering Fair Oil Ltd. #1, Jesse E. Bean Survey A-127, Chapel Hill Area, Smith County, TX, by and between Sklar & Phillips Oil Co., Operator, and Aviva, Inc. et al, as Non-Operators | – |
| 41 | JOA (AAPL 610-1982) dated October 14, 2008 covering the Southeast Quarter of Section 17, Township 4 North Range 10 East, Conecuh County, Alabama, by and between Midroc Operating Company, as Operator, and Sklarco L.L.C., et al, as Non-Operators | – |
| 42 | Participation Sales Agreement covering the North Beach Prospect (Conecuh County, AL) dated effective as of November 15, 2004 by and between Craft Exploration Company L.L.C., Sklar Exploration Company L.L.C. and Sklarco L.L.C., which includes as Exhibit "I" an Operating Agreement (AAPL Form 610-1982) dated November 15, 2004, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C. and Craft Exploration Company L.L.C., as Non-Operators | – |
| 43 | Participation Agreement dated effective as of March 1, 2013 covering the South Woodlawn Prospect, Marion County, Texas, by and between Sklar Exploration Company L.L.C., as Operator, and McCombs Energy, LTD., et al., as Participants, which includes as Exhibit "D" an Operating Agreement (AAPL Form 610-1989) dated March 1, 2013, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators | – |
| 44 | Operating Agreement dated February 15, 1999, by and between Brammer Engineering, Inc., OPERATOR, and Wheless 1DL Exploration Company, L.L.C., et al, NON-OPERATOR, covering lands in Gibsland Prospect, Bienville Parish, Louisiana. | – |

DRAFT SUBJECT TO CHANGE

## Sklarco L.L.C. - Assumed Contracts - Exhibit D

| Line # | Contract Description | Cure Amount |
|--------|---------------------|-------------|
| 45 | Exploration Agreement dated effective February 1, 2007 covering lands located in Township 18 North, Range 7 West, Beinville Parish, Louisiana less and except Sections 21, 22, 27 and 30 of said Township, and in Sections 15, 16, 21, 22, 27, 28, 32, 33, 34 and 35, Township 19 North, Range 6 West, Claiborne parish, Louisiana by and between Sklar Exploration Company L.L.C., Sklarco L.L.C., McCombs Energy, Ltd., and Tensas Delta Exploration Company LLC | – |
| 46 | Participation Agreement covering the Red River Prospect (Caddo & Bossier Parishes, LA) dated effective as of April 1, 2006, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Participants, which includes as Exhibit "E" an Operating Agreement (AAPL Form 610-1982) dated April 1, 2006, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators | – |
| 47 | Unit Operating Agreement dated October 1, 2016 concerning operation of the Little Cedar Creek Oil Unit IV, Little Cedar Creek Field, Conecuh County, AL, by and between Sklar Exploration Company L.L.C., as Unit Operator, and McCombs Energy, Ltd., et al., as Non-Operators | – |
| 48 | Unit Operating Agreement dated March 20, 2014 concerning operation of the Little Cedar Creek Oil Unit II, Little Cedar Creek Field, Conecuh County, AL, by and between Sklar Exploration Company L.L.C., as Unit Operator, and McCombs Energy, Ltd., et al., as Non-Operators | – |
| 49 | Letter Agreement dated March 6, 2015 amending the Brewton Prospect Participation Agreement and JOA, by and between Sklar Exploration Company, L.L.C., as Operator, and Rose Hill Exploration, LLC, et al., as Participants | – |
| 50 | Second Amendment to Brewton Prospect Participation Agreement and JOA dated effective as of January 23, 2015, by and between Sklar Exploration Company L.L.C., as Operator, and Rose Hill Exploration, LLC, et al., as Participants | – |
| 51 | JOA (AAPL 610-1982) dated July 1, 2008, covering NW/4 Section 17, T4N, R13E, Conecuh County, AL (Craft Mack 17-4 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Midroc Operating Company, et al., as Non-Operators | – |
| 52 | Unit Agreement dated March 20, 2014 concerning operation of the Little Cedar Creek Oil Unit II, Little Cedar Creek Field, Conecuh County, AL, by and between Sklar Exploration Company L.L.C., as Unit Operator, and the various working interest, royalty, and overriding royalty interest owners | – |
| 53 | Gas Purchase Contract dated September 23, 2014, by and between Sklar Exploration Company L.L.C., in its capacity as Operator of the Little Cedar Creek Oil Unit II, as Buyer, and the North Beach Prospect Working Interest Owners, as Sellers | – |
| 54 | Gas Purchase Contract dated September 23, 2014, by and between Sklar Exploration Company L.L.C., in its capacity as Operator of the Little Cedar Creek Oil Unit II, as Buyer, and the Escambia Prospect Working Interest Owners, as Sellers | – |

## Sklarco L.L.C. - Assumed Contracts - Exhibit D

| Line # | Contract Description | Cure Amount |
|---|---|---|
| 55 | Unit Agreement dated October 1, 2016 concerning operation of the Little Cedar Creek Oil Unit IV, Little Cedar Creek Field, Conecuh County, AL, by and between Sklar Exploration Company L.L.C., as Unit Operator, and the various working interest, royalty, and overriding royalty interest owners | – |
| 56 | Amendment to Operating Agreement dated effective as of November 1, 2011 covering the Escambia Prospect (Escambia and Conecuh Counties, Alabama), by and between Sklar Exploration Company L.L.C., et al., which Amendment extended the term of the AMI and added additional lands to the Contract Area and AMI | – |
| 57 | JOA (AAPL 610-1982) dated March 1, 2011, covering NE/4 Section 31, T4N, R13E, Conecuh County, AL (Mary-Mack 31-2 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Midroc Operating Company, et al., as Non-Operators | – |
| 58 | Farmout Agreement dated February 15, 2011, covering the SE/4 Section 29, T4N, R13E, Conecuh County, AL (Thomasson 29-10 #1), by and between Anderson Exploration Energy Company, L.C., et al., as Farmor, and Sklar Exploration Company L.L.C., as Farmee | – |
| 59 | JOA (AAPL 610-1982) dated February 15, 2011, covering the SE/4 Section 29, T4N, R13E, Conecuh County, AL (Thomasson 29-10 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Midroc Operating Company, et al., as Non-Operators | – |
| 60 | JOA (AAPL 610-1982) dated May 1, 2011, covering the SE/4 Section 35, T4N, R12E, Conecuh County, AL (CCL&T 35-10 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Fletcher Petroleum Corp., et al., as Non-Operators | – |
| 61 | JOA (AAPL 610-1982) dated July 1, 2011, covering the NE/4 Section 30, T4N, R13E, Conecuh County, AL (Ralls 30-8 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Pruet Production Co., et al., as Non-Operators | – |
| 62 | JOA (AAPL 610-1982) dated September 15, 2011, covering the NE/4 Section 30, T4N, R13E, Conecuh County, AL (Ralls 30-8 #1), by and between Sklar Exploration Company L.L.C., as Operator, and BSAP I, Inc., et al., as Non-Operators | – |
| 63 | JOA (AAPL 610-1982) dated December 7, 2011, covering NW/4 Section 29, T4N, R13E, Conecuh County, AL (Boothe & Casey 29-6 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C. and BSAP I, Inc., as Non-Operators | – |
| 64 | JOA (AAPL 610-1982) dated December 7, 2011, covering NW/4 Section 29, T4N, R13E, Conecuh County, AL (Boothe & Casey 29-6 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., Pruet Production Co., and Midroc Operating Company and others, as Non-Operators | – |

## Sklarco L.L.C. - Assumed Contracts - Exhibit D

| Line # | Contract Description | Cure Amount |
|--------|---------------------|-------------|
| 65 | JOA (AAPL 610-1982) dated February 1, 2012, covering NE/4 Section 33, T4N, R12E, Conecuh County, AL (CCL&T 33-2 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Pruet Production Co., et al., as Non-Operators | – |
| 66 | JOA (AAPL 610-1982) dated March 15, 2012, covering NE/4 Section 34, T4N, R12E, Conecuh County, AL (Grady 34-8 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Pruet Production Co., et al., as Non-Operators | – |
| 67 | JOA (AAPL 610-1982) dated June 1, 2012, covering NW/4 Section 34, T4N, R12E, Conecuh County, AL (Jones 34-4 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Texar Exploration, LLC, et al., as Non-Operators | – |
| 68 | JOA (AAPL 610-1982) dated March 15, 2012, covering NW/4 Section 35, T4N, R12E, Conecuh County, AL (CCL&T 35-5 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Avery Producing, LLC, et al., as Non-Operators | – |
| 69 | JOA (AAPL 610-1982) dated May 1, 2012, covering SE/4 Section 34, T4N, R12E, Conecuh County, AL (Grady 34-10 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Pruet Production Co., et al., as Non-Operators | – |
| 70 | JOA (AAPL 610-1982) dated July 13, 2012, covering NW/4 Section 4, T3N, R12E, Escambia County, AL (CCL&T 4-3 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Pruet Production Co., et al., as Non-Operators | – |
| 71 | JOA (AAPL 610-1982) dated January 10, 2013, covering SE/4 Section 4, T4N, R13E, Conecuh County, AL (CCL&T 32-9 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Pruet Production Co., et al., as Non-Operators | – |
| 72 | JOA (AAPL 610-1982) dated February 17, 2014, covering SW/4 Section 33, T4N, R13E, Conecuh County, AL (Thomasson 33-12 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Pruet Production Co., et al., as Non-Operators | – |
| 73 | JOA (AAPL 610-1982) dated August 1, 2014, covering SE/4 Section 2, T3N, R12E, Escambia County, AL (CCL&T 2-9 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Central Petroleum, Inc., et al., as Non-Operators | – |
| 74 | JOA (AAPL 610-1982) dated September 1, 2014, covering NW/4 Section 3, T3N, R13E, Conecuh County, AL (CCL&T 3-4 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Fletcher Petroleum Corp., et al., as Non-Operators | – |
| 75 | JOA (AAPL 610-1982) dated August 15, 2014, covering NE/4 Section 4, T3N, R13E, Conecuh County, AL (CCL&T 4-1 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Fletcher Petroleum Corp., et al., as Non-Operators | – |

## Sklarco L.L.C. - Assumed Contracts - Exhibit D

| Line # | Contract Description | Cure Amount |
|--------|----------------------|-------------|
| 76 | JOA (AAPL 610-1982) dated February 1, 2011, covering SE/4 Section 30, T4N, R13E, Conecuh County, AL (Mary Mack 30-15 #1), by and between Midroc Operating Company, as Operator, and Sklarco L.L.C., et al. | – |
| 77 | JOA (AAPL 610-1982) dated March 2, 2011, covering SW/4 Section 29, T4N, R13E, Conecuh County, AL (Salter 29-13 #1), by and between Midroc Operating Company, as Operator, and Sklarco L.L.C., as Agent Nominee for the Sklar Parties, et al. | – |
| 78 | JOA (AAPL 610-1982) dated July 15, 2011, covering NE/4 Section 29, T4N, R13E, Conecuh County, AL (Boothe & Casey 29-8 #1), by and between Pruet Production Co., as Operator, and Sklarco L.L.C. and BSAP II, Inc., as Non-Operators | – |
| 79 | JOA (AAPL 610-1982) dated July 15, 2011, covering NE/4 Section 29, T4N, R13E, Conecuh County, AL (Boothe & Casey 29-8 #1), by and between Pruet Production Co., as Operator, and Sklarco L.L.C., as Agent Nominee for the Sklar Parties, et al. | – |
| 80 | Unit Agreement dated May 11, 2015 concerning operation of the Fishpond Oil Unit, Fishpond Field, Escambia County, AL, by and between Sklar Exploration Company L.L.C., as Unit Operator, and the various working interest, royalty, and overriding royalty interest owners | – |
| 81 | Gas Purchase Contract dated August 27, 2015, by and between Sklar Exploration Company L.L.C., in its capacity as Operator of the Fishpond Oil Unit, as Buyer, and the North Beach Prospect Working Interest Owners, as Sellers | – |
| 82 | Gas Purchase Contract dated August 27, 2015, by and between Sklar Exploration Company L.L.C., in its capacity as Operator of the Fishpond Oil Unit, as Buyer, and the Escambia Prospect Working Interest Owners, as Sellers | – |
| 83 | Gas Purchase Contract dated August 27, 2015, by and between Sklar Exploration Company L.L.C., in its capacity as Operator of the Fishpond Oil Unit, as Buyer, and the Shipps Creek Prospect Working Interest Owners, as Sellers | – |
| 84 | Letter Agreement dated April 29, 2016 regarding Amendment East Castor Prospect JOA, by and between Sklar Exploration Company L.L.C., as Operator, and AEEC II, LLC, et al., as Non-Operators | – |
| 85 | Partial Sublease of Oil, Gas and Mineral Leases dated effective as of February 1, 2008, by and between Sklarco L.L.C., as Sublessor, and Petrohawk Properties, L.P., as Sublessee, covering rights below the Hosston Formation in certain oil, gas and mineral leases | – |
| 86 | Letter Agreement dated December 3, 2010, by and between Petrohawk Properties, LP, as Assignor, and Sklarco L.L.C., as Assignee, concerning the assignment of certain Replacement Leases and Additional Leases insofar as the same cover and relate to rights above the Hosston Formation | – |

