# UNIT AGREEMENT

## FAIRWAY (JAMES LIME) UNIT

### HENDERSON AND ANDERSON COUNTIES, TEXAS

UNIT AGREEMENT
FAIRWAY (JAMES LIME) UNIT
HENDERSON AND ANDERSON COUNTIES, TEXAS


TABLE OF CONTENTS

| Section | | Page |
|---|---|---|
| | Preliminary Recitals . . . . . . . . . . . . . . . . . . . . . . . | 1 |

ARTICLE 1
DEFINITIONS

| 1.1 | Unit Area. . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 |
| 1.2 | Unitized Formation . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| 1.3 | Unitized Substances. . . . . . . . . . . . . . . . . . . . . . . | 2 |
| 1.4 | Working Interest . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| 1.5 | Working Interest Owner . . . . . . . . . . . . . . . . . . . . . | 2 |
| 1.6 | Royalty Interest . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| 1.7 | Royalty Owner. . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| 1.8 | Tract. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| 1.9 | Unit Operating Agreement . . . . . . . . . . . . . . . . . . . . | 3 |
| 1.10 | Unit Operator. . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| 1.11 | Tract Participation. . . . . . . . . . . . . . . . . . . . . . . | 3 |
| 1.12 | Unit Participation . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| 1.13 | Outside Substances . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| 1.14 | Oil and Gas Rights . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| 1.15 | Productive Acreage . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| 1.16 | Acre Foot. . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| 1.17 | Unit Operations. . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| 1.18 | Unit Equipment . . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| 1.19 | Unit Expense . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| 1.20 | Phase I. . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| 1.21 | Phase II . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 |

ARTICLE 2
EXHIBITS

| 2.1 | Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| 2.2 | Reference to Exhibits. . . . . . . . . . . . . . . . . . . . . . | 5 |
| 2.3 | Exhibit Considered Correct . . . . . . . . . . . . . . . . . . . | 5 |
| 2.4 | Correcting Errors. . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| 2.5 | Filing Revised Exhibits. . . . . . . . . . . . . . . . . . . . . | 5 |

ARTICLE 3
CREATION AND EFFECT OF UNIT

| 3.1 | Oil and Gas Rights Unitized. . . . . . . . . . . . . . . . . . . | 5 |
| 3.2 | Personal Property Excepted . . . . . . . . . . . . . . . . . . . | 6 |
| 3.3 | Amendment of Leases and Other Agreements . . . . . . . . . . . . | 6 |
| 3.4 | Continuation of Leases, Term Mineral Interests and Term Royalties. | 7 |
| 3.5 | Titles Unaffected by Unitization . . . . . . . . . . . . . . . . | 7 |
| 3.6 | Injection Rights . . . . . . . . . . . . . . . . . . . . . . . . | 7 |

ARTICLE 4
PLAN OF OPERATIONS

| 4.1 | Unit Operator. . . . . . . . . . . . . . . . . . . . . . . . . . | 8 |
| 4.2 | Operating Methods. . . . . . . . . . . . . . . . . . . . . . . . | 8 |

i

UNIT AGREEMENT
FAIRWAY (JAMES LIME) UNIT
HENDERSON AND ANDERSON COUNTIES, TEXAS

TABLE OF CONTENTS (Cont'd)

Section                                                                  Page

ARTICLE 5
TRACT PARTICIPATION

5.1     Tract Participation . . . . . . . . . . . . . . . . . . . . . .     8
5.2     Relative Tract Participations . . . . . . . . . . . . . . . . .     8

ARTICLE 6
ALLOCATION OF UNITIZED SUBSTANCES

6.1     Allocation to Tracts. . . . . . . . . . . . . . . . . . . . . .    10
6.2     Distribution Within Tracts. . . . . . . . . . . . . . . . . . .    10
6.3     Basis of Allocation During Phase I. . . . . . . . . . . . . . .    10
6.4     Basis of Allocation During Phase II. . . . . . . . . . . . . .     11
6.5     Taking Unitized Substances in Kind. . . . . . . . . . . . . . .    11
6.6     Failure to Take in Kind . . . . . . . . . . . . . . . . . . . .    11
6.7     Responsibility for Royalty Settlements. . . . . . . . . . . . .    12
6.8     Recovery of Outside Substances. . . . . . . . . . . . . . . . .    12

ARTICLE 7
PRODUCTION AS OF EFFECTIVE DATE

7.1     Oil in Lease Tanks. . . . . . . . . . . . . . . . . . . . . . .    12
7.2     Overproduction. . . . . . . . . . . . . . . . . . . . . . . . .    13

ARTICLE 8
USE OR LOSS OF UNITIZED SUBSTANCES

8.1     Use of Unitized Substances. . . . . . . . . . . . . . . . . . .    13
8.2     Royalty Payments. . . . . . . . . . . . . . . . . . . . . . . .    13

ARTICLE 9
TRACTS TO BE INCLUDED IN UNIT

9.1     Percentage of Commitment Required . . . . . . . . . . . . . . .    14
9.2     Subsequent Commitment of Interest to Unit . . . . . . . . . . .    16
9.3     Revision of Exhibits. . . . . . . . . . . . . . . . . . . . . .    16
9.4     Percentage Determination. . . . . . . . . . . . . . . . . . . .    16

ARTICLE 10
TITLES

10.1    Removal of Tract from Unit Area . . . . . . . . . . . . . . . .    17
10.2    Revision of Exhibits. . . . . . . . . . . . . . . . . . . . . .    17
10.3    Working Interest Titles . . . . . . . . . . . . . . . . . . . .    17
10.4    Royalty Owner Titles. . . . . . . . . . . . . . . . . . . . . .    17
10.5    Production Where Title in Dispute . . . . . . . . . . . . . . .    18
10.6    Payment of Taxes to Protect Title . . . . . . . . . . . . . . .    18

ARTICLE 11
EASEMENTS OR USE OF SURFACE

11.1    Grant of Easements. . . . . . . . . . . . . . . . . . . . . . .    19
11.2    Use of Water. . . . . . . . . . . . . . . . . . . . . . . . . .    19
11.3    Surface Damages . . . . . . . . . . . . . . . . . . . . . . . .    19

UNIT AGREEMENT
FAIRWAY (JAMES LIME) UNIT
HENDERSON AND ANDERSON COUNTIES, TEXAS

TABLE OF CONTENTS (Cont'd)

Section                                                                             Page

ARTICLE 12
ENLARGEMENTS OF UNIT AREA

12.1    Enlargements of Unit Area . . . . . . . . . . . . . . . . . . . .    19
12.2    Effective Date. . . . . . . . . . . . . . . . . . . . . . . . . .    20

ARTICLE 13
TRANSFER OF INTEREST

13.1    Agreement is a Covenant . . . . . . . . . . . . . . . . . . . . .    20
13.2    Effect of Transfers . . . . . . . . . . . . . . . . . . . . . . .    20
13.3    Waiver of Rights to Partition . . . . . . . . . . . . . . . . . .    20
13.4    Acquisition of Interest . . . . . . . . . . . . . . . . . . . . .    21

ARTICLE 14
RELATIONSHIP OF PARTIES

14.1    No Partnership. . . . . . . . . . . . . . . . . . . . . . . . . .    21
14.2    No Sharing of Market. . . . . . . . . . . . . . . . . . . . . . .    21
14.3    Royalty Owners Free of Costs. . . . . . . . . . . . . . . . . . .    21

ARTICLE 15
LAWS AND REGULATIONS

15.1    Laws and Regulations. . . . . . . . . . . . . . . . . . . . . . .    21

ARTICLE 16
FORCE MAJEURE

16.1    Force Majeure . . . . . . . . . . . . . . . . . . . . . . . . . .    22

ARTICLE 17
EFFECTIVE DATE

17.1    Effective Date. . . . . . . . . . . . . . . . . . . . . . . . . .    22
17.2    Ipso Facto Termination. . . . . . . . . . . . . . . . . . . . . .    23

ARTICLE 18
TERM

18.1    Term. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    24
18.2    Termination by Working Interest Owners. . . . . . . . . . . . . .    24
18.3    Effect of Termination . . . . . . . . . . . . . . . . . . . . . .    24
18.4    Salvaging Equipment Upon Termination. . . . . . . . . . . . . . .    24

ARTICLE 19
COUNTERPART

19.1    Separate Counterparts or Ratifications. . . . . . . . . . . . . .    24
19.2    Joinder in Dual Capacity. . . . . . . . . . . . . . . . . . . . .    25
19.3    Execution by Working Interest Owners. . . . . . . . . . . . . . .    25

ARTICLE 20
GENERAL

20.1    Lien of Unit Operator . . . . . . . . . . . . . . . . . . . . . .    25
20.2    Action by Working Interest Owners . . . . . . . . . . . . . . . .    25
20.3    Amendments Affecting Working Interest Owners. . . . . . . . . . .    25

UNIT AGREEMENT

FAIRWAY (JAMES LIME) UNIT

Henderson and Anderson Counties, Texas


THIS AGREEMENT, entered into as of the 1st day of October, 1963, by and between the parties who execute or ratify this agreement,

W I T N E S S E T H :

WHEREAS, in the interest of the public welfare and to promote conservation and increase the ultimate recovery of oil, gas and associated minerals from the Fairway (James Lime) Field, in Henderson and Anderson Counties, State of Texas, and to protect the rights of the owners of interests therein, it is deemed necessary and desirable to enter into this agreement, in conformity with Texas Laws 1949, Chapter 259, designated as Article 6008b of Vernon's Civil Statutes of Texas, to unitize the Oil and Gas Rights in and to the Unitized Formation in order to conduct a secondary recovery, pressure maintenance, or other recovery program as herein provided;

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and agreements herein contained, it is agreed as follows:


ARTICLE 1

DEFINITIONS

As used in this agreement, the terms hereinafter set out shall have the following meaning:

1.1  Unit Area means the lands included within the unit outline on Exhibit A whether or not described or identified in Exhibit B, and as to which this agreement becomes effective or additional areas and tracts to which it may be extended as herein provided.

- 1 -

1.2 <u>Unitized Formation</u> means that subsurface portion or portions of the

Unit Area commonly known as the James Lime Formation, comprising the same sepa-

rate reservoir as found in the following wells:

> W. L. Pickens - C. L. Gower No. 1 Well, located 660 feet
> from the South line and 880 feet from the East line of.
> John Rachal Survey A-662, Henderson County, Texas, between
> the depths of 9,877 feet and 10,060 feet, as shown by
> Schlumberger Induction Electrical Log.

> Sun Oil Co. - Miller - Hurt No. 1 Well, located 660 feet
> from the South line and 660 feet from the East line of
> Isaac Robert Survey A-658, Henderson County, Texas,
> between the depths of 9,991 feet and 10,170 feet, as
> shown by Schlumberger Induction Electrical Log.

1.3 <u>Unitized Substances</u> means all oil, gas, gaseous substances, sulphur

contained in gas, condensate, and all associated and constituent liquid or

liquefiable hydrocarbons within or produced from the Unitized Formation, except

Outside Substances injected into the Unitized Formation pursuant to Section 6.8

hereof.

1.4 <u>Working Interest</u> means an interest in Unitized Substances by virtue

of a lease, operating agreement, fee title or otherwise, including a carried

interest, which is chargeable with and obligated to pay or bear, either in cash

or out of production or otherwise, all or a portion of the cost of drilling,

developing, producing and operating the Unitized Formation. Any interest in

Unitized Substances which is a Working Interest as of the date the owner thereof

executes or ratifies this agreement shall thereafter be treated as a Working

Interest for all purposes of this agreement.

1.5 <u>Working Interest Owner</u> means a party hereto owning a Working Interest.

The owner of Oil and Gas Rights free of lease or other instrument conveying the

Working Interest to another shall, with respect to such Oil and Gas Rights, be

regarded as a Working Interest Owner to the extent of seven-eighths (7/8) of its

interest in Unitized Substances and as a Royalty Owner with respect to its re-

maining one-eighth (1/8) interest therein.

1.6 <u>Royalty Interest</u> means a right to or interest in any portion of the

Unitized Substances or proceeds thereof other than a Working Interest.

- 2 -

1.7  <u>Royalty Owner</u> means a party hereto owning a Royalty Interest.

1.8  <u>Tract</u> means each parcel of land described or identified as such and given a tract number in Exhibit A or Exhibit B.

1.9  <u>Unit Operating Agreement</u> means the agreement entitled "Unit Operating Agreement, Fairway (James Lime) Unit, Henderson and Anderson Counties, Texas", of the same effective date as the effective date of this agreement, and which is entered into by Working Interest Owners.

1.10  <u>Unit Operator</u> means the Working Interest Owner designated by the Working Interest Owners pursuant to the Unit Operating Agreement to develop and operate the Unitized Formation, acting as Operator and not as a Working Interest Owner.

1.11  <u>Tract Participation</u> means the percentage of Unitized Substances produced from the Unitized Formation which is allocated to a Tract under this agreement as shown on Exhibit B-1 hereof.

1.12  <u>Unit Participation</u> of each Working Interest Owner means the sum of the applicable percentages obtained by multiplying the Working Interest of such Working Interest Owner in each Tract by the applicable Tract Participation of such Tract.

1.13  <u>Outside Substances</u> means all substances obtained from any source other than the Unitized Formation, and which are injected into the Unitized Formation.

1.14  <u>Oil and Gas Rights</u> means the right to explore, develop and operate lands within the Unit Area for the production of Unitized Substances or to share in the production so obtained or the proceeds thereof.

1.15  <u>Productive Acreage</u> means the subsurface portion or portions of the Unit Area included within the productive limits of the Unitized Formation, as determined by Working Interest Owners.

1.16  <u>Acre Foot</u> means 43,560 cubic feet of productive oil bearing formation or its equivalent gas bearing formation as determined by the Working Interest Owners.

1.17  <u>Unit Operations</u> means all operations conducted by Working Interest Owners or Unit Operator pursuant to this agreement and the Unit Operating

- 3 -

Agreement for or on account of the development and operation of the Unitized

Formation for the production of Unitized Substances, including but not limited

to the drilling of a new well, the reworking, deepening or plugging back of a

well or hole, or any operation conducted in an effort to obtain, increase,

improve, or re-establish production from the Unitized Formation, or any activity

conducted for or in connection with repressuring or pressure maintenance or any

other method of recovery of Unitized Substances.

1.18  <u>Unit Equipment</u> means all personal property, lease and well equipment,

plants, and other facilities and equipment taken over or otherwise acquired for

the joint account for use in Unit Operations.

1.19  <u>Unit Expense</u> means all cost, expense, or indebtedness incurred by

Working Interest Owners or Unit Operator pursuant to this agreement and the

Unit Operating Agreement for or on account of Unit Operations.

1.20  <u>Phase I</u> means the period of time beginning as of the effective date

of this agreement and ending as of 7:00 A.M., January 1, 1976, or ending 7:00

A.M., on the first day of the calendar month next following the month in which

the cumulative production of oil from the entire Fairway (James Lime) reservoir

identified in Section 1.2 hereof (including production therefrom prior to effec-

tive date hereof) totals 65,000,000 barrels of oil, whichever occurs first.

1.21  <u>Phase II</u> means the period during which this agreement remains in

force from and after Phase I.


## ARTICLE  2

### EXHIBITS

2.1  <u>Exhibits</u>.  The following Exhibits are incorporated herein by reference:

2.1.1  <u>Exhibit A</u>, attached, which is a map that shows the

boundary lines of the Unit Area and the Tracts therein.

2.1.2  <u>Exhibit B</u>, attached, is a schedule describing or

identifying each Tract in the Unit Area.

2.1.3  <u>Exhibit B-1</u>, attached, is a schedule showing the

applicable Tract Participations for each Tract during Phase I

and Phase II.

2.2  Reference to Exhibits.  When reference herein is made to an Exhibit,
the reference (unless indicated otherwise) is to the Exhibit as originally
attached or, if revised, to the latest revision.

2.3  Exhibit Considered Correct.  Said Exhibits for all purposes of this
agreement shall be considered as true and correct unless and until they are re-
vised or corrected as herein provided.

2.4  Correcting Errors.  The shapes and descriptions of the respective
Tracts have been established using the best information available.  If it sub-
sequently appears that any Tract has been incorrectly described, or that any
Tract because of diverse royalty or working interest ownership on the effective
date hereof should be divided into more than one Tract, or that any mechanical
miscalculation has been made, Unit Operator, under the direction of Working
Interest Owners, shall correct such mistake by revising the Exhibits to conform
to the facts.  The revision shall not include any re-evaluation of engineering
or geological interpretations used in establishing Tract Participation.  Each
such revision of an Exhibit shall be effective at 7:00 A.M., on the first day of
the calendar month next following the filing for record of the revised Exhibit
relating thereto or on such date as is determined by Working Interest Owners.
Any such revision made prior to the effective date hereof shall be effective
on the effective date.

2.5  Filing Revised Exhibits.  If and when the Exhibits, or any revision
thereof, are revised pursuant to this agreement, Unit Operator shall certify
and file the revised Exhibits for record in each county in which this agreement
is filed.

ARTICLE  3

CREATION AND EFFECT OF UNIT

3.1  Oil and Gas Rights Unitized.  Subject to the terms and conditions of
this agreement, all the Oil and Gas Rights of the Royalty Owners in and to the
lands included within the Unit Area on Exhibit A, whether or not described or

- 5 -

identified in Exhibit B, and all of the Oil and Gas Rights of the Working Interest
Owners in and to said lands are hereby unitized insofar as said respective Oil
and Gas Rights pertain to the Unitized Formation, all to the same extent as if
the right to search for, develop, operate and produce from the Unitized Forma-
tion had been included in a single lease executed by all the Royalty Owners, as
lessors, in favor of all the Working Interest Owners, as lessees, and as if
said lease had been subject to all of the terms and conditions of this agreement.

3.2  Personal Property Excepted.  Certain of Working Interest Owners have
individually heretofore placed in or on their wells and in or on lands affected
by this agreement, various items of personal property which are lease and well
equipment, as to all of which such Working Interest Owners have the right, as
provided in their respective leases, to remove such property from the premises
and all of which installations were made with the intention and understanding
that all of the same would be and remain personal property and that no part
thereof would be or become a part of the realty.  Working Interest Owners except
from the terms and provisions of  this agreement, and hereby sever from said
lands, for all purposes, all such lease and well equipment which may be now
located or may hereafter become located in or on the lands or in the wells on
the lands affected hereby.  To conform their respective investments in such
equipment, Working Interest Owners have made a separate agreement with each
other with respect thereto.

3.3  Amendment of Leases and Other Agreements.  The terms and provisions
of the various leases, agreements, division and transfer orders, or other in-
struments covering the respective Tracts or the production therefrom are hereby
amended only to the extent necessary to make them conform to the terms and pro-
visions of this agreement, but otherwise are to remain in full force and effect.
It is specifically agreed, with respect to each Tract in the Unit Area, that
Working Interest Owners and Royalty Owners hereby modify and amend existing
division orders and transfer orders covering such Tracts which may be in force
at the effective date of this agreement and pursuant to which settlements for

Oil and Gas produced from such Tracts have theretofore been made by the several purchasers thereof to the extent necessary to provide for the purchase thereunder of the Unitized Substances produced under this agreement and allocated to each Tract in lieu of the purchase of Oil, Gas and other minerals actually produced therefrom; subject to acceptance of such amendment by the several purchasers of production issuing such division orders, the amendment of such division orders and transfer orders shall be effective contemporaneously with the effective date of this agreement.

3.4  Continuation of Leases, Term Mineral Interests and Term Royalties. Unit Operations, as herein defined, conducted with respect to the Unitized Formation on any part of the Unit Area, including drilling operations on or production from any part of the Unitized Formation, shall, except for the purpose of determining payments to Royalty Owners, be considered as operations upon or production from each Tract and such Unit Operations or production shall continue in force and effect each lease or term mineral interest or term Royalty Interest just as if such Unit Operations had been conducted and a well had been drilled on and was producing from each such Tract.

3.5  Titles Unaffected by Unitization.  Nothing herein shall be construed to result in the transfer of title to the Oil and Gas Rights covered hereby between the parties hereto or to Unit Operator.  The intention is to provide for the cooperative development and operation of the Unitized Formation and for the sharing of Unitized Substances as herein provided.

3.6  Injection Rights.  Royalty Owners hereby grant unto Working Interest Owners the right to inject into the Unitized Formation any substances in whatever amounts the Working Interest Owners deem expedient, including the right to drill and maintain injection wells on the Unit Area and to use said wells and any producing well or wells completed in the Unitized Formation, or abandoned oil or gas wells, including wells which have never been produced, within the Unit Area for said purposes.

ARTICLE 4

PLAN OF OPERATIONS

4.1  Unit Operator.  Working Interest Owners have entered into the Unit
Operating Agreement, designating Hunt Oil Company as Unit Operator.  Unit
Operator shall have, subject to the terms, provisions and limitations expressed
in the Unit Operating Agreement, the exclusive right to conduct Unit Operations.
Such operations shall be conducted in conformity with the provisions of this
agreement and the Unit Operating Agreement.  In the event of any conflict
between such agreements, this agreement shall govern.

4.2  Operating Methods.  To the end that the quantity of Unitized Substances
ultimately recoverable may be increased and waste prevented, Working Interest
Owners will commence Unit Operations to conduct a secondary recovery, pressure
maintenance or other recovery program at the earliest reasonable time good
engineering practice and sound economics indicate the necessity and desirability
of such operations in order to efficiently recover Unitized Substances.  Such
other methods of operation as may from time to time be determined by Working
Interest Owners to be feasible, necessary or desirable to efficiently and
economically increase the ultimate recovery of Unitized Substances may be con-
ducted by Working Interest Owners.  Working Interest Owners may at any time
discontinue or change in whole or in part any particular method of operation
if, in their opinion, such method of operation is no longer in accord with good
engineering or production practices.

ARTICLE 5

TRACT PARTICIPATION

5.1  Tract Participation.  The Tract Participation of each Tract, effective
during Phase I and Phase II, is shown in Exhibit B-1.

5.2  Relative Tract Participations.  The parties hereto recognize that
additional drilling to the James Lime formation within and outside the Unit

Area may change the existing concepts on which the figures and allocations in the initial Exhibit B-1 are based. It is agreed, however, that the data with respect to the wells which have been drilled and completed prior to the effective date of this agreement shall not be subject to change or subject to any interpretation different from the interpretation finally agreed upon which resulted in the figures and calculations reflected in the initial Exhibit B-1 attached hereto, the word "data" as used in this sentence to include the following with respect to each well and nothing else:

A.   Top of the James Lime formation.

B.   Base of the James Lime formation.

C.   Feet of net productive James Lime formation.

If information developed by additional drilling to the James Lime formation in the Unit Area or in the immediate vicinity thereof prior to April 1, 1964, causes such action to be necessary or desirable, the Working Interest Owners may and are hereby authorized to recalculate the productive Acre Feet and the Productive Acreage within the Unitized Formation underlying the Unit Area, and the Tract Participation factor for each Tract; provided, however, any recalculation caused by a change in the oil-water contact due to such additional drilling shall not extend beyond the nearest well points where such contact shall have been established. This recalculation shall be effective as of 7:00 A.M. on the first day of the calendar month designated by Working Interest Owners, but not later than 7:00 A.M. on the first day of April, 1964. After April 1, 1964, the productive Acre Feet and the Productive Acreage as revised and assigned to each Tract in accordance with any such recalculation, shall never be changed except in the event a well is drilled outside the unit outline shown on the initial Exhibit A dated October 1, 1963, attached hereto, and the Unit Area is enlarged to include the well and the land on which such well is located. Under such enlargement the productive Acre Feet and the Productive Acreage assigned to Tracts within the Unit Area may be increased, but not reduced, as a result thereof. Appropriate revisions of exhibits shall be made after such recalculations.

## ARTICLE  6

### ALLOCATION OF UNITIZED SUBSTANCES

6.1  **Allocation to Tracts.**  Subject to the provisions of Article 8 hereof,
all Unitized Substances produced and saved shall be allocated to the several
Tracts in accordance with the respective Tract Participations effective during
the period that the Unitized Substances were produced.  The amount of Unitized
Substances allocated to each Tract, regardless of whether it is more or less
than the actual production of Unitized Substances from the well or wells, if any,
on such Tract, shall be deemed for all purposes to have been produced from such
Tract.

6.2  **Distribution Within Tracts.**  The Unitized Substances allocated to
each Tract shall be distributed among, or accounted for to, the parties entitled
to share in the production from such Tract in the same manner, in the same propor-
tions, and upon the same conditions as they would have participated and shared
in the production from such Tract, or in the proceeds thereof, had this agreement
not been entered into, and with the same legal effect.  If any Oil and Gas Rights
in a Tract are now or hereafter become divided and owned in severalty as to dif-
ferent parts of the Tract, the owners of the divided interests, in the absence of
an agreement providing for a different division, shall share in the Unitized
Substances allocated to the Tract, or in the proceeds thereof, on an acreage
basis, in the proportion that the acreage owned by each bears to the total acreage
within the Tract.

6.3  **Basis of Allocation During Phase I.**  During Phase I the Tract Participa-
tion of each Tract in the Unit Area shall be as shown in Exhibit B-1 attached
hereto and shall be determined as follows:

> (a)  Fifty per cent (50%) of the proportion expressed in
>      percentage that the productive Acre Feet within the
>      Unitized Formation underlying a particular Tract
>      bears to the total productive Acre Feet within the
>      Unitized Formation underlying the Unit Area as
>      determined by the Working Interest Owners; plus
>
> (b)  Fifty per cent (50%) of the proportion expressed in
>      percentage that Productive Acreage of a particular
>      Tract bears to the total Productive Acreage within
>      the Unit Area as determined by the Working Interest
>      Owners.

6.4   Basis of Allocation During Phase II.   During Phase II the Tract Participation of each Tract in the Unit Area shall be the ratio expressed in percentage which the Acre Feet in each Tract bears to the total Acre Feet in the Unit Area, as determined by Working Interest Owners and shown in Exhibit B-1 hereto.

6.5   Taking Unitized Substances in Kind.   The Unitized Substances allocated to each Tract shall be delivered in kind to the respective parties entitled thereto by virtue of the ownership of Oil and Gas Rights therein or by purchase from such owners.   Such parties shall have the right to construct, maintain, and operate within the Unit Area all necessary facilities for that purpose, provided that they are so constructed, maintained, and operated as not to interfere with Unit Operations.   Any extra expenditures incurred by Unit Operator by reason of the delivery in kind of any portion of the Unitized Substances shall be borne by the receiving party.   If a Royalty Owner has the right to take in kind a share of Unitized Substances and fails to do so, the Working Interest Owner whose Working Interest is subject to such Royalty Interest shall be entitled to take in kind such share of the Unitized Substances.

6.6   Failure to Take in Kind.   If any party fails to take in kind or separately dispose of its share of Unitized Substances, Unit Operator shall have the right but not the obligation, for the time being and subject to revocation at will by the party owning the share, to purchase for its own account or sell to others such share at the prevailing market price; provided that, all contracts of sale by Unit Operator of such other party's share of Unitized Substances shall be only for such reasonable periods of time as are consistent with the minimum needs of the industry under the circumstances, but in no event shall any such contract be for a period in excess of one year; and Unit Operator shall not make any sale or delivery of such other party's share of gas into interstate commerce without giving such other party sixty (60) days' notice.   The proceeds of the Unitized Substances so disposed of by Unit Operator shall be paid to the party entitled thereto.   Unit Operator shall be reimbursed for expenses incurred in such disposition of Unitized Substances.

6.7  Responsibility for Royalty Settlements.  Any party receiving in kind or separately disposing of all or part of the Unitized Substances allocated to any Tract or receiving the proceeds therefrom shall be responsible for the payment thereof to the persons entitled thereto, and shall indemnify all parties hereto, including Unit Operator, against any liability for all royalties, overriding royalties, production payments, and all other payments chargeable against or payable out of such Unitized Substances or the proceeds therefrom.

6.8  Recovery of Outside Substances.  In order to carry out Unit Operations authorized herein, it may be necessary for Working Interest Owners to purchase or obtain gas, liquid petroleum gas and other Outside Substances from sources outside the Unitized Formation for the purpose of injecting the same into the Unitized Formation.  In such event the Working Interest Owners shall measure and keep accurate records of the amount of Outside Substances injected into the Unitized Formation.  Such injected Outside Substances shall not be and become Unitized Substances, shall not become part of the mineral estate in the land, and shall be and remain the personal property of Working Interest Owners.  The said Working Interest Owners may recover such injected Outside Substances without payment of any charge with respect thereto or deduction therefrom when recovered. To effect such recovery of Outside Substances, it is agreed that beginning two years after injection of any Outside Substance is commenced, ten per cent (10%) of any like substance subsequently produced and sold from the Unitized Formation or contained in Unitized Substances subsequently produced and sold from the Unitized Formation, or used for other than Unit Operations, shall be deemed to be the Outside Substance so injected until the total volume thereof equals the total volume of the Outside Substance so injected.


## ARTICLE  7

### PRODUCTION AS OF EFFECTIVE DATE

7.1  Oil in Lease Tanks.  Unit Operator shall gauge all lease and other tanks within the Unit Area to ascertain the amount of merchantable oil produced

from the Unitized Formation in such tanks, above the pipe line connections, as
of 7:00 A.M., on the effective date of each Phase hereof.  The oil that is a
part of the prior allowable of the wells from which it was produced shall remain
the property of the parties entitled thereto.  Any such oil not promptly removed
may be sold by the Unit Operator for the account of the parties entitled thereto,
subject to the payment of all royalties, overriding royalties, production pay-
ments, and all other payments under the provisions of the applicable lease or
other contracts.  The oil that is in excess of the prior allowable of the wells
from which it was produced shall be regarded as Unitized Substances produced
after the effective date of each Phase hereof.

7.2  Overproduction.  If, as of the effective date hereof, any Tract is
overproduced with respect to the allowable of the wells on that Tract and the
amount of overproduction has been sold or otherwise disposed of, such over-
production shall be regarded as a part of the Unitized Substances produced after
the effective date hereof and shall be charged to such Tract as having been
delivered to the parties entitled to Unitized Substances allocated to such Tract.

## ARTICLE 8

### USE OR LOSS OF UNITIZED SUBSTANCES

8.1  Use of Unitized Substances.  Working Interest Owners may use as much
of the Unitized Substances as they deem necessary for the Unit Operations, in-
cluding but not limited to the injection thereof into the Unitized Formation.

8.2  Royalty Payments.  No royalty, overriding royalty, production or other
payments shall be payable upon or with respect to Unitized Substances used or
consumed in Unit Operations or which may be otherwise lost or consumed in the
production, handling, treating, transportation or storing of Unitized
Substances.

## ARTICLE  9

### TRACTS TO BE INCLUDED IN UNIT

9.1  Percentage of Commitment Required.  On and after the effective date hereof, subject to all provisions hereof, the Unit Area shall be composed of the Tracts included within the unit outline on Exhibit A whether initially described or identified in Exhibit B or not, which Tracts corner or have a common boundary (Tracts separated only by a public highway or a railroad right-of-way shall be considered to have a common boundary), or which Tracts are so located with respect to the Unitized Formation and to each other as  to enable Working Interest Owners in all Tracts that qualify under Sections 9.1.1, 9.1.2 and 9.1.3 (in their sole discretion) to carry out a reasonable program of Unit Operations as herein contemplated in a Unit Area composed of such Tracts, and that otherwise  qualify as follows:

9.1.1  Each Tract as to which Working Interest Owners owning one hundred per cent (100%) of the Working Interest have become parties to this agreement and as  to which Royalty Owners owning eighty-five per cent (85%) or more of the Royalty Interest have become parties to this agreement.

9.1.2  Each Tract as to which Working Interest Owners owning one hundred per cent (100%) of the Working Interest have become parties to this agreement, and as to which Royalty Owners owning less than eighty-five per cent (85%) of the Royalty Interest have become parties to this agreement, and as to which (a) all Working Interest Owners in such Tract have joined in a request for the inclusion of such Tract in the Unit Area, and as to which (b) sixty-five per cent (65%) of the combined voting interests of Working Interest Owners in all  Tracts that meet the requirements of Section 9.1.1 have voted in favor of the inclusion of such Tract, with or without the requirement (at their discretion) that the Working Interest Owners in such Tract execute and deliver an acceptable Indemnity Agreement indemnifying and

agreeing to hold harmless the other Working Interest Owners in the Unit Area, their successors and assigns, against all claims and demands that may be made by the owners of Royalty Interests in such Tract who are not parties to this agreement and which arise out of inclusion of the Tract in the Unit Area. For the purpose of this Section 9.1.2, the voting interest of a Working Interest Owner shall be equal to the ratio that its Unit Participation attributable to Tracts that qualify under Section 9.1.1 bears to the total Unit Participation of all Working Interest Owners attributable to all Tracts that qualify under Section 9.1.1.

9.1.3  Each Tract as to which Working Interest Owners owning less than one hundred per cent (100%) of the Working Interest have become parties to this agreement, regardless of the percentage of Royalty Interest therein that is committed hereto; and as to which (a) all of the Working Interest Owners in such Tract who have become parties to this agreement have joined in a request for inclusion of such Tract in the Unit Area, and have executed and delivered an indemnity agreement indemnifying and agreeing to hold harmless the other Working Interest Owners in the Unit Area, their successors and assigns, against all claims and demands that may be made by the owners of Working Interests and Royalty Interests in such Tract who are not parties to this agreement, and which arise out of the inclusion of the Tract in the Unit Area; and as to which (b) sixty-five per cent (65%) of the combined voting interest of Working Interest Owners in all Tracts that meet the requirements of Sections 9.1.1 and 9.1.2 have voted in favor of the inclusion of such Tract and to accept the indemnity agreement. For the purpose of this Section 9.1.3, the voting interest of each Working Interest Owner shall be equal to the ratio that its Unit Participation attributable to Tracts

that qualify under Sections 9.1.1 and 9.1.2 bears to the total Unit
Participation of all Working Interest Owners attributable to all
Tracts that qualify under Sections 9.1.1 and 9.1.2.  Upon the in-
clusion of such a Tract in the Unit Area, the Unit Participation
that would have been attributed to the nonsubscribing owners of
the Working Interest in such Tract, had they become parties to this
agreement and the Unit Operating Agreement, shall be attributed to
the Working Interest Owners in such Tract who have become parties
to such agreements, in proportion to their respective Working
Interests in the Tract, and they shall bear costs and expenses
attributable thereto.

9.2  <u>Subsequent Commitment of Interest to Unit</u>.  After the effective date of
this agreement, the commitment hereto of any Interest in any Tract within the
boundary of the unit outline, as shown on initial Exhibit A hereto before any
revision thereof, shall be upon such terms as may be negotiated by Working
Interest Owners and the owner of such Interest.

9.3  <u>Revision of Exhibits</u>.  If any of the Tracts included within the unit
outline on Exhibit A, whether or not described or identified in Exhibit B, fail
to qualify for inclusion in the Unit Area as of the effective date of this
agreement, Unit Operator shall recompute, using the original basis of computation,
the Phase I and Phase II Tract Participations of each of the qualifying Tracts
and shall revise Exhibits A, B and B-1 accordingly, such revised Exhibits to
be effective as of the effective date of this agreement.

9.4  <u>Percentage Determination</u>.  For the purposes of Article 9 and any other
Article hereof requiring certain percentages of Working Interest Owners and
Royalty Interest Owners to sign or ratify this agreement with respect to any
Tract or with respect to all or a portion of all Tracts for the purpose of
qualifying for admission to the Unit Area or otherwise, it is agreed that the
finding or determination by Working Interest Owners as to the per cent of such
interests who have signed or ratified as to any such Tract or Tracts shall be
final and conclusive for the purposes of such Articles hereof.  This finding or
determination by Working Interest Owners shall not change, alter, modify or
affect any right, title, interest or claim of any party hereto in and to any

such Tract with respect to any other party, and shall be final and conclusive only as to the per cent (for the purposes of said Articles) of Royalty Interest and Working Interest Owners who have signed or ratified this agreement.

<div align="center">

ARTICLE 10

TITLES

</div>

10.1  Removal of Tract from Unit Area.  In the event a Tract ceases to have sufficient Working Interest Owners or Royalty Owners committed to this agreement to meet the conditions of Article 9 because of failure of title of any party hereto, such Tract shall be eliminated from the Unit Area as of the first day of the calendar month in which such failure of title is finally determined; provided, however, that a Tract shall not be removed from the Unit Area if, within ninety (90) days of the date of final determination of the failure of title, Working Interest Owners and Royalty Owners become parties to this agreement in sufficient numbers to meet the qualifying provisions of Section 9.1.1 or the Tract otherwise qualifies under the provisions of Sections 9.1.2 or 9.1.3.

10.2  Revision of Exhibits.  In the event any Tract is eliminated from the Unit Area because of the failure of title pursuant to the provisions of this Article, Unit Operator, subject to Section 5.2, shall recompute, using the original basis of computation, the Tract Participations of each of the Tracts remaining in the Unit Area and shall accordingly revise Exhibits A, B and B-1 (as applicable).  Said revised Exhibits shall be effective as of the first day of the calendar month in which such failure of title is finally determined.

10.3  Working Interest Titles.  If title to a Working Interest fails, the rights and obligations as between the Working Interest Owners in respect thereto shall be governed by the Unit Operating Agreement.

10.4  Royalty Owner Titles.  If title to a Royalty Interest fails, but the Tract to which it relates is not eliminated from the Unit Area, the party

whose title failed shall not be entitled to share hereunder in respect to such interest.

10.5 <u>Production Where Title in Dispute</u>. If the title or right of any person claiming the right to receive in kind all or any portion of the Unitized Substances allocated to a Tract is in dispute, Unit Operator at the discretion of Working Interest Owners shall either:

     (a) Require that the person or persons to whom such Unitized Substances are delivered or to whom the proceeds thereof are paid furnish security for the proper accounting therefor to the rightful owner or owners in the event the title or right of such person or persons shall fail in whole or in part, or

     (b) Withhold delivery in kind and market the portion of Unitized Substances with respect to which title is in dispute, and impound the proceeds thereof until such time as the title or right thereto is established by a final judgment of a court of competent jurisdiction or otherwise to the satisfaction of Working Interest Owners, whereupon the proceeds so impounded shall be paid to the person or persons rightfully entitled thereto.

10.6 <u>Payment of Taxes to Protect Title</u>. The owners of (1) the surface rights to lands within the Unit Area, (2) the several mineral or Royalty Interests in the lands, and (3) the improvements located on the lands not utilized for Unit Operations, shall individually be responsible for the rendition and assessment for ad valorem tax purposes of all such property, and for the payment of such taxes, except as otherwise provided in any contract or agreement between such owners and a Working Interest Owner. If any ad valorem taxes are not paid by such owner responsible therefor when due, Unit Operator may, with approval of Working Interest Owners, at any time prior to tax sale, or expiration of period of redemption after tax sale, pay the same, redeem such property, and discharge such tax liens as may arise through non-payment. Any such payment shall be treated as an item of Unit Expense. Unit Operator shall, if possible, withhold from any proceeds derived from the sale of Unitized Substances otherwise due to any delinquent taxpayer or taxpayers an amount sufficient to defray the costs of such payment or redemption, such withholding to be credited to the joint account. Such withholding shall be without prejudice to any other remedy, either at law or at equity, which may be available for exercise by the Unit Operator or by the Working Interest Owners.

## ARTICLE 11

### EASEMENTS OR USE OF SURFACE

11.1  <u>Grant of Easements</u>.  The parties hereto, to the extent of their rights and interests, hereby grant to Working Interest Owners the right to use as much of the surface of the land within the Unit Area as may be reasonably necessary for Unit Operations; provided, that nothing herein shall be construed as leasing or otherwise conveying to Working Interest Owners a site for a major plant for water, gas injection, processing or other similar purposes or any camp site.

11.2  <u>Use of Water</u>.  Working Interest Owners may use any of their presently existing wells for water supply wells or may drill water supply wells and shall have free use of water from the Unit Area for operations hereunder except water from Royalty Owner's wells, private lakes, ponds, or irrigation ditches.

11.3  <u>Surface Damages</u>.  Working Interest Owners shall pay the rightful owners for damages to growing crops, timber, fences, improvements and structures on the Unit Area resulting from operations hereunder.

## ARTICLE 12

### ENLARGEMENTS OF UNIT AREA

12.1  <u>Enlargements of Unit Area</u>.  The Unit Area may be enlarged to include additional acreage in the same reservoir in the James Lime Formation which, in the judgment of the Working Interest Owners, has been reasonably proved to be productive.  All such acreage must qualify as provided in Article 9 and its inclusion in the Unit Area by enlargement thereof shall be under such terms and conditions as are determined by the Working Interest Owners, including, but not limited to, the following:

12.1.1  The participation to be allocated to the acreage added to the Unit Area shall be based on all available informa-tion to the end that a reasonable and fair participation shall be so allocated.

12.1.2  There shall be no retroactive allocation or adjust-ment of Unit Expense or of interests in the Unitized Substances produced, or proceeds thereof; however, this limitation shall not prevent an adjustment of investment by reason of the enlargement.

- 19 -

12.1.3  In the event of an enlargement of the Unit Area, Unit Operator shall, subject to Section 5.2, recompute the applicable Tract Participations of each Tract within the Unit Area as enlarged and shall revise Exhibits A, B and B-1.

12.2  Effective Date.  The effective date of any enlargement of the Unit Area shall be 7:00 A.M., on the first day of the calendar month following compliance with conditions for enlargement as specified by Working Interest Owners, approval of the enlargement by the appropriate governmental authority, if required, and the filing for record of revised Exhibits A, B and B-1 in the records of the County or Counties in which this agreement is recorded.


ARTICLE 13

TRANSFER OF INTEREST

13.1  Agreement is a Covenant.  All of the terms and provisions of this agreement shall extend to, be binding upon and inure to the benefit of the respective heirs, devisees, legal representatives, successors and assigns of the parties hereto, and shall constitute a covenant running with the lands, leases and interests covered hereby.

13.2  Effect of Transfers.  Any transfer, assignment or conveyance of all or any part of any interest owned by any party hereto with respect to any Tract shall be made expressly subject to this agreement.  No such transfer, assignment or conveyance shall be binding for any purpose on the Unit Operator or upon any party hereto other than the party so conveying the same, until the first day of the calendar month next succeeding the date of receipt by Unit Operator of a certified copy of the recorded instrument evidencing such change in ownership.

13.3  Waiver of Rights to Partition.  Each party hereto covenants that, during the existence of this agreement, such party shall not resort to any action at law or in equity to partition the Unit Area or the facilities used in the development or operation thereof and to that extent waives the benefits of all laws authorizing such partition.

13.4  Acquisition of Interest.  In the event any party bound by this
agreement acquires any Oil and Gas Rights in any Tract within the Unit Area,
which Oil and Gas Rights prior to acquisition are not subject to this agreement,
such Oil and Gas Rights upon acquisition shall be subject hereto only upon
approval of Working Interest Owners.


## ARTICLE 14

### RELATIONSHIP OF PARTIES

14.1  No Partnership.  The duties, obligations and liabilities of the
parties hereto are intended to be several and not joint or collective, and
nothing herein contained shall ever be construed to create an association or
trust, or impose a partnership duty, obligation or liability with regard to any
one or more of the parties hereto.  Each party hereto shall be individually
responsible for its own obligations as herein provided.

14.2  No Sharing of Market.  Nothing in this agreement shall be construed
as providing, directly or indirectly, for any cooperative refining or joint
sale or cooperative marketing of Unitized Substances.

14.3  Royalty Owners Free of Costs.  It is understood and agreed that this
agreement shall never be construed as imposing upon any Royalty Owner any obliga-
tion to pay for any development or operating expense unless such Royalty Owner is
obligated to pay for same by the terms of agreements existing before the execution
of this agreement.


## ARTICLE 15

### LAWS AND REGULATIONS

15.1  Laws and Regulations.  This agreement shall be subject to the con-
servation laws of the State of Texas, to the valid rules, regulations and orders
of the Railroad Commission of Texas, and to all other applicable federal, state
and municipal laws, rules, regulations and orders.  It is not the intention of

- 21 -

this agreement to limit, restrict or prorate unit production, it being recognized that such powers are exclusively exercised by governmental authority.

## ARTICLE 16

### FORCE MAJEURE

16.1 _Force Majeure._ All obligations of each party hereto, except for the payment of money, shall be suspended while said party is prevented from complying therewith, in whole or in part, by strikes, fire, war, civil disturbances, acts of God, federal, state or municipal laws, orders or regulations, inability to secure materials or other causes beyond the reasonable control of said party whether or not of the kind above enumerated; provided, however, that performance shall be resumed within a reasonable time after such cause has been removed; provided further that no party shall be required against its will to adjust or settle any labor dispute. This agreement or the leases or other interests subject hereto shall not be terminated by reason of suspension of Unit Operations due to the aforesaid causes.

## ARTICLE 17

### EFFECTIVE DATE

17.1 _Effective Date._ This agreement shall become binding upon each party as of the date such party signs the instrument by which it becomes a party hereto, and, unless sooner terminated as provided in Section 17.2, shall become effective as to qualified Tracts at the time and date as determined by Working Interest Owners in all the qualified Tracts, which effective date shall be not later than the first day of the third calendar month next following the accomplishment of 17.1.1, 17.1.2 and 17.1.3. Said effective date shall be set forth in a certificate filed for record by Unit Operator in each County in which this agreement is filed, and said certificate shall set out the Tract number and Tract

Participation of each Tract as to which this agreement becomes effective.  The
certificate shall not be filed until after the following requirements have been
met:

17.1.1  A sufficient number of Tracts have qualified under
Article 9, so located with respect to the Unitized Formation and
to each other as to enable Working Interest Owners in all Tracts
that qualify under Sections 9.1.1, 9.1.2 and 9.1.3 (in their sole
discretion) to carry out a reasonable program of Unit Operations
as herein contemplated in the Unit Area composed of said qualified
Tracts.

17.1.2  At least one counterpart of this agreement has been
filed for record by Unit Operator in each county in which acreage
in the Unit Area is located.

17.1.3  This agreement has been approved by the Railroad
Commission of Texas under the terms of Article 6008b Revised
Civil Statutes of Texas.

17.2  Ipso Facto Termination.  If the requirements of Sections 17.1.1, 17.1.2
and 17.1.3 are not accomplished before midnight, December 31, 1964, this agreement
shall ipso facto terminate at that time and date (hereinafter called "termination
date") and thereafter be of no further effect, unless prior thereto Working
Interest Owners owning a combined Unit Participation of at least sixty-five per
cent (65%) in the Unit Area outlined on Exhibit A as originally attached hereto
have become parties to this agreement and Working Interest Owners owning at least
eighty per cent (80%) of the interests committed to this agreement have decided
to extend the termination date for a period not to exceed one year.  Upon ex-
tension of said termination date, the party designated to be Unit Operator shall
file a certificate thereof in each county in which this agreement is filed.  If
said termination date is so extended and the requirements of Sections 17.1.1,

17.1.2 and 17.1.3 are not accomplished on or before said extended termination date, this agreement shall ipso facto terminate on said extended termination date and thereafter be of no further force or effect.  For the purpose of this Article, ownership shall be computed on the basis of Unit Participation as determined from Exhibit B-1 hereof.

## ARTICLE 18

### TERM

18.1  <u>Term</u>.  The term of this agreement shall be for and during the time that Unitized Substances are produced in paying quantities and as long thereafter as drilling, reworking or other Unit Operations are prosecuted without cessation of more than ninety (90) consecutive days, unless sooner terminated by Working Interest Owners in the manner herein provided.

18.2  <u>Termination by Working Interest Owners</u>.  This agreement may be terminated by Working Interest Owners having a combined Unit Participation of at least eighty per cent (80%) whenever such Working Interest Owners determine that Unit Operations are no longer profitable, feasible, or in the interest of conservation.

18.3  <u>Effect of Termination</u>.  Upon termination of this agreement, the further development and operation of the Unitized Formation as a unit shall be abandoned, Unit Operations shall cease, and thereafter the parties hereto shall be governed by the terms and provisions of the leases and contracts affecting the separate Tracts just as if this agreement had never been entered into.

18.4  <u>Salvaging Equipment Upon Termination</u>.  If not otherwise granted by the leases and other instruments affecting each Tract unitized under this agreement, Royalty Owners hereby grant Working Interest Owners a period of six (6) months after termination of this agreement in which to salvage and remove from the Unit Area the personal property and facilities used in connection with Unit Operations.

- 24 -

ARTICLE 19

COUNTERPART

19.1  Separate Counterparts or Ratifications.  This agreement may be executed
in any number of counterparts and each executed counterpart shall have the same
force and effect as an original instrument and as if all of the parties to the
aggregate counterparts had signed the same instrument; or, this agreement may
be ratified by a separate instrument in writing referring to this agreement.  Each
such ratification shall have the force and effect of an executed counterpart hereof
and of adopting by reference all of the provisions hereof.

19.2  Joinder in Dual Capacity.  It shall not be necessary for parties owning
both Working Interests and Royalty Interests to execute this agreement in both
capacities in order to commit both classes of interests.  Execution hereof by
any such party in one capacity shall also constitute execution in the other
capacity.

19.3  Execution by Working Interest Owners.  Each owner of a Working Interest
who signs or ratifies this agreement acknowledges that he has also signed, ratified
or otherwise agreed that his Working Interest is subject to the Unit Operating
Agreement.

ARTICLE 20

GENERAL

20.1  Lien of Unit Operator.  Unit Operator shall have a lien upon the
interests of Working Interest Owners in the Unit Area to the extent provided in
the Unit Operating Agreement.

20.2  Action by Working Interest Owners.  Any action or approval required
by Working Interest Owners hereunder shall be in accordance with the provisions
of the Unit Operating Agreement.

20.3  Amendments Affecting Working Interest Owners.  Amendments hereto

relating wholly to Working Interest Owners may be made if approved by Working Interest Owners in accordance with provisions of the Unit Operating Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this agreement upon the respective dates indicated opposite their respective signatures.

DATE:_____     _____

ATTEST:                          By:_____

                                 Its_____
_____
                   Secretary


DATE:_____     _____

ATTEST:                          By:_____

                                 Its_____
_____
                   Secretary


DATE:_____     _____

ATTEST:                          By:_____

                                 Its_____
_____
                   Secretary


DATE:_____     _____

ATTEST:                          By:_____

                                 Its_____
_____
                   Secretary


DATE:_____     _____

DATE:_____     _____

DATE:_____     _____

DATE:_____     _____

DATE:_____     _____

DATE:_____     _____

- 26 -

CORPORATE ACKNOWLEDGMENT

STATE OF _____)
COUNTY OF _____)

BEFORE ME, the undersigned authority, on this day personally appeared _____
_____, known to me to be the person who executed the foregoing
instrument as _____ of _____
_____, and acknowledged to me that he executed the
same for the purposes and consideration therein expressed, as the act and deed of said
corporation and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this _____ day of _____, 19____.

My commission expires:

_____        _____
                                   Notary Public in and for


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CORPORATE ACKNOWLEDGMENT

STATE OF _____)
COUNTY OF _____)

BEFORE ME, the undersigned authority, on this day personally appeared _____
_____, known to me to be the person who executed the foregoing
instrument as _____ of _____
_____, and acknowledged to me that he executed the
same for the purposes and consideration therein expressed, as the act and deed of said
corporation and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this _____ day of _____, 19____.

My commission expires:

_____        _____
                                   Notary Public in and for


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CORPORATE ACKNOWLEDGMENT

STATE OF _____)
COUNTY OF _____)

BEFORE ME, the undersigned authority, on this day personally appeared _____
_____, known to me to be the person who executed the foregoing
instrument as _____ of _____
_____, and acknowledged to me that he executed the
same for the purposes and consideration therein expressed, as the act and deed of said
corporation and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this _____ day of _____, 19____.

My commission expires:

_____        _____
                                   Notary Public in and for

INDIVIDUAL ACKNOWLEDGMENT
(Man or Woman)

STATE OF _____)
COUNTY OF _____)

BEFORE ME, the undersigned authority, on this day personally appeared _____ _____ known to me to be the person(s) whose name(s) is (are) subscribed to the foregoing instrument, and acknowledged to me that __he__ executed the same for the purposes and consideration therein expressed and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this _____ day of _____, 19___.

My commission expires:

_____        _____
                                Notary Public in and for

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

INDIVIDUAL ACKNOWLEDGMENT
(Man or Woman)

STATE OF _____)
COUNTY OF _____)

BEFORE ME, the undersigned authority, on this day personally appeared _____ _____ known to me to be the person(s) whose name(s) is (are) subscribed to the foregoing instrument, and acknowledged to me that __he__ executed the same for the purposes and consideration therein expressed and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this _____ day of _____, 19___.

My commission expires:

_____        _____
                                Notary Public in and for

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOINT ACKNOWLEDGMENT
(Husband and Wife)

STATE OF _____)
COUNTY OF _____)

BEFORE ME, the undersigned authority, a Notary Public in and for _____ County, _____, on this day personally appeared _____ _____ and _____, his wife, both known to me to be the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that they each executed the same for the purposes and consideration therein expressed, and the said wife, having been examined by me privily and apart from her husband, and having the same fully explained to her, acknowledged such instrument to be her act and deed and she declared that she had willingly signed the same for the purposes and consideration therein expressed, and that she did not wish to retract it.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this _____ day of _____, 19___.

My commission expires:

_____        _____
                                Notary Public in and for

WORKING INTEREST OWNERS WHOSE NAMES
ARE ABBREVIATED ON EXHIBIT A AND
EXHIBIT B ARE IDENTIFIED AS FOLLOWS:

| | |
|---|---|
| Amerada: | Amerada Petroleum Corporation |
| Atlantic: | The Atlantic Refining Company |
| Birdsong-Gabriel: | Birdsong-Gabriel Oil Company |
| Browne: | Major Franklin C. Browne |
| CHTE: | Caroline Hunt Trust Estate |
| Cities Service: | Cities Service Oil Company |
| Edson: | Edson Petroleum Company |
| Fair: | Fair Oil Company |
| Fairway: | Fairway Operating Company, Inc. |
| Frankel: | Frank and George Frankel |
| Frost: | Jack Frost |
| Gulf: | Gulf Oil Corporation |
| Hamill: | Claud B. Hamill |
| Hughey: | W. R. Hughey Operating Company |
| Humble: | Humble Oil & Refining Company |
| Hunt Ind.: | Hunt Industries |
| Hunt Oil: | Hunt Oil Company |
| Hunt Petr.: | Hunt Petroleum Corporation |
| Lemon: | Mrs. I. M. Lemon |
| Lewis: | A. Y. Lewis |
| Lupkin: | Olga Lupkin |
| Murchison: | John W. Murchison |
| Pace: | John W. Pace |
| Pan American: | Pan American Petroleum Corporation |
| B. F. Phillips: | B. F. Phillips Petroleum Company |
| Phillips: | Phillips Petroleum Company |
| Pickens: | W. L. Pickens |
| Rayo: | Rayo Oil Company |
| Sands: | Caroline Hunt Sands |
| Sun: | Sun Oil Company |
| Texaco: | Texaco Inc. |

EXHIBIT   B

to

UNIT AGREEMENT

FAIRWAY (JAMES LIME) UNIT

The various Tracts comprising the Unit Area, under the Fairway (James Lime) Unit,
in Henderson and Anderson Counties, Texas, are described or identified as follows:

Tract 147 - Hunt Oil Wofford Heirs.  Being 100.0 acres of land out of the Maria
Equis Survey, A-6, Henderson County Texas, as described in that certain Oil,
Gas and Mineral Lease dated August 8, 1960, executed by Julia W. Mayfield, et al,
as Lessors, to Hunt Oil Company, as Lessee, of record at Volume 487, page 393,
Deed Records of Henderson County, Texas.

Tract 148 - Atlantic Faulk.  Being 160 acres out of 254.165 acres of land described
in lease from Frances Stirman Faulk, Individually and as Independent Executrix of
the Estate of Tom P. Faulk, Deceased, as Lessor, to P. N. Wiggins, Jr., et al.,
recorded in Volume 497, page 303, Deed Records of Henderson County, Texas, less
and except the most northerly 31.311 acres and the most westerly 62.854 acres,
Henderson County, Texas.

Tract 149 - Humble Fairway Unit No. 4.  Being 160 acres of land out of the Maria
Equis Survey, A-6, Henderson County, Texas, as described in that certain Designation
of Unit dated April 6, 1962, executed by Humble Oil & Refining Company of record
in Volume 515, page 289, Deed Records of Henderson County, Texas.

Tract 150 - Humble Daniel.  All that certain tract or parcel of land situated in
Henderson County, Texas, and being a 50.0 acre tract out of the Maria Equis Survey,
A-6, more particularly described as follows:
    BEGINNING at the N. W. corner of an 84 acre tract sold to Stubblefield on
        the 14th day of August, 1893;
    THENCE North 250 varas for corner;
    THENCE East 1152 varas for corner;
    THENCE South 250 varas for corner;
    THENCE West 1152 varas to the place of beginning, and containing 50 (called)
        acres of land, but which contains by recent survey 48.42 acres of land.

Tract 151 - CHTE Daniel.  All that certain tract or parcel of land situated in
Henderson County, Texas, and being 84-1/3 acre tract out of the Maria Equis Survey,
A-6, more particularly described as follows:

EXHIBIT   B

- 1 -

BEGINNING 245 varas South of the S.E. corner of a 200 acres survey sold
to Stafford Smith by W. D. Walker, Executor of James Avriette Estate;
THENCE South 415 varas stake for corner;
THENCE East 1152 varas stake for corner;
THENCE North 415 varas stake for corner;
THENCE West 1152 varas to the place of beginning, and containing 84-1/3
(called) acres of land, but which by recent survey contains 79.66
acres of land.

Tract 152 - Amerada Miller Unit.  Being 160 acres of land out of the Maria Equis
Survey, A-6, in Henderson County, Texas, as described in that certain Designation
of Unit dated October 13, 1961, executed by Amerada Petroleum Corporation, et al.,
recorded in Volume 507, page 34, Deed Records of Henderson County, Texas.

Tract 153 - Pan American Lon Morris.  Being approximately 30.45 acres of land
out of the Maria Equis Survey, A-6, in Henderson County, Texas, and being all of
the lands described in that certain Oil, Gas and Mineral Lease dated November 16,
1960, of record at Volume 490, page 26, Deed Records of Henderson County, Texas,
executed by Lon Morris College, as Lessor, in favor of Pan American Petroleum
Corporation, as Lessee, save and except the West 80 acres thereof contributed to
Tract 152 herein as described in that certain Designation of Unit dated October 13,
1961, executed by Amerada Petroleum Corporation, recorded in Volume 507, page 34,
Deed Records of Henderson County, Texas.

Tract 154 - Cities Service Miller "D" Unit.  Being 160 acres of land out of the
Maria Equis (A-6) and Wm. W. Hawkins (A-351) Surveys as described in that Designation
of Unit dated January 19, 1962, executed by Cities Service Petroleum Company,
recorded in Book 513, page 600, of the Deed Records of Henderson County, Texas.

Tract 155 - Cities Service Miller.  Being 245.715 acres, more or less, out of the
Maria Equis Survey (A-6) in Henderson County, Texas, as described in that certain
Oil, Gas and Mineral Lease executed by Xenia Miller, a feme sole, Lessor, in favor
of B. L. Garrett, Lessee, dated March 17, 1952, recorded in Volume 379, page 620,
of the Deed Records of Henderson County, Texas.

Tract 156 - Humble Fairway Unit No. 5.  Being 160.0 acres of land out of the Maria
Equis (A-6) and Wm. W. Hawkins (A-351) Surveys, Henderson County, Texas, as described
in that certain Designation of Unit dated May 17, 1962, executed by Humble Oil &
Refining Company et al., of record at Volume 519, page 80, Deed Records of Henderson
County, Texas.

Tract 245 - Amerada Truitt.  Being 39.199 acres of land out of the J. J. Martinez
Survey, A-933, Henderson County, Texas, as described in that certain Oil, Gas and
Mineral Lease dated February 5, 1952 recorded in Volume 377, page 524 of Deed Records,
Henderson County, Texas, wherein Rara Truitt, a feme sole, is lessor and B. L. Garrett
is lessee insofar only as said lease covers 39.199 acres, more or less, of the "First
Tract" described in said lease not included in the Truitt Oil Unit "B"; and not included
in the Pagitt Unit as described in "Designation of Pagitt Unit" recorded in Volume
520, Page 481 of Deeds of said County and State.

EXHIBIT B

- 2 -

Tract 246 - Atlantic Truitt Unit "B".  Being 160 acres of land out of the Maria
Equis (A-6), Z. W. Parmer (A-621) and J. J. Martinez (A-993) Surveys, Henderson
County, Texas as described in that certain Designation of Unit dated October 13,
1961, executed by The Atlantic Refining Company Et Al and recorded in Vol. 505,
page 77, Deed Records of Henderson County, Texas.

Tract 247 - Atlantic Truitt Unit.  Being 160.000 acres out of J. J. Martinez
Survey, A-933, more particularly described in Declaration of Unit dated July 18,
1961, executed by The Atlantic Refining Company et al, recorded in Volume 499,
page 468, Deed Records of Henderson County, Texas.

Tract 248 - Atlantic Dansby Unit.  Being 160.000 acres out of the J. J. Martinez
Survey, A-993, W. H. Faulk Survey, A-223, Z. W. Parmer Survey, A-621, and the Maria
Equis Survey, A-6, as described in Declaration of Unit executed by The Atlantic
Refining Company dated September 5, 1961, recorded in Volume 503, page 153, Deed
Records of Henderson County, Texas.

Tract 249 - Atlantic Bruton Unit.  Being 160.0 acres out of the J. J. Martinez
Survey, A-993, Henderson County, Texas, as described in that Amendment of Declara-
tion of Unit dated October 13, 1961, executed by The Atlantic Refining Company et
al, recorded in Volume 508, page 375, Deed Records of Henderson County, Texas.

Tract 250 - Atlantic Evans Unit.  Being 160 acres out of the W. H. Faulk (A-223)
and J. J. Martinez (A-993) Surveys, Henderson County, Texas, as described in that
Unit Designation dated June 27, 1961, executed by The Atlantic Refining Company
et al, recorded in Volume 498, page 236, Deed Records of Henderson County, Texas.

Tract 251 - Hunt Oil Fincastle Unit.  Being 159 acres out of the J. J. Martinez
(A-993) and Estavan Casenova (A-129) Surveys as described in that Designation of
Unit dated May 10, 1962, executed by Hunt Oil Company et al, recorded in Volume 518,
page 99, Deed Records of Henderson County, Texas.

Tract 252 - Cities Service Miller "B". Being 146.68 acres out of 742.6 acres, more
or less, out of the J. J. Martinez (A-993), W. W. Hawkins (Large) (A-347) and
Estevan Cazenova (A-129) Surveys, more particularly described in Oil, Gas and Mineral
Lease dated March 17, 1952, by Xenia Miller, a feme sole, Lessor, to B. L. Garrett,
Lessee, recorded in Volume 378, page 612, of the Records of Henderson County, Texas.

Tract 253 - Cities Service Kitchens Unit.  Being 146.90 acres out of the W. W.
Hawkins (A-347) and Estevan Casanova (A-129) Surveys in Henderson County, Texas, as
described in that Declaration of Unit dated December 21, 1962, executed by Cities
Service Petroleum Company et al, recorded in Volume 534, Page 619, Deed Records of
Henderson County, Texas.

Tract 254 - Cities Service Miller "G" Unit.  Being 160 acres out of W. W. Hawkins
(A-347) and Thomas Chaffin (A-4) Surveys in Henderson County, Texas as described
in that Designation of Unit dated January 3, 1963, by Cities Service Oil Company,
recorded in Volume 529, page 9, Deed Records, Henderson County, Texas.

EXHIBIT  B

- 3-

Tract 255 - Cities Service Miller. Being 640 acres, more or less, out of the
Thomas Chaffin Survey, A-4, described in that certain Oil, Gas and Mineral Lease
dated March 17, 1952, by Xenia Miller, a feme sole, Lessor, to B. L. Garrett, Lessee,
recorded in Volume 378, page 618, in the Deed Records, Henderson County, Texas,
save and except 35.04 acres contributed to Cities Service Miller "G" Unit described
under Tract 254 herein, and save and except 60.56 acres contributed to the Cities
Service Miller "K" Unit described under Tract 256 herein.

Tract 256 - Cities Service Miller "K" Unit. Being 160 acres out of the Thomas
Chaffin (A-4), W. W. Hawkins (A-347) and Estavan Casanova (A-129) Surveys, Henderson
County, Texas, as more particularly described in that certain Designation of Unit
dated March 13, 1962 by Cities Service Petroleum Company, recorded in Volume 513,
page 602, Deed Records of Henderson County, Texas.

Tract 344 - Amerada Pagitt Unit. Being 160.000 acres out of the J. J. Martinez
Survey, A-993, Henderson County, Texas, as described in that Designation of Unit
dated July 12, 1962, executed by Amerada Petroleum Corporation et al, recorded
Volume 520, page 481, Deed Records of Henderson County, Texas.

Tract 345 - Cities Service Ellis. Being 55.173 acres, more or less, in the J. J.
Martinez Survey, A-993, Henderson County, Texas, out of that certain Oil, Gas and
Mineral Lease dated February 27, 1952 from Mollie E. Ellis, a widow, et al, Lessor,
to B. L. Garrett, Lessee, recorded in Volume 384, page 2, Deed Records of Henderson
County, Texas, being all of the lands covered thereby save and except that portion
contributed to the Cities Service Ellis "C" Unit described under Tract 346 herein.

Tract 346 - Cities Service Ellis "C" Unit. Being 159.813 acres out of the J. J.
Martinez Survey, A-933, Henderson County, Texas as described in that Designation of
Unit dated October 1, 1962, executed by Cities Service Oil Corporation et al and
recorded in counterpart including Volume 525, page 167, Deed Records of Henderson
County, Texas.

Tract 347 - Amerada Selman. Being 93.89 acres of land out of the J. J. Martinez
Survey, A-993, Henderson County, Texas, insofar as said lease covers the West Half
of the Second Tract therein listed, the said lease being executed on February 5,
1952 by Rara Truitt, a feme sole, as Lessor, and B. L. Garrett, as Lessee, of record
at Volume 377, page 524, Deed Records of Henderson County, Texas.

Tract 348 - Cities Service Truitt. Being 160 acres out of the J. J. Martinez
Survey, A-993, Henderson County, Texas, composed of 84.1 acres described in third
tract of Oil, Gas and Mineral Lease dated February 5, 1952 from Rara Truitt, Lessor,
to B. L. Garrett, Lessee, recorded in Book 377, page 524, Deed Records of Henderson
County, Texas, and the East one-half of the 185 acre tract described in second tract
of said Oil, Gas and Mineral Lease.

Tract 349 - Fairway Campbell-Bristow Unit. Being 159.763 acres out of the Estevan
Casenova Survey, A-129, Henderson County, Texas, as described in that Designation
of Unit dated October 16, 1961, executed by Fairway Oil & Gas Company, Inc. et al,
recorded in Volume 507, page 189, Deed Records of Henderson County, Texas.

EXHIBIT   B

- 4 -

Tract 350 - Cities Service Miller "C" Unit.  Being 159.19 acres out of the Estevan Casenova (A-129) and J. J. Martinez Surveys (A-993), Henderson County, Texas, as described in that certain Designation of Unit dated September 11, 1961, by Cities Service Petroleum Company, recorded in Volume 503, page 208, Deed Records of Henderson County, Texas.

Tract 351 - Cities Service Miller "F".  Being 145.760 acres out of Estevan Casenova Survey (A-129), Henderson County, Texas, as described in Oil, Gas and Mineral Lease dated March 17, 1952, by Xenia Miller, a feme sole, Lessor, to B. L. Garrett, Lessee, recorded in Volume 378, page 612, Records of Henderson County, Texas.

Tract 352 - Sun Owens Unit.  Being 159.23 acres of land out of the Estevan Casanova (A-129), C. L. Owens (A-1182) and W. W. Hawkins (A-347) Surveys, Henderson County, Texas, as described in that certain Declaration of Unit executed by Sun Oil Company of record at Volume 521, page 77, Deed Records of Henderson County, Texas.

Tract 353 - Hunt Oil Mitchell Unit.  Being 159.769 acres out of the Estevan Casenova (A-129) and Felix Parks (A-647) Surveys, Henderson County, Texas, as described in Designation of Unit dated October 23, 1961, executed by Hunt Oil Company et al, recorded in Volume 505, page 588, Deed Records of Henderson County, Texas.

Tract 354 - Phillips Costlow Unit.  Being 160.000 acres out of the Thomas Chaffin, A-4, Survey, Henderson County, Texas, as described in that Designation of Unit dated June 13, 1962, executed by Phillips Petroleum Corporation et al, recorded in Volume 519, page 408, Deed Records of Henderson County, Texas.

Tract 355 - Hunt Oil Peveto.  Being 29.887 acres of land out of Lot No. 3, Thomas Chaffin Survey, A-4, Henderson County, Texas, as described in that certain Oil, Gas and Mineral Lease dated May 16, 1958, executed by R. L. Peveto, as Lessor, to Hunt Oil Company, as Lessee, of record at Volume 460, page 498, Deed Records of Henderson County, Texas, the same being all of the land covered by said lease save and except 52.018 acres contributed to Phillips Costlow Unit referred to herein as Tract No. 354.

Tract 356 - Hunt Oil Smith.  Being 106.014 acres described as Lot 5 out of the Thomas Chaffin Survey, A-4, Henderson County, Texas, and as described in Oil, Gas and Mineral Lease from Nay Perry, et al, as Lessors, to Hunt Oil Company, as Lessee, dated March 25, 1958, and recorded in Volume 461, page 306, Deed Records of Henderson County, Texas.

Tract 357 - Fairway Smith.  Being 106.014 acres of land described as Lot 4, Thomas Chaffin Survey, A-4, Henderson County, Texas, described in Oil, Gas and Mineral Lease from Larkin Smith et al, as Lessors, to Fairway Operating Company, Inc., Lessee, dated August 6, 1960, recorded at Volume 488, page 135, Deed Records of Henderson County, Texas.

Tract 443 - Hunt Oil Mixon.  Being 160.0 (called) acres of land out of the Wm. J. L. Scott League, A-13, Henderson County, Texas as described in that certain Oil, Gas and Mineral Lease, dated July 19, 1960, executed by George F. Mixon, et ux, as Lessors, to Hunt Oil Company, as Lessee, of record at Volume 473, page 89, Deed Records of Henderson County, Texas, the said tract having been surveyed and ascertained to contain 172.622 acres.

EXHIBIT  B

- 5 -

Tract 444 - Humble Fairway Unit No. 3. Being 160 acres of land out of the A. H.
Caldwell (A-950) and W. J. L. Scott (A-13) Surveys, in Henderson County, Texas,
as described in that certain Designation of Unit dated April 23, 1962, executed
by Humble Oil & Refining Company et al of record in Volume 518, at Page 249, Deed
Records of Henderson County, Texas.

Tract 445 - Humble Mixon. Being all of the G. C. Woods Survey, A-1080, in
Henderson County, Texas, containing by actual survey 159.27 acres of land.

Tract 446 - Hunt Ind. Myrick Unit. Being 158.198 acres out of the Estevan Casenova
Survey, A-129, Henderson County, Texas, as described in that Designation of Unit
dated September 29, 1961, executed by Hunt Oil Company et al and recorded in
Volume 508, page 6, Deed Records of Henderson County, Texas.

Tract 447 - Hunt Ind. Cartwright Unit. Being 153.575 acres out of the Estevan
Casenova (A-129) and Jose Mora (A-497) Surveys, in Henderson County, Texas, as
described in that Designation of Unit dated October 19, 1961, executed by Lyda
Hunt - Herbert Trusts Et Al and recorded in Volume 506, Page 604, Deed Records of
Henderson County, Texas.

Tract 448 - Texaco Dickerson Unit. Being 160.000 acres of land out of the Estevan
Casenova Survey, A-129, Henderson County, Texas, Designation of Unit dated September 19,
1961, executed by Texaco Inc. et al and recorded in Vol. 506, page 575, Deed Records
of Henderson County, Texas.

Tract 449 - Atlantic J. H. Dickerson Unit. Being 159.948 acres out of the Estevan
Cazenova (A-129) and Isaac Roberts (A-658) Surveys, as described in that Designation
of Unit dated October 17, 1961, executed by The Atlantic Refining Company and recorded
in counterparts, one of which was recorded in Volume 510, Page 390, Deed Records of
Henderson County, Texas.

Tract 450 - Atlantic Campbell Unit. Being 159.962 acres out of the Estevan Cazenova
Survey, A-129, Henderson County, Texas, as described in that Designation of Unit
dated December 27, 1961, executed by The Atlantic Refining Company et al and recorded
in Volume 513, Page 107, Deed Records of Henderson County, Texas.

Tract 451 - Rayo Pagitt Unit. Being 160.000 acres out of the Estevan Casanova Survey,
A-129, Henderson County, Texas, as described in that Designation of Unit dated
August 7, 1961, executed by Rayo Oil Company Et Al and recorded in Volume 501, Page
136, Deed Records of Henderson County, Texas.

Tract 452 - Fairway Walker. Being 160.0 acres of land out of the Felix Parks (A-647)
and Estavan Casanova (A-129) Surveys, Henderson County, Texas, as more particularly
described in that certain Oil, Gas and Mineral Lease dated June 18, 1960, executed
by Stella Mae Walker et vir and recorded in Volume 473, Page 82, Deed Records of
Henderson County, Texas, being all of the lands (180.924 acres) covered and included
in said lease save and except 20.924 acres contributed to the Hunt Oil Walker Unit
described under Tract 453 herein.

EXHIBIT B

- 6 -

**Tract 453 - Hunt Oil Walker Unit.**  Being 148.948 acres out of the Jose Mora (A-497)
and Estevan Casenova (A-129) Surveys, as described in that Designation of Unit dated
November 7, 1961, executed by Hunt Oil Company Et Al and recorded in Volume 509,
Page 1, Deed Records of Henderson County, Texas.

**Tract 454 - Fair Campbell Unit.**  Being 152.49 acres of land out of the Thomas Chaffin
(A-4), J. F. Austin (A-1152), and the M. A. Bizzell (A-1001) Surveys, as described
in that Declaration of Unitization executed by Fair Oil Company et al dated August 20,
1961, recorded in Volume 505, Page 123, Deed Records of Henderson County, Texas.

**Tract 455 - Fair Austin.**  Being the South 160.0 acres of land out of the M. A.
Bizzell Survey, A-1001, Henderson County, Texas, the said Survey containing by actual
survey 163.84 acres of land.

**Tract 456 - Texaco Lloyd Unit.**  Being 152.243 acres out of the Thomas Chaffin (A-4)
and J. W. Hancock (A-346) Surveys, as described in that Declaration of Unit dated
September 11, 1961, executed by Texaco Inc. et al and recorded in Volume 505, Page 64,
Deed Records of Henderson County, Texas.

**Tract 457 - Sun Lloyd Unit "B".**  Being 123.44 acres of land out of the Thomas Chaffin
(A-4) and J. W. Hancock (A-346) Surveys, Henderson County, Texas as described in that
certain Declaration of Unit executed by Sun Oil Company of record at Volume 520, Page
392, Deed Records of Henderson County, Texas.

**Tract 458 - Sun Lloyd "A".**  Being 160 acres out of the J. W. Hancock Survey, A-346,
Henderson County, Texas, more fully described as follows, to-wit:
    BEGINNING at the SE corner of the J. W. Hancock Survey, A-346, said point being
also the NE corner of the B. H. Bizzell Survey, A-964; THENCE, S 89° 36' W, a
distance of 2648.6' to the SW corner of the said J. W. Hancock Survey and NW corner
of the said B. H. Bizzell Survey; THENCE, N 0° 09' W along the W line of said J. W.
Hancock Survey a distance of 2103.8' to a point in the said W line of said Survey,
said point being also the SW corner of a 50 acre tract; THENCE, N 88° 30' E along
for the S line of the said 50 acre tract for a distance of 1320.0' to a point, said
point being the SE corner of said 50 acre tract; THENCE, N 0° 09' W and along the
E line of said 50 acre tract a distance of 1340.0' to a point in said line for
corner; THENCE, N 89° 53' E 520.9' to a stake for corner; THENCE, S 0° 07' E 1065.0'
to a point for corner; THENCE, N 89° 53' E 230.0' to a point for corner; THENCE,
N 0° 07' W 740.0' to a point for corner; THENCE, N 89° 53' E a distance of 580.0'
to the E line of the J. W. Hancock Survey for corner; THENCE, S 0° 07' E with the
E line of said J. W. Hancock Survey, a distance of 3137.9' to the place of beginning,
and containing 160 acres of land.

**Tract 459 - Frankel Cain.**  Being 269.0 acres of land out of the George Isaacs Survey,
A-387, Henderson County, Texas, as further described in that certain Oil, Gas and
Mineral Lease from the Cain Trusts to Frank Frankel, et al, dated September 14, 1959,
recorded in Volume 475, Page 147, Deed Records of Henderson County, Texas.

**Tract 539 - Hunt Petr. Ground.**  Being 47.82 acres of land out of the I. W. Burton
League, A-3, Henderson County, Texas, the said tract being more fully described as
follows:

EXHIBIT  B

- 7 -

BEGINNING at the Northwest corner of a certain tract of land containing 179.20 (called) acres as described in that certain Oil, Gas and Mineral Lease dated August 31, 1960, executed by Mrs. Emily R. Cameron et al, as Lessors, to Hunt Petroleum Corporation, as Lessee, of record at Vol. 488, page 132, Deed Records of Henderson County, Texas, said point being also the Northeast corner of a 41 (called) acre tract owned by Cuba Ezell; THENCE, South 89° 30' East a distance of 2518.0 feet to a point for the Northeast corner of this tract, said point being also a Northwesterly corner of the Hunt Petroleum Corporation - Thrasher Unit No. 2; THENCE, South along a westerly line of the said Hunt Petroleum Corporation - Thrasher Unit No. 2, a distance of 1404.12 feet to a point for an inside corner of said Thrasher Unit No. 2 and for the Southeast corner of this tract; THENCE, West along the Northerly line of the said Thrasher Unit No. 2 a distance of 355.16 feet to a point, said point being the most Northeasterly corner of the William Vejans 24½ acre tract and continuing South 89° 17' West a distance of 1119.13 feet to a point for an inside corner of the said Cuba Ezell 41 acre tract for the Southwest corner of this tract; THENCE, North with the East line of the said Ezell tract, North 0° 30' West a distance of 1413.36 feet to the place of beginning, the said described tract containing 47.82 acres of land.

Tract 540 - Hunt Petr. Lee.  Being 98.4 (called) acres of land out of the I. W. Burton Survey, A-3, as said tract is described in that certain Oil, Gas and Mineral Lease dated July 15, 1960, executed by John Lee et al of record at Volume 486, Page 470, Deed Records of Henderson County, Texas, the said tract having been surveyed and found to contain 102.912 acres of land.

Tract 541 - Hunt Oil J. T. Thrasher..  Being 54.854 acres of land out of the I. W. Burton League, A-3, Henderson County, Texas, and being more particularly described as the North 54.854 acres of land out of the 123 (called) acre tract described in that certain Oil, Gas and Mineral Lease dated May 31, 1960 executed by Joe A. Thrasher et al, as Lessors, to Hunt Oil Company, as Lessee, of record at Volume 486, Page 464, Deed Records of Henderson County, Texas, the said 123 (called) acre tract by actual survey having been ascertained to contain 102.573 acres of land.

Tract 542 - Hunt Oil Thrasher Unit No. 2.  Being 159.600 acres out of the I. W. Burton League, A-3, Henderson County, Texas, as described in that Unit Designation dated December 27, 1961, executed by Hunt Oil Company et al and recorded in Volume 518, Page 255, Deed Records of Henderson County, Texas.

Tract 543 - Atlantic LaRue.  The North 120 acres of land out of the 320 acre N. T. Robinson Survey, A-664, Henderson County, Texas, more particularly described in Oil and Gas Lease from Jack Daniel, Lessor, to A. L. Anglin, Lessee, recorded November 1, 1951, at Volume 376, page 404, Deed Records of Henderson County, Texas, the said tract having been surveyed and found to contain 120.50 acres of land.

Tract 544 - Hunt Oil Thrasher Unit No. 1.  Being 159.620 acres out of the N. T. Robinson (A-664), Jose Mora (A-497), and the I. W. Burton (A-3) Surveys, Henderson County, Texas, as described in that Designation of Unit dated December 1, 1961, executed by Hunt Oil Company et al and recorded in Volume 508, Page 235, Deed Records of Henderson County, Texas.

Tract 545 - Hunt Oil Hamilton Unit.  Being 158.856 acres out of the Jose Mora (A-497) and N. T. Robinson (A-664) Surveys, as described in that Designation of Unit dated October 23, 1961, executed by Hunt Oil Company et al, and recorded in Volume 508, Page 229, Deed Records of Henderson County, Texas.

EXHIBIT  B

<u>Tract 546 - Hunt Oil Milner Unit</u>.  Being 159.186 acres out of the Jose Mora (A-4;
and T. B. R. Roberts (A-672) Surveys as described in that Designation of Unit date
October 11, 1961, executed by Hunt Oil Company et al and recorded in counterparts,
one of which is recorded in Volume 508, Page 11, Deed Records of Henderson County,
Texas.

<u>Tract 547 - Atlantic C. P. Dickerson Unit</u>.  Being 159.5095 acres out of the T. B. R.
Roberts Survey, A-672, Henderson County, Texas, as described in that Designation of
Unit dated November 14, 1961, executed by The Atlantic Refining Company et al and
recorded in counterparts, one of which is recorded in Volume 511, pages 553, 565,
respectively, of the Deed Records of Henderson County, Texas.

<u>Tract 548 - Atlantic Milner Unit</u>.  Being 160.000 acres out of the Jose Mora Survey,
A-497, Henderson County, Texas, as described in that Designation of Unit dated
September 8, 1961, executed by The Atlantic Refining Company et al and recorded in
Volume 503, page 576, Deed Records of Henderson County, Texas.

<u>Tract 549 - Sun Miller-Hurt</u>.  Being 320 acres of land out of the 330.57 acre Isaac
Roberts Survey, A-658, Henderson County, Texas, and being more particularly described
as being all of the lands contained in said Survey save and except the North 10.57
acres of the West 170.57 acres contributed to the Atlantic J. H. Dickerson Unit,
Tract 449 herein.

<u>Tract 551 - Hunt Oil Travis Unit</u>.  Being 160.000 acres out of the Jose Mora Survey,
A-497, Henderson County, Texas, as described in that Designation of Unit dated
October 9, 1961, executed by Hunt Oil Company et al and recorded in Volume 505, page
379, Deed Records of Henderson County, Texas.

<u>Tract 552 - Hunt Oil Emerson and Riley Unit</u>.  Being 160.000 acres out of the Jose
Mora Survey, A-497, Henderson County, Texas, as described in that Designation of Unit
dated September 5, 1961, executed by Hunt Oil Company et al and recorded in Volume
504, page 234, Deed Records of Henderson County, Texas.

<u>Tract 553 - Hunt Oil Bizzell Unit</u>.  Being 160.000 acres out of the Jose Mora Survey,
A-497, Henderson County, Texas, as described in that Designation of Unit dated
October 2, 1961, executed by Hunt Oil Company et al and recorded in counterparts,
one of which is recorded in Volume 506, page 176, Deed Records of Henderson County,
Texas.

<u>Tract 554 - Fairway Lupkin "C" Unit</u>.  Being 160.000 acres of land out of the J. H.
Bizzell Survey, A-1000, in Henderson County, Texas, as described in Unit Declaration
dated September 26, 1961, and recorded December 4, 1961 in Volume 506, page 373,
Deed Records of Henderson County, Texas.

<u>Tract 555 - Fairway Lupkin "A-1"</u>.  Being 160.000 acres of land out of the George W.
Baker Survey, A-897, Henderson County, Texas, and being described by metes and bounds
as follows, to-wit:
    BEGINNING at a point on the West line of the said G. W. Baker Survey, said point
    being 1381.91 feet North $10^0$ 03'East of the most Westerly Southwest corner of
    said survey; THENCE, South $79^0$ 57' East a distance of 4197.24 feet to a point in
    the East line of the said Baker Survey; THENCE, in a northerly direction with the
    East line of said Survey a distance of          feet to the Northeast corner of
    the said Baker Survey; THENCE, North $83^0$ 35·' West a distance of 2925.67 feet to a
    point for the interior corner of this tract; THENCE, North a distance of 187.80

<u>EXHIBIT  B</u>

- 9 -

feet to a point in the North line of the said Baker Survey for a Northeast
corner of this tract; THENCE, North 79° 57' West a distance of 1243.33 feet
to the Northwest corner of the said Baker Survey and this tract; THENCE, in
a Southerly direction with the West line of the said Baker Survey a distance
of            feet to the place of beginning, the said tract containing 160.000
acres of land.


Tract 556 - Fairway Lupkin "B" Unit. Being 160.000 acres of land out of the B. H.
Bizzell Survey, A-964, Henderson County, Texas, as described in Unit Declaration
dated September 28, 1961 and recorded August 20, 1962 in Volume 522, page 126,
Deed Records of Henderson County, Texas.


Tract 557 - Lewis Burtis. Being 55 acres out of the George Isaacs Survey, A-387,
Henderson County, Texas, described as follows, to-wit:
FIRST TRACT: All that certain tract or parcel of land, situated in Henderson
County, Texas, on the George Isaacs Survey, containing 50 acres of land, and
described as follows:
BEGINNING at the Southeast corner of the Coleman and Cain tract in the East line
of said Isaacs Survey and in the West line of M. Goliher League; THENCE, West with
the South line of said Coleman and Cain tract, 960 vrs. to its SWC in the West
line of said Isaacs Survey; THENCE, South with said West line 294 vrs. to point
in said West line for the Southwest corner of this tract; THENCE, East 960 vrs.
to point for corner in the East line of the Isaacs Survey, same being in the
West line of the M. Goliher League, for the Southeast corner of this tract; THENCE,
North with the East line of said Isaacs Survey, 294 vrs. to the place of BEGINNING,
and containing 50 acres of land, more or less.

SECOND TRACT: All that certain tract or parcel of land, situated in Henderson
County, Texas, on the George Isaacs Survey, described as follows:
BEGINNING at the Southwest corner of the above described 50 acre tract for the
Northwest corner of this tract; THENCE, South 15 vrs. with said West line; THENCE,
East 460 vrs.; THENCE, South 60 vrs.; THENCE, East 100 vrs.; THENCE, North 60 vrs.;
THENCE, East 400 vrs. to point in said Isaacs Survey East line, for the Southeast
corner of this tract; THENCE, North with said Isaacs East line 15 vrs. to point
for corner, same being the Southeast corner of First Tract; THENCE, West with the
South line of the above described tract 960 vrs., more or less, to the BEGINNING,
containing 5 acres of land, more or less.


Tract 558 - Lupkin Fee. Being 50.76 acres of land out of the George Isaacs Survey,
A-387, and P. N. Smith Survey, A-1168, Henderson County, Texas, more fully described
as follows:
FIRST TRACT: BEGINNING at the S E corner of the Geo. Isaacs Survey; THENCE, West
960 vrs; THENCE, North 160 vrs. to corner; THENCE, East 460 vrs; THENCE South 60
vrs; THENCE, East 100 vrs; THENCE, North 60 vrs; THENCE, East 400 vrs to corner;
THENCE, South 160 vrs to PLACE OF BEGINNING and being a part of the Geo. Isaacs
Survey;

SECOND TRACT: Being the P. N. Smith Survey, and BEGINNING at the S E corner of
the Geo. Isaacs Survey; THENCE, South 141 vrs. corner; THENCE, West 820 vrs. to
corner of Bart Bizzell Survey; THENCE, continue West 140 vrs. to corner; THENCE,
North 141 vrs. to corner; THENCE, East with S B line of Geo. Isaacs Survey 960
vrs to PLACE OF BEGINNING.


Tract 560 - Atlantic Billingsley Unit. Being 141.651 acres out of the Larkin
Robertson Survey, A-689, Henderson County, Texas, as described in Unit Declaration
executed by The Atlantic Refining Company dated October 6, 1961, recorded in Volume
505, page 172, Deed Records of Henderson County, Texas.


EXHIBIT  B

- 10 -

Tract 561 - Frankel Robinson.  Being 86 acres out of the John Ferguson League, A-22, Henderson County, Texas, described as follows:
   Being a part of the John Ferguson League, and being a part of a certain 236 acre tract bought by P. M. Smith from T. N. Jones by deed dated November 28, 1900 and recorded in Deed Records of Henderson County, Texas in Volume 44, page 210, and more particularly described as follows:
   BEGINNING at the North West corner of said 236 acre tract, being the NW corner of the John Ferguson League, witness a B J 12 inches in Dia. N. 44 E 1-1/5 varas; THENCE, East 618 varas, stake in field; THENCE, South 785.1 varas, a stake from which a B J 15 inches Dia. brs. N 70½ W 6 vrs. a Hickory 14 inches Dia. brs 20½ East 5.4 vrs.; THENCE, West 618 vrs. to the West Boundary Line of said Ferguson League; THENCE, North 785 vrs. to the BEGINNING, containing 86 acres of land, more or less.


Tract 637 - Hunt Petr. Pagitt.  Being 50.175 acres of land out of the I. W. Burton League, A-3, Henderson County, Texas, as described in that certain Oil, Gas and Mineral Lease dated August 5, 1960, executed by R. R. Pagitt, as Lessor, to Hunt Petroleum Corporation, as Lessee, of record at Volume 473, page 429, Deed Records of Henderson County, Texas.


Tract 638 - Hunt Petr. Douglas.  Being 23.799 acres of land out of the I. W. Burton League, A-3, Henderson County, Texas, being described by metes and bounds as follows, to-wit:
BEGINNING at the Northwest corner of the tract known and described as the Hunt Petroleum Corporation - Winston Unit No. 2 as described in that certain Designation of Unit dated November 13, 1961 of record at Volume 510, page 621, Deed Records of Henderson County, Texas, said point being also the North line of the Paul Winston 213 (called) acre tract; THENCE, South with the West line of the said Winston Unit No. 2, a distance of 2159.37 feet to a point in the center of the T. & N. O. Railway Right-of-Way for the Southeast corner of this tract; THENCE, South 62° 57' West along the center of the said Right-of-Way, a distance of 494.26 feet to a point, said point being the Southeast corner of the R. R. Pagitt called 50 acre tract, for the Southwest corner of this tract; THENCE, North 0° 45' West along the West line of the said Paul Winston Tract and the East line of the said R. R. Pagitt Tract a distance of 2382.16 feet to a point, said point being the Northeast corner of the said R. R. Pagitt Tract and the Northwest corner of the Paul Winston Tract and this tract; THENCE, North 89° 44' East along the North line of the said Paul Winston Tract a distance of 471.37 feet to the place of beginning, the said described tract containing 23.799 acres of land.


Tract 639 - Hunt Petr. Winston Unit No. 2.  Being 160.000 acres of land out of the I. W. Burton League, A-3, Henderson County, Texas, as described in that Designation of Unit dated November 13, 1961, executed by Hunt Petroleum Corporation et al and recorded in Volume 510, page 621, Deed Records of Henderson County, Texas.


Tract 640 - Hunt Petr. Richards Unit.  Being 160.000 acres of land out of the I. W. Burton League, A-3, Henderson County, Texas, as described in that Designation of Unit dated April 27, 1962, executed by Hunt Petroleum Corporation et al and recorded in Volume 521, pages 19 and 24, Deed Records of Henderson County, Texas.


Tract 641 - Hunt Oil West Poynor Unit.  Being 160.000 acres of land out of the I. W. Burton League, A-3, Henderson County, Texas, as described in that Amended Designation of Unit dated November 14, 1961, executed by Hunt Oil Company et al and recorded in counterparts, one of which is in Volume 513, page 386, Deed Records of Henderson County, Texas.


EXHIBIT  B

- 11 -

Tract 642 - Hunt Oil Northeast Poynor Unit.  Being 160.000 acres of land out of
the I. W. Burton League, A-3, Henderson County, Texas, as described in that Designation
of Unit dated November 28, 1961, executed by Hunt Oil Company et al and recorded in
Volume 508, page 289, Deed Records of Henderson County, Texas.


Tract 643 - Texaco Martin Unit.  Being 160.000 acres of land out of the D. M.
Dickerson Survey, A-212, Henderson County, Texas, as described in that Declaration
of Unit dated July 25, 1961, executed by Texaco Inc. et al and recorded in counter-
parts in Volume 500, pages 281, 269, 263, 266 and 260, Deed Records of Henderson County,
Texas.


Tract 644 - Humble Fairway Unit No. 2.  Being 160.000 acres of land out of the Jose
Mora (A-497) and Alfred Benge (A-57) Surveys, Henderson County, Texas, as described
in that Designation of Unit dated October 5, 1961, executed by the Humble Oil &
Refining Company et al and recorded in Volume 505, page 505, Deed Records of
Henderson County, Texas.


Tract 645 - Pickens Travis Unit.  Being 160.000 acres of land out of the Jose Mora
(A-497) and Alfred Benge (A-57) Surveys, Henderson County, Texas, as described in
that Designation of Unit dated July 20, 1961, executed by W. L. Pickens et al and
recorded in Volume 501, page 423, Deed Records of Henderson County, Texas.


Tract 646 - Humble Fairway Unit No. 1.  Being 160.000 acres of land out of the John
Raschall (A-662) and Jose Mora (A-497) Surveys, Henderson County, Texas, as described
in that Designation of Unit dated August 31, 1961, executed by Humble Oil & Refining
Company et al and recorded in Volume 503, page 119, Deed Records of Henderson County,
Texas.


Tract 647 - Atlantic Melton Unit.  Being 160.000 acres out of the Alfred Benge
Survey, A-57, more particularly described in Declaration of Unit executed by The
Atlantic Refining Company, June 30, 1961, recorded at Volume 498, page 389, Deed
Records of Henderson County, Texas.


Tract 648 - Birdsong-Gabriel Westbrook Unit.  Being 134.77 acres of land out of the
John Raschall (A-662), Jose Mora (A-497), and Alfred Benge (A-57) Surveys, Henderson
County, Texas, as described in that Declaration of Unit dated August 1, 1961, executed
by Fred Birdsong et al and recorded in Volume 500, page 387, Deed Records of Henderson
County, Texas.


Tract 649 - Pickens Fisher Unit.  Being 160.000 acres of land out of the Alfred Benge
(A-57) and John Raschall (A-662) Surveys, Henderson County, Texas, as described in
that Designation of Unit dated June 28, 1961, executed by W. L. Pickens et al, recorded
in Volume 499, page 271, Deed Records of Henderson County, Texas.


Tract 650 - Pickens Gower Unit.  Being 160.000 acres of land out of the John Raschall
(A-662) and Jose Mora (A-497) Surveys, Henderson County, Texas, as described in that
Declaration of Unit dated June 20, 1961, executed by W. L. Pickens et al, recorded in
Volume 497, page 235, Deed Records of Henderson County, Texas.


EXHIBIT  B

- 12 -

<u>Tract 651 - Hunt Oil Westbrook Unit</u>. Being 155.680 acres of land out of the Alfred
Benge League, A-57, Henderson County, Texas, as described in that Designation of
Unit dated August 21, 1961, executed by Hunt Oil Company et al and recorded in
Vol. 503, page 582, Deed Records of Henderson County, Texas.

<u>Tract 652 - Atlantic Westbrook</u>. Being 160.00 acres of land in the Alfred Benge
League (2-57), Henderson County, Texas, out of 176.74 (called) acres of land
described in lease from W. J. Westbrook et ux, Lessors, to B. L. Garrett, recorded
in Volume 373, page 143, Deed Records of Henderson County, Texas, less and except
14.409 acres out of the Northwest Corner, such excepted tract being included in
and a part of the Hunt Oil Bizzell Unit (Tract No. 553 herein) described in that
certain Designation of Unit dated October 2, 1961, of record at Volume 506, page
176 Deed Records of Henderson County, Texas.

<u>Tract 653 - Hunt Oil Campbell Unit</u>. Being 152.275 acres of land out of the Alfred
Benge League, A-57, Henderson County, Texas, as described in that Designation of
Unit dated August 7, 1961, executed by Hunt Oil Company et al and recorded in
Vol. 503, page 580, Deed Records of Henderson County, Texas, and in Volume 647,
page 348, Deed Records of Anderson County, Texas.

<u>Tract 654 - Fairway Lupkin "D" Unit</u>. Being 131.311 acres out of the Alfred Benge
(A-57), George W. Baker (A-897), and J. H. Bizzell (A-1000) Surveys, in Henderson
County, Texas, and being more particularly described by metes and bounds as follows,
to-wit:
BEGINNING at the most Southeasterly corner of the J. H. Bizzell Survey, A-1000,
said point being on the North line of the said Alfred Benge League and being
the most Westerly Southwest corner of the George W. Baker Survey, A-897; THENCE,
South 80° 27' East along the North line of the said Benge League a distance of
2756.57 feet to a point in the said Baker Survey; THENCE, South 9° 06' West
859.49 feet to a point in the most Southerly line in the said Baker Survey;
THENCE, North 79° 47' West along the most Southerly line of the said Baker
Survey, a distance of 270.60 feet to a point in the East line of the Benge
League, said point being also the most Southerly Southwest corner of the said
Baker Survey; THENCE, South 9° 06' West along the East line of the Benge League
a distance of 1571.92 feet to a point in said line for the most Southerly
Southeast corner of this tract; THENCE, North 80° 27' West a distance of 1774.65
feet to a point for corner, said point being the most Southerly Southwest corner
of this tract; THENCE, North 10° 19' West a distance of 2595.92 feet to a point
in the North line of the Benge League for an interior corner of this tract;
THENCE, North 80° 27' West along the North line of the Benge League a distance of
317.33 feet to a point in said line, said point being the Southwest corner of
the said J. H. Bizzell Survey; THENCE, North 0° 22' West along the West line
of the said J. H. Bizzell Survey a distance of 194.38 feet to a point in said
line for the Northeast corner of this tract; THENCE, East 508.50 feet to a
West line for the J. H. Bizzell Survey for the most Northerly Northeast corner
of this tract; THENCE, South 10° 03' West with the West line of the said Baker
Survey, a distance of 275.77 feet to the place of beginning, the said tract
containing 131.311 acres of land in Henderson County, Texas.

<u>Tract 655 - Fairway Lupkin "A-2"</u>. Being 160.0 acres of land out of the George W.
Baker Survey, A-897, Henderson County, Texas, the said tract being all of the

<u>EXHIBIT B</u>

- 13 -

lands contained in said Survey save and except the following three tracts:

Tract No. 1:  All that certain tract or parcel of land, part of the G. W.
Baker Survey, Abstract No. 897, Henderson County, and being part of that
certain called 320 acre tract conveyed to Olga Lupkin by Bella M. Mandlestam,
July 15, 1948, by deed of record in Volume 335, Page 117, of the Deed Records
of Henderson County, Texas, more completely described as follows, to-wit:

BEGINNING at a point for corner, the NEC of the Alfred Benge Survey and
an Ell corner of the George W. Baker Survey:  THENCE South 80 deg. 27
min. East on a projection of the North line of the Alfred Benge Survey,
a distance of 270.66 feet to a point for corner; THENCE South 9 deg. 06
min. West parallel to the East line of the Alfred Benge Survey, a distance
of 859.49 feet to a point for corner; THENCE North 79 deg. 47 min. West with
the most Easterly South line of the George W. Baker Survey and the most Westerly
North line of the I. Ledbetter Survey, a distance of 270.66 feet to a point
for corner, the most Easterly SWC of the George W. Baker Survey; THENCE North
9 deg. 06 min. East with the East line of the Alfred Benge Survey and the
most Southerly West line of the George W. Baker Survey, a distance of 856.35
feet, to the place of beginning, containing 5.321 acres of land.


Tract No. 2:  All that certain tract or parcel of land, a part of the George
W. Baker Survey, Abstract No. 897, Henderson County, Texas, and being part
of that certain called 320 acre tract described in a deed to Olga Lupkin
by Bella M. Mandlestam dated July 14, 1948, recorded in Volume 335, Page 117,
of the Deed Records of Henderson County, Texas, and more completely described
as follows, to-wit:

BEGINNING at a point for corner, the Northeast corner of the George W. Baker
Survey and the Southeast corner of the B. H. Bizzell Survey, Abstract No.
964; THENCE North 83 degrees 35 min. West a distance of 2925.67 feet to a
point for corner; THENCE North a distance of 187.80 feet to a point for corner,
the Southwest corner of the B. H. Bizzell Survey and the most Easterly South-
east corner of the J. H. Bizzell Survey and in the North line of the George W.
Baker Survey; THENCE South 79 deg. 57 min. East with the South line of the
B. H. Bizzell Survey and the North line of the George W. Baker Survey, a
distance of 2952.65 feet to the place of beginning, containing 6.268 acres
of land.


Tract No. 3:  All that certain tract or parcel of land, part of the George
W. Baker Survey, Abstract No. 897, Henderson County, Texas, and being more
completely described as follows, to-wit:

BEGINNING at a point for corner, the NWC of the George W. Baker Survey and
an Ell corner of the J. H. Bizzell Survey, Abstract No. 1000; THENCE South
79 deg. 57 min. East with the North line of the George W. Baker Survey and
the most Easterly South line of the J. H. Bizzell Survey, a distance of
1243.33 feet to a point for corner, the SEC of the J. H. Bizzell Survey and
the SWC of the B. H. Bizzell Survey, Abstract No. 964; THENCE South a distance
of 187.80 feet to a point for corner; THENCE South 83 deg. 35 min. East a
distance of 2925.67 feet to a point for corner, the NEC of the George W. Baker
Survey and the SEC of the B. H. Bizzell Survey; THENCE South 10 deg. 00 min.
West with the East line of the George W. Baker Survey and the West lines of
the Larkin Robertson Survey and the E. D. McKellar Survey, a distance of
1725.90 feet to a point for corner; THENCE North 79 deg. 57 min. West parallel
to the North line of said George W. Baker Survey, a distance of 4197.24 feet to a
point for corner, in the West line of the George W. Baker Survey; THENCE North
10 deg. 03 min. East with the West line of the George W. Baker Survey and
the lower East line of the J. H. Bizzell Survey, a distance of 1725.90 feet
to the place of beginning, containing 160 acres of land; LEAVING in said tract
160 acres of land.


EXHIBIT  B

- 14 -

(

**Tract 656 - Edson Killian Unit.**  Being 156.976 acres of land out of the I. Ledbetter (A-445), E. D. McKellar (A-585), and W. R. Holsomback (A-1000) Surveys, Henderson and Anderson Counties, Texas, more fully described in that Pooling Declaration dated August 24, 1961, executed by Edson Petroleum Company et al in counterpart including Volume 503, page 313, Deed Records of Henderson County, Texas, and in Volume 634, page 19, Deed Records of Anderson County, Texas.

**Tract 657 - Texaco Underwood.**  Being 91.00 acres of land out of the Larkin Robinson (A-689) and E. D. McKellar (A-556) Surveys, in Henderson County, Texas, and being the same land described as Tracts 1, 2 and 3 in an oil, gas and mineral lease executed by Mrs. O. P. Underwood, et al, as Lessors and H. M. McMahan, as Lessee, on December 22, 1943, and recorded in Volume 277, page 552, Henderson County Deed Records.

**Tract 658 - Gulf Westbrook Unit.**  Being 128.696 acres of land out of the W. R. Holsomback (A-1000) and E. D. McKellar (A-585) Surveys, Anderson County, Texas, and out of the E. D. McKellar (A-556) and Larkin Robinson (A-689) Surveys, Anderson County, Texas, as described in Unit Designation dated October 2, 1961, recorded in Volume 508, Page 584, Henderson County Deed Records, and in Volume 637, page 554, Anderson County Deed Records.

**Tract 659 - Fairway Stevenson Unit.**  Being 152.012 acres of land out of the Walter Stevenson (A-891) and Alice and Ruby Stevenson (A-1193) Surveys, Henderson County, Texas, as described in that Declaration of Unit dated July 1, 1961, executed by Fairway Oil and Gas Company, Inc. et al and recorded in counterpart including Volume 501, page 152, and Volume 501, page 130, Deed Records of Henderson County, Texas, and Volume 630, page 314 and Volume 630, page 320, Deed Records of Anderson County, Texas.

**Tract 660 - Fairway Abbott Unit.**  Being 160.000 acres of land out of the John Ferguson (A-22) and Larkin Robinson (A-689) Surveys, Henderson County, Texas, as described in that Declaration of Unit dated October 1, 1961, executed by Fairway Oil & Gas Company et al and recorded in counterpart including Volume 635, Page 255, Deed Records of Anderson County, Texas, and Volume 504, Page 239, Deed Records of Henderson County, Texas.

**Tract 661 - Fairway Henley Unit.**  Being 156.551 acres of land out of the John Ferguson (A-22) and Joseph Ferguson (A-23) Surveys, Anderson County, Texas, as described in that Declaration of Unit dated March 6, 1961, executed by Fairway Oil & Gas Company, Inc., et al, and recorded in Volume 621, page 425, Deed Records of Anderson County, Texas, and in Volume 495, page 14, Deed Records of Henderson County, Texas.

EXHIBIT  B

- 15 -

Tract 662 - Fairway Abbott. Being 10.057 acres in Anderson County, Texas, out of
the Joseph Ferguson Survey, A-22, and being all of the lands covered by that certain
Oil, Gas and Mineral Lease executed by Bessie Abbott et vir, as Lessors, to Fairway
Operating Company, Inc., as Lessee, dated March 9, 1960, of record at Vol. 606,
page 134, Deed Records of Anderson County, Texas, save and except those portions
thereof contributed to the Fairway Abbott Unit (Tract 660 herein) and to the Fairway
Henley Unit (Tract 661 herein).

Tract 663 - Fairway Holman. Being 99.76 acres of land out of the John Ferguson
League, A-22, Anderson County, Texas, and being the same land as described in Oil,
Gas and Mineral Lease from W. W. Holman to Fairway Operating Company dated March 18,
1960, recorded in Volume 605, Page 279, Deed Records of Anderson County and in
Volume 500, Page 125, Deed Records of Henderson County, Texas, save and except
22.397 acres included in and being a part of Unit 661, Fairway Henley Unit, as
described in Unit Declaration dated March 6, 1961, and recorded in Volume 621, Page
425, Deed Records of Anderson County, and in Volume 495, Page 14, Deed Records of
Henderson County, Texas.

Tract 701 - Unresolved, Pickens Amerada. Being 1.662 acres of land out of the I. W.
Burton League, A-3, Henderson County, Texas, more particularly described as follows,
to-wit:
    BEGINNING at the intersection of Caddo Creek and Farm-to-Market Highway 315,
    said point being also the Southwest corner of the 15 (called) acre tract
    described in a certain Oil, Gas and Mineral Lease executed by Frank J. McClure
    et al, Lessor, to Hunt Petroleum Corporation, Lessee, of record at Book 42,
    Page 457, Lease Records of Henderson County, Texas; THENCE, North 26° 15' West,
    a distance of 524.5 feet to a point for corner; THENCE, South 85° 33' West, a
    distance of 327.1 feet to a point in the center of Caddo Creek for corner; THENCE,
    in a Southeasterly direction with the meanders of the channel of Caddo Creek
    the place of beginning, the said tract containing 1.662 acres of land.

Tract 702 - Unresolved, Hunt Petr. Amerada. Being 1.600 acres of land out of the
I. W. Burton League, A-3, Henderson County, Texas, more particularly described as
follows, to-wit:
    FROM the intersection of Caddo Creek and Farm-to-Market Highway 315, said
    point being also the Southwest corner of the 15 (called) acre tract described
    in a certain Oil, Gas and Mineral Lease executed by Frank J. McClure et al,
    Lessor, to Hunt Petroleum Corporation, Lessee, of record at Book 42, Page 457,
    Lease Records of Henderson County, Texas, South 74° 43' East, a distance of
    110.0 feet to the PLACE OF BEGINNING of description of said 1.600 acre tract;
    THENCE, North 40° 22' East, a distance of 70.9 feet to a point for corner;
    THENCE, North 81° 52' East, a distance of 106.1 feet to a point for corner;
    THENCE, South 75° 35' East, a distance of 180.7 feet to a point for corner;
    THENCE, South 65° 33' East, a distance of 362.5 feet to a point for corner;
    THENCE, North 88° 02' East, a distance of 157.9 feet to a point for corner;
    THENCE, South 15° 03' East, a distance of 47.0 feet to a point for corner;
    THENCE, South 53° 10' East, a distance of 61.7 feet to a point in the center of
    Caddo Creek; THENCE in a Northwesterly direction along the meanders of the channel
    of said Caddo Creek to the place of beginning, the said described tract contain-
    ing 1.600 acres of land.

Tract 735 - Texaco Miller. Being 436.491 acres of the I. W. Burton Survey, A-3,
Henderson County, Texas, more particularly described in that certain Oil, Gas and
Mineral Lease dated March 12, 1945, executed by George Tipton et al, as Lessor,
and W. T. Campbell, as Lessee, recorded in Volume 291, Page 407, Deed Records of
Henderson County, Texas.

Tract 736 - Hunt Petr. Long. Being 49.048 acres of land out of the I. W. Burton
League, A-3, in Henderson County, Texas, as said tract is described in that certain
Oil, Gas and Mineral Lease dated August 3, 1960, executed by Mrs. Effie Long et al,
as Lessors, to Hunt Petroleum Corporation, Lessee, of record at Volume 488, Page
605, Deed Records of Henderson County, Texas.

EXHIBIT  B

- 16 -

Tract 737 - Hunt Petr. Miller-Holloway. Being 498.947 acres of land out of the
I. W. Burton League, A-3, in Henderson County, Texas, and being more fully
described as all of "FIRST TRACT" in that certain Oil, Gas and Mineral Lease,
dated July 25, 1960, executed by J. M. Miller et al, as Lessors, to Hunt Petroleum
Corporation, as Lessee, of record at Volume 473, Page 353, Deed Records of Henderson
County, Texas, and at Volume 611, Page 574, Deed Records of Anderson County, Texas,
SAVE and EXCEPT, (1) 53.588 acres of said "FIRST TRACT" contributed to the Hunt
Petroleum Corporation et al - Winston No. 1 Unit (Tract 739 hereof) described in
that certain Designation of Unit of record at Volume 506, Page 265, Deed Records
of Henderson County, Texas, and (2) 128.774 acres of said "FIRST TRACT" contributed
to the Hunt Petroleum Corporation et al - Miller-Holloway Unit No. 4 (Tract 741
herein) as described in that certain Designation of Unit of record at Volume 517,
Page 83, Deed Records of Henderson County, Texas.

Tract 739 - Hunt Petr. Winston Unit No. 1. Being 160.00 acres of land out of the
I. W. Burton League, A-3, Henderson County, Texas, as described in that certain
Designation of Unit dated October 9, 1961, executed by Hunt Petroleum Corporation
et al and recorded in Volume 506, page 265, Deed Records of Henderson County, Texas.

Tract 741 - Hunt Petr. Miller-Holloway Unit No. 4. Being 160.00 acres of land out
of the I. W. Burton League, A-3, Henderson County, Texas, as described in that
certain Designation of Unit dated March 19, 1962, executed by Hunt Petroleum
Corporation et al and recorded in Volume 517, page 83, Deed Records of Henderson
County, Texas.

Tract 742 - Hunt Petr. East Poynor Unit. Being 149.397 acres of land out of the
I. W. Burton League, A-3, Henderson County, Texas, as described in that Designation
of Unit dated August 14, 1961, executed by Hunt Petroleum Corporation et al and
recorded in Volume 501, page 497, Deed Records of Henderson County, Texas, and being
all of the tract described in said Designation save and except 3.262 acres described
under Tracts 701 and 702 herein.

Tract 743 - Amerada Brashier Unit. Being 156.738 acres of land out of the I. W.
Burton (A-3), J. W. Thomas (A-760), and J. Henshaw (A-340) Surveys as described in
that Designation of Unit dated March 23, 1962, executed by Amerada Petroleum
Corporation et al and recorded in Volume 514, page 460, Deed Records of Henderson
County, Texas, and being all of the tract described in said Designation save and
except 3.262 acres described under Tracts 701 and 702 herein.

Tract 744 - Birdsong-Gabriel Thompson Unit. Being 154.533 acres of land out of the
D. M. Dickerson (A-212), Jesse Henshaw (A-340), J. W. Thomas (A-760) and Alfred
Benge (A-57) Surveys, Henderson County, as described in that Declaration of Unit
dated August 29, 1961, executed by Texaco Inc. et al and recorded in Volume 502,
page 171, Deed Records of Henderson County, Texas, together with 6.161 acres in-
cluded within the Right-of-Way, to total 160.694 acres in this Unit.

Tract 745 - Fairway Smith Unit. Being 115.18 acres of land out of the Alfred Benge
(A-57), J. Henshaw (A-340) and D. M. Dickerson (A-212) Surveys, Henderson County,
Texas, as described in that Unit Declaration dated October 16, 1961, recorded in
Volume 511, page 125, Deed Records of Henderson County, and in Volume 642, page 616,
Deed Records of Anderson County, Texas.

Tract 746 - Cities Service Emerson Unit. Being 160.000 acres of land out of the
Alfred Benge League, A-57, Henderson County, Texas, as more particularly described
in that certain Designation of Unit dated October 17, 1961 by Cities Service
Petroleum Company et al, recorded in counterpart including Volume 511, page 110,
Deed Records, Henderson County, Texas.

EXHIBIT  B

- 17 -

Tract 747 - Cities Service Hanna Unit.  Being 160.000 acres of land out of the
Alfred Benge League, A-57, Henderson and Anderson Counties, Texas, as described in
that Designation of Unit dated July 1, 1961, executed by Cities Service Petroleum
Company and recorded in Volume 503, page 459, Deed Records of Henderson County,
Texas, and in Volume 631, page 304, Deed Records of Anderson County, Texas.


Tract 748 - Fairway Douglas Unit.  Being 159.536 acres of land out of the Alfred
Benge League, A-57, Henderson County, Texas, as described in that Declaration of
Unit  dated June 27, 1961, executed by Fairway Oil & Gas Company, Inc. et al recorded
in counterpart including Volume 498, page 395, Deed Records of Henderson County,
Texas.


Tract 749 - Fairway J. C. Taylor Unit.  Being 159.547 acres of land out of the
Alfred Benge League, A-57, in Anderson and Henderson Counties, Texas, composed of
the three (3) tracts of land described as follows:
   TRACT 1:  Containing 93.447 acres being all of the land described in that
   certain Warranty Deed executed by G. W. Miller et ux, to Henry Miller, recorded
   in Volume P, page 201, Deed Records of Anderson County, Texas, SAVE and EXCEPT
   (1) a 1.352 acre tract described in that certain deed from J. C. Taylor et al
   to Snub Evans et ux dated April 6, 1946, of record at Volume 306, page 128,
   Deed Records of Henderson County, Texas; (2) a 6.124 acre tract beginning at
   the NE corner of the 1.352 acre tract excepted above; THENCE, East along the NBL
   of the 167.899 acre tract (formerly called 147 acres) and continuing East a
   sufficient distance so that by running a line North and South parallel with the
   East boundary line of the 1.352 acre tract and a line East and West parallel
   with and a sufficient distance South of said North boundary line so as to compose
   seven acres of land; and (3) the two tracts of land hereinafter described contain-
   ing by recent survey 59.976 acres (heretofore called 64 acres) and 6.124 acres
   (heretofore called 3 acres);

   TRACT 2:  59.976 acres more or less, described in that certain Warranty Deed
   executed by J. C. Taylor, et ux, to J. C. Martin, recorded in Volume 332, page
   301, Deed Records of Anderson County, Texas;

   TRACT 3:  6.124 acres, more or less, described in that certain Warranty Deed
   executed by J. C. Taylor et ux, to Walter V. Hankla, recorded in Volume 594,
   page 630, Deed Records of Anderson County, Texas.


Tract 750 - Fairway Miller-Hurt No. 2.  Being all of the lands out of the Alfred
Benge League, A-57, Henderson County, Texas, covered by and included in that certain
Oil, Gas and Mineral Lease executed by Joe Hurt et al, as Lessors, to W. T. Campbell,
as Lessee, of record at Volume 428, page 622, Deed Records of Anderson County, Texas,
SAVE and EXCEPT the following tracts therefrom:
   (1)  The North 46.597 acres thereof, contributed to the Hunt Oil Company et al-
   W. J. Westbrook Unit (Tract 651 herein); (2) 160.0 acres thereof comprising the
   Fairway Oil & Gas Company, Inc. et al - Miller Hurt #1 Unit (Tract 751 herein);
   (3) 95.191 acres thereof contributed to the Fairway Oil & Gas Company Et Al -
   Hurt-Billingsley Unit (Tract 753 herein), leaving 160.0 acres of land within said
   Unit.


Tract 751 - Fairway Miller-Hurt No. 1.  Being all of the lands out of the Alfred
Benge League, A-57, Henderson County, Texas, covered and included in that certain
Oil, Gas and Mineral Lease executed by Joe Hurt Et Al, as Lessors, to W. T. Campbell,
as Lessee, of record at Volume 428, page 622, Deed Records of Anderson County, Texas
SAVE and EXCEPT the following tracts therefrom:
   (1)  The North 206.597 acres, of which 46.597 acres have been contributed to
   Hunt Oil Company et al - W. J. Westbrook Unit (Tract 651 herein) and 160.0 acres
   forms the Fairway Oil & Gas Company Et Al - Miller-Hurt #2 Unit (being Tract 750
   herein); and (2) 95.191 acres thereof contributed to the Fairway Oil & Gas Company
   et al - Hurt-Billingsley Unit (Tract 753 herein), leaving 160.0 acres of land within
   said Unit.


EXHIBIT  B

- 18 -

Tract 752 - Edson Billingsley. Being 384.83 acres of land out of the Alfred Benge
League, A-106, in Anderson and Henderson Counties, Texas, being all of the same
lands as described in that certain Oil, Gas and Mineral Lease, dated April 21, 1960,
executed by Granville M. Billingsley et al, as Lessor, to Edson Petroleum Company,
as Lessee, of record at Volume 606, page 441, Deed Records of Anderson County, Texas
SAVE and EXCEPT that portion of 52.38 acres of the leased tract contained in the
Fairway Oil & Gas Company et al - Hurt-Billingsley Unit (Tract 753 herein) as
described in that certain Designation of Unit, dated October 19, 1961, of record
at Volume 636, page 439, Deed Records of Anderson County, Texas, and SAVE and EXCEPT
the South 17.170 acres thereof contributed to Tract 770 herein, leaving in this
Tract 315.28 acres of land.

Tract 753 - Fairway Hurt-Billingsley Unit. Being 141.79 acres of land out of the
Alfred Benge League, A-106, Anderson County, Texas, as described in Unit Declaration
dated October 19, 1961, recorded in Volume 636, page 439, and in Volume 637, page
617, Deed Records of Anderson County, Texas, being all of the lands described therein
SAVE and EXCEPT the South 5.76 acres thereof contributed to Tract 770 herein, leaving
in this tract 141.79 acres of land.

Tract 754 - Cities Service Moore "C" Unit. Being 160.000 acres of land out of the
Jose Cherino (A-168), W. R. Holsomback (A-1000), E. D. McKellar (A-585) and Alfred
Benge (A-106) Surveys, Anderson County, Texas, as described in that Declaration of
Unit dated September 8, 1961, executed by Cities Service Petroleum Company et al
and recorded in Volume 632, page 603, Deed Records of Anderson County, Texas, as
amended by Amendment to Declaration dated September 12, 1961, recorded in Volume
654, Page 221, Deed Records of Anderson County, Texas.

Tract 755 - Cities Service Moore "D" Unit. Being 139.43 acres of land out of the
Jose Cherino (A-168) and Alfred Benge (A-106) Surveys, in Anderson County, Texas,
as more fully described in that certain Declaration of Unit dated March 16, 1962,
executed by Cities Service Petroleum Company et al, recorded in Volume 650, page
159, Deed Records, Anderson County, Texas, as amended by correction of Declaration
of Unit dated October 10, 1962, executed by Cities Service Petroleum Company, et al,
recorded in Volume 653, page 198, Deed Records, Anderson County, Texas, being all of
the lands described therein SAVE and EXCEPT the Westernmost 20.57 acres thereof (all
of said exception being out of the Benge League) contributed to Tract 770 herein,
leaving in this tract 139.43 acres of land.

Tract 756 - Fairway Dabbs Unit. Being 158.940 acres of land out of the Jose Cherino
Survey, A-168, Anderson County, Texas, as described in that Designation of Unit dated
July 1, 1961, executed by Fairway Oil & Gas Company, Inc. et al and recorded in
Volume 628, page 153, Deed Records of Anderson County, Texas, AND Amended Designation
of Unit dated August 3, 1961, executed by Fairway Oil & Gas Company, Inc. et al,
and recorded in Volume 633, page 95, Deed Records of Anderson County, Texas.

Tract 757 - Headwaters Hicks. Being 0.923 acre of land out of the Jose Cherino
Survey, A-168, Henderson County, Texas, as described in that certain Compensatory
Royalty Agreement dated August 2, 1962, executed by J. C. Hicks, et al of record at
Volume 659, page 493, Deed Records of Anderson County, Texas.

Tract 758 - Fairway Moore Unit. Being 159.959 acres of land out of the Jose Cherino
Survey, A-168, Anderson County, Texas, as described in Unit Declaration dated January 29,
1962, recorded in Volume 641, page 482, Deed Records of Anderson County, Texas.

Tract 759 - Fairway Wofford Unit. Being 152.730 acres of land out of the Joseph
Ferguson Survey, A-23, Anderson County, Texas, as described in that Declaration of
Unit dated March 15, 1961, executed by Fairway Oil & Gas Company, Inc. et al in
counterpart one of which is recorded in Volume 622, page 431, Deed Records of Anderson
County, Texas, as amended by Amendment to Declaration dated March 8, 1963, recorded
in Volume _____, Page _____, Deed Records of Anderson County, Texas.

EXHIBIT B

- 19 -

Tract 760 - Fairway Scarborough.  Being 57.166 acres of land out of the Joseph
Ferguson Survey, A-23, Anderson County, Texas, more particularly described as
follows, to-wit:
   BEGINNING 3429.6 feet West of the NWC of the Joel Baker 800-acre tract
   at a stake in the road, the same beginning point being 1443.5 feet West of
   the West line of Reagan Street and same beginning point being the NWC of
   the W. W. Scarborough Addition, Frankston, Texas, which is described in
   Volume 156, page 121, of the Deed Records of Anderson County, Texas; THENCE
   West 478.7 feet to the NWC of the tract herein described; THENCE South 706
   varas to the Southwest corner of the tract herein described; THENCE East 539.4
   varas to the Southwest corner of the E. L. Jones Subdivision; THENCE North 997
   feet along the East line of Miller Street to a point for corner, being the
   Northwest corner of that tract conveyed by W. W. Scarborough to H. Williams by
   deed of 1928; THENCE East 250 feet to a point for corner, said point for corner,
   said point lying on the West line of Reagan Street; THENCE North 67 feet to a
   point for corner; THENCE West 152.7 varas to a point for corner; THENCE North
   59.4 varas to a point for corner; THENCE West 4.9 varas to a point for corner;
   THENCE North 235.3 feet to a point for corner; THENCE West 1006 feet to a point
   for corner; THENCE North 500 feet to a place of BEGINNING.


Tract 761 - Pan Am Atwood Unit.  Being 158.50 acres of land out of the Joseph
Ferguson Survey, A-23, Anderson County, Texas, as described in that Designation of
Unit dated March 1, 1962, executed and recorded by Pan American Petroleum Corporation
et al in counterpart including Volume 643, page 83, Deed Records of Anderson County,
Texas, which Designation was amended by instruments recorded in Volume 646, page 209,
and Volume 652, page 493, Deed Records of Anderson County, Texas.


Tract 762 - Frankston Townsite Tract.  Being 5.3 acres of land, more or less, out
of the Frankston Townsite, Joseph Ferguson Survey, A-23, Anderson County, Texas,
more particularly described as follows, to-wit:
   Being Lots numbered 14 through 25, both numbers inclusive, Block 2; Lots
   numbered 52 through 61 and Lots 63 through 65, all numbers inclusive, Block
   3, all out of the W. W. Scarborough Addition to the Townsite of Frankston in
   accordance with the plat of such Addition duly of record in the County Clerk's
   office, Anderson County, Texas.


Tract 763 - Frankston Townsite Tract.  Being a tract of land 50 feet by 100 feet
to the center of the adjacent right-of-way, out of the Joseph Ferguson Survey, A-23,
Anderson County, Texas, more particularly described as being Lot numbered 62, Block
3, W. W. Scarborough Addition to the Townsite of Frankston in accordance with the
plat of such Addition duly of record in the County Clerk's office, Anderson County,
Texas.


Tract 764 - Frankston Townsite Tract.  Being a tract of land containing 7.72 acres,
more or less, out of the Joseph Ferguson  Survey, A-23, Anderson County, Texas, more
particularly described as follows, to-wit:
   Tract 1.  Being Lots numbered 1 through 14 and 19 through 32, all numbers
   being inclusive, of Block 2; Lots 1 through 16 of Block 1; and Outlots A, B and
   C, all out of the E. L. Jones Addition to the Townsite of Frankston as set out
   in the plat of said Addition of record at the County Clerk's office, Anderson
   County, Texas.

   Tract 2.  Being a tract of land 268 feet X 251 feet containing 1.54 acres known
   as the W. H. Boles Estate tract located and situated on the West side of Miller
   Street in the Town of Frankston, Anderson County, Texas and described as being
   adjacent to the Pan American Atwood Unit on the West, South and East lines of
   said Boles tract as said Atwood Unit is described in the Unit Declaration of
   record at Volume 643, Page 83, Deed Records of Anderson County, Texas and the
   North line thereof being adjacent to Tract A as described in the plat of the
   E. L. Jones Addition of record in the County Clerk's office of Anderson County,
   Texas;


EXHIBIT  B

- 20 -

<u>Tract 3</u>. Being a tract of land out of the Townsite of Frankston in the Joseph Ferguson, A-23, Anderson County, Texas, as more particularly described as follows, to-wit: Commencing at the center of the intersection of Jones and Miller Streets in Townsite of Frankston; Thence, in a Westerly direction with the center of Jones Street a distance of 160 feet, more or less, to the East line of the Fairway Scarborough Tract (being Tract 760 herein); Thence, in a Northerly direction with the East line of the said Scarborough Tract 500 feet, more or less, to an inside corner of the said Fairway Scarborough Tract; Thence, in an Easterly direction with a Southerly line of the Fairway Scarborough Tract a distance of 160 feet, more or less, to a point in the center of Miller Street to a point for corner; Thence, in a Southerly direction with the center line of Miller Street a distance of 500 feet, more or less, to the place of Beginning, the said tract containing 1.84 acres, more or less.

<u>Tract 770 - Unresolved</u>. Being 22.93 acres of land out of the Alfred Benge League, A-106, Anderson County, Texas, more particularly described as follows, to-wit: Beginning at the intersection of the channel center of Caddo Creek and the East line of the Benge League, said point being also at the Southwest corner of the 50 (called) acre J. C. Howell Tract on the West line of the Jose Cherino Survey, A-168, Anderson County, Texas; THENCE, North 10° 10' East with the East line of the Benge League a distance of 400.15 varas to a point in said Line for the Northeast corner of this tract; THENCE, North 82° 15' West a distance of 778.24 varas, more or less, to the East line of the 88 (called) acre Hurt Tract for the Northwest corner of this Tract; THENCE, South 8° 18' West along the East line of the said Hurt Tract a distance of 130 vrs., more or less, to the center of Caddo Creek for the most Westerly Southwest corner of this Tract; THENCE, with the meanders of the said creek as follows:
N. 87° E, 107 vrs., more or less; S. 63° 26' E, 60.54 vrs; N. 75° 34' E, 140.43 vrs; N. 84° 24' E., 102.49 vrs; S. 58° 00' E, 47.17 vrs; S. 2° 10' E, 53.04 vrs; S. 58° 08' E, 100 vrs; S. 28° 27' E, 215.96 vrs; S. 44° 14' E, 98.70 vrs; S. 67° 15' E, 22.36 vrs; and S. 71° 25' E, 11.64 vrs. to the place of BEGINNING, the tract described containing 22.93 acres of land, more or less.

<u>Tract 814 - Hunt Petr. LaRue Unit</u>. Being 160.000 acres of land out of the J. Huntington Survey, A-32, Anderson County, Texas, as said tract is described in that certain Designation of Unit dated June 10, 1963, executed by Hunt Petroleum Corporation of record at Volume 664, page 527, Deed Records of Anderson County, Texas.

<u>Tract 815 - Lemon Berryhill</u>. Being 111.323 acres of land out of the Isaac Lindsey League, A-38, Anderson County, Texas, being more fully described in that certain Oil, Gas and Mineral Lease executed by C. T. Berryhill et ux, as Lessor, and Sid Wylie, as Lessee, dated October 19, 1959, recorded at Volume 598, Page 142, Deed Records of Anderson County, Texas.

<u>Tract 816 - Texaco Burkitt</u>. Being 57 acres of land out of the Isaac Lindsey League, A-38, Anderson County, Texas, described as follows, to-wit:
BEGINNING on the South boundary line of the North half of said league, 1605 vrs. East from the Southwest corner of the said North half of said league; THENCE North 960 vrs. to stake for corner, south boundary line of A. J. Wylie 200 acre tract; THENCE East 337 vrs. stake for corner, S. E. corner of Wylie tract and N. W. corner of 200 acre tract claimed by Moon heirs; THENCE South 960 vrs. to T. D. Holland's corner; THENCE West with T. D. Holland's line 337 vrs. to W. F. Cantrell S. E. corner of a 100 acre tract, to the place of beginning. BEING the same land described in a Deed from Edgar Baker et al to George W. Burkitt, dated December 7, 1950, recorded in Vol. 425, page 449 of Anderson County Deed Records.

<u>Tract 817 - Hunt Petr. Royall</u>. Being 208.456 acres of land out of the Isaac Lindsey League, A-38, Anderson County, Texas, as described and referred to in that

<u>EXHIBIT B</u>

- 21 -

certain Oil, Gas and Mineral Lease dated August 15, 1961, executed by W. G.
Rogers, Jr., et al, as Lessors, to Hunt Petroleum Corporation, as Lessee, of
record at Volume 632, page 615, Deed Records of Anderson County, Texas.

Tract 818 - Lemon Wylie.  Being 160.0 acres of land out of the Isaac Lindsey
League, A-38, Anderson County, Texas, and being the West 160.0 acres of the Second
Tract in that certain Oil, Gas and Mineral Lease, dated September 18, 1961, exe-
cuted by Sidney Wylie et al, as Lessor, to Mrs. I. M Lemon, as Lessee, of record
at Volume 646, page 406, Deed Records of Anderson County, Texas.

Tract 819 - Hunt Petr. Miller.  Being 1242.292 acres of land out of the J. Huntington
League, A-12, in Henderson and Anderson Counties, Texas, more fully described under
"FIFTH TRACT" of that certain Oil, Gas and Mineral Lease, dated July 25, 1960, exe-
cuted by J. M. Miller et al, as Lessors, to Hunt Petroleum Corporation, as Lessee,
of record at Volume 473, page 353, Deed Records of Henderson County, Texas, and at
Volume 611, page 574, Deed Records of Anderson County, Texas.

Tract 825 - Humble Hilton.  Being 50 (called) acres of land out of the Isaac Lindsey
League, A-38, Anderson County, Texas, described in the Oil, Gas and Mineral Lease,
dated February 8, 1961, executed by J. S. Hilton et ux, in favor of Gordon B. Broyles
of record at Vol. 621, page 541, Deed Records of Anderson County, Texas and being
the North 50 acres of that tract described in Deed dated October 17, 1912 of record
at Vol. 102, page 20, Deed Records of Anderson County, Texas.

Tract 826 - Hunt Petr. Gus Miller.  Being 79.814 acres of land out of the J.
Huntington League, A-12, Henderson County, Texas, as such tract is described in
that certain Oil, Gas and Mineral Lease dated August 4, 1960, executed by Saint
Miller et ux, as Lessors, to Hunt Petroleum Corporation, as Lessee, of record at
Volume 473, page 383, Deed Records of Henderson County, Texas.

Tract 827 - Texaco Donnell Unit.  Being 160.000 acres of land out of the Hansford
Hanks Survey, A-263, in Anderson County, Texas, as described in that Designation of
Unit dated June 15, 1962, executed by Texaco Inc. et al, recorded in Volume 650,
page 366, Deed Records of Anderson County, Texas, and in Volume 522, page 252,
Deed Records of Henderson County, Texas.

Tract 828 - Hunt Petr. Catholic Properties.  Being 40.106 (called 50) acres out of
the 291.76 acres out of the Hansford Hanks Survey, A-363, Anderson County, Texas,
conveyed to Noble Johnson by F. S. Hanks by deed dated April 18, 1855, and recorded
in Volume F at page 72, Deed Records of Anderson County, Texas, and more particularly
described as follows:
    BEGINNING at a point on the West Boundary Line of the said Hansford Hanks
    Survey and the East Boundary Line of the J. Huntington Survey, A-32, such point
    being the Northwest Corner of that 38.410 (called 55) acre tract deeded by J. D.
    Holland to J. W. Hardeman by deed dated January 3, 1952, and recorded in Vol.
    519 at page 128 of the Deed Records of Anderson County, Texas; THENCE North O
    deg. 19 mins. West 898.84 feet along the West Boundary Line of the Hansford
    Hanks Survey and the East Boundary Line of the J. Huntington Survey to the
    Southwest Corner of the 29.120 acre tract awarded to Emmaline Gibson, wife
    of Judge Gibson, by the District Court of Henderson County, Texas, in Cause
    No. 8528, styled Mary Jackson and husband, Frank Jackson, et al, v. Emmaline
    Gibson and husband, Judge Gibson, by the terms and provisions of an Order
    Confirming Report of Commissioners entered October 7, 1927, and recorded in
    Volume R, at page 236, of the District Court Minutes of Henderson County,
    Texas; THENCE North 89 deg. 26 mins. East 1726.29 feet to the Southeast Corner
    of the 6.950 (called 7) acre tract awarded to Jess Wasson by the terms and

EXHIBIT  B

- 22 -

provisions of said Order Confirming Report of Commissioners entered on October 7, 1927, in said Cause No. 8528 in the District Court of Henderson County, Texas; THENCE South 85 deg. 54 mins. East 59.19 feet; THENCE South 11 deg. 39 mins. West 1205.94 feet; THENCE North 80 deg. 0 mins. West 1560.54 feet to the place of beginning and containing 40.106 acres and being the same tract of land conveyed to J. M. Emerson and W. P. Welborn by Sarah J. Gaines (formerly Sarah J. Johnson) joined by her husband Thomas J. Gaines by Deed dated February 19, 1885, and recorded in Volume 36 at page 242 of the Deed Records of Henderson County, Texas; also being the same tract of land conveyed to J. S. Brown Hardware Co. by J. M. Emerson by deed dated February 14, 1893, and recorded in Volume 49, page 95 of the Deed Records of Anderson County, Texas.

Tract 829 - Hunt Petr. Clark.  Being 27.192 (called 30) acres out of the Southeast portion of the 291.76 acres out of the Hansford Hanks Survey, A-363, Anderson County, Texas, conveyed to Noble Johnson by J. S. Hanks by Deed dated April 18, 1855, and recorded in Volume F at page 72 of the Deed Records of Anderson County, Texas, and being more particularly described as follows:
    BEGINNING at the Northeast Corner of the 40.106 (called 50) acre tract conveyed to J. M. Emerson and W. P. Welborn by Sarah J. Gaines (formerly Sarah J. Johnson) joined by her husband, Thomas J. Gaines, by deed dated February 19, 1885, and recorded in Volume 36 at page 242 of the Deed Records of Anderson County, Texas; THENCE South 85 degrees 54 minutes East 953.97 feet to the Northwest Corner of the 10.161 (called 10) acre tract awarded to Edward F. Perry by the terms and provisions of the Judgment of the District Court of Smith County, Texas, on April 6, 1934, in Cause No. 4814-A styled Gus Pinkerton v. Edward F. Perry, a certified copy of which is recorded in Volume 238 at page 522 of the Deed Records of Anderson County, Texas; THENCE South 11 deg. 48 mins. West 1303.83 feet to the Southwest Corner of the 10.203 (called 10) acre tract awarded to Gus Pinkerton by the terms and provisions of said Judgment dated April 6, 1934, of the District Court of Smith County, Texas, in Cause No. 4814-A; THENCE North 80 deg. 0 mins. West 942.64 feet to the Southeast Corner of the 40.106 (called 50) acre tract conveyed to J. M. Emerson and W. P. Welborn by Sarah J. Gaines (formerly Sarah J. Johnson) joined by her husband, Thomas J. Gaines by deed dated February 19, 1885, and recorded in Volume 36 at page 242 of the Deed Records of Anderson County, Texas; THENCE North 11 deg. 39 mins. East 1205.94 feet to the place of beginning, and being the same tract of land conveyed to Henry Pitts by Alex Gaines by deed dated December 22, 1902, and recorded in Volume 85, at page 108 of the Deed Records of Anderson County, Texas, LESS the two 10 acre (actually 10.203 and 10.161 acres, respectively) tracts set aside and partitioned to Gus Pinkerton and Edward F. Perry by the terms and provisions of the Judgment of the District Court of Smith County, Texas, in Cause No. 4814-A, styled Gus Pinkerton v. Edward F. Perry, et al.

Tract 830 - Texaco Wofford.  Being 23.316 acres of land described as being a part of the land included in that certain Oil, Gas and Mineral Lease dated August 6, 1959, between George M. Wofford, Jr., et al, as Lessor, and TEXACO, Inc., as Lessee, recorded in Volume 476, Page 446, Deed Records of Henderson County, Texas and also recorded in Volume 596, Page 455, Deed Records of Anderson County, Texas, which said part is situated in the Hansford Hanks Survey, A-363, Anderson County, Texas, and A-1013, Henderson County, Texas, SAVE and EXCEPT the portion thereof described in that certain "Declaration of Oil Unit" dated September 4, 1962, and recorded in Volume 522, page 486, Deed Records of Henderson County, Texas; and also SAVE and EXCEPT that portion thereof described in that certain "Declaration of Unit" dated June 15, 1962 and recorded in Volume 522, Page 252, Deed Records of Henderson County, Texas.

Tract 831 - Texaco Taylor.  Being 22.455 acres of land out of the A. Atkinson Survey, A-1196, Henderson County, Texas, being that part of the land described in that certain Oil, Gas and Mineral Lease dated March 8, 1945, between Y. T. Taylor et ux, as Lessor, and W. T. Campbell, as Lessee, recorded in Volume 355, Page 63, Deed Records of Anderson County, Texas, and also recorded in Volume 295, Page 491, Deed Records of Henderson County, Texas, save and except the portion thereof described in that certain "Declaration of Oil Unit" dated September 4, 1962, recorded in

EXHIBIT B

- 23 -

Volume 522, Page 486, Deed Records of Henderson County, Texas.

Tract 832 - Texaco Taylor Unit.  Being 153.74 acres of the Alfred Atkinson (A-1196)
and Hansford Hanks (A-1013) Surveys, Henderson County, Texas, more particularly
described in that certain Declaration of Oil Unit dated September 4, 1962, executed
by Texaco Inc. of record at Volume 522, page 486, Deed Records of Henderson County,
Texas, being all of the lands described therein less and except 6.26 Acres described
under Tract 880 herein.

Tract 833 - Skelly Lee.  Being 136.035 acres of land out of the A. Atkinson Survey,
A-94, Anderson County, Texas, as described in the Oil, Gas and Mineral Lease, dated
December 5, 1960, executed by W. F. Lee et al, as Lessor, to Skelly Oil Company, as
Lessee, of record at Volume 618, page 153, Deed Records of Anderson County, Texas.

Tract 834 - Sands Burgamy Unit.  Being 156.744 acres of land out of the Alfred
Atkinson Survey, A-1196, Henderson County, Texas, as described in that Designation
of Unit dated November 22, 1961, executed by Caroline Hunt Sands et al, recorded in
Vol. 517, Page 9, Deed Records of Henderson County, Texas, and recorded in Vol. 645,
Page 231, Deed Records of Anderson County, Texas.

Tract 835 - Sands Lupkin.  Being 65.365 acres of land out of the McKinney and
Williams Survey, A-581, situated in Anderson and Henderson Counties, Texas, as said
tract is described in that certain Oil, Gas and Mineral Lease dated August 26, 1961,
executed by Mrs. Olga Lupkin, et vir, as Lessors, to Caroline Hunt Sands, et vir,
as Lessees, of record at Volume 503, Page 393, Deed Records of Henderson County,
Texas.

Tract 836 - Skelly Fain.  Being 40 (called) acres of land out of the McKinney and
Williams Survey, A-581, Anderson County, Texas, described under First Tract in that
Oil, Gas and Mineral Lease dated November 25, 1960, executed by Bennie Fain et al,
as Lessors, to Skelly Oil Company, as Lessee, of record at Volume 616, Page 346,
Deed Records of Anderson County, Texas.

Tract 837 - Amerada Stringfield Unit.  Being 160.00 acres of land out of the W. B.
Chapman Survey, A-155, and I. W. Burton League, A-3, Henderson and Anderson Counties,
Texas, as described in that Designation of Unit dated March 20, 1962, executed by
Amerada Petroleum Corporation and recorded in Volume 514, Page 235, Deed Records of
Henderson County, Texas and under File No. 89605, Deed Records of Anderson County,
Texas.

Tract 838 - Cities Service Stringfield.  Being 43.014 acres of land out of the John
Powell Survey, A-897, Anderson County, Texas, more fully described as follows, to-wit:
    BEGINNING at the Southeast corner of the W. B. Chapman Survey, A-201, Anderson
    County, Texas; THENCE, South about 325 yards to the public road; THENCE, in a
    Northerly direction about 860 yards to the South line of the Chapman Survey;
    THENCE, East about 630 yards to the place of beginning and containing 36 acres,
    more or less, the said tract having been surveyed and determined to contain
    43.014 acres of land; being the same land described in that deed dated February 3,
    1963, of record at Volume 650, Page 262, Deed Records of Anderson County, Texas.

Tract 839 - Pace Garrett.  Being 76.770 acres of land out of the J. W. Thomas (A-781)
and J. Powell (A-897) Surveys, Anderson County, Texas, as described in that certain
Oil, Gas and Mineral Lease dated November 28, 1958, executed by B. L. Garrett et ux,
as Lessors, to Emil Gustaf Adamsson et al, as Lessee, of record at Volume 586,

EXHIBIT  B

- 24 -

Page 313, Deed Records of Anderson County, Texas, more particularly described by
metes and bounds as follows:
> BEGINNING at a stake in the fence line, being the Southwest corner of
> the tract of land hereby described, approximately 190 feet South of and
> 50 feet West of the Southwest corner of the J. W. Thomas Survey, A-781,
> Anderson County, Texas; thence North 0 deg. 10' East passing the Northeast
> corner of the J. Powell Survey, A-897, and the Southeast corner of the W. B.
> Chapman Survey, A-201, at approximately 1585 feet, said line hereby described
> being a fence line approximately 50 feet West of the West line of the J. W.
> Thomas Survey, A-781, a total distance of 2,892.83 feet; running approximately
> along the Westerly boundary line of the Alfred Benge Survey, A-57; thence South
> 9 deg. 33' West approximately 2910 feet with said fence line to a point in the
> Easterly boundary line of the H. Foster Survey, A-942; thence West approximately
> 920 feet partly along fence line to the place of beginning, containing 76.770
> acres.

Tract 840 - Fairway Webster. Being 69.9 acres of land in Anderson County, Texas,
and being all of the H. Foster Survey, A-942, in said County and State, as further
described under First Tract of that certain Oil, Gas and Mineral Lease dated June 1,
1961, from Margaret Holliday Webster, a widow, et al, Lessor, to Cities Service
Petroleum Company, Lessee, recorded in Volume 628, Page 371, Deed Records of Anderson
County, Texas.

Tract 841 - Fairway Cummings Unit. Being 160.000 acres of land out of the J. W.
Thomas (A-781) and Alfred Benge (A-106) Surveys, Anderson and Henderson Counties,
Texas, as described in Unit Declaration dated November 1, 1961 and recorded in
Volume 507, Page 446, Deed Records of Henderson County, and in Volume 638, Page 341,
Deed Records of Anderson County, Texas.

Tract 842 - Fairway Carrie Taylor Unit. Being 159.967 acres of land out of the Alfred
Benge League, A-106, Anderson County, Texas, as described in Unit Declaration dated
November 22, 1961, recorded in Volume 637, Page 601, Deed Records of Anderson County,
Texas.

Tract 843 - Fairway Douglas-Langford Unit. Being 160.00 acres of land out of the
Alfred Benge League, A-106, Anderson County, Texas, as described in Unit Declaration
dated November 21, 1961, recorded in Volume 640, page 180, Deed Records of Anderson
County, Texas.

Tract 844 - Fairway Douglas. Being 113.41 acres of land out of the Alfred Benge
League, A-106, in Anderson County, Texas, and being described as the North 237.10
acres out of a 280 acre  tract of land described under "Tract No. 1" in that Oil,
Gas and Mineral Lease dated February 5, 1951, executed by W. S. Douglas et ux, as
Lessors, to B. L. Garrett, as Lessee, of record at Volume 428, page 436, Deed
Records of Anderson County, Texas, less and except 123.69 acres from the 237.10
acre tract contributed to and as described within Fairway Douglas-Langford Unit
(Tract 843 herein).

Tract 845 - Fairway Maymon. Being 160.00 acres of land out of the Alfred Benge
League, Abstract No. 106, Anderson County, Texas, and described as follows:
> BEGINNING at the NW corner of the 47.33-acre tract described in the
> deed from J. M. Cely, Jr., and wife, Joann, to Joe Hurt, dated March 6,
> 1958, recorded in Volume 566, Page 643, Anderson County Deed Records,
> from which corner a 20-inch P. O. marked X bears S. 7-04 E. 23.59 vrs;
> THENCE North 10-24 East along the east line of the W. S. Douglas Tract
> 850.97 vrs. to a point for corner in Caddo Creek, being the N.E.C. of
> said Douglas Tract; THENCE with the meanderings of Caddo Creek, as follows:

EXHIBIT B

- 25 -

S. 54-46 E. 130.04 vrs.; N. 57-44 E. 156.73 vrs. to the S.W.C. of a called
83-acre tract now or previously owned by J. C. Taylor, N. 84-26 E. 360.35 vrs;
and S. 86-53 E. 552.36 vrs. to a point for corner at the N.W.C. of the Joe
Hurt called 656-acre tract; THENCE along the West line of said Hurt called 656
acre tract, as follows:  S. 7-52 W. 272.93 vrs.; S. 12-14 W. 101.68 vrs.; S.
20-42 W. 199.26 vrs.; and S. 10-44 W. 489.79 vrs. to the N.E.C. of the above
mentioned 47.33 acre Tract; THENCE North 81-34 West along the North line of
said 47.33 acre tract 1128.01 vrs. to the place of beginning, containing 196.31
acres of land, more or less, according to a recent survey, but previously called
267 acres.  SAVE and EXCEPT the following described tract of land, to-wit:
BEGINNING at a point for corner, the S.W.C. of the above mentioned 196.31 acre
tract, in the East line of the W. S. Douglas 266.05 acre tract; THENCE North
10 deg. 24 min. East with the West line of the A. M. Maymon tract, East line
of the W. S. Douglas Tract, and with an old fence line, a distance of 2362.14
feet to a point for corner in the center line of Caddo Marsh; THENCE with the
center line of Caddo Marsh and the North line of the A. M. Maymon tract, as
mentioned above, South 54 deg. 46 min. East 361.22 feet, and North 57 deg.
44 min. East 480.61 feet to a point for corner; THENCE South 10 deg. 24 min.
West, a distance of 2512.85 feet to a point for corner, in the South line of
the above mentioned A. M. Maymon Tract; THENCE North 81 deg. 34 min. West with
the South line of the A. M. Maymon Tract, and North line of the J. M. Cely, et al,
tract, a distance of 682.09 feet to the place of beginning, containing 36.31
acres of land, LEAVING 160 acres of land.


Tract 846 - Murchison Cely-Henderson Unit.  Being 120.30 acres of land out of the
Alfred Benge League, A-106, in Anderson County, Texas, described as follows:
BEGINNING at the Northeast corner of a 49 acre tract set out and described
in that certain Oil, Gas and Mineral Lease executed by Amos Epperson et al,
as Lessors, to A. G. Matlag, as Lessee, of record at Volume 591, page 148,
Deed Records of Anderson County, Texas; THENCE, North 9° 39' East a distance
of 1358.3 feet to a point for the Northeast corner of this tract; THENCE, South
81° 32' West a distance of 3162.6 feet to a point for the Northwest corner of
this tract; THENCE, South 10° 09' West a distance of 1710.9 feet to a point for
corner, said point being the Southwest corner of this tract; THENCE, South 81°
32' East 1324.2 feet to a point for the most Westerly Southeast corner of this
tract; THENCE, North 9° 39' East a distance of 305.6 feet to a point for an
interior corner of this tract; THENCE, South 81° 32' East a distance of 727.8
feet to a point for an interior corner of this tract; THENCE, South 9o 39' West
a distance of 1368.9 feet to a point for the most Southerly Southwest corner of
this tract; THENCE, South 81° 32' West a distance of 305.6 feet to a point for
the most Southerly Southeast corner of this tract; THENCE, North 9° 39' East a
distance 1402.1 feet to a point for an interior corner of this tract; THENCE,
South 82° 28' East a distance of 820.4 feet to the place of beginning, the said
tract containing 120.30 acres of land.


Tract 847 - Fairway A. M. Maymon.  Being 117.90 acres out of the Alfred Benge League,
A-106, Anderson County, Texas, and being described as that portion remaining of the
lands included in that Oil, Gas and Mineral Lease dated January 10, 1951, executed
by A. M. Maymon et al, Lessors, to Jeff Austin, Lessee, of record at Volume 430, Page
138, Deed Records of Anderson County, Texas, lying South of the 125 acre and west of
the 50 acre tracts excepted therein, leaving 117.90 acres of land.


Tract 848 - Fairway Epperson.  Being 38.821 acres of land out of the Alfred Benge
League, A-106, Anderson County, Texas, described in that certain Oil, Gas and Mineral
Lease dated April 17, 1959, from Amos Epperson et al, Lessors, to A. G. Matlage,
Lessee, of record at Volume 591, page 148, Deed Records of Anderson County, Texas,
save and except 10 acres thereof included within the Fairway Hurt-Epperson Unit
(Tract 849 herein).


Tract 849 - Fairway Hurt-Epperson Unit.  Being 160.000 acres of land out of the Alfred
Benge Survey, A-106, Anderson County, Texas, as described in that Unit Declaration
dated April 3, 1962, and recorded in Volume 643, page 495, Deed Records of Anderson
County, Texas.


EXHIBIT  B

Tract 850 - Murchison Hurt "A".  Being all that certain tract or parcel of land, part of the Alfred Benge Survey, Abstract No. 106, Anderson County, Texas, and being part of that certain called 656 acre tract described in a Mineral Deed which is recorded in Vol. 587, page 96, of the Deed Records of Anderson County, Texas, and being more completely described as follows, to-wit:

COMMENCING at a point for corner, the most Southerly SW corner of the above mentioned 656 acre tract and at the SE corner of a certain 1.0 acre tract conveyed to Rocky Mount Lodge by Farmers & Citizens Saving Bank, March 7, 1916, and recorded in Vol. 129, page 392, of the Deed Records of Anderson County, Texas; THENCE S. 80 deg. 39 min. E. with the South line of said 656 acre tract, a distance of 824.35 ft. to the place of beginning to the following described tract; THENCE N. 9 deg. 39 min. E.,parallel to the West line of said 656 acre tract, a distance of 6719.60 ft. to a point for corner in the center line of Caddo Creek; THENCE with the meanders of Caddo Creek, N. 88 deg. 09 min. E. 86.96 ft., S. 30 deg. 08 min. E. - 179.22 ft., N. 87 deg. 40 min. E. 370.31 ft., S. 65 deg. 33 min. E. 181.25 ft., S. 40 deg. 36 min. W. 92.19 ft., S. 64 deg. 39 min. E. 105.12 ft., N. 46 deg. 55 min. E. 212.22 ft., and S. 71 deg. 17 min. E. 131.25 ft., to a point for corner; THENCE S. 9 deg. 39 min. W., parallel to the West line of the above mentioned 656 acre tract, a distance of 6665.00 ft. to a point for corner, in the South line of said 656 acre tract; THENCE N. 8 deg. 39 min. W. with the South line of said tract a distance of 1049.33 ft. to the place of beginning, containing 160.0 acres of land.

Tract 851 - Fairway Hurt "A".  Being 160.0 acres of land out of the Alfred Benge League, A-106, Anderson County, Texas, composed of two tracts described as follows:

FIRST TRACT:  All that certain tract or parcel of land part of the Alfred Benge Survey, Abstract No. 106, Anderson County, Texas, being also part of that called 656 acre tract described in a Mineral Deed which is recorded in Volume 587, Page 96, of the Deed Records of Anderson County, Texas, and being more completely described as follows, to-wit:

COMMENCING at a point for corner, the most Southerly SW corner of the above mentioned 656 acre tract and the SE corner of a certain 1.0 acre tract conveyed to Rocky Mount Lodge by Farmers & Citizens Saving Bank, March 7, 1916, and recorded in Volume 587, Page 96, of the Deed Records of Anderson County, Texas; THENCE S. 80 deg. 39 min. E. with the South line of the above mentioned 656 acre tract a distance of 1873.68 ft. to the place of beginning for the following described tract; THENCE N. 9 deg. 39 min. E., parallel to the West line of said 656 acre tract a distance of 3315.79 ft. to a point for corner; THENCE S. 80 deg. 39 min. E., a distance of 1050.93 ft. to a point for corner; THENCE S. 9 deg. 39 min. W., parallel to the West line of said 656 acre tract a distance of 3319.41 ft. to a point for corner in the South line of said 656 acre tract; THENCE N. 78 deg. 47 min. W. - 110.87 and N. 80 deg. 39 min. W.- 940.10 ft., with the South line of said 656 acre tract, to the place of beginning containing 80 acres of land.

SECOND TRACT:  All that certain tract or parcel of land, situated in Anderson County, Texas, part of the Alfred Benge Survey, Abstract No. 106, being also part of a certain called 656 acre tract described in Volume 587, Page 96, of the Deed Records of Anderson County, Texas, and being more particularly described as follows, to-wit:

COMMENCING at a point for corner, the most Southerly SW corner of the above mentioned 656 acre tract and the SE corner of a certain 1.0 acre tract conveyed to Rocky Mount Lodge by Farmers and Citizens Saving Bank, March 7, 1916, and recorded in Volume 129, Page 392, of the Deed Records of Anderson County, Texas; THENCE S. 80 deg. 39 min. E. with the South line of said 656 acre tract, a distance of 1873.68 ft. to a point for corner; THENCE N. 9 deg. 39 min. E., parallel to the West line of said 656 acre tract, a distance of 3315.79 ft., to a point for corner, the place of beginning for the following described tract; THENCE N. 9 deg. 39 min. E., parallel to the West line of said 656 acre tract, a distance of 3315.79 ft., to a point for corner, in the centerline of Caddo Creek; THENCE with the meanders of Caddo Creek, S. 71 deg. 17 min. E. - 196.06 ft., N. 4 deg. 58 min. E. - 230.87 ft., S. 55 deg. 00 min. E.-671.43 ft., S. 12 deg. 53 min. E. - 359.04 ft., S. 87 deg. 16 min. E.-210.24 ft., S. 1 deg. 33 min. E. - 185.07 ft., S. 37 deg. 27 min. W. - 296.01 ft. and S. 24 deg. 41 min. E. - 44.79 ft., to a point for corner; THENCE S. 9 deg. 39 min. W. parallel to the West line of said 656 acre tract, a distance of 2468.90 ft. to a point for corner; THENCE N. 80 deg. 39 min. W., a distance of 1050.93 ft., to the

EXHIBIT  B

- 27 -

place of beginning, containing 80.0 acres of land.

Tract 852 - Murchison Hurt "B".  Being 160.000 acres of land out of the Alfred
Benge Survey, A-106, Anderson County, Texas, and being all of the lands described
in that Oil, Gas and Mineral Lease dated March 28, 1960, from C. H. Langford,
Lessor, to J. W. Murchison, Lessee, recorded in Volume 610, Page 12, and Volume
619, Page 208, Deed Records of Anderson County, Texas, less and except those portions
of this lease included in Tracts 849, 850, and 851 described above.

Tract 853 - Frost Henderson-Hurt Unit.  Being 157.050 acres of land out of the
Alfred Benge (A-106) and Jose Cherino (A-168) Surveys, Anderson County, Texas,
as described in that Declaration of Unit dated May 20, 1962, executed by Jack
Frost, et al, recorded in Volume 651, page 351, Deed Records of Anderson County,
Texas.

Tract 854 - Frost Henderson Unit.  Being 160.0 acres of land out of the Alfred Benge
League, A-106, Anderson County, Texas, as described in Unit Designation dated May 20,
1962, executed by Jack Frost et al, recorded in Volume 651, Page 378, Deed Records,
Anderson County, Texas.

Tract 855 - Texaco Mitchell.  Being 160.00 acres of land out of the Jose Cherino
Survey, A-168, in Anderson County, Texas, as described in that certain Oil, Gas
and Mineral Lease dated November 13, 1953, between K. R. Mitchell et al, as Lessor,
and The Texas Company, as Lessee, recorded in Volume 471, Page 145, Deed Records
of Anderson County, Texas, save and except the portion thereof that is described in
and included by that certain Declaration of Unit pertaining to the Frost Henderson-
Hurt Unit (Tract 853 herein) dated May 20, 1962, executed by Jack Frost, of record
at Volume 651, Page 351, Deed Records of Henderson County, Texas.

Tract 856 - Fairway Billingsley Unit.  Being 160.000 acres of land out of the Jose
Cherino Survey, A-168, Anderson County, Texas, as described in that Declaration of
Unit dated July 1, 1961, executed by Fairway Oil and Gas Company, Inc. et al, recorded
in counterpart including Volume 628, page 163, Deed Records of Anderson County, Texas.

Tract 857 - Fairway Wilkerson Unit.  Being 160.000 acres of land out of the Jose
Cherino Survey, A-168, Anderson County, Texas, as described in that Declaration of
Unit dated March 21, 1961, executed by Fairway Oil and Gas Company, Inc. Et Al,
recorded in counterpart including Volume 622, Page 408, Deed Records of Anderson
County, Texas.

Tract 858 - Fairway Westbrook.  Being 133.698 acres of land, more or less, out of the
Jose Cherino Survey, A-168, and being all that part of the following 240 acre tract
which is situated south of State Highway No. 40, said 240 acre tract being described
as follows:
   A part of the Jose Cherino headright on the water of Caddo Creek, a tributary of
   the Neches River; BEGINNING on the West boundary line of the Joseph Ferguson
   League where Caddo Creek crosses the same 20 vrs. N. to the N. W. Corner of
   said League; THENCE North with the W. B. line of said league 1640 vrs. to the
   S.E. corner of a tract of 86-76/100 acres a stake from which a P. O. 10 in.
   dia. brs. S. 66 W. 17 vrs.; THENCE North 6 W. 670 vrs. to the S.W. corner of
   the said 86.76/100 acres on the E.B. line of a tract _____ 442 acres made for
   Dick Pinkard a stake from which a hickory 7 in. brs. N. 45 E. 15 vrs. a sassafras
   5 in. brs. S. 14 E. 12-1/2 vrs.; THENCE South 10 W. 1580 vrs. a stake in marsh;
   THENCE in an easterly direction with the meanders of Caddo Creek to the place
   of beginning, containing 240 acres of land, more or less.

EXHIBIT B

- 28 -

Tract 859 - Fairway Walters Unit. Being 160.000 acres of land out of the Jose
Cherino Survey, A-168, Anderson County, Texas, as described in that Unit Declaration
dated August 15, 1961, executed by Fairway Oil and Gas Company, Inc. et al and
recorded in counterpart including Volume 634, page 504, Deed Records of Anderson
County, Texas.

Tract 860 - Fairway Westbrook Unit "B". Being 156.599 acres of land out of the
Joseph Ferguson (A-23) and J. M. Cook (A-972) Surveys, Anderson County, Texas, as
described in that Declaration of Unit dated March 24, 1961, executed by Fairway
Oil and Gas Company et al, recorded in Volume 622, Page 417, of Deed Records of
Anderson County, Texas, as amended by Amendment to Declaration dated March 12,
1963, recorded in Volume _____, Page _____, Deed Records of Anderson County, Texas.

Tract 861 - Fairway Vermillion Unit. Being 160.000 acres of land out of the Jose
Cherino (A-168) and J. M. Cook (A-972) Surveys, Anderson County, Texas, as described
in that Unit Declaration dated September 8, 1961, executed by Fairway Oil and Gas
Company, Inc. et al, recorded in Volume 634, Page 274, Deed Records of Anderson
County, Texas, as amended by Amendment of Unit Declaration effective September 8,
1961, recorded in Volume 657, Page 315, Deed Records of Anderson County, Texas.

Tract 862 - Murchison Robinson Unit. Being 70.1931 acres of land out of the Joseph
Ferguson Survey, A-23, Anderson County, Texas, as described in that Declaration of
Unit dated November 7, 1961, recorded in Volume 636, Page 85, Deed Records of Anderson
County, Texas, as amended by Amendment of Declaration dated December 5, 1961, recorded
in Volume 637, Page 127, Deed Records of Anderson County, Texas, and other amendments.

Tract 863 - Cities Service Garner "B" Unit. Being 160.00 acres of land out of the
Miles Yandle (A-850), Thomas Goss (A-27), M. A. Davey, Jr. (A-1118) and J. M. Cook
(A-972) Surveys, in Anderson County, Texas, as described in that Oil Unit Pooling
Agreement and Designation dated April 13, 1962, by Cities Service Petroleum Company
et al recorded in counterpart including Volume 653, Page 115, Deed Records, Anderson
County, Texas, as amended by Amendment to Oil Unit Pooling Agreement and Designation
dated August 1, 1962, by Cities Service Petroleum Company, et al, recorded in counter-
part including Volume 653, page 139, Deed Records, Anderson County, Texas.

Tract 864 - B. F. Phillips Dickerson Unit. Being 160.000 acres of land out of the
J. M. Cook Survey, A-972, Thomas Goss, A-27, and Joseph Ferguson Survey, A-23,
Anderson County, Texas, as described in that certain Designation of Unit executed
by B. F. Phillips of record at Volume 644, page 248, Deed Records of Anderson
County, Texas.

Tract 866 - Frankston Townsite. Being 19.5 acres of land, more or less, out of the
Joseph Ferguson Survey, A-23, Anderson County, Texas, more particularly described as
follows, to-wit:
1. The SW/4 of Block 53; The W/2 and the SE/4 of Block 34; Block 31; The SW/4
   of Block 30; Block 10; The W/2 and the SE/4 of Block 11; The S/2 and the
   NE/4 of Block 5; Block 4; Lots numbered 1 and 2, Block 3; Lots numbered 4
   through 20, Block 6; Lots 1 through 11, and 16 through 20, Block 2, all
   numbers inclusive; all of said lots and blocks being out of the Frankston
   Townsite according to the plat thereof of record in the County Clerk's office
   of Anderson County, Texas;

2. A tract of land 150 feet square situated along the south line of Lot 20, of
   Block 6, Frankston Townsite, the West line of which is along the West line
   of the Pan Am Atwood Unit (Tract 761 herein), the South line of which is
   along the North line of the Murchison Robinson Unit (Tract 862 herein) and
   the East line thereof being along a Westerly line of the said Robinson Unit,

EXHIBIT  B

- 29 -

the said tract containing 0.5165 acres, more or less;

3.   A tract of land 150 feet by 400 feet, more or less, commencing at the Southwest corner of Lot 1, Block 2, Frankston Townsite; Thence, in a Westerly direction to the intersection of the said South line projected West a distance of 37.5 feet to the intersection of the center line of Elm Street for the Northwest corner of this tract; Thence, in a Southerly direction with the center line of Elm Street projected South a distance of 150 feet to the inside corner of the said Murchison Robinson Unit (Tract 862 herein) for the SW corner of this tract; Thence, in an Easterly direction parallel with the North line of this tract and with a North line of the Murchison Robinson Unit a distance of 400 feet to a point therein for the SE corner of this tract; Thence, in a Northerly direction parallel with the West line of this tract a distance of 150 feet to a point in a line being the Easterly projection of the South line of Lot 20, Block 2, said point being the NE corner of this tract; Thence, in a Westerly direction with the South line projected of the said Lot 20, Block 2 and with the South line of said Lot 20 and continuing with the South line of Lot 1 in said Block to the place of beginning, the said tract containing 1.3774 acres of land, more or less.


Tract 880 - Unresolved.  Being 6.26 acres of land out of the Alfred Atkinson Survey, A-1196, Henderson County, Texas, described by metes and bounds as follows, to-wit: Beginning at a point on the occupied South line of the I. W. Burton League, A-3, said point being South 89° 51' East, a distance of 471.11 feet from the Northwest Corner of the Sands Burgamy Unit (Tract 834 herein); Thence, South 54° 55' West, a distance of 375.85 feet to a point; Thence, South 47° 22' West, a distance of 900.91 feet to a point; Thence, North 78° 16' East a distance of 75 feet, more or less, to a point for corner; Thence, North 57° 53' East, a distance of 147.34 feet for an inside corner of this tract; Thence, South 86° 03' East a distance of 618.51 feet; Thence, North 11° 56' East, a distance of 786.24 feet to the place of beginning.


Tract 920 - Hunt Petr. Hardman.  Being 38.410 acres of land out of the Hansford Hanks Survey, A-363, Anderson County, Texas. and being the same land described in deed dated September 18, 1957, from Mrs. Mary Milner to J. W. Hardman, Sr., said deed being of record at Volume 562, page 365, Deed Records of Anderson County, Texas.


Tract 950 - BrowneFee.  Being 40.0 acres of land out of the I. & G. N. R.R.Survey, A-421, Anderson County, Texas, and more fully described as being bounded as follows: On the North by the South line of the Alfred Benge League, A-106; on the East by the East line of the said I. & G. N. R. R. Survey, A-421, and said line being also the West line of the W. F. Richardson Survey, A-676; on the South by the Northerly South line of the said I. & G. N. R. R. Survey, A-421, and said line being also the most Northerly North line of the Robert Miers Survey, A-571; and on the West by a line parallel with the East line of the Tract here described a sufficient distance West of said East line to cover and include 40.0 acres of land out of the NE portion of the said I. & G. N. R. R. Survey.


Tract 951 - Fairway Hurt Et Al Unit.  Being 160.000 acres of land out of the Alfred Benge Survey, A-106, Anderson County, Texas, as described in Unit Declaration dated June 1, 1962, recorded in counterpart including Volume 647, page 474, Deed Records of Anderson County, Texas.


Tract 952 - Fairway Stephens Unit.  Being 160.000 acres of land out of the Jose Cherino Survey, A-168, Anderson County, Texas, as described in that Unit Declaration dated October 2, 1961, executed by Fairway Oil & Gas Company, Inc., et al, in counterpart including Volume 635, page 738, Deed Records of Anderson County, Texas.


EXHIBIT   B

- 30 -

Tract 953 - Humble Thompson. Being 212.10 acres of land out of the Jose Cherino
Survey, A-168, in Anderson County, Texas, as described in that certain Oil, Gas
and Mineral Lease dated July 1, 1960, between Nellie M. Thompson et al, as Lessors,
and Gordon B. Broyles, as Lessee, of record in Volume 609, at Page 118, Deed
Records of Anderson County, Texas.


Tract 954 - Hamill Cook. Being 199.745 acres of land out of the Jose Cherino
Survey, A-168, Anderson County, Texas, as described in that certain Oil, Gas and
Mineral Lease dated November 19, 1953, executed by Bessie A. Cook et al, as
Lessors, to J. H. DeLong, as Lessee, of record at Vol. 470, page 265, Deed Records
of Anderson County, Texas.


Tract 956 - Phillips Deaton Unit. Being 160.000 acres of land out of the Jose
Pineda Survey, A-59, in Anderson County, Texas, as described in that certain
Declaration of Consolidation and Unitization dated November 13, 1962, executed by
Phillips Petroleum Company, recorded in counterpart including Volume 654, Page
624, Deed Records of Anderson County, Texas.


Tract 957 - Phillips Griffin. Being 160.000 acres of land out of the Jose Pineda
Survey, A-59, in Anderson County, Texas, as described in that certain Declaration
of Consolidation and Unitization dated October 9, 1962, executed by Phillips
Petroleum Company, recorded at Volume 657, Page 200, Deed Records of Anderson
County, Texas.


Tract 958 - Phillips Cook "A" Unit. Being 160.000 acres of land out of the Miles
Yandle Survey, A-850, in Anderson County, Texas, as described in that certain
Declaration of Consolidation and Unitization dated June 7, 1962, executed by
Phillips Petroleum Company, recorded at Volume 648, Page 165, Deed Records of
Anderson County, Texas.


Tract 959 - Murchison Northcutt Unit. Being 160.00 acres of land out of the Miles
Yandle (A-850), Jose Cherino (A-162) and Jose Pineda (A-59) Surveys, Anderson
County, Texas, as described in that Unit Designation dated July 9, 1962, executed
by J. W. Murchison et al, and recorded in Volume 647, Page 602, Deed Records of
Anderson County, Texas, and amended Unit Designation dated August 1, 1962, as
recorded in Volume 648, Page 588, Deed Records of Anderson County, Texas.


Tract 960 - Texaco Cook Unit. Being 129.505 acres of land situated in Anderson
County, Texas, being a part of the Miles Yandle Survey, A-850, and a part of the
Jose Pineda Survey, A-56, and being more completely described as follows:
   BEGINNING at a point for corner, said point being the Southeast corner of
   the Miles Yandle Survey, A-850; THENCE, North 0° 15' West with the occupied East
   line of the Miles Yandle Survey, A-850, a distance of 2448.15' to a point for
   corner; THENCE, North 84° 49' West 718.30' to a point for corner; THENCE, South
   0° 03' East 2515.84' to a point for corner; said point being in the South line
   of the Miles Yandle Survey, A-850; THENCE, North 89° 48' East 15.62' to a point
   for corner; THENCE, South 0° 51' East 3110.71' to a rock for corner; THENCE,
   South 88° 48' East 1236.83' to a rock for corner; THENCE, North 0° 57' West
   3140.91' to a point for corner, said point being in the North line of the Jose
   Pineda Survey, A-56; THENCE, South 89° 48' West 521.42' to the Southeast corner
   of the Miles Yandle Survey, A-850, and being the point of beginning, containing
   129.505 acres of land.


EXHIBIT B

- 31 -

Tract 961 - Cities Service Dickson. Being the Westerly 475.93 acres of land out of the Thomas Goss Survey, A-27, more particularly described as the West 475.93 acres out of the 712.75 acres described in that certain Oil, Gas and Mineral Lease dated January 18, 1955, executed by Carrie May Dickson, et al, as Lessors, to Fred M. Garrett, as Lessee, of record at Volume 500, page 283, Deed Records, Anderson County, Texas, and after deduction of that portion of the 712.75 acre tract contributed to B. F. Phillips Dickerson Unit (Tract 864 herein).

Tract 962 - Gulf Averyt-Cook Unit. Being 160 acres of land out of the Thomas Goss Survey, A-27, and out of a part of the Miles Yandle Survey, Abstract No. 850, according to field notes of said Miles Yandle Survey filed in December, 1940, by W. B. Chambers, County Surveyor, in Anderson County, Texas, more particularly described as follows:
BEGINNING at the Northeast corner of the M. A. Cook et al, 44.96 acre tract in the Thomas Goss Survey; THENCE, South along the East line of said M. A. Cook et al tract and the East line of the Mallie Averyt 104.2 acre tract, 1022.5 varas to a point for corner in the East line of said Mallie Averyt tract; THENCE, West 239.5 varas to a point for corner; THENCE, South 239.5 varas to a point for corner on the South line of said Mallie Averyt tract; THENCE, West along Mallie Averyt's south line, 511.5 varas to the Southwest corner of said tract; THENCE, North 00° 59' West, along the West line of the Mallie Averyt tract and the West line of the D. F. Cook 21 acre tract, 1262.0 varas to Cook's Northwest corner; THENCE, East along the North line of said D. F. Cook tract and the North line of the M. A. Cook et al tract, 772.6 varas to the place of beginning, containing 160 acres, more or less, embracing all of the D. F. Cook 21.0 acre tract, all of the M. A. Cook et al 44.96 acre tract and 94.04 acres of the Mallie Averyt 104.2 acre tract. The said Unit is further described in that Declaration of Unit executed by Gulf Oil Corporation, et al, dated March 29, 1963, recorded in Volume _____, Page _____, Deed Records of Anderson County, Texas.

Tract 963 - Gulf Averyt. Being 10.16 acres of land out of the Thomas Goss Survey, Abstract No. 27, Anderson County, Texas, more particularly described as follows:
BEGINNING at the Southeast corner of the 104.2 Mallie Averyt tract in the Thomas Goss Survey; THENCE, West along the Mallie Averyt's South line 239.5 varas; THENCE, North 239.5 varas; THENCE, East 239.5 varas; THENCE, South along the East line of the Mallie Averyt tract 239.5 varas to the point of beginning, the said described tract containing 10.16 acres.

Tract 964 - Murchison Beard. Being 94.25 acres of land out of the Jose Pineda Survey, A-59, Anderson County, Texas, more particularly described as follows, to-wit:
BEGINNING at the Northeast corner of the Rube Beard 59.47 acre Tract (called 80 acres), being also the Southeast corner of the H. A. Northcutt 102 acre tract in the Miles Yandle Survey; THENCE, North 89° 30' West with the North line of the Pineda Survey a distance of 4868.8 feet to point for corner, being the Northwest corner of the Rube Beard 98.43 acre tract and the Northeast corner of the J. C. Slaughter 20 acre Tract; THENCE, South with the West boundary line of the said Beard Tract and the East boundary lines of the said Slaughter tract and of the W. O. Bacon Tract, a distance of 2565 feet to a stake for corner, a point in the ROW of Texas State Highway 155, known as the Palestine, Frankston Highway; THENCE, South 89° 32' East a distance of 1640 feet to the fence post on the West boundary line of the T. M. Moren Estate 113.55 acre tract for the Southeast corner of this tract; THENCE, North with the West boundary line of the said Moren Tract at 1643 a fence post for the Northwest corner of the Moren tract and for the Southwest corner of the Beard 59.47 acre (called 80) Tract, and continuing to a point on the North line of the said Pineda Survey at 2669 feet, more or less, said point being the Northwest corner of the said Beard 59.47 acre tract and the Northeast corner of this tract; the said described tract contains 98.43 acres of land, and from said tract shall be excepted and deducted 4.18 acres contributed to and a part of the Murchison's Northcutt Unit (Tract 959 herein) leaving 94.25 acres of land.

EXHIBIT  B

- 32 -

**Tract 965 - Murchison Beard A.** Being 54.20 acres of land out of the Jose Pineda Survey, A-59, Anderson County, Texas, more particularly described as follows, to-wit: Beginning at the Northeast corner of the Rube Beard 59.47 acre tract (called 80 acres), being also the Southeast corner of the H. A. Northcutt 102 acre tract in the Miles Yandle Survey; THENCE, South 0° 42' West, a distance of 1026.2 feet to the Northeast corner of the T. M. Moren Estate 113.55 acre tract and the Southeast corner of the Beard Tract; THENCE, South 89° 30' West a distance of 2400 feet to a fence post in the West Boundary Line of the Moren Tract, said point being also the Northwest corner of said Moren Tract; THENCE, North a distance of 1025 feet, more or less, to a point in the North line of the Pineda Survey, said point being also the Northeast corner of the 98.43 acre Rube Beard Tract; the tract here described contains 59.47 acres of land, and from said tract should be excepted and deducted the 5.27 acres contributed to and a part of the Murchison Northcutt Unit (Tract 959 herein) leaving 54.20 acres of land.

**Tract 967 - Murchison Ellis Unit.** Being 160.00 acres of land out of the Thomas Goss (A-27) and Jose Pineda (A-56) Surveys, Anderson County, Texas, as described in that Declaration of Unit dated August 16, 1962, of record at Volume 649, Page 480, Deed Records of Anderson County, Texas, and in that Amended Declaration of Unit dated October 31, 1962, of record at Volume 653, Page 148, Deed Records of Anderson County, Texas.

**Tract 968 - Texaco Jowell.** Being 54 acres of land, more or less, (on re-survey shows to contain 49.26 acres) off the West end of all of that certain lot, tract or parcel of land situated in the Thomas Goss League, A-27, in Anderson County, Texas, about 1-1/2 miles South of the town of Frankston, Texas, and described as follows: BEGINNING at the Northwest corner of the D. B. Baker's 10 acre tract; THENCE, West 1520 varas to a stake, a pine; THENCE, South 371-1/2 varas to corner; THENCE, East 1520 varas to corner; THENCE, North 371 varas to the place of BEGINNING, and containing 100 acres of land.

**Tract 969 - Phillips Baker.** Being 192.000 acres of land out of the Thomas Goss Survey, A-27, Anderson County, Texas, as described in that certain Oil, Gas and Mineral Lease dated April 9, 1953, executed by Max W Baker et ux, as Lessors, to Phillips Petroleum Company, as Lessee, of record at Volume 457, Page 221, Deed Records of Anderson County, Texas.

**Tract 970 - Skelly Beard.** Being 99.64 acres of land out of the Jose Cherino Survey, A-168, Anderson County, Texas, as described in that certain Oil, Gas and Mineral Lease dated June 3, 1960, executed by Jack Beard et ux, as Lessor, to Skelly Oil Company, as Lessee, of record at Volume 608, Page 389, Deed Records of Anderson County, Texas.

**Tract 971 - Unresolved.** Being 5.49 acres of land out of the Jose Cherino Survey, A-168, Anderson County, Texas, described as follows, to-wit: BEGINNING at the Southeast corner of the Beard 99.64 acre tract (Tract 970 herein) on the North line of the Jose Pineda Survey, A-56; THENCE, North 88° 48' West a distance of 630 feet, more or less, to the West line of the Phillips Deaton Unit (Tract 956 herein) for the Southeast Corner of this tract; THENCE, North 1° 34' West with the West line of the said Deaton Unit a distance of 1510 feet, more or less, to a point in the said West line where the North line of the Skelly Beard Tract (Tract 970 herein) projected intersects the said Deaton West line for the Northeast Corner of this Tract; THENCE, North 87° 25' West, a distance of 40 feet, more or less, to the Northeast Corner of the said Skelly Beard Tract, for the Northwest Corner of this Tract; THENCE, South 6° 16' East, a distance of 127.2 feet to a point for an inside corner of this Tract; THENCE,

South 5° 02' West, a distance of 942.2 feet to a point for an inside corner
of this Tract; THENCE, South 48° 32' West, a distance of 678.2 feet to the place
of beginning, the said described tract containing 5.49 acres of land, more or less.


Tract 972 - Hughey Moren Unit. Being 160.00 acres of land out of the Jose Pineda
Survey, A-56, Anderson County, Texas, as described in that Unit Declaration dated
May 23, 1963, of record at Volume 664, pages 31, 39 and 47, Deed Records of Anderson
County, Texas.


Tract 973 - Phillips Slaughter. Being 17.526 acres of land out of the Jose Pineda
Survey, A-56, Anderson County, Texas, described as follows, to-wit:
BEGINNING at the most southerly Southeast corner of that 160-acre tract described
in Exhibit "A" of that certain instrument entitled Declaration of Consolidation
and Unitization, Garland Deaton, et al, Oil Unit, recorded in Volume 654, page
630, Deed Records of Anderson County, Texas, the said point of beginning being
89° 39' West 2425.38 feet and South 0° 44' East 105.97 feet from the Southeast
corner of the Jose Cherino Survey, A-168, and being also a point in the East line
of Tract No. 1 of the Oil, Gas and Mineral Lease granted to Phillips Petroleum
Company by J. C. Slaughter et ux, dated April 9, 1953, and recorded in Volume 457,
page 538, Deed Records, Anderson County, Texas; THENCE, Southerly 778.75 feet to
a fence corner, being the Southeast corner of said Tract No. 1; THENCE, Westerly
969.44 feet to a fence corner at the Southwest corner of said Tract No. 1; THENCE,
Northerly with the West line of said Tract No. 1, 795.40 feet to the Southwest
corner of the said oil unit; THENCE, Easterly with the most Southerly South line
of the said oil unit, 954.54 feet to the point of beginning of the herein described
tract, containing 17.526 acres, more or less.


Tract 974 - Texaco Beard. Being a part of the Jose Pineda 3-League Grant and a
part of a tract of 100 acres, more or less, known as Block No. 1 of a Sub-division
of the Thomas Taylor 640 acre tract out of the North 1/2 of said Grant, and more
particularly described as follows:
BEGINNING at the Southeast Corner of said 100 acres, a cedar post in fence
for corner, witness a 10" chittum West 5 ft. and an 8" hky. North 5 deg. West
11 ft.; THENCE, South 89 deg. West with fence 1281 feet to corner in center
line of Texas State Highway #155; THENCE with center line of said State Highway
to the Northeast Corner of the Harper Black, et ux, tract containing 198.266
acres of land, more or less; THENCE, South 89 deg. 45 min. East and along fence
1582 6/10 ft. to a large cedar post in fence for corner, witness a 10" pine
West 12 ft.; THENCE, South 1 deg. 30 min. West with fence 2700 ft. to the place
of beginning, and containing 89-63/100 acres of land.


Tract 975 - Texaco Elrod. Being 54.5 acres of land out of the Jose Pineda 3-League
Grant, Anderson County, Texas, described as the following three tracts, to-wit:
Tract I. A tract of land out of the Jose Pineda 3-League Grant of land and
described as follows:
BEGINNING at the Southwest corner of W. M. Elrod's 46 acres, witness the same
a P. O. 10" in diameter bears North 22 West 3.9 varas, and another 4" in
diameter bears South 36 East 4.2 varas marked X; THENCE, South 230-1/2 varas
to a pile of rocks for corner from which a Hickory 1 foot in diameter bears
North 2 East 10 varas and a B. J. 4" in diameter bears South 31 East 4-2/5
varas; THENCE, East at 253.7 varas passed the Northwest corner of F. M.
Lavassar's 41.3-acre tract, at 600 varas to corner in field from which a
Hickory 8" in diameter bears due East 53.2 varas; THENCE, North 236 varas to
corner on Elrod's South boundary line from which a P. O. 1 foot in diameter
bears South 42 East 20 varas; THENCE, West 600 varas to the place of beginning,
containing 24-1/2 acres and being the same land described in a deed from C.
Thomason et ux to W. M. Elrod, dated January 20, 1910, recorded in Vol. 92,
page 321 of the Anderson County Deed Records, SAVE AND EXCEPT, however 2 acres
hereinafter described as Tract No. II.

Tract II. A part of the Jose Pineda 3-League Grant of land and being about 2
acres of land out of a certain 24-1/2 acre tract which is described in a
deed from C. Thomason and Sallie Thomason to W. M. Elrod, dated January 20.


EXHIBIT B

- 34 -

1910, recorded in Vol. 92, Page 321, Deed Records, Anderson County, Texas,
the 2 acres herein conveyed being described as follows:
BEGINNING at the Northwest corner of said above described 24-1/2 acre tract;
THENCE, South with the East Boundary Line of the Sand Flat School House Road
97 yards to a stake in the East Boundary Line of said road and the West
Boundary Line of said 24-1/2 acre tract; THENCE, East 100 yards to stake in
field for corner; THENCE, North to stake in the North Boundary Line of said
24-1/2 acre tract; THENCE, West along the North Boundary line of said 24-1/2
acre tract to the place of beginning, and being the same land described in a
deed from Martin Elrod et al to Mr. and Mrs. E. J. Lively, bearing no date
but acknowledged April 8, 1939, recorded in Vol. 294, page 137, Deed Records,
Anderson County, Texas.

Tract III.   46 acres, more or less, described as follows:
BEGINNING at the Northeast corner of a 164-acre tract, Lynn and Ironwood
(X) for bearings; THENCE, West 877 varas, 856 varas to the Northwest
corner of the Gaston Survey, Black Gum (X); THENCE, South 330 varas to
pile of rocks from which a P. O. 10" in diameter (X) bears North 22 West
3.9 varas, another 4" in diameter (X) bears South 36 East 4.2 varas;  THENCE,
East 710 varas to corner in branch from which an Elm 8" in diameter (X) bears
S. 48 West 6.3 varas; THENCE, Northward with said branch to the place of
beginning, containing 46 acres and being the same land described in a deed
from C. Thomason and wife to W. M. Elrod, dated October 28, 1905, and recorded
in Vol. 81, page 263 of the Anderson County Deed Records.
LESS AND EXCEPT the following tract of land:
BEGINNING at the Northeast corner of the above mentioned W. M. Elrod 46 acre
tract; said corner being in center of a branch on the South Boundary Line of
T. M. Moren et al 100 acre tract and being also the Northwest corner of the
Mrs. Nellie Mitchell et al 103 acre tract; THENCE up center line of said
branch with all its meanderings as follows:  South 13 deg. 30' West 65 feet;
West 70 feet; South 16 deg. 00' East 53 feet; South 4 deg. 15' West 125 feet;
South 25 deg. 30' West 95 feet; South 1 deg. 00' East 235 feet; South 30 deg.
30' East 35 feet; South 8 deg. 57' West 225.1 feet; South 38 deg. 42' West
168.1 feet to the Southeast corner of said W. M. Elrod 46 acre tract; THENCE
West along the South Boundary Line of said Elrod 46 acre tract, 610.15 feet
(219.65 varas); THENCE, North 943.15 feet 339.53 varas) to the North Boundary
Line of said W. M. Elrod 46 acre tract and South Boundary Line of T. M.
Moren et al 100 acre tract; THENCE, East along said North Boundary Line of
W. M. Elrod 46 acre tract, 849.10 feet (305.68 varas) to the place of begin-
ning; CONTAINING 16.00 acres of land.

Tract 976 - Texaco Cook.  Being 48.45 acres of land, more or less, in the Jose
Pineda Three League Grant, Abstract No. 56, situated in Anderson County, Texas,
more particularly described as follows:
BEGINNING at a point in a branch, which point is the Southeast corner of
W. M. Elrod's 46 acre tract, from which the Northwest corner of the Gaston
Survey bears North 330 varas and West 710 varas and an Elm 8 in. diameter
marked (X) bears South 48° West 6.3 varas; THENCE, West 110 varas with the
South line of said 46 acre tract to the Northeast corner of a 24.5 acre
tract from which a P. O  12 in. dia. brs. South 42° East 20 varas; THENCE,
South 236 varas with the East line of said 24.5 acre tract to the Southeast
Corner of same from which a Hickory 8 in. diameter bears due East 53.2 varas;
THENCE, West 346.3 varas with the South line of said 24.5 acre tract to the
most Northerly Northeast Corner of C. B. Kimbrough's 57.3 acre tract; THENCE,
South 438 varas with the most northerly East line of said 57.3 acre tract to
an interior corner of same; THENCE East 190 varas with the most Southerly North
line of said 57.3 acre tract to the most Southerly Northeast corner of same in
old Fosterville and Kickapoo Public road; THENCE, South 163 varas with the most
Southerly East line of said 57.3 acre tract to the Northwest corner of Alton
Cook's 3.25 acre tract; THENCE, East 149 varas with the North line of said 3.25
acre tract to the East corner of same in the West line of W. M. Elrod's 34 acre
tract which corner is in the Palestine and Frankston Public road; THENCE, North
33° East 173.5 varas with the West line of said 34 acre tract to the Northwest
Corner of same from which a B. J. 12 in. diameter bears North 42° West 16.8 varas;
THENCE, East 160 varas with the North line of said 34 acre tract to the West
Corner of a 5.5 acre tract; THENCE, North 32° 30' East 239 varas with the West
line of said 5.5 acre tract to a rock, the north corner of same in the North
line of H. M. Cook's 54.1 acre tract from which a double Persimmon each prong

EXHIBIT  B

- 35 -

being 8 in. diameter bears South 75° West 33.4 varas; THENCE, North 50° West
with the North line of said 54.1 acre tract and John Bard's boundary line,
at 132 varas passing the Northwest corner of said 54.1 acres, at 332 varas
a branch from which a 6 in. Hickory marked X, 8 varas distant, another same
size on opposite side; THENCE in a Northerly direction with the meanderings
of the branch to the point of beginning.

EXHIBIT  B

EXHIBIT  B-1

UNIT  AGREEMENT

FAIRWAY  (JAMES LIME)  UNIT

Schedule of Tract Participation for Each Tract During Phase I and Phase II

| Tract No. | Tract Participation, Percent | |
|---|---|---|
| | Phase II | Phase I |
| 147 | .0001 | .0012 |
| 148 | .1272 | .3020 |
| 149 | .4685 | .5142 |
| 150 | .0019 | .0193 |
| 151 | .0279 | .1014 |
| 152 | .4081 | .5544 |
| 153 | .0064 | .0381 |
| 154 | .4371 | .5726 |
| 155 | .0088 | .0210 |
| 156 | .0434 | .0858 |
| 245 | .0001 | .0008 |
| 246 | .6192 | .5200 |
| 247 | .5824 | .6029 |
| 248 | .9355 | .8143 |
| 249 | 1.0513 | .8782 |
| 250 | .9355 | .8219 |
| 251 | 1.0680 | .8859 |
| 252 | .4738 | .5578 |
| 253 | .7611 | .7016 |
| 254 | .2643 | .4289 |
| 255 | .0004 | .0061 |
| 256 | .4810 | .5743 |
| 344 | .0268 | .0800 |
| 345 | .0127 | .0112 |
| 346 | .4612 | .5180 |
| 347 | .5539 | .4762 |
| 348 | 1.0262 | .8673 |
| 349 | 1.2079 | .9575 |
| 350 | 1.1072 | .9060 |
| 351 | .8773 | .7612 |
| 352 | .9040 | .7984 |
| 353 | .8347 | .7710 |
| 354 | .3985 | .5461 |
| 355 | .0897 | .1095 |
| 356 | .0006 | .0116 |
| 357 | .1202 | .2057 |
| 443 | .0288 | .0482 |
| 444 | .2301 | .1921 |
| 445 | .7742 | .6995 |
| 446 | 1.1803 | .9403 |

| Tract No. | Tract Participation, Percent | |
|---|---|---|
| | Phase II | Phase I |
| 447 | 1.1072 | .9077 |
| 448 | 1.1308 | .9195 |
| 449 | .9418 | .8249 |
| 450 | 1.1243 | .9161 |
| 451 | 1.0148 | .8616 |
| 452 | .9903 | .8493 |
| 453 | .9746 | .8169 |
| 454 | .6941 | .6845 |
| 455 | 1.0653 | .8868 |
| 456 | .6914 | .6827 |
| 457 | .1180 | .1775 |
| 458 | .4047 | .5518 |
| 459 | .0048 | .0324 |
| 539 | .0038 | .0050 |
| 540 | .0244 | .0767 |
| 541 | .1760 | .2078 |
| 542 | .7717 | .7216 |
| 543 | .7154 | .6244 |
| 544 | 1.1114 | .9090 |
| 545 | 1.2410 | .9721 |
| 546 | 1.1733 | .9389 |
| 547 | 1.0254 | .8657 |
| 548 | 1.2509 | .9797 |
| 549 | 1.9273 | 1.6718 |
| 551 | .8088 | .7585 |
| 552 | .7600 | .7341 |
| 553 | .7470 | .7276 |
| 554 | .7360 | .7221 |
| 555 | .6740 | .6912 |
| 556 | .5829 | .6456 |
| 557 | .0145 | .0466 |
| 558 | .0232 | .0649 |
| 560 | .1229 | .2820 |
| 561 | .0000 | .0022 |
| 637 | .0218 | .0320 |
| 638 | .0228 | .0280 |
| 639 | .6530 | .6278 |
| 640 | .3056 | .3237 |
| 641 | .8151 | .7616 |
| 642 (Hunt) POYNER NE UT | .9241 | .8162 |
| 643 | 1.0856 | .8969 |
| 644 | 1.2140 | .9611 |
| 645 | 1.1482 | .9282 |
| 646 | 1.1690 | .9387 |
| 647 | 1.0115 | .8598 |
| 648 | .9929 | .7947 |
| 649 | 1.1461 | .9272 |
| 650 | 1.0647 | .8865 |
| 651 | 1.1491 | .9190 |
| 652 | .9795 | .8439 |

|  | Tract Participation, Percent | |
| Tract No. | Phase II | Phase I |
| 653 | .8428 | .7585 |
| 654 | .6377 | .6094 |
| 655 | .7235 | .7159 |
| 656 | .5516 | .6232 |
| 657 | .2338 | .3183 |
| 658 | .4002 | .4850 |
| 659 | .2574 | .4573 |
| 660 | .0534 | .1544 |
| 661 | .1520 | .3628 |
| 662 | .0017 | .0123 |
| 663 | .0004 | .0080 |
| 701 | .0073 | .0073 |
| 702 | .0074 | .0073 |
| 735 | .8104 | .7405 |
| 736 | .0011 | .0027 |
| 737 | 1.6815 | 1.8061 |
| 739 | .6927 | .7005 |
| 741 | .6010 | .6546 |
| 742 | .7264 | .6938 |
| 743 | .6181 | .6560 |
| 744 | .8157 | .7635 |
| 745 | .7152 | .6125 |
| 746 | 1.1013 | .9048 |
| 747 | .7781 | .7431 |
| 748 | 1.1797 | .9430 |
| 749 | .9059 | .8060 |
| 750 | 1.1657 | .9371 |
| 751 | .8365 | .7723 |
| 752 | 1.5985 | 1.4971 |
| 753 | .7130 | .6703 |
| 754 | .7560 | .7321 |
| 755 | .7658 | .6915 |
| 756 | .6229 | .6631 |
| 757 | .0039 | .0040 |
| 758 | .7162 | .7122 |
| 759 | .4386 | .5573 |
| 760 | .0484 | .1405 |
| 761 (Amoco) Atwood | .2536 | .4567 |
| 762 | .0003 | .0038 |
| 763 | .0001 | .0008 |
| 764 | .0009 | .0106 |
| 770 | .1289 | .1153 |
| 814 | .0844 | .1936 |
| 815 | .0153 | .0965 |
| 816 | .0001 | .0037 |
| 817 | .3379 | .5076 |
| 818 | .0017 | .0163 |
| 819 | 3.5970 | 3.6131 |
| 825 | .0272 | .0282 |
| 826 | .1895 | .2087 |

|  | Tract Participation, Percent | |
| --- | --- | --- |
| Tract No. | Phase II | Phase I |
| 827 | .7332 | .7207 |
| 828 | .0870 | .1323 |
| 829 | .0065 | .0287 |
| 830 | .0134 | .0365 |
| 831 | .0065 | .0178 |
| 832 | .2323 | .3864 |
| 833 | .0047 | .0197 |
| 834 | .0995 | .2092 |
| 835 | .0519 | .1028 |
| 836 | .0002 | .0016 |
| 837 | .2844 | .4917 |
| 838 | .0147 | .0776 |
| 839 | .1268 | .2295 |
| 840 | .0000 | .0015 |
| 841 | .5197 | .6140 |
| 842 | .1510 | .3046 |
| 843 | .4122 | .5602 |
| 844 | .0464 | .1607 |
| 845 | .6618 | .6850 |
| 846 | .1955 | .3633 |
| 847 | .0127 | .0715 |
| 848 | .0118 | .0528 |
| 849 | .4390 | .5657 |
| 850 | .4042 | .5362 |
| 851 | .5044 | .6019 |
| 852 | .5496 | .6289 |
| 853 | .7968 | .7460 |
| 854 | .5533 | .6308 |
| 855 | .7352 | .7217 |
| 856 | .7979 | .7530 |
| 857 | .7757 | .7420 |
| 858 | .6899 | .6408 |
| 859 | .7082 | .7082 |
| 860 | .5332 | .6132 |
| 861 | .6970 | .7026 |
| 862 | .0811 | .1621 |
| 863 | .5941 | .6511 |
| 864 | .1741 | .4059 |
| 866 | .0039 | .0341 |
| 880 | .0012 | .0078 |
| 920 | .0246 | .0610 |
| 950 | .0009 | .0105 |
| 951 | .1156 | .2451 |
| 952 | .3618 | .5221 |
| 953 | .0112 | .0458 |
| 954 | .5862 | .7344 |
| 956 | .3695 | .5236 |
| 957 | .4573 | .5829 |
| 958 | .7106 | .7094 |
| 959 | .3837 | .5459 |

Nunchin - Cely. Headers 846

Purchase - Phase "C" 852

|                | Tract Participation, Percent | |
| Tract No.      | Phase II | Phase I |
|----------------|----------|---------|
| 960            | .1532    | .3419   |
| 961            | .2116    | .4625   |
| 962            | .3416    | .5250   |
| 963            | .0039    | .0244   |
| 964            | .0466    | .2007   |
|                |          |         |
| 965            | .1013    | .1706   |
| 967            | .0105    | .0740   |
| 968            | .0237    | .0916   |
| 969            | .0056    | .0405   |
| 970            | .0148    | .0857   |
|                |          |         |
| 971            | .0007    | .0042   |
| 972            | .1502    | .3812   |
| 973            | .0001    | .0029   |
| 974            | .0025    | .0316   |
| 975            | .0113    | .0755   |
|                |          |         |
| 976            | .0000    | .0007   |
|                |          |         |
| Totals         | 100.0000 | 100.0000 |

# UNIT OPERATING AGREEMENT

## FAIRWAY (JAMES LIME) UNIT

### HENDERSON AND ANDERSON COUNTIES, TEXAS

UNIT OPERATING AGREEMENT
FAIRWAY (JAMES LIME) UNIT
HENDERSON AND ANDERSON COUNTIES, TEXAS

TABLE OF CONTENTS

| Section | | Page |
|---|---|---|
| | Preliminary Recitals . . . . . . . . . . . . . . . . . . . . . . . . . | 1 |

ARTICLE 1
CONFIRMATION OF UNIT AGREEMENT

| Section | | Page |
|---|---|---|
| 1.1 | Confirmation of Unit Agreement . . . . . . . . . . . . . . . . . . | 1 |

ARTICLE 2
EXHIBITS

| Section | | Page |
|---|---|---|
| 2.1 | Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 |
| 2.2 | Revision of Exhibits . . . . . . . . . . . . . . . . . . . . . . . | 2 |

ARTICLE 3
SUPERVISION OF OPERATIONS BY WORKING INTEREST OWNERS

| Section | | Page |
|---|---|---|
| 3.1 | Over-all Supervision . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| 3.2 | Particular Powers and Duties . . . . . . . . . . . . . . . . . . . | 2 |

ARTICLE 4
MANNER OF EXERCISING SUPERVISION

| Section | | Page |
|---|---|---|
| 4.1 | Designation of Representatives . . . . . . . . . . . . . . . . . . | 4 |
| 4.2 | Meetings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| 4.3 | Voting Procedure After Effective Date Hereof . . . . . . . . . . . | 5 |
| 4.4 | Voting Procedure Prior to Effective Date Hereof. . . . . . . . . . | 6 |
| 4.5 | Voting Requirement as to Unit Area . . . . . . . . . . . . . . . . | 7 |

ARTICLE 5
INDIVIDUAL RIGHTS AND PRIVILEGES OF WORKING INTEREST OWNERS

| Section | | Page |
|---|---|---|
| 5.1 | Reservation of Rights. . . . . . . . . . . . . . . . . . . . . . . | 7 |
| 5.2 | Specific Rights. . . . . . . . . . . . . . . . . . . . . . . . . . | 7 |

ARTICLE 6
UNIT OPERATOR
RESIGNATION, SELECTION, POWERS AND DUTIES

| Section | | Page |
|---|---|---|
| 6.1 | Initial Unit Operator. . . . . . . . . . . . . . . . . . . . . . . | 8 |
| 6.2 | Resignation or Removal . . . . . . . . . . . . . . . . . . . . . . | 8 |
| 6.3 | Selection of Successor . . . . . . . . . . . . . . . . . . . . . . | 8 |

ARTICLE 7
AUTHORITIES AND DUTIES OF UNIT OPERATOR

| Section | | Page |
|---|---|---|
| 7.1 | Exclusive Right to Operate Unit. . . . . . . . . . . . . . . . . . | 8 |
| 7.2 | Workmanlike Conduct. . . . . . . . . . . . . . . . . . . . . . . . | 8 |
| 7.3 | Liens and Encumbrances . . . . . . . . . . . . . . . . . . . . . . | 8 |
| 7.4 | Employees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 8 |
| 7.5 | Records. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 9 |
| 7.6 | Reports to Working Interest Owners . . . . . . . . . . . . . . . . | 9 |
| 7.7 | Reports to Governmental Authorities. . . . . . . . . . . . . . . . | 9 |
| 7.8 | Engineering and Geological Information . . . . . . . . . . . . . . | 9 |
| 7.9 | Expenditures . . . . . . . . . . . . . . . . . . . . . . . . . . . | 9 |
| 7.10 | Wells Drilled by Unit Operator . . . . . . . . . . . . . . . . . . | 9 |

i

UNIT OPERATING AGREEMENT
FAIRWAY (JAMES LIME) UNIT
HENDERSON AND ANDERSON COUNTIES, TEXAS

TABLE OF CONTENTS (Cont'd)

Section                                                                   Page

ARTICLE 8
TAXES

8.1      Ad Valorem Taxes . . . . . . . . . . . . . . . . . . . . . . .      9
8.2      Direct Taxes and Assessments . . . . . . . . . . . . . . . . .     10

ARTICLE 9
INSURANCE

9.1      Insurance. . . . . . . . . . . . . . . . . . . . . . . . . . .     10

ARTICLE 10
ADJUSTMENT OF INVESTMENTS

10.1     Personal Property Taken Over . . . . . . . . . . . . . . . . .     10
10.2     Inventory and Evaluation of Personal Property. . . . . . . . .     11
10.3     Tangible Investment Adjustment . . . . . . . . . . . . . . . .     12
10.4     Intangible Well Cost Adjustment. . . . . . . . . . . . . . . .     12
10.5     Investment Adjustment Due to Enlargement of Unit Area. . . . .     13
10.6     Investment Adjustment After Recalculation of Tract Participation . 13
10.7     Phase II Investment Adjustment . . . . . . . . . . . . . . . .     14
10.8     General Facilities . . . . . . . . . . . . . . . . . . . . . .     14
10.9     Ownership of Personal Property and Facilities. . . . . . . . .     14

ARTICLE 11
DEVELOPMENT AND OPERATING COSTS

11.1     Basis of Charge to Working Interest Owners . . . . . . . . . .     14
11.2     Budgets. . . . . . . . . . . . . . . . . . . . . . . . . . . .     14
11.3     Advance Billings . . . . . . . . . . . . . . . . . . . . . . .     15
11.4     Commingling of Funds . . . . . . . . . . . . . . . . . . . . .     15
11.5     Lien of Unit Operator. . . . . . . . . . . . . . . . . . . . .     15
11.6     Foreclosure of Operator's Lien . . . . . . . . . . . . . . . .     15
11.7     Assignment of Proceeds by Defaulting Working Interest Owner. . .   18
11.8     Unpaid Costs and Expenses. . . . . . . . . . . . . . . . . . .     18
11.9     Uncommitted Royalty. . . . . . . . . . . . . . . . . . . . . .     19

ARTICLE 12
NON-UNITIZED FORMATIONS

12.1     Right to Operate . . . . . . . . . . . . . . . . . . . . . . .     20
12.2     Multiple Completions . . . . . . . . . . . . . . . . . . . . .     20

ARTICLE 13
TITLES

13.1     Warranty and Indemnity . . . . . . . . . . . . . . . . . . . .     23
13.2     Failure Because of Unit Operations . . . . . . . . . . . . . .     23

ARTICLE 14
LIABILITY, CLAIMS AND SUITS

14.1     Individual Liability . . . . . . . . . . . . . . . . . . . . .     23
14.2     Settlements. . . . . . . . . . . . . . . . . . . . . . . . . .     24

UNIT OPERATING AGREEMENT
FAIRWAY (JAMES LIME) UNIT
HENDERSON AND ANDERSON COUNTIES, TEXAS

TABLE OF CONTENTS (Cont'd)

Section                                                                                    Page

ARTICLE 15
INTERNAL REVENUE PROVISION

15.1     Internal Revenue Provision . . . . . . . . . . . . . . . . . . . .     24

ARTICLE 16
NOTICES

16.1     Notices. . . . . . . . . . . . . . . . . . . . . . . . . . . . .     25

ARTICLE 17
WITHDRAWAL OF WORKING INTEREST OWNER

17.1     Withdrawal . . . . . . . . . . . . . . . . . . . . . . . . . . .     25

ARTICLE 18
ABANDONMENT OF WELLS

18.1     Rights of Former Owners. . . . . . . . . . . . . . . . . . . . .     26
18.2     Plugging . . . . . . . . . . . . . . . . . . . . . . . . . . . .     26

ARTICLE 19
EFFECTIVE DATE AND TERM

19.1     Effective Date . . . . . . . . . . . . . . . . . . . . . . . . .     27
19.2     Term . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     27

ARTICLE 20
ABANDONMENT OF OPERATIONS

20.1     Termination. . . . . . . . . . . . . . . . . . . . . . . . . . .     27

ARTICLE 21
COUNTERPART EXECUTION

21.1     Execution by Separate Counterparts or Ratifications. . . . . . . .     28

ARTICLE 22
TAKING UNITIZED SUBSTANCES IN KIND

22.1     Taking Unitized Substances in Kind . . . . . . . . . . . . . . .     28
22.2     Failure to Take in Kind. . . . . . . . . . . . . . . . . . . . .     29
22.3     Responsibility for Royalty Settlements . . . . . . . . . . . . .     29

ARTICLE 23
SUCCESSORS AND ASSIGNS

23.1     Successors and Assigns . . . . . . . . . . . . . . . . . . . . .     29

UNIT OPERATING AGREEMENT

FAIRWAY (JAMES LIME) UNIT

Henderson and Anderson Counties, Texas


THIS AGREEMENT, entered into as of the 1st day of October, 1963, by and between the parties who execute or ratify this agreement;

W I T N E S S E T H :

WHEREAS, the parties hereto as Working Interest Owners have executed, as of the date hereof, an agreement entitled, "Unit Agreement, Fairway (James Lime) Unit, Henderson and Anderson Counties, Texas", herein referred to as "Unit Agreement", which, among other things, provides for a separate agreement to be entered into by Working Interest Owners to provide for the development and operation of the Unit Area as therein defined; and this is said separate agreement.

NOW, THEREFORE, in consideration of the mutual agreements herein set forth, it is agreed as follows:


ARTICLE 1

CONFIRMATION OF UNIT AGREEMENT

1.1  Confirmation of Unit Agreement.  The Unit Agreement is hereby confirmed and by reference made a part of this agreement.  The definitions in the Unit Agreement are adopted for all purposes of this agreement.  If there is any conflict between the Unit Agreement and this agreement, the Unit Agreement shall govern.


ARTICLE  2

EXHIBITS

2.1  Exhibits.  The following exhibits are incorporated herein by reference:

- 1 -

2.1.1  Exhibits A, B and B-1 of the Unit Agreement.

2.1.2  Exhibit C, attached, is the schedule showing the Unit Participation of each Working Interest Owner, to be effective during Phase I and Phase II.

2.1.3  Exhibit D, attached hereto, is the Accounting Procedure applicable to development and operation of the Unit Area. In the event of conflict between provisions written in the body of this agreement and Exhibit D, this agreement shall prevail.

2.1.4  Exhibit E, attached hereto, which contains insurance provisions applicable to Unit Operations.

2.2  Revision of Exhibits.  Whenever in this agreement reference is made to any of said Exhibits, such reference shall mean said Exhibit as originally attached or prepared or, if revised, the latest revision thereof.


ARTICLE 3

SUPERVISION OF OPERATIONS
BY WORKING INTEREST OWNERS

3.1  Over-all Supervision.  Working Interest Owners shall exercise over-all supervision and control of all matters pertaining to Unit Operations pursuant to this agreement and the Unit Agreement.  In the exercise of such power each Working Interest Owner shall act solely in its own behalf in the capacity of an individual owner and not on behalf of the owners as an entirety.

3.2  Particular Powers and Duties.  The matters to be passed upon and decided by Working Interest Owners shall include, but not be limited to, the following:

3.2.1  Method of Operation.  The kind, character and method of operation, including any type of pressure maintenance or secondary recovery program to be employed.

- 2 -

3.2.2  _Drilling of Wells_.  The drilling of any well within
the Unit Area either for production of Unitized Substances, for
use as an injection well, or for other unit purposes.

3.2.3  _Well Recompletion and Change of Status_.  The re-
completion, abandonment, or change of status of any well in the
Unit Area or use of any such well for injection or other unit
purposes.

3.2.4  _Expenditures_.  Making of any single expenditure in
excess of Fifteen Thousand Dollars ($15,000.00), provided that
approval by Working Interest Owners of the drilling, reworking,
drilling deeper or plugging back of any well shall include approval
of all necessary expenditures required therefor and for completing,
testing and equipping the same, including necessary flow lines,
separators and lease tankage.

3.2.5  _Disposition of Surplus Facilities_.  Selling or other-
wise disposing of any major item of surplus material or equipment,
if the current list price of new equipment, similar thereto is
Three Thousand Dollars ($3,000.00) or more.

3.2.6  _Appearance Before a Court or Regulatory Body_.  The
designating of a representative to appear before any court or
regulatory body in matters pertaining to Unit Operations; pro-
vided, however, that the authorization by Working Interest Owners
of the designation of any such representatives shall not prevent
any Working Interest Owner from appearing in person or from desig-
nating another representative in its own behalf.

3.2.7  _Audits_.  The auditing of the accounts of Unit Operator
pertaining to Unit Operations hereunder; provided that, the audits
shall

    (a)  not be conducted more than once each year
           except upon the resignation or removal of
           Unit Operator,

(b)  be made at the expense of all Working Interest
     Owners other than the Working Interest Owner
     designated as Unit Operator,

(c)  be made upon not less than thirty (30) days'
     written notice to Unit Operator, and

(d)  be conducted in accordance with Exhibit D
     (Accounting Procedure) hereto.

3.2.8  _Inventories_.  The taking of periodic inventories under
the terms of Exhibit D.

3.2.9  _Technical Services_.  Any direct charges to the joint
account for services by consultants or Unit Operator's technical
personnel not covered by the overhead charges provided by Exhibit D.

3.2.10  _Assignments to Committees_.  The appointment of com-
mittees or subcommittees necessary for the study of any problem
in connection with Unit Operations.

3.2.11  The removal of Unit Operator and the selection of a
successor.

3.2.12  The enlargement of the Unit Area.

3.2.13  The adjustment and readjustment of investments.

3.2.14  The termination of the Unit Agreement.

3.2.15  The approval of any revision of Tract Participations
of the respective Tracts included within the Unit Area upon en-
largement or reduction of the Unit Area, and the resulting re-
visions of exhibits hereto.


ARTICLE 4

MANNER OF EXERCISING SUPERVISION

4.1  _Designation of Representatives_.  Each Working Interest Owner shall
advise Unit Operator in writing the names and addresses of its representative

- 4 -

and alternate authorized to represent and bind it in respect to any matter pertaining to Unit Operations.  Such representative or alternate may be changed from time to time by written notice to Unit Operator.  Such representative or alternate shall represent only the Working Interest Owners who appoint him and shall have no authority to represent any other Working Interest Owner.

4.2  _Meetings_.  All meetings of Working Interest Owners for the purpose of considering and acting upon any matter pertaining to Unit Operations shall be called by Unit Operator upon its own motion or at the request of two or more Working Interest Owners having a total Unit Participation of not less than ten per cent (10%).  No meeting shall be called on less than fourteen (14) days' advance written notice, with agenda for the meeting attached.  The Working Interest Owners attending such meeting shall not be prevented from amending items included in the agenda or from deciding such amended item or from deciding other items presented at such meetings, provided, however, that no item included in the agenda shall be amended and no other item shall be presented at such meeting unless owners of seventy-five per cent (75%) of total Unit Participation agree thereto.  The representative of Unit Operator shall be chairman of each meeting.

4.3  _Voting Procedure after Effective Date Hereof_.  Working Interest Owners shall act upon and determine all matters coming before them after the effective date hereof as follows:

4.3.1  _Voting Interest_.  In voting on any matter each Working Interest Owner shall have a voting interest equal to its then Unit Participation, including non-committed Working Interests attributable to it pursuant to Paragraph 9.1.3 of the Unit Agreement.

4.3.2  _Vote Required - Generally_.  Unless otherwise provided herein or in the Unit Agreement, Working Interest Owners shall act upon and determine all matters coming before them by the affirmative vote of three or more Working Interest Owners

- 5 -

having a total of sixty-five per cent (65%) or more voting in-
terest, and such affirmative vote shall be binding upon all Work-
ing Interest Owners; provided, however, that if any one Working
Interest Owner at the time of voting owns more than thirty-five
per cent (35%) voting interest, the failure to vote or the nega-
tive vote of such Working Interest Owner shall not defeat a matter
being voted upon unless such Working Interest Owner is joined by
the negative vote of three or more other Working Interest Owners
having, at the time of voting, a total of five per cent (5%) or
more voting interest, if there be such other Working Interest
Owners.

4.3.3  Vote at Meeting by Nonattending Working Interest
Owners.  Any Working Interest not represented at a meeting may
vote on any item included in the agenda of such meeting by letter
or telegram addressed to the chairman of the meeting, provided
such vote is received prior to the submission of such item to
vote.  Such vote shall not be counted with respect to any item
on the agenda which is amended at the meeting.

4.3.4  Poll Votes.  Working Interest Owners may decide any
matter by vote taken by letter or telegram, provided the matter
is first submitted in writing to each Working Interest Owner and
no meeting on the matter is called, as provided in Paragraph 4.2,
within fourteen (14) days after such proposal is dispatched to
Working Interest Owners.  Unit Operator will give prompt notice
of the results of such voting to all Working Interest Owners.

4.4  Voting Procedure Prior to Effective Date Hereof.  Working Interest
Owners shall act upon and determine all matters coming before them prior to the
effective date hereof in accordance with 4.3.2, 4.3.3 or 4.3.4, provided that
voting interest shall be as follows:

4.4.1  Voting Interest.  In voting on any matter under this
Section 4.4, each Working Interest Owner shall have a voting

- 6 -

interest equal to its initial Unit Participation during Phase I as shown on initial Exhibit C for the initially proposed Unit Area, the calculation thereof being based fifty per cent (50%) upon Productive Acreage, and fifty per cent (50%) upon productive Acre Feet, as set out in the Unit Agreement.

4.5  Voting Requirement as to Unit Area.  The determination under Sections 9.1 and 17.1.1 of the Unit Agreement that the Tracts which qualify under Sections 9.1.1, 9.1.2 and 9.1.3 of the Unit Agreement are so located with respect to the Unitized Formation and to each other as to enable Working Interest Owners to carry out a reasonable program of Unit Operations, shall require an affirmative vote of Working Interest Owners owning a combined initial Unit Participation during Phase I of not less than eighty-five per cent (85%) in all Tracts that shall have qualified under Sections 9.1.1, 9.1.2 and 9.1.3 of the Unit Agreement.


ARTICLE 5

INDIVIDUAL RIGHTS AND PRIVILEGES
OF WORKING INTEREST OWNERS

5.1  Reservation of Rights.  Working Interest Owners severally reserve to themselves all their right, power, authority and privileges, including rights under Article 12 hereof, except as expressly provided in this agreement and the Unit Agreement.

5.2  Specific Rights.  Each Working Interest Owner shall have, among others, the following specific rights and privileges:

5.2.1  Access to Unit Area.  Access to the Unit Area at all reasonable times to inspect the operations hereunder and all wells and records and data pertaining thereto.

5.2.2  Reports by Request.  The right to receive from Unit Operator, upon written request, copies of all reports to any governmental agency, reports of crude oil runs and stocks, inventory reports and all other data pertaining to Unit Operations. The cost of gathering and furnishing data not ordinarily furnished by Unit Operator to all Working Interest Owners shall be charged solely to Working Interest Owners requesting the same.

- 7 -

## ARTICLE 6

### UNIT OPERATOR
### RESIGNATION, SELECTION, POWERS AND DUTIES

6.1  **Initial Unit Operator**.  Hunt Oil Company is hereby designated as Unit Operator.

6.2  **Resignation or Removal**.  Unit Operator may resign at any time.  Working Interest Owners may remove Unit Operator at any time by the affirmative vote of at least sixty-five per cent (65%) of the voting interest remaining after excluding the voting interest of Unit Operator.  A Unit Operator that resigns or is removed shall not be released from the powers, rights and duties of Unit Operator hereunder for a period of four (4) months after the resignation or discharge, unless a successor Unit Operator has taken over Unit Operations prior to the expiration of such period.

6.3  **Selection of Successor**.  In the event of the resignation or removal of a Unit Operator, a successor Unit Operator shall be selected by the Working Interest Owners, provided no Unit Operator who is removed may vote to succeed itself.

## ARTICLE 7

### AUTHORITIES AND DUTIES OF UNIT OPERATOR

7.1  **Exclusive Right to Operate Unit**.  Subject to the provisions of this agreement and to instructions from Working Interest Owners, Unit Operator shall have the exclusive right and be obligated to conduct Unit Operations.

7.2  **Workmanlike Conduct**.  Unit Operator shall conduct Unit Operations in a good and workmanlike manner as would a prudent operator under the same or similar circumstances.  Unit Operator shall freely consult with Working Interest Owners and keep them informed of all matters which Unit Operator, in the exercise of its best judgment, considers important.  Unit Operator shall not be liable to Working Interest Owners for damages, unless such damages result from its gross negligence or willful misconduct.

7.3  **Liens and Encumbrances**.  Unit Operator shall endeavor to keep the lands and leases in the Unit Area free from all liens and encumbrances occasioned by Unit Operations, except the lien of Unit Operator granted hereunder.

7.4  **Employees**.  The number of employees used by Unit Operator in conducting Unit Operations, their selection, hours of labor, and compensation

- 8 -

shall be determined by Unit Operator. Such employees shall be the employees of Unit Operator.

7.5 _Records_. Unit Operator shall keep true and correct books, accounts, and records of Unit Operations, and shall permit at all reasonable times the inspection and examination of same by any party hereto.

7.6 _Reports to Working Interest Owners_. Unit Operator shall furnish to Working Interest Owners periodic reports of Unit Operations as provided by this agreement and as may hereafter be prescribed by Working Interest Owners.

7.7 _Reports to Governmental Authorities_. Unit Operator shall make all reports to governmental authorities that it has the duty to make as Unit Operator.

7.8 _Engineering and Geological Information_. Unit Operator shall furnish to a Working Interest Owner, upon written request, a copy of the log and other engineering and geological data pertaining to wells drilled for Unit Operations.

7.9 _Expenditures_. Unit Operator is authorized to make single expenditures not in excess of $15,000.00 without prior approval of Working Interest Owners. If an emergency occurs, Unit Operator may immediately make or incur such expenditures as in its opinion are required to deal with the emergency. Unit Operator shall report to Working Interest Owners, as promptly as possible, the nature of the emergency and the action taken.

7.10 _Wells Drilled by Unit Operator_. All wells drilled by Unit Operator shall be at the usual rates prevailing in the area. Unit Operator may employ its own tools and equipment, subject to prior approval of Working Interest Owners, but the charge therefor shall not exceed the prevailing rate in the area, and the work shall be performed by Unit Operator under the same terms and conditions as are usual in the area in contracts of independent contractors doing work of a similar nature.

## ARTICLE 8
### TAXES

8.1 _Ad Valorem Taxes_. Unit Operator shall make and file all necessary ad valorem tax renditions and returns with the proper taxing authorities

covering all real and personal property of each Working Interest Owner used or held by Unit Operator in Unit Operations.  Unit Operator shall settle assessments arising therefrom; provided, however, that any Working Interest Owner shall have the right to protest, at his own expense, assessments arising therefrom.  All such ad valorem taxes shall be paid by Unit Operator and charged to the joint account; provided that, if the interest of a Working Interest Owner is subject to a separately assessed overriding royalty interest, production payment, or other interest in excess of a one-eighth (1/8) royalty, such Working Interest Owner shall be given credit for the reduction in taxes paid resulting therefrom.  Working Interest Owners of the respective Tracts will prepare and file tax returns, in accordance with established assessment procedure, for the calendar year in which the unit becomes effective, and will pay the entire tax thereon.

8.2  _Direct Taxes and Assessments_.  Each Working Interest Owner shall pay or cause to be paid all production, severance, gathering and other taxes imposed upon or in respect of the production or handling of its share of Unitized Substances.

## ARTICLE 9

### INSURANCE

9.1  _Insurance_.  Unit Operator, with respect to Unit Operations, shall carry insurance as set forth in Exhibit E.

## ARTICLE 10

### ADJUSTMENT OF INVESTMENTS

10.1  _Personal Property Taken Over_.  Upon the effective date hereof, Working Interest Owners shall deliver to Unit Operator the following:

10.1.1  _Wells_.  All wells completed in the Unitized Formation, and all wells drilled to the Unitized Formation upon which

- 10 -

operations have been suspended or which have been plugged and abandoned.

10.1.2 <u>Well Equipment</u>. As to each well taken over, all casing to the bottom of the Unitized Formation, including surface pipe and production string, the tubing and sucker rods in each such well, the wellhead connections thereon, and all other well equipment serving the Unitized Formation, or common to the Unitized Formation and other formations.

10.1.3 <u>Lease Equipment</u>. All other lease and operating equipment that is in use in the operation of such wells on effective date hereof. Lease and well equipment and other personal property within the Unit Area on the effective date hereof, and not taken over by Unit Operator as provided above, shall remain the property of the original owner thereof and shall be removed from the Unit Area or maintained in such a manner as not to interfere with Unit Operations.

10.1.4 <u>Records</u>. A copy of all production and well records that pertain to such wells.

10.2 <u>Inventory and Evaluation of Personal Property</u>. Working Interest Owners shall at Unit Expense inventory and evaluate, in accordance with the provisions of this Article and of Exhibit D, the personal property so taken over. Such inventory shall include and be limited to those items of equipment normally considered controllable by operators of oil and gas properties as indicated in "Materials Classification Manual", PASO-H-1960-607, prepared by Petroleum Accountants Society of Oklahoma, except that sucker rods and tubing normally considered non-controllable shall be included. All other non-controllable items of well and lease equipment necessary or desirable for Unit Operations, although excluded from the inventories, shall nevertheless be taken over by Unit Operator.

Such inventories shall be evaluated in accordance with Section III of Exhibit D (Accounting Procedure) hereto, provided, however, that the adjustment

- 11 -

for casing shall be limited to the production casing string only.  Surface and intermediate casing and down-hole well equipment, except tubing and sucker rods, shall not be valued for purposes of this inventory.  It is agreed that the value for adjustment of production string casing for $5\frac{1}{2}$ inch casing and over shall be $15,000.00 (being 75% of agreed price of new material).  Production string casing less than $5\frac{1}{2}$ inches shall be priced in accordance with Section III of Exhibit D, provided, however, that value for adjustment of such casing shall not exceed $15,000.00 (being 75% of agreed price of new material).

10.3  <u>Tangible Investment Adjustment</u>.  Upon approval by Working Interest Owners of such inventory and evaluation, each Working Interest Owner shall be credited with the value of its interest in all personal property taken over by Unit Operator and listed in said inventory and evaluation.

Each Working Interest Owner shall be charged with an amount equal to that obtained by multiplying the total of all amounts credited to all Working Interest Owners by such individual Working Interest Owner's Unit Participation in Phase I.  If the charge against any Working Interest Owner is greater than the amount credited to such Working Interest Owner, the resulting net charge shall be paid by such Working Interest Owner and shall in all respects be treated as an item of Unit Expense chargeable against such Working Interest Owner.  If the credit to any Working Interest Owner is greater than the amount charged against such Working Interest Owner, the resulting net credit shall be paid to such Working Interest Owner by Unit Operator out of funds received by it in settlement of the net charges described above.

10.4  <u>Intangible Well Cost Adjustment</u>.  There shall be an adjustment of intangible well costs upon the effective date hereof, as follows:

10.4.1  The well cost adjustment for Tracts with producing wells shall be determined by the following calculation for each Working Interest Owner:

(Working Interest Owner's fraction of total wells in Unit Area minus Working Interest Owner's total Phase I participation for his producing Tracts as a fraction of the total

- 12 -

Phase I participation for all producing Tracts) X (Total producing wells in Unit Area) X ($50,000.00) where a positive product indicates a credit and a negative product indicates a charge.

10.4.2  The well cost charge for Tracts without producing wells shall be determined by the following calculation for each Working Interest Owner:

(Working Interest Owner's total Phase I participation for his non-producing Tracts as a fraction of the total Phase I participation for all producing Tracts) X (Total producing wells in Unit Area) X ($80,000.00).  Total money accruing from charges on Tracts without producing wells shall be distributed to all Working Interest Owners in the Unit Area according to their Phase I participation.

10.4.3  If the charge against any Working Interest Owner is greater than the amount credited to such Working Interest Owner, the resulting net charge shall be paid by such Working Interest Owner and shall in all respects be treated as an item of Unit Expense chargeable against such Working Interest Owner.  If the credit to any Working Interest Owner is greater than the amount charged against such Working Interest Owner, the resulting net credit shall be paid to such Working Interest Owner by Unit Operator out of funds received by it in settlement of the net charges described above.

10.5  Investment Adjustment Due to Enlargement of Unit Area.  At such time the Unit Area is enlarged to include additional Tracts, there shall be an adjustment of investments on such basis as required by the terms and conditions on which such enlargement is made.

10.6  Investment Adjustment After Recalculation of Tract Participation.  After recalculation of Tract Participation factors, other than as provided in Section 10.5 hereof, there shall be an adjustment of investment between Working

- 13 -

Interest Owners on the basis of revised Unit Participation resulting from any revision of Tract Participation, such adjustment of investment to be effective as of the effective date of such recalculation.

10.7 <u>Phase II Investment Adjustment</u>. At such time as Phase II becomes effective there shall be an investment adjustment of tangible well and lease equipment on the basis of Phase II Unit Participation. Such adjustment shall in all other respects be made in the same manner and on the same basis as the original investment adjustment was made, provided that, for purposes of this adjustment, such equipment shall be depreciated from the effective date of the Unit Agreement (or from date of acquisition if acquired by the Unit at a later date) to the first day of the month in which Phase II commences, such deprecia-tion to be on the basis of five per cent (5%) per annum.

10.8 <u>General Facilities</u>. The acquisition of warehouses, warehouse stocks, lease houses, camps, facility systems, and office buildings necessary for Unit Operations shall be by negotiation by the owners thereof and Unit Operator, subject to the approval of Working Interest Owners.

10.9 <u>Ownership of Personal Property and Facilities</u>. Each Working Interest Owner, individually, shall by virtue hereof own an undivided interest, equal to its Unit Participation in the Phase I or Phase II, whichever is in effect, in all personal property and facilities taken over or otherwise acquired by Unit Operator pursuant to this agreement.


<div align="center">ARTICLE 11</div>

<div align="center">DEVELOPMENT AND OPERATING COSTS</div>

11.1 <u>Basis of Charge to Working Interest Owners</u>. Unit Operator initially shall pay all Unit Expense. Each Working Interest Owner shall reimburse Unit Operator for its share of Unit Expense. Each Working Interest Owner's share shall be the same as its Unit Participation. All charges, credits and account-ing for Unit Expense shall be in accordance with Exhibit D.

11.2 <u>Budgets</u>. Before or as soon as practical after the effective date hereof, Unit Operator shall prepare a budget of estimated Unit Expense for

<div align="center">- 14 -</div>

the remainder of the calendar year, and, on or before the first day of each
October thereafter, shall prepare such a budget for the ensuing calendar year.
A budget shall set forth the estimated Unit Expense by quarterly periods.  Budgets
shall be estimates only, and shall be adjusted or corrected by Working Interest
Owners and Unit Operator whenever an adjustment or correction is proper.  A
copy of each budget and adjusted budget shall promptly be furnished to each
Working Interest Owner.

11.3  Advance Billings.  Unit Operator shall have the right to require
Working Interest Owners to advance their respective shares of estimated Unit
Expense by submitting to Working Interest Owners, on or before the 15th day of
any month, an itemized estimate thereof for the succeeding month, with a request
for payment in advance.  Within fifteen (15) days thereafter, each Working
Interest Owner shall pay to Unit Operator its share of such estimate.  Adjust-
ments between estimated and actual Unit Expense shall be made by Unit Operator
at the close of each calendar month, and the accounts of Working Interest Owners
shall be adjusted accordingly.

11.4  Commingling of Funds.  No funds received by Unit Operator under this
agreement need be segregated or maintained by it as a separate fund, but may
be commingled with its own funds.

11.5  Lien of Unit Operator.  Each Working Interest Owner grants to Unit
Operator a lien upon its Oil and Gas Rights in each Tract, and its share of
Unitized Substances when produced (except any interest owned by a Working Interest
Owner which is a Royalty Interest as of the date such owner executes or ratifies
the Unit Agreement), and its interest in all Unit Equipment, as security for
payment of its share of Unit Expense, together with interest thereon at the
rate of six per cent (6%) per annum.  Unit Operator shall have the right to bring
suit to enforce collection of such indebtedness with or without seeking fore-
closure of the lien.

11.6  Foreclosure of Operator's Lien.  If a Working Interest Owner fails
to pay its share of Unit Expense in accordance with this agreement, and such
default continues for thirty (30) days after the Unit Operator has served
written notice upon such Working Interest Owner specifying such default and

- 15 -

demanding payment, the lien provided for above in Section 11.5 may be fixed and foreclosed in the following manner:

11.6.1  The Unit Operator may fix such lien by filing for record in the Office of the Recorder of Deeds in each county in which acreage in the Unit Area is located, an affidavit setting forth the amount due and the Unit Participation of the defaulting Working Interest Owner, a copy of such affidavit to be delivered or mailed to the defaulting Working Interest Owner at his last known address.  The lien so fixed shall be effective for a period of six (6) months from and after the date of filing of such affidavit.

11.6.2  The lien having been fixed as aforesaid, the Unit Operator may enforce the same by selling at any time during the effective period of such lien and prior to full and complete payment of amounts owed by the defaulting party, all or any part of the Oil and Gas Rights, Working Interest, Unitized Substances and Unit Equipment, owned by the defaulting Working Interest Owner, at public or private sale at such time and on such terms as Unit Operator shall designate.  In order to maintain propor-tionate uniformity of ownership, any sale hereunder of an in-terest of a defaulting party that will result in a transfer of Working Interest and thus cause a change in Unit Participation with respect to any Tract or Tracts must also include or be accompanied by sale of a like interest in Unit Equipment attributable thereto.

11.6.3  If sold at private sale, the Unit Operator shall notify such defaulting Working Interest Owner and all other Working Interest Owners of the time and place of such sale by written notice mailed or delivered to them at their last known addresses not less than ten (10) days prior to such sale.

11.6.4  If sold at public sale, same shall be to the highest bidder or bidders for cash, at the courthouse door

of one of the counties in which any part of the Unit Area is situated. Any such public sale shall be made at public auction between the hours of 10:00 A.M. and 4:00 P.M., on the first Tuesday in any month after notice of such sale has been given (a) by posting written or printed notices at three public places in each county in which any part of the Unit Area is situated, one of which notices shall be at the courthouse door of each of such counties, all of which notices shall designate the county wherein said property will be sold, all of which notices shall be posted for at least twenty-one (21) days successively next before the day of sale, and by (b) mailing to the defaulting Working Interest Owner and all other Working Interest Owners at their addresses as shown by the books of Unit Operator, a true copy of such printed notice at least twenty-one (21) days prior to the date therein stated for sale of said property.

11.6.5  Sale of a part of the property that is subject to said lien shall not exhaust the power of sale, but sales may be made from time to time until all the property shall be sold or the secured indebtedness shall be paid in full. Unit Operator or any one or more Working Interest Owners may become the purchaser at any such sale. The Unit Operator is hereby constituted irrevocably the attorney of any such defaulting Working Interest Owner for the purpose of making any such sale and for the purpose of executing such assignments, conveyances, bills of sale, division orders, transfer orders and other documents and instruments for and in the name of such defaulting Working Interest Owner as may be necessary to effectuate the provisions hereof.

11.6.6  The proceeds of any such sale shall be first applied by the Unit Operator in payment of any expenses of such sale, and then in payment of any Unit Expense owed by such defaulting Working Interest Owner, and any balance remaining shall be paid to such defaulting Working Interest Owner.

11.6.7  Any such sale shall be a perpetual bar in law
and equity against such defaulting Working Interest Owner and
any person claiming all or any part of the property sold, by,
through, from or under such defaulting Working Interest Owner.

11.7  Assignment of Proceeds by Defaulting Working Interest Owner.  In
addition to the above provisions of this Article, upon default of any Working
Interest Owner in the payment of its share of Unit Expense, the Unit Operator
shall have the right to collect from the purchaser the proceeds from the sale
of such Working Interest Owner's share of Unitized Substances until the amount
owed by such Working Interest Owner, plus interest as aforesaid, has been paid.
Each purchaser shall be entitled to rely upon Unit Operator's statement con-
cerning the amount of any default; and service on the purchaser of production
by Unit Operator of a copy of this agreement, and a statement concerning the
amount of such default shall, without further action by the defaulting Working
Interest Owner, constitute a valid assignment of such proceeds to the Unit
Operator until the amount in default plus interest thereon as aforesaid has
been paid.

11.8  Unpaid Costs and Expenses.  In the event of the neglect or failure
of any Working Interest Owner to pay its proportionate part of the costs and
expenses incurred hereunder by Unit Operator within sixty (60) days after
rendition of statements therefor by the Unit Operator, each Working Interest
Owner agrees after request by Unit Operator to pay to the Unit Operator its
proportionate part (in accordance with Exhibit C) of the unpaid costs and ex-
penses of any defaulting Working Interest Owner as follows:

11.8.1  In the event of a defaulting Working Interest Owner,
Unit Operator shall collect and receive each month from the
purchaser or purchasers the proceeds from the sale of such
defaulting Working Interest Owner's share of Unitized Sub-
stances as provided in Section 11.7.

- 18 -

11.8.2  In the event the proceeds from the sale of such
Working Interest Owner's share of Unitized Substances is in-
sufficient to reimburse Unit Operator for such defaulting
Working Interest Owner's share of the cost and expenses incurred
by Unit Operator, each Working Interest Owner agrees to pay to
Unit Operator, each month, its proportionate part of such costs
and expenses, which Unit Operator was not reimbursed for out of
the proceeds from the sale of such defaulting Working Interest
Owner's share of Unitized Substances.

11.8.3  Upon the payment to and receipt by the Unit Operator
of any past due amount owing by any such defaulting Working In-
terest Owner or in the event the proceeds from the sale of such
defaulting Working Interest Owner's share of Unitized Substances
is in excess of the amount such defaulting Working Interest Owner's
share of the cost and expenses are for such month, Unit Operator
shall reimburse the Working Interest Owners so contributing to
the Unit Operator for such defaulting Working Interest Owner's
share of the cost and expenses.  Working Interest Owners shall be
entitled to be reimbursed for the amounts they have contributed
plus any interest collected thereon by Unit Operator.

11.8.4  Any Working Interest Owner so advancing a defaulting
Working Interest Owner's share of the cost and expenses shall be
subrogated to the lien and rights appurtenant thereto herein given
Unit Operator.

11.9  Uncommitted Royalty.  Should an owner of a Royalty Interest (other
than an overriding royalty interest, production payment or other interest con-
veyed out of a working interest) in any Tract fail to become a party to the Unit
Agreement, and, as a result thereof, the actual Royalty Interest payments with
respect to such Tract are more or less than the Royalty Interest payments com-
puted on the basis of the Unitized Substances that are allocated to such Tract
under the Unit Agreement, the difference shall be borne by or inure to the

benefit of Working Interest Owners, in proportion to their respective Unit
Participations shown in Exhibit C; however, the difference to be borne by or
inure to the benefit of Working Interest Owners shall not exceed an amount com-
puted on the basis of one-eighth (1/8) of the difference between the Unitized
Substances allocated to the Tract and the Unitized Substances produced from the
Tract.  Such adjustments shall be made by charges and credits to the joint
account; but, if the interest of such Royalty Owner is an overriding royalty
interest, production payment or other interest conveyed out of a Working Interest,
the obligation to make the payment to or otherwise satisfy such Royalty Owner
shall be the sole obligation of the Working Interest Owner or Owners owning
such Tract, and if actual payments with respect thereto are more or less than
payments computed on Unitized Substances allocated to such Tract, the difference
shall be borne by or inure to the benefit of the Working Interest Owner that
has the Working Interest that is subject to such Royalty Interest.


## ARTICLE 12

### NON-UNITIZED FORMATIONS

12.1  <u>Right to Operate</u>.  Any Working Interest Owner that now has or here-
after acquires the right to drill for and produce oil, gas, or other minerals,
from other than the Unitized Formation, shall have the right to do so not-
withstanding this agreement or the Unit Agreement.  In exercising the right,
however, the Working Interest Owner shall exercise reasonable precaution to
prevent unreasonable interference with Unit Operations.  No Working Interest
Owner shall produce Unitized Substances through any well drilled or operated
by it.  If any Working Interest Owner drills any well into or through the Unitized
Formation, the Unitized Formation shall be protected in a manner satisfactory to
Working Interest Owners so that the production of Unitized Substances will not
adversely be affected.

12.2  <u>Multiple Completions</u>.  While each Working Interest Owner shall
deliver possession of all its wells completed in the Unitized Formation as

provided in Article 10, there is expressly reserved unto such Working Interest

Owner (hereafter called Other Operator) the right to use such wells for the

purpose of exploring, developing and operating, by means of multiple completion,

such other sources of supply that may overlie or underlie (hereafter referred

to as Other Formations) the Unitized Formation; provided that, such Other Operator

shall, at its sole cost, risk and expense, explore, develop and operate such

Other Formations and furnish and install equipment necessary to segregate the

production from such Other Formations from the Unitized Substances, both in

the well and on the surface in a manner approved by Unit Operator.  If there

is conflict of interest between the Unit and Other Operator with respect to

a multiply completed well, or the operation thereof, the interest of the Unit

shall prevail.

12.2.1  Workovers or Reconditioning by Other Operator.  If
it becomes necessary to workover or recondition a well by reason
of operations for production from Other Formations, or the abandon-
ment thereof, the workover or reconditioning shall be done by and
at the sole cost, risk and expense of Other Operator.  Prior to the
commencement of such work, the Other Operator shall furnish the Unit
Operator with a description of the work to be done and with notifi-
cation of the time such work is to be started.  In an emergency,
the Unit Operator shall have the authority to perform all work
necessary to protect the Unitized Formation.

12.2.2  Workovers or Reconditioning by Working Interest Owners.
If it becomes necessary to workover or recondition a well by reason
of the development, operation or  abandonment of the Unitized Forma-
tion in a multiply completed well, the workover or reconditioning
shall be done by Unit Operator under the supervision of Working
Interest Owners, and any extra expense incurred in the workover
or reconditioning resulting from or occasioned by the well  being
a multiply completed well shall be borne by Other Operator producing
from Other Formations in the well.  The term "extra expense" means

the difference between the normal charges incurred in working over or reconditioning a multiply completed well and the normal charges for doing the same work on a well which is not multiply completed.  Prior to the commencement of such work,  the Unit Operator shall furnish the Other Operator with a  description of the work to be done and an estimate of the amount of extra expense.

12.2.3  <u>Liability</u>.  Regardless of which party is performing the workover or reconditioning in a multiply completed well, except for bad faith or gross negligence, neither party (Working Interest Owners or Other Operators) shall be liable or responsible for any damage to or loss of production from the source of supply of the party not performing the workover or reconditioning, nor for damage to the property, equipment or facilities of such party used in the development and operations of a multiply completed well, unless as a result of these operations, a usable completion of the party not performing the work is lost.  In the event a completion of the party not performing the workover or reconditioning is lost, the party performing such workover shall be liable to the non-performing party for reasonable damages.  These damages shall not exceed the cost of drilling and completing a replacement well in the same formation as the lost completion. For the purposes of this Article 12 of this agreement a completion shall be considered to be "lost" when its capacity is reduced by more than seventy-five per cent (75%) of its capacity as determined by test prior to the workover or recompletion, and such reduction in capacity shall make said completion unacceptable to the party not performing the workover or recompletion.  The capacity shall be determined by testing the completion operated by the party not performing the workover or recompletion for a period of twenty-four (24) hours with the party intending to perform the workover or recompletion having the right to witness said test.

## ARTICLE 13

### TITLES

13.1  <u>Warranty and Indemnity</u>.  Each Working Interest Owner represents
and warrants that it is the owner of the respective working interests set
forth opposite its name in Exhibit C, and hereby agrees to indemnify and
hold harmless the other Working Interest Owners from any loss due to failure,
in whole or in part, of its title to any such interest, except failure of title
arising out of Unit Operations; provided that, such indemnity shall be limited
to an amount equal to the value (net after production taxes) that has been
received from the sale or receipt of Unitized Substances attributed to the
interest as to which title failed.  Each failure of title will be deemed to
be effective, insofar as this agreement is concerned, as of the first day of
the calendar month in which such failure is finally determined, and there
shall be no retroactive adjustment of Unit Expense, or retroactive allocation
of Unitized Substances or the proceeds therefrom,  as a result of title
failure.

13.2  <u>Failure Because of Unit Operations</u>.  The failure of title to any
Working Interest in any Tract by reason of Unit Operations, including non-
production from such Tract, shall not change the Unit Participation of the
Working Interest Owner whose title failed in relation to the Unit Participa-
tions of the other Working Interest Owners at the time of the title failure.


## ARTICLE 14

### LIABILITY, CLAIMS AND SUITS

14.1  <u>Individual Liability</u>.  The duties, obligations and liabilities of
Working Interest Owners shall be several and not joint or collective; nothing
contained herein shall ever be construed as creating a partnership of any kind,
joint venture, or an association or trust between or among Working Interest
Owners.

- 23 -

14.2  Settlements.  Unit Operator may settle any single damage claim or suit involving Unit Operations but not involving an expenditure in excess of Three Thousand Dollars ($3,000.00) provided the payment is in complete settlement of such claim or suit.  If the amount required for settlement exceeds the above specified amount, Working Interest Owners shall assume and take over the further handling of the claim or suit unless such authority is expressly delegated to Unit Operator.  All costs and expense of handling, settling, or otherwise discharging such claim or suit shall be an item of Unit Expense. If a claim is made against any Working Interest Owner or if any Working Interest Owner is sued on account of any matter arising from Unit Operations and over which such Working Interest Owner individually has no control because of the rights given Working Interest Owners and Unit Operator by this agreement and the Unit Agreement, the Working Interest Owner shall immediately notify the Unit Operator, and the claim or suit shall be treated as any other claim or suit involving Unit Operations.


ARTICLE 15

INTERNAL REVENUE PROVISION


15.1  Internal Revenue Provision.  Notwithstanding any provision herein that the rights and liabilities of the parties hereunder are several and not joint or collective, or that this agreement and the operations hereunder shall not constitute a partnership, if for federal income tax purposes this agreement and the operations hereunder are regarded as a partnership, then each of the parties hereto hereby elects to be excluded from the application of all of the provisions of Subchapter K, Chapter 1, Subtitle A, of the Internal Revenue Code of 1954, as permitted and authorized by Section 761 of said Code and the regulation promulgated thereunder.  Operator is hereby authorized and directed to execute on behalf of each of the parties hereto such evidence of this election as may be required by the Secretary of the Treasury of the United States or the Federal Internal Revenue Service, including specifically, but

- 24 -

not by way of limitation, all of the returns, statements, and the data required by Federal Regulations 1.761-1(a). Should there be any requirement that each party hereto further evidence this election, each party hereto agrees to execute such documents and furnish such other evidence as may be required by the Federal Internal Revenue Service or as may be necessary to evidence this election. Each party hereto further agrees not to give any notices or take any other action inconsistent with the election made hereby. If any present or future income tax laws of any state or states or any future income tax law of the United States, contain, or shall hereafter contain, provisions similar to those contained in Subchapter K, Chapter 1, Subtitle A, of the Internal Revenue Code of 1954, under which an election similar to that provided by Section 761 of said Sub-chapter K is permitted, each of the parties hereby makes such election or agrees to make such election as may be permitted by such laws. In making this election, each of the parties hereto hereby states that the income derived by him from the operations under this agreement can be adequately determined without the computation of partnership taxable income.

## ARTICLE 16

### NOTICES

16.1 <u>Notices</u>. All notices required hereunder shall be in writing and shall be deemed to have been properly served when sent by mail or telegram to the address of the representative of each Working Interest Owner as furnished to Unit Operator in accordance with Article 4 hereof.

## ARTICLE 17

### WITHDRAWAL OF WORKING INTEREST OWNER

17.1 <u>Withdrawal</u>. A Working Interest Owner may withdraw from this agree-ment by transferring, without warranty of title, either express or implied, to the other Working Interest Owners who do not desire to withdraw, all its Oil

- 25 -

and Gas Rights together with its interest in all Unit Equipment and in all wells used in Unit Operations.  Such transfer shall not relieve said Working Interest Owner from any obligation or liability incurred prior to the date of the delivery of the transfer, which delivery may be made to Unit Operator as Agent for the transferees.  The interest transferred shall be owned by the transferees in proportion to their respective Unit Participations.  After the date of delivery of the transfer, the withdrawing Working Interest Owner shall be relieved from all further obligations and liability hereunder and under the Unit Agreement, and the rights of such Working Interest Owner hereunder and under the Unit Agreement shall cease insofar as they existed by virtue of the interest transferred.

## ARTICLE 18

### ABANDONMENT OF WELLS

18.1  _Rights of Former Owners_.  If Working Interest Owners decide to abandon permanently any well within the Unit Area prior to termination of the Unit Agreement, Unit Operator shall give written notice thereof to the Working Interest Owners of the Tract on which the well is located, and they shall have the option for a period of thirty (30) days after the sending of such notice to notify Unit Operator in writing of their election to take over and own the well.  Within ten (10) days after the Working Interest Owners of the Tract have notified Unit Operator of their election to take over the well, they shall pay Unit Operator, for credit to the joint account, the amount estimated by Working Interest Owners to be the net salvage value of the casing and equipment in and on the well.  The Working Interest Owners of the Tract, by taking over the well, agree to seal off effectively and protect the Unitized Formation, and upon abandonment to plug the well in compliance with applicable laws and regulations.

18.2  _Plugging_.  If the Working Interest Owners of a Tract do not elect to take over a well located thereon which is proposed for abandonment, Unit

Operator shall plug and abandon the well in compliance with applicable laws and regulations.

## ARTICLE 19

### EFFECTIVE DATE AND TERM

19.1  Effective Date.  This agreement shall become effective on the date and at the time that the Unit Agreement becomes effective.

19.2  Term.  This agreement shall continue in effect so long as the Unit Agreement remains in effect, and thereafter until (a) all unit wells have been abandoned and plugged or turned over to Working Interest Owners in accordance with Article 20, (b) all Unit Equipment and real property acquired for the joint account have been disposed of by Unit Operator in accordance with instructions of Working Interest Owners, and (c) there has been a final accounting.

## ARTICLE 20

### ABANDONMENT OF OPERATIONS

20.1  Termination.  Upon termination of the Unit Agreement, the following will occur:

20.1.1  Oil and Gas Rights.  Oil and Gas Rights in and to each separate Tract shall no longer be affected by this agreement, and thereafter the parties shall be governed by the terms and provisions of the leases, contracts and other instruments affecting the separate Tracts.

20.1.2  Right to Operate.  Working Interest Owners of any such Tract desiring to take over and continue to operate a well or wells located thereon may do so by paying Unit Operator, for ˉ1e credit of the joint account, the net salvage of value of the casing and equipment in and on the wells taken over, as estimated by Working Interest Owners, and by agreeing to properly plug the well at such time as it is abandoned.

- 27 -

20.1.3  <u>Salvaging Wells</u>.  With respect to all wells not taken over by Working Interest Owners, Unit Operator shall at the joint expense of Working Interest Owners salvage as much of the casing and equipment in or on such wells as can economically and reasonably be salvaged and shall cause the well to be properly plugged and abandoned.

20.1.4  <u>Cost of Salvaging</u>.  Working Interest Owners shall share the cost of salvaging, liquidation or other distribution of assets and properties used in the development and operation of the Unit Area in proportion to their respective Unit Participation.


<div align="center">ARTICLE 21

COUNTERPART EXECUTION</div>

21.1  <u>Execution by Separate Counterparts or Ratifications</u>.  This agreement may be executed in any number of counterparts and each counterpart so executed shall have the same force and effect as an original instrument and as if all of the parties to the aggregate counterparts had signed the same instrument; or may be ratified by a separate instrument in writing referring to this agreement.  Each such ratification shall have the force and effect of an executed counterpart and of adopting by reference all of the provisions hereof.


<div align="center">ARTICLE 22

TAKING UNITIZED SUBSTANCES IN KIND</div>

22.1  <u>Taking Unitized Substances in Kind</u>.  The Unitized Substances allocated to each Tract shall be delivered in kind to the respective parties entitled thereto by virtue of the ownership of Oil and Gas Rights therein or by purchase from such owners.  Such parties shall have the right to construct, maintain, and operate within the Unit Area all necessary facilities for that purpose, provided that they are so constructed, maintained, and operated as not to

<div align="center">- 28 -</div>

interfere with Unit Operations.  Any extra expenditures incurred by Unit Operator
by reason of the delivery in kind of any portion of the Unitized Substances shall
be borne by the receiving party.  If a Royalty Owner has the right to take in
kind a share of Unitized Substances and fails to do so, the Working Interest
Owner whose Working Interest is subject to such Royalty Interest shall be entitled
to take in kind such share of the Unitized Substances.

22.2  <u>Failure To Take in Kind</u>.  If any party fails to take in kind or
separately dispose of its share of Unitized Substances, Unit Operator shall have
the right but not the obligation, for the time being and subject to revocation
at will by the party owning the share, to purchase for its own account or sell
to others such share at the prevailing market price; provided that, all contracts
of sale by Unit Operator of such other party's share of Unitized Substances shall
be only for such reasonable periods of time as are consistent with the minimum
needs of the industry under the circumstances, but in no event shall any such
contract be for a period in excess of one year; and Unit Operator shall not
make any sale or delivery of such other party's share of gas into interstate
commerce without giving such other party sixty (60) days' notice.  The proceeds
of the Unitized Substances so disposed of by Unit Operator shall be paid to the
party entitled thereto.  Unit Operator shall be reimbursed for expenses incurred
in such disposition of Unitized Substances.

22.3  <u>Responsibility for Royalty Settlements</u>.  Any party receiving in
kind or separately disposing of all or part of the Unitized Substances allocated
to any Tract or receiving the proceeds therefrom shall be responsible for the
payment thereof to the persons entitled thereto, and shall indemnify all parties
hereto, including Unit Operator, against any liability for all royalties, over-
riding royalties, production payments, and all other payments chargeable against
or payable out of such Unitized Substances or the proceeds therefrom.

<div align="center">

ARTICLE 23

SUCCESSORS AND ASSIGNS

</div>

23.1  <u>Successors and Assigns</u>.  The terms and provisions hereof shall be
covenants running with the lands and unitized leases covered hereby and shall
be binding upon and inure to the benefit of the respective heirs, successors
and assigns of the parties hereto.

<div align="center">

- 29 -

</div>

IN WITNESS WHEREOF, the parties hereto have executed this agreement upon the respective dates indicated opposite their respective signatures.

DATE:_____          _____

ATTEST:                                By:_____

                                       Its_____
_____
                    Secretary


DATE:_____          _____

ATTEST:                                By:_____

                                       Its_____
_____
                    Secretary


DATE:_____          _____

ATTEST:                                By:_____

                                       Its_____
_____
                    Secretary


DATE:_____          _____

ATTEST:                                By:_____

                                       Its_____
_____
                    Secretary


DATE:_____          _____

DATE:_____          _____

DATE:_____          _____

DATE:_____          _____

DATE:_____          _____

DATE:_____          _____

DATE:_____          _____

CORPORATE ACKNOWLEDGMENT

STATE OF _____ )
COUNTY OF _____ )

    BEFORE ME, the undersigned authority, on this day personally appeared _____ _____, known to me to be the person who executed the foregoing instrument as _____ of _____ _____, and acknowledged to me that he executed the same for the purposes and consideration therein expressed, as the act and deed of said corporation and in the capacity therein stated.

    GIVEN UNDER MY HAND AND SEAL OF OFFICE this _____ day of _____, 19____.

My commission expires:

_____        _____
                                Notary Public in and for

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CORPORATE ACKNOWLEDGMENT

STATE OF _____ )
COUNTY OF _____ )

    BEFORE ME, the undersigned authority, on this day personally appeared _____ _____, known to me to be the person who executed the foregoing instrument as _____ of _____ _____, and acknowledged to me that he executed the same for the purposes and consideration therein expressed, as the act and deed of said corporation and in the capacity therein stated.

    GIVEN UNDER MY HAND AND SEAL OF OFFICE this _____ day of _____, 19____.

My commission expires:

_____        _____
                                Notary Public in and for

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CORPORATE ACKNOWLEDGMENT

STATE OF _____ )
COUNTY OF _____ )

    BEFORE ME, the undersigned authority, on this day personally appeared _____ _____, known to me to be the person who executed the foregoing instrument as _____ of _____ _____, and acknowledged to me that he executed the same for the purposes and consideration therein expressed, as the act and deed of said corporation and in the capacity therein stated.

    GIVEN UNDER MY HAND AND SEAL OF OFFICE this _____ day of _____, 19____.

My commission expires:

_____        _____
                                Notary Public in and for

INDIVIDUAL ACKNOWLEDGMENT
(Man or Woman)

STATE OF _____ )
COUNTY OF _____ )

    BEFORE ME, the undersigned authority, on this day personally appeared _____
_____ known to me to be
the person(s) whose name(s) is (are) subscribed to the foregoing instrument, and acknowl-
edged to me that __he__ executed the same for the purposes and consideration therein
expressed and in the capacity therein stated.

    GIVEN UNDER MY HAND AND SEAL OF OFFICE this _____ day of _____, 19____.

My commission expires:

_____           _____
                                        Notary Public in and for


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


INDIVIDUAL ACKNOWLEDGMENT
(Man or Woman)

STATE OF _____ )
COUNTY OF _____ )

    BEFORE ME, the undersigned authority, on this day personally appeared _____
_____ known to me to be
the person(s) whose name(s) is (are) subscribed to the foregoing instrument, and acknowl-
edged to me that __he__ executed the same for the purposes and consideration therein
expressed and in the capacity therein stated.

    GIVEN UNDER MY HAND AND SEAL OF OFFICE this _____ day of _____, 19____.

My commission expires:

_____           _____
                                        Notary Public in and for


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


JOINT ACKNOWLEDGMENT
(Husband and Wife)

STATE OF _____ )
COUNTY OF _____ )

    BEFORE ME, the undersigned authority, a Notary Public in and for _____
County,_____, on this day personally appeared _____
_____ and _____, his wife,
both known to me to be the persons whose names are subscribed to the foregoing instrument,
and acknowledged to me that they each executed the same for the purposes and consideration
therein expressed, and the said wife, having been examined by me privily and apart from
her husband, and having the same fully explained to her, acknowledged such instrument to
be her act and deed and she declared that she had willingly signed the same for the pur-
poses and consideration therein expressed, and that she did not wish to retract it.

    GIVEN UNDER MY HAND AND SEAL OF OFFICE this _____ day of _____, 19____.

My commission expires:

_____           _____
                                        Notary Public in and for

| | WORKING INTEREST OWNERS | TOTAL UNIT PARTICIPATION (PERCENT) | |
|---|---|---|---|
| | | PHASE II | PHASE I |
| 5 | ABENDROTH, G. F. | .0154 | .0197 |
| 10 | AMERADA PETROLEUM CORP. | 1.8126 | 2.0458 |
| 15 | ARNOLD, G. W. | .0241 | .0238 |
| 20 | ATLANTIC REFINING CO. | 9.6887 | 8.6648 |
| 25 | BIRDSONG-GABRIEL OIL CO. | 1.0381 | .8706 |
| 26 | BORNEFELD, H. A. | .0026 | .0048 |
| 27 | BRACKEN, GLENN M. | .0029 | .0093 |
| 28 | BRACKEN, JEFF M. | .0029 | .0093 |
| 29 | BRACKEN, SAM T. | .0029 | .0094 |
| 31 | BRIGHT, SAM | .0242 | .0238 |
| 32 | BROWNE, F. C. | .0009 | .0105 |
| 33 | BUSH, JEWELL | .0064 | .0056 |
| 35 | CITIES SERVICE OIL CO. | 11.7886 | 12.2735 |
| 37 | CITIZENS 1ST NATL BK, TR ACCT 70 | .1354 | .1131 |
| 38 | CLARK, AERDIE | .0000 | .0001 |
| 39 | CLARK, G. C. | .1467 | .1373 |
| 40 | CLARK, KELLY | .0001 | .0002 |
| 41 | CLARK, L. OWEN | .0299 | .0288 |
| 42 | CLARK, MELVIN | .0000 | .0001 |
| 43 | CLAY, CARROLL | .1108 | .1168 |
| 44 | CLAY, THOMAS W. | .5364 | .5642 |
| 45 | COFFIELD, H. H. | .1916 | .1740 |
| 50 | COLONY GAS CO. | .4084 | .4768 |
| 55 | CONTINENTAL OIL CO. | 4.7149 | 4.5627 |
| 57 | COX, EDWIN L. | .0099 | .0402 |
| 60 | DANIEL, V. P. | .1974 | .1681 |
| 62 | DAY, W. S. | .0017 | .0016 |
| 65 | DENTON, F. R. | .0089 | .0089 |
| 70 | DYKES, J. A. | .0059 | .0073 |
| 75 | EDSON PETROLEUM CO. | 2.4269 | 2.2513 |
| 76 | EVANS, FRANK | .0968 | .0993 |
| 80 | FAIR, J. W. | .1442 | .1377 |
| 82 | FAIR, R. W. | .0965 | .0952 |
| 83 | FAIR, MRS. R. W. | .0241 | .0238 |
| 85 | FAIR, W. H. | .1441 | .1377 |
| 95 | FAIR OIL CO. | .7066 | .7230 |
| 101 | FEINSTEIN, ETHEL | .0750 | .0720 |
| 105 | FLOYD, GALLANT | .2855 | .3000 |
| 110 | FLOYD, G. W. | .0840 | .0840 |
| 115 | FRANKEL, DONALD | .0139 | .0287 |
| 116 | FRANKEL, FRANK | .0280 | .0573 |
| 125 | FRANKEL, GEORGE | .0558 | .1146 |
| 130 | FRANKEL, HARDING | .0140 | .0287 |
| 132 | FRANKFORT OIL CO. | .0196 | .0438 |
| 135 | FROST, JACK | 1.0421 | 1.0615 |
| 141 | GARNER, MAMIE | .0035 | .0075 |
| 145 | GARRETT, F. M. | .0135 | .0170 |
| 146 | GARRETT, F. M., & WILDER, BRUCE | .0005 | .0009 |
| 150 | GENECOV, A. S. | .0196 | .0186 |
| 152 | GERMANY, JENNIE MARGARET | .0000 | .0001 |
| 155 | GLESBY, VEDA MAE | .1236 | .1300 |
| 160 | GRAHAM, RALPH E. | .0017 | .0016 |
| 165 | GRAY, W. B. | .0099 | .0100 |
| 170 | GREENBRIER 60 LIMITED | 3.1599 | 3.3285 |
| 175 | GREENBRIER 61 LIMITED | 1.6498 | 1.7391 |
| 176 | GREENBRIER 63 LIMITED | .0826 | .2097 |
| 177 | GREUSEL, BESSIE | .0009 | .0119 |
| 178 | GUINN, J. DONALD | .0015 | .0038 |
| 180 | GULF OIL CORP. | .6873 | .8693 |
| 185 | HADDAWAY, ARTHUR | .0645 | .0595 |
| 190 | HAMILL, CLAUDE B. | .5862 | .7344 |
| 195 | HASH, N. S. | .3253 | .2799 |
| 200 | HEADWATERS OIL CO. | .2271 | .2333 |
| 201 | HEDGE, R. H., JR. | .0094 | .0238 |
| 202 | HEDRICK, W. J. | .0011 | .0015 |
| 203 | HENDERSON, MRS. RUTH | .0007 | .0029 |
| 205 | HERTZ, CHARLES | .0099 | .0105 |
| 210 | HILLIARD, E. L. | .0156 | .0197 |
| 215 | HUDNALL, PIRTLE, & LOETTERLE | .7467 | .8151 |
| 220 | HUDNALL, JAMES | 1.0511 | 1.1228 |
| 221 | HUDNALL, LOMETA | .0397 | .0479 |
| 222 | HUDNALL, OGDEN | .0396 | .0480 |
| 223 | HUGHES, KERNEL | .0000 | .0007 |
| 224 | HUGHEY, W. R., OPERATING CO. | .0094 | .0238 |
| 225 | HUMBLE OIL & REFINING CO. | 6.2883 | 5.6804 |
| 227 | HUNT, CAROLINE, TRUST ESTATE | .5514 | .5376 |
| 228 | HUNT INDUSTRIES | 3.5948 | 2.9124 |
| 229 | HUNT OIL CO. | 9.1031 | 7.9640 |
| 230 | HUNT PETROLEUM CORP. | 9.2172 | 9.7742 |
| 232 | HUNTER, A. D. | .0297 | .0316 |
| 233 | KILLINGSWORTH, S. H. | .1440 | .1388 |
| 234 | KIRBY, MARY M. | .0131 | .0292 |
| 235 | KIRBY PETROLEUM CO. | .0310 | .0296 |
| 236 | KNIGHT, WILL | .0007 | .0019 |
| 237 | KOSBERG, MRS. DOROTHY R. | .0748 | .0720 |
| 238 | LARUE, DILLARD | .0174 | .0163 |
| 239 | LARUE, I. P., ESTATE | .0220 | .0183 |
| 240 | LASATER, WILBERT | .0060 | .0153 |
| 241 | LEMON, MRS. I. M. | .0170 | .1128 |
| 242 | LEWIS, A. Y. | .0024 | .0077 |
| 243 | LEWIS, IDA BRACKEN | .0005 | .0016 |
| 250 | LINDSEY, G. A. | .0239 | .0191 |
| 260 | LOETTERLE, G. J. | .0295 | .0245 |
| 265 | LOGAN, G. L. | .0154 | .0198 |
| 267 | LOWRY, ORAN | .0031 | .0076 |
| 268 | LUPKIN, OLGA | .0232 | .0649 |
| 270 | LYONS, C. H., SR. | .0155 | .0197 |
| 275 | LYONS, C. H., JR. | .0155 | .0198 |
| 280 | LYONS, HALL M., SPECIAL | .0154 | .0197 |
| 282 | MARSCHALL, H. W., JR. | .0011 | .0014 |
| 290 | MINTON, JOHN | .0007 | .0019 |
| 295 | MURCHISON, J. W. | 1.6539 | 2.3116 |
| 296 | NORTHCUTT, MADELYN | .0035 | .0074 |
| 300 | PACE, JOHN M. | .0388 | .0704 |
| 302 | PACE 1961 PARTICIPATING GROUP | .0388 | .0705 |

EXHIBIT "C"
TABLE I
SUMMARY OF WORKING INTEREST OWNERSHIP
UNIT OPERATING AGREEMENT
FAIRWAY (JAMES LIME) UNIT
OCTOBER 1, 1963

TABLE I

PAGE NO.   2

| WORKING INTEREST OWNERS | TOTAL UNIT PARTICIPATION (PERCENT) | |
|---|---|---|
| | PHASE II | PHASE I |
| 305  PALMER, J. T. | .0155 | .0199 |
| 310  PAN AMERICAN PETROLEUM CORP. | .4659 | .6646 |
| 315  PERRYMAN, W. C. | .0343 | .0274 |
| 320  PHILLIPS, A. D. | .0475 | .0424 |
| 325  PHILLIPS, B. F. | .2120 | .3054 |
| 330  PHILLIPS, B. F., JR. | .0476 | .0426 |
| 331  PHILLIPS, JACK | .0017 | .0031 |
| —335  PHILLIPS, LEONARD W. | .5894 | .6169 |
| 340  PHILLIPS PETROLEUM CO. | 1.6080 | 1.9229 |
| 344  PICKENS, R. H. | .2211 | .1788 |
| 345  PICKENS, W. L., TRUSTEE JTP #1 | .6887 | .5654 |
| 346  PICKENS, W. L., TRUSTEE JTP #2 | .2212 | .1788 |
| 347  PICKENS, W. L., TRUSTEE JTP #3 | .1303 | .1227 |
| 348  PICKENS, W. L., TRUSTEE RHP #3 | .6888 | .5652 |
| 350  PIRTLE, G. W. | .5692 | .5651 |
| 351  PIRTLE, WILLIAM | .0719 | .0663 |
| 353  POTTER, CHARLES F. | .0030 | .0076 |
| 354  PRICE, ADDIE BRACKEN | .0005 | .0015 |
| 355  PRICE, J. PAUL | .0024 | .0078 |
| 356  PROTHRO, JOHN E. | .5452 | .5728 |
| 357  PURE OIL CO. | .0448 | .0689 |
| 360  RAUCH, GERALD | .1235 | .1291 |
| 361  RAUCH, LEONARD | .0022 | .0020 |
| 364  RAY, K. L. | .0241 | .0238 |
| 365  RAYO OIL CO. | .5688 | .4822 |
| 366  REESE, C. CURTIS | .0240 | .0192 |
| 370  RICHARDSON, MRS. GERTRUDE WINDSOR | .3439 | .3199 |
| 375  ROOSTH, ISADORE, IND. EXECUTOR | .0028 | .0027 |
| 380  ROOSTH, ISADORE, SUB. EXECUTOR | .0028 | .0027 |
| 385  ROOSTH, ISADORE, TR JR TRUST | .0028 | .0026 |
| 390  ROOSTH, H. P. | .0028 | .0027 |
| 395  ROOSTH, ISADORE | .0028 | .0027 |
| 400  ROOSTH, SOLOMON | .0028 | .0026 |
| 405  ROOSTH, WILEY | .0028 | .0027 |
| 407  ROTARY DRILLING, INC. | .0094 | .0239 |
| 410  ROTHSCHILD, SIGMOND | .0060 | .0229 |
| 412  SANDS, CAROLINE HUNT | .1568 | .2589 |
| 413  SECURE TRUSTS | .5688 | .4822 |
| 415  SHAW, D. J. | .0089 | .0084 |
| 421  SKELLY OIL CO. | .0197 | .1070 |
| —425  SKLAR, ALBERT | .5898 | .6167 |
| —426  SKLAR & PHILLIPS, INC. | .0730 | .0757 |
| 428  SMITH, BRUCE | .0196 | .0438 |
| 430  SPENCER, DIANNE T. | .0578 | .0516 |
| 431  SPRUIELL, Z. J. | .0094 | .0238 |
| 432  STORY, S. A., JR. | .0006 | .0006 |
| 445  STRONG, JACK B. | .0604 | .0581 |
| 450  SUN OIL CO. | 3.9043 | 3.6668 |
| 455  TEXACO, INC. | 5.3216 | 5.4657 |
| 460  TRANT, SAM | .1241 | .0993 |
| 465  TRICE PRODUCTION CO. | .0497 | .1046 |
| 467  WALKER, JAMES G., JR. | .4691 | .4943 |
| 470  WARD, TRAVIS | 1.6563 | 1.7384 |
| 472  WILSON, MAXIE H. | .0022 | .0086 |
| 475  WINDSOR, MRS. GERTRUDE BUCKLEY | .6875 | .6397 |
| 485  WINWELL 1961 EXPLORATION CO. | 2.6785 | 2.8279 |
| 502  WOODMAN, L. L. | .0181 | .0210 |
| 504  WYNNE, TODDIE L. | .0003 | .0039 |
| 510  UNRESOLVED | .1553 | .2117 |
| | 100.0000 | 100.0000 |

FOLLOWING ARE WORKING INTEREST OWNER NAMES ABBREVIATED IN TABLES I, II, AND III

| 37 | CITIZENS FIRST NATIONAL BANK OF TYLER, TRUSTEE FOR ACCT. NO. 70 |
|---|---|
| 302 | PACE, JOHN W., 1961 PARTICIPATING GROUP |
| 345 | PICKENS, W. L., TRUSTEE FOR JOHN THOMAS PICKENS TRUST NO. 1 |
| 346 | PICKENS, W. L., TRUSTEE FOR JOHN THOMAS PICKENS TRUST NO. 2 |
| 347 | PICKENS, W. L., TRUSTEE FOR JOHN THOMAS PICKENS TRUST NO. 3 |
| 348 | PICKENS, W. L., TRUSTEE FOR ROBERT HOUSTON PICKENS TRUST NO. 3 |
| 375 | ROOSTH, ISADORE, INDEPENDENT EXECUTOR |
| 380 | ROOSTH, ISADORE, SUBSTITUTE EXECUTOR |
| 385 | ROOSTH, ISADORE, SUCCESSOR TRUSTEE JAKE ROOSTH TRUST |

Table I
Page 2

| WORKING INTEREST OWNERS | TRACT NO. | PERCENT OWNERSHIP IN TRACT | UNIT PARTICIPATION OF EACH OWNER (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|
| 5  ABENDROTH, G. F. | | | .0154 | .0197 |
| | 856 | .69418 | .0055 | .0052 |
| | 951 | .29229 | .0003 | .0007 |
| | 952 | 2.64804 | .0096 | .0138 |
| 10  AMERADA PETROLEUM CORP. | | | 1.8126 | 2.0458 |
| | 152 | 50.00000 | .2041 | .2772 |
| | 245 | 100.00000 | .0001 | .0008 |
| | 246 | 35.87687 | .2221 | .1866 |
| | 344 | 55.10000 | .0148 | .0441 |
| | 347 | 100.00000 | .5539 | .4762 |
| | 741 | 19.51625 | .1173 | .1278 |
| | 743 | 67.29383 | .4159 | .4414 |
| | 837 | 100.00000 | .2844 | .4917 |
| 15  ARNOLD, G. W. | | | .0241 | .0238 |
| | 454 | 3.47727 | .0241 | .0238 |
| 20  ATLANTIC REFINING CO. | | | 9.6887 | 8.6648 |
| | 148 | 100.00000 | .1272 | .3020 |
| | 246 | 28.33063 | .1755 | .1473 |
| | 247 | 54.59938 | .3180 | .3292 |
| | 248 | 100.00000 | .9355 | .8143 |
| | 249 | 96.30000 | 1.0124 | .8457 |
| | 250 | 100.00000 | .9355 | .8219 |
| | 346 | 5.39568 | .0249 | .0279 |
| | 449 | 68.46600 | .6448 | .5648 |
| | 450 | 53.73984 | .6042 | .4923 |
| | 543 | 100.00000 | .7154 | .6244 |
| | 545 | 32.54709 | .4039 | .3164 |
| | 546 | 5.02557 | .0590 | .0472 |
| | 547 | 70.52120 | .7231 | .6105 |
| | 548 | 51.19438 | .6404 | .5016 |
| | 553 | 4.50282 | .0336 | .0328 |
| | 560 | 100.00000 | .1229 | .2820 |
| | 639 | 26.09023 | .1704 | .1638 |
| | 640 | 14.40062 | .0440 | .0466 |
| | 641 | 7.48687 | .0610 | .0570 |
| | 642 | 5.53186 | .0511 | .0452 |
| | 643 | 5.71813 | .0621 | .0513 |
| | 647 | 100.00000 | 1.0115 | .8598 |
| | 652 | 50.00000 | .4898 | .4220 |
| | 746 | 4.08750 | .0450 | .0370 |
| | 748 | 23.52510 | .2775 | .2218 |
| 25  BIRDSONG-GABRIEL OIL CO. | | | 1.0381 | .8706 |
| | 648 | 75.00000 | .7447 | .5960 |
| | 744 | 35.96540 | .2934 | .2746 |
| 26  BORNEFELD, H. A. | | | .0026 | .0048 |
| | 839 | 2.08330 | .0026 | .0048 |
| | 840 | 1.18653 | .0000 | .0000 |
| 27  BRACKEN, GLENN H. | | | .0029 | .0093 |
| | 557 | 20.00000 | .0029 | .0093 |
| 28  BRACKEN, JEFF M. | | | .0029 | .0093 |
| | 557 | 20.00000 | .0029 | .0093 |
| 29  BRACKEN, SAM T. | | | .0029 | .0094 |
| | 557 | 20.00000 | .0029 | .0094 |
| 31  BRIGHT, SAM | | | .0242 | .0238 |
| | 454 | 3.47728 | .0242 | .0238 |
| 32  BROWNE, F. C. | | | .0009 | .0105 |
| | 950 | 100.00000 | .0009 | .0105 |
| 33  BUSH, JEWELL | | | .0064 | .0056 |
| | 352 | .70338 | .0064 | .0056 |

EXHIBIT "C"
TABLE II
DETAIL OF WORKING INTEREST OWNERSHIP
UNIT OPERATING AGREEMENT
FAIRWAY (JAMES LIME) UNIT
OCTOBER 1, 1963

TABLE II

| WORKING INTEREST OWNERS | TRACT NO. | PERCENT OWNERSHIP IN TRACT | UNIT PARTICIPATION OF EACH OWNER (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|
| 35  CITIES SERVICE OIL CO. | | | 11.7886 | 12.2735 |
| | 154 | 71.66312 | .3132 | .4103 |
| | 155 | 100.00000 | .0088 | .0210 |
| | 156 | 14.57000 | .0063 | .0125 |
| | 251 | 9.12704 | .0975 | .0809 |
| | 252 | 100.00000 | .4738 | .5578 |
| | 253 | 55.65690 | .4236 | .3905 |
| | 254 | 100.00000 | .2643 | .4289 |
| | 255 | 100.00000 | .0004 | .0061 |
| | 256 | 100.00000 | .4810 | .5743 |
| | 345 | 100.00000 | .0127 | .0112 |
| | 346 | 89.20864 | .4114 | .4622 |
| | 348 | 100.00000 | 1.0262 | .8673 |
| | 349 | 4.61883 | .0558 | .0442 |
| | 350 | 100.00000 | 1.1072 | .9060 |
| | 351 | 100.00000 | .8773 | .7612 |
| | 356 | 2.75000 | .0000 | .0000 |
| | 357 | 5.50000 | .0066 | .0113 |
| | 452 | 5.50000 | .0545 | .0467 |
| | 453 | .77263 | .0075 | .0063 |
| | 554 | 5.50000 | .0405 | .0397 |
| | 555 | 5.70298 | .0384 | .0394 |
| | 556 | 5.70298 | .0332 | .0326 |
| | 640 | .78685 | .0024 | .0026 |
| | 642 | .18673 | .0017 | .0015 |
| | 643 | 23.94750 | .2600 | .2148 |
| | 649 | .41645 | .0048 | .0039 |
| | 651 | 1.12704 | .0130 | .0104 |
| | 654 | 5.50000 | .0351 | .0335 |
| | 655 | 5.70298 | .0413 | .0408 |
| | 656 | 1.34912 | .0074 | .0084 |
| | 658 | 1.46104 | .0058 | .0071 |
| | 659 | 5.00000 | .0129 | .0229 |
| | 660 | 5.00000 | .0027 | .0077 |
| | 661 | 3.40490 | .0052 | .0124 |
| | 662 | 5.00000 | .0001 | .0006 |
| | 663 | 5.00000 | .0000 | .0004 |
| | 742 | .76976 | .0056 | .0053 |
| | 745 | 39.31919 | .2812 | .2408 |
| | 746 | 83.50346 | .9196 | .7555 |
| | 747 | 100.00000 | .7781 | .7431 |
| | 748 | 4.07379 | .0481 | .0385 |
| | 749 | 2.75000 | .0249 | .0222 |
| | 750 | 2.75000 | .0321 | .0258 |
| | 751 | 2.75000 | .0230 | .0212 |
| | 753 | 1.84582 | .0132 | .0124 |
| | 754 | 73.47625 | .5555 | .5379 |
| | 755 | 60.67750 | .4647 | .4196 |
| | 756 | 2.13863 | .0133 | .0142 |
| | 758 | 5.00000 | .0358 | .0356 |
| | 759 | 5.00000 | .0219 | .0279 |
| | 760 | 5.00000 | .0024 | .0070 |
| | 761 | 2.23882 | .0057 | .0102 |
| | 838 | 52.75000 | .0078 | .0409 |
| | 840 | 19.03842 | .0000 | .0003 |
| | 841 | 52.75000 | .3239 | .3297 |
| | 842 | 52.75000 | .0797 | .1607 |
| | 843 | 52.75000 | .2174 | .2955 |
| | 844 | 52.75000 | .0245 | .0848 |
| | 845 | 52.75000 | .3491 | .3613 |
| | 846 | 36.07903 | .0705 | .1311 |
| | 847 | 52.75000 | .0067 | .0377 |
| | 848 | 3.36111 | .0004 | .0018 |
| | 849 | 5.50000 | .0241 | .0311 |
| | 851 | 5.50000 | .0277 | .0331 |
| | 852 | 2.75000 | .0151 | .0173 |
| | 853 | 11.78332 | .0939 | .0879 |
| | 854 | .75344 | .0042 | .0048 |
| | 856 | 4.74425 | .0379 | .0358 |
| | 857 | 5.00000 | .0388 | .0371 |
| | 858 | 5.00000 | .0345 | .0320 |
| | 859 | 2.34280 | .0166 | .0166 |
| | 860 | 5.00000 | .0267 | .0307 |
| | 861 | 2.50924 | .0175 | .0176 |
| | 863 | 87.04020 | .5171 | .5667 |
| | 864 | 57.53750 | .1002 | .2335 |
| | 951 | 4.16917 | .0049 | .0102 |
| | 952 | 4.02440 | .0145 | .0210 |
| | 956 | 1.20900 | .0045 | .0063 |
| | 957 | 1.30273 | .0060 | .0076 |
| | 958 | 31.05331 | .2207 | .2203 |
| | 961 | 91.66667 | .1940 | .4240 |
| | 962 | .52687 | .0018 | .0028 |
| 37  CITIZENS 1ST NATL BK, TR ACCT 70 | | | .1354 | .1131 |
| | 454 | .31477 | .0022 | .0022 |
| | 455 | 12.50000 | .1332 | .1109 |
| 38  CLARK, AERDIE | | | .0000 | .0001 |
| | 829 | .52083 | .0000 | .0001 |
| 39  CLARK, G. C. | | | .1467 | .1373 |
| | 744 | 17.98280 | .1467 | .1373 |
| 40  CLARK, KELLY | | | .0001 | .0002 |
| | 829 | .52083 | .0001 | .0002 |
| 41  CLARK, L. OWEN | | | .0299 | .0288 |
| | 551 | .58464 | .0047 | .0044 |
| | 552 | 3.31799 | .0252 | .0244 |

Table II
Page 2

**TABLE II**

| WORKING INTEREST OWNERS | TRACT NO. | PERCENT OWNERSHIP IN TRACT | UNIT PARTICIPATION OF EACH OWNER (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|
| 42  CLARK, MELVIN | | | .0000 | .0001 |
| | 829 | .52084 | .0000 | .0001 |
| 43  CLAY, CARROLL | | | .1108 | .1168 |
| | 349 | .45068 | .0054 | .0043 |
| | 356 | .26833 | .0000 | .0001 |
| | 357 | .53664 | .0007 | .0011 |
| | 452 | .53665 | .0053 | .0046 |
| | 453 | .07539 | .0008 | .0006 |
| | 554 | .53665 | .0039 | .0039 |
| | 555 | .84446 | .0057 | .0059 |
| | 556 | .84446 | .0050 | .0055 |
| | 640 | .07678 | .0002 | .0002 |
| | 642 | .01822 | .0002 | .0001 |
| | 649 | .04064 | .0004 | .0003 |
| | 651 | .10997 | .0012 | .0010 |
| | 654 | .53665 | .0034 | .0033 |
| | 655 | .53665 | .0038 | .0039 |
| | 656 | .11529 | .0007 | .0007 |
| | 658 | .13971 | .0006 | .0007 |
| | 659 | .52728 | .0013 | .0024 |
| | 660 | .52728 | .0003 | .0008 |
| | 661 | .56549 | .0008 | .0020 |
| | 662 | .52728 | .0000 | .0001 |
| | 663 | .52728 | .0000 | .0000 |
| | 742 | .07510 | .0005 | .0006 |
| | 745 | .34460 | .0025 | .0021 |
| | 746 | .07047 | .0008 | .0007 |
| | 748 | .39749 | .0047 | .0037 |
| | 749 | .26833 | .0024 | .0021 |
| | 750 | .26833 | .0031 | .0025 |
| | 751 | .42223 | .0035 | .0033 |
| | 753 | .18010 | .0012 | .0012 |
| | 756 | .22553 | .0014 | .0015 |
| | 758 | .81735 | .0059 | .0058 |
| | 759 | .83040 | .0037 | .0046 |
| | 760 | .52728 | .0003 | .0008 |
| | 761 | .23689 | .0006 | .0011 |
| | 838 | .26833 | .0000 | .0002 |
| | 840 | .09685 | .0000 | .0000 |
| | 841 | .26833 | .0014 | .0016 |
| | 842 | .26833 | .0004 | .0008 |
| | 843 | .26833 | .0011 | .0015 |
| | 844 | .26833 | .0001 | .0004 |
| | 845 | .42224 | .0028 | .0029 |
| | 846 | .08906 | .0002 | .0003 |
| | 847 | .26833 | .0000 | .0002 |
| | 848 | .32794 | .0000 | .0001 |
| | 849 | .53665 | .0024 | .0030 |
| | 851 | .53665 | .0027 | .0032 |
| | 852 | .26833 | .0015 | .0017 |
| | 853 | .15851 | .0013 | .0012 |
| | 854 | .07904 | .0004 | .0005 |
| | 856 | .47138 | .0038 | .0035 |
| | 857 | .78353 | .0061 | .0058 |
| | 858 | .83040 | .0057 | .0054 |
| | 859 | .24704 | .0017 | .0017 |
| | 860 | .52728 | .0028 | .0032 |
| | 861 | .29194 | .0020 | .0021 |
| | 863 | .06910 | .0004 | .0005 |
| | 951 | .36980 | .0004 | .0009 |
| | 952 | .41920 | .0016 | .0022 |
| | 956 | .17272 | .0006 | .0009 |
| | 957 | .18949 | .0008 | .0011 |
| | 958 | .00694 | .0000 | .0000 |
| | 962 | .07664 | .0003 | .0004 |

Table II
Page 3

TABLE II

PAGE NO.   4

| WORKING INTEREST OWNERS | TRACT NO. | PERCENT OWNERSHIP IN TRACT | UNIT PARTICIPATION OF EACH OWNER (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|
| 44   CLAY, THOMAS W. | | | .5364 | .5642 |
| | 349 | 2.17451 | .0263 | .0209 |
| | 356 | 1.29468 | .0000 | .0001 |
| | 357 | 2.58936 | .0031 | .0053 |
| | 452 | 2.58936 | .0256 | .0220 |
| | 453 | .36375 | .0035 | .0030 |
| | 554 | 2.58936 | .0191 | .0187 |
| | 555 | 4.07457 | .0275 | .0281 |
| | 556 | 4.07457 | .0237 | .0263 |
| | 640 | .37044 | .0012 | .0012 |
| | 642 | .08791 | .0008 | .0007 |
| | 649 | .19606 | .0023 | .0019 |
| | 651 | .53060 | .0061 | .0048 |
| | 654 | 2.58936 | .0165 | .0158 |
| | 655 | 2.58936 | .0188 | .0185 |
| | 656 | .55629 | .0030 | .0035 |
| | 658 | .67409 | .0027 | .0032 |
| | 659 | 2.54414 | .0066 | .0116 |
| | 660 | 2.54414 | .0013 | .0040 |
| | 661 | 2.72853 | .0042 | .0099 |
| | 662 | 2.54414 | .0000 | .0003 |
| | 663 | 2.54414 | .0000 | .0002 |
| | 742 | .36240 | .0027 | .0025 |
| | 745 | 1.66270 | .0119 | .0102 |
| | 746 | .34002 | .0038 | .0030 |
| | 748 | 1.91792 | .0226 | .0181 |
| | 749 | 1.29468 | .0118 | .0105 |
| | 750 | 1.29468 | .0151 | .0121 |
| | 751 | 2.03729 | .0171 | .0157 |
| | 753 | .86900 | .0062 | .0058 |
| | 756 | 1.08819 | .0068 | .0072 |
| | 758 | 3.94376 | .0282 | .0281 |
| | 759 | 4.00672 | .0175 | .0223 |
| | 760 | 2.54414 | .0012 | .0035 |
| | 761 | 1.14298 | .0029 | .0052 |
| | 838 | 1.29468 | .0002 | .0010 |
| | 840 | .46728 | .0000 | .0000 |
| | 841 | 1.29468 | .0068 | .0080 |
| | 842 | 1.29468 | .0019 | .0039 |
| | 843 | 1.29468 | .0054 | .0073 |
| | 844 | 1.29468 | .0006 | .0021 |
| | 845 | 2.03728 | .0135 | .0140 |
| | 846 | .42968 | .0008 | .0016 |
| | 847 | 1.29468 | .0002 | .0009 |
| | 848 | 1.58237 | .0002 | .0009 |
| | 849 | 2.58936 | .0114 | .0147 |
| | 851 | 2.58936 | .0131 | .0156 |
| | 852 | 1.29468 | .0071 | .0081 |
| | 853 | .76481 | .0060 | .0057 |
| | 854 | .38135 | .0021 | .0024 |
| | 856 | 2.27440 | .0181 | .0171 |
| | 857 | 3.78055 | .0293 | .0281 |
| | 858 | 4.00672 | .0277 | .0256 |
| | 859 | 1.19198 | .0085 | .0085 |
| | 860 | 2.54414 | .0135 | .0156 |
| | 861 | 1.40866 | .0098 | .0099 |
| | 863 | .33344 | .0020 | .0021 |
| | 951 | 1.78431 | .0020 | .0044 |
| | 952 | 2.02266 | .0073 | .0106 |
| | 956 | .83343 | .0031 | .0044 |
| | 957 | .91430 | .0042 | .0053 |
| | 958 | .03349 | .0003 | .0003 |
| | 962 | .36977 | .0012 | .0019 |
| 45   COFFIELD, H. H. | | | .1916 | .1740 |
| | 641 | 11.39250 | .0929 | .0868 |
| | 642 | 10.67936 | .0987 | .0872 |
| 50   COLONY GAS CO. | | | .4084 | .4768 |
| | 656 | 1.68640 | .0093 | .0105 |
| | 658 | 1.82630 | .0073 | .0089 |
| | 659 | 6.25000 | .0161 | .0286 |
| | 660 | 6.25000 | .0033 | .0096 |
| | 661 | 4.25620 | .0065 | .0154 |
| | 662 | 6.25000 | .0001 | .0008 |
| | 663 | 6.25000 | .0001 | .0005 |
| | 756 | 2.67327 | .0167 | .0177 |
| | 758 | 6.25000 | .0448 | .0445 |
| | 759 | 6.25000 | .0275 | .0349 |
| | 760 | 6.25000 | .0030 | .0088 |
| | 761 | 2.79852 | .0071 | .0128 |
| | 853 | .34960 | .0028 | .0026 |
| | 854 | .87563 | .0049 | .0055 |
| | 856 | 5.93031 | .0473 | .0447 |
| | 857 | 6.25000 | .0485 | .0463 |
| | 858 | 6.25000 | .0431 | .0401 |
| | 859 | 2.92840 | .0207 | .0207 |
| | 860 | 6.25000 | .0334 | .0383 |
| | 861 | 3.13654 | .0219 | .0220 |
| | 863 | .81913 | .0049 | .0054 |
| | 951 | 4.25186 | .0050 | .0104 |
| | 952 | 5.03050 | .0182 | .0263 |
| | 956 | 1.51137 | .0056 | .0079 |
| | 957 | 1.62842 | .0075 | .0095 |
| | 958 | .08227 | .0005 | .0006 |
| | 962 | .65859 | .0023 | .0035 |

Table II
Page 4

TABLE II                                    PAGE NO.   5

| WORKING INTEREST OWNERS | TRACT NO. | PERCENT OWNERSHIP IN TRACT | UNIT PARTICIPATION OF EACH OWNER (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|
| 55  CONTINENTAL OIL CO. | | | 4.7149 | 4.5627 |
| | 349 | 9.89449 | .1195 | .0947 |
| | 356 | 5.89107 | .0001 | .0007 |
| | 357 | 11.78216 | .0141 | .0243 |
| | 452 | 11.78216 | .1167 | .1000 |
| | 453 | 4.09851 | .0400 | .0335 |
| | 454 | 2.28704 | .0158 | .0156 |
| | 456 | 2.05264 | .0142 | .0140 |
| | 551 | 2.68652 | .0218 | .0204 |
| | 553 | 1.74914 | .0131 | .0127 |
| | 554 | 11.78215 | .0867 | .0851 |
| | 555 | 17.53391 | .1182 | .1212 |
| | 556 | 17.53391 | .1022 | .1132 |
| | 640 | 1.68558 | .0051 | .0055 |
| | 642 | .33634 | .0031 | .0028 |
| | 649 | .89215 | .0102 | .0082 |
| | 651 | 21.41393 | .2461 | .1968 |
| | 652 | 6.25000 | .0612 | .0527 |
| | 654 | 11.78215 | .0751 | .0718 |
| | 655 | 11.85134 | .0857 | .0849 |
| | 656 | 11.76150 | .0649 | .0733 |
| | 658 | 3.12702 | .0125 | .0152 |
| | 659 | 11.60911 | .0298 | .0531 |
| | 660 | 11.60911 | .0062 | .0179 |
| | 661 | 11.71649 | .0178 | .0426 |
| | 662 | 11.60911 | .0002 | .0014 |
| | 663 | 11.60911 | .0000 | .0010 |
| | 742 | 1.38657 | .0100 | .0096 |
| | 744 | 8.99140 | .0733 | .0686 |
| | 745 | 7.56561 | .0541 | .0464 |
| | 746 | 1.54713 | .0170 | .0140 |
| | 748 | 11.13267 | .1313 | .1050 |
| | 749 | 55.89108 | .5063 | .4504 |
| | 750 | 55.89108 | .4515 | .5238 |
| | 751 | 58.73235 | .4913 | .4536 |
| | 752 | 6.25000 | .0999 | .0936 |
| | 753 | 39.56936 | .2822 | .2652 |
| | 756 | 4.96549 | .0309 | .0329 |
| | 758 | 16.96418 | .1215 | .1209 |
| | 759 | 17.20510 | .0754 | .0958 |
| | 760 | 11.60911 | .0057 | .0163 |
| | 761 | 5.21269 | .0132 | .0238 |
| | 838 | 5.89108 | .0009 | .0046 |
| | 840 | 2.12619 | .0000 | .0000 |
| | 841 | 5.89107 | .0306 | .0362 |
| | 842 | 5.89107 | .0089 | .0180 |
| | 843 | 5.89107 | .0243 | .0330 |
| | 844 | 5.89107 | .0027 | .0094 |
| | 845 | 8.73235 | .0578 | .0598 |
| | 846 | 1.95512 | .0039 | .0071 |
| | 847 | 5.89107 | .0007 | .0042 |
| | 848 | 7.20012 | .0009 | .0038 |
| | 849 | 11.78215 | .0517 | .0666 |
| | 851 | 11.78215 | .0594 | .0709 |
| | 852 | 5.89107 | .0324 | .0371 |
| | 853 | 3.48186 | .0278 | .0260 |
| | 854 | 1.73984 | .0096 | .0110 |
| | 856 | 10.48116 | .0836 | .0789 |
| | 857 | 16.33973 | .1267 | .1213 |
| | 858 | 17.20511 | .1187 | .1102 |
| | 859 | 5.43913 | .0385 | .0385 |
| | 860 | 11.60911 | .0619 | .0712 |
| | 861 | 5.38965 | .0376 | .0379 |
| | 863 | 1.52152 | .0090 | .0099 |
| | 951 | 8.36423 | .0096 | .0205 |
| | 952 | 9.24806 | .0334 | .0482 |
| | 956 | 3.18877 | .0118 | .0167 |
| | 957 | 3.49817 | .0159 | .0204 |
| | 958 | .15281 | .0011 | .0010 |
| | 962 | 3.39059 | .0116 | .0178 |
| 57  COX, EDWIN L. | | | .0099 | .0402 |
| | 150 | 33.33333 | .0006 | .0064 |
| | 151 | 33.33333 | .0093 | .0338 |
| 60  DANIEL, V. P. | | | .1974 | .1681 |
| | 648 | 12.50000 | .1241 | .0994 |
| | 744 | 8.99140 | .0733 | .0687 |
| 62  DAY, W. S. | . | | .0017 | .0016 |
| | 249 | .04625 | .0005 | .0004 |
| | 346 | .06745 | .0003 | .0003 |
| | 639 | .14155 | .0009 | .0009 |
| 65  DENTON, F. R. | | | .0089 | .0089 |
| | 859 | .83590 | .0060 | .0060 |
| | 861 | .41410 | .0029 | .0029 |
| 70  DYKES, J. A. | | | .0059 | .0073 |
| | 856 | .25575 | .0021 | .0019 |
| | 951 | .10769 | .0002 | .0003 |
| | 952 | .97560 | .0036 | .0051 |

Table II
Page 5

TABLE II

| WORKING INTEREST OWNERS | TRACT NO. | PERCENT OWNERSHIP IN TRACT | UNIT PARTICIPATION OF EACH OWNER (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|
| 75   EDSON PETROLEUM CO. | | | 2.4269 | 2.2513 |
| | 453 | 9.16990 | .0893 | .0749 |
| | 454 | .31478 | .0022 | .0022 |
| | 455 | 12.50000 | .1331 | .1108 |
| | 456 | 8.21056 | .0568 | .0561 |
| | 551 | 10.74610 | .0869 | .0815 |
| | 553 | 6.99656 | .0523 | .0509 |
| | 651 | 16.13566 | .1854 | .1483 |
| | 652 | 25.00000 | .2448 | .2110 |
| | 656 | 36.50877 | .2014 | .2275 |
| | 752 | 75.00000 | 1.1989 | 1.1228 |
| | 753 | 24.65954 | .1758 | .1653 |
| 76   EVANS, FRANK | | | .0968 | .0993 |
| | 754 | .05458 | .0004 | .0004 |
| | 761 | .93165 | .0024 | .0043 |
| | 859 | 4.15210 | .0294 | .0294 |
| | 861 | 9.27557 | .0646 | .0652 |
| 80   FAIR, J. W. | | | .1442 | .1377 |
| | 453 | 2.29247 | .0224 | .0187 |
| | 454 | 13.90911 | .0966 | .0952 |
| | 551 | 2.68652 | .0217 | .0204 |
| | 553 | .47027 | .0035 | .0034 |
| 82   FAIR, R. W. | | | .0965 | .0952 |
| | 454 | 13.90911 | .0965 | .0952 |
| 83   FAIR, MRS. R. W. | | | .0241 | .0238 |
| | 454 | 3.47727 | .0241 | .0238 |
| 85   FAIR, W. H. | | | .1441 | .1377 |
| | 453 | 2.29247 | .0223 | .0187 |
| | 454 | 13.90911 | .0966 | .0952 |
| | 551 | 2.68652 | .0217 | .0204 |
| | 553 | .47027 | .0035 | .0034 |
| 95   FAIR OIL CO. | | | .7066 | .7230 |
| | 454 | 14.53866 | .1009 | .0995 |
| | 455 | 25.00000 | .2664 | .2217 |
| | 657 | 25.00000 | .0585 | .0796 |
| | 742 | 6.63267 | .0482 | .0460 |
| | 756 | 25.40613 | .1582 | .1685 |
| | 863 | .50886 | .0030 | .0033 |
| | 864 | 5.23125 | .0091 | .0213 |
| | 958 | 6.28669 | .0447 | .0446 |
| | 961 | 8.33333 | .0176 | .0385 |
| 101   FEINSTEIN, ETHEL | | | .0750 | .0720 |
| | 551 | 1.46159 | .0119 | .0111 |
| | 552 | 8.29499 | .0631 | .0609 |

Table II
Page 6

TABLE II                                                          PAGE NO.   7

| WORKING INTEREST OWNERS | TRACT NO. | PERCENT OWNERSHIP IN TRACT | UNIT PARTICIPATION OF EACH OWNER (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|
| 105  FLOYD, GALLANT | | | .2855 | .3000 |
| | 349 | 1.31217 | .0159 | .0126 |
| | 356 | .78125 | .0000 | .0001 |
| | 357 | 1.56250 | .0019 | .0032 |
| | 452 | 1.56250 | .0155 | .0133 |
| | 453 | .21950 | .0021 | .0018 |
| | 554 | 1.56250 | .0115 | .0113 |
| | 555 | 1.62020 | .0109 | .0112 |
| | 556 | 1.62020 | .0095 | .0104 |
| | 640 | .22354 | .0007 | .0004 |
| | 642 | .05301 | .0005 | .0004 |
| | 649 | .11831 | .0014 | .0011 |
| | 651 | .32018 | .0037 | .0030 |
| | 654 | 1.56250 | .0100 | .0095 |
| | 655 | 1.62020 | .0117 | .0115 |
| | 656 | .42160 | .0023 | .0027 |
| | 658 | .45660 | .0019 | .0022 |
| | 659 | 1.56250 | .0041 | .0071 |
| | 660 | 1.56250 | .0009 | .0024 |
| | 661 | 1.06410 | .0016 | .0038 |
| | 662 | 1.56250 | .0001 | .0002 |
| | 663 | 1.56250 | .0000 | .0001 |
| | 742 | .21868 | .0016 | .0015 |
| | 745 | 1.00332 | .0072 | .0061 |
| | 746 | .20518 | .0023 | .0019 |
| | 748 | 1.15733 | .0137 | .0109 |
| | 749 | .78125 | .0071 | .0063 |
| | 750 | .78125 | .0091 | .0073 |
| | 751 | .78125 | .0065 | .0061 |
| | 753 | .52438 | .0037 | .0035 |
| | 756 | .66832 | .0042 | .0044 |
| | 758 | 1.56250 | .0112 | .0111 |
| | 759 | 1.56250 | .0069 | .0087 |
| | 760 | 1.56250 | .0007 | .0022 |
| | 761 | .69963 | .0017 | .0032 |
| | 838 | .78125 | .0001 | .0006 |
| | 840 | .28197 | .0000 | .0000 |
| | 841 | .78125 | .0040 | .0047 |
| | 842 | .78125 | .0012 | .0024 |
| | 843 | .78125 | .0032 | .0043 |
| | 844 | .78125 | .0004 | .0013 |
| | 845 | .78125 | .0051 | .0054 |
| | 846 | .25928 | .0005 | .0009 |
| | 847 | .78125 | .0001 | .0006 |
| | 848 | .95486 | .0001 | .0005 |
| | 849 | 1.56250 | .0069 | .0089 |
| | 851 | 1.56250 | .0079 | .0094 |
| | 852 | .78125 | .0043 | .0049 |
| | 853 | .46301 | .0037 | .0034 |
| | 854 | .23395 | .0013 | .0014 |
| | 856 | 1.48258 | .0118 | .0112 |
| | 857 | 1.56250 | .0121 | .0116 |
| | 858 | 1.56250 | .0198 | .0100 |
| | 859 | .73210 | .0052 | .0052 |
| | 860 | 1.56250 | .0083 | .0096 |
| | 861 | .78414 | .0095 | .0055 |
| | 863 | .20481 | .0012 | .0013 |
| | 951 | 1.28105 | .0014 | .0031 |
| | 952 | 1.25760 | .0045 | .0066 |
| | 956 | .37784 | .0013 | .0020 |
| | 957 | .40711 | .0019 | .0024 |
| | 958 | .02057 | .0001 | .0002 |
| | 962 | .16465 | .0005 | .0008 |
| 110  FLOYD, G. W. | | | .0840 | .0840 |
| | 349 | .65609 | .0079 | .0062 |
| | 356 | .39063 | .0000 | .0000 |
| | 357 | .78125 | .0009 | .0016 |
| | 453 | .10975 | .0011 | .0009 |
| | 554 | .78125 | .0058 | .0056 |
| | 555 | .81010 | .0055 | .0056 |
| | 556 | .81010 | .0047 | .0053 |
| | 640 | .11177 | .0004 | .0004 |
| | 642 | .02652 | .0003 | .0002 |
| | 649 | .05915 | .0006 | .0006 |
| | 651 | .16009 | .0018 | .0014 |
| | 654 | .78125 | .0050 | .0048 |
| | 655 | .81010 | .0059 | .0058 |
| | 742 | .10935 | .0008 | .0008 |
| | 745 | .50166 | .0035 | .0031 |
| | 746 | .10259 | .0011 | .0009 |
| | 748 | .57867 | .0068 | .0054 |
| | 749 | .39063 | .0035 | .0032 |
| | 750 | .39063 | .0046 | .0037 |
| | 751 | .39062 | .0033 | .0030 |
| | 753 | .26218 | .0019 | .0018 |
| | 838 | .39062 | .0000 | .0003 |
| | 840 | .14098 | .0000 | .0001 |
| | 841 | .39063 | .0021 | .0024 |
| | 842 | .39063 | .0006 | .0012 |
| | 843 | .39063 | .0016 | .0022 |
| | 844 | .39063 | .0002 | .0006 |
| | 845 | .39063 | .0026 | .0026 |
| | 846 | .12964 | .0002 | .0005 |
| | 847 | .39063 | .0001 | .0003 |
| | 848 | .47743 | .0000 | .0002 |
| | 849 | .78125 | .0034 | .0044 |
| | 851 | .78125 | .0040 | .0047 |
| | 852 | .39063 | .0021 | .0024 |
| | 853 | .18781 | .0015 | .0014 |
| | 854 | .00752 | .0000 | .0001 |
| | 951 | .10904 | .0002 | .0003 |

Table II
Page 7

TABLE II                                        PAGE NO.   8

| WORKING INTEREST OWNERS | TRACT NO. | PERCENT OWNERSHIP IN TRACT | UNIT PARTICIPATION OF EACH OWNER (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|
| 115  FRANKEL, DONALD | | | .0139 | .0287 |
| | 459 | 12.50000 | .0006 | .0041 |
| | 561 | 8.33333 | .0000 | .0002 |
| | 657 | 3.12500 | .0073 | .0099 |
| | 661 | 3.98764 | .0060 | .0145 |
| 116  FRANKEL, FRANK | | | .0280 | .0573 |
| | 459 | 25.00000 | .0012 | .0081 |
| | 561 | 16.66667 | .0000 | .0004 |
| | 657 | 6.25000 | .0146 | .0199 |
| | 661 | 7.97527 | .0122 | .0289 |
| 125  FRANKEL, GEORGE | | | .0558 | .1146 |
| | 459 | 50.00000 | .0024 | .0162 |
| | 561 | 33.33334 | .0000 | .0007 |
| | 657 | 12.50000 | .0292 | .0398 |
| | 661 | 15.95055 | .0242 | .0579 |
| 130  FRANKEL, HARDING | | | .0140 | .0287 |
| | 459 | 12.50000 | .0006 | .0040 |
| | 561 | 8.33333 | .0000 | .0002 |
| | 657 | 3.12500 | .0073 | .0100 |
| | 661 | 3.98764 | .0061 | .0145 |
| 132  FRANKFORT OIL CO. | | | .0196 | .0438 |
| | 960 | 12.81120 | .0196 | .0438 |
| 135  FROST, JACK | | | 1.0421 | 1.0615 |
| | 755 | 39.32250 | .3011 | .2719 |
| | 853 | 33.94772 | .2705 | .2533 |
| | 854 | 85.02749 | .4705 | .5363 |
| 141  GARNER, MAMIE | | | .0035 | .0075 |
| | 951 | 3.03766 | .0035 | .0075 |
| 145  GARRETT, F. M. | | | .0135 | .0170 |
| | 452 | .78125 | .0077 | .0066 |
| | 761 | 1.94258 | .0050 | .0088 |
| | 951 | .67503 | .0008 | .0016 |
| 146  GARRETT, F. M., & WILDER, BRUCE | | | .0005 | .0009 |
| | 761 | .20000 | .0005 | .0009 |
| 150  GENECOV, A. S. | | | .0196 | .0186 |
| | 641 | 1.71531 | .0140 | .0130 |
| | 861 | .80345 | .0056 | .0056 |
| 152  GERMANY, JENNIE MARGARET | | | .0000 | .0001 |
| | 840 | 6.95410 | .0000 | .0001 |

Table II
Page 8

TABLE II                                    PAGE NO.   9

| WORKING INTEREST OWNERS | TRACT NO. | PERCENT OWNERSHIP IN TRACT | UNIT PARTICIPATION OF EACH OWNER (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|
| 155  GLESBY, VEDA MAE | | | .1236 | .1300 |
| | 349 | .57736 | .0070 | .0056 |
| | 356 | .34375 | .0000 | .0001 |
| | 357 | .68750 | .0009 | .0014 |
| | 452 | .68750 | .0068 | .0059 |
| | 453 | .09658 | .0010 | .0008 |
| | 554 | .68750 | .0050 | .0050 |
| | 555 | .71285 | .0048 | .0049 |
| | 556 | .71285 | .0041 | .0046 |
| | 640 | .09835 | .0003 | .0003 |
| | 642 | .11807 | .0010 | .0010 |
| | 649 | .05206 | .0006 | .0005 |
| | 651 | .14088 | .0016 | .0013 |
| | 654 | .68750 | .0044 | .0041 |
| | 655 | .71285 | .0052 | .0052 |
| | 656 | .16864 | .0010 | .0010 |
| | 658 | .18263 | .0007 | .0009 |
| | 659 | .62500 | .0016 | .0029 |
| | 660 | .62500 | .0003 | .0010 |
| | 661 | .42560 | .0006 | .0015 |
| | 662 | .62500 | .0000 | .0001 |
| | 663 | .62500 | .0000 | .0000 |
| | 742 | .27488 | .0020 | .0019 |
| | 745 | .44146 | .0032 | .0027 |
| | 746 | .09028 | .0010 | .0008 |
| | 748 | .50923 | .0060 | .0048 |
| | 749 | .34375 | .0031 | .0028 |
| | 750 | .34375 | .0040 | .0032 |
| | 751 | .34375 | .0029 | .0026 |
| | 753 | .23074 | .0016 | .0015 |
| | 756 | .26732 | .0017 | .0018 |
| | 758 | .62500 | .0044 | .0044 |
| | 759 | .62500 | .0027 | .0035 |
| | 760 | .62500 | .0003 | .0009 |
| | 761 | .27985 | .0007 | .0013 |
| | 838 | .34375 | .0001 | .0003 |
| | 840 | .12407 | .0000 | .0000 |
| | 841 | .34375 | .0018 | .0022 |
| | 842 | .34375 | .0005 | .0010 |
| | 843 | .34375 | .0014 | .0020 |
| | 844 | .34375 | .0001 | .0006 |
| | 845 | .34375 | .0023 | .0024 |
| | 846 | .14210 | .0003 | .0005 |
| | 847 | .34375 | .0000 | .0002 |
| | 848 | .42014 | .0001 | .0003 |
| | 849 | .68750 | .0030 | .0039 |
| | 851 | .68750 | .0034 | .0042 |
| | 852 | .34375 | .0019 | .0022 |
| | 853 | .20023 | .0016 | .0015 |
| | 854 | .09418 | .0005 | .0006 |
| | 856 | .59303 | .0048 | .0045 |
| | 857 | .62500 | .0049 | .0046 |
| | 858 | .62500 | .0043 | .0041 |
| | 859 | .29280 | .0020 | .0020 |
| | 860 | .62500 | .0033 | .0038 |
| | 861 | .31365 | .0022 | .0022 |
| | 863 | .08191 | .0005 | .0006 |
| | 951 | .52114 | .0006 | .0013 |
| | 952 | .50310 | .0018 | .0026 |
| | 956 | .15114 | .0006 | .0008 |
| | 957 | .16284 | .0008 | .0009 |
| | 958 | .00823 | .0001 | .0000 |
| | 962 | .06586 | .0002 | .0004 |
| 160  GRAHAM, RALPH E. | | | .0017 | .0016 |
| | 249 | .04625 | .0005 | .0004 |
| | 346 | .06746 | .0003 | .0003 |
| | 639 | .14155 | .0009 | .0009 |
| 165  GRAY, W. B. | | | .0099 | .0100 |
| | 859 | .94590 | .0067 | .0067 |
| | 861 | .46853 | .0032 | .0033 |

Table II
Page 9

TABLE II                                           PAGE NO.  10

| WORKING INTEREST OWNERS | TRACT NO. | PERCENT OWNERSHIP IN TRACT | UNIT PARTICIPATION OF EACH OWNER (PERCENT) | |
|---|---|---|---|---|
| | | | PHASE II | PHASE I |
| 170  GREENBRIER 60 LIMITED | | | 3.1599 | 3.3285 |
| | 349 | 14.69628 | .1775 | .1407 |
| | 356 | 8.75000 | .0000 | .0010 |
| | 357 | 17.50000 | .0210 | .0360 |
| | 452 | 17.50000 | .1733 | .1486 |
| | 453 | 2.45838 | .0239 | .0201 |
| | 554 | 17.50000 | .1288 | .1263 |
| | 555 | 17.50000 | .1179 | .1210 |
| | 556 | 17.50000 | .1020 | .1129 |
| | 640 | 2.50360 | .0076 | .0081 |
| | 649 | 1.32508 | .0152 | .0122 |
| | 651 | 3.58605 | .0412 | .0330 |
| | 654 | 17.50000 | .1116 | .1067 |
| | 655 | 1.1266 | .1266 | .1252 |
| | 656 | 4.72193 | .0260 | .0294 |
| | 658 | 5.11350 | .0204 | .0248 |
| | 659 | 17.50000 | .0450 | .0800 |
| | 660 | 17.50000 | .0094 | .0270 |
| | 661 | 11.91730 | .0181 | .0432 |
| | 662 | 17.50000 | .0003 | .0021 |
| | 663 | 17.50000 | .0001 | .0014 |
| | 745 | 11.23719 | .0804 | .0688 |
| | 746 | 2.29797 | .0253 | .0208 |
| | 748 | 12.96212 | .1529 | .1223 |
| | 749 | 8.75000 | .0793 | .0705 |
| | 750 | 8.75000 | .1020 | .0820 |
| | 751 | 8.75000 | .0731 | .0676 |
| | 753 | 5.87305 | .0419 | .0394 |
| | 756 | 7.48516 | .0466 | .0497 |
| | 758 | 17.25000 | .1254 | .1247 |
| | 759 | 17.50000 | .0768 | .0976 |
| | 760 | 17.50000 | .0085 | .0246 |
| | 761 | 7.83586 | .0198 | .0358 |
| | 838 | 8.75000 | .0013 | .0068 |
| | 840 | 3.15803 | .0000 | .0000 |
| | 841 | 8.75000 | .0454 | .0537 |
| | 842 | 8.75000 | .0132 | .0267 |
| | 843 | 8.75000 | .0361 | .0490 |
| | 844 | 8.75000 | .0041 | .0140 |
| | 845 | 8.75000 | .0579 | .0599 |
| | 846 | 2.90396 | .0057 | .0105 |
| | 847 | 8.75000 | .0011 | .0063 |
| | 848 | 10.69444 | .0013 | .0056 |
| | 849 | 17.50000 | .0768 | .0990 |
| | 851 | 17.50000 | .0883 | .1053 |
| | 852 | 8.75000 | .0481 | .0550 |
| | 853 | 5.18584 | .0413 | .0387 |
| | 854 | 2.62019 | .0145 | .0166 |
| | 856 | 16.60488 | .1324 | .1250 |
| | 857 | 17.50000 | .1357 | .1299 |
| | 858 | 17.50000 | .1207 | .1121 |
| | 859 | 8.19950 | .0581 | .0581 |
| | 860 | 17.50000 | .0933 | .1073 |
| | 861 | 8.78232 | .0612 | .0617 |
| | 863 | 2.29363 | .0137 | .0149 |
| | 951 | 14.34780 | .0165 | .0352 |
| | 952 | 14.08540 | .0510 | .0736 |
| | 956 | 4.23183 | .0156 | .0221 |
| | 957 | 4.25957 | .0208 | .0266 |
| | 958 | .23034 | .0016 | .0017 |
| | 962 | 1.84406 | .0063 | .0097 |

Table II
Page 10

TABLE II                                         PAGE NO.  11

| WORKING INTEREST OWNERS | TRACT NO. | PERCENT OWNERSHIP IN TRACT | UNIT PARTICIPATION OF EACH OWNER (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|
| 175  GREENBRIER 61 LIMITED | | | 1.6498 | 1.7391 |
| | 349 | 8.61657 | .1041 | .0825 |
| | 356 | 5.13021 | .0001 | .0006 |
| | 357 | 10.26042 | .0123 | .0211 |
| | 452 | 10.26042 | .1016 | .0871 |
| | 453 | 1.44137 | .0141 | .0118 |
| | 554 | 10.26042 | .0755 | .0741 |
| | 640 | 1.46788 | .0045 | .0047 |
| | 642 | 4.73163 | .0438 | .0386 |
| | 643 | .77625 | .0084 | .0069 |
| | 644 | 3.62930 | .0441 | .0349 |
| | 649 | .77691 | .0089 | .0072 |
| | 651 | 2.10254 | .0242 | .0193 |
| | 654 | 10.26042 | .0654 | .0625 |
| | 655 | 10.26043 | .0742 | .0735 |
| | 656 | 2.27662 | .0126 | .0142 |
| | 658 | 2.71470 | .0109 | .0131 |
| | 659 | 10.10410 | .0260 | .0462 |
| | 660 | 10.10410 | .0054 | .0156 |
| | 662 | 10.10410 | .0001 | .0013 |
| | 663 | 10.10410 | .0000 | .0009 |
| | 742 | 19.62851 | .1426 | .1362 |
| | 745 | 6.58847 | .0471 | .0404 |
| | 746 | 1.34732 | .0148 | .0122 |
| | 748 | 7.59980 | .0897 | .0716 |
| | 749 | 5.13021 | .0465 | .0413 |
| | 750 | 5.13021 | .0598 | .0480 |
| | 753 | 3.44342 | .0246 | .0231 |
| | 756 | 4.32177 | .0269 | .0286 |
| | 760 | 10.10410 | .0049 | .0142 |
| | 761 | 4.55425 | .0115 | .0207 |
| | 838 | 5.13021 | .0007 | .0040 |
| | 839 | 36.71880 | .0466 | .0843 |
| | 840 | 22.76444 | .0000 | .0003 |
| | 841 | 5.13021 | .0267 | .0315 |
| | 842 | 5.13021 | .0078 | .0156 |
| | 843 | 5.13021 | .0211 | .0287 |
| | 844 | 5.13021 | .0024 | .0083 |
| | 846 | 1.70261 | .0033 | .0062 |
| | 847 | 5.13021 | .0007 | .0037 |
| | 848 | 6.27024 | .0007 | .0033 |
| | 849 | 10.26042 | .0451 | .0580 |
| | 851 | 10.26042 | .0518 | .0618 |
| | 852 | 5.13021 | .0282 | .0323 |
| | 853 | 3.03176 | .0241 | .0226 |
| | 854 | 1.51435 | .0084 | .0095 |
| | 856 | 9.09873 | .0726 | .0685 |
| | 859 | 4.73420 | .0335 | .0335 |
| | 860 | 10.10410 | .0539 | .0620 |
| | 861 | 5.52275 | .0385 | .0388 |
| | 863 | 1.32425 | .0078 | .0086 |
| | 951 | 7.24391 | .0084 | .0177 |
| | 952 | 8.04630 | .0291 | .0420 |
| | 956 | 3.19711 | .0119 | .0168 |
| | 957 | 3.50110 | .0160 | .0204 |
| | 958 | .13300 | .0010 | .0009 |
| | 962 | 1.41598 | .0049 | .0074 |
| 176  GREENBRIER 63 LIMITED | | | .0826 | .2097 |
| | 972 | 55.00000 | .0826 | .2097 |
| 177  GREUSEL, BESSIE | | | .0009 | .0119 |
| | 974 | 37.50000 | .0009 | .0119 |
| 178  GUINN, J. DONALD | | | .0015 | .0038 |
| | 972 | 1.00000 | .0015 | .0038 |
| 180  GULF OIL CORP. | | | .6873 | .8693 |
| | 658 | 70.78080 | .2833 | .3433 |
| | 754 | 26.36000 | .1993 | .1930 |
| | 962 | 58.77500 | .2008 | .3086 |
| | 963 | 100.00000 | .0039 | .0244 |
| 185  HADDAWAY, ARTHUR | | | .0645 | .0595 |
| | 253 | 8.47515 | .0645 | .0595 |
| 190  HAMILL, CLAUDE B. | | | .5862 | .7344 |
| | 954 | 100.00000 | .5862 | .7344 |
| 195  HASH, N. S. | | | .3253 | .2799 |
| | 454 | 8.49892 | .0590 | .0582 |
| | 455 | 25.00000 | .2663 | .2217 |
| 200  HEADWATERS OIL CO. | | | .2271 | .2333 |
| | 642 | 1.76813 | .0163 | .0144 |
| | 742 | 6.63468 | .0482 | .0460 |
| | 756 | 25.46998 | .1587 | .1689 |
| | 757 | 100.00000 | .0039 | .0040 |
| 201  HEDGE, R. H., JR. | | | .0094 | .0238 |
| | 972 | 6.25000 | .0094 | .0238 |

Table II
Page 11

TABLE II

| WORKING INTEREST OWNERS | TRACT NO. | PERCENT OWNERSHIP IN TRACT | UNIT PARTICIPATION OF EACH OWNER (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|
| 202  HEDRICK, W. J. | | | .0011 | .0015 |
| | 754 | .01365 | .0001 | .0001 |
| | 761 | .23292 | .0006 | .0010 |
| | 861 | .05208 | .0004 | .0004 |
| 203  HENDERSON, MRS. RUTH | | | .0007 | .0029 |
| | 968 | 3.12500 | .0007 | .0029 |
| 205  HERTZ, CHARLES | | | .0099 | .0105 |
| | 756 | 1.58788 | .0099 | .0105 |
| 210  HILLIARD, E. L. | | | .0156 | .0197 |
| | 856 | .69418 | .0056 | .0052 |
| | 951 | .29229 | .0004 | .0007 |
| | 952 | 2.64804 | .0096 | .0138 |
| 215  HUDNALL, PIRTLE, & LOETTERLE | | | .7467 | .8151 |
| | 349 | 2.62434 | .0317 | .0251 |
| | 356 | 1.56250 | .0000 | .0002 |
| | 357 | 3.12500 | .0038 | .0064 |
| | 452 | 3.12500 | .0310 | .0266 |
| | 453 | .28809 | .0028 | .0023 |
| | 454 | 3.81172 | .0264 | .0261 |
| | 554 | 3.12500 | .0230 | .0226 |
| | 555 | 3.24031 | .0218 | .0224 |
| | 556 | 3.24031 | .0189 | .0210 |
| | 640 | .44707 | .0014 | .0015 |
| | 649 | .23662 | .0027 | .0022 |
| | 651 | .64037 | .0074 | .0059 |
| | 654 | 3.12500 | .0199 | .0191 |
| | 655 | 3.24031 | .0235 | .0232 |
| | 656 | .84320 | .0046 | .0053 |
| | 658 | .91312 | .0036 | .0044 |
| | 659 | 3.12500 | .0081 | .0143 |
| | 660 | 3.12500 | .0016 | .0049 |
| | 661 | 2.12806 | .0033 | .0078 |
| | 662 | 3.12500 | .0001 | .0003 |
| | 663 | 3.12500 | .0000 | .0002 |
| | 745 | 2.00664 | .0143 | .0123 |
| | 746 | .41035 | .0045 | .0037 |
| | 748 | 2.31466 | .0273 | .0219 |
| | 749 | 1.56250 | .0141 | .0126 |
| | 750 | 1.56250 | .0182 | .0147 |
| | 751 | 1.56250 | .0131 | .0121 |
| | 753 | 1.04876 | .0075 | .0070 |
| | 756 | 1.33664 | .0083 | .0089 |
| | 758 | 3.12500 | .0224 | .0222 |
| | 759 | 3.12500 | .0137 | .0174 |
| | 760 | 3.12500 | .0015 | .0044 |
| | 761 | 1.39926 | .0036 | .0064 |
| | 838 | 1.56250 | .0002 | .0012 |
| | 840 | .56393 | .0000 | .0001 |
| | 841 | 1.56250 | .0081 | .0096 |
| | 842 | 1.56250 | .0023 | .0047 |
| | 843 | 1.56250 | .0065 | .0088 |
| | 844 | 1.56250 | .0007 | .0025 |
| | 845 | 1.56250 | .0103 | .0107 |
| | 846 | .51856 | .0010 | .0019 |
| | 847 | 1.56250 | .0002 | .0011 |
| | 848 | 1.90972 | .0002 | .0010 |
| | 849 | 3.12500 | .0137 | .0177 |
| | 851 | 3.12500 | .0157 | .0188 |
| | 852 | 1.56250 | .0086 | .0098 |
| | 853 | .92604 | .0074 | .0069 |
| | 854 | .46789 | .0026 | .0030 |
| | 856 | 2.96516 | .0236 | .0224 |
| | 857 | 3.12500 | .0243 | .0232 |
| | 858 | 3.12500 | .0216 | .0200 |
| | 859 | 1.46412 | .0104 | .0104 |
| | 860 | 3.12500 | .0167 | .0192 |
| | 861 | 8.73794 | .0609 | .0614 |
| | 863 | .40957 | .0025 | .0027 |
| | 951 | 2.56212 | .0029 | .0063 |
| | 952 | 2.51525 | .0091 | .0131 |
| | 956 | 11.38444 | .0420 | .0596 |
| | 957 | 13.02734 | .0596 | .0760 |
| | 958 | .04113 | .0003 | .0003 |
| | 962 | 3.29296 | .0112 | .0173 |

Table II
Page 12

TABLE II

| WORKING INTEREST OWNERS | TRACT NO. | PERCENT OWNERSHIP IN TRACT | UNIT PARTICIPATION OF EACH OWNER (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|
| 220  HUDNALL, JAMES | | | 1.0511 | 1.1228 |
| | 349 | 4.19894 | .0507 | .0402 |
| | 356 | 2.50000 | .0000 | .0002 |
| | 357 | 5.00000 | .0060 | .0103 |
| | 452 | 5.00000 | .0495 | .0424 |
| | 453 | .70239 | .0068 | .0058 |
| | 554 | 5.00000 | .0368 | .0361 |
| | 555 | 7.86900 | .0531 | .0544 |
| | 556 | 7.86900 | .0459 | .0508 |
| | 640 | .71531 | .0021 | .0023 |
| | 642 | .50925 | .0047 | .0042 |
| | 649 | .37860 | .0044 | .0036 |
| | 651 | 1.02459 | .0117 | .0094 |
| | 654 | 5.00000 | .0319 | .0304 |
| | 655 | 3.93450 | .0284 | .0282 |
| | 656 | 1.34912 | .0075 | .0084 |
| | 658 | 1.46100 | .0059 | .0071 |
| | 659 | 5.00000 | .0128 | .0229 |
| | 660 | 5.00000 | .0027 | .0077 |
| | 661 | 3.40490 | .0051 | .0123 |
| | 662 | 5.00000 | .0001 | .0007 |
| | 663 | 5.00000 | .0001 | .0004 |
| | 742 | 2.09935 | .0152 | .0146 |
| | 745 | 3.21063 | .0230 | .0196 |
| | 746 | .65656 | .0073 | .0060 |
| | 748 | 3.70346 | .0437 | .0349 |
| | 749 | 2.50000 | .0227 | .0202 |
| | 750 | 2.50000 | .0291 | .0234 |
| | 751 | 2.50000 | .0209 | .0193 |
| | 753 | 1.67802 | .0119 | .0113 |
| | 756 | 2.13862 | .0133 | .0142 |
| | 758 | 5.00000 | .0358 | .0356 |
| | 759 | 5.00000 | .0219 | .0278 |
| | 760 | 5.00000 | .0024 | .0070 |
| | 761 | 2.23882 | .0056 | .0103 |
| | 838 | 2.50000 | .0004 | .0019 |
| | 840 | .90229 | .0000 | .0000 |
| | 841 | 2.50000 | .0130 | .0153 |
| | 842 | 2.50000 | .0038 | .0077 |
| | 843 | 2.50000 | .0103 | .0140 |
| | 844 | 2.50000 | .0012 | .0040 |
| | 845 | 2.50000 | .0166 | .0171 |
| | 846 | .82969 | .0017 | .0030 |
| | 847 | 2.50000 | .0003 | .0018 |
| | 848 | 3.05556 | .0004 | .0016 |
| | 849 | 5.00000 | .0219 | .0283 |
| | 851 | 5.00000 | .0252 | .0301 |
| | 852 | 2.50000 | .0137 | .0157 |
| | 853 | 1.48167 | .0118 | .0110 |
| | 854 | .74863 | .0041 | .0047 |
| | 856 | 4.74425 | .0379 | .0357 |
| | 857 | 5.00000 | .0388 | .0371 |
| | 858 | 5.00000 | .0345 | .0321 |
| | 859 | 2.34260 | .0166 | .0166 |
| | 860 | 5.00000 | .0266 | .0306 |
| | 861 | 8.73794 | .0609 | .0614 |
| | 863 | .65531 | .0038 | .0042 |
| | 951 | 4.09939 | .0048 | .0101 |
| | 952 | 4.02440 | .0145 | .0210 |
| | 956 | 5.69222 | .0211 | .0298 |
| | 957 | 6.51367 | .0298 | .0379 |
| | 958 | .06581 | .0004 | .0005 |
| | 962 | 5.26875 | .0180 | .0276 |
| 221  HUDNALL, LOMETA | | | .0397 | .0479 |
| | 655 | 1.96725 | .0143 | .0140 |
| | 956 | 2.84611 | .0105 | .0149 |
| | 957 | 3.25683 | .0149 | .0190 |
| 222  HUDNALL, OGDEN | | | .0396 | .0480 |
| | 655 | 1.96725 | .0142 | .0141 |
| | 956 | 2.84611 | .0105 | .0149 |
| | 957 | 3.25684 | .0149 | .0190 |
| 223  HUGHES, KERNEL | | | .0000 | .0007 |
| | 561 | 33.33333 | .0000 | .0007 |
| 224  HUGHEY, W. R., OPERATING CO. | | | .0094 | .0238 |
| | 972 | 6.25000 | .0094 | .0238 |

Table II
Page 13

TABLE II

| WORKING INTEREST OWNERS | TRACT NO. | PERCENT OWNERSHIP IN TRACT | UNIT PARTICIPATION OF EACH OWNER (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|
| 225  HUMBLE OIL & REFINING CO. | | | 6.2883 | 5.6804 |
| | 149 | 100.00000 | .4685 | .5142 |
| | 150 | 58.33334 | .0011 | .0113 |
| | 151 | 8.33333 | .0023 | .0084 |
| | 154 | 28.33688 | .1239 | .1623 |
| | 156 | 85.43000 | .0371 | .0733 |
| | 246 | 33.03616 | .2045 | .1718 |
| | 247 | 45.40062 | .2644 | .2737 |
| | 251 | 16.97358 | .1813 | .1503 |
| | 344 | 44.90000 | .0120 | .0359 |
| | 443 | 50.00000 | .0144 | .0241 |
| | 444 | 90.45625 | .2081 | .1738 |
| | 445 | 100.00000 | .7742 | .6995 |
| | 547 | 24.46343 | .2509 | .2118 |
| | 552 | 18.95625 | .1440 | .1391 |
| | 553 | 33.60375 | .2510 | .2445 |
| | 643 | 19.80750 | .2150 | .1777 |
| | 644 | 88.60000 | 1.0756 | .8515 |
| | 645 | 60.46875 | .6943 | .5613 |
| | 646 | 77.48125 | .9058 | .7273 |
| | 650 | 30.17300 | .3213 | .2675 |
| | 825 | 100.00000 | .0272 | .0282 |
| | 827 | .31625 | .0023 | .0023 |
| | 953 | 100.00000 | .0112 | .0458 |
| | 957 | 21.40750 | .0979 | .1248 |
| 227  HUNT, CAROLINE, TRUST ESTATE | | | .5514 | .5376 |
| | 150 | 8.33333 | .0002 | .0016 |
| | 151 | 58.33334 | .0163 | .0592 |
| | 251 | 22.83774 | .2439 | .2023 |
| | 253 | 27.39280 | .2085 | .1921 |
| | 640 | 6.09501 | .0187 | .0197 |
| | 827 | 8.70562 | .0638 | .0627 |
| 228  HUNT INDUSTRIES | | | 3.5948 | 2.9124 |
| | 349 | 16.62123 | .1935 | .1534 |
| | 446 | 100.00000 | 1.1803 | .9403 |
| | 447 | 100.00000 | 1.1072 | .9077 |
| | 448 | 18.87000 | .2134 | .1735 |
| | 449 | 23.81460 | .2243 | .1964 |
| | 546 | 57.63033 | .6761 | .5411 |
| 229  HUNT OIL CO. | | | 9.1031 | 7.9640 |
| | 147 | 100.00000 | .0001 | .0012 |
| | 249 | 2.77500 | .0291 | .0244 |
| | 251 | 51.06164 | .5453 | .4524 |
| | 346 | 4.04660 | .0187 | .0210 |
| | 353 | 81.55681 | .6808 | .6288 |
| | 354 | 32.51125 | .1296 | .1775 |
| | 355 | 100.00000 | .0897 | .1095 |
| | 356 | 50.00000 | .0003 | .0058 |
| | 443 | 50.00000 | .0144 | .0241 |
| | 449 | 1.11100 | .0105 | .0092 |
| | 450 | 46.26016 | .5201 | .4238 |
| | 453 | 41.26453 | .4022 | .3371 |
| | 541 | 100.00000 | .1760 | .2078 |
| | 542 | 26.45301 | .2041 | .1909 |
| | 544 | 100.00000 | 1.1114 | .9090 |
| | 545 | 67.45291 | .8371 | .6557 |
| | 546 | 33.26109 | .3903 | .3123 |
| | 547 | 5.01537 | .0514 | .0434 |
| | 548 | 48.80562 | .6105 | .4781 |
| | 551 | 58.88086 | .4762 | .4466 |
| | 552 | 61.13578 | .4647 | .4488 |
| | 553 | 39.35055 | .2940 | .2864 |
| | 641 | 20.07875 | .1636 | .1530 |
| | 642 | 34.22624 | .3163 | .2793 |
| | 644 | 5.28750 | .0642 | .0508 |
| | 645 | 1.00938 | .0116 | .0093 |
| | 646 | 22.51875 | .2632 | .2114 |
| | 649 | 1.22500 | .0140 | .0113 |
| | 651 | 32.27132 | .3709 | .2966 |
| | 653 | 100.00000 | .8428 | .7585 |

Table II
Page 14

TABLE II

| WORKING INTEREST OWNERS | TRACT NO. | PERCENT OWNERSHIP IN TRACT | UNIT PARTICIPATION OF EACH OWNER (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|
| 230  HUNT PETROLEUM CORP. | | | 9.2172 | 9.7742 |
| | 246 | 2.75634 | .0171 | .0143 |
| | 539 | 100.00000 | .0038 | .0050 |
| | 540 | 100.00000 | .0244 | .0767 |
| | 542 | 73.54699 | .5676 | .5307 |
| | 637 | 100.00000 | .0218 | .0320 |
| | 638 | 100.00000 | .0228 | .0280 |
| | 639 | 71.07875 | .4642 | .4462 |
| | 640 | 52.29562 | .1598 | .1693 |
| | 641 | 24.97898 | .2036 | .1902 |
| | 642 | 31.25061 | .2888 | .2551 |
| | 736 | 100.00000 | .0011 | .0027 |
| | 737 | 100.00000 | 1.6315 | 1.8061 |
| | 739 | 100.00000 | .6927 | .7005 |
| | 741 | 80.48375 | .4837 | .5268 |
| | 742 | 34.95385 | .2539 | .2425 |
| | 814 | 100.00000 | .0844 | .1936 |
| | 817 | 100.00000 | .3379 | .5076 |
| | 819 | 100.00000 | 3.5970 | 3.6131 |
| | 826 | 100.00000 | .1895 | .2087 |
| | 827 | .47938 | .0036 | .0035 |
| | 828 | 100.00000 | .0870 | .1323 |
| | 829 | 98.43750 | .0064 | .0283 |
| | 920 | 100.00000 | .0246 | .0610 |
| 232  HUNTER, A. D. | | | .0297 | .0316 |
| | 756 | 4.76365 | .0297 | .0316 |
| 233  KILLINGSWORTH, S. H. | | | .1440 | .1388 |
| | 640 | 11.28969 | .0345 | .0365 |
| | 641 | 13.42852 | .1095 | .1023 |
| 234  KIRBY, MARY M. | | | .0131 | .0292 |
| | 960 | 8.54080 | .0131 | .0292 |
| 235  KIRBY PETROLEUM CO. | | | .0310 | .0296 |
| | 249 | .83250 | .0088 | .0073 |
| | 346 | 1.21417 | .0056 | .0063 |
| | 639 | 2.54792 | .0166 | .0160 |
| 236  KNIGHT, WILL | | | .0007 | .0019 |
| | 972 | .50000 | .0007 | .0019 |
| 237  KOSBERG, MRS. DOROTHY R. | | | .0748 | .0720 |
| | 551 | 1.46159 | .0118 | .0111 |
| | 552 | 8.29499 | .0630 | .0609 |
| 238  LARUE, DILLARD | | | .0174 | .0163 |
| | 641 | 2.13875 | .0174 | .0163 |
| 239  LARUE, I. P., ESTATE | | | .0220 | .0183 |
| | 444 | 9.54375 | .0220 | .0183 |
| 240  LASATER, WILBERT | | | .0060 | .0153 |
| | 972 | 4.00000 | .0060 | .0153 |
| 241  LEMON, MRS. I. M. | | | .0170 | .1128 |
| | 815 | 100.00000 | .0153 | .0965 |
| | 818 | 100.00000 | .0017 | .0163 |
| 242  LEWIS, A. Y. | | | .0024 | .0077 |
| | 557 | 16.66667 | .0024 | .0077 |
| 243  LEWIS, IDA BRACKEN | | | .0005 | .0016 |
| | 557 | 3.33333 | .0005 | .0016 |
| 250  LINDSEY, G. A. | | | .0239 | .0191 |
| | 546 | 2.04150 | .0239 | .0191 |
| 260  LOETTERLE, G. J. | | | .0295 | .0245 |
| | 650 | 2.77100 | .0295 | .0245 |

Table II
Page 15

TABLE II                                                PAGE NO.  16

| WORKING INTEREST OWNERS | TRACT NO. | PERCENT OWNERSHIP IN TRACT | UNIT PARTICIPATION OF EACH OWNER (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|
| 265  LOGAN, G. L. | | | .0154 | .0198 |
| | 856 | .69418 | .0055 | .0052 |
| | 951 | .29229 | .0003 | .0007 |
| | 952 | 2.64804 | .0096 | .0139 |
| 267  LOWRY, ORAN | | | .0031 | .0076 |
| | 972 | 2.00000 | .0031 | .0076 |
| 268  LUPKIN, OLGA | | | .0232 | .0649 |
| | 558 | 100.00000 | .0232 | .0649 |
| 270  LYONS, C. H., SR. | | | .0155 | .0197 |
| | 856 | .69418 | .0056 | .0052 |
| | 951 | .29229 | .0003 | .0007 |
| | 952 | 2.64805 | .0096 | .0138 |
| 275  LYONS, C. H., JR. | | | .0155 | .0198 |
| | 856 | .69418 | .0055 | .0053 |
| | 951 | .29229 | .0004 | .0007 |
| | 952 | 2.64805 | .0096 | .0138 |
| 280  LYONS, HALL M., SPECIAL | | | .0154 | .0197 |
| | 856 | .69418 | .0055 | .0052 |
| | 951 | .29229 | .0003 | .0007 |
| | 952 | 2.64804 | .0096 | .0138 |
| 282  MARSCHALL, H. W., JR. | | | .0011 | .0014 |
| | 754 | .01365 | .0001 | .0001 |
| | 761 | .23291 | .0006 | .0010 |
| | 861 | .05208 | .0004 | .0003 |
| 290  MINTON, JOHN | | | .0007 | .0019 |
| | 972 | .50000 | .0007 | .0019 |
| 295  MURCHISON, J. W. | | | 1.6539 | 2.3116 |
| | 454 | 8.49892 | .0590 | .0582 |
| | 455 | 25.00000 | .2663 | .2217 |
| | 846 | 47.34314 | .0925 | .1720 |
| | 850 | 100.00000 | .4042 | .5362 |
| | 852 | 50.00000 | .2748 | .3145 |
| | 853 | 7.08755 | .0565 | .0529 |
| | 862 | 100.00000 | .0811 | .1621 |
| | 951 | 4.11488 | .0048 | .0101 |
| | 959 | 47.99025 | .2609 | .3712 |
| | 964 | 100.00000 | .0466 | .2007 |
| | 965 | 100.00000 | .1013 | .1706 |
| | 967 | 55.97125 | .0059 | .0414 |
| 296  NORTHCUTT, MADELYN | | | .0035 | .0074 |
| | 951 | 3.03766 | .0035 | .0074 |
| 300  PACE, JOHN W. | | | .0388 | .0704 |
| | 839 | 30.59890 | .0388 | .0702 |
| | 840 | 17.42736 | .0000 | .0002 |
| 302  PACE 1961 PARTICIPATING GROUP | | | .0388 | .0705 |
| | 839 | 30.59900 | .0388 | .0702 |
| | 840 | 17.42736 | .0000 | .0003 |
| 305  PALMER, J. T. | | | .0155 | .0199 |
| | 856 | .69417 | .0056 | .0052 |
| | 951 | .29229 | .0003 | .0008 |
| | 952 | 2.64804 | .0096 | .0139 |
| 310  PAN AMERICAN PETROLEUM CORP. | | | .4659 | .6646 |
| | 152 | 50.00000 | .2040 | .2772 |
| | 153 | 100.00000 | .0064 | .0381 |
| | 253 | 8.47515 | .0645 | .0595 |
| | 353 | 6.53850 | .0545 | .0504 |
| | 761 | 44.34100 | .1125 | .2025 |
| | 962 | 7.02500 | .0240 | .0369 |
| 315  PERRYMAN, W. C. | | | .0343 | .0274 |
| | 643 | .38812 | .0042 | .0035 |
| | 644 | 2.48320 | .0301 | .0239 |
| 320  PHILLIPS, A. O. | | | .0475 | .0424 |
| | 453 | 2.29247 | .0223 | .0187 |
| | 551 | 2.68652 | .0217 | .0203 |
| | 553 | .47027 | .0035 | .0034 |

Table II
Page 16

TABLE II                                    PAGE NO.  17

| WORKING INTEREST OWNERS | TRACT NO. | PERCENT OWNERSHIP IN TRACT | UNIT PARTICIPATION OF EACH OWNER (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|
| 325  PHILLIPS, B. F. | | | .2120 | .3054 |
| | 453 | 4.58495 | .0447 | .0374 |
| | 551 | 5.37305 | .0435 | .0408 |
| | 553 | .94055 | .0070 | .0068 |
| | 761 | 5.28265 | .0134 | .0241 |
| | 859 | 2.64710 | .0187 | .0187 |
| | 861 | 2.02880 | .0141 | .0143 |
| | 864 | 37.23125 | .0648 | .1511 |
| | 951 | 4.99363 | .0058 | .0122 |
| 330  PHILLIPS, B. F., JR. | | | .0476 | .0426 |
| | 453 | 2.29247 | .0224 | .0188 |
| | 551 | 2.68652 | .0217 | .0204 |
| | 553 | .47027 | .0035 | .0034 |
| 331  PHILLIPS, JACK | | | .0017 | .0031 |
| | 761 | .66247 | .0017 | .0031 |
| 335  PHILLIPS, LEONARD W. | | | .5894 | .6169 |
| | 349 | 2.88677 | .0349 | .0277 |
| | 356 | 1.71875 | .0000 | .0002 |
| | 357 | 3.43750 | .0041 | .0071 |
| | 452 | 3.43750 | .0340 | .0292 |
| | 453 | .48290 | .0047 | .0039 |
| | 554 | 3.43750 | .0253 | .0248 |
| | 555 | 1.71880 | .0116 | .0119 |
| | 556 | 1.71880 | .0100 | .0111 |
| | 640 | .49178 | .0015 | .0016 |
| | 642 | .92187 | .0085 | .0075 |
| | 649 | .26028 | .0030 | .0024 |
| | 651 | .70440 | .0081 | .0065 |
| | 654 | 3.43750 | .0219 | .0210 |
| | 655 | 1.71880 | .0124 | .0123 |
| | 656 | .84320 | .0046 | .0052 |
| | 658 | .91310 | .0036 | .0045 |
| | 659 | 3.12500 | .0081 | .0143 |
| | 660 | 3.12500 | .0017 | .0048 |
| | 661 | 2.12810 | .0033 | .0077 |
| | 662 | 3.12500 | .0000 | .0003 |
| | 663 | 3.12500 | .0000 | .0003 |
| | 742 | 1.99977 | .0146 | .0139 |
| | 745 | 2.20730 | .0158 | .0135 |
| | 746 | .45139 | .0049 | .0041 |
| | 748 | 2.54612 | .0300 | .0240 |
| | 749 | 1.71875 | .0155 | .0138 |
| | 750 | 1.71875 | .0201 | .0161 |
| | 751 | 1.71875 | .0144 | .0133 |
| | 753 | 1.15365 | .0082 | .0077 |
| | 756 | 1.33663 | .0083 | .0088 |
| | 758 | 3.12500 | .0223 | .0223 |
| | 759 | 3.12500 | .0137 | .0175 |
| | 760 | 3.12500 | .0015 | .0044 |
| | 761 | 1.39926 | .0035 | .0064 |
| | 838 | 1.71875 | .0003 | .0014 |
| | 840 | .62033 | .0000 | .0000 |
| | 841 | 1.71875 | .0089 | .0106 |
| | 842 | 1.71875 | .0026 | .0052 |
| | 843 | 1.71875 | .0071 | .0096 |
| | 844 | 1.71875 | .0008 | .0028 |
| | 845 | 1.71875 | .0114 | .0118 |
| | 846 | .71050 | .0014 | .0026 |
| | 847 | 1.71875 | .0002 | .0012 |
| | 848 | 2.10069 | .0002 | .0012 |
| | 849 | 3.43750 | .0151 | .0194 |
| | 851 | 3.43750 | .0174 | .0207 |
| | 852 | 1.71875 | .0095 | .0108 |
| | 853 | 1.00117 | .0080 | .0075 |
| | 854 | .47090 | .0026 | .0030 |
| | 856 | 2.96515 | .0236 | .0224 |
| | 857 | 3.12500 | .0242 | .0231 |
| | 858 | 3.12500 | .0215 | .0200 |
| | 859 | 1.46420 | .0104 | .0104 |
| | 860 | 3.12500 | .0167 | .0192 |
| | 861 | 1.56827 | .0109 | .0110 |
| | 863 | .40956 | .0025 | .0027 |
| | 951 | 2.60572 | .0030 | .0064 |
| | 952 | 2.51520 | .0091 | .0131 |
| | 956 | .75568 | .0028 | .0040 |
| | 957 | .81421 | .0037 | .0047 |
| | 958 | .04113 | .0003 | .0003 |
| | 962 | .32930 | .0011 | .0017 |
| 340  PHILLIPS PETROLEUM CO. | | | 1.6080 | 1.9229 |
| | 354 | 67.48875 | .2689 | .3686 |
| | 859 | 43.18130 | .3058 | .3058 |
| | 861 | 21.39010 | .1491 | .1503 |
| | 956 | 53.20625 | .1966 | .2785 |
| | 957 | 26.48312 | .1211 | .1544 |
| | 958 | 61.40956 | .4364 | .4356 |
| | 959 | 32.00975 | .1228 | .1747 |
| | 967 | 15.58375 | .0016 | .0116 |
| | 969 | 100.00000 | .0056 | .0405 |
| | 973 | 100.00000 | .0001 | .0029 |
| 344  PICKENS, R. H. | | | .2211 | .1788 |
| | 645 | 19.26094 | .2211 | .1788 |

Table II
Page 17

TABLE II

| WORKING INTEREST OWNERS | TRACT NO. | PERCENT OWNERSHIP IN TRACT | UNIT PARTICIPATION OF EACH OWNER (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|
| 345  PICKENS, W. L., TRUSTEE JTP #1 | | | .6887 | .5654 |
| | 649 | 30.23590 | .3465 | .2804 |
| | 650 | 32.14250 | .3422 | .2850 |
| 346  PICKENS, W. L., TRUSTEE JTP #2 | | | .2212 | .1788 |
| | 645 | 19.26093 | .2212 | .1788 |
| 347  PICKENS, W. L., TRUSTEE JTP #3 | | | .1303 | .1227 |
| | 641 | 10.30438 | .0840 | .0784 |
| | 742 | 6.38500 | .0463 | .0443 |
| 348  PICKENS, W. L., TRUSTEE RHP #3 | | | .6888 | .5652 |
| | 649 | 30.23590 | .3466 | .2803 |
| | 650 | 32.14250 | .3422 | .2849 |
| 350  PIRTLE, G. W. | | | .5692 | .5651 |
| | 349 | 4.19894 | .0507 | .0402 |
| | 356 | 2.50000 | .0000 | .0003 |
| | 357 | 5.00000 | .0061 | .0103 |
| | 452 | 5.00000 | .0496 | .0425 |
| | 453 | .70239 | .0068 | .0058 |
| | 554 | 5.00000 | .0368 | .0361 |
| | 555 | 2.50000 | .0168 | .0172 |
| | 556 | 2.50000 | .0146 | .0161 |
| | 640 | .71531 | .0022 | .0024 |
| | 649 | .37860 | .0043 | .0035 |
| | 651 | 1.02459 | .0117 | .0094 |
| | 654 | 5.00000 | .0319 | .0304 |
| | 655 | 2.50000 | .0181 | .0179 |
| | 656 | 1.34912 | .0075 | .0084 |
| | 658 | .71220 | .0029 | .0034 |
| | 745 | 3.21063 | .0229 | .0197 |
| | 746 | .65656 | .0073 | .0059 |
| | 748 | 3.70346 | .0437 | .0349 |
| | 749 | 2.50000 | .0227 | .0202 |
| | 750 | 2.50000 | .0291 | .0235 |
| | 751 | 2.50000 | .0209 | .0193 |
| | 753 | 1.67802 | .0120 | .0113 |
| | 758 | .43270 | .0031 | .0031 |
| | 838 | 2.50000 | .0003 | .0019 |
| | 840 | .90229 | .0000 | .0000 |
| | 841 | 2.50000 | .0130 | .0153 |
| | 842 | 2.50000 | .0038 | .0076 |
| | 843 | 2.50000 | .0103 | .0140 |
| | 844 | 2.50000 | .0011 | .0040 |
| | 845 | 2.50000 | .0165 | .0171 |
| | 846 | .82969 | .0016 | .0030 |
| | 847 | 2.50000 | .0004 | .0018 |
| | 848 | 3.05556 | .0004 | .0016 |
| | 849 | 5.00000 | .0220 | .0283 |
| | 851 | 5.00000 | .0252 | .0301 |
| | 852 | 2.50000 | .0137 | .0157 |
| | 853 | 1.20199 | .0095 | .0089 |
| | 854 | .04812 | .0003 | .0003 |
| | 856 | 1.46569 | .0117 | .0110 |
| | 857 | 1.56250 | .0121 | .0116 |
| | 861 | .02812 | .0002 | .0002 |
| | 951 | 3.88402 | .0045 | .0095 |
| | 952 | .25920 | .0009 | .0014 |
| 351  PIRTLE, WILLIAM | | | .0719 | .0663 |
| | 454 | 6.09876 | .0424 | .0417 |
| | 650 | 2.77100 | .0295 | .0246 |
| 353  POTTER, CHARLES F. | | | .0030 | .0076 |
| | 972 | 2.00000 | .0030 | .0076 |
| 354  PRICE, ADDIE BRACKEN | | | .0005 | .0015 |
| | 557 | 3.33333 | .0005 | .0015 |
| 355  PRICE, J. PAUL | | | .0024 | .0078 |
| | 557 | 16.66667 | .0024 | .0078 |

Table II
Page 18

TABLE II                                    PAGE NO. 19

| WORKING INTEREST OWNERS | TRACT NO. | PERCENT OWNERSHIP IN TRACT | UNIT PARTICIPATION OF EACH OWNER (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|
| 356   PROTHRO, JOHN E. | | | .5452 | .5728 |
| | 349 | 2.17452 | .0263 | .0208 |
| | 356 | 1.29468 | .0000 | .0002 |
| | 357 | 2.58936 | .0031 | .0053 |
| | 452 | 2.58936 | .0256 | .0220 |
| | 453 | .36375 | .0035 | .0029 |
| | 554 | 2.58936 | .0191 | .0187 |
| | 555 | 4.07457 | .0275 | .0282 |
| | 556 | 4.07457 | .0237 | .0263 |
| | 640 | .37044 | .0011 | .0011 |
| | 642 | .08791 | .0008 | .0007 |
| | 649 | .19606 | .0023 | .0018 |
| | 651 | .53060 | .0061 | .0049 |
| | 654 | 2.58936 | .0165 | .0158 |
| | 655 | 2.58936 | .0187 | .0186 |
| | 656 | .55629 | .0030 | .0035 |
| | 658 | .67409 | .0027 | .0033 |
| | 659 | 2.54414 | .0065 | .0116 |
| | 660 | 2.54414 | .0013 | .0039 |
| | 661 | 2.72853 | .0041 | .0099 |
| | 662 | 2.54414 | .0001 | .0004 |
| | 663 | 2.54414 | .0000 | .0002 |
| | 742 | .36240 | .0027 | .0025 |
| | 744 | 1.09230 | .0090 | .0083 |
| | 745 | 1.66269 | .0119 | .0031 |
| | 746 | .34002 | .0037 | .0031 |
| | 748 | 1.91792 | .0226 | .0181 |
| | 749 | 1.29467 | .0117 | .0104 |
| | 750 | 1.29467 | .0151 | .0121 |
| | 751 | 2.03729 | .0171 | .0157 |
| | 753 | .86900 | .0062 | .0058 |
| | 756 | 1.08819 | .0068 | .0072 |
| | 758 | 3.94376 | .0283 | .0281 |
| | 759 | 4.00672 | .0176 | .0223 |
| | 760 | 2.54414 | .0012 | .0036 |
| | 761 | 1.14298 | .0029 | .0052 |
| | 838 | 1.29468 | .0002 | .0010 |
| | 840 | .46728 | .0000 | .0000 |
| | 841 | 1.29468 | .0068 | .0080 |
| | 842 | 1.29468 | .0019 | .0039 |
| | 843 | 1.29468 | .0053 | .0073 |
| | 844 | 1.29468 | .0006 | .0021 |
| | 845 | 2.03728 | .0135 | .0140 |
| | 846 | .42968 | .0009 | .0016 |
| | 847 | 1.29468 | .0001 | .0009 |
| | 848 | 1.58236 | .0002 | .0008 |
| | 849 | 2.58937 | .0113 | .0147 |
| | 851 | 2.58937 | .0131 | .0155 |
| | 852 | 1.29468 | .0071 | .0082 |
| | 853 | .76481 | .0061 | .0058 |
| | 854 | .38136 | .0021 | .0024 |
| | 856 | 2.27440 | .0182 | .0171 |
| | 857 | 3.78054 | .0293 | .0281 |
| | 858 | 4.00672 | .0277 | .0257 |
| | 859 | 1.19199 | .0084 | .0084 |
| | 860 | 2.54414 | .0136 | .0156 |
| | 861 | 1.40866 | .0098 | .0099 |
| | 863 | .33344 | .0020 | .0022 |
| | 951 | 1.78431 | .0021 | .0044 |
| | 952 | 2.02266 | .0073 | .0105 |
| | 956 | .83342 | .0031 | .0044 |
| | 957 | .91430 | .0042 | .0053 |
| | 958 | .03348 | .0002 | .0003 |
| | 962 | .36977 | .0013 | .0020 |
| 357   PURE OIL CO. | | | .0448 | .0689 |
| | 962 | 13.12500 | .0448 | .0689 |

Table II
Page 19

TABLE II                                                     PAGE NO.  20

| WORKING INTEREST OWNERS | TRACT NO. | PERCENT OWNERSHIP IN TRACT | UNIT PARTICIPATION OF EACH OWNER PERCENT PHASE II | PHASE I |
|---|---|---|---|---|
| 360  RAUCH, GERALD | | | .1235 | .1291 |
| | 349 | .57735 | .0069 | .0055 |
| | 356 | .34375 | .0000 | .0000 |
| | 357 | .68750 | .0008 | .0014 |
| | 452 | .68750 | .0068 | .0058 |
| | 453 | .09658 | .0010 | .0008 |
| | 554 | .68750 | .0050 | .0049 |
| | 555 | .71285 | .0048 | .0049 |
| | 556 | .71285 | .0042 | .0046 |
| | 640 | .09835 | .0003 | .0004 |
| | 642 | .11807 | .0011 | .0010 |
| | 649 | .05206 | .0006 | .0005 |
| | 651 | .14088 | .0016 | .0012 |
| | 654 | .68750 | .0044 | .0042 |
| | 655 | .71285 | .0052 | .0051 |
| | 656 | .16864 | .0010 | .0011 |
| | 658 | .18263 | .0007 | .0009 |
| | 659 | .62500 | .0016 | .0029 |
| | 660 | .62500 | .0004 | .0010 |
| | 661 | .42560 | .0007 | .0016 |
| | 662 | .62500 | .0000 | .0000 |
| | 663 | .62500 | .0000 | .0000 |
| | 742 | .27489 | .0020 | .0019 |
| | 745 | .44146 | .0032 | .0027 |
| | 746 | .09028 | .0010 | .0008 |
| | 748 | .50923 | .0060 | .0048 |
| | 749 | .34375 | .0031 | .0028 |
| | 750 | .34375 | .0040 | .0032 |
| | 751 | .34375 | .0028 | .0026 |
| | 753 | .23074 | .0016 | .0015 |
| | 756 | .26732 | .0016 | .0018 |
| | 758 | .62500 | .0045 | .0044 |
| | 759 | .62500 | .0027 | .0035 |
| | 760 | .62500 | .0003 | .0008 |
| | 761 | .27985 | .0007 | .0013 |
| | 838 | .34375 | .0001 | .0003 |
| | 840 | .12407 | .0000 | .0000 |
| | 841 | .34375 | .0017 | .0021 |
| | 842 | .34375 | .0005 | .0011 |
| | 843 | .34375 | .0014 | .0019 |
| | 844 | .34375 | .0002 | .0005 |
| | 845 | .34375 | .0023 | .0024 |
| | 846 | .14210 | .0002 | .0005 |
| | 847 | .34375 | .0001 | .0002 |
| | 848 | .42014 | .0000 | .0002 |
| | 849 | .68750 | .0031 | .0039 |
| | 851 | .68750 | .0034 | .0042 |
| | 852 | .34375 | .0019 | .0021 |
| | 853 | .20023 | .0016 | .0014 |
| | 854 | .09418 | .0005 | .0006 |
| | 856 | .59303 | .0047 | .0045 |
| | 857 | .62500 | .0049 | .0046 |
| | 858 | .62500 | .0043 | .0040 |
| | 859 | .29280 | .0021 | .0021 |
| | 860 | .62500 | .0033 | .0038 |
| | 861 | .31365 | .0022 | .0022 |
| | 863 | .08191 | .0005 | .0005 |
| | 951 | .52114 | .0006 | .0013 |
| | 952 | .50310 | .0018 | .0026 |
| | 956 | .15114 | .0005 | .0008 |
| | 957 | .16284 | .0007 | .0010 |
| | 958 | .00823 | .0001 | .0000 |
| | 962 | .06586 | .0002 | .0003 |
| 361  RAUCH, LEONARD | | | .0022 | .0020 |
| | 642 | .09473 | .0009 | .0008 |
| | 742 | .17867 | .0013 | .0012 |
| 364  RAY, R. L. | | | .0241 | .0238 |
| | 454 | 3.47728 | .0241 | .0238 |
| 365  RAYO OIL CO. | | | .5688 | .4822 |
| | 451 | 50.00000 | .5074 | .4308 |
| | 453 | 6.29649 | .0614 | .0514 |
| 366  REESE, C. CURTIS | | | .0240 | .0192 |
| | 546 | 2.04151 | .0240 | .0192 |
| 370  RICHARDSON, MRS. GERTRUDE WINDSOR | | | .3439 | .3199 |
| | 453 | 2.29247 | .0223 | .0188 |
| | 456 | 2.45264 | .0142 | .0140 |
| | 551 | 2.68652 | .0217 | .0203 |
| | 553 | 1.74914 | .0131 | .0128 |
| | 651 | 4.03392 | .0464 | .0371 |
| | 652 | 6.25000 | .0613 | .0527 |
| | 656 | 9.12719 | .0503 | .0568 |
| | 752 | 6.25000 | .0999 | .0936 |
| | 753 | 2.05496 | .0147 | .0138 |
| 375  ROOSTH, ISADORE, IND. EXECUTOR | | | .0028 | .0027 |
| | 641 | .24504 | .0020 | .0019 |
| | 861 | .11478 | .0008 | .0008 |
| 380  ROOSTH, ISADORE, SUB. EXECUTOR | | | .0028 | .0027 |
| | 641 | .24504 | .0020 | .0019 |
| | 861 | .11478 | .0008 | .0008 |

Table II
Page 20

TABLE II

PAGE NO.  21

| WORKING INTEREST OWNERS | TRACT NO. | PERCENT OWNERSHIP IN TRACT | UNIT PARTICIPATION OF EACH OWNER (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|
| 385  ROOSTH, ISADORE, TR JR TRUST | | | .0028 | .0026 |
| | 641 | .24504 | .0020 | .0018 |
| | 861 | .11478 | .0008 | .0008 |
| 390  ROOSTH, M. P. | | | .0028 | .0027 |
| | 641 | .24504 | .0020 | .0019 |
| | 861 | .11478 | .0008 | .0008 |
| 395  ROOSTH, ISADORE | | | .0028 | .0027 |
| | 641 | .24505 | .0020 | .0019 |
| | 861 | .11478 | .0008 | .0008 |
| 400  ROOSTH, SOLOMON | | | .0028 | .0026 |
| | 641 | .24505 | .0020 | .0018 |
| | 861 | .11478 | .0008 | .0008 |
| 405  ROOSTH, WILEY | | | .0028 | .0027 |
| | 641 | .24505 | .0020 | .0019 |
| | 861 | .11477 | .0008 | .0008 |
| 407  ROTARY DRILLING, INC. | | | .0094 | .0239 |
| | 972 | 6.25000 | .0094 | .0239 |
| 410  ROTHSCHILD, SIGMOND | | | .0060 | .0229 |
| | 968 | 25.00000 | .0060 | .0229 |
| 412  SANDS, CAROLINE HUNT | | | .1568 | .2589 |
| | 641 | 6.76063 | .0551 | .0515 |
| | 834 | 50.00000 | .0498 | .1046 |
| | 835 | 100.00000 | .0519 | .1028 |
| 413  SECURE TRUSTS | | | .5688 | .4822 |
| | 451 | 50.00000 | .5074 | .4308 |
| | 453 | 6.29649 | .0614 | .0514 |
| 415  SHAW, D. J. | | | .0089 | .0084 |
| | 744 | 1.09230 | .0089 | .0084 |
| 421  SKELLY OIL CO. | | | .0197 | .1070 |
| | 833 | 100.00000 | .0047 | .0197 |
| | 836 | 100.00000 | .0002 | .0016 |
| | 970 | 100.00000 | .0148 | .0857 |

Table II
Page 21

TABLE II                                                                    PAGE NO. 22

| WORKING INTEREST OWNERS | TRACT NO. | PERCENT OWNERSHIP IN TRACT | UNIT PARTICIPATION OF EACH OWNER (PERCENT) | |
|---|---|---|---|---|
| | | | PHASE II | PHASE I |
| 425  SKLAR, ALBERT | | | .5898 | .6167 |
| | 349 | 2.88677 | .0349 | .0277 |
| | 356 | 1.71875 | .0000 | .0002 |
| | 357 | 3.43750 | .0041 | .0071 |
| | 452 | 3.43750 | .0340 | .0292 |
| | 453 | .48290 | .0047 | .0040 |
| | 554 | 3.43750 | .0253 | .0248 |
| | 555 | 1.71880 | .0116 | .0111 |
| | 556 | 1.71880 | .0100 | .0111 |
| | 640 | .49178 | .0015 | .0016 |
| | 642 | .92187 | .0085 | .0075 |
| | 649 | .26028 | .0029 | .0024 |
| | 651 | .70440 | .0081 | .0065 |
| | 654 | 3.43750 | .0219 | .0210 |
| | 655 | 1.71880 | .0174 | .0123 |
| | 656 | .84320 | .0046 | .0053 |
| | 658 | .91310 | .0037 | .0044 |
| | 659 | 3.12500 | .0081 | .0142 |
| | 660 | 3.12500 | .0016 | .0048 |
| | 661 | 2.12810 | .0032 | .0077 |
| | 662 | 3.12500 | .0000 | .0004 |
| | 663 | 3.12500 | .0000 | .0003 |
| | 742 | 1.99978 | .0145 | .0139 |
| | 745 | 2.20730 | .0158 | .0135 |
| | 746 | .45139 | .0050 | .0041 |
| | 748 | 2.54612 | .0301 | .0240 |
| | 749 | 1.71875 | .0156 | .0138 |
| | 750 | 1.71875 | .0200 | .0161 |
| | 751 | 1.71875 | .0144 | .0133 |
| | 753 | 1.15364 | .0082 | .0077 |
| | 756 | 1.33663 | .0084 | .0089 |
| | 758 | 3.12500 | .0223 | .0223 |
| | 759 | 3.12500 | .0137 | .0174 |
| | 760 | 3.12500 | .0016 | .0044 |
| | 761 | 1.39926 | .0036 | .0064 |
| | 838 | 1.71875 | .0002 | .0013 |
| | 840 | .62033 | .0000 | .0009 |
| | 841 | 1.71875 | .0090 | .0105 |
| | 842 | 1.71875 | .0026 | .0052 |
| | 843 | 1.71875 | .0071 | .0096 |
| | 844 | 1.71875 | .0008 | .0028 |
| | 845 | 1.71875 | .0113 | .0117 |
| | 846 | .71050 | .0014 | .0026 |
| | 847 | 1.71875 | .0002 | .0013 |
| | 848 | 2.10069 | .0003 | .0011 |
| | 849 | 3.43750 | .0151 | .0194 |
| | 851 | 3.43750 | .0174 | .0207 |
| | 852 | 1.71875 | .0095 | .0108 |
| | 853 | 1.00117 | .0080 | .0075 |
| | 854 | .47090 | .0026 | .0029 |
| | 856 | 2.96515 | .0237 | .0223 |
| | 857 | 3.12500 | .0242 | .0232 |
| | 858 | 3.12500 | .0215 | .0200 |
| | 859 | 1.46420 | .0104 | .0104 |
| | 860 | 3.12500 | .0167 | .0192 |
| | 861 | 1.56827 | .0110 | .0111 |
| | 863 | .40956 | .0024 | .0027 |
| | 951 | 2.60572 | .0030 | .0063 |
| | 952 | 2.51520 | .0091 | .0132 |
| | 956 | .75568 | .0028 | .0040 |
| | 957 | .81421 | .0037 | .0047 |
| | 958 | .04113 | .0003 | .0003 |
| | 962 | .32930 | .0012 | .0017 |
| 426  SKLAR & PHILLIPS, INC. | | | .0730 | .0757 |
| | 555 | 3.69135 | .0248 | .0255 |
| | 556 | 3.69135 | .0215 | .0238 |
| | 655 | 3.69132 | .0267 | .0264 |
| 428  SMITH, BRUCE | | | .0196 | .0438 |
| | 960 | 12.81120 | .0196 | .0438 |
| 430  SPENCER, DIANNE T. | | | .0578 | .0516 |
| | 642 | 5.57062 | .0515 | .0455 |
| | 742 | .87485 | .0063 | .0061 |
| 431  SPRUIELL, Z. J. | | | .0094 | .0238 |
| | 972 | 6.25000 | .0094 | .0238 |
| 432  STORY, S. A., JR. | | | .0006 | .0006 |
| | 754 | .08187 | .0006 | .0006 |
| 445  STRONG, JACK B. | | | .0604 | .0581 |
| | 640 | 1.61281 | .0049 | .0052 |
| | 742 | 7.63335 | .0555 | .0529 |
| 450  SUN OIL CO. | | | 3.9043 | 3.6668 |
| | 352 | 99.29662 | .8976 | .7928 |
| | 353 | 11.90469 | .0994 | .0918 |
| | 449 | 6.60840 | .0622 | .0545 |
| | 457 | 100.00000 | .1180 | .1775 |
| | 458 | 100.00000 | .4047 | .5518 |
| | 549 | 100.00000 | 1.9273 | 1.6718 |
| | 555 | 5.72813 | .0428 | .0416 |
| | 649 | 30.73130 | .3523 | .2850 |

Table II
Page 22

TABLE II

PAGE NO. 23

| WORKING INTEREST OWNERS | TRACT NO. | PERCENT OWNERSHIP IN TRACT | UNIT PARTICIPATION OF EACH OWNER (PERCENT) | |
|---|---|---|---|---|
| | | | PHASE II | PHASE I |
| 455  TEXACO, INC. | | | 5.3216 | 5.4657 |
| | 448 | 81.13000 | .9174 | .7460 |
| | 456 | 83.57888 | .5778 | .5706 |
| | 643 | 49.36250 | .5359 | .4427 |
| | 657 | 50.00000 | .1169 | .1591 |
| | 735 | 100.00000 | .8104 | .7405 |
| | 743 | 32.70617 | .2022 | .2146 |
| | 744 | 25.88440 | .2111 | .1976 |
| | 816 | 100.00000 | .0001 | .0037 |
| | 827 | 90.49875 | .6635 | .6522 |
| | 830 | 100.00000 | .0134 | .0365 |
| | 831 | 100.00000 | .0065 | .0178 |
| | 832 | 100.00000 | .2323 | .3864 |
| | 853 | 19.14995 | .1526 | .1429 |
| | 855 | 100.00000 | .7352 | .7217 |
| | 960 | 65.83680 | .1009 | .2251 |
| | 967 | 28.44500 | .0030 | .0210 |
| | 968 | 62.50000 | .0148 | .0572 |
| | 972 | 10.00000 | .0150 | .0381 |
| | 974 | 50.00000 | .0013 | .0158 |
| | 975 | 100.00000 | .0113 | .0755 |
| | 976 | 100.00000 | .0000 | .0007 |
| 460  TRANT, SAM | | | .1241 | .0993 |
| | 648 | 12.50000 | .1241 | .0993 |
| 465  TRICE PRODUCTION CO. | | | .0497 | .1046 |
| | 834 | 50.00000 | .0497 | .1046 |
| 467  WALKER, JAMES G., JR. | | | .4691 | .4943 |
| | 349 | 1.90280 | .0230 | .0182 |
| | 356 | 1.13290 | .0000 | .0002 |
| | 357 | 2.26581 | .0027 | .0047 |
| | 452 | 2.26581 | .0225 | .0193 |
| | 453 | .31830 | .0031 | .0026 |
| | 554 | 2.26581 | .0167 | .0164 |
| | 555 | 3.56543 | .0241 | .0247 |
| | 556 | 3.56543 | .0208 | .0231 |
| | 640 | .32415 | .0010 | .0010 |
| | 642 | .07692 | .0007 | .0006 |
| | 649 | .17156 | .0019 | .0016 |
| | 651 | .46430 | .0053 | .0043 |
| | 654 | 2.26581 | .0145 | .0138 |
| | 655 | 2.26581 | .0164 | .0162 |
| | 656 | .48677 | .0027 | .0030 |
| | 658 | .58986 | .0023 | .0029 |
| | 659 | 2.22624 | .0057 | .0102 |
| | 660 | 2.22624 | .0012 | .0035 |
| | 661 | 2.38760 | .0036 | .0087 |
| | 662 | 2.22624 | .0001 | .0003 |
| | 663 | 2.22624 | .0000 | .0001 |
| | 742 | .31712 | .0023 | .0022 |
| | 745 | 1.45493 | .0104 | .0089 |
| | 746 | .29753 | .0033 | .0027 |
| | 748 | 1.67826 | .0198 | .0159 |
| | 749 | 1.13290 | .0103 | .0092 |
| | 750 | 1.13290 | .0132 | .0106 |
| | 751 | 1.78272 | .0149 | .0138 |
| | 753 | .76041 | .0054 | .0051 |
| | 756 | .95222 | .0059 | .0063 |
| | 758 | 3.45096 | .0248 | .0245 |
| | 759 | 3.50606 | .0154 | .0195 |
| | 760 | 2.22624 | .0010 | .0032 |
| | 761 | 1.00016 | .0025 | .0045 |
| | 838 | 1.13290 | .0002 | .0009 |
| | 840 | .40888 | .0000 | .0000 |
| | 841 | 1.13290 | .0059 | .0070 |
| | 842 | 1.13290 | .0017 | .0035 |
| | 843 | 1.13290 | .0047 | .0064 |
| | 844 | 1.13290 | .0005 | .0018 |
| | 845 | 1.78272 | .0118 | .0122 |
| | 846 | .37599 | .0008 | .0013 |
| | 847 | 1.13290 | .0001 | .0008 |
| | 848 | 1.38464 | .0001 | .0008 |
| | 849 | 2.26581 | .0099 | .0128 |
| | 851 | 2.26581 | .0114 | .0136 |
| | 852 | 1.13290 | .0062 | .0072 |
| | 853 | .66924 | .0053 | .0050 |
| | 854 | .33370 | .0019 | .0021 |
| | 856 | 1.99020 | .0159 | .0150 |
| | 857 | 3.30815 | .0257 | .0246 |
| | 858 | 3.50606 | .0242 | .0225 |
| | 859 | 1.04304 | .0074 | .0074 |
| | 860 | 2.22624 | .0118 | .0136 |
| | 861 | 1.23264 | .0085 | .0086 |
| | 863 | .29177 | .0017 | .0019 |
| | 951 | 1.56135 | .0018 | .0039 |
| | 952 | 1.76992 | .0064 | .0092 |
| | 956 | .72928 | .0027 | .0038 |
| | 957 | .80005 | .0037 | .0047 |
| | 958 | .02930 | .0002 | .0002 |
| | 962 | .32357 | .0011 | .0017 |

Table II
Page 23

TABLE II

| WORKING INTEREST OWNERS | TRACT NO. | PERCENT OWNERSHIP IN TRACT | UNIT PARTICIPATION OF EACH OWNER (PERCENT) | |
|---|---|---|---|---|
| | | | PHASE II | PHASE I |
| 470  WARD, TRAVIS | | | 1.6563 | 1.7384 |
| | 349 | 7.98428 | .0964 | .0764 |
| | 356 | 4.75375 | .0001 | .0005 |
| | 357 | 9.50750 | .0115 | .0195 |
| | 452 | 9.50749 | .0941 | .0807 |
| | 453 | 1.33560 | .0130 | .0109 |
| | 554 | 9.50750 | .0700 | .0686 |
| | 555 | 7.85222 | .0529 | .0543 |
| | 556 | 7.85222 | .0458 | .0507 |
| | 640 | 1.36016 | .0042 | .0044 |
| | 642 | .32279 | .0030 | .0026 |
| | 649 | .71989 | .0083 | .0066 |
| | 651 | 1.94825 | .0224 | .0179 |
| | 654 | 9.50750 | .0606 | .0579 |
| | 655 | 7.85224 | .0568 | .0562 |
| | 656 | 2.39672 | .0133 | .0150 |
| | 658 | 2.59891 | .0104 | .0126 |
| | 659 | 8.88249 | .0229 | .0406 |
| | 660 | 8.88249 | .0048 | .0137 |
| | 661 | 6.04890 | .0092 | .0219 |
| | 662 | 8.88249 | .0001 | .0011 |
| | 663 | 8.88249 | .0000 | .0008 |
| | 742 | 1.33062 | .0097 | .0093 |
| | 745 | 6.10500 | .0437 | .0374 |
| | 746 | 1.24845 | .0137 | .0113 |
| | 748 | 7.04213 | .0831 | .0664 |
| | 749 | 4.75375 | .0430 | .0383 |
| | 750 | 4.75375 | .0555 | .0446 |
| | 751 | 4.75375 | .0398 | .0367 |
| | 753 | 3.19075 | .0228 | .0214 |
| | 756 | 3.79925 | .0237 | .0252 |
| | 758 | 8.88479 | .0636 | .0633 |
| | 759 | 8.88250 | .0390 | .0495 |
| | 760 | 8.88249 | .0043 | .0124 |
| | 761 | 3.95096 | .0100 | .0181 |
| | 838 | 4.75375 | .0007 | .0037 |
| | 840 | 1.71571 | .0000 | .0001 |
| | 841 | 4.75375 | .0247 | .0292 |
| | 842 | 4.75375 | .0072 | .0145 |
| | 843 | 4.75375 | .0196 | .0266 |
| | 844 | 4.75375 | .0022 | .0077 |
| | 845 | 4.75375 | .0315 | .0326 |
| | 846 | 1.57768 | .0030 | .0058 |
| | 847 | 4.75375 | .0006 | .0034 |
| | 848 | 5.81032 | .0007 | .0030 |
| | 849 | 9.50749 | .0417 | .0538 |
| | 851 | 9.50749 | .0479 | .0572 |
| | 852 | 4.75375 | .0261 | .0299 |
| | 853 | 2.78226 | .0222 | .0207 |
| | 854 | 1.33594 | .0074 | .0085 |
| | 856 | 8.41547 | .0671 | .0634 |
| | 857 | 8.88250 | .0689 | .0659 |
| | 858 | 8.88249 | .0613 | .0569 |
| | 859 | 4.16180 | .0295 | .0295 |
| | 860 | 8.88249 | .0474 | .0545 |
| | 861 | 4.45052 | .0311 | .0313 |
| | 863 | 1.16415 | .0069 | .0076 |
| | 951 | 7.37252 | .0085 | .0180 |
| | 952 | 7.14975 | .0259 | .0373 |
| | 956 | 2.14796 | .0079 | .0112 |
| | 957 | 2.31431 | .0106 | .0135 |
| | 958 | .11692 | .0008 | .0008 |
| | 962 | .93599 | .0032 | .0050 |
| 472  WILSON, MAXIE H. | | | .0022 | .0086 |
| | 968 | 9.37500 | .0022 | .0086 |
| 475  WINDSOR, MRS. GERTRUDE BUCKLEY | | | .6875 | .6397 |
| | 453 | 4.58495 | .0447 | .0374 |
| | 456 | 4.10528 | .0284 | .0280 |
| | 551 | 5.37305 | .0435 | .0408 |
| | 553 | 3.49828 | .0261 | .0255 |
| | 651 | 8.06783 | .0927 | .0741 |
| | 652 | 12.50000 | .1224 | .1055 |
| | 656 | 18.25438 | .1006 | .1137 |
| | 752 | 12.50000 | .1998 | .1871 |
| | 753 | 4.10992 | .0293 | .0276 |

Table II
Page 24

TABLE II

PAGE NO.  25

| WORKING INTEREST OWNERS | TRACT NO. | PERCENT OWNERSHIP IN TRACT | UNIT PARTICIPATION OF EACH OWNER (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|
| 485  WINWELL 1961 EXPLORATION CO. | | | 2.6785 | 2.8279 |
| | 349 | 11.54708 | .1395 | .1106 |
| | 356 | 6.87500 | .0000 | .0008 |
| | 357 | 13.75000 | .0165 | .0283 |
| | 452 | 13.75000 | .1362 | .1168 |
| | 453 | 1.93158 | .0188 | .0158 |
| | 554 | 13.75000 | .1012 | .0993 |
| | 555 | 14.25760 | .0961 | .0985 |
| | 556 | 14.25760 | .0831 | .0920 |
| | 640 | 1.96711 | .0060 | .0064 |
| | 642 | 2.36134 | .0218 | .0193 |
| | 649 | 1.04114 | .0119 | .0097 |
| | 651 | 2.84761 | .0324 | .0259 |
| | 654 | 13.75000 | .0877 | .0838 |
| | 655 | 14.25760 | .1032 | .1021 |
| | 656 | 4.21601 | .0233 | .0263 |
| | 658 | 4.56560 | .0183 | .0221 |
| | 659 | 15.62500 | .0402 | .0715 |
| | 660 | 15.62500 | .0083 | .0241 |
| | 661 | 10.64050 | .0162 | .0386 |
| | 662 | 15.62500 | .0003 | .0019 |
| | 663 | 15.62500 | .0001 | .0012 |
| | 742 | 5.49775 | .0399 | .0381 |
| | 745 | 8.82922 | .0631 | .0541 |
| | 746 | 1.80555 | .0199 | .0163 |
| | 748 | 10.18452 | .1201 | .0960 |
| | 749 | 6.87500 | .0623 | .0554 |
| | 750 | 6.87500 | .0801 | .0644 |
| | 751 | 6.87500 | .0575 | .0531 |
| | 753 | 4.61454 | .0329 | .0309 |
| | 756 | 6.68318 | .0416 | .0443 |
| | 758 | 15.62500 | .1119 | .1113 |
| | 759 | 15.62500 | .0685 | .0871 |
| | 760 | 15.62500 | .0076 | .0220 |
| | 761 | 6.99630 | .0178 | .0319 |
| | 838 | 6.87500 | .0010 | .0053 |
| | 840 | 2.48131 | .0000 | .0000 |
| | 841 | 6.87500 | .0357 | .0422 |
| | 842 | 6.87500 | .0104 | .0209 |
| | 843 | 6.87500 | .0283 | .0385 |
| | 844 | 6.87500 | .0032 | .0110 |
| | 845 | 6.87500 | .0455 | .0471 |
| | 846 | 2.84199 | .0056 | .0103 |
| | 847 | 6.87500 | .0009 | .0049 |
| | 848 | 8.40278 | .0010 | .0045 |
| | 849 | 13.75000 | .0604 | .0778 |
| | 851 | 13.75000 | .0694 | .0828 |
| | 852 | 6.87500 | .0378 | .0432 |
| | 853 | 4.17945 | .0333 | .0312 |
| | 854 | 2.32140 | .0128 | .0146 |
| | 856 | 14.82578 | .1183 | .1116 |
| | 857 | 15.62500 | .1212 | .1159 |
| | 858 | 15.62500 | .1078 | .1001 |
| | 859 | 7.32100 | .0518 | .0518 |
| | 860 | 15.62500 | .0833 | .0958 |
| | 861 | 7.84136 | .0546 | .0551 |
| | 863 | 2.04788 | .0122 | .0133 |
| | 951 | 12.54882 | .0145 | .0308 |
| | 952 | 12.57620 | .0455 | .0657 |
| | 956 | 3.77841 | .0140 | .0198 |
| | 957 | 4.07105 | .0186 | .0237 |
| | 958 | .20566 | .0015 | .0015 |
| | 962 | 1.64649 | .0056 | .0086 |
| 502  WOODMAN, L. L. | | | .0181 | .0210 |
| | 761 | 1.39748 | .0035 | .0064 |
| | 859 | 1.38400 | .0098 | .0098 |
| | 861 | .68558 | .0048 | .0048 |
| 504  WYNNE, TODDIE L. | | | .0003 | .0039 |
| | 974 | 12.50000 | .0003 | .0039 |
| 510  UNRESOLVED | | | .1553 | .2117 |
| | 701 | 100.00000 | .0073 | .0073 |
| | 702 | 100.00000 | .0074 | .0073 |
| | 762 | 100.00000 | .0003 | .0038 |
| | 763 | 100.00000 | .0001 | .0008 |
| | 764 | 100.00000 | .0009 | .0106 |
| | 770 | 100.00000 | .1289 | .1153 |
| | 848 | 38.88889 | .0046 | .0205 |
| | 866 | 100.00000 | .0039 | .0341 |
| | 880 | 100.00000 | .0012 | .0078 |
| | 971 | 100.00000 | .0007 | .0042 |
| | | | 100.0000 | 100.0000 |

Table II
Page 25

| TRACT NO. | OPERATOR AND TRACT NAME WORKING INTEREST OWNERS | WIO CODE | PERCENT OWNERSHIP | UNIT PARTICIPATION (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|---|
| 147 | HUNT OIL   WOFFORD HRS | | | .0001 | .0012 |
| | HUNT OIL CO. | 229 | 100.00000 | .0001 | .0012 |
| 148 | ATLANTIC   FAULK | | | .1272 | .3020 |
| | ATLANTIC REFINING CO. | 20 | 100.00000 | .1272 | .3020 |
| 149 | HUMBLE   FAIRWAY UNIT 4 | | | .4685 | .5142 |
| | HUMBLE OIL & REFINING CO. | 225 | 100.00000 | .4685 | .5142 |
| 150 | HUMBLE   DANIEL | | | .0019 | .0193 |
| | COX, EDWIN L. | 57 | 33.33333 | .0006 | .0064 |
| | HUMBLE OIL & REFINING CO. | 225 | 58.33334 | .0011 | .0113 |
| | HUNT, CAROLINE, TRUST ESTATE | 227 | 8.33333 | .0002 | .0016 |
| 151 | CHTE   DANIEL | | | .0279 | .1014 |
| | COX, EDWIN L. | 57 | 33.33333 | .0093 | .0338 |
| | HUMBLE OIL & REFINING CO. | 225 | 8.33333 | .0023 | .0084 |
| | HUNT, CAROLINE, TRUST ESTATE | 227 | 58.33334 | .0163 | .0592 |
| 152 | AMERADA   MILLER UNIT | | | .4081 | .5544 |
| | AMERADA PETROLEUM CORP. | 10 | 50.00000 | .2041 | .2772 |
| | PAN AMERICAN PETROLEUM CORP. | 310 | 50.00000 | .2040 | .2772 |
| 153 | PAN AMERICAN   LON MORRIS | | | .0064 | .0381 |
| | PAN AMERICAN PETROLEUM CORP. | 310 | 100.00000 | .0064 | .0381 |
| 154 | CITIES SERVICE   MILLER D UNIT | | | .4371 | .5726 |
| | CITIES SERVICE OIL CO. | 35 | 71.66312 | .3132 | .4103 |
| | HUMBLE OIL & REFINING CO. | 225 | 28.33688 | .1239 | .1623 |
| 155 | CITIES SERVICE   MILLER | | | .0088 | .0210 |
| | CITIES SERVICE OIL CO. | 35 | 100.00000 | .0088 | .0210 |
| 156 | HUMBLE   FAIRWAY UNIT 5 | | | .0434 | .0858 |
| | CITIES SERVICE OIL CO. | 35 | 14.57000 | .0063 | .0125 |
| | HUMBLE OIL & REFINING CO. | 225 | 85.43000 | .0371 | .0733 |
| 245 | AMERADA   TRUITT | | | .0001 | .0008 |
| | AMERADA PETROLEUM CORP. | 10 | 100.00000 | .0001 | .0008 |
| 246 | ATLANTIC   TRUITT UNIT B | | | .6192 | .5200 |
| | AMERADA PETROLEUM CORP. | 10 | 35.87687 | .2221 | .1866 |
| | ATLANTIC REFINING CO. | 20 | 28.33063 | .1755 | .1473 |
| | HUMBLE OIL & REFINING CO. | 225 | 33.03616 | .2045 | .1718 |
| | HUNT PETROLEUM CORP. | 230 | 2.75634 | .0171 | .0143 |
| 247 | ATLANTIC   TRUITT UNIT | | | .5824 | .6029 |
| | ATLANTIC REFINING CO. | 20 | 54.59938 | .3180 | .3292 |
| | HUMBLE OIL & REFINING CO. | 225 | 45.40062 | .2644 | .2737 |
| 248 | ATLANTIC   DANSBY UNIT | | | .9355 | .8143 |
| | ATLANTIC REFINING CO. | 20 | 100.00000 | .9355 | .8143 |
| 249 | ATLANTIC   BRUTON UNIT | | | 1.0513 | .8782 |
| | ATLANTIC REFINING CO. | 20 | 96.30000 | 1.0124 | .8457 |
| | DAY, W. S. | 62 | .04625 | .0005 | .0004 |
| | GRAHAM, RALPH E. | 160 | .04625 | .0005 | .0004 |
| | HUNT OIL CO. | 229 | 2.77500 | .0291 | .0244 |
| | KIRBY PETROLEUM CO. | 235 | .83250 | .0088 | .0073 |
| 250 | ATLANTIC   EVANS UNIT | | | .9355 | .8219 |
| | ATLANTIC REFINING CO. | 20 | 100.00000 | .9355 | .8219 |
| 251 | HUNT OIL   FINCASTLE UNIT | | | 1.0680 | .8859 |
| | CITIES SERVICE OIL CO. | 35 | 9.12704 | .0975 | .0809 |
| | HUMBLE OIL & REFINING CO. | 225 | 16.97358 | .1813 | .1503 |
| | HUNT, CAROLINE, TRUST ESTATE | 227 | 22.83774 | .2439 | .2023 |
| | HUNT OIL CO. | 229 | 51.06164 | .5453 | .4524 |

EXHIBIT "C"
TABLE III
DETAIL OF TRACT OWNERSHIP AND PARTICIPATION
UNIT OPERATING AGREEMENT
FAIRWAY (JAMES LIME) UNIT
OCTOBER 1, 1963

TABLE III

| TRACT NO. | OPERATOR AND TRACT NAME WORKING INTEREST OWNERS | WIO CODE | PERCENT OWNERSHIP | UNIT PARTICIPATION (PERCENT) | |
|---|---|---|---|---|---|
| | | | | PHASE II | PHASE I |
| 252 | CITIES SERVICE   MILLER B | | | .4738 | .5578 |
| | CITIES SERVICE OIL CO. | 35 | 100.00000 | .4738 | .5578 |
| 253 | CITIES SERVICE   KITCHENS UNIT | | | .7611 | .7016 |
| | CITIES SERVICE OIL CO. | 35 | 55.65690 | .4236 | .3905 |
| | HADDAWAY, ARTHUR | 185 | 8.47515 | .0645 | .0595 |
| | HUNT, CAROLINE, TRUST ESTATE | 227 | 27.39280 | .2085 | .1921 |
| | PAN AMERICAN PETROLEUM CORP. | 310 | 8.47515 | .0645 | .0595 |
| 254 | CITIES SERVICE   MILLER G UNIT | | | .2643 | .4289 |
| | CITIES SERVICE OIL CO. | 35 | 100.00000 | .2643 | .4289 |
| 255 | CITIES SERVICE   MILLER | | | .0004 | .0061 |
| | CITIES SERVICE OIL CO. | 35 | 100.00000 | .0004 | .0061 |
| 256 | CITIES SERVICE   MILLER K UNIT | | | .4810 | .5743 |
| | CITIES SERVICE OIL CO. | 35 | 100.00000 | .4810 | .5743 |
| 344 | AMERADA   PAGITT UNIT | | | .0268 | .0800 |
| | AMERADA PETROLEUM CORP. | 10 | 55.10000 | .0148 | .0441 |
| | HUMBLE OIL & REFINING CO. | 225 | 44.90000 | .0120 | .0359 |
| 345 | CITIES SERVICE   ELLIS | | | .0127 | .0112 |
| | CITIES SERVICE OIL CO. | 35 | 100.00000 | .0127 | .0112 |
| 346 | CITIES SERVICE   ELLIS C | | | .4612 | .5180 |
| | ATLANTIC REFINING CO. | 20 | 5.39568 | .0249 | .0279 |
| | CITIES SERVICE OIL CO. | 35 | 89.20864 | .4114 | .4622 |
| | DAY, W. S. | 62 | .06745 | .0003 | .0003 |
| | GRAHAM, RALPH E. | 160 | .06746 | .0003 | .0003 |
| | HUNT OIL CO. | 229 | 4.04660 | .0187 | .0210 |
| | KIRBY PETROLEUM CO. | 235 | 1.21417 | .0056 | .0063 |
| 347 | AMERADA   SELMAN | | | .5539 | .4762 |
| | AMERADA PETROLEUM CORP. | 10 | 100.00000 | .5539 | .4762 |
| 348 | CITIES SERVICE   TRUITT | | | 1.0262 | .8673 |
| | CITIES SERVICE OIL CO. | 35 | 100.00000 | 1.0262 | .8673 |
| 349 | FAIRWAY   CAMPBELL-BRISTOW UNIT | | | 1.2079 | .9575 |
| | CITIES SERVICE OIL CO. | 35 | 4.61883 | .0558 | .0442 |
| | CLAY, CARROLL | 43 | .45068 | .0054 | .0043 |
| | CLAY, THOMAS W. | 44 | 2.17451 | .0263 | .0209 |
| | CONTINENTAL OIL CO. | 55 | 9.89449 | .1195 | .0947 |
| | FLOYD, GALLANT | 105 | 1.31217 | .0159 | .0126 |
| | FLOYD, G. W. | 110 | .65609 | .0079 | .0062 |
| | GLESBY, VEDA MAE | 155 | .57736 | .0070 | .0056 |
| | GREENBRIER 60 LIMITED | 170 | 14.69628 | .1775 | .1407 |
| | GREENBRIER 61 LIMITED | 175 | 8.61657 | .1041 | .0825 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 2.62434 | .0317 | .0251 |
| | HUDNALL, JAMES | 220 | 4.19894 | .0507 | .0402 |
| | HUNT INDUSTRIES | 228 | 16.02123 | .1935 | .1534 |
| | PHILLIPS, LEONARD W. | 335 | 2.88677 | .0349 | .0277 |
| | PIRTLE, G. W. | 350 | 4.19894 | .0507 | .0402 |
| | PROTHRO, JOHN E. | 356 | 2.17452 | .0263 | .0208 |
| | RAUCH, GERALD | 360 | .57735 | .0069 | .0055 |
| | SKLAR, ALBERT | 425 | 2.88677 | .0349 | .0277 |
| | WALKER, JAMES G., JR. | 467 | 1.90280 | .0230 | .0182 |
| | WARD, TRAVIS | 470 | 7.98428 | .0964 | .0764 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 11.54708 | .1395 | .1106 |
| 350 | CITIES SERVICE   MILLER C UNIT | | | 1.1072 | .9060 |
| | CITIES SERVICE OIL CO. | 35 | 100.00000 | 1.1072 | .9060 |
| 351 | CITIES SERVICE   MILLER F | | | .8773 | .7612 |
| | CITIES SERVICE OIL CO. | 35 | 100.00000 | .8773 | .7612 |
| 352 | SUN   OWENS UNIT | | | .9040 | .7984 |
| | BUSH, JEWELL | 33 | .70338 | .0064 | .0056 |
| | SUN OIL CO. | 450 | 99.29662 | .8976 | .7928 |
| 353 | HUNT OIL   MITCHELL UNIT | | | .8347 | .7710 |
| | HUNT OIL CO. | 229 | 81.55681 | .6808 | .6288 |
| | PAN AMERICAN PETROLEUM CORP. | 310 | 6.53850 | .0545 | .0504 |
| | SUN OIL CO. | 450 | 11.90469 | .0994 | .0918 |
| 354 | PHILLIPS   COSTLOW UNIT | | | .3985 | .5461 |
| | HUNT OIL CO. | 229 | 32.51125 | .1296 | .1775 |
| | PHILLIPS PETROLEUM CO. | 340 | 67.48875 | .2689 | .3686 |

Table III
Page 2

TABLE III

| TRACT NO. | OPERATOR AND TRACT NAME WORKING INTEREST OWNERS | WIC CODE | PERCENT OWNERSHIP | UNIT PARTICIPATION (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|---|
| 355 | HUNT OIL    PEVETO | | | .0897 | .1095 |
| | HUNT OIL CO. | 229 | 100.00000 | .0897 | .1095 |
| 356 | HUNT OIL    SMITH | | | .0006 | .0116 |
| | CITIES SERVICE OIL CO. | 35 | 2.75000 | .0000 | .0003 |
| | CLAY, CARROLL | 43 | .26833 | .0000 | .0001 |
| | CLAY, THOMAS W. | 44 | 1.29468 | .0000 | .0001 |
| | CONTINENTAL OIL CO. | 55 | 5.89107 | .0001 | .0007 |
| | FLOYD, GALLANT | 105 | .78125 | .0000 | .0001 |
| | FLOYD, G. W. | 110 | .39063 | .0000 | .0000 |
| | GLESBY, VEDA MAE | 155 | .34375 | .0000 | .0001 |
| | GREENBRIER 60 LIMITED | 170 | 8.75000 | .0000 | .0010 |
| | GREENBRIER 61 LIMITED | 175 | 5.13021 | .0001 | .0006 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 1.56250 | .0000 | .0002 |
| | HUDNALL, JAMES | 220 | 2.50000 | .0000 | .0002 |
| | HUNT OIL CO. | 229 | 50.00000 | .0003 | .0058 |
| | PHILLIPS, LEONARD W. | 335 | 1.71875 | .0000 | .0002 |
| | PIRTLE, G. W. | 350 | 2.50000 | .0000 | .0003 |
| | PROTHRO, JOHN E. | 356 | 1.29468 | .0000 | .0002 |
| | RAUCH, GERALD | 360 | .34375 | .0000 | .0000 |
| | SKLAR, ALBERT | 425 | 1.71875 | .0000 | .0002 |
| | WALKER, JAMES G., JR. | 467 | 1.13290 | .0000 | .0002 |
| | WARD, TRAVIS | 470 | 4.75375 | .0001 | .0005 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 6.87500 | .0000 | .0008 |
| 357 | FAIRWAY    SMITH | | | .1202 | .2057 |
| | CITIES SERVICE OIL CO. | 35 | 5.50000 | .0066 | .0113 |
| | CLAY, CARROLL | 43 | .53664 | .0007 | .0011 |
| | CLAY, THOMAS W. | 44 | 2.58936 | .0031 | .0053 |
| | CONTINENTAL OIL CO. | 55 | 11.78216 | .0141 | .0243 |
| | FLOYD, GALLANT | 105 | 1.56250 | .0019 | .0032 |
| | FLOYD, G. W. | 110 | .78125 | .0009 | .0016 |
| | GLESBY, VEDA MAE | 155 | .68750 | .0009 | .0014 |
| | GREENBRIER 60 LIMITED | 170 | 17.50000 | .0210 | .0360 |
| | GREENBRIER 61 LIMITED | 175 | 10.26042 | .0123 | .0211 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 3.12500 | .0038 | .0064 |
| | HUDNALL, JAMES | 220 | 5.00000 | .0060 | .0103 |
| | PHILLIPS, LEONARD W. | 335 | 3.43750 | .0041 | .0071 |
| | PIRTLE, G. W. | 350 | 5.00000 | .0061 | .0103 |
| | PROTHRO, JOHN E. | 356 | 2.58936 | .0031 | .0053 |
| | RAUCH, GERALD | 360 | .68750 | .0008 | .0014 |
| | SKLAR, ALBERT | 425 | 3.43750 | .0041 | .0071 |
| | WALKER, JAMES G., JR. | 467 | 2.26581 | .0027 | .0047 |
| | WARD, TRAVIS | 470 | 9.50750 | .0115 | .0195 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 13.75000 | .0165 | .0283 |
| 443 | HUNT OIL    MIXON | | | .0288 | .0482 |
| | HUMBLE OIL & REFINING CO. | 225 | 50.00000 | .0144 | .0241 |
| | HUNT OIL CO. | 229 | 50.00000 | .0144 | .0241 |
| 444 | HUMBLE    FAIRWAY UNIT 3 | | | .2301 | .1921 |
| | HUMBLE OIL & REFINING CO. | 225 | 90.45625 | .2081 | .1738 |
| | LARUE, I. P., ESTATE | 239 | 9.54375 | .0220 | .0183 |
| 445 | HUMBLE    MIXON | | | .7742 | .6995 |
| | HUMBLE OIL & REFINING CO. | 225 | 100.00000 | .7742 | .6995 |
| 446 | HUNT IND    MYRICK UNIT | | | 1.1803 | .9403 |
| | HUNT INDUSTRIES | 228 | 100.00000 | 1.1803 | .9403 |
| 447 | HUNT IND    CARTWRIGHT UNIT | | | 1.1072 | .9077 |
| | HUNT INDUSTRIES | 228 | 100.00000 | 1.1072 | .9077 |
| 448 | TEXACO    DICKERSON UNIT | | | 1.1308 | .9195 |
| | HUNT INDUSTRIES | 228 | 18.87000 | .2134 | .1735 |
| | TEXACO, INC. | 455 | 81.13000 | .9174 | .7460 |
| 449 | ATLANTIC    J H DICKERSON UNIT | | | .9418 | .8249 |
| | ATLANTIC REFINING CO. | 20 | 68.46600 | .6448 | .5648 |
| | HUNT INDUSTRIES | 228 | 23.81460 | .2243 | .1964 |
| | HUNT OIL CO. | 229 | 1.11100 | .0105 | .0092 |
| | SUN OIL CO. | 450 | 6.60840 | .0622 | .0545 |
| 450 | ATLANTIC    CAMPBELL UNIT | | | 1.1243 | .9161 |
| | ATLANTIC REFINING CO. | 20 | 53.73984 | .6042 | .4923 |
| | HUNT OIL CO. | 229 | 46.26016 | .5201 | .4238 |
| 451 | RAYO    PAGITT UNIT | | | 1.0148 | .8616 |
| | RAYO OIL CO. | 365 | 50.00000 | .5074 | .4308 |
| | SECURE TRUSTS | 413 | 50.00000 | .5074 | .4308 |

TABLE III

| TRACT NO. | OPERATOR AND TRACT NAME WORKING INTEREST OWNERS | WIO CODE | PERCENT OWNERSHIP | UNIT PARTICIPATION (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|---|
| **452** | **FAIRWAY   WALKER** | | | .9903 | .8493 |
| | CITIES SERVICE OIL CO. | 35 | 5.50000 | .0545 | .0467 |
| | CLAY, CARROLL | 43 | .53665 | .0053 | .0046 |
| | CLAY, THOMAS W. | 44 | 2.58936 | .0256 | .0220 |
| | CONTINENTAL OIL CO. | 55 | 11.78216 | .1167 | .1000 |
| | FLOYD, GALLANT | 105 | 1.56250 | .0155 | .0133 |
| | GARRETT, F. M. | 145 | .78125 | .0077 | .0066 |
| | GLESBY, VEDA MAE | 155 | .68750 | .0068 | .0059 |
| | GREENBRIER 60 LIMITED | 170 | 17.50000 | .1733 | .1486 |
| | GREENBRIER 61 LIMITED | 175 | 10.26042 | .1016 | .0871 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 3.12500 | .0310 | .0266 |
| | HUDNALL, JAMES | 220 | 5.00000 | .0495 | .0424 |
| | PHILLIPS, LEONARD W. | 335 | 3.43750 | .0340 | .0292 |
| | PIRTLE, G. W. | 350 | 5.00000 | .0496 | .0425 |
| | PROTHRO, JOHN E. | 356 | 2.58936 | .0256 | .0220 |
| | RAUCH, GERALD | 360 | .68750 | .0068 | .0058 |
| | SKLAR, ALBERT | 425 | 3.43750 | .0340 | .0292 |
| | WALKER, JAMES G., JR. | 467 | 2.26581 | .0225 | .0193 |
| | WARD, TRAVIS | 470 | 9.50749 | .0941 | .0807 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 13.75000 | .1362 | .1168 |
| **453** | **HUNT OIL   WALKER UNIT** | | | .9746 | .8169 |
| | CITIES SERVICE OIL CO. | 35 | .77263 | .0075 | .0063 |
| | CLAY, CARROLL | 43 | .07539 | .0008 | .0006 |
| | CLAY, THOMAS W. | 44 | .36375 | .0035 | .0030 |
| | CONTINENTAL OIL CO. | 55 | 4.09851 | .0400 | .0335 |
| | EDSON PETROLEUM CO. | 75 | 9.16990 | .0893 | .0749 |
| | FAIR, J. W. | 80 | 2.29247 | .0224 | .0187 |
| | FAIR, W. H. | 85 | 2.29247 | .0223 | .0187 |
| | FLOYD, GALLANT | 105 | .21950 | .0021 | .0018 |
| | FLOYD, G. W. | 110 | .10975 | .0011 | .0009 |
| | GLESBY, VEDA MAE | 155 | .09658 | .0010 | .0008 |
| | GREENBRIER 60 LIMITED | 170 | 2.45838 | .0239 | .0201 |
| | GREENBRIER 61 LIMITED | 175 | 1.44137 | .0141 | .0118 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | .28809 | .0028 | .0023 |
| | HUDNALL, JAMES | 220 | .70239 | .0068 | .0058 |
| | HUNT OIL CO. | 229 | 41.24653 | .4022 | .3371 |
| | PHILLIPS, A. O. | 320 | 2.29247 | .0223 | .0187 |
| | PHILLIPS, B. F. | 325 | 4.58495 | .0447 | .0374 |
| | PHILLIPS, B. F., JR. | 330 | 2.29247 | .0224 | .0188 |
| | PHILLIPS, LEONARD W. | 335 | .48290 | .0047 | .0039 |
| | PIRTLE, G. W. | 350 | .70239 | .0068 | .0058 |
| | PROTHRO, JOHN E. | 356 | .36375 | .0035 | .0029 |
| | RAUCH, GERALD | 360 | .09658 | .0010 | .0008 |
| | RAYO OIL CO. | 365 | 6.29649 | .0614 | .0514 |
| | RICHARDSON, MRS. GERTRUDE WINDSOR | 370 | 2.29247 | .0223 | .0188 |
| | SECURE TRUSTS | 413 | 6.29649 | .0614 | .0514 |
| | SKLAR, ALBERT | 425 | .48290 | .0047 | .0040 |
| | WALKER, JAMES G., JR. | 467 | .31830 | .0031 | .0026 |
| | WARD, TRAVIS | 470 | 1.33560 | .0130 | .0109 |
| | WINDSOR, MRS. GERTRUDE BUCKLEY | 475 | 4.58495 | .0447 | .0374 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 1.93158 | .0188 | .0158 |
| **454** | **FAIR   CAMPBELL UNIT** | | | .6941 | .6845 |
| | ARNOLD, G. W. | 15 | 3.47727 | .0241 | .0238 |
| | BRIGHT, SAM | 31 | 3.47728 | .0242 | .0238 |
| | CITIZENS 1ST NATL BK, TR ACCT 70 | 37 | .31477 | .0022 | .0022 |
| | CONTINENTAL OIL CO. | 55 | 2.28704 | .0158 | .0156 |
| | EDSON PETROLEUM CO. | 75 | .31478 | .0022 | .0022 |
| | FAIR, J. W. | 80 | 13.90911 | .0966 | .0952 |
| | FAIR, R. W. | 82 | 13.90911 | .0965 | .0952 |
| | FAIR, MRS. R. W. | 83 | 3.47727 | .0241 | .0238 |
| | FAIR, W. H. | 85 | 13.90911 | .0966 | .0952 |
| | FAIR OIL CO. | 95 | 14.53866 | .1009 | .0995 |
| | HASH, N. S. | 195 | 8.49892 | .0590 | .0582 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 3.81172 | .0264 | .0261 |
| | MURCHISON, J. W. | 295 | 8.49892 | .0590 | .0582 |
| | PIRTLE, WILLIAM | 351 | 6.09876 | .0424 | .0417 |
| | RAY, R. L. | 364 | 3.47728 | .0241 | .0238 |
| **455** | **FAIR   AUSTIN** | | | 1.0653 | .8868 |
| | CITIZENS 1ST NATL BK, TR ACCT 70 | 37 | 12.50000 | .1332 | .1109 |
| | EDSON PETROLEUM CO. | 75 | 12.50000 | .1331 | .1108 |
| | FAIR OIL CO. | 95 | 25.00000 | .2664 | .2217 |
| | HASH, N. S. | 195 | 25.00000 | .2663 | .2217 |
| | MURCHISON, J. W. | 295 | 25.00000 | .2663 | .2217 |
| **456** | **TEXACO   LLOYD UNIT** | | | .6914 | .6827 |
| | CONTINENTAL OIL CO. | 55 | 2.05264 | .0142 | .0140 |
| | EDSON PETROLEUM CO. | 75 | 8.21056 | .0568 | .0561 |
| | RICHARDSON, MRS. GERTRUDE WINDSOR | 370 | 2.05264 | .0142 | .0140 |
| | TEXACO, INC. | 455 | 83.57888 | .5778 | .5706 |
| | WINDSOR, MRS. GERTRUDE BUCKLEY | 475 | 4.10528 | .0284 | .0280 |
| **457** | **SUN   LLOYD UNIT B** | | | .1180 | .1775 |
| | SUN OIL CO. | 450 | 100.00000 | .1180 | .1775 |
| **458** | **SUN   LLOYD A** | | | .4047 | .5518 |
| | SUN OIL CO. | 450 | 100.00000 | .4047 | .5518 |
| **459** | **FRANKEL   CAIN** | | | .0048 | .0324 |
| | FRANKEL, DONALD | 115 | 12.50000 | .0006 | .0041 |
| | FRANKEL, FRANK | 116 | 25.00000 | .0012 | .0081 |
| | FRANKEL, GEORGE | 125 | 50.00000 | .0024 | .0162 |
| | FRANKEL, HARDING | 130 | 12.50000 | .0006 | .0040 |

Table III
Page 4

TABLE III

| TRACT NO. | OPERATOR AND TRACT NAME WORKING INTEREST OWNERS | WIO CODE | PERCENT OWNERSHIP | UNIT PARTICIPATION (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|---|
| 539 | HUNT PETR   GROUND | | | .0038 | .0050 |
| | HUNT PETROLEUM CORP. | 230 | 100.00000 | .0038 | .0050 |
| 540 | HUNT PETR   LEE | | | .0244 | .0767 |
| | HUNT PETROLEUM CORP. | 230 | 100.00000 | .0244 | .0767 |
| 541 | HUNT OIL   THRASHER | | | .1760 | .2078 |
| | HUNT OIL CO. | 229 | 100.00000 | .1760 | .2078 |
| 542 | HUNT OIL   THRASHER UNIT 2 | | | .7717 | .7216 |
| | HUNT OIL CO. | 229 | 26.45301 | .2041 | .1909 |
| | HUNT PETROLEUM CORP. | 230 | 73.54699 | .5676 | .5307 |
| 543 | ATLANTIC   LARUE | | | .7154 | .6244 |
| | ATLANTIC REFINING CO. | 20 | 100.00000 | .7154 | .6244 |
| 544 | HUNT OIL   THRASHER UNIT 1 | | | 1.1114 | .9090 |
| | HUNT OIL CO. | 229 | 100.00000 | 1.1114 | .9090 |
| 545 | HUNT OIL   HAMILTON UNIT | | | 1.2410 | .9721 |
| | ATLANTIC REFINING CO. | 20 | 32.54709 | .4039 | .3164 |
| | HUNT OIL CO. | 229 | 67.45291 | .8371 | .6557 |
| 546 | HUNT OIL   MILNER UNIT | | | 1.1733 | .9389 |
| | ATLANTIC REFINING CO. | 20 | 5.02557 | .0590 | .0472 |
| | HUNT INDUSTRIES | 228 | 57.63033 | .6761 | .5411 |
| | HUNT OIL CO. | 229 | 33.26109 | .3903 | .3123 |
| | LINDSEY, G. A. | 250 | 2.04150 | .0239 | .0191 |
| | REESE, C. CURTIS | 366 | 2.04151 | .0240 | .0192 |
| 547 | ATLANTIC   C P DICKERSON UNIT | | | 1.0254 | .8657 |
| | ATLANTIC REFINING CO. | 20 | 70.52120 | .7231 | .6105 |
| | HUMBLE OIL & REFINING CO. | 225 | 24.46343 | .2509 | .2118 |
| | HUNT OIL CO. | 229 | 5.01537 | .0514 | .0434 |
| 548 | ATLANTIC   MILNER UNIT | | | 1.2509 | .9797 |
| | ATLANTIC REFINING CO. | 20 | 51.19438 | .6404 | .5016 |
| | HUNT OIL CO. | 229 | 48.80562 | .6105 | .4781 |
| 549 | SUN   MILLER-HURT | | | 1.9273 | 1.6718 |
| | SUN OIL CO. | 450 | 100.00000 | 1.9273 | 1.6718 |
| 551 | HUNT OIL   TRAVIS UNIT | | | .8088 | .7585 |
| | CLARK, L. OWEN | 41 | .58464 | .0047 | .0044 |
| | CONTINENTAL OIL CO. | 55 | 2.68652 | .0218 | .0204 |
| | EDSON PETROLEUM CO. | 75 | 10.74610 | .0869 | .0815 |
| | FAIR, J. W. | 80 | 2.68652 | .0217 | .0204 |
| | FAIR, W. H. | 85 | 2.68652 | .0217 | .0204 |
| | FEINSTEIN, ETHEL | 101 | 1.46159 | .0119 | .0111 |
| | HUNT OIL CO. | 229 | 58.08006 | .4762 | .4466 |
| | KOSBERG, MRS. DOROTHY R. | 237 | 1.46159 | .0118 | .0111 |
| | PHILLIPS, A. O. | 320 | 2.68652 | .0217 | .0203 |
| | PHILLIPS, B. F. | 325 | 5.37305 | .0435 | .0408 |
| | PHILLIPS, B. F., JR. | 330 | 2.68652 | .0217 | .0204 |
| | RICHARDSON, MRS. GERTRUDE WINDSOR | 370 | 2.68652 | .0217 | .0203 |
| | WINDSOR, MRS. GERTRUDE BUCKLEY | 475 | 5.37305 | .0435 | .0408 |
| 552 | HUNT OIL   EMERSON & RILEY UNIT | | | .7600 | .7341 |
| | CLARK, L. OWEN | 41 | 3.31799 | .0252 | .0244 |
| | FEINSTEIN, ETHEL | 101 | 8.29499 | .0631 | .0609 |
| | HUMBLE OIL & REFINING CO. | 225 | 18.95625 | .1440 | .1391 |
| | HUNT OIL CO. | 229 | 61.13578 | .4647 | .4488 |
| | KOSBERG, MRS. DOROTHY R. | 237 | 8.29499 | .0630 | .0609 |
| 553 | HUNT OIL   BIZZELL UNIT | | | .7470 | .7276 |
| | ATLANTIC REFINING CO. | 20 | 4.50282 | .0336 | .0328 |
| | CONTINENTAL OIL CO. | 55 | 1.74914 | .0131 | .0127 |
| | EDSON PETROLEUM CO. | 75 | 6.99656 | .0523 | .0509 |
| | FAIR, J. W. | 80 | .47027 | .0035 | .0034 |
| | FAIR, W. H. | 85 | .47027 | .0035 | .0034 |
| | HUMBLE OIL & REFINING CO. | 225 | 33.60375 | .2510 | .2445 |
| | HUNT OIL CO. | 229 | 39.35055 | .2940 | .2864 |
| | PHILLIPS, A. O. | 320 | .47027 | .0035 | .0034 |
| | PHILLIPS, B. F. | 325 | .94055 | .0070 | .0068 |
| | PHILLIPS, B. F., JR. | 330 | .47027 | .0035 | .0034 |
| | RICHARDSON, MRS. GERTRUDE WINDSOR | 370 | 1.74914 | .0131 | .0128 |
| | SUN OIL CO. | 450 | 5.72813 | .0428 | .0416 |
| | WINDSOR, MRS. GERTRUDE BUCKLEY | 475 | 3.49828 | .0261 | .0255 |

Table III
Page 5

TABLE III

| TRACT NO. | OPERATOR AND TRACT NAME | WORK INT. OWNER | PERCENT OWNERSHIP | UNIT PARTICIPATION (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|---|
| 554 | FAIRWAY   LUPKIN C UNIT | | | .7360 | .7221 |
| | CITIES SERVICE OIL CO. | 35 | 5.50000 | .0405 | .0397 |
| | CLAY, CARROLL | 43 | .53665 | .0039 | .0039 |
| | CLAY, THOMAS W. | 44 | 2.58936 | .0191 | .0187 |
| | CONTINENTAL OIL CO. | 55 | 11.78215 | .0867 | .0851 |
| | FLOYD, GALLANT | 105 | 1.56250 | .0115 | .0113 |
| | FLOYD, G. W. | 110 | .78125 | .0058 | .0056 |
| | GLESBY, VEDA MAE | 155 | .68750 | .0050 | .0050 |
| | GREENBRIER 60 LIMITED | 170 | 17.50000 | .1288 | .1263 |
| | GREENBRIER 61 LIMITED | 175 | 10.26042 | .0755 | .0741 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 3.12500 | .0230 | .0226 |
| | HUDNALL, JAMES | 220 | 5.00000 | .0368 | .0361 |
| | PHILLIPS, LEONARD W. | 335 | 3.43750 | .0253 | .0248 |
| | PIRTLE, G. W. | 350 | 5.00000 | .0368 | .0361 |
| | PROTHRO, JOHN E. | 356 | 2.58936 | .0191 | .0187 |
| | RAUCH, GERALD | 360 | .68750 | .0050 | .0050 |
| | SKLAR, ALBERT | 425 | 3.43750 | .0253 | .0248 |
| | WALKER, JAMES G., JR. | 467 | 2.26581 | .0167 | .0164 |
| | WARD, TRAVIS | 470 | 9.50750 | .0700 | .0686 |
| | WINNELL 1961 EXPLORATION CO. | 485 | 13.75000 | .1012 | .0993 |
| 555 | FAIRWAY   LUPKIN A 1 | | | .6740 | .6912 |
| | CITIES SERVICE OIL CO. | 35 | 5.70298 | .0384 | .0394 |
| | CLAY, CARROLL | 43 | .84446 | .0057 | .0059 |
| | CLAY, THOMAS W. | 44 | 4.07457 | .0275 | .0281 |
| | CONTINENTAL OIL CO. | 55 | 17.53391 | .1182 | .1212 |
| | FLOYD, GALLANT | 105 | 1.62020 | .0109 | .0112 |
| | FLOYD, G. W. | 110 | .81010 | .0055 | .0056 |
| | GLESBY, VEDA MAE | 155 | .71285 | .0048 | .0049 |
| | GREENBRIER 60 LIMITED | 170 | 17.50000 | .1179 | .1210 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 3.24031 | .0218 | .0224 |
| | HUDNALL, JAMES | 220 | 7.86940 | .0531 | .0544 |
| | PHILLIPS, LEONARD W. | 335 | 1.71880 | .0116 | .0119 |
| | PIRTLE, G. W. | 350 | 2.50000 | .0168 | .0172 |
| | PROTHRO, JOHN E. | 356 | 4.07457 | .0275 | .0282 |
| | RAUCH, GERALD | 360 | .71285 | .0048 | .0049 |
| | SKLAR, ALBERT | 425 | 1.71880 | .0116 | .0119 |
| | SKLAR & PHILLIPS, INC. | 426 | 3.69135 | .0248 | .0255 |
| | WALKER, JAMES G., JR. | 467 | 3.56543 | .0241 | .0247 |
| | WARD, TRAVIS | 470 | 7.85222 | .0529 | .0543 |
| | WINNELL 1961 EXPLORATION CO. | 485 | 14.25760 | .0961 | .0985 |
| 556 | FAIRWAY   LUPKIN B UNIT | | | .5829 | .6456 |
| | CITIES SERVICE OIL CO. | 35 | 5.70298 | .0332 | .0368 |
| | CLAY, CARROLL | 43 | .84446 | .0050 | .0055 |
| | CLAY, THOMAS W. | 44 | 4.07457 | .0237 | .0263 |
| | CONTINENTAL OIL CO. | 55 | 17.53391 | .1022 | .1132 |
| | FLOYD, GALLANT | 105 | 1.62020 | .0095 | .0104 |
| | FLOYD, G. W. | 110 | .81010 | .0047 | .0053 |
| | GLESBY, VEDA MAE | 155 | .71285 | .0041 | .0046 |
| | GREENBRIER 60 LIMITED | 170 | 17.50000 | .1020 | .1129 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 3.24031 | .0189 | .0210 |
| | HUDNALL, JAMES | 220 | 7.86940 | .0459 | .0508 |
| | PHILLIPS, LEONARD W. | 335 | 1.71880 | .0100 | .0111 |
| | PIRTLE, G. W. | 350 | 2.50000 | .0146 | .0161 |
| | PROTHRO, JOHN E. | 356 | 4.07457 | .0237 | .0263 |
| | RAUCH, GERALD | 360 | .71285 | .0042 | .0046 |
| | SKLAR, ALBERT | 425 | 1.71880 | .0100 | .0111 |
| | SKLAR & PHILLIPS, INC. | 426 | 3.69135 | .0215 | .0238 |
| | WALKER, JAMES G., JR. | 467 | 3.56543 | .0208 | .0231 |
| | WARD, TRAVIS | 470 | 7.85222 | .0458 | .0507 |
| | WINNELL 1961 EXPLORATION CO. | 485 | 14.25760 | .0831 | .0920 |
| 557 | LEWIS   BURTIS | | | .0145 | .0466 |
| | BRACKEN, GLENN H. | 27 | 20.00000 | .0029 | .0093 |
| | BRACKEN, JEFF M. | 28 | 20.00000 | .0029 | .0093 |
| | BRACKEN, SAM T. | 29 | 20.00000 | .0029 | .0094 |
| | LEWIS, A. Y. | 242 | 16.66667 | .0024 | .0077 |
| | LEWIS, IDA BRACKEN | 243 | 3.33333 | .0005 | .0016 |
| | PRICE, ADDIE BRACKEN | 354 | 3.33333 | .0005 | .0015 |
| | PRICE, J. PAUL | 355 | 16.66667 | .0024 | .0078 |
| 558 | LUPKIN        FEE | | | .0232 | .0649 |
| | LUPKIN, OLGA | 268 | 100.00000 | .0232 | .0649 |
| 560 | ATLANTIC   BILLINGSLEY UNIT | | | .1229 | .2820 |
| | ATLANTIC REFINING CO. | 20 | 100.00000 | .1229 | .2820 |
| 561 | FRANKEL   ROBINSON | | | .0000 | .0022 |
| | FRANKEL, DONALD | 115 | 8.33333 | .0000 | .0002 |
| | FRANKEL, FRANK | 116 | 16.66667 | .0000 | .0004 |
| | FRANKEL, GEORGE | 125 | 33.33334 | .0000 | .0007 |
| | FRANKEL, HARDING | 130 | 8.33333 | .0000 | .0002 |
| | HUGHES, KERNEL | 223 | 33.33333 | .0000 | .0007 |
| 637 | HUNT PETR   PAGITT | | | .0218 | .0320 |
| | HUNT PETROLEUM CORP. | 230 | 100.00000 | .0218 | .0320 |
| 638 | HUNT PETR   DOUGLAS | | | .0228 | .0280 |
| | HUNT PETROLEUM CORP. | 230 | 100.00000 | .0228 | .0280 |

Table III
Page 6

TABLE III

| TRACT NO. | OPERATOR AND TRACT NAME WORKING INTEREST OWNERS | WIO CODE | PERCENT OWNERSHIP | UNIT PARTICIPATION (PERCENT) | |
|---|---|---|---|---|---|
| | | | | PHASE II | PHASE I |
| 639 | HUNT PETR   WINSTON UNIT 2 | | | .6530 | .6278 |
| | ATLANTIC REFINING CO. | 20 | 26.09023 | .1704 | .1638 |
| | DAY, W. S. | 62 | .14155 | .0009 | .0009 |
| | GRAHAM, RALPH E. | 160 | .14155 | .0009 | .0009 |
| | HUNT PETROLEUM CORP. | 230 | 71.07875 | .4642 | .4462 |
| | KIRBY PETROLEUM CO. | 235 | 2.54792 | .0166 | .0160 |
| 640 | HUNT PETR   RICHARDS UNIT | | | .3056 | .3237 |
| | ATLANTIC REFINING CO. | 20 | 14.40062 | .0440 | .0466 |
| | CITIES SERVICE OIL CO. | 35 | .78685 | .0024 | .0026 |
| | CLAY, CARROLL | 43 | .07678 | .0002 | .0002 |
| | CLAY, THOMAS W. | 44 | .37044 | .0012 | .0012 |
| | CONTINENTAL OIL CO. | 55 | 1.68558 | .0051 | .0055 |
| | FLOYD, GALLANT | 105 | .22354 | .0007 | .0007 |
| | FLOYD, G. W. | 110 | .11177 | .0004 | .0004 |
| | GLESBY, VEDA MAE | 155 | .09835 | .0003 | .0003 |
| | GREENBRIER 60 LIMITED | 170 | 2.50360 | .0076 | .0081 |
| | GREENBRIER 61 LIMITED | 175 | 1.46788 | .0045 | .0047 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | .44707 | .0014 | .0015 |
| | HUDNALL, JAMES | 220 | .71531 | .0021 | .0023 |
| | HUNT, CAROLINE, TRUST ESTATE | 227 | 6.09501 | .0187 | .0197 |
| | HUNT PETROLEUM CORP. | 230 | 52.29562 | .1598 | .1693 |
| | KILLINGSWORTH, S. H. | 233 | 11.28969 | .0345 | .0365 |
| | PHILLIPS, LEONARD W. | 335 | .49178 | .0015 | .0016 |
| | PIRTLE, G. W. | 350 | .71531 | .0022 | .0024 |
| | PROTHRO, JOHN E. | 356 | .37044 | .0011 | .0011 |
| | RAUCH, GERALD | 360 | .09835 | .0003 | .0004 |
| | SKLAR, ALBERT | 425 | .49178 | .0015 | .0016 |
| | STRONG, JACK B. | 445 | 1.61281 | .0049 | .0052 |
| | WALKER, JAMES G., JR. | 467 | .32415 | .0010 | .0010 |
| | WARD, TRAVIS | 470 | 1.36016 | .0042 | .0044 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 1.96711 | .0060 | .0064 |
| 641 | HUNT OIL   POYNOR WEST UNIT | | | .8151 | .7616 |
| | ATLANTIC REFINING CO. | 20 | 7.48687 | .0610 | .0570 |
| | COFFIELD, H. H. | 45 | 11.39250 | .0929 | .0868 |
| | GENECOV, A. S. | 150 | 1.71531 | .0140 | .0130 |
| | HUNT OIL CO. | 229 | 20.07875 | .1636 | .1530 |
| | HUNT PETROLEUM CORP. | 230 | 24.97898 | .2036 | .1902 |
| | KILLINGSWORTH, S. H. | 233 | 13.42852 | .1095 | .1023 |
| | LARUE, DILLARD | 238 | 2.13875 | .0174 | .0163 |
| | PICKENS, W. L., TRUSTEE JTP #3 | 347 | 10.30438 | .0840 | .0784 |
| | ROOSTH, ISADORE, IND. EXECUTOR | 375 | .24504 | .0020 | .0019 |
| | ROOSTH, ISADORE, SUB. EXECUTOR | 380 | .24504 | .0020 | .0019 |
| | ROOSTH, ISADORE, TR JR TRUST | 385 | .24504 | .0020 | .0018 |
| | ROOSTH, H. P. | 390 | .24504 | .0020 | .0019 |
| | ROOSTH, ISADORE | 395 | .24505 | .0020 | .0019 |
| | ROOSTH, SOLOMON | 400 | .24505 | .0020 | .0018 |
| | ROOSTH, WILEY | 405 | .24505 | .0020 | .0019 |
| | SANDS, CAROLINE HUNT | 412 | 6.76063 | .0551 | .0515 |
| 642 | HUNT OIL   POYNOR NE UNIT | | | .9241 | .8162 |
| | ATLANTIC REFINING CO. | 20 | 5.53186 | .0511 | .0452 |
| | CITIES SERVICE OIL CO. | 35 | .18673 | .0017 | .0015 |
| | CLAY, CARROLL | 43 | .01822 | .0002 | .0001 |
| | CLAY, THOMAS W. | 44 | .08791 | .0008 | .0007 |
| | COFFIELD, H. H. | 45 | 10.67936 | .0987 | .0872 |
| | CONTINENTAL OIL CO. | 55 | .33634 | .0031 | .0028 |
| | FLOYD, GALLANT | 105 | .05301 | .0005 | .0004 |
| | FLOYD, G. W. | 110 | .02652 | .0003 | .0002 |
| | GLESBY, VEDA MAE | 155 | .11807 | .0010 | .0010 |
| | GREENBRIER 61 LIMITED | 175 | 4.73163 | .0438 | .0386 |
| | HEADWATERS OIL CO. | 200 | 1.76813 | .0163 | .0144 |
| | HUDNALL, JAMES | 220 | .50925 | .0047 | .0042 |
| | HUNT OIL CO. | 229 | 34.22624 | .3163 | .2793 |
| | HUNT PETROLEUM CORP. | 230 | 31.25061 | .2888 | .2551 |
| | PHILLIPS, LEONARD W. | 335 | .92187 | .0085 | .0075 |
| | PROTHRO, JOHN E. | 356 | .08791 | .0008 | .0007 |
| | RAUCH, GERALD | 360 | .11807 | .0011 | .0010 |
| | RAUCH, LEONARD | 361 | .09473 | .0009 | .0008 |
| | SKLAR, ALBERT | 425 | .92187 | .0085 | .0075 |
| | SPENCER, DIANNE T. | 430 | 5.57062 | .0515 | .0455 |
| | WALKER, JAMES G., JR. | 467 | .07692 | .0007 | .0006 |
| | WARD, TRAVIS | 470 | .32279 | .0030 | .0026 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 2.36134 | .0218 | .0193 |
| 643 | TEXACO   MARTIN UNIT | | | 1.0856 | .8969 |
| | ATLANTIC REFINING CO. | 20 | 5.71813 | .0621 | .0513 |
| | CITIES SERVICE OIL CO. | 35 | 23.94750 | .2600 | .2148 |
| | GREENBRIER 61 LIMITED | 175 | .77525 | .0084 | .0069 |
| | HUMBLE OIL & REFINING CO. | 225 | 19.80750 | .2150 | .1777 |
| | PERRYMAN, W. C. | 315 | .38812 | .0042 | .0035 |
| | TEXACO, INC. | 455 | 49.36250 | .5359 | .4427 |
| 644 | HUMBLE   FAIRWAY UNIT 2 | | | 1.2140 | .9611 |
| | GREENBRIER 61 LIMITED | 175 | 3.62930 | .0441 | .0349 |
| | HUMBLE OIL & REFINING CO. | 225 | 88.60000 | .1.0756 | .8515 |
| | HUNT OIL CO. | 229 | 5.28750 | .0642 | .0508 |
| | PERRYMAN, W. C. | 315 | 2.48320 | .0301 | .0239 |
| 645 | PICKENS   TRAVIS UNIT | | | 1.1482 | .9282 |
| | HUMBLE OIL & REFINING CO. | 225 | 60.46875 | .6943 | .5613 |
| | HUNT OIL CO. | 229 | 1.00938 | .0116 | .0093 |
| | PICKENS, R. H. | 344 | 19.26094 | .2211 | .1788 |
| | PICKENS, W. L., TRUSTEE JTP #2 | 346 | 19.26093 | .2212 | .1788 |

Table III
Page 7

TABLE III

| TRACT NO. | OPERATOR AND TRACT NAME WORKING INTEREST OWNERS | WIO CODE | PERCENT OWNERSHIP | UNIT PARTICIPATION (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|---|
| 646 | HUMBLE   FAIRWAY UNIT 1 | | | 1.1690 | .9387 |
| | HUMBLE OIL & REFINING CO. | 225 | 77.48125 | .9058 | .7273 |
| | HUNT OIL CO. | 229 | 22.51875 | .2632 | .2114 |
| 647 | ATLANTIC   MELTON UNIT | | | 1.0115 | .8598 |
| | ATLANTIC REFINING CO. | 20 | 100.00000 | 1.0115 | .8598 |
| 648 | BIRDSONG-GABRIEL   WESTBROOK UNIT | | | .9929 | .7947 |
| | BIRDSONG-GABRIEL OIL CO. | 25 | 75.00000 | .7447 | .5960 |
| | DANIEL, V. P. | 60 | 12.50000 | .1241 | .0994 |
| | TRANT, SAM | 460 | 12.50000 | .1241 | .0993 |
| 649 | PICKENS   FISHER UNIT | | | 1.1461 | .9272 |
| | CITIES SERVICE OIL CO. | 35 | .41645 | .0048 | .0039 |
| | CLAY, CARROLL | 43 | .04064 | .0004 | .0003 |
| | CLAY, THOMAS W. | 44 | .19606 | .0023 | .0019 |
| | CONTINENTAL OIL CO. | 55 | .89215 | .0102 | .0082 |
| | FLOYD, GALLANT | 105 | .11831 | .0014 | .0011 |
| | FLOYD, G. W. | 110 | .05915 | .0006 | .0006 |
| | GLESBY, VEDA MAE | 155 | .05206 | .0006 | .0005 |
| | GREENBRIER 60 LIMITED | 170 | 1.32508 | .0152 | .0122 |
| | GREENBRIER 61 LIMITED | 175 | .77691 | .0089 | .0072 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | .23662 | .0027 | .0022 |
| | HUDNALL, JAMES | 220 | .37860 | .0044 | .0036 |
| | HUNT OIL CO. | 229 | 1.22500 | .0140 | .0113 |
| | PHILLIPS, LEONARD W. | 335 | .26028 | .0030 | .0024 |
| | PICKENS, W. L., TRUSTEE JTP #1 | 345 | 30.23590 | .3465 | .2804 |
| | PICKENS, W. L., TRUSTEE RHP #3 | 348 | 30.23590 | .3466 | .2803 |
| | PIRTLE, G. W. | 350 | .37860 | .0043 | .0035 |
| | PROTHRO, JOHN E. | 356 | .19606 | .0023 | .0018 |
| | RAUCH, GERALD | 360 | .05206 | .0006 | .0005 |
| | SKLAR, ALBERT | 425 | .26028 | .0029 | .0024 |
| | SUN OIL CO. | 450 | 30.73130 | .3523 | .2850 |
| | WALKER, JAMES G., JR. | 467 | .17156 | .0019 | .0016 |
| | WARD, TRAVIS | 470 | .71989 | .0083 | .0066 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 1.04114 | .0119 | .0097 |
| 650 | PICKENS   GOWER UNIT | | | 1.0647 | .8865 |
| | HUMBLE OIL & REFINING CO. | 225 | 30.17300 | .3213 | .2675 |
| | LOETTERLE, G. J. | 260 | 2.77100 | .0295 | .0245 |
| | PICKENS, W. L., TRUSTEE JTP #1 | 345 | 32.14250 | .3422 | .2850 |
| | PICKENS, W. L., TRUSTEE RHP #3 | 348 | 32.14250 | .3422 | .2849 |
| | PIRTLE, WILLIAM | 351 | 2.77100 | .0295 | .0246 |
| 651 | HUNT OIL   WESTBROOK UNIT | | | 1.1491 | .9190 |
| | CITIES SERVICE OIL CO. | 35 | 1.12704 | .0130 | .0104 |
| | CLAY, CARROLL | 43 | .10997 | .0012 | .0010 |
| | CLAY, THOMAS W. | 44 | .53060 | .0061 | .0048 |
| | CONTINENTAL OIL CO. | 55 | 21.41393 | .2461 | .1968 |
| | EDSON PETROLEUM CO. | 75 | 16.13566 | .1854 | .1483 |
| | FLOYD, GALLANT | 105 | .32018 | .0037 | .0030 |
| | FLOYD, G. W. | 110 | .16009 | .0018 | .0014 |
| | GLESBY, VEDA MAE | 155 | .14088 | .0016 | .0013 |
| | GREENBRIER 60 LIMITED | 170 | 3.58605 | .0412 | .0330 |
| | GREENBRIER 61 LIMITED | 175 | 2.10254 | .0242 | .0193 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | .64037 | .0074 | .0059 |
| | HUDNALL, JAMES | 220 | 1.02459 | .0117 | .0094 |
| | HUNT OIL CO. | 229 | 32.27132 | .3709 | .2966 |
| | PHILLIPS, LEONARD W. | 335 | .70440 | .0081 | .0065 |
| | PIRTLE, G. W. | 350 | 1.02459 | .0117 | .0094 |
| | PROTHRO, JOHN E. | 356 | .53060 | .0061 | .0049 |
| | RAUCH, GERALD | 360 | .14088 | .0016 | .0012 |
| | RICHARDSON, MRS. GERTRUDE WINDSOR | 370 | 4.03392 | .0464 | .0371 |
| | SKLAR, ALBERT | 425 | .70440 | .0081 | .0065 |
| | WALKER, JAMES G., JR. | 467 | .46430 | .0053 | .0043 |
| | WARD, TRAVIS | 470 | 1.94825 | .0224 | .0179 |
| | WINDSOR, MRS. GERTRUDE BUCKLEY | 475 | 8.06783 | .0927 | .0741 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 2.81761 | .0324 | .0259 |
| 652 | ATLANTIC   WESTBROOK | | | .9795 | .8439 |
| | ATLANTIC REFINING CO. | 20 | 50.00000 | .4898 | .4220 |
| | CONTINENTAL OIL CO. | 55 | 6.25000 | .0612 | .0527 |
| | EDSON PETROLEUM CO. | 75 | 25.00000 | .2448 | .2110 |
| | RICHARDSON, MRS. GERTRUDE WINDSOR | 370 | 6.25000 | .0613 | .0527 |
| | WINDSOR, MRS. GERTRUDE BUCKLEY | 475 | 12.50000 | .1224 | .1055 |
| 653 | HUNT OIL   CAMPBELL UNIT | | | .8428 | .7585 |
| | HUNT OIL CO. | 229 | 100.00000 | .8428 | .7585 |

Table III
Page 8

TABLE III                                                                      PAGE NO.   9

| TRACT NO. | OPERATOR AND TRACT NAME<br>WORKING INTEREST OWNERS | WIO CODE | PERCENT OWNERSHIP | UNIT PARTICIPATION (PERCENT) | |
|---|---|---|---|---|---|
| | | | | PHASE II | PHASE I |
| **654** | **FAIRWAY    LUPKIN D UNIT** | | | .6377 | .6094 |
| | CITIES SERVICE OIL CO. | 35 | 5.50000 | .0351 | .0335 |
| | CLAY, CARROLL | 43 | .53665 | .0034 | .0033 |
| | CLAY, THOMAS W. | 44 | 2.58936 | .0165 | .0158 |
| | CONTINENTAL OIL CO. | 55 | 11.78215 | .0751 | .0718 |
| | FLOYD, GALLANT | 105 | 1.56250 | .0100 | .0095 |
| | FLOYD, G. W. | 110 | .78125 | .0050 | .0048 |
| | GLESBY, VEDA MAE | 155 | .68750 | .0044 | .0041 |
| | GREENBRIER 60 LIMITED | 170 | 17.50000 | .1116 | .1067 |
| | GREENBRIER 61 LIMITED | 175 | 10.26042 | .0654 | .0625 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 3.12500 | .0199 | .0191 |
| | HUDNALL, JAMES | 220 | 5.00000 | .0319 | .0304 |
| | PHILLIPS, LEONARD W. | 335 | 3.43750 | .0219 | .0210 |
| | PIRTLE, G. W. | 350 | 5.00000 | .0319 | .0304 |
| | PROTHRO, JOHN E. | 356 | 2.58936 | .0165 | .0158 |
| | RAUCH, GERALD | 360 | .68750 | .0044 | .0042 |
| | SKLAR, ALBERT | 425 | 3.43750 | .0219 | .0210 |
| | WALKER, JAMES G., JR. | 467 | 2.26581 | .0145 | .0138 |
| | WARD, TRAVIS | 470 | 9.50750 | .0606 | .0579 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 13.75000 | .0877 | .0838 |
| **655** | **FAIRWAY    LUPKIN A 2** | | | .7235 | .7159 |
| | CITIES SERVICE OIL CO. | 35 | 5.70298 | .0413 | .0408 |
| | CLAY, CARROLL | 43 | .53665 | .0038 | .0039 |
| | CLAY, THOMAS W. | 44 | 2.58936 | .0188 | .0185 |
| | CONTINENTAL OIL CO. | 55 | 11.85134 | .0857 | .0849 |
| | FLOYD, GALLANT | 105 | 1.62020 | .0117 | .0115 |
| | FLOYD, G. W. | 110 | .81010 | .0059 | .0058 |
| | GLESBY, VEDA MAE | 155 | .71285 | .0052 | .0052 |
| | GREENBRIER 60 LIMITED | 170 | 17.50000 | .1266 | .1252 |
| | GREENBRIER 61 LIMITED | 175 | 10.26043 | .0742 | .0735 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 3.24031 | .0235 | .0232 |
| | HUDNALL, JAMES | 220 | 3.93450 | .0284 | .0282 |
| | HUDNALL, LOMETA | 221 | 1.96725 | .0143 | .0140 |
| | HUDNALL, OGDEN | 222 | 1.96725 | .0142 | .0141 |
| | PHILLIPS, LEONARD W. | 335 | 1.71880 | .0124 | .0123 |
| | PIRTLE, G. W. | 350 | 2.50000 | .0181 | .0179 |
| | PROTHRO, JOHN E. | 356 | 2.58936 | .0187 | .0186 |
| | RAUCH, GERALD | 360 | .71285 | .0052 | .0051 |
| | SKLAR, ALBERT | 425 | 1.71880 | .0124 | .0123 |
| | SKLAR & PHILLIPS, INC. | 426 | 3.69132 | .0267 | .0264 |
| | WALKER, JAMES G., JR. | 467 | 2.26581 | .0164 | .0162 |
| | WARD, TRAVIS | 470 | 7.85224 | .0568 | .0562 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 14.25760 | .1032 | .1021 |
| **656** | **EDSON    KILLIAN UNIT** | | | .5516 | .6232 |
| | CITIES SERVICE OIL CO. | 35 | 1.34912 | .0074 | .0084 |
| | CLAY, CARROLL | 43 | .11529 | .0007 | .0007 |
| | CLAY, THOMAS W. | 44 | .55629 | .0030 | .0035 |
| | COLONY GAS CO. | 50 | 1.68640 | .0093 | .0105 |
| | CONTINENTAL OIL CO. | 55 | 11.76150 | .0649 | .0733 |
| | EDSON PETROLEUM CO. | 75 | 36.50877 | .2014 | .2275 |
| | FLOYD, GALLANT | 105 | .42160 | .0023 | .0027 |
| | GLESBY, VEDA MAE | 155 | .16864 | .0010 | .0010 |
| | GREENBRIER 60 LIMITED | 170 | 4.72193 | .0260 | .0294 |
| | GREENBRIER 61 LIMITED | 175 | 2.27662 | .0126 | .0142 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | .84320 | .0046 | .0053 |
| | HUDNALL, JAMES | 220 | 1.34912 | .0075 | .0084 |
| | PHILLIPS, LEONARD W. | 335 | .84320 | .0046 | .0052 |
| | PIRTLE, G. W. | 350 | 1.34912 | .0075 | .0084 |
| | PROTHRO, JOHN E. | 356 | .55629 | .0030 | .0035 |
| | RAUCH, GERALD | 360 | .16864 | .0010 | .0011 |
| | RICHARDSON, MRS. GERTRUDE WINDSOR | 370 | 9.12719 | .0503 | .0568 |
| | SKLAR, ALBERT | 425 | .84320 | .0046 | .0053 |
| | WALKER, JAMES G., JR. | 467 | .48677 | .0027 | .0030 |
| | WARD, TRAVIS | 470 | 2.39672 | .0133 | .0150 |
| | WINDSOR, MRS. GERTRUDE BUCKLEY | 475 | 18.25438 | .1006 | .1137 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 4.21601 | .0233 | .0263 |
| **657** | **TEXACO    UNDERWOOD** | | | .2338 | .3183 |
| | FAIR OIL CO. | 95 | 25.00000 | .0585 | .0796 |
| | FRANKEL, DONALD | 115 | 3.12500 | .0073 | .0099 |
| | FRANKEL, FRANK | 116 | 6.25000 | .0146 | .0199 |
| | FRANKEL, GEORGE | 125 | 12.50000 | .0292 | .0398 |
| | FRANKEL, HARDING | 130 | 3.12500 | .0073 | .0100 |
| | TEXACO, INC. | 455 | 50.00000 | .1169 | .1591 |
| **658** | **GULF    WESTBROOK UNIT** | | | .4002 | .4850 |
| | CITIES SERVICE OIL CO. | 35 | 1.46104 | .0058 | .0071 |
| | CLAY, CARROLL | 43 | .13971 | .0006 | .0007 |
| | CLAY, THOMAS W. | 44 | .67409 | .0027 | .0032 |
| | COLONY GAS CO. | 50 | 1.82630 | .0073 | .0089 |
| | CONTINENTAL OIL CO. | 55 | 3.12702 | .0125 | .0152 |
| | FLOYD, GALLANT | 105 | .45660 | .0019 | .0022 |
| | GLESBY, VEDA MAE | 155 | .18263 | .0007 | .0009 |
| | GREENBRIER 60 LIMITED | 170 | 5.11350 | .0204 | .0248 |
| | GREENBRIER 61 LIMITED | 175 | 2.71470 | .0109 | .0131 |
| | GULF OIL CORP. | 180 | 70.78080 | .2833 | .3433 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | .91312 | .0036 | .0044 |
| | HUDNALL, JAMES | 220 | 1.46100 | .0059 | .0071 |
| | PHILLIPS, LEONARD W. | 335 | .91310 | .0036 | .0044 |
| | PIRTLE, G. W. | 350 | .71220 | .0029 | .0034 |
| | PROTHRO, JOHN E. | 356 | .67409 | .0027 | .0033 |
| | RAUCH, GERALD | 360 | .18263 | .0007 | .0009 |
| | SKLAR, ALBERT | 425 | .91310 | .0037 | .0044 |
| | WALKER, JAMES G., JR. | 467 | .58986 | .0023 | .0029 |
| | WARD, TRAVIS | 470 | 2.59891 | .0104 | .0126 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 4.56560 | .0183 | .0221 |

Table III
Page 9

TABLE III

| TRACT NO. | OPERATOR AND TRACT NAME WORKING INTEREST OWNERS | WIO CODE | PERCENT OWNERSHIP | UNIT PARTICIPATION (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|---|
| 659 | FAIRWAY   STEVENSON UNIT | | | .2574 | .4573 |
| | CITIES SERVICE OIL CO. | 35 | 5.00000 | .0129 | .0229 |
| | CLAY, CARROLL | 43 | .52728 | .0013 | .0024 |
| | CLAY, THOMAS W. | 44 | 2.54414 | .0066 | .0116 |
| | COLONY GAS CO. | 50 | 6.25000 | .0161 | .0286 |
| | CONTINENTAL OIL CO. | 55 | 11.60911 | .0298 | .0531 |
| | FLOYD, GALLANT | 105 | 1.56250 | .0041 | .0071 |
| | GLESBY, VEDA MAE | 155 | .62500 | .0016 | .0029 |
| | GREENBRIER 60 LIMITED | 170 | 17.50000 | .0450 | .0800 |
| | GREENBRIER 61 LIMITED | 175 | 10.10410 | .0260 | .0462 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 3.12500 | .0081 | .0143 |
| | HUDNALL, JAMES | 220 | 5.00000 | .0128 | .0229 |
| | PHILLIPS, LEONARD W. | 335 | 3.12500 | .0081 | .0143 |
| | PROTHRO, JOHN E. | 356 | 2.54414 | .0065 | .0116 |
| | RAUCH, GERALD | 360 | .62500 | .0016 | .0029 |
| | SKLAR, ALBERT | 425 | 3.12500 | .0081 | .0142 |
| | WALKER, JAMES G., JR. | 467 | 2.22624 | .0057 | .0102 |
| | WARD, TRAVIS | 470 | 8.88249 | .0229 | .0406 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 15.62500 | .0402 | .0715 |
| 660 | FAIRWAY   ABBOTT UNIT | | | .0534 | .1544 |
| | CITIES SERVICE OIL CO. | 35 | 5.00000 | .0027 | .0077 |
| | CLAY, CARROLL | 43 | .52728 | .0003 | .0008 |
| | CLAY, THOMAS W. | 44 | 2.54414 | .0013 | .0040 |
| | COLONY GAS CO. | 50 | 6.25000 | .0033 | .0096 |
| | CONTINENTAL OIL CO. | 55 | 11.60911 | .0062 | .0179 |
| | FLOYD, GALLANT | 105 | 1.56250 | .0009 | .0024 |
| | GLESBY, VEDA MAE | 155 | .62500 | .0003 | .0010 |
| | GREENBRIER 60 LIMITED | 170 | 17.50000 | .0094 | .0270 |
| | GREENBRIER 61 LIMITED | 175 | 10.10410 | .0054 | .0156 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 3.12500 | .0016 | .0049 |
| | HUDNALL, JAMES | 220 | 5.00000 | .0027 | .0077 |
| | PHILLIPS, LEONARD W. | 335 | 3.12500 | .0017 | .0048 |
| | PROTHRO, JOHN E. | 356 | 2.54414 | .0013 | .0039 |
| | RAUCH, GERALD | 360 | .62500 | .0004 | .0010 |
| | SKLAR, ALBERT | 425 | 3.12500 | .0016 | .0048 |
| | WALKER, JAMES G., JR. | 467 | 2.22624 | .0012 | .0035 |
| | WARD, TRAVIS | 470 | 8.88249 | .0048 | .0137 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 15.62500 | .0083 | .0241 |
| 661 | FAIRWAY   HENLEY UNIT | | | .1520 | .3628 |
| | CITIES SERVICE OIL CO. | 35 | 3.40490 | .0052 | .0124 |
| | CLAY, CARROLL | 43 | .56549 | .0008 | .0020 |
| | CLAY, THOMAS W. | 44 | 2.72853 | .0042 | .0099 |
| | COLONY GAS CO. | 50 | 4.25620 | .0065 | .0154 |
| | CONTINENTAL OIL CO. | 55 | 11.71649 | .0178 | .0426 |
| | FLOYD, GALLANT | 105 | 1.06410 | .0016 | .0038 |
| | FRANKEL, DONALD | 115 | 3.98764 | .0060 | .0145 |
| | FRANKEL, FRANK | 116 | 7.97527 | .0122 | .0289 |
| | FRANKEL, GEORGE | 125 | 15.95055 | .0242 | .0579 |
| | FRANKEL, HARDING | 130 | 3.98764 | .0061 | .0145 |
| | GLESBY, VEDA MAE | 155 | .42560 | .0006 | .0015 |
| | GREENBRIER 60 LIMITED | 170 | 11.91730 | .0181 | .0432 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 2.12806 | .0033 | .0078 |
| | HUDNALL, JAMES | 220 | 3.40490 | .0051 | .0123 |
| | PHILLIPS, LEONARD W. | 335 | 2.12810 | .0033 | .0077 |
| | PROTHRO, JOHN E. | 356 | 2.72853 | .0041 | .0099 |
| | RAUCH, GERALD | 360 | .42560 | .0007 | .0016 |
| | SKLAR, ALBERT | 425 | 2.12810 | .0032 | .0077 |
| | WALKER, JAMES G., JR. | 467 | 2.38760 | .0036 | .0087 |
| | WARD, TRAVIS | 470 | 6.04890 | .0092 | .0219 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 10.64050 | .0162 | .0386 |
| 662 | FAIRWAY   ABBOTT | | | .0017 | .0123 |
| | CITIES SERVICE OIL CO. | 35 | 5.00000 | .0001 | .0006 |
| | CLAY, CARROLL | 43 | .52728 | .0000 | .0001 |
| | CLAY, THOMAS W. | 44 | 2.54414 | .0000 | .0003 |
| | COLONY GAS CO. | 50 | 6.25000 | .0001 | .0008 |
| | CONTINENTAL OIL CO. | 55 | 11.60911 | .0002 | .0014 |
| | FLOYD, GALLANT | 105 | 1.56250 | .0001 | .0002 |
| | GLESBY, VEDA MAE | 155 | .62500 | .0000 | .0001 |
| | GREENBRIER 60 LIMITED | 170 | 17.50000 | .0003 | .0021 |
| | GREENBRIER 61 LIMITED | 175 | 10.10410 | .0001 | .0013 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 3.12500 | .0001 | .0003 |
| | HUDNALL, JAMES | 220 | 5.00000 | .0001 | .0007 |
| | PHILLIPS, LEONARD W. | 335 | 3.12500 | .0000 | .0003 |
| | PROTHRO, JOHN E. | 356 | 2.54414 | .0001 | .0004 |
| | RAUCH, GERALD | 360 | .62500 | .0000 | .0000 |
| | SKLAR, ALBERT | 425 | 3.12500 | .0000 | .0004 |
| | WALKER, JAMES G., JR. | 467 | 2.22624 | .0001 | .0003 |
| | WARD, TRAVIS | 470 | 8.88249 | .0001 | .0011 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 15.62500 | .0003 | .0019 |
| 663 | FAIRWAY   HOLMAN | | | .0004 | .0080 |
| | CITIES SERVICE OIL CO. | 35 | 5.00000 | .0000 | .0004 |
| | CLAY, CARROLL | 43 | .52728 | .0000 | .0000 |
| | CLAY, THOMAS W. | 44 | 2.54414 | .0000 | .0002 |
| | COLONY GAS CO. | 50 | 6.25000 | .0001 | .0005 |
| | CONTINENTAL OIL CO. | 55 | 11.60911 | .0000 | .0010 |
| | FLOYD, GALLANT | 105 | 1.56250 | .0000 | .0001 |
| | GLESBY, VEDA MAE | 155 | .62500 | .0000 | .0000 |
| | GREENBRIER 60 LIMITED | 170 | 17.50000 | .0001 | .0014 |
| | GREENBRIER 61 LIMITED | 175 | 10.10410 | .0000 | .0009 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 3.12500 | .0000 | .0002 |
| | HUDNALL, JAMES | 220 | 5.00000 | .0001 | .0004 |
| | PHILLIPS, LEONARD W. | 335 | 3.12500 | .0000 | .0003 |
| | PROTHRO, JOHN E. | 356 | 2.54414 | .0000 | .0002 |
| | RAUCH, GERALD | 360 | .62500 | .0000 | .0000 |
| | SKLAR, ALBERT | 425 | 3.12500 | .0000 | .0003 |
| | WALKER, JAMES G., JR. | 467 | 2.22624 | .0000 | .0001 |
| | WARD, TRAVIS | 470 | 8.88249 | .0000 | .0008 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 15.62500 | .0001 | .0012 |

Table III
Page 10

TABLE III

PAGE NO.  11

| TRACT NO. | OPERATOR AND TRACT NAME / WORKING INTEREST OWNERS | WIO CODE | PERCENT OWNERSHIP | UNIT PARTICIPATION (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|---|
| 701 | UNRESOLVED | | | .0073 | .0073 |
| | UNRESOLVED | 510 | 100.00000 | .0073 | .0073 |
| 702 | UNRESOLVED | | | .0074 | .0073 |
| | UNRESOLVED | 510 | 100.00000 | .0074 | .0073 |
| 735 | TEXACO   MILLER | | | .8104 | .7405 |
| | TEXACO, INC. | 455 | 100.00000 | .8104 | .7405 |
| 736 | HUNT PETR   LONG | | | .0011 | .0027 |
| | HUNT PETROLEUM CORP. | 230 | 100.00000 | .0011 | .0027 |
| 737 | HUNT PETR   MILLER-HOLLOWAY | | | 1.6615 | 1.8061 |
| | HUNT PETROLEUM CORP. | 230 | 100.00000 | 1.6615 | 1.8061 |
| 739 | HUNT PETR   WINSTON UNIT 1 | | | .6927 | .7005 |
| | HUNT PETROLEUM CORP. | 230 | 100.00000 | .6927 | .7005 |
| 741 | HUNT PETR   MILLER-HOLLOWAY UNIT 4 | | | .6010 | .6546 |
| | AMERADA PETROLEUM CORP. | 10 | 19.51625 | .1173 | .1278 |
| | HUNT PETROLEUM CORP. | 230 | 80.48375 | .4837 | .5268 |
| 742 | HUNT PETR   POYNOR EAST UNIT | | | .7264 | .6938 |
| | CITIES SERVICE OIL CO. | 35 | .76976 | .0056 | .0053 |
| | CLAY, CARROLL | 43 | .07510 | .0005 | .0006 |
| | CLAY, THOMAS W. | 44 | .36240 | .0027 | .0025 |
| | CONTINENTAL OIL CO. | 55 | 1.38657 | .0100 | .0096 |
| | FAIR OIL CO. | 95 | 6.63267 | .0482 | .0460 |
| | FLOYD, GALLANT | 105 | .21868 | .0016 | .0015 |
| | FLOYD, G. W. | 110 | .10935 | .0008 | .0008 |
| | GLESBY, VEDA MAE | 155 | .27488 | .0020 | .0019 |
| | GREENBRIER 61 LIMITED | 175 | 19.62851 | .1426 | .1362 |
| | HEADWATERS OIL CO. | 200 | 6.63468 | .0482 | .0460 |
| | HUDNALL, JAMES | 220 | 2.09935 | .0152 | .0146 |
| | HUNT PETROLEUM CORP. | 230 | 34.95385 | .2539 | .2425 |
| | PHILLIPS, LEONARD W. | 335 | 1.99977 | .0146 | .0139 |
| | PICKENS, W. L., TRUSTEE JTP #3 | 347 | 6.38500 | .0463 | .0443 |
| | PROTHRO, JOHN E. | 356 | .26240 | .0027 | .0025 |
| | RAUCH, GERALD | 360 | .27489 | .0020 | .0019 |
| | RAUCH, LEONARD | 361 | .17867 | .0013 | .0012 |
| | SKLAR, ALBERT | 425 | 1.99978 | .0145 | .0139 |
| | SPENCER, DIANNE T. | 430 | .87485 | .0063 | .0061 |
| | STRONG, JACK B. | 445 | 7.63335 | .0555 | .0529 |
| | WALKER, JAMES G., JR. | 467 | .51712 | .0023 | .0022 |
| | WARD, TRAVIS | 470 | 1.33062 | .0097 | .0093 |
| | WINNELL 1961 EXPLORATION CO. | 485 | 5.49775 | .0399 | .0381 |
| 743 | AMERADA   BRASHIER UNIT | | | .6181 | .6560 |
| | AMERADA PETROLEUM CORP. | 10 | 67.29383 | .4159 | .4414 |
| | TEXACO, INC. | 455 | 32.70617 | .2022 | .2146 |
| 744 | BIRDSONG-GABRIEL   THOMPSON UNIT | | | .8157 | .7635 |
| | BIRDSONG-GABRIEL OIL CO. | 25 | 35.96540 | .2934 | .2746 |
| | CLARK, G. C. | 39 | 17.98280 | .1467 | .1373 |
| | CONTINENTAL OIL CO. | 55 | 8.99140 | .0733 | .0686 |
| | DANIEL, V. P. | 60 | 8.99140 | .0733 | .0687 |
| | PROTHRO, JOHN E. | 356 | 1.09230 | .0090 | .0083 |
| | SHAW, D. J. | 415 | 1.09230 | .0089 | .0084 |
| | TEXACO, INC. | 455 | 25.88440 | .2111 | .1976 |
| 745 | FAIRWAY   SMITH UNIT | | | .7152 | .6125 |
| | CITIES SERVICE OIL CO. | 35 | 39.31919 | .2812 | .2408 |
| | CLAY, CARROLL | 43 | .34460 | .0025 | .0021 |
| | CLAY, THOMAS W. | 44 | 1.66270 | .0119 | .0102 |
| | CONTINENTAL OIL CO. | 55 | 7.56561 | .0541 | .0464 |
| | FLOYD, GALLANT | 105 | 1.00332 | .0072 | .0061 |
| | FLOYD, G. W. | 110 | .50166 | .0035 | .0031 |
| | GLESBY, VEDA MAE | 155 | .44146 | .0032 | .0027 |
| | GREENBRIER 60 LIMITED | 170 | 11.23719 | .0804 | .0688 |
| | GREENBRIER 61 LIMITED | 175 | 6.58847 | .0471 | .0404 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 2.00664 | .0143 | .0123 |
| | HUDNALL, JAMES | 220 | 3.21063 | .0230 | .0196 |
| | PHILLIPS, LEONARD W. | 335 | 2.20730 | .0158 | .0135 |
| | PIRTLE, G. W. | 350 | 3.21063 | .0229 | .0197 |
| | PROTHRO, JOHN E. | 356 | 1.66269 | .0119 | .0102 |
| | RAUCH, GERALD | 360 | .44146 | .0032 | .0027 |
| | SKLAR, ALBERT | 425 | 2.20730 | .0158 | .0135 |
| | WALKER, JAMES G., JR. | 467 | 1.45493 | .0104 | .0089 |
| | WARD, TRAVIS | 470 | 6.10500 | .0437 | .0374 |
| | WINNELL 1961 EXPLORATION CO. | 485 | 8.82922 | .0631 | .0541 |

Table III
Page 11

TABLE III

| TRACT NO. | OPERATOR AND TRACT NAME WORKING INTEREST OWNERS | WIO CODE | PERCENT OWNERSHIP | UNIT PARTICIPATION (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|---|
| 746 | CITIES SERVICE   EMERSON UNIT | | | 1.1013 | .9048 |
| | ATLANTIC REFINING CO. | 20 | 4.08750 | .0450 | .0370 |
| | CITIES SERVICE OIL CO. | 35 | 83.50346 | .9196 | .7555 |
| | CLAY, CARROLL | 43 | .07047 | .0008 | .0007 |
| | CLAY, THOMAS W. | 44 | .34002 | .0038 | .0030 |
| | CONTINENTAL OIL CO. | 55 | 1.54713 | .0170 | .0140 |
| | FLOYD, GALLANT | 105 | .20518 | .0023 | .0019 |
| | FLOYD, G. W. | 110 | .10259 | .0011 | .0009 |
| | GLESBY, VEDA MAE | 155 | .09028 | .0010 | .0008 |
| | GREENBRIER 60 LIMITED | 170 | 2.29797 | .0253 | .0208 |
| | GREENBRIER 61 LIMITED | 175 | 1.34732 | .0148 | .0122 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | .41035 | .0045 | .0037 |
| | HUDNALL, JAMES | 220 | .65656 | .0073 | .0060 |
| | PHILLIPS, LEONARD W. | 335 | .45139 | .0049 | .0041 |
| | PIRTLE, G. W. | 350 | .65656 | .0073 | .0059 |
| | PROTHRO, JOHN E. | 356 | .34002 | .0037 | .0031 |
| | RAUCH, GERALD | 360 | .09028 | .0010 | .0008 |
| | SKLAR, ALBERT | 425 | .45139 | .0050 | .0041 |
| | WALKER, JAMES G., JR. | 467 | .29753 | .0033 | .0027 |
| | WARD, TRAVIS | 470 | 1.24845 | .0137 | .0113 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 1.80555 | .0199 | .0163 |
| 747 | CITIES SERVICE   HANNA UNIT | | | .7781 | .7431 |
| | CITIES SERVICE OIL CO. | 35 | 100.00000 | .7781 | .7431 |
| 748 | FAIRWAY   DOUGLAS UNIT | | | 1.1797 | .9430 |
| | ATLANTIC REFINING CO. | 20 | 23.52510 | .2775 | .2218 |
| | CITIES SERVICE OIL CO. | 35 | 4.07379 | .0481 | .0385 |
| | CLAY, CARROLL | 43 | .39749 | .0047 | .0037 |
| | CLAY, THOMAS W. | 44 | 1.91792 | .0226 | .0181 |
| | CONTINENTAL OIL CO. | 55 | 11.13267 | .1319 | .1050 |
| | FLOYD, GALLANT | 105 | 1.15733 | .0137 | .0109 |
| | FLOYD, G. W. | 110 | .57867 | .0068 | .0054 |
| | GLESBY, VEDA MAE | 155 | .50923 | .0060 | .0048 |
| | GREENBRIER 60 LIMITED | 170 | 12.96212 | .1529 | .1223 |
| | GREENBRIER 61 LIMITED | 175 | 7.59980 | .0897 | .0716 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 2.31466 | .0273 | .0219 |
| | HUDNALL, JAMES | 220 | 3.70346 | .0437 | .0349 |
| | PHILLIPS, LEONARD W. | 335 | 2.54612 | .0300 | .0240 |
| | PIRTLE, G. W. | 350 | 3.70346 | .0437 | .0349 |
| | PROTHRO, JOHN E. | 356 | 1.91792 | .0226 | .0181 |
| | RAUCH, GERALD | 360 | .50923 | .0060 | .0048 |
| | SKLAR, ALBERT | 425 | 2.54612 | .0301 | .0240 |
| | WALKER, JAMES G., JR. | 467 | 1.67826 | .0198 | .0159 |
| | WARD, TRAVIS | 470 | 7.04213 | .0831 | .0664 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 10.18452 | .1201 | .0960 |
| 749 | FAIRWAY   J C TAYLOR UNIT | | | .9059 | .8060 |
| | CITIES SERVICE OIL CO. | 35 | 2.75000 | .0249 | .0222 |
| | CLAY, CARROLL | 43 | .26833 | .0024 | .0021 |
| | CLAY, THOMAS W. | 44 | 1.29468 | .0118 | .0105 |
| | CONTINENTAL OIL CO. | 55 | 55.89108 | .5063 | .4504 |
| | FLOYD, GALLANT | 105 | .78125 | .0071 | .0063 |
| | FLOYD, G. W. | 110 | .39063 | .0035 | .0032 |
| | GLESBY, VEDA MAE | 155 | .34375 | .0031 | .0028 |
| | GREENBRIER 60 LIMITED | 170 | 8.75000 | .0793 | .0705 |
| | GREENBRIER 61 LIMITED | 175 | 5.13021 | .0465 | .0413 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 1.56250 | .0141 | .0126 |
| | HUDNALL, JAMES | 220 | 2.50000 | .0227 | .0202 |
| | PHILLIPS, LEONARD W. | 335 | 1.71875 | .0155 | .0138 |
| | PIRTLE, G. W. | 350 | 2.50000 | .0227 | .0202 |
| | PROTHRO, JOHN E. | 356 | 1.29467 | .0117 | .0104 |
| | RAUCH, GERALD | 360 | .34375 | .0031 | .0028 |
| | SKLAR, ALBERT | 425 | 1.71875 | .0156 | .0138 |
| | WALKER, JAMES G., JR. | 467 | 1.13290 | .0103 | .0092 |
| | WARD, TRAVIS | 470 | 4.75375 | .0430 | .0383 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 6.87500 | .0623 | .0554 |
| 750 | FAIRWAY   MILLER-HURT 2 | | | 1.1657 | .9371 |
| | CITIES SERVICE OIL CO. | 35 | 2.75000 | .0321 | .0258 |
| | CLAY, CARROLL | 43 | .26833 | .0031 | .0025 |
| | CLAY, THOMAS W. | 44 | 1.29468 | .0151 | .0121 |
| | CONTINENTAL OIL CO. | 55 | 55.89108 | .6515 | .5238 |
| | FLOYD, GALLANT | 105 | .78125 | .0091 | .0073 |
| | FLOYD, G. W. | 110 | .39063 | .0046 | .0037 |
| | GLESBY, VEDA MAE | 155 | .34375 | .0040 | .0032 |
| | GREENBRIER 60 LIMITED | 170 | 8.75000 | .1020 | .0820 |
| | GREENBRIER 61 LIMITED | 175 | 5.13021 | .0598 | .0480 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 1.56250 | .0182 | .0147 |
| | HUDNALL, JAMES | 220 | 2.50000 | .0291 | .0234 |
| | PHILLIPS, LEONARD W. | 335 | 1.71875 | .0201 | .0161 |
| | PIRTLE, G. W. | 350 | 2.50000 | .0291 | .0235 |
| | PROTHRO, JOHN E. | 356 | 1.29467 | .0151 | .0121 |
| | RAUCH, GERALD | 360 | .34375 | .0040 | .0032 |
| | SKLAR, ALBERT | 425 | 1.71875 | .0200 | .0161 |
| | WALKER, JAMES G., JR. | 467 | 1.13290 | .0132 | .0106 |
| | WARD, TRAVIS | 470 | 4.75375 | .0555 | .0446 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 6.87500 | .0801 | .0644 |

Table III
Page 12

TABLE III                                                                        PAGE NO.  13

| TRACT NO. | OPERATOR AND TRACT NAME WORKING INTEREST OWNERS | WIO CODE | PERCENT OWNERSHIP | UNIT PARTICIPATION (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|---|
| 751 | FAIRWAY   MILLER-HURT 1 | | | .8365 | .7723 |
| | CITIES SERVICE OIL CO. | 35 | 2.75000 | .0230 | .0212 |
| | CLAY, CARROLL | 43 | .42223 | .0035 | .0033 |
| | CLAY, THOMAS W. | 44 | 2.03729 | .0171 | .0157 |
| | CONTINENTAL OIL CO. | 55 | 58.73235 | .4913 | .4536 |
| | FLOYD, GALLANT | 105 | .78125 | .0065 | .0061 |
| | FLOYD, G. W. | 110 | .39062 | .0033 | .0030 |
| | GLESBY, VEDA MAE | 155 | .34375 | .0029 | .0026 |
| | GREENBRIER 60 LIMITED | 170 | 8.75000 | .0731 | .0676 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 1.56250 | .0131 | .0121 |
| | HUDNALL, JAMES | 220 | 2.50000 | .0209 | .0193 |
| | PHILLIPS, LEONARD W. | 335 | 1.71875 | .0144 | .0133 |
| | PIRTLE, G. W. | 350 | 2.50000 | .0209 | .0193 |
| | PROTHRO, JOHN E. | 356 | 2.03729 | .0171 | .0157 |
| | RAUCH, GERALD | 360 | .34375 | .0028 | .0026 |
| | SKLAR, ALBERT | 425 | 1.71875 | .0144 | .0133 |
| | WALKER, JAMES G., JR. | 467 | 1.78272 | .0149 | .0138 |
| | WARD, TRAVIS | 470 | 4.75375 | .0398 | .0367 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 6.87500 | .0575 | .0531 |
| 752 | EDSON   BILLINGSLEY | | | 1.5985 | 1.4971 |
| | CONTINENTAL OIL CO. | 55 | 6.25000 | .0999 | .0936 |
| | EDSON PETROLEUM CO. | 75 | 75.00000 | 1.1989 | 1.1228 |
| | RICHARDSON, MRS. GERTRUDE WINDSOR | 370 | 6.25000 | .0999 | .0936 |
| | WINDSOR, MRS. GERTRUDE BUCKLEY | 475 | 12.50000 | .1998 | .1871 |
| 753 | FAIRWAY   HURT-BILLINGSLEY UNIT | | | .7130 | .6703 |
| | CITIES SERVICE OIL CO. | 35 | 1.84582 | .0132 | .0124 |
| | CLAY, CARROLL | 43 | .18010 | .0012 | .0012 |
| | CLAY, THOMAS W. | 44 | .86900 | .0062 | .0058 |
| | CONTINENTAL OIL CO. | 55 | 39.56936 | .2822 | .2652 |
| | EDSON PETROLEUM CO. | 75 | 24.65954 | .1758 | .1653 |
| | FLOYD, GALLANT | 105 | .52438 | .0037 | .0035 |
| | FLOYD, G. W. | 110 | .26218 | .0019 | .0018 |
| | GLESBY, VEDA MAE | 155 | .23074 | .0016 | .0015 |
| | GREENBRIER 60 LIMITED | 170 | 5.87305 | .0419 | .0394 |
| | GREENBRIER 61 LIMITED | 175 | 3.44342 | .0246 | .0231 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 1.04876 | .0075 | .0070 |
| | HUDNALL, JAMES | 220 | 1.67802 | .0119 | .0113 |
| | PHILLIPS, LEONARD W. | 335 | 1.15365 | .0082 | .0077 |
| | PIRTLE, G. W. | 350 | 1.67802 | .0120 | .0113 |
| | PROTHRO, JOHN E. | 356 | .86900 | .0062 | .0058 |
| | RAUCH, GERALD | 360 | .23074 | .0016 | .0015 |
| | RICHARDSON, MRS. GERTRUDE WINDSOR | 370 | 2.05496 | .0147 | .0138 |
| | SKLAR, ALBERT | 425 | 1.15364 | .0082 | .0077 |
| | WALKER, JAMES G., JR. | 467 | .76041 | .0054 | .0051 |
| | WARD, TRAVIS | 470 | 3.19075 | .0228 | .0214 |
| | WINDSOR, MRS. GERTRUDE BUCKLEY | 475 | 4.10992 | .0293 | .0276 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 4.61454 | .0329 | .0309 |
| 754 | CITIES SERVICE   MOORE C UNIT | | | .7560 | .7321 |
| | CITIES SERVICE OIL CO. | 35 | 73.47625 | .5555 | .5379 |
| | EVANS, FRANK | 76 | .05458 | .0004 | .0004 |
| | GULF OIL CORP. | 180 | 26.36000 | .1993 | .1930 |
| | HEDRICK, W. J. | 202 | .01365 | .0001 | .0001 |
| | MARSCHALL, H. W., JR. | 282 | .01365 | .0001 | .0001 |
| | STORY, S. A., JR. | 432 | .08187 | .0006 | .0006 |
| 755 | CITIES SERVICE   MOORE D UNIT | | | .7658 | .6915 |
| | CITIES SERVICE OIL CO. | 35 | 60.67750 | .4647 | .4196 |
| | FROST, JACK | 135 | 39.32250 | .3011 | .2719 |
| 756 | FAIRWAY   DABBS UNIT | | | .6229 | .6631 |
| | CITIES SERVICE OIL CO. | 35 | 2.13863 | .0133 | .0142 |
| | CLAY, CARROLL | 43 | .22553 | .0015 | .0015 |
| | CLAY, THOMAS W. | 44 | 1.08819 | .0068 | .0072 |
| | COLONY GAS CO. | 50 | 2.67327 | .0167 | .0177 |
| | CONTINENTAL OIL CO. | 55 | 4.96549 | .0309 | .0329 |
| | FAIR OIL CO. | 95 | 25.40613 | .1582 | .1685 |
| | FLOYD, GALLANT | 105 | .66832 | .0042 | .0044 |
| | GLESBY, VEDA MAE | 155 | .26732 | .0017 | .0018 |
| | GREENBRIER 60 LIMITED | 170 | 7.48516 | .0466 | .0497 |
| | GREENBRIER 61 LIMITED | 175 | 4.32177 | .0269 | .0286 |
| | HEADWATERS OIL CO. | 200 | 25.46998 | .1587 | .1689 |
| | HERTZ, CHARLES | 205 | 1.58788 | .0099 | .0105 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 1.33664 | .0083 | .0089 |
| | HUDNALL, JAMES | 220 | 2.13862 | .0133 | .0142 |
| | HUNTER, A. D. | 232 | 4.76365 | .0297 | .0316 |
| | PHILLIPS, LEONARD W. | 335 | 1.33663 | .0083 | .0088 |
| | PROTHRO, JOHN E. | 356 | 1.08819 | .0068 | .0072 |
| | RAUCH, GERALD | 360 | .26732 | .0016 | .0018 |
| | SKLAR, ALBERT | 425 | 1.33663 | .0084 | .0089 |
| | WALKER, JAMES G., JR. | 467 | .95222 | .0059 | .0063 |
| | WARD, TRAVIS | 470 | 3.79925 | .0237 | .0252 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 6.68318 | .0416 | .0443 |
| 757 | HEADWATERS   HICKS | | | .0039 | .0040 |
| | HEADWATERS OIL CO. | 200 | 100.00000 | .0039 | .0040 |

Table III
Page 13

TABLE III

| TRACT NO. | OPERATOR AND TRACT NAME WORKING INTEREST OWNERS | WIO CODE | PERCENT OWNERSHIP | UNIT PARTICIPATION (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|---|
| 758 | FAIRWAY   MOORE UNIT | | | .7162 | .7122 |
| | CITIES SERVICE OIL CO. | 35 | 5.00000 | .0358 | .0356 |
| | CLAY, CARROLL | 43 | .81735 | .0059 | .0058 |
| | CLAY, THOMAS W. | 44 | 3.94376 | .0282 | .0281 |
| | COLONY GAS CO. | 50 | 6.25000 | .0448 | .0445 |
| | CONTINENTAL OIL CO. | 55 | 16.96418 | .1215 | .1209 |
| | FLOYD, GALLANT | 105 | 1.56250 | .0112 | .0111 |
| | GLESBY, VEDA MAE | 155 | .62500 | .0044 | .0044 |
| | GREENBRIER 60 LIMITED | 170 | 17.50000 | .1254 | .1247 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 3.12500 | .0224 | .0222 |
| | HUDNALL, JAMES | 220 | 5.00000 | .0358 | .0356 |
| | PHILLIPS, LEONARD W. | 335 | 3.12500 | .0223 | .0223 |
| | PIRTLE, G. W. | 350 | .43270 | .0031 | .0031 |
| | PROTHRO, JOHN E. | 356 | 3.94376 | .0283 | .0281 |
| | RAUCH, GERALD | 360 | .62500 | .0045 | .0044 |
| | SKLAR, ALBERT | 425 | 3.12500 | .0223 | .0223 |
| | WALKER, JAMES G., JR. | 467 | 3.45096 | .0248 | .0245 |
| | WARD, TRAVIS | 470 | 8.88479 | .0636 | .0633 |
| | WINNELL 1961 EXPLORATION CO. | 485 | 15.62500 | .1119 | .1113 |
| 759 | FAIRWAY   WOFFORD UNIT | | | .4386 | .5573 |
| | CITIES SERVICE OIL CO. | 35 | 5.00000 | .0219 | .0279 |
| | CLAY, CARROLL | 43 | .83040 | .0037 | .0046 |
| | CLAY, THOMAS W. | 44 | 4.00672 | .0175 | .0223 |
| | COLONY GAS CO. | 50 | 6.25000 | .0275 | .0349 |
| | CONTINENTAL OIL CO. | 55 | 17.20510 | .0754 | .0958 |
| | FLOYD, GALLANT | 105 | 1.56250 | .0069 | .0087 |
| | GLESBY, VEDA MAE | 155 | .62500 | .0027 | .0035 |
| | GREENBRIER 60 LIMITED | 170 | 17.50000 | .0768 | .0976 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 3.12500 | .0137 | .0174 |
| | HUDNALL, JAMES | 220 | 5.00000 | .0219 | .0278 |
| | PHILLIPS, LEONARD W. | 335 | 3.12500 | .0137 | .0175 |
| | PROTHRO, JOHN E. | 356 | 4.00672 | .0176 | .0223 |
| | RAUCH, GERALD | 360 | .62500 | .0027 | .0035 |
| | SKLAR, ALBERT | 425 | 3.12500 | .0137 | .0174 |
| | WALKER, JAMES G., JR. | 467 | 3.50606 | .0154 | .0195 |
| | WARD, TRAVIS | 470 | 8.88250 | .0390 | .0495 |
| | WINNELL 1961 EXPLORATION CO. | 485 | 15.62500 | .0685 | .0871 |
| 760 | FAIRWAY   SCARBOROUGH | | | .0484 | .1405 |
| | CITIES SERVICE OIL CO. | 35 | 5.00000 | .0024 | .0070 |
| | CLAY, CARROLL | 43 | .52728 | .0003 | .0008 |
| | CLAY, THOMAS W. | 44 | 2.54414 | .0012 | .0035 |
| | COLONY GAS CO. | 50 | 6.25000 | .0030 | .0088 |
| | CONTINENTAL OIL CO. | 55 | 11.60911 | .0057 | .0163 |
| | FLOYD, GALLANT | 105 | 1.56250 | .0007 | .0022 |
| | GLESBY, VEDA MAE | 155 | .62500 | .0003 | .0009 |
| | GREENBRIER 60 LIMITED | 170 | 17.50000 | .0085 | .0246 |
| | GREENBRIER 61 LIMITED | 175 | 10.14410 | .0049 | .0142 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 3.12500 | .0015 | .0044 |
| | HUDNALL, JAMES | 220 | 5.00000 | .0024 | .0070 |
| | PHILLIPS, LEONARD W. | 335 | 3.12500 | .0015 | .0044 |
| | PROTHRO, JOHN E. | 356 | 2.54414 | .0012 | .0036 |
| | RAUCH, GERALD | 360 | .62500 | .0003 | .0008 |
| | SKLAR, ALBERT | 425 | 3.12500 | .0016 | .0044 |
| | WALKER, JAMES G., JR. | 467 | 2.22624 | .0010 | .0032 |
| | WARD, TRAVIS | 470 | 8.88249 | .0043 | .0124 |
| | WINNELL 1961 EXPLORATION CO. | 485 | 15.62500 | .0076 | .0220 |
| 761 | PAN AMERICAN   ATWOOD UNIT | | | .2536 | .4567 |
| | CITIES SERVICE OIL CO. | 35 | 2.23882 | .0057 | .0102 |
| | CLAY, CARROLL | 43 | .23689 | .0006 | .0011 |
| | CLAY, THOMAS W. | 44 | 1.14298 | .0029 | .0052 |
| | COLONY GAS CO. | 50 | 2.79852 | .0071 | .0128 |
| | CONTINENTAL OIL CO. | 55 | 5.21269 | .0132 | .0238 |
| | EVANS, FRANK | 76 | .93165 | .0024 | .0043 |
| | FLOYD, GALLANT | 105 | .69963 | .0017 | .0032 |
| | GARRETT, F. M. | 145 | 1.94258 | .0050 | .0088 |
| | GARRETT, F. M., & WILDER, BRUCE | 146 | .20000 | .0005 | .0009 |
| | GLESBY, VEDA MAE | 155 | .27995 | .0007 | .0013 |
| | GREENBRIER 60 LIMITED | 170 | 7.83586 | .0198 | .0358 |
| | GREENBRIER 61 LIMITED | 175 | 4.52425 | .0115 | .0207 |
| | HEDRICK, W. J. | 202 | .23292 | .0006 | .0010 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 1.39926 | .0036 | .0064 |
| | HUDNALL, JAMES | 220 | 2.23882 | .0056 | .0103 |
| | MARSCHALL, H. W., JR. | 282 | .23291 | .0006 | .0010 |
| | PAN AMERICAN PETROLEUM CORP. | 310 | 44.34100 | .1125 | .2025 |
| | PHILLIPS, B. F. | 325 | 5.28265 | .0134 | .0241 |
| | PHILLIPS, JACK | 331 | .66247 | .0017 | .0031 |
| | PHILLIPS, LEONARD W. | 335 | 1.39926 | .0035 | .0064 |
| | PROTHRO, JOHN E. | 356 | 1.14298 | .0029 | .0052 |
| | RAUCH, GERALD | 360 | .27995 | .0007 | .0013 |
| | SKLAR, ALBERT | 425 | 1.39926 | .0036 | .0064 |
| | WALKER, JAMES G., JR. | 467 | 1.00016 | .0025 | .0045 |
| | WARD, TRAVIS | 470 | 3.95096 | .0100 | .0181 |
| | WINNELL 1961 EXPLORATION CO. | 485 | 6.99630 | .0178 | .0319 |
| | WOODMAN, L. L. | 502 | 1.39748 | .0035 | .0064 |
| 762 | UNRESOLVED | | | .0003 | .0038 |
| | UNRESOLVED | 510 | 100.00000 | .0003 | .0038 |
| 763 | UNRESOLVED | | | .0001 | .0008 |
| | UNRESOLVED | 510 | 100.00000 | .0001 | .0008 |
| 764 | FRANKSTON   TOWNSITE A | | | .0009 | .0106 |
| | UNRESOLVED | 510 | 100.00000 | .0009 | .0106 |

Table III
Page 14

TABLE III

| TRACT NO. | OPERATOR AND TRACT NAME WORKING INTEREST OWNERS | WIO CODE | PERCENT OWNERSHIP | UNIT PARTICIPATION (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|---|
| 770 | UNRESOLVED | | | .1289 | .1153 |
| | UNRESOLVED | 510 | 100.00000 | .1289 | .1153 |
| 814 | HUNT PETR   LARUE UNIT | | | .0844 | .1936 |
| | HUNT PETROLEUM CORP. | 230 | 100.00000 | .0844 | .1936 |
| 815 | LEMON   BERRYHILL | | | .0153 | .0965 |
| | LEMON, MRS. I. M. | 241 | 100.00000 | .0153 | .0965 |
| 816 | TEXACO   BURKITT | | | .0001 | .0037 |
| | TEXACO, INC. | 455 | 100.00000 | .0001 | .0037 |
| 817 | HUNT PETR   ROYALL | | | .3379 | .5076 |
| | HUNT PETROLEUM CORP. | 230 | 100.00000 | .3379 | .5076 |
| 818 | LEMON   WYLIE | | | .0017 | .0163 |
| | LEMON, MRS. I. M. | 241 | 100.00000 | .0017 | .0163 |
| 819 | HUNT PETR   MILLER | | | 3.5970 | 3.6131 |
| | HUNT PETROLEUM CORP. | 230 | 100.00000 | 3.5970 | 3.6131 |
| 825 | HUMBLE   HILTON | | | .0272 | .0282 |
| | HUMBLE OIL & REFINING CO. | 225 | 100.00000 | .0272 | .0282 |
| 826 | HUNT PETR   GUS MILLER | | | .1895 | .2087 |
| | HUNT PETROLEUM CORP. | 230 | 100.00000 | .1895 | .2087 |
| 827 | TEXACO   DONNELL UNIT | | | .7332 | .7207 |
| | HUMBLE OIL & REFINING CO. | 225 | .31625 | .0023 | .0023 |
| | HUNT, CAROLINE, TRUST ESTATE | 227 | 8.70562 | .0638 | .0627 |
| | HUNT PETROLEUM CORP. | 230 | .47938 | .0036 | .0035 |
| | TEXACO, INC. | 455 | 90.49875 | .6635 | .6522 |
| 828 | HUNT PETR   CATHOLIC PROPERTIES | | | .0870 | .1323 |
| | HUNT PETROLEUM CORP. | 230 | 100.00000 | .0870 | .1323 |
| 829 | HUNT PETR   CLARK | | | .0065 | .0287 |
| | CLARK, AERDIE | 38 | .52083 | .0000 | .0001 |
| | CLARK, KELLY | 40 | .52083 | .0000 | .0001 |
| | CLARK, MELVIN | 42 | .52084 | .0001 | .0002 |
| | HUNT PETROLEUM CORP. | 230 | 98.43750 | .0064 | .0283 |
| 830 | TEXACO   WOFFORD | | | .0134 | .0365 |
| | TEXACO, INC. | 455 | 100.00000 | .0134 | .0365 |
| 831 | TEXACO   TAYLOR | | | .0065 | .0178 |
| | TEXACO, INC. | 455 | 100.00000 | .0065 | .0178 |
| 832 | TEXACO   TAYLOR UNIT | | | .2323 | .3864 |
| | TEXACO, INC. | 455 | 100.00000 | .2323 | .3864 |
| 833 | SKELLY   LEE | | | .0047 | .0197 |
| | SKELLY OIL CO. | 421 | 100.00000 | .0047 | .0197 |

Table III
Page 15

TABLE III                                                    PAGE NO.  16

| TRACT NO. | OPERATOR AND TRACT NAME / WORKING INTEREST OWNERS | WIO CODE | PERCENT OWNERSHIP | UNIT PARTICIPATION (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|---|
| 834 | SANDS   BURGANY UNIT | | | .0995 | .2092 |
| | SANDS, CAROLINE HUNT | 412 | 50.00000 | .0498 | .1046 |
| | TRICE PRODUCTION CO. | 465 | 50.00000 | .0497 | .1046 |
| 835 | SANDS   LUPKIN | | | .0519 | .1028 |
| | SANDS, CAROLINE HUNT | 412 | 100.00000 | .0519 | .1028 |
| 836 | SKELLY   FAIN | | | .0002 | .0016 |
| | SKELLY OIL CO. | 421 | 100.00000 | .0002 | .0016 |
| 837 | AMERADA   STRINGFIELD UNIT | | | .2844 | .4917 |
| | AMERADA PETROLEUM CORP. | 10 | 100.00000 | .2844 | .4917 |
| 838 | CITIES SERVICE   STRINGFIELD | | | .0147 | .0776 |
| | CITIES SERVICE OIL CO. | 35 | 52.75000 | .0078 | .0409 |
| | CLAY, CARROLL | 43 | .26833 | .0000 | .0002 |
| | CLAY, THOMAS W. | 44 | 1.29468 | .0002 | .0010 |
| | CONTINENTAL OIL CO. | 55 | 5.89108 | .0009 | .0046 |
| | FLOYD, GALLANT | 105 | .78125 | .0001 | .0006 |
| | FLOYD, G. W. | 110 | .39062 | .0000 | .0003 |
| | GLESBY, VEDA MAE | 155 | .34375 | .0001 | .0003 |
| | GREENBRIER 60 LIMITED | 170 | 8.75000 | .0013 | .0068 |
| | GREENBRIER 61 LIMITED | 175 | 5.13021 | .0007 | .0040 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 1.56250 | .0002 | .0012 |
| | HUDNALL, JAMES | 220 | 2.50000 | .0004 | .0019 |
| | PHILLIPS, LEONARD W. | 335 | 1.71875 | .0003 | .0014 |
| | PIRTLE, G. W. | 350 | 2.50000 | .0003 | .0019 |
| | PROTHRO, JOHN E. | 356 | 1.29468 | .0002 | .0010 |
| | RAUCH, GERALD | 360 | .34375 | .0001 | .0003 |
| | SKLAR, ALBERT | 425 | 1.71875 | .0002 | .0013 |
| | WALKER, JAMES G., JR. | 467 | 1.13290 | .0002 | .0009 |
| | WARD, TRAVIS | 470 | 4.75375 | .0007 | .0037 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 6.87500 | .0010 | .0053 |
| 839 | PACE   GARRETT | | | .1268 | .2295 |
| | BORNEFELD, H. A. | 26 | 2.08330 | .0026 | .0048 |
| | GREENBRIER 61 LIMITED | 175 | 36.71880 | .0466 | .0843 |
| | PACE, JOHN W. | 300 | 30.59890 | .0388 | .0702 |
| | PACE 1961 PARTICIPATING GROUP | 302 | 30.59900 | .0388 | .0702 |
| 840 | FAIRWAY   WEBSTER | | | .0000 | .0015 |
| | BORNEFELD, H. A. | 26 | 1.18653 | .0000 | .0000 |
| | CITIES SERVICE OIL CO. | 35 | 19.03842 | .0000 | .0003 |
| | CLAY, CARROLL | 43 | .09685 | .0000 | .0000 |
| | CLAY, THOMAS W. | 44 | .46728 | .0000 | .0000 |
| | CONTINENTAL OIL CO. | 55 | 2.12619 | .0000 | .0000 |
| | FLOYD, GALLANT | 105 | .28197 | .0000 | .0000 |
| | FLOYD, G. W. | 110 | .14098 | .0000 | .0001 |
| | GERMANY, JENNIE MARGARET | 152 | 6.95410 | .0000 | .0001 |
| | GLESBY, VEDA MAE | 155 | .12407 | .0000 | .0000 |
| | GREENBRIER 60 LIMITED | 170 | 3.15803 | .0000 | .0000 |
| | GREENBRIER 61 LIMITED | 175 | 22.76444 | .0000 | .0003 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | .56393 | .0000 | .0001 |
| | HUDNALL, JAMES | 220 | .90229 | .0000 | .0000 |
| | PACE, JOHN W. | 300 | 17.42736 | .0000 | .0002 |
| | PACE 1961 PARTICIPATING GROUP | 302 | 17.42736 | .0000 | .0003 |
| | PHILLIPS, LEONARD W. | 335 | .62033 | .0000 | .0000 |
| | PIRTLE, G. W. | 350 | .90229 | .0000 | .0000 |
| | PROTHRO, JOHN E. | 356 | .46728 | .0000 | .0000 |
| | RAUCH, GERALD | 360 | .12407 | .0000 | .0000 |
| | SKLAR, ALBERT | 425 | .62033 | .0000 | .0000 |
| | WALKER, JAMES G., JR. | 467 | .40888 | .0000 | .0000 |
| | WARD, TRAVIS | 470 | 1.71571 | .0000 | .0001 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 2.48131 | .0000 | .0000 |
| 841 | FAIRWAY   CUMMINGS UNIT | | | .5197 | .6140 |
| | CITIES SERVICE OIL CO. | 35 | 52.75000 | .2741 | .3239 |
| | CLAY, CARROLL | 43 | .26833 | .0014 | .0016 |
| | CLAY, THOMAS W. | 44 | 1.29468 | .0068 | .0080 |
| | CONTINENTAL OIL CO. | 55 | 5.89107 | .0306 | .0362 |
| | FLOYD, GALLANT | 105 | .78125 | .0040 | .0047 |
| | FLOYD, G. W. | 110 | .39063 | .0021 | .0024 |
| | GLESBY, VEDA MAE | 155 | .34375 | .0018 | .0022 |
| | GREENBRIER 60 LIMITED | 170 | 8.75000 | .0454 | .0537 |
| | GREENBRIER 61 LIMITED | 175 | 5.13021 | .0267 | .0315 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 1.56250 | .0081 | .0096 |
| | HUDNALL, JAMES | 220 | 2.50000 | .0130 | .0153 |
| | PHILLIPS, LEONARD W. | 335 | 1.71875 | .0089 | .0106 |
| | PIRTLE, G. W. | 350 | 2.50000 | .0130 | .0153 |
| | PROTHRO, JOHN E. | 356 | 1.29468 | .0068 | .0080 |
| | RAUCH, GERALD | 360 | .34375 | .0017 | .0021 |
| | SKLAR, ALBERT | 425 | 1.71875 | .0090 | .0105 |
| | WALKER, JAMES G., JR. | 467 | 1.13290 | .0059 | .0070 |
| | WARD, TRAVIS | 470 | 4.75375 | .0247 | .0292 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 6.87500 | .0357 | .0422 |

Table III
Page 16

TABLE III                                                    PAGE NO.  17

| TRACT NO. | OPERATOR AND TRACT NAME WORKING INTEREST OWNERS | WIO CODE | PERCENT OWNERSHIP | UNIT PARTICIPATION (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|---|
| 842 | FAIRWAY   CARRIE TAYLOR UNIT | | | .1510 | .3046 |
| | CITIES SERVICE OIL CO. | 35 | 52.75000 | .0797 | .1607 |
| | CLAY, CARROLL | 43 | .26833 | .0004 | .0008 |
| | CLAY, THOMAS W. | 44 | 1.29468 | .0019 | .0039 |
| | CONTINENTAL OIL CO. | 55 | 5.89107 | .0089 | .0180 |
| | FLOYD, GALLANT | 105 | .78125 | .0012 | .0024 |
| | FLOYD, G. W. | 110 | .39063 | .0006 | .0012 |
| | GLESBY, VEDA MAE | 155 | .34375 | .0005 | .0010 |
| | GREENBRIER 60 LIMITED | 170 | 8.75000 | .0132 | .0267 |
| | GREENBRIER 61 LIMITED | 175 | 5.13021 | .0078 | .0156 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 1.56250 | .0023 | .0047 |
| | HUDNALL, JAMES | 220 | 2.50000 | .0038 | .0077 |
| | PHILLIPS, LEONARD W. | 335 | 1.71875 | .0026 | .0052 |
| | PIRTLE, G. W. | 350 | 2.50000 | .0038 | .0076 |
| | PROTHRO, JOHN E. | 356 | 1.29468 | .0019 | .0039 |
| | RAUCH, GERALD | 360 | .34375 | .0005 | .0011 |
| | SKLAR, ALBERT | 425 | 1.71875 | .0026 | .0052 |
| | WALKER, JAMES G., JR. | 467 | 1.13290 | .0017 | .0035 |
| | WARD, TRAVIS | 470 | 4.75375 | .0072 | .0145 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 6.87500 | .0104 | .0209 |
| 843 | FAIRWAY   DOUGLAS-LANGFORD UNIT | | | .4122 | .5602 |
| | CITIES SERVICE OIL CO. | 35 | 52.75000 | .2174 | .2955 |
| | CLAY, CARROLL | 43 | .26833 | .0011 | .0015 |
| | CLAY, THOMAS W. | 44 | 1.29468 | .0054 | .0073 |
| | CONTINENTAL OIL CO. | 55 | 5.89107 | .0243 | .0330 |
| | FLOYD, GALLANT | 105 | .78125 | .0032 | .0043 |
| | FLOYD, G. W. | 110 | .39063 | .0016 | .0022 |
| | GLESBY, VEDA MAE | 155 | .34375 | .0014 | .0020 |
| | GREENBRIER 60 LIMITED | 170 | 8.75000 | .0361 | .0490 |
| | GREENBRIER 61 LIMITED | 175 | 5.13021 | .0211 | .0287 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 1.56250 | .0065 | .0088 |
| | HUDNALL, JAMES | 220 | 2.50000 | .0103 | .0140 |
| | PHILLIPS, LEONARD W. | 335 | 1.71875 | .0071 | .0096 |
| | PIRTLE, G. W. | 350 | 2.50000 | .0103 | .0140 |
| | PROTHRO, JOHN E. | 356 | 1.29468 | .0053 | .0073 |
| | RAUCH, GERALD | 360 | .34375 | .0014 | .0019 |
| | SKLAR, ALBERT | 425 | 1.71875 | .0071 | .0096 |
| | WALKER, JAMES G., JR. | 467 | 1.13290 | .0047 | .0064 |
| | WARD, TRAVIS | 470 | 4.75375 | .0196 | .0266 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 6.87500 | .0283 | .0385 |
| 844 | FAIRWAY   DOUGLAS | | | .0464 | .1607 |
| | CITIES SERVICE OIL CO. | 35 | 52.75000 | .0245 | .0848 |
| | CLAY, CARROLL | 43 | .26833 | .0001 | .0004 |
| | CLAY, THOMAS W. | 44 | 1.29468 | .0006 | .0021 |
| | CONTINENTAL OIL CO. | 55 | 5.89107 | .0027 | .0094 |
| | FLOYD, GALLANT | 105 | .78125 | .0004 | .0013 |
| | FLOYD, G. W. | 110 | .39063 | .0002 | .0006 |
| | GLESBY, VEDA MAE | 155 | .34375 | .0001 | .0006 |
| | GREENBRIER 60 LIMITED | 170 | 8.75000 | .0041 | .0140 |
| | GREENBRIER 61 LIMITED | 175 | 5.13021 | .0024 | .0083 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 1.56250 | .0007 | .0025 |
| | HUDNALL, JAMES | 220 | 2.50000 | .0012 | .0040 |
| | PHILLIPS, LEONARD W. | 335 | 1.71875 | .0008 | .0028 |
| | PIRTLE, G. W. | 350 | 2.50000 | .0011 | .0040 |
| | PROTHRO, JOHN E. | 356 | 1.29468 | .0006 | .0021 |
| | RAUCH, GERALD | 360 | .34375 | .0002 | .0005 |
| | SKLAR, ALBERT | 425 | 1.71875 | .0008 | .0028 |
| | WALKER, JAMES G., JR. | 467 | 1.13290 | .0005 | .0018 |
| | WARD, TRAVIS | 470 | 4.75375 | .0022 | .0077 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 6.87500 | .0032 | .0110 |
| 845 | FAIRWAY   MAYMON | | | .6618 | .6850 |
| | CITIES SERVICE OIL CO. | 35 | 52.75000 | .3491 | .3613 |
| | CLAY, CARROLL | 43 | .42224 | .0028 | .0029 |
| | CLAY, THOMAS W. | 44 | 2.03728 | .0135 | .0140 |
| | CONTINENTAL OIL CO. | 55 | 8.73235 | .0578 | .0598 |
| | FLOYD, GALLANT | 105 | .78125 | .0051 | .0054 |
| | FLOYD, G. W. | 110 | .39063 | .0026 | .0026 |
| | GLESBY, VEDA MAE | 155 | .34375 | .0023 | .0024 |
| | GREENBRIER 60 LIMITED | 170 | 8.75000 | .0579 | .0599 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 1.56250 | .0103 | .0107 |
| | HUDNALL, JAMES | 220 | 2.50000 | .0166 | .0171 |
| | PHILLIPS, LEONARD W. | 335 | 1.71875 | .0114 | .0118 |
| | PIRTLE, G. W. | 350 | 2.50000 | .0165 | .0171 |
| | PROTHRO, JOHN E. | 356 | 2.03728 | .0135 | .0140 |
| | RAUCH, GERALD | 360 | .34375 | .0023 | .0024 |
| | SKLAR, ALBERT | 425 | 1.71875 | .0113 | .0117 |
| | WALKER, JAMES G., JR. | 467 | 1.78272 | .0118 | .0122 |
| | WARD, TRAVIS | 470 | 4.75375 | .0315 | .0326 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 6.87500 | .0455 | .0471 |

Table III
Page 17

TABLE III                                                                                      PAGE NO.  18

| TRACT NO. | OPERATOR AND TRACT NAME WORKING INTEREST OWNERS | WIC CODE | PERCENT OWNERSHIP | UNIT PARTICIPATION (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|---|
| 846 | MURCHISON   CELY-HENDERSON UNIT | | | .1955 | .3633 |
| | CITIES SERVICE OIL CO. | 35 | 36.07903 | .0705 | .1311 |
| | CLAY, CARROLL | 43 | .08906 | .0002 | .0003 |
| | CLAY, THOMAS W. | 44 | .42968 | .0008 | .0016 |
| | CONTINENTAL OIL CO. | 55 | 1.95912 | .0039 | .0071 |
| | FLOYD, GALLANT | 105 | .25928 | .0005 | .0009 |
| | FLOYD, G. W. | 110 | .12964 | .0002 | .0005 |
| | GLESBY, VEDA MAE | 155 | .14210 | .0003 | .0005 |
| | GREENBRIER 60 LIMITED | 170 | 2.90396 | .0057 | .0105 |
| | GREENBRIER 61 LIMITED | 175 | 1.70261 | .0033 | .0062 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | .51856 | .0010 | .0019 |
| | HUDNALL, JAMES | 220 | .82969 | .0017 | .0030 |
| | MURCHISON, J. W. | 295 | 47.34314 | .0925 | .1720 |
| | PHILLIPS, LEONARD W. | 335 | .71050 | .0014 | .0026 |
| | PIRTLE, G. W. | 350 | .82969 | .0016 | .0030 |
| | PROTHRO, JOHN E. | 356 | .42968 | .0009 | .0016 |
| | RAUCH, GERALD | 360 | .14210 | .0002 | .0005 |
| | SKLAR, ALBERT | 425 | .71050 | .0014 | .0026 |
| | WALKER, JAMES G., JR. | 467 | .37599 | .0008 | .0013 |
| | WARD, TRAVIS | 470 | 1.57768 | .0030 | .0058 |
| | WINNELL 1961 EXPLORATION CO. | 485 | 2.84199 | .0056 | .0103 |
| 847 | FAIRWAY   A W MAYMON | | | .0127 | .0715 |
| | CITIES SERVICE OIL CO. | 35 | 52.75000 | .0067 | .0377 |
| | CLAY, CARROLL | 43 | .26833 | .0000 | .0002 |
| | CLAY, THOMAS W. | 44 | 1.29468 | .0002 | .0009 |
| | CONTINENTAL OIL CO. | 55 | 5.89107 | .0007 | .0042 |
| | FLOYD, GALLANT | 105 | .78125 | .0001 | .0006 |
| | FLOYD, G. W. | 110 | .39063 | .0001 | .0003 |
| | GLESBY, VEDA MAE | 155 | .34375 | .0000 | .0002 |
| | GREENBRIER 60 LIMITED | 170 | 8.75000 | .0011 | .0063 |
| | GREENBRIER 61 LIMITED | 175 | 5.13021 | .0007 | .0037 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 1.56250 | .0002 | .0011 |
| | HUDNALL, JAMES | 220 | 2.50000 | .0003 | .0018 |
| | PHILLIPS, LEONARD W. | 335 | 1.71875 | .0002 | .0012 |
| | PIRTLE, G. W. | 350 | 2.50000 | .0004 | .0018 |
| | PROTHRO, JOHN E. | 356 | 1.29468 | .0001 | .0009 |
| | RAUCH, GERALD | 360 | .34375 | .0001 | .0002 |
| | SKLAR, ALBERT | 425 | 1.71875 | .0002 | .0013 |
| | WALKER, JAMES G., JR. | 467 | 1.13290 | .0001 | .0008 |
| | WARD, TRAVIS | 470 | 4.75375 | .0006 | .0034 |
| | WINNELL 1961 EXPLORATION CO. | 485 | 6.87500 | .0009 | .0049 |
| 848 | FAIRWAY   EPPERSON | | | .0118 | .0528 |
| | CITIES SERVICE OIL CO. | 35 | 3.36111 | .0004 | .0018 |
| | CLAY, CARROLL | 43 | .32794 | .0000 | .0001 |
| | CLAY, THOMAS W. | 44 | 1.58237 | .0002 | .0009 |
| | CONTINENTAL OIL CO. | 55 | 7.20012 | .0009 | .0038 |
| | FLOYD, GALLANT | 105 | .95486 | .0001 | .0005 |
| | FLOYD, G. W. | 110 | .47743 | .0000 | .0002 |
| | GLESBY, VEDA MAE | 155 | .42014 | .0001 | .0003 |
| | GREENBRIER 60 LIMITED | 170 | 10.69444 | .0013 | .0056 |
| | GREENBRIER 61 LIMITED | 175 | 6.27024 | .0007 | .0033 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 1.90972 | .0002 | .0010 |
| | HUDNALL, JAMES | 220 | 3.05556 | .0004 | .0016 |
| | PHILLIPS, LEONARD W. | 335 | 2.10069 | .0002 | .0012 |
| | PIRTLE, G. W. | 350 | 3.05556 | .0004 | .0016 |
| | PROTHRO, JOHN E. | 356 | 1.58236 | .0002 | .0008 |
| | RAUCH, GERALD | 360 | .42014 | .0000 | .0002 |
| | SKLAR, ALBERT | 425 | 2.10069 | .0003 | .0011 |
| | WALKER, JAMES G., JR. | 467 | 1.38464 | .0001 | .0008 |
| | WARD, TRAVIS | 470 | 5.81032 | .0007 | .0030 |
| | WINNELL 1961 EXPLORATION CO. | 485 | 8.40278 | .0010 | .0045 |
| | UNRESOLVED | 510 | 38.88889 | .0046 | .0205 |
| 849 | FAIRWAY   HURT-EPPERSON UNIT | | | .4390 | .5657 |
| | CITIES SERVICE OIL CO. | 35 | 5.50000 | .0241 | .0311 |
| | CLAY, CARROLL | 43 | .53665 | .0024 | .0030 |
| | CLAY, THOMAS W. | 44 | 2.58936 | .0114 | .0147 |
| | CONTINENTAL OIL CO. | 55 | 11.78215 | .0517 | .0666 |
| | FLOYD, GALLANT | 105 | 1.56250 | .0069 | .0089 |
| | FLOYD, G. W. | 110 | .78125 | .0034 | .0044 |
| | GLESBY, VEDA MAE | 155 | .68750 | .0030 | .0039 |
| | GREENBRIER 60 LIMITED | 170 | 17.50000 | .0768 | .0990 |
| | GREENBRIER 61 LIMITED | 175 | 10.26042 | .0451 | .0580 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 3.12500 | .0137 | .0177 |
| | HUDNALL, JAMES | 220 | 5.00000 | .0219 | .0283 |
| | PHILLIPS, LEONARD W. | 335 | 3.43750 | .0151 | .0194 |
| | PIRTLE, G. W. | 350 | 5.00000 | .0220 | .0283 |
| | PROTHRO, JOHN E. | 356 | 2.58937 | .0113 | .0147 |
| | RAUCH, GERALD | 360 | .68750 | .0031 | .0039 |
| | SKLAR, ALBERT | 425 | 3.43750 | .0151 | .0194 |
| | WALKER, JAMES G., JR. | 467 | 2.26581 | .0099 | .0128 |
| | WARD, TRAVIS | 470 | 9.50749 | .0417 | .0538 |
| | WINNELL 1961 EXPLORATION CO. | 485 | 13.75000 | .0604 | .0778 |
| 850 | MURCHISON   HURT A | | | .4042 | .5362 |
| | MURCHISON, J. W. | 295 | 100.00000 | .4042 | .5362 |

Table III
Page 18

TABLE III

| TRACT NO. | OPERATOR AND TRACT NAME WORKING INTEREST OWNERS | WIO CODE | PERCENT OWNERSHIP | UNIT PARTICIPATION (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|---|
| 851 | FAIRWAY   HURT A | | | .5044 | .6019 |
| | CITIES SERVICE OIL CO. | 35 | 5.50000 | .0277 | .0331 |
| | CLAY, CARROLL | 43 | .53665 | .0027 | .0032 |
| | CLAY, THOMAS W. | 44 | 2.58936 | .0131 | .0156 |
| | CONTINENTAL OIL CO. | 55 | 11.78215 | .0594 | .0709 |
| | FLOYD, GALLANT | 105 | 1.56250 | .0079 | .0094 |
| | FLOYD, G. W. | 110 | .78125 | .0040 | .0047 |
| | GLESBY, VEDA MAE | 155 | .68750 | .0034 | .0042 |
| | GREENBRIER 60 LIMITED | 170 | 17.50000 | .0883 | .1053 |
| | GREENBRIER 61 LIMITED | 175 | 10.26042 | .0518 | .0618 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 3.12500 | .0157 | .0188 |
| | HUDNALL, JAMES | 220 | 5.00000 | .0252 | .0301 |
| | PHILLIPS, LEONARD W. | 335 | 3.43750 | .0174 | .0207 |
| | PIRTLE, G. W. | 350 | 5.00000 | .0252 | .0301 |
| | PROTHRO, JOHN E. | 356 | 2.58937 | .0131 | .0155 |
| | RAUCH, GERALD | 360 | .68750 | .0034 | .0042 |
| | SKLAR, ALBERT | 425 | 3.43750 | .0174 | .0207 |
| | WALKER, JAMES G., JR. | 467 | 2.26581 | .0114 | .0136 |
| | WARD, TRAVIS | 470 | 9.50749 | .0479 | .0572 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 13.75000 | .0694 | .0828 |
| 852 | MURCHISON   HURT B | | | .5496 | .6289 |
| | CITIES SERVICE OIL CO. | 35 | 2.75000 | .0151 | .0173 |
| | CLAY, CARROLL | 43 | .26833 | .0015 | .0017 |
| | CLAY, THOMAS W. | 44 | 1.29468 | .0071 | .0081 |
| | CONTINENTAL OIL CO. | 55 | 5.89107 | .0324 | .0371 |
| | FLOYD, GALLANT | 105 | .78125 | .0043 | .0049 |
| | FLOYD, G. W. | 110 | .39063 | .0021 | .0024 |
| | GLESBY, VEDA MAE | 155 | .34375 | .0019 | .0022 |
| | GREENBRIER 60 LIMITED | 170 | 8.75000 | .0481 | .0550 |
| | GREENBRIER 61 LIMITED | 175 | 5.13021 | .0282 | .0323 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 1.56250 | .0086 | .0098 |
| | HUDNALL, JAMES | 220 | 2.50000 | .0137 | .0157 |
| | MURCHISON, J. W. | 295 | 50.00000 | .2748 | .3145 |
| | PHILLIPS, LEONARD W. | 335 | 1.71875 | .0095 | .0108 |
| | PIRTLE, G. W. | 350 | 2.50000 | .0137 | .0157 |
| | PROTHRO, JOHN E. | 356 | 1.29468 | .0071 | .0082 |
| | RAUCH, GERALD | 360 | .34375 | .0019 | .0021 |
| | SKLAR, ALBERT | 425 | 1.71875 | .0095 | .0108 |
| | WALKER, JAMES G., JR. | 467 | 1.13290 | .0062 | .0072 |
| | WARD, TRAVIS | 470 | 4.75375 | .0261 | .0299 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 6.87500 | .0378 | .0432 |
| 853 | FROST   HENDERSON-HURT UNIT | | | .7968 | .7460 |
| | CITIES SERVICE OIL CO. | 35 | 11.78332 | .0939 | .0879 |
| | CLAY, CARROLL | 43 | .15851 | .0013 | .0012 |
| | CLAY, THOMAS W. | 44 | .76481 | .0060 | .0057 |
| | COLONY GAS CO. | 50 | .34960 | .0028 | .0026 |
| | CONTINENTAL OIL CO. | 55 | 3.48186 | .0278 | .0260 |
| | FLOYD, GALLANT | 105 | .46301 | .0037 | .0034 |
| | FLOYD, G. W. | 110 | .18781 | .0015 | .0014 |
| | FROST, JACK | 135 | 33.94772 | .2705 | .2533 |
| | GLESBY, VEDA MAE | 155 | .20023 | .0016 | .0015 |
| | GREENBRIER 60 LIMITED | 170 | 5.18584 | .0413 | .0387 |
| | GREENBRIER 61 LIMITED | 175 | 3.03176 | .0241 | .0226 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | .92604 | .0074 | .0069 |
| | HUDNALL, JAMES | 220 | 1.48167 | .0118 | .0110 |
| | MURCHISON, J. W. | 295 | 7.08755 | .0565 | .0529 |
| | PHILLIPS, LEONARD W. | 335 | 1.00117 | .0080 | .0075 |
| | PIRTLE, G. W. | 350 | 1.20199 | .0095 | .0089 |
| | PROTHRO, JOHN E. | 356 | .76481 | .0061 | .0058 |
| | RAUCH, GERALD | 360 | .20023 | .0016 | .0014 |
| | SKLAR, ALBERT | 425 | 1.00117 | .0080 | .0075 |
| | TEXACO, INC. | 455 | 19.14995 | .1526 | .1429 |
| | WALKER, JAMES G., JR. | 467 | .66924 | .0053 | .0050 |
| | WARD, TRAVIS | 470 | 2.78226 | .0222 | .0207 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 4.17945 | .0333 | .0312 |
| 854 | FROST   HENDERSON UNIT | | | .5533 | .6308 |
| | CITIES SERVICE OIL CO. | 35 | .75344 | .0042 | .0048 |
| | CLAY, CARROLL | 43 | .07904 | .0004 | .0005 |
| | CLAY, THOMAS W. | 44 | .38135 | .0021 | .0024 |
| | COLONY GAS CO. | 50 | .87563 | .0049 | .0055 |
| | CONTINENTAL OIL CO. | 55 | 1.73984 | .0096 | .0110 |
| | FLOYD, GALLANT | 105 | .23395 | .0013 | .0014 |
| | FLOYD, G. W. | 110 | .00752 | .0000 | .0001 |
| | FROST, JACK | 135 | 85.02749 | .4705 | .5363 |
| | GLESBY, VEDA MAE | 155 | .09418 | .0005 | .0006 |
| | GREENBRIER 60 LIMITED | 170 | 2.62019 | .0145 | .0166 |
| | GREENBRIER 61 LIMITED | 175 | 1.51435 | .0084 | .0095 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | .46789 | .0026 | .0030 |
| | HUDNALL, JAMES | 220 | .74863 | .0041 | .0047 |
| | PHILLIPS, LEONARD W. | 335 | .47090 | .0026 | .0030 |
| | PIRTLE, G. W. | 350 | .04812 | .0003 | .0003 |
| | PROTHRO, JOHN E. | 356 | .38136 | .0021 | .0024 |
| | RAUCH, GERALD | 360 | .09418 | .0005 | .0006 |
| | SKLAR, ALBERT | 425 | .47090 | .0026 | .0029 |
| | WALKER, JAMES G., JR. | 467 | .33370 | .0019 | .0021 |
| | WARD, TRAVIS | 470 | 1.33594 | .0074 | .0085 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 2.32140 | .0128 | .0146 |
| 855 | TEXACO   MITCHELL | | | .7352 | .7217 |
| | TEXACO, INC. | 455 | 100.00000 | .7352 | .7217 |

Table III
Page 19

TABLE III                                                      PAGE NO.  20

| TRACT NO. | OPERATOR AND TRACT NAME / WORKING INTEREST OWNERS | WIO CODE | PERCENT OWNERSHIP | UNIT PARTICIPATION (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|---|
| 856 | FAIRWAY   BILLINGSLEY UNIT | | | .7979 | .7530 |
| | ABENDROTH, G. F. | 5 | .69418 | .0055 | .0052 |
| | CITIES SERVICE OIL CO. | 35 | 4.74425 | .0379 | .0358 |
| | CLAY, CARROLL | 43 | .47138 | .0038 | .0035 |
| | CLAY, THOMAS W. | 44 | 2.27440 | .0181 | .0171 |
| | COLONY GAS CO. | 50 | 5.93031 | .0473 | .0447 |
| | CONTINENTAL OIL CO. | 55 | 10.48116 | .0836 | .0789 |
| | DYKES, J. A. | 70 | .25575 | .0021 | .0019 |
| | FLOYD, GALLANT | 105 | 1.48258 | .0118 | .0112 |
| | GLESBY, VEDA MAE | 155 | .59303 | .0048 | .0045 |
| | GREENBRIER 60 LIMITED | 170 | 16.60488 | .1324 | .1250 |
| | GREENBRIER 61 LIMITED | 175 | 9.09873 | .0726 | .0685 |
| | HILLIARD, E. L. | 210 | .69418 | .0056 | .0052 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 2.96516 | .0236 | .0224 |
| | HUDNALL, JAMES | 220 | 4.74425 | .0379 | .0357 |
| | LOGAN, G. L. | 265 | .69418 | .0055 | .0052 |
| | LYONS, C. H., SR. | 270 | .69418 | .0056 | .0052 |
| | LYONS, C. H., JR. | 275 | .69418 | .0055 | .0053 |
| | LYONS, HALL M., SPECIAL | 280 | .69418 | .0055 | .0052 |
| | PALMER, J. T. | 305 | .69417 | .0056 | .0052 |
| | PHILLIPS, LEONARD W. | 335 | 2.96515 | .0236 | .0224 |
| | PIRTLE, G. W. | 350 | 1.46569 | .0117 | .0110 |
| | PROTHRO, JOHN E. | 356 | 2.27440 | .0182 | .0171 |
| | RAUCH, GERALD | 360 | .59303 | .0047 | .0045 |
| | SKLAR, ALBERT | 425 | 2.96515 | .0237 | .0223 |
| | WALKER, JAMES G., JR. | 467 | 1.99020 | .0159 | .0150 |
| | WARD, TRAVIS | 470 | 8.41547 | .0671 | .0634 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 14.82578 | .1183 | .1116 |
| 857 | FAIRWAY   WILKERSON UNIT | | | .7757 | .7420 |
| | CITIES SERVICE OIL CO. | 35 | 5.00000 | .0388 | .0371 |
| | CLAY, CARROLL | 43 | .78353 | .0061 | .0058 |
| | CLAY, THOMAS W. | 44 | 3.78055 | .0293 | .0281 |
| | COLONY GAS CO. | 50 | 6.25000 | .0485 | .0463 |
| | CONTINENTAL OIL CO. | 55 | 16.33973 | .1267 | .1213 |
| | FLOYD, GALLANT | 105 | 1.56250 | .0121 | .0116 |
| | GLESBY, VEDA MAE | 155 | .62500 | .0049 | .0046 |
| | GREENBRIER 60 LIMITED | 170 | 17.50000 | .1357 | .1299 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 3.12500 | .0243 | .0232 |
| | HUDNALL, JAMES | 220 | 5.00000 | .0388 | .0371 |
| | PHILLIPS, LEONARD W. | 335 | 3.12500 | .0242 | .0232 |
| | PIRTLE, G. W. | 350 | 1.56250 | .0121 | .0116 |
| | PROTHRO, JOHN E. | 356 | 3.78054 | .0293 | .0281 |
| | RAUCH, GERALD | 360 | .62500 | .0049 | .0046 |
| | SKLAR, ALBERT | 425 | 3.12500 | .0242 | .0232 |
| | WALKER, JAMES G., JR. | 467 | 3.30815 | .0257 | .0246 |
| | WARD, TRAVIS | 470 | 8.88250 | .0689 | .0659 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 15.62500 | .1212 | .1159 |
| 858 | FAIRWAY   WESTBROOK | | | .6899 | .6408 |
| | CITIES SERVICE OIL CO. | 35 | 5.00000 | .0345 | .0320 |
| | CLAY, CARROLL | 43 | .83040 | .0057 | .0054 |
| | CLAY, THOMAS W. | 44 | 4.00672 | .0277 | .0256 |
| | COLONY GAS CO. | 50 | 6.25000 | .0431 | .0401 |
| | CONTINENTAL OIL CO. | 55 | 17.20511 | .1187 | .1102 |
| | FLOYD, GALLANT | 105 | 1.56250 | .0108 | .0100 |
| | GLESBY, VEDA MAE | 155 | .62500 | .0043 | .0041 |
| | GREENBRIER 60 LIMITED | 170 | 17.50000 | .1207 | .1121 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 3.12500 | .0216 | .0200 |
| | HUDNALL, JAMES | 220 | 5.00000 | .0345 | .0321 |
| | PHILLIPS, LEONARD W. | 335 | 3.12500 | .0215 | .0200 |
| | PROTHRO, JOHN E. | 356 | 4.00672 | .0277 | .0257 |
| | RAUCH, GERALD | 360 | .62500 | .0043 | .0040 |
| | SKLAR, ALBERT | 425 | 3.12500 | .0215 | .0200 |
| | WALKER, JAMES G., JR. | 467 | 3.50606 | .0242 | .0225 |
| | WARD, TRAVIS | 470 | 8.88249 | .0613 | .0569 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 15.62500 | .1078 | .1001 |
| 859 | FAIRWAY   WALTERS UNIT | | | .7082 | .7082 |
| | CITIES SERVICE OIL CO. | 35 | 2.34280 | .0166 | .0166 |
| | CLAY, CARROLL | 43 | .24704 | .0017 | .0017 |
| | CLAY, THOMAS W. | 44 | 1.19198 | .0085 | .0085 |
| | COLONY GAS CO. | 50 | 2.92840 | .0207 | .0207 |
| | CONTINENTAL OIL CO. | 55 | 5.43913 | .0385 | .0385 |
| | DENTON, F. R. | 65 | .83590 | .0060 | .0060 |
| | EVANS, FRANK | 76 | 4.15210 | .0294 | .0294 |
| | FLOYD, GALLANT | 105 | .73210 | .0052 | .0052 |
| | GLESBY, VEDA MAE | 155 | .29280 | .0020 | .0020 |
| | GRAY, W. B. | 165 | .94590 | .0067 | .0067 |
| | GREENBRIER 60 LIMITED | 170 | 8.19950 | .0581 | .0581 |
| | GREENBRIER 61 LIMITED | 175 | 4.73420 | .0335 | .0335 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 1.46412 | .0104 | .0104 |
| | HUDNALL, JAMES | 220 | 2.34260 | .0166 | .0166 |
| | PHILLIPS, B. F. | 325 | 2.64710 | .0187 | .0187 |
| | PHILLIPS, LEONARD W. | 335 | 1.46420 | .0104 | .0104 |
| | PHILLIPS PETROLEUM CO. | 340 | 43.18130 | .3058 | .3058 |
| | PROTHRO, JOHN E. | 356 | 1.19199 | .0084 | .0084 |
| | RAUCH, GERALD | 360 | .29280 | .0021 | .0021 |
| | SKLAR, ALBERT | 425 | 1.46420 | .0104 | .0104 |
| | WALKER, JAMES G., JR. | 467 | 1.04304 | .0074 | .0074 |
| | WARD, TRAVIS | 470 | 4.16180 | .0295 | .0295 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 7.32100 | .0518 | .0518 |
| | WOODMAN, L. L. | 502 | 1.38400 | .0098 | .0098 |

Table III
Page 20

TABLE III

| TRACT NO. | OPERATOR AND TRACT NAME WORKING INTEREST OWNERS | WIC CODE | PERCENT OWNERSHIP | UNIT PARTICIPATION (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|---|
| 860 | FAIRWAY   WESTBROOK UNIT B | | | .5332 | .6132 |
| | CITIES SERVICE OIL CO. | 35 | 5.00000 | .0267 | .0307 |
| | CLAY, CARROLL | 43 | .52728 | .0028 | .0032 |
| | CLAY, THOMAS W. | 44 | 2.54414 | .0135 | .0156 |
| | COLONY GAS CO. | 50 | 6.25000 | .0334 | .0383 |
| | CONTINENTAL OIL CO. | 55 | 11.60911 | .0619 | .0712 |
| | FLOYD, GALLANT | 105 | 1.56250 | .0083 | .0096 |
| | GLESBY, VEDA MAE | 155 | .62500 | .0033 | .0038 |
| | GREENBRIER 60 LIMITED | 170 | 17.50000 | .0933 | .1073 |
| | GREENBRIER 61 LIMITED | 175 | 10.10410 | .0539 | .0620 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 3.12500 | .0167 | .0192 |
| | HUDNALL, JAMES | 220 | 5.00000 | .0266 | .0306 |
| | PHILLIPS, LEONARD W. | 335 | 3.12500 | .0167 | .0192 |
| | PROTHRO, JOHN E. | 356 | 2.54414 | .0136 | .0156 |
| | RAUCH, GERALD | 360 | .62500 | .0033 | .0038 |
| | SKLAR, ALBERT | 425 | 3.12500 | .0167 | .0192 |
| | WALKER, JAMES G., JR. | 467 | 2.22624 | .0118 | .0136 |
| | WARD, TRAVIS | 470 | 8.88249 | .0474 | .0545 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 15.62500 | .0833 | .0958 |
| 861 | FAIRWAY   VERMILLION UNIT | | | .6970 | .7026 |
| | CITIES SERVICE OIL CO. | 35 | 2.50924 | .0175 | .0176 |
| | CLAY, CARROLL | 43 | .29194 | .0020 | .0021 |
| | CLAY, THOMAS W. | 44 | 1.40866 | .0098 | .0099 |
| | COLONY GAS CO. | 50 | 3.13654 | .0219 | .0220 |
| | CONTINENTAL OIL CO. | 55 | 5.38965 | .0376 | .0379 |
| | DENTON, F. R. | 65 | .41410 | .0029 | .0029 |
| | EVANS, FRANK | 76 | 9.27557 | .0646 | .0652 |
| | FLOYD, GALLANT | 105 | .78414 | .0055 | .0055 |
| | GENECOV, A. S. | 150 | .80345 | .0056 | .0056 |
| | GLESBY, VEDA MAE | 155 | .31365 | .0022 | .0022 |
| | GRAY, W. B. | 165 | .46853 | .0032 | .0033 |
| | GREENBRIER 60 LIMITED | 170 | 8.78232 | .0612 | .0617 |
| | GREENBRIER 61 LIMITED | 175 | 5.52275 | .0385 | .0388 |
| | HEDRICK, W. J. | 202 | .05208 | .0004 | .0004 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 8.73794 | .0609 | .0614 |
| | HUDNALL, JAMES | 220 | 8.73794 | .0609 | .0614 |
| | MARSCHALL, H. W., JR. | 282 | .05208 | .0004 | .0003 |
| | PHILLIPS, B. F. | 325 | 2.02880 | .0141 | .0143 |
| | PHILLIPS, LEONARD W. | 335 | 1.56827 | .0109 | .0110 |
| | PHILLIPS PETROLEUM CO. | 340 | 21.39010 | .1491 | .1503 |
| | PIRTLE, G. W. | 350 | .02812 | .0002 | .0002 |
| | PROTHRO, JOHN E. | 356 | 1.40866 | .0098 | .0099 |
| | RAUCH, GERALD | 360 | .31365 | .0022 | .0022 |
| | ROOSTH, ISADORE, IND. EXECUTOR | 375 | .11478 | .0008 | .0008 |
| | ROOSTH, ISADORE, SUB. EXECUTOR | 380 | .11478 | .0008 | .0008 |
| | ROOSTH, ISADORE, TR JR TRUST | 385 | .11478 | .0008 | .0008 |
| | ROOSTH, H. P. | 390 | .11478 | .0008 | .0008 |
| | ROOSTH, ISADORE | 395 | .11478 | .0008 | .0008 |
| | ROOSTH, SOLOMON | 400 | .11478 | .0008 | .0008 |
| | ROOSTH, WILEY | 405 | .11477 | .0008 | .0008 |
| | SKLAR, ALBERT | 425 | 1.56827 | .0110 | .0111 |
| | WALKER, JAMES G., JR. | 467 | 1.23264 | .0085 | .0086 |
| | WARD, TRAVIS | 470 | 4.45052 | .0311 | .0313 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 7.84136 | .0546 | .0551 |
| | WOODMAN, L. L. | 502 | .68558 | .0048 | .0048 |
| 862 | MURCHISON   ROBINSON UNIT | | | .0811 | .1621 |
| | MURCHISON, J. W. | 295 | 100.00000 | .0811 | .1621 |
| 863 | CITIES SERVICE   GARNER B UNIT | | | .5941 | .6511 |
| | CITIES SERVICE OIL CO. | 35 | 87.04020 | .5171 | .5667 |
| | CLAY, CARROLL | 43 | .06910 | .0004 | .0005 |
| | CLAY, THOMAS W. | 44 | .33344 | .0020 | .0021 |
| | COLONY GAS CO. | 50 | .81913 | .0049 | .0054 |
| | CONTINENTAL OIL CO. | 55 | 1.52152 | .0090 | .0099 |
| | FAIR OIL CO. | 95 | .50886 | .0030 | .0033 |
| | FLOYD, GALLANT | 105 | .20481 | .0012 | .0013 |
| | GLESBY, VEDA MAE | 155 | .08191 | .0005 | .0005 |
| | GREENBRIER 60 LIMITED | 170 | 2.29363 | .0137 | .0149 |
| | GREENBRIER 61 LIMITED | 175 | 1.32425 | .0078 | .0086 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | .40957 | .0025 | .0027 |
| | HUDNALL, JAMES | 220 | .65531 | .0038 | .0042 |
| | PHILLIPS, LEONARD W. | 335 | .40956 | .0025 | .0027 |
| | PROTHRO, JOHN E. | 356 | .33344 | .0020 | .0022 |
| | RAUCH, GERALD | 360 | .08191 | .0005 | .0005 |
| | SKLAR, ALBERT | 425 | .40956 | .0024 | .0027 |
| | WALKER, JAMES G., JR. | 467 | .29177 | .0017 | .0019 |
| | WARD, TRAVIS | 470 | 1.16415 | .0069 | .0076 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 2.04788 | .0122 | .0133 |
| 864 | B F PHILLIPS   DICKERSON UNIT | | | .1741 | .4059 |
| | CITIES SERVICE OIL CO. | 35 | 57.53750 | .1002 | .2335 |
| | FAIR OIL CO. | 95 | 5.23125 | .0091 | .0213 |
| | PHILLIPS, B. F. | 325 | 37.23125 | .0648 | .1511 |
| 866 | FRANKSTON   TOWNSITE B | | | .0039 | .0341 |
| | UNRESOLVED | 510 | 100.00000 | .0039 | .0341 |
| 880 | UNRESOLVED | | | .0012 | .0078 |
| | UNRESOLVED | 510 | 100.00000 | .0012 | .0078 |

Table III
Page 21

TABLE III

| TRACT NO. | OPERATOR AND TRACT NAME WORKING INTEREST OWNERS | WIO CODE | PERCENT OWNERSHIP | UNIT PARTICIPATION (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|---|
| 920 | HUNT PETR    HARDMAN | | | .0246 | .0610 |
| | HUNT PETROLEUM CORP. | 230 | 100.00000 | .0246 | .0610 |
| 950 | BROWNE    FEE | | | .0009 | .0105 |
| | BROWNE, F. C. | 32 | 100.00000 | .0009 | .0105 |
| 951 | FAIRWAY    HURT ET AL UNIT | | | .1156 | .2451 |
| | ABENDROTH, G. F. | 5 | .29229 | .0003 | .0007 |
| | CITIES SERVICE OIL CO. | 35 | 4.16917 | .0049 | .0102 |
| | CLAY, CARROLL | 43 | .36980 | .0004 | .0009 |
| | CLAY, THOMAS W. | 44 | 1.78431 | .0020 | .0044 |
| | COLONY GAS CO. | 50 | 4.25186 | .0050 | .0104 |
| | CONTINENTAL OIL CO. | 55 | 8.36423 | .0096 | .0205 |
| | DYKES, J. A. | 70 | .10769 | .0002 | .0003 |
| | FLOYD, GALLANT | 105 | 1.28105 | .0014 | .0031 |
| | FLOYD, G. W. | 110 | .10904 | .0002 | .0003 |
| | GARNER, MAMIE | 141 | 3.03766 | .0035 | .0075 |
| | GARRETT, F. M. | 145 | .67503 | .0008 | .0016 |
| | GLESBY, VEDA MAE | 155 | .52114 | .0006 | .0013 |
| | GREENBRIER 60 LIMITED | 170 | 14.34780 | .0165 | .0352 |
| | GREENBRIER 61 LIMITED | 175 | 7.24391 | .0084 | .0177 |
| | HILLIARD, E. L. | 210 | .29229 | .0004 | .0007 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 2.56212 | .0029 | .0063 |
| | HUDNALL, JAMES | 220 | 4.09939 | .0048 | .0101 |
| | LOGAN, G. L. | 265 | .29229 | .0003 | .0007 |
| | LYONS, C. H., SR. | 270 | .29229 | .0003 | .0007 |
| | LYONS, C. H., JR. | 275 | .29229 | .0004 | .0007 |
| | LYONS, HALL M., SPECIAL | 280 | .29229 | .0003 | .0007 |
| | MURCHISON, J. W. | 295 | 4.11488 | .0048 | .0101 |
| | NORTHCUTT, MADELYN | 296 | 3.03766 | .0035 | .0074 |
| | PALMER, J. T. | 305 | .29229 | .0003 | .0008 |
| | PHILLIPS, B. F. | 325 | 4.99363 | .0058 | .0122 |
| | PHILLIPS, LEONARD W. | 335 | 2.60572 | .0030 | .0064 |
| | PIRTLE, G. W. | 350 | 3.88402 | .0045 | .0095 |
| | PROTHRO, JOHN E. | 356 | 1.78431 | .0021 | .0044 |
| | RAUCH, GERALD | 360 | .52114 | .0006 | .0013 |
| | SKLAR, ALBERT | 425 | 2.60572 | .0030 | .0063 |
| | WALKER, JAMES G., JR. | 467 | 1.56135 | .0018 | .0039 |
| | WARD, TRAVIS | 470 | 7.37252 | .0085 | .0180 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 12.54882 | .0145 | .0308 |
| 952 | FAIRWAY    STEPHENS UNIT | | | .3618 | .5221 |
| | ABENDROTH, G. F. | 5 | 2.64804 | .0096 | .0138 |
| | CITIES SERVICE OIL CO. | 35 | 4.02440 | .0145 | .0210 |
| | CLAY, CARROLL | 43 | .41920 | .0016 | .0022 |
| | CLAY, THOMAS W. | 44 | 2.02266 | .0073 | .0106 |
| | COLONY GAS CO. | 50 | 5.03050 | .0182 | .0263 |
| | CONTINENTAL OIL CO. | 55 | 9.24806 | .0334 | .0482 |
| | DYKES, J. A. | 70 | .97560 | .0036 | .0051 |
| | FLOYD, GALLANT | 105 | 1.25760 | .0045 | .0066 |
| | GLESBY, VEDA MAE | 155 | .50310 | .0018 | .0026 |
| | GREENBRIER 60 LIMITED | 170 | 14.08540 | .0510 | .0736 |
| | GREENBRIER 61 LIMITED | 175 | 8.04630 | .0291 | .0420 |
| | HILLIARD, E. L. | 210 | 2.64804 | .0096 | .0138 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 2.51525 | .0091 | .0131 |
| | HUDNALL, JAMES | 220 | 4.02440 | .0145 | .0210 |
| | LOGAN, G. L. | 265 | 2.64804 | .0096 | .0139 |
| | LYONS, C. H., SR. | 270 | 2.64805 | .0096 | .0138 |
| | LYONS, C. H., JR. | 275 | 2.64805 | .0096 | .0138 |
| | LYONS, HALL M., SPECIAL | 280 | 2.64804 | .0096 | .0138 |
| | PALMER, J. T. | 305 | 2.64804 | .0096 | .0139 |
| | PHILLIPS, LEONARD W. | 335 | 2.51520 | .0091 | .0131 |
| | PIRTLE, G. W. | 350 | .25920 | .0009 | .0014 |
| | PROTHRO, JOHN E. | 356 | 2.02266 | .0073 | .0105 |
| | RAUCH, GERALD | 360 | .50310 | .0018 | .0026 |
| | SKLAR, ALBERT | 425 | 2.51520 | .0091 | .0132 |
| | WALKER, JAMES G., JR. | 467 | 1.76992 | .0064 | .0092 |
| | WARD, TRAVIS | 470 | 7.14975 | .0259 | .0373 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 12.57620 | .0455 | .0657 |
| 953 | HUMBLE    THOMPSON | | | .0112 | .0458 |
| | HUMBLE OIL & REFINING CO. | 225 | 100.00000 | .0112 | .0458 |
| 954 | HAMILL    COOK | | | .5862 | .7344 |
| | HAMILL, CLAUDE B. | 190 | 100.00000 | .5862 | .7344 |

Table III
Page 22

TABLE III                                                                      PAGE NO.  23

| TRACT NO. | OPERATOR AND TRACT NAME WORKING INTEREST OWNERS | WIO CODE | PERCENT OWNERSHIP | UNIT PARTICIPATION (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|---|
| 956 | PHILLIPS   DEATON UNIT | | | .3695 | .5236 |
| | CITIES SERVICE OIL CO. | 35 | 1.20909 | .0045 | .0063 |
| | CLAY, CARROLL | 43 | .17272 | .0006 | .0009 |
| | CLAY, THOMAS W. | 44 | .83343 | .0031 | .0044 |
| | COLONY GAS CO. | 50 | 1.51137 | .0056 | .0079 |
| | CONTINENTAL OIL CO. | 55 | 3.18877 | .0118 | .0167 |
| | FLOYD, GALLANT | 105 | .37784 | .0013 | .0020 |
| | GLESBY, VEDA MAE | 155 | .15114 | .0006 | .0008 |
| | GREENBRIER 60 LIMITED | 170 | 4.23183 | .0156 | .0221 |
| | GREENBRIER 61 LIMITED | 175 | 3.19711 | .0119 | .0168 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 11.38444 | .0420 | .0596 |
| | HUDNALL, JAMES | 220 | 5.69222 | .0211 | .0298 |
| | HUDNALL, LOMETA | 221 | 2.84611 | .0105 | .0149 |
| | HUDNALL, OGDEN | 222 | 2.84611 | .0105 | .0149 |
| | PHILLIPS, LEONARD W. | 335 | .75568 | .0028 | .0040 |
| | PHILLIPS PETROLEUM CO. | 340 | 53.20625 | .1966 | .2785 |
| | PROTHRO, JOHN E. | 356 | .83342 | .0031 | .0044 |
| | RAUCH, GERALD | 360 | .15114 | .0005 | .0008 |
| | SKLAR, ALBERT | 425 | .75568 | .0028 | .0040 |
| | WALKER, JAMES G., JR. | 467 | .72928 | .0027 | .0038 |
| | WARD, TRAVIS | 470 | 2.14796 | .0079 | .0112 |
| | WINNELL 1961 EXPLORATION CO. | 485 | 3.77841 | .0140 | .0198 |
| 957 | PHILLIPS   GRIFFIN UNIT | | | .4573 | .5829 |
| | CITIES SERVICE OIL CO. | 35 | 1.30273 | .0060 | .0076 |
| | CLAY, CARROLL | 43 | .18949 | .0008 | .0011 |
| | CLAY, THOMAS W. | 44 | .91430 | .0042 | .0053 |
| | COLONY GAS CO. | 50 | 1.62842 | .0075 | .0095 |
| | CONTINENTAL OIL CO. | 55 | 3.49817 | .0159 | .0204 |
| | FLOYD, GALLANT | 105 | .40711 | .0019 | .0024 |
| | GLESBY, VEDA MAE | 155 | .16284 | .0008 | .0009 |
| | GREENBRIER 60 LIMITED | 170 | 4.55957 | .0208 | .0266 |
| | GREENBRIER 61 LIMITED | 175 | 3.50110 | .0160 | .0204 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 13.02734 | .0596 | .0760 |
| | HUDNALL, JAMES | 220 | 6.51367 | .0298 | .0379 |
| | HUDNALL, LOMETA | 221 | 3.25683 | .0149 | .0190 |
| | HUDNALL, OGDEN | 222 | 3.25684 | .0149 | .0190 |
| | HUMBLE OIL & REFINING CO. | 225 | 21.40750 | .0979 | .1248 |
| | PHILLIPS, LEONARD W. | 335 | .81421 | .0037 | .0047 |
| | PHILLIPS PETROLEUM CO. | 340 | 26.48312 | .1211 | .1544 |
| | PROTHRO, JOHN E. | 356 | .91430 | .0042 | .0053 |
| | RAUCH, GERALD | 360 | .16284 | .0007 | .0010 |
| | SKLAR, ALBERT | 425 | .81421 | .0037 | .0047 |
| | WALKER, JAMES G., JR. | 467 | .80005 | .0037 | .0047 |
| | WARD, TRAVIS | 470 | 2.31431 | .0106 | .0135 |
| | WINNELL 1961 EXPLORATION CO. | 485 | 4.07105 | .0186 | .0237 |
| 958 | PHILLIPS   COOK A UNIT | | | .7106 | .7094 |
| | CITIES SERVICE OIL CO. | 35 | 31.05331 | .2207 | .2203 |
| | CLAY, CARROLL | 43 | .00694 | .0000 | .0000 |
| | CLAY, THOMAS W. | 44 | .03349 | .0003 | .0003 |
| | COLONY GAS CO. | 50 | .08227 | .0005 | .0006 |
| | CONTINENTAL OIL CO. | 55 | .15281 | .0011 | .0010 |
| | FAIR OIL CO. | 95 | 6.28669 | .0447 | .0446 |
| | FLOYD, GALLANT | 105 | .02057 | .0001 | .0002 |
| | GLESBY, VEDA MAE | 155 | .00823 | .0001 | .0000 |
| | GREENBRIER 60 LIMITED | 170 | .23034 | .0016 | .0017 |
| | GREENBRIER 61 LIMITED | 175 | .13300 | .0010 | .0009 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | .04113 | .0003 | .0003 |
| | HUDNALL, JAMES | 220 | .06581 | .0004 | .0005 |
| | PHILLIPS, LEONARD W. | 335 | .04113 | .0003 | .0003 |
| | PHILLIPS PETROLEUM CO. | 340 | 61.40956 | .4364 | .4356 |
| | PROTHRO, JOHN E. | 356 | .03348 | .0002 | .0003 |
| | RAUCH, GERALD | 360 | .00823 | .0001 | .0000 |
| | SKLAR, ALBERT | 425 | .04113 | .0003 | .0003 |
| | WALKER, JAMES G., JR. | 467 | .02930 | .0002 | .0002 |
| | WARD, TRAVIS | 470 | .11692 | .0008 | .0008 |
| | WINNELL 1961 EXPLORATION CO. | 485 | .20566 | .0015 | .0015 |
| 959 | MURCHISON   NORTHCUTT UNIT | | | .3837 | .5459 |
| | MURCHISON, J. W. | 295 | 67.99025 | .2609 | .3712 |
| | PHILLIPS PETROLEUM CO. | 340 | 32.00975 | .1228 | .1747 |
| 960 | TEXACO   COOK UNIT | | | .1532 | .3419 |
| | FRANKFORT OIL CO. | 132 | 12.81120 | .0196 | .0438 |
| | KIRBY, MARY M. | 234 | 8.54080 | .0131 | .0292 |
| | SMITH, BRUCE | 428 | 12.81120 | .0196 | .0438 |
| | TEXACO, INC. | 455 | 65.83680 | .1009 | .2251 |
| 961 | CITIES SERVICE   DICKSON UNIT | | | .2116 | .4685 |
| | CITIES SERVICE OIL CO. | 35 | 91.66667 | .1940 | .4240 |
| | FAIR OIL CO. | 95 | 8.33333 | .0176 | .0385 |

Table III
Page 23

TABLE III

| TRACT NO. | OPERATOR AND TRACT NAME WORKING INTEREST OWNERS | WIO CODE | PERCENT OWNERSHIP | UNIT PARTICIPATION (PERCENT) PHASE II | PHASE I |
|---|---|---|---|---|---|
| 962 | GULF    AVERYT-COOK UNIT | | | .3416 | .5250 |
| | CITIES SERVICE OIL CO. | 35 | .52687 | .0018 | .0028 |
| | CLAY, CARROLL | 43 | .07664 | .0003 | .0004 |
| | CLAY, THOMAS W. | 44 | .36977 | .0012 | .0019 |
| | COLONY GAS CO. | 50 | .65859 | .0023 | .0035 |
| | CONTINENTAL OIL CO. | 55 | 3.39059 | .0116 | .0178 |
| | FLOYD, GALLANT | 105 | .16465 | .0005 | .0008 |
| | GLESBY, VEDA MAE | 155 | .06586 | .0002 | .0004 |
| | GREENBRIER 60 LIMITED | 170 | 1.84406 | .0063 | .0097 |
| | GREENBRIER 61 LIMITED | 175 | 1.41598 | .0049 | .0074 |
| | GULF OIL CORP. | 180 | 58.77500 | .2008 | .3086 |
| | HUDNALL, PIRTLE, & LOETTERLE | 215 | 3.29296 | .0112 | .0173 |
| | HUDNALL, JAMES | 220 | 5.26875 | .0180 | .0276 |
| | PAN AMERICAN PETROLEUM CORP. | 310 | 7.02500 | .0240 | .0369 |
| | PHILLIPS, LEONARD W. | 335 | .32930 | .0011 | .0017 |
| | PROTHRO, JOHN E. | 356 | .36977 | .0013 | .0020 |
| | PURE OIL CO. | 357 | 13.12500 | .0448 | .0689 |
| | RAUCH, GERALD | 360 | .06586 | .0002 | .0003 |
| | SKLAR, ALBERT | 425 | .32930 | .0012 | .0017 |
| | WALKER, JAMES G., JR. | 467 | .32357 | .0011 | .0017 |
| | WARD, TRAVIS | 470 | .93599 | .0032 | .0050 |
| | WINWELL 1961 EXPLORATION CO. | 485 | 1.64649 | .0056 | .0086 |
| 963 | GULF    AVERYT | | | .0039 | .0244 |
| | GULF OIL CORP. | 180 | 100.00000 | .0039 | .0244 |
| 964 | MURCHISON    BEARD | | | .0466 | .2007 |
| | MURCHISON, J. W. | 295 | 100.00000 | .0466 | .2007 |
| 965 | MURCHISON    BEARD A | | | .1013 | .1706 |
| | MURCHISON, J. W. | 295 | 100.00000 | .1013 | .1706 |
| 967 | MURCHISON    ELLIS UNIT | | | .0105 | .0740 |
| | MURCHISON, J. W. | 295 | 55.97125 | .0059 | .0414 |
| | PHILLIPS PETROLEUM CO. | 340 | 15.58375 | .0016 | .0116 |
| | TEXACO, INC. | 455 | 28.44500 | .0030 | .0210 |
| 968 | TEXACO    JOWELL | | | .0237 | .0916 |
| | HENDERSON, MRS. RUTH | 203 | 3.12500 | .0007 | .0029 |
| | ROTHSCHILD, SIGMOND | 410 | 25.00000 | .0060 | .0229 |
| | TEXACO, INC. | 455 | 62.50000 | .0148 | .0572 |
| | WILSON, MAXIE H. | 472 | 9.37500 | .0022 | .0086 |
| 969 | PHILLIPS    BAKER | | | .0056 | .0405 |
| | PHILLIPS PETROLEUM CO. | 340 | 100.00000 | .0056 | .0405 |
| 970 | SKELLY    BEARD | | | .0148 | .0857 |
| | SKELLY OIL CO. | 421 | 100.00000 | .0148 | .0857 |
| 971 | UNRESOLVED | | | .0007 | .0042 |
| | UNRESOLVED | 510 | 100.00000 | .0007 | .0042 |
| 972 | HUGHEY    MOREN UNIT | | | .1502 | .3812 |
| | GREENBRIER 63 LIMITED | 176 | 55.00000 | .0826 | .2097 |
| | GUINN, J. DONALD | 178 | 1.00000 | .0015 | .0038 |
| | HEDGE, R. H., JR. | 201 | 6.25000 | .0094 | .0238 |
| | HUGHEY, W. R., OPERATING CO. | 224 | 6.25000 | .0094 | .0238 |
| | KNIGHT, WILL | 236 | .50000 | .0007 | .0019 |
| | LASATER, WILBERT | 240 | 4.00000 | .0060 | .0153 |
| | LOWRY, ORAN | 267 | 2.00000 | .0031 | .0076 |
| | MINTON, JOHN | 290 | .50000 | .0007 | .0019 |
| | POTTER, CHARLES F. | 353 | 2.00000 | .0030 | .0076 |
| | ROTARY DRILLING, INC. | 407 | 6.25000 | .0094 | .0239 |
| | SPRUIELL, Z. J. | 431 | 6.25000 | .0094 | .0238 |
| | TEXACO, INC. | 455 | 10.00000 | .0150 | .0381 |
| 973 | PHILLIPS    SLAUGHTER | | | .0001 | .0029 |
| | PHILLIPS PETROLEUM CO. | 340 | 100.00000 | .0001 | .0029 |
| 974 | TEXACO    BEARD | | | .0025 | .0316 |
| | GREUSEL, BESSIE | 177 | 37.50000 | .0009 | .0119 |
| | TEXACO, INC. | 455 | 50.00000 | .0013 | .0158 |
| | WYNNE, TODDIE L. | 504 | 12.50000 | .0003 | .0039 |
| 975 | TEXACO    ELROD | | | .0113 | .0755 |
| | TEXACO, INC. | 455 | 100.00000 | .0113 | .0755 |
| 976 | TEXACO    COOK | | | .0000 | .0007 |
| | TEXACO, INC. | 455 | 100.00000 | .0000 | .0007 |
| | | | | 100.0000 | 100.0000 |

Table III
Page 24

EXHIBIT   " D "                                    *PASO-T-1955-2*

Attached to and made a part of ....Unit..Operating..Agreement,.............................
.........................Fairway..(James..Lime)..Unit,.....................................................
.....................Henderson..and..Anderson..Counties,..Texas.................................
.......................................................................................................

# ACCOUNTING PROCEDURE
## (UNIT AND JOINT LEASE OPERATIONS)
### I. GENERAL PROVISIONS

**1. Definitions**

"Joint property" as herein used shall be construed to mean the subject area covered by the agreement to which this "Accounting Procedure" is attached.

"Operator" as herein used shall be construed to mean the party designated to conduct the development and operation of the subject area for the joint account of the parties hereto.

"Non-Operator" as herein used shall be construed to mean any one or more of the non-operating parties.

**2. Statements and Billings**

Operator shall bill Non-Operator on or before the last day of each month for its proportionate share of costs and expenditures during the preceding month. Such bills will be accompanied by statements, reflecting the total costs and charges as set forth under Subparagraph .....C .... below:

A. Statement in detail of all charges and credits to the joint account.

B. Statement of all charges and credits to the joint account, summarized by appropriate classifications indicative of the nature thereof.

C. Statements as follows:

    (1) Detailed statement of material ordinarily considered controllable by operators of oil and gas properties;

    (2) Statement of ordinary charges and credits to the joint account summarized by appropriate classifications indicative of the nature thereof; and

    (3) Detailed statement of any other charges and credits.

**3. Payments by Non-Operator**

Each party shall pay its proportion of all such bills within fifteen (15) days after receipt thereof. If payment is not made within such time, the unpaid balance shall bear interest at the rate of six per cent (6%) per annum until paid.

**4. Adjustments**

Payment of any such bills shall not prejudice the right of Non-Operator to protest or question the correctness thereof. Subject to the exception noted in Paragraph 5 of this section I, all statements rendered to Non-Operator by Operator during any calendar year shall conclusively be presumed to be true and correct after twenty-four (24) months following the end of any such calendar year, unless within the said twenty-four (24) month period Non-Operator takes written exception thereto and makes claim on Operator for adjustment. Failure on the part of Non-Operator to make claim on Operator for adjustment within such period shall establish the correctness thereof and preclude the filing of exceptions thereto or making of claims for adjustment thereon. The provisions of this paragraph shall not prevent adjustments resulting from physical inventory of property as provided for in Section VI, Inventories, hereof.

**5. Audits**

A Non-Operator, upon notice in writing to Operator and all other Non-Operators, shall have the right to audit Operator's accounts and records relating to the accounting hereunder for any calendar year within the twenty-four (24) month period following the end of such calendar year, provided, however, that Non-Operator must take written exception to and make claim upon the Operator for all discrepancies disclosed by said audit within said twenty-four (24) month period. Where there are two or more Non-Operators, the Non-Operators shall make every reasonable effort to conduct joint or simultaneous audits in a manner which will result in a minimum of inconvenience to the Operator.

## II. DEVELOPMENT AND OPERATING CHARGES

*Subject to limitations hereinafter prescribed, Operator shall charge the joint account with the following items:*

**1. Rentals and Royalties**

Delay or other rentals, when such rentals are paid by Operator for the joint account; royalties, when not paid directly to royalty owners by the purchaser of the oil, gas, casinghead gas, or other products.

**2. Labor**

A. Salaries and wages of Operator's employees directly engaged on the joint property in the development, maintenance, and operation thereof, including salaries or wages paid to geologists and other employees who are temporarily assigned to and directly employed on the joint property.

B. Operator's cost of holiday, vacation, sickness and disability benefits, and other customary allowances applicable to the salaries and wages chargeable under Subparagraph 2 A and Paragraph 11 of this Section II. Costs under this Subparagraph 2 B may be charged on a "when and as paid basis" or by "percentage assessment" on the amount of salaries and wages chargeable under Subparagraph 2 A and Paragraph 11 of this Section II. If percentage assessment is used, the rate shall be based on the Operator's cost experience.

C. Costs of expenditures or contributions made pursuant to assessments imposed by governmental authority which are applicable to Operator's labor cost of salaries and wages as provided under Subparagraphs 2 A, 2 B, and Paragraph 11 of this Section II.

**3. Employee Benefits**

Operator's current cost of established plans for employees' group life insurance, hospitalization, pension, retirement, stock purchase, thrift, bonus, and other benefit plans of a like nature, applicable to Operator's labor cost, provided that the total of such charges shall not exceed ten per cent (10%) of Operator's labor costs as provided in Subparagraphs A and B of Paragraph 2 of this Section II and in Paragraph 11 of this Section II.

**4. Material**

Material, equipment, and supplies purchased or furnished by Operator for use of the joint property. So far as it is reasonably practical and consistent with efficient and economical operation, only such material shall be purchased for or transferred to the joint property as may be required for immediate use; and the accumulation of surplus stocks shall be avoided.

**5. Transportation**

Transportation of employees, equipment, material, and supplies necessary for the development, maintenance, and operation of the joint property subject to the following limitations:

A. If material is moved to the joint property from vendor's or from the Operator's warehouse or other properties, no charge shall be made to the joint account for a distance greater than the distance from the nearest reliable supply store or railway receiving point where such material is available, except by special agreement with Non-Operator.

—1—

EXHIBIT - D

    B. If surplus material is moved to Operator's warehouse or other storage point, no charge shall be made to the joint account for a distance greater than the distance from the nearest reliable supply store or railway receiving point, except by special agreement with Non-Operator. No charge shall be made to the joint account for moving material to other properties belonging to Operator, except by special agreement with Non-Operator.

## 6. Service

    A. Outside Services:

        The cost of contract services and utilities procured from outside sources.

    B. Use of Operator's Equipment and Facilities:

        Use of and service by Operator's exclusively owned equipment and facilities as provided in Paragraph 5 of Section III entitled "Operator's Exclusively Owned Facilities."

## 7. Damages and Losses to Joint Property and Equipment

All costs or expenses necessary to replace or repair damages or losses incurred by fire, flood, storm, theft, accident, or any other cause not controllable by Operator through the exercise of reasonable diligence. Operator shall furnish Non-Operator written notice of damages or losses incurred as soon as practicable after report of the same has been received by Operator.

## 8. Litigation Expense

All costs and expenses of litigation, or legal services otherwise necessary or expedient for the protection of the joint interests, including attorneys' fees and expenses as hereinafter provided, together with all judgments obtained against the parties or any of them on account of the joint operations under this agreement, and actual expenses incurred by any party or parties hereto in securing evidence for the purpose of defending against any action or claim prosecuted or urged against the joint account or the subject matter of this agreement.

    A. If a majority of the interests hereunder shall so agree, actions or claims affecting the joint interests hereunder may be handled by the legal staff of one or more of the parties hereto; and a charge commensurate with cost of providing and furnishing such services rendered may be made against the joint account; but no such charge shall be made until approved by the legal departments of or attorneys for the respective parties hereto.

    B. Fees and expenses of outside attorneys shall not be charged to the joint account unless authorized by the majority of the interests hereunder.

## 9. Taxes

All taxes of every kind and nature assessed or levied upon or in connection with the properties which are the subject of this agreement, the production therefrom or the operation thereof, and which taxes have been paid by the Operator for the benefit of the parties hereto.

## 10. Insurance and Claims

    A. Premiums paid for insurance required to be carried for the benefit of the joint account, together with all expenditures incurred and paid in settlement of any and all losses, claims, damages, judgments, and other expenses, including legal services, not recovered from insurance carrier.

    B. If no insurance is required to be carried, all actual expenditures incurred and paid by Operator in settlement of any and all losses, claims, damages, judgments, and any other expenses, including legal services, shall be charged to the joint account.

## 11. District and Camp Expense (Field Supervision and Camp Expense)

A pro rata portion of the salaries and expenses of Operator's production superintendent and other employees serving the joint property and other properties of the Operator in the same operating area, whose time is not allocated directly to the properties, and a pro rata portion of the cost of maintaining and operating a production office known as Operator's ........................Fairway..Field..Office.................................................. office located at or near ...........................Poynor,...Texas,........................ ................ (or a comparable office if location changed), and necessary suboffices (if any), maintained for the convenience of the above-described office, and all necessary camps, including housing facilities for employees if required, used in the conduct of the operations on the joint property and other properties operated in the same locality. The expense of, less any revenue from, these facilities should be inclusive of depreciation or a fair monthly rental in lieu of depreciation on the investment. Such charges shall be apportioned to all properties served on some equitable basis consistent with Operator's accounting practice, which is on a per well basis with one (1) drilling well being equivalent to four (4) producing wells.

## 12. Administrative Overhead

Operator shall have the right to assess against the joint property covered hereby the following management and administrative overhead charges, which shall be in lieu of all expenses of all offices of the Operator not covered by Section II, Paragraph 11, above, including salaries and expenses of personnel assigned to such offices, except that salaries of geologists and other employees of Operator who are temporarily assigned to and directly serving on the joint property will be charged as provided in Section II, Paragraph 2, above. Salaries and expenses of other technical employees assigned to such offices will be considered as covered by overhead charges in this paragraph unless charges for such salaries and expenses are agreed upon between Operator and Non-Operator as a direct charge to the joint property.

### WELL BASIS (Rate Per Well Per Month)

| Well Depth | DRILLING WELL RATE | PRODUCING WELL RATE (Use Completion Depth) | | |
|---|---|---|---|---|
| | Each Well | ~~FROM~~ | ~~TO~~ | ~~EACH MONTH OVER 7,500~~ |
| Unitized Zone | $400.00 | | $35.00 each well | |
| | | | | |
| | | | | |

    A. Overhead charges for drilling wells shall begin on the date each well is spudded and terminate when it is on production or is plugged, as the case may be, except that no charge shall be made during the suspension of drilling operations for fifteen (15) or more consecutive days.

    B. In connection with overhead charges, the status of wells shall be as follows:

        (1) Injection wells for recovery operations, such as for repressure or water flood, shall be included in the overhead schedule the same as producing oil wells.

        (2) Water supply wells utilized for water flooding operations shall be included in the overhead schedule the same as producing oil wells.

        (3) Producing gas wells shall be included in the overhead schedule the same as producing oil wells.

— 2 —

EXHIBIT - D

(4) Wells permanently shut down but on which plugging operations are deferred shall be dropped from the overhead schedule at the time the shutdown is effected.  When such wells are plugged, overhead shall be charged at the producing well rate during the time required for the plugging operation.

(5) Wells being plugged back, drilled deeper, or converted to a source or input well shall be included in the overhead schedule the same as drilling wells.

(6) Temporarily shut-down wells (other than by governmental regulatory body) which are not produced or worked upon for a period of a full calendar month shall not be included in the overhead schedule; however, wells shut in by governmental regulatory body shall be included in the overhead schedule only in the event the allowable production is transferred to other wells on the same property.  In the event of a unit allowable, all wells capable of producing will be counted in determining the overhead charge.

(7) Wells completed in dual or multiple horizons shall be considered as two wells in the producing overhead schedule.

(8) Lease salt water disposal wells shall not be included in the overhead schedule unless such wells are used in a secondary recovery program on the joint property.

C. The above overhead schedule for producing wells shall be applied to the total number of wells operated under the Operating Agreement to which this accounting procedure is attached, irrespective of individual leases.

D. The above specific overhead rates may be amended from time to time by agreement between Operator and Non-Operator if, in practice, they are found to be insufficient or excessive.

E. It is specifically understood that the above overhead rates apply only to drilling and producing operations and are not intended to cover the construction or operation of additional facilities such as, but not limited to, gasoline plants, compressor plants, water injection facilities, gas injection facilities, repressuring projects, salt water disposal systems, and similar installations.  If at any time any or all of these become necessary to the operation, Operator shall have the right to charge to the joint account 5% of the first $25,000.00 cost incurred on any one project and 2% of such total costs exceeding $25,000.00.  Overhead on major repairs, alterations or additions to such facilities costing in excess of $5,000.00 shall be charged to the joint account at the rate of 5%.

Administrative overhead covering operation of any of the facilities mentioned above will be determined and agreed to by the Operators at such time as it becomes necessary.

## 13. Operator's Fully Owned Warehouse Operating and Maintenance Expense
(Describe fully the agreed procedure to be followed by the Operator.)

........................................................................................................................................................
........................................................................................................................................................
.........................   N O N E   .....................................................................................................
........................................................................................................................................................
........................................................................................................................................................

## 14. Other Expenditures
Any expenditure, other than expenditures which are covered and dealt with by the foregoing provisions of this Section II, incurred by the Operator for the necessary and proper development, maintenance, and operation of the joint property.

## III. BASIS OF CHARGES TO JOINT ACCOUNT

### 1. Purchases
Material and equipment purchased and service procured shall be charged at price paid by Operator after deduction of all discounts actually received.

### 2. Material Furnished by Operator
Material required for operations shall be purchased for direct charge to joint account whenever practicable, except that Operator may furnish such material from Operator's stocks under the following conditions:

A. New Material (Condition "A")

(1) New material transferred from Operator's warehouse or other properties shall be priced f.o.b. the nearest reputable supply store or railway receiving point, where such material is available, at current replacement cost of the same kind of material.  This will include material such as tanks, pumping units, sucker rods, engines, and other major equipment.  Tubular goods, two-inch (2") and over, shall be priced on carload basis effective at date of transfer and f.o.b. railway receiving point nearest the joint account operation, regardless of quantity transferred.

(2) Other material shall be priced on basis of a reputable supply company's preferential price list effective at date of transfer and f.o.b. the store or railway receiving point nearest the joint account operation where such material is available.

(3) Cash discount shall not be allowed.

B. Used Material (Condition "B" and "C")

(1) Material which is in sound and serviceable condition and is suitable for reuse without reconditioning shall be classed as Condition "B" and priced at seventy-five per cent (75%) of new price.

(2) Material which cannot be classified as Condition "B" but which,

(a) After reconditioning will be further serviceable for original function as good secondhand material (Condition "B"), or

(b) Is serviceable for original function but substantially not suitable for reconditioning,

shall be classed as Condition "C" and priced at fifty per cent (50%) of new price.

(3) Material which cannot be classified as Condition "B" or Condition "C" shall be priced at a value commensurate with its use.

(4) Tanks, buildings, and other equipment involving erection costs shall be charged at applicable percentage of knocked-down new price.

3. **Premium Prices**

Whenever materials and equipment are not readily obtainable at the customary supply point and at prices specified in Paragraphs 1 and 2 of this Section III because of national emergencies, strikes or other unusual causes over which the Operator has no control, the Operator may charge the joint account for the required materials on the basis of the Operator's direct cost and expense incurred in procuring such materials, in making it suitable for use, and in moving it to the location, provided, however, that notice in writing is furnished to Non-Operator of the proposed charge prior to billing the Non-Operator for the material and/or equipment acquired pursuant to this provision, whereupon Non-Operator shall have the right, by so electing and notifying Operator within 10 days after receiving notice from the Operator, to furnish in kind, or in tonnage as the parties may agree, at the location, nearest railway receiving point, or Operator's storage point within a comparable distance, all or part of his share of material and/or equipment suitable for use and acceptable to the Operator. Transportation costs on any such material furnished by Non-Operator, at any point other than at the location, shall be borne by such Non-Operator. If, pursuant to the provisions of this paragraph, any Non-Operator furnishes material and/or equipment in kind, the Operator shall make appropriate credits therefor to the account of said Non-Operator.

4. **Warranty of Material Furnished by Operator**

Operator does not warrant the material furnished beyond or back of the dealer's or manufacturer's guaranty; and in case of defective material, credit shall not be passed until adjustment has been received by Operator from the manufacturers or their agents.

5. **Operator's Exclusively Owned Facilities**

The following rates shall apply to service rendered to the joint account by facilities owned exclusively by Operator:

A. Water, fuel, power, compressor and other auxiliary services at rates commensurate with cost of providing and furnishing such service to the joint account but not exceeding rates currently prevailing in the field where the joint property is located.

B. Automotive equipment at rates commensurate with cost of ownership and operation. Such rates should generally be in line with the schedule of rates adopted by the Petroleum Motor Transport Association, or some other recognized organization, as recommended uniform charges against joint account operations and revised from time to time. Automotive rates shall include cost of oil, gas, repairs, insurance, and other operating expense and depreciation; and charges shall be based on use in actual service on, or in connection with, the joint account operations. Truck and tractor rates may include wages and expenses of driver.

C. A fair rate shall be charged for the use of drilling and cleaning-out tools and any other items of Operator's fully owned machinery or equipment which shall be ample to cover maintenance, repairs, depreciation, and the service furnished the joint property; provided that such charges shall not exceed those currently prevailing in the field where the joint property is located. Pulling units shall be charged at hourly rates commensurate with the cost of ownership and operation, which shall include repairs and maintenance, operating supplies, insurance, depreciation, and taxes. Pulling unit rates may include wages and expenses of the operator.

D. A fair rate shall be charged for laboratory services performed by Operator for the benefit of the joint account, such as gas, water, core, and any other analyses and tests; provided such charges shall not exceed those currently prevailing if performed by outside service laboratories.

E. Whenever requested, Operator shall inform Non-Operator in advance of the rates it proposes to charge.

F. Rates shall be revised and adjusted from time to time when found to be either excessive or insufficient.

### IV.  DISPOSAL OF LEASE EQUIPMENT AND MATERIAL

The Operator shall be under no obligation to purchase interest of Non-Operator in surplus new or secondhand material. The disposition of major items of surplus material, such as derricks, tanks, engines, pumping units, and tubular goods, shall be subject to mutual determination by the parties hereto; provided Operator shall have the right to dispose of normal accumulations of junk and scrap material either by transfer or sale from the joint property.

1. **Material Purchased by the Operator or Non-Operator**

Material purchased by either the Operator or Non-Operator shall be credited by the Operator to the joint account for the month in which the material is removed by the purchaser.

2. **Division in Kind**

Division of material in kind, if made between Operator and Non-Operator, shall be in proportion to their respective interests in such material. Each party will thereupon be charged individually with the value of the material received or receivable by each party, and corresponding credits will be made by the Operator to the joint account. Such credits shall appear in the monthly statement of operations.

3. **Sales to Outsiders**

Sales to outsiders of material from the joint property shall be credited by Operator to the joint account at the net amount collected by Operator from vendee. Any claims by vendee for defective material or otherwise shall be charged back to the joint account if and when paid by Operator.

### V.  BASIS OF PRICING MATERIAL TRANSFERRED FROM JOINT ACCOUNT

*Material purchased by either Operator or Non-Operator or divided in kind, unless otherwise agreed, shall be valued on the following basis:*

1. **New Price Defined**

New price as used in the following paragraphs shall have the same meaning and application as that used above in Section III, "Basis of Charges to Joint Account."

2. **New Material**

New material (Condition "A"), being new material procured for the joint account but never used thereon, at one hundred per cent (100%) of current new price (plus sales tax if any).

3. **Good Used Material**

Good used material (Condition "B"), being used material in sound and serviceable condition, suitable for reuse without reconditioning:

A. At seventy-five per cent (75%) of current new price if material was charged to joint account as new, or

B. At sixty-five per cent (65%) of current new price if material was originally charged to the joint property as secondhand at seventy-five per cent (75%) of new price.

4. **Other Used Material**

Used material (Condition "C"), at fifty per cent (50%) of current new price, being used material which:

A. After reconditioning will be further serviceable for original function as good secondhand material (Condition "B"), or

B. Is serviceable for original function but substantially not suitable for reconditioning.

5. **Bad-Order Material**

Material and equipment (Condition "D"), which is no longer usable for its original purpose without excessive repair cost but is further usable for some other purpose, shall be priced on a basis comparable with that of items normally used for that purpose.

6. **Junk**

Junk (Condition "E"), being obsolete and scrap material, at prevailing prices.

7. **Temporarily Used Material**

When the use of material is temporary and its service to the joint account does not justify the reduction in price as provided in Paragraph 3 B, above, such material shall be priced on a basis that will leave a net charge to the joint account consistent with the value of the service rendered.

–4–

## VI. INVENTORIES

1. **Periodic Inventories, Notice and Representation**

   At reasonable intervals, inventories shall be taken by Operator of the joint account material, which shall include all such material as is ordinarily considered controllable by operators of oil and gas properties.

   Written notice of intention to take inventory shall be given by Operator at least thirty (30) days before any inventory is to begin so that Non-Operator may be represented when any inventory is taken.

   Failure of Non-Operator to be represented at an inventory shall bind Non-Operator to accept the inventory taken by Operator, who shall in that event furnish Non-Operator with a copy thereof.

2. **Reconciliation and Adjustment of Inventories**

   Reconciliation of inventory with charges to the joint account shall be made by each party at interest, and a list of overages and shortages shall be jointly determined by Operator and Non-Operator.

   Inventory adjustments shall be made by Operator with the joint account for overages and shortages, but Operator shall be held accountable to Non-Operator only for shortages due to lack of reasonable diligence.

3. **Special Inventories**

   Special inventories may be taken, at the expense of the purchaser, whenever there is any sale or change of interest in the joint property; and it shall be the duty of the party selling to notify all other parties hereto as quickly as possible after the transfer of interest takes place. In such cases, both the seller and the purchaser shall be represented and shall be governed by the inventory so taken.

EXHIBIT - D

EXHIBIT E

UNIT OPERATING AGREEMENT
FAIRWAY (JAMES LIME) UNIT

INSURANCE

A.  Insurance.  Unit Operator shall carry the following insurance with respect to Unit Operations subject to this agreement:

1.  Workmen's Compensation as required by the laws of the State of Texas, and Employer's Liability Insurance of $100,000.00.

2.  Comprehensive General Public Liability Insurance in the amount of $100,000.00 for injury or death of one person, and $300,000.00 for injury or death of more than one person in any one accident and Property Damage Insurance with limits of $25,000.00 for any one accident.

3.  Automobile Public Liability and Property Damage Insurance in the amount of $100,000.00 for injury or death of one person and $300,000.00 for injury or death of more than one person in any one automobile accident, and Property Damage Insurance to the extent of $25,000.00 as an aggregate for any automobile accident.

4.  Such additional insurance as may be required by the Working Interest Owners.

B.  Unit Operator shall not carry insurance for the benefit of the joint account covering loss of or damage to the jointly owned property, the Unitized Formation or production therefrom caused by fire, explosion, windstorn, tornado, flood, vandalism, malicious mischief, or other extended perils, and the joint account shall be charged with all loss and expenditures caused or incurred as the result thereof or as the result of any other casualty for which Unit Operator is not required to carry insurance hereunder.

C.  It is understood and agreed that Unit Operator is not a warrantor of the financial responsibility of the insurer with whom such insurance is carried, and that except for willful negligence Unit Operator shall not be liable to non-operators for any loss suffered on account of the insufficiency of the insurance carried, or of the insurers with whom carried.

D.  If the parties hereto or any of them insure their respective risks beyond the specific limits of insurance required to be carried by the Unit Operator under the terms of the agreement, the benefits of such insurance shall inure to the parties procuring and maintaining the same, respectively, and the cost of such insurance shall be borne by such parties, respectively, without reimbursement one from the other and without entering into the accounting hereunder.



FAIRWAY ( JAMES LIME ) FIELD

ANDERSON & HENDERSON COUNTIES , TEXAS

ISOPACH MAP – NET PAY
( PRODUCTIVE THICKNESS ABOVE WATER )

FAIRWAY TECHNICAL COMMITTEE

DATE: APRIL 10,1965



FAIRWAY (JAMES LIME) FIELD

ANDERSON & HENDERSON COUNTIES, TEXAS

FAIRWAY TECHNICAL COMMITTEE

DATE: APRIL 10, 1963



CROSS-SECTION
TYPICAL FAULTED INTERVAL

FAIRWAY (JAMES LIME ) FIELD

ANDERSON & HENDERSON COUNTIES, TEXAS

STRUCTURE MAP

ON

TOP OF JAMES POROSITY

FAIRWAY TECHNICAL COMMITTEE

DATE : APRIL 15,1965

C O N F O R M E D

AGREEMENT
FOR CONSTRUCTION AND OPERATION
OF THE FAIRWAY GAS PLANT
ANDERSON AND HENDERSON COUNTIES, TEXAS

THIS AGREEMENT, entered into as of the ___9th___ day of _____May_____,
1962__, by and between the parties who execute this agreement within the time herein-
after provided, sometimes called herein "Plant Owners".

W I T N E S S E T H:

WHEREAS, each party hereto owns or has the right to produce Gas from the
Fairway Field in Anderson and Henderson Counties, Texas, as outlined in Exhibit "A"
attached hereto and hereinafter referred to as "Plant Area", and the parties hereto
desire to construct and operate gas gathering, compression and Plant facilities to
extract Products from their Gas;

NOW, THEREFORE, in consideration of the mutual covenants and agreements
herein contained, it is agreed by and between the parties hereto as follows:

Section 1

DEFINITIONS

1.1  The words defined in this Section shall have the following meanings
when used herein:

(a) The word "Gas" shall mean all vaporized hydrocarbons, whether
produced from oil formations with oil or from gas or gas-condensate for-
mations, or by induction of gas with compressors or other means of
flowing oil.

(b) The word "Plant" shall mean all compressors, machinery, equipment,
fixtures, appliances, pipes, valves, fittings, and material of every
nature and kind comprising the Plant to be constructed by the parties
hereto, the Plant site, all buildings and structures of every kind to be
located on the site of the Plant, reasonably required for the operation
of the Plant, all easements reasonably required for the operation of
the Plant, gas gathering systems including meters and meter runs, water
wells and water gathering systems, and all other facilities and appurte-
nances deemed by the parties hereto to be necessary for the operation
of the Plant and constructed by the parties hereto as a part of the
Plant; same is sometimes herein referred to as the "Fairway Gas Plant".

(c) "Plant Area" shall mean all that certain area located in Anderson and Henderson Counties, Texas, inside the heavy dark line on the map attached hereto and made a part hereof as Exhibit "A", or any enlargements of said area approved by Plant Owners voting in the manner provided in Section 5 hereof by a vote of eighty-five percent (85%) of the Voting Interest; provided, however, in order to defeat or disapprove any enlargement of Plant Area shall require the vote of three (3) or more parties owning, in the aggregate, fifteen percent (15%) or more of the Voting Interest.

(d) The word "Products" shall mean all hydrocarbons or any mixture thereof that the parties hereto may condense from, extract from or separate out of the Gas that is delivered to the Plant, including but not by way of limitation, natural gasoline, butanes, propane and ethane.

(e) "Residue Gas" shall mean that portion of the Gas remaining after the extraction of Plant Products, incidental Gas lost in handling, and the use of Gas for fuel in the Plant and related facilities.

(f) "Plant Operator" shall mean the party chosen below to operate the Fairway Gas Plant and each and every successor to such party who or which in the manner provided below is subsequently chosen by the parties hereto to operate said Plant.

(g) "Non-Operator" shall mean each party hereto that is not the Plant Operator.

(h) "Non-Operating Voting Interest" shall mean that proportion expressed as a percentage that the total Plant ownership then held by the parties hereto, exclusive of that party who is then Plant Operator, bears to the total Plant ownership.

(i) "Products Purchase Contract" shall mean those certain agreements hereafter entered into by and between any person, firm or corporation as Producer and Plant Owners as Processors, covering Gas processed and Products recovered in the Fairway Gas Plant.

(j) A "cubic foot of gas" shall mean the volume of gas contained in one cubic foot of space at a standard pressure base of 14.65 pounds per square inch absolute and at a standard temperature of sixty degrees (60°) Fahrenheit.

(k) A "calendar year" shall mean a year from January 1 through December 31.


## Section 2

### EFFECTIVE DATE AND OWNERSHIP OF PLANT

2.1  There is set out in Exhibit "B", "Tentative Initial Plant Ownership", attached hereto and made a part hereof, a list of prospective Plant Owners, and their

respective participation percentages.  The percentages are based on each party's interest in wells adjusted for surface acreage.  "Wells" as herein used shall mean those wells completed in the James Lime Formation as of January 1, 1962, and so reported to the Railroad Commission of Texas on Form 3 - Potential Test Report.  "Surface acreage" as herein used shall mean that acreage assigned to a well or drilling unit for proration purposes covering the wells that are productive in the James Lime Formation.

2.2  This agreement shall become effective the first day of the first succeeding calendar month following execution of this agreement and the Products Purchase Contract, in the form attached hereto as Exhibit "D", and made a part hereof by those parties owning and representing sixty-five percent (65%) of the percentage interest shown in Exhibit "B" attached hereto; provided, however, that for a period of thirty (30) days after said Effective Date the parties shown in Exhibit "B" who have not executed said agreement and Products Purchase Contract shall have the opportunity to execute these agreements after which date the privilege of acquiring an ownership interest in the Plant shall cease, except as hereinafter provided in Section 2.7.  Furthermore, this agreement shall not become effective unless sixty-five percent (65%) of the interests execute said agreements prior to August 1, 1962.  The Operator shall by registered mail immediately notify all parties shown in Exhibit "B" attached hereto when the required sixty-five percent (65%) of the interests have executed said agreements.  The letter shall show the names of Plant Owners, and their respective percentage interest, who have signed the agreements and will give notice of the Effective Date.  If less than all parties listed in Exhibit "B" execute this agreement prior to the expiration of the thirty (30) day period following the Effective Date, Operator shall revise Exhibit "B" to reflect the percentage interest of each Plant Owner based on the percentage proportion of the interest of each such Plant Owner to the total percentage of all parties who have signed the agreements and Operator, subject to the approval of the Plant Owners, shall adjust the percentage

interest of all Plant Owners to correctly state their respective percentage interest in the Plant.  Operator shall promptly furnish a revised copy of Exhibit "B" to each Plant Owner and said revised Exhibit "B", hereinafter referred to as the "Initial Plant Ownership", will in all respects be considered as a part of this agreement.

2.3  Plant interests of the parties hereto shall be as follows for the Construction Period, and shall be redetermined at time of Plant startup and the first of each year thereafter through January 1, 1967, to wit:

(A) The Construction Period shall extend from the Effective Date hereof to the first day of the first calendar month next succeeding the month in which Gas first enters the Plant absorber for extraction of Products. During the Construction Period, the parties hereto shall own an interest in the Plant in proportion to each party's Initial Plant Ownership.

(B) Effective at the end of the Construction Period, Plant ownership shall be redetermined in the manner provided in Section 2.1 hereinabove as of said Effective Date, based on current wells and surface acreage productive in the James Lime Formation.  From the end of the Construction Period to January 1, 1964, each party hereto shall own an interest in the Plant as determined in this paragraph (B).

(C) Effective January 1, 1964, the Plant ownership shall be redetermined based fifty percent (50%) on total Gas volume and fifty percent (50%) on total Plant Products volume attributable to the Gas which each party hereto made available to the Plant under that party's Products Purchase Contracts during the period from end of construction to December 1, 1963. Products Purchase Contracts as used herein shall mean those agreements which each party hereto has executed, on the form attached hereto as Exhibit "D".

(D) Effective January 1, 1965, the Plant ownership shall be redeter-

-4-

mined as provided in Paragraph (C) of this Section 2.3 hereinabove for the period from December 1, 1963 to December 1, 1964.

(E) Effective January 1, 1966, the Plant ownership shall be redetermined as provided in Paragraph (C) of this Section 2.3 hereinabove for the period from December 1, 1964 to December 1, 1965.

(F) Effective January 1, 1967, the Plant ownership shall be redetermined as provided in Paragraph (C) of this Section 2.3 hereinabove for the period from December 1, 1965 to December 1, 1966.

(G) Effective January 1, 1970, the Plant ownership shall be redetermined as provided in Paragraph (C) of this Section 2.3 hereinabove for the period from December 1, 1968 to December 1, 1969.  No further redetermination of Plant ownership shall be made thereafter.

2.4  Upon each such revision of Plant ownership, Plant Operator shall submit to each of the Plant Owners for approval, a report on the Plant ownership and a revised Exhibit "B", together with all data and calculations used in determining the Plant ownership percentages.  If any party hereto does not agree with such report, such party shall so notify the Plant Operator in writing within thirty (30) days after receipt of the report from Plant Operator, setting out the details upon which the disapproval is based.  If the parties hereto are unable to agree upon any revision of the report as requested by the disapproving party or parties within sixty (60) days from the date of submission of the revised Exhibit "B", then the matter shall be submitted to a vote by the parties hereto and the dispute shall be determined in the manner provided in Paragraph 5.2 hereof.

2.5  All cost and expenses incurred in the construction, alteration or enlargement of the Plant as capital investment shall be paid by the parties hereto in proportion to their respective interests in the Plant at the time such cost and expenses are incurred.  As of the Effective Date of each such revision in Plant ownership, an adjustment in the capital investment of the parties in the Plant shall be made, on the basis of the original investment plus all additions and less all retirements, but without taking into account depreciation or amortization, and each

-5-

party who gains an interest shall pay the Plant Operator for such party's increased interest in the Plant, and Plant Operator shall disburse such payments in proper proportions to those parties whose interest in the Plant has been decreased.

2.6   All Products attributable to Plant Owners shall be owned, and all operating and maintenance expenses and liabilities incurred hereunder shall be borne, by the parties hereto in the respective proportions of their Plant ownership in effect at the time, and no retroactive revisions in such Products, operating and maintenance expenses or liabilities shall be made.

2.7   It is agreed that any party who owns or has the right to produce Gas from the Plant Area shall have the opportunity to participate in the Plant on or before January 1, 1967; provided, however, such party has not previously had the opportunity to participate in the Plant and declined Plant ownership.   In the event such a party elects to participate, it shall do so by executing a Ratification Agreement, in the form of Exhibit "E" attached hereto, at the same time it executes a Products Purchase Contract, in the form of Exhibit "D" attached hereto.   Said party's participation in the Plant shall be effective the first day of the following year in which it executes the Ratification Agreement.

Section 3

CONSTRUCTION OF PLANT

3.1   Hunt Oil Company, at the direction of the parties hereto, shall invite and receive bids from not less than three (3) contractors for the construction and installation of a processing plant, designed to recover eighty-five percent (85%) of the propane and essentially all of the butanes and heavier hydrocarbons at a throughput of twenty-two million (22,000,000) cubic feet of Gas per day, together with necessary facilities for separating, storing and handling natural gasoline, butanes, and propane.   It is further agreed that Plant Operator shall enter into a contract with a bidder approved by the Plant Owners for the construction of the said

-6-

processing facilities in accordance with the approved plans and specifications or as same may be changed by Plant Owners voting in accordance with the provisions of Section 5 hereof.

3.2  Prior to the commencement of actual construction of the Plant, Plant Operator shall purchase or acquire the surface ownership on a tract of land of sufficient size and at a suitable location for the construction of the Plant. Plant Operator shall also acquire such pipeline and other rights-of-way, easements and grants as may be necessary to accomplish the purposes of this agreement.  Title to all of which shall be taken in the name of Plant Operator, and shall be held for the benefit of itself and other Plant Owners hereunder.  The Plant site and all other property obtained in connection therewith shall be owned by and paid for by the parties hereto in proportion to their respective interests as determined in Section 2 hereof, and any party hereto shall have the right to receive, on demand, from the Plant Operator a recordable assignment and conveyance, without warranty of title, express or implied, of an undivided interest in all land or interests in land.

3.3  Each party hereto, as far as it has the right to do so, does hereby convey unto Plant Operator, full rights of ingress and egress over and upon the respective leaseholds and lands of the parties hereto to the extent necessary to effectuate the reasonable purposes of this contract and so long as such purposes do not interfere unreasonably with lease operations.

Section 4

MANAGEMENT

4.1  Each party hereto hereby appoints Hunt Oil Company as Plant Operator to supervise the construction and to operate the Plant, and subject to the provisions of this agreement, said Plant Operator shall have the exclusive right to supervise the construction and to operate the Plant;  provided, that when questions arising hereunder are to be resolved and determinations

-7-

or authorizations are to be made by a vote of the parties hereto, as herein provided, Plant Operator shall be bound to follow such decisions, determinations, and authorizations.

4.2  Plant Operator shall supervise the construction, operation, maintenance, alteration, or enlargement of the Plant, and conduct all operations hereunder in a good and workmanlike manner, and, in the absence of specific instructions from the parties hereto or their representatives, shall have the right and duty to act in accordance with its best judgment of what a prudent operator would do under the same or similar circumstances.  Plant Operator shall consult freely with the parties hereto and shall keep the parties hereto informed of all matters arising during the construction, operation, maintenance, alteration, or enlargement of the Plant which Plant Operator, in the exercise of its best judgment, considers important.  Any party hereto shall have the right, at its own risk and expense, to observe the construction and operation of the Plant.

4.3  Plant Operator shall also specifically perform the following acts, to wit:

(a) Supervise the construction of the Plant.

(b) Supervise all operations for the extraction, separation, and delivery of the Products, and supervise all acts necessary to the complete performance of any Products Purchase Contracts and other contracts related hereto.

(c) Operate the Plant in such a manner as to deliver to each party hereto or its order, said party's share of the Products.

(d) Supervise the purchase and use of all material and supplies in connection with the construction and operation of the Plant.

(e) Promptly pay and discharge all costs and expenses incurred in connection with the construction and operation of the Plant or pursuant to this agreement, and shall take advantage of trade discounts where applicable.

(f) Pay wages and salaries of Plant personnel at rates being paid from time to time by Plant Operator for similar work on other similar operations.  The number of Plant employees, the selection of such

-8-

employees, their hours of labor, and the compensation to be paid such employees shall be determined by Plant Operator, and all such employees shall be employees of Plant Operator.

(g) Keep an accurate and itemized record of the account of the parties hereto and of all operations of the Plant, and report all expenditures made or incurred during the preceding month, together with any reasonable information required by them relating to said account or operations of the Plant, and extend to each party hereto the right and opportunity to examine and inspect all books and records relating to the operations of Plant Operator in connection with said Plant.

(h) Furnish on or before the last day of each month to each party hereto a report of operations during the preceding month and a monthly statement showing the volume of Gas delivered from all properties into the Plant, the volume of each kind of Product extracted at the Plant, the volume of each kind of Product shipped or delivered from the Plant, and such other data and information as may be necessary for proper accounting and settlement between the parties.

(i) Keep all real property and all personal property and equipment of the parties hereto free and clear of all liens and encumbrances on account of any claims arising out of operations hereunder.

(j) Abide by and conform to all valid applicable laws, orders, rules and regulations made by duly constituted governmental authorities, make all necessary reports to governmental authorities, obtain all necessary licenses and permits, and pay all valid applicable excise taxes and fees levied upon the Plant or its Products or in connection with its operations. Plant Operator will bill each party hereto for its proportionate share of all such payments.

(k) Render for ad valorem taxation all property subject to this agreement which by law should be returned for such taxes, and pay all such taxes assessed thereon before they become delinquent. If any tax assessment is considered unreasonable by Operator, it may at its discretion protest such valuation within the time and manner prescribed by law, and it may at its discretion prosecute, or not prosecute, the protest to a final determination. When any such protested valuation shall have been finally determined, Operator shall pay the assessment for the joint account, together with interest and penalty accrued. The total cost shall be paid by the parties hereto as provided in Exhibit "C".

(l) Supervise all other matters necessary to the full accomplishment of the purposes of this agreement.

(m) Call meetings of the parties at such times as it deems necessary and at such times as two or more parties, representing over five percent (5%) of the voting interest, other than Plant Operator, request the calling of a meeting; provided, however, Plant Operator shall call a meeting at least once every year. Plant Operator shall give fourteen (14) days' written notice of a meeting.

4.4  Plant Operator may be discharged and its powers, rights and duties, or any part thereof, may be terminated at any time by the owners of at least seventy-five percent (75%) of the Non-Operating Voting Interest provided such seventy-five percent (75%) interest exceeds thirty-five percent (35%) of the total Plant ownership, and provided further, that if any party hereto owns as much as sixty percent (60%) of Non-Operating Voting Interest, said party must be joined by one (1) or more parties hereto in order to discharge Plant Operator.  Plant Operator also shall be discharged if it tenders its resignation, becomes insolvent, or ceases to own an interest in the Plant.  If Plant Operator shall be discharged, a successor Plant Operator shall be elected from among the parties hereto by vote taken in accordance with Paragraph 5.2 hereof; provided no Plant Operator who is removed may vote to succeed itself. Neither Plant Operator nor any successor Plant Operator shall be released from the duties and obligations of Plant Operator for a period of sixty (60) days after its discharge unless a successor Plant Operator shall have been elected by the parties hereto and shall have assumed the obligations of Plant Operator prior to the expiration of said period.

## Section 5

### VOTE OF PARTIES

5.1  All matters hereunder, except as otherwise provided in this agreement, which require the approval of the parties hereto, shall be referred directly to the parties for decision.  Also, in case of disagreement as to any matter hereunder which is not specifically covered by the terms and provisions of this agreement and the determination of which is not herein otherwise specifically provided for, such matters in disagreement shall be submitted directly to the parties hereto for decision.  Likewise, all powers and duties not specifically conferred upon Plant Operator are reserved to the parties hereto and such matters shall also be submitted directly to the parties hereto for decision.

5.2  Each party hereto shall have a voting interest on such matters equal to its percentage interest in the Plant at the time of voting, as set out on Exhibit "B" as it may be revised, hereto attached, and a vote of sixty-five percent (65%) or more of such voting interest shall be binding upon all of the parties hereto; provided, however, should any one party at time of voting own sixty-five percent (65%) or more voting interest its vote shall not serve to carry or approve such matters unless said vote is supported by one (1) or more of the other parties hereto who jointly or individually own five percent (5%) or more voting interest, and provided further, should any one party at the time of voting own more than thirty-five percent (35%) of the voting interest, its vote shall not serve to defeat or disapprove such matters approved by the vote of parties hereto, unless said party is supported by one (1) or more of the parties hereto owning a combined interest of five percent (5%) or more.

5.3  In the event any party hereto fails to vote on any matter hereunder which requires the approval or decision of the parties hereto, then and in that event, such party's failure to vote shall be counted as a negative vote and shall constitute disapproval of such matter.

5.4  All parties to this agreement shall, by furnishing satisfactory written evidence of such authority to Plant Operator, authorize and designate a representative to receive all notices hereunder and to act on behalf of such party as to any matter arising hereunder or any matter connected with the Plant or its operation.  Any representative so designated may be changed from time to time and the act of any such representative shall be equally binding as the act of his principal or principals as the case may be.

### Section 6

### DISTRIBUTION OF COSTS

6.1  Plant Operator shall set up a Plant account on behalf of the parties

hereto and all costs and expenses incurred by Plant Operator in the construction, operation, maintenance, alteration, and enlargement of the Plant shall be charged to such account upon the cost and expense basis set out in the Accounting Procedure attached hereto and made a part hereof as Exhibit "C". In the event of any conflict between the terms and provisions of the body of this agreement and those of said Accounting Procedure, the terms and provisions contained in the body of this agreement shall control to the extent of any such conflict.

6.2  All investment costs incurred by Plant Operator in the construction, alteration, and enlargement of the Plant, and all operating and maintenance costs and liabilities incurred by the Plant Operator under the provisions hereof, shall be charged against and shall be borne by the parties hereto in the proportions of their respective interests in the Plant, as set out in Section 2 hereof.  Plant Operator shall initially pay all such costs incurred hereunder and the other parties hereto shall reimburse Plant Operator for their proper shares of such costs.

6.3  Should any party hereto fail to reimburse Plant Operator for its proportionate part of any of said investment, operating or maintenance costs or liabilities within thirty (30) days after being billed therefor as provided in the said Accounting Procedure, Exhibit "C", the same shall bear interest at the rate of six percent (6%) per annum from the end of said period until paid, and Plant Operator shall have the right, at its option, at any time thereafter, such default continuing, to foreclose the lien hereinafter provided upon the respective interests of such party.

6.4  Plant Operator, in lieu of advancing any or all such costs, may, at its election, require the several parties hereto to advance their respective proportions of the costs of constructing, operating, maintaining, enlarging, or altering the Plant according to the following conditions:

Plant Operator may, at its election, submit a request for a permanent

working fund to be established in an amount sufficient to cover an average month's operating expenditure, to which each individual Plant Owner would contribute on the basis of Plant ownership percentages within thirty (30) days; such permanent working fund to be based on the annual budget figures covering estimated expenditures for Plant operating expenses, and investment and inventory charges, exclusive of transfers and sales of material from Plant account.  After the establishment of such permanent working fund, each individual Plant Owner will remit regularly for each month's actual billing, thus maintaining this working fund intact.  The amount of the fund will be reviewed annually to determine its adequacy in relation to current costs, with any adjustments being made by refunds or by additional requests.  In the event of a major addition to, or alteration of, the Plant not shown in the annual budget, a temporary advance to cover each month's estimated costs of such addition or alteration may be requested, and adjustment between the estimated costs and actual costs may be made on each month's billing.

6.5  As soon as practical but in any event not later than ninety (90) days after the Effective Date of this agreement, Plant Operator shall prepare a tentative budget covering estimated expenditures for the construction, operation, maintenance, alteration, and enlargement of the Plant for the remainder of the calendar year and thereafter on or before the fifteenth (15th) day of October of each year hereunder, shall prepare a tentative annual budget covering estimated expenditures for the construction, operation, maintenance, alteration, and enlargement of the Plant for the twelve (12) months' period ending on the thirty-first (31st) day of December of the succeeding year.  The tentative annual budget shall set forth the estimated expenditures for the quarterly periods beginning on the first (1st) day of January, the first (1st) day of April, the first (1st) day of July, and the first (1st) day of

October, and, where practical to do so, shall show the estimated expenditures by months in each quarterly period.  Plant Operator shall correct the tentative budget, if necessary, at least thirty (30) days prior to the beginning of each semi-annual period.  A copy of the tentative annual budget and all semi-annual corrections thereof shall be mailed by Plant Operator to each party hereto.

6.6  After the construction of the Plant and the commencement of its operation, Plant Operator shall not, without first obtaining approval of the parties hereto as provided in Section 5 hereof:

(a) Make any additions, alterations, replacements, or enlargements of the Plant which involve an expenditure in excess of ten thousand dollars ($10,000.00); or

(b) Make any change in either the operation or maintenance of the Plant which involves an expenditure in excess of ten percent (10%) of the estimated operating and maintenance expenses in the annual budget.

However, on any addition or alteration of the Plant which involves an expenditure in excess of five thousand dollars ($5,000.00), Plant Operator shall furnish, for information only, to each Plant Owner a copy of Plant Operator's own authorization therefor.

<div align="center">Section 7</div>

<div align="center">LIEN OF OPERATOR</div>

7.1  Each of the parties hereto in order to secure the payment of all amounts due or to become due by each party to Plant Operator but not to secure payment of an amount due or to become due by any other such party, hereby gives and grants to Plant Operator a first and prior lien upon its undivided interest in the Plant and in the Products, and in all lines, tankage, compressors, fixtures, and equipment, and all other property tangible or intangible, of every kind and character used in connection with or incident to the said Plant, which lien may be enforced at the option of Plant Operator as a mortgage lien or as any other lien afforded by the law of the state in such cases; provided, that each party hereto may, at its option,

<div align="center">-14-</div>

forestall the affixing of said lien by paying to Plant Operator, in advance, its proportionate part of the cost of constructing, operating, maintaining, altering, and enlarging the Plant.

   7.2  In the event Plant Operator forecloses the lien herein provided and acquires the property or interest subject thereto at foreclosure sale, then the remaining parties hereto, including Plant Operator, shall have the obligation to purchase a proportionate part as determined below of such acquired interest or property from Plant Operator at Plant Operator's costs therein.  Plant Operator shall promptly submit to the remaining parties hereto in writing a statement of the amount of its cost in such acquired interest or property and the said remaining parties, including Plant Operator, shall within thirty (30) days after receipt of said statement pay their proportionate parts of same; such proportionate parts being in the ratio that the percentage of ownership of each remaining party and Plant Operator, prior to such foreclosure, bears to the total percentage of ownership of all remaining parties and Plant Operator prior to such foreclosure.  However, the other parties hereto, in participating in such acquisition, shall not be required to pay more than their respective proportionate parts of the amount of indebtedness covered by such foreclosure lien plus the reasonable cost to Plant Operator of foreclosing such lien and acquiring such interest.  Following any such foreclosure of lien, Plant Operator shall redetermine the Plant ownership for the remaining parties, including Plant Operator, and furnish such parties a revised Exhibit "B" showing such revised Plant ownership.

   7.3  The lien hereby created in favor of Plant Operator shall be subject to all sales of Products made by the parties hereto and, in the event of the fore-closure of the lien against the interest or property of a defaulting party, the foreclosure sale shall be made subject to existing contracts for the sale of Products theretofore executed by such defaulting party.

## Section 8

### PRODUCTS PURCHASE CONTRACTS

8.1  A products purchase contract form is attached hereto and made a part hereof for all purposes as Exhibit "D".  At the time this agreement is executed, each party hereto is executing a Products Purchase Contract on said form, covering all of said party's right, title, and interest in and to Products extracted from the Gas within the Plant Area attributable to such party.

8.2  Plant Operator shall, upon approval by Plant Owners voting in the manner provided in Section 5 hereof, enter into a Products Purchase Contract on the form attached hereto as Exhibit "D" for itself and in behalf of the other Plant Owners with any party (not a party to this agreement) for the extraction of Products in the Plant; provided, that Products may be extracted in the Plant under Products Purchase Contracts with other parties only to the extent that there is reasonably available Plant capacity for the extraction of such additional Products, over and above the needs of the parties hereto for the extraction of Products from their own Gas produced in Plant Area.

## Section 9

### PRODUCTS

9.1  Each of the parties hereto, subject to the rights of Plant Operator as provided in Section 7 hereof, shall take in kind or market individually its allocated portion, proportionate to its ownership in the Plant, of all Products extracted and separated in the Plant.  Plant Operator shall construct and operate for the Plant account necessary storage which initially shall not exceed five (5) days' Plant output at design conditions, and shipping and loading facilities, for the handling of Products, and each party hereto shall have the use of such storage, shipping and loading facilities in proportion to its percentage of Plant ownership; provided, however, that any other expense incidental to taking Products in kind shall

-16-

be borne by the taking party or parties.

9.2  Each party hereto shall bear its proportionate part of any losses actually suffered, caused by or resulting from evaporation or handling of Products prior to the delivery of said Products from the Plant.

9.3  In the event any of the parties hereto fail, from time to time, to take in kind or otherwise adequately provide for the disposal of its Products, then and in that event Plant Operator shall have the right from time to time, subject to revocation at will by the party owning such interest, to dispose of such Products during such time or times in any manner Plant Operator sees fit; provided, that all contracts for sale by Plant Operator of any Non-Operator's production shall be only for such reasonable periods of time as are consistent with the minimum needs of the industry under the circumstances, but in no event shall any such contracts be for a period in excess of one (1) year.  The proceeds, if any, received by Plant Operator from such disposal of such Plant Products shall be credited to such party or parties after a reasonable charge by Plant Operator has been deducted therefrom for making such disposition.  In the event Plant Operator makes disposition of such Plant Products through Plant Operator's own marketing organization directly to distributors or consumers, a commission commensurate with commissions then being charged in the industry shall be deducted from the proceeds received by Plant Operator from such disposal of Plant Products.

9.4  Each Plant Owner agrees to furnish to Plant Operator, as promptly as possible after the end of each calendar month, a statement showing the volume of each kind of Product or mixture thereof, received by him as his portion of Plant Products and sold or used by him during the preceding calendar month, together with statement showing net proceeds received from sales thereof, and other information as may be necessary to enable Plant Operator to make proper accounting to Producers under the Products Purchase Contracts.

## Section 10

### INSURANCE

10.1  Plant Operator shall carry for the benefit of the parties hereto, at all times while operations are being conducted hereunder, the following insurance:

(a) Workmen's Compensation insurance and Employer's Liability insurance in amounts sufficient to comply with the laws of the state where such operations are conducted and where the property subject hereto is located.

(b) Comprehensive General Public Liability insurance in the amount of one hundred and fifty thousand dollars ($150,000.00) for injury or death of one person, and five hundred thousand dollars ($500,000.00) for injury or death of more than one person in any one accident, and Property Damage insurance with limits of one hundred thousand dollars ($100,000.00) for any one accident.

(c) Automobile insurance in the amount of one hundred thousand dollars ($100,000.00) for injury or death of one person, and three hundred thousand dollars ($300,000.00) for injury or death of more than one person in any one automobile accident, and Property Damage insurance to the extent of ten thousand dollars ($10,000.00) as an aggregate for any automobile accident.

10.2  Plant Operator shall also carry any additional insurance approved by Plant Owners.  Each party hereto may carry such insurance for its own benefit as such party desires.

10.3  All costs of such insurance, together with all actual expenditures incurred and paid by Plant Operator in settlement of any and all losses, claims, damages, judgments, and any other expenses, including legal services not covered by such insurance, shall be charged to the parties hereto proportionately as costs incurred hereunder.  Insurance premiums paid for automotive insurance on Plant Operator's wholly-owned automotive equipment shall be included in the charges provided in Section 4. B. of Article II of the Accounting Procedure.

10.4  During construction of the Plant, Plant Operator shall require the prime contractor to carry builder's all risks insurance insuring the Operator, Non-Operators and contractor against loss and damage from any cause to the material, equipment, apparatus, machinery and supplies intended for the Plant to monetary limits

which shall cover the value of the work being performed, such insurance to cover while in transit to the job site, while at job site, during installation, and until completion and acceptance by Plant Operator.

10.5  It is understood and agreed that Plant Operator is not a warrantor of the financial responsibility of the insurer with whom such insurance is carried, and that except for willful negligence, Plant Operator shall not be liable to Non-Operators for any loss suffered on account of the insufficiency of the insurance carried, or of the insurers with whom carried.

Section 11

RIGHT TO INSPECT AND AUDIT

11.1  Each party to this agreement and its representatives duly authorized in writing shall have the right at all reasonable hours to inspect the Plant and all appurtenances thereof.

11.2  Any auditor or inspector, appointed by the Non-Operators, shall certify, from a periodic inspection of the books of account, shipping papers and records, gauge tickets, and all other records pertaining to such accounting and settlement, or such of said records as may be required, the correctness of said accounting and settlement between the parties hereto; and Plant Operator shall make the necessary adjustments required by said certification and proper settlement there-for among the parties hereto if and when such adjustments, or any of them are approved by the parties hereto.  It is understood that Plant Operator shall not be required to adjust or amend, for any reason, said certification and settlement between the parties after two (2) years have elapsed immediately following the end of the year covered by said certification.

11.3  The cost of the audit of Plant Operator's records shall be borne by the Non-Operators in proportion that each Non-Operator's interest in the Plant bears to total of all such Non-Operating interests in the Plant.  On receipt of a statement

-19-

for the cost of the audit, Plant Operator shall bill each Non-Operator for its proportionate share and shall remit the proceeds in payment of the audit.

## Section 12

### TRANSFER OF PLANT INTEREST

12.1  All sales, transfers, assignments, mortgages, or other conveyances of the interest of any party hereto in the Plant shall be made expressly subject to this agreement and shall not be binding on any of the parties hereto other than the party selling, transferring, assigning, mortgaging, or conveying the same, unless and until, the first day of the month following the day a certified copy of the instrument evidencing such change in ownership has been delivered to Plant Operator, together with a copy of the Ratification Agreement in the form attached hereto and made a part hereof as Exhibit "E", properly executed and acknowledged by the acquiring party.  Upon receipt of said certified copy and said Ratification Agreement, Plant Operator shall notify the parties hereto of the change in owner-ship.

12.2  This agreement and all obligations hereof shall be covenants running with the Plant and all sales, transfers, assignments or conveyances of any interest in the Plant, including any passage of title by operation of law, shall operate to impose upon the party or parties acquiring such interest its or their proportionate part of all costs and expenses and other obligations chargeable hereunder to such interest and shall likewise operate to give and grant to the party or parties acquiring such interest its or their proportionate part of all benefits accruing hereunder, including, but not by way of limitation, the rights of Processor under the Products Purchase Contracts supplying the Plant.

12.3  No right or interest under this agreement may be assigned or transferred separately from the Plant interest of the party making the assignment or transfer.

## Section 13

## LAWS, REGULATIONS, AND FORCE MAJEURE

13.1  This agreement and all operations hereunder shall be subject to the valid applicable federal and state laws and the valid applicable orders, laws, rules and regulations of any state or federal authority having jurisdiction, but nothing contained herein shall be construed as a waiver of any right to question or contest any such order, law, rule or regulation in any forum having jurisdiction in the premises.

13.2  Performance, other than to make payments due, under this agreement by the parties hereto shall be excused in the event such performance is prevented by war, blockades, insurrections, strikes or differences with workmen, riots, disorders, epidemics, landslides, lightning, earthquakes, fires, storms, floods, washouts, civil disturbances, blowouts, explosions, breakage or accident to machinery or lines of pipe, acts of God, acts of the public enemy, acts of governmental authorities, state and federal regulations, inability or delay in obtaining rights-of-way, permits or easements or material, and without limitation by enumeration, any other cause or happening whether of the kind enumerated herein or otherwise not reasonably within the control of such parties; provided, however, that performance shall be resumed within a reasonable time after such cause has been removed, and provided further that no party hereto shall be required against its will to adjust any labor dispute.

13.3  In the case of blowout, explosion, fire, flood, or other sudden emergency, Plant Operator shall take such steps and incur such expenses as, in its opinion, are required to deal with the emergency and to safeguard life and property; provided, that Plant Operator shall, as promptly as possible, report the emergency to the other parties hereto or their representatives and shall endeavor to obtain from the parties hereto or their representatives any sanction that might otherwise have been required.

Section 14

IN GENERAL

14.1  This agreement shall continue in force, from the Effective Date specified above, for so long as the operation of the Plant is desirable in the opinion of the parties hereto.  When the operation of the Plant is determined to be undesirable by the parties hereto, acting by vote pursuant to the provisions of Section 5 hereof, Plant Operator shall shut down the operation of the Plant and shall either sell the Plant intact to the highest and best bidder or shall sell it in parts under a salvage operation, whichever appears to the Plant Owners to be the most profitable, and shall distribute the proceeds to the parties hereto in the proportions of their respective interests in the Plant at that time; provided, that if any party or parties hereto do not desire to shut down the Plant and desire to purchase the Plant intact and take over the operation of it, they shall so notify all of the parties hereto in writing, promptly after notice that the Plant is to be shut down, and shall submit a cash bid for the value of the Plant, and if said bid is acceptable to the other Plant Owners desiring to abandon the Plant, then the Plant shall be sold intact to said purchasing party or parties, and they shall have the right thereafter to own and operate the Plant, but if said bid is not acceptable to the other Plant Owners, then Plant Operator shall proceed to sell the Plant in the manner provided above.

14.2  The duties, obligations and liabilities of the parties hereto are intended to be several and not joint or collective, and nothing herein contained or contained in any agreement made pursuant hereto shall ever be construed to create a joint venture, association, or any kind of partnership, or partnership duty, obligation, or liability with regard to any one or more of the parties hereto.  Each party hereto shall be individually responsible for only its or his obligation as set out herein and shall be liable only for its or his proportionate share of the costs and liabilities as herein stipulated.

14.3  Whenever in this agreement reference is made to operations of the Plant account of the parties hereto or to charges or credits to the Plant account, or whenever similar language is used, the parties hereto use such language merely as a convenient method of referring to the accounting necessary between them and no such phraseology shall be construed as creating any joint liability upon the part of the parties hereto for any obligation incurred under this agreement, or as setting apart or creating any fund or jointly-owned property for the satisfaction of any obligation, or as creating a common fund for any other purpose.

14.4  Plant Operator shall operate the Plant for itself to the extent of its interest therein and, as far as it may lawfully do so, as the Plant Operator for each other Plant Owner to the extent of the undivided interest of such other Plant Owner.

14.5  Funds received by Plant Operator under this agreement need not be segregated by Plant Operator or maintained as a joint fund, but may be commingled with its own funds and distributed by Plant Operator as provided in this agreement.

14.6  Notwithstanding any of the foregoing provisions that the rights and liabilities of the parties hereto are several and not joint or collective and that this agreement and the operations hereunder shall not constitute a partnership, if for federal income tax purposes, this agreement and the operation hereunder are regarded as a partnership, then each of the parties hereto hereby elects to be excluded from the application of all of the provisions of Subchapter K, Chapter 1, Subtitle A, of the Internal Revenue Code of 1954, and Plant Operator is hereby authorized and directed to execute on behalf of each of the parties hereto such evidence of this election as may be required by the Secretary of the Treasury or the Federal Internal Revenue Service, and should there be any requirement that each party hereto further evidence this election, each party hereto agrees to execute such documents and furnish such other evidence that may be required or necessary to evidence such

election.  In making this election, each of the parties hereto hereby states that the income derived by it from operations under this agreement may be adequately determined without the computation of partnership taxable income.

14.7  The payment of all royalties, overriding royalties, production payments, severance, excise, and production taxes, and any other similar items on oil, gas and the products thereof affected hereby shall be handled as set out in the Products Purchase Contracts executed by the parties hereto.

14.8  All notices shall be in writing and shall be mailed to the parties hereto by Plant Operator at their last named address which each of the parties hereto shall have designated in writing to Plant Operator.

14.9  This agreement shall extend to, and be binding upon, and inure to the benefit of the parties hereto and their respective heirs, assigns, devisees, executors, administrators and successors.

14.10  This agreement may be executed in any number of counterparts and, when so executed, shall have the same effect as if all parties had executed the same instrument.

IN WITNESS WHEREOF, the parties hereto have executed this agreement, as of the day and year hereinabove first written:

ATTEST (or) WITNESS:

_____

_____

By_____

SEE CONFORMED COMPOSITE SIGNATURE
PAGES NEXT ATTACHED

ATTEST (or) WITNESS:

_____

_____

By_____


SIGNATURE PAGE TO "AGREEMENT FOR CONSTRUCTION AND OPERATION OF THE FAIRWAY GAS PLANT, ANDERSON AND HENDERSON COUNTIES, TEXAS".

C O N F O R M E D

ATTEST (or) WITNESS:

AMERADA PETROLEUM CORPORATION

/s/ T. H. Humphreys
    Assistant Secretary

/s/ Albert W. Taylor
    Vice President

THE ATLANTIC REFINING COMPANY

/s/ Ruth Potchernick
    Asst. Secretary

/s/ Louis H. Davis
    General Manager, Domestic Producing Dept.

BIRDSONG-GABRIEL OIL CO.

/s/ G. C. Clark

/s/ Carter Gabriel

CITIES SERVICE PETROLEUM COMPANY

/s/ Duane W. Bellinger

/s/ Fred H. Ramseur, Jr.
    Mgr. Gasoline Div.

CITIZENS FIRST NATIONAL BANK OF TYLER,
    TRUSTEE OF ACCOUNT #70

/s/ E. H. Norment
    Assistant Cashier

/s/ William Mann Richardson
    Vice President & Trust Officer

/s/ M. H. Shaw

/s/ G. C. Clark

COLONY GAS COMPANY

/s/ Wardine Magninat
    Assistant Secretary

/s/ C. E. Middleton
    President

CONTINENTAL OIL COMPANY

/s/ Margaret Ellwein
    Assistant Secretary

/s/ J. P. Malott
    Vice President

/s/ Barbara Thatcher

/s/ V. Paul Daniel

/s/ H. M. Stover

/s/ F. R. Denton

C O N F O R M E D

ATTEST (or) WITNESS:

EDSON PETROLEUM COMPANY

/s/ E. M. Peeples, Jr.
    Assistant Secretary

/s/ D. J. Edson
    President

/s/ Fleeta Lynch

/s/ Frank G. Evans

/s/ Marvin N. Wilson

/s/ Richard L. Ray

/s/ Marvin N. Wilson

/s/ R. W. Fair

/s/ Marvin N. Wilson

/s/ Sam Bright

/s/ Marvin N. Wilson

/s/ Gus W. Arnold

/s/ Marvin N. Wilson

/s/ James W. Fair

/s/ Marvin N. Wilson

/s/ Wilton H. Fair

FAIR OIL COMPANY

/s/ Marvin N. Wilson
    Secretary-Treasurer

/s/ James W. Fair
    President

FAIRWAY OIL AND GAS COMPANY, INC.

/s/ Florence Brown
    Secretary

/s/ Thomas W. Clay
    President

/s/ B. A. Minard

/s/ Gallant Floyd

G. WILLIAM FLOYD

/s/ B. A. Minard

/s/ Gallant Floyd
    Gallant Floyd, Attorney in Fact

C O N F O R M E D

ATTEST (or) WITNESS:

FRANK FRANKEL

/s/ Pauline Killough
_____

/s/ Harding S. Frankel
_____
    Harding S. Frankel, Agent and
    attorney-in-fact

GEORGE FRANKEL

/s/ Pauline Killough
_____

/s/ Harding S. Frankel
_____
    Harding S. Frankel, Agent and
    attorney-in-fact

DONALD FRANKEL

/s/ Pauline Killough
_____

/s/ Harding S. Frankel
_____
    Harding S. Frankel, Agent and
    attorney-in-fact

/s/ Pauline Killough
_____

/s/ Harding S. Frankel
_____
    HARDING S. FRANKEL

/s/ Roy C. Gammill
_____

/s/ M. Scarborough, Jr.
_____

/s/ Fred M. Garrett
_____

/s/ Tera Parsons
_____

/s/ A. S. Genecov
_____

/s/ LaVerne Houston
_____

/s/ Ralph E. Graham
_____

/s/ Chas. F. Decker
_____

/s/ W. B. Gray
_____

GREENBRIER 60 LIMITED

/s/ J. Sanderson
/s/ Jo Gilmore

/s/ Waymon G. Peavy
_____
    General Partner

GREENBRIER 61 LIMITED

/s/ J. Sanderson
/s/ Jo Gilmore

/s/ Waymond G. Peavy
_____
    General Partner

C O N F O R M E D

ATTEST (or) WITNESS:

CAROLINE HUNT TRUST ESTATE

Approved: /s/ Margaret Hunt Hill
Member of Advisory Board

/s/ J. A. Goodson
    Trustee


LYDA HUNT-HERBERT TRUSTS
LYDA HUNT-MARGARET TRUSTS
LYDA HUNT-CAROLINE TRUSTS
LYDA HUNT-BUNKER TRUSTS
LYDA HUNT-LAMAR TRUSTS

/s/ Barbara Thatcher

/s/ W. H. Hunt
    W. H. Hunt, Trustee

/s/ Inez Haygood

/s/ Caroline Hunt Sands
    Caroline Hunt Sands, Trustee

/s/ Kay Wattner

/s/ Margaret Hunt Hill
    Margaret Hunt Hill, Trustee


HUNT OIL COMPANY

/s/ W. B. Beeman
    W. B. Beeman, Secretary

/s/ W. H. Hunt
    W. H. Hunt, Vice President


HUNT PETROLEUM CORPORATION

/s/ A. G. Hill
    A. G. Hill, Secretary-Treasurer

/s/ Tom Hunt
    Tom Hunt, President

/s/ Guy L. Lamb

/s/ S. H. Killingsworth

/s/ C. J. Sawyer

/s/ Dillard R. LaRue


LIGNITE & CARBON CO.

/s/ E. R. Feinstein

/s/ D. R. Rosberg

/s/ Cy Kosberg

/s/ G. A. Lindsey

/s/ Charles L. Jennette

/s/ C. Curtis Reese

C O N F O R M E D

ATTEST (or) WITNESS:

/s/ Evelyn B. Keut _____

/s/ G. J. Loetterle _____

PAN AMERICAN PETROLEUM CORPORATION

/s/ J. K. Smith _____
    Assistant Secretary

/s/ William T. Smith _____
    Attorney-in-Fact

/s/ W. C. Perryman _____

PHILLIPS PETROLEUM COMPANY

/s/ I. S. Suslood (?) _____
    Asst. Secretary

/s/ G. M. McCullough _____
    Vice President

/s/ John L. McCrory _____

/s/ A. O. Phillips _____

/s/ Mary Ramsey _____

/s/ B. F. Phillips _____

/s/ L. H. Williamson _____

/s/ B. F. Phillips, Jr. _____

/s/ James V. Landress
/s/ Charlyne J. Bell _____

/s/ W. L. Pickens _____
    W. L. PICKENS

/s/ James V. Landress
/s/ Charlyne J. Bell _____

/s/ W. L. Pickens _____
    W. L. PICKENS, TRUSTEE FOR JOHN
    THOMAS PICKENS TRUST #1

/s/ James V. Landress
/s/ Charlyne J. Bell _____

/s/ W. L. Pickens _____
    W. L. PICKENS, TRUSTEE FOR JOHN
    THOMAS PICKENS TRUST #2

/s/ James V. Landress
/s/ Charlyne J. Bell _____

/s/ W. L. Pickens _____
    W. L. PICKENS, TRUSTEE FOR ROBERT
    HOUSTON PICKENS TRUST #3

/s/ James V. Landress
/s/ Charlyne J. Bell _____

/s/ R. H. Pickens _____
    R. H. PICKENS

C O N F O R M E D

ATTEST (or) WITNESS:

/s/ Evelyn B. Kent
_____

/s/ Mrs. Charlcie Maddox
_____

/s/ F. Gordon Carl
_____

/s/ F. Gordon Carl
_____

/s/ J. A. Goodson
_____
    J. A. Goodson, Secretary

/s/ Coy Gathright
_____

/s/ Coy Gathright
_____

/s/ Tera Parsons
_____

/s/ Tera Parsons
_____

/s/ Tera Parsons
_____

/s/ Tera Parsons
_____

/s/ George W. Pirtle
_____

/s/ William Pirtle, M. D.
_____

GERALD RAUCH

/s/ Gerald Rauch
_____

VEDA MAE GLESBY

/s/ Veda Mae Glesby, by Gerald Rauch,
_____
    Attorney-in-Fact

RAYO OIL COMPANY

/s/ W. B. Beeman
_____
    W. B. Beeman, Vice President

/s/ Gertrude Windsor Richardson
_____
    Gertrude Windsor Richardson

/s/ Will Mann Richardson
_____
    Husband, pro forma

/s/ Hyman P. Roosth
_____
    HYMAN P. ROOSTH

/s/ Isadore Roosth
_____
    Isadore Roosth, as Executor and
    Trustee under the Will of Bennie
    Roosth, Deceased

/s/ Isadore Roosth
_____
    Isadore Roosth, as Substitute
    Executor and Trustee under the Will
    of Harold Roosth, Deceased

/s/ Isadore Roosth
_____
    ISADORE ROOSTH

C O N F O R M E D

ATTEST (or) WITNESS:

/s/ Tera Parsons

/s/ Isadore Roosth
    Isadore Roosth, Successor Trustee
    for Jake Roosth Trust

/s/ Tera Parsons

/s/ Solomon Roosth
    SOLOMON ROOSTH

/s/ Tera Parsons

/s/ Wiley Roosth
    WILEY ROOSTH

CAROLINE HUNT SANDS, and
husband, LOYD B. SANDS

/s/ Kay Wattner

/s/ Caroline Hunt Sands

/s/ Barbara Thatcher

/s/ Loyd B. Sands

SECURE TRUSTS

/s/ Welch Wright

/s/ Sidney Latham, Trustee
    Sidney Latham, Trustee

/s/ Florence W. Jones

/s/ D. J. Shaw

ALBERT SKLAR

/s/ Joe McGuire

/s/ Albert Sklar

LEONARD W. PHILLIPS

/s/ Joe McGuire

/s/ Leonard W. Phillips

/s/ C. W. Payton, M. D.

/s/ Gertrude Alexander

/s/ Jack B. Strong

SUN OIL COMPANY

/s/ Cecil A. Colville
    Agent and Attorney in Fact

C O N F O R M E D

ATTEST (or) WITNESS:

TEXACO, INC.

/s/ Warren H. Johnston _____    /s/ L. W. Calahan _____
                                                  Attorney-in-Fact


SAM TRANT

/s/ Glenda Walker _____    /s/ Sam Trant _____


/s/ Willis D. Moore _____    /s/ Travis Ward _____


WINWELL 1961 EXPLORATION COMPANY

                                          /s/ C. S. McCain, Jr. _____
                                              C. S. McCain, Jr., General Partner

                                          /s/ O. B. Mobley, Jr. _____
                                              O. B. Mobley, Jr., General Partner

/s/ Mary F. Bronsell _____    /s/ Joseph J. Stephens _____
                                            Joseph J. Stephens, General Partner


/s/ Dorothy M. Hennessy _____    /s/ Wilbur C. Windsor, Jr. _____
                                                Wilbur C. Windsor, Jr.


/s/ Coy Gathright _____    /s/ Mrs. Gertrude B. Windsor _____
                                          Mrs. Gertrude B. Windsor, a widow


DIANE TRAHAN SPENCER

/s/ Yvonne Gill
/s/ Freda Harrison _____    /s/ Diane Trahan Spencer _____

DAVID SPENCER

/s/ Yvonne Gill
/s/ Freda Harrison _____    /s/ David Spencer _____
                                          Husband of Diane Trahan Spencer


/s/ W. H. Price _____    /s/ J. C. Maxwell _____
                                        J. C. Maxwell


/s/ Frences McGee _____    /s/ J. W. Murchison _____



EXHIBIT "A"
FAIRWAY GAS PLANT
PLANT AREA ———
ANDERSON & HENDERSON COUNTIES, TEXAS

EXHIBIT "B"
(First Revision, Effective September 1, 1962)

FAIRWAY GAS PLANT
REVISED INITIAL PLANT OWNERSHIP

(Based on Wells Completed in James Lime Formation as of January 1, 1962)

| Plant Owners | Net Interest Acres | Revised Initial Ownership |
|---|---|---|
| Amerada Petroleum Corporation | 57.4029 | 0.46323 |
| Arnold, Gus W. | 5.3025 | 0.04279 |
| Atlantic Refining Company, The | 1,419.9696 | 11.45884 |
| Birdsong-Gabriel Oil Co. | 157.1658 | 1.26829 |
| Bright, Sam | 5.3024 | 0.04279 |
| Cities Service Petroleum Company | 1,255.9984 | 10.13563 |
| Citizens First National Bank of Tyler, | | |
|   Trustee of Account #70 | 0.4800 | 0.00387 |
| Clark, G. C. | 28.0442 | 0.22631 |
| Colony Gas Company | 102.4439 | 0.82670 |
| Continental Oil Company | 320.4810 | 2.58621 |
| Daniel, V. Paul | 30.8683 | 0.24910 |
| Denton, F. R. | 1.9479 | 0.01572 |
| Edson Petroleum Company | 476.0643 | 3.84174 |
| Evans, Frank G. | 24.6232 | 0.19870 |
| Fair, James W. | 29.6753 | 0.23947 |
| Fair, Wilton H. | 29.6755 | 0.23948 |
| Fair, R. W. | 26.5125 | 0.21395 |
| Fair Oil Company | 138.4231 | 1.11704 |
| Fairway Oil and Gas Company, Inc. | 876.6945 | 7.07473 |
| Frankel, Frank | 18.3541 | 0.14811 |
| Frankel, George | 36.7083 | 0.29623 |
| Frankel, Harding S. | 9.1771 | 0.07406 |
| Frankel, Donald | 9.1770 | 0.07406 |
| Floyd, Gallant | 52.0139 | 0.41974 |
| Floyd, G. William | 13.5093 | 0.10902 |
| Gammill, Roy C. | 51.2226 | 0.41336 |
| Garner, Mamie, and Northcutt, H. A. | * | * |
| Garrett, Fred M. | 1.2500 | 0.01009 |
| Genecov, A. S. | 3.8661 | 0.03120 |
| Glesby, Veda Mae | 22.3290 | 0.18019 |
| Graham, Ralph E. | 1.4800 | 0.01194 |
| Gray, W. B. | 2.2061 | 0.01780 |
| Greenbrier 60 Limited | 583.5131 | 4.70882 |
| Greenbrier 61 Limited | 228.0585 | 1.84038 |
| Gulf Oil Corporation | 133.2680 | 1.07544 |
| Hamill, Claud B. | 100.0000 | 0.80698 |
| Headwaters Oil Company | 50.8110 | 0.41003 |
| Hash, Nannearle Sanders, and | | |
|   Hash, G. V. | 62.9601 | 0.50807 |
| Hertz, Charles, and | | |
|   Hunter, A. D. | 10.0990 | 0.08147 |
| Hudnall, J. S. | 192.1100 | 1.55036 |
| Hudnall, Pirtle & Loetterle | 201.4181 | 1.62540 |
| Hunt, Caroline, Trust Estate | | * |

B-1

| Plant Owners | Interest Acres | Revised Initial Ownership |
|---|---|---|
| Hughes, K. | * | * |
| Humble Oil & Refining Company | 691.0290 | 5.57645 |
| Hunt Petroleum Corporation | 94.9133 | 0.76593 |
| Hunt Oil Company | 1,101.9914 | 8.89283 |
| Hunt, Lyda-Herbert Trusts | 68.4190 | 0.55213 |
| Hunt, Lyda-Margaret Trusts | 68.4190 | 0.55213 |
| Hunt, Lyda-Caroline Trusts | 68.4189 | 0.55213 |
| Hunt, Lyda-Bunker Trusts | 68.4189 | 0.55212 |
| Hunt, Lyda-Lamar Trusts | 68.4189 | 0.55212 |
| Killingsworth, S. H. | 23.0924 | 0.18635 |
| LaRue, Dillard R. | 3.2182 | 0.02597 |
| Lewis, A. Y. | * | * |
| Lignite & Carbon Co. | 37.4650 | 0.30233 |
| Lindsey, G. A., and Reese, C. Curtis | * | * |
| Loetterle, G. J. | 4.4336 | 0.03578 |
| Maxwell, J. C. | 0.9330 | 0.00753 |
| Murchison, J. W. | 295.4577 | 2.38428 |
| Northcutt, Madelyn and Northcutt, H. A. | * | * |
| Pan American Petroleum Corporation | 10.4460 | 0.08430 |
| Perryman, W. C. | 3.8810 | 0.03132 |
| Phillips Petroleum Company | 100.6718 | 0.81240 |
| Phillips, A. O. | 8.4644 | 0.06831 |
| Phillips, B. F. | 66.2930 | 0.53497 |
| Phillips, B. F., Jr. | 8.4644 | 0.06831 |
| Phillips, Leonard W. | 111.6438 | 0.90094 |
| Pickens, W. L.; W. L. Pickens, Trustee for John Thomas Pickens Trust #1; W. L. Pickens, Trustee for John Thomas Pickens Trust #2; W. L. Pickens, Trustee for Robert Houston Pickens Trust #3; and R. H. Pickens | 288.4231 | 2.32751 |
| Pirtle, George W. | 91.8867 | 0.74151 |
| Pirtle, William | 13.7336 | 0.11083 |
| Rauch, Gerald | 22.3287 | 0.18019 |
| Ray, Richard L. | 5.3025 | 0.04279 |
| Rayo Oil Company | 159.9994 | 1.29116 |
| Richardson, Gertrude Windsor | 67.3482 | 0.54349 |
| Roosth, Isadore, as Executor and Trustee under the Will of Bennie Roosth, Deceased | 0.5527 | 0.00446 |
| Roosth, Isadore, as Substitute Executor and Trustee under the Will of Harold Roosth, Deceased | 0.5527 | 0.00446 |
| Roosth, Isadore, Successor Trustee for Jake Roosth Trust | 0.5527 | 0.00446 |
| Roosth, Hyman P. | 0.5527 | 0.00446 |
| Roosth, Isadore | 0.5528 | 0.00446 |
| Roosth, Solomon | 0.5527 | 0.00446 |
| Roosth, Wiley | 0.5527 | 0.00446 |
| Sands, Caroline Hunt | 10.1725 | 0.08209 |
| Shaw, D. J. | 3.7374 | 0.03016 |
| Sklar, Albert | 117.2074 | 0.94584 |
| Spencer, Diane Trahan | 1.3620 | 0.01099 |
| Secure Trusts | * | * |

| Plant Owners | Interest Acres | Revised Initial Ownership |
|---|---|---|
| Strong, Jack B. and Payton, C. W., M. D. | 11.8838 | 0.09590 |
| Sun Oil Company | 557.3551 | 4.49773 |
| Texaco, Inc. | 453.8538 | 3.66250 |
| Trant, Sam | 30.8684 | 0.24910 |
| Ward, Travis | 223.2890 | 1.80189 |
| Windsor, Gertrude B. | 134.6971 | 1.08698 |
| Windsor, Wilbur C., Jr. | 67.3481 | 0.54348 |
| Winwell 1961 Exploration Company | 452.1396 | 3.64867 |
| TOTALS | 12,391.9097 | 100.00000 |

\* Not eligible for ownership during Construction Period.

EXHIBIT "B"

FAIRWAY GAS PLANT
INITIAL PLANT OWNERSHIP

(Based on Wells Completed in James Lime Formation as of January 1, 1962)

| Prospective Plant Owners | Net Interest Acres | Percent Initial Ownership |
|---|---|---|
| Abendroth, G. F. | 5.3468 | 0.04268 |
| Amerada | 57.4029 | 0.45820 |
| Arnold, Gus W. | 5.3025 | 0.04233 |
| Atlantic | 1,419.9696 | 11.33462 |
| Birdsong-Gabriel | 157.1658 | 1.25454 |
| Bright, Sam | 5.3024 | 0.04232 |
| Cities Service | 1,255.9984 | 10.02574 |
| Clark, G. C. | 28.0442 | 0.22386 |
| Coffield, H. H. | 17.1423 | 0.13683 |
| Colony | 102.4439 | 0.81777 |
| Continental | 320.4810 | 2.55817 |
| Daniel, V. P. | 30.8683 | 0.24640 |
| Denton, F. R. | 1.9479 | 0.01555 |
| Dykes, J. A. | 1.9700 | 0.01572 |
| Edson Petroleum | 476.0643 | 3.80010 |
| Fair, J. W. | 29.6753 | 0.23687 |
| Fair, W. H. | 29.6755 | 0.23687 |
| Fair, R. W. | 26.5125 | 0.21163 |
| Fair Oil | 138.4231 | 1.10493 |
| Fairway Oil & Gas | 875.1365 | 6.98556 |
| Floyd, Gallant | 52.0139 | 0.41517 |
| Floyd, G. W. | 13.5093 | 0.10785 |
| Frankel, Donald | 3.0759 | 0.02456 |
| Frankel & Frankel | 54.9609 | 0.43871 |
| Frankel, George | 12.3037 | 0.09822 |
| Frankel, H. S. | 3.0760 | 0.02455 |
| Gammill, R. C. | 51.2226 | 0.40887 |
| Garrett, F. M. | 1.2500 | 0.00998 |
| Gencov, A. S. | 1.2850 | 0.01026 |
| Glesby, Veda Mae | 22.3290 | 0.17827 |
| Graham, R. E. | 1.4800 | 0.01181 |
| Gray, W. B. | 2.2061 | 0.01761 |
| Greenbrier 60 | 583.5131 | 4.65773 |
| Greenbrier 61 | 228.0585 | 1.82044 |
| Gulf | 133.2680 | 1.06378 |
| Hamill, C. B. | 100.0000 | 0.79823 |
| Hash, N. S. | 62.9601 | 0.50257 |
| Headwaters | 50.8110 | 0.40558 |
| Hertz, Chas. | 10.0950 | 0.08058 |

| Prospective Plant Owners | Net Interest Acres | Percent Initial Ownership |
|---|---|---|
| Hilliard, E. L. | 5.3479 | 0.04269 |
| Hudnall, et al | 201.4181 | 1.60779 |
| Hudnall, James | 192.1190 | 1.53354 |
| Humble | 691.0290 | 5.51601 |
| Hunt Interests | 1,709.1713 | 13.64314 |
| Killingsworth, S. H. | 23.0924 | 0.18433 |
| LaRue, Dillard | 3.2182 | 0.02569 |
| Lignite & Carbon | 37.4650 | 0.29906 |
| Lipscomb Estate | 0.5250 | 0.00419 |
| Loetterle, G. J. | 4.4336 | 0.03539 |
| Logan, G. L. | 5.3479 | 0.04269 |
| Lyons, C. H. | 5.3478 | 0.04269 |
| Lyons, C. H., Jr. | 5.3479 | 0.04269 |
| Lyons, H. M., Special | 5.3479 | 0.04269 |
| Maxwell, J. C. | 0.9330 | 0.00745 |
| McCain, Charles S. | 5.5636 | 0.04441 |
| Murchison, J. W. | 295.4577 | 2.35844 |
| Pace, J. W. | 78.7500 | 0.62861 |
| Palmer, J. T. | 5.3468 | 0.04268 |
| Pan American | 10.4460 | 0.08338 |
| Perryman, W. C. | 3.8810 | 0.03097 |
| Phillips, A. O. | 8.4644 | 0.06756 |
| Phillips, B. F. | 66.2930 | 0.52916 |
| Phillips, B. F., Jr. | 8.4644 | 0.06756 |
| Phillips, L. W. | 111.6438 | 0.89117 |
| Phillips Petroleum | 100.6718 | 0.80358 |
| Pickens, W. L. | 288.4231 | 2.30227 |
| Pirtle, G. W. | 91.8867 | 0.73348 |
| Pirtle, Wm. | 13.7336 | 0.10962 |
| Rauch, Gerald | 22.3287 | 0.17824 |
| Ray, Richard L. | 5.3025 | 0.04233 |
| Richardson, G. W. | 67.3482 | 0.53760 |
| Roosth, Bennie | 0.1840 | 0.00146 |
| Roosth, Bennie, Ind. Ex. | 0.1840 | 0.00147 |
| Roosth, Bennie Trust | 0.1840 | 0.00147 |
| Roosth, H. P. | 0.1840 | 0.00147 |
| Roosth, Isadore | 0.1840 | 0.00147 |
| Roosth, Soloman | 0.1840 | 0.00147 |
| Roosth, Wiley | 0.1840 | 0.00147 |
| Roosth & Genecov | 5.1621 | 0.04121 |
| Seven Drilling Co. | 24.6232 | 0.19654 |
| Shaw, D. J. | 3.7374 | 0.02983 |
| Sklar, Albert | 117.2074 | 0.93558 |
| Spencer, Dianne T. | 1.3620 | 0.01087 |
| Spivey, M. C. | 1.0920 | 0.00872 |

| Prospective Plant Owners | Net Interest Acres | Percent Initial Ownership |
|---|---:|---:|
| Sprviell, Z. J. | 0.4800 | 0.00383 |
| Strong, Jack B. | 11.8838 | 0.09486 |
| Sun | 557.3551 | 4.44895 |
| Texaco | 453.8538 | 3.62280 |
| Trant, Sam | 30.8684 | 0.24640 |
| Ward, Travis | 223.2890 | 1.78237 |
| Windsor, G. B. | 134.6971 | 1.07519 |
| Windsor, W. C., Jr. | 67.3481 | 0.53759 |
| Winwell 61 | 446.5760 | 3.56470 |
| Woldut, Alex, Jr. | 0.2330 | 0.00186 |
| Woldut, Jack | 0.2330 | 0.00186 |
| Totals | 12,527.7300 | 100.00000 |

EXHIBIT "C"

Attached to
AGREEMENT FOR CONSTRUCTION AND OPERATION
OF THE FAIRWAY GAS PLANT
ANDERSON AND HENDERSON COUNTIES, TEXAS

ACCOUNTING PROCEDURE

The term "Plant" as herein used shall be construed to mean the Plant as defined by the agreement to which this Accounting Procedure is attached.

The term "parties hereto" as herein used shall be construed to mean the parties to the agreement to which this Accounting Procedure is attached.

The term "Plant Operator" as herein used shall be construed to mean the party designated to conduct the operation of the Plant for the Plant account.

The Plant Operator shall bill the other parties hereto on or before the last day of each month for their proportionate share of costs and expenditures incurred during the preceding calendar month. Such bill shall be accompanied by statements reflecting the total costs and charges summarized by appropriate classifications indicative of the nature thereof; provided that a detailed schedule of material ordinarily considered controllable by operators in such cases shall be furnished if requested. As provided under Section 6 of the Agreement for Construction and Operation of the Fairway Gas Plant, Plant Operator if it so chooses may request a permanent working fund.

I.  COST INCURRED IN CONSTRUCTING, MAINTAINING AND OPERATING PLANT AND IN MAKING ADDITIONS TO AND CHANGES IN CONSTRUCTION OF SAME

Subject to limitations hereinafter prescribed, Plant Operator shall charge the Plant account with the following items:

1. All labor directly employed in connection with the construction, maintenance, and operation of said Plant, including vacation, sick and accident time, except that paid by insurance companies.

2. Trucking and other services necessary for the construction, maintenance and operation of the Plant.

3. Expenses of a routine nature incurred in determining the suitability of Gas for extraction of Products in the Plant, such as, but not limited to, testing, analysis and other similar expenses; not to include, however, major expenditures for special surveys, which must be approved in the manner provided in Section 5 of the agreement to which this Accounting Procedure is attached.

4. Material, equipment and supplies purchased, or furnished, by Plant Operator for the use of the Plant.

5. Moving material to the Plant from vendor's warehouse or from other property of the Plant Operator; but, in the latter event, the distance charged to the Plant shall not exceed the distance from the nearest reliable supply store or railway receiving point, except by approval of the parties hereto.

6. Moving surplus material from the Plant to vendees, if sold f.o.b. destination.  No charge shall be made to the Plant account for moving surplus material to Plant Operator's other property, except by approval of the parties hereto.

7. Use of and service by Plant Operator's exclusively owned equipment and utilities at rates not exceeding those prevailing in the district where the Plant is located, unless such rates are definitely stated under Section II, "Basis of Charges to Plant Account", of this Accounting Procedure.

8. The salary of Plant Operator's service personnel while engaged at the Plant, the salaries of Plant Operator's technicians for the period of their assignment to the Plant for the purpose of conducting the Plant performance

tests, and all costs of training at the Plant site the initial Plant personnel and moving to the Plant all permanent Plant operating personnel requisite for Plant Operator's performance hereunder.

9. Replacements or repairs of damages or losses incurred by fire, explosion, flood, storm, or from any other cause not occurring by reason of Plant Operator's gross negligence and not recovered from insurance carriers.

10. All costs and expenses of litigation, or legal services otherwise necessary or expedient for the protection of each party hereto, including costs incident to discharge or defense of any claim or suit alleging infringement of patents, said costs and expenses, including attorney's fees and expenses as hereinafter provided, together with all judgments obtained against the Plant Owner or the subject matter of this agreement, actual expenses incurred by any party or parties hereto in securing evidence for the purpose of defending against any action or claim prosecuted or urged against the Plant Owner or the subject matter of the agreement to which this Exhibit "C" is attached.

    A. Upon approval of the parties hereto, actions or claims affecting the said interests hereunder may be handled by the legal staff of one or more of the parties hereto, and the charges therefor shall be approved by the parties hereto and charged against the Plant account.

    B. Fees and expenses of outside attorneys shall not be charged to the Plant account unless authorized by the parties hereto.

11. All taxes of every kind and nature assessed upon or in connection with the Plant, the operation thereof or the Products derived therefrom, and which taxes have been paid by the Plant Operator for the benefit of the parties hereto.

12. Insurance:

A. Premiums for Workmen's Compensation insurance, Employer's Liability insurance, and any other insurance carried on the Plant or its operation, together with all expenditures incurred and paid in settlement of claims or judgments not recovered from the insurance carrier to fully discharge all liability of Plant Operator ensuing from an accident occurring on or in connection with the operations for the benefit of the Plant account.

B. If no insurance is required to be carried on any or all of the above or other risks, all actual expenditures incurred and paid by the Plant Operator in settlement of any and all losses, claims, damages, judgments and other expenses including legal services shall be charged to the Plant account unless the same shall occur by reason of Plant Operator's gross negligence.

13. A charge to the Plant account of Plant Operator's current cost of established plans for employees' group insurance, hospitalization, pension or retirement, and all other benefit plans of a like nature, applicable to Operator's labor cost, provided that the total of such charges shall not exceed ten percent (10%) of Operator's total labor payroll covering employees directly employed in connection with the construction, maintenance and operation of said Plant.

14. Any other usual and customary expenditure incurred by Plant Operator reasonably necessary for the proper construction, maintenance and operation of the Plant.

15. The expense of providing and maintaining on or in the vicinity of the Plant all necessary camps and housing facilities for employees approved by Plant Owners.

16. Overhead charges to Plant account:

A. For construction of Plant and subsequent additions or alterations, Plant Operator, in addition to actual costs and expenses provided for herein, shall receive as compensation for its services:

(1) In supervising the construction of the Plant, an amount equal to one and one-half percent (1.5%) of the total cost of the construction.

(2) For its services in supervising subsequent additions to or alteration of the Plant, where each such addition or alteration involves an expenditure in excess of five thousand dollars ($5,000.00), but not more than twenty-five thousand dollars ($25,000.00), an amount equal to five percent (5%) of the total cost of such construction, and where each such addition or alteration involves an expenditure in excess of twenty-five thousand dollars ($25,000.00) but not more than two hundred and fifty thousand dollars ($250,000.00), an amount equal to five percent (5%) of the first twenty-five thousand dollars ($25,000.00) plus an amount equal to two percent (2%) of the amount over and above twenty-five thousand dollars ($25,000.00), but not more than two hundred and fifty thousand dollars ($250,000.00); and where each such addition or alteration involves an expenditure in excess of two hundred and fifty thousand dollars ($250,000.00), an amount equal to five percent (5%) of the first twenty-five thousand dollars ($25,000.00) plus an amount equal to two percent (2%) of the next two hundred and twenty-five thousand dollars ($225,000.00), and plus an amount equal to one and one-half percent (1.5%) of the amount over and above two hundred and fifty thousand dollars ($250,000.00).

Such compensation shall be in lieu of all other expense of the principal business office, division office and district office of Plant

Operator, including salaries paid to all managing officers, the employees in Production, Accounting, Purchasing, Industrial Relations, Legal, Tax and other departments of the Plant Operator, and all other employees of Plant Operator in said offices while engaged in normal work in connection with the construction of the Plant, together with all traveling expenses and expense accounts of such officers and employees in going to and from said Plant and all telephone, telegraph and other communication expenses of such officers and employees in conducting such normal work in connection with the construction of said Plant; provided that the said overhead charge shall not be in lieu of the actual labor payroll of Plant Operator on the job site and the Plant office expenses of Plant Operator on the job site; provided, further, that only such other employees as are necessary to check and inspect material received and the physical work performed by the contractor or contractors shall be assigned by Plant Operator to the job site. Plant Operator shall have the right, at its option, to perform any portion of the actual construction work itself and the cost thereof shall be considered as actual cost and shall be charged to the Plant account.

B. For operation and maintenance of Plant, Plant Operator, in addition to actual costs and expenses hereinabove provided, shall receive as compensation for its services in supervising the operation and maintenance of the Plant, which compensation shall begin immediately following the commencement of its operation, an amount equal to eight percent (8%) of the normal operation and maintenance expenses including but not limited to items 1 through 8 and 12 through 15 hereinabove provided, exclusive of the payment due for purchase of Products recovered under terms of Products Purchase

Contracts between Plant Owners and others, of the Plant each month, which shall be in lieu of all office expense of the principal business office, division office, and district office of Plant Operator including salaries paid to all managing officers, the employees in Production, Accounting, Purchasing, Industrial Relations, Legal, Tax and other departments of the Plant Operator, and all other employees of the Plant Operator in said offices while engaged in normal work in connection with the operation of the Plant, together with all traveling expenses and expense accounts of such officers and employees in going to and from said Plant and all telephone, telegraph and other communication expenses of such officers and employees in conducting such normal work in connection with the operation and maintenance of said Plant; provided that said overhead charge shall not be in lieu of the actual labor payroll of the Plant Operator at the Plant site and those office expenses of Plant Operator at the Plant site which are essential to the efficient and workmanlike conduct of the operation and maintenance of the Plant, such as, but not limited to, the salaries of employees engaged in and other expenses incurred in checking Plant and Product inventories, Product shipments, compiling payrolls and reports; provided, however, that such overhead charges shall not be less than one thousand five hundred dollars ($1,500.00) per month.

During the period of gas gathering and sale, prior to the start-up of the gas processing Plant, Operator shall be granted an overhead charge of Six Hundred Dollars ($600.00) per month.

C.  The overhead charges provided in A and B above may be amended from time to time when authorized by a vote of the parties hereto in accordance with Section 5 of the agreement to which this Accounting Procedure is attached, if in practice they are found to be insufficient or excessive; provided, however, that such changes shall not be made

more often than once in any calendar year and shall not be applied
retroactively to any prior period.

## II.  BASIS OF CHARGES TO PLANT ACCOUNT

1. Material and equipment purchased and service procured shall be
charged at price paid by Plant Operator, after deduction of all discounts
actually received, including cash discounts.

2. Material required for operations shall be purchased for direct charge
to the Plant account whenever practicable, except that Plant Operator may
furnish such material from Plant Operator's stocks under the following
conditions:

A. New material (Condition "A"):

(1) Tubular goods (2" and over), tanks, compressors and engines
shall be priced on carload basis effective at date of transfer, and
f.o.b. railway receiving point nearest the Plant account operation,
regardless of quantity transferred.

(2) Other material shall be priced on basis of a reputable supply
company's Preferential Price List effective at date of transfer and
f.o.b. the store nearest to the Plant account operation.

(3) Cash discount not allowed.

B. Used material (Conditions "B" and "C"):

(1) Material which is in sound and serviceable condition and is
suitable for reuse without reconditioning shall be classed as
Condition "B" and priced at seventy-five percent (75%) of new price.

(2) Material which cannot be classified as Condition "B" but
which

(a) after reconditioning will be further serviceable for
original function as good secondhand material (Condition "B") or

(b) is serviceable for original function but substantially not suitable for reconditioning, shall be classed as Condition "C" and priced at fifty percent (50%) of current new price.

(3) Material which cannot be classified as Condition "B" or Condition "C" shall be priced at a value commensurate with its use.

(4) Tanks, buildings and other equipment involving erection cost shall be charged at applicable percentage of knocked down current new price.

C. Warehouse handling charges:  None for Plant Operator's own warehouses; however, should it be necessary to the operation of the Fairway Gas Plant to maintain a Plant warehouse, all costs incurred with respect to said Plant warehouse shall be properly chargeable to the Plant account.

3. Plant Operator does not warrant the material furnished beyond or back of the dealer's or manufacturer's guaranty; and in case of defective material, credit shall not be passed until adjustment has been received by Plant Operator from the manufacturers or their agents.

4. The following rates shall apply to service rendered to the Plant by facilities owned exclusively by Plant Operator:

A. Water service, fuel gas, teaming, power and compressor service:  At rates commensurate with the cost of providing and furnishing such services to the Plant but not exceeding rates currently prevailing in the field where the Plant is located.

B. Automotive equipment:  At rates commensurate with cost of ownership and operation and in line with schedule of rates adopted as recommended uniform standardized charges against Plant account operations and revised from time to time by the Petroleum Motor

Transport Association.  Automotive rates shall include cost of oil, gas, repairs, insurance, and other operating expenses and depreciation; and charges shall be based on use in acthal service on, or in connection with, the Plant account operation.

C. A fair rate shall be charged for the use of any other items of Plant Operator's fully owned machinery or equipment, which charge shall be ample to cover maintenance, repairs, depreciation and the service furnished the Plant.

D. Whenever requested, Plant Operator shall advise the other parties hereto in advance of the rates Plant Operator proposes to charge.

E. Rates shall be revised and adjusted from time to time when found to be either excessive or insufficient upon agreement between the Plant Operator and the parties hereto.

## III. DISPOSAL OF EQUIPMENT AND MATERIAL

The parties hereto shall approve the proposed sale or distribution of major surplus materials and equipment by Plant Operator.

1. Material purchased by Plant Operator shall be credited to the Plant account and included in the monthly statement of operations for the month in which the material is removed.

2. Material purchased by any party hereto other than Plant Operator shall be invoiced by Plant Operator and paid for by such party to Plant Operator immediately following receipt of invoice.  The Plant Operator will thereupon immediately pass credit to the Plant account and include same in the monthly statement of operations for the month in which such material was paid.

3. Division of material in kind, if made between Plant Operator and the other parties hereto, shall be in proportion to their respective interests in Plant material.  Each party shall thereupon be charged individually with

the value of the material received or receivable by each party and corresponding credits shall be made to the Plant account by Plant Operator, and all such credits shall appear in the same monthly operating statement.

4. Sales to outsiders of material from the Plant shall be credited by Plant Operator to the Plant account at the full amount collected by Plant Operator from vendee.  Any claims paid to vendee for defective material or otherwise shall be charged back to the Plant account.

## V.  BASIS OF PRICING MATERIAL TRANSFERRED FROM PLANT ACCOUNT

Material purchased by either Plant Operator or any other party hereto or divided in kind, unless otherwise agreed, shall be valued on the following basis:

1. New price as used in the following paragraphs shall have the same meaning and application as that used above in Section II, "Basis of Charges to Plant Account".

2. New material (Condition "A"), being new material procured for the Plant but never used, at price charged for material ordinarily considered controllable by operators of gas plants and gas systems and at current new price for other material.

3. Good used material (Condition "B"), being used material in sound and serviceable condition, suitable for reuse without reconditioning.

A. at seventy-five percent (75%) of current new price if material was charged to Plant account as new, or

B. at seventy-five percent (75%) of current new price less depreciation consistent with their usage on and service to the Plant if the materials were originally charged to the Plant account as secondhand at seventy-five percent (75%) of new price.

4. Used material (Condition "C"), being used material which

A. after reconditioning will be further serviceable for original

function as good secondhand material (Condition "B"), or

B. is serviceable for original function but substantially not suitable for reconditioning, at fifty percent (50%) of current new price.

5. Used material (Condition "D"), being material which cannot be classified as Condition "B" or Condition "C", shall be priced at a value commensurate with its use.

6. Junk (Condition "E"), being obsolete and scrap material at prevailing prices.

7. Temporarily used material: When the use of material is of a temporary nature and its service to the Plant does not justify the reduction in price as provided in Paragraphs 3A and 3B above, such material shall be priced on a basis that will leave a net charge to the Plant account consistent with the value of service rendered.

## V.   INVENTORIES

1. Within one (1) year from the date of initial operation of the Plant, and thereafter at such times as the parties hereto may desire but not more frequent than annually, inventories shall be taken by Plant Operator of the Plant material, which shall include all such materials as is ordinarily considered controllable, and usually subject to inventories, by operators of gas plants and gas systems. Expenses and salaries of personnel of Plant Operator necessary for the inventory shall be charged to the Plant account and bear the appropriate overhead.

2. Notice of intention to take inventory shall be given by Plant Operator two weeks before any inventory is to begin, so that the other parties hereto may be represented when any inventory is taken. The expense and salaries of any such representatives actually participating in the

inventory shall be charged to the Plant account.

3. Failure of any party hereto to be represented at the physical inventory shall bind such party to accept the inventory taken by Plant Operator, who shall in that event furnish the party, or parties, who were not so represented with a copy thereof.

4. Reconciliation of inventory with charges to the Plant account shall be made by each party at interest, and a list of overages and shortages shall be jointly determined by Plant Operator and the other parties hereto.

5. Inventory adjustments shall be made by Plant Operator with the Plant account for overages and shortages, but Plant Operator shall only be held accountable to the other parties hereto for shortages due to lack of reasonable diligence.

EXHIBIT "D"

PRODUCTS PURCHASE CONTRACT
FAIRWAY GAS PLANT
ANDERSON AND HENDERSON COUNTIES, TEXAS

THIS CONTRACT, made and entered into as of the ____ day of _____,

196___, by and between _____

_____

_____, hereinafter referred to as

"Producer" (whether one or more) and HUNT OIL COMPANY, for itself and as Plant Operator

for the Owners of the Fairway Gas Plant.  All Owners of the Fairway Gas Plant are here-

inafter collectively designated as "Processor".  Each Plant Owner shall acquire an

undivided interest hereunder equal to its undivided interest in the Plant.

WHEREAS, Producer owns or has the right to produce Gas from oil formations

with oil or from gas or gas condensate formations, underlying certain lands described

in Exhibit "A-1" attached hereto and made a part hereof; and

WHEREAS, Processor has a Plant or shall construct Plant facilities to gather,

compress,  and process Producer's Gas for the extraction of propane and other products,

not to exclude ethane, and return the remaining Residue Gas to Producer or Producer's

Designee at the outlet of the Plant.

NOW, THEREFORE, in consideration of the premises and the mutual covenants

and agreements herein contained, the parties hereto agree as follows:

Section 1

1.1  The delivery of the Gas shall be made at separators furnished by Producer

or at other mutually agreeable points.  Processor may, with Producer's consent, install

equipment acceptable to Producer on Producer's storage tanks for the purpose of

saving and utilizing vapors therefrom.  Producer shall not install or permit others to

install any equipment for the recovery of liquefiable hydrocarbons from the Gas

D-1

covered under this contract, except Producer's conventional, mechanical, non-refrigerated type separator used in the separation of Gas and liquids from the well or wells.

1.2 It is understood that Processor may also process gas produced from other properties. During the periods when the gas production from the properties connected to Processor's Plant is in excess of the then installed Plant and line capacities, first preference in processing shall be given to casinghead gas, and Processor shall be obligated to take only that portion of the gas-well gas from the properties covered hereby for which capacity over and above that required for processing casinghead gas is available in the Plant, but shall take gas-well gas ratably with its takes from all other gas-well gas properties connected to its Plant. Producer shall have the right to dispose of any gas not taken, subject to Processor's right to take such gas at any subsequent time upon giving Producer at least ten (10) days' notice of its election to do so.

It is contemplated that processing operations may be interrupted from time to time during periods when the Plant is partially or entirely shut down for repair, renovation, inspection, or emergency purposes, and during such periods, the Processor shall by-pass Producer's gas around the Plant. Processor shall construct and maintain the facilities necessary for this purpose, and such facilities shall be constructed in such manner that the by-pass gas will pass through Processor's desulphurization facilities before delivery to Gas Purchaser.

1.3 Subject to sooner termination under the provisions hereof, this contract shall remain in force for a period of twenty (20) years from the date hereof and from year to year thereafter, unless thereupon or until thereafter, at the end of any such year, terminated by either party hereto upon at least ninety (90) days' written notice to the other party hereto; provided, if at any time for any cause the operation of said Plant is deemed unprofitable in Processor's judgment, Processor may, on thirty (30) days' written notice to Producer cancel this contract in full. Producer may cancel this contract at such time as oil and gas leases covered under this contract become uneconomical and are

D-2

terminated.  Notwithstanding the above provisions, Processor has the exclusive right for extraction of products during the term of this contract, and Producer will not enter into processing agreements with others without written approval of Processor.

### Section 2

2.1  Processor proposes to construct at its sole cost, risk and expense a Gas Products Plant designed to recover eighty-five percent (85%) of the propane and essentially all of the butanes and heavier hydrocarbons at a throughput of twenty-two million (22,000,000) cubic feet of Gas per day.  Said Plant is to be located in the Fairway Field, Anderson and Henderson Counties, Texas.  Processor shall proceed with the construction of the Plant with reasonable diligence until Plant is completed and put into operation.  If for any reason said Plant is not completed and put into operation within twelve (12) months from the effective date of the Agreement for Construction and Operation of the Fairway Gas Plant, either party hereto shall have the right to cancel this agreement by giving the other party at least thirty (30) days' written notice of its intention to do so.

2.2  Processor may at its option install gas gathering systems to take delivery of the Gas at high pressure and low pressure.  The term for Gas delivered at different pressures as used herein shall be defined as follows:

      (a) "High Pressure Gas" shall mean all Gas which Processor actually receives, transports and processes through its Plant with the aid of not more than one stage of compression to a delivery pressure of nine hundred and twenty-five pounds per square inch gauge (925 psig) or less.

      (b) "Low Pressure Gas" shall mean all Gas which Processor actually receives, transports, and processes through its Plant with the aid of two or more stages of compression to a delivery pressure of nine hundred and twenty-five pounds per square inch gauge (925 psig) or less.

For the purposes hereof, a stage of compression shall be defined as a compressor ratio not exceeding three (3) to one (1).

2.3  In consideration of gathering and compressing the Gas, Processor shall charge Producer a price per thousand cubic feet (MCF) computed on the Residue Gas volume, as follows:

D-3

(a) For High Pressure Gas, the gathering charge shall be based upon the following formula, subject to a maximum of two and five-tenths cents (2.5¢) per MCF and a minimum of one cent (1¢) per MCF:

$$x = \frac{19,920}{y}$$

x = Gathering charge in cents per MCF;
y = Daily average Residue Gas volume in MCF attributable to High Pressure Gas for any accounting period.

For High Pressure Gas, the compression charge shall be one and seven-tenths cents (1.7¢) per MCF for compression (if applicable) to nine hundred and twenty-five pounds per square inch gauge (925 psig) or less.

(b) For Low Pressure Gas, the gathering charge shall be based upon the following formula, subject to a maximum of thirteen cents (13¢) per MCF and a minimum of three and five-tenths cents (3.5¢) per MCF:

$$x = \frac{38,208}{y}$$

x = Gathering charge in cents per MCF;
y = Daily Average Residue Gas volume in MCF attributable to Low Pressure Gas for any accounting period.

For Low Pressure Gas, the compression charge shall be six and eight-tenths cents (6.8¢) per MCF for compression to nine hundred and twenty-five pounds per square inch gauge (925 psig) or less.

In computing the gathering charges under (a) and (b) above, the computation shall not be carried to more than two significant figures to the right of the decimal point.

In addition to the above, Processor shall charge Producer the actual cost of any further treating, purifying and/or dehydration to make the Gas merchantable.

2.4  Producer shall be responsible for Producer's Gas and for damages or injuries caused thereby, prior to delivery of the Gas hereunder to Processor, and after redelivery of said Gas to Producer at the Plant outlet, and Processor shall be responsible for said Gas and for damages or injuries caused thereby after delivery of said Gas hereunder to Processor and prior to redelivery of the Gas to Producer at the Plant outlet.

<u>Section 3</u>

3.1  All Gas loss resulting from handling and processing of Gas through the Plant hereunder shall be computed on a monthly basis and Producer shall stand such loss, accounted for monthly, to the following extent only:

a.  For shrinkage resulting from extraction of plant products in the Plant, a volume of Gas calculated from the liquid production using the factors published by the NGPA in its Technical Standards Publication No. 2145-57.

D-4

adjusted to the 14.65 psia pressure base as follows:

| Components | Cubic Feet per Gallon |
|---|---|
| Methane | 59.19 |
| Ethane | 39.37 |
| Propane | 35.89 |
| Iso-Butane | 29.79 |
| N-Butane | 30.87 |
| 12# Gasoline | 25.56 |

   b.   For process fuel and incidental losses, other than shrinkage caused by extraction, this portion of the Gas loss shall be allocated to the Delivery Points on the basis that the percentage of product shrinkage volume allocated to each Delivery Point is of the total product shrinkage volume.

   c.   For Gas compressor fuel, this portion of the Gas loss shall be determined each month by orifice meter measurement and shall be allocated to the Delivery Points on the basis that the percentage ratio of each Delivery Point's inlet Gas volume is of the total inlet Gas volume.

## Section 4

4.1   Measurements for quantity of Gas and for liquid hydrocarbon content of Gas delivered hereunder shall be made at the Delivery points as provided in Section 1.1 hereof. The quantity measurements shall be made continuously through meters at such point. Measurements for liquid hydrocarbon content shall be made quarterly by Processor, by chroma-tograph, low temperature fractional analysis or some other approved method acceptable to both Producer and Processor for testing Gas for liquid hydrocarbon content, and said measurements and determination of liquid hydrocarbon content, adjusted to correspond to actual Plant recovery and computed on the same basis for all points at which Gas is being delivered into the Plant, shall be used as the basis for allocating each separate product recovered in the Plant to each of such Delivery Points.  It shall be considered that the total amount of each such product recovered and saved at the Plant during each month, attributable to Gas delivered at the Delivery Point under this contract, shall be a fractional part of the total number of gallons of such product recovered and saved at the Plant during the month in the ratio that the number of gallons of such product contained in the Gas taken into the Plant during such month at the Delivery Point under this contract, determined as above provided, bears to the total number of gallons of the same product contained in all of the Gas taken into the Plant during that month, ascertained in the same manne

4.2  Processor shall pay Producer as compensation for products extracted from Producer's Gas an amount equal to the applicable percentage determined from Exhibit "B-1" hereto, of the "current actual net value" of that portion of all products produced and sold at Processor's Plant which is attributable to Producer's Gas delivered to the Plant for processing hereunder.  The "current actual net value" of each product, for each accounting period, shall be obtained by multiplying the "current weighted average net sales price" of such product by the number of gallons thereof produced and sold from Processor's Plant.

The "current weighted average net sales price" of each product shall be determined by dividing the total gallons of such product produced and sold during the accounting period involved into the "net proceeds f.o.b. Plant" received from the total sales of each such product by all Owners of such products.

"Net proceeds f.o.b. Plant" shall be the total gross proceeds received from sales of each Plant product received by all Owners of such products f.o.b. Processor's Plant during each accounting period less any charges for tank car rental, broker's commissions, taxes, pipeline transportation costs and similar costs and expenses incurred or made in connection with the sale, transportation and delivery of such products.  In the event any Owner of Plant products markets products through its own marketing organization directly to distributors or consumers, a commission commensurate with the current commission being charged in the industry shall be deducted in determination of "net proceeds f.o.b. Plant".

In the event any Owner or Owners of Plant products do not sell their Plant products to others, but take the same for their own use, the "net proceeds f.o.b. Plant" for such Plant products shall be deemed to be the same as the "current weighted average net sales price", determined as above, of the Plant products actually sold during the accounting period involved.  In the event there are no actual sales of Plant products during the accounting period involved, then the "net proceeds f.o.b. Plant" for the Plant products so taken and used by Owner or Owners thereof shall be deemed to be the average sales price for the products involved as received in the preceding accounting period.

D-6

4.3  Payment shall be made by the Processor to Producer not later than the twentieth (20th) day of each month for all products purchased hereunder during the preceding month, and at the time payment is made a statement showing full details of the accounts shall be transmitted to the Producer accompanying the Processor's check in payment therefor.  Examination by the Producer of the books of account kept by the Processor respecting all accounts relating to Gas processed in the Plant shall be permitted by the Processor at any and all reasonable hours.  In the event Producer is one of several parties supplying Gas to the Plant through facilities operated by one party (whether Producer or otherwise) as Lease Operator on behalf of the owners of such facilities, then Producer agrees that such Lease Operator shall be Producer's representative for all purposes hereunder and Processor shall have the right to rely on any information furnished by such Lease Operator with reference to the allocation of both the volume of Gas delivered to the plant and liquid hydrocarbons recovered therefrom, between Producer and the several parties supplying such Gas, and Producer hereby warrants and agrees that Processor is authorized to make disbursements based on such allocation statements furnished by such Lease Operator.

4.4  All Gas delivered hereunder at the Delivery Point shall be measured by a suitable orifice meter or meters of standard make, furnished, installed, operated and kept in repair by Processor.  Producer may install and operate such check meter or meters as it or they may desire, provided that such check meter installation does not interfere with the proper operation of the meter or meters furnished by Processor.  Processor shall also install, operate and keep in repair a suitable orifice meter at the Plant outlet for the purpose of measuring the amount of Residue Gas returned to Producer or Producer's Designee.

4.5  The meters shall be installed and operated in accordance with specifications prescribed in the American Gas Association Gas Measurement Committee

Report No. 3, dated April, 1955, as said report may be amended from time to time.  The computation of all Gas volumes measured by orifice meters shall be in accordance with the Standard Gas Measurement Law of the State of Texas and shall be based on the latest basic orifice factors published by the American Gas Association corrected to a base pressure of 14.65 pounds per square inch and a base temperature of sixty degrees Fahrenheit (60° F.).  The specific gravity shall be determined quarterly by the use of a gravitometer of the "Ranarex Type" or gas balance, whichever is acceptable to the parties hereto.  In the absence of findings by the Texas Railroad Commission, there shall be used an assumed atmospheric pressure of 14.4 pounds per square inch absolute (regardless of actual atmosphere pressure at which the gas is measured) and at the actual recorded flowing temperatures.  The Reynold's Number, Manometer and Expansion Factors shall be assumed to be one.  Any volume of Gas metered hereunder at a pressure in excess of one hundred pounds per square inch gauge (100 psig) shall be corrected for deviation from Boyle's Laws.  Producer shall have the right to inspect Processor's meters and calculations at all reasonable times.

    4.6  In the event a meter is out of service or registering inaccurately, the volume of Gas delivered hereunder shall be estimated by (1) using the registration of any check meter or meters if installed and accurately registering or, (2) in the absence of such check meter or meters, by correcting the error if the percentage of error is ascertainable by calibration and mathematical computation.  At least once each quarter Processor shall verify the accuracy of its measuring equipment.  If either party shall notify the other that it desires a special test on any measuring equipment, the parties shall cooperate to secure a prompt verification of the accuracy of such equipment.  Processor shall give Producer notice of the time of all tests in order that Producer may conveniently have its representative present.  Cost of special tests shall be borne by the party requesting it if measuring equipment is found to be registering accurately.

4.7  If, upon test, any measuring equipment is found to be in error not more than three percent (3%), previous recordings of such equipment shall be considered accurate in computing deliveries hereunder, but such equipment shall be adjusted at once to record correctly.  If, upon test, any measuring equipment shall be found to be inaccurate by an amount exceeding three percent (3%), at a recording corresponding to the average hourly rate of flow for the period since the last preceding test, then such equipment shall be adjusted at once to record correctly, and any previous recordings of such equipment shall be corrected to zero error for any period which is known definitely or agreed upon, but in case the period is not known definitely or agreed upon, such correction shall be for a period extending over one-half (1/2) of the time elapsed since the last test, not exceeding fifteen (15) days.

## Section 5

5.1  Producer shall account to and pay to the lessors, royalty owners and the owners, if any, of production payments, overriding royalties, etc. under the lease or leases covered hereby in accordance with the provisions thereof for their share, if any, of the proceeds derived from the products recovered from said Gas hereunder.

5.2  This contract shall be subject to all valid applicable laws, orders, rules and regulations made by duly constituted governmental authorities.

5.3  In the event any party hereto is rendered unable, wholly or in part, by force majeure, to carry out its obligations under this contract, other than to make any payments or accounting hereunder, then the obligations of such party insofar as they are affected by such force majeure, shall be suspended during the continuance of any inability so caused, but for no longer period, and such cause shall, so far as possible, be remedied with reasonable dispatch.  The term "force majeure" as employed herein shall mean acts of God, acts of the public enemy, wars, blockades,

D-9

insurrections, strikes or differences with workmen, riots, disorders, epidemics, land-slides, lightning, earthquakes, fires, storms, floods, washouts, arrests and restraints, civil disturbances, explosions, breakage or accident to machinery or lines of pipe, freezing of wells or lines of pipe, requisitions, directives, diversions, embargoes, priorities or expropriations of government or governmental authorities, legal or de facto, whether purporting to act under some constitution, decree, law or otherwise, failure of pipelines or other carriers to transport or furnish facilities for transportation, rules and regulations with regard to transportation by common carriers, failures, disruptions, or breakdowns of machinery or of facilities of production, manufacture, transportation, distribution and consumption (including, but not by way of limitation, Processor's said Plant) and, without limitation by enumeration, any other cause or causes, whether of the kind enumerated or otherwise, not reasonably within the control of the party in default. The settlement of strikes or differences with workmen shall be entirely within the discretion of the party having the difficulty.

<u>Section 6</u>

6.1  As the leases subject hereto are being operated primarily for the production of oil, Producer may use any method therefor and the taking of Gas by Processor shall be subservient to said oil operation. Producer may, at any time and without liability to Processor, clean out, deepen, or abandon any well on the above described properties. However, before any well is taken out of service for any reason, Producer agrees to shut off the same from communication with Processor's Gas lines.

6.2  Producer hereby specifically reserves the right to introduce air, gas, or any other extraneous substance into any well covered hereby, or into the sand or sands from which any well is producing when, in the exclusive judgment of Producer, the introduction of such substance is desirable for the production of oil, provided that, in the exclusive judgment of Processor, should Producer's operations under this

D-10

paragraph create a condition which makes the taking and utilization of casinghead gas from any well unprofitable to Processor, or dangerous to the Plant or property of Processor, or the lives of Processor's employees, then Processor, at its election, may discontinue taking said casinghead gas from the particular well or wells while such condition exists.

6.3  Processor shall not be required to establish or maintain a connection at any Delivery Point when, in Processor's sole discretion, it is uneconomic to do so.  Any gas which Processor refuses to take for a period of ninety (90) days under the provisions of this Section 6.3 shall, at Producer's request, be released from the terms of this contract.

<u>Section 7</u>

7.1  Processor shall indemnify and hold Producer harmless against any and all claims for damages or otherwise arising out of the operations conducted hereunder by Processor.  Each Producer shall indemnify and hold Processor harmless against any and all claims for damages arising out of the operations conducted hereunder by Producer.

7.2  Where Producer owns an unleased mineral interest in any lands as shown on Exhibit "A-1" attached hereto, Producer shall, for the purposes of this contract, be considered as owning an oil and gas mining lease covering such interest and such interest shall be covered hereby.

7.3  Each Producer hereto warrants its title and right to the liquid hydrocarbons recovered and to be recovered from its share of the Gas in said Plant hereunder, and warrants and represents that it has the right to sell and transfer title to Processor to the liquid products to be recovered in the Plant as provided herein, free and clear of any and all claims of the gas purchaser or of any other person.  Upon demand by Processor, Producer shall submit complete abstracts of title down to date, with all necessary supporting title documents showing that each lease from which Producer's Gas is being produced hereunder is a good and valid lease covering the entire interest in the land covered by it, and that

D-11

Producer has good and merchantable title thereto and is entitled to dispose of such Gas and the products recovered from such Gas in the manner provided herein.  If the right or title of Producer is questioned or is involved in any action, or if Producer does not produce sufficient evidence of its title as represented herein, Processor shall have the right to withhold payment for Producer's share of the products until said title is cleared or until Producer furnishes a bond in the amount and upon conditions satisfactory to Processor.

7.4  All notices and correspondence hereunder shall be given by letter or telegram addressed to the following respective addresses of the parties hereto:

<div style="margin-left:2em">

To Processor:          Hunt Oil Company
700 Mercantile Bank Building
Dallas 1, Texas

To Producer:

</div>

or to such other address as may be designated hereafter by a party hereto by written notice to the other party (or parties) hereto.

7.5  This contract shall extend to and be binding upon the parties hereto, their respective heirs, successors and assigns, and shall constitute covenants attached to and running with the leases and lands covered hereby.  The rights of Producer may be assigned or conveyed in whole or in part and from time to time, but all such assignments and conveyances shall be subject to this contract.  The rights of Processor may be assigned in whole or in part and from time to time, but all such assignments and conveyances shall be subject to this contract.  No transfer of or succession to the interest of Producer herein, wholly or partially, shall affect or bind Processor until the first day of the month following the day it shall have been furnished, at its address given above, with the original recorded instrument or a certified copy of a recorded copy thereof, under which the transfer or succession takes place.

IN WITNESS WHEREOF, this agreement may be executed in any number of counter-parts, each of which shall be an original, as of the date first above written.

ATTEST:

BY _____

_____
BY _____
                                    "PRODUCER"

ATTEST:                             HUNT OIL COMPANY

BY _____     BY _____
                                    "PROCESSOR"

SIGNATURE PAGE TO PRODUCTS PURCHASE CONTRACT DATED _____, BY AND BETWEEN HUNT OIL COMPANY, AS PROCESSOR, AND _____, AS PRODUCER, FAIRWAY FIELD, ANDERSON AND HENDERSON COUNTIES, TEXAS



% Value from Plant Liquids Payable to Lease Producers

MMCFD @ 14.65 PSIA & 60°F

EXHIBIT "B-1" to PRODUCTS PURCHASE CONTRACT, FAIRWAY GAS PLANT, ANDERSON AND HENDERSON COUNTIES, TEXAS

EXHIBIT "E"

RATIFICATION AGREEMENT


WHEREAS, under date of _____, 196____,

a certain "Agreement for Construction and Operation of the Fairway Gas Plant, Anderson

and Henderson Counties, Texas", was made and entered into by and between certain parties

that are entitled to process Gas produced from the Fairway Field in Anderson and

Henderson Counties, Texas, which agreement shall be called herein "The Plant Agreement",

and it is provided therein that any party purchasing an interest in said Gas Plant

shall execute a ratification agreement on this form;

NOW, THEREFORE, in consideration of the premises and of other valuable

considerations, the undersigned does hereby ratify, confirm and adopt The Plant Agreement

and all amendments thereof, if any, and does hereby become a party hereto, which

ratification shall have the same effect as though the undersigned had executed the

original of The Plant Agreement and all such amendments thereof (if any) or a

counterpart thereof, and the undersigned does hereby agree to and with all other

parties of The Plant Agreement that the undersigned is bound by all the terms, covenants

and conditions thereof and that the undersigned will comply fully therewith.

IN TESTIMONY WHEREOF, the undersigned hereby binds itself and its respective

successors and assigns, effective this _____ day of _____, 196____.


ATTEST:                                    _____

BY_____          BY_____