**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SKLAR EXPLORATION COMPANY, LLC | ) | Case No. 20-12377-EEB |
| EIN: 72-1417930 | ) | |
| | ) | Chapter 11 |
| Debtor-in-Possession. | ) | |
| | ) | |
| | ) | |
| IN RE: | ) | |
| | ) | |
| SKLARCO, LLC | ) | Case No. 20-12380-EEB |
| EIN: 72-1425432 | ) | |
| | ) | Chapter 11 |
| Debtor-in-Possession. | ) | |

**_AD HOC_ COMMITTEE OF WORKING INTEREST OWNERS' OBJECTION TO
DEBTORS' AMENDED DISCLOSURE STATEMENT TO ACCOMPANY AMENDED
JOINT PLAN OF REORGANIZATION DATED DECEMBER 18, 2020**

**COMES NOW**, the _Ad Hoc_ Committee of Working Interest Owners of Debtors Sklar

Exploration Company, LLC, and Sklarco, LLC (the "**_Ad Hoc_ Committee**"), by and through their

undersigned counsel, for their _Objection to the Debtors' Amended Disclosure Statement to_

_Accompany Amended Joint Plan of Reorganization Dated December 18, 2020_ (the "**Objection**").

In furtherance of the Objection, the _Ad Hoc_ Committee states as follows:

**I.      Introduction**

1.      Since the last hearing before the Court on February 11, 2021 (the "**Hearing**"), the

Debtors have elected to wind-down Debtor Sklar Exploration Company, LLC ("**SEC**"), and resign

as operator over all of its oil and gas assets.  SEC will further reject its executory contracts to the

extent not already rejected from a recently filed rejection motion which includes the numerous

operating agreements that it is operator thereunder.  The various oil and gas properties for which

SEC will resign from are in desperate need of an effective transition plan which not only minimizes

expenses but also preserves value for the benefit of the working interest owners who are the parties'

whose economic interests are most greatly affected by a smooth transition.   Currently, the

transition process remains a mystery to the working interest owners and the Debtors defer

revealing what this process looks like until they file their Plan Supplement after the Amended

Disclosure Statement is approved.[1]   In keeping with the Court's comments at the Hearing, this

Objection is focused upon the critical disclosure of information that is missing in the Amended

Disclosure Statement rather than containing veiled objections to confirmation of the Amended

Plan.   Accordingly, the Court should deny the Amended Disclosure Statement, or, alternatively,

require the Debtors to amend the same to address the many missing items of critical information.

## II.      Relevant Background

2.      The members of the *Ad Hoc* Committee are identified in the *Supplemental Verified*

*Statement Pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure*.   (Docket No.

721).

3.      Each of the members of the *Ad Hoc* Committee own working interests in both the

Southwest Brooklyn Oil Unit and the Southeast Brooklyn Oil Unit (collectively, the "**Brooklyn**

**Oil Unit**").   Additionally, the members of the *Ad Hoc* Committee own other working interests

outside of the Brooklyn Oil Unit.

4.      Debtor Sklar Exploration Company, LLC ("**SEC**"), is the operator for the assets

located within the Brooklyn Oil Unit and Debtor Sklarco, LLC ("**SKC**") also holds a working

interest in the Brooklyn Oil Unit.

---

[1] For instance, the Debtors' recent *Omnibus Motion to Reject Joint Operating Agreements and Related Oil and Gas Contracts* (Docket No. 927) provides that the effective date of the rejection of all of SEC's contracts will be on the effective date of the Amended Plan.  However, the transition period proposed under the Amended Plan only seems to begin to take effect in the months ***after*** the effective date of the Amended Plan thereby leaving the Debtors' oil and gas assets "naked" and without an operator.  Such a scenario would be value destructive for all working interest owners including Debtor Sklarco, LLC ("**SKC**") who is a working interest owner.

5.    On April 1, 2020 (the "**Petition Date**"), the Debtors commenced these Chapter 11 cases when they filed their voluntary petitions.   (Docket No. 1).

6.    On November 18, 2020, the Ad Hoc Committee filed its *Motion to Modify the Automatic Stay to: (A) Hold a Meeting of the Working Interest Owners in the Brooklyn Oil Units; (B) Take a Contractually Authorized Vote to Remove Debtor Sklar Exploration Company, LLC, as Operator of the Brooklyn Oil Units; (C) Upon an Affirmative Vote to Remove SEC as Operator in Order to Take all Steps Necessary to Effectuate the Removal* (Docket No. 671) (the "**Stay Relief Motion**").  The Stay Relief Motion seeks to permit the removal of SEC as operator of the Brooklyn Oil Units, by permitting the working interest owners to take a vote on account of the loss of trust in the ability of SEC to properly operate the Brooklyn Oil Units.  The Court has held the Stay Relief Motion in abeyance until April 1, 2021.

