## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

```
IN RE:                        ) Case No. 1:20-bk-12377
                              ) (Jointly Administered)
SKLAR EXPLORATION COMPANY,    ) Chapter 11
LLC AND SKLARCO, LLC,         )
                              ) Courtroom F
                              ) U.S. Custom House
                              ) 721 19th Street
              Debtors.        ) Denver, Colorado 80202-2508
                              )
                              ) May 12, 2020
                              ) 9:30 a.m.
```

**TRANSCRIPT OF CONTINUED EVIDENTIARY HEARING ON: (1) DEBTORS'
MOTION FOR AUTHORITY TO USE CASH COLLATERAL (DKT. NO. 34); (2)
DEBTORS' MOTION FOR AUTHORITY TO PAY PRE-PETITION JOINT
INTEREST BILLING OBLIGATIONS AS CRITICAL VENDORS (DKT. NO. 41)
AND (3) MOTION TO HONOR AND PAY OVERRIDING ROYALTY, ROYALTY,
AND WORKING INTEREST OBLIGATIONS; AND OFFSET JOINT INTEREST
BILLING OBLIGATIONS (DKT. NO. 37); (4) DEBTORS' APPLICATION TO
EMPLOY BERG HILL GREENLEAF & RUSCITTI, LLP AS SPECIAL COUNSEL;
(5) MOTION TO APPROVE PAYMENT PROCEDURE FOR PROFESSIONAL FEES
AND COSTS; AND ALL OBJECTIONS THERETO
BEFORE HONORABLE ELIZABETH E. BROWN
UNITED STATES BANKRUPTCY JUDGE**

```
Transcript requested by:      J. BAIN, ESQ. (Jones Walker),
                              D. BRESCIA, ESQ. (Clark Hill),
                              T SHIPPS, ESQ. (Maynes Bradford),
                              and J. RETHERFORD, ESQ. Balch &
                              Bingham)
Requested on:                 Friday, May 15, 2020
Provided on:                  Saturday, May 16, 2020
Cost of Transcript:           $1,291.65 (237 pgs @ $5.45/pg)
```

**TRANSCRIPTION SERVICE:**          **TRANSCRIPTS PLUS, INC.**
**435 Riverview Circle**
**New Hope, Pennsylvania 18938**
**Telephone:  215-862-1115**
**Facsimile: 215-862-6639**
**e-mail CourtTranscripts@aol.com**

```
    Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.
```

EXHIBIT A

Sklar - Cross/Skelton                              32

1  Q    But Sklarco didn't pay its share of any of those cash call
2  advances, did it?
3  A    Sklarco pays the bills as they come in as the work is
4  operated -- as the work is being done.
5  Q    Did Sklarco -- Sklarco's a working interest owner, just
6  like the rest of us, isn't it?
7  A    Yes, it is.
8  Q    And the cash call advance request from SEC went out to
9  Sklarco and all of the other working interest owners, isn't it?
10 A    The cash call advance goes out to working interest
11 owners --
12 Q    Including Sklarco.
13 A    (No verbal response).
14 Q    And Sklarco did not pay any of the cash call advances, did
15 it?
16 A    Sklarco does not pay cash advances.  Sklarco pays the
17 bills as they come in.
18 Q    And --
19 A    As we complete the work.
20 Q    Well, if that's the case -- if that's the case, why is it
21 that in your data room, you have a cash call accounting, and
22 for each and every cash call that is directed to Sklarco, the
23 amount paid is nothing?  Can you explain that?
24 A    As I said, Sklarco pays the bills as the work is
25 completed.  They pay their part of the bills.

Sklar - Cross/Skelton                           33

 1  Q    Well, why is it that Sklarco is treated so favorably?
 2  Everyone else has to pony-up their share in advance.
 3          MS. RILEY:  Objection.
 4  Q    What --
 5          MS. RILEY:  Objection, Your Honor.  This is an
 6  inappropriate question.
 7          THE COURT:  Overruled.
 8  BY MR. SKELTON:
 9  Q    Isn't Sklarco a party to the same joint operating
10  agreements that all the other working interest owners are a
11  party to?
12  A    Yes, sir.
13  Q    And Sklarco has just as much an obligation to comply with
14  that agreement as any other working interest owner, doesn't it?
15  A    Yes.
16  Q    And there's no special carve out or favoritism to Sklarco
17  in any of the joint operating agreements, is there?
18  A    No, there's not.
19  Q    All right.  And I'm sure you're familiar with the
20  provisions of the joint operating agreement that require that a
21  party that does not pay its cash call advances timely is
22  subject to a 500 percent penalty, are you familiar with that?
23  A    Yes, I'm familiar with that.
24  Q    All right.  And is there any exemption for Sklarco for
25  that 500 percent penalty?

