1            UNITED STATES BANKRUPTCY COURT
                 DISTRICT OF COLORADO
2

3   IN RE:                        .   Case No. 20-12377 EEB
                                  .            Chapter 11
4   SKLAR EXPLORATION COMPANY,    .
    LLC, and SKLARCO, LLC,        .   Case No. 20-12380 EEB
5                                 .            Chapter 11
         Debtors.                 .
6                                 .   Jointly Administered Under
    . . . . . . . . . . . . . . . .            20-12377 EEB
7

8

9

10    **TRANSCRIPT OF ZOOM HEARING ON: ADEQUACY OF DEBTOR'S AMENDED**
               **DISCLOSURE STATEMENT AND ANY OBJECTIONS THERETO**
11

12

13

14          BEFORE THE HONORABLE ELIZABETH E. BROWN
               UNITED STATES BANKRUPTCY JUDGE

15                THURSDAY, MARCH 18, 2021
                      DENVER, COLORADO
16

17

18

19

20

21

22

23
    TRANSCRIPT REQUESTED BY:      THOMAS H. SHIPPS, ESQ.
24  TRANSCRIPT ORDERED ON:        MARCH 24, 2021
    TRANSCRIPT DELIVERED ON:      MARCH 29, 2021
25  TRANSCRIPT PRICE:             $4.85 PER PAGE; $266.75

```
 1   APPEARANCES:

 2   For the Debtor:                Keri Riley
                                    James Katchadurian
 3
     United States Trustee:         Paul Moss
 4
     Creditors' Committee:          John Cornwell
 5                                  Grant Beiner

 6   East-West Bank:                Bryce Suzuki
                                    Stuart Bonomo
 7                                  Mary Lou Allen

 8   Anderson Exploration Energy    Eric Lockridge
     Co., TCP Cottonwood, L.P.,
 9   AEEC II, LLC, and Sugar Oil
     Properties:
10
     Fant Energy Ltd., JJS          Jennifer Hardy
11   Interests Escambia, LLC,
     JJS Interests Steele Kings,
12   LLC, JJS Working Interests,
     LLC:
13
     FPCC USA:                      Joseph Bain
14
     Franks Exploration Co.,        Jordan Bird
15   AEH Investments, J & A
     Harris Bundero Investment
16   Co., Kingston, Hughes Oil
     South, KMR Investments,
17   Tommy Youngblood:

18   Kudzu Oil Properties,          Craig Geno
     Alabama Oil Co. & Apple
19   River Investments, Alabama
     Oil & Gas, LLC:
20
     Ad Hoc Committee of Working    Timothy Swanson
21   Interest Owners:

22   Pruet Oil Company, LLC,        Jeremy Retherford
     Pruet Production Co.           Matt Ochs
23   (Individually and as agent):   Randy James
                                    Stan Kynerd
24                                  David Hilton

25   Fant Energy, Ltd:              Brent Cohen
```

```
 1   Appearances continued:

 2   Liquid Gold Well Service,    Chris Crowley
     Inc.:
 3
     McCombs Energy, McCombs      Steve Lecholop
 4   Exploration:

 5   JF Howell Interests, LP:     David R. Taggart

 6   Howard Sklar, Howard Sklar   Adam Hirsch
     Trust:
 7
     Strago Petroleum Corporation, Robert Paddock
 8   Meritage Energy Ltd.,        Louis Goza
     Gateway Exploration, Harvest
 9   Gas Management, G Crew
     Properties:
10
     Tauber Exploration &         Thomas Shipps
11   Production Co., CTM 2005,     Barnet Skelton, Jr.
     Ltd., I & L Miss I, LP,      Trey Sibley
12   Pickens Financial Group,     Wes Herndon
     LLC, MER Energy, Ltd., The
13   MR Trust, Tara Rudman
     Revocable Trust, Rudman
14   Family Trust, The Rudman
     Partnership, Feather River
15   75, LLC:

16
     Court Recorder:              Clerk's Office
17                                U.S. Bankruptcy Court
                                  721 19th Street
18                                Denver, CO  80202

19   Transcription Service:       AB Litigation Services
                                  216 16th Street, Suite 600
20                                Denver, CO  80202
                                  (303) 296-0017
21

22

23

24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.
```

```
 1                     (Time Noted:  2:54 p.m.)
 2              THE COURT:  Are we ready to call court at this
 3  point?
 4              THE COURT CLERK:  Your Honor, we have the court
 5  technology recording connected.
 6              THE COURT:  Okay.  Very good.
 7              THE COURT CLERK:  The United States --
 8              THE COURT:  Can I call -- go ahead.
 9              THE COURT CLERK:  Sorry.
10              The United States Bankruptcy Court for the
11  District of Colorado is now in session, the Honorable
12  Elizabeth E. Brown presiding.
13              THE COURT:  Good afternoon.  We are here in the
14  cases of Sklarco and Sklar Exploration Company, and they are
15  jointly administered under Case Number 20-12377.  And we are
16  here on the Debtor's proposed disclosure statement.
17              Let's go ahead and take appearances, and let's
18  start with our debtor.
19              MS. RILEY:  Good afternoon, Your Honor.  This is
20  Keri Riley appearing on behalf of the Debtor.
21              THE COURT:  Thank you.
22              MS. RILEY:  Also on the line today is James
23  Katchadurian, and I believe some representatives of the
24  Debtors, as well.
25              THE COURT:  Very good.  Thank you.
```

```
 1                    How about for the U.S. Trustee, is there anybody?
 2                    MR. MOSS:  Good afternoon, Your Honor.  Paul Moss
 3       on behalf of the U.S. Trustee.
 4                    THE COURT:  Thank you.
 5                    And how about our Committee?
 6                    MR. CORNWELL:  Good afternoon, Your Honor.  John
 7       Cornwell, and with me is my associate, Grant Beiner, on
 8       behalf of the Committee.
 9                    THE COURT:  Thank you.
10                    For the bank?  East-West Bank.
11                    MR. SUZUKI:  Thank you, Your Honor.  Bryce Suzuki
12       with the law firm Snell & Wilmer, LLP, on behalf of East-West
13       Bank.  Also on the line are bank representatives Stuart
14       Bonomo and Mary Lou Allen.
15                    THE COURT:  Thank you.
16                    MR. SUZUKI:  Thanks.
17                    THE COURT:  All right.  So let's, I don't how
18       we're going to do this, one at a time.  Let's start with our
19       unofficial committee --
20                    MR. SWANSON:  Sure.
21                    THE COURT:  -- working interest --
22                    MR. SWANSON:  Good afternoon, Your Honor.  Tim
23       Swanson on behalf of the Ad Hoc Committee of Working Interest
24       Owners.  Each of the members of our committee are identified
25       at Docket Number 721.
```

```
 1                   THE COURT:  Thank you.
 2                   Okay.  All right.  So let's have Mr. Cohen next.
 3                   MR. COHEN:  Good afternoon, Your Honor.  Brent
 4    Cohen appearing on behalf of Fant Energy.
 5                   THE COURT:  Thank you.
 6                   And Mr. Lecholop.
 7                   MR. LECHOLOP:  Good afternoon, Your Honor.  Steve
 8    Lechlop, good  --
 9                   THE COURT:  Leschlop.
10                   MR. LECHOLOP:  I always know when telemarketers
11    call, Your Honor.
12                   Appearing on behalf of McCombs Energy and McCombs
13    Exploration.
14                   THE COURT:  Thank you.
15                   Mr. Shipps.
16                   MR. SHIPPS:  Good afternoon, Your Honor.  I am
17    here along with Barney Skelton on behalf of the Rudman
18    Partnership, MER Energy Limited, CTM 2005 Limited, and I&L
19    Miss 1 LP.  And along with us today are also client
20    representatives Trey Sibley on behalf of the Rudman
21    Partnership and Wes Herndon on behalf of MER.
22                   THE COURT:  Thank you.
23                   Okay.  Mr. Geno.
24                   MR. GENO:  Good afternoon, Your Honor.  Craig Geno
25    on behalf of the Kudzu Oil Properties, Alabama Oil, and Apple
```

1   River Investments.

2             THE COURT:  Thank you.

3             Okay.  Mr. Bird.

4             MR. BIRD:  Good afternoon, Your Honor.  Jordan

5   Bird on behalf of the Franks Exploration Group.

6             THE COURT:  Thank you.

7             Mr. Aubrey.

8         (No audible response.)

