UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: | ) |
| | ) Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC | ) |
| EIN: 72-1417930 | ) Chapter 11 |
| | ) |
|   Debtor. | ) |
| | ) |
| _____ | ) |
| | ) Case No. 20-12380-EEB |
| SKLARCO, LLC | ) |
| EIN: 72-1425432 | ) Chapter 11 |
|   Debtor. | ) |

**OBJECTION TO RUDMAN PARTNERSHIP'S APPLICATION FOR ADMINISTRATIVE EXPENSE PRIORITY CLAIM PURSUANT TO 11 U.S.C. § 503(b)**

The Debtors, Sklar Exploration Company, LLC ("SEC") and Sklarco, LLC ("Sklarco" and together, "Debtors"), by and through their attorneys, Kutner Brinen Dickey Riley, P.C., state their Objection to the Rudman Partnership's Application for Administrative Expense Priority Claim Pursuant to 11 U.S.C. § 503(b) (Docket No. 1148) ("Admin Claim Motion"), as follows:

**BACKGROUND**

1. The Debtors filed their respective voluntary petitions for relief pursuant to Chapter 11 of the Bankruptcy Code on April 1, 2020 ("Petition Date"). The Debtors remain Debtors-in-Possession.

2. SEC is engaged in business as an independent exploration and production company in the oil and gas industry. SEC is an operating company and does not own oil or gas properties. SEC has its principal business office in Boulder, Colorado and has additional offices in Shreveport, Louisiana and Brewton, Alabama. SEC's exploration and production activities are primarily located in East Texas, North Louisiana, South Mississippi, South Alabama and the Florida Panhandle. SEC is also developing properties and opportunities in the western United States, though no oil or gas is currently being produced from the wells in the western United States.

3. Sklarco is a Louisiana limited liability company engaged in business as the owner of certain oil and gas leases and property interests in East Texas, North Louisiana, South Mississippi, South Alabama, the Florida Panhandle, and the western United States.

1

4. While Sklarco is the owner of the oil and gas properties and SEC owns no properties, it is important to note that SEC is the operator of many of the wells and properties owned by Sklarco. The Sklarco wells and properties are either operated by SEC in large part or by third party unrelated operators. In each case, Sklarco must pay the operator for ongoing management and production.

5. As of the Petition Date, SEC was the operator of approximately 60 wells, and was in the process of developing several new prospects, including oil wells in Mississippi and Alabama, a helium well in Montana, and a pipeline in Florida to bring on a new discovery oil well.

6. In the ordinary course of business, SEC receives revenue from the sale of oil and gas products the month after the oil and gas was produced, and pays royalty interest owners, overriding royalty interest owners, and working interest owners ("WIOs") for their proportionate share of revenue the month thereafter. By way of example, SEC would receive revenue for oil and gas produced in January 2020 in February 2020, and would pay out revenue to the respective interest owners in March 2020. Funds received for revenue owed to all WIOs and other interest owners were deposited into SEC's revenue account, and paid out to the respective parties during the applicable revenue cycle.

7. The Rudman Partnership ("Rudman") holds a working interest in several of the properties operated by SEC including, without limitation, the Abbyville Gas Plant, in accordance with the respective Joint Operating Agreements ("JOAs") for those properties.

8. On the Petition Date, SEC does not dispute that Rudman was owed its revenue from January 2020, funds for which were received by SEC in February, following which a check was issued to Rudman, and revenue from February 2020, funds for which were received in March. At no point has Rudman identified those funds that it claims to have owned in SEC's bank account, nor sought declaratory judgment to do so.

9. Rudman now asserts that its pre-petition claim is entitled to administrative expense claim, ostensibly against both Debtors although not specified in the Motion, asserting that funds in which it held an interest were used post-petition for the benefit of the estate.

10. As set forth more fully herein, Rudman has not, and cannot, establish that any funds belonging to it were used in either of the Debtors' operations post-petition or that it has provided any benefit to either Debtors' estates, and therefore its request for an administrative expense claim must be denied.

**LEGAL ARGUMENT**

11. Pursuant to 11 U.S.C. § 503(b)(1)(A), a creditor may receive an allowed administrative expense claim for "the actual necessary costs and expenses of preserving the estate[.]"

12. A party seeking to assert an administrative expense claim bears of burden of proving: 1) that the expense arose out a transaction between the creditor and the debtor-in-possession; and 2) that it provided an actual benefit to the debtor-in-possession in the operation of the business. *In re Mid-Region Petroleum*, 1 F.3d 1130 (10th Cir. 1993) (citing *In re Amarex, Inc.*, 853 F.2d 1526, 1530 (10th Cir. 1988)).

13. In evaluating the first element, courts look to when the transaction at issue actually occurred. *Bachman v. Commercial Fin. Servs. (In re Commercial Fin. Servs.)*, 246 F.3d 1291, 1295 (10th Cir. 2001). "[T]he liability must arise post-petition; it is not enough that the right to payment arose after the debtor in possession assumed control." *Id.*

14. Courts must also evaluate whether the estate received an actual benefit from the transaction. "Potential benefit to the estate does not satisfy this requirement, nor does mere possession." *In re Native. Am. Sys.*, 368 B.R. 75, 79 (Bankr. D. Colo. 2006) (quoting *Mid-Region Petroleum*, 1 F.3d at 1133).

