## Non-Disclosure Agreement

THIS NON-DISCLOSURE AGREEMENT (the "Agreement"), dated as of _____ ____, 2021, is between SKLAR EXPLORATION COMPANY L.L.C. (hereafter "SEC"), SKLARCO L.L.C. (hereinafter "Sklarco," and together with SEC sometimes collectively referred to as "Sklar"), and the undersigned party (hereafter "Receiving Party").

<u>W I T N E S S E T H</u>:

WHEREAS, on April 1, 2020, SEC and Sklarco commenced Chapter 11 cases when they filed their voluntary petitions under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. pending in the United States Bankruptcy Court for the District of Colorado (hereinafter the "Court"), Case Nos. 20-12377-EEB and 20-12380-EEB, respectively;

WHEREAS, on November 18, 2020, the *Ad Hoc* Committee filed its Motion to Modify the Automatic Stay to: (A) Hold a Meeting of the Working Interest Owners in the Brooklyn Oil Units; and (B) Take a Contractually Authorized Vote to Remove Debtor Sklar Exploration Company, LLC, as Operator, of the Southwest Brooklyn Oil Unit and the Southeast Brooklyn Oil Unit (collectively the "Brooklyn Units");

WHEREAS, on March 11, 2021, Sklar filed its Amended and Restated Joint Plan of Reorganization Dated December 18, 2020, and Amended Disclosure Statement to Accompany Amended and Restated Joint Plan of Reorganization Dated December 18, 2020;

WHEREAS, by its Omnibus Motion to Reject Joint Operating Agreements and Related Oil and Gas Contracts, SEC provided notice of its intention to reject certain executory contracts, including, but not limited to, certain Agreements pertaining to the Brooklyn Units;

WHEREAS, the Amended Plan and Amended Disclosure Statement provide that SEC shall resign as operator over all oil and gas properties in accordance with underlying agreements and applicable non-bankruptcy law;

WHEREAS, on March 18, 2021, the Court entered its Minute Order, which provided that "Debtors shall file a form of stipulation that provides relief from stay to creditors seeking to initiate the orderly transition of replacing Sklar Exploration Company as operator under rejected operating agreements. The stipulation should provide for the expedited creation of a data room in which the Debtors will place documents needed for the transition . . .";

WHEREAS, Sklar and the *Ad Hoc* Committee filed such a Stipulation on April 1, 2021 (the "Stipulation"), which, among other things, called for the creation of a virtual Data Room consisting of numerous documents and other information pertaining to the Brooklyn Units and provided that access to this Data Room would be given to potential

candidates to become successor operators of the Brooklyn Units, provided that such candidates and their representatives and consultants first entered into a Non-Disclosure Agreement; and

WHEREAS, Receiving Party, as part of that process, is being granted access to the Data Room and desires to enter into this Non-Disclosure Agreement in compliance with the terms of the Stipulation;

NOW, THEREFORE, for and in consideration of Receiving Party's being granted access to the Data Room, Receiving Party hereby agrees as follows:

1. This Agreement shall cover any documents or other information that are uploaded to the Data Room (the "Confidential Information"); provided, however, that the term Confidential Information shall not, however, include documents or information, if any, that: (i) are or become generally available to the public other than as a result of a disclosure by the Receiving Party or Receiving Party's representatives; (ii) are or become available to the Receiving Party or Receiving Party's representatives on a non-confidential basis from a source other than Sklar; provided that such source is not known by the Receiving Party to be bound by a confidentiality agreement or otherwise prohibited from transmitting the information *via* the Data Room; (iii) are within the Receiving Party's or Receiving Party's representatives' possession prior to their being furnished to the Receiving Party by or on behalf of Sklar; or (iv) that the Receiving Party is required to disclose pursuant to law, regulations, or a final order of a court of competent jurisdiction, provided that Sklar shall have been afforded a reasonable opportunity to limit such disclosure in accordance with applicable law.

2. Receiving Party will, and will cause its respective officers, directors, employees, agents, contractors, consultants, counsel and any other person who obtains through Receiving Party any part of the Confidential Information, to preserve the confidentiality of the Confidential Information, which means that (i) the Confidential Information or any facts related thereto will not be copied, reproduced, distributed or disclosed (whether orally or in writing) to any person, firm, entity or corporation, (ii) access to such Confidential Information or any facts related thereto will not be provided to any person, firm, or entity, and (iii) no use will be made of the Confidential Information or any facts related thereto for any reason or purpose other than to evaluate whether the Receiving Party, or the entity by which the Receiving Party is engaged, is interested in becoming the successor operator of one of the Brooklyn Units. Notwithstanding anything contained in this Section, each member of the *Ad Hoc* Committee shall be permitted to share Confidential Information with its advisors, attorneys, professionals, consultants and other members of the *Ad Hoc* Committee.

3. In the event that Receiving Party or any person who has received Confidential Information through Receiving Party is requested in any judicial or governmental proceeding to disclose any Confidential Information, Receiving Party will give Sklar prompt notice of such request so that Sklar may seek an appropriate protective order. If in the absence of a protective order, the Receiving Party is nonetheless advised

by counsel that disclosure of the Confidential Information is required by law, the Receiving Party may disclose such Confidential Information without liability hereunder.

4. Immediately upon the Receiving Party's decision not to seek election as successor operator of the Brooklyn Units, or having indicated an interest in seeking such an election, is advised that Receiving Party has not been so elected, the Receiving Party shall destroy all written material, memoranda, notes, copies, excerpts and other writings or recordings whatsoever either consisting of the Confidential Information, or any part thereof, or containing references to the Confidential Information, or any part thereof. Any Confidential Information that is not returned or destroyed, including without limitation, any oral Confidential Information, shall remain subject to the confidentiality obligations set forth in this Agreement. Notwithstanding anything contained in this Section, nothing herein shall limit any member of the *Ad Hoc* Committee from being a Receiving Party as expressly provided in Section 4 of the Stipulation.

5. This is the entire agreement between the parties with respect to the Confidential Information, as defined herein, and shall replace and supersede all prior oral and written agreements between the parties with respect to the subject matter of this Agreement.

6. To the extent any Receiving Party is elected successor operator of one of the Brooklyn Units, then this Agreement will expire upon Receiving Party's being approved as such successor operator by the State Oil and Gas Board of Alabama.

7. THIS AGREEMENT WILL BE INTERPRETED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF ALABAMA, WITHOUT APPLICATION OF ANY CONFLICT OF LAWS PROVISIONS, WHICH WOULD RESULT IN THE APPLICATION OF LAWS OF ANY OTHER JURISDICTION.

_____          _____

By: _____             By: _____

Name: _____                   Name: _____

Title: _____          Title: _____