UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC | ) | |
| EIN: 72-1417930 | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| | ) | Case No. 20-12380-EEB |
| SKLARCO, LLC | ) | |
| EIN: 72-1425432 | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

**SECOND AMENDED AND RESTATED JOINT PLAN OF REORGANIZATION
DATED DECEMBER 18, 2020**

**KUTNER BRINEN DICKEY RILEY, P.C.**
Jeffrey S. Brinen
Keri L. Riley
1660 Lincoln St., Suite 1720
Denver, CO  80264
Telephone:  303-832-2400
Email:  klr@kutnerlaw.com

Counsel to the Debtors
and Debtors-in-Possession

## TABLE OF CONTENTS

**ARTICLE I: RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS** ............................................................... **1**

*A.*     *Rules of Interpretation, Computation of Time and Governing Law* ............................ 1

*B.*     *Defined Terms* .................................................................................... 2

**ARTICLE II: DESIGNATION OF CLAIMS AND INTERESTS.** ................................... **10**

**ARTICLE III: SPECIFICATION AND TREATMENT OF UNCLASSIFIED PRIORITY CLAIMS.** ........................................................................................... **11**

*3.1*     *Administrative Expense Claims* ........................................................... *11*

*3.2*     *Professional Fee Claims* .................................................................... *12*

*3.3*     *Priority Tax Claims.* ......................................................................... *12*

*3.4*     *DIP Loan Claim.* .............................................................................. *13*

*3.5*     *U.S. Trustee Payments.* ..................................................................... *13*

**ARTICLE IV: SPECIFICATION AND TREATMENT OF CLASS 1 CLAIMS** ............... **13**

*4.1*     *Priority Wage Claims.* ...................................................................... *13*

**ARTICLE V: SPECIFICATION AND TREATMENT OF SPECURED CREDITOR CLAIMS** ................................................................................................ **13**

*5.1 -*     *Class 2 and A - East West Bank.* ......................................................... *13*

*5.2 -*     *Class 3 - Ford Motor Credit.* .............................................................. *15*

*5.3 -*     *Class 4 – Ally Bank.* ......................................................................... *15*

*5.4 -*     *Classes B.1 through B.7 – Mechanics and Materialmen Lien Claimants.* ............ *16*

**ARTICLE VI: SPECIFICATION AND TREATMENT OF UNSECURED CREDITOR CLAIMS** ................................................................................................ **16**

*6.1 -*     *Class 5 – Reserved.* .......................................................................... *16*

*6.2 -*     *Class 6 and Class C – General Unsecured Claims Against SEC and Sklarco.* .......... *16*

**ARTICLE VII: SPECIFICATION AND TREATMENT OF CLASS 7 AND CLASS D INTERESTS** ........................................................................................... **17**

*7.1 -*     *Class 7 – Interests in SEC.* ................................................................ *17*

*7.2 -*     *Class D – Interests in Sklarco.* ............................................................ *17*

**ARTICLE VIII: MEANS FOR IMPLEMENTATION** ............................................. **18**

*8.1 -*     *Continued Existence.* ........................................................................ *18*

*8.2 -*     *Operation of Business.* ...................................................................... *18*

*8.3 -*     *Management Fees and Costs.* .............................................................. *19*

*8.4 -*     *Establishment and Funding Of Creditor Trust.* ....................................... *19*

i

*8.5 -*    *Establishment of Reserve Fund*........................................................................ 21
*8.6 -*    *Appointment of Independent Manager*............................................................. 21
*8.7 -*    *Termination of Independent Manager.* ............................................................ 21
*8.8 -*    *Distributions Upon Occurrence of a Monetizing Event.* ................................ 21
*8.9 -*    *Liquidation and Wind Down of SEC* ................................................................ 22
*8.10 -*   *Conditions Precedent to the Effective Date of the Plan.* ............................... 22
*8.11 -*   *Effect of Failure of Conditions.* ..................................................................... 23
*8.12 -*   *Distributions to Allowed Claims.* .................................................................... 23
*8.13 -*   *Objections to and Resolution of Claims.* ......................................................... 24
*8.14 -*   *Establishment of Disputed Claim Reserves.* ................................................... 24
*8.15 -*   *Estimation.* ....................................................................................................... 25
*8.16 – Recoupment.*....................................................................................................... 25
*8.17 – Contractual Relationship and Default.* ................................................................ 26
**ARTICLE IX. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..................... 26**
*9.1 - Assumption and Rejection of Executory Contracts and Unexpired Leases by Sklarco.* .... 26
*9.2 - Assumption and Rejection of Executory Contracts and Unexpired Leases by SEC.* ........ 27
*9.3 - Cure.*.................................................................................................................... 27
*9.4 - Rejection Damage Claims.*..................................................................................... 27
*9.5 - Rights of Seismic Agreement Licensees Under 11 U.S.C. § 365(n) Preserved.*................ 28
**ARTICLE X: EFFECT OF CONFIRMATION OF THE PLAN. ........................................ 28**
*10.1 -*   *Binding Effect.*.................................................................................................. 28
*10.2 -*   *Vesting of Property.* ......................................................................................... 28
*10.3 -*   *Reinstatement and Continuation of Insurance Policies.*.................................. 28
*10.4 -*   *Discharge of Debtors.*...................................................................................... 29
*10.5 -*   *Exculpation* ...................................................................................................... 30
*10.6 -*   *Injunction.* ....................................................................................................... 31
*10.7 -*   *Preservation of Causes of Action.*.................................................................. 32
*10.8 -*   *Compromise and Settlement of Claims, Interests, and Controversies.*............. 32
**ARTICLE XI. MISCELLANEOUS PROVISIONS.............................................................. 32**
*11.1 -*   *Payment of Statutory Fees.* ............................................................................. 32
*11.2 -*   *Retention of Jurisdiction.* ................................................................................ 33
*11.3 -*   *Modification of the Plan.* ................................................................................. 33
   1.     Pre-Confirmation Modifications.................................................................... 33
   2.     Post-Confirmation Immaterial Modifications. .............................................. 33

ii

    3.    Post-Confirmation Material Modifications. ................................................................ 33

*11.4 -*  *Governing Law* .................................................................................................... 34

*11.5 -*  *Filing or Execution of Additional Documents.* ................................................ 34

*11.6 -*  *Exemption from Transfer Tax.* ......................................................................... 34

*11.7 -*  *Dissolution of Committee* .................................................................................. 34

*11.8 -*  *Waiver of Bankruptcy Rule 3020(e) and Federal Rule of Civil Procedure 62(a).* ..... 34

*11.9 -*  *Exhibits/Schedules.* ........................................................................................... 34

*11.10 -*  *Notices* .............................................................................................................. 35

*11.11 -*  *Vacatur of Confirmation Order.* ...................................................................... 36

**ARTICLE XII: REQUEST FOR CONFIRMATION** ............................................................ **36**

## INTRODUCTION

Sklar Exploration Company, LLC ("SEC") and Sklarco, LLC ("Sklarco"), as debtors and debtors-in-possession (collectively, the "Debtors"), hereby propose, pursuant to Chapter 11 of Title 11 of the United States Code, the following Joint Plan of Reorganization.

This Plan provides for the reorganization of the Sklarco and the limited reorganization of SEC solely for the purpose of winding down its operations and transitioning operatorship of oil and gas properties to a new duly appointed operator followed by a liquidation of assets. Pursuant to the Plan, Sklarco shall restructure its debts and obligations and continue to operate in the ordinary course of business. A more complete history of the Debtors, their operations, an explanation of this Plan, and a description of the Debtors' financial condition and future business activity is contained in the Disclosure Statement which accompanies this Plan. Reference should be made to the Disclosure Statement by all creditors and parties who intend to cast a ballot for or against this Plan.

## ARTICLE I

## RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS

### A.    *Rules of Interpretation, Computation of Time and Governing Law*

1.    For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neutral gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) unless otherwise stated, the words ''herein,'' "hereof" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.    The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

**B.**      *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.1 -   "Administrative Claim" means a Claim for payment of an administrative expense of a kind specified in section 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority under section 507(a)(2) of the Bankruptcy Code, including (a) actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Debtor's Estate and operating its business, including wages, salaries, or commissions for services rendered after the Petition Date, (b) Professional Fees, and (c) all fees and charges assessed against the Estate under chapter 123 of title 28, United States Code; *provided*, *however*, that post-Petition Date liabilities incurred or expenses arising in the ordinary course of the Debtor's business, including, but not limited to, trade vendor, employee wage and benefit, and state and local property, withholding, severance, sales, and use taxes shall not constitute Administrative Claims for which a proof of Administrative Claim shall be required to be filed.

1.2 -   "Administrative Claims Bar Date" means the deadline for filing Administrative Claims, including Professional Fee Claims, which date shall be set in the Confirmation Order.

1.3 -   "Allowed" means with respect to Claims: (a) any Claim, proof of which is timely filed by the applicable Claims Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court, a Proof of Claim is not or shall not be required to be filed); (b) any Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely filed; or (c) any Claim allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; provided that with respect to any Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed by a Final Order. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein and to the maximum extent provided by applicable law, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor, as applicable. For the avoidance of doubt, to the maximum extent provided by applicable law and except as provided herein or otherwise agreed, no Entity may File a Proof of Claim after the Claims Bar Date without further order of the Bankruptcy Court. "Allow" and "Allowing" shall have correlative meanings.
.

1.4 -   "Assets" means any and all of either SEC or Sklarco's real or personal property of any nature, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, claims, causes of action, any other general

intangibles of either Debtor, and the property of the Estate under section 541 of the Bankruptcy Code.

1.5 - "Assumed Contracts" means all executory contracts and unexpired leases assumed by the Debtors under section 365 of the Bankruptcy Code pursuant to an order of the Bankruptcy Court entered prior to or on the Effective Date.

1.6 - "Available Cash" means net revenue owned by Sklarco and SEC, determined in arrears on a quarterly basis, whether maintained in accounts owned by Sklarco or SEC, after (1) payment of expenses including payment of joint interest billing obligations to third party operators, (2) contribution(s) to the Reserve Fund in accordance with the budgets prepared by the Reorganized Debtors, and (3)(a) prior to a Monetizing Event, payment of interest on account of the EWB Secured Claim; or (b) after a Monetizing Event resulting in a refinance of the EWB Secured Claim, payment of any required debt service payments required for a new loan, provided however that in no event shall the Available Cash remaining after a Monetization Event be reduced to an amount less than the amount of Available Cash immediately preceding the refinance.

1.7 - "Avoidance Actions" means the Debtors' causes of action for any avoidance or recovery action under sections 502, 506, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, 553 and 724(a) of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfers, whether or not litigation has been commenced with respect to such causes of action as of the Effective Date.

1.8 - "Bankruptcy Code" means title 11 of the United States Code, as in effect on the Petition Date, together with all amendments, modifications, and replacements of the foregoing, to the extent such amendments, modifications, or replacements are applicable to the Chapter 11 Cases.

1.9 - "Bankruptcy Court" means the United States Bankruptcy Court for the District of Colorado, or such other court as may properly exercise jurisdiction over the Chapter 11 Cases.

1.10 - "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of title 28 of the United States Code and the Official Bankruptcy Forms, the Federal Rules of Civil Procedure, as applicable to the Chapter 11 Cases or proceedings therein, and the Local Rules of the Bankruptcy Court, all as now in effect or hereafter amended, and as applicable to the Chapter 11 Cases.

1.11 - "Business Day" means any day, excluding Saturdays, Sundays or "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in Denver, Colorado.

