# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br><br>Sklar Exploration Company, LLC,<br>Debtor. | Case No. 20-12377 EEB<br>Chapter 11 |
| In re:<br><br>Sklarco, LLC,<br>Debtor. | Case No. 20-12380 EEB<br>Chapter 11 |
| | **Joint Administered Under**<br>**Case No. 20-12377 EEB** |

**SUPPLEMENTAL OBJECTION OF THE RUDMAN PARTNERSHIP, CTM 2005, LTD., AND MER ENERGY, LTD. TO DEBTORS' SECOND AMENDED AND RESTATED JOINT PLAN OF REORGANIZATION**

*[Relates to Dkt. Nos. 1080, 1251]*

**NOW INTO COURT**, through undersigned counsel, comes The Rudman Partnership, CTM 2005, Ltd., and MER Energy, Ltd.. ("Respondents"), creditors and parties in interest of Sklar Exploration Company, LLC, ("SEC") in the jointly-administered bankruptcy cases (the "Cases") of SEC and Sklarco, LLC ("Sklarco", and collectively with SEC, the "Debtors"), file their Supplemental Objection to Debtors' Second Amended and Restated Plan of Reorganization [Docket No. 1080, 1251] (the "Second Amended Plan"), and respectfully represent as follows:

**Supplemental Objection**

1. Debtors filed a Plan Supplement on May 12, 2021 [Dkt. No. 1247], and their Second Amended Plan on May 14, 2021 (Dkt. No. 1251]. These filings compound rather than

remove the reasons to deny confirmation set forth in Respondents' Objection to Debtors Amended and Restated Joint Plan of Reorganization [Dkt. No. 1210].[1]

    2.      The Plan Supplement contains four documents: (A) Resignation and Transition Schedule; (B) Creditor Trust Agreement; (C) Mineral Leases Reserved to Creditors' Trust; and (D) Escrow Agreement for Equity Interests.

- The Resignation and Transition Schedule arrogates to SEC, a resigning "lame duck" Operator, who has rejected all of its JOA's and Unit Operating Agreements ("UOA's"), roles and responsibilities respecting selection of a successor Operator that are not granted or recognized in any of the relevant JOA's or UOA's. The working interest owners ("WIO's") in each prospect or unit should control this process and SEC should have no involvement. This document is designed to prop up Debtors' claim that SEC is entitled to a discharge because it is "doing business" and not being immediately liquidated.[2] At most, SEC is winding up the affairs of a liquidating business – activities insufficient to earn a Chapter 11 discharge.

- Paragraph 10 of the Resignation and Transition Schedule discloses for the first time SEC's alleged ownership of the real estate underlying the Alabama Gas Plants – property never listed or valued in any of its Schedules or the Disclosure Statement – and proposes to sell the property even though that is not even mentioned in the Second Amended Plan.

- The long awaited Creditor Trust Agreement does nothing to solve the irreconcilable conflict of interest that Mr. Kim or any other person will face in acting as Trustee of a Trust having as assets causes of action and litigation claims that one Debtor holds against the other. These causes of action have been known since the inception of this case, and include (a) substantive consolidation of Debtors (and perhaps the Sklar Trusts), which Committee counsel characterized as "an elephant in the room,"[3] as well as veil piercing remedies; and (b) fraudulent transfers from SEC to Sklarco to Howard Sklar and his trusts, which were initially concealed in Debtors' SOFA as "joint interest billings." These conflicts between the estates compel the appointment of separate trustees since it is impossible for a trustee for both estates jointly to be disinterested under the facts of this case. *See,* Fed. R. Bankr. P. 2009(d); *In re Smartt*, 132 B.R. 765 (Bankr. D. Colo. 1990).

---

[1] Respondents incorporate by reference and reallege all of the grounds for denial of confirmation alleged in their prior Objection. This Supplemental Objection was necessitated by Debtors' Second Amended Plan and Plan Supplement, which were filed <u>after</u> the April 23, 2021 deadline for filing objections to the Plan as per the Court's Order Approving Disclosure Statement and Setting Zoom Confirmation Hearing [Dkt. No. 1140].

[2] Second Amended Plan, p. 29, ¶ 10.4: "Because SEC will be operated for a limited period of time following the Effective Date to effectuate a wind down and orderly transition to a new operator, the Debtors shall receive a discharge."

[3] Transcript of hearing held March 18, 2021 on Debtors' Disclosure Statement, at p. 46, lines 13-14.

