# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br>Sklar Exploration Company, LLC,<br>Debtor. | Case No. 20-12377 EEB<br>Chapter 11 |
| In re:<br>Sklarco, LLC,<br>Debtor. | Case No. 20-12380 EEB<br>Chapter 11 |
| | **Joint Administered Under**<br>**Case No. 20-12377 EEB** |

### *EX PARTE* MOTION FOR EXAMINATION OF HOWARD SKLAR, INDIVIDUALLY AND AS TRUSTEE AND EXECUTOR, PURSUANT TO FED. R. BANKR. P. 2004 AND LOCAL BANKR. R. 2004-1

**NOW INTO COURT**, through undersigned counsel, comes, The Rudman Partnership, MER Energy, LLC and CTM 2005, Ltd. ("Movants"), creditors and parties in interest of Sklar Exploration Company, LLC, ("SEC") in the jointly-administered bankruptcy cases (the "Cases") of SEC and Sklarco, LLC ("Sklarco", and collectively with SEC, the "Debtors"), who file this *Ex Parte Motion for Examination of Howard Sklar, individually and as Trustee of the Howard Trust, Adam Grantor Trust, Jacob Grantor Trust and Sam Grantor Trust (the foregoing trusts shall be referred to as the "Sklar Trusts"), and as Executor ("Executor") of the Succession of Miriam Mandel Sklar, Deceased ("Miram Sklar's Succession"), Pursuant to Fed. R. Bankr. P. 2004 and Local Bankr. R. 2004-1* (the "2004 Motion"), and respectfully request entry of an order authorizing Movants to examine Howard Sklar, individually and as Trustee and as Executor regarding the income, expenses, assets, liabilities, financial affairs, as well as the pre-petition and

1

post-petition operations, accounting methods, intercompany transactions, transfers and transactions of Debtors, including but not limited to those involving or related to the Sklar Trusts and Miriam Sklar's Succession, as well as Miriam Sklar, LC, and the Judy Trust for Maren Silberstein.

## BACKGROUND

1. On April 1, 2020, each of the Debtors filed a voluntary petition under Chapter 11 of the Bankruptcy Code with this Court, and by order of this Court, their corresponding bankruptcy Cases are jointly administered under Chapter 11 Case No. 20-12377. [Doc. No. 8].

2. Movants are creditors and own non-operating working interests located in Conecuh and Escambia Counties, Alabama, and/or in the State of Mississippi.

3. There appears to be an agency relationship between Sklarco and SEC, and various Sklar family members, trusts and a Louisiana "succession" (presumably a decedent's estate) pursuant to that certain Agency Services Agreement dated May 1, 2010, as amended by the First Amendment to Agency Services Agreement dated August 31, 2015 (together, the "ASA").[1] Sklarco is authorized as Agent for the Principals to "acquire, hold, develop, maintain and manage various properties on behalf of each such Principal, including, but not limited to, the development, maintenance and management of various oil and gas properties. . . . " Agency Services Agreement § 1.1.

4. During the confirmation hearing held on May 28, 2021, Debtors' counsel also made statements on the record concerning the possibility that certain oil and gas assets held in the name of Sklarco are owned by a trust for Maren Silberstein or another Sklar family Estate.

---

[1] The "Principals" named in the Agency Services Agreement are Howard Sklar (a) as Manager of Miriam Sklar, L.C.; (b) as Trustee of the Howard Trust; (c) as Trustee of the Alan Trust; (d) as Trustee of the Sam Trust; (e) as Independent Executor of the Succession of Miriam Mandel Sklar; and (f) as Trustee of the Jacob Grantor Trust.

2

5.      The ASA was not listed in the original Schedule G as an executory contract, nor did the SOFA of either Debtor disclose what the ASA unambiguously provides: that Sklarco holds title to oil and gas properties for the benefit of the Howard Trust, the Alan Trust, and the Jacob Trust (which collectively received over $2.8 million from the Debtors in the year prior to the Petition Date), and the Estate of Miriam Mandel Sklar. Debtors' counsel finally disclosed the ASA in the Amended Sklarco Schedule G only after the undersigned counsel noted that deficiency.

6.      Debtors subsequently admitted that they <u>do</u> hold money and property allegedly owned by the Trusts:

> In addition, Sklarco was also entitled to receive the revenue that was allocable to the Howard Trust, Jacob Sklar Trust and Alan Sklar Trust with respect to the actual WIs that such entities own, and such funds were frequently allowed to be held by SEC for operations. In essence, SEC had access to funds owned by Sklarco, the Howard Trust, the Jacob Trust and the Alan Trust to pay its expenses which included the expenses for which cash call advances were requested.

