## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: | ) |
| | ) |
| SKLAR EXPLORATION COMPANY, LLC | ) Case No. 20-12377-EEB |
| EIN: 72-1417930 | ) |
| | ) Chapter 11 |
| Debtor-in-Possession. | ) |
| | ) |
| | ) |
| IN RE: | ) |
| | ) |
| SKLARCO, LLC | ) Case No. 20-12380-EEB |
| EIN: 72-1425432 | ) |
| | ) Chapter 11 |
| | ) |
| | ) |
| Debtor-in-Possession. | ) |
| | ) |

---

### *AD HOC* COMMITTEE OF WORKING INTEREST OWNERS' *EX PARTE* MOTION FOR A RULE 2004 EXAM OF HOWARD SKLAR INDIVIDUALLY AND IN ANY CAPACITY THAT HE IS INVOLVED WITH THE DEBTORS

**COMES NOW**, the *Ad Hoc* Committee of Working Interest Owners of Debtors Sklar Exploration Company, LLC, and Sklarco, LLC (the "***Ad Hoc* Committee**"), by and through their undersigned counsel, for their *Ex Parte* Motion (the "**Motion**") for a Rule 2004 Exam of Howard Sklar individually and in any capacity that he is involved with the Debtors.  In support of the Motion, the *Ad Hoc* Committee states as follows:

### Jurisdiction and Venue

1. This Court has jurisdiction over these Chapter 11 cases pursuant to 28 U.S.C. §§ 157(a) and (b), and 1334(a) and (b). This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) as this matter concerns the administration of the Debtor's estate.  The rule-based

predicate for relief in this Motion is Rule 2004 of the Bankruptcy Rules and L.B.R. 2014-1.  Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

**Background**

**A.      Background Regarding the *Ad Hoc* Committee's Interests.**

2.      The members of the *Ad Hoc* Committee are identified in the *Supplemental Verified Statement Pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure*.  (Docket No. 721).

3.      Each of the members of the *Ad Hoc* Committee own working interests in both the Southwest Brooklyn Oil Unit and the Southeast Brooklyn Oil Unit (collectively, the "**Brooklyn Oil Unit**"). Debtor Sklar Exploration Company, LLC ("**SEC**") is the operator for the assets located within the Brooklyn Oil Unit. Individual members of the *Ad Hoc* Committee also own working interests in other properties in which the operations are governed by operating agreements and unit operating agreements that have been rejected by SEC.

4.      Debtor Sklarco, LLC ("**SKC**"), holds a working interest in the Brooklyn Oil Unit and in other properties in which the operations are governed by operating agreements and unit operating agreements that have been rejected by SEC.

**B.      Background Regarding these Bankruptcy Cases.**

5.      On April 1, 2020 (the "**Petition Date**"), the Debtors commenced these Chapter 11 cases when they filed their voluntary petitions.  (Docket No. 1).

6.      On June 15, 2020, the Court entered its Order Granting Debtors' Motion for Entry of Order Authorizing Debtors' Employment of CR3 Partners as Chief Restructuring Officer (Docket No. 429) (the "**CRO Order**").  As set forth in the CRO Order,

> Howard   Sklar—the   Debtors'   current   Manager,   Manager-Chairman, Chairman/Chief Executive Officer—shall have no decision-making authority for

2

the Debtors and shall have limited participation in the management of the Debtors or their business affairs, such as providing information and cooperation as reasonably directed by CR3, and advising in the operation of the wells.

(Docket No. 429 at ¶ 3(b)).

7.      On April 20, 2021, the Court entered its Order approving the *Stipulation to Relief From Stay to Proceed with the Transition of Successor Operator for the Brooklyn Oil Units* (the "**Stipulation**").  (*See* Docket Nos. 1190 and 1195).  The purpose of the Stipulation is to facilitate a transition of operations over the Brooklyn Oil Unit to other successor operators, in accordance with the Unit Operating Agreements, since SEC has rejected the unit operating agreements governing the Brooklyn Oil Unit and has stated its intention to resign its position as operator.  The Unit Operating Agreements governing the Brooklyn Oil Unit require that, upon resignation by an existing operator, that the working interest owners therein elect a new successor operator.

