UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC | ) | |
| EIN: 72-1417930 | ) | Chapter 11 |
| | ) | |
|   Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | Case No. 20-12380-EEB |
| SKLARCO, LLC | ) | |
| EIN:  72-1425432 | ) | Chapter 11 |
|   Debtor. | ) | |

**BRIEF IN SUPPORT OF CONFIRMATION OF SECOND AMENDED AND RESTATED
JOINT PLAN OF REORGANIZATION**

The Debtors and Debtors in Possession, Sklar Exploration Company, LLC ("SEC") and Sklarco, LLC ("Sklarco" and collectively "Debtors"), and the Official Committee of Unsecured Creditors ("Committee"), by and through their undersigned attorneys, state their brief in support of confirmation of the Second Amended and Restated Plan of Reorganization ("Plan") as follows:

## INTRODUCTION

1.      The Plan, and the numerous settlements embodied therein, is the product of the parties' extended settlement efforts, including a lengthy mediation, and is intended to provide significant benefit to unsecured creditors over liquidation and protracted litigation.  First, the Plan provides for a single plan that effectively consolidates the estates of both SEC and Sklarco, with substantial assets contributed to a single post-confirmation trust, and the unsecured creditors of both SEC and Sklarco to share *pari passu* in distributions.  Absent this agreement, unsecured creditors of SEC would be left in the unenviable position of having claims against an estate (SEC) with no assets and no ability to reach the assets of the other estate (Sklarco) without significant, highly contested, litigation.  The Plan resolves the potential claim(s) for substantive consolidation in this case through Sklarco's contribution of its future revenues and assets to pay SEC's unsecured creditors, potentially in full.

2.      The Plan governs the continued wind down, transition and liquidation of SEC in an orderly manner that preserves the value of the wells for all working interest owners, including

1

Sklarco, and the reorganization of Sklarco with a contribution of all of its future revenue to pay creditors. The Plan further provides a two-year period for Sklarco to refinance or sell its assets, rather than force the assets on the market at a time when the market for oil and gas interests is still in recovery and the value of Sklarco's assets is still questionable due to the incomplete winddown of SEC, and the uncertainty as to the new operator until the transitional period is completed.

3.      The Plan also incorporates a settlement of the Estates' claims against East West Bank (the "EWB Settlement"). The EWB Settlement resolves the Committee's investigation and potential challenges to the liens and claims of East West Bank ("EWB"), and generally provides that EWB shall have an allowed secured claim in the amount of $24 million. In exchange for its allowed claim and a resolution of the Estates' claims against EWB, EWB shall apply post-petition payments received as adequate protection payments (approximately $1.4 million as of June 30, 2021) to reduce the principal amount of its claim, which amounts would otherwise be applied to post-petition interest. Additionally, EWB will carve out 10% of Sklarco's future net revenue to be distributed to creditors in accordance with the Plan. The benefit to unsecured creditors from these payments is estimated to be approximately $918,000.

4.      Additionally, upon the occurrence of a Monetizing Event, which can occur at any time after the Effective Date of the Plan but no later than two years after the Effective Date, that results in a refinancing transaction, the Creditor Trust will receive $3 million from the proceeds of the refinance. Alternatively, if there is a sale transaction, the Creditor Trust will receive the excess proceeds after payment of the then-outstanding balance of the EWB Secured Claim. Finally, the Plan provides that on the Effective Date, the Creditor Trust will be funded with $250,000, ensuring that the Creditor Trust has sufficient funding to pursue claims assigned to the Creditors Trust, including D&O claims. Without the EWB Settlement, all Sklarco future revenue and/or its assets would likely go to EWB until its secured claim was paid in full, leaving little to nothing for unsecured creditors, and would the estate would likely not have any funding to bring litigation claims. In total, the Committee believes the EWB Settlement provides at least $4,168,000 in value to unsecured creditors.

5.      Finally, the Plan incorporates a limited settlement with Howard Sklar and certain family trusts regarding the contribution of Sklarco assets to pay claims of SEC unsecured creditors. In order to resolve possible challenges to the contribution of Sklarco assets to pay SEC unsecured creditors, the Plan provides that until the Monetizing Event, the Creditor Trust and the Howard

Sklar Trust will split the revenue from Sklarco assets available after payment of the EWB claim, 90% to the Creditor Trust and 10% to the Howard Sklar Trust.  If there are still assets after the Monetizing Event, the Creditor Trust receives between 80% and 2/3$^{rds}$ of available Sklarco revenue or sale proceeds until unsecured creditors are paid in full, or paid $22 million.  Currently, the claims register shows approximately $18 million in unsecured claims, subject to further reduction based on claim objections.  **The settlement with the Howard Sklar Trust provides unsecured creditors 90% of the benefit they would obtain if they were successful in litigating this issue with the Howard Sklar Trust, but without a litigation risk, any litigation cost, or any delay. Importantly, the settlement does not release, and the Plan specifically preserves any Estate claims against Howard Sklar, the Howard Sklar Trust, any other family trusts or insiders.**

6.     Absent confirmation of the Plan, conversion of the Debtors' cases to cases under chapter 7 would result, with two separate chapter 7 trustees, two sets of additional professionals, and all the attendant fees and expenses.  Litigation would be substantial and almost certainly would extend these cases for years, with unsecured creditors likely receiving little or no recovery on their claims, as SEC's unsecured creditors cannot reach the value of Sklarco's estate absent substantive consolidation, Sklarco's mineral assets will be depleted while the cases are pending or forced to sale while the markets are still recovering, and any available cash will likely be consumed by professional fees.

7.     All classes of creditors have voted overwhelmingly in favor of the Plan, which maximizes recovery for unsecured creditors, avoids costly and time-consuming litigation, and provides the most efficient path forward under the independent management of experienced professionals.  As set forth more fully herein, the Debtors have met the requirements set forth in section 1129 for confirmation of the Second Amended and Restated Plan, and the objections remaining objections should be summarily overruled, and the Plan should be confirmed as expeditiously as possible.

## BACKGROUND

8.     The Debtors filed for relief under chapter 11 of the Bankruptcy Code on April 1, 2020.  The Debtors remain Debtors-in-Possession. No trustee or examiner has been appointed in the Chapter 11 Cases. The Debtors continue in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.     SEC is engaged in business as an independent exploration and production company

3

in the oil and gas industry.  SEC is an operating company and does not own oil or gas properties. SEC has its principal business office in Boulder, Colorado and has additional offices in Shreveport, Louisiana and Brewton, Alabama.  SEC's exploration and production activities are primarily located in East Texas, North Louisiana, South Mississippi, South Alabama and the Florida Panhandle.  SEC is also developing properties and opportunities in the western United States, though no oil or gas production has been produced from the wells in the western United States.

10.     Sklarco is a Louisiana limited liability company engaged in business as the owner of certain oil and gas leases and property interests in East Texas, North Louisiana, South Mississippi, South Alabama, the Florida Panhandle, and the western United States.

11.     The United States Trustee appointed an Official Committee of Unsecured Creditors ("Committee") in SEC's case on April 16, 20220.  No committee has been appointed in Sklarco's case.

12.     On April 2, 2020, the Court entered an order to jointly administer the Debtors' cases under Case No. 20-12377-EEB.  While the cases are jointly administered, the Debtors' respective estates are not substantively consolidated, nor has any party filed an Adversary Proceeding or Motion seeking to substantively consolidate the two estates.

13.     From the beginning of this case, the Debtors have worked diligently to propose a plan that provides creditors with a greater recovery than they would otherwise receive in a Chapter 7, but have been met with resistance at every turn.  The Debtors initially proposed a Plan that was intended to be a straightforward reorganization of SEC and Sklarco, allowing both companies to remain in operation, paying the pre-petition revenue claims in full of the pre-petition claims of WIOs for unpaid revenue and significant payments to unsecured creditors, SEC was unable to get the support needed for its reorganization from key parties.  As a result, the only option available to the Debtors was a reorganization of Sklarco, and a wind down and liquidation of SEC, including an orderly transition to new operators for the properties operated by SEC.

14.     The process to get to the current Plan was hard fought by all of the parties, but has resulted in important settlements that are embodied in the Plan and provide significant value to unsecured creditors particularly creditors of SEC, who would otherwise receive little to nothing in a Chapter 7, while settling costly litigation.

15.     On March 18, 2021, the Debtors filed their Amended and Restated Joint Plan of Reorganization ("Amended Plan"). The Amended Plan was the product of extensive negotiations and includes negotiated settlements between:

      a.      EWB, the Committee, and the Debtors;

      b.      EWB and  the Committee;

      c.      The Committee and Howard Sklar;

      d.      The Debtors and certain working interest owners regarding certain plan terms; and

      e.      The Debtors and certain mechanics lien holders.

16.     The Plan further provides for the appointment of an independent manager over both companies, the wind down and liquidation of SEC following an orderly transition to a successor operator(s), and payments to creditors from the ongoing revenue derived from Sklarco's interests in the properties in which it holds an interest.

17.     Objections to the Amended Plan were filed by:

      a.      Ally Bank (Docket No. 1179; Withdrawn at Docket No. 1257);

      b.      The Internal Revenue Service ("IRS") (Docket No. 1203);

      c.      The United States Trustee ("UST") (Docket No. 1207);

      d.      Stoneham Drilling Company (Docket No. 1239);

      e.      The Anderson Parties (Docket No. 1241);

      f.      The Louisiana Department of Revenue (Docket No. 1211; Withdrawn at Docket No. 1258);

      g.      The Ad Hoc Committee of Unsecured Creditors (Docket No. 1242); and

      h.      The Rudman Partnership, CTM 2005, Ltd., and MER Energy, Ltd.  (Docket Nos. 1210 and 1265).

18.     On May 14, 2021, the Debtors filed their Second Amended and Restated Joint Plan of Reorganization.  The Second Amended Plan addressed a number of the filed objections, and informal objections raised by creditors.

19.     After the filing of the Second Amended Plan, the Objections filed by Ally Bank and the Louisiana Department of Revenue were withdrawn.  The objection filed by Stoneham Drilling Company has also been resolved by the Plan.  The Debtors have been working with the

IRS to address its concerns under the Plan, and are continuing to work with other parties to resolve the remaining objections ahead of a hearing on confirmation of the Plan.

20.    At a hearing on May 28, 2021, the Court identified a number of areas of concern including:

      a.    The establishment of data rooms to facilitate SEC's resignation and transition to one or more new operators;

      b.    The timing of SEC's resignation and transition to new operators; and

      c.    Sklarco's ownership of assets in light of the Agency Services Agreement, and the proposed amendments thereto.

21.    Since the hearing on May 28, 2021, the Debtors have made significant strides in resolving these issues.

22.    As identified in their Status Report filed on June 30, 2021 at Docket No. 1325, the data rooms for all of the properties operated by SEC have been completed.

23.    SEC has also revised its resignation and transition schedule to expedite the process, and now contemplates concluding the resignation and voting process by August 2021, with the approximately November 3, 2021, subject to regulatory approvals in the various states.[1]

24.    Additionally, on June 30, 2021, Howard Sklar filed his *Verification Pursuant to Minute Order for May 28, 2021 Hearing [Docket No. 1276]*, pursuant to which Howard Sklar verifies that "[t]he Schedule Assets are **actually owned by Sklarco** and not merely managed by Sklarco on behalf of the Sklar family trusts and/or others."(emphasis added).  The Verification was signed by Howard Sklar, as the trustee of the various trusts, and by the beneficiaries of the respective trusts.

25.    Additionally, the Debtors and Howard Sklar have, by virtue of the proposed Amendment to the Agency Service Agreement, removed any argument that could be raised by Howard Sklar or any of the Sklar Family Trusts that assets could be removed from Sklarco at least until *all* payments to creditors under the Plan have been completed in full.

## ARGUMENT

26.    As set forth more fully herein, the Plan complies with the provisions of section 1129 and should therefore be confirmed.

---

[1] SEC will facilitate this process and cooperate fully, but the timing of regulatory approvals in various states remains outside of SEC's control.

A.    ***The Plan and the Proponent of the Plan Have Complied with the Applicable Provisions of Chapter 11***

27.    Pursuant to 11 U.S.C. § 1129(a)(1) and (a)(2), the plan and the plan proponent must comply with all applicable provisions of the Bankruptcy Code.   In interpreting section 1129(a)(1) and (a)(2), courts have held that this includes the compliance with section 1122, which governs classification of claims and interests, and section 1125, which governs disclosure and solicitation of acceptances of the Plan.  *See In re Willowood United States Holdings, LLC*, Case No. 19-11179-KHT, 2020 Bankr. LEXIS 3706, at *24 (Bankr. D. Colo. Feb. 14, 2020); *CRE/ADC Venture 2013, LLC v. Rocky Mt. Land Co., LLC (In re Rocky Mt. Land, Co., LLC)*, Case No. 12-21643-HRT, 2014 WL 1338292, 2014 Bankr. LEXIS 1370, at *44 (Bankr. D. Colo. Apr. 3, 2014).

