# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br><br>SKLAR EXPLORATION COMPANY, LLC,<br>EIN: 72-1417930<br><br>Debtor. | ) Case No. 20-12377-EEB<br>) <br>) Chapter 11<br>) |
| In re:<br><br>SKLARCO, LLC,<br>EIN: 72-1425432<br><br>Debtor. | ) Case No. 20-12380-EEB<br>) <br>) Chapter 11<br>) <br>) *Jointly Administered Under Case No.*<br>) *20-12377-EEB* |

**MOTION OF JJS INTERESTS NORTH BEACH, LLC, JJS INTERESTS ESCAMBIA, LLC, JJS INTERESTS WEST ARCADIA, LLC, JJS INTERESTS STEELE KINGS, LLC AND JJS WORKING INTERESTS, LLC FOR <u>DETERMINATION OF RECOUPMENT RIGHT AND OTHER RELIEF</u>**

JJS Interests North Beach, LLC, JJS Interests Escambia, LLC, JJS Interests West Arcadia, LLC, JJS Interests Steele Kings, LLC and JJS Working Interests, LLC (collectively, "**JJS**"), by and through their undersigned counsel, hereby files this Motion for an order, substantially in the form submitted with this Motion, determining JJS' rights of recoupment with respect to debtor Sklar Exploration Company, LLC ("**SEC**") pursue recoupment pursuant to the procedures set forth in Section 8.16 (the "**Recoupment Procedure**") of the *Second Amended and Restated Joint Plan of Reorganization dated December 18, 2020* [Docket No. 1251] (the "**Plan**") and respectfully states as follows:

**Jurisdiction and Venue**

1.      The Bankruptcy Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper

in this Court in accordance with 28 U.S.C. §§ 1408 and 1409. The legal predicates for the relief requested in this Motion are the state law rights of recoupment and such rights recognized under section 105(a) of title 11 of the United State Code (the "**Bankruptcy Code**").

## Background

2. SEC and Sklarco, LLC (together with SEC, the "**Debtors**") filed for relief under chapter 11 of the Bankruptcy Code on April 1, 2020 (the "**Petition Date**").

3. Pursuant to certain joint operating agreements and participation agreements entered into by JJS with SEC (collectively, the "**Oil and Gas Agreements**"), JJS, among other parties, is a working interest owner in certain properties operated by SEC. As an owner of working interests, JJS receives revenues on oil and gas production and shares in operational expenses in proportion to its ownership interest through joint interest billings owed by JJS ("**JIBs**").

4. Prior to the Petition Date, SEC failed to pay to JJS no less than $237,609.38 in revenue (the "**Prepetition Revenue**") owed to JJS under the Oil and Gas Agreements. JJS timely filed a proof of claim asserting, among other things, claims for unpaid prepetition revenue as follows:

| **JJS Entity** | **Prepetition Revenue** |
|---|---|
| JJS Interests Escambia, LLC | $133,036.58 |
| JJS Interests Steele Kings, LLC | $4,288.62 |
| JJS Working Interests, LLC | $75,312.84 |
| JJS Interests North Beach, LLC | $24,804.00 |
| JJS Interests West Arcadia, LLC | $167.34 |

| Total: | $237,609.38 |
|---|---|

5. On May 14, 2021, the Debtors filed the Plan which, among other things, provides the Recoupment Procedure by which a Revenue Party is "entitled to recoup or assert any rights of setoff against any account receivable or JIB, including any joint interest billing obligations arising after the Effective Date, owed or allegedly owed to the Debtors and/or the Reorganized Debtor." Plan, § 8.16.[1]

6. SEC rejected the Oil and Gas Agreements as to SEC and is preparing to transition operatorship of the working interests to alternate operators.

7. On March 12, 2021, Pruet Production Company, acting on its own behalf and on behalf of working interest owners for whom it is an agent (collectively, the "**Pruet Parties**"), initiated an adversary proceeding to determine its recoupment rights as a working interest owner. On August 16, 2021, the Bankruptcy court entered its *Order Declaring Rights to Recoupment and Setoff*, in the Pruett Adversary Proceeding (the "**Recoupment Order**"), holding that the Pruet Parties were not entitled to recoup or set-off postpetition JIBs against claims for prepetition revenue. A *Notice of Appeal and Statement of Election* was filed in the Pruet Adversary Proceeding on August 30, 2021, and the appeal is currently pending in the United States District Court for the District of Colorado.

8. On September 7, 2021, JJS provided to the Debtors a notice of its intention to recoup ("**Notice of Recoupment**") no less than $237,609.38 in unpaid revenues due to JJS

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan.

3

against any account receivable or JIB purportedly owed by JJS to SEC. A copy of JJS's Notice of Recoupment was filed on the docket as Docket No. 1456.

9. On September 8, 2021, the Plan became effective. JJS received no response to the Notice of Recoupment, which is considered a deemed rejection by the Debtors of JJS's recoupment claim under the Plan. Under the Recoupment Procedure, working interest owners asserting a recoupment claim must file a motion with the Bankruptcy Court asserting such claim within 21 days of the rejection or deemed rejection of the notice of recoupment. Plan, § 8.16.

## Relief Requested

10. By this Motion, JJS respectfully requests entry of an order by the Bankruptcy Court (a) determining and allowing JJS's rights of recoupment with respect to the Prepetition Revenue to enable the deduction of the Prepetition Revenue against postpetition JIBs; or (b) in the alternative, staying the prosecution of this Motion pending the appeal of the Recoupment Order.

