UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC ) | |
| EIN: 72-1417930 ) | Chapter 11 |
| ) | |
| Debtor. ) | |
| ) | |
| ) | Case No. 20-12380-EEB |
| SKLARCO, LLC ) | |
| EIN: 72-1425432 ) | Chapter 11 |
| Debtor. ) | |

**APPLICATION OF THE RUDMAN PARTNERSHIP, CTM 2005, LTD., AND MER ENERGY, LTD FOR ALLOWANCE OF ADMINISTRATIVE EXPENSES UNDER 11 USC § 503(b)(3)(D) FOR SUBSTANTIAL CONTRIBUTION TO THESE CHAPTER 11 CASES**

The Rudman Partnership ("Rudman"), CTM 2005, Ltd. and MER Energy, Ltd. (collectively "Rudman Parties"), by and through their undersigned attorneys, file this Application for Allowance of Administrative Expenses under 11 USC § 503(b)(3)(D) for Substantial Contribution to These Chapter 11 Cases ("Application"), and respectfully represent as follows:

**PRELIMINARY STATEMENT**

1. The Rudman Parties have unquestionably made a substantial contribution to these Chapter 11 cases. While the formally retained Debtors' estates' professionals failed to pursue <u>any</u> avoidance claims against Howard Sklar or the Sklar Family Trusts, it is doubtful that without the Rudman Parties' efforts, the truth as to the possible underlying ownership of the Debtors by various Sklar family trusts would have been fully disclosed. The Rudman Parties clearly led the way in unraveling those complex relationships. Indeed, until the end, the Rudman Parties were

actively exploring and investigating facts concerning avoidable interests in oil and gas properties claimed by the Sklar Trusts that neither the Debtors nor the Committee ever sought to pursue.

2. The Rudman Parties at all times participated in the Chapter 11 cases with the growing conviction that the Debtors had not been transparent or truthful in their Schedules and Statements of Financial Affairs ("SOFA's"). Until the truth was ferreted out, largely through the efforts of the Rudman Parties, the creditors did not know what was owned by the Debtors vis a vis the Sklar Trusts, and how much value had been transferred to the Sklar Trusts before the case was filed. As the Court itself recognized at the early Cash Collateral Hearings, the real problem with these Debtors was Howard Sklar, who's reign over the Debtors was unchallenged until the Rudman Parties exposed his false answers in the initial SOFA concerning the purpose of various transfers from SEC to Sklarco. Instead of being for payment of JIB's owed by Sklarco, those transfers of funds from SEC to Sklarco were then paid by Sklarco to the Howard Trust.

3. The Rudman Parties took the lead in filing a motion for appointment of a Chapter 11 Trustee, or alternatively, conversion to Chapter 7 [Dkt. No. 420] ("Trustee Motion") . The rationale for the Trustee Motion was fueled by the recognition that Howard Sklar could not be trusted to run the companies and by grave concerns over the involvement of the Sklar Trusts in the Debtors' affairs. From early on, the Rudman Parties explained why the continuation of SEC as Operator of the prospects and units involved in the case was unacceptable. The Trustee Motion was never denied and was only withdrawn after substantial concessions had been made by the Debtors, including appointment of a CRO, amendments to the Debtors' Plan, SEC's agreement to resign as Operator of the prospects in questions, and far greater transparency about the role of the Sklar Trusts.

3. Moreover, if the Rudman Parties had not taken up the laboring oar with respect to these matters, the Committee or Plan Trustee would have incurred additional fees and expenses in doing so which necessarily would have to be reimbursed by the Estates or post-confirmation Debtors.

4. While the outcome of the Chapter 11 Cases was a bitter pill to swallow for the Rudman Parties, with not a single avoidance action being filed, nevertheless the results of their efforts and those of their professionals helped in making the best of an admittedly bad situation for the creditors in this case.

5. The Rudman Parties incurred not less than $95,081.57 in attorneys' fees, and $6,101.59 in expenses, respecting key matters beneficial to all creditors, as set out in this Application.[1] The Rudman Parties request that its efforts to uncover the truth about the Debtors and their relationships with the Sklar Trusts and to maximize the value of the Estates not go unrecognized, and that the Court determine that the Rudman Parties made a substantial contribution to these cases, and that the costs incurred by its members be reimbursed.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b). Venue of this proceeding and this Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

7. The Rudman Parties request entry of the Proposed Order, attached hereto as Exhibit A, (a) allowing Administrative Claims for the Rudman Parties in at least the amount of $95,081.57 in attorneys' fees, and $6,101.59 in expenses, and (b) authorizing and directing the

---

[1] Detailed, redacted, time and expense records supporting this Application will be filed as Exhibits hereto.

