IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| SKLAR EXPLORATION | § | Case No. 20-12377-EEB |
| COMPANY, LLC, *et al.*[1] | § | |
| | § | (Jointly Administered) |
| Debtors. | § | |

**CREDITOR TRUSTEE'S OBJECTION TO APPLICATION OF THE
RUDMAN PARTNERSHIP, CTM 2005, LTD., AND MER ENERGY, LTD.
FOR ALLOWANCE OF ADMINISTRATIVE EXPENSES UNDER 11 U.S.C.
§ 503(b)(3)(D) FOR SUBSTANTIAL CONTRIBUTION TO THESE CHAPTER 11 CASES**

COMES NOW Thomas M. Kim, duly appointed trustee (the "Creditor Trustee") of the post-confirmation trust (the "Creditor Trust") in the above-captioned, jointly administered bankruptcy cases (the "Cases") of Sklar Exploration Company, LLC ("SEC") and Sklarco, LLC ("Sklarco," and collectively with SEC, the "Debtors"), and files this objection (the "Objection") to the *Application for Allowance of Administrative Expenses Under 11 U.S.C. § 503(b)(3)(D) for Substantial Contribution to These Chapter 11 Cases* [Dkt. No. 1493] (the "Application") filed by the Rudman Partnership, CTM 2005, Ltd., and MER Energy, Ltd. (collectively, the "Rudman Parties"), and in support thereof, respectfully shows the Court as follows:

## I.   SUMMARY

1.   This is not one of the "rare occasions" when a creditor's involvement entitles it to compensation or reimbursement for "substantial contribution" to the administration of the bankruptcy estate.[2] The Rudman Parties took an active role in these Cases, but their efforts

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are: Sklar Exploration Company, LLC (7930) and Sklarco, LLC (5432).

[2] "Compensation must be preserved for those rare occasions when the creditor's involvement truly fosters and enhances the administration of the estate." *In re 9085 E. Mineral Office Bldg., Ltd.*, 119 B.R. 246, 250 (Bankr. D. Colo. 1990) (quoting *In re D.W.G.K. Rests., Inc.*, 84 B.R. 684, 690 (Bankr. S.D. Cal. 1988)).

1

provided no material benefit, were duplicative of work done by the Debtors and the Official Committee of Unsecured Creditors (the "Committee"), or were undertaken to advance their own interests. The Application contains only conclusory, self-serving statements that fail to demonstrate any actual or demonstrable benefit to the Debtors' estates.

2. To the contrary, the Rudman Parties' actions, even those actions alleged to have conferred material benefit to creditors, were all part of a "scorched-earth" strategy to coerce preferential treatment of their own unsecured claims. As a result of their litigation tactics, the Rudman Parties prolonged these Cases and multiplied expenses to the detriment of other creditors. Despite their vociferous objections in court, outside the courtroom the Rudman Parties negotiated for payment of their own claims, not better treatment for all unsecured creditors. If the Debtors and the Committee would have agreed to pay them, the Rudman Parties would have happily abandoned their objections, dire predictions, and whispers of nefarious plots. Such zealous advocacy is expected, but other unsecured creditors should not be expected to pay for the Rudman Parties' actions to protect their own interests.

3. The Application does not establish the Rudman Parties' entitlement to recovery of their costs from the Debtors' estates and should be denied.

## II. JURISDICTION AND VENUE

4. The United States Bankruptcy Court for the District of Colorado (this "Court") has jurisdiction over these Cases and this Objection pursuant to 28 U.S.C. §§ 157 and 1334. This Objection constitutes a core proceeding pursuant to 28 U.S.C. § 157(b).

5. Venue of these Cases and the Objection in this District is appropriate under 28 U.S.C. §§ 1408 and 1409.

### III. BACKGROUND

**The Rudman Parties seek more than $100,000 in fees and expenses for actions they allege provided substantial contribution to the Estates and creditors.**

6. On October 22, 2021, the Rudman Parties filed the Application seeking administrative expenses of not less than $95,081.57 in attorneys' fees and $6,101.59 in expenses pursuant to § 503(b)(3)(D) and (b)(4) based on their claimed "substantial contribution" to Debtors' bankruptcy estates.

