Adversary Proceeding
Complaint

# Exhibit 1

Escambia Participation and Operating Agreement

## PARTICIPATION AGREEMENT

### Escambia Prospect
### Escambia and Conecuh Counties, Alabama

**THIS PARTICIPATION AGREEMENT** (the "Agreement"), dated effective as of the 1st day of November, 2006 (the "Effective Date"), is entered into by and between the following (sometimes herein referred to singularly as a "Party" or collectively as the "Parties"):

> **SKLAR EXPLORATION COMPANY L.L.C.**, a Louisiana limited liability company, whose address is Louisiana Tower, Suite 1601, 401 Edwards Street, Shreveport, Louisiana 71101, represented herein by its Chief Operating Officer, David A. Barlow ("SEC" or "Operator");

> **SKLARCO L.L.C.**, a Louisiana limited liability company, whose address is Louisiana Tower, Suite 1601, 401 Edwards Street, Shreveport, Louisiana 71101, represented herein by its Chief Operating Officer, David A. Barlow ("Sklarco");

> **McCOMBS ENERGY, LTD.**, a Texas limited partnership, whose address is 5599 San Felipe, Suite 1200, Houston, Texas 77056-2794, represented herein by its Vice President, Ricky Haikin ("McCombs");

> **WAC INVESTMENT COMPANY, LLC**, a Louisiana limited liability company, whose address is 333 Texas Street, Suite 2121, Shreveport, Louisiana 71101, represented herein by its Executive Vice President, Michael E. Riddick ("WAC");

> **THE RUDMAN PARTNERSHIP**, a Texas general partnership, whose address is 1700 Pacific Avenue, Ste. 4700, Dallas, TX 75201-4670, represented herein by W. R. (Trey) Sibley, III, its duly authorized Attorney in Fact ("Rudman");

> **PICKENS FINANCIAL GROUP, LLC**, a Texas limited liability company, whose address is 8499 Greenville Avenue, Suite 105, Dallas, Texas 75231-2417, represented herein by its Vice President, Michael K. Pickens ("Pickens");

> (hereinafter Sklarco, McCombs, WAC, Rudman and Pickens are sometimes referred to collectively as the "Participants" or individually as a "Participant");

### W I T N E S S E T H:

**WHEREAS**, Sklarco holds record title for and on behalf of SEC to the oil, gas and other mineral leases (hereinafter sometimes referred singularly as a "Lease" or collectively as the "Leases") described on Exhibit "A-1," attached hereto and made a part hereof, covering lands located in Escambia and Conecuh Counties, Alabama, lying within a contract area (the "Contract Area") outlined in black on the plat attached hereto as Exhibit "A," which itself is lying within an area of mutual interest (the "AMI") outlined in red on said plat, generally known as the Escambia Prospect (the "Prospect"); and

**WHEREAS**, SEC desires to sell, and the Participants desire to acquire, all of SEC's right, title and interest in and to the Leases, and the Participants desire to participate in the drilling of an exploratory well to test the Prospect operated by SEC (the "Initial Well"); and

**WHEREAS**, the Parties desire to enter this Agreement to set forth the terms and conditions under which they sell, acquire or retain those working interests and drill the Initial Well.

**NOW, THEREFORE**, the Parties agree as follows:

## Article I.  Purchase And Sale And Development Commitments

### Section 1.1.  Leases

SEC represents and warrants that it owns the Leases and that all of those Leases are in full force and effect.  The Participants have either tendered to SEC, or shall tender to SEC concurrent with their execution of this Agreement, in the following proportions, the amount Seven Hundred Fifty Thousand and No/100 Dollars $750,000 (collectively, the "Prospect Fee"), representing the total lease bonus, brokerage, geological, geophysical and other costs associated with the prospect through the Effective Date:

| Participant | Proportion | Amount |
|---|---|---|
| Sklarco | 0.37500000 | $281,250 |
| McCombs | 0.25000000 | $187,500 |
| WAC | 0.20000000 | $150,000 |
| Rudman | 0.12500000 | $ 93,750 |
| Pickens | 0.05000000 | $ 37,500 |
| *Total* | 1.00000000 | $750,000 |

For and in consideration of the Prospect Fee and the reservation of reversionary back-in working interest described below, SEC hereby sells and agrees to cause Sklarco or such other record title owner formally to assign to the Participants in the same proportions, upon full payment and receipt of the Prospect Fee if the Participant so desires or otherwise within thirty (30) days from receipt of written notice to SEC, by means of the form of assignment attached hereto as Exhibit "B," all of its right, title and interest in and to the Leases.  This assignment of this interest shall be (i) proportionately reduced to the interest owned by SEC, (ii) made without warranty of title, express or implied, not even for return of the Prospect Fee, except SEC agrees to warrant title against all defects arising out of claims by SEC, Sklarco or of persons claiming by, through or under SEC or Sklarco, (iii) subject to all burdens of record, (iv) subject to the terms of the Leases and (v) subject to this Agreement and the JOA described in Section 2.1 of this Agreement. SEC represents, but does not warrant, that it is delivering a cumulative net revenue interest in the Leases to the Participants of approximately 77.5%.  Notwithstanding anything herein to the contrary, the assignment as to Rudman (and only as to Rudman) shall exclude any of the Leases insofar and only insofar as they cover lands located within the blue outline on the plat attached as Exhibit "A" (and being further identified as Sections 27, 28, 29, 32, 33 and 34, Township 4 North, Range 13 East, Conecuh County, Alabama).

### Section 1.2.  Initial Well

#### Subsection 1.2(a).  Drilling Of The Initial Well

On or before June 1, 2007, and subject to rig availability, SEC shall commence or cause to be commenced operations for the drilling of the Initial Well at a location of Operator's choice within Section 5, Township 3 North, Range 13 East, Escambia County, Alabama, or as near thereto as practicable, and thereafter continue the drilling of the Initial Well with due diligence to a measured depth of 12,000' in a vertical bore hole, or a depth sufficient in SEC's discretion, to test the Upper Smackover and Norphlet Formations, whichever is more shallow (the "Objective Depth"). The Participants agree to participate in the drilling of the Initial Well to the Objective Depth in the following proportions:

| Participant | Proportion |
|---|---|
| Sklarco | 0.37500000 |
| McCombs | 0.25000000 |
| WAC | 0.20000000 |
| Rudman | 0.12500000 |
| Pickens | 0.05000000 |
| *Total* | 1.00000000 |

Concurrent with their execution of this Agreement, the Participants agree to execute an Authority For Expenditure ("AFE") attached hereto as Exhibit "D." Notwithstanding the estimates contained in the AFE, subject to Article XV.AA of the JOA, the Participants are responsible for and must pay SEC their share of all actual costs to drill the Initial Well to the Objective Depth in the following manner: (i) SEC will furnish the Participants with a Cash Call Invoice approximately thirty (30) days before its anticipated spud date of the Initial Well covering their share of the amount estimated in the AFE to drill the Initial Well to the Objective Depth, excluding estimated completion costs, but including the amount estimated to plug and abandon the Initial Well in the event it is not completed as a producing well, and the Participants must tender to SEC as an advance, within fifteen (15) days of receipt and, in any event, prior to spudding the Initial Well, full payment of the Cash Call Invoice; and (ii) the Participants must tender to SEC, within 15 days of receipt of (an) invoice(s) from SEC, the difference, if any, between said advance and their share of the actual costs to drill the Initial Well to the Objective Depth.

If any Participant fails to pay its share of the actual costs to drill the Initial Well to the Objective Depth in the manner and within the time deadlines set forth above, then, in that event, and only in that event, that Party hereby agrees to relinquish all of its right, title and interest in the Prospect and the Leases and to execute those instruments provided by SEC necessary to convey said interest to the Participants who paid their share of the actual costs to drill the Initial Well to the Objective Depth and who elect to accept such an additional interest or portion thereof, for no consideration, not even for return of the Prospect Fee or drilling advance. This forfeiture of interest shall be without prejudice and in addition to the rights of the Operator and Non-Operators who paid their shares of the actual costs to drill the Initial Well to the Objective Depth to offset and recover all sums owed by a Party that fails to pay its share of actual costs to drill the Initial Well to the Objective Depth.

### Subsection 1.2(b).  Operations After Reaching The Objective Depth

After the Initial Well has been drilled to the Objective Depth, SEC shall make a copy of any logs, core analysis, drill-stem test analysis or results of any other tests or evaluations available to a representative of the Participants at the wellsite, or if none is present, by email, mail, facsimile or overnight delivery. SEC shall also furnish the Participants in a like manner with its recommendation regarding the disposition of the wellbore, in accordance with the JOA. Failure to respond within the time specified shall be deemed an election to participate in SEC's recommended operation. An election not to participate in an election to set production casing and complete the Initial Well shall result in the forfeiture of interest not only in the Initial Well, but also in the entire Contract Area and AMI pursuant to Article XV.C of the JOA. Said forfeiture shall only apply if two (2) or more of the cost bearing Parties owning a minimum of sixty percent (60%) elect and participate in setting production pipe and completion of said well. All subsequent operations and elections shall be governed by the following provisions of the JOA.

### Section 1.3.  Reversionary Back-In Working Interest

As further consideration for the sale described in Section 1.1 above, upon reaching Prospect Payout (as defined below), an undivided twenty-five percent (25%) of the other Participants' interests in the Leases, wells, Contract Area and AMI shall automatically and permanently revert to and vest in Sklarco. At Sklarco's request, those other Participants will assign said interest unto Sklarco after Project Payout, including, without limitation, a like interest in the Leases, the proceeds from the sale of oil, gas, and all other products produced or derived from any and all wells drilled within the Prospect, and in any easements, rights of way, personal property, equipment, facilities and pipelines associated with such wells.

Prospect Payout is defined on a Prospect (not well-by-well) basis as the first day of the calendar month following the month in which a Participant's share of the total and cumulative revenue resulting from or relating to the Prospect, equals that Participant's share of the total and cumulative cost incurred within that Prospect. For purposes of Prospect Payout, (i) the total and cumulative revenue shall consist of the Participant's share of all proceeds from the sale of all oil, gas and other hydrocarbons and minerals saved and sold from the applicable Prospect and any other income, bonus payment or other revenue attributable to the Participant's interest therein, and (ii) the total and cumulative cost incurred shall include the Participant's share of all royalty and overriding royalty payments, severance, ad valorem, production and other taxes applicable to production and

not measured by the Participant's other income, all lease acquisition and maintenance costs, all seismic survey and data costs, geological and geophysical evaluation costs, including the Prospect Fee, all costs for site preparation, drilling, completing, reworking, deepening, sidetracking, logging, stimulation, testing, equipping, operating, plugging and abandoning the Initial Well and all other wells within the Prospect, and the cost of all surface damages, pipelines, gathering and other production handling facilities related thereto.

## Article II. Operations

### Section 2.1. JOA

SEC is hereby designated initial Operator. Except as otherwise provided in this Agreement, all operations within the Contract Area shall be governed by the joint operating agreement (the "JOA"), covering the Contract Area attached hereto as Exhibit "D." Insofar and only insofar as it applies to Rudman, the Contract Area shall exclude lands located within the blue outline on the plat attached hereto as Exhibit "A" (and being further identified as Sections 27, 28, 29, 32, 33 and 34, Township 4 North, Range 13 East, Conecuh County, Alabama). The Parties agree to execute the JOA concurrent with their execution of this Agreement. In the event of a conflict between this Agreement and the JOA, this Agreement shall govern and control.

## Article III. Miscellaneous

### Section 3.1. AMI

The Parties have formed an AMI under the terms contained in Article XV.M of the JOA covering the lands within the red outline on the plat attached hereto as Exhibit "A" which shall govern all other acquisitions within the Contract Area. Notwithstanding any provisions contained in said Article XV.M, or otherwise in this Agreement, Rudman has no obligation to offer any oil and gas leases and/or oil and gas interests covering lands located within the blue outline on said Exhibit "A" (and being further identified as Sections 27, 28, 29, 32, 33 and 34, Township 4 North, Range 13 East, Conecuh County, Alabama) to the other Participants, and neither SEC nor the other Participants have any obligation to offer Rudman any oil and gas leases and/or oil and gas interests covering lands located within that blue outline. The Participants other than Rudman shall have the right to share in any oil and gas leases and/or oil and gas interests covering lands located within that blue outline in proportion to which their interest bears to one another, excluding the interest of Rudman.

### Section 3.2. Information

Upon execution of this Agreement by all of the Parties, any Participate may request and shall be entitled to a copy of all of the Leases and of the drill-site title opinion for the drill-site tract of the Initial Well.

### Section 3.3. Confidentiality

The Parties agree to keep confidential and not disclose any information about this Prospect, not already disclosed or of public record, to third parties for so long as this Agreement is in effect, except that any Party may disclose information about the Prospect to bona fide third party prospective purchasers of that Party's working interest in the Prospect.

### Section 3.4. Closing

Closing shall occur by mail or by such other means and at such time and place to which the Parties mutually agree.

### Section 3.5. Binding On Successors And Assigns

This Agreement shall enure to the benefit of and be binding upon the Parties hereto and their respective successors and assigns.

### Section 3.6. Entire Agreement

This Agreement and its attachments constitute the entire agreement of the Parties with respect to the subject matter hereof, and any other promises, inducements, representations, warranties or agreements with respect to the subject matter hereof have been superseded hereby and are not intended to survive this Agreement. Except as otherwise expressly provided herein, no amendment or modification of this Agreement shall be effective unless set forth in writing and signed by a duly authorized officer of each of the Parties.

### Section 3.7. Severability

The invalidity of any one or more of the provisions of this Agreement does not affect the remaining portions of this Agreement, and in case of any such invalidity, this Agreement should be construed as if the invalid provision(s) had not been inserted.

### Section 3.8. Notices

All notices between the Parties authorized or required by any of the provisions of this Agreement, unless otherwise expressly provided, shall be given in writing by email or facsimile or regular mail, addressed to those of the Parties to whom the notice is given at the email addresses or fax telephone numbers and addresses set forth in Exhibit "A" to the JOA. Any of the Parties may change its designated email address, fax telephone number and address at any time, and from time to time, by giving written notice thereof to the other Parties.

### Section 3.9. Headings for Convenience

The article, section and subsection headings used in this Agreement are inserted for convenience only and shall not be regarded in construing this Agreement.

### Section 3.10. Governing Law

This Agreement shall be governed by and interpreted in accordance with the laws of the State of Alabama.

### Section 3.11. Relationship Of The Parties

Liability of the Parties hereto shall be several and not joint or collective. Each Party shall make its own elections under this Agreement and shall be responsible only for its obligations as herein set out. It is not the intention of the Parties to create, nor shall this Agreement be construed as creating, a mining or other partnership, joint venture or association between the Parties.

### Section 3.12. Assignability

The Parties to this Agreement may assign all or part of their rights and obligations hereunder, provided, however, that any such assignment must be made subject to the terms and conditions of this Agreement and the JOA.

### Section 3.13. Term

This Agreement shall remain in full force and effect as between the Parties until expiration of the last lease jointly owned by them, or any combination of the Parties, covering any part of the AMI.

### Section 3.14. Sophisticated Investors

By execution of this Agreement, the Participants confirm that they have a working knowledge of the oil and gas industry and that they each has thoroughly investigated its participation in the Prospect. Each Participant acknowledges that it is a sophisticated investor and it (or its owner) has a financial net worth in excess of one million dollars. Each Participant represents it can afford to take the financial risk associated with participation in an oil and gas drilling venture, including without limitation, loss of not just its share of the Prospect Fee and drilling advance, but also its

share of all other costs incurred in operations on the Prospect. EACH PARTICIPANT ACKNOWLEDGES THERE CAN BE NO ASSURANCE THAT OIL AND/OR GAS WILL BE FOUND, OR IF FOUND, THAT IT CAN BE PRODUCED IN PROFITABLE QUANTITIES. Each Participant further confirms and accepts that the offering of the interest herein purchased has not been registered pursuant to the Federal Securities Act of 1933, as amended, the rules and regulations of the Securities and Exchange Commission promulgated or issued thereunder or the securities laws of the States of Louisiana or Alabama, or any other state. Each Participant has hereby agreed to participate in the Prospect for investment purposes only, and not with a view to or for sale in connection with any distribution of interests in the Prospect within the meaning of said laws.

### Section 3.15. Counterparts

This Participation Agreement may be executed in any number of counterparts and each counterpart shall constitute and shall be deemed to be an original instrument, but all such counterparts shall constitute but one instrument.

THUS DONE AND SIGNED This _14_ day of _DECEMBER_, 2006, but effective as of the Effective Date.

SKLAR EXPLORATION COMPANY L.L.C.

By _____
     David A. Barlow
     Chief Operating Officer

SKLARCO L.L.C.

By _____
     David A. Barlow
     Chief Operating Officer

McCOMBS ENERGY, LTD.

By_____
     Ricky Haikin
     Vice President

WAC INVESTMENT COMPANY, LLC

By_____
     Michael E. Riddick
     Executive Vice President

PICKENS FINANCIAL GROUP, LLC

By:_____
     Michael K. Pickens
     Vice President

THE RUDMAN PARTNERSHIP

By:_____
     W. R. (Trey) Sibley, III
     Attorney in Fact

share of all other costs incurred in operations on the Prospect. EACH PARTICIPANT ACKNOWLEDGES THERE CAN BE NO ASSURANCE THAT OIL AND/OR GAS WILL BE FOUND, OR IF FOUND, THAT IT CAN BE PRODUCED IN PROFITABLE QUANTITIES. Each Participant further confirms and accepts that the offering of the interest herein purchased has not been registered pursuant to the Federal Securities Act of 1933, as amended, the rules and regulations of the Securities and Exchange Commission promulgated or issued thereunder or the securities laws of the States of Louisiana or Alabama, or any other state. Each Participant has hereby agreed to participate in the Prospect for investment purposes only, and not with a view to or for sale in connection with any distribution of interests in the Prospect within the meaning of said laws.

**Section 3.15. Counterparts**

This Participation Agreement may be executed in any number of counterparts and each counterpart shall constitute and shall be deemed to be an original instrument, but all such counterparts shall constitute but one instrument.

THUS DONE AND SIGNED This ____ day of _____, 2006, but effective as of the Effective Date.

SKLAR EXPLORATION COMPANY L.L.C.

By _____
David A. Barlow
Chief Operating Officer

SKLARCO L.L.C.

By _____
David A. Barlow
Chief Operating Officer

McCOMBS ENERGY, LTD.

By _____
Ricky Halkin
Vice President

WAC INVESTMENT COMPANY, LLC

By_____
Michael E. Riddick
Executive Vice President

PICKENS FINANCIAL GROUP, LLC

By:_____
Michael K. Pickens
Vice President

THE RUDMAN PARTNERSHIP

By:_____
W. R. (Trey) Sibley, III
Attorney in Fact

share of all other costs incurred in operations on the Prospect. EACH PARTICIPANT ACKNOWLEDGES THERE CAN BE NO ASSURANCE THAT OIL AND/OR GAS WILL BE FOUND, OR IF FOUND, THAT IT CAN BE PRODUCED IN PROFITABLE QUANTITIES. Each Participant further confirms and accepts that the offering of the interest herein purchased has not been registered pursuant to the Federal Securities Act of 1933, as amended, the rules and regulations of the Securities and Exchange Commission promulgated or issued thereunder or the securities laws of the States of Louisiana or Alabama, or any other state. Each Participant has hereby agreed to participate in the Prospect for investment purposes only, and not with a view to or for sale in connection with any distribution of interests in the Prospect within the meaning of said laws.

### Section 3.15. Counterparts

This Participation Agreement may be executed in any number of counterparts and each counterpart shall constitute and shall be deemed to be an original instrument, but all such counterparts shall constitute but one instrument.

THUS DONE AND SIGNED This ____ day of _____, 2006, but effective as of the Effective Date.

SKLAR EXPLORATION COMPANY L.L.C.

By _____
David A. Barlow
Chief Operating Officer

SKLARCO L.L.C.

By _____
David A. Barlow
Chief Operating Officer

McCOMBS ENERGY, LTD.

By _____
Ricky Haikin
Vice President

WAC INVESTMENT COMPANY, LLC

By _____
Michael E. Riddick
Executive Vice President

PICKENS FINANCIAL GROUP, LLC

By: _____
Michael K. Pickens
Vice President

THE RUDMAN PARTNERSHIP

By: _____
W. R. (Trey) Sibley, III
Attorney in Fact

share of all other costs incurred in operations on the Prospect.   EACH PARTICIPANT ACKNOWLEDGES THERE CAN BE NO ASSURANCE THAT OIL AND/OR GAS WILL BE FOUND, OR IF FOUND, THAT IT CAN BE PRODUCED IN PROFITABLE QUANTITIES. Each Participant further confirms and accepts that the offering of the interest herein purchased has not been registered pursuant to the Federal Securities Act of 1933, as amended, the rules and regulations of the Securities and Exchange Commission promulgated or issued thereunder or the securities laws of the States of Louisiana or Alabama, or any other state.  Each Participant has hereby agreed to participate in the Prospect for investment purposes only, and not with a view to or for sale in connection with any distribution of interests in the Prospect within the meaning of said laws.

### Section 3.15.  Counterparts

This Participation Agreement may be executed in any number of counterparts and each counterpart shall constitute and shall be deemed to be an original instrument, but all such counterparts shall constitute but one instrument.

THUS DONE AND SIGNED This 22 day of _December_, 2006, but effective as of the Effective Date.

Pickens Financial Group's acceptance of the attached JOA is conditioned upon the inclusion of the following clause in the JOA:

Until receipt by Operator of notice from Non-Operator to discontinue such sales, Operator will market and sell the gas and associated hydrocarbons attributable to the interest of Non-Operator in the Contract Area, will receive the proceeds of such a sale, and will disburse such proceeds (less applicable production and severance taxes) to Non-Operator and the royalty and overriding royalty owners entitled to receive the same, in proportion to their respective interests.  To effect such a sale, Operator may enter into contracts for the sale of such gas, provided that no such contract shall extend for a period in excess of one (1) year. Operator will notify Non-Operator promptly of the execution of any contract for the sale of Non-Operator's gas which is to continue for a period in excess of ninety (90) days.

Such gas and associated hydrocarbons shall be sold for a price which is not less than the price Operator receives for its own gas and associated hydrocarbons produced from the Contract Area.

Such authority and responsibility of Operator to market and sell the gas and associated hydrocarbons of Non-Operator may be revoked by Non-Operator by notice to Operator delivered not less than 15 days prior to the date on which such revocation is to become effective.  Such a revocation shall not affect the validity of a contract in respect of which Non-Operator has received notice as hereinabove provided.

SKLAR EXPLORATION COMPANY L.L.C.

By _____
        David A. Barlow
        Chief Operating Officer

SKLARCO L.L.C.

By _____
        David A. Barlow
        Chief Operating Officer

McCOMBS ENERGY, LTD.

By _____
        Ricky Haikin
        Vice President

WAC INVESTMENT COMPANY, LLC

By _____
        Michael E. Riddick
        Executive Vice President

PICKENS FINANCIAL GROUP, LLC

By: _____
        Michael K. Pickens
        Vice President

THE RUDMAN PARTNERSHIP

By: _____
        W. R. (Trey) Sibley, III
        Attorney in Fact

Signature Page to That certain
Participation Agreement for
Escambia Prospect
Escambia County, Alabama

share of all other costs incurred in operations on the Prospect. EACH PARTICIPANT ACKNOWLEDGES THERE CAN BE NO ASSURANCE THAT OIL AND/OR GAS WILL BE FOUND, OR IF FOUND, THAT IT CAN BE PRODUCED IN PROFITABLE QUANTITIES. Each Participant further confirms and accepts that the offering of the interest herein purchased has not been registered pursuant to the Federal Securities Act of 1933, as amended, the rules and regulations of the Securities and Exchange Commission promulgated or issued thereunder or the securities laws of the States of Louisiana or Alabama, or any other state. Each Participant has hereby agreed to participate in the Prospect for investment purposes only, and not with a view to or for sale in connection with any distribution of interests in the Prospect within the meaning of said laws.

**Section 3.15. Counterparts**

This Participation Agreement may be executed in any number of counterparts and each counterpart shall constitute and shall be deemed to be an original instrument, but all such counterparts shall constitute but one instrument.

THUS DONE AND SIGNED This ____ day of _____, 2006, but effective as of the Effective Date.

SKLAR EXPLORATION COMPANY L.L.C.

By _____
David A. Barlow
Chief Operating Officer

SKLARCO L.L.C.

By _____
David A. Barlow
Chief Operating Officer

McCOMBS ENERGY, LTD.

By _____
Ricky Haikin
Vice President

WAC INVESTMENT COMPANY, LLC

By _____
Michael E. Riddick
Executive Vice President

PICKENS FINANCIAL GROUP, LLC

By: _____
Michael K. Pickens
Vice President

THE RUDMAN PARTNERSHIP

By: _____
W. R. (Trey) Sibley, III
Attorney in Fact

Attachments

| | |
|---|---|
| Exhibit "A": | Plat |
| Exhibit "A-1": | Description of Leases |
| Exhibit "B": | Form of Assignment |
| Exhibit "C": | AFE |
| Exhibit "D": | JOA |

## EXHIBIT "A"

Attached to and made a part of that certain Participation Agreement dated November 1, 2006, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., McCombs Energy, Ltd., WAC Investment Company, L.L.C., Pickens Financial Group, LLC, and The Rudman Partnership, as Non-Operators.



## EXHIBIT "A-1"

Attached to and made a part of that certain Participation Agreement
dated effective as of November 1, 2006, by and between
Sklar Exploration Company L.L.C., Sklarco L.L.C., McCombs Energy, Ltd.,
WAC Investment Company, LLC, The Rudman Partnership and Pickens Financial Group, LLC

## DESCRIPTION OF OIL, GAS AND OTHER MINERAL LEASES

1.  Oil, Gas and Mineral Lease dated December 28, 2005, by and between Cary Page, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2022 of the Probate Judge Records of Conecuh County, Alabama.

2.  Oil, Gas and Mineral Lease dated December 28, 2005, by and between Dorothy Faye Jones, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2024 of the Probate Judge Records of Conecuh County, Alabama.

3.  Oil, Gas and Mineral Lease dated December 28, 2005, by and between Dwight Taylor, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2026 of the Probate Judge Records of Conecuh County, Alabama.

4.  Oil, Gas and Mineral Lease dated January 9, 2006, by and between Tully L. Logan, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 405, Page 779 of the Probate Judge Records of Escambia County, Alabama.

5.  Oil, Gas and Mineral Lease dated January 9, 2006, by and between Jack D. Logan, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 405, Page 777 of the Probate Judge Records of Escambia County, Alabama.

6.  Oil, Gas and Mineral Lease dated January 9, 2006, by and between Kenneth Allen Baker, et al, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2028 of the Probate Judge Records of Conecuh County, Alabama.

7.  Oil, Gas and Mineral Lease dated February 16, 2006, by and between Cedar Creek Land & Timber, as Lessor, and John C. Albury, as Lessee, the existence of which is set forth by that Declaration of Lease dated February 24, 2006 and recorded in Book 2006, Page 2091 of the Probate Judge Records of Conecuh County, Alabama and also recorded in Book 405, Page 771 of the Probate Judge Records of Escambia County, Alabama.

8.  Oil, Gas and Mineral Lease dated January 9, 2006, by and between Raymond B. Logan, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 405, Page 775 of the Probate Judge Records of Escambia County, Alabama.

9.  Oil, Gas and Mineral Lease dated January 24, 2006, by and between Loree R. Hamiter, James E. Hamiter and Harold W. Hamiter, as Trustees under the Last Will and Testament of Harold E. Hamiter, deceased, dated February 14, 1991, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2030 of the Probate Judge Records of Conecuh County, Alabama.

10. Oil, Gas and Mineral Lease dated January 9, 2006, by and between James W. Logan, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 405, Page 781 of the Probate Judge Records of Escambia County, Alabama.

11. Oil, Gas and Mineral Lease dated January 9, 2006, by and between Bertie T. Hassell, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 405, Page 783 of the Probate Judge Records of Escambia County, Alabama.

12. Oil, Gas and Mineral Lease dated March 8, 2006, by and between Ralls Properties, L.L.C., as Lessor, and John C. Albury, as Lessee, recorded in Book 405, Page 785 of the Probate Judge Records of Escambia County, Alabama.

13. Oil, Gas and Mineral Lease dated February 13, 2006, by and between R. Wyatt Feagin, as Lessor, and John C. Albury, as Lessee, recorded in Book 405, Page 787 of the Probate Judge Records of Escambia County, Alabama.

14. Oil, Gas and Mineral Lease dated February 13, 2006, by and between Nanette Feagin Beck, as Lessor, and John C. Albury, as Lessee, recorded in Book 405, Page 790 of the Probate Judge Records of Escambia County, Alabama.

15. Oil, Gas and Mineral Lease dated March 10, 2006, by and between Noel E. Lindholm, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2032 of the Probate Judge Records of Conecuh County, Alabama.

16. Oil, Gas and Mineral Lease dated January 30, 2006, by and between J. C. Snowden, as Lessor, and John C. Albury, as Lessee, recorded in Book 405, Page 793 of the Probate Judge Records of Escambia County, Alabama.

17. Oil, Gas and Mineral Lease dated February 9, 2006, by and between Charles D. Searcy, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2034 of the Probate Judge Records of Conecuh County, Alabama.

18. Oil, Gas and Mineral Lease dated January 31, 2006, by and between Barbara Ann Stone Robinson, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 405, Page 795 of the Probate Judge Records of Escambia County, Alabama.

19. Oil, Gas and Mineral Lease dated March 1, 2006, by and between Jon McMurray, as Lessor, and John C. Albury, as Lessee, recorded in Book 405, Page 797 of the Probate Judge Records of Escambia County, Alabama.

20. Oil, Gas and Mineral Lease dated March 3, 2006, by and between William E. Older, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2036 of the Probate Judge Records of Conecuh County, Alabama.

21. Oil, Gas and Mineral Lease dated March 3, 2006, by and between Earline B. Older, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2038 of the Probate Judge Records of Conecuh County, Alabama.

22. Oil, Gas and Mineral Lease dated March 9, 2006, by and between Juanita C. Waters, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2040 of the Probate Judge Records of Conecuh County, Alabama.

23. Oil, Gas and Mineral Lease dated March 9, 2006, by and between Alva Nann Taylor, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2042 of the Probate Judge Records of Conecuh County, Alabama.

24. Oil, Gas and Mineral Lease dated February 20, 2006, by and between Howard Sylvester Stewart, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2044 of the Probate Judge Records of Conecuh County, Alabama.

25. Oil, Gas and Mineral Lease dated February 28, 2006, by and between Dale B. Blair, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 405, Page 799 of the Probate Judge Records of Escambia County, Alabama.

26. Oil, Gas and Mineral Lease dated March 9, 2006, by and between Jo Ann Langham, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2046 of the Probate Judge Records of Conecuh County, Alabama.

27. Oil, Gas and Mineral Lease dated February 20, 2006, by and between Charles A. Frazier, et al, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2048 of the Probate Judge Records of Conecuh County, Alabama.

28. Oil, Gas and Mineral Lease dated February 20, 2006, by and between Charles A. Frazier, et al, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2050 of the Probate Judge Records of Conecuh County, Alabama.

29. Oil, Gas and Mineral Lease dated February 20, 2006, by and between Charles A. Frazier, et al, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2054 of the Probate Judge Records of Conecuh County, Alabama.

30. Oil, Gas and Mineral Lease dated March 9, 2006, by and between Robert Cary, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2056 of the Probate Judge Records of Conecuh County, Alabama.

31. Oil, Gas and Mineral Lease dated March 20, 2006, by and between Stephen Jeter, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2083 of the Probate Judge Records of Conecuh County, Alabama and also recorded in Book 405, Page 801 of the Probate Judge Records of Escambia County, Alabama.

32. Oil, Gas and Mineral Lease dated March 20, 2006, by and between John J. Jeter, III, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2087 of the Probate Judge Records of Conecuh County, Alabama and also recorded in Book 405, Page 805 of the Probate Judge Records of Escambia County, Alabama.

33. Oil, Gas and Mineral Lease dated March 20, 2006, by and between Sally Jeter Hammond, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2079 of the Probate Judge Records of Conecuh County, Alabama and also recorded in Book 405, Page 809 of the Probate Judge Records of Escambia County, Alabama.

34. Oil, Gas and Mineral Lease dated March 28, 2006, by and between Allene B. Ward, et al, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2058 of the Probate Judge Records of Conecuh County, Alabama.

35. Oil, Gas and Mineral Lease dated March 28, 2006, by and between Allene B. Ward, et al, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2068 of the Probate Judge Records of Conecuh County, Alabama.

36. Oil, Gas and Mineral Lease dated April 10, 2006, by and between Dorothy Nowling Womack, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2060 of the Probate Judge Records of Conecuh County, Alabama.

37. Oil, Gas and Mineral Lease dated April 10, 2006, by and between Douglas Gene Rabren, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2062 of the Probate Judge Records of Conecuh County, Alabama.

38. Oil, Gas and Mineral Lease dated April 10, 2006, by and between Henry George Foster, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2064 of the Probate Judge Records of Conecuh County, Alabama.

39. Oil, Gas and Mineral Lease dated April 11, 2006, by and between Julia Blair, as Lessor, and John C. Albury, as Lessee, recorded in Book 405, Page 813 of the Probate Judge Records of Escambia County, Alabama.

40. Oil, Gas and Mineral Lease dated April 2, 2006, by and between David Edwin Logan, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book ____, Page ____ of the Probate Judge Records of Conecuh County, Alabama and also recorded in Book 405, Page 815 of the Probate Judge Records of Escambia County, Alabama.

41. Oil, Gas and Mineral Lease dated January 9, 2006, by and between Sarah M. Lanier, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2066 of the Probate Judge Records of Conecuh County, Alabama.

42. Oil, Gas and Mineral Lease dated February 28, 2006, by and between Wayne M. Blair, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 409, Page 814 of the Probate Judge Records of Escambia County, Alabama.

43. Oil, Gas and Mineral Lease dated May 12, 2006, by and between William E. Older, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2532 of the Probate Judge Records of Conecuh County, Alabama.

44. Oil, Gas and Mineral Lease dated April 11, 2006, by and between Juanita Ralls, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2530 of the Probate Judge Records of Conecuh County, Alabama.

45. Oil, Gas and Mineral Lease dated May 10, 2006, by and between Dorothy Faye Jones, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2528 of the Probate Judge Records of Conecuh County, Alabama.

46. Oil, Gas and Mineral Lease dated February 28, 2006, by and between Martha B. Robinson, as Lessor, and John C. Albury, as Lessee, recorded in Book 409, Page 816 of the Probate Judge Records of Escambia County, Alabama.

47. Oil, Gas and Mineral Lease dated May 12, 2006, by and between Earline B. Older, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2526 of the Probate Judge Records of Conecuh County, Alabama.

48. Oil, Gas and Mineral Lease dated April 28, 2006, by and between Helen Pate, as Trustee for Josh Pate and Jill Pate, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2522 of the Probate Judge Records of Conecuh County, Alabama.

49. Oil, Gas and Mineral Lease dated May 10, 2006, by and between Dwight Taylor, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2524 of the Probate Judge Records of Conecuh County, Alabama.

50. Oil, Gas and Mineral Lease dated February 28, 2006, by and between Mary B. Andrews, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 409, Page 818 of the Probate Judge Records of Escambia County, Alabama.

51. Oil, Gas and Mineral Lease dated March 29, 2006, by and between Oscar DePriest Tucker, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2514 of the Probate Judge Records of Conecuh County, Alabama.

52. Oil, Gas and Mineral Lease dated May 30, 2006, by and between John N. Feagin, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2520 of the Probate Judge Records of Conecuh County, Alabama.

53. Oil, Gas and Mineral Lease dated June 5, 2006, by and between Joel R. Pate, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2509 of the Probate Judge Records of Conecuh County, Alabama.

54. Oil, Gas and Mineral Lease dated May 24, 2006, by and between William G. Dawkins, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 409, Page 827 of the Probate Judge Records of Escambia County, Alabama.

55. Oil, Gas and Mineral Lease dated May 24, 2006, by and between Carolyn C. Kennedy, as Lessor, and John C. Albury, as Lessee, recorded in Book 409, Page 820 of the Probate Judge Records of Escambia County, Alabama.

56.   Oil, Gas and Mineral Lease dated June 5, 2006, by and between Frank Steadman, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2534 of the Probate Judge Records of Conecuh County, Alabama.

57.   Oil, Gas and Mineral Lease dated May 18, 2006, by and between Sarah Ann Leyden, as Lessor, and John C. Albury, as Lessee, recorded in Book 409, Page 832 of the Probate Judge Records of Escambia County, Alabama.

58.   Oil, Gas and Mineral Lease dated May 18, 2006, by and between Michael P. Leyden, as Lessor, and John C. Albury, as Lessee, recorded in Book 409, Page 829 of the Probate Judge Records of Escambia County, Alabama.

59.   Oil, Gas and Mineral Lease dated June 23, 2006, by and between Frank M. Stamps, as Lessor, and John C. Albury, as Lessee, recorded in Book 409, Page 822 of the Probate Judge Records of Escambia County, Alabama.

60.   Oil, Gas and Mineral Lease dated February 28, 2006, by and between Nell Blair, as Lessor, and John C. Albury, as Lessee, recorded in Book 409, Page 825 of the Probate Judge Records of Escambia County, Alabama.

61.   Oil, Gas and Mineral Lease dated May 22, 2006, by and between Jean Ray and Glen Ray, Successor Co-Trustees of the Edna B. Gunter Revocable Trust dated June 2, 1992, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2503 of the Probate Judge Records of Conecuh County, Alabama.

62.   Oil, Gas and Mineral Lease dated July 14, 2006, by and between Cedar Creek Land & Timber, Inc., as Lessor, and John C. Albury, as Lessee, the existence of which is set forth by that Memorandum of Oil and Gas Lease recorded in Book 2006, Page 2511 of the Probate Judge Records of Conecuh County, Alabama and also recorded in Book 405, Page 835 of the Probate Judge Records of Escambia County, Alabama.

63.   Oil, Gas and Mineral Lease dated July 28, 2006, by and between J. Randle Feagin, a/k/a, John Randle Feagin, as Lessor, and John C. Albury, as Lessee, recorded in Book _____, Page _____ of the Probate Judge Records of Conecuh County, Alabama and also recorded in Book _____, Page _____ of the Probate Judge Records of Escambia County, Alabama.

64.   Oil, Gas and Mineral Lease dated July 28, 2006, by and between Nancy Feagin, as Lessor, and John C. Albury, as Lessee, recorded in Book _____, Page _____ of the Probate Judge Records of Conecuh County, Alabama and also recorded in Book _____, Page _____ of the Probate Judge Records of Escambia County, Alabama.

**EXHIBIT "B"**

Attached to and made a part of that certain Participation Agreement
dated effective as of November 1, 2006, by and between
Sklar Exploration Company L.L.C., Sklarco L.L.C., McCombs Energy, Ltd.,
WAC Investment Company, LLC, The Rudman Partnership and Pickens Financial Group, LLC

## FORM OF ASSIGNMENT OF OIL, GAS AND OTHER MINERAL LEASES

STATE OF ALABAMA,

COUNTIES OF ESCAMBIA AND CONECUH.

KNOW ALL MEN BY THESE PRESENTS That:

> **SKLARCO L.L.C.**, a Louisiana limited liability company, whose
> address is Louisiana Tower, Suite 1601, 401 Edwards Street,
> Shreveport, Louisiana 71101, represented herein by its Chief
> Operating Officer, David A. Barlow ("Assignor") ;

for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable

consideration, the receipt and sufficiency of which are hereby acknowledged, and subject to the

back-in after project payout reversionary working interest described hereinbelow, does hereby grant,

bargain, sell, convey, assign, set over and transfer unto:

> **SKLARCO L.L.C.**, a Louisiana limited liability company, whose
> address is Louisiana Tower, Suite 1601, 401 Edwards Street,
> Shreveport, Louisiana 71101, represented herein by its Chief
> Operating Officer, David A. Barlow ("Sklarco") ;

> **McCOMBS ENERGY, LTD.**, a Texas limited partnership, whose
> address is 5599 San Felipe, Suite 1200, Houston, Texas
> 77056-2794, represented herein by its Vice President, Ricky
> Haikin ("McCombs");

> **WAC INVESTMENT COMPANY, LLC**, a Louisiana limited
> liability company, whose address is 333 Texas Street, Suite
> 2121, Shreveport, Louisiana 71101, represented herein by its
> Executive Vice President, Michael E. Riddick ("WAC");

> **PICKENS FINANCIAL GROUP, LLC**, a Texas limited liability
> company, whose address is 8499 Greenville Avenue, Suite
> 105, Dallas, Texas 75231-2417, represented herein by its Vice
> President, Michael K. Pickens ("Pickens");

> **THE RUDMAN PARTNERSHIP**, a Texas general partnership,
> whose address is 1700 Pacific Avenue, Ste. 4700, Dallas, TX
> 75201-4670, represented herein by W. R. (Trey) Sibley, III, its
> duly authorized Attorney in Fact ("Rudman");

> (hereinafter Sklarco, McCombs, WAC, Rudman and Pickens are
> sometimes referred to collectively as the "Assignees" or individually
> as an "Assignor");

all of Assignor's right, title and interest in and to the oil, gas and mineral leases (the "Leases")

described on Exhibit "A," attached hereto and by reference made a part hereof, to be shared by the

Assignees in the proportions set forth below as to each such Assignee's name:

| ASSIGNEES | | INTEREST |
|-----------|--|----------|
| Sklarco | | 0.32500000 of 8/8ths |
| McCombs | | 0.25000000 of 8/8ths |
| WAC | | 0.20000000 of 8/8ths |
| Rudman | | 0.12500000 of 8/8ths |
| Pickens | | 0.10000000 of 8/8ths |
| | Total | 1.00000000 of 8/8ths |

TO HAVE AND TO HOLD unto Assignees, their successors and assigns, forever, subject to, and in accordance with, the following terms and provisions:

1.  This Assignment is made effective as of November 1, 2006 (the "Effective Date").

2.  This Assignment is made without warranty of title, express or implied, not even return for the purchase price, except that Assignor agree to warrant title against all defects arising out of claims by Assignor or Sklar Exploration Company L.L.C. or of persons claiming by, through or under Assignor or Sklar Exploration Company L.L.C.

3.  This Assignment, and the interest assigned hereunder, is made subject to the terms and conditions of the Leases and all other instruments of record affecting those Leases as of the Effective Date, including, without limitation, [INSERT DESCRIPTION OF ANY INSTRUMENTS OF RECORD HERE].

4.  This Assignment is also made in accordance with and subject to that certain Participation Agreement dated effective as of November 1, 2006, by and between Sklar Exploration Company L.L.C., Sklarco L.L.C, McCombs Energy, Ltd. and WAC Investment Company, LLC, and all attachments thereto, including that certain Joint Operating Agreement dated November 1, 2006, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C. et al., as Non-Operators, and all of the terms and provisions of that Participation Agreement and its attachments, including, without limitation, the back-in after prospect payout reversionary working interest described therein.

5.  As to Rudman, and only as to Rudman, this Assignment shall exclude any of the Leases insofar and only insofar as they cover lands located within Sections 27, 28, 29, 32, 33 and 34, Township 4 North, Range 13 East, Conecuh County, Alabama. The Assignees other than Rudman are hereby assigned an interest in the Leases insofar and only insofar as they cover lands located within those sections in proportion to which their interest bears to one another, excluding the interest of Rudman.

6.  This Assignment may be executed in any number of counterparts and each counterpart shall constitute and shall be deemed to be an original instrument, but all such counterparts shall constitute but one instrument.

This Assignment is executed by the parties on the date set forth in each party's acknowledgment, but effective as of the Effective Date.

**SKLARCO L.L.C.**

By_____
          David A. Barlow
          Chief Operating Officer

- - ASSIGNOR

**SKLARCO L.L.C.**

By_____
          David A. Barlow
          Chief Operating Officer

**McCOMBS ENERGY, LTD.**

By_____
          Ricky Haikin
          Vice President

**WAC INVESTMENT COMPANY, LLC**

By_____
          Michael E. Riddick
          Executive Vice President

**THE RUDMAN PARTNERSHIP**

By:_____
          W. R. (Trey) Sibley, III
          Attorney in Fact

**PICKENS FINANCIAL GROUP, LLC**

By:_____
          Michael K. Pickens
          Vice President

- - ASSIGNEES

## EXHIBIT "A"

Attached to and made a part of that certain Assignment Of Oil, Gas And Mineral Leases
dated effective as of November 1, 2006, by and between Sklarco L.L.C.,
as Assignor, and Sklarco L.L.C., McCombs Energy, Ltd., WAC Investment Company, LLC,
The Rudman Partnership and Pickens Financial Group, LLC, as Assignees

## DESCRIPTION OF OIL, GAS AND OTHER MINERAL LEASES

1.  Oil, Gas and Mineral Lease dated December 28, 2005, by and between Cary Page, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2022 of the Probate Judge Records of Conecuh County, Alabama.

2.  Oil, Gas and Mineral Lease dated December 28, 2005, by and between Dorothy Faye Jones, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2024 of the Probate Judge Records of Conecuh County, Alabama.

3.  Oil, Gas and Mineral Lease dated December 28, 2005, by and between Dwight Taylor, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2026 of the Probate Judge Records of Conecuh County, Alabama.

4.  Oil, Gas and Mineral Lease dated January 9, 2006, by and between Tully L. Logan, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 405, Page 779 of the Probate Judge Records of Escambia County, Alabama.

5.  Oil, Gas and Mineral Lease dated January 9, 2006, by and between Jack D. Logan, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 405, Page 777 of the Probate Judge Records of Escambia County, Alabama.

6.  Oil, Gas and Mineral Lease dated January 9, 2006, by and between Kenneth Allen Baker, et al, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2028 of the Probate Judge Records of Conecuh County, Alabama.

7.  Oil, Gas and Mineral Lease dated February 16, 2006, by and between Cedar Creek Land & Timber, as Lessor, and John C. Albury, as Lessee, the existence of which is set forth by that Declaration of Lease dated February 24, 2006 and recorded in Book 2006, Page 2091 of the Probate Judge Records of Conecuh County, Alabama and also recorded in Book 405, Page 771 of the Probate Judge Records of Escambia County, Alabama.

8.  Oil, Gas and Mineral Lease dated January 9, 2006, by and between Raymond B. Logan, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 405, Page 775 of the Probate Judge Records of Escambia County, Alabama.

9.  Oil, Gas and Mineral Lease dated January 24, 2006, by and between Loree R. Hamiter, James E. Hamiter and Harold W. Hamiter, as Trustees under the Last Will and Testament of Harold E. Hamiter, deceased, dated February 14, 1991, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2030 of the Probate Judge Records of Conecuh County, Alabama.

10. Oil, Gas and Mineral Lease dated January 9, 2006, by and between James W. Logan, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 405, Page 781 of the Probate Judge Records of Escambia County, Alabama.

11. Oil, Gas and Mineral Lease dated January 9, 2006, by and between Bertie T. Hassell, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 405, Page 783 of the Probate Judge Records of Escambia County, Alabama.

12. Oil, Gas and Mineral Lease dated March 8, 2006, by and between Ralls Properties, L.L.C., as Lessor, and John C. Albury, as Lessee, recorded in Book 405, Page 785 of the Probate Judge Records of Escambia County, Alabama.

13. Oil, Gas and Mineral Lease dated February 13, 2006, by and between R. Wyatt Feagin, as Lessor, and John C. Albury, as Lessee, recorded in Book 405, Page 787 of the Probate Judge Records of Escambia County, Alabama.

14. Oil, Gas and Mineral Lease dated February 13, 2006, by and between Nanette Feagin Beck, as Lessor, and John C. Albury, as Lessee, recorded in Book 405, Page 790 of the Probate Judge Records of Escambia County, Alabama.

15. Oil, Gas and Mineral Lease dated March 10, 2006, by and between Noel E. Lindholm, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2032 of the Probate Judge Records of Conecuh County, Alabama.

16. Oil, Gas and Mineral Lease dated January 30, 2006, by and between J. C. Snowden, as Lessor, and John C. Albury, as Lessee, recorded in Book 405, Page 793 of the Probate Judge Records of Escambia County, Alabama.

17. Oil, Gas and Mineral Lease dated February 9, 2006, by and between Charles D. Searcy, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2034 of the Probate Judge Records of Conecuh County, Alabama.

18. Oil, Gas and Mineral Lease dated January 31, 2006, by and between Barbara Ann Stone Robinson, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 405, Page 795 of the Probate Judge Records of Escambia County, Alabama.

19. Oil, Gas and Mineral Lease dated March 1, 2006, by and between Jon McMurray, as Lessor, and John C. Albury, as Lessee, recorded in Book 405, Page 797 of the Probate Judge Records of Escambia County, Alabama.

20. Oil, Gas and Mineral Lease dated March 3, 2006, by and between William E. Older, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2036 of the Probate Judge Records of Conecuh County, Alabama.

21. Oil, Gas and Mineral Lease dated March 3, 2006, by and between Earline B. Older, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2038 of the Probate Judge Records of Conecuh County, Alabama.

22. Oil, Gas and Mineral Lease dated March 9, 2006, by and between Juanita C. Waters, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2040 of the Probate Judge Records of Conecuh County, Alabama.

23. Oil, Gas and Mineral Lease dated March 9, 2006, by and between Alva Nann Taylor, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2042 of the Probate Judge Records of Conecuh County, Alabama.

24. Oil, Gas and Mineral Lease dated February 20, 2006, by and between Howard Sylvester Stewart, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2044 of the Probate Judge Records of Conecuh County, Alabama.

25. Oil, Gas and Mineral Lease dated February 28, 2006, by and between Dale B. Blair, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 405, Page 799 of the Probate Judge Records of Escambia County, Alabama.

26. Oil, Gas and Mineral Lease dated March 9, 2006, by and between Jo Ann Langham, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2046 of the Probate Judge Records of Conecuh County, Alabama.

27. Oil, Gas and Mineral Lease dated February 20, 2006, by and between Charles A. Frazier, et al, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2048 of the Probate Judge Records of Conecuh County, Alabama.

28. Oil, Gas and Mineral Lease dated February 20, 2006, by and between Charles A. Frazier, et al, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2050 of the Probate Judge Records of Conecuh County, Alabama.

29. Oil, Gas and Mineral Lease dated February 20, 2006, by and between Charles A. Frazier, et al, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2054 of the Probate Judge Records of Conecuh County, Alabama.

30. Oil, Gas and Mineral Lease dated March 9, 2006, by and between Robert Cary, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2056 of the Probate Judge Records of Conecuh County, Alabama.

31. Oil, Gas and Mineral Lease dated March 20, 2006, by and between Stephen Jeter, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2083 of the Probate Judge Records of Conecuh County, Alabama and also recorded in Book 405, Page 801 of the Probate Judge Records of Escambia County, Alabama.

32. Oil, Gas and Mineral Lease dated March 20, 2006, by and between John J. Jeter, III, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2087 of the Probate Judge Records of Conecuh County, Alabama and also recorded in Book 405, Page 805 of the Probate Judge Records of Escambia County, Alabama.

33. Oil, Gas and Mineral Lease dated March 20, 2006, by and between Sally Jeter Hammond, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2079 of the Probate Judge Records of Conecuh County, Alabama and also recorded in Book 405, Page 809 of the Probate Judge Records of Escambia County, Alabama.

34. Oil, Gas and Mineral Lease dated March 28, 2006, by and between Allene B. Ward, et al, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2058 of the Probate Judge Records of Conecuh County, Alabama.

35. Oil, Gas and Mineral Lease dated March 28, 2006, by and between Allene B. Ward, et al, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2068 of the Probate Judge Records of Conecuh County, Alabama.

36.   Oil, Gas and Mineral Lease dated April 10, 2006, by and between Dorothy Nowling
      Womack, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2060
      of the Probate Judge Records of Conecuh County, Alabama.

37.   Oil, Gas and Mineral Lease dated April 10, 2006, by and between Douglas Gene Rabren,
      as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2062 of the
      Probate Judge Records of Conecuh County, Alabama.

38.   Oil, Gas and Mineral Lease dated April 10, 2006, by and between Henry George Foster,
      et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2064 of
      the Probate Judge Records of Conecuh County, Alabama.

39.   Oil, Gas and Mineral Lease dated April 11, 2006, by and between Julia Blair, as Lessor,
      and John C. Albury, as Lessee, recorded in Book 405, Page 813 of the Probate Judge
      Records of Escambia County, Alabama.

40.   Oil, Gas and Mineral Lease dated April 2, 2006, by and between David Edwin Logan,
      et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book _____, Page _____ of
      the Probate Judge Records of Conecuh County, Alabama and also recorded in Book 405,
      Page 815 of the Probate Judge Records of Escambia County, Alabama.

41.   Oil, Gas and Mineral Lease dated January 9, 2006, by and between Sarah M. Lanier, as
      Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2066 of the Probate
      Judge Records of Conecuh County, Alabama.

42.   Oil, Gas and Mineral Lease dated February 28, 2006, by and between Wayne M. Blair,
      et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 409, Page 814 of the
      Probate Judge Records of Escambia County, Alabama.

43.   Oil, Gas and Mineral Lease dated May 12, 2006, by and between William E. Older, as
      Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2532 of the Probate
      Judge Records of Conecuh County, Alabama.

44.   Oil, Gas and Mineral Lease dated April 11, 2006, by and between Juanita Ralls, as
      Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2530 of the Probate
      Judge Records of Conecuh County, Alabama.

45.   Oil, Gas and Mineral Lease dated May 10, 2006, by and between Dorothy Faye Jones,
      as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2528 of the
      Probate Judge Records of Conecuh County, Alabama.

46.   Oil, Gas and Mineral Lease dated February 28, 2006, by and between Martha B.
      Robinson, as Lessor, and John C. Albury, as Lessee, recorded in Book 409, Page 816 of
      the Probate Judge Records of Escambia County, Alabama.

47.   Oil, Gas and Mineral Lease dated May 12, 2006, by and between Earline B. Older, as
      Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2526 of the Probate
      Judge Records of Conecuh County, Alabama.

48.   Oil, Gas and Mineral Lease dated April 28, 2006, by and between Helen Pate, as Trustee
      for Josh Pate and Jill Pate, as Lessor, and John C. Albury, as Lessee, recorded in Book
      2006, Page 2522 of the Probate Judge Records of Conecuh County, Alabama.

49.   Oil, Gas and Mineral Lease dated May 10, 2006, by and between Dwight Taylor, et ux,
      as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2524 of the
      Probate Judge Records of Conecuh County, Alabama.

50.   Oil, Gas and Mineral Lease dated February 28, 2006, by and between Mary B. Andrews,
      et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 409, Page 818 of the
      Probate Judge Records of Escambia County, Alabama.

51.   Oil, Gas and Mineral Lease dated March 29, 2006, by and between Oscar DePriest
      Tucker, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2514 of
      the Probate Judge Records of Conecuh County, Alabama.

52.   Oil, Gas and Mineral Lease dated May 30, 2006, by and between John N. Feagin, et ux,
      as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2520 of the
      Probate Judge Records of Conecuh County, Alabama.

53.   Oil, Gas and Mineral Lease dated June 5, 2006, by and between Joel R. Pate, as Lessor,
      and John C. Albury, as Lessee, recorded in Book 2006, Page 2509 of the Probate Judge
      Records of Conecuh County, Alabama.

54.   Oil, Gas and Mineral Lease dated May 24, 2006, by and between William G. Dawkins,
      et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 409, Page 827 of the
      Probate Judge Records of Escambia County, Alabama.

55.   Oil, Gas and Mineral Lease dated May 24, 2006, by and between Carolyn C. Kennedy,
      as Lessor, and John C. Albury, as Lessee, recorded in Book 409, Page 820 of the Probate
      Judge Records of Escambia County, Alabama.

56. Oil, Gas and Mineral Lease dated June 5, 2006, by and between Frank Steadman, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2534 of the Probate Judge Records of Conecuh County, Alabama.

57. Oil, Gas and Mineral Lease dated May 18, 2006, by and between Sarah Ann Leyden, as Lessor, and John C. Albury, as Lessee, recorded in Book 409, Page 832 of the Probate Judge Records of Escambia County, Alabama.

58. Oil, Gas and Mineral Lease dated May 18, 2006, by and between Michael P. Leyden, as Lessor, and John C. Albury, as Lessee, recorded in Book 409, Page 829 of the Probate Judge Records of Escambia County, Alabama.

59. Oil, Gas and Mineral Lease dated June 23, 2006, by and between Frank M. Stamps, as Lessor, and John C. Albury, as Lessee, recorded in Book 409, Page 822 of the Probate Judge Records of Escambia County, Alabama.

60. Oil, Gas and Mineral Lease dated February 28, 2006, by and between Nell Blair, as Lessor, and John C. Albury, as Lessee, recorded in Book 409, Page 825 of the Probate Judge Records of Escambia County, Alabama.

61. Oil, Gas and Mineral Lease dated May 22, 2006, by and between Jean Ray and Glen Ray, Successor Co-Trustees of the Edna B. Gunter Revocable Trust dated June 2, 1992, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2503 of the Probate Judge Records of Conecuh County, Alabama.

62. Oil, Gas and Mineral Lease dated July 14, 2006, by and between Cedar Creek Land & Timber, Inc., as Lessor, and John C. Albury, as Lessee, the existence of which is set forth by that Memorandum of Oil and Gas Lease recorded in Book 2006, Page 2511 of the Probate Judge Records of Conecuh County, Alabama and also recorded in Book 405, Page 835 of the Probate Judge Records of Escambia County, Alabama.

63. Oil, Gas and Mineral Lease dated July 28, 2006, by and between J. Randle Feagin, a/k/a, John Randle Feagin, as Lessor, and John C. Albury, as Lessee, recorded in Book _____, Page _____ of the Probate Judge Records of Conecuh County, Alabama and also recorded in Book _____, Page _____ of the Probate Judge Records of Escambia County, Alabama.

64. Oil, Gas and Mineral Lease dated July 28, 2006, by and between Nancy Feagin, as Lessor, and John C. Albury, as Lessee, recorded in Book _____, Page _____ of the Probate Judge Records of Conecuh County, Alabama and also recorded in Book _____, Page _____ of the Probate Judge Records of Escambia County, Alabama.

## ACKNOWLEDGMENTS

STATE OF LOUISIANA

PARISH OF CADDO

On this _____ day of _____, 2006, before me appeared David A. Barlow, to me known, who being by me duly sworn, did say that he is the Chief Operating Officer for SKLARCO L.L.C., a Louisiana limited liability company, and that the foregoing instrument was signed by him on behalf of said company, and said Appearer acknowledged said instrument to be the free act and deed of said company.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public in and for the Parish of Caddo
State of Louisiana

STATE OF TEXAS

COUNTY OF _____

On this _____ day of _____, 2006, before me appeared Ricky Haikin, to me known, who being by me duly sworn, did say that he is the Vice President of MCCOMBS ENERGY, LTD., a Texas limited partnership, and that the foregoing instrument was signed by him on behalf of said limited partnership, and said Appearer acknowledged said instrument to be the free act and deed of said limited partnership.

IN WITNESS WHEREOF, I hereunto set my hand and official seal

_____
Notary Public in and for the State of Texas

STATE OF LOUISIANA

PARISH OF CADDO

On this _____ day of _____, 2006, before me appeared Michael E. Riddick, to me known, who being by me duly sworn, did say that he is the Executive Vice President of WAC INVESTMENT COMPANY, LLC, a Louisiana limited liability company, and that the foregoing instrument was signed by him on behalf of said company, and said Appearer acknowledged said instrument to be the free act and deed of said company.

IN WITNESS WHEREOF, I hereunto set my hand and official seal

_____
Notary Public in and for the Parish of Caddo
State of Louisiana

STATE OF TEXAS

COUNTY OF _____

On this ____ day of _____, 2006, before me appeared W. R. (Trey) Sibley, III, to me known, who being by me duly sworn, did say that he is the Attorney in Fact of THE RUDMAN PARTNERSHIP, a Texas general partnership, and that the foregoing instrument was signed by him on behalf of said partnership, and said Appearer acknowledged said instrument to be the free act and deed of said partnership.

IN WITNESS WHEREOF, I hereunto set my hand and official seal

_____
Notary Public in and for the State of Texas

STATE OF TEXAS

COUNTY OF _____

On this ____ day of _____, 2006, before me appeared Michael K. Pickens, to me known, who being by me duly sworn, did say that he is the Vice President of PICKENS FINANCIAL GROUP, LLC, a Texas limited liability company, and that the foregoing instrument was signed by him on behalf of said company, and said Appearer acknowledged said instrument to be the free act and deed of said company.

IN WITNESS WHEREOF, I hereunto set my hand and official seal

_____
Notary Public in and for the State of Texas

# EXHIBIT "C"

Attached to and made a part of that certain Participation Agreement
dated effective as of November 1, 2006, by and between
Sklar Exploration Company L.L.C., Sklarco L.L.C., McCombs Energy, Ltd.,
WAC Investment Company, LLC, The Rudman Partnership and Pickens Financial Group, LLC

## AFE

AFE,12/13/2006,4:04 PM

## SKLAR Exploration Company L.L.C.
401 Edwards St. Suite 1601
Shreveport, LA 71101
(318) 227-8668

### AUTHORITY FOR EXPENDITURE

| DATE: | July 21, 2006 | FIELD: | Wildcat |
|---|---|---|---|
| OPERATOR: | Sklar Exploration Company LLC | STATE: | Alabama |
| WELL: | SE/4 of Section 5, T3N, R13E | HORIZON: | Smackover |
| LOCATION: | Escambia County | PROJ. T.D.: | 12000' |

PROPOSAL: AFE to drill & complete Smackover well in Escambia County Alabama. Assumes flowing oil well. No money for artificial lift or natural gas sales. Rig dayrate is estimated to be $21,000/D. Date last revised:

| CODE or SUB | CLASSIFICATION | DRY HOLE | COMPLETION | TOTAL |
|---|---|---|---|---|
| **9100** | **LEASEHOLD COSTS** | | | |
| 81 | LEGAL FEES, TITLE OPINIONS, CURATIVE | 7,500 | | 7,500 |
| 82 | LEASE BONUS | | | |
| 84 | LEASE EXTENSION | | | |
| 88 | DELAY RENTALS | | | |
| 89 | BROKERAGE | | | |
| 90 | LANDMAN COSTS | 2,500 | | 2,500 |
| 91 | RECORDING FEES | | | |
| | TOTAL LEASEHOLD COSTS | $10,000 | $0 | $10,000 |
| | | | | |
| **9200/9300** | **INTANGIBLE DRILLING & COMPLETION** | | | |
| 01 | SURVEY, DOC HEARINGS, PERMITS | 6,000 | | 6,000 |
| 02 | LOCATION PREPARATION/DIRT WORK | 125,000 | 15,000 | 140,000 |
| 03 | LOCATION CLEAN UP & PIT CLOSURE | 25,000 | | 25,000 |
| 04 | SURFACE DAMAGES & ROW | 5,000 | | 5,000 |
| 05 | DRIVING DRIVE PIPE | 10,000 | | 10,000 |
| 06 | RIG MOBILIZE/DEMOBILIZE | 150,000 | | 150,000 |
| 07 | DRILLING - FOOTAGE | | | |
| 08 | DRILLING - TURNKEY | | | |
| 10 | DAYWORK WITH DRILL PIPE (19 days @ $21,000/D) | 399,000 | 42,000 | 441,000 |
| 11 | DAYWORK WITHOUT DRILL PIPE | | | |
| 12 | DAYWORK - RIG EQUIPMENT & REPAIR | 5,000 | | 5,000 |
| 13 | ENGINEERING & SUPERVISION | 40,000 | 12,000 | 52,000 |
| 14 | RIG INSTRUMENTATION & MONITORING | 10,000 | | 10,000 |
| 15 | COIL TUBING UNIT | | | |
| 16 | DIRECTIONAL DRILLING TOOLS & SVCS | 0 | | |
| 17 | MUD & CHEMICALS | 35,000 | | 35,000 |
| 18 | MUD DISPOSAL | | | |
| 23 | MUD LOGGING | 12,000 | | 12,000 |
| 24 | CEMENTING & EQUIPMENT | 27,000 | 25,000 | 52,000 |
| 25 | CASING CREW & LAYDOWN MACHINE | 7,500 | 12,000 | 19,500 |
| 26 | PIPE TESTING | | 2,000 | 2,000 |
| 27 | EQUIPMENT RENTALS | 35,000 | 2,665 | 37,665 |
| 28 | FISHING TOOLS & SVCS | | | |
| 29 | TELEPHONE & COMMUNICATIONS | 1,000 | 500 | 1,500 |
| 30 | WATER | 5,000 | | 5,000 |
| 31 | FUEL | 90,000 | 8,000 | 98,000 |
| 32 | BITS | 25,000 | 1,000 | 26,000 |
| 33 | TRANSPORTATION & TRUCKING | 10,000 | 15,000 | 25,000 |
| 34 | CONTRACT LABOR | 10,000 | 25,000 | 35,000 |
| 35 | SAFETY & H2S TRAINING | 10,000 | | 10,000 |
| 36 | LOGGING & WIRELINE | 75,000 | 20,000 | 95,000 |
| 37 | DRILL STEM & PRODUCTION TESTING | | | |
| 38 | CORING & ANALYSIS | 20,000 | | 20,000 |
| 39 | GEOLOGICAL | | | |
| 40 | GEOPHYSICAL | | | |
| 46 | WORKOVER RIG | | 20,000 | 20,000 |
| 47 | PERFORATION SERVICES | | 15,000 | 15,000 |
| 48 | COMPLETION FLUIDS | | 5,000 | 5,000 |
| 49 | STIMULATION SERVICES | | | |
| 50 | INSTALLATION OF WELL EQUIPMENT | | | |
| 51 | PIPELINE EXPENSES & ROW | | | |
| 58 | AUTO EXPENSE | 1,000 | 500 | 1,500 |
| 61 | SALT WATER DISPOSAL | | 1,000 | 1,000 |
| 63 | HOT OIL SERVICE | | | |
| 64 | SWABBING UNIT | | 2,000 | 2,000 |
| 65 | PLUG & ABANDON COSTS | 15,000 | -15,000 | |
| 78 | INSURANCE | 40,000 | | 40,000 |
| 79 | COPAS OVERHEAD - DRILLING/COMPLETION | 9,800 | | 9,800 |
| 82 | MISCELLANEOUS: 10% contingency | 60,000 | 10,000 | 70,000 |
| | TOTAL INTANGIBLE DRILLING & COMPLETION | $1,263,000 | $217,000 | $1,480,000 |
| | | | | |
| **9500** | **TANGIBLE EQUIPMENT - DRILLING** | | | |
| 02 | SURFACE CASING (2,400' of 9-5/8") | 70,000 | | 70,000 |
| 03 | INTERMEDIATE CASING & LINERS | | | |
| 04 | FLOAT EQUIPMENT, HANGERS & RELATED | 5,000 | | 5,000 |
| 05 | WELLHEAD EQUIPMENT | 1,500 | | 1,500 |
| 06 | DRIVE PIPE | 5,000 | | 5,000 |
| | TOTAL TANGIBLE EQUIPMENT - DRILLING | $82,000 | $0 | $82,000 |
| | | | | |
| **9520** | **TANGIBLE EQUIPMENT - COMPLETION** | | | |
| 21 | PRODUCTION CASING & LINERS (5-1/2" 17# & 20# L-80) | | 205,000 | 205,000 |
| 22 | TUBING (2-7/8" 6.50# L-80) | | 78,000 | 78,000 |
| 23 | PACKERS | | 10,000 | 10,000 |
| 24 | FLOAT EQUIPMENT, HANGERS & RELATED | | 5,000 | 5,000 |
| 25 | WELLHEAD EQUIPMENT | | 21,000 | 21,000 |
| 26 | RODS, DOWNHOLE PUMPS & RELATED | | | |
| 27 | ARTIFICIAL LIFT EQUIPMENT | | | |
| | TOTAL TANGIBLE EQUIPMENT - COMPLETION | $0 | $319,000 | $319,000 |
| | | | | |
| **9535** | **SURFACE PRODUCTION EQUIPMENT** | | | |
| 38 | SURFACE ARTIFICIAL LIFT EQUIPMENT | | | |
| 41 | SURFACE PRODUCTION EQUIPMENT | | 40,000 | 40,000 |
| 42 | COMPRESSION | | | |
| 43 | TANK BATTERY COSTS | | 25,000 | 25,000 |
| 44 | FLOWLINES, FITTINGS, CONNECTIONS | | 10,000 | 10,000 |
| 45 | PIPELINE & GATHERING SYSTEM COSTS | | | |
| 46 | SALES METERING EQUIPMENT | | 20,000 | 20,000 |
| | TOTAL SURFACE PRODUCTION EQUIPMENT | $0 | $95,000 | $95,000 |
| | | | | |
| | TOTAL EQUIPMENT | $82,000 | $414,000 | $496,000 |
| | | | | |
| | TOTAL WELL COST | $1,355,000 | $631,000 | $1,986,000 |

APPROVED  Dec. 14  2006

BY  David T. Taylor / VP-COO of SKLARCO LLC

EXHIBIT "C"

Attached to and made a part of that certain Participation Agreement
dated effective as of November 1, 2006, by and between
Sklar Exploration Company L.L.C., Sklarco L.L.C., McCombs Energy, Ltd.,
WAC Investment Company, LLC, The Rudman Partnership and Pickens Financial Group, LLC

AFE

AFE,12/13/2006,4.04 PM

## SKLAR Exploration Company L.L.C.

401 Edwards St. Suite 1601
Shreveport, LA 71101
(318) 227-8888

### AUTHORITY FOR EXPENDITURE

| DATE: | July 21, 2006 | FIELD: | Wildcat |
| OPERATOR: | Sklar Exploration Company LLC | STATE: | Alabama |
| WELL: | SE/4 of Section 5, T3N, R13E | HORIZON: | Smackover |
| LOCATION: | Escambia County | PROJ. T.D.: | 12000' |

PROPOSAL: AFE to drill & complete Smackover well in Escambia County Alabama. Assumes flowing oil well. No money for artificial lift or natural gas sales.
Rig dayrate is estimated to be $21,000/D.  Date last revised:

| CODE or SUB | CLASSIFICATION | DRY HOLE | COMPLETION | TOTAL |
|---|---|---|---|---|
| 9100 | LEASEHOLD COSTS | | | |
| 81 | LEGAL FEES, TITLE OPINIONS, CURATIVE | 7,500 | | 7,500 |
| 86 | LEASE BONUS | | | |
| 84 | LEASE EXTENSION | | | |
| 88 | DELAY RENTALS | | | |
| 89 | BROKERAGE | | | |
| 90 | LANDMAN COSTS | 2,500 | | 2,500 |
| 91 | RECORDING FEES | | | |
| | TOTAL LEASEHOLD COSTS | $10,000 | $0 | $10,000 |
| | | | | |
| 9200/9300 | INTANGIBLE DRILLING & COMPLETION | | | |
| 01 | SURVEY, DOC HEARINGS, PERMITS | 6,000 | | 6,000 |
| 02 | LOCATION PREPARATION/DIRT WORK | 125,000 | 15,000 | 140,000 |
| 03 | LOCATION CLEAN UP & PIT CLOSURE | 25,000 | | 25,000 |
| 04 | SURFACE DAMAGES & ROW | 5,000 | | 5,000 |
| 05 | DRIVING DRIVE PIPE | 10,000 | | 10,000 |
| 06 | RIG MOBILIZE/DEMOBILIZE | 150,000 | | 150,000 |
| 07 | DRILLING - FOOTAGE | | | |
| 08 | DRILLING - TURNKEY | | | |
| 10 | DAYWORK WITH DRILL PIPE (19 days @ $21,000/D) | 399,000 | 42,000 | 441,000 |
| 11 | DAYWORK WITHOUT DRILL PIPE | | | |
| 12 | DAYWORK - RIG EQUIPMENT & REPAIR | 5,000 | | 5,000 |
| 13 | ENGINEERING & SUPERVISION | 40,000 | 12,000 | 52,000 |
| 14 | RIG INSTRUMENTATION & MONITORING | 10,000 | | 10,000 |
| 15 | COIL TUBING UNIT | | | |
| 16 | DIRECTIONAL DRILLING TOOLS & SVCS | 0 | | |
| 17 | MUD & CHEMICALS | 35,000 | | 35,000 |
| 18 | MUD DISPOSAL | | | |
| 23 | MUD LOGGING | 12,000 | | 12,000 |
| 24 | CEMENTING & EQUIPMENT | 27,000 | 25,000 | 52,000 |
| 25 | CASING CREW & LAYDOWN MACHINE | 7,500 | 12,000 | 19,500 |
| 26 | PIPE TESTING | | 2,000 | 2,000 |
| 27 | EQUIPMENT RENTALS | 35,000 | 2,865 | 37,865 |
| 28 | FISHING TOOLS & SVCS | | | |
| 29 | TELEPHONE & COMMUNICATIONS | 1,000 | 500 | 1,500 |
| 30 | WATER | 5,000 | | 5,000 |
| 31 | FUEL | 90,000 | 6,000 | 96,000 |
| 32 | BITS | 25,000 | 1,000 | 26,000 |
| 33 | TRANSPORTATION & TRUCKING | 10,000 | 15,000 | 25,000 |
| 34 | CONTRACT LABOR | 10,000 | 25,000 | 35,000 |
| 35 | SAFETY & H2S TRAINING | 10,000 | | 10,000 |
| 36 | LOGGING & WIRELINE | 75,000 | 20,000 | 95,000 |
| 37 | DRILL S'EM & PRODUCTION TESTING | | | |
| 38 | CORING & ANALYSIS | 20,000 | | 20,000 |
| 39 | GEOLOGICAL | | | |
| 40 | GEOPHYSICAL | | | |
| 46 | WORKOVER RIG | | 20,000 | 20,000 |
| 47 | PERFORATION SERVICES | | 15,000 | 15,000 |
| 48 | COMPLETION FLUIDS | | 5,000 | 5,000 |
| 49 | STIMULATION SERVICES | | | |
| 50 | INSTALLATION OF WELL EQUIPMENT | | | |
| 51 | PIPELINE EXPENSES & ROW | | | |
| 58 | AUTO EXPENSE | 1,000 | 500 | 1,500 |
| 61 | SALT WATER DISPOSAL | | 1,000 | 1,000 |
| 63 | HOT OIL SERVICE | | | |
| 64 | SWABBING UNIT | | 2,000 | 2,000 |
| 65 | PLUG & ABANDON COSTS | 15,000 | -15,000 | |
| 78 | INSURANCE | 40,000 | | 40,000 |
| 79 | COPAS OVERHEAD - DRILLING/COMPLETION | 9,800 | | 9,800 |
| 82 | MISCELLANEOUS: 5% contingency | 50,000 | 10,000 | 70,000 |
| | TOTAL INTANGIBLE DRILLING & COMPLETION | $1,253,000 | $217,000 | $1,460,000 |
| | | | | |
| 9500 | TANGIBLE EQUIPMENT - DRILLING | | | |
| 02 | SURFACE CASING (2,400' of 9-5/8") | 70,000 | | 70,000 |
| 03 | INTERMEDIATE CASING & LINERS | | | |
| 04 | FLOAT EQUIPMENT, HANGERS & RELATED | 5,000 | | 5,000 |
| 05 | WELLHEAD EQUIPMENT | 1,500 | | 1,500 |
| 06 | DRIVE PIPE | 5,000 | | 5,000 |
| | TOTAL TANGIBLE EQUIPMENT - DRILLING | $82,000 | $0 | $82,000 |
| | | | | |
| 9520 | TANGIBLE EQUIPMENT - COMPLETION | | | |
| 21 | PRODUCTION CASING & LINERS (5-1/2" 17# & 20# L-80) | | 205,000 | 205,000 |
| 22 | TUBING (2-7/8" 6.50# L-80) | | 78,000 | 78,000 |
| 23 | PACKERS | | 10,000 | 10,000 |
| 24 | FLOAT EQUIPMENT, HANGERS & RELATED | | 5,000 | 5,000 |
| 25 | WELLHEAD EQUIPMENT | | 21,000 | 21,000 |
| 26 | RODS, DOWNHOLE PUMPS & RELATED | | | |
| 27 | ARTIFICIAL LIFT EQUIPMENT | | | |
| | TOTAL TANGIBLE EQUIPMENT - COMPLETION | $0 | $319,000 | $319,000 |
| | | | | |
| 9535 | SURFACE PRODUCTION EQUIPMENT | | | |
| 38 | SURFACE ARTIFICIAL LIFT EQUIPMENT | | | |
| 41 | SURFACE PRODUCTION EQUIPMENT | | 40,000 | 40,000 |
| 42 | COMPRESSION | | | |
| 43 | TANK BATTERY COSTS | | 25,000 | 25,000 |
| 44 | FLOWLINES, FITTINGS, CONNECTIONS | | 10,000 | 10,000 |
| 45 | PIPELINE & GATHERING SYSTEM COSTS | | | |
| 46 | SALES METERING EQUIPMENT | | 20,000 | 20,000 |
| | TOTAL SURFACE PRODUCTION EQUIPMENT | $0 | $95,000 | $95,000 |
| | | | | |
| | TOTAL EQUIPMENT | $82,000 | $414,000 | $496,000 |
| | | | | |
| | TOTAL WELL COST | $1,355,000 | $631,000 | $1,966,000 |

APPROVED: 12/19/06 , 2006
BY

# EXHIBIT "C"

Attached to and made a part of that certain Participation Agreement
dated effective as of November 1, 2006, by and between
Sklar Exploration Company L.L.C., Sklarco L.L.C., McCombs Energy, Ltd.,
WAC Investment Company, LLC, The Rudman Partnership and Pickens Financial Group, LLC

## AFE

AFE,12/13/2006 4 04 PM

### SKLAR Exploration Company L.L.C.
401 Edwards St. Suite 1601
Shreveport, LA 71101
(318) 227-6868

**AUTHORITY FOR EXPENDITURE**

| | | | | |
|---|---|---|---|---|
| DATE: | July 21, 2006 | | FIELD: | Wildcat |
| OPERATOR: | Sklar Exploration Company LLC | | STATE: | Alabama |
| WELL: | SE¼ of Section 5, T3N, R13E | | HORIZON: | Smackover |
| LOCATION: | Escambia County | | PROJ. T.D.: | 12000' |

PROPOSAL: AFE to drill & complete Smackover well in Escambia County Alabama. Assumes flowing oil well. No
money for artificial lift or natural gas sales.
Rig dayrate is estimated to be $21,000/D          Date last revised:

| CODE or SUB | CLASSIFICATION: | DRY HOLE | COMPLETION | TOTAL |
|---|---|---|---|---|
| **9100** | **LEASEHOLD COSTS** | | | |
| 81 | LEGAL FEES, TITLE OPINIONS, CURATIVE | 7,500 | | 7,500 |
| 88 | LEASE BONUS | | | |
| 84 | LEASE EXTENSION | | | |
| 89 | DELAY RENTALS | | | |
| 89 | BROKERAGE | | | |
| 90 | LANDMAN COSTS | 2,500 | | 2,500 |
| 91 | RECORDING FEES | | | |
| | **TOTAL LEASEHOLD COSTS** | $10,000 | $0 | $10,000 |
| | | | | |
| **9200/9300** | **INTANGIBLE DRILLING & COMPLETION** | | | |
| 01 | SURVEY, DOC HEARINGS, PERMITS | 6,000 | | 6,000 |
| 02 | LOCATION PREPARATION/DIRT WORK | 125,000 | 15,000 | 140,000 |
| 03 | LOCATION CLEAN UP & PIT CLOSURE | 25,000 | | 25,000 |
| 04 | SURFACE DAMAGES & ROW | 5,000 | | 5,000 |
| 05 | DRIVING DRIVE PIPE | 10,000 | | 10,000 |
| 06 | RIG MOBILIZE/DEMOBILIZE | 150,000 | | 150,000 |
| 07 | DRILLING - FOOTAGE | | | |
| 08 | DRILLING - TURNKEY | | | |
| 10 | DAYWORK WITH DRILL PIPE (19 days @ $21,000/D) | 399,000 | 42,000 | 441,000 |
| 11 | DAYWORK WITHOUT DRILL PIPE | | | |
| 12 | DAYWORK - RIG EQUIPMENT & REPAIR | 5,000 | | 5,000 |
| 13 | ENGINEERING & SUPERVISION: | 40,000 | 12,000 | 52,000 |
| 14 | RIG INSTRUMENTATION & MONITORING | 10,000 | | 10,000 |
| 15 | COIL TUBING UNIT | | | |
| 16 | DIRECTIONAL DRILLING TOOLS & SVCS | 0 | | |
| 17 | MUD & CHEMICALS | 35,000 | | 35,000 |
| 18 | MUD DISPOSAL | | | |
| 23 | MUD LOGGING | 12,000 | | 12,000 |
| 24 | CEMENTING & EQUIPMENT | 27,000 | 25,000 | 52,000 |
| 25 | CASING CREW & LAYDOWN MACHINE | 7,500 | 12,000 | 19,500 |
| 26 | PIPE TESTING | | 2,000 | 2,000 |
| 27 | EQUIPMENT RENTALS | 35,000 | 2,665 | 37,665 |
| 28 | FISHING TOOLS & SVCS | | | |
| 29 | TELEPHONE & COMMUNICATIONS | 1,000 | 500 | 1,500 |
| 30 | WATER | 5,000 | | 5,000 |
| 31 | FUEL | 90,000 | 6,000 | 96,000 |
| 32 | BITS | 25,000 | 1,000 | 26,000 |
| 33 | TRANSPORTATION & TRUCKING | 10,000 | 15,000 | 25,000 |
| 34 | CONTRACT LABOR | 10,000 | 25,000 | 35,000 |
| 35 | SAFETY & H2S TRAINING | 10,000 | | 10,000 |
| 36 | LOGGING & WIRELINE | 75,000 | 20,000 | 95,000 |
| 37 | DRILL STEM & PRODUCTION TESTING | | | |
| 38 | CORING & ANALYSIS | 20,000 | | 20,000 |
| 39 | GEOLOGICAL | | | |
| 40 | GEOPHYSICAL | | | |
| 46 | WORKOVER RIG | | 20,000 | 20,000 |
| 47 | PERFORATION SERVICES | | 15,000 | 15,000 |
| 48 | COMPLETION FLUIDS | | 5,000 | 5,000 |
| 49 | STIMULATION SERVICES | | | |
| 50 | INSTALLATION OF WELL EQUIPMENT | | | |
| 51 | PIPELINE EXPENSES & ROW | | | |
| 58 | AUTO EXPENSE | 1,000 | 500 | 1,500 |
| 61 | SALT WATER DISPOSAL | | 1,000 | 1,000 |
| 63 | HOT OIL SERVICE | | | |
| 64 | SWABBING UNIT | | 2,000 | 2,000 |
| 65 | PLUG & ABANDON COSTS | 15,000 | -15,000 | |
| 78 | INSURANCE | 40,000 | | 40,000 |
| 79 | COPAS OVERHEAD - DRILLING/COMPLETION | 9,800 | | 9,800 |
| 82 | MISCELLANEOUS: 5% contingency | 60,000 | 10,000 | 70,000 |
| | **TOTAL INTANGIBLE DRILLING & COMPLETION** | $1,263,000 | $217,000 | $1,480,000 |
| | | | | |
| **9500** | **TANGIBLE EQUIPMENT - DRILLING** | | | |
| 02 | SURFACE CASING (2,400' of 9-5/8") | 70,000 | | 70,000 |
| 03 | INTERMEDIATE CASING & LINERS | | | |
| 04 | FLOAT EQUIPMENT, HANGERS & RELATED | 5,000 | | 5,000 |
| 05 | WELLHEAD EQUIPMENT | 1,500 | | 1,500 |
| 06 | DRIVE PIPE | 5,000 | | 5,000 |
| | **TOTAL TANGIBLE EQUIPMENT - DRILLING** | $82,000 | $0 | $82,000 |
| | | | | |
| **9520** | **TANGIBLE EQUIPMENT - COMPLETION** | | | |
| 21 | PRODUCTION CASING & LINERS (5-1/2" 17# & 20# L-80) | | 205,000 | 205,000 |
| 22 | TUBING (2-7/8" 6.50# L-80) | | 78,000 | 78,000 |
| 23 | PACKERS | | 10,000 | 10,000 |
| 24 | FLOAT EQUIPMENT, HANGERS & RELATED | | 5,000 | 5,000 |
| 25 | WELLHEAD EQUIPMENT | | 21,000 | 21,000 |
| 26 | RODS, DOWNHOLE PUMPS & RELATED | | | |
| 27 | ARTIFICIAL LIFT EQUIPMENT | | | |
| | **TOTAL TANGIBLE EQUIPMENT - COMPLETION** | $0 | $319,000 | $319,000 |
| | | | | |
| **9535** | **SURFACE PRODUCTION EQUIPMENT** | | | |
| 38 | SURFACE ARTIFICIAL LIFT EQUIPMENT | | | |
| 41 | SURFACE PRODUCTION EQUIPMENT | | 40,000 | 40,000 |
| 42 | COMPRESSION | | | |
| 43 | TANK BATTERY COSTS | | 25,000 | 25,000 |
| 44 | FLOWLINES, FITTINGS, CONNECTIONS | | 10,000 | 10,000 |
| 45 | PIPELINE & GATHERING SYSTEM COSTS | | | |
| 46 | SALES METERING EQUIPMENT | | 20,000 | 20,000 |
| | **TOTAL SURFACE PRODUCTION EQUIPMENT** | $0 | $95,000 | $95,000 |
| | | | | |
| | **TOTAL EQUIPMENT** | $82,000 | $414,000 | $496,000 |
| | | | | |
| | **TOTAL WELL COST** | $1,355,000 | $631,000 | $1,986,000 |

APPROVED:  December 15  , 2006

BY: _Michael E. Goddard_

# EXHIBIT "C"

Attached to and made a part of that certain Participation Agreement
dated effective as of November 1, 2006, by and between
Sklar Exploration Company L.L.C., Sklarco L.L.C., McCombs Energy, Ltd.,
WAC Investment Company, LLC, The Rudman Partnership and Pickens Financial Group, LLC

## AFE

AFE.12/13/2006,4.04 PM

## SKLAR Exploration Company L.L.C.
401 Edwards St. Suite 1601
Shreveport, LA 71101
(318) 227-8866

### AUTHORITY FOR EXPENDITURE

| | | | |
|---|---|---|---|
| DATE: | July 21, 2006 | FIELD: | Wildcat |
| OPERATOR: | Sklar Exploration Company LLC | STATE: | Alabama |
| WELL: | SE/4 of Section 5, T3N, R13E | HORIZON: | Smackover |
| LOCATION: | Escambia County | PROJ. T.D.: | 12000' |

PROPOSAL: AFE to drill & complete Smackover well in Escambia County Alabama. Assumes flowing oil well. No money for artificial lift or natural gas sales.
Rig dayrate is estimated to be $21,000/D      Date last revised:

| CODE of SUB | CLASSIFICATION: | DRY HOLE | COMPLETION | TOTAL |
|---|---|---|---|---|
| **9100** | **LEASEHOLD COSTS** | | | |
| 81 | LEGAL FEES, TITLE OPINIONS, CURATIVE | 7,500 | | 7,500 |
| 86 | LEASE BONUS | | | |
| 84 | LEASE EXTENSION | | | |
| 88 | DELAY RENTALS | | | |
| 89 | BROKERAGE | | | |
| 90 | LANDMAN COSTS | 2,500 | | 2,500 |
| 91 | RECORDING FEES | | | |
| | **TOTAL LEASEHOLD COSTS** | $10,000 | $0 | $10,000 |
| | | | | |
| **9200/9300** | **INTANGIBLE DRILLING & COMPLETION** | | | |
| 01 | SURVEY, DOC HEARINGS, PERMITS | 6,000 | | 6,000 |
| 02 | LOCATION PREPARATION/DIRT WORK | 125,000 | 15,000 | 140,000 |
| 03 | LOCATION CLEAN UP & PIT CLOSURE | 25,000 | | 25,000 |
| 04 | SURFACE DAMAGES & ROW | 5,000 | | 5,000 |
| 05 | DRIVING DRIVE PIPE | 10,000 | | 10,000 |
| 06 | RIG MOBILIZE/DEMOBILIZE | 150,000 | | 150,000 |
| 07 | DRILLING - FOOTAGE | | | |
| 08 | DRILLING - TURNKEY | | | |
| 10 | DAYWORK WITH DRILL PIPE (19 days @ $21,000/D) | 399,000 | 42,000 | 441,000 |
| 11 | DAYWORK WITHOUT DRILL PIPE | | | |
| 12 | DAYWORK - RIG EQUIPMENT & REPAIR | 5,000 | | 5,000 |
| 13 | ENGINEERING & SUPERVISION | 40,000 | 12,000 | 52,000 |
| 14 | RIG INSTRUMENTATION & MONITORING | 10,000 | | 10,000 |
| 15 | COIL TUBING UNIT | | | |
| 16 | DIRECTIONAL DRILLING TOOLS & SVCS. | 0 | | |
| 17 | MUD & CHEMICALS | 35,000 | | 35,000 |
| 18 | MUD DISPOSAL | | | |
| 23 | MUD LOGGING | 12,000 | | 12,000 |
| 24 | CEMENTING & EQUIPMENT | 27,000 | 25,000 | 52,000 |
| 25 | CASING CREW & LAYDOWN MACHINE | 7,500 | 12,000 | 19,500 |
| 26 | PIPE TESTING | | 2,000 | 2,000 |
| 27 | EQUIPMENT RENTALS | 35,000 | 2,865 | 37,865 |
| 28 | FISHING TOOLS & SVCS | | | |
| 29 | TELEPHONE & COMMUNICATIONS | 1,000 | 500 | 1,500 |
| 30 | WATER | 5,000 | | 5,000 |
| 31 | FUEL | 90,000 | 6,000 | 96,000 |
| 32 | BITS | 25,000 | 1,000 | 26,000 |
| 33 | TRANSPORTATION & TRUCKING | 10,000 | 15,000 | 25,000 |
| 34 | CONTRACT LABOR | 10,000 | 25,000 | 35,000 |
| 35 | SAFETY & H2S TRAINING | 10,000 | | 10,000 |
| 36 | LOGGING & WIRELINE | 75,000 | 20,000 | 95,000 |
| 37 | DRILL STEM & PRODUCTION TESTING | | | |
| 38 | CORING & ANALYSIS | 20,000 | | 20,000 |
| 39 | GEOLOGICAL | | | |
| 40 | GEOPHYSICAL | | | |
| 46 | WORKOVER RIG | | 20,000 | 20,000 |
| 47 | PERFORATION SERVICES | | 15,000 | 15,000 |
| 48 | COMPLETION FLUIDS | | 5,000 | 5,000 |
| 49 | STIMULATION SERVICES | | | |
| 50 | INSTALLATION OF WELL EQUIPMENT | | | |
| 51 | PIPELINE EXPENSES & ROW | | | |
| 58 | AUTO EXPENSE | 1,000 | 500 | 1,500 |
| 61 | SALT WATER DISPOSAL | | 1,000 | 1,000 |
| 63 | HOT OIL SERVICE | | | |
| 64 | SWABBING UNIT | | 2,000 | 2,000 |
| 65 | PLUG & ABANDON COSTS | 15,000 | -15,000 | |
| 78 | INSURANCE | 40,000 | | 40,000 |
| 79 | COPAS OVERHEAD - DRILLING/COMPLETION | 9,800 | | 9,800 |
| 82 | MISCELLANEOUS: 5% contingency | 60,000 | 10,000 | 70,000 |
| | **TOTAL INTANGIBLE DRILLING & COMPLETION** | $1,263,000 | $217,000 | $1,480,000 |
| | | | | |
| **9500** | **TANGIBLE EQUIPMENT - DRILLING** | | | |
| 02 | SURFACE CASING (2.400' of 9-5/8") | 70,000 | | 70,000 |
| 03 | INTERMEDIATE CASING & LINERS | | | |
| 04 | FLOAT EQUIPMENT, HANGERS & RELATED | 5,000 | | 5,000 |
| 05 | WELLHEAD EQUIPMENT | 1,500 | | 1,500 |
| 06 | DRIVE PIPE | 5,000 | | 5,000 |
| | **TOTAL TANGIBLE EQUIPMENT - DRILLING** | $82,000 | $0 | $82,000 |
| | | | | |
| **9520** | **TANGIBLE EQUIPMENT - COMPLETION** | | | |
| 21 | PRODUCTION CASING & LINERS (5-1/2" 17# & 20# L-80) | | 205,000 | 205,000 |
| 22 | TUBING (2-7/8" 6.50# L-80) | | 78,000 | 78,000 |
| 23 | PACKERS | | 10,000 | 10,000 |
| 24 | FLOAT EQUIPMENT, HANGERS & RELATED | | 5,000 | 5,000 |
| 25 | WELLHEAD EQUIPMENT | | 21,000 | 21,000 |
| 26 | RODS, DOWNHOLE PUMPS & RELATED | | | |
| 27 | ARTIFICIAL LIFT EQUIPMENT | | | |
| | **TOTAL TANGIBLE EQUIPMENT - COMPLETION** | $0 | $319,000 | $319,000 |
| | | | | |
| **9535** | **SURFACE PRODUCTION EQUIPMENT** | | | |
| 36 | SURFACE ARTIFICIAL LIFT EQUIPMENT | | | |
| 41 | SURFACE PRODUCTION EQUIPMENT | | 40,000 | 40,000 |
| 42 | COMPRESSION | | | |
| 43 | TANK BATTERY COSTS | | 25,000 | 25,000 |
| 44 | FLOWLINES, FITTINGS, CONNECTIONS | | 10,000 | 10,000 |
| 45 | PIPELINE & GATHERING SYSTEM COSTS | | | |
| 46 | SALES METERING EQUIPMENT | | 20,000 | 20,000 |
| | **TOTAL SURFACE PRODUCTION EQUIPMENT** | $0 | $95,000 | $95,000 |
| | | | | |
| | **TOTAL EQUIPMENT** | $82,000 | $414,000 | $496,000 |
| | | | | |
| | **TOTAL WELL COST** | $1,355,000 | $631,000 | $1,986,000 |

APPROVED: _____ 12/37 2006

BY: _____

AFE.xls,12/13/2006,2:52 PM

# SKLAR Exploration Company L.L.C.
401 Edwards St. Suite 1601
Shreveport, LA 71101
(318) 227-8668

| AUTHORITY FOR EXPENDITURE | | | |
|---|---|---|---|
| DATE: July 21, 2006 | | FIELD: Wildcat | |
| OPERATOR: Sklar Exploration Company LLC | | STATE: Alabama | |
| WELL: SE/4 of Section 5, T3N, R13E | | HORIZON: Smackover | |
| LOCATION: Escambia County | | PROJ. T.D.: 12000' | |

PROPOSAL: AFE to drill & complete Smackover well in Escambia County Alabama. Assumes flowing oil well. No money for artificial lift or natural gas sales.
Rig dayrate is estimated to be $21,000/D                 Date last revised:

| CODE or SUB | CLASSIFICATION: | DRY HOLE | COMPLETION | TOTAL |
|---|---|---|---|---|
| **9100** | **LEASEHOLD COSTS** | | | |
| 81 | LEGAL FEES, TITLE OPINIONS, CURATIVE | 7,500 | | 7,500 |
| 86 | LEASE BONUS | | | |
| 84 | LEASE EXTENSION | | | |
| 88 | DELAY RENTALS | | | |
| 89 | BROKERAGE | | | |
| 90 | LANDMAN COSTS | 2,500 | | 2,500 |
| 91 | RECORDING FEES | | | |
| | **TOTAL LEASEHOLD COSTS** | $10,000 | $0 | $10,000 |
| | | | | |
| **9200/9300** | **INTANGIBLE DRILLING & COMPLETION** | | | |
| 01 | SURVEY, DOC HEARINGS, PERMITS | 6,000 | | 6,000 |
| 02 | LOCATION PREPARATION/DIRT WORK | 125,000 | 15,000 | 140,000 |
| 03 | LOCATION CLEAN UP & PIT CLOSURE | 25,000 | | 25,000 |
| 04 | SURFACE DAMAGES & ROW | 5,000 | | 5,000 |
| 05 | DRIVING DRIVE PIPE | 10,000 | | 10,000 |
| 06 | RIG MOBILIZE/DEMOBILIZE | 150,000 | | 150,000 |
| 07 | DRILLING - FOOTAGE | | | |
| 08 | DRILLING - TURNKEY | | | |
| 10 | DAYWORK WITH DRILL PIPE (19 days @ $21,000/D) | 399,000 | 42,000 | 441,000 |
| 11 | DAYWORK WITHOUT DRILL PIPE | | | |
| 12 | DAYWORK - RIG EQUIPMENT & REPAIR | 5,000 | | 5,000 |
| 13 | ENGINEERING & SUPERVISION: | 40,000 | 12,000 | 52,000 |
| 14 | RIG INSTRUMENTATION & MONITORING | 10,000 | | 10,000 |
| 15 | COIL TUBING UNIT | | | |
| 16 | DIRECTIONAL DRILLING TOOLS & SVCS | 0 | | |
| 17 | MUD & CHEMICALS | 35,000 | | 35,000 |
| 18 | MUD DISPOSAL | | | |
| 23 | MUD LOGGING | 12,000 | | 12,000 |
| 24 | CEMENTING & EQUIPMENT | 27,000 | 25,000 | 52,000 |
| 25 | CASING CREW & LAYDOWN MACHINE | 7,500 | 12,000 | 19,500 |
| 26 | PIPE TESTING | | 2,000 | 2,000 |
| 27 | EQUIPMENT RENTALS | 35,000 | 2,865 | 37,865 |
| 28 | FISHING TOOLS & SVCS | | | |
| 29 | TELEPHONE & COMMUNICATIONS | 1,000 | 500 | 1,500 |
| 30 | WATER | 5,000 | | 5,000 |
| 31 | FUEL | 90,000 | 6,000 | 96,000 |
| 32 | BITS | 25,000 | 1,000 | 26,000 |
| 33 | TRANSPORTATION & TRUCKING | 10,000 | 15,000 | 25,000 |
| 34 | CONTRACT LABOR | 10,000 | 25,000 | 35,000 |
| 35 | SAFETY & H2S TRAINING | 10,000 | | 10,000 |
| 36 | LOGGING & WIRELINE | 75,000 | 20,000 | 95,000 |
| 37 | DRILL STEM & PRODUCTION TESTING | | | |
| 38 | CORING & ANALYSIS | 20,000 | | 20,000 |
| 39 | GEOLOGICAL | | | |
| 40 | GEOPHYSICAL | | | |
| 46 | WORKOVER RIG | | 20,000 | 20,000 |
| 47 | PERFORATION SERVICES | | 15,000 | 15,000 |
| 48 | COMPLETION FLUIDS | | 5,000 | 5,000 |
| 49 | STIMULATION SERVICES | | | |
| 50 | INSTALLATION OF WELL EQUIPMENT | | | |
| 51 | PIPELINE EXPENSES & ROW | | | |
| 58 | AUTO EXPENSE | 1,000 | 500 | 1,500 |
| 61 | SALT WATER DISPOSAL | | 1,000 | 1,000 |
| 63 | HOT OIL SERVICE | | | |
| 64 | SWABBING UNIT | | 2,000 | 2,000 |
| 65 | PLUG & ABANDON COSTS | 15,000 | -15,000 | |
| 78 | INSURANCE | 40,000 | | 40,000 |
| 79 | COPAS OVERHEAD - DRILLING/COMPLETION | 9,800 | | 9,800 |
| 82 | MISCELLANEOUS: ±5% contingency | 60,000 | 10,000 | 70,000 |
| | **TOTAL INTANGIBLE DRILLING & COMPLETION** | $1,263,000 | $217,000 | $1,480,000 |
| | | | | |
| **9500** | **TANGIBLE EQUIPMENT - DRILLING** | | | |
| 02 | SURFACE CASING (2,400' of 9-5/8") | 70,000 | | 70,000 |
| 03 | INTERMEDIATE CASING & LINERS | | | |
| 04 | FLOAT EQUIPMENT, HANGERS & RELATED | 5,000 | | 5,000 |
| 05 | WELLHEAD EQUIPMENT | 1,500 | | 1,500 |
| 06 | DRIVE PIPE | 5,000 | | 5,000 |
| | **TOTAL TANGIBLE EQUIPMENT - DRILLING** | $82,000 | $0 | $82,000 |
| | | | | |
| **9520** | **TANGIBLE EQUIPMENT - COMPLETION** | | | |
| 21 | PRODUCTION CASING & LINERS (5-1/2" 17# & 20# L-80) | | 205,000 | 205,000 |
| 22 | TUBING (2-7/8" 6.50# L-80) | | 78,000 | 78,000 |
| 23 | PACKERS | | 10,000 | 10,000 |
| 24 | FLOAT EQUIPMENT, HANGERS & RELATED | | 5,000 | 5,000 |
| 25 | WELLHEAD EQUIPMENT | | 21,000 | 21,000 |
| 26 | RODS, DOWNHOLE PUMPS & RELATED | | | |
| 27 | ARTIFICIAL LIFT EQUIPMENT | | | |
| | **TOTAL TANGIBLE EQUIPMENT - COMPLETION** | $0 | $319,000 | $319,000 |
| | | | | |
| **9535** | **SURFACE PRODUCTION EQUIPMENT** | | | |
| 36 | SURFACE ARTIFICIAL LIFT EQUIPMENT | | | |
| 41 | SURFACE PRODUCTION EQUIPMENT | | 40,000 | 40,000 |
| 42 | COMPRESSION | | | |
| 43 | TANK BATTERY COSTS | | 25,000 | 25,000 |
| 44 | FLOWLINES, FITTINGS, CONNECTIONS | | 10,000 | 10,000 |
| 45 | PIPELINE & GATHERING SYSTEM COSTS | | | |
| 46 | SALES METERING EQUIPMENT | | 20,000 | 20,000 |
| | **TOTAL SURFACE PRODUCTION EQUIPMENT** | $0 | $95,000 | $95,000 |
| | | | | |
| | **TOTAL EQUIPMENT** | $82,000 | $414,000 | $496,000 |
| | | | | |
| | **TOTAL WELL COST** | $1,355,000 | $631,000 | $1,986,000 |

THE RUDMAN PARTNERSHIP - 12.5% WI
APPROVED    12-7-06    , 2006

BY: _James C. Trimble_
James C. Trimble, Manger - Exploration & Production

**EXHIBIT "D"**

This Exhibit "D" is attached to and made a part of that Participation Agreement dated effective as of November 1, 2006 by and between Sklar Exploration Company L.L.C., Sklarco L.L.C., McCombs Energy, Ltd., WAC Investment Company, L.L.C., Pickens Financial Group, LLC, The Rudman Partnership, covering lands located in Conecuh and Escambia Counties, Alabama.

A.A.P.L. FORM 610-1982

# MODEL FORM OPERATING AGREEMENT

## ESCAMBIA PROSPECT

OPERATING AGREEMENT

DATED

November 1 , 2006 ,
_year_

OPERATOR   Sklar Exploration Company L.L.C.

CONTRACT AREA   As shown on Exhibit "A" to this Agreement.

COUNTY OR ~~PARISH~~ OF   Conecuh and Escambia        STATE OF    Alabama

COPYRIGHT 1982 – ALL RIGHTS RESERVED
AMERICAN ASSOCIATION OF PETROLEUM
LANDMEN, 4100 FOSSIL CREEK BLVD., FORT
WORTH, TEXAS, 76137-2791, APPROVED
FORM. A.A.P.L. NO. 610 – 1982 REVISED

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

## TABLE OF CONTENTS

| Article | Title | Page |
|---|---|---|
| I. | DEFINITIONS | 1 |
| II. | EXHIBITS | 1 |
| III. | INTERESTS OF PARTIES | 2 |
| | A. OIL AND GAS INTERESTS | 2 |
| | B. INTERESTS OF PARTIES IN COSTS AND PRODUCTION | 2 |
| | C. EXCESS ROYALTIES, OVERRIDING ROYALTIES AND OTHER PAYMENTS | 2 |
| | D. SUBSEQUENTLY CREATED INTERESTS | 2 |
| IV. | TITLES | 2 |
| | A. TITLE EXAMINATION | 2-3 |
| | B. LOSS OF TITLE | 3 |
| | 1. Failure of Title | 3 |
| | 2. Loss by Non-Payment or Erroneous Payment of Amount Due | 3 |
| | 3. All Other Losses | 3 |
| V. | OPERATOR | 4 |
| | A. DESIGNATION AND RESPONSIBILITIES OF OPERATOR | 4 |
| | B. RESIGNATION OR REMOVAL OF OPERATOR AND SELECTION OF SUCCESSOR | 4 |
| | 1. Resignation or Removal of Operator | 4 |
| | 2. Selection of Successor Operator | 4 |
| | C. EMPLOYEES | 4 |
| | D. DRILLING CONTRACTS | 4 |
| VI. | DRILLING AND DEVELOPMENT | 4 |
| | A. INITIAL WELL | 4-5 |
| | B. SUBSEQUENT OPERATIONS | 5 |
| | 1. Proposed Operations | 5 |
| | 2. Operations by Less than All Parties | 5-6-7 |
| | 3. Stand-By Time | 7 |
| | 4. Sidetracking | 7 |
| | C. TAKING PRODUCTION IN KIND | 7 |
| | D. ACCESS TO CONTRACT AREA AND INFORMATION | 8 |
| | E. ABANDONMENT OF WELLS | 8 |
| | 1. Abandonment of Dry Holes | 8 |
| | 2. Abandonment of Wells that have Produced | 8-9 |
| | 3. Abandonment of Non-Consent Operations | 9 |
| VII. | EXPENDITURES AND LIABILITY OF PARTIES | 9 |
| | A. LIABILITY OF PARTIES | 9 |
| | B. LIENS AND PAYMENT DEFAULTS | 9 |
| | C. PAYMENTS AND ACCOUNTING | 9 |
| | D. LIMITATION OF EXPENDITURES | 9-10 |
| | 1. Drill or Deepen | 9-10 |
| | 2. Rework or Plug Back | 10 |
| | 3. Other Operations | 10 |
| | E. RENTALS, SHUT-IN WELL PAYMENTS AND MINIMUM ROYALTIES | 10 |
| | F. TAXES | 10 |
| | G. INSURANCE | 11 |
| VIII. | ACQUISITION, MAINTENANCE OR TRANSFER OF INTEREST | 11 |
| | A. SURRENDER OF LEASES | 11 |
| | B. RENEWAL OR EXTENSION OF LEASES | 11 |
| | C. ACREAGE OR CASH CONTRIBUTIONS | 11-12 |
| | D. MAINTENANCE OF UNIFORM INTEREST | 12 |
| | E. WAIVER OF RIGHTS TO PARTITION | 12 |
| | F. PREFERENTIAL RIGHT TO PURCHASE | 12 |
| IX. | INTERNAL REVENUE CODE ELECTION | 12 |
| X. | CLAIMS AND LAWSUITS | 13 |
| XI. | FORCE MAJEURE | 13 |
| XII. | NOTICES | 13 |
| XIII. | TERM OF AGREEMENT | 13 |
| XIV. | COMPLIANCE WITH LAWS AND REGULATIONS | 14 |
| | A. LAWS, REGULATIONS AND ORDERS | 14 |
| | B. GOVERNING LAW | 14 |
| | C. REGULATORY AGENCIES | 14 |
| XV. | OTHER PROVISIONS | 14 |
| XVI. | MISCELLANEOUS | 15 |

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

## OPERATING AGREEMENT

THIS AGREEMENT, entered into by and between ___Sklar Exploration Company L.L.C., a Louisiana limited liability

Company, 401 Edwards Street, Suite 1601, Shreveport, Louisiana 71101_____, hereinafter designated and

referred to as "Operator", and the signatory party or parties other than Operator, sometimes hereinafter referred to individually herein

as "Non-Operator", and collectively as "Non-Operators".

### WITNESSETH:

WHEREAS, the parties to this agreement are owners of oil and gas leases and/or oil and gas interests in the land identified in Exhibit "A", and the parties hereto have reached an agreement to explore and develop these leases and/or oil and gas interests for the production of oil and gas to the extent and as hereinafter provided,

NOW, THEREFORE, it is agreed as follows:

### ARTICLE I.
### DEFINITIONS

As used in this agreement, the following words and terms shall have the meanings here ascribed to them:

A. The term "oil and gas" shall mean oil, gas, casinghead gas, gas condensate, and all other liquid or gaseous hydrocarbons and other marketable substances produced therewith, unless an intent to limit the inclusiveness of this term is specifically stated.

B. The terms "oil and gas lease", "lease" and "leasehold" shall mean the oil and gas leases covering tracts of land lying within the Contract Area which are owned by the parties to this agreement.

C. The term "oil and gas interests" shall mean unleased fee and mineral interests in tracts of land lying within the Contract Area which are owned by parties to this agreement, including royalty and overriding royalty interests.

D. The term "Contract Area" shall mean all of the lands, oil and gas leasehold interests and oil and gas interests intended to be developed and operated for oil and gas purposes under this agreement. Such lands, oil and gas leasehold interests and oil and gas interests are described in Exhibit "A".

E. The term "drilling unit" shall mean the area fixed for the drilling of one well by order or rule of any state or federal body having authority. If a drilling unit is not fixed by any such rule or order, a drilling unit shall be the drilling unit as established by the pattern of drilling in the Contract Area or as fixed by express agreement of the Drilling Parties.

F. The term "drillsite" shall mean the oil and gas lease or interest on which a proposed well is to be located.

G. The terms "Drilling Party" and "Consenting Party" shall mean a party who agrees to join in and pay 100% of its share of the cost of any operation conducted under the provisions of this agreement.

H. The terms "Non-Drilling Party" and "Non-Consenting Party" shall mean a party who elects not to participate in a proposed operation.

*

Unless the context otherwise clearly indicates, words used in the singular include the plural, the plural includes the singular, and the neuter gender includes the masculine and the feminine. Words defined herein shall have the same meaning whether or not they are capitalized.

### ARTICLE II.
### EXHIBITS

The following exhibits, as indicated below and attached hereto, are incorporated in and made a part hereof:

☑ A. Exhibit "A", shall include the following information:

    (1) Identification of lands subject to this agreement,

    (2) Restrictions, if any, as to depths, formations, or substances,

    (3) Percentages or fractional interests of parties to this agreement,

    (4) Oil and gas leases and/or oil and gas interests subject to this agreement,

    (5) Addresses of parties for notice purposes.

☑ B. Exhibit "B", Form of Lease.

☑ C. Exhibit "C", Accounting Procedure.

☑ D. Exhibit "D", Insurance.

☑ E. Exhibit "E", Gas Balancing Agreement.

☐ F. Exhibit "F", Non-Discrimination and Certification of Non-Segregated Facilities.

☐ G. Exhibit "G", Tax Partnership.

If any provision of any exhibit, except Exhibits "A" and "E" and "G", is inconsistent with any provision contained in the body of this agreement, the provisions in the body of this agreement shall prevail. If any provisions of Exhibits "A" and "E" is inconsistent with any provision contained in the body of this Agreement, the provision of the exhibit shall prevail.

    I.   The term "Deepen" shall mean a single operation whereby a well drilled to an objective Zone below the deepest Zone in which the well was previously drilled or below the deepest Zone proposed in the associated AFE, whichever is the lesser.

    J.   The term "Plug Back" shall mean a single operation whereby a deeper Zone is abandoned in order to attempt a Completion in a shallower Zone.

    K.   The term "Completion" or "Recomplete" shall mean an operation whereby a Completion in one Zone is abandoned or temporarily isolated in order to attempt a Completion in or continuing with a different Zone within the existing wellbore.

    L.   The term "Rework" shall mean an operation conducted in the wellbore of a well after it is Completed to secure, restore or improve production in a Zone which is currently open to production in the wellbore. Such operations include, without limitation, well stimulation operations but exclude any routine repair or maintenance work or drilling, Sidetracking, Deepening, Completing, Recompleting or Plugging Back of a well.

    M.   The term "Sidetrack" shall mean the directional control and intentional deviation of a well from vertical so as to change the bottom hole location unless done to straighten the hole or drill around junk in the hole to overcome other mechanical difficulties.

    N.   The term "Zone" shall mean a stratum of earth containing or thought to contain a common accumulation of Oil and Gas separately producible from any other common accumulation of Oil and Gas.

- 1 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

ARTICLE III.
INTERESTS OF PARTIES

**A.   Oil and Gas Interests:**

If any party owns an oil and gas interest in the Contract Area, that interest shall be treated for all purposes of this agreement and during the term hereof as if it were covered by the form of oil and gas lease attached hereto as Exhibit "B", and the owner thereof shall be deemed to own both the royalty interest reserved in such lease and the interest of the lessee thereunder.

**B.   Interests of Parties in Costs and Production:**

Unless changed by other provisions, all costs and liabilities incurred in operations under this agreement shall be borne and paid, and all equipment and materials acquired in operations on the Contract Area shall be owned, by the parties as their interests are set forth in Exhibit "A". In the same manner, the parties shall also own all production of oil and gas from the Contract Area subject to the payment of royalties to the extent of _____ all jointly owned lease burdens _____ which shall be borne as hereinafter set forth.

Each of the Parties hereto shall pay or deliver or cause to be paid or delivered its proportionate part of the royalties and over- ~~Regardless of which party has contributed the leases~~ and/or oil and gas interests hereto on which royalty is due and riding royalties and other leasehold burdens as described in the attached Exhibit "A" and shall hold the other Party/ies free from any ~~payable, each party entitled to receive a share of production of oil and gas from the Contract Area shall bear and shall pay or deliver, or~~ liability therefore. If the interest of any Party/ies in any oil and gas lease covered by this Agreement is subject to any additional ~~cause to be paid or delivered, to the extent of its interest, its such production, the royalty amount stipulated hereinabove and shall hold the~~ royalty, overriding royalty, production payment or other charge over and above those shown on Exhibit "A", such Party/ies shall ~~other parties free from any liability therefor, assume and shall bear all such obligations and shall account or cause to be accounted for such~~ interests to the owners thereof. No party shall ever be responsible, however, on a price basis higher than the price received by such party, to any other party's lessor or royalty owner, and if any such other party's lessor or royalty owner should demand and receive settlement on a higher price basis, the party contributing the affected lease shall bear the additional royalty burden attributable to such higher price.

Nothing contained in this Article III.B. shall be deemed an assignment or cross-assignment of interests covered hereby.

**C.   Excess Royalties, Overriding Royalties and Other Payments:**

Unless changed by other provisions, if the interest of any party in any lease covered hereby is subject to any royalty, overriding royalty, production payment or other burden on production ~~in excess of the amount stipulated in Article III.B.,~~ which is not a joint obligation of the parties such party so burdened shall assume and alone bear all such excess obligations and shall indemnify and hold the other parties hereto harmless from any and all claims and demands for payment asserted by owners of such excess burden.

**D.   Subsequently Created Interests:**

If any party should hereafter create an overriding royalty, production payment or other burden payable out of production attributable to its working interest hereunder, or if such a burden existed prior to this agreement and is not set forth in Exhibit "A", ~~or was not disclosed in writing to all other parties prior to the execution of this agreement by all parties,~~ or is not a jointly acknowledged and accepted obligation of all parties (any such interest being hereinafter referred to as "subsequently created interest" irrespective of the timing of its creation and the party out of whose working interest the subsequently created interest is derived being hereinafter referred to as "burdened party"), and:

    1.   If the burdened party is required under this agreement to assign or relinquish to any other party, or parties, all or a portion of its working interest and/or the production attributable thereto, said other party, or parties, shall receive said assignment and/or production free and clear of said subsequently created interest and the burdened party shall indemnify and save said other party, or parties, harmless from any and all claims and demands for payment asserted by owners of the subsequently created interest; and,

    2.   If the burdened party fails to pay, when due, its share of expenses chargeable hereunder, all provisions of Article VII.B. shall be enforceable against the subsequently created interest in the same manner as they are enforceable against the working interest of the burdened party.

ARTICLE IV.
TITLES

**A.   Title Examination:**

Title examination shall be made on the drillsite of any proposed well prior to commencement of drilling operations or, if the Drilling Parties so request, title examination shall be made on the leases and/or oil and gas interests included, or planned to be includ- ed, in the drilling unit around such well. The opinion will include the ownership of the working interest, minerals, royalty, overriding royalty and production payments under the applicable leases. At the time a well is proposed, each party contributing leases and/or oil and gas interests to the drillsite, or to be included in such drilling unit, shall furnish to Operator all abstracts (including federal lease status reports), title opinions, title papers and curative material in its possession free of charge. All such information not in the possession of or made available to Operator by the parties, but necessary for the examination of the title, shall be obtained by Operator. Operator shall cause title to be examined by attorneys on its staff or by outside attorneys. Copies of all title opinions shall be furnished to each party hereto provided such party has paid 100% of its share of all costs of all operations conducted under the provisions of this Agreement. The cost incurred by Operator in this title program shall be borne as follows:

    ☐   ~~Option No. 1: Costs incurred by Operator in procuring abstracts and title examination (including preliminary, supplemental, shut-in gas royalty opinions and division order title opinions) shall be a part of the administrative overhead as provided in Exhibit "C", and shall not be a direct charge, whether performed by Operator's staff attorneys or by outside attorneys.~~

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

**ARTICLE IV**
continued

☑ Option No. 2: Costs incurred by Operator in procuring abstracts *, and fees paid outside attorneys ** for title examination (including preliminary, supplemental, shut-in gas royalty opinions and division order title opinions) [ shall be borne by the Drilling Parties in the proportion that the interest of each Drilling Party bears to the total interest of all Drilling Parties as such interests appear in Exhibit "A". Operator shall make no charge for services rendered by its staff attorneys or other personnel in the performance of the above functions.

~~Each party shall be responsible for securing~~ Operator shall use its best efforts to secure curative matter and pooling amendments or agreements required in connection subject to this agreement and charge these fees to the joint account. with leases of oil and gas interests [ contributed by such party. Operator shall be responsible for the preparation and recording of pooling designations or declarations as well as the conduct of hearings before governmental agencies for the securing of spacing or pooling orders. This shall not prevent any party from appearing on its own behalf at any such hearing.

No well shall be drilled on the Contract Area until after (1) the title to the drillsite or drilling unit has been examined as above provided, and (2) the title has been approved by the examining attorney or title has been accepted by [ Operator. ~~all of the parties who are to participate in the drilling of the well.~~

**B.  Loss of Title:**

~~1.  Failure of Title:  Should any oil and gas interest or lease, or interest therein, be lost through failure of title, which loss results in a reduction of interest from that shown on Exhibit "A", the party contributing the affected lease or interest shall have ninety (90) days from final determination of title failure to acquire a new lease or other instrument curing the entirety of the title failure, which acquisition will not be subject to Article VIII.B., and failing to do so, this agreement, nevertheless, shall continue in force as to all remaining oil and gas leases and interests; and,~~

~~(a)  The party whose oil and gas lease or interest is affected by the title failure shall bear alone the entire loss and it shall not be entitled to recover from Operator or the other parties any development or operating costs which it may have theretofore paid or incurred, but there shall be no additional liability on its part to the other parties hereto by reason of such title failure;~~

~~(b)  There shall be no retroactive adjustment of expenses incurred or revenues received from the operation of the interest which has been lost, but the interests of the parties shall be revised on an acreage basis, as of the time it is determined finally that title failure has occurred, so that the interest of the party whose lease or interest is affected by the title failure will thereafter be reduced in the Contract Area by the amount of the interest lost;~~

~~(c)  If the proportionate interest of the other parties hereto in any producing well theretofore drilled on the Contract Area is increased by reason of the title failure, the party whose title has failed shall receive the proceeds attributable to the increase in such interest (less costs and burdens attributable thereto) until it has been reimbursed for unrecovered costs paid by it in connection with such well;~~

~~(d)  Should any person not a party to this agreement, who is determined to be the owner of any interest in the title which has failed, pay in any manner any part of the cost of operation, development, or equipment, such amount shall be paid to the party or parties who bore the costs which are so refunded;~~

~~(e)  Any liability to account to a third party for prior production of oil and gas which arises by reason of title failure shall be borne by the party or parties whose title failed in the same proportions in which they shared in such prior production; and,~~

~~(f)  No charge shall be made to the joint account for legal expenses, fees or salaries, in connection with the defense of the interest claimed by any party hereto, it being the intention of the parties hereto that each shall defend title to its interest and bear all expenses in connection therewith.~~
This space intentionally left blank.

~~2.  Loss by Non-Payment or Erroneous Payment of Amount Due:  If, through mistake or oversight, any rental, shut-in well payment, minimum royalty or royalty payment, is not paid or is erroneously paid, and as a result a lease or interest therein terminates, there shall be no monetary liability against the party who failed to make such payment. Unless the party who failed to make the required payment secures a new lease covering the same interest within ninety (90) days from the discovery of the failure to make proper payment, which acquisition will not be subject to Article VIII.B., the interests of the parties shall be revised on an acreage basis, effective as of the date of termination of the lease involved, and the party who failed to make proper payment will no longer be credited with an interest in the Contract Area on account of ownership of the lease or interest which has terminated. In the event the party who failed to make the required payment shall not have been fully reimbursed, at the time of the loss, from the proceeds of the sale of oil and gas attributable to the lost interest, calculated on an acreage basis, for the development and operating costs theretofore paid on account of such interest, it shall be reimbursed for unrecovered actual costs theretofore paid by it (but not for its share of the cost of any dry hole previously drilled or wells previously abandoned) from so much of the following as is necessary to effect reimbursement:~~

~~(a)  Proceeds of oil and gas, less operating expenses, theretofore accrued to the credit of the lost interest, on an acreage basis, up to the amount of unrecovered costs;~~

~~(b)  Proceeds, less operating expenses, thereafter accrued attributable to the lost interest on an acreage basis, of that portion of oil and gas thereafter produced and marketed (excluding production from any wells thereafter drilled) which, in the absence of such lease termination, would be attributable to the lost interest on an acreage basis, up to the amount of unrecovered costs, the proceeds of said portion of the oil and gas to be contributed by the other parties in proportion to their respective interest; and,~~

~~(c)  Any monies, up to the amount of unrecovered costs, that may be paid by any party who is, or becomes, the owner of the interest lost, for the privilege of participating in the Contract Area or becoming a party to this agreement.~~

3.  Other Losses:  All losses incurred, ~~other than those set forth in Articles IV.B.1. and IV.B.2. above,~~ shall be joint losses and shall be borne by all parties in proportion to their interests. There shall be no readjustment of interests in the remaining portion of the Contract Area.

\* Curative matters and materials
\*\* Landmen and consultants
\*\*\* and for applications and hearings

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

## ARTICLE V.
## OPERATOR

**A.  Designation and Responsibilities of Operator:**

_____Sklar Exploration Company L.L.C., of Shreveport, Louisiana_____ shall be the Operator of the Contract Area, and shall conduct and direct and have full control of all operations on the Contract Area as permitted and required by, and within the limits of this agreement. It shall conduct all such operations in a good and workmanlike manner, but it shall have no liability as Operator to the other parties for losses sustained or liabilities incurred, except such as may result from gross negligence or willful misconduct.

**B.  Resignation or Removal of Operator and Selection of Successor:**

1. Resignation or Removal of Operator:  Operator may resign at any time by giving written notice thereof to Non-Operators. If Operator terminates its legal existence, no longer owns an interest hereunder in the Contract Area, or is no longer capable of serving as Operator, Operator shall be deemed to have resigned without any action by Non-Operators, except the selection of a successor. Operator may be removed if it fails or refuses to carry out its duties hereunder, or becomes insolvent, bankrupt or is placed in receivership, by the affirmative vote of two or more Non-Operators owning a majority interest based on ownership as shown on Exhibit "A" remaining after excluding the voting interest of Operator. Such vote shall not be deemed effective until a written notice has been delivered to the Operator by a Non-Operator detailing the alleged default and Operator has failed to cure the default within 30 days from its receipt. Such ~~resignation or removal shall not become effective until 7:00 o'clock A.M. on the~~ first day of the calendar month following the expiration of ninety (90) days after the giving of notice of resignation by Operator or action by the Non-Operators to remove Operator, unless a successor Operator has been selected and assumes the duties of Operator at an earlier date. Operator, after effective date of resignation or removal, shall be bound by the terms hereof as a Non-Operator. A change of a corporate name or structure of Operator or transfer of Operator's interest to any single subsidiary, parent or successor corporation shall not be the basis for removal of Operator. *This condition shall not apply to a designated operator, such as Sklar Exploration Company L.L.C., who owns no interest in the Contract Area by virtue of the fact that it is solely an operating company. If Sklarco L.L.C. sells, transfers or relinquishes all or its interest, or otherwise fails to maintain an interest, in the Contract Area, Sklar Exploration Company L.L.C. may be removed as Operator without cause by a vote of two or more parties owning in excess of fifty percent (50%) of the cost bearing interest in the Contract Area.

2. Selection of Successor Operator:  Upon the resignation or removal of an Operator, a successor Operator shall be selected by the parties. The successor Operator shall be selected from the parties owning an interest in the Contract Area at the time such successor Operator is selected. The successor Operator shall be selected by the affirmative vote of two (2) or more parties owning a majority interest based on ownership as shown on Exhibit "A"; provided, however, if an Operator ~~which~~ has been removed ~~fails to vote or votes only to succeed itself~~, the successor Operator shall be selected by the affirmative vote of two (2) or more parties owning a majority interest based on ownership as shown on Exhibit "A" remaining after excluding the voting interest of the Operator that was removed.

**C.  Employees:**

The number of employees used by Operator in conducting operations hereunder, their selection, and the hours of labor and the compensation for services performed shall be determined by Operator, and all such employees shall be the employees of Operator.

**D.  Drilling Contracts:**

except that in Operator's sole discretion all factors such as rig availability, equipment condition, contractor employee reliability and knowledge and drilling contractor reputation shall be taken into consideration in determining the real competitive price. All wells drilled on the Contract Area shall be drilled on a competitive contract basis at the usual rates prevailing in the area. ~~If~~ it so desires, Operator may employ its own tools and equipment in the drilling of wells, but its charges therefor shall not exceed the prevailing rates in the area ~~and the rate of such charges shall be agreed upon by the parties in writing before drilling operations are commenced~~, and such work shall be performed by Operator under the same terms and conditions as are customary and usual in the area in contracts of independent contractors who are doing work of a similar nature. E. Custody of Funds:  Operator shall hold for the account of Non-Operators any funds of Non-Operators advanced or paid to the Operator, either for the conduct of operations hereunder or as a result of the sale of production from the Contract Area, and such funds shall remain the funds of the Non-Operators on whose account they are advance or paid until used for their intended purpose or otherwise delivered to Non-Operators or applied toward the payment of debts regardless of whether the debts arise out of the same well or operation for which the funds were advanced or from which the sales proceeds were derived.  Nothing in this paragraph shall be construed to establish a fiduciary relationship between Operator and Non-Operators.  Nothing in this paragraph shall require the maintenance by Operator of separate accounts for the funds of Non-Operators. F. Statutory Employer:  Operator shall be considered the statutory employer of all employees of all Contractors, their sub-contractors or agents, whose goods furnished or services rendered for Operator are an integral part of or essential to Operator's ability to perform its operations as an oil and gas operator.

## ARTICLE VI.
## DRILLING AND DEVELOPMENT

**A.  Initial Well:**

The initial well is the Initial Well referred to in Subsection 1.2 (a) of the Participation Agreement to which this instrument is attached as Exhibit E. And subject to rig availability On or before the ____1st____ day of _____June_____, (year) ___2007___, Operator shall commence the drilling of a well for oil and gas at the following location: of Operator's choice within Section 5, T3N, R13E, Escambia County, Alabama, or as near there to as practicable

and shall thereafter continue the drilling of the well with due diligence to a measured depth of 12,000' in a vertical bore hole, or a depth sufficient in SEC's discretion to test the Upper Smackover and Norphlet Formkins, whichever is more shallow

- 4 -

unless granite or other practically impenetrable substance or condition in the hole, which renders further drilling impractical, is encountered at a lesser depth, or unless all parties agree to complete or abandon the well at a lesser depth.

Operator shall make reasonable tests of all formations encountered during drilling which give indication of containing oil and gas in quantities sufficient to test, unless this agreement shall be limited in its application to a specific formation or formations, in which event Operator shall be required to test only the formation or formations to which this agreement may apply.

If, in Operator's judgment, the well will not produce oil or gas in paying quantities, and it wishes to plug and abandon the well as a dry hole, the provisions of Article VI.E.1. shall thereafter apply.

**B.  Subsequent Operations:**

1.  Proposed Operations: Should any party hereto desire to drill any ̲ ̲ ̲ well on the Contract Area other than the well provided any well includes water source or injection wells ̲recompletion, recomplete, sidetrack for in Article VI.A., or to rework, ̲ ̲ deepen or plug back a ̲ ̲ hole drilled at the joint expense of all parties or a well jointly owned by all the parties and not then producing in ̲ paying quantities, the party desiring to drill, rework, ̲ deepen or plug back such a well shall give the ̲recompletion, recomplete, sidetrack other parties ̲ written notice of the proposed operation, specifying the work to be performed, the location, proposed depth, objective forma- that have not forfeited their interest in the well to whom          is delivered      fifteen (15)      delivery tion and the estimated cost of the operation. The parties ̲ ̲ receiving such a notice ̲ shall have ̲ thirty (30) days after receipt ̲ of the notice within which to notify the party wishing to do the work whether they elect to participate in the cost of the proposed operation. If a drill- ing rig is on location, notice of a proposal to rework, plug back or drill deeper may be given by telephone and the response period shall be twenty-four (24) hours to whom is delivered limited to ̲ forty-eight (48) hours, exclusive of Saturday, Sunday, and legal holidays. Failure of a party ̲ receiving such notice ̲ to reply within the period above fixed shall constitute an election by that party not to participate in the cost of the proposed operation. Any notice or response given by telephone shall be promptly confirmed in writing. *Not withstanding this Article VI.B.1, and subject to the right of any party to non-consent the proposed operation, a proposal to re- work, recomplete, sidetrack, deepen or plugback a well producing in paying quantities, which is consented to by two (2) or more of the parties owning two-thirds (2/3rds) or more of the working interest under the well may proceed and be executed on behalf of the Consenting Parties without the unanimous consent of all parties.

If all parties elect to participate in such a proposed operation, Operator shall, within ninety (90) days after expiration of the notice fifteen (15)                twenty-four (24) period of ̲ thirty (30) days (or as promptly as possible after the expiration of the ̲ forty-eight (48)-hour period when a drilling rig is on loca- tion, as the case may be), actually commence the proposed operation and complete it with due diligence at the risk and expense of all par- ties hereto; provided, however, said commencement date may be extended upon written notice of same by Operator to the other parties, for a period of up to thirty (30) additional days if, in the sole opinion of Operator, such additional time is reasonably necessary to obtain permits from governmental authorities, surface rights (including rights-of-way) or appropriate drilling equipment, or to complete title ex- amination or curative matter required for title approval or acceptance. Notwithstanding the force majeure provisions of Article XI, if the actual operation has not been commenced within the time provided (including any extension thereof as specifically permitted herein) and if any party hereto still desires to conduct said operation, written notice proposing same must be resubmitted to the other parties in accor- dance with the provisions hereof as if no prior proposal had been made. Operator may, at its discretion, perform preparatory work in connection with, or even actually commence, an operation for which notice has been provided under this Article VI.B prior to our during the notice period, and if such operation ultimately is one com- ducted by less than all parties, the Consenting Parties shall, nevertheless, be entitled to recover the risk compensation provided for hereunder.

to whom          is delivered 2. Operations by Less than All Parties: If any party ̲ receiving such notice ̲ as provided in Article VI.B.1. or VII.D.1. (Option subject to availability of equipment and personnel No. 2) elects not to participate in the proposed operation, then, in order to be entitled to the benefits of this Article, the party or parties giving notice and such other parties as shall elect to participate in the operation shall, ̲ within ninety (90) days after the expiration of twenty-four (24) the notice period of ̲ thirty (30) days (or as promptly as possible after the expiration of the ̲ forty-eight (48) hour period when a drilling rig is on location, as the case may be) actually commence the proposed operation and complete it with due diligence. Operator shall perform all work for the account of the Consenting Parties; provided, however, if no drilling rig or other equipment is on location, and if Operator is a Non-Consenting Party, the Consenting Parties shall either: (a) request Operator to perform the work required by such proposed opera- tion for the account of the Consenting Parties, or (b) designate one (1) of the Consenting Parties as Operator to perform such work. Con- senting Parties, when conducting operations on the Contract Area pursuant to this Article VI.B.2., shall comply with all terms and con- ditions of this agreement.

If less than all parties approve any proposed operation, the proposing party, immediately after the expiration of the applicable notice period, shall advise the Consenting Parties of the total interest of the parties approving such operation and its recommendation as twenty-four (24) to whether the Consenting Parties should proceed with the operation as proposed. Each Consenting Party, within ̲ forty-eight (48) hours (exclusive of Saturday, Sunday and legal holidays) after receipt delivery of such notice, shall advise the proposing party of its desire to (a) limit par- either ticipation to such party's interest as shown on Exhibit "A" or (b) carry ̲ is proportionate part of Non-Consenting Parties' interests, and all of failure to advise the proposing party shall be deemed an election under (a). In the event a drilling rig is on location, the time permitted for twenty-four (24) hours such a response shall not exceed a total of ̲ forty-eight (48) hours (inclusive of Saturday, Sunday and legal holidays). The proposing party, at its election, may withdraw such proposal if there is insufficient participation and shall promptly notify all parties of such decision.

The entire cost and risk of conducting such operations shall be borne by the Consenting Parties in the proportions they have elected to bear same under the terms of the preceding paragraph. Consenting Parties shall keep the leasehold estates involved in such operations free and clear of all liens and encumbrances of every kind created by or arising from the operations of the Consenting Parties. either If such an operation results in a dry hole, the Consenting Parties shall ̲ plug and abandon the well and restore the surface location at their recompleted, sidetracked sole cost, risk and expense ̲. If any well drilled, reworked, ̲ deepened or plugged back under the provisions of this Article results in a pro- ducer of oil and/or gas in paying quantities, the Consenting Parties shall complete and equip the well to produce at their sole cost and risk, *or one of them shall make a proposal to the other Consenting Parties to conduct further operations under Article VI.B

-5-

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

### ARTICLE VI
### continued

and the well shall then be turned over to Operator and shall be operated by it at the expense and for the account of the Consenting Par-
ties. Upon commencement of operations for the drilling, reworking, deepening or plugging back of any such well by Consenting Parties
in accordance with the provisions of this Article, each Non-Consenting Party shall be deemed to have relinquished to Consenting Parties,
and the Consenting Parties shall own and be entitled to receive, in proportion to their respective interests, all of such Non-Consenting
Party's interest in the entire well, and not just a particular Zone therein and share of production therefrom until the proceeds of the sale of such share, calculated at the well, or
market value thereof if such share is not sold, (after deducting production taxes, excise taxes, royalty, overriding royalty and other in-
terests not excepted by Article III.D. payable out of or measured by the production from such well accruing with respect to such interest
any and all Zones within
until it reverts) shall equal the total of the following:

(a)   500% of each such Non-Consenting Party's share of the cost of any newly acquired surface equipment beyond the wellhead
connections (including, but not limited to, stock tanks, separators, treaters, pumping equipment and piping), plus 100% of each such
Non-Consenting Party's share of the cost of operation of the well commencing with first production and continuing until each such Non-
Consenting Party's relinquished interest shall revert to it under other provisions of this Article, it being agreed that each Non-
Consenting Party's share of such costs and equipment will be that interest which would have been chargeable to such Non-Consenting
Party had it participated in the well from the beginning of the operations; and

(b)   500  % of that portion of the costs and expenses of drilling, reworking, deepening, plugging back, testing and completing,
after deducting any cash contributions received under Article VIII.C., and   500   % of that portion of the cost of newly acquired equip-
ment in the well (to and including the wellhead connections), which would have been chargeable to such Non-Consenting Party if it had
participated therein.

An election not to participate in the drilling or the deepening of a well shall be deemed an election not to participate in any re-
working or plugging back operation proposed in such a well, or portion thereof, to which the initial Non-Consent election applied that is
conducted at any time prior to full recovery by the Consenting Parties of the Non-Consenting Party's recoupment account. Any such
reworking or plugging back operation conducted during the recoupment period shall be deemed part of the cost of operation of said well
and there shall be added to the sums to be recouped by the Consenting Parties one hundred percent (100%) of that portion of the costs of
five
the reworking or plugging back operation which would have been chargeable to such Non-Consenting Party had it participated therein. If
such a reworking or plugging back operation is proposed during such recoupment period, the provisions of this Article VI.B. shall be ap-
plicable as between said Consenting Parties in said well.

During the period of time Consenting Parties are entitled to receive Non-Consenting Party's share of production, or the
proceeds therefrom, Consenting Parties shall be responsible for the payment of all production, severance, excise, gathering and other
taxes, and all royalty, overriding royalty and other burdens applicable to Non-Consenting Party's share of production not excepted by Ar-
ticle III.D.

In the case of any reworking, plugging back or deeper drilling operation, the Consenting Parties shall be permitted to use, free
of cost, all casing, tubing and other equipment in the well, but the ownership of all such equipment shall remain unchanged; and upon
abandonment of a well after such reworking, plugging back or deeper drilling, the Consenting Parties shall account for all such equip-
ment to the owners thereof, with each party receiving its proportionate part in kind or in value, less cost of salvage.

Within sixty (60) days after the completion of any operation under this Article, the party conducting the operations for the
Consenting Parties shall furnish each Non-Consenting Party with an inventory of the equipment in and connected to the well, and an
itemized statement of the cost of drilling, deepening, plugging back, testing, completing, and equipping the well for production; or, at its
option, the operating party, in lieu of an itemized statement of such costs of operation, may submit a detailed statement of monthly bill-
ings. Each month quarter thereafter, during the time the Consenting Parties are being reimbursed as provided above, the party conducting the
operations for the Consenting Parties shall furnish the Non-Consenting Parties with an itemized statement of all costs and liabilities in-
curred in the operation of the well, together with a statement of the quantity of oil and gas produced from it and the amount of proceeds
realized from the sale of the well's working interest production during the preceding quarter month. In determining the quantity of oil and gas
produced during any month, Consenting Parties shall use industry accepted methods such as, but not limited to, metering or periodic
well tests. Any amount realized from the sale or other disposition of equipment newly acquired in connection with any such operation
which would have been owned by a Non-Consenting Party had it participated therein shall be credited against the total unreturned costs
of the work done and of the equipment purchased in determining when the interest of such Non-Consenting Party shall revert to it as
above provided; and if there is a credit balance, it shall be paid to such Non-Consenting Party.

*recompleting, sidetracking

- 6 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

## ARTICLE VI
### continued

If and when the Consenting Parties recover from a Non-Consenting Party's relinquished interest the amounts provided for above, the relinquished interests of such Non-Consenting Party shall automatically revert to it, and, from and after such reversion, such Non-Consenting Party shall own the same interest in such well, the material and equipment in or pertaining thereto, and the production therefrom as such Non-Consenting Party would have been entitled to had it participated in the drilling, reworking, recompleting, sidetracking deepening or plugging back of said well. Thereafter, such Non-Consenting Party shall be charged with and shall pay its proportionate part of the further costs of the operation of said well in accordance with the terms of this agreement and the Accounting Procedure attached hereto.

Notwithstanding the provisions of this Article VI.B.2., *it is agreed that without the mutual consent of **, all parties, no wells shall be completed in or produced from a source of supply from which a well located elsewhere on the Contract Area is producing, unless such well conforms to the then-existing well spacing pattern for such source of supply : provided that an exceptional well location that is approved by the Louisiana Office of Conservation shall be deemed to conform to the then-existing spacing pattern.
*and subject to the right of any party to non-consent the proposed operation
**two (2) or more Parties owning 75% or more of the working interest

The provisions of this Article shall have no application whatsoever to the drilling of the initial well described in Article VI.A. recompleting, Sidetracking except (a) as to Article VII.D.1. (Option No. 2), if selected, or (b) as to the reworking, deepening and plugging back of such initial well after it has been drilled to the depth specified in Article VI.A. if it shall thereafter prove to be a dry hole or, if initially completed for production, ceases to produce in paying quantities.

3. Stand-By Time:   When a well which has been drilled or deepened has reached its authorized depth and all tests have been completed, and the results thereof furnished to the parties, stand-by costs incurred pending response to a party's notice proposing a reworking, deepening, plugging back or completing operation in such a well shall be charged and borne as part of the drilling or deepening operation just completed. Stand-by costs subsequent to all parties responding, or expiration of the response time permitted, whichever first occurs, and prior to agreement as to the participating interests of all Consenting Parties pursuant to the terms of the second grammatical paragraph of Article VI.B.2., shall be charged to and borne as part of the proposed operation, but if the proposal is subsequently withdrawn because of insufficient participation, such stand-by costs shall be allocated between the Consenting Parties in the proportion each Consenting Party's interest as shown on Exhibit "A" bears to the total interest as shown on Exhibit "A" of all Consenting Parties.

4. Sidetracking:   Except as hereinafter provided, those provisions of this agreement applicable to a "deepening" operation shall also be applicable to any proposal to directionally control and intentionally deviate a well from vertical so as to change the bottom hole location (herein call "sidetracking"), unless done to straighten the hole or to drill around junk in the hole or because of other mechanical difficulties. Any party having the right to participate in a proposed sidetracking operation that does not own an interest in the affected well bore at the time of the notice shall, upon electing to participate, tender to the well bore owners its proportionate share (equal to its interest in the sidetracking operation) of the value of that portion of the existing well bore to be utilized as follows:

(a)  If the proposal is for sidetracking an existing dry hole, reimbursement shall be on the basis of the actual costs incurred in the initial drilling of the well down to the depth at which the sidetracking operation is initiated.

(b)  If the proposal is for sidetracking a well which has previously produced, reimbursement shall be on the basis of the well's salvable materials and equipment down to the depth at which the sidetracking operation is initiated, determined in accordance with the provisions of Exhibit "C", less the estimated cost of salvaging and the estimated cost of plugging and abandoning.

In the event that notice for a sidetracking operation is given while the drilling rig to be utilized is on location, the response period twenty-four (24) hours shall be limited to forty-eight (48) hours, exclusive of Saturday, Sunday and legal holidays; provided, however, any party may request and twenty-four (24) hours receive up to eight (8) additional days after expiration of the forty-eight (48) hours within which to respond by paying for all stand-by time incurred during such extended response period. If more than one party elects to take such additional time to respond to the notice, stand by costs shall be allocated between the parties taking additional time to respond on a day-to-day basis in the proportion each electing party's interest as shown on Exhibit "A" bears to the total interest as shown on Exhibit "A" of all the electing parties. In all other in-fifteen (15) stances the response period to a proposal for sidetracking shall be limited to thirty (30) days.

## C.   TAKING PRODUCTION IN KIND:

have the right to
Each party shall take in kind or separately dispose of its proportionate share of all oil and gas produced from the Contract Area, exclusive of production which may be used in development and producing operations and in preparing and treating oil and gas for marketing purposes and production unavoidably lost. Any extra expenditure incurred in the taking in kind or separate disposition by any party of its proportionate share of the production shall be borne by such party. Any party taking its share of production in kind shall be

- 7 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

### ARTICLE VI
continued

1  required to pay for only its proportionate share of such part of Operator's surface facilities which it uses.
2
3      Each party shall execute such division orders and contracts as may be necessary for the sale of its interest in production from
4  the Contract Area, and, except as provided in Article VII.B., shall be entitled to receive payment directly from the purchaser thereof for
5  its share of all production.
6
7      In the event any party shall fail to make the arrangements necessary to take in kind or separately dispose of its proportionate share of
8  the oil produced from the Contract Area, Operator shall have the right, subject to the revocation at will by the party owning it, but not
   on the same terms as Operator is marketing Operator's and/or other Non-Operators' share of production
9  the obligation, to purchase such oil or sell it to others at any time and from time to time, for the account of the non-taking party ⸤ at the
10 best price obtainable in the area for such production. Any such purchase or sale by Operator shall be subject always to the right of the
11 owner of the production to exercise at any time its right to take in kind, or separately dispose of, its share of all oil not previously
12 delivered to a purchaser. Any purchase or sale by Operator of any other party's share of oil shall be only for such reasonable periods of
13 time as are consistent with the minimum needs of the industry under the particular circumstances, but in no event for a period in excess
14 of one (1) year.
15
16     In the event one or more parties' separate disposition of its share of the gas causes split-stream deliveries to separate pipelines and/or
17 deliveries which on a day-to-day basis for any reason are not exactly equal to a party's respective proportionate share of total gas sales to
18 be allocated to it, the balancing or accounting between the respective accounts of the parties shall be in accordance with any gas balancing
19 agreement between the parties hereto, whether such an agreement is attached as Exhibit "E", or is a separate agreement.
20
21 D.   Access to Contract Area and Information:
22
                                      consenting
23 ⸤ Except as otherwise provided herein Each ⸤ party who has paid 100% of its share of all costs of all operations conducted under this
   Agreement shall have access to the Contract Area at all reasonable times, at its sole cost and risk to inspect or observe operations,
24 and shall have access at reasonable times to information pertaining to the development or operation thereof, including Operator's books
                                                                              consenting
25 and records relating thereto. Operator, upon request, shall furnish each of the other ⸤ parties with copies of all forms or reports filed with
26 governmental agencies, daily drilling reports, well logs, tank tables, daily gauge and run tickets and reports of stock on hand at the first of
27 each month, and shall make available samples of any cores or cuttings taken from any well drilled on the Contract Area. The cost of
28 gathering and furnishing information to Non-Operator, other than that specified above, shall be charged to the Non-Operator that re-
29 quests the information.
30
31 E.   Abandonment of Wells:
32
33     1. Abandonment of Dry Holes:  Except for any well drilled or deepened pursuant to Article VI.B.2., any well which has been
34 drilled or deepened under the terms of this agreement and is proposed to be completed as a dry hole shall not be plugged and abandoned
                                          **
35 without the consent of ⸤ all parties. ⸤ Should Operator, after diligent effort, be unable to contact any party, or should any party fail to reply
      twenty-four (24) hours (inclusive
36 within ⸤ forty-eight (48) hours (exclusive of Saturday, Sunday and legal holidays) after receipt of notice of the proposal to plug and abandon
37 such well, such party shall be deemed to have consented to the proposed abandonment. All such wells shall be plugged and abandoned in
38 accordance with applicable regulations and at the cost, risk and expense of the parties who participated in the cost of drilling or deepening
                        ***                      or parties owning greater than ten percent (10%) interest in the well
39 such well. ⸤ Any party ⸤ who objects to plugging and abandoning such well shall have the right to take over the well and conduct further
40 operations in search of oil and/or gas subject to the provisions of Article VI.B.
   *ninety percent (90%) or more of the parties thereof
41 **If the well has been drilled pursuant to Article VI.B.2, only the consent of the consenting parties therein shall be required.
42 ***Any cement plugs used for plugging and abandoning such well shall be in excess of that required by the regulatory body
43 recommended to be a volume of one and one-half times of that required.
44
45     2. Abandonment of Wells that have Produced:  Except for any well in which a Non-Consent operation has been conducted
46 hereunder for which the Consenting Parties have not been fully reimbursed as herein provided, any well which has been completed as a
                                                  ****         such parties
47 producer shall not be plugged and abandoned without the consent of all parties. ⸤ If ⸤ all parties ⸤ consent to such abandonment, the well shall
48 be plugged and abandoned in accordance with applicable regulations and at the cost, risk and expense of all the parties hereto. If, within
      fifteen (15)
49 thirty (30) ⸤ days after receipt of notice of the proposed abandonment of any well, all parties do not agree to the abandonment of such well,
50 those wishing to continue its operation from the interval(s) of the formation(s) then open to production shall tender to each of the other
51 parties its proportionate share of the value of the well's salvable material and equipment, determined in accordance with the provisions of
             Should any party fail to reply to such notice, such party shall be deemed to have consented to the proposed abandonment.
52 Exhibit "C", less the estimated cost of salvaging and the estimated cost of plugging and abandoning. ⸤ Each abandoning party shall assign
53 the non-abandoning parties, without warranty, express or implied, as to title or as to quantity, or fitness for use of the equipment and
54 material, all of its interest in the well and related equipment, together with its interest in the leasehold estate as to, but only as to, the in-
55 terval or intervals of the formation or formations then open to production. If the interest of the abandoning party is or includes an oil and
56 gas interest, such party shall execute and deliver to the non-abandoning party or parties an oil and gas lease, limited to the interval or in-
57 tervals of the formation or formations then open to production, for a term of one (1) year and so long thereafter as oil and/or gas is pro-
58 duced from the interval or intervals of the formation or formations covered thereby, such lease to be on the form attached as Exhibit
59 ****two-thirds percent (2/3rds%) or more of the owners thereof. If the well has been drilled or reworked pursuant to Article VI.B.2 and the
60 consenting parties therein have not been fully reimbursed as therein provided, only the approval of such consenting parties shall be required
61
62
63
64
65
66
67
68
69
70

- 8 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

## ARTICLE VI
### continued

1   "B". The assignments or leases so limited shall encompass the "drilling unit" upon which the well is located. The payments by, and the
2   assignments or leases to, the assignees shall be in a ratio based upon the relationship of their respective percentage of participation in the
3   Contract Area to the aggregate of the percentages of participation in the Contract Area of all assignees. There shall be no readjustment of
4   interests in the remaining portion of the Contract Area.

6      Thereafter, abandoning parties shall have no further responsibility, liability, or interest in the operation of or production from
7   the well in the interval or intervals then open other than the royalties retained in any lease made under the terms of this Article. Upon re-
8   quest, Operator shall continue to operate the assigned well for the account of the non-abandoning parties at the rates and charges con-
9   templated by this agreement, plus any additional cost and charges which may arise as the result of the separate ownership of the assigned
10   well. Upon proposed abandonment of the producing interval(s) assigned or leased, the assignor or lessor shall then have the option to
11   repurchase its prior interest in the well (using the same valuation formula) and participate in further operations therein subject to the pro-
12   visions hereof.

14      3. Abandonment of Non-Consent Operations:  The provisions of Article VI.E.1. or VI.E.2 above shall be applicable as between
15   Consenting Parties in the event of the proposed abandonment of any well excepted from said Articles; provided, however, no well shall be
16   permanently plugged and abandoned unless and until all parties having the right to conduct further operations therein have been notified
17   of the proposed abandonment and afforded the opportunity to elect to take over the well in accordance with the provisions of this Article
18   VI.E.

20                       **ARTICLE VII.**
21          **EXPENDITURES AND LIABILITY OF PARTIES**

23   **A.   Liability of Parties:**

25      The liability of the parties shall be several, not joint or collective. Each party shall be responsible only for its obligations, and
26   shall be liable only for its proportionate share of the costs of developing and operating the Contract Area. Accordingly, the liens granted
27   among the parties in Article VII.B. are given to secure only the debts of each severally. It is not the intention of the parties to create, nor
28   shall this agreement be construed as creating, a mining or other partnership or association, or to render the parties liable as partners. In their
29   relations with each other under this Agreement, the parties shall not be considered fiduciaries or to have established a confidential
     relationship but rather shall be free to act on an arm's-length basis in accordance with their own self-interest.

31   **B.   Liens and Payment Defaults:**

33      Each Non-Operator grants to Operator a lien upon its oil and gas rights in the Contract Area, and a security interest in its share
34   of oil and/or gas when extracted and its interest in all equipment, to secure payment of its share of expense, together with interest thereon
35   at the rate provided in Exhibit "C". To the extent that Operator has a security interest under the Uniform Commercial Code of the
36   state, Operator shall be entitled to exercise the rights and remedies of a secured party under the Code. The bringing of a suit and the ob-
37   taining of judgment by Operator for the secured indebtedness shall not be deemed an election of remedies or otherwise affect the lien
38   rights or security interest as security for the payment thereof. In addition, upon default by any Non-Operator in the payment of its share
39   of expense, Operator shall have the right, without prejudice to other rights or remedies, to collect from the purchaser the proceeds from
40   the sale of such Non-Operator's share of oil and/or gas until the amount owed by such Non-Operator, plus interest, has been paid. Each
41   purchaser shall be entitled to rely upon Operator's written statement concerning the amount of any default. Operator grants a like lien
42   and security interest to the Non-Operators to secure payment of Operator's proportionate share of expense.

44      If any party fails or is unable to pay its share of expense within sixty (60) days after rendition of a statement therefor by
45   Operator, the non-defaulting parties, including Operator, shall, upon request by Operator, pay the unpaid amount in the proportion that
46   the interest of each such party bears to the interest of all such parties. Each party so paying its share of the unpaid amount shall, ~~to obtain~~
47   ~~reimbursement thereof, be subrogated to the security rights described in the foregoing paragraph.~~ be entitled to recover the amount it paid
48   ~~plus five hundred percent (500%) of that amount out of the proceeds from the sale of the defaulting party's share of oil and/or gas; and, to~~ ~~secure payment thereof, be subrogated to the security rights described in the foregoing paragraph. Notwithstanding anything contained to the~~
49   ~~contrary in this paragraph, all parties agree that this provision shall not apply to any operation requiring an AFE unless Operator has advance~~ ~~billed all parties for their proportionate share of said costs in accordance with other provisions of this agreement.~~

51   **C.   Payments and Accounting:**

53      Except as herein otherwise specifically provided, Operator shall promptly pay and discharge expenses incurred in the development
54   and operation of the Contract Area pursuant to this agreement and shall charge each of the parties hereto with their respective propor-
55   tionate shares upon the expense basis provided in Exhibit "C". Operator shall keep an accurate record of the joint account hereunder,
56   showing expenses incurred and charges and credits made and received.

58      Operator, at its election, shall have the right from time to time to demand and receive from the other parties payment in advance
59   of their respective shares of the estimated amount of the expense to be incurred in operations hereunder during the next succeeding
60   month, which right may be exercised only by submission to each such party of an itemized statement of such estimated expense, together
61   with an invoice for its share thereof. Each such statement and invoice for the payment in advance of estimated expense shall be submitted
62   on or before the 20th day of the next preceding month. Each party shall pay to Operator its proportionate share of such estimate within
63   fifteen (15) days after such estimate and invoice is received. If any party fails to pay its share of said estimate within said time, the amount
64   due shall bear interest as provided in Exhibit "C" until paid. Proper adjustment shall be made monthly between advances and actual ex-
65   pense to the end that each party shall bear and pay its proportionate share of actual expenses incurred, and no more.

67   **D.   Limitation of Expenditures:**

69      1. Drill or Deepen:  Without the consent of all parties, no well shall be drilled or deepened, except any well drilled or deepened
70   pursuant to the provisions of Article VI.B.2. of this agreement. Consent to the drilling or deepening shall include:

A.A.P.L. FORM 610 - MOL__ FORM OPERATING AGREEMENT - 1~o2

### ARTICLE VII
### continued

1  ☑  *Option No. 1: All necessary expenditures for the drilling or deepening, testing, completing and equipping of the well, including
2  necessary tankage and/or surface facilities. *This Option No. 1 shall apply only to water source and/or water injection wells.
3
4  ☑  **Option No. 2: All necessary expenditures for the drilling or deepening and testing of the well. When such well has reached its
5  authorized depth, and all tests have been completed, and the results thereof furnished to the parties, Operator shall give immediate notice
6  to the Non-Operators who have the right to participate in the completion costs. The parties receiving such notice shall have ─ forty-eight        twenty-four (24) hours
7  (48) hours (exclusive of Saturday, Sunday and legal holidays) in which to elect to participate in the setting of casing and the completion at-
8  tempt. Such election, when made, shall include consent to all necessary expenditures for the completing and equipping of such well, in-
9  cluding necessary tankage and/or surface facilities. Failure of any party receiving such notice to reply within the period above fixed shall
10 constitute an election by that party not to participate in the cost of the completion attempt. If one or more, but less than all of the parties,
11 elect to set pipe and to attempt a completion, the provisions of Article VI.B.2. hereof (the phrase "reworking, ─ deepening or plugging     recompleting, sidetracking
12 back" as contained in Article VI.B.2. shall be deemed to include "completing") shall apply to the operations thereafter conducted by less
13 than all parties. **This Option No. 2 shall cover all wells except those expressly covered by Option No. 1 above.
14
15     2. Rework or Plug Back:  Without the consent of all parties, no well shall be reworked or plugged back except a well reworked or
16 plugged back pursuant to the provisions of Article VI.B.2. of this agreement. Consent to the reworking or plugging back of a well shall
17 include all necessary expenditures in conducting such operations and completing and equipping of said well, including necessary tankage
18 and/or surface facilities.
19                                            Two or more Parties owning a majority interest
20     3. Other Operations:  Without the consent of ─ all parties, Operator shall not undertake any single project reasonably estimated
21 to require an expenditure in excess of _____ Fifty Thousand and No/100-------- _____ Dollars ($_____ 50,000.00 _____ )
22 except in connection with a well, the drilling, reworking, ─ deepening, completing, recompleting, or plugging back of which has been      sidetracking
23 previously authorized by or pursuant to this agreement; provided, however, that, in case of explosion, fire, flood or other sudden
24 emergency, whether of the same or different nature, Operator may take such steps and incur such expenses as in its opinion are required
25 to deal with the emergency to safeguard life and property but Operator, as promptly as possible, shall report the emergency to the other
26 parties. If Operator prepares an authority for expenditure (AFE) for its own use, Operator shall furnish any Non-Operator so requesting
27 an information copy thereof for any single project costing in excess of _____ Fifty Thousand and No/100--------
28 Dollars ($_____ 50,000.00 _____ ) but less than the amount first set forth above in this paragraph.
29
30 E.  Rentals, Shut-in Well Payments and Minimum Royalties:
31
32     Rentals, shut-in well payments and minimum royalties which may be required under the terms of any lease shall be paid by the
33 party or parties who subjected such lease to this agreement at its or their expense. In the event two or more parties own and have con-
34 tributed interests in the same lease to this agreement, such parties may designate one of such parties to make said payments for and on
35 behalf of all such parties. Any party may request, and shall be entitled to receive, proper evidence of all such payments. In the event of
36 failure to make proper payment of any rental, shut-in well payment or minimum royalty through mistake or oversight where such pay-
37 ment is required to continue the lease in force, any loss which results from such non-payment shall be borne in accordance with the pro-
38 visions of Article IV.B.3.3.
39
40     Operator shall notify Non-Operator of the anticipated completion of a shut-in gas well, or the shutting in or return to production
41 of a producing gas well, at least five (5) days (excluding Saturday, Sunday and legal holidays), or at the earliest opportunity permitted by
42 circumstances, prior to taking such action, but assumes no liability for failure to do so. In the event of failure by Operator to so notify
43 Non-Operator, the loss of any lease contributed hereto by Non-Operator for failure to make timely payments of any shut-in well payment
44 shall be borne jointly by the parties hereto under the provisions of Article IV.B.3.
45
46 F.  Taxes:
47
48     Beginning with the first calendar year after the effective date hereof, Operator shall render for ad valorem taxation all property
49 subject to this agreement which by law should be rendered for such taxes, and it shall pay all such taxes assessed thereon before they
50 become delinquent. Prior to the rendition date, each Non-Operator shall furnish Operator information as to burdens (to include, but not
51 be limited to, royalties, overriding royalties and production payments) on leases and oil and gas interests contributed by such Non-
52 Operator. If the assessed valuation of any leasehold estate is reduced by reason of its being subject to outstanding excess royalties, over-
53 riding royalties or production payments, the reduction in ad valorem taxes resulting therefrom shall inure to the benefit of the owner or
54 owners of such leasehold estate, and Operator shall adjust the charge to such owner or owners so as to reflect the benefit of such reduc-
55 tion. If the ad valorem taxes are based in whole or in part upon separate valuations of each party's working interest, then notwithstanding
56 anything to the contrary herein, charges to the joint account shall be made and paid by the parties hereto in accordance with the tax
57 value generated by each party's working interest. Operator shall bill the other parties for their proportionate shares of all tax payments in
58 the manner provided in Exhibit "C".
59
60     If Operator considers any tax assessment improper, Operator may, at its discretion, protest within the time and manner
61 prescribed by law, and prosecute the protest to a final determination, unless all parties agree to abandon the protest prior to final deter-
62 mination. During the pendency of administrative or judicial proceedings, Operator may elect to pay, under protest, all such taxes and any
63 interest and penalty. When any such protested assessment shall have been finally determined, Operator shall pay the tax for the joint ac-
64 count, together with any interest and penalty accrued, and the total cost shall then be assessed against the parties, and be paid by them, as
65 provided in Exhibit "C".
66
67     Each party shall pay or cause to be paid all production, severance, excise, gathering and other taxes imposed upon or with respect
68 to the production or handling of such party's share of oil and/or gas produced under the terms of this agreement.
69
70

A.A.P.L. FORM 610 - MODᴇᴌ FORM OPERATING AGREEMENT - 1982

### ARTICLE VII
### continued

G. **Insurance:**

At all times while operations are conducted hereunder, Operator shall comply with the workmen's compensation law of the state where the operations are being conducted; provided, however, that Operator may be a self-insurer for liability under said compensation laws in which event the only charge that shall be made to the joint account shall be as provided in Exhibit "C". Operator shall also carry or provide insurance for the benefit of the joint account of the parties as outlined in Exhibit "D", attached to and made a part hereof. Operator shall require all contractors engaged in work on or for the Contract Area to comply with the workmen's compensation law of the state where the operations are being conducted and to maintain such other insurance as Operator may require.

In the event automobile public liability insurance is specified in said Exhibit "D", or subsequently receives the approval of the parties, no direct charge shall be made by Operator for premiums paid for such insurance for Operator's automotive equipment.

### ARTICLE VIII.
### ACQUISITION, MAINTENANCE OR TRANSFER OF INTEREST

A. **Surrender of Leases:**

The leases covered by this agreement, insofar as they embrace acreage in the Contract Area, shall not be surrendered in whole or in part unless all parties consent thereto.

However, should any party desire to surrender its interest in any lease or in any portion thereof, and the other parties do not agree or consent thereto, the party desiring to surrender shall assign, without express or implied warranty of title, all of its interest in such lease, or portion thereof, and any well, material and equipment which may be located thereon and any rights in production thereafter secured, to the parties not consenting to such surrender. If the interest of the assigning party is or includes an oil and gas interest, the assigning party shall execute and deliver to the party or parties not consenting to such surrender an oil and gas lease covering such oil and gas interest for a term of one (1) year and so long thereafter as oil and/or gas is produced from the land covered thereby, such lease to be on the form attached hereto as Exhibit "B". Upon such assignment or lease, the assigning party shall be relieved from all obligations thereafter accruing, but not theretofore accrued, with respect to the interest assigned or leased and the operation of any well attributable thereto, and the assigning party shall have no further interest in the assigned or leased premises and its equipment and production other than the royalties retained in any lease made under the terms of this Article. The party assignee or lessee shall pay to the party assignor or lessor the reasonable salvage value of the latter's interest in any wells and equipment attributable to the assigned or leased acreage. The value of all material shall be determined in accordance with the provisions of Exhibit "C", less the estimated cost of salvaging and the estimated cost of plugging and abandoning. If the assignment or lease is in favor of more than one party, the interest shall be shared by such parties in the proportions that the interest of each bears to the total interest of all such parties.

Any assignment, lease or surrender made under this provision shall not reduce or change the assignor's, lessor's or surrendering party's interest as it was immediately before the assignment, lease or surrender in the balance of the Contract Area; and the acreage assigned, leased or surrendered, and subsequent operations thereon, shall not thereafter be subject to the terms and provisions of this agreement.

B. **Renewal or Extension of Leases:**

If any party secures a renewal of any oil and gas lease subject to this agreement, all other parties shall be notified promptly, and shall have the right for a period of thirty (30) days following receipt of such notice in which to elect to participate in the ownership of the renewal lease, insofar as such lease affects lands within the Contract Area, by paying to the party who acquired it their several proper proportionate shares of the acquisition cost allocated to that part of such lease within the Contract Area, which shall be in proportion to the interests held at that time by the parties in the Contract Area.

If some, but less than all, of the parties elect to participate in the purchase of a renewal lease, it shall be owned by the parties who elect to participate therein, in a ratio based upon the relationship of their respective percentage of participation in the Contract Area to the aggregate of the percentages of participation in the Contract Area of all parties participating in the purchase of such renewal lease. Any renewal lease in which less than all parties elect to participate shall not be subject to this agreement.

Each party who participates in the purchase of a renewal lease shall be given an assignment of its proportionate interest therein by the acquiring party.

The provisions of this Article shall apply to renewal leases whether they are for the entire interest covered by the expiring lease or cover only a portion of its area or an interest therein. Any renewal lease taken before the expiration of its predecessor lease, or taken or contracted for within six (6) months after the expiration of the existing lease shall be subject to this provision; but any lease taken or contracted for more than six (6) months after the expiration of an existing lease shall not be deemed a renewal lease and shall not be subject to the provisions of this agreement.

The provisions in this Article shall also be applicable to extensions of oil and gas leases.

C. **Acreage or Cash Contributions:**

While this agreement is in force, if any party contracts for a contribution of cash towards the drilling of a well or any other operation on the Contract Area, such contribution shall be paid to the party who conducted the drilling or other operation and shall be applied by it against the cost of such drilling or other operation. If the contribution be in the form of acreage, the party to whom the contribution is made shall promptly tender an assignment of the acreage, without warranty of title, to the Drilling Parties in the proportions

- 11 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

### ARTICLE VIII
#### continued

said Drilling Parties shared the cost of drilling the well. Such acreage shall become a separate Contract Area and, to the extent possible, be governed by provisions identical to this agreement. Each party shall promptly notify all other parties of any acreage or cash contributions it may obtain in support of any well or any other operation on the Contract Area. The above provisions shall also be applicable to optional rights to earn acreage outside the Contract Area which are in support of a well drilled inside the Contract Area.

If any party contracts for any consideration relating to disposition of such party's share of substances produced hereunder, such consideration shall not be deemed a contribution as contemplated in this Article VIII.C.

**D.  Maintenance of Uniform Interests:**

~~For the purpose of maintaining uniformity of ownership in the oil and gas leasehold interests covered by this agreement, no party shall sell, encumber, transfer or make other disposition of its interest in the leases embraced within the Contract Area and in wells, equipment and production unless such disposition covers either:~~

~~1.  the entire interest of the party in all leases and equipment and production; or~~

~~2.  an equal undivided interest in all leases and equipment and production in the Contract Area.~~

Every ~~such~~ sale, encumbrance, transfer or other disposition made by any party shall be made expressly subject to this agreement and shall be made without prejudice to the right of the other parties. Any added expenditure required as a result of partial disposition, including but not limited to additional marketing or metering expense, shall be borne solely by the party transferee.

If, at any time the interest of any party is divided among and owned by four or more co-owners, Operator, at its discretion, may require such co-owners to appoint a single trustee or agent with full authority to receive notices, approve expenditures, receive billings for and approve and pay such party's share of the joint expenses, and to deal generally with, and with power to bind, the co-owners of such party's interest within the scope of the operations embraced in this agreement; however, all such co-owners shall have the right to enter into and execute all contracts or agreements for the disposition of their respective shares of the oil and gas produced from the Contract Area and they shall have the right to receive, separately, payment of the sale proceeds thereof.

**E.  Waiver of Rights to Partition:**

If permitted by the laws of the state or states in which the property covered hereby is located, each party hereto owning an undivided interest in the Contract Area waives any and all rights it may have to partition and have set aside to it in severalty its undivided interest therein.

**F.  ~~Preferential Right to Purchase:~~**

~~Should any party desire to sell all or any part of its interests under this agreement, or its rights and interests in the Contract Area, it shall promptly give written notice to the other parties, with full information concerning its proposed sale, which shall include the name and address of the prospective purchaser (who must be ready, willing and able to purchase), the purchase price, and all other terms of the offer. The other parties shall then have an optional prior right, for a period of ten (10) days after receipt of the notice, to purchase on the same terms and conditions the interest which the other party proposes to sell; and, if this optional right is exercised, the purchasing parties shall share the purchased interest in the proportions that the interest of each bears to the total interest of all purchasing parties. However, there shall be no preferential right to purchase in those cases where any party wishes to mortgage its interests, or to dispose of its interests by merger, reorganization, consolidation, or sale of all or substantially all of its assets to a subsidiary or parent company or to a subsidiary of a parent company, or to any company in which any one party owns a majority of the stock.~~

### ARTICLE IX.
### INTERNAL REVENUE CODE ELECTION

This agreement is not intended to create, and shall not be construed to create, a relationship of partnership or an association for profit between or among the parties hereto. Notwithstanding any provision herein that the rights and liabilities hereunder are several and not joint or collective, or that this agreement and operations hereunder shall not constitute a partnership, if, for federal income tax purposes, this agreement and the operations hereunder are regarded as a partnership, each party hereby affected elects to be excluded from the application of all of the provisions of Subchapter "K", Chapter 1, Subtitle "A", of the Internal Revenue Code of 1954, as permitted and authorized by Section 761 of the Code and the regulations promulgated thereunder. Operator is authorized and directed to execute on behalf of each party hereby affected such evidence of this election as may be required by the Secretary of the Treasury of the United States or the Federal Internal Revenue Service, including specifically, but not by way of limitation, all of the returns, statements, and the data required by Federal Regulations 1.761. Should there be any requirement that each party hereby affected give further evidence of this election, each such party shall execute such documents and furnish such other evidence as may be required by the Federal Internal Revenue Service or as may be necessary to evidence this election. No such party shall give any notices or take any other action inconsistent with the election made hereby. If any present or future income tax laws of the state or states in which the Contract Area is located or any future income tax laws of the United States contain provisions similar to those in Subchapter "K", Chapter 1, Subtitle "A", of the Internal Revenue Code of 1954, under which an election similar to that provided by Section 761 of the Code is permitted, each party hereby affected shall make such election as may be permitted or required by such laws. In making the foregoing election, each such party states that the income derived by such party from operations hereunder can be adequately determined without the computation of partnership taxable income.

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

### ARTICLE X.
### CLAIMS AND LAWSUITS

Operator may settle any single uninsured third party damage claim or suit arising from operations hereunder if the expenditure does not exceed ___Ten Thousand and No/100 --------------------------------------------------------------------------------- Dollars ($_____10,000.00_____) and if the payment is in complete settlement of such claim or suit. If the amount required for settlement exceeds the above amount, the parties hereto shall assume and take over the further handling of the claim or suit, unless such authority is delegated to Operator. All costs and expenses of handling, settling, or otherwise discharging such claim or suit shall be at the joint expense of the parties participating in the operation from which the claim or suit arises. If a claim is made against any party or if any party is sued on account of any matter arising from operations hereunder over which such individual has no control because of the rights given Operator by this agreement, such party shall immediately notify all other parties, and the claim or suit shall be treated as any other claim or suit involving operations hereunder. All claims or suits involving title to any interest subject to this Agreement shall be treated as a claim or suit against all parties hereto.

### ARTICLE XI.
### FORCE MAJEURE

If any party is rendered unable, wholly or in part, by force majeure to carry out its obligations under this agreement, other than the obligation to make money payments, that party shall give to all other parties prompt written notice of the force majeure with reasonably full particulars concerning it; thereupon, the obligations of the party giving the notice, so far as they are affected by the force majeure, shall be suspending during, but no longer than, the continuance of the force majeure. The affected party shall use all reasonable diligence to remove the force majeure situation as quickly as practicable.

The requirement that any force majeure shall be remedied with all reasonable dispatch shall not require the settlement of strikes, lockouts, or other labor difficulty by the party involved, contrary to its wishes; how all such difficulties shall be handled shall be entirely within the discretion of the party concerned.

The term "force majeure", as here employed, shall mean an act of God, strike, lockout, or other industrial disturbance, act of the public enemy, war, blockade, public riot, lightning, fire, storm, flood, explosion, governmental action, governmental delay, restraint or inaction, unavailability of equipment, and any other cause, whether of the kind specifically enumerated above or otherwise, which is not reasonably within the control of the party claiming suspension.

### ARTICLE XII.
### NOTICES

All notices authorized or required between the parties and required by any of the provisions of this agreement, unless otherwise specifically provided, shall be given in writing by mail or telegram, postage or charges prepaid, or by telex or telecopier and addressed to the parties to whom the notice is given at the addresses listed on Exhibit "A". The originating notice given under any provision hereof shall be deemed given only when received by the party to whom such notice is directed, and the time for such party to give any notice in response thereto shall run from the date the originating notice is received. The second or any responsive notice shall be deemed given when deposited in the mail or with the telegraph company, with postage or charges prepaid, or sent by telex or telecopier. Each party shall have the right to change its address at any time, and from time to time, by giving written notice thereof to all other parties.

### ARTICLE XIII.
### TERM OF AGREEMENT

This agreement shall remain in full force and effect as to the oil and gas leases and/or oil and gas interests subject hereto for the period of time selected below; provided, however, no party hereto shall ever be construed as having any right, title or interest in or to any lease or oil and gas interest contributed by any other party beyond the term of this agreement.

☑   Option No. 1: So long as any of the oil and gas leases subject to this agreement remain or are continued in force as to any part of the Contract Area, whether by production, extension, renewal, or otherwise.

☐   Option No. 2: In the event the well described in Article VI.A., or any subsequent well drilled under any provision of this agreement, results in production of oil and/or gas in paying quantities, this agreement shall continue in force so long as any such well or wells produce, or are capable of production, and for an additional period of _____ days from cessation of all production; provided, however, if, prior to the expiration of such additional period, one or more of the parties hereto are engaged in drilling, reworking, deepening, plugging back, testing or attempting to complete a well or wells hereunder, this agreement shall continue in force until such operations have been completed and if production results therefrom, this agreement shall continue in force as provided herein. In the event the well described in Article VI.A., or any subsequent well drilled hereunder, results in a dry hole, and no other well is producing or capable of producing oil and/or gas from the Contract Area, this agreement shall terminate unless drilling, deepening, plugging back or reworking operations are commenced within _____ days from the date of abandonment of said well.

It is agreed, however, that the termination of this agreement shall not relieve any party hereto from any liability which has accrued or attached prior to the date of such termination.

- 13 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

ARTICLE XIV.
COMPLIANCE WITH LAWS AND REGULATIONS

A.    Laws, Regulations and Orders:

This agreement shall be subject to the conservation laws of the state in which the Contract Area is located, to the valid rules, regulations, and orders of any duly constituted regulatory body of said state; and to all other applicable federal, state, and local laws, ordinances, rules, regulations, and orders.

B.    Governing Law:

This agreement and all matters pertaining hereto, including, but not limited to, matters of performance, non-performance, breach, remedies, procedures, rights, duties, and interpretation or construction, shall be governed and determined by the law of the state in which the Contract Area is located. If the Contract Area is in two or more states, the law of the state of _____Alabama_____ shall govern.

C.    Regulatory Agencies:

Nothing herein contained shall grant, or be construed to grant, Operator the right or authority to waive or release any rights, privileges, or obligations which Non-Operators may have under federal or state laws or under rules, regulations or orders promulgated under such laws in reference to oil, gas and mineral operations, including the location, operation, or production of wells, on tracts offsetting or adjacent to the Contract Area.

With respect to operations hereunder, Non-Operators agree to release Operator from any and all losses, damages, injuries, claims and causes of action arising out of, incident to or resulting directly or indirectly from Operator's interpretation or application of rules, rulings, regulations or orders of the Department of Energy or predecessor or successor agencies to the extent such interpretation or application was made in good faith. Each Non-Operator further agrees to reimburse Operator for any amounts applicable to such Non-Operator's share of production that Operator may be required to refund, rebate or pay as a result of such an incorrect interpretation or application, together with interest and penalties thereon owing by Operator as a result of such incorrect interpretation or application.

Non-Operators authorize Operator to prepare and submit such documents as may be required to be submitted to the purchaser of any crude oil sold hereunder or to any other person or entity pursuant to the requirements of the ~~"Crude Oil Windfall Profit Tax Act of 1980", as same may be amended from time to time ("Act"),~~ and any valid regulations or rules which may be issued by the Treasury Department from time to time pursuant to said ~~[ ]~~ any Act. Each party hereto agrees to furnish any and all certifications or other information which is required to be furnished by said Act in a timely manner and in sufficient detail to permit compliance with said Act.

ARTICLE XV.
OTHER PROVISIONS

(See attached page 14-1 through 14-8)

ARTICLE XV.

OTHER PROVISIONS

A. PRECEDENCE OF OPERATIONS

Where a well that has been authorized under the terms of this Agreement by all parties, has been drilled to the proposed depth or the objective formation, or a depth at which further drilling is impractical, whichever is the lesser, and the consenting parties participating in the well cannot agree upon the sequence and timing of further operations regarding such well, the following elections shall control in the order enumerated below:

(1) an election to perform additional logging, coring or testing;
(2) an election to attempt to complete the well at the deepest drilled depth proposed for completion by any Party;
(3) an election to plug back and attempt to complete the well in a shallower depth or formation;
(4) an election to deepen the well;
(5) an election to sidetrack the well;
(6) an election to rework the well by generally accepted stimulation techniques whether or not the well had previously produced in commercial quantities or is capable of commercial production;
(7) an election to temporarily abandon the well;
(8) an election to plug and abandon the well.

It is provided, however, that if at any time said consenting parties are considering the above election, the wellbore is in such a condition that, in the opinion of two or more Parties with a majority of the consenting parties in possessory, cost-bearing interest (and not in number), a reasonably prudent operator would not conduct the operations contemplated by the particular election involved for fear of placing the hole in jeopardy or losing the same prior to completing the well in the objective depth or objective formation, such election shall not be given the priority herein above set forth. In such event, the operation, which, in the opinion of two or more Parties with a majority of the consenting parties in possessory, cost bearing interest (and not in number) is less likely to jeopardize the well, will be given priority. Should the consenting parties be equally divided in their opinion, then the opinion of the Operator shall prevail. It is further understood that if some, but not all parties, elect to participate in the additional logging, coring, or testing, they may do so at their expense and risk, but should the party or parties not participate in such additional logging, coring, or testing, later elect to participate in a proposed operation based on the information obtained from the additional logging, coring, or testing, then the party or parties so electing shall be required to pay their proportionate share of the cost of said logging, coring, or testing, and shall be entitled to the logs, cores or the results of the tests. For the purpose of this paragraph the proposed depth shall be the depth as set forth in the AFE or in the proposal for the proposed operation, and the objective formation shall be the formation as set forth in the AFE or in the proposal for the proposed operation. Notwithstanding anything to the contrary contained in this Article XV.A, an election supported by two or more consenting parties owning at least two-thirds (2/3rds) of the cost bearing interest in the well shall control regardless of where that election falls in the preference of operations set forth above.

B. HOLIDAYS

The word "holidays" when used herein is defined as a legal holiday observed by the United States government and its agencies.

C. INITIAL WELL

The parties hereto understand and agree that the Initial Well described in Article VI A herein refers to the same well described in Section 1.2 of that certain Participation Agreement dated November 1, 2006, to which this agreement is attached as Exhibit "D". If a party elects or is deemed to have elected not to participate in the completion of the Initial Well, or fails to pay all of its share of the actual costs to complete that well, then such party shall be deemed a "Non-Participating Party" or "Non-Participant" in said Initial Well and shall automatically be deemed to have relinquished and forfeited all of its interest, including but not limited to its leasehold, oil and gas interests and contractual rights in and to the Initial Well, the Contract Area and the AMI. In the event an assignment of oil and gas interests, leasehold or contractual rights have been made to such Party electing not to participate in the Initial Well, the Non-Participating Party agrees hereby to promptly assign to Operator as agent on behalf of the Consenting Parties, all of its right, title and interest in all oil and gas leases and oil and gas interests covering lands located within the Contract Area and AMI, and such Non-Participating Party agrees and shall perform all necessary acts to evidence such relinquishment and forfeiture. Any such Non-Participating Party's Assignment shall be without warranty, except by, through and under Assignor, and shall be delivered to the Operator within thirty (30) days of the request for such Assignment. Operator shall assign such Non-Participating Party's interests in oil and gas leases and/or oil and gas interests to the Consenting Party or

Parties, or their designee, their proportionate share of such forfeited Non-Participating Party's interest in the entire Contract Area and AMI. This forfeiture shall be without prejudice and in addition to the rights of the Parties under Articles VII and XV.E of this agreement. Notwithstanding the aforesaid, if a party elects not to participate in the completion of the Initial Well, forfeiture of its interest as herein provided shall only apply in the event two (2) or more of the cost bearing parties owning a minimum of sixty percent (60%) elect and participate in setting production pipe and completion of said well.

D. DISPUTES AS TO PROPOSED DEPTHS

If during the drilling of any well drilled hereunder, a bona fide dispute shall exist as to whether the proposed depth has been reached in such well (as for example, whether a well has been drilled to a depth sufficient to test a particular sand or formation or if the well has reached the stratigraphic equivalent of a particular depth), the opinion of two or more Parties with a majority of ownership of the total possessory, cost-bearing interest (and not in number) of the owners as shown by Exhibit "A" shall control and be binding upon all parties. If the parties are equally divided, the opinion of the Operator will prevail.

E. ADVANCEMENT OF COSTS

Notwithstanding any other provisions herein, Operator shall have the right to request and receive from each Non-Operator payment(s) in advance of its respective share of (i) the dry hole cost for the initial well to be drilled under Article VI A, (ii) the dry hole cost for any other well to be drilled hereunder to which such Non-Operator has consented, and (iii) the cost of any completion, reworking, recompletion, sidetracking, deepening or plugging back operation to which such Non-Operator has consented (any such operation under clause (i), (ii), or (iii) being herein called a "Drilling Operation"). Such request for advance payment may be made upon all Non-Operators or upon any one or more of them to the exclusion of others, and shall be made in writing no earlier than thirty (30) days prior to the anticipated commencement date for such Drilling Operation. The amount of each Non-Operator's advance payment shall be based upon the latest AFE for such operation. Such advanced payments shall be held by Operator for the account of the Non-Operators and applied, with interest, against the actual costs incurred in the applicable operation.

A Non-Operator receiving a request for advance payment shall, within two (2) days of the receipt of such request if and when a drilling rig is on location and within fifteen (15) days of the receipt of such request in all other cases, pay to Operator by wire transfer, check or other ready funds the full amount of such request. Operator shall credit the amount to the Non-Operator's account for the payment of such Non-Operator's share of costs of such Drilling operation, and following the end of each month Operator shall charge such account with such Non-Operator's share of actual costs incurred during such month.

Payment in advance shall in no event relieve a Non-Operator of its obligation to pay its share of the actual cost of a Drilling Operation, and when the actual costs have been determined, Operator shall adjust the accounts of the parties by refunding any net amounts due or invoicing the parties for additional sums owing, which additional sums shall be paid in accordance with the Accounting Procedure as set forth in Exhibit "C" to this Agreement.

In the event a Non-Operator to which a request for advance payment was made does not, within the time and manner above provided, fully satisfy the request for advance payment by tendering ready funds as aforesaid, then Operator, at its option, shall make a second written or telephonic request for such advance. Non-Operator shall pay for said advance as aforesaid within two (2) days from delivery of such second request.

If a Non-Operator fails to pay within two (2) days of the delivery of such second request, then:

(1) If the advance payment was requested for the drilling of the Initial Well under Article VI.A, Non-Operator may, at the sole discretion and timing election of the Operator, be deemed to have relinquished all of its interests in the oil and gas leases and/or oil and gas interests covering lands located in the Contract Area and AMI retroactive to the date of default in payment, and if assignment has been made to such Non-Operator, Non-Operator shall assign all of such rights, within thirty (30) days of a request for such assignment, to those parties who have participated in such Drilling Operation, in the proportion that such parties share the relinquished interest.

(2) If the advance payment was requested for any other Drilling Operation (including completion of the initial well), Non-Operator may, at the sole discretion and timing election of the Operator, be deemed non-consent in said operation retroactive to the beginning of such operation and thereafter subject to the risk compensation provisions of Article VI.B.2 hereof.

Page 14-2

If the Non-Operator fails to make such payment within two (2) business days of the receipt of such second request, Operator shall promptly notify all other Consenting Parties to such Drilling Operation of the default in payment and if and when applicable, of the relinquishment of an interest under this provision. The Consenting Parties who wish to participate in the Drilling Operation shall have five (5) days from receipt of the applicable notice to elect to assume the costs chargeable to such relinquished interest and shall share such relinquished interest in proportion to their assumption of such relinquished interest. If the Consenting Parties who wish to participate in the Drilling Operation are unwilling to assume the costs chargeable to such relinquished interest, the Drilling Operation shall be cancelled and the forfeiture described above shall not take effect.

Notwithstanding anything to the contrary herein, if the applicable drill well or operation is unsuccessful or results in a dry hole, Operator and Non-Operator(s) shall have the right to sue a Party who failed to pay for its proportionate share of expenses in lieu of a Party's right to an assignment of all Non-Operator's leasehold and contractual rights within the Contract Area, or in lieu of deeming the Party Non-Consent.

F.  NECESSARY EXPENDITURES EXCLUDE SIDETRACKING

The phrase "necessary expenditures" in Article VII.D.1. (Option No. 2) on page 10 shall not be deemed to include sidetracking operations, unless specifically included in an Authority for Expenditure approved by the participating parties.

G.  ADDITIONAL CHARGES

Notwithstanding anything to the contrary contained in this Operating Agreement or the Accounting Procedure (Exhibit "C"), the following items pertaining to the Unit Area shall not be considered as administrative overhead, but the Operator shall be entitled to make a direct charge against the Joint Account for same: Long distance telephone call, fees for legal services, overnight mail, title costs (including curative), costs and expenses in connection with preparation and presentation of evidence and exhibits of State Oil and Gas Board of Alabama hearings, preparation and handling of application to and hearings before other governmental agencies or regulatory bodies.

H.  INDEMNITY

Except for liabilities resulting from the gross negligence or willful misconduct of the Operator, each Non-Operator shall defend, indemnify and hold Operator harmless against any and all claims, causes of action, debts, liabilities and other responsibilities whatsoever arising out of Operator's performance of its obligations hereunder for and on behalf of the Non-Operators.

I.  RECOUPMENT

In the event that (i) any party hereto refuses to participate in any operation proposed under this Agreement and who is, as consequence thereof, subject to forfeiture of his interest, and (ii) such party is, at that time, in an imbalance situation with either overproduction or underproduction, then the mechanism established in Exhibit "E" to correct such imbalances shall prevail.

J.  SEVERABILITY

If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any rule of law or public policy, all other conditions and provisions of this agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any party. Upon any binding determination that any term or other provision is invalid, illegal or incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in an acceptable and legally enforceable manner.

K.  NO WAIVERS

No failure or delay by any party in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or exercise of any other right, power or privilege. The rights and remedies herein provided shall be cumulative and not exclusive of any rights or remedies provided by law.

Page 14-3

L. GAS MARKETING

Upon request by Non-Operators, Operator agrees to make a good faith effort to market Non-Operator's share of all production of oil, gas and related hydrocarbons produced from the Contract Area under the same terms and conditions as Operator markets its own. Nothing herein shall be construed as establishing a fiduciary relationship between Operator and Non-Operators.

M. AREA OF MUTUAL INTEREST

The parties hereby create an Area of Mutual Interest ("AMI") consisting of the lands outlined by a bold red line on the plat attached hereto as Exhibit "A-2". This AMI shall remain in force and effect for a term of five (5) years from the date of this Agreement and, insofar and only insofar as the AMI includes lands covered by oil and gas leases and/or oil and gas interests subject to this Agreement, as long thereafter as said oil and gas leases and/or oil and gas interests remain in force and effect. This AMI shall terminate after five (5) years as to all such lands not covered by oil and gas leases and/or oil and gas interests subject to this Agreement.

During the term of this AMI, if any party hereto, including related persons or entities, ("Acquiring Party") directly or indirectly acquires any oil and gas lease or any oil and gas interest covering lands lying within the AMI, the Acquiring Party shall promptly advise the other parties ("Offerees") of such acquisition. In such event, each Offeree shall have the right to acquire its proportionate interest in such oil and gas lease and/or oil and gas interest in accordance with the other provisions of this AMI.

Promptly upon acquiring such oil and gas lease and/or oil and gas interest, the Acquiring Party shall, in writing, advise the Offerees of such acquisition. The notice shall include a copy of all instruments of acquisition including, by way of example but not of limitation, copies of the leases, assignments, subleases, farmouts or other contracts affecting the oil and gas lease and/or oil and gas interest.

The Acquiring Party shall also enclose an itemized statement of the actual costs and expenses incurred by the Acquiring Party in acquiring such oil and gas lease and/or oil and gas interest ("Acquisition costs"). The Offeree shall have a period of fifteen (15) days after receipt of the notice within which to furnish the Acquiring Party written notice of its election to acquire its proportionate interest in the offered oil and gas lease and/or oil and gas interest. If, however, a well in search of oil or gas is being drilled within the AMI, each Offeree shall have a period of twenty-four (24) hours (excluding Saturdays, Sundays and legal holidays) after delivery of the notice within which to elect to acquire its proportionate interest in the oil and gas lease and/or oil and gas interest so offered. It is provided, however, that the twenty-four (24) hour election period shall not apply unless the Acquiring Party shall give the notice to the Offerees within two (2) days after the date on which the Acquiring Party acquired the oil and gas lease and/or oil and gas interest so offered. In addition thereto, the Acquiring Party shall also:

    (a)    furnish the Offerees with the approximate location of the well then being drilled and the name of the operator or drilling contractor drilling the well, and

    (b)    specifically advise the Offerees that the Offerees shall have a period of twenty-four (24) hours within which to elect to acquire an interest in the offered Oil and Gas Interest.

The above information shall be in addition to the information and copies of instruments provided for above in connection with the usual notices of acquisition of an oil and gas lease and/or oil and gas interest. If the Acquiring Party does not receive actual written notice of election of an Offeree to acquire its proportionate interest within the fifteen (15) day or twenty-four (24) hour period, as the case may be, such failure shall constitute an election by such Offeree not to acquire its interest therein. An Offeree accepting the offered interest shall be entitled to participate in such oil and gas lease and/or oil and gas interest in the proportion to which its interest bears to the total interest of all parties (including the acquiring party) electing to participate. Promptly after the time for election expires, the Acquiring Party shall invoice the Offeree electing to acquire an interest for its proportionate part of the Acquisition Cost, as reflected by the invoice. Upon receipt of such reimbursement, the Acquiring Party shall execute and deliver an appropriate assignment to such Offeree. If the Acquiring Party does not receive the amount due from the Offeree within thirty (30) days after receipt by the Offeree of the invoice for its cost, the Acquiring Party may, at its election, give written notice to such delinquent party that the failure of the Acquiring Party to receive the amount due within five (5) days after receipt of such written notice by the delinquent Offeree shall constitute a withdrawal by the delinquent Offeree of its former election to acquire the interest, and such Offeree shall no longer have the right to acquire an interest in the offered oil and gas lease and/or oil and gas interest.

Page 14-4

Any assignment made by the Acquiring Party shall be made free and clear of any liens, encumbrances, overriding royalty interests and other burdens created by or arising under the Acquiring Party but otherwise without warranty of title, either express or implied. The assignment shall be made and accepted subject to, and each assignee shall expressly assume its portion of all of the obligations of the Acquiring Party. The assignment shall also be made and accepted subject to this Agreement.

If two (2) or more separate oil and gas leases and/or oil and gas interests are included in the same notice, the Offeree shall have the separate right of election as to each separate oil and gas lease and/or oil and gas interest.

The provisions of this AMI shall not apply to acquisitions as a result of merger, consolidation, reorganization or an acquisition from a parent, subsidiary, or affiliated corporation, or as to individuals, from ascendants or descendants or trusts of which such parties are beneficiaries. Neither shall it apply to sales and acquisitions between partners in a partnership or venturers in a joint venture, or to any acquisition by any party of an interest which interest prior to and at the time of such acquisition was subject to this Agreement, unless such acquisition was the renewal or extension of a lease which at the date of expiration was subject to this Agreement.

Renewals and extensions of oil and gas lease(s) and/or oil and gas interest(s) shall be subject to Article VIII.B of this Agreement.

Notwithstanding any provisions contained in this Article XV.M, or otherwise in this agreement, The Rudman Partnership has no obligation to offer any oil and gas leases and/or oil and gas interests covering lands located within the blue outline on said Exhibit "A-2" (and being further identified as Sections 27, 28, 29, 32, 33 and 34, Township 4 North, Range 13 East, Conecuh County, Alabama) to the other Non-Operators, and neither Operator nor the other Non-Operators have any obligation to offer The Rudman Partnership any oil and gas leases and/or oil and gas interests covering lands located within that blue outline. The Non-Operators other than The Rudman Partnership shall have the right to share in any oil and gas leases and/or oil and gas interests covering lands located within that blue outline in proportion to which their interest bears to one another, excluding the interest of The Rudman Partnership.

N. OPERATOR'S and NON OPERATORS' LIEN – SECURITY INTEREST

At the request of Operator, each Non-Operator agrees to execute and furnish Operator for filing in the records of Cherokee County, Texas a Memorandum of Operating Agreement in a form suitable to Operator for the purpose of perfecting and giving effect to the lien described in Article VII.B of this Agreement.

If written notice has been given that the lien rights conferred in Article VII.B have been implemented or enforced against any party hereto, for so long as the affected party remains in default, it shall have no further access to the Contract Area or information obtained in connection with operations hereunder and shall not be entitled to vote its interest in any matter hereunder. As to any proposed operation in which it otherwise would have the right to participate, such party shall not have the right to elect to participate or be a Consenting Party unless and until it pays in full the amount it is in default plus all other outstanding amounts due hereunder. If an operation proposed during such default period commences before such payment in full, the party in default shall automatically be deemed a Non-Consenting Party to the operation.

O. METERING OF PRODUCTION

In the event of transfer, sale, encumbrance or other disposition of interest within the Contract Area, which creates the necessity of separate measurement of production, the party creating the necessity for such measurement shall alone bear the cost of purchase, installation and operation of such facilities.

P. PLUGGING AND LEASEHOLD RESTORATION FUND

At any time any well subject to this agreement is approaching the end of its economic life and/or its useful purpose, upon the approval of two or more Parties with a majority of ownership of the total possessory, cost-bearing interest (and not in number) of the owners as shown by Exhibit "A", Operator may pre-bill the joint account an amount which is reasonably estimated to plug and abandon such well and restore the leasehold premises at the well-site location. Such amount shall be invested in an interest bearing certificate of deposit, and the principal and interest therefrom utilized to offset the actual costs of plugging and abandonment and restoration of the leasehold premises. In the event actual costs are less than the estimate, each working interest owner will be issued a refund of the difference, together with any

Page 14-5

accrued interest on such difference, based upon the then working interest percentage of such owner. In the event the actual costs exceed the estimate, each owner agrees to pay its proportionate share of the expenses over and above the estimated and pre-billed amount.

Q. SEPARATE AGREEMENT FOR NON-UNIFORM INTEREST

Any oil and gas lease and/or oil and gas interest that is either (i) described in Exhibit "A-1" to this Agreement or (ii) that is both acquired after the effective date of this Agreement and covered by Article VIII.B, VIII.C or XV.M of this Agreement, that thereafter becomes owned by only one of the parties hereto shall not be subject to this Agreement from and after the date such lease and/or interest becomes so owned. Any oil and gas lease and/or oil and gas interest acquired after the effective date of this Agreement and covered by Article VII.B, VIII.C or XV.M of this Agreement, that becomes owned by more than one but less than all of the parties hereto shall remain subject to this Agreement as to the parties who own an interest therein, but Operator is authorized to modify Exhibit "A" to this Agreement to reflect the parties' interests in each such oil and gas lease and/or oil and gas interest. Operator is further authorized to modify said Exhibit "A" to this Agreement to reflect the parties' interests in each well subject to this Agreement.

R. OBLIGATORY WELL

Notwithstanding the provisions of this agreement and particularly Article VI.B, if any proposed operations are necessary to maintain a an oil and gas lease and/or oil and gas interest covered by this Agreement in force or an agreement to earn an oil and gas lease and/or oil and gas interest which would otherwise expire unless such operations are conducted, then in lieu of being penalized under Article VI.B.2., each Non-Consenting Party shall assign to Consenting Parties all of such Non-Consenting Party's right, title and interest in and to the oil and gas lease(s) and/or oil and gas interest(s) or portion thereof or such agreement which would be lost or not earned if such operations were not conducted. Such assignment shall be promptly due upon commencement of said proposed operations by Consenting Parties and shall be free and clear of all overriding royalties, production payments, mortgages, liens and other burdens and encumbrances placed thereon by the assigning party or resulting from its ownership or operation thereof which is not a joint obligation of the parties, but otherwise without warranty of title either expressed or implied.

If the assignment is in favor of more than one party, the assigned interest shall be shared by the Consenting Parties in the proportions that the interest of each bears to the interest of all Consenting Parties unless otherwise agreed to in writing. Thereafter, Operator may modify Exhibit "A" to reflect the distinct ownership of such acreage covered by said assignment. Operations that are necessary to either maintain an oil and gas lease and/or oil and gas interest covered by this Agreement in force or to earn an interest in the same or part thereof under an agreement which would otherwise expire unless operations are conducted, shall be defined as operations that are proposed within six (6) months of the date the oil and gas lease and/or oil and gas interest or agreement would otherwise expire.

S. PREVAILING AGREEMENT

If there is a conflict between provisions of the Participation Agreement dated November 1, 2006, to which this Operating Agreement is attached as Exhibit "D", and this Operating Agreement, the provisions of the Participation Agreement shall prevail, and shall be binding upon all parties to this Operating Agreement. In the event of a conflict between any of the additional provisions in Article XV of this Agreement, or any added text in this Agreement, on one hand, and any form text contained in this Agreement, the additional provisions or added text, as the case may be, shall govern and control.

T. NON-PARTICIPATING INTERESTS

Anything to the contrary herein notwithstanding, the parties hereto agree to carry any non-participating oil and gas interest and/or any non-participating leasehold interest in proportion to their respective interests as set out in Exhibit "A" hereto as same may be revised from time to time to reflect record title and/or reformation of the Contract Area.

U. EXECUTION

This agreement shall be binding upon each Non-Operator that executes this agreement without regard to whether this same instrument, or any copy or counterpart hereof shall be executed by any other Non-Operator. This Agreement shall be effective as between the Operator and each Non-Operator who executes this Agreement, regardless of whether all of the Non-Operators execute the same.

Page 14-6

V. MISCELLANEOUS

Anything to the contrary herein notwithstanding, this Operating Agreement is expressly made subject to the terms and provisions of the oil and gas leases and any farmout agreements described in Exhibit "A" hereof. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, devisees, legal representatives, successors and assigns, and the terms hereto shall be deemed to run with the oil and gas leases and/or oil and gas interests subject to this Agreement. The headings used in this Agreement are for convenience only and shall not be considered in the interpretation or construction of the Agreement.

W. NON-CONSENT

Any party that forfeits its interest in a well pursuant to Article VI.B.2 of this Agreement forfeits their interest in the entire well and revenue therefrom, not just a particular Zone therein, for the duration of the recoupment period or, if the risk compensation is never recovered, forever. The parties recognize, however, that applicable rules of the State Oil and Gas Board of Alabama may allow for the drilling and completion of additional wells within the unit for an existing well, and, subject to the other provisions of this Agreement, the forfeiture by one party of its interest in the existing well does not affect that party's right to elect to participate or not to participate in a proposal to drill, or any other operation with respect to, another well, even if the other well is located in the same unit, and even if the new well is completed in the same Zone from which the existing well is producing.

Anything to the contrary hereinabove notwithstanding, any Non-Consenting Party to an operation conducted hereunder shall have no right to observe such operation or subsequent operations within the same well or have access to information pertaining to such operation or subsequent operations, until such time as the Non-Consenting Party's share of the cost of such operation, and any applicable subsequent operations, and the risk compensation therefor has been recovered by the Consenting Parties as provided herein.

X. SOPHISTICATED INVESTORS

By execution of this Agreement, each Non-Operator represents to each other and to Operator: (i) that it has a working knowledge of the oil and gas industry; (ii) that it is a sophisticated investor and has a financial net worth in excess of one million dollars; (iii) that it can afford to take the financial risk associated with participation in an oil and gas drilling venture, including without limitation, loss of leasehold costs, drilling costs, completion costs, and all other costs incurred in operations under this Agreement; (iv) that it ACKNOWLEDGES THERE CAN BE NO ASSURANCE THAT OIL AND/OR GAS WILL BE FOUND, OR IF FOUND, THAT IT CAN BE PRODUCED IN PROFITABLE QUANTITIES; (v) that its interest hereunder has not been registered pursuant to the Federal Securities Act of 1933, as amended, the rules and regulations of the Securities and Exchange Commission promulgated or issued thereunder or the securities laws of the State of Louisiana or Alabama, or any other state ("Securities Law"), and that it owns said interest for investment purposes only, and not with a view to or for sale in connection with any distribution thereof within the meaning of Securities Law.

Y. PAYMENT OF ROYALTIES

Notwithstanding anything to the contrary in this agreement, Operator shall use its best efforts to deliver or cause to be delivered all royalties, overriding royalties, production payments and similar charges to the persons entitled thereto and such charges shall be borne proportionately by the Parties hereto on the basis of their respective ownership of the leases or well. It is provided, however, if the interest of any Party is subject to and burdened with royalties, overriding royalties, production payments, or similar burdens ("additional burdens") which are not borne proportionately by all other Parties hereto, such Party shall account to the owners of the additional burdens for the amount due them or arrange for Operator to handle such payments. Operator shall have no liability for the failure to pay or timely pay any royalties, overriding royalties or other payments to the parties entitled thereto, except such as may result from gross negligence or willful misconduct.

Z. NOTICE FOR RENEWALS OR EXTENSION OF LEASES

With regard to Articles VIII.B. and/or VIII.C., hereof, in the event that a drilling rig is on location, notice may be given by telephone, and the time permitted for participation election shall not exceed forty-eight (48) hours, exclusive of weekends and holidays."

Page 14-7

AA.  WHEN AN AFE IS EXCEEDED BY TWENTY-FIVE PERCENT (25%)

If in drilling any well under the terms of the agreement of the Operator's estimated cumulative costs of operations prior to reaching the proposed depth exceeds 25% of the Authority for Expenditure (AFE) for such well, exclusive of the estimated cost of completion, and for reasons which could not be avoided by abandoning the well (as for example well control costs, fishing costs, etc.), it is agreed that Operator shall promptly advise Non-Operator(s).  If after having received such information all parties agree the operator may plug and abandon the well or take such other acts as the parties may desire.  If the parties cannot agree as to further operations, the following provisions will control:

(1)     If two or more parties with a majority in possessory, cost-bearing interest (and not in number) desire to attempt to complete the well at or above the depth reached, further operation shall be conducted as if the well had been drilled to the proposed depth.  Those not participating in the completion shall be non-consent and subject to the terms of Article VI.B.2 and XV.A above.

(2)     If two or more parties with a majority in possessory, cost-bearing interest (and not in number) elects to continue operations in an attempt to drill the well to the proposed total depth, those not desiring to participate in such further operations may become non-consenting parties subject to the term of Article VI.B.2 and XV.A above.

(3)     If two or more parties with a majority in possessory, cost-bearing interest (and not in number) desire to cease further operations and plug and abandon the well without a completion attempt, any one or more of the parties hereto shall have the right to continue drilling in an effort to reach the depth initially proposed in connection with such well.  All costs, risk and expense incurred after such takeover by the parties shall be at the sole cost, risk and expense of the parties continuing such further operations.  Such parties shall have the right to drill the well to any depth at which they may desire, even beyond the proposed depth.  They shall both plug and abandon and restore the surface or complete and equip the well for production of oil or gas in a formation below that reached after taking over the operation.  If the well is completed for production of oil or gas in a formation below that reached after taking over the operation, the non-consenting parties.  If the parties taking over the operation desire to attempt to complete the well in a formation and at a depth above that reached before the well was taken over by them, they shall notify the non-consenting parties who shall have the right either to participate or not to participate.

BB.     PIPELINES AND OR GATHERING LINE COSNTRUCTION:

Should any party subject to this agreement construct, operate or purchase, or join in the construction, operation or purchase of a pipeline and/or gathering line to transport production from lands covered by the Contract Area; then in that event, such party shall notify the remaining parties furnishing all pertinent cost and information.  The remaining parties shall have the right to participate in the construction, operation and ownership of such pipeline and/or gathering line by assuming its proportionate share of the obligations and paying the cost attributable thereto.

Page 14-8

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

ARTICLE XVI.
MISCELLANEOUS

This agreement shall be binding upon and shall inure to the benefit of the parties hereto and to their respective heirs, devisees, legal representatives, successors and assigns.

This instrument may be executed in any number of counterparts, each of which shall be considered an original for all purposes.

IN WITNESS WHEREOF, this agreement shall be effective as of _____ day of _____ , (year) __2006__ .

_____, who has prepared and circulated this form for execution, represents and warrants that the form was printed from and with the exception listed below, is identical to the AAPL Form 610-1982 Model Form Operating Agreement, as published in diskette form by Forms On-A-Disk, Inc. No changes, alterations, or modifications, other than those in Articles _____ _____, have been made to the form.

OPERATOR

SKLAR EXPLORATION COMPANY L.L.C.

_____
David A. Barlow, Chief Operating Officer

NON-OPERATORS

SKLARCO L.L.C.

_____
David A. Barlow, Chief Operating Officer

McCOMBS ENERGY, LTD.

_____
Ricky Haikin, Vice President

WAC INVESTMENT COMPANY, L.L.C.

_____
Michael E. Riddick, Executive Vice President

PICKENS FINANCIAL GROUP, LLC

_____
Michael R. Pickens, Vice President

- 15 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

ARTICLE XVI.
MISCELLANEOUS

This agreement shall be binding upon and shall inure to the benefit of the parties hereto and to their respective heirs, devisees, legal representatives, successors and assigns.

This instrument may be executed in any number of counterparts, each of which shall be considered an original for all purposes.

IN WITNESS WHEREOF, this agreement shall be effective as of _____ day of _____ , (year) __2006__ .

~~_____, who has prepared and circulated this form for execution, represents and warrants that the form was printed from and with the exception listed below, is identical to the AAPL Form 610-1982 Model Form Operating Agreement, as published in diskette form by Forms On A Disk, Inc. No changes, alterations, or modifications, other than those in Articles _____ _____ have been made to the form.~~

O P E R A T O R

SKLAR EXPLORATION COMPANY L.L.C.

David A. Barlow, Chief Operating Officer

N O N - O P E R A T O R S

SKLARCO L.L.C.

David A. Barlow, Chief Operating Officer

McCOMBS ENERGY, LTD.

Ricky Haikin, Vice President

WAC INVESTMENT COMPANY, L.L.C.

Michael E. Riddick, Executive Vice President

PICKENS FINANCIAL GROUP, LLC

Michael K. Pickens, Vice President

- 15 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

## ARTICLE XVI.
### MISCELLANEOUS

This agreement shall be binding upon and shall inure to the benefit of the parties hereto and to their respective heirs, devisees, legal representatives, successors and assigns.

This instrument may be executed in any number of counterparts, each of which shall be considered an original for all purposes.

IN WITNESS WHEREOF, this agreement shall be effective as of _____ day of _____ , (year) __2006__.

~~_____, who has prepared and circulated this form for execution, represents and warrants that the form was printed from and with the exception listed below, is identical to the AAPL Form 610 1982 Model Form Operating Agreement, as published in diskette form by Forms On A Disk, Inc. No changes, alterations, or modifications, other than those in Articles _____ _____, have been made to the form.~~

### O P E R A T O R

SKLAR EXPLORATION COMPANY L.L.C.

_____
David A. Barlow, Chief Operating Officer

### N O N - O P E R A T O R S

SKLARCO L.L.C.

_____
David A. Barlow, Chief Operating Officer

McCOMBS ENERGY, LTD.

_____
Ricky Haikin, Vice President

WAC INVESTMENT COMPANY, L.L.C.

_____
Michael E. Riddick, Executive Vice President

John R. Gardner,

_____
Gregory L. Rembert

PICKENS FINANCIAL GROUP, LLC

_____
Michael R. Pickens, Vice President

- 15 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

### ARTICLE XVI.
### MISCELLANEOUS

This agreement shall be binding upon and shall inure to the benefit of the parties hereto and to their respective heirs, devisees, legal representatives, successors and assigns.

This instrument may be executed in any number of counterparts, each of which shall be considered an original for all purposes.

IN WITNESS WHEREOF, this agreement shall be effective as of _____ day of _____ , (year) __2006__.

~~_____, who has prepared and circulated this form for execution, represents and warrants that the form was printed from and with the exception listed below, is identical to the AAPL Form 610 1982 Model Form Operating Agreement, as published in diskette form by Forms On A Disk, Inc. No changes, alterations, or modifications, other than those in Articles _____ _____, have been made to the form.~~

OPERATOR

SKLAR EXPLORATION COMPANY L.L.C.

_____
David A. Barlow, Chief Operating Officer

NON-OPERATORS

SKLARCO L.L.C.

_____
David A. Barlow, Chief Operating Officer

Pickens Financial Group's acceptance of this JOA is conditioned upon the inclusion of the following clause in the JOA:

Until receipt by Operator of notice from Non-Operator to discontinue such sales, Operator will market and sell the gas and associated hydrocarbons attributable to the interest of Non-Operator in the Contract Area, will receive the proceeds of such a sale, and will disburse such proceeds (less applicable production and severance taxes) to Non-Operator and the royalty and overriding royalty owners entitled to receive the same, in proportion to their respective interests. To effect such a sale, Operator may enter into contracts for the sale of such gas, provided that no such contract shall extend for a period in excess of one (1) year. Operator will notify Non-Operator promptly of the execution of any contract for the sale of Non-Operator's gas which is to continue for a period in excess of ninety (90) days.

Such gas and associated hydrocarbons shall be sold for a price which is not less than the price Operator receives for its own gas and associated hydrocarbons produced from the Contract Area.

Such authority and responsibility of Operator to market and sell the gas and associated hydrocarbons of Non-Operator may be revoked by Non-Operator by notice to Operator delivered not less than 15 days prior to the date on which such revocation is to become effective. Such a revocation shall not affect the validity of a contract in respect of which Non-Operator has received notice as hereinabove provided.

McCOMBS ENERGY, LTD.

_____
Ricky Haikin, Vice President

WAC INVESTMENT COMPANY, L.L.C.

_____
Michael E. Riddick, Executive Vice President

PICKENS FINANCIAL GROUP, LLC

_____   12/27/06
Michael K. Pickens, Vice President

- 15 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

Signature Page to that
certain Operating Agreement
for the Escambia Prospect,
Escambia County, Alabama.

1
2
3
4
5
6

THE RUDMAN PARTNERSHIP

W.R. (Key) Sidney Jr., Attorney in Fact

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51
52
53
54
55
56
57
58
59
60
61
62
63
64
65
66
67
68
69
70

- 15 -

**EXHIBIT "A"**
ESCAMBIA PROSPECT
CONECUH AND ESCAMBIA COUNTIES, ALABAMA

Attached to and made a part of that certain Operating Agreement dated November
1, 2006, by and between Sklar Exploration Company L.L.C., as Operator, and
Sklarco L.L.C., McCombs Energy, Ltd., WAC Investment Company, LLC, Pickens
Financial Group, LLC, and The Rudman Partnership, as Non-Operators.

(1)    **Identification of lands subject to this agreement:**

**Contract Area***

All lands, oil and gas leasehold interest and
oil and gas interest lying within the following sections as depicted on the black
boundary as shown on the plat designated at Exhibit "A-2":

Sections 1-3, 10-15, 22-27, 34-36, Township 3 North, Range 12 East
Sections 3-10, 15-22, 27-34, Township 3 North, Range 13 East
Sections 25-27, 34-36, Township 4 North, Range 12 East
Sections 27-34, Township 4 North, Range 13 East
Conecuh and Escambia Counties, Alabama

*Insofar and only insofar as it applies to The Rudman Partnership, the Contract Area
shall exclude lands located within the blue outline on the plat attached hereto as Exhibit
"A-2" (and being further identified as Sections 27, 28, 29, 32, 33 and 34, Township 4
North, Range 13 East, Conecuh County, Alabama).

**Area of Mutual Interest****

All lands, oil and gas leasehold interest and
oil and gas interest lying within the following sections as depicated on the red
boundary as shown on the plat designated at Exhibit "A-2":

Sections 1-3, 10-15, 22-27, 34-36, Township 3 North, Range 12 East
Sections 3-10, 15-22, 27-34, Township 3 North, Range 13 East
Sections 25-27, 34-36, Township 4 North, Range 12 East
Sections 27-34, Township 4 North, Range 13 East
Conecuh and Escambia Counties, Alabama

**Insofar and only insofar as it applies to The Rudman Partnership, the AMI shall
exclude lands located within the blue outline on the plat attached hereto as Exhibit "A-2"
(and being further identified as Sections 27, 28, 29, 32, 33 and 34, Township 4 North,
Range 13 East, Conecuh County, Alabama).

(2)    **Restrictions, if any, as to depths, formations, or substances:**

There are no restrictions except as may be provided for in any lease or contract
subject to this Operating Agreement.

(3)    **Decimal interest and names and addresses of Parties to this Agreement:**

| Owners | | BPPO | APPO |
|---|---|---|---|
| Sklarco L.L.C. | | 0.37500000 | 0.53125000 |
| McCombs Energy, Ltd. | | 0.25000000 | 0.18750000 |
| WAC Investment Company, L.L.C. | | 0.20000000 | 0.15000000 |
| Pickens Financial Group, LLC | | 0.05000000 | 0.03750000 |
| The Rudman Partnership | | 0.12500000 | 0.09375000 |
| | Total | 1.00000000 | 1.00000000 |

(4)    **Oil and gas leases and/or oil and gas interests subject to this agreement:**

See Exhibit "A-1" Description of Leases. This Agreement covers not only the oil
and gas leases and/or oil and gas interests described in Exhibit "A-1," but also any oil and
gas leases and/or oil and gas interests acquired after the effective date of this Agreement
and covered by the Participation Agreement to which this Agreement is attached as

Exhibit "E" or Article VIII.B, VIII.C or XV.M of this Agreement. The only jointly owned lease burdens are the lessor's royalty under each of the oil and gas leases described in Exhibit "A-1" and the overriding royalty interest described in Section 1.1 of the Participation Agreement to which this Agreement is attached as Exhibit "D". There are no other joint burdens whatsoever.

(5)    **Addresses of parties for notice purposes:**

Sklar Exploration Company, LLC
Attn: David A. Barlow
401 Edwards Street, Suite 1601
Shreveport, LA 71101
Telephone: (318) 227-8668
Telecopier: (318) 227-9012

Sklarco, LLC
Attn: David A. Barlow
401 Edwards Street, Suite 1601
Shreveport, LA 71101
Telephone: (318) 227-8668
Telecopier: (318) 227-9012

McCombs Energy, Ltd.
Attn: Ricky Haikin, Vice President
5599 San Felipe Street, Suite 1200
Houston, Texas 77056-2721
Telephone: (713) 621-0033
Telecopier: (713) 621-1670

WAC Investment Company, LLC
Attn: Michael E. Riddick, Executive Vice President
333 Texas Street, Suite 2121
Shreveport, Louisiana 71101
Telephone: (318) 222-0026
Telecopier: (318) 429-1600

Pickens Financial Group, LLC
Attn: Michael K. Pickens, Vice President
8499 Greenville Avenue, Suite 105
Dallas, Texas 75231-2417
Telephone: (214) 503-1271
Telecopier: (214) 503-7247

The Rudman Partnership
Attn: W. R. (Trey) Sibley, III, Attorney in Fact
1700 Pacific Avenue, Suite 4700
Dallas, Texas 75201-4670
Telephone: (214) 220-3900
Telecopier: (214) 220-3901

**EXHIBIT "A-1"**

Attached to and made a part of that certain Operating Agreement dated November 1, 2006, by and between Sklar Exploration Company, L.L.C., as Operator, and Sklarco L.L.C., McCombs Energy, Ltd., WAC Investment Company, L.L.C., Pickens Financial Group, LLC, and The Rudman Partnership, as Non-Operators.

## OIL, GAS AND MINERAL LEASES

1. Oil, Gas and Mineral Lease dated December 28, 2005, by and between Cary Page, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2022 of the Probate Judge Records of Conecuh County, Alabama.

2. Oil, Gas and Mineral Lease dated December 28, 2005, by and between Dorothy Faye Jones, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2024 of the Probate Judge Records of Conecuh County, Alabama.

3. Oil, Gas and Mineral Lease dated December 28, 2005, by and between Dwight Taylor, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2026 of the Probate Judge Records of Conecuh County, Alabama.

4. Oil, Gas and Mineral Lease dated January 9, 2006, by and between Tully L. Logan, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 405, Page 779 of the Probate Judge Records of Escambia County, Alabama.

5. Oil, Gas and Mineral Lease dated January 9, 2006, by and between Jack D. Logan, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 405, Page 777 of the Probate Judge Records of Escambia County, Alabama.

6. Oil, Gas and Mineral Lease dated January 9, 2006, by and between Kenneth Allen Baker, et al, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2028 of the Probate Judge Records of Conecuh County, Alabama.

7. Oil, Gas and Mineral Lease dated February 16, 2006, by and between Cedar Creek Land & Timber, as Lessor, and John C. Albury, as Lessee, the existence of which is set forth by that Declaration of Lease dated February 24, 2006 and recorded in Book 2006, Page 2091 of the Probate Judge Records of Conecuh County, Alabama and also recorded in Book 405, Page 771 of the Probate Judge Records of Escambia County, Alabama.

8. Oil, Gas and Mineral Lease dated January 9, 2006, by and between Raymond B. Logan, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 405, Page 775 of the Probate Judge Records of Escambia County, Alabama.

9. Oil, Gas and Mineral Lease dated January 24, 2006, by and between Loree R. Hamiter, James E. Hamiter and Harold W. Hamiter, as Trustees under the Last Will and Testament of Harold E. Hamiter, deceased, dated February 14, 1991, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2030 of the Probate Judge Records of Conecuh County, Alabama.

10. Oil, Gas and Mineral Lease dated January 9, 2006, by and between James W. Logan, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 405, Page 781 of the Probate Judge Records of Escambia County, Alabama.

Page 2
Exhibit "A-1"

11. Oil, Gas and Mineral Lease dated January 9, 2006, by and between Bertie T. Hassell, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 405, Page 783 of the Probate Judge Records of Escambia County, Alabama.

12. Oil, Gas and Mineral Lease dated March 8, 2006, by and between Ralls Properties, L.L.C., as Lessor, and John C. Albury, as Lessee, recorded in Book 405, Page 785 of the Probate Judge Records of Escambia County, Alabama.

13. Oil, Gas and Mineral Lease dated February 13, 2006, by and between R. Wyatt Feagin, as Lessor, and John C. Albury, as Lessee, recorded in Book 405, Page 787 of the Probate Judge Records of Escambia County, Alabama.

14. Oil, Gas and Mineral Lease dated February 13, 2006, by and between Nanette Feagin Beck, as Lessor, and John C. Albury, as Lessee, recorded in Book 405, Page 790 of the Probate Judge Records of Escambia County, Alabama.

15. Oil, Gas and Mineral Lease dated March 10, 2006, by and between Noel E. Lindholm, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2032 of the Probate Judge Records of Conecuh County, Alabama.

16. Oil, Gas and Mineral Lease dated January 30, 2006, by and between J. C. Snowden, as Lessor, and John C. Albury, as Lessee, recorded in Book 405, Page 793 of the Probate Judge Records of Escambia County, Alabama.

17. Oil, Gas and Mineral Lease dated February 9, 2006, by and between Charles D. Searcy, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2034 of the Probate Judge Records of Conecuh County, Alabama.

18. Oil, Gas and Mineral Lease dated January 31, 2006, by and between Barbara Ann Stone Robinson, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 405, Page 795 of the Probate Judge Records of Escambia County, Alabama.

19. Oil, Gas and Mineral Lease dated March 1, 2006, by and between Jon McMurray, as Lessor, and John C. Albury, as Lessee, recorded in Book 405, Page 797 of the Probate Judge Records of Escambia County, Alabama.

20. Oil, Gas and Mineral Lease dated March 3, 2006, by and between William E. Older, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2036 of the Probate Judge Records of Conecuh County, Alabama.

21. Oil, Gas and Mineral Lease dated March 3, 2006, by and between Earline B. Older, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2038 of the Probate Judge Records of Conecuh County, Alabama.

22. Oil, Gas and Mineral Lease dated March 9, 2006, by and between Juanita C. Waters, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2040 of the Probate Judge Records of Conecuh County, Alabama.

23. Oil, Gas and Mineral Lease dated March 9, 2006, by and between Alva Nann Taylor, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2042 of the Probate Judge Records of Conecuh County, Alabama.

24. Oil, Gas and Mineral Lease dated February 20, 2006, by and between Howard Sylvester Stewart, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2044 of the Probate Judge Records of Conecuh County, Alabama.

25. Oil, Gas and Mineral Lease dated February 28, 2006, by and between Dale B. Blair, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 405, Page 799 of the Probate Judge Records of Escambia County, Alabama.

Page 3
Exhibit "A-1"

26. Oil, Gas and Mineral Lease dated March 9, 2006, by and between Jo Ann Langham, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2046 of the Probate Judge Records of Conecuh County, Alabama.

27. Oil, Gas and Mineral Lease dated February 20, 2006, by and between Charles A. Frazier, et al, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2048 of the Probate Judge Records of Conecuh County, Alabama.

28. Oil, Gas and Mineral Lease dated February 20, 2006, by and between Charles A. Frazier, et al, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2050 of the Probate Judge Records of Conecuh County, Alabama.

29. Oil, Gas and Mineral Lease dated February 20, 2006, by and between Charles A. Frazier, et al, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2054 of the Probate Judge Records of Conecuh County, Alabama.

30. Oil, Gas and Mineral Lease dated March 9, 2006, by and between Robert Cary, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2056 of the Probate Judge Records of Conecuh County, Alabama.

31. Oil, Gas and Mineral Lease dated March 20, 2006, by and between Stephen Jeter, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2083 of the Probate Judge Records of Conecuh County, Alabama and also recorded in Book 405, Page 801 of the Probate Judge Records of Escambia County, Alabama.

32. Oil, Gas and Mineral Lease dated March 20, 2006, by and between John J. Jeter, III, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2087 of the Probate Judge Records of Conecuh County, Alabama and also recorded in Book 405, Page 805 of the Probate Judge Records of Escambia County, Alabama.

33. Oil, Gas and Mineral Lease dated March 20, 2006, by and between Sally Jeter Hammond, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2079 of the Probate Judge Records of Conecuh County, Alabama and also recorded in Book 405, Page 809 of the Probate Judge Records of Escambia County, Alabama.

34. Oil, Gas and Mineral Lease dated March 28, 2006, by and between Allene B. Ward, et al, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2058 of the Probate Judge Records of Conecuh County, Alabama.

35. Oil, Gas and Mineral Lease dated March 28, 2006, by and between Allene B. Ward, et al, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2068 of the Probate Judge Records of Conecuh County, Alabama.

36. Oil, Gas and Mineral Lease dated April 10, 2006, by and between Dorothy Nowling Womack, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2060 of the Probate Judge Records of Conecuh County, Alabama.

37. Oil, Gas and Mineral Lease dated April 10, 2006, by and between Douglas Gene Rabren, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2062 of the Probate Judge Records of Conecuh County, Alabama.

38. Oil, Gas and Mineral Lease dated April 10, 2006, by and between Henry George Foster, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2064 of the Probate Judge Records of Conecuh County, Alabama.

Page 4
Exhibit "A-1"

39. Oil, Gas and Mineral Lease dated April 11, 2006, by and between Julia Blair, as Lessor, and John C. Albury, as Lessee, recorded in Book 405, Page 813 of the Probate Judge Records of Escambia County, Alabama.

40. Oil, Gas and Mineral Lease dated April 2, 2006, by and between David Edwin Logan, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book ____, Page ____ of the Probate Judge Records of Conecuh County, Alabama and also recorded in Book 405, Page 815 of the Probate Judge Records of Escambia County, Alabama.

41. Oil, Gas and Mineral Lease dated January 9, 2006, by and between Sarah M. Lanier, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2066 of the Probate Judge Records of Conecuh County, Alabama.

42. Oil, Gas and Mineral Lease dated February 28, 2006, by and between Wayne M. Blair, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 409, Page 814 of the Probate Judge Records of Escambia County, Alabama.

43. Oil, Gas and Mineral Lease dated May 12, 2006, by and between William E. Older, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2532 of the Probate Judge Records of Conecuh County, Alabama.

44. Oil, Gas and Mineral Lease dated April 11, 2006, by and between Juanita Ralls, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2530 of the Probate Judge Records of Conecuh County, Alabama.

45. Oil, Gas and Mineral Lease dated May 10, 2006, by and between Dorothy Faye Jones, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2528 of the Probate Judge Records of Conecuh County, Alabama.

46. Oil, Gas and Mineral Lease dated February 28, 2006, by and between Martha B. Robinson, as Lessor, and John C. Albury, as Lessee, recorded in Book 409, Page 816 of the Probate Judge Records of Escambia County, Alabama.

47. Oil, Gas and Mineral Lease dated May 12, 2006, by and between Earline B. Older, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2526 of the Probate Judge Records of Conecuh County, Alabama.

48. Oil, Gas and Mineral Lease dated April 28, 2006, by and between Helen Pate, as Trustee for Josh Pate and Jill Pate, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2522 of the Probate Judge Records of Conecuh County, Alabama.

49. Oil, Gas and Mineral Lease dated May 10, 2006, by and between Dwight Taylor, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2524 of the Probate Judge Records of Conecuh County, Alabama.

50. Oil, Gas and Mineral Lease dated February 28, 2006, by and between Mary B. Andrews, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 409, Page 818 of the Probate Judge Records of Escambia County, Alabama.

51. Oil, Gas and Mineral Lease dated March 29, 2006, by and between Oscar DePriest Tucker, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2514 of the Probate Judge Records of Conecuh County, Alabama.

52. Oil, Gas and Mineral Lease dated May 30, 2006, by and between John N. Feagin, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2520 of the Probate Judge Records of Conecuh County, Alabama.

53. Oil, Gas and Mineral Lease dated June 5, 2006, by and between Joel R. Pate, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2509 of the Probate Judge Records of Conecuh County, Alabama.

Page 5
Exhibit "A-1"

54.     Oil, Gas and Mineral Lease dated May 24, 2006, by and between William G. Dawkins, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 409, Page 827 of the Probate Judge Records of Escambia County, Alabama.

55.     Oil, Gas and Mineral Lease dated May 24, 2006, by and between Carolyn C. Kennedy, as Lessor, and John C. Albury, as Lessee, recorded in Book 409, Page 820 of the Probate Judge Records of Escambia County, Alabama.

56.     Oil, Gas and Mineral Lease dated June 5, 2006, by and between Frank Steadman, et ux, as Lessors, and John C. Albury, as Lessee, recorded in Book 2006, Page 2534 of the Probate Judge Records of Conecuh County, Alabama.

57.     Oil, Gas and Mineral Lease dated May 18, 2006, by and between Sarah Ann Leyden, as Lessor, and John C. Albury, as Lessee, recorded in Book 409, Page 832 of the Probate Judge Records of Escambia County, Alabama.

58.     Oil, Gas and Mineral Lease dated May 18, 2006, by and between Michael P. Leyden, as Lessor, and John C. Albury, as Lessee, recorded in Book 409, Page 829 of the Probate Judge Records of Escambia County, Alabama.

59.     Oil, Gas and Mineral Lease dated June 23, 2006, by and between Frank M. Stamps, as Lessor, and John C. Albury, as Lessee, recorded in Book 409, Page 822 of the Probate Judge Records of Escambia County, Alabama.

60.     Oil, Gas and Mineral Lease dated February 28, 2006, by and between Nell Blair, as Lessor, and John C. Albury, as Lessee, recorded in Book 409, Page 825 of the Probate Judge Records of Escambia County, Alabama.

61.     Oil, Gas and Mineral Lease dated May 22, 2006, by and between Jean Ray and Glen Ray, Successor Co-Trustees of the Edna B. Gunter Revocable Trust dated June 2, 1992, as Lessor, and John C. Albury, as Lessee, recorded in Book 2006, Page 2503 of the Probate Judge Records of Conecuh County, Alabama.

62.     Oil, Gas and Mineral Lease dated July 14, 2006, by and between Cedar Creek Land & Timber, Inc., as Lessor, and John C. Albury, as Lessee, the existence of which is set forth by that Memorandum of Oil and Gas Lease recorded in Book 2006, Page 2511 of the Probate Judge Records of Conecuh County, Alabama and also recorded in Book 405, Page 835 of the Probate Judge Records of Escambia County, Alabama.

63.     Oil, Gas and Mineral Lease dated July 28, 2006, by and between J. Randle Feagin, a/k/a, John Randle Feagin, as Lessor, and John C. Albury, as Lessee, recorded in Book _____, Page _____ of the Probate Judge Records of Conecuh County, Alabama and also recorded in Book _____, Page _____ of the Probate Judge Records of Escambia County, Alabama.

64.     Oil, Gas and Mineral Lease dated July 28, 2006, by and between Nancy Feagin, as Lessor, and John C. Albury, as Lessee, recorded in Book _____, Page _____ of the Probate Judge Records of Conecuh County, Alabama and also recorded in Book _____, Page _____ of the Probate Judge Records of Escambia County, Alabama.

## EXHIBIT "A-2"

Attached to and made a part of that certain Operating Agreement dated November 1,
2006, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco
L.L.C., McCombs Energy, Ltd., WAC Investment Company, L.L.C., Pickens Financial
Group, LLC, and The Rudman Partnership, as Non-Operators.



Producers 88 (9?70)—Paid Up
With Pooling Provision
Mississippi-Alabama-Florida

EXHIBIT "B"

Hederman Brothers – Ridgeland, Mississippi
(3-89)

# OIL, GAS AND MINERAL LEASE

THIS AGREEMENT made this _____ day of _____ 20 _____, between

_____

_____

_____

_____

lessor (whether one or more), whose address is: _____

and _____, lessee, WITNESSETH:

1. Lessor, in consideration of _____ Dollars, receipt of which is hereby acknowledged, and of the covenants and agreements of lessee hereinafter contained, does hereby grant, lease and let unto lessee the land covered hereby for the purposes and with the exclusive right of exploring, drilling, mining and operating for, producing and owning oil, gas, sulphur and all other minerals (whether or not similar to those mentioned), together with the right to make surveys on said land, lay pipe lines, establish and utilize facilities for surface or subsurface disposal of salt water, construct roads and bridges, dig canals, build tanks, power stations, power lines, telephone lines, employee houses and other structures on said land, necessary or useful in lessee's operations in exploring, drilling for, producing, treating, storing and transporting minerals produced from the land covered hereby or any other land adjacent thereto. The land covered hereby, herein called "said land", is located in the

County of _____, State of _____, and is described as follows:

This lease also covers and includes, in addition to that above described, all land, if any, contiguous or adjacent to or adjoining the land above described and (a) owned or claimed by lessor by limitation, prescription, possession, reversion or unrecorded instrument or (b) as to which lessor has a preference right of acquisition. Lessor agrees to execute any supplemental instrument requested by lessee for a more complete or accurate description of said land. For the purpose of determining the amount of any bonus or other payment hereunder, said land shall be deemed to contain _____ acres, whether actually containing more or less, and the above recital of acreage in any tract shall be deemed to be the true acreage thereof. Lessor accepts the bonus as lump sum consideration for this lease and all rights, and options hereunder.

2. Unless sooner terminated or longer kept in force under other provisions hereof, this lease shall remain in force for a term of ten (10) years from the date hereof, hereinafter called "primary term", and as long thereafter as operations, as hereinafter defined, are conducted upon said land with no cessation for more than ninety (90) consecutive days.

3. As royalty, lessee covenants and agrees: (a) To deliver to the credit of lessor, in the pipe line to which lessee may connect its wells, the equal one-eighth part of all oil produced and saved by lessee from said land, or from time to time, at the option of lessee, to pay lessor the average posted market price of such one-eighth part of such oil at the wells as of the day it is run to the pipe line or storage tanks, lessor's interest, in either case, to bear one-eighth of the cost of treating oil to render it marketable pipe line oil; (b) To pay lessor on gas and casinghead gas produced from said land (1) when sold by lessee, one-eighth of the amount realized by lessee, computed at the mouth of the well, or (2) when used by lessee off said land or in the manufacture of gasoline or other products, the market value, at the mouth of the well, of one-eighth of such gas and casinghead gas; (c) To pay lessor on all other minerals mined and marketed or utilized by lessee from said land, one-tenth either in kind or value at the well or mine at lessee's election, except that on sulphur mined and marketed the royalty shall be one dollar ($1.00) per long ton. If, at the expiration of the primary term or at any time or times thereafter, there is any well on said land or on lands with which said land or any portion thereof has been pooled, capable of producing gas or any other mineral covered hereby, and all such wells are shut-in, this lease shall, nevertheless, continue in force as though operations were being conducted on said land for so long as said wells are shut-in, and thereafter this lease may be continued in force as if no shut-in had occurred. Lessee covenants and agrees to use reasonable diligence to produce, utilize, or market the minerals capable of being produced from said wells, but in the exercise of such diligence, lessee shall not be obligated to install or furnish facilities other than well facilities and ordinary lease facilities of flow lines, separator, and lease tank, and shall not be required to settle labor trouble or to market gas upon terms unacceptable to lessee. If, at any time or times after the expiration of the primary term, all such wells are shut-in for a period of ninety consecutive days, and during such time there are no operations on said land, then at or before the expiration of said ninety day period, lessee shall pay or tender, by check or draft of lessee, as royalty, a sum equal to one dollar ($1.00) for each acre of land then covered hereby. Lessee shall make like payments or tenders at or before the end of each anniversary of the expiration of said ninety day period if upon such anniversary this lease is being continued in force solely by reason of the provisions of this sub-paragraph. Each such payment or tender shall be made to the parties who at the time of payment would be en-

titled to receive the royalties which would be paid under this lease if the wells were producing, and may be deposited to such parties credit in the _____

_____ Bank

at _____, or its successors, which shall continue as the depositories, regardless of changes in the ownership of shut-in royalty. If at any time that lessee pays or tenders shut-in royalty, two or more parties are, or claim to be, entitled to receive same, lessee may, in lieu of any other method of payment herein provided, pay or tender such shut-in royalty, in the manner above specified, either jointly to such parties or separately to each in accordance with their respective ownerships thereof, as lessee may elect. Any payment hereunder may be made by check or draft of lessee deposited in the mail or delivered to the party entitled to receive payment or to a depository bank provided for above on or before the last date for payment. Nothing herein shall impair lessee's right to release as provided in paragraph 5 hereof. In the event of assignment of this lease in whole or in part, liability for payment hereunder shall rest exclusively on the then owner or owners of this lease, severally as to acreage owned by each.

4. Lessee is hereby granted the right, at its option, to pool or unitize all or any part of said land and of this lease as to any or all minerals or horizons thereunder, with other lands, lease or leases, or portion or portions thereof, or mineral or horizon thereunder, so as to establish units containing not more than 80 surface acres plus 10% acreage tolerance; provided, however, a unit may be enlarged to contain not more than 640 acres plus 10% acreage tolerance, if unitized only as to gas or only as to gas and liquid hydrocarbons (condensate) which are not a liquid in the subsurface reservoir. If larger units are required, under any governmental rule or order, for the drilling or operation of a well at a regular location, or for obtaining maximum allowable, from any well to be drilled, drilling, or already drilled, any such unit may be established or enlarged, to conform to the size required by such governmental order or rule. Lessee shall exercise said option as to each desired unit by executing an instrument identifying such unit and filing it for record in the public office in which this lease is recorded. Each of said options may be exercised by lessee from time to time, and whether before or after production has been established either on said land or on the portion of said land included in the unit or on other land unitized therewith and any such unit may include any well to be drilled, being drilled or already completed. A unit established hereunder shall be valid and effective for all purposes of this lease even though there may be land or mineral, royalty or leasehold interests in land within the unit which are not pooled or unitized. Any operations conducted on any part of such unitized land shall be considered, for all purposes, except the payment of royalty, operations conducted under this lease. There shall be allocated to the land covered by this lease included in any such unit that proportion of the total production of unitized minerals from wells in the unit, after deducting any used in lease or unit operations, which the number of surface acres in the land covered by this lease included in the unit bears to the total number of surface acres in the unit. The production so allocated shall be considered for all purposes, including the payment or delivery of royalty, overriding royalty, and any other payments out of production, to be the entire production of unitized minerals from the portion of said land covered hereby and included in such unit in the same manner as though produced from said land under the terms of this lease. The owner of the reversionary estate of any term royalty or mineral estate agrees that the accrual of royalties pursuant to this paragraph or of shut-in royalties from a well on the unit shall satisfy any limitation of term requiring production of oil or gas. The formation of such unit shall not have the effect of changing the ownership of any shut-in production royalty which may become payable under this lease. Neither shall it impair the right of lessee to release from this lease all or any portion of said land, except that lessee may not so release as to lands within a unit while there are operations thereon for unitized minerals unless all pooled leases are released as to lands within the unit. Lessee may dissolve any unit established hereunder by filing for record in the public office where this lease is recorded a declaration to that effect, if at that time no operations are being conducted thereon for unitized minerals. Subject to the provisions of this paragraph 4, a unit once established hereunder shall remain in force so long as any lease subject thereto shall remain in force. A unit may be so established, modified or dissolved during the life of this lease.

5. Lessee may at any time and from time to time execute and deliver to lessor or file for record a release or releases of this lease as to any part or all of said land or of any mineral or horizon thereunder, and thereby be relieved of all obligations as to the released acreage or interest.

6. This is a PAID-UP LEASE. In consideration of the down cash payment, Lessor agrees that Lessee shall not be obligated except as otherwise provided herein, to commence or continue any operations during the primary term. Whenever used in this lease the word "operations" shall mean operations for and any of the following: drilling, testing, completing, reworking, recompleting, deepening, plugging back or repairing of a well in search for or in an endeavor to obtain production of oil, gas, sulphur or other minerals, excavating a mine, production of oil, gas, sulphur or other mineral, whether or not in paying quantities.

7. Lessee shall have the use, free from royalty, of water, other than from lessor's water wells, and of oil and gas produced from said land in all operations hereunder. Lessee shall have the right at any time to remove all machinery and fixtures placed on said land, including the right to draw and remove casing. No well shall be drilled nearer than 200 feet to the house or barn now on said land without the consent of the lessor. Lessee shall pay for damages caused by its operations to growing crops and timber on said land.

8. The rights and estate of any party hereto may be assigned from time to time in whole or in part and as to any mineral or horizon. All of the covenants, obligations, and considerations of this lease shall extend to and be binding upon the parties hereto, their heirs, successors, assigns, and successive assigns. No change or division in the ownership of said land, royalties, or other moneys, or any part thereof, howsoever effected, shall increase the obligations or diminish the rights of lessee, including, but not limited to, the location and drilling of wells and the measurement of production. Notwithstanding any other actual or constructive knowledge or notice thereof of or to lessee, its successors or assigns, no change or division in the ownership of said land or of the royalties, or other moneys, or the right to receive the same, howsoever effected, shall be binding upon the then record owner of this lease until thirty (30) days after there has been furnished to such record owner at his or its principal place of business by lessor or lessor's heirs, successors, or assigns, notice of such change or division, supported by either originals or duly certified copies of the instruments which have been properly filed for record and which evidence such change or division, and of such court records and proceedings, transcripts, or other documents as shall be necessary in the opinion of such record owner to establish the validity of such change or division. If any such change in ownership occurs by reason of the death of the owner, lessee may, nevertheless, pay or tender such royalties, or other moneys, or part thereof, to the credit of the decedent in a depository bank provided for above.

COPAS 1984 ONSHORE
Recommended by the Council
of Petroleum Accountants
Societies

COPAS

# EXHIBIT " C "

Attached to and made a part of the Operating Agreement dated November 1, 2006, between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., McCombs Energy, Ltd., WAC Investment Company, L.L.C., Pickens Financial Group, LLC, and The Rudman Partnership, as Non-Operators, covering Escambia Prospect, located in Conecuh and Escambia Counties, Texas.

# ACCOUNTING PROCEDURE

# JOINT OPERATIONS

### I. GENERAL PROVISIONS

1.  **Definitions**

    "Joint Property" shall mean the real and personal property subject to the agreement to which this Accounting Procedure is attached.

    "Joint Operations" shall mean all operations necessary or proper for the development, operation, protection and maintenance of the Joint Property.

    "Joint Account" shall mean the account showing the charges paid and credits received in the conduct of the Joint Operations and which are to be shared by the Parties.

    "Operator" shall mean the party designated to conduct the Joint Operations.

    "Non-Operators" shall mean the Parties to this agreement other than the Operator.

    "Parties" shall mean Operator and Non-Operators.

    "First Level Supervisors" shall mean those employees whose primary function in Joint Operations is the direct supervision of other employees and/or contract labor directly employed on the Joint Property in a field operating capacity.

    "Technical Employees" shall mean those employees having special and specific engineering, geological or other professional skills, and whose primary function in Joint Operations is the handling of specific operating conditions and problems for the benefit of the Joint Property.

    "Personal Expenses" shall mean travel and other reasonable reimbursable expenses of Operator's employees.

    "Material" shall mean personal property, equipment or supplies acquired or held for use on the Joint Property.

    "Controllable Material" shall mean Material which at the time is so classified in the Material Classification Manual as most recently recommended by the Council or Petroleum Accountants Societies.

2.  **Statement and Billings**

    Operator shall bill Non-Operators on or before the last day of each month for their proportionate share of the Joint Account for the preceding month. Such bills will be accompanied by statements which identify the authority for expenditure, lease or facility, and all charges and credits summarized by appropriate classifications of investment and expense except that items of Controllable Material and unusual charges and credits shall be separately identified and fully described in detail.

3.  **Advances and Payments by Non-Operators**

    A.  Unless otherwise provided for in the agreement, the Operator may require the Non-Operators to advance their share of estimated cash outlay for the succeeding month's operation within fifteen (15) days after receipt of the billing or by the first day of the month for which the advance is required, whichever is later. Operator shall adjust each monthly billing to reflect advances received from the Non-Operators.

    B.  Each Non-Operator shall pay its proportion of all bills within fifteen (15) days after receipt. If payment is not made within such time, the unpaid balance shall bear interest monthly at the prime rate in effect at Hibernia National Bank, Shreveport, Louisiana on the first day of the month in which delinquency occurs plus 1% or the maximum contract rate permitted by the applicable usury laws in the state in which the Joint Property is located, whichever is the lesser, plus attorney's fees, court costs, and other costs in connection with the collection of unpaid amounts.

4.  **Adjustments**

    Payment of any such bills shall not prejudice the right of any Non-Operator to protest or question the correctness thereof, provided, however, all bills and statements rendered to Non-Operators by Operator during any calendar year shall conclusively be presumed to be true and correct after twenty-four (24) months following the end of any such calendar year, unless within the said twenty-four (24) month period a Non-Operator takes written exception thereto and makes claim on Operator for adjustment. No adjustment favorable to Operator shall be made unless it is made within the same prescribed period. The provisions of this paragraph shall not prevent adjustments resulting from a physical inventory of Controllable Material as provided for in Section V.

COPYRIGHT © 1985 by the Council of Petroleum Accountants Societies.

- 1 -

Recommended by the Council
of Petroleum Accountants
Societies

COPAS

5.  **Audits**

A.  A Non-Operator, upon notice in writing to Operator and all other Non-Operators, shall have the right to audit Operator's accounts and records relating to the Joint Account for any calendar year within the twenty-four (24) month period following the end of such calendar year; provided, however, the making of an audit shall not extend the time for the taking of written exception to and the adjustments of accounts as provided for in Paragraph 4 of this Section I. Where there are two or more Non-Operators, the Non-Operators shall make every reasonable effort to conduct a joint audit in a manner which will result in a minimum of inconvenience to the Operator. Operator shall bear no portion of the Non-Operators' audit cost incurred under this paragraph unless agreed to by the Operator. The audits shall not be conducted more than once each year without prior approval of Operator, except upon the resignation or removal of the Operator, and shall be made at the expense of those Non-Operators approving such audit.

B.  The Operator shall reply in writing to an audit report within 180 days after receipt of such report.

6.  **Approval By Non-Operators**

Where an approval or other agreement of the Parties or Non-Operators is expressly required under other sections of this Accounting Procedure and if the agreement to which this Accounting Procedure is attached contains no contrary provisions in regard thereto, Operator shall notify all Non-Operators of the Operator's proposal, and the agreement or approval of a majority in interest of the Non-Operators shall be controlling on all Non-Operators.

## II.  DIRECT CHARGES

Operator shall charge the Joint Account with the following items:

1.  **Ecological and Environmental**

Costs incurred for the benefit of the Joint Property as a result of governmental or regulatory requirements to satisfy environmental considerations applicable to the Joint Operations. Such costs may include surveys of an ecological or archaeological nature and pollution control procedures as required by applicable laws and regulations.

2.  **Rentals and Royalties**

Lease rentals and royalties paid by Operator for the Joint Operations.

3.  **Labor**

A.  (1)  Salaries and wages of Operator's field employees directly employed on the Joint Property in the conduct of Joint Operations.

(2)  Salaries of First level Supervisors in the field.

(3)  Salaries and wages of Technical Employees directly employed on the Joint Property if such charges are excluded from the overhead rates.

(4)  Salaries and wages of Technical Employees either temporarily or permanently assigned to and directly employed in the operation or the Joint Property if such charges are excluded from the overhead rates.

B.  Operator's cost of holiday, vacation, sickness and disability benefits and other customary allowances paid to employees whose salaries and wages are chargeable to the Joint Account under Paragraph 3A of this Section II. Such costs under this Paragraph 3B may be charged on a "when and as paid basis" or by "percentage assessment" on the amount of salaries and wages chargeable to the Joint Account under Paragraph 3A of this Section II. If percentage assessment is used, the rate shall be based on the Operator's cost experience.

C.  Expenditures or contributions made pursuant to assessments imposed by governmental authority which are applicable to Operator's costs chargeable to the Joint Account under Paragraphs 3A and 3B of this Section II.

D.  Personal Expenses of those employees whose salaries and wages are chargeable to the Joint Account under Paragraphs 3A and 3B of this Section II.

4.  **Employee Benefits**

Operator's current costs or established plans for employees' group life insurance, hospitalization, pension, retirement, stock purchase, thrift, bonus, and other benefit plans of a like nature, applicable to Operator's labor cost chargeable to the Joint Account under Paragraphs 3A and 3B of this Section II shall be Operator's actual cost not to exceed the percent most recently recommended by the Council of Petroleum Accountants Societies.

Recommended by the Council
of Petroleum Accountants
Societies

COPAS

5. **Material**

Material purchased or furnished by Operator for use on the Joint Property as provided under Section IV. Only such Material shall be purchased or transferred to the Joint Property as may be required for immediate use and is reasonably practical and consistent with efficient and economical operations. The accumulation of surplus stocks shall be avoided.

6. **Transportation**

Transportation of employees and Material necessary for the Joint Operations, ~~but subject to the following limitations:~~ shall be charged at actual cost incurred by Operator.

~~A.   If Material is moved to the Joint Property from the Operator's warehouse or other properties, no charge shall be made to the Joint Account for a distance greater than the distance from the nearest reliable supply store where like material is normally available or railway receiving point nearest the Joint Property unless agreed to by the Parties.~~

~~B.   If surplus Material is moved to Operator's warehouse or other storage point, no charge shall be made to the Joint Account for a distance greater than the distance to the nearest reliable supply store where like material is normally available, or railway receiving point nearest the Joint Property unless agreed to by the Parties. No charge shall be made to the Joint Account for moving Material to other properties belonging to Operator, unless agreed to by the Parties.~~

~~C.   In the application of subparagraphs A and B above, the option to equalize or charge actual trucking cost is available when the actual charge is $400 or less excluding accessorial charges. The $400 will be adjusted to the amount most recently recommended by the Council of Petroleum Accountants Societies.~~

7. **Services**

The cost of contract services, equipment and utilities provided by outside sources, except services excluded by Paragraph 10 of Section II and Paragraph i, ii, and iii, of Section III.   The cost of professional consultant services and contract services of technical personnel directly engaged on the Joint Property if such charges are excluded from the overhead rates. The cost of professional consultant services or contract services of technical personnel not directly engaged on the Joint Property shall not be charged to the Joint Account unless previously agreed to by the Parties.

8. **Equipment and Facilities Furnished By Operator**

A.   Operator shall charge the Joint Account for use of Operator owned equipment and facilities at rates commensurate with costs of ownership and operation. Such rates shall include costs of maintenance, repairs, other operating expense, insurance, taxes, depreciation, and interest on gross investment less accumulated depreciation not to exceed =_____fifteen_____ percent (_____15_____%) per annum. Such rates shall not exceed average commercial rates currently prevailing in the immediate area of the Joint Property.

B.   In lieu of charges in Paragraph 8A above, Operator may elect to use average commercial rates prevailing in the immediate area of the Joint Property less 20%.   For automotive equipment, Operator may elect to use rates published by the Petroleum Motor Transport Association.

9. **Damages and Losses to Joint Property**

All costs or expenses necessary for the repair or replacement of Joint Property made necessary because of damages or losses incurred by fire, flood, storm, theft, accident, or other cause, except those resulting from Operator's gross negligence or willful misconduct. Operator shall furnish Non-Operator written notice of damages or losses incurred as soon as practicable after a report thereof has been received by Operator.

10. **Legal Expense**

Expense of handling, investigating and settling litigation or claims, discharging of liens, payment of judgments and amounts paid for settlement of claims incurred in or resulting from operations under the agreement or necessary to protect or recover the Joint Property, ~~except that no charge for services of Operator's legal staff or fees or expense of outside attorneys shall be made unless previously agreed to by the Parties. All other legal expense is considered to be covered by the overhead provisions of Section III unless otherwise agreed to by the Parties, except as provided in Section I, Paragraph 3.~~ and the costs and expenses incurred in connection with hearings and other matters before governmental bodies and agencies and costs and expenses incurred in examining and curing title.

11. **Taxes**

All taxes of every kind and nature assessed or levied upon or in connection with the Joint Property, the operation thereof, or the production therefrom, and which taxes have been paid by the Operator for the benefit of the Parties. If the ad valorem taxes are based in whole or in part upon separate valuations of each party's working interest, then notwithstanding anything to the contrary herein, charges to the Joint Account shall be made and paid by the Parties hereto in accordance with the tax value generated by each party's working interest.

COPAS 1984 ONSHORE
Recommended by the Council
of Petroleum Accountants
Societies



COPAS

12.  **Insurance**

     Net premiums paid for insurance required to be carried for the Joint Operations for the protection of the Parties. In the event Joint Operations are conducted in a state in which Operator may act as self-insurer for Worker's Compensation and/or Employers Liability under the respective state's laws, Operator may, at its election, include the risk under its self-insurance program and in that event, Operator shall include a charge at Operator's cost not to exceed manual rates.

13.  **Abandonment and Reclamation**

     Costs incurred for abandonment of the Joint Property, including costs required by governmental or other regulatory authority.

14.  **Communications**

     Cost of acquiring, leasing, installing, operating, repairing and maintaining communication systems, including radio and microwave facilities directly serving the Joint Property. In the event communication facilities/systems serving the Joint Property are Operator owned, charges to the Joint Account shall be made as provided in Paragraph 8 of this Section II.

15.  **Other Expenditures**

     Any other expenditure not covered or dealt with in the foregoing provisions of this Section II, or in Section III and which is of direct benefit to the Joint Property and is incurred by the Operator in the necessary and proper conduct of the Joint Operations.

### III. OVERHEAD

1.  **Overhead - Drilling and Producing Operations**

    i.   As compensation for administrative, supervision, office services and warehousing costs, Operator shall charge drilling and producing operations on either:

         ( X ) Fixed Rate Basis, Paragraph IA, or
         (   ) Percentage Basis, Paragraph IB

         Unless otherwise agreed to by the Parties, such charge shall be in lieu of costs and expenses of all offices and salaries or wages plus applicable burdens and expenses of all personnel, except those directly chargeable under Paragraph 3A, Section II. The cost and expense of services from outside sources in connection with matters of taxation, traffic, accounting or matters before or involving governmental agencies shall be considered as included in the overhead rates provided for in the above selected Paragraph of this Section III unless such cost and expense are agreed to by the Parties as a direct charge to the Joint Account.

    ii.  The salaries, wages and Personal Expenses of Technical Employees and/or the cost of professional consultant services and contract services of technical personnel directly employed on the Joint Property:

         (   ) shall be covered by the overhead rates, or
         ( X ) shall not be covered by the overhead rates.

    iii. The ~~salaries, wages and Personal Expenses of Technical Employees and/or~~ costs of professional consultant services and contract services of technical personnel either temporarily or permanently assigned to and directly employed in the operation of the Joint Property:

         (   ) shall be covered by the overhead rates, or
         ( X ) shall not be covered by the overhead rates.

    A.   Overhead - Fixed Rate Basis_____ See ADDITIONAL REVISIONS page 9.

         (1)  Operator shall charge the Joint Account at the following rates per well per month:

              Drilling Well Rate $_____7,000.00_____
                  (Prorated for less than a full month)

              Producing Well Rate $_____700.00_____

         (2)  Application of Overhead - Fixed Rate Basis shall be as follows:

              (a)  Drilling Well Rate

                   (1)  Charges for drilling wells shall begin on the date the well is spudded and terminate on the date the drilling rig, completion rig, or other units used in completion of the well is released, whichever

- 4 -

Recommended by the Council
of Petroleum Accountants
Societies

COPAS

is later, except that no charge shall be made during suspension of drilling or completion operations for fifteen (15) or more consecutive calendar days.

(2) Charges for wells undergoing any type of workover or recompletion for a period of five (5) consecutive work days or more shall be made at the drilling well rate. Such charges shall be applied for the period from date workover operations, with rig or other units used in workover, commence through date of rig or other unit release, except that no charge shall be made during suspension of operations for fifteen (15) or more consecutive calendar days.

(b) Producing Well Rates

(1) An active well either produced or injected into for any portion of the month shall be considered as a one-well charge for the entire month.

(2) Each active completion in a multi-completed well in which production is not commingled down hole shall be considered as a one-well charge providing each completion is considered a separate well by the governing regulatory authority.

(3) An inactive gas well shut in because of overproduction or failure of purchaser to take the production shall be considered as a one-well charge providing the gas well is directly connected to a permanent sales outlet.

(4) A one-well charge shall be made for the month in which plugging and abandonment operations are completed on any well. This one-well charge shall be made whether or not the well has produced except when drilling well rate applies.

(5) All other inactive wells (including but not limited to inactive wells covered by unit allowable, lease allowable, transferred allowable, etc.) shall not qualify for an overhead charge.

(3) The well rates shall be adjusted as of the first day of April each year following the effective date of the agreement to which this Accounting Procedure is attached.   The adjustment shall be computed by multiplying the rate currently in use by the percentage increase or decrease in the average weekly earnings of Crude Petroleum and Gas Production Workers for the last calendar year compared to the calendar year preceding as shown by the index of average weekly earnings of Crude Petroleum and Gas Production Workers as published by the United States Department of Labor, Bureau of Labor Statistics, or the equivalent Canadian index as published by Statistics Canada, as applicable. The adjusted rates shall be the rates currently in use, plus or minus the computed adjustment.

~~8.   Overhead—Percentage Basis~~

~~(1)   Operator shall charge the Joint Account at the following rates:~~

~~(a)   Development~~

~~_____ Percent (_____%) of the cost of development of the Joint Property exclusive of costs provided under Paragraph 10 of Section II and all salvage credits.~~

~~(b)   Operating~~

~~_____ Percent (_____%) of the cost of operating the Joint Property exclusive of costs provided under Paragraphs 2 and 10 of Section II, all salvage credits, the value of injected substances purchased for secondary recovery and all taxes and assessments which are levied, assessed and paid upon the mineral interest in and to the Joint Property.~~

~~(2)   Application of Overhead—Percentage Basis shall be as follows:~~

~~For the purpose of determining charges on a percentage basis under Paragraph 1B of this Section III, development shall include all costs in connection with drilling, redrilling, deepening, or any remedial operations on any or all wells involving the use of drilling rig and crew capable of drilling to the producing interval on the Joint Property; also, preliminary expenditures necessary in preparation for drilling and expenditures incurred in abandoning when the well is not completed as a producer, and original cost of construction or installation of fixed assets, the expansion of fixed assets and any other project clearly discernible as a fixed asset, except Major Construction as defined in Paragraph 2 of this Section III. All other costs shall be considered as operating.~~

2.   Overhead - Major Construction

To compensate Operator for overhead costs incurred in the construction and installation of fixed assets, the expansion of fixed assets, and any other project clearly discernible as a fixed asset required for the development and operation of the Joint Property, Operator shall either negotiate a rate prior to the beginning of construction, or shall charge the Joint

Recommended by the Council
of Petroleum Accountants
Societies

COPAS

Account for overhead based on the following rates for any Major Construction project in excess of $ 25,000.00 :

A.     5     % of first $100,000 or total cost if less, plus

B.     4     % of costs in excess of $100,000 but less than $1,000,000, plus

C.     3     % of costs in excess of $1,000,000.

Total cost shall mean the gross cost of any one project. For the purpose of this paragraph, the component parts of a single project shall not be treated separately and the cost of drilling and workover wells and artificial lift equipment shall be excluded.

3.     Catastrophe Overhead

To compensate Operator for overhead costs incurred in the event of expenditures resulting from a single occurrence due to oil spill, blowout, explosion, fire, storm, hurricane, or other catastrophes as agreed to by the Parties, which are necessary to restore the Joint Property to the equivalent condition that existed prior to the event causing the expenditures, Operator shall either negotiate a rate prior to charging the Joint Account or shall charge the Joint Account for overhead based on the following rates:

A.     5     % of total costs through $100,000; plus

B.     4     % of total costs in excess of $100,000 but less than $1,000,000; plus

C.     3     % of total costs in excess of $1,000,000.

Expenditures subject to the overheads above will not be reduced by insurance recoveries, and no other overhead provisions of this Section III shall apply.

4.     Amendment of Rates

The overhead rates provided for in this Section III may be amended from time to time only by mutual agreement between the Parties hereto if, in practice, the rates are found to be insufficient or excessive.

## IV.     PRICING OF JOINT ACCOUNT MATERIAL PURCHASES, TRANSFERS AND DISPOSITIONS

Operator is responsible for Joint Account Material and shall make proper and timely charges and credits for all Material movements affecting the Joint Property. Operator shall provide all Material for use on the Joint Property; however, at Operator's option, such Material may be supplied by the Non-Operator. Operator shall make timely disposition of idle and/or surplus Material, such disposal being made either through sale to Operator or Non-Operator, division in kind, or sale to outsiders. Operator may purchase, but shall be under no obligation to purchase, interest of Non-Operators in surplus condition A or B Material. The disposal of surplus Controllable Material not purchased by the Operator shall be agreed to by the Parties.

1.     Purchases

Material purchased shall be charged at the price paid by Operator after deduction of all discounts received. In case of Material found to be defective or returned to vendor for any other reasons, credit shall be passed to the Joint Account when adjustment has been received by the Operator.

2.     Transfers and Dispositions

Material furnished to the Joint Property and Material transferred from the Joint Property or disposed of by the Operator, unless otherwise agreed to by the Parties, shall be priced on the following basis exclusive of cash discounts:

A.     New Material (Condition A)

(1)     Tubular Goods Other than Line Pipe

(a)     Tubular goods, sized 2 3/8 inches OD and larger, except line pipe, shall be priced at ~~Eastern mill~~ cost published carload base prices effective as of date of movement plus transportation cost using the 80,000 pound carload weight basis to the railway receiving point nearest the Joint Property for which published rail rates for tubular goods exist. If the 80,000 pound rail rate is not offered, the 70,000 pound or 90,000 pound rail rate may be used. Freight charges for tubing will be calculated from Lorain, Ohio and casing from Youngstown, Ohio.

(b)     For grades which are special to one mill only, prices shall be computed at ~~the mill base of that mill plus~~ cost transportation cost from that mill to the railway receiving point nearest the Joint Property, as provided above in Paragraph 2.A.(1)(a). For transportation cost from points other than Eastern mills, the 30,000

- 6 -

of Petroleum Accountants
Societies

COPAS

~~pound Oil Field Haulers Association interstate truck rate shall be used.~~

(c) Special end finish tubular goods shall be priced at **cost** ~~the lowest published out-of-stock price, f.o.b. Houston, Texas, plus transportation cost, using Oil Field Haulers Association interstate 30,000 pound truck rate, to the railway receiving point nearest the Joint Property.~~

(d) ~~Macaroni tubing (size less than 2-3/8 inch OD) shall be priced at~~ **cost** ~~the lowest published out-of-stock price, f.o.b. the supplier plus transportation costs, using the Oil Field Haulers Association interstate truck rate per weight of tubing transferred, to the railway receiving point nearest the Joint Property.~~

(2) Line Pipe

(a) Line pipe movements (except size 24 inch OD and larger with walls ¾ inch and over) 30,000 pounds or more shall be priced **at cost** ~~under provisions of tubular goods pricing in Paragraph A.(1)(a) as provided above. Freight charges shall be calculated from Lorain, Ohio.~~

(b) Line Pipe movements (except size 24 inch OD) and larger with walls ¾ inch and over) less than 30,000 pounds shall be priced at **cost** ~~Eastern mill published carload base prices effective as of date of shipment, plus 20 percent, plus transportation costs based on freight rates as set forth under provisions of tubular goods pricing in Paragraph A.(1)(a) as provided above. Freight charges shall be calculated from Lorain, Ohio.~~

(c) Line pipe 24 inch OD and over and ¾ inch wall and larger shall be priced **at cost** ~~f.o.b. the point of manufacture at current new published prices plus transportation cost to the railway receiving point nearest the Joint Property.~~

(d) Line pipe, including fabricated line pipe, drive pipe and conduit not listed on published price lists shall be priced at **cost** ~~quoted prices plus freight to the railway receiving point nearest the Joint Property or at prices agreed to by the Parties.~~

(3) ~~Other Material shall be priced at~~ **cost** ~~the current new price, in effect at date of movement, as listed by a reliable supply store nearest the Joint Property, or point of manufacture, plus transportation costs, if applicable, to the railway receiving point nearest the Joint Property.~~

(4) ~~Unused new Material, except tubular goods, moved from the Joint Property shall be priced at~~ **cost** ~~the current new price, in effect on date of movement, as listed by a reliable supply store nearest the Joint Property, or point of manufacture, plus transportation costs, if applicable, to the railway receiving point nearest the Joint Property.~~ Unused new tubulars shall be priced as provided above in Paragraph 2.A.(1) and (2).

B. Good Used Material (Condition B)

Material in sound and serviceable condition and suitable for reuse without reconditioning:

(1) Material moved to the Joint Property

~~At seventy-five percent (75%) of~~ **market value,** ~~current~~ ~~new price, as determined by Paragraph A.~~

(2) Material used on and moved from the Joint Property

(a) ~~At seventy-five percent (75%) of~~ **market value,** ~~current~~ ~~new price, as determined by Paragraph A, if Material was originally charged to the Joint Account as new Material or~~

(b) ~~At sixty-five percent (65%) of~~ **market value,** ~~current~~ ~~new price, as determined by Paragraph A, if Material was originally charged to the Joint Account as used Material~~

(3) Material not used on and moved from the Joint Property

~~At seventy-five percent (75%) of~~ **market value,** ~~current~~ ~~new price as determined by Paragraph A.~~

The cost of reconditioning, if any, shall be absorbed by the transferring property.

C. Other Used Material

(1) Condition C

Material which is not in sound and serviceable condition and not suitable for its original function until after reconditioning shall be priced at **current market value,** ~~fifty percent (50%) of current new price, as determined by Paragraph A. The cost of reconditioning shall be charged to the receiving property, provided Condition C value plus cost of reconditioning does not exceed Condition B value.~~

- 7 -

Recommended by the Council
of Petroleum Accountants
Societies

COPAS

(2)   Condition D

Material, excluding junk, no longer suitable for its original purpose, but usable for some other purpose shall be priced on a basis commensurate with its use. Operator may dispose of Condition D Material under procedures normally used by Operator without prior approval of Non-Operators.

(a)   Casing, tubing, or drill pipe used as line pipe shall be priced as Grade A and B seamless line pipe of comparable size and weight.   Used casing, tubing or drill pipe utilized as line pipe shall be priced at used line pipe prices.

(b)   Casing, tubing or drill pipe used as higher pressure service lines than standard line pipe, e.g. power oil lines, shall be priced under normal pricing procedures for casing, tubing, or drill pipe. Upset tubular goods shall be priced on a non upset basis.

(3)   Condition E

Junk shall be priced at prevailing prices. Operator may dispose of Condition E Material under procedures normally utilized by Operator without prior approval of Non-Operators.

D.   Obsolete Material

Material which is serviceable and usable for its original function but condition and/or value of such Material is not equivalent to that which would justify a price as provided above may be specially priced as agreed to by the Parties. Such price should result in the Joint Account being charged with the value of the service rendered by such Material.

E.   Pricing Conditions

(1)   Loading or unloading costs may be charged to the Joint Account at ~~the rate of twenty-five cents (25¢)~~ actual costs incurred by operator ~~per hundred weight~~ on all tubular goods movements, in lieu of actual loading or unloading costs sustained at the stocking point. The above rate shall be adjusted as of the first day of April each year following January 1, 1985 by the same percentage increase or decrease used to adjust overhead rates in Section III, Paragraph 1.A.(3). Each year, the rate calculated shall be rounded to the nearest cent and shall be the rate in effect until the first day of April next year. Such rate shall be published each year by the Council of Petroleum Accountants Societies.

(2)   Material involving erection costs shall be charged at applicable percentage of the current knocked-down price of new Material.

3.   **Premium Prices**

Whenever Material is not readily obtainable at published or listed prices because of national emergencies, strikes or other unusual causes over which the Operator has no control, the Operator may charge the Joint Account for the required Material at the Operator's actual cost incurred in providing such Material, in making it suitable for use, and in moving it to the Joint Property; provided notice in writing is furnished to Non-Operators of the proposed charge prior to billing Non-Operators for such Material.   Each Non-Operator shall have the right, by so electing and notifying Operator within ten days after receiving notice from Operator, to furnish in kind all or part of his share of such Material suitable for use and acceptable to Operator; provided, however, if a Non-Operator elects to furnish material in kind, such material must (a) meet the quality specifications set by Operator, and (b) be inspected by Operator with inspection costs to be billed to the Joint Account.

4.   **Warranty of Material Furnished By Operator**

Operator does not warrant the Material furnished.   In case of defective Material, credit shall not be passed to the Joint Account until adjustment has been received by Operator from the manufacturers or their agents.


## V. INVENTORIES

The Operator shall maintain detailed records of Controllable Material.

1.   **Periodic Inventories, Notice and Representation**

At reasonable intervals, inventories shall be taken by Operator of the Joint Account Controllable Material. Written notice of intention to take inventory shall be given by Operator at least thirty (30) days before any inventory is to begin so that Non-Operators may be represented when any inventory is taken. Failure of Non-Operators to be represented at an inventory shall bind Non-Operators to accept the inventory taken by Operator.

2.   **Reconciliation and Adjustment of Inventories**

Adjustments to the Joint Account resulting from the reconciliation of   a physical inventory shall be made within six months following the taking of the inventory. Inventory adjustments shall be made by Operator to the Joint Account for

Recommended by the Council
of Petroleum Accountants
Societies



overages and shortages, but, Operator shall be held accountable only for shortages due to lack of reasonable diligence.

3.  **Special Inventories**

    Special inventories may be taken whenever there is any sale, change of interest, or change of Operator in the Joint Property. It shall be the duty of the party selling to notify all other Parties as quickly as possible after the transfer of interest takes place. In such cases, both the seller and the purchaser shall be governed by such inventory. In cases involving a change of Operator, all Parties shall be governed by such inventory.

4.  **Expense of Conducting Inventories**

    A.  The expense of conducting periodic inventories shall not be charged to the Joint Account unless agreed to by the Parties.

    B.  The expense of conducting special inventories shall be charged to the Parties requesting such inventories, except inventories required due to change of Operator shall be charged to the Joint Account.

ADDITIONAL REVISIONS

(1)    In the event the subject well is expected to be above the State threshold for H2S sour gas operations, the Drilling Well rate set forth in Art. III.1.A.(1) will be increased by $2000.00 per month and the associated Producing Well Overhead Rate will be increased an additional $100.00 per month.

# EXHIBIT "D"

Attached to and made a part of that certain Operating Agreement dated January 25, 2006, by and between Sklar Exploration Company L.L.C., as Operator, and Williams Petroleum, LLC, Yates Drilling Company L.L.C., Sklarco L.L.C., McCombs Energy, LTD, Anderson-Drake Partners, Inc., Dudley Hughes, LLC, and David New Drilling Company, Inc., as Non-Operators.

Operator shall carry the following insurance wit h the limits stipulated below for the joint account. Operator shall have the right to charge the joint account premiums for the insurance coverage required by this Exhibit. Such premiums shall be allocated to the joint account using a fair and reasonable method based on the nature of the operations covered by this Agreement. Non-operating working interest owners shall be named as additional insured on the liability policies. This insurance shall be primary. Certificates of insurance will be provided upon request.

I.   WORKERS' COMPENSATION AND EMPLOYER'S LIABILITY

    A. Workers' Compensation and Employer's Liability Insurance covering the employees of Operator engaged in operations hereunder in compliance with the applicable State and Federal Laws.

    B. Extension of Coverage B of policy to provide for not less than $500,000 for death or injury to one person in any one accident.

II.  COMPREHENSIVE GENERAL LIABILITY

    Coverage for all operations conducted hereunder by Operator for the Joint Account with a combined single limit each occurrence/aggregate of $2,000,000 for bodily injury and property damage. Said Comprehensive General Liability Insurance shall include contractual liability coverage.

III. AUTOMOBILE LIABILITY

    Coverage shall include owned, non-owned and hired vehicles. Limit $500,000 combined single limit each occurrence for bodily injury and property damage.

IV.  EXCESS LIABILITY

    Operator shall carry excess liability insurance in an amount necessary to provide a total of $5,000,000 coverage for both Automobile Liability and Comprehensive General Liability.

    Any party, at its own expense, may carry its own coverage for Excess Liability Insurance with limits as set forth in this Section IV. Any party so electing must notify Operator of such election prior to commencement of operations and provide a certificate of insurance evidencing the appropriate limits of liability. Upon timely notification such party will not be charged by Operator for the coverage.

V.   EXTRA EXPENSE LIABILITY

    Operator's Extra Expense coverage including control of well, seepage, pollution and contamination coverage, cleanup and/or containment coverage, redrilling and/or restoring, shall be carried by Operator, subject to limit(s) as shown below and subject to deductible not to exceed $25,000 per occurrence.

Liability Limit: $5,000,000

Any party, at its own expense, may carry its own coverage for Extra Expense Liability Insurance with limits as set forth in this Section V. Any party so electing must notify

Operator of such election prior to commencement of operations and provide a certificate of insurance evidencing the appropriate limits of liability.  Upon timely notification such party will not be charged by Operator for the coverage.

ANY PARTY, at its own expense, may acquire such additional insurance as it may deem necessary to protect its own interest against claims, losses, damages or destruction to property arising out of operations hereunder.

EXHIBIT "E"

Attached to and made a part of that certain Operating Agreement dated January 25, 2006, by and between Sklar Exploration Company L.L.C., as Operator, and Williams Petroleum, LLC, Yates Drilling Company L.L.C., Sklarco L.L.C., McCombs Energy, LTD, Anderson-Drake Partners, Inc., Dudley Hughes, LLC, and David New Drilling Company, Inc., as Non-Operators.

## GAS BALANCING AGREEMENT

Subject to and under the terms of the above described Operating Agreement, the parties hereto own and are entitled to share in the oil and gas produced from the wells completed on the Joint Operating Area described in the Operating Agreement (the "JOA").

Each party shall have the right, but not the obligation, to make arrangements to sell or utilize its share of the gas produced from said JOA. However, one or more of the parties may be unable to take or market its interest in the gas production from time to time; therefore, to permit any party to produce and dispose of its interest in the gas production from the JOA with as much flexibility as possible, the parties hereto agree to the storage and balancing agreement herein set forth.

1.

Subject to the provisions of the Operating Agreement to which this Exhibit is attached, during the period or periods when any party hereto has no market for, or its purchaser is unable to take or if any party elects not to take its share of gas, the other parties, or any of them, shall be entitled to produce and take said share, and each of such taking parties shall have the right to take all or any part of its pro rata share thereof, said pro rata share being based on the ratio of its participation percentage under this Operating Agreement to the participation percentages of all taking parties. All parties hereto shall share in and own the condensate recovered at the surface in accordance with their respective interest, but each party taking such gas shall own all of the gas delivered to its purchaser. Any party whose share of gas is not marketed shall be credited with gas in storage equal to its share of the gas produced, less its share of the gas used in lease operation, vented or lost. Operator shall maintain a current account of the gas balance between the parties and shall furnish all parties hereto monthly statements showing the total quantity of gas produced, used in lease operations, vented or lost, and the total quantity of condensate recovered.

2.

After notice to Operator, any party may begin taking or delivering its share of the gas produced. In addition to its share, each party, until it has recovered its gas in storage and balanced its gas account, shall be entitled to take or deliver a volume of gas equal to fifty percent (50%) of each overproduced party's share of gas produced. If more than one party is entitled to the stated volume of the overproduced parties' share of gas, each shall have the right to take all or any part of its pro rata share thereof, said pro rata share being based on the ration of its participation percentage under this Operating Agreement to the participating percentages of all entitled parties. Each party shall at all times use its best efforts to regulate its takes and deliveries from the Unit Area so the lease will not be shut-in for overproducing the allowable, it any, assigned thereto by the regulatory body having jurisdiction.

3.

At all times while gas is produced from the Contract Area, any party taking or marketing gas shall furnish to the Operator monthly reports of the volumes of gas delivered to its purchaser during the preceding month and to the revenue attributable thereto; and any such party shall pay to the Operator a percentage of the proceeds of such sale equal to the aggregate percentage of any and all royalties and overriding royalties which are payable on gas produced by any such party, and Operator will, in turn, make settlement for all royalties and overriding royalties which are payable on gas produced from the Contract Area. In the event that the total royalties and overriding royalties so paid to the Operator be insufficient to discharge royalty and overriding royalty obligations on gas produced and marketed from the Contract Area, then any such deficiency will be borne by the party whose interest is burdened by the royalty or overriding royalty as to which the deficiency was asserted. Any party or parties contributing separate leases to the Contract Area shall furnish the Operator with division order title opinions on which Operator shall be entitled to rely in making distribution of royalties and overriding royalties share of production of liquid hydrocarbons recovered from the gas by lease equipment.

4.

Any party producing and taking or delivering gas to the purchaser shall pay any and all production taxes due on such gas. Also, any party producing and taking or delivering gas to its purchaser

shall pay, or cause to be paid, royalty and other obligations payable out of production due to its royalty
owners based on the volume of gas actually taken for its account.

5.

Nothing herein shall be construed to deny any party the right, from time to time, to produce and
take or deliver to the purchaser its full share of the allowable gas production to meet the deliverability
tests required by its purchaser.

6.

Should production of gas from any reservoir or producing formation of each wellbore be
permanently discontinued before the gas account is balanced, cash settlement will be made between the
underproduced and overproduced parties. In making such cash settlement, each overproduced party shall
make payment to Operator along with sufficient accounting documentation as hereinafter described and
Operator shall make disbursement to the underproduced parties. In making such settlement, the
underproduced party or parties will be paid a sum of money by the overproduced party or parties
attributable to the overproduction which said overproduced party sold or took but did not sell, less
applicable production taxes and royalties theretofore paid, less any reasonable compression, treating,
gathering, or transportation costs actually incurred and paid to third party, unaffected entitles and
otherwise directly in connection with the sale of the overproduction, at the price received by the
overproduced party at the time and from time to time the overproduced party delivered and sold that
portion of production that was attributable to the share of the underproduced party. For gas taken but not
sold, settlement shall be based on the price which the taking party would have received under its purchase
agreement if the gas had been sold at the time taken, or, in absence of a contract, at the weighted average
price of the parties selling gas at the time the gas was taken.

In the event any gas sold under this Agreement is subject to a regulated price by the FERC or a
successor agency or governmental authority with jurisdiction thereover, the price basis shall be the rate
collected, from time to time, which is not subject to possible refund, as provided by NGPA or as required
by the FERC pursuant to the final determination, order, or settlement applicable to the gas sold from any
reservoir (other than the general refund obligation of 18 CFR Section 273.301 or its successor regulation
and the potential refund obligations arising from the lack of absolute finality provided by Section 502 (d)
(1) and (2) of the NGPA plus any additional collected amount to be accounted for at such time as final
determination is made with respect thereto but shall not exceed their contractually entitled price of the
underproduced party. Notwithstanding the foregoing, should the underproduced party desire to receive
such additional collected amount which is subject to possible refund pending the issuance of said final
determination, order, or settlement, such underproduced party shall be entitled to the payment thereof
from the overproduced party of parties upon the underproduced party executing and delivering to said
overproduced party or parties an acceptable agreement in which the underproduced party agrees to repay
to the overproduced party of parties that amount so paid that is required by said final determination, order,
or settlement to be refunded, plus the interest thereon specified in the pertinent Order of the Commission.

Notwithstanding anything within this Agreement to the contrary, in no event shall an
underproduced party be entitled to an overproduction payment which is attributable to a price which was
higher than the underproduced party could have collected under the terms of its gas purchase contract, if
in existence, at the time the gas was taken by the overproduced party. Further, no overproduced party
shall ever be required to make an overproduction payment to any underproduced party, which exceeds the
amount the overproduced party actually received for the gas at the time it was produced.

7.

This Agreement shall be and remain in force and effect for a term concurrent with the term of that
certain Operating Agreement between the parties described above to which it comprises the exhibit noted
hereinabove.

8.

Nothing herein shall change or affect each party's obligation to pay its proportionate share of all
costs and liabilities incurred in JOA operations as its share thereof is set forth in the above described Joint
Operating Agreement.

9.

The terms, covenants and conditions of this Agreement shall be binding upon and shall inure to
the benefit of the parties hereto and their respective successors and assigns. The parties hereto agree to
give notice of the existence of this agreement to any successor in interest and make any transfer of any
interest in the lease or any part thereof subject to the terms of this Agreement.

# EXHIBIT "D"

Attached to and made a part of that certain Operating Agreement dated November 1, 2006, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., McCombs Energy, Ltd., WAC Investment Company, L.L.C., The Rudman Partnership and Pickens Financial Group, LLC, as Non-Operators.

Operator shall carry the following insurance with the limits stipulated below for the joint account. Operator shall have the right to charge the joint account premiums for the insurance coverage required by this Exhibit. Such premiums shall be allocated to the joint account using a fair and reasonable method based on the nature of the operations covered by this Agreement. Non-operating working interest owners shall be named as additional insured on the liability policies. This insurance shall be primary. Certificates of insurance will be provided upon request.

I.      WORKERS' COMPENSATION AND EMPLOYER'S LIABILITY

A. Workers' Compensation and Employer's Liability Insurance covering the employees of Operator engaged in operations hereunder in compliance with the applicable State and Federal Laws.

B. Extension of Coverage B of policy to provide for not less than $500,000 for death or injury to one person in any one accident.

II.     COMPREHENSIVE GENERAL LIABILITY

Coverage for all operations conducted hereunder by Operator for the Joint Account with a combined single limit each occurrence/aggregate of $2,000,000 for bodily injury and property damage. Said Comprehensive General Liability Insurance shall include contractual liability coverage.

III.    AUTOMOBILE LIABILITY

Coverage shall include owned, non-owned and hired vehicles. Limit $500,000 combined single limit each occurrence for bodily injury and property damage.

IV.     EXCESS LIABILITY

Operator shall carry excess liability insurance in an amount necessary to provide a total of $5,000,000 coverage for both Automobile Liability and Comprehensive General Liability.

Any party, at its own expense, may carry its own coverage for Excess Liability Insurance with limits as set forth in this Section IV. Any party so electing must notify Operator of such election prior to commencement of operations and provide a certificate of insurance evidencing the appropriate limits of liability. Upon timely notification such party will not be charged by Operator for the coverage.

V.      EXTRA EXPENSE LIABILITY

Operator's Extra Expense coverage including control of well, seepage, pollution and contamination coverage, cleanup and/or containment coverage, redrilling and/or restoring, shall be carried by Operator, subject to limit(s) as shown below and subject to deductible not to exceed $25,000 per occurrence.

Liability Limit: $5,000,000

Any party, at its own expense, may carry its own coverage for Extra Expense Liability Insurance with limits as set forth in this Section V. Any party so electing must notify Operator of such election prior to commencement of operations and provide a certificate of insurance evidencing the appropriate limits of liability. Upon timely notification such party will not be charged by Operator for the coverage.

ANY PARTY, at its own expense, may acquire such additional insurance as it may deem necessary to protect its own interest against claims, losses, damages or destruction to property arising out of operations hereunder.

**EXHIBIT "E"**

Attached to and made a part of that certain Operating Agreement dated January 25, 2006, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., McCombs Energy, LTD, WAC Investment Company, L.L.C., The Rudman Partnership and Pickens Financial Group, LLC, as Non-Operators.

## GAS BALANCING AGREEMENT

Subject to and under the terms of the above described Operating Agreement, the parties hereto own and are entitled to share in the oil and gas produced from the wells completed on the Joint Operating Area described in the Operating Agreement (the "JOA").

Each party shall have the right, but not the obligation, to make arrangements to sell or utilize its share of the gas produced from said JOA. However, one or more of the parties may be unable to take or market its interest in the gas production from time to time; therefore, to permit any party to produce and dispose of its interest in the gas production from the JOA with as much flexibility as possible, the parties hereto agree to the storage and balancing agreement herein set forth.

1.

Subject to the provisions of the Operating Agreement to which this Exhibit is attached, during the period or periods when any party hereto has no market for, or its purchaser is unable to take or if any party elects not to take its share of gas, the other parties, or any of them, shall be entitled to produce and take said share, and each of such taking parties shall have the right to take all or any part of its pro rata share thereof, said pro rata share being based on the ratio of its participation percentage under this Operating Agreement to the participation percentages of all taking parties. All parties hereto shall share in and own the condensate recovered at the surface in accordance with their respective interest, but each party taking such gas shall own all of the gas delivered to its purchaser. Any party whose share of gas is not marketed shall be credited with gas in storage equal to its share of the gas produced, less its share of the gas used in lease operation, vented or lost. Operator shall maintain a current account of the gas balance between the parties and shall furnish all parties hereto monthly statements showing the total quantity of gas produced, used in lease operations, vented or lost, and the total quantity of condensate recovered.

2.

After notice to Operator, any party may begin taking or delivering its share of the gas produced. In addition to its share, each party, until it has recovered its gas in storage and balanced its gas account, shall be entitled to take or deliver a volume of gas equal to fifty percent (50%) of each overproduced party's share of gas produced. If more than one party is entitled to the stated volume of the overproduced parties' share of gas, each shall have the right to take all or any part of its pro rata share thereof, said pro rata share being based on the ration of its participation percentage under this Operating Agreement to the participating percentages of all entitled parties. Each party shall at all times use its best efforts to regulate its takes and deliveries from the Unit Area so the lease will not be shut-in for overproducing the allowable, it any, assigned thereto by the regulatory body having jurisdiction.

3.

At all times while gas is produced from the Contract Area, any party taking or marketing gas shall furnish to the Operator monthly reports of the volumes of gas delivered to its purchaser during the preceding month and to the revenue attributable thereto; and any such party shall pay to the Operator a percentage of the proceeds of such sale equal to the aggregate percentage of any and all royalties and overriding royalties which are payable on gas produced by any such party, and Operator will, in turn, make settlement for all royalties and overriding royalties which are payable on gas produced from the Contract Area. In the event that the total royalties and overriding royalties so paid to the Operator be insufficient to discharge royalty and overriding royalty obligations on gas produced and marketed from the Contract Area, then any such deficiency will be borne by the party whose interest is burdened by the royalty or overriding royalty as to which the deficiency was asserted. Any party or parties contributing separate leases to the Contract Area shall furnish the Operator with division order title opinions on which Operator shall be entitled to rely in making distribution of royalties and overriding royalties share of production of liquid hydrocarbons recovered from the gas by lease equipment.

4.

Any party producing and taking or delivering gas to the purchaser shall pay any and all production taxes due on such gas. Also, any party producing and taking or delivering gas to its purchaser

shall pay, or cause to be paid, royalty and other obligations payable out of production due to its royalty owners based on the volume of gas actually taken for its account.

5.

Nothing herein shall be construed to deny any party the right, from time to time, to produce and take or deliver to the purchaser its full share of the allowable gas production to meet the deliverability tests required by its purchaser.

6.

Should production of gas from any reservoir or producing formation of each wellbore be permanently discontinued before the gas account is balanced, cash settlement will be made between the underproduced and overproduced parties. In making such cash settlement, each overproduced party shall make payment to Operator along with sufficient accounting documentation as hereinafter described and Operator shall make disbursement to the underproduced parties. In making such settlement, the underproduced party or parties will be paid a sum of money by the overproduced party or parties attributable to the overproduction which said overproduced party sold or took but did not sell, less applicable production taxes and royalties theretofore paid, less any reasonable compression, treating, gathering, or transportation costs actually incurred and paid to third party, unaffected entitles and otherwise directly in connection with the sale of the overproduction, at the price received by the overproduced party at the time and from time to time the overproduced party delivered and sold that portion of production that was attributable to the share of the underproduced party. For gas taken but not sold, settlement shall be based on the price which the taking party would have received under its purchase agreement if the gas had been sold at the time taken, or, in absence of a contract, at the weighted average price of the parties selling gas at the time the gas was taken.

In the event any gas sold under this Agreement is subject to a regulated price by the FERC or a successor agency or governmental authority with jurisdiction thereover, the price basis shall be the rate collected, from time to time, which is not subject to possible refund, as provided by NGPA or as required by the FERC pursuant to the final determination, order, or settlement applicable to the gas sold from any reservoir (other than the general refund obligation of 18 CFR Section 273.301 or its successor regulation and the potential refund obligations arising from the lack of absolute finality provided by Section 502 (d) (1) and (2) of the NGPA plus any additional collected amount to be accounted for at such time as final determination is made with respect thereto but shall not exceed their contractually entitled price of the underproduced party. Notwithstanding the foregoing, should the underproduced party desire to receive such additional collected amount which is subject to possible refund pending the issuance of said final determination, order, or settlement, such underproduced party shall be entitled to the payment thereof from the overproduced party of parties upon the underproduced party executing and delivering to said overproduced party or parties an acceptable agreement in which the underproduced party agrees to repay to the overproduced party of parties that amount so paid that is required by said final determination, order, or settlement to be refunded, plus the interest thereon specified in the pertinent Order of the Commission.

Notwithstanding anything within this Agreement to the contrary, in no event shall an underproduced party be entitled to an overproduction payment which is attributable to a price which was higher than the underproduced party could have collected under the terms of its gas purchase contract, if in existence, at the time the gas was taken by the overproduced party. Further, no overproduced party shall ever be required to make an overproduction payment to any underproduced party, which exceeds the amount the overproduced party actually received for the gas at the time it was produced.

7.

This Agreement shall be and remain in force and effect for a term concurrent with the term of that certain Operating Agreement between the parties described above to which it comprises the exhibit noted hereinabove.

8.

Nothing herein shall change or affect each party's obligation to pay its proportionate share of all costs and liabilities incurred in JOA operations as its share thereof is set forth in the above described Joint Operating Agreement.

9.

The terms, covenants and conditions of this Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns. The parties hereto agree to give notice of the existence of this agreement to any successor in interest and make any transfer of any interest in the lease or any part thereof subject to the terms of this Agreement.

## ACKNOWLEDGMENTS

STATE OF LOUISIANA

PARISH OF CADDO

On this 14th day of December, 2006, before me appeared David A. Barlow, to me known, who being by me duly sworn, did say that he is the Chief Operating Officer for Sklar Exploration Company L.L.C., a Louisiana limited liability company, and that the foregoing instrument was signed by him on behalf of said company, and said Appearer acknowledged said instrument to be the free act and deed of said company.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Notary Public in and for the Parish of Caddo
State of Louisiana

Tyler E. Adams, Jr. Notary Public # 50412
Caddo Parish, Louisiana
My Commission is for Life

STATE OF LOUISIANA

PARISH OF CADDO

On this 14th day of December, 2006, before me appeared David A. Barlow, to me known, who being by me duly sworn, did say that he is the Chief Operating Officer for Sklarco L.L.C., a Louisiana limited liability company, and that the foregoing instrument was signed by him on behalf of said company. and said Appearer acknowledged said instrument to be the free act and deed of said company.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Notary Public in and for the Parish of Caddo
State of Louisiana

Tyler E. Adams, Jr. Notary Public # 50412
Caddo Parish, Louisiana
My Commission is for Life

STATE OF TEXAS

COUNTY OF _____

On this _____ day of _____, 2006, before me appeared Ricky Haikin, to me known, who being by me duly sworn, did say that he is the Vice President of McCombs Energy, L.L.C., a Texas limited liability company, and that the foregoing instrument was signed by him on behalf of said company, and said Appearer acknowledged said instrument to be the free act and deed of said company.

IN WITNESS WHEREOF, I hereunto set my hand and official seal

Notary Public in and for the State of Texas

STATE OF LOUISIANA

COUNTY OF CADDO

On this _____ day of _____, 2006, before me appeared Micahel E. Riddick, to me known, who being by me duly sworn, did say that he is the Executive Vice Presidentt for WAC Investment Company, LLC, a Louisiana limited liability company, and that the foregoing instrument was signed by him on behalf of said company, and said Appearer acknowledged said instrument to be the free act and deed of said company.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Notary Public in and for the State of Louisiana

**ACKNOWLEDGMENTS**

STATE OF LOUISIANA

PARISH OF CADDO

On this 14ᵀᴴ day of December, 2006, before me appeared David A. Barlow, to me known, who being by me duly sworn, did say that he is the Chief Operating Officer for Sklar Exploration Company L.L.C., a Louisiana limited liability company, and that the foregoing instrument was signed by him on behalf of said company, and said Appearer acknowledged said instrument to be the free act and deed of said company.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Notary Public in and for the Parish of Caddo
State of Louisiana

Tyler E. Adams. Jr. Notary Public # 50412
Caddo Parish, Louisiana
My Commission is for Life

STATE OF LOUISIANA

PARISH OF CADDO

On this 14ᵀᴴ day of December, 2006, before me appeared David A. Barlow, to me known, who being by me duly sworn, did say that he is the Chief Operating Officer for Sklarco L.L.C., a Louisiana limited liability company, and that the foregoing instrument was signed by him on behalf of said company, and said Appearer acknowledged said instrument to be the free act and deed of said company.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Notary Public in and for the Parish of Caddo
State of Louisiana

Tyler E. Adams, Jr. Notary Public # 50412
Caddo Parish, Louisiana
My Commission is for Life

STATE OF TEXAS

COUNTY OF Harris

On this 19 day of Dec, 2006, before me appeared Ricky Haikin, to me known, who being by me duly sworn, did say that he is the Vice President of McCombs Energy, L.L.C., a Texas limited liability company, and that the foregoing instrument was signed by him on behalf of said company, and said Appearer acknowledged said instrument to be the free act and deed of said company.

IN WITNESS WHEREOF, I hereunto set my hand and official seal

SHARON METCALF McDONALD
Notary Public, State of Texas
Commission Expires 12-29-2009

Notary Public in and for the State of Texas

STATE OF LOUISIANA

COUNTY OF CADDO

On this _____ day of _____, 2006, before me appeared Micahel E. Riddick, to me known, who being by me duly sworn, did say that he is the Executive Vice Presidentt for WAC Investment Company, LLC, a Louisiana limited liability company, and that the foregoing instrument was signed by him on behalf of said company, and said Appearer acknowledged said instrument to be the free act and deed of said company.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Notary Public in and for the State of Louisiana

## ACKNOWLEDGMENTS

STATE OF LOUISIANA

PARISH OF CADDO

On this 14th day of December, 2006, before me appeared David A. Barlow, to me known, who being by me duly sworn, did say that he is the Chief Operating Officer for Sklar Exploration Company L.L.C., a Louisiana limited liability company, and that the foregoing instrument was signed by him on behalf of said company, and said Appearer acknowledged said instrument to be the free act and deed of said company.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Notary Public in and for the Parish of Caddo
State of Louisiana

Tyler E. Adams. Jr. Notary Public # QQ412
Caddo Parish, Louisiana
My Commission is for Life

STATE OF LOUISIANA

PARISH OF CADDO

On this 14th day of December, 2006, before me appeared David A. Barlow, to me known, who being by me duly sworn, did say that he is the Chief Operating Officer for Sklarco L.L.C., a Louisiana limited liability company, and that the foregoing instrument was signed by him on behalf of said company, and said Appearer acknowledged said instrument to be the free act and deed of said company.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Notary Public in and for the Parish of Caddo
State of Louisiana

Tyler E. Adams. Jr. Notary Public # 50412
Caddo Parish, Louisiana
My Commission is for Life

STATE OF TEXAS

COUNTY OF _____

On this _____ day of _____, 2006, before me appeared Ricky Haikin, to me known, who being by me duly sworn, did say that he is the Vice President of McCombs Energy, L.L.C., a Texas limited liability company, and that the foregoing instrument was signed by him on behalf of said company, and said Appearer acknowledged said instrument to be the free act and deed of said company.

IN WITNESS WHEREOF, I hereunto set my hand and official seal

Notary Public in and for the State of Texas

STATE OF LOUISIANA

COUNTY OF CADDO

On this 20th day of December, 2006, before me appeared Micahel E. Riddick, to me known, who being by me duly sworn, did say that he is the Executive Vice Presidentt for WAC Investment Company, LLC, a Louisiana limited liability company, and that the foregoing instrument was signed by him on behalf of said company, and said Appearer acknowledged said instrument to be the free act and deed of said company.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

KAREN L. CODDINGTON, Notary Public
ID # 2088
Caddo Parish, Louisiana
My Commission is for Life

Notary Public in and for the State of Louisiana

STATE OF TEXAS

COUNTY OF Dallas

On this 28 day of December , 2006, before me appeared Michael K. Pickens, to me known, who being by me duly sworn, did say that he is the Vice President for Pickens Financial Group, LLC, a Texas limited liability company, and that the foregoing instrument was signed by him on behalf of said company, and said Appearer acknowledged said instrument to be the free act and deed of said company.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

LINDA M HOWARD
Notary Public, State of Texas
My Commission Expires
November 03, 2009

_Linda M. Howard_
Notary Public in and for the State of Texas

STATE OF TEXAS

COUNTY OF _____

On this _____ day of _____, 2006, before me appeared W. R. (Trey) Sibley, III, to me known, who being by me duly sworn, did say that he is the Attorney in Fact for The Rudman Partnership, a Texas general partnership, and that the foregoing instrument was signed by him on behalf of said partnership, and Appearer acknowledged said instrument to be the free act and deed of said partnership.

IN WITNESS WHEREOF, I hereunto set my hand and official seal

_____
Notary Public in and for the State of Texas

STATE OF TEXAS

COUNTY OF _____

On this _____ day of _____, 2006, before me appeared Michael K. Pickens, to me known, who being by me duly sworn, did say that he is the Vice President for Pickens Financial Group, LLC, a Texas limited liability company, and that the foregoing instrument was signed by him on behalf of said company, and said Appearer acknowledged said instrument to be the free act and deed of said company.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public in and for the State of Texas

STATE OF TEXAS

COUNTY OF Dallas

On this 20th day of December, 2006, before me appeared W. R. (Trey) Sibley, III, to me known, who being by me duly sworn, did say that he is the Attorney in Fact for The Rudman Partnership, a Texas general partnership, and that the foregoing instrument was signed by him on behalf of said partnership, and Appearer acknowledged said instrument to be the free act and deed of said partnership.

IN WITNESS WHEREOF, I hereunto set my hand and official seal

_____
Notary Public in and for the State of Texas



June 11, 2012

**(Via Federal Express)**
TO:    Working Interest Owners

Re:    Escambia Prospect, Escambia and Conecuh
Counties, Alabama

Dear Owners:

For the third and hopefully final time, I am sending to each of you for execution an Amendment to the Operating Agreement for the Escambia Prospect JOA. The purpose of this amendment is to re-establish and amend the AMI for the prospect. We have sent two prior proposed amendments, but in both cases, the proposed documentation was not agreeable to all of the parties and therefore did not come into effect. We understand that this revised amendment meets with the approval of all parties and request that you execute duplicate originals, keeping one executed original for your records and returning the other executed original to us for our records in the enclosed prepaid Federal Express envelope. We appreciate your prompt attention to this request.

On a separate note, we plan on closing on the Cedar Creek Land & Timber leases this week and hope to send out documentation regarding our Shipps Creek Prospect to all of our owners shortly thereafter.

Yours very truly,

David A. Barlow
President & Chief Operating Officer

DAB:vmd
cc:    Land w/encl.

*tel:* 318.227.8668 • *fax:* 318.227.9012 • 401 Edwards Street, Ste 1601 • Shreveport, Louisiana 71101

## AMENDMENT TO OPERATING AGREEMENT

This Amendment to Operating Agreement (the "Amendment") is entered into effective as of November 1, 2011 (the "Effective Date"), by and between the following (hereinafter sometimes referred to individually as a "Party" and collectively as the "Parties"):

> **SKLAR EXPLORATION COMPANY L.L.C. ("SEC")**, a Louisiana limited liability company, whose address is Louisiana Tower, Suite 1601, 401 Edwards Street, Shreveport, Louisiana 71101, represented herein by its President & Chief Operating Officer, David A. Barlow;

> **SKLARCO L.L.C. ("Sklarco")**, a Louisiana limited liability company, whose address is Louisiana Tower, Suite 1601, 401 Edwards Street, Shreveport, Louisiana 71101, represented herein by its President & Chief Operating Officer, David A. Barlow;

> **MCCOMBS ENERGY, LTD.**, a Texas limited partnership, whose address is 5599 San Felipe, Suite 1200, Houston, Texas 77056-2794, represented herein by its Vice President, Ricky Haikin;

> **JJS WORKING INTERESTS LLC**, a Texas limited liability company, whose address is 4295 San Felipe, Suite 207, Houston, Texas 77027, represented herein by Houston Bulldog Capital Management, LLC, its duly authorized Manager, represented herein by Justin Simons, in his capacity as the duly authorized Manager of Houston Bulldog Capital Management, LLC;

> **FANT ENERGY LIMITED**, a Texas limited partnership, whose address is 5800 Westview Drive, Houston, Texas 77055, represented herein by its General Partner, Richard E. Fant L.L.C., which itself is represented herein by its Manager, Phil O. Kelley;

> **PICKENS FINANCIAL GROUP, L.L.C.**, a Texas limited liability company, whose address is 8499 Greenville Avenue, Suite 105, Dallas, TX 75231-2417, represented herein by Michael K. Pickens, as the duly authorized Vice President of said company;

> **FLEET HOWELL**, 416 Travis Street, Suite 715, Shreveport, Louisiana 71101;

> **TAUBER EXPLORATION & PRODUCTION CO.**, a Texas corporation, whose address is 55 Waugh Drive, Suite 600, Houston TX 77007, represented herein by Richard E. Tauber, as the duly authorized President of said company;

> **TIEMBO, LTD.**, a Texas limited partnership, whose address is P. O. Box 270415, Houston, Texas 77277-0415, represented herein by its Registered Agent, Mark Rauch;

**KUDZU OIL PROPERTIES, LLC,** a Mississippi limited liability company, whose address is 300 Concourse Blvd., Suite 101, Ridgeland, Mississippi 39157, represented herein by its Executive Vice President, R. Nash Neyland;

**MARKSCO, L.L.C.,** a Louisiana limited liability company, whose address is 333 Texas Street, Suite 1050, Shreveport, Louisiana 71101, represented herein by its Member, Mark P. Sealy;

**LANDMARK EXPLORATION, LLC,** a Mississippi limited liability company, whose address is Post Office Box 12004, Jackson, MS 39236, represented herein by Larry Johnson, as the duly authorized Manager/Member of said company;

**CRAFT EXPLORATION COMPANY, LLC,** a Mississippi limited liability company, whose address is 325 Lakeshire Parkway, Canton, MS 39046, represented herein by Steven H. Craft, as the duly authorized Manager/Member of said company;

**DICKSON OIL & GAS, LLC,** a Louisiana limited liability company, whose address is Post Office Box 52479, Shreveport, Louisiana 71135, represented herein by its Manager, C. Bickham Dickson III;

**BUNDERO INVESTMENT COMPANY, L.L.C.,** a Louisiana limited liability company, whose address is 333 Texas Street, Suite 300, Shreveport, Louisiana 71101, represented herein by its Manager, Robert P. Bowman;

**RESOURCE VENTURES, LLC,** an Indiana limited liability company, whose address is 8369 South Park Lane, Suite B, Littleton, CO 80120, represented herein by Mark A. Arnold, as the duly authorized General Manager of said company; and

**THE RUDMAN PARTNERSHIP** ("Rudman"), a Texas general partnership, whose address is 1700 Pacific Avenue, Suite 4700, Dallas, TX 75204, represented herein by W.R. (Trey) Sibley, III, as the duly authorized Attorney-In-Fact of said partnership;

WHEREAS, each of the above-named Parties or his/her/its predecessor in title entered into a Participation Agreement dated November 1, 2006, which had attached thereto a Model Form Operating Agreement (A.A.P.L. Form 610-1982) (the "Operating Agreement") governing development of the Escambia Prospect (as described in the Participation Agreement and Operating Agreement) after the drilling of the initial well provided for in the Participation Agreement; and

wd.639994                                                              2

WHEREAS, pursuant to the terms of the Participation Agreement said Operating Agreement is currently in effect and several wells have been drilled by the Parties pursuant to the Operating Agreement; and

WHEREAS, the Parties named above constitute all of the current Parties to the Operating Agreement; and

WHEREAS, the Contract Area and Area of Mutual Interest ("AMI") covered by the Operating Agreement are described in Exhibit A thereto and depicted on Exhibit A2 thereto; and

WHEREAS, Article XV. M of the Operating Agreement sets forth the terms and provisions governing the AMI and provides that the AMI "shall remain in force and effect for a term of five (5) years from the date of this [Operating] Agreement;" and

WHEREAS, SEC and Sklarco have taken additional leases in areas outside the existing AMI and have offered those leases to the other Parties, and all of those Parties, except Rudman, have agreed to participate in the acquisition of those leases, as if said leases were within the AMI; and

WHEREAS, all of the Parties desire to amend the AMI and Contract Area as described in the Exhibits to the Operating Agreement to add thereto the additional property described in the revised Exhibits A and A-2 attached hereto; and

WHEREAS, all of the Parties also desire to extend the term of the term of AMI in the Operating Agreement from five (5) years to seven (7) years from November 1, 2006; and

WHEREAS, Rudman owns unleased mineral interests in the expanded AMI described below, which mineral interests are excluded from, and not covered by, this Amendment and the expanded Contract Area and AMI provided for in this Amendment; and

WHEREAS, at the time the Participation Agreement and Operating Agreement were signed, Rudman owned unleased mineral interests in the Contract Area and AMI that were intended to be, but were not, excluded from the Operating Agreement and the Contract Area and AMI; and

WHEREAS, two previous amendments to the Operating Agreement were circulated to the Parties (one in March and the other in May of this year) prior to this

Amendment but those amendments did not go into effect because they were not signed by all of the Parties, and, accordingly, those proposed amendments are replaced and superseded by this Amendment;

NOW, THEREFORE, the Parties do hereby amend Exhibits A and A-2 to the Operating Agreement to add the following described property in Escambia and Conecuh Counties to the Contract Area and the AMI (the "added property"):

Township 2, North Range 12 East : Sections 1-18;

Township 2 North Range 13 East: Sections 1-18;

Township 3 North, Range 12 East: Sections 4-9, 16-21, & 28-33;

Township 3 North, Range 13 East: Sections 1, 2, 11, 12, 13, 14, 23, 24, 25, 26, 35 and 36;

Township 4 North, Range 12 East: Sections 28-33;

Township 4 North, Range 13 East: Sections 25, 26, 35 & 36

Township 4 North , Range 14 East: Sections 30 & 31

Township 3 North, Range 14 East: Sections 6, 7, 18, 19, 30 & 31

Township 2 North, Range 14 East: Sections 6, 7 & 18

Attached hereto are revised Exhibits A and A-2 to the Operating Agreement, which are entitled Revised Exhibit A and Revised Exhibit A-2. The additional property added to the Contract Area and AMI by this Amendment (i.e., the added property) is included in the property description set forth in Revised Exhibit A attached hereto and is included within the boundaries of the Contract Area and AMI shown on Revised Exhibit A-2 attached hereto. The added property lies to the west of the western limit, to the south of the southern limit, and to the east of the eastern limit of the original AMI. It is not the intention of the Parties to, and they do not hereby, add to the AMI or Contract Area any property within the exterior boundaries of the original AMI if that property was previously excluded (in whole or in part) from the original AMI by the terms of the Operating Agreement (and, in particular, the property excluded from the AMI as to Rudman) or by the terms of any document amending the Operating Agreement. Additionally, anything herein to the contrary notwithstanding, there is hereby excluded from the added property any unleased mineral interest owned by Rudman within the boundaries of the added property, and the terms and provisions of the Operating Agreement and this Amendment shall not apply to any such unleased mineral interest

owned by Rudman. Also, the Parties hereby amend the Operating Agreement and the Participation Agreement to which it was attached to exclude therefrom and from the Contract Area and AMI any unleased mineral interests owned by Rudman as of the effective date of the Participation Agreement (i.e., 11/1/06).

The Parties do also hereby amend Article XV M of the Operating Agreement to extend the original term of the AMI from five (5) years to seven (7) years; and to that end the Parties hereby amend the first paragraph of said Article XV M by substituting the words "seven (7) years" for the words "five (5) years" where the same appear in said paragraph. The amended first paragraph of said Article XV M reads as follows:

> "The parties hereby create an Area of Mutual Interest ("AMI") consisting of the lands outlined by a bold red line on the plat attached hereto as Exhibit "A-2". This AMI shall remain in force and effect for a term of seven (7) years from the date of this Agreement and, insofar and only insofar as the AMI includes lands covered by oil and gas leases and/or oil and gas interests subject to this Agreement, as long thereafter as said oil and gas leases and/or oil and gas interests remain in force and effect. This AMI shall terminate after seven (7) years as to all such lands not covered by oil and gas leases and/or oil and gas interests subject to this Agreement."

The Parties do further acknowledge and stipulate that the oil, gas and mineral leases heretofore acquired by SEC and Sklarco within the boundaries of the property added to the AMI by this Amendment (i.e., within the boundaries of the added property) have been offered to the Parties as required by Article XV M of the Operating Agreement, that all Offerees (as defined in the Operating Agreement), other than Rudman, have agreed to participate in the acquisition of those leases and have paid their share of the Acquisition costs for those leases, and that those leases are now subject to the terms and provisions of the Operating Agreement and shall be owned by those Offerees who elected to participate in the acquisition of those leases just as if this Amendment had been executed prior to the date those leases were offered to the Offerees. The aforesaid leases are described on Revised Exhibit A-1 attached hereto, commencing with number 65 on that exhibit, and Revised Exhibit A-1 hereto shall supplement, and shall add to, Exhibit A-1 to the Operating Agreement.

Nothing in this Amendment shall affect or alter any previous election by any Offeree (as defined in the Operating Agreement) to acquire or not acquire an interest in any oil and gas lease or oil and gas interest covering lands within the AMI as originally described in the Operating Agreement. The sole purpose of this Amendment is to add the

wd.639994                                    5

above described lands (i.e., the added property) to the Contract Area and AMI of the Operating Agreement to exclude Rudman's unleased mineral interests from the Contract Area and AMI (including the added property) as provided above, and to extend the term of the AMI as set forth above, all to be effective as of the Effective Date.

Except as herein amended, the Parties hereto do ratify, adopt and confirm all of the terms and provisions of the Operating Agreement and the exhibits thereto.  This Amendment may be executed in any number of counterparts and each counterpart shall constitute and shall be deemed to be an original instrument, but all such counterparts shall constitute but one instrument.

IN WITNESSES WHEREOF, the Parties have hereunto set their hands and seals to be effective as of the Effective Date.

SKLAR EXPLORATION COMPANY L.L.C.

By_____
    David A. Barlow
    President & Chief Operating Officer

SKLARCO L.L.C.

By_____
    David A. Barlow
    President & Chief Operating Officer

MCCOMBS ENERGY, LTD.

By_____
    Ricky Haikin
    Vice President

JJS WORKING INTERESTS LLC
By:    Houston Bulldog Capital Management, LLC

By_____
    Justin Simons
    Manager

FANT ENERGY LIMITED
By:    Richard E. Fant, L.L.C., its General Partner

By_____
    Phil O. Kelley
    Manager

above described lands (i.e., the added property) to the Contract Area and AMI of the Operating Agreement to exclude Rudman's unleased mineral interests from the Contract Area and AMI (including the added property) as provided above, and to extend the term of the AMI as set forth above, all to be effective as of the Effective Date.

Except as herein amended, the Parties hereto do ratify, adopt and confirm all of the terms and provisions of the Operating Agreement and the exhibits thereto. This Amendment may be executed in any number of counterparts and each counterpart shall constitute and shall be deemed to be an original instrument, but all such counterparts shall constitute but one instrument.

IN WITNESSES WHEREOF, the Parties have hereunto set their hands and seals to be effective as of the Effective Date.

SKLAR EXPLORATION COMPANY L.L.C.

By _____
David A. Barlow
President & Chief Operating Officer

SKLARCO L.L.C.

By _____
David A. Barlow
President & Chief Operating Officer

MCCOMBS ENERGY, LTD.

By _____
Ricky Haikin
Vice President

JJS WORKING INTERESTS LLC
By:     Houston Bulldog Capital Management, LLC

By_____
Justin Simons
Manager

FANT ENERGY LIMITED
By:     Richard E. Fant, L.L.C., its General Partner

By_____
Phil O. Kelley
Manager

above described lands (i.e., the added property) to the Contract Area and AMI of the Operating Agreement to exclude Rudman's unleased mineral interests from the Contract Area and AMI (including the added property) as provided above, and to extend the term of the AMI as set forth above, all to be effective as of the Effective Date.

Except as herein amended, the Parties hereto do ratify, adopt and confirm all of the terms and provisions of the Operating Agreement and the exhibits thereto. This Amendment may be executed in any number of counterparts and each counterpart shall constitute and shall be deemed to be an original instrument, but all such counterparts shall constitute but one instrument.

IN WITNESSES WHEREOF, the Parties have hereunto set their hands and seals to be effective as of the Effective Date.

SKLAR EXPLORATION COMPANY L.L.C.

By_____
David A. Barlow
President & Chief Operating Officer

SKLARCO L.L.C.

By_____
David A. Barlow
President & Chief Operating Officer

MCCOMBS ENERGY, LTD.

By_____
Ricky Haikin
Vice President

JJS WORKING INTERESTS LLC
By:   Houston Bulldog Capital Management, LLC

By_____
Justin Simons
Manager

FANT ENERGY LIMITED
By:   Richard E. Fant, L.L.C., its General Partner

By_____
Phil O. Kelley
Manager

above described lands (i.e., the added property) to the Contract Area and AMI of the Operating Agreement to exclude Rudman's unleased mineral interests from the Contract Area and AMI (including the added property) as provided above, and to extend the term of the AMI as set forth above, all to be effective as of the Effective Date.

Except as herein amended, the Parties hereto do ratify, adopt and confirm all of the terms and provisions of the Operating Agreement and the exhibits thereto. This Amendment may be executed in any number of counterparts and each counterpart shall constitute and shall be deemed to be an original instrument, but all such counterparts shall constitute but one instrument.

IN WITNESSES WHEREOF, the Parties have hereunto set their hands and seals to be effective as of the Effective Date.

SKLAR EXPLORATION COMPANY L.L.C.

By _____
    David A. Barlow
    President & Chief Operating Officer

SKLARCO L.L.C.

By _____
    David A. Barlow
    President & Chief Operating Officer

MCCOMBS ENERGY, LTD.

By _____
    Ricky Haikin
    Vice President

JJS WORKING INTERESTS LLC
By:    Houston Bulldog Capital Management, LLC

By _____
    Justin Simons
    Manager

FANT ENERGY LIMITED
By:    Richard E. Fant, L.L.C., its General Partner

By _____
    Phil O. Kelley
    Manager

wd.639994

6

PICKENS FINANCIAL GROUP, L.L.C.

By _____
      Michael K. Pickens
      Vice President
      JOA Amendment   6/11/2012


_____
      FLEET HOWELL

TAUBER EXPLORATION & PRODUCTION CO.


By_____
      Richard E. Tauber
      President
TIEMBO, LTD.


By_____
      Mark Rauch
      Registered Agent

KUDZU OIL PROPERTIES, L.L.C.


By_____
      R. Nash Neyland
      Executive Vice President

MARKSCO, L.L.C.


By_____
      Mark P. Sealy
      Member

LANDMARK EXPLORATION, LLC


By_____
      Larry Johnson
      Manager/Member

CRAFT EXPLORATION COMPANY, LLC


By_____
      Stephen H. Craft
      Manager/Member

DICKSON OIL & GAS, L.L.C.


By_____
      C. Bickham Dickson, III
      Manager

PICKENS FINANCIAL GROUP, L.L.C.


By_____
      Michael K. Pickens
      Vice President


_____
FLEET HOWELL

TAUBER EXPLORATION & PRODUCTION CO.


By_____
      Richard E. Tauber
      President

TIEMBO, LTD.


By_____
      Mark Rauch
      Registered Agent


KUDZU OIL PROPERTIES, L.L.C.


By_____
      R. Nash Neyland
      Executive Vice President


MARKSCO, L.L.C.


By_____
      Mark P. Sealy
      Member


LANDMARK EXPLORATION, LLC


By_____
      Larry Johnson
      Manager/Member


CRAFT EXPLORATION COMPANY, LLC


By_____
      Stephen H. Craft
      Manager/Member


DICKSON OIL & GAS, L.L.C.


By_____
      C. Bickham Dickson, III
      Manager

PICKENS FINANCIAL GROUP, L.L.C.


By_____
     Michael K. Pickens
     Vice President



_____
     FLEET HOWELL

TAUBER EXPLORATION & PRODUCTION CO.

By_____
     Richard E. Tauber
     President
TIEMBO, LTD.


By_____
     Mark Rauch
     Registered Agent

KUDZU OIL PROPERTIES, L.L.C.


By_____
     R. Nash Neyland
     Executive Vice President

MARKSCO, L.L.C.


By_____
     Mark P. Sealy
     Member

LANDMARK EXPLORATION, LLC


By_____
     Larry Johnson
     Manager/Member

CRAFT EXPLORATION COMPANY, LLC


By_____
     Stephen H. Craft
     Manager/Member

DICKSON OIL & GAS, L.L.C.


By_____
     C. Bickham Dickson, III
     Manager

*[Handwritten note in left margin:]* SIGNATURE PAGE TO: "AMENDMENT TO OPERATING AGREEMENT" - ESCAMBIA PROSPECT - CONECUH AND ESCAMBIA COUNTIES, ALABAMA. 6-18-2012

PICKENS FINANCIAL GROUP, L.L.C.


By_____
        Michael K. Pickens
        Vice President




_____
        FLEET HOWELL

TAUBER EXPLORATION & PRODUCTION CO.


By_____
        Richard E. Tauber
        President
TIEMBO, LTD.


By_____
        Mark Rauch
        Registered Agent

KUDZU OIL PROPERTIES, L.L.C.


By_____
        R. Nash Neyland
        Executive Vice President

MARKSCO, L.L.C.


By_____
        Mark P. Sealy
        Member

LANDMARK EXPLORATION, LLC


By_____
        Larry Johnson
        Manager/Member

CRAFT EXPLORATION COMPANY, LLC


By_____
        Stephen H. Craft
        Manager/Member

DICKSON OIL & GAS, L.L.C.


By_____
        C. Bickham Dickson, III
        Manager

PICKENS FINANCIAL GROUP, L.L.C.

By_____
     Michael K. Pickens
     Vice President

_____
     FLEET HOWELL

TAUBER EXPLORATION & PRODUCTION CO.

By_____
     Richard E. Tauber
     President
TIEMBO, LTD.

By_____
     Mark Rauch
     Registered Agent

KUDZU OIL PROPERTIES, L.L.C.

By_____
     R. Nash Neyland
     Executive Vice President

MARKSCO, L.L.C.

By_____
     Mark P. Sealy
     Member

LANDMARK EXPLORATION, LLC

By_____
     Larry Johnson
     Manager/Member

CRAFT EXPLORATION COMPANY, LLC

By_____
     Stephen H. Craft
     Manager/Member

DICKSON OIL & GAS, L.L.C.

By_____
     C. Bickham Dickson, III
     Manager

PICKENS FINANCIAL GROUP, L.L.C.


By_____
     Michael K. Pickens
     Vice President




_____
     FLEET HOWELL

TAUBER EXPLORATION & PRODUCTION CO.


By_____
     Richard E. Tauber
     President
TIEMBO, LTD.


By_____
     Mark Rauch
     Registered Agent

KUDZU OIL PROPERTIES, L.L.C.


By_____
     R. Nash Neyland
     Executive Vice President

MARKSCO, L.L.C.


By_____
     Mark P. Sealy
     Member

LANDMARK EXPLORATION, LLC


By_____
     Larry Johnson
     Manager/Member

CRAFT EXPLORATION COMPANY, LLC


By_____
     Stephen H. Craft
     Manager/Member

DICKSON OIL & GAS, L.L.C.


By_____
     C. Bickham Dickson, III
     Manager

PICKENS FINANCIAL GROUP, L.L.C.


By_____
     Michael K. Pickens
     Vice President




_____
     FLEET HOWELL

TAUBER EXPLORATION & PRODUCTION CO.


By_____
     Richard E. Tauber
     President
TIEMBO, LTD.


By_____
     Mark Rauch
     Registered Agent

KUDZU OIL PROPERTIES, L.L.C.


By_____
     R. Nash Neyland
     Executive Vice President

MARKSCO, L.L.C.


By_____
     Mark P. Sealy
     Member

LANDMARK EXPLORATION, LLC


By_____
     Larry Johnson
     Manager/Member

CRAFT EXPLORATION COMPANY, LLC


By_____
     Stephen H. Craft
     Manager/Member

DICKSON OIL & GAS, L.L.C.


By_____
     C. Bickham Dickson, III
     Manager

PICKENS FINANCIAL GROUP, L.L.C.


By_____
        Michael K. Pickens
        Vice President




_____
        FLEET HOWELL

TAUBER EXPLORATION & PRODUCTION CO.


By_____
        Richard E. Tauber
        President
TIEMBO, LTD.


By_____
        Mark Rauch
        Registered Agent

KUDZU OIL PROPERTIES, L.L.C.


By_____
        R. Nash Neyland
        Executive Vice President

MARKSCO, L.L.C.


By_____
        Mark P. Sealy
        Member

LANDMARK EXPLORATION, LLC


By_____
        Larry Johnson
        Manager/Member

CRAFT EXPLORATION COMPANY, LLC


By_____
        Stephen H. Craft
        Manager/Member

DICKSON OIL & GAS, L.L.C.


By_____
        C. Bickham Dickson, III
        Manager

PICKENS FINANCIAL GROUP, L.L.C.

By_____
    Michael K. Pickens
    Vice President


_____
    FLEET HOWELL

TAUBER EXPLORATION & PRODUCTION CO.

By_____
    Richard E. Tauber
    President
TIEMBO, LTD.

By_____
    Mark Rauch
    Registered Agent

KUDZU OIL PROPERTIES, L.L.C.

By_____
    R. Nash Neyland
    Executive Vice President

MARKSCO, L.L.C.

By_____
    Mark P. Sealy
    Member

LANDMARK EXPLORATION, LLC

By_____
    Larry Johnson
    Manager/Member

CRAFT EXPLORATION COMPANY, LLC

By_____
    Stephen H. Craft
    Manager/Member

DICKSON OIL & GAS, L.L.C.

By_____ III
    C. Bickham Dickson, III
    Manager

BUNDERO INVESTMENT COMPANY, L.L.C.

By_____
       Robert P. Bowman
       Manager

RESOURCE VENTURES, LLC


By_____
       Mark A. Arnold
       General Manager

THE RUDMAN PARTNERSHIP


By_____
       W. R. (Trey) Sibley, III
       Attorney-In-Fact

BUNDERO INVESTMENT COMPANY, L.L.C.

By_____
      Robert P. Bowman
      Manager

RESOURCE VENTURES, LLC

By_____
      Mark A. Arnold
      General Manager

THE RUDMAN PARTNERSHIP

By_____
      W. R. (Trey) Sibley, III
      Attorney-In-Fact

Amendment To Operating Agreement
Dated Effective 11-01-11

BUNDERO INVESTMENT COMPANY, L.L.C.

By_____
      Robert P. Bowman
      Manager

RESOURCE VENTURES, LLC

By_____
      Mark A. Arnold
      General Manager

THE RUDMAN PARTNERSHIP

By_____
      W. R. (Trey) Sibley, III
      Attorney-In-Fact

## ACKNOWLEDGMENTS

STATE OF LOUISIANA

PARISH OF CADDO

I, **Kim S. Elias**, a notary public in and for said Parish and State, hereby certify that David A. Barlow, whose name as President – Chief Operating Officer of SKLAR EXPLORATION COMPANY L.L.C., a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the 11th day of June, 2012.

**Kim S. Elias**
NOTARY PUBLIC
Kim S. Elias. Notary Public # 52698
Caddo Parish, Louisiana
My Commission is for Life

[AFFIX NOTARIAL SEAL]

My Commission Expires: at death


STATE OF LOUISIANA

PARISH OF CADDO

I, **Kim S. Elias**, a notary public in and for said Parish and State, hereby certify that David A. Barlow, whose name as President – Chief Operating Officer of SKLARCO L.L.C., a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the 11th day of June, 2012.

**Kim S. Elias**
NOTARY PUBLIC
Kim S. Elias. Notary Public # 52698
Caddo Parish, Louisiana
My Commission is for Life

[AFFIX NOTARIAL SEAL]

My Commission Expires: at death

STATE OF TEXAS

COUNTY OF _Harris_

I, _Sharon M. McDonald_, a notary public in and for said County and State, hereby certify that Ricky Haikin, whose name as Vice President of MCCOMBS ENERGY, LTD., a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _4_ day of _June_, 2012.

> SHARON METCALF McDONALD
> Notary Public, State of Texas
> Commission Expires 12-29-2013

_Sharon M. McDonald_
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _12/29/2013_

STATE OF TEXAS

COUNTY OF HARRIS

I, the undersigned notary public in and for said County in said State, hereby certify that Justin Simons whose name as Manager of Houston Bulldog Capital Management, LLC, the Manager of JJS WORKING INTERESTS, LLC, a Texas limited liability company, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the ___ day of_____, 2012.

_____
NOTARY PUBLIC

(AFFIX NOTARIAL SEAL)

My commission expires: _____

STATE OF TEXAS

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Ricky Haikin, whose name as Vice President of MCCOMBS ENERGY, LTD., a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the ___ day of _____, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF TEXAS

COUNTY OF HARRIS

I, the undersigned notary public in and for said County in said State, hereby certify that Justin Simons whose name as Manager of Houston Bulldog Capital Management, LLC, the Manager of JJS WORKING INTERESTS, LLC, a Texas limited liability company, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the 14th day of June, 2012.

_____
NOTARY PUBLIC

(AFFIX NOTARIAL SEAL)

My commission expires: 8-11-15

MARCIA A. DE LUNA
Notary Public, State of Texas
My Commission Expires
August 11, 2015

wd.639994                                    10

STATE OF TEXAS

COUNTY OF ___Harris___

    I, _Bert Campanelli_, a notary public in and for said County and State, hereby certify that Richard E. Fant, whose name as Manager of Richard E. Fant, LLC, the General Partner of FANT ENERGY LIMITED, a Texas limited partnership, represented herein by its General Partner, Richard E. Fant, L.L.C., which itself is represented herein by its Manager, Phil O. Kelley, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said limited partnership.

    Given under my hand and notarial seal this the _12_ day of ___June___, 2012.

_Bert Campanelli_
NOTARY PUBLIC

(AFFIX NOTARIAL SEAL)

My commission expires: _9-7-15_

STATE OF TEXAS

COUNTY OF _____

    I, _____, a notary public in and for said County and State, hereby certify that Michael K. Pickens, whose name as duly authorized Vice President of PICKENS FINANCIAL GROUP, L.L.C., a Texas limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    Given under my hand and notarial seal this the __ day of _____, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

wd.639994

11

STATE OF TEXAS

COUNTY OF _____

    I, _____, a notary public in and for said County and State, hereby certify that Richard E. Fant, whose name as Manager of Richard E. Fant, LLC, the General Partner of FANT ENERGY LIMITED, a Texas limited partnership, represented herein by its General Partner, Richard E. Fant, L.L.C., which itself is represented herein by its Manager, Phil O. Kelley, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said limited partnership.

    Given under my hand and notarial seal this the __ day of _____, 2012.


                           _____
                                 NOTARY PUBLIC

(AFFIX NOTARIAL SEAL)

My commission expires: _____


STATE OF TEXAS

COUNTY OF Dallas

    I, Marilyn L. Fulton, a notary public in and for said County and State, hereby certify that Michael K. Pickens, whose name as duly authorized Vice President of PICKENS FINANCIAL GROUP, L.L.C., a Texas limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    Given under my hand and notarial seal this the __ day of June, 2012.


NOTARY PUBLIC
MARILYN L FULTON
My Commission Expires
June 23, 2012

                               Marilyn L. Fulton
                                 NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: June 23, 2012

STATE OF LOUISIANA

PARISH OF CADDO

    I, _Melissa R. Ebarb_____, a notary public in and for said Parish and State, hereby certify that JAMES FLEET HOWELL, signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he executed the same as his free act and deed.

    Given under my hand and notarial seal this the 12th day of _June_____, 2012.

                             NOTARY PUBLIC
                              #68325

(AFFIX NOTARIAL SEAL)

My commission ~~expires:~~ is for Life

STATE OF TEXAS

COUNTY OF _____

    I, _____, a notary public in and for said County and State, hereby certify that Richard E. Tauber, whose name as duly authorized President of TAUBER EXPLORATION & PRODUCTION CO., a Texas corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    Given under my hand and notarial seal this the __ day of _____, 2012.

                         _____
                               NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF LOUISIANA

PARISH OF CADDO

     I, _____, a notary public in and for said Parish and State, hereby certify that JAMES FLEET HOWELL, signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he executed the same as his free act and deed.

     Given under my hand and notarial seal this the ___ day of _____, 2012.


                               _____
                                      NOTARY PUBLIC

(AFFIX NOTARIAL SEAL)

My commission expires: _____


STATE OF TEXAS

COUNTY OF _Harris_

     I, _Myla Wunderlich_, a notary public in and for said County and State, hereby certify that Richard E. Tauber, whose name as duly authorized President of TAUBER EXPLORATION & PRODUCTION CO., a Texas corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

     Given under my hand and notarial seal this the _18th_ day of _June_, 2012.


                            _Myla Wunderlich_
                                  NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

                                    MYLA WUNDERLICH
                                 Notary Public, State of Texas
                              Commission Expires 02-11-2016

STATE OF TEXAS

COUNTY OF _HARRIS_

    I, _PATTI L HANSON_, a notary public in and for said County and State, hereby certify that Mark Rauch, whose name as Registered Agent of TIEMBO, LTD., a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    Given under my hand and notarial seal this the _8_ day of _June_, 2012.

> PATTI L. HANSON
> MY COMMISSION EXPIRES
> January 18, 2015

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _1/18/15_


STATE OF MISSISSIPPI

COUNTY OF _____

    I, _____, a notary public in and for said County and State, hereby certify that R. Nash Neyland, Executive V.P. whose name as Manager of KUDZU OIL PROPERTIES, LLC, a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

    Given under my hand and notarial seal this the ___ day of _____, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF TEXAS

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Mark Rauch, whose name as Registered Agent of TIEMBO, LTD., a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

        Given under my hand and notarial seal this the __ day of _____, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF MISSISSIPPI

COUNTY OF Madison

I, Pamela F. Sebren, a notary public in and for said County and State, hereby certify that R. Nash Neyland, Executive V.P. whose name as Manager of KUDZU OIL PROPERTIES, LLC, a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

        Given under my hand and notarial seal this the 13 day of June, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF LOUISIANA

PARISH OF CADDO

PEGGY DAY GILL, NOTARY PUBLIC
CADDO PARISH, LOUISIANA
MY COMMISSION IS FOR LIFE
NOTARY NO. 2425

I, _____, a notary public in and for said Parish and State, hereby certify that Mark P. Sealy, whose name as Member of the MARKSCO L.L.C., a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such Member and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the 19th day of June _____, 2012.

_____
NOTARY PUBLIC

(AFFIX NOTARIAL SEAL)

My commission expires: at my death

STATE OF MISSISSIPPI

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Larry Johnson, whose name as duly authorized Manager/Member of LANDMARK EXPLORATION, LLC, a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the ___ day of _____, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF LOUISIANA

PARISH OF CADDO

     I, _____, a notary public in and for said Parish and State, hereby certify that Mark P. Sealy, whose name as Member of the MARKSCO L.L.C., a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such Member and with full authority, executed the same voluntarily for and as the act of said company.

     Given under my hand and notarial seal this the ___ day of _____, 2012.


_____
NOTARY PUBLIC


(AFFIX NOTARIAL SEAL)

My commission expires: _____




STATE OF MISSISSIPPI

COUNTY OF _Rankin_

     I, _Lena M. Mayfield_, a notary public in and for said County and State, hereby certify that Larry Johnson, whose name as duly authorized Manager/Member of LANDMARK EXPLORATION, LLC, a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

     Given under my hand and notarial seal this the _12_ day of _June_, 2012.


_Lena M. Mayfield_
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _2-17-13_

*(Notary seal: STATE OF MISSISSIPPI, NOTARY PUBLIC, ID # 92353, LENA M. MAYFIELD, Commission Expires Feb. 17, 2013, RANKIN COUNTY)*

STATE OF MISSISSIPPI

COUNTY OF *MADISON*

I, *Tye Gordan Densford*, a notary public in and for said County and State, hereby certify that Steven H. Craft, whose name as duly authorized Manager/Member of CRAFT EXPLORATION COMPANY, LLC, a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the 20 day of June, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____



STATE OF LOUISIANA

PARISH OF CADDO

I, _____, a notary public in and for said Parish and State, hereby certify that C. Bickham Dickson, III, whose name as Member of the DICKSON OIL & GAS, LLC, a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such Member and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the __ day of _____, 2012.

_____
NOTARY PUBLIC

(AFFIX NOTARIAL SEAL)

My commission expires: _____

wd.639994                                    15

STATE OF MISSISSIPPI

COUNTY OF _____

     I, _____, a notary public in and for said County and State, hereby certify that Steven H. Craft, whose name as duly authorized Manager/Member of CRAFT EXPLORATION COMPANY, LLC, a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

     Given under my hand and notarial seal this the __ day of _____, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF LOUISIANA

PARISH OF CADDO

     I, _GEORGE PORTOCARRERO_, a notary public in and for said Parish and State, hereby certify that C. Bickham Dickson, III, whose name as Member of the DICKSON OIL & GAS, LLC, a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such Member and with full authority, executed the same voluntarily for and as the act of said company.

     Given under my hand and notarial seal this the _3 5_ day of _June_, 2012.

_____
NOTARY PUBLIC

(AFFIX NOTARIAL SEAL)

My commission expires: _For Life_

GEORGE PORTOCARRERO
NOTARY PUBLIC - LOUISIANA
CADDO - BOSSIER PARISH
NOTARY ID NUMBER 056297
My Commission Is For Life

STATE OF LOUISIANA

PARISH OF CADDO

I, Deborah W-Cox , a notary public in and for said Parish and State, hereby certify that Robert P. Bowman, whose name as Member of BUNDERO INVESTMENT COMPANY, LLC, a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the 18th day of ____June____, 2012.

Deborah W. Cox
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _for life_

```
DEBORAH W. COX 26623
Notary Public
Parish of Caddo
State of Louisiana
```

STATE OF COLORADO

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Mark A. Arnold, whose name as duly authorized General Manager of RESOURCE VENTURES, LLC, an Indiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the __ day of _____, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF LOUISIANA

PARISH OF CADDO

I, _____, a notary public in and for said Parish and State, hereby certify that Robert P. Bowman, whose name as Member of BUNDERO INVESTMENT COMPANY, LLC, a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the ___ day of _____, 2012.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF COLORADO

COUNTY OF _Douglas_

I, _JoAnne Scherfel_, a notary public in and for said County and State, hereby certify that Mark A. Arnold, whose name as duly authorized General Manager of RESOURCE VENTURES, LLC, an Indiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said company.

Given under my hand and notarial seal this the _12Th_ day of _June_, 2012.

_Jo Anne Scherfel_
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _3/5/2013_

STATE OF TEXAS

COUNTY OF Dallas

    I, Robert Hiram Lucius , a notary public in and for said County and State, hereby certify that W. R. (Trey) Sibley, III, whose name as Attorney-in-Fact of THE RUDMAN PARTNERSHIP, a Texas general partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same for and as the act of said partnership.

    Given under my hand and notarial seal this the 15th day of June , 2012.

ROBERT HIRAM LUCIUS
Notary Public, State of Texas
My Commission Expires
04/15/2016

Robert Hiram Lucius
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: April 15, 2012

**REVISED EXHIBIT "A"**
**ESCAMBIA PROSPECT**
**CONECUH AND ESCAMBIA COUNTIES, ALABAMA**

**Attached to and made a part of that certain Amendment to Operating Agreement dated effective as of November 1, 2011 by and between SKLAR EXPLORATION COMPANY, as Operator, and SKLARCO L.L.C. et al., as Non-Operators**

1)      <u>Identification of lands subject to this agreement:</u>

<u>Contract Area*</u>

**All lands, oil and gas leasehold interest and oil and gas interest lying within the following sections as depicted on the black boundary as shown on the plat designated at Revised Exhibit "A-2:**

**Sections 1-18, Township 2 North, Range 12 East**
**Sections 1-18, Township 2 North, Range 13 East**
**Sections 6, 7 & 18, Township 2 North, Range 14 East**
**Sections 1-36, Township 3 North, Range 12 East**
**Sections 1-36 Township 3 North, 13 East**
**Sections 6, 7, 18, 19, 30 & 31, Township 3 North, Range 14 East**
**Sections 25-36, Township 4 North, Range 12 East**
**Sections 25-36, Township 4 North, Range 13 East**
**Sections 30 & 31, Township 4 North, Range 14 East**
**Conecuh and Escambia Counties, Alabama**

*Insofar and only insofar as it applies to The Rudman Partnership, the Contract Area shall exclude lands located within the blue outline on the plat hereto as Exhibit "A-2" (and being further identified as Sections 27, 28, 29, 32, 33 and 34, Township 4 North, Range 13 East Conecuh County, Alabama).

<u>Area of Mutual Interest**</u>

**All lands, oil and gas leasehold interest and oil and gas interest lying within the following sections as depicted on the red boundary as shown on the plat designated at Revised Exhibit "A-2:**

**Sections 1-18, Township 2 North, Range 12 East**
**Sections 1-18, Township 2 North, Range 13 East**
**Sections 6, 7 & 18, Township 2 North, Range 14 East**
**Sections 1-36, Township 3 North, Range 12 East**
**Sections 1-36 Township 3 North, 13 East**
**Sections 6, 7, 18, 19, 30 & 31, Township 3 North, Range 14 East**
**Sections 25-36, Township 4 North, Range 12 East**
**Sections 25-36, Township 4 North, Range 13 East**
**Sections 30 & 31, Township 4 North, Range 14 East**
**Conecuh and Escambia Counties, Alabama**

** Insofar and only insofar as it applies to The Rudman Partnership, the Area of Mutual Interest shall exclude lands located within the blue outline on the plat hereto as Exhibit "A-2" (and being further identified as Sections 27, 28, 29, 32, 33 and 34, Township 4 North, Range 13 East Conecuh County, Alabama).

2)      <u>Restrictions, if any, as to depths, formations, or substances:</u>

There are no restrictions except as may be provided for in any lease or contract subject to this Operating Agreement.

3)      <u>Decimal Interest and names of Parties to this Agreement:</u>

| Owners | BPPO | APPO |
|--------|------|------|
| Bundero Investment Company, L.L.C. | 0.01000000 | 0.0100000 |
| Craft Exploration Company L.L.C. | 0.01000000 | 0.0075000 |
| Dickson Oil & Gas, LLC | 0.01000000 | 0.0087500 |
| Fant Energy Limited | 0.10000000 | 0.0875000 |
| Fleet Howell | 0.05000000 | 0.0400000 |
| JJS Working Interests LLC | 0.11925000 | 0.1819375 |
| Resource Ventures LLC | 0.00125000 | 0.0009375 |
| Kudzu Oil Properties, LLC | 0.02000000 | 0.0150000 |
| Landmark Exploration, LLC | 0.02000000 | 0.0150000 |
| Marksco, L.L.C. | 0.02000000 | 0.0175000 |
| McCombs Energy, Ltd. | 0.26500000 | 0.2025000 |
| Pickens Financial Group, LLC | 0.05000000 | 0.0375000 |
| Sklarco, LLC | 0.15450000 | 0.2483750 |
| Tauber Exploration & Production Co. | 0.02500000 | 0.0187500 |
| The Rudman Partnership | 0.12500000 | 0.0937500 |
| Tiembo Ltd. | 0.02000000 | 0.0150000 |
| TOTAL | 1.00000000 | 1.0000000 |

4)    Oil and gas lease and/or oil and gas interests subject to this agreement:
       See Exhibit "A-1" Description of Leases.

5)    Addresses of parties for notice purposes:

Sklarco, L.L.C.
401 Edwards Street, Suite 1601
Shreveport, LA  71101

Bundero Investment Company, L.L.C.
333 Texas Street, Suite 300
Shreveport, Louisiana  71101

Craft Exploration Company L.L.C.
325 Lakeshire Parkway
Canton, MS  39046

Dickson Oil & Gas, LLC
P. O. Box 52479
Shreveport, Louisiana  71135

Fant Energy Limited
5800 Westview Drive
Houston, Texas  77055

Fleet Howell
416 Travis Street, Suite 715
Shreveport, Louisiana  71101

JJS Working Interests LLC
4295 San Felipe, Suite 207
Houston, Texas  77027

Resource Ventures LLC
8369 South Park Lane, Suite B
Littleton, CO 80120

Kudzu Oil Properties, LLC
300 Concourse Blvd., Suite 101
Ridgeland, Mississippi  39157

Landmark Exploration, LLC
P. O. Box 12004
Jackson, MS  39236

Marksco, L.L.C.
333 Texas Street, Suite 1050
Shreveport, Louisiana  71101

McCombs Energy, Ltd.
5599 San Felipe Street, Suite 1200
Houston, Texas  77056-2721

Pickens Financial Group, LLC
8499 Greenville Avenue, Suite 105
Dallas, Texas 75231-2417

Tauber Exploration & Production Company
55 Waugh Drive, Suite 601
Houston, TX 77007

Tiembo Ltd.
P. O. Box 270415
Houston, Texas  77277-0415

The Rudman Partnership
1700 Pacific Avenue, Suite 4700
Dallas, Texas 75204

REVISED EXHIBIT "A-2"

Attached to and made part of that certain Amendment to Operating Agreement dated November 1, 2011 by and between SKLAR EXPLORATION COMPANY, AS Operator, and SKLARCO L.L.C. et al., as Non-Operator



Shreveport Office
401 Edwards St., Ste. 1601
Shreveport, Louisiana 71101
Phone: 318-227-8668
Facsimile: 318-227-9012

Boulder Office
5395 Pearl Parkway, Ste. 200
Boulder, Colorado 80301
Phone: 720-961-5477
Facsimile: 303-443-1551

J. Marshall Jones, III
Vice President – COO

Telephone: 303-647-6011
E-Mail: jmjones@sklarexploration.com

February 13, 2020

**VIA EMAIL & UPS**

TO:     Working Interest Owners

RE:     Abbyville Gas Plant Transfer
          Escambia Prospect
          Conecuh & Escambia Counties, Alabama

Dear Owners:

As you are aware, Sklar Exploration Company L.L.C. ("**SEC**") and the Escambia Prospect working interest group (the "**Customers**"), entered into a Service Agreement dated September 14, 2011 (the "**Service Agreement**") with CDM Max, LLC (now Plains Gas Solutions, LLC; "**CDM/Plains**"), whereby CDM/Plains agreed to construct, own and operate a gas processing and treatment plant (the "**Abbyville Plant**" or "**Plant**") to process and treat gas produced from wells located within the Escambia Prospect, Conecuh and Escambia Counties, Alabama.  Pursuant to Section 3.6 of the Service Agreement, ownership in the Plant is scheduled to vest in SEC, on behalf of the Customers, effective as of March 1, 2020 (the "**Effective Date**").  We have been preparing to take over operations of the Plant for quite some time and the purpose of this letter to propose terms for operation of the Plant after the transition.  In addition, the working interest group also co-owns a gathering system to transport gas from wells located in the contract area to the Plant (the "**Gathering System**") and this letter also proposes terms for continued operation of the Gathering System.  Enclosed for your review and execution is a proposed Amendment to the Escambia Prospect Joint Operating Agreement (the "**Amendment**"), which adds as Exhibit "F" a "Gathering and Processing Addendum" which will govern operation of the Gathering System and Plant after the Effective Date.

CDM/Plains has agreed to provide transition services for a sixty (60) day period following the Effective Date to ensure a smooth transition.  There are currently eight (8) full-time Plant

Abbyville Gas Plant Transfer
Escambia Prospect
February 13, 2020
Page **2** of **3**

employees, some of which have been employed there since its inception. (These employees also work at the North Beach Plant which is located on the same property and which services nearby Little Cedar Creek Field). We recently offered employment to all Plant employees in order to retain their institutional knowledge of Plant operations and to provide business continuity after the transition. Consolidating operational control of the Plant with our field operations will improve communication between the Plant and our field engineers, allowing us to operate both in a more productive and efficient manner. For example, ensuring that the Plant is running at optimal capacity reduces back pressure on the Gathering System, which in turn can result in better productivity of individual wells in the field.

The arrangement under the CDM/Plains Service Agreement provided for a sharing of proceeds between CDM/Plains and Customers (known as a "percent of proceeds" or "POP" arrangement). Under that agreement, CDM/Plains retained twenty-five percent (25%) the net proceeds (gross proceeds generated from sales of residue gas, raw make (unprocessed NGLs) and condensate, less operating expenses) in consideration for the services it provided. Under the proposed Amendment, the working interest group will retain 100% of their allocated share of net proceeds from sales of residue gas, raw make and condensate, eliminating the POP arrangement. In consideration for the services provided by SEC in managing the Plant, a management fee of $0.65 per MCF (calculated at the Plant inlet) will be included in the monthly operating costs.

In addition to managing operations of the Plant and Gathering System, the Amendment also contemplates that SEC will be responsible for marketing NGL's and condensate produced at the Plant. Over the past several months, we've been evaluating ways to improve net back pricing on NGLs and condensate. We are pleased to inform you that, effective April 1, 2020, we've secured a long term, local market for our NGLs and condensate at Grizzly Energy's Big Escambia Creek plant, near Atmore, Alabama. The significance of this new marketing arrangement cannot be overstated, as it will substantially reduce marketing, transportation and fractionation fees and improve realized pricing over the long term.

Also enclosed for your review are pro-forma financials for the Plant, which show 2018-19 actual performance under the CDM/Plains Service Agreement versus modeled performance under the proposed Amendment for those same years. Based on 2018 volumes and pricing, the working interest group would have realized a 24% increase in net proceeds (a $0.74/MCF improvement) under the proposed Amendment versus the CDM/Plains Service Agreement and, based on 2019 volume and pricing, a 38% increase in net proceeds (a $0.66/MCF improvement). This increase in net proceeds is due primarily to value of the additional product retained by the working interest group (through elimination of the POP), plus the value of the new marketing arrangement. It is also important to note that the increase in net proceeds under the proposed Amendment is despite low commodity prices and that the working interest group will retain 100% of the upside in price improvement.

In summary, we have been preparing for the transfer of ownership and operation of the Plant for quite some time. Not only will the consolidation of Plant and field operations provide productivity and efficiency gains in the field and at the Plant, it will also provide direct economic benefit to the working interest group. We are currently working with CDM/Plains in order to

ADHOC 018365

Abbyville Gas Plant Transfer
Escambia Prospect
February 13, 2020
Page 3 of 3

finalize the transfer documents and we will forward those documents to the working interest group for approval prior to execution by SEC. Of note, we recently conducted a Phase 2 environmental assessment at the Plant, and we are pleased to report that the assessment showed no substantial change in soil conditions since the Plant was built. In short, the Plant and site appear to be in sound environmental condition.

If you have any questions regarding the enclosed pro-forma economics or the proposed Amendment, feel free to give us a call. After your review, please execute the Amendment in the space provided and return your executed Amendment to us using the self-addressed, postage prepaid, UPS envelope.

Sincerely,

J. Marshall Jones, III
Vice President – Chief Operating Officer

Enclosures:   Pro-forma Plant Economics
Amendment to Escambia Prospect JOA, including new Exhibit F

ADHOC 018366

| Abbyville Plant Pro-Forma Economics | | Actual | | Modeled | | Modeled vs. Actual | |
|---|---|---|---|---|---|---|---|
| | | 2018 | 2019 | 2018 | 2019 | 2018 | 2019 |
| Products POP % | WI % of product value | 75% | 75% | 100% | 100% | 25% | 25% |
| | $000's | $7,989 | $4,696 | $10,652 | $6,261 | $2,663 | $1,565 |
| NGL Marketing Changes | % NGL Pricing Uplift | 0% | 0% | 100% | 100% | 100% | 100% |
| | $000's | $0 | $0 | $503 | $1,252 | $503 | $1,252 |
| Opex Sharing % | % WI pays of Midstream opex | 75% | 75% | 100% | 100% | 25% | 25% |
| | $000's | -$1,383 | -$1,175 | -$1,844 | -$1,567 | -$461 | -$392 |
| Midstream/Management Fee | $/mcf | -$0.08 | -$0.08 | -$0.65 | -$0.65 | -$0.57 | -$0.57 |
| | $000's | -$163 | -$153 | -$1,335 | -$1,285 | -$1,172 | -$1,132 |
| Working Interest Check | $/mcf | $3.14 | $1.70 | $3.88 | $2.36 | $0.74 | $0.66 |
| | $000's | $6,443 | $3,368 | $7,976 | $4,661 | $1,533 | $1,293 |
| | % Improvement | - | - | - | - | 24% | 38% |

ADHOC 018367

## AMENDMENT TO OPERATING AGREEMENT

Reference is made to that certain Operating Agreement (the "Operating Agreement") dated effective November 1, 2006, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., McCombs Energy, LTD, WAC Investment Company, LLC, The Rudman Partnership and Pickens Financial Group, LLC, as Non-Operators, pertaining to the Escambia Prospect, Conecuh and Escambia Counties, Alabama, such Operating Agreement being attached as Exhibit "D" to that certain Participation Agreement dated effective November 1, 2006, by and between the same parties.

Each of the undersigned, being a current party to the Operating Agreement, does hereby amend the Operating Agreement by adding thereto Exhibit "F" attached hereto and made a part hereof and titled "Gas Gathering and Processing Addendum." This Amendment to Operating Agreement shall be deemed effective as of 12:01 A.M. Central Standard Time on March 1, 2020 (the "Effective Date").

This Amendment to Operating Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement. A signed copy of this Amendment to Operating Agreement delivered by facsimile, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement. This Amendment to Operating Agreement is effective and binding on each party who executes a counterpart hereof.

THUS DONE AND SIGNED on this _13th_ day of February, 2020, but effective as of the Effective Date.

OPERATOR:

SKLAR EXPLORATION COMPANY L.L.C.

By: _____
J. Marshall Jones, III
Vice President – Chief Operating Officer

NON-OPERATORS:

SKLARCO L.L.C.

By: _____
J. Marshall Jones, III
Vice President – Chief Operating Officer

ADHOC 018368

BANTAM CREEK LLC

By: _____
    Terry Dorris
    Manager

BUNDERO INVESTMENT CO., LLC

By: _____
    Robert P. Bowman
    Manager

CRAFT EXPLORATION CO., LLC

By: _____
    Steven H. Craft
    Managing Member

DICKSON OIL & GAS, LLC

By: _____
    C. Bickham Dickson, III
    Member

DOUBLEPINE INVESTMENTS, LTD.

By: _____
    W.R. "Trey" Sibley, III
    Attorney-in-Fact

FANT ENERGY LIMITED

By: _____
    Stephen Swan
    Manager

FPCC USA, INC.

By: _____
    William Hu
    Member

JF HOWELL INTERESTS, LP

By: _____
    David Morgan
    Manager

Page 2 of 4

ADHOC 018369

BANTAM CREEK LLC

By: _____
       Terry Dorris
       Manager


BUNDERO INVESTMENT CO., LLC

By: _____
       Robert P. Bowman
       Manager


CRAFT EXPLORATION CO., LLC

By: _____
       Steven H. Craft
       Managing Member


DICKSON OIL & GAS, LLC

By: _____
       C. Bickham Dickson, III
       Member


DOUBLEPINE INVESTMENTS, LTD.

By: _____
       W.R. "Trey" Sibley, III
       Attorney-in-Fact


FANT ENERGY LIMITED

By: _____
       Stephen Swan
       Manager


FPCC USA, INC.

By: _____
       William Hu
       Member


JF HOWELL INTERESTS, LP

By: _____
       David Morgan
       Manager

ADHOC 018370

BANTAM CREEK LLC

By: _____
     Terry Dorris
     Manager


BUNDERO INVESTMENT CO., LLC

By: _____
     Robert P. Bowman
     Manager


CRAFT EXPLORATION CO., LLC

By: _____
     Steven H. Craft
     Managing Member


DICKSON OIL & GAS, LLC

By: _____
     C. Bickham Dickson, III
     Member


DOUBLEPINE INVESTMENTS, LTD.

By: _____
     W.R. "Trey" Sibley, III
     Attorney-in-Fact


FANT ENERGY LIMITED

By: _____
     Stephen Swan
     Manager


FPCC USA, INC.

By: _____
     William Hu
     Member


JF HOWELL INTERESTS, LP

By: _____
     David Morgan
     Manager

ADHOC 018371

BANTAM CREEK LLC

By: _____
     Terry Dorris
     Manager


BUNDERO INVESTMENT CO., LLC


By: _____
     Robert P. Bowman
     Manager


CRAFT EXPLORATION CO., LLC


By: _____
     Steven H. Craft
     Managing Member


DICKSON OIL & GAS, LLC


By: _____
     C. Bickham Dickson, III
     Member


DOUBLEPINE INVESTMENTS, LTD.


By: _____
     W.R. "Trey" Sibley, III
     Attorney-in-Fact


FANT ENERGY LIMITED


By: _____
     Stephen Swan
     Manager


FPCC USA, INC.

By: *Weei Jian Chen*
     WEEI JIAN CHEN
     Assistant Vice president


JF HOWELL INTERESTS, LP


By: _____
     David Morgan
     Manager

Page 2 of 4

BANTAM CREEK LLC

By: _____
      Terry Dorris
      Manager


BUNDERO INVESTMENT CO., LLC

By: _____
      Robert P. Bowman
      Manager


CRAFT EXPLORATION CO., LLC

By: _____
      Steven H. Craft
      Managing Member


DICKSON OIL & GAS, LLC

By: _____
      C. Bickham Dickson, III
      Member


DOUBLEPINE INVESTMENTS, LTD.

By: _____
      W.R. "Trey" Sibley, III
      Attorney-in-Fact


FANT ENERGY LIMITED

By: _____
      Stephen Swan
      Manager


FPCC USA, INC.

By: _____
      William Hu
      Member


JF HOWELL INTERESTS, LP

By: _____
      David Morgan
      Manager

Page 2 of 4

ADHOC 018373

JJS INTERESTS NORTH BEACH LLC

By: _____
     Justin Simons
     Manager


LANDMARK EXPLORATION, LLC


By: _____
     Michael Johnson
     CFO


MARKSCO, LLC


By: _____
     Mark P. Sealy
     Manager


MCCOMBS ENERGY, LLC


By: _____
     Gary V. Woods
     President


PICKENS FINANCIAL GROUP, LLC

By: _____
     Michael K. Pickens
     Vice-President


RESOURCE VENTURES, LLC


By: _____
     Mark A. Arnold
     Manager


RUDMAN FAMILY TRUST


By: _____
     Ira W. Silverman
     Manager


THE RUDMAN PARTNERSHIP


By: _____
     W.R. "Trey" Sibley, III
     Attorney-in-Fact


Page 3 of 4

ADHOC 018374

JJS INTERESTS NORTH BEACH LLC


By: _____
     Justin Simons
     Manager


LANDMARK EXPLORATION, LLC


By: _____
     Michael Johnson
     ~~CFO~~ Manager


MARKSCO, LLC


By: _____
     Mark P. Sealy
     Manager


MCCOMBS ENERGY, LLC


By: _____
     Gary V. Woods
     President


PICKENS FINANCIAL GROUP, LLC

By: _____
     Michael K. Pickens
     Vice-President


RESOURCE VENTURES, LLC


By: _____
     Mark A. Arnold
     Manager


RUDMAN FAMILY TRUST


By: _____
     Ira W. Silverman
     Manager


THE RUDMAN PARTNERSHIP


By: _____
     W.R. "Trey" Sibley, III
     Attorney-in-Fact


Page 3 of 4

ADHOC 018375

JJS INTERESTS NORTH BEACH LLC


By: _____
    Justin Simons
    Manager


LANDMARK EXPLORATION, LLC


By: _____
    Michael Johnson
    CFO


MARKSCO, LLC


By: _____
    Mark P. Sealy
    Manager


MCCOMBS ENERGY, LLC


By: _____
    Gary V. Woods
    President


PICKENS FINANCIAL GROUP, LLC


By: _____
    Michael K. Pickens
    Vice-President


RESOURCE VENTURES, LLC


By: _____
    Mark A. Arnold
    Manager


RUDMAN FAMILY TRUST


By: _____
    Ira W. Silverman
    Manager


THE RUDMAN PARTNERSHIP


By: _____
    W.R. "Trey" Sibley, III
    Attorney-in-Fact


Page **3** of **4**

ADHOC 018376

JJS INTERESTS NORTH BEACH LLC


By: _____
       Justin Simons
       Manager


LANDMARK EXPLORATION, LLC


By: _____
       Michael Johnson
       CFO


MARKSCO, LLC


By: _____
       Mark P. Sealy
       Manager


MCCOMBS ENERGY, LLC


By: _____
       Gary V. Woods
       President


PICKENS FINANCIAL GROUP, LLC

By: _____
       Michael K. Pickens
       Vice-President


RESOURCE VENTURES, LLC


By: _____
       Mark A. Arnold
       Manager


RUDMAN FAMILY TRUST


By: _____
       Ira W. Silverman
       Manager


THE RUDMAN PARTNERSHIP


By: _____
       W.R. "Trey" Sibley, III
       Attorney-in-Fact

ADHOC 018377

JJS INTERESTS NORTH BEACH LLC

By: _____
     Justin Simons
     Manager


LANDMARK EXPLORATION, LLC

By: _____
     Michael Johnson
     CFO


MARKSCO, LLC

By: _____
     Mark P. Sealy
     Manager


MCCOMBS ENERGY, LLC

By: _____
     Gary V. Woods
     President


PICKENS FINANCIAL GROUP, LLC

By: _____
     Michael K. Pickens
     Vice-President


RESOURCE VENTURES, LLC

By: _____
     Mark A. Arnold
     Manager


RUDMAN FAMILY TRUST

By: _____
     Ira W. Silverman
     Manager


THE RUDMAN PARTNERSHIP

By: _____
     W.R. "Trey" Sibley, III
     Attorney-in-Fact


Page 3 of 4

ADHOC 018378

JJS INTERESTS NORTH BEACH LLC

By: _____
       Justin Simons
       Manager

LANDMARK EXPLORATION, LLC

By: _____
       Michael Johnson
       CFO

MARKSCO, LLC

By: _____
       Mark P. Sealy
       Manager

MCCOMBS ENERGY, LLC

By: _____
       Gary V. Woods
       President

PICKENS FINANCIAL GROUP, LLC

By: _____
       Michael K. Pickens
       Vice-President

RESOURCE VENTURES, LLC

By: _____
       Mark A. Arnold
       Manager

RUDMAN FAMILY TRUST

By: _____
       ~~Ira W. Silverman~~  Tara Rudman
       ~~Manager~~  Co-Trustee

THE RUDMAN PARTNERSHIP

By: _____
       W.R. "Trey" Sibley, III
       Attorney-in-Fact

ADHOC 018379

TARA RUDMAN REVOCABLE TRUST

By: _____
~~Ira W. Silverman~~  *TARA RudmAn*
~~Manager~~  *TrustEE*

TAUBER EXPLORATION & PRODUCTION CO.

By: _____
    Richard Tauber
    President

TIEMBO, LTD.

By: _____
    Mark S. Rauch
    Member

TRIMBLE ENERGY, LLC

By: _____
    James C. Trimble
    President

Page **4** of **4**

ADHOC 018380

TARA RUDMAN REVOCABLE TRUST

By: _____
       Ira W. Silverman
       Manager

TAUBER EXPLORATION & PRODUCTION CO.

By: _____
       Richard Tauber
       President

TIEMBO, LTD.

By: _____
       Mark S. Rauch
       Member

TRIMBLE ENERGY, LLC

By: _____
       James C. Trimble
       President

ADHOC 018381

TARA RUDMAN REVOCABLE TRUST

By: _____
     Ira W. Silverman
     Manager


TAUBER EXPLORATION & PRODUCTION CO.

By: _____
     Richard Tauber
     President


TIEMBO, LTD.

By: _____
     Mark S. Rauch
     Member


TRIMBLE ENERGY, LLC

By: _____
     James C. Trimble
     President

ADHOC 018382

By: _____
      Mark S. Rauch
      Member

TRIMBLE ENERGY, LLC

By: _____
      James C. Trimble
      President

Page **4 of 4**

**EXHIBIT "F"**

Attached to and made a part of that certain Operating Agreement (Escambia Prospect) dated effective November 1, 2006, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators

**GAS GATHERING AND PROCESSING ADDENDUM**

**THIS GATHERING AND GAS PROCESSING ADDENDUM** (this "**Addendum**") dated effective as of March 1, 2020 (the "**Effective Date**") shall govern the operation and maintenance of the Abbyville Plant and Gathering System (defined below) co-owned by the Non-Operators (sometimes referred to as the "parties", which term may, depending on the context, include the Operator). All terms used in this Addendum shall have the meanings ascribed to them in the Operating Agreement ("**Operating Agreement**") to which this Addendum is attached as Exhibit "F" unless the context indicates to the contrary or the term is otherwise defined in this Addendum.

WHEREAS, pursuant to that certain Service Agreement dated September 14, 2011 (the "**Service Agreement**"), by and between CDM Max, LLC (now Plains Gas Solutions, LLC)("**CDM/Plains**"), Sklar Exploration Company, L.L.C. ("**SEC**" or "**Operator**"), and the Customers (as defined in the Service Agreement), CDM/Plains constructed on real property (the "**Property**") owned by SEC in the Northwest 1/4 of Section 17, Township 4 North, Range 13 East, Conecuh County, Alabama, and leased to CDM/Plains a gas processing and treatment plant known as the "**Abbyville Plant**" for the purpose of treating and processing gas produced from various wells operated by SEC (as defined in the Operating Agreement) and for other purposes set forth in the Service Agreement;

WHEREAS, pursuant to Section 3.6 of the Service Agreement, ownership of the Abbyville Plant is scheduled to vest in (and to be assigned to) SEC, for and on behalf of the "Customers," effective as of March 1, 2020;

WHEREAS, the current Customers under the terms of the Service Agreement are Sklarco L.L.C., and the other Non-Operators identified on **Exhibit 1** attached hereto and made a part hereof (all of which Customers are hereinafter sometimes referred to as the "**Non-Operators"**);

WHEREAS, SEC installed a gas gathering system consisting of a pipeline system and related facilities and equipment co-owned by the Non-Operators to transport gas from the wells located within the Contract Area to the Abbyville Plant (the "**Escambia Gathering System")** as well as a gas gathering system consisting of a pipeline system and related facilities and equipment co-owned by the Non-Operators to transport gas from wells located in the Shipps Creek Prospect area to the Escambia Gathering System for further delivery to the Abbyville Plant (the "**Shipps Creek Gathering System,"** with both gathering systems collectively referred to hereinafter as the "**Gathering System,"** such term to include any additions or extension to the said pipeline systems made heretofore or hereafter);

ADHOC 018384

WHEREAS, SEC and the Non-Operators desire that the Gathering System and the Abbyville Plant will be operated from and after the Effective Date under and pursuant to the terms of the Operating Agreement, as modified or supplemented by this Addendum;

NOW, THEREFORE, the parties hereto agree as follows:

## 1. DEFINITIONS

Terms defined above shall have the meanings so stated. Otherwise, the following terms shall have the following meanings. Any term defined in the Operating Agreement shall have the meaning set forth therein, unless such term is defined below:

1.1   "**Committed Gas**" has the meaning set forth in Section 4.1.

1.2   "**Committed Gas Quality Specifications**" means the pressure and quality specifications for Committed Gas as set forth in Exhibit 2 attached hereto.

1.3   "**Gas**" means natural gas, including casinghead gas produced with crude oil, gas that vaporizes and is recovered in a vapor recovery unit from oil in tanks, and well gas from gas or gas-condensate reservoirs, including all Liquefiable Hydrocarbons, inerts and other components contained therein.

1.4   "**Liquefiable Hydrocarbons**" means the theoretical GPM quantity of natural gasoline (iso-pentanes plus heavier hydrocarbons), butanes, propane, and ethane, including methane allowable in commercial ethane, present in a Gas stream.

1.5   "**Management Fee**" means a $0.65 per MCF fee charged by Operator on all Gas received at the inlet of the Plant as compensation for managing the Gathering System and Plant. Beginning in January 2022, and in January of each year thereafter, the Management Fee shall be adjusted for that year to account for changes to the Producer Price Index for Industrial Commodities as published by the United States Bureau of Labor Statistics (the "Producer Price Index – Industrial Commodities," Series ID: WPU03 through 15), or any successor index thereto.

1.6   "**Monthly Operating Costs**" means the sum of the following: (a) the total and actual costs necessarily incurred and paid by Operator (not in excess of such amounts as are reasonable) to operate and maintain the Plant and the Gathering System for any given month, including, but not limited to, amounts paid for utilities, filters, lube oil, lease product storage equipment and facilities, compression, propane refrigerant, glycol and other expendables, labor (including employee salaries and benefits for employees working at the Plant or the Gathering System), taxes, insurance, environmental and governmental permitting and (b) the Management Fee. It is understood and agreed that there is another plant (known as the "North Beach Plant") located on the Property, that

Page **2** of **18**

ADHOC 018385

there are expenses that are common to both the North Beach Plant and the Abbyville Plant (e.g., employees that work at the two plants), and that SEC shall allocate such expenses between the two plants on a commercially reasonable basis. It is further understood and agreed that Non-Operators are responsible for and shall pay 100% of the Monthly Operating Costs as and when due but that to the extent that Operator recovers a portion of the Monthly Operating Costs from the owner(s) of Third-Party Gas, each Non-Operator shall be entitled to a prorata credit (or refund, with respect to amounts already paid by it) for the amounts so recovered by Operator.

1.7 "**Gross Proceeds**" means the total amount actually collected by Operator for the Residue Gas, plus the total amount actually collected by Operator for the Raw Make and/or the Plant Products, as the case may be, after the deduction or netting of all applicable taxes, transportation, fractionation, fuel, loading, storage, delivery, marketing or other similar costs or expenses paid by Operator for transporting and selling the Residue Gas, Raw Make and/or Plant Products. "Gross Proceeds" shall not include the proceeds received by a Non-Operator from the sale of any products that it chooses to separately market in kind.

1.8 "**Net Proceeds**" means the Gross Proceeds less the Monthly Operating Costs, any royalty and overriding royalty paid by the Operator, and any severance or other production taxes paid by Operator.

1.9 "**Abbyville Plant**" or "**Plant**" has the meaning set forth in the Recitals, which assets include, without limitation, the gas processing plant and related facilities and equipment constructed pursuant to the Service Agreement, as amended, and any and all additions, extensions or modifications to the gas processing plant made heretofore or hereafter. The Plant is currently located on the Property.

1.10 "**Plant Products**" means the actual quantity (expressed in U.S. gallons) of commercial products fractionated in the Plant attributable to the Raw Make produced by the Plant and which are allocated and sold by Operator or delivered in kind from the Plant by component part including, but not limited to, natural gasoline, butanes, propanes, and ethane/propane mix or purity ethane (including methane allowable in commercial ethane). The terms shall also include any condensate recovered within the Plant.

1.11 "**Plant Thermal Reduction**" or "**PTR**" means the heat content, in Btu's, removed from the Gas as a result of processing, including Shrinkage, fuel and incidental uses and losses.

1.12 "**Raw Make**" means the combined stream of Liquefiable Hydrocarbons and concomitant materials actually captured from the stream of Gas that is delivered to the Plant.

1.13 "**Receipt Point,**" when that term is used in connection with Committed Gas, means the point of connection between each well from which the Gas is produced and the meter connected to the Gathering System downstream of the well.  As to Third Party Gas, the

Page 3 of **18**

ADHOC 018386

Receipt Point shall be the point at which the Gas is delivered into the Gathering System or the Plant, as the case may be.

1.14 "**Residue Gas**" means the gaseous portion of Gas remaining after the extraction and removal therefrom of the Raw Make and/or Plant Products, the satisfaction of plant fuel requirements and the taking into account of all incidental plant losses or uses.

1.15 "**Residue Gas Buyer**" has the meaning set forth in Section 9.1.

1.16 "**Residue Gas Quality Specifications**" means the pressure and quality specifications for Residue Gas as set forth in Exhibit 3 attached hereto.

1.17 "**Third Party Gas**" means any Gas which is not Committed Gas.

1.18 "**Shrinkage**" means the decrease in Gas volume and heating content that results from the conversion of liquefiable components of Gas into Raw Make, but exclusive of Gas used for fuel, flared and vented.

## 2. INTERESTS OF THE PARTIES

2.1    The Gathering System and Plant shall be owned by Non-Operators as their interests are shown on **Exhibit 1**, attached hereto and made a part hereof, as the same may be modified from time to time to reflect changes in ownership, and title shall be held in Operator's name, all subject to the terms and provisions of this Addendum.  All costs and liabilities incurred in the operation of the Gathering System and the Plant shall be borne and paid by the Non-Operators as their interests are shown on Exhibit 1, as the same may be revised from time to time.  Allocation of Net Proceeds from the sale of Residue Gas, Raw Make, and/or Plant Products shall be made as provided in Section 6.1.

## 3. OPERATIONS

3.1    Operator shall conduct and direct and have full control of all operations with respect to the Gathering System and the Plant, as permitted and required by, and within the limits of this Addendum.  Operator shall conduct all operations with respect to the Gathering System and Plant in a good and workmanlike manner, but it shall have no liability to the Non-Operators for losses sustained or liabilities incurred, except such as may result from its gross negligence or willful misconduct.  The Operator shall be entitled to charge the Management Fee as part of the Monthly Operating Costs, and the amount of such Management Fee actually recovered shall be retained by the Operator and not subject to distribution to the Non-Operators.

ADHOC 018387

## 4. DEDICATION AND DELIVERY OF GAS

4.1     The Non-Operators hereby dedicate and commit to the Escambia Gathering System and the Plant all Gas owned or controlled by the parties and produced from wells located within the Contract Area (the "**Committed Gas**").   Committed Gas shall not include any Gas that is pipeline or plant use and drop out gas, any Gas that is taken in kind by a Royalty or Overriding Royalty Owner, any Third Party Gas, and any Gas as may be required or needed from time to time for the following purposes:

  (a)  fuel for internal combustion engines employed in lifting oil to the surface from any well now or hereafter drilled within the Contract Area, fuel for operating any lease, fuel for operating any facilities installed by Operator for the purpose of delivering the Committed Gas hereunder, and fuel used to power any equipment within the Plant;

  (b)  Gas used by Operator for cycling, re-pressuring, pressure maintenance, secondary recovery, tertiary recovery and Gas lift operations within the Contract Area; and

  (c)  fuel for any other operations by Operator within the Contract Area or pertaining to the operation of the Plant or the Gathering System.

4.2     The Committed Gas shall be delivered by Non-Operators, or Operator on their behalf, at the Receipt Points in a commingled Gas stream, without the prior extraction or removal of any Liquefiable Hydrocarbons other than those recovered in lease separation facilities, in conformance with the "**Committed Gas Quality Specifications**" set forth in **Exhibit 2**, attached hereto.     In the event the Committed Gas fails to conform to the Committed Gas Quality Specifications, Operator shall immediately provide notice to Non-Operators and propose any such repairs, adjustments or modifications to the affected production facilities necessary to cause the Committed Gas to meet such specifications in accordance with the provisions of the Operating Agreement.

## 5. GATHERING AND PROCESSING

5.1     Operator shall gather, treat and process all Committed Gas delivered to the Receipt Points in the following manner: Operator shall transport all Committed Gas from the Receipt Points to the Plant, condition the Committed Gas, extract and, to the extent authorized herein, sell the Raw Make and/or Plant Products, and deliver the Residue Gas to the Residue Gas Buyer in conformance with the "**Residue Gas Quality Specifications**" set forth in **Exhibit 3**, attached hereto.  In the event the Residue Gas fails to conform to the Residue Gas Quality Specifications, Operator shall immediately provide notice to Non-Operators and propose any Facilities Improvement necessary to cause the Residue Gas to meet such specifications.  Operator shall have no obligation to replace in-kind the MMBtu volume of PTR or the value thereof.

ADHOC 018388

## 6. ALLOCATIONS

6.1     Operator shall separately measure or cause to be measured the volume and MMBTU content of all Gas at the Receipt Points, and the Raw Make, Plant Products, Residue Gas, Plant Fuel, PTR, and Plant Flare shall be allocated ratably, (i) based on the GPM content and measured Mcf volume of such Gas in the case of allocating Raw Make and Plant Products, (ii) based on the gallons of Raw Make allocable to such Gas in the case of PTR, and (iii) based on the Heat Content of such Gas for all other allocation.  To the extent Operator markets the Residue Gas, Raw Make or Plant Products, Operator shall pay to the operator of each partial or total fieldwide unit (for Gas delivered from such a unit), the operator of each well (for Gas delivered from a well that is not included in such a unit), or to any Third-Party Gas owner, as the case may be, the portion of the Net Proceeds allocable to such unit, well, or Third-Party Gas, as the case may be, based on the volume and MMBTU allocation described above on or before the last day of the month following the month in which the Gross Proceeds are received by Operator, for further distribution by them as may be appropriate; provided, however, that in the case of Third Party Gas, the Operator shall deduct from the Net Proceeds any additional fees or charges that may be due under any agreement pertaining to such Third Party Gas.  To the extent any Non-Operator exercises its right to separately market its share of Raw Make, Plant Products or Residue Gas in kind, the Net Proceeds that would otherwise be distributable to the operator of a unit or well shall be calculated without inclusion of the products that are marketed in kind; the amount of such products allocable to the Non-Operator shall (subject to Article 9 hereof) be delivered in kind at the tailgate of the Plant to or for the benefit of such Non-Operator; and such Non-Operator who markets products in kind shall pay directly to Operator the proportionate share of Monthly Operating Costs allocable to the products so marketed in kind.  Operator may net out any Monthly Operating Costs and costs of Facilities Improvements against the Gross Proceeds received for the sale of any Residue Gas, Raw Make, and/or Plant Products.  However, to the extent that the amount of Monthly Operating Costs and costs of Facilities Improvements in a given month exceed the amount of Gross Proceeds received by Operator for that month plus the amount of any Monthly Operating Costs paid for that month by a Non-Operator who markets products in kind, the Non-Operators shall be obligated to reimburse Operator for the excess of such costs proportionate to the Non-Operators' interest as then reflected by Exhibit 1 attached hereto and made a part hereof.

## 7. MAINTENANCE, REPAIRS AND IMPROVEMENTS

7.1     Operator shall maintain the Gathering System and Plant in proper working order and is authorized to make any repair, modification, addition or improvement (collectively, a "**Facilities Improvement**") which, in Operator's good faith opinion, is either: (a) necessary to maintain the Gathering System or Plant in proper working order (*e.g.,* in order to maintain compliance with the Residue Gas Quality Specifications), or (b) is in the best business interests of the parties (*e.g.,* lowering Monthly Operating Costs, improving recovery of Liquefiable Hydrocarbons, enhancing the economic return on the Gathering System and the Plant, etc.), provided, however, in either

Page **6** of **18**

ADHOC 018389

case Operator shall circulate a written proposal with an AFE and obtain prior approval of a majority in interest of Non-Operators, as their interests are then reflected in Exhibit 1, for any single Facilities Improvement which is reasonably estimated to cost in excess of $75,000, except that in case of an emergency Operator is authorized to make any repairs reasonably necessary to prevent loss of property or damage to persons or property without first circulating an AFE or obtaining such approval.

7.2      Operator shall have the right to request and receive payment in advance from each Non-Operator of its respective share, as its interest is then reflected in Exhibit 1, of the cost of any such Facilities Improvement.  Any request for advance payment shall be made in writing no earlier than thirty (30) days prior to the anticipated commencement date for such Facilities Improvement. The amount of each Non-Operator's advance payment shall be based upon the latest AFE for such Facilities Improvement. A Non-Operator receiving a request for advance payment shall, within fifteen (15) days of the receipt of such request, pay to Operator in cash the full amount of such request. If any Non-Operator shall fail to timely pay in full the amount of such request, the unpaid portion thereof shall bear interest at the rate provided in Exhibit "C" to the Operating Agreement until paid. Payment in advance shall in no event relieve a Non-Operator of its obligation to pay its share of the actual cost of a Facilities Improvement authorized or approved, and when the actual costs have been determined, Operator shall adjust the accounts of the parties by refunding any net amounts due or invoicing the parties for additional sums owing.

7.3      In the event Operator makes a request for advance payment under Section 7.2 hereof and receives such advance payment from a Non-Operator, then as and to the extent that the costs of such Facilities Improvement are recovered by Operator from the owner(s) of Third-Party Gas, Operator shall reimburse such Non-Operator for its respective share of such advance actually paid.

## 8.  LIEN & SECURITY INTEREST

8.1      Each Non-Operator grants to Operator a lien upon and a security interest in its ownership interest in the Gathering System and the Plant to secure payment of all amounts due by it, including its share of the expense of operations of the Monthly Operating Costs, plus its share of any Facilities Improvement cost and cash call requested under Section 7.2 hereof, together with interest at the at the rate provided in Exhibit "C" to the Operating Agreement.  To the extent that Operator has a security interest under the Alabama Commercial Code, Operator shall be entitled to exercise the rights and remedies of a secured party under such Code.  The bringing of a suit and the obtaining of judgment by Operator for the secured indebtedness shall not be deemed an election of remedies or otherwise affect the lien rights or security interest as security for the payment thereof.  In addition, upon default by any Non-Operator in the payment of its share of any amounts due hereunder, Operator shall have the right, without prejudice to other rights or remedies, to collect from the purchaser the proceeds from the sale of such Non-Operator's share of oil and/or gas and/or to collect and withhold from such Non-Operator's share of the revenues

ADHOC 018390

generated from operation of the Plant or the Gathering System, and apply such proceeds against the expenses in default until the amount owed by such Non-Operator, plus interest at the rate provided in Exhibit "C" to the Operating Agreement, has been paid in full. Each purchaser shall be entitled to rely upon Operator's written statement concerning the amount of any default. To the extent Operator owns an interest in either the Plant or the Gathering System, Operator grants a like lien and security interest to Non-Operators to secure payment of Operator's proportionate share of expense, if any. If any party fails or is unable to pay its share of any amounts due hereunder within thirty (30) days after rendition of a statement therefor by Operator, the non-defaulting parties, including Operator to the extent Operator owns an interest, shall upon written request by the Operator pay the unpaid amount in the proportion that the interest of each such party bears to the interest of all such parties other than the defaulting party. Each party paying its share of the unpaid amount shall, to obtain reimbursement thereof, be subrogated to the security rights described above.

## 9.  MARKETING

9.1      The Residue Gas is currently committed to a Gas Purchase Contract ("**Gas Contract**") dated August 7, 2009, as amended, with the Southeast Alabama Gas District (the "**Residue Gas Buyer,**" such term to include any person or entity that may from time to time purchase the Residue Gas) and Operator shall continue to deliver all Residue Gas to the Residue Gas Buyer in accordance with that agreement until modified or terminated. Subject to the Gas Contract, each Non-Operator reserves the right to separately market in kind its share of any Residue Gas. If a Non-Operator takes its share of Residue Gas in kind, it shall provide facilities at the Plant to receive its share, and it shall pay to Operator any extra expense that may be incurred by Operator as a result of said Non-Operator taking its share in kind. If any Non-Operator shall fail to separately market in kind its share of any Residue Gas, the Operator will have the right to market such Residue Gas consistent with the terms of the Operating Agreement, including Exhibit "E" thereto.

9.2      Each Non-Operator reserves the right to separately market in kind its share of any Raw Make or Plant Products. If a Non-Operator takes its share of Raw Make or Plant Products in kind, it shall provide facilities at the Plant to receive its share, and it shall pay to Operator any extra expense that may be incurred by Operator as a result of said Non-Operator taking its share in kind. If any Non-Operator shall fail to separately market in kind its share of any Raw Make or Plant Products, the Operator will have the right to market such Raw Make or Plant Products consistent with the terms of the Operating Agreement, including Exhibit "E" thereto.

9.3      The provisions of Article IX of the Operating Agreement shall be fully applicable with respect to the Plant and the Gathering System. If any provision of this Addendum is inconsistent with Article IX or would cause the parties to lose their exclusion from partnership income tax treatment, this Addendum shall be treated for all purposes as if the offending provision thereof were not included in the Addendum.

Page **8** of **18**

ADHOC 018391

## 10.  DECOMMISSIONING OF PLANT

10.1    If, at any time, Operator, in its sole discretion, determines that either the Plant or the Gathering System (or a portion thereof) is approaching the end of its economic life and/or useful purpose, Operator may pre-bill the Non-Operators, as their interests are then reflected in Exhibit 1, an amount that is reasonably estimated to shut down and decommission the Plant or Gathering System (or portion thereof).  Such amount shall be deposited in an interest bearing account, and the principal and interest therefrom utilized to offset the actual costs of shutting down and decommissioning the Plant or the Gathering System.  In the event actual costs are less than the estimate, each Non-Operator will be issued a refund of the difference, together with any accrued interest on such difference, based upon the then current ownership percentage of such owner.  In the event the actual costs exceed the estimate, each Non-Operator agrees to pay its proportionate share of the expenses over and above the estimated and pre-billed amount.

10.2    If, at any time, Operator determines that either the Plant or the Gathering System (or portion thereof) has reached the end of the its economic life and/or useful purpose and should be shut down and decommissioned, or should be shut down and decommissioned for any other reason, Operator shall circulate a written proposal to Non-Operators articulating the reasons for such proposal, along with an estimate of costs to shut down and decommission the Plant or the Gathering system (or portion thereof), as the case may be.  If none such Non-Operators object within thirty (30) days after sending of such proposal, Operator shall proceed with the proposed shut down and decommissioning.  If any Non-Operator objects to such proposal within the thirty (30)-day period, the objecting owner(s) (the "assuming owner(s)") shall, within thirty (30) days thereafter, tender to the other owner(s) (the "abandoning owner(s)") each abandoning owner's proportionate share of the value of the Plant's and/or Gathering System's salvable material and equipment, determined in accordance with the provisions of Exhibit C to the Operating Agreement, less the estimated cost of salvaging and the estimated cost of ultimately shutting down and decommissioning.  Each abandoning owner shall upon receipt thereof assign to the assuming owner(s), without warranty, express or implied, as to title or as to quantity, for fitness for use of the equipment and material, all of its interest in the plant and/or gathering system, as the case may be.  Thereafter the abandoning owners shall have no further responsibility, liability, or interest in the operation of the Plant and/or the Gathering System (or portion thereof), as the case may be, and all such assuming owners shall thereafter assume full responsibility, liability, or interest in the operation of the Plant and/or the Gathering System (or portion thereof), as the case may be.  Operator may tender its resignation as operator of the Plant and/or the Gathering System (or portion thereof) in the event any assuming owners desire to continue operation of the same, but may, in its discretion, continue as Operator under the terms and provisions, including the Management Fee, then in place.  Failure of assuming owner(s) to tender all amounts due to abandoning owner(s) within thirty (30) days shall be deemed a withdrawal of the objection and consent to the proposal by the objecting owner(s).

Page **9** of **18**

## 11.  THIRD PARTY GAS

11.1    Operator is authorized to enter into agreements for the transporting, gathering, treating and/or processing of Third Party Gas in the Gathering System (or portion thereof) and/or the Plant, provided, however, that any such agreements shall: (a) be subject to there being available capacity in the Gathering System and Plant after accounting for the Committed Gas, (b) not interfere with Operator's obligation to gather, treat and process the Committed Gas, (c) require that the Third Party Gas meet or exceed the Committed Gas Quality Specifications, and (d) require the owner of the Third Party Gas to pay a share of the Monthly Operating Costs (including the Management Fee) based on the ratio of Third-Party Gas to the total amount of Gas received at the Plant for the month.  Any such agreement may also require the owner(s) of the Third-Party Gas to pay or be liable for such other fees or charges as Operator shall determine appropriate, including a portion of the costs of any Facilities Improvement.  In the event Operator enters into such an agreement, Operator shall separately measure (or cause to be measured) all Third-Party Gas and the BTU content thereof.  Any revenues generated by Operator on account of transporting, gathering, treating and/or processing fees charged for Third Party Gas which are in excess of the Net Proceeds allocable to such Third-Party Gas less (a) any other costs or expenses related to transporting or gathering that Gas and (b) any costs of Facilities Improvements charged to the owner(s) of such Third-Party Gas shall be distributed to Non-Operators as their interests are then reflected in Exhibit 1.

## 12.  INSURANCE

12.1    Operator shall carry and provide the following minimum insurance protection to cover the Plant, which shall name Non-Operators as an additional insured, the costs of which incurred by Operator in obtaining, maintaining, extending, renewing or replacing such insurance shall be included in the Monthly Operating Costs (it being understood that Operator may, in its discretion, carry and provide for larger amounts of insurance):

    a.  Worker's Compensation Insurance to comply with all applicable laws of the State of Alabama and employer's liability insurance with a limit of not less than One Million U.S. Dollars ($1,000,000.00) each accident;

    b.  Comprehensive General Liability Insurance covering Operator's operations with a combined single limit of Five Million U.S. Dollars ($5,000,000.00) per any one occurrence for bodily injury and/or property damage;

    c.  "Fire and extended coverage," "broad form" and "all physical loss" insurance coverages, including coverage for property damage, fire, lightning, smoke damage, theft, windstorm, hail, explosion, damage, vandalism and malicious mischief, sinkhole collapse, and similar damage and peril;

ADHOC 018393

    d.  Automobile Liability Insurance covering all automotive equipment used by Operator in performing work under the contract, with a combined single limit of not less than One Million U.S. Dollars ($1,000,000.00) any one accident for bodily injury and/or property damage.

### 13.  MAINTENANCE OF UNIFORM INTEREST AND TRANSFERS

13.1    For the purpose of maintaining uniformity of ownership in the leases and wells subject to the Operating Agreement, on the one hand, and the Gathering System and Plant, on the other hand, no Non-Operator's interest in the leases and wells subject to the Operating Agreement shall be transferred to any person or entity unless a concomitant portion of the assignor's ownership interest in the Plant and the Gathering System is likewise transferred to the same person or entity, and vice-versa.  Any purported transfer in violation of the preceding sentence shall be null and void and shall not be recognized by the Operator.  All transfers of any interest in the Plant and the Gathering System shall be made expressly subject to the provisions of this Addendum and shall be without prejudice to the rights of the other parties.

13.2    No transfer by a Non-Operator shall be effective until thirty (30) days after receipt by Operator of notice of such transfer and documentation satisfactory to Operator confirming such transfer.  Upon receipt of notice and reasonably requested documentation, Operator shall revise Exhibit 1 hereto to reflect the then current interests of the Non-Operators in the Plant and Gathering System.  Any reference to Exhibit 1 in this Addendum shall be deemed to refer to said exhibit as the same may be amended from time to time.

### 14.  CONFLICTS

14.1    The provisions of the Operating Agreement shall apply generally to the operation of the Gathering System and the Plant, including Exhibit "C" (COPAS) to the Operating Agreement; provided, however, that, as to the Plant and the Gathering System, the Management Fee shall be in lieu of any costs otherwise allowable to the Operator under and pursuant to Article III "Overhead" of Exhibit C (COPAS).   To the extent that the provisions of the Operating Agreement or Exhibit "C" thereto apply by their terms to a well or wells or the marketing of oil and/or gas, such provisions shall, for purposes of this Addendum, be deemed to apply to the Plant and the Gathering System and to the marketing of Residue Gas, Raw Make, or Plant Products as the context may require.  In the event of a conflict between the provisions of this Addendum and the remaining provisions of the Operating Agreement, the provisions of this Addendum shall supersede and prevail.

### 15.  ENTIRETIES AND AMENDMENTS

15.1    This Addendum, and the Operating Agreement to which it is attached, constitute the entire agreement of the parties with respect to the subject matter hereof, and any other promises, inducements, representations, warranties or agreements with respect to the subject matter hereof

ADHOC 018394

have been superseded hereby and are not intended to survive this Addendum. This Addendum may be amended in writing by the parties hereto at any time with the approval of at least 60% by interest of the then Non-Operators (as reflected on Exhibit 1) and the Operator. No amendment or modification of this Addendum shall be effective unless set forth in a written agreement signed by the parties approving same.

## 16. APPLICABLE LAW AND VENUE

16.1   This Agreement shall be governed exclusively by and interpreted in accordance with the laws of the State of Alabama without regard to any conflict of laws principles or rules. This Agreement is subject to all applicable laws and regulations pertaining to the transportation and handling of sour gas. In the event of any litigation concerning this Addendum, the parties agree that such litigation shall be conducted in the circuit court of either Escambia or Conecuh County, Alabama, or in the United States District Court for the Southern District of Alabama, **AND EACH PARTY HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH LITIGATION.**

## 17. NOTICE

17.1   Any notice, request, demand, statement or invoice which either party desires to serve upon the other shall be in writing and shall be considered delivered when hand delivered, or if mailed by United States certified mail, postage prepaid, five days after mailing or, if sent by facsimile transmission, when receipt is confirmed by the equipment of the transmitting Party or, if sent by email transmission, when receipt is confirmed by the equipment of the transmitting Party. If receipt of a facsimile or email transmission is confirmed after normal business hours receipt shall be deemed to be the next business day. Such notice shall be given to the other party at the following address:

> Notice to SEC:   Sklar Exploration Company L.L.C.
> Attention: Mr. Steven Hatcher
> 5395 Pearl Parkway, Suite 200
> Boulder, Colorado 80301
> Phone: 720-306-8310
> Fax: 303-443-1551
> Email: SHatcher@sklarexploration.com

> Notice to any Non-Operator:   At the address and other contact information provided in Exhibit "1" hereto

or to such other address as either Party shall designate by notice in the manner provided above. Operating communications by telephone or other mutually agreeable means shall be considered as duly delivered without subsequent written confirmation, unless written confirmation is requested by either party.

Page **12** of **18**

ADHOC 018395

## 18.    MISCELLANEOUS

18.1    This Addendum shall be binding on, and inure to the benefit of, all successors in interest and assigns of the parties hereto.

18.2    Unless the context otherwise clearly indicates, words used in the singular include the plural, and the plural includes the singular.

18.3    All words used in any gender in this Addendum shall, where appropriate, extend to and include all other genders, and all words used in the singular in this Addendum shall, where appropriate, extend to and include the plural, and vice-versa.

18.4    Wherever possible, each provision of this Addendum shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provisions of this Agreement shall be prohibited by or invalidated under applicable law, such provisions shall be ineffective to the extent of such provision and the remaining provisions of this Addendum shall remain fully effective.

Page **13** of **18**

ADHOC 018396

## EXHIBIT 1

Attached to and made a part of that certain Gas Gathering and Processing Addendum date effective as of March 1, 2020, which itself is attached as Exhibit F to that certain Operating Agreement dated effective as of November 1, 2006, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators

Sklarco, LLC                    .24837500
Attn: J. Marshall Jones, III
5395 Pearl Parkway, Ste. 200
Boulder, CO 80301
Phone: (318) 227-8668
Email: jmjones@sklarexploration.com

Bantam Creek LLC                .00234375
Attn: Terry Dorris
4712 Lakeside Drive
Colleyville, TX 76034
Phone: (817) 614-2033
Email: tdorris@rudmangroup.com

Bundero Investment Co., LLC   .01000000
Attn: Robert P. Bowman, Manager
401 Edwards Street, Suite 820
Shreveport, LA 71101
Phone: (318) 840-6226
Email: rbowman@bundero.com

Craft Exploration Co., L.L.C.   .00750000
Attn:  Steven H. Craft, Managing Member
P.O. Box 2430
Madison, MS 39130
Phone: (601) 594-4400
Email: stevecraft@att.net

Dickson Oil & Gas, LLC          .00875000
Attn: C. Bickham Dickson, III
455 Southfield Road
Shreveport, LA 71106
Phone: (318) 841-1122
Email: bickham@bdicksonproperties.com

DoublePine Investments, Ltd.    .00468750
Attn: W. R. "Trey" Sibley, III
4851 LBJ Freeway, Suite 210
Dallas, TX 75244
Phone: (214) 220-3900
Email: tsibley@rudmangroup.com

Fant Energy Limited             .08750000
Attn: Stephen Swan
P. O. Box 55205
Houston, TX  77255
Phone: (713) 316-1273
Email: SSwan@nps.cc

FPCC USA, Inc.                  .10596875
Attn: William Hu
245 Commerce Green Blvd., Ste. 250
Sugar Land, TX 77478
Phone: (281) 302-6850
Email: liweihu@fpcc.com.tw

JF Howell Interests, LP         .04000000
Attn: David Morgan, Managing Member
416 Travis Street, Suite 715
Shreveport, LA  71101
Phone: (318) 221-6382
Email: david@jfhowell.com

JJS Working Interests LLC       .09096875
Attn: Mr. Justin Simons
2001 Kirby Drive, Ste. 1110
Houston, TX 77019
Phone: (713) 888-0875
Email: justin@hbcapllc.com

Landmark Exploration, LLC       .01500000
Attn: Michael Johnson
113 Park Circle Drive
Flowood, MS 39232)
Phone: (601) 932-2121
Cell: (601) 278-8516
Email: mej@lmhomes.net CC

Marksco, LLC                    .01750000
Attn: Mark Sealy
333 Texas Street, Ste. 1050
Shreveport, LA 71101
Phone: (318) 698-3101
Email: marks@sealynet.com

ADHOC 018397

McCombs Energy, LTD, LLC   .20250000
Attn: Gary Woods
750 E. Mulberry Ave., Ste. 403
San Antonio, TX 78212
Phone: (210) 821-6523
Email: gwoods@mccombshq.com

Pickens Financial Group, LLC   .03750000
Attn: Michael K. Pickens, Vice President
10100 N. Central Expressway, Ste. 200
Dallas, TX 75231-4159
Phone: (214) 503-1271
Email: mike@pickensenergy.com

Resource Ventures, LLC   .00093750
Attn:  Mark A. Arnold
7112 W. Jefferson Ave, Ste. 106
Lakewood, CO 80235
Phone: (303) 217-5151
Email: Arnold@royaltyexploration.com

Rudman Family Trust   .00234375
Attn: Ira W. Silverman
5910 N. Central Expressway, Ste. 1662
Dallas, TX 75206
Phone: (214) 447-0214
Email: hiram.lucius@rudmanfamilytrust.com

Tara Rudman Revocable Trust   .00234375
5910 N. Central Expressway, Ste. 1662
Dallas, TX 75206
Phone: (214) 447-0214
Email: hiram.lucius@rudmanfamilytrust.com

The Rudman Partnership   .07734375
Attn: W. R. "Trey" Sibley, III
4851 LBJ Freeway, Suite 210
Dallas, TX 75244
Phone: (214) 220-3900
Email: tsibley@rudmangroup.com

Tauber Exploration & Prod. Co. .01875000
Attn: Richard Tauber
55 Waugh Drive, Suite 600
Houston, TX 77007
Phone: (713) 869-5656
Email: richardt@tauberoil.com

Tiembo, Ltd.   .01500000
Attn: Mark Rauch
P.O. Box 270415
Houston, TX 77277-0415
Phone: (713) 627-1700 ext. 109
Email: mrauch@standardsouthern.com

Trimble Energy LLC   .00468750
Attn: James C. Trimble
5331 Lobello Drive
Dallas, TX 75229
Phone: (214) 677-7747
Email: jimtrimble777@yahoo.com

Page **15** of **18**

## EXHIBIT 2

Attached to and made a part of that certain Gas Gathering and Processing Addendum date effective as of March 1, 2020, which itself is attached as Exhibit F to that certain Operating Agreement dated effective as of November 1, 2006, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators

## ABBYVILLE PLANT DESIGN AND RECOVERY MODEL PERFORMANCE

The ABBYVILLE Plant is designed to meet the following performance parameters based upon the following pressure, quality and GPM assumptions for Inlet Gas volume of 4000 Mcf/D:

Operator to deliver Inlet Gas at the Abbyville Plant Delivery Meter at 25 psig or greater.

Operator to deliver Residue Gas at the Abbyville Plant Redelivery Meter at 800 psig or less.

Committed Gas: GPM = 10.305 or greater, and Btu/CF = 1465.6 or greater on a Wet basis at a 14.65 PSIA pressure base, N2 Mol Percent = 4.699% or greater, and the C2/C2+ GPM ratio shall be 40% or less.

Committed Gas less than 10 ppm H2S.

Residue Gas Btu/CF = 1050 or less.

Committed Gas shall not at any time have a carbon dioxide content in excess of one and three-quarters percent (1.75%) by volume.

Committed Gas shall not at any time have nitrogen content in excess of eight percent (8%) by volume.

Committed Gas shall not contain more than fifteen (15) grains of total sulfur per one hundred (100) cubic feet.

| Recovery (%) | MAXIMUM Recovery |
|---|---|
| Ethane | 52% |
| Propane | 85% |
| I-Butane | 95% |
| N-Butane | 98% |
| N-Gasoline | 98% |

Page **16** of **18**

## EXHIBIT 3

Attached to and made a part of that certain Gas Gathering and Processing Addendum date effective as of March 1, 2020, which itself is attached as Exhibit F to that certain Operating Agreement dated effective as of November 1, 2006, by and between Sklar Exploration Company L.L.C., as Operator, and Sklarco L.L.C., et al., as Non-Operators

## RESIDUE GAS QUALITY SPECIFICATIONS

a.  <u>Solids</u> – Residue Gas shall be free from solid matter, dust, gums, and gum-forming constituents which might interfere with tits merchantability or cause injury to or interference with proper operation of the lines, meters, regulators, or other appliances through which it flows.

b.  <u>Oxygen</u> – Residue Gas shall at all times be free from oxygen.

c.  <u>Carbon Dioxide</u> – Residue Gas shall not at any time have a carbon dioxide content in excess of two percent (2%) by volume.

d.  <u>Nitrogen</u> – Residue Gas shall not at any time have a nitrogen content in excess of ten percent (10%) by volume when the carbon dioxide content is two percent (2%) by volume. However, the nitrogen content may be increased as the carbon dioxide content is decreased such that the sum of the two gases will not exceed twelve percent (12%) by volume. Neither nitrogen or carbon dioxide will be added or introduced to the Gas stream. Only nitrogen or carbon dioxide from naturally occurring flow from the wells shall be included.

e.  <u>Liquids</u> – Residue Gas shall be free of water and hydrocarbons in liquid form.

f.  <u>Hydrogen Sulfide</u> – Residue Gas shall not contain more than ten (10) parts per million of hydrogen sulfide.

g.  <u>Total Sulfur</u> – Residue Gas shall not contain more than ten (10) grains of total sulfur per one hundred (100) cubic feet.

h.  <u>Heating Value</u> – Residue Gas shall have a total gross heating value of not more than one thousand fifty (1050) Btus per cubic foot. Moreover, Residue Gas shall have a total or gross heating value of not less than nine hundred ninety (990) Btus per cubic foot. The number of Btus of heating value per cubic foot shall be determined on the basis of gas being burned with air and saturated with water vapor at sixty (60) degrees Fahrenheit and under a pressure equivalent to thirty inches (30") of mercury at thirty two (32) degrees Fahrenheit. The total or gross heating value is obtained by cooling the products of combustion to sixty (60) degrees Fahrenheit and condensing the moisture formed, corrected to a water free (dry) basis. To the extent Residue Gas Buyer allows delivery up to one thousand one hundred (1100 Btus) per cubic foot, Operator may deliver Residue Gas up to but not more than 1100 Btu/cf heating value.

ADHOC 018400

i.    <u>Temperature</u> – Residue Gas shall not be delivered at a temperature of less than forty (40) degrees nor more than one hundred twenty (120) degrees Fahrenheit.

j.    <u>Water Vapor Content</u> – Residue Gas shall not contain more than seven (7) pounds of water vapor per million cubic feet.

Page **18** of **18**

2016    1204
Recorded in the Above 00511
Deed   Book & Page
04-27-2016 10:27:40 AM
Earl Booker, Probate Judge
Conecuh County, Alabama

**RECORDING SUPPLEMENT TO**
**OPERATING AGREEMENT AND FINANCING STATEMENT**
**(Escambia Prospect)**

THIS AGREEMENT is entered into by and between SKLAR EXPLORATION COMPANY L.L.C., hereinafter referred to as "Operator," and the signatory party or parties other than Operator, hereinafter referred to individually as "Non-Operator," and collectively as "Non-Operators."

WHEREAS, the parties to this agreement are owners of Oil and Gas Leases and/or Oil and Gas Interests identified in Exhibit "A-1," attached hereto and made a part hereof, which cover and affect the lands located within the bold black line identified in Exhibit "A-2," attached hereto and made a part hereof (said lands, Leases and Interests being hereinafter called the "Contract Area"), and in any instance in which the Leases or Interests of a party are not of record, the party or parties hereto that own the interest or rights therein are reflected on Exhibit "A," attached hereto and made a part hereof;

WHEREAS, the parties hereto have executed an Operating Agreement dated November 1, 2006 and an Amendment to Operating Agreement dated effective as of November 1, 2011 (collectively referred to herein as the "Operating Agreement"), covering the Contract Area for the purpose of exploring and developing such lands, Leases and Interests for Oil and Gas; and

WHEREAS, the parties hereto have executed this agreement for the purpose of imparting notice to all persons of the rights and obligations of the parties under the Operating Agreement and for the further purpose of perfecting those rights capable of perfection.

NOW, THEREFORE, in consideration of the mutual rights and obligations of the parties hereto, it is agreed as follows:

1.   This agreement supplements the Operating Agreement, which Agreement in its entirety is incorporated herein by reference, and all terms used herein shall have the meaning ascribed to them in the Operating Agreement.

2.   The parties do hereby agree that:

A.   The Oil and Gas Leases and/or Oil and Gas Interests of the parties comprising the Contract Area shall be subject to and burdened with the terms and provisions of this agreement and the Operating Agreement, and the parties do hereby commit such Leases and Interests to the performance thereof.

B.   The exploration and development of the Contract Area for Oil and Gas shall be governed by the terms and provisions of the Operating Agreement, as supplemented by this agreement.

C.   All costs and liabilities incurred in operations under this agreement and the Operating Agreement shall be borne and paid, and all equipment and materials acquired in operations on the Contract Area shall be owned, by the parties hereto, as provided in the Operating Agreement.

D.   Regardless of the record title ownership of the Oil and Gas Leases and/or Oil and Gas Interests identified in Exhibit "A-1," all production of Oil and Gas from the Contract Area shall be owned by the parties as provided in the Operating Agreement; provided, further, that (i) nothing contained in this agreement shall be deemed an assignment or cross-assignment of interests covered hereby and (ii) the actual interests of parties in the Contract Area or in any well drilled therein pursuant to the Operating Agreement may differ from the interests of the parties reflected in Exhibit "A" due to assignments, elections, forfeitures or other transfers made pursuant to the terms of the Operating Agreement.

E.   Each party shall pay or deliver, or cause to be paid or delivered, all burdens on its share of the production from the Contract Area as provided in the Operating Agreement.

F.   An overriding royalty, production payment, net profits interest or other burden payable out of production hereafter created, assignments of production given as security for the payment of money and those overriding royalties, production payments and other burdens payable out of production heretofore created and defined as Subsequently Created Interests in the Operating Agreement shall be (i) borne solely by the party whose interest is burdened therewith, (ii) subject to suspension if a party is required to assign or relinquish to another party an interest which is subject to such burden, and (iii) subject to the lien and security interest hereinafter provided if the party subject to such burden fails to pay its share of expenses chargeable hereunder and under the Operating Agreement, all upon the terms and provisions and in the times and manner provided by the Operating Agreement.

G.   The Oil and Gas Leases and/or Oil and Gas Interests which are subject hereto may not be assigned or transferred except in accordance with the terms, provisions and restrictions of the Operating

Recorded in the Above
Deed Book & Page 00512
04-27-2016 10:27:40 AM

Agreement and that certain Participation Agreement (Escambia Prospect) dated November 1, 2006, by and between Sklar Exploration Company L.L.C. ("Operator") and McCombs Energy, LTD., et al., which includes as Exhibit "D" a form of the Operating Agreement.

This agreement and the Operating Agreement shall be binding upon and shall inure to the benefit of the parties hereto, and their respective heirs, devisees, legal representatives, and assigns, and the terms hereof shall be deemed to run with the leases or interests included within the Contract Area.

H. The parties shall have the right to acquire an interest in renewal, extension and replacement leases, leases proposed to be surrendered, wells proposed to be abandoned, and interests to be relinquished as a result of non-participation in subsequent operations, all in accordance with the terms and provisions of the Operating Agreement.

I. The rights and obligations of the parties and the adjustment of interests among them in the event of a failure or loss of title, each party's right to propose operations, obligations with respect to participation in operations on the Contract Area and the consequences of a failure to participate in operations, the rights and obligations of the parties regarding the marketing of production, and the rights and remedies of the parties for failure to comply with financial obligations shall be as provided in the Operating Agreement.

J. Each party's interest under this agreement and under the Operating Agreement shall be subject to relinquishment for its failure to participate in subsequent operations and each party's share of production and costs shall be reallocated on the basis of such relinquishment, all upon the terms and provisions provided in the Operating Agreement. Nothing in this Section 2(J) is intended to add to, modify, or amend the terms and provisions of the Operating Agreement.

K. All other matters with respect to exploration and development of the Contract Area and the ownership and transfer of the Oil and Gas Leases and/or Oil and Gas Interest therein shall be governed by the terms and provisions of the Operating Agreement.

3. The parties hereby grant reciprocal liens and security interests as follows:

A. Each party grants to the other parties hereto a lien upon any interest it now owns or hereafter acquires in Oil and Gas Leases and Oil and Gas Interests in the Contract Area, and a security interest and/or purchase money security interest in any interest it now owns or hereafter acquires in the personal property and fixtures on or used or obtained for use in connection therewith, to secure performance of all of its obligations under this agreement and the Operating Agreement including but not limited to payment of expense, interest and fees, the proper disbursement of all monies paid under this agreement and the Operating Agreement, the assignment or relinquishment of interest in Oil and Gas Leases as required under this agreement and the Operating Agreement, and the proper performance of operations under this agreement and the Operating Agreement. Such lien and security interest granted by each party hereto shall include such party's leasehold interests, working interests, operating rights, and royalty and overriding royalty interests in the Contract Area now owned or hereafter acquired and in lands pooled or unitized therewith or otherwise becoming subject to this agreement and the Operating Agreement, the Oil and Gas when extracted therefrom and equipment situated thereon or used or obtained for use in connection therewith (including, without limitation, all wells, tools, and tubular goods), and accounts (including, without limitation, accounts arising from the sale of production at the wellhead), contract rights, inventory and general intangibles relating thereto or arising therefrom, and all proceeds and products of the foregoing.

B. All parties acquiring an interest in Oil and Gas Leases and Oil and Gas Interests covered by this agreement and the Operating Agreement, whether by assignment, merger, mortgage, operation of law, or otherwise, shall be deemed to have taken subject to the lien and security interest granted by the Operating Agreement and this instrument as to all obligations attributable to such interest under this agreement and the Operating Agreement whether or not such obligations arise before or after such interest is acquired.

C. To the extent that the parties have a security interest under Alabama's Uniform Commercial Code -- Secured Transactions, Ala. Code §§ 7-9A-101, et seq., as hereafter amended, supplemented or replaced, they shall be entitled to exercise the rights and remedies of a secured party under the Code. The bringing of a suit and the obtaining of judgment by a party for the secured indebtedness shall not be deemed an election of remedies or otherwise affect the lien rights or security interest as security for the payment thereof. In addition, upon default by any party in the payment of its share of expenses, interest or fees, or upon the improper use of funds by the Operator, the other parties shall have the right, without prejudice to other rights or remedies, to collect from the purchaser the proceeds from the sale of such defaulting party's share of Oil and Gas until the amount owed by such party, plus interest, has been received, and shall have the right to offset the amount owed against the proceeds from the sale of such defaulting party's share of Oil and Gas.

2016   1206   00513
Recorded in the Above
Deed  Book & Page
04-27-2016  10:27:40 AM

All purchasers of production may rely on a notification of default from the non-defaulting party or parties stating the amount due as a result of the default, and all parties waive any recourse available against purchasers for releasing production proceeds as provided in this paragraph.

D. If any party fails to pay its share of expenses within sixty (60) days after rendition of a statement therefor by Operator, the non-defaulting parties, including Operator, shall, upon request by Operator, pay the unpaid amount in the proportion that the interest of each such party bears to the interest of all such parties. Each party so paying its share of the unpaid amount shall be entitled to recover the amount it paid plus five hundred (500%) of that amount out of the proceeds from the sale of the defaulting party's share of oil and for gas, and, to secure payment thereof, be subrogated to the liens and security rights described in this paragraph 3 and in the Operating Agreement.

E. If any party does not perform all of its obligations under this agreement or the Operating Agreement, and the failure to perform subjects such party to foreclosure or execution proceedings pursuant to the provisions of this agreement or the Operating Agreement, to the extent allowed by governing law, the defaulting party waives any available right of redemption from and after the date of judgment, any required valuation or appraisement of the mortgaged or secured property prior to sale, any available right to stay execution or to require a marshalling of assets and any required bond in the event a receiver is appointed.

F. The lien and security interest granted in this paragraph 3 supplements identical rights granted under the Operating Agreement.

G. Each party does hereby grant to the other parties a power of sale as to any property that is subject to the lien granted hereunder or under the Operating Agreement, such power of sale to be exercised against the interests of any party that does not timely perform all of its obligations under this agreement and the Operating Agreement and by and for the benefit of the party to whom such obligations are owed (hereafter sometimes referred to as the "Obligee"). Such power of sale shall be executed in accordance with the following procedure: Obligee shall be authorized, at its option, whether or not possession of the interest in question is taken, to sell the interest against which the lien has been granted (or such part or parts thereof as Obligee may from time to time elect to sell) under the power of sale which is hereby given, at public outcry, to the highest bidder for cash, at the front or main door of the courthouse of the county in which the interest to be sold, or a substantial and material part thereof, is located, after first giving notice by publication once a week for three successive weeks of the time, place and terms of such sale, together with a description of the interest to be sold, by publication in some newspaper published in the county or counties in which the interest to be sold is located. If there are interests to be sold in more than one county, publication shall be made in all counties where any of the interests to be sold are located. The sale shall be held sometime during the applicable legal hours of sale on the day designated for the exercise of the power of sale hereunder. Obligee may (but is not required to) bid at any sale held hereunder in the form of cash, cash equivalents and/or cancellation of all or any part of the obligations, or any combination thereof, and may purchase the interests, or any part thereof, if the highest bidder therefor. The purchaser at any such sale shall be under no obligation to see to the proper application of the purchase money. At any sale, all or any part of the interests, whether real, personal or mixed, may be offered for sale in parcels or en masse for one total price, and the proceeds of any such sale en masse shall be accounted for in one account without distinction between the items included therein and without assigning to them any proportion of such proceeds, the obligated party hereby waiving the application of any doctrine of marshalling or like proceeding. In case Obligee, in the exercise of the power of sale herein given, elects to sell any interests in parts or parcels, sales thereof may be held from time to time, and the power of sale granted herein shall not be fully exercised until all of the interests not previously sold shall have been sold or all the obligations shall have been paid or otherwise satisfied in full. The purchase money, proceeds and avails, or any other sums collected by Obligee pursuant to this power of sale shall be applied by the Obligee against the costs and expenses of such sale, including reasonable attorneys' fees, then shall be credited against the obligations for which the sale was made, then shall be applied against any obligations then outstanding from the defaulting party to the Obligee and, finally, to the extent any remains, shall be paid to the party who had owed the obligations.

H. The above described security will be financed at the wellhead of the well or wells located on the Contract Area and this Recording Supplement may be filed in the land records in the County or Parish in which the Contract Area is located, and as a financing statement in all recording offices required under the Uniform Commercial Code or other applicable state statutes to perfect the above-described security interest, and any party hereto may file a continuation statement as necessary under the Uniform Commercial Code, or other state laws.

4. This agreement shall be effective as of the date of the Operating Agreement as above recited. Upon termination of this agreement and the Operating Agreement and the satisfaction of all obligations thereunder, Operator is authorized to file of record in all necessary recording offices a notice of

2016   1207   00514
Recorded in the Above
Deed  Book & Page
04-27-2016 10:27:40 AM

termination, and each party hereto agrees to execute such a notice of termination as to Operator's interest, upon the request of Operator, if Operator has complied with all of its financial obligations.

5. This agreement and the Operating Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, devisees, legal representatives, successors and assigns. No sale, encumbrance, transfer or other disposition shall be made by any party of any interest in the Leases or Interests subject hereto except as expressly permitted under the Operating Agreement and, if permitted, shall be made expressly subject to this agreement and the Operating Agreement and without prejudice to the rights of the other parties. If the transfer is permitted, the assignee of an ownership interest in any Oil and Gas Lease shall be deemed a party to this agreement and the Operating Agreement as to the interest assigned from and after the effective date of the transfer of ownership; provided, however, that the other parties shall not be required to recognize any such sale, encumbrance, transfer or other disposition for any purpose hereunder until thirty (30) days after they have received a copy of the instrument of transfer or other satisfactory evidence thereof in writing from the transferor or transferee. No assignment or other disposition of interest by a party shall relieve such party of obligations previously incurred by such party under this agreement or the Operating Agreement with respect to the interest transferred, including without limitation the obligation of a party to pay all costs attributable to an operation conducted under this agreement and the Operating Agreement in which such party has agreed to participate prior to making such assignment, and the lien and security interest granted by Article VII.B. of the Operating Agreement and hereby shall continue to burden the interest transferred to secure payment of any obligations.

6. In the event of a conflict between the terms and provisions of this agreement and the terms and provisions of the Operating Agreement, then, as between the parties, the terms and provisions of the Operating Agreement shall control.

7. This agreement shall be binding upon each Non-Operator when this agreement or a counterpart thereof has been executed by such Non-Operator and Operator notwithstanding that this agreement is not then or thereafter executed by all of the parties to which it is tendered or which are listed on Exhibit "A" as owning an interest in the Contract Area or which own, in fact, an interest in the Contract Area. In the event that any provision herein is illegal or unenforceable, the remaining provisions shall not be affected, and shall be enforced as if the illegal or unenforceable provision did not appear herein.

IN WITNESS WHEREOF, this agreement shall be effective as of November 1, 2006.

## OPERATOR

ATTEST OR WITNESS                                   SKLAR EXPLORATION COMPANY L.L.C.

Print Name: _J. Marshall Jones III_

By: _____
Print Name: _Sutton Lloyd_                          David A. Barlow
                                                    President – Chief Operating Officer

## NON-OPERATORS

ATTEST OR WITNESS                                   SKLARCO L.L.C.

Print Name: _J. Marshall Jones III_

By: _____
Print Name: _Sutton Lloyd_                          David A. Barlow
                                                    President – Chief Operating Officer

ATTEST OR WITNESS                                   MCCOMBS ENERGY, LTD.

Print Name: _____

By: _____
Print Name: _____                Larry Wyont
                                                    Vice President

Page 4 of 38                          ESCAMBIA PROSPECT
                                      RECORDING SUPPLEMENT

2016 1208
Recorded in the Above
Deed Book & Page
04-27-2016 10:27:40 AM
00515

termination, and each party hereto agrees to execute such a notice of termination as to Operator's interest, upon the request of Operator, if Operator has complied with all of its financial obligations.

5. This agreement and the Operating Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, devisees, legal representatives, successors and assigns. No sale, encumbrance, transfer or other disposition shall be made by any party of any interest in the Leases or Interests subject hereto except as expressly permitted under the Operating Agreement and, if permitted, shall be made expressly subject to this agreement and the Operating Agreement and without prejudice to the rights of the other parties. If the transfer is permitted, the assignee of an ownership interest in any Oil and Gas Lease shall be deemed a party to this agreement and the Operating Agreement as to the interest assigned from and after the effective date of the transfer of ownership; provided, however, that the other parties shall not be required to recognize any such sale, encumbrance, transfer or other disposition for any purpose hereunder until thirty (30) days after they have received a copy of the instrument of transfer or other satisfactory evidence thereof in writing from the transferor or transferee. No assignment or other disposition of interest by a party shall relieve such party of obligations previously incurred by such party under this agreement or the Operating Agreement with respect to the interest transferred, including without limitation the obligation of a party to pay all costs attributable to an operation conducted under this agreement and the Operating Agreement in which such party has agreed to participate prior to making such assignment, and the lien and security interest granted by Article VII.B. of the Operating Agreement and hereby shall continue to burden the interest transferred to secure payment of any such obligations.

6. In the event of a conflict between the terms and provisions of this agreement and the terms and provisions of the Operating Agreement, then, as between the parties, the terms and provisions of the Operating Agreement shall control.

7. This agreement shall be binding upon each Non-Operator when this agreement or a counterpart thereof has been executed by such Non-Operator and Operator notwithstanding that this agreement is not then or thereafter executed by all of the parties to which it is tendered or which are listed on Exhibit "A" as owning an interest in the Contract Area or which own, in fact, an interest in the Contract Area. In the event that any provision herein is illegal or unenforceable, the remaining provisions shall not be affected, and shall be enforced as if the illegal or unenforceable provision did not appear herein.

IN WITNESS WHEREOF, this agreement shall be effective as of November 1, 2006.

## OPERATOR

ATTEST OR WITNESS                    SKLAR EXPLORATION COMPANY L.L.C.

Print Name: _____     By: _____
                                            David A. Barlow
                                            President – Chief Operating Officer
Print Name: _____

## NON-OPERATORS

ATTEST OR WITNESS                    SKLARCO L.L.C.

Print Name: _____     By: _____
                                            David A. Barlow
                                            President – Chief Operating Officer
Print Name: _____

ATTEST OR WITNESS                    MCCOMBS ENERGY, LTD.

Print Name: OLIVIA BAILEY               By: _____
Print Name: Samantha Martinez                Larry Wyont
                                            Vice President

ESCAMBIA PROSPECT
RECORDING SUPPLEMENT

2016   1209
Deed   Book & Page
04-27-2016  10:27:40 AM
00516

ATTEST OR WITNESS

Print Name: *Ashley Kinnard*

Print Name: *DANIEL W. DEVALCY*

JJS ~~INTERESTS~~ INTERESTS ESCAMBIA, LLC
By: Houston Bulldog Capital
Management, LLC, Manager

By: _____
    Justin Simons
    Manager

ATTEST OR WITNESS

Print Name: _____

Print Name: _____

FANT ENERGY LIMITED
By: Richard E. Fant, L.L.C., General Partner

By: _____
    Stephen Swan
    Manager

ATTEST OR WITNESS

Print Name: _____

Print Name: _____

PICKENS FINANCIAL GROUP, L.L.C.

By: _____
    Michael K. Pickens
    Vice President

ATTEST OR WITNESS

Print Name: _____

Print Name: _____

JF HOWELL INTERESTS, L.P.
By: Howell Investments, L.L.C., General Partner

By: _____
    David Morgan
    Manager

ATTEST OR WITNESS

Print Name: _____

Print Name: _____

TAUBER EXPLORATION & PRODUCTION CO.

By: _____
    Richard E. Tauber
    President

ATTEST OR WITNESS

Print Name: _____

Print Name: _____

TIEMBO, LTD.
By: Simba Investors L.L.C., General Partner

By: _____
    Mark Rauch
    Member

ESCAMBIA PROSPECT
RECORDING SUPPLEMENT

Recorded in the Above
Deed Book & Page
04-27-2016 10:27:40 AM
00517

ATTEST OR WITNESS

JJS WORKING INTERESTS ESCAMBIA, LLC
By: Houston Bulldog Capital
Management, LLC, Manager

Print Name: _____

By: _____
      Justin Simons
      Manager

Print Name: _____


ATTEST OR WITNESS

FANT ENERGY LIMITED
By: Richard H. Fant, L.L.C., General Partner

Print Name: _Jose Cruz_

By: _____
      Stephen Swan
      Manager

Print Name: _Joshua Gooch_


ATTEST OR WITNESS

PICKENS FINANCIAL GROUP, L.L.C.

Print Name: _____

By: _____
      Michael K. Pickens
      Vice President

Print Name: _____


ATTEST OR WITNESS

JF HOWELL INTERESTS, L.P.
By: Howell Investments, L.L.C., General Partner

Print Name: _____

By: _____
      David Morgan
      Manager

Print Name: _____


ATTEST OR WITNESS

TAUBER EXPLORATION & PRODUCTION CO.

Print Name: _____

By: _____
      Richard E. Tauber
      President

Print Name: _____


ATTEST OR WITNESS

TIEMBO, LTD.
By: Simba Investors L.L.C., General Partner

Print Name: _____

By: _____
      Mark Rauch
      Member

Print Name: _____

ESCAMBIA PROSPECT
RECORDING SUPPLEMENT

2016  1211
Recorded in the Above
Deed Book & Page          00518
04-27-2016 10:27:40 AM

ATTEST OR WITNESS

Print Name: _____

Print Name: _____

JJS WORKING INTERESTS ESCAMBIA, LLC
By: Houston Bulldog Capital
Management, LLC, Manager

By: _____
     Justin Simons
     Manager


ATTEST OR WITNESS

Print Name: _____

Print Name: _____

FANT ENERGY LIMITED
By: Richard E. Fant, L.L.C., General Partner

By: _____
     Stephen Swan
     Manager


ATTEST OR WITNESS

Print Name: _Chen Kim_

Print Name: _Paul R. Jackson_

PICKENS FINANCIAL GROUP, L.L.C.

By: _____
     Michael K. Pickens
     Vice President
     2/24/2016


ATTEST OR WITNESS

Print Name: _____

Print Name: _____

JF HOWELL INTERESTS, L.P.
By: Howell Investments, L.L.C., General Partner

By: _____
     David Morgan
     Manager


ATTEST OR WITNESS

Print Name: _____

Print Name: _____

TAUBER EXPLORATION & PRODUCTION CO.

By: _____
     Richard E. Tauber
     President


ATTEST OR WITNESS

Print Name: _____

Print Name: _____

TIEMBO, LTD.
By: Simba Investors L.L.C., General Partner

By: _____
     Mark Rauch
     Member

ESCAMBIA PROSPECT
RECORDING SUPPLEMENT

Escambia

Recorded above
Deed Book & Page
04-27-2016 10:27:40 AM

00519

ATTEST OR WITNESS

JJS WORKING INTERESTS ESCAMBIA, LLC
By: Houston Bulldog Capital
Management, LLC, Manager

Print Name: _____

By: _____
      Justin Simons
      Manager

Print Name: _____


ATTEST OR WITNESS

FANT ENERGY LIMITED
By: Richard E. Fant, L.L.C., General Partner

Print Name: _____

By: _____
      Stephen Swan
      Manager

Print Name: _____


ATTEST OR WITNESS

PICKENS FINANCIAL GROUP, L.L.C.

Print Name: _____

By: _____
      Michael K. Pickens
      Vice President

Print Name: _____


ATTEST OR WITNESS

JF HOWELL INTERESTS, L.P.
By: Howell Investments, L.L.C., General Partner

Print Name: _Grayson C. Clarke_

By: _____
      David Morgan
      Manager

Print Name: _Shana T. Jump_


ATTEST OR WITNESS

TAUBER EXPLORATION & PRODUCTION CO.

Print Name: _____

By: _____
      Richard E. Tauber
      President

Print Name: _____


ATTEST OR WITNESS

TIEMBO, LTD.
By: Simba Investors L.L.C., General Partner

Print Name: _____

By: _____
      Mark Rauch
      Member

Print Name: _____

ESCAMBIA PROSPECT
RECORDING SUPPLEMENT

2016   1213
Recorded in the Above
Deed  Book & Page
04-27-2016 10:27:40 AM

ATTEST OR WITNESS

JJS WORKING INTERESTS ESCAMBIA, LLC 00520
By: Houston Bulldog Capital
Management, LLC, Manager

Print Name: _____

Print Name: _____

By: _____
     Justin Simons
     Manager

ATTEST OR WITNESS

FANT ENERGY LIMITED
By: Richard E. Fant, L.L.C., General Partner

Print Name: _____

Print Name: _____

By: _____
     Stephen Swan
     Manager

ATTEST OR WITNESS

PICKENS FINANCIAL GROUP, L.L.C.

Print Name: _____

Print Name: _____

By: _____
     Michael K. Pickens
     Vice President

ATTEST OR WITNESS

JF HOWELL INTERESTS, L.P.
By: Howell Investments, L.L.C., General Partner

Print Name: _____

Print Name: _____

By: _____
     David Morgan
     Manager

ATTEST OR WITNESS

Print Name: Rachel Clary

Print Name: JOHN ROBINSON

TAUBER EXPLORATION & PRODUCTION CO.

By: _____
     Richard E. Tauber
     President

ATTEST OR WITNESS

TIEMBO, LTD.
By: Simba Investors L.L.C., General Partner

Print Name: _____

Print Name: _____

By: _____
     Mark Rauch
     Member

ESCAMBIA PROSPECT
RECORDING SUPPLEMENT

Recorded in the Above
Deed Book & Page
04-27-2016 10:27:40 AM

ATTEST OR WITNESS

JJS WORKING INTERESTS ESCAMBIA, LLC
By: Houston Bulldog Capital
Management, LLC, Manager

00521

Print Name: _____

Print Name: _____

By: _____
    Justin Simons
    Manager

ATTEST OR WITNESS

FANT ENERGY LIMITED
By: Richard E. Fant, L.L.C., General Partner

Print Name: _____

Print Name: _____

By: _____
    Stephen Swan
    Manager

ATTEST OR WITNESS

PICKENS FINANCIAL GROUP, L.L.C.

Print Name: _____

Print Name: _____

By: _____
    Michael K. Pickens
    Vice President

ATTEST OR WITNESS

JF HOWELL INTERESTS, L.P.
By: Howell Investments, L.L.C., General Partner

Print Name: _____

Print Name: _____

By: _____
    David Morgan
    Manager

ATTEST OR WITNESS

TAUBER EXPLORATION & PRODUCTION CO.

Print Name: _____

Print Name: _____

By: _____
    Richard E. Tauber
    President

ATTEST OR WITNESS

TIEMBO, LTD.
By: Simba Investors L.L.C., General Partner

Print Name: Shannon Rhodes

Print Name: Sharon Hudek

By: _____
    Mark Rauch
    Member

ESCAMBIA PROSPECT
RECORDING SUPPLEMENT

Recorded in the Above
Deed Book & Page
04-27-2016 10:27:40 AM

ATTEST OR WITNESS

Print Name: _Tammy Dyess_

Print Name: _Kelly Weissinger_

KUDZU OIL PROPERTIES, LLC

By: _____   00522
    Wirt A. Yerger, III
    Manager


ATTEST OR WITNESS

Print Name: _____

Print Name: _____

MARKSCO, L.L.C.

By: _____
    Mark P. Sealy
    Manager


ATTEST OR WITNESS

Print Name: _____

Print Name: _____

LANDMARK EXPLORATION, LLC

By: _____
    Michael Johnson
    Manager


ATTEST OR WITNESS

Print Name: _____

Print Name: _____

CRAFT EXPLORATION COMPANY, LLC

By: _____
    Steven H. Craft
    Manager


ATTEST OR WITNESS

Print Name: _____

Print Name: _____

DICKSON OIL & GAS, LLC

By: _____
    C. Bickham Dickson, III
    Manager


ATTEST OR WITNESS

Print Name: _____

Print Name: _____

BUNDERO INVESTMENT COMPANY, L.L.C.

By: _____
    Robert P. Bowman
    Manager

ESCAMBIA PROSPECT
RECORDING SUPPLEMENT

```
2016   1216
Recorded in the Above
Deed  Book & Page
04-27-2016 10:27:40 AM
```

ATTEST OR WITNESS                              KUDZU OIL PROPERTIES, LLC                    00523

_____
Print Name: _____                By: _____
                                                   Wirt A. Yerger, III
_____                    Manager
Print Name: _____


ATTEST OR WITNESS                              MARKSCO, L.L.C.

_Christine M Fortson_
Print Name: _Christine M Fortson_              By: _____
_Dianne Salnait_                                   Mark P. Sealy
Print Name: _Dianne LaCroix_                       Manager


ATTEST OR WITNESS                              LANDMARK EXPLORATION, LLC

_____
Print Name: _____                By: _____
                                                   Michael Johnson
_____                    Manager
Print Name: _____


ATTEST OR WITNESS                              CRAFT EXPLORATION COMPANY, LLC

_____
Print Name: _____                By: _____
                                                   Steven H. Craft
_____                    Manager
Print Name: _____


ATTEST OR WITNESS                              DICKSON OIL & GAS, LLC

_____
Print Name: _____                By: _____
                                                   C. Bickham Dickson, III
_____                    Manager
Print Name: _____


ATTEST OR WITNESS                              BUNDERO INVESTMENT COMPANY, L.L.C.

_____
Print Name: _____                By: _____
                                                   Robert P. Bowman
_____                    Manager
Print Name: _____

ESCAMBIA PROSPECT
RECORDING SUPPLEMENT

2016  1217
Recorded in the Above
Deed Book & Page
04-27-2016 10:27:40 AM

00524

ATTEST OR WITNESS

Print Name: _____

Print Name: _____

KUDZU OIL PROPERTIES, LLC

By: _____
    Wirt A. Yerger, III
    Manager


ATTEST OR WITNESS

Print Name: _____

Print Name: _____

MARKSCO, L.L.C.

By: _____
    Mark P. Sealy
    Manager


ATTEST OR WITNESS

Print Name: _Carmen H. Crotwell_

Print Name: _Dana Russell_

LANDMARK EXPLORATION, LLC

By: _____
    Michael Johnson
    Manager


ATTEST OR WITNESS

Print Name: _____

Print Name: _____

CRAFT EXPLORATION COMPANY, LLC

By: _____
    Steven H. Craft
    Manager


ATTEST OR WITNESS

Print Name: _____

Print Name: _____

DICKSON OIL & GAS, LLC

By: _____
    C. Bickham Dickson, III
    Manager


ATTEST OR WITNESS

Print Name: _____

Print Name: _____

BUNDERO INVESTMENT COMPANY, L.L.C.

By: _____
    Robert P. Bowman
    Manager

ESCAMBIA PROSPECT
RECORDING SUPPLEMENT

Recorded in the Above
Deed  Book & Page
04-27-2016 10:27:40 AM
0 0 5 2 5

ATTEST OR WITNESS                          KUDZU OIL PROPERTIES, LLC

Print Name: _____
                                           By: _____
Print Name: _____                Wirt A. Yerger, III
                                                Manager


ATTEST OR WITNESS                          MARKSCO, L.L.C.

Print Name: _____
                                           By: _____
Print Name: _____                Mark P. Sealy
                                                Manager


ATTEST OR WITNESS                          LANDMARK EXPLORATION, LLC

Print Name: _____
                                           By: _____
Print Name: _____                Michael Johnson
                                                Manager


ATTEST OR WITNESS                          CRAFT EXPLORATION COMPANY, LLC

Print Name: _____
                                           By: _Steven H. Craft_____
Print Name: _____                Steven H. Craft
                                                Manager


ATTEST OR WITNESS                          DICKSON OIL & GAS, LLC

Print Name: _____
                                           By: _____
Print Name: _____                C. Bickham Dickson, III
                                                Manager


ATTEST OR WITNESS                          BUNDERO INVESTMENT COMPANY, L.L.C.

Print Name: _____
                                           By: _____
Print Name: _____                Robert P. Bowman
                                                Manager

ESCAMBIA PROSPECT
RECORDING SUPPLEMENT

Recorded in the Above
Deed  Book & Page
04-27-2016 10:27:40 AM

00526

ATTEST OR WITNESS                              KUDZU OIL PROPERTIES, LLC

Print Name: _____                    By: _____
                                                     Wirt A. Yerger, III
Print Name: _____                          Manager


ATTEST OR WITNESS                              MARKSCO, L.L.C.

Print Name: _____                    By: _____
                                                     Mark P. Sealy
Print Name: _____                          Manager


ATTEST OR WITNESS                              LANDMARK EXPLORATION, LLC

Print Name: _____                    By: _____
                                                     Michael Johnson
Print Name: _____                          Manager


ATTEST OR WITNESS                              CRAFT EXPLORATION COMPANY, LLC

Print Name: _____                    By: _____
                                                     Steven H. Craft
Print Name: _____                          Manager


ATTEST OR WITNESS                              DICKSON OIL & GAS, LLC

Print Name: _____                    By: _____ III
                                                     G. Bickham Dickson, III
Print Name: _____                          Manager


ATTEST OR WITNESS                              BUNDERO INVESTMENT COMPANY, L.L.C.

Print Name: _____                    By: _____
                                                     Robert P. Bowman
Print Name: _____                          Manager

ESCAMBIA PROSPECT
RECORDING SUPPLEMENT

2016   1220
Recorded in the Above
Deed Book & Page
04-27-2016 10:27:40 AM

00527

ATTEST OR WITNESS

Print Name: _____

Print Name: _____

KUDZU OIL PROPERTIES, LLC

By: _____
    Wirt A. Yerger, III
    Manager


ATTEST OR WITNESS

Print Name: _____

Print Name: _____

MARKSCO, L.L.C.

By: _____
    Mark P. Sealy
    Manager


ATTEST OR WITNESS

Print Name: _____

Print Name: _____

LANDMARK EXPLORATION, LLC

By: _____
    Michael Johnson
    Manager


ATTEST OR WITNESS

Print Name: _____

Print Name: _____

CRAFT EXPLORATION COMPANY, LLC

By: _____
    Steven H. Craft
    Manager


ATTEST OR WITNESS

Print Name: _____

Print Name: _____

DICKSON OIL & GAS, LLC

By: _____
    C. Bickham Dickson, III
    Manager


ATTEST OR WITNESS

Print Name: _Philip Stephens_

Print Name: _Randy S. Bartlett_

BUNDERO INVESTMENT COMPANY, L.L.C.

By: _____
    Robert P. Bowman
    Manager

ESCAMBIA PROSPECT
RECORDING SUPPLEMENT

3016   1221
Recorded In the Above
Deed  Book & Page
04-27-2016 10:27:40 AM

ATTEST OR WITNESS

Print Name: _Grant J. Tonkin_

Print Name: _Julie Feagler_

RESOURCE VENTURES, LLC                    00528

By: _____
       Mark A. Arnold
       Manager


ATTEST OR WITNESS

Print Name: _____

Print Name: _____

THE RUDMAN PARTNERSHIP

By: _____
       W.R. (Trey) Sibley, III
       Attorney-In-Fact

ESCAMBIA PROSPECT
RECORDING SUPPLEMENT

2016 1222
Recorded in the Above
Deed Book & Page
04-27-2016 10:27:40 AM

ATTEST OR WITNESS

RESOURCE VENTURES, LLC

00529

Print Name: _____

By: _____

     Mark A. Arnold
     Manager

Print Name: _____

ATTEST OR WITNESS

Print Name: Kerry Waddill

Print Name: KASHA HANCOCK

THE RUDMAN PARTNERSHIP

By: _____

     W.R. (Trey) Sibley, III
     Attorney-In-Fact

Recorded in the Above
Deed Book & Page
04-27-2016 10:27:40 AM

## ACKNOWLEDGMENTS

00530

STATE OF COLORADO

COUNTY OF BOULDER

I, _Camille Jenkins_, a notary public in and for said County and State, hereby certify that David A. Barlow, whose name as President – Chief Operating Officer of SKLAR EXPLORATION COMPANY L.L.C., a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _22_ day of _February_, 2016.

CAMILLE CULPEPPER JENKINS
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20154003785
MY COMMISSION EXPIRES JANUARY 27, 2019

_Camille Jenkins_
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _1/27/2019_

STATE OF COLORADO

COUNTY OF BOULDER

I, _Camille Jenkins_, a notary public in and for said County and State, hereby certify that David A. Barlow, whose name as President – Chief Operating Officer of SKLARCO L.L.C., a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _22_ day of _February_, 2016.

CAMILLE CULPEPPER JENKINS
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20154003785
MY COMMISSION EXPIRES JANUARY 27, 2019

_Camille Jenkins_
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _1/27/2019_

STATE OF TEXAS

COUNTY OF HARRIS

I, _____, a notary public in and for said County and State, hereby certify that Larry Wyont, whose name as Vice President of MCCOMBS ENERGY, LTD., a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

ESCAMBIA PROSPECT
RECORDING SUPPLEMENT

2016   1224
Recorded in the Above
Deed  Book & Page
04-27-2016 10:27:40 AM

## ACKNOWLEDGMENTS

00531

STATE OF COLORADO

COUNTY OF BOULDER

I, _____, a notary public in and for said County and State, hereby certify that David A. Barlow, whose name as President – Chief Operating Officer of SKLAR EXPLORATION COMPANY L.L.C., a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF COLORADO

COUNTY OF BOULDER

I, _____, a notary public in and for said County and State, hereby certify that David A. Barlow, whose name as President – Chief Operating Officer of SKLARCO L.L.C., a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF TEXAS

COUNTY OF HARRIS

I, Sharon M. McDonald, a notary public in and for said County and State, hereby certify that Larry Wyont, whose name as Vice President of MCCOMBS ENERGY, LTD., a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the 3rd day of February, 2016.

SHARON M. McDONALD
Notary Public, State of Texas
Commission Expires 12-29-2017

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: 12/29/2017

ESCAMBIA PROSPECT
RECORDING SUPPLEMENT

2016   1225
Recorded in the Above
Deed Book & Page
04-27-2016 10:27:40 AM

STATE OF TEXAS                                                              00532

COUNTY OF HARRIS

I, **DAPHENE R. NORWOOD**, a notary public in and for said County in said State, hereby certify that Justin Simons, whose name as Manager of Houston Bulldog Capital Management, LLC, the Manager of JJS ~~HOLDINGS~~ INTERESTS ESCAMBIA, LLC, a Texas limited liability company, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the **31ST** day of **MARCH**, 2016.

DAPHENE R. NORWOOD
Notary Public, State of Texas
Comm. Expires 05-13-2018
Notary ID 129817322

*Daphene R. Norwood*
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My commission expires: **MAY 13, 2018**


STATE OF TEXAS

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Stephen Swan, whose name as Manager of Richard E. Fant, LLC, the General Partner of FANT ENERGY LIMITED, a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said limited partnership.

Given under my hand and notarial seal this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF TEXAS

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Michael K. Pickens, whose name as Vice President of PICKENS FINANCIAL GROUP, L.L.C., a Texas limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

ESCAMBIA PROSPECT
RECORDING SUPPLEMENT

Recorded in the Above
Deed Book & Page
04-27-2016 10:27:40 AM

STATE OF TEXAS                                                    00533

COUNTY OF HARRIS

     I, _____, a notary public in and for said County in said State, hereby certify that Justin Simons, whose name as Manager of Houston Bulldog Capital Management, LLC, the Manager of JJS WORKING INTERESTS ESCAMBIA, LLC, a Texas limited liability company, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said company.

     Given under my hand and notarial seal this the _____ day of _____, 2016.


                                  _____
                                  NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My commission expires: _____


STATE OF TEXAS

COUNTY OF _Harris_

     I, _Kari Diane Cooksey_, a notary public in and for said County and State, hereby certify that Stephen Swan, whose name as Manager of Richard E. Fant, LLC, the General Partner of FANT ENERGY LIMITED, a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said limited partnership.

     Given under my hand and notarial seal this the _14th_ day of _March_, 2016.

KARI DIANE COOKSEY
Notary Public, State of Texas
Comm Expires 02-09 2020
Notary ID 130530488

                                  _Kari Diane Cooksey_
                                  NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _02-09-2020_


STATE OF TEXAS

COUNTY OF _____

     I, _____, a notary public in and for said County and State, hereby certify that Michael K. Pickens, whose name as Vice President of PICKENS FINANCIAL GROUP, L.L.C., a Texas limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said company.

     Given under my hand and notarial seal this the _____ day of _____, 2016.


                                  _____
                                  NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

ESCAMBIA PROSPECT
RECORDING SUPPLEMENT

Recorded in the Above
Deed Book & Page
04-27-2016 10:27:40 AM

0 0 5 3 4

STATE OF TEXAS

COUNTY OF HARRIS

       I, _____, a notary public in and for said County in said State, hereby certify that Justin Simons, whose name as Manager of Houston Bulldog Capital Management, LLC, the Manager of JJS WORKING INTERESTS ESCAMBIA, LLC, a Texas limited liability company, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said company.

       Given under my hand and notarial seal this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My commission expires: _____

STATE OF TEXAS

COUNTY OF _____

       I, _____, a notary public in and for said County and State, hereby certify that Stephen Swan, whose name as Manager of Richard E. Fant, LLC, the General Partner of FANT ENERGY LIMITED, a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said limited partnership.

       Given under my hand and notarial seal this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF TEXAS

COUNTY OF Dallas

       I, Kathy Laux, a notary public in and for said County and State, hereby certify that Michael K. Pickens, whose name as Vice President of PICKENS FINANCIAL GROUP, L.L.C., a Texas limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said company.

       Given under my hand and notarial seal this the 24 day of February, 2016.

_Kathy Laux_
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: 10/29/18

KATHY LAUX
My Commission Expires
October 29, 2018

ESCAMBIA PROSPECT
RECORDING SUPPLEMENT

2016   1228
Recorded in the Above
Deed  Book & Page
04-27-2016 10:27:40 AM

00535

STATE OF LOUISIANA

PARISH OF CADDO

I, *Melissa R. Eboarb*_____, a notary public in and for said Parish and State, hereby certify that David Morgan, whose name as Manager of Howell Investments, L.L.C., acting as the General Partner of JF HOWELL INTERESTS, L.P., a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the 2nd day of *March*, 2016.

NOTARY PUBLIC
# 68325

[AFFIX NOTARIAL SEAL]

My commission ~~expires~~: is for Life

STATE OF TEXAS

COUNTY OF HARRIS

I, _____, a notary public in and for said County and State, hereby certify that Richard E. Tauber, whose name as President of TAUBER EXPLORATION & PRODUCTION, CO., a Texas corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2016.

NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF TEXAS

COUNTY OF HARRIS

I, _____, a notary public in and for said County and State, hereby certify that Mark Rauch, whose name as Member of Simba Investors, L.L.C., the General Partner of TIEMBO, LTD., a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such Member and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2016.

NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

ESCAMBIA PROSPECT
RECORDING SUPPLEMENT

2016   1229
Recorded in the Above
Deed Book & Page
04-27-2016 10:27:40 AM

STATE OF LOUISIANA

00536

PARISH OF CADDO

I, _____, a notary public in and for said Parish and State, hereby certify that David Morgan, whose name as Manager of Howell Investments, L.L.C., acting as the General Partner of JF HOWELL INTERESTS, L.P., a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My commission expires: _____

STATE OF TEXAS

COUNTY OF HARRIS

I, _MYLA WUNDERLICH_____, a notary public in and for said County and State, hereby certify that Richard E. Tauber, whose name as President of TAUBER EXPLORATION & PRODUCTION, CO., a Texas corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _30th_ day of _MARCH_____, 2016.

Myla Wunderlich
NOTARY PUBLIC

**MYLA WUNDERLICH**
**Notary Public, State of Texas**
**Commission Expires 02-11-2020**
**Notary ID 12482280-0**

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF TEXAS

COUNTY OF HARRIS

I, _____, a notary public in and for said County and State, hereby certify that Mark Rauch, whose name as Member of Simba Investors, L.L.C., the General Partner of TIEMBO, LTD., a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such Member and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____



ESCAMBIA PROSPECT
RECORDING SUPPLEMENT

Recorded in the Above
Deed Book & Page
04-27-2016 10:27:40 AM

STATE OF LOUISIANA

PARISH OF CADDO

$00537$

I, _____, a notary public in and for said Parish and State, hereby certify that David Morgan, whose name as Manager of Howell Investments, L.L.C., acting as the General Partner of JF HOWELL INTERESTS, L.P., a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My commission expires: _____

STATE OF TEXAS

COUNTY OF HARRIS

I, _____, a notary public in and for said County and State, hereby certify that Richard E. Tauber, whose name as President of TAUBER EXPLORATION & PRODUCTION, CO., a Texas corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF TEXAS

COUNTY OF HARRIS

I, _PATTI L HANSON_, a notary public in and for said County and State, hereby certify that Mark Rauch, whose name as Member of Simba Investors, L.L.C., the General Partner of TIEMBO, LTD., a Texas limited partnership, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such Member and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _2_ day of _March_, 2016.

_Patti L Hanson_
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _1/18/2019_

ESCAMBIA PROSPECT
RECORDING SUPPLEMENT

2016 - 1231
Recorded in the Above
Deed Book & Page
04-27-2016 10:27:40 AM

00538

STATE OF MISSISSIPPI

COUNTY OF _Madison_

I, _Pamela F. Sebren_, a notary public in and for said County and State, hereby certify that Wirt A. Yerger, III, whose name as Manager of KUDZU OIL PROPERTIES, LLC, a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _23_ day of _February_, 2016.

_Pamela F. Sebren_
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _July 18, 2017_


STATE OF LOUISIANA

PARISH OF CADDO

I, _____, a notary public in and for said Parish and State, hereby certify that Mark P. Sealy, whose name as Manager of MARKSCO, L.L.C., a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF MISSISSIPPI

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Michael Johnson, whose name as Manager of LANDMARK EXPLORATION, LLC, a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

ESCAMBIA PROSPECT
RECORDING SUPPLEMENT

Recorded in the Above
Deed Book & Page
04-27-2016 10:27:40 AM

00539

STATE OF MISSISSIPPI

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Wirt A. Yerger, III, whose name as Manager of KUDZU OIL PROPERTIES, LLC, a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF LOUISIANA

PARISH OF CADDO

I, _Melissa P. Riddick_, a notary public in and for said Parish and State, hereby certify that Mark P. Sealy, whose name as Manager of MARKSCO, L.L.C., a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _24th_ day of _February_, 2016.

_Melissa P. Riddick_
NOTARY PUBLIC
MELISSA P. RIDDICK, Notary Public
Caddo Parish, Louisiana
My Commission is for Life  #6454

[AFFIX NOTARIAL SEAL]

My Commission Expires: _at death_

STATE OF MISSISSIPPI

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Michael Johnson, whose name as Manager of LANDMARK EXPLORATION, LLC, a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

Page 11 of 38

ESCAMBIA PROSPECT
RECORDING SUPPLEMENT

Recorded in the Above
Deed Book & Page
04-27-2016 10:27:40 AM

STATE OF MISSISSIPPI

00540

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Wirt A. Yerger, III, whose name as Manager of KUDZU OIL PROPERTIES, LLC, a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF LOUISIANA

PARISH OF CADDO

I, _____, a notary public in and for said Parish and State, hereby certify that Mark P. Sealy, whose name as Manager of MARKSCO, L.L.C., a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF MISSISSIPPI

COUNTY OF Rankin

I, Lena M. Mayfield, a notary public in and for said County and State, hereby certify that Michael Johnson, whose name as Manager of LANDMARK EXPLORATION, LLC, a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the 29 day of February, 2016.

_Lena M. Mayfield_
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: 4-29-2017

ESCAMBIA PROSPECT
RECORDING SUPPLEMENT

2016   1234
Recorded in the Above
Deed  Book & Page
04-27-2016 10:27:40 AM

STATE OF MISSISSIPPI

COUNTY OF MADISON                                                     00541

I, Julie DenHerder _____, a notary public in and for said County and State, hereby certify that Steven H. Craft, whose name as Manager of CRAFT EXPLORATION COMPANY, LLC, a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the 25th day of FEBRUARY, 2016.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: 10 15 16

STATE OF LOUISIANA

PARISH OF CADDO

I, _____, a notary public in and for said Parish and State, hereby certify that C. Bickham Dickson, III, whose name as Manager of DICKSON OIL & GAS, LLC, a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF LOUISIANA

PARISH OF CADDO

I, _____, a notary public in and for said Parish and State, hereby certify that Robert P. Bowman, whose name as Manager of BUNDERO INVESTMENT COMPANY, LLC, a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

Page 12 of 38

ESCAMBIA PROSPECT
RECORDING SUPPLEMENT

2016   1235
Recorded in the Above
Deed  Book & Page
04-27-2016 10:27:40 AM

STATE OF MISSISSIPPI

COUNTY OF _____

00542

I, _____, a notary public in and for said County and State, hereby certify that Steven H. Craft, whose name as Manager of CRAFT EXPLORATION COMPANY, LLC, a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF LOUISIANA

PARISH OF CADDO

I, _George_ _Portocarrero_, a notary public in and for said Parish and State, hereby certify that C. Bickham Dickson, III, whose name as Manager of DICKSON OIL & GAS, LLC, a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _15_ day of _March_, 2016.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _Lifetime_

```
GEORGE PORTOCARRERO
NOTARY PUBLIC - LOUISIANA
CADDO - BOSSIER PARISH
NOTARY ID NUMBER 056297
My Commission Is For Life
```

STATE OF LOUISIANA

PARISH OF CADDO

I, _____, a notary public in and for said Parish and State, hereby certify that Robert P. Bowman, whose name as Manager of BUNDERO INVESTMENT COMPANY, LLC, a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

ESCAMBIA PROSPECT
RECORDING SUPPLEMENT

2016   1236
Recorded in the Above
Deed  Book & Page
04-27-2016 10:27:40 AM

00543

STATE OF MISSISSIPPI

COUNTY OF _____

I, _____, a notary public in and for said County and State, hereby certify that Steven H. Craft, whose name as Manager of CRAFT EXPLORATION COMPANY, LLC, a Mississippi limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF LOUISIANA

PARISH OF CADDO

I, _____, a notary public in and for said Parish and State, hereby certify that C. Bickham Dickson, III, whose name as Manager of DICKSON OIL & GAS, LLC, a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____


STATE OF LOUISIANA

PARISH OF CADDO

I, Deborah W. Cox, a notary public in and for said Parish and State, hereby certify that Robert P. Bowman, whose name as Manager of BUNDERO INVESTMENT COMPANY, LLC, a Louisiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the 24th day of February, 2016.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: for life

DEBORAH W. COX 26693
Notary Public
Parish of Caddo
State of Louisiana

ESCAMBIA PROSPECT
RECORDING SUPPLEMENT

2016   1237
Recorded in the Above
Deed Book & Page
04-27-2016 10:27:40 AM

STATE OF COLORADO

00544

COUNTY OF Douglas

I, JoAnne Scherfel, a notary public in and for said County and State, hereby certify that Mark A. Arnold, whose name as Manager of RESOURCE VENTURES, LLC, an Indiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and notarial seal this the _14Th_ day of _MARCh_, 2016.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

> JOANNE SCHERFEL
> Notary Public
> State of Colorado
> Notary ID 20014001784
> My Commission Expires Mar 5, 2017

STATE OF TEXAS

COUNTY OF _____

I, _____, a notary public in and for said County in said State, hereby certify W.R. (Trey) Sibley, whose name as Attorney-In-Fact of THE RUDMAN PARTNERSHIP, a Texas general partnership, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said partnership.

Given under my hand and notarial seal this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

**This instrument prepared by:**
Duane A. Graham, Esq.
Armbrecht Jackson LLP
P.O. Box 290
Mobile, AL 36601

ESCAMBIA PROSPECT
RECORDING SUPPLEMENT

2016 1238
Recorded in the Above
Deed Book & Page
04-27-2016 10:27:40 AM

STATE OF COLORADO

COUNTY OF _____

00545

    I, _____, a notary public in and for said County and State, hereby certify that Mark A. Arnold, whose name as Manager of RESOURCE VENTURES, LLC, an Indiana limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said company.

    Given under my hand and notarial seal this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]

My Commission Expires: _____

STATE OF TEXAS

COUNTY OF *Dallas*

    I, *Frances Manske*, a notary public in and for said County in said State, hereby certify W.R. (Trey) Sibley, whose name as Attorney-In-Fact of THE RUDMAN PARTNERSHIP, a Texas general partnership, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he, in such capacity and with full authority, executed the same voluntarily for and as the act of said partnership.

    Given under my hand and notarial seal this the *30th* day of *March*, 2016.

*Frances Manske*
NOTARY PUBLIC

FRANCES MANSKE
ID # 00378888-7
Notary Public, State of Texas
My Commission Expires
03/07/2020

[AFFIX NOTARIAL SEAL]

My Commission Expires: *03/07/2020*

**This instrument prepared by:**
Duane A. Graham, Esq.
Armbrecht Jackson LLP
P.O. Box 290
Mobile, AL 36601

Page 13 of 38

2016   1239
Recorded in the Above
Deed  Book & Page
04-27-2016 10:27:40 AM

EXHIBIT "A"

00546

## PARTIES WITH INTERESTS IN CONTRACT AREA

| Party | Decimal Interest |
|---|---|
| Bundero Investment Company, L.L.C.<br>333 Texas Street, Suite 300<br>Shreveport, LA 71101 | 0.0100000 |
| Craft Exploration Company L.L.C.<br>P.O. Box 2430<br>Madison, MS 39130 | 0.0075000 |
| Dickson Oil & Gas, LLC<br>P.O. Box 52479<br>Shreveport, LA 71135 | 0.0087500 |
| Fant Energy Limited<br>P.O. Box 55205<br>Houston, TX 77255 | 0.0875000 |
| JF Howell Interests, L.P.<br>416 Travis St., Suite 700<br>Shreveport, LA 71101 | 0.0400000 |
| JJS Working Interests Escambia, LLC<br>4295 San Felipe, Suite 207<br>Houston, TX 77027 | 0.1819375 |
| Kudzu Oil Properties, LLC<br>300 Concourse Blvd, Suite 101<br>Ridgeland, MS 39157 | 0.0150000 |
| Landmark Exploration, LLC<br>P.O. Box 12004<br>Jackson, MS 39236 | 0.0150000 |
| Marksco, L.L.C.<br>333 Texas Street, Suite 1050<br>Shreveport, LA 71101 | 0.0175000 |
| McCombs Energy, Ltd.<br>5599 San Felipe, Suite 1200<br>Houston, TX 77056 | 0.2025000 |
| Pickens Financial Group, LLC<br>10100 N. Central Expressway, Suite 200<br>Dallas, TX 75231-4159 | 0.0375000 |
| Resource Ventures, LLC<br>8369 South Park Lane, Suite B<br>Littleton, CO 80120 | 0.0009375 |
| The Rudman Partnership<br>1700 Pacific Ave., Suite 4700<br>Dallas, TX 75201-4670 | 0.0937500 |
| Sklarco, LLC<br>401 Edwards Street, Suite 1601<br>Shreveport, LA 71101 | 0.2483750 |

2016    1240
Recorded in the Above
Deed  Book & Page
04-27-2016 10:27:40 AM

**Tauber Exploration & Production Company**          0.0187500
**55 Waugh Drive, Suite 600**                                                            00547
**Houston, TX 77007**

**Tiembo Ltd.**                                     0.0150000
**P.O. Box 270415**
**Houston, TX 77277-0415**
**TOTAL**                                           1.0000000

Recorded in the Above
Deed  Book & Page
04-27-2016 10:27:40 AM

EXHIBIT "A-1"    00548

## OIL, GAS AND MINERAL LEASES

1. Oil Gas and Mineral Lease dated 12/28/2010, by and between Cary Page, as Lessor, and John C. Albury, as Lessee, recorded on 2010/6351, of the official public records of Conecuh County, Alabama (1ESC01-L001)

2. Oil Gas and Mineral Lease dated 12/28/2010, by and between Mary Katherine Jones Brundage, hier of Dorothy Fay, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2010 Pg 6235 Rec.Dt. 12/16/2010, of the official public records of Conecuh County, Alabama (1ESC01-L002)

3. Oil Gas and Mineral Lease dated 12/28/2010, by and between MARY ANN TAYLOR, WIFE OF Dwight Taylor, as Lessor, and John C. Albury, as Lessee, recorded on Bk 2010 Pg 6364 Rec.Dt. 12/28/2010, of the official public records of Conecuh County, Alabama (1ESC01-L003)

4. Oil Gas and Mineral Lease dated 01/09/2006, by and between Tully Logan & Annie Lee Logan, et ux, as Lessor, and John C. Albury, as Lessee, recorded on Bk 405 Pg 779-7 Rec.Dt. 6/9/2006, of the official public records of Escambia County, Alabama (1ESC01-L004)

5. Oil Gas and Mineral Lease dated 01/09/2006, by and between Jack D. Logan & Margaret Logan, et ux, as Lessor, and John C. Albury, as Lessee, recorded on Bk 405 Pg 777-7 Rec.Dt. 6/9/2006, of the official public records of Escambia County, Alabama (1ESC01-L005)

6. Oil Gas and Mineral Lease dated 01/09/2006, by and between Kenneth Allen Baker & Randle Bruce Baker, as Lessor, and John C. Albury, as Lessee, recorded on Bk 2006 Pg 2028, of the official public records of Conecuh County, Alabama (1ESC01-L006)

7. Oil Gas and Mineral Lease dated 01/09/2006, by and between Raymond B. Logan & Billie Joyce Logan, et ux, as Lessor, and John C. Albury, as Lessee, recorded on Bk 405 Pg 775-7 Rec.Dt. 6/9/2006, of the official public records of Escambia County, Alabama (1ESC01-L008)

8. Oil Gas and Mineral Lease dated 01/09/2006, by and between James W. Logan & Nell Marie Logan, et ux, as Lessor, and John C. Albury, as Lessee, recorded on Bk 405 Pg 781-7, of the official public records of Escambia County, Alabama (1ESC01-L009)

9. Oil Gas and Mineral Lease dated 01/09/2006, by and between Bertie T. Hassell & Juanita T. Hassell, et ux, as Lessor, and John C. Albury, as Lessee, recorded on Bk 405 Pg 783-7 Rec.Dt. 6/9/2006, of the official public records of Escambia County, Alabama (1ESC01-L010)

10. Oil Gas and Mineral Lease dated 09/20/2012, by and between Ralls Properties, L.L.C., as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 541 Page 953, of the official public records of Escambia County, Alabama (1ESC01-L011)

11. Oil Gas and Mineral Lease dated 02/13/2006, by and between R. Wyatt Feagin, as Lessor, and John C. Albury, as Lessee, recorded on Bk 405 Pg 787-7, of the official public records of Escambia County, Alabama (1ESC01-L012)

12. Oil Gas and Mineral Lease dated 02/13/2006, by and between Nanette Feagin Beck, as Lessor, and John C. Albury, as Lessee, recorded on Bk 405 Pg 790-7 Rec.Dt. 6/9/2006, of the official public records of Escambia County, Alabama (1ESC01-L013)

13. Oil Gas and Mineral Lease dated 03/10/2006, by and between Noel E. Lindholm & Gloria H. Lindholm, et ux, as Lessor, and John C. Albury, as Lessee, recorded on Bk 2006 Pg 2032 Rec.Dt. 6/8/2006, of the official public records of Conecuh County, Alabama (1ESC01-L014)

14. Oil Gas and Mineral Lease dated 10/27/2015, by and between Barbara Register, married, Byron R. Kelley, married, Eugenia Kelley Hyde, married, Sandra Kelley Watts, married, Linda Kelley, single, Jeffrey S. Snowden, single, John M. Snowden, married, James R. Snowden, married, Tara N. Sellers, single, Mark Snowden, married, Sharon E. Dahike, married, J.C Snowden, individually, and by J.C. Snowden and/or Frankie J. Snowden, as their Attorney-in-fact, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 543 Pg 673, of the official public records of Escambia County, Alabama (1ESC01-L015)

15. Oil Gas and Mineral Lease dated 03/03/2006, by and between William E. Older, as Lessor, and John C. Albury, as Lessee, recorded on Bk 2006 Pg 2036 Rec.Dt. 6/8/2006, of the official public records of Conecuh County, Alabama (1ESC01-L019)

16. Oil Gas and Mineral Lease dated 01/03/2011, by and between Earline B. Older, as Lessor, and UNKNOWN / OTHERS, as Lessee, recorded on Bk 2011 Pg 600, of the official public records of Conecuh County, Alabama (1ESC01-L020)

17. Oil Gas and Mineral Lease dated 03/09/2011, by and between Juanita C. Waters, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 47, of the official public records of Conecuh County, Alabama (1ESC01-L021)

18. Oil Gas and Mineral Lease dated 03/09/2011, by and between Alva Nann Taylor & Robert Taylor, et vir, as Lessor, and John C. Albury, as Lessee, recorded on Bk 2011 Pg 554 Extention Recorded Book 2013 Page 6162, of the official public records of Conecuh County, Alabama (1ESC01-L022)

19. Oil Gas and Mineral Lease dated 03/09/2011, by and between Jo Ann Langham, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 53  Recorded Extention Book 2013 Page 6172, of the official public records of Conecuh County, Alabama (1ESC01-L025)

20. Oil Gas and Mineral Lease dated 03/09/2011, by and between Robert Cary & Judy Cary, et ux, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 50 Recorded Extention Book 2013 Page 6176, of the official public records of Conecuh County, Alabama (1ESC01-L029)

21. Oil Gas and Mineral Lease dated 03/20/2011, by and between Stephen Jeter, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 501, of the official public records of Escambia County, Alabama (1ESC01-L030)

22. Oil Gas and Mineral Lease dated 03/20/2011, by and between John R. Jeter, III, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 566, of the official public records of Escambia County, Alabama (1ESC01-L031)

23. Oil Gas and Mineral Lease dated 03/20/2011, by and between Sally Jeter Hammond, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 498, of the official public records of Conecuh County, Alabama (1ESC01-L032)

24. Oil Gas and Mineral Lease dated 03/28/2011, by and between Allene B. Ward & James Earl Beverly, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 56, of the official public records of Conecuh County, Alabama (1ESC01-L033)

Recorded in the Above
Deed Book & Page
04-27-2016 10:27:40 AM

00549

25. Oil Gas and Mineral Lease dated 03/28/2011, by and between Allene B. Ward, et al, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 58, of the official public records of Conecuh County, Alabama (1ESC01-L034)

26. Oil Gas and Mineral Lease dated 04/02/2006, by and between David Edwin Logan & Karen F. Logan, et ux, as Lessor, and John C. Albury, as Lessee, recorded on Bk 405 Pg 815, of the official public records of Conecuh County, Alabama (1ESC01-L039)

27. Oil Gas and Mineral Lease dated 03/20/2011, by and between Sarah M. Lanier, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 150 Rec.Dt. 1/7/2011, of the official public records of Conecuh County, Alabama (1ESC01-L040)

28. Oil Gas and Mineral Lease dated 02/28/2014, by and between Wayne M. Blair & Carolyn Blair, et ux, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 586 Pg 789, of the official public records of Escambia County, Alabama (1ESC01-L041)

29. Oil Gas and Mineral Lease dated 05/12/2006, by and between William E. Older, as Lessor, and John C. Albury, as Lessee, recorded on Bk 2006 Pg 2532 Rec.Dt. 7/17/2006, of the official public records of Conecuh County, Alabama (1ESC01-L042)

30. Oil Gas and Mineral Lease dated 06/06/2011, by and between Juanita Ralls, as Lessor, and John C. Albury, as Lessee, recorded on Bk 2011 Pg 3092, of the official public records of Conecuh County, Alabama (1ESC01-L043)

31. Oil Gas and Mineral Lease dated 05/10/2011, by and between MARY KATHERINE JONES BRUNDAGE, DUAGHTER OF DOROTHY, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 710 Rec.Dt. 2/24/2011, of the official public records of Conecuh County, Alabama (1ESC01-L044)

32. Oil Gas and Mineral Lease dated 02/28/2014, by and between Martha B. Robinson, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2014 Pg 394, of the official public records of Conecuh County, Alabama (1ESC01-L045)

33. Oil Gas and Mineral Lease dated 01/03/2011, by and between Earline B. Older, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 600 Rec.Dt. 2/14/2011, of the official public records of Conecuh County, Alabama (1ESC01-L046)

34. Oil Gas and Mineral Lease dated 06/17/2011, by and between Helen Pate, as Trustee for Josh Pate and Jill Pate, as Lessor, and John C. Albury, as Lessee, recorded on Bk 2011 Pg 5334 Rec.Dt. 11/3/2011, of the official public records of Conecuh County, Alabama (1ESC01-L047)

35. Oil Gas and Mineral Lease dated 05/11/2011, by and between Mary Ann Taylor, widow of Dwight Taylor, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 708 Rec.Dt. 2/24/2011, of the official public records of Conecuh County, Alabama (1ESC01-L048)

36. Oil Gas and Mineral Lease dated 02/28/2014, by and between Mary B. Andrews & William Patrick Andrews, et ux, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 567 Page 492, of the official public records of Escambia County, Alabama (1ESC01-L049)

37. Oil Gas and Mineral Lease dated 03/29/2011, by and between Oscar DePriest Tucker, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 493 Rec.Dt. 2/2/2011, of the official public records of Conecuh County, Alabama (1ESC01-L050)

38. Oil Gas and Mineral Lease dated 05/30/2014, by and between John N. Feagin & Germania W. Feagin, et ux, as Lessor, and John C. Albury, as Lessee, recorded on Bk 2014 Page 323, of the official public records of Conecuh County, Alabama (1ESC01-L051)

39. Oil Gas and Mineral Lease dated 06/05/2014, by and between Joel R. Pate, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2014 Pg 842, of the official public records of Conecuh County, Alabama (1ESC01-L052)

40. Oil Gas and Mineral Lease dated 05/24/2014, by and between William G. Dawkins & Juanita B. Dawkins, et ux, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 573 Pg 147, of the official public records of Escambia County, Alabama (1ESC01-L053)

41. Oil Gas and Mineral Lease dated 05/24/2014, by and between Carolyn C. Kennedy, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk573 Pg 144, of the official public records of Escambia County, Alabama (1ESC01-L054)

42. Oil Gas and Mineral Lease dated 06/05/2006, by and between Frank Steadman & Beverly Steadman, et ux, as Lessor, and John C. Albury, as Lessee, recorded on Bk 2006 Pg 2534, of the official public records of Conecuh County, Alabama (1ESC01-L055)

43. Oil Gas and Mineral Lease dated 05/18/2011, by and between Sarah Ann Leyden, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 514 Pg 102-1 Rec.Dt. 4/8/2011, of the official public records of Escambia County, Alabama (1ESC01-L056)

44. Oil Gas and Mineral Lease dated 05/18/2011, by and between Michael P. Leyden, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 514 Pg 99-10 Rec.Dt. 4/8/2011, of the official public records of Escambia County, Alabama (1ESC01-L057)

45. Oil Gas and Mineral Lease dated 03/24/2011, by and between Frank M. Stamps, as Lessor, and John C. Albury, as Lessee, recorded on Bk 514 Pg 96-98 Rec.Dt. 4/8/2011, of the official public records of Escambia County, Alabama (1ESC01-L058)

46. Oil Gas and Mineral Lease dated 11/20/2006, by and between Elizabeth R. Epstein, as Lessor, and John C. Albury, as Lessee, recorded on Bk 422 & 2007 Pg 720 & Entry 00720, of the official public records of Escambia County, Alabama (1ESC01-L065)

47. Oil Gas and Mineral Lease dated 11/10/2006, by and between Edgar McCreary, et ux, as Lessor, and John C. Albury, as Lessee, recorded on Bk 422 & 2007 Pg 722 & Entry 00722 Rec.Dt. 1/24/2007, of the official public records of Escambia County, Alabama (1ESC01-L066)

48. Oil Gas and Mineral Lease dated 01/03/2016, by and between Reo Kirkland, Jr., as Lessor, and John C. Albury, as Lessee, recorded on Bk 2012 Pg 8014, of the official public records of Conecuh County, Alabama (1ESC01-L069)

49. Oil Gas and Mineral Lease dated 06/28/2007, by and between Marjorie Rabun Woodell, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 438 Pg 840 Entry 00840 Rec.Dt. 8/13/2007, of the official public records of Escambia County, Alabama (1ESC01-L070)

50. Oil Gas and Mineral Lease dated 05/16/2007, by and between Alex W. Feagin, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 438 Pg 837 Entry 00837, of the official public records of Escambia County, Alabama (1ESC01-L072)

51. Oil Gas and Mineral Lease dated 05/14/2007, by and between George M. Findley Estate, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 438 Pg 835 Entry 00835 Rec.Dt. 8/13/2007, of the official public records of Escambia County, Alabama (1ESC01-L074)

2016   1243   0055(
Recorded in the Above
Deed  Book & Page
04-27-2016 10:27:40 AM

52.  Oil Gas and Mineral Lease dated 03/26/2015, by and between Cynthia Goza Whitver, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 535 Pg 655 Rec.Dt. 5/30/2012, of the official public records of Escambia County, Alabama (1ESC01-L078)

53.  Oil Gas and Mineral Lease dated 03/26/2015, by and between Amanda Goza Greco, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 535 Pg 653 Rec.Dt. 5/30/2012, of the official public records of Escambia County, Alabama (1ESC01-L079)

54.  Oil Gas and Mineral Lease dated 07/16/2007, by and between Ronice Cook Thames, Ind. & Trustee for The Lanoy T, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 440 Pg 439 Entry 00439, of the official public records of Escambia County, Alabama (1ESC01-L081)

55.  Oil Gas and Mineral Lease dated 11/02/2015, by and between Estate of Marie Mabe Bergman, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 545  Pg 517, of the official public records of Escambia County, Alabama (1ESC01-L082)

56.  Oil Gas and Mineral Lease dated 07/17/2007, by and between State of Alabama, as Lessor, and SKLAR EXPLORATION CO., L.L.C., as Lessee, recorded on Bk 444 & 2007 Pg 4100 Entry 00034 Rec.Dt. 11/6/2007, of the official public records of Escambia County, Alabama (1ESC01-L083)

57.  Oil Gas and Mineral Lease dated 07/17/2007, by and between State of Alabama, as Lessor, and SKLAR EXPLORATION CO., L.L.C., as Lessee, recorded on Bk 444 & 2007 Pg 4107 Entry 00041 Rec.Dt. 11/6/2007, of the official public records of Conecuh County, Alabama (1ESC01-L084)

58.  Oil Gas and Mineral Lease dated 01/17/2013, by and between Syble LaJune White, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 548 Pg 941, of the official public records of Escambia County, Alabama (1ESC01-L087)

59.  Oil Gas and Mineral Lease dated 02/15/2013, by and between Mary H. Strain Family Trust, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 552 Page 506, of the official public records of Escambia County, Alabama (1ESC01-L088)

60.  Oil Gas and Mineral Lease dated 02/15/2013, by and between Gordon Kelley O'Neal, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 454 Pg 692, of the official public records of Escambia County, Alabama (1ESC01-L089)

61.  Oil Gas and Mineral Lease dated 02/15/2013, by and between Caroline Frances O'Neal, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 551 Pg 954, of the official public records of Escambia County, Alabama (1ESC01-L090)

62.  Oil Gas and Mineral Lease dated 02/15/2013, by and between Robert H. O'Neal, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 551 Pg 952, of the official public records of Escambia County, Alabama (1ESC01-L091)

63.  Oil Gas and Mineral Lease dated 12/15/2014, by and between Candice Howard Shaughnessy, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 584 Page 953, of the official public records of Escambia County, Alabama (1ESC01-L093)

64.  Oil Gas and Mineral Lease dated 12/15/2014, by and between Abbie Howard, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 547 pg  617, of the official public records of Escambia County, Alabama (1ESC01-L097)

65.  Oil Gas and Mineral Lease dated 01/17/2013, by and between Carol Roberts, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 548 Pg 949, of the official public records of Escambia County, Alabama (1ESC01-L098)

66.  Oil Gas and Mineral Lease dated 01/17/2013, by and between John Robert Roby, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 548 Pg 943, of the official public records of Escambia County, Alabama (1ESC01-L099)

67.  Oil Gas and Mineral Lease dated 01/17/2013, by and between James C. Roby, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 548 Pg 947, of the official public records of Escambia County, Alabama (1ESC01-L100)

68.  Oil Gas and Mineral Lease dated 01/17/2013, by and between Janice Smith, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 548 Pg 953, of the official public records of Escambia County, Alabama (1ESC01-L101)

69.  Oil Gas and Mineral Lease dated 01/04/2013, by and between Michael R. Cary, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 546 pg 5, of the official public records of Escambia County, Alabama (1ESC01-L102)

70.  Oil Gas and Mineral Lease dated 01/16/2013, by and between Sandra Ellis, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 548 Pg 951, of the official public records of Escambia County, Alabama (1ESC01-L109)

71.  Oil Gas and Mineral Lease dated 01/17/2013, by and between Foster F. Fountain, III, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 547 Page 629, of the official public records of Escambia County, Alabama (1ESC01-L110)

72.  Oil Gas and Mineral Lease dated 01/17/2013, by and between Karen A. Fulford, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 548 Pg 945, of the official public records of Escambia County, Alabama (1ESC01-L111)

73.  Oil Gas and Mineral Lease dated 11/01/2015, by and between Gene R. Dixon, et ux, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 543 Pg 1000, of the official public records of Escambia County, Alabama (1ESC01-L115)

74.  Oil Gas and Mineral Lease dated 10/29/2015, by and between Amanda O'Guinn, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 543Pg 675, of the official public records of Escambia County, Alabama (1ESC01-L117)

75.  Oil Gas and Mineral Lease dated 10/29/2015, by and between Rebecca McClelland, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 543 Pg 819, of the official public records of Escambia County, Alabama (1ESC01-L118)

76.  Oil Gas and Mineral Lease dated 10/29/2015, by and between Winona S. Maddox, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 543 Pg 679, of the official public records of Escambia County, Alabama (1ESC01-L119)

77.  Oil Gas and Mineral Lease dated 10/15/2015, by and between Jacquelyn Jernigan, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 543 Page 7, of the official public records of Escambia County, Alabama (1ESC01-L120)

78.  Oil Gas and Mineral Lease dated 10/29/2015, by and between Priscilla West, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 543 Pg 677, of the official public records of Escambia County, Alabama (1ESC01-L121)

79.  Oil Gas and Mineral Lease dated 11/02/2007, by and between Lee W. Thompson, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 450 Pg 373 Entry 00373 Rec.Dt. 2/21/2008, of the official public records of Escambia County, Alabama (1ESC01-L123)

80.  Oil Gas and Mineral Lease dated 11/07/2012, by and between Ray Uptagrafft, et ux, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 543 Pg 998, of the official public records of Escambia County, Alabama (1ESC01-L129)

81.  Oil Gas and Mineral Lease dated 12/05/2015, by and between Frances B. Pierce, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 541 Pg 760, of the official public records of Escambia County, Alabama (1ESC01-L131)

2016   1244
Recorded in the Above
Deed Book & Page
04-27-2016 10:27:40 AM

00551

82. Oil Gas and Mineral Lease dated 12/01/2012, by and between A. Jake Holmes, et ux, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 450 Pg 402 Entry 00402 Rec.Dt. 2/21/2008, of the official public records of Escambia County, Alabama (1ESC01-L132)

83. Oil Gas and Mineral Lease dated 11/28/2015, by and between Linda Zeiler, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 541 Pg 758, of the official public records of Escambia County, Alabama (1ESC01-L133)

84. Oil Gas and Mineral Lease dated 11/28/2015, by and between Stephen H. Lambert, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 541 Pg 762, of the official public records of Escambia County, Alabama (1ESC01-L134)

85. Oil Gas and Mineral Lease dated 10/31/2015, by and between Charles Collins, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 544 Pg 386, of the official public records of Escambia County, Alabama (1ESC01-L138)

86. Oil Gas and Mineral Lease dated 11/07/2015, by and between Danny Berk Watson, et ux, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 541 Pg 257, of the official public records of Escambia County, Alabama (1ESC01-L144)

87. Oil Gas and Mineral Lease dated 02/22/2013, by and between Carse Casey Jackson, Jr., as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 550 Page 843, of the official public records of Escambia County, Alabama (1ESC01-L148)

88. Oil Gas and Mineral Lease dated 01/17/2013, by and between Sarah Russell Tate, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 548 Pg 955, of the official public records of Escambia County, Alabama (1ESC01-L149)

89. Oil Gas and Mineral Lease dated 02/15/2013, by and between Kelley Alford, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 455 Pg 920, of the official public records of Escambia County, Alabama (1ESC01-L151)

90. Oil Gas and Mineral Lease dated 02/15/2013, by and between Edwin Sanford, III, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book    Page, of the official public records of Escambia County, Alabama (1ESC01-L152)

91. Oil Gas and Mineral Lease dated 01/22/2013, by and between Alice Marie Durant, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 548 Pg 957, of the official public records of Escambia County, Alabama (1ESC01-L155)

92. Oil Gas and Mineral Lease dated 06/24/2010, by and between Alex W. Feagin, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3105, of the official public records of Conecuh County, Alabama (1ESC01-L156)

93. Oil Gas and Mineral Lease dated 06/11/2008, by and between Steven D. Graves, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 464 Pg 130 Rec.Dt. 9/15/2008, of the official public records of Conecuh County, Alabama (1ESC01-L157)

94. Oil Gas and Mineral Lease dated 06/12/2014, by and between Patricia Jones Farrish, et ux, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 573 Pg 488, of the official public records of Escambia County, Alabama (1ESC01-L158)

95. Oil Gas and Mineral Lease dated 03/20/2014, by and between Sarah M. Lanier, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2014 Pg 1571, of the official public records of Conecuh County, Alabama (1ESC01-L159)

96. Oil Gas and Mineral Lease dated 06/19/2014, by and between Franklin Jackson, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 903 Pg 903, of the official public records of Escambia County, Alabama (1ESC01-L160)

97. Oil Gas and Mineral Lease dated 06/19/2014, by and between Frankie Culliver Samuel, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 876 Pg 876, of the official public records of Escambia County, Alabama (1ESC01-L161)

98. Oil Gas and Mineral Lease dated 06/19/2014, by and between Large Culliver, Jr., as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 573 Pg 879, of the official public records of Escambia County, Alabama (1ESC01-L162)

99. Oil Gas and Mineral Lease dated 06/19/2014, by and between Helen Culliver Farrish, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 870 Pg 573, of the official public records of Escambia County, Alabama (1ESC01-L163)

100. Oil Gas and Mineral Lease dated 03/27/2014, by and between Linda Culliver, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 573 Pg 864, of the official public records of Escambia County, Alabama (1ESC01-L164)

101. Oil Gas and Mineral Lease dated 03/27/2014, by and between Mattie Payne, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 573 Pg 873, of the official public records of Escambia County, Alabama (1ESC01-L165)

102. Oil Gas and Mineral Lease dated 03/27/2014, by and between Genice Brazile, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 867 Pg 573, of the official public records of Escambia County, Alabama (1ESC01-L166)

103. Oil Gas and Mineral Lease dated 06/23/2014, by and between Nancy Richardson, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 575 Pg 6, of the official public records of Escambia County, Alabama (1ESC01-L167)

104. Oil Gas and Mineral Lease dated 06/06/2014, by and between Laura Jane Andrews, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 576 Pg 391, of the official public records of Escambia County, Alabama (1ESC01-L168)

105. Oil Gas and Mineral Lease dated 07/03/2014, by and between Patrick B. Collins, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 575 Pg 3, of the official public records of Escambia County, Alabama (1ESC01-L172)

106. Oil Gas and Mineral Lease dated 06/09/2014, by and between Cynthia A. Goza Whitver, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 573 Pg 960, of the official public records of Escambia County, Alabama (1ESC01-L173)

107. Oil Gas and Mineral Lease dated 07/03/2014, by and between Amanda S. Goza Greco, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 589 Pg 732, of the official public records of Escambia County, Alabama (1ESC01-L174)

108. Oil Gas and Mineral Lease dated 07/21/2014, by and between Wiley Salter, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 576 Page 388, of the official public records of Escambia County, Alabama (1ESC01-L175)

109. Oil Gas and Mineral Lease dated 07/15/2011, by and between Martha H. Williams, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 518 Pg 371-3 Rec.Dt. 7/13/2011, of the official public records of Escambia County, Alabama (1ESC01-L177)

110. Oil Gas and Mineral Lease dated 07/14/2014, by and between Edith G. Hamilton, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 578 Pg 478, of the official public records of Escambia County, Alabama (1ESC01-L178)

111. Oil Gas and Mineral Lease dated 08/25/2014, by and between Mae Adele Tait Sharp, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2014 Pg 1465, of the official public records of Conecuh County, Alabama (1ESC01-L180)

112. Oil Gas and Mineral Lease dated 08/25/2011, by and between Charles R. Tait, III, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3555 Rec.Dt. 7/14/2011, of the official public records of Conecuh County, Alabama (1ESC01-L182)

113. Oil Gas and Mineral Lease dated 08/25/2014, by and between Charles R. Tait, Jr., as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2014 Pg 2127, of the official public records of Conecuh County, Alabama (1ESC01-L183)

2016   1245
Recorded in the Above
Deed Book & Page
04-27-2016 10:27:40 AM 00552

114. Oil Gas and Mineral Lease dated 08/27/2014, by and between Family Trust (Merritt), as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 573 Pg 900, of the official public records of Escambia County, Alabama (1ESC01-L186)

115. Oil Gas and Mineral Lease dated 08/15/2011, by and between Robert T. Feagin, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4275, of the official public records of Escambia County, Alabama (1ESC01-L187)

116. Oil Gas and Mineral Lease dated 01/24/2006, by and between Loree R. Hamiter, James E. Hamiter, & Harold W. Ha, as Lessor, and John C. Albury, as Lessee, recorded on Bk 2006 Pg 2030 Rec.Dt. 6/8/2006, of the official public records of Conecuh County, Alabama (1ESC01-L188)

117. Oil Gas and Mineral Lease dated 08/18/2011, by and between John Greel Ralls, Sr., as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2008 Pg 4746, of the official public records of Conecuh County, Alabama (1ESC01-L191)

118. Oil Gas and Mineral Lease dated 08/25/2014, by and between Darrell Preston Brannon, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2014 Pg 1564, of the official public records of Conecuh County, Alabama (1ESC01-L193)

119. Oil Gas and Mineral Lease dated 08/25/2014, by and between Michael Brian Crookshank, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2014 Pg 1455, of the official public records of Conecuh County, Alabama (1ESC01-L194)

120. Oil Gas and Mineral Lease dated 08/25/2014, by and between Vera Frances Tait, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2014 Pg 2291, of the official public records of Conecuh County, Alabama (1ESC01-L195)

121. Oil Gas and Mineral Lease dated 09/27/2014, by and between L.P. Rush Oil & Gas Co., Inc., as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 581 Page 992, of the official public records of Escambia County, Alabama (1ESC01-L196)

122. Oil Gas and Mineral Lease dated 11/06/2011, by and between Fay B. Vernor, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 527 Pg 141 Rec.Dt. 1/12/2012, of the official public records of Escambia County, Alabama (1ESC01-L197)

123. Oil Gas and Mineral Lease dated 11/06/2014, by and between Carol H. Pugh, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 581 Page 4, of the official public records of Escambia County, Alabama (1ESC01-L200)

124. Oil Gas and Mineral Lease dated 11/06/2014, by and between Mildred Horton Swindle, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 584 Page 499, of the official public records of Escambia County, Alabama (1ESC01-L201)

125. Oil Gas and Mineral Lease dated 07/07/2014, by and between William K. Horton, III, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 581 Page 1, of the official public records of Escambia County, Alabama (1ESC01-L202)

126. Oil Gas and Mineral Lease dated 12/19/2008, by and between Angela D. Short, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 1318, of the official public records of Conecuh County, Alabama (1ESC01-L203)

127. Oil Gas and Mineral Lease dated 08/23/2008, by and between Janie M. Johnston, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 500 Rec.Dt. 1/13/2009, of the official public records of Conecuh County, Alabama (1ESC01-L204)

128. Oil Gas and Mineral Lease dated 07/16/2014, by and between Margaret Horton Moss, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 581 Page 814, of the official public records of Escambia County, Alabama (1ESC01-L206)

129. Oil Gas and Mineral Lease dated 11/06/2014, by and between Mary Ann Mack, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 581 Page 7, of the official public records of Escambia County, Alabama (1ESC01-L207)

130. Oil Gas and Mineral Lease dated 02/11/2009, by and between Barbara S. Johnston, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 1320 Rec.Dt. 3/3/2009, of the official public records of Conecuh County, Alabama (1ESC01-L209)

131. Oil Gas and Mineral Lease dated 02/09/2012, by and between Cedar Creek Land & Timber, Inc., as Lessor, and UNKNOWN / OTHERS, as Lessee, recorded on Book 2012 Page 562 ; Book 526 Page 949, of the official public records of Conecuh County, Alabama (1ESC01-L210)

132. Oil Gas and Mineral Lease dated 02/15/2009, by and between Charlie Johnson, Jr., et ux, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 1702 Rec.Dt. 4/2/2009, of the official public records of Conecuh County, Alabama (1ESC01-L211)

133. Oil Gas and Mineral Lease dated 02/15/2009, by and between Robert N. Johnston, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 1714 Rec.Dt. 4/2/2009, of the official public records of Conecuh County, Alabama (1ESC01-L212)

134. Oil Gas and Mineral Lease dated 03/02/2009, by and between Johnsonville Volunteer Fire Department, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 1704 Rec.Dt. 4/2/2009, of the official public records of Conecuh County, Alabama (1ESC01-L213)

135. Oil Gas and Mineral Lease dated 02/11/2009, by and between Robert Terrell McLendon, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 1725 Rec.Dt. 4/2/2009, of the official public records of Conecuh County, Alabama (1ESC01-L214)

136. Oil Gas and Mineral Lease dated 02/15/2009, by and between Ginger Richardson, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 1723 Rec.Dt. 4/2/2009, of the official public records of Conecuh County, Alabama (1ESC01-L215)

137. Oil Gas and Mineral Lease dated 02/15/2009, by and between Sallie Steele, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 1721 Rec.Dt. 4/2/2009, of the official public records of Conecuh County, Alabama (1ESC01-L216)

138. Oil Gas and Mineral Lease dated 03/13/2014, by and between Carolyn C. Kennedy, as Lessor, and Sklarco, LLC, as Lessee, of the official public records of Conecuh County, Alabama (1ESC01-L217)

139. Oil Gas and Mineral Lease dated 02/19/2009, by and between William Greg Graddy, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 1710 Rec.Dt. 4/2/2009, of the official public records of Conecuh County, Alabama (1ESC01-L218)

140. Oil Gas and Mineral Lease dated 02/15/2009, by and between Joanna Johnston Foster, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 1716 Rec.Dt. 4/2/2009, of the official public records of Conecuh County, Alabama (1ESC01-L219)

141. Oil Gas and Mineral Lease dated 02/15/2009, by and between Annie Jo Johnston, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 1708 Rec.Dt. 4/2/2009, of the official public records of Conecuh County, Alabama (1ESC01-L220)

142. Oil Gas and Mineral Lease dated 02/18/2009, by and between Willie Frank Jones, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 1706 Rec.Dt. 4/2/2006, of the official public records of Conecuh County, Alabama (1ESC01-L221)

143. Oil Gas and Mineral Lease dated 01/02/2013, by and between Robert Earl Warr, et ux, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2013 Pg 26, of the official public records of Conecuh County, Alabama (1ESC01-L223)

2016  1266
Recorded in the above
Deed Book & Page
04-27-2016 10:27:40 AM

00553

144. Oil Gas and Mineral Lease dated 03/05/2009, by and between Willie L. Bradley, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 1899 Rec.Dt. 4/24/2009, of the official public records of Conecuh County, Alabama (1ESC01-L224)

145. Oil Gas and Mineral Lease dated 03/05/2009, by and between Hazel A. Nettles, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 1897 Rec.Dt. 4/24/2009, of the official public records of Conecuh County, Alabama (1ESC01-L225)

146. Oil Gas and Mineral Lease dated 03/05/2009, by and between Prunastean Milner, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 1894 Rec.Dt. 4/24/2009, of the official public records of Conecuh County, Alabama (1ESC01-L226)

147. Oil Gas and Mineral Lease dated 03/05/2009, by and between Vernon J. Bradley, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 1884 Rec.Dt. 4/24/2009, of the official public records of Conecuh County, Alabama (1ESC01-L227)

148. Oil Gas and Mineral Lease dated 02/15/2009, by and between Tranum Johnston, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 1892 Rec.Dt. 4/24/2009, of the official public records of Conecuh County, Alabama (1ESC01-L228)

149. Oil Gas and Mineral Lease dated 02/15/2009, by and between Kay Johnston Hall, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 1890 Rec.Dt. 4/24/2009, of the official public records of Conecuh County, Alabama (1ESC01-L229)

150. Oil Gas and Mineral Lease dated 03/05/2009, by and between Pete Wolff, III, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 1888 Rec.Dt. 4/24/2009, of the official public records of Conecuh County, Alabama (1ESC01-L230)

151. Oil Gas and Mineral Lease dated 03/04/2009, by and between Jeff D. Johnston Testamentary Trust, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 1886, of the official public records of Conecuh County, Alabama (1ESC01-L231)

152. Oil Gas and Mineral Lease dated 03/05/2009, by and between Marian E. Johnson, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 2002 Rec.Dt. 5/1/2009, of the official public records of Conecuh County, Alabama (1ESC01-L232)

153. Oil Gas and Mineral Lease dated 03/05/2009, by and between Henry J. Bradley, Jr., as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 2004 Rec.Dt. 5/1/2009, of the official public records of Conecuh County, Alabama (1ESC01-L233)

154. Oil Gas and Mineral Lease dated 02/18/2009, by and between Zella Mae Thornton, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 2006 Rec.Dt. 5/1/2009, of the official public records of Conecuh County, Alabama (1ESC01-L234)

155. Oil Gas and Mineral Lease dated 03/23/2009, by and between Debra E. Williamson, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 2008 Rec.Dt. 5/1/2009, of the official public records of Conecuh County, Alabama (1ESC01-L235)

156. Oil Gas and Mineral Lease dated 02/15/2009, by and between Gayle Fountain, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 2010 Rec.Dt. 5/1/2009, of the official public records of Conecuh County, Alabama (1ESC01-L236)

157. Oil Gas and Mineral Lease dated 03/05/2009, by and between Cleveland C. Kelly, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 2012 Rec.Dt. 5/1/2009, of the official public records of Conecuh County, Alabama (1ESC01-L237)

158. Oil Gas and Mineral Lease dated 03/05/2009, by and between Stephen Michael Warr, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 2014 Rec.Dt. 5/1/2009, of the official public records of Conecuh County, Alabama (1ESC01-L238)

159. Oil Gas and Mineral Lease dated 03/14/2009, by and between Rene Cary, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 2017 Rec.Dt. 5/1/2009, of the official public records of Conecuh County, Alabama (1ESC01-L239)

160. Oil Gas and Mineral Lease dated 03/14/2009, by and between Margaret Ann Skiles, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 2895 Rec.Dt. 6/22/2009, of the official public records of Conecuh County, Alabama (1ESC01-L240)

161. Oil Gas and Mineral Lease dated 04/02/2009, by and between Jo Ann Cary Langham, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 2893 Rec.Dt. 6/22/2009, of the official public records of Conecuh County, Alabama (1ESC01-L241)

162. Oil Gas and Mineral Lease dated 03/14/2009, by and between W. T. Cary, Jr., as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 2881 Rec.Dt. 6/22/2009, of the official public records of Conecuh County, Alabama (1ESC01-L242)

163. Oil Gas and Mineral Lease dated 03/14/2009, by and between Joyce Wingard, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 2883 Rec.Dt. 6/22/2009, of the official public records of Conecuh County, Alabama (1ESC01-L243)

164. Oil Gas and Mineral Lease dated 04/02/2009, by and between Robert E. Cary, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 2885 Rec.Dt. 6/22/2009, of the official public records of Conecuh County, Alabama (1ESC01-L244)

165. Oil Gas and Mineral Lease dated 04/02/2009, by and between Juanita Cary Waters, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 2887 Rec.Dt. 6/22/2009, of the official public records of Conecuh County, Alabama (1ESC01-L245)

166. Oil Gas and Mineral Lease dated 02/15/2009, by and between Judi C. Byrd, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 2891 Rec.Dt. 6/22/2009, of the official public records of Conecuh County, Alabama (1ESC01-L247)

167. Oil Gas and Mineral Lease dated 04/02/2009, by and between Alva Nann Cary Taylor, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 2951 Rec.Dt. 6/29/2009, of the official public records of Conecuh County, Alabama (1ESC01-L248)

168. Oil Gas and Mineral Lease dated 02/20/2009, by and between Nancy Backsman Lowell, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 4457 Rec.Dt. 9/28/2009, of the official public records of Conecuh County, Alabama (1ESC01-L249)

169. Oil Gas and Mineral Lease dated 08/11/2009, by and between Donna Sue Smith, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 4467 Rec.Dt. 9/28/2009, of the official public records of Conecuh County, Alabama (1ESC01-L250)

170. Oil Gas and Mineral Lease dated 09/21/2009, by and between Cedar Creek Land & Timber, Inc., as Lessor, and SKLAR EXPLORATION CO., L.L.C., as Lessee, recorded on Book 2009 Page 4872, of the official public records of Conecuh County, Alabama (1ESC01-L251)

171. Oil Gas and Mineral Lease dated 02/20/2009, by and between Mary Catherine Rauschert, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 4970 Rec.Dt. 10/26/2009, of the official public records of Conecuh County, Alabama (1ESC01-L252)

172. Oil Gas and Mineral Lease dated 02/20/2009, by and between Robert E. Backsman, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 4972 Rec.Dt. 10/26/2009, of the official public records of Conecuh County, Alabama (1ESC01-L253)

173. Oil Gas and Mineral Lease dated 02/20/2009, by and between Bernard Lee Backsman, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2009 Pg 5227 Rec.Dt. 11/23/2009, of the official public records of Conecuh County, Alabama (1ESC01-L254)

Recorded in the Above
Deed Book & Page
04-27-2016 10:27:40 AM

00554

174. Oil Gas and Mineral Lease dated 02/05/2010, by and between BARBARA HERBERT SIMMONS, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2010 Pg 1708 Rec.Dt. 3/22/2010, of the official public records of Conecuh County, Alabama (1ESC01-L255)

175. Oil Gas and Mineral Lease dated 02/05/2010, by and between RAY WEEKS JR., as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2010 Pg 3517, of the official public records of Conecuh County, Alabama (1ESC01-L256)

176. Oil Gas and Mineral Lease dated 05/12/2010, by and between BETTY WEEKS SPURLOCK, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2010 Pg 3514 Rec.Dt. 6/29/2010, of the official public records of Conecuh County, Alabama (1ESC01-L257)

177. Oil Gas and Mineral Lease dated 12/28/2010, by and between Dorothy Sharon Jones Gates, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2010 Pg 6232 Rec.Dt. 12/16/2010, of the official public records of Conecuh County, Alabama (1ESC01-L259)

178. Oil Gas and Mineral Lease dated 12/02/2013, by and between Cedar Creek Land & Timber Inc, as Lessor, and Sklarco, LLC, as Lessee, recorded on 12/17/2013, Book 568 Page 806, of the official public records of Escambia County, Alabama (1ESC01-L260)

179. Oil Gas and Mineral Lease dated 12/13/2013, by and between Cedar Creek Land & Timber, Inc., as Lessor, and Sklarco, LLC, as Lessee, recorded on 12/17/2013, Book, 568, Page 809, of the official public records of Escambia County, Alabama (1ESC01-L261)

180. Oil Gas and Mineral Lease dated 01/04/2011, by and between Janie M. Johnston, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 152 Rec.Dt. 1/7/2011, of the official public records of Conecuh County, Alabama (1ESC01-L262)

181. Oil Gas and Mineral Lease dated 01/04/2011, by and between Sarah M. Lanier, Trustee of the MARIE A. Lanier Ir, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 144 Rec.Dt. 1/7/2011, of the official public records of Conecuh County, Alabama (1ESC01-L263)

182. Oil Gas and Mineral Lease dated 12/20/2010, by and between JERRY PARKER WATSON, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2010 Pg 6335, of the official public records of Conecuh County, Alabama (1ESC01-L264)

183. Oil Gas and Mineral Lease dated 12/22/2010, by and between EDD FUQUA, JR, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 60, of the official public records of Conecuh County, Alabama (1ESC01-L265)

184. Oil Gas and Mineral Lease dated 12/22/2010, by and between MARTIN FUQUA, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2010 Pg 6357, of the official public records of Conecuh County, Alabama (1ESC01-L266)

185. Oil Gas and Mineral Lease dated 12/22/2010, by and between DANIEL J. FUQUA, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2010 Pg 6359, of the official public records of Conecuh County, Alabama (1ESC01-L267)

186. Oil Gas and Mineral Lease dated 12/28/2010, by and between CATHY TOMLIN, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2010 Pg 6416, of the official public records of Conecuh County, Alabama (1ESC01-L268)

187. Oil Gas and Mineral Lease dated 12/28/2010, by and between ROBERT TERRELL MCCLENDON, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2010 Pg 6422, of the official public records of Conecuh County, Alabama (1ESC01-L269)

188. Oil Gas and Mineral Lease dated 12/28/2010, by and between LUCY CLAIR MCCLENDON, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2010 Pg 6418, of the official public records of Conecuh County, Alabama (1ESC01-L270)

189. Oil Gas and Mineral Lease dated 12/28/2010, by and between SARA M. MCCLENDON, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2010 Pg 6420, of the official public records of Conecuh County, Alabama (1ESC01-L271)

190. Oil Gas and Mineral Lease dated 01/04/2011, by and between SARA LANIER IRR FOR GLENN E. LANIER,II, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 148, of the official public records of Conecuh County, Alabama (1ESC01-L272)

191. Oil Gas and Mineral Lease dated 01/04/2011, by and between SARA LANIER FOR SARA L. LANIER IRR TRUST, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 146, of the official public records of Conecuh County, Alabama (1ESC01-L273)

192. Oil Gas and Mineral Lease dated 05/05/2011, by and between Dorothy Sharon Jones Gates, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 491 Rec.Dt. 2/2/2011, of the official public records of Conecuh County, Alabama (1ESC01-L274)

193. Oil Gas and Mineral Lease dated 05/30/2014, by and between OLEN PAUL PADGETT & KIMBERLY F. PADGETT, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2014 Page 436, of the official public records of Conecuh County, Alabama (1ESC01-L275)

194. Oil Gas and Mineral Lease dated 05/30/2014, by and between JOHN FEAGIN JR, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2014 Page 434, of the official public records of Conecuh County, Alabama (1ESC01-L276)

195. Oil Gas and Mineral Lease dated 05/30/2014, by and between BENJAMIN C FEAGIN, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2014 Page 438, of the official public records of Conecuh County, Alabama (1ESC01-L277)

196. Oil Gas and Mineral Lease dated 02/04/2011, by and between SARA M. MCLENDON, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 562 Rec.Dt. 2/11/2011, of the official public records of Conecuh County, Alabama (1ESC01-L278)

197. Oil Gas and Mineral Lease dated 02/04/2011, by and between Lucy Clair McLendon, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 564 Rec.Dt. 2/11/2011, of the official public records of Conecuh County, Alabama (1ESC01-L279)

198. Oil Gas and Mineral Lease dated 02/10/2011, by and between STEVE GRAVES, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 560 Rec.Dt. 2/11/2011, of the official public records of Conecuh County, Alabama (1ESC01-L280)

199. Oil Gas and Mineral Lease dated 02/24/2011, by and between FANNIE H ROBINS, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 822 Rec.Dt. 3/7/2011, of the official public records of Conecuh County, Alabama (1ESC01-L281)

200. Oil Gas and Mineral Lease dated 02/24/2011, by and between Alice Smith Cary, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2011 Page 820 ; Amended and Ratified in Book 2013 Page 3347; Amended and Ratified in Book 2013 Page 3351; Amended and Ratified in Book 2013 Page 3355; Amended and Ratified in Book 2013 Page 3359; Amended and Ratified in Book 2013 Page 3366; Amended and Ratified in Book 2013 Page 3347; Amended and Ratified in Book 2013 Page 6286, of the official public records of Conecuh County, Alabama (1ESC01-L282)

Recorded in the Above
Deed Book & Page
04-27-2016 10:27:40 AM

00555

201. Oil Gas and Mineral Lease dated 02/09/2011, by and between JANIE M JOHNSTON, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 679 Rec.Dt. 2/23/2011, of the official public records of Conecuh County, Alabama (1ESC01-L283)

202. Oil Gas and Mineral Lease dated 02/10/2011, by and between SARAH M LANIER, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 633 Rec.Dt. 2/17/2011, of the official public records of Conecuh County, Alabama (1ESC01-L284)

203. Oil Gas and Mineral Lease dated 02/10/2011, by and between SARAH M LANIER, TRUSTEE OF THE SARAH M LANIER IRRE, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 635 Rec.Dt. 2/17/2011, of the official public records of Conecuh County, Alabama (1ESC01-L285)

204. Oil Gas and Mineral Lease dated 02/10/2011, by and between SARAH M LANIER, TRUSTEE OF THE SARAH M LAIER IRREV, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 639 Rec.Dt. 2/17/2011, of the official public records of Conecuh County, Alabama (1ESC01-L286)

205. Oil Gas and Mineral Lease dated 02/10/2011, by and between SARAH M LANIER TRUSTEE OF THE SARAH M LANIER IRREV, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 637 Rec.Dt. 2/17/2011, of the official public records of Conecuh County, Alabama (1ESC01-L287)

206. Oil Gas and Mineral Lease dated 02/04/2011, by and between CATHY TOMLIN, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 681 Rec.Dt. 2/23/2011, of the official public records of Conecuh County, Alabama (1ESC01-L288)

207. Oil Gas and Mineral Lease dated 02/04/2011, by and between ROBERT TERRELL MCLENDON, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 683 Rec.Dt. 2/23/2011, of the official public records of Conecuh County, Alabama (1ESC01-L289)

208. Oil Gas and Mineral Lease dated 03/29/2011, by and between KAREN W. BARNES, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 1322 Rec.Dt. 3/31/2011, of the official public records of Conecuh County, Alabama (1ESC01-L290)

209. Oil Gas and Mineral Lease dated 03/22/2011, by and between BEAMON WILLIAMS BY AIF KAREN W. BARNES, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 1324 Rec.Dt. 3/31/2011, of the official public records of Conecuh County, Alabama (1ESC01-L291)

210. Oil Gas and Mineral Lease dated 03/23/2011, by and between MARY W. GILL, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 1305 Rec.Dt. 3/29/2011, of the official public records of Conecuh County, Alabama (1ESC01-L292)

211. Oil Gas and Mineral Lease dated 03/23/2011, by and between EURA BELL JOHNSON, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 1307 Rec.Dt. 3/29/2011, of the official public records of Conecuh County, Alabama (1ESC01-L293)

212. Oil Gas and Mineral Lease dated 03/19/2011, by and between KAY WILLIAMS WOLFE, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 1610 Rec.Dt. 4/7/2011, of the official public records of Conecuh County, Alabama (1ESC01-L294)

213. Oil Gas and Mineral Lease dated 03/19/2011, by and between TOMMIE B. BRAGWELL, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 1616 Rec.Dt. 4/7/2011, of the official public records of Conecuh County, Alabama (1ESC01-L295)

214. Oil Gas and Mineral Lease dated 03/19/2011, by and between CHRISTOPHER A. WILLIAMS, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 1612 Rec.Dt. 4/7/2011, of the official public records of Conecuh County, Alabama (1ESC01-L296)

215. Oil Gas and Mineral Lease dated 03/19/2011, by and between JAMES CARL WILLIAMS, JR., as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 1614 Rec.Dt. 4/7/2011, of the official public records of Conecuh County, Alabama (1ESC01-L297)

216. Oil Gas and Mineral Lease dated 03/19/2011, by and between DANIEL B WILLIAMS, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 1919 Rec.Dt. 4/26/2011, of the official public records of Conecuh County, Alabama (1ESC01-L298)

217. Oil Gas and Mineral Lease dated 03/19/2011, by and between KENNETH J WILLIAMS, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 1915 Rec.Dt. 4/26/2011, of the official public records of Conecuh County, Alabama (1ESC01-L299)

218. Oil Gas and Mineral Lease dated 04/08/2011, by and between MICHAEL WOLFE, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 1917 Rec.Dt. 4/26/2011, of the official public records of Conecuh County, Alabama (1ESC01-L300)

219. Oil Gas and Mineral Lease dated 03/19/2011, by and between THOMAS A. WILLIAMS, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 1631 Rec.Dt. 4/11/2011, of the official public records of Conecuh County, Alabama (1ESC01-L301)

220. Oil Gas and Mineral Lease dated 04/13/2011, by and between ETHEL BELL WILLIAMS, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 1690 Rec.Dt. 4/14/2011, of the official public records of Conecuh County, Alabama (1ESC01-L302)

221. Oil Gas and Mineral Lease dated 04/07/2011, by and between LAURETTA CULLIVER, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 1692 Rec.Dt. 4/14/2011, of the official public records of Conecuh County, Alabama (1ESC01-L303)

222. Oil Gas and Mineral Lease dated 04/08/2011, by and between STEPHEN WOLFE, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 2123 Rec.Dt. 5/10/2011, of the official public records of Conecuh County, Alabama (1ESC01-L304)

223. Oil Gas and Mineral Lease dated 03/19/2011, by and between SPIROS PROTOPSALTIS, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 2120 Rec.Dt. 5/10/2011, of the official public records of Conecuh County, Alabama (1ESC01-L305)

224. Oil Gas and Mineral Lease dated 04/11/2011, by and between CLIFFORD WILLIAMS, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 2106 Rec.Dt. 5/10/2011, of the official public records of Conecuh County, Alabama (1ESC01-L306)

225. Oil Gas and Mineral Lease dated 04/11/2011, by and between Annie B. Franklin, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 2108 Rec.Dt. 5/10/2011, of the official public records of Conecuh County, Alabama (1ESC01-L307)

2016   1249
Recorded in the Above
Deed  Book & Page
04-27-2016  10:27:40 AM        00556

226. Oil Gas and Mineral Lease dated 05/03/2011, by and between TERRANCE CARTER, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3054 Rec.Dt. 6/13/2011, of the official public records of Conecuh County, Alabama (1ESC01-L308)

227. Oil Gas and Mineral Lease dated 04/19/2011, by and between GAIL WILLIAMS, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3069 Rec.Dt. 6/13/2011, of the official public records of Conecuh County, Alabama (1ESC01-L309)

228. Oil Gas and Mineral Lease dated 04/21/2011, by and between CONSTANCE MARSHALL WILLIAMS, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3071 Rec.Dt. 6/13/2011, of the official public records of Conecuh County, Alabama (1ESC01-L310)

229. Oil Gas and Mineral Lease dated 03/20/2011, by and between John R. Jeter, III, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 516 Pg 142-1 Rec.Dt. 5/23/2011, of the official public records of Escambia County, Alabama (1ESC01-L311)

230. Oil Gas and Mineral Lease dated 05/16/2011, by and between RAMON ROOSEVELT WILLIAMS, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3034 Rec.Dt. 6/10/2011, of the official public records of Conecuh County, Alabama (1ESC01-L312)

231. Oil Gas and Mineral Lease dated 05/16/2011, by and between STEPFON WILLIAMS, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3036 Rec.Dt. 6/10/2011, of the official public records of Conecuh County, Alabama (1ESC01-L313)

232. Oil Gas and Mineral Lease dated 05/16/2011, by and between CLANFORD WILLIAMS JR, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3038 Rec.Dt. 6/10/2011, of the official public records of Conecuh County, Alabama (1ESC01-L314)

233. Oil Gas and Mineral Lease dated 04/16/2011, by and between DONALD RAY WILLIAMS, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 2459 Rec.Dt. 5/19/2011, of the official public records of Conecuh County, Alabama (1ESC01-L315)

234. Oil Gas and Mineral Lease dated 04/16/2011, by and between WILLIE E WILLIAMS, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 2465 Rec.Dt. 5/19/2011, of the official public records of Conecuh County, Alabama (1ESC01-L316)

235. Oil Gas and Mineral Lease dated 04/25/2011, by and between Angela Jones, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3030 Rec.Dt. 6/10/2011, of the official public records of Conecuh County, Alabama (1ESC01-L317)

236. Oil Gas and Mineral Lease dated 05/16/2011, by and between GLORIA JEAN ADAMS, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3032 Rec.Dt. 6/10/2011, of the official public records of Conecuh County, Alabama (1ESC01-L318)

237. Oil Gas and Mineral Lease dated 05/30/2014, by and between CHRIST THE KING CATHOLIC CHURCH OF ANDALUSIA ALABA, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2014 Page 1457; Ratified in Book 2014 Page 6400, of the official public records of Conecuh County, Alabama (1ESC01-L321)

238. Oil Gas and Mineral Lease dated 01/26/2014, by and between OSCAR DE PRIEST TUCKER, as Lessor, and Gulf Coast Mineral, LLC, as Lessee, recorded on Bk 2013 Pg 5652, of the official public records of Conecuh County, Alabama (1ESC01-L322)

239. Oil Gas and Mineral Lease dated 03/02/2011, by and between Brooklyn Zion Church, as Lessor, and Gulf Coast Mineral, LLC, as Lessee, recorded on Bk 2011 Pg 2730 Recorded Extention Book 2013 Page 6166, of the official public records of Conecuh County, Alabama (1ESC01-L327)

240. Oil Gas and Mineral Lease dated 02/15/2014, by and between Mamie Bradley Estate, as Lessor, and Gulf Coast Mineral, LLC, as Lessee, recorded on Bk 2013 Page 6134, of the official public records of Conecuh County, Alabama (1ESC01-L328)

241. Oil Gas and Mineral Lease dated 02/14/2014, by and between Cleveland Stephens, Heir of Henry & Molly Stephens, as Lessor, and Gulf Coast Mineral, LLC, as Lessee, recorded on Bk 2014 Page 34, of the official public records of Conecuh County, Alabama (1ESC01-L329)

242. Oil Gas and Mineral Lease dated 02/14/2011, by and between Andrella Cook Rankins Nettles, as Lessor, and Gulf Coast Mineral, LLC, as Lessee, recorded on Bk 2011 Pg 2160 Extention Recorded Book 2013 Page 6164, of the official public records of Conecuh County, Alabama (1ESC01-L330)

243. Oil Gas and Mineral Lease dated 01/31/2014, by and between BETTY AND ROBERT H LYNN, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2013 Pg 4848, of the official public records of Conecuh County, Alabama (1ESC01-L331)

244. Oil Gas and Mineral Lease dated 09/30/2013, by and between CARLOS N. PADGETT, as Lessor, and Gulf Coast Mineral, LLC, as Lessee, recorded on Bk 2013 Pg 4686, of the official public records of Conecuh County, Alabama (1ESC01-L334)

245. Oil Gas and Mineral Lease dated 02/14/2011, by and between Davis Stephens, as Lessor, and Gulf Coast Mineral, LLC, as Lessee, recorded on Bk 2011 Pg 2198; Extended in Book 2013 Page 1566, of the official public records of Conecuh County, Alabama (1ESC01-L338)

246. Oil Gas and Mineral Lease dated 02/14/2011, by and between Regnald Marshall, as Lessor, and Gulf Coast Mineral, LLC, as Lessee, recorded on Bk 2011 Pg 2182 Extention Recorded Book 2013 Page 6174, of the official public records of Conecuh County, Alabama (1ESC01-L339)

247. Oil Gas and Mineral Lease dated 02/14/2011, by and between Roy Marshall, as Lessor, and Gulf Coast Mineral, LLC, as Lessee, recorded on Bk 2011 Pg 2180 Extention Recorded Book 2013 Page 6178, of the official public records of Conecuh County, Alabama (1ESC01-L340)

248. Oil Gas and Mineral Lease dated 02/14/2011, by and between Eric Marshall, as Lessor, and Gulf Coast Mineral, LLC, as Lessee, recorded on Bk 2011 Pg 2728 Extention Recorded Book 2013 Page 6170, of the official public records of Conecuh County, Alabama (1ESC01-L341)

249. Oil Gas and Mineral Lease dated 02/10/2015, by and between Micheal and Trudi Betts, as Lessor, and Gulf Coast Mineral, LLC, as Lessee, recorded on Bk 2015 Page 28, of the official public records of Conecuh County, Alabama (1ESC01-L342)

250. Oil Gas and Mineral Lease dated 03/02/2011, by and between FLETCHER DEWAYNE BRADLEY, as Lessor, and Gulf Coast Mineral, LLC, as Lessee, recorded on Bk 2011 Pg 2174 Extention Recorded Book 2013 Page 6188, of the official public records of Conecuh County, Alabama (1ESC01-L343)

251. Oil Gas and Mineral Lease dated 02/14/2014, by and between Melvin Richardson, Jr, as Lessor, and Gulf Coast Mineral, LLC, as Lessee, recorded on Bk 2013 Page 6033, of the official public records of Conecuh County, Alabama (1ESC01-L344)

2016    1246
Recorded in the Above
Deed Book & Page
04-27-2016 10:27:40 AM 0 0 5 5 7

252. Oil Gas and Mineral Lease dated 02/25/2011, by and between Sheryl Hamilton, as Lessor, and Gulf Coast Mineral, LLC, as Lessee, recorded on Bk 2011 Pg 2166 Extention Recorded Book 2013 Page 6168, of the official public records of Conecuh County, Alabama (1ESC01-L345)

253. Oil Gas and Mineral Lease dated 02/10/2011, by and between Gwendoyn Dunn, as Lessor, and Gulf Coast Mineral, LLC, as Lessee, recorded on Bk 2011 Pg 2178 Extention Recorded Book 2013 Page 6180, of the official public records of Conecuh County, Alabama (1ESC01-L346)

254. Oil Gas and Mineral Lease dated 02/10/2011, by and between Mollie Cunningham, as Lessor, and Gulf Coast Mineral, LLC, as Lessee, recorded on Bk 2011 Pg 2172 Extention Recorded Book 2013 Page 6184, of the official public records of Conecuh County, Alabama (1ESC01-L347)

255. Oil Gas and Mineral Lease dated 03/02/2011, by and between Mollie Cunningham, as Lessor, and Gulf Coast Mineral, LLC, as Lessee, recorded on Bk 2011 Pg 2176 Extention Recorded Book 2013 Page 6182, of the official public records of Conecuh County, Alabama (1ESC01-L348)

256. Oil Gas and Mineral Lease dated 02/25/2011, by and between Fletcher D. Bradley, as Lessor, and Gulf Coast Mineral, LLC, as Lessee, recorded on Bk 2011 Pg 2170 Extention Recorded Book 2013 Page 6186, of the official public records of Conecuh County, Alabama (1ESC01-L349)

257. Oil Gas and Mineral Lease dated 02/14/2014, by and between Elmira Bradley, as Lessor, and Gulf Coast Mineral, LLC, as Lessee, recorded on Bk 2013 Page 6035, of the official public records of Conecuh County, Alabama (1ESC01-L350)

258. Oil Gas and Mineral Lease dated 03/19/2011, by and between SUE PROTOPSLATIS, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 2622 Rec.Dt. 5/24/2011, of the official public records of Conecuh County, Alabama (1ESC01-L351)

259. Oil Gas and Mineral Lease dated 03/19/2011, by and between PIJI CHRISTINA PROTOPSALTIS, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 2619 Rec.Dt. 5/24/2011, of the official public records of Conecuh County, Alabama (1ESC01-L352)

260. Oil Gas and Mineral Lease dated 02/15/2014, by and between Mamie Bradley Estate by, Joseph Bradley, as Lessor, and Gulf Coast Mineral, LLC, as Lessee, recorded on Bk 2013 Pg 6030, of the official public records of Conecuh County, Alabama (1ESC01-L353)

261. Oil Gas and Mineral Lease dated 04/15/2011, by and between LINDA W JOHNSON, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 2461 Rec.Dt. 5/19/2011, of the official public records of Conecuh County, Alabama (1ESC01-L354)

262. Oil Gas and Mineral Lease dated 04/16/2011, by and between Alberta W. Garrett, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 2463 Rec.Dt. 5/19/2011, of the official public records of Conecuh County, Alabama (1ESC01-L355)

263. Oil Gas and Mineral Lease dated 04/15/2011, by and between LILLIE CULLIVER, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 2551 Rec.Dt. 5/23/2011, of the official public records of Conecuh County, Alabama (1ESC01-L356)

264. Oil Gas and Mineral Lease dated 04/16/2011, by and between LEE JONES, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 2549 Rec.Dt. 5/23/2011, of the official public records of Conecuh County, Alabama (1ESC01-L357)

265. Oil Gas and Mineral Lease dated 04/16/2011, by and between CLARA JONES, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 2474 Rec.Dt. 5/19/2011, of the official public records of Conecuh County, Alabama (1ESC01-L358)

266. Oil Gas and Mineral Lease dated 04/21/2011, by and between SHARON JOHNSON, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 2472 Rec.Dt. 5/19/2011, of the official public records of Conecuh County, Alabama (1ESC01-L359)

267. Oil Gas and Mineral Lease dated 04/26/2011, by and between WILLIE M JONES, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 2467 Rec.Dt. 5/19/2011, of the official public records of Conecuh County, Alabama (1ESC01-L360)

268. Oil Gas and Mineral Lease dated 05/18/2011, by and between SARAH A LEYDEN, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 139-1 Rec.Dt. 5/23/2011, of the official public records of Escambia County, Alabama (1ESC01-L361)

269. Oil Gas and Mineral Lease dated 05/18/2011, by and between Michael P. Leyden, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 516 Pg 136-1 Rec.Dt. 5/23/2011, of the official public records of Escambia County, Alabama (1ESC01-L362)

270. Oil Gas and Mineral Lease dated 05/11/2011, by and between Sarah M. Lanier, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 2611 Rec.Dt. 5/24/2011, of the official public records of Conecuh County, Alabama (1ESC01-L363)

271. Oil Gas and Mineral Lease dated 05/11/2014, by and between Sarah Lanier, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2014 Pg 1569, of the official public records of Conecuh County, Alabama (1ESC01-L364)

272. Oil Gas and Mineral Lease dated 05/10/2011, by and between Sarah M Lanier for Marie A Lanier, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 2613 Rec.Dt. 5/24/2011, of the official public records of Conecuh County, Alabama (1ESC01-L365)

273. Oil Gas and Mineral Lease dated 05/11/2011, by and between Sarah Lanier for GLenn Lanier, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 2617 Rec.Dt. 5/24/2011, of the official public records of Conecuh County, Alabama (1ESC01-L366)

274. Oil Gas and Mineral Lease dated 05/10/2011, by and between Sarah Lanier for Sarah L Lanier, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 2615 Rec.Dt. 5/24/2011, of the official public records of Conecuh County, Alabama (1ESC01-L367)

275. Oil Gas and Mineral Lease dated 05/25/2011, by and between ROCHELLE WALKER JR, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3050 Rec.Dt. 6/13/2011, of the official public records of Conecuh County, Alabama (1ESC01-L368)

276. Oil Gas and Mineral Lease dated 04/11/2011, by and between MARGARET JACKSON, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 1694 Rec.Dt. 4/14/2011, of the official public records of Conecuh County, Alabama (1ESC01-L369)

277. Oil Gas and Mineral Lease dated 05/03/2011, by and between STEPHON ROBINSON, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3056 Rec.Dt. 6/13/2011, of the official public records of Conecuh County, Alabama (1ESC01-L370)

Recorded in the Above
Deed Book & Page
04-27-2016 10:27:40 AM

278. Oil Gas and Mineral Lease dated 05/12/2011, by and between TISDALE NATURAL RESOURCES, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3061 Rec.Dt. 6/13/2011, of the official public records of Conecuh County, Alabama (1ESC01-L371)

00558

279. Oil Gas and Mineral Lease dated 03/20/2011, by and between Stephen Jeter, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 517 Pg 102-1 Rec.Dt. 6/10/2011, of the official public records of Escambia County, Alabama (1ESC01-L372)

280. Oil Gas and Mineral Lease dated 03/20/2011, by and between Sally Jeter Hammond, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 517 Pg 105-1 Rec.Dt. 6/10/2011, of the official public records of Escambia County, Alabama (1ESC01-L373)

281. Oil Gas and Mineral Lease dated 04/26/2011, by and between MARY W POWELL, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3346 Rec.Dt. 6/29/2011, of the official public records of Conecuh County, Alabama (1ESC01-L374)

282. Oil Gas and Mineral Lease dated 05/15/2011, by and between Antonio Jones, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3348 Rec.Dt. 6/29/2011, of the official public records of Conecuh County, Alabama (1ESC01-L375)

283. Oil Gas and Mineral Lease dated 05/09/2015, by and between Cedar Creek Land and Timber Inc., as Lessor, and Sklarco, LLC, as Lessee, recorded on 06/29/2015 Book 2015 Page 3266, of the official public records of Conecuh County, Alabama (1ESC01-L377)

284. Oil Gas and Mineral Lease dated 05/15/2011, by and between CLAYTON JONES, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2001 Pg 3052 Rec.Dt. 6/13/2011, of the official public records of Conecuh County, Alabama (1ESC01-L378)

285. Oil Gas and Mineral Lease dated 03/20/2014, by and between SARAH M LANIER FBO SARAH L LANIER, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2014 Pg 1574, of the official public records of Conecuh County, Alabama (1ESC01-L379)

286. Oil Gas and Mineral Lease dated 03/20/2014, by and between SARAH M LANIER FBO MARIE ANN LANIER, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2014 Pg 1577, of the official public records of Conecuh County, Alabama (1ESC01-L380)

287. Oil Gas and Mineral Lease dated 01/04/2014, by and between SARAH M LANIER FBO GLENN E LANIER II, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2014 Pg 1580, of the official public records of Conecuh County, Alabama (1ESC01-L381)

288. Oil Gas and Mineral Lease dated 03/01/2011, by and between Black Stone Natrual Resources I, L.P., as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 2112 Rec.Dt. 5/10/2011, of the official public records of Conecuh County, Alabama (1ESC01-L382)

289. Oil Gas and Mineral Lease dated 05/25/2011, by and between ROCHELLE WALKER Sr., as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3342 Rec.Dt. 6/29/2011, of the official public records of Conecuh County, Alabama (1ESC01-L383)

290. Oil Gas and Mineral Lease dated 05/28/2011, by and between Qunita Baldwin, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3344 Rec.Dt. 6/29/2011, of the official public records of Conecuh County, Alabama (1ESC01-L384)

291. Oil Gas and Mineral Lease dated 05/16/2011, by and between Cleava Mae Jones, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3332 Rec.Dt. 6/29/2011, of the official public records of Conecuh County, Alabama (1ESC01-L385)

292. Oil Gas and Mineral Lease dated 05/17/2011, by and between Gwenda W. Hawthorne, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3334 Rec.Dt. 6/29/2011, of the official public records of Conecuh County, Alabama (1ESC01-L386)

293. Oil Gas and Mineral Lease dated 05/15/2011, by and between Trichelle Davis Jones, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3338 Rec.Dt. 6/29/2011, of the official public records of Conecuh County, Alabama (1ESC01-L387)

294. Oil Gas and Mineral Lease dated 05/30/2011, by and between Gregory Moye, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3336 Rec.Dt. 6/29/2011, of the official public records of Conecuh County, Alabama (1ESC01-L388)

295. Oil Gas and Mineral Lease dated 05/30/2011, by and between Edgar E. Moye, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3340 Rec.Dt. 6/29/2011, of the official public records of Conecuh County, Alabama (1ESC01-L389)

296. Oil Gas and Mineral Lease dated 06/17/2011, by and between Walter Leon Jones, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4022 Rec.Dt. 8/4/2011, of the official public records of Conecuh County, Alabama (1ESC01-L390)

297. Oil Gas and Mineral Lease dated 06/23/2011, by and between Frank Stamps, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 517 Pg 312-3 Rec.Dt. 6/15/2011, of the official public records of Escambia County, Alabama (1ESC01-L391)

298. Oil Gas and Mineral Lease dated 05/18/2011, by and between Betty Moye Buie, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3403 Rec.Dt. 7/7/2011, of the official public records of Conecuh County, Alabama (1ESC01-L393)

299. Oil Gas and Mineral Lease dated 05/25/2011, by and between LaWanda Cooper, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3407 Rec.Dt. 7/7/2011, of the official public records of Conecuh County, Alabama (1ESC01-L394)

300. Oil Gas and Mineral Lease dated 05/18/2011, by and between Calvin Moye, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3405 Rec.Dt. 7/7/2011, of the official public records of Conecuh County, Alabama (1ESC01-L395)

301. Oil Gas and Mineral Lease dated 05/18/2011, by and between WIlliam Moye, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3409 Rec.Dt. 7/7/2011, of the official public records of Conecuh County, Alabama (1ESC01-L397)

302. Oil Gas and Mineral Lease dated 05/18/2011, by and between Minnie Lee Moye Pierce, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3411 Rec.Dt. 7/7/2011, of the official public records of Conecuh County, Alabama (1ESC01-L398)

303. Oil Gas and Mineral Lease dated 05/18/2011, by and between Helen Sims, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3413, of the official public records of Conecuh County, Alabama (1ESC01-L399)

304. Oil Gas and Mineral Lease dated 05/17/2011, by and between Lumon Williams Jr., as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3401 Rec.Dt. 7/7/2011, of the official public records of Conecuh County, Alabama (1ESC01-L401)

305. Oil Gas and Mineral Lease dated 05/17/2011, by and between Calvin Williams, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3399 Rec.Dt. 7/7/2011, of the official public records of Conecuh County, Alabama (1ESC01-L402)

306. Oil Gas and Mineral Lease dated 05/17/2011, by and between L.W. Williams, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3397 Rec.Dt. 7/7/2011, of the official public records of Conecuh County, Alabama (1ESC01-L403)

2016  1252
Recorded in the Above
Deed  Book & Page
04-27-2016 10:27:40 AM

0 0 5 5 9

307. Oil Gas and Mineral Lease dated 05/05/2014, by and between Tempie A. Stancil, as Lessor, and Gulf Coast Mineral, LLC, as Lessee, recorded on Bk 2014 Pg 1460, of the official public records of Conecuh County, Alabama (1ESC01-L405)

308. Oil Gas and Mineral Lease dated 05/23/2011, by and between Ulyssess McCreary, as Lessor, and Gulf Coast Mineral, LLC, as Lessee, recorded on Bk 2011 Pg 3267 Extended  Bk 2014 Pg 1562, of the official public records of Conecuh County, Alabama (1ESC01-L407)

309. Oil Gas and Mineral Lease dated 05/23/2011, by and between Charles McCreary, as Lessor, and Gulf Coast Mineral, LLC, as Lessee, recorded on Bk 2011 Pg 3153 Extended  Bk 2014 Pg 1557, of the official public records of Conecuh County, Alabama (1ESC01-L408)

310. Oil Gas and Mineral Lease dated 05/23/2011, by and between Mary Lee Bonham, as Lessor, and Gulf Coast Mineral, LLC, as Lessee, recorded on Bk 2011 Pg 3150 Extended  Bk 2014 Pg 1559, of the official public records of Conecuh County, Alabama (1ESC01-L409)

311. Oil Gas and Mineral Lease dated 05/23/2011, by and between James MCCreary, as Lessor, and Gulf Coast Mineral, LLC, as Lessee, recorded on Bk 2011 Pg 3269 Extended  Bk 2014 Pg 1560, of the official public records of Conecuh County, Alabama (1ESC01-L410)

312. Oil Gas and Mineral Lease dated 05/23/2011, by and between Gladys Trawick, as Lessor, and Gulf Coast Mineral, LLC, as Lessee, recorded on Bk 2011 Pg 3280 Extended  Bk 2014 Pg 1558, of the official public records of Conecuh County, Alabama (1ESC01-L411)

313. Oil Gas and Mineral Lease dated 05/23/2011, by and between Cather Lee Sturdivant, as Lessor, and Gulf Coast Mineral, LLC, as Lessee, recorded on Bk 2011 Pg 3278 Extended  Bk 2014 Pg 1556, of the official public records of Conecuh County, Alabama (1ESC01-L412)

314. Oil Gas and Mineral Lease dated 05/18/2011, by and between Levon Moye, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3649 Rec.Dt. 7/25/2011, of the official public records of Conecuh County, Alabama (1ESC01-L416)

315. Oil Gas and Mineral Lease dated 05/28/2011, by and between Shirley Williams, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4028 Rec.Dt. 8/4/2011, of the official public records of Conecuh County, Alabama (1ESC01-L418)

316. Oil Gas and Mineral Lease dated 06/04/2011, by and between John Ray Burks, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4026 Rec.Dt. 8/4/2011, of the official public records of Conecuh County, Alabama (1ESC01-L419)

317. Oil Gas and Mineral Lease dated 05/17/2011, by and between L.B. Williams, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4024 Rec.Dt. 8/4/2011, of the official public records of Conecuh County, Alabama (1ESC01-L420)

318. Oil Gas and Mineral Lease dated 07/14/2011, by and between Beatrice Autrey, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3565 Rec.Dt. 7/15/2011, of the official public records of Conecuh County, Alabama (1ESC01-L424)

319. Oil Gas and Mineral Lease dated 07/14/2011, by and between Inez Harrod, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3563 Rec.Dt. 7/15/2011, of the official public records of Conecuh County, Alabama (1ESC01-L425)

320. Oil Gas and Mineral Lease dated 07/12/2011, by and between Curtis Samuel, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3567 Rec.Dt. 7/15/2011, of the official public records of Conecuh County, Alabama (1ESC01-L426)

321. Oil Gas and Mineral Lease dated 07/12/2011, by and between Percy L. & Gwendalyn Jones, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3557 Rec.Dt. 7/15/2011, of the official public records of Conecuh County, Alabama (1ESC01-L427)

322. Oil Gas and Mineral Lease dated 05/18/2011, by and between Henry James Moye, Jr., as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4018 Rec.Dt. 8/4/2011, of the official public records of Conecuh County, Alabama (1ESC01-L428)

323. Oil Gas and Mineral Lease dated 05/22/2011, by and between Vera Williams Mims, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4020 Rec.Dt. 8/4/2011, of the official public records of Conecuh County, Alabama (1ESC01-L429)

324. Oil Gas and Mineral Lease dated 06/04/2011, by and between Barbara Burks, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4103 Rec.Dt. 8/15/2011, of the official public records of Conecuh County, Alabama (1ESC01-L430)

325. Oil Gas and Mineral Lease dated 07/14/2011, by and between Charlie Mae Howard, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4067 Rec.Dt. 8/9/2011, of the official public records of Conecuh County, Alabama (1ESC01-L431)

326. Oil Gas and Mineral Lease dated 07/14/2011, by and between Verdell Ammons, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3966 Rec.Dt. 8/3/2011, of the official public records of Conecuh County, Alabama (1ESC01-L432)

327. Oil Gas and Mineral Lease dated 07/14/2011, by and between Louvenia Leaston, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4074 Rec.Dt. 8/10/2011, of the official public records of Conecuh County, Alabama (1ESC01-L433)

328. Oil Gas and Mineral Lease dated 07/14/2011, by and between Andrew Samuel, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3652 Rec.Dt. 7/26/2011, of the official public records of Conecuh County, Alabama (1ESC01-L434)

329. Oil Gas and Mineral Lease dated 08/10/2011, by and between Lesa E. Ralls Johnson, Remainderman, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4113, of the official public records of Conecuh County, Alabama (1ESC01-L435)

330. Oil Gas and Mineral Lease dated 08/09/2011, by and between Linda R Wiggins, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4273, of the official public records of Conecuh County, Alabama (1ESC01-L436)

331. Oil Gas and Mineral Lease dated 08/09/2011, by and between Jessie Ree Jackson, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4269 Rec.Dt. 8/26/2011, of the official public records of Conecuh County, Alabama (1ESC01-L437)

332. Oil Gas and Mineral Lease dated 08/09/2011, by and between Charlene R Lett, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4271 Rec.Dt. 8/26/2011, of the official public records of Conecuh County, Alabama (1ESC01-L438)

333. Oil Gas and Mineral Lease dated 08/04/2011, by and between Ronisha Chana Crosby, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4519 Rec.Dt. 9/12/2011, of the official public records of Conecuh County, Alabama (1ESC01-L439)

334. Oil Gas and Mineral Lease dated 08/04/2011, by and between Sheila Shannon for Jaron Crosby, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 5538 Rec.Dt. 11/28/2011, of the official public records of Conecuh County, Alabama (1ESC01-L440)

335. Oil Gas and Mineral Lease dated 08/22/2011, by and between Zola Bryant, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4578 Rec.Dt. 9/14/2011, of the official public records of Conecuh County, Alabama (1ESC01-L441)

2016-1253
Recorded in the Above
Deed Book & Page
04-27-2016 10:27:40 AM

00560

336. Oil Gas and Mineral Lease dated 08/22/2011, by and between Claudine Holmes, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4582 Rec.Dt. 9/14/2011, of the official public records of Conecuh County, Alabama (1ESC01-L442)

337. Oil Gas and Mineral Lease dated 08/22/2011, by and between Dorothy Bradley, as Lessor, and UNKNOWN / OTHERS, as Lessee, recorded on Bk 2011 Pg 4580 Rec.Dt. 9/14/2011, of the official public records of Conecuh County, Alabama (1ESC01-L443)

338. Oil Gas and Mineral Lease dated 08/22/2011, by and between Gary Ann Perryman, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4584 Rec.Dt. 9/14/2011, of the official public records of Conecuh County, Alabama (1ESC01-L444)

339. Oil Gas and Mineral Lease dated 08/22/2011, by and between Geraldine Riley, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4576 Rec.Dt. 9/14/2011, of the official public records of Conecuh County, Alabama (1ESC01-L446)

340. Oil Gas and Mineral Lease dated 08/09/2011, by and between Rebecca R. Snell, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4570 Rec.Dt. 9/14/2011, of the official public records of Conecuh County, Alabama (1ESC01-L447)

341. Oil Gas and Mineral Lease dated 08/09/2011, by and between James Walker Jr, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4572 Rec.Dt. 9/14/2011, of the official public records of Conecuh County, Alabama (1ESC01-L448)

342. Oil Gas and Mineral Lease dated 08/22/2011, by and between Tyrone Walker, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4574 Rec.Dt. 9/14/2011, of the official public records of Conecuh County, Alabama (1ESC01-L449)

343. Oil Gas and Mineral Lease dated 08/22/2011, by and between Bernice Lee, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4564 Rec.Dt. 9/14/2011, of the official public records of Conecuh County, Alabama (1ESC01-L450)

344. Oil Gas and Mineral Lease dated 08/22/2011, by and between Loletha W. Mc Cloud, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4566 Rec.Dt. 9/14/2011, of the official public records of Conecuh County, Alabama (1ESC01-L451)

345. Oil Gas and Mineral Lease dated 08/22/2011, by and between Clauzell Samuel, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4568 Rec.Dt. 9/14/2011, of the official public records of Conecuh County, Alabama (1ESC01-L452)

346. Oil Gas and Mineral Lease dated 08/22/2011, by and between Louise Ware, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4766 Rec.Dt. 10/4/2011, of the official public records of Conecuh County, Alabama (1ESC01-L453)

347. Oil Gas and Mineral Lease dated 07/14/2011, by and between Darrell Walker, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4562 Rec.Dt. 9/14/2011, of the official public records of Conecuh County, Alabama (1ESC01-L454)

348. Oil Gas and Mineral Lease dated 07/14/2011, by and between James L Walker SR, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4560 Rec.Dt. 9/14/2011, of the official public records of Conecuh County, Alabama (1ESC01-L455)

349. Oil Gas and Mineral Lease dated 07/14/2011, by and between Tracey S. Reynolds, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4558 Rec.Dt. 9/14/2011, of the official public records of Conecuh County, Alabama (1ESC01-L456)

350. Oil Gas and Mineral Lease dated 07/01/2011, by and between Andrew L Franklin, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4554 Rec.Dt. 9/14/2011, of the official public records of Conecuh County, Alabama (1ESC01-L457)

351. Oil Gas and Mineral Lease dated 08/22/2011, by and between Mattie Charley, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4556 Rec.Dt. 9/14/2011, of the official public records of Conecuh County, Alabama (1ESC01-L458)

352. Oil Gas and Mineral Lease dated 08/22/2011, by and between Gerald W. Samuel, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 5252, of the official public records of Conecuh County, Alabama (1ESC01-L461)

353. Oil Gas and Mineral Lease dated 10/01/2011, by and between John S. Cook, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4774 Rec.Dt. 10/4/2011, of the official public records of Conecuh County, Alabama (1ESC01-L462)

354. Oil Gas and Mineral Lease dated 08/22/2011, by and between Ola Taliaferro, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 5254 Rec.Dt. 10/29/2011, of the official public records of Conecuh County, Alabama (1ESC01-L463)

355. Oil Gas and Mineral Lease dated 09/06/2011, by and between Netta V Wiley, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4764 Rec.Dt. 10/4/2011, of the official public records of Conecuh County, Alabama (1ESC01-L464)

356. Oil Gas and Mineral Lease dated 08/22/2011, by and between Jeffrey R Samuel, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4752 Rec.Dt. 10/4/2011, of the official public records of Conecuh County, Alabama (1ESC01-L465)

357. Oil Gas and Mineral Lease dated 08/22/2011, by and between Jessie Samuel, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4760 Rec.Dt. 10/4/2011, of the official public records of Conecuh County, Alabama (1ESC01-L466)

358. Oil Gas and Mineral Lease dated 08/09/2011, by and between John Rudolph Jr, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4755 Rec.Dt. 10/4/2011, of the official public records of Conecuh County, Alabama (1ESC01-L467)

359. Oil Gas and Mineral Lease dated 09/23/2011, by and between Riley N. Kelly, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4758 Rec.Dt. 10/4/2011, of the official public records of Conecuh County, Alabama (1ESC01-L468)

360. Oil Gas and Mineral Lease dated 08/04/2011, by and between Danny Crosby, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4762 Rec.Dt. 10/4/2011, of the official public records of Conecuh County, Alabama (1ESC01-L469)

361. Oil Gas and Mineral Lease dated 09/19/2011, by and between Amaryllis E. Davis, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4756 Rec.Dt. 10/4/2011, of the official public records of Conecuh County, Alabama (1ESC01-L470)

362. Oil Gas and Mineral Lease dated 09/28/2011, by and between Gregory O. Carter, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 5196 Rec.Dt. 10/19/2011, of the official public records of Conecuh County, Alabama (1ESC01-L471)

363. Oil Gas and Mineral Lease dated 10/01/2011, by and between Anne T. Cook, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4772 Rec.Dt. 10/4/2011, of the official public records of Conecuh County, Alabama (1ESC01-L472)

364. Oil Gas and Mineral Lease dated 08/22/2011, by and between Gretchen W. Hyler, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4768 Rec.Dt. 10/4/2011, of the official public records of Conecuh County, Alabama (1ESC01-L473)

365. Oil Gas and Mineral Lease dated 09/06/2011, by and between Barbara Dukes, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4770 Rec.Dt. 10/4/2011, of the official public records of Conecuh County, Alabama (1ESC01-L474)

366. Oil Gas and Mineral Lease dated 09/28/2011, by and between Essie Mae Stinson, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 5200 Rec.Dt. 10/19/2011, of the official public records of Conecuh County, Alabama (1ESC01-L475)

Recorded in the Above
Deed Book & Page
04-27-2016 10:27:40 AM
00561

367. Oil Gas and Mineral Lease dated 09/27/2011, by and between Harold Hamiter, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 5198 Rec.Dt. 10/19/2011, of the official public records of Conecuh County, Alabama (1ESC01-L476)

368. Oil Gas and Mineral Lease dated 10/05/2011, by and between Susie Kirksey, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 5192 Rec.Dt. 10/19/2011, of the official public records of Conecuh County, Alabama (1ESC01-L477)

369. Oil Gas and Mineral Lease dated 09/28/2011, by and between Edward Smith, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 5194 Rec.Dt. 10/19/2011, of the official public records of Conecuh County, Alabama (1ESC01-L478)

370. Oil Gas and Mineral Lease dated 06/03/2014, by and between Dale Blair and Martha Blair, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 573 Page 888, of the official public records of Escambia County, Alabama (1ESC01-L479)

371. Oil Gas and Mineral Lease dated 06/03/2014, by and between Margaret Long, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 573 Page 498, of the official public records of Escambia County, Alabama (1ESC01-L480)

372. Oil Gas and Mineral Lease dated 06/03/2014, by and between Ann Edwards, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 573 Page 490, of the official public records of Escambia County, Alabama (1ESC01-L481)

373. Oil Gas and Mineral Lease dated 06/03/2014, by and between Howard Blair Jr, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 593 Page 493, of the official public records of Escambia County, Alabama (1ESC01-L482)

374. Oil Gas and Mineral Lease dated 02/25/2011, by and between Edward Carthright Jr, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4679 Rec.Dt. 9/22/2011, of the official public records of Conecuh County, Alabama (1ESC01-L484)

375. Oil Gas and Mineral Lease dated 08/15/2014, by and between Augusta McLendon, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2014 Pg 2293, of the official public records of Conecuh County, Alabama (1ESC01-L485)

376. Oil Gas and Mineral Lease dated 06/20/2014, by and between Emma Stancil, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2014 Pg 1871, of the official public records of Conecuh County, Alabama (1ESC01-L486)

377. Oil Gas and Mineral Lease dated 09/28/2011, by and between Tom Malloy, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 5206 Rec.Dt. 10/19/2011, of the official public records of Conecuh County, Alabama (1ESC01-L487)

378. Oil Gas and Mineral Lease dated 10/05/2011, by and between Ernestine Raines, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 5204 Rec.Dt. 10/19/2011, of the official public records of Conecuh County, Alabama (1ESC01-L488)

379. Oil Gas and Mineral Lease dated 09/28/2011, by and between Evelyn Lanier, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 5208 Rec.Dt. 10/19/2011, of the official public records of Conecuh County, Alabama (1ESC01-L489)

380. Oil Gas and Mineral Lease dated 09/28/2011, by and between Kathleen H Adams, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 5202 Rec.Dt. 10/19/2011, of the official public records of Conecuh County, Alabama (1ESC01-L490)

381. Oil Gas and Mineral Lease dated 06/03/2014, by and between Marita B Snyder, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 574 Pg 421, of the official public records of Escambia County, Alabama (1ESC01-L491)

382. Oil Gas and Mineral Lease dated 06/03/2014, by and between John Blair, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 573 Page 891, of the official public records of Escambia County, Alabama (1ESC01-L492)

383. Oil Gas and Mineral Lease dated 06/03/2014, by and between Julia Blair, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 573 Page 897, of the official public records of Escambia County, Alabama (1ESC01-L493)

384. Oil Gas and Mineral Lease dated 06/03/2014, by and between Susan Blair, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 573 Page 882, of the official public records of Escambia County, Alabama (1ESC01-L494)

385. Oil Gas and Mineral Lease dated 06/03/2014, by and between Elizabeth Blair Johansen, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 573 Page 894, of the official public records of Escambia County, Alabama (1ESC01-L495)

386. Oil Gas and Mineral Lease dated 09/28/2011, by and between Kathy O. Sanders, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 5260 Rec.Dt. 10/28/2011, of the official public records of Conecuh County, Alabama (1ESC01-L496)

387. Oil Gas and Mineral Lease dated 07/14/2011, by and between Sarah Samuel, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 5258 Rec.Dt. 10/29/2011, of the official public records of Conecuh County, Alabama (1ESC01-L497)

388. Oil Gas and Mineral Lease dated 09/23/2011, by and between Kelly  C. Johnson, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 5408 Rec.Dt. 11/10/2011, of the official public records of Conecuh County, Alabama (1ESC01-L498)

389. Oil Gas and Mineral Lease dated 08/10/2011, by and between Hannah H. Johnson, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 5732 Rec.Dt. 12/15/2011, of the official public records of Conecuh County, Alabama (1ESC01-L499)

390. Oil Gas and Mineral Lease dated 04/01/2011, by and between Nan E. Gafford, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 4079 Extended in Bk 2014 Pg 2583, of the official public records of Conecuh County, Alabama (1ESC01-L500)

391. Oil Gas and Mineral Lease dated 03/21/2011, by and between Sharon K Harper, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3667, of the official public records of Conecuh County, Alabama (1ESC01-L501)

392. Oil Gas and Mineral Lease dated 03/30/2011, by and between William F. Anderson, et al, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3811 Rec.Dt. 7/29/2011, of the official public records of Conecuh County, Alabama (1ESC01-L502)

393. Oil Gas and Mineral Lease dated 06/15/2011, by and between Stanley Schwenden, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3671 Rec.Dt. 7/27/2011, of the official public records of Conecuh County, Alabama (1ESC01-L503)

394. Oil Gas and Mineral Lease dated 06/15/2011, by and between Eleanor Perry, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3674 Rec.Dt. 7/27/2011, of the official public records of Conecuh County, Alabama (1ESC01-L504)

395. Oil Gas and Mineral Lease dated 07/15/2011, by and between Marion Harlan, et al, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 3821, of the official public records of Conecuh County, Alabama (1ESC01-L505)

2016   1255
Recorded in the Above
Deed Book & Page
04-27-2016 10:27:40 AM
00562

396. Oil Gas and Mineral Lease dated 09/28/2011, by and between Susan V. Owens Harris, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 5262 Rec.Dt. 10/28/2011, of the official public records of Conecuh County, Alabama (1ESC01-L506)

397. Oil Gas and Mineral Lease dated 08/09/2011, by and between Douglas Rudolph, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 5256 Rec.Dt. 10/28/2011, of the official public records of Conecuh County, Alabama (1ESC01-L508)

398. Oil Gas and Mineral Lease dated 09/28/2011, by and between Charlotte Malloy, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 5264 Rec.Dt. 10/28/2011, of the official public records of Conecuh County, Alabama (1ESC01-L509)

399. Oil Gas and Mineral Lease dated 08/04/2011, by and between Shelia Sahnnon for Ronika Crosby, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 5540 Rec.Dt. 11/28/2011, of the official public records of Conecuh County, Alabama (1ESC01-L511)

400. Oil Gas and Mineral Lease dated 09/06/2011, by and between Gloria Barnes, as Lessor, and UNKNOWN / OTHERS, as Lessee, recorded on Bk 2011 Pg 5736 Rec.Dt. 12/15/2011, of the official public records of Conecuh County, Alabama (1ESC01-L512)

401. Oil Gas and Mineral Lease dated 11/23/2014, by and between John and Rosemary Harper, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2014 Page 5841, of the official public records of Conecuh County, Alabama (1ESC01-L514)

402. Oil Gas and Mineral Lease dated 08/15/2011, by and between Rose Marie Alexander, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 392 Rec.Dt. 2/8/2012, of the official public records of Conecuh County, Alabama (1ESC01-L515)

403. Oil Gas and Mineral Lease dated 08/15/2011, by and between Carnell Faulk, as Lessor, and UNKNOWN / OTHERS, as Lessee, recorded on Bk 2011 Pg 5822, of the official public records of Conecuh County, Alabama (1ESC01-L516)

404. Oil Gas and Mineral Lease dated 02/01/2012, by and between Harriett Staryhorn, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 1570 Rec.Dt. 3/21/2012, of the official public records of Conecuh County, Alabama (1ESC01-L518)

405. Oil Gas and Mineral Lease dated 12/14/2011, by and between Thomas Johnston, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 330 Rec.Dt. 1/30/2012, of the official public records of Conecuh County, Alabama (1ESC01-L519)

406. Oil Gas and Mineral Lease dated 12/14/2011, by and between Donald Johnston, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 378 Rec.Dt. 2/6/2012, of the official public records of Conecuh County, Alabama (1ESC01-L520)

407. Oil Gas and Mineral Lease dated 02/28/2012, by and between Eris D. Baines, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 785 Rec.Dt. 3/8/2012, of the official public records of Conecuh County, Alabama (1ESC01-L521)

408. Oil Gas and Mineral Lease dated 03/08/2012, by and between Paul L. Jones, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 783 Rec.Dt. 3/8/2012, of the official public records of Conecuh County, Alabama (1ESC01-L522)

409. Oil Gas and Mineral Lease dated 02/28/2012, by and between Elmon Jones, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 781 Rec.Dt. 3/8/2012, of the official public records of Conecuh County, Alabama (1ESC01-L523)

410. Oil Gas and Mineral Lease dated 02/28/2012, by and between Hosea Jones, Jr, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 779 Rec.Dt. 3/8/2012, of the official public records of Conecuh County, Alabama (1ESC01-L524)

411. Oil Gas and Mineral Lease dated 02/29/2012, by and between Mizell Jones, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 777 Rec.Dt. 3/8/2012, of the official public records of Conecuh County, Alabama (1ESC01-L525)

412. Oil Gas and Mineral Lease dated 02/29/2012, by and between Ruben Smith, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 775 Rec.Dt. 3/8/2012, of the official public records of Conecuh County, Alabama (1ESC01-L526)

413. Oil Gas and Mineral Lease dated 02/29/2012, by and between Rhonda J. Gould, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 773 Rec.Dt. 3/8/2012, of the official public records of Conecuh County, Alabama (1ESC01-L527)

414. Oil Gas and Mineral Lease dated 02/29/2012, by and between Sylvester Jones, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 771 Rec.Dt. 3/8/2012, of the official public records of Conecuh County, Alabama (1ESC01-L528)

415. Oil Gas and Mineral Lease dated 02/01/2012, by and between Joyce Jarvis, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 650 Rec.Dt. 2/23/2012, of the official public records of Conecuh County, Alabama (1ESC01-L529)

416. Oil Gas and Mineral Lease dated 02/01/2012, by and between Lenomia Jordan, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 680 Rec.Dt. 2/28/2012, of the official public records of Conecuh County, Alabama (1ESC01-L530)

417. Oil Gas and Mineral Lease dated 02/04/2012, by and between Cynthia Brooks, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 656 Rec.Dt. 2/23/2012, of the official public records of Conecuh County, Alabama (1ESC01-L531)

418. Oil Gas and Mineral Lease dated 02/04/2012, by and between Melissa W. Hoerscher, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 654 Rec.Dt. 2/23/2012, of the official public records of Conecuh County, Alabama (1ESC01-L532)

419. Oil Gas and Mineral Lease dated 02/04/2012, by and between Betty B. Toole, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 652 Rec.Dt. 2/23/2012, of the official public records of Conecuh County, Alabama (1ESC01-L533)

420. Oil Gas and Mineral Lease dated 01/24/2012, by and between Joel Carter, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 658 Rec.Dt. 2/23/2012, of the official public records of Conecuh County, Alabama (1ESC01-L534)

421. Oil Gas and Mineral Lease dated 01/24/2012, by and between Linda Carter Hill, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 678 Rec.Dt. 2/28/2012, of the official public records of Conecuh County, Alabama (1ESC01-L535)

422. Oil Gas and Mineral Lease dated 02/21/2012, by and between Willene Whatley, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 648 Rec.Dt. 2/23/2012, of the official public records of Conecuh County, Alabama (1ESC01-L536)

423. Oil Gas and Mineral Lease dated 02/14/2012, by and between Lisa Lynn Frost, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 676 Rec.Dt. 2/28/2012, of the official public records of Conecuh County, Alabama (1ESC01-L537)

424. Oil Gas and Mineral Lease dated 02/17/2012, by and between Annie Duncan, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 1628 Rec.Dt. 3/26/2012, of the official public records of Conecuh County, Alabama (1ESC01-L539)

425. Oil Gas and Mineral Lease dated 02/20/2012, by and between Willis J. Williams, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 1814 Rec.Dt. 4/3/2012, of the official public records of Conecuh County, Alabama (1ESC01-L540)

2016   1256
Recorded in the Above
Deed Book & Page
04-27-2016 10:27:40 AM
00563

426. Oil Gas and Mineral Lease dated 02/28/2012, by and between Zella Mae Thornton, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 1630 Ammended and Ratified in Book 2012 Page 3087, of the official public records of Conecuh County, Alabama (1ESC01-L541)

427. Oil Gas and Mineral Lease dated 03/06/2012, by and between Arlene P. Hinote, as Lessor, and Sklarco, as Lessee, recorded on Bk 2012 Pg 1947 Rec.Dt. 4/9/2012, of the official public records of Conecuh County, Alabama (1ESC01-L542)

428. Oil Gas and Mineral Lease dated 08/22/2011, by and between Lethia Walden, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 1626 Rec.Dt. 3/26/2012, of the official public records of Conecuh County, Alabama (1ESC01-L543)

429. Oil Gas and Mineral Lease dated 03/03/2012, by and between Patricia Proserr, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 1632 Rec.Dt. 3/26/2012, of the official public records of Conecuh County, Alabama (1ESC01-L544)

430. Oil Gas and Mineral Lease dated 03/26/2012, by and between Ora L. Jackson, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 1637 Rec.Dt. 3/26/2012, of the official public records of Conecuh County, Alabama (1ESC01-L545)

431. Oil Gas and Mineral Lease dated 02/18/2012, by and between Lil Houston, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 1634 Rec.Dt. 3/26/2012, of the official public records of Conecuh County, Alabama (1ESC01-L546)

432. Oil Gas and Mineral Lease dated 08/22/2011, by and between Jacqueline Brown, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 1639 Rec.Dt. 3/26/2012, of the official public records of Conecuh County, Alabama (1ESC01-L547)

433. Oil Gas and Mineral Lease dated 12/01/2011, by and between Lesa and Robert Johnson, for Hannah Johnson, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2011 Pg 5755 Rec.Dt. 12/19/2011, of the official public records of Conecuh County, Alabama (1ESC01-L548)

434. Oil Gas and Mineral Lease dated 02/04/2012, by and between Susan W. Saab, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 1521 Rec.Dt. 3/15/2012, of the official public records of Conecuh County, Alabama (1ESC01-L549)

435. Oil Gas and Mineral Lease dated 02/04/2012, by and between John C. Woodson, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 795 Rec.Dt. 3/9/2012, of the official public records of Conecuh County, Alabama (1ESC01-L550)

436. Oil Gas and Mineral Lease dated 02/28/2012, by and between Barbara M. Lorraine, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 1535 Rec.Dt. 3/15/2012, of the official public records of Conecuh County, Alabama (1ESC01-L551)

437. Oil Gas and Mineral Lease dated 02/28/2012, by and between Robert P. Johnston, et al, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 1531 Rec.Dt. 3/15/2012, of the official public records of Conecuh County, Alabama (1ESC01-L552)

438. Oil Gas and Mineral Lease dated 02/28/2012, by and between David L. Johnston, et al, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 1533 Rec.Dt. 3/15/2012, of the official public records of Conecuh County, Alabama (1ESC01-L553)

439. Oil Gas and Mineral Lease dated 02/28/2012, by and between Ruby Zetterberg, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 793 Rec.Dt. 3/9/2012, of the official public records of Conecuh County, Alabama (1ESC01-L554)

440. Oil Gas and Mineral Lease dated 02/28/2012, by and between Rosa F. Young, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 1624 Rec.Dt. 3/26/2012, of the official public records of Conecuh County, Alabama (1ESC01-L555)

441. Oil Gas and Mineral Lease dated 08/22/2011, by and between Derrell Rushton, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 1622 Rec.Dt. 3/26/2012, of the official public records of Conecuh County, Alabama (1ESC01-L556)

442. Oil Gas and Mineral Lease dated 03/07/2012, by and between Jacqueline Jones, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 1649 Rec.Dt. 3/27/2012, of the official public records of Conecuh County, Alabama (1ESC01-L558)

443. Oil Gas and Mineral Lease dated 03/07/2012, by and between Brian Jones, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 1651 Rec.Dt. 3/27/2012, of the official public records of Conecuh County, Alabama (1ESC01-L559)

444. Oil Gas and Mineral Lease dated 03/07/2012, by and between Shandrell Jackson, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 1643 Rec.Dt. 3/27/2012, of the official public records of Conecuh County, Alabama (1ESC01-L560)

445. Oil Gas and Mineral Lease dated 03/07/2012, by and between Margie Jackson, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 1645 Rec.Dt. 3/27/2012, of the official public records of Conecuh County, Alabama (1ESC01-L561)

446. Oil Gas and Mineral Lease dated 03/07/2012, by and between Brenda Jackson, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 1647 Rec.Dt. 3/27/2012, of the official public records of Conecuh County, Alabama (1ESC01-L562)

447. Oil Gas and Mineral Lease dated 02/28/2012, by and between Allie Johnson, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 1816 Rec.Dt. 4/3/2012, of the official public records of Conecuh County, Alabama (1ESC01-L563)

448. Oil Gas and Mineral Lease dated 03/06/2012, by and between Priscilla Hayes, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 1818 Rec.Dt. 4/3/2012, of the official public records of Conecuh County, Alabama (1ESC01-L564)

449. Oil Gas and Mineral Lease dated 01/24/2012, by and between Patricia A. Williamson, as Lessor, and Sklarco, LLC, as Lessee, recorded on Recorded in Conecuh County, AL Book 2012 Page 5000, of the official public records of Conecuh County, Alabama (1ESC01-L565)

450. Oil Gas and Mineral Lease dated 01/24/2012, by and between Matthew F. Williamson, as Lessor, and Sklarco, LLC, as Lessee, recorded on Recorded in Conecuh County, AL Book 2012 Page 5002, of the official public records of Conecuh County, Alabama (1ESC01-L566)

451. Oil Gas and Mineral Lease dated 02/04/2012, by and between W.E. Woodson, III, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 1641 Rec.Dt. 3/26/2012, of the official public records of Conecuh County, Alabama (1ESC01-L567)

452. Oil Gas and Mineral Lease dated 03/06/2012, by and between Jeffrey Williams, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 2135 Rec.Dt. 4/18/2012, of the official public records of Conecuh County, Alabama (1ESC01-L568)

453. Oil Gas and Mineral Lease dated 02/19/2012, by and between Kimberly J. Williams, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 2137 Rec.Dt. 4/18/2012, of the official public records of Conecuh County, Alabama (1ESC01-L569)

454. Oil Gas and Mineral Lease dated 03/06/2012, by and between Vicky Williams, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 1953 Rec.Dt. 4/10/2012, of the official public records of Conecuh County, Alabama (1ESC01-L570)

455. Oil Gas and Mineral Lease dated 03/03/2012, by and between Cynthia Miller, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 1951 Rec.Dt. 4/10/2012, of the official public records of Conecuh County, Alabama (1ESC01-L571)

2016   1257   00564
Recorded in the Above
Deed  Book & Page
04-27-2016 10:27:40 AM

456. Oil Gas and Mineral Lease dated 04/02/2012, by and between Rocktenn CP, LLC, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 2139 Rec.Dt. 4/18/2012, of the official public records of Conecuh County, Alabama (1ESC01-L572)

457. Oil Gas and Mineral Lease dated 04/10/2012, by and between Willene Whatley, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 2014 Rec.Dt. 4/12/2012, of the official public records of Conecuh County, Alabama (1ESC01-L573)

458. Oil Gas and Mineral Lease dated 03/30/2012, by and between Andrew Putnam, Trustee, General Synod A. R. P. Chu, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 2418 Rec.Dt. 5/2/2012, of the official public records of Conecuh County, Alabama (1ESC01-L574)

459. Oil Gas and Mineral Lease dated 04/07/2012, by and between Roderick O'Neil Jones, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 2420 Rec.Dt. 5/2/2012, of the official public records of Conecuh County, Alabama (1ESC01-L575)

460. Oil Gas and Mineral Lease dated 04/18/2012, by and between Clinton Samuel, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 2162 Rec.Dt. 4/19/2012, of the official public records of Conecuh County, Alabama (1ESC01-L576)

461. Oil Gas and Mineral Lease dated 04/24/2012, by and between Katherine Samuel, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 2690 Rec.Dt. 5/15/2012, of the official public records of Conecuh County, Alabama (1ESC01-L577)

462. Oil Gas and Mineral Lease dated 04/24/2012, by and between Stacey Samuel, Jr., as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 2543 Rec.Dt. 5/9/2012, of the official public records of Conecuh County, Alabama (1ESC01-L578)

463. Oil Gas and Mineral Lease dated 04/24/2012, by and between Travod Samuel, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 2688 Rec.Dt. 5/15/2012, of the official public records of Conecuh County, Alabama (1ESC01-L579)

464. Oil Gas and Mineral Lease dated 04/24/2012, by and between Maurice Seals, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 2541 Rec.Dt. 5/9/2012, of the official public records of Conecuh County, Alabama (1ESC01-L580)

465. Oil Gas and Mineral Lease dated 04/24/2012, by and between Majinice Seals, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 2539 Rec.Dt. 5/9/2012, of the official public records of Conecuh County, Alabama (1ESC01-L581)

466. Oil Gas and Mineral Lease dated 04/24/2012, by and between Mattie Samuel, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Vol 2537 Rec.Dt. 5/9/2012, of the official public records of Conecuh County, Alabama (1ESC01-L582)

467. Oil Gas and Mineral Lease dated 03/24/2012, by and between Willie Samuel, Jr, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 3038 Rec.Dt. 6/1/2012, of the official public records of Conecuh County, Alabama (1ESC01-L583)

468. Oil Gas and Mineral Lease dated 04/24/2012, by and between Ventura Samuel, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Rec.Dt. 6/1/2012, of the official public records of Conecuh County, Alabama (1ESC01-L584)

469. Oil Gas and Mineral Lease dated 04/24/2012, by and between Alexis Samuel, as Lessor, and Sklarco, LLC, as Lessee, recorded on Bk 2012 Pg 3040 Rec.Dt. 6/1/2012, of the official public records of Conecuh County, Alabama (1ESC01-L585)

470. Oil Gas and Mineral Lease dated 06/14/2012, by and between Cedar Creek Land & Timber, Inc., as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2012, Page 3440, of the official public records of Escambia County, Alabama (1ESC01-L586)

471. Oil Gas and Mineral Lease dated 07/28/2012, by and between Hermine M. Downing, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 541 Page 955, of the official public records of Escambia County, Alabama (1ESC01-L589)

472. Oil Gas and Mineral Lease dated 07/28/2012, by and between Stella Livingston Hawkins, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 541, Page 957, of the official public records of Escambia County, Alabama (1ESC01-L590)

473. Oil Gas and Mineral Lease dated 07/28/2012, by and between Edgar E. Downing, Jr., as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 539, Page 954, of the official public records of Escambia County, Alabama (1ESC01-L591)

474. Oil Gas and Mineral Lease dated 07/28/2012, by and between John R. Downing, Jr., as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 540, Page 816, of the official public records of Escambia County, Alabama (1ESC01-L592)

475. Oil Gas and Mineral Lease dated 08/30/2012, by and between Adrian C. Allen, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 540, Page 820, of the official public records of Escambia County, Alabama (1ESC01-L593)

476. Oil Gas and Mineral Lease dated 08/30/2012, by and between Anna L. Downing, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 540, Page 814, of the official public records of Escambia County, Alabama (1ESC01-L594)

477. Oil Gas and Mineral Lease dated 08/17/2012, by and between Doris Atwood, as Lessor, and Sklarco, LLC, as Lessee, recorded on / /   , Book 540, Page 828, of the official public records of Escambia County, Alabama (1ESC01-L595)

478. Oil Gas and Mineral Lease dated 08/30/2012, by and between John A. Downing, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 540, Page 818, of the official public records of Escambia County, Alabama (1ESC01-L596)

479. Oil Gas and Mineral Lease dated 08/30/2012, by and between Wiley W. Downing, III, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 540, Page 824, of the official public records of Escambia County, Alabama (1ESC01-L597)

480. Oil Gas and Mineral Lease dated 08/30/2012, by and between Adrienne P. Watkins, as Lessor, and Sklarco, LLC, as Lessee, recorded on 09/19/2012, Book 540, Page 822, of the official public records of Escambia County, Alabama (1ESC01-L598)

481. Oil Gas and Mineral Lease dated 08/30/2012, by and between The Estate of Frances C. Allen, by Jack M. Watkins, Jr., as Trustee of the Frances C. Allen Revocable Trust, and as Exexcutor U/W of Frances C. Allen, as Lessor, and Sklarco, LLC, as Lessee, recorded on 09/19/2012, Book 540, Page 826, of the official public records of Escambia County, Alabama (1ESC01-L599)

482. Oil Gas and Mineral Lease dated 07/28/2012, by and between John Downing, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 541, Page 261, of the official public records of Escambia County, Alabama (1ESC01-L601)

483. Oil Gas and Mineral Lease dated 09/10/2012, by and between Ralls Properties, LLC, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2012, Page 5862, of the official public records of Escambia County, Alabama (1ESC01-L602)

484. Oil Gas and Mineral Lease dated 08/25/2012, by and between Charles R. Tait, III, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2012, Page 5864, of the official public records of Escambia County, Alabama (1ESC01-L603)

485. Oil Gas and Mineral Lease dated 08/25/2012, by and between Charles R. Tait, Jr., as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2012, Page 5866, of the official public records of Escambia County, Alabama (1ESC01-L604)

486. Oil Gas and Mineral Lease dated 08/24/2012, by and between Wanda Sue Wallace, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2012, Page 5858, of the official public records of Escambia County, Alabama (1ESC01-L605)

2014  1258  00565
Recorded in the Above
Deed  Book & Page
04-27-2016 10:27:40 AM

487. Oil Gas and Mineral Lease dated 08/24/2012, by and between Brooklyn Volunteer Fire Department, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2012 Page 5860, of the official public records of Escambia County, Alabama (1ESC01-L606)

488. Oil Gas and Mineral Lease dated 08/24/2012, by and between Janice Matthews, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2012, Page 5856, of the official public records of Escambia County, Alabama (1ESC01-L607)

489. Oil Gas and Mineral Lease dated 09/14/2012, by and between Betty Weeks Spurlock, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2012, Page 5999, of the official public records of Escambia County, Alabama (1ESC01-L608)

490. Oil Gas and Mineral Lease dated 09/14/2012, by and between Ray Weeks, Jr., as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2012, Page 6001, of the official public records of Escambia County, Alabama (1ESC01-L609)

491. Oil Gas and Mineral Lease dated 09/06/2012, by and between Brooklyn Baptist Church, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2012, Page 5988, of the official public records of Escambia County, Alabama (1ESC01-L610)

492. Oil Gas and Mineral Lease dated 07/28/2012, by and between The Estate of Mary  M. Downing, rep. by JAne Downing Dunaway, individually and as personal representative, as Lessor, and Sklarco, LLC, as Lessee, recorded on 10/09/2012, Book 542, Page 33, of the official public records of Escambia County, Alabama (1ESC01-L611)

493. Oil Gas and Mineral Lease dated 07/28/2012, by and between Lisa Downing Heaton, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 543, Page 5, of the official public records of Escambia County, Alabama (1ESC01-L612)

494. Oil Gas and Mineral Lease dated 09/18/2012, by and between Michael Brian Crookshank, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2012  Page 6003, of the official public records of Escambia County, Alabama (1ESC01-L614)

495. Oil Gas and Mineral Lease dated 08/25/2012, by and between Vera Frances Tait, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2012 Page 6005, of the official public records of Escambia County, Alabama (1ESC01-L615)

496. Oil Gas and Mineral Lease dated 09/24/2012, by and between Mae Adele Tait Sharp, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2012 Page 6297, of the official public records of Escambia County, Alabama (1ESC01-L616)

497. Oil Gas and Mineral Lease dated 09/24/2012, by and between Carolyn Feagin, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2012  Page 5997, of the official public records of Escambia County, Alabama (1ESC01-L617)

498. Lease dated 09/19/2012, by and between Jillian B. Pate, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2012 Page 5993, of the official public records of Conecuh County, Alabama (1ESC01-L618)

499. Oil Gas and Mineral Lease dated 09/19/2012, by and between Joshua R. Pate, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2012 Page 5991, of the official public records of Escambia County, Alabama (1ESC01-L619)

500. Oil Gas and Mineral Lease dated 08/24/2012, by and between Alex B. Pate, as Worshiful Master, Gary W. Pate, as Sr. Warden and John Potts as Jr. Warden of Dean Lodge # 112 of Free and Accepted Masons, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2012 Page 5995, of the official public records of Escambia County, Alabama (1ESC01-L620)

501. Oil Gas and Mineral Lease dated 09/18/2012, by and between Darrell Preston Brannon, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2012  Page 6435, of the official public records of Escambia County, Alabama (1ESC01-L621)

502. Oil Gas and Mineral Lease dated 10/05/2012, by and between Steven Jack Blackman, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 542, Page 595, of the official public records of Escambia County, Alabama (1ESC01-L622)

503. Oil Gas and Mineral Lease dated 10/03/2012, by and between James Walls, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2012  Page 6439, of the official public records of Escambia County, Alabama (1ESC01-L623)

504. Oil Gas and Mineral Lease dated 10/03/2012, by and between Sarah Allen Wilson, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2012  Page 6343, of the official public records of Escambia County, Alabama (1ESC01-L624)

505. Oil Gas and Mineral Lease dated 10/03/2012, by and between Patrick Garrett, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2012  Page 6339, of the official public records of Escambia County, Alabama (1ESC01-L625)

506. Oil Gas and Mineral Lease dated 10/03/2012, by and between Gerald Hill, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2012 Page 6337, of the official public records of Escambia County, Alabama (1ESC01-L626)

507. Oil Gas and Mineral Lease dated 10/03/2101, by and between Brenda Gail Wise, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2012  Page 6437, of the official public records of Escambia County, Alabama (1ESC01-L627)

508. Oil Gas and Mineral Lease dated 10/03/2012, by and between Terry Lefler Walls, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2012 Page 6441, of the official public records of Escambia County, Alabama (1ESC01-L628)

509. Oil Gas and Mineral Lease dated 10/03/2012, by and between Ginger Mc Waters, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2012  Page 6345, of the official public records of Escambia County, Alabama (1ESC01-L629)

510. Oil Gas and Mineral Lease dated 10/03/2012, by and between Alan Juel Lefler, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2012 Page 6341, of the official public records of Escambia County, Alabama (1ESC01-L630)

511. Oil Gas and Mineral Lease dated 08/29/2012, by and between Jean F. Watson, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2012, Page 6433, of the official public records of Escambia County, Alabama (1ESC01-L631)

512. Oil Gas and Mineral Lease dated 08/17/2012, by and between Suzanne Leander, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 541, Page 127, of the official public records of Escambia County, Alabama (1ESC01-L633)

513. Oil Gas and Mineral Lease dated 01/17/2013, by and between Richard Lombard, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 548 Page 939, of the official public records of Escambia County, Alabama (1ESC01-L634)

514. Oil Gas and Mineral Lease dated 01/15/2013, by and between Gary Plummer, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 550, Page 125, of the official public records of Escambia County, Alabama (1ESC01-L635)

515. Oil Gas and Mineral Lease dated 01/17/2013, by and between Susan Lombard Wilkinson, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 550 Page 839, of the official public records of Escambia County, Alabama (1ESC01-L636)

516. Oil Gas and Mineral Lease dated 01/03/2013, by and between Joshua R. Pate, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2013, Page 504, of the official public records of Escambia County, Alabama (1ESC01-L637)

517. Oil Gas and Mineral Lease dated 01/03/2013, by and between Helen Pate, as Trustee for Josh Pate and Jill Pate, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2013, Page 498, of the official public records of Escambia County, Alabama (1ESC01-L638)

2016 1259
Recorded in the Above
Deed Book & Page
04-27-2016 10:27:40 AM

00566

518. Oil Gas and Mineral Lease dated 01/03/2013, by and between Joel R. Pate, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2013, Page 501, of the official public records of Escambia County, Alabama (1ESC01-L639)

519. Oil Gas and Mineral Lease dated 01/17/2013, by and between Mary K. Jones, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2013, Page 1116, of the official public records of Escambia County, Alabama (1ESC01-L640)

520. Oil Gas and Mineral Lease dated 01/17/2013, by and between Katherine Dufrain, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 548, Page 937, of the official public records of Escambia County, Alabama (1ESC01-L641)

521. Oil Gas and Mineral Lease dated 01/16/2013, by and between John Greel Ralls, Sr. Manager, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2013, Page 1225, of the official public records of Escambia County, Alabama (1ESC01-L642)

522. Oil Gas and Mineral Lease dated 01/11/2013, by and between John Christopher Findley, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2013, Page 1009, of the official public records of Escambia County, Alabama (1ESC01-L643)

523. Oil Gas and Mineral Lease dated 01/11/2013, by and between Linda Michelle Beard, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2013, Page 902, of the official public records of Escambia County, Alabama (1ESC01-L644)

524. Oil Gas and Mineral Lease dated 01/11/2013, by and between Robert M. Findley, Jr., as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2013, Page 904, of the official public records of Escambia County, Alabama (1ESC01-L645)

525. Oil Gas and Mineral Lease dated 01/04/2013, by and between Michael R. Cary, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 546, Page 5, of the official public records of Escambia County, Alabama (1ESC01-L646)

526. Oil Gas and Mineral Lease dated 06/14/2015, by and between Cedar Creek Land and Timber, Inc., as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2012, Page 7634, of the official public records of Covington County, Alabama (1ESC01-L648)

527. Oil Gas and Mineral Lease dated 06/14/2015, by and between Cedar Creek Land & Timber, Inc., as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 536, Page 163, of the official public records of Escambia County, Alabama (1ESC01-L649)

528. Oil Gas and Mineral Lease dated 02/05/2013, by and between Cedar Creek Land and Timber, Inc., as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 550 Page 912, of the official public records of Escambia County, Alabama (1ESC01-L650)

529. Oil Gas and Mineral Lease dated 12/12/2015, by and between Cedar Creek Land & Timber, Inc., as Lessor, and Sklarco, LLC, as Lessee, recorded on 01/10/2013, Book 2013, Page 343, of the official public records of Conecuh County, Alabama (1ESC01-L651)

530. Lease dated 01/17/2013, by and between Cindy Hayes, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 550 Page 841, of the official public records of Escambia County, Alabama (1ESC01-L655)

531. Oil Gas and Mineral Lease dated 02/15/2013, by and between Ben Kelly Strain, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 551 Page 960, of the official public records of Escambia County, Alabama (1ESC01-L656)

532. Oil Gas and Mineral Lease dated 01/11/2013, by and between Paul J. Findley, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2013, Page 1452, of the official public records of Escambia County, Alabama (1ESC01-L657)

533. Oil Gas and Mineral Lease dated 03/19/2013, by and between John Robert Roby, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 552, Page 500, of the official public records of Escambia County, Alabama (1ESC01-L659)

534. Oil Gas and Mineral Lease dated 03/19/2013, by and between Susan Lombard Wilkinson, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 554 Page 83, of the official public records of Escambia County, Alabama (1ESC01-L660)

535. Lease dated 03/19/2013, by and between Sandra Ellis, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 552 Page 496, of the official public records of Escambia County, Alabama (1ESC01-L661)

536. Lease dated 02/15/2013, by and between Kelley Alford, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 551 Page 949, of the official public records of Escambia County, Alabama (1ESC01-L662)

537. Oil Gas and Mineral Lease dated 02/15/2013, by and between Edwin Sanford, III, as Lessor, and Sklarco, LLC, as Lessee, recorded on / / , Book 551, Page 946, of the official public records of Escambia County, Alabama (1ESC01-L663)

538. Oil Gas and Mineral Lease dated 02/15/2013, by and between Gordon K. O'Neal, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 551, Page 957, of the official public records of Escambia County, Alabama (1ESC01-L664)

539. Oil Gas and Mineral Lease dated 04/24/2013, by and between Katherine Dufrain, as Lessor, and Sklarco, LLC, as Lessee, recorded on / / , Book 563, Page 545, of the official public records of Escambia County, Alabama (1ESC01-L665)

540. Oil Gas and Mineral Lease dated 03/19/2013, by and between Carol Roberts, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 552, Page 498, of the official public records of Escambia County, Alabama (1ESC01-L666)

541. Lease dated 03/19/2013, by and between Sarah Russell Tate, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 554 page 81, of the official public records of Escambia County, Alabama (1ESC01-L667)

542. Lease dated 01/17/2013, by and between Samuel Alto Jackson, Jr, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 554 Page 79, of the official public records of Escambia County, Alabama (1ESC01-L668)

543. Oil Gas and Mineral Lease dated 02/15/2013, by and between Steve Francis O'Neal, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 557 Page 36, of the official public records of Escambia County, Alabama (1ESC01-L669)

544. Oil Gas and Mineral Lease dated 03/19/2013, by and between Syble LaJune White, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 554, Page 77, of the official public records of Escambia County, Alabama (1ESC01-L670)

545. Lease dated 03/19/2013, by and between Foster F. Fountain, III, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 552 Page 492, of the official public records of Escambia County, Alabama (1ESC01-L671)

546. Lease dated 03/19/2013, by and between Richard Lombard, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 557 Page 915, of the official public records of Escambia County, Alabama (1ESC01-L672)

547. Lease dated 03/19/2013, by and between Karen A. Fulford, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 557 Page 913, of the official public records of Escambia County, Alabama (1ESC01-L673)

548. Lease dated 03/19/2013, by and between Janice Smith, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 552 Page 494, of the official public records of Escambia County, Alabama (1ESC01-L675)

2016   1260   00567
Recorded in the Above
Deed  Book & Page
04-27-2016  10:27:40 AM

549. Oil Gas and Mineral Lease dated 01/21/2013, by and between Ethan Tyler Monroe, as Lessor, and Sklarco, LLC, as Lessee, recorded on / /, of the official public records of Escambia County, Alabama (1ESC01-L676)

550. Oil Gas and Mineral Lease dated 04/22/2013, by and between Carol Ralls Pate, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 554, Page 755, of the official public records of Escambia County, Alabama (1ESC01-L677)

551. Oil Gas and Mineral Lease dated 04/30/2013, by and between Tisdale Natural Resources, LLC, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2013, Page 2977, of the official public records of Escambia County, Alabama (1ESC01-L679)

552. Lease dated 03/19/2013, by and between James C. Roby, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 555 Page 139, of the official public records of Escambia County, Alabama (1ESC01-L680)

553. Oil Gas and Mineral Lease dated 05/20/2013, by and between Venessa Ragland, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 573, Page 496, of the official public records of Escambia County, Alabama (1ESC01-L682)

554. Oil Gas and Mineral Lease dated 06/20/2013, by and between Margaret Valcourt, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2013, Page 4481, of the official public records of Escambia County, Alabama (1ESC01-L683)

555. Lease dated 06/20/2013, by and between Deborah Booth, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2013 Page 4053, of the official public records of Conecuh County, Alabama (1ESC01-L684)

556. Oil Gas and Mineral Lease dated 06/20/2013, by and between Mary Jo Booth, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2013, Page 3927, of the official public records of Escambia County, Alabama (1ESC01-L685)

557. Oil Gas and Mineral Lease dated 01/31/2014, by and between Carey Gribblle, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2013, Page 5485, of the official public records of Escambia County, Alabama (1ESC01-L686)

558. Oil Gas and Mineral Lease dated 01/31/2014, by and between Carla Janes, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2013, Page 5483, of the official public records of Escambia County, Alabama (1ESC01-L687)

559. Oil Gas and Mineral Lease dated 01/31/2014, by and between James L. Janes, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2013, Page 5373, of the official public records of Escambia County, Alabama (1ESC01-L688)

560. Oil Gas and Mineral Lease dated 01/31/2014, by and between Jamie Janes, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2014, Page 32, of the official public records of Conecuh County, Alabama (1ESC01-L689)

561. Oil Gas and Mineral Lease dated 10/19/2013, by and between Janie M. Johnston, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2013, Page 6294, of the official public records of Conecuh County, Alabama (1ESC01-L690)

562. Lease dated 04/18/2014, by and between The I's of Texas Family Partnership L.P., as Lessor, and Gulf Coast Mineral, LLC, as Lessee, recorded on 05/15/2014, Book 2014, Page 2328, of the official public records of Conecuh County, Alabama (1ESC01-L692)

563. Lease dated 04/18/2014, by and between The Second Artyce, L.P. Director Randal W. Colen, as Lessor, and Gulf Coast Mineral, LLC, as Lessee, recorded on 05/15/2014, Book 2014, Page 2323, of the official public records of Conecuh County, Alabama (1ESC01-L693)

564. Lease dated 05/05/2014, by and between John Greel Ralls, Sr., as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2014 Page 2406, of the official public records of Conecuh County, Alabama (1ESC01-L694)

565. Lease dated 05/21/2014, by and between Joshua R. Pate, as Lessor, and Sklarco, LLC, as Lessee, of the official public records of Conecuh County, Alabama (1ESC01-L695)

566. Oil Gas and Mineral Lease dated 05/27/2014, by and between WIlliam and Barbara Robinson, as Lessor, and Sklarco, LLC, as Lessee, recorded on / /   , Book 575, Page 801, of the official public records of Escambia County, Alabama (1ESC01-L696)

567. Oil Gas and Mineral Lease dated 05/20/2014, by and between John G. Ralls, Jr., as Lessor, and Sklarco, LLC, as Lessee, recorded on / /   , Book 577, Page 83, of the official public records of Escambia County, Alabama (1ESC01-L697)

568. Oil Gas and Mineral Lease dated 05/20/2014, by and between Gillis Edward Ralls, Jr., as Lessor, and Sklarco, LLC, as Lessee, recorded on / /   , Book 577, Page 81, of the official public records of Escambia County, Alabama (1ESC01-L698)

569. Oil Gas and Mineral Lease dated 05/20/2014, by and between Juanita Ralls, as Lessor, and Sklarco, LLC, as Lessee, recorded on / /   , Book 577, Page 77, of the official public records of Conecuh County, Alabama (1ESC01-L699)

570. Oil Gas and Mineral Lease dated 05/20/2014, by and between Grady Lynn Ralls & Willodean Ralls, et ux, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 577, Page 75, of the official public records of Conecuh County, Alabama (1ESC01-L700)

571. Oil Gas and Mineral Lease dated 05/20/2014, by and between William Edward Ralls, Jr., as Lessor, and Sklarco, LLC, as Lessee, recorded on / /   , Book 577, Page 322, of the official public records of Conecuh County, Alabama (1ESC01-L701)

572. Oil Gas and Mineral Lease dated 05/20/2014, by and between Loree Hamiter, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 577, Page 318, of the official public records of Conecuh County, Alabama (1ESC01-L702)

573. Oil Gas and Mineral Lease dated 05/20/2014, by and between Harold W. Hamiter, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 577, Page 320, of the official public records of Escambia County, Alabama (1ESC01-L703)

574. Oil Gas and Mineral Lease dated 05/20/2014, by and between Carol Ralls Pate, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 577, Page 79, of the official public records of Conecuh County, Alabama (1ESC01-L704)

575. Oil Gas and Mineral Lease dated 05/20/2014, by and between Voncile Ralls, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 577, Page 326, of the official public records of Conecuh County, Alabama (1ESC01-L705)

576. Oil Gas and Mineral Lease dated 05/20/2014, by and between Kenneth Ralls, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 577, Page 324, of the official public records of Conecuh County, Alabama (1ESC01-L706)

577. Oil Gas and Mineral Lease dated 06/12/2014, by and between Joshua R. Pate, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2014 Pg 2726, of the official public records of Escambia County, Alabama (1ESC01-L707)

578. Oil Gas and Mineral Lease dated 06/16/2014, by and between Carse Casey Jackson, Jr., as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 578 Page 736, of the official public records of Escambia County, Alabama (1ESC01-L708)

579. Lease dated 05/20/2014, by and between James E. Hamiter, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 576 Page 476, of the official public records of Escambia County, Alabama (1ESC01-L709)

2016  1261   00568
Recorded in the Above
Deed Book & Page
04-27-2016 10:27:40 AM

580. Lease dated 05/20/2014, by and between Rosemary Ralls Harper, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 577 Page 952, of the official public records of Escambia County, Alabama (1ESC01-L710)

581. Oil Gas and Mineral Lease dated 05/20/2014, by and between Kristen Michelle Slayden, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 577, Page 950, of the official public records of Escambia County, Alabama (1ESC01-L711)

582. Oil Gas and Mineral Lease dated 05/20/2014, by and between Shane Leigh Carico, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 578, Page 474, of the official public records of Escambia County, Alabama (1ESC01-L712)

583. Oil Gas and Mineral Lease dated 06/23/2014, by and between James Timothy Calvert, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 578, Page 741, of the official public records of Escambia County, Alabama (1ESC01-L714)

584. Oil Gas and Mineral Lease dated 06/24/2014, by and between Samuel Alto Jackson, Jr, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 578, Page 731, of the official public records of Escambia County, Alabama (1ESC01-L715)

585. Lease dated 01/21/2014, by and between Cindy Hayes, as Lessor, and Sklarco, LLC, as Lessee, recorded on 08/06/2014, Book 580, Page 603, of the official public records of Escambia County, Alabama (1ESC01-L717)

586. Oil Gas and Mineral Lease dated 07/31/2014, by and between Cedar Creek Land & Timber, Inc., as Lessor, and Sklarco, LLC, as Lessee, recorded on 05/14/2015 Book 597, Page 893, of the official public records of Escambia County, Alabama (1ESC01-L718)

587. Oil Gas and Mineral Lease dated 07/03/2014, by and between Grady Lynn Ralls, Gillis Edward Ralls, Anita Carol Ralls Pate, Rosemary Ralls Harper, Trustees of the Declaration of Trust by Grady Ralls dated February 16, 1987, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2014, Page 3537, of the official public records of Conecuh County, Alabama (1ESC01-L719)

588. Oil Gas and Mineral Lease dated 06/24/2014, by and between Theodore B. Roby, Trust, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 578, Page 726, of the official public records of Escambia County, Alabama (1ESC01-L720)

589. Oil Gas and Mineral Lease dated 06/27/2014, by and between Lovelace Properties, LLC, as Lessor, and Sklarco, LLC, as Lessee, recorded on 06/27/2014, Book 582, Page 441, of the official public records of Escambia County, Alabama (1ESC01-L721)

590. Oil Gas and Mineral Lease dated 07/12/2014, by and between Otis and Hattie Phelps, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 2014 Page 4793, of the official public records of Escambia County, Alabama (1ESC01-L722)

591. Lease dated 09/25/2014, by and between Patricia Ann Worrell, as Lessor, and Sklarco, LLC, as Lessee, recorded on 10/01/2014, Book 583, Page 684, of the official public records of Escambia County, Alabama (1ESC01-L723)

592. Lease dated 10/02/2014, by and between Fletcher Mayhew Lucas, as Lessor, and Sklarco, LLC, as Lessee, recorded on 10/06/2014, Book 583, Page 904, of the official public records of Escambia County, Alabama (1ESC01-L724)

593. Lease dated 09/15/2014, by and between Irma Dowe, as Lessor, and Sklarco, LLC, as Lessee, recorded on 10/13/2014, Book 2014, Page 5712, of the official public records of Conecuh County, Alabama (1ESC01-L725)

594. Lease dated 11/25/2014, by and between Sandra B. Rush, as Lessor, and Sklarco, LLC, as Lessee, recorded on 12/03/2014, Book 587, Page 883, of the official public records of Escambia County, Alabama (1ESC01-L728)

595. Lease dated 12/30/2014, by and between Neileen Rivers, as Lessor, and Sklarco, LLC, as Lessee, recorded on 01/08/2014, Book 591, Page 168, of the official public records of Escambia County, Alabama (1ESC01-L729)

596. Lease dated 01/05/2015, by and between Theodore B. Roby, Trust, as Lessor, and Sklarco, LLC, as Lessee, recorded on 01/08/2015, Book 591, Page 178, of the official public records of Escambia County, Alabama (1ESC01-L730)

597. Lease dated 12/09/2014, by and between James H. Balcom, as Lessor, and Sklarco, LLC, as Lessee, recorded on 12/18/2014, Book 2014, Page 6407, of the official public records of Conecuh County, Alabama (1ESC01-L731)

598. Lease dated 12/09/2014, by and between Frank J. Greskovich, as Lessor, and Sklarco, LLC, as Lessee, recorded on 12/18/2014, Book 2014, Page 6413, of the official public records of Conecuh County, Alabama (1ESC01-L732)

599. Lease dated 12/09/2014, by and between Craig Walter Gillespie, as Lessor, and Sklarco, LLC, as Lessee, recorded on 12/19/2014, Book 2014, Page 6451, of the official public records of Conecuh County, Alabama (1ESC01-L733)

600. Lease dated 12/09/2014, by and between Joseph T. Saiter, Jr., & Cheryl P. Saiter, as Lessor, and Sklarco, LLC, as Lessee, recorded on 12/18/2014, Book 2014, Page 6410, of the official public records of Conecuh County, Alabama (1ESC01-L734)

601. Lease dated 12/09/2014, by and between Florence Eckerlein, as Lessor, and Sklarco, LLC, as Lessee, recorded on 12/18/2014, Book 2014, Page 6427, of the official public records of Conecuh County, Alabama (1ESC01-L735)

602. Lease dated 12/09/2014, by and between Kathryn Eckerlein Errington, as Lessor, and Sklarco, LLC, as Lessee, recorded on 12/18/2014, Book 2014, Page 6419, of the official public records of Conecuh County, Alabama (1ESC01-L736)

603. Lease dated 12/09/2014, by and between Natalie S. Ciano, Trustee Under the Anthony J. Ciano Revoca, as Lessor, and Sklarco, LLC, as Lessee, recorded on 12/19/2014, Book 2014, Page 6448, of the official public records of Conecuh County, Alabama (1ESC01-L737)

604. Lease dated 12/09/2014, by and between Henry W. Coe, as Lessor, and Sklarco, LLC, as Lessee, recorded on 12/18/2014, Book 2014, Page 6404, of the official public records of Conecuh County, Alabama (1ESC01-L738)

605. Lease dated 12/09/2014, by and between Mary Elizabeth Lazzaro, as Lessor, and Sklarco, LLC, as Lessee, recorded on 12/18/2014, Book 2014, Page 6422, of the official public records of Conecuh County, Alabama (1ESC01-L739)

606. Lease dated 12/09/2014, by and between Benjamin L. Stalnaker, as Lessor, and Sklarco, LLC, as Lessee, recorded on 12/18/2014, Book 2014, Page 6416, of the official public records of Conecuh County, Alabama (1ESC01-L740)

607. Lease dated 01/09/2015, by and between Lovelace Properties, LLC, as Lessor, and Sklarco, LLC, as Lessee, recorded on 09/04/2014, Book 582, Page 441, of the official public records of Escambia County, Alabama (1ESC01-L741)

608. Oil Gas and Mineral Lease dated 01/15/2015, by and between Jamice Matthews Lee, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 592, Page 557, of the official public records of Escambia County, Alabama (1ESC01-L742)

609. Oil Gas and Mineral Lease dated 01/21/2015, by and between Harvey Boyette, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 592, Page 562, of the official public records of Escambia County, Alabama (1ESC01-L743)

2016   1262   00569
Recorded in the Above
Deed  Book & Page
04-27-2016 10:27:40 AM

610. Lease dated 01/27/2015, by and between Carol V. Harris, as Lessor, and Sklarco, LLC, as Lessee, recorded on 02/03/2015, Book 592, Page 565, of the official public records of Escambia County, Alabama (1ESC01-L744)

611. Lease dated 01/27/2015, by and between Ted Gibson, Jr., as Lessor, and Sklarco, LLC, as Lessee, recorded on 02/19/2015, Book 593, Page 556, of the official public records of Escambia County, Alabama (1ESC01-L745)

612. Oil Gas and Mineral Lease dated 01/30/2015, by and between Marjorie Warsing, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 593, Page 567, of the official public records of Escambia County, Alabama (1ESC01-L746)

613. Oil Gas and Mineral Lease dated 02/03/2015, by and between Johnny Terrell, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 593 Page 559, of the official public records of Escambia County, Alabama (1ESC01-L747)

614. Lease dated 01/21/2015, by and between Patricia G. Ware, as Lessor, and Sklarco, LLC, as Lessee, recorded on 02/19/2015, Book 593, Page 564, of the official public records of Escambia County, Alabama (1ESC01-L748)

615. Lease dated 12/15/2014, by and between James Timothy Calvert, as Lessor, and Sklarco, LLC, as Lessee, recorded on 01/08/2015, Book 591, Page 173, of the official public records of Escambia County, Alabama (1ESC01-L749)

616. Oil Gas and Mineral Lease dated 01/30/2015, by and between H.L. McClain, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 593, Page 553, of the official public records of Escambia County, Alabama (1ESC01-L750)

617. Oil Gas and Mineral Lease dated 01/21/2015, by and between Elaine Hastings, as Lessor, and Sklarco, LLC, as Lessee, recorded on Book 594 Page 652, of the official public records of Escambia County, Alabama (1ESC01-L751)

618. Lease dated 02/18/2015, by and between Jimmie K. Mullins, as Lessor, and Sklarco, LLC, as Lessee, recorded on 03/12/2015, Book 594, Page 658, of the official public records of Escambia County, Alabama (1ESC01-L752)

619. Lease dated 02/18/2015, by and between Linda K. Howland, as Lessor, and Sklarco, LLC, as Lessee, recorded on 03/12/2015, Book 594, Page 655, of the official public records of Escambia County, Alabama (1ESC01-L753)

620. Lease dated 01/28/2015, by and between U. L. Gibson, as Lessor, and Sklarco, LLC, as Lessee, recorded on 03/27/2015, Book 595, Page 587, of the official public records of Escambia County, Alabama (1ESC01-L754)

621. Lease dated 01/30/2015, by and between M. H. Gibson, Jr., as Lessor, and Sklarco, LLC, as Lessee, recorded on 03/27/2014, Book 595, Page 584, of the official public records of Escambia County, Alabama (1ESC01-L755)

622. Lease dated 11/12/2014, by and between Joshua Ray Pate, as Lessor, and Sklarco, LLC, as Lessee, recorded on 11/13/2014, Book 2014, Page 5964, of the official public records of Conecuh County, Alabama (1ESC01-L727)

623. Lease dated 07/25/2014, by and between The Estate of Thomas E. McMillan, by Thomas Edwards McMillan, Jr., Robert Cochrane McMillan, and Katherine Elizabeth McMillan Owens, as Co-Executors, as Lessor, and Sklarco, LLC, as Lessee, recorded on 09/04/2014, Book 582, Page 438, of the official public records of Escambia County, Alabama (1ESC01-L756)

624. Lease dated 02/01/2015, by and between The Rudman Partnership, Ltd., doing business as The Rudman Partnership, as nominee, and Rudman Oil & Gas Partnership I, Ltd., and Rudman Oil & Gas Partnership II, Ltd., as principals, as Lessor, and Sklar Exploration Company, LLC, and Lessee, recorded on 02/06/2014, Book 2015, Page 476, of the official public records of Conecuh County, Alabama (1ESC01-L757)

EXHIBIT "A-2"

STATE OF AL ESCAMBIA CO
I CERTIFY THIS DOCUMENT
WAS FILED AND RECORDED
2016 APR 27 P 1:36
BK 616
511-570
181.50 deed
181.00 rec
12.00 exname
193.50

Total Fees: $ 197.50
ADI Additional Indexing Fee 12.00
REC Recording Fee 180.00
INF Indexing Fee (Computer Fnd) 5.00
DFE Deed Tax 0.50
Recorded: 04-27-2016 10:44:57
Tran: 12634.63040.79555
Terminal/Cashier: CONECUH5-P / crl

2016 1263 00570
Recorded in the Above
Deed Book & Page
04-27-2016 10:27:40 AM
Rosene Booker, Probate Judge
Conecuh County, Alabama