UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC | ) | |
| EIN: 72-1417930 | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | Case No. 20-12380-EEB |
| SKLARCO, LLC | ) | |
| EIN: 72-1425432 | ) | Chapter 11 |
| | ) | |
| Debtor. | | |

**MAREN SILBERSTEIN REVOCABLE TRUST'S REPLY TO
REORGANIZED DEBTOR'S OBJECTION AND ADDITIONAL
<u>SUPPORT FOR ADMINISTRATIVE CLAIM</u>**

The Maren Silberstein Revocable Trust ("Trust") files this reply to the Reorganized Debtors' Objection and Additional Support for the Administrative Claim (Doc. No. 1534)("Objection"), and would show this Court as follows:

<u>**BACKGROUND**</u>

The Maren Silberstein Revocable Trust filed an administrative claim (Doc. No. 1495) out of an abundance of caution which included a claim that the Agency Services Agreement ("ASA") between Sklarco required a cure payment due to Sklarco's failure to comply with the ASA, including the failure to provide the Trustees of the Trust notice of the bankruptcy as well as the failure to follow proper financial controls rendering it near impossible to assess whether the charges to the Trust were accurately assessed and calculated.

1

The Reorganized Debtors objected. (Doc. No. 1534). A limited objection was also filed by Howard Sklar. (Doc. No. 1525).

Counsel for the Trust reached out to the Reorganized Debtors to propose a potential structure for an amicable resolution of the Cure Claim/Administrative Claim, but has not received a response from the Reorganized Debtors as of this date.

As such, this reply brief is being filed in response to the *Reorganized Debtor's Response to the Trust's Administrative Claim*.

## REPLY TO FACTUAL ALLEGATIONS IN REORGANIZED DEBTOR'S RESPONSE TO ADMINISTRATION CLAIM

1. The Debtors filed bankruptcy on April 1, 2020. The Trust received notice of the bankruptcy after the Plan and Disclosure Statement were filed and a creditor reached out after doing discovery and learning of the Trust.

2. The Maren Silberstein Revocable Trust ("Trust") is the successor in interest to the Judy Trust for the Benefit of Maren Silberstein ("Judy Trust").

3. Sklarco and the Judy Trust were parties to an Agency Services Agreement ("ASA")[1] which provided for a $15,000 monthly payment ("Agency Services Fee"). The ASA provided that Sklarco was the agent for the Trust. **Exhibit A**, Sec. 1.1.

4. The ASA provides that Louisiana law controls. Exhibit A, Sec. 6.5.

5. Under the terms of the ASA, Sklarco had a duty to take all actions to protect the Trust's interests. Instead, Sklarco concealed its bankrutpcy, concealed financial irregularities, lacked sufficient financial controls, and breached its duty to the Trust. Sklarco's actions were a breach of its duty as agent to the Trust by it gross negligence or willful misconduct in representing

---

[1] **Exhibit A.**

the Trust's interests failing to make sure the Trust was noticed with the bankruptcy, and, failing to inform the Trust of the Debtors' maladministration of royalty funds.

6. The Reorganized Debtors allege the Trust received notice of the bankruptcy "since at least January 2021", but the Objection provided no basis for such allegation,. The allegation is disputed. Moreover, the Reorganized Debtors fail to cite to a certificate of service or anything else to support their self-serving allegation that the Trust received notice of the bankruptcy from the Debtors.

7. Further, the Debtors never disputed that the Trust did not receive notice when the Trust's counsel reached out on July 26, 2021. On July 28, 2021, the Trust's counsel informed Debtors' counsel that not only did the Trust not receive notice of the bankruptcy, but the mailing address on the statements for the Trust was incorrect. *See,* **Exhibit B and C.**

8. The Reorganized Debtors also argue that the Trust did not seek a post-petition claim when the objection is on its face an objection to the Trust's administrative claim and cure claim which are property raised. *See,* Doc. No. 1495.

9. The Debtor alleges that the Trust failed to identify a single charge that was inappropriate which is a mischaracterization of the claim. The Trust alleges paying a management fee of $15,000 to an agent which wholesale failed to provide the services it was required to provide to the Trust such as informing it about the bankruptcy and mishandling of royalties, as well as failing to disclose the lack of proper financial controls. This is a case where the Debtor was the agent for the mineral interests managing all concerns. The agent had a duty to the mineral interest owner as its agent.

