# EXHIBIT G

## In the Matter Of:

In re: Sklar Exploration Company Inc. & Sklarco LLC, debtor

### 30(B)(6) JOHN STRAUSSER

*October 13, 2021*

*Job Number: 810707*

MSTrust_007066

1           UNITED STATES BANKRUPTCY COURT
             FOR THE DISTRICT OF COLORADO

2

   Case No. 20-12377 EEB Chapter 11
3         20-12380 EEB Chapter 11

4    Jointly Administered Under Case No. 20-12377 EEB

5   ———————————————————————————————————————

   VIDEO-RECORDED 30(b)(6) DEPOSITION OF:  JOHN STRAUSSER
6   - October 13, 2021

7   ———————————————————————————————————————

   In re:
8

   Sklar Exploration Company, LLC,
9   Debtor

10   ———————————————————————————————————————

11   In re:

12   Sklarco, LLC,
   Debtor
13   ———————————————————————————————————————

14

15         PURSUANT TO NOTICE AND AGREEMENT, the

16   video-recorded deposition of JOHN STRAUSSER was taken

17   at 600 17th Street, Suite 2150 - South, Denver,

18   Colorado on behalf of The Rudman Partnership on

19   October 13, 2021, at 10:10 a.m., before Anne Marie

20   Hamill, RPR, and Notary Public within Colorado.

21

22

23

24

25

MSTrust_007067

```
 1                    A P P E A R A N C E S

 2

 3    For The Rudman              BARNET B. SKELTON, JR., ESQ.
      Partnership:                via Zoom
 4                                Maynes, Bradford, Shipps &
                                  Sheftel, LLP
 5                                815 Walker
                                  Suite 1502
 6                                Houston, TX  77002
                                  (713) 516-7450
 7                                barnetBJR@msn.com

 8    For The Rudman              WILLIAM TREY SIBLEY, III,
      Partnership:                ESQ., via Zoom
 9                                1700 Pacific Avenue
                                  Suite 4700
10                                Dallas, TX 75201
                                  (214) 222-3900
11
      For Sklar Enterprises       KERI RILEY, ESQ.
12    and Sklarco:                Kutner Brinen Dickey Riley,
                                  P.C.
13                                1660 Lincoln Street
                                  Suite 1720
14                                Denver, CO  80264
                                  (303) 832-2400
15                                KLR@KutnerLaw.com

16    For ad hoc Committee        CHARLES GREENHOUSE, ESQ., via
      of Working Interest         Zoom
17    Owners:                     Moye White LLP
                                  1400 16th Street
18                                6th Floor
                                  Denver, CO 80202-1486
19                                (303) 292-7943
                                  charles.greenhouse@moyewhite.
20                                com

21    For Tom Kim:                CHRISTOPHER D. JOHNSON, ESQ.,
                                  via Zoom
22                                Munsch Hardt Kopf & Harr,P.C.
                                  700 Milam Street
23                                Suite 2700
                                  Houston, TX 77002
24                                (713) 222-4096
                                  cjohnson@munsch.com
25
```

30(B)(6) JOHN STRAUSSER - 10/13/2021

```
                                                          Page 3
 1               A P P E A R A N C E S, Continued

 2
        For East West Bank:         BRYCE A. SUZUKI, ESQ. via
 3                                  Zoom
                                    Snell & Wilmer
 4                                  400 E Van Buren Street
                                    #1900
 5                                  Phoenix, AZ 85004-2202
                                    (602) 382.6267
 6                                  Bsuzuki@swlaw.com

 7      For the Silberstein         DEIDRE CAREY BROWN, ESQ., via
        Trust:                      Zoom
 8                                  ForsheyProstok, LLP
                                    1990 Post Oak Boulevard
 9                                  Suite 2400
                                    Houston, TX 77056
10                                  (832) -536-6910
                                    Dbrown@forsheyprostok.com
11
        Also Present:              Cole Bartelt, CLVS, via Zoom
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

30(B)(6) JOHN STRAUSSER - 10/13/2021

```
                                                              Page 4
 1                       I N D E X

 2                                                            PAGE
       EXAMINATION OF JOHN STRAUSSER:
 3     October 13, 2021

 4     By Mr. Skelton:                                           9
       By Ms. Riley:                                            65
 5     By Mr. Sibley:                                           --
       By Mr. Greenhouse:                                       --
 6     By Mr. Johnson:                                          --
       By Mr. Suzuki:                                           --
 7     By Ms. Brown:                                            --

 8
                                                         INITIAL
 9     DEPOSITION EXHIBITS                               REFERENCE

10     Exhibit 1     Notice of Deposition By the Rudman     7
                     Partnership of Debtors Pursuant to
11                   Fed. R. Bankr. P. 7026, 7030, and
                     9014, and Fed. R. Civ. P. 30(B)(6)
12                   (RUD-DEPO 00001-00007)

13     Exhibit 2     The Rudman Partnership's Application    7
                     For Administrative Expense Priority
14                   Claim Pursuant to 11 U.S.C. § 503(B)
                     (RUD-DEPO 00008-00016)
15
       Exhibit 3     East West Bank Statement For Sklar    14
16                   Exploration Company LLC
                     Revenue Account Dated March 1 to 31,
17                   2020 (Rud-Depo 00017-00090)

18     Exhibit 4     East West Bank Statement For Sklar    14
                     Exploration Company LLC Chapter 11
19                   Debt or in Possession Case #20-12377
                     Revenue Account Dated April 1 to
20                   April 30, 2020 (Rud-Depo 00091-00115)

21     Exhibit 5     East West Bank Statement For Sklar    14
                     Exploration Company LLC
22                   Chapter 11 Debtor in Possession
                     Case #20-12377
23                   Revenue Account Dated May 1 to May
                     30, 2020 (RUD-DEPO 00116-00239)
24

25
```

```
                                                        Page 5
 1                      I N D E X, Continued

 2                                                    INITIAL
       DEPOSITION EXHIBITS                           REFERENCE
 3
       Exhibit 6    East West Bank Statement For Sklar      15
 4                  Exploration Company LLC Operating
                    Account Dated March 1 to 31, 2020
 5                  (RUD-DEPO 00240-000262)

 6     Exhibit 7    East West Bank Statement for Sklar      15
                    Exploration Company LLC
 7                  Chapter 11 Debtor in Possession
                    Case #20-12377 Operating Account
 8                  Dated April 1 to April 30, 2020
                    (RUD-DEPO 00263-00273)
 9
       Exhibit 8    Sklar Exploration Co., LLC Company      21
10                  Distributions To Suspense Report
                    (RUD-DEPO 00274)
11
       Exhibit 9    Sklar Exploration Co., LLC             32
12                  Revenue/Billing Owner Summary
                    (RUD-DEPO 00275-00299)
13
       Exhibit 10   From: Sklar Exploration Co., LLC For    40
14                  Checks Dated 01/29/2021
                    To: The Rudman Partnership (RUD-DEPO
15                  00300-00311)

16     Exhibit 11   Sklar Exploration Co., LLC             26
                    Revenue/Billing Owner Summary
17                  (RUD-DEPO 00312-00335)

18     Exhibit 12   Sklar Exploration Company, LLC Cash     55
                    Analysis
19
       Exhibit 13   February Revenue Payable Estimate       62
20
       Exhibit 14   Sklar Exploration Company, LLC and      62
21                  Sklarco, LLC Monthly Operating Report
                    For Period End Date: 4/30/2020
22                  (RUD-DEPO 00336-00429)

23     Exhibit 15   Sklar Exploration Company, LLC and      62
                    Sklarco, LLC Monthly Operating Report
24                  For Period End Date: 5/31/2020
                    (RUD-DEPO 00430-00513)
25
```

30(B)(6) JOHN STRAUSSER - 10/13/2021

Page 6

```
 1                      I N D E X, Continued

 2
                                                    INITIAL
 3  DEPOSITION EXHIBITS                           REFERENCE

 4  Exhibit 16   Third Interim Order Authorizing Use        50
                 of Cash Collateral (RUD-DEPO
 5               00514-00518)

 6  (Attached to original and copy transcripts.)

 7
    PREVIOUSLY MARKED DEPOSITION                    INITIAL
 8  EXHIBITS:                                      REFERENCE
    (None)
 9

10  INFORMATION REQUESTED:
    (None)
11
    QUESTIONS INSTRUCTED NOT TO ANSWER:
12  (None)

13

14

15

16

17

18

19

20

21

22

23

24

25
```

30(B)(6) JOHN STRAUSSER - 10/13/2021

1              WHEREUPON, the following proceedings were

2       taken pursuant to the Colorado Rules of Civil

3       Procedure.

4              (Deposition Exhibits 1 and 2 were marked.)

5              THE VIDEOGRAPHER:  This is the beginning of

6       media number one in the deposition of John Strausser,

7       In re:  Sklar Exploration, Inc. and Sklarco, LLC,

8       debtor, held via Zoom video conference on Wednesday,

9       October 13th, 2021 at 10:10 a.m.  The court reporter is

10      Anne Marie Hamill.  I am Cole Bartelt, the

11      videographer, an employee of Litigation Services.  This

12      deposition is being recorded at all times unless

13      specified to go off the video record.

14             Would all present please identify themselves

15      beginning with the witness.

16             THE DEPONENT:  John Strausser.

17             MS. RILEY:  Keri Riley appearing on behalf of

18      Sklar Exploration Company and Sklarco.

19             THE REPORTER:  That was breaking up.  I

20      didn't hear the first person.

21             MR. SUZUKI:  Bryce Suzuki appearing on behalf

22      of East West Bank.

23             THE REPORTER:  Mr. Skelton -- there it went.

24             (Pause in the proceedings.)

25             THE VIDEOGRAPHER:  We're back.  Give me one

Page 8

```
 1   second.  I'll place us on the record again for take

 2   two.

 3            This is beginning of media number one in the

 4   deposition of John Strausser in the matter of In re:

 5   Sklar Exploration Company, Inc. and Sklarco, LLC,

 6   debtor, held via Zoom video conference on Wednesday

 7   October 13th, 2021 at 10:12 a.m.  The court reporter is

 8   Anne Marie Hamill.  I am Cole Bartelt, the

 9   videographer, an employee of Litigation Services.  This

10   deposition is being recorded at all times unless

11   specified to go off the video record.  Would all

12   present please identify themselves beginning with the

13   witness.

14            THE DEPONENT:  John Strausser.

15            MS. RILEY:  Keri Riley appearing on behalf of

16   Sklar Exploration Company and Sklarco.

17            MR. SKELTON:  Barnet Skelton on behalf of the

18   Rudman Partnership.

19            MR. SUZUKI:  Bryce Suzuki on behalf of East

20   West Bank.

21            MR. GREENHOUSE:  Charles Greenhouse on behalf

22   of the ad hoc Committee of Working Interest Owners.

