## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | Case No. 20-12377-EEB |
| ) | |
| ) | |
| SKLAR EXPLORATION COMPANY, LLC, ) | Chapter 11 |
| ) | |
| Debtor-in-Possession. ) | |
| ) | |
| ) | |
| IN RE: ) | Case No. 20-12380-EEB |
| ) | |
| SKLARCO, LLC ) | Chapter 11 |
| ) | |
| Debtor-in-Possession. ) | |

### NEXTIER COMPLETION SERVICES INC.'S TRADITIONAL MOTION FOR SUMMARY JUDGMENT

Creditor, NexTier Completion Solutions Inc. ("NexTier"), files this Traditional Motion for Summary Judgment seeking an order granting its Amended Motion for Order Allowing Administrative Expense Pursuant to 11 U.S.C. § 503(b)(9) as a matter of law (the "MSJ"). In support hereof, NexTier states as follows:

### I. Procedural Background

1. On October 21, 2021, NexTier filed its Motion for Order Allowing Administrative Expense Pursuant to 11 U.S.C. § 503(b)(9) (Docket No. 1479) which was subsequently amended (Docket No. 1538) (the "Motion"). The Motion seeks entry of an order, pursuant to section 503(b)(9) of title 11 of the United States Code (the "Bankruptcy Code"), allowing NexTier's administrative expenses for goods delivered to Sklar Exploration Company, LLC (the "Debtor") during the 20-day period (the "503(b)(9) Period") immediately preceding April 1, 2020 (the "Petition Date") in the amount of $62,693.34 (the "503(b)(9) Claim").

2. Debtor objected to the Motion on November 12, 2021 (Docket No. 1530), claiming the Motion was time barred and that NexTier supplied services to Debtor, not goods, because the invoices were primarily for services and not goods.

3. The Parties conferred but were unable to reach an agreement concerning the two questions at issue, whether the Motion was time barred, and whether a creditor can still be granted a § 503(b)(9) administrative claim for goods supplied to a debtor when the goods were supplied with services. A hearing was held on January 19, 2022, and the Court determined that these two issues should be resolved by simultaneous motions for summary judgment, and replies, if necessary.

## II. Burden of Proof

4. Federal Rule of Civil Procedure 56(a) is made applicable to this MSJ by Federal Rule of Bankruptcy Procedure 7056. Per Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(a).

5. Accordingly, the party moving for summary judgment bears the initial burden of demonstrating there are no material issues of fact. *Conn. Ironworkers Emp'rs Ass'n v. New England Reg'l Council of Carpenters*, 869 F.3d 92, 98-99 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 1547, 200 L. Ed. 2d 740 (2018) (other citations omitted). If the moving party meets its burden, the "party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Official Comm. of Unsecured Creditors of Affinity Health Care Mgmt., Inc. v. Wellner (In re Affinity Health Care Mgmt., Inc.)*, 499 B.R. 246, 251 (Bankr. D. Conn. 2013).

## III. Elements of Claim

6. There are four elements for a claim made pursuant to 11 U.S.C. § 503(b)(9): (1) the expense must be for goods sold to the debtor; (2) in the ordinary course of the debtor's business; (3) received by the debtor within 20 days prior to the petition date; and (4) the allowed expense is only for the value of the goods received by the debtor during this period.

### IV. Statement of Material Facts

7. NexTier sold services and materials to Debtor during the 503(b)(9) Period as documented in true and correct copies of the invoices and field tickets previously provided to Debtor and attached to the Motion and to this MSJ as **Exhibit A** (collectively, the invoices and field tickets are referred to herein as the "Invoices").

8. The specific materials received by Debtor during the 503(b)(9) Period are highlighted in true and correct copies of the Invoices attached hereto as **Exhibit B**.

9. The parties agree that the Invoices accurately reflect the materials and services provided by NexTier to Debtor. A true and correct copy of the Joint Statement of Stipulated Facts is attached hereto as **Exhibit C** (the "Stipulated Facts").

10. As shown in the Invoices, the materials provided to Debtor during the 503(b)(9) Period include sand, acid, nitrogen, and other chemicals used to stimulate production in oil wells operated and/or owned by the Debtor. *See* Exh. A and Exh. B; *see, also* the Affidavit of Dipo Iluyomade, NexTier's Chief Accounting Officer and Treasurer, attached hereto as **Exhibit D** (the "NexTier Affidavit").

11. The materials sold to Debtor during the 503(b)(9) Period were moveable when identified in the field tickets and delivered to the Debtor's well sites. *See* Exh. A, Exh. B, and Exh. D.

