UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC ) | |
| EIN: 72-1417930 ) | Chapter 11 |
| ) | |
|    Debtor. ) | |
| ) | |
| ) | Case No. 20-12380-EEB |
| SKLARCO, LLC ) | |
| EIN: 72-1425432 ) | Chapter 11 |
|    Debtor. ) | |

**RESPONSE TO NEXTIER COMPLETION SOLUTION, INC.'S
MOTION FOR SUMMARY JUDGMENT**

The Reorganized Debtor, Sklar Exploration Company, LLC ("SEC" or "Debtor"), states its response to NexTier Completion Solution, Inc.'s Motion for Summary Judgment ("NexTier Motion") as follows:

**Response to Statement of Material Facts**

7.  The Debtor admits that NexTier Completion Solutions, Inc. ("NexTier") provided services to the Debtor in the twenty days prior to filing. The Debtor further admits that NexTier used materials in providing services.[1]

8.  The Debtor admits that the invoices attached to the NexTier Motion are true and correct copies of the invoices issued to the Debtor.

9.  The Debtor admits the factual allegations contained in Paragraph 9 of the NexTier Motion.

10. The Debtor states that the invoices demonstrate that NexTier was primarily providing services to the Debtor, and that all materials were chosen for use by NexTier in the course of providing services.

---

[1] The Debtor has numbered its paragraphs in this responsive section to correspond with the numbered paragraphs containing factual allegations in the NexTier Motion.

1

11. The Debtor does not dispute that NexTier transported the materials to the wells operated by the Debtor.

12. The Debtor admits the factual allegations contained in Paragraph 12 of the NexTier Motion.

13. The Debtor admits the factual allegations contained in Paragraph 13 of the NexTier Motion.

14. The Debtor admits the factual allegations contained in Paragraph 14 of the NexTier Motion.

15. The Debtor admits the factual allegations contained in Paragraph 15 of the NexTier Motion.

16. The Debtor admits the factual allegations contained in Paragraph 16 of the NexTier Motion.

17. The Debtor admits the factual allegations contained in Paragraph 17 of the NexTier Motion.

18. The invoices speak for themselves. To the extent the allegations contained in Paragraph 18 are inconsistent with the invoices, the Debtor denies the same.

19. The invoices speak for themselves. To the extent the allegations contained in Paragraph 19 are inconsistent with the invoices, the Debtor denies the same. The balance of the statements are legal arguments to which no response is required.

20. The Debtor admits the factual allegations contained in Paragraph 20 of the NexTier Motion.

21. The Debtor admits the factual allegations contained in Paragraph 21 of the NexTier Motion. For the avoidance of a doubt, the Debtor is no longer contesting the timeliness of the filing of the NexTier Motion.

22. Paragraph 22 is a legal argument to which no response is required. The Debtor agrees that the issues at bar in the NexTier Admin Motion are primarily legal issues over the plain language of section 503(b)(9) and the application of the primary purpose test in this case.

### Response to Legal Argument

In its Motion for Summary Judgment, NexTier asserts that it is entitled to judgment as matter of law that a portion of its claim is entitled to administrative expense priority status pursuant

to 11 U.S.C. § 503(b)(9) on the basis that materials used in the course of providing services to the Debtor constituted the sale of goods. In raising this argument, NexTier attempts to overlook the primary purpose for which its claim was incurred in an attempt to reclassify a portion of its invoices as goods. This approach is contrary to both the plain language of the statute and the congressional intent in enacting the statute.

Pursuant to section 503(b)(9), creditors may seek an allowed administrative priority claim for the "value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which goods have been sold to the debtor in the ordinary course of such debtor's business[.]" 11 U.S.C. § 503(b)(9). By mirroring the language of the Uniform Commercial Code with respect to a creditor's right of reclamation, it is evident from the plain language of section 503(b)(9) that Congress's intent is to provide similar remedies to creditors. *See In re Circuit City Stores, Inc.*, 416 B.R. 531, 536 (Bankr. E.D. Va. 2009). Specifically, U.C.C. § 2-702 provides a seller of goods with a right of reclamation within ten days of receipt if he discovers that the buyer of goods is insolvent. By mirroring both the time frame at issue and the nature of the transaction with the debtor, it is evident that section 503(b)(9) was intended to provide a remedy to the seller of goods who would have reclamation rights under the Uniform Commercial Code absent the stay imposed by the filing of a bankruptcy case, and thus application of the statute should be applied in those circumstances where the transaction at issue was for a true sale of goods.

