# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Elizabeth E. Brown

| | |
|---|---|
| In re:<br><br>Sklar Exploration Company, LLC,<br><br>Debtor. | Case No. 20-12377 EEB<br>Chapter 11 |
| In re:<br><br>Sklarco, LLC,<br><br>Debtor. | Case No. 20-12380 EEB<br>Chapter 11<br><br>**Jointly Administered Under<br>Case No. 20-12377 EEB** |

## ORDER ALLOWING NEXTIER'S ADMINISTRATIVE EXPENSE CLAIM

THIS MATTER is before the Court on the Amended Application for Administrative Expenses ("Application"), filed by NexTier Completion Solutions, Inc. ("NexTier") and the objection of Debtor Sklar Exploration Company, LLC ("Debtor").  In the twenty days prior to the petition date, NexTier provided "acidizing services" on the Debtor's oil and gas wells, which necessitated the use of certain chemicals, primarily nitrogen and acid. In its invoices, NexTier listed the costs of its services separately from the cost of the chemicals.  The total cost of the chemicals in this twenty-day period was $62,693.34. The issue before the Court is whether NexTier may obtain a priority administrative expense claim pursuant to § 503(b)(9) for the cost of these "goods" sold to the Debtor or whether the Court should apply a "predominate purpose" test that would deny such a claim as the goods sold were merely incidental to what was predominately a service contract.

### A.    Section 503(b)(9) Claims

Section 503(b)(9)[1] gives administrative expense priority to "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business."  11 U.S.C. § 503(b)(9).  Courts have parsed this language into a three-part test: (1) the claimant sold "goods" to the debtor; (2) the goods were received by the debtor within twenty days before the bankruptcy filing; and (3) the

---

[1] All references to "section" or "§" shall refer to Title 11, United States Code, unless expressly stated otherwise.

sale occurred in the ordinary course of business. *In re World Imports, Ltd.*, 862 F.3d 338, 341 (3d Cir. 2017). The claimant bears the burden of proof on all three elements. *Puerto Rico Elec. Power Auth. v. Rentas (In re PMC Marketing Corp.)*, 517 B.R. 386, 391 (1st Cir. BAP 2014).

The parties do not dispute the last two elements of this test—receipt within the twenty days prepetition and the ordinary course nature of the transaction. But the Debtor does deny that NexTier sold it "goods." The Bankruptcy Code does not itself define the term "goods." However, most courts interpreting "goods" in context of § 503(b)(9) have used the definition found in the Uniform Commercial Code ("U.C.C.") because that definition has been widely accepted and adopted for commercial transactions and is more useful than a general dictionary definition. *In re Escalera Resources Co.*, 563 B.R. 336, 350 (Bankr. D. Colo. 2017); 4 *Collier on Bankruptcy* ¶ 503.16[1] (Richard Levin & Henry J. Sommer eds., 16th ed.) (citing cases). In relevant part, that definition provides that "goods" are "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action." U.C.C. § 2-105. This Court agrees that the U.C.C. § 2-105 provides the most useful definition and will therefore apply it to NexTier's claim.

NexTier asserts that the chemicals it sold the Debtor fit within this U.C.C. definition. While the Debtor generally denies that NexTier sold it any "goods," it does not specifically address whether chemicals are goods within the U.C.C. definition. Certainly, chemicals are "movable" and, as demonstrated by NexTier's invoices, they were clearly identified and quantified. Moreover, other courts have determined that chemicals of various kinds meet the U.C.C. definition of "goods." *E.g.*, *In re Plastech Engineered Prods., Inc.*, 397 B.R. 828, 839 (Bankr. E.D. Mich. 2008) (concluding that salt and chloride de-icer were within the definition of "goods" in the U.C.C. and for purposes of § 503(b)(9)); *Olefins Trading, Inc. v. Han Yang Chem Corp.*, 9 F.3d 282, 287 (3d Cir. 1993) (concluding that ethylene is a "good" under the U.C.C.). With no arguments or evidence to the contrary, the Court concludes that the chemicals NexTier provided were "goods."

### B. Hybrid Contracts & The Predominate Purpose Test

The Debtor argues that a related, but distinct, test applied in the U.C.C. context should also apply to determine if NexTier sold "goods" to it under § 503(b)(9). That test is called the "predominant purpose" test. It does not purport to determine whether a specific item is a "good." Rather, it is a test courts apply to determine whether Article 2 of the U.C.C. as a whole governs a particular transaction. By its terms, U.C.C. Article 2 only applies to "transactions in goods." U.C.C. § 2-102. To the extent Article 2 does apply, it displaces the common law of contracts. 1 *Hawkland UCC Series* § 2-102:1 (Carl S. Bjerre, ed. 2021). Thus, any court resolving a contract dispute must first determine which law applies. This is an either-or decision as both laws cannot govern. When a contract provides for both the sale of both goods and services, determining the applicable law may prove tricky. It is in this hybrid situation that courts apply the predominate purpose test, examining a variety of factors to conclude whether the sale

of goods or the service aspects of the contract predominate.  *E.g.*, *BMC Industries, Inc. v. Barth Industries, Inc.*, 160 F.3d 1322, 1329-32 (11th Cir. 1998).

