# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br><br>SKLAR EXPLORATION COMPANY, LLC<br>EIN: 72-1417930<br><br>    Debtor.<br><br>In re:<br><br>SKLARCO, LLC<br>EIN: 72-1425432<br><br>    Debtor. | Case No. 20-12377 EEB<br>Chapter 11<br><br><br><br><br>Case No. 20-12380 EEB<br>Chapter 11<br><br>**Jointly Administered** |

## LOUISIANA TOWER OPERATING LLC'S REPLY CONCERNING NOTICE OF DEFAULT PURSUANT TO §§ 8.17 AND 11.2 OF CONFIRMED CHAPTER 11 PLAN

Louisiana Tower Operating LLC ("LTO"), by and through its undersigned counsel, for its Reply Concerning Notice of Default Pursuant to §§ 8.17 and 11.2 of Confirmed Chapter 11 Plan (this "Reply") states:

1. The background of these cases and the Debtors' failure to comply with the terms of their own Plan is set forth in LTO's Notice of Default, filed on March 7, 2022, Dkt. #1653 (the "Default Notice") and will not be restated here.[1] LTO files this Reply in order to dispel certain erroneous statements in the Debtors' late-filed response, Dkt. #1659 (the "Response"), and to reiterate that the Debtors remain in material default under the Plan, notwithstanding the Debtors' machinations as to how it is they supposedly "cured" the Default Notice.

---

[1] Capitalized terms are defined in the Default Notice.

2. The simple fact is that the undersigned counsel for LTO has been trying to get a response from Debtors' counsel related to unpaid rent and turnover of possession of the Louisiana office space for almost one year – dating back to April 15, 2021. And it only recently has become clear that the Debtors never had any intention of surrendering possession of the office space in Louisiana, despite representations to LTO and to the Court in the Plan and disclosure statement. They simply stopped paying rent in July 2021, and have refused to engage through counsel or comply with Court orders despite repeated requests.

3. The gist is this: on April 15, 2021, the undersigned reached out to Debtors' counsel advising that the Debtors had not paid April rent, had shorted LTO for part of March, and inquiring about the Debtors' "intention to pay post-petition rent, and timing for surrendering possession," given the impending rejection of the Lease under the Plan. The next day, past due rent was immediately wired to LTO's lockbox account, with no response from the Debtors or counsel as to their intentions for surrendering possession of the property. *See* **Exhibit 1**.

4. Some months later, the Debtors abruptly stopped paying rent after the July 2021 payment. The Lease was not "month to month" at that point at all as characterized by the Debtors in their Response, and was in full force and effect pending Plan confirmation and the effective date for rejection of the Lease.

5. On August 31, 2021, the undersigned again reached out to Debtors' counsel concerning nonpayment of August rent and possession of the property, suggesting a stipulation concerning administrative rent accruals and an agreed date for possession. *See* **Exhibit 2**. LTO, through the undersigned counsel, suggested that past due rent could be paid as an ordinary course expense under the terms of the Plan, and Debtors' counsel seemed to agree at that point. *Id*. No further communication or payments were received from the Debtors.

6. Following the September 7, 2021 effective date of the Plan, on September 30, 2021, the undersigned e-mailed Debtors' counsel once again, advising that both August and September rent then was due given the Debtors' continued occupancy after the Plan effective date, and requesting a response as to the Debtors' intent to pay rent and surrender possession. *See* **Exhibit 3**. LTO had hoped to avoid the need for an administrative expense motion. *Id*. No response was received.

7. The deadline for requests for administrative expenses under the Plan was October 22, 2021, so LTO filed one on October 21, 2021. *See* Dkt. #1482.

8. No objections or other communications from the Debtors were filed or received, and the Court entered its Order Granting Motion to Allow Administrative Expense Claim (Louisiana Tower Operating LLC), Dkt. #1542, on November 19, 2021.

9. Payment was due to LTO under Section 3.1 of the Plan five (5) business days later, and given the intervening holiday, by November 30, 2021, at the latest.

10. No correspondence or payment was received by LTO or counsel.

11. On December 7, 2021, counsel followed-up for the fourth time concerning "possession of the premises and payment" given the allowed administrative expenses. *See* **Exhibit 4**. Despite a prompt promise to "follow up," from the Debtors, none occurred. *Id*. at p. 7.

