## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Sklar Exploration Company, LLC, and | § | Case No. 20-12377 |
| Sklarco, LLC | § | |
| | § | (Jointly Administered) |
| Reorganized Debtors | § | |

### CREDITOR TRUSTEE'S OBJECTION TO MOTION OF HOWARD F. SKLAR
### FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSES
### PURSUANT TO 11 U.S.C. §§ 503(a), (b)(1)(A), and (b)(3)(D)

Thomas M. Kim, trustee of the Sklar Creditor Trust (the "Creditor Trustee"), files this

Objection (the "Objection") to the *Motion of Howard F. Sklar for Allowance and Payment of*

*Administrative Expenses Pursuant to 11 U.S.C. §§ 503(a), (b)(1)(A), and (b)(3)(D)* (the "Motion"),

and respectfully states:

## I. SUMMARY

1.      Howard Sklar had absolute control of the Debtors[1]. As of the Petition Date, he had

allowed SEC to incur approximately $18 million in unsecured claims, including millions of claims

owed to working interest owners for revenues and cash call advances which he improperly used.

All the while, Howard Sklar and the Family Trusts which he controlled took millions from the

Debtors. But in addition to the money Howard Sklar and his sons took out of the Debtors, the

Family Trusts also failed to pay their obligations to Sklarco and SEC. On the Petition Date, the

Family Trusts owed Sklarco over $36 million and Sklarco in turn owed SEC approximately $36

million. None of this was reflected on the schedules prepared, signed and filed by Howard.

Pursuant to the confirmed Plan[2], Howard Sklar agreed to contribute to the Debtors' assets to

compensate his creditors, but now he asks to be compensated for the estates' use of those assets.

---

[1] Capitalized terms not otherwise defined herein shall have the same meanings as in the Motion.
[2] *Second Amended and Restated Plan of Reorganization,* Docket No. 1251.

The Court should reject Howard Sklar's attempt to extract even more cash from the companies that he drove into bankruptcy at the expense of the creditors he left unpaid.

## II. BACKGROUND

2.        On April 1, 2020, Howard Sklar filed voluntary petitions for Sklar Exploration Company, LLC ("SEC") and Sklarco, LLC ("Sklarco" and collectively with SEC, the "Debtors"), both entities which he owns through his trust (the "Howard Sklar Trust").  Howard serves as the trustee of the Howard Trust, as well as the trustee of the two trusts created for his sons, the Alan Trust and the Jacob Trust.  Collectively, the three trusts are referred to in this objection as the "Family Trusts".

3.        Prepetition, Sklarco owned both oil and gas and non-oil and gas assets, including the investments in Boulders on Fern, LTP Opportunity Fund, Timberquest, and Trout Creek (collectively, the "Disputed Assets").  The Disputed Assets are all held in the name of Sklarco, and all cash distributions from those investments were made to Sklarco.

4.        In addition to the Disputed Assets, Sklarco owns mineral interests in wells that were operated by SEC as well as other operators ("Non-SEC Operators").  Revenues received from the wells operated by SEC were received in SEC's revenue accounts, while revenues from Non-SEC Operators were received in Sklarco's operating account.  Cash distributions from the Disputed Assets were also received in Sklarco's operating account.

5.        SEC accounted for inter-company transactions with Sklarco primarily through three general ledger accounts;

>        - O&G Intercompany Account – which tracked Sklarco's obligations to pay joint interest billings ("JIBS") to SEC, as well as Sklarco's obligations to SEC under the Agency Services Agreement, and Sklarco's payments on these obligations;

- Intercompany Revenue Advances Account – which tracked well revenues received by SEC from the sale of oil and gas attributable to Sklarco's mineral interests, as well as revenues paid by SEC to Sklarco; and

- Intercompany A/P Account – which was used to record hundreds of miscellaneous transactions between SEC and Sklarco.

6.     Throughout these cases, the Court and creditors have heard Howard's explanation that, yes, he took money out of the Debtors, but he left more in.  Howard has never provided the Court or his creditors with any type of an accounting to support this claim – not even in his response to the Committee's report to the Court on transfers to Howard and the Family Trusts[3].  The lack of any financial analysis in the 17-page response is striking.

7.     Based upon the Trustee's analysis of SEC's general ledger, on the Petition Date, the Family Trusts owed Sklarco over $36 million, and Sklarco owed SEC approximately $36 million.  Significantly, this analysis takes into account all Sklarco well revenues "left" in SEC, as well as all payments made by Sklarco to SEC for JIBS and other obligations under the Agency Services Agreement.  Simply put - the money the Family Trusts took out through Sklarco, and the unpaid JIBS and fees due under the Agency Services Agreement far exceeded the revenue that SEC received from the sale of oil and gas attributable to Sklarco's interests.

8.     Sklarco used similar general ledger accounts to record its transactions with the Family Trusts, as well as the Accounts Receivable – JIB Account for transactions with the Judy Trust and the Succession of Mariam Mendel Sklar (the "SMMS", which Howard Sklar also controls).

