| | |
|---|---|
| United States Bankruptcy Court for the District of Colorado<br>Sklar Exploration Company, LLC. Claims Processing Center<br>c/o Epiq Corporate Restructuring, LLC<br>P.O. Box 4421<br>Beaverton, OR 97076-4421<br>Name of Debtor: Sklar Exploration Company, LLC<br>Case Number: 20-12377-EEB | **RECEIVED**<br>SEP 1 5 2020<br>**LEGAL SERVICES**<br><br>Filed: USBC - District of Colorado<br>Sklar Exploration Company, LLC, et al (B10)<br>20-12377 (EEB)<br>SKR<br>0000000148 |

☐ Check box if the address on the envelope sent to you by the court needs to be updated. Identify your replacement address in Part 1 (Section 3) below.

# Proof of Claim (Official Form 410)                                      04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. With the exception of claims under 503(b)(9), do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503. Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

**Part 1:   Identify the Claim**

**1. Who is the current creditor?**
Name of the current creditor (the person or entity to be paid for this claim): Bettye LaCour

Other names the creditor used with the debtor: _____

**2. Has this claim been acquired from someone else?**   ☒ No  ☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?** Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Wm. David Lytle<br>Name<br>503 N. Main St., Ste 125<br>Number  Street<br>Pueblo, CO 81003<br>City       State      ZIP Code<br>Country (if International): ____<br>Contact phone: 719-545-7325<br>Contact email: lytle@altman-keilbach.com | Bettye LaCour<br>Name<br>102 Timberlake Court<br>Number  Street<br>Borger, TX 79007<br>City       State      ZIP Code<br>Country (if International): ____<br>Contact phone: 318-469-8675<br>Contact email: bettyelacour@icloud.com |

**4. Does this claim amend one already filed?**
☒ No
☐ Yes.  Claim number on court claims register (if known) ____
Filed on ____ MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☒ No
☐ Yes.  Who made the earlier filing? ____

**Part 2:   Give Information About the Claim as of the Date the Case Was Filed**

**6. Do you have any number you use to identify the debtor?**
☐ No
☒ Yes.
Last 4 digits of the debtor's account or any number you use to identify the debtor:
7 9 3 0

**7. How much is the claim?**
$ 367,500.00

Does this amount include interest or other charges?
☐ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). Limit disclosing information that is entitled to privacy, such as health care information.

Separation Agreement

| 9. Is all or part of the claim secured? | 10. Is this claim based on a lease? | 11. Is this claim subject to a right of setoff? |
|---|---|---|
| ☒ No | ☒ No | ☒ No |
| ☐ Yes. The claim is secured by a lien on property.<br>Nature of property: | ☐ Yes. Amount necessary to cure any default as of the date of petition.<br>$ | ☐ Yes. Identify the property: |

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

Basis for perfection: _____

Attach redacted copies of documents, if any, that show evidence of perfection of security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $_____

Amount of the claim that is secured: $_____

Amount of the claim that is unsecured: $_____
(The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $_____

Annual Interest Rate (when case was filed) _____%
☐ Fixed ☐ Variable

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

☒ No

☐ Yes. *Check one:*

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

☐ Other. Specify subsection of 11 U.S.C. § 507 (a)(__) that applies.

* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

**Amount entitled to priority**

$_____

$_____

$_____

$_____

$_____

$_____

**13. Does this claim qualify as an Administrative Expense under 11 U.S.C. § 503(b)(9)?**

☒ No

☐ Yes. Amount that qualifies as an Administrative Expense under 11 U.S.C. § 503(b)(9): $_____

### Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other co-debtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 09/15/2020
MM / DD / YYYY      Signature

Print the name of the person who is completing and signing this claim:

Name: William David Lytle
      First name   Middle name   Last name

Title: Attorney

Company: Altman, Keilbach, Lytle, Parlapiano & Ware, P.C.
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: 503 N. Main St., Ste 125
         Number      Street

         Pueblo                           CO        81003
         City                             State     ZIP Code

Contact Phone 719-545-7325      Email lytle@altman-keilbach.com

## SEPARATION AGREEMENT

This Agreement is made at Shreveport, Louisiana, effective as of July 17, 2012, by and between Bettye LaCour, whose address is 6121 Fern Avenue #124, Shreveport, LA 71105 ("Employee"); and Sklar Exploration Company L.L.C., whose address is 401 Edwards Street, Suite 1601, Shreveport, LA 71101 ("Company").