## Sklarco L.L.C. - Assumed Contracts - Exhibit D

| Line # | Contract Description | Cure Amount |
|--------|---------------------|-------------|
| 87 | JOA (AAPL 610-1982) dated February 15, 1999, covering S/2 of Section 16 and N/2 of Section 21, T18N, R7W, Bienville Parish, LA (Willamette 21 #1), by and between Brammer Engineering, Inc., as Operator, and Wheless TDL Exploration Company, L.L.C., et al., as Non-Operators | – |
| 88 | JOA (AAPL 610-1982) dated May 26, 2004, covering Section 28, T18N, R6W, Bienville Parish, LA (Cindy Lou Cloyd 28 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators | – |
| 89 | JOA (AAPL 610-1982) dated February 1, 2008, covering Section 34, T19N, R6W, Bienville & Claiborne Parishes, LA (CS Shaffer 34 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators | – |
| 90 | JOA (AAPL 610-1982) dated August 15, 2007, covering Section 33, T18N, R6W, Bienville Parish, LA (JC Merritt #1), by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators | – |
| 91 | JOA (AAPL 610-1982) dated May 1, 2009, covering Section 33, T19N, R6W, Claiborne Parish, LA (Kimberly Lay 33 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators | – |
| 92 | Participation Agreement dated effective as of March 1, 2013 covering the Oakhay Creek Prospect, Smith County, Mississippi, by and between Sklar Exploration Company L.L.C., as Operator, and Resource Ventures, LLC, et al., as Participants, which includes as Exhibit "C" an Operating Agreement (AAPL Form 610-1989) dated June 1, 2011, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators | – |
| 93 | First Modification of Participation Agreement dated effective as of June 1, 2015 covering the Summit Extension Prospect and Southwest Summit Prospects, by and between Par Minerals Corporation, as Operator, and Sklarco L.L.C., as Participant | – |
| 94 | Letter Agreement dated May 23, 2013 regarding amendments to Participation Agreement and JOA (South Woodlawn Prospect), Marion County, Texas, by and between Sklar Exploration Company L.L.C., as Operator, and McCombs Energy, LTD., et al., as Non-Operators | – |
| 95 | Farmout Agreement dated effective as of June 1, 2016, by and between McCombs Energy, Ltd., as Farmor, and Sklarco L.L.C., as Farmee, covering a portion of Farmor's interest in the CCL&T 3-7 #1 Well, Escambia Prospect, Conecuh and Escambia Counties, AL. | – |
| 96 | Farmout Agreement dated effective as of August 1, 2016, by and between McCombs Energy, Ltd., as Farmor, and Sklarco L.L.C., as Farmee, covering a portion of Farmor's interest in the Brewton Prospect, Escambia County, AL. | – |

## Sklarco L.L.C. - Assumed Contracts - Exhibit D

| Line # | Contract Description | Cure Amount |
|--------|----------------------|-------------|
| 97 | Farmout Agreement dated effective as of July 15, 2016, by and between McCombs Energy, Ltd., as Farmor, and Sklarco L.L.C., as Farmee, covering a portion of Farmor's interest in the Mule Creek Prospect, Niobrara County, WY. | – |
| 98 | Farmout Agreement dated effective as of July 15, 2016, by and between McCombs Energy, Ltd., as Farmor, and Sklarco L.L.C., as Farmee, covering a portion of Farmor's interest in the Bridge Creek Prospect, Niobrara County, WY. | – |
| 99 | JOA (AAPL 610-1982) dated December 15, 2019, covering the E ½ of Section 35 and W ½ of Section 36 (Castleberry Prospect), Township 4 North, Range 10 East, Conecuh County, Alabama, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators | – |
| 100 | Unit Agreement dated November 1, 2018 concerning operation of the Southeast Brooklyn Oil Unit II, Brooklyn Field, Conecuh & Escambia Counties, AL, by and between Sklar Exploration Company L.L.C., as Unit Operator, and the various working interest, royalty, and overriding royalty interest owners | – |
| 101 | Unit Agreement dated November 1, 2018 concerning operation of the Northwest Brooklyn Oil Unit II, Brooklyn Field, Conecuh & Escambia Counties, AL, by and between Pruet Production Co., as Unit Operator, and the various working interest, royalty, and overriding royalty interest owners | – |
| 102 | Unit Agreement dated November 1, 2018 concerning operation of the Northeast Brooklyn Oil Unit II, Brooklyn Field, Conecuh & Escambia Counties, AL, by and between Pruet Production Co., as Unit Operator, and the various working interest, royalty, and overriding royalty interest owners | – |
| 103 | Gas Purchase Contract dated April 6, 2015, by and between Sklar Exploration Company L.L.C., in its capacity as Operator of the Fishpond Oil Unit, as Buyer, and the Shipps Creek Prospect Working Interest Owners, as Sellers | – |
| 104 | JOA (AAPL 610-1982) dated April 1, 2013, covering SW/4 Section 36, T4N, R12E, Conecuh County, AL (Kennedy 36-12 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Pruet Production Co., et al., as Non-Operators | – |
| 105 | Operating Agreement of West Arcadia Pipeline L.L.C. dated effective as of July 20, 2009, by and between Sklarco L.L.C., McCombs Energy, LTD., and Tensas Delta Exploration Company, LLC, as Members of the Company | – |
| 106 | Participation Agreement covering the L-Pond Prospect (Conecuh County, AL) dated effective as of November 7, 2012, by and between Sklar Exploration Company, as Operator, and Sklarco L.L.C., et al., as Participants, which includes as Exhibit "E" an Operating Agreement (A.A.P.L. Model Form 610-1982) dated November 7, 2012 covering the L-Pond Prospect (Conecuh County, AL), by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators | – |

DRAFT SUBJECT TO CHANGE

## Sklarco L.L.C. - Assumed Contracts - Exhibit D

| Line # | Contract Description | Cure Amount |
|--------|---------------------|-------------|
| 107 | Participation and Exploration Agreement dated effective as of October 1, 2013 covering the West Tyler 3D Seismic Prospect, Smith County, Texas, by and between Sklar Exploration Company L.L.C., as Operator, and McCombs Energy, LTD., et al., as Participants, which includes as Exhibit "D" an Operating Agreement (AAPL Form 610-1989) dated October 1, 2013 covering the Swan Prospect, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators | – |
| 108 | Letter Agreement dated January 7, 2014 regarding amendments to West Tyler 3D Participation Agreement and JOA, by and between Sklar Exploration Company L.L.C., as Operator, and McCombs Energy, LTD., et al., as Non-Operators | – |
| 109 | Letter Agreement dated October 30, 2014 regarding amendments to West Tyler 3D Participation Agreement and JOA, by and between Sklar Exploration Company L.L.C., as Operator, and McCombs Energy, LTD., et al., as Non-Operators | – |
| 110 | Farmout Agreement dated January 7, 2014, by and between Penn Virginia Oil & Gas, L.P., as Farmor, and Sklar Exploration Company L.L.C., as Farmee covering certain oil, gas and mineral leases located in Marion County, TX | – |
| 111 | Letter Agreement dated March 14, 2014, by and between Sklar Exploration Company L.L.C., as Farmee and Penn Virginia Oil & Gas, L.P., as Farmor, amended certain terms in the Farmout Agreement | – |
| 112 | Farmout Agreement dated effective as of June 1, 2016, by and between McCombs Energy, Ltd., as Farmor, and Sklarco L.L.C., as Farmee, covering a portion of Farmor's interest in the West Tyler 3D Seismic Prospect, Smith County, TX. | – |
| 113 | JOA (AAPL 610-1982) attached and made part of as Exhibit "C" the Participation Agreement dated June 1, 2014 for the Molly Prospect covering lands described as the Northeast Quarter and the South Half of Section 1 of Township 22 North, Range 6 west; the East Half of Section 12 of Township 22 North, Range 6 West; the South Half of Section 4 of Township 22 North, Range 5 West; the South Half of Section 6 of Township 22 North, Range 5 West; and the north Half of Section 7, 8 and 9 of Township 22 North, Range 5 West, Claiborne Parish, Louisiana between AEEC II, L.L.C., Stephen O. Smith, McCombs Energy, Ltd and Sklarco L.L.C. | – |
| 114 | JOA (APPL 610-1982) attached and made a part of that certain Participation Agreement dated June 1, 2013 covering the Cardinal Prospect in Lafayette Parish, Louisiana more particularlay described by Exhibit "A" to the Agreement by and between Sklar Exploration Company L.L.C., Sklarco L.L.C., Cypress Drilling LLC, Barbara Callaway Trust IV, Wes-Tex Drilling Company, L.P. McCombs Energy, Ltd., and JJS Working Interests LLC | – |

DRAFT SUBJECT TO CHANGE

## Sklarco L.L.C. - Assumed Contracts - Exhibit D

| Line # | Contract Description | Cure Amount |
|--------|---------------------|-------------|
| 115 | JOA dated March 1, 2016 covering the Chestnut Prospect in Township 13 North, Range 6 West, Section 1, 2, 11, 12, Natchitoches and Winn Parishes, Louisiana; Township 13 North, Range 5 West, Section 5, 6, 7, 8, Winn Parish, Louisiana; Township 14 north, Range 6 West, Section 36, Beinville Parish, Louisiana; Township 14 North, Range 5 West, Section 31, Beinville Parish, Louisiana (more particularly described on the plat designated as Exhibit "A-2") by and between Sklar Exploration Company, L.L.C., and Sklarco L.L.C., et al., Non-Operators | – |
| 116 | JOA (AAPL 610-1982) attached and made part of the Participation Agreement dated June 13, 2001 covering the Coulson Bayou Prospect in Township 4 North, Range 3 West, All of Sections 22, 23, 30 and 31, Wilkinson County, Mississippi by and between Frank David Exploration, Inc. Sklarco L.L.C, Sklar Exploration Company L.L.C., and D&D Drilling & Exploration Inc. | – |
| 117 | JOA (AAPL 610-1982) attached and made part of as Exhibit "C" to the Participation Agreement dated October 1, 2011 covering the East Holly Prospect, Desoto Parish, Louisiana as shown on Exhibit "A" of the Agreement by and between Sklar Exploration Company L.L.C., Sklarco, L.L.C., McCombs Energy, Ltd., JJS Working Interests LLC, Fllet Howell, Kudzu Oil Properties, L.L.C., Tiembo Ltd., Marksco, L.L.C., and Bundero Investment Compan, L.L.C. | – |
| 118 | JOA (AAPL 610-1982) attached and made part of as Exhibit "D" to the Participation Agreement dated April 1, 2002 covering the Martin Prospect in Sections 1, 2, 10 and 11, Township 13 North, Range 9 West, Red River Parish, Louisiana (as identified in Exhibit "A")by and between Sklar Exploration, L.L.C., Sklarco L.L.C., Mike Rogers Drilling Co., Inc., Hilliard Acquisitions II L.L.C., and Flournoys Family Properties Ltd. | – |
| 119 | JOA (AAPL 610-1982) attached to and made part of as Exhibit "E" to the Participation Agreement dated January 25, 2006 covering the Moncrief Prospect in Avoyelles and St. Landry Parishes, Louisiana (as identifieed in Exhibit "A-1") by and between Williams Petroleum, LLC, Yates Drilling Company, Sklar Exploration Company L.L.C., Sklarco L.L.C., McCombs Energy, Ltd., Anderson-Drake Partners, Inc., Dudley Hughes, LLC, and David New Drilling Company, Inc. | – |
| 120 | JOA (AAPL 610-1982) attached to and made a part of as Exhibit "D" to the Participation Agreement dated May 14, 2002 covering the N E Thompsonville Prospect in Webb County, Texas (as shown on Exhibit "A" to the Agreement) by and between Skyline Energy, L.L.C., and Sklarco L.L.C. | – |
| 121 | JOA (AAPL 610-1982) dated June 1, 2016 covering the North Saline Prospect in West 1/2 Section 3, 4, East 1/2 Section 5, 9, Township 14 north, Range 6 West; South 1/2 Section 33, Township 15 North, Range 6 West, Beinville Parish, Louisiana (as shown on Exhibit "A" to the Agreement") by and between Sklar Exploration Company, L.L.C., and Sklarco L.L.C., et al., Non-Operators | – |