7.    On February 26, 2021, the Debtors filed their *Amended Joint Plan of Reorganization Dated December 18, 2020* (the "**Amended Plan**", and *Amended Disclosure Statement to Accompany Amended Joint Plan of Reorganization Dated December 18, 2020* (the "**Amended Disclosure Statement**").  (Docket Nos. 913 and 925).[2]

8.    On February 26, 2021, the Debtors filed their *Status Report Regarding Assumption of Joint Operating Agreements and Amended Plan of Reorganization* (Docket No. 912) (the "**Status Report**").  The Status Report provides that, "in lieu of seeking a reorganization for SEC, the Debtors will be proposing an amended Plan . . . that provides for a structured wind-down of SEC, and SEC will be seeking to reject all of its joint operating agreements."  (*Id*. at ¶ 7).

---

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Amended Disclosure Statement.

### III.   Objection

9.      The Amended Disclosure Statement fails to provide adequate information as required under Section 1125 of the Bankruptcy Code.  Consequently, the *Ad Hoc* Committee objects to the Amended Disclosure Statement and requests that it be denied, or more appropriately amended to address the issues raised herein.

**A.      Standard for Approving a Disclosure Statement.**

10.      Section 1125 of the Bankruptcy Code requires the distribution of a disclosure statement before or at the time of solicitation of a plan of reorganization.  "[I]t is understood that the general purpose of the disclosure statement is to provide 'adequate information' to enable 'impaired' classes of creditors and interest holders to make an informed judgment about the proposed plan." *In re Phoenix Petroleum Co.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001) (citation omitted).  The Bankruptcy Code defines "adequate information" in relevant part as:

> information of a kind, and in sufficient detail, as far as reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of claims or interests in the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1).

11.      Put another way, a disclosure statement must contain "simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible [Bankruptcy] Code alternatives so that [creditors] can intelligently accept or reject the Plan." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988); *see also In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991) (stating a disclosure statement "must clearly and succinctly inform the average [] creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution").  Courts have developed criteria for use in determining whether a disclosure statement contains adequate information.  These criteria include:

4

(a) the incidents which precipitated filing of the chapter 11 petition; (b) a description of available assets and their value; (c) projections as to the future course of the debtor's business; (d) the source of information contained in the disclosure statement; (e) a disclaimer; (f) the financial and economic condition of the debtor while in chapter 11; (g) a description of scheduled claims; (h) the estimated dividend to creditors under a chapter 7 liquidation; (i) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (j) the anticipated future management of the debtor; (k) the chapter 11 plan or a summary thereof; (l) the estimated administrative expenses, including attorneys' fees and accountants' fees; (m) the collectability of accounts receivable; (n) financial information, data, evaluations or projections relevant to a creditor's decision to accept or reject the plan; (o) information relevant to the risk to creditors under the plan; (p) projected value from recovery of voidable transfers; (q) a description of litigation likely to arise in a non-bankruptcy context; (r) tax attributes of the debtor; and the relationship of the debtor to its affiliates.

*See In re United States Brass Corp.*, 194 B.R. 420, 424–25 (Bankr. E.D. Tex. 1996); *In re Cardinal Congregate I*, 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990); *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 171 (Bankr. S.D. Ohio 1988); *In re Metrocraft Publ'g Servs., Inc.*, 39 B.R. 567 (Bankr. N.D. Ga. 1984).

**B.      The Amended Disclosure Statement Fails to Provide "Adequate Information."**

12.      The Amended Disclosure Statement falls far short of providing "adequate information." Rather, the information provided therein and omitted therefrom leads to additional uncertainty regarding numerous issues. For example, and without limitation, the Amended Disclosure Statement:

- Fails to explain the details, *i.e.*, "the who, what, when, where and how," of the Resignation and Transition Schedule (as defined in the Amended Plan).

- Fails to explain the process by which a new operator replaces SEC under the terms of the Amended Plan.

5

- Fails to explain why it is necessary to effectuate the change in operatorship and wind-down on the Effective Date (presumably within the next 60 days) rather than sooner when SEC has already admitted to stepping down as operator.[3]

- Fails to explain the regulatory processes with the Alabama Oil and Gas Board ("**AOGB**") upon SEC's removal as operator to ensure that the working interest owners are protected.

- Fails to provide any detail regarding the maintenance, preservation and turnover of the Debtors' books and records for subsequent operators.

- Fails to provide any detail regarding the preservation and turnover of seismic and related drawings, maps, reports, engineering work, or other similar documents for potential, prospective, or subsequent operators.