Sklar - Cross/Skelton                          34

1  A    There's not an exemption for Sklarco.

2  Q    Okay.  So how is it -- let's get back to the cash call

3  advances.  These were all in response to AFEs that were sent

4  out to the working interest owners, correct?

5           THE COURT:  Can you give a time frame?

6  Q    From November through March -- November, 2019 through

7  March of 2020, correct?

8  A    Yes, there are cash calls from November through March of

9  2020.

10 Q    Okay.  Now isn't it true that according to filings that

11 you've made in this case, that some $7 million of cash call

12 advances were not spent for the purposes intended?

13 A    That is not true.

14 Q    Well, then why would your lawyers file pleadings that

15 state that?

16 A    Sklarco pays its part of the bills when the work is

17 completed, and we had started work on all of the things that we

18 had cash calls.  So as the work came in, we paid -- we --

19 basically Sklarco owes its part.

20 Q    So you're -- you understand that as you sit here

21 testifying, even though you're in your office, you are under

22 oath, and the --

23 A    Yes, sir.

24 Q    -- words you state are being made under penalty of

25 perjury?

1  A    Yes, I understand that.

2  Q    All right.  And you're here testifying that Sklarco has

3  paid every single penny it owes for cash call advances.

4  A    No, I'm not saying that.

5  Q    Okay.

6  A    I am stating -- I'm not stating that we have paid -- we

7  have paid cash call advances.

8  Q    Okay.

9  A    I'm not stating that.

10 Q    All right.  So why is it that the other working interest

11 owners can't just wait until the project is actually being

12 done, and then pay their share?  Why did you dun them money in

13 advance but not yourself?

14 A    I'm not sure I understand the question.

15 Q    Well --

16 A    We -- we pay the bills.  Sklarco knows -- Sklar

17 Exploration knows that Sklarco will pay its share of the bills

18 as they come in.  Obviously there's no risk after a dry hole

19 that Sklarco is not going to pay Sklar Exploration.  Sklarco

20 has always paid its part of the bills.

21 Q    All right.

22 A    As they come in.

23 Q    Well --

24 A    That is the truth.

25 Q    Okay.  Well, again --

Sklar - Cross/Skelton                    36

1  A    Sklarco does not -- I'm sorry.

2  Q    Again, why is it then that there are -- your CFO yesterday

3  says that Sklarco owes SEC for unpaid joint interest billings.

4          MS. RILEY:  Objection, Your Honor.  I think that Mr.

5  (indiscernible - weak bandwidth).

6          THE COURT:  Ms. Riley, for some reason --

7          MR. SKELTON:  Can't hear her.

8          THE COURT:  Yeah --

9          UNIDENTIFIED ATTORNEY:  It's reverberating.

10         THE COURT:  Yeah.

11         MS. RILEY:  Objection.  The objection, Your Honor,

12  was that I believe that mischaracterizes the CFO's testimony.

13         THE COURT:  Why don't you rephrase it, Mr. Skelton?

14         MR. SKELTON:  Okay.

15  BY MR. SKELTON:

16  Q    Isn't it true that Sklarco has not paid -- let's see.

17         MR. SKELTON:  Strike that.  I'm just going to

18  approach it from a --

19         THE COURT:  Do you have any documents, Mr. Skelton,

20  that you want to offer in this regard?

21         MR. SKELTON:  Well, unfortunately the particular

22  document concerning cash call accounting, we did identify as a

23  witness and it did not -- excuse me -- as an exhibit, and it

24  did not -- I did not, frankly, realize that this particular

25  document demonstrates that Sklarco hadn't paid any of its cash