9             THE COURT:  John Aubrey.  I see your kitchen and

10  this is --

11            MR. PADDOCK:  Your Honor, at this time -- excuse

12  me.  This is Robert Paddock on behalf of the Strago Group.

13  Mr. Aubrey is one of my client representatives --

14            THE COURT:  Okay.

15            MR. PADDOCK:  -- who is just away from his desk.

16  Also here today is the Luis Goza on behalf of our clients.

17            THE COURT:  Okay.  Very good.  Thank you.

18            Let's see, well, why don't you all jump in for the

19  rest of counsel.

20            MR. HIRSCH:  Good afternoon, Your Honor.  Adam

21  Hirsch for Howard Sklar and Howard Sklar Trust.

22            THE COURT:  Thank you.

23            MR. RETHERFORD:  Good afternoon, Your Honor.

24  Jeremy Retherford here for Pruett Production, both in the

25  individual capacity and as attorney in fact of agent for

```
 1   certain working interest owners.  And with me is co-counsel,

 2   Matt Ochs and client representatives Randy James, Stan

 3   Kynerd, and David Hilton.

 4              THE COURT:  Okay.  Thank you.

 5              Who else?

 6              MS. HARDY:  Good afternoon.

 7              MR. BAIN:  Good afternoon, Your Honor.

 8              THE COURT:  Let's go with Ms. Hardy first.

 9              MR. BAIN:  Sure.

10              MS. HARDY:  Good afternoon, Your Honor.  Jennifer

11   Hardy on behalf of the JJS Entities.

12              THE COURT:  Thank you.

13              MR. BAIN:  Good afternoon, Your Honor.  Joseph

14   Bain on behalf of FPCC USA, Inc.

15              THE COURT:  Thank you.

16              Next.

17              MR. CROWLEY:  Good afternoon, Your Honor.  Chris

18   Crowley here for Creditor Liquid Gold Well Services, Inc.

19              THE COURT:  Thank you.

20              MR. LOCKRIDGE:  Your Honor, Eric Lockridge here

21   for TCP Cottonwood LP, AEEC II LLC, Anderson Exploration

22   Energy Company LC, and Sugar Oil Properties LP.

23              THE COURT:  Thank you.

24              Next.

25          (No audible response.)
```

1          THE COURT:  Maybe I've heard from everybody?

2          MR. TAGGART:  Your Honor, David Taggart with

3   Bradley Murchison Kelly & Shay on behalf of JF Howell

4   Interests LP.

5          THE COURT:  Thank you.

6          Anybody else?

7       (No audible response.)

8          THE COURT:  No?  All right.

9          So, Ms. Riley, we're going to let you begin as the

10  Movant.  Well, it's your disclosure statement, I should say.

11         MS. RILEY:  Thank you, Your Honor.

12         And today, just to be clear, we are seeking

13  approval of the disclosure statement that is filed at Docket

14  Number 1101, and this is the amended disclosure statement to

15  accompany the amended and restated joint plan of

16  reorganization dated December 18th, 2020.  This particular

17  disclosure statement was filed on March 11th, 2021.

18         The disclosure statement as proposed, we believe,

19  does include sufficient information to allow creditors and

20  parties in interest in this case to make an informed decision

21  on the amended and restated plan that is at Docket Number

22  1080.  Specifically it includes sufficient information to

23  allow them to evaluate the financial consequences of either

24  exception -- excuse me, acceptance or rejection of the

25  proposed plan.

1          And just to provide Your Honor with additional
2   background regarding the plan.
3          Of course, as Your Honor is aware, initially when
4   a plan was proposed it did contemplate a reorganization of
5   both SEC and Sklarco.  Since the filing of that initial plan,
6   as a result of subsequent discussions between the parties and
7   the inability of SEC to reach agreements on some key issues,
8   it is no longer contemplated that under this amended and
9   restated plan that SEC will proceed with a reorganization.
10  Instead, it will proceed with a reorganization on a very
11  limited basis only to effectuate a structured wind down and a
12  smooth transition to a new operator on each of its, I think
13  approximately 60, operated properties here.
14         So that is what the current plan contemplates.
15         With respect to the adequacy of the disclosure
16  statement, we only have two objections that were filed, one
17  by the (unintelligible) parties, and the other by the Ad Hoc
18  Committee.
19         And, Your Honor, I'm happy to address the points
20  on those, or just briefly go over the overview of how we
21  believe that some of those issues are reserved really for a
22  confirmation hearing instead.
23         THE COURT:  Well, I'm happy to go ahead and hear
24  from our objectors first and then let you respond, if that's
25  what you're suggesting.

1           MS. RILEY:  Well, Your Honor, I think it makes

2    sense for the Debtor to sort of address the objections that

3    were filed.  Of course in determining whether or not this --

4    the disclosure statement does have adequate information here

5    it really needs to be evaluated in light of the complexity of

6    the case, and is required to include sufficient information

7    to provide an overview of the plan, but isn't required to

8    cover every single possibility or probability of what could

9    happen.  Instead, it just needs to, again, allow parties and

10   interests to be able to evaluate the financial consequences

11   here.

12          The objections that were filed really go beyond

13   what is necessary to have adequate information to evaluate

14   the Debtor's plan and, instead, go into issues that I think

15   do relate more to confirmation as opposed to adequacy of the

16   disclosure statement, and also really go into some of those

17   hypotheticals and possibilities of what would be required

18   instead.

19          By way of example, some of the information that

20   the Ad Hoc Committee is requesting relates to the proposed

21   transition schedule and resignation schedule that will be

22   filed as part of the plan's supplement to effectuate SEC's

23   wind down.  Additional information that the Ad Hoc Committee

24   asserts is required here is information related to what each

25   of the respective operating agreements, whether they be the

1   joint operating agreement on a well level, or a unit

2   operating agreement, require in terms of selection of a new

3   operator and the procedure that that would entail.

4           The fact of the matter is that there are, again,

5   60 properties, each one of which is governed by in some

6   instances a unit operating agreement, or in other instances a

7   joint operating agreement.  And while a lot of those

8   procedures are similar, there are differences in each.

9           To include information along those lines on a well

10  by well basis would make what is already a fairly lengthy

11  disclosure statement, that has to be understandable in order

12  to provide meaningful information to parties and interests

13  who will be evaluating this plan, frankly it's so over

14  burdensome with information that the details of the plan will

15  get lost in with everything else.

16          The fact of the matter is, it really is those

17  operating agreements that will dictate what the resignation

18  and transition looks like for the Debtor here.

19          The Debtor is still working to put together a

20  resignation and transition schedule, that of course would be

21  filed with a plan supplement, no later than 21 days prior to

22  a hearing on confirmation, but some of those issues related

23  to the resignation and transition still do need to be fully

24  fleshed out, do still need to be fully compiled and completed

25  so that we can ensure that there is an effective and orderly

1   transition to a new operator and we're not just putting the

2   Debtors into a situation where SEC winds down very quickly,

3   things aren't thought through all the way, then we could have

4   potentially negative consequences to Sklarco as a working

5   interest owner, as well as other working interest owners, as

6   well.

7          So again, we believe that that is really an issue

8   that relates to confirmation and that will be fully addressed

9   prior to confirmation, as well.

10         The Ad Hoc Committee further asserts that it is

11  necessary to provide additional information regarding some of

12  the regulatory processes, as well as additional information

13  regarding whether or not SEC's presently compliant with other

14  regulatory agencies requirements, as well.

15         The fact of the matter is, again, SEC is going to

16  be going through a wind down.  These are issues that aren't

17  really necessary for creditors and parties in interest to

18  fully evaluate the plan here.  Whether or not there are

19  claims from these additional regulatory agencies flowing from

20  the rejection of these contracts, or flowing after SEC begins

21  its wind down process, those would be claims against the

22  estate, they would flow into the creditor trust and receiver

23  interest as well.  They would be paid in accordance with

24  those interests, but the full disclosure and detailed

25  information regarding the entire regulatory history of SEC

1   just isn't required for creditors to understand the plan.