15. To the extent Rudman is asserting an administrative expense claim against Sklarco, Rudman has failed to establish either a transaction between Rudman and Sklarco on a post-petition basis, or a benefit to Sklarco. Accordingly, Rudman cannot establish that it is entitled to an administrative expense claim against Sklarco, and therefore to the extent it seeks to do so, its Motion must be denied.

16. To the extent Rudman is asserting an administrative expense claim against SEC, Rudman has similarly failed to establish that it is entitled to an administrative expense claim.

17. Rudman's argument assumes that SEC was in possession of funds belonging to Rudman on the Petition Date. Federal Rule of Bankruptcy Procedure 7001 defines the scope of Part VII, Adversary Proceedings, of the Federal Rules of Bankruptcy Procedure to include the issues which are summarized as follows: 1) a proceeding to recover money; 2) a proceeding to determine the validity, priority, or extent of a lien or other interest in property; and 3) a proceeding to obtain an injunction or other equitable relief. Rudman has had twelve months to bring an adversary proceeding to determine the ownership of funds held by SEC on the Petition Date, but

has consistently failed to do so. They cannot now attempt to circumvent the procedural requirements of Rule 7001 by seeking allowance of an administrative expense claim.

18. Even to the extent that this ownership of funds can be established by motion in lieu of an adversary proceeding, Rudman has nonetheless failed to actually establish that SEC was in fact holding any funds belonging to Rudman on the Petition Date, versus funds belonging to SEC, Sklarco, or other parties entitled to receive revenue.

19. Alabama Law does not provide WIOs with a real property interest in oil and gas. *In re Walter Energy, Inc.*, 2015 Bankr. LEXIS 4357, at *24-25 (Bankr. N.D. Ala. Dec. 28, 2015). Instead, WIOs in Alabama are considered personal property interests, and therefore convey a right to payment, not an ownership interest. *Id.* at *24-26. Rudman therefore cannot claim an ownership interest in the proceeds from the sale of oil and gas products.

20. In the alternative, to the extent Rudman seeks to assert a constructive trust on funds held by SEC on the Petition Date, this argument fails as well. A party seeking to impose a constructive trust on assets must trace the funds that it asserts are subject to such trust. *Lovett v. Homrich, Inc. (In re Philip Servs. Corp.)*, 359 B.R. 616, 627 (Bankr. S.D. Tex. 2006). Rudman has made no effort to trace funds held by SEC, nor any effort to have a determination made as to the ownership of funds through filing an adversary proceeding.

21. Absent establishing an ownership interest in the funds, Rudman cannot establish that any post-petition transaction with SEC in which it conveyed a benefit.

22. Indeed, the party receiving a benefit from post-petition was primarily Rudman and not SEC. Post-petition Rudman has received revenue after payment of joint interest billing obligations in the amount of $625,315.19 during a time when SEC has struggled to maintain cash flow to meet its ongoing obligations.

23. Accordingly, because Rudman has failed to establish that it owned any funds held by SEC on the Petition Date, Rudman has failed to establish a post-petition transaction or a benefit and Rudman is therefore not entitled to an administrative expense claim for its pre-petition unpaid revenue.

24. Nor can Rudman establish that it is entitled to an administrative expense claim for Gas Plant management fees held in suspense by SEC on a post-petition basis.

25. Pre-petition, in or around March 2020, SEC acquired the Abbyville Gas Plant ("Gas Plant"). The Gas Plant is operated in a manner similar to the oil wells, with SEC operating the

property and WIOs receiving revenue from the produced gas. To ensure that SEC could be reimbursed for the costs of operating the Gas Plant, SEC proposed an amendment to impose a management fee as to all WIOs.

26. A majority of the WIOs signed the amendment and therefore became bound by it and have paid the management fee through deductions to revenue. A minority, including Rudman, have refused to sign the amendment, instead apparently believing that SEC should provide the continued operation of the Gas Plant at a loss to SEC.

27. As a result, for those parties who refused to sign the amendment, including Rudman, SEC suspended a portion of the revenue that would otherwise be owed for the management fee, holding those funds in its revenue account, while paying out the remaining revenue owed to the applicable WIOs. As of March 2020, SEC is holding $132,782.56 in suspense in its revenue account which is attributed to the management fee for the Gas Plant.

28. Because the funds attributable to the management fee that would be owed by Rudman but for its refusal to sign the amendment have been held in suspense in the revenue account, SEC has derived no benefit from the funds. It has not used the funds for any purpose, instead holding the funds until issues related to the management fee are resolved.

29. Rudman cannot establish that SEC has derived a benefit from funds held in suspense, and therefore cannot assert an administrative expense claim for such amounts.

30. Accordingly, because Rudman has failed to establish a post-petition transaction with either Debtor, and has failed to establish that SEC derived any benefit from funds held in suspense, the Admin Claim Motion must be denied.

WHEREFORE, the Debtors pray the Court make and enter an Order denying the Rudman Partnership's Application for Administrative Expense Priority Claim and for such further and additional relief as to the Court may appear just and proper.

DATED: April 5, 2021

Respectfully submitted,

By: /s/ Keri L. Riley
Jeffrey S. Brinen, #20565
Keri L. Riley, #47605
**KUTNER BRINEN DICKEY RILEY, P.C.**
1660 Lincoln St., Suite 1720
Denver, CO 80264
Telephone: (303) 832-2400
E-Mail: klr@kutnerlaw.com