1.12 - "Cash" means cash and cash equivalents, including, without limitation, wire transfers, bank deposits, checks and legal tender of the United States.

1.13 - "Causes of Action" means any and all of the Estates' and the Debtors' actions, Claims, demands, rights, defenses, counterclaims, suits, causes of action, liabilities, obligations, debts, judgments, remedies, damages, recoupments, cross claims, counterclaims, third-party claims, indemnity claims, contribution claims, and any other claim, whether known or unknown,

foreseen or unforeseen, direct or indirect, derivative, choate or inchoate, in law, equity, or otherwise, including all Avoidance Actions, and any and all other claims or rights of any value whatsoever, at law or in equity, against any Creditor or other third party, including any and all claims against any Insiders, members, officers, directors, managers or employees of the Debtors; *provided*, *however*, that, when used in the Plan, the term "Causes of Action" does not include any Claim, obligation, suit, judgment, damages, right, remedy, cause of action, charge, cost, debt, indebtedness, or liabilities released or waived pursuant to Paragraph 10.5 of the Plan or by order of the Bankruptcy Court, nor does the term "Causes of Action" include any appeals pending under applicable State Law for the refund of severance taxes; *provided further however,* that the term "Causes of Action" does not include the Debtors or Reorganized Debtors rights of recoupment to collect unpaid joint interest billing obligations from Revenue Parties, if any.  When used in the Plan, the term "Causes of Action" shall also specifically include any claim, demand, right, and cause of action that may only be asserted by a Person other than the Debtor (including the Holder of a Claim or Interest) on a derivative or other basis.  A Cause of Action shall not under any circumstances be waived as a result of the failure of the Debtors to describe such Cause of Action with specificity in the Plan.  Except as expressly provided herein, nothing in the Plan operates as a release of any of the Causes of Action.

1.14 -   "Chapter 11 Cases" means, together, the Debtors' Chapter 11 cases, pending in the Bankruptcy Court under Case Nos. 20-12377-EEB and 20-12380-EEB, jointly administered under Case No. 20-12377-EEB.

1.15 -   "Claim" means a "claim" against either Debtor, as defined in section 101(5) of the Bankruptcy Code and as supplemented by section 102(2) of the Bankruptcy Code, whether or not asserted, or reduced to judgment, whether known or unknown, liquidated or unliquidated, fixed, contingent, non-contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, whether arising before, on, or after the Petition Date.

1.16 -   "Claims Agent" means Epiq Corporate Restructuring, LLC or such successor claims agent as may be employed by the Debtors with approval of the Bankruptcy Court.

1.17 -   "Claims Bar Date" means, September 28, 2020 or such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court to File such Claims.

1.18 -   "Claims Objection Bar Date" means, for each Claim, the later of (a) 120 Days after the Effective Date of the Plan and (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to such Claims.

1.19 -   "Class" means one of the classes of Claims or Interests listed in Article II of this Plan.

1.20 -   "Collateral" means any property or interest in property of either Debtor's Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or other applicable law.

1.21 - "Committee" means the Official Committee of Unsecured Creditors as set forth in the *United States Trustee's Amended Appointment of Official Committee of Unsecured Creditors* (Docket No. 713), as amended from time to time.

1.22 - "Confirmation" means the entry of the Confirmation Order by the Bankruptcy Court.

1.23 - "Confirmation Date" means the date that the Bankruptcy Court enters a Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

1.24 - "Confirmation Hearing" means the hearing held by the Bankruptcy Court to consider confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.25 - "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code.

1.26 - "Creditor" means a creditor, within the meaning of section 101(10) of the Bankruptcy Code, of either of the Debtors.

1.27 - "Creditor Trust" means that certain trust created pursuant to the Creditor Trust Agreement as described more fully in Section 8.4.

1.28 - "Creditor Trust Agreement" means the agreement for the formation of the Creditor Trust, filed with the Plan Supplement, which shall be in the form and substance reasonably acceptable to the Debtors, Committee, and East West Bank.

1.29 - "Creditor Trust Allocation" means, beginning on the Effective Date, (a) until a Monetizing Event, 9% of the Available Cash; and (b) after a Monetizing Event, (i) until and the Creditor Trust has received $3 million toward the Creditor Trust Payment Obligation in excess of any distributions it may be entitled to receive under Section 8.8(b) below, 80% of Post-Monetization Proceeds; and (ii) after the Creditor Trust has received $3 million toward the Creditor Trust Payment Obligation in excess of any distributions it may be entitled to receive under Section 8.8(b) below, 66.7% of Post-Monetization Proceeds.

1.30 - "Creditor Trust Payment Obligation" means the joint and several obligation of the Reorganized Debtors to make one or more payments the Creditor Trust in the total amount of $22,000,000.

1.31 - "Creditor Trustee" means the duly appointed trustee of the Creditor Trust.

1.32 - "Debtors" means the Debtors who are proposing this Plan, SEC and Sklarco.

1.33 - "Disallowed Claim" means a Claim, or any portion thereof, that (a) has been disallowed by a Final Order, or (b) is not Scheduled or is Scheduled at zero or as contingent, disputed, or unliquidated and as to which a bar date has been established but no proof of claim has been filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy

Code or any Final Order of the Bankruptcy Court, or otherwise deemed timely filed under applicable law.

1.34 - "Disputed Claim" means a Claim, or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, including, but not limited to, Claims (a) (i) that have not been Scheduled by either Debtor, but as to which a timely proof of claim has been filed or (ii) have been Scheduled at zero or as contingent, unliquidated, or disputed, but as to which a timely proof of claim in a liquidated amount has been filed and (b) as to which either Debtor, either Reorganized Debtor, or any other party-in-interest has interposed a timely objection or request for estimation, or has sought to subordinate or otherwise limit recovery, in accordance with the Bankruptcy Code and the Bankruptcy Rules, or which is otherwise disputed by either Debtor, either Reorganized Debtor, or other party-in-interest in accordance with applicable law, which objection, request for estimation, action to limit recovery, or dispute has not been withdrawn or determined by a Final Order.  In the event that any part of a Claim is disputed, such Claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of distributions under this Plan unless and until a Final Order has been entered allowing such Claim.

1.35 - "Disputed Claim Reserve" means the reserve established and maintained by the Creditor Trust in accordance with Paragraph 8.14 of the Plan.

1.36 - "Distributions" means the properties or interests in property to be paid or distributed under this Plan to the holders of Allowed Claims.

1.37 - "Effective Date" means the date that all conditions to consummation of this Plan set forth in Paragraph 8.10.

1.38 - "Entity" means an "entity" as defined in section 101(15) of the Bankruptcy Code.

1.39 - "Estates" means the estates of the Debtors created by section 541 of the Bankruptcy Code on the Petition Date.

1.40 - "EWB" means East West Bank, a California state banking corporation.

1.41 - "EWB Loan and Security Documents" has the meaning set forth in the EWB Proof of Claim.

1.42 - "EWB Proof of Claim" means the proofs of claim filed on account of the EWB Secured Claim in the respective claims registers of the Debtors, as Claim No. 90, in the Sklarco Chapter 11 Case and as Claim No. 56 in the SEC Chapter 11 Case .

1.43 - "EWB Secured Claim" means the Allowed Secured Claim of EWB in the amount of $24,000,000.00.

1.44 - "Exculpated Party" means SEC, Sklarco, CR3, the Committee, and their respective officers, directors, employees, partners, advisors, attorneys, financial advisors, accountants, and other professionals.

6

1.45 - "Executory Contract" means every unexpired Joint Operating Agreement, unexpired Lease, and every other contract that is subject to being assumed or rejected by the Debtor under 11 U.S.C. § 365, pursuant to the Plan or pursuant to a separate motion.

1.46 - "Final Cash Collateral Order" means the *Final Order Authorizing Use Of Cash Collateral, Granting Adequate Protection, And Providing Related Relief* entered by the Bankruptcy Court on June 15, 2020, in the jointly administered Chapter 11 Cases at docket no. 433.

1.47 - "Final Decree" means the decree or other order of the Bankruptcy Court closing the Chapter 11 Case, as contemplated by section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022.

1.48 - "Final Order" means an order, ruling, or judgment of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for reargument or rehearing shall then be pending, or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived, or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court of other court of competent jurisdiction shall have been determined by the highest court to which such order was appealed, or certiorari, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; *provided, however,* that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous Bankruptcy Rule or applicable state court rules of civil procedure, may be filed with respect to such order shall not cause such order not to be a Final Order.

1.49 - "General Unsecured Claim" means any Claim that is not (a) entitled to priority under section 507(a) of the Bankruptcy Code or subordinated pursuant to section 510(b) of the Bankruptcy Code, or (b) a Secured Claim, Priority Tax Claim, or Other Priority Claim.

1.50 - "Howard Trust" means the Howard F. Sklar Inter Vivos Trust.

1.51 - "Howard Sklar Trust Allocation" means beginning on the Effective Date, (a) until a Monetizing Event, 1% of the Available Cash; and (b) after a Monetizing Event, (i) until and the Creditor Trust has received $3 million toward the Creditor Trust Payment Obligation in excess of any distributions it may be entitled to receive under Section 8.8(b) below, 20% of Post-Monetization Proceeds; and (ii) after the Creditor Trust has received $3 million toward the Creditor Trust Payment Obligation in excess of any distributions it may be entitled to receive under Section 8.8(b) below, 33.3% of Post-Monetization Proceeds.

1.52 - "Holder" means an Entity holding a Claim or Interest (as the case may be), and with respect to a Distribution under the Plan, an Entity holding the beneficial interest in a Claim or Interest as of the Distribution Date

1.53 - "Impaired" means, when used with reference to a Claim or Interest, a Claim or Interest (as the case may be) that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.54 -  "Independent Manager" shall mean the person(s) selected to manage the day-to-day affairs of the Debtors as set forth in Paragraph 8.6.

1.55 -  "Insider" means (i) an "insider," as defined in Section 101(31) of the Bankruptcy Code, and (ii) an "affiliate," as defined in Section 101(2) of the Bankruptcy Code.

1.56 -  "Interest" shall mean any member interest, preferred, common, or otherwise, or any other instrument evidencing any ownership interest in the Debtors and any option, warrant or right of any nature, contractual or otherwise, to acquire an ownership interest in the Debtors.

1.57 -  "JIB Obligation" means the amount owed to SEC by certain working interest holders for unpaid joint interest billings issued by SEC on the Effective Date of the Plan.

1.58 -  "Joint Operating Agreement" or "Unit Operating Agreement" or "JOA" means those agreements by and between SEC and various Working Interest Holders concerning management, ownership, and control of each operational or other well or property, as amended from time to time.

1.59 -  "JOA Cure Claim" means the Allowed Claim held by a creditor asserting a claim for an uncured monetary default under the applicable JOA, or such other amount as set by the Bankruptcy Court, for those JOAs assumed by Sklarco prior to or at confirmation of the Plan, if any.

1.60 -  "Lease" means any lease agreement between either Debtor and another Entity.

1.61 -  "Lien" means any charge against or interest in property to secure payment or performance of a claim, debt, or obligation.

1.62 -  "Monetizing Event" means the occurrence of a refinancing of the EWB Secured Claim, a sale by the Reorganized Debtors of all or substantially all of their respective assets, or a sale following a foreclosure on collateral securing the EWB Secured Claim.

1.63 -   "NSAI Reserve Report" means *Estimates of Reserves and Future Revenues to the Combined Interests of Sklar Exploration Company and Sklarco, LLC in Certain Oil and Gas Properties Located in the United States as of September 1, 2020*, by Netherland, Sewell & Associates, Inc.