- The Creditor Trust Agreement disclaims the existence of any ongoing business to be conducted by the Trust, but the list of mineral leases reserved to the Trust suggests otherwise – bearing on the feasibility of the Second Amended Plan, how and from what source will the ongoing costs of operations of such leases be paid?

- The Escrow Agreement is Debtors' attempt at an end run around the absolute priority rule (as if having an escrow agent holding an equity security interest changes the ownership of the equity security interest) – the equity interests are still owned by the Sklar Trust and therefore the substance of the transaction must prevail over the form.

3. The Second Amended Plan adds several traps for the unwary creditor, particularly WIO's. The seemingly innocuous definition of "Revenue Party" as "working interest holders, overriding royalty interest holders, and royalty interest holders holding an interest in the wells operated by SEC on the Effective Date of the Plan,"[4] becomes sinister when used in ¶ 8.16 of the Amended Plan, which was changed to provide that only "Revenue Parties" may assert rights of recoupment against JIB's. That means if a group of WIO's replace SEC as Operator before the Effective Date, they cannot be Revenue Parties and enjoy any rights of recoupment they might have had. This unequal treatment of creditors in the same class and otherwise with the same rights, is designed to punish WIO's who choose to move expeditiously to replace SEC as Operator and does not appear to be designed to accomplish any legitimate purpose.

4. The rationale for SEC's insistence on a lengthy transition schedule without regard to the timetable chosen by WIO's who want to replace it as Operator, and the significant compensation of its COO[5] and CFO, is exposed in new language contained in ¶ 10.4 of the Second Amended Plan: stated simply, it is all designed to support a claim that SEC is entitled to a discharge because it is engaging in business, when actually it is simply winding up and

---

[4] Second Amended Plan, ¶ 1.79.
[5] In a new provision, COO Marshall Jones will be paid $192,500 per year (apparently without any requirement that he repay the $54,087.50 note he owes to SEC, as per Schedule B, line 4.1). John Strausser will be paid $185,000 per year.

liquidating a business. *See* 11 U.S.C. § 1141(d)(3); *Torrington Livestock Cattle Co. v. Berg (In re Berg)*, 423 B.R. 671, 677 (10th Cir. BAP 2010), *citing In re T-H New Orleans Ltd. P'ship*, 116 F.3d 790, 803-04 (5th Cir. 1997)("[D]ebtor that does not plan to repay creditors with post-petition earnings but rather seeks to liquidate its assets under Chapter 11 rather than under Chapter 7 should be faced with the same obstacles to discharge as a Chapter 7 debtor."). Accordingly, SEC is not entitled to a discharge.

5. The Second Amended Plan provides in ¶ 6.2(a) that the holder of each general unsecured claim "will receive a beneficial interest in the Creditors' Trust <u>in exchange for their claims</u>." (underscoring supplied). This language raises many questions:

- What is meant by an "exchange" of a claim for a beneficial interest?
- Is it intended as a like kind exchange?
- Is it a sale?
- Is it a gift?
- Is it a release or transfer of the claim?
- Who owns the claim after the "exchange"?
- Is it a taxable event?
- How is the quantum of beneficial interest calculated?

Absent clarity on these issues the Second Amended Plan fails to demonstrate that "each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim." 11 U.S.C. § 1129(b)(2)(B)(i).

## Prayer

Respondents respectfully request that this Court enter an order denying confirmation of Debtors' Second Amended and Restated Joint Plan of Reorganization.

Dated this 24th day of May, 2021.

        Respectfully submitted,

        **Maynes, Bradford, Shipps & Sheftel, LLP**

        */s/ Thomas H. Shipps*
        Thomas H. Shipps
        */s/ Shay L. Denning*
        Shay L. Denning
        Maynes, Bradford, Shipps & Sheftel, LLP
        835 E. Second Ave., Suite 123
        Durango, CO  81301
        Telephone: (970) 247-1755
        Facsimile: (970) 247-8827
        Email: tshipps@mbssllp.com;
                sdenning@mbssllp.com

        and

        */s/ Barnet B. Skelton, Jr.*
        Barnet B. Skelton, Jr.
        Attorney at Law
        815 Walker, Suite 1502
        Houston, TX  77002
        Telephone: (713) 516-7450
        Facsimile: (713)659-8764
        Email: barnetbjr@msn.com

        Counsel for Respondents

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on May 24, 2021, the foregoing instrument was electronically filed and served via CM/ECF pursuant to L.B.R. 9036-1. All attorneys and parties identified with the Court for electronic service on the record in this case were served by electronic service in accordance with the CM/ECF system on the date of filing.

/s/ *Barnet B. Skelton, Jr.*
Barnet B. Skelton, Jr.