Debtors' Objection to Appointment of Chapter 11 Trustee, ¶ 26 [Docket No. 376] (emphasis added).[2]

7.      Moreover, Debtors' 2018 audited financial statements disclose the reality that Debtors chose to conceal from their Schedules and SOFA's:

> <u>Principles of Consolidation</u>
>
> The accompanying combined and consolidated financial statements include the accounts of Sklar Exploration Company, LLC; Sklarco, LLC; Sklar Transport Company, LLC; Howard Grantor Trust; Jacob Grantor Trust; and Alan Grantor Trust, <u>which collectively operate as the Sklar Exploration Company, LLC</u>. All intercompany accounts and transactions have been eliminated in consolidation.

---

[2] If Sklarco or SEC holds oil and gas related property, working interests, or revenues for the trusts, that fact should have been disclosed in the SOFA's for each Debtor in answer to question 21. But instead, only interests of the trusts in various entities that are unrelated to any oil and gas interests or proceeds are listed.

3

SEC Combined and Consolidated Financial Statements and Independent Auditors' Report, December 31, 2018 and 2017 at 8 (emphasis added) ("SEC Audit").

8. The SEC Audit also disclosed monthly payments from two of the trusts:

> The Company charges the Judy Trust FBO Maren Silberstein a monthly fee of $15,000 for management services related to oil and gas assets owned by the trust. Judy Sklar Silberstein is the deceased sister of Howard Sklar. The Company charges the Succession of Miriam Mandel Sklar a monthly fee of $30,000 for management services related to oil and gas assets owned by the trust.

*Id.* at 23. There is no indication in any of Debtors' filings, including the cash collateral budgets, that fees of $45,000 per month are being charged or received by Debtors.

9. The Motion to Assume and Amend raises more questions than it answers. It asserts that "as asset values have declined, income generated by the Maren Silberstein Trust and the Succession of Miriam Mandel Sklar ("SMMS") is no longer sufficient to cover the management fee due under the Second ASA." Motion to Assume and Amend, ¶ 11. But there is no showing of what assets are being referred to, the amount of the decline over what period of time, and what management fee is due. Indeed, Respondents are unaware of any management fee under the ASA being paid to Debtors during the pendency of this case. But the Motion to Assume and Amend seeks to bring any such payments to a stop except as to accrued indebtedness owed by the Sklar Trusts and SMMS, the amount of which is not stated.

10. The Motion to Assume and Amend further asserts that "[p]ost-petition, questions have arisen as to ownership of certain assets, including, without limitation certain non-oil and gas assets," but does not disclose who raised the questions, the substance of the questions, and which assets the questions related to. The proposed amendment does nothing to answer those questions. Motion to Assume and Amend, ¶12.

11. The Motion to Assume and Amend concludes with a thinly veiled threat that litigation may ensue, presumably with the Sklar Trusts and SMMS if the Motion to Assume and Amend is not granted:

> If the Second ASA is not assumed, or the Amendment is not approved, the Debtors would likely have to file a declaratory judgment action to determine the rights of the parties under the Second ASA and the effect of the termination provisions, or otherwise seek a determination as to the ownership of the assets held by Sklarco.

Motion to Assume and Amend, ¶ 19. Implicit in this threat is that, unless the Plan is confirmed, the Sklar Trusts and SMMS are not going to cooperate with the Debtors and will take such actions as they see fit with respect to the assets subject to the ASA. Further, it suggests that there is a real question as to whether Sklarco will continue to assert ownership of the assets it purports to own.

12. Accordingly, Movants request authority to examine Howard Sklar, individually and as Trustee and Executor regarding the following matters and any documents and communications relating to such matters:

    a. The documents described on Exhibit A attached hereto, including the identity of the custodians of such documents and records.

    b. The assets, including interests in oil, gas and minerals, held by or in the name of Sklarco or SEC as agent for:

        (i) Alan Grantor Trust
        (ii) Jacob Grantor Trust
        (iii) Sam Grantor Trust
        (iv) Howard Trust
        (v) Howard F. Sklar
        (vi) Estate of Miriam Mandel Sklar
        (vii) Miriam Sklar, LC
        (viii) Estate of Judy Silberstein
        (ix) Judy Trust for Maren Silberstein

    c. The assets, including interests in oil, gas and minerals, held by or in the name of Sklarco or SEC under the terms of the ASA for the benefit of the Principals named therein.

    d. The assets, including interests in oil, gas and minerals, held by or in the name of

5

Sklarco or SEC as to which Sklarco or SEC own only legal title and one or more of the parties listed in item 1.(i)-(ix) own beneficial title.

  e. The assets, including interests in oil, gas and minerals, held by or in the name of Sklarco or SEC for the benefit of the parties listed in item b.(i)-(ix) <u>that are not held as agent or otherwise pursuant to the ASA</u>.