8.      To facilitate a transition to a future successor operator, the Stipulation required that "[u]pon entry of an order approving this Stipulation, SEC shall make a data room [] pertaining to the Brooklyn Oil Units accessible."  (Docket No. 1190 at ¶ 2).  The Stipulation also required that the Debtors populate the data room with the materials identified on Exhibit 1 thereto.  The purpose of the data room is to allow future successor operators to conduct due diligence as to whether they want to become the successor operator of the Brooklyn Oil Unit.

9.      On May 18, 2021, twenty-eight (28) days after entry of the order approving the Stipulation, the Debtors opened up the data room required by the Stipulation for potential successor operators.  The documents and materials initially populated into the data room were woefully deficient and did not contain the complete items identified on Exhibit 1 to the Stipulation.

10.     On May 28, 2021, the Court held a hearing (the "**Confirmation Hearing**") on confirmation of *the Debtors' Second Amended and Restated Joint Plan of Reorganization Dated December 18, 2020* (Docket No. 1251).

11.     Prior to the Confirmation Hearing, the *Ad Hoc* Committee learned from the Debtors' Chief Restructuring Officer that certain employees of the Debtors, including their Chief Operating Officer Mr. Marshall Jones, were unwilling to communicate and cooperate with certain members of the *Ad Hoc* Committee regarding facilitating a transition of the operations of the Brooklyn Oil Unit pursuant to the Stipulation.  Since the Confirmation Hearing, some of the Debtors' employees have begun to communicate with the *Ad Hoc* Committee regarding the transition.

12.     At the Confirmation Hearing, the Debtors represented that only two parties had been granted access to the data room for the Brooklyn Oil Units notwithstanding the data room itself shows that there are at least three (3) parties who have been granted access thereto and are interested in becoming successor operator of the Brooklyn Oil Unit: (a) Pruet Production Co., (b) Brammer Engineering, Inc. ("**Brammer**"), and (c) Fletcher Petroleum ("**Fletcher**").

13.     On June 1, 2021, the Ad Hoc Committee filed its *Ex Parte Motion for a Rule 2004 Exam of Debtors' Chief Operating Officer Marshall Jones* (Docket No. 1277) (the "**Marshall 2004**").  The Marshall 2004 sought documents regarding Mr. Jones' communications with Fletcher and Brammer regarding the transition of operations of the Brooklyn Oil Unit.

14.     In connection with the Marshall 2004, the *Ad Hoc* Committee received documents from the Debtors indicating that Mr. Jones had been engaged in substantive communications with Fletcher regarding, *inter alia*, Mr. Jones, Howard Sklar, SEC and Fletcher pursuing a joint venture regarding future operations which would keep Mr. Sklar and SEC involved in the joint venture.

Furthermore, in May of 2021, *i.e.*, during the middle of the creation of the data rooms for transitioning operations over the Brooklyn Oil Unit, Fletcher had been communicating with SEC, Mr. Jones and Mr. Sklar regarding their purported interest in keeping "Sklar with a voice in making the decisions" if Fletcher were to take over operations in the Brooklyn Oil Unit. *See* Ex. 1 of Group Emails.  Interestingly, Fletcher had communicated, at least once, with Mr. Sklar at his "Howard G-Mail" email account.  (*See* Ex. 1).

15.     After receiving the above emails, the *Ad Hoc* Committee confronted counsel for the Debtors regarding the improprieties of the communications between the Debtors and Fletcher as it related to the election of a successor operator over not only the Brooklyn Oil Unit but every other unit for which SEC is to be replaced as successor operator. The concerns of transparency, integrity and a free flow of information were expressly highlighted in the Marshall 2004:

> The free flow of information regarding SEC's operations over the Brooklyn Oil Unit is critically important to ensuring an efficient and effective transition of operations to a successor operator.  An inefficient transition undoubtedly impacts the value of the working interest in the Brooklyn Oil Unit.  Furthermore, SEC, as the outgoing operator over the Brooklyn Oil Unit, must ensure that the election of a successor operator is fair, transparent and that all information is being shared equally among all interested parties who desire to be elected as successor operators. As suggested by the Court, to the extent certain employees of the Debtors are unwilling to communicate with the *Ad Hoc* Committee, then such communication may be compelled through Rule 2004.