28.    11 U.S.C. § 1122(a) further provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."   While the language of section 1122(a) appears, on its face, to be a permissive section as opposed to mandatory, courts have repeatedly held that section 1122(a) prohibits the debtor from attempting to separately classify similarly situated claims without clear justification.  *In re Autterson*, 574 B.R. 372, 395-97 (Bankr. D. Colo. 2016); *Rocky Mt. Land*, 2014 Bankr. LEXIS 1370 at *48.  *See also See Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (Matter of Greystone III Joint Venture)*, 995 F.2d 1274, 1279 (5th Cir. 1991) (holding that section 1122(a) permits classification of "substantially similar" claims in different classes if undertaken for reasons other than to secure the vote of an impaired, assenting class of claims); *In re Couture Hotel Corp.*, 536 B.R. 712, 733 (Bankr. N.D. Tex. 2015).

29.    The Plan creates the following classes of creditors:

**Sklarco**

Class A - The Allowed Secured Claim held by East West Bank.
Class B.1 through B.7– The Allowed Secured Claims held by Mechanics Lien Claimants more specifically identified as follows:
Class B.1 - The Allowed Secured Claim held by Stoneham Drilling Corporation, if any.
Class B.2 - The Allowed Secured Claim held by Premium Oilfield Services, LLC, if any.
Class B.3 - The Allowed Secured Claim held by Weatherford U.S., L.P., if any.
Class B.4 - The Allowed Secured Claim held by Liquid Gold Well Service, Inc., if any.

<u>Class B.5</u> – The Allowed Secured Claim held by RAPAD Well Service, Inc., if any.

<u>Class B.6</u> – The Allowed Secured Claim held by Pro-Tek Field Services, LLC, if any.

<u>Class B.7</u> – The Allowed Secured Claim held by Pioneer Wireline Services, LLC, if any.

<u>Class C</u> – The Allowed General Unsecured Claims against Sklarco.

<u>Class D</u> – The member Interest held by Howard Trust

**SEC**

<u>Class 1</u> - The Allowed Priority Wage Claims.

<u>Class 2</u> - The Allowed Secured Claim held by East West Bank.

<u>Class 3</u> - The Allowed Secured Claim held by Ford Motor Credit.

<u>Class 4</u> – The Allowed Secured Claim held by Ally Bank.

<u>Class 5</u> – *Reserved.*

<u>Class 6</u> - The Allowed General Unsecured Claims against SEC.

<u>Class 7</u> - The member Interest held by Howard Trust.

30.     Through the classification of claims, the Debtors separately classify secured claims that were properly perfected, either on a pre-petition basis, or post-petition by virtue of filing a notice pursuant to section 546(b), and create classes of creditors holding unsecured claims against both estates.   This classification of claims and interests in the Plan properly recognizes the legally distinct nature of secured claims against the estate as compared to general unsecured creditors. The classification further puts all similarly situated unsecured creditors, including creditors of SEC holding generally unsecured claims arising from unpaid pre-petition revenue, in classes with other similarly situated creditors.

31.     If the Debtors attempted to separately classify the claims of certain WIOs based on certain legal theories raised, but not adjudicated, during SEC's bankruptcy case, it would undoubtedly result in a disparate treatment of the various claims of WIOs, thus resulting in inequitable treatment of similarly situated creditors.

32.     Accordingly, the Plan complies with Section 1122(a) and all other applicable provisions of the Bankruptcy Code, and therefore complies with Section 1129(a)(1).

33.     The Debtors, as proponents of the Plan, have similarly complied with all applicable provisions of the Bankruptcy Code, including Section 1125 and 1126. *See Willowood United States Holdings, LLC*, 2020 Bankr. LEXIS 3706, at *24; *In re Lapworth*, No. 9734529 (DWS), 1998 WL 767456, at *3 (Bankr. E.D. Pa. Nov. 2, 1998) ("The legislative history of § 1129(a)(2) specifically identifies compliance with the disclosure requirements of § 1125 as a requirement of §

1129(a)(2).”); *In re Worldcom, Inc.*, No. 02-13533 (AJG), 2003 WL 23861928, at *49 (Bankr. S.D.N.Y. Oct. 31, 2003) (stating that section 1129(a)(2) requires plan proponents to comply with applicable provisions of the Bankruptcy Code, including “disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code”).

34.     The Debtors have, at all times, complied with all Orders entered by the Bankruptcy Court, including without limitation the Minute Order entered on June 2, 2021 requiring SEC to establish all data rooms for the resignation and transition to a new operator by or before June 30, 2021.  Indeed, the Debtors filed a Status Report on June 30, 2021 (Docket No. 1325) advising the Court of the completion of the data rooms and its progress in the resignation and transition process.

35.     The Amended Disclosure Statement to Accompany the Amended and Restated Plan of Reorganization was approved by the Bankruptcy Court as containing adequate information pursuant to section 1125 on March 18, 2021 (Docket No. 1140).

36.     Following approval of the Disclosure Statement, the Debtors provided copies of all solicitation materials, including ballots for accepting or rejecting the Plan, the Disclosure Statement, the Plan, and a copy of the Order approving the Disclosure Statement.  *See Affidavit of Service of Solicitation Materials* (Docket No. 1176).  No attempts to solicit acceptance or rejection of the Plan were made prior to approval of the Disclosure Statement, and all ballots were duly tabulated by Epiq following receipt.

37.     Accordingly, the Debtors have complied with all applicable provisions of the Bankruptcy Code in accordance with Section 1129(a)(2).

## B.     *The Plan has been Proposed in Good Faith and Not by Any Means Forbidden by Law.*

38.     Pursuant to 11 U.S.C. § 1129(a)(3), the plan must be proposed in good faith, and not be any means forbidden by law.

39.     The Tenth Circuit has held that “[t]he test of good faith is met if there is a reasonable likelihood that the plan will achieve its intended results which are consistent with the purposes of the Bankruptcy Code[.]”  *Search Mkt. Direct, Inc. v. Jubber (In re Paige)*, 685 F.3d 1160, 1178 (10ᵗʰ Cir. 2012)(quoting *Travelers Ins. Co. v. Pikes Peak Water Co. (In re Pikes Peak Water Co.)*, 779 F.2d 1456 (10ᵗʰ Cir. 1985)).   In determining whether there is a lack of good faith, courts primarily focus on “whether the debtor intended to abuse the judicial process and the purposes of the reorganization provisions.”  *Id.* at 1179.

40.     At all times during this Bankruptcy Case, the Debtors have, and are presently acting, in good faith, including in proposing the Plan. All the transactions contemplated by the Plan— including the Creditor Trust Agreement—were negotiated at arm's length, in good faith and without collusion, fraud, or attempt to take grossly unfair advantage of any party. The Debtors proposed the Plan with legitimate purposes including (1) providing a prompt and efficient reorganization of Sklarco and liquidation of SEC under chapter 11; and (2) maximizing the recovery to Holders of Allowed Claims under the circumstances. As such, the Plan has been proposed in good faith and satisfies all of the requirements of section 1129(a)(3) of the Bankruptcy Code.

**C.      _All Payments Made or to be Made Under the Plan Have Been Approved or are Subject to Court Approval._**

41.     Pursuant to Section 1129(a)(4), any payment made for professional fees and expenses by the debtor must be subject to approval of the Court as being reasonable. *See Willowood United States Holdings, LLC*, 2020 Bankr. LEXIS 3706, at \*17; *In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569, 573 (Bankr. N.D. Tex. 1986) (noting that before a plan may be confirmed, "there must be a provision for review by the Court of any professional compensation").

42.     Pursuant to Section 3.2 of the Plan, all professionals retained in the Debtors' cases are required to seek approval of their fees by filing a fee application within the time set by the Court in any order confirming the Plan, which shall be 45 days following the Confirmation Date. *See Plan*, p. 2, § 1.2; p. 12, §§ 3.1, 3.2.

43.     All professional fees, including any fees approved on an interim basis, therefore remain subject to approval as being reasonable in accordance with 11 U.S.C. § 330.

44.     According, the Plan complies with 11 U.S.C. § 1129(a)(4).

**D.      _The Identity and Affiliations of the Officers, Directors, or Voting Parties of the Debtors Have Been Disclosed_**

45.     Pursuant to 11 U.S.C. § 1129(a)(5), the identity and affiliations of any individual proposed to serve as an officer, director, or voting trustee of the debtor must be disclosed. *See* 11 U.S.C. § 1129(a)(5)(A)(i). Section 1129(a)(5)(A)(ii) further requires that the appointment or

10

continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy. *See* 11 U.S.C. § 1129(a)(5)(A)(ii).

46.     Pursuant to the Plan, on the Effective Date of the Plan, an Independent Manager will be appointed to control all decisions with respect to the Debtors.  The Disclosure Statement further identified Brad Walker as the Independent Manager, including a schedule of his hourly rates and the general terms of his engagement, and provides the Independent Manager with the discretion to engage those employees he believes are necessary to the effective management of the Debtors.[2]

47.     Additionally, the Plan and the Creditor Trust Agreement disclose Thomas Kim and r2 advisors as the person proposed to serve as the Creditor Trustee as of the Effective Date. The Creditor Trustee was selected after taking into account the interests of creditors in accordance with section 1129(a)(5)(A)(ii). The Creditor Trustee is competent and the Debtors, and the Committee, believe he will undertake his duties under the Creditor Trust Agreement in a manner consistent with the best interests of creditors.  Indeed, Mr. Kim has been engaged in numerous bankruptcy cases in this district to act as liquidating or distributing trustee under confirmed plans, in addition to serving as a restructuring officer during a Chapter 11 case.  *See In re Medical Simulation Corporation*, Case No. 19-20101-EEB; *In re Willowood USA Holdings, LLC*, Case No. 19-11079-KHT.

48.     Accordingly, the Plan fully complies with, and satisfies, the requirement of section 1129(a)(5) of the Bankruptcy Code.

**E.**     **_The Plan Does Not Require Governmental Approval of Rate Changes (Section 1129(a)(6))._**

49.     Section 1129(a)(6) of the Bankruptcy Code requires that any regulatory commission that will have jurisdiction over a debtor after confirmation has approved any rate change provided for in a plan. *See* 11 U.S.C. § 1129(a)(6). The Plan does not provide for any such rate changes, and therefore, section 1129(a)(6) of the Bankruptcy Code is inapplicable.

---

[2] The Plan further identifies John Strausser and J. Marshall Jones as possible additional management personnel.  Mr. Strausser and Mr. Jones are no longer employed by SEC.

F.   **All Impaired Classes of Creditors Will Receive or Retain More Than They Would Receive in a Chapter 7.**

50.     Pursuant to 11 U.S.C. § 1129(a)(7), confirmation of the Plan requires creditors to vote to accept the Plan, or otherwise receive or retain more than they would receive or retain in Chapter 7.

51.     The best interests test applies if a claim or interest entitled to vote does not vote to accept a plan, even if an impaired class in its entirety votes to accept the plan. *See In re 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441 n.13 (1999) ("The 'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan."); *Cypresswood Land Partners, I*, 409 B.R. 396, 428 (Bankr. S.D. Tex. 2009) ("This provision is known as the 'best- interest-of-creditors-test' because it ensures that reorganization is in the best interest of individual claimholders who have not voted in favor of the plan."). Generally, the best interests test is satisfied by a liquidation analysis demonstrating that an impaired class will receive no less under the plan than under a chapter 7 liquidation. *See Willowood United States Holdings, LLC*, 2020 Bankr. LEXIS 3706, at *25-27 (holding that the "best interests of creditors test" was satisfied as a result of guaranteed payments to unsecured creditors resulting from carveouts from secured creditors under the plan) ; *In re Adelphia Commc'ns. Corp.*, 361 B.R. 337, 366-67 (S.D.N.Y. 2007) (*citing In re Smith*, 357 B.R. 60, 67 (Bankr. M.D.N.C. 2007), *appeal dismissed*, No. 1:07CV30, 2007 WL 1087575 (M.D.N.C. Apr. 4, 2007) ("In order to show that a payment under a plan is equal to the value that the creditor would receive if the debtor were liquidated, there must be a liquidation analysis of some type that is based on evidence and not mere assumptions or assertions.") (citations omitted).