## Basis for Relief Requested

11. The equitable remedy of recoupment is available to a creditor when the creditor's and debtor's claims "arise out of a single integrated transaction" and "are so closely intertwined that allowing the debtor to escape its obligations would be inequitable." *See In re Beaumont*, 586 F.3d 776, 781 (10th Cir. 2009) (citing *In re Peterson Distributing, Inc.*, 82 F.3d 956, 960 (10th Cir. 1996)). In addition, (a) both the creditor and the debtor must seek the same type of relief (e.g., monetary relief) and (b) the creditor must not seek to recoup an amount in excess of the debtor's claim against the creditor. *See Fed. Deposit Ins. Corp. v. Hulsey*, 22 F.3d 1472, 1487 (10th Cir. 1994).

12. The elements of recoupment are present here. First, the claims of Debtors for postpetition JIBs, on the one hand, relating to expenses for wells, and the claims of JJS, on the other hand, for revenue relating to the production *of the very same wells* under the *very same Oil and Gas Agreements,* are closely intertwined and arise from the same transaction. *See, e.g.*, *In re Peterson Distributing, Inc.*, 82 F.3d at 960 (the same transaction requirement is generally satisfied where "the debts to be offset arise out of a single, integrated contract or similar transaction") (citing *In re Davidovich*, 901 F.2d 1533, 1538 (10th Cir, 1990)). Second, it would be fundamentally unfair and inequitable to permit Debtors to circumvent the equitable and contractual rights of JJS under the Oil and Gas Agreements while at the same time compelling JJS and the other working interest holders to comply with their obligations under the same Oil and Gas Agreements. Third, Debtors and JJS, respectively, seek cash payment from the other in respect of the unpaid JIBs and WIO Revenue, as applicable, and JJS only seeks to recoup up to the amount of the unpaid WIO Revenue owed by Debtors to JJS.

13. As this Court acknowledged in its Recoupment Order, while admittedly not binding precedent, the only two published bankruptcy cases addressing recoupment under joint operating agreements found that the "single integrated transaction" standard was satisfied and recoupment was allowed. *See Farmers Union Central Exchange, Inc. v. Security Pacific National Bank (In re Buttes Gas & Oil)*, 72 B.R. 236 (Bankr. S.D. Tex. 1987); *Security Pac. Nat'l Bank v. Enstar Petroleum Co. (In re Buttes Resources Co.)*, 89 B.R. 613 (S.D. Tex. 1988).

14. As other courts have found, equity plays a pivotal role in the determination of whether recoupment is an available remedy. *See, e.g.*, *In re Gasmark Ltd.*, 193 F.3d 371, 375 (5th Cir. 1999) ("[T]he doctrine is often applied to prevent a windfall on the debtor[.]") (citations omitted); *In re Mirant Corp.*, 318 B.R. 377, 382 (N.D. Tex. 2004) ("[T]he court concludes that an

overpayment or something like that is required to trigger recoupment.  In all the cases the court has read, harm to a creditor or benefit to a debtor in excess of that contemplated by the Code has been an element necessary to application of recoupment in a bankruptcy case."); *In re Northstar Offshore Group, LLC*, 2018 WL 4445082 (S.D. Tex. 2018) ("The classic recoupment example involves an overpayment by a buyer to a seller, which benefits the seller to the buyer's detriment. In this example, the agreement to purchase makes up the single integrated transaction while recoupment corrects the inequity which occurred through overpayment.") (citing *In re Gasmark Ltd.*, 193 F.3d at 374).  While JJS understands that the Bankruptcy Court has reached a different conclusion in its Recoupment Order, JJS believes that the equities of this case weigh in favor of permitting JJS's recoupment claim.  JJS' property (the prepetition revenues related to the wells) were converted by the Debtors in contravention with JJS' legal rights under the Oil and Gas Agreements, while working interest owners were continually required to fund the expenses for such wells.

        15.     While JJS is compelled by the Recoupment Procedure set forth in the Plan to file this Motion at this time in order to preserve its recoupment rights, given the pending appeal of the Recoupment Order, JJS respectfully asserts that this Motion should be stayed and held in abeyance pending the appeal of the Recoupment Order, as the appeal addresses substantially similar matters of law.  Forcing parties to prosecute the Motion at this time would waste judicial resources and increase legal fees for the post-effective date Debtors and working interest owners alike, further reducing the minimal recoveries expected for working interest owners in these cases. This Court has the authority to stay this motion pursuant to Rule 9006(b) of the Federal Rules of Bankruptcy Procedure and under its inherent authority to manage its docket.

## Conclusion

16. WHEREFORE, JJS respectfully requests entry of an order by the Bankruptcy Court (a) determining and allowing JJS's rights of recoupment with respect to the Prepetition Revenue to enable the deduction of the Prepetition Revenue against postpetition JIBs; or (b) in the alternative, staying the prosecution of this Motion pending the appeal of the Recoupment Order.

Dated:      Houston, Texas
              October 8, 2021

Respectfully Submitted,

**WILLKIE FARR & GALLAGHER LLP**

By: /s/ Jennifer J. Hardy
      Jennifer J. Hardy (Texas Bar No. 24096068)
      600 Travis Street, Suite 2100
      Houston, Texas 77002
      Telephone: 713-510-1700
      Facsimile: 713-510-1799
      Email: jhardy2@willkie.com

*Counsel to JJS Interests Escambia, LLC, JJS Interests Steele Kings, LLC, JJS Working Interests, LLC, JJS Interests North Beach LLC and JJS Interests West Arcadia LLC*

## **CERTIFICATE OF SERVICE**

I certify that on October 8, 2021, I caused a copy of the foregoing document to be served by electronic transmission to all registered ECF users appearing in this case.

/s/ Jennifer J. Hardy
Jennifer J. Hardy