Debtors to satisfy such Claims in in full in cash within seven (7) days of entry of such Proposed Order.

## BASIS FOR RELIEF REQUESTED

8. Pursuant to section 503(b)(3)(D) and (4) of the Bankruptcy Code, the Administrative Claims that are the subject of this Application must be allowed as amounts incurred in connection with the Rudman Parties' substantial contribution to the Chapter 11 cases.

**A. Section 503(b) of the Bankruptcy Code Requires Payment of Fees and Expenses Incurred in Making a "Substantial Contribution" in a Chapter 11 Case**

9. Section 503(b) of the Bankruptcy Code provides for the allowance of administrative expenses. Specifically, sections 503(b)(3)(D) and (4) operate in tandem to require the payment of reasonable fees and necessary expenses incurred in making a "substantial contribution" in a Chapter 11 case.[2] 11 U.S.C. § 503. These provisions "promote meaningful creditor participation in the reorganization process." *In re Consol. Bancshares, Inc.*, 785 F.2d 1249, 1253 (5th Cir. 1986) (quoting *In re Gen. Oil Distribs.*, 51 B.R. 794, 805 (Bankr.E.D.N.Y.1985)).

10. Although the Bankruptcy Code does not define what constitutes a "substantial

---

[2] Section 503(b)(3)(D) provides that "there shall be allowed administrative expenses, including . . . the actual, necessary expenses, other than compensation and reimbursement specified in [section 503(b)(4)], incurred by . . . a creditor . . . in making a substantial contribution in a [chapter 11 case] . . . ." 11 U.S.C. § 503(b)(3)(D). Section 503(b)(4) provides, in turn, as follows:

> [T]here shall be allowed administrative expenses, including . . . reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under [section 503(b)(3)(D)], based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a [bankruptcy] case . . . , and reimbursement for actual, necessary expenses incurred by such attorney or accountant. 11 U.S.C. § 503(b)(4).

contribution," the United States Court of Appeals for the Tenth Circuit has set standards for making that determination. In determining whether a creditor or informal committee has made a "substantial contribution," the applicable test is whether the efforts of the applicant result in an actual and demonstrable benefit to the debtor's estate and the creditors. *In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988); 11 U.S.C. §§ 503(b)(3)(D) and (d)(4).

11. Efforts undertaken by a creditor <u>solely</u> to further his own self-interest will not be compensable, notwithstanding any incidental benefit accruing to the bankruptcy estate. *Id.* There is a presumption that creditors act primarily in their own interest and not for the benefit of the estate as a whole. *Id.*

12. Compensation should be awarded on those occasions "when the creditor's involvement truly fosters and enhances the administration of the estate." *In re 9085 E. Mineral Office Building, Ltd.,* 119 B.R. 246, 250 (Bankr. Colo. 1990).

**B.  The Rudman Parties' Efforts Conferred a Demonstrable Benefit to the Estates.**

13. From the outset of the Chapter 11 cases, the Rudman Parties' efforts were aimed at maximizing the value of the Debtors' estates.[3] Their contributions in this regard fall primarily within two categories: (a) issues relating to investigation of the Sklar Trusts, including transfers to the trusts by the Debtors, their relationship with, involvement in and possible ownership of Debtors business and assets; and (b) issues raised in the Trustee Motion.