7. The Application asserts that the Rudman Parties' compensable efforts fall into two broad categories: "(a) issues relating to investigation of the Sklar Trusts, including transfers to the trusts by the Debtors, their relationship with, involvement in and possible ownership of Debtors business and assets; and (b) issues raised in the Trustee Motion." *See* Application ¶ 13. In particular, the Rudman Parties argue that the following actions provided a "substantial contribution" to the Debtors' estates:

- inquiry into an "Agency Services Agreement" that Howard Sklar referenced in a Declaration filed with the Court on April 6, 2020 [Dkt. No. 39], *see* Application ¶ 14;

- participation in a Rule 2004 examination of Howard Sklar, *see* Application ¶ 14;

- participation in cash collateral hearings at the beginning of these Cases, *see* Application ¶ 15;

- the belief that SEC's creditors could receive a more equitable distribution if the Debtors' estates were substantively consolidated, *see* Application ¶ 17;

- voicing concerns about the Debtors' ownership interests in its oil and gas assets, *see* Application ¶ 18; and

- a motion to appoint a chapter 11 trustee (the "<u>Trustee Motion</u>") that they ultimately withdrew, *see* Application ¶¶ 19–22.

3

### IV. ARGUMENTS AND AUTHORITIES

8. The Application fails because (a) the Rudman Parties failed to provide any substantial contribution or demonstrable benefit to the Estates, (b) the Rudman Parties' actions were duplicative of work done by the Committee, and (c) the Rudman Parties' actions were taken primarily for their own benefit and not unsecured creditors as a whole. Any of these failures alone is fatal to the Application.

9. Sections 503(b)(3)(D) and (b)(4) of the Bankruptcy Code provide:

> (b) After notice and a hearing, there shall be allowed, administrative expenses, . . . including— . . .
>
>> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by— . . .
>>
>>> (D) a creditor . . . in making a substantial contribution in a case under chapter 9 or 11 of this title; . . . .
>>
>> (4) reasonable compensation for professional services rendered by an attorney . . . of an entity whose expense is allowable under subparagraph . . . (D) . . . of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant . . . .

10. Because administrative expenses deplete the assets of the estate, "the substantial contribution provisions must be narrowly construed." *In re Granite Partners, L.P.*, 213 B.R. 440, 445 (Bankr. S.D.N.Y. 1997) (citations omitted). This is especially true where the applicant is also a creditor:

> Compensation cannot be freely given to all creditors who take an active role in bankruptcy proceedings. Compensation must be preserved for those rare occasions when the creditor's involvement truly fosters and enhances the administration of the estate. Such an involvement takes the form of constructive contributions in key reorganizational aspects, when but for the role of the creditor, the movement towards final reorganization would have been substantially diminished. The integrity of § 503(b) can only be maintained by strictly limiting compensation to

extraordinary creditor actions which lead directly to significant and tangible benefits to the creditors, debtor, or the estate. While § 503 was enacted to encourage meaningful creditor participation, it should not become a vehicle for reimbursing every creditor who elects to hire an attorney." *In re D.W.G.K. Rests.*, 84 B.R. at 690 (citations omitted).

11. An applicant for administrative expenses under section 503(b)(3)(D) has the burden of proving a "substantial contribution" by demonstrating by a preponderance of the evidence that its efforts "resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." *In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988) (citing *In re Jensen-Farley Pictures, Inc.*, 47 B.R. 557, 569 (Bankr. D. Utah 1985)). Where, as here, the applicant fails to satisfy this burden, the application should be denied.

A. **The Rudman Parties' efforts did not result in any actual or demonstrable benefit to the Debtors' Estates or creditors.**

12. The Rudman Parties' actions in these Cases did not result in any actual or demonstrable benefit to the Estates or to creditors. The Rudman Parties were extremely active in this cases, having filed not less than thirty motions, objections, and other substantive pleadings and noticed two Rule 2004 examinations. Yet, for all their activity they can point to no real contribution to the case. "[E]xtensive activity, alone, is not sufficient to come within the compensable realm of § 503(b)(3) and (4)." *In re Ace Fin. Co.*, 69 B.R. 827, 830 (Bankr. N.D. Ohio 1987).

13. The Rudman Parties allege to have uncovered the "truth" about Sklarco's assets. But what did they do after this truth was discovered? Nothing. The real truth is that the Committee negotiated a deal with Howard Sklar to contribute all of the assets of Sklarco—even those assets that might be subject to claims of the Sklar family trusts—to a post-confirmation trust for the benefit of creditors. In fact, Howard Sklar, as trustee of those trusts, filed a declaration stating that Sklarco had the ability to contribute those assets to the post-confirmation trust. *See Verification*

*Pursuant to Minute Order for May 28, 2021 Hearing* [Dkt. No. 1326]. The Committee resolved any dispute about the trusts without the need for costly litigation—and without any contribution from the Rudman Parties.