10. The Trust only learned about the bankruptcy because the Rudman Partnership's counsel reached out after the confirmation hearing process began The Debtors showed no evidence that the

Trust received notice of the bankruptcy and points to no certificate of service showing notice. The Debtors also knew that the Trust's address on the monthly statements was wrong.

11. The Debtors are fully aware of the testimony of its former CFO showing that the Debtors' financial management was deficient despite the Debtors duty under the ASA.

12. The Trust's statements from March 31, 2020 to September 2021 are attached as **Exhibit D.**

13. The Effective Date of the Plan was September 7, 2021 ("Effective Date").

14. As noted in the Administrative Claim, the Debtor was charging $15,000 a month and failing to fulfill even the most basic of services as the agent for the Trust – like the failure to notify the Trust of the Bankruptcy or notify the Trust of the financial improprieties in how revenue funds were being used. The Trust asserts these charges should be refunded to the Trust in order to cure and assume the ASA.

15. Sklarco is a fiduciary to the Trust, as its agent for handling the Trust's oil and gas interests.

16. "Fiduciary" means an agent, trustee, partner, corporate officer or director, or other representative owing a fiduciary duty with respect to an instrument. LA Rev Stat § 10:3-307 (2015).

17. Sklarco's failure to provide the Trust notice of the bankruptcy and financial irregularities which occurred over time and immediately preceding the Bankruptcy was a breach of its fiduciary duty to the Trust.

18. The testimony to the Court at the cash collateral hearing was that SEC and Sklarco commingled revenue funds –

```
2  A    From a cash standpoint, all of the money is pooled and
3       commingled.
```

*See,* **Exhibit E**, page 146:2-3 (Cash Collateral Hearing Transcript,

19. As shown by the Statement of Financial Affairs, while Sklarco was charging fees to the Trust causing a negative balance, on the flip-side the Debtors were transferring funds to Mr. Sklar's Trust. *See,* **Exhibit F** (Debtors' SOFA) and **Exhibit E**, page 154:

```
 2        MS. RILEY:  Again, Your Honor, I'm going to object to
 3   relevance at this point; I think we've established the point.
 4   If we could maybe get back to some of the cash collateral
 5   issues here.
 6        THE COURT:  Overruled.
 7   BY MR. SKELTON:
 8   Q    Can you explain that, sir?
 9   A    Can you repeat the question, please, Mr. Skelton?
10   Q    Can you explain why you listed every single transfer to
11   Sklarco as being to pay JIBs, and reconciled that with the fact
12   that on the same or very close dates in the Sklarco statement
13   of financial affairs there are payments out to the Howard Sklar
14   Trust in a very similar amount?
15   A    No, only that there could be mistakes that I made in the
16   characterization of those transfers.
17        THE COURT:  Which is the mistake, what's said in
18   Exhibit 1 or Exhibit 2?
19        THE WITNESS:  In the -- in the Sklar Exploration
20   statement of financial affairs, the transfers from Sklar
21   Exploration to Sklarco.
22        THE COURT:  So it wasn't to pay JIBs, it was, in
23   fact, to pay the Howard Trust.
24        THE WITNESS:  It -- it -- it certainly appears there
25   are -- there are certain of those transfers that were
```

*See,* **Exhibit E**, 155.

20. In addition, the Debtors have already acknowledged that Sklarco was diverting funds to Sklar Exploration to pay its general and administrative expenses while also serving as an agent for the Trust without providing anything to show the commingling of funds with the Sklar Exporation. *See,* **Exhibit E.**

21. Ms. Silberstein is Mr. Sklar's niece. The Trust had a separate Agency Services Agreement from the Trusts which were for the benefit of Howard Sklar and his family. It was also

acknowledged at the cash collateral hearing that revenue funds were diverted to make monthly payments to Mr. Sklar's ex-wife. **Exhibit E,** p. 160. As such, while the Debtor was booking a negative balance for the Maren Silberstein Revocable Trust's statements and making demand for payments, Howard Sklar was being enriched with the same fuzzy accounting system. Sklarco never disclosed these facts to the Trust or stopped such actions.

22. Mr. Sklar filed a limited self-serving objection to the Maren Silberstein Revocable Trust's administrative claim. However, his objection does not appear to challenge the fact that Sklarco did not fulfill its duties as agent to the Trust only that he should not be responsible.