23            MR. JOHNSON:  Chris Johnson on behalf of Tom

24   Kim, the post confirmation trustee.

25            MS. BROWN:  Deidre Carey Brown on behalf of
```

30(B)(6) JOHN STRAUSSER - 10/13/2021

Page 9

1    Maren Silberstein Trust.

2            THE VIDEOGRAPHER:  Will the court reporter

3    please swear in the witness.

4            THE REPORTER:  Please raise your right hand,

5    sir.

6                    JOHN STRAUSSER,

7    having been first duly sworn to state the whole truth,

8    testified as follows:

9            THE REPORTER:  Thank you, sir.

10           And can I just say I think there are other

11   people that on the Zoom connection with us.  If anyone

12   hasn't introduced themselves, would they do so now,

13   please.

14           MR. SIBLEY:  Trey Sibley with the Rudman

15   Partnership in Dallas, Texas.

16           THE REPORTER:  Thank you, sir.

17           Mr. Skelton, we're ready.

18                    EXAMINATION

19   BY MR. SKELTON:

20       Q.   Okay.  All right.  State your full name for

21   the record, please, sir.

22       A.   John Michael Strausser.

23       Q.   All right.  Mr. Strausser, where do you

24   currently reside, what city and state?

25       A.   Broomfield, Colorado.

30(B)(6) JOHN STRAUSSER - 10/13/2021

Page 10

1        Q.    Okay.  Now, what is your current place of
2   employment?
3        A.    I work for Postlewaite & Netterville.
4        Q.    Could you spell that out for the reporter.
5        A.    Sure.  P-o-s-t-l-e-w-a-i-t-e, and
6   Netterville, N-e-t-t-e-r-v-i-l-l-e.
7        Q.    All right.  And what kind of professional
8   services do you provide for that entity?
9        A.    It's a public accounting firm.
10       Q.    Okay.  Is there any particular kind of
11   accounting work that you perform?
12       A.    I'm in the audit department.
13       Q.    Okay.  And what kind of companies do you
14   audit?
15       A.    Commercial entities of all sorts.
16       Q.    Okay.  Am I correct that Postlewaite, if I
17   can just use the first name, is headquartered in Baton
18   Rouge, Louisiana?
19       A.    That's correct.
20       Q.    Do you also have a residence in Baton Rouge?
21       A.    I do not.
22       Q.    Okay.  So, at least, for the time being, is
23   it your intention to be working from Colorado?
24       A.    For the most part I work from Colorado,
25   that's correct.

30(B)(6) JOHN STRAUSSER - 10/13/2021

1      Q.   Okay.  Well, the reason I'm getting around to

2   this is, of course, that you were once the chief

3   financial officer for Sklar Exploration and Sklarco,

4   correct?

5      A.   That's correct.

6      Q.   All right.  And you're no longer acting in

7   that capacity, but you've agreed to appear here as a

8   witness on behalf of Sklarco and Sklar Exploration,

9   correct?

10     A.   That's correct.

11     Q.   All right.  So let's go a little bit into the

12  background of your employment.  Tell me when you were

13  first employed by, let's just say, the Sklar entities?

14     A.   My first day with Sklar was November 11th,

15  2019.

16     Q.   Okay.  And tell me what position you were

17  hired to fill in November of 2019 for Sklar?

18     A.   The controller position.

19     Q.   Okay.  And can you describe what the duties

20  and responsibilities of the controller of Sklar was?

21  And I'm going to use Sklar for right now to talk about

22  both Sklarco and Sklar Exploration.  If I decide to

23  talk about Sklar Exploration only, I'm going to use the

24  acronym S-E-C; is that okay?

25     A.   Sure.

Page 12

1      Q.   All right.  And if I refer to Sklarco, I'm

2   going to refer to Sklarco.  And collectively I'll say

3   Sklar.  So what was your job description as controller

4   for Sklar?

5      A.   To -- I was in charge of accounting,

6   financial reporting, and treasury functions.

7      Q.   I think you, at least, for me, at least, slow

8   down a little bit.  Would you repeat that phrase again.

9      A.   Accounting, financial reporting, and treasury

10   functions.

11      Q.   Okay, okay.  What kind of financial reporting

12   did you do for the Sklar entities?

13      A.   Periodic financial statements that would be

14   presented to primarily our lender, East West Bank.

15      Q.   Okay.  Now, in terms of reporting, this was a

16   closely held company, wasn't it?

17      A.   Yes, sir.

18      Q.   And the sole shareholder was either -- was it

19   Harris Sklar or Howard Sklar Trust?

20      A.   Yes, sir.

21      Q.   Okay.  So you didn't have to report to the

22   SEC or any kind of state or federal regulatory official

23   like that?

24      A.   That's correct.

25      Q.   Okay, all right.  Well, tell me what treasury

MSTrust_007078

Page 13

1   functions you performed?

2       A.   You know, I would call that accounts payable

3   and accounts receivable.  I oversaw those functions.

4       Q.   Okay, all right.  And in the course and scope

5   of performing those functions as controller, did you

6   become familiar with the accounting system and

7   capabilities of Sklar?

8       A.   Yes.

9       Q.   All right.  And did you become familiar with

10  the various bank accounts maintained by Sklar and, I

11  mean, SEC and Sklarco separately at East West Bank?

12      A.   Yes.

13      Q.   All right.  And when you came to Sklar, were

14  there any particular issues you were being asked to

15  address that, for want of a better term, had to do with

16  its current financial condition?

17      A.   No.

18      Q.   All right.  Well, did you become -- were you

19  aware when you were hired, or did you become aware that

20  Sklar was having, shall we say, financial difficulties?

21      A.   I became aware.

22      Q.   Okay.  And were you asked to do anything or

23  make any recommends to address those financial

24  difficulties?

25           MS. RILEY:  Object to the extent it asks for

30(B)(6) JOHN STRAUSSER - 10/13/2021

Page 14

1    anything that could be considered privileged as well.

2              You can answer.

3         Q.   (BY MR. SKELTON)  You may answer.

4         A.   Can you repeat your question?

5         Q.   Yeah.  I mean, were you asked to make any

6    recommendations about how to handle Sklar's financial

7    difficulties in late 2019?

8              MS. RILEY:  Same objection.

9         A.   No, I was not.

10        Q.   (BY MR. SKELTON)  Okay.  Now, and I

11   recognize -- is it fair to say that you came in and had

12   to jump in the deep end and become immediately familiar

13   with as much as possible as soon as possible about

14   Sklar?

15        A.   Yes.

16        Q.   All right.  And I would like for you to --

17   we're going to briefly go through the list of exhibits.

18   But first I want to turn your attention to Exhibits 3,

19   4, and 5.

20             (Deposition Exhibits 3, 4, 5 were marked.)

21        Q.   (BY MR. SKELTON)  You don't need to open

22   them.  But are you familiar with a bank account

23   maintained by SEC at East West Bank called the revenue

24   account?

25        A.   Yes.

Page 15

1          (Deposition Exhibits 6 and 7 were marked.)

2      Q.   (BY MR. SKELTON)  All right.  And if you'll

3  look at Exhibits 6 and 7, just, sort of, on the index,

4  I have the March and April 2020 operating accounts.  Do

5  you see those are listed?

6      A.   Yes.

7      Q.   All right.  So am I correct that the revenue

8  account was the account into which was received

9  revenues payable by oil or gas purchasers to, either,

10 Sklarco or other working interest owners who are not

11 affiliated with, either, Sklarco or SEC?

12     A.   That's the account where revenues were

13 received.

14     Q.   Okay.  Can you think of any instance in which

15 revenues of that sort were -- that were payable to

16 non-debtor working interest owners were directly

17 deposited into the operating account?

18     A.   No.

19     Q.   All right.  And is it also correct that SEC

20 owned no oil or gas wells?

21     A.   That's correct.

22     Q.   Is it correct that SEC itself never received

23 any revenues from any oil or gas well?

24          MS. RILEY:  Object to the form, vague.

25          You can answer.

30(B)(6) JOHN STRAUSSER - 10/13/2021

Page 16

1        Q.   (BY MR. SKELTON)  Let me put it another way.

2   SEC had no interest in oil or gas from which it had any

3   right to revenues, did it?

4        A.   That's correct.

5        Q.   All right.  And to the extent that any Sklar

6   entity had any interest in oil or gas or oil or gas

7   revenues, it was Sklarco, correct?

8        A.   Yes.

9        Q.   All right.  So let's back up a little bit and

10  go into the world of Sklar entities before the

11  bankruptcy was filed.  Is it correct that as and when

12  revenues were received from purchasers or production,

13  the money was deposited in the revenue account?

14       A.   Yes.

15       Q.   And is it also true that for the most part

16  those revenues were wire transferred by the various

17  purchasers of production?

18       A.   Yes.

19       Q.   All right.  And that included, both,

20  non-debtor working interest owners revenues and

21  revenues payable to Sklarco, correct?

22       A.   Yes.

23       Q.   All right.  Now, walk me through what

24  happened?  And again, I'm talking about prior to the

25  bankruptcy filing.  Is it not true that upon receipt

**out of the revenue account, royalties were paid and taxes to, severance taxes, typically, were paid?**

A. Yes.

**Q. All right. And often times those severance taxes were wired directly to the taxing authorities, correct?**

A. That was the norm.

**Q. Okay. And then is it not correct that the net after payment of royalties and severance taxes were paid, either, by wire transfer or check directly out the revenue account to the working interest owners?**

A. That's correct.

**Q. All right. Can you think of any instance prior to April 1st, 2020, which is the bankruptcy petition date, that revenues were not paid to working interest owners, other than for reasons like they hadn't provided you with proper payment instructions or something like that?**

A. The January revenues to working interest owners, which when I say that, I mean, January revenue attributable to January production was not paid to working interest owners prior to the filing.

**Q. And that's money that came in late March of 2020, correct?**

A. No, sir. That would have came in in late

30(B)(6) JOHN STRAUSSER – 10/13/2021

Page 18

1    February.

2         Q.    Okay.  And why wasn't that money paid?

3         A.    There was insufficient money in the revenue

4    account to pay those.

5         Q.    And why was there insufficient money in the

6    revenue account?

7         A.    That money was used to pay the bills --

8         Q.    Okay.

9         A.    -- of operations.

10        Q.    And when was it you used to pay the bills?

11              THE REPORTER:  I'm sorry, sir.  Repeat your

12    question, please.

13        Q.    (BY MR. SKELTON)  When was that money used to

14    pay the bills?

15        A.    Shortly after it was received.

16        Q.    Okay.  And so we can go to the -- let's,

17    actually, go to the -- it's Exhibit 3.  That's the

18    March 2020 SEC revenue statement.

19        A.    I have it up.

20        Q.    Revenue account.

21        A.    (Witness nods.)

22        Q.    Can you see that?

23        A.    I can.

24        Q.    All right.  And do you see in the area of

25    deposits that there were funds that were received from

30(B)(6) JOHN STRAUSSER - 10/13/2021

Page 19

 1    Goodway Refining and various purchases of production in

 2    March of 2020?

 3        A.    I do.

 4        Q.    All right.  And are you saying that not all

 5    of that money was paid out to the working interest

 6    owners to whom the funds should have been payable?

 7        A.    That is correct.

 8        Q.    And do you have a record of what funds that

 9    constituted?  In other words, is there a means of

10    identifying what working interest owners weren't paid

11    and how much they weren't paid?

12              MS. RILEY:  Object to the form to the extent

13    that you're asking him individually versus him as a

14    representative of the company.

15              You can answer.

16        A.    Yes.  A record of amounts owed to working

17    interest and other parties is created in the month

18    following receipt of revenue when what is -- when the

19    revenue cycle is run with the accounting system.

20        Q.    (BY MR. SKELTON)  Okay.  Now, is it also true

21    that in -- late in the month of March, substantial

22    funds were received into the revenue account that had

23    not been spent as of the bankruptcy petition date?

24        A.    Yes, there were.  There were funds in the

25    revenue account --

30(B)(6) JOHN STRAUSSER - 10/13/2021

Page 20

1     Q.   All right.

2     A.   -- at the petition date.

3     Q.   Fine.  And is it correct that one of the

4  first expenditures of funds out of the revenue account

5  on the petition date was a payment of $800,000 to

6  Sklarco?

7     A.   Yes.

8     Q.   All right.  And did that money, actually, go

9  to Sklarco, or did it go into the operating account?

10     MS. RILEY:  Objection to form, vague.  Which

11  operating account?

12     Q.   (BY MR. SKELTON)  The SEC operating account.

13     A.   I would need to look back at the records.

14     Q.   But it either went to -- it either went to

15  Sklarco or it went to the SEC operating account,

16  correct?

17     A.   That's correct.

18     Q.   Because you testified previously in a cash

19  collateral hearing that, basically, without SEC's

20  ability to use Sklarco's revenues it couldn't survive?

21     A.   That's correct.

22     Q.   Now, is it also true that subsequent to the

23  filing of the bankruptcy petition that funds that would

24  have been attributable to working interest owners and

25  payable to them was not paid to the working interest

 1    owners particularly in the month of April?

 2              MS. RILEY:  Object to form, vague.  Are we

 3    talking about revenues received for the month of April

 4    as in production of the month of April?

 5         Q.   (BY MR. SKELTON)  No.  No.  I'm talking about

 6    revenues that were, shall we say, in the kitty, in the

 7    SEC revenue account as of the bankruptcy filing date,

 8    those funds, which otherwise would have been payable to

 9    the non-debtor working interest owners were not paid,

10    were they?

11         A.   Can you repeat the question, please?

12         Q.   Right, okay.  We just talked about the

13    process by which money was received from Goodway and

14    the various purchasers of production, and if everything

15    went correctly, the money was paid to pay royalties and

16    severance taxes first, and then the funds were

17    distributed to the working interest owners, weren't

18    they?

19         A.   Yes.

20         Q.   All right.  That did not happen in April, did

21    it?

22         A.   It did not.

23              (Deposition Exhibit 8 was marked.)

24         Q.   (BY MR. SKELTON)  All right.  Now, I'd like

25    you to turn to Exhibit Number 8, please.  You might

Page 22

1  want to open that.

2      A.   Sure.

3      Q.   Now, are you familiar with this exhibit?

4      A.   Okay, yes.

5      Q.   All right.  And were you involved in its

6  preparation?

7      A.   I was.

8      Q.   Okay.  Tell me what Exhibit 8 depicts?  What

9  is it?

10     A.   This depicts revenue from the sale of

11 products that would have been owed or owing to the

12 Rudman Partnership that had not been paid as of March

13 31st, 20 -- oh, through the date of the generation of

14 the report.

15     Q.   Okay.  Well, the thing, I guess, I'm confused

16 about is it says, distribution date and times through

17 3/31/21.  But if you then look over on the far

18 right-hand column, you'll see description date time

19 3/22/20.  And then it will, typically, be followed a

20 couple lines down with 04/29/20.  Can you explain that,

21 please?

22     A.   I cannot.

23     Q.   Okay.  Would it -- and who -- if you cannot,

24 who can?

25     A.   That would be Sklar's revenue or JIB

Page 23

 1   accountant.

 2          Q.    Okay.  And who was that?

 3          A.    I don't know.

 4          Q.    Well, who was it when you were there?

 5          A.    It was Julie Smith.

 6          Q.    And is she in Shreveport or Boulder?

 7          A.    Shreveport.

 8          Q.    Okay.  You don't know whether she stills

 9   works for the company?

10          A.    I do not.

11          Q.    Well, thinking about your experience, first

12   of all, is it true that what this exhibit shows as one

13   goes down the property and property name columns, is it

14   shows the names of various units or oil and gas wells

15   or prospects from which revenues were payable, correct?

16          A.    Correct.

17          Q.    And it shows for each and every one there's

18   an acronym for, for instance, the Brooklyn Field and it

19   looks like there's, at least, a `couple of them,

20   Southeast and Southwest Brooklyn Oil Unit.  It shows

21   the invoice number.  It shows the revenue percentage

22   that Rudman had in each one down to, it looks like, at

23   least, eight decimals, the gross and the net amount,

24   correct?

25          A.    That's correct.

Page 24

1    Q.   Let's just go ahead and pick one.  Let's --

2  you see under the gross amount the first number there

3  which is 27,000, the first large amount, 27,579.80.  Do

4  you see that?  Working down from the top.

5    A.   I do.

6    Q.   Okay.  And then it shows a net amount of

7  24,391.99.  Do you see that?

8    A.   I do.

9    Q.   Okay.  Tell me what -- what was subtracted

10  from the gross amount to arrive at the net amount?

11    A.   I'm not sure.

12    Q.   Okay.  Well, is it likely that it was

13  royalties and severance taxes or those have already

14  been detected to come up with the gross?

15    A.   I believe, although I'm not sure, that it

16  would be severance tax.

17    Q.   Okay, all right.  And do those figures, let's

18  say just say the net amount, does that reflect the

19  amount after both severance and royalties, or do you

20  know?

21    A.   I believe that's the case.

22    Q.   Okay, all right.  So the net column shows the

23  amount that would have been represented by a jacket at

24  the appropriate payment date to the Rudman Partnership?

25    A.   Correct.

Page 25

1    Q.   And what is the amount, if you go down the

2    column for net amount, that should have been payable,

3    it looks like by the end of April of 2020, to the

4    Rudman Partnership?

5    A.   $265,871.05.

6    Q.   Okay.  And what we haven't really discussed

7    is the purpose of a distribution to suspense.  This is

8    called, and this is Sklar Exploration, LLC Distribution

9    to Suspense Report, correct?

10   A.   Yes.

11   Q.   All right.  Tell me what it means to make a

12   distribution to suspense and why there would be a

13   distribution to suspense?

14        MS. RILEY:  Object to form, compound.

15        You can answer.

16   Q.   (BY MR. SKELTON)  You may answer.

17   A.   So this would be when an amount has been

18   calculated, in other words, the revenue cycle has been

19   run to determine the amount payable to an owner, but it

20   was suspended or not paid.

21   Q.   Okay.  And why was it suspended or not paid?

22   A.   Because there were insufficient funds to pay

23   those amounts.

24   Q.   Okay.  And the money that was used by SEC and

25   Sklarco was to pay the expenses of operating the

30(B)(6) JOHN STRAUSSER – 10/13/2021

Page 26

1    debtors, wasn't it?

2          A.   Yes.

3          Q.   All right.  And there are different kinds of

4    suspense accounts in my experience.  But does this mean

5    that -- it, obviously, does not mean that there is a

6    sum of money that you salted away in a segregated

7    account for Rudman, is there?

8          A.   That's correct.

9          Q.   It means the money is gone?

10         A.   That's correct.

11              (Deposition Exhibit 11 was marked.)

12         Q.   (BY MR. SKELTON)  All right.  Now, let's turn

13   now to another exhibit that is similar.  Okay.  Turn to

14   Exhibit 11, please.

15         A.   Okay.

16         Q.   Are you familiar with this document?

17         A.   Yes.

18         Q.   And did -- did you -- were you involved in

19   its preparation?

20         A.   Yes.

21         Q.   All right.  Now, over against the left-hand

22   margin there are initials and numbers.  Am I correct

23   that these initials and numbers are unique to each

24   person with an ownership interest in oil and gas,

25   whether it be working interest or royalty interest or

Page 27

1   whatever?

2       A.   That's correct.

3       Q.   Okay.  If you would turn down, and I will say

4   you can do it either by -- actually, I'll give you the

5   page number.  That will be easier.  See those big page

6   numbers on the bottom of the page on the right --

7       A.   I do.

8       Q.   -- in red?

9            Go to page 329.  All right.  And against --

10  you can see that when you go to the R-U-D on the left

11  hand -- there are several R-U-D acronyms, but go to the

12  one that says R-U-D-P 01.

13      A.   Okay.

14      Q.   All right.  And is that not the acronym or

15  the owner number for the Rudman Partnership, even

16  though they chopped off part of the name?

17      A.   Yes, it is.

18      Q.   Okay.  And explain to me what the columns, I

19  mean the -- for instance, there is a column that says

20  New A/R Balance, and it says $28,033.03, what would

21  that be?

22      A.   That would be the amount of unpaid JIBs from

23  the Rudman Partnership.

24      Q.   Um-hmm, okay.  Then you have current revenue.

25  And this is in a period from 3/31/20 to 4/25/20,

30(B)(6) JOHN STRAUSSER - 10/13/2021

Page 28

1   116,957.41.  Do you see that?

2        A.   Okay.

3        Q.   And the next is the column From, paren, To

4   Suspense.

5        A.   Yes.

6        Q.   And then over on the right-hand column, it's

7   the same number we looked at on the other form, isn't

8   it, 265,871.05?

9        A.   That's right.

10       Q.   Okay.  Can you tell me what the column

11  Current Revenue, what does that mean?  The one that has

12  the number 116,957.41.

13       A.   I believe that would be the amount owing to

14  the Rudman Partnership in that current month.

15            THE REPORTER:  In that --

16       Q.   (BY MR. SKELTON)  What about the From (To)

17  Suspense column, 148,913.64?

18            MS. RILEY:  Hold on, Mr. Skelton.  The

19  reporter had a question.  So we're going to answer that

20  first.

21            MR. SKELTON:  I can't hear her.

22            THE REPORTER:  I don't know where I lost it.

23  Just one minute.  I believe that would be the amount

24  owing to the Rudman Partnership in to the current

25  moment?

Page 29

1           THE DEPONENT:  For the current month.

2           THE REPORTER:  Thank you.

3           MS. RILEY:  Sorry, if you could just re-ask

4    your question.

5       Q.    (BY MR. SKELTON)  Okay.  So to the best of

6    your knowledge, the current revenue means for the

7    current month?

8       A.    Yes, sir.

9       Q.    Okay.  And that 116,957.41, was that paid to

10    the Rudman Partnership?

11       A.    I'm not sure.

12       Q.    Okay.  The 148,913.64, that's in the From,

13    paren, To Suspense column, and when I say to I mean

14    t-o, of 148,913.64, was that amount of money paid to

15    Rudman?

16       A.    I believe those are prior payable amounts

17    that were in and remained in suspense.

18       Q.    Okay.  But the total amount on the right-hand

19    column, you're competent that that amount of money is

20    an amount of money that is owed to Rudman that was not

21    paid to Rudman?

22       A.    Yes, sir.

23       Q.    Okay.  Now, am I correct that this particular

24    exhibit, Exhibit 11, would contain the information for

25    all working interest owners or royalty owners who

30(B)(6) JOHN STRAUSSER - 10/13/2021

Page 30

1   weren't paid what they were due by SEC in this -- in

2   the particular time period involved?

3       A.   I believe so.

4       Q.   Okay.  Why don't you go to page 334.

5            MS. RILEY:  Mr. Skelton, while we're changing

6   the page, I'll just advise you we're getting a lot of

7   feedback.  I don't know if you're bumping the

8   microphone or something.  But we are just getting a

9   little bit of feedback on our end, too.

10           MR. SKELTON:  Okay.

11           MS. RILEY:  All right.  We're at that page.

12      Q.   (BY MR. SKELTON)  Okay.  Well, actually, why

13  don't we go to the next page, which is -- which would

14  be page 335.  And there is a -- the very first entry it

15  says checks, and then it says parenthesis, 189 checks.

16  And then there is an amount of money 2,275,281.05.  Do

17  you see that?

18      A.   I do.

19      Q.   And what does that mean?

20      A.   I believe that's the total of checks that

21  would have been written for -- for revenue.

22      Q.   But that were not written, correct?

23      A.   I believe so, but I'm not certain.

24      Q.   Okay.  Further down there's several -- there

25  is an area after delineating current revenue it says,

30(B)(6) JOHN STRAUSSER - 10/13/2021

Page 31

1   From and then, parenthesis, To Suspense.  And it has a

2   column that says From Petty Suspense and To Petty

3   Suspense, and To Legal Suspense.  What is the

4   difference between Petty Suspense and Legal Suspense?

5       A.   I believe Petty Suspense would be amounts

6   that were suspended due to insufficient funds.

7   Whereas, legal suspense would be attributable to

8   situations such as having a bad address for an owner,

9   or not having a signed division order, or things of

10  that nature.

11      Q.   Okay.  Is -- to the extent that there's

12  anyone else that would have been involved in the

13  preparation of this other than you, is Julie Smith the

14  person who, most likely, would have the most knowledge

15  about it?

16      A.   That's correct.

17      Q.   Okay.  There's not anybody else you can think

18  of that would have knowledge of this particular

19  exhibit?

20           THE REPORTER:  I'm sorry, counsel.  Counsel,

21  you're breaking up.  We didn't get that question.

22      Q.   (BY MR. SKELTON)  Is there any person, other

23  than Julie Smith who would have knowledge of the

24  matters set forth on Exhibit Number 11?

25      A.   No, not to my knowledge.

30(B)(6) JOHN STRAUSSER - 10/13/2021

Page 32

1             (Deposition Exhibit 9 was marked.)

2       Q.   (BY MR. SKELTON)  Okay.  Now if you would, go

3   to Exhibit Number 9.

4       A.   Okay.

5       Q.   Were you involved in the preparation of

6   Exhibit Number 9?

7       A.   Yes.

8       Q.   And what does it depict?

9            Can you answer that question?

10      A.   No.  I'm not sure.

11      Q.   Okay.  Well, why don't you turn to page 292

12  and look for the R-U-D-P 01 acronym on the left-hand

13  column?  Do you see that?

14      A.   I do.

15      Q.   All right.  We looked at a very similar

16  exhibit, but it looked like it covered two different

17  months.  What month does that cover and what does it

18  mean that there is a parenthesis To Suspense

19  116,957.41?

20           MS. RILEY:  Objection to form, compound.

21           You can answer.

22      Q.   (BY MR. SKELTON)  You can answer.

23      A.   It means that that amount was owed or owing

24  to the Rudman Partnership, but was not paid.

25      Q.   Okay.  Now, what documents would we need to

30(B)(6) JOHN STRAUSSER - 10/13/2021

Page 33

1    look at to determine when the funds that are

2    represented in the suspense account and, ultimately,

3    came up with the figure that we discussed a little bit

4    earlier?

5              MS. RILEY:  What's your question?

6              MR. SKELTON:  Am I still breaking up?

7              MS. RILEY:  We heard something we were

8    discussing earlier, and then I don't know if the screen

9    froze or what, but there was nothing after that.

10             MR. SKELTON:  Right, I understand because I

11   didn't say anything.

12             MS. RILEY:  Okay.

13             MS. BROWN:  I think it's actually the

14   internet connection in the witness's room is weak.  I

15   was just texting that to everybody.

16             MR. SKELTON:  Okay.

17             MS. BROWN:  Because you're not breaking up

18   for me, but I am hearing a break up from the court

19   reporter when she speaks.

20        Q.   (BY MR. SKELTON)  Okay, all right.  So, Mr.

21   Strausser, on Exhibit 11 we observed that there was a

22   total amount placed in suspense of 265,871.05.  My

23   question is what documents would we need to look at to

24   find out when those revenues were received that were

25   not paid?

Page 34

1    A.   January production revenues would have been
2  received in February.  February production revenues
3  would have been received in March, one month in
4  arrears.
5    **Q.   That's what should happen in the ordinary**
6  **instance, but -- so you don't know, specifically, but**
7  **that would ordinarily would be the case, correct?**
8    A.   That's correct.
9    **Q.   All right.  Now, those funds were included in**
10  **the funds that were in the debtor's revenue account as**
11  **of the petition date, weren't they?**
12    A.   I'm not sure what you mean when you ask
13  "those funds."
14    **Q.   Well, there were, and we discussed this at**
15  **the cash collateral hearing in great detail.  You said**
16  **that after deducting the $800,000 that was paid to**
17  **Sklarco on the petition date, the remaining funds in**
18  **the revenue account except for, maybe, 50 or 60,000**
19  **would belong to the working interest owners.  Do you**
20  **remember that?**
21    MS. RILEY:  Object to the extent it calls for
22  a legal conclusion.  I think it does mistake his prior
23  testimony from the hearing, but he can answer.
24    **Q.   (BY MR. SKELTON)  You can answer.**
25    A.   Can you repeat the question for me?

30(B)(6) JOHN STRAUSSER - 10/13/2021

Page 35

1      Q.   All right.  Isn't it true that after the

2   payment of $800,000 to Sklarco on April 1st, 2021 that,

3   substantially, all the remaining funds in the account

4   were attributable to revenues owed to working interest

5   owners?

6              MS. RILEY:  Same objection, calls for a legal

7   conclusion.

8              THE REPORTER:  Were attributable to working

9   what?

10             MS. RILEY:  Working interest owners.

11             MR. SKELTON:  Working interest owners.

12      A.   There were amounts owing to the working

13   interest owners at that date.

14             THE REPORTER:  I'm sorry.  Working interest

15   owners?

16             THE DEPONENT:  At that date.

17             MS. RILEY:  Hold on.  Internet connection.

18             Mr. Skelton, I'm sorry, whatever you just

19   said was broken up by the internet connection, again.

20             MR. SKELTON:  What's the last thing you have

21   from me?  You know what I think we should do, let's

22   take a five-minute break and, perhaps, you should

23   reboot and reconnect and see if we get a better

24   connection.  Is that agreeable?

25             THE REPORTER:  Okay.  We're going off the

30(B)(6) JOHN STRAUSSER – 10/13/2021

Page 36

1   record at 10:58.

2          MR. SKELTON:  Thank you.

3          THE VIDEOGRAPHER:  We're going off the record

4   at 10:58 a.m.

5          (Recess taken from 10:58 to 11:09 a.m.)

6          THE VIDEOGRAPHER:  We are going back on the

7   record at 11:09 a.m.

8      Q.  (BY MR. SKELTON)  All right.  Mr. Strausser,

9   can you hear me okay?

10     A.  Yes, sir.

11     Q.  All right.  Let's go back a little bit in

12  time.  You had just come in to working for Sklar in

13  November of 2019.  At what point, what is the earliest

14  point which you recall becoming aware that a decision

15  had been made to take money belonging to working

16  interest owners and using them to pay operating

17  expenses?

18         MS. RILEY:  Object to form and foundation,

19  mischaracterizes prior testimony.

20         MR. SUZUKI:  Join the objection.

21     Q.  (BY MR. SKELTON)  You can answer.

22         THE REPORTER:  I'm sorry, who said that?

23         MR. SUZUKI:  Bryce Suzuki, East West Bank.

24         THE REPORTER:  Thank you.

25     A.  So --

Page 37