12. Debtor filed its bankruptcy petition on April 1, 2020.

13. The parties agree that the Invoices accurately reflect the dates on which the services and goods were received by Debtor, if the Court finds that NexTier's materials were goods. *See* Exh. C.

14. As shown in the Invoices, Debtor received NexTier's services and materials at issue on or after March 11, 2020, and within the 503(b)(9) Period. *See* Exh. A, Exh. B, and Exh. D.

15. Debtor's representative signed the field tickets verifying the contents therein, including the dates the services and materials were received. *See* Exh. A and Exh. B.

16. The parties agree that the Invoices accurately reflect the services and materials provided to Debtor. *See* Exh. C.

17. Debtor does not dispute the amounts owed as stated in the Invoices. *See id.*

18. As shown in the Invoices, NexTier provided materials received by Debtor during the 503(b)(9) Period in the amount of $62,693.34. *See* Exh. A, Exh. B, and Exh. D.

19. As shown in the Invoices, specifically the highlighted Invoices, NexTier only seeks its 503(b)(9) Claim for the value of the materials received by Debtor during the 503(b)(9) Period and NexTier does not include any services in its 503(b)(9) Claim. *See* Exh. A, Exh. B, and Exh. D.

20. The parties agree that the services and materials in the Invoices were sold to Debtor in the ordinary course of Debtor's business operations. *See* Exh. C.

21. The parties agree that the Notice of Bar Date did not provide a date by which claims arising under 11 U.S.C. § 503(b)(9) must be filed, thus, the parties agree that NexTier's § 503(b)(9) administrative expense claim in the Motion is not time barred. *See* Exh. C.

22. NexTier contends that there is no genuine issue of material fact, only a legal issue as to whether NexTier is entitled to a § 503(b)(9) claim for goods received by Debtor when the goods were provided with services.

### V. Legal Argument

23. The Stipulated Facts resolve the issue of the bar date. *See* Exh. C. As such, the only remaining issue in NexTier's Motion is whether NexTier met the elements of 11 U.S.C. § 503(b)(9) ("*503(b)(9)*").

#### A. NexTier Satisfies the Elements of § 503(b)(9) as a Matter of Law.

24. As shown below, NexTier meets all four elements of its 503(b)(9) claim as a matter of law.

25. First, NexTier sold goods to the Debtor, including sand, acid, nitrogen, and other chemicals used to stimulate production in oil wells operated and/or owned by the Debtor as shown in the highlighted Invoices (the "Goods"). *See* Exh. B.

26. For purposes of 503(b)(9), courts usually apply the Uniform Commercial Code's definition of "goods." Article 2 of the U.C.C. defines "goods" as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale." U.C.C. § 2-105(1).

27. The contract for sale includes NexTier's invoices and signed field tickets. *See* Exh. A, Exh. B, and Exh. D. Debtor agrees that the Invoices accurately reflect the materials and services provided by NexTier to Debtor and the quantities of the services and materials provided to Debtor. *See* Exh. C. Moreover, the materials reflected in the Invoices, including sand, acid, nitrogen, and other chemicals used to stimulate production in Debtor's wells, were movable at the time of identification, as further shown by the fact that NexTier delivered such goods to the well sites. *See*

Exh. A and Exh. B. In addition, NexTier's Chief Accounting Officer, Mr. Iluyomade, testified in his affidavit that the Goods were chemicals and other aggregates for stimulating oil wells, and were movable at the time of identification in the field tickets and when the Goods were delivered to the well sites. *See* Exh. D. Other courts have also determined that such materials are goods.[1] Finally, while NexTier provided services to the Debtor in addition to the goods, no administrative claim is being made for NexTier's services. *See* Exh. A, Exh. B, and Exh. D. Accordingly, element one of NexTier's 503(b)(9) Claim, that the expenses are for goods sold to Debtor, is met as a matter of law.

28. Second, the Goods sold to Debtor during the 503(b)(9) Period were sold to Debtor in the ordinary course of Debtor's business. This is agreed to between the parties in the Stipulated Facts. *See* Exh. C. As such, element two of NexTier's 503(b)(9) Claim, that the Goods were sold to Debtor in the ordinary course of Debtor's business, is met as a matter of law.