The Court in *In re Circuit City Stores, Inc.* recognized that in many situations, creditor hold claims for transactions that involve both the delivery of products and the provisioning of services. 416 B.R. at 537. In such circumstances, the *Circuit City* Court held that it was necessary to look to cases interpreting the applicability of Uniform Commercial Code to similarly interpret the applicability of section 503(b)(9), and in doing so adopted the "predominant purpose" test. *Id*. The Court held that because the statute expressly limited 503(b)(9) claims to the value of goods that had been sold to the debtor and did not include a provision for materials provided to the debtor in performance of services, it was necessary for the court to evaluate the purpose of the transaction to determine if a creditor could receive an administrative expense priority claim under section 503(b)(9). *Id*. at 538. If the predominant purpose of the transaction with the debtor was for services, then the creditor would be left with an unsecured claim, whereas if the predominant purpose of the transaction was for the sale of goods consistent with the Uniform Commercial Code,

3

the creditor would have an allowed administrative expense claim consistent with the plain language of section 503(b)(9). *Id.*

NexTier instead advocates for the apportionment approach as adopted by the court in *In re Plastech Engineered Prods*, 397 B.R. 828, 838 (Bankr. E.D. Mich. 2008), and later expressly rejected by the court in *Circuit City*. Under the apportionment test, the bankruptcy court is asked to overlook the purpose of the statute and the nature of the transaction, and focus instead solely on whether goods were to delivered to the debtor in the twenty days prior to filing, isolating certain line items on an invoice for the purpose of establishing an administrative expense claim. 397 B.R. at 838. In rejecting this approach, the court in *Circuit City* correctly held that this expansive reading of section 503(b)(9) "ignores entirely the second half of the sentence that comprises § 503(b)(9)." 416 B.R. at 538. By focusing solely on delivery of goods and isolated line items on an invoice, the apportionment approach fails to consider whether "good have been sold to the debtor" as required by the plain language of section 503(b)(9).

In the present case, it is readily evident that NexTier provided services to the Debtor on its various operated wells to promote increased production of oil and gas products. Each of the invoices at issue includes a variety of charges for labor provided on site, transportation and hauling services, and foreman to oversee the work performed, and the descriptions at the top of each invoice include acidizing services. Materials used in the performance of such work comprise less than one third of the various line items on each of the invoices, and are vastly outweighed by the services provided instead. In each instance, the materials used were at the discretion of NexTier in providing services, and the Debtor could not control the nature, type, brand, nor amount of the materials used by NexTier in providing such services.

Applying the apportionment approach as advocated by NexTier requires this Court to overlook the forest for the trees. Instead of considering the invoice as a whole to determine the nature of what was sold to the Debtor or what the Debtor had contracted for, the apportionment approach requires a line by line analysis of each invoice in order to isolate and find goods that were delivered to the Debtor. In doing so, this approach again ignores the plain language of the second half of section 503(b)(9). It is evident from the invoices that the Debtor did not buy nitrogen, sand, acid, or other chemicals from NexTier, but rather was contracting for the services provided. As such, under the plain language of the statute and the predominant purpose test, goods

4

were not sold to the Debtore, and NexTier is therefore not entitled to an administrative expense claim pursuant to 11 U.S.C. § 503(b)(9).

Allowing an administrative expense claim under section 503(b)(9) for NexTier would be analogous to allowing an administrative expense claim for service professionals. For example, if a debtor contracted with a plumber to provide plumbing services in the twenty days prior to filing, the plumber would not be entitled to an administrative expense claim for the services provided, even if the plumber were to use pipes, fixtures, or other materials to provide the services for which the debtor contracted.

NexTier's position with respect to the apportionment approach would impermissibly expand section 503(b)(9) to expand beyond its intended scope and would open the administrative expense claim to include services in addition to the sale of goods, contrary to the plain language of the statute and the intent of Congress in creating the limitations in the statute.

This case is further distinguishable from cases in which courts have found that utility companies are entitled to administrative expense claims for providing water or electricity to the debtor in the twenty days prior to filing. *See e.g., In re Pilgrim's Pride Corp.*, 421 B.R. 231, 239 (Bankr. N.D. Tex. 2009). In those cases, the utility is primarily engaged in selling an item, such as water or electricity, with only providing an ancillary service of conveying the utility to the debtor and monitoring usage.

The only contractual relationship between the Debtor and NexTier was for services for its wells. At no point did NexTier sell goods to the Debtor, rather it provided materials in an ancillary fashion in order to perform its primary function: providing well services to the Debtor. Accordingly, NexTier is not entitled to an administrative priority claim pursuant to section 503(b)(9) as a matter of law.

## Conclusion

NexTier was contracted to provide services to the Debtor, not to sell goods to the Debtor. All materials were provided solely in connection with providing such services to the Debtor. Under the plain language of section 503(b)(9), NexTier is not entitled to an administrative expense priority claim, as no goods were sold to the Debtor in the twenty days prior to filing. Accordingly, NexTier is not entitled to an administrative expense priority claim as a matter of law.

WHEREFORE the Debtor prays that the Court enter an Order denying NexTier's Motion for Summary Judgment, granting the Debtor's Motion for Summary Judgment, entering judgment

against NexTier with respect to its *Motion for Order Allowing Administrative Expense Pursuant to 11 U.S.C. § 503(b)(9)* and in favor of the Debtor, and for such further and additional relief as to the Court may appear proper.

DATED:  February 23, 2022                                   Respectfully Submitted,


By:      s/ Keri L. Riley
     Keri L. Riley, #47605
     **KUTNER BRINEN DICKEY RILEY, P.C.**
     1660 Lincoln Street, Suite 1720
     Denver, CO 80264
     Telephone:  (303) 832-2400
     Telephone: (303) 832-2910
     Email: klr@kutnerlaw.com

7