A majority of courts confronting hybrid contracts in the context of a § 503(b)(9) claim have held that the U.C.C.'s predominate purpose test should not apply.  *In re Plastech Eng'rd Prod., Inc.*, 397 B.R. 828, 837 (Bankr. E.D. Mich. 2008); *GFI Wis., Inc. v. Reedsburg Utility Comm'n*, 440 B.R. 791, 803 (W.D. Wis. 2010); *In re Erving Industries, Inc.*, 432 B.R. 354, 372 (Bankr. D. Mass. 2010); *In re Pilgrim's Pride Corp.*, 421 B.R. 231, 237 (Bankr. N.D. Tex. 2009); *see also* 3 Norton Bankr. L. & Prac. 3d § 49:35 (2022 update) ("[T]he predominant purpose test applied by courts in other matters should not be applied in § 503(b)(9) cases.").  The court in *In re Plastech Engineered Products* concluded that the whole reason for applying the predominate purpose test—to determine if the U.C.C. applies—is irrelevant in the § 503(b)(9) context.

> The only relevant determination under § 503(b)(9) is the value of the "goods" that were delivered, irrespective of whether the contract also called for the delivery and sale of services. The predominant purpose test does not inform the Court as to whether a particular thing that has been sold is or is not "goods." Therefore, the predominant purpose test is unnecessary. There is nothing in § 503(b)(9) that dictates the use of a "winner take all" approach.

*In re Plastech Eng'rd Prod., Inc.*, 397 B.R. at 837.

The only case going the other way, on which the Debtor relies, is *In re Circuit City Stores, Inc.*, 416 B.R. 531 (Bankr. E.D. Va. 2009).  In that case, the court decided that the predominate purpose test was relevant to § 503(b)(9) because that section gives administrative priority "only for transactions in which '*goods have been sold to the debtor* in the ordinary course of such debtor's business.'" *Id*. at 538 (emphasis original) (citing § 503(b)(9)).  Based on the emphasized language, the *Circuit City* court concluded that § 503(b)(9) only applies if the contract between the claimant and the debtor was predominantly a "sale of goods" as determined by the U.C.C.'s predominate purpose test.  Given that the contract in question was predominantly a sale of services, the *Circuit City* court concluded that the claimant was only entitled to a nonpriority unsecured claim.  In other words, the *Circuit City* court imported the limited scope of U.C.C. Article 2 into § 503(b)(9).

This Court disagrees with the *Circuit City* court's analysis.  There is nothing in § 503(b)(9) that requires a claimant to prove its contract with the debtor falls within the "transaction in goods" limitation found in § 2-102 of the U.C.C.  Indeed, § 503(b)(9) does not contain the phrase "transaction in goods" or even the word "transaction" at all.  If Congress had intended to limit the scope of § 503(b)(9) in the same manner that Article 2 of the U.C.C. is limited, it seems highly likely that it would have specifically used that phrase.

3

There is a certain appeal to using the predominate purpose test because it seemingly provides a well-known method for distinguishing between sales of "goods" and sales of "services." Section 503(b)(9) requires this distinction in that administrative priority is given only for "goods" sold to a debtor, not for "services" sold to a debtor. *See In re Goody's Family Clothing Inc.*, 401 B.R. 131, 135 (Bankr. D. Del. 2009) (contract for services not entitled to § 503(b)(9) priority). But this is an oversimplification. The predominate purpose test necessarily has a wider focus. It looks at the characteristics of the parties' entire transaction because the purpose of the test is to decide what law to applies to the entire transaction. Section 503(b)(9) does not require this wider focus. Instead, when a hybrid contract provides for both the sale of goods and the sale of services, the court need only separate out the costs of each and give priority only to the cost of goods sold. Thus, the Court concludes that the predominate purpose test does not apply. As noted by the court in *In re Plastech*, "[t]here is nothing in § 503(b)(9) that somehow disqualifies a § 503(b)(9) claim just because the contract pursuant to which the goods were sold also provides for the sale of services." *In re Plastech Eng'rd Prod.*, 397 B.R. at 838.

The Debtor contends that the Congressional intent behind § 503(b)(9) was to provide a remedy to creditors with reclamation rights under the U.C.C. and that this supposed intent somehow requires application of the predominate purpose test. The Court disagrees. There is no Congressional history explaining § 503(b)(9) or its terminology when it was enacted as part of BAPCPA. *In re Escalera Res., Co.* 563 B.R. 336, 347 (Bankr. D. Colo. 2017) (noting complete lack of legislative history). As such, any reference to Congressional intent is dubious at best. Of course, the lack of legislative history has not stopped courts or commentators from speculating about the reason for Congress' adoption of § 503(b)(9). *See* Brendan M. Gage, *Should Congress Repeal Bankruptcy Code Section 503(B)(9)?*, 19 Am. Bankr. Inst. L. Rev. 215, 229 (2011) (listing four main theories courts have advanced as the intent behind § 503(b)(9)). One of the theories advanced is that Congress enacted § 503(b)(9) to fortify a creditor's right of reclamation under 11 U.S.C. § 546(c). *Id*. at 234. That section provides that a trustee's avoidance powers are subject to the rights of a creditor to reclaim goods sold to a debtor in the forty-five days prepetition if the debtor was insolvent at the time it received the goods and if the creditor meets certain notice requirements.