12. Weeks later, on December 28, 2021, counsel – for the fifth time – advised Debtors' counsel that possession had not been surrendered and administrative rent had not been paid. *See* **Exhibit 5**. LTO's sale of the building was in process at that time, although neither the undersigned nor LTO's principal handling the Debtors' bankruptcy case were directly involved in the sale, its terms, or timing.

13. That the purchase and sale agreement for the building addresses an allocation of payments as between LTO and the buyer is largely irrelevant given multiple Court orders that the Debtors have simply ignored. Moreover, the Debtors' Response to the Default Notice is just plain wrong, and the very exhibit they attach from their property manager (some weeks after LTO no longer owned the building) includes rent at the non-holdover Lease rate for January 2022. Presumably, the check paid to the new owner attached to the Debtors' Response also includes rent at the non-holdover Lease rate for February 2022, as well, since it was paid in late February and includes exactly one more months' worth of rent than the property manager's January 2022 statement (again, at the non-holdover Lease rate).

14. The $12,937.90 check that the Debtors recently tendered to LTO – dated two days beyond the cure period under the Plan and received by the undersigned on March 22, 2022 – did not cure the Debtors' default, let alone cure it in accordance with the Plan. A second check received by the undersigned on March 28, 2022, in the amount of $14,794.76 (which apparently purports to account for the January and February 2022 rent payment issue), is not a "cure" and does not include time and expenses incurred since the Default Notice. Simply put, the Debtors are still short and still in default.

15. The Debtors' Response is thus no "cure" at all, essentially requiring yet more work from LTO and counsel – and thus more attorneys' fees and expenses – to sort out a problem that the Debtors themselves created, either intentionally by refusing to comply with the terms of their own Plan and Court orders, or through carelessness and inattention.

16. There are no material facts in dispute here. LTO has an allowed administrative expense that has not been paid, and the Debtors have not cured their default under the Plan. The Court should compel the Debtors to pay what is due in the Default Notice forthwith, with credit

4

for the last minute checks now received, plus interest and additional attorneys' fees that are payable under the Lease of no less than $1,856.00 through March 28, 2022.[2] Alternatively, LTO is entitled to entry of a money judgment under the Plan to enforce its rights, which should enter for the full amount set forth in the Default Notice,[3] less the two progress payments of $27,732.66, and including additional interest, fees, and costs incurred from March 6, 2022 to March 28, 2022 under the express terms of the LTO Lease in an additional amount no less than $1,856.00, for judgment in the amount of $38,842.90.

WHEREFORE, LTO respectfully requests entry of judgment as set forth herein, and for other relief as deemed appropriate.

Dated: March 29, 2022.

**BALLARD SPAHR LLP**

By: */s/ Theodore J. Hartl*
    Theodore J. Hartl, #32409
1225 17th Street, Suite 2300
Denver, CO, 80202-5596
Telephone: (303) 232-2400
Facsimile: (303) 296-3956
Email: hartlt@ballardspahr.com

*Attorneys for Louisiana Tower Operating LLC*

---

[2] 2.9 additional hours of attorney time at the standard hourly rate of $640 per hour.

[3] LTO has not deposited the $12,937.90 check given the ongoing saga with the Debtors; it can either be returned to the Debtors or credited against the judgement that LTO is entitled to under the Plan.

5

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 29, 2022, a true and correct copy of the foregoing **REPLY CONCERNING NOTICE OF DEFAULT PURSUANT TO §§ 8.17 AND 11.2 OF CONFIRMED CHAPTER 11 PLAN** was served electronically via the Court's CM/ECF notice system to all parties of record, and via U.S. Mail, first class postage prepaid, to the addresses listed below.

Sklar Exploration Company, LLC
c/o Brad Walker
Managing Director
Riverbend Special Situations Group
12400 Coit Rd. Suite 900
Dallas, TX 75251

Sklarco, LLC
5395 Pearl Parkway
Suite 200
Boulder, CO 80301

Keri L. Riley
Kutner Brinen Dickey Riley, P.C.
1660 Lincoln Street
Suite 1720
Denver, CO 80264

Thomas M. Kim
r2 advisors llc
1518 Blake Street
Denver, CO 80202-1322

Grant Matthew Beiner
John Cornwell
Munsch Hardt Kopf & Harr, PC
700 Milam Street
Suite 2700
Houston, TX 77002

Christopher D. Johnson
Diamond McCarthy LLP
909 Fannin Street, Suite 3700
Houston, Texas 77010

                                                            */s/ Brandon Blessing*