9.     For years, the Family Trusts have failed to pay Sklarco amounts owed for management of their interests and funds expended on their behalf.  This in turn prohibited Sklarco

---

[3] *Committee's Report Summarizing Investigations Relating to Debtors' Transfers to Howard Sklar and Related Family Trusts*, Docket No. 891.

from paying to SEC amounts that it owed.  For example, Section 2.4 of the Agency Services Agreement states:

> "The parties recognize that from time-to-time sums have been advanced to the Principals by Sklarco … As of May 1, 2010, the unpaid balance of advances made by Sklarco to, and owed to Sklarco by each of the Principals (the 'Intercompany Debt') is as follows:

| Principal | Unpaid Balance of Intercompany Debt |
|---|---|
| | (as of May 1, 2020) |
| Howard Trust | $10,249,544.04 |
| Estate of Miriam/Miriam Sklar LLC | $ 7,100,540.98 |
| Alan Trust | $    326,693.11 |
| Sam Trust[4] | $    488,259.39 |
| **Total Debt** | **$18,165,037.52** |

10.     In just the four years prior to the Petition Date, in the O&G Intercompany Account SEC booked charges to Sklarco of $61,863,998 against payments from Sklarco of $45,036,835. During the same period, in the Intercompany Revenue Advances Account SEC recorded a credit to Sklarco of $51,259,525 for well revenues received and a debit of $43,161,854 for well revenues paid to Sklarco.  The Intercompany A/P Account shows that during the same four-year period Sklarco owes SEC $1,258,922 for amounts spent by SEC on behalf of Sklarco.  The net effect of these credits and debits shows that just during the four years before the Petition Date, Sklarco owes SEC $9,563,414.

11.     Sklarco didn't have the money to pay SEC because Howard Sklar and the Family Trusts took money out of Sklarco but did not pay their obligations to Sklarco.  Since well before May 2010, Howard Sklar and the Family Trusts have taken more money out of the Debtors than they put in.  By the time these cases were filed, the Family Trusts and the SMMS owed Sklarco approximately $36 million.

---

[4] The First Amendment to the Agency Services Agreement states that the "Sam Trust" terminated and the "Jacob Trust" to the interests of the "Sam Trust."

12.     Howard Sklar's conduct left SEC habitually undercapitalized.   Further, SEC's monthly revenues as an operator were insufficient to cover its monthly operating costs.  This made the payment by the Family Trusts of their obligations under the Agency Services Agreement vital to SEC's ability to pay its obligations as they came due.  Ultimately, SEC was forced to string out creditors, use monies owed to working interest owners, and eventually file Chapter 11.

13.     It's against this backdrop that Howard Sklar filed these cases.  On the Petition Date, the Debtors owed approximately $18 million to unsecured creditors.[5]  The Debtors' schedules of assets and liabilities, which Howard Sklar prepared, signed and authorized to be filed, do not show intercompany balances owed to SEC from Sklarco, or the payable from the Family Trusts to Sklarco.

14.     Howard Sklar has repeatedly stated that he left more money in the Debtors than he took out.  However as shown above, SEC's and Sklarco's general ledgers do not support that allegation.  The money he "left in", was insufficient to satisfy both Sklarco's obligations to SEC and the money that Howard Sklar and the Family Trusts took out of the Debtors.

15.     As part of the confirmed Plan, both Sklarco and SEC were required to contribute their assets to fund distributions to creditors.  However, the Plan allowed Howard Sklar to dispute that Sklarco owns the Disputed Assets.  In addition to disputing Sklarco's ownership, Howard Sklar now wants to be paid ahead of other creditors for the money he alleges SEC and Sklarco used to fund the bankruptcy cases he filed.

---

[5] Based upon the approximate amount of claims filed and disregarding the $18.2 million proof of claim filed by Brenda Diann Scott (POC No. 129), subsequently disallowed by this Court.  *See* Docket. No. 1266.

## III.   ARGUMENT

**A.      Howard Sklar's claim is premature and duplicative of the relief sought in the Adversary.**

16.      The Motion is predicated on the assumption that Sklarco does not own the subject assets.   Such a determination can only be made in an adversary proceeding.   Mr. Sklar acknowledges this because he simultaneously filed an adversary complaint[6] seeking (i) a declaratory judgment that he and his sons (through various family trusts) own the funds and not Sklarco, and (ii) allowance of an administrative claim identical to the claim in the Motion.   Until this Court rules in his favor on the declaratory judgment claim in the adversary, this Motion is premature and should be consolidated with the adversary in the interest of judicial economy.