**WHEREAS,** Employee's employment with Company terminated effective as of July 17, 2012; and

**WHEREAS,** this Agreement constitutes an offer to Employee by Company which may be accepted by Employee's unconditional acceptance of the same by executing this instrument in the space provided below and returning the executed original to Company on or before August 7, 2012; and

**NOW, THEREFORE,** in consideration of the mutual promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

The Company was and is under no obligation to pay Employee any severance or termination pay, overtime, accrued vacation leave, accrued sick leave, or any bonus, non-competition, deferred compensation or any other sum, except as may be expressly provided herein.

Except as expressly provided for herein, Employee has heretofore received payment in full of all sums due or to become due to him from the Company including, without limitation, all wages, commissions, overtime, vacation pay, fees, benefits or reimbursement for expenses incurred by him on the Company's behalf or otherwise.

Any rights Employee may have or be entitled to, under the terms of Company's Non-Recourse Policy, or under any other terms, to participate or share in oil and gas working, royalty or overriding royalty interests owned by Company or its affiliates are hereby terminated, and employee waives, forfeits, relinquishes, abandons and agrees to terminate any such rights (provided, however, the Employee will retain all interests previously assigned to her or her nominee, B & L Lacour Energy L.L.C.). The Company releases Employee from any obligations related to any such terminated interests.

Employee will make reasonable efforts to ensure an orderly and efficient transition of Employee's responsibilities and refrain from any form of conduct, or make any statements or representations that disparage or otherwise harm the Company's officers, employees, reputation, good will or commercial interests.

Employee will not interfere with the relationship between the Company or Howard F. Sklar, personally, any of their employees, family members, agents, representatives, customers, suppliers, co-owners in oil and gas properties, lessors, or attempt to divert from the Company any customer or other business property.

1

Employee has returned to the Company any and all property, tangible or intangible, relating to the Company's business, which Employee possessed or had control over at any time, including but not limited to company provided computers, building or office access cards, Company credit cards, keys, manuals, files, documents, records, software, and other data.

Employee acknowledges and understands that as an employee of the Company, Employee had access to and knowledge of Company's confidential and proprietary information. Employee further acknowledges that the Company's confidential and proprietary information is a valuable asset of the Company and therefore represents, warrants, covenants and agrees as hereinafter set forth:

Employee shall not, directly or indirectly, use or divulge to any third party on his own account, or on account of others, any of the Company's or Howard F. Sklar's confidential information or materials disclosed, obtained or made available to Employee, directly or indirectly, in connection with, during, or as a result of Employee's employment by the Company (collectively "Confidential Information"). Employee will maintain and protect the confidentiality of the Confidential Information, this agreement, and any and all other document, information, data or communications which if disseminated, published or disclosed would reveal any information concerning the Confidential Information or this Agreement. All of the Confidential Information is a valuable asset of the Company and is, will be and shall, at all times, remain the sole and exclusive property of the Company.

Employee will not acquire for his own account or the account of others through any agent, employee, nominee, corporation or partnership in which Employee owns an interest (directly or indirectly) and/or affiliates (or any partnership, joint venture, etc., to which any such person may be associated), by lease, purchase or otherwise, any rights, titles or interests in the mineral rights and/or surface rights within the areas in which the Company and/or its affiliates presently are exploring and/or operating.

In the event Employee or any agent, employee, nominee, corporation or partnership in which Employee owns an interest (directly or indirectly) and/or affiliates (or any partnership, joint venture, etc., to which any such person may be associated) should acquire rights, titles or interests in the mineral rights and/or surface rights in contravention of this Agreement, then, in addition to any other legal rights and remedies which the Company may have, the Company shall have the right to require that Employee (or such related entity as described above) convey such rights to the Company at the cost and limited to the monetary consideration paid in the acquisition thereof.

In the event Employee or such related entity as described above (i) should make any disclosure of the Confidential Information or this agreement in contravention of this Agreement, then, without the necessity of proof of any damage, Employee shall be liable to the Company for each such violation regardless of the consequences to the Company of such disclosure or the length of time for which the Company is affected by such disclosure.