## Sklarco L.L.C. - Assumed Contracts - Exhibit D

| Line # | Contract Description | Cure Amount |
|--------|---------------------|-------------|
| 122 | JOA (AAPL 610-1989) attached to and made a part of as Exhibit "C" to that certain Participation Agreement dated effective as of April 1, 2012, by and between Sklar Exploration Company L.L.C., Sklarco L.L.C., McCombs Energy, Ltd., Fleet Howell, Tiembo, Ltd., Fant Energy Limited, Kudzu Oil Properties, L.L.C., Marksco, L.L.C. and Bundero Investment Company, L.L.C., covering the Fryeburg Prospect, Webster and Bienville Parishes, Louisiana | – |
| 123 | JOA (AAPL 610-1982) attached and made a part of Exhibit "D" to the Participation Agreement Glade Bayou Prospect in Tensas Parish, Louisiana dated effective as of April 1, 2013, by and between Sklar Exploration Company L.L.C., Sklarco L.L.C., McCombs Energy, Ltd., JJS Working Interest LLC, Tauber Exploration & Production Company, James Fleet Howell, Kudzu Oil Properties, L.L.C., Tiembo, Ltd., Marksco, L.L.C., Bundero Investment Company, L.L.C., Bennett Greenspan, Twin Energy LPI, Twin Energy LP2, Twin Energy LLC, Lucas Petroleum Group, Inc., Kirkpatrick Oil Company, Inc., Pickens Financial Group, LLC, Sklar Investments, LC, Sklar Wells Investments, LLC, Fair Oil Ltd., R. L. Ray, LTD., Flyers Oil & Gas LLC. and Sealy Family Oil and Gas Partnership I, L.P. | – |
| 124 | JOA (AAPL 610-1982) attached to and made a part of as Exhibit "E" to that Participation Agreement dated effective as of May 1, 2005 covering the Jacksonville Prospect in Cherokke County, Texas by and between Sklar Exploration Company L.L.C., Sklarco L.L.C., McCombs Energy, L.L.C., Anderson Exploration Energy Company, L.C., and Sajac Exploration Company, L.L.C. | – |
| 125 | JOA (AAPL 610-1982) attached to and made a part of as Exhibit "D" to that certain Letter Agreement dated effective as of December 1, 2016 regarding the Silver Creek Prospect, Smith County, Texas, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Participants | – |
| 126 | JOA (AAPL 610-1982) attached to and made a part of as Exhibit "D" to that certain Participation Agreement for the South, Morton Prospect dated effective January 1, 2006, by and between Yates Drilling Company, Trail Mountain, Inc., Sklar Exploration Company, L.L.C., Sklarco, L.L.C., Anderson Exploration Energy Company, L.C., Roundtree & Associates, Inc., N.E. Collins, L.L.C. and Dave Easom. | – |
| 127 | JOA (AAPL 610-1982) attached to and made a part of that Participation Agreement dated January 1, 2003 covering the Three Creeks Prospect by and between Sklar Exploration Company L.L.C., Sklarco L.L.C., Jura-Search, Inc., Oolite Investments, Inc., L. B. Jefcoat and Company, Frank A. Perkins, Bayou La Croix L.L.C., Delta-T Geophysical Consulting, Inc. and George Marodis covering lands located in Union County, Arkansas. | – |
| 128 | JOA (AAPL 610-1982) attached to and made a part of that certain Participation Agreement (West Starks Dome Prospect) dated effective as of April 1, 2013, by and between Sklar Exploration Company L.L.C., Sklarco L.L.C., McCombs Energy, Ltd., JJS Working Interests LLC, Tauber Exploration & Production Company, Fleet Howell, Kudzu Oil Properties, L.L.C., Tiembo, Ltd., Marksco, L.L.C., Bundero Investment Company, L.L.C., Bennett Greenspan, Twin Energy LP!, Twin Energy LP2, Twin Energy LLC, Lucas Petroleum Group, Inc., Kirkpatrick Oil Company, Inc., Sklar Investment, LLC, and Sklar Wells Investments, LLC. | – |

## Sklarco L.L.C. - Assumed Contracts - Exhibit D

| Line # | Contract Description | Cure Amount |
|---|---|---|
| 129 | JOA (AAPL 610-1982) attached to and made a part of that certain Participation Agreement dated effective as of October I, 2011 covering the West Uriah Prospect in Monrow County, Alabama by and between Sklar Exploration Company L.L.C., Sklarco L.L.C, McCombs Energy, Ltd., Fant Energy Limited, Verado Oil and Gas Corporation, Advanced Oil and Gas Co., JJS Working Interests LLC, Fleet Howell, Sugar Creek Producing Company, L.L.C., Kudzu Oil Properties, L.L.C., Tiembo, Ltd., Marksco, L.L.C., Teekell Oil & Gas, Inc., Dickson Oil & Gas, L.L.C. and Bundero Investment Company, L.L.C. | – |
| 130 | JOA (AAPL 610-1982) dated November 29, 2005, covering All lands, oil and gas leasehold interest and oil and gas interest lying within the South Half of the South Half of Section 25,the South Half of the South Half of Section 26, the South Half of the South Half of Section 27, All of Sections 34, 35, and 36, Township 6 North Range 5 East; All of Sections 1, 2, 3, 10, 11, and 12, Township 5 North Range 5 East; South Half of the Southwest Quarter of Section 30 and the West Half of Section 31, Township 6 North, Range 6 East; the West Half of Section 6 and the West Half of Section 7, Township 5 North, Range 6 EastMonroe County, AL, by and between Spooner Petroleum Company, as Operator, and Sklarco L.L.C., et al., as Non-Operators | – |
| 131 | JOA (AAPL 610-1989) dated March 1, 2012, covering approximately 1,073 acres situated in Section 67, Township 16 South Range 19 East and Section 37, Township 16 South Range 20 East, Lafourche Parish, Louisiana, by and between Sklar Exploration Company, L.L.C., as Operator, and Maple Leaf Exploration LP, et al, as Non-Operators | – |
| 132 | JOA (AAPL 610-1989) dated August 1, 2011, covering Sections 4,5,6, and 9, Township 16 North, Range 8 West; Sections 31 and 32, Township 17 North, Range 8 West, Bienville Parish, Louisiana, by and between Sklar Exploration Company, L.L.C., as Operator, and Sklarco L.L.C. and D.L. Kelley Interests, as Non-Operators | – |
| 133 | JOA (AAPL 610-1982) dated January 10, 2013, covering the Southeast Quarter of Section 32, Township 4 North Range 13 East, Conecuh County, Alabama, by and between Sklar Exploration Company, L.L.C., as Operator, and Sklarco, L.L.C., et al, as Non-Operators | – |
| 134 | Unit Agreement dated December 12, 1995, concerning operation of the Martinville Rodessa Field Unit, Rodessa Oil Pool, Martinville Field, Simpson County, Mississippi, by and between Coho Resources, Inc., as Unit Operator, and the various working interest, royalty, and overriding royalty interest owners<br><br>Unit Operating Agreement dated December 12, 1995, concerning operation of the Martinville Rodessa Field Unit, Rodessa Oil Pool, Martinville Field, Simpson County, Mississippi, by and between Coho resources, Inc., as Unit Operator, and Marathon Oil Company, et, al, as Non-Operators | – |
| 135 | JOA (AAPL 610-1982) dated April 1, 2013, covering all lands within Township 2 North, Range 4 West and Township 2 North, Range 5 West, Wilkinson County, Mississippi, by and between, Sklar Exploration Company, LLC, as Operator, and Sklarco L.L.C., et al, as Non-Operators | – |

## Sklarco L.L.C. - Assumed Contracts - Exhibit D

| Line # | Contract Description | Cure Amount |
|---|---|---|
| 136 | Participation Agreement dated effective as of July 1, 2014 covering the Mule Creek and Bridge Creek Prospects, Niobrara County, Wyoming, by and between Sklar Exploration Company L.L.C., as Operator, and G&H Production Company, LLC, et al., as Participants, which includes as Exhibit "D-1" an Operating Agreement (AAPL Form 610-1989) dated July 1, 2014 covering the Mule Creek Prospect and as Exhibit "D-2" an Operating Agreement (AAPL Form 610-1989) covering the Bridge Creek Prospect | – |
| 137 | Letter Agreement dated August 14, 2015 regarding Extension of Shipps Creek Prospect AMI and Acquisition of Additional Seismic Data, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators, as amended by that certain Correction Letter dated August 18, 2015, by and between the same parties | – |
| 138 | Letter Agreement dated May 23, 2017 regarding Shipps Creek Prospect AMI Extension, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators, providing for a 1 year extension of the AMI. | – |
| 139 | Letter Agreement dated May 16, 2018 regarding Shipps Creek Prospect AMI Extension (Second Extension), by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators, providing for an additional 1 year extension of the AMI. | – |
| 140 | Letter Agreement dated April 23, 2019 regarding Shipps Creek Prospect AMI Extension (Third Extension), by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators, providing for an additional 1 year extension of the AMI. | – |
| 141 | Assignment And Bill of Sale dated effective as of September 1, 2009, by and between Tensas Delta Exploration Company, LLC and Sklar Exploration Company L.L.C., as Assignors, and West Arcadia Pipeline L.L.C., as Assignee | – |
| 142 | Assignment And Bill of Sale dated effective as of September 1, 2009, by and between McCombs Energy, LTD. And Sklarco L.L.C., as Assignors, and West Arcadia Pipeline L.L.C., as Assignee | – |
| 143 | Natural Gas Purchase and Sale Agreement dated September 1, 2009, by and between Texla Energy Management, Inc., as Buyer, and Sklar Exploration Company L.L.C., as Seller | – |
| 144 | Gas Gathering Agreement dated effective as of October 1, 2009, by and between West Arcadia Pipeline L.L.C., as Gatherer, and Texla Energy Management, Inc., as Shipper | – |
| 145 | First Amendment to Gas Gathering Agreement dated December 16, 2009, by and between West Arcadia Pipeline L.L.C., as Gatherer, and Texla Energy Management, Inc., as Shipper | – |
| 146 | Agreement to Distribute Proceeds dated December 16, 2009, by and between West Arcadia Pipeline L.L.C., as Gatherer, Texla Energy Management, Inc., as Buyer, and Sklar Exploration Company L.L.C. and Tensas Delta Exploration Company, LLC, as Sellers | – |

DRAFT SUBJECT TO CHANGE

## Sklarco L.L.C. - Assumed Contracts - Exhibit D

| Line # | Contract Description | Cure Amount |
|--------|---------------------|-------------|
| 147 | Second Amendment to Gas Gathering Agreement dated November 1, 2010, by and between West Arcadia Pipeline L.L.C., as Gatherer, and Texla Energy Management, Inc., as Shipper | – |
| 148 | Third Amendment to Gas Gathering Agreement dated June 11, 2014, by and between West Arcadia Pipeline L.L.C., as Gatherer, and Texla Energy Management, Inc., as Shipper | – |
| 149 | Farmout Agreement dated effective as of July 1, 2016, by and between McCombs Energy, Ltd., as Farmor, and Sklarco L.L.C., as Farmee, covering all of Farmor's interest in the Shipps Creek Prospect, Conecuh and Escambia Counties, AL, as amended by that certain Amendment to Farmout Agreement dated September 1, 2019. | – |
| 150 | Farmout Agreement dated effective as of August 1, 2016, by and between McCombs Energy, Ltd., as Farmor, and Sklarco L.L.C., as Farmee, covering a portion of Farmor's interest in the Mt. Carmel Prospect, Escambia County, AL & Santa Rosa County, FL. | – |
| 151 | Unit Agreement dated November 1, 2018 concerning operation of the Southwest Brooklyn Oil Unit, Brooklyn Field, Conecuh & Escambia Counties, AL, by and between Sklar Exploration Company L.L.C., as Unit Operator, and the various working interest, royalty, and overriding royalty interest owners | – |
| 152 | Farmout Agreement dated effective as of June 1, 2016, by and between McCombs Energy, Ltd., as Farmor, and Sklarco L.L.C., as Farmee, covering all of Farmor's interest in the Bodcaw 3D Project, Bienville and Natchitoches Parishes, LA. | – |

DRAFT SUBJECT TO CHANGE

Exhibit E

Exhibit F

## Sklarco L.L.C. - Rejected Contracts - Exhibit F

| Line # | Contract Description |
|--------|----------------------|
| 1 | JOA (AAPL 610-1982) attached to and made part of as Exhibit "D" to the Participation Agreement dated May 1, 2009 covering the Latham Prospect in Section 35, Township 2 North, Range 2 West, Baldwin County, Alabama (as identified in Exhibit "A") by and between Sklar Exploration, L.L.C., Sklarco L.L.C., Saye Oil Company and Tedan Exploration Company |
| 2 | JOA (AAPL 610-1982) attached to and made part of as Exhibit "D" to the Participation Agreement dated February 15, 2002 covering the Hodge Prospect in Sections 1, 2, 3, 10, and 11, Township 15 North, Range 3 West, Jackson Parish, Louisiana by and between Sklar Exploration Company L.L.C., Sklarco L.L.C., and Mike Rogers Drilling Co., Inc. |
| 3 | JOA (AAPL 610-1982) attached and made part of as Exhibit "D" to the Participation Agreement dated May 1, 2003 covering the CLapps Creek Glen Rose Prospect, Alabama Ferry Field, Leon County, Texas (as described on Exhibit "A-1") by and between Sklar Exploration Company L.L.C., Sklarco L.L.C., McMurrey exploration & Production, L.L.C., Burk Royalty Co., Ltd., and the Rudman Partnership |
| 4 | Amended and Restated JOA (AAPL 610-1982) dated December 15, 2019, covering the E/2 of Section 35 and W/2 of Section 36 (Myrtice Ellis Et Al 35-9 #1 well), Township 4 North, Range 10 East, Conecuh County, Alabama, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 5 | JOA (AAPL 610-1982) attached to and made a part of that certain Participation Agreement dated effective as of January 1, 2010, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C. et al., as Participants covering the West Loco Smackover Area, Union Parish, Louisiana |
| 6 | JOA (AAPL 610-1982) dated October 20, 1999, covering the Steeles Creek Prospect, Limestone County, TX, by and between Sklar-Tex L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 7 | JOA (AAPL 610-1982) attached and made a part of Exhibit "D" to the Participation Agreement dated July 1, 2003 covering the Bovina Prospect in Section 5, Township 16 North, Range 5 East, Warren County, Mississippi (as shown on Exhibit "A") by and between Harold D. Baker, Sklarco L.L.C., Winn Exploration Co., Inc., and Sklar Exploration Company L.L.C. |
| 8 | JOA (AAPL 610-1982) dated November 1, 1990, covering Taylor #1, SW Ravana Area, Cass County, TX, Samuel B. Brigham Survey A-45, by and between David Crow, as Operator, and S & P Company et al, as Non-Operators |
| 9 | JOA (AAPL 610-1982) attached to and made a part of as Exhibit "C" that certain Participation Agreement dated effective July 1, 2014 between Harvest Gas Management, LLC, et al, as Sellers, and Sklarco L.L.C., et al, as Buyers, covering the Range Prospect, Conecuh County, Alabama. |