- Fails to describe the reasons surrounding the timing and delay for effecting a change in control of operatorship of the Debtors' assets.

- Fails to provide any information as to whether SEC is presently compliant with its regulatory obligations to the AOGB and any other regulators.

- Fails to acknowledge whether there will be any plugging and abandonment liability or obligations to the Debtors for any of their properties with rejected JOAs.

- Fails to explain who will operate the Debtors' assets once the JOAs are rejected (on the Amended Plan's Effective Date) and until a new operator is subsequently voted in.

- Fails to explain whether the Debtors are compliant with all environmental obligations they are subject to.

- Fails to acknowledge that any claims against working interest owners on account of unpaid JIBs are subject to recoupment claims held by such working interest owners.

- Fails to disclose who the Independent Manager is and the qualifications of such person.

- Fails to provide a mechanism for the working interest owners to interview, meet, or object to the Independent Manager before such person is actually appointed, or, alternatively, provide a mechanism for the working interest owners to select their own person to serve as Independent Manager.

- Fails to describe what insurance policies are available, or may be available, on account of claims against the Debtors' directors and officers.

---

[3] Given SEC's impending resignation, the working interest owners should vote now, rather than after the Effective Date, as to who they believe the replacement operator should be. Such a vote could be conditional upon the Amended Plan being confirmed.

- Fails to describe whether SKC is current with respect to all cash call advances, JIB and other obligations.

- Fails to describe the reasons necessary for the exculpations contained in the Amended Plan.

- Fails to describe what efforts the Debtors have taken, or will take, to collect against Mr. Marshall Jones on account of a $54,000 promissory note identified in Exhibit I to the Amended Disclosure Statement.

- Fails to identify and describe the SEC contracts with working interest owners and third parties, including the North Beach and Abbyville Gas Plants, how those contracts will be transferred or conveyed, and what effect, if any, the removal of SEC will have on the working interest owners whose gas flows through those gas plants.

- Fails to identify and describe what effect, if any, pending litigation will have on reorganization.

- Fails to describe whether the rejection of executory contracts includes any agreements the Debtors have with Mr. David Barlow and whether the working interest owners may contact him in connection with a transition of operations.

- Fails to address how SEC intends to address payment of expenses and revenue to working interest owners and royalties to leaseholders during the wind-down.

13.     In sum, the Amended Disclosure Statement fails to provide key information that would assist the Debtors' various working interest owners in making any meaningful analysis of the Amended Plan.  The Court should deny approval of the Amended Disclosure Statement or require that same be amended to address the foregoing concerns.

### IV.     Reservation of Rights

14.     The *Ad Hoc* Committee makes no admission of fact or law and reserves any rights, claims, objections, and defenses, that may be available to them before this Court and any other court with competent jurisdiction over the parties and the matters at issue and any other matters involving the administration of this case, the estate, and the merits of the working interest owners. Nothing in this Objection constitutes a waiver or release of any rights, claims, or defenses of the *Ad Hoc* Committee in this case or any other case or proceeding.  The *Ad Hoc* Committee reserves the right to further oppose the Amended Disclosure Statement and Amended Plan.

Dated: March 11, 2021.

Respectfully submitted,

**AD HOC COMMITTEE OF WORKING INTEREST HOLDERS OF SKLAR EXPLORATION COMPANY, LLC, AND SKLARCO, LLC**

By: */s/Timothy M. Swanson*
Timothy M. Swanson (Colorado No. 47267)
MOYE WHITE LLP
1400 16th Street
6th Floor
Denver, Colorado 80202-1486
Tel: (303) 292-2900
Fax: (303) 292 4510
Tim.Swanson@moyewhite.com
*Counsel to the Ad Hoc Committee of Working Interest Holders of Sklar Exploration Company, LLC, and Sklarco, LLC*

--and--

Craig M. Geno
Law Offices of Craig M. Geno, PLLC
587 Highland Colony Parkway
Ridgeland, Mississippi 39157
Tel: (601) 427-0048
Fax: (601) 427-0050
cmgeno@cmgenolaw.com
*Counsel to the Ad Hoc Committee of Working Interest Holders of Sklar Exploration Company, LLC, and Sklarco, LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 11, 2021, the foregoing ***AD HOC COMMITTEE OF WORKING INTEREST OWNERS' OBJECTION TO DEBTORS' AMENDED DISCLOSURE STATEMENT TO ACCOMPANY AMENDED JOINT PLAN OF REORGANIZATION DATED DECEMBER 18, 2020*** was filed on the Court's electronic filing system CM/ECF and was electronically served upon all parties receiving electronic notice.

/s/*Timothy M. Swanson*
Timothy M. Swanson

9