2          With respect to some of the other issues that have

3   been raised here, specifically as it relates to the

4   independent manager.  The Ad Hoc Committee does, of course,

5   request additional information regarding who the independent

6   manager is.  We believe that that is satisfied in the amended

7   disclosure statement at Docket Number 1101 already.

8   Previously, additional information regarding Mr. Walker's

9   qualifications were not included with the disclosure

10  statement, those have been included in the amended disclosure

11  statement and that issue is addressed.

12          To the extent that the parties are asserting that

13  Mr. Walker isn't the appropriate party to proceed as the

14  independent manager, that again becomes an issue for

15  confirmation of the plan and not for disclosures.  The

16  Debtors have complied with their obligations under the

17  Bankruptcy Code, they have identified those parties will be

18  appointed as the agents under the plan in order to effectuate

19  the terms of the plan and carry out those terms, and it

20  identifies that Mr. Walker will be acting as the independent

21  manager for the Debtors during this transitional wind down

22  period as to SEC and as to Sklarco going forward, and we

23  believe that that information is sufficient here.

24          Finally, with respect to some of the other

25  objections that are filed.  They also request additional

1    information regarding some of the potential -- or, excuse me,

2    the impact of potential litigation claims on this

3    reorganization process.  We don't know what specific

4    litigation claims they are referring to here, but what the

5    United States District Court for the District of Colorado

6    said in *Aspen Limousine Services* is that it's not necessary

7    to fully detail all of the potential litigation claims and

8    how those may impact a reorganization in order for a

9    disclosure statement to contain adequate information.

10           It all comes back to, again, the known claims at

11   the time, and, frankly, a lot of those claims have been

12   described in the amended disclosure statement and are being

13   reserved to the creditor trust, if they are claims belonging

14   to the Debtors.  And other claims that may be brought by

15   parties may just not be known at this time.

16           At this point, we again believe that with the 108

17   pages of detailed financial information there is sufficient

18   information for the parties to fully evaluate the financial

19   consequences of this plan and believe that the amended

20   disclosure statement can proceed and that the Debtors should

21   be able to proceed with solicitation of acceptances or

22   rejections of their plan of reorganization.

23           Thank you.

24           THE COURT:  Okay.  Thank you.

25           Let me hear from the official Creditors'

1  Committee, Mr. Cornwell.  Do you believe that the disclosure

2  statement contains adequate information?

3          MR. CORNWELL:  I do, Your Honor.

4          And if I could just make a brief statement for the

5  record?

6          This plan, and of course the disclosure statement

7  that accompanies it, really is the product of an

8  extraordinary amount of negotiations between all, or most, of

9  the parties.  Certainly since the mediation process that this

10  Court ordered as requested by the Committee, the bank, and

11  the Debtors, we have worked very hard on a form of plan that

12  gives everybody the maximum amount.  I can tell you, of

13  course Court only sees part of the negotiations in these

14  processes, everybody has left most of our calls being upset

15  which suggests to the Committee that we've got a -- we've got

16  a pretty reasonable deal here.

17          So with respect to the plan that's being presented

18  by the Debtor's, and Mr. Katchadurian of course, the

19  Committee is supporting of it, is working on a statement to

20  put into the solicitation package, we've got a two-page short

21  statement that will express just that.

22          And I personally thank the professionals in this

23  case, but the parties have disagreed a lot, and we will

24  continue to is my expectation through confirmation working

25  things out, but the professionals have worked very hard

1   together.  Mr. Hirsch for Howard Sklar, of course Mr. Suzuki

2   for the bank, Ms. Riley, Mr. Katchadurian, and so on and so

3   forth, frankly.

4            So to answer your question with too many words,

5   yes, Your Honor, the Committee believes the disclosure

6   statement has sufficient information for the creditors.

7            THE COURT:  Thank you.

8            MR. CORNWELL:  Yes, Your Honor.

9            THE COURT:  And the U.S. Trustee, Mr. Moss.

10           MR. MOSS:  Thank you, Your Honor.

11           The U.S. Trustee did not file an objection to the

12  disclosure statement.  We've reviewed it.  I understand

13  there's other parties who want more information.  From the

14  U.S. Trustee's point of view, there was sufficient

15  information for us to understand the plan, Your Honor.

16           THE COURT:  Thank you.

17           Okay.  Let me hear from our two objectors.  I'll

18  start with Mr. Swanson.

19           MR. SWANSON:  Thank you.  Good afternoon, Your

20  Honor.

21           A couple of things.  I would agree with Ms. Riley

22  this is a complex case, and due to its complexities there are

23  certain things I think that do need to be further fleshed

24  out.  It cannot be overstated that the Debtor's assets,

25  including the Broodlyn oil unit for which this, well,

1   unofficial committee is formed, are wasting assets by their

2   nature, and each passing day wasting further, especially when

3   there's not a next successor operator that is ready to go.

4          We need a quick and smooth transition to prevent

5   any further waste that has occurred over the last year.

6   (Unintelligible) from our view, the plan and disclosure

7   statement does not provide any visibility as to what the

8   transition looks like other than this resignation and

9   transition schedule be filed three weeks before confirmation.

10  There will be an independent manager who will effectuate that

11  transition schedule, and then it may take up to six months to

12  effectuate it.

13         From our perspective, we think it is most

14  appropriate at this juncture, given the Debtors have waived

15  the white flag, to now take a vote to start appointing

16  refining those successor operators for the Brooklyn oil unit,

17  which, by the way, is the Debtor's most non-valuable unit,

18  and frankly, for every other unit, and make those votes

19  conditional, Your Honor, upon confirmation of a plan.

20         Until there's a new operator it's hard to even

21  imagine what a transition looks like.  I think most parties

22  at this hearing understand who that next operator is going to

23  be for the Brooklyn oil unit.  And so, from our view, it's

24  imperative that we figure out who that is now and let them

25  get to work in advance of confirmation to take on a bunch of

1   due diligence, which I'm happy to walk the Court through as

2   to what a successor operator might look to, and it's no small

3   task.  And so from our perspective, it's let's move it

4   forward now, let's have that vote now and make it conditional

5   on confirmation of a plan.

6          Something as apparent as the SEC, the time is up,

7   and those who have the vested interests, the working interest

8   owners, which include Sklarco a co-debtor in this case, need

9   to get to work.  And, in fact, Your Honor has a mechanism

10  right now to authorize this vote to, at least with the

11  Brooklyn oil unit, to select that successor operator.

12         As the Court may recall, we filed a motion for

13  relief from stay to remove Sklar.  That motion was deferred.

14  Then in the minute order that the Court entered stated that

15  if there's no confirmation hearing by April 1 that the movant

16  may come back to Your Honor to request a further hearing.

17         It is the Ad Hoc Committee's position, like I've

18  said, we want to have that vote ASAP, and we would intend

19  coming back to Your Honor on April 1, to the extent that we

20  can figure out how to get the successor replaced immediately,

21  or in (unintelligible) immediately, to come back on an

22  expedited basis with evidence to show Your Honor that the

23  Brooklyn oil unit is wasting.  These assets don't replenish

24  oil, they take oil.

25         And so from our perspective, time really is of the

1   essence.  We want to see the transition occur.

2            THE COURT:  (Unintelligible) --

3            MR. SWANSON:  As set forth in our objection, this

4   plan is really more about the transition.  What does the

5   transition look like?  And we're at a lack of information on

6   that.  Our objection has a variety of different indicia of

7   information that we would like to see: the who, the what, the

8   when, the where, and the how.

9            THE COURT:  Mr. Swanson?

10           MR. SWANSON:  But the -- yes?

11           THE COURT:  I'm sorry.  Doesn't the -- each of

12   these properties have their own operating agreements that

13   specify how this procedure should work?

14           MR. SWANSON:  They do.  But I think the

15   (unintelligible) of the problem is is that to replace these

16   operators, or I guess to appoint the new operator, votes have

17   to start occurring.  And the suggestion that the Ad Hoc

18   Committee would make is that for each unit, understanding

19   they're all different, they're all subject to different

20   regulations, different reserves, working interest owners, et

21   cetera, the Debtor perhaps could set up data room for each

22   and put all of the information in these data rooms so that

23   the working interest owners, and probably more importantly

24   creditor successor operators going to be, to start reviewing

25   this stuff.