1.64 -  "Other Priority Claim" means a Claim entitled to priority under section 507(a) of the Bankruptcy Code, other than an Administrative Claim, a Priority Wage Claim, or a Priority Tax Claim.

1.65 -  "Person" means a "person" as defined in section 101(41) of the Bankruptcy Code.

1.66 -  "Petition Date" means April 1, 2020, the date on which the Debtors filed their voluntary petitions commencing the Chapter 11 Cases.

1.67 -  "Plan" means this joint plan under Chapter 11 of the Bankruptcy Code, together with all exhibits and schedules hereto, as it has been or may be amended, modified, or

supplemented from time to time in accordance with section 1127 of the Bankruptcy Code, including the Plan Supplement.

1.68 -   "Plan Supplement" means the supplement containing substantially final forms of the Plan Supplement Documents to be filed with the Clerk of the Bankruptcy Court no later than twenty-one (21) days prior to the Confirmation Hearing.

1.69 -   "Plan Supplement Documents" means the documents and information as the Debtors determine to be necessary or appropriate to the implementation and/or confirmation of the Plan, including but not limited to any necessary escrow agreements, contractual agreements for the Independent Manager, the Resignation and Transition Schedule and the Creditor Trust Agreement.

1.70 -   "Post-Monetization Proceeds" means (i) all Available Cash in the event of a refinancing of the EWB Secured Claim; or (ii) in the event of a sale by the Reorganized Debtors of all or substantially all of their respective assets or a sale following a foreclosure on collateral securing the EWB Secured Claim, all proceeds of such sale following the payments set forth in Section 8.8(a) and (b).

1.71 -   "Priority Tax Claim" means a Claim that is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

1.72 -   "Priority Wage Claim" means a Claim that is entitled to priority under Section 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

1.73 -   "Professional" means any professional employed in the Chapter 11 Cases pursuant to section 327 of the Bankruptcy Code or otherwise, and the professionals seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

1.74 -   "Professional Fee Claim" means a Claim of a Professional for compensation for services rendered, and/or reimbursement of costs and expenses incurred, after the Petition Date and prior to and including the Confirmation Date.

1.75 -   "Proof of Claim" means a proof of claim pursuant to section 501 of the Bankruptcy Code and/or any order of the Bankruptcy Court, together with supporting documents.

1.76 -   "Reorganized SEC, Reorganized Sklarco, or Reorganized Debtors" means the respective Debtors, or collectively the Debtors, as reorganized pursuant to and under the Plan on or after the Effective Date.

1.77 -   "Reserve Fund" mean a segregated account established by and for the benefit of the Debtors to be used in consultation with EWB for unbudgeted expenditures such as unanticipated maintenance expenses, repairs for major weather events, and other unbudgeted expenditures.

1.78 -   "Resignation and Transition Schedule" shall mean the schedule prepared by SEC to effectuate an orderly resignation from operatorship of the operated oil and gas properties in

9

accordance with the applicable JOAs and State and Federal Law, to transition operations to a new, duly appointed operator, and to complete a final wind down of operations.

1.79 -   "Revenue Party" or "Revenue Parties" means working interest holders, overriding royalty interest holders, and royalty interest holders holding an interest in the wells operated by SEC on the Effective Date of the Plan.

1.80 -   "Schedules" means the schedules of assets and liabilities, the list of Holders of Interests, and the statement of financial affairs filed by the Debtors in the Chapter 11 Cases under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists, and statements have been or may be supplemented or amended from time to time in accordance with Bankruptcy Rule 1009.

1.81 -   "Secured Claim" means (a) a Claim that is secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code, or (b) a Claim that is Allowed as a Secured Claim under this Plan.

1.82 -   "Sklar DIP Loan Order" shall mean the Order entered by the Court on June 15, 2020, Docket No. 431, approving a loan by Howard Sklar, the Howard Sklar Trust, the Jacob Sklar Trust, and the Alan Sklar Trust.

1.83 -   "Sklar DIP Loan Claim" shall mean the claim arising from the loan extended by Howard Sklar, the Howard Sklar Trust, the Jacob Sklar Trust, and the Alan Sklar Trust, as described in the Sklarco DIP Loan Order.

1.84 -   "Unimpaired Claim" means a Claim that is not Impaired under this Plan.

## ARTICLE II.

## DESIGNATION OF CLAIMS AND INTERESTS

The following is a designation of all classes of Claims and Interests other than those Claims of a kind specified in Sections 507(a)(2), 507(a)(3) or 507(a)(8) of the Code.

**Sklarco**

Class A - The Allowed Secured Claim held by East West Bank.

Class B.1 through B.7– The Allowed Secured Claims held by Mechanics Lien Claimants more specifically identified as follows:

Class B.1 - The Allowed Secured Claim held by Stoneham Drilling Corporation, if any.

Class B.2 - The Allowed Secured Claim held by Premium Oilfield Services, LLC, if any.

10

<u>Class B.3</u> - The Allowed Secured Claim held by Weatherford U.S., L.P., if any.

<u>Class B.4</u> - The Allowed Secured Claim held by Liquid Gold Well Service, Inc., if any.

<u>Class B.5</u> – The Allowed Secured Claim held by RAPAD Well Service, Inc., if any.

<u>Class B.6</u> – The Allowed Secured Claim held by Pro-Tek Field Services, LLC, if any.

<u>Class B.7</u> – The Allowed Secured Claim held by Pioneer Wireline Services, LLC, if any.

<u>Class C</u> – The Allowed General Unsecured Claims against Sklarco.

<u>Class D</u> – The member Interest held by Howard Trust

**SEC**

<u>Class 1</u> - The Allowed Priority Wage Claims.

<u>Class 2</u> - The Allowed Secured Claim held by East West Bank.

<u>Class 3</u> – The Allowed Secured Claim held by Ford Motor Credit.

<u>Class 4</u> – The Allowed Secured Claim held by Ally Bank.

<u>Class 5</u> – Reserved.

<u>Class 6</u> - The Allowed General Unsecured Claims against SEC held by unsecured creditors unless separately classified.

<u>Class 7</u> - The member Interest held by Howard Trust.

## ARTICLE III.

## SPECIFICATION AND TREATMENT OF UNCLASSIFIED PRIORITY CLAIMS

As provided in Section 1123(a)(1) of the Bankruptcy Code, the Claims against the Debtors covered in this Article III are not classified. The holders of such Allowed Claims are not entitled to vote on the Plan.

3.1     **Administrative Expense Claims**

Except as otherwise provided for herein, on the latest of (i) the Effective Date, (ii) the date that is five (5) Business Days after the date an Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date that is five (5) Business Days after the date an Allowed Administrative Claim becomes payable pursuant to any agreement between the applicable Debtor, as the case may be, and the Holder of such Administrative Claim, each Holder of an Allowed Administrative Claim shall receive from the Reorganized Debtors, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Administrative Claim, Cash equal to

11

the unpaid portion of such Allowed Administrative Claim. Notwithstanding anything to the contrary, that post-Petition Date liabilities incurred or expenses incurred in the ordinary course of the Debtors' business, including, but not limited to, vendor expenses, employee wages and benefits, and state and local property taxes, and severance taxes shall be paid by Reorganized Debtors in the ordinary course of business without the need for further Bankruptcy Court approval.

Notwithstanding any other provision in this Plan regarding the payment of Administrative Claims, the Confirmation Order shall establish an Administrative Claims Bar Date for filing Administrative Claims, which date shall be 45 days after the Confirmation Date. Holders of asserted Administrative Claims, except for (i) Professional Fee Claims, (ii) United States Trustee fees, and (iii) post-Petition Date liabilities incurred or expenses arising in the ordinary course of the Debtors' business, shall submit requests and seek allowance and payment of administrative expenses so as to be *actually received* on or before such Administrative Claims Bar Date or forever be barred from doing so. The notice of entry of the Confirmation Order to be delivered pursuant to Fed. R. Bankr. P. 3020(c) and 2002(f) shall set forth such date and constitute notice of the Administrative Claims Bar Date. The Reorganized Debtors shall have 45 days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Claims Bar Date to review and object to such Administrative Claims before a hearing for determination of allowance of such Administrative Claims.

## 3.2 **Professional Fee Claims**

Each Professional whose retention with respect to the Chapter 11 Cases has been approved by the Bankruptcy Court, who is required by the terms of their engagement to file Fee Applications, and who holds or asserts an Administrative Claim that is a Professional Fee Claim shall be required to file with the Bankruptcy Court, and to serve on all parties required to receive notice, a final Fee Application on or before the Administrative Claims Final Bar Date. The failure to timely file the Fee Application shall result in the Professional Fee Claim being forever barred and discharged. A Professional Fee Claim with respect to which a Fee Application has been properly and timely filed shall be treated and paid as an Administrative Claim only to the extent allowed by Final Order.

## 3.3 **Priority Tax Claims**

Each Holder of an Allowed Priority Tax Claim shall receive from the Reorganized Debtors in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim (a) in the Reorganized Debtors' sole discretion, either (i) on the Effective Date or as soon as practicable thereafter, Cash in an amount equal to such Allowed Priority Tax Claim, or (ii) treatment provided under section 1129(a)(9), including, without limitation, section 1129(a)(9)(C), of the Bankruptcy Code; or (b) such other treatment as to which the Debtors or the Reorganized Debtors, as applicable, and the Holder of such Allowed Priority Tax Claim shall have agreed upon in writing. For the avoidance of a doubt, Allowed Priority Tax Claims shall be paid in full with any statutory interest within five (5) years of the Petition Date. For the further avoidance of a doubt, to the extent not paid in full on the Effective Date of the Plan, the Louisiana Department of Revenue's priority tax claim(s) shall be paid on a monthly basis commencing not later than thirty days after the Effective Date and continuing each month thereafter until paid in full with post effective date interest to accrue at a statutory rate of 6.5% per annum, as required section 511 of the Bankruptcy Code, over a period not to exceed one (1) year from the Effective Date.

12

3.4     **DIP Loan Claim.**

The holders of Sklar DIP Loan Claim, shall be entitled to be paid from the Reorganized Debtors in one or more cash payments after the creditors in Classes 1 through 6 and A through C are paid in full. The Loan Agreement approved by the Sklar DIP Loan Order shall remain in place and is assumed in full with all restrictions to payment until after all existing secured and unsecured creditors are paid *provided*, for avoidance of doubt, that as provided in the Sklar DIP Loan Order, if any judgment is entered against the Sklar Parties (as defined in the Sklar DIP Loan Order) for any action arising under Section 544, 547, 548, 549, or 550, the amount of such judgment shall be offset first against the balance of such parties' loan, *provided further* that such offset shall not shall not be applied to any limits under applicable insurance policies or judgments for which any insurance company may be liable.

3.5     **U.S. Trustee Payments.**

The Debtors or Reorganized Debtors, as applicable, will make all payments required to be paid to the Office of the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) until the case is closed, converted, or dismissed.  All payments due to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) shall be paid on the Effective Date, and the Reorganized Debtors shall thereafter pay U.S. Trustee fees due on a quarterly basis until the case is closed, converted, or dismissed.

## ARTICLE IV.

## SPECIFICATION AND TREATMENT OF CLASS 1 CLAIMS

4.1     **Priority Wage Claims.**

Allowed Class 1 Priority Wage Claims shall be paid by the Reorganized Debtors in full on the Effective Date, unless the holder of a Class 1 claim agrees to an alternative treatment. The Class 1 claims for certain pre-petition wages and employee Claims are more particularly described in Sections 507(a)(4) and 507(a)(5) of the Code.