  f. The assets, including interests in oil, gas and minerals, held by or in the name of Sklarco or SEC that are neither held for the benefit of the parties listed in item b.(i)-(ix) nor subject to the terms of the ASA, and as to which Sklarco or SEC owns both legal and beneficial title.

  g. The debts owed by the parties listed in item b.(i)-(ix) to (a) Sklarco and (b) SEC.

  h. The debts owed to the parties listed in item b.(i)-(ix) by (a) Sklarco and (b) SEC.

  i. The books and records of account of the parties listed in item b.(i)-(ix) since January 1, 2015.

  j. The tax returns of the parties listed in item b.(i)-(ix) filed for the tax years from 2015 to the present.

  k. The financial statements, including those made on a consolidated basis, of the parties listed in item b.(i)-(ix) since January 1, 2015.

  l. Any disputes, controversies, or claims asserted between either of Debtors and any of the parties listed in item b.(i)-(ix) since January 1, 2015, concerning ownership of assets or amounts owed between each other.

  m. The ownership and value of the assets listed in Section 7.2 of the Plan and any disputes between the parties listed in item b.(i)-(ix) and either of the Debtors concerning ownership of such assets.

  n. the ownership and value of the tracts underlying the Abbyville and North Beach Gas Plants and the beneficial ownership of such tracts, if any, by any of the parties listed in item 1.(i)-(ix).

  o. All communications between Debtors and the parties listed in item b.(i)-(ix) concerning (a) ownership of any assets; (b) the existence and amount of any debts or claims between such parties.

Further, in conjunction with such examination of Debtors, Movants request leave to serve a request

for documents substantially in the form attached hereto as Exhibit "A."

**BASIS FOR RELIEF**

13. Federal Rule of Bankruptcy Procedure 2004 and Local Rule of Bankruptcy Procedure 2004-1 permit the examination of any entity with respect to "discovering assets examining transactions, and determining whether wrongdoing has occurred." Fed. R. Bankr. P. 2004; L.R.B.P. 2004-1. "The purpose of a Rule 2004 examination is to determine the condition, extent, and location of the debtor's estate in order to maximize distribution to unsecured creditors." *In re Lufkin*, 255 B.R. 204, 208 (Bankr. E.D. Tenn. 2000).

14. A party in interest therefore "may use Rule 2004 to determine the nature and extent of a bankruptcy estate and to ascertain whether wrongdoing has occurred." *In re Hilsen*, 2008 WL 2945996, at *4 (Bankr. S.D.N.Y. Jul. 25, 2008); *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) ("The purpose of a Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred."). "Any third party who has a relationship with a debtor may be made subject to a Rule 2004 investigation." *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004).

15. The scope of a Rule 2004 examination is "extremely broad," and has even been likened by some courts to a "lawful 'fishing expedition.'" *Id*. (*quoting Bank One, Columbus, N.A. v. Hammond (In re Hammond)*, 140 B.R. 197, 201 (S.D. Ohio 1992)). "The scope of a [ ] Rule 2004 examination is 'unfettered and broad.' Its purpose is to facilitate the discovery of assets and the unearthing of frauds and has been likened to a quick 'fishing expedition' into general matters and issues regarding the administration of the bankruptcy case." *In re Bakalis*, 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996) (quoting *In re GHR Energy Corp.*, 33 B.R. 451, 453 (Bankr. D. Mass. 1983). The standard for granting a Rule 2004 examination is whether the movant has established

7

"good cause." *In re Hammond*, 140 B.R. 197, 201 (S.D. Ohio 1992).

16. Rule 2004 examinations are an appropriate tool for investigating fraudulent transfer claims in particular. *See Rhodes v. Litig. Trust of the Rhodes Cos., LLC (In re Rhodes Cos., LLC)*, 475 B.R. 733 (D. Nev. 2012) ("the subpoenas were an appropriate method of investigating potential fraudulent transfer claims"); *Kirschner v. Agoglia (In re Refco Inc.)*, 461 B.R. 181, 187 (Bankr. S.D.N.Y. 2011) (listing rule 2004 as one of the "several sections of the Bankruptcy Code [that] govern the trustee or debtor in possession's unique role in investigating … fraudulent transfer claims ….").

## **PRAYER**

Movants respectfully request that this Court enter an order authorizing the examination of Debtors on the issues raised herein and related to this case and the production of documents described in Exhibit "A."

Dated this 2nd day of June, 2021.