(Docket No. 1277 at ¶ 13).

16.     On July 2, 2021, the Debtors filed their *Status Report Regarding Personnel Matters at Sklar Exploration Company, LLC* (Docket No. 1328) (the "**Status Report**").  Although the Status Report suggests that Mr. Jones did not have "substantive discussions" with Fletcher, the Debtors have nevertheless terminated Mr. Jones' employment.  (Docket No. 1328 at ¶¶ 5 and 7). The Status Report further failed to address the existence or substance of the email attached as Exhibit 1.

**Relief Requested**

17.     Pursuant to Rule 2004 of the Bankruptcy Rules, good cause exists for the *Ad Hoc* Committee to request and obtain specific documents from the Debtors and Howard Sklar as set forth on Exhibit 2 hereto and testimony from Mr. Howard Sklar relating to the topics set forth on Exhibit 2 in order to take a Rule 2004 Exam.  Pursuant to L.B.R. 2014-1(b), the *Ad Hoc* Committee requests that the Court order the production of documents to be made be received be no later than the date that is fourteen (14) days after service following entry of an order granting this Motion.

**Argument**

18.     Rule 2004(a) states that "[o]n motion of any party in interest, the court may order the examination of any entity."  The discovery requested by the *Ad Hoc* Committee is well within the scope of examination permitted under Bankruptcy Rule 2004, which includes:

> **the acts, conduct, or property** or . . . the liabilities and financial condition of the debtor, or . . . **any matter which may affect the administration of the debtor's estate**, or to the debtor's right to a discharge. In a . . . reorganization case under chapter 11 of the Code, . . . the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan.

Fed. R. Bankr. P. 2004(b) (Scope of Examination) (emphasis added).

19.     Rule 2004 "is a basic discovery device used in bankruptcy cases." *In re Blinder, Robinson & Co., Inc.*, 127 B.R. 267, 275 (D. Colo. 1991).  Rule 2004 permits the party invoking it to undertake a broad inquiry of the examinee and has been likened to a "fishing expedition," although its use is not unlimited. *See Blinder*, 127 B.R. at 274; *see also In re Valley Forge Plaza Assoc.*, 109 B.R. 669, 674 (E.D. Pa. 1990) ("The scope of a [Rule] 2004 examination is even

broader than that of discovery permitted under the F.R.CIV.P., which themselves contemplate broad, easy access to discovery.").

20.     "The purpose of a Rule 2004 examination is 'to show the condition of the estate and to enable the Court to discover its extent and its whereabouts, and to come into possession of it, that the rights of the creditor may be preserved.'" *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (quoting *Cameron v. United States*, 231 U.S. 710, 717 (1914)). The scope of inquiry permitted in a Rule 2004 examination is extremely broad. *See, e.g., In re Bakalis*, 199 B.R. 443, 447 (Bankr. E.D.N.Y.); *In re Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985).

21.     Here, good cause exists for the production of documents from the Debtors and Howard Sklar—in all of his capacities—in order to ensure a smooth transition to a new successor operator in the Brooklyn Oil Unit.  Upon information and belief, especially after reviewing the emails produced under the Marshall 2004 and the fact that Mr. Jones has now been terminated after confrontation with the emails, the *Ad Hoc* Committee believes that Mr. Sklar may have similarly been involved in substantive dialogue with Fletcher, Brammer or other potential operators.  The *Ad Hoc* Committee is further deeply concerned that Mr. Sklar had been receiving communications, regarding the transition of the Brooklyn Oil Unit, along with other business of the Debtors, at his G-Mail account.  Accordingly, the Ad Hoc Committee seeks documents from all email addresses and accounts used by, or under the control of, Mr. Sklar.

22.     Mr. Sklar's involvement with the transition process is concerning on another level. As set forth in the CRO Order, Mr. Sklar was required to have "limited participation in the management of the Debtors or their business affairs, such as providing information and cooperation as reasonably directed by CR3, and advising in the operation of the wells."  The emails received to date from the Marshall 2004, demonstrate a deeper level of involvement from Mr.