52.     As set forth in the Disclosure Statement, and Exhibits H and I attached thereto, unsecured creditors, particularly unsecured creditors of SEC, would receive significantly less in a Chapter 7 than they receive or retain under the Plan.

53.     As set forth on the updated liquidation analyses attached hereto as Exhibits B (SEC) and C (Sklarco), even if the assets were sold at the full market value of the assets on the NSAI reserve report, unsecured creditors of Sklarco may be paid in full in a Chapter 7, but unsecured creditors of SEC creditors would not receive anything in a Chapter 7.  Even if the SEC and Sklarco estates were substantively consolidated in a Chapter 7, unsecured creditors would share *pari passu*

in approximately $1.5 million from the sale of Sklarco's assets, **substantially** less than the $4.1 million benefit to unsecured creditors from the EWB Settlement.

54.     The NSAI reserve value was based on the per barrel price of oil and gas as of September 1, 2020, and includes producing reserves and probable reserves.  While oil and gas prices have generally improved since that time, market for the sale of oil and gas interests is still in recovery, resulting in decreased sale prices for oil and gas interests, particularly non-operated oil and gas interests, and there are minimal sales of probable reserves.  Thus, even with an increase in oil and gas prices, the actual sale price for Sklarco's oil and gas interests in a Chapter 7 would likely be less than the reserve value set forth on the reserve report prepared by NSAI, particularly as approximately $5.6 million of the reserve value is attributable to probable reserves.  If the probable reserves cannot be sold, the value of the reserves would be reduced to approximately $23 million, and unsecured creditors of Sklarco and SEC would not receive anything on account of their claims.

55.     As set forth above, the Plan provides for a settlement of the substantive consolidation claims that could have been brought by the Committee by substantively consolidating the two Debtors without significant litigation.

56.     As a result, Sklarco is obligated under the Plan to contribute its ongoing revenue from its oil and gas assets to payment of ***all*** unsecured creditors, including SEC's unsecured creditors, until such creditors are either paid in full, or SEC has paid unsecured creditors $22 million, *in addition* to assigning avoidance actions to the Creditor Trust under the Plan. Additionally, in the event of a refinance by Sklarco or a sale of Sklarco assets as contemplated under the Plan, funds will be going to unsecured creditors of Sklarco and SEC.  This result is only possible without years of expensive litigation as a result of the settlements included in the Plan.

57.     Furthermore, the Plan also provides that, in a sale or refinance, $3 million will be carved out from the secured claim of East West Bank and paid to unsecured creditors.  This is a settlement that would not be available to unsecured creditors in the event of a Chapter 7, and is only possible because of the settlement embodied in the Plan.

58.     In contrast, because a substantive consolidation of the two estates has not occurred, unsecured creditors of SEC would not be entitled to payments from the revenue receive by Sklarco, or the sale proceeds from the sale of Sklarco's assets without the Chapter 7 Trustee of the SEC estate bringing substantive consolidation claims against Sklarco.  These claims would likely be

13

opposed by the Chapter 7 Trustee of the Sklarco estate, and by the equity holder of Sklarco, resulting in expensive and time consuming litigation that would result in incurring significant additional administrative expenses to both estates, and significantly delaying distributions to unsecured creditors.

59.     Even if the substantive consolidation claims are successful, unsecured creditors of SEC would receive nothing more than they are receiving now – a pro rata share of the value of Sklarco's assets.   This disbursement would be significantly reduced by the additional administrative expense claims incurred in bringing the substantive consolidation claims, thus reducing the amount ultimately available for distribution to creditors.

60.     Furthermore, if the substantive consolidation claims are ultimately unsuccessful, the SEC estate would be left with nothing but potential litigation claims.

61.     Given the results achieved by the settlements embodied in the Plan, it is evident that unsecured creditors receive significantly more than they would receive in a Chapter 7 in addition to beginning distributions far sooner than could ever occur in a Chapter 7, and the Plan therefore complies with 11 U.S.C. §1129(a)(7).

G.     **_All Impaired Classes of Creditors Have Voted to Accept the Plan._**

62.     Pursuant to 11 U.S.C. § 1129(a)(8), all impaired classes of creditors under the Plan must have voted to accept the Plan, or must not be impaired.

63.     As set forth on the _Declaration of Emily Young of Epiq Corporate Restructuring, LLC Regarding Voting and Tabulation of Ballots Case on Amended and Restated Joint Plan of Reorganization_ (Docket No. 1261), the following classes voted to accept the Plan:

| Sklarco, LLC (20-12380) | | | | | |
|---|---|---|---|---|---|
| VOTING CLASS | TOTAL BALLOTS COUNTED | | | | Class Voting Result |
| | ACCEPT | | REJECT | | |
| | AMOUNT | NUMBER | AMOUNT | NUMBER | |
| **Class A** Allowed Secured Claim held by East West Bank | $22,989,650.74 **100.00%** | 1 **100.00%** | $0.00 **0.00%** | 0 **0.00%** | Accept |

| | | | | | |
|---|---|---|---|---|---|
| **Class C** General Unsecured Claims against Sklarco | $982,672.54 **99.97%** | 17 **94.44%** | $290.03 **.03%** | 1 **5.56%** | Accept |
| **Class D** Member Interest Held by Howard Trust | Class contained claim/interest that was entitled to vote, but no ballot was returned in this class. | | | | |

| **Sklar Exploration Company, LLC (20-12377)** | | | | | |
|---|---|---|---|---|---|
| **VOTING CLASS** | **TOTAL BALLOTS COUNTED** | | | | **Class Voting Result** |
| | **ACCEPT** | | **REJECT** | | |
| | **AMOUNT** | **NUMBER** | **AMOUNT** | **NUMBER** | |
| **Class 2** Allowed Secured Claim held by East West Bank | $22,989,650.74 **100.00%** | 1 **100.00%** | $0.00 **0.00%** | 0 **0.00%** | Accept |
| **Class 3** Allowed Secured Claim held by Ford Motor Credit | Class contained claim/interest that was entitled to vote, but no ballot was returned in this class. | | | | |
| **Class 4** Allowed Secured Claim held by Ally Bank | Class contained claim/interest that was entitled to vote, but no ballot was returned in this class. | | | | |
| **Class 6** General Unsecured Claims against SEC | $6,662,614.10 **74.38%** | 104 **77.04%** | $2,295,383.38 **25.62%** | 31 **22.96%** | Accept |
| **Class 7** Member Interest Held by Howard Trust | Class contained claim/interest that was entitled to vote, but no ballot was returned in this class. | | | | |

64.    SEC Class 1 consisted of the allowed priority wage claims arising pursuant to 11 U.S.C. § 507(a)(4) and (a)(5), and was unimpaired by the Plan.  Accordingly, SEC Class 1 was deemed to have accepted the Plan.

65.     Sklarco Class D and SEC Classes 3, 4, and 7 did not submit a ballot accepting or rejecting the Plan, and therefore deemed to have accepted the Plan. *In re Ruti Sweetwater*, 836 F.2d 1263 (10th Cir. 1988).

66.     Accordingly, all impaired classes of creditors have accepted the Plan in accordance with 11 U.S.C. § 1129(a)(8).

**H.**     ***Plan Complies with Statutorily Mandated Treatment of Administrative and Priority Tax Claims (Section 1129(a)(9)).***

67.     Section 1129(a)(9) of the Bankruptcy Code requires that certain priority claims be paid in full on the effective date of a plan and that the Holders of certain other priority claims receive deferred cash payments. *See* 11 U.S.C. § 1129(a)(9). In particular, pursuant to section 1129(a)(9)(A) of the Bankruptcy Code, holders of claims of a kind specified in section 507(a)(2) of the Bankruptcy Code—administrative expenses allowed under section 503(b) of the Bankruptcy Code—must receive on the effective date cash equal to the allowed amount of such claims.

68.     In accordance with 1129(a)(9), each Holder of an Allowed Administrative Claim shall be paid in full in Cash on the later of (i) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date, (ii) on or as soon as reasonably practicable after the date on which such Administrative Claim becomes an Allowed Claim; or (iii) the date such Allowed Administrative Claim becomes due and payable.

69.     In addition, Allowed Priority Tax Claims will be paid in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code. Accordingly, the Plan complies with the requirements of section 1129(a)(9) of the Bankruptcy Code.

**I.**     ***At Least One Impaired Class of Claims Has Accepted the Plan, Excluding the Acceptance of Insiders (Section 1129(a)(10)).***

70.     Section 1129(a)(10) of the Bankruptcy Code provides that if any class of claims is impaired under a plan, at least one impaired class of claims must accept the plan, excluding acceptance by any insider. *See* 11 U.S.C. § 1129(a)(10).

71.     As set forth above, all impaired classes of creditors have voted to accept the Plan, excluding the votes of insiders.

72.     Accordingly, because the Plan has been accepted by all impaired classes, the Plan satisfies the requirement of section 1129(a)(10).

**J.**      **_Confirmation of the Plan is Not Likely to Be Followed by a Subsequent Reorganization_**
**_or Liquidation Not Contemplated by the Plan._**

73.      Pursuant to 11 U.S.C. § 1129(a)(11), the plan must be feasible, and not likely to be followed by a subsequent reorganization or liquidation unless such events are contemplated by the Plan.

74.      The feasibility inquiry is fact intensive and requires a case-by-case analysis, but has a relatively low threshold of proof necessary to satisfy the feasibility requirement. _See Mercury Capital Corp. v. Milford Conn. Assocs., L.P._, 354 B.R. 1, 9 (D. Conn. 2006), _remanded_, 2008 WL 687266 (Bankr. D. Conn. March 10, 2008), ("[A] 'relatively low threshold of proof' will satisfy the feasibility requirement.") (quoting _In re Brotby_, 303 B.R. 177, 191–92 (B.A.P. 9th Cir. 2003)). "Where the projections are credible, based upon the balancing of all testimony, evidence, and documentation, even if the projections are aggressive, the court may find the plan feasible Debtors are not required to view business and economic prospects in the worst possible light." _Financial Sec. Assurance, Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)_, 116 F.3d 790, 802 (5th Cir. 1997) (citing _In re Lakeside Global II, Ltd._, 116 B.R. 499, 508 n.20 (Bankr. S.D. Tex. 1989) and _In re Western Real Estate Fund, Inc._, 75 B.R. 580, 585 (Bankr. E.D. Okla. 1987)).

75.      "The purpose of the feasibility test is to determine whether there is a reasonable probability that creditors will receive the payments provided for in the plan." _Minerals Techs, Inc. v. Novinda Corp. (In re Novinda Corp.)_ 585 B.R. 145, 159-60 (10th Cir. B.A.P. 2018)(quoting _In re Trenton Ridge Inv'rs., LLC_, 461 B.R. 440, 478 (Bankr. S.D. Ohio 2011)).   In the context of liquidating plan, the inquiry is focused on whether there is sufficient funding for a liquidation outside of merely relying on litigation claims. _Id._ at 160.  In the context of a reorganization, courts have held that feasibility can be established when projections are based on "concrete evidence of financial progress" and are not "speculative, conjectural, or unrealistic." _Rocky Mt. Land_, 2014 Bankr. LEXIS 1370 at *37.

76.      As set forth on the revised projections attached hereto as Exhibit A, the Plan is feasible and will have sufficient funding to ensure a reasonable probability that creditors will receive payments under the Plan.  The projections, which are based on the Debtors' current financial condition, establish that the Debtors will have sufficient funds on hand to maintain operations at SEC until the contemplated resignation and transition is completed, at which point

the remaining assets of SEC will be liquidated in accordance with the Plan.  The projections further establish that the Debtors will have sufficient funds on hand to pay Allowed Administrative and Priority Claims, including funding the Creditor Trust with the requisite $250,000.

77.     Payments under the Plan are not based on speculative or hypothetical events. Because the payments to unsecured creditors is based on a split of available cash, there is no risk that Sklarco will not be able to afford the payments, and the payments are required to continue until either unsecured creditors are paid in full or receive $22 million, or there is a Monetizing Event resulting in the sale of Sklarco's assets.  If the price of oil drops suddenly, it may reduce a distribution to the Creditor Trust, but it would not reduce the total amount to which the Creditor Trust is entitled.

78.     Additionally, while the Plan provides for a possible refinance, performance under the Plan is not entirely reliant on a refinance of the EWB Secured Claim.  Instead, if a refinance cannot be accomplished within the first eighteen months following confirmation, the Plan requires that the assets of Sklarco will be sold, with distributions made to creditors, including unsecured creditors.