*i. Actions relating to the Sklar Trusts*

14. From the beginning, Debtors deliberately obscured and obfuscated their relationships with the Sklar Trusts and lied about the real purpose of certain transfers from SEC

---

[3] To be clear, the Rudman Parties <u>do not</u> seek recovery of fees and expenses solely related to their particular claims or other interests in this case, but rather those that served to enhance the interests and claims of creditors generally and to benefit the estates of the Debtors.

to Sklarco. As one of many examples, the initial and subsequent schedules do not mention or even hint at the possibility that <u>all</u> of Sklarco's assets were beneficially held by one or more of the Sklar Trusts. While Howard Sklar did file a Declaration mentioning the existence of an "Agency Services Agreement," he did not say who the agreement was with or its purpose. A copy of the Agency Services Agreement was only provided once the undersigned counsel asked for it. In the end, Debtors never admitted the truth that was only found once the Rudman Parties sought Howard Sklar's Rule 2004 Examination: All of Sklarco's assets were beneficially owned by one or more of the Sklar Trusts or the Succession of Miriam Mandel Sklar, and the interests of the Maren Silberstein Revocable Trust and the various "JJS" entities controlled by Howard Sklar's nephew were not even subject to the Agency Services Agreement.

15. During cash collateral hearings at the beginning of the case, Howard Sklar admitted on cross-examination by counsel for the Rudman Parties that the SEC and Sklarco SOFA's falsely stated that transfers from SEC to Sklarco were for payment of "JIB's," when in fact they were actually payments to Howard or his Trust. This was long before the Committee had even begun its investigation into transfers from the Debtors to the Sklar Trusts.

16. By early May 2020, the Rudman Parties had concluded that the irreconcilable conflicts of interest between Debtors' management and the Sklar Trusts, the fraudulent transfers to the Sklar Trusts, and the misapplication of creditor cash calls and revenue, demanded the intervention of a Chapter 11 or Chapter 7 Trustee.

17. The Rudman Parties also became convinced that the affairs of SEC and Sklarco were so intertwined and commingled that substantive consolidation of the two estates was required in order to guarantee an equitable distribution to SEC's creditors.

18. The Rudman Parties continued to raise concerns about the unresolved conflict between Sklarco's alleged ownership of its oil and gas assets and the superior beneficial title to those assets asserted by the Sklar Trusts. The Rudman Parties continued to press these issues until the Amended Plan was modified to provide commitments from the Sklar Trusts to comply with the Amended Plan. Whether the amendments were sufficient to ensure compliance remains to be seen.

ii. ***The Trustee Motion***

19. When filing a motion seeking appointment of a Chapter 11 Trustee or conversion to Chapter 7, the movant is, by definition, acting in furtherance of the best interests of creditors and the estate. The Rudman Parties demonstrated in the Trustee Motion that the factors justifying appointment of a Chapter 11 Trustee under *In re Colorado-UTE Electric Ass'n, Inc.* 120 B.R. 164 (Bankr. D. Colo. 1990) were established. Alternatively, the Trustee Motion showed that cause for conversion to Chapter 7 existed under Section 1104 of the Code. *Colorado-Ute Elec. Ass'n., Inc.*, 120 B.R. at 175-77.

20. The Rudman Parties responded to objections filed by Debtors, the Committee and EWB, all of whom favored appointment of a CRO. The Trustee Motion was set for hearing on June 11, 2020 and the Rudman Parties prepared Exhibit and Witness lists and the legal research required to prepare for the hearing.

21. At the hearing, the Court decided to hold the Trustee Motion in abeyance and to proceed with appointment of a CRO, but agreed with the Rudman Parties that certain investigative and disclosure requirements should be imposed in the order that otherwise would not have been provided for if the Debtors and Committee had their way.

22. As a result, while a Trustee was not appointed and the case was not converted, the abeyance of the Trustee Motion served as a needed "hammer" to ensure the Debtors acted in accordance with their duties under Title 11. Indeed, the Trustee Motion remained on the docket and was set for hearing along with confirmation of the Amended Plan until the Rudman Parties ultimately agreed to its withdrawal.

C. **The Rudman Parties' Efforts Were Not Duplicative of Efforts Undertaken by the Debtors or the Creditors' Committee**

23. Courts generally consider whether the efforts of those seeking compensation or reimbursement under section 503(b) were duplicative of made by statutory fiduciaries. *See, e.g.*, *Mirant Corp.*, 354 B.R. at 134. Where the efforts of an applicant are not significantly duplicative of work done by a statutory representative, this factor weighs in favor of granting the application. *Id.* The Rudman Parties would not have stepped in on the key issues discussed above had the Debtors or Committee done so. Regrettably, they chose not to and left the Rudman Parties no choice.