14. The same applies to the Rudman Parties' assertion that they somehow substantially benefited the estate because they were "convinced that the affairs of SEC and Sklarco were so intertwined and commingled that substantive consolidation of the two estates was required in order to guarantee an equitable distribution to SEC's creditors." *See* Application ¶ 17. Again, what did they do after making this realization? Nothing. It was the Committee who immediately began negotiations with the Debtors on a plan of reorganization that contributed Sklarco assets to pay unsecured creditors of SEC and Sklarco *pari passu*. When the Debtors filed a plan that did not provide for this treatment, it was the Committee that opposed the plan, organized a mediation, and negotiated a plan that did treat SEC and Sklarco creditors equally. It was the Committee that deposed Howard Sklar and the chief restructuring officer ("CRO") to determine the facts that supported such plan treatment. Neither counsel for the Rudman Parties even appeared at those examinations. So what benefit to unsecured creditors did the Rudman Parties provide related to substantive consolidation?

15. As for the Rudman Parties' claims that they sought a trustee, exactly how did that benefit any creditor other than the Rudman Parties? As soon as the Committee was appointed, they began negotiations with the Debtors and East West Bank ("EWB") regarding the appointment of a CRO. Over the Rudman Parties' objections, this Court approved the retention of the CRO, granted him broad powers, and removed Howard Sklar from any management of control of the Debtors. Despite their objection to the appointment, the Rudman Parties now cite the appointment of the CRO in June 2020 as one of the reasons why they withdrew their motion to appoint a trustee

in August 2021, over one year later. *See* Application ¶ 3 ("The Trustee Motion was never denied and was only withdrawn after substantial concessions had been made by the Debtors, including appointment of a CRO . . . ."). Like their other pleadings, the Rudman Parties continued to use their motion to appoint a trustee as a threat until they withdrew it as part of a stipulated settlement to pay a portion of their claims. *See Stipulation Partially Resolving Application for Administrative Expense Priority Claim and Objections Thereto by and Between Debtors, Rudman Parties, East West Bank, and Official Committee of Unsecured Creditors* [Dkt. No. 1408] and *Notice of Withdrawal by the Rudman Partnership, MER Energy, Ltd. and CTM 2005, Ltd. of Docket Nos. 1210, 1265, 1196, 1111, 1109, 1108, 1107, 1106, and 308* [Dkt. No. 1409].

16. None of the actions for which the Rudman Parties seek compensation provided any contribution—much less "substantial" contribution—to the Estates or their creditors.

**B.     Any actions the Rudman Parties took to allegedly benefit creditors were duplicative of the work done by the Committee.**

17. "The statutory mandate of section 503(b)(3), that expenses be 'necessary,' dictates that redundant expenses are not reimbursable from a bankruptcy estate." *In re Brundage-Bone Concrete Pumping, Inc.*, 471 B.R. 257, 260 (Bankr. D. Colo. 2012). "[S]ervices found to be duplicative of duties of the debtor or other court-appointed officers, absent proof that the appointed officer is either unable or unwilling to act, are not to be compensated since they would entail an excessive and undue burden upon the estate." *In re United States Lines, Inc.*, 103 B.R. 427, 429 (Bankr. S.D.N.Y. 1989).

18. The Rudman Parties try to obfuscate their achievements by arguing that the Debtors and the Committee would not have otherwise achieved this outcome. *See, e.g.*, Application ¶ 1 (asserting that "it is doubtful that without the Rudman Parties' efforts, the truth as to the possible underlying ownership of the Debtors by various Sklar family trusts would have been fully

7

disclosed"); Application ¶ 22 (asserting that "the Trustee Motion served as a needed 'hammer' to ensure the Debtors acted in accordance with their duties under Title 11"); *see also* Application ¶ 15 (arguing that the Rudman Parties should be compensated for cross examining Howard Sklar "long before the Committee had even begun its investigation into transfers from the Debtors to the Sklar Trusts"). "This form of reasoning represents a logical fallacy known as the *post hoc ergo propter hoc* (after this and therefore because of this) fallacy." *Sunward Corp. v. Dun & Bradstreet, Inc.*, 811 F.2d 511, 521 n.8 (10th Cir. 1987).

19. As stated above, the Committee took the lead on the investigation of Howard Sklar, the basis for contribution of Sklarco assets to pay SEC creditors, the investigation and settlement with EWB, and the development of a consensual plan of reorganization. Again, the Rudman Parties did not participate in the examinations of Howard Sklar or the CRO. The only examination the Rudman Parties took prior to confirmation related to their own claims.

20. The Rudman Parties lament that "not a single avoidance action" was filed. They fail to mention, however, that when they had the chance to challenge the liens and claims of EWB under the final cash collateral order, they did nothing. Many months after the Committee reached a settlement with EWB that provided millions of dollars of value to unsecured creditors, which settlement was embodied in the plan of reorganization as early as March 2021, counsel for the Rudman Parties inexplicably demanded that the Committee abandon the settlement and the consensual plan of reorganization and assign to the Rudman Parties the Committee's sole right to challenge EWB's liens and claims. The Rudman Parties cannot provide any reason why the Committee should have abandoned the settlement and the consensual plan or any valid challenge they believe there was to EWB's liens.