23. On October 13, 2021, Mr. John Strausser, the former Chief Financial Officer, of Sklarco was deposed. Mr. John Strausser stated the following showing that it will be near impossible to get a proper accounting for any royalty interest owner given the Debtors' lack of financial controls. Mr. Strausser acknowledges that royalty funds were used to pay the Debtors' bills and commingled in the operating account even if the funds were attributable to non-debor working interest owners like the Trust. *See,* John Strausser Deposition Transcript, **Exhibit G,** p. 18:2-7; 37:1-21; 38:13-14; 48-49: 15-1. The CFO testified, paraphrasing, that he was uncomfortable with the Debtors' lack of property financial controls and misuse of the revenue account to pay company overhead costs and bills. *See*, **Exhibit G**, p. 59:7-22. The Debtor improperly used funds advanced by working interest owners and monies in the revenue account to pay the Debtor's operating expenses.

24. The Trust's administrative/cure claim seeks recovery of the amounts that were deducted from the Trust during the post-petition period.

25. The Table below is a summary of the deductions shown by the Statements included in Exhibit D related to revenue that was for the pre-confirmation time period. The Trust received

substantial deductions to its account post-petition while not even aware there was a bankruptcy pending:

| SUMMARY DEDUCTIONS TAKEN FROM TRUST DURING THE POST-PETITION TO EFFECTIVE DATE PERIOD (See, Exhibit D) | | | |
|---|---|---|---|
| MONTH/YEAR | DEDUCTION | NOTES | |
| April 2020 | $17,498.32 | | |
| May 2020 | $14,983.43 | | |
| June 2020 | $9,736.06 | | |
| July 2020 | $8,296.12 | | |
| August 2020 | $12,867.48 | | |
| September 2020 | $11,107.45 | | |
| October 2020 | $17,702.98 | | |
| November 2020 | $18,043.37 | | |
| December 2020 | $13,243.28 | | |
| January 2021 | $17,871.65 | | |
| February 2021 | $11,885.35 | | |
| March 2021 | $27,588.54 | | |
| April 2021 | $26,405.70 | | |
| May 2021 | $34,791.46 | | |
| June 2021 | $19,057.56 | | |
| July 2021 | $22,335.81 | Trust learns about bankruptcy | |
| August 2021 | $37,165.29 | | |
| September 2021 | $23,143.52 | When July revenue would be paid | |
| **TOTAL** | **$343,723.37** | **$270,000 Administrative Service Fees** | **$73,723.32 Other Expenses Debtor has not provided any support for each line item in the statements** |

26. At a minimum, the Trust should receive a credit of $270,000 refunding the Administrative Service Fees and the Debtor should be required to provide support for the expenses that were assessed to the Trust given the prior testimony of the Debtor's CFO acknowledging a

8

lack of financial controls. The $270,000 represents the Administrative Service Fees assessed to the Trust during the Bankruptcy.

27. The December account statement shows the Trust has received shows a negative balance of $92,942.95 without even considering whether the expenses are property charged. *See,* **Exhibit H,** November 2021 Statement. As such, at a minimum, the negative balance should be offset by the $270,000 credit for management fees plus any unsupported expenses charged on the account. With no less than $177,057.05 refunded to the Trust. The Trust is open to considering other ways to structure the payment of the refund without requiring a cash payment to the Trust, but through an agreement to assume the ASA with modifications in order provide for the full cure payment by agreement.

## ARGUMENT AND AUTHORITIES

**A Credit/Refund for the Agent's Service Fee Plus Any Unsupported Expenses is a Reasonable and Pragmatic Resolution When an Agent Breaches Its Duty to Cure the Breach**

28. Sklarco put its own interests and the interests of Howard Sklar ahead of the Trust despite being the Trust's agent. Sklarco tried to conceal the bankruptcy from the Trust providing no notice to the Trust in the Bankruptcy. Further, the Debtors commingled funds and failed to implement proper financial controls for handling royalties without any notice to the Trust. Sklarco's actions were grossly negligent or willful and a breach of fiduciary duty. The Trust was owed a fiduciary duty by Sklarco to properly manage its oil and gas interests under the ASA.