```
 1      Q.   (BY MR. SKELTON)  Go ahead.

 2      A.   The -- that was a standing practice at the

 3   company when I arrived.

 4      Q.   What was the standing practice?

 5      A.   I think what would be referred to as

 6   generically float.

 7      Q.   So are you saying then that money would be

 8   taken down from the revenue account and put into the

 9   operating account, money that would be attributable to

10   non-debtor working interest owners?

11      A.   Yes.

12      Q.   Okay.  And when did that practice begin?

13      A.   I'm not certain.  But it was a -- it was a

14   standing practice when I arrived.

15      Q.   Did you condone that practice?

16           MS. RILEY:  Object to form.  It's calling for

17   his opinion.  His opinion isn't relevant.

18      Q.   (BY MR. SKELTON)  You can answer.

19      A.   I think it's not optimal.

20      Q.   Not optimal?

21      A.   Yes.

22      Q.   It's not ethical, either, is it?

23           MR. SUZUKI:  Object to form.

24           MS. RILEY:  Object to form, calls for a legal

25   conclusion.  Instruct the witness not to answer.  Move
```

30(B)(6) JOHN STRAUSSER - 10/13/2021

Page 38

```
 1    on.

 2              MR. SKELTON:  He ask answer.

 3              MS. RILEY:  How is his belief on what is --

 4              MR. SKELTON:  All you can do is object to

 5    form.  You can't instruct him not to answer that unless

 6    it's privileged.

 7              MS. RILEY:  How -- I mean, how is his opinion

 8    on what is or is not ethical at all relevant to the

 9    administrative expense claim?

10              MR. SKELTON:  We'll let the Judge decide.

11              MS. RILEY:  I mean, it's well outside of the

12    scope.

13       Q.   (BY MR. SKELTON)  You can answer that

14    question.  It's not ethical, is it?

15       A.   It's not a practice I like.

16              MR. SUZUKI:  Same objection.

17       Q.   (BY MR. SKELTON)  And why don't you like it?

18              MS. RILEY:  Same objection.

19              THE REPORTER:  Whoever is objecting, I don't

20    know who that was.