29. Third, the Goods sold to Debtor were received by Debtor within twenty days prior to the Petition Date, April 1, 2020. In the Stipulated Facts, the parties agree that the Invoices accurately reflect the dates on which the services and materials were provided to Debtor. *See* Exh. C. The dates in the Invoices, including the field tickets, show the dates when NexTier provided the Goods and services to Debtor. *See* Exh. A and Exh. B. The dates when the Goods were received are all within the 503(b)(9) Period. *See id.* Moreover, Debtor's authorized representatives' signatures on the field tickets further show that Debtor received the Goods within the 503(b)(9)

---

[1] *See Royster-Clark, Inc. v. Olsen's Mill, Inc.*, 2006 WI 46, ¶17 (finding that contract for sale of nitrogen was contract for goods and subject to the UCC); *see also Salt Lake City Corp. v. Kasler Corp.*, 855 F. Supp. 1560, 1564 (D. Utah 1994) (finding sand, gravel, and other aggregates are goods); *See also Cook Assocs. v. PCS Sales (USA), Inc.*, 271 F. Supp. 2d 1343, 1349 (D. Utah 2003) (finding that various chemicals were goods and subject to UCC) (other cites omitted).

Period. *See id.* As such, element three of NexTier's 503(b)(9) Claim, that the Goods were received by Debtor within twenty days prior to the petition date, is met as a matter of law.

30. Fourth, NexTier is only seeking its 503(b)(9) Claim for the value of the goods received by the Debtor during the 503(b)(9) Period. The Stipulated Facts show that Debtor agrees the Invoices accurately reflect the services and materials provided to Debtor, including the quantities of the materials and amounts owed. *See* Exh. C. As shown in the highlighted Invoices, NexTier's 503(b)(9) Claim does not include any of the services provided to Debtor. *See* Exh. B. NexTier's 503(b)(9) Claim only includes the value of the Goods received by Debtor. Mr. Iluyomade also testified to this fact. *See* Exh. D. As such, charges for services received by the Debtor during the 503(b)(9) Period are not included in the request for an allowed administrative expense. Accordingly, element four of NexTier's 503(b)(9) Claim, that NexTier's 503(b)(9) Claim is only for the value of the goods received by the Debtor, is met as a matter of law.

31. Therefore, there is no genuine issue of material fact, and NexTier has established each of the elements for its 503(b)(9) Claim as a matter of law.

### B. The Predominate Purpose Test Should Not Apply to § 503(b)(9).

32. The remaining question related to NexTier's 503(b)(9) Claim is whether this Court should apply the Uniform Commercial Code's predominate purpose test to 11 U.S.C. § 503(b)(9). Admittedly, if the Court applies the predominate purpose test and finds that there is a need to categorize the transaction as a sale of goods or not, to succeed on its 503(b)(9) Claim, NexTier will have to show the predominate purpose of its contract with Debtor was for goods. However, if the Court follows the majority approach, and finds that the predominate purpose test does not apply to 11 U.S.C. § 503(b)(9), then the value of NexTier's Goods can be apportioned and separated from the services provided, and NexTier's 503(b)(9) Claim should be granted as a matter of law.

33. As described by the court in *In re Plastech Engineered Products*, "[t]he predominant purpose test applies where there is a mixture of goods and services *and* where there is also a need to categorize the transaction as *either* a sale of goods or not." 397 B.R. 828, 837 (Bankr. E.D. Mich. 2008) (emphasis not added). The predominate purpose test applies in a non-bankruptcy law context "where a court must decide whether a particular contract either is a sale of goods or is not a sale of goods for purposes of determining whether to apply a particular body of law." *Id.*

34. The court in *In re Plastech* determined that the predominate purpose test should not apply to 11 U.S.C. § 503(b)(9). *See id.* At least five other bankruptcy and district courts have examined this issue in the context of 11 U.S.C. § 503(b)(9) and followed *In re Plastech* in rejecting the predominate purpose test in favor of an apportionment test.[2] It appears the only case in which a court applied the predominate purpose test to 11 U.S.C. § 503(b)(9) was *In re Circuit City Stores, Inc.*, 416 B.R. 531, 537-38 (Bankr. E.D. Va. 2009).

35. Courts have rejected the predominate purpose test for 11 U.S.C. § 503(b)(9) because, in transactions providing for both the sale of goods and services, the value of each of them can usually be ascertained. Thus, in the context of 11 U.S.C. § 503(b)(9), there is no need to classify the transaction as goods or services, nor is there any reason for the predominate purpose test's "winner takes all" approach. *See GFI Wis*, 2010 U.S. Dist. LEXIS 122681, at *29-30 (W.D. Wis.