There are several problems with this theory. First, nothing in the actual text of § 503(b)(9) references § 546(c) or reclamation. The only link between the two statutes is a cross reference in § 546(c)(2), which states that "[i]f a seller of goods fails to provide notice in the manner described in paragraph [546(c)(1)], the seller still may assert the rights contained in section 503(b)(9)." This language seems to designate § 503(b)(9) as an alternative remedy to reclamation, rather than an enhancement of such rights. If § 503(b)(9) had been intended to strengthen reclamation rights, one would expect it to require a claimant to establish that the goods in question were reclaimable or that the creditor otherwise has a reclamation claim under § 546(c) or the U.C.C. That is not the case. *In re Plastech Eng'rd Prod., Inc.*, 397 B.R. 828, 838 (Bankr. E.D. Mich. 2008) ("Section 546 does not limit or control in any way the rights that claimant has under § 503(b)(9).").

Even assuming a link between reclamation rights in § 546(c) and § 503(b)(9), that link does not support application of the U.C.C.'s predominate purpose test. As discussed, the predominate purpose test is about applicability of U.C.C. Article 2 as a whole, not reclamation in particular. Generally speaking, reclamation is a concept developed at common law to give a seller of goods the right to "reclaim" goods he had been defrauded into delivering to an insolvent buyer. *See* Lawrence Ponoroff, *Reclaim This! Getting Credit Seller Rights in Bankruptcy Right*, 48 U. Rich. L. Rev. 733, 739 (2014). Reclamation rights were later codified in U.C.C. § 2-702, which allows a seller to take back goods delivered to an insolvent buyer under certain circumstances. Ponoroff, *supra*, at 742-44. The reclamation rights recognized in § 546(c) of the Bankruptcy Code are distinct from those provided in the U.C.C. *Id*. at 764 (noting differences between § 546(c) including a different look-back period and notice requirements). Indeed, some have speculated that § 546(c), as revised by BAPCPA, essentially created "a federal right of reclamation independent from and wholly disassociated from U.C.C. section 2-702(2)." *Id*. at 754 (citing *Davis v. Par Wholesale Auto, Inc. (In re Tucker)*, 329 B.R. 291, 398 n.8 (Bankr. D. Ariz. 2005)). That issue is not before this Court but it highlights the fact that the Bankruptcy Code significantly alters a creditor's U.C.C. reclamation rights. There is no wholesale adoption of U.C.C. reclamation principles into the Code. This undercuts the theory that § 503(b)(9) should be limited by U.C.C. reclamation provisions or more broadly by the predominate purpose test.

On a more practical level, the Debtor argues that its transaction with NexTier was something other than a sale of goods based on the fact that NexTier, and not the Debtor, allegedly controlled the quantity, nature, and types of chemicals NexTier used in performing services for the Debtor. However, nothing in the plain language of § 503(b)(9) requires proof that the Debtor placed an order for a specific amount or type of goods prior to those goods being provided. The Debtor admits it entered into a contract with NexTier for services that necessarily required the provision of chemicals and other goods. NexTier provided those goods to Debtor at the prices listed in the invoices. This is sufficient to establish a sale of goods for purposes of § 503(b)(9).

Lastly, Debtor argues that allowing NexTier an administrative claim would invite too many vendors to attempt to assert an administrative priority claim, even when the debtor had solely contracted for services. The Debtor gives an example of a debtor hiring a plumber who then asserts an administrative expense claim for pipes, fixtures, or other materials provided in performing services. In that scenario, however, the plumber is not solely providing services. Like NexTier, a plumber could conceivably provide both goods and services to a debtor. In such a scenario, the cost of the goods would be entitled to administrative expense priority under § 503(b)(9), so long as the plumber was able to separately identify the cost of those goods from the cost of services it provided in the twenty days prepetition. "That is the directive of § 503(b)(9)." *In re Plastech Eng'rd Prod., Inc.*, 397 B.R. 828, 838 (Bankr. E.D. Mich. 2008). In this case, NexTier has adequately identified goods it sold to the Debtor in the twenty days prepetition.

The Debtor has advanced excellent arguments and admittedly this question is a close call. On balance, however, the Court finds nothing in the language of the statute

to suggest the more restrictive view espoused by the Debtor.  As long as a claimant can show separately identified and quantified goods it has sold to a debtor in the relevant time period, that aspect of the contract falls within the purview of § 503(b)(9)'s coverage.

### C.     Conclusion

For the reasons set forth above, the Debtor's Objection is OVERRULED and NexTier's Amended Application for Administrative Expenses is GRANTED.  NexTier has an allowed administrative expense in the amount of $62,693.34.

DATED this 14th day of March, 2022.

BY THE COURT:

_____
Elizabeth E. Brown, Bankruptcy Judge