**B.      The Court should not grant Howard an Administrative Claim while the Trustee's claims against Howard, including equitable subordination claims, are pending.**

17.      On March 31, 2022, the Trustee filed an adversary against Howard Sklar and the Family Trusts asserting claims for, *inter alia*, breaches of the ASA, breaches of fiduciary duty, fraudulent transfer, avoidance of preferences, equitable subordination, and objections to claims.[7] Should the Court rule in favor of the Trustee on any of these claims, the Creditor Trustee would be in the absurd position of having to try and recover from Howard and his Family Trusts, money which the Debtors would have to pay him.   This is exactly why Congress enacted 11 U.S.C. § 502(d).

---

[6] Adversary Case No. 22-01022, Docket No. 1, in the United States Bankruptcy Court for the District of Colorado.
[7] Adversary Case No. 22-01106, Docket No. 1, *Original Complaint*, in the United States Bankruptcy Court for the District of Colorado.

18.     Section 502(d) provides that the court shall disallow any claim of an entity from which property is recoverable under section 550, or that is a transferee of a transfer avoidable under Sections 544, 547 and 548, all of which the Creditor Trustee has pled in his complaint.

19.     The Court should deny or stay Howard's request for an administrative claim until the Court has ruled on the Creditor Trustee's claims.

**C.     Sklarco owns the Disputed Assets with the same rights as it owns its other interests which are contributed to pay creditors.**

20.     Should the Court consider the Motion at this time, the Trustee asserts that the assets are owned by Sklarco in the same manner as its oil and gas investments and any distinction in the nature of the investments is a distinction without a difference.

21.     On June 30, 2020, Howard Sklar signed and filed Schedule A/B: Assets – Real and Personal Property ("Schedule A/B") for Sklarco.[8]  Each of the Disputed Assets is listed as an asset of Sklarco, with a statement that Sklarco is agent nominee and does not hold equitable or beneficial interest which are held by one or more of the Family Trusts.

22.     On June 30, 2021, Sklarco, under the direction of the CRO, filed an amended Schedule A/B (the "Amended Schedule A/B")[9] again listing each of the Disputed Assets as an asset of Sklarco.  However, there was no qualification about Sklarco's ownership of the assets. Instead, Amended Schedule A/B shows Sklarco's ownership percentage of each of the Disputed Assets.

23.     And on June 30, 2021, Howard Sklar filed a *Verification Pursuant to Minute Order for May 28, 2021 Hearing [Docket No. 1276][10]* (the "Verification") verifying on behalf of himself and the Family Trusts that Sklarco owns the real property assets on Amended Schedule A/B, and

---

[8] *Schedule A/B: Assets – Real and Personal Property*, Bankruptcy Case No. 20-12380, Docket No. 29.
[9] *Amended Schedule A/B: Assets – Real and Personal Property*, Bankruptcy Case No. 20-12380, Docket No. 87.
[10] Docket No. 1326.

Sklarco's ownership of those assets is as set forth in the Agency Services Agreement. While the verification is limited to the real property assets listed on the Amended Schedule A/B, the analysis applies equally to the Disputed Assets. That is, Sklarco owns its assets as set forth in the Agency Services Agreement. Sklarco's ownership of its assets is sufficient to bind them to pay creditors under the Plan. The Agency Services Agreement does not distinguish between Sklarco's oil and gas and non-oil and gas assets, and there is no basis to treat them differently.

## IV.    INCORPORATION OF ANSWER TO THE COMPLAINT

24.    Simultaneous with the filing of this Objection, the Trustee has filed an answer to the *Complaint* filed by Mr. Sklar on behalf of himself and as trustee for the Family Trusts denying that Mr. Sklar and his sons are entitled to the same relief they seek in this Motion. The Trustee incorporates the objections, defenses raised in his answer to the relief sought in this Motion.

## V. CONCLUSION

25.    The Court should deny this motion or hold it in abeyance until the Court has determined in the adversary whether Sklarco owns the Disputed Assets and ruled on the Creditor Trustee's claims against Howard and the Family Trusts. However, should the Court consider the Motion, it should be denied. Howard Sklar seeks to thread a needle through a hole that isn't there. There is no basis in law or fact for find the Agency Services Agreement grants Sklarco ownership interests in certain assets but not others. And there is no basis to grant Howard Sklar or his sons an administrative claim to be paid ahead of other creditors for funds used to pay the expenses of the bankruptcy cases he caused to be filed. The motion should be denied and Sklarco should continue to use the revenues from the non-oil and gas investments to pay creditors under the confirmed Plan.

Respectfully submitted this 1st day of April 2022

**Diamond McCarthy LLP**

By:  /s/ *Christopher D. Johnson*
Christopher D. Johnson
Texas Bar No. 24012913
Stephen T. Loden
Reg No. 45592
909 Fannin Street, Suite 3700
Houston, Texas 77010
chris.johnson@diamondmccarthy.com
steve.loden@diamondmccarthy.com

**Attorneys for Thomas M. Kim,**
**Trustee of the Sklar Creditor Trust**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 1st day of April 2022, a copy of the foregoing document was filed via ECF and was served by electronic transmission to all registered ECF users appearing in this adversary case.

*/s/ Christopher D. Johnson*
Christopher D. Johnson