Employee shall immediately deliver or cause to be delivered to Company all of the Confidential Information in Employee's possession or control, as well as all other materials furnished to or acquired by Employee as a result of, or during the course of, Employee's employment by the Company.

In consideration of all of Employee's acknowledgments, representations, warranties, covenants, releases and agreement set forth in this Agreement, Company agrees to enter into the Retainer Agreement with Employee, in the form attached hereto and incorporated herein as Exhibit "A."

Employee's medical insurance shall be terminated as of July 31, 2012. The Employee is eligible to elect continuation coverage of Employee's medical and hospitalization insurance as governed by the provisions set for the Section 4980B of the Internal Revenue Code of 1986 as amended, the Consolidated Omnibus Reconciliation Act of 1985, 29 U.S.C.A. 1161 et seq. and Louisiana Revised Statute 22:215 et seq. ("COBRA continuation coverage"). If the election to maintain coverage under COBRA is made, the company agrees to pay for the first year's premium. Also, if the election is made there will be no lapse in coverage from the termination date and the date of the election. The details concerning medical coverage shall be sent to you by Werntz & Associates, Inc.

From and after July 31, 2012, Employee shall cease to participate in, and accrue benefits under Company's Group Life Insurance Plan through UNUM Life Insurance Company of America. Employee may be entitled to continuation of coverage under the terms of the policy. Employee acknowledges that any and all steps necessary to elect continuation coverage and any and all premiums or costs required for continuation coverage will be the sole responsibility Employee.

From and after July 31, 2012, Employee shall cease to participate in, and accrue benefits under, Company's retirement or pension benefit plan, program, policy, and arrangement of the Company or any of its affiliates. Employee's entitlement to receive any vested accrued benefits or vested accounts under the Company's benefit plan shall be determined in accordance with, and governed by, the respective terms of such plan. Employee agrees that neither Employee nor any of her dependents or beneficiaries is or shall be entitled to any other compensation, bonus, commission, employee pension or welfare benefit, or any other fringe benefit from the Company except as set forth in this Agreement and except as expressly provided by the terms of the Company's employee benefit plans.

Except for breaches of this Agreement, Employee hereby releases and forever discharges the Company, its manager, members, officers, directors, shareholders, employees, attorneys, agents, successors and assigns, of any and all claims, demands, damages, actions and causes of action of any nature whatsoever arising out of or in any way related to her employment or termination of employment with the Company including, without limitation, claims for alleged discrimination based on the Age Discrimination in Employment Act or the Louisiana Fair Employment Act, or any claim for damages for wrongful charges or discrimination which may be brought against the Company, its officers,

directions, shareholders, employees, attorneys, agents, successors and assigns by or on Employee's behalf under federal or state law. Employee further agrees this waiver of rights includes any claims arising under any federal, state, or local laws or regulations pertaining to discrimination on the basis of sex, race, color, religion, creed, national origin, age, or handicap status and particularly any rights he may have pursuant to the Age Discrimination in Employment Act, The Older Workers Benefit Protection Act, or Title VII of the Civil Rights Act of 1964.

Employee agrees to voluntarily make herself available to the Company and the Company's legal counsel, at the Company's request, without the necessity of the Company obtaining subpoena or court order, in the Company's investigation, preparation, prosecution and/or defense of any actual or potential legal proceeding, regulatory action, or internal matter. The Company will reimburse Employee for Employee's out-of-pocket expenses actually incurred as a result of the Company's request, or, at the Company's option, the Company will arrange to advance Employee expenses or to incur Employee's expenses directly.

Employee agrees to indemnify, defend, and hold the Company harmless from and against any loss, cost, damage, or expense (including, without limitation, attorneys' fees) incurred by the Company as a result of any breach of this Agreement by Employee.