DRAFT SUBJECT TO CHANGE

## Sklarco L.L.C. - Rejected Contracts - Exhibit F

| Line # | Contract Description |
|---|---|
| 10 | JOA (AAPL 610-1989) dated July 15, 2019, covering the Bowdoin Dome Initial Block, Phillips County, Montana, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 11 | Participation Agreement dated effective as of February 20, 2019 covering the North Pachuta Prospect, Clarke County, Mississippi, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Participants, which includes as Exhibit "E" an Operating Agreement (AAPL Form 610-1989) dated February 20, 2019, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 12 | JOA (AAPL 610-1982) dated March 5, 2003, covering Section 3, T18N, R6W, Bienville Parish, LA (LA Minerals #1 Alt), by and between Cypress Operating, Inc., as Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 13 | Participation Agreement dated effective as of July 1, 2019 covering the Bowdoin Dome Prospect, Phillips and Valley Counties, Montana, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Participants, which includes as Exhibit "A" a Restated Farmout Agreement dated effective as of May 21, 2019, by and between Twin Bridges Resources, LLC and Charter Energy Partners, LLC, as Farmees, and Scout Energy Partners II, LP, as Farmor |

DRAFT SUBJECT TO CHANGE

Exhibit G

## Sklar Exploration Company L.L.C. - Rejected Contracts - Exhibit G

| Line # | Contract Description |
|---|---|
| 1 | Amended And Restated Participation Agreement dated effective as of April 8, 2015 covering the Mt. Carmel Prospect, Escambia County, AL and Santa Rosa County, FL, by and between Sklar Exploration Company L.L.C., as Operator, and McCombs Energy, LTD., et al., as Participants, which includes as Exhibit "D" an Operating Agreement (AAPL Form 610-1982) dated April 8, 2015, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 2 | Participation Agreement covering the Shipps Creek Prospect (Conecuh & Escambia Counties, AL) dated effective as of June 1, 2012, by and between Sklar Exploration Company, as Operator, and Sklarco L.L.C., et al., as Participants, which includes as Exhibit "F" an Operating Agreement (A.A.P.L. Model Form 610-1982) dated June 1, 2012 covering the Shipps Creek Prospect (Conecuh & Escambia Counties, AL), by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 3 | Participation Agreement dated July 1, 2017 covering the South Harmony Prospect, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., as Participant, which includes as Exhibit "D" an Operating Agreement (AAPL Form 610-1989) dated July 1, 2017, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 4 | JOA (AAPL 610-1982) attached to and made part of as Exhibit "D" to the Participation Agreement dated May 1, 2009 covering the Latham Prospect in Section 35, Township 2 North, Range 2 West, Baldwin County, Alabama (as identified in Exhibit "A") by and between Sklar Exploration, L.L.C., Sklarco L.L.C., Saye Oil Company and Tedan Exploration Company |
| 5 | JOA (AAPL 610-1982) attached to and made part of as Exhibit "D" to the Participation Agreement dated February 15, 2002 covering the Hodge Prospect in Sections 1, 2, 3, 10, and 11, Township 15 North, Range 3 West, Jackson Parish, Louisiana by and between Sklar Exploration Company L.L.C., Sklarco L.L.C., and Mike Rogers Drilling Co., Inc. |
| 6 | JOA (AAPL 610-1982) attached and made part of as Exhibit "D" to the Participation Agreement dated May 1, 2003 covering the CLapps Creek Glen Rose Prospect, Alabama Ferry Field, Leon County, Texas (as described on Exhibit "A-1") by and between Sklar Exploration Company L.L.C., Sklarco L.L.C., McMurrey exploration & Production, L.L.C., Burk Royalty Co., Ltd., and the Rudman Partnership |
| 7 | Amended and Restated JOA (AAPL 610-1982) dated December 15, 2019, covering the E/2 of Section 35 and W/2 of Section 36 (Myrtice Ellis Et Al 35-9 #1 well), Township 4 North, Range 10 East, Conecuh County, Alabama, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 8 | JOA (AAPL 610-1982) attached to and made a part of that certain Participation Agreement dated effective as of January 1, 2010, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C. et al., as Participants covering the West Loco Smackover Area, Union Parish, Louisiana |

## Sklar Exploration Company L.L.C. - Rejected Contracts - Exhibit G

| Line # | Contract Description |
|--------|----------------------|
| 9 | JOA (AAPL 610-1982) dated October 20, 1999, covering the Steeles Creek Prospect, Limestone County, TX, by and between Sklar-Tex L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 10 | JOA (AAPL 610-1982) attached and made a part of Exhibit "D" to the Participation Agreement dated July 1, 2003 covering the Bovina Prospect in Section 5, Township 16 North, Range 5 East, Warren County, Mississippi (as shown on Exhibit "A") by and between Harold D. Baker, Sklarco L.L.C., Winn Exploration Co., Inc., and Sklar Exploration Company L.L.C. |
| 11 | JOA (AAPL 610-1982) dated November 1, 1990, covering Taylor #1, SW Ravana Area, Cass County, TX, Samuel B. Brigham Survey A-45, by and between David Crow, as Operator, and S & P Company et al, as Non-Operators |
| 12 | JOA (AAPL 610-1982) attached to and made a part of as Exhibit "C" that certain Participation Agreement dated effective July 1, 2014 between Harvest Gas Management, LLC, et al, as Sellers, and Sklarco L.L.C., et al, as Buyers, covering the Range Prospect, Conecuh County, Alabama. |
| 13 | JOA (AAPL 610-1989) dated July 15, 2019, covering the Bowdoin Dome Initial Block, Phillips County, Montana, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 14 | Participation Agreement dated effective as of February 20, 2019 covering the North Pachuta Prospect, Clarke County, Mississippi, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Participants, which includes as Exhibit "E" an Operating Agreement (AAPL Form 610-1989) dated February 20, 2019, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 15 | JOA (AAPL 610-1982) dated March 5, 2003, covering Section 3, T18N, R6W, Bienville Parish, LA (LA Minerals #1 Alt), by and between Cypress Operating, Inc., as Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 16 | Participation Agreement dated effective as of July 1, 2019 covering the Bowdoin Dome Prospect, Phillips and Valley Counties, Montana, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Participants, which includes as Exhibit "A" a Restated Farmout Agreement dated effective as of May 21, 2019, by and between Twin Bridges Resources, LLC and Charter Energy Partners, LLC, as Farmees, and Scout Energy Partners II, LP, as Farmor |

## Sklar Exploration Company L.L.C. - Rejected Contracts - Exhibit G

| Line # | Contract Description |
|---|---|
| 17 | Office Lease dated February 8, 1999, between SM Brell, LP, as Landlord, and Sklar Exploration Company L.L.C., as Tenant, as amended by that certain Lease Amendment No. 1 dated April 3, 2000, and that certain Lease Amendment No. 2 dated October 17, 2000, and that certain Third Amendment to Lease Agreement dated March 30, 200l, and that certain Fourth Amendment to Lease dated July 19, 2004, and that certain Fifth Amendment to Lease dated March 12, 2006, and that certain Sixth Amendment to Lease dated November 21, 2007, and that certain Seventh Amendment to Lease dated April 18, 2008, and that certain Eighth Amendment to Lease dated May 26, 2011, and that certain Ninth Amendment to Lease dated September 16, 2016, pursuant to which Landlord leased to Tenant certain premises in the building, Suite 1601, 1605, 1615 and 1620, known as the Louisiana Tower Office Building located at 401 Edwards Street, Shreveport, Louisiana 71101. |
| 18 | Office Lease dated April 3, 2013, between 5395 Pearl Parkway, LLC, as Landlord, and Sklar Exploration Company L.L.C., as Tenant, as amended by that certain First Amendment to Lease Agreement dated February 10, 2014, and that certain Second Amendment to Lease Agreement dated November 20, 2014, pursuant to which Landlord leased to Tenant certain premises in the building located at 5395 Pearl Parkway, Boulder, Colorado 80301. |
| 19 | Sublease Agreement dated December 14, 2018, by and between Sklar Exploration Company L.L.C., as Tenant, and Redwave Energy, Inc., as Subtenant, concerning a sublease of certain office space at 5395 Pearl Parkway, Suite 200, Boulder, CO 80301. |
| 20 | IADC Drilling Bid Proposal and Daywork Drilling Contract dated September 19, 2019, by and between Sklar Exploration Company L.L.C, as Operator, and Stoneham Drilling Corporation, as Contractor. |
| 21 | Confidential Employment Separation Agreement dated November 20, 2018, by and between David Barlow, an individual, Daboil Resources, L.C., Ansaben Trust, Sklar Exploration Company L.L.C., Sklarco L.L.C. and Howard F. Sklar, individually. |
| 22 | Letter Agreement dated September 30, 2019 regarding the Matchbox Prospect, San Jacinto County, Texas, by and between Davis Holdings, LP and Sklarco L.L.C., which includes as Exhibit B an Operating Agreement (AAPL Model Form 610-1982) dated September 30, 2019, by and between Davis Southern Operating Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators. |
| 23 | Paper Management Agreement dated October 22, 2014, by and between All Copy Products, Inc. and Sklar Exploration Company L.L.C, as amended on December 12, 2014 and February 27, 2015. |
| 24 | General Terms and Conditions Agreement, Lease Agreement, Management Agreement, Dry Lease Exchange Agreement and Side Letter Agreement dated May 1, 2019, by and between Sklar Transport L.L.C. and Flexjet, LLC. |

## Sklar Exploration Company L.L.C. - Rejected Contracts - Exhibit G

| Line # | Contract Description |
|--------|----------------------|
| 25 | Support.com Small Business Support Services Agreement dated October 22, 2013, by and between Support.com, Inc. and Sklar Exploration Company L.L.C. |
| 26 | Agreement dated April 1, 2020, by and between Enterprise Computing Services, LLC and Sklar Exploration Company L.L.C. |
| 27 | Various Ricoh printer leases |
| 28 | JOA (AAPL 610-1982) dated November 1, 2009, covering the Claude Hayes Unit, Willow Springs Field, Gregg County, TX, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 29 | Operating Agreement (AAPL Form 610-1989) covering the Bridge Creek Prospect  attached and made a part of as Exhibit "D-2" to that Participation Agreement dated effective as of July 1, 2014 covering the Mule Creek and Bridge Creek Prospects, Niobrara County, Wyoming, by and between Sklar Exploration Company L.L.C., as Operator, and G&H Production Company, LLC, et al., as Participants |
| 30 | Operating Agreement (AAPL Form 610-1989) covering the Mule Creek Prospect attached and made a part of as Exhibit "D-1" to that Participation Agreement dated effective as of July 1, 2014 covering the Mule Creek and Bridge Creek Prospects, Niobrara County, Wyoming, by and between Sklar Exploration Company L.L.C., as Operator, and G&H Production Company, LLC, et al., as Participants |
| 31 | Farmout Agreement dated effective as of July 15, 2016, by and between McCombs Energy, Ltd., as Farmor, and Sklarco L.L.C., as Farmee, covering a portion of Farmor's interest in the Mule Creek Prospect, Niobrara County, WY. |
| 32 | Farmout Agreement dated effective as of July 15, 2016, by and between McCombs Energy, Ltd., as Farmor, and Sklarco L.L.C., as Farmee, covering a portion of Farmor's interest in the Bridge Creek Prospect, Niobrara County, WY. |
| 33 | JOA (AAPL 610-1982) dated December 15, 2019, covering the E ½ of Section 35 and W ½ of Section 36 (Castleberry Prospect), Township 4 North, Range 10 East, Conecuh County, Alabama, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 34 | Participation Agreement covering the L-Pond Prospect (Conecuh County, AL) dated effective as of November 7, 2012, by and between Sklar Exploration Company, as Operator, and Sklarco L.L.C., et al., as Participants, which includes as Exhibit "E" an Operating Agreement (A.A.P.L. Model Form 610-1982) dated November 7, 2012 covering the L-Pond Prospect (Conecuh County, AL), by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators |

## Sklar Exploration Company L.L.C. - Rejected Contracts - Exhibit G

| Line # | Contract Description |
|---|---|
| 35 | JOA (AAPL 610-1982) attached and made part of as Exhibit "C" the Participation Agreement dated June 1, 2014 for the Molly Prospect covering lands described as the Northeast Quarter and the South Half of Section 1 of Township 22 North, Range 6 west; the East Half of Section 12 of Township 22 North, Range 6 West; the South Half of Section 4 of Township 22 North, Range 5 West; the South Half of Section 6 of Township 22 North, Range 5 West; and the north Half of Section 7, 8 and 9 of Township 22 North, Range 5 West, Claiborne Parish, Louisiana between AEEC II, L.L.C., Stephen O. Smith, McCombs Energy, Ltd and Sklarco L.L.C. |
| 36 | JOA (APPL 610-1982) attached and made a part of that certain Participation Agreement dated June 1, 2013 covering the Cardinal Prospect in Lafayette Parish, Louisiana more particularlay described by Exhibit "A" to the Agreement by and between Sklar Exploration Company L.L.C., Sklarco L.L.C., Cypress Drilling LLC, Barbara Callaway Trust IV, Wes-Tex Drilling Company, L.P. McCombs Energy, Ltd., and JJS Working Interests LLC |
| 37 | JOA dated March 1, 2016 covering the Chestnut Prospect in Township 13 North, Range 6 West, Section 1, 2, 11, 12, Natchitoches and Winn Parishes, Louisiana; Township 13 North, Range 5 West, Section 5, 6, 7, 8, Winn Parish, Louisiana; Township 14 north, Range 6 West, Section 36, Beinville Parish, Louisiana; Township 14 North, Range 5 West, Section 31, Beinville Parish, Louisiana (more particularly described on the plat designated as Exhibit "A-2") by and between Sklar Exploration Company, L.L.C., and Sklarco L.L.C., et al., Non-Operators |
| 38 | JOA (AAPL 610-1982) attached and made part of the Participation Agreement dated June 13, 2001 covering the Coulson Bayou Prospect in Township 4 North, Range 3 West, All of Sections 22, 23, 30 and 31, Wilkinson County, Mississippi by and between Frank David Exploration, Inc. Sklarco, L.L.C., Sklar Exploration Company L.L.C., and D&D Drilling & Exploration Inc. |
| 39 | JOA (AAPL 610-1982) attached and made part of as Exhibit "C" to the Participation Agreement dated October 1, 2011 covering the East Holly Prospect, Desoto Parish, Louisiana as shown on Exhibit "A" of the Agreement by and between Sklar Exploration Company L.L.C., Sklarco, L.L.C., McCombs Energy, Ltd., JJS Working Interests LLC, Fllet Howell, Kudzu Oil Properties, L.L.C., Tiembo Ltd., Marksco, L.L.C., and Bundero Investment Compan, L.L.C. |
| 40 | JOA (AAPL 610-1989) attached to and made a part of as Exhibit "C" to that certain Participation Agreement dated effective as of April 1, 2012, by and between Sklar Exploration Company L.L.C., Sklarco L.L.C., McCombs Energy, Ltd., Fleet Howell, Tiembo, Ltd., Fant Energy Limited, Kudzu Oil Properties, L.L.C., Marksco, L.L.C. and Bundero Investment Company, L.L.C., covering the Fryeburg Prospect, Webster and Bienville Parishes, Louisiana |

## Sklar Exploration Company L.L.C. - Rejected Contracts - Exhibit G

| Line # | Contract Description |
|---|---|
| 41 | JOA (AAPL 610-1982) attached and made a part of Exhibit "D" to the Participation Agreement Glade Bayou Prospect in Tensas Parish, Louisiana dated effective as of April l, 2013, by and between Sklar Exploration Company L.L.C., Sklarco L.L.C., McCombs Energy, Ltd., JJS Working Interests LLC, Tauber Exploration & Production Company, James Fleet Howell, Kudzu Oil Properties, L.L.C., Tiembo, Ltd., Marksco, L.L.C., Bundero Investment Company, L.L.C., Bennett Greenspan, Twin Energy LPI, Twin Energy LP2, Twin Energy LLC, Lucas Petroleum Group, Inc., Kirkpatrick Oil Company, Inc., Pickens Financial Group, LLC, Sklar Investments, LC, Sklar Wells Investments, LLC, Fair Oil Ltd., R. L. Ray, LTD., Flyers Oil & Gas LLC. and Sealy Family Oil and Gas Partnership I, L.P. |
| 42 | JOA (AAPL 610-1982) attached to and made a part of as Exhibit "E" to that Participation Agreement dated effective as of May 1, 2005 covering the Jacksonville Prospect in Cherokke County, Texas by and between Sklar Exploration Company L.L.C., Sklarco L.L.C., McCombs Energy, L.L.C., Anderson Exploration Energy Company, L.C., and Sajac Exploration Company, L.L.C. |
| 43 | JOA (AAPL 610-1982) attached to and made a part of as Exhibit "D" to that certain Participation Agreement for the South, Morton Prospect dated effective January I, 2006, by and between Yates Drilling Company, Trail Mountain, Inc., Sklar Exploration Company, L.L.C., Sklarco, L.L.C., Anderson Exploration Energy Company, L.C., Roundtree & Associates, Inc., N.E. Collins, L.L.C. and Dave Easom. |
| 44 | JOA (AAPL 610-1982) attached to and made a part of that Participation Agreement dated January 1, 2003 covering the Three Creeks Prospect by and between Sklar Exploration Company L.L.C., Sklarco L.L.C., Jura-Search, Inc., Oolite Investments, Inc., L. B. Jefcoat and Company, Frank A. Perkins, Bayou La Croix L.L.C., Delta-T Geophysical Consulting, Inc. and George Marodis covering lands located in Union County, Arkansas. |
| 45 | JOA (AAPL 610-1982) attached to and made a part of that certain Participation Agreement (West Starks Dome Prospect) dated effective as of April l, 2013, by and between Sklar Exploration Company L.L.C., Sklarco L.L.C., McCombs Energy, Ltd., JJS Working Interests LLC, Tauber Exploration & Production Company, Fleet Howell, Kudzu Oil Properties, L.L.C., Tiembo, Ltd., Marksco, L.L.C., Bundero Investment Company, L.L.C., Bennett Greenspan, Twin Energy LP!, Twin Energy LP2, Twin Energy LLC, Lucas Petroleum Group, Inc., Kirkpatrick Oil Company, Inc., Sklar Investment, LLC, and Sklar Wells Investments, LLC. |
| 46 | JOA (AAPL 610-1982) attached to and made a part of that certain Participation Agreement dated effective as of October I, 2011 covering the West Uriah Prospect in Monrow County, Alabama by and between Sklar Exploration Company L.L.C., Sklarco L.L.C, McCombs Energy, Ltd., Fant Energy Limited, Verado Oil and Gas Corporation, Advanced Oil and Gas Co., JJS Working Interests LLC, Fleet Howell, Sugar Creek Producing Company, L.L.C., Kudzu Oil Properties, L.L.C., Tiembo, Ltd., Marksco, L.L.C., Teekell Oil & Gas, Inc., Dickson Oil & Gas, L.L.C. and Bundero Investment Company, L.L.C. |

## Sklar Exploration Company L.L.C. - Rejected Contracts - Exhibit G

| Line # | Contract Description |
|---|---|
| 47 | JOA (AAPL 610-1989) dated March 1, 2012, covering approximately 1,073 acres situated in Section 67, Township 16 South Range 19 East and Section 37, Township 16 South Range 20 East, Lafourche Parish, Louisiana, by and between Sklar Exploration Company, L.L.C., as Operator, and Maple Leaf Exploration LP, et al, as Non-Operators |
| 48 | Participation Agreement dated effective as of July 1, 2014 covering the Mule Creek and Bridge Creek Prospects, Niobrara County, Wyoming, by and between Sklar Exploration Company L.L.C., as Operator, and G&H Production Company, LLC, et al., as Participants, which includes as Exhibit "D-1" an Operating Agreement (AAPL 610-1989) dated July 1, 2014 covering the Mule Creek Prospect and as Exhibit "D-2" an Operating Agreement (AAPL Form 610-1989) covering the Bridge Creek Prospect |
| 49 | First Amendment to Participation Agreement (Mule Creek & Bridge Creek Prospects) dated effective January 1, 2015, by and between Sklar Exploration Company L.L.C., as Operator, and G&H Production Company, LLC, et al., as Participants |
| 50 | Purchase and Sale Agreement dated effective as of March 10, 2015 covering the Mule Creek and Bridge Creek Prospects, Niobrara County, Wyoming, by and between Sklarco L.L.C., as Seller, and McCombs Energy, LTD., et al., as Buyers |
| 51 | Participation Agreement dated effective as of January 23, 2015 covering the Brewton Prospect, Escambia County, Alabama, by and between Sklar Exploration Company L.L.C., as Operator, and Rose Hill Exploration LLC, et al., as Participants, which includes as Exhibit "D" an Operating Agreement (AAPL Form 610-1982) dated January 23, 2015, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 52 | Letter Agreement dated March 6, 2015 amending the Brewton Prospect Participation Agreement and JOA, by and between Sklar Exploration Company L.L.C., as Operator, and Rose Hill Exploration, LLC, et al., as Participants |
| 53 | Second Amendment to Brewton Prospect Participation Agreement and JOA dated effective as of January 23, 2015, by and between Sklar Exploration Company L.L.C., as Operator, and Rose Hill Exploration, LLC, et al., as Participants |
| 53 | Farmout Agreement dated effective as of August 1, 2016, by and between McCombs Energy, Ltd., as Farmor, and Sklarco L.L.C., as Farmee, covering a portion of Farmor's interest in the Brewton Prospect, Escambia County, AL. |

## Sklar Exploration Company L.L.C. - Rejected Contracts - Exhibit G

| Line # | Contract Description |
|--------|----------------------|
| 54 | Participation Agreement covering the Castleberry Prospect (Conecuh County, AL) dated effective as of November 7, 2012, by and between Sklar Exploration Company, as Operator, and Sklarco L.L.C., et al., as Participants, which includes as Exhibit "E" an Operating Agreement (A.A.P.L. Model Form 610-1982) dated November 7, 2012 covering the Castleberry Prospect (Conecuh County, AL), by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 54 | Participation Sales Agreement covering the North Beach Prospect (Conecuh County, AL) dated effective as of November 15, 2004, by and between Craft Exploration Company L.L.C., Sklar Exploration Company L.L.C. and Sklarco L.L.C., which includes as Exhibit "I" an Operating Agreement (AAPL Form 610-1982) dated November 15, 2004, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C. and Craft Exploration Company L.L.C., as Non-Operators |
| 55 | JOA (AAPL 610-1982) dated July 1, 2008, covering NW/4 Section 17, T4N, R13E, Conecuh County, AL (Craft Mack 17-4 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Midroc Operating Company, et al., as Non-Operators |
| 55 | Unit Agreement dated March 20, 2014 concerning operation of the Little Cedar Creek Oil Unit II, Little Cedar Creek Field, Conecuh County, AL, by and between Sklar Exploration Company L.L.C., as Unit Operator, and the various working interest, royalty, and overriding royalty interest owners |
| 56 | Unit Operating Agreement dated March 20, 2014 concerning operation of the Little Cedar Creek Oil Unit II, Little Cedar Creek Field, Conecuh County, AL, by and between Sklar Exploration Company L.L.C., as Unit Operator, and McCombs Energy, Ltd., et al., as Non-Operators |
| 56 | Gas Purchase Contract dated September 23, 2014, by and between Sklar Exploration Company L.L.C., in its capacity as Operator of the Little Cedar Creek Oil Unit II, as Buyer, and the North Beach Prospect Working Interest Owners, as Sellers |
| 57 | Gas Purchase Contract dated September 23, 2014, by and between Sklar Exploration Company L.L.C., in its capacity as Operator of the Little Cedar Creek Oil Unit II, as Buyer, and the Escambia Prospect Working Interest Owners, as Sellers |
| 57 | Gas Purchase Contract dated April 6, 2015, by and between Sklar Exploration Company L.L.C., in its capacity as Operator of the Fishpond Oil Unit, as Buyer, and the Shipps Creek Prospect Working Interest Owners, as Sellers |
| 58 | Unit Agreement dated October 1, 2016 concerning operation of the Little Cedar Creek Oil Unit IV, Little Cedar Creek Field, Conecuh County, AL, by and between Sklar Exploration Company L.L.C., as Unit Operator, and the various working interest, royalty, and overriding royalty interest owners |