1          The Court may recall at the stay relief hearing

2      counsel for the Debtor said that fire -- or having that

3      successor operator officially be instilled is going to take

4      time even outside of bankruptcy.  And so, again, from our

5      perspective, is let's move quickly.  And we think there are

6      ways to start that process, making it all conditional upon

7      confirmation of the Debtor's plan.

8          And so, really, we see this as let's have a quick

9      transition, but one that makes sense and appeases those who

10     are going to be left here.  The Sklar Exploration is

11     essentially the one who left.

12             THE COURT:  Okay.

13             Kudzu.

14        (Brief pause)

15             THE COURT:  Mr. Geno, that would be you.

16             MR. GENO:  Good afternoon, Your Honor.  Please the

17     Court, Craig Geno for the Kudzu parties.  I'll try not to

18     repeat any of the argument Mr. Swanson made, although they

19     dovetailed into our issues, as well.

20          And the Court may recall that there are pending

21     motions to reject a significant number, maybe all of the

22     operating agreements, on Sklar Exploration, and they are

23     pending a number of motions to assume on behalf of Sklarco,

24     its executory contracts operating agreements, as well.

25             THE COURT:  What's the --

1                    MR. GENO:  We have filed --

2                    THE COURT:  What's the objection date on the

3    motions to reject?

4                    MR. GENO:  They -- it was yesterday, Your Honor.

5                    THE COURT:  Okay.  Did anybody, Ms. Riley, object

6    to the rejection of the contracts?

7                    MS. RILEY:  Yes, Your Honor.  We have two limited

8    objections that were filed.  One that was filed on behalf of

9    Pruett, and one that was filed -- well, say one, a joinder

10   was filed on behalf of the Ad Hoc Committee.

11                   MR. GENO:  And the Kudzu parties also filed an

12   objection, Your Honor, a limited objection, to the motion to

13   reject.

14                   THE COURT:  Well, you know, it's --

15                   MR. GENO:  I -- I --

16                   THE COURT:  -- interesting that there's objections

17   by these parties to the disclosure statement and objections

18   to the motions to reject when, really, you want this relief

19   that the Debtor is seeking in the motion, and you want it to

20   happen fast.  But then you're putting up these procedural

21   hurdles to that happening, and that seems very unwise to me.

22   Can you explain that to me, Mr. Geno?

23                   MR. GENO:  Yes, ma'am, I think I can.

24                   And in our objection to the motion to reject we

25   say just that.  We would like for them to be rejected at some

1    point, but this transition period between the time that we

2    are now and rejection of the leases and/or confirmation of

3    the plan, is going to be a beehive of activity.

4         For example, the replacement operator, or the

5    punitive replacement operator, is going to want to do some

6    significant due diligence in examining the contracts that are

7    to be rejected.  He, she, or it may very well say, well, wait

8    a minute, there's a significant contract, supply contract,

9    labor contract, something else out there, that I don't want

10   rejected.  It needs to be assumed and it needs to be assigned

11   so --

12        THE COURT:  Well, wait a second.

13        MR. GENO:  -- cut the party --

14        THE COURT:  We're talking not Sklarco here, we're

15   talking SEC.

16        MR. GENO:  Yes, ma'am.

17        THE COURT:  And if SEC is saying, okay, I'll give

18   you what you want, it won't be your operator anymore, then

19   the Debtor can't go forward, the SEC debtor can't go forward

20   under any of those tangential contracts.  And if the new

21   operator wants similar or different contracts, they'll have

22   to set that up.  So there would be no ability of this new

23   operator to assume, or cause the Debtor to assume, a

24   contract.

25        MR. GENO:  It could --

1              THE COURT:  They'll have --

2              MR. GENO:  I'm sorry, Your Honor, I didn't mean to

3    interrupt you.  I apologize.

4              THE COURT:  It's all right.  Go ahead.

5              MR. GENO:  Well, in every case like this I've

6    seen, Your Honor, that that gives the new replacement

7    operator some leverage to go to the Debtor and say, will you

8    assume, and to the third-party, will you let assumption

9    occur, rather than an outright rejection.

10             But that's really counted for the future.

11             What we want in the interim is something in the

12   disclosure statement, and in the rejection motion for that

13   matter as well, but they bleed over so much it's hard to

14   distinguish between the two, that allows the replacement

15   operator to be put in place and a vote to occur.  And Mr.

16   Swanson said so that the due diligence, the cooperation

17   between Sklar Exploration during the transition period, and

18   then the approval process.  As Mr. Swanson said, the Court

19   may recall, we argued on the stay motion, Debtor's

20   representatives said just approval of the replacement

21   operator and the various (unintelligible) on the gas boards

22   is a several month process.

23             So we really don't want to get to confirmation of

24   the plan --

25             THE COURT:  Okay.

1          MR. GENO:   -- and then have to do due diligence.

2          THE COURT:   Let me stop you for just a minute,

3  because as to both objectors, I understand your desire to get

4  the transition of the operator on these properties changed

5  over as quickly as possible.   I think the Debtor wants that,

6  as well, they filed their motions to reject.   And if we don't

7  have any dispute as to the rejection, then that process

8  should be able to start taking place.   We can stipulate to

9  relief from stay, unless somebody has a good reason why we

10  wouldn't do that, but -- so that that process that is

11  governed by the operating agreements themselves can start to

12  take place.

13          It shouldn't affect the Debtor's estate unless the

14  Debtor thinks that there is a sale.   And, Mr. Geno, you're

15  talking about potentially a new operator wanting to take some

16  existing contracts, and that would involve a sale of those

17  contracts.   But to set up a data room and to start, you know,

18  everybody kicking the tires of the new operator, the new

19  operator kicking the tires of these projects, that should be

20  able to start, unless we have to wait and have a contested

21  hearing on the motions to reject.   And, frankly, I don't see

22  any good reason for doing that.

23          MR. GENO:   Thank you, Your Honor.

24          THE COURT:   Ms. Riley, can you speak to that?   Is

25  the Debtor, as soon as the -- well, I guess the objection

 1   period has now run on these motions to reject.  Are you

 2   ready, then, to let people start the data room and everything

 3   to get the process underway?

 4           MS. RILEY:  Well, Your Honor, at this point we

 5   have sought to make the rejection motion, or the order

 6   approving the rejection, effective upon confirmation.  That

 7   way we can ensure that operations are at least maintained

 8   through confirmation and into an effective transition.

 9           There are some steps that need to be taken on our

10   end to ensure that we do have an effective transition here,

11   and not just on the two properties where a motion for relief

12   has been filed, because in addition to the Brooklyn units

13   there are 58 other properties that we have to be concerned

14   about, as well.

15           And frankly, there are a limited --

16           THE COURT:  Okay.  But couldn't the data room, to

17   the extent it doesn't already continue the materials that

18   these folks want to see, couldn't that process happen right

19   away, and potential operators sign a nondisclosure agreement

20   or whatever you want, and they start kicking the tires?

21   Couldn't that process begin?

22           MS. RILEY:  Well, Your Honor, potentially yes.

23   However, there becomes an issue with resources, as well.

24   There are only so many hands available, and there's only so

25   much attention that can go around within the 24 hours in a

1    day.  And, frankly, with all of the objections that have been

2    filed to the assumption motions, to the disclosure statement,

3    you know, really working forward into confirmation of a plan,

4    it becomes an issue of do we have the resources to set up and

5    maintain a data room and ensure that we're getting

6    confidentiality agreements from potential operators.

7            And really, on some of these properties we're not

8    -- we're not necessarily talking about a host of, you know,

9    30 different potential operators, we're looking at two, or in

10   some instances just one.  So it --

11           THE COURT:  Well, it doesn't have to be counsel,

12   because I know counsel's staff is limited.  It can be Mr.

13   Katchadurian, who's getting paid a hefty fee, or employees

14   that work for him.  So the loading up of the electronic data

15   room and just getting a simple nondisclosure signed, if

16   that's even necessary at this point, that shouldn't take much

17   time from counsel.

18           MS. RILEY:  Not from counsel, Your Honor.  But

19   frankly, within the company, as well.  Again, there are just

20   limited resources, even within the company's administrative

21   staff, to try to split the focus and focus on, you know,

22   providing information necessary to deal with the objections

23   and move forward into confirmation and come up with a

24   transition plan on all of these properties, as well.