## ARTICLE V.

## SPECIFICATION AND TREATMENT OF SECURED CREDITOR CLAIMS

**5.1 -     Class 2 and A - East West Bank.**

The Class 2 and A Secured Claims consist of the EWB Secured Claim.  The EWB Secured Claim is impaired by this Plan.  The EWB Secured Claim will be treated under this Plan as follows:

a.     The principal amount of the EWB Secured Claim in Class 2 and A shall be allowed as a Secured Claim in the amount of $24 million, less any payments received post-petition and pre-confirmation, excluding payments for attorney fees, shall retain all liens

securing the EWB Secured Claim as of the Petition Date, and shall bear interest at a rate of 6.0% per annum.

b.      Subject to paragraph (c) below, the EWB Secured Claim shall receive  not less than 90% of Available Cash.  For the avoidance of a doubt, interest on account of the EWB Secured Claim shall continue to be paid on a monthly basis, and calculation of Available Cash shall be determined after deduction of such interest payments.   The Reorganized Debtors shall continue to provide regular cash budgets to, and in consultation with, EWB.

c.      In the event the market price for crude oil drops below $40/bbl for WTI Crude  based  on  the  CL1  Commodity  market-close  price  listed  at <https://www.bloomberg.com/quote/CL1:COM> for a period of five (5) or more consecutive days, EWB shall be entitled to adjust the monthly payment amount so that, based on the decline curve set forth in the NSAI Reserve Report, the loan-to-value ratio does not at any time exceed the loan-to-value ratio as of the Effective Date of the Plan (the "Plan LTV Ratio"). EWB may request, from time to time, such other Engineering Reports or Reserve Reports (each as defined in the EWB Loan and Security Documents) to the extent provided in the EWB Loan and Security Documents. A "Borrowing Base Deficiency" within the meaning of that term in the EWB Loan and Security Documents shall occur whenever the loan-to-value ratio exceeds the Plan LTV Ratio.  In the event of a Borrowing Base Deficiency, EWB may, in its sole and absolute discretion, (i) elect temporarily to waive any default based on a Borrowing Base Deficiency, (ii) make such redeterminations provided under the EWB Loan and Security Documents, or (iii) take such other actions provided under the EWB Loan and Security Documents.

d.      The EWB Secured Claim shall become due and payable on the second anniversary of the Effective Date of the Plan, which amount shall be paid through sale of assets or refinance of the EWB Secured Claim.  No later than six months prior the maturity date of the EWB Secured Claim hereunder, eighteen (18) months after the Effective Date of the Plan, the Debtors in consultation with EWB and the Creditor Trustee shall determine if a marketing and sale process must be commenced; provided however that the Creditor Trustee shall not have the ability or authority to veto the decisions made by the Reorganized Debtors and shall not have any authority or right to interfere with EWB's sole and absolute discretion regarding the collateral securing the EWB Secured Claim as provided in accordance with the EWB Loan and Security Documents under the Plan.  Following such consultation with EWB and the Creditor Trustee, the Reorganized Debtors shall make an election no later than nineteen (19) months after the Effective Date either to pursue a refinancing based on a commercially reasonable likelihood that a refinancing will occur, or to market and sell the Reorganized Debtors' assets.  If the election is made to sell the assets of the Reorganized Debtors, the Reorganized Debtors shall cooperate with EWB to engage an investment banker to market and sell mineral interests held by Sklarco and any and all other assets held by the Reorganized Debtors.  Any sale, refinance, or foreclosure shall be considered a Monetizing Event, and the proceeds shall be distributed in accordance with Section 8.8 herein.  For the avoidance of doubt, nothing herein shall preclude the Reorganized Debtors (through the Independent Manager), in their reasonable business judgment, from consulting with other parties in interest, including, without limitation,

14

Howard Sklar as trustee of the Howard Sklar Trust, in connection with any refinancing or marketing and sale process nor from providing information concerning any such refinancing or marketing and sale process upon reasonable request, subject to any satisfaction of any confidentiality obligations that may exist.

     e.     From and after the Effective Date, except for cash sales and transactions in the ordinary course of business, the Reorganized Debtors shall not sell any assets or interest in which EWB has an interest without the express written consent of EWB.  For the avoidance of a doubt, EWB may authorize one or more sales of less than substantially all of the Reorganized Debtors' assets in which EWB has an interest, provided however that all net proceeds shall be distributed in accordance with Section 8.8 herein. The Creditor Trust may also authorize one or more sales of less than substantially all of the Reorganized Debtors' assets that are allocated to the Creditor Trust pursuant to Section 8.4, below, with the proceeds of any such sales applied to the balance of the Creditor Trust Payment Obligation.

     f.     Debtors have the right to prepay the EWB Claim without premium or penalty.

     g.     Sklarco shall be required to enter into a hedging program with respect to its interests in a form agreeable to EWB.

     h.     The EWB Loan and Security Documents shall remain in full force and effect except as expressly modified herein. On the Effective Date, or as soon as reasonably practicable thereafter, the Reorganized Debtors shall execute and deliver such other and further documents, amendments, or modifications, and take such further actions, as may be reasonably requested by East West Bank to implement the provisions of this Plan relating to the EWB Secured Claim.

## 5.2 -   Class 3 - Ford Motor Credit.

The Class 3 Claim is impaired by the Plan.  The Class 3 Claim will retain all liens securing the Claim on the Effective Date of the Plan, and shall be paid in accordance with the underlying contracts until such time as vehicles securing the Class 3 Claim are returned in accordance with the Resignation and Transition Schedule. Any remaining amounts owed on account of the Class 3 Claim following return and liquidation of the vehicles will be treated as a Class 6 unsecured claim.

## 5.3 -   Class 4 – Ally Bank.

The Class 4 Claim is impaired by the Plan.  The Class 4 Claim will retain all liens securing the Claim on the Effective Date of the Plan, and shall be paid in accordance with the underlying contracts until such time as the vehicle(s) securing the Class 4 Claim is returned or the contractual balance is paid in full.  Any remaining amounts owed on account of the Class 4 Claim following return and liquidation of the vehicle(s) will be treated as a Class 6 unsecured claim.

**5.4 -   Classes B.1 through B.7 – Mechanics and Materialmen Lien Claimants.**

Classes B.1 through B.7 consist of the Allowed or arguably allowable classes of creditor claims held by Premium, Stoneham, Weatherford, Liquid Gold, RAPAD, Pro-Tek Field Services, and Pioneer Wireline Services, all of whom assert a secured claim based on mechanics liens arising under applicable State Law for which Notices of Perfection of Liens Under Section 546(b) have been filed.  On the Effective Date of the Plan, the Class B.1 through B.7 Claims shall be deemed unsecured pursuant to 11 U.S.C. § 506 and treated as Class 6 general unsecured claims of SEC.

For the avoidance of doubt and to the extent Allowed, Stoneham Drilling Corporation's ("Stoneham") Class B. 1 Claim in the amount of $1,600,141.65 is treated and paid as a Class 6 general unsecured claim of SEC solely for purposes of payments under the Plan.  Notwithstanding anything in this Plan to the contrary: (i) Stoneham's liens and all related claims are preserved against (a) the property described in the Notice of Perfection of Lien Against Mineral Property Pursuant to 11 U.S.C. § 546(b)(2) [Docket No. 368] (the "Stoneham Lien Property"); and (b) the Debtors', Reorganized Debtors', and the Creditor Trust's interests, if any, in the Stoneham Lien Property; (ii) the Plan does not release, discharge, enjoin, stay, or otherwise modify Stoneham's rights, claims, and defenses against all non-Debtor parties or the Creditor Trust, including the right to immediately, and without further order of the Bankruptcy Court enforce and foreclose Stoneham's lien and pursue and recover any claims against non-Debtor parties other than the Creditor Trust; and (iii) Stoneham reserves against the Debtors, Reorganized Debtors, and the Creditor Trust any rights of setoff, recoupment, netting, and similar rights under any applicable contract, statute (including sections 506 and 553 of the Bankruptcy Code), common law, or equitable principle; provided, however, should Stoneham assert any setoff or recoupment rights as a Revenue Party then it must comply with Section 8.16.

## ARTICLE VI.

## SPECIFICATION AND TREATMENT OF
## UNSECURED CREDITOR CLAIMS

**6.1 -   Class 5 – Reserved.**

**6.2 -   Class 6 and Class C – General Unsecured Claims Against SEC and Sklarco.**

Class 6 and Class C are comprised of the Allowed General Unsecured Claims against SEC and Sklarco.  Class 6 and Class C claims shall be treated under this Plan as follows:

a.      On the Effective Date of the Plan, all Class 6 and Class C Creditors will receive a beneficial interest in the Creditor Trust in exchange for their claims

b.      Subject to Section 5.1(c) above, beginning on the Effective Date, the Reorganized Debtors shall pay the Creditor Trust Allocation to the Creditor Trust.  The Creditor Trust shall further receive all distributions from or payments on account of all assets and/or interests allocated to the Creditor Trust.  All payments of the Creditor Trust

16

Allocation received by the Creditor Trust shall be applied against the balance of the Creditor Trust Payment Obligation and distributed to beneficiaries on a pro rata basis until the earlier of the date on which the Creditor Trust Payment Obligation is paid in full, or all Allowed Class 6 and Class C Claims are paid in full.

c. In the event of a refinance of the EWB Secured Claim, the Creditor Trust shall receive the Creditor Trust Allocation of the Post-Monetization Proceeds as defined in Section 1.29. The Reorganized Debtors shall continue to make such payments after such refinance until the earlier of the date on which the balance of the Creditor Trust Payment Obligation is paid in full or all Allowed Class 6 and Class C Claims are paid in full.

d. Notwithstanding anything to the contrary, upon entry of an Order confirming the Plan, the Plan shall be binding on both Reorganized Debtors until the obligations therein are satisfied.

## ARTICLE VII.

## SPECIFICATION AND TREATMENT OF CLASS 7 AND D INTERESTS

### 7.1 -   Class 7 – Interests in SEC.

Class 7 consists of the Interests in SEC. Class 7 is impaired by the Plan. On the Effective Date of the Plan, all membership interests shall be placed in escrow and under the control of a party acceptable to EWB, the Creditor Trustee, and Howard Sklar, as trustee of the Howard Sklar Trust, and subject to an escrow agreement and any valid liens until all payments under the Plan are completed. Following the wind down and liquidation of Reorganized SEC in accordance with Section 8.9, all membership Interests in SEC will be terminated.

### 7.2 -   Class D – Interests in Sklarco.

Class D consists of the Interests in Sklarco. Class D is impaired by the Plan, in that there is a loss of control for the Interest Holders, a loss of voting rights as set forth in Paragraph 8.6 of the Plan, and a diminishment of economic value through Sklarco's contributions of Available Cash to satisfy the Creditor Trust Payment Obligation. On the Effective Date of the Plan, all membership interests shall be placed in escrow and under the control of a party acceptable to EWB and Howard Sklar, as trustee of the Howard Sklar Trust, and subject to any valid liens, and shall be subject to an escrow agreement until all payments under the Plan are completed. Upon satisfaction of all obligations under the Plan, the Interests in Sklarco shall be returned to the Howard Trust.

Notwithstanding the foregoing, beginning on the Effective Date, the Reorganized Debtors shall pay the Howard Sklar Trust Allocation directly to the Howard Sklar Trust.