Respectfully submitted,

**Maynes, Bradford, Shipps & Sheftel, LLP**

*/s/ Thomas H. Shipps*
Thomas H. Shipps
*/s/ Shay L. Denning*
Shay L. Denning
Maynes, Bradford, Shipps & Sheftel, LLP
835 E. Second Ave., Suite 123
Durango, CO  81301
Telephone: (970) 247-1755
Facsimile: (970) 247-8827
Email: tshipps@mbssllp.com;
 sdenning@mbssllp.com

8

and

*/s/ Barnet B. Skelton, Jr.*
Barnet B. Skelton, Jr.
Attorney at Law
815 Walker, Suite 1502
Houston, TX 77002
Telephone: (713) 516-7450
Facsimile: (713)659-8764
Email: barnetbjr@msn.com

Counsel for Movants

## CERTIFICATE OF CONFERENCE

The undersigned certifies that on June 1, 2021, Adam Hirsch confirmed by email that he has authority to accept service on behalf of:

Howard Sklar individually
Howard Trust
Alan Grantor Trust
Jacob Grantor Trust
Succession of Miriam Mandel Sklar

/s/ *Barnet B. Skelton, Jr.*
Barnet B. Skelton, Jr.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on June 2, 2021, the foregoing instrument was electronically filed and served via CM/ECF pursuant to L.B.R. 9036-1. All attorneys and parties identified with the Court for electronic service on the record in this case were served by electronic service in accordance with the CM/ECF system on the date of filing, and by email to Adam Hirsch at Hirsch, Adam Adam.Hirsch@dgslaw.com and by US Mail to Howard F. Sklar, individually and as Trustee of the Sam Grantor Trust, 5395 Pearl Parkway, Suite 200, Boulder, Colorado 80301.

/s/ *Barnet B. Skelton, Jr.*
Barnet B. Skelton, Jr.

9

# EXHIBIT "A"

## DOCUMENTS TO BE PRODUCED

1. Documents stating, depicting or describing the assets, including interests in oil, gas and minerals, held by or in the name of Sklarco or SEC as agent for:

    (i) Alan Grantor Trust
    (ii) Jacob Grantor Trust
    (iii) Sam Grantor Trust
    (iv) Howard Trust
    (v) Howard F. Sklar
    (vi) Estate of Miriam Mandel Sklar
    (vii) Miriam Sklar, LC
    (viii) Estate of Judy Silberstein
    (ix) Judy Trust for Maren Silberstein

2. Documents stating, depicting or describing the assets, including interests in oil, gas and minerals, held by or in the name of Sklarco or SEC as to which Sklarco or SEC own only legal title and one or more of the parties listed in item 1.(i)-(ix) own beneficial title.

3. Documents stating, depicting or describing the assets, including interests in oil, gas and minerals, held by or in the name of Sklarco or SEC under the terms of the ASA for the benefit of the Principals named in the ASA.

4. Documents stating, depicting or describing the assets, including interests in oil, gas and minerals, held by or in the name of Sklarco or SEC for the benefit of the parties listed in item 1.(i)-(ix) <u>that are not held as agent or otherwise on behalf of the Principals named in the ASA</u>.

5. Documents stating, depicting or describing the assets, including interests in oil, gas and minerals, held by or in the name of Sklarco or SEC that are neither held for the benefit of the parties listed in item 1.(i)-(ix) nor subject to the terms of the ASA, and as to which Sklarco or SEC owns both legal and beneficial title.

6. Documents stating, depicting or describing the debts owed by the parties listed in item 1.(i)-(ix) to (a) Sklarco and (b) SEC.

7. Documents stating, depicting or describing the debts owed to the parties listed in item 1.(i)-(ix) by (a) Sklarco and (b) SEC.

8. Documents stating, depicting or describing the books and records of account of the parties listed in item 1.(i)-(ix) since January 1, 2015.

9. The tax returns of the parties listed in item 1.(i)-(ix) filed for the tax years from 2015 to the present.

10. The financial statements, including those made on a consolidated basis, of the parties listed in item 1.(i)-(ix) 1.(i)-(ix) since January 1, 2015.

11. Documents stating, depicting or describing any disputes, controversies, or claims asserted between either of Debtors and any of the parties listed in item 1.(i)-(ix) since January 1, 2015, concerning ownership of assets or amounts owed between each other.

12. Documents stating, depicting or describing The ownership and value of the assets listed in Section 7.2 of the Plan and any disputes between the parties listed in item 1.(i)-(ix) and either of the Debtors concerning ownership of such assets.

13. Documents stating, depicting or describing the ownership and value of the tracts underlying the Abbyville and North Beach Gas Plants and the beneficial ownership of such tracts, if any, by any of the parties listed in item 1.(i)-(ix).

14. All communications between Debtors and the parties listed in item 1.(i)-(ix) or among the parties listed in listed in item 1.(i)-(ix) concerning (a) ownership of any assets; and (b) the existence and amount of any debts or claims between such parties.