Sklar than permitted under the CRO Order.  If Mr. Sklar is supposed to be involved with the Debtors on a limited basis, but, is receiving emails at a G-Mail account, it is uncertain in what capacity he is acting in with regard to the Debtors.  Accordingly, the *Ad Hoc* Committee requests documents from Mr. Sklar in not only his individual capacity, but, also, any capacity he is acting in with regard to the Debtors.

23.     It is imperative that the election for a new successor operator be fair among ***all*** potential successor operators.  To the extent Mr. Sklar has been sharing information, either orally or through informal sharing of documents, with some but not all potential successors the integrity of the forthcoming elections has been compromised.  Additionally, to the extent there have been any understandings, promises, or other agreements between Mr. Sklar and any potential successor regarding offers of future employment or other consideration such information is material to the integrity of the transition process.   The *Ad Hoc* Committee members each hold working interests in the Brooklyn Oil Unit and in other oil and gas properties in which the operating agreement or unit operating agreement have been rejected, and must be assured that the transition occurs smoothly, efficiently and that the future elections among successor operators is fair and not compromised.  *See In re Hammond*, 140 B.R. 197, 201 (S.D. Ohio 1992) ("Good cause is established if the one seeking the Rule 2004 examination has shown that such an examination is reasonably necessary for the protection of its legitimate interests.").  Accordingly, for the reasons set forth herein, the *Ad Hoc* Committee respectfully requests that this Court enter an order authorizing the production of documents identified in Exhibit 2 on no less than fourteen (14) days' notice as permitted under L.B.R. 2014-1(b) and that it be permitted to examine Mr. Sklar under oath regarding his involvement, on behalf of the Debtors, in connection with the transition of operations.

**Reservation of Rights**

The *Ad Hoc* Committee reserves the right to conduct further discovery in these Chapter 11 cases from of any other creditor, party in interest, or insider at any time in connection with this Bankruptcy Case, any proceeding or contested matter in this Bankruptcy Case, or any other case or proceeding in a court of competent jurisdiction.

**Conclusion**

WHEREFORE, the *Ad Hoc* Committee respectfully requests that the Court enter an order granting the Motion which authorizes the *Ad Hoc* Committee to request and obtain specific documents from the Debtor and Howard Sklar as set forth on <u>Exhibit 2</u> hereto and to examine Mr. Sklar regarding the topics identified on <u>Exhibit 2</u>, and for all such other and further relief this Court deems fair and equitable under the circumstances.

Dated: July 6, 2021.                Respectfully submitted,

*AD HOC* **COMMITTEE OF WORKING INTEREST HOLDERS OF SKLAR EXPLORATION COMPANY, LLC, AND SKLARCO, LLC**

By: */s/Timothy M. Swanson*
Timothy M. Swanson (Colorado No. 47267)
Moye White LLP
1400 16th Street
6th Floor
Denver, Colorado 80202-1486
Tel: (303) 292-2900
Fax: (303) 292 4510
Tim.Swanson@moyewhite.com
*Counsel to the Ad Hoc Committee of Working Interest Holders of Sklar Exploration Company, LLC, and Sklarco, LLC*

--and--

Craig M. Geno
Law Offices of Craig M. Geno, PLLC
587 Highland Colony Parkway
Ridgeland, Mississippi 39157
Tel: (601) 427-0048
Fax: (601) 427-0050
cmgeno@cmgenolaw.com
*Counsel to the Ad Hoc Committee of Working Interest Holders of Sklar Exploration Company, LLC, and Sklarco, LLC*

4820-4238-2577.2

## Certificate of Service

I hereby certify that on this 6th day of July 2021, I caused the foregoing ***Ad Hoc Committee of Working Interest Owners' Ex Parte Motion for a Rule 2004 Exam of Howard Sklar Individually and in any Capacity that he is Involved with the Debtors*** to be served *via* CM/ECF to all parties that have filed electronic appearances and requested service in this case.

*s/Timothy M. Swanson*
Timothy M. Swanson

11