79.     Accordingly, the Plan is feasible and complies with 11 U.S.C. § 1129(a)(11).

**K.**     ***The Plan Provides for Payment of All Fees Under Section 1930 of Title 28***

80.     Pursuant to 11 U.S.C. § 1129(a)(12), the Plan must provide for the payment of all fees payable under 28 U.S.C. § 1930. *See* 11 U.S.C. § 1129(a)(12).

81.     Section 3.5 of the Plan states:

The Debtors or Reorganized Debtors, as applicable, will make all payments required to be paid to the Office of the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) until the case is closed, converted, or dismissed.  All payments due to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) shall be paid on the Effective Date, and the Reorganized Debtors shall thereafter pay U.S. Trustee fees due on a quarterly basis until the case is closed, converted, or dismissed.

82.     Section 11.1 of the Plan further requires the Reorganized Debtors to pay all statutory fees arising under 28 U.S.C. § 1930 both before and after the Effective Date of the Plan, and to file all required reports.

83.     Accordingly, the Plan complies with section 1129(a)(12) of the Bankruptcy Code.

**L.**    ***Section 1129(a)(13), (14), (15), and (16) are Inapplicable to the Debtors.***

84.     Pursuant to 11 U.S.C. § 1129(a)(13), the plan must provide for continuation of retiree benefits, as defined in section 1114.  The Debtors do not provide any retiree benefits, and section 1129(a)(14) is therefore inapplicable.

85.     Similarly, sections1129(a)(14) and (a)(15) are inapplicable, as the Debtors are not individuals, and are not under any order to pay domestic support obligations.

86.     Section 1129(a)(16) is in applicable, as the Debtors are not nonprofit entities or trusts.

87.     Accordingly, the Plan complies with all applicable provisions of section 1129, and therefore may be confirmed over the objection of certain creditors.

**CONCLUSION**

88.     The Plan is the product of extensive and involved negotiations between the parties that resulted in settlements incorporated into the Plan, all of which provide a significant benefit to creditors.  Without the settlement embodied in the Plan, unsecured creditors would receive significantly less, and in a Chapter 7 would likely receive nothing.  Instead, the Plan gives the unsecured creditors of both estates the ability to receive a stream of payments until a Monetizing Event, and the ability to share in the proceeds of a Monetizing Event, providing unsecured creditors with a significant recovery on their claims in addition to preserving avoidance actions and litigation claims for the unsecured creditors.

89.     It is only through confirmation of the Plan that these results can be achieved, and creditors can see a significant recovery on account of their claims.  Accordingly, because the Plan meets the requirements of section 1129, the Plan should be confirmed over the objections of creditors.

**[remainder of page intentionally left blank]**

WHEREFORE, the Debtors and Committee pray the Court make and enter an Order confirming the Second Amended and Restated Plan of Reorganization, and for such further and additional relief as to the Court may appear just and proper.

Dated: July 9, 2021               Respectfully submitted,

By: _____*/s/  Keri L. Riley*_____
     Keri L. Riley, #47605
     **KUTNER BRINEN DICKEY RILEY, P.C.**
     1660 Lincoln St., Suite 1720
     Denver, CO   80264
     Tel: 303-832-2400
     E-mail: klr@kutnerlaw.com
     ***Counsel for the Debtors***

By: *ial/s/ Christopher D. Johnson*_____
     Christopher D. Johnson, Texas Bar No. 24012913
     John D. Cornwell, Texas Bar No. 24050450
     Grant M. Beiner, Texas Bar No. 24116090
     **MUNSCH HARDT KOPF & HARR, P.C.**
     700 Milam Street, Suite 2700
     Houston, Texas 77002
     Telephone: (713) 222-1470
     Facsimile: (713) 222-1475
     cjohnson@munsch.com
     jcornwell@munsch.com
     gbeiner@munsch.com
     ***Counsel for the Official Committee of***
     ***Unsecured Creditors***

# Exhibit A

| Values in 000's ($M) | 2021 | 2022 | 2023 | 2021-2023 |
|---|---|---|---|---|
| **SklarEx** | | | | |
| **Operated Volume** | | | | |
| OIL (BBL) | 206,240 | - | - | 206,240 |
| GAS (MCF) | 892,709 | - | - | 892,709 |
| PLANT PRODUCT (BBL) | 42,966 | - | - | 42,966 |
| *Oil Price - WTI NYMEX (5/24)* | *31.47* | *60.72* | *57.58* | |
| *Gas Price - HHUB NYMEX (5/24)* | *1.50* | *2.83* | *2.62* | |
| *Realized Price - Oil ($/Bbl)* | *62.63* | *-* | *-* | |
| *Realized Price - Gas ($/Mcf)* | *2.65* | *-* | *-* | |
| *Realized Price - NGL ($/Bbl)* | *3.18* | *-* | *-* | |
| Operated Oil Revenue | $ 12,916 | $ - | $ - | $ 12,916 |
| Operated Gas Revenue | 2,362 | - | - | 2,362 |
| Operated NGL Revenue | 137 | - | - | 137 |
| **Total Operated Revenue** | **15,415** | **-** | **-** | **15,415** |
| Revenue Payable to Others | (14,490) | - | - | (14,490) |
| Severance Tax Payable | (925) | - | - | (925) |
| Ad Valorem Tax Payable | - | - | - | - |
| **Subtotal Revenue Adjustments** | **(15,415)** | **-** | **-** | **(15,415)** |
| **Net Oil & Gas Revenue** | **$ -** | **$ -** | **$ -** | **$ -** |
| **Lease Operated Expenses** | | | | |
| Operating Expenses | (1,820) | - | - | (1,820) |
| Expenses Due From Others | 1,820 | - | - | 1,820 |
| Ad Valorem Tax Due From Others | - | - | - | - |
| COPAS Overhead Due From Others | 346 | - | - | 346 |
| **Net LOE** | **$ 346** | **$ -** | **$ -** | **$ 346** |
| **Oil & Gas Operating Income** | **$ 346** | **$ -** | **$ -** | **$ 346** |
| **Gas Plant Revenue** | | | | |
| Throughput (MCF) | 794,764 | - | - | 794,764 |
| *Realized Fee ($/Mcf)* | *0.65* | *-* | *-* | *0.65* |
| Processing Fee Revenue | $ 514 | $ - | $ - | $ 514 |
| **Subtotal Gas Plant Revenue** | **$ 514** | **$ -** | **$ -** | **$ 514** |
| **Gas Plant Expenses** | | | | |
| Operating Expense | (805) | - | - | (805) |
| Administrative Expenses | (66) | - | - | (66) |
| Repairs & Maintenance | (21) | - | - | (21) |
| Expenses Due From Others | 975 | - | - | 975 |
| **Net Gas Plant Expenses** | **$ 82** | **$ -** | **$ -** | **$ 82** |
| **Gas Plant Operating Income** | **$ 596** | **$ -** | **$ -** | **$ 596** |
| **Total Operating Income** | **$ 942** | **$ -** | **$ -** | **$ 942** |
| **G&A, Other** | | | | |
| Interest Expense | - | - | - | - |
| Payroll & Benefits | (792) | - | - | (792) |
| CEO Salary | - | - | - | - |
| Office Lease | (145) | - | - | (145) |
| Office Expenses | (86) | - | - | (86) |
| Software License Fees | (36) | - | - | (36) |
| Winddown Legal Fees | (629) | - | - | (629) |
| Moving & Storage | (75) | - | - | (75) |
| **Total G&A** | **(1,762)** | **-** | **-** | **(1,762)** |
| **SEC Adjusted Operating Income** | **$ (820)** | **$ -** | **$ -** | **$ (820)** |

| Values in 000's ($M) | | 2021 | | 2022 | | 2023 | | 2021-2023 |
|---|---|---|---|---|---|---|---|---|
| **SklarCo** | | | | | | | | |
| **Net Volume** | | | | | | | | |
| OIL (BBL) | | 70,129 | | 129,738 | | 112,729 | | 312,596 |
| GAS (MCF) | | 179,942 | | 305,083 | | 234,274 | | 719,299 |
| PLANT PRODUCT (BBL) | | 13,598 | | 23,514 | | 17,816 | | 54,928 |
| *Oil Price - WTI NYMEX (5/24)* | | *31.47* | | *60.02* | | *57.24* | | |
| *Gas Price - HHUB NYMEX (5/24)* | | *1.50* | | *2.78* | | *2.61* | | |
| *Realized Price - Oil ($/Bbl)* | | *61.59* | | *58.73* | | *56.02* | | |
| *Realized Price - Gas ($/Mcf)* | | *2.55* | | *2.34* | | *2.18* | | |
| *Realized Price - NGL ($/Bbl)* | | *3.15* | | *3.00* | | *2.87* | | |
| **Oil Revenue** | | | | | | | | |
| SklarEx Operated Oil Revenue | $ | 3,057 | $ | 5,507 | $ | 4,588 | $ | 13,152 |
| Non-Operated Oil Revenue | | 1,262 | | 2,113 | | 1,727 | | 5,102 |
| **Subtotal Oil Revenue** | | 4,319 | | 7,620 | | 6,316 | | 18,254 |
| **Gas Revenue** | | | | | | | | |
| SklarEx Operated Gas Revenue | $ | 413 | $ | 652 | $ | 469 | $ | 1,534 |
| Non-Operated Gas Revenue | | 46 | | 63 | | 42 | | 151 |
| **Subtotal Gas Revenue** | | 459 | | 715 | | 510 | | 1,685 |
| **NGL Revenue** | | | | | | | | |
| SklarEx Operated NGL Revenue | $ | 34 | $ | 57 | $ | 41 | $ | 132 |
| Non-Operated NGL Revenue | | 9 | | 14 | | 10 | | 32 |
| **Subtotal NGL Revenue** | | 43 | | 71 | | 51 | | 164 |
| **Severance Taxes** | | | | | | | | |
| SklarEx Operated Severance Tax | $ | - | $ | - | $ | - | $ | - |
| Non-Operated Severance Tax | | (186) | | (310) | | (252) | | (747) |
| **Subtotal NGL Revenue** | | (186) | | (310) | | (252) | | (747) |
| **Total Revenue** | $ | 4,635 | $ | 8,096 | $ | 6,625 | $ | 19,356 |
| **Lease Operated Expenses** | | | | | | | | |
| SklarEx Operated Expenses | | (681) | | (902) | | (811) | | (2,394) |
| Non-Operated Expenses | | (222) | | (443) | | (443) | | (1,109) |
| Ad Valorem Taxes | | (35) | | - | | - | | (35) |
| **Total LOE Expenses** | | (938) | | (1,346) | | (1,254) | | (3,538) |
| **Total Operating Income** | $ | 3,697 | $ | 6,750 | $ | 5,371 | $ | 15,819 |
| **G&A, Other** | | | | | | | | |
| Hedge Settlement | | - | | - | | - | | - |
| Recurring Investment Income** | | 99 | | 198 | | 198 | | 495 |
| JUD, SMMS** | | 60 | | 120 | | 120 | | 300 |
| Interest Expense | | (689) | | (999) | | (797) | | (2,485) |
| Payroll & Benefits | | - | | (1,348) | | (1,348) | | (2,697) |
| Independent Mgr | | - | | (240) | | (240) | | (480) |
| Office Lease | | - | | (96) | | (96) | | (192) |
| Office Expenses | | - | | (96) | | (96) | | (192) |
| Software License Fees | | - | | (42) | | (42) | | (84) |
| Moving & Storage | | - | | (42) | | (42) | | (84) |
| **Subject to Determination of Ownership | | | | | | | | |
| **Subtotal SKC G&A, Other** | | (530) | | (2,546) | | (2,343) | | (5,419) |
| **SKC Adjusted Operating Income** | $ | 3,270 | $ | 4,205 | $ | 3,028 | $ | 10,503 |
| **SEC + SKC Adjusted Operating Income** | $ | 2,450 | $ | 4,205 | $ | 3,028 | $ | 9,682 |