## REASONABLENESS OF FEES

24. In *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974) and *In re First Colonial Corp. of Am.*, 544 F.2d 1291 (5th Cir. 1977), *cert. denied*, 431 U.S. 904 (1977), the United States Court of Appeals for the Fifth Circuit set forth factors to consider in determining the reasonableness of professional compensation. Courts in the Tenth Circuit follow *Johnson* in evaluating attorneys' fee requests. *See In re Mkt. Ctr. E. Retail Prop., Inc.,* 730 F.3d. 1239, 1247 (10th Cir. 2013). Consideration of these factors should result in a determination that the fees for which reimbursement is sought by this Application are reasonable:

(a) <u>Time and Labor Required</u>. During these Chapter 11 Cases, the Rudman Parties devotion of time and labor to issues beneficial to all constituencies in these cases was reasonable

and consistent with the issues presented. The fees and expenses incurred were based upon billing rates commensurate with the time, talent and labor of the attorneys involved.

(b) <u>Novelty and Difficulty of Questions Presented</u>. The services rendered herein have dealt with significant sums and extensive documents, often requiring expedited preparation and review, in addition to counsel's virtual attendance at numerous conferences, meetings, settlement discussions, and hearings.

(c) <u>Skill Required to Perform the Legal Services Properly</u>. The importance of these cases was such that attorneys with the highest skills were utilized.

(d) <u>Preclusion of Other Employment by the Attorneys Involved</u>. Representation of the Rudman Parties required substantial involvement of its counsel. As with any matter, time spent on such representation was time that could not be spent either engaging in or pursuing other assignments.

(e) <u>Customary Fees</u>. The fees sought herein are based on Rudman Parties' counsel's standard hourly rates for services of this kind. They are not unusual given the complexity of the Chapter 11 Cases and the time expended.

(f) <u>Fees Fixed or Contingent</u>. The fees of the Rudman Parties' counsel are not contingent, although the issue of whether those fees will ultimately be reimbursed from the Debtors' Estates as an Administrative Claim is of course dependent on whether and to what extent the Court grants this Application.

(g) <u>Time Limitations Imposed by Client or Other Circumstances</u>. The Chapter 11 cases proceeded on a sometimes expedited timeline and the Rudman Parties' counsel were necessarily subject to deadlines correlated with such expedited timeline.

(h) <u>Amounts Involved and Results Achieved.</u> As discussed above, the Rudman Parties' counsel, conferred a substantial benefit on the Debtors' Estates that exceeds the amount sought by this Application. Moreover, such amount is less than amounts incurred by <u>any</u> other professionals in these Chapter 11 Cases.

(i) <u>Experience, Reputation and Ability of the Attorneys</u>. Lead counsel for the Rudman Parties are both experienced oil and gas attorneys and Mr. Skelton has been practicing energy related bankruptcy law since the early 1980's.

(j) <u>"Undesirability" of the Case.</u> The circumstances of the Chapter 11 Cases make them no more or less desirable than other large chapter 11 cases.

(k) <u>Nature and Length of Relationship with Client.</u> Counsel had not worked for the Rudman Parties prior to this case.

(l) <u>Awards in Similar Cases</u>. Various courts have granted "substantial contribution" applications made by creditors making the showings required by this Circuit.

## **CONCLUSION**

For the foregoing reasons, the Rudman Parties respectfully requests that the Court enter the Proposed Order and grant such other relief as is just and proper.

Dated: October 22, 2021         Respectfully submitted,

**Maynes, Bradford, Shipps & Sheftel, LLP**
*/s/ Thomas H. Shipps*
Thomas H. Shipps
*/s/ Shay L. Denning*
Shay L. Denning
Maynes, Bradford, Shipps & Sheftel, LLP
835 E. Second Ave., Suite 123
Durango, CO 81301
Telephone: (970) 247-1755
Cell: (970)749-1479; (970) 946-0846
Facsimile: (970) 247-8827

      Email: tshipps@mbssllp.com;
         sdenning@mbssllp.com

and

*/s/ Barnet B. Skelton, Jr.*
Barnet B. Skelton, Jr.
815 Walker, Suite 1502
Houston, TX 77002
Telephone: (713) 516-7450
Facsimile: (713) 659-8764
Email: barnetbjr@msn.com

Counsel to The Rudman Partnership, MER Energy, Ltd. and CTM 2005, Ltd.