21. Furthermore, the confirmed plan of reorganization preserves all claims against Howard Sklar and his family trusts. Since the family trusts were not opposing Sklarco's contribution of assets to pay creditors, no avoidance actions needed to be filed prior to confirmation. The best strategy—and the one that provided an actual and demonstrable benefit to the Debtors' estate and the creditors—was the strategy pursued by the Committee: to seek quick confirmation of a consensual plan, shut off the significant administrative burn rate, and pursue all claims against Howard Sklar and the family trusts in a concerted matter after full investigation.

22. An award of administrative expense to the Rudman Parties would be inappropriate.

### C. The Rudman Parties' actions in these cases were undertaken to advance their own interests.

23. The Application fails to overcome the presumption that the Rudman Parties acted primarily in their own interests. "Creditors face an especially difficult burden in passing the 'substantial contribution' test since they are presumed to act primarily in their own interests." *In re United States Lines, Inc.*, 103 B.R. at 430 (Bankr. S.D.N.Y. 1989) (citing *In re Jensen-Farley*, 47 B.R. at 571); *see also In re Lister*, 846 F.2d at 57 (citing *In re Jensen-Farley*, 47 B.R. at 571) ("Generally, creditors are presumed to act primarily in their own interest and not for the benefit of the estate as a whole."). Accordingly, creditors applying for a "substantial contribution" administrative expense must "overcome the presumption that they were acting primarily in their own interest and not for the benefit of the estate as a whole." *In re Standard Metals Corp.*, 105 B.R. 625, 630 (Bankr. D. Colo. 1989). Even if the Rudman Parties could point to an actual benefit to the Debtors' estates, they do not and cannot demonstrate that this benefit was a result of anything other than actions taken in the Rudman Parties' own self-interest.

24. At all times during these cases the Rudman Parties acted in their own self-interest. "It is an incongruous result to construe Section 503(b) to allow compensation to the creditors'

9

attorneys for doing the job that their clients hired them to do . . . ." *Id.* at 631. In addition to the thirty substantive pleadings they filed, the Rudman Parties noticed up two Rule 2004 examinations. Ultimately, they took only one examination prior to confirmation of the Plan: an examination of the Debtors' representative solely as to the Rudman Parties' claims related to the gas plants. Clearly that was only for their own benefit.

25. "Efforts undertaken by a creditor solely to further his own self-interest . . . will not be compensable, notwithstanding any incidental benefit accruing to the bankruptcy estate." *In re Lister*, 846 F.2d at 57 (citing *In re Automatic Spring Prods., Inc.*, 50 B.R. 6, 7 (Bankr. S.D. Fla. 1985)) (denying substantial contribution claim where "[v]iewed as a whole, [the creditor's] efforts failed to make a 'substantial contribution' to the bankruptcy estate"). When the Court considers the actions of the Rudman Parties during these cases, the many allegations made, the lack of any substantive contribution, and the total withdrawal of all objections as soon as the Debtors, EWB, and the Committee agreed to pay a portion of their prepetition claims, it is clear that all was "full of sound and fury. Signifying nothing." William Shakespeare, Macbeth act 5, sc. 5.

26. The Application should be denied.

## V. PRAYER

WHEREFORE, PREMISES CONSIDERED, the Creditor Trustee respectfully requests entry of an order: (i) sustaining this Objection; (ii) denying the Application, and (iii) granting to the Creditor Trustee such other and further relief as is just.

RESPECTFULLY SUBMITTED this 12th day of November, 2021

        Respectfully submitted,

        **MUNSCH HARDT KOPF & HARR, P.C.**

        By: */s/ Christopher D. Johnson*
        Christopher D. Johnson
        Tex. Bar No. 24012913
        John D. Cornwell
        Tex. Bar No. 24050450
        Grant M. Beiner
        Tex. Bar No. 24116090
        700 Milam Street, Suite 2700
        Houston, Texas 77002
        713-222-1470 (tel.)
        713-222-1475 (fax)
        cjohnson@munsch.com
        jcornwell@munsch.com
        gbeiner@munsch.com

        **COUNSEL FOR THE**
        **CREDITOR TRUSTEE**

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on the 12th day of November 2021, I personally caused to be served a true and correct copy of the foregoing document, by filing same through the Court's CM/ECF system.

        By: */s/ Christopher D. Johnson*
            Christopher D. Johnson