29. In *Levy v. Levy*, 829 So. 2d 640 (La. App. 4 Cir. 2002), "[t]he trial court… properly subtracted from this sum the mandatary [agent] fee of $1,000 per month to which he was entitled. The court correctly began calculation of the fee on 2 February 1994, when the Levys executed the original procurations, and terminated the fee on 15 August 1995, the date Mrs. Levy revoked the

mandate." Similarly, in this case, the Trust propose to substract out the Agency Services Fee of $15,000 per month deducted from the Trust statements during the course of the bankrutpcy when there is no evidence that the Trust's own agent – the Debtor Sklarco – notified the Trust of the bankruptcy or financial improprieties.

30. The seminal Louisiana decision on agency is *Noe v. Roussel*, 310 So.2d 806 (La. 1975). The Court held that "an agent who acquires his principal's property or one who otherwise acts in a fiduciary capacity bears the burden of establishing that the transaction was an arms length affair. This means that the agent or fiduciary must handle the manner as though it were his own affair. It also means that the agent or fiduciary may not take even the slightest advantage, but must zealously, diligently and honestly guard and champion the rights of his principal against all other persons whom so ever, and is bound not to act with antagonism, opposition or conflict with the interest of the principal to even the slightest extent". Here Sklarco breaches its fiduciary duty by keeping the Trust in the dark about the bankruptcy and by knowingly commingling funds and failing to adopt proper financial controls.

31. Sklarco did not deal fairly and equitably with the Trust as compared to others like Howard Sklar which was a breach of its duty to deal fairly and honestly. The other Trusts that had similar ownership to the Trust but were subject to a different ASA received notice of the bankrutpcy and were kept informed while the Trust was kept in the dark. The Court found in *Thibaut v. Thibaut*, 607 So.2d 587 (La. App. 1 Cir. 1992), writs denied, 612 So.2d 101, 612 So.2d 37, 38 (La. 1993), that partners have a duty to deal fairly and honestly with each other, and each partner must refrain from taking any advantage of the other partners by the slightest misrepresentation or concealment of material facts. Full and complete disclosure of all important information is required. This is true even if the relationship between the partners have become

strained or in conflict. In the present case, the Trust was not a partner of the Debtor but the Debtor was its agent, and the Debtor was the agent for similarly situated Trusts. However, the Debtors only omitted the Maren Silberstein Revocable Trust from all discussions and notice of the bankruptcy despite the fact that the Bankruptcy was pending for well over a year by the time a creditor reached out to tell the Trust about the Bankruptcy. The Trust was not dealt with fairly or honestly, and the Debtors attempted to take advantage for the benefit of Howard Sklar and others.

32. The Trust asserted its rights under La. R.S. §31:137 and La. R.S. 31:140 (reasonable attorneys' fees in collection of this matter and double damages for failure to pay royalty).

33. Further, the Court has the discretion of awarding damages of double the amount of the royalties due. Louisiana Mineral Code Article 140 gives the trial court great discretion in awarding damages of double the amount of royalties due, but does not mandate that any award be given in excess of the royalties due. *O'Neal v. JLH Enterprises, Inc.,* 862 So.2d 1021 (2003).

## PRAYER

The Trust requests that the Court grant the administrative claim for $270,000 plus any other additional expenses assessed by the Debtor without proper supporting documentation to support the monthly statements if the parties cannot reach an agreement on the administrative/cure claim and amounts needed to cure Sklarco's breach of the ASA. The Trust further requests any other relief the Court deems fair and equitable.

## RESERVATION OF RIGHTS

The Trust reserves its right to modify and supplement this Application. This Application is being filed out of an abundance of caution given the Administrative Claim deadline. The cure amounts and administrative claim amounts overlap.

DATED: February 1, 2022

Respectfully submitted,

By: */s/ Deirdre Carey Brown*
    DEIRDRE CAREY BROWN,pllc
    FORSHEY & PROSTOK LLP
    1990 Post Oak Blvd Suite 2400
    Houston, Texas 77056
    Telephone: 832.367.5722
    dbrown@forsheyprostok.com

ATTORNEY FOR MAREN SILBERSTEIN REVOCABLE TRUST

**CERTIFICATE OF SERVICE**

On February 1, 2022, the attached response was filed via ecf on the Reorganized Debtors, Mr. Sklar's counsel, and all other parties registered to receive ECF notice.

*/s/ Deirdre Carey Brown*
DEIRDRE CAREY BROWN