21              MR. SUZUKI:  Bryce Suzuki, East West Bank.

22       A.   Mr. Skelton, I don't like that practice

23    because it carries risk that in a period of declining

24    revenues that it would leave the company incapable of

25    paying revenue.
```

30(B)(6) JOHN STRAUSSER – 10/13/2021

Page 39

1      Q.   (BY MR. SKELTON)  Did you make known to Sklar

2    management your concerns in that regard?

3            MS. RILEY:  Object to the extent that it

4    calls for privileged communication.

5            You can answer.

6      A.   We discussed that it was, you know, a

7    practice that I would like to get away from.

8      Q.   (BY MR. SKELTON)  Now, early in the case

9    there was quite a bit of discussion of the practice of

10   Sklar to take cash call funds that had been advanced by

11   working interest owners and use them for operating

12   expenses.  Do you recall that?

13           MS. RILEY:  Object to form, foundation.

14     A.   Yes.

15     Q.   (BY MR. SKELTON)  You can answer.  All right.

16           Now, but that cash call money, there's a

17   distinction, isn't there, between -- the cash call

18   money was deposited upon receipt directly into the

19   operating account; was it not?

20     A.   That's correct.

21     Q.   All right.  It would have never gone through

22   the revenue account?

23     A.   That's correct.

24     Q.   All right.  So one thing was consistent, the

25   only money that went into the revenue account was

Page 40

1    revenues from purchasers of production, correct?

2         A.   That's correct.

3         Q.   And looking, again, we can look in more

4    detail, but looking in the early in the April East West

5    Bank Revenue Account Statement, the only other credits

6    were returned checks.  In other words, checks that, I

7    guess, you all stopped payment.  Tell me about that,

8    did you all stop payment on outstanding checks to

9    working interest owners as of the petition date?

10        A.   I believe that was done by East West Bank.

11        Q.   Okay.  Upon being advised of the bankruptcy?

12        A.   I believe so.

13        Q.   All right.  And so all of those, I guess, you

14   would credits, basically, that money never left the

15   bank account, correct?

16        A.   Correct.

17        Q.   Okay.  Now, I'd like you to look at -- let's

18   look at Exhibit Number 10.

19             (Deposition Exhibit 10 was marked.)

20        A.   Okay.

21        Q.   (BY MR. SKELTON)  Tell me what Exhibit

22   Number 10 is.

23             Can you tell me what Exhibit Number 10 is?

24        A.   I'm familiarizing myself with the exhibit.

25        Q.   Okay.

1        A.    This appears to be checks provided to the

2    Rudman Partnership for their share of production

3    revenues from all the various Sklar-operated properties

4    for the production months of March 2020 through, it

5    looks like, maybe, November 2020.

6        Q.    And so why would this, however, have a date

7    at the top of January 2020?  Oh, that's '21.  Okay, I'm

8    sorry, that's January 29, '21.  So this is some kind of

9    a historical accounting of certain payments to Rudman?

10       A.    Yeah.  It appears to be for a date range.

11       Q.    Okay.  Now, let's look at Exhibit Number 3,

12   which is the March bank statement for -- at East West

13   Bank for SEC.  And, you know, obviously, you don't need

14   to look at every page, but do you whatever you need to

15   do to familiarize yourself with it and satisfy yourself

16   that it is what it purports to be?

17       A.    Yep.

18       Q.    Okay.  Based on your testimony today, and you

19   have said that before the bankruptcy you have used

20   money from the revenue account to pay operating

21   expenses of the debtors; is that correct?

22       A.    That's correct.

23       Q.    All right.  Well, I'm looking -- let's first

24   look at page 25.  If you'll look at the blue,

25   right-hand corner of page 25.

Page 42

1          MS. RILEY:  Mr. Skelton, we're getting a lot

2     of feedback from your microphone again.

3          MR. SKELTON:  I don't think it's my

4     microphone.

5          Q.   (BY MR. SKELTON)  But in any event, go to

6     page 25.  And then you'll see in the middle of the page

7     there is an area called Debits.

8          A.   I do.

9          Q.   Okay.  The next to the last entry under

10    Debits shows 2,830,275.73.  Tell me, it looks to me

11    like that's a revenue payment to working interest

12    owners, isn't it?

13         A.   Yes.

14         Q.   Okay.  And are those -- are some of those

15    payments ones that -- or actually, excuse me --

16         Are those payments by wire, or is it a

17    combination of wire and checks?

18         A.   I believe it is wire.

19         Q.   Okay.  So am I correct in assuming that all

20    of those folks who were lucky enough to be in -- have

21    received by wire, that their funds were made and

22    received on or about the date stated here, March 25th,

23    2020?

24         A.   That's correct.

25         Q.   Okay.  So then it was -- what I'm trying to

30(B)(6) JOHN STRAUSSER – 10/13/2021

1    understand then is where -- show me the entry where

2    funds from the revenue account was brought down into

3    the operating account, other than for the purpose of

4    paying Sklarco's revenues?

5        A.   It doesn't appear that that was done in the

6    month of March.

7        Q.   Okay.  And so in the month of March, what

8    production month should have been paid in the month of

9    March?

10       A.   January.

11       Q.   Okay.  January 2020?

12       A.   Yes, sir.

13       Q.   And then the month of April should have come

14   in in February 2020, correct?

15            MS. RILEY:  Object to form, vague.

16            Can you rephrase?

17       Q.   (BY MR. SKELTON)  Is that correct?

18       A.   Yes.  February production revenues would,

19   generally, be payable in April --

20       Q.   Okay.

21       A.   -- two months.

22       Q.   And if you'll look at page 17 on Exhibit

23   Number 3 under Credits.  Am I correct that except for a

24   minor amount at the beginning of March that all of the

25   payments for production that came into the revenue

Page 44

1    account came in between March 20th and March 31st?

2        A.    Sorry.  What month did you say that this

3    would have been attributable to?

4        Q.    Well, I'm not, actually, saying what month it

5    would be attributable to.  I'm saying that if you look

6    at the Credits on page 17 --

7        A.    Okay.

8        Q.    -- of this bank statement.  The Bates page 17

9    on the lower right-hand corner --

10       A.    Understood.

11       Q.    -- that the payments that the actual wire

12   transfers in except for a miniscule amount all came in

13   between March 20th and March 31st, 2020?

14       A.    That's correct.

15       Q.    Okay.  And was that a typical -- that,

16   typically, the funds payable by the purchasers of

17   production came in the latter part of the month?

18       A.    That's the norm.

19       Q.    All right.  So if the money came in between

20   March 20th and March 31st, unless we see a deduction

21   down to the operating account between those inclusive

22   dates, then these funds were not used to pay operating

23   expenses to the debtor, were they?

24       A.    Not during that time frame.

25       Q.    Okay.  Now, we can also see that the average

MSTrust_007110

Page 45

1   daily balance -- if we go to page 25 there is an area

2   called Daily Balances.

3       A.   Yes.

4       Q.   So you can see, can't you, that by March 19th

5   it was only 408,931.24 left in the account.  And then

6   beginning on March 20th when all these deposits started

7   coming in, it popped up to 4,000,969, correct?

8       A.   Correct.

9       Q.   So 3/31 you see a number of 2,674,825.34,

10  that would all be attributable to funds that would be

11  payable, either, to Sklarco or other working interest

12  owners, correct?

13      A.   Yes.

14      Q.   All right.  And you're not aware of any use

15  of funds during that time period, between March 20th

16  and March 31st, that funds were taken out of this

17  account and used to pay operational expenditures?

18          THE REPORTER:  Used to pay operational?

19          MR. SKELTON:  Expenditures.

20      A.   No.

21      Q.   (BY MR. SKELTON)  And other than -- and of

22  course, you know, we know right above there were --

23  there was a preauthorized debit to pay working interest

24  owners and there was some payments of taxes and so

25  forth, but you don't see any transaction moving or

30(B)(6) JOHN STRAUSSER - 10/13/2021

Page 46

1   shifting funds to the operating account?

2       A.    I do not.

3       Q.    And in your experience, if a decision had

4   been made to use funds from the revenue account to pay

5   operating expenses, it would have gone from the revenue

6   account to the operating account before any expenses

7   were paid, correct?

8       A.    That's correct.

9       Q.    So that even on this frowned-upon practice of

10  doing this, it never would have come directly out of

11  the revenue account?

12            MS. RILEY:  Object to form, argumentative.

13      Q.    (BY MR. SKELTON)  You may answer.

14      A.    During this time period it did not.

15      Q.    Okay, all right.  Now, let's look at Exhibit

16  Number 4, which is the April revenue account statement.

17      A.    Okay.

18      Q.    And you can see here that the credit section

19  looks a lot different because this is when a lot of

20  these returned items came in, right?

21      A.    Correct.

22      Q.    But if you parse through it, you can also see

23  that there were payments from various purchasers of

24  production who wired their funds in just as before?

25      A.    Yes.

30(B)(6) JOHN STRAUSSER – 10/13/2021

Page 47

1          Q.    Okay.  Now, let's look at page 95.  And we'll

2    look at the column that's, kind of, in the middle

3    called Debits.

4          A.    Yes.

5          Q.    Okay.  There are two transfers to the

6    operating account noted, aren't there?

7          A.    Yes.

8          Q.    First one is on the day the bankruptcy was

9    filed, that's $800,000.  And that is account ending in

10   8657, that's the operating account, correct?

11         A.    I believe so.

12         Q.    All right.  And the other amount going into

13   account ending in 8657 was 683,053.84 on April 30th.

14   Do you see that?

15         A.    I do.

16         Q.    Now, were those funds attributable to

17   Sklarco's working interest?

18         A.    That's my recollection.

19         Q.    Okay.  And I don't see any transfer out of

20   the revenue account to the operating account, other

21   than those two entries, do you?

22         A.    No, I do not.

23         Q.    All right.  Nonetheless, isn't it the case

24   that the funds that were on hand as of April 1st, other

25   than these two amounts, were not paid to the working

30(B)(6) JOHN STRAUSSER - 10/13/2021

Page 48

1    interest owners, were they?  They were used as cash

2    collateral?

3            MS. RILEY:  Objection, calls for legal

4    conclusion, mischaracterizes prior testimony.

5        Q.   (BY MR. SKELTON)  Is that correct?

6            MS. RILEY:  What are you referring to?  And

7    vague.  What are you referring to?

8            MR. SKELTON:  I'm referring to the money that

9    was on hand as of April 1st minus $800,000.  That was

10   funds that was all or, substantially, all attributable

11   to working interest owners revenues, wasn't it?

12           MS. RILEY:  Objection, calls for a legal

13   conclusion.

14       Q.   (BY MR. SKELTON)  You may answer.

15       A.   That would be the normal practice, yes.

16       Q.   Okay.  So it also true that these funds,

17   ultimately, were used to pay expenses of the debtors in

18   connection with the case?

19           MS. RILEY:  Object to form, broad, vague.

20   What's -- are you referring to specific transactions or

21   transfers?  If you are, please identify them.

22           MR. SKELTON:  Just trying to find out what he

23   knows.

24       A.   So the two amounts that you just mentioned,

25   the $800,000 and the 683,000, yes, those amounts would

30(B)(6) JOHN STRAUSSER - 10/13/2021

Page 49

1  have been used for operations.

2      Q.   (BY MR. SKELTON)  And the amounts that were

3  paid in at the end of March into the revenue account,

4  those were attributable to what month production?

5      A.   February.

6      Q.   Okay.  And those funds, the February

7  production money was used by the debtor, wasn't it?

8           MS. RILEY:  Objection, calls for a legal

9  conclusion, vague, overbroad.

10     A.   I don't think so.  We just walked through how

11  there were no transfers during that time period out of

12  the revenue account and into the operating account.  So

13  I don't think that's correct.

14     Q.   (BY MR. SKELTON)  So why is it that February

15  revenues were not paid to the Rudman Partnership?

16          MS. RILEY:  Objection to the extent that it

17  calls for a legal conclusion.

18          You can answer.

19     A.   No February revenues were paid to outside

20  working interest owners.

21     Q.   (BY MR. SKELTON)  Okay.  Well, what happened

22  to the money?

23     A.   Any amounts that were in the revenue account,

24  minus these two transfers for 800,000 and 683,000,

25  remained in the revenue account.

Page 50

 1      Q.   Okay.  And they were never used?

 2           MS. RILEY:  Objection to the -- object to

 3   form, vague.  What do you mean by used?

 4           MR. SKELTON:  I don't know.  I'm here trying

 5   to do what is called Discovery.  I'm trying to discover

 6   what happened to the money.

 7      A.   The revenue account on a post filing date

 8   basis was used in the manner as stipulated by the cash

 9   collateral order.

10      Q.   (BY MR. SKELTON)  Okay.  I understand that

11   there was a cash collateral order.  But can you tell me

12   what happened to the Rudman Partnership's money or any

13   of the other working interest owners who had an

14   interest in February production money?

15           MS. RILEY:  Objection to the extent it calls

16   for a legal conclusion.

17      A.   As I've said before, there was a -- there was

18   a -- there was float.  So that means it was -- it was

19   spent.

20           (Deposition Exhibit 16 was marked.)

21      Q.   (BY MR. SKELTON)  Well, let's see if we can

22   put a finer point on this.  Would you please look at

23   Exhibit Number 16, which I sent to Ms. Riley earlier

24   today.  It's the third interim cash collateral order.

25           MS. RILEY:  Mr. Skelton, you may need to give

30(B)(6) JOHN STRAUSSER - 10/13/2021

Page 51

 1   me a moment.  I don't have that one pulled up.

 2             MR. SKELTON:  Sure.  Okay.

 3             MS. RILEY:  Okay.  We have that one pulled up

 4   now.

 5        Q.   (BY MR. SKELTON)  Okay.  If you turn to, I'll

 6   call it decretal paragraph number four on page 516.

 7   And read that for me and then I'll -- tell me when you

 8   finish reading it.

 9        A.   I've read it.

10        Q.   And I'm particularly interested in the last

11   two sentences.  Has the debtor provided an accounting

12   of the funds that were in the revenue account as of the

13   petition date?  And has it shown the record of the

14   funds collected and disbursed from that account?

15        A.   I guess that depends on what you would

16   describe as an accounting, Mr. Skelton.

17        Q.   Well, I would say from a former English

18   major's standpoint and not a CPA, I'd say show me where

19   the money went?  Is there a document that shows me

20   that?  What happened to the money of the working

21   interest owners, the February revenues that were in the

22   account as of April 1st, 2020?

23             MS. RILEY:  Object to form.

24             Go ahead.

25             MR. SUZUKI:  Object to form.  This is Bryce

Page 52

 1  Suzuki.

 2      A.    I think an accounting of the funds would be

 3  copies of the revenue account statements from East West

 4  Bank from that date forward.

 5      **Q.    (BY MR. SKELTON)  An interest holder would**

 6  **want to know what happened to his or its, or her money.**

 7  **So have you ever supervised or been involved in**

 8  **preparing an accounting that complies with paragraph**

 9  **four of the third interim cash collateral order?  And**

10  **I'll represent to you that the same language was in**

11  **every single cash collateral order or something very**

12  **similar.**

13             MR. SUZUKI:  Object to form.  Bryce Suzuki.

14             MS. RILEY:  Join in the objection.

15      A.    None other than the production of multi

16  operating reports, which showed all activity in all

17  accounts from the petition date forward, which also

18  would have included copies of the relevant bank

19  statements.

20      **Q.    (BY MR. SKELTON)  Well, for instance, I can**

21  **tell you that on the monthly operating report, the**

22  **copies of checks to working interest owners is not**

23  **provided.  So if you contended that a check was written**

24  **to my client and I said we never got it, you could,**

25  **actually, produce the check, couldn't you?**

Page 53

1        A.    That's correct.  I believe there was a

2   notation on each and every monthly operating report

3   that was filed that noted the sum total of revenue paid

4   and that detail by check was available upon request.

5        Q.    All right.  So earlier you tried to, I guess,

6   rationalize or explain the use of funds that were in

7   the account as of April 1st by saying that, ultimately,

8   they were used in the float.  But can you show me when

9   funds were, in effect, dropped down from the revenue

10  account to the operating account, other than those two

11  Sklarco amounts to pay operating expenses of the

12  debtors?

13            MS. RILEY:  Object to form.

14            You can answer.

15       A.    There were no other such instances on a

16  post-petition basis.

17       Q.    (BY MR. SKELTON)  All right.  Well, then how

18  did the money go away?  What happened to it?

19       A.    That money may still -- may still exist in

20  the revenue account.

21       Q.    Well, that would be a happy day for all of

22  our fellow working interest owners.  So you believe

23  that money could still be there right to this very day?

24            MS. RILEY:  Object to form, legal conclusion,

25  mischaracterizes testimony.

Page 54

1     A.   I mean, that the money that existed in the

2   revenue account at the petition date minus those two

3   transfers that we discussed, would -- would,

4   presumably, still be in the revenue account today.

5     Q.   (BY MR. SKELTON)  Okay.  Go to Exhibit 7.

6     A.   Okay.

7     Q.   This is the operating account, isn't it?

8     A.   Yes.

9     Q.   And this is the account from which, in the

10   ordinary course, expenses of operation of the debtor

11   capital or costs or otherwise should have been paid?

12     A.   That's correct.

13     Q.   All right.  So money could not have been

14   deposited into this account unless -- let's just put it

15   this way, if you had your way and the money in the

16   revenue account was either paid out to revenue owners

17   or not, for money to be in the operating account, it

18   would have come either from JIB payments, AFE payments,

19   or cash call advances, or money that Sklarco allowed to

20   be used that was attributable to its interest in oil

21   and gas wells?

22         MS. RILEY:  Object to form.

23         You can answer.

24     A.   That's correct.

25     Q.   (BY MR. SKELTON)  Okay.  It should never have

30(B)(6) JOHN STRAUSSER - 10/13/2021

Page 55

1    involved money coming down or dropping down, if you

2    will, from the revenue account, except for Sklarco

3    money?

4        A.   That's correct.

5        Q.   All right.  Does that appear to be a true and

6    correct copy of the April 2020 --

7             THE REPORTER:  I'm sorry, Counsel.  You're

8    breaking up.  Does that appear to be a what?

9        Q.   (BY MR. SKELTON)  True and correct copy of

10   the April 2020 operating account bank statements?

11       A.   Yes, it does.

12            MR. SKELTON  And, for the record, Keri, in

13   the event we ever need to use these bank statements, I

14   will use a redacted copy such that we don't have bank

15   account numbers floating around.

16            MS. RILEY:  Much appreciated.

17            MR. SKELTON:  And I'll make sure that that

18   occurs, but for the purposes of the deposition, I did

19   not do all that redacting.

20            MS. RILEY:  Understood.

21            (Deposition Exhibit 12 was marked.)

22       Q.   (BY MR. SKELTON)  All right, sir, if you

23   would turn to Exhibit 12.

24       A.   Give us a moment.  Okay, we have it.

25       Q.   Okay.  Now, were you involved in the

Page 56

1    preparation of this document?

2        A.   Very minimally.

3        Q.   Was this instead prepared by the CRO?

4        A.   And his team.

5        Q.   Okay, all right.  It is an extremely lengthy

6    document and, frankly, if it had been printed, it would

7    probably be several feet long with all the tabs.  But

8    if you will look at the tabs in the lower part at the

9    bottom of the page and you'll see one that says SklarEx

10   rev suspense.

11       A.   I see it.

12       Q.   Yeah, click that tab.

13       A.   Um-hmm.

14       Q.   So this is -- appears to be another iteration

15   of the suspense account.  And what was the purpose of

16   preparing this document, particularly this tab of this

17   document?

18           MS. RILEY:  Object to form.

19           You can answer.

20       A.   I recall that it was to -- or what it does,

21   should I say, is describes unpaid revenue at, I

22   believe, the petition date.

23       Q.   (BY MR. SKELTON)  Okay.  You're not sure

24   about that?

25       A.   I'm not sure about that.

Page 57

1        Q.   Okay.  Well, let's turn now, of course, we

2   can see that, I guess, right there on the -- well, you

3   can go to line 297 where it says R-U-D-P 01, the Rudman

4   Partnership.

5        A.   Yes.

6        Q.   And you can see that same number, 265,871,

7   that's the amount in suspense.  And then if you right

8   click just going across the right-hand side, does this

9   then show you each and every well or unit from which

10  the suspense amount was, basically, payable and

11  derived?

12            MS. RILEY:  Object to form, foundation.

13       A.   Yeah, that appears to be case.

14       Q.   (BY MR. SKELTON)  Okay.  And, of course, this

15  lists all the units and all the wells wherever they

16  are, so you really have to go a long way to get all the

17  way to the end, but if you just keep right clicking.

18       A.   Yeah, that's the total.

19       Q.   Yeah.  And the total, there are two columns

20  of interest to me, one of them says revenue suspense

21  L15 and revenue suspense L14.  Do you have any idea

22  what the meaning of that, what does L15 mean and L14?

23       A.   They were suspense codes set up relative to

24  unpaid January and February revenues.  And I don't

25  remember which was which.

Page 58

1      Q.   Okay, okay.  So presumably, that the sum of
2  116,957 plus 148,914 would equal the total amount in
3  suspense --
4      A.   Yes.
5      Q.   -- for Rudman?
6           And the same time of the math for all of the
7  parties.  So this should cover every single working
8  interest owner or royalty owner that has outstanding
9  amounts of revenue unpaid, correct?
10     A.   That's correct.
11     Q.   Okay.  Now, let's just suppose -- let's go
12  back, again, to the notion of when funds ordinarily
13  would have been payable.  And you said January
14  production should have been payable when?
15     A.   In March.
16     Q.   Okay.  And the check run would have been
17  towards the end of March, correct?
18     A.   Yes.
19     Q.   All right.  So February production should
20  have been payable in April?
21     A.   That's correct.
22     Q.   Okay.  So that means that money came in
23  during April that was attributable to the month of
24  February?
25     A.   No, sir.  Money comes in one month following

30(B)(6) JOHN STRAUSSER - 10/13/2021

Page 59

1  production and gets -- and is payable the following

2  month.  So it comes in the month after production and

3  it's paid or payable in the following month.

4       **Q.   Okay.**

5       A.   So February production would have been

6  received in March.

7       **Q.   Okay.  Can you tell me whether there was any**

8  **meetings between you and Howard Sklar or Marshall Jones**

9  **concerning the decision to use funds out of the revenue**

10 **account?**

11            MS. RILEY:  Objection to the extent that it

12 requests privileged information.

13            You can answer.

14       A.   Yes.

15       **Q.   (BY MR. SKELTON)  Okay.  And tell me about**

16 **that.  What was the substance of that conversation or**

17 **those conversations?**

18            MS. RILEY:  Same objection.

19       **A.   It's the conversations I referenced earlier.**

20 **A conversation around the practice of using float.  And**

21 **my feelings about the practice and a desire to move in**

22 **a different direction.**

23       **Q.   (BY MR. SKELTON)  Okay.  And what was their**

24 **response?**

25       A.   I think there was -- there was, generally,

Page 60

1   more comfort, maybe, with the practice given its

2   longstanding nature, as I mentioned.

3       Q.   But before they had been able to cover it,

4   right, ultimately?

5       A.   That's right.

6       Q.   Okay.  And when, to your recollection, was

7   the month where, shall we say, the music stopped and

8   you were not able to make the payment?

9            MS. RILEY:  Object to form, foundation.

10           Go ahead.

11      A.   Shortly before the filing date.  So --

12      Q.   (BY MR. SKELTON)  Okay.

13      A.   -- around -- around March when prices for oil

14   dropped precipitously.

15      Q.   Okay.  Now, there were a good number of

16   documents that were produced in connection with this

17   Notice of Deposition, but some of them had to do with

18   the Abbeville plant issue.  I don't intend to go into

19   that because that matter has been resolved.

20           Give me a minute and I'll see if I have any

21   other questions or exhibits I want to go over.

22           Could we take a five-minute break, please.

23           THE VIDEOGRAPHER:  We are going off the

24   record at 11:55 a.m.

25           (Recess taken from 11:55 to 12:00 p.m.)

Page 61

1       THE VIDEOGRAPHER:  We're going back on the

2   record at twelve p.m.

3       Q.  (BY MR. SKELTON)  All right.  Mr. Strausser,

4   you said earlier that you live, essentially, between

5   Boulder and Denver, correct?  I mean, isn't that where

6   you're located?

7       A.   That's correct.

8       Q.   Okay.  I would simply ask this agreement.

9   You're no longer employed by Sklar and I'm not, you

10  know, I'm trying to impose a burden on you, but would

11  you agree to -- to the extent that you decide to move,

12  go back to Louisiana, whatever, that you will advise

13  Ms. Riley of a forwarding address and contact

14  information?

15      A.   Yes.

16      Q.   Okay, all right.  And I didn't ask this at

17  the beginning, but in connection with your departure

18  from Sklar, did you execute any sort of termination

19  agreement, nondisclosure agreement, anything of that

20  nature?

21      A.   No.

22      Q.   No, okay.  May I ask whether it was voluntary

23  on your part, or whether you were asked to leave, or

24  what the circumstances were?

25      A.   Its was voluntary on my part.  I chose to

Page 62

1    leave.

2              (Deposition Exhibits 13, 14, 15 were marked.)

3        Q.   **Okay, all right.**

4              MR. SKELTON:  Okay.  Ms. Riley, I'd like to

5    see if we can get an agreement that Exhibits 3 through

6    15 are business records of the debtors for the purpose

7    of the business records exception to the hearsay rule

8    without going through a litany of questions.

9              MS. RILEY:  Which ones?

10             MR. SKELTON:  I left out the cash collateral

11   order, the admin motion, and the Notice of Deposition.

12             MS. RILEY:  So I don't have the specific list

13   in front of me.  But to the extent that they are, like,

14   bank statements or the revenue statements, yes, we can

15   agree to that.

16             MR. SKELTON:  Okay.  What about -- well,

17   let's go through it.  I'm sorry, but Exhibits 3 through

18   7 are copies of the SEC revenue, -- three, four, and

19   five are the revenue bank statements for March, April,

20   and May.  And six and seven are the operating bank

21   statements for March and April of 2020.

22             MS. RILEY:  So, like I said, all of those

23   bank statements we can agree would be considered

24   business records.  We likely would stipulate to that

25   fact as well.

30(B)(6) JOHN STRAUSSER - 10/13/2021

Page 63

1            MR. SKELTON:  Okay.

2            MS. RILEY:  But to the extent that they're

3    used at a hearing in the future, I do preserve the

4    right to object on any and all other grounds.

5            MR. SKELTON:  Sure, absolutely.  And then

6    Exhibits 8 through 13 are all either spread sheets,

7    revenue runs, or things that he's identified that were

8    either prepared under his direction or prepared in the

9    ordinary course of business.  Do you have any -- do you

10   agree to stipulate that those are business records for

11   the purpose of the hearsay rule?

12           MS. RILEY:  I'm not going to go that far for

13   number 12, I don't think.

14           MR. SKELTON:  Is that because it was prepared

15   by CR3?

16           MS. RILEY:  It was prepared by CR3, but it

17   was prepared for a very specific purpose and not in the

18   ordinary course.

19           MR. SKELTON:  Okay.

20           MS. RILEY:  Because you'll recall that was

21   part of the cash analysis summary that was required by

22   the CRO order.

23           MR. SKELTON:  Okay.

24           MS. RILEY:  And that's what this was prepared

25   for.

Page 64

 1                MR. SKELTON:  Okay.  So you would require us

 2     to prove that up --

 3                THE REPORTER:  I didn't understand you.  I'm

 4     sorry.

 5                MR. SKELTON:  You would require us to prove

 6     that up through Mr. Katchadurian or CR3?

 7                MS. RILEY:  At this point, we'd be reserving

 8     our objections to it.  To the extent it's used in a

 9     hearing, we would likely discuss any stipulations to

10     admissibility at that point.

11                MR. SKELTON:  Okay.  And how about Exhibits

12     13, 14, and 15?  13 is a revenue payable estimate.  And

13     14 and 15 are monthly operating reports.

14                MS. RILEY:  Yeah.  Those we would stipulate

15     to their admissibility.

16                MR. SKELTON:  Okay.  All right.  Well, at

17     this time I will pass the witness.

18                MS. BROWN:  This is Deidre Brown.  I don't

19     have any questions, but I would just ask for the same

20     stipulations with the debtor.

21                MS. RILEY:  Yeah, I think that's fine.

22                MS. BROWN:  Thank you.

23                MR. SUZUKI:  This is Bryce Suzuki on behalf

24     of East West Bank, I don't have any questions at this

25     time.

Page 65

1            MR. GREENHOUSE:  This is Charles Greenhouse,

2     I do not have any questions.  Thank you.

3            MR. JOHNSON:  And this is Chris Johnson on

4     behalf of Tom Kim, the Post-Confirmation Trustee, I

5     have no questions.

6            MR. SKELTON:  All right.  Go ahead.

7            MS. RILEY:  This is Keri Riley.  I did just

8     want to clarify one point on the record with Mr.

9     Strausser.

10           MR. SKELTON:  Sure.

11                      EXAMINATION

12    BY MS. RILEY:

13       **Q.   So Mr. Strausser, is it fair to say that any**

14    **transactions in the revenue account would be evident**

15    **from the bank statements starting in March and**

16    **continuing forward?**

17       A.   Yes.

18           MS. RILEY:  Okay.  That's all.

19           THE VIDEOGRAPHER:  This concludes the

20    videotape deposition of John Strausser.  We're going

21    off the record at 12:06 p.m.

22           THE REPORTER:  Counsel, can I get orders on

23    the record, please.

24           MR. SKELTON:  I'd want a copy of the video

25    and of the deposition.  I do not need copies of the

MSTrust_007131

30(B)(6) JOHN STRAUSSER - 10/13/2021

Page 66

1    exhibits.

2              MS. BROWN:  This is Deidre Brown.  I would

3    also like to order the transcript in E-form only

4    without exhibits and the video.

5              THE REPORTER:  Thank you.

6              Ms.  Riley?

7              MS. RILEY:  Not at this time.

8              THE REPORTER:  Are you waiving read and sign

9    or --

10             MS. RILEY:  Oh, no.  We do want to read and

11   sign.

12             MR. SKELTON:  Yeah, I do, too.

13             MS. RILEY:  So we'll order it in E-form only,

14   no exhibits.

15             THE REPORTER:  And you're going to handle

16   read and sign?

17             MS. RILEY:  Yes.

18             MR. SKELTON:  I also believe it's appropriate

19   that Mr. Strausser has the opportunity to read and sign

20   the deposition transcript and make appropriate

21   corrections, if any.

22             THE REPORTER:  Okay.  Is that everyone's

23   orders?

24             MR. SKELTON:  Yes.

25             THE REPORTER:  Okay.  We're all finished.

30(B)(6) JOHN STRAUSSER - 10/13/2021

Page 67

1   Thank you, everyone.

2                       *   *   *   *   *   *

3           WHEREUPON, the within proceedings were

4   concluded at the approximate hour of 12:07 p.m. on the

5   13th day of October, 2021.

6                       *   *   *   *   *   *

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 68

1              CERTIFICATION OF DEPONENT

2

3          I, JOHN STRAUSSER, do hereby certify that I

4  have read the above and foregoing deposition and that

5  the same is a true and accurate transcription of my

6  testimony, except for attached amendments, if any.

7          Amendments attached      (  ) Yes     (  ) No

8

9          _____

10                          JOHN STRAUSSER

11

12  The signature above of JOHN STRAUSSER, was subscribed

13  and sworn to before me in the county of _____,

14  state of Colorado, this _____ day of

15  _____, 2021.

16

17          _____

18                          Notary Public
                    My commission expires

19

20  In re: Sklar Exploration Company, LLC, et al,
21  10/13/2021, (amh)

22

23

24

25

Page 69

1                    REPORTER'S CERTIFICATE

2    STATE OF COLORADO          )
                                )    ss.
3    CITY AND COUNTY OF DENVER )

4              I, Anne Marie Hamill, RPR, and Notary Public,

5    State of Colorado, do hereby certify that previous to

6    the commencement of the examination, the said JOHN

7    STRAUSSER was duly sworn by me to testify to the truth

8    in relation to the matters in controversy between the

9    parties hereto; that the said deposition was taken in

10   machine shorthand by me at the time and place aforesaid

11   and was thereafter reduced to typewritten form,

12   consisting of 69 pages herein; that the foregoing is a

13   true transcript of the questions asked, testimony

14   given, and proceedings had.  I further certify that I

15   am not employed by, related to, nor of counsel for any

16   of the parties herein, nor otherwise interested in the

17   outcome of this litigation.

18             IN WITNESS WHEREOF, I have affixed my

19   signature and seal this 25th day of October 2021.

20        My commission expires May 18, 2025.

21

22        Anne Marie Hamill, RPR
          Commission No. 20174021318
23

24

25

30(B)(6) JOHN STRAUSSER – 10/13/2021

Page 70