---

[2] *GFI Wis., Inc. v. Reedsburg Util. Comm'n*, No. 10-cv-388-bbc, 2010 U.S. Dist. LEXIS 122681, at *1 (W.D. Wis. 2010) (rejecting use of UCC's predominate purpose test for §503(b)(9) and finding that creditor can have § 503(b)(9) claim for goods even when goods are provided with services and under a contract for services); *see also In re Erving Indus., Inc.*, 432 B.R. 354, 372 (Bankr. D. Mass. 2010) (quoting *In re Platech* for proposition that the "only relevant determination under § 503(b)(9) is the value of the 'goods' that were delivered, irrespective of whether the contract also called for the delivery and sale of services"); *see also In re Pilgrim's Pride Corp., 421 B.R. 231, 241-42 (Bankr. N.D. Tex. 2009)* (finding that §503(b)(9) applied to City's supply of water, a good, even though water was supplied with sewage and garbage removal, which are services); *see also In re NE OPCO, Inc.*, 501 B.R. 233, 258 n.8989 (Bankr. D. Del. 2013) (finding that natural gas was good and §503(b)(9) applies to goods delivered even though contract also included services); *see also In re O.W. Bunker Holding N. Am. Inc.*, 607 B.R. 47, 66 (Bankr. D. Conn. 2019) (granting § 503(b)(9) for the value of the bunker fuel provided to the debtor, but not the related services).

2010); *see also In re Erving Indus., Inc.*, 432 B.R. at 372 (Bankr. D. Mass. 2010) (quoting *In re Plastech* for proposition that the "only relevant determination under § 503(b)(9) is the value of the 'goods' that were delivered, irrespective of whether the contract also called for the delivery and sale of services"); *see also In re NE OPCO, Inc.*, 501 B.R. at 257 (Bankr. D. Del. 2013) (quoting *In re Plastech* to reject predominate purpose test as "unnecessary" for 503(b)(9) in favor of apportionment test which "is more appropriate under section 503(b)(9) context") (other citations omitted). Moreover, these courts have also found that the predominate purpose test is inconsistent with the language in 11 U.S.C. § 503(b)(9) and congressional intent. *See In re Pilgrim's Pride Corp., 421 B.R. at 237 (Bankr. N.D. Tex. 2009)* (other citations omitted).

36. The rejection of the predominate purpose test for use in 11 U.S.C. § 503(b)(9) is best summed up by the court in *In re Plastech*:

> If a particular transaction provides for *both* a sale of goods and a sale of services, and the value of each of them can be ascertained, why shouldn't the value of the goods be entitled to the § 503(b)(9) administrative expense priority and the value of the services be relegated to an unsecured non-priority claim? . . . [T]his Court does not have to reach a determination as to whether the sales . . . would be considered sales of goods for purposes of the Uniform Commercial Code, products liability law, or tax law, under a predominant purpose test. Under § 503(b)(9), that determination is irrelevant. The only relevant determination under § 503(b)(9) is the value of the "goods" that were delivered, irrespective of whether the contract also called for the delivery and sale of services. The predominant purpose test does not inform the Court as to whether a particular thing that has been sold is or is not "goods." Therefore, the predominant purpose test is unnecessary. *In re Plastech*, 397 B.R. at 837 (Bankr. E.D. Mich. 2008).

37. The other courts to reject the predominate purpose test in the § 503(b)(9) context have followed this same logic. *See supra* n. 2.

38. Moreover, many of these courts found that applying the predominate purpose test to § 503(b)(9) was not supported by the language in § 503(b)(9). For example, in deciding not to apply the predominate purpose test, the court in *In re Pilgrim's Pride* determined that "Congress,

in section 503(b)(9), did not provide any basis for excluding from the section's scope goods delivered pursuant to a contract the primary thrust of which is provision of services." *In re Pilgrim's Pride Corp.*, 421 B.R. at 237 (Bankr. N.D. Tex. 2009). Similarly, the court in *GFI Wisconsin* found that, "[n]othing in that statute calls for disqualifying a § 503(b)(9) claim just because the contract under which the eligible goods were sold also provides for the sale of services." *GFI Wis., Inc.*, 2010 U.S. Dist. LEXIS 122681, at *30 (W.D. Wis. 2010).

39. Accordingly, the majority of courts to determine if the predominate purpose should apply to § 503(b)(9) have found that it is unnecessary and against the language found in in § 503(b)(9). For these same reasons, this Court should follow the majority approach and find that the predominate purpose test should not apply to § 503(b)(9).