EMPLOYEE REPRESENTS THAT SHE HAS HAD THE OPPORTUNITY TO CAREFULLY READ THIS AGREEMENT AND ACKNOWLEDGES THAT THE COMPANY HAS ADVISED EMPLOYEE IN WRITING TO CONSULT WITH HER ATTORNEY REGARDING THE TERMS AND CONDITIONS OF THIS AGREEMENT PRIOR TO EXECUTING THIS AGREEMENT, THAT SHE HAS BEEN GIVEN **TWENTY-ONE (21) DAYS** WITHIN WHICH TO CONSIDER THE TERMS OF THIS AGREEMENT AND AGREES THAT SHE IS VOLUNTARILY ENTERING INTO THIS AGREEMENT FREE FROM DURESS. EMPLOYEE ACKNOWLEDGES THAT IN ENTERING INTO THIS AGREEMENT SHE IS NOT RELYING UPON ANY REPRESENTATIONS, COMMUNICATIONS, OR OTHER ACTIONS BY THE COMPANY, BUT IS INSTEAD RELYING SOLELY UPON HER OWN KNOWLEDGE AND ANY ADVICE SHE MAY HAVE SOUGHT FROM HER FAMILY, ANY OTHER THIRD PARTIES NOT AFFILIATED WITH THE COMPANY, HER ATTORNEY(S) OR HER TAX ADVISOR(S) CONCERNING THIS AGREEMENT.

THIS AGREEMENT WILL REMAIN REVOCABLE FOR **SEVEN (7) DAYS** AFTER EXECUTION OF SAME BY EMPLOYEE AND WILL NOT BECOME EFFECTIVE OR ENFORCEABLE PRIOR TO THE EXPIRATION OF THAT PERIOD OF TIME. ANY REVOCATION OF THIS AGREEMENT UNDER THIS PROVISION MUST BE MADE IN WRITING AND DELIVERED TO THE COMPANY AT THE ADDRESS PROVIDED HEREINABOVE, PRIOR TO EXPIRATION OF THE **SEVEN (7) DAY** PERIOD FOLLOWING EXECUTION BY EMPLOYEE.

This Agreement shall be interpreted, construed and governed by and under the laws of the State of Louisiana.

If any provision or clause of this Agreement is held to be invalid by a court of competent jurisdiction, then such provision shall be severed herefrom and such invalidity shall not affect any other provision of this Agreement, the balance of which shall remain and have its intended full force and effect. Employee agrees and understands that he may revoke this Agreement for a period of seven (7) calendar days following the execution of this Agreement. This Agreement is not effective until this revocation period has expired. Employee understands that any revocation, to be effective, must be in writing and either (a) postmarked within seven (7) days of execution of this Agreement and addressed to Employer at 401 Edwards Street, Suite 1601, Shreveport, LA 71101 or (b) hand delivered within seven (7) days of execution of this Agreement Chris A. Farrell at 401 Edwards Street, Suite 1601, Shreveport, LA 71101.

This Agreement sets forth the entire understanding of the parties and supersedes all prior agreements, whether oral or written, pertaining to the subject matter hereof.

No provision of this Agreement shall be modified except by a written instrument duly signed and acknowledged by each of the parties hereto.

This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same agreement.

This instrument has been executed by Chris A. Farrell on behalf of Company on this 17th day of July 2012. The offer made herein shall be deemed accepted if Bettye LaCour unconditionally executes this instrument in the space provided below and returns the executed original to Company on or before the close of business on August 7, 2012, in which case, this agreement shall be binding between the parties subject to the revocation period described hereinabove, but failing which, this offer shall be deemed rejected and be of no force and effect.

Executed by Bettye LaCour on this _2nd_ day of _August_, 2012.

SKLAR EXPLORATION COMPANY L.L.C.

By: _____
Chris A. Farrell
Vice President-Chief Financial Officer

_____
Bettye LaCour, Employee

5

**EXHIBIT "A"**
**TO**
**SEPARATION AGREEMENT BY AND BETWEEN**
**BETTYE LACOUR AND**
**SKLAR EXPLORATION COMPANY L.L.C.**

**RETAINER AGREEMENT**

THIS RETAINER AGREEMENT (this "Agreement") is entered into effective as of the 1st day of August 2012, by and between Sklar Exploration Company, L.L.C., a Louisiana limited liability company ("Sklar"), and Bettye LaCour, ("Contractor").