## Sklar Exploration Company L.L.C. - Rejected Contracts - Exhibit G

| Line # | Contract Description |
|---|---|
| 58 | Unit Operating Agreement dated October 1, 2016 concerning operation of the Little Cedar Creek Oil Unit IV, Little Cedar Creek Field, Conecuh County, AL, by and between Sklar Exploration Company L.L.C., as Unit Operator, and McCombs Energy, Ltd., et al., as Non-Operators |
| 59 | Participation Agreement covering the Escambia Prospect (Escambia and Conecuh Counties, AL), by and between Sklar Exploration Company, as Operator, and Sklarco L.L.C., et al., as Participants, which includes as Exhibit "D" an Operating Agreement (A.A.P.L. Model Form 610-1982) dated November 1, 2006 covering the Escambia Prospect (Escambia and Conecuh Counties, AL), by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 59 | Amendment to Operating Agreement dated effective as of November 1, 2011 covering the Escambia Prospect (Escambia and Conecuh Counties, Alabama), by and between Sklar Exploration Company L.L.C., et al., which Amendment extended the term of the AMI and added additional lands to the Contract Area and AMI |
| 60 | JOA (AAPL 610-1982) dated March 1, 2011, covering NE/4 Section 31, T4N, R13E, Conecuh County, AL (Mary-Mack 31-2 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Midroc Operating Company, et al., as Non-Operators |
| 60 | Farmout Agreement dated February 15, 2011, covering the SE/4 Section 29, T4N, R13E, Conecuh County, AL (Thomasson 29-10 #1), by and between Anderson Exploration Energy Company, L.C., et al., as Farmor, and Sklar Exploration Company L.L.C., as Farmee |
| 61 | JOA (AAPL 610-1982) dated February 15, 2011, covering the SE/4 Section 29, T4N, R13E, Conecuh County, AL (Thomasson 29-10 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Midroc Operating Company, et al., as Non-Operators |
| 61 | JOA (AAPL 610-1982) dated May 1, 2011, covering the SE/4 Section 35, T4N, R12E, Conecuh County, AL (CCL&T 35-10 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Fletcher Petroleum Corp., et al., as Non-Operators |
| 62 | JOA (AAPL 610-1982) dated July 1, 2011, covering the NE/4 Section 30, T4N, R13E, Conecuh County, AL (Ralls 30-8 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Pruet Production Co., et al., as Non-Operators |
| 62 | JOA (AAPL 610-1982) dated September 15, 2011, covering the NE/4 Section 30, T4N, R13E, Conecuh County, AL (Ralls 30-8 #1), by and between Sklar Exploration Company L.L.C., as Operator, and BSAP I, Inc., et al., as Non-Operators |

## Sklar Exploration Company L.L.C. - Rejected Contracts - Exhibit G

| Line # | Contract Description |
|--------|----------------------|
| 63 | JOA (AAPL 610-1982) dated December 7, 2011, covering NW/4 Section 29, T4N, R13E, Conecuh County, AL (Boothe & Casey 29-6 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C. and BSAP I, Inc., as Non-Operators |
| 63 | JOA (AAPL 610-1982) dated December 7, 2011, covering NW/4 Section 29, T4N, R13E, Conecuh County, AL (Boothe & Casey 29-6 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., Pruet Production Co., and Midroc Operating Company and others, as Non-Operators |
| 64 | JOA (AAPL 610-1982) dated February 1, 2012, covering NE/4 Section 33, T4N, R12E, Conecuh County, AL (CCL&T 33-2 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Pruet Production Co., et al., as Non-Operators |
| 64 | JOA (AAPL 610-1982) dated March 15, 2012, covering NE/4 Section 34, T4N, R12E, Conecuh County, AL (Grady 34-8 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Pruet Production Co., et al., as Non-Operators |
| 65 | JOA (AAPL 610-1982) dated June 1, 2012, covering NW/4 Section 34, T4N, R12E, Conecuh County, AL (Jones 34-4 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Texar Exploration, LLC, et al., as Non-Operators |
| 65 | JOA (AAPL 610-1982) dated March 15, 2012, covering NW/4 Section 35, T4N, R12E, Conecuh County, AL (CCL&T 35-5 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Avery Producing, LLC, et al., as Non-Operators |
| 66 | JOA (AAPL 610-1982) dated May 1, 2012, covering SE/4 Section 34, T4N, R12E, Conecuh County, AL (Grady 34-10 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Pruet Production Co., et al., as Non-Operators |
| 66 | JOA (AAPL 610-1982) dated July 13, 2012, covering NW/4 Section 4, T3N, R12E, Escambia County, AL (CCL&T 4-3 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Pruet Production Co., et al., as Non-Operators |
| 67 | JOA (AAPL 610-1982) dated January 10, 2013, covering SE/4 Section 4, T4N, R13E, Conecuh County, AL (CCL&T 32-9 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Pruet Production Co., et al., as Non-Operators |
| 67 | JOA (AAPL 610-1982) dated April 1, 2013, covering SW/4 Section 36, T4N, R12E, Conecuh County, AL (Kennedy 36-12 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Pruet Production Co., et al., as Non-Operators |

## Sklar Exploration Company L.L.C. - Rejected Contracts - Exhibit G

| Line # | Contract Description |
|--------|---------------------|
| 68 | JOA (AAPL 610-1982) dated February 17, 2014, covering SW/4 Section 33, T4N, R13E, Conecuh County, AL (Thomasson 33-12 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Pruet Production Co., et al., as Non-Operators |
| 68 | JOA (AAPL 610-1982) dated August 1, 2014, covering SE/4 Section 2, T3N, R12E, Escambia County, AL (CCL&T 2-9 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Central Petroleum, Inc., et al., as Non-Operators |
| 69 | JOA (AAPL 610-1982) dated September 1, 2014, covering NW/4 Section 3, T3N, R13E, Conecuh County, AL (CCL&T 3-4 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Fletcher Petroleum Corp., et al., as Non-Operators |
| 69 | JOA (AAPL 610-1982) dated August 15, 2014, covering NE/4 Section 4, T3N, R13E, Conecuh County, AL (CCL&T 4-1 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Fletcher Petroleum Corp., et al., as Non-Operators |
| 70 | JOA (AAPL 610-1982) dated February 1, 2011, covering SE/4 Section 30, T4N, R13E, Conecuh County, AL (Mary Mack 30-15 #1), by and between Midroc Operating Company, as Operator, and Sklarco L.L.C., et al. |
| 70 | JOA (AAPL 610-1982) dated March 2, 2011, covering SW/4 Section 29, T4N, R13E, Conecuh County, AL (Salter 29-13 #1), by and between Midroc Operating Company, as Operator, and Sklarco L.L.C., as Agent Nominee for the Sklar Parties, et al. |
| 71 | JOA (AAPL 610-1982) dated July 15, 2011, covering NE/4 Section 29, T4N, R13E, Conecuh County, AL (Boothe & Casey 29-8 #1), by and between Pruet Production Co., as Operator, and Sklarco L.L.C. and BSAP I, Inc., as Non-Operators |
| 71 | JOA (AAPL 610-1982) dated July 15, 2011, covering NE/4 Section 29, T4N, R13E, Conecuh County, AL (Boothe & Casey 29-8 #1), by and between Pruet Production Co., as Operator, and Sklarco L.L.C., as Agent Nominee for the Sklar Parties, et al. |
| 72 | Unit Agreement dated May 11, 2015 concerning operation of the Fishpond Oil Unit, Fishpond Field, Escambia County, AL, by and between Sklar Exploration Company L.L.C., as Unit Operator, and the various working interest, royalty, and overriding royalty interest owners |
| 72 | Unit Operating Agreement dated May 11, 2015 concerning operation of the Fishpond Oil Unit, Fishpond Field, Escambia County, AL, by and between Sklar Exploration Company L.L.C., as Unit Operator, and McCombs Energy, Ltd., et al., as Non-Operators |

## Sklar Exploration Company L.L.C. - Rejected Contracts - Exhibit G

| Line # | Contract Description |
|---|---|
| 73 | Gas Purchase Contract dated August 27, 2015, by and between Sklar Exploration Company L.L.C., in its capacity as Operator of the Fishpond Oil Unit, as Buyer, and the North Beach Prospect Working Interest Owners, as Sellers |
| 73 | Gas Purchase Contract dated August 27, 2015, by and between Sklar Exploration Company L.L.C., in its capacity as Operator of the Fishpond Oil Unit, as Buyer, and the Escambia Prospect Working Interest Owners, as Sellers |
| 74 | Gas Purchase Contract dated August 27, 2015, by and between Sklar Exploration Company L.L.C., in its capacity as Operator of the Fishpond Oil Unit, as Buyer, and the Shipps Creek Prospect Working Interest Owners, as Sellers |
| 74 | JOA (AAPL 610-1982) dated August 1, 2015, covering Sections 1 & 2, T13N, R7W, Natchitoches Parish, LA (Rushing Et Al #2), by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 75 | JOA (AAPL 610-1982) dated January 1, 2016 (East Castor Prospect), covering certain property in, T14N, R7W, Bienville Parish, LA (Echo Papa 10-10 #1 and JB Evans 11-4 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 75 | Letter Agreement dated April 29, 2016 regarding Amendment East Castor Prospect JOA, by and between Sklar Exploration Company L.L.C., as Operator, and AEEC II, LLC, et al., as Non-Operators |
| 76 | Participation Agreement covering the Red River Prospect (Caddo & Bossier Parishes, LA) dated effective as of April 1, 2006, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Participants, which includes as Exhibit "E" an Operating Agreement (AAPL Form 610-1982) dated April 1, 2006, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 76 | Partial Sublease of Oil, Gas and Mineral Leases dated effective as of February 1, 2008, by and between Sklarco L.L.C., as Sublessor, and Petrohawk Properties, L.P., as Sublessee, covering rights below the Hosston Formation in certain oil, gas and mineral leases |
| 77 | Letter Agreement dated December 3, 2010, by and between Petrohawk Properties, LP, as Assignor, and Sklarco L.L.C., as Assignee, concerning the assignment of certain Replacement Leases and Additional Leases insofar as the same cover and relate to rights above the Hosston Formation |
| 77 | JOA (AAPL 610-1982) dated February 15, 1999, covering S/2 of Section 16 and N/2 of Section 21, T18N, R7W, Bienville Parish, LA (Willamette 21 #1), by and between Brammer Engineering, Inc., as Operator, and Wheless TDL Exploration Company, L.L.C., et al., as Non-Operators |

## Sklar Exploration Company L.L.C. - Rejected Contracts - Exhibit G

| Line # | Contract Description |
|---|---|
| 78 | Participation Agreement dated effective as of December 1, 2012 covering the West Bryceland Saddle Prospect, by and between AEEC II, L.L.C., Sklar Exploration Company L.L.C., Sklarco L.L.C., and Marshall-Wuellner, Inc., which includes as Exhibit "D" an Operating Agreement (AAPL Form 610-1982) dated December 1, 2012, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 78 | JOA (AAPL 610-1982) dated May 26, 2004, covering Section 28, T18N, R6W, Bienville Parish, LA (Cindy Lou Cloyd 28 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 79 | JOA (AAPL 610-1982) dated February 1, 2008, covering Section 34, T19N, R6W, Bienville & Claiborne Parishes, LA (CS Shaffer 34 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 79 | JOA (AAPL 610-1982) dated August 15, 2007, covering Section 33, T18N, R6W, Bienville Parish, LA (JC Merritt #1), by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 80 | JOA (AAPL 610-1982) dated May 1, 2009, covering Section 33, T19N, R6W, Claiborne Parish, LA (Kimberly Lay 33 #1), by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 80 | Operating Agreement of West Arcadia Pipeline L.L.C. dated effective as of July 20, 2009, by and between Sklarco L.L.C., McCombs Energy, LTD., and Tensas Delta Exploration Company, LLC, as Members of the Company |
| 81 | Participation Agreement dated effective as of March 1, 2013 covering the Oakhay Creek Prospect, Smith County, Mississippi, by and between Sklar Exploration Company L.L.C., as Operator, and Resource Ventures, LLC, et al., as Participants, which includes as Exhibit "C" an Operating Agreement (AAPL Form 610-1989) dated June 1, 2011, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 81 | Participation Agreement dated effective as of June 30, 2013 covering the Oakhay Creek Prospect, Smith County, Mississippi, by and between Sklar Exploration Company L.L.C., as Operator, and Petro-Chem Operating Co., Inc., et al., as Participants, which includes as Exhibit "C" an Operating Agreement (AAPL Form 610-1989) dated June 1, 2011, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators |

## Sklar Exploration Company L.L.C. - Rejected Contracts - Exhibit G

| Line # | Contract Description |
|--------|----------------------|
| 82 | Participation Agreement dated effective as of June 30, 2013 covering the Oakhay Creek Prospect, Smith County, Mississippi, by and between Sklar Exploration Company L.L.C., as Operator, and Tiembo, LTD., et al., as Participants, which includes as Exhibit "C" an Operating Agreement (AAPL Form 610-1989) dated June 1, 2011, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 82 | JOA dated April 17, 1997, covering Sections 19-22, 25-29 and 36-41, T17N, R4E, and Sections 2-7, T16N, R4E, Warren County, Mississippi (Feld Heirs #1 and Feld Heirs #3), by and between Stroud & Luke Production Company, as Operator, and Robert A. Stroud LLC, et al., as Non-Operators |
| 83 | Participation Agreement dated August 27, 2012 covering the Summit Extension Prospect, by and between Par Minerals Corporation, as Operator, and Sklarco L.L.C., as Participant, which includes as Exhibit "A" an Operating Agreement (AAPL Form 610-1989) dated August 27, 2012, by and between Par Minerals Corporation, as Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 83 | First Modification of Participation Agreement dated effective as of June 1, 2015 covering the Summit Extension Prospect and Southwest Summit Prospects, by and between Par Minerals Corporation, as Operator, and Sklarco L.L.C., as Participant |
| 84 | Participation and Exploration Agreement dated effective as of October 1, 2013 covering the West Tyler 3D Seismic Prospect, Smith County, Texas, by and between Sklar Exploration Company L.L.C., as Operator, and McCombs Energy, LTD., et al., as Participants, which includes as Exhibit "D" an Operating Agreement (AAPL Form 610-1989) dated October 1, 2013 covering the Swan Prospect, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 84 | Letter Agreement dated January 7, 2014 regarding amendments to West Tyler 3D Participation Agreement and JOA, by and between Sklar Exploration Company L.L.C., as Operator, and McCombs Energy, LTD., et al., as Non-Operators |
| 85 | Letter Agreement dated October 30, 2014 regarding amendments to West Tyler 3D Participation Agreement and JOA, by and between Sklar Exploration Company L.L.C., as Operator, and McCombs Energy, LTD., et al., as Non-Operators |
| 85 | Participation Agreement dated effective as of March 1, 2013 covering the South Woodlawn Prospect, Marion County, Texas, by and between Sklar Exploration Company L.L.C., as Operator, and McCombs Energy, LTD., et al., as Participants, which includes as Exhibit "D" an Operating Agreement (AAPL Form 610-1989) dated March 1, 2013, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators |

## Sklar Exploration Company L.L.C. - Rejected Contracts - Exhibit G

| Line # | Contract Description |
|---|---|
| 86 | Letter Agreement dated May 23, 2013 regarding amendments to Participation Agreement and JOA (South Woodlawn Prospect), Marion County, Texas, by and between Sklar Exploration Company L.L.C., as Operator, and McCombs Energy, LTD., et al., as Non-Operators |
| 86 | Farmout Agreement dated January 7, 2014, by and between Penn Virginia Oil & Gas, L.P., as Farmor, and Sklar Exploration Company L.L.C., as Farmee covering certain oil, gas and mineral leases located in Marion County, TX |
| 87 | Letter Agreement dated March 14, 2014, by and between Sklar Exploration Company L.L.C., as Farmee and Penn Virginia Oil & Gas, L.P., as Farmor, amended certain terms in the Farmout Agreement |
| 87 | Farmout Agreement dated effective as of June 1, 2016, by and between McCombs Energy, Ltd., as Farmor, and Sklarco L.L.C., as Farmee, covering a portion of Farmor's interest in the CCL&T 3-7 #1 Well, Escambia Prospect, Conecuh and Escambia Counties, AL. |
| 88 | Farmout Agreement dated effective as of June 1, 2016, by and between McCombs Energy, Ltd., as Farmor, and Sklarco L.L.C., as Farmee, covering all of Farmor's interest in the Bodcaw 3D Project, Bienville and Natchitoches Parishes, LA. |
| 88 | Farmout Agreement dated effective as of June 1, 2016, by and between McCombs Energy, Ltd., as Farmor, and Sklarco L.L.C., as Farmee, covering a portion of Farmor's interest in the West Tyler 3D Seismic Prospect, Smith County, TX. |
| 89 | Office Lease Agreement dated April 26, 2018, by and between Brewton Area Properties, LLC, as Lessor, and Sklar Exploration Company L.L.C., as Lessee, pursuant to which Lessor leased to Lessee the office building located at 319 Belleville Avenue, Brewton, Alabama. |
| 89 | Unit Agreement dated November 1, 2018 concerning operation of the Southwest Brooklyn Oil Unit, Brooklyn Field, Conecuh & Escambia Counties, AL, by and between Sklar Exploration Company L.L.C., as Unit Operator, and the various working interest, royalty, and overriding royalty interest owners |
| 90 | Unit Operating Agreement dated November 1, 2018 concerning operation of the Southwest Brooklyn Oil Unit, Brooklyn Field, Conecuh & Escambia Counties, AL, by and between Sklar Exploration Company L.L.C., as Unit Operator, and McCombs Energy, Ltd., et al., as Non-Operators |
| 90 | Unit Agreement dated November 1, 2018 concerning operation of the Southeast Brooklyn Oil Unit II, Brooklyn Field, Conecuh & Escambia Counties, AL, by and between Sklar Exploration Company L.L.C., as Unit Operator, and the various working interest, royalty, and overriding royalty interest owners |

## Sklar Exploration Company L.L.C. - Rejected Contracts - Exhibit G

| Line # | Contract Description |
|---|---|
| 91 | Unit Operating Agreement dated November 1, 2018 concerning operation of the Southeast Brooklyn Oil Unit, Brooklyn Field, Conecuh & Escambia Counties, AL, by and between Sklar Exploration Company L.L.C., as Unit Operator, and McCombs Energy, Ltd., et al., as Non-Operators |
| 91 | Unit Agreement dated November 1, 2018 concerning operation of the Northwest Brooklyn Oil Unit II, Brooklyn Field, Conecuh & Escambia Counties, AL, by and between Pruet Production Co., as Unit Operator, and the various working interest, royalty, and overriding royalty interest owners |
| 92 | Unit Operating Agreement dated November 1, 2018 concerning operation of the Northwest Brooklyn Oil Unit, Brooklyn Field, Conecuh & Escambia Counties, AL, by and between Pruet Production Co., as Unit Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 92 | Unit Agreement dated November 1, 2018 concerning operation of the Northeast Brooklyn Oil Unit II, Brooklyn Field, Conecuh & Escambia Counties, AL, by and between Pruet Production Co., as Unit Operator, and the various working interest, royalty, and overriding royalty interest owners |
| 93 | Unit Operating Agreement dated November 1, 2018 concerning operation of the Northeast Brooklyn Oil Unit, Brooklyn Field, Conecuh & Escambia Counties, AL, by and between Pruet Production Co., as Unit Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 93 | JOA (AAPL 610-1982) dated May 15, 2018, covering the SE/4 of Section 11 (Anderson Johnson 11-9 #1 well), Township 3 North, Range 13 East, Conecuh County, Alabama, by and between Fletcher Petroleum Corp., as Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 94 | Asset Transfer Agreement dated March 1, 2020, by and between Plains Gas Solutions, LLC and Sklar Exploration Company L.L.C., concerning the transfer of ownership of the North Beach and Abbyville Gas Plants, Conecuh County, Alabama |
| 94 | Assignment and Assumption Agreement dated March 1, 2020, by and between Plains Gas Solutions, LLC and Sklar Exploration Company L.L.C., concerning the assignment of certain rights and obligations relating to the North Beach and Abbyville Gas Plants, Conecuh County, Alabama |
| 95 | Bill of Sale dated March 1, 2020, by and between Plains Gas Solutions, LLC and Sklar Exploration Company L.L.C., concerning the transfer of ownership of the North Beach and Abbyville Gas Plants, Conecuh County, Alabama |
| 95 | Custody Transfer Certificate dated March 1, 2020, by and between Plains Gas Solutions, LLC and Sklar Exploration Company L.L.C., concerning the transfer of custody of certain NGL and condensate products at the North Beach and Abbyville Gas Plants, Conecuh County, Alabama |

## Sklar Exploration Company L.L.C. - Rejected Contracts - Exhibit G

| Line # | Contract Description |
|--------|----------------------|
| 96 | Gas Contract Compression Agreement dated as of April 25, 2012 between Kodiak Gas Services, LLC and Plains Gas Solutions, LLC, as amended (Unit 005) |
| 96 | Gas Contract Compression Agreement dated as of May 1, 2012 between Kodiak Gas Services, LLC and Plains Gas Solutions, LLC, as amended (Unit 009) |
| 97 | Gas Contract Compression Agreement dated as of January 5, 2012 between Kodiak Gas Services, LLC and Plains Gas Solutions, LLC, as amended (Unit 0011) |
| 97 | Gas Contract Compression Agreement dated as of January 30, 2012 between Kodiak Gas Services, LLC and Plains Gas Solutions, LLC, as amended (Unit 0012) |
| 98 | Gas Contract Compression Agreement dated as of January 30, 2012 between Kodiak Gas Services, LLC and Plains Gas Solutions, LLC, as amended (Unit 0013) |
| 98 | Compression Operations Agreement, dated March 2, 2018, between Kodiak Gas Services, LLC and Plains Gas Solutions, LLC and/or affiliates (Unit #5011) |
| 99 | Gas Contract Compression Agreement dated as of January 5, 2012, between Kodiak Gas Services, LLC and CDM Max, LLC (Unit #11011) |
| 99 | Gas Contract Compression Agreement dated as of January 30, 2012 between Kodiak Gas Services, LLC and Plains Gas Solutions, LLC (Unit #12012) |
| 100 | Gas Contract Compression Agreement dated as of January 30, 2012 between Kodiak Gas Services, LLC and Plains Gas Solutions, LLC (Unit #12013) |
| 100 | Gas Contract Compression Agreement dated as of May 1, 2012 between Kodiak Gas Services, LLC and Plains Gas Solutions, LLC, as amended (Unit 0006) |
| 101 | Gas Contract Compression Agreement dated as of May 1, 2012 between Kodiak Gas Services, LLC and Plains Gas Solutions, LLC, as amended (Unit 0007) |
| 101 | Gas Contract Compression Agreement dated as of May 1, 2012 between Kodiak Gas Services, LLC and Plains Gas Solutions, LLC, as amended (Unit 0008) |
| 102 | Gas Contract Compression Agreement dated as of May 1, 2012 between Kodiak Gas Services, LLC and Plains Gas Solutions, LLC (Unit #12-0006) |

## Sklar Exploration Company L.L.C. - Rejected Contracts - Exhibit G

| Line # | Contract Description |
|---|---|
| 102 | Gas Contract Compression Agreement dated as of May 1, 2012 between Kodiak Gas Services, LLC and Plains Gas Solutions, LLC (Unit #12-0007) |
| 103 | Gas Contract Compression Agreement dated as of May 1, 2012 between Kodiak Gas Services, LLC and Plains Gas Solutions, LLC (Unit #12-0008) |
| 103 | Gas Contract Compression Agreement dated as of May 1, 2012 between Kodiak Gas Services, LLC and Plains Gas Solutions, LLC (Unit #12-0009) |
| 104 | Master Agreement dated April 17, 2012, by and between P2ES Holdings, LLC, and Sklar Exploration Company L.L.C, as amended by Tobin All-Access Order Form dated April 30, 2018. |
| 104 | GPIS Software Subscription Agreement dated February 26, 2020, by and between Exigent Information Solutions, LLC and Sklar Exploration Company L.L.C. |
| 105 | Exploration Agreement dated effective February 1, 2007 covering lands located in Township 18 North, Range 7 West, Beinville Parish, Louisiana less and except Sections 21, 22, 27 and 30 of said Township, and in Sections 15, 16, 21, 22, 27, 28, 32, 33, 34 and 35, Township 19 North, Range 6 West, Claiborne parish, Louisiana by and between Sklar Exploration Company L.L.C., Sklarco L.L.C., McCombs Energy, Ltd., and Tensas Delta Exploration Company LLC |
| 105 | Exploration Agreement dated October 1, 2017 covering the Hunter Benn 3D Project (the area identified and leveled "3D Shoot Area" on the plat attached as Exhibit "A") between Pruet Oil Company LLC, Crain Energy, Ltd., James Resources, Inc., JJS Working Interests, LLC, McCombs Energy, Ltd., TDX Energy, LLC, Pentad Energy, LLC, Hanson Operating Co., In., Babe Development Company, LLC, GSC Exploration LLC (as successor in interest to GulfSOuth Capital, Inc.), Sklarco L.L.C. and Justiss Oil Company, Inc. |
| 106 | JOA (AAPL 910-1982) dated December 1, 2015 covering the Findley 2-5 in the Northwest Quarter of Section 2, Township 3 North, Range 13 East, Conecuh county, Alabama by and between Fletcher Petroleum Corp., as Operator and Sklarco L.L.C., et al., Non-Operators |
| 106 | JOA (AAPL 610-1982) attached and made part of as Exhibit "D" to the Participation Agreement dated April 1, 2002 covering the Martin Prospect in Sections 1, 2, 10 and 11, Township 13 North, Range 9 West, Red River Parish, Louisiana (as identified in Exhibit "A")by and between Sklar Exploration, L.L.C., Sklarco L.L.C., Mike Rogers Drilling Co., Inc., Hilliard Acquisitions II L.L.C., and Flournoys Family Properties Ltd. |
| 107 | JOA (AAPL 610-1982) attached to and made part of as Exhibit "E" to the Participation Agreement dated January 25, 2006 covering the Moncrief Prospect in Avoyelles and St. Landry Parishes, Louisiana (as identifieed in Exhibit "A-1") by and between Williams Petroleum, LLC, Yates Drilling Company, Sklar Exploration Company L.L.C., Sklarco L.L.C., McCombs Energy, Ltd., Anderson-Drake Partners, Inc., Dudley Hughes, LLC, and David New Drilling Company, Inc. |