25           We are fully prepared to cooperate and try to make

1   this as smooth as a transition as possible, but we are

2   fighting a lot of fights on a lot of different fronts, and so

3   there's only so much that we can -- so only so much that we

4   collectively can give attention to on any one of these issues

5   at this time.  And given that, again, we are focusing on 58

6   of these properties -- or, excuse me, 50 of these properties,

7   as opposed to just two, I think that it does need to be more

8   of a holistic package, as opposed to sort of these one up

9   deals --

10              THE COURT:  All right.  Well, I'm --

11              MS. RILEY:  -- (unintelligible) relief from stay.

12              THE COURT:  Thank you.

13              I'm going to ask Mr. Katchadurian to weigh in on

14  this.  Can your company provide that assistance to manage

15  this process?

16              MR. KATCHADURIAN:  Good afternoon, Your Honor.

17              We can certainly try.  I mean, we've really tried

18  to support the Debtor in every way we can outside of the

19  legal realm.  As much as possible, we will try to accommodate

20  everybody's requests and try to get data rooms set up, or

21  whatever we need to do.  You know, our goal here is really to

22  get a smooth transition to a new operator.  I think this is -

23  -

24              THE COURT:  And this would assist in that.  It has

25  to happen at some point --

1          MR. KATCHADURIAN:  Yeah, (unintelligible) --

2          THE COURT:  -- the question is you could handle it

3    now?  Your folks could?

4          MR. KATCHADURIAN:  We could certainly help, yes.

5          THE COURT:  Okay.  Good.  Because I think that

6    that serves everyone's interest to get that going now.  And

7    we can take out some of these what I think are unnecessary

8    levels of fighting in this case if we can get that process

9    underway.

10         MR. KATCHADURIAN:  I think that --

11         THE COURT:  So I think --

12         MR. KATCHADURIAN:  -- would be (unintelligible),

13   Your Honor.

14         THE COURT:  Okay.  Thank you.

15         I think Mr. Swanson and any of the individual

16   working interest owners ought to compile a list of what

17   documentation they think is not in the data room presently

18   that they think a new operator, or a potential new operator,

19   would want to see, and that can start happening right away.

20         MR. SWANSON:  Your Honor, absolutely.  And our

21   committee has endeavored to come up with a very detailed

22   list, which we can share but the Debtors, as to what the

23   hopeful replacement operator would want to evaluate.

24         And understanding there are the properties, but

25   let's not lose the forest through the trees.  The Brooklyn

1  unit, as Your Honor has heard throughout this case, is really

2  where the value is, and I think it behooves everyone, the

3  bank, Sklarco, all of the creditors, to really focus their

4  time and their effort on that.

5         And as Your Honor knows, we do have that stay

6  relief motion, and again, it is our goal to move quickly.

7  And so we would be appreciative of having the data, like Your

8  Honor has suggested, in the data room.  So whenever that vote

9  can occur, understanding the vote could be conditional on

10 confirmation, but once confirmation occurs then that

11 successor operator can hit the ground running and have, I

12 don't know, 45 days to review everything.

13        THE COURT:  Right.

14        MR. SWANSON:  So that way all parties can preserve

15 what value is there.

16        THE COURT:  Okay.  So I'm going to address what is

17 your underlying concern and order that the Debtor and the Ad

18 Hoc Committee and any individual working interest owners that

19 want to weigh in on it work together towards that end

20 starting now.  And I'm going to overrule the objections to

21 the motions to reject on that basis.

22        And I'm overruling the objections to the

23 disclosure statement, because this is not a disclosure issue.

24 There is adequate information in the disclosure statement

25 with which to determine whether the plan will be accepted or

 1  rejected.

 2          You know, at this point, with SEC saying that

 3  they're going to step aside and let new operator, or

 4  operators, come in, there should be no more fighting.  The

 5  operating agreements, I don't think those should be

 6  confirmation fights, the details of the operating agreements

 7  and how the transition occurs.  It is what it is in the legal

 8  documents, and you all can fight in a state court or a

 9  federal district court if you want to fight about that.

10          But what this debtor is doing is what you've all

11  kind of been hinting throughout this case you want, and that

12  is stepping away and saying, fine, I won't be your operator

13  anymore.  So any hurdles that you put to slowing down that

14  process does not serve your clients well.

15          So (unintelligible) --

16          MR. GENO:  Your Honor?

17          THE COURT:  -- rule that the disclosure statement

18  is adequate.

19          And, Kerstin -- or Ms. Cass, would you fill us in

20  on some the details of the timing of the next steps?

21          MR. GENO:  Your Honor, this correct Geno.  May I

22  inquire as to the next step?  The Court mentioned a

23  motionless stay that we had filed that's been deferred, Mr.

24  Swanson did, as well, and I think the Court used the word

25  "stipulation".  I wonder if that's going to occur or if we

1  need to try to take care of that today for a setting on that.

2  Because without an order lifting the automatic stay, the

3  process really does bog down and we can't get a vote.

4          MS. RILEY:  Your Honor, if I may?

5          THE COURT:  Yes.

6          MS. RILEY:  I believe that with some cooperative

7  discussions there is a path towards resolution on that motion

8  for relief from stay.  However, it is, I think, going to

9  require some cooperation on both parts here to make sure

10  that, again, we are not just going sort of willy-nilly into

11  any sort of resignation or transition process but we're doing

12  this in an orderly and effective manner.

13          THE COURT:  And I understand that, and I would

14  support you on that, Ms. Riley.

15          So working interest owners be aware that -- and I

16  will make this court available, every Thursday afternoon

17  we're able to open up slots for you if you run into, we

18  normally reserve it for discovery disputes, but that's

19  essentially what this would be at this point.  So you can get

20  a quick hearing in front of the Court to resolve those sorts

21  of issues.

22          MR. GENO:  Appreciate that, Your Honor, very much.

23          THE COURT:  Okay.

24          MR. RETHERFORD:  Your Honor, may I be heard on the

25  objection to the motion to reject?

1          THE COURT:  Mr. Retherford, yes.

2          MR. RETHERFORD:  Thank you, Your Honor.

3          Pruett's objection was not an objection to the

4   Debtor's ability to reject the contract, it was really as to

5   timing.  The motion to reject in the proposed order proposes

6   that the rejection occur on confirmation.  But as Your Honor

7   has heard already today, the plan also contemplates that the

8   procedure for replacing the operators begins at confirmation,

9   and (unintelligible) --

10          THE COURT:  And I'm saying that we're going to

11   make arrangements to do otherwise and get that process

12   started now.  The first thing is to get this data room built

13   up in a way that everybody thinks it needs to be.

14          And, you know, if we need to have a quick hearing

15   on relief from stay, I don't think we're going to need that.

16   I think Ms. Riley is going to look to you all to be

17   reasonable with her in terms of allowing for an orderly

18   process that involves all the properties and not just the

19   one.  Although, maybe most of the value is in one property at

20   this point.  Which it sounds to me like, you know, this is a

21   cooperative process.  And if that bogs down, then I will be

22   available to you to help us get back on the highway.

23          MR. GENO:  Thank you, Your Honor.

24          THE COURT:  So the rejection will occur now, as

25   far as I'm concerned.  But the automatic stay issue, you need

1    to work out the terms for how to do this in an orderly manner

2    as quickly as possible.  Okay?

3             MR. SUZUKI:  Your Honor, may I be heard briefly on

4    behalf of the bank?

5             THE COURT:  Yes, Mr. Suzuki.

6             MR. SUZUKI:  I'm pleased with the direction I

7    think that we're going.  I think the bank is very concerned

8    about timing.  And to that extent, I joked at the last

9    hearing that Mr. Skelton and I agreed for something -- on

10   something for the first time.  Mr. Swanson and I are agreeing

11   on something, and that is that we need to move this case

12   forward.  But we can't speak out the other sides of our mouth

13   and say, but we need more disclosure and we need more

14   hearings and we need more of everything else that is going to

15   slow that process down.