Howard Sklar in his individual capacity or as trustee (as the case may be) and other parties in interest assert that they have title in and to, and claims with respect to, the following assets and investments and all revenue derived therefrom, unencumbered by any lien or security interest granted to EWB (the "Disputed Assets"):

17

     a.   Boulders on Fern Apartment Complex
     b.   Timber Quest
     c.   LTP Opportunity Fund
     d.   Trout Creek
     e.   1908 Brands
     f.   Assets held for Maren Silberstein Revocable Trust and the Succession of Miriam Mandel Sklar

Other parties in interest have disputed any such title or claims.  The parties shall cooperate to resolve their disputes with respect to the Disputed Assets, and any resolution shall be subject to the Section 8.13 of this Plan if not sooner resolved in accordance with Bankruptcy Rule 9019. Notwithstanding Section 10.2 of this Plan and Section 1141(b) of the Bankruptcy Code, all parties' rights with respect to the Disputed Assets are reserved (and not waived), including, without limitation, the right to commence an adversary proceeding to determine any party's rights with respect to the Disputed Assets.

In the event of a refinance of the EWB Secured Claim, the Howard Sklar Trust shall not receive an amount less than the Howard Sklar Trust Allocation of the Post-Monetization Proceeds. The Interest Holders shall also receive distributions solely to the extent necessary to pay taxes attributable to the Reorganized Debtors.

## ARTICLE VIII.

## MEANS FOR IMPLEMENTATION

### 8.1 -    Continued Existence.

SEC and Sklarco, as Reorganized Debtors, shall continue to exist after the Effective Date with all of the powers of a limited liability company under the laws of the State of Louisiana and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under applicable law, except as such rights may be limited and conditioned by the Plan, Confirmation Order, and/or the documents and instruments executed and delivered in connection therewith.  The Reorganized Debtors may operate their business free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, subject only to the terms and conditions of the Plan, the Confirmation Order, and the documents and instruments executed and delivered in connection herewith and therewith.  SEC shall reorganize for the limited purpose of winding down and transitioning its operations, and liquidating its Assets for the benefit of creditors in accordance with the terms of this Plan.  For the avoidance of a doubt, nothing contained herein shall release the Reorganized Debtors from any obligation to comply with applicable State and Federal Law in continuing in operation, as to Sklarco, and winding down and transitioning its operations as to SEC.

### 8.2 -    Operation of Business.

The Debtors shall be empowered to take such action as may be necessary to perform their obligations under this Plan.  All Executory Contracts assumed by SEC and/or Sklarco in accordance with Article IX shall be in full force and effect, and the Reorganized Debtors shall be

empowered to exercise all rights and remedies thereunder, including without limitation, setoff or recoupment of unpaid JIB Obligations against revenue owed to working interest holders for nonpayment of such JIB Obligations under any JOAs or similar agreements. Notwithstanding anything to the contrary, for the avoidance of a doubt, Reorganized SEC retains all rights, defenses, and arguments related to any claims of recoupment or setoff that may be asserted by any Revenue Parties.

**8.3 -   Management Fees and Costs.**

The Reorganized Debtors shall be entitled to compensate their managers, officers and directors with reasonable compensation for services following confirmation of the Plan.  Funding for such fees will be derived from the operation of the Debtors' business and working capital. The Independent Manager shall have discretion to retain and compensate those employees and managers as reasonably necessary to continue operations of the Reorganized Debtors, including operation of SEC through completion of an orderly transition and wind down.   Such management personnel may include: 1) J. Marshall Jones, VP & COO of SEC, annual salary of apx. $192,500; and 2) John Strausser, VP & CFO of SEC, annual salary of apx. $185,000.  Following the Effective Date of the Plan, Howard Sklar shall not be engaged as a manager or otherwise responsible for day to day operations of the Reorganized Debtors.   Notwithstanding the foregoing, nothing contained herein shall in any way limit, restrict, or otherwise impair the Independent Manager's ability to consult with and compensate those parties he deems necessary for the effective management of the Reorganized Debtors including, without limitation, existing employees of the Debtors.

**8.4 -   Establishment and Funding Of Creditor Trust.**

On the Effective Date of the Plan, the Creditor Trust shall be established for the primary purpose of: (1) receiving and pursuing claims and Causes of Action, and distributing the proceeds of such claims and Causes of Action; and (2) receiving funds and using and distributing funds in accordance with this Plan and the Creditor Trust Agreement.  The specific terms of Creditor Trust shall be set forth in the Creditor Trust Agreement.  The Creditor Trust will be controlled and administered by the Creditor Trustee, which Trustee shall be selected by the Committee.

The Creditor Trustee shall pay all expenses incurred by the Creditor Trust after the Effective Date, including professional fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.  The Creditor Trust is also permitted to engage such professionals as it deems reasonable and necessary without application to the Bankruptcy Court. The Creditor Trust shall be funded with $250,000 ("Trust Administration Funds").  The Trust Administration Funds shall be paid in installments of $50,000 per month or as otherwise agreed to by the Committee and the Debtors prior to the Effective Date.

On the Effective Date, all Causes of Action belonging to the Debtors or the Estates that are not ordinary-course collections under Section 8.6(f) herein, or that are not otherwise preserved to the Reorganized Debtors or released pursuant to the Plan, shall be vested in the Creditor Trust, including any derivative Causes of Action that could have been brought, or may be brought on behalf of the Debtors.  The Creditor Trustee, for the Creditor Trust, shall be vested with all right and authority of each of the Debtor corporate entities and their respective members under

19

applicable law to assert or settle claims against directors, officers, or managers (except for claims released pursuant to this Plan). Without limiting any substantive rights of the Creditor Trust in connection with any Avoidance Actions against Howard Sklar or any trust or estate for which he serves as trustee or in a similar capacity, the Creditor Trustee and Howard Sklar shall cooperate with respect to the timing of any Causes of Action asserted against Howard Sklar or any trust or estate for which he serves as trustee or in a similar capacity to save legal fees and costs through and including a Monetizing Event.

In addition to the Trust Administration Funds and all Causes of Action, the Creditor Trust shall further receive an interest in the distributions and/or proceeds from the following assets beginning on the Effective Date of the Plan:

1. The applicable Reorganized Debtor's interest in THP Partners II, LP;
2. The applicable Reorganized Debtor's interests in:
   a. The Graham 5-16 Well located in Choctaw County, Alabama;
   b. The Doss E D 3 Well Located in Union, Arkansas;
   c. The East Castor Pipeline located in Bienville, Louisiana;
   d. The Finn Deep Pipeline located in Natchitoches, Louisiana;
   e. The mineral leases identified in the Plan Supplement with the Creditor Trust Agreement.

The Creditor Trust established under the Plan is established for the purpose of distributing funds transferred to the Creditor Trust, net of all claims, expenses, charges, liabilities, and obligations of the Creditor Trust, to the beneficiaries of the trust in accordance with the terms of the Plan and the Creditor Trust Agreement. The Creditor Trust shall have no objective of continuing or engaging in any trade or business except to the extent reasonably necessary to, and consistent with, the purpose of the Trust. The Creditor Trust shall not conduct business activities other than those associated with or related to the litigation of Causes of Action and distribution of trust assets. It is intended that the Creditor Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of the Treasury Regulations Section 301.7701-4(d). All parties and beneficiaries shall treat the transfers in trust described herein as transfers to the beneficiaries for all purposes of the Internal Revenue Code of 1986, as amended (including Sections 61(a)(12), 483, 1001, 1012, and 1274 thereof). The beneficiaries shall be treated for all purposes of the Internal Revenue Code of 1986, as amended, as the grantors of the Creditor Trust and the owners of the Creditor Trust. The Creditor Trustee shall file returns for the Creditor Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a) or (b). All parties, including the beneficiaries and the Creditor Trustee, shall value the Creditor Trust Assets consistently, and such valuations shall be used for all federal income tax purposes. Beneficiaries may wish to consult with a tax professional regarding the tax consequences of holding a beneficial Interest in or receiving a Distribution from the Creditor Trust.

Except as expressly provided in the Plan, the Creditor Trust is not, and shall not be deemed, a successor to the Debtors or their Estates, and the Creditor Trust shall not be responsible for any liabilities or obligations of the Debtors other than obligations and Distributions contemplated under the Plan.

**8.5 -     Establishment of Reserve Fund**

On the Effective Date of the Plan, the Reorganized Debtors shall establish a Reserve Fund to cover any unanticipated and extraordinary expenses, including but not limited to unanticipated maintenance and repairs due to major weather events.  The Reserve Funds shall be limited to $250,000, and shall be maintained at such amount during the term of the Plan, and shall be used at the discretion of the Independent Manager in consultation with EWB.

**8.6 -     Appointment of Independent Manager.**

On the Effective Date of the Plan, an independent manager selected by agreement of the Debtors and EWB shall be appointed for each of the Debtors to manage the day-to-day affairs of the Debtors, including but not limited to:

a)  Effectuating the terms of the Plan;
b)  Maintaining control over all bank accounts and funds held and maintained by the Debtors;
c)  Making distributions to creditors, except those distributions to be made by the Creditor Trustee, and the Howard Sklar Trust;
d)  Maintaining control over expenditures;
e)  Directing business decisions by the Debtors, including performance of any projects for which SEC previously received cash call advances on those Operating Agreements assumed by SEC; and
f)  Pursuing collections of any outstanding receivables and enforcing any other payment obligations, including without limitation, any JIB Obligations owed to the Debtors in the ordinary course of business prior to and/or after the Effective Date, including resolution, whether through litigation, settlement, or otherwise, any claims for setoff or recoupment.

In addition to the powers set forth above, the independent manager shall also be responsible for and empowered to effectuate the wind down and dissolution of SEC in consultation with EWB Following confirmation of the Plan, CR3 Partners shall remain in place for a period of up to 30 days to effectuate a transition to the Independent Manager.

**8.7 -     Termination of Independent Manager.**

Once the following two items have been accomplished by the Independent Manager, the management of the Debtors may be turned back to the Reorganized Debtors, the Howard Trust, and Howard Sklar; and the Independent Manager shall resign.  The two items are: 1) the consummation of a Monetizing Event and distribution of funds in accordance with Section 8.8 below; and 2) satisfaction of all obligations under the Plan, including the payment in full of the Creditor Trust Payment Obligation or all Allowed Class 6 and Class C Claims in full, whichever is less.

**8.8 -     Distributions Upon Occurrence of a Monetizing Event.**

Upon occurrence of a Monetizing Event, the proceeds of such Monetizing Event shall be distributed as follows:

21

a.      First, to EWB up to $21 million, less any i) post-petition and pre-confirmation payments for principal, interest, or fees, but excluding payments for attorney fees, and ii) all principal payments received post-confirmation through the date of the Monetizing Event,  and post-confirmation principal payments, excluding any payments for attorney fees, as satisfaction in full of the EWB Secured Claim;

b.      Second, to the Creditor Trust up to the amount of $3 million flowing from the agreed allocation of the EWB Secured Claim, in addition to the amounts received from the sale of any assets in which the Creditor Trust has been granted an interest;

c.      Third,  to the Creditor Trust and the Howard Trust in accordance with the Creditor Trust Allocation and the Howard Sklar Trust Allocation, respectively until the earlier of i) payment in full of the Creditor Trust Payment Obligation, or ii) payment in full of all Allowed Class 6 and Class C Claims;

d.      Fourth, all remaining funds, if any, to the Class 7 and Class D Interest Holders.