| Values in 000's ($M) | | 2021 | | 2022 | | 2023 | | 2021-2023 |
|---|---|---|---|---|---|---|---|---|
| **Calculated Fields** | | | | | | | | |
| | | | | | | | | |
| UCC Trust | | 250 | | - | | - | | |
| SEC Cash Reserve | | - | | - | | - | | |
| SKC Cash Reserve | | 250 | | - | | - | | |
| | | | | | | | | |
| **Total Cash Reserve Funding** | $ | 500 | $ | - | $ | - | | |
| UCC Trust Reserve Balance | | | | | | | | |
| SEC Cash Reserve Balance | | | | | | | | |
| SKC Cash Reserve Balance | | | | | | | | |
| | | | | | | | | |
| **Post-Reserve SEC Operating Cash Flow** | $ | (820) | $ | - | $ | - | $ | - |
| | | | | | | | | |
| **Post-Reserve SKC Operating Cash Flow (After Funding SEC Shortfall)** | $ | 1,950 | $ | 4,205 | $ | 3,028 | $ | 9,182 |
| | | | | | | | | |
| SEC Bank-Dedicated Cash Flow | | - | | - | | - | | - |
| SKC Bank-Dedicated Cash Flow | | 1,755 | | 3,784 | | 2,725 | | 8,264 |
| **Total Bank-Dedicated Cash Flow** | $ | 1,755 | $ | 3,784 | $ | 2,725 | $ | 8,264 |
| | | | | | | | | |
| **Beginning Loan Balance** | $ | 20,172 | $ | 18,417 | $ | 14,633 | $ | - |
| Repayment | | (1,755) | | (3,784) | | (2,725) | | - |
| **Ending Loan Balance** | $ | 18,417 | $ | 14,633 | $ | 11,908 | $ | - |
| | | | | | | | | |
| | | | | | | | | |
| SEC Unsecured Creditor Fund | | - | | - | | - | | |
| SKC Contributed Unsecured Creditor Fund | | 195 | | 420 | | 303 | | |
| **Total Unsecured Creditor Fund** | $ | 195 | $ | 420 | $ | 303 | | |
| | | | | | | | | |
| **Unsec. Creditor Fund Beg. Balance** | $ | - | $ | 39 | $ | 32 | | |
| Unsecured Creditor Fund Payments | | (195) | | (420) | | (303) | | |
| **Unsec. Creditor Fund End. Balance** | $ | - | $ | - | $ | - | | |

| | 2021 | 2022 | 2023 | |
|---|---|---|---|---|
| Total PV of SKC Operating Income | 28,038 | 23,445 | 19,778 | |
| Total PV of SKC Adj. Operating Income | 14,021 | 10,687 | 8,345 | |
| | | | | |
| PV SKC Oper. Income to Loan Bal | 65.7% | 62.4% | 60.2% | |
| PV SKC Adj. Oper. Income to Loan Bal | 131.4% | 136.9% | 142.7% | |

| Values in 000's ($M) | 7/1/2021 | 8/1/2021 | 9/1/2021 | 10/1/2021 | 11/1/2021 | 12/1/2021 |
|---|---|---|---|---|---|---|
| **SklarEx** | | | | | | |
| **Operated Volume** | | | | | | |
| OIL (BBL) | 64,633 | 63,871 | 61,139 | 16,447 | 150 | - |
| GAS (MCF) | 268,267 | 264,388 | 252,119 | 107,934 | - | - |
| PLANT PRODUCT (BBL) | 13,882 | 13,725 | 13,125 | 2,235 | - | - |
| Oil Price - WTI NYMEX (5/24) | 63.87 | 63.61 | 63.26 | 62.78 | 62.20 | 61.89 |
| Gas Price - HHUB NYMEX (5/24) | 2.92 | 2.95 | 2.95 | 2.97 | 3.04 | 3.17 |
| Realized Price - Oil ($/Bbl) | 63.00 | 62.74 | 62.39 | 61.67 | 58.60 | - |
| Realized Price - Gas ($/Mcf) | 2.63 | 2.66 | 2.66 | 2.64 | - | - |
| Realized Price - NGL ($/Bbl) | 3.19 | 3.18 | 3.14 | 3.14 | - | - |
| Operated Oil Revenue | $ 4,072 | $ 4,007 | $ 3,814 | $ 1,014 | $ 9 | $ - |
| Operated Gas Revenue | 705 | 702 | 670 | 285 | - | - |
| Operated NGL Revenue | 44 | 44 | 42 | 7 | - | - |
| **Total Operated Revenue** | 4,821 | 4,753 | 4,526 | 1,306 | 9 | - |
| Revenue Payable to Others | (4,532) | (4,468) | (4,254) | (1,228) | (8) | - |
| Severance Tax Payable | (289) | (285) | (272) | (78) | (1) | - |
| Ad Valorem Tax Payable | - | - | - | - | - | - |
| **Subtotal Revenue Adjustments** | (4,821) | (4,753) | (4,526) | (1,306) | (9) | - |
| **Net Oil & Gas Revenue** | $ - | $ - | $ - | $ - | $ - | $ - |
| **Lease Operated Expenses** | | | | | | |
| Operating Expenses | (489) | (489) | (489) | (262) | (90) | - |
| Expenses Due From Others | 489 | 489 | 489 | 262 | 90 | - |
| Ad Valorem Tax Due From Others | - | - | - | - | - | - |
| COPAS Overhead Due From Others | 89 | 89 | 89 | 47 | 34 | - |
| **Net LOE** | $ 89 | $ 89 | $ 89 | $ 47 | $ 34 | $ - |
| **Oil & Gas Operating Income** | $ 89 | $ 89 | $ 89 | $ 47 | $ 34 | $ - |
| **Gas Plant Revenue** | | | | | | |
| Throughput (MCF) | 206,074 | 202,138 | 191,893 | 194,659 | - | - |
| Realized Fee ($/Mcf) | 0.65 | 0.65 | 0.65 | 0.65 | - | - |
| Processing Fee Revenue | $ 133 | $ 131 | $ 124 | $ 126 | $ - | $ - |
| **Subtotal Gas Plant Revenue** | $ 133 | $ 131 | $ 124 | $ 126 | $ - | $ - |
| **Gas Plant Expenses** | | | | | | |
| Operating Expense | (201) | (201) | (201) | (201) | - | - |
| Administrative Expenses | (17) | (17) | (17) | (17) | - | - |
| Repairs & Maintenance | (5) | (5) | (5) | (5) | - | - |
| Expenses Due From Others | 244 | 244 | 244 | 244 | - | - |
| **Net Gas Plant Expenses** | $ 21 | $ 21 | $ 21 | $ 21 | $ - | $ - |
| **Gas Plant Operating Income** | $ 154 | $ 151 | $ 145 | $ 146 | $ - | $ - |
| **Total Operating Income** | $ 242 | $ 240 | $ 233 | $ 193 | $ 34 | $ - |
| **G&A, Other** | | | | | | |
| Interest Expense | - | - | - | - | - | - |
| Payroll & Benefits | (132) | (132) | (132) | (132) | (132) | (132) |
| CEO Salary | - | - | - | - | - | - |
| Office Lease | (24) | (24) | (24) | (24) | (24) | (24) |
| Office Expenses | (16) | (16) | (16) | (16) | (11) | (11) |
| Software License Fees | (6) | (6) | (6) | (6) | (6) | (6) |
| Winddown Legal Fees | (76) | (76) | (134) | (122) | (110) | (110) |
| Moving & Storage | - | - | - | - | - | (75) |
| **Total G&A** | (255) | (255) | (312) | (300) | (283) | (358) |
| **SEC Adjusted Operating Income** | $ (12) | $ (15) | $ (79) | $ (107) | $ (249) | $ (358) |

| Values in 000's ($M) | 7/1/2021 | 8/1/2021 | 9/1/2021 | 10/1/2021 | 11/1/2021 | 12/1/2021 |
|---|---|---|---|---|---|---|
| **SklarCo** | | | | | | |
| **Net Volume** | | | | | | |
| OIL (BBL) | 12,243 | 12,074 | 11,533 | 11,714 | 11,160 | 11,405 |
| GAS (MCF) | 31,711 | 31,136 | 29,587 | 30,028 | 28,529 | 28,950 |
| PLANT PRODUCT (BBL) | 2,380 | 2,344 | 2,234 | 2,273 | 2,165 | 2,202 |
| *Oil Price - WTI NYMEX (5/24)* | *63.87* | *63.61* | *63.26* | *62.78* | *62.20* | *61.89* |
| *Gas Price - HHUB NYMEX (5/24)* | *2.92* | *2.95* | *2.95* | *2.97* | *3.04* | *3.17* |
| *Realized Price - Oil ($/Bbl)* | *62.48* | *62.23* | *61.88* | *61.42* | *60.86* | *60.55* |
| *Realized Price - Gas ($/Mcf)* | *2.47* | *2.50* | *2.50* | *2.52* | *2.60* | *2.73* |
| *Realized Price - NGL ($/Bbl)* | *3.19* | *3.18* | *3.16* | *3.14* | *3.11* | *3.09* |
| **Oil Revenue** | | | | | | |
| SklarEx Operated Oil Revenue | $ 541 | $ 532 | $ 506 | $ 509 | $ 480 | $ 489 |
| Non-Operated Oil Revenue | 224 | 219 | 208 | 210 | 199 | 202 |
| **Subtotal Oil Revenue** | 765 | 751 | 714 | 719 | 679 | 691 |
| **Gas Revenue** | | | | | | |
| SklarEx Operated Gas Revenue | $ 70 | $ 70 | $ 67 | $ 68 | $ 67 | $ 71 |
| Non-Operated Gas Revenue | 8 | 8 | 7 | 7 | 7 | 8 |
| **Subtotal Gas Revenue** | 78 | 78 | 74 | 76 | 74 | 79 |
| **NGL Revenue** | | | | | | |
| SklarEx Operated NGL Revenue | $ 6 | $ 6 | $ 6 | $ 6 | $ 5 | $ 5 |
| Non-Operated NGL Revenue | 2 | 2 | 1 | 1 | 1 | 1 |
| **Subtotal NGL Revenue** | 8 | 7 | 7 | 7 | 7 | 7 |
| **Severance Taxes** | | | | | | |
| SklarEx Operated Severance Tax | $ - | $ - | $ - | $ - | $ - | $ - |
| Non-Operated Severance Tax | (33) | (32) | (31) | (31) | (29) | (30) |
| **Subtotal NGL Revenue** | (33) | (32) | (31) | (31) | (29) | (30) |
| **Total Revenue** | $ 818 | $ 804 | $ 764 | $ 771 | $ 731 | $ 747 |
| **Lease Operated Expenses** | | | | | | |
| SklarEx Operated Expenses | (115) | (115) | (115) | (115) | (111) | (111) |
| Non-Operated Expenses | (37) | (37) | (37) | (37) | (37) | (37) |
| Ad Valorem Taxes | - | - | - | - | - | (35) |
| **Total LOE Expenses** | (152) | (152) | (152) | (152) | (148) | (183) |
| **Total Operating Income** | $ 666 | $ 652 | $ 612 | $ 619 | $ 583 | $ 564 |
| **G&A, Other** | | | | | | |
| Hedge Settlement | - | - | - | - | - | - |
| Recurring Investment Income** | 17 | 17 | 17 | 17 | 17 | 17 |
| JUD, SMMS** | 10 | 10 | 10 | 10 | 10 | 10 |
| Interest Expense | (103) | (102) | (97) | (98) | (93) | (94) |
| Payroll & Benefits | - | - | - | - | - | - |
| Independent Mgr | - | - | - | - | - | - |
| Office Lease | - | - | - | - | - | - |
| Office Expenses | - | - | - | - | - | - |
| Software License Fees | - | - | - | - | - | - |
| Moving & Storage | - | - | - | - | - | - |
| **Subject to Determination of Ownership | | | | | | |
| **Subtotal SKC G&A, Other** | (76) | (75) | (70) | (71) | (66) | (68) |
| **SKC Adjusted Operating Income** | $ 590 | $ 577 | $ 542 | $ 548 | $ 517 | $ 496 |
| **SEC + SKC Adjusted Operating Income** | $ 578 | $ 562 | $ 463 | $ 441 | $ 268 | $ 138 |