```
1     Errata Sheet

2    Page _____ Line _____ Reason _____

3    Change From _____

4    Change To _____

5    Page _____ Line _____ Reason _____

6    Change From _____

7    Change To _____

8    Page _____ Line _____ Reason _____

9    Change From _____

10   Change To _____

11   Page _____ Line _____ Reason _____

12   Change From _____

13   Change To _____

14   Page _____ Line _____ Reason _____

15   Change From _____

16   Change To _____

17   Page _____ Line _____ Reason _____

18   Change From _____

19   Change To _____

20   Page _____ Line _____ Reason _____

21   Change From _____

22   Change To _____

23

24 Signature_____Date_____

25          30(b)(6) John Strausser  |  10/13/2021
```

MSTrust_007136

Page 71

1      Errata Sheet

2     Page _____ Line _____ Reason _____

3     Change From _____

4     Change To _____

5     Page _____ Line _____ Reason _____

6     Change From _____

7     Change To _____

8     Page _____ Line _____ Reason _____

9     Change From _____

10    Change To _____

11    Page _____ Line _____ Reason _____

12    Change From _____

13    Change To _____

14    Page _____ Line _____ Reason _____

15    Change From _____

16    Change To _____

17    Page _____ Line _____ Reason _____

18    Change From _____

19    Change To _____

20    Page _____ Line _____ Reason _____

21    Change From _____

22    Change To _____

23

24 Signature_____Date_____

25            30(b)(6) John Strausser  |  10/13/2021

MSTrust_007137

Page 72