**C. NexTier's § 503(b)(9) Claim Must be Granted as a Matter of Law Under the Apportionment Test.**

40. In rejecting the predominate purpose test under § 503(b)(9), courts in the above-referenced cases applied an apportionment test that separates goods from services and grants the applicable § 503(b)(9) claim as to the value of the goods provided.

41. For instance, the contract in *In re Plastech* for creditor American Turf, was for services (snow removal) and goods (salt and de-icing fluid). *See In re Plastech,* 397 B.R. at 838 (Bankr. E.D. Mich. 2008). The court held that the value of the goods qualified for administrative claim status under § 503(b)(9) while the services were relegated to an unsecured claim. *See id.* The Court granted the § 503(b)(9) for the salt and de-icing fluid because these items were readily calculable in American Turf's invoices. *See id.*

42. The court in *In re O.W. Bunker Holding* granted creditor NuStar's administrative priority claim under § 503(b)(9) for the value of the bunker fuel provided to the debtor, but not the related services, such as security fees, wharfage fees, barging fees, etc., which were allowed as an

unsecured claim. *See In re O.W. Bunker Holding N. Am. Inc.*, 607 B.R. at 66 (Bankr. D. Conn. 2019). The value of the goods was shown in NuStar's invoices. *See id.*

43. The court in *GFI Wisconsin* granted the Wisconsin Electric Power Company's § 503(b)(9) claim for the value of the electricity provided to the debtor alongside its services, and found that because debtor had not disputed the value of the § 503(b)(9) claim, that Wisconsin Electric was also entitled to any service fees bundled with the value of the goods provided. *See GFI Wis., Inc.*, 2010 U.S. Dist. LEXIS 122681, at *33-34 (W.D. Wis. 2010).

44. The court in *In re NE OPCO* granted creditor Westfield a § 503(b)(9) claim for the value of the natural gas provided to the debtor, but not the associated services. *See In re NE OPCO, Inc.*, 501 B.R. at 258 (Bankr. D. Del. 2013). Most of Westfield's invoices, however, did not include metered readings necessary to separate its services from the value of its natural gas. *See id.* As such, the court reduced Westfield's § 503(b)(9) claim to only the value of the natural gas that could be shown in the invoices through metered readings. *See id.*

45. Here, the value of the goods is shown in each of NexTier's invoices and field tickets and is supported by the affidavit of NexTier's Chief Accounting Officer. *See* Exh. A, Exh. B, and Exh. D. The value of the goods is also set forth in different line items than the services and is clearly distinguishable from the services. *See id.* Moreover, in the Stipulated Facts, Debtor agrees that the Invoices are accurate representations of the services and materials provided to Debtor. *See* Exh. C. Like American Turf in *In re Plastech* and NuStar in *In re O.W. Bunker*, where creditor invoices separated the value of the goods from the services, the value of the goods supplied by NexTier is evident in the Invoices and is billed separately from NexTier's services, which are not included in its § 503(b)(9) claim. *See* Exh. A, Exh. B, and Exh. D. Dissimilarly from Wisconsin Electric in *GWI Wisconsin* and from Westfield in *In re NE OPCO*, NexTier did not bundle services

and goods in its invoice entries so that goods could not be separated from services. *See id.* As such, NexTier has provided sufficient records for the Court to apportion the value of the goods delivered from NexTier's services. Therefore, NexTier has demonstrated the amount of its § 503(b)(9) Claim as a matter of law.

### VI. <u>Conclusion</u>

46. There is no genuine issue of material fact, and NexTier has established each of the elements for its 503(b)(9) Claim as a matter of law. Further, the predominate purpose test is unnecessary for 11 U.S.C. § 503(b)(9) and its application to the statute is not supported by the plain language in § 503(b)(9). As such, this Court should apply the apportionment test used by most courts examining this issue. Under the apportionment test, NexTier has adequately separated its goods from services in its invoices and has demonstrated the amount of its § 503(b)(9) claim as a matter of law. Therefore, NexTier's § 503(b)(9) claim should be granted as a matter of law.

Dated: February 8, 2022.          By: _/s/ Mario A. Lamar_

Mario A. Lamar, Esq., TX Bar # 24095729
ALLEN BRYSON, PLLC
1920 McKinney Avenue, 7th Floor
Dallas, TX 75201
Tel:    (214) 586-0722
E-mail:  mlamar@allenbrysonlaw.com

*Counsel for NexTier Completion Solutions Inc.*