Sklar and Contractor do hereby mutually covenant and agree as follows:

1. Services and Duties.

   a. Sklar may, from time to time, request that Contractor perform certain work and services ("Work"). As such needs arise, Sklar will contact Contractor with instructions on the Work to be performed pursuant to this Agreement. In return for the payments and the covenants described herein, Contractor agrees that upon receipt of instructions to perform work by Sklar, she will diligently and promptly perform such Work to the best of her abilities.

   b. The execution of this Agreement by Sklar and Contractor does not obligate Sklar to offer any Work to Contractor.

2. Term.

   a. The initial term of this Agreement shall commence on the 1st day of August 2012 (the "Effective Date"), and shall continue until the earlier of Contractor's date of death or December 31, 2063, or until terminated in accordance with the other provisions of this Agreement. In the event of Contractor's death, this Agreement shall be considered terminated and no further payments shall be owed to her estate.

   b. Should either party be in breach of any of its obligations under this Agreement, the breaching party shall, within 10 days of receipt from the non-breaching party of a written notice of default reasonably identifying the causes of such claimed default, correct such default or make provisions satisfactory to the non-breaching party for correcting such default within a reasonable time. If the breaching party fails to so correct the identified cause of default or to make satisfactory provisions for the correction of the identified cause of default, the non-breaching party may, in addition to all other rights and remedies provided by law, terminate this Agreement.

3. Independent Contractor. Contractor is and shall remain an independent contractor. Contractor agrees that Contractor is not and will not become an employee, partner, agent, or principal of Sklar while this Agreement is in effect. Contractor is not entitled to the rights or benefits

afforded to Sklar's employees, including disability or unemployment insurance, worker's compensation, medical insurance, sick leave, or any other employment benefit. Contractor is responsible for providing at Contractor's own expense disability, unemployment, worker's compensation and other insurance, training, permits and licenses for Contractor and Contractor's employees. Contractor is under no obligation to work exclusively for Sklar and may conduct business of her own or on another's behalf, provided these activities do not materially interfere with the services required to be rendered hereunder. Contractor must devote the resources, time, energy and attention to performing her duties hereunder and during the term of this Agreement, contractor must work in a diligent manner to complete the services in the periods specified by Sklar. Contractor's performance of all services under this Agreement will be at her sole risk and expense, subject to the rights of Contractor set forth herein to be compensated for such services.

4. Compensation.

    a. Fees. Unless this Agreement is earlier terminated by either party as provided herein, Sklar will pay Contractor for services provided under this Agreement, and Contractor shall be entitled to receive payment from Sklar, as follows:

    Between August 1, 2012, thru the earlier of December 31, 2022, or Date of Death, Sklar shall pay Contractor $45,000.00 a year; and

    Between January, 01 2023, thru the earlier of December 31, 2063, or Date of Death, Sklar shall pay Contractor $30,000.00 a year.

    b. Reimbursement. In addition to the fees described in subparagraph (a) of this Section, Sklar will reimburse Contractor for all reasonable expenses incurred by her and her representatives in performance of services under this Agreement. Expenses are payable within fifteen (15) days of the date on which Contractor furnishes Sklar such invoices, receipts, vouchers and other records as Sklar may deem necessary to verify the amount and nature of the expenses incurred.

    c. No Withholding. Contractor is responsible for paying when due all income taxes, including estimated taxes, incurred as a result of the compensation paid by Sklar to Contractor for services under this Agreement. Contractor agrees to indemnify, defendant and hold Sklar harmless for any claims, costs, losses, fees, penalties, interest, or damages suffered by Sklar resulting from Contractor's failure to comply with this provision.

5. Additional Provisions.

    a. Notices. Any notices required or permitted to be given under this Agreement shall be sufficient if in writing and if sent by certified mail to the residence of Contractor or to the principal office of Sklar, as the case may be.

    b. Waiver of Breach. The waiver by any party of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party.

c. <u>Benefit and Assignability</u>. This Agreement shall inure to the benefit of and shall be binding upon Sklar and upon any person, firm, or corporation with which Sklar may be merged or consolidated or which may acquire all or substantially all of Sklar's assets through sale, lease, liquidation or otherwise. The rights and benefits of Contractor are personal to her and no such rights or benefits shall be subject to assignment, transfer or bequest in any manner by Contractor. Any assignment of this Agreement in contravention of the terms of this Paragraph is null and void.