## Sklar Exploration Company L.L.C. - Rejected Contracts - Exhibit G

| Line # | Contract Description |
|--------|----------------------|
| 107 | JOA (AAPL 610-1982) attached to and made a part of as Exhibit "D" to the Participation Agreement dated May 14, 2002 covering the N E Thompsonville Prospect in Webb County, Texas (as shown on Exhibit "A" to the Agreement) by and between Skyline Energy, L.L.C., and Sklarco L.L.C. |
| 108 | JOA (AAPL 610-1982) dated June 1, 2016 covering the North Saline Prospect in West 1/2 Section 3, 4, East 1/2 Section 5, 9, Township 14 north, Range 6 West; South 1/2 Section 33, Township 15 North, Range 6 West, Beinville Parish, Louisiana (as shown on Exhibit "A" to the Agreement") by and between Sklar Exploration Company, L.L.C., and Sklarco L.L.C., et al., Non-Operators |
| 108 | Joint Operating Agreement dated July 1, 2016, by and between Fletcher Petroleum Corp, an Alabama corporation, as Operator, and the signatory party or parties to the Joint Operating Agreement other than Operator, hereinafter referred to individually as "Non-Operator", and collectively as "Non-Operators" for the Pate 3-9 Well. |
| 109 | JOA (AAPL 610-1982) attached to and made a part of as Exhibit "D" to that certain Letter Agreement dated effective as of December 1, 2016 regarding the Silver Creek Prospect, Smith County, Texas, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Participants |
| 109 | Operating Agreement dated February 15, 1999, by and between Brammer Engineering, Inc., OPERATOR, and Wheless 1DL Exploration Company, L.L.C., et al, NON-OPERATOR, covering lands in Gibsland Prospect, Bienville Parish, Louisiana. |
| 110 | JOA (AAPL 610-1982) dated November 29, 2005, covering All lands, oil and gas leasehold interest and oil and gas interest lying within the South Half of the South Half of Section 25,the South Half of the South Half of Section 26, the South Half of the South Half of Section 27, All of Sections 34, 35, and 36, Township 6 North Range 5 East; All of Sections 1, 2, 3, 10, 11, and 12, Township 5 North Range 5 East; South Half of the Southwest Quarter of Section 30 and the West Half of Section 31, Township 6 North, Range 6 East; the West Half of Section 6 and the West Half of Section 7, Township 5 North, Range 6 EastMonroe County, AL, by and between Spooner Petroleum Company, as Operator, and Sklarco L.L.C., et al., as Non-Operators |
| 110 | JOA (AAPL 610-1989) dated August 1, 2011, covering Sections 4,5,6, and 9, Township 16 North, Range 8 West; Sections 31 and 32, Township 17 North, Range 8 West, Bienville Parish, Louisiana, by and between Sklar Exploration Company, L.L.C., as Operator, and Sklarco L.L.C. and D.L. Kelley Interests, as Non-Operators |
| 111 | JOA (AAPL 610-1982) dated January 10, 2013, covering the Southeast Quarter of Section 32, Township 4 North Range 13 East, Conecuh County, Alabama, by and between Sklar Exploration Company, L.L.C., as Operator, and Sklarco, L.L.C., et al, as Non-Operators |
| 111 | JOA (AAPL 610-1989) dated August 7, 2014, covering the Southwest Quarter of the Northeast Quarter of Section 16, Township 17 South, Range 14 West, Union County, Arkansas, by and between Quanico Oil and Gas, Inc., as Operator, and Sklarco, LLC, as Non-Operator |

## Sklar Exploration Company L.L.C. - Rejected Contracts - Exhibit G

| Line # | Contract Description |
|---|---|
| 112 | JOA (AAPL 610-1977) dated April 22, 1985, but made effective January 1, 1983, covering Fair Oil Ltd. #1, Jesse E. Bean Survey A-127, Chapel Hill Area, Smith County, TX, by and between Sklar & Phillips Oil Co., Operator, and Aviva, Inc. et al, as Non-Operators |
| 112 | JOA dated October 15, 1956, and amended January 29, 1968, covering GC Williams #4, Mark H. Miller Survey, A-741, Rodessa Block #2, Cass County, TX, and Miller County, Arkansas, by and between Sam Sklar as Operator, and Union Producing Company et al, Operators |
| 113 | JOA (AAPL 610-1982) dated October 14, 2008, covering the Southeast Quarter of Section 17, Township 4 North Range 10 East, Conecuh County, Alabama, by and between Midroc Operating Company, as Operator, and Sklarco L.L.C., et al, as Non-Operators |
| 113 | JOA (AAPL 610-1982) dated July 15, 2014, covering the Southeast Quarter of Section 17, Township 3 North Range 13 East, by and between Fletcher Petroleum Corp., as Operator, and Sklarco, L.L.C., et al, as Non-Operators |
| 114 | JOA covering lands located in Section 9, Township 23 North, Range 9 West, Webster Parish, Louisiana (Haynesville Merc. #1) |
| 114 | JOA (AAPL 610-1977) dated December 3, 1982, covering 100.99 acres of the M. E. Barbee Survey, A-82, Smith County, Texas, by and between Sklar & Phillips Oil Co., as Operator, and Elana Oil & Gas Co., et al, as Non-Operators |
| 115 | JOA (AAPL 610-1982) dated January 19, 2007, covering the Southeast Quarter of Section 6, Township 4 North, Range 13 East, Conecuh County, Alabama, by and between Midroc Operating Company, as Operator, and Robert Bourne, et al, as Non-Operators |
| 115 | Third Amendment to the Unit Agreement dated January 31, 2014, concerning operation of the Little Cedar Creek Oil Unit, Little Cedar Creek Field, Conecuh County, AL, by and between Pruet Production Co., as Unit Operator, and the various working interest, royalty, and overriding royalty interest owners<br><br>Third Amendment to the Unit Operating Agreement dated January 31, 2014, concerning operation of the Little Cedar Creek Oil Unit, Little Cedar Creek Field, Conecuh County, AL, by and between Pruet Production Co., as Unit Operator, and Sklarco, L.L.C., et al., as Non-Operators |
| 116 | JOA (AAPL 610-1956) dated March 7, 1972, covering lands in Houston County, Texas (LE Warner #1), by and between Sun Oil Company, as Operator, and Nemours Corporation, et al, as Non-Operators |

## Sklar Exploration Company L.L.C. - Rejected Contracts - Exhibit G

| Line # | Contract Description |
|--------|----------------------|
| 116 | Unit Agreement dated December 12, 1995, concerning operation of the Martinville Rodessa Field Unit, Rodessa Oil Pool, Martinville Field, Simpson County, Mississippi, by and between Coho Resources, Inc., as Unit Operator, and the various working interest, royalty, and overriding royalty interest owners<br><br>Unit Operating Agreement dated December 12, 1995, concerning operation of the Martinville Rodessa Field Unit, Rodessa Oil Pool, Martinville Field, Simpson County, Mississippi, by and between Coho resources, Inc., as Unit Operator, and Marathon Oil Company, et, al, as Non-Operators |
| 117 | JOA (AAPL 610-1982) dated April 1, 2013, covering all lands within Township 2 North, Range 4 West and Township 2 North, Range 5 West, Wilkinson County, Mississippi, by and between, Sklar Exploration Company, LLC, as Operator, and Sklarco L.L.C., et al, as Non-Operators |
| 117 | JOA (AAPL 610-1982) dated April 1, 2016, covering lands in the John Lane Survey, A-557, and the Robert G. Saunders Survey, A-871, by and between Sklar Exploration Company, L.L.C., as Operator, and Sklarco, L.L.C., et al, as Non-Operators |
| 118 | JOA (AAPL 610-1982) dated September 20, 1990, covering Starcke #C-1, 391.50 acre tract, re-surveyed to be 405.07 acres, located in the B. Holmes Survey, A-447, Cass County, TX, by and between Sklar & Phillips Oil Co., Operator and Crain Energy, Inc. et al as Non-Operators |
| 118 | JOA (AAPL 610-1977) dated April 11, 1985, but made effective May 1, 1983, covering Sun #1-R, Jesse E. Bean Survey, A-127, Smith County, TX, by and between Sklar & Phillips Oil Co., Operator, and Sun Exploration Company, et al, as Non-Operators |
| 119 | JOA (AAPL 610-1977) dated April 28, 1981, covering Teledyne #1, Jesse E. Bean Survey A-127, Chapel Hill Area, Smith County, TX, by and between Sklar & Phillips Oil Co., as Operator, and David A. Schlachter, et al, as Non-Operators |
| 119 | JOA covering a 682.35 acre gas unit (Vickers #1) in Freestone County, Texas, by and between Sklar & Phillips Oil Co., as Operator, and Anderson Exploration Energy Co., et al, as Non-Operators |
| 120 | JOA (AAPL 610-1982) dated July 5, 1989, covering lands in the Southeast Quarter and the West Half of the Southwest Quarter of the Southwest Quarter of Section 25, the Northwest Quarter of the Southwest Quarter lying west of Road of Section 31, and entire Section 36 Township 14 North Range 10 West, Red River Parish, Louisiana, by and between Sklar & Phillips Oil Co., as Operator, and Muslow Oil and Gas, Inc., et al, as Non-Operators |
| 120 | JOA (AAPL 610-1982) dated October 29, 2018, covering the Southwest Quarter of Section 11, Township 3 North, Range 13 East, Conecuh County, Alabama, by and between Fletcher Petroleum Corp., as Operator, and Sklarco, L.L.C., et al, as Non-Operators |

Exhibit H

*Exhibit H*
*Sklarco Liquidation Analysis*

| Sklarco Assets | Current Value | Cost of Sale/Recovery | Net Value |
|---|---|---|---|
| Undivided Interest in Oil and Gas Leases [1] | $ 7,150,000.00 | $ 715,000.00 | $ 6,435,000.00 |
| East West Bank Account | $ 131,828.01 | $ - | $ 131,828.01 |
| Revenue In SEC Revenue Account | $ 496,293.00 | $ - | $ 496,293.00 |
| Interest in 1908 Brands, Inc. | $ - | $ - | $ - |
| Interest in 9.7 Conroe Joint Venture - Company is inactive | $ - | $ - | $ - |
| Interest in Boulders on Fern, LLC | $ - | $ - | $ - |
| Interest in LTP Opportunity Fund I, LP | $ - | $ - | $ - |
| Interest in LTP TimberQuest Fund, LP | $ - | $ - | $ - |
| Interest in Sanus Pharmaceuticals LLC - Company is Inactive | $ - | $ - | $ - |
| Interest in Trout Creek Ventures, LP | $ - | $ - | $ - |
| Interest in West Arcadia Pipeline, LLC | $ - | $ - | $ - |
| Maevlo Production, LP | $ - | $ - | $ - |
| **Total** | **$ 7,778,121.01** | **$ 715,000.00** | **$ 7,063,121.01** |

| | |
|---|---|
| EWB Secured Claim | $ 22,989,650.74 |
| Chapter 7 Trustee Fees & Expenses | $388,906 |
| | |
| **Funds Available for Unsecured Creditors** | **$0** |

[1] Assumes reduction of 75% to value of assets based on current market conditions and quick sale

# Exhibit I

*Exhibit I*
*SEC Assets*

| SEC Assets | Value | Cost of Sale/Recovery | Net Value |
|---|---|---|---|
| East West Bank - Operating (Current Balance) | $ 635,140.75 | $ - | $ 635,140.75 |
| East West Bank - Revenue (Current Balance) [1] | $ - | $ - | $ - |
| East West Bank - Payroll | $ 4,859.04 | $ - | $ 4,859.04 |
| East West Bank - Benefits | $ 5,636.29 | $ - | $ 5,636.29 |
| Note Receivable - Marshall Jones | $ 54,087.50 | $ - | $ 54,087.50 |
| Accounts Receivables - JIB Obligations [2] | $ 2,513,629.64 | $ 2,000,000.00 | $ 513,629.64 |
| Receivable Owed by Sklar Transportation [3] | $ - | $ - | $ - |
| Deposited Funds for Benny Card for Employee HRAs; held by Werntz | $ 18,631.12 | $ - | $ 18,631.12 |
| THP Partners II, LP | $ - | $ - | $ - |
| Hedging Agreements | $ - | $ - | $ - |
| Office Furniture | $ 46,000.00 | $ 41,400.00 | $ 4,600.00 |
| Office Fixtures | $ 17,000.00 | $ 15,300.00 | $ 1,700.00 |
| Misc. Office Supplies and Computer Hardware | $ 32,000.00 | $ 28,800.00 | $ 3,200.00 |
| Software Licenses | $ - | $ - | $ - |
| Vehicles (Equity after Payment of Secured Claims of Ford and Ally) | $ - | $ - | $ - |
| Sklarexploration.com | $ - | $ - | $ - |
| Interests in Participation and Unit Operating Agreements as Operator | $ - | $ - | $ - |
| **Total** | **$ 3,326,984.34** | $ 2,085,500.00 | $ 1,241,484.34 |

| | |
|---|---|
| EWB Secured Claim (assuming prior liquidation of Sklarco; See Ex. H) | $ 16,315,435.78 |
| Chapter 7 Trustee Fees | $ 166,349.22 |
| **Funds Available for Unsecured Creditors from Liquidation of Assets** | **$0** |

[1] All Funds are Subject to Claims of Working Interest Holders, Including Sklarco
[2] Assumes creditors exercise setoff and reoupment rights combined with additional litigation over collection of remaining amounts
[3] Amount is uncollectible; Sklar Transportation has no assets or ongoing operations