16             So from the bank's perspective, these contracts

17   can be rejected.  Rejection does not terminate the contract,

18   as Your Honor knows, and as the Supreme Court reminded us

19   recently in that 365N case, it just means that there is a

20   breach that is deemed to have occurred prior to the petition

21   date.  And the parties can continue to work forward

22   cooperatively, and the bank would like to see that process

23   started soon.

24             Moreover, Your Honor, just given the weight of the

25   professional fees in this case, we just can't keep going down

1   this road with these hearings.  We've got to put a tourniquet

2   on the professional fees and allow these debtors to emerge

3   out the other side.

4         So the other requests that I would make on behalf

5   of the bank at this point is to set confirmation on an

6   expedited basis, and said that hearing is promptly as we can,

7   preferably by mid-April so that we can be through

8   confirmation by the end of April at the latest and we can,

9   you know, take off down that road.  And I think if we make

10  progress in the meantime, that will be significant.  And I

11  think there's not much left to do in this case, as Your Honor

12  has noted.

13        So I would just urge the Court and the parties to

14  consider that and really expedite this through -- through

15  plan confirmation.

16        THE COURT:  Well, I hear you.  And my thoughts and

17  reaction is that, you know, we've got to remember that

18  Sklarco is not liquidating, essentially.  So it may have a

19  lot of issues that will be confirmation issues on that end of

20  things, and so we need to give time for the parties to get

21  their due process and get their objections in, and then we

22  hear them.  And so a shortened confirmation time track

23  doesn't make sense to me.

24        But to start this process of getting operators to

25  come in and look at the documents and start proposing whether

1  they want to be the operator on one or more of the

2  properties, that can happen as quickly as possible.  So that

3  should be where we spend our efforts, I think.

4          But I hear you.  There isn't a lot left in the

5  case in a lot of ways.  So we're not going to unduly delay

6  the confirmation process, but I'm not going to shorten the

7  track for that reason.

8          MR. SUZUKI:  Understand, Your Honor.

9          MS. RILEY:  Yeah, your --

10         THE COURT:  Okay.

11         MS. RILEY:  Your Honor, Keri Riley on behalf of

12  the Debtors.

13         There's just one issue that I can addressed with

14  respect to scheduling.

15         THE COURT:  Okay.

16         MS. RILEY:  So one of the issues that I think we

17  do need to address prior to confirmation is a number of the

18  objections that have been filed to the Sklarco motions to

19  assume, I think I lost count somewhere around 36 objections

20  on some of these motions.  Obviously those, I think, do need

21  to be addressed prior to confirmation so that we can ensure

22  that, you know, we're addressing things like feasibility and

23  things along those lines.

24         I don't know that I have a proposed schedule for

25  when we would like to have those heard, and also there is a

1   procedure with respect to having those motions heard.  Given

2   that they're all separate, if Your Honor would prefer for us

3   to file multiple contested certificates, or if we can have

4   them heard as part of one hearing, or how Your Honor would

5   like us to proceed there.

6           THE COURT:  I think to answer that question what

7   would help me is for you to create a chart that shows the

8   crossover in terms of the nature of the objections.  So if

9   everybody's objecting on the basis of cure issues, then

10  you'll check that column.  And if every -- and if some people

11  are objecting on some other grounds, adequate assurance or

12  future performance, whatever it might be, you know, just have

13  a column for that and specify.  And then I would like you to

14  put in whatever proposed suggestions you have for how we

15  schedule and address that.

16          One thing I won't do and that is actually approve

17  assumption unless it's in connection with confirmation.  In

18  other words, if I said, here are the cure amounts and the

19  time for cure and, et cetera, et cetera, and, but this is all

20  conditioned, the assumption is conditioned on confirmation.

21          MS. RILEY:  Certainly, Your Honor.

22          THE COURT:  Okay.  So file that whenever you get a

23  chance to, and we'll act on it.  We may setting other status

24  conference, we'll see.

25          MS. RILEY:  Certainly, Your Honor.  Thank you.

1          THE COURT:  Okay.

2          And how about since most of you that are still

3   participating in the case are here today, I'm going to

4   provide that there is a one-week objection period to her

5   proposal.  So whenever she files it, there will be one week

6   to object.

7          So, Ms. Riley, if you could recite that in the

8   notice?

9          MS. RILEY:  (Unintelligible).

10         MR. TAGGART:  Judge Brown?

11         THE COURT:  Yes, Mr. Taggart.

12         MR. TAGGART:  Yes, David Taggart, Bradley

13  Murchison on behalf of JF Howell.

14         I had a, really a question for Keri to clarify one

15  of the statements in the disclosure document, and it has to

16  do with -- I believe this is Page 23 of 108 of the disclosure

17  statement.  The question is:  Does SEC intend to reject not

18  only the JOA's, but also the unit participation agreements,

19  and the Alabama gas plant operating agreements?

20         MS. RILEY:  well, Your Honor, if I may?  Given

21  that SEC is winding down, I don't know how it could do

22  anything other than reject those agreements.  I mean, it

23  certainly can't remain in operation of the gas plant while

24  the rest of its operations are shut down.  It won't have

25  staff or employees or anybody operating the company.

1            So I think the short answer to that question is,

2     yes.  What ultimately that transition will look like, that

3     goes to the same issues as we have on these oil wells.  The

4     approval process for a new operator of the gas plants and

5     things along those lines is going to be different.  There are

6     some additional issues that need to be addressed with respect

7     to the gas plant.  But the end result is the same, which is

8     SEC is winding down, it's not going to continue to operate

9     anything anymore.

10            THE COURT:  So, and if I recall correctly, I can't

11    remember if it was the disclosure statement or the plan,

12    Sklarco has a presumption that everything is being assumed

13    unless it was specifically rejected, and then separate

14    motions to assume, whereas SEC has motions to reject and

15    there's a presumption that unless it's assumed it is any

16    other contract that might exist is rejected.

17            Do I have that correctly?

18            MS. RILEY:  That's correct, Your Honor.

19            THE COURT:  Okay.  So that --

20            MR. TAGGART:  And, Judge, I apologize, but the

21    statement in the disclosure statement, again maybe I just, I

22    missed it, but it says that Exhibit D contains the list of

23    contracts that will be rejected.  Is that not right?

24            THE COURT:  It has the catchall --

25            MR. TAGGART:  Okay.

1          THE COURT:  -- that anything not listed is going

2     to be rejected by SEC.

3          MR. TAGGART:  Okay.  That answers my questions as

4     to the gas plants.  Thank you, Judge.

5          THE COURT:  Fair enough.

6          Anything else?

7          MR. SKELTON:  Your Honor, Barnet Skelton.

8          I considered not speaking (unintelligible)

9     committee to create a historic precedent.  But one issue that

10    I think should be a matter to cause great concern for all

11    creditors in this case are any transactions between the

12    debtors and Howard Sklar or the trusts.  And there is a

13    reference on the same Page 23 of the disclosure statement

14    that says, "Included in the contracts to be assumed is the

15    agency services agreement between Debtors Howard Sklar, the

16    Howard Trust, (unintelligible) Trust," and so forth.

17         Then it says, "The parties contemplate amending

18    the agency services agreement prior to any conjunction of

19    assumption."

20         Now, there's two problems with that.  First, no

21    motion to assume has been filed, and both -- both SEC and

22    Sklarco are parties to that agreement.  And I find that very

23    problematic because the most recent iteration of this plan,

24    and I really took it -- took you at your word, you didn't

25    really want a bunch of disclosure objections, but the plan

1   pays money to the trusts before all creditors are paid in

2   full, that's a big problem with us.  But the idea that no

3   assumption motion has been filed, and where there's no

4   disclosure about what this amendment --

5           THE COURT:  Okay.  I think --

6           MR. SKELTON:  -- that's --

7           THE COURT:  I'm glad you spoke up, Mr. Skelton,

8   because I think that is something we need to address.

9           Ms. Riley?

10          MS. RILEY:  Yes, Your Honor.

11          So, really, when it comes to the agency services

12  agreement, that is a contract that is anticipated to be

13  assumed, at least as to Sklarco.  I think it will still be

14  rejected as to SEC, but again SEC won't be continuing to

15  operate.  But in further discussions it has become apparent

16  that amendments to that agency services agreement are

17  necessary prior to that agreement moving forward, in part

18  because, again, it is going to need to remove SEC from the

19  agreement.  And I think, frankly, the amendment would be a

20  good opportunity for additional clarification as to that

21  agreement, as well.