## 8.9 -   <u>Liquidation and Wind Down of SEC.</u>

Beginning on the Effective Date and continuing in accordance with the Resignation and Transition Schedule, the Independent Manager shall:

- Call requisite working interest holder meetings for operated properties and facilitate in holding a vote to replace SEC as operator in accordance with the applicable JOAs;
- Facilitate the orderly transition to a new operator as soon as is practicable under the circumstances and in accordance with applicable State and Federal Law;
- Engage any brokers, auctioneers, or other professionals necessary to effectuate the sale any assets owned by SEC unless otherwise assigned to the Creditor Trust;
- And remit payments to creditors and/or the Creditor Trust following the orderly liquidation of assets.

Following the transition to one or more new operators and sale of SEC's assets, SEC funds shall be distributed in accordance with the terms of the Plan, and shall be paid first to EWB on account of the EWB Secured Claim, then to any unclassified or classified priority claims, then to the Creditor Trust, then any residual funds will be distributed to Interest Holders.  Following the wind down and liquidation of SEC, all membership Interests in SEC will be terminated.

## 8.10 -   <u>Conditions Precedent to the Effective Date of the Plan.</u>

The Plan shall not become effective and the Effective Date of the Plan shall not occur until the first business date on which the following items have been satisfied:

a.  The Order of Confirmation shall have been entered by the Court and shall have become a Final Order which is not stayed; and

b.  the Confirmation Date shall have occurred; and

c.  no request for revocation of the Confirmation Order under Bankruptcy Code section 1144 shall have been made, or if made, remain pending; and

d. the Creditor Trust shall have been formed and all formation/organizational documents for the trust shall have been properly executed, delivered, and filed as required by this Plan and applicable law; and

e.  the appointment of the Creditor Trustee shall have been confirmed by order of the Bankruptcy Court, which may be the Confirmation Order; and

f.  the Independent Manager shall be selected and appointed by agreement of the Debtors and EWB.

## 8.11 -  Effect of Failure of Conditions.

In the event that the Effective Date does not occur, upon notification submitted by the Debtors to the Bankruptcy Court:  (a) the Confirmation Order shall be vacated and all provisions contained therein, including without limitation, any provisions relating to discharge, shall be null and void, (b) no Distribution under the Plan shall be made, (c) the Debtors and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, (d) the obligations with respect to the Claims and Interests shall remain unchanged and nothing contained in the Plan shall constitute or be deemed a waiver or release of any Claims or Interests by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors, and (e) nothing contained in the Plan shall (i) prejudice in any manner the rights of the Debtors, (ii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors in any respect, including in any proceeding or case against the Debtors, or (iii) be admissible in any action, proceeding or case against the Debtors in any court or other forum.

## 8.12 -  Distributions to Allowed Claims.

(a)     Delivery of Distributions.

Subject to Article V of this Plan, Distributions other than payments made by the Reorganized Debtors under the Plan shall be made by the Creditor Trust from time to time in the discretion of the Creditor Trustee to the Holders of Allowed Claims at the addresses set forth on the Schedules, unless such addresses are superseded by a proof of claim or transfer of claim filed pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date (or at the last known addresses of such Holders if the Creditor Trust has been notified in writing of a change of address).

(b)     Distribution of Cash.

Any payment of Cash by the Creditor Trust pursuant to the Plan shall be made, at the option and in the sole discretion of the Creditor Trustee, by (i) a check drawn on, or (ii) wire transfer from, a domestic bank selected by the Creditor Trustee.

(c)     Unclaimed Distributions.

Any Distribution of Cash under the Plan to the Holder of an Allowed Claim that remains unclaimed for a period of ninety (90) days after it has been delivered (or attempted to be delivered) in accordance with the Plan shall be transferred to and become property of the applicable Reorganized Debtor notwithstanding state or other escheat or similar laws to the contrary, and any and all entitlement by the Holder of such Claim to such Distribution shall be extinguished and forever barred. Provided however, that no distribution of the Louisiana Department of Revenue shall become unclaimed property reverting to the estate, and the Louisiana Department of Revenue's tax claims, whether priority or general unsecured, shall remain owing until such time as they are paid in full in accordance with the terms of the confirmed Plan and/or Confirmation Order.

(d) Saturdays, Sundays, or Legal Holidays.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, and shall be deemed to have been completed as of the required date.

## 8.13 - <u>Objections to and Resolution of Claims</u>.

From and after the Effective Date, the Reorganized Debtors and the Creditor Trust shall have the authority, in their discretion, to file, settle, compromise, withdraw, or litigate to judgment all objections, if any, to Administrative Claims and Claims, except the EWB Secured Claim, which Claim is Allowed under this Plan.  Unless otherwise ordered by the Court, objections to, or other proceedings concerning, the allowance of Claims (other than objections to Administrative Claims, as provided in Article III.) shall be filed and served upon the Holders of the Claims as to which the objection is made or otherwise commenced as soon as practicable, but in no event later than one hundred and twenty (120) days after the Effective Date.

Objections to, or other proceedings contesting the allowance of, Claims may be litigated to judgment, settled or withdrawn, in the Creditor Trustee's sole discretion.

## 8.14 - <u>Establishment of Disputed Claim Reserves</u>.

On the initial Distribution Date, the Creditor Trust shall establish a Disputed Claim Reserve for all Disputed Claims that would be paid under this Plan if such Disputed Claims were Allowed Claims in an aggregate amount equal to the liquidated, non-contingent face value of such Claims. To the extent any such Disputed Claim is in whole or in part unliquidated and/or contingent as of the Distribution Date, the Creditor Trust, in its sole discretion, may elect not to deposit any amount in the Disputed Claim Reserve on account of such unliquidated and/or contingent portion of such Disputed Claim.  No later than five (5) Business Days following the entry of a Final Order either (a) Allowing such Disputed Claim (in whole or in part) or (b) disallowing such Disputed Claim (in whole or in part), the Creditor Trust shall (i) to the extent such Claim has been Allowed in whole or in part, distribute to the Holder of such Claim an amount equal to the amount such Holder would have received had such Claim (or portion thereof) been an Allowed Claim on the Effective Date, and (ii) to the extent such Claim has been Disallowed, retain the balance of the funds on

deposit in such Disputed Claim Reserve equal to the portion of such Claim that has been Disallowed.

**8.15 -  Estimation.**

The Reorganized Debtors or the Creditor Trust may at any time request that the Bankruptcy Court estimate, subject to 28 U.S.C. § 157, any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Reorganized Debtors, or the Creditor Trust have previously objected to such Claim.  The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time, including during proceedings concerning any objection to such Claim.  In the event that the Bankruptcy Court estimates any Disputed Claim, such estimated amount may constitute either (a) the Allowed amount of such Claim, (b) the estimate to be used by the Creditor Trust in calculating potential Distributions under the Plan, or (c) a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Creditor Trust may elect to object to ultimate payment of such Claim.  All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another.

**8.16 – Recoupment.**

Except as expressly set forth herein, in no event shall any Revenue Party be entitled to recoup or assert any rights of setoff against any account receivable or JIB, including any joint interest billing obligations arising after the Effective Date, owed or allegedly owed to the Debtors and/or the Reorganized Debtors unless: (a) such Revenue Party actually provides notice thereof in writing to the Debtors and EWB of its intent to perform a recoupment or setoff no later than fourteen (14) days following the Confirmation Date; (b) such notice includes the amount to be recouped or setoff by the holder of the Claim or Interest and a specific description of the basis for the recoupment or setoff; and (c) the Debtors and EWB consent to a recoupment or setoff within ten (10) days of receipt of the Notice.  If no consent is received within such time period, it shall constitute a rejection or denial of the recoupment or setoff claim by the Debtors and EWB.  In the event that the Debtors and/or EWB do not consent to recoupment or setoff, such recoupment or setoff claim shall be allowed only upon entry of a final order from the Bankruptcy Court, and the party asserting a recoupment or setoff claim shall assert such claim in Bankruptcy Court by motion no later than twenty-one (21) days following the Debtors and EWB's rejection of the recoupment claim.  Upon filing such motion, the Reorganized Debtors, EWB, and other parties in interest shall have fourteen (14) days to file a response.  Failure to properly and timely provide notice and/or timely file any claims for recoupment or setoff against a JIB  Obligation, including joint interest billing obligations owed after the Effective Date, by a Revenue Party shall result in a release, waiver, and denial of all recoupment or setoff claims that may be or could have been asserted by such Revenue Party with respect to such JIB Obligations.

Notwithstanding any other provision of the Plan, including Section 10.4, any rights of setoff or recoupment held by a non-Revenue Party Creditor, and any setoff or recoupment rights held by a Revenue Party asserted against claims **other than** JIB Obligations or post-Effective Date joint interest billing obligations, as of the Confirmation Date are fully preserved as an affirmative defense to any claim that may be asserted against that Creditor by the Reorganized Debtors or the Creditor Trust.

25

**8.17 – <u>Contractual Relationship and Default.</u>**

The Plan, upon confirmation, constitutes a new contractual relationship by and between the Reorganized Debtors and their creditors. In the event of a default by the Reorganized Debtors under the Plan, Creditors and/or the Creditor Trustee shall be entitled to enforce all rights and remedies against the Reorganized Debtor for breach of contract or as otherwise allowed under applicable State and Federal Law, including but not limited to seeking to enforce the terms of the Plan in the Bankruptcy Court in accordance with section 11.2. Any secured creditor claiming a breach of the Plan by the Reorganized Debtors will be able to enforce all of their rights and remedies including foreclosure of their deed of trust, security agreement, lien, or mortgage pursuant to the terms of such document. Any creditor claiming a breach by one or both of the Reorganized Debtors must provide written notice to the applicable Reorganized Debtor(s) of the claimed default, the notice must provide the applicable Reorganized Debtor(s) a ten (10) day period within which to cure the claimed default. Upon the Reorganized Debtor's failure to cure the default within such ten-day period, the creditor may proceed to exercise their rights and remedies. For the avoidance of a doubt, the Creditor Trust shall not be required to provide formal notice of a default under the Plan prior to seeking enforcement of the Plan terms.

For purposes of the claims of the applicable taxing authorities, including with limitation, the Internal Revenue Service and the Louisiana Department of Revenue, default is defined as the Debtors' failure to make timely payments to the applicable taxing authority as set forth in the Plan and may include, but is not limited to, the Debtor not remaining in tax compliance post-confirmation as to tax filing and payment obligations as required under the Internal Revenue Code and applicable State and Federal Law. In the event of default, written notice is required on the applicable Reorganized Debtor(s), Reorganized Debtor's counsel, and the Creditor Trustee. In the event default is not cured within 10 days from the date of notice in writing, then, regardless of any other plan provision, the entire pre-petition amount due to such taxing authority is immediately due and owing, and the enforcing taxing authority shall be able to enforce obligations as if the bankruptcy case had not been filed and no stay or injunction is then in effect.

**ARTICLE IX.**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**9.1   <u>Assumption and Rejection of Executory Contracts and Unexpired Leases by Sklarco.</u>**

On the Effective Date, all Executory Contracts of Sklarco shall be deemed assumed in accordance with the provisions and requirements of Bankruptcy Code §§ 365 and 1123, *except* for those Executory Contracts that: (a) have already been rejected by order of the Bankruptcy Court; (b) are listed as rejected Executory Contracts in the Plan Supplement; or (c) are subject to a motion to reject that is pending on the Effective Date.

Each Executory Contract assumed pursuant to this Plan shall vest and be fully enforceable by Reorganized Sklarco in accordance with its terms, except as such terms are modified by the

provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption or applicable law.