| Values in 000's ($M) | | 7/1/2021 | | 8/1/2021 | | 9/1/2021 | | 10/1/2021 | | 11/1/2021 | | 12/1/2021 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Calculated Fields** | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| UCC Trust | | 250 | | - | | - | | - | | - | | - |
| SEC Cash Reserve | | - | | - | | - | | - | | - | | - |
| SKC Cash Reserve | | 125 | | 125 | | - | | - | | - | | - |
| | | | | | | | | | | | | |
| **Total Cash Reserve Funding** | $ | 375 | $ | 125 | $ | - | $ | - | $ | - | $ | - |
| | | | | | | | | | | | | |
| UCC Trust Reserve Balance | | 250 | | 250 | | 250 | | 250 | | 250 | | 250 |
| | | | | | | | | | | | | |
| SEC Cash Reserve Balance | | - | | - | | - | | - | | - | | - |
| | | | | | | | | | | | | |
| SKC Cash Reserve Balance | | 125 | | 250 | | 250 | | 250 | | 250 | | 250 |
| | | | | | | | | | | | | |
| **Post-Reserve SEC Operating Cash Flow** | $ | (12) | $ | (15) | $ | (79) | $ | (107) | $ | (249) | $ | (358) |
| | | | | | | | | | | | | |
| **Post-Reserve SKC Operating Cash Flow (After Funding SEC Shortfall)** | $ | 202 | $ | 438 | $ | 463 | $ | 441 | $ | 268 | $ | 138 |
| | | | | | | | | | | | | |
| SEC Bank-Dedicated Cash Flow | | - | | - | | - | | - | | - | | - |
| SKC Bank-Dedicated Cash Flow | | 182 | | 394 | | 417 | | 397 | | 241 | | 124 |
| **Total Bank-Dedicated Cash Flow** | $ | 182 | $ | 394 | $ | 417 | $ | 397 | $ | 241 | $ | 124 |
| | | | | | | | | | | | | |
| **Beginning Loan Balance** | $ | 20,172 | $ | 19,990 | $ | 19,596 | $ | 19,179 | $ | 18,782 | $ | 18,542 |
| Repayment | | (182) | | (394) | | (417) | | (397) | | (241) | | (124) |
| **Ending Loan Balance** | $ | 19,990 | $ | 19,596 | $ | 19,179 | $ | 18,782 | $ | 18,542 | $ | 18,417 |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| SEC Unsecured Creditor Fund | | - | | - | | - | | - | | - | | - |
| SKC Contributed Unsecured Creditor Fund | | 20 | | 44 | | 46 | | 44 | | 27 | | 14 |
| **Total Unsecured Creditor Fund** | $ | 20 | $ | 44 | $ | 46 | $ | 44 | $ | 27 | $ | 14 |
| | | | | | | | | | | | | |
| **Unsec. Creditor Fund Beg. Balance** | $ | 20 | $ | 64 | $ | 110 | $ | 44 | $ | 71 | $ | 85 |
| Unsecured Creditor Fund Payments | | - | | - | | (110) | | - | | - | | (85) |
| **Unsec. Creditor Fund End. Balance** | $ | 20 | $ | 64 | $ | - | $ | 44 | $ | 71 | $ | - |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| Total PV of SKC Operating Income | | 30,133 | | 29,683 | | 29,237 | | 28,835 | | 28,416 | | 28,038 |
| Total PV of SKC Adj. Operating Income | | 16,259 | | 15,784 | | 15,315 | | 14,882 | | 14,435 | | 14,021 |
| | | | | | | | | | | | | |
| PV SKC Oper. Income to Loan Bal | | 66.3% | | 66.0% | | 65.6% | | 65.1% | | 65.3% | | 65.7% |
| PV SKC Adj. Oper. Income to Loan Bal | | 122.9% | | 124.1% | | 125.2% | | 126.2% | | 128.4% | | 131.4% |

| Values in 000's ($M) | 1/1/2022 | 2/1/2022 | 3/1/2022 | 4/1/2022 | 5/1/2022 | 6/1/2022 | 7/1/2022 | 8/1/2022 | 9/1/2022 | 10/1/2022 | 11/1/2022 | 12/1/2022 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SklarEx** | | | | | | | | | | | | |
| **Operated Volume** | | | | | | | | | | | | |
| OIL (BBL) | - | - | - | - | - | - | - | - | - | - | - | - |
| GAS (MCF) | - | - | - | - | - | - | - | - | - | - | - | - |
| PLANT PRODUCT (BBL) | - | - | - | - | - | - | - | - | - | - | - | - |
| *Oil Price - WTI NYMEX (5/24)* | *62.20* | *61.89* | *61.39* | *60.99* | *60.70* | *60.62* | *60.23* | *59.61* | *60.78* | *60.42* | *59.98* | *59.79* |
| *Gas Price - HHUB NYMEX (5/24)* | *3.04* | *3.17* | *3.27* | *3.18* | *3.01* | *2.62* | *2.56* | *2.59* | *2.64* | *2.63* | *2.62* | *2.64* |
| *Realized Price - Oil ($/Bbl)* | - | - | - | - | - | - | - | - | - | - | - | - |
| *Realized Price - Gas ($/Mcf)* | - | - | - | - | - | - | - | - | - | - | - | - |
| *Realized Price - NGL ($/Bbl)* | - | - | - | - | - | - | - | - | - | - | - | - |
| Operated Oil Revenue | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| Operated Gas Revenue | | | | | | | | | | | | |
| Operated NGL Revenue | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operated Revenue** | - | - | - | - | - | - | - | - | - | - | - | - |
| Revenue Payable to Others | | | | | | | | | | | | |
| Severance Tax Payable | | | | | | | | | | | | |
| Ad Valorem Tax Payable | - | - | - | - | - | - | - | - | - | - | - | - |
| **Subtotal Revenue Adjustments** | - | - | - | - | - | - | - | - | - | - | - | - |
| **Net Oil & Gas Revenue** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| **Lease Operated Expenses** | | | | | | | | | | | | |
| Operating Expenses | | | | | | | | | | | | |
| Expenses Due From Others | | | | | | | | | | | | |
| Ad Valorem Tax Due From Others | | | | | | | | | | | | |
| COPAS Overhead Due From Others | - | - | - | - | - | - | - | - | - | - | - | - |
| **Net LOE** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| **Oil & Gas Operating Income** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| **Gas Plant Revenue** | | | | | | | | | | | | |
| Throughput (MCF) | - | - | - | - | - | - | - | - | - | - | - | - |
| *Realized Fee ($/Mcf)* | - | - | - | - | - | - | - | - | - | - | - | - |
| Processing Fee Revenue | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| **Subtotal Gas Plant Revenue** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| **Gas Plant Expenses** | | | | | | | | | | | | |
| Operating Expense | | | | | | | | | | | | |
| Administrative Expenses | | | | | | | | | | | | |
| Repairs & Maintenance | | | | | | | | | | | | |
| Expenses Due From Others | - | - | - | - | - | - | - | - | - | - | - | - |
| **Net Gas Plant Expenses** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| **Gas Plant Operating Income** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| **Total Operating Income** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |
| **G&A, Other** | | | | | | | | | | | | |
| Interest Expense | | | | | | | | | | | | |
| Payroll & Benefits | | | | | | | | | | | | |
| CEO Salary | | | | | | | | | | | | |
| Office Lease | | | | | | | | | | | | |
| Office Expenses | | | | | | | | | | | | |
| Software License Fees | | | | | | | | | | | | |
| Winddown Legal Fees | | | | | | | | | | | | |
| Moving & Storage | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total G&A** | - | - | - | - | - | - | - | - | - | - | - | - |
| **SEC Adjusted Operating Income** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | - |

| Values in 000's ($M) | | 1/1/2022 | 2/1/2022 | 3/1/2022 | 4/1/2022 | 5/1/2022 | 6/1/2022 | 7/1/2022 | 8/1/2022 | 9/1/2022 | 10/1/2022 | 11/1/2022 | 12/1/2022 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SklarCo** | | | | | | | | | | | | | |
| **Net Volume** | | | | | | | | | | | | | |
| OIL (BBL) | | 11,284 | 10,087 | 11,009 | 10,654 | 11,046 | 10,676 | 11,036 | 11,008 | 10,672 | 11,003 | 10,725 | 10,537 |
| GAS (MCF) | | 28,370 | 25,097 | 27,212 | 25,920 | 26,429 | 25,235 | 25,747 | 25,420 | 24,208 | 24,536 | 23,437 | 23,473 |
| PLANT PRODUCT (BBL) | | 2,161 | 1,912 | 2,074 | 1,981 | 2,028 | 1,944 | 1,991 | 1,974 | 1,884 | 1,910 | 1,831 | 1,824 |
| *Oil Price - WTI NYMEX (5/24)* | | *61.39* | *60.99* | *60.70* | *60.62* | *60.23* | *59.61* | *60.78* | *60.42* | *59.98* | *59.79* | *57.80* | *57.88* |
| *Gas Price - HHUB NYMEX (5/24)* | | *3.27* | *3.18* | *3.01* | *2.62* | *2.56* | *2.59* | *2.64* | *2.63* | *2.62* | *2.64* | *2.71* | *2.86* |
| *Realized Price - Oil ($/Bbl)* | | *60.06* | *59.66* | *59.39* | *59.31* | *58.93* | *58.32* | *59.49* | *59.14* | *58.70* | *58.52* | *56.54* | *56.59* |
| *Realized Price - Gas ($/Mcf)* | | *2.83* | *2.74* | *2.56* | *2.18* | *2.12* | *2.15* | *2.20* | *2.20* | *2.18* | *2.21* | *2.28* | *2.42* |
| *Realized Price - NGL ($/Bbl)* | | *3.07* | *3.05* | *3.04* | *3.03* | *3.01* | *2.98* | *3.04* | *3.02* | *3.00* | *2.99* | *2.89* | *2.89* |
| **Oil Revenue** | | | | | | | | | | | | | |
| SklarEx Operated Oil Revenue | $ | 481 $ | 427 $ | 464 $ | 451 $ | 468 $ | 449 $ | 476 $ | 474 $ | 459 $ | 473 $ | 449 $ | 436 |
| Non-Operated Oil Revenue | | 197 | 175 | 190 | 181 | 183 | 173 | 180 | 177 | 168 | 171 | 157 | 161 |
| **Subtotal Oil Revenue** | | **678** | **602** | **654** | **632** | **651** | **623** | **657** | **651** | **627** | **644** | **606** | **596** |
| **Gas Revenue** | | | | | | | | | | | | | |
| SklarEx Operated Gas Revenue | $ | 72 $ | 62 $ | 63 $ | 52 $ | 51 $ | 50 $ | 52 $ | 51 $ | 49 $ | 50 $ | 49 $ | 52 |
| Non-Operated Gas Revenue | | 8 | 7 | 7 | 5 | 5 | 5 | 5 | 5 | 4 | 4 | 4 | 5 |
| **Subtotal Gas Revenue** | | **80** | **69** | **70** | **56** | **56** | **54** | **57** | **56** | **53** | **54** | **53** | **57** |
| **NGL Revenue** | | | | | | | | | | | | | |
| SklarEx Operated NGL Revenue | $ | 5 $ | 5 $ | 5 $ | 5 $ | 5 $ | 5 $ | 5 $ | 5 $ | 5 $ | 5 $ | 4 $ | 4 |
| Non-Operated NGL Revenue | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| **Subtotal NGL Revenue** | | **7** | **6** | **6** | **6** | **6** | **6** | **6** | **6** | **6** | **6** | **5** | **5** |
| **Severance Taxes** | | | | | | | | | | | | | |
| SklarEx Operated Severance Tax | $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Non-Operated Severance Tax | | (29) | (26) | (28) | (26) | (27) | (25) | (26) | (26) | (24) | (25) | (23) | (24) |
| **Subtotal NGL Revenue** | | **(29)** | **(26)** | **(28)** | **(26)** | **(27)** | **(25)** | **(26)** | **(26)** | **(24)** | **(25)** | **(23)** | **(24)** |
| **Total Revenue** | $ | **735 $** | **651 $** | **702 $** | **668 $** | **686 $** | **657 $** | **693 $** | **687 $** | **661 $** | **679 $** | **642 $** | **635** |
| **Lease Operated Expenses** | | | | | | | | | | | | | |
| SklarEx Operated Expenses | | (82) | (82) | (79) | (79) | (79) | (79) | (73) | (70) | (70) | (70) | (70) | (70) |
| Non-Operated Expenses | | (37) | (37) | (37) | (37) | (37) | (37) | (37) | (37) | (37) | (37) | (37) | (37) |
| Ad Valorem Taxes | | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total LOE Expenses** | | **(119)** | **(119)** | **(116)** | **(116)** | **(116)** | **(116)** | **(110)** | **(107)** | **(107)** | **(107)** | **(107)** | **(107)** |
| **Total Operating Income** | $ | **616 $** | **531 $** | **586 $** | **552 $** | **570 $** | **541 $** | **583 $** | **580 $** | **554 $** | **572 $** | **536 $** | **528** |
| **G&A, Other** | | | | | | | | | | | | | |
| Hedge Settlement | | - | - | - | - | - | - | - | - | - | - | - | - |
| Recurring Investment Income** | | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 17 |
| JUD, SMMS** | | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 |
| Interest Expense | | (94) | (83) | (91) | (86) | (87) | (83) | (84) | (83) | (78) | (79) | (75) | (76) |
| Payroll & Benefits | | (112) | (112) | (112) | (112) | (112) | (112) | (112) | (112) | (112) | (112) | (112) | (112) |
| Independent Mgr | | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) |
| Office Lease | | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) |
| Office Expenses | | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) |
| Software License Fees | | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) |
| Moving & Storage | | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) |
| **Subject to Determination of Ownership | | | | | | | | | | | | | |
| **Subtotal SKC G&A, Other** | | (223) | (212) | (219) | (215) | (216) | (212) | (213) | (211) | (207) | (208) | (204) | (205) |
| **SKC Adjusted Operating Income** | $ | **393 $** | **319 $** | **366 $** | **337 $** | **354 $** | **329 $** | **370 $** | **369 $** | **347 $** | **364 $** | **332 $** | **323** |
| **SEC + SKC Adjusted Operating Income** | $ | **393 $** | **319 $** | **366 $** | **337 $** | **354 $** | **329 $** | **370 $** | **369 $** | **347 $** | **364 $** | **332 $** | **323** |