```
 1      HEALTH INFORMATION PRIVACY & SECURITY: CAUTIONARY NOTICE
 2  Litigation Services is committed to compliance with applicable federal
 3  and state laws and regulations ("Privacy Laws") governing the
 4  protection andsecurity of patient health information.Notice is
 5  herebygiven to all parties that transcripts of depositions and legal
 6  proceedings, and transcript exhibits, may contain patient health
 7  information that is protected from unauthorized access, use and
 8  disclosure by Privacy Laws. Litigation Services requires that access,
 9  maintenance, use, and disclosure (including but not limited to
10  electronic database maintenance and access, storage, distribution/
11  dissemination and communication) of transcripts/exhibits containing
12  patient information be performed in compliance with Privacy Laws.
13  No transcript or exhibit containing protected patient health
14  information may be further disclosed except as permitted by Privacy
15  Laws. Litigation Services expects that all parties, parties'
16  attorneys, and their HIPAA Business Associates and Subcontractors will
17  make every reasonable effort to protect and secure patient health
18  information, and to comply with applicable Privacy Law mandates,
19  including but not limited to restrictions on access, storage, use, and
20  disclosure (sharing) of transcripts and transcript exhibits, and
21  applying "minimum necessary" standards where appropriate. It is
22  recommended that your office review its policies regarding sharing of
23  transcripts and exhibits - including access, storage, use, and
24  disclosure - for compliance with Privacy Laws.
25      © All Rights Reserved. Litigation Services (rev. 6/1/2019)
```

30(B)(6) JOHN STRAUSSER – 10/13/2021

Index: $265,871.05..24,391.99

| Exhibits | 5:18 55:21,23 | 1 | 12:06 65:21 | 2 |
|---|---|---|---|---|
| Exhibit 1  4:10 | Exhibit 13  5:19 | 1  7:4 | 12:07  67:4 | 2  7:4 |
| Exhibit 2  4:13 | Exhibit 14  5:20 | 10  40:18,19, 22,23 | 13  62:2 63:6 64:12 | 2,275,281.05  30:16 |
| Exhibit 3  4:15 18:17 41:11 43:22,23 | Exhibit 15  5:23 | 10:10  7:9 | 13th  7:9 8:7 67:5 | 2,674,825.34  45:9 |
| Exhibit 4  4:18 46:15,16 | Exhibit 16  6:4 50:20,23 | 10:12  8:7 | 14  62:2 64:12, 13 | 2,830,275.73  42:10 |
| Exhibit 5  4:21 | $ | 10:58  36:1,4,5 | 148,913.64  28:17 29:12, 14 | 20  22:13 |
| Exhibit 6  5:3 | $265,871.05  25:5 | 11  26:11,14 29:24 31:24 33:21 | 148,914  58:2 | 2019  11:15,17 14:7 36:13 |
| Exhibit 7  5:6 54:5 | $28,033.03  27:20 | 116,957  58:2 | 15  62:2,6 64:12,13 | 2020  15:4 17:14,24 18:18 19:2 25:3 41:4,5,7 42:23 43:11, 14 44:13 51:22 55:6,10 62:21 |
| Exhibit 8  5:9 21:23,25 22:8 | $800,000  20:5 34:16 35:2 47:9 48:9,25 | 116,957.41  28:1,12 29:9 32:19 | 16  50:20,23 | |
| Exhibit 9  5:11 32:1,3,6 | 0 | 11:09  36:5,7 | 17  43:22 44:6, 8 | |
| Exhibit 10  5:13 40:18, 19,21,22,23 | 01  27:12 32:12 57:3 | 11:55  60:24, 25 | 189  30:15 | 2021  7:9 8:7 35:2 67:5 |
| Exhibit 11  5:16 26:11,14 29:24 31:24 33:21 | 04/29/20  22:20 | 11th  11:14 | 19th  45:4 | 20th  44:1,13, 20 45:6,15 |
| Exhibit 12 | | 12  55:21,23 63:13 | 1st  17:14 35:2 47:24 48:9 51:22 53:7 | 21  41:7,8 |
| | | 12:00  60:25 | | 24,391.99 |

24:7

**25** 41:24,25
42:6 45:1

**25th** 42:22

**265,871** 57:6

**265,871.05**
28:8 33:22

**27,000** 24:3

**27,579.80**
24:3

**29** 41:8

**292** 32:11

**297** 57:3

---

**3**

**3** 14:18,20
18:17 41:11
43:23 62:5,17

**3/22/20** 22:19

**3/31** 45:9

**3/31/20** 27:25

**3/31/21** 22:17

**30th** 47:13

**31st** 22:13
44:1,13,20
45:16

**329** 27:9

**334** 30:4

**335** 30:14

---

**4**

**4** 14:19,20
46:16

**4,000,969**
45:7

**4/25/20** 27:25

**408,931.24**
45:5

---

**5**

**5** 14:19,20

**50** 34:18

**516** 51:6

---

**6**

**6** 15:1,3

**60,000** 34:18

**683,000** 48:25
49:24

**683,053.84**
47:13

---

**7**

**7** 15:1,3 54:5
62:18

---

**8**

**8** 21:23,25
22:8 63:6

**800,000** 49:24

**8657** 47:10,13

---

**9**

**9** 32:1,3,6

**95** 47:1

---

**A**

**a.m.** 7:9 8:7
36:4,5,7
60:24

**A/r** 27:20

**Abbeville**
60:18

**ability** 20:20

**able** 60:3,8

**above** 45:22

**absolutely**
63:5

**account**
14:22,24
15:8,12,17
16:13 17:1,11
18:4,6,20
19:22,25
20:4,9,11,12,
15 21:7 26:7
33:2 34:10,18
35:3 37:8,9
39:19,22,25
40:5,15 41:20
43:2,3 44:1,
21 45:5,17
46:1,4,6,11,
16 47:6,9,10,
13,20 49:3,

12,23,25 50:7
51:12,14,22
52:3 53:7,10,
20 54:2,4,7,9,
14,16,17
55:2,10,15
56:15 59:10
65:14

**accountant**
23:1

**accounting**
10:9,11 12:5,
9 13:6 19:19
41:9 51:11,16
52:2,8

**accounts**
13:2,3,10
15:4 26:4
52:17

**acronym**
11:24 23:18
27:14 32:12

**acronyms**
27:11

**across** 57:8

**acting** 11:6

**activity** 52:16

**actual** 44:11

**actually**
18:17 20:8
27:4 30:12
33:13 42:15
44:4 52:25

**ad** 8:22

**address**
13:15,23 31:8
61:13

**admin** 62:11

**administrativ**
**e** 38:9

**admissibility**
64:10,15

**advanced**
39:10

**advances**
54:19

**advise** 30:6
61:12

**advised**
40:11

**AFE** 54:18

**affiliated**
15:11

**after** 17:9
18:15 24:19
30:25 33:9
34:16 35:1
59:2

**again** 8:1
12:8 16:24
35:19 40:3
42:2 58:12

**against** 26:21
27:9

**agree** 61:11
62:15,23
63:10

**agreeable**
35:24

**agreed** 11:7

**agreement**
61:8,19 62:5

**ahead** 24:1
37:1 51:24
60:10 65:6

**all** 7:12,14
8:10,11 9:20,
23 10:7,15
11:6,11 12:1,
25 13:4,9,13,
18 14:16
15:2,7,19
16:5,9,19,23

17:4,13 18:24
19:4 20:1,8
21:20,24 22:5
23:12 24:17,
22 25:11
26:3,12,21
27:9,14 29:25
30:11 32:15
33:20 34:9
35:1,3 36:8,
11 38:4,8
39:15,21,24
40:7,8,13
41:3,23 42:19
43:24 44:12,
19 45:6,10,14
46:15 47:12,
23 48:10
52:16 53:5,
17,21 54:13
55:5,19,22
56:5,7 57:15
58:6,19 61:3,
16 62:3,22
63:4,6 64:16
65:6,18 66:25

**allowed** 54:19

**already** 24:13

**also** 10:20
15:19 16:15
19:20 20:22
44:25 46:22
48:16 52:17
66:3,18

**although**
24:15

**amount** 23:23
24:2,3,6,10,
18,19,23
25:1,2,17,19
27:22 28:13,
23 29:14,18,
19,20 30:16
32:23 33:22
43:24 44:12
47:12 57:7,10
58:2

**amounts**
19:16 25:23
29:16 31:5
35:12 47:25
48:24,25
49:2,23 53:11
58:9

**analysis**
63:21

**Anne** 7:10 8:8

**another** 16:1
26:13 56:14

**anybody**
31:17

**anyone** 9:11
31:12

**anything**
13:22 14:1
33:11 61:19

**appear** 11:7

43:5 55:5,8

**appearing**
7:17,21 8:15

**appears** 41:1,
10 56:14
57:13

**appreciated**
55:16

**appropriate**
24:24 66:18,
20

**approximate**
67:4

**April** 15:4
17:14 21:1,3,
4,20 25:3
35:2 40:4
43:13,19
46:16 47:13,
24 48:9 51:22
53:7 55:6,10
58:20,23
62:19,21

**area** 18:24
30:25 42:7
45:1

**argumentativ**
**e** 46:12

**around** 11:1

55:15 59:20 60:13

**arrears** 34:4

**arrive** 24:10

**arrived** 37:3, 14

**asks** 13:25

**assuming** 42:19

**attention** 14:18

**attributable** 17:21 20:24 31:7 35:4,8 37:9 44:3,5 45:10 47:16 48:10 49:4 54:20 58:23

**audit** 10:12, 14

**authorities** 17:5

**available** 53:4

**average** 44:25

**aware** 13:19, 21 36:14 45:14

**away** 26:6 39:7 53:18

---

**B**

---

**back** 7:25 16:9 20:13 36:6,11 58:12 61:1,12

**background** 11:12

**bad** 31:8

**balance** 27:20 45:1

**Balances** 45:2

**bank** 7:22 8:20 12:14 13:10,11 14:22,23 36:23 38:21 40:5,10,15 41:12,13 44:8 52:4,18 55:10,13,14 62:14,19,20, 23 64:24 65:15

**bankruptcy** 16:11,25 17:14 19:23 20:23 21:7 40:11 41:19 47:8

**Barnet** 8:17

**Bartelt** 7:10 8:8

**Based** 41:18

**basically** 20:19 40:14 57:10

**basis** 50:8 53:16

**Bates** 44:8

**Baton** 10:17, 20

**became** 13:21

**become** 13:6, 9,18,19 14:12

**becoming** 36:14

**before** 16:10 41:19 46:6,24

50:17 60:3,11

**begin** 37:12

**beginning** 7:5,15 8:3,12 43:24 45:6 61:17

**behalf** 7:17, 21 8:15,17, 19,21,23,25 11:8 64:23 65:4

**being** 7:12 8:10 10:22 13:14 40:11

**belief** 38:3

**believe** 24:15, 21 28:13,23 29:16 30:3, 20,23 31:5 40:10,12 42:18 47:11 53:1,22 56:22 66:18

**belong** 34:19

**belonging** 36:15

**best** 29:5

**better** 13:15

35:23

**between** 31:4 39:17 44:1, 13,19,21 45:15 59:8 61:4

**big** 27:5

**bills** 18:7,10, 14

**bit** 11:11 12:8 16:9 30:9 33:3 36:11 39:9

**blue** 41:24

**both** 11:22 16:19 24:19

**bottom** 27:6 56:9

**Boulder** 23:6 61:5

**break** 33:18 35:22 60:22

**breaking** 7:19 31:21 33:6,17 55:8

**briefly** 14:17

MSTrust_007142

broad 48:19

broken 35:19

Brooklyn 23:18,20

Broomfield 9:25

brought 43:2

Brown 8:25 33:13,17 64:18,22 66:2

Bryce 7:21 8:19 36:23 38:21 51:25 52:13 64:23

bumping 30:7

burden 61:10

business 62:6,7,24 63:9,10

—————————

C

—————————

calculated 25:18

call 13:2 39:10,16,17

51:6 54:19

called 14:23 25:8 42:7 45:2 47:3 50:5

calling 37:16

calls 34:21 35:6 37:24 39:4 48:3,12 49:8,17 50:15

came 13:13 14:11 17:23, 25 33:3 43:25 44:1,12,17,19 46:20 58:22

can't 28:21 38:5 45:4

cannot 22:22, 23

capabilities 13:7

capacity 11:7

capital 54:11

Carey 8:25

carries 38:23

case 24:21 34:7 39:8 47:23 48:18 57:13

cash 20:18 34:15 39:10, 16,17 48:1 50:8,11,24 52:9,11 54:19 62:10 63:21

certain 30:23 37:13 41:9

changing 30:5

charge 12:5

Charles 8:21 65:1

check 17:10 52:23,25 53:4 58:16

checks 30:15, 20 40:6,8 41:1 42:17 52:22

chief 11:2

chopped 27:16

chose 61:25

Chris 8:23 65:3

circumstances 61:24

city 9:24

Civil 7:2

claim 38:9

clarify 65:8

click 56:12 57:8

clicking 57:17

client 52:24

closely 12:16

codes 57:23

Cole 7:10 8:8

collateral 20:19 34:15 48:2 50:9,11, 24 52:9,11 62:10

collected 51:14

collectively 12:2

Colorado 7:2 9:25 10:23,24

column 22:18 24:22 25:2 27:19 28:3,6, 10,17 29:13, 19 31:2 32:13 47:2

columns 23:13 27:18 57:19

combination 42:17

come 24:14 36:12 43:13 46:10 54:18

comes 58:25 59:2

comfort 60:1

coming 45:7 55:1

Commercial 10:15

Committee 8:22

**communication** 39:4

**companies** 10:13

**company** 7:18 8:5,16 12:16 19:14 23:9 37:3 38:24

**competent** 29:19

**complies** 52:8

**compound** 25:14 32:20

**concerning** 59:9

**concerns** 39:2

**concluded** 67:4

**concludes** 65:19

**conclusion** 34:22 35:7 37:25 48:4,13 49:9,17 50:16

53:24

**condition** 13:16

**condone** 37:15

**conference** 7:8 8:6

**confirmation** 8:24

**confused** 22:15

**connection** 9:11 33:14 35:17,19,24 48:18 60:16 61:17

**considered** 14:1 62:23

**consistent** 39:24

**constituted** 19:9

**contact** 61:13

**contain** 29:24

**contended**

52:23

**continuing** 65:16

**controller** 11:18,20 12:3 13:5

**conversation** 59:16,20

**conversations** 59:17,19

**copies** 52:3, 18,22 62:18 65:25

**copy** 55:6,9, 14 65:24

**corner** 41:25 44:9

**correct** 10:16, 19,25 11:4,5, 9,10 12:24 15:7,19,21,22 16:4,7,11,21 17:6,8,12,24 19:7 20:3,16, 17,21 23:15, 16,24,25 24:25 25:9 26:8,10,22 27:2 29:23 30:22 31:16

34:7,8 39:20, 23 40:1,2,15, 16 41:21,22 42:19,24 43:14,17,23 44:14 45:7,8, 12 46:7,8,21 47:10 48:5 49:13 53:1 54:12,24 55:4,6,9 58:9, 10,17,21 61:5,7

**corrections** 66:21

**correctly** 21:15

**costs** 54:11

**counsel** 31:20 55:7 65:22

**couple** 22:20 23:19

**course** 11:2 13:4 45:22 54:10 57:1,14 63:9,18

**court** 7:9 8:7 9:2 33:18

**cover** 32:17

58:7 60:3

**covered** 32:16

**CPA** 51:18

**CR3** 63:15,16 64:6

**created** 19:17

**credit** 46:18

**credits** 40:5, 14 43:23 44:6

**CRO** 56:3 63:22

**current** 10:1 13:16 27:24 28:11,14,24 29:1,6,7 30:25

**currently** 9:24

**cycle** 19:19 25:18

**D**

**daily** 45:1,2

**Dallas** 9:15

**date** 17:15 19:23 20:2,5 21:7 22:13, 16,18 24:24 34:11,17 35:13,16 40:9 41:6,10 42:22 50:7 51:13 52:4,17 54:2 56:22 60:11

**dates** 44:22

**day** 11:14 47:8 53:21,23 67:5

**debit** 45:23

**Debits** 42:7, 10 47:3

**debtor** 7:8 8:6 44:23 49:7 51:11 54:10 64:20

**debtor's** 34:10

**debtors** 26:1 41:21 48:17 53:12 62:6

**decide** 11:22 38:10 61:11

**decimals** 23:23

**decision** 36:14 46:3 59:9

**declining** 38:23

**decretal** 51:6

**deducting** 34:16

**deduction** 44:20

**deep** 14:12

**Deidre** 8:25 64:18 66:2

**delineating** 30:25

**Denver** 61:5

**department** 10:12

**departure** 61:17

**depends** 51:15

**depict** 32:8

**depicts** 22:8, 10

**DEPONENT** 7:16 8:14 29:1 35:16

**deposited** 15:17 16:13 39:18 54:14

**deposition** 7:4,6,12 8:4, 10 14:20 15:1 21:23 26:11 32:1 40:19 50:20 55:18, 21 60:17 62:2,11 65:20,25 66:20

**deposits** 18:25 45:6

**derived** 57:11

**describe** 11:19 51:16

**describes** 56:21

**description** 12:3 22:18

**desire** 59:21

**detail** 34:15 40:4 53:4

**detected** 24:14

**determine** 25:19 33:1

**difference** 31:4

**different** 26:3 32:16 46:19 59:22

**difficulties** 13:20,24 14:7

**direction** 59:22 63:8

**directly** 15:16 17:5,10 39:18 46:10

**disbursed** 51:14

**discover** 50:5

**Discovery** 50:5

**discuss** 64:9

**discussed** 25:6 33:3 34:14 39:6 54:3

**discussing** 33:8

**discussion** 39:9

**distinction** 39:17

**distributed** 21:17

**distribution** 22:16 25:7,8, 12,13

**division** 31:9

**document** 26:16 51:19 56:1,6,16,17

**documents** 32:25 33:23 60:16

**done** 40:10 43:5

**down** 12:8 22:20 23:13, 22 24:4 25:1

27:3 30:24