d. <u>Confidential Information</u>.

   i. For purposes of this subparagraph, the term "Confidential Information" shall mean information disclosed to Contractor or known by Contractor as a consequence of or through either (A) her previous employment with Sklar or its predecessor company Sklar and Phillips, Inc., or (B) the performance of duties by Contractor for Sklar pursuant to this Agreement, and not generally known by persons not employed by Sklar or in the industry in which Sklar is or may become engaged, about (A) Sklar, its affiliates, partners, Members or employees (the "Sklar Group"), or (B) the products, processes and services of Sklar or the Sklar Group, including but not limited to, information relating to the business enterprises and practices, business organization and structure, research, development, inventions, purchasing, client lists, marketing techniques, pricing policies, financial information, and engineering practices of Sklar or the Sklar Group.

   ii. Contractor agrees that, except as required in her duties to Sklar, she will not during the term of this Agreement directly or indirectly or otherwise, use, disseminate, disclose, lecture upon or publish articles concerning any Confidential Information to any person or company. All documents, notebooks, and similar repositories of or containing Confidential Information, including copies thereof, shall belong to and remain the property of Sklar. Upon termination of this Agreement, Contractor shall not be entitled to keep or reproduce said repositories, whether or not prepared by her but rather she shall forthwith return any such repository to Sklar.

   iii. Contractor warrants and represents that this subaragraph (d) is not in conflict with any obligations she presently has with any person, business organization or former company. Contractor will notify Sklar in writing before performing or causing to be performed any work for or on behalf of Sklar which appears to be in conflict with (a) with the rights of others arising out of obligations incurred by Contractor prior to entering into this Agreement or (b) with Contractor's obligations to Sklar under this Agreement.

   iv. Notwithstanding anything in this Agreement to the contrary, in the event of the breach by Contractor of the provisions of this subparagraph d., this Agreement may be terminated at any time by Sklar on not less than thirty (30) days prior written notice to Contractor sent by express courier delivery, effective as of the first day of the month immediately following the delivery by Sklar to the delivery service of such

8

written notice.

e. <u>Survival</u>. The parties agree that the representations, warranties, covenants and other agreements provided herein shall survive execution of this Agreement and termination hereof.

f. <u>Severability</u>. If any provision of this Agreement becomes or is found to be illegal or unenforceable for any reason, such clause or provision must first be modified to the extent necessary to make this Agreement legal and enforceable and then if necessary, second, severed from the remainder of the Agreement to allow the remainder of the Agreement to remain in full force and effect.

g. <u>Applicable Law</u>. This Agreement and all matters and issues collateral thereto shall be governed by the laws of the State of Louisiana, without regard to principles of conflicts of laws.

h. <u>Venue</u>. Venue for any legal action brought pursuant to or involving this Agreement shall be proper in Caddo Parish, State of Louisiana, or any other location mutually agreeable to the parties.

i. <u>Attorney's Fees</u>. If either party shall commence any action or proceeding against the other in order to enforce the provisions hereof, or to recover damages resulting from the alleged breach of any of the provisions hereof, the prevailing party therein shall be entitled to recover all reasonable costs incurred in connection therewith, including, but not limited to, reasonable attorney's fees.

j. <u>Entire Agreement, Amendment</u>. This Agreement shall not be amended or modified except by a writing executed by both parties. This Agreement shall be binding upon and inure to the benefit of Sklar and its successors and assigns. This Agreement represents the entire understanding of the parties concerning the subject matter hereof and supersedes all prior communications, agreements and understandings, whether oral or written, relating to the subject matter hereof.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement and affixed their hands and seals effective as of the date first above written.

SKLAR EXPLORATION COMPANY L.L.C.

By: _____
Chris A. Farrell
Vice President-Chief Financial Officer

_____
Bettye LaCour

## **RETAINER AGREEMENT**

THIS RETAINER AGREEMENT (this "Agreement") is entered into effective as of the 1st day of August 2012, by and between Sklar Exploration Company, L.L.C., a Louisiana limited liability company ("Sklar"), and Bettye LaCour, ("Contractor").