22          Of course creditors would still have an

23  opportunity to object, but the focus of this Court's prior

24  order, and our focus as well, was on filing those motions to

25  assume the operating agreement, which is what we did with our

1    numerous motions to assume.  So discussions are still ongoing

2    regarding that particular agency services agreement.

3              As to payments being made to the Howard Sklar

4    Trust, that really wasn't an agreement reached as between the

5    Howard Sklar Trust and the Committee in this case.  That was

6    a heavily negotiated provision that was incorporated into the

7    plan and disclosure statement here based on the agreement of

8    the parties.

9              THE COURT:  And may be a sticking point for

10   confirmation.

11             MS. RILEY:  Certainly, Your Honor.

12             THE COURT:  Okay.  So, but you will do a separate

13   motion.  Let's set a deadline for that, for this agency

14   agreement.  What can you live with?

15             MS. RILEY:  Well, Your Honor, I think some of that

16   may depend on when the confirmation hearing is set.  I think

17   my preference on it would be to ask for about a month to get

18   that completed, but I do recognize that everybody wants to

19   move this case forward.  I do just think that a month may be

20   helpful so that we can fully address any of the issues that

21   we need to in a motion.

22             THE COURT:  Mr. Skelton, anything --

23             MR. SKELTON:  (Unintelligible) the

24   (unintelligible) issues.

25             THE COURT:  It takes a month?

1          MR. SKELTON:  Yeah.  I mean, these issues, I mean,

2     Mr. Sklar has got counsel.  This is really -- and this

3     statement is just, I mean it is a fundamental issue.  Because

4     we don't want to have the Sklar Trust negotiating some kind

5     of deal that may in effect eviscerate creditor rights in one

6     way or the other.  It's got to be transparent and it's got to

7     be quick.  And in my opinion, I think two weeks is ample.

8          MR. HIRSCH:  Your Honor --

9          THE COURT:  All right.

10          MR. HIRSCH:  Oh, I'm sorry, Your Honor.  This is

11     Adam Hirsch.  If I could step in for a second --

12          THE COURT:  Certainly.  Yes.

13          MR. HIRSCH:   -- for the Trust?

14          I will confer the comments of the parties.  We

15     have been negotiating heavily on this.  You know, I think

16     that this particular issue, I don't know if this is the

17     appropriate hearing for that issue.  That said, I will

18     address my concerns.

19          It's always been our plan that if the service

20     agreement, it just doesn't work for the (unintelligible)

21     planning structure, so we're going to have to amend it.  It's

22     always been the intent that that would be presented to the

23     Court on (unintelligible) all parties, from our perspective

24     just nothing is being done underhandedly here.  So I just --

25     I just want to be clear that there is nothing here that we're

1    -- no one's hiding the ball or anything like that.

2          As far as Sklarco is concerned, Sklarco, it's been

3    our position, is a solvent entity.  The transactions that are

4    embodied in the plan are a compromise between the Committee,

5    which is really creditors at the SEC level, and the Howard

6    Sklar Trust, which is the equity holder of a solvent entity.

7          Obviously there may be some issues for

8    confirmation that we'll be addressing, and that's fine.  But

9    as far as this attorney is concerned, I don't -- I just don't

10   -- I don't want to get off the rails here.

11         THE COURT:  Well, if what I hear from everybody is

12   that it's not going to be assumed as is, so why isn't it just

13   rejected quickly?  And then if you enter into a new one, you

14   know, that's what -- I mean, I don't know.

15         Any thoughts on that, Mr. Skelton?

16         MR. SKELTON:  Well, that's a sticky wicket in

17   itself, because if this agreement is to be given any

18   credence, and I have very serious doubts about it, but

19   nonetheless, the trusts purport to be granting Sklarco and SE

20   -- Sklarco the right to hold legal title to the property.

21   And I certainly don't want anything to happen, like, for

22   instance, rejection, if they're thinking, huh, I won't get

23   out of this problem real quick, it'll all be ours.  I mean,

24   so that would almost require relief from the stay, it would

25   seem.

1        So I just think this is a very tricky issue right

2   here.

3        And frankly, another thing, I mean, I just hear

4   there's a compromising body to this disclosure statement

5   plan, there's no 9019 language, there's no indication of what

6   -- what the Committee considered.  None of the -- I mean, I

7   don't know --

8            THE COURT:  But that's --

9            MR. SKELTON:  -- what (unintelligible) --

10           THE COURT:  You can have a supplement as part of a

11  plan and not go through the 9019 process, you go through the

12  plan process.

13           MR. SKELTON:  No --

14           THE COURT:  It's just more robust.

15           MR. SKELTON:  Right.  I understand.  But they're

16  really in the disclosure, well, what did -- what did the

17  Committee give up?  There's certainly not any indication they

18  give anything up.  And the big issue here is, did they give

19  up, or did they purport to give up, substantive validation.

20  That's the big issue.  But I think that's -- that's enough.

21           THE COURT:  Well, I'm just debating whether that -

22  -- I'm going to retract what I said about adequate

23  information, because I can understand the concern about

24  knowing what this arrangement is going to be and having that

25  solidified for the creditors to vote.  But I --

1          MR. CORNWELL:  Your Honor, I'm happy to address
2   that, if it would be helpful.
3          THE COURT:  Yes, Mr. Cornwell.
4          MR. CORNWELL:  John Cornwell.  Thank you, Your
5   Honor.
6          So I don't think that there is much to disclose.
7   We are an SEC, UCC.  We have negotiated with all the parties,
8   and this last leg we've negotiated significantly with Mr.
9   Sklar and his trusts through Mr. Hirsch.  The plan embodies
10  that negotiation.  And there's just no question, we're all,
11  frankly, a little scared to say the words "substantive
12  consolidation" because we know what that means under the law.
13  But it's an elephant in the room and there's just no doubt
14  about that.
15         And the settlement that's embodied by the plan is
16  very simply the fact that the Committee supports confirmation
17  of this plan, and the consolidated distribution amongst the
18  creditors of both estates.  I don't think that anymore
19  disclosure is necessary, respectfully, for creditors to be
20  informed and to vote on the plan.  I don't think that the UCC
21  can give up a substantive consolidation fight if others won't
22  have it.
23         But to be very clear, because of all of the
24  negotiations that are embodying the plan, including the one
25  with Mr. Sklar and the trusts, the Committee right now has

1    voted to support the existing plan that's on file.

2            THE COURT:  Understood.  But I think if this

3    agency agreement is a key matter that it ought to be fully

4    disclosed.

5            MS. RILEY:  Your Honor?

6            THE COURT:  And it doesn't have to be the

7    disclosure statement, it could be a motion as to what you're

8    going to do with the terms of this agency agreement.

9            MS. RILEY:  And, Your Honor, I think that the

10   motion to assume that would be filed would do exactly that,

11   right?  File the motion on notice all creditors, and it would

12   include that information about what the agency service

13   agreement is.  I mean, I think, frankly, we may even need to

14   attach a copy of it, and would certainly describe what the

15   amendment is going to do, as well.  An amendment that would

16   likely, frankly, incorporate some of the terms of the plan,

17   assuming that everything is moving forward there.

18           So with that motion going out on notice to all

19   parties, that would satisfy any disclosure requirements there

20   so that it can -- so that everybody knows what's going on.

21   We'll of course have an opportunity to object at that point,

22   recognizing that some of those issues may bleed into some of

23   this confirmation issue, as well.

24           THE COURT:  Okay.  I'm going to split the baby on

25   the timing and give the Debtor until April the 5th to file

1   that motion.

2                MS. RILEY:  Certainly, Your Honor.

3                THE COURT:  Okay.

4                Okay.  What else?  Anything else?

5                Mr. Geno?  Oh, it just picked up you --

6                MR. GENO:  Oh, sorry.

7                THE COURT:  -- smacking your lips.

8                MR. GENO:  Yeah, (unintelligible).  Nothing

9   further from us, Your Honor.