**9.2** **Assumption and Rejection of Executory Contracts and Unexpired Leases by SEC.**

On the Effective Date, all Executory Contracts of SEC shall be deemed rejected in accordance with the provisions and requirements of Bankruptcy Code §§ 365 and 1123, *except* for those Executory Contracts that:  (a) have already been assumed by order of the Bankruptcy Court; (b) are listed as assumed Executory Contracts in the Plan Supplement; or (c) are subject to a motion to assume that is pending on the Effective Date and assumption is later authorized by the Bankruptcy Court.

Each Executory Contract assumed pursuant to this Plan or prior order the Bankruptcy Court shall vest and be fully enforceable by SEC in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption or applicable law.

**9.3** **Cure.**

Except as otherwise agreed to by the parties or otherwise provided in the Plan, on the Effective Date, the applicable Debtor or Reorganized Debtor, as the case may be, shall cure any and all undisputed defaults under any Executory Contract that is assumed pursuant to the Plan in accordance with section 365 of the Bankruptcy Code.  Unless the parties to the contract or lease agree otherwise, all disputed defaults, including JOA Cure Claims, if any, that are required to be cured shall be cured promptly as agreed by the parties or determined by the Bankruptcy Court after (i) the entry of a Final Order determining the amount, if any, of the liability with respect thereto, and (ii) the initial Periodic Distribution Date.

**9.4** **Rejection Damage Claims.**

All Claims for damages arising from the rejection of an Executory Contract pursuant to the Plan or prior to the Effective Date, including without limitation those contracts rejected by the *Order Authorizing Sklar Exploration Company, LLC's Rejection of the Myrtice Ellis Joint Operating Agreement* (Docket No. 1155) and the *Order Authorizing Sklar Exploration Company's Rejection of Joint Operating Agreements and Related Oil and Gas Contracts* (Docket No. 1138)[1] shall be filed with the Bankruptcy Court no later than the first Business Day that is twenty-eight (28) days after the Effective Date or the first Business Day that is twenty-eight (28) days after the entry of the Final Order approving the rejection, if such Final Order is entered after the Confirmation Date.  Every such Claim that is timely filed, as and when it becomes and Allowed Claim, shall be treated as a General Unsecured Claim against SEC under Class 6 of the Plan.  Every such Claim that is not timely filed by the deadline to do so shall be forever barred, unenforceable, and discharged, and the Creditor holding the Claim shall not receive or be entitled to any Distribution under the Plan on account of such Claim.  Notwithstanding anything contained in this

---

[1] As amended by the *Order Granting Unopposed Motion by Debtor to Amend Rejection Order* (Docket No. 1151)

Plan, the Creditor Trust, and the applicable Debtor or Reorganized Debtor,  reserve the right to object to any Claim arising from the rejection of an Executory Contract.

**9.5.    Rights of Seismic Agreement Licensees Under 11 U.S.C. § 365(n) Preserved.**

Any licenses previously granted by SEC for the use of SEC's seismic data (such licenses collectively being the "Seismic Licenses") have been rejected pursuant to the Bankruptcy Court's *Order Authorizing Sklar Exploration Company, LLCs Jointer Operating Agreements and Related Oil and Gas Contracts* (Docket No. 1138)[2] and the Confirmation Order.

Each licensee under the Seismic Licenses shall have the rights granted under section 365(n) of the Bankruptcy Code as a licensee of a right to intellectual property and, to the extent that such licensee elects to retain its rights under sections 365(n)(1)(B) and 365(n)(2)-(3) to such intellectual property, then (i) such licensee shall be entitled to use the seismic data described in the applicable Seismic License(s) pursuant to the conditions set forth therein and (ii) any further rights set forth in section 365(n) shall be preserved.

## ARTICLE X.

### EFFECT OF CONFIRMATION OF THE PLAN

**10.1 -  Binding Effect.**

The rights, benefits, and obligations of any Person named or referred to in the Plan will be binding upon, and will inure to the benefit of, the heir, executor, administrator, successor or assign of such Person.

**10.2 -  Vesting of Property.**

On the Effective Date of the Plan all property of the estates shall revest in the Reorganized Debtors free and clear of all liens except those specifically set forth in the Plan or as otherwise provided in the Plan.  The Reorganized Debtors shall thereafter hold, use, dispose, or otherwise deal with such Property, or operate its business, free of any restrictions imposed by the Bankruptcy Code or by the Court.  Except to the extent released herein, all Causes of Action are hereby preserved in full for the benefit of the Creditor Trust.  After the Effective Date, in accordance with Section 8.4, the Creditor Trust shall own and retain, and may prosecute, enforce, compromise, settle, release, or otherwise dispose of, the Avoidance Actions in their sole discretion without the need of any approval by the Bankruptcy Court.

**10.3 -  Reinstatement and Continuation of Insurance Policies.**

Unless otherwise assumed during the pendency of the Chapter 11 Cases, from and after the Effective Date, each of the Debtors' insurance policies in existence on and as of the Confirmation Date shall be reinstated and continued in accordance with its terms and, to the extent applicable,

---

[2] As amended by the *Order Granting Unopposed Motion by Debtor to Amend Rejection Order* (Docket No. 1151)

shall be deemed assumed by the Reorganized Debtors pursuant to section 365 of the Bankruptcy Code.

**10.4 - <u>Discharge of Debtors.</u>**

Because SEC will be operated for a limited period of time following the Effective Date to effectuate a wind down and orderly transition to a new operator, the Debtors shall receive a discharge on the Effective Date of the Plan pursuant to Section 1141(d). Confirmation of the Plan and the occurrence of the Effective Date of the Plan shall constitute a modification of any note or obligation for which specification and treatment is provided under the Plan as set forth in the Plan. Any obligation or note, previously in default, so modified, shall be cured as modified as of the Effective Date.  This provision shall be operable regardless of whether the Plan provides for any obligation to be evidenced by a rewritten loan or security document following confirmation of the Plan.  Notwithstanding the foregoing, the discharge granted on the Effective Date does not discharge any rights of setoff or recoupment held by a Revenue Party, subject to Section 8.16.

Nothing in this Plan discharges, releases, precludes, or enjoins: (i) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) ("Governmental Unit") that is not a "claim" as defined in 11 U.S.C. § 101(5) ("Claim"); (ii) any Claim of a Governmental Unit arising on or after the Confirmation Date: (iii) any police or regulatory liability to a Governmental Unit that any entity would be subject to as the owner or operator of property after the Confirmation Date; or (iv) any liability to a Governmental Unit on the part of any non-debtor. Nor shall anything in this Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence. Notwithstanding any provision of the Plan or any Plan documents created for the purposes of implementing or supplementing the Plan, the United States' setoff rights under Federal Law as recognized in section 553 of the Bankruptcy Code and related recoupment rights shall be preserved and are unaffected.

Nothing in this Plan is intended to release the Debtors or the Reorganized Debtors from any plugging and abandonment requirements under applicable Federal Law. Nothing in this Plan divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Plan or to adjudicate any defense asserted under this Plan. Nothing in this Plan or any Plan documents created for the purposes of implementing or supplementing the Plan shall be construed as a compromise or settlement of any claim, interest or cause of action of the United States (including any agencies or subagencies thereof). Moreover, nothing in this Plan or any Plan documents created for the purposes of implementing or supplementing the Plan shall affect the treatment of any interest in contracts, leases, covenants, operating rights agreements, rights-of-use and easement, and rights-of-way or other interests or agreements with the federal government or involving federal land or minerals. Moreover, nothing in this Plan or any Plan documents created for the purposes of implementing or supplementing the Plan shall affect the treatment of any interest of a Governmental Unit or an Indian Landowner (as defined below) in contracts, leases, covenants, operating rights agreements, rights-of-use and easement, surface agreements and rights-of-way or other interests or agreements (a) with the federal government; (b) involving (i) federal land or minerals or (ii) lands or minerals held in trust for federally-recognized Indian tribes or Indian individuals (collectively, "<u>Indian Landowners</u>"); or (c) held by such Indian Landowners in fee with federal restriction on alienation, in each case of (a) through (c) in effect on or after the Confirmation Date (collectively, the "<u>Federal Leases</u>").

For the avoidance of doubt and without limiting the foregoing, any assignment and/or transfer of any interests in the Federal Leases will be ineffective absent the consent of the United States or the applicable Indian Landowner. Nothing in this Plan or any Plan documents created for the purposes of implementing or supplementing the Plan shall be interpreted to set cure amounts or require the United States to novate, approve or consent to any sale, assignment and/or transfer of any interests in the Federal Leases except pursuant to existing regulatory requirements and applicable law.

Moreover, nothing in this Plan or any Plan documents created for the purposes of implementing or supplementing the Plan shall be interpreted to release the Debtors or Reorganized Debtors from any reclamation, decommissioning, site clearance, and plugging and abandonment, or other operational requirement under applicable Federal Law with respect to the Federal Leases or to address or otherwise affect any decommissioning obligations and financial assurance requirements under the Federal Leases, as determined by the United States, that must be met by the Debtors, Reorganized Debtors, or their successors and assigns on the Federal Leases going forward; or to impair audit rights of the United States. In addition, notwithstanding any provision to the contrary in this Plan or any Plan documents created for the purposes of implementing or supplementing the Plan, nothing shall nullify the United States' right to assert against the Debtors and their estates or the Reorganized Debtors: any (a) decommissioning liability with respect to the Federal Leases; and/or (b) claim with respect to the Federal Leases that is nondischargeable under applicable law, including but not limited to a claim arising from the Debtors' or Reorganized Debtors' interest in any Federal Lease not assumed by the Debtors or Reorganized Debtors. Notwithstanding any provision to the contrary in this Plan or any Plan documents created for the purposes of implementing or supplementing the Plan, the United States will retain and have the right to audit and/or perform any compliance review and, if appropriate, collect from the Debtors, the Reorganized Debtors, and/or their successor(s) and assign(s) in full any additional monies owed by the Debtors or Reorganized Debtors with respect to any assumed Federal Leases without those rights being adversely affected by these Chapter 11 Cases. Such rights are preserved as if these Chapter 11 Cases had not occurred. The Debtors, the Reorganized Debtors, and their successors and assigns, will retain all defenses and/or rights, other than defenses and/or rights arising from these Chapter 11 Cases, with respect to all rights reserved to the United States or any other Governmental Unit, including the right to challenge any such determination set forth in the preceding sentence; *provided* that any such challenge, including any challenge associated with these Chapter 11 Cases, must be raised in the United States' administrative review process leading to a final agency determination by the Department of the Interior. The audit and/or compliance review period shall remain open for the full statute of limitations period established by the Federal Oil and Gas Royalty Simplification and Fairness Act of 1996, 30 U.S.C. § 1702, et seq.

## 10.5 - **Exculpation**

**Except as set forth in this Plan, neither the Debtors, the Creditors' Committee, the CRO, nor any of their agents, representatives, attorneys, accountants or advisors shall have or incur any liability in connection with, or related to formulating, negotiating, soliciting, preparing, disseminating, confirming the Plan, or any contract, instrument, release or other agreement, or document created or entered into in connection with the Plan or any other act taken or omitted to be taken in connection with the restructuring of the Debtors pursuant to the Plan during the pendency of the Debtors' Chapter 11 Cases and through the date of**

30

confirmation of the Plan; provided that the foregoing shall have no effect on the liability for a breach of the Plan or any other document, instrument, or agreement executed and delivered in connection with the Plan, or that otherwise results from any act or omission that is determined in a Final Order to have constituted gross negligence, bad faith, or willful misconduct; provided further that nothing in this Plan shall limit the liability of any retained attorney in violation of Rule 1.8(h)(1) of the Colorado Rules of Professional Conduct.  For the avoidance of a doubt, there shall be no liability limitation for the Debtors and their Insiders, for their actions or omissions occurring before the Petition Date, *or after the Confirmation Date*, or their actions or omissions after the Petition Date that are not official actions made in good faith, nor shall it release the Debtor from any obligations arising under contracts entered into on a post-petition basis.  At this time, and without waiving any rights or claims, the Debtors and the Committee are not aware of the existence of any claims that would be subject to this provisions, however, for the avoidance of a doubt, Howard Sklar is not an Exculpated Party and shall not be subject to this provision.