| Values in 000's ($M) | | 1/1/2022 | 2/1/2022 | 3/1/2022 | 4/1/2022 | 5/1/2022 | 6/1/2022 | 7/1/2022 | 8/1/2022 | 9/1/2022 | 10/1/2022 | 11/1/2022 | 12/1/2022 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Calculated Fields** | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| UCC Trust | | - | - | - | - | - | - | - | - | - | - | - | - |
| SEC Cash Reserve | | - | - | - | - | - | - | - | - | - | - | - | - |
| SKC Cash Reserve | | - | - | - | - | - | - | - | - | - | - | - | - |
| | | | | | | | | | | | | | |
| **Total Cash Reserve Funding** | $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| UCC Trust Reserve Balance | | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| SEC Cash Reserve Balance | | - | - | - | - | - | - | - | - | - | - | - | - |
| SKC Cash Reserve Balance | | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| **Post-Reserve SEC Operating Cash Flow** | $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| **Post-Reserve SKC Operating Cash Flow (After Funding SEC Shortfall)** | $ | 393 $ | 319 $ | 366 $ | 337 $ | 354 $ | 329 $ | 370 $ | 369 $ | 347 $ | 364 $ | 332 $ | 323 |
| | | | | | | | | | | | | | |
| SEC Bank-Dedicated Cash Flow | | - | - | - | - | - | - | - | - | - | - | - | - |
| SKC Bank-Dedicated Cash Flow | | 354 | 287 | 330 | 303 | 319 | 297 | 333 | 332 | 312 | 328 | 298 | 291 |
| **Total Bank-Dedicated Cash Flow** | $ | 354 $ | 287 $ | 330 $ | 303 $ | 319 $ | 297 $ | 333 $ | 332 $ | 312 $ | 328 $ | 298 $ | 291 |
| | | | | | | | | | | | | | |
| **Beginning Loan Balance** | $ | 18,417 $ | 18,063 $ | 17,776 $ | 17,446 $ | 17,143 $ | 16,824 $ | 16,528 $ | 16,194 $ | 15,862 $ | 15,550 $ | 15,222 $ | 14,924 |
| Repayment | | (354) | (287) | (330) | (303) | (319) | (297) | (333) | (332) | (312) | (328) | (298) | (291) |
| **Ending Loan Balance** | $ | 18,063 $ | 17,776 $ | 17,446 $ | 17,143 $ | 16,824 $ | 16,528 $ | 16,194 $ | 15,862 $ | 15,550 $ | 15,222 $ | 14,924 $ | 14,633 |
| | | | | | | | | | | | | | |
| SEC Unsecured Creditor Fund | | - | - | - | - | - | - | - | - | - | - | - | - |
| SKC Contributed Unsecured Creditor Fund | | 39 | 32 | 37 | 34 | 35 | 33 | 37 | 37 | 35 | 36 | 33 | 32 |
| **Total Unsecured Creditor Fund** | $ | 39 $ | 32 $ | 37 $ | 34 $ | 35 $ | 33 $ | 37 $ | 37 $ | 35 $ | 36 $ | 33 $ | 32 |
| | | | | | | | | | | | | | |
| **Unsec. Creditor Fund Beg. Balance** | $ | 39 $ | 71 $ | 108 $ | 34 $ | 69 $ | 102 $ | 37 $ | 74 $ | 109 $ | 36 $ | 70 $ | 102 |
| Unsecured Creditor Fund Payments | | - | - | (108) | - | - | (102) | - | - | (109) | - | - | (102) |
| **Unsec. Creditor Fund End. Balance** | $ | 39 $ | 71 $ | - $ | 34 $ | 69 $ | - $ | 37 $ | 74 $ | - $ | 36 $ | 70 $ | - |
| | | | | | | | | | | | | | |
| Total PV of SKC Operating Income | | 27,676 | 27,239 | 26,904 | 26,505 | 26,144 | 25,755 | 25,399 | 24,998 | 24,591 | 24,214 | 23,810 | 23,445 |
| Total PV of SKC Adj. Operating Income | | 13,624 | 13,319 | 13,095 | 12,819 | 12,574 | 12,306 | 12,065 | 11,781 | 11,493 | 11,228 | 10,941 | 10,687 |
| | | | | | | | | | | | | | |
| PV SKC Oper. Income to Loan Bal | | 65.3% | 65.3% | 64.8% | 64.7% | 64.4% | 64.2% | 63.8% | 63.5% | 63.2% | 62.9% | 62.7% | 62.4% |
| PV SKC Adj. Oper. Income to Loan Bal | | 132.6% | 133.5% | 133.2% | 133.7% | 133.8% | 134.3% | 134.2% | 134.6% | 135.3% | 135.6% | 136.4% | 136.9% |

| Values in 000's ($M) | 1/1/2023 | 2/1/2023 | 3/1/2023 | 4/1/2023 | 5/1/2023 | 6/1/2023 | 7/1/2023 | 8/1/2023 | 9/1/2023 | 10/1/2023 | 11/1/2023 | 12/1/2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SklarEx** | | | | | | | | | | | | |
| **Operated Volume** | | | | | | | | | | | | |
| OIL (BBL) | - | - | - | - | - | - | - | - | - | - | - | - |
| GAS (MCF) | - | - | - | - | - | - | - | - | - | - | - | - |
| PLANT PRODUCT (BBL) | - | - | - | - | - | - | - | - | - | - | - | - |
| Oil Price - WTI NYMEX (5/24) | 57.80 | 57.88 | 58.20 | 58.61 | 58.31 | 58.03 | 57.78 | 56.54 | 57.29 | 57.05 | 56.83 | 56.63 |
| Gas Price - HHUB NYMEX (5/24) | 2.71 | 2.86 | 2.97 | 2.92 | 2.76 | 2.43 | 2.40 | 2.44 | 2.48 | 2.49 | 2.48 | 2.52 |
| Realized Price - Oil ($/Bbl) | - | - | - | - | - | - | - | - | - | - | - | - |
| Realized Price - Gas ($/Mcf) | - | - | - | - | - | - | - | - | - | - | - | - |
| Realized Price - NGL ($/Bbl) | - | - | - | - | - | - | - | - | - | - | - | - |
| Operated Oil Revenue | $ - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Operated Gas Revenue | - | - | - | - | - | - | - | - | - | - | - | - |
| Operated NGL Revenue | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operated Revenue** | - | - | - | - | - | - | - | - | - | - | - | - |
| Revenue Payable to Others | - | - | - | - | - | - | - | - | - | - | - | - |
| Severance Tax Payable | - | - | - | - | - | - | - | - | - | - | - | - |
| Ad Valorem Tax Payable | - | - | - | - | - | - | - | - | - | - | - | - |
| **Subtotal Revenue Adjustments** | - | - | - | - | - | - | - | - | - | - | - | - |
| **Net Oil & Gas Revenue** | $ - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| **Lease Operated Expenses** | | | | | | | | | | | | |
| Operating Expenses | - | - | - | - | - | - | - | - | - | - | - | - |
| Expenses Due From Others | - | - | - | - | - | - | - | - | - | - | - | - |
| Ad Valorem Tax Due From Others | - | - | - | - | - | - | - | - | - | - | - | - |
| COPAS Overhead Due From Others | - | - | - | - | - | - | - | - | - | - | - | - |
| **Net LOE** | $ - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| **Oil & Gas Operating Income** | $ - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| **Gas Plant Revenue** | | | | | | | | | | | | |
| Throughput (MCF) | - | - | - | - | - | - | - | - | - | - | - | - |
| Realized Fee ($/Mcf) | - | - | - | - | - | - | - | - | - | - | - | - |
| Processing Fee Revenue | $ - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| **Subtotal Gas Plant Revenue** | $ - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| **Gas Plant Expenses** | | | | | | | | | | | | |
| Operating Expense | - | - | - | - | - | - | - | - | - | - | - | - |
| Administrative Expenses | - | - | - | - | - | - | - | - | - | - | - | - |
| Repairs & Maintenance | - | - | - | - | - | - | - | - | - | - | - | - |
| Expenses Due From Others | - | - | - | - | - | - | - | - | - | - | - | - |
| **Net Gas Plant Expenses** | $ - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| **Gas Plant Operating Income** | $ - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| **Total Operating Income** | $ - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| **G&A, Other** | | | | | | | | | | | | |
| Interest Expense | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll & Benefits | - | - | - | - | - | - | - | - | - | - | - | - |
| CEO Salary | - | - | - | - | - | - | - | - | - | - | - | - |
| Office Lease | - | - | - | - | - | - | - | - | - | - | - | - |
| Office Expenses | - | - | - | - | - | - | - | - | - | - | - | - |
| Software License Fees | - | - | - | - | - | - | - | - | - | - | - | - |
| Winddown Legal Fees | - | - | - | - | - | - | - | - | - | - | - | - |
| Moving & Storage | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total G&A** | - | - | - | - | - | - | - | - | - | - | - | - |
| **SEC Adjusted Operating Income** | $ - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |

| Values in 000's ($M) | 1/1/2023 | 2/1/2023 | 3/1/2023 | 4/1/2023 | 5/1/2023 | 6/1/2023 | 7/1/2023 | 8/1/2023 | 9/1/2023 | 10/1/2023 | 11/1/2023 | 12/1/2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SklarCo** | | | | | | | | | | | | |
| **Net Volume** | | | | | | | | | | | | |
| OIL (BBL) | 10,380 | 9,252 | 10,065 | 9,551 | 9,738 | 9,299 | 9,482 | 9,355 | 8,934 | 9,112 | 8,703 | 8,858 |
| GAS (MCF) | 22,840 | 20,100 | 21,696 | 20,450 | 20,594 | 19,419 | 19,565 | 19,069 | 17,995 | 18,142 | 17,128 | 17,277 |
| PLANT PRODUCT (BBL) | 1,768 | 1,551 | 1,669 | 1,567 | 1,573 | 1,478 | 1,484 | 1,441 | 1,355 | 1,362 | 1,281 | 1,288 |
| *Oil Price - WTI NYMEX (5/24)* | *58.20* | *58.61* | *58.31* | *58.03* | *57.78* | *56.54* | *57.29* | *57.05* | *56.83* | *56.63* | *56.45* | *55.17* |
| *Gas Price - HHUB NYMEX (5/24)* | *2.97* | *2.92* | *2.76* | *2.43* | *2.40* | *2.44* | *2.48* | *2.49* | *2.48* | *2.52* | *2.60* | *2.80* |
| *Realized Price - Oil ($/Bbl)* | *56.92* | *57.33* | *57.04* | *56.78* | *56.53* | *55.30* | *56.05* | *55.81* | *55.59* | *55.39* | *55.21* | *53.94* |
| *Realized Price - Gas ($/Mcf)* | *2.53* | *2.49* | *2.32* | *2.00* | *1.96* | *2.01* | *2.05* | *2.06* | *2.05* | *2.08* | *2.16* | *2.37* |
| *Realized Price - NGL ($/Bbl)* | *2.91* | *2.93* | *2.92* | *2.90* | *2.89* | *2.83* | *2.86* | *2.85* | *2.84* | *2.83* | *2.82* | *2.76* |
| **Oil Revenue** | | | | | | | | | | | | |
| SklarEx Operated Oil Revenue | $ 431 $ | 387 $ | 418 $ | 394 $ | 400 $ | 373 $ | 386 $ | 379 $ | 360 $ | 366 $ | 348 $ | 347 |
| Non-Operated Oil Revenue | 160 | 143 | 156 | 148 | 151 | 141 | 146 | 143 | 137 | 139 | 132 | 131 |
| **Subtotal Oil Revenue** | **591** | **530** | **574** | **542** | **551** | **514** | **531** | **522** | **497** | **505** | **480** | **478** |
| **Gas Revenue** | | | | | | | | | | | | |
| SklarEx Operated Gas Revenue | $ 53 $ | 46 $ | 46 $ | 38 $ | 37 $ | 36 $ | 37 $ | 36 $ | 34 $ | 35 $ | 34 $ | 37 |
| Non-Operated Gas Revenue | 5 | 4 | 4 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 |
| **Subtotal Gas Revenue** | **58** | **50** | **50** | **41** | **40** | **39** | **40** | **39** | **37** | **38** | **37** | **41** |
| **NGL Revenue** | | | | | | | | | | | | |
| SklarEx Operated NGL Revenue | $ 4 $ | 4 $ | 4 $ | 4 $ | 4 $ | 3 $ | 3 $ | 3 $ | 3 $ | 3 $ | 3 $ | 3 |
| Non-Operated NGL Revenue | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| **Subtotal NGL Revenue** | **5** | **5** | **5** | **5** | **5** | **4** | **4** | **4** | **4** | **4** | **4** | **4** |
| **Severance Taxes** | | | | | | | | | | | | |
| SklarEx Operated Severance Tax | $ - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - $ | - |
| Non-Operated Severance Tax | (23) | (21) | (23) | (22) | (22) | (20) | (21) | (21) | (20) | (20) | (19) | (19) |
| **Subtotal NGL Revenue** | **(23)** | **(21)** | **(23)** | **(22)** | **(22)** | **(20)** | **(21)** | **(21)** | **(20)** | **(20)** | **(19)** | **(19)** |
| **Total Revenue** | **$ 630 $** | **564 $** | **607 $** | **566 $** | **574 $** | **537 $** | **555 $** | **545 $** | **518 $** | **526 $** | **502 $** | **503** |
| **Lease Operated Expenses** | | | | | | | | | | | | |
| SklarEx Operated Expenses | (70) | (70) | (70) | (67) | (67) | (67) | (67) | (67) | (67) | (67) | (67) | (67) |
| Non-Operated Expenses | (37) | (37) | (37) | (37) | (37) | (37) | (37) | (37) | (37) | (37) | (37) | (37) |
| Ad Valorem Taxes | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total LOE Expenses** | **(107)** | **(107)** | **(107)** | **(104)** | **(104)** | **(104)** | **(104)** | **(104)** | **(104)** | **(104)** | **(104)** | **(104)** |
| **Total Operating Income** | **$ 524 $** | **457 $** | **500 $** | **462 $** | **470 $** | **433 $** | **451 $** | **441 $** | **414 $** | **422 $** | **398 $** | **399** |
| **G&A, Other** | | | | | | | | | | | | |
| Hedge Settlement | - | - | - | - | - | - | - | - | - | - | - | - |
| Recurring Investment Income** | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 17 | 17 |
| JUD, SMMS** | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 |
| Interest Expense | (75) | (66) | (72) | (68) | (69) | (66) | (67) | (66) | (63) | (64) | (61) | (62) |
| Payroll & Benefits | (112) | (112) | (112) | (112) | (112) | (112) | (112) | (112) | (112) | (112) | (112) | (112) |
| Independent Mgr | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) |
| Office Lease | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) |
| Office Expenses | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) | (8) |
| Software License Fees | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) |
| Moving & Storage | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) |
| **Subject to Determination of Ownership | | | | | | | | | | | | |
| **Subtotal SKC G&A, Other** | **(203)** | **(195)** | **(201)** | **(197)** | **(198)** | **(195)** | **(196)** | **(195)** | **(191)** | **(193)** | **(189)** | **(190)** |
| **SKC Adjusted Operating Income** | **$ 320 $** | **262 $** | **299 $** | **265 $** | **272 $** | **238 $** | **255 $** | **246 $** | **222 $** | **230 $** | **209 $** | **209** |
| **SEC + SKC Adjusted Operating Income** | **$ 320 $** | **262 $** | **299 $** | **265 $** | **272 $** | **238 $** | **255 $** | **246 $** | **222 $** | **230 $** | **209 $** | **209** |

| Values in 000's ($M) | 1/1/2023 | 2/1/2023 | 3/1/2023 | 4/1/2023 | 5/1/2023 | 6/1/2023 | 7/1/2023 | 8/1/2023 | 9/1/2023 | 10/1/2023 | 11/1/2023 | 12/1/2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Calculated Fields** | | | | | | | | | | | | |
| UCC Trust | - | - | - | - | - | - | - | - | - | - | - | - |
| SEC Cash Reserve | - | - | - | - | - | - | - | - | - | - | - | - |
| SKC Cash Reserve | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Cash Reserve Funding** | **$ - $** | **- $** | **- $** | **- $** | **- $** | **- $** | **- $** | **- $** | **- $** | **- $** | **- $** | **-** |
| UCC Trust Reserve Balance | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| SEC Cash Reserve Balance | - | - | - | - | - | - | - | - | - | - | - | - |
| SKC Cash Reserve Balance | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| **Post-Reserve SEC Operating Cash Flow** | **$ - $** | **- $** | **- $** | **- $** | **- $** | **- $** | **- $** | **- $** | **- $** | **- $** | **- $** | **-** |
| **Post-Reserve SKC Operating Cash Flow (After Funding SEC Shortfall)** | **$ 320 $** | **262 $** | **299 $** | **265 $** | **272 $** | **238 $** | **255 $** | **246 $** | **222 $** | **230 $** | **209 $** | **209** |
| SEC Bank-Dedicated Cash Flow | - | - | - | - | - | - | - | - | - | - | - | - |
| SKC Bank-Dedicated Cash Flow | 288 | 236 | 269 | 239 | 244 | 214 | 229 | 222 | 200 | 207 | 188 | 188 |
| **Total Bank-Dedicated Cash Flow** | **$ 288 $** | **236 $** | **269 $** | **239 $** | **244 $** | **214 $** | **229 $** | **222 $** | **200 $** | **207 $** | **188 $** | **188** |
| **Beginning Loan Balance** | **$ 14,633 $** | **14,345 $** | **14,109 $** | **13,839 $** | **13,600 $** | **13,356 $** | **13,142 $** | **12,912 $** | **12,691 $** | **12,491 $** | **12,284 $** | **12,096** |
| Repayment | (288) | (236) | (269) | (239) | (244) | (214) | (229) | (222) | (200) | (207) | (188) | (188) |
| **Ending Loan Balance** | **$ 14,345 $** | **14,109 $** | **13,839 $** | **13,600 $** | **13,356 $** | **13,142 $** | **12,912 $** | **12,691 $** | **12,491 $** | **12,284 $** | **12,096 $** | **11,908** |
| SEC Unsecured Creditor Fund | - | - | - | - | - | - | - | - | - | - | - | - |
| SKC Contributed Unsecured Creditor Fund | 32 | 26 | 30 | 27 | 27 | 24 | 25 | 25 | 22 | 23 | 21 | 21 |
| **Total Unsecured Creditor Fund** | **$ 32 $** | **26 $** | **30 $** | **27 $** | **27 $** | **24 $** | **25 $** | **25 $** | **22 $** | **23 $** | **21 $** | **21** |
| **Unsec. Creditor Fund Beg. Balance** | **$ 32 $** | **58 $** | **88 $** | **27 $** | **54 $** | **78 $** | **25 $** | **50 $** | **72 $** | **23 $** | **44 $** | **65** |
| Unsecured Creditor Fund Payments | - | - | (88) | - | - | (78) | - | - | (72) | - | - | (65) |
| **Unsec. Creditor Fund End. Balance** | **$ 32 $** | **58 $** | **- $** | **27 $** | **54 $** | **- $** | **25 $** | **50 $** | **- $** | **23 $** | **44 $** | **-** |
| Total PV of SKC Operating Income | 23,085 | 22,711 | 22,418 | 22,073 | 21,770 | 21,451 | 21,173 | 20,874 | 20,579 | 20,313 | 20,032 | 19,778 |
| Total PV of SKC Adj. Operating Income | 10,440 | 10,187 | 9,997 | 9,767 | 9,572 | 9,366 | 9,195 | 9,006 | 8,822 | 8,663 | 8,493 | 8,345 |
| PV SKC Oper. Income to Loan Bal | 62.1% | 62.1% | 61.7% | 61.6% | 61.4% | 61.3% | 61.0% | 60.8% | 60.7% | 60.5% | 60.4% | 60.2% |
| PV SKC Adj. Oper. Income to Loan Bal | 137.4% | 138.5% | 138.4% | 139.2% | 139.5% | 140.3% | 140.4% | 140.9% | 141.6% | 141.8% | 142.4% | 142.7% |

7/1/2021

Exhibit B

*SEC Liquidation Analysis*

| SEC Assets | Value | Cost of Sale/Recovery | Net Value |
|---|---|---|---|
| East West Bank - Operating (Current Balance) | $ 309,727.44 | $ - | $ 309,727.44 |
| East West Bank - Revenue (Current Balance) [1] | $ - | $ - | $ - |
| East West Bank - Payroll | $ 1,755.00 | $ - | $ 1,755.00 |
| East West Bank - Benefits | $ 4,357.28 | $ - | $ 4,357.28 |
| Note Receivable - Marshall Jones | $ 54,087.50 | | $ 54,087.50 |
| Accounts Receivables - JIB Obligations [2] | $ 3,371,242.35 | $ 1,011,372.71 | $ 2,359,869.65 |
| Receivable Owed by Sklar Transportation [3] | $ - | | $ - |
| Deposited Funds for Benny Card for Employee HRAs; heald by Werntz | $ 18,631.12 | $ - | $ 18,631.12 |
| THP Partners II, LP | $ - | | $ - |
| Hedging Agreements | $ - | | $ - |
| Office Furniture | $ 46,000.00 | $ 4,600.00 | $ 41,400.00 |
| Office Fixtures | $ 17,000.00 | $ 1,700.00 | $ 15,300.00 |
| Misc. Office Supplies and Computer Hardware | $ 32,000.00 | $ 3,200.00 | $ 28,800.00 |
| Software Licenses | $ - | $ - | $ - |
| Vehicles (Equity after Payment of Secured Claims of Ford and Ally) | $ - | $ - | $ - |
| Sklarexploration.com | $ - | | $ - |
| Interests in Participation and Unit Operating Agreements as Operator | $ - | | $ - |
| **Total** | **$ 3,854,800.69** | $ 1,020,872.71 | $ 2,833,927.99 |
| | | | |
| EWB Secured Claim | $22,989,650.74 | | |
| Chapter 7 Trustee Fees | $ 128,495.29 | | |
| **Funds Available for Unsecured Creditors from Liquidation of Assets** | **$ (20,284,218.05)** | | |
| [1] All Funds are Subject to Claims of Working Interest Holders, Including Sklarco | | | |
| [2] Assumes 30% loss due to uncollectible accounts and cost of collection. Assumes NO recoupment or setoff claims from working interest owners | | | |
| [3] Amount is uncollectible; Sklar Transportation has no assets or ongoing operations | | | |

Exhibit C

| Sklarco Assets | Current Value | Cost of Sale/Recovery | Net Value |
|---|---|---|---|
| Oil and Gas Interests; Value based on NSAI Reserve Report as of September 1, 2020 [1] | $ 28,600,000.00 | $ 2,860,000.00 | $ 25,740,000.00 |
| East West Bank Account | $ 96,485.28 | $ - | $ 96,485.28 |
| Revenue in SEC's Revenue Account (approximate) | $ 400,000.00 | $ - | $ 400,000.00 |
| Interest in 1908 Brands, Inc. | $ - | $ - | $ - |
| Interest in 9.7 Conroe Joint Venture - Company is inactive | $ - | $ - | $ - |
| Interest in Boulders on Fern, LLC | $ - | $ - | $ - |
| Interest in LTP Opportunity Fund I, LP | $ - | $ - | $ - |
| Interest in LTP TimberQuest Fund, LP | $ - | $ - | $ - |
| Interest in Sanus Pharmaceuticals LLC - Company is Inactive | $ - | $ - | $ - |
| Interest in Trout Creek Ventures, LP [2] | $ - | $ - | $ - |
| Interest in West Arcadia Pipeline, LLC | $ - | $ - | $ - |
| Maevlo Production, LP | $ - | $ - | $ - |
| Total | $ 29,096,485.28 | $ 2,860,000.00 | $ 26,236,485.28 |

| | |
|---|---|
| EWB Secured Claim | $ 22,989,650.74 |
| Chapter 7 Trustee Fees | $899,033 |
| Chapter 7 Professional Fees [3] | $600,000 |
| Chapter 11 Professional Fees | $200,000 |
| | |
| **Funds Available for Unsecured Creditors** | **$   1,547,801.19** |

[1] Includes probable reserves of approximately $5.6 million; without probable reserves, total value is approximately $23 million

[2] Company made final distributions shortly after the Petition Date

[3] Assumes increased attorney fees associated with litigation over substantive consolidation claims