37:8 43:2
44:21 53:9
55:1

**dropped** 53:9
60:14

**dropping**
55:1

**due** 30:1 31:6

**duly** 9:7

**during** 44:24
45:15 46:14
49:11 58:23

**duties** 11:19

———————
E
———————

**E-FORM** 66:3,
13

**each** 23:17,22
26:23 53:2
57:9

**earlier** 33:4,8
50:23 53:5
59:19 61:4

**earliest** 36:13

**early** 39:8
40:4

**easier** 27:5

**East** 7:22
8:19 12:14
13:11 14:23
36:23 38:21
40:4,10 41:12
52:3 64:24

**effect** 53:9

**eight** 23:23

**either** 12:18
15:9,11 17:10
20:14 27:4
37:22 45:11
54:16,18
63:6,8

**employed**
11:13 61:9

**employee**
7:11 8:9

**employment**
10:2 11:12

**end** 14:12
25:3 30:9
49:3 57:17
58:17

**ending** 47:9,

13

**English** 51:17

**enough** 42:20

**entities** 10:15
11:13 12:12
16:10

**entity** 10:8
16:6

**entries** 47:21

**entry** 30:14
42:9 43:1

**equal** 58:2

**essentially**
61:4

**estimate**
64:12

**ethical** 37:22
38:8,14

**even** 27:15
46:9

**event** 42:5
55:13

**every** 23:17

41:14 52:11
53:2 57:9
58:7

**everybody**
33:15

**everyone**
67:1

**everyone's**
66:22

**everything**
21:14

**evident** 65:14

**EXAMINATIO
N** 9:18 65:11

**except** 34:18
43:23 44:12
55:2

**exception**
62:7

**excuse** 42:15

**execute**
61:18

**exhibit** 18:17
21:23,25
22:3,8 23:12
26:11,13,14

29:24 31:19,
24 32:1,3,6,
16 33:21
40:18,19,21,
23,24 41:11
43:22 46:15
50:20,23 54:5
55:21,23

**exhibits** 7:4
14:17,18,20
15:1,3 60:21
62:2,5,17
63:6 64:11
66:1,4,14

**exist** 53:19

**existed** 54:1

**expenditures**
20:4 45:17,19

**expense** 38:9

**expenses**
25:25 36:17
39:12 41:21
44:23 46:5,6
48:17 53:11
54:10

**experience**
23:11 26:4
46:3

**explain** 22:20
27:18 53:6

30(B)(6) JOHN STRAUSSER - 10/13/2021

Index: Exploration..future

**Exploration**
7:7,18 8:5,16
11:3,8,22,23
25:8

**extent** 13:25
16:5 19:12
31:11 34:21
39:3 49:16
50:15 59:11
61:11 62:13
63:2 64:8

**extremely**
56:5

**F**

**fact** 62:25

**fair** 14:11
65:13

**familiar** 13:6,
9 14:12,22
22:3 26:16

**familiarize**
41:15

**familiarizing**
40:24

**far** 22:17
63:12

**February**

18:1 34:2
43:14,18
49:5,6,14,19
50:14 51:21
57:24 58:19,
24 59:5

**federal** 12:22

**feedback**
30:7,9 42:2

**feelings**
59:21

**feet** 56:7

**fellow** 53:22

**Field** 23:18

**figure** 33:3

**figures** 24:17

**filed** 16:11
47:9 53:3

**filing** 16:25
17:22 20:23
21:7 50:7
60:11

**fill** 11:17

**financial** 11:3

12:6,9,11,13
13:16,20,23
14:6

**find** 33:24
48:22

**fine** 20:3
64:21

**finer** 50:22

**finish** 51:8

**finished**
66:25

**firm** 10:9

**first** 7:20 9:7
10:17 11:13,
14 14:18 20:4
21:16 23:11
24:2,3 28:20
30:14 41:23
47:8

**five** 62:19

**five-minute**
35:22 60:22

**float** 37:6
50:18 53:8
59:20

**floating** 55:15

**folks** 42:20

**followed**
22:19

**following** 7:1
19:18 58:25
59:1,3

**follows** 9:8

**form** 15:24
19:12 20:10
21:2 25:14
28:7 32:20
36:18 37:16,
23,24 38:5
39:13 43:15
46:12 48:19
50:3 51:23,25
52:13 53:13,
24 54:22
56:18 57:12
60:9

**former** 51:17

**forward** 52:4,
17 65:16

**forwarding**
61:13

**foundation**
36:18 39:13
57:12 60:9

**four** 51:6 52:9

62:18

**frame** 44:24

**frankly** 56:6

**front** 62:13

**frowned-upon**
46:9

**froze** 33:9

**full** 9:20

**functions**
12:6,10 13:1,
3,5

**funds** 18:25
19:6,8,22,24
20:4,23 21:8,
16 25:22 31:6
33:1 34:9,10,
13,17 35:3
39:10 42:21
43:2 44:16,22
45:10,15,16
46:1,4,24
47:16,24
48:10,16 49:6
51:12,14 52:2
53:6,9 58:12
59:9

**Further** 30:24

**future** 63:3

**G**

**gas** 15:9,20, 23 16:2,6 23:14 26:24 54:21

**generally** 43:19 59:25

**generation** 22:13

**generically** 37:6

**get all** 57:16

**getting** 11:1 30:6,8 42:1

**give** 7:25 27:4 50:25 55:24 60:20

**given** 60:1

**goes** 23:13

**gone** 26:9 39:21 46:5

**good** 60:15

**Goodway** 19:1 21:13

**great** 34:15

**Greenhouse** 8:21 65:1

**gross** 23:23 24:2,10,14

**grounds** 63:4

**guess** 22:15 40:7,13 51:15 53:5 57:2

**H**

**Hamill** 7:10 8:8

**hand** 9:4 27:11 47:24 48:9

**handle** 14:6 66:15

**happen** 21:20 34:5

**happened** 16:24 49:21 50:6,12 51:20 52:6 53:18

**happy** 53:21

**Harris** 12:19

**having** 9:7 13:20 31:8,9

**headquartered** 10:17

**hear** 7:20 28:21 36:9

**heard** 33:7

**hearing** 20:19 33:18 34:15, 23 63:3 64:9

**hearsay** 62:7 63:11

**held** 7:8 8:6 12:16

**here** 11:7 42:22 46:18 50:4

**hired** 11:17 13:19

**historical** 41:9

**hoc** 8:22

**Hold** 28:18

35:17

**holder** 52:5

**hour** 67:4

**Howard** 12:19 59:8

**however** 41:6

**I**

**idea** 57:21

**identified** 63:7

**identify** 7:14 8:12 48:21

**identifying** 19:10

**immediately** 14:12

**impose** 61:10

**incapable** 38:24

**included** 16:19 34:9 52:18

**inclusive** 44:21

**index** 15:3

**individually** 19:13

**information** 29:24 59:12 61:14

**initials** 26:22, 23

**instance** 15:14 17:13 23:18 27:19 34:6 52:20

**instances** 53:15

**instead** 56:3

**instruct** 37:25 38:5

**instructions** 17:17

**insufficient** 18:3,5 25:22 31:6

**intend** 60:18

intention 10:23

interest 8:22 15:10,16 16:2,6,20 17:11,16,19, 22 19:5,10,17 20:24,25 21:9,17 26:24,25 29:25 34:19 35:4,10,11, 13,14 36:16 37:10 39:11 40:9 42:11 45:11,23 47:17 48:1,11 49:20 50:13, 14 51:21 52:5,22 53:22 54:20 57:20 58:8

interested 51:10

interim 50:24 52:9

internet 33:14 35:17,19

into 11:11 15:8,17 16:10 19:22 20:9 37:8 39:18,25 43:2,25 47:12 49:3,12 54:14 60:18

introduced 9:12

invoice 23:21

involved 22:5 26:18 30:2 31:12 32:5 52:7 55:1,25

issue 60:18

issues 13:14

items 46:20

iteration 56:14

J

jacket 24:23

January 17:19,20,21 34:1 41:7,8 43:10,11 57:24 58:13

JIB 22:25 54:18

JIBS 27:22

job 12:3

John 7:6,16 8:4,14 9:6,22 65:20

Johnson 8:23 65:3

Join 36:20 52:14

Jones 59:8

Judge 38:10

Julie 23:5 31:13,23

jump 14:12

K

Katchadurian 64:6

keep 57:17

Keri 7:17 8:15 55:12 65:7

Kim 8:24 65:4

kind 10:7,10, 13 12:11,22 41:8 47:2

kinds 26:3

kitty 21:6

knowledge 29:6 31:14, 18,23,25

known 39:1

knows 48:23

L

L14 57:21,22

L15 57:21,22

language 52:10

large 24:3

last 35:20 42:9 51:10

late 14:7 17:23,25 19:21

latter 44:17

least 10:22 12:7 23:19,23

leave 38:24 61:23 62:1

left 27:10 40:14 45:5 62:10

left-hand 26:21 32:12

legal 31:3,4,7 34:22 35:6 37:24 48:3,12 49:8,17 50:16 53:24

lender 12:14

lengthy 56:5

let 16:1 38:10

like 12:23 14:16 17:16, 18 21:24 23:19,22 25:3 32:16 38:15, 17,22 39:7 40:17 41:5 42:11 62:4, 13,22 66:3

likely 24:12 31:14 62:24 64:9

line 57:3

lines 22:20

list 14:17

62:12

**listed** 15:5

**lists** 57:15

**litany** 62:8

**Litigation**
7:11 8:9

**little** 11:11
12:8 16:9
30:9 33:3
36:11

**live** 61:4

**LLC** 7:7 8:5
25:8

**located** 61:6

**long** 56:7
57:16

**longer** 11:6
61:9

**longstanding**
60:2

**looked** 28:7
32:15,16

**looking** 40:3,

**4** 41:23

**looks** 23:19,
22 25:3 41:5
42:10 46:19

**lost** 28:22

**lot** 30:6 42:1
46:19

**Louisiana**
10:18 61:12

**lower** 44:9
56:8

**lucky** 42:20

————

**M**

**made** 36:15
42:21 46:4

**maintained**
13:10 14:23

**major's** 51:18

**make** 13:23
14:5 25:11
39:1 55:17
60:8 66:20

**management**
39:2

**manner** 50:8

**March** 15:4
17:23 18:18
19:2,21 22:12
34:3 41:4,12
42:22 43:6,7,
9,24 44:1,13,
20 45:4,6,15,
16 49:3
58:15,17 59:6
60:13 62:19,
21 65:15

**Maren** 9:1

**margin** 26:22

**Marie** 7:10
8:8

**marked** 7:4
14:20 15:1
21:23 26:11
32:1 40:19
50:20 55:21
62:2

**Marshall** 59:8

**math** 58:6

**matter** 8:4
60:19

**matters** 31:24

**may** 14:3

25:16 46:13
48:14 50:25
53:19 61:22
62:20

**maybe** 34:18
41:5 60:1

**mean** 13:11
14:5 17:20
26:4,5 27:19
28:11 29:13
30:19 32:18
34:12 38:7,11
50:3 54:1
57:22 61:5

**meaning**
57:22

**means** 19:9
25:11 26:9
29:6 32:23
50:18 58:22

**media** 7:6 8:3

**meetings**
59:8

**mentioned**
48:24 60:2

**Michael** 9:22

**microphone**
30:8 42:2,4

**middle** 42:6
47:2

**might** 21:25

**minimally**
56:2

**miniscule**
44:12

**minor** 43:24

**minus** 48:9
49:24 54:2

**minute** 28:23
60:20

**mischaracteri
zes** 36:19
48:4 53:25

**mistake**
34:22

**moment**
28:25 51:1
55:24

**money** 16:13
17:23 18:2,3,
5,7,13 19:5
20:8 21:13,15
25:24 26:6,9
29:14,19,20
30:16 36:15

37:7,9 39:16,
18,25 40:14
41:20 44:19
48:8 49:7,22
50:6,12,14
51:19,20 52:6
53:18,19,23
54:1,13,15,
17,19 55:1,3
58:22,25

**month** 19:17,
21 21:1,3,4
28:14 29:1,7
32:17 34:3
43:6,7,8,13
44:2,4,17
49:4 58:23,25
59:2,3 60:7

**monthly**
52:21 53:2
64:13

**months** 32:17
41:4 43:21

**more** 40:3
60:1

**most** 10:24
16:15 31:14

**motion** 62:11

**move** 37:25
59:21 61:11

**moving** 45:25

**much** 14:13
19:11 55:16

**multi** 52:15

**music** 60:7

## N

**N-E-T-T-E-R-
V-I-L-L-E** 10:6

**name** 9:20
10:17 23:13
27:16

**names** 23:14

**nature** 31:10
60:2 61:20

**need** 14:21
20:13 32:25
33:23 41:13,
14 50:25
55:13 65:25

**net** 17:9
23:23 24:6,
10,18,22 25:2

**Netterville**
10:3,6

**never** 15:22
39:21 40:14

46:10 50:1
52:24 54:25

**New** 27:20

**next** 28:3
30:13 42:9

**nods** 18:21

**non-debtor**
15:16 16:20
21:9 37:10

**nondisclosur
e** 61:19

**None** 52:15

**Nonetheless**
47:23

**norm** 17:7
44:18

**normal** 48:15

**notation** 53:2

**noted** 47:6
53:3

**nothing** 33:9

**Notice** 60:17
62:11

**notion** 58:12

**November**
11:14,17
36:13 41:5

**number** 7:6
8:3 21:25
23:21 24:2
27:5,15 28:7,
12 31:24
32:3,6 40:18,
22,23 41:11
43:23 45:9
46:16 50:23
51:6 57:6
60:15 63:13

**numbers**
26:22,23 27:6
55:15

## O

**object** 13:25
15:24 19:12
21:2 25:14
34:21 36:18
37:16,23,24
38:4 39:3,13
43:15 46:12
48:19 50:2
51:23,25
52:13 53:13,
24 54:22
56:18 57:12
60:9 63:4

**objecting**

38:19

**objection**
14:8 20:10
32:20 35:6
36:20 38:16,
18 48:3,12
49:8,16 50:2,
15 52:14
59:11,18

**objections**
64:8

**observed**
33:21

**obviously**
26:5 41:13

**occurs** 55:18

**October** 7:9
8:7 67:5

**off** 7:13 8:11
27:16 35:25
36:3 60:23
65:21

**officer** 11:3

**official** 12:22

**often** 17:4

**oil** 15:9,20,23

30(B)(6) JOHN STRAUSSER - 10/13/2021

16:2,6 23:14,
20 26:24
54:20 60:13

once 11:2

one 7:6,25
8:3 20:3
23:12,17,22
24:1 27:12
28:11,23 34:3
39:24 47:8
51:1,3 56:9
57:20 58:25
65:8

ones 42:15
62:9

only 11:23
39:25 40:5
45:5 66:3,13

open 14:21
22:1

operating
15:4,17 20:9,
11,12,15
25:25 36:16
37:9 39:11,19
41:20 43:3
44:21,22
46:1,5,6 47:6,
10,20 49:12
52:16,21
53:2,10,11
54:7,17 55:10
62:20 64:13

operation
54:10

operational
45:17,18

operations
18:9 49:1

opinion 37:17
38:7

opportunity
66:19

optimal
37:19,20

order 31:9
50:9,11,24
52:9,11 62:11
63:22 66:3,13

orders 65:22
66:23

ordinarily
34:7 58:12

ordinary 34:5
54:10 63:9,18

otherwise
21:8 54:11

outside 38:11
49:19

outstanding
40:8 58:8

over 22:17
26:21 28:6
60:21

overbroad
49:9

oversaw 13:3

owed 19:16
22:11 29:20
32:23 35:4

owing 22:11
28:13,24
32:23 35:12

owned 15:20

owner 25:19
27:15 31:8
58:8

owners 8:22
15:10,16
16:20 17:11,
16,20,22
19:6,10 20:24
21:1,9,17
29:25 34:19
35:5,10,11,
13,15 36:16
37:10 39:11
40:9 42:12
45:12,24

48:1,11 49:20
50:13 51:21
52:22 53:22
54:16

ownership
26:24

_____

P

_____

P-O-S-T-L-E-
W-A-I-T-E
10:5

p.m. 60:25
61:2 65:21
67:4

paid 17:1,2,
10,15,21 18:2
19:5,10,11
20:25 21:9,15
22:12 25:20,
21 29:9,14,21
30:1 32:24
33:25 34:16
43:8 46:7
47:25 49:3,
15,19 53:3
54:11,16 59:3

paragraph
51:6 52:8

paren 28:3
29:13

parenthesis

30:15 31:1
32:18

parse 46:22

part 10:24
16:15 27:16
44:17 56:8
61:23,25
63:21

particular
10:10 13:14
29:23 30:2
31:18

particularly
21:1 51:10
56:16

parties 19:17
58:7

Partnership
8:18 9:15
22:12 24:24
25:4 27:15,23
28:14,24
29:10 32:24
41:2 49:15
57:4