Sklar and Contractor do hereby mutually covenant and agree as follows:

1. Services and Duties.

   a. Sklar may, from time to time, request that Contractor perform certain work and services ("Work"). As such needs arise, Sklar will contact Contractor with instructions on the Work to be performed pursuant to this Agreement. In return for the payments and the covenants described herein, Contractor agrees that upon receipt of instructions to perform work by Sklar, she will diligently and promptly perform such Work to the best of her abilities.

   b. The execution of this Agreement by Sklar and Contractor does not obligate Sklar to offer any Work to Contractor.

2. Term.

   a. The initial term of this Agreement shall commence on the 1st day of August 2012 (the "Effective Date") and shall continue until the earlier of Contractor's date of death or December 31, 2063, or until terminated in accordance with the other provisions of this Agreement. In the event of Contractor's death, this Agreement shall be considered terminated and no further payments shall be owed to her estate.

   b. Should either party be in breach of any of its obligations under this Agreement, the breaching party shall, within 10 days of receipt from the non-breaching party of a written notice of default reasonably identifying the causes of such claimed default, correct such default or make provisions satisfactory to the non-breaching party for correcting such default within a reasonable time. If the breaching party fails to so correct the identified cause of default or to make satisfactory provisions for the correction of the identified cause of default, the non-breaching party may, in addition to all other rights and remedies provided by law, terminate this Agreement.

3. Independent Contractor. Contractor is and shall remain an independent contractor. Contractor agrees that Contractor is not and will not become an employee, partner, agent, or principal of Sklar while this Agreement is in effect. Contractor is not entitled to the rights or benefits afforded to Sklar's employees, including disability or unemployment insurance, worker's compensation, medical insurance, sick leave, or any other employment benefit. Contractor is responsible for providing at Contractor's own expense disability, unemployment, worker's compensation and other insurance, training, permits and licenses for Contractor and Contractor's employees. Contractor is under no obligation to work exclusively for Sklar and may conduct business of her own or on another's behalf, provided these activities do not materially interfere with the services required to be rendered hereunder. Contractor must

1

devote the resources, time, energy and attention to performing her duties hereunder and during the term of this Agreement, contractor must work in a diligent manner to complete the services in the periods specified by Sklar. Contractor's performance of all services under this Agreement will be at her sole risk and expense, subject to the rights of Contractor set forth herein to be compensated for such services.

4. Compensation.

    a. Fees. Unless this Agreement is earlier terminated by either party as provided herein, Sklar will pay Contractor for services provided under this Agreement, and Contractor shall be entitled to receive payment from Sklar, as follows:

    Between August 1, 2012 thru the earlier of December 31, 2022 or Date of Death, Sklar shall pay Contractor $45,000.00 a year; and

    Between January, 01 2023 thru the earlier of December 31, 2063 or Date of Death, Sklar shall pay Contractor $30,000.00 a year.

    b. Reimbursement. In addition to the fees described in subparagraph (a) of this Section, Sklar will reimburse Contractor for all reasonable expenses incurred by her and her representatives in performance of services under this Agreement. Expenses are payable within fifteen (15) days of the date on which Contractor furnishes Sklar such invoices, receipts, vouchers and other records as Sklar may deem necessary to verify the amount and nature of the expenses incurred.

    c. No Withholding. Contractor is responsible for paying when due all income taxes, including estimated taxes, incurred as a result of the compensation paid by Sklar to Contractor for services under this Agreement. Contractor agrees to indemnify, defendant and hold Sklar harmless for any claims, costs, losses, fees, penalties, interest, or damages suffered by Sklar resulting from Contractor's failure to comply with this provision.