10               THE COURT:  Okay.

11               All right.  Well, then, I want to thank you all.

12               MS. RILEY:  And, Your Honor?

13               THE COURT:  Yes?

14               MS. RILEY:  If I may?  If we could just sort of

15  address some of the dates related to a hearing on

16  confirmation and --

17               THE COURT:  Thank you.

18               MS. RILEY:  -- serving the plan?

19               THE COURT:  We've got to circle back to that.

20               MS. RILEY:  Yeah.

21               THE COURT:  Ms. Cass, can you now address that?

22               THE COURT CLERK:  I would think the first date to

23  pick would be the date by which Debtors contemplate they can

24  mail out the solicitation package, as stated.

25               THE COURT:  Okay.

1          MS. RILEY:  So we have been in contact with Epic

2    (phonetic), who of course is our claims and noticing agent,

3    with respect to the dates we need for that.  We are

4    contemplating having everything mailed and a certificate of

5    service filed on or before March 26th, so that would be one

6    week from Friday.

7          THE COURT:  Okay.  So given that, what's our next

8    step plan?

9          THE COURT CLERK:  So then at least 28 days after

10   that, we need to pick the deadline for people to submit

11   ballots and objections to the plan.

12         THE COURT:  So that would mean April 2nd, 9th,

13   16th --

14         THE COURT CLERK:  So 20 --

15         THE COURT:  -- and the 23rd?

16         THE COURT CLERK:  Yes.

17         THE COURT:  Okay.

18         THE COURT CLERK:  Unless you -- unless we want

19   additional time for mailing.

20         THE COURT:  Anybody think that's necessary?

21        (No audible response.)

22         THE COURT:  Nah.  Okay.  So April 23rd.

23         All right.  And then based on that, when's our

24   confirmation hearing?

25         THE COURT CLERK:  Well, that depends on what the

 1  parties want as far as allowing time for rejection assumption

 2  issues to get decided before the -- the confirmation hearing.

 3       THE COURT:  Yeah.  And I kind of would like to

 4  give a little bit of time for people to see what the

 5  confirmation issues are.

 6       What we normally do in most cases, although I'm

 7  flexible on this, is to have a non-evidentiary hearing on the

 8  confirmation date to, now we know the world of objections,

 9  and maybe we should bifurcate some of the issues and try

10  those first or, you know, whatever it might be.

11       So should we just do our normal time setting for

12  that non-evidentiary hearing, and then we'll figure out where

13  we go with both the contested motions, as well as the

14  confirmation objections?

15       (No audible response.)

16       THE COURT:  Should I let you all come up with a

17  plan and file it within a couple weeks?

18       MR. SUZUKI:  Your Honor, I'm going to maybe beat a

19  dead horse here, but from the bank's perspective I certainly

20  think there are cases where that kind of bifurcation to

21  consider the overarching issues and the legal issues first,

22  and then set an evidentiary hearing, are appropriate.  This

23  case is, I think it's very clear what the contested issues

24  may be, and frankly, I think they can be disposed of with

25  very little presentation of evidence.

1          So again, just given that the timing issues and to

2    try and put a tourniquet on the professional fee burn and

3    some of those other issues --

4          THE COURT:  Sure.

5          MR. SUZUKI:  -- the bank would certainly favor

6    having a single hearing, just setting it, people should be

7    ready to present their evidence.  I don't think they'll be

8    significant evidentiary issues, we don't have huge valuation

9    fights, we don't have expert witness issues --

10         THE COURT:  We may have fights about cure on

11   contracts.  So, you know, that's why I want to know if you

12   want to try those ahead of time or after the fact or, you

13   know, whatever.  I'm open to however it makes the most sense

14   to address the issues.

15         You may think that they're clear what they're

16   going to be, but I'm not certain that I am at this point,

17   because Sklarco is a very different creature than SEC so, at

18   this point.

19         MR. SUZUKI:  And the only cure objections that

20   I've seen, Your Honor, are under some theory that Sklarco has

21   to cover what is SEC's, and that just goes against the entire

22   structure of the plan and the compromise struck under the

23   plan.  And effectively, you have $24 million of bank claim,

24   20 some odd million dollars of general unsecured claims, you

25   have equity, the Debtors all behind it, and you have a

1  creditors with a couple hundred thousand dollars each,

2  roughly, of claim.  That's the tail wagging the dog here on

3  the theory that somehow Sklarco has to pay them in cash on

4  the effective date, or upon assumption, for SEC obligations.

5  Which, frankly, they could have had, but they chose not to do

6  that and now SEC is being liquidated.

7      So I just don't see significant issues there, but

8  I would be here to hear from Debtor's counsel to see if -- or

9  the Committee, to see if they disagree.

10      THE COURT:  Actually, I'm going to kind of cut

11  that off at this point.

12      I'm going to set a deadline of March 31 for some

13  form of joint report, or if you can't agree, then separate

14  reports, on how you think we should go forward with issues on

15  confirmation and on the various motions regarding the

16  executory contracts.  Okay?

17      MR. TAGGART:  Your Honor?

18      THE COURT:  Yes.

19      MR. TAGGART:  Oh, David Taggart, Bradley Murchison

20  on behalf of JF Howell.

21      One of the issues that you heard Ms. Riley say

22  that there was some dispute about, but that would come up at

23  plan confirmation, was the identity of the third party that

24  would be hired for the transition.  They have proposed Mr.

25  Walker, on behalf of my client, and I think maybe some of the

1    other working interest owners, we have requested an

2    opportunity to interview him to find out what sort of

3    experience he has on the ground and in the trenches and

4    operating oil and gas properties, and his resume doesn't give

5    us that information.  Is that --

6              THE COURT:  You can always --

7              MR. TAGGART:  -- something --

8              THE COURT:  -- file a 2004 exam request --

9              MR. TAGGART:  Okay.

10             THE COURT:  -- before this becomes a contested

11   matter.  So feel free to do that.

12             MR. TAGGART:  All right.  Thank you, Judge.

13             THE COURT:  Sure.  All right.

14             THE COURT CLERK:  Your Honor?

15             THE COURT:  Yes?

16             THE COURT CLERK:  The problem with putting off

17   setting the confirmation date is that the rule requires 28

18   days' notice of the confirmation hearing date, as well.  So

19   if we don't set that, and they mail out the notice as --

20             THE COURT:  Okay.

21             THE COURT CLERK:  -- part of the socialization

22   package, then --

23             THE COURT:  That's a good point.  Thank you.

24             I'm looking at my calendar.  So April 23rd is the

25   first step for objections.  And then what if we set the

1    initial confirmation hearing as May 28th?

2              UNIDENTIFIED MALE:  What time that day, Your

3    Honor?  I have some other hearings that morning, but the

4    afternoon looks okay.

5              THE COURT:  We could do 1:30.

6              UNIDENTIFIED MALE:  Thank you.

7              THE COURT:  Denver time.

8              UNIDENTIFIED MALE:  Thank you.

9              THE COURT:  Okay.

10             MS. RILEY:  That works for Debtors.

11             UNIDENTIFIED MALE:  That works for me, Judge.

12             THE COURT:  Excellent.  Okay

13             MS. RILEY:  That works for Debtor's counsel, Your

14   Honor.

15             THE COURT:  So that's what we'll set.

16             And if there -- if these reports that are due by

17   the end of the month are -- come in with a different way to

18   handle breaking up any litigation issues, we can always

19   rethink that.  But let's give people notice of that date and

20   we'll go from there.

21             Okay.  Anything else?  Last chance.

22        (No audible response.)

23             THE COURT:  Okay.  Thank you, all.  We'll stand in

24   recess.

25             UNIDENTIFIED MALE:  Thank you, Judge.

1          UNIDENTIFIED MALE:  Thank you, Your Honor.

2          MS. RILEY:  Thank you, Your Honor.

3          UNIDENTIFIED MALE:  Thank you, Your Honor.

4          THE COURT CLERK:  This court is now in recess.

5                (Time Noted:  4:00 p.m.)

6                     *  *  *  *  *

7                        CERTIFICATE

8     I, RANDEL RAISON, certify that the foregoing is a

9  correct transcript from the official electronic sound

10  recording of the proceedings in the above-entitled matter, to

11  the best of my ability.

12

13

14  _____          March 29, 2021

15  Randel Raison

16

17

18

19

20

21

22

23

24

25