## 10.6 -  <u>Injunction.</u>

Except as otherwise expressly provided in the Plan or the Confirmation Order, but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims against, or Interests in, the Debtors, or who assert rights in or against the Debtors or their Property, that arose before or were held as of the Effective Date for SEC and Sklarco, along with their respective Insiders, employees, agents, officers, directors, principals or representatives are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against or affecting the Debtors, their Estates, their Assets, their Property, the Reorganized Debtors, the Creditor Trust, any Property or Assets of the Creditor Trust, the Creditor Trustee, or any of their respective successors, with respect to any such Claim or Equity Interest, (b) the enforcement, attachment, collection, levy or recovery by any manner or means of any judgment, award, decree, or order against the Debtors, their Estates, their Assets, the Property, the Reorganized Debtors, the Creditor Trust, any Property or Assets of the Creditor Trust, or the Creditor Trustee, or any of their respective successors, on account of any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, their Estates, the Assets, the Property, the Reorganized Debtors, the Creditor Trust, any Property or Assets of the Creditor Trust, or the Creditor Trustee, or any of their respective successors, on account of any such Claim or Interest; (d) asserting any right of setoff or subrogation of any kind against any obligation due from the Debtors or the Reorganized Debtors or against the property or interests in property of the Debtors or the Reorganized Debtors on account of any such Claim or Interest; (e) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; (f) taking any action to interfere with the implementation of the Plan; and (g) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan, such as commencing or continuing in any manner, any action or other proceeding of any kind with respect to any Claims and Causes of Action which are extinguished or released pursuant to the Plan; *provided*, *however*, that nothing contained herein shall preclude such Persons from exercising their rights pursuant to and consistent with the terms of the Plan; *provided further, however,*

that nothing contained herein shall preclude the Louisiana Department of Revenue from exercising its available statutory rights and remedies in accordance with applicable Louisiana Law.

### 10.7 - Preservation of Causes of Action

Except as otherwise provided in this Plan, all rights and all Causes of Action, including all tax setoff and refund rights arising under section 505 of the Bankruptcy Code, are retained, vested in the Creditor Trust and preserved pursuant to Bankruptcy Code section 1123(b). From and after the Effective Date, the Creditor Trust shall have the sole right to investigate, pursue or compromise all Causes of Action. Except as expressly provided in this Plan or the Confirmation Order, nothing contained in this Plan or the Confirmation Order shall be deemed a waiver or relinquishment of a Claim, Cause of Action, right of setoff, or other legal or equitable defense that either Debtor has that is not specifically waived or relinquished by this Plan.

### 10.8 - Compromise and Settlement of Claims, Interests, and Controversies

Without limiting the discharge and injunction provisions of the Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the Plan incorporates a good-faith compromise and settlement of Claims and controversies relating to the contractual, legal, and equitable rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest, or any distribution to be made on account of such Allowed Claim or Allowed Interest, with respect to all Holders of Claims or Interests that have consented or are deemed to have consented to such compromise and settlement. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. The date of confirmation of the Plan by a Final Order shall constitute the Challenge Termination Date, to the extent it has not otherwise occurred prior thereto, within the meaning of the Final Cash Collateral Order, and the acknowledgements and releases in favor of EWB set forth in the Final Cash Collateral Order shall be binding on all parties, including without limitation the Committee, the Creditor Trust, and the Reorganized Debtors, subject only to the treatment of the EWB Secured Claim under the Plan. For the avoidance of doubt, the preserved Causes of Action under the Plan do not include any claims or causes of action of any kind against EWB. The compromises, settlements, and releases described herein shall be deemed nonseverable from each other and from all other terms of the Plan.

### ARTICLE XI.

### MISCELLANEOUS PROVISIONS

### 11.1 - Payment of Statutory Fees.

All fees payable on or before the Effective Date pursuant to 28 U.S.C. § 1930 shall be paid by the Reorganized Debtors on or before the Effective Date and all such fees payable after the Effective Date shall be paid by the Reorganized Debtors as and when such fees become due.

11.2 - **Retention of Jurisdiction.**

Notwithstanding confirmation of the Plan, the Court shall retain jurisdiction for the following purposes:

1.  Determination of the allowability of claims upon objection to such claims by the Debtors-in-Possession or by any other party in interest, including the liquidation of Disputed Claims;

2.  Determination of the request for payment of claims entitled to priority under 11 U.S.C. Section 507(a)(2), including compensation of the parties entitled thereto;

3.  Resolution of any disputes regarding interpretation of the Plan or the Creditor Trust;

4.  Resolution of any disputes regarding the Creditor Trust Payment Obligation;

5.  Implementation of the provisions of the Plan and entry of injunctions and other orders in aid of consummation of the Plan, including without limitation, appropriate orders to protect the Reorganized Debtors from action by creditors;

6.  Modification of the Plan pursuant to 11 U.S.C. §1127;

7.  Adjudication of any Causes of Action, brought by the Creditor Trust; and

8.  Entry of a final decree.

11.3 - **Modification of the Plan.**

1.  Pre-Confirmation Modifications.

The Debtors may alter, amend, or modify the Plan before the Confirmation Date as provided in section 1127 of the Bankruptcy Code.

2.  Post-Confirmation Immaterial Modifications.

After the Confirmation Date, the Debtors or the Reorganized Debtors, as the case may be, may, with the approval of the Bankruptcy Court, without notice to all holders of Claims or Interests, insofar as it does not materially and adversely affect the Holders of Claims or Interests, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary to expedite consummation of the Plan.

3.  Post-Confirmation Material Modifications.

After the Confirmation Date, the Debtors or the Reorganized Debtors, as applicable, may alter or amend the Plan in a manner which, as determined by the Bankruptcy Court, materially and adversely affects Holders of Claims or Interests, provided that such alteration or modification is made after notice and a hearing as provided in section 1127 of the Bankruptcy Code.

33

11.4 -  **Governing Law.**

Unless a rule of law or procedure is supplied by Federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Colorado (without reference to the conflicts of laws provisions thereof) shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, unless otherwise specified.

11.5 -  **Filing or Execution of Additional Documents.**

On or before the Effective Date, the Debtors or the Reorganized Debtors, as the case may be, shall file with the Bankruptcy Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

11.6 -  **Exemption from Transfer Tax.**

Pursuant to Section 1146(a) of the Code, the issuance, transfer, or exchange of notes or equity securities under the Plan by the Debtors, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or the making or delivery of any deed or instrument of transfer under, in furtherance of, or in connection with the Plan, including without limitation, transfers made pursuant to the Monetizing Event as set forth in Section 8.8 above,  shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

11.7 -  **Dissolution of Committee**

On the Effective Date, the Committee will dissolve and the members of the Committee and the Committee's Professionals shall be deemed terminated, and the members of the Committee shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Cases, other than for purposes of filing and/or objecting to final fee applications in connection with Professional Fee Claims.

11.8 -  **Waiver of Bankruptcy Rule 3020(e) and Federal Rule of Civil Procedure 62(a).**

The Debtors may request that the Confirmation Order include (a) a finding that Bankruptcy Rule 3020(e) and Fed. R. Civ. P. 62(a) shall not apply to the Confirmation Order and (b) authorization to consummate the Plan immediately after entry of the Confirmation Order.

11.9 -  **Exhibits/Schedules.**

All exhibits and schedules to the Plan and the Plan Supplement are incorporated into and constitute a part of the Plan as if fully set forth herein.

11.10 -         **Notices.**

     All notices, requests, and demands hereunder to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

     a.     **To the Debtors at:**
     Sklar Exploration Company, LLC
     Sklarco, LLC
     c/o [Independent Manager]

     With a copy to:
     Jeffrey S. Brinen
     Keri L. Riley
     Kutner Brinen Dickey Riley, P.C.
     1660 Lincoln St., Suite 1720
     Denver, CO 80264
     Email: klr@kutnerlaw.com

     b.     **To the Committee at:**
     Christopher Johnson
     John Cornwell
     Munsch Hardt Kopf & Harr, P.C.
     700 Milam St., Suite 2700
     Houston, TX 77002
     Email: cjohnson@munsch.com
     Email: jcornwell@munsch.com

     c.     **To the Creditor Trust at:**
     [to be provided]

     d.     **To the Internal Revenue Service at:**
     Internal Revenue Service
     ATTN: S. Rivera
     1999 Broadway 5012DEN
     Denver, CO 80202-3025

     e.     **To East West Bank:**

     Attn: Stuart Bonomo
     135 N. Los Robles Ave., 6th Floor
     Pasadena, CA 91101

Attn: Mary Lou Allen
9090 Katy Freeway; 3rd Floor
Houston, TX 77024

With copy to:

Bryce A. Suzuki
Jill H. Perrella
Snell & Wilmer L.L.P.
One Arizona Center
400 E. Van Buren Street
Phoenix, AZ 85004-2202
Email:  bsuzuki@swlaw.com
Email:  jperrella@swlaw.com

    f.  To an allowed claimant, at the addresses set forth in the allowed Proof of Claim, if filed, otherwise, at the address set forth for the claimant in the Debtor's Schedules filed with the Court.

**11.11 - <u>Vacatur of Confirmation Order.</u>**

If a Final Order denying confirmation of the Plan is entered, or if the Confirmation Order is vacated, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall (a) prejudice in any manner the rights of the Debtors, (b) constitute an admission, acknowledgment, offer, or undertaking by the Debtors in any respect, including in any proceeding or case against either Debtor, or (c) be admissible in any action, proceeding or case against the Debtors in any court or other forum.

**ARTICLE XII**

**CONFIRMATION REQUEST**

12.1 - The Debtors, as proponents of the Plan, request confirmation of the Plan pursuant to 11 U.S.C. §1129.  The Debtors will solicit acceptance of the Plan after their Disclosure Statement has been approved by the Court and is transmitted to the creditors, interest holders and parties in interest.  In the event the Debtors do not obtain the necessary acceptances of its Plan, they may make application to the Court for confirmation of the Plan pursuant to 11 U.S.C. §1129(b).  The Court may confirm the Plan if it does not discriminate unfairly and is fair and equitable with respect to each class of  Claims or Interests that is impaired and has not voted to accept the Plan.

DATED: May 14, 2021

          SKLAR EXPLORATION, LLC


          By:  _/s/  James Katchadurian_____
          James Katchadurian, Chief Restructuring Officer

36

SKLARCO, LLC


By:  _/s/ James Katchadurian_____
  James Katchadurian, Chief Restructuring Officer


Jeffrey S. Brinen
Keri L. Riley
Kutner Brinen Dickey Riley, P.C.
1660 Lincoln St., Suite 1720
Denver, CO 80264
Telephone:  303- 832-2400
Email: klr@kutnerlaw.com

ATTORNEYS FOR THE DEBTORS
AND DEBTORS-IN-POSSESSION