Partnership's
50:12

pass 64:17

pause 7:24

MSTrust_007152

**pay** 18:4,7,10, 14 21:15 25:22,25 36:16 41:20 44:22 45:17, 18,23 46:4 48:17 53:11

**payable** 13:2 15:9,15 16:21 19:6 20:25 21:8 23:15 25:2,19 29:16 43:19 44:16 45:11 57:10 58:13,14,20 59:1,3 64:12

**paying** 38:25 43:4

**payment** 17:9,17 20:5 24:24 35:2 40:7,8 42:11 60:8

**payments** 41:9 42:15,16 43:25 44:11 45:24 46:23 54:18

**people** 9:11

**percentage** 23:21

**perform**

10:11

**performed** 13:1

**performing** 13:5

**perhaps** 35:22

**period** 27:25 30:2 38:23 45:15 46:14 49:11

**Periodic** 12:13

**person** 7:20 26:24 31:14, 22

**petition** 17:15 19:23 20:2,5, 23 34:11,17 40:9 51:13 52:17 54:2 56:22

**Petty** 31:2,4,5

**phrase** 12:8

**pick** 24:1

**place** 8:1 10:1

**placed** 33:22

**plant** 60:18

**plus** 58:2

**point** 36:13, 14 50:22 64:7,10 65:8

**popped** 45:7

**position** 11:16,18

**possible** 14:13

**post** 8:24 50:7

**Post-confirmation** 65:4

**post-petition** 53:16

**Postlewaite** 10:3,16

**practice** 37:2, 4,12,14,15 38:15,22 39:7,9 46:9 48:15 59:20, 21 60:1

**preauthorized** 45:23

**precipitously** 60:14

**preparation** 22:6 26:19 31:13 32:5 56:1

**prepared** 56:3 63:8,14, 16,17,24

**preparing** 52:8 56:16

**present** 7:14 8:12

**presented** 12:14

**preserve** 63:3

**presumably** 54:4 58:1

**previously** 20:18

**prices** 60:13

**primarily** 12:14

**printed** 56:6

**prior** 16:24 17:14,22 29:16 34:22 36:19 48:4

**privileged** 14:1 38:6 39:4 59:12

**probably** 56:7

**Procedure** 7:3

**proceedings** 7:1,24 67:3

**process** 21:13

**produce** 52:25

**produced** 60:16

**production** 16:12,17 17:21 19:1 21:4,14 34:1, 2 40:1 41:2,4 43:8,18,25 44:17 46:24 49:4,7 50:14 52:15 58:14, 19 59:1,2,5

30(B)(6) JOHN STRAUSSER – 10/13/2021

**products**
22:11

**professional**
10:7

**proper** 17:17

**properties**
41:3

**property**
23:13

**prospects**
23:15

**prove** 64:2,5

**provide** 10:8

**provided**
17:17 41:1
51:11 52:23

**public** 10:9

**pulled** 51:1,3

**purchasers**
15:9 16:12,17
21:14 40:1
44:16 46:23

**purchases**
19:1

**purports**
41:16

**purpose** 25:7
43:3 56:15
62:6 63:11,17

**purposes**
55:18

**pursuant** 7:2

**put** 16:1 37:8
50:22 54:14

_____

**Q**

**question** 14:4
18:12 21:11
28:19 29:4
31:21 32:9
33:5,23 34:25
38:14

**questions**
60:21 62:8
64:19,24
65:2,5

**quite** 39:9

_____

**R**

**R-U-D** 27:10,
11

**R-U-D-P**
27:12 32:12
57:3

**raise** 9:4

**range** 41:10

**rationalize**
53:6

**re-ask** 29:3

**read** 51:7,9
66:8,10,16,19

**reading** 51:8

**ready** 9:17

**really** 25:6
57:16

**reason** 11:1

**reasons**
17:16

**reboot** 35:23

**recall** 36:14
39:12 56:20
63:20

**receipt** 16:25
19:18 39:18

**receivable**
13:3

**received**
15:8,13,22
16:12 18:15,
25 19:22
21:3,13 33:24
34:2,3 42:21,
22 59:6

**recess** 36:5
60:25

**recognize**
14:11

**recollection**
47:18 60:6

**recommendat
ions** 14:6

**recommends**
13:23

**reconnect**
35:23

**record** 7:13
8:1,11 9:21
19:8,16 36:1,
3,7 51:13
55:12 60:24
61:2 65:8,21,
23

**recorded**

**receivable**
13:3

**records** 20:13
62:6,7,24
63:10

**red** 27:8

**redacted**
55:14

**redacting**
55:19

**refer** 12:1,2

**referenced**
59:19

**referred** 37:5

**referring**
48:6,7,8,20

**Refining** 19:1

**reflect** 24:18

**regard** 39:2

**regulatory**
12:22

**relative** 57:23

**relevant**

7:12 8:10

37:17 38:8 52:18

**remained** 29:17 49:25

**remaining** 34:17 35:3

**remember** 34:20 57:25

**repeat** 12:8 14:4 18:11 21:11 34:25

**rephrase** 43:16

**report** 12:21 22:14 25:9 52:21 53:2

**reporter** 7:9, 19,23 8:7 9:2, 4,9,16 10:4 18:11 28:15, 19,22 29:2 31:20 33:19 35:8,14,25 36:22,24 38:19 45:18 55:7 64:3 65:22 66:5,8, 15,22,25

**reporting** 12:6,9,11,15

**reports** 52:16 64:13

**represent** 52:10

**representative** 19:14

**represented** 24:23 33:2

**request** 53:4

**requests** 59:12

**require** 64:1,5

**required** 63:21

**reserving** 64:7

**reside** 9:24

**residence** 10:20

**resolved** 60:19

**response** 59:24

**responsibilities** 11:20

**returned** 40:6 46:20

**rev** 56:10

**revenue** 14:23 15:7 16:13 17:1, 11,20 18:3,6, 18,20 19:18, 19,22,25 20:4 21:7 22:10,25 23:21 25:18 27:24 28:11 29:6 30:21,25 34:10,18 37:8 38:25 39:22, 25 40:5 41:20 42:11 43:2,25 46:4,5,11,16 47:20 49:3, 12,23,25 50:7 51:12 52:3 53:3,9,20 54:2,4,16 55:2 56:21 57:20,21 58:9 59:9 62:14, 18,19 63:7 64:12 65:14

**revenues** 15:9,12,15,23 16:3,7,12,16, 20,21 17:15, 19 20:20 21:3,6 23:15

33:24 34:1,2 35:4 38:24 40:1 41:3 43:4,18 48:11 49:15,19 51:21 57:24

**right-hand** 22:18 28:6 29:18 41:25 44:9 57:8

**Riley** 7:17 8:15 13:25 14:8 15:24 19:12 20:10 21:2 25:14 28:18 29:3 30:5,11 32:20 33:5,7,12 34:21 35:6, 10,17 36:18 37:16,24 38:3,7,11,18 39:3,13 42:1 43:15 46:12 48:3,6,12,19 49:8,16 50:2, 15,23,25 51:3,23 52:14 53:13,24 54:22 55:16, 20 56:18 57:12 59:11, 18 60:9 61:13 62:4,9,12,22 63:2,12,16, 20,24 64:7, 14,21 65:7, 12,18 66:6,7, 10,13,17

**risk** 38:23

**room** 33:14

**Rouge** 10:18, 20

**royalties** 17:1,9 21:15 24:13,19

**royalty** 26:25 29:25 58:8

**Rudman** 8:18 9:14 22:12 23:22 24:24 25:4 26:7 27:15,23 28:14,24 29:10,15,20, 21 32:24 41:2,9 49:15 50:12 57:3 58:5

**rule** 62:7 63:11

**Rules** 7:2

**run** 19:19 25:19 58:16

**runs** 63:7

## S

**S-E-C** 11:24

**said** 34:15 35:19 36:22 41:19 50:17 52:24 58:13 61:4 62:22

**sale** 22:10

**salted** 26:6

**same** 14:8 28:7 35:6 38:16,18 52:10 57:6 58:6 59:18 64:19

**satisfy** 41:15

**say** 9:10 11:13 12:2 13:20 14:11 17:20 21:6 24:18 27:3 29:13 33:11 44:2 51:17,18 56:21 60:7 65:13

**saying** 19:4 37:7 44:4,5 53:7

**says** 22:16

27:12,19,20 30:15,25 31:2 56:9 57:3,20

**scope** 13:4 38:12

**screen** 33:8

**SEC** 12:22 13:11 14:23 15:11,19,22 16:2 18:18 20:12,15 21:7 25:24 30:1 41:13 62:18

**SEC's** 20:19

**second** 8:1

**section** 46:18

**segregated** 26:6

**sent** 50:23

**sentences** 51:11

**separately** 13:11

**services** 7:11 8:9 10:8

**set** 31:24 57:23

**seven** 62:20

**several** 27:11 30:24 56:7

**severance** 17:2,4,9 21:16 24:13, 16,19

**share** 41:2

**shareholder** 12:18

**sheets** 63:6

**shifting** 46:1

**Shortly** 18:15 60:11

**should** 19:6 25:2 34:5 35:21,22 43:8,13 54:11,25 56:21 58:7, 14,19

**show** 43:1 51:18 53:8 57:9

**showed**

52:16

**shown** 51:13

**shows** 23:12, 14,17,20,21 24:6,22 42:10 51:19

**Shreveport** 23:6,7

**Sibley** 9:14

**side** 57:8

**sign** 66:8,11, 16,19

**signed** 31:9

**Silberstein** 9:1

**similar** 26:13 32:15 52:12

**simply** 61:8

**single** 52:11 58:7

**sir** 9:5,9,16, 21 12:17,20 17:25 18:11 29:8,22 36:10

43:12 55:22 58:25

**situations** 31:8

**six** 62:20

**Skelton** 7:23 8:17 9:17,19 14:3,10,21 15:2 16:1 18:13 19:20 20:12 21:5,24 25:16 26:12 28:16,18,21 29:5 30:5,10, 12 31:22 32:2,22 33:6, 10,16,20 34:24 35:11, 18,20 36:2,8, 21 37:1,18 38:2,4,10,13, 17,22 39:1,8, 15 40:21 42:1,3,5 43:17 45:19, 21 46:13 48:5,8,14,22 49:2,14,21 50:4,10,21,25 51:2,5,16 52:5,20 53:17 54:5,25 55:9, 12,17,22 56:23 57:14 59:15,23 60:12 61:3 62:4,10,16 63:1,5,14,19,

23 64:1,5,11,
16 65:6,10,24
66:12,18,24

**Sklar** 7:7,18
8:5,16 11:3,8,
13,14,17,20,
21,22,23
12:3,4,12,19
13:7,10,13,20
14:14 16:5,10
25:8 36:12
39:1,10 59:8
61:9,18

**Sklar's** 14:6
22:25

**Sklar-
operated** 41:3

**Sklarco** 7:7,
18 8:5,16
11:3,8,22
12:1,2 13:11
15:10,11
16:7,21 20:6,
9,15 25:25
34:17 35:2
45:11 53:11
54:19 55:2

**Sklarco's**
20:20 43:4
47:17

**Sklarex** 56:9

**slow** 12:7

**Smith** 23:5
31:13,23

**sole** 12:18

**something**
17:18 30:8
33:7 52:11

**soon** 14:13

**sorry** 18:11
29:3 31:20
35:14,18
36:22 41:8
44:2 55:7
62:17 64:4

**sort** 15:3,15
61:18

**sorts** 10:15

**Southeast**
23:20

**Southwest**
23:20

**speaks** 33:19

**specific**
48:20 62:12
63:17

**specifically**
34:6

**specified**
7:13 8:11

**spell** 10:4

**spent** 19:23
50:19

**spread** 63:6

**standing**
37:2,4,14

**standpoint**
51:18

**started** 45:6

**starting** 65:15

**state** 9:7,20,
24 12:22

**stated** 42:22

**statement**
18:18 40:5
41:12 44:8
46:16

**statements**
12:13 52:3,19
55:10,13
62:14,19,21,
23 65:15

**still** 33:6

53:19,23 54:4

**stills** 23:8

**stipulate**
62:24 63:10
64:14

**stipulated**
50:8

**stipulations**
64:9,20

**stop** 40:8

**stopped** 40:7
60:7

**Strausser**
7:6,16 8:4,14
9:6,22,23
33:21 36:8
61:3 65:9,13,
20 66:19

**subsequent**
20:22

**substance**
59:16

**substantial**
19:21

**substantially**
35:3 48:10

**subtracted**
24:9

**such** 31:8
53:15 55:14

**sum** 26:6
53:3 58:1

**summary**
63:21

**supervised**
52:7

**suppose**
58:11

**survive** 20:20

**suspended**
25:20,21 31:6

**suspense**
25:7,9,12,13
26:4 28:4,17
29:13,17
31:1,2,3,4,5,7
32:18 33:2,22
56:10,15
57:7,10,20,
21,23 58:3

**Suzuki** 7:21
8:19 36:20,23
37:23 38:16,
21 51:25
52:1,13 64:23

MSTrust_007157

30(B)(6) JOHN STRAUSSER - 10/13/2021

swear 9:3

sworn 9:7

system 13:6
19:19

---

T

---

t-o 29:14

tab 56:12,16

tabs 56:7,8

take 8:1 35:22
36:15 39:10
60:22

taken 7:2
36:5 37:8
45:16 60:25

talk 11:21,23

talked 21:12

talking 16:24
21:3,5

tax 24:16

taxes 17:2,5,9
21:16 24:13
45:24

taxing 17:5

team 56:4

term 13:15

termination
61:18

terms 12:15

testified 9:8
20:18

testimony
34:23 36:19
41:18 48:4
53:25

Texas 9:15

texting 33:15

than 17:16
31:13,23 43:3
45:21 47:21,
25 52:15
53:10

their 41:2
42:21 46:24
59:23 64:15

themselves
7:14 8:12
9:12

thing 22:15
35:20 39:24

things 31:9
63:7

thinking
23:11

third 50:24
52:9

three 62:18

through
14:17 16:23
22:13,16
39:21 41:4
46:22 49:10
62:5,8,17
63:6 64:6

time 10:22
22:18 30:2
36:12 44:24
45:15 46:14
49:11 58:6
64:17,25 66:7

times 7:12
8:10 17:4
22:16

today 41:18
50:24 54:4

Tom 8:23
65:4

top 24:4 41:7

total 29:18
30:20 33:22
53:3 57:18,19
58:2

towards
58:17

transaction
45:25

transactions
48:20 65:14

transcript
66:3,20

transfer
17:10 47:19

transferred
16:16

transfers
44:12 47:5
48:21 49:11,
24 54:3

treasury 12:6,
9,25

Trey 9:14

tried 53:5

true 16:15,25
19:20 20:22
23:12 35:1
48:16 55:5,9

Trust 9:1
12:19

trustee 8:24
65:4

truth 9:7

trying 42:25
48:22 50:4,5
61:10

turn 14:18
21:25 26:12,
13 27:3 32:11
51:5 55:23
57:1

twelve 61:2

two 8:2 32:16
43:21 47:5,
21,25 48:24
49:24 51:11
53:10 54:2
57:19

typical 44:15

typically 17:2
22:19 44:16

MSTrust_007158

### U

**ultimately**
33:2 48:17
53:7 60:4

**Um-hmm**
27:24 56:13

**under** 24:2
42:9 43:23
63:8

**understand**
33:10 43:1
50:10 64:3

**Understood**
44:10 55:20

**unique** 26:23

**unit** 23:20
57:9

**units** 23:14
57:15

**unless** 7:12
8:10 38:5
44:20 54:14

**unpaid** 27:22
56:21 57:24
58:9

**use** 10:17

11:21,23
20:20 39:11
45:14 46:4
53:6 55:13,14
59:9

**used** 18:7,10,
13 25:24
41:19 44:22
45:17,18
48:1,17 49:1,
7 50:1,3,8
53:8 54:20
63:3 64:8

**using** 36:16
59:20

### V

**vague** 15:24
20:10 21:2
43:15 48:7,19
49:9 50:3

**various** 13:10
16:16 19:1
21:14 23:14
41:3 46:23

**versus** 19:13

**via** 7:8 8:6

**video** 7:8,13
8:6,11 65:24
66:4

**videotape**
65:20

**voluntary**
61:22,25

### W

**waiving** 66:8

**walk** 16:23

**walked** 49:10

**want** 13:15
14:18 22:1
52:6 60:21
65:8,24 66:10

**way** 16:1
54:15 57:16,
17

**weak** 33:14

**Wednesday**
7:8 8:6

**wells** 15:20
23:14 54:21
57:15

**went** 7:23
20:14,15
21:15 39:25
51:19

**West** 7:22
8:20 12:14
13:11 14:23
36:23 38:21
40:4,10 41:12
52:3 64:24

**whatever**
27:1 35:18
41:14 61:12

**Whereas** 31:7

**WHEREUPON**
7:1 67:3

**wherever**
57:15

**whether** 23:8
26:25 59:7
61:22,23

**while** 30:5

**Whoever**
38:19

**whole** 9:7

**whom** 19:6

**will** 9:2 22:19
27:3,5 55:2,
14 56:8 61:12
64:17

**wire** 16:16

17:10 42:16,
17,18,21
44:11

**wired** 17:5
46:24

**within** 67:3

**without** 20:19
62:8 66:4

**witness** 7:15
8:13 9:3 11:8
18:21 37:25
64:17

**witness's**
33:14

**words** 19:9
25:18 40:6

**work** 10:3,11,
24

**working** 8:22
10:23 15:10,
16 16:20
17:11,15,19,
22 19:5,10,16
20:24,25
21:9,17 24:4
26:25 29:25
34:19 35:4,8,
10,11,12,14
36:12,15
37:10 39:11

40:9 42:11
45:11,23
47:17,25
48:11 49:20
50:13 51:20
52:22 53:22
58:7

**works** 23:9

**world** 16:10

**written** 30:21,
22 52:23

---

**Y**

---

**yourself**
41:15

---

**Z**

---

**Zoom** 7:8 8:6
9:11

MSTrust_007160