5. Additional Provisions.

    a. Notices. Any notices required or permitted to be given under this Agreement shall be sufficient if in writing and if sent by certified mail to the residence of Contractor or to the principal office of Sklar, as the case may be.

    b. Waiver of Breach. The waiver by any party of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party.

    c. Benefit and Assignability. This Agreement shall inure to the benefit of and shall be binding upon Sklar and upon any person, firm, or corporation with which Sklar may be merged or consolidated or which may acquire all or substantially all of Sklar's assets through sale, lease, liquidation or otherwise. The rights and benefits of Contractor are personal to her and no such rights or benefits shall be subject to assignment, transfer or bequest in any

manner by Contractor. Any assignment of this Agreement in contravention of the terms of this Paragraph is null and void.

d. Confidential Information.

   i. For purposes of this subparagraph, the term "Confidential Information" shall mean information disclosed to Contractor or known by Contractor as a consequence of or through either (A) her previous employment with Sklar or its predecessor company Sklar and Phillips, Inc., or (B) the performance of duties by Contractor for Sklar pursuant to this Agreement, and not generally known by persons not employed by Sklar or in the industry in which Sklar is or may become engaged, about (A) Sklar, its affiliates, partners, Members or employees (the "Sklar Group"), or (B) the products, processes and services of Sklar or the Sklar Group, including but not limited to, information relating to the business enterprises and practices, business organization and structure, research, development, inventions, purchasing, client lists, marketing techniques, pricing policies, financial information, and engineering practices of Sklar or the Sklar Group,

   ii. Contractor agrees that, except as required in her duties to Sklar, she will not during the term of this Agreement directly or indirectly or otherwise, use, disseminate, disclose, lecture upon or publish articles concerning any Confidential Information to any person or company. All documents, notebooks, and similar repositories of or containing Confidential Information, including copies thereof, shall belong to and remain the property of Sklar. Upon termination of this Agreement, Contractor shall not be entitled to keep or reproduce said repositories, whether or not prepared by her but rather she shall forthwith return any such repository to Sklar.

   iii. Contractor warrants and represents that this subaragraph (d) is not in conflict with any obligations she presently has with any person, business organization or former company. Contractor will notify Sklar in writing before performing or causing to be performed any work for or on behalf of Sklar which appears to be in conflict with (a) with the rights of others arising out of obligations incurred by Contractor prior to entering into this Agreement or (b) with Contractor's obligations to Sklar under this Agreement.

   iv. Notwithstanding anything in this Agreement to the contrary, in the event of the breach by Contractor of the provisions of this subparagraph d., this Agreement may be terminated at any time by Sklar on not less than thirty (30) days prior written notice to Contractor sent by express courier delivery, effective as of the first day of the month immediately following the delivery by Sklar to the delivery service of such written notice.

e. Survival. The parties agree that the representations, warranties, covenants and other agreements provided herein shall survive execution of this Agreement and termination hereof.

f. <u>Severability</u>. If any provision of this Agreement becomes or is found to be illegal or unenforceable for any reason, such clause or provision must first be modified to the extent necessary to make this Agreement legal and enforceable and then if necessary, second, severed from the remainder of the Agreement to allow the remainder of the Agreement to remain in full force and effect.

g. <u>Applicable Law</u>. This Agreement and all matters and issues collateral thereto shall be governed by the laws of the State of Louisiana, without regard to principles of conflicts of laws.

h. <u>Venue</u>. Venue for any legal action brought pursuant to or involving this Agreement shall be proper in Caddo Parish, State of Louisiana, or any other location mutually agreeable to the parties.

i. <u>Attorney's Fees</u>. If either party shall commence any action or proceeding against the other in order to enforce the provisions hereof, or to recover damages resulting from the alleged breach of any of the provisions hereof, the prevailing party therein shall be entitled to recover all reasonable costs incurred in connection therewith, including, but not limited to, reasonable attorney's fees.

j. <u>Entire Agreement, Amendment</u>. This Agreement shall not be amended or modified except by a writing executed by both parties. This Agreement shall be binding upon and inure to the benefit of Sklar and its successors and assigns. This Agreement represents the entire understanding of the parties concerning the subject matter hereof and supersedes all prior communications, agreements and understandings, whether oral or written, relating to the subject matter hereof.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement and affixed their hands and seals effective as of the date first above written.

SKLAR EXPLORATION COMPANY L.L.C.

By: _____
Chris A. Farrell
Vice President-Chief Financial Officer

_____
Bettye LaCour

4

COURT DOCKET

| 20-12377 | 83-1 | 9/17/2020 | D. GERTH |
|---|---|---|---|
| **CASE NO.** | **COURT CLAIM NO.** | **DATE RETRIEVED** | **RECEIVED BY** |