UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC | ) | |
| EIN: 72-1417930 | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| | ) | Case No. 20-12380-EEB |
| SKLARCO, LLC | ) | |
| EIN:  72-1425432 | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

**OBJECTION TO CLAIM NO. 181 FILED BY ROOSTH 806, LTD.**

The Debtors, Sklar Exploration Company, LLC ("SEC") and Sklarco, LLC ("Sklarco" and together, "Debtors") by and through their attorneys, Kutner Brinen Dickey Riley, P.C., moves this Court for entry of an order pursuant to 11 U.S.C. § 502(b), Fed. R. Bankr. P. 3007, and L.B.R. 3007-1 disallowing the claims filed by the Roosth 806, LTD. ("Roosth") and as grounds therefore state as follows:

1.      The Debtors filed their respective voluntary petitions for relief pursuant to Chapter 11 of the Bankruptcy Code on April 1, 2020 ("Petition Date"). The Debtors remain Debtors-in-Possession.

2.      SEC was engaged in business as an independent exploration and production company in the oil and gas industry.  SEC was an operating company and does not own oil or gas properties.

3.      As the operator of the wells, SEC collected revenue from oil and gas wells and remitted revenue to working interest owners with an interest in the respective wells, including Roosth, in accordance with the respective Operating Agreements.

4.      On September 24, 2020, Roosth filed Claim No. 181 asserting a secured claim in the amount of $44,000 ("Claim").  The Claim does not specify the collateral securing the claim, nor the basis for asserting a security.  The amount of the claim is further not supported by the statements attached to the Claim.

5.      SEC's books and records reflect that the total amount owed to Roosth is $12,469.85 and is a general unsecured claim.

6.      Accordingly, the Debtors request that the Court disallow Roosth's claim as a secured claim, and allow Roosth's unsecured claim in the amount of $12,469.85.

WHEREFORE, the Debtors pray that the Court make and enter an Order disallowing Roosth's secured claim, allowing Roosth an unsecured claim in the amount of $12,469.85, and for such further and additional relief as to the Court may deem just and proper.

DATED: April 5, 2021                     Respectfully submitted,

By:  _/s/ Keri L. Riley_
Keri L. Riley, #47605
**KUTNER BRINEN DICKEY RILEY, P.C.**
1660 Lincoln St., Suite 1720
Denver, CO 80264
Telephone: (303) 832-2400
E-Mail: klr@kutnerlaw.com

**RECEIVED**

SEP 2 4 2020

**LEGAL SERVICES**

**Fill in this information to identify the case:**

Debtor 1      Sklar Exploration Company LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: _____ District of __Colorado_____

Case number   20-12377-EEB

Filed: USBC - District of Colorado
Sklar Exploration Company, LLC, et al (B10)
20-12377 (EEB)

**SKR**                    0000000181

## Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That     date is on the notice of bankruptcy (Form 309) that you received.

### Part 1:    Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | Roosth 806, LTD, a Texas Limited Partnership<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor  Roosth 806, Regions Bank, Agent and AIF |
| 2. Has this claim been acquired from someone else? | ☑ No<br>☐ Yes.  From whom? |

| | | |
|---|---|---|
| 3. Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Where should notices to the creditor be sent?<br><br>Regions Bank-Attn: Joey Hand, Senior VP<br>Name<br><br>P O Box 2020<br>Number         Street<br><br>Tyler              TX        75710<br>City              State        ZIP Code<br><br>Contact phone  903.535.4266<br><br>Contact email  joey.hand@regions.com<br><br><br>Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br><br>__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ | Where should payments to the creditor be sent? (if different)<br><br>Name<br><br>Number         Street<br><br>City              State        ZIP Code<br><br>Contact phone<br><br>Contact email |

| | | |
|---|---|---|
| 4. Does this claim amend one already filed? | ☑ No<br>☐ Yes.  Claim number on court claims registry (if known) _____ | Filed on ____ / ____ / _____<br>                 MM  /  DD  / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes.  Who made the earlier filing? _____ | |

**Part 2:**   **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____ |

7. **How much is the claim?**   $ _____ 44,000.00   **Does this amount include interest or other charges?**
☑ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_Overpayment of drilling, completion & operating cost for the Cedar Creek Land Timber 3-7 #1

#well._____

9. **Is all or part of the claim secured?**

☐ No
☑ Yes.   The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle   _Alabama  UCC Secured Transactions ALa Cook 7-9A101, et seq
☑ Other. Describe:

**Basis for perfection:**   Recording Supplement to Operating Agreement & Financing Statement dtd June 17, 2016.

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded)

**Value of property** $_____   44,000.00
**Amount of the claim that is secured:** $   44,000.00
**Amount of the claim that is unsecured:** $ _____   NONE   (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $ _____ 44,000.00

**Annual Interest Rate** (when case was filed) _____ %
☐ Fixed
☐ Variable

10. **Is this claim based on a lease?**
☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $ _____

11. **Is this claim subject to a right of setoff?**
☐ No
☑ Yes. Identify the property: Cedar Creek Land  Timber Well 3-7#1 NE/4 of Sec.3.T#N-R13E
☐ as the same is now included in the Sklar-Southeast Brooklyn Oil Unit., Conecuh County, AL

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | |
|---|---|---|
| | ☐ Yes. *Check one:* | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

**Part 3:    Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date _____09/11/2020_____
MM / DD / YYYY

*Joseph E Hand Jr*
Signature

Print the name of the person who is completing and signing this claim:

Name        _____Joseph E. Hand, Jr. Senior Vice President

Title        Senior Vice President

Company    First Regions Bank, Agent for Roost 806, LTD        Last name

Address    P O Box 2020
Identify the corporate servicer as the company if the authorized agent is a servicer.

Tyler, TX
City                                State    ZIP Code
Number    Street

Contact phone    903.535.4266        Email joey.hand@regions.com

---

Official Form 410                    **Proof of Claim**                    page 3

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC | ) | |
| EIN: 72-1417930 | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | Case No. 20-12380-EEB |
| SKLARCO, LLC | ) | |
| EIN: 72-1425432 | ) | Chapter 11 |
| Debtor. | ) | |

**NOTICE OF ORDER ESTABLISHING PROCEDURES AND
BAR DATE FOR THE FILING OF PROOFS OF CLAIM
PURSUANT TO FED. R. BANKR. P. 3003(c)(3)**

TO INDIVIDUALS AND ENTITIES WHO MAY BE CREDITORS OF DEBTORS:

Please take notice that the bankruptcy court has entered an order establishing procedures and a bar date for filing proofs of claim pursuant to Bankruptcy Rule 3003(c)(3) as follows:

(a) All proofs of claim must be filed with Epiq Corporate Restructuring, LLC ("Claims Agent") by e-filing, by mail, or in person, such that they are received no later than **5:00 P.M. PREVAILING MOUNTAIN TIME ON OR BEFORE SEPTEMBER 28, 2020 (the "Bar Date")**, at the following address:

**If by First-Class Mail:**

Sklar Exploration Company, LLC
Claims Processing Center
c/o Epiq Corporate Restructuring, LLC
P.O. Box 4421
Beaverton, OR 97076-4421

**If by Hand Delivery or Overnight Mail:**

Sklar Exploration Company, LLC
Claims Processing Center
c/o Epiq Corporate Restructuring, LLC
10300 SW Allen Blvd.
Beaverton, OR 97005

**By e-filing at:** https://epiqworkflow.com/cases/SKR

**CLAIMS ARE NOT DEEMED FILED UNTIL ACTUALLY RECEIVED BY THE CLAIMS AGENT.**

(b) **ANY CLAIMS FILED AFTER THE BAR DATE WILL BE DISALLOWED.** Any individual or entity that is required to file a proof of claim by the Bar Date and that fails to do so will not be treated as a creditor for the purposes of voting or distribution, may not receive any further notices of mailings in this chapter 11 case and any claim of such individual or entity will be forever barred.

(c) Any creditor holding a claim arising prior to date of debtors' chapter 11 bankruptcy filings, **April 1, 2020**, must file a proof of claim with the court if the claim is: (i) not scheduled, (ii) scheduled as disputed, contingent, or unliquidated, or (iii) if such creditor disagrees with the amount of the scheduled claim.

(d) Following the Bar Date, a creditor will not be allowed to amend a claim deemed filed on its behalf pursuant to 11 U.S.C. § 1111(a) by virtue of the listing of such claim by debtors in their respective bankruptcy schedules.

(e) In order to assist in the review and reconciliation of proofs of claim, claims should include copies of any invoices, statements or other documents which evidence or support the amount and basis of the claim.

(f) **CLAIMANTS WHO HAVE ALREADY FILED THEIR PROOFS OF CLAIM SHOULD NOT FILE A DUPLICATE CLAIM.** Claimants who have filed a Proof of Claim MAY file an amended Proof of Claim by the Bar Date.

**ANY CLAIM NOT TIMELY FILED WITH THE CLAIMS AGENT WITHIN THE TIME SET FORTH ABOVE WILL BE FOREVER BARRED FROM SHARING IN THE ESTATE OR BEING TREATED AS A CLAIM FOR PURPOSES OF VOTING OR DISTRIBUTION.** [1]

DATED: July 29, 2020

Respectfully submitted,

By:   /s/ Keri L. Riley
          Lee M. Kutner, #10966
          Keri L. Riley, #47605
          **KUTNER BRINEN, P.C.**
          1660 Lincoln Street, Suite 1850
          Denver, CO 80264
          Telephone: (303) 832-2400
          Telecopy: (303) 832-1510
          E-mail: klr@kutnerlaw.com

---

1 Subject to 11 U.S.C. § 726(a)(1) in the event of conversion.

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA  71101
(318)227-8668

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX  75711

Account:  ROO802

Date:  06/30/2016

**Prepaid Balance by Project:**

| Property# | AFE# | Description | Beginning Balance | Pre-Pmts Applied | Balance Remaining |
|---|---|---|---|---|---|
| 1CED62 | 280 | CCL&T 3-7 #1 | 88,315.63 | 2,459.67 | 85,855.96 |

**Summary by LEASE:**

| Property# | Description | Expenses | Pre-Pmts Applied | You Owe |
|---|---|---|---|---|
| 1CED62 | CCL&T 3-7 #1 | 2,459.67 | 2,459.67 | |
| | Totals: | 2,459.67 | 2,459.67 | 0.00 |



RECEIVED
JUL 1 1 2016
BY:_____

2

From: Sklar Exploration Co., L.L.C.

To: Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 06/30/2016
Account: ROO802    Page    2

### LEASE: (1CED62)  CCL&T 3-7 #1    County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Leasehold Costs** | | | | | |
| *Surface Damages & ROW* | | | | | |
| 186621 | Cedar Creek Land & Timber Inc.- Timber damages | 280-1 | 16,346.00 | 16,346.00 | 1,021.63 |
| *Legal Fees* | | | | | |
| 975481 | Armbrecht Jackson LLP- Title Opinion | 280-1 | 1,357.00 | | |
| 975868 | Armbrecht Jackson LLP- Title Opinion | 280-1 | 4,715.00 | | |
| 1CED62 | Armbrecht Jackson LLP Title Opinion (CCL&T 3-7 #1) | 280-1 | 1,357.00- | | |
| 1CED67 | Armbrecht Jackson - Title Opinion (CCL&T 3-2 #1 (R13E) | 280-1 | 4,715.00- | | |
| 400477 | Armbrecht Jackson LLP- Title/Abstract | 280-1 | 312.00 | 312.00 | 19.50 |
| *Miscellaneous* | | | | | |
| 10258 | Precision Signs | 280-1 | 181.00 | 181.00 | 11.31 |
| *Brokerage Costs* | | | | | |
| 041516 | Azalea City Land Services, Inc.- Abstracting | 280-1 | 5,063.88 | 5,063.88 | 316.49 |
| | **Total Leasehold Costs** | | | **21,902.88** | **1,368.93** |
| **Intangible Drilling Costs** | | | | | |
| *Survey, DOC Hearings, Permits* | | | | | |
| 62551 | Engineering Service- Survey | 280-1 | 2,612.34 | | |
| 1CED62 | Engineering Service - Survey (CCL&T 3-7 #1) | 280-1 | 2,612.34- | | |
| CCL&T 3-7 #1 | State of Alabama Oil & Gas Board | 280-1 | 300.00 | | |
| 64498 | Engineering Service | 280-1 | 2,692.20 | | |
| 64512 | Engineering Service | 280-1 | 153.00 | 3,145.20 | 196.58 |
| *Location Preparation/Dirt Work* | | | | | |
| 2664 | C.R. Pate Logging, Inc. | 280-1 | 1,294.15 | 1,294.15 | 80.88 |
| *Engineering & Supervision Svcs* | | | | | |
| TM0416EV | Field Supervisor Time and Mileage - Vines | 280-1 | 2,708.23 | | |
| TM0516EV | Field Supervisor Time and Mileage - Vines 05-16 | 280-1 | 856.44 | | |
| TM0516CC | Operations Engineer Time - Campbell 05-16 | 280-1 | 56.81 | | |
| COEV0616 | Capital One Credit Card -06-16- E Vines-Meals | 280-1 | 11.10 | | |
| TM0616CC | Operations Engineer Time - Campbell | 280-1 | 228.28 | | |
| TM0616EV | Field Supervisor Time and Mileage - Vines | 280-1 | 9,151.55 | 13,012.41 | 813.28 |
| | **Total Intangible Drilling Costs** | | | **17,451.76** | **1,090.74** |
| | **Total Expenses for LEASE** | | | **39,354.64** | **2,459.67** |

| LEASE Summary: | Wrk Int | Expenses | Pre-Pmt Applied | You Owe |
|---|---|---|---|---|
| 1CED62 | 0.06250000 | 2,459.67 | 2,459.67 | 0.00 |

2

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA  71101
☏(318)227-8668

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX  75711

Account:  ROO802

Date:  07/31/2016

## Account: ROO802 - Statement of Account:

| Date | Reference | Description | Charges | Credits |
|------|-----------|-------------|---------|---------|
| 07/01/2016 | 1CED62CC | Cash Call - CCL&T 3-7 #1 | 88,315.63 | |
| 07/13/2016 | 7907 | Payment-Thank You! Ck# 8061784 | | (88,315.63) |
| | | New Balance Forward | 0.00 | |

### Prepaid Balance by Project:

| Property# | AFE# | Description | Beginning Balance | Pre-Pmts Applied | Balance Remaining |
|-----------|------|-------------|-------------------|------------------|-------------------|
| 1CED62 | 280 | CCL&T 3-7 #1 | 85,855.96 | 23,587.06 | 62,268.90 |

### Summary by LEASE:

| Property# | Description | Expenses | Pre-Pmts Applied | You Owe |
|-----------|-------------|----------|------------------|---------|
| 1CED62 | CCL&T 3-7 #1 | 24,009.91 | 23,587.06 | 422.85 |
| | Totals: | 24,009.91 | 23,587.06 | 422.85 |

**PLEASE PAY THIS AMOUNT**

*8/29 → per Marie corrected to be under the AFE — no pmt needed*

RECEIVED
AUG 0 8 2016
BY:

3

From:   Sklar Exploration Co., L.L.C.
To:     Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 07/31/2016
Account: ROO802    Page   2

## LEASE: (1CED62)  CCL&T 3-7 #1    County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Leasehold Costs** | | | | | |
| *Legal Fees* | | | | | |
| 400733 | Armbrecht Jackson LLP- Prelim Title Opinion | 280-1 | 8,424.00 | 8,424.00 | 526.50 |
| *Brokerage Costs* | | | | | |
| 070616 | Azalea City Land Services, Inc.- Curative | 280-1 | 896.80 | 896.80 | 56.05 |
| | **Total Leasehold Costs** | | | 9,320.80 | 582.55 |
| **Intangible Drilling Costs** | | | | | |
| *Survey, DOC Hearings, Permits* | | | | | |
| 64705 | Engineering Service- Survey/Pipeline | 1 | 6,765.60 | 6,765.60 | 422.85 |
| *Location Preparation/Dirt Work* | | | | | |
| 29636 | Barnette & Benefield, Inc. | 280-1 | 95,000.00 | | |
| 29637 | Barnette & Benefield, Inc. | 280-1 | 29,920.00 | | |
| 29638 | Barnette & Benefield, Inc. | 280-1 | 1,196.35 | | |
| 48996 | Kelley Brothers Contractors, Inc. | 280-1 | 19,551.76 | 145,668.11 | 9,104.26 |
| *Setting Conductor Casing* | | | | | |
| 375 | A1 Conductor & Rathole, LLC | 280-1 | 10,063.00 | 10,063.00 | 628.93 |
| *Engineering & Supervision Svcs* | | | | | |
| TM0716MS | Engineer Time - Shed | 280-1 | 3,436.96 | | |
| TM0716NS | Geologist Time - Synder | 280-1 | 3,514.55 | | |
| TM0716MM | Geologist Time - McDowell | 280-1 | 162.21 | 7,113.72 | 444.61 |
| *Rig Instrumentation/Monitoring* | | | | | |
| 471549 | Derrick Corporation | 280-1 | 2,371.99 | 2,371.99 | 148.25 |
| *Mud & Chemicals* | | | | | |
| A30681 | Quality Drilling Fluids, Inc. | 280-1 | 9,957.04 | 9,957.04 | 622.32 |
| *Cementing & Equipment* | | | | | |
| 2546 | Boots Smith Completion Services, LLC | 280-1 | 32,654.43 | 32,654.43 | 2,040.90 |
| *Pipe Testing* | | | | | |
| 46940 | Rebel Testers, Inc. | 280-1 | 1,898.50 | 1,898.50 | 118.65 |
| *Equipment Rentals* | | | | | |
| 54982 | R & R Rentals & Hot Shot, Inc. | 280-1 | 3,518.00 | | |
| 54983 | R & R Rentals & Hot Shot, Inc. | 280-1 | 2,620.00 | | |
| 54984 | R & R Rentals & Hot Shot, Inc. | 280-1 | 2,828.00 | | |
| 49421 | T & T Welding Service | 280-1 | 3,229.00 | | |
| PIN-00227417- | National Oilwell Varco-Brandt | 280-1 | 3,803.28 | | |
| 20120069 | GE Oil & Gas | 280-1 | 530.00 | | |
| PIN-00227770- | National Oilwell Varco-Brandt | 280-1 | 1,195.68 | | |
| 10829 | Boots Smith Completion Services, LLC | 280-1 | 956.00 | 18,679.96 | 1,167.50 |
| *Telephone & Communications* | | | | | |
| 251 578-0614 | AT&T | 280-1 | 431.47 | 431.47 | 26.97 |
| *Water* | | | | | |
| 376 | A1 Conductor & Rathole, LLC | 280-1 | 6,499.00 | 6,499.00 | 406.19 |
| *Fuel* | | | | | |
| 0104576-IN | Richard E. Johnson, Inc. | 280-1 | 13,300.30 | | |
| 0104637-IN | Richard E. Johnson, Inc. | 280-1 | 11,397.00 | | |
| 0104697-IN | Richard E. Johnson, Inc. | 280-1 | 10,720.19 | | |
| 0104754-IN | Richard E. Johnson, Inc. | 280-1 | 10,815.52 | 46,233.01 | 2,889.56 |
| *Bits* | | | | | |
| 907254275 | Baker Hughes Business Support Services | 280-1 | 5,246.08 | 5,246.08 | 327.88 |
| *Transportation & Trucking* | | | | | |
| 10589 | R & R Rentals & Hot Shot, Inc. | 280-1 | 756.00 | | |
| 10590 | R & R Rentals & Hot Shot, Inc. | 280-1 | 756.00 | | |
| 10591 | R & R Rentals & Hot Shot, Inc. | 280-1 | 756.00 | | |
| 10599 | R & R Rentals & Hot Shot, Inc. | 280-1 | 1,480.00 | 3,748.00 | 234.25 |

3

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA 71101
(318)227-8668

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX 75711

Account: ROO802

Date: 08/31/2016

*800669*

## Account: ROO802 - Statement of Account:

| Date | Reference | Description | Charges | Credits |
|------|-----------|-------------|---------|---------|
| 07/31/2016 | | Balance Forward | 422.85 | |
| 08/08/2016 | CC1CED62 | Cash Call - CCL&T 3-7 #1 | 70,685.94 | |
| 08/11/2016 | 7960 | Payment-Thank You! Ck# 8061789 | | (70,685.94) |
| | | New Balance Forward | 422.85 | |

## Prepaid Balance by Project:

| Property# | AFE# | Description | Beginning Balance | Pre-Pmts Applied | Balance Remaining |
|-----------|------|-------------|-------------------|------------------|-------------------|
| 1CED62 | 280 | CCL&T 3-7 #1 | 132,954.84 | 63,120.37 | 69,834.47 |

## Summary by LEASE:

| Property# | Description | Expenses | Pre-Pmts Applied | You Owe |
|-----------|-------------|----------|------------------|---------|
| | Unpaid Previous Balance | | | 422.85 |
| 1CED62 | CCL&T 3-7 #1 | 62,761.83 | 63,120.37 | (358.54) |
| | **Totals:** | 62,761.83 | 63,120.37 | (64.31) |
| | **PLEASE PAY THIS AMOUNT** ---------------------- ^ | | | |

*492000.001.01*

*260-800*

*overhead*



RECEIVED
SEP 12 2016
BY:_____

4

| From: | Sklar Exploration Co., L.L.C. | | | | For Billing Dated 08/31/2016 |
|---|---|---|---|---|---|
| To: | Roosth 806, Ltd, a Texas Ltd Partnership | | | | Account: ROO802    Page    2 |

**LEASE: (1CED62) CCL&T 3-7 #1    County: CONECUH, AL**

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *COPAS Overhead* | | | | | |
| RBO28416 | Adm Overhead - Producing | 1 | 1,028.95 | 1,028.95 | 64.31 |
| | **Total Lease Operating Expense** | | | **1,028.95** | **64.31** |
| **Leasehold Costs** | | | | | |
| *Legal Fees* | | | | | |
| 400951 | Armbrecht Jackson LLP- Curative | 280-1 | 216.00 | | |
| 400952 | Armbrecht Jackson LLP- Prelim Title Opinion | 280-1 | 19,127.20 | 19,343.20 | 1,208.95 |
| | **Total Leasehold Costs** | | | **19,343.20** | **1,208.95** |
| **Intangible Drilling Costs** | | | | | |
| *Survey, DOC Hearings, Permits* | | | | | |
| 1CED62-C | Engineering Service - Survey/Pipeline | 1 | 6,765.60- | 6,765.60- | 422.85- |
| 1CED62-C | Engineering Service - Survey/Pipeline | 280-1 | 6,765.60 | 6,765.60 | 422.85 |
| *Location Preparation/Dirt Work* | | | | | |
| 2790 | C.R. Pate Logging, Inc. | 280-1 | 5,226.73 | 5,226.73 | 326.67 |
| *Daywork with Drill Pipe* | | | | | |
| 1470 | WT Drilling Company, Inc. | 280-1 | 330,248.18 | 330,248.18 | 20,640.51 |
| *Engineering & Supervision Svcs* | | | | | |
| COEV0716 | Capital One Credit Card -07-16- E Vines-Meals and Hotel | 280-1 | 770.19 | | |
| 34637 | Flatrock Engineering & Environmental | 280-1 | 3,836.94 | | |
| 16-08049 | T.W. McGuire & Associates, Inc. | 280-1 | 796.00 | | |
| 3643 | Rig Managers, Inc. | 280-1 | 48,034.50 | | |
| TM0816EV | Field Supervisor Time and Mileage - Vines | 280-1 | 10,258.72 | | |
| TM0816TS | Construction Foreman Time and Mileage - Smith | 280-1 | 4,216.85 | 67,913.20 | 4,244.58 |
| *Rig Instrumentation/Monitoring* | | | | | |
| 182635 | National Oilwell Varco, LP | 280-1 | 12,730.60 | 12,730.60 | 795.66 |
| *Directional Drlg Tools & Svcs* | | | | | |
| 418417 | Scientific Drilling International, Inc. | 280-1 | 5,230.00 | | |
| 418475 | Scientific Drilling International, Inc. | 280-1 | 72,500.00 | 77,730.00 | 4,858.12 |
| *Mud & Chemicals* | | | | | |
| TOTAL-CCL& | Quality Drilling Fluids, Inc. | 280-1 | 56,775.09 | | |
| 001188 | D & M Drilling Fluids, Inc. | 280-1 | 720.00 | 57,495.09 | 3,593.45 |
| *Mud Logging* | | | | | |
| 2154 | Well Data Services, Inc. | 280-1 | 18,269.20 | 18,269.20 | 1,141.82 |
| *Cementing & Equipment* | | | | | |
| 2723 | Boots Smith Completion Services, LLC | 280-1 | 37,061.92 | | |
| 12959126 RI | Weatherford Laboratories, Inc. | 280-1 | 5,400.53 | 42,462.45 | 2,653.91 |
| *Casing Crew & Laydown Machine* | | | | | |
| 24588.2 | Pipe Pros, LLC | 280-1 | 18,450.00 | | |
| 20121900 | GE Oil & Gas | 280-1 | 2,217.60 | 20,667.60 | 1,291.72 |
| *Pipe Testing* | | | | | |
| 46950 | Rebel Testers, Inc. | 280-1 | 1,848.00 | | |
| 2876 | Boots Smith Completion Services, LLC | 280-1 | 2,825.00 | 4,673.00 | 292.06 |
| *Equipment Rentals* | | | | | |
| 55106 | R & R Rentals & Hot Shot, Inc. | 280-1 | 1,050.00 | | |
| PIN-00228386- | National Oilwell Varco-Brandt | 280-1 | 7,579.00 | | |
| 55105 | R & R Rentals & Hot Shot, Inc. | 280-1 | 9,340.00 | | |
| 7695 | Thompson Brothers Drilling Inc | 280-1 | 5,520.32 | | |
| 383 | A1 Conductor & Rathole, LLC | 280-1 | 1,980.00 | | |
| IN11694581 | Smith International, Inc. | 280-1 | 8,092.00 | | |
| 139526016-00 | United Rentals (North America) Inc. | 280-1 | 4,434.97 | | |
| 418655 | Scientific Drilling International, Inc. | 280-1 | 3,610.00 | | |
| 11152 | Boots Smith Completion Services, LLC | 280-1 | 956.00 | 42,562.29 | 2,660.15 |

4

From:   Sklar Exploration Co., L.L.C.
To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 08/31/2016
Account: ROO802   Page  4

**LEASE: (1CED62) CCL&T 3-7 #1   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Pipe Testing** | | | | | |
| 2942 | Boots Smith Completion Services, LLC | 280-2 | 1,750.00 | 1,750.00 | 109.38 |
| **Bits** | | | | | |
| 104967 | Robine & Welch | 280-2 | 8,502.22 | 8,502.22 | 531.39 |
| **Perforation Services** | | | | | |
| 9502706484 | Halliburton Energy Services | 280-2 | 15,385.70 | 15,385.70 | 961.60 |
| **Completion Fluids** | | | | | |
| 001191 | D & M Drilling Fluids, Inc. | 280-2 | 5,037.12 | | |
| 001192 | D & M Drilling Fluids, Inc. | 280-2 | 1,128.90 | | |
| 001193 | D & M Drilling Fluids, Inc. | 280-2 | 1,772.32 | 7,938.34 | 496.15 |
| **COPAS Overhead** | | | | | |
| ROL0816 | Rig on location | 280-2 | 3,319.17 | 3,319.17 | 207.45 |
| | **Total Intangible Completion Costs** | | | 59,879.44 | 3,742.47 |
| **Tangible Drilling Costs** | | | | | |
| **Surface Casing** | | | | | |
| 3713074 | National Oilwell Varco | 280-1 | 5,300.00 | 5,300.00 | 331.25 |
| **Float Equip, Hangers & Related** | | | | | |
| 12994140 RI | Weatherford Laboratories, Inc. | 280-1 | 6,282.88 | 6,282.88 | 392.68 |
| **Wellhead Equipment** | | | | | |
| 20121733 | GE Oil & Gas | 280-1 | 6,557.75 | 6,557.75 | 409.86 |
| | **Total Tangible Drilling Costs** | | | 18,140.63 | 1,133.79 |
| **Tangible Completion Costs** | | | | | |
| **Production Casing & Liners** | | | | | |
| 10380659 | Tool Pushers Supply Co. | 280-2 | 106,691.72 | 106,691.72 | 6,668.23 |
| **Packers** | | | | | |
| 20613 | Pryor Packers Inc. | 280-2 | 4,868.58 | 4,868.58 | 304.29 |
| | **Total Tangible Completion Costs** | | | 111,560.30 | 6,972.52 |

| | **Total Expenses for LEASE** | | | 1,004,189.22 | 62,761.83 |
|---|---|---|---|---|---|
| Billing Summary | BWPO Deck | 1 | 0.06250000 | 5,736.65- | 358.54- |
| by Deck/AFE | BCP | 280-1 | 0.06250000 | 838,486.13 | 52,405.38 |
| | ACP | 280-2 | 0.06250000 | 171,439.74 | 10,714.99 |

| LEASE Summary: | Wrk Int | Expenses | Pre-Pmt Applied | You Owe |
|---|---|---|---|---|
| 1CED62 | 0.06250000 | 62,761.83 | 63,120.37 | 358.54- |

4

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA  71101
(318)227-8668

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX  75711

Account:  ROO802

Date:  09/30/2016

*800669*

**Account: ROO802 - Statement of Account:**

| Date | Reference | Description | Charges | Credits |
|------|-----------|-------------|---------|---------|
| 08/31/2016 | | Balance Forward | 64.31 | |
| 09/13/2016 | PL1CED62 | Cash Call - CCL&T 3-7 #1 Pipeline | 22,474.56 | |
| 09/19/2016 | 8030 | Payment-Thank You! Ck# 41964 - paid by Roosth Production Company check | | (22,474.56) |
| | | New Balance Forward | 64.31 | |

**Prepaid Balance by Project:**

| Property# | AFE# | Description | Beginning Balance | Pre-Pmts Applied | Balance Remaining |
|-----------|------|-------------|-------------------|------------------|-------------------|
| 1CED62 | 280 | CCL&T 3-7 #1 | 69,834.47 | 29,828.56 | 40,005.91 |
| 1CED62 | 280-PL | CCL&T 3-7 #1 | 22,474.56 | 2,580.52 | 19,894.04 |
| | | **Prepaid Balance Totals:** | **92,309.03** | **32,409.08** | **59,899.95** |

**Summary by LEASE:**

| Property# | Description | Expenses | Pre-Pmts Applied | You Owe |
|-----------|-------------|----------|------------------|---------|
| | Unpaid Previous Balance | | | 64.31 |
| 1CED62 | CCL&T 3-7 #1 | 32,604.25 | 32,409.08 | 195.17 |
| | **Totals:** | **32,604.25** | **32,409.08** | **259.48** |

**PLEASE PAY THIS AMOUNT -----------------------^**

*492,000,001.01*

*260 - 800*



RECEIVED
OCT 0 7 2016
BY:_____

4

From:  Sklar Exploration Co., L.L.C.
To:    Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 09/30/2016
Account: ROO802   Page 2

### LEASE: (1CED62)  CCL&T 3-7 #1   County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Company Pumping - Gauging* | | | | | |
| ALPU0916 | Pumper Time and Mileage - Young/Davis/Hester/Hinote/Kinsey/Hoomes/Hart | 1 | 1,257.64 | 1,257.64 | 78.60 |
| *COPAS Overhead* | | | | | |
| RBO28825 | Adm Overhead - Producing | 1 | 1,028.95 | 1,028.95 | 64.31 |
| | **Total Lease Operating Expense** | | | **2,286.59** | **142.91** |
| **Leasehold Costs** | | | | | |
| *Legal Fees* | | | | | |
| 401234 | Armbrecht Jackson LLP- Curative | 1 | 814.59 | 814.59 | 50.91 |
| | **Total Leasehold Costs** | | | **814.59** | **50.91** |
| **Intangible Drilling Costs** | | | | | |
| *Location Clean Up/Pit Closure* | | | | | |
| 29909 | Barnette & Benefield, Inc. | 280-1 | 17,396.23 | | |
| 49250 | Kelley Brothers Contractors, Inc. | 280-1 | 28,198.91 | 45,595.14 | 2,849.70 |
| *Engineering & Supervision Svcs* | | | | | |
| COEV0816 | Capital One Credit Card -07-16- E Vines-Meals | 280-1 | 85.79 | | |
| COEV0916 | Capital One Credit Card -09-16- E Vines-Meals and Hotel | 280-1 | 904.52 | | |
| TM0916NS | Geologist Time - Synder | 280-1 | 324.42 | 1,314.73 | 82.17 |
| *Equipment Rentals* | | | | | |
| 2982 | Boots Smith Completion Services, LLC | 280-1 | 4,480.00 | | |
| 7312 | White Sand Rental Tools | 280-1 | 4,368.00 | | |
| 139507791-00 | United Rentals (North America) Inc. | 280-1 | 4,071.69 | | |
| 139526016-00 | United Rentals (North America) Inc. | 280-1 | 1,462.24 | | |
| 139507791-00 | United Rentals (North America) Inc. | 280-1 | 955.36 | 15,337.29 | 958.58 |
| *Telephone & Communications* | | | | | |
| 802517 | AT&T - Refund of credit on final bill, 251-578-0614 | 280-1 | 19.04- | 19.04- | 1.19- |
| *Logging & Wireline* | | | | | |
| 9093177510 | Schlumberger Technology Corporation | 280-1 | 5,448.18 | 5,448.18 | 340.51 |
| *Coring & Analysis* | | | | | |
| 157 | Canamera Coring (USA) Ltd. | 280-1 | 35,709.00 | 35,709.00 | 2,231.82 |
| *Sales/Use Tax* | | | | | |
| 0816ALA | AL sales/use tax not paid by vendor | 280-1 | 792.73 | 792.73 | 49.54 |
| | **Total Intangible Drilling Costs** | | | **104,178.03** | **6,511.13** |
| **Intangible Completion Costs** | | | | | |
| *Location Preparation/Dirt Work* | | | | | |
| 49249 | Kelley Brothers Contractors, Inc. | 280-2 | 1,778.00 | 1,778.00 | 111.13 |
| *Surface Damage & ROW* | | | | | |
| 186785 | Cedar Creek Land & Timber Inc. | 280-PL-2 | 13,330.30 | 13,330.30 | 833.14 |
| *Engineering & Supervision Svcs* | | | | | |
| CONS0816 | Capital One credit card 8/2016 Nathan Snyder | 280-2 | 3,169.40 | | |
| 40 | Barnett Consulting Inc. | 280-2 | 13,989.00 | | |
| 40 | Barnett Consulting Inc. | 280-2 | 12,444.00 | | |
| COTS0916 | Capital One Credit Card -09-16- T Smith- Meals and Hotel | 280-2 | 179.26 | | |
| COBH0816 | Capital One Credit Card -09-16- B Haynes-Meals and Hotel | 280-2 | 1,482.42 | 31,264.08 | 1,954.00 |
| CONS0916 | Capital One credit card 9/2016 Nathan Snyder | 1 | 21.55 | 21.55 | 1.35 |
| 16-09058 | T.W. McGuire & Associates, Inc. | 280-2 | 1,186.00 | | |
| TM0916BH | Construction Support Time and Mileage - Haynes | 280-2 | 14,861.70 | | |

4

From: Sklar Exploration Co., L.L.C.
To: Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 09/30/2016
Account: ROO802    Page   3

**LEASE: (1CED62) CCL&T 3-7 #1    (Continued)**
**Expenses:    (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| TM0916CC | Operation Engineer Time - Campbell | 280-2 | 684.84 | 16,732.54 | 1,045.79 |
| TM0916EV | Field Supervisor Time and Mileage - Vines | 280-PL-2 | 11,920.00 | 11,920.00 | 745.00 |
| TM0916MM | Geologist Time - McDowell | 280-2 | 71.91 | 71.91 | 4.49 |
| *Instrumentation & Monitoring* | | | | | |
| 1984 | dba South Paw Lift Equipment | 280-2 | 910.00 | 910.00 | 56.87 |
| *Pipe Testing* | | | | | |
| 2945 | Boots Smith Completion Services, LLC | 280-2 | 5,075.00 | 5,075.00 | 317.19 |
| *Equipment Rentals* | | | | | |
| 1184 | Saul Hotshot LLC | 280-2 | 300.00 | | |
| 6069 | Powerlights & Equipment Co., LLC | 280-2 | 2,472.00 | | |
| PN0021310 | Eastern Fishing & Rental Tools | 280-2 | 421.00 | | |
| 20124162 | GE Oil & Gas | 280-2 | 190.00 | | |
| 140056894-00 | United Rentals (North America) Inc. | 280-2 | 2,676.16 | | |
| 6071 | Powerlights & Equipment Co., LLC | 280-2 | 3,120.00 | | |
| 139526016-00 | United Rentals (North America) Inc. | 280-2 | 2,847.73 | | |
| 140056901-00 | United Rentals (North America) Inc. | 280-2 | 2,676.16 | | |
| 139507791-00 | United Rentals (North America) Inc. | 280-2 | 2,866.33 | 17,569.38 | 1,098.09 |
| *Transportation & Trucking* | | | | | |
| 1184 | Saul Hotshot LLC | 280-2 | 300.00 | | |
| 44190 | SRT Oil Field Service, LLC | 280-2 | 1,620.00 | | |
| 44194 | SRT Oil Field Service, LLC | 280-2 | 1,800.00 | | |
| 1977 | dba South Paw Lift Equipment | 280-2 | 2,080.00 | 5,800.00 | 362.50 |
| *Safety & H2S Training* | | | | | |
| 5667247-0001 | Total Safety U.S., Inc. | 280-2 | 13,778.00 | | |
| 5667247-0002 | Total Safety U.S., Inc. | 280-2 | 9,511.80 | | |
| 5667247-003 | Total Safety U.S., Inc. | 280-2 | 22,012.55 | | |
| 5667247-0005 | Total Safety U.S., Inc. | 280-2 | 22,012.55 | 67,314.90 | 4,207.18 |
| *Logging & Wireline* | | | | | |
| 3237 | Boots Smith Completion Services, LLC | 280-2 | 8,338.88 | 8,338.88 | 521.18 |
| *Production Testing* | | | | | |
| 41 | Slickline South, LLC | 280-2 | 7,370.71 | 7,370.71 | 460.67 |
| *Workover Rig* | | | | | |
| 4810 | Moncla Workover & Drilling | 280-2 | 20,905.00 | 20,905.00 | 1,306.56 |
| *Completion Fluids* | | | | | |
| 001194 | D & M Drilling Fluids, Inc. | 280-2 | 1,383.30 | | |
| 001195 | D & M Drilling Fluids, Inc. | 280-2 | 828.00 | 2,211.30 | 138.21 |
| *Stimulation Services* | | | | | |
| 39897 | C&J Spec-Rent Services, Inc. | 280-2 | 14,104.35 | 14,104.35 | 881.52 |
| *Installation of Well Equipment* | | | | | |
| 20123398 | GE Oil & Gas | 280-2 | 2,715.00 | | |
| 25878 | Parker & Son, Inc. | 280-2 | 7,760.80 | 10,475.80 | 654.74 |
| *Salt Water Disposal* | | | | | |
| 9495 | S&S Construction, LLC | 280-2 | 552.00 | | |
| 2016-08-008 | Wastewater Disposal Services, Inc. | 280-2 | 84.00 | | |
| 9517 | S&S Construction, LLC | 280-2 | 276.00 | | |
| 9524 | S&S Construction, LLC | 280-2 | 460.00 | | |
| 2016-09-004 | Wastewater Disposal Services, Inc. | 280-2 | 84.00 | 1,456.00 | 91.00 |
| *Swabbing Unit* | | | | | |
| 17619 | Pitts Swabbing Service, Inc. | 280-2 | 16,430.00 | 16,430.00 | 1,026.87 |
| *Vacuum Truck* | | | | | |
| 001189 | D & M Drilling Fluids, Inc. | 280-2 | 630.00 | | |
| 9515 | S&S Construction, LLC | 280-2 | 368.00 | | |
| 9522 | S&S Construction, LLC | 280-2 | 552.00 | | |
| 9524 | S&S Construction, LLC | 280-2 | 460.00 | | |
| 9525 | S&S Construction, LLC | 280-2 | 828.00 | | |
| 9526 | S&S Construction, LLC | 280-2 | 920.00 | | |
| 9527 | S&S Construction, LLC | 280-2 | 920.00 | | |

4

From: Sklar Exploration Co., L.L.C.

To: Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 09/30/2016

Account: ROO802   Page   4

**LEASE: (1CED62) CCL&T 3-7 #1   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| 9535 | S&S Construction, LLC | 280-2 | 736.00 | | |
| 9538 | S&S Construction, LLC | 280-2 | 552.00 | | |
| 9543 | S&S Construction, LLC | 280-2 | 920.00 | | |
| 9544 | S&S Construction, LLC | 280-2 | 920.00 | | |
| 3111 | Boots Smith Completion Services, LLC | 280-2 | 2,825.00 | | |
| 9557 | S&S Construction, LLC | 280-2 | 920.00 | | |
| 9560 | S&S Construction, LLC | 280-2 | 1,196.00 | | |
| 9561 | S&S Construction, LLC | 280-2 | 184.00 | | |
| 9562 | S&S Construction, LLC | 280-2 | 1,196.00 | | |
| 9563 | S&S Construction, LLC | 280-2 | 920.00 | | |
| 9564 | S&S Construction, LLC | 280-2 | 525.00 | | |
| 9565 | S&S Construction, LLC | 280-2 | 460.00 | | |
| 9566 | S&S Construction, LLC | 280-2 | 828.00 | | |
| 9582 | S&S Construction, LLC | 280-2 | 920.00 | | |
| 9583 | S&S Construction, LLC | 280-2 | 920.00 | | |
| 9585 | S&S Construction, LLC | 280-2 | 1,104.00 | | |
| 9588 | S&S Construction, LLC | 280-2 | 828.00 | 20,632.00 | 1,289.50 |
| | **Total Intangible Completion Costs** | | | **273,711.70** | **17,106.98** |
| **Tangible Completion Costs** | | | | | |
| *Tubing* | | | | | |
| 20145 | Pryor Packers Inc. | 280-2 | 4,126.58 | | |
| 20146 | Pryor Packers Inc. | 280-2 | 2,205.86 | 6,332.44 | 395.78 |
| *Packers* | | | | | |
| 20146 | Pryor Packers Inc. | 280-2 | 881.92 | 881.92 | 55.12 |
| *Wellhead Equipment* | | | | | |
| 20123786 | GE Oil & Gas | 280-2 | 16,745.28 | 16,745.28 | 1,046.58 |
| *Sub-Surface Artificial Lift Eq* | | | | | |
| 20145 | Pryor Packers Inc. | 280-2 | 8,686.70 | 8,686.70 | 542.92 |
| *Tank Battery Costs* | | | | | |
| 624 | Quitman Tank Solutions LLC | 280-2 | 2,121.60 | 2,121.60 | 132.60 |
| *Flowlines, Fittings, Connects* | | | | | |
| 120098 | Union Oilfield Supply, Inc. | 280-2 | 212.72 | | |
| 120421 | Union Oilfield Supply, Inc. | 280-2 | 83,743.61 | | |
| 0939-495190 | Consolidated Electrical Distributors Inc | 280-2 | 1,141.93 | 85,098.26 | 5,318.64 |
| 120630 | Union Oilfield Supply, Inc. | 280-PL-2 | 165.02 | 165.02 | 10.31 |
| 120634 | Union Oilfield Supply, Inc. | 280-2 | 1,245.79 | | |
| 120637 | Union Oilfield Supply, Inc. | 280-2 | 2,931.79 | 4,177.58 | 261.10 |
| 0939-495213 | Consolidated Electrical Distributors Inc | 280-PL-2 | 2,009.31 | 2,009.31 | 125.58 |
| 0939-495235 | Consolidated Electrical Distributors Inc | 280-2 | 595.10 | 595.10 | 37.20 |
| 10384655 | Tool Pushers Supply Co. | 280-PL-2 | 13,067.45 | 13,067.45 | 816.71 |
| *Pipeline/Gas Gathering Systems* | | | | | |
| 34973 | Flatrock Engineering & Environmental | 280-PL-2 | 285.00 | | |
| 10316 | Precision Signs | 280-PL-2 | 511.46 | 796.46 | 49.78 |
| | **Total Tangible Completion Costs** | | | **140,677.12** | **8,792.32** |
| | **Total Expenses for LEASE** | | | **521,668.03** | **32,604.25** |

| Billing Summary | | | | | |
|---|---|---|---|---|---|
| Billing Summary by Deck/AFE | BWPO Deck | 1 | 0.06250000 | 3,122.73 | 195.17 |
| | BCP | 280-1 | 0.06250000 | 104,178.03 | 6,511.13 |
| | ACP | 280-2 | 0.06250000 | 373,078.73 | 23,317.43 |
| | Pipeline | 280-PL-2 | 0.06250000 | 41,288.54 | 2,580.52 |

| LEASE Summary: | Wrk Int | | Expenses | Pre-Pmt Applied | You Owe |
|---|---|---|---|---|---|
| 1CED62 | 0.06250000 | | 32,604.25 | 32,409.08 | 195.17 |

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA 71101
(318)227-8668

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX 75711

Account: ROO802

Date: 11/30/2016

*800669*

**Account: ROO802 - Statement of Account:**

| Date | Reference | Description | Charges | Credits |
|------|-----------|-------------|---------|---------|
| 10/31/2016 | | Balance Forward | 2,156.44 | |
| 11/21/2016 | 8143 | Partial Payment Ck# 42139 | | (2,156.44) |
| | | New Balance Forward | 0.00 | |

**Prepaid Balance by Project:**

| Property# | AFE# | Description | Beginning Balance | Pre-Pmts Applied | Balance Remaining |
|-----------|------|-------------|-------------------|------------------|-------------------|
| 1CED62 | 280 | CCL&T 3-7 #1 | 22,180.22 | 9,713.64 | 12,466.58 |
| 1CED62 | 280-PL | CCL&T 3-7 #1 | 4,856.99 | 469.55 | 4,387.44 |
| | | **Prepaid Balance Totals:** | **27,037.21** | **10,183.19** | **16,854.02** |

**Summary by LEASE:**

| Property# | Description | Expenses | Pre-Pmts Applied | You Owe |
|-----------|-------------|----------|------------------|---------|
| 1CED62 | CCL&T 3-7 #1 | 13,973.96 | 10,183.19 | 3,790.77 |
| | **Totals:** | **13,973.96** | **10,183.19** | **3,790.77** |

**PLEASE PAY THIS AMOUNT** -------------------

*492000. 001. 01*

*260 - 800    6980,48*
*250 - 800    6993.48*
*230 - 800    <10,183.19>*

From: Sklar Exploration Co., L.L.C.
To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 11/30/2016
Account: ROO802   Page  2

**Expenses:**

### LEASE: (1CED62)  CCL&T 3-7 #1   County: CONECUH, AL

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Engineering & Supervision* | | | | | |
| COJD1116 | Capital One Credit Card -11-16- J Davis- Supplies, Utility Knife, Tape | 1 | 63.21 | | |
| TM1116CC | Engineer Time - Campbell | 1 | 228.28 | 291.49 | 18.22 |
| *Instrumentation & Monitoring* | | | | | |
| 1124047 | SPL, Inc. | 1 | 151.66 | 151.66 | 9.48 |
| *Company Pumping - Gauging* | | | | | |
| ALPU1116 | Pumper Time and Mileage - Young/Davis/Hester/Hinote/Kinsey/Hoomes/Hart | 1 | 1,397.89 | 1,397.89 | 87.37 |
| *Equipment Rentals* | | | | | |
| 6078 | Powerlights & Equipment Co., LLC | 1 | 2,496.00 | | |
| 64728737-001 | Sunbelt Rentals Industrial Services, LLC | 1 | 20,007.64 | | |
| 6081 | Powerlights & Equipment Co., LLC | 1 | 3,884.00 | 26,387.64 | 1,649.22 |
| *Fuel* | | | | | |
| 5066458 | Kelley Oil Company | 1 | 547.97 | 547.97 | 34.25 |
| *Production Testing* | | | | | |
| 1123345-A | SPL, Inc. | 1 | 46.79 | 46.79 | 2.93 |
| *Repairs & Maint-Surface Equip* | | | | | |
| 20265 | Carnley Electric Inc | 1 | 300.00 | 300.00 | 18.75 |
| *Supplies* | | | | | |
| 121311 | Union Oilfield Supply, Inc. | 1 | 656.98 | 656.98 | 41.06 |
| *Swabbing Unit* | | | | | |
| 17657 | Pitts Swabbing Service, Inc. | 1 | 16,890.00 | | |
| 17662 | Pitts Swabbing Service, Inc. | 1 | 12,350.00 | | |
| 17663 | Pitts Swabbing Service, Inc. | 1 | 590.00 | 29,830.00 | 1,864.37 |
| *COPAS Overhead* | | | | | |
| RBO29391 | Adm Overhead - Producing | 1 | 1,028.95 | 1,028.95 | 64.31 |
| *Miscellaneous* | | | | | |
| COCC1116 | Capital One credit card 11/2016 Clayton Campbell- Postage, Air Permit | 1 | 12.94 | 12.94 | 0.81 |
| **Total Lease Operating Expense** | | | | **60,652.31** | **3,790.77** |
| **Intangible Drilling Costs** | | | | | |
| *Insurance* | | | | | |
| 15-16OEE | 2015-2016 OEE Allocation | 280-3 | 8,164.06 | 8,164.06 | 544.38 |
| **Total Intangible Drilling Costs** | | | | **8,164.06** | **544.38** |
| **Intangible Completion Costs** | | | | | |
| *Engineering & Supervision Svcs* | | | | | |
| COBH1016 | Capital One Credit Card -10-16- B Haynes- Meals & Accomodations, Cabin Stay | 280-2 | 2,349.79 | | |
| COEV1016 | Capital One Credit Card -10-16- E Vines-Meals and Hotel | 280-2 | 1,117.65 | | |
| COMS1016 | Capital One credit card 10/2016 Monty Shed | 280-2 | 167.94 | 3,635.38 | 227.21 |
| *Equipment Rentals* | | | | | |
| 141686998-00 | United Rentals (North America) Inc. | 280-2 | 2,972.84 | 2,972.84 | 185.80 |
| *Logging & Wireline* | | | | | |
| 57 | Slickline South, LLC | 280-2 | 2,414.40 | 2,414.40 | 150.90 |
| *Installation of Well Equipment* | | | | | |
| 20144 | Pryor Packers Inc. | 280-2 | 3,434.40 | | |
| 20241 | Carnley Electric Inc | 280-2 | 2,033.49 | | |
| 20258 | Carnley Electric Inc | 280-2 | 4,032.00 | | |
| 23956 | 4-G Contractors, Inc. | 280-2 | 1,256.00 | 10,755.89 | 672.25 |

From:  Sklar Exploration Co., L.L.C.                                    For Billing Dated 11/30/2016
To:    Roosth 806, Ltd, a Texas Ltd Partnership                        Account: ROO802   Page   3

**LEASE: (1CED62) CCL&T 3-7 #1    (Continued)**
**Expenses:    (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Sales/Use Tax** | | | | | |
| 1016ALA | AL sales/use tax not paid by vendor | 280-2 | 61.71 | | |
| 1016ALA | AL sales/use tax not paid by vendor | 280-2 | 33.60 | 95.31 | 5.95 |
| | **Total Intangible Completion Costs** | | | **19,873.82** | **1,242.11** |
| **Tangible Completion Costs** | | | | | |
| *Surface Artificial Lift Equip* | | | | | |
| 2774 | Davis Hot Shot Service, LLC | 280-2 | 680.00 | | |
| 9676 | S&S Construction, LLC | 280-2 | 513.00 | | |
| 98-17075 | Jimco Pumps | 280-2 | 1,293.20 | | |
| 98-17076 | Jimco Pumps | 280-2 | 19,309.49 | | |
| 98-17077 | Jimco Pumps | 280-2 | 90,100.00 | 111,895.69 | 6,993.48 |
| *Surface Production Equipment* | | | | | |
| 121214 | Union Oilfield Supply, Inc. | 280-2 | 366.11 | | |
| 121253 | Union Oilfield Supply, Inc. | 280-2 | 88.99 | | |
| WMR16-3340 | Whirlwind Methane Recovery Systems, LLC | 280-2 | 585.00 | 1,040.10 | 65.01 |
| *Flowlines, Fittings, Connects* | | | | | |
| 120693 | Union Oilfield Supply, Inc. | 280-2 | 10,079.82 | | |
| CM-69 | Union Oilfield Supply, Inc. | 280-2 | 18,191.71- | | |
| 121199 | Union Oilfield Supply, Inc. | 280-2 | 9,442.71 | 1,330.82 | 83.18 |
| *Pipeline/Gas Gathering Systems* | | | | | |
| 25833 | Parker & Son, Inc. | 280-PL-2 | 3,624.00 | | |
| 25929 | Parker & Son, Inc. | 280-PL-2 | 2,978.80 | 6,602.80 | 412.67 |
| *Sales Metering Equipment* | | | | | |
| 1122637-A | SPL, Inc. | 280-PL-2 | 910.00 | 910.00 | 56.88 |
| *Electrical & Control Systems* | | | | | |
| 0939-495731 | Consolidated Electrical Distributors Inc | 280-2 | 683.20 | | |
| 0939-495739 | Consolidated Electrical Distributors Inc | 280-2 | 2,529.85 | | |
| 0939-495746 | Consolidated Electrical Distributors Inc | 280-2 | 2,505.10 | | |
| 0939-495783 | Consolidated Electrical Distributors Inc | 280-2 | 21.32 | | |
| CI-000000496 | SPOC Automation, Inc. | 280-2 | 6,749.14 | 12,488.61 | 780.53 |
| *Sales/Use Tax* | | | | | |
| 1016ALA | AL sales/use tax not paid by vendor | 280-2 | 79.05 | 79.05 | 4.95 |
| | **Total Tangible Completion Costs** | | | **134,347.07** | **8,396.70** |
| | **Total Expenses for LEASE** | | | **223,037.26** | **13,973.96** |

| Billing Summary by Deck/AFE | | | | | |
|---|---|---|---|---|---|
| | BWPO Deck | 1 | 0.06250000 | 60,652.31 | 3,790.77 |
| | ACP | 280-2 | 0.06250000 | 146,708.09 | 9,169.26 |
| | Insurance | 280-3 | 0.06668056 | 8,164.06 | 544.38 |
| | Pipeline | 280-PL-2 | 0.06250000 | 7,512.80 | 469.55 |

| LEASE Summary | Wrk Int | | Expenses | Pre-Pmt Applied | You Owe |
|---|---|---|---|---|---|
| 1CED62 | multiple | | 13,973.96 | 10,183.19 | 3,790.77 |

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA 71101
(318)227-8668

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX 75711

Account: ROO802

Date: 12/31/2016

*800669*

**Prepaid Balance by Project:**

| Property# | AFE# | Description | Beginning Balance | Pre-Pmts Applied | Balance Remaining |
|---|---|---|---|---|---|
| 1CED62 | 280 | CCL&T 3-7 #1 | 12,466.58 | 2,787.92 | 9,678.66 |
| 1CED62 | 280-PL | CCL&T 3-7 #1 | 4,387.44 | | 4,387.44 |
| | | **Prepaid Balance Totals:** | **16,854.02** | **2,787.92** | **14,066.10** |

**Summary by LEASE:**

| Property# | Description | | Expenses | Pre-Pmts Applied | You Owe |
|---|---|---|---|---|---|
| | Unpaid Previous Balance | | | | 3,790.77 |
| 1CED62 | CCL&T 3-7 #1 | | 5,021.24 | 2,787.92 | 2,233.32 |
| | | **Totals:** | **5,021.24** | **2,787.92** | 6,024.09 |
| | | **PLEASE PAY THIS AMOUNT --------------------^** | | | |

*492,000,001.01*

*260-800          1850.34*
*220-800          490.91*
*240-800          2679.99*
*230-800       < 2787.92 >*

From: Sklar Exploration Co., L.L.C.
To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 12/31/2016
Account: ROO802    Page    2

**LEASE: (1CED62)  CCL&T 3-7 #1    County: CONECUH, AL**

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Location Preparation/Dirt Work* | | | | | |
| 24179 | 4-G Contractors, Inc. | 1 | 1,023.68 | | |
| 24257 | 4-G Contractors, Inc.-Repair trench | 1 | 549.12 | 1,572.80 | 98.30 |
| *Engineering & Supervision* | | | | | |
| TM1216CC | Operations Engineer Time - Campbell | 1 | 913.12 | 913.12 | 57.07 |
| *Instrumentation & Monitoring* | | | | | |
| 1126046-A | SPL, Inc. | 1 | 25.28 | | |
| 1126428-A | SPL, Inc. | 1 | 182.00 | 207.28 | 12.96 |
| *Chemicals* | | | | | |
| 907651989 | Baker Hughes Business Support Services | 1 | 1,229.80 | 1,229.80 | 76.86 |
| *Company Pumping - Gauging* | | | | | |
| ALPU1216 | Pumper Time and Mileage - Young/Davis/Hester/Hinote/Kinsey/Hoomes/Hart | 1 | 1,417.23 | 1,417.23 | 88.57 |
| *Equipment Rentals* | | | | | |
| 49587 | Kelley Brothers Contractors, Inc. | 1 | 4,267.66 | | |
| 64728737-003 | Sunbelt Rentals Industrial Services, LLC | 1 | 15,934.91 | 20,202.57 | 1,262.67 |
| *Safety & H2S Training* | | | | | |
| 121575 | Union Oilfield Supply, Inc. | 1 | 40.76 | 40.76 | 2.54 |
| *Production Testing* | | | | | |
| 1125880-A | SPL, Inc. | 1 | 98.20 | | |
| 1126425-A | SPL, Inc. | 1 | 50.56 | 148.76 | 9.30 |
| *Repairs & Maint-Surface Equip* | | | | | |
| 121238 | Union Oilfield Supply, Inc. | 1 | 38.03 | | |
| 20307 | Carnley Electric Inc | 1 | 300.00 | 338.03 | 21.13 |
| *Repairs & Maint/Sub-Surface Eq* | | | | | |
| 98-17322 | Jimco Pumps | 1 | 1,407.68 | 1,407.68 | 87.98 |
| *Salt Water Disposal* | | | | | |
| 9804 | S&S Construction, LLC | 1 | 276.00 | | |
| 2016-12-003 | Wastewater Disposal Services, Inc. | 1 | 70.00 | 346.00 | 21.62 |
| *Vacuum Truck* | | | | | |
| 9804 | S&S Construction, LLC | 1 | 276.00 | | |
| 9807 | S&S Construction, LLC | 1 | 276.00 | 552.00 | 34.50 |
| *Sales/Use Tax* | | | | | |
| 1116ALA | AL sales/use tax not paid by vendor | 1 | 77.01 | 77.01 | 4.82 |
| *COPAS Overhead* | | | | | |
| RBO29709 | Adm Overhead - Producing | 1 | 1,028.95 | 1,028.95 | 64.30 |
| **Total Lease Operating Expense** | | | | **29,481.99** | **1,842.62** |
| **Leasehold Costs** | | | | | |
| *Legal Fees* | | | | | |
| 401831 | Armbrecht Jackson LLP- DOTO | 1 | 7,854.50 | 7,854.50 | 490.91 |
| **Total Leasehold Costs** | | | | **7,854.50** | **490.91** |
| **Intangible Completion Costs** | | | | | |
| *Location Preparation/Dirt Work* | | | | | |
| 120803 | Evergreen Concrete Company, Inc | 280-2 | 461.10 | | |
| 120875 | Evergreen Concrete Company, Inc | 280-2 | 996.40 | 1,457.50 | 91.09 |
| *Engineering & Supervision Svcs* | | | | | |
| 2016100020 | Brammer Engineering, Inc. | 280-2 | 6,485.38 | 6,485.38 | 405.34 |
| *Equipment Rentals* | | | | | |
| 141893506-00 | United Rentals (North America) Inc. | 280-2 | 904.00 | 904.00 | 56.50 |
| 1CED6211 | Eastern Fishing & Rental Tools | 1 | 1,733.80- | 1,733.80- | 108.36- |
| 1CED6211 | Eastern Fishing & Rental Tools | 280-2 | 1,733.80 | 1,733.80 | 108.36 |

From:  Sklar Exploration Co., L.L.C.
To:    Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 12/31/2016
Account: ROO802    Page   3

**LEASE: (1CED62)  CCL&T 3-7 #1   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| ***Transportation & Trucking*** | | | | | |
| 49588 | Kelley Brothers Contractors, Inc. | 280-2 | 588.00 | 588.00 | 36.75 |
| ***Installation of Well Equipment*** | | | | | |
| 23888 | 4-G Contractors, Inc. | 280-2 | 33,438.00 | 33,438.00 | 2,089.88 |
| ***Sales/Use Tax*** | | | | | |
| 1116ALA | AL sales/use tax not paid by vendor | 1 | 0.23 | | |
| 1116ALA | AL sales/use tax not paid by vendor | 1 | 6.73 | 6.96 | 0.43 |
| | **Total Intangible Completion Costs** | | | **42,879.84** | **2,679.99** |
| **Tangible Completion Costs** | | | | | |
| ***Flowlines, Fittings, Connects*** | | | | | |
| 121395 | Union Oilfield Supply, Inc. | 1 | 118.72 | 118.72 | 7.42 |
| ***Sales/Use Tax*** | | | | | |
| 1116ALA | AL sales/use tax not paid by vendor | 1 | 4.85 | 4.85 | 0.30 |
| | **Total Tangible Completion Costs** | | | **123.57** | **7.72** |

| | | | | |
|---|---|---|---|---|
| **Total Expenses for LEASE** | | | **80,339.90** | **5,021.24** |

| Billing Summary | BWPO Deck | 1 | 0.06250000 | 35,733.22 | 2,233.32 |
|---|---|---|---|---|---|
| by Deck/AFE | ACP | 280-2 | 0.06250000 | 44,606.68 | 2,787.92 |

| LEASE Summary: | | Wrk Int | | Expenses | Pre-Pmt Applied | You Owe |
|---|---|---|---|---|---|---|
| 1CED62 | | 0.06250000 | | 5,021.24 | 2,787.92 | 2,233.32 |

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA  71101
(318)227-8668

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX  75711

Account:  ROO802

Date:  10/31/2016

*800669*

### Account: ROO802 - Statement of Account:

| Date | Reference | Description | Charges | Credits |
|---|---|---|---|---|
| 09/30/2016 | | Balance Forward | 259.48 | |
| 10/13/2016 | 8074 | Partial Payment Ck# 42038 | | (195.17) |
| 10/13/2016 | 8074 | Partial Payment Ck# 42038 | | (422.85) |
| 10/13/2016 | 8074 | Partial Payment Ck# 42038 | 358.54 | |
| | | New Balance Forward | 0.00 | |

### Prepaid Balance by Project:

| Property# | AFE# | Description | Beginning Balance | Pre-Pmts Applied | Balance Remaining |
|---|---|---|---|---|---|
| 1CED62 | 280 | CCL&T 3-7 #1 | 40,005.91 | 17,825.69 | 22,180.22 |
| 1CED62 | 280-PL | CCL&T 3-7 #1 | 19,894.04 | 15,037.05 | 4,856.99 |
| | | **Prepaid Balance Totals:** | **59,899.95** | **32,862.74** | **27,037.21** |

### Summary by LEASE:

| Property# | Description | Expenses | Pre-Pmts Applied | You Owe |
|---|---|---|---|---|
| 1CED62 | CCL&T 3-7 #1 | 35,019.18 | 32,862.74 | 2,156.44 |
| | **Totals:** | **35,019.18** | **32,862.74** | **2,156.44** |

**PLEASE PAY THIS AMOUNT --------------------- ^**

*492000.001.01*
*260-800      1638.34*
*LHC 220-800      518.10*

From:  Sklar Exploration Co., L.L.C.
To:    Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 10/31/2016
Account: ROO802   Page  2

**LEASE: (1CED62)  CCL&T 3-7 #1    County: CONECUH, AL**

Expenses:

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Engineering & Supervision* | | | | | |
| TM1016CC | Operation Engineer Time - Campbell | 1 | 684.84 | 684.84 | 42.80 |
| *Chemicals* | | | | | |
| 907452063 | Baker Hughes Business Support Services | 1 | 2,459.60 | 2,459.60 | 153.73 |
| *Company Pumping - Gauging* | | | | | |
| ALPU1016 | Pumper Time and Mileage - Young/Davis/Hester/Hinote/Kinsey/Hoomes/Hart | 1 | 1,264.63 | 1,264.63 | 79.04 |
| *Equipment Rentals* | | | | | |
| 61 | Casey Septic Tank Co., Inc. | 1 | 260.00 | | |
| 6076 | Powerlights & Equipment Co., LLC | 1 | 2,340.00 | 2,600.00 | 162.50 |
| *Fuel* | | | | | |
| 5077837 | Kelley Oil Company | 1 | 238.25 | | |
| 5066383 | Kelley Oil Company | 1 | 714.74 | 952.99 | 59.56 |
| *Production Testing* | | | | | |
| 1123345 | SPL, Inc. | 1 | 86.73 | 86.73 | 5.42 |
| *Repairs & Maint-Surface Equip* | | | | | |
| WMR16-3323 | Whirlwind Methane Recovery Systems, LLC | 1 | 360.00 | | |
| WMR16-3332 | Whirlwind Methane Recovery Systems, LLC | 1 | 5,070.00 | 5,430.00 | 339.37 |
| *Salt Water Disposal* | | | | | |
| 2016-09-010 | Wastewater Disposal Services, Inc. | 1 | 84.00 | | |
| 9612 | S&S Construction, LLC | 1 | 368.00 | | |
| 2016-10-004 | Wastewater Disposal Services, Inc. | 1 | 84.00 | 536.00 | 33.50 |
| *Swabbing Unit* | | | | | |
| 17643 | Pitts Swabbing Service, Inc. | 1 | 2,850.00 | | |
| 17648 | Pitts Swabbing Service, Inc. | 1 | 2,850.00 | | |
| 17651 | Pitts Swabbing Service, Inc. | 1 | 2,850.00 | 8,550.00 | 534.38 |
| *Vacuum Truck* | | | | | |
| 9599 | S&S Construction, LLC | 1 | 368.00 | | |
| 9612 | S&S Construction, LLC | 1 | 368.00 | 736.00 | 46.00 |
| *Other Revenue Deductions* | | | | | |
| 0916PLAN | 09-16 Plains rejected load | 1 | 150.00 | 150.00 | 9.37 |
| *COPAS Overhead* | | | | | |
| RBO28938 | Adm Overhead - Producing | 1 | 1,028.95 | 1,028.95 | 64.31 |
| | **Total Lease Operating Expense** | | | **24,479.74** | **1,529.98** |
| **Leasehold Costs** | | | | | |
| *Legal Fees* | | | | | |
| 401452 | Armbrecht Jackson LLP | 1 | 538.00 | | |
| 401582 | Armbrecht Jackson LLP- DOTO | 1 | 7,751.50 | 8,289.50 | 518.10 |
| | **Total Leasehold Costs** | | | **8,289.50** | **518.10** |
| **Intangible Drilling Costs** | | | | | |
| *Directional Drlg Tools & Svcs* | | | | | |
| 418965 | Scientific Drilling International, Inc. | 280-1 | 1,509.34 | 1,509.34 | 94.33 |
| *Mud & Chemicals* | | | | | |
| A30681 | Quality Drilling Fluids, Inc. Voids Invoice dated 07/08/2016 by BG 10/17/2016  8:38:54 am | 280-1 | 9,957.04- | 9,957.04- | 622.31- |
| *Coring & Analysis* | | | | | |
| 13117761 RI | Weatherford Laboratories, Inc. | 280-1 | 17,143.24 | 17,143.24 | 1,071.45 |
| *Sales/Use Tax* | | | | | |
| 0916ALA | AL sales/use tax not paid by vendor | 280-1 | 190.08 | 190.08 | 11.88 |
| | **Total Intangible Drilling Costs** | | | **8,885.62** | **555.35** |

From:  Sklar Exploration Co., L.L.C.
To:    Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 10/31/2016
Account: ROO802   Page   3

**LEASE: (1CED62) CCL&T 3-7 #1   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Intangible Completion Costs** | | | | | |
| *Location Preparation/Dirt Work* | | | | | |
| 2895 | C.R. Pate Logging, Inc. | 280-2 | 2,500.00 | 2,500.00 | 156.25 |
| 2897 | C.R. Pate Logging, Inc. | 280-PL-2 | 458.64 | 458.64 | 28.66 |
| *Engineering & Supervision Svcs* | | | | | |
| TM1016BH | Construction Support Time and Mileage - Haynes | 280-2 | 4,222.98 | | |
| TM1016MS | Engineer Time - Shed | 280-2 | 859.24 | | |
| TM1016NS | Operation Geologist Time - Synder 08-16 | 280-2 | 1,135.47 | 6,217.69 | 388.61 |
| *Equipment Rentals* | | | | | |
| 6073 | Powerlights & Equipment Co., LLC | 280-2 | 2,156.00 | | |
| 6074 | Powerlights & Equipment Co., LLC | 280-2 | 1,404.00 | | |
| 139507791-00 | United Rentals (North America) Inc. | 280-2 | 83.20 | | |
| 139526016-00 | United Rentals (North America) Inc. | 280-2 | 232.69 | | |
| 140461327-00 | United Rentals (North America) Inc. | 280-2 | 2,265.07 | | |
| RN0021351 | Eastern Fishing & Rental Tools | 280-2 | 1,997.05 | 8,138.01 | 508.63 |
| RN0021352 | Eastern Fishing & Rental Tools | 1 | 1,733.80 | 1,733.80 | 108.36 |
| 2316 | A. Marie Johnson | 280-2 | 1,070.00 | 1,070.00 | 66.87 |
| *Fuel* | | | | | |
| 140056901-00 | United Rentals (North America) Inc. | 280-2 | 122.11 | 122.11 | 7.63 |
| *Transportation & Trucking* | | | | | |
| 7338 | GRS Services, LLC | 280-2 | 1,500.00 | | |
| 49361 | Kelley Brothers Contractors, Inc. | 280-2 | 6,208.84 | | |
| 2894 | C.R. Pate Logging, Inc. | 280-2 | 250.00 | | |
| 49445 | Kelley Brothers Contractors, Inc. | 280-2 | 1,062.50 | 9,021.34 | 563.84 |
| *Production Testing* | | | | | |
| 3365 | Boots Smith Completion Services, LLC | 280-2 | 21,700.00 | 21,700.00 | 1,356.25 |
| *Completion Fluids* | | | | | |
| 49363 | Kelley Brothers Contractors, Inc. | 280-2 | 1,282.50 | 1,282.50 | 80.15 |
| *Installation of Well Equipment* | | | | | |
| 20149 | Carnley Electric Inc | 280-2 | 13,154.06 | | |
| 20166 | Carnley Electric Inc | 280-2 | 1,344.00 | | |
| 23537 | 4-G Contractors, Inc. | 280-2 | 8,815.00 | | |
| 23560 | 4-G Contractors, Inc. | 280-2 | 59,984.91 | | |
| 23588 | 4-G Contractors, Inc. | 280-2 | 56,472.91 | | |
| 23634 | 4-G Contractors, Inc. | 280-2 | 12,846.00 | | |
| 20163 | Carnley Electric Inc | 280-2 | 7,741.00 | | |
| 20189 | Carnley Electric Inc | 280-2 | 2,026.00 | 162,383.88 | 10,149.00 |
| *Pipeline Expenses* | | | | | |
| 1399711 | Turner Specialty Services, LLC | 280-PL-2 | 4,111.50 | 4,111.50 | 256.97 |
| *Salt Water Disposal* | | | | | |
| 9568 | S&S Construction, LLC | 280-2 | 552.00 | 552.00 | 34.50 |
| *Vacuum Truck* | | | | | |
| 9568 | S&S Construction, LLC | 280-2 | 552.00 | 552.00 | 34.50 |
| | **Total Intangible Completion Costs** | | | **219,843.47** | **13,740.22** |
| **Tangible Completion Costs** | | | | | |
| *Surface Production Equipment* | | | | | |
| 120722 | Union Oilfield Supply, Inc. | 280-2 | 913.02 | | |
| 120822 | Evergreen Concrete Company, Inc | 280-2 | 1,966.30 | | |
| 0939-495293 | Consolidated Electrical Distributors Inc | 280-2 | 71.68 | 2,951.00 | 184.43 |
| *Flowlines, Fittings, Connects* | | | | | |
| 1288 | EOS, LLC | 280-2 | 15,681.83 | | |
| 120653 | Union Oilfield Supply, Inc. | 280-2 | 386.78 | | |
| 120683 | Union Oilfield Supply, Inc. | 280-2 | 683.59 | | |
| 120738 | Union Oilfield Supply, Inc. | 280-2 | 28.20 | | |
| 120757 | Union Oilfield Supply, Inc. | 280-2 | 1,654.66 | | |
| 0939-495238 | Consolidated Electrical Distributors Inc | 280-2 | 1,935.97 | | |

From:  Sklar Exploration Co., L.L.C.
To:    Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 10/31/2016
Account: ROO802    Page   4

**LEASE: (1CED62)  CCL&T 3-7 #1    (Continued)**
**Expenses:    (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| 0939-495264 | Consolidated Electrical Distributors Inc | 280-2 | 1,107.93 | | |
| 0939-495268 | Consolidated Electrical Distributors Inc | 280-2 | 642.94 | | |
| 0939-495300 | Consolidated Electrical Distributors Inc | 280-2 | 1,650.03 | | |
| 0939-495301 | Consolidated Electrical Distributors Inc | 280-2 | 2,022.50 | | |
| 0939-495394 | Consolidated Electrical Distributors Inc | 280-2 | 667.12 | | |
| 0939-495494 | Consolidated Electrical Distributors Inc | 280-2 | 49.50 | | |
| 1669 | K&D Equipment Co. | 280-2 | 360.00 | 26,871.05 | 1,679.44 |
| *Pipeline/Gas Gathering Systems* | | | | | |
| 1542 | KCL Construction LLC | 280-PL-2 | 207,623.50 | | |
| 10385335 | Tool Pushers Supply Co. | 280-PL-2 | 28,399.23 | 236,022.73 | 14,751.42 |
| *Electrical & Control Systems* | | | | | |
| 0101411-IN | Stric-Lan Companies, LLC | 280-2 | 2,367.78 | | |
| 0101412-IN | Stric-Lan Companies, LLC | 280-2 | 29,525.92 | | |
| 0939-495396 | Consolidated Electrical Distributors Inc | 280-2 | 1,070.03 | 32,963.73 | 2,060.24 |
| | **Total Tangible Completion Costs** | | | **298,808.51** | **18,675.53** |

| | | | | | |
|---|---|---|---|---|---|
| | **Total Expenses for LEASE** | | | **560,306.84** | **35,019.18** |
| Billing Summary | BWPO Deck | 1 | 0.06250000 | 34,503.04 | 2,156.44 |
| by Deck/AFE | BCP | 280-1 | 0.06250000 | 8,885.62 | 555.35 |
| | ACP | 280-2 | 0.06250000 | 276,325.31 | 17,270.34 |
| | Pipeline | 280-PL-2 | 0.06250000 | 240,592.87 | 15,037.05 |

| LEASE Summary: | Wrk Int | Expenses | Pre-Pmt Applied | You Owe |
|---|---|---|---|---|
| 1CED62 | 0.06250000 | 35,019.18 | 32,862.74 | 2,156.44 |

Sklar Exploration Co., L.L.C.
401 Edwards Street, Suite 1601
Shreveport, LA 71101
(318)227-8668

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX 75711

Account: ROO802

Date: 01/31/2017

*taken off net*
*net - per agmt*

*800669*

## Account: ROO802 - Statement of Account:

| Date | Reference | Description | Charges | Credits |
|------|-----------|-------------|---------|---------|
| 12/31/2016 | | Balance Forward | 6,024.09 | |
| 01/03/2017 | 8232 | Partial Payment Ck# 42271 | | (3,790.77) |
| | | New Balance Forward | 2,233.32 | |

## Prepaid Balance by Project:

| Property# | AFE# | Description | Beginning Balance | Pre-Pmts Applied | Balance Remaining |
|-----------|------|-------------|-------------------|------------------|-------------------|
| 1CED62 | 280 | CCL&T 3-7 #1 | 9,678.66 | 471.10 | 9,207.56 |
| 1CED62 | 280-PL | CCL&T 3-7 #1 | 4,387.44 | | 4,387.44 |
| | | **Prepaid Balance Totals:** | **14,066.10** | **471.10** | **13,595.00** |

## Summary by LEASE:

| Property# | Description | Expenses | Pre-Pmts Applied | You Owe |
|-----------|-------------|----------|------------------|---------|
| | Unpaid Previous Balance | | | 2,233.32 |
| 1CED62 | CCL&T 3-7 #1 | 5,694.97 | 471.10 | 5,223.87 |
| | **Totals:** | **5,694.97** | **471.10** | **7,457.19** |

**PLEASE PAY THIS AMOUNT -----------------------^**



*492000. 001.01*
*360-800      4939.51*
*320-800       284.36*
*340-800       471.10*
*330-800    <471.10>*

*E-mailed*
*2/28/17*



RECEIVED
FEB 0 8 2017
BY:_____

2

From:   Sklar Exploration Co., L.L.C.                                       For Billing Dated 01/31/2017
To:     Roosth 806, Ltd, a Texas Ltd Partnership                           Account: ROO802    Page  2

### LEASE: (1CED62)  CCL&T 3-7 #1   County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Location Preparation/Dirt Work* | | | | | |
| 3039 | C.R. Pate Logging, Inc. | 1 | 2,180.05 | 2,180.05 | 136.25 |
| *Engineering & Supervision* | | | | | |
| 120116396 | Tom Joiner & Associates Inc. | 1 | 1,056.40 | | |
| 121516396 | Tom Joiner & Associates Inc. | 1 | 1,302.76 | | |
| 2016120026 | Brammer Engineering, Inc. | 1 | 37.50 | | |
| TM0117CC | Operation Engineer Time - Campbell | 1 | 268.32 | 2,664.98 | 166.56 |
| *Instrumentation & Monitoring* | | | | | |
| 1127434 | SPL, Inc. | 1 | 143.34 | 143.34 | 8.96 |
| *Company Pumping - Gauging* | | | | | |
| ALPU0117 | Pumper Time and Mileage - Young/Davis/Hester/Hinote/Kinsey/Hoomes/Hart | 1 | 1,436.16 | 1,436.16 | 89.76 |
| *Fuel* | | | | | |
| 5081159 | Kelley Oil Company | 1 | 2,430.12 | 2,430.12 | 151.89 |
| *Production Testing* | | | | | |
| 4352 | Boots Smith Completion Services, LLC | 1 | 68,200.00 | | |
| 1127796 | SPL, Inc. | 1 | 98.64 | | |
| 1126688-A | SPL, Inc. | 1 | 47.90 | | |
| 2030009519 | SPL, Inc. | 1 | 54.00 | 68,400.54 | 4,275.03 |
| *Repairs & Maint-Surface Equip* | | | | | |
| 20341 | Carnley Electric Inc | 1 | 300.00 | | |
| 20372 | Carnley Electric Inc | 1 | 448.00 | 748.00 | 46.75 |
| *COPAS Overhead* | | | | | |
| RBO29953 | Adm Overhead - Producing | 1 | 1,028.95 | 1,028.95 | 64.31 |
| **Total Lease Operating Expense** | | | | **79,032.14** | **4,939.51** |
| **Leasehold Costs** | | | | | |
| *Legal Fees* | | | | | |
| 402025 | Armbrecht Jackson LLP- Curative | 1 | 2,184.75 | | |
| 402255 | Armbrecht Jackson LLP | 1 | 2,010.00 | | |
| 402268 | Armbrecht Jackson LLP | 1 | 355.00 | 4,549.75 | 284.36 |
| **Total Leasehold Costs** | | | | **4,549.75** | **284.36** |
| **Intangible Completion Costs** | | | | | |
| *Engineering & Supervision Svcs* | | | | | |
| TM0117TS | Construction Foreman Time and Mileage - Smith | 280-2 | 1,404.38 | 1,404.38 | 87.77 |
| *Installation of Well Equipment* | | | | | |
| 25879 | Parker & Son, Inc. | 280-2 | 6,133.20 | 6,133.20 | 383.33 |
| **Total Intangible Completion Costs** | | | | **7,537.58** | **471.10** |

| Total Expenses for LEASE | | | | 91,119.47 | 5,694.97 |
|---|---|---|---|---|---|
| Billing Summary | BWPO Deck | 1 | 0.06250000 | 83,581.89 | 5,223.87 |
| by Deck/AFE | ACP | 280-2 | 0.06250000 | 7,537.58 | 471.10 |

| LEASE Summary | Wrk Int | Expenses | Pre-Pmt Applied | You Owe |
|---|---|---|---|---|
| 1CED62 | 0.06250000 | 5,694.97 | 471.10 | 5,223.87 |

2

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA 71101
(318)227-8668

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX 75711

Account: ROO802

Date: 02/28/2017

**Account: ROO802 - Statement of Account:**

| Date | Reference | Description | Charges | Credits |
|------|-----------|-------------|---------|---------|
| 01/31/2017 | | Balance Forward | 7,457.19 | |
| 02/13/2017 | 8315 | Partial Payment Ck# 42391 | | (2,233.32) |
| 02/24/2017 | RBU14487 | Deduction from revenue check | | (5,223.87) |
| | | New Balance Forward | 0.00 | |

**Prepaid Balance by Project:**

| Property# | AFE# | Description | Beginning Balance | Pre-Pmts Applied | Balance Remaining |
|-----------|------|-------------|-------------------|------------------|-------------------|
| 1CED62 | 280 | CCL&T 3-7 #1 | 9,207.56 | 71.02 | 9,136.54 |
| 1CED62 | 280-PL | CCL&T 3-7 #1 | 4,387.44 | | 4,387.44 |
| | | **Prepaid Balance Totals:** | **13,595.00** | **71.02** | **13,523.98** |

*for IDC*

**Summary by LEASE:**

| Property# | Description | Expenses | Pre-Pmts Applied | You Owe |
|-----------|-------------|----------|------------------|---------|
| 1CED62 | CCL&T 3-7 #1 | 1,185.79 | 71.02 | 1,114.77 |
| | **Totals:** | **1,185.79** | **71.02** | **1,114.77** |
| | **PLEASE PAY THIS AMOUNT** ------------------^ | | | |

From:  Sklar Exploration Co., L.L.C.  
To:  Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 02/28/2017  
Account: ROO802   Page   2

### LEASE: (1CED62)  CCL&T 3-7 #1    County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Engineering & Supervision* | | | | | |
| TM0217CC | Operations Engineer Time _ Campbell | 1 | 402.48 | 402.48 | 25.16 |
| *Instru/Monitoring & Automation* | | | | | |
| 1128128 | SPL, Inc. | 1 | 75.84 | | |
| 1129045 | SPL, Inc. | 1 | 98.64 | | |
| 1129584 | SPL, Inc. | 1 | 151.66 | | |
| 2030009357 | SPL, Inc. | 1 | 54.00 | 380.14 | 23.75 |
| *Chemicals* | | | | | |
| 907791390 | Baker Hughes Business Support Services | 1 | 1,253.45 | 1,253.45 | 78.34 |
| *Company Pumping - Gauging* | | | | | |
| ALPU0217 | Pumper Time and Mileage - Young/Davis/Hester/Hinote/Kinsey/Hoomes/Hart | 1 | 1,275.87 | 1,275.87 | 79.75 |
| *Fuel* | | | | | |
| 5081174 | Kelley Oil Company | 1 | 1,263.90 | | |
| 5081188 | Kelley Oil Company | 1 | 2,025.10 | | |
| 5081196 | Kelley Oil Company | 1 | 1,175.95 | | |
| 66255767-002 | Sunbelt Rentals Industrial Services, LLC | 1 | 1,395.64 | 5,860.59 | 366.28 |
| *Production Testing* | | | | | |
| 1123345C | SPL, Inc. | 1 | 46.79- | 46.79- | 2.92- |
| *Installation of Equipment* | | | | | |
| 20450 | Carnley Electric Inc | 1 | 224.00 | 224.00 | 14.00 |
| *Repairs & Maint-Surface Equip* | | | | | |
| 20406 | Carnley Electric Inc | 1 | 524.00 | | |
| 121581 | Union Oilfield Supply, Inc. | 1 | 75.02 | | |
| 121731 | Union Oilfield Supply, Inc. | 1 | 103.44 | | |
| F057754-IN | The McPherson Companies, Inc. | 1 | 25.32 | | |
| 20447 | Carnley Electric Inc | 1 | 224.00 | | |
| 20466 | Carnley Electric Inc | 1 | 672.00 | 1,623.78 | 101.49 |
| *Regulatory Costs & Fees* | | | | | |
| 122016396 | Tom Joiner & Associates Inc. | 1 | 849.05 | 849.05 | 53.06 |
| *COPAS Overhead* | | | | | |
| RBO30075 | Adm Overhead - Producing | 1 | 1,028.95 | 1,028.95 | 64.31 |
| *Miscellaneous* | | | | | |
| 117091 | Alabama 811 | 1 | 7.78 | 7.78 | 0.49 |
| | **Total Lease Operating Expense** | | | **12,859.30** | **803.71** |
| **Leasehold Costs** | | | | | |
| *Legal Fees* | | | | | |
| 402516 | Armbrecht Jackson LLP-DOTO/Curative | 1 | 4,096.00 | 4,096.00 | 256.00 |
| | **Total Leasehold Costs** | | | **4,096.00** | **256.00** |
| **Intangible Drilling Costs** | | | | | |
| *Coring & Analysis* | | | | | |
| 13288441 RI | Weatherford Laboratories, Inc. | 280-1 | 1,136.42 | 1,136.42 | 71.02 |
| | **Total Intangible Drilling Costs** | | | **1,136.42** | **71.02** |
| **Tangible Completion Costs** | | | | | |
| *Flowlines, Fittings, Connects* | | | | | |
| 20452 | Carnley Electric Inc | 1 | 64.15 | 64.15 | 4.01 |
| *Electrical & Control Systems* | | | | | |
| 0939-497081 | Consolidated Electrical Distributors Inc | 1 | 816.82 | 816.82 | 51.05 |
| | **Total Tangible Completion Costs** | | | **880.97** | **55.06** |
| | **Total Expenses for LEASE** | | | **18,972.69** | **1,185.79** |

From:   Sklar Exploration Co., L.L.C.
To:     Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 02/28/2017
Account: ROO802    Page   3

**LEASE: (1CED62)  CCL&T 3-7 #1    (Continued)**

| Billing Summary | BWPO Deck | 1 | 0.06250000 | 17,836.27 | 1,114.77 |
|---|---|---|---|---|---|
| by Deck/AFE | BCP | 280-1 | 0.06250000 | 1,136.42 | 71.02 |

| LEASE Summary: | Wrk Int | | Expenses | Pre-Pmt Applied | You Owe |
|---|---|---|---|---|---|
| 1CED62 | 0.06250000 | | 1,185.79 | 71.02 | 1,114.77 |

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA  71101
(318)227-8668

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX  75711

Account:  ROO802

Date:  03/31/2017

**Account: ROO802 - Statement of Account:**

| Date | Reference | Description | Charges | Credits |
|------|-----------|-------------|---------|---------|
| 02/28/2017 | | Balance Forward | 1,114.77 | |
| 03/01/2017 | ROO802CC | Release cash call - CCL&T 3-7 #1 | | (9,136.54) |
| 03/01/2017 | ROO802CC | Release cash call - CCL&T 3-7 #1 for pipeline | | (4,387.44) |
| | | New Balance Forward | | (12,409.21) |

**Summary by LEASE:**

| Property# | Description | Expenses | You Owe |
|-----------|-------------|----------|---------|
| | Unpaid Previous Balance | | (12,409.21) |
| 1CED62 | CCL&T 3-7 #1 | 3,947.16 | 3,947.16 |
| | **Totals:** | **3,947.16** | **(8,462.05)** |

**Credit Balance Do Not Pay ----------------------^**



RECEIVED
APR 1 0 2017
BY:_____

3

From: Sklar Exploration Co., L.L.C.

To: Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 03/31/2017

Account: ROO802   Page  2

### LEASE: (1CED62)  CCL&T 3-7 #1   County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| ***Survey, DOC Hearings, Permits*** | | | | | |
| 11461- LOC | Acstar Insurance Company | 1 | 17.55 | 17.55 | 1.10 |
| ***Engineering & Supervision*** | | | | | |
| COCC0117 | Capital One credit card 1/2017 Clayton Campbell | 1 | 241.90 | 241.90 | 15.12 |
| ***Instru/Monitoring & Automation*** | | | | | |
| COCC0117 | Capital One credit card 1/2017 Clayton Campbell | 1 | 513.85 | | |
| 1126516 | SPL, Inc. | 1 | 98.24 | | |
| 1130096 | SPL, Inc. | 1 | 70.00 | | |
| 1130929 | SPL, Inc. | 1 | 98.64 | | |
| 1130970 | SPL, Inc. | 1 | 182.00 | | |
| 1131648 | SPL, Inc. | 1 | 70.00 | | |
| 1131806 | SPL, Inc. | 1 | 67.19 | | |
| 1131922-A | SPL, Inc. | 1 | 24.60 | 1,124.52 | 70.28 |
| ***Coil Tubing Unit*** | | | | | |
| COCC0117 | Capital One credit card 1/2017 Clayton Campbell | 1 | 41.50 | 41.50 | 2.59 |
| ***Chemicals*** | | | | | |
| COCC0117 | Capital One credit card 1/2017 Clayton Campbell | 1 | 4.17 | 4.17 | 0.26 |
| ***Company Pumping - Gauging*** | | | | | |
| COCC0117 | Capital One credit card 1/2017 Clayton Campbell | 1 | 4.36 | | |
| ALPU0317 | Pumper Time and Mileage - Young/Davis/Hester/Hinote/Kinsey/Hoomes/Hart | 1 | 1,386.13 | 1,390.49 | 86.91 |
| ***Cementing & Equipment*** | | | | | |
| COCC0117 | Capital One credit card 1/2017 Clayton Campbell | 1 | 73.64 | 73.64 | 4.60 |
| ***Pipe Testing*** | | | | | |
| COCC0117 | Capital One credit card 1/2017 Clayton Campbell | 1 | 12.96 | 12.96 | 0.81 |
| ***Equipment Rentals*** | | | | | |
| COCC0117 | Capital One credit card 1/2017 Clayton Campbell | 1 | 76.09 | | |
| 66255767-001 | Sunbelt Rentals Industrial Services, LLC | 1 | 14,018.12 | | |
| 66255767-003 | Sunbelt Rentals Industrial Services, LLC | 1 | 975.00 | 15,069.21 | 941.83 |
| ***Logging & Wireline*** | | | | | |
| 83 | Slickline South, LLC | 1 | 1,466.80 | 1,466.80 | 91.67 |
| ***Utilities*** | | | | | |
| 613710064 | Southern Pine Electric Cooperative | 1 | 3,917.43 | 3,917.43 | 244.84 |
| ***Vacuum Truck*** | | | | | |
| 10106 | S&S Construction, LLC | 1 | 276.00 | 276.00 | 17.25 |
| ***Regulatory Costs & Fees*** | | | | | |
| 2017020029 | Brammer Engineering, Inc. | 1 | 333.34 | | |
| 030417396 | Tom Joiner & Associates Inc. | 1 | 149.44 | 482.78 | 30.17 |
| ***COPAS Overhead*** | | | | | |
| RBO30385 | Adm Overhead - Producing | 1 | 1,028.95 | 1,028.95 | 64.31 |
| **Total Lease Operating Expense** | | | | 25,147.90 | 1,571.74 |

3

From:   Sklar Exploration Co., L.L.C.                    For Billing Dated 03/31/2017
To:     Roosth 806, Ltd, a Texas Ltd Partnership         Account: ROO802   Page   3

**LEASE: (1CED62)  CCL&T 3-7 #1    (Continued)**
**Expenses:    (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Leasehold Costs** | | | | | |
| *Legal Fees* | | | | | |
| 402708 | Armbrecht Jackson LLP | 1 | 4,483.00 | 4,483.00 | 280.19 |
| | Total Leasehold Costs | | | 4,483.00 | 280.19 |
| **Intangible Completion Costs** | | | | | |
| *Utilities* | | | | | |
| SPEC JOB 12 | Southern Pine Electric Cooperative | 1 | 22,549.55 | | |
| SPEC JOB 14 | Southern Pine Electric Cooperative | 1 | 10,855.09 | 33,404.64 | 2,087.79 |
| | Total Intangible Completion Costs | | | 33,404.64 | 2,087.79 |
| **Tangible Completion Costs** | | | | | |
| *Flowlines, Fittings, Connects* | | | | | |
| 0939-497119 | Consolidated Electrical Distributors Inc | 1 | 117.87 | 117.87 | 7.37 |
| *Sales/Use Tax* | | | | | |
| 0217ALA | AL sales/use tax not paid by vendor | 1 | 1.09 | 1.09 | 0.07 |
| | Total Tangible Completion Costs | | | 118.96 | 7.44 |

**Total Expenses for LEASE**                                63,154.50        3,947.16

| LEASE Summary | Wrk Int | Expenses | You Owe |
|---|---|---|---|
| 1CED62 | 0.06250000 | 3,947.16 | 3,947.16 |

3

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA  71101
(318)227-8668

# Settlement Statement

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX  75711

Account:  ROO802

Date:  04/30/2017

**Summary by LEASE:**

| Property# | Description | Expenses | You Owe |
|---|---|---|---|
| | Unpaid Previous Balance | | (8,462.05) |
| 1CED62 | CCL&T 3-7 #1 | 1,218.45 | 1,218.45 |
| | Totals: | 1,218.45 | (7,243.60) |

**Credit Balance Do Not Pay -----------------------^**

RECEIVED
MAY 0 8 2017
BY:_____

2

From: Sklar Exploration Co., L.L.C.
To: Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 04/30/2017
Account: ROO802   Page   2

### LEASE: (1CED62)  CCL&T 3-7 #1   County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|-----------|-------------|----------|-------------|-------|------------|
| **Lease Operating Expense** | | | | | |
| *Location Clean Up/Pit Closure* | | | | | |
| 10294 | S&S Construction, LLC | 1 | 184.00 | 184.00 | 11.50 |
| *Instru/Monitoring & Automation* | | | | | |
| 1132427 | SPL, Inc. | 1 | 98.64 | | |
| 1132649 | SPL, Inc. | 1 | 182.00 | 280.64 | 17.54 |
| *Chemicals* | | | | | |
| 907921632 | Baker Hughes Business Support Services | 1 | 1,253.45 | 1,253.45 | 78.34 |
| *Company Pumping - Gauging* | | | | | |
| ALPU0417 | Pumper Time and Mileage - Young/Davis/Hester/Hinote/Kinsey/Hoomes/Hart | 1 | 1,328.43 | 1,328.43 | 83.03 |
| *Logging & Wireline* | | | | | |
| 110 | Slickline South, LLC | 1 | 1,546.80 | 1,546.80 | 96.67 |
| *Installation of Equipment* | | | | | |
| 24625 | 4-G Contractors, Inc.-structure | 1 | 6,038.00 | 6,038.00 | 377.38 |
| *Repairs & Maint/Sub-Surface Eq* | | | | | |
| 98-17944 | Jimco Pumps | 1 | 1,993.86 | 1,993.86 | 124.61 |
| *Utilities* | | | | | |
| 613710064 | Southern Pine Electric Cooperative | 1 | 6,178.47 | 6,178.47 | 386.16 |
| *Vacuum Truck* | | | | | |
| 10264 | S&S Construction, LLC | 1 | 184.00 | | |
| 10321 | S&S Construction, LLC | 1 | 368.00 | 552.00 | 34.50 |
| *Regulatory Costs & Fees* | | | | | |
| 022217396 | Tom Joiner & Associates Inc. | 1 | 440.45 | 440.45 | 27.53 |
| *COPAS Overhead* | | | | | |
| RBO30695 | Adm Overhead - Producing | 1 | 1,085.54 | 1,085.54 | 67.84 |
| | **Total Lease Operating Expense** | | | **20,881.64** | **1,305.10** |
| **Leasehold Costs** | | | | | |
| *Legal Fees* | | | | | |
| 403005 | Armbrecht Jackson LLP | 1 | 71.00 | 71.00 | 4.44 |
| | **Total Leasehold Costs** | | | **71.00** | **4.44** |
| **Intangible Completion Costs** | | | | | |
| *Location Preparation/Dirt Work* | | | | | |
| 97439 | Evergreen Concrete Company, Inc | 1 | 1,457.50- | 1,457.50- | 91.09- |
| | **Total Intangible Completion Costs** | | | **1,457.50-** | **91.09-** |

**Total Expenses for LEASE**          **19,495.14**        **1,218.45**

| LEASE Summary: | Wrk Int | Expenses | You Owe |
|----------------|---------|----------|---------|
| 1CED62 | 0.06250000 | 1,218.45 | 1,218.45 |

2

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA  71101
(318)227-8668

# Settlement Statement

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX  75711

Account:  ROO802

Date:  05/31/2017

**Summary by LEASE:**

| Property# | Description | Expenses | You Owe |
|---|---|---|---|
|  | Unpaid Previous Balance |  | (7,243.60) |
| 1CED62 | CCL&T 3-7 #1 | 1,764.36 | 1,764.36 |
|  | Totals: | 1,764.36 | (5,479.24) |

**Credit Balance Do Not Pay** --------/---/--------^

*6/2/17 Ann has called on this ! Refund to be made.*

From:   Sklar Exploration Co., L.L.C.        For Billing Dated 05/31/2017
To:     Roosth 806, Ltd, a Texas Ltd Partnership     Account: ROO802    Page    2

### LEASE: (1CED62)  CCL&T 3-7 #1    County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Instru/Monitoring & Automation* | | | | | |
| 1133765 | SPL, Inc. | 1 | 98.64 | | |
| 1134208 | SPL, Inc. | 1 | 150.78 | | |
| 1133420-A | SPL, Inc. | 1 | 70.00 | 319.42 | 19.96 |
| *Company Pumping - Gauging* | | | | | |
| ALPU0517 | Pumper Time and Mileage - Young/Davis/Hester/Hinote/Kinsey/Hoomes/Hart | 1 | 1,304.65 | 1,304.65 | 81.54 |
| *Equipment Rentals* | | | | | |
| 64728737-004 | Sunbelt Rentals Industrial Services, LLC | 1 | 15,934.91 | | |
| 64728737-007 | Sunbelt Rentals Industrial Services, LLC | 1 | 8,834.88- | 7,100.03 | 443.76 |
| *Logging & Wireline* | | | | | |
| 117 | Slickline South, LLC | 1 | 1,466.80 | 1,466.80 | 91.67 |
| *Repairs & Maint-Surface Equip* | | | | | |
| WMR17-3440 | Whirlwind Methane Recovery Systems, LLC | 1 | 270.00 | 270.00 | 16.88 |
| *Supplies* | | | | | |
| 123631 | Union Oilfield Supply, Inc. | 1 | 76.11 | 76.11 | 4.75 |
| *Salt Water Disposal* | | | | | |
| 10368 | S&S Construction, LLC | 1 | 644.00 | | |
| 2017-04-008 | Wastewater Disposal Services, Inc. | 1 | 140.00 | | |
| 26742 | S&S Construction, LLC | 1 | 276.00 | | |
| 2017-05-002 | Wastewater Disposal Services, Inc. | 1 | 84.00 | 1,144.00 | 71.50 |
| *Utilities* | | | | | |
| 613710064 | Southern Pine Electric Cooperative | 1 | 6,264.48 | 6,264.48 | 391.53 |
| *Vacuum Truck* | | | | | |
| 10368 | S&S Construction, LLC | 1 | 276.00 | | |
| 26742 | S&S Construction, LLC | 1 | 276.00 | 552.00 | 34.50 |
| *COPAS Overhead* | | | | | |
| RBO31320 | Adm Overhead - Producing | 1 | 1,085.54 | 1,085.54 | 67.85 |
| | **Total Lease Operating Expense** | | | **19,583.03** | **1,223.94** |
| **Intangible Drilling Costs** | | | | | |
| *Insurance* | | | | | |
| OEE-1SA | 2016-2017 OEE 1st Semi Annual Audit Report | 280-3 | 8,104.54 | 8,104.54 | 540.42 |
| | **Total Intangible Drilling Costs** | | | **8,104.54** | **540.42** |
| | **Total Expenses for LEASE** | | | **27,687.57** | **1,764.36** |

| Billing Summary by Deck/AFE | | | | | |
|---|---|---|---|---|---|
| | BWPO Deck | 1 | 0.06250000 | 19,583.03 | 1,223.94 |
| | Insurance | 280-3 | 0.06668056 | 8,104.54 | 540.42 |

| LEASE Summary: | Wrk Int | | Expenses | You Owe |
|---|---|---|---|---|
| 1CED62 | multiple | | 1,764.36 | 1,764.36 |

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA  71101
(318)227-8668

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX  75711

Account:  ROO802

Date:  06/30/2017

*800669*

**Account: ROO802 - Statement of Account:**

| Date | Reference | Description | Charges | Credits |
|---|---|---|---|---|
| 05/31/2017 | | Balance Forward | | (5,479.24) |
| 06/05/2017 | 139817 | Roosth 806, Ltd. | 5,479.24 | |
| | | New Balance Forward | 0.00 | |

**Summary by LEASE:**

| Property# | Description | | Expenses | You Owe |
|---|---|---|---|---|
| 1CED62 | CCL&T 3-7 #1 | *492000,001* | 952.72 | 952.72 |
| | | **Totals:** | **952.72** | **952.72** |
| | | **PLEASE PAY THIS AMOUNT** -------------- | | |

RECEIVED
JUL 1 0 2017
BY:

2

From: Sklar Exploration Co., L.L.C.
To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 06/30/2017
Account: ROO802   Page   2

## LEASE: (1CED62)  CCL&T 3-7 #1   County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Survey, DOC Hearings, Permits* | | | | | |
| 061217396 | Tom Joiner & Associates Inc. | 1 | 37.38 | | |
| 061417396 | Tom Joiner & Associates Inc. | 1 | 318.99 | 356.37 | 22.27 |
| *Engineering & Supervision* | | | | | |
| TM0617CC | Operation Engineer Time - Campbell 05-17 | 1 | 134.16 | 134.16 | 8.39 |
| *Instru/Monitoring & Automation* | | | | | |
| 1134879 | SPL, Inc. | 1 | 72.80 | | |
| 1135732 | SPL, Inc. | 1 | 98.64 | | |
| 1135969 | SPL, Inc. | 1 | 151.67 | 323.11 | 20.19 |
| *Chemicals* | | | | | |
| 908056602 | Baker Hughes Business Support Services | 1 | 1,253.45 | 1,253.45 | 78.34 |
| *Company Pumping - Gauging* | | | | | |
| ALPU0617 | Pumper Time and Mileage - Young/Davis/Hester/Hinote/Kinsey/Hoomes/Hart | 1 | 1,255.82 | 1,255.82 | 78.49 |
| *Logging & Wireline* | | | | | |
| 130 | Slickline South, LLC | 1 | 1,466.80 | 1,466.80 | 91.68 |
| *Repairs & Maint-Surface Equip* | | | | | |
| WMR17-3460 | Whirlwind Methane Recovery Systems, LLC | 1 | 270.00 | | |
| 98-18342 | Jimco Pumps | 1 | 50.88 | | |
| 123982 | Union Oilfield Supply, Inc. | 1 | 388.78 | 709.66 | 44.35 |
| *Supplies* | | | | | |
| 123982 | Union Oilfield Supply, Inc. | 1 | 30.85 | 30.85 | 1.93 |
| *Salt Water Disposal* | | | | | |
| 26767 | S&S Construction, LLC | 1 | 352.80 | | |
| 2017-05-008 | Wastewater Disposal Services, Inc. | 1 | 84.00 | | |
| 11051 | S&S Construction, LLC | 1 | 368.00 | | |
| 2017-06-005 | Wastewater Disposal Services, Inc. | 1 | 70.00 | 874.80 | 54.67 |
| *Utilities* | | | | | |
| 613710064 | Southern Pine Electric Cooperative | 1 | 6,207.64 | 6,207.64 | 387.98 |
| *Vacuum Truck* | | | | | |
| 26767 | S&S Construction, LLC | 1 | 352.80 | | |
| 11018 | S&S Construction, LLC | 1 | 368.00 | | |
| 11051 | S&S Construction, LLC | 1 | 184.00 | 904.80 | 56.55 |
| *COPAS Overhead* | | | | | |
| RBO31640 | Adm Overhead - Producing | 1 | 1,085.54 | 1,085.54 | 67.85 |
| | **Total Lease Operating Expense** | | | **14,603.00** | **912.69** |
| **Leasehold Costs** | | | | | |
| *Legal Fees* | | | | | |
| 403415 | Armbrecht Jackson LLP | 1 | 89.19 | 89.19 | 5.57 |
| | **Total Leasehold Costs** | | | **89.19** | **5.57** |
| **Tangible Completion Costs** | | | | | |
| *Flowlines, Fittings, Connects* | | | | | |
| 123616 | Union Oilfield Supply, Inc. | 1 | 551.38 | 551.38 | 34.46 |
| | **Total Tangible Completion Costs** | | | **551.38** | **34.46** |
| | **Total Expenses for LEASE** | | | **15,243.57** | **952.72** |

| LEASE Summary: | Wrk Int | Expenses | You Owe |
|---|---|---|---|
| 1CED62 | 0.06250000 | 952.72 | 952.72 |

2

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA  71101
(318)227-8668

# Settlement Statement

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX  75711

Account:  ROO802

Date:  07/31/2017

*800669*

**Summary by LEASE:**

| Property# | Description | Expenses | You Owe |
|---|---|---|---|
|  | Unpaid Previous Balance | *492000.001* | 952.72  *Pd 7/31* |
| 1CED62 | CCL&T 3-7 #1 | 991.41 | 991.41 |
|  | **Totals:** | **991.41** | **1,944.13** |
|  | **PLEASE PAY THIS AMOUNT** -------------------------^ |  |  |

RECEIVED
AUG 0 7 2017
BY:

3

From:   Sklar Exploration Co., L.L.C.
To:     Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 07/31/2017
Account: ROO802    Page   2

## LEASE: (1CED62)  CCL&T 3-7 #1   County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Location Clean Up/Pit Closure* | | | | | |
| 183 | Vegetation Management Services | 1 | 425.00 | 425.00 | 26.56 |
| *Instru/Monitoring & Automation* | | | | | |
| 1136508 | SPL, Inc. | 1 | 70.00 | | |
| 1137312 | SPL, Inc. | 1 | 98.64 | | |
| 1137819 | SPL, Inc. | 1 | 151.66 | | |
| 1138166 | SPL, Inc. | 1 | 49.18 | | |
| 1138168 | SPL, Inc. | 1 | 74.81 | 444.29 | 27.77 |
| *Company Pumping - Gauging* | | | | | |
| ALPU0717 | Pumper Time and Mileage - Young/Davis/Hester/Hinote/Kinsey/Hoomes/Hart | 1 | 1,625.64 | 1,625.64 | 101.60 |
| *Safety & H2S Training* | | | | | |
| 13324 | Covington Fire Protection | 1 | 80.00 | 80.00 | 5.00 |
| *Repairs & Maint-Surface Equip* | | | | | |
| 1137070 | SPL, Inc. | 1 | 97.74 | | |
| WMR17-3473 | Whirlwind Methane Recovery Systems, LLC | 1 | 270.00 | | |
| F078412-IN | The McPherson Companies, Inc. | 1 | 60.90 | | |
| 98-18351 | Jimco Pumps | 1 | 726.10 | 1,154.74 | 72.17 |
| *Salt Water Disposal* | | | | | |
| 11131 | S&S Construction, LLC | 1 | 322.00 | | |
| 2017-07-003 | Wastewater Disposal Services, Inc. | 1 | 84.00 | 406.00 | 25.38 |
| *Utilities* | | | | | |
| 613710064 | Southern Pine Electric Cooperative | 1 | 4,484.34 | 4,484.34 | 280.27 |
| *Vacuum Truck* | | | | | |
| 9926 | S&S Construction, LLC | 1 | 34.90 | | |
| 11081 | S&S Construction, LLC | 1 | 184.00 | | |
| 11131 | S&S Construction, LLC | 1 | 322.00 | | |
| 11187 | S&S Construction, LLC | 1 | 438.40 | 979.30 | 61.21 |
| *Regulatory Costs & Fees* | | | | | |
| 060717396 | Tom Joiner & Associates Inc. | 1 | 459.89 | | |
| 060917396 | Tom Joiner & Associates Inc. | 1 | 201.94 | 661.83 | 41.36 |
| *COPAS Overhead* | | | | | |
| RBO31769 | Adm Overhead - Producing | 1 | 1,085.54 | 1,085.54 | 67.85 |
| | **Total Lease Operating Expense** | | | **11,346.68** | **709.17** |
| **Insurance** | | | | | |
| *Insurance* | | | | | |
| 17-18INL | 2017-2018 Inland Marine Insurance | 1 | 1,290.86 | | |
| 17-18GEN | 17-18 General Liability and Excess Umbrella | 1 | 1,347.65 | 2,638.51 | 164.90 |
| 1718OEE | 2017-2018 OEE Insurance | INS01 | 722.79 | 722.79 | 48.20 |
| | **Total Insurance** | | | **3,361.30** | **213.10** |
| **Geological & Geophysical** | | | | | |
| *Geological* | | | | | |
| 13767447 RI | Weatherford Laboratories, Inc.-Core storage | 1 | 58.00 | 58.00 | 3.63 |
| | **Total Geological & Geophysical** | | | **58.00** | **3.63** |
| **Tangible Completion Costs** | | | | | |
| *Flowlines, Fittings, Connects* | | | | | |
| 124077 | Union Oilfield Supply, Inc. | 1 | 1,048.20 | 1,048.20 | 65.51 |
| | **Total Tangible Completion Costs** | | | **1,048.20** | **65.51** |
| | **Total Expenses for LEASE** | | | **15,814.18** | **991.41** |

3

From:   Sklar Exploration Co., L.L.C.
To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 07/31/2017
Account: ROO802   Page   3

**LEASE: (1CED62)  CCL&T 3-7 #1   (Continued)**

| Billing Summary | BWPO Deck | 1 | 0.06250000 | 15,091.39 | 943.21 |
|---|---|---|---|---|---|
| by Deck/AFE | Insurance -BWPO | INS01 | 0.06668056 | 722.79 | 48.20 |

| LEASE Summary: | Wrk Int | Expenses | You Owe |
|---|---|---|---|
| 1CED62 | multiple | 991.41 | 991.41 |

3

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA 71101
(318)227-8668

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX 75711

Account: ROO802

Date: 08/31/2017

*800669*

### Account: ROO802 - Statement of Account:

| Date | Reference | Description | Charges | Credits |
|------|-----------|-------------|---------|---------|
| 07/31/2017 | | Balance Forward | 1,944.13 | |
| 08/04/2017 | 8710 | Payment-Thank You! Ck# 42875 | | (952.72) |
| 08/21/2017 | 8739 | Payment-Thank You! Ck# 42919 - paid | | (991.41) |
| | | by Roosth Production Company check | | |
| | | New Balance Forward | 0.00 | |

### Summary by LEASE:

| Property# | Description | Expenses | You Owe |
|-----------|-------------|----------|---------|
| 1CED62 | CCL&T 3-7 #1  *492,000, 001* | 1,113.06 | 1,113.06 |
| | **Totals:** | **1,113.06** | **1,113.06** |
| | **PLEASE PAY THIS AMOUNT** --------------- | | |



RECEIVED
SEP 1 5 2017

**Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.**

2

| From: | Sklar Exploration Co., L.L.C. | | | For Billing Dated 08/31/2017 |
|---|---|---|---|---|
| To: | Roosth 806, Ltd, a Texas Ltd Partnership | | | Account: ROO802    Page   2 |

## LEASE: (1CED62)  CCL&T 3-7 #1   County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Instru/Monitoring & Automation* | | | | | |
| 1139318-A | SPL, Inc. | 1 | 80.00 | | |
| 1139352-A | SPL, Inc. | 1 | 202.22 | | |
| 2030011804 | SPL, Inc. | 1 | 64.00 | 346.22 | 21.64 |
| *Chemicals* | | | | | |
| 908212019 | Baker Hughes Business Support Services | 1 | 1,253.45 | 1,253.45 | 78.34 |
| *Company Pumping - Gauging* | | | | | |
| ALPU0817 | Pumper Time and Mileage - Young/Davis/Hester/Hinote/Kinsey/Hoomes/Hart/Blackman | 1 | 1,646.18 | 1,646.18 | 102.89 |
| *Repairs & Maint-Surface Equip* | | | | | |
| WMR17-3476 | Whirlwind Methane Recovery Systems, LLC | 1 | 270.00 | 270.00 | 16.87 |
| *Repairs & Maint/Sub-Surface Eq* | | | | | |
| COCC0617 | Capital One credit card 6/2017 Clayton Campbell | 1 | 35.48 | | |
| 98-18668 | Jimco Pumps | 1 | 2,241.90 | 2,277.38 | 142.34 |
| *Salt Water Disposal* | | | | | |
| 11237 | S&S Construction, LLC | 1 | 644.00 | | |
| 2017-08-004 | Wastewater Disposal Services, Inc. | 1 | 91.00 | 735.00 | 45.93 |
| *Utilities* | | | | | |
| 613710064 | Southern Pine Electric Cooperative | 1 | 4,273.06 | 4,273.06 | 267.07 |
| *COPAS Overhead* | | | | | |
| RBO32094 | Adm Overhead - Producing | 1 | 1,085.54 | 1,085.54 | 67.85 |
| | **Total Lease Operating Expense** | | | **11,886.83** | **742.93** |
| **Leasehold Costs** | | | | | |
| *Legal Fees* | | | | | |
| 403918 | Armbrecht Jackson LLP | 1 | 462.50 | 462.50 | 28.90 |
| | **Total Leasehold Costs** | | | **462.50** | **28.90** |
| **Tangible Completion Costs** | | | | | |
| *Flowlines, Fittings, Connects* | | | | | |
| COCC0617 | Capital One credit card 6/2017 Clayton Campbell | 1 | 275.98 | | |
| 10409569 | Tool Pushers Supply Co. | 1 | 5,183.59 | 5,459.57 | 341.23 |
| | **Total Tangible Completion Costs** | | | **5,459.57** | **341.23** |
| | **Total Expenses for LEASE** | | | **17,808.90** | **1,113.06** |

| LEASE Summary: | Wrk Int | Expenses | You Owe |
|---|---|---|---|
| 1CED62 | 0.06250000 | 1,113.06 | 1,113.06 |

2

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA  71101
(318)227-8668

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX  75711

Account: ROO802

Date: 09/30/2017

**Summary by LEASE:**

*800669*

| Property# | Description | Expenses | You Owe |
|-----------|-------------|----------|---------|
| | Unpaid Previous Balance | | 1,113.06 *Pd 10/5* |
| 1CED62 | CCL&T 3-7 #1  *492 000.001* | 10,418.29 | 10,418.29 |
| | Totals: | 10,418.29 | 44,531.35 |

**PLEASE PAY THIS AMOUNT** -------------------^

*260-800        1799.43*
*240-800 Icc     12.57*
*250-800 Equip  8606.29*

From:   Sklar Exploration Co., L.L.C.
To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 09/30/2017
Account: ROO802   Page   2

### LEASE: (1CED62)  CCL&T 3-7 #1   County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Instru/Monitoring & Automation* | | | | | |
| 1138974 | SPL, Inc. | 1 | 98.64 | | |
| 1140205 | SPL, Inc. | 1 | 72.80 | | |
| 1140874 | SPL, Inc. | 1 | 182.00 | | |
| 1141183 | SPL, Inc. | 1 | 98.64 | 452.08 | 28.26 |
| *Chemicals* | | | | | |
| 908313868 | Baker Hughes, a GE Company, LLC | 1 | 1,253.45 | 1,253.45 | 78.34 |
| *Company Pumping - Gauging* | | | | | |
| ALPU0917 | Pumper Time and Mileage - Young/Davis/Hester/Hinote/Kinsey/Hoomes/Hart/Blackman | 1 | 1,635.65 | 1,635.65 | 102.22 |
| *Equipment Rentals* | | | | | |
| 72559887-000 | Sunbelt Rentals Industrial Services, LLC | 1 | 1,869.01 | 1,869.01 | 116.82 |
| *Logging & Wireline* | | | | | |
| 163 | Slickline South, LLC | 1 | 1,466.80 | | |
| 164 | Slickline South, LLC | 1 | 4,734.40 | 6,201.20 | 387.57 |
| *Installation of Equipment* | | | | | |
| 92117 | H&H Construction, LLC-Installation of new pipe away valve, flow line, and flame arrestor | 1 | 7,629.00 | 7,629.00 | 476.81 |
| *Repairs & Maint-Surface Equip* | | | | | |
| WMR17-3498 | Whirlwind Methane Recovery Systems, LLC | 1 | 270.00 | | |
| 21024 | Carnley Electric Inc | 1 | 224.00 | | |
| 0102543-IN | Stric-Lan Companies, LLC | 1 | 2,849.76 | 3,343.76 | 208.99 |
| *Repairs & Maint/Sub-Surface Eq* | | | | | |
| 98-19029 | Jimco Pumps | 1 | 872.38 | 872.38 | 54.52 |
| *Utilities* | | | | | |
| 613710064 | Southern Pine Electric Cooperative | 1 | 4,160.96 | 4,160.96 | 260.06 |
| *Vacuum Truck* | | | | | |
| 11326 | S&S Construction, LLC | 1 | 276.00 | 276.00 | 17.25 |
| *Regulatory Costs & Fees* | | | | | |
| 082817465-6 | Tom Joiner & Associates Inc. | 1 | 11.80 | 11.80 | 0.74 |
| *COPAS Overhead* | | | | | |
| RBO32225 | Adm Overhead - Producing | 1 | 1,085.54 | 1,085.54 | 67.85 |
| **Total Lease Operating Expense** | | | | **28,790.83** | **1,799.43** |
| **Intangible Completion Costs** | | | | | |
| *Engineering & Supervision Svcs* | | | | | |
| TM0917CC | Operations Engineer Time - Campbell | 1 | 201.24 | 201.24 | 12.57 |
| **Total Intangible Completion Costs** | | | | **201.24** | **12.57** |
| **Tangible Completion Costs** | | | | | |
| *Tubing* | | | | | |
| MTTS034 | Transfer 11,423' 6.5# L-80 2-7/8" Production Tubing from CCL&T 9-3 #1 to CCL&T 3-7 #1 | 1 | 40,894.34 | 40,894.34 | 2,555.90 |
| *Surface Production Equipment* | | | | | |
| MTTS033 | Transfer one Flare from CCLT 9-3 #1 to CCL&T 3-7 #1 | 1 | 10,575.00 | | |
| MTTS031 | Transfer two meter runs (Serial # SF15185 and SF 15193) from the Kennedy 36-12 #1 to the CCL&T 3-7 #1 | 1 | 4,462.50 | | |
| MTTS030 | Transfer one Separator (LV5397) from CCL&T 14-9 #1 to CCL&T 3-7 #1 | 1 | 4,181.25 | | |
| MTTS030 | Transfer one Heater Treater(LV5403) | 1 | 17,625.00 | 36,843.75 | 2,302.74 |

From:  Sklar Exploration Co., L.L.C.
To:    Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 09/30/2017
Account: ROO802    Page    3

**LEASE: (1CED62)  CCL&T 3-7 #1    (Continued)**
**Expenses:    (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|-----------|-------------|----------|-------------|-------|------------|
| | from CCL&T 14-9 #1 to CCL&T 3-7 #1 | | | | |
| *Compression* | | | | | |
| MTTS032 | Transfer one VRU from CCL&T 21-1 #1 to CCL&T 3-7 #1 | 1 | 25,125.00 | 25,125.00 | 1,570.31 |
| *Tank Battery Costs* | | | | | |
| MTCC111 | Transfer Water tank with complete coal tar epoxy coating on interior from CCL&T 14-9 #1 to CCL&T 3-7 #1 | 1 | 7,987.50 | | |
| MTTS029 | Transfer Oil Tank (#469) from CCL&T 5-3 #1 to CCL&T 3-7 #1 | 1 | 7,125.00 | | |
| MTTS028 | Transfer Power Oil Tank (LVK 102129) from CCL&T 14-9 #1 to CCL&T 3-7 #1 | 1 | 12,675.00 | | |
| MTTS028 | Transfer Oil Tank (LVK 10226) from CCL&T 14-9 #1 to CCL&T 3-7 #1 | 1 | 7,050.00 | 34,837.50 | 2,177.34 |
| | **Total Tangible Completion Costs** | | | **137,700.59** | **8,606.29** |
| | **Total Expenses for LEASE** | | | **166,692.66** | **10,418.29** |

| LEASE Summary: | Wrk Int | Expenses | You Owe |
|----------------|---------|----------|---------|
| 1CED62 | 0.06250000 | 10,418.29 | 10,418.29 |

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA  71101
(318)227-8668

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX  75711

Account:  ROO802

Date:  10/31/2017

### Account: ROO802 - Statement of Account:    *800 669*

| Date | Reference | Description | Charges | Credits |
|------|-----------|-------------|---------|---------|
| 09/30/2017 | | Balance Forward | 11,531.35 | |
| 10/10/2017 | 8842 | Payment-Thank You! Ck# 43006 - paid by Roosth Production Company check | | (1,113.06) |
| | | New Balance Forward | ~~10,418.29~~  *Pd 10/31* | |

### Summary by LEASE:

| Property# | Description | Expenses | You Owe |
|-----------|-------------|----------|---------|
| | Unpaid Previous Balance | | ~~10,418.29~~ |
| 1CED62 | CCL&T 3-7 #1  *492 000.001* | 1,355.57 | 1,355.57 |
| | Totals: | 1,355.57 | ~~11,773.86~~ |

**PLEASE PAY THIS AMOUNT -------------------^**

*260-800*



RECEIVED
NOV 0 6 2017

---

**Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.**

From:   Sklar Exploration Co., L.L.C.
To:     Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 10/31/2017
Account: ROO802    Page   2

### LEASE: (1CED62)  CCL&T 3-7 #1    County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Instru/Monitoring & Automation* | | | | | |
| 1142212 | SPL, Inc. | 1 | 60.92 | | |
| 1142335 | SPL, Inc. | 1 | 74.81 | | |
| 1142478 | SPL, Inc. | 1 | 98.64 | | |
| 1142901 | SPL, Inc. | 1 | 130.00 | 364.37 | 22.77 |
| *Company Pumping - Gauging* | | | | | |
| ALPU1017 | Pumper Time and Mileage - Young/Davis/Hester/Hinote/Kinsey/Hoomes/Hart/Blackman | 1 | 1,669.63 | 1,669.63 | 104.36 |
| *Equipment Rentals* | | | | | |
| 150350694-00 | United Rentals (North America) Inc. | 1 | 58.99 | 58.99 | 3.68 |
| *Transportation/Trucking* | | | | | |
| 13927357 RI | Weatherford Laboratories, Inc. | 1 | 174.00 | 174.00 | 10.88 |
| *Repairs & Maint-Surface Equip* | | | | | |
| 21051 | Carnley Electric Inc | 1 | 184.95 | | |
| 125191 | Union Oilfield Supply, Inc.-Pipeaway valve installation materials | 1 | 28.41 | | |
| CI-000000705 | SPOC Automation, Inc. | 1 | 8,017.17 | | |
| WMR17-3504 | Whirlwind Methane Recovery Systems, LLC | 1 | 270.00 | | |
| 17-3516 | Whirlwind Methane Recovery Systems, LLC | 1 | 2,218.45 | | |
| 21120 | Carnley Electric Inc | 1 | 350.09 | | |
| CI-000000743 | SPOC Automation, Inc. | 1 | 108.12 | 11,177.19 | 698.57 |
| *Supplies* | | | | | |
| 125146 | Union Oilfield Supply, Inc.-Supplies for installation of pipeaway Enardo valve installation | 1 | 84.69 | | |
| 125426 | Union Oilfield Supply, Inc. | 1 | 6.15 | 90.84 | 5.68 |
| *Salt Water Disposal* | | | | | |
| 11397 | S&S Construction, LLC | 1 | 368.00 | | |
| 11415 | S&S Construction, LLC | 1 | 368.00 | | |
| 2017-09-007 | Wastewater Disposal Services, Inc. | 1 | 168.00 | | |
| 2017-10-004 | Wastewater Disposal Services, Inc. | 1 | 42.00 | 946.00 | 59.12 |
| *Utilities* | | | | | |
| 613710064 | Southern Pine Electric Cooperative | 1 | 4,089.53 | 4,089.53 | 255.60 |
| *Vacuum Truck* | | | | | |
| 11397 | S&S Construction, LLC | 1 | 276.00 | | |
| 11467 | S&S Construction, LLC | 1 | 552.00 | 828.00 | 51.75 |
| *COPAS Overhead* | | | | | |
| RBO32730 | Adm Overhead - Producing | 1 | 1,085.54 | 1,085.54 | 67.85 |
| **Total Lease Operating Expense** | | | | **20,484.09** | **1,280.26** |
| **Tangible Completion Costs** | | | | | |
| *Flowlines, Fittings, Connects* | | | | | |
| 125109 | Union Oilfield Supply, Inc.-Install pipeaway Enardo valve | 1 | 1,205.00 | 1,205.00 | 75.31 |
| **Total Tangible Completion Costs** | | | | **1,205.00** | **75.31** |
| **Total Expenses for LEASE** | | | | **21,689.09** | **1,355.57** |

*(handwritten note: "note to D. Deaker")*

| LEASE Summary: | Wrk Int | | Expenses | You Owe |
|---|---|---|---|---|
| 1CED62 | 0.06250000 | | 1,355.57 | 1,355.57 |

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA  71101
(318)227-8668

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX  75711

Account:  ROO802

Date:  11/22/2017

**Summary by LEASE:**

| Property# | Description | Net Income | You Owe | Ck# 109864 Written to YOU for |
|---|---|---|---|---|
| | Unpaid Previous Balance | | 1,355.57 | |
| 1CED62 | CCL&T 3-7 #1 | 6,869.91 | | 6,869.91 |
| | Deduct to pay what you owe | | (1,355.57) | (1,355.57) |
| | **Totals:** | **6,869.91** | **0.00** | **5,514.34** |

NOTE:  Checks are mailed on the 30th of each month.
Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.

| Owner# | Check#/Date | Gross Revenue | Working | Royalty | Deductions | Withholding | Pmt Amount |
|---|---|---|---|---|---|---|---|
| ROO802 | 109864 | Check Totals | 7,843.97 | | 2,329.63 | | 5,514.34 |
| | 11/22/2017 | 2017 Totals | 145,185.22 | | 24,358.48 | | 120,826.74 |

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA  71101
(318)227-8668

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX  75711

Account:  ROO802

Date:  11/30/2017

### Account: ROO802 - Statement of Account:

| Date | Reference | Description | Charges | Credits |
|------|-----------|-------------|---------|---------|
| 10/31/2017 | | Balance Forward | 11,773.86 | |
| 11/03/2017 | 8897 | Payment-Thank You! Ck# 43066 - paid by Roosth Production Company check | | (10,418.29) |
| 11/22/2017 | RBU15608 | Deduction from revenue check | | (1,355.57) |
| | | New Balance Forward | 0.00 | |

### Summary by LEASE:

| Property# | Description | Expenses | You Owe |
|-----------|-------------|----------|---------|
| 1CED62 | CCL&T 3-7 #1 | 1,047.62 | 1,047.62 |
| | Totals: | 1,047.62 | 1,047.62 |

**PLEASE PAY THIS AMOUNT ----------------------^**

*12/4/17*
*⟨307.95⟩*
*Called Marie Gardner.*
*We have CR Bal.*
*She will remove*
*us from netting*
*ER*

**Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.**

| From: | Sklar Exploration Co., L.L.C. | | For Billing Dated 11/30/2017 |
|---|---|---|---|
| To: | Roosth 806, Ltd, a Texas Ltd Partnership | | Account: ROO802    Page   2 |

### LEASE: (1CED62)  CCL&T 3-7 #1   County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Instru/Monitoring & Automation* | | | | | |
| 1144295 | SPL, Inc. | 1 | 60.92 | | |
| 1144517 | SPL, Inc. | 1 | 98.44 | | |
| 1144637 | SPL, Inc. | 1 | 184.62 | | |
| 1145594 | SPL, Inc. | 1 | 39.57 | 383.55 | 23.97 |
| *Chemicals* | | | | | |
| 908520323 | Baker Hughes, a GE Company, LLC | 1 | 1,041.45 | 1,041.45 | 65.09 |
| *Company Pumping - Gauging* | | | | | |
| ALPU1117 | Pumper Time and Mileage - Young/Davis/Hester/Hinote/Kinsey/Hoomes/Hart/Blackman | 1 | 1,681.60 | 1,681.60 | 105.10 |
| *Logging & Wireline* | | | | | |
| 177 | Slickline South, LLC | 1 | 1,466.80 | 1,466.80 | 91.68 |
| *Repairs & Maint-Surface Equip* | | | | | |
| 102517 | H&H Construction, LLC-Winter prep | 1 | 223.34 | | |
| 98-19116 | Jimco Pumps | 1 | 999.43 | | |
| 98-19118 | Jimco Pumps | 1 | 470.49 | | |
| 98-19119 | Jimco Pumps | 1 | 470.49 | | |
| 98-19244 | Jimco Pumps | 1 | 852.24 | | |
| 21157 | Carnley Electric Inc | 1 | 224.00 | | |
| WMR17-3517 | Whirlwind Methane Recovery Systems, LLC | 1 | 270.00 | 3,509.99 | 219.37 |
| *Repairs & Maint/Sub-Surface Eq* | | | | | |
| 98-19244 | Jimco Pumps | 1 | 1,025.02 | 1,025.02 | 64.07 |
| *Salt Water Disposal* | | | | | |
| 2017-11-005 | Wastewater Disposal Services, Inc. | 1 | 84.00 | 84.00 | 5.25 |
| *Utilities* | | | | | |
| 613710064 | Southern Pine Electric Cooperative | 1 | 5,425.58 | 5,425.58 | 339.09 |
| *Vacuum Truck* | | | | | |
| 11515 | S&S Construction, LLC | 1 | 276.00 | | |
| 11539 | S&S Construction, LLC | 1 | 276.00 | | |
| 11561 | S&S Construction, LLC | 1 | 368.00 | 920.00 | 57.50 |
| *Sales/Use Tax* | | | | | |
| 1017ALA | AL sales/use tax not paid by vendor | 1 | 2.10 | | |
| 1017ALA | AL sales/use tax not paid by vendor | 1 | 3.00 | | |
| 1017ALA | AL sales/use tax not paid by vendor | 1 | 29.86 | 34.96 | 2.19 |
| *Regulatory Costs & Fees* | | | | | |
| 101517396 | Tom Joiner & Associates Inc. | 1 | 103.37 | 103.37 | 6.46 |
| *COPAS Overhead* | | | | | |
| RBO32986 | Adm Overhead - Producing | 1 | 1,085.54 | 1,085.54 | 67.85 |
| | **Total Lease Operating Expense** | | | **16,761.86** | **1,047.62** |

| LEASE Summary: | Wrk Int | Expenses | You Owe |
|---|---|---|---|
| 1CED62 | 0.06250000 | 1,047.62 | 1,047.62 |

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA  71101
(318)227-8668

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX  75711

Account:  ROO802

Date:  12/31/2017

**Account: ROO802 – Statement of Account:**     *800669*

| Date | Reference | Description | Charges | Credits |
|---|---|---|---|---|
| 11/30/2017 | | Balance Forward | 1,047.62 | |
| 12/01/2017 | 8950 | Payment-Thank You! Ck# 43119 - paid *pd 11/28* | | (1,355.57) |
| | | by Roosth Production Company check. | | |
| | | New Balance Forward | | (307.95) |

**Summary by LEASE:**

| Property# | Description | Expenses | You Owe |
|---|---|---|---|
| | Unpaid Previous Balance | | (307.95) |
| 1CED62 | CCL&T 3-7 #1   *+92000.001* | 858.94 | 858.94 |
| | Totals: | 858.94 | 550.99 |
| | PLEASE PAY THIS AMOUNT ----------- | | |

*860-800*

| From: | Sklar Exploration Co., L.L.C. | | | | For Billing Dated 12/31/2017 |
|---|---|---|---|---|---|
| To: | Roosth 806, Ltd, a Texas Ltd Partnership | | | | Account: ROO802   Page   2 |

### LEASE: (1CED62)  CCL&T 3-7 #1   County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Instru/Monitoring & Automation* | | | | | |
| 1146418 | SPL, Inc. | 1 | 184.62 | | |
| 1146731 | SPL, Inc. | 1 | 98.26 | | |
| 1148107 | SPL, Inc. | 1 | 98.26 | 381.14 | 23.82 |
| *Company Pumping - Gauging* | | | | | |
| ALPU1217 | Pumper Time and Mileage - Young/Davis/Hester/Hinote/Kinsey/Hoomes/Hart/Blackman | 1 | 1,771.32 | 1,771.32 | 110.71 |
| *Logging & Wireline* | | | | | |
| 195 | Slickline South, LLC | 1 | 1,466.80 | 1,466.80 | 91.67 |
| *Repairs & Maint-Surface Equip* | | | | | |
| 111317 | H&H Construction, LLC | 1 | 156.00 | | |
| 125785 | Union Oilfield Supply, Inc. | 1 | 113.27 | | |
| WMR17-3528 | Whirlwind Methane Recovery Systems, LLC | 1 | 270.00 | | |
| 11689 | S&S Construction, LLC | 1 | 92.00 | 631.27 | 39.46 |
| *Salt Water Disposal* | | | | | |
| 11615 | S&S Construction, LLC | 1 | 368.00 | | |
| 2017-11-008 | Wastewater Disposal Services, Inc. | 1 | 80.50 | | |
| 2017-12-003 | Wastewater Disposal Services, Inc. | 1 | 78.40 | | |
| 11721 | S&S Construction, LLC | 1 | 276.00 | 802.90 | 50.18 |
| *Utilities* | | | | | |
| 613710064 | Southern Pine Electric Cooperative | 1 | 4,794.58 | 4,794.58 | 299.66 |
| *Vacuum Truck* | | | | | |
| 11615 | S&S Construction, LLC | 1 | 184.00 | | |
| 11721 | S&S Construction, LLC | 1 | 276.00 | 460.00 | 28.75 |
| *Regulatory Costs & Fees* | | | | | |
| 111117396 | Tom Joiner & Associates Inc. | 1 | 249.16 | | |
| 111317396 | Tom Joiner & Associates Inc. | 1 | 187.37 | 436.53 | 27.28 |
| *COPAS Overhead* | | | | | |
| RBO33240 | Adm Overhead - Producing | 1 | 1,085.54 | 1,085.54 | 67.85 |
| **Total Lease Operating Expense** | | | | **11,830.08** | **739.38** |
| **Tangible Completion Costs** | | | | | |
| *Electrical & Control Systems* | | | | | |
| SF00118085 | Zedi US Inc. | 1 | 1,912.99 | 1,912.99 | 119.56 |
| **Total Tangible Completion Costs** | | | | **1,912.99** | **119.56** |
| | **Total Expenses for LEASE** | | | **13,743.07** | **858.94** |

| LEASE Summary: | Wrk Int | Expenses | You Owe |
|---|---|---|---|
| 1CED62 | 0.06250000 | 858.94 | 858.94 |

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA  71101
(318)227-8668

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX  75711

Account:  ROO802

Date:  01/31/2018

## Summary by LEASE:

800669

| Property# | Description | Expenses | You Owe |
|-----------|-------------|----------|---------|
|  | Unpaid Previous Balance | *pd 1/30* | ~~550.99~~ |
| 1CED62 | CCL&T 3-7 #1  *492 000.001* | 1,082.30 | 1,082.30 |
|  | Totals: | 1,082.30 | 1,633.29 |

**PLEASE PAY THIS AMOUNT** ----------------------^

FEB 08 2018

Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.

2

| | |
|---|---|
| From:  Sklar Exploration Co., L.L.C. | For Billing Dated 01/31/2018 |
| To:   Roosth 806, Ltd, a Texas Ltd Partnership | Account: ROO802   Page  2 |

### LEASE: (1CED62)  CCL&T 3-7 #1    County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Survey, DOC Hearings, Permits* | | | | | |
| 133266 | Keith D. Peterson & Company, Inc.- Surety Bond | 1 | 65.78 | 65.78 | 4.11 |
| *Instru/Monitoring & Automation* | | | | | |
| 1148442 | SPL, Inc. | 1 | 78.00 | | |
| 1148452 | SPL, Inc. | 1 | 36.48 | | |
| 1148690 | SPL, Inc. | 1 | 150.88 | | |
| 2030011071 | SPL, Inc. | 1 | 54.00 | | |
| 2030012162 | SPL, Inc. | 1 | 64.00 | | |
| 2030012598 | SPL, Inc. | 1 | 64.00 | | |
| 2030012598 | SPL, Inc. | 1 | 64.00 | 511.36 | 31.96 |
| *Chemicals* | | | | | |
| 908611583 | Baker Hughes, a GE Company, LLC | 1 | 1,253.45 | 1,253.45 | 78.34 |
| *Company Pumping - Gauging* | | | | | |
| ALPU0118 | Pumper Time and Mileage - Young/Davis/Hester/Hinote/Kinsey/Hoomes/Hart/Blackman | 1 | 1,609.16 | 1,609.16 | 100.57 |
| *Repairs & Maint-Surface Equip* | | | | | |
| WMR18-3532 | Whirlwind Methane Recovery Systems, LLC | 1 | 270.00 | | |
| 11843 | S&S Construction, LLC | 1 | 73.60 | | |
| 11882 | S&S Construction, LLC | 1 | 92.00 | | |
| 0085 | Southern Erosion Control | 1 | 188.53 | | |
| 0086 | Southern Erosion Control | 1 | 110.13 | 734.26 | 45.90 |
| *Repairs & Maint/Sub-Surface Eq* | | | | | |
| 98-19611 | Jimco Pumps | 1 | 4,758.34 | 4,758.34 | 297.39 |
| *Salt Water Disposal* | | | | | |
| 11882 | S&S Construction, LLC | 1 | 368.00 | | |
| 2018-01-003 | Wastewater Disposal Services, Inc. | 1 | 84.00 | 452.00 | 28.25 |
| *Utilities* | | | | | |
| 613710064 | Southern Pine Electric Cooperative | 1 | 4,785.77 | 4,785.77 | 299.11 |
| *Vacuum Truck* | | | | | |
| 11769 | S&S Construction, LLC | 1 | 92.00 | | |
| 11838 | S&S Construction, LLC | 1 | 276.00 | 368.00 | 23.00 |
| *Regulatory Costs & Fees* | | | | | |
| 121417396 | Tom Joiner & Associates Inc. | 1 | 607.54 | | |
| 122017396 | Tom Joiner & Associates Inc. | 1 | 250.55 | 858.09 | 53.63 |
| *COPAS Overhead* | | | | | |
| RBO33618 | Adm Overhead - Producing | 1 | 1,085.54 | 1,085.54 | 67.85 |
| | **Total Lease Operating Expense** | | | **16,481.75** | **1,030.11** |
| **Geological & Geophysical** | | | | | |
| *Geological* | | | | | |
| 14131693 RI | Weatherford Laboratories, Inc. | 1 | 174.00 | 174.00 | 10.87 |
| | **Total Geological & Geophysical** | | | **174.00** | **10.87** |
| **Tangible Completion Costs** | | | | | |
| *Tank Battery InstallationCosts* | | | | | |
| 727 | Quitman Tank Solutions LLC | 1 | 661.05 | 661.05 | 41.32 |
| | **Total Tangible Completion Costs** | | | **661.05** | **41.32** |
| | **Total Expenses for LEASE** | | | **17,316.80** | **1,082.30** |

| LEASE Summary: | Wrk Int | Expenses | You Owe |
|---|---|---|---|
| 1CED62 | 0.06250000 | 1,082.30 | 1,082.30 |

2

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA  71101
(318)227-8668

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX  75711

Account:  ROO802

Date:  02/28/2018

**Account: ROO802 - Statement of Account:**    *800 669*

| Date | Reference | Description | Charges | Credits |
|------|-----------|-------------|---------|---------|
| 01/31/2018 | | Balance Forward | 1,633.29 | |
| 02/05/2018 | 9074 | Payment-Thank You! Ck# 43285 - paid by Roosth Production Company check | | (550.99) |
| 02/26/2018 | 9110 | Payment-Thank You! Ck# 43339 - paid by Roosth Production Company check | | (1,082.30) |
| | | New Balance Forward | 0.00 | |

**Summary by LEASE:**

| Property# | Description | | Expenses | You Owe |
|-----------|-------------|--|----------|---------|
| 1CED62 | CCL&T 3-7 #1 | *492000.001* | 1,045.17 | 1,045.17 |
| | | Totals: | 1,045.17 | 1,045.17 |

PLEASE PAY THIS AMOUNT -------------------^

**Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.**

From:  Sklar Exploration Co., L.L.C.
To:    Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 02/28/2018
Account: ROO802   Page   2

## LEASE: (1CED62)  CCL&T 3-7 #1   County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Location Clean Up/Pit Closure* | | | | | |
| 0092 | Southern Erosion Control | 1 | 2,024.00 | 2,024.00 | 126.50 |
| *Instru/Monitoring & Automation* | | | | | |
| 1150318 | SPL, Inc. | 1 | 172.50 | | |
| 1150550 | SPL, Inc. | 1 | 98.64 | | |
| 1151990 | SPL, Inc. | 1 | 38.82 | | |
| 1152370 | SPL, Inc. | 1 | 98.46 | 408.42 | 25.53 |
| *Company Pumping - Gauging* | | | | | |
| ALPU0218 | Pumper Time and Mileage - Young/Davis/Hester/Hinote/Kinsey/Hoomes/Hart/Blackman | 1 | 1,447.19 | 1,447.19 | 90.45 |
| *Repairs & Maint-Surface Equip* | | | | | |
| 0081 | Southern Erosion Control | 1 | 101.07 | | |
| 1150755 | SPL, Inc. | 1 | 100.42 | | |
| WMR18-3536 | Whirlwind Methane Recovery Systems, LLC | 1 | 270.00 | | |
| 98-19933 | Jimco Pumps | 1 | 2,495.24 | 2,966.73 | 185.42 |
| *Repairs & Maint/Sub-Surface Eq* | | | | | |
| 98-19933 | Jimco Pumps | 1 | 593.60 | 593.60 | 37.10 |
| *Salt Water Disposal* | | | | | |
| 2018-02-002 | Wastewater Disposal Services, Inc. | 1 | 91.00 | | |
| 12036 | S&S Construction, LLC | 1 | 368.00 | 459.00 | 28.68 |
| *Utilities* | | | | | |
| 613710064 | Southern Pine Electric Cooperative | 1 | 5,559.72 | 5,559.72 | 347.49 |
| *Vacuum Truck* | | | | | |
| 11974 | S&S Construction, LLC | 1 | 276.00 | | |
| 12014 | S&S Construction, LLC | 1 | 460.00 | 736.00 | 46.00 |
| *COPAS Overhead* | | | | | |
| RBO33812 | Adm Overhead - Producing | 1 | 1,085.54 | 1,085.54 | 67.84 |
| | **Total Lease Operating Expense** | | | **15,280.20** | **955.01** |
| **Leasehold Costs** | | | | | |
| *Legal Fees* | | | | | |
| 405053 | Armbrecht Jackson LLP | 1 | 1,346.50 | | |
| 405157 | Armbrecht Jackson LLP | 1 | 96.00 | 1,442.50 | 90.16 |
| | **Total Leasehold Costs** | | | **1,442.50** | **90.16** |
| | **Total Expenses for LEASE** | | | **16,722.70** | **1,045.17** |

| LEASE Summary: | Wrk Int | Expenses | You Owe |
|---|---|---|---|
| 1CED62 | 0.06250000 | 1,045.17 | 1,045.17 |

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA  71101
(318)227-8668

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX  75711

Account: ROO802

Date: 03/31/2018

**Account: ROO802 - Statement of Account:**    *800069*

| Date | Reference | Description | Charges | Credits |
|------|-----------|-------------|---------|---------|
| 02/28/2018 | | Balance Forward | 1,045.17 | |
| 03/26/2018 | 9167 | Payment-Thank You! Ck# 43408 - paid by Roosth Production Company check | | (1,045.17) |
| | | New Balance Forward | 0.00 | |

**Summary by LEASE:**

| Property# | Description | Expenses | You Owe |
|-----------|-------------|----------|---------|
| 1CED62 | CCL&T 3-7 #1  *492000.001* | 3,065.04 | 3,065.04 |
| | Totals: | 3,065.04 | 3,065.04 |

**PLEASE PAY THIS AMOUNT** ⟵- - - - - - - - - - - - - - - - ^

*250-800    2366.67*
*260-800    698,37*

From:   Sklar Exploration Co., L.L.C.

To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 03/31/2018

Account: ROO802   Page   2

### LEASE: (1CED62)  CCL&T 3-7 #1   County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Survey, DOC Hearings, Permits* | | | | | |
| LOC 11461 | Acstar Insurance Company | 1 | 16.67 | 16.67 | 1.04 |
| *Instru/Monitoring & Automation* | | | | | |
| 1152846 | SPL, Inc. | 1 | 170.63 | | |
| ARCI0010359 | Zedi US Inc. | 1 | 99.00 | | |
| 1153683 | SPL, Inc. | 1 | 98.46 | | |
| 2030012948 | SPL, Inc. | 1 | 64.00 | | |
| 0103127-IN | Stric-Lan Companies, LLC | 1 | 570.00 | 1,002.09 | 62.63 |
| *Chemicals* | | | | | |
| 908751757 | Baker Hughes, a GE Company, LLC | 1 | 1,253.45 | 1,253.45 | 78.34 |
| *Company Pumping - Gauging* | | | | | |
| ALPU0318 | Pumper Time and Mileage - Young/Davis/Hester/Hinote/Kinsey/Hoomes/Hart/Blackman | 1 | 1,479.36 | 1,479.36 | 92.46 |
| *Repairs & Maint-Surface Equip* | | | | | |
| F107701-IN | The McPherson Companies, Inc. | 1 | 55.51 | | |
| WMR18-3538 | Whirlwind Methane Recovery Systems, LLC | 1 | 270.00 | | |
| 28492 | Parker & Son, Inc. | 1 | 936.00 | 1,261.51 | 78.85 |
| *Utilities* | | | | | |
| 613710064 | Southern Pine Electric Cooperative | 1 | 4,607.78 | 4,607.78 | 287.98 |
| *Vacuum Truck* | | | | | |
| 12105 | S&S Construction, LLC | 1 | 460.00 | 460.00 | 28.75 |
| *COPAS Overhead* | | | | | |
| RBO33944 | Adm Overhead - Producing | 1 | 1,085.54 | 1,085.54 | 67.85 |
| *Miscellaneous* | | | | | |
| ALA801 | Alabama 811 invoice #118291 coded incorrectly by mistake | 1 | 7.50 | 7.50 | 0.47 |
| | **Total Lease Operating Expense** | | | 11,173.90 | 698.37 |
| **Tangible Completion Costs** | | | | | |
| *Compression* | | | | | |
| MTCC132 | Transfer Whirlwind Vapor Recovery Unit 20 HP from CCL&T 9-3 #1 to CCL&T 3-7 #1 | 1 | 37,866.80 | 37,866.80 | 2,366.67 |
| | **Total Tangible Completion Costs** | | | 37,866.80 | 2,366.67 |
| | **Total Expenses for LEASE** | | | 49,040.70 | 3,065.04 |

| LEASE Summary: | Wrk Int. | Expenses | You Owe |
|---|---|---|---|
| 1CED62 | 0.06250000 | 3,065.04 | 3,065.04 |

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA  71101
(318)227-8668

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX  75711

Account:  ROO802

Date:  04/30/2018

**Summary by LEASE:**

| Property# | Description | Expenses | You Owe |
|---|---|---|---|
| | Unpaid Previous Balance | *Pd 4/30* | 3,065.04 |
| 1CED62 | CCL&T 3-7 #1    *49 2000.001* | 958.15 | 958.15 |
| | Totals: | 958.15 | 4,023.19 |
| | **PLEASE PAY THIS AMOUNT** ----------------------^ | | |

RECEIVED
MAY 0 7 2018

Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.

2

From:  Sklar Exploration Co., L.L.C.  
To:    Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 04/30/2018  
Account: ROO802   Page  2

### LEASE: (1CED62) CCL&T 3-7 #1   County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Location Clean Up/Pit Closure* | | | | | |
| 27755 | 4-G Contractors, Inc. | 1 | 79.72 | 79.72 | 4.98 |
| *Instru/Monitoring & Automation* | | | | | |
| 1154351 | SPL, Inc. | 1 | 85.56 | | |
| 1154780 | SPL, Inc. | 1 | 40.98 | | |
| 1155040 | SPL, Inc. | 1 | 121.34 | | |
| ARCI0010490 | Zedi US Inc. | 1 | 99.00 | | |
| 1155425 | SPL, Inc. | 1 | 49.17 | | |
| 1156673 | SPL, Inc. | 1 | 98.64 | 494.69 | 30.92 |
| *Company Pumping - Gauging* | | | | | |
| ALPU0418 | Pumper Time and Mileage - Young/Davis/Hester/Hinote/Kinsey/Hoomes/Hart/Blackman | 1 | 1,455.85 | 1,455.85 | 90.99 |
| *Repairs & Maint-Surface Equip* | | | | | |
| 127826 | Union Oilfield Supply, Inc. | 1 | 462.16 | | |
| 0103163-IN | Stric-Lan Companies, LLC | 1 | 1,726.86 | | |
| WMR18-3541 | Whirlwind Methane Recovery Systems, LLC | 1 | 270.00 | 2,459.02 | 153.69 |
| *Salt Water Disposal* | | | | | |
| 12171 | S&S Construction, LLC | 1 | 368.00 | | |
| 2018-03-007 | Wastewater Disposal Services, Inc. | 1 | 84.00 | 452.00 | 28.25 |
| *Utilities* | | | | | |
| 613710064 | Southern Pine Electric Cooperative | 1 | 4,819.74 | 4,819.74 | 301.23 |
| *Vacuum Truck* | | | | | |
| 12125 | S&S Construction, LLC | 1 | 276.00 | | |
| 12203 | S&S Construction, LLC | 1 | 276.00 | | |
| 12231 | S&S Construction, LLC | 1 | 184.00 | 736.00 | 46.00 |
| *Regulatory Costs & Fees* | | | | | |
| 022818396 | Tom Joiner & Associates Inc. | 1 | 1,201.62 | 1,201.62 | 75.11 |
| *COPAS Overhead* | | | | | |
| RBO34340 | Adm Overhead - Producing | 1 | 1,101.82 | 1,101.82 | 68.86 |
| | **Total Lease Operating Expense** | | | **12,800.46** | **800.03** |
| **Tangible Completion Costs** | | | | | |
| *Tank Battery InstallationCosts* | | | | | |
| 23618 | H&H Construction, LLC | 1 | 2,530.00 | 2,530.00 | 158.12 |
| | **Total Tangible Completion Costs** | | | **2,530.00** | **158.12** |

**Total Expenses for LEASE**          15,330.46      958.15

| LEASE Summary: | Wrk Int | Expenses | You Owe |
|---|---|---|---|
| 1CED62 | 0.06250000 | 958.15 | 958.15 |

2

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA 71101
(318)227-8668

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX 75711

Account: ROO802

Date: 05/31/2018

*800669*

### Account: ROO802 - Statement of Account:

| Date | Reference | Description | Charges | Credits |
|------|-----------|-------------|---------|---------|
| 04/30/2018 | | Balance Forward | 4,023.19 | |
| 05/04/2018 | 9239 | Payment-Thank You! Ck# 43475 - paid by Roosth Production Company check | | (3,065.04) |
| 05/25/2018 | 9275 | Payment-Thank You! Ck# 43524 - paid by Roosth Production Company check | | (958.15) |
| | | New Balance Forward | 0.00 | |

### Summary by LEASE:

| Property# | Description | Expenses | You Owe |
|-----------|-------------|----------|---------|
| 1CED62 | CCL&T 3-7 #1   *492 000. 001* | 1,261.43 | 1,261.43 |
| | Totals: | 1,261.43 | 1,261.43 |

**PLEASE PAY THIS AMOUNT** ----------------------^

RECEIVED
JUN 06 2018

Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.

From:  Sklar Exploration Co., L.L.C.
To:    Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 05/31/2018
Account: ROO802    Page   2

### LEASE: (1CED62)  CCL&T 3-7 #1    County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|-----------|-------------|----------|-------------|-------|------------|
| **Lease Operating Expense** | | | | | |
| *Location Clean Up/Pit Closure* | | | | | |
| 30218 | H&H Construction, LLC- Pipe yard restoration | 1 | 74.24 | | |
| 30418 | H&H Construction, LLC- Build pipe racks for laydown yard | 1 | 93.70 | | |
| 30918 | H&H Construction, LLC- Pipe yard restoration | 1 | 41.93 | | |
| 0484-0004866 | Republic Services #808 | 1 | 1.90 | | |
| 0808-0005619 | Republic Services #808 | 1 | 33.53 | | |
| 330 | Vegetation Management Services | 1 | 450.00 | | |
| 332 | Vegetation Management Services- Pipe yard/valve station | 1 | 15.74 | | |
| 41318 | H&H Construction, LLC | 1 | 40.67 | 751.71 | 46.98 |
| *Instru/Monitoring & Automation* | | | | | |
| 1156781 | SPL, Inc. | 1 | 172.50 | 172.50 | 10.78 |
| *Chemicals* | | | | | |
| 908950160 | Baker Hughes, a GE Company, LLC | 1 | 1,278.52 | 1,278.52 | 79.91 |
| *Company Pumping - Gauging* | | | | | |
| ALPU0518 | Pumper Time and Mileage - Young/Davis/Hester/Hinote/Kinsey/Hoomes/Hart/Blackman | 1 | 1,495.63 | 1,495.63 | 93.48 |
| *Telephone & Communications* | | | | | |
| 18050100844 | Your Message Center, Inc. | 1 | 1.37 | 1.37 | 0.08 |
| *Logging & Wireline* | | | | | |
| 252 | Slickline South, LLC | 1 | 4,721.20 | 4,721.20 | 295.08 |
| *Repairs & Maint-Surface Equip* | | | | | |
| 20185755 | GE Oil & Gas- Grease/inspect well valves | 1 | 194.16 | 194.16 | 12.13 |
| *Repairs & Maint/Sub-Surface Eq* | | | | | |
| 98-20317 | Jimco Pumps | 1 | 1,381.18 | | |
| 98-20332 | Jimco Pumps | 1 | 20.14 | 1,401.32 | 87.59 |
| *Salt Water Disposal* | | | | | |
| 12265 | S&S Construction, LLC | 1 | 368.00 | | |
| 2018-04-009 | Wastewater Disposal Services, Inc. | 1 | 77.00 | | |
| 2018-05-004 | Wastewater Disposal Services, Inc. | 1 | 91.00 | 536.00 | 33.50 |
| *Utilities* | | | | | |
| 613710064 | Southern Pine Electric Cooperative | 1 | 5,526.23 | 5,526.23 | 345.39 |
| *Vacuum Truck* | | | | | |
| 12289 | S&S Construction, LLC | 1 | 276.00 | | |
| 51915 | Kelley Brothers Contractors, Inc. | 1 | 237.50 | | |
| 51959 | Kelley Brothers Contractors, Inc. | 1 | 427.50 | | |
| 52000 | Kelley Brothers Contractors, Inc. | 1 | 285.00 | 1,226.00 | 76.62 |
| *Regulatory Costs & Fees* | | | | | |
| 042318396 | Tom Joiner & Associates Inc. | 1 | 331.41 | 331.41 | 20.71 |
| *COPAS Overhead* | | | | | |
| RBO34472 | Adm Overhead - Producing | 1 | 1,101.82 | 1,101.82 | 68.87 |
| | **Total Lease Operating Expense** | | | **18,737.87** | **1,171.12** |
| **Insurance** | | | | | |
| *Insurance* | | | | | |
| 1617ADDP | 16-17 Add'l Premium for Inland Marine | 1 | 1,444.93 | 1,444.93 | 90.31 |
| | **Total Insurance** | | | **1,444.93** | **90.31** |
| | **Total Expenses for LEASE** | | | **20,182.80** | **1,261.43** |

| LEASE Summary: | Wrk Int | Expenses | You Owe |
|----------------|---------|----------|---------|
| 1CED62 | 0.06250000 | 1,261.43 | 1,261.43 |

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA  71101
(318)227-8668

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX  75711

Account:  ROO802

Date:  06/30/2018

Summary by LEASE:     *800669*

| Property# | Description | Expenses | You Owe |
|---|---|---|---|
| | Unpaid Previous Balance     *pd 6/29* | | 1,261.43 |
| 1CED62 | CCL&T 3-7 #1     *492000.001* | 658.49 | 658.49 |
| | **Totals:** | 658.49 | 1,919.92 |
| | **PLEASE PAY THIS AMOUNT** | --------------^ | |



Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.

2

From:   Sklar Exploration Co., L.L.C.                                          For Billing Dated 06/30/2018
To:     Roosth 806, Ltd, a Texas Ltd Partnership                              Account: ROO802    Page  2

### LEASE: (1CED62)  CCL&T 3-7 #1   County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Location Clean Up/Pit Closure* | | | | | |
| 0484-0004879 | Republic Services #808 | 1 | 1.92 | 1.92 | 0.12 |
| *Instru/Monitoring & Automation* | | | | | |
| 1158969 | SPL, Inc. | 1 | 200.00 | | |
| ARCI0010614 | Zedi US Inc. | 1 | 99.00 | | |
| ARCI0010718 | Zedi US Inc. | 1 | 99.00 | 398.00 | 24.88 |
| *Chemicals* | | | | | |
| 909107617 | Baker Hughes, a GE Company, LLC-Paraffin Inhibitor | 1 | 1,278.52 | 1,278.52 | 79.90 |
| *Company Pumping - Gauging* | | | | | |
| ALPU0618 | Pumper Time and Mileage - Young/Davis/Hester/Hinote/Kinsey/Hoomes/Hart/Blackman | 1 | 1,493.34 | 1,493.34 | 93.34 |
| *Telephone & Communications* | | | | | |
| 18060100844 | Your Message Center, Inc. | 1 | 1.37 | 1.37 | 0.08 |
| *Contract Labor* | | | | | |
| 52223 | Kelley Brothers Contractors, Inc.- Haul forklift/unload pipe | 1 | 7.50 | 7.50 | 0.47 |
| *Logging & Wireline* | | | | | |
| 41818 | H&H Construction, LLC-crane for lubricator | 1 | 1,300.00 | 1,300.00 | 81.25 |
| *Utilities* | | | | | |
| 613710064 | Southern Pine Electric Cooperative | 1 | 4,858.42 | 4,858.42 | 303.65 |
| *Vacuum Truck* | | | | | |
| 52218 | Kelley Brothers Contractors, Inc. | 1 | 95.00 | 95.00 | 5.94 |
| *COPAS Overhead* | | | | | |
| RBO34680 | Adm Overhead - Producing | 1 | 1,101.82 | 1,101.82 | 68.86 |
| | **Total Lease Operating Expense** | | | **10,535.89** | **658.49** |

| LEASE Summary: | Wrk Int | Expenses | You Owe |
|---|---|---|---|
| 1CED62 | 0.06250000 | 658.49 | 658.49 |

2

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA  71101
(318)227-8668

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX  75711

Account: ROO802

Date: 07/31/2018

**Account: ROO802 - Statement of Account:**   *800 669*

| Date | Reference | Description | Charges | Credits |
|---|---|---|---|---|
| 06/30/2018 | | Balance Forward | 1,919.92 | |
| 07/05/2018 | 9363 | Payment-Thank You! Ck# 43600 - paid by Roosth Production Company check | | (1,261.43) |
| 07/30/2018 | 9416 | Payment-Thank You! Ck# 43658 - paid by Roosth Production Company check | | (658.49) |
| | | New Balance Forward | 0.00 | |

**Summary by LEASE:**

| Property# | Description | Expenses | You Owe |
|---|---|---|---|
| 1CED62 | CCL&T 3-7 #1  *492 000, 001* | 1,139.08 | 1,139.08 |
| | **Totals:** | 1,139.08 | 1,139.08 |

**PLEASE PAY THIS AMOUNT** ----------------------^

AUG 0 7 2018

Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.

2

From:  Sklar Exploration Co., L.L.C.
To:    Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 07/31/2018
Account: ROO802   Page   2

### LEASE: (1CED62)  CCL&T 3-7 #1   County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Survey, DOC Hearings, Permits* | | | | | |
| 136265 | Fletcher Petroleum Corp | 1 | 2,552.33 | 2,552.33 | 159.52 |
| *Location Clean Up/Pit Closure* | | | | | |
| 0484-0004940 | Republic Services #808 | 1 | 1.94 | 1.94 | 0.12 |
| *Instru/Monitoring & Automation* | | | | | |
| 1160482 | SPL, Inc. | 1 | 100.71 | | |
| 1161076 | SPL, Inc. | 1 | 156.92 | | |
| 2030013543 | SPL, Inc. | 1 | 64.00 | | |
| ARCI0010819 | Zedi US Inc. | 1 | 99.00 | 420.63 | 26.29 |
| *Chemicals* | | | | | |
| 909170882 | Baker Hughes, a GE Company, LLC-Paraffin Inhibitor | 1 | 1,278.52 | 1,278.52 | 79.91 |
| *Company Pumping - Gauging* | | | | | |
| 072718 | Mark Schebler | 1 | 3.57 | | |
| ALPU0718 | Pumper Time and Mileage - Young/Davis/Hester/Hinote/Kinsey/Hoomes/Hart/Blackman | 1 | 1,506.84 | 1,510.41 | 94.40 |
| *Telephone & Communications* | | | | | |
| 18070100844 | Your Message Center, Inc. | 1 | 1.37 | 1.37 | 0.09 |
| *Transportation/Trucking* | | | | | |
| 52339 | Kelley Brothers Contractors, Inc.- Unit 244 to pipeyard | 1 | 17.50 | 17.50 | 1.09 |
| *Safety & H2S Training* | | | | | |
| 14420 | Covington Fire Protection | 1 | 80.00 | | |
| 14477 | Covington Fire Protection | 1 | 120.00 | 200.00 | 12.50 |
| *Repairs & Maint-Surface Equip* | | | | | |
| 10435694 | Tool Pushers Supply Co. | 1 | 93.52 | | |
| WMR18-3544 | Whirlwind Methane Recovery Systems, LLC- VRU | 1 | 270.00 | | |
| WMR18-3557 | Whirlwind Methane Recovery Systems, LLC | 1 | 270.00 | | |
| WMR18-3567 | Whirlwind Methane Recovery Systems, LLC- VRU | 1 | 1,008.00 | 1,641.52 | 102.59 |
| *Utilities* | | | | | |
| 613710064 | Southern Pine Electric Cooperative | 1 | 5,197.17 | 5,197.17 | 324.83 |
| *Vacuum Truck* | | | | | |
| 52342 | Kelley Brothers Contractors, Inc. | 1 | 475.00 | 475.00 | 29.68 |
| *COPAS Overhead* | | | | | |
| RBO34894 | Adm Overhead - Producing | 1 | 1,101.82 | 1,101.82 | 68.87 |
| | **Total Lease Operating Expense** | | | **14,398.21** | **899.89** |
| **Insurance** | | | | | |
| *Insurance* | | | | | |
| 18-19 IN | 2018-2019 Inland Marine Insurance | 1 | 1,290.86 | | |
| 18-19 GL | 2018-2019 General Liability and Excess Umbrella | 1 | 1,702.86 | 2,993.72 | 187.11 |
| 18-19OEE | 2018-2019 OEE | INS02 | 752.80 | 752.80 | 52.08 |
| | **Total Insurance** | | | **3,746.52** | **239.19** |

| | | | | Total | Your Share |
|---|---|---|---|---|---|
| | **Total Expenses for LEASE** | | | **18,144.73** | **1,139.08** |

| Billing Summary by Deck/AFE | | | | Total | |
|---|---|---|---|---|---|
| | AWPO Deck | 1 | 0.06250000 | 17,391.93 | 1,087.00 |
| | Insurance -AWPO | INS02 | 0.06917932 | 752.80 | 52.08 |

| LEASE Summary | Wrk Int | Expenses | You Owe |
|---|---|---|---|
| 1CED62 | multiple | 1,139.08 | 1,139.08 |

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA  71101
(318)227-8668

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX  75711

Account:  ROO802

Date:  08/31/2018

## Summary by LEASE:

*800669*

| Property# | Description | Expenses | You Owe |
|---|---|---|---|
| | Unpaid Previous Balance | | 1,139.08 |
| 1CED62 | CCL&T 3-7 #1    *492000.001* | 841.33 | 841.33 |
| | Totals: | 841.33 | 1,980.41 |
| | **PLEASE PAY THIS AMOUNT** | ------------------------^ | |

*Pd 8/30*

SEP 1 2 2018

Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.

2

| From: | Sklar Exploration Co., L.L.C. | | For Billing Dated 08/31/2018 |
| To: | Roosth 806, Ltd, a Texas Ltd Partnership | | Account: ROO802   Page   2 |

### LEASE: (1CED62)  CCL&T 3-7 #1   County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| ***Location Preparation/Dirt Work*** | | | | | |
| 0129 | Southern Erosion Control- Repair roads, re-cut ditch | 1 | 65.04 | 65.04 | 4.07 |
| ***Location Clean Up/Pit Closure*** | | | | | |
| 0484-0004950 | Republic Services #808 | 1 | 1.94 | | |
| 0808-0005746 | Republic Services #808 | 1 | 9.96 | 11.90 | 0.74 |
| ***Engineering & Supervision*** | | | | | |
| TM0818CC | Operations Engineer Time - Campbell | 1 | 67.08 | 67.08 | 4.19 |
| ***Instru/Monitoring & Automation*** | | | | | |
| 1163017 | SPL, Inc. | 1 | 200.00 | | |
| ARCI0010948 | Zedi US Inc. | 1 | 99.00 | 299.00 | 18.69 |
| ***Company Pumping - Gauging*** | | | | | |
| ALPU0818 | Pumper Time and Mileage - Young/Davis/Hester/Hinote/Kinsey/Hoomes/Hart/Blackman | 1 | 1,495.85 | 1,495.85 | 93.49 |
| ***Telephone & Communications*** | | | | | |
| 18080100844 | Your Message Center, Inc. | 1 | 1.37 | 1.37 | 0.09 |
| ***Contract Labor*** | | | | | |
| 52603 | Kelley Brothers Contractors, Inc.- Furnish loader, operator, helper to move pipe on yard & load trucks | 1 | 115.35 | 115.35 | 7.20 |
| ***Repairs & Maint-Surface Equip*** | | | | | |
| 98-20905 | Jimco Pumps | 1 | 1,780.80 | | |
| WMR18-3578 | Whirlwind Methane Recovery Systems, LLC | 1 | 270.00 | | |
| WMR18-3579 | Whirlwind Methane Recovery Systems, LLC | 1 | 270.00 | | |
| 148470 | The McPherson Companies, Inc.- Gear oil | 1 | 57.38 | 2,378.18 | 148.64 |
| ***Repairs & Maint/Sub-Surface Eq*** | | | | | |
| 98-20905 | Jimco Pumps- Jet & power oil pump parts | 1 | 1,410.86 | 1,410.86 | 88.18 |
| ***Utilities*** | | | | | |
| 613710064 | Southern Pine Electric Cooperative | 1 | 5,704.58 | 5,704.58 | 356.54 |
| **Sales/Use Tax** | | | | | |
| 0718ALA | AL sales/use tax not paid by vendor | 1 | 14.08 | 14.08 | 0.88 |
| ***Regulatory Costs & Fees*** | | | | | |
| 052918396 | Tom Joiner & Associates Inc.- Air permits | 1 | 110.27 | | |
| 053118396 | Tom Joiner & Associates Inc.- Air permits | 1 | 81.25 | | |
| 071918396 | Tom Joiner & Associates Inc. | 1 | 604.69 | 796.21 | 49.76 |
| ***COPAS Overhead*** | | | | | |
| RBO35110 | Adm Overhead - Producing | 1 | 1,101.82 | 1,101.82 | 68.86 |
| | **Total Lease Operating Expense** | | | **13,461.32** | **841.33** |

| LEASE Summary: | Wrk Int | | Expenses | You Owe |
|---|---|---|---|---|
| 1CED62 | 0.06250000 | | 841.33 | 841.33 |

2

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA  71101
(318)227-8668

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX  75711

Account:  ROO802

Date:  09/30/2018

## Account: ROO802 - Statement of Account:    *800669*

| Date | Reference | Description | Charges | Credits |
|------|-----------|-------------|---------|---------|
| 08/31/2018 | | Balance Forward | 1,980.41 | |
| 09/04/2018 | 9484 | Payment-Thank You! Ck# 43711 - paid by Roosth Production Company check | | (1,139.08) |
| | | New Balance Forward | 841.33 | |

*Pd 10/3*

## Summary by LEASE:

| Property# | Description | Expenses | You Owe |
|-----------|-------------|----------|---------|
| | Unpaid Previous Balance | | 841.33 |
| 1CED62 | CCL&T 3-7 #1   *492000.001* | 682.07 | 682.07 |
| | Totals: | 682.07 | 1,523.40 |

**PLEASE PAY THIS AMOUNT** ---------------------^

OCT 05 2018

Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.

From:  Sklar Exploration Co., L.L.C.
To:    Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 09/30/2018
Account: ROO802    Page   2

## LEASE: (1CED62)  CCL&T 3-7 #1   County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Location Clean Up/Pit Closure* | | | | | |
| 0484-0004961 | Republic Services #808 | 1 | 2.03 | 2.03 | 0.13 |
| *Instru/Monitoring & Automation* | | | | | |
| 1165664 | SPL, Inc. | 1 | 203.46 | | |
| ARCI0011032 | Zedi US Inc. | 1 | 99.00 | 302.46 | 18.90 |
| *Company Pumping - Gauging* | | | | | |
| ALPU0918 | Pumper Time and Mileage - Young/Davis/Hester/Hinote/Kinsey/Hoomes/Hart/Blackman | 1 | 1,488.97 | 1,488.97 | 93.06 |
| *Telephone & Communications* | | | | | |
| 18090100844 | Your Message Center, Inc. | 1 | 1.37 | 1.37 | 0.09 |
| *Pipeline Expense* | | | | | |
| 20190782 | GE Oil & Gas- Pipeline valve maintenance | 1 | 191.16 | 191.16 | 11.94 |
| *Repairs & Maint-Surface Equip* | | | | | |
| WMR18-3587 | Whirlwind Methane Recovery Systems, LLC | 1 | 270.00 | | |
| 22104 | Carnley Electric Inc- Replace control fuse on power oil pump | 1 | 270.00 | 540.00 | 33.75 |
| *Salt Water Disposal* | | | | | |
| 2018-08-006 | Wastewater Disposal Services, Inc. | 1 | 70.00 | | |
| 52735 | Kelley Brothers Contractors, Inc. | 1 | 723.50 | 793.50 | 49.60 |
| *Utilities* | | | | | |
| 613710064 | Southern Pine Electric Cooperative | 1 | 5,720.39 | 5,720.39 | 357.52 |
| *Vacuum Truck* | | | | | |
| 52735 | Kelley Brothers Contractors, Inc. | 1 | 572.50 | 572.50 | 35.78 |
| *Regulatory Costs & Fees* | | | | | |
| 082718396 | Tom Joiner & Associates Inc.- Air Permits | 1 | 196.11 | 196.11 | 12.26 |
| *COPAS Overhead* | | | | | |
| RBO35323 | Adm Overhead - Producing | 1 | 1,101.82 | 1,101.82 | 68.86 |
| *Miscellaneous* | | | | | |
| EWCC0818 | EWB credit card 8/2018 Clayton Campbell- No TP signs | 1 | 2.84 | 2.84 | 0.18 |
| **Total Lease Operating Expense** | | | | **10,913.15** | **682.07** |

| LEASE Summary: | Wrk Int | Expenses | You Owe |
|---|---|---|---|
| 1CED62 | 0.06250000 | 682.07 | 682.07 |

2

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA  71101
(318)227-8668

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX  75711

Account: ROO802

Date: 10/31/2018

Account: ROO802 - Statement of Account:    *800669*

| Date | Reference | Description | Charges | Credits |
|------|-----------|-------------|---------|---------|
| 09/30/2018 | | Balance Forward | 1,523.40 | |
| 10/09/2018 | 9555 | Payment-Thank You! Ck# 43776 - paid by Roosth Production Company check | | (841.33) |
| | | New Balance Forward | 682.07 | |

**Summary by LEASE:**

| Property# | Description | Expenses | You Owe |
|-----------|-------------|----------|---------|
| | Unpaid Previous Balance | | 682.07 |
| 1CED62 | CCL&T 3-7 #1   *492000.001* | 981.86 | 981.86 |
| | Totals: | 981.86 | 1,663.93 |

PLEASE PAY THIS AMOUNT

*Ad 10/31*

Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.

From:   Sklar Exploration Co., L.L.C.
To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 10/31/2018
Account: ROO802   Page   2

### LEASE: (1CED62)  CCL&T 3-7 #1   County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Location Clean Up/Pit Closure* | | | | | |
| 0484-0005020 | Republic Services #808 | 1 | 1.94 | 1.94 | 0.12 |
| *Engineering & Supervision* | | | | | |
| EWJY0918 | East West Credit Card- Josh Young 09-18- PSI sensing line replacement on triplex pump | 1 | 77.72 | 77.72 | 4.86 |
| *Instru/Monitoring & Automation* | | | | | |
| 1166843 | SPL, Inc.- Quarterly gas sampling | 1 | 89.55 | | |
| 1167549 | SPL, Inc. | 1 | 171.43 | 260.98 | 16.31 |
| *Chemicals* | | | | | |
| 909366849 | Baker Hughes, a GE Company, LLC- Paraffin Inhibitor | 1 | 1,278.52 | 1,278.52 | 79.91 |
| *Company Pumping - Gauging* | | | | | |
| ALPU1018 | Pumper Time and Mileage - Young/Davis/Hester/Hinote/Kinsey/Hoomes/Hart/Blackman | 1 | 1,502.08 | 1,502.08 | 93.88 |
| *Telephone & Communications* | | | | | |
| 18100100844 | Your Message Center, Inc.- Monthly answering service | 1 | 1.41 | 1.41 | 0.09 |
| *Logging & Wireline* | | | | | |
| 318 | Slickline South, LLC | 1 | 4,311.20 | 4,311.20 | 269.45 |
| *Repairs & Maint-Surface Equip* | | | | | |
| WMR18-3591 | Whirlwind Methane Recovery Systems, LLC | 1 | 270.00 | | |
| 130832 | Union Oilfield Supply, Inc.- Throttle pilot w/gauges | 1 | 119.25 | | |
| WMR18-3596 | Whirlwind Methane Recovery Systems, LLC- VRU | 1 | 272.00 | 661.25 | 41.32 |
| *Salt Water Disposal* | | | | | |
| 52824 | Kelley Brothers Contractors, Inc. | 1 | 308.75 | | |
| 2018-09-005 | Wastewater Disposal Services, Inc. | 1 | 91.00 | 399.75 | 24.99 |
| *Utilities* | | | | | |
| 613710064 | Southern Pine Electric Cooperative | 1 | 4,884.30 | 4,884.30 | 305.27 |
| *Vacuum Truck* | | | | | |
| 52824 | Kelley Brothers Contractors, Inc. | 1 | 308.75 | | |
| 53029 | Kelley Brothers Contractors, Inc. | 1 | 142.50 | 451.25 | 28.20 |
| *Regulatory Costs & Fees* | | | | | |
| 101518396 | Tom Joiner & Associates Inc.- Air permits | 1 | 197.98 | | |
| 101918396 | Tom Joiner & Associates Inc.- Air Permits | 1 | 555.05 | | |
| 102218396 | Tom Joiner & Associates Inc.- Air Permits | 1 | 204.34 | 957.37 | 59.84 |
| *COPAS Overhead* | | | | | |
| RBO35892 | Adm Overhead - Producing | 1 | 1,101.82 | 1,101.82 | 68.86 |
| | **Total Lease Operating Expense** | | | 15,889.59 | 993.10 |
| **Insurance** | | | | | |
| *Insurance* | | | | | |
| 1718NOCL | 17-18 No Claims Bonus | INS02 | 162.42- | 162.42- | 11.24- |
| | **Total Insurance** | | | 162.42- | 11.24- |
| | **Total Expenses for LEASE** | | | 15,727.17 | 981.86 |

| Billing Summary | AWPO Deck | 1 | 0.06250000 | 15,889.59 | 993.10 |
|---|---|---|---|---|---|
| by Deck/AFE | Insurance -AWPO | INS02 | 0.06917932 | 162.42- | 11.24- |

| LEASE Summary: | | Wrk Int | | Expenses | | You Owe |
|---|---|---|---|---|---|---|
| 1CED62 | | multiple | | 981.86 | | 981.86 |

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA  71101
(318)227-8668

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX  75711

Account:  ROO802

Date:  11/30/2018

### Account: ROO802 - Statement of Account:   *800669*

| Date | Reference | Description | Charges | Credits |
|------|-----------|-------------|---------|---------|
| 10/31/2018 | | Balance Forward | 1,663.93 | |
| 11/05/2018 | 9609 | Payment-Thank You! Ck# 43826 - paid by Roosth Production Company check | | (682.07) |
| | | New Balance Forward | ~~981.86~~ | |

### Summary by LEASE:

| Property# | Description | Expenses | You Owe |
|-----------|-------------|----------|---------|
| | Unpaid Previous Balance | | ~~981.86~~  *Pd 11/29* |
| 1CED62 | CCL&T 3-7 #1   *492000,001* | 864.32 | 864.32 |
| | **Totals:** | **864.32** | **1,846.18** |

**PLEASE PAY THIS AMOUNT**

DEC 1 0 2018

Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.

2

From: Sklar Exploration Co., L.L.C.
To: Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 11/30/2018
Account: ROO802    Page    2

## LEASE: (1CED62)  CCL&T 3-7 #1    County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Location Preparation/Dirt Work* | | | | | |
| 0152 | Southern Erosion Control- Repaired wash on main road to laydown yard | 1 | 52.61 | 52.61 | 3.29 |
| *Location Clean Up/Pit Closure* | | | | | |
| 0484-0005031 | Republic Services #808 | 1 | 1.96 | 1.96 | 0.12 |
| *Instru/Monitoring & Automation* | | | | | |
| 1169845 | SPL, Inc.- Calibrate/inspect Total Flow | 1 | 182.00 | | |
| 2030014027 | SPL, Inc.- Gas thru Heptanes | 1 | 64.00 | | |
| ARCI0011162 | Zedi US Inc. | 1 | 99.00 | | |
| ARCI0011252 | Zedi US Inc. | 1 | 99.00 | 444.00 | 27.75 |
| *Chemicals* | | | | | |
| 909410579 | Baker Hughes, a GE Company, LLC-salt chem | 1 | 147.69 | | |
| 909459183 | Baker Hughes, a GE Company, LLC-salt chem | 1 | 443.82 | 591.51 | 36.97 |
| *Company Pumping - Gauging* | | | | | |
| ALPU1018 | Pumper Time and Mileage - Young/Davis/Hester/Hinote/Kinsey/Hoomes/Hart/Blackman | 1 | 1,520.22 | 1,520.22 | 95.01 |
| *Telephone & Communications* | | | | | |
| 18110100844 | Your Message Center, Inc. | 1 | 1.41 | 1.41 | 0.09 |
| *Repairs & Maint-Surface Equip* | | | | | |
| 110118 | H&H Construction, LLC- Winter prep | 1 | 170.07 | | |
| 98-21557 | Jimco Pumps-triplex parts | 1 | 328.60 | 498.67 | 31.17 |
| *Repairs & Maint/Sub-Surface Eq* | | | | | |
| 98-21557 | Jimco Pumps- DH pump parts | 1 | 3,929.42 | 3,929.42 | 245.59 |
| *Utilities* | | | | | |
| 613710064 | Southern Pine Electric Cooperative | 1 | 5,115.88 | 5,115.88 | 319.74 |
| *Vacuum Truck* | | | | | |
| 53095 | Kelley Brothers Contractors, Inc. | 1 | 570.00 | 570.00 | 35.63 |
| *Sales/Use Tax* | | | | | |
| 1018ALA | AL sales/use tax not paid by vendor 10/2018 | 1 | 1.56 | 1.56 | 0.09 |
| *COPAS Overhead* | | | | | |
| RBO35969 | Adm Overhead - Producing | 1 | 1,101.82 | 1,101.82 | 68.87 |
| | **Total Lease Operating Expense** | | | **13,829.06** | **864.32** |

| LEASE Summary: | Wrk Int | Expenses | You Owe |
|---|---|---|---|
| 1CED62 | 0.06250000 | 864.32 | 864.32 |

2

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA  71101
(318)227-8668

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX  75711

Account:  ROO802

Date:  12/31/2018

### Account: ROO802 - Statement of Account:    *800669*

| Date | Reference | Description | Charges | Credits |
|------|-----------|-------------|---------|---------|
| 11/30/2018 | | Balance Forward | 1,846.18 | |
| 12/03/2018 | 9665 | Payment-Thank You! Ck# 43892 - paid by Roosth Production Company check | | (981.86) |
| | | New Balance Forward | ~~864.32~~ | |

### Summary by LEASE:

| Property# | Description | Expenses | You Owe |
|-----------|-------------|----------|---------|
| | Unpaid Previous Balance | | 864.32 *Pd 12/31* |
| 1CED62 | CCL&T 3-7 #1    *492,000,001* | ~~591.68~~ | 591.68 |
| | Totals: | **591.68** | ~~1,456.00~~ |

### PLEASE PAY ~~THIS AMOUNT~~ ---------------------^

*SB*

JAN 1 1 20'3

Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.

2

From: Sklar Exploration Co., L.L.C.
To: Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 12/31/2018
Account: ROO802   Page   2

## LEASE: (1CED62)  CCL&T 3-7 #1   County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Location Preparation/Dirt Work* | | | | | |
| 0163 | Southern Erosion Control- Repaired wash at laydown yard | 1 | 63.13 | 63.13 | 3.95 |
| *Location Clean Up/Pit Closure* | | | | | |
| 0484-0005042 | Republic Services #808 | 1 | 2.43 | | |
| 0808-0005893 | Republic Services #808 | 1 | 3.85 | 6.28 | 0.39 |
| *Instru/Monitoring & Automation* | | | | | |
| 1172157 | SPL, Inc.- Calibrate/inspect | 1 | 153.58 | | |
| ARCI0011376 | Zedi US Inc. | 1 | 99.00 | 252.58 | 15.78 |
| *Chemicals* | | | | | |
| 909600579 | Baker Hughes, a GE Company, LLC- Paraffin Inhibitor | 1 | 1,278.52 | 1,278.52 | 79.91 |
| *Company Pumping - Gauging* | | | | | |
| ALPU1218 | Pumper Time and Mileage - Young/Davis/Hester/Hinote/Kinsey/Hoomes/Hart/Blackman | 1 | 1,516.67 | 1,516.67 | 94.79 |
| *Telephone & Communications* | | | | | |
| 18120100844 | Your Message Center, Inc. | 1 | 1.41 | 1.41 | 0.09 |
| *Repairs & Maint-Surface Equip* | | | | | |
| WMR18-3604 | Whirlwind Methane Recovery Systems, LLC- VRU | 1 | 210.42 | 210.42 | 13.15 |
| *Utilities* | | | | | |
| 613710064 | Southern Pine Electric Cooperative | 1 | 5,036.06 | 5,036.06 | 314.76 |
| *COPAS Overhead* | | | | | |
| RBO36284 | Adm Overhead - Producing | 1 | 1,101.82 | 1,101.82 | 68.86 |
| **Total Lease Operating Expense** | | | | **9,466.89** | **591.68** |

| LEASE Summary: | Wrk Int | Expenses | You Owe |
|---|---|---|---|
| 1CED62 | 0.06250000 | 591.68 | 591.68 |

2

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA  71101
(303)541-1559

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX  75711

Account:  ROO802

Date:  01/31/2019

**Account: ROO802 - Statement of Account:**

| Date | Reference | Description | Charges | Credits |
|------|-----------|-------------|---------|---------|
| 12/31/2018 | | Balance Forward | 1,456.00 | |
| 01/07/2019 | 9723 | Payment-Thank You! Ck# 43987 - paid by Roosth Production Company check | | (864.32) |
| | | New Balance Forward | 591.68 | |

**Summary by LEASE:**

| Property# | Description | Expenses | | You Owe |
|-----------|-------------|----------|--|---------|
| | Unpaid Previous Balance | | | 591.68 |
| 1BRO04 | Southeast Brooklyn Oil Unit | 1,732.02 | | 1,732.02 |
| | Totals: | 1,732.02 | | 2,323.70 |

PLEASE PAY THIS AMOUNT

*[handwritten notes:]*

Sklar                    2/11

C C L & T  now
part of waterflood.

S E Brooklyn Oil
Unit
.0089...

per DD

*[handwritten on statement line:]* 492000. 300,  Pd 1/31

*[handwritten calculations on right:]*
260-800     1648.89
220-800      67.97
230-800       2.48
240-800      12.68

Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.

From:  Sklar Exploration Co., L.L.C.
To:    Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 01/31/2019
Account: ROO802   Page  2

**LEASE: (1BRO04)  Southeast Brooklyn Oil Unit   County: CONECUH, AL**

Expenses:

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Survey, DOC Hearings, Permits* | | | | | |
| 36049 | J & H Insurance Services, Inc.- AL Oil & Gas Bond | 1 | 43.10 | | |
| 36049 | J & H Insurance Services, Inc.- AL Oil & Gas Bond | 1 | 43.10 | | |
| 36049 | J & H Insurance Services, Inc.- AL Oil & Gas Bond | 1 | 43.10 | | |
| 36049 | J & H Insurance Services, Inc.- AL Oil & Gas Bond | 1 | 43.10 | | |
| 36049 | J & H Insurance Services, Inc.- AL Oil & Gas Bond | 1 | 43.10 | | |
| 36049 | J & H Insurance Services, Inc.- AL Oil & Gas Bond | 1 | 43.10 | | |
| 36049 | J & H Insurance Services, Inc.- AL Oil & Gas Bond | 1 | 43.10 | | |
| 36049 | J & H Insurance Services, Inc.- AL Oil & Gas Bond | 1 | 43.10 | | |
| 36049 | J & H Insurance Services, Inc.- AL Oil & Gas Bond | 1 | 43.10 | | |
| 36049 | J & H Insurance Services, Inc.- AL Oil & Gas Bond | 1 | 43.10 | 431.00 | 3.87 |
| *Location Clean Up/Pit Closure* | | | | | |
| 0484-0005101 | Republic Services #808 | 1 | 2.41 | | |
| 0484-0005101 | Republic Services #808 | 1 | 2.41 | | |
| 0484-0005101 | Republic Services #808 | 1 | 2.41 | | |
| 0484-0005101 | Republic Services #808 | 1 | 2.42 | | |
| 0484-0005101 | Republic Services #808 | 1 | 2.41 | | |
| 0808-0005971 | Republic Services #808 | 1 | 11.06 | | |
| 0808-0005971 | Republic Services #808 | 1 | 11.06 | | |
| 0808-0005971 | Republic Services #808 | 1 | 11.06 | | |
| 0808-0005971 | Republic Services #808 | 1 | 11.07 | | |
| 0808-0005971 | Republic Services #808 | 1 | 11.07 | | |
| 0484-0005110 | Republic Services #808 | 1 | 14.38 | 81.76 | 0.73 |
| *Engineering & Supervision* | | | | | |
| 123118 | Richard M. West- 12/16-31/2018 | 1 | 500.00 | | |
| 010319 | Richard M. West- 1/1-1/3/2019 | 1 | 500.00 | | |
| TM0119MM | Geologist Time - McDowell | 1 | 62.10 | | |
| TM0119CC | Operations Engineer Time - Campbell | 1 | 352.39 | 1,414.49 | 12.69 |
| *Instru/Monitoring & Automation* | | | | | |
| 1173508 | SPL, Inc.- Gas sample analysis | 1 | 118.86 | | |
| 1173508 | SPL, Inc.- Gas sample analysis | 1 | 118.86 | | |
| 1173508 | SPL, Inc.- Gas sample analysis | 1 | 118.86 | | |
| 1173508 | SPL, Inc.- Gas sample analysis | 1 | 118.86 | | |
| 1173508 | SPL, Inc.- Gas sample analysis | 1 | 118.86 | | |
| 1173775 | SPL, Inc.- Calibration | 1 | 152.70 | | |
| 1173775 | SPL, Inc.- Calibration | 1 | 152.70 | | |
| ARCI0011479 | Zedi US Inc. | 1 | 99.00 | | |
| ARCI0011497 | Zedi US Inc. | 1 | 99.00 | | |
| ARCI0011498 | Zedi US Inc. | 1 | 99.00 | | |
| ARCI0011498 | Zedi US Inc. | 1 | 99.00 | | |
| ARCI0011498 | Zedi US Inc. | 1 | 99.00 | | |
| ARCI0011499 | Zedi US Inc. | 1 | 99.00 | | |
| 90757015 | IHS Global, Inc.- Field Direct well setup fee | 1 | 240.00 | | |
| 2030014501 | SPL, Inc.- Gas thru Heptanes, Cylinder cleaning | 1 | 64.00 | | |
| 2030014501 | SPL, Inc.- Gas thru Heptanes, Cylinder cleaning | 1 | 64.00 | | |

From:  Sklar Exploration Co., L.L.C.
To:    Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 01/31/2019
Account: ROO802    Page    3

**LEASE: (1BRO04) Southeast Brooklyn Oil Unit    (Continued)**
**Expenses:    (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| 2030014501 | SPL, Inc.- Gas thru Heptanes, Cylinder cleaning | 1 | 64.00 | | |
| 2030014501 | SPL, Inc.- Gas thru Heptanes, Cylinder cleaning | 1 | 64.00 | | |
| 2030014501 | SPL, Inc.- Gas thru Heptanes, Cylinder cleaning | 1 | 64.00 | | |
| 2030014501 | SPL, Inc.- Gas thru Heptanes, Cylinder cleaning | 1 | 64.00 | 2,117.70 | 18.99 |
| ***Chemicals*** | | | | | |
| 18101 | White Resources LLC- P-278 | 1 | 940.75 | | |
| 18102 | White Resources LLC- P-278 | 1 | 658.53 | | |
| 18114 | White Resources LLC- P-278 | 1 | 376.30 | | |
| 18172 | White Resources LLC- P-278 | 1 | 470.38 | | |
| 18173 | White Resources LLC- P-278 | 1 | 1,317.05 | | |
| 18174 | White Resources LLC- P-278 | 1 | 658.53 | | |
| 18175 | White Resources LLC- P-278 | 1 | 752.60 | | |
| 18183 | White Resources LLC- P-278 | 1 | 658.53 | 5,832.67 | 52.32 |
| ***Company Pumping - Gauging*** | | | | | |
| ALPU0119 | Pumper Time and Mileage - Young/Davis/Hester/Hinote/Kinsey/Hoomes/Hart/Blackman | 1 | 13,366.31 | 13,366.31 | 119.90 |
| ***Telephone & Communications*** | | | | | |
| 19010100844 | Your Message Center, Inc. | 1 | 1.41 | | |
| 19010100844 | Your Message Center, Inc. | 1 | 1.41 | | |
| 19010100844 | Your Message Center, Inc. | 1 | 1.41 | | |
| 19010100844 | Your Message Center, Inc. | 1 | 1.41 | | |
| 19010100844 | Your Message Center, Inc. | 1 | 1.41 | 7.05 | 0.07 |
| ***Transportation/Trucking*** | | | | | |
| 53700 | Kelley Brothers Contractors, Inc.- Hauled pipe to pipe yard | 1 | 32.04 | 32.04 | 0.28 |
| ***Repairs & Maint-Surface Equip*** | | | | | |
| 98-21798 | Jimco Pumps- Pump parts | 1 | 1,780.80 | | |
| WMR18-3609 | Whirlwind Methane Recovery Systems, LLC- VRU | 1 | 270.00 | | |
| WMR18-3609 | Whirlwind Methane Recovery Systems, LLC- VRU | 1 | 270.00 | | |
| WMR18-3609 | Whirlwind Methane Recovery Systems, LLC- VRU | 1 | 540.00 | | |
| WMR18-3609 | Whirlwind Methane Recovery Systems, LLC- VRU | 1 | 270.00 | | |
| WMR18-3609 | Whirlwind Methane Recovery Systems, LLC- VRU | 1 | 270.00 | | |
| 22446 | Camley Electric Inc- Repaired flare ignitor | 1 | 360.00 | | |
| 0104051-IN | Stric-Lan Companies, LLC- Replace battery on POT | 1 | 459.07 | | |
| 0104054-IN | Stric-Lan Companies, LLC- Swapped sales/flare meters | 1 | 605.00 | | |
| 53738 | Kelley Brothers Contractors, Inc.- Winterize lines | 1 | 190.00 | | |
| 53702 | Kelley Brothers Contractors, Inc.- Winterize lines | 1 | 95.00 | | |
| 53703 | Kelley Brothers Contractors, Inc.- Winterize lines | 1 | 95.00 | | |
| 53705 | Kelley Brothers Contractors, Inc.- Winterize lines | 1 | 95.00 | | |
| 53706 | Kelley Brothers Contractors, Inc.- Winterize lines | 1 | 95.00 | | |
| 53743 | Kelley Brothers Contractors, Inc.- | 1 | 95.00 | | |

From:  Sklar Exploration Co., L.L.C.                For Billing Dated 01/31/2019
To:  Roosth 806, Ltd, a Texas Ltd Partnership        Account: ROO802   Page   4

**LEASE: (1BRO04)  Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| | Winterize lines | | | | |
| 53744 | Kelley Brothers Contractors, Inc.- Winterize lines | 1 | 95.00 | | |
| 22487 | Camley Electric Inc- Repaired flare ignitor | 1 | 270.00 | | |
| 11719 | H&H Construction, LLC- Insulate acquired Pruet wells for winter prep | 1 | 947.56 | | |
| 132246 | Union Oilfield Supply, Inc.- Pipe insulation, black poly | 1 | 663.54 | | |
| 132287 | Union Oilfield Supply, Inc.- Fluid filled gauge | 1 | 88.99 | | |
| 132288 | Union Oilfield Supply, Inc.- Fluid filled gauge | 1 | 88.99 | | |
| 132289 | Union Oilfield Supply, Inc.- Fluid filled gauge | 1 | 88.99 | | |
| 132290 | Union Oilfield Supply, Inc.- Fluid filled gauge | 1 | 88.99 | 7,821.93 | 70.17 |
| ***Repairs & Maint/Sub-Surface Eq*** | | | | | |
| 98-21790 | Jimco Pumps- Pump parts | 1 | 2,072.30 | | |
| 98-21791 | Jimco Pumps- Pump parts | 1 | 399.62 | 2,471.92 | 22.17 |
| ***Supplies*** | | | | | |
| 132024 | Union Oilfield Supply, Inc.- Turkish wipers | 1 | 23.79 | 23.79 | 0.21 |
| ***Salt Water Disposal*** | | | | | |
| 53598 | Kelley Brothers Contractors, Inc. | 1 | 924.50 | | |
| 2019-01-004 | Wastewater Disposal Services, Inc.- 1/1-15/2019 | 1 | 91.00 | | |
| 2019-01-004 | Wastewater Disposal Services, Inc.- 1/1-15/2019 | 1 | 182.00 | | |
| 53738 | Kelley Brothers Contractors, Inc. | 1 | 1,187.50 | | |
| 53751 | Kelley Brothers Contractors, Inc. | 1 | 380.00 | 2,765.00 | 24.81 |
| ***Utilities*** | | | | | |
| 613710046 | Southern Pine Electric Cooperative | 1 | 5,122.99 | | |
| 613710050 | Southern Pine Electric Cooperative | 1 | 4,978.50 | | |
| 613710057 | Southern Pine Electric Cooperative | 1 | 9,209.43 | | |
| 613710063 | Southern Pine Electric Cooperative | 1 | 154.44 | | |
| 613710064 | Southern Pine Electric Cooperative | 1 | 4,657.57 | 24,122.93 | 216.38 |
| ***Vacuum Truck*** | | | | | |
| 53598 | Kelley Brothers Contractors, Inc. | 1 | 285.00 | | |
| 53738 | Kelley Brothers Contractors, Inc.- POT | 1 | 475.00 | | |
| 53751 | Kelley Brothers Contractors, Inc.- POT | 1 | 285.00 | 1,045.00 | 9.38 |
| ***Sales/Use Tax*** | | | | | |
| 1218ALA | AL sales/use tax not paid by vendor- 12/2018 | 1 | 0.52 | 0.52 | 0.00 |
| ***Other Revenue Deductions*** | | | | | |
| 1218PLAM | 12-18 rejected load | 1 | 150.00 | 150.00 | 1.35 |
| ***COPAS Overhead*** | | | | | |
| RBO36664 | Adm Overhead - Producing | 1 | 13,887.00 | 13,887.00 | 124.57 |
| ***Miscellaneous*** | | | | | |
| 2019 | Alabama 811- 2019 membership | 1 | 68.76 | | |
| 11159 | Precision Signs- Sklar well signs | 1 | 366.65 | 435.41 | 3.90 |
| **Total Lease Operating Expense** | | | | **76,006.52** | **681.79** |

**Leasehold Costs**
   ***Legal Fees***

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| 407400 | Armbrecht Jackson LLP- Unitization | 1 | 7,577.14 | 7,577.14 | 67.97 |
| **Total Leasehold Costs** | | | | **7,577.14** | **67.97** |

From:   Sklar Exploration Co., L.L.C.
To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 01/31/2019
Account: ROO802   Page   5

**LEASE: (1BRO04)  Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Intangible Drilling Costs** | | | | | |
| *Survey, DOC Hearings, Permits* | | | | | |
| 67443 | Engineering Service- Plat revision | 1 | 276.00 | 276.00 | 2.48 |
| | **Total Intangible Drilling Costs** | | | **276.00** | **2.48** |
| **Intangible Completion Costs** | | | | | |
| *Engineering & Supervision Svcs* | | | | | |
| TM0119RW | Engineer Time - West | 1 | 1,413.75 | 1,413.75 | 12.68 |
| | **Total Intangible Completion Costs** | | | **1,413.75** | **12.68** |
| **Tangible Completion Costs** | | | | | |
| *Electrical & Control Systems* | | | | | |
| 1169722 | SPL, Inc.- Total Flow | 1 | 2,761.88 | | |
| 909626901 | Baker Hughes, a GE Company, LLC- Electric submersible pump | 1 | 105,051.54 | 107,813.42 | 967.10 |
| | **Total Tangible Completion Costs** | | | **107,813.42** | **967.10** |
| | **Total Expenses for LEASE** | | | **193,086.83** | **1,732.02** |

| LEASE Summary: | Wrk Int | Expenses | You Owe |
|---|---|---|---|
| 1BRO04 | 0.00897017 | 1,732.02 | 1,732.02 |

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA  71101
(303)541-1559

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX  75711

Account: __ROO802__

Date: __02/28/2019__

**Account: ROO802 - Statement of Account:**   *800 669*

| Date | Reference | Description | Charges | Credits |
|------|-----------|-------------|---------|---------|
| 01/31/2019 | | Balance Forward | 2,323.70 | |
| 02/04/2019 | 9782 | Payment-Thank You! Ck# 44046 - paid by Roosth Production Company check | | (591.68) |
| | | New Balance Forward | 1,732.02 | |

**Prepaid Balance by Project:**

| Property# | AFE# | Description | Beginning Balance | Pre-Pmts Applied | Balance Remaining |
|-----------|------|-------------|-------------------|------------------|-------------------|
| 1BRO04 | 309 | CCL&T 34-13 #1-WS | 6,323.97 | | 6,323.97 |
| 1BRO04 | 309-W | CCL&T 3-4 #1 | 618.05 | | 618.05 |
| | | **Prepaid Balance Totals:** | **6,942.02** | | **6,942.02** |

**Summary by LEASE:**

| Property# | Description | Expenses | Pre-Pmts Applied | You Owe |
|-----------|-------------|----------|------------------|---------|
| | Unpaid Previous Balance | | | 1,732.02 |
| 1BRO04 | Southeast Brooklyn Oil Unit | 891.78 | | 891.78 |
| | Totals: | 891.78 | | 2,623.80 |

**PLEASE PAY THIS AMOUNT** - - - - - - - - - - ^

*492,000.300*   *Pd 2/28*

*920-800   104.09*
*240·800    12.31*
*260·800   775.38*

From:   Sklar Exploration Co., L.L.C.
To:     Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 02/28/2019
Account: ROO802    Page   2

### LEASE: (1BRO04) Southeast Brooklyn Oil Unit    County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| **Survey, DOC Hearings, Permits** | | | | | |
| 012219396 | Tom Joiner & Associates Inc.- Oct-Nov 2018 Air Permits | 1 | 449.69 | | |
| 012219396 | Tom Joiner & Associates Inc.- Oct-Nov 2018 Air Permits | 1 | 449.69 | | |
| 012219396 | Tom Joiner & Associates Inc.- Oct-Nov 2018 Air Permits | 1 | 333.48 | | |
| 012219396 | Tom Joiner & Associates Inc.- Oct-Nov 2018 Air Permits | 1 | 333.48 | | |
| 012219396 | Tom Joiner & Associates Inc.- Oct-Nov 2018 Air Permits | 1 | 333.48 | | |
| 012219396 | Tom Joiner & Associates Inc.- Oct-Nov 2018 Air Permits | 1 | 333.48 | 2,233.30 | 20.03 |
| **Location Preparation/Dirt Work** | | | | | |
| 0175 | Southern Erosion Control- Night watch due to freezing temps | 1 | 752.92 | 752.92 | 6.76 |
| **Location Clean Up/Pit Closure** | | | | | |
| 0808-0006028 | Republic Services #808 | 1 | 22.78 | 22.78 | 0.20 |
| **Engineering & Supervision** | | | | | |
| TM0219CC | Operations Engineer - Campbell | 1 | 192.21 | 192.21 | 1.73 |
| **Instru/Monitoring & Automation** | | | | | |
| 1176441 | SPL, Inc.- Calibrated | 1 | 413.45 | | |
| 1176442 | SPL, Inc.- Calibrated | 1 | 182.00 | | |
| 1176444 | SPL, Inc.- Calibrated | 1 | 457.16 | | |
| 19-00118 | KCS Automation, LLC- Replaced tank level battery | 1 | 438.20 | | |
| 19-00126 | KCS Automation, LLC- Install tank level battery | 1 | 603.20 | | |
| 19-00138 | KCS Automation, LLC- PM | 1 | 600.00 | 2,694.01 | 24.16 |
| **Chemicals** | | | | | |
| 909725716 | Baker Hughes, a GE Company, LLC- Paraffin Inhibitor | 1 | 1,278.52 | | |
| 18187 | White Resources LLC- P-278 | 1 | 658.53 | | |
| 18189 | White Resources LLC- P-278 | 1 | 752.60 | 2,689.65 | 24.13 |
| **Company Pumping - Gauging** | | | | | |
| ALPU0219 | Pumper Time and Mileage - Young/Davis/Hester/Hinote/Kinsey/Hoomes/Hart/Blackman | 1 | 13,535.57 | 13,535.57 | 121.41 |
| **Telephone & Communications** | | | | | |
| 19020100844 | Your Message Center, Inc. | 1 | 12.31 | 12.31 | 0.11 |
| **Logging & Wireline** | | | | | |
| 347 | Slickline South, LLC- 1/28-29/2019 | 1 | 5,519.21 | | |
| 356 | Slickline South, LLC | 1 | 2,125.60 | 7,644.81 | 68.58 |
| **Repairs & Maint-Surface Equip** | | | | | |
| EWJD0219 | East West Bank Credit Card - Joel Davis- 02 2019 - Heater Hose | 1 | 78.33 | | |
| EWSS0219 | East West Bank Credit Card - Stephen Hester - 02 2019 - Insulation materials | 1 | 32.62 | | |
| 356287 | The McPherson Companies, Inc.- Proteck EP 320 Gear Oil | 1 | 493.45 | | |
| WMR19-3613 | Whirlwind Methane Recovery Systems, LLC | 1 | 270.00 | | |
| WMR19-3613 | Whirlwind Methane Recovery Systems, LLC | 1 | 270.00 | | |
| WMR19-3613 | Whirlwind Methane Recovery Systems, | 1 | 540.00 | | |

From:  Sklar Exploration Co., L.L.C.
To:    Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 02/28/2019
Account: ROO802   Page  3

**LEASE: (1BRO04) Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| | LLC | | | | |
| WMR19-3613 | Whirlwind Methane Recovery Systems, LLC | 1 | 270.00 | | |
| WMR19-3613 | Whirlwind Methane Recovery Systems, LLC | 1 | 270.00 | | |
| 009615 | Johnson's Welding Shop- Stainless steel flare top | 1 | 1,750.00 | | |
| 22559 | Camley Electric Inc- Replaced OPTC card | 1 | 540.00 | | |
| 22579 | Camley Electric Inc- Replaced transmitter | 1 | 360.00 | 4,874.40 | 43.72 |
| **Supplies** | | | | | |
| EWJD0219 | East West Bank Credit Card - Joel Davis- 02 2019 - Work Gloves | 1 | 77.73 | | |
| 132500 | Union Oilfield Supply, Inc.- Valves/tees/nipples | 1 | 332.13 | 409.86 | 3.68 |
| **Salt Water Disposal** | | | | | |
| 2019-01-007 | Wastewater Disposal Services, Inc.- 1/16-31/19 | 1 | 182.00 | | |
| 53849 | Kelley Brothers Contractors, Inc. | 1 | 1,140.00 | | |
| 2019-02-002 | Wastewater Disposal Services, Inc.- 2/1-15/2019 | 1 | 105.00 | 1,427.00 | 12.80 |
| **Utilities** | | | | | |
| 613710046 | Southern Pine Electric Cooperative- 12/27/18-1/30/19 | 1 | 5,741.32 | | |
| 613710050 | Southern Pine Electric Cooperative- 12/27/18-1/30/19 | 1 | 6,250.83 | | |
| 613710057 | Southern Pine Electric Cooperative- 12/27/18-1/30/19 | 1 | 11,294.31 | | |
| 613710063 | Southern Pine Electric Cooperative- 12/27/18-1/30/19 | 1 | 175.33 | | |
| 613710064 | Southern Pine Electric Cooperative- 12/27/18-1/30/19 | 1 | 5,850.49 | 29,312.28 | 262.94 |
| **Vacuum Truck** | | | | | |
| 53852 | Kelley Brothers Contractors, Inc. | 1 | 522.50 | | |
| 53854 | Kelley Brothers Contractors, Inc. | 1 | 525.00 | | |
| 53849 | Kelley Brothers Contractors, Inc. | 1 | 952.50 | | |
| 53864 | Kelley Brothers Contractors, Inc. | 1 | 95.00 | | |
| 53865 | Kelley Brothers Contractors, Inc. | 1 | 237.50 | | |
| 53866 | Kelley Brothers Contractors, Inc. | 1 | 95.00 | | |
| 53867 | Kelley Brothers Contractors, Inc. | 1 | 95.00 | | |
| 53868 | Kelley Brothers Contractors, Inc. | 1 | 95.00 | | |
| 53869 | Kelley Brothers Contractors, Inc. | 1 | 95.00 | | |
| 53870 | Kelley Brothers Contractors, Inc. | 1 | 95.00 | 2,807.50 | 25.18 |
| **Sales/Use Tax** | | | | | |
| 2013-2016 TA | R & R Rentals & Hot Shot, Inc.- 2013-2016 Sales tax audit | 1 | 472.49 | | |
| 2013-2016 TA | R & R Rentals & Hot Shot, Inc.- 2013-2016 Sales tax audit | 1 | 508.37 | | |
| 2013-2016 TA | R & R Rentals & Hot Shot, Inc.- 2013-2016 Sales tax audit | 1 | 626.81 | | |
| 2013-2016 TA | R & R Rentals & Hot Shot, Inc.- 2013-2016 Sales tax audit | 1 | 416.05 | | |
| 2013-2016 TA | R & R Rentals & Hot Shot, Inc.- 2013-2016 Sales tax audit | 1 | 451.65 | 2,475.37 | 22.21 |
| **COPAS Overhead** | | | | | |
| RBO36821 | Adm Overhead - Producing | 1 | 13,887.00 | 13,887.00 | 124.56 |
| | **Total Lease Operating Expense** | | | 84,970.97 | 762.20 |

From:   Sklar Exploration Co., L.L.C.
To:     Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 02/28/2019
Account: ROO802    Page    4

**LEASE: (1BRO04)  Southeast Brooklyn Oil Unit    (Continued)**
**Expenses:    (Continued)**

| | Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|---|
| **Leasehold Costs** | | | | | | |
| ***Legal Fees*** | | | | | | |
| | 407658 | Armbrecht Jackson LLP- Unitization | 1 | 7,266.76 | | |
| | 407832 | Armbrecht Jackson LLP- ADEM | 1 | 126.00 | | |
| | 407835 | Armbrecht Jackson LLP- Unitization | 1 | 4,210.75 | 11,603.51 | 104.09 |
| | | Total Leasehold Costs | | | 11,603.51 | 104.09 |
| **Intangible Completion Costs** | | | | | | |
| ***Engineering & Supervision Svcs*** | | | | | | |
| | TM0219EV | Field Supervisor Time and Mileage - Vines | 1 | 1,371.90 | 1,371.90 | 12.31 |
| | | Total Intangible Completion Costs | | | 1,371.90 | 12.31 |
| **Tangible Completion Costs** | | | | | | |
| ***Tank Battery InstallationCosts*** | | | | | | |
| | 21119 | H&H Construction, LLC- Change out flare bucket | 1 | 1,470.00 | 1,470.00 | 13.18 |
| | | Total Tangible Completion Costs | | | 1,470.00 | 13.18 |
| | | **Total Expenses for LEASE** | | | 99,416.38 | 891.78 |

| LEASE Summary: | Wrk Int | Expenses | You Owe |
|---|---|---|---|
| 1BRO04 | 0.00897017 | 891.78 | 891.78 |

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA 71101
(303)541-1559

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX 75711

APR 09 20'9

Account: ROO802

Date: 03/31/2019

## Account: ROO802 - Statement of Account:

*800669*

| Date | Reference | Description | Charges | Credits |
|------|-----------|-------------|---------|---------|
| 02/28/2019 | | Balance Forward | 2,623.80 | |
| 03/04/2019 | 9839 | Payment-Thank You! Ck# 44100 - paid by Roosth Production Company check | | (1,732.02) |
| 03/05/2019 | CC309 | Cash Call: SE Brooklyn Oil Unit, 34-13 #1 | 6,323.97 | |
| 03/05/2019 | CC309-W | Cash Call-SE Brooklyn Oil Unit, CCL&T 3-4 #1 | 618.05 | |
| 03/11/2019 | 9847 | Payment-Thank You! Ck# 44116 | | (6,942.02) |
| | | New Balance Forward | ~~891.78~~ | |

## Prepaid Balance by Project:

| Property# | AFE# | Description | Beginning Balance | Pre-Pmts Applied | Balance Remaining |
|-----------|------|-------------|-------------------|------------------|-------------------|
| 1BRO04 | 309 | CCL&T 34-13 #1-WS | 6,323.97 | (5.13) | 6,329.10 |
| 1BRO04 | 309-W | CCL&T 3-4 #1 | 618.05 | 1.73 | 616.32 |
| | | **Prepaid Balance Totals:** | **6,942.02** | **(3.40)** | **6,945.42** |

## Summary by LEASE:

| Property# | Description | Expenses | Pre-Pmts Applied | You Owe |
|-----------|-------------|----------|------------------|---------|
| | Unpaid Previous Balance | | | -891.78 |
| 1BRO04 | Southeast Brooklyn Oil Unit | 1,152.11 | (3.40) | 1,155.51 |
| 1CED62 | CCL&T 3-7 #1 (SE Brooklyn) | 124.77 | | 124.77 |
| | **Totals:** | **1,276.88** | **(3.40)** | **2,172.06** |

**PLEASE PAY THIS AMOUNT ----------------------^**

*260-800    1152.11*
*260-800     49.07*
*220-800     75.70*

Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.

5

From:   Sklar Exploration Co., L.L.C.
To:     Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 03/31/2019
Account: ROO802   Page   2

### LEASE: (1BRO04) Southeast Brooklyn Oil Unit   County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Survey, DOC Hearings, Permits* | | | | | |
| 0228JIB | Tom Joiner & Associates Inc.- Oct/Nov 2018 Air Permits, inv #012219396 | 1 | 2,233.30- | 2,233.30- | 20.03- |
| *Location Clean Up/Pit Closure* | | | | | |
| 1LOG01C | Republic Services #808 (Logan 5-7 #1 Correction 02-19 JIB) | 1 | 4.56 | | |
| 1LOG01C | Republic Services #808 (Logan 5-7 #1 Correction for 01-19 JIB) | 1 | 2.88 | | |
| 0484-0005125 | Republic Services #808 | 1 | 2.85 | | |
| 0484-0005125 | Republic Services #808 | 1 | 14.25 | | |
| 0808-0006050 | Republic Services #808 | 1 | 4.53 | | |
| 0808-0006050 | Republic Services #808 | 1 | 22.58 | 51.65 | 0.46 |
| *Engineering & Supervision* | | | | | |
| PENN STATE | The Pennsylvania State University- Penn State 3S Laboratory, Petroleum Research | 1 | 6,000.00 | 6,000.00 | 53.82 |
| *Instru/Monitoring & Automation* | | | | | |
| 1151260 | SPL, Inc.- Flow analysis | 1 | 60.66 | | |
| 1151261 | SPL, Inc.- Flow analysis | 1 | 156.00 | | |
| ARCI0011660 | Zedi US Inc.- 2/2019 | 1 | 99.00 | | |
| ARCI0011661 | Zedi US Inc.- 2/2019 | 1 | 99.00 | | |
| ARCI0011661 | Zedi US Inc.- 2/2019 | 1 | 99.00 | | |
| ARCI0011662 | Zedi US Inc.- 2/2019 | 1 | 99.00 | | |
| ARCI0011662 | Zedi US Inc.- 2/2019 | 1 | 99.00 | | |
| ARCI0011663 | Zedi US Inc.- 2/2019 | 1 | 99.00 | | |
| 19-00145 | KCS Automation, LLC- Recalibrated tank level | 1 | 300.00 | | |
| 19-00150 | KCS Automation, LLC- Replace battery in production tank level | 1 | 205.00 | | |
| ARCI0011769 | Zedi US Inc.- 3/2019 | 1 | 99.00 | | |
| ARCI0011770 | Zedi US Inc.- 3/2019 | 1 | 99.00 | | |
| ARCI0011770 | Zedi US Inc.- 3/2019 | 1 | 99.00 | | |
| ARCI0011771 | Zedi US Inc.- 3/2019 | 1 | 99.00 | | |
| ARCI0011772 | Zedi US Inc.- 3/2019 | 1 | 99.00 | | |
| 19-00188 | KCS Automation, LLC- Prep well for Zedi access | 1 | 2,755.70 | | |
| 19-00190 | KCS Automation, LLC- Prep well for Zedi access | 1 | 2,522.50 | | |
| 19-00191 | KCS Automation, LLC- Prep well for Zedi access | 1 | 2,522.50 | | |
| 19-00192 | KCS Automation, LLC- Total Flow repairs from lightning strike | 1 | 2,522.50 | 12,133.86 | 108.84 |
| *Chemicals* | | | | | |
| 909801295 | Baker Hughes, a GE Company, LLC- Paraffin Inhibitor | 1 | 1,278.52 | | |
| 909860994 | Baker Hughes, a GE Company, LLC - CCL&T 3-7#1 Corrosion Inhibitor | 1 | 673.37 | | |
| 18245 | White Resources LLC- P-278 | 1 | 564.45 | | |
| 18246 | White Resources LLC- P-278 | 1 | 752.60 | | |
| 18247 | White Resources LLC- P-278 | 1 | 564.45 | | |
| 18248 | White Resources LLC- P-278 | 1 | 376.30 | | |
| 18249 | White Resources LLC- P-278 | 1 | 376.30 | | |
| 18250 | White Resources LLC- P-278 | 1 | 752.60 | 5,338.59 | 47.89 |
| *Company Pumping - Gauging* | | | | | |
| 1LOG01C | Pumper Time and Mileage (Logan 5-7 #1 correction for 02-19 JIB) | 1 | 1,485.15 | | |
| 1LOG01C | Pumper Time and Mileage (Logan 5-7 #1 correction for 01-19 JIB) | 1 | 1,485.15 | | |

5

From:  Sklar Exploration Co., L.L.C.
To:  Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 03/31/2019
Account: ROO802   Page   3

**LEASE: (1BRO04)  Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| ALPU0319 | Pumper Time and Mileage - Young/Davis/Hester/Hinote/Kinsey/Hoomes/Hart/Blackman | 1 | 15,885.30 | 18,855.60 | 169.14 |
| **Telephone & Communications** | | | | | |
| 19030100844 | Your Message Center, Inc. | 1 | 1.41 | | |
| 19030100844 | Your Message Center, Inc. | 1 | 12.31 | 13.72 | 0.12 |
| **Fuel** | | | | | |
| 75257 | South Alabama Gas | 1 | 2,160.26 | 2,160.26 | 19.38 |
| **Logging & Wireline** | | | | | |
| 369 | Slickline South, LLC- 3/15, 3/18/2019 | 1 | 5,285.20 | 5,285.20 | 47.41 |
| **Repairs & Maint-Surface Equip** | | | | | |
| 34389 | Barnette & Benefield, Inc.- PM | 1 | 319.50 | | |
| 34390 | Barnette & Benefield, Inc.- PM | 1 | 319.50 | | |
| 34391 | Barnette & Benefield, Inc.- PM | 1 | 319.50 | | |
| 34397 | Barnette & Benefield, Inc.- PM | 1 | 319.50 | | |
| 34398 | Barnette & Benefield, Inc.- PM | 1 | 319.50 | | |
| 22590 | Carnley Electric Inc- Repaired tank gauges on POT | 1 | 270.00 | | |
| WMR19-3618 | Whirlwind Methane Recovery Systems, LLC | 1 | 270.00 | | |
| WMR19-3618 | Whirlwind Methane Recovery Systems, LLC | 1 | 270.00 | | |
| WMR19-3618 | Whirlwind Methane Recovery Systems, LLC | 1 | 540.00 | | |
| WMR19-3618 | Whirlwind Methane Recovery Systems, LLC | 1 | 270.00 | | |
| WMR19-3618 | Whirlwind Methane Recovery Systems, LLC | 1 | 270.00 | | |
| 22623 | Carnley Electric Inc- Flare igniter | 1 | 270.00 | | |
| 22651 | Carnley Electric Inc- Replaced LCD on casing transmitter | 1 | 180.00 | 3,937.50 | 35.32 |
| **Repairs & Maint/Sub-Surface Eq** | | | | | |
| 98-22274 | Jimco Pumps- Pump parts | 1 | 4,728.66 | 4,728.66 | 42.42 |
| **Salt Water Disposal** | | | | | |
| 54002 | Kelley Brothers Contractors, Inc. | 1 | 380.00 | | |
| 54003 | Kelley Brothers Contractors, Inc. | 1 | 380.00 | | |
| 54026 | Kelley Brothers Contractors, Inc.- 2/14/2019 | 1 | 522.50 | | |
| 2019-02-006 | Wastewater Disposal Services, Inc.- 2/16-28/2019 | 1 | 273.00 | | |
| 2019-03-003 | Wastewater Disposal Services, Inc. 3/1-3/15 | 1 | 175.00 | 1,730.50 | 15.52 |
| **Utilities** | | | | | |
| 1LOG01C | Southern Pine Electric Coop (Correction for Logan 5-7 #1 12/27/18 -01/30/19 on 02-19 JIB) | 1 | 568.91 | | |
| 613710006 | Southern Pine Electric Cooperative- 1/30-2/27/2019 | 1 | 451.80 | | |
| 613710046 | Southern Pine Electric Cooperative- 1/30-2/27/2019 | 1 | 4,956.36 | | |
| 613710050 | Southern Pine Electric Cooperative- 1/30-2/27/2019 | 1 | 5,068.40 | | |
| 613710057 | Southern Pine Electric Cooperative- 1/30-2/27/2019 | 1 | 9,170.18 | | |
| 613710063 | Southern Pine Electric Cooperative- 1/30-2/27/2019 | 1 | 150.81 | | |
| 613710064 | Southern Pine Electric Cooperative- 1/30-2/27/2019 | 1 | 4,712.24 | | |
| 613710075 | Southern Pine Electric Cooperative- | 1 | 3,656.02 | | |

5

From:   Sklar Exploration Co., L.L.C.                       For Billing Dated 03/31/2019
To:     Roosth 806, Ltd, a Texas Ltd Partnership           Account: ROO802   Page   4

## LEASE: (1BRO04)  Southeast Brooklyn Oil Unit    (Continued)
## Expenses:    (Continued)

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| | 1/30-2/27/2019 | | | | |
| 613710076 | Southern Pine Electric Cooperative-1/30-2/27/2019 | 1 | 4,126.86 | | |
| 613710077 | Southern Pine Electric Cooperative-1/30-2/27/2019 | 1 | 3,729.50 | | |
| 613710078 | Southern Pine Electric Cooperative-1/30-2/27/2019 | 1 | 3,066.70 | 39,657.78 | 355.74 |
| **Vacuum Truck** | | | | | |
| 1LOG01C | Kelley Brothers Contractor (Correction for Logan 5-7 #1 service date 01-25-19 on 02-19 JIB) | 1 | 95.00 | | |
| 54007 | Kelley Brothers Contractors, Inc. | 1 | 95.00 | | |
| 54015 | Kelley Brothers Contractors, Inc. | 1 | 382.50 | | |
| 54026 | Kelley Brothers Contractors, Inc.-2/14/2019 | 1 | 335.00 | | |
| 54105 | Kelley Brothers Contractors, Inc.-Chemical box/sump slab | 1 | 285.00 | 1,192.50 | 10.69 |
| **Sales/Use Tax** | | | | | |
| 0228JIB | R&R Rentals & Hotshot, Inc.-2013-2016 Sales Tax Audit | 1 | 2,475.37- | | |
| 0219ALA | AL sales/use tax not paid by vendor 2/2019 | 1 | 29.75 | 2,445.62- | 21.93- |
| **Other Revenue Deductions** | | | | | |
| 0119TRAN | 01-19 Transportation Fee on 7,276 mcf @ $.50/mcf | 1 | 3,638.00 | 3,638.00 | 32.63 |
| **COPAS Overhead** | | | | | |
| 1LOG01C | Adm Overhead - Production (Correction for Logan 5-7 #1 for 02-19 JIB) | 1 | 1,101.82 | | |
| 1LOG01C | Adm Overhead - Production (Correction for Logan 5-7 #1 for 01-19 JIB) | 1 | 1,101.82 | | |
| RBO36923 | Adm Overhead - Producing | 1 | 15,430.00 | 17,633.64 | 158.18 |
| **Miscellaneous** | | | | | |
| 1LOG01C | Alabama 811 -2019 membership (Correction of Logan 5-7 #1 01-19 JIB) | 1 | 7.64 | 7.64 | 0.07 |
| | **Total Lease Operating Expense** | | | **117,686.18** | **1,055.67** |
| **Geological & Geophysical** | | | | | |
| **Geological** | | | | | |
| 2083 | Geological Survey of Alabama- Well logs | 309-1 | 107.17 | 107.17 | 0.96 |
| | **Total Geological & Geophysical** | | | **107.17** | **0.96** |
| **Leasehold Costs** | | | | | |
| **Legal Fees** | | | | | |
| 0228JIB | Armbrecht Jackson LLP- Unitization, Inv #407658 | 309-1 | 7,266.76- | | |
| 408108 | Armbrecht Jackson LLP- Unitization | 309-1 | 6,148.22 | | |
| 408110 | Armbrecht Jackson LLP- Gulf Coast Mineral case | 309-1 | 440.00 | 678.54- | 6.09- |
| | **Total Leasehold Costs** | | | **678.54-** | **6.09-** |
| **Intangible Completion Costs** | | | | | |
| **Water** | | | | | |
| EWCK0319 | East West Bank Credit Card - Chase Kinsey - 03 02 2019 - Plugs for water well | 309-W-1 | 193.40 | 193.40 | 1.73 |
| | **Total Intangible Completion Costs** | | | **193.40** | **1.73** |

5

From: Sklar Exploration Co., L.L.C.
To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 03/31/2019
Account: ROO802   Page   5

## LEASE: (1BRO04)  Southeast Brooklyn Oil Unit   (Continued)
### Expenses:   (Continued)

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Tangible Completion Costs** | | | | | |
| *Surface Production Equipment* | | | | | |
| 98-22412 | Jimco Pumps- Carbon steel filter housing | 1 | 11,130.00 | 11,130.00 | 99.84 |
| | **Total Tangible Completion Costs** | | | **11,130.00** | **99.84** |
| | **Total Expenses for LEASE** | | | **128,438.21** | **1,152.11** |

| Billing Summary by Deck/AFE | | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| | Deck 1 | 1 | 0.00897017 | 128,816.18 | 1,155.51 |
| | BCP | 309-1 | 0.00897017 | 571.37- | 5.13- |
| | Workover | 309-W-1 | 0.00897017 | 193.40 | 1.73 |

| LEASE Summary: | Wrk Int | | Expenses | Pre-Pmt Applied | You Owe |
|---|---|---|---|---|---|
| 1BRO04 | 0.00897017 | | 1,152.11 | 0.00 | 1,152.11 |

## LEASE: (1CED62)  CCL&T 3-7 #1 (SE Brooklyn)   County: CONECUH, AL
### Expenses:

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Survey, DOC Hearings, Permits* | | | | | |
| 0228JIB | Tom Joiner & Associates Inc.- Oct/Nov 2018 Air Permits, inv #012219396 | 1 | 333.48 | 333.48 | 20.84 |
| *Sales/Use Tax* | | | | | |
| 0228JIB | R&R Rentals & Hotshot, Inc.- 2013-2016 Sales Tax Audit | 1 | 451.65 | 451.65 | 28.23 |
| | **Total Lease Operating Expense** | | | **785.13** | **49.07** |
| **Leasehold Costs** | | | | | |
| *Legal Fees* | | | | | |
| 0228JIB | Armbrecht Jackson LLP- Unitization, Inv #407658 | 1 | 1,211.12 | 1,211.12 | 75.70 |
| | **Total Leasehold Costs** | | | **1,211.12** | **75.70** |
| | **Total Expenses for LEASE** | | | **1,996.25** | **124.77** |

| LEASE Summary: | Wrk Int | | Expenses | | You Owe |
|---|---|---|---|---|---|
| 1CED62 | 0.06250000 | | 124.77 | | 124.77 |

5

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA  71101
(303)541-1559

# *Settlement Statement*



Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX  75711

Account:  ROO802

Date:  04/30/2019

**Account: ROO802 - Statement of Account:**

| Date | Reference | Description | Charges | Credits |
|---|---|---|---|---|
| 03/31/2019 | | Balance Forward | 2,172.06 | |
| 04/03/2019 | 9898 | Payment-Thank You! Ck# 44155 - paid by Roosth Production Company check | | (891.78) |
| | | New Balance Forward | 1,280.28 | |

**Prepaid Balance by Project:**

| Property# | AFE# | Description | Beginning Balance | Pre-Pmts Applied | Balance Remaining |
|---|---|---|---|---|---|
| 1BRO04 | 309 | CCL&T 34-13 #1-WS | 6,329.10 | | 6,329.10 |
| 1BRO04 | 309-W | CCL&T 3-4 #1 | 616.32 | | 616.32 |
| | | **Prepaid Balance Totals:** | **6,945.42** | | **6,945.42** |

**Summary by LEASE:**

| Property# | Description | Expenses | Pre-Pmts Applied | You Owe | |
|---|---|---|---|---|---|
| | Unpaid Previous Balance | | | 1,280.28 | Pd 4/30 |
| 1BRO04 | Southeast Brooklyn Oil Unit  492 000. 200 | 1,316.49 | | 1,316.49 | |
| | **Totals:** | **1,316.49** | 58 | **2,596.77** | |

**PLEASE PAY THIS AMOUNT** -------------^

492 000. 200. 01

960 - 800    1264.95
220 - 800    41.24
230 - 800    1.65
240 - 800    8.65

Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.

From:  Sklar Exploration Co., L.L.C.
To:  Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 04/30/2019
Account: ROO802    Page    2

### LEASE: (1BRO04) Southeast Brooklyn Oil Unit    County: CONECUH, AL

**Expenses:**

**Lease Operating Expense**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| *Survey, DOC Hearings, Permits* | | | | | |
| 042419396 | Tom Joiner & Associates Inc.- Air permits, Injection/water permits | 1 | 9,766.92 | 9,766.92 | 87.61 |
| *Location Preparation/Dirt Work* | | | | | |
| 0183 | Southern Erosion Control- Repaired road/pad 4-1/3-4 | 1 | 5,138.00 | | |
| 0184 | Southern Erosion Control- Repaired 34-12 pad, repaired wash/road 33-10 | 1 | 5,176.00 | 10,314.00 | 92.52 |
| *Location Clean Up/Pit Closure* | | | | | |
| 0484-0005184 | Republic Services #808 | 1 | 2.88 | | |
| 0484-0005184 | Republic Services #808 | 1 | 14.35 | | |
| 0808-0006101 | Republic Services #808 | 1 | 4.56 | | |
| 0808-0006101 | Republic Services #808 | 1 | 22.73 | 44.52 | 0.40 |
| *Engineering & Supervision* | | | | | |
| 041219465-6 | Tom Joiner & Associates Inc.- Consulting geologists & engineers 2/2019 | 1 | 5,199.96 | 5,199.96 | 46.64 |
| *Instru/Monitoring & Automation* | | | | | |
| 0104165-IN | Stric-Lan Companies, LLC- Replaced gateway stick at Total Flow | 1 | 1,404.07 | | |
| 0104153-IN | Stric-Lan Companies, LLC- Replaced POT battery | 1 | 384.07 | | |
| 0104159-IN | Stric-Lan Companies, LLC- Replaced flare gas meter battery | 1 | 345.00 | | |
| 1178302 | SPL, Inc.- Calibrate/Inspect TotalFlow | 1 | 165.43 | | |
| 1178303 | SPL, Inc.- Calibrate/Inspect TotalFlow | 1 | 427.52 | | |
| 1179888 | SPL, Inc.- Replaced solar panel & battery on flare meter | 1 | 470.00 | | |
| 19-00196 | KCS Automation, LLC- Finished Scada prep 32-9 | 1 | 600.00 | | |
| 19-00199 | KCS Automation, LLC- Finished Scada prep 34-12 | 1 | 600.00 | | |
| 19-00200 | KCS Automation, LLC- Finished Scada prep 35-13 | 1 | 410.00 | | |
| 19-00201 | KCS Automation, LLC- Finished Scada prep 33-10 (R13) | 1 | 600.00 | | |
| 19-00203 | KCS Automation, LLC- Finished Scada install 34-15 | 1 | 600.00 | | |
| 1180604 | SPL, Inc.- Quarterly gas sample for analysis | 1 | 548.76 | | |
| 1180463 | SPL, Inc.- Calibrate/Inspect TotalFlow | 1 | 240.00 | | |
| 1180465 | SPL, Inc.- Calibrate/Inspect TotalFlow | 1 | 3,642.84 | | |
| 2030014949 | SPL, Inc.- Gas thru Heptanes, Cylinder cleaning | 1 | 256.00 | | |
| 1180468 | SPL, Inc.- Calibrate/Inspect TotalFlow | 1 | 1,282.50 | | |
| 19-00221 | KCS Automation, LLC- Replaced battery on Total Flow 3-7 | 1 | 600.00 | | |
| 19-00233 | KCS Automation, LLC- Replaced pole to improve freewave radio signal, 34-15 | 1 | 2,410.00 | | |
| ARCI0011898 | Zedi US Inc.- 4/2019 | 1 | 99.00 | | |
| ARCI0011898 | Zedi US Inc.- 4/2019 | 1 | 99.00 | | |
| ARCI0011898 | Zedi US Inc.- 4/2019 | 1 | 99.00 | | |
| ARCI0011899 | Zedi US Inc.- 4/2019 | 1 | 99.00 | | |
| ARCI0011900 | Zedi US Inc.- 4/2019 | 1 | 99.00 | 15,481.19 | 138.87 |
| *Chemicals* | | | | | |
| 909976282 | Baker Hughes, a GE Company, LLC- Paraffin Inhibitor- 32-9 #1 ST | 1 | 1,278.52 | | |
| 909976339 | Baker Hughes, a GE Company, LLC- | 1 | 1,278.52 | | |

From: Sklar Exploration Co., L.L.C.
To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 04/30/2019
Account: ROO802    Page    3

**LEASE: (1BRO04) Southeast Brooklyn Oil Unit    (Continued)**
**Expenses:    (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| | Paraffin Inhibitor, 3-7 | | | | |
| 18281 | White Resources LLC- P-278, 32-9 (R13) | 1 | 564.45 | | |
| 18282 | White Resources LLC- P-278, 34-15 | 1 | 846.68 | | |
| 18283 | White Resources LLC- P-278, 35-13 | 1 | 376.30 | | |
| 18284 | White Resources LLC- P-278, 33-12 | 1 | 564.45 | | |
| 18285 | White Resources LLC- P-278, 33-10 (R13) | 1 | 470.38 | | |
| 18286 | White Resources LLC- P-278, 34-12 | 1 | 1,128.90 | | |
| 18287 | White Resources LLC- P-278, 4-1 | 1 | 470.38 | | |
| 18288 | White Resources LLC- P-278, 3-4 (DP) | 1 | 1,222.98 | 8,201.56 | 73.57 |
| **Company Pumping - Gauging** | | | | | |
| ALPU0419 | Pumper Time and Mileage - Young/Davis/Hester/Hinote/Kinsey/Hoomes/Hart/Blackman | 1 | 16,057.18 | 16,057.18 | 144.04 |
| **Telephone & Communications** | | | | | |
| 19040100844 | Your Message Center, Inc. | 1 | 12.31 | 12.31 | 0.11 |
| **Contract Labor** | | | | | |
| 29848 | Parker & Son, Inc.- Subcontractor | 1 | 312.00 | | |
| 29849 | Parker & Son, Inc.- Subcontractor | 1 | 312.00 | | |
| 29876 | Parker & Son, Inc.- Subcontractor, 34-15 | 1 | 468.36 | 1,092.36 | 9.80 |
| **Repairs & Maint-Surface Equip** | | | | | |
| 22692 | Carnley Electric Inc- Pulled tank gauges, cleaned & replaced floats 34-12 | 1 | 720.00 | | |
| 133163 | Union Oilfield Supply, Inc.- Petroleum hose, spares | 1 | 105.74 | | |
| WMR19-3623 | Whirlwind Methane Recovery Systems, LLC | 1 | 270.00 | | |
| WMR19-3623 | Whirlwind Methane Recovery Systems, LLC | 1 | 270.00 | | |
| WMR19-3623 | Whirlwind Methane Recovery Systems, LLC | 1 | 540.00 | | |
| WMR19-3623 | Whirlwind Methane Recovery Systems, LLC | 1 | 270.00 | | |
| WMR19-3623 | Whirlwind Methane Recovery Systems, LLC | 1 | 270.00 | | |
| 20220633 | GE Oil & Gas- Grease & inspect well valves | 1 | 2,076.50 | 4,522.24 | 40.56 |
| **Repairs & Maint/Sub-Surface Eq** | | | | | |
| 98-22521 | Jimco Pumps- Parts, 3-4 (R13) | 1 | 2,657.42 | | |
| 98-22525 | Jimco Pumps- Pump parts, 3-7 | 1 | 1,308.04 | 3,965.46 | 35.57 |
| **Supplies** | | | | | |
| 133088 | Union Oilfield Supply, Inc.- Red line sight glass, Big Mule wipes 34-15 | 1 | 113.91 | 113.91 | 1.02 |
| **Salt Water Disposal** | | | | | |
| 2019-03-009 | Wastewater Disposal Services, Inc. | 1 | 91.00 | | |
| 54314 | Kelley Brothers Contractors, Inc.- 32-9 (R13) | 1 | 924.50 | | |
| 54320 | Kelley Brothers Contractors, Inc.- 3-7 | 1 | 533.50 | | |
| 54321 | Kelley Brothers Contractors, Inc.- 33-12 | 1 | 332.50 | | |
| 54333 | Kelley Brothers Contractors, Inc.- 3-4 (R13) | 1 | 475.00 | | |
| 54339 | Kelley Brothers Contractors, Inc.- 32-9 | 1 | 380.00 | 2,736.50 | 24.55 |
| **Utilities** | | | | | |
| 613710006 | Southern Pine Electric Cooperative- 2/27-3/28/2019 | 1 | 464.02 | | |

4

| From: | Sklar Exploration Co., L.L.C. | | For Billing Dated 04/30/2019 |
|---|---|---|---|
| To: | Roosth 806, Ltd, a Texas Ltd Partnership | | Account: ROO802   Page   4 |

## LEASE: (1BRO04)  Southeast Brooklyn Oil Unit    (Continued)
**Expenses:    (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| 613710046 | Southern Pine Electric Cooperative-2/27-3/28/2019 | 1 | 5,172.26 | | |
| 613710050 | Southern Pine Electric Cooperative-2/27-3/28/2019 | 1 | 5,166.93 | | |
| 613710057 | Southern Pine Electric Cooperative-2/27-3/28/2019 | 1 | 9,314.43 | | |
| 613710063 | Southern Pine Electric Cooperative-2/27-3/28/2019 | 1 | 154.21 | | |
| 613710064 | Southern Pine Electric Cooperative-2/27-3/28/2019 | 1 | 5,006.48 | | |
| 613710075 | Southern Pine Electric Cooperative-2/27-3/28/2019 | 1 | 3,561.59 | | |
| 613710076 | Southern Pine Electric Cooperative-2/27-3/28/2019 | 1 | 4,626.34 | | |
| 613710077 | Southern Pine Electric Cooperative-2/27-3/28/2019 | 1 | 4,228.91 | | |
| 613710078 | Southern Pine Electric Cooperative-2/27-3/28/2019 | 1 | 3,422.17 | 41,117.34 | 368.83 |
| **Vacuum Truck** | | | | | |
| 54320 | Kelley Brothers Contractors, Inc.- 3-7 | 1 | 285.00 | | |
| 54321 | Kelley Brothers Contractors, Inc.- 33-12 | 1 | 190.00 | | |
| 54316 | Kelley Brothers Contractors, Inc.- 34-15 | 1 | 902.50 | | |
| 54337 | Kelley Brothers Contractors, Inc.- 3-4 (R13) | 1 | 287.50 | 1,665.00 | 14.94 |
| **Other Revenue Deductions** | | | | | |
| 0219TRAN | 02-19 Transportation Fee on 7,626 mcf @ $.50/mcf | 1 | 3,813.00 | 3,813.00 | 34.20 |
| **COPAS Overhead** | | | | | |
| RBO37024 | Adm Overhead - Producing | 1 | 16,914.40 | 16,914.40 | 151.72 |
| | **Total Lease Operating Expense** | | | **141,017.85** | **1,264.95** |
| **Leasehold Costs** | | | | | |
| **Legal Fees** | | | | | |
| 041219262 | Tom Joiner & Associates Inc.- Hearing follow-up & tax petition, Jan 2019 | 1 | 3,415.12 | | |
| 408280 | Armbrecht Jackson LLP- Suspense Interests | 1 | 772.75 | | |
| 408286 | Armbrecht Jackson LLP- Gulf Coast Mineral lawsuit | 1 | 409.00 | 4,596.87 | 41.24 |
| | **Total Leasehold Costs** | | | **4,596.87** | **41.24** |
| **Intangible Drilling Costs** | | | | | |
| **Survey, DOC Hearings, Permits** | | | | | |
| 67703 | Engineering Service- Well location plat for water injection well, 4-1 | 1 | 184.00 | 184.00 | 1.65 |
| | **Total Intangible Drilling Costs** | | | **184.00** | **1.65** |
| **Intangible Completion Costs** | | | | | |
| **Engineering & Supervision Svcs** | | | | | |
| TM0419RW | Engineer Time - West | 1 | 963.84 | 963.84 | 8.65 |
| | **Total Intangible Completion Costs** | | | **963.84** | **8.65** |
| | **Total Expenses for LEASE** | | | **146,762.56** | **1,316.49** |

| LEASE Summary: | Wrk Int | Expenses | You Owe |
|---|---|---|---|
| 1BRO04 | 0.00897017 | 1,316.49 | 1,316.49 |

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA 71101
(303)541-1559

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX 75711


RECEIVED
JUN 07 2019
BY:

Account: ROO802

Date: 05/31/2019

## Account: ROO802 - Statement of Account:

| Date | Reference | Description | Charges | Credits |
|---|---|---|---|---|
| 04/30/2019 | | Balance Forward | 2,596.77 | |
| 05/03/2019 | 9958 | Partial Payment Ck# 44218 - paid by | | (121.37) |
| | | Roosth Production Company check | | |
| 05/03/2019 | 9958 | Partial Payment Ck# 44218 | | (1,155.51) |
| | | New Balance Forward | 1,319.89 | |

## Prepaid Balance by Project:

| Property# | AFE# | Description | Beginning Balance | Pre-Pmts Applied | Balance Remaining |
|---|---|---|---|---|---|
| 1BRO04 | 309 | CCL&T 34-13 #1-WS | 6,329.10 | | 6,329.10 |
| 1BRO04 | 309-W | CCL&T 3-4 #1 | 616.32 | | 616.32 |
| | | **Prepaid Balance Totals:** | **6,945.42** | | **6,945.42** |

## Summary by LEASE:

| Property# | Description | Expenses | Pre-Pmts Applied | You Owe |
|---|---|---|---|---|
| | Unpaid Previous Balance | | | 1,319.89 |
| 1BRO04 | Southeast Brooklyn Oil Unit | 981.55 | | 981.55 |
| | **Totals:** | **981.55** | | **2,301.44** |

+92,000.200

Pd 5/31

**PLEASE PAY THIS AMOUNT** --------------^

Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.

4

From:  Sklar Exploration Co., L.L.C.
To:    Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 05/31/2019
Account: ROO802    Page   2

### LEASE: (1BRO04)  Southeast Brooklyn Oil Unit    County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| ***Survey, DOC Hearings, Permits*** | | | | | |
| 042919396 | Tom Joiner & Associates Inc.- Air permits/Fugitive emission monitoring, 2/2019 | 1 | 2,472.55 | 2,472.55 | 22.18 |
| ***Location Clean Up/Pit Closure*** | | | | | |
| 0808-0006159 | Republic Services #808 | 1 | 4.69 | | |
| 0808-0006159 | Republic Services #808 | 1 | 23.34 | | |
| 0484-0005195 | Republic Services #808 | 1 | 2.71 | | |
| 0484-0005195 | Republic Services #808 | 1 | 13.51 | 44.25 | 0.40 |
| ***Instru/Monitoring & Automation*** | | | | | |
| 1181485 | SPL, Inc.- Troubleshoot Total Flow issue, 3-7 | 1 | 769.75 | | |
| 3536 | BTech Service & Supply Inc.- Inspect/test/reset safety pneumatic shutdown system, 34-12 | 1 | 291.50 | | |
| 3537 | BTech Service & Supply Inc.- Inspect/test/reset safety pneumatic shutdown system, 3-4 | 1 | 291.50 | | |
| 3538 | BTech Service & Supply Inc.- Inspect/test/reset safety pneumatic shutdown system, 4-1 | 1 | 291.50 | | |
| 3539 | BTech Service & Supply Inc.- Inspect/test/reset safety pneumatic shutdown system, 33-10 | 1 | 291.50 | | |
| 3540 | BTech Service & Supply Inc.- 33-12 | 1 | 291.50 | | |
| 3542 | BTech Service & Supply Inc.- Inspect/test/reset safety pneumatic shutdown system, 35-13 | 1 | 291.50 | | |
| 3543 | BTech Service & Supply Inc.- Inspect/test/reset safety pneumatic shutdown system, 34-15 | 1 | 360.40 | | |
| 3544 | BTech Service & Supply Inc.- Inspect/test/reset safety pneumatic shutdown system, 3-7 | 1 | 291.50 | | |
| ARCI0012024 | Zedi US Inc.- 5/2019 | 1 | 99.00 | | |
| ARCI0012024 | Zedi US Inc.- 5/2019 | 1 | 99.00 | | |
| ARCI0012025 | Zedi US Inc.- 5/2019 | 1 | 99.00 | | |
| ARCI0012025 | Zedi US Inc.- 5/2019 | 1 | 99.00 | | |
| ARCI0012026 | Zedi US Inc.- 5/2019 | 1 | 99.00 | | |
| 19-00286 | KCS Automation, LLC- Troubleshoot problem with Zedi callout, 3-4/4-1 dual pad | 1 | 410.00 | 4,075.65 | 36.56 |
| ***Company Pumping - Gauging*** | | | | | |
| ALPU0519 | Pumper Time and Mileage - Young/Davis/Hester/Moye/Kinsey/Hoomes/Hart/Blackman | 1 | 16,222.14 | 16,222.14 | 145.51 |
| ***Telephone & Communications*** | | | | | |
| 19050100844 | Your Message Center, Inc. | 1 | 12.31 | 12.31 | 0.11 |
| ***Logging & Wireline*** | | | | | |
| 399 | Slickline South, LLC- 5K Pressure Control Equipment, 33-12 | 1 | 1,774.40 | | |
| 402 | Slickline South, LLC- 5K Pressure Control Equipment, 33-12 | 1 | 1,926.80 | 3,701.20 | 33.20 |
| ***Repairs & Maint-Surface Equip*** | | | | | |
| EWJD0419 | EW Bank Credit Card - Joel Davis - 04 02 2019 - Oil | 1 | 59.83 | | |

4

From:   Sklar Exploration Co., L.L.C.
To:     Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 05/31/2019
Account: ROO802   Page   3

**LEASE: (1BRO04)  Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| WMR19-3633 | Whirlwind Methane Recovery Systems, LLC- VRU repairs, 32-9 | 1 | 546.78 | | |
| 133317 | Union Oilfield Supply, Inc.- Brass gauge cocks, Red line sight glass, 3-4/4/1 | 1 | 208.01 | | |
| WMR19-3627 | Whirlwind Methane Recovery Systems, LLC- VRU, 32-9 (R13) | 1 | 180.00 | | |
| WMR19-3627 | Whirlwind Methane Recovery Systems, LLC- VRU, 3-4/4-1 | 1 | 180.00 | | |
| 22743 | Carnley Electric Inc- Replaced control fuse on drive, 3-7 | 1 | 180.00 | | |
| 22745 | Carnley Electric Inc- Troubleshoot wise guy, 34-15 | 1 | 180.00 | | |
| 22772 | Carnley Electric Inc- Replaced wise guy, converter, & card, 3-4 | 1 | 360.00 | | |
| WMR19-3628 | Whirlwind Methane Recovery Systems, LLC | 1 | 270.00 | | |
| WMR19-3628 | Whirlwind Methane Recovery Systems, LLC | 1 | 270.00 | | |
| WMR19-3628 | Whirlwind Methane Recovery Systems, LLC | 1 | 540.00 | | |
| WMR19-3628 | Whirlwind Methane Recovery Systems, LLC | 1 | 270.00 | | |
| 22792 | Carnley Electric Inc- Repaired connection in drive motor, 32-9 | 1 | 360.00 | | |
| 51619 | H&H Construction, LLC- Replace electric motor on Triplex, 35-13 | 1 | 1,002.00 | | |
| 0939-507978 | Consolidated Electrical Distributors Inc- Tape, bolts, 35-13 | 1 | 93.89 | | |
| 22819 | Carnley Electric Inc- Triplex pump motor repair, 35-13 | 1 | 360.00 | | |
| 98-22673 | Jimco Pumps- Parts for sump pump, 3-7 | 1 | 153.70 | | |
| 133772 | Union Oilfield Supply, Inc.- Anti-seize, Socket/wrench sets, Mallet, Shovel | 1 | 62.01 | | |
| 0939-508019 | Consolidated Electrical Distributors Inc- 150HP motor 447T TEFC | 1 | 9,205.90 | 14,482.12 | 129.91 |
| **Supplies** | | | | | |
| 133689 | Union Oilfield Supply, Inc.- Turkish wipers, Big mule wipes, Mud scale | 1 | 112.09 | 112.09 | 1.00 |
| **Salt Water Disposal** | | | | | |
| 54557 | Kelley Brothers Contractors, Inc.- 32-9 | 1 | 1,114.50 | | |
| 2019-05-002 | Wastewater Disposal Services, Inc.- 4-1 | 1 | 99.00 | | |
| 2019-05-002 | Wastewater Disposal Services, Inc.- 32-9 | 1 | 129.00 | | |
| 2019-05-002 | Wastewater Disposal Services, Inc.- 34-15 | 1 | 130.00 | | |
| 54661 | Kelley Brothers Contractors, Inc.- 33-12 | 1 | 531.50 | 2,004.00 | 17.98 |
| **Utilities** | | | | | |
| 613710006 | Southern Pine Electric Cooperative- 3/28-4/29/2019 | 1 | 521.56 | | |
| 613710046 | Southern Pine Electric Cooperative- 3/28-4/29/2019 | 1 | 5,985.45 | | |
| 613710050 | Southern Pine Electric Cooperative- 3/28-4/29/2019 | 1 | 5,566.02 | | |
| 613710057 | Southern Pine Electric Cooperative- 3/28-4/29/2019 | 1 | 10,211.55 | | |

4

From:  Sklar Exploration Co., L.L.C.  
To:  Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 05/31/2019  
Account: ROO802   Page   4

## LEASE: (1BRO04)  Southeast Brooklyn Oil Unit   (Continued)
## Expenses:   (Continued)

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| 613710063 | Southern Pine Electric Cooperative-3/28-4/29/2019 | 1 | 96.61 | | |
| 613710064 | Southern Pine Electric Cooperative-3/28-4/29/2019 | 1 | 5,050.87 | | |
| 613710075 | Southern Pine Electric Cooperative-3/28-4/29/2019 | 1 | 4,686.82 | | |
| 613710076 | Southern Pine Electric Cooperative-3/28-4/29/2019 | 1 | 4,229.11 | | |
| 613710077 | Southern Pine Electric Cooperative-3/28-4/29/2019 | 1 | 4,424.65 | | |
| 613710078 | Southern Pine Electric Cooperative-3/28-4/29/2019 | 1 | 3,671.58 | 44,444.22 | 398.67 |
| **Vacuum Truck** | | | | | |
| 54557 | Kelley Brothers Contractors, Inc.-Freshwater for POT, 32-9 | 1 | 380.00 | | |
| 54554 | Kelley Brothers Contractors, Inc.-Freshwater for POT, 34-12 | 1 | 237.50 | | |
| 54559 | Kelley Brothers Contractors, Inc.-Freshwater for POT, 3-4 (R13) | 1 | 190.00 | | |
| 54545 | Kelley Brothers Contractors, Inc.-Loaded/pulled all contents from concrete slab, 3-7 | 1 | 142.50 | | |
| 54546 | Kelley Brothers Contractors, Inc.- Put freshwater into POT | 1 | 237.50 | | |
| 54658 | Kelley Brothers Contractors, Inc.-Freshwater for POT, 33-10 (R13) | 1 | 145.00 | | |
| 54660 | Kelley Brothers Contractors, Inc.-Freshwater for POT, 3-4 (R13) | 1 | 287.50 | 1,620.00 | 14.53 |
| **Other Revenue Deductions** | | | | | |
| 0319TRAN | 03-19 Transportation Fee on 7,417 mcf @ $.50/mcf | 1 | 3,708.50 | 3,708.50 | 33.27 |
| **COPAS Overhead** | | | | | |
| RBO37182 | Adm Overhead - Producing | 1 | 16,155.20 | 16,155.20 | 144.91 |
| | **Total Lease Operating Expense** | | | 109,054.23 | 978.23 |

## Intangible Completion Costs
### Engineering & Supervision Svcs

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| TM0519CC | Operation Engineer Time and Mileage - Campbell | 1 | 128.14 | | |
| TM0519RW | Engineering Time - West | 1 | 240.96 | 369.10 | 3.32 |
| | **Total Intangible Completion Costs** | | | 369.10 | 3.32 |

| | **Total Expenses for LEASE** | | | 109,423.33 | 981.55 |

| LEASE Summary: | Wrk Int | | Expenses | You Owe |
|---|---|---|---|---|
| 1BRO04 | 0.00897017 | | 981.55 | 981.55 |

4

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA 71101
(303)541-1559

# Settlement Statement

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX 75711



Account: ROO802

Date: 06/30/2019

### Account: ROO802 - Statement of Account:

| Date | Reference | Description | Charges | Credits |
|---|---|---|---|---|
| 05/31/2019 | | Balance Forward | 2,301.44 | |
| 06/05/2019 | 10023 | Payment-Thank You! Ck# 44274 - paid by Roosth Production Company check | | (1,316.49) |
| | | New Balance Forward | 984.95 | |

### Prepaid Balance by Project:

| Property# | AFE# | Description | Beginning Balance | Pre-Pmts Applied | Balance Remaining |
|---|---|---|---|---|---|
| 1BRO04 | 309 | CCL&T 34-13 #1-WS | 6,329.10 | 47.88 | 6,281.22 |
| 1BRO04 | 309-W | CCL&T 3-4 #1 | 616.32 | | 616.32 |
| | | **Prepaid Balance Totals:** | **6,945.42** | **47.88** | **6,897.54** |

### Summary by LEASE:    *966.46*

| Property# | Description | Expenses | Pre-Pmts Applied | You Owe |
|---|---|---|---|---|
| | Unpaid Previous Balance | | | 984.95 |
| 1BRO04 | Southeast Brooklyn Oil Unit    *492000.200 01* | 1,010.94 | 47.88 | 963.06 |
| | *SE Brooklyn* **Totals:** | **1,010.94** | **47.88** | **1,948.01** |

**PLEASE PAY THIS AMOUNT ----------------->** *220-800*

*260-800      963.06*
*220-800       47.88*
*220 800    < 47.88>*
*260 - 800      3.40*

Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.

4

From:   Sklar Exploration Co., L.L.C.

To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 06/30/2019

Account: ROO802    Page   2

### LEASE: (1BRO04)  Southeast Brooklyn Oil Unit    County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Location Preparation/Dirt Work* | | | | | |
| 0194 | Southern Erosion Control- Graded Whynott Road & roads behind Laydown Yard | 1 | 938.90 | 938.90 | 8.42 |
| *Location Clean Up/Pit Closure* | | | | | |
| 000255 | Vegetation Management Services- Vegetation control | 1 | 3,550.00 | | |
| 000256 | Vegetation Management Services- Vegetation control | 1 | 950.00 | | |
| 0808-0006182 | Republic Services #808 | 1 | 46.80 | | |
| 0484-0005206 | Republic Services #808 | 1 | 29.10 | | |
| 000257 | Vegetation Management Services- Vegetation control | 1 | 187.50 | 4,763.40 | 42.73 |
| *Engineering & Supervision* | | | | | |
| TM0619RW | Engineering Time-West | 1 | 361.44 | 361.44 | 3.24 |
| *Instru/Monitoring & Automation* | | | | | |
| 19-00295 | KCS Automation, LLC- Swap out meter | 1 | 600.00 | | |
| 1184467 | SPL, Inc.- Troubleshoot sales meter that was asleep | 1 | 415.00 | | |
| 1184475 | SPL, Inc.- Calibration | 1 | 916.15 | | |
| 19-00312 | KCS Automation, LLC- Troubleshoot offline well | 1 | 410.00 | | |
| 1184476 | SPL, Inc.- Calibration | 1 | 141.78 | | |
| 19-00317 | KCS Automation, LLC- Replaced battery on POT | 1 | 438.20 | | |
| ARCI0012147 | Zedi US Inc.- 6/2019 | 1 | 99.00 | | |
| ARCI0012148 | Zedi US Inc.- 6/2019 | 1 | 99.00 | | |
| ARCI0012148 | Zedi US Inc.- 6/2019 | 1 | 99.00 | | |
| ARCI0012148 | Zedi US Inc.- 6/2019 | 1 | 99.00 | | |
| ARCI0012149 | Zedi US Inc.- 6/2019 | 1 | 99.00 | 3,515.13 | 31.53 |
| *Chemicals* | | | | | |
| 18351 | White Resources LLC- P-278 | 1 | 1,128.90 | | |
| 18352 | White Resources LLC- P-278 | 1 | 1,317.05 | | |
| 18353 | White Resources LLC- P-278 | 1 | 564.45 | | |
| 18354 | White Resources LLC- P-278 | 1 | 1,411.13 | | |
| 18359 | White Resources LLC- P-278 | 1 | 282.23 | | |
| 18360 | White Resources LLC- P-278 | 1 | 564.45 | | |
| 18361 | White Resources LLC- P-278 | 1 | 564.45 | | |
| 910090605 | Baker Hughes, a GE Company, LLC- Paraffin Inhibitor | 1 | 2,557.04 | 8,389.70 | 75.26 |
| *Company Pumping - Gauging* | | | | | |
| ALPU0619 | Pumper Time and Mileage-Young/Hester/Hoomes/Hart/Moye/Blackman/Davis/Kinsey/Hinote | 1 | 17,020.73 | 17,020.73 | 152.68 |
| *Telephone & Communications* | | | | | |
| 19060100844 | Your Message Center, Inc. | 1 | 12.31 | 12.31 | 0.11 |
| *Repairs & Maint-Surface Equip* | | | | | |
| WMR19-3634 | Whirlwind Methane Recovery Systems, LLC- Monthly VRU | 1 | 1,350.00 | | |
| WMR19-3640 | Whirlwind Methane Recovery Systems, LLC- VRU repairs | 1 | 2,095.27 | | |
| 98-22802 | Jimco Pumps- Pump parts | 1 | 162.72 | | |
| 22875 | Carnley Electric Inc- Replaced fan capacitor in drive, 34-12 | 1 | 360.00 | | |
| 22895 | Carnley Electric Inc- Tank gauge maintenance | 1 | 296.05 | | |

4

From:  Sklar Exploration Co., L.L.C.
To:    Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 06/30/2019
Account: ROO802    Page   3

**LEASE: (1BRO04) Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:    (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| 535651 | The McPherson Companies, Inc.-Proteck EP 320 gear oil | 1 | 45.63 | | |
| 546691 | The McPherson Companies, Inc.-Proteck gear oil | 1 | 577.89 | | |
| 547488 | The McPherson Companies, Inc.-Proteck EP 320 gear oil | 1 | 288.95 | | |
| 134146 | Union Oilfield Supply, Inc.- Nipples, ball valves, tape | 1 | 355.90 | 5,532.41 | 49.63 |
| **Salt Water Disposal** | | | | | |
| 2019-05-006 | Wastewater Disposal Services, Inc.-5/16-31/2019 | 1 | 128.00 | | |
| 54935 | Kelley Brothers Contractors, Inc. | 1 | 1,015.50 | | |
| 54914 | Kelley Brothers Contractors, Inc. | 1 | 1,054.00 | | |
| 54915 | Kelley Brothers Contractors, Inc. | 1 | 531.50 | 2,729.00 | 24.48 |
| **Utilities** | | | | | |
| 613710006 | Southern Pine Electric Cooperative-4/29-5/30/2019 | 1 | 494.22 | | |
| 613710046 | Southern Pine Electric Cooperative-4/29-5/30/2019 | 1 | 5,135.57 | | |
| 613710050 | Southern Pine Electric Cooperative-4/29-5/30/2019 | 1 | 4,900.22 | | |
| 613710057 | Southern Pine Electric Cooperative-4/29-5/30/2019 | 1 | 9,929.42 | | |
| 613710063 | Southern Pine Electric Cooperative-4/29-5/30/2019 | 1 | 96.06 | | |
| 613710064 | Southern Pine Electric Cooperative-4/29-5/30/2019 | 1 | 5,057.76 | | |
| 613710075 | Southern Pine Electric Cooperative-4/29-5/30/2019 | 1 | 4,516.36 | | |
| 613710076 | Southern Pine Electric Cooperative-4/29-5/30/2019 | 1 | 4,600.38 | | |
| 613710077 | Southern Pine Electric Cooperative-4/29-5/30/2019 | 1 | 4,312.67 | | |
| 613710078 | Southern Pine Electric Cooperative-4/29-5/30/2019 | 1 | 3,512.42 | 42,555.08 | 381.72 |
| **Vacuum Truck** | | | | | |
| 38920 | American Remediation & Environmental Inc | 1 | 1,520.00 | | |
| 54910 | Kelley Brothers Contractors, Inc.-Freshwater for POT | 1 | 190.00 | 1,710.00 | 15.34 |
| **Other Revenue Deductions** | | | | | |
| 0419TRAN | 04-19 Transportation Fee on 7,358 mcf @ $.50/mcf | 1 | 3,679.00 | 3,679.00 | 33.00 |
| **COPAS Overhead** | | | | | |
| RBO37394 | Adm Overhead - Producing | 1 | 16,155.20 | 16,155.20 | 144.92 |
| **Total Lease Operating Expense** | | | | **107,362.30** | **963.06** |

**Leasehold Costs**
**Legal Fees**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| 408524 | Armbrecht Jackson LLP- Unitization matters | 309-1 | 4,007.00 | | |
| 408779 | Armbrecht Jackson LLP- Motion to interplead funds | 309-1 | 819.00 | | |
| 408780 | Armbrecht Jackson LLP- Tax matters/Insurance | 309-1 | 512.00 | 5,338.00 | 47.88 |
| **Total Leasehold Costs** | | | | **5,338.00** | **47.88** |

**Total Expenses for LEASE**  ·  **112,700.30**  ·  **1,010.94**

4

From:   Sklar Exploration Co., L.L.C.
To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 06/30/2019
Account: ROO802   Page   4

## LEASE: (1BRO04)  Southeast Brooklyn Oil Unit   (Continued)

| Billing Summary | Deck 1 | | 1 | 0.00897017 | 107,362.30 | 963.06 |
|---|---|---|---|---|---|---|
| by Deck/AFE | BCP | | 309-1 | 0.00897017 | 5,338.00 | 47.88 |

| LEASE Summary | | Wrk Int | | | Expenses | Pre-Pmt Applied | You Owe |
|---|---|---|---|---|---|---|---|
| 1BRO04 | | 0.00897017 | | | 1,010.94 | 47.88 | 963.06 |

4

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA  71101
(303)541-1559

# *Settlement Statement*



RECEIVED
AUG 0 9 2019
BY:_____

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX  75711

Account:  ROO802

Date:  07/31/2019

**Account: ROO802 - Statement of Account:**

| Date | Reference | Description | Charges | Credits |
|------|-----------|-------------|---------|---------|
| 06/30/2019 | | Balance Forward | 1,948.01 | |
| 07/08/2019 | 10078 | Payment-Thank You! Ck# 44331 | | (981.55) |
| | | New Balance Forward | 966.46 | |

**Prepaid Balance by Project:**

| Property# | AFE# | Description | Beginning Balance | Pre-Pmts Applied | Balance Remaining |
|-----------|------|-------------|-------------------|------------------|-------------------|
| 1BRO04 | 309 | CCL&T 34-13 #1-WS | 6,281.22 | 84.20 | 6,197.02 |
| 1BRO04 | 309-W | CCL&T 3-4 #1 | 616.32 | | 616.32 |
| | | **Prepaid Balance Totals:** | **6,897.54** | **84.20** | **6,813.34** |

**Summary by LEASE:**

| Property# | Description | Expenses | Pre-Pmts Applied | You Owe |
|-----------|-------------|----------|------------------|---------|
| | Unpaid Previous Balance | | | 966.46  *Pd 7/31* |
| 1BRO04 | Southeast Brooklyn Oil Unit *492,000,200.01* | 1,246.94 | 84.20 | 1,162.74 |
| | *SE*  **Totals:** | **1,246.94** | **84.20** | ~~2,129.20~~ |

## PLEASE PAY THIS AMOUNT ----------------------^

*360-800    1161.66*
*200-800    65.92*
*230-800    11.25*
*240-800    8.11*
*220-800    ‹ 84.20 ›*

**Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.**

4

From:   Sklar Exploration Co., L.L.C.
To:     Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 07/31/2019
Account: ROO802    Page    2

### LEASE: (1BRO04)  Southeast Brooklyn Oil Unit    County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Location Clean Up/Pit Closure* | | | | | |
| 0808-0006224 | Republic Services #808 | 1 | 46.80 | | |
| 0484-0005265 | Republic Services #808 | 1 | 29.54 | 76.34 | 0.68 |
| *Instru/Monitoring & Automation* | | | | | |
| 19-00334 | KCS Automation, LLC- Change out tank battery | 1 | 205.00 | | |
| 1186124 | SPL, Inc.- Sample procurement | 1 | 878.48 | | |
| 1186123 | SPL, Inc.- Calibrated/Inspected TotalFlow | 1 | 165.42 | | |
| 2030018487 | SPL, Inc.- Gas thru Heptanes | 1 | 448.00 | 1,696.90 | 15.23 |
| *Chemicals* | | | | | |
| 18366 | White Resources LLC- P-278 | 1 | 376.30 | | |
| 18367 | White Resources LLC- P-278 | 1 | 1,128.90 | | |
| 18368 | White Resources LLC- P-278 | 1 | 470.38 | | |
| 18369 | White Resources LLC- P-278 | 1 | 376.30 | | |
| 18370 | White Resources LLC- P-278 | 1 | 1,128.90 | | |
| 18371 | White Resources LLC- P-278 | 1 | 564.45 | | |
| 18372 | White Resources LLC- P-278 | 1 | 1,128.90 | | |
| 18373 | White Resources LLC- P-278 | 1 | 376.30 | | |
| 910210497 | Baker Hughes, a GE Company, LLC- Paraffin Inhibitor | 1 | 1,304.17 | 6,854.60 | 61.48 |
| *Company Pumping - Gauging* | | | | | |
| ALPU0719 | Pumper Time & Mileage- Davis/Hester/Young/Hart/Moye/Kinsey/ Hoomes/Blackman/Hinote | 1 | 18,579.49 | 18,579.49 | 166.66 |
| *Telephone & Communications* | | | | | |
| 19070100844 | Your Message Center, Inc. | 1 | 12.31 | 12.31 | 0.11 |
| *Logging & Wireline* | | | | | |
| 423 | Slickline South, LLC | 1 | 4,306.40 | 4,306.40 | 38.63 |
| *Repairs & Maint-Surface Equip* | | | | | |
| WMR19-3646 | Whirlwind Methane Recovery Systems, LLC- VRU | 1 | 426.00 | | |
| 22961 | Carnley Electric Inc- Replaced transmitter at well head | 1 | 180.00 | | |
| 23008 | Carnley Electric Inc- CCL&T 4-1 replaced fan drive | 1 | 540.00 | | |
| WMR19-3641 | Whirlwind Methane Recovery Systems, LLC | 1 | 1,350.00 | | |
| 134575 | Union Oilfield Supply, Inc.- SWT & oil tank repair | 1 | 690.06 | | |
| 134639 | Union Oilfield Supply, Inc.- Heater treater repair | 1 | 503.58 | 3,689.64 | 33.10 |
| *Salt Water Disposal* | | | | | |
| 55026 | Kelley Brothers Contractors, Inc. | 1 | 1,348.00 | | |
| 55139 | Kelley Brothers Contractors, Inc. | 1 | 436.50 | | |
| 55225 | Kelley Brothers Contractors, Inc. | 1 | 1,467.50 | | |
| 55223 | Kelley Brothers Contractors, Inc. | 1 | 484.00 | 3,736.00 | 33.51 |
| *Utilities* | | | | | |
| 613710006 | Southern Pine Electric Cooperative- 5/30-6/27/2019 | 1 | 446.06 | | |
| 613710046 | Southern Pine Electric Cooperative- 5/30-6/27/2019 | 1 | 4,903.89 | | |
| 613710050 | Southern Pine Electric Cooperative- 5/30-6/27/2019 | 1 | 4,643.00 | | |
| 613710057 | Southern Pine Electric Cooperative- 5/30-6/27/2019 | 1 | 8,966.73 | | |
| 613710063 | Southern Pine Electric Cooperative- | 1 | 95.53 | | |

4

From:   Sklar Exploration Co., L.L.C.
To:     Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 07/31/2019
Account: ROO802   Page   3

**LEASE: (1BRO04) Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| | 5/30-6/27/2019 | | | | |
| 613710064 | Southern Pine Electric Cooperative-5/30-6/27/2019 | 1 | 4,519.79 | | |
| 613710075 | Southern Pine Electric Cooperative-5/30-6/27/2019 | 1 | 4,052.41 | | |
| 613710076 | Southern Pine Electric Cooperative-5/30-6/27/2019 | 1 | 4,419.77 | | |
| 613710077 | Southern Pine Electric Cooperative-5/30-6/27/2019 | 1 | 3,901.48 | | |
| 613710078 | Southern Pine Electric Cooperative-5/30-6/27/2019 | 1 | 3,098.93 | 39,047.59 | 350.27 |
| **Vacuum Truck** | | | | | |
| 55019 | Kelley Brothers Contractors, Inc.- f/w into POT | 1 | 95.00 | | |
| 55020 | Kelley Brothers Contractors, Inc.- f/w into POT | 1 | 237.50 | | |
| 55147 | Kelley Brothers Contractors, Inc.- f/w for POT | 1 | 190.00 | | |
| 55153 | Kelley Brothers Contractors, Inc.- Pulled tank bottoms | 1 | 142.50 | | |
| 55225 | Kelley Brothers Contractors, Inc.- Pull contents from tank for valve repair, f/w in POT | 1 | 620.00 | | |
| 55223 | Kelley Brothers Contractors, Inc.- Chemicals & f/w in POT | 1 | 335.00 | | |
| 55214 | Kelley Brothers Contractors, Inc.- Pull contents from treater tank for repairs | 1 | 332.50 | 1,952.50 | 17.51 |
| **Sales/Use Tax** | | | | | |
| 0619ALA | AL sales/use tax not paid by vendor 6/2019 | 1 | 24.91 | 24.91 | 0.22 |
| **Other Revenue Deductions** | | | | | |
| 0519TRAN | 05-19 Transportation Fee on 7,335 mcf @ $.50/mcf | 1 | 3,667.50 | 3,667.50 | 32.90 |
| **COPAS Overhead** | | | | | |
| RBO37447 | Adm Overhead - Producing | 1 | 16,155.20 | 16,155.20 | 144.92 |
| | **Total Lease Operating Expense** | | | **99,799.38** | **895.22** |
| **Insurance** | | | | | |
| **Insurance** | | | | | |
| 19-20LIA | 2019-2020 General Liability and Excess Umbrella | 1 | 19,997.88 | 19,997.88 | 179.38 |
| 19-20OEE | 2019-2020 OEE Insurance | INS01 | 8,858.02 | 8,858.02 | 87.06 |
| | **Total Insurance** | | | **28,855.90** | **266.44** |
| **Leasehold Costs** | | | | | |
| **Legal Fees** | | | | | |
| 070519262 | Tom Joiner & Associates Inc.- Hearing follow-up March-May 2019 | 309-1 | 2,523.85 | | |
| 409052 | Armbrecht Jackson LLP- Motions/Complaints | 309-1 | 4,034.50 | | |
| 409051 | Armbrecht Jackson LLP- Proposals | 309-1 | 790.50 | 7,348.85 | 65.92 |
| | **Total Leasehold Costs** | | | **7,348.85** | **65.92** |
| **Intangible Drilling Costs** | | | | | |
| **Engineering & Supervision Svcs** | | | | | |
| TM0719EV | Field Supervisor Time & Mileage-Vines | 309-1 | 1,013.18 | | |
| TM0719RW | Engineering Time-West | 309-1 | 240.96 | 1,254.14 | 11.25 |
| | **Total Intangible Drilling Costs** | | | **1,254.14** | **11.25** |

4

From:   Sklar Exploration Co., L.L.C.
To:     Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 07/31/2019
Account: ROO802    Page   4

**LEASE: (1BRO04)  Southeast Brooklyn Oil Unit    (Continued)**
**Expenses:    (Continued)**

| | Reference  Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Intangible Completion Costs** | | | | | |
| *Engineering & Supervision Svcs* | | | | | |
| | TM0719EV  Field Supervisor Time & Mileage-Vines | 309-2 | 783.32 | 783.32 | 7.03 |
| | TM0719RW  Engineering Time-West | 1 | 120.48 | 120.48 | 1.08 |
| | **Total Intangible Completion Costs** | | | 903.80 | 8.11 |
| | **Total Expenses for LEASE** | | | 138,162.07 | 1,246.94 |
| Billing Summary | Deck 1 | 1 | 0.00897017 | 119,917.74 | 1,075.68 |
| by Deck/AFE | BCP | 309-1 | 0.00897017 | 8,602.99 | 77.17 |
| | ACP | 309-2 | 0.00897017 | 783.32 | 7.03 |
| | Insurance Deck | INS01 | 0.00982869 | 8,858.02 | 87.06 |

| LEASE Summary: | Wrk Int | Expenses | Pre-Pmt Applied | You Owe |
|---|---|---|---|---|
| 1BRO04 | multiple | 1,246.94 | 84.20 | 1,162.74 |

4

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA  71101
(303)541-1559

# *Settlement Statement*



RECEIVED
SEP 10 2019
BY:_____

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX  75711

Account:  ROO802

Date:  08/31/2019

## Account: ROO802 - Statement of Account:

| Date | Reference | Description | Charges | Credits |
|------|-----------|-------------|---------|---------|
| 07/31/2019 | | Balance Forward | 2,129.20 | |
| 08/05/2019 | 10139 | Partial Payment Ck# 44372 | | (963.06) |
| 08/05/2019 | 10139 | Partial Payment Ck# 44372 | | (3.40) |
| | | New Balance Forward | 1,162.74 | |

## Prepaid Balance by Project:

| Property# | AFE# | Description | Beginning Balance | Pre-Pmts Applied | Balance Remaining |
|-----------|------|-------------|-------------------|------------------|-------------------|
| 1BRO04 | 309 | CCL&T 34-13 #1-WS | 6,197.02 | 89.46 | 6,107.56 |
| 1BRO04 | 309-W | CCL&T 3-4 #1 | 616.32 | 45.95 | 570.37 |
| | | Prepaid Balance Totals: | 6,813.34 | 135.41 | 6,677.93 |

## Summary by LEASE:

| Property# | Description | Expenses | Pre-Pmts Applied | You Owe |
|-----------|-------------|----------|------------------|---------|
| | Unpaid Previous Balance | | | 1,162.74 |
| 1BRO04 | Southeast Brooklyn Oil Unit | 2,006.76 | 135.41 | 1,871.35 |
| | Totals: | 2,006.76 | 135.41 | 3,034.00 |

*492000.200.0*   *Au 130*

PLEASE PAY THIS AMOUNT ----------------------^   *SB*

*SE*

*260-800    1146.33*
*220-800      22.50*
*230-800      89.46*
*240-800     748.47*
*280-800    <135.41>*

**Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.**

5

From:   Sklar Exploration Co., L.L.C.
To:     Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 08/31/2019
Account: ROO802   Page   2

### LEASE: (1BRO04) Southeast Brooklyn Oil Unit   County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Location Clean Up/Pit Closure* | | | | | |
| 0808-0006282 | Republic Services #808 | 1 | 46.53 | | |
| 0484-0005274 | Republic Services #808 | 1 | 30.51 | 77.04 | 0.69 |
| *Engineering & Supervision* | | | | | |
| TM0819HD | Production Superintendent Time & Mileage-DeLeon | 1 | 355.32 | | |
| TM0819RW | Engineer Time-West | 1 | 240.96 | 596.28 | 5.35 |
| *Instru/Monitoring & Automation* | | | | | |
| 19-00403 | KCS Automation, LLC- Replaced batteries in SWT & POT | 1 | 671.40 | | |
| 19-00405 | KCS Automation, LLC- Recycled power to modbus stick on tank display | 1 | 205.00 | 876.40 | 7.86 |
| *Chemicals* | | | | | |
| 18412 | White Resources LLC- P-278 | 1 | 376.30 | | |
| 18413 | White Resources LLC- P-278 | 1 | 282.23 | | |
| 18414 | White Resources LLC- P-278 | 1 | 752.60 | | |
| 18415 | White Resources LLC- P-278 | 1 | 470.38 | | |
| 910296169 | Baker Hughes, a GE Company, LLC- Paraffin Inhibitor | 1 | 1,304.17 | | |
| 18416 | White Resources LLC- P-278 | 1 | 1,128.90 | | |
| 18417 | White Resources LLC- P-278 | 1 | 470.38 | | |
| 18418 | White Resources LLC- P-278 | 1 | 1,128.90 | | |
| 18419 | White Resources LLC- P-278 | 1 | 564.45 | 6,478.31 | 58.11 |
| *Company Pumping - Gauging* | | | | | |
| ALPU0819 | Pumper Time & Mileage-Davis/Hester/Hart/Moye/Kinsey/Hoomes/Blackman/Hinote | 1 | 16,951.91 | 16,951.91 | 152.06 |
| *Equipment Rentals* | | | | | |
| 2467259 | Thompson Gas- Tank rent | 1 | 1.07 | 1.07 | 0.01 |
| *Telephone & Communications* | | | | | |
| 19080100844 | Your Message Center, Inc. | 1 | 12.31 | 12.31 | 0.11 |
| *Logging & Wireline* | | | | | |
| 429 | Slickline South, LLC | 1 | 5,736.71 | 5,736.71 | 51.46 |
| *Repairs & Maint-Surface Equip* | | | | | |
| WMR19-3647 | Whirlwind Methane Recovery Systems, LLC | 1 | 1,350.00 | | |
| 56219 | H&H Construction, LLC- Change out 2" water dump line on heater treater | 1 | 984.00 | | |
| 23056 | Carnley Electric Inc- Repaired wire on flare ignitor | 1 | 270.00 | | |
| 23077 | Carnley Electric Inc- Replaced breaker on hp drive | 1 | 540.00 | | |
| 23081 | Carnley Electric Inc- Replaced motor on hp drive | 1 | 540.00 | | |
| 0939-509165 | Consolidated Electrical Distributors Inc- Fuses | 1 | 56.10 | 3,740.10 | 33.55 |
| *Supplies* | | | | | |
| EWJD0719 | East West Bank Credit Card - Joel Davis - 07 02 2019 - Wasp spray | 1 | 23.16 | 23.16 | 0.21 |
| *Salt Water Disposal* | | | | | |
| 55329 | Kelley Brothers Contractors, Inc. | 1 | 484.00 | | |
| 55447 | Kelley Brothers Contractors, Inc. | 1 | 436.50 | | |
| 55479 | Kelley Brothers Contractors, Inc. | 1 | 484.00 | | |
| 55544 | Kelley Brothers Contractors, Inc. | 1 | 294.00 | 1,698.50 | 15.24 |

From: Sklar Exploration Co., L.L.C.
To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 08/31/2019
Account: ROO802   Page   3

**LEASE: (1BRO04) Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| *Utilities* | | | | | |
| REIMBURSE | Pruet Production Co- Dec 2018 Pruet wells | 1 | 18,182.01 | | |
| 613710006 | Southern Pine Electric Cooperative- 6/27-7/30/2019 | 1 | 519.84 | | |
| 613710046 | Southern Pine Electric Cooperative- 6/27-7/30/2019 | 1 | 5,609.37 | | |
| 613710050 | Southern Pine Electric Cooperative- 6/27-7/30/2019 | 1 | 5,705.43 | | |
| 613710057 | Southern Pine Electric Cooperative- 6/27-7/30/2019 | 1 | 9,731.94 | | |
| 613710063 | Southern Pine Electric Cooperative- 6/27-7/30/2019 | 1 | 99.26 | | |
| 613710064 | Southern Pine Electric Cooperative- 6/27-7/30/2019 | 1 | 4,887.78 | | |
| 613710075 | Southern Pine Electric Cooperative- 6/27-7/30/2019 | 1 | 4,979.33 | | |
| 613710076 | Southern Pine Electric Cooperative- 6/27-7/30/2019 | 1 | 5,252.93 | | |
| 613710077 | Southern Pine Electric Cooperative- 6/27-7/30/2019 | 1 | 4,596.43 | | |
| 613710078 | Southern Pine Electric Cooperative- 6/27-7/30/2019 | 1 | 3,619.87 | 63,184.19 | 566.77 |
| *Vacuum Truck* | | | | | |
| 39901 | American Remediation & Environmental Inc- 6/26/19 f/w for POT | 1 | 285.00 | | |
| 55331 | Kelley Brothers Contractors, Inc.- Freshwater for POT | 1 | 380.00 | | |
| 55334 | Kelley Brothers Contractors, Inc.- Pulled tank bottoms | 1 | 142.50 | | |
| 55329 | Kelley Brothers Contractors, Inc. | 1 | 332.50 | | |
| 55339 | Kelley Brothers Contractors, Inc.- f/w into POT | 1 | 142.50 | | |
| 55474 | Kelley Brothers Contractors, Inc.- Pulled contents from sump on concrete slab at triplex pump | 1 | 95.00 | | |
| 55479 | Kelley Brothers Contractors, Inc.- Load f/w into POT | 1 | 332.50 | | |
| 55469 | Kelley Brothers Contractors, Inc.- Pulled contents from load box | 1 | 142.50 | | |
| 55544 | Kelley Brothers Contractors, Inc.- f/w into POT | 1 | 285.00 | | |
| 55551 | Kelley Brothers Contractors, Inc.- Pull oil/water from around well head | 1 | 95.00 | 2,232.50 | 20.03 |
| *Other Revenue Deductions* | | | | | |
| 0619TRAN | 06-19 Transportation Fee on 5,698 mcf @ $.50/mcf | 1 | 2,849.00 | 2,849.00 | 25.55 |
| *COPAS Overhead* | | | | | |
| RBO37556 | Adm Overhead - Producing | 1 | 16,155.20 | 16,155.20 | 144.92 |
| | **Total Lease Operating Expense** | | | **120,612.68** | **1,081.92** |
| **Insurance** | | | | | |
| *Insurance* | | | | | |
| 19-20 IN | 2019-2020 Inland Marine Insurance | 1 | 5,716.22 | 5,716.22 | 51.27 |
| | **Total Insurance** | | | **5,716.22** | **51.27** |

From:   Sklar Exploration Co., L.L.C.
To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 08/31/2019
Account: ROO802   Page   4

**LEASE: (1BRO04)  Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Leasehold Costs** | | | | | |
| *Recording Fees* | | | | | |
| REIMBURSE | Kelly L. Baker | 1 | 1,252.00 | | |
| RECORDING | Kelly L. Baker- Conecuh County | 1 | 1,256.00 | 2,508.00 | 22.50 |
| | **Total Leasehold Costs** | | | **2,508.00** | **22.50** |
| **Intangible Drilling Costs** | | | | | |
| *Survey, DOC Hearings, Permits* | | | | | |
| 68046 | Engineering Service- Survey proposed well location & drill site | 309-1 | 2,761.00 | 2,761.00 | 24.77 |
| *Engineering & Supervision Svcs* | | | | | |
| TM0819EV | Field Supervisor Time & Mileage - Vines | 309-1 | 6,528.18 | | |
| TM0819MM | Production Geologist Time-McDowell | 309-1 | 34.06 | | |
| TM0819RW | Engineer Time-West | 309-1 | 240.96 | | |
| EWEV0819 | East West Bank Credit Card - Edward Vines - 08 02 2019 - Meal | 309-1 | 8.26 | 6,811.46 | 61.10 |
| *Coring & Analysis* | | | | | |
| 0036080 | CGG Services (US) Inc.- Refile | 309-1 | 289.22 | 289.22 | 2.59 |
| *Miscellaneous* | | | | | |
| 11443 | Precision Signs- Well signs, CCLT 34-13 #1 WS | 309-1 | 112.00 | 112.00 | 1.00 |
| | **Total Intangible Drilling Costs** | | | **9,973.68** | **89.46** |
| **Intangible Completion Costs** | | | | | |
| *Surface Damage & ROW* | | | | | |
| 189036 | Cedar Creek Land & Timber Inc. | 1 | 4,325.50 | 4,325.50 | 38.80 |
| *Engineering & Supervision Svcs* | | | | | |
| TM0819JV | Operations Engineer Time & Mileage-Vittitow | 309-W1-1 | 7,201.00 | | |
| TM0819RW | Engineer Time-West | 309-W1-1 | 240.96 | 7,441.96 | 66.76 |
| EWJD0819 | East West Bank Credit Card - Joel Davis - 08 02 2019 - Gas, Gas Jug | 1 | 98.95 | 98.95 | 0.89 |
| *Coil Tubing Unit* | | | | | |
| 90014940 | C&J Spec-Rent Services, Inc. | 309-W1-1 | 52,781.14 | 52,781.14 | 473.45 |
| *Transportation & Trucking* | | | | | |
| 65434 | SRT Oil Field Service, LLC- Haul forklift | 309-W1-1 | 900.00 | | |
| 65435 | SRT Oil Field Service, LLC- Haul equipment | 309-W1-1 | 1,080.00 | 1,980.00 | 17.76 |
| *Logging & Wireline* | | | | | |
| 428 | Slickline South, LLC | 309-W-1 | 4,965.20 | 4,965.20 | 44.54 |
| 439 | Slickline South, LLC | 309-W1-1 | 4,685.20 | | |
| 442 | Slickline South, LLC | 309-W1-1 | 1,723.60 | 6,408.80 | 57.49 |
| *Supplies* | | | | | |
| 134728 | Union Oilfield Supply, Inc.- Coverall, Sprayer | 309-W-1 | 157.41 | 157.41 | 1.41 |
| *Swabbing Unit* | | | | | |
| 18187 | Pitts Swabbing Service, Inc. | 309-W1-1 | 4,565.00 | 4,565.00 | 40.95 |
| *Vacuum Truck* | | | | | |
| 55550 | Kelley Brothers Contractors, Inc.- f/w for acid job | 309-W1-1 | 715.00 | 715.00 | 6.42 |
| | **Total Intangible Completion Costs** | | | **83,438.96** | **748.47** |

5

From: Sklar Exploration Co., L.L.C.
To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 08/31/2019
Account: ROO802   Page   5

**LEASE: (1BRO04)  Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Tangible Completion Costs** | | | | | |
| *Electrical & Control Systems* | | | | | |
| 0939-508775 | Consolidated Electrical Distributors Inc-Mtr Ckt Protector | 1 | 1,465.73 | 1,465.73 | 13.14 |
| | **Total Tangible Completion Costs** | | | **1,465.73** | **13.14** |

| | | | | Total | Your Share |
|---|---|---|---|---|---|
| | **Total Expenses for LEASE** | | | **223,715.27** | **2,006.76** |
| Billing Summary | Deck 1 | 1 | 0.00897017 | 134,727.08 | 1,208.52 |
| by Deck/AFE | BCP | 309-1 | 0.00897017 | 9,973.68 | 89.46 |
| | Workover | 309-W-1 | 0.00897017 | 5,122.61 | 45.95 |
| | Workover | 309-W1-1 | 0.00897017 | 73,891.90 | 662.83 |

| LEASE Summary: | Wrk Int | Expenses | Pre-Pmt Applied | You Owe |
|---|---|---|---|---|
| 1BRO04 | 0.00897017 | 2,006.76 | 135.41 | 1,871.35 |

5

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA 71101
(303)541-1559

# *Settlement Statement*



Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX 75711

Account: ROO802

Date: 09/30/2019

**Account: ROO802 - Statement of Account:**

| Date | Reference | Description | Charges | Credits |
|------|-----------|-------------|---------|---------|
| 08/31/2019 | | Balance Forward | 3,034.09 | |
| 09/05/2019 | 10204 | Partial Payment Ck# 44446 | | (1,162.74) |
| | | New Balance Forward | 1,871.35 | |

**Prepaid Balance by Project:**

| Property# | AFE# | Description | Beginning Balance | Pre-Pmts Applied | Balance Remaining |
|-----------|------|-------------|-------------------|------------------|-------------------|
| 1BRO04 | 309 | CCL&T 34-13 #1-WS | 6,107.56 | 3,548.56 | 2,559.00 |
| 1BRO04 | 309-W | CCL&T 4-1 #1 | 570.37 | (47.68) | 618.05 |
| | | **Prepaid Balance Totals:** | **6,677.93** | **3,500.88** | **3,177.05** |

**Summary by LEASE:**

| Property# | Description | Expenses | Pre-Pmts Applied | You Owe |
|-----------|-------------|----------|------------------|---------|
| | Unpaid Previous Balance | | | 1,871.35 |
| 1BRO04 | Southeast Brooklyn Oil Unit *492000, 200.01* | 5,233.02 | 3,500.88 | 1,732.14 |
| | *SE* **Totals:** | **5,233.02** | **3,500.88** | **3,603.49** |

**PLEASE PAY THIS AMOUNT ----------------------^**

*260·800      2682.52*
*080·800      46.24*
*230·800      2375.60*
*240·800      128.66*
*220·800      ⟨3500.88⟩*

**Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.**

From:  Sklar Exploration Co., L.L.C.

To:    Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 09/30/2019

Account: ROO802    Page   2

### LEASE: (1BRO04) Southeast Brooklyn Oil Unit    County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| ***Survey, DOC Hearings, Permits*** | | | | | |
| 082919396 | Tom Joiner & Associates Inc.- Air Permits | 1 | 4,947.94 | | |
| 090619396 | Tom Joiner & Associates Inc.- Fugitive emissions monitoring, Air Permits | 1 | 3,826.63 | | |
| 092019396 | Tom Joiner & Associates Inc.- Air Permits, 6/2019, ADEM-Fugitive Emissions-LDAR onsite monitoring prep | 1 | 825.97 | | |
| 092019396 | Tom Joiner & Associates Inc.- Air Permits, 6/2019 | 1 | 1,951.04 | 11,551.58 | 103.62 |
| ***Location Preparation/Dirt Work*** | | | | | |
| 4864 | C.R. Pate Logging, Inc.- Oversize rock | 1 | 1,378.62 | 1,378.62 | 12.37 |
| ***Location Clean Up/Pit Closure*** | | | | | |
| 0808-0006304 | Republic Services #808 | 1 | 47.05 | | |
| 0484-0005286 | Republic Services #808 | 1 | 29.71 | 76.76 | 0.68 |
| ***Engineering & Supervision*** | | | | | |
| TM0919HD | Production Superintendent Time & Mileage - DeLeon | 1 | 541.31 | | |
| TM0919RW | Engineer Time - West | 1 | 1,325.28 | 1,866.59 | 16.75 |
| ***Instru/Monitoring & Automation*** | | | | | |
| BARC010101 | Bristol, Inc.- Zedi Access Monitoring 7/2019 | 1 | 99.00 | | |
| BARC010104 | Bristol, Inc.- Zedi Access Monitoring 7/2019 | 1 | 99.00 | | |
| BARC010105 | Bristol, Inc.- Zedi Access Monitoring 7/2019 | 1 | 99.00 | | |
| BARC010108 | Bristol, Inc.- Zedi Access Monitoring 7/2019 | 1 | 99.00 | | |
| BARC010120 | Bristol, Inc.- Zedi Access Monitoring 7/2019 | 1 | 99.00 | | |
| 1190229 | SPL, Inc.- Collected historical data from Total Flow- CCLT 35-13 | 1 | 165.45 | | |
| 1190229 | SPL, Inc.- Collected historical data from Total Flow- Thomasson 33-12 | 1 | 165.45 | | |
| 1190221 | SPL, Inc.- Calibrate/Inspect Total Flow- CCLT 35-13 | 1 | 211.67 | | |
| 1190221 | SPL, Inc.- Calibrate/Inspect Total Flow- CCLT 34-12 | 1 | 211.67 | | |
| BRT010071 | Bristol, Inc.- Zedi Access Monitoring 7/2019, Pate 3-11 | 1 | 99.00- | | |
| 19-00455 | KCS Automation, LLC- Troubleshoot transmittal problem | 1 | 205.00 | | |
| 19-00463 | KCS Automation, LLC- Troubleshoot radios losing signal | 1 | 410.00 | | |
| 19-00464B | KCS Automation, LLC- Troubleshoot radio signal loss | 1 | 834.00 | | |
| 19-00468 | KCS Automation, LLC- Troubleshoot issues with tank level readings | 1 | 300.00 | | |
| 1190235 | SPL, Inc.- Flare meter inspection, CCL&T 34-12 | 1 | 172.50 | | |
| 19-00470 | KCS Automation, LLC- Replaced tank battery | 1 | 205.00 | | |
| 1190242 | SPL, Inc.- Total Flow calibration, CCLT 34-12 | 1 | 165.45 | | |
| BARC011148 | Bristol, Inc.- Zedi Access Monitoring 8/2019 | 1 | 99.00 | | |
| BARC011149 | Bristol, Inc.- Zedi Access Monitoring | 1 | 99.00 | | |

7

From: Sklar Exploration Co., L.L.C.
To: Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 09/30/2019
Account: ROO802   Page   3

**LEASE: (1BRO04) Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| | 8/2019 | | | | |
| BARC011152 | Bristol, Inc.- Zedi Access Monitoring 8/2019 | 1 | 99.00 | | |
| BARC011164 | Bristol, Inc.- Zedi Access Monitoring 8/2019 | 1 | 99.00 | | |
| 19-00485 | KCS Automation, LLC- Installed casing pressure on tree, brought it to totalflow, called zedi to get online | 1 | 410.00 | | |
| 19-00488 | KCS Automation, LLC- Troubleshoot meter malfunction, CCLT 4-1 | 1 | 600.00 | | |
| 19-00498 | KCS Automation, LLC- Replace battery on tank 37, CCLT 32-9 (R13) | 1 | 438.20 | 5,286.39 | 47.42 |
| **Chemicals** | | | | | |
| 18476 | White Resources LLC- P-278 | 1 | 1,222.98 | | |
| 17733 | White Resources LLC- P-278 | 1 | 470.38 | | |
| 18474 | White Resources LLC- P-278 | 1 | 564.45 | | |
| 18475 | White Resources LLC- P-278 | 1 | 940.75 | | |
| 18477 | White Resources LLC- P-278 | 1 | 564.45 | | |
| 18478 | White Resources LLC- P-278 - CCL&T 3-4 | 1 | 1,128.90 | | |
| 910433980 | Baker Hughes, a GE Company, LLC- Paraffin Inhibitor | 1 | 1,304.17 | 6,196.08 | 55.58 |
| **Company Pumping - Gauging** | | | | | |
| ALPU0919 | Pumper Time & Mileage - Young/Davis/Hester/Hinote/Kinsey/Hoomes/Hart/Blackman/Moye | 1 | 14,934.14 | 14,934.14 | 133.96 |
| **Telephone & Communications** | | | | | |
| 19090100844 | Your Message Center, Inc. | 1 | 12.31 | 12.31 | 0.11 |
| **Water** | | | | | |
| 1BRO04C | East West Bank Credit Card Chase Kinsey, 03-02-19, Plugs for water well | 1 | 193.40 | 193.40 | 1.74 |
| **Logging & Wireline** | | | | | |
| 1BRO04C | Slickline South LLC | 1 | 4,965.20 | | |
| 447 | Slickline South, LLC | 1 | 5,684.80 | 10,650.00 | 95.53 |
| **Repairs & Maint-Surface Equip** | | | | | |
| WMR19-3655 | Whirlwind Methane Recovery Systems, LLC | 1 | 1,350.00 | | |
| 98-23355 | Jimco Pumps- Triplex pump repairs | 1 | 1,495.66 | | |
| 98-23358 | Jimco Pumps- Jet pump & Triplex pump repairs | 1 | 4,105.38 | | |
| 23175 | Carnley Electric Inc- VRU connections repairs | 1 | 270.00 | | |
| 60819 | H&H Construction, LLC- Pull shed top & load Triplex for repairs, replace Triplex after repairs | 1 | 1,560.00 | | |
| 23218 | Carnley Electric Inc- Replaced fuse on VRU - CCL&T 3-4 (R13) | 1 | 360.00 | | |
| 0939-509320 | Consolidated Electrical Distributors Inc- 1/2HP 3PH TEFC motor, CCLT 3-4 (R13) | 1 | 387.74 | 9,528.78 | 85.47 |
| **Repairs & Maint/Sub-Surface Eq** | | | | | |
| 98-23360 | Jimco Pumps- Sub-surface pump parts | 1 | 2,150.74 | | |
| 98-23371 | Jimco Pumps- Sub-surface pump parts | 1 | 3,671.84 | 5,822.58 | 52.23 |
| **Supplies** | | | | | |
| 1BRO04C | Union Oilfield Supply, Inc. - Coverall, Sprayer | 1 | 157.41 | | |
| 135633 | Union Oilfield Supply, Inc.- Zep 45 lubricant | 1 | 215.80 | 373.21 | 3.35 |

7

From:  Sklar Exploration Co., L.L.C.
To:    Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 09/30/2019
Account: ROO802    Page    4

**LEASE: (1BRO04)  Southeast Brooklyn Oil Unit    (Continued)**
**Expenses:    (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Salt Water Disposal** | | | | | |
| 38612 | American Remediation & Environmental Inc- 4/26-5/16/2019 | 1 | 380.00 | | |
| 38612 | American Remediation & Environmental Inc- 4/26-5/16/2019 | 1 | 380.00 | | |
| 55657 | Kelley Brothers Contractors, Inc. | 1 | 729.50 | | |
| 55730 | Kelley Brothers Contractors, Inc | 1 | 1,493.00 | 2,982.50 | 26.75 |
| **Utilities** | | | | | |
| 613710006 | Southern Pine Electric Cooperative- 7/30-8/29/2019 | 1 | 475.42 | | |
| 613710046 | Southern Pine Electric Cooperative- 7/30-8/29/2019 | 1 | 4,608.08 | | |
| 613710050 | Southern Pine Electric Cooperative- 7/30-8/29/2019 | 1 | 5,264.34 | | |
| 613710057 | Southern Pine Electric Cooperative- 7/30-8/29/2019 | 1 | 9,751.37 | | |
| 613710063 | Southern Pine Electric Cooperative- 7/30-8/29/2019 | 1 | 92.09 | | |
| 613710064 | Southern Pine Electric Cooperative- 7/30-8/29/2019 | 1 | 4,422.31 | | |
| 613710075 | Southern Pine Electric Cooperative- 7/30-8/29/2019 | 1 | 4,226.35 | | |
| 613710076 | Southern Pine Electric Cooperative- 7/30-8/29/2019 | 1 | 4,870.40 | | |
| 613710077 | Southern Pine Electric Cooperative- 7/30-8/29/2019 | 1 | 4,271.08 | | |
| 613710078 | Southern Pine Electric Cooperative- 7/30-8/29/2019 | 1 | 3,502.89 | 41,484.33 | 372.12 |
| **Vacuum Truck** | | | | | |
| 55648 | Kelley Brothers Contractors, Inc.- Pump cellar | 1 | 95.00 | | |
| 55652 | Kelley Brothers Contractors, Inc.- f/w into POT | 1 | 237.50 | | |
| 55655 | Kelley Brothers Contractors, Inc.- f/w into POT | 1 | 287.50 | | |
| 55685 | Kelley Brothers Contractors, Inc.- f/w into POT | 1 | 285.00 | | |
| 55686 | Kelley Brothers Contractors, Inc.- Pull tank bottoms on stock tanks, pulled contents from load box | 1 | 142.50 | | |
| 55692 | Kelley Brothers Contractors, Inc.- Suck oil/water from cellar, tried to make it drain to low spot pump out, load box pump into SWT | 1 | 237.50 | | |
| 55695 | Kelley Brothers Contractors, Inc.- f/w + chemicals into POT | 1 | 332.50 | | |
| 55726 | Kelley Brothers Contractors, Inc.- f/w into POT | 1 | 332.50 | 1,950.00 | 17.50 |
| **Other Revenue Deductions** | | | | | |
| 986591 | Pruet Production Co- Gas Gathering 01/19 | 1 | 30.50 | | |
| 986591 | Pruet Production Co- Gas Gathering 01/19 | 1 | 1,309.50 | | |
| 986591 | Pruet Production Co- Gas Gathering 02/19 | 1 | 1,240.00 | | |
| 986591 | Pruet Production Co- Gas Gathering 04/19 | 1 | 57.00 | | |
| 986591 | Pruet Production Co- Gas Gathering 04/19 | 1 | 1,648.00 | | |

7

From: Sklar Exploration Co., L.L.C.
To: Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 09/30/2019
Account: ROO802   Page   5

**LEASE: (1BRO04) Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| 0719TRAN | 07/19 Transportation Fee on 6,347 mcf @ $.50/mcf | 1 | 3,173.50 | | |
| 994064 | Pruet Production Co- Gas gathering 05/19 | 1 | 673.00 | | |
| 994065 | Pruet Production Co- Gas gathering 05/19 | 1 | 1,681.50 | | |
| 997657 | Pruet Production Co- Gas gathering 06/19 | 1 | 138.00 | | |
| 997658 | Pruet Production Co- Gas gathering 06/19 | 1 | 1,568.50 | | |
| 1003613 | Pruet Production Co- Gas gathering 07/19 | 1 | 1,578.00 | 13,097.50 | 117.48 |
| **COPAS Overhead** | | | | | |
| RBO37774 | Adm Overhead - Producing | 1 | 16,155.20 | 16,155.20 | 144.92 |
| | **Total Lease Operating Expense** | | | **143,539.97** | **1,287.58** |
| **Leasehold Costs** | | | | | |
| **Legal Fees** | | | | | |
| 409281 | Armbrecht Jackson LLP- GCM ORRI | 1 | 1,514.22 | | |
| 409282 | Armbrecht Jackson LLP- Title/Suspense | 1 | 457.00 | | |
| 409524 | Armbrecht Jackson LLP- Interpleader proceeds/Notice of compliance | 1 | 532.50 | | |
| 409523 | Armbrecht Jackson LLP- UOA/Certificate of Effectiveness | 1 | 2,321.50 | | |
| 19-09032 | T.W. McGuire & Associates, Inc.- Purchase evaluation | 1 | 330.00 | 5,155.22 | 46.24 |
| | **Total Leasehold Costs** | | | **5,155.22** | **46.24** |
| **Intangible Drilling Costs** | | | | | |
| **Location Preparation/Dirt Work** | | | | | |
| 1043 | Mid South Anchor Service, LLC- Pulled to 25,000lbs | 309-1 | 1,922.79 | 1,922.79 | 17.25 |
| **Setting Conductor Casing** | | | | | |
| 896 | A1 Conductor & Rathole, LLC- Drilled/set 8x8 cellar, Drilled/set/cemented 80ft of 16" conductor pipe | 309-1 | 14,210.00 | 14,210.00 | 127.47 |
| **Daywork with Drill Pipe** | | | | | |
| 10440 | Moncla Workover & Drilling | 309-1 | 86,545.77 | 86,545.77 | 776.33 |
| **Engineering & Supervision Svcs** | | | | | |
| EWEV0919 | East West Bank Credit Card - Edward Vines - 09 02 2019 - Hotel | 309-1 | 500.00 | | |
| 7069 | Planning Thru Completion, LLC- 9/14-28/2019 | 309-1 | 25,831.37 | 26,331.37 | 236.19 |
| **Mud & Chemicals** | | | | | |
| 9562 | Quality Drilling Fluids, Inc. | 309-1 | 9,368.21 | | |
| 9563 | Quality Drilling Fluids, Inc. | 309-1 | 32,466.14 | 41,834.35 | 375.26 |
| **Cementing & Equipment** | | | | | |
| 2023 | Oilfield Partners Energy Services, LLC | 309-1 | 27,888.41 | 27,888.41 | 250.17 |
| **Casing Crew & Laydown Machine** | | | | | |
| 51565 | T & T Welding Service- Rig up & pick up 9 5/8 casing | 309-1 | 5,280.00 | 5,280.00 | 47.36 |
| **Equipment Rentals** | | | | | |
| 59590 | R & R Rentals & Hot Shot, Inc.- Deliver water/sewer systems, Port-a-John, trash trailer | 309-1 | 3,469.24 | | |
| 59568 | R & R Rentals & Hot Shot, Inc.- | 309-1 | 3,465.38 | | |

7

From:   Sklar Exploration Co., L.L.C.
To:     Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 09/30/2019
Account: ROO802    Page    6

## LEASE: (1BRO04) Southeast Brooklyn Oil Unit    (Continued)
## Expenses:    (Continued)

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| | Mileage/labor to deliver/setup mobile home & support systems | | | | |
| 59577 | R & R Rentals & Hot Shot, Inc.- Truck/water hauler, Labor to fill water system | 309-1 | 1,197.97 | | |
| 59589 | R & R Rentals & Hot Shot, Inc.- Mileage/labor to deliver/setup mobile home & support systems | 309-1 | 3,920.61 | | |
| 59617 | R & R Rentals & Hot Shot, Inc.- Deliver/rig up water/sewer system | 309-1 | 2,074.92 | | |
| 59618 | R & R Rentals & Hot Shot, Inc.- Mileage/labor to deliver/setup mobile home & support systems | 309-1 | 3,920.61 | | |
| 59619 | R & R Rentals & Hot Shot, Inc.- Deliver water/sewer system, rig up cell booster | 309-1 | 1,556.67 | | |
| 59620 | R & R Rentals & Hot Shot, Inc.- Truck/driver deliver cell booster | 309-1 | 649.75 | 20,255.15 | 181.69 |
| **Water** | | | | | |
| 51553 | T & T Welding Service- Pusher w/crew to put down waterlines | 309-1 | 3,275.00 | 3,275.00 | 29.38 |
| **Fuel** | | | | | |
| 5103384 | Kelley Oil Company- Diesel | 309-1 | 6,932.93 | 6,932.93 | 62.19 |
| **Transportation & Trucking** | | | | | |
| 65619 | SRT Oil Field Service, LLC- Haul Eastern forklift | 309-1 | 900.00 | | |
| 5738716 | Acme Truck Line, Inc.- Stabilizers | 309-1 | 274.00 | | |
| 1329758 | American Eagle Logistics- Haul stabilizers | 309-1 | 1,087.82 | | |
| 65777 | SRT Oil Field Service, LLC- Hauled 3 light plants to location | 309-1 | 600.00 | | |
| 51567 | T & T Welding Service- Furnished operator, equipment & assistant to deliver centrifugal pumps to location w/hoses | 309-1 | 1,630.00 | 4,491.82 | 40.29 |
| **Contract Labor** | | | | | |
| 51554 | T & T Welding Service- Pusher w/crew to unload casing, pull protectors, drift, tally | 309-1 | 3,860.00 | | |
| 51560 | T & T Welding Service- Pusher w/helper to cut mats for kelly hole | 309-1 | 1,900.00 | | |
| 51557 | T & T Welding Service- Welder to nipple up conductor pipe & build pipe stands.  Hung shaker slide & gathered material | 309-1 | 3,494.00 | | |
| 51566 | T & T Welding Service- Furnished pusher to deliver 3" gas pit pumps to location & check pumps already on location | 309-1 | 560.00 | | |
| 478560 | Camp Service and Repair, LLC- Provided roustabouts to off load casing on location | 309-1 | 2,365.00 | | |
| 478561 | Camp Service and Repair, LLC- Provided roustabouts to clean ditches & pressure ash substructure & move gumbo mud away from rig & pick up trash off location | 309-1 | 4,825.00 | | |
| 478308 | Camp Service and Repair, LLC- Provided roustabouts to move casing to location & pull protectors, drift, strap, | 309-1 | 4,665.00 | 21,669.00 | 194.38 |

7

From:  Sklar Exploration Co., L.L.C.
To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 09/30/2019
Account: ROO802   Page   7

**LEASE: (1BRO04)  Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| | clean | | | | |
| **COPAS Overhead** | | | | | |
| ROL0919 | Rig on Location | 309-1 | 4,196.42 | 4,196.42 | 37.64 |
| | **Total Intangible Drilling Costs** | | | **264,833.01** | **2,375.60** |
| **Intangible Completion Costs** | | | | | |
| **Engineering & Supervision Svcs** | | | | | |
| TM0919RW | Engineer Time - West | 309-W3-1 | 361.64 | 361.64 | 3.24 |
| TM0919RW | Engineer Time - West | 309-W2-1 | 361.44 | 361.44 | 3.24 |
| **Water** | | | | | |
| 1BRO04C | East West Bank Credit Card Chase Kinsey, 03-02-19, Plugs for water well | 309-W-1 | 193.40- | 193.40- | 1.73- |
| **Logging & Wireline** | | | | | |
| 1BRO04C | Slickline South LLC | 309-W-1 | 4,965.20- | 4,965.20- | 44.54- |
| **Production Testing** | | | | | |
| PN0026282 | Eastern Fishing & Rental Tools- Flowback | 309-W1-1 | 18,686.30 | 18,686.30 | 167.62 |
| **Pipeline Expenses** | | | | | |
| 135550 | Union Oilfield Supply, Inc.- 6" bullet nose criss cross poly pig | 309-W1-1 | 250.01 | 250.01 | 2.24 |
| **Supplies** | | | | | |
| 1BRO04C | Union Oilfield Supply, Inc. - Coverall, Sprayer | 309-W-1 | 157.41- | 157.41- | 1.41- |
| | **Total Intangible Completion Costs** | | | **14,343.38** | **128.66** |
| **Tangible Drilling Costs** | | | | | |
| **Surface Casing** | | | | | |
| 19-12593 | B & L Pipeco Services, L.L.C.- 9-5/8" 36.00# J55 R-3 LTC ERW | 309-1 | 51,714.30 | 51,714.30 | 463.89 |
| **Wellhead Equipment** | | | | | |
| 20237416 | GE Oil & Gas- Casing head assembly, Tubing head assembly | 309-1 | 12,544.64 | 12,544.64 | 112.52 |
| | **Total Tangible Drilling Costs** | | | **64,258.94** | **576.41** |
| **Tangible Completion Costs** | | | | | |
| **Production Casing & Liners** | | | | | |
| 19-12705 | B & L Pipeco Services, L.L.C.- 5-1/2" 17.00# L80HC R-3 LTC SMLS | 309-2 | 66,210.87 | 66,210.87 | 593.93 |
| **Rods, Downhole Pumps, Related** | | | | | |
| 98-23352 | Jimco Pumps | 1 | 24,747.29 | 24,747.29 | 221.98 |
| **Electrical & Control Systems** | | | | | |
| 0939-509423 | Consolidated Electrical Distributors Inc- 50W 12V pwr-sply | 309-2 | 67.71 | | |
| 139856 | Mississippi Gauge & Supply Co.- Tattletale | 309-2 | 224.25 | 291.96 | 2.62 |
| | **Total Tangible Completion Costs** | | | **91,250.12** | **818.53** |
| | **Total Expenses for LEASE** | | | **583,380.64** | **5,233.02** |

| Billing Summary by Deck/AFE | | | | |
|---|---|---|---|---|
| Deck 1 | 1 | 0.00897017 | 173,442.48 | 1,555.80 |
| BCP | 309-1 | 0.00897017 | 329,091.95 | 2,952.01 |
| ACP | 309-2 | 0.00897017 | 66,502.83 | 596.55 |
| Workover | 309-W-1 | 0.00897017 | 5,316.01- | 47.68- |
| Workover | 309-W1-1 | 0.00897017 | 18,936.31 | 169.86 |
| Workover | 309-W2-1 | 0.00897017 | 361.44 | 3.24 |
| Workover | 309-W3-1 | 0.00897017 | 361.64 | 3.24 |

| LEASE Summary: 1BRO04 | Wrk Int 0.00897017 | Expenses 5,233.02 | Pre-Pmt Applied 3,500.88 | You Owe 1,732.14 |
|---|---|---|---|---|

7

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA 71101
(303)541-1559

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX 75711


RECEIVED
NOV 13 2019
BY

Account: ROO802

Date: 10/31/2019

## Account: ROO802 - Statement of Account:

| Date | Reference | Description | Charges | Credits |
|------|-----------|-------------|---------|---------|
| 09/30/2019 | | Balance Forward | 3,603.49 | |
| 10/04/2019 | 10269 | Partial Payment Ck# 44498 | | (1,871.35) |
| | | New Balance Forward | 1,732.14 | |

## Prepaid Balance by Project:

| Property# | AFE# | Description | Beginning Balance | Pre-Pmts Applied | Balance Remaining |
|-----------|------|-------------|-------------------|------------------|-------------------|
| 1BRO04 | 309 | CCL&T 34-13 #1-WS | 2,559.00 | 2,559.00 | 0.00 |
| 1BRO04 | 309-W | CCL&T 3-4 #1 | 618.05 | 134.23 | 483.82 |
| | | **Prepaid Balance Totals:** | **3,177.05** | **2,693.23** | **483.82** |

## Summary by LEASE:

| Property# | Description | Expenses | Pre-Pmts Applied | You Owe |
|-----------|-------------|----------|------------------|---------|
| | Unpaid Previous Balance | | | 1,732.14 Pd 10/31 |
| 1BRO04 SE | Southeast Brooklyn Oil Unit | 31,430.14 | 2,693.23 | 28,736.91 |
| 1CED62 | CCL&T 3-7 #1 (SE Brooklyn) | (19,959.20) | | (19,959.20) |
| | **Totals:** | **11,470.94** | **2,693.23** | **10,509.85** |

PLEASE PAY THIS AMOUNT --------------------

8777.71

260-800.     948.43
220.800      7.53
IDC  230-800  3591.94
ICC  240-800  936.30 ✓
     250-800  25,945.94

250  800  (19,959.20)
220-800  (2693.23)

8777.71

Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.

15

From:  Sklar Exploration Co., L.L.C.
To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 10/31/2019
Account: ROO802   Page   2

### LEASE: (1BRO04)  Southeast Brooklyn Oil Unit   County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Survey, DOC Hearings, Permits* | | | | | |
| 092419396 | Tom Joiner & Associates Inc.- Air permits, 7/2019 | 1 | 851.84 | | |
| 092419396 | Tom Joiner & Associates Inc.- Air permits, 7/2019 | 1 | 1,835.82 | | |
| 102319396 | Tom Joiner & Associates Inc.- Air Permits, Aug-Sept 2019 | 1 | 1,188.78 | | |
| 102319396 | Tom Joiner & Associates Inc.- Air Permits, Aug-Sept 2019 | 1 | 1,265.77 | | |
| FACILITY#103 | Alabama Department of Environmental Mgmt- Air Permits | 1 | 672.58 | | |
| FACILITY#502 | Alabama Department of Environmental Mgmt- Air Permits | 1 | 1,950.55 | 7,765.34 | 69.66 |
| *Location Clean Up/Pit Closure* | | | | | |
| 0808-0006348 | Republic Services #808 | 1 | 176.84 | | |
| 0484-0005347 | Republic Services #808 | 1 | 36.90 | 213.74 | 1.91 |
| *Instru/Monitoring & Automation* | | | | | |
| 30564 | Parker & Son, Inc.- Subcontractor, Scada | 1 | 312.00 | | |
| 30566 | Parker & Son, Inc.- Subcontractor, Scada | 1 | 312.00 | | |
| 1192440 | SPL, Inc.- Quarterly gas sample procurement & H2S testing, 9/2019 | 1 | 237.76 | | |
| 1192442 | SPL, Inc.- Quarterly gas sample procurement & H2S testing, 9/2019 | 1 | 636.30 | | |
| 2030018768 | SPL, Inc.- Gas thru Heptanes, Cylinder cleaning | 1 | 448.00 | | |
| 19-00534 | KCS Automation, LLC- Replaced battery on tank 77 | 1 | 438.20 | 2,384.26 | 21.39 |
| *Company Pumping - Gauging* | | | | | |
| ALPU1019 | Pumper Time & Mileage - Davis/Hester/Hart/Moye/Kinsey/Hoomes/Blackman/Hinote | 1 | 15,235.03 | 15,235.03 | 136.66 |
| *Telephone & Communications* | | | | | |
| 19100100844 | Your Message Center, Inc. | 1 | 12.31 | 12.31 | 0.11 |
| *Fuel* | | | | | |
| 1500137897 | Thompson Gas- Propane, CCLT 33-10 (R13) | 1 | 1,597.99 | 1,597.99 | 14.34 |
| *Repairs & Maint-Surface Equip* | | | | | |
| WMR19-3662 | Whirlwind Methane Recovery Systems, LLC | 1 | 1,350.00 | | |
| 23266 | Carnley Electric Inc- Troubleshoot problem with rod pump | 1 | 180.00 | | |
| 98-23585 | Jimco Pumps- Changed hub on motor, had to cut it off- Thomasson 33-12 | 1 | 2,103.57 | | |
| WMR19-3657 | Whirlwind Methane Recovery Systems, LLC- VRU | 1 | 577.14 | | |
| WMR19-3661 | Whirlwind Methane Recovery Systems, LLC- VRU | 1 | 645.43 | | |
| 0939-509582 | Consolidated Electrical Distributors Inc- Unilet, Bushing, Liq-tite- CCLT 35-13 | 1 | 87.60 | | |
| 23315 | Carnley Electric Inc- Flexed in/hooked up air compressor, CCLT 35-13 | 1 | 270.00 | | |
| 673361 | The McPherson Companies, Inc.- Proteck EP 320 Gear Oil 35lb | 1 | 407.18 | 5,620.92 | 50.42 |
| *Salt Water Disposal* | | | | | |
| 55841 | Kelley Brothers Contractors, Inc. | 1 | 531.50 | | |

From:   Sklar Exploration Co., L.L.C.
To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 10/31/2019
Account: ROO802   Page   3

**LEASE: (1BRO04)  Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| 55886 | Kelley Brothers Contractors, Inc. | 1 | 579.00 | | |
| 56016 | Kelley Brothers Contractors, Inc. | 1 | 436.50 | 1,547.00 | 13.87 |
| **Utilities** | | | | | |
| 613710006 | Southern Pine Electric Cooperative- 8/29-9/29/2019 | 1 | 505.08 | | |
| 613710046 | Southern Pine Electric Cooperative- 8/29-9/29/2019 | 1 | 5,701.72 | | |
| 613710050 | Southern Pine Electric Cooperative- 8/29-9/29/2019 | 1 | 5,503.75 | | |
| 613710057 | Southern Pine Electric Cooperative- 8/29-9/29/2019 | 1 | 10,758.40 | | |
| 613710063 | Southern Pine Electric Cooperative- 8/29-9/29/2019 | 1 | 107.49 | | |
| 613710064 | Southern Pine Electric Cooperative- 8/29-9/29/2019 | 1 | 5,264.33 | | |
| 613710075 | Southern Pine Electric Cooperative- 8/29-9/29/2019 | 1 | 5,156.29 | | |
| 613710076 | Southern Pine Electric Cooperative- 8/29-9/29/2019 | 1 | 5,242.52 | | |
| 613710077 | Southern Pine Electric Cooperative- 8/29-9/29/2019 | 1 | 4,561.59 | | |
| 613710078 | Southern Pine Electric Cooperative- 8/29-9/29/2019 | 1 | 4,210.81 | 47,011.98 | 421.71 |
| **Vacuum Truck** | | | | | |
| 55888 | Kelley Brothers Contractors, Inc.- Pull oil/water from BS&W line | 1 | 332.50 | | |
| 55957 | Kelley Brothers Contractors, Inc.- f/w into POT | 1 | 285.00 | 617.50 | 5.54 |
| **Other Revenue Deductions** | | | | | |
| 0819TRAN | 08-19 Transportation Fee on 11,737 mcf @ $.50/mcf | 1 | 5,868.50 | | |
| #S63106 07-1 | Pruet Production Co  - Gas gathering 07-19 | 1 | 1,702.00 | 7,570.50 | 67.91 |
| **COPAS Overhead** | | | | | |
| RBO37936 | Adm Overhead - Producing | 1 | 16,155.20 | 16,155.20 | 144.91 |
| | **Total Lease Operating Expense** | | | 105,731.77 | 948.43 |
| **Geological & Geophysical** | | | | | |
| **Geological** | | | | | |
| 2132 | Geological Survey of Alabama- Pate 12/12 & CCLT 13-5 well logs | 1 | 242.19 | 242.19 | 2.17 |
| | **Total Geological & Geophysical** | | | 242.19 | 2.17 |
| **Leasehold Costs** | | | | | |
| **Legal Fees** | | | | | |
| 409742 | Armbrecht Jackson LLP- ADEM | 1 | 203.50 | | |
| 409748 | Armbrecht Jackson LLP- ADEM | 1 | 252.00 | 455.50 | 4.09 |
| 409747 | Armbrecht Jackson LLP- Harwood arbitration email | 309-1 | 142.00 | 142.00 | 1.27 |
| | **Total Leasehold Costs** | | | 597.50 | 5.36 |
| **Intangible Drilling Costs** | | | | | |
| **Location Preparation/Dirt Work** | | | | | |
| 55958 | Kelley Brothers Contractors, Inc.- Furnish labor & equipment to build location, lay mats, haul dirt & dig pit | 309-1 | 60,170.72 | 60,170.72 | 539.75 |
| **Location Clean Up/Pit Closure** | | | | | |
| 139959 | Mississippi Gauge & Supply Co.- Pressure gauge, water column gauge | 309-1 | 546.20 | 546.20 | 4.90 |

From:   Sklar Exploration Co., L.L.C.
To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 10/31/2019
Account: ROO802   Page   4

**LEASE: (1BRO04)  Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Daywork with Drill Pipe** | | | | | |
| 10455 | Moncla Workover & Drilling- 9/25-29/2019 | 309-1 | 66,575.00 | | |
| 10473 | Moncla Workover & Drilling- 9/26-10/2/2019 | 309-1 | 25,180.00 | | |
| 10490 | Moncla Workover & Drilling- 10/3-9/2019 | 309-1 | 51,562.49 | 143,317.49 | 1,285.58 |
| **Daywork - Rig Equip & Repair** | | | | | |
| 10515 | Moncla Workover & Drilling- Inspection of BHA & Subs, Machine & Recut | 309-1 | 5,574.50 | 5,574.50 | 50.00 |
| **Engineering & Supervision Svcs** | | | | | |
| TM1019EV | Field Supervisor Time & Mileage - Vines | 309-1 | 5,336.49 | | |
| 7191 | Planning Thru Completion, LLC- 9/29-10/7/2019 | 309-1 | 15,623.23 | 20,959.72 | 188.01 |
| **Mud & Chemicals** | | | | | |
| A31203 | Quality Drilling Fluids, Inc.- Drive by checks | 309-1 | 1,457.50 | | |
| 9568 | Quality Drilling Fluids, Inc. | 309-1 | 17,096.93 | | |
| 9578-CREDIT | Quality Drilling Fluids, Inc. | 309-1 | 1,702.36- | | |
| 9576-CREDIT | Quality Drilling Fluids, Inc. | 309-1 | 6,815.61- | 10,036.46 | 90.03 |
| **Cementing & Equipment** | | | | | |
| 901 | A1 Conductor & Rathole, LLC- Furnished concrete to fill cellar out for top out after running surface casing | 309-1 | 1,043.04 | 1,043.04 | 9.36 |
| **Casing Crew & Laydown Machine** | | | | | |
| 39286 | Pipe Pros, LLC- 9 5/8" run | 309-1 | 16,900.00 | | |
| 877839 | Camp Service and Repair, LLC- Provided roustabouts & laydown machine to lay down pipe & pick up casing | 309-1 | 4,150.00 | 21,050.00 | 188.82 |
| **Equipment Rentals** | | | | | |
| 903 | A1 Conductor & Rathole, LLC- 4" pump | 309-1 | 2,665.00 | | |
| PN0026511 | Eastern Fishing & Rental Tools- 10K extendable boom forklift | 309-1 | 3,570.00 | | |
| 51614 | T & T Welding Service- Water line/generators | 309-1 | 12,077.50 | | |
| 19882 | Wade Services, Inc.- Deliver/set up/rental of frac tank | 309-1 | 1,337.50 | | |
| PN0026515 | Eastern Fishing & Rental Tools- 4-bulb light plants | 309-1 | 819.00 | | |
| 51607 | T & T Welding Service- Centrifugal pumps, 3" Gas pumps | 309-1 | 4,870.00 | | |
| 20238730 | GE Oil & Gas- Running tool/Wear bushing | 309-1 | 720.00 | | |
| 59700 | R & R Rentals & Hot Shot, Inc.- Pick up/empty trash trailer, pump/clean port-a- john | 309-1 | 1,748.54 | | |
| PN0026576 | Eastern Fishing & Rental Tools- 10K Extendable boom forklift | 309-1 | 1,680.00 | | |
| PN0026578 | Eastern Fishing & Rental Tools- 4-bulb light towers | 309-1 | 410.60 | | |
| PN0026579 | Eastern Fishing & Rental Tools- Diesel fuel f/light plants | 309-1 | 190.80 | | |
| 19897 | Wade Services, Inc.- Frac tank rental, pickup, clean out & disposal | 309-1 | 1,091.40 | | |
| 59737 | R & R Rentals & Hot Shot, Inc.- Mobile home, water/sewer systems | 309-1 | 3,572.10 | | |
| 59738 | R & R Rentals & Hot Shot, Inc.- Mobile | 309-1 | 4,857.95 | | |

15

From:   Sklar Exploration Co., L.L.C.
To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 10/31/2019
Account: ROO802   Page   5

**LEASE: (1BRO04)  Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| | home, water/sewer systems | | | | |
| 59744 | R & R Rentals & Hot Shot, Inc.- Water/sewer systems, trash trailer, port-a-john | 309-1 | 2,882.04 | | |
| 59739 | R & R Rentals & Hot Shot, Inc.- Rig down mobile home, water/sewer systems | 309-1 | 4,094.82 | | |
| 59743 | R & R Rentals & Hot Shot, Inc.- Mobile home, water/sewer systems | 309-1 | 5,506.11 | | |
| 59741 | R & R Rentals & Hot Shot, Inc.- Pump/clean sewer systems | 309-1 | 3,932.60 | | |
| 59742 | R & R Rentals & Hot Shot, Inc.- Rig down mobile home, water/sewer systems | 309-1 | 3,709.03 | | |
| 59748 | R & R Rentals & Hot Shot, Inc.- Rig down mobile home, water/sewer systems, cell booster | 309-1 | 4,094.82 | 63,829.81 | 572.57 |
| **Fuel** | | | | | |
| 5103211 | Kelley Oil Company- Diesel | 309-1 | 8,059.81 | | |
| 5103216 | Kelley Oil Company- Diesel | 309-1 | 8,131.79 | | |
| 5103222 | Kelley Oil Company- Diesel | 309-1 | 7,307.82 | 23,499.42 | 210.79 |
| **Bits** | | | | | |
| 360273 | Ulterra Drilling Technologies, LP- SBIT | 309-1 | 2,570.50 | | |
| 360274 | Ulterra Drilling Technologies, LP- MBIT | 309-1 | 8,328.42 | 10,898.92 | 97.76 |
| **Transportation & Trucking** | | | | | |
| 10016 | GRS Services, LLC- Hauled misc trees, valves, hangers, parts | 309-1 | 500.00 | | |
| 55856 | Kelley Brothers Contractors, Inc.- Carried bunk of lumber to location | 309-1 | 1,734.00 | | |
| 10022 | GRS Services, LLC- Hauled wellhead/float equipment | 309-1 | 1,500.00 | | |
| 3036 | Stewart Transport, LLC- Reaming tool, Wear bushing | 309-1 | 575.00 | | |
| 34905 | Eagle Express Hotshot Ser. LLC- Hauled 1 spool | 309-1 | 496.50 | | |
| 51575 | T & T Welding Service- Operator/equipment to pick up centrifugal pump & return to yard | 309-1 | 1,060.00 | | |
| 51578 | T & T Welding Service- Deliver gas pump | 309-1 | 700.00 | | |
| 55959 | Kelley Brothers Contractors, Inc.- Hauled load of pea gravel to location | 309-1 | 1,536.00 | | |
| 59736 | R & R Rentals & Hot Shot, Inc.- Pick up/deliver equipment | 309-1 | 1,066.50 | | |
| 51577 | T & T Welding Service- Pick up gas pumps & hoses | 309-1 | 700.00 | | |
| 66021 | SRT Oil Field Service, LLC- Hauled 3 light plants back to Eastern | 309-1 | 600.00 | | |
| 59735 | R & R Rentals & Hot Shot, Inc.- Deliver stabs | 309-1 | 926.50 | | |
| 59740 | R & R Rentals & Hot Shot, Inc.- Pick up water systems, port-a- john | 309-1 | 1,654.69 | | |
| 59747 | R & R Rentals & Hot Shot, Inc.- Rig down/pick up water/sewer systems | 309-1 | 4,380.25 | | |
| 66083 | SRT Oil Field Service, LLC- Hauled casing | 309-1 | 1,800.00 | | |
| 66156 | SRT Oil Field Service, LLC- Hauled forklift | 309-1 | 900.00 | | |
| 59749 | R & R Rentals & Hot Shot, Inc.- Pick up | 309-1 | 1,453.54 | | |

15

From:   Sklar Exploration Co., L.L.C.

To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 10/31/2019
Account: ROO802   Page   6

## LEASE: (1BRO04) Southeast Brooklyn Oil Unit   (Continued)
## Expenses:   (Continued)

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| | trash trailer | | | | |
| 59745 | R & R Rentals & Hot Shot, Inc.- Pick up sewer systems | 309-1 | 1,395.20 | | |
| 66223 | SRT Oil Field Service, LLC- Hauled lift & forklift | 309-1 | 1,100.00 | 24,078.18 | 215.99 |
| **Contract Labor** | | | | | |
| 51590 | T & T Welding Service- Welded head on, tested head Nitrogen, fab'd bell nipple, wait & travel time | 309-1 | 3,105.00 | | |
| PN0026575 | Eastern Fishing & Rental Tools- Torque job | 309-1 | 2,535.10 | | |
| 51606 | T & T Welding Service- Pusher w/helpers pickup generator, diesel tank, waterlines & weld back together | 309-1 | 3,090.00 | 8,730.10 | 78.31 |
| **Drill Stem & Production Tests** | | | | | |
| PN0026506 | Eastern Fishing & Rental Tools- Torque job/BOP test | 309-1 | 4,966.25 | 4,966.25 | 44.55 |
| **Vacuum Truck** | | | | | |
| 56014 | Kelley Brothers Contractors, Inc.- f/w to location | 309-1 | 525.00 | 525.00 | 4.71 |
| **COPAS Overhead** | | | | | |
| ROL1019 | Rig on Location - CCL&T 34-13 #1 WS | 309-1 | 1,205.90 | 1,205.90 | 10.81 |
| | **Total Intangible Drilling Costs** | | | **400,431.71** | **3,591.94** |
| **Intangible Completion Costs** | | | | | |
| **Daywork with Drill Pipe** | | | | | |
| 10473 | Moncla Workover & Drilling- 9/26-10/2/2019 | 309-2 | 12,500.00 | 12,500.00 | 112.13 |
| **Engineering & Supervision Svcs** | | | | | |
| TM1019EV | Field Supervisor Time & Mileage - Vines | 309-2 | 4,635.89 | 4,635.89 | 41.59 |
| TM1019HD | Production Superintendent Time & Mileage - DeLeon | 309-W-1 | 522.54 | 522.54 | 4.68 |
| TM1019JV | Operations Engineer Time & Mileage - Vittitow | 309-W2-1 | 7,347.90 | 7,347.90 | 65.92 |
| TM1019RW | Engineering Time - West | 309-2 | 481.92 | 481.92 | 4.32 |
| TM1019RW | Engineering Time - West | 309-W2-1 | 361.44 | 361.44 | 3.24 |
| TM1019RW | Engineering Time - West | 309-W-1 | 120.48 | 120.48 | 1.08 |
| EWJV0919 | East West Bank Credit Card - John Vittitow - 09 02 2019 - Hotel, Meal | 1 | 851.05 | 851.05 | 7.64 |
| **Cementing & Equipment** | | | | | |
| 2029 | Oilfield Partners Energy Services, LLC | 309-2 | 33,113.98 | 33,113.98 | 297.03 |
| **Casing Crew & Laydown Machine** | | | | | |
| 39400 | Pipe Pros, LLC- 5 1/2" run | 309-2 | 13,675.00 | | |
| 877839 | Camp Service and Repair, LLC- Provided roustabouts & laydown machine to lay down pipe & pick up casing | 309-2 | 4,150.00 | 17,825.00 | 159.90 |
| **Transportation & Trucking** | | | | | |
| 3798 | Davis Hot Shot Service, LLC- Mud tank | 309-2 | 1,480.00 | | |
| 66253 | SRT Oil Field Service, LLC- Hauled gas buster | 309-2 | 900.00 | | |
| 66279 | SRT Oil Field Service, LLC- Hauled gas buster | 309-2 | 1,100.00 | 3,480.00 | 31.21 |
| **Contract Labor** | | | | | |
| 3323 | K&T Welding Services, LLC- Rough cut & final cut 5 1/2" casing | 309-2 | 1,350.00 | | |

15

From:  Sklar Exploration Co., L.L.C.
To:    Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 10/31/2019
Account: ROO802   Page   7

**LEASE: (1BRO04)  Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:    (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| 20239533 | Baker Hughes, a GE Company, LLC- Set slips up casing nu b section | 309-2 | 2,322.00 | | |
| 20240802 | GE Oil & Gas- Clean, inspect, test & grease equipment to assemble c/p partial tree assembly for swab test | 309-2 | 1,583.34 | 5,255.34 | 47.14 |
| **Logging & Wireline** | | | | | |
| RWLS176488 | RWLS, LLC dba Renegade Service | 309-2 | 9,040.00 | 9,040.00 | 81.09 |
| **COPAS Overhead** | | | | | |
| ROL1019 | Rig on Location - CCL&T 34-13 #1 WS | 309-2 | 3,617.71 | 3,617.71 | 32.46 |
| | **Total Intangible Completion Costs** | | | 99,153.25 | 889.43 |
| **Tangible Drilling Costs** | | | | | |
| **Float Equip, Hangers & Related** | | | | | |
| 18613665 RI | Weatherford Laboratories, Inc.- Shoe-Float, Collar-Float, Centralizer | 309-1 | 5,225.44 | 5,225.44 | 46.87 |
| | **Total Tangible Drilling Costs** | | | 5,225.44 | 46.87 |
| **Tangible Completion Costs** | | | | | |
| **Tubing** | | | | | |
| MT1THO04 | Transfer 11,628 2-7/8" 6.5#/ft L-80 EUE 8rd from Thomasson 33-12 to SE Brooklyn Oil Unit | 1 | 48,837.60 | | |
| MT1CED32 | Transfer 11,848' 2-7/8", 6.5#/ft L-80 EUE 8rd tubing from CCL&T 32-9 to SE Brooklyn Oil Unit | 1 | 49,761.60 | | |
| MT1CED47 | Transfer 11,586 tubing 2-7/8" 6.5#/ft L-80 EUE 8rd from CCL&T 3-4 to SE Brooklyn Oil Unit | 1 | 48,661.20 | | |
| MT1CED49 | Transfer 11,937'  2-7/8" 6.5#/ft L-80 EUE 8rd from CCL&T 4-1 to SE Brooklyn Oil Unit | 1 | 50,135.40 | | |
| MT1CED62 | Transfer 2-7/8" 6.5#/ft L-80 EUE 8rd tubing from the CCL&T 3-7 to SE Brooklyn Oil Unit | 1 | 48,367.20 | | |
| MT1LOG01 | Transfer 11,855' 2-7/8" 6.5#/ft L-80 EUE 8rd tubing from the Logan 5-7 #1 to SE Brooklyn Oil Unit | 1 | 49,791.00 | | |
| MT1PAT04 | Transfer 10,906' of 2-7/8' 6.5#/ft, L-80 EUE 8rd tubing from the Pate 3-11 #1 to SE Brooklyn Oil Unit | 1 | 45,805.20 | | |
| MT 34-15 | Transfer 11,568' Tubing 2-7/8" 6.5#/ft L-80 EUE 8rd from Pruet-CCL&T 34-15 to SE Brooklyn Oil Unit | 1 | 48,585.60 | | |
| MT 33-10 | Transfer 11,476' 2-7/8" 6.5#/ft L-80 EUE 8rd from Pruet-CCL&T 33-10 R13 to SE Brooklyn Oil Unit | 1 | 48,199.20 | | |
| MT 34-12 | Transfer 11,537' Tubing 2 7/8" 6.5#/ft L-80 EUE 8rd from Pruet-CCL&T 34-12 to SE Brooklyn Oil Unit | 1 | 48,455.40 | | |
| MT 35-13 | Transfer 11,557' Tubing 2-7/8" 6.5#/ft L-80 EUE 8rd from Pruet-CCL&T 35-13 to SE Brooklyn Oil Unit | 1 | 48,539.40 | 535,138.80 | 4,800.29 |
| **Float Equip, Hangers & Related** | | | | | |
| 18622083 RI | Weatherford Laboratories, Inc.- Shoe-Float, Collar-Float, Centralizer | 1 | 3,833.27 | 3,833.27 | 34.38 |
| **Wellhead Equipment** | | | | | |
| MT1THO04 | Transfer Jet Pump Wellhead from Thomasson 33-12 to SE Brooklyn Oil Unit | 1 | 12,131.25 | | |
| MT1CED32 | Transfer 1 Jet Pump from CCL&T 32-9 | 1 | 12,131.25 | | |

From: Sklar Exploration Co., L.L.C.
To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 10/31/2019
Account: ROO802   Page   8

**LEASE: (1BRO04) Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| | to SE Brooklyn Oil Unit | | | | |
| MT1CED47 | Transfer 1 Jet Pump Wellhead from CCL&T 3-4 to SE Brooklyn Oil Unit | 1 | 12,131.25 | | |
| MT1CED49 | Transfer 1 Jet Pump Wellhead from CCL&T 4-1 to SE Brooklyn Oil Unit | 1 | 12,131.25 | | |
| MT1CED62 | Transfer 1 Jet Pump from the CCL&T 3-7 to SE Brooklyn Oil Unit | 1 | 12,131.25 | | |
| MT1LOG01 | Transfer 1 Larkin Wellhead from the Logan 5-7 #1 to SE Brooklyn Oil Unit | 1 | 3,600.00 | | |
| MT1PAT04 | Transfer 1 Larken Head Wellhead from the Pate 3-11 #1 to SE Brooklyn Oil Unit | 1 | 3,600.00 | | |
| MT 34-15 | Transfer 1 Jet Pump from Pruet-CCL&T 34-15 to SE Brooklyn Oil Unit | 1 | 12,131.25 | | |
| MT 33-10 | Transfer 1 Jet Pump from Pruet-CCL&T 33-10 R13 to SE Brooklyn Oil Unit | 1 | 12,131.25 | | |
| MT 34-12 | Transfer 1 Jet Pump from Pruet-CCL&T 34-12 to SE Brooklyn Oil Unit | 1 | 12,131.25 | | |
| MT 35-13 | Transfer 1 Jet Pump from Pruet-CCL&T 35-13 to SE Brooklyn Oil Unit | 1 | 12,131.25 | 116,381.25 | 1,043.96 |
| ***Surface Artificial Lift Equip*** | | | | | |
| MT1THO04 | Transfer 1 Artificial Lift - Triplex pump package w/electric motor from Thomasson 33-12 to SE Brooklyn Oil Unit | 1 | 77,437.50 | | |
| MT1CED32 | Transfer 1 Triplex pump package w/electric motor from CCL&T 32-9 to SE Brooklyn Oil Unit | 1 | 77,437.50 | | |
| MT1CED47 | Transfer 1 Artificial Lift - Triplex pump package w/electric motor from CCL&T 3-4 to SE Brooklyn Oil Unit | 1 | 77,437.50 | | |
| MT1CED49 | Transfer 1 Artificial Lift - Triplex pump package w/electric motor from CCL&T 4-1 to SE Brooklyn Oil Unit | 1 | 77,437.50 | | |
| MT1CED62 | Transfer 1 Triplex pump package w/electric motor from the CCL&T 3-7 to SE Brooklyn Oil Unit | 1 | 77,437.50 | | |
| MT1LOG01 | Transfer 1 Lufkin 340 D Pumping unit w/electric motor from the Logan 5-7 #1 to SE Brooklyn Oil Unit | 1 | 43,500.00 | | |
| MT1PAT04 | Transfer 1 Weatherford 460 D Pumping unit w/electric motor Artificial Lift from the Pate 3-11 #1 to SE Brooklyn Oil Unit | 1 | 65,250.00 | | |
| MT 34-15 | Transfer 1 Artificial Lift Triplex pump package w/electric motor from Pruet-CCL&T 34-15 to SE Brooklyn Oil Unit | 1 | 77,437.50 | | |
| MT 33-10 | Transfer 1 Artificial Lift Triplex pump package w/electric motor from Pruet-CCL&T 33-10 R13 to SE Brooklyn Oil Unit | 1 | 77,437.50 | | |
| MT 34-12 | Transfer 1 Artificial Lift Triplex pump package w/electric motor from Pruet-CCL&T 34-12 to SE Brooklyn Oil | 1 | 77,437.50 | | |

15

From: Sklar Exploration Co., L.L.C.
To: Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 10/31/2019
Account: ROO802   Page   9

**LEASE: (1BRO04) Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| | Unit | | | | |
| MT 35-13 | Transfer 1 Artificial Lift - Triplex pump package w/electric motor from Pruet-CCL&T 35-13 to SE Brooklyn Oil Unit | 1 | 77,437.50 | 805,687.50 | 7,227.15 |
| **Surface Production Equipment** | | | | | |
| MT1THO04 | Transfer 1 Heater Treater - 6 x 20 125 psi w/gas scrubber & fuel drop pot 33-12 to SE Brooklyn Oil Unit | 1 | 31,878.75 | | |
| MT1CED32 | Transfer 1 24" x 7'6", 125 psi Separator from CCL&T 32-9 to SE Brooklyn Oil Unit | 1 | 8,205.00 | | |
| MT1CED32 | Transfer 1 6x20, 125 psi Heater Treater with gas scrubber and fuel drop pot from CCL&T 32-9 to SE Brooklyn Oil Unit | 1 | 31,878.75 | | |
| MT1CED47 | Transfer 1 Separator 24" x 7'6" 125 psi from CCL&T 3-4 to SE Brooklyn Oil Unit | 1 | 8,205.00 | | |
| MT1CED47 | Transfer 1 Heater Treater 6x20 125psi w/gas scrubber & fuel drop pot from CCL&T 3-4 to SE Brooklyn Oil Unit | 1 | 31,878.75 | | |
| MT1CED49 | Transfer 1 Heater Treater - 6x20 125psi w/gas scrubber & fuel drop pot from CCL&T 4-1 to SE Brooklyn Oil Unit | 1 | 31,878.75 | | |
| MT1CED49 | Transfer 1 Separator - 24" x 7'6" 125psi from CCL&T 4-1 to SE Brooklyn Oil Unit | 1 | 8,205.00 | | |
| MT1CED62 | Transfer 1 Separator 24"x7'6", 125 psi from the CCL&T 3-7 to SE Brooklyn Oil Unit | 1 | 8,205.00 | | |
| MT1CED62 | Transfer Heater Treater 6x20, 125 psi, with gas scrubber and fuel drop pot from the CCL&T 3-7 to SE Brooklyn Oil Unit | 1 | 31,878.75 | | |
| MT1PAT04 | Transfer 1 Heater Treater 6x20, 125 psi, w/gas scrubber and fuel drop pot from the Pate 3-11 #1 to SE Brooklyn Oil Unit | 1 | 31,878.75 | | |
| MT1PAT04 | Transfer 1 Separator 24' x 7'6", 125 psi from the Pate 3-11 #1 to SE Brooklyn Oil Unit | 1 | 8,205.00 | 232,297.50 | 2,083.75 |
| **Compression** | | | | | |
| MT1THO04 | Transfer 1 Whirlwind VRU 20E/S - 20HP from Thomasson 33-12 to SE Brooklyn Oil Unit | 1 | 40,906.50 | | |
| MT1CED32 | Transfer 1 Whirlwind VRU 20 E/S - 25 hp from CCL&T 32-9 to SE Brooklyn Oil Unit | 1 | 44,326.88 | | |
| MT1CED47 | Transfer 1 Whirlwind VRU 25E/S - 25HP from CCL&T 3-4 to SE Brooklyn Oil Unit | 1 | 44,326.88 | | |
| MT1CED62 | Transfer 1 Whirlwind VRU 20E/S - 20 hp from the CCL&T 3-7 to SE Brooklyn Oil Unit | 1 | 40,906.50 | | |
| MT1PAT04 | Transfer one 30E/S-30hp Whirlwind VRU from the Pate 3-11 #1 to SE Brooklyn Oil Unit | 1 | 52,462.50 | | |

15

From:  Sklar Exploration Co., L.L.C.
To:    Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 10/31/2019
Account: ROO802   Page   10

**LEASE: (1BRO04)  Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| MT 33-10 | Transfer 1 Whirlwind VRU 10E/S-10HP from Pruet-CCL&T 33-10 R13 to SE Brooklyn Oil Unit | 1 | 29,662.50 | | |
| MT 34-12 | Transfer 1 Whirlwind VRU 10E/S-10HP from Pruet-CCL&T 34-12 to SE Brooklyn Oil Unit | 1 | 29,662.50 | 282,254.26 | 2,531.87 |
| *Tank Battery InstallationCosts* | | | | | |
| MT1THO04 | Transfer 1 Vegaflex Guided Wave Tank gauging system from Thomasson 33-12 to SE Brooklyn Oil Unit | 1 | 11,235.00 | | |
| MT1THO04 | Transfer 2 Production Tanks from Thomasson 33-12 to SE Brooklyn Oil Unit | 1 | 14,257.50 | | |
| MT1THO04 | Transfer 1 Salt Water Tank from Thomasson 33-12 to SE Brooklyn Oil Unit | 1 | 8,625.00 | | |
| MT1THO04 | Transfer 1 Power Oil Tank from Thomasson 33-12 to SE Brooklyn Oil Unit | 1 | 14,628.75 | | |
| MT1CED32 | Transfer 1 Power Oil Tank from CCL&T 32-9 to SE Brooklyn Oil Unit | 1 | 14,628.75 | | |
| MT1CED32 | Transfer one 25' Flarestack w/ignitor system from CCL&T 32-9 to SE Brooklyn Oil Unit | 1 | 6,150.00 | | |
| MT1THO04 | Transfer 1 45' Flarestack w/ignitor systems from Thomasson 33-12 to SE Brooklyn Oil Unit | 1 | 18,639.00 | | |
| MT1CED32 | Transfer 1 Salt Water Tank from CCL&T 32-9 to SE Brooklyn Oil Unit | 1 | 8,625.00 | | |
| MT1CED32 | Transfer 1 Vegaflex guided wave tank gauging system from CCL&T 32-9 to SE Brooklyn Oil Unit | 1 | 11,235.00 | | |
| MT1CED32 | Transfer 2 Production Tanks from CCL&T 32-9 to SE Brooklyn Oil Unit | 1 | 14,257.50 | | |
| MT1CED47 | Transfer 1 Vegaflex Guided Wave Tank gauging system from CCL&T 3-4 to SE Brooklyn Oil Unit | 1 | 11,235.00 | | |
| MT1CED47 | Transfer 1 Power Oil Tank from CCL&T 3-4 to SE Brooklyn Oil Unit | 1 | 14,628.75 | | |
| MT1CED47 | Transfer 2 Production Tanks from CCL&T 3-4 to SE Brooklyn Oil Unit | 1 | 14,257.50 | | |
| MT1CED47 | Transfer 1 Salt Water Tank from CCL&T 3-4 to SE Brooklyn Oil Unit | 1 | 8,625.00 | | |
| MT1CED49 | Transfer 1 Vegaflex Guided Wave Tank gauging system from CCL&T 4-1 to SE Brooklyn Oil Unit | 1 | 11,235.00 | | |
| MT1CED49 | Transfer 1 45' Flarestack w/ignitor system from CCL&T 4-1 to SE Brooklyn Oil Unit | 1 | 18,639.00 | | |
| MT1CED49 | Transfer 2 Production Tanks from CCL&T 4-1 to SE Brooklyn Oil Unit | 1 | 14,257.50 | | |
| MT1CED49 | Transfer 1 Salt Water Tank from CCL&T 4-1 to SE Brooklyn Oil Unit | 1 | 8,625.00 | | |
| MT1CED49 | Transfer 1 Power Oil Tank from CCL&T 4-1 to SE Brooklyn Oil Unit | 1 | 14,628.75 | | |
| MT1CED62 | Transfer 1 Vegaflex Guided Wave Tank gauging system from the CCL&T 3-7 to SE Brooklyn Oil Unit | 1 | 11,235.00 | | |
| MT1CED62 | Transfer 1 Flarestack w/ignitor system | 1 | 18,639.00 | | |

15

From: Sklar Exploration Co., L.L.C.
To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 10/31/2019
Account: ROO802   Page   11

**LEASE: (1BRO04) Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| | 45' from the CCL&T 3-7 to SE Brooklyn Oil Unit | | | | |
| MT1CED62 | Transfer 1 Salt Water Tank from the CCL&T 3-7 to SE Brooklyn Oil Unit | 1 | 8,625.00 | | |
| MT1CED62 | Transfer two Production Tanks from the CCL&T 3-7 to SE Brooklyn Oil Unit | 1 | 19,010.00 | | |
| MT1CED62 | Transfer 1 Power Oil Tank from the CCL&T 3-7 to SE Brooklyn Oil Unit | 1 | 14,628.75 | | |
| MT1LOG01 | Transfer 1 Production Tank from the Logan 5-7 #1 to SE Brooklyn Oil Unit | 1 | 7,128.75 | | |
| MT1LOG01 | Transfer 1 Salt Water Tank from the Logan 5-7 #1 to SE Brooklyn Oil Unit | 1 | 8,625.00 | | |
| MT1LOG01 | Transfer 1 25' Flarestack w/ignitor system from the Logan 5-7 #1 to SE Brooklyn Oil Unit | 1 | 6,150.00 | | |
| MT1PAT04 | Transfer one Vegaflex Guided Wave Tank gauging system from the Pate 3-11 #1 to SE Brooklyn Oil Unit | 1 | 11,235.00 | | |
| MT1PAT04 | Transfer 1 Salt Water Tank from the Pate 3-11 #1 to SE Brooklyn Oil Unit | 1 | 8,625.00 | | |
| MT1PAT04 | Transfer one 45' Flarestack w/ignitor system from the Pate 3-11 #1 to SE Brooklyn Oil Unit | 1 | 18,639.00 | | |
| MT1PAT04 | Transfer 2 Production Tanks from the Pate 3-11 #1 to SE Brooklyn Oil Unit | 1 | 14,257.50 | | |
| MT 34-15 | Transfer 1 45' Flarestack w/ignitor system from Pruet-CCL&T 34-15 to SE Brooklyn Oil Unit | 1 | 18,639.00 | | |
| MT 34-15 | Transfer 1 Power Oil Tank from Pruet-CCL&T 34-15 to SE Brooklyn Oil Unit | 1 | 14,628.75 | | |
| MT 34-15 | Transfer 1 Salt Water Tank from Pruet-CCL&T 34-15 to SE Brooklyn Oil Unit | 1 | 8,625.00 | | |
| MT 34-15 | Transfer 2 Production Tanks from Pruet-CCL&T 34-15 to SE Brooklyn Oil Unit | 1 | 14,257.50 | | |
| MT 33-10 | Transfer 1 45' Flarestack w/ignitor system from Pruet-CCL&T 33-10 R13 to SE Brooklyn Oil Unit | 1 | 18,639.00 | | |
| MT 33-10 | Transfer 1 Salt Water Tank from Pruet-CCL&T 33-10 R13 to SE Brooklyn Oil Unit | 1 | 8,625.00 | | |
| MT 33-10 | Transfer 2 Production Tanks from Pruet-CCL&T 33-10 R13 to SE Brooklyn Oil Unit | 1 | 14,257.50 | | |
| MT 33-10 | Transfer 1 Power Oil Tank from Pruet-CCL&T 33-10 R13 to SE Brooklyn Oil Unit | 1 | 14,628.75 | | |
| MT 34-12 | Transfer 1 45' Flarestack w/ignitor system from Pruet-CCL&T 34-12 to SE Brooklyn Oil Unit | 1 | 18,639.00 | | |
| MT 34-12 | Transfer 2 Production Tanks from Pruet-CCL&T 34-12 to SE Brooklyn Oil Unit | 1 | 14,257.50 | | |
| MT 34-12 | Transfer 1 Salt Water Tank from Pruet-CCL&T 34-12 to SE Brooklyn Oil Unit | 1 | 8,625.00 | | |
| MT 34-12 | Transfer 1 Power Oil Tank from | 1 | 14,628.75 | | |

15

From:  Sklar Exploration Co., L.L.C.       For Billing Dated 10/31/2019
 To:  Roosth 806, Ltd, a Texas Ltd Partnership    Account: ROO802   Page   12

**LEASE: (1BRO04)  Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| | Pruet-CCL&T 34-12 to SE Brooklyn Oil Unit | | | | |
| MT 35-13 | Transfer 1 Power Oil Tank from Pruet-CCL&T 35-13 to SE Brooklyn Oil Unit | 1 | 14,628.75 | | |
| MT 35-13 | Transfer 1 Salt Water Tank from Pruet-CCL&T 35-13 to SE Brooklyn Oil Unit | 1 | 8,625.00 | | |
| MT 35-13 | Transfer 1 45' Flarestack w/ignitor system from Pruet-CCL&T 35-13 to SE Brooklyn Oil Unit | 1 | 18,639.00 | | |
| MT 35-13 | Transfer 2 Production Tanks from Pruet-CCL&T 35-13 to SE Brooklyn Oil Unit | 1 | 14,257.50 | 609,812.00 | 5,470.12 |
| **Flowlines, Fittings, Connects** | | | | | |
| 10476933 | Tool Pushers Supply Co.- Non-controlled | 309-2 | 10,287.35 | 10,287.35 | 92.28 |
| 10477786 | Tool Pushers Supply Co.- Non-controlled | 309-W-1 | 14,321.71 | 14,321.71 | 128.47 |
| **Sales Metering Equipment** | | | | | |
| MT1THO04 | Transfer 2 EFM G4/G5/XMV w/solar battery from Thomasson 33-12 to SE Brooklyn Oil Unit | 1 | 4,767.00 | | |
| MT1THO04 | Transfer 2  2" Simplex Meter run from Thomasson 33-12 to SE Brooklyn Oil Unit | 1 | 5,625.00 | | |
| MT1CED32 | Transfer one 2' simplex meter run from CCL&T 32-9 to SE Brooklyn Oil Unit | 1 | 5,625.00 | | |
| MT1CED32 | Transfer 2 EFM G/G5/XMV w/solar, battery from CCL&T 32-9 to SE Brooklyn Oil Unit | 1 | 4,767.00 | | |
| MT1CED47 | Transfer 2 2" Simplex Meter run from CCL&T 3-4 to SE Brooklyn Oil Unit | 1 | 5,625.00 | | |
| MT1CED47 | Transfer 2 EFM G4/G5/XMV w/solar battery from CCL&T 3-4 to SE Brooklyn Oil Unit | 1 | 4,767.00 | | |
| MT1CED49 | Transfer 2  2" Simplex Meter run from CCL&T 4-1 to SE Brooklyn Oil Unit | 1 | 5,625.00 | | |
| MT1CED49 | Transfer 2 EFM G4/G5/XMV w/solar battery from CCL&T 4-1 to SE Brooklyn Oil Unit | 1 | 4,767.00 | | |
| MT1CED62 | Transfer two EFM G4/G5/XMV w/solar battery from the CCL&T 3-7 to SE Brooklyn Oil Unit | 1 | 4,767.00 | | |
| MT1CED62 | Transfer two 2" Meter Runs  from the CCL&T 3-7 to SE Brooklyn Oil Unit | 1 | 5,625.00 | | |
| MT1PAT04 | Transfer one G4/G5/XMV EFM w/solar, battery from the Pate 3-11 #1 to SE Brooklyn Oil Unit | 1 | 2,383.50 | | |
| MT1PAT04 | Transfer two 2' simplex meter run from the Pate 3-11 #1 to SE Brooklyn Oil Unit | 1 | 5,625.00 | | |
| MT 34-15 | Transfer 2  2" Simplex Meter runs from Pruet-CCL&T 34-15 to SE Brooklyn Oil Unit | 1 | 5,625.00 | | |
| MT 34-15 | Transfer 2 EFM G4/G5/XMV w/solar battery from Pruet-CCL&T 34-15 to SE Brooklyn Oil Unit | 1 | 4,767.00 | | |
| MT 33-10 | Transfer 2 2" Simplex Meter runs from | 1 | 5,625.00 | | |

15

From: Sklar Exploration Co., L.L.C.
To: Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 10/31/2019
Account: ROO802   Page   13

**LEASE: (1BRO04)  Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:     (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| | Pruet-CCL&T 33-10 R13 to SE Brooklyn Oil Unit | | | | |
| MT 33-10 | Transfer 2 EFM G4/G5/XMV w/solar battery from Pruet-CCL&T 33-10 R13 to SE Brooklyn Oil Unit | 1 | 4,767.00 | | |
| MT 34-12 | Transfer 2 EFM G4/G5/XMV w/solar battery from Pruet-CCL&T 34-12 to SE Brooklyn Oil Unit | 1 | 4,767.00 | | |
| MT 34-12 | Transfer 2  2" Simplex Meter run from Pruet-CCL&T 34-12 to SE Brooklyn Oil Unit | 1 | 5,625.00 | | |
| MT 35-13 | Transfer 2 2" Simplex Meter runs from Pruet-CCL&T 35-13 to SE Brooklyn Oil Unit | 1 | 5,625.00 | | |
| MT 35-13 | Transfer 2 EFM G4/G5/XMV w/solar battery from Pruet-CCL&T 35-13 to SE Brooklyn Oil Unit | 1 | 4,767.00 | 101,536.50 | 910.79 |
| **Electrical & Control Systems** | | | | | |
| MT1THO04 | Transfer 1 VFD Stand Alone Drive from Thomasson 33-12 to SE Brooklyn Oil Unit | 1 | 12,941.25 | | |
| MT1CED32 | Transfer 1 Stand alone drive from CCL&T 32-9 to SE Brooklyn Oil Unit | 1 | 12,941.25 | | |
| MT1CED47 | Transfer 1 VFD Stand Alone Drive from CCL&T 3-4 to SE Brooklyn Oil Unit | 1 | 12,941.25 | | |
| MT1CED49 | Transfer 1 VFD Stand Alone Drive from CCL&T 4-1 to SE Brooklyn Oil Unit | 1 | 12,941.25 | | |
| MT1CED62 | Transfer 1 VFD Drive and Harmonic package together from the CCL&T 3-7 to SE Brooklyn Oil Unit | 1 | 17,891.25 | | |
| MT1LOG01 | Transfer 1 VFD Stand alone drive from the Logan 5-7 #1 to SE Brooklyn Oil Unit | 1 | 12,941.25 | | |
| MT1PAT04 | Transfer 1 Stand alone Harmonic package VFD from the Pate 3-11 #1 to SE Brooklyn Oil Unit | 1 | 4,950.00 | | |
| MT1PAT04 | Transfer 1 Stand alone Drive VFD from the Pate 3-11 #1 to SE Brooklyn Oil Unit | 1 | 12,941.25 | | |
| MT 34-15 | Transfer 1 VFD Stand Alone Harmonic package from Pruet-CCL&T 34-15 to SE Brooklyn Oil Unit | 1 | 4,950.00 | | |
| MT 34-15 | Transfer 1 VFD Stand Alone Drive from Pruet-CCL&T 34-15 to SE Brooklyn Oil Unit | 1 | 12,941.25 | | |
| MT 33-10 | Transfer 1 VFD Stand Alone Drive from Pruet-CCL&T 33-10 R13 to SE Brooklyn Oil Unit | 1 | 12,941.25 | | |
| MT 34-12 | Transfer 1 VFD Stand Alone Drive from Pruet-CCL&T 34-12 to SE Brooklyn Oil Unit | 1 | 12,941.25 | | |
| MT 35-13 | Transfer 1 VFD Stand Alone Harmonic package from Pruet-CCL&T 35-13 to SE Brooklyn Oil Unit | 1 | 4,950.00 | | |
| MT 35-13 | Transfer 1 VFD Stand Alone Drive from Pruet-CCL&T 35-13 to SE Brooklyn Oil Unit | 1 | 12,941.25 | 162,153.75 | 1,454.55 |
| 0939-509435 | Consolidated Electrical Distributors Inc- Relay 8 pin, Relay socket | 309-2 | 31.43 | | |

15

From:  Sklar Exploration Co., L.L.C.
To:    Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 10/31/2019
Account: ROO802    Page    14

**LEASE: (1BRO04)  Southeast Brooklyn Oil Unit    (Continued)**
**Expenses:    (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| 0939-509494 | Consolidated Electrical Distributors Inc- 1-1/4-2IN DB GRND CLMP | 309-2 | 13.43 | | |
| 0939-509485 | Consolidated Electrical Distributors Inc- 400A-600V-3P SW, 400A Neutral Kit, 225A 600V TD Fuse, 4" PVC Weatherhead | 309-2 | 2,023.96 | | |
| CI-000001385 | SPOC Automation, Inc.- 3-Phase 60HZ Type 3R Passive Harmonic Filter | 309-2 | 15,258.00 | | |
| 0939-509832 | Consolidated Electrical Distributors Inc- Wire | 309-2 | 1,089.85 | | |
| 0939-509849 | Consolidated Electrical Distributors Inc- Wire | 309-2 | 348.29 | 18,764.96 | 168.33 |
| | **Total Tangible Completion Costs** | | | **2,892,468.85** | **25,945.94** |

| | **Total Expenses for LEASE** | | | **3,503,850.71** | **31,430.14** |
|---|---|---|---|---|---|
| Billing Summary | Deck 1 | 1 | 0.00897017 | 2,956,375.34 | 26,519.19 |
| by Deck/AFE | BCP | 309-1 | 0.00897017 | 405,799.15 | 3,640.08 |
| | ACP | 309-2 | 0.00897017 | 119,002.15 | 1,067.48 |
| | Workover | 309-W-1 | 0.00897017 | 14,964.73 | 134.23 |
| | Workover | 309-W2-1 | 0.00897017 | 7,709.34 | 69.16 |

| LEASE Summary: | Wrk Int | | | Expenses | Pre-Pmt Applied | You Owe |
|---|---|---|---|---|---|---|
| 1BRO04 | 0.00897017 | | | 31,430.14 | 2,693.23 | 28,736.91 |

**LEASE: (1CED62)  CCL&T 3-7 #1 (SE Brooklyn)    County: CONECUH, AL**

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Tangible Completion Costs** | | | | | |
| *Tubing* | | | | | |
| MT1CED62 | Transfer 2-7/8" 6.5#/ft L-80 EUE 8rd tubing from the CCL&T 3-7 to SE Brooklyn Oil Unit | 1 | 48,367.20- | 48,367.20- | 3,022.95- |
| *Wellhead Equipment* | | | | | |
| MT1CED62 | Transfer 1 Jet Pump from the CCL&T 3-7 to SE Brooklyn Oil Unit | 1 | 12,131.25- | 12,131.25- | 758.20- |
| *Surface Artificial Lift Equip* | | | | | |
| MT1CED62 | Transfer 1 Triplex pump package w/electric motor from the CCL&T 3-7 to SE Brooklyn Oil Unit | 1 | 77,437.50- | 77,437.50- | 4,839.85- |
| *Surface Production Equipment* | | | | | |
| MT1CED62 | Transfer 1 Separator 24"x7'6", 125 psi from the CCL&T 3-7 to SE Brooklyn Oil Unit | 1 | 8,205.00- | | |
| MT1CED62 | Transfer Heater Treater 6x20, 125 psi, with gas scrubber and fuel drop pot from the CCL&T 3-7 to SE Brooklyn Oil Unit | 1 | 31,878.75- | 40,083.75- | 2,505.23- |
| *Compression* | | | | | |
| MT1CED62 | Transfer 1 Whirlwind VRU 20E/S - 20 hp  from the CCL&T 3-7 to SE Brooklyn Oil Unit | 1 | 40,906.50- | 40,906.50- | 2,556.66- |
| *Tank Battery InstallationCosts* | | | | | |
| MT1CED62 | Transfer 1 Vegaflex Guided Wave Tank gauging system  from the CCL&T 3-7 to SE Brooklyn Oil Unit | 1 | 11,235.00- | | |
| MT1CED62 | Transfer 1 Flarestack w/ignitor system 45'  from the CCL&T 3-7 to SE Brooklyn Oil Unit | 1 | 18,639.00- | | |

15

From:  Sklar Exploration Co., L.L.C.
To:    Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 10/31/2019
Account: ROO802    Page   15

**LEASE: (1CED62)  CCL&T 3-7 #1 (SE Brooklyn)   (Continued)**
**Expenses:    (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| MT1CED62 | Transfer two Production Tanks from the CCL&T 3-7 to SE Brooklyn Oil Unit | 1 | 19,010.00- | | |
| MT1CED62 | Transfer 1 Salt Water Tank from the CCL&T 3-7 to SE Brooklyn Oil Unit | 1 | 8,625.00- | | |
| MT1CED62 | Transfer 1 Power Oil Tank from the CCL&T 3-7 to SE Brooklyn Oil Unit | 1 | 14,628.75- | 72,137.75- | 4,508.61- |
| ***Sales Metering Equipment*** | | | | | |
| MT1CED62 | Transfer two EFM G4/G5/XMV w/solar battery from the CCL&T 3-7 to SE Brooklyn Oil Unit | 1 | 4,767.00- | | |
| MT1CED62 | Transfer two 2" Meter Runs  from the CCL&T 3-7 to SE Brooklyn Oil Unit | 1 | 5,625.00- | 10,392.00- | 649.50- |
| ***Electrical & Control Systems*** | | | | | |
| MT1CED62 | Transfer 1 VFD Drive and Harmonic package together from the CCL&T 3-7 to SE Brooklyn Oil Unit | 1 | 17,891.25- | 17,891.25- | 1,118.20- |
| | **Total Tangible Completion Costs** | | | 319,347.20- | 19,959.20- |

| LEASE Summary: | Wrk Int | Expenses | You Owe |
|---|---|---|---|
| 1CED62 | 0.06250000 | 19,959.20- | 19,959.20- |

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA 71101
(303)541-1559

# *Settlement Statement*



RECEIVED
DEC 09 2019
BY: _____

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX 75711

Account: ROO802

Date: 11/30/2019

**Account: ROO802 - Statement of Account:**

| Date | Reference | Description | Charges | Credits |
|---|---|---|---|---|
| 10/31/2019 | | Balance Forward | 10,509.85 | |
| 11/04/2019 | 10337 | Partial Payment Ck# 44549 | | (1,732.14) |
| | | New Balance Forward | 8,777.71 | |

**Prepaid Balance by Project:**

| Property# | AFE# | Description | Beginning Balance | Pre-Pmts Applied | Balance Remaining |
|---|---|---|---|---|---|
| 1BRO04 | 309-W | CCL&T 4-1 #1 | 483.82 | 483.82 | 0.00 |

**Summary by LEASE:**

| Property# | | Description | Expenses | Pre-Pmts Applied | You Owe |
|---|---|---|---|---|---|
| | | Unpaid Previous Balance | | | 8,777.71 |
| 1BRO04 | 5E | Southeast Brooklyn Oil Unit | 5,396.04 | 483.82 | 4,912.22 |
| | | Totals: | 5,396.04 | 483.82 | 13,689.93 |

PLEASE PAY THIS AMOUNT ----------------------^

*(handwritten:)* 4,000,200.01

*(handwritten:)* Pd 11/26

*(handwritten:)* OK ND
12-30-19

*(handwritten notes:)*
260-800      1237.42
220-800        14.49
230-800       389.71
240-800      3260.62
260-800 (equip)  493.80
220-800 (prepay)  483.82
                 4912.22

Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.

9

From: Sklar Exploration Co., L.L.C.

For Billing Dated 11/30/2019

To:   Roosth 806, Ltd, a Texas Ltd Partnership

Account: ROO802    Page   2

### LEASE: (1BRO04) Southeast Brooklyn Oil Unit   County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| ***Location Preparation/Dirt Work*** | | | | | |
| 56254 | Kelley Brothers Contractors, Inc.- Repairing wash on road & blading road | 1 | 484.00 | | |
| 56256 | Kelley Brothers Contractors, Inc.- Blading lease road | 1 | 484.00 | 968.00 | 8.68 |
| ***Location Clean Up/Pit Closure*** | | | | | |
| 0808-0006405 | Republic Services #808 | 1 | 47.16 | | |
| 0484-0005356 | Republic Services #808 | 1 | 37.09 | 84.25 | 0.76 |
| ***Engineering & Supervision*** | | | | | |
| TM1119HD | Production Superintendent Time & Mileage - DeLeon | 1 | 473.82 | | |
| EWEV1019 | East West Bank Credit Card - Edward Vines - 10 02 2019 - Hotel, Meal | 1 | 629.07 | | |
| EWHD1019 | East West Bank Credit Card - Harold De Leon - 10 02 2019 - Hotel | 1 | 166.67 | | |
| EWEV1119 | East West Bank Credit Card - Edward Vines, Jr. - 11.02.19 - Meals | 1 | 122.83 | | |
| EWHD1119 | East West Bank Credit Card - Harold De Leon - 11.02.19 - Meals - Rent | 1 | 224.52 | 1,616.91 | 14.50 |
| ***Instru/Monitoring & Automation*** | | | | | |
| BARC013131 | Bristol, Inc.- Zedi Access Monthly Fee, 5/2019 | 1 | 99.00 | | |
| BARC013132 | Bristol, Inc.- Zedi Access Monthly Fee, 5/2019 | 1 | 99.00 | | |
| BARC013142 | Bristol, Inc.- Zedi Access Monthly Fee, 6/2019 | 1 | 99.00 | | |
| BARC013143 | Bristol, Inc.- Zedi Access Monthly Fee, 6/2019 | 1 | 99.00 | | |
| BARC013158 | Bristol, Inc.- Zedi Access Monthly Fee, 7/2019 | 1 | 99.00 | | |
| BARC013159 | Bristol, Inc.- Zedi Access Monthly Fee, 7/2019 | 1 | 99.00 | | |
| BARC013182 | Bristol, Inc.- Zedi Access Monthly Fee, 8/2019 | 1 | 99.00 | | |
| BARC013183 | Bristol, Inc.- Zedi Access Monthly Fee, 8/2019 | 1 | 99.00 | | |
| BARC012577 | Bristol, Inc.- Zedi access monitoring, 9/2019 | 1 | 99.00 | | |
| BARC012578 | Bristol, Inc.- Zedi access monitoring, 9/2019 | 1 | 99.00 | | |
| BARC012581 | Bristol, Inc.- Zedi access monitoring, 9/2019 | 1 | 99.00 | | |
| BARC012595 | Bristol, Inc.- Zedi access fee cellular, 9/2019 | 1 | 99.00 | | |
| BARC013214 | Bristol, Inc.- Zedi Access Monthly Fee, 9/2019 | 1 | 99.00 | | |
| BARC013215 | Bristol, Inc.- Zedi Access Monthly Fee, 9/2019 | 1 | 99.00 | | |
| BARC013322 | Bristol, Inc.- Zedi Access Monthly Fee, | 1 | 99.00 | | |

9

From: Sklar Exploration Co., L.L.C.
To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 11/30/2019
Account: ROO802    Page  3

**LEASE: (1BRO04)  Southeast Brooklyn Oil Unit    (Continued)**
**Expenses:    (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| | 10/2019 | | | | |
| BARC013323 | Bristol, Inc.- Zedi Access Monthly Fee, 10/2019 | 1 | 99.00 | | |
| BARC013326 | Bristol, Inc.- Zedi Access Monthly Fee, 10/2019 | 1 | 99.00 | | |
| BARC013340 | Bristol, Inc.- Zedi Access Monthly Fee, 10/2019 | 1 | 99.00 | | |
| BARC013349 | Bristol, Inc.- Zedi Access Monthly Fee, 10/2019 | 1 | 99.00 | | |
| BARC013350 | Bristol, Inc.- Zedi Access Monthly Fee, 10/2019 | 1 | 99.00 | | |
| 19-00542 | KCS Automation, LLC- Replaced battery on tank display | 1 | 533.20 | | |
| 19-00543 | KCS Automation, LLC- Replaced batteries on tanks 892 & 893 | 1 | 576.40 | | |
| 462389 | SPL, Inc.- Calibration of Total Flows & Barton Recorders | 1 | 496.38 | | |
| 19-00557 | KCS Automation, LLC- Fixed tank level | 1 | 410.00 | | |
| 19-00575 | KCS Automation, LLC- Replaced fuse in total flow | 1 | 231.50 | 4,227.48 | 37.92 |
| **Chemicals** | | | | | |
| 18497 | White Resources LLC- P-278 | 1 | 376.30 | | |
| 18498 | White Resources LLC- P-278 | 1 | 282.23 | | |
| 18499 | White Resources LLC- P-278 | 1 | 752.60 | | |
| 18500 | White Resources LLC- P-278 | 1 | 564.45 | | |
| 18501 | White Resources LLC- P-278 | 1 | 752.60 | | |
| 18502 | White Resources LLC- P-278 | 1 | 282.23 | | |
| 18503 | White Resources LLC- P-278 | 1 | 940.75 | | |
| 910600186 | Baker Hughes, a GE Company, LLC- Paraffin Inhibitor | 1 | 1,304.17 | 5,255.33 | 47.15 |
| **Company Pumping - Gauging** | | | | | |
| ALPU1119 | Pumper Time & Mileage - Davis/Hester/Hart/Moye/Kinsey/Hoomes/Blackman/Hinote | 1 | 19,687.16 | 19,687.16 | 176.59 |
| **Equipment Rentals** | | | | | |
| 1500228463 | Thompson Gas- Tank rent | 1 | 5.20 | 5.20 | 0.05 |
| **Telephone & Communications** | | | | | |
| 19110100844 | Your Message Center, Inc. | 1 | 12.93 | 12.93 | 0.12 |
| **Fuel** | | | | | |
| 1500077044 | Thompson Gas- Propane | 1 | 1,599.06 | | |
| 1500077072 | Thompson Gas- Propane | 1 | 1,690.13 | 3,289.19 | 29.50 |
| **Contract Labor** | | | | | |
| 70819 | H&H Construction, LLC- Build sand wall & install air compressor, CCLT 35-13 | 1 | 3,828.00 | 3,828.00 | 34.34 |
| **Repairs & Maint-Surface Equip** | | | | | |
| EWJD1119 | EWB Credit Card - 11/2019 - Joel Davis - Grease Tubes | 1 | 11.00 | | |
| 23342 | Carnley Electric Inc- Replaced starter on VRU | 1 | 360.00 | | |
| 148114 | Process Piping Materials, Inc.- Emission compliance repairs | 1 | 64.93 | | |
| 136102 | Union Oilfield Supply, Inc.- Level control pilot, CCLT 34-12 | 1 | 135.79 | | |
| 136103 | Union Oilfield Supply, Inc.- Level control pilot, CCLT 3-7 | 1 | 135.79 | | |
| 23356 | Carnley Electric Inc- Troubleshoot | 1 | 180.00 | | |

9

From:  Sklar Exploration Co., L.L.C.
To:    Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 11/30/2019
Account: ROO802   Page   4

**LEASE: (1BRO04)  Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:    (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| | problem with drive running 5hz | | | | |
| 136207 | Union Oilfield Supply, Inc.- Parts for VRU, CCLT 34-12 | 1 | 314.34 | | |
| 23373 | Carnley Electric Inc- Installed 120V to 12VDC power supply on VRU | 1 | 180.00 | | |
| 98-23886 | Jimco Pumps- Pump parts | 1 | 1,648.30 | | |
| 98-23887 | Jimco Pumps- Pump parts | 1 | 95.40 | | |
| 98-23898 | Jimco Pumps- Pump parts | 1 | 587.24 | | |
| 98-23899 | Jimco Pumps- Pump parts | 1 | 625.93 | | |
| 23407 | Carnley Electric Inc- Pulled tank stick & replaced gasket | 1 | 270.00 | 4,608.72 | 41.34 |
| **Repairs & Maint/Sub-Surface Eq** | | | | | |
| 98-23887 | Jimco Pumps- Pump parts | 1 | 95.40 | | |
| 98-23898 | Jimco Pumps- Pump parts | 1 | 587.24 | | |
| 98-23899 | Jimco Pumps- Pump parts | 1 | 625.93 | | |
| 98-23900 | Jimco Pumps- Pump parts | 1 | 2,075.48 | | |
| 98-23904 | Jimco Pumps- Pump parts | 1 | 502.44 | 3,886.49 | 34.86 |
| **Supplies** | | | | | |
| EWJD1019 | East West Bank Credit Card - Joel Davis - 10 04 2019 - wasp spray | 1 | 29.71 | | |
| EWSS1019 | East West Bank Credit Card - Stephen Hester - 10 02 2019 - Binders for opacity sheets | 1 | 3.53 | | |
| EWCK1019 | East West Bank Credit Card - Chase Kinsey - 10/2/19 - Slab Cleaner | 1 | 49.18 | 82.42 | 0.74 |
| **Salt Water Disposal** | | | | | |
| 2019-11-001 | Wastewater Disposal Services, Inc.- 11/2019 | 1 | 634.00 | | |
| 56194 | Kelley Brothers Contractors, Inc. | 1 | 484.00 | 1,118.00 | 10.03 |
| **Utilities** | | | | | |
| 613710006 | Southern Pine Electric Cooperative- 9/29-10/30/2019 | 1 | 506.07 | | |
| 613710046 | Southern Pine Electric Cooperative- 9/29-10/30/2019 | 1 | 4,965.81 | | |
| 613710050 | Southern Pine Electric Cooperative- 9/29-10/30/2019 | 1 | 5,100.30 | | |
| 613710057 | Southern Pine Electric Cooperative- 9/29-10/30/2019 | 1 | 10,364.29 | | |
| 613710064 | Southern Pine Electric Cooperative- 9/29-10/30/2019 | 1 | 5,277.54 | | |
| 613710075 | Southern Pine Electric Cooperative- 9/29-10/30/2019 | 1 | 4,959.35 | | |
| 613710076 | Southern Pine Electric Cooperative- 9/29-10/30/2019 | 1 | 5,118.35 | | |
| 613710077 | Southern Pine Electric Cooperative- 9/29-10/30/2019 | 1 | 4,227.83 | | |
| 613710078 | Southern Pine Electric Cooperative- 9/29-10/30/2019 | 1 | 4,099.64 | | |
| 613710063 | Southern Pine Electric Cooperative- 9/30-10/30/2019 | 1 | 96.35 | 44,715.53 | 401.10 |
| **Vacuum Truck** | | | | | |
| 56072 | Kelley Brothers Contractors, Inc.- f/w into POT | 1 | 620.00 | | |
| 56074 | Kelley Brothers Contractors, Inc.- f/w & | 1 | 285.00 | | |

9

From:  Sklar Exploration Co., L.L.C.
To:    Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 11/30/2019
Account: ROO802   Page  5

**LEASE: (1BRO04)  Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:    (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| | salt inhibitor chemical into POT | | | | |
| 56075 | Kelley Brothers Contractors, Inc.- Pull tank bottoms | 1 | 142.50 | 1,047.50 | 9.40 |
| **Other Revenue Deductions** | | | | | |
| 0119 GGC | Corrected 01-19 Transportation Fee on 12,268 mcf $.50/mcf | 1 | 6,134.00 | | |
| 0119 GGC | Reverse 01-19 Transportation Fee on 7,726 mcf $.50/mcf | 1 | 3,638.00- | | |
| 0219 GGC | Corrected 02-19 Transportation Fee on 12,918 mcf@ $.50/mcf | 1 | 6,459.00 | | |
| 0219 GGC | Reverse 02-19 Transportation Fee on 7,626 mcf@ $.50/mcf | 1 | 3,813.00- | | |
| 0319 GGC | Corrected 03-19 Transportation Fee on 13,200 mcf @ $.50/mcf | 1 | 6,600.00 | | |
| 0319 GGC | Reverse 03-19 Transportation Fee on 7,417 mcf @ $.50/mcf | 1 | 3,708.50- | | |
| 0419 GGC | Corrected 04-19 Transportation Fee on 12,563 mcf @$.50/mcf | 1 | 6,281.50 | | |
| 0419 GGC | Reverse 04-19 Transportation Fee on 7,358 mcf @$.50/mcf | 1 | 3,679.00- | | |
| 0519 GGC | Reverse 05-19 Transportation Fee on 7,335 mcf @ $.50/mcf | 1 | 3,667.50- | | |
| 0519 GGC | Corrected 05-19 Transportation Fee on 12,408 mcf @ $.50/mcf | 1 | 6,204.00 | | |
| 0619 GGC | Corrected 06-19 Transportation Fee on 10,197 @ $.50/mcf | 1 | 5,098.50 | | |
| 0619 GGC | Reverse 06-19 Transportation Fee on 5,698 @ $.50/mcf | 1 | 2,849.00- | | |
| 0719 GGC | Reverse 07-19 Transportation Fee on 6,347 mcf @ $.50/mcf | 1 | 3,173.50- | | |
| 0719 GGC | Corrected 07-19 Transportation Fee on 10,730 mcf @ $.50/mcf | 1 | 5,365.00 | | |
| 0919TRAN | 09-19 Transportation Fee on 12,961 mcf @ $.50/mcf | 1 | 6,480.50 | | |
| CP04025265 | Pruet Production Co    08-19 | 1 | 1,651.00 | 25,745.00 | 230.94 |
| **COPAS Overhead** | | | | | |
| RBO38096 | Adm Overhead - Producing | 1 | 17,770.72 | 17,770.72 | 159.40 |
| | **Total Lease Operating Expense** | | | **137,948.83** | **1,237.42** |
| **Leasehold Costs** | | | | | |
| **Legal Fees** | | | | | |
| 410002 | Armbrecht Jackson LLP- Gulf Coast Mineral conference | 309-1 | 142.00 | | |
| 410003 | Armbrecht Jackson LLP- Curative, Water flood status, Review UOA | 309-1 | 1,473.00 | 1,615.00 | 14.49 |
| | **Total Leasehold Costs** | | | **1,615.00** | **14.49** |
| **Intangible Drilling Costs** | | | | | |
| **Location Clean Up/Pit Closure** | | | | | |
| 56092 | Kelley Brothers Contractors, Inc.- Pumping pit, backfilling pit, hauling off trash, planting seed, dressing up location | 309-1 | 24,160.05 | 24,160.05 | 216.72 |
| **Mud & Chemicals** | | | | | |
| 9570 | Quality Drilling Fluids, Inc.- Caustic, Nut Plug | 309-1 | 3,378.43 | 3,378.43 | 30.31 |

9

From:  Sklar Exploration Co., L.L.C.
To:    Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 11/30/2019
Account: ROO802    Page    6

**LEASE: (1BRO04) Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|-----------|-------------|----------|-------------|-------|------------|
| **Equipment Rentals** | | | | | |
| 556356-10 | Stabil Drill- Stabilizers 9/19-10/5/2019 | 309-1 | 15,165.70 | | 138.63 |
| RN0026768 | Eastern Fishing & Rental Tools- 9/26-10/22/2019 | 309-1 | 289.17 | 15,454.87 | 138.63 |
| **Sales/Use Tax** | | | | | |
| 1019ALA | AL sales/use tax not paid by vendor, 10/2019 | 309-1 | 292.20 | | |
| 1019ALA | AL sales/use tax not paid by vendor, 10/2019 | 309-1 | 159.90 | 452.10 | 4.05 |
| **Total Intangible Drilling Costs** | | | | **43,445.45** | **389.71** |
| **Intangible Completion Costs** | | | | | |
| **Location Clean Up** | | | | | |
| 71519 | H&H Construction, LLC- Clean out flowback tank & dress location | 309-2 | 1,856.00 | 1,856.00 | 16.65 |
| **Engineering & Supervision Svcs** | | | | | |
| TM1119EV | Field Supervisor Time & Mileage - Vines | 309-W-1 | 2,835.96 | 2,835.96 | 25.44 |
| TM1119EV | Field Supervisor Time & Mileage - Vines | 309-2 | 3,051.90 | 3,051.90 | 27.38 |
| TM1119HD | Production Superintendent Time & Mileage - DeLeon | 309-W3-1 | 301.96 | | |
| TM1119JV | Operations Engineer - Vittitow | 309-W3-1 | 8,962.76 | 9,264.72 | 83.10 |
| TM1119RW | Engineer Time - West | 309-W-1 | 240.96 | 240.96 | 2.17 |
| KRC 0382 | Kenny Copeland- Water Source Completion, 10/23-31/2019 | 309-2 | 14,854.10 | 14,854.10 | 133.24 |
| KRC 0383 | Kenny Copeland- Water Injector Conversion, 10/30-31/2019 | 309-W-1 | 1,957.94 | 1,957.94 | 17.56 |
| **Instru/Monitoring & Automation** | | | | | |
| 90949151 | IHS Global, Inc.- Field Direct setup fee | 309-W-1 | 60.00 | 60.00 | 0.54 |
| 90949151 | IHS Global, Inc.- Field Direct setup fee | 309-2 | 60.00 | 60.00 | 0.54 |
| 19-00556 | KCS Automation, LLC- Got call outs working | 309-W-1 | 9,386.60 | | |
| 19-00558 | KCS Automation, LLC- Fixed gateway | 309-W-1 | 790.00 | 10,176.60 | 91.28 |
| 19-00555 | KCS Automation, LLC- Got call outs working | 309-2 | 9,890.10 | 9,890.10 | 88.72 |
| **Coil Tubing Unit** | | | | | |
| 90039527 | C&J Spec-Rent Services, Inc. | 309-W2-1 | 69,147.78 | 69,147.78 | 620.27 |
| 90040835 | C&J Spec-Rent Services, Inc. | 309-W3-1 | 54,444.21 | 54,444.21 | 488.37 |
| **Casing Crew & Laydown Machine** | | | | | |
| PN0026713 | Eastern Fishing & Rental Tools | 309-2 | 1,896.78 | 1,896.78 | 17.02 |
| **Pipe Testing** | | | | | |
| 63239 | A & B Pump & Supply, Inc. | 309-2 | 2,141.20 | 2,141.20 | 19.20 |
| PN0026806 | Eastern Fishing & Rental Tools- MIT casing test | 309-W-1 | 1,767.50 | 1,767.50 | 15.86 |
| **Equipment Rentals** | | | | | |
| 19001745-203 | Premium Oilfield Services, LLC- 10/22-29/2019 | 309-2 | 961.42 | | |
| PN0026710 | Eastern Fishing & Rental Tools- 10K extendable boom forklift | 309-2 | 606.00 | 1,567.42 | 14.06 |
| PN0026731 | Eastern Fishing & Rental Tools- Risers | 309-W2-1 | 400.20 | 400.20 | 3.59 |
| **Transportation & Trucking** | | | | | |
| 6501 | Rapad Drilling & Well Service, Inc.- Haul equipment | 309-2 | 3,450.00 | | |
| 8335 | J Nichols LLC- Delivered rig beam & pipe racks to location | 309-2 | 1,000.00 | | |
| 10032 | GRS Services, LLC- Hauled equipment | 309-2 | 500.00 | | |
| 8336 | J Nichols LLC- Returned pump & baskets to Rapad | 309-2 | 1,000.00 | | |

9

From: Sklar Exploration Co., L.L.C.
To:    Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 11/30/2019
Account: ROO802   Page   7

**LEASE: (1BRO04)  Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| 56208 | Kelley Brothers Contractors, Inc.-Transport tank | 309-2 | 825.00 | 6,775.00 | 60.77 |
| 66402 | SRT Oil Field Service, LLC- Hauled Eastern tanks & equipment | 309-W2-1 | 1,000.00 | 1,000.00 | 8.97 |
| 34958 | Eagle Express Hotshot Ser. LLC-Hauled 1 esp assembly w/misc tools, 1 tree assy | 309-2 | 1,125.00 | 1,125.00 | 10.09 |
| 66403 | SRT Oil Field Service, LLC- Hauled Eastern's tanks | 309-W3-1 | 900.00 | | |
| 66404 | SRT Oil Field Service, LLC- Hauled Eastern's tanks | 309-W3-1 | 932.00 | 1,832.00 | 16.44 |
| **Contract Labor** | | | | | |
| 71219 | H&H Construction, LLC- Move production tubing | 309-2 | 2,256.00 | | |
| 71719 | H&H Construction, LLC- Build rock pad for pump drive, Install braces on surface casing | 309-2 | 1,560.00 | 3,816.00 | 34.23 |
| 6536 | Complete Environmental & Remediation Co- Labor, equipment, & materials required to complete cleaning of 4, 400 barrel storage tanks | 309-W-1 | 4,518.51 | 4,518.51 | 40.53 |
| **Logging & Wireline** | | | | | |
| 468 | Slickline South, LLC- 5K pressure control equipment | 309-W2-1 | 9,904.00 | 9,904.00 | 88.84 |
| 469 | Slickline South, LLC- 5K pressure control equipment | 309-W-1 | 4,437.20 | 4,437.20 | 39.80 |
| RWLS176444 | RWLS, LLC dba Renegade Services | 309-W2-1 | 6,528.17 | 6,528.17 | 58.56 |
| 470 | Slickline South, LLC- 5K pressure control equipment | 309-W3-1 | 8,442.40 | 8,442.40 | 75.73 |
| **Production Testing** | | | | | |
| PN0026734 | Eastern Fishing & Rental Tools- Well test | 309-W2-1 | 17,045.05 | 17,045.05 | 152.90 |
| PN0026812 | Eastern Fishing & Rental Tools- Well test | 309-W3-1 | 21,299.36 | 21,299.36 | 191.06 |
| **Workover Rig** | | | | | |
| 50215 | Rapad Drilling & Well Service, Inc.- 10/29-31/2019 | 309-2 | 10,560.00 | 10,560.00 | 94.72 |
| **Completion Fluids** | | | | | |
| 001534 | D & M Drilling Fluids, Inc.- 3% KCL, packer fluid | 309-W-1 | 3,801.00 | 3,801.00 | 34.10 |
| **Repairs & Maint-Surface Equip** | | | | | |
| 71919 | H&H Construction, LLC- Convert tank battery from production to injection | 309-W-1 | 35,000.00 | | |
| 136021 | Union Oilfield Supply, Inc.-Non-contolled | 309-W-1 | 2,054.95 | | |
| 136304 | Union Oilfield Supply, Inc.- Concrete block, couplings, jetlube | 309-W-1 | 463.78 | | |
| 72119 | H&H Construction, LLC- Air Compressor | 309-W-1 | 1,080.00 | | |
| 136410 | Union Oilfield Supply, Inc.- Hatch gaskets, Hex head bolts w/nuts, line pipe | 309-W-1 | 1,457.29 | 40,056.02 | 359.31 |
| 23406 | Carnley Electric Inc- Replaced bad OPCI commutation card in drive | 309-2 | 180.00 | 180.00 | 1.61 |
| **Repairs & Maint-Sub Surface Eq** | | | | | |
| 115063 | Robine & Welch- 2-7/8" 8RD L-80 Pup Joint | 309-2 | 165.85 | 165.85 | 1.49 |

9

From:  Sklar Exploration Co., L.L.C.
To:    Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 11/30/2019
Account: ROO802    Page    8

**LEASE: (1BRO04)  Southeast Brooklyn Oil Unit    (Continued)**
**Expenses:    (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Supplies** | | | | | |
| 0939-510059 | Consolidated Electrical Distributors Inc- Multi-purpose towels | 309-2 | 19.36 | 19.36 | 0.17 |
| **Salt Water Disposal** | | | | | |
| 56081 | Kelley Brothers Contractors, Inc.- Rig tank | 309-2 | 484.00 | | |
| 56208 | Kelley Brothers Contractors, Inc. | 309-2 | 2,848.00 | 3,332.00 | 29.89 |
| 56199 | Kelley Brothers Contractors, Inc.- Assist C&J | 309-W2-1 | 2,024.50 | 2,024.50 | 18.16 |
| 56205 | Kelley Brothers Contractors, Inc. | 309-W-1 | 5,919.50 | 5,919.50 | 53.10 |
| 56210 | Kelley Brothers Contractors, Inc. | 309-W3-1 | 769.00 | 769.00 | 6.90 |
| **Swabbing Unit** | | | | | |
| 18236 | Pitts Swabbing Service, Inc.- 10/25-27-2019 | 309-2 | 7,745.00 | 7,745.00 | 69.47 |
| 18234 | Pitts Swabbing Service, Inc.- 10/30-31/2019 | 309-W2-1 | 2,320.00 | 2,320.00 | 20.81 |
| 18235 | Pitts Swabbing Service, Inc.- 11/2-4/2019 | 309-W3-1 | 4,860.00 | 4,860.00 | 43.60 |
| **Vacuum Truck** | | | | | |
| 56081 | Kelley Brothers Contractors, Inc.- Rig tank | 309-2 | 335.00 | | |
| 56208 | Kelley Brothers Contractors, Inc.- Wash out frac tank | 309-2 | 1,000.00 | 1,335.00 | 11.97 |
| 56199 | Kelley Brothers Contractors, Inc.- Assist C&J | 309-W2-1 | 2,095.00 | 2,095.00 | 18.79 |
| 9018773 | Deepwell Energy Services, LLC- Packer fluid down well | 309-W-1 | 1,210.00 | 1,210.00 | 10.86 |
| 56210 | Kelley Brothers Contractors, Inc.- f/w for acid job | 309-W3-1 | 1,620.00 | 1,620.00 | 14.53 |
| **COPAS Overhead** | | | | | |
| ROL1119 | Rig on Location CCL&T 34-15 | 309-W3-1 | 3,147.32 | 3,147.32 | 28.23 |
| | **Total Intangible Completion Costs** | | | 363,495.61 | 3,260.62 |
| **Tangible Completion Costs** | | | | | |
| **Tubing** | | | | | |
| MT1BRO04 | Transfer 3,019' 2-7/8" 6.5#/ft L-80 EUE 8rd from SW Brooklyn Oil Unit (CCL&T 32-11 #1) to SE Brooklyn (CCL&T 34-13 #1-WS) Oil Unit | 1 | 12,679.80 | 12,679.80 | 113.74 |
| **Wellhead Equipment** | | | | | |
| 20242579 | GE Oil & Gas- Flg,Comp; Gen Gate Valve | 309-2 | 5,955.27 | 5,955.27 | 53.42 |
| **Tank Battery InstallationCosts** | | | | | |
| 72219 | H&H Construction, LLC- Mobilize & install tank, install Apex 300' fiberglass flowline, fabricate and install 3" meter runs, install 1" relief line to tank | 309-2 | 17,500.00 | 17,500.00 | 156.98 |
| **Flowlines, Fittings, Connects** | | | | | |
| 136287 | Union Oilfield Supply, Inc.- Non-controlled | 309-2 | 691.24 | | |
| 136411 | Union Oilfield Supply, Inc.- Non-controlled | 309-2 | 727.19 | 1,418.43 | 12.72 |
| **Electrical & Control Systems** | | | | | |
| 23353 | Carnley Electric Inc- Electrical install | 309-2 | 3,094.54 | | |
| 0939-509976 | Consolidated Electrical Distributors Inc- Non-controlled electrical (cable, sockets, clamps, bushings) | 309-2 | 1,147.99 | | |
| 0939-509965 | Consolidated Electrical Distributors Inc- Non-controlled (wire, cable, | 309-2 | 2,301.22 | | |

9

From:   Sklar Exploration Co., L.L.C.
To:     Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 11/30/2019
Account: ROO802    Page    9

**LEASE: (1BRO04)  Southeast Brooklyn Oil Unit    (Continued)**
**Expenses:    (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| | connectors) | | | | |
| 23382 | Carnley Electric Inc- Electrical install | 309-2 | 7,418.51 | | |
| 140244 | Mississippi Gauge & Supply Co.- Pressure gauge, Water column gauges | 309-2 | 878.74 | 14,841.00 | 133.13 |
| 23384 | Carnley Electric Inc- Installed electrical for water injection 4-1 | 309-W-1 | 2,340.00 | 2,340.00 | 20.99 |
| 0939-510034 | Consolidated Electrical Distributors Inc- Ring terminal | 309-2 | 60.90 | 60.90 | 0.55 |
| *Sales/Use Tax* | | | | | |
| 1019ALA | AL sales/use tax not paid by vendor, 10/2019 | 309-2 | 253.57 | 253.57 | 2.27 |
| | **Total Tangible Completion Costs** | | | 55,048.97 | 493.80 |

| | **Total Expenses for LEASE** | | | **601,553.86** | **5,396.04** |
|---|---|---|---|---|---|
| Billing Summary | Deck 1 | 1 | 0.00897017 | 150,628.63 | 1,351.16 |
| by Deck/AFE | BCP | 309-1 | 0.00897017 | 45,060.45 | 404.20 |
| | ACP | 309-2 | 0.00897017 | 110,399.88 | 990.29 |
| | Workover | 309-W-1 | 0.00897017 | 79,321.19 | 711.54 |
| | Workover | 309-W2-1 | 0.00897017 | 110,464.70 | 990.89 |
| | Workover | 309-W3-1 | 0.00897017 | 105,679.01 | 947.96 |

| LEASE Summary: | Wrk Int | | Expenses | Pre-Pmt Applied | You Owe |
|---|---|---|---|---|---|
| 1BRO04 | 0.00897017 | | 5,396.04 | 483.82 | 4,912.22 |

9

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA  71101
(303)541-1559

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX  75711

Account:  ROO802

Date:  12/31/2019

**Account: ROO802 - Statement of Account:**

| Date | Reference | Description | Charges | Credits |
|------|-----------|-------------|---------|---------|
| 11/30/2019 | | Balance Forward | 13,689.93 | |
| 12/02/2019 | 10385 | Payment-Thank You! Ck# 44597 | 19,959.20 | |
| 12/02/2019 | 10385 | Partial Payment Ck# 44597 | | (28,736.91) |
| | | New Balance Forward | 4,912.22 | |

**Summary by LEASE:**

| Property# | Description | Expenses | You Owe |
|-----------|-------------|----------|---------|
| | Unpaid Previous Balance | | 4,912.22 |
| 1BRO04 | Southeast Brooklyn Oil Unit | 1,333.67 | 1,333.67 |
| | Totals: | 1,333.67 | 6,245.89 |

PLEASE PAY THIS AMOUNT ------------------^

*(handwritten: 49,000 200.01 12/2/31)*

*(handwritten:)*
SB
260 - 800    949.75
260 - 290    22.82
220 - 800    111.38
240 - 800    249.72

Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.

From:  Sklar Exploration Co., L.L.C.  
To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 12/31/2019  
Account: ROO802    Page    2

### LEASE: (1BRO04)  Southeast Brooklyn Oil Unit   County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Location Clean Up/Pit Closure* | | | | | |
| 0808-000642 | Republic Services #808 | 1 | 229.88 | | |
| 0808-000641 | Republic Services #808 | 1 | 31.88 | | |
| 0484-000536 | Republic Services #808 | 1 | 38.21 | 299.97 | 2.69 |
| *Engineering & Supervision* | | | | | |
| TM1219RW | Engineer Time - West | 1 | 481.92 | | |
| 120619262 | Tom Joiner & Associates Inc.- Senior Professional/GIS Technician, Oct-Nov 2019 | 1 | 2,637.45 | | |
| EWEV1219 | - EWB Credit Card<br>- 12/2016<br>- Edward Vines<br>- Rent<br>- Meals | 1 | 281.55 | | |
| EWHD1219 | - EWB Credit Card<br>- 12/2019<br>- Harold De Leon<br>- Rent | 1 | 15.00 | | |
| EWHD1219 | - EWB Credit Card<br>- 12/2019<br>- Harold De Leon<br>- Rent | 1 | 50.00 | 3,465.92 | 31.09 |
| *Instru/Monitoring & Automation* | | | | | |
| 90973944 | IHS Global, Inc.- Field Direct Monthly Subscription Service | 1 | 203.45 | | |
| BARC014623 | Bristol, Inc.- Zedi Access Monitoring 11/2019 | 1 | 99.00 | | |
| BARC014635 | Bristol, Inc.- Zedi Access Monitoring 11/2019 | 1 | 99.00 | | |
| BARC014636 | Bristol, Inc.- Zedi Access Monitoring 11/2019 | 1 | 99.00 | | |
| BARC014639 | Bristol, Inc.- Zedi Access Monitoring 11/2019 | 1 | 99.00 | | |
| BARC014653 | Bristol, Inc.- Zedi Access Monthly Fee 11/2019 | 1 | 99.00 | | |
| BARC014662 | Bristol, Inc.- Zedi Access Monthly Fee 11/2019 | 1 | 99.00 | | |
| BARC014663 | Bristol, Inc.- Zedi Access Monthly Fee 11/2019 | 1 | 99.00 | | |
| BARC014665 | Bristol, Inc.- Zedi Access Monthly Fee 11/2019 | 1 | 99.00 | | |
| BARC014673 | Bristol, Inc.- Zedi Access Monthly Fee 11/2019 | 1 | 99.00 | | |
| 470591 | SPL, Inc.- Changed orifice | 1 | 360.00 | | |
| 470593 | SPL, Inc.- Site repair | 1 | 360.00 | | |
| 470597 | SPL, Inc.- Gas samples | 1 | 986.27 | 2,800.72 | 25.12 |
| *Chemicals* | | | | | |
| 910663307 | Baker Hughes, a GE Company, LLC- Forsa Scale Remover | 1 | 299.98 | | |
| 18540 | White Resources LLC- P-278 | 1 | 188.15 | | |
| 18541 | White Resources LLC- P-278 | 1 | 658.53 | | |
| 18542 | White Resources LLC- P-278 | 1 | 376.30 | | |
| 18543 | White Resources LLC- P-278 | 1 | 376.30 | | |
| 18544 | White Resources LLC- P-278 | 1 | 752.60 | | |
| 18545 | White Resources LLC- P-278 | 1 | 846.68 | 3,498.54 | 31.39 |
| *Company Pumping - Gauging* | | | | | |
| ALPU1219 | Pumper Time & Mileage - Hester/Hoomes/Hart/Moye/Blackman/D | 1 | 16,116.27 | 16,116.27 | 144.56 |

From:  Sklar Exploration Co., L.L.C.
To:    Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 12/31/2019
Account: ROO802   Page   3

**LEASE: (1BRO04) Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| | avis/Kinsey/Hinote | | | | |
| **Telephone & Communications** | | | | | |
| 19120100844 | Your Message Center, Inc. | 1 | 12.93 | 12.93 | 0.12 |
| **Transportation/Trucking** | | | | | |
| 35016 | Eagle Express Hotshot Ser. LLC-Hauled pail of acid sticks | 1 | 600.00 | 600.00 | 5.38 |
| **Contract Labor** | | | | | |
| 35574 | Barnette & Benefield, Inc.- Installed fiberglass flowline on 34-13 & 4-1 tanks | 1 | 700.00 | 700.00 | 6.28 |
| **Repairs & Maint-Surface Equip** | | | | | |
| WMR19-3665 | Whirlwind Methane Recovery Systems, LLC | 1 | 1,350.00 | | |
| 19112091 | Kodiak Gas Services, LLC- Repaired VRU screen | 1 | 890.45 | | |
| 98-24022 | Jimco Pumps- Parts for Power Oil Pump | 1 | 1,971.60 | | |
| 23432 | Carnley Electric Inc- Adjusted belts on pumping unit | 1 | 920.00 | | |
| 149611 | Process Piping Materials, Inc.- Rust Inhibitor | 1 | 108.39 | | |
| 23445 | Carnley Electric Inc- Replaced ignitor module on flare ignitor | 1 | 180.00 | 5,420.44 | 48.62 |
| **Supplies** | | | | | |
| 135633C | Union Oilfield Supply, Inc.- Lubricant | 1 | 0.20- | 0.20- | 0.00 |
| **Salt Water Disposal** | | | | | |
| 42646 | American Remediation & Environmental Inc | 1 | 2,565.00 | | |
| 56352 | Kelley Brothers Contractors, Inc. | 1 | 341.50 | 2,906.50 | 26.07 |
| **Utilities** | | | | | |
| 613710006 | Southern Pine Electric Cooperative- 10/30-11/26/2019 | 1 | 432.99 | | |
| 613710046 | Southern Pine Electric Cooperative- 10/30-11/26/2019 | 1 | 4,311.43 | | |
| 613710050 | Southern Pine Electric Cooperative- 10/30-11/26/2019 | 1 | 4,488.30 | | |
| 613710057 | Southern Pine Electric Cooperative- 10/30-11/26/2019 | 1 | 5,912.88 | | |
| 613710063 | Southern Pine Electric Cooperative- 10/30-11/26/2019 | 1 | 95.74 | | |
| 613710064 | Southern Pine Electric Cooperative- 10/30-11/26/2019 | 1 | 4,644.41 | | |
| 613710075 | Southern Pine Electric Cooperative- 10/30-11/26/2019 | 1 | 4,315.97 | | |
| 613710076 | Southern Pine Electric Cooperative- 10/30-11/26/2019 | 1 | 4,460.00 | | |
| 613710077 | Southern Pine Electric Cooperative- 10/30-11/26/2019 | 1 | 3,751.10 | | |
| 613710078 | Southern Pine Electric Cooperative- 10/30-11/26/2019 | 1 | 3,260.52 | | |
| 613710080 | Southern Pine Electric Cooperative- 11/4-11/26/2019 | 1 | 458.39 | 36,131.73 | 324.11 |
| **Vacuum Truck** | | | | | |
| 56353 | Kelley Brothers Contractors, Inc.- Cleaned up oil around well head in cellar | 1 | 95.00 | 95.00 | 0.85 |
| **Ad Valorem Taxes** | | | | | |
| 048963 | Escambia County Tax Collector- 2019 | 1 | 341.70 | | |
| 375716 | Conecuh County- 2019 | 1 | 2,202.38 | 2,544.08 | 22.82 |

From:  Sklar Exploration Co., L.L.C.
To:    Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 12/31/2019
Account: ROO802   Page   4

**LEASE: (1BRO04) Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Other Revenue Deductions** | | | | | |
| PRUP01 | Reverse Pruet Production - Gas gathering 07/19 | 1 | 1,578.00- | | |
| 1019TRAN | 10-19 Transportation Fee on 13,101 mcf @ $.50/mcf | 1 | 6,550.50 | | |
| CP04025486 | Pruet Production Co    09-19 | 1 | 1,673.50 | 6,646.00 | 59.62 |
| **COPAS Overhead** | | | | | |
| RBO38203 | Adm Overhead - Producing | 1 | 17,770.72 | 17,770.72 | 159.40 |
| | **Total Lease Operating Expense** | | | 99,008.62 | 888.12 |
| **Leasehold Costs** | | | | | |
| **Legal Fees** | | | | | |
| 408470 | Armbrecht Jackson LLP- Pruet | 1 | 8,067.00 | | |
| 410228 | Armbrecht Jackson LLP- Suspense issues | 1 | 4,349.00 | 12,416.00 | 111.38 |
| | **Total Leasehold Costs** | | | 12,416.00 | 111.38 |
| **Intangible Completion Costs** | | | | | |
| **Location Preparation/Dirt Work** | | | | | |
| 5085 | C.R. Pate Logging, Inc.- #1 Rock, Fine Crush & Run | 309-2 | 3,236.02 | 3,236.02 | 29.03 |
| **Engineering & Supervision Svcs** | | | | | |
| EWJV1219 | - EWB Credit Card<br>- 12/2019  CCLT 34-15<br>- John Vittitow<br>- Meals<br>- Flight<br>- Postage<br>- Supplies<br>- Fuel<br>- Airline Baggage | 1 | 444.67 | 444.67 | 3.98 |
| **Instru/Monitoring & Automation** | | | | | |
| 4125 | BTech Service & Supply Inc.- Install Pneumatic Safety Shutdown System | 309-W-1 | 3,463.63 | | |
| 4126 | BTech Service & Supply Inc.- Repair & isolate 3-4 safety system after converting 4-1 to water injection | 309-W-1 | 478.80 | 3,942.43 | 35.37 |
| **Equipment Rentals** | | | | | |
| PN0026948 | Eastern Fishing & Rental Tools Inc- 500Bbl Flowback Tank | 309-2 | 757.50 | 757.50 | 6.79 |
| **Transportation & Trucking** | | | | | |
| 66807 | SRT Oil Field Service, LLC- Hauled Eastern's forklift 4-1 | 309-W-1 | 900.00 | 900.00 | 8.08 |
| **Contract Labor** | | | | | |
| 35575 | Barnette & Benefield, Inc.- Run bypass on triplex, install braces under flow meters, cleanup 4-1 | 309-W-1 | 1,750.00 | 1,750.00 | 15.69 |
| **Stimulation Services** | | | | | |
| 2948 | Excel Consulting, LLC- Chemsurf 410 | 309-W-1 | 9,041.76 | 9,041.76 | 81.11 |
| **Installation of Well Equipment** | | | | | |
| 910627267* | Baker Hughes, a GE Company, LLC- DST | 1 | 7,636.98 | 7,636.98 | 68.51 |
| **Sales/Use Tax** | | | | | |
| 1119ALA | AL sales/use tax not paid by vendor 11/2019 | 309-W-1 | 129.42 | 129.42 | 1.16 |
| | **Total Intangible Completion Costs** | | | 27,838.78 | 249.72 |

From:   Sklar Exploration Co., L.L.C.                                    For Billing Dated 12/31/2019
To:     Roosth 806, Ltd, a Texas Ltd Partnership                        Account: ROO802   Page   5

**LEASE: (1BRO04)  Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:    (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|-----------|-------------|----------|-------------|-------|------------|
| **Tangible Drilling Costs** | | | | | |
| *Surface Casing* | | | | | |
| 19-14978 | B & L Pipeco Services, L.L.C.- 9-5/8" 36.00# R-3 LTC ERW | 309-1 | 5,069.73- | 5,069.73- | 45.48- |
| | **Total Tangible Drilling Costs** | | | **5,069.73-** | **45.48-** |
| **Tangible Completion Costs** | | | | | |
| *Production Casing & Liners* | | | | | |
| 19-14969 | B & L Pipeco Services, L.L.C.- 5-1/2" 17.00# L80HC R-3 LTC SMLS | 309-2 | 1,426.79- | 1,426.79- | 12.80- |
| *Surface Artificial Lift Equip* | | | | | |
| 63240 | A & B Pump & Supply, Inc.- D-2740 Desander 2 7/8" EUE, *RD, 5 1/2" Packer for Desander | 309-2 | 2,976.06 | 2,976.06 | 26.70 |
| *Electrical & Control Systems* | | | | | |
| JOB #16977 | Southern Pine Electric Cooperative- Electrical Installation | 309-2 | 12,935.93 | 12,935.93 | 116.03 |
| | **Total Tangible Completion Costs** | | | **14,485.20** | **129.93** |
| | **Total Expenses for LEASE** | | | **148,678.87** | **1,333.67** |

| Billing Summary by Deck/AFE | | | | | |
|-----------------------------|---------|------------|------------|------------|
| Billing Summary by Deck/AFE | Deck 1 | 1 | 0.00897017 | 119,506.27 | 1,071.99 |
| | BCP | 309-1 | 0.00897017 | 5,069.73- | 45.48- |
| | ACP | 309-2 | 0.00897017 | 18,478.72 | 165.75 |
| | Workover | 309-W-1 | 0.00897017 | 15,763.61 | 141.41 |

| LEASE Summary: | Wrk Int | Expenses | You Owe |
|----------------|---------|----------|---------|
| 1BRO04 | 0.00897017 | 1,333.67 | 1,333.67 |

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA 71101
(303)541-1559

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX 75711

Account: ROO802

Date: 01/31/2020

*800669*

## Account: ROO802 - Statement of Account:

| Date | Reference | Description | Charges | Credits |
|------|-----------|-------------|---------|---------|
| 12/31/2019 | | Balance Forward | 6,245.89 | |
| 01/06/2020 | 10465 | Partial Payment Ck# 44679 | | (4,912.22) |
| | | New Balance Forward | ~~1,333.67~~ | |

## Summary by LEASE:

| Property# | Description | Expenses | You Owe |
|-----------|-------------|----------|---------|
| | Unpaid Previous Balance | | ~~1,333.67~~ |
| 1BRO04 | Southeast Brooklyn Oil Unit | 1,065.20 | 1,065.20 |
| | Totals: | 1,065.20 | 2,398.87 |

*a2000-200.01*    *12/30*

**PLEASE PAY THIS AMOUNT** ➔ *SB*

*260-800     1059.79*
*240-800        5.41*



Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.

5

From:   Sklar Exploration Co., L.L.C.

To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 01/31/2020

Account: ROO802   Page   2

### LEASE: (1BRO04) Southeast Brooklyn Oil Unit   County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Survey, DOC Hearings, Permits* | | | | | |
| 121619396 | Tom Joiner & Associates Inc.- Air permits, 10/2019 | 1 | 238.35 | | |
| 121619396 | Tom Joiner & Associates Inc.- Air permits, 10/2019 | 1 | 285.72 | 524.07 | 4.70 |
| *Location Clean Up/Pit Closure* | | | | | |
| 0808-000650 | Republic Services #808 | 1 | 2.72 | | |
| 0484-000542 | Republic Services #808 | 1 | 38.21 | 40.93 | 0.37 |
| *Engineering & Supervision* | | | | | |
| TM0120HD | Production Superintendent Time & Mileage - DeLeon | 1 | 3,297.42 | 3,297.42 | 29.58 |
| *Instru/Monitoring & Automation* | | | | | |
| 481006 | SPL, Inc.- Site inspection/repair | 1 | 172.50 | | |
| 482843 | SPL, Inc.- Total Flow repair | 1 | 2,711.66 | | |
| 4149 | BTech Service & Supply Inc.- Test safety system | 1 | 275.00 | | |
| 4150 | BTech Service & Supply Inc.- Test safety system & make repairs | 1 | 310.43 | | |
| 4151 | BTech Service & Supply Inc.- Test safety system | 1 | 275.00 | | |
| 4152 | BTech Service & Supply Inc.- Test safety system | 1 | 275.00 | | |
| 4153 | BTech Service & Supply Inc.- Test safety system | 1 | 275.00 | | |
| 4154 | BTech Service & Supply Inc.- Test safety system | 1 | 275.00 | | |
| 4123 | BTech Service & Supply Inc.- Reset pilots & repaired | 1 | 290.52 | | |
| 20-00581 | KCS Automation, LLC- Replaced POT battery | 1 | 438.20 | | |
| 90991647 | IHS Global, Inc.- Field Direct 12/2019 | 1 | 169.20 | | |
| BARC015511 | Bristol, Inc.- Zedi Access Monitoring 12/2019 | 1 | 99.00 | | |
| BARC015523 | Bristol, Inc.- Zedi Access Monitoring 12/2019 | 1 | 99.00 | | |
| BARC015524 | Bristol, Inc.- Zedi Access Monitoring 12/2019 | 1 | 99.00 | | |
| BARC015527 | Bristol, Inc.- Zedi Access Monitoring 12/2019 | 1 | 99.00 | | |
| BARC015541 | Bristol, Inc.- Zedi Access Monthly Fee, 12/2019 | 1 | 99.00 | | |
| BARC015550 | Bristol, Inc.- Zedi Access Monthly Fee, 12/2019 | 1 | 99.00 | | |
| BARC015551 | Bristol, Inc.- Zedi Access Monthly Fee, 12/2019 | 1 | 99.00 | | |
| BARC015553 | Bristol, Inc.- Zedi Access Monthly Fee, 12/2019 | 1 | 99.00 | | |
| BARC015562 | Bristol, Inc.- Zedi Access Monthly Fee, 12/2019 | 1 | 99.00 | | |
| 481012 | SPL, Inc.- Inpspection/repair, flare meter display | 1 | 360.00 | | |
| 2030020274 | SPL, Inc.- Gas thru Heptanes | 1 | 300.00 | | |
| BSINV01020 | Bristol, Inc.- Zedi Engineering-Design-Commissioning-Mo, CCLT 4-1 & CCLT 34-13 | 1 | 1,745.91 | | |
| 482831 | SPL, Inc.- Quarterly gas sample for analysis | 1 | 641.92 | | |
| 482830 | SPL, Inc.- Quarterly gas sample for | 1 | 125.14 | 9,531.48 | 85.50 |

5

From: Sklar Exploration Co., L.L.C.
To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 01/31/2020
Account: ROO802    Page    3

**LEASE: (1BRO04) Southeast Brooklyn Oil Unit    (Continued)**
**Expenses:    (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| | analysis | | | | |
| **Chemicals** | | | | | |
| 18569 | White Resources LLC | 1 | 787.05 | | |
| 18563 | White Resources LLC- Acid sticks | 1 | 2,231.72 | | |
| 18577 | White Resources LLC | 1 | 376.30 | | |
| 18578 | White Resources LLC | 1 | 282.23 | | |
| 18579 | White Resources LLC | 1 | 564.45 | | |
| 18580 | White Resources LLC | 1 | 282.23 | | |
| 18581 | White Resources LLC | 1 | 376.30 | | |
| 910755421 | Baker Hughes, a GE Company, LLC- Paraffin Inhibitor | 1 | 1,304.17 | 6,204.45 | 55.65 |
| **Company Pumping - Gauging** | | | | | |
| ALPU0120 | Pumper Time & Mileage - Kinsey/Hester/Hoomes/Hart/Moye/Blackman/Davis/Kinsey/Hinote | 1 | 16,316.27 | 16,316.27 | 146.36 |
| **Telephone & Communications** | | | | | |
| 20010100844 | Your Message Center, Inc. | 1 | 12.93 | 12.93 | 0.12 |
| **Logging & Wireline** | | | | | |
| 488 | Slickline South, LLC- Fluid Level Determination | 1 | 1,666.00 | 1,666.00 | 14.94 |
| **Repairs & Maint-Surface Equip** | | | | | |
| WMR19-3667 | Whirlwind Methane Recovery Systems, LLC- VRU | 1 | 450.46 | | |
| 136699 | Union Oilfield Supply, Inc.- Hydraulic hose | 1 | 119.31 | | |
| 257986 | White's T&J Oilfield Supply, Inc.- LMI Metering Pump | 1 | 927.73 | | |
| 137006 | Union Oilfield Supply, Inc.- Kimray | 1 | 516.17 | | |
| 137013 | Union Oilfield Supply, Inc.- Waterfinding paste | 1 | 30.85 | | |
| 137041 | Union Oilfield Supply, Inc.- Meltblown pads, Sock net boom 5x10 | 1 | 162.18 | | |
| 733035 | The McPherson Companies, Inc.- Proteck R&O 100 Bulk Ga | 1 | 528.74 | | |
| 137113 | Union Oilfield Supply, Inc.- Blue moly lubricant | 1 | 47.12 | | |
| 137114 | Union Oilfield Supply, Inc.- Blue moly lubricant | 1 | 47.12 | | |
| 4406 | BTech Service & Supply Inc.- Repaired safety system | 1 | 567.66 | | |
| 23562 | Carnley Electric Inc- Replaced 150hp motor on power oil pump | 1 | 540.00 | | |
| 23564 | Carnley Electric Inc- Replaced power supply on VRU | 1 | 270.00 | | |
| 751668 | The McPherson Companies, Inc.- Gear oil | 1 | 254.05 | 4,461.39 | 40.02 |
| **Supplies** | | | | | |
| 137023 | Union Oilfield Supply, Inc.- Turkish wipers | 1 | 47.58 | | |
| 137097 | Union Oilfield Supply, Inc.- Turkish wipers | 1 | 47.58 | 95.16 | 0.85 |
| **Salt Water Disposal** | | | | | |
| 2019-12-005 | Wastewater Disposal Services, Inc.- 12/16-31/2019 | 1 | 100.00 | | |
| 2020-01-002 | Wastewater Disposal Services, Inc.- 1/1-15/2020 | 1 | 100.00 | | |
| 80107 | S&S Construction, LLC | 1 | 360.00 | | |
| 80111 | S&S Construction, LLC | 1 | 540.00 | | |
| 80104 | S&S Construction, LLC | 1 | 630.00 | 1,730.00 | 15.52 |

From: Sklar Exploration Co., L.L.C.
To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 01/31/2020
Account: ROO802    Page    4

**LEASE: (1BRO04) Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:    (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Utilities** | | | | | |
| 613710006 | Southern Pine Electric Cooperative- 11/26-12/29/2019 | 1 | 475.18 | | |
| 613710046 | Southern Pine Electric Cooperative- 11/26-12/29/2019 | 1 | 4,940.01 | | |
| 613710050 | Southern Pine Electric Cooperative- 11/26-12/29/2019 | 1 | 5,348.42 | | |
| 613710057 | Southern Pine Electric Cooperative- 11/26-12/29/2019 | 1 | 6,775.28 | | |
| 613710063 | Southern Pine Electric Cooperative- 11/26-12/29/2019 | 1 | 99.52 | | |
| 613710064 | Southern Pine Electric Cooperative- 11/26-12/29/2019 | 1 | 5,090.04 | | |
| 613710075 | Southern Pine Electric Cooperative- 11/26-12/29/2019 | 1 | 5,396.35 | | |
| 613710076 | Southern Pine Electric Cooperative- 11/26-12/29/2019 | 1 | 5,258.10 | | |
| 613710077 | Southern Pine Electric Cooperative- 11/26-12/29/2019 | 1 | 4,756.25 | | |
| 613710078 | Southern Pine Electric Cooperative- 11/26-12/29/2019 | 1 | 4,573.26 | | |
| 613710080 | Southern Pine Electric Cooperative- 11/26-12/29/2019 | 1 | 427.73 | 43,140.14 | 386.98 |
| **Vacuum Truck** | | | | | |
| 80114 | S&S Construction, LLC- Pulled oil samples | 1 | 180.00 | | |
| 80115 | S&S Construction, LLC- Pulling oil samples | 1 | 180.00 | | |
| 80117 | S&S Construction, LLC- Pulling oil samples | 1 | 180.00 | | |
| 80118 | S&S Construction, LLC- Pulling oil samples | 1 | 180.00 | | |
| 80119 | S&S Construction, LLC- Pull cellars & load boxes | 1 | 180.00 | 900.00 | 8.07 |
| **Ad Valorem Taxes** | | | | | |
| 123119 | dba Clarke & Company- Ad Valorem tax services 2019 | 1 | 1,440.00 | 1,440.00 | 12.92 |
| **Other Revenue Deductions** | | | | | |
| 1219PLAM | 12-19 Rejected Load - Logan 5-7 #1 | 1 | 150.00 | | |
| 1119TRAN | 11-19 Transportation Fee on 17,193mcf @$.50/mcf | 1 | 8,596.50 | | |
| CP04025636 | Pruet Production Co    10-19 | 1 | 1,618.00 | 10,364.50 | 92.97 |
| **COPAS Overhead** | | | | | |
| RBO38311 | Adm Overhead - Producing | 1 | 17,770.72 | 17,770.72 | 159.40 |
| **Miscellaneous** | | | | | |
| 18804650 RI | Stratum Reservoir Intermediate LLC- Ambient storage 3/4 section | 1 | 651.00 | 651.00 | 5.84 |
| | **Total Lease Operating Expense** | | | 118,146.46 | 1,059.79 |
| **Intangible Completion Costs** | | | | | |
| **Engineering & Supervision Svcs** | | | | | |
| TM0120RW | Engineer Time & Mileage - West | 309-W5-1 | 240.96 | 240.96 | 2.17 |
| TM0120RW | Engineer Time & Mileage - West | 309-W4-1 | 361.44 | 361.44 | 3.24 |
| | **Total Intangible Completion Costs** | | | 602.40 | 5.41 |
| | **Total Expenses for LEASE** | | | 118,748.86 | 1,065.20 |

5

From:   Sklar Exploration Co., L.L.C.
To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 01/31/2020
Account: ROO802   Page   5

**LEASE: (1BRO04)  Southeast Brooklyn Oil Unit    (Continued)**

| Billing Summary | Deck 1 | 1 | 0.00897017 | 118,146.46 | 1,059.79 |
|---|---|---|---|---|---|
| by Deck/AFE | Workover | 309-W4-1 | 0.00897017 | 361.44 | 3.24 |
| | Workover | 309-W5-1 | 0.00897017 | 240.96 | 2.17 |

| LEASE Summary: | Wrk Int | Expenses | You Owe |
|---|---|---|---|
| 1BRO04 | 0.00897017 | 1,065.20 | 1,065.20 |

5

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA 71101
(318)227-8668

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX 75711

Account: ROO802

Date: 02/29/2020

### Account: ROO802 - Statement of Account:

*800669*

| Date | Reference | Description | Charges | Credits |
|------|-----------|-------------|---------|---------|
| 01/31/2020 | | Balance Forward | 2,398.87 | |
| 02/03/2020 | 10532 | Payment-Thank You! Ck# 44734 | | (1,333.67) |
| | | New Balance Forward | 1,065.20 | |

### Summary by LEASE:

| Property# | Description | Expenses | You Owe |
|-----------|-------------|----------|---------|
| | Unpaid Previous Balance | | 1,065.20 |
| 1BRO04 | Southeast Brooklyn Oil Unit | 1,944.57 | 1,944.57 |
| | **Totals:** | **1,944.57** | **3,009.77** |

*A q2000 200.01*

*Pd 2/25*

**PLEASE PAY THIS AMOUNT**

260-800   1143.88
220-800   42.73
230-800   17.89
240-800   633.59
250-800   106.48



RECEIVED
MAR 09 2020
BY:

Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.

6

From:  Sklar Exploration Co., L.L.C.
To:    Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 02/29/2020
Account: ROO802   Page   2

### LEASE: (1BRO04)  Southeast Brooklyn Oil Unit   County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| ***Survey, DOC Hearings, Permits*** | | | | | |
| 36704 | J & H Insurance Services, Inc.- AOGB Acstar Bond Renewal | 1 | 352.55 | 352.55 | 3.16 |
| ***Location Clean Up/Pit Closure*** | | | | | |
| 0808-000656 | Republic Services #808 | 1 | 47.16 | | |
| 0484-000543 | Republic Services #808 | 1 | 37.09 | | |
| 0808-000655 | Republic Services #808 | 1 | 30.51 | 114.76 | 1.03 |
| ***Engineering & Supervision*** | | | | | |
| TM0220HD | Production Superintendent Time & Mileage - DeLeon | 1 | 566.18 | | |
| TM0220RW | Engineer Time & Mileage - West | 1 | 1,599.78 | | |
| EWCK0220 | - EWB Credit Card - 02/2020 - Chase Kinsey - Meal | 1 | 12.07 | | |
| EWHD0220 | - EWB Credit Card - 02/2020 - Harold DeLeon - Rent - Meals | 1 | 94.31 | 2,272.34 | 20.39 |
| ***Instru/Monitoring & Automation*** | | | | | |
| 91015790 | IHS Global, Inc.- Field Direct | 1 | 177.60 | | |
| BARC016479 | Bristol, Inc.- Zedi Access Monitoring, 1/2020 | 1 | 99.00 | | |
| BARC016480 | Bristol, Inc.- Zedi Access Monitoring, 1/2020 | 1 | 99.00 | | |
| BARC016483 | Bristol, Inc.- Zedi Access Monitoring, 1/2020 | 1 | 99.00 | | |
| BARC016497 | Bristol, Inc.- Zedi Access Monthly Fee, 1/2020 | 1 | 99.00 | | |
| BARC016506 | Bristol, Inc.- Zedi Access Monthly Fee, 1/2020 | 1 | 99.00 | | |
| BARC016507 | Bristol, Inc.- Zedi Access Monthly Fee, 1/2020 | 1 | 99.00 | | |
| BARC016509 | Bristol, Inc.- Zedi Access Monthly Fee, 1/2020 | 1 | 99.00 | | |
| BARC016518 | Bristol, Inc.- Zedi Access Monthly Fee, 1/2020 | 1 | 99.00 | | |
| 20-00625 | KCS Automation, LLC- Replaced master freewave radio | 1 | 731.08 | | |
| 497078 | SPL, Inc.- Troubleshoot meter issues | 1 | 360.00 | | |
| 497080 | SPL, Inc.- Replaced battery on meter | 1 | 172.50 | | |
| 497081 | SPL, Inc.- Replaced bad transmitter on meter | 1 | 415.00 | | |
| 497094 | SPL, Inc.- Replacement battery for meter | 1 | 100.70 | | |
| 497095 | SPL, Inc.- Parts for meter repairs | 1 | 2,276.65 | | |
| 497179 | SPL, Inc.- Quarterly gas sample for analysis | 1 | 573.97 | | |
| 23581 | Carnley Electric Inc- Troubleshoot problem with drive | 1 | 180.00 | | |
| 497182 | SPL, Inc.- Gas sample for analysis | 1 | 115.11 | | |
| 497083 | SPL, Inc.- Inspection/calibration of Total Flows | 1 | 427.50 | 6,322.11 | 56.71 |
| ***Chemicals*** | | | | | |
| 18614 | White Resources LLC | 1 | 771.15 | | |
| 18615 | White Resources LLC | 1 | 282.23 | | |
| 18616 | White Resources LLC | 1 | 752.60 | | |

6

From: Sklar Exploration Co., L.L.C.
To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 02/29/2020
Account: ROO802   Page   3

**LEASE: (1BRO04) Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|-----------|-------------|----------|-------------|-------|------------|
| 18617 | White Resources LLC | 1 | 376.30 | | |
| 18618 | White Resources LLC | 1 | 470.38 | | |
| 18619 | White Resources LLC | 1 | 752.60 | | |
| 18620 | White Resources LLC | 1 | 1,128.90 | | |
| 18667 | White Resources LLC- P-278 | 1 | 282.23 | | |
| 18668 | White Resources LLC- P-278 | 1 | 186.30 | | |
| 18669 | White Resources LLC- P-278 | 1 | 376.30 | | |
| 18670 | White Resources LLC- P-278 | 1 | 282.23 | | |
| 18671 | White Resources LLC- P-278 | 1 | 752.60 | | |
| 18672 | White Resources LLC- P-278 | 1 | 564.45 | | |
| 18673 | White Resources LLC- P-278 | 1 | 752.60 | 7,730.87 | 69.34 |
| **Company Pumping - Gauging** | | | | | |
| ALPU0220 | Pumper Time & Mileage 02-20 (Kinsey/Hester/Hoomes/Hart/Moye/Blackman/Davis/Kinsey/Hinote) | 1 | 16,732.66 | 16,732.66 | 150.10 |
| **Equipment Rentals** | | | | | |
| 1500994872 | Thompson Gas- Tank rent | 1 | 5.20 | 5.20 | 0.04 |
| **Telephone & Communications** | | | | | |
| 200100176 | Your Message Center, Inc. | 1 | 12.93 | 12.93 | 0.12 |
| **Fuel** | | | | | |
| 1501046251 | Thompson Gas- Propane | 1 | 1,015.47 | 1,015.47 | 9.11 |
| **Repairs & Maint-Surface Equip** | | | | | |
| 98-23586 | Jimco Pumps- Changed hub on motor | 1 | 2,073.89 | | |
| 75719 | H&H Construction, LLC- Replace pipe insulation | 1 | 588.00 | | |
| 150831 | Process Piping Materials, Inc.- Enardo ES 900 Stack Vents 4"- CCLT 3-4 #1 (R13E) | 1 | 1,927.72 | | |
| 758494 | The McPherson Companies, Inc.- Gear oil | 1 | 127.86 | | |
| 137382 | Union Oilfield Supply, Inc.- Kimray EKI, BMI-57-00-0030 Snap Pilot w/gauges, tape | 1 | 690.25 | | |
| 137399 | Union Oilfield Supply, Inc.- Kimray repair kit | 1 | 67.72 | | |
| 98-24446 | Jimco Pumps- Parts for Triplex | 1 | 768.50 | | |
| 98-24452 | Jimco Pumps- Parts for Triplex service | 1 | 483.36 | | |
| 98-24455 | Jimco Pumps- Parts for Wilden pump | 1 | 174.90 | | |
| 98-24456 | Jimco Pumps- Parts for Wilden pump | 1 | 174.90 | | |
| 98-24459 | Jimco Pumps- Parts to repair standing valve | 1 | 496.08 | | |
| 98-24460 | Jimco Pumps- Parts for Triplex | 1 | 1,876.20 | | |
| 23616 | Carnley Electric Inc- VRU | 1 | 270.00 | | |
| 23618 | Carnley Electric Inc- Replaced battery on flare igniter | 1 | 422.47 | | |
| 763775 | The McPherson Companies, Inc.- Gear oil | 1 | 399.46 | | |
| 137637 | Union Oilfield Supply, Inc.- Fluid filled gauges | 1 | 508.42 | | |
| 0939-511020 | Consolidated Electrical Distributors Inc- Battery for production tank | 1 | 169.40 | | |
| 0939-511021 | Consolidated Electrical Distributors Inc- Battery for production tanks | 1 | 169.40 | 11,388.53 | 102.16 |
| **Repairs & Maint/Sub-Surface Eq** | | | | | |
| 98-24450 | Jimco Pumps- Parts to repair jet pump that was pulled from well prior to conversion | 1 | 1,384.36 | | |
| 98-24451 | Jimco Pumps- Parts to repair standing valves | 1 | 263.94 | 1,648.30 | 14.78 |

6

From:   Sklar Exploration Co., L.L.C.
To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 02/29/2020
Account: ROO802   Page   4

**LEASE: (1BRO04)  Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| *Salt Water Disposal* | | | | | |
| 43724 | American Remediation & Environmental Inc | 1 | 180.00 | | |
| 80173 | S&S Construction, LLC | 1 | 630.00 | | |
| 2020-01-007 | Wastewater Disposal Services, Inc.- 1/16-31/2020 | 1 | 330.00 | | |
| 80155 | S&S Construction, LLC | 1 | 540.00 | | |
| 80211 | S&S Construction, LLC | 1 | 630.00 | | |
| 2020-02-003 | Wastewater Disposal Services, Inc.- 2/1-15/2020 | 1 | 330.00 | | |
| 80209 | S&S Construction, LLC | 1 | 360.00 | | |
| 56869 | Kelley Brothers Contractors, Inc. | 1 | 689.00 | | |
| 80242 | S&S Construction, LLC | 1 | 450.00 | | |
| 80243 | S&S Construction, LLC | 1 | 540.00 | | |
| 80262 | S&S Construction, LLC | 1 | 540.00 | 5,219.00 | 46.82 |
| *Utilities* | | | | | |
| 613710006 | Southern Pine Electric Cooperative- 12/29/2019-1/30/2020 | 1 | 522.22 | | |
| 613710046 | Southern Pine Electric Cooperative- 12/29/2019-1/30/2020 | 1 | 5,011.75 | | |
| 613710050 | Southern Pine Electric Cooperative- 12/29/2019-1/30/2020 | 1 | 5,623.32 | | |
| 613710057 | Southern Pine Electric Cooperative- 12/29/2019-1/30/2020 | 1 | 6,452.31 | | |
| 613710063 | Southern Pine Electric Cooperative- 12/29/2019-1/30/2020 | 1 | 101.56 | | |
| 613710064 | Southern Pine Electric Cooperative- 12/29/2019-1/30/2020 | 1 | 5,413.82 | | |
| 613710075 | Southern Pine Electric Cooperative- 12/29/2019-1/30/2020 | 1 | 5,573.79 | | |
| 613710076 | Southern Pine Electric Cooperative- 12/29/2019-1/30/2020 | 1 | 5,325.95 | | |
| 613710077 | Southern Pine Electric Cooperative- 12/29/2019-1/30/2020 | 1 | 5,146.42 | | |
| 613710078 | Southern Pine Electric Cooperative- 12/29/2019-1/30/2020 | 1 | 4,832.40 | | |
| 613710080 | Southern Pine Electric Cooperative- 12/29/2019-1/30/2020 | 1 | 386.36 | 44,389.90 | 398.18 |
| *Vacuum Truck* | | | | | |
| 43686 | American Remediation & Environmental Inc- Moved fluids from SWT to stock tank | 1 | 95.00 | | |
| 80060 | S&S Construction, LLC- Clean up oil at wellhead | 1 | 180.00 | | |
| 43735 | American Remediation & Environmental Inc- Pulled T/B put in SWT | 1 | 90.00 | | |
| 80200 | S&S Construction, LLC- Change water in POT | 1 | 360.00 | | |
| 80234 | S&S Construction, LLC- Haul s/w to rig | 1 | 360.00 | | |
| 80240 | S&S Construction, LLC- Haul s/w to rig | 1 | 360.00 | | |
| 56874 | Kelley Brothers Contractors, Inc.- Pulled water from firewall around heater treater | 1 | 427.50 | 1,872.50 | 16.80 |
| *Sales/Use Tax* | | | | | |
| SALES/USE | Alabama Department of Revenue- Sales/use tax not paid by vendor Jan 2020 | 1 | 1.54 | 1.54 | 0.01 |

6

From: Sklar Exploration Co., L.L.C.
To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 02/29/2020
Account: ROO802   Page   5

**LEASE: (1BRO04)  Southeast Brooklyn Oil Unit    (Continued)**
**Expenses:    (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Other Revenue Deductions** | | | | | |
| 1219TRAN | 12-19 Transportation Fee on 14,412 mcf @$.50/mcf | 1 | 7,206.00 | | |
| CP04025789 | Pruet Production Co     11-19 | 1 | 1,773.00 | 8,979.00 | 80.55 |
| **COPAS Overhead** | | | | | |
| RBO38527 | Adm Overhead - Producing | 1 | 19,386.24 | 19,386.24 | 173.89 |
| **Miscellaneous** | | | | | |
| 120301 | Alabama 811- 2020 Annual Membership | 1 | 76.40 | 76.40 | 0.69 |
| | **Total Lease Operating Expense** | | | **127,520.30** | **1,143.88** |
| **Leasehold Costs** | | | | | |
| **Legal Fees** | | | | | |
| 021420262 | Tom Joiner & Associates Inc.- Hearing for TA/SI Status | 1 | 804.89 | | |
| 021420262 | Tom Joiner & Associates Inc.- Board questions on Unit Operating Reports | 1 | 117.70 | | |
| 021420295 | Tom Joiner & Associates Inc.- Hearing for TA/SI Status | 1 | 640.64 | | |
| 410809 | Armbrecht Jackson LLP- Hearing | 1 | 63.00 | | |
| 410810 | Armbrecht Jackson LLP- OGB matters | 1 | 3,137.82 | 4,764.05 | 42.73 |
| | **Total Leasehold Costs** | | | **4,764.05** | **42.73** |
| **Intangible Drilling Costs** | | | | | |
| **Insurance** | | | | | |
| SAOEE20 | Semi Annual OEE 2019-2020 CCL&T 34-13 #1 WS | INS03 | 1,669.27 | 1,669.27 | 17.89 |
| | **Total Intangible Drilling Costs** | | | **1,669.27** | **17.89** |
| **Intangible Completion Costs** | | | | | |
| **Engineering & Supervision Svcs** | | | | | |
| TM0220EV | Field Supervisor Time & Mileage - Vines | 1 | 944.74 | 944.74 | 8.48 |
| KRC 0394 | Kenny Copeland- Rod job | 309-W4-1 | 5,620.14 | 5,620.14 | 50.41 |
| **Pipe Testing** | | | | | |
| 63441 | A & B Pump & Supply, Inc.- 366 Joints tubing tested, Test cups/water savers | 309-W5-1 | 2,712.54 | 2,712.54 | 24.33 |
| **Equipment Rentals** | | | | | |
| PPS220 | Precise Propellant Stimulation, LLC- Propellant Units | 309-W5-1 | 13,421.59 | | |
| 23344 | Pryor Packers Inc.- Barton chart recorder | 309-W5-1 | 261.82 | 13,683.41 | 122.75 |
| **Transportation & Trucking** | | | | | |
| 3905 | Davis Hot Shot Service, LLC- Hauled equipment | 309-W5-1 | 1,800.00 | 1,800.00 | 16.14 |
| 3906 | Davis Hot Shot Service, LLC- Hauled equipment | 309-W4-1 | 2,000.00 | 2,000.00 | 17.94 |
| **Workover Rig** | | | | | |
| 50272 | Rapad Well Service Co Inc- 2/6-8/2020 | 309-W5-1 | 11,267.50 | 11,267.50 | 101.07 |
| 50273 | Rapad Well Service Co Inc- 2/8-11/2020 | 309-W4-1 | 11,597.50 | 11,597.50 | 104.04 |
| **Perforation Services** | | | | | |
| 7318 | TCP Specialists, LLC | 309-W5-1 | 11,423.02 | 11,423.02 | 102.46 |
| **Completion Fluids** | | | | | |
| 001553 | D & M Drilling Fluids, Inc.- 4% KCL water, Packer Fluid+Oxygen Scavenger+H2S Scavenger | 309-W5-1 | 2,490.00 | 2,490.00 | 22.34 |
| **Repairs & Maint-Sub Surface Eq** | | | | | |
| 23344 | Pryor Packers Inc.- Redress | 309-W5-1 | 6,239.16 | 6,239.16 | 55.96 |

6

From:   Sklar Exploration Co., L.L.C.
To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 02/29/2020
Account: ROO802   Page   6

**LEASE: (1BRO04)  Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| *Vacuum Truck* | | | | | |
| 56870 | Kelley Brothers Contractors, Inc.- Hauled 4% KCL to location | 309-W5-1 | 855.00 | 855.00 | 7.67 |
| | **Total Intangible Completion Costs** | | | **70,633.01** | **633.59** |
| **Tangible Completion Costs** | | | | | |
| *Rods, Downhole Pumps, Related* | | | | | |
| 34309 | Total Pump & Supply LLC- 25-125 RHBC 24-6-3-3 DV 3-CUP HD 267" STROKE Pump | 309-W4-1 | 11,870.00 | 11,870.00 | 106.48 |
| | **Total Tangible Completion Costs** | | | **11,870.00** | **106.48** |
| | **Total Expenses for LEASE** | | | **216,456.63** | **1,944.57** |

| Billing Summary by Deck/AFE | | | | | |
|---|---|---|---|---|---|
| | Deck 1 | 1 | 0.00897017 | 133,229.09 | 1,195.09 |
| | Workover | 309-W4-1 | 0.00897017 | 31,087.64 | 278.87 |
| | Workover | 309-W5-1 | 0.00897017 | 50,470.63 | 452.72 |
| | Insurance Deck 2/1/20 | INS03 | 0.01071547 | 1,669.27 | 17.89 |

| LEASE Summary: | Wrk Int | Expenses | You Owe |
|---|---|---|---|
| 1BRO04 | multiple | 1,944.57 | 1,944.57 |

6

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA  71101
(318)227-8668

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX  75711



Account:  ROO802

Date:  03/31/2020

**Account: ROO802 - Statement of Account:**   *800669*

| Date | Reference | Description | Charges | Credits |
|------|-----------|-------------|---------|---------|
| 02/29/2020 | | Balance Forward | 3,009.77 | |
| 03/02/2020 | 10593 | Payment-Thank You! Ck# 44780 | | (1,065.20) |
| 03/30/2020 | 10651 | Payment-Thank You! Ck# 44827 | | (1,944.57) |
| | | New Balance Forward | 0.00 | |

**Summary by LEASE:**

| Property# | Description | Expenses | You Owe |
|-----------|-------------|----------|---------|
| 1BRO04 | Southeast Brooklyn Oil Unit | 3,401.73 | 3,401.73 |
| | Totals: | 3,401.73 | 3,401.73 |

*492 000 200.01*

**PLEASE PAY THIS AMOUNT**

*260-800    1206.65*
*240-800    1811.79*
*250-800    383.29*

Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.

5

From:   Sklar Exploration Co., L.L.C.
To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 03/31/2020
Account: ROO802    Page   2

### LEASE: (1BRO04)  Southeast Brooklyn Oil Unit   County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Survey, DOC Hearings, Permits* | | | | | |
| 021020396 | Tom Joiner & Associates Inc.- Air Permits, Nov 2019 | 1 | 989.05 | | |
| 021020396 | Tom Joiner & Associates Inc.- Air Permits, Nov 2019 | 1 | 3,923.00 | | |
| 021420396 | Tom Joiner & Associates Inc.- Air Permits, Dec 2019, LDAR, NOV Response | 1 | 1,101.97 | | |
| 021420396 | Tom Joiner & Associates Inc.- Air Permits, Dec 2019, LDAR, NOV Response | 1 | 1,218.52 | | |
| 022520396 | Tom Joiner & Associates Inc.- Air Permits, Jan 2020, NOV Response, LIDAR Report | 1 | 759.17 | | |
| 022520396 | Tom Joiner & Associates Inc.- Air Permits, Jan 2020, NOV Response, LIDAR Report | 1 | 2,384.77 | 10,376.48 | 93.08 |
| *Location Clean Up/Pit Closure* | | | | | |
| 0808-000658 | Republic Services #808 | 1 | 47.10 | | |
| 0484-000545 | Republic Services #808 | 1 | 37.01 | | |
| 0808-000658 | Republic Services #808 | 1 | 14.09 | 98.20 | 0.88 |
| *Engineering & Supervision* | | | | | |
| TM0320HD | Production Superintendent Time and Mileage- DeLeon | 1 | 1,462.55 | 1,462.55 | 13.12 |
| *Instru/Monitoring & Automation* | | | | | |
| 2030020478 | SPL, Inc.- Gas thru Heptanes | 1 | 581.13 | | |
| 91037201 | IHS Global, Inc. | 1 | 160.20 | | |
| BARC017572 | Bristol, Inc.- Zedi Access Monitoring 2/2020 | 1 | 99.00 | | |
| BARC017584 | Bristol, Inc.- Zedi Access Monitoring 2/2020 | 1 | 99.00 | | |
| BARC017585 | Bristol, Inc.- Zedi Access Monitoring 2/2020 | 1 | 99.00 | | |
| BARC017588 | Bristol, Inc.- Zedi Access Monitoring 2/2020 | 1 | 99.00 | | |
| BARC017602 | Bristol, Inc.- Zedi Access Monthly Fee 2/2020 | 1 | 99.00 | | |
| BARC017611 | Bristol, Inc.- Zedi Access Monthly Fee 2/2020 | 1 | 99.00 | | |
| BARC017612 | Bristol, Inc.- Zedi Access Monthly Fee 2/2020 | 1 | 99.00 | | |
| BARC017614 | Bristol, Inc.- Zedi Access Monthly Fee 2/2020 | 1 | 99.00 | | |
| BARC017623 | Bristol, Inc.- Zedi Access Monthly Fee 2/2020 | 1 | 99.00 | | |
| 4540 | BTech Service & Supply Inc.- Instrument technician to location to install pneumatic safety shurdown system | 1 | 4,178.61 | | |
| 91347883 | Lufkin Industries, Inc.- Replaced LWM board & loadcell cable to fix load issue on the VSD | 1 | 3,727.86 | 9,538.80 | 85.56 |
| *Company Pumping - Gauging* | | | | | |
| ALPU0320 | Pumper Time & Mileage 03/20 Kinsey/Hester/Hoomes/Hart/Moye/Blackman/Davis/Kinsey/Hinote | 1 | 17,400.07 | 17,400.07 | 156.09 |

5

From:  Sklar Exploration Co., L.L.C.
To:    Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 03/31/2020
Account: ROO802   Page   3

**LEASE: (1BRO04) Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Telephone & Communications** | | | | | |
| 200200045 | Your Message Center, Inc. | 1 | 12.93 | 12.93 | 0.11 |
| **Installation of Equipment** | | | | | |
| 10820 | H&H Construction, LLC- Install 3-phase separator | 1 | 14,165.00 | 14,165.00 | 127.06 |
| **Repairs & Maint-Surface Equip** | | | | | |
| 136989 | Union Oilfield Supply, Inc.- For rust inhibitor for valves before insulating | 1 | 128.16 | | |
| 23633 | Carnley Electric Inc- Repaired wire & replaced flex to murphy | 1 | 180.00 | | |
| 23634 | Carnley Electric Inc- Replaced pressure switch on power oil pump, recalibrated transmitter at well head | 1 | 402.75 | | |
| 23635 | Carnley Electric Inc- Replaced battery on flare igniter | 1 | 386.25 | | |
| 23636 | Carnley Electric Inc- Replaced coil on flare igniter | 1 | 180.00 | | |
| 10920 | H&H Construction, LLC- Firewall built around wellhead | 1 | 1,428.00 | | |
| 137775 | Union Oilfield Supply, Inc.- Gauges for well head | 1 | 258.46 | | |
| 23694 | Carnley Electric Inc- Tank gauge repair | 1 | 180.00 | | |
| 23697 | Carnley Electric Inc- Flare igniter repair | 1 | 180.00 | | |
| 137868 | Union Oilfield Supply, Inc.- Pipeline regulators | 1 | 2,679.47 | | |
| 137890 | Union Oilfield Supply, Inc.- Redi mix cement | 1 | 169.43 | | |
| 137891 | Union Oilfield Supply, Inc.- Redi mix cement | 1 | 170.23 | | |
| I0068272 | Secorp Industries- Tubes- Nitrogen Oxide | 1 | 280.90 | | |
| 137990 | Union Oilfield Supply, Inc.- Redi Mix cement | 1 | 84.72 | | |
| 137995 | Union Oilfield Supply, Inc.- Redi Mix cement | 1 | 43.56 | | |
| 23726 | Carnley Electric Inc- Repaired igniter on flare stack | 1 | 416.45 | | |
| 0939-511318 | Consolidated Electrical Distributors Inc- Batteries for tank level gauges | 1 | 169.40 | | |
| 0939-511321 | Consolidated Electrical Distributors Inc- Batteries for tank level gauges | 1 | 169.40 | | |
| 515381 | SPL, Inc.- RAE pump kit | 1 | 382.87 | 7,890.05 | 70.78 |
| **Supplies** | | | | | |
| 137695 | Union Oilfield Supply, Inc.- Tape, Oil | 1 | 130.27 | | |
| 21840 | Arcadia Oilfield Supply, Inc.- Gloves, drum liners, wasp spray | 1 | 35.77 | | |
| 137993 | Union Oilfield Supply, Inc.- Gallon safety yellow, 3" paint brush | 1 | 63.20 | 229.24 | 2.06 |
| **Salt Water Disposal** | | | | | |
| 44637 | American Remediation & Environmental Inc | 1 | 360.00 | | |
| 80302 | S&S Construction, LLC | 1 | 360.00 | | |
| 80303 | S&S Construction, LLC | 1 | 360.00 | | |
| 80376 | S&S Construction, LLC | 1 | 450.00 | 1,530.00 | 13.72 |
| **Utilities** | | | | | |
| 613710006 | Southern Pine Electric Cooperative- 1/30-2/27/2020 | 1 | 485.46 | | |
| 613710046 | Southern Pine Electric Cooperative- 1/30-2/27/2020 | 1 | 4,483.50 | | |

5

From:  Sklar Exploration Co., L.L.C.
To:    Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 03/31/2020
Account: ROO802    Page    4

## LEASE: (1BRO04) Southeast Brooklyn Oil Unit   (Continued)
### Expenses:   (Continued)

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| 613710050 | Southern Pine Electric Cooperative-1/30-2/27/2020 | 1 | 5,358.38 | | |
| 613710057 | Southern Pine Electric Cooperative-1/30-2/27/2020 | 1 | 6,084.42 | | |
| 613710063 | Southern Pine Electric Cooperative-1/30-2/27/2020 | 1 | 419.72 | | |
| 613710064 | Southern Pine Electric Cooperative-1/30-2/27/2020 | 1 | 5,443.67 | | |
| 613710075 | Southern Pine Electric Cooperative-1/30-2/27/2020 | 1 | 5,483.50 | | |
| 613710076 | Southern Pine Electric Cooperative-1/30-2/27/2020 | 1 | 4,080.67 | | |
| 613710077 | Southern Pine Electric Cooperative-1/30-2/27/2020 | 1 | 4,479.26 | | |
| 613710078 | Southern Pine Electric Cooperative-1/30-2/27/2020 | 1 | 4,811.12 | | |
| 613710080 | Southern Pine Electric Cooperative-1/30-2/27/2020 | 1 | 404.00 | 41,533.70 | 372.56 |
| ***Vacuum Truck*** | | | | | |
| 44582 | American Remediation & Environmental Inc | 1 | 90.00 | | |
| 44634 | American Remediation & Environmental Inc- Pulled tank bottoms | 1 | 450.00 | | |
| 44637 | American Remediation & Environmental Inc- Cleaned up oil | 1 | 180.00 | | |
| 44637 | American Remediation & Environmental Inc- Pull sump | 1 | 180.00 | | |
| 44638 | American Remediation & Environmental Inc- Pulled T/B on stock tanks, put in SWT | 1 | 90.00 | | |
| 80312 | S&S Construction, LLC- fresh water | 1 | 270.00 | | |
| 44791 | American Remediation & Environmental Inc- pulled cellar | 1 | 90.00 | | |
| 80378 | S&S Construction, LLC | 1 | 540.00 | | |
| 80372 | S&S Construction, LLC | 1 | 630.00 | 2,520.00 | 22.61 |
| ***Other Revenue Deductions*** | | | | | |
| CP04025883 | Pruet Production Co    12-19 | 1 | 3,749.00 | | |
| TRAN0120 | 01-20 Transportation Fee on 9,051 mcf@.50/mcf | 1 | 4,625.50 | 8,374.50 | 75.12 |
| ***COPAS Overhead*** | | | | | |
| RBO38905 | Adm Overhead - Producing | 1 | 19,386.24 | 19,386.24 | 173.90 |
| | **Total Lease Operating Expense** | | | **134,517.76** | **1,206.65** |

### Intangible Completion Costs
#### Engineering & Supervision Svcs

| | | | | | |
|---|---|---|---|---|---|
| TM0320KC | Operations Engineer Time & Mileage-Copeland | 309-W6-1 | 3,548.03 | 3,548.03 | 31.82 |
| TM0320KC | Operations Engineer Time & Mileage-Copeland | 309-W7-1 | 8,681.35 | 8,681.35 | 77.88 |

#### Coil Tubing Unit

| | | | | | |
|---|---|---|---|---|---|
| 90079456 | NexTier Completion Solutions, Inc. | 309-W7-1 | 57,206.66 | 57,206.66 | 513.15 |
| 90081582 | NexTier Completion Solutions, Inc. | 309-W6-1 | 62,365.06 | 62,365.06 | 559.43 |

#### Equipment Rentals

| | | | | | |
|---|---|---|---|---|---|
| PN0026832 | Eastern Fishing & Rental Tools Inc- 10K extendable boom forklift | 309-W5-1 | 840.00 | | |
| PN0027604 | Eastern Fishing & Rental Tools Inc- 10K extendable boom forklift | 309-W5-1 | 624.00 | 1,464.00 | 13.13 |
| PN0027605 | Eastern Fishing & Rental Tools Inc- 10K extendable boom forklift | 309-W4-1 | 624.00 | 624.00 | 5.60 |
| 3165021 | Oil States Energy Services, LLC | 309-W7-1 | 805.71 | 805.71 | 7.22 |

From: Sklar Exploration Co., L.L.C.
To: Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 03/31/2020
Account: ROO802   Page   5

**LEASE: (1BRO04) Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| 3165022 | Oil States Energy Services, LLC | 1 | 875.26 | 875.26 | 7.85 |
| **Production Testing** | | | | | |
| PN0027602 | Eastern Fishing & Rental Tools Inc- Well test 3/11-13/2020 | 309-W7-1 | 26,079.12 | 26,079.12 | 233.94 |
| PN0027643 | Eastern Fishing & Rental Tools Inc- Well test | 309-W6-1 | 21,024.58 | 21,024.58 | 188.59 |
| **Installation of Well Equipment** | | | | | |
| 910627362 | Baker Hughes, a GE Company, LLC- DST | 309-2 | 2,147.00 | 2,147.00 | 19.26 |
| **Swabbing Unit** | | | | | |
| 18287 | Pitts Swabbing Service, Inc.- 3/12-14/2020 | 309-W7-1 | 5,870.00 | 5,870.00 | 52.66 |
| 18286 | Pitts Swabbing Service, Inc.- 3/14-15/2020 | 309-W6-1 | 4,470.00 | 4,470.00 | 40.09 |
| **Vacuum Truck** | | | | | |
| 80377 | S&S Construction, LLC- f/w for coil tubing job | 309-W7-1 | 990.00 | 990.00 | 8.88 |
| 80369 | S&S Construction, LLC- f/w for coil tubing job | 309-W6-1 | 720.00 | 720.00 | 6.46 |
| **Sales/Use Tax** | | | | | |
| SALES/USE | Alabama Department of Revenue- AL sales/use tax not paid by vendor 2/2020 | 309-W5-1 | 32.13 | 32.13 | 0.29 |
| **COPAS Overhead** | | | | | |
| ROL0320 | Rig on location - Thomasson 33-12 #1 | 309-W6-1 | 2,538.16 | 2,538.16 | 22.77 |
| ROL0320 | Rig on location - CCL&T 35-13 #1 | 309-W7-1 | 2,538.16 | 2,538.16 | 22.77 |
| | **Total Intangible Completion Costs** | | | **201,979.22** | **1,811.79** |
| **Tangible Completion Costs** | | | | | |
| **Surface Artificial Lift Equip** | | | | | |
| RW1063 | Transfer one SPOC Automation Jet Pump Package from inventory to SEB OU (CCL&T 4-1 #1, R13E) | 1 | 26,227.33 | 26,227.33 | 235.26 |
| **Surface Production Equipment** | | | | | |
| 143321 | Pro-Tek Field Services LLC- Vertical Separator | 1 | 10,084.75 | 10,084.75 | 90.46 |
| **Flowlines, Fittings, Connects** | | | | | |
| 137759 | Union Oilfield Supply, Inc.- Non-controlled | 1 | 6,418.12 | 6,418.12 | 57.57 |
| | **Total Tangible Completion Costs** | | | **42,730.20** | **383.29** |

| | | **Total Expenses for LEASE** | | **379,227.18** | **3,401.73** |
|---|---|---|---|---|---|
| Billing Summary by Deck/AFE | Deck 1 | 1 | 0.00897017 | 178,123.22 | 1,597.79 |
| | ACP | 309-2 | 0.00897017 | 2,147.00 | 19.26 |
| | Workover | 309-W4-1 | 0.00897017 | 624.00 | 5.60 |
| | Workover | 309-W5-1 | 0.00897017 | 1,496.13 | 13.42 |
| | Workover | 309-W6-1 | 0.00897017 | 94,665.83 | 849.16 |
| | Workover | 309-W7-1 | 0.00897017 | 102,171.00 | 916.50 |

| LEASE Summary: | Wrk Int | Expenses | You Owe |
|---|---|---|---|
| 1BRO04 | 0.00897017 | 3,401.73 | 3,401.73 |

5

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA  71101
(318)227-8668

# *Settlement Statement*

Roosth 806, Ltd, a Texas Ltd Partnership
P.O. Box 8300
Tyler, TX  75711

Account:  ROO802

Date:  04/30/2020

**Summary by LEASE:**

| Property# | Description | Expenses | You Owe |
|---|---|---|---|
| | Unpaid Previous Balance | | 3,401.73 |
| 1BRO04 | Southeast Brooklyn Oil Unit | 1,366.55 | 1,366.55 |
| | **Totals:** | **1,366.55** | **4,768.28** |

*492000. 200*   *Pd 4/30*

PLEASE PAY THIS AMOUNT -----------------------^

*260-800   1217.01*
*240-800   149.54*

RECEIVED
MAY 12 2020

Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.

5

From:   Sklar Exploration Co., L.L.C.

To:   Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 04/30/2020

Account: ROO802    Page    2

### LEASE: (1BRO04)  Southeast Brooklyn Oil Unit    County: CONECUH, AL

**Expenses:**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| **Lease Operating Expense** | | | | | |
| *Location Preparation/Dirt Work* | | | | | |
| 12220 | H&H Construction, LLC- Fab, install & paint pipe gate & fence on lease road, Logan 5-7 | 1 | 2,232.00 | | |
| 12420 | H&H Construction, LLC- Fab, install & paint pipe gate & fence on lease road, CCLT 3-7 | 1 | 4,500.00 | | |
| 12520 | H&H Construction, LLC- Fab, install & paint pipe gate & fence on lease road, CCLT 35-13 | 1 | 7,500.00 | 14,232.00 | 127.66 |
| *Location Clean Up/Pit Closure* | | | | | |
| 0808-000662 | Republic Services #808 | 1 | 47.02 | | |
| 0484-000551 | Republic Services #808 | 1 | 36.98 | | |
| 0808-000662 | Republic Services #808 | 1 | 14.08 | 98.08 | 0.88 |
| *Engineering & Supervision* | | | | | |
| EWEV0320 | East West Credit Card 3.2.20 rent | 1 | 78.95 | 78.95 | 0.71 |
| *Instru/Monitoring & Automation* | | | | | |
| BFT012589 | Bristol, Inc.- Re-establishing comms onto Access | 1 | 4,121.91 | | |
| BFT012590 | Bristol, Inc.- Correcting tank & turbine meter values | 1 | 472.50 | | |
| BFT012571 | Bristol, Inc.- Replaced & programmed tank device on water tank | 1 | 390.00 | | |
| 91067704 | IHS Global, Inc. | 1 | 161.36 | | |
| BARC018491 | Bristol, Inc.- Zedi Access Monitoring, 3/2020 | 1 | 99.00 | | |
| BARC018503 | Bristol, Inc.- Zedi Access Monitoring, 3/2020 | 1 | 99.00 | | |
| BARC018504 | Bristol, Inc.- Zedi Access Monitoring, 3/2020 | 1 | 99.00 | | |
| BARC018507 | Bristol, Inc.- Zedi Access Monitoring, 3/2020 | 1 | 99.00 | | |
| BARC018521 | Bristol, Inc.- Zedi Access Monthly Fee, 3/2020 | 1 | 99.00 | | |
| BARC018530 | Bristol, Inc.- Zedi Access Monthly Fee, 3/2020 | 1 | 99.00 | | |
| BARC018531 | Bristol, Inc.- Zedi Access Monthly Fee, 3/2020 | 1 | 99.00 | | |
| BARC018533 | Bristol, Inc.- Zedi Access Monthly Fee, 3/2020 | 1 | 99.00 | | |
| BARC018542 | Bristol, Inc.- Zedi Access Monthly Fee, 3/2020 | 1 | 99.00 | | |
| 515703 | SPL, Inc.- Troubleshoot flare meter display, CCLT 3-7 | 1 | 172.50 | | |
| 521508 | SPL, Inc.- Gas sample procurement & H2S determination, 3/5/2020 | 1 | 334.10 | | |
| 515711 | SPL, Inc.- Moved sales meter to flare, CCLT 35-13 | 1 | 172.50 | | |
| 515716 | SPL, Inc.- Changed out orifice plate in flare, CCLT 35-13 | 1 | 360.00 | | |
| 2030020861 | SPL, Inc.- Gas thru Heptanes | 1 | 365.91 | 7,441.78 | 66.76 |
| *Chemicals* | | | | | |
| 910938114 | Baker Hughes, a GE Company, LLC- Paraffin Inhibitor | 1 | 1,304.17 | 1,304.17 | 11.69 |
| *Company Pumping - Gauging* | | | | | |
| ALPU0420 | Pumper Time & Mileage-Davis/Hester/Hart/Moye/Kinsey/Hoomes/Blackman/Hinote | 1 | 19,561.26 | | |

5

From: Sklar Exploration Co., L.L.C.
To: Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 04/30/2020
Account: ROO802   Page   3

**LEASE: (1BRO04) Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:   (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| CKTM0120 | 01-20 Pumper Time- Chris Kinsey | 1 | 1,447.05 | | |
| CKTM0220 | 02-20 Pumper Time- Chris Kinsey | 1 | 1,494.72 | | |
| CKTM0320 | 03-20 Pumper Time - Chris Kinsey | 1 | 1,521.72 | 24,024.75 | 215.51 |
| **Equipment Rentals** | | | | | |
| 1501353246 | Thompson Gas- Tank rent | 1 | 5.20 | 5.20 | 0.05 |
| **Telephone & Communications** | | | | | |
| 200310051 | Your Message Center, Inc. | 1 | 11.99 | 11.99 | 0.10 |
| **Installation of Equipment** | | | | | |
| 11820 | H&H Construction, LLC- Install of 3-phase seaparator | 1 | 670.00 | 670.00 | 6.01 |
| **Pipeline Expense** | | | | | |
| 10920 | H&H Construction, LLC- Pig pipeline | 1 | 832.00 | | |
| 11220 | H&H Construction, LLC- Pig pipelines | 1 | 728.00 | 1,560.00 | 14.00 |
| **Repairs & Maint-Surface Equip** | | | | | |
| EWCK0320 | East West Credit Card 3.2.20 Tools, oil filter | 1 | 116.16 | | |
| 143541 | Pro-Tek Field Services LLC- Level controller | 1 | 4,285.70 | | |
| 137948 | Union Oilfield Supply, Inc.- Pigs for pipeline | 1 | 119.32 | | |
| 137950 | Union Oilfield Supply, Inc.- Back pressure flare valve | 1 | 749.16 | | |
| 138037 | Union Oilfield Supply, Inc.- Back pressure valve, Flare regulator | 1 | 486.20 | | |
| 23730 | Carnley Electric Inc- Drive repair | 1 | 180.00 | | |
| 138050 | Union Oilfield Supply, Inc.- Back pressure flare regulator | 1 | 1,172.79 | | |
| 138073 | Union Oilfield Supply, Inc.- Oil filters | 1 | 178.62 | | |
| 138074 | Union Oilfield Supply, Inc.- Oil filters for VRU's | 1 | 178.62 | | |
| 98-24688 | Jimco Pumps- Parts for triplex repair | 1 | 95.40 | | |
| 23748 | Carnley Electric Inc- Adjusted casing transmitter reading | 1 | 180.00 | | |
| 774337 | The McPherson Companies, Inc.- Gear oil | 1 | 167.41 | | |
| 23768 | Carnley Electric Inc- VRU repairs, CCLT 32-9 (r13E), 4/1/20 | 1 | 180.00 | | |
| 98-24735 | Jimco Pumps- Parts to repair triplex pump, CCLT 4-1 | 1 | 723.98 | | |
| 98-24738 | Jimco Pumps- Parts to repair triplex pump, Thomasson 33-12 | 1 | 483.36 | | |
| 98-24741 | Jimco Pumps- Part to rebuild wilden pump, CCLT 3-7 | 1 | 254.40 | | |
| 23770 | Carnley Electric Inc- Tank gauge repair, CCLT 35-13, 4/2/2020 | 1 | 360.00 | | |
| WMR20-3671 | Whirlwind Methane Recovery Systems, LLC- VRU | 1 | 759.07 | | |
| 98-24759 | Jimco Pumps- Parts to repair triplex pump, Thomasson 33-12 | 1 | 1,602.72 | 12,272.91 | 110.09 |
| **Repairs & Maint/Sub-Surface Eq** | | | | | |
| 98-24732 | Jimco Pumps- Parts to repair jet pump after acid job, CCLT 35-13 | 1 | 1,515.80 | 1,515.80 | 13.59 |
| **Salt Water Disposal** | | | | | |
| 2020-03-010 | Wastewater Disposal Services, Inc.- 3/16-31/2020 | 1 | 432.00 | | |
| 80399 | S&S Construction, LLC | 1 | 540.00 | | |
| 80398 | S&S Construction, LLC | 1 | 360.00 | | |
| 80425 | S&S Construction, LLC | 1 | 360.00 | | |
| 45218 | American Remediation & | 1 | 360.00 | | |

5

From:  Sklar Exploration Co., L.L.C.
To:    Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 04/30/2020
Account: ROO802    Page   3

**LEASE: (1BRO04) Southeast Brooklyn Oil Unit   (Continued)**
**Expenses:    (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| CKTM0120 | 01-20 Pumper Time- Chris Kinsey | 1 | 1,447.05 | | |
| CKTM0220 | 02-20 Pumper Time- Chris Kinsey | 1 | 1,494.72 | | |
| CKTM0320 | 03-20 Pumper Time - Chris Kinsey | 1 | 1,521.72 | 24,024.75 | 215.51 |
| **Equipment Rentals** | | | | | |
| 1501353246 | Thompson Gas- Tank rent | 1 | 5.20 | 5.20 | 0.05 |
| **Telephone & Communications** | | | | | |
| 200310051 | Your Message Center, Inc. | 1 | 11.99 | 11.99 | 0.10 |
| **Installation of Equipment** | | | | | |
| 11820 | H&H Construction, LLC- Install of 3-phase seaparator | 1 | 670.00 | 670.00 | 6.01 |
| **Pipeline Expense** | | | | | |
| 10920 | H&H Construction, LLC- Pig pipeline | 1 | 832.00 | | |
| 11220 | H&H Construction, LLC- Pig pipelines | 1 | 728.00 | 1,560.00 | 14.00 |
| **Repairs & Maint-Surface Equip** | | | | | |
| EWCK0320 | East West Credit Card 3.2.20 Tools, oil filter | 1 | 116.16 | | |
| 143541 | Pro-Tek Field Services LLC- Level controller | 1 | 4,285.70 | | |
| 137948 | Union Oilfield Supply, Inc.- Pigs for pipeline | 1 | 119.32 | | |
| 137950 | Union Oilfield Supply, Inc.- Back pressure flare valve | 1 | 749.16 | | |
| 138037 | Union Oilfield Supply, Inc.- Back pressure valve, Flare regulator | 1 | 486.20 | | |
| 23730 | Carnley Electric Inc- Drive repair | 1 | 180.00 | | |
| 138050 | Union Oilfield Supply, Inc.- Back pressure flare regulator | 1 | 1,172.79 | | |
| 138073 | Union Oilfield Supply, Inc.- Oil filters | 1 | 178.62 | | |
| 138074 | Union Oilfield Supply, Inc.- Oil filters for VRU's | 1 | 178.62 | | |
| 98-24688 | Jimco Pumps- Parts for triplex repair | 1 | 95.40 | | |
| 23748 | Carnley Electric Inc- Adjusted casing transmitter reading | 1 | 180.00 | | |
| 774337 | The McPherson Companies, Inc.- Gear oil | 1 | 167.41 | | |
| 23768 | Carnley Electric Inc- VRU repairs, CCLT 32-9 (r13E), 4/1/20 | 1 | 180.00 | | |
| 98-24735 | Jimco Pumps- Parts to repair triplex pump, CCLT 4-1 | 1 | 723.98 | | |
| 98-24738 | Jimco Pumps- Parts to repair triplex pump, Thomasson 33-12 | 1 | 483.36 | | |
| 98-24741 | Jimco Pumps- Part to rebuild wilden pump, CCLT 3-7 | 1 | 254.40 | | |
| 23770 | Carnley Electric Inc- Tank gauge repair, CCLT 35-13, 4/2/2020 | 1 | 360.00 | | |
| WMR20-3671 | Whirlwind Methane Recovery Systems, LLC- VRU | 1 | 759.07 | | |
| 98-24759 | Jimco Pumps- Parts to repair triplex pump, Thomasson 33-12 | 1 | 1,602.72 | 12,272.91 | 110.09 |
| **Repairs & Maint/Sub-Surface Eq** | | | | | |
| 98-24732 | Jimco Pumps- Parts to repair jet pump after acid job, CCLT 35-13 | 1 | 1,515.80 | 1,515.80 | 13.59 |
| **Salt Water Disposal** | | | | | |
| 2020-03-010 | Wastewater Disposal Services, Inc.- 3/16-31/2020 | 1 | 432.00 | | |
| 80399 | S&S Construction, LLC | 1 | 540.00 | | |
| 80398 | S&S Construction, LLC | 1 | 360.00 | | |
| 80425 | S&S Construction, LLC | 1 | 360.00 | | |
| 45218 | American Remediation & | 1 | 360.00 | | |

From:  Sklar Exploration Co., L.L.C.
To:  Roosth 806, Ltd, a Texas Ltd Partnership

For Billing Dated 04/30/2020
Account: ROO802    Page    4

**LEASE: (1BRO04)  Southeast Brooklyn Oil Unit    (Continued)**
**Expenses:    (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| | Environmental Inc- 3/26/2020 | | | | |
| 80417 | S&S Construction, LLC | 1 | 630.00 | | |
| 80453 | S&S Construction, LLC- 3/30/2020 | 1 | 540.00 | | |
| 45242 | American Remediation & Environmental Inc- 4/8/2020 | 1 | 90.00 | | |
| 80465 | S&S Construction, LLC- CCLT 32-9 (r13) | 1 | 360.00 | 3,672.00 | 32.94 |
| ***Utilities*** | | | | | |
| 613710006 | Southern Pine Electric Cooperative- 2/27-3/30/2020 | 1 | 522.50 | | |
| 613710046 | Southern Pine Electric Cooperative- 2/27-3/30/2020 | 1 | 5,150.48 | | |
| 613710050 | Southern Pine Electric Cooperative- 2/27-3/30/2020 | 1 | 5,138.22 | | |
| 613710057 | Southern Pine Electric Cooperative- 2/27-3/30/2020 | 1 | 6,217.75 | | |
| 613710063 | Southern Pine Electric Cooperative- 2/27-3/30/2020 | 1 | 429.65 | | |
| 613710064 | Southern Pine Electric Cooperative- 2/27-3/30/2020 | 1 | 6,105.68 | | |
| 613710075 | Southern Pine Electric Cooperative- 2/27-3/30/2020 | 1 | 5,720.19 | | |
| 613710076 | Southern Pine Electric Cooperative- 2/27-3/30/2020 | 1 | 4,134.70 | | |
| 613710077 | Southern Pine Electric Cooperative- 2/27-3/30/2020 | 1 | 4,866.32 | | |
| 613710078 | Southern Pine Electric Cooperative- 2/27-3/30/2020 | 1 | 5,300.94 | | |
| 613710080 | Southern Pine Electric Cooperative- 2/27-3/30/2020 | 1 | 380.41 | 43,966.84 | 394.39 |
| ***Vacuum Truck*** | | | | | |
| 44874 | American Remediation & Environmental Inc- Pulled tank bottoms | 1 | 90.00 | | |
| 45218 | American Remediation & Environmental Inc- 3/26/2020 | 1 | 90.00 | | |
| 45218 | American Remediation & Environmental Inc- 3/26/2020 | 1 | 270.00 | | |
| 80418 | S&S Construction, LLC- Clean up oil at well head | 1 | 270.00 | | |
| 80454 | S&S Construction, LLC- Clean up oil at wellhead, 4/1/20 | 1 | 180.00 | 900.00 | 8.08 |
| ***Other Revenue Deductions*** | | | | | |
| 0220TRAN | 02-20 Transportation Fee on 7,049 mcf @ $.50/mcf | 1 | 3,524.50 | 3,524.50 | 31.61 |
| ***COPAS Overhead*** | | | | | |
| RBO38959 | Adm Overhead - Producing | 1 | 20,394.36 | 20,394.36 | 182.94 |
| | **Total Lease Operating Expense** | | | **135,673.33** | **1,217.01** |
| **Intangible Completion Costs** | | | | | |
| ***Engineering & Supervision Svcs*** | | | | | |
| 030420 | Kenny Copeland- Wellsite supervision, mileage | 309-W7-1 | 292.10 | 292.10 | 2.62 |
| 030420 | Kenny Copeland- Wellsite supervision, mileage | 309-W6-1 | 626.18 | 626.18 | 5.62 |
| ***Transportation & Trucking*** | | | | | |
| 499 | Slickline South, LLC- Crane truck | 309-W7-1 | 660.00 | 660.00 | 5.92 |
| 500 | Slickline South, LLC- Crane truck | 309-W6-1 | 660.00 | 660.00 | 5.92 |
| 501 | Slickline South, LLC- Crane truck | 309-W7-1 | 880.00 | 880.00 | 7.89 |
| 503 | Slickline South, LLC- Crane truck | 309-W6-1 | 660.00 | 660.00 | 5.92 |

5

From:  Sklar Exploration Co., L.L.C.                                      For Billing Dated 04/30/2020
To:    Roosth 806, Ltd, a Texas Ltd Partnership                          Account: ROO802    Page    5

**LEASE: (1BRO04)  Southeast Brooklyn Oil Unit    (Continued)**
**Expenses:    (Continued)**

| Reference | Description | Deck/AFE | Invoice Amt | Total | Your Share |
|---|---|---|---|---|---|
| *Logging & Wireline* | | | | | |
| 497 | Slickline South, LLC | 309-W7-1 | 5,266.40 | 5,266.40 | 47.25 |
| 498 | Slickline South, LLC | 309-W6-1 | 4,082.40 | | |
| 502 | Slickline South, LLC | 309-W6-1 | 2,220.00 | 6,302.40 | 56.53 |
| *Repairs & Maint-Surface Equip* | | | | | |
| 11620 | H&H Construction, LLC- Installing new valves | 309-W7-1 | 536.00 | 536.00 | 4.81 |
| *Vacuum Truck* | | | | | |
| 57065 | Kelley Brothers Contractors, Inc.- Transfer s/w & oil | 309-W7-1 | 427.50 | 427.50 | 3.83 |
| 80402 | S&S Construction, LLC- Pull water & oil from test tanks | 309-W6-1 | 360.00 | 360.00 | 3.23 |
| | **Total Intangible Completion Costs** | | | **16,670.58** | **149.54** |
| | **Total Expenses for LEASE** | | | **152,343.91** | **1,366.55** |

| Billing Summary by Deck/AFE | Deck 1 | 1 | 0.00897017 | 135,673.33 | 1,217.01 |
|---|---|---|---|---|---|
| | Workover | 309-W6-1 | 0.00897017 | 8,608.58 | 77.22 |
| | Workover | 309-W7-1 | 0.00897017 | 8,062.00 | 72.32 |

| LEASE Summary: | Wrk Int | Expenses | You Owe |
|---|---|---|---|
| 1BRO04 | 0.00897017 | 1,366.55 | 1,366.55 |

5

**Sklar Exploration Co., L.L.**
401 Edwards Street, Suite 1601
Shreveport, LA 71101
(318)227-8668

# *Settlement Statement*

Regions Bank, Agent and AIF
Roosth 806 LTD
NRRE Ops Group
PO Box 11566
Birmingham, AL 35202

Account: ROO802

Date: 06/30/2020

### Account: ROO802 - Statement of Account:

| Date | Reference | Description | Charges | Credits |
|------|-----------|-------------|---------|---------|
| 05/31/2020 | | Balance Forward | 2,346.50 | |
| 06/01/2020 | 10771 | Payment-Thank You! Ck# 44891 | | (1,366.55) |
| | | New Balance Forward | 979.95 | |

### Summary by LEASE:

| Property# | Description | Expenses | You Owe |
|-----------|-------------|----------|---------|
| | Unpaid Previous Balance | | 979.95 |
| 1BRO04 | Southeast Brooklyn Oil Unit | 870.71 | 870.71 |
| | Totals: | 870.71 | 1,850.66 |

## PLEASE PAY THIS AMOUNT ----------------------^

0 ⋅ ※

870 ⋅ 71 +
979 ⋅ 95 +

1 ⋅ 850 ⋅ 66 ※ +

Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.

3

 

201 Milan Parkway, 2nd Floor
Birmingham, AL 35211

SKLAR EXPLORATION CO. L.L.C.
401 EDWARDS STREET SUITE 1601
SHREVEPORT, LA, 71101

***NON NEGOTIABLE***



**Disb Desc:** Cash Disbursement
**DSR 1:**

**DSR 2:**

ACCOUNT OWNER:    Regions NRRE DDA

Regions Bank
201 Milan Parkway, 2nd Floor
Birmingham, AL, 35211

MEMO:

- - - - - - - - - PLEASE FOLD AND DETACH AT PERFORATION BEFORE PRESENTING FOR PAYMENT - - - - - - - - -

THE FACE OF THIS DOCUMENT HAS A GREEN BACKGROUND ON WHITE PAPER

**REGIONS**                                                      No.

201 Milan Parkway, 2nd Floor                         DATE   07/16/20
Birmingham, AL 35211                                  NOT VALID AFTER SIX MONTHS

PAY   One Thousand Eight Hundred And Fifty And 66/100 US Dollars***

| CHECK AMOUNT |
| --- |
| *$1,850.66* |

Payable in U.S. Funds

PAY TO    SKLAR EXPLORATION CO. L.L.C.
401 EDWARDS STREET SUITE 1601
SHREVEPORT, LA, 71101

MEMO:    23

AUTHORIZED SIGNATURE

THE BACK OF THIS CHECK CONTAINS A HEAT REACTIVE INK SPOT. HOLD OR RUB WITH THUMB & COLOR SHOULD FADE THEN REAPPEAR. VOID IF WATERMARK DOES NOT APPEAR ON BACK OF CHECK.

TYLER – JOINT INTEREST BILLING

## REGIONS

| | |
|---|---|
| VENDOR# | 6639 Sklar Exploration Co. L.L.C. |
| OWNER # | ROO802 |
| ACCOUNT# | ROOSTH 806 LTD |
| INVOICE # | 06302020 |
| INVOICE DATE | 06/30/2020 |
| PRODUCTION DATE | 05,06/2020 |
| INVOICE AMOUNT | $1,850.66 |

| | | |
|---|---|---|
| ASSET # | 59442 Southeast Brooklyn Oil Unit | OG-26 |
| AMOUNT : | $1,850.66 | |

**Sklar Exploration Co., L.L**
401 Edwards Street, Suite 1601
Shreveport, LA 71101
(318)227-8668

# Settlement Statement

Regions Bank, Agent and AIF
Roosth 806 LTD
NRRE Ops Group
PO Box 11566
Birmingham, AL 35202

Account: ROO802

Date: 07/31/2020

RECEIVED/AIRREADVIER TX

SEP 01 2020

**Account: ROO802 - Statement of Account:**

| Date | Reference | Description | Charges | Credits |
|------|-----------|-------------|---------|---------|
| 06/30/2020 | | Balance Forward | 1,850.66 | |
| 07/20/2020 | 10865 | Payment-Thank You! Ck# 12340333 | | (1,850.66) |
| | | New Balance Forward | 0.00 | |

**Summary by LEASE:**

| Property# | Description | Expenses | You Owe |
|-----------|-------------|----------|---------|
| 1BRO04 | Southeast Brooklyn Oil Unit | 1,388.00 | 1,388.00 |
| | Totals: | 1,388.00 | 1,388.00 |

**PLEASE PAY THIS AMOUNT ----------------------^**

Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.

4

## TYLER – JOINT INTEREST BILLING

**REGIONS**

| | |
|---|---|
| VENDOR# | 6639 Sklar Exploration Co. L.L.C. |
| OWNER # | ROO802 |
| ACCOUNT# | ROOSTH 806 LTD — *Acct# 10D1016092* |
| INVOICE # | *07312020* |
| INVOICE DATE | *07/31/2020* |
| PRODUCTION DATE | *07/2020* |
| INVOICE AMOUNT | *$ 1,388.00* |

| | | |
|---|---|---|
| ASSET # | 59442 Southeast Brooklyn Oil Unit | OG-26 |
| AMOUNT : | *$ 1,388.00* | |

**Sklar Exploration Co., L.L.C.**
401 Edwards Street, Suite 1601
Shreveport, LA 71101
(318)227-8668

# *Settlement Statement*

Regions Bank, Agent and AIF
Roosth 806 LTD
NRRE Ops Group
PO Box 11566
Birmingham, AL 35202

Account:  ROO802

Date:  08/31/2020

**Account: ROO802 - Statement of Account:**

| Date | Reference | Description | Charges | Credits |
|------|-----------|-------------|---------|---------|
| 07/31/2020 | | Balance Forward | 1,388.00 | |
| 08/31/2020 | 10956 | Payment-Thank You! Ck# 12348709 | | (1,388.00) |
| | | New Balance Forward | 0.00 | |

**Summary by LEASE:**

| Property# | Description | Expenses | You Owe |
|-----------|-------------|----------|---------|
| 1BRO04 | Southeast Brooklyn Oil Unit | 1,781.67 | 1,781.67 |
| | **Totals:** | **1,781.67** | **1,781.67** |

**PLEASE PAY THIS AMOUNT ----------------------^**

RECEIVED/NRRE/TYLER, TX

SEP 1 0 2020

**Please visit www.sklarexploration.com for Direct Deposit and Change of Address forms.**

**Joey Hand**

| From: | David Decker <ddecker@roosth.net> |
|---|---|
| Sent: | Monday, August 17, 2020 9:16 AM |
| To: | jmjones@sklarexploration.com |
| Cc: | ED DUNN; sec@suddenlinkmail.com; HUBERT KIDD; Jackson Woodson; Steve Roosth; Joey Hand |
| Subject: | [EXTERNAL] FW: |
| Attachments: | 4cd34300-8c40-4a03-9510-6505261e9acf (1).pdf |

Marshall, here is the Settlement Agreement between Berryhill Farms and Linda Findley Miller, et al, as it relates to your CCL&T 3-7/SE Brooklyn Field Unit. This is what I thought was going to you earlier. Please take a look at the Agreement and let Ed and I know what kind of paper work you will need to get the 1/6th interest into the Avery people and get us our reimbursement of the overage of the one sixth. As you know Roosth 806, LTD oil and gas activities are handled by Regions Bank, Agent and I believe any agreements and reimbursements should be directed to them, with the remainder proportioned to the individual Kidd Group members. Once we have a chance to review the reimbursement and the Avery group has a chance to review the suspended revenue associated to same we can all get an acceptable agreement executed and get this all back in the correct owners.

I am really retired, but in and out of the office some and can be reached on my cell at 903 312-0656.

Thanks for your time in getting this corrected.
dld

**From:** Michael Godwin [mailto:mgodwin@ottsmoorelaw.com]
**Sent:** Friday, August 14, 2020 10:36 AM
**To:** David Decker
**Subject:** Re:

Here is the information you requested

--
Michael D. Godwin
Attorney at Law
Otts Moore Law Firm, LLC
P.O. Box 467
(251) 867-7724

Notice: This e-mail is covered under the Electronic Communications Privacy Act, 18 USC 2510-2521, and is legally privileged. The information contained in this e-mail is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at the above number and destroy the original message.

*Be aware! Online banking fraud is on the rise. If you receive an email containing WIRE TRANSFER INSTRUCTIONS to our firm, please call our closing secretary immediately at 251-867-7724 to verify the information prior to sending funds.**

DOCUMENT 403

ELECTRONICALLY FILED
2/20/2020 2:44 PM
21-CV-2016-900077.00
CIRCUIT COURT OF
CONECUH COUNTY, ALABAMA
DAVID JACKSON, CLERK

# Settlement Deed

STATE OF ALABAMA
COUNTY OF MOBILE

Witness this Settlement Deed:

WHEREAS the parties to this Settlement Deed have been involved in litigation regarding the ownership of the interests conveyed here and have resolved their disputes through mediation and have entered a Mediation Settlement Agreement; and

WHEREAS, the parties to this Settlement Deed execute and deliver this Settlement Deed in order to comply with certain provisions in the Mediation Settlement Agreement, which shall survive the execution and delivery of this Settlement Deed; and

WHEREAS, none of the properties conveyed in this Settlement Deed constitute the homestead of any party to this deed;

NOW THEREFOR KNOW ALL BY THESE PRESENTS, THAT the parties to this Settlement Deed for and in consideration of the premises and of Ten and No/100ths Dollars ($10.00) and other good and valuable consideration hereby acknowledged that each has paid to the other, do hereby adopt and incorporate the recitals set forth above and do further:

1.      Frank Thiemonge, as Personal Representative of the Estate of Linda Findley Miller hereby grants, bargains, sells, and conveys unto Berry Hill Farms, Inc., its successors and assigns: (1) an undivided five-sixths (5/6ths) of all minerals in, on, and under all lands in the State of Alabama outside of Mobile County, Alabama, owned by George Findley, deceased, at the time of his death on August 17, 2003, and (2) all the surface estate in and to all lands in the State of Alabama outside of Mobile County, Alabama, owned by George M. Findley, deceased, at the time of his death, TO HAVE AND TO HOLD, together with, all and singular, the rights, members, privileges, tenements, hereditaments, appurtenances, and improvements thereunto belonging or any wise appertaining, unto Berry Hill Farms, Inc., its successors and assigns. forever.

2.      John Gamble, as Personal Representative of the Estate of Barbara Ruth Findley (Bobbie) Long, hereby remises, releases, and quitclaims unto Berry Hill Farms, Inc., its successors and assigns, all right, title, and interest that Barbara Ruth Findley (Bobbie) Long held at the time of her death in: (1) an undivided five-sixths (5/6ths) of all minerals in, on, and under all lands in the State of Alabama outside of Mobile County, Alabama, owned by George Findley, deceased, at the time of his death on August 17, 2003, and (2) all the surface estate in and to all lands in the State of Alabama outside of Mobile County, Alabama, owned by George M. Findley, deceased, at the time of his death, TO HAVE AND TO HOLD, together with, all and singular, the rights, members, privileges, tenements, hereditaments, appurtenances, and improvements thereunto belonging or any wise appertaining, unto Berry Hill Farms, Inc., its successors and assigns, forever.

3.      Frank Thiemonge, as Personal Representative of the Estate of Linda Findley Miller,

hereby remise, release, and quitclaim unto Berry Hill Farms, Inc., its successors and assigns, all right, title, and interest that Linda Findley Miller held at the time of her death in: (1) an undivided five-sixths (5/6[ths]) of all minerals in, on, and under all lands in the State of Alabama outside of Mobile County, Alabama, owned by George Findley, deceased, at the time of his death on August 17, 2003, and (2) all the surface estate in and to all lands in the State of Alabama outside of Mobile County, Alabama, owned by George M. Findley, deceased, at the time of his death, TO HAVE AND TO HOLD, together with, all and singular, the rights, members, privileges, tenements, hereditaments, appurtenances, and improvements thereunto belonging or any wise appertaining, unto Berry Hill Farms, Inc., its successors and assigns, forever.

4.    Richard Watters as successor Executor of the Estate of George M. Findley as appointed by the Circuit Court of Escambia County, Alabama in Civil Action No. CV-30-2008-900026.00, hereby remises, releases, and quitclaims unto Berry Hill Farms, Inc., its successors and assigns, all right, title, and interest that George M. Findley held at the time of his death in: (1) an undivided five-sixths (5/6[ths]) of all minerals in, on, and under all lands in the State of Alabama outside of Mobile County, Alabama, owned by George Findley, deceased, at the time of his death on August 17, 2003, and (2) all the surface estate in and to all lands in the State of Alabama outside of Mobile County, Alabama, owned by George M. Findley, deceased, at the time of his death, TO HAVE AND TO HOLD, together with, all and singular, the rights, members, privileges, tenements, hereditaments, appurtenances, and improvements thereunto belonging or any wise appertaining, unto Berry Hill Farms, Inc., its successors and assigns, forever.

5.    Berry Hills Farms, Inc., hereby grants, bargains, sells, and conveys unto Frank Thiemonge, as Personal Representative of the Estate of Linda Findley Miller, deceased, his successors and assigns, an undivided one-sixth (1/6[th]) of all minerals in, on, and under all lands in the State of Alabama outside of Mobile County, Alabama, owned by George Findley, deceased, at the time of his death on August 17, 2003, TO HAVE AND TO HOLD, together with, all and singular, the rights, members, privileges, tenements, hereditaments, appurtenances, and improvements thereunto belonging or any wise appertaining, unto Frank Thiemonge, as Personal Representative of the Estate of Linda Findley Miller, deceased, his successors and assigns, forever.

6.    Larry J. Findley hereby remises, releases, and quitclaims unto Frank Thiemonge, as Personal Representative of the Estate of Linda Findley Miller, deceased, his successors and assigns, an undivided one-sixth (1/6[th]) of all minerals in, on, and under all lands in the State of Alabama outside of Mobile County, Alabama, owned by George Findley, deceased, at the time of his death on August 17, 2003, TO HAVE AND TO HOLD, together with, all and singular, the rights, members, privileges, tenements, hereditaments, appurtenances, and improvements thereunto belonging or any wise appertaining, unto Frank Thiemonge, as Personal Representative of the Estate of Linda Findley Miller, deceased, his successors and assigns, forever.

7.    Berry Hills Farms, Inc., and Larry J. Findley hereby remise, release, and quitclaim unto Frank Thiemonge, as Personal Representative of the Estate of Linda Findley Miller, deceased, his successors and assigns, all their right, title, and interest in and to all real property situated in Mobile

2

County, Alabama that George M. Findley, deceased, at the time of his death on August 17, 2003, TO HAVE AND TO HOLD, together with, all and singular, the rights, members, privileges, tenements, hereditaments, appurtenances, and improvements thereunto belonging or any wise appertaining, unto Frank Thiemonge, as Personal Representative of the Estate of Linda Findley Miller, deceased, his successors and assigns, forever.

8.  The five-sixths (5/6ths) mineral interest conveyed herein to Berry Hill Farms, Inc., by Frankmonge, as Personal Representative of the Estate of Linda Findley Miller, by John Gamble, as Personal Representative of the Estate of Barbara Ruth Findley (Bobbie) Long, by Richard Watters as successor Executor of the Estate of George M. Findley as appointed by the Circuit Court of Escambia County, Alabama in the Civil Action No. CV-30-2008-900026.00, is subject to an existing oil, gas, and mineral lease granted by Berry Hill Farms, Inc., to Trant Kidd by lease agreement ("Trant Kidd Lease") and lease extension agreement recorded in Book 2011, page 1790, and in Book 2015, page 2744, in the Office of the Judge of Probate of Conecuh County, Alabama.

9.  The one-sixth (1/6th) mineral interest conveyed herein to Frank Thiemonge, as Personal Representative of the Estate of Linda Findley Miller, by Berry Hill Farms, Inc., and by Larry J. Findley is subject to an existing oil, gas, and mineral lease from Linda Findley Miller to Avery Producing, LLC, by lease agreement ("Avery Production Lease") recorded in Book 2014, page 1492, in the Office of the Judge of Probate of Conecuh County, Alabama.

10.  The parties hereby agree that the conveyances set forth above cause the ownership of the minerals in, on, and under the lands now covered by the Trant Kidd Lease and the Avery Production Lease owned by George M. Findley at the time of his death to be owned now as follows:

Frank Thiemonge, as Personal
Representative of the Estate of
Linda Findley Miller . . . . . . . . . . . .   One-sixth (1/6th)

Berry Hill Farms, Inc.  . . . . . . . . . .   Five-sixths (5/6ths)

11.  The parties hereby agree that unpaid royalties on oil and gas production from the lands now covered by the Trant Kidd Lease and the Avery Production Lease owned by George Findley at the time of his death are to be disbursed according the Mediation Settlement Agreement.

12.  The conveyances set forth in this Settlement Deed shall be effective as to the parties listed below who execute and deliver this Settlement Deed, whether or not all parties named in this Settlement Deed execute and deliver it.

This Settlement Deed may be signed in multiple originals and/or using counterpart signature pages. All such multiple originals shall constitute but one and the same Settlement Deed.

3

DOCUMENT 403

IN WITNESS WHEREOF, the parties listed below have executed or have caused their names to be executed to this Settlement Deed on the dates shown in the Certificates of Acknowledgment set forth below.

**BERRY HILL FARMS, INC.**

_____

**FRANK THIEMONGE**, as Personal Representative of the Estate of Linda Findley Miller

By: _____

As Its: _____

_____

**JOHN GAMBLE**, as Personal Representative of the Estate of Barbara Ruth Findley (Bobbie) Long

**LARRY J. FINDLEY**

_____

**RICHARD WATTERS**, as Successor Executor of the Estate of George M. Findley as Appointed by the Circuit Court of Escambia County in Civil Action No. Cv-30-2008-900026.00

4

IN WITNESS WHEREOF, the parties listed below have executed or have caused their names to be executed to this Settlement Deed on the dates shown in the Certificates of Acknowledgment set forth below.

**BERRY HILL FARMS, INC.**

---

**FRANK THIEMONGE,** as Personal Representative of the Estate of Linda Findley Miller

By: _____

As Its: _____

---

**JOHN GAMBLE,** as Personal Representative of the Estate of Barbara Ruth Findley (Bobbie) Long

---

**LARRY J. FINDLEY**

---

**RICHARD WATTERS,** as Successor Executor of the Estate of George M. Findley as Appointed by the Circuit Court of Escambia County in Civil Action No. Cv-30-2008-900026.00

4

IN WITNESS WHEREOF, the parties listed below have executed or have caused their names to be executed to this Settlement Deed on the dates shown in the Certificates of Acknowledgment set forth below.

**BERRY HILL FARMS, INC.**

**FRANK THIEMONGE,** as Personal Representative of the Estate of Linda Findley Miller

By:
As Its:

**JOHN GAMBLE,** as Personal Representative of the Estate of Barbara Ruth Findley (Bobbie) Long

**LARRY J. FINDLEY**

**RICHARD WATTERS,** as Successor Executor of the Estate of George M. Findley as Appointed by the Circuit Court of Escambia County in Civil Action No. Cv-30-2008-900026.00

4

DOCUMENT 403

STATE OF ALABAMA:
COUNTY OF MOBILE:

I, the undersigned Notary Public, in and for said County and State, hereby certify that **Frank Thiemonge, as Personal Representative of the Estate of Linda Findley Miller**, whose name is signed to the foregoing Settlement Deed, and who is known to me, acknowledged before me this day that, being informed of the contents of said Settlement Deed, he as such Personal Representative, and with full authority, executed the same voluntarily on the day the same bears date.

Given under my hand and seal this the 17th day of March, 2020.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]
Commission Expires:_____

AMANDA CROSS
My Commission Expires
January 17, 2021

STATE OF ALABAMA:
COUNTY OF MOBILE:

I, the undersigned Notary Public, in and for said County and State, hereby certify that **John Gamble, as Personal Representative of the Estate of Barbara Ruth Findley (Bobbie) Long**, whose name is signed to the foregoing Settlement Deed, and who is known to me, acknowledged before me this day that, being informed of the contents of said Settlement Deed, he as such Personal Representative, and with full authority, executed the same voluntarily on the day the same bears date.

Given under my hand and seal this the ____ day of March, 2020.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]
Commission Expires:_____

5

STATE OF ALABAMA:
COUNTY OF MOBILE:

I, the undersigned Notary Public, in and for said County and State, hereby certify that **Frank Thiemonge, as Personal Representative of the Estate of Linda Findley Miller**, whose name is signed to the foregoing Settlement Deed, and who is known to me, acknowledged before me this day that, being informed of the contents of said Settlement Deed, he as such Personal Representative, and with full authority, executed the same voluntarily on the day the same bears date.

Given under my hand and seal this the _____ day of March, 2020.


_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]
Commission Expires:_____


STATE OF ALABAMA:
COUNTY OF JEFFERSON

I, the undersigned Notary Public, in and for said County and State, hereby certify that **John Gamble, as Personal Representative of the Estate of Barbara Ruth Findley (Bobbie) Long**, whose name is signed to the foregoing Settlement Deed, and who is known to me, acknowledged before me this day that, being informed of the contents of said Settlement Deed, he as such Personal Representative, and with full authority, executed the same voluntarily on the day the same bears date.

Given under my hand and seal this the 27th day of March, 2020.


_Kathleen M Graces_
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]
Commission Expires: February 5, 2024

5

DOCUMENT 403

STATE OF ALABAMA:
COUNTY OF MOBILE:

I, the undersigned Notary Public, in and for said County and State, hereby certify that **Richard Watters as successor Executor of the Estate of George M. Findley as appointed by the Circuit Court of Escambia County in Civil Action No. CV-30-2008-900026.00,** whose name is signed to the foregoing Settlement Deed, and who is known to me, acknowledged before me this day that, being informed of the contents of said Settlement Deed, he as such Personal Representative, and with full authority, executed the same voluntarily on the day the same bears date.

Given under my hand and seal this the 17ᵗʰ day of March, 2020.

_____ NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]
Commission Expires:_____

AMANDA CROSS
My Commission Expires
January 17, 2021

STATE OF ALABAMA:
COUNTY OF _____:

I, the undersigned authority, a Notary Public, in and for said County and State, hereby certify that _____, whose name as _____ of **Berry Hill Farms, Inc.,** is signed to the foregoing Settlement Deed, and who is known to me, acknowledged before me this day that, being informed of the contents of said instrument and with full authority, he executed the same voluntarily for and as the act of Berry Hill Farms, Inc.

Given under my hand and seal this _____ day of February, 2020.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]
Commission Expires:_____

6

STATE OF ALABAMA:
COUNTY OF MOBILE:

I, the undersigned Notary Public, in and for said County and State, hereby certify that **Richard Watters as successor Executor of the Estate of George M. Findley as appointed by the Circuit Court of Escambia County in Civil Action No. CV-30-2008-900026.00,** whose name is signed to the foregoing Settlement Deed, and who is known to me, acknowledged before me this day that, being informed of the contents of said Settlement Deed, he as such Personal Representative, and with full authority, executed the same voluntarily on the day the same bears date.

Given under my hand and seal this the _____ day of March, 2020.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]
Commission Expires:_____

STATE OF ALABAMA:
COUNTY OF _Conecuh_ :

I, the undersigned authority, a Notary Public, in and for said County and State, hereby certify that _Larry Findley_, whose name as _President_ of **Berry Hill Farms, Inc.,** is signed to the foregoing Settlement Deed, and who is known to me, acknowledged before me this day that, being informed of the contents of said instrument and with full authority, he executed the same voluntarily for and as the act of Berry Hill Farms, Inc.

Given under my hand and seal this _18th_ day of ~~February~~ March, 2020.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]
Commission Expires: _1-24-2024_

STATE OF ALABAMA:
COUNTY OF _____:

I, the undersigned Notary Public, in and for said County and State, hereby certify that **Larry J. Findley**, whose name is signed to the foregoing Settlement Deed, and who is known to me, acknowledged before me this day that, being informed of the contents of said Settlement Deed, he executed the same on the day the same bears date.

Given under my hand and seal this the ___ ___ day of March, 2020.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]
Commission Expires:_____

---

Caveat – No Title Search

The scrivener prepared this deed without the benefit of any title report, title insurance policy, or any other search of the records appearing in the Office of the Judges of Probate of the Counties where George M. Findley owned property at the time of his death and without reviewing any of the pleadings in the cases mentioned above, and relied solely upon the information appearing in the Mediation Settlement Agreement mentioned in the Settlement Deed.

---

For purposes of the Mineral Documentary Tax, ALA. CODE §§ 40-20-30—40-20-37, Frank Thiemonge, as Personal Representative of the Estate of Linda Findley Miller, and Berry Hill Farms, Inc., declare that, to the best of its knowledge, Frank Thiemonge, as Personal Representative of the Estate of Linda Findley Miller, is conveying to Berry Hill Farms, Inc., not more than _____ mineral acres, all of which are producing and that Berry Hill Farms, Inc., is conveying to Frank Thiemonge, as Personal Representative of the Estate of Linda Findley Miller, not more than ___ mineral acres, all of which are producing

_____
**FRANK THIEMONGE**, as Personal Representative
of the Estate of Linda Findley Miller

**BERRY HILL FARMS, INC.**

By: _____
   As Its: _____

7

STATE OF ALABAMA:
COUNTY OF _____:

I, the undersigned Notary Public, in and for said County and State, hereby certify that **Larry J. Findley**, whose name is signed to the foregoing Settlement Deed, and who is known to me, acknowledged before me this day that, being informed of the contents of said Settlement Deed, he executed the same on the day the same bears date.

Given under my hand and seal this the ____ day of March, 2020.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]
Commission Expires:_____

---

Caveat – No Title Search

The scrivener prepared this deed without the benefit of any title report, title insurance policy, or any other search of the records appearing in the Office of the Judges of Probate of the Counties where George M. Findley owned property at the time of his death and without reviewing any of the pleadings in the cases mentioned above, and relied solely upon the information appearing in the Mediation Settlement Agreement mentioned in the Settlement Deed.

---

For purposes of the Mineral Documentary Tax, ALA. CODE §§ 40-20-30—40-20-37, Frank Thiemonge, as Personal Representative of the Estate of Linda Findley Miller, and Berry Hill Farms, Inc., declare that, to the best of its knowledge, Frank Thiemonge, as Personal Representative of the Estate of Linda Findley Miller, is conveying to Berry Hill Farms, Inc., not more than ____ mineral acres, all of which are producing and that Berry Hill Farms, Inc., is conveying to Frank Thiemonge, as Personal Representative of the Estate of Linda Findley Miller, not more than ___ mineral acres, all of which are producing

_____
**FRANK THIEMONGE**, as Personal Representative
of the Estate of Linda Findley Miller

**BERRY HILL FARMS, INC.**

By: _____
    As Its: _____

7

STATE OF ALABAMA:
COUNTY OF _Conecuh_:

I, the undersigned Notary Public, in and for said County and State, hereby certify that **Larry J. Findley**, whose name is signed to the foregoing Settlement Deed, and who is known to me, acknowledged before me this day that, being informed of the contents of said Settlement Deed, he executed the same on the day the same bears date.

Given under my hand and seal this the 18th day of March, 2020.

_____
NOTARY PUBLIC

[AFFIX NOTARIAL SEAL]
Commission Expires: 1-24-2024

---

Caveat – No Title Search

The scrivener prepared this deed without the benefit of any title report, title insurance policy, or any other search of the records appearing in the Office of the Judges of Probate of the Counties where George M. Findley owned property at the time of his death and without reviewing any of the pleadings in the cases mentioned above, and relied solely upon the information appearing in the Mediation Settlement Agreement mentioned in the Settlement Deed.

---

For purposes of the Mineral Documentary Tax, ALA. CODE §§ 40-20-30—40-20-37, Frank Thiemonge, as Personal Representative of the Estate of Linda Findley Miller, and Berry Hill Farms, Inc., declare that, to the best of its knowledge, Frank Thiemonge, as Personal Representative of the Estate of Linda Findley Miller, is conveying to Berry Hill Farms, Inc., not more than ____ mineral acres, all of which are producing and that Berry Hill Farms, Inc., is conveying to Frank Thiemonge, as Personal Representative of the Estate of Linda Findley Miller, not more than ____ mineral acres, all of which are producing

_____
**FRANK THIEMONGE**, as Personal Representative
    of the Estate of Linda Findley Miller

**BERRY HILL FARMS, INC.**

By: _____
    As Its: _____

7

DOCUMENT 403

INSTRUMENT PREPARED BY:
Hawkins Law Firm, L.L.C.
Edward G. Hawkins
6370 Cottage Hill Road
Mobile, Alabama 36609
251-690-7799
edit:hawkilegal.com

**Frank Thiemonge's Address**

Frank Thiemonge
Personal Representative of the Estate of Linda
Findley Miller

*158 S. Jackson St*
*Mobile Al 36602*

**Berry Hill Farm's Address**

Berry Hill Farms, L.L.C.
HCR34 Box 114
Evergreen, Alabama 36401

**John Gamble's Address**

John Gamble
Personal Representative of the Estate of
Barbara Ruth Findley (Bobbie) Long

_____
_____
_____

**Larry J. Findley's Address**

Berry Hill Farms, L.L.C.
HCR34 Box 114
Evergreen, Alabama 36401

**Richard Watters' Address**

Richard Watters
Successor Executor of the Estate of George
M. Findley as appointed by the Circuit Court
of Escambia County, Alabama in Civil Action
No. CV-30-2008-900026.00

*P.O. Box 87*
*Mobile Al 36601*

**After Recording, Please Return To:**

Henry L. Cassady, Jr.
Cassady & Cassady, P.C.
23710 US Highway 98
Suite D
Fairhope, Alabama 36532

☐

Settlement Deed, Fletcher v. Berry Hill Farms, 200220F.wpd

8

INSTRUMENT PREPARED BY:
Hawkins Law Firm, L.L.C.
Edward G. Hawkins
6370 Cottage Hill Road
Mobile, Alabama 36609
251-690-7799
ed@hawklegal.com

### Frank Thiemonge's Address
Frank Thiemonge
Personal Representative of the Estate of Linda
Findley Miller

### Berry Hill Farm's Address
Berry Hill Farms, L.L.C.
HCR34 Box 114
Evergreen, Alabama 36401

### John Gamble's Address
John Gamble
Personal Representative of the Estate of
Barbara Ruth Findley (Bobbie) Long
3081   Whispering  Pines  Cir.
Hoover,  AL  35226

### Larry J. Findley's Address
Berry Hill Farms, L.L.C.
HCR34 Box 114
Evergreen, Alabama 36401

### Richard Watters' Address
Richard Watters
Successor Executor of the Estate of George
M. Findley as appointed by the Circuit Court
of Escambia County, Alabama in Civil Action
No. CV-30-2008-900026.00

### After Recording, Please Return To:
Henry L. Cassady, Jr.
Cassady & Cassady, P.C.
23710 US Highway 98
Suite D
Fairhope, Alabama 36532

Settlement Deed, Fletcher v. Berry Hill Farms, 200220F.wpd

8

**David Decker**

| | |
|---|---|
| **From:** | David Decker <ddecker@roosth.net> |
| **Sent:** | Tuesday, June 02, 2020 10:58 AM |
| **To:** | jmjones@sklarexploration.com |
| **Cc:** | Steve Roosth; HUBERT KIDD (kiddoffice@yahoo.com); 'sec@suddenlinkmail.com'; Jackson Woodson (jwblackgold@yahoo.com) |
| **Subject:** | Berry Hill Farms |
| **Attachments:** | Berry Hill.pdf |

Marshall, good morning.  I am attaching the Order on Joint Motion for Distribution of Funds from the Circuit Court of Escambia County, Alabama covering the Leasehold interest in Berry Hill Farms Lease that was participated in captioned well.  As you will remember Roosth, et al participated a portion of this lease in the CC&L 3-7 with the understanding we would pay on the basis of a full ownership in the lease, but receive only 5/6 of the revenue from production, due to the pending Berry Hill Farms, Inc. Suit.  At the settlement  of the suit Sklar agreed to give an accounting and reimburse Roosth, et al for the difference in  monies paid and the actual Working Interest we had in the well.  By the attached Order and settlement we feel Sklar can make the accounting corrections.

I show we are being billed (Roosth 806, Ltd)  at a .0635 WI and at settlement of the Suit our actual WI is .0520833, or a difference of .0104167 that should be reimbursed to Roosth.  The other parties in this group would be entitled to their reimbursement based on their interest.

Also, there will need to be a correction to the expenses related to the SE Brooklyn Field, in which this well is now a part.

Hope you are doing well.  Give me a call if we need to discuss this matter.

*DAVID L. DECKER*
*LAND MANAGER*
*ROOSTH PRODUCTION COMPANY*
*903.593.8333 office*
*903.595.2190 fax*

1

## INDEMNITY AGREEMENT

This Indemnity Agreement ("Indemnity Agreement") is dated as of the 4th day of February, 2017, by and between Sklar Exploration Company, L.L.C. ("Sklar") and Roosth 806, Ltd., Kidd Production, Ltd., Steven E. Calhoun, and Kwazar Resources, LLC (for the purposes of this Agreement only, collectively referred to as the "Kidd Group").

Reference is made to that certain Operating Agreement dated June 17, 2016, Sklar Exploration Company, L.L.C., Operator, Conecuh County, Alabama (the "JOA"). The Kidd Group are non-operating interest owners under the JOA. Pursuant to the JOA, Sklar has completed the CCL&T 3-7 Well ("Well") as a producing well.

Sklar has determined there is an issue concerning the validity of an oil and gas lease executed by Berryhill Farms, Inc. to Trant L. Kidd, dated April 18, 2011, and recorded in Book 2011, page 1790, of the records maintained by the Office of the Judge of Probate of Conecuh County, Alabama (the "Lease"). Each of the Kidd Group owns a portion of the leasehold interest of the Lease. The Lease and/or the property covered by the Lease was at issue in the lawsuit styled as "Agnes Markie Reneke v. Larry J. Findley," Civil Action No. CV-2008-900026, Circuit Court of Escambia County, Alabama (the "Escambia Lawsuit"). Prior to the time the Well was drilled, the court in the Escambia Lawsuit had entered an order declaring the lessee of the Lease, Trant L. Kidd, was an innocent purchaser for value and that the Lease was valid. In late 2016, Findley filed a motion to declare that the court lacked jurisdiction to enter any orders in the lawsuit. As of the date of this Indemnity Agreement no ruling has been made on that motion.

A lawsuit has been filed in Conecuh County, Alabama styled as "Linda Findley Miller v. Berryhill Farms, Inc.," Civil Action No. CV-2016-900620, Circuit Court of Conecuh County (the "Conecuh Lawsuit"). In the Conecuh Lawsuit, the plaintiff claims (without citing any

1

facts) to own a 1/5 interest in the property covered by the Lease, although the Complaint makes no mention of the Lease and does not add the owners of the Lease as parties.

The Kidd Group strongly believe that the Lease will ultimately be validated as to at least 5/6 interest covered by it. The Kidd Group has requested Sklar to distribute to each of the Kidd Group its working interest share of revenues attributable to 5/6 interest in the Lease.

Now therefore, in consideration of the mutual promises and benefits derived to each of the undersigned parties to this Indemnity Agreement, Sklar and the Kidd Group do hereby agree to the following terms:

1.  Each of the Kidd Group shall execute a Division Order authorizing Sklar to pay each member's share of the 5/6th interest share of the working interest revenues attributable to the Lease, retaining in suspense 1/6 interest. The Division Orders will reference and be made subject to this Indemnity Agreement.

2.  On the next regularly scheduled revenue distribution check-write for the Well after the complete execution of this Indemnity Agreement, Sklar shall distribute to each member of the Kidd Group its proportionate share of 5/6th interest of the working interest revenues attributable to the Lease which Sklar is holding in suspense. From and after that initial payment, under the terms of this Indemnity Agreement, Sklar shall continue to remit to each of the Kidd Group its share of said revenues.

3.  In consideration for Sklar's release of 5/6 of the working interest revenue under the Lease to Kidd Group members, each of the Kidd Group members, for themselves and their successors and assigns severally hereby agree to indemnify Sklar, its parents, subsidiaries, affiliates, successors and assigns (collectively "Sklar Group"). and hold Sklar Group harmless from any claim, liability or demand whatsoever based on any

2

person's or entity's claim that the Lease does not cover at least the 5/6 working interest being paid to the Kidd Group, including, without limitation, any reasonable attorneys' fees and litigation expenses that Sklar may incur in connection with any litigation in which Sklar may become involved with respect to any such claim. In the event Sklar is named as a defendant in any lawsuit based in whole or in part on such a claim, Sklar will have the right to retain such attorney or attorneys as Sklar may select, but the Kidd Group agrees, for themselves and their successors and assigns severally to reimburse Sklar for all reasonable attorneys' fees and litigation expenses incurred by them on a regular and ongoing basis which are incurred in the defense of such claims. Without the Kidd Group's prior written consent, Sklar shall not make any settlement or agreement with any party or person that would (i) act to reduce or eliminate the Kidd Group's interest in the Lease, or (ii) require the Kidd Group to remit monies. Furthermore, if any such lawsuit is filed against Sklar claiming that the Lease is invalid as to all or any portion thereof, then Sklar shall have the right to interplead the working interest revenues under the Lease (or such lesser portion as shall be claimed to be invalid) into court and cease making such payments to the Kidd Group pending resolution of the dispute. If any ruling is made by the court in either the Conecuh Lawsuit or the Escambia Lawsuit that, in Sklar's reasonable, good faith opinion based on the advice of its legal counsel, determines that the Lease is invalid with respect to all or any portion of the 5/6 share of the working interest revenue, Sklar may cease making such payments under this Indemnity Agreement.

4. Any claims, demands or lawsuits filed against Sklar for suspended royalties which do not also include the working interest revenues shall not be covered by this Indemnity

3

Agreement, nor shall it be a cause for Sklar to stop remitting the revenues under this Indemnity Agreement; provided, however, that nothing in this agreement shall alter the fact that the Kidd Group is ultimately responsible for the royalties properly due to their lessors, their heirs, successors, and assigns, and Sklar's marketing of all production and facilitation of royalty payments for the Kidd Group shall not impose any obligation on Sklar to continue doing so, Sklar's obligations being only those set forth in the JOA.

5. Any working interest moneys held by Sklar will, upon final resolution by court order or agreement of the parties as to the validity of the Lease, release such funds to the rightful owners thereof.

The parties hereto agree this Indemnity Agreement may be executed in separate counterparts and combined to create one original. Electronic or facsimile signatures shall be considered as original executions hereof.

IN WITNESS WHEREOF, the parties have executed this Agreement as of February 9th, 2017.

Roosth 806, Ltd., acting by and through its sole general partner Roosth Mineral Management, LLC

By: _____
David L. Decker, Vice President


Kidd Production, Ltd.


By: _____
As its General Partner

4

Steven E. Calhoun

Kwazar Resources, LLC


By: _____
       As its _____


Sklar Exploration Company, L.L.C.

By: _____
       J. Marshall Jones, III as its
       Vice President-Land Manager

5

_____
Steven E. Calhoun

Kwazar Resources, LLC

By: _____
As its _____

Sklar Exploration Company, L.L.C.

By: _____
J. Marshall Jones, III as its
Vice President-Land Manager

5

STATE OF ALABAMA

COUNTY OF CONECUH

2017   302
Recorded in the Above
Deed   Book & Page
01-17-2017 12:37:57 PM
Rosene Booker, Probate Judge
Conecuh County, Alabama

### RECORDING SUPPLEMENT TO
### OPERATING AGREEMENT AND FINANCING STATEMENT

**Cedar Creek Land & Timber 3-7 #1 Well**
**NE/4 of Section 3, Township 3 North, Range 13 East**
**Conecuh County, Alabama**

THIS AGREEMENT is entered into by and between SKLAR EXPLORATION COMPANY L.L.C., hereinafter referred to as "Operator," and the signatory party or parties other than Operator, hereinafter referred to individually as "Non-Operator," and collectively as "Non-Operators."

WHEREAS, the parties to this agreement are owners of Oil and Gas Leases and/or Oil and Gas Interests identified in Exhibit "A-1," attached hereto and made a part hereof, which cover and affect the lands located within the red boundary identified in Exhibit "A-2," attached hereto and made a part hereof (said lands, Leases and Interests being hereinafter called the "Contract Area"), and in any instance in which the Leases or Interests of a party are not of record, the party or parties hereto that own the interest or rights therein are reflected on Exhibit "A," attached hereto and made a part hereof;

WHEREAS, the parties hereto have executed an Operating Agreement dated June 17, 2016 (the "Operating Agreement"), covering the Contract Area for the purpose of exploring and developing such lands, Leases and Interests for Oil and Gas; and

WHEREAS, the parties hereto have executed this agreement for the purpose of imparting notice to all persons of the rights and obligations of the parties under the Operating Agreement and for the further purpose of perfecting those rights capable of perfection.

NOW, THEREFORE, in consideration of the mutual rights and obligations of the parties hereto, it is agreed as follows:

1.   This agreement supplements the Operating Agreement, which Agreement in its entirety is incorporated herein by reference, and all terms used herein shall have the meaning ascribed to them in the Operating Agreement.

2.   The parties do hereby agree that:

   A.   The Oil and Gas Leases and/or Oil and Gas Interests of the parties comprising the Contract Area shall be subject to and burdened with the terms and provisions of this agreement and the Operating Agreement, and the parties do hereby commit such Leases and Interests to the performance thereof.

   B.   The exploration and development of the Contract Area for Oil and Gas shall be governed by the terms and provisions of the Operating Agreement, as supplemented by this agreement.

   C.   All costs and liabilities incurred in operations under this agreement and the Operating Agreement shall be borne and paid, and all equipment and materials acquired in operations on the Contract Area shall be owned, by the parties hereto, as provided in the Operating Agreement.

   D.   Regardless of the record title ownership of the Oil and Gas Leases and/or Oil and Gas Interests identified in Exhibit "A-1," all production of Oil and Gas from the Contract Area shall be owned by the parties as provided in the Operating Agreement; provided, further, that (i) nothing contained in this agreement shall be deemed an assignment or cross-assignment of interests covered hereby and (ii) the actual interests of parties in the Contract Area or in any well drilled therein pursuant to the Operating Agreement may differ from the interests of the parties reflected in Exhibit "A" due to assignments, elections, forfeitures or other transfers made pursuant to the terms of the Operating Agreement.

   E.   Each party shall pay or deliver, or cause to be paid or delivered, all burdens on its share of the production from the Contract Area as provided in the Operating Agreement.

   F.   An overriding royalty, production payment, net profits interest or other burden payable out of production hereafter created, assignments of production given as security for the payment of money and those overriding royalties, production payments and other burdens payable out of production heretofore created and defined as Subsequently Created Interests in the Operating Agreement shall be (i) borne solely by the party whose interest is burdened therewith, (ii) subject to suspension if a

2017   303
Recorded in the Above
Deed, Book & Page

party is required to assign or relinquish to another party an interest which is subject to such burden, and (iii) subject to the lien and security interest hereinafter provided if the party subject to such burden fails to pay its share of expenses chargeable hereunder and under the Operating Agreement, all upon the terms and provisions and in the times and manner provided by the Operating Agreement.

G.  The Oil and Gas Leases and/or Oil and Gas Interests which are subject hereto may not be assigned or transferred except in accordance with those terms, provisions and restrictions in the Operating Agreement regulating such transfers.

This agreement and the Operating Agreement shall be binding upon and shall inure to the benefit of the parties hereto, and their respective heirs, devisees, legal representatives, and assigns, and the terms hereof shall be deemed to run with the leases or interests included within the Contract Area.

H.  The parties shall have the right to acquire an interest in renewal, extension and replacement leases, leases proposed to be surrendered, wells proposed to be abandoned, and interests to be relinquished as a result of non-participation in subsequent operations, all in accordance with the terms and provisions of the Operating Agreement.

I.  The rights and obligations of the parties and the adjustment of interests among them in the event of a failure or loss of title, each party's right to propose operations, obligations with respect to participation in operations on the Contract Area and the consequences of a failure to participate in operations, the rights and obligations of the parties regarding the marketing of production, and the rights and remedies of the parties for failure to comply with financial obligations shall be as provided in the Operating Agreement.

J.  Each party's interest under this agreement and under the Operating Agreement shall be subject to relinquishment for its failure to participate in subsequent operations and each party's share of production and costs shall be reallocated on the basis of such relinquishment, all upon the terms and provisions provided in the Operating Agreement.

K.  All other matters with respect to exploration and development of the Contract Area and the ownership and transfer of the Oil and Gas Leases and/or Oil and Gas Interest therein shall be governed by the terms and provisions of the Operating Agreement.

3.  The parties hereby grant reciprocal liens and security interests as follows:

A.  Each party grants to the other parties hereto a lien upon any interest it now owns or hereafter acquires in Oil and Gas Leases and Oil and Gas Interests in the Contract Area, and a security interest and/or purchase money security interest in any interest it now owns or hereafter acquires in the personal property and fixtures on or used or obtained for use in connection therewith, to secure performance of all of its obligations under this agreement and the Operating Agreement including but not limited to payment of expense, interest and fees, the proper disbursement of all monies paid under this agreement and the Operating Agreement, the assignment or relinquishment of interest in Oil and Gas Leases as required under this agreement and the Operating Agreement, and the proper performance of operations under this agreement and the Operating Agreement. Such lien and security interest granted by each party hereto shall include such party's leasehold interests, working interests, operating rights, and royalty and overriding royalty interests in the Contract Area now owned or hereafter acquired and in lands pooled or unitized therewith or otherwise becoming subject to this agreement and the Operating Agreement, the Oil and Gas when extracted therefrom and equipment situated thereon or used or obtained for use in connection therewith (including, without limitation, all wells, tools, and tubular goods), and accounts (including, without limitation, accounts arising from the sale of production at the wellhead), contract rights, inventory and general intangibles relating thereto or arising therefrom, and all proceeds and products of the foregoing.

B.  All parties acquiring an interest in Oil and Gas Leases and Oil and Gas Interests covered by this agreement and the Operating Agreement, whether by assignment, merger, mortgage, operation of law, or otherwise, shall be deemed to have taken subject to the lien and security interest granted by the Operating Agreement and this instrument as to all obligations attributable to such interest under this agreement and the Operating Agreement whether or not such obligations arise before or after such interest is acquired.

C.  To the extent that the parties have a security interest under Alabama's Uniform Commercial Code -- Secured Transactions, Ala. Code §§ 7-9A-101, et seq., as hereafter amended, supplemented or replaced, they shall be entitled to exercise the rights and remedies of a secured party under the Code. The bringing of a suit and the obtaining of judgment by a party for the secured indebtedness shall not be deemed an election of remedies or otherwise affect the lien rights or security interest as security for the payment thereof. In addition, upon default by any party in the payment of its

CCL&T 3-7 #1 RS

2017   304
Recorded in the Above
Deed Book & Page

share of expenses, interest or fees, or upon the improper use of funds by the Operator, the other parties shall have the right, without prejudice to other rights or remedies, to collect from the purchaser the proceeds from the sale of such defaulting party's share of Oil and Gas until the amount owed by such party, plus interest, has been received, and shall have the right to offset the amount owed against the proceeds from the sale of such defaulting party's share of Oil and Gas. All purchasers of production may rely on a notification of default from the non-defaulting party or parties stating the amount due as a result of the default, and all parties waive any recourse available against purchasers for releasing production proceeds as provided in this paragraph.

D.  Reserved.

E.  If any party does not perform all of its obligations under this agreement or the Operating Agreement, and the failure to perform subjects such party to foreclosure or execution proceedings pursuant to the provisions of this agreement or the Operating Agreement, to the extent allowed by governing law, the defaulting party waives any available right of redemption from and after the date of judgment, any required valuation or appraisement of the mortgaged or secured property prior to sale, any available right to stay execution or to require a marshalling of assets and any required bond in the event a receiver is appointed.

F.  The lien and security interest granted in this paragraph 3 supplements the rights granted under the Operating Agreement.

G.  Each party does hereby grant to the other parties a power of sale as to any property that is subject to the lien granted hereunder or under the Operating Agreement, such power of sale to be exercised against the interests of any party that does not timely perform all of its obligations under this agreement and the Operating Agreement and by and for the benefit of the party to whom such obligations are owed (hereafter sometimes referred to as the "Obligee").  Such power of sale shall be executed in accordance with the following procedure: Obligee shall be authorized, at its option, whether or not possession of the interest in question is taken, to sell the interest against which the lien has been granted (or such part or parts thereof as Obligee may from time to time elect to sell) under the power of sale which is hereby given, at public outcry, to the highest bidder for cash, at the front or main door of the courthouse of the county in which the interest to be sold, or a substantial and material part thereof, is located, after first giving notice by publication once a week for three successive weeks of the time, place and terms of such sale, together with a description of the interest to be sold, by publication in some newspaper published in the county or counties in which the interest to be sold is located.  If there are interests to be sold in more than one county, publication shall be made in all counties where any of the interests to be sold are located.  The sale shall be held sometime during the applicable legal hours of sale on the day designated for the exercise of the power of sale hereunder.  Obligee may (but is not required to) bid at any sale held hereunder  in the form of cash, cash equivalents and/or cancellation of all or any part of the obligations, or any combination thereof, and may purchase the interests, or any part thereof, if the highest bidder therefor.  The purchaser at any such sale shall be under no obligation to see to the proper application of the purchase money.  At any sale, all or any part of the interests, whether real, personal or mixed, may be offered for sale in parcels or en masse for one total price, and the proceeds of any such sale en masse shall be accounted for in one account without distinction between the items included therein and without assigning to them any proportion of such proceeds, the obligated party hereby waiving the application of any doctrine of marshalling or like proceeding.  In case Obligee, in the exercise of the power of sale herein given, elects to sell any interests in parts or parcels, sales thereof may be held from time to time, and the power of sale granted herein shall not be fully exercised until all of the interests not previously sold shall have been sold or all the obligations shall have been paid or otherwise satisfied in full.  The purchase money, proceeds and avails, or any other sums collected by Obligee pursuant to this power of sale shall be applied by the Obligee against the costs and expenses of such sale, including reasonable attorneys' fees, then shall be credited against the obligations for which the sale was made, then shall be applied against any obligations then outstanding from the defaulting party to the Obligee and, finally, to the extent any remains, shall be paid to the party who had owed the obligations.

H.  The above described security will be financed at the wellhead of the well or wells located on the Contract Area and this Recording Supplement may be filed in the land records in the County or Parish in which the Contract Area is located, and as a financing statement in all recording offices required under the Uniform Commercial Code or other applicable state statutes to perfect the above-described security interest, and any party hereto may file a continuation statement as necessary under the Uniform Commercial Code, or other state laws.

4.  This agreement shall be effective as of the date of the Operating Agreement as above recited. Upon termination of this agreement and the Operating Agreement and the satisfaction of all obligations thereunder, Operator is authorized to file of record in all necessary recording offices a notice of

CCL&T 3-7 #1 RS

2017   305
Recorded in the Above
Deed, Book & Page
01-10-2017 12:37:57 PM

termination, and each party hereto agrees to execute such a notice of termination as to Operator's interest, upon the request of Operator, if Operator has complied with all of its financial obligations.

5.  This agreement and the Operating Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, devisees, legal representatives, successors and assigns. No sale, encumbrance, transfer or other disposition shall be made by any party of any interest in the Leases or Interests subject hereto except as expressly permitted under the Operating Agreement and, if permitted, shall be made expressly subject to this agreement and the Operating Agreement and without prejudice to the rights of the other parties. If the transfer is permitted, the assignee of an ownership interest in any Oil and Gas Lease shall be deemed a party to this agreement and the Operating Agreement as to the interest assigned from and after the effective date of the transfer of ownership; provided, however, that the other parties shall not be required to recognize any such sale, encumbrance, transfer or other disposition for any purpose hereunder until thirty (30) days after they have received a copy of the instrument of transfer or other satisfactory evidence thereof in writing from the transferor or transferee. No assignment or other disposition of interest by a party shall relieve such party of obligations previously incurred by such party under this agreement or the Operating Agreement with respect to the interest transferred, including without limitation the obligation of a party to pay all costs attributable to an operation conducted under this agreement and the Operating Agreement in which such party has agreed to participate prior to making such assignment, and the lien and security interest granted by Article VII.B. of the Operating Agreement and hereby shall continue to burden the interest transferred to secure payment of any such obligations.

6.  In the event of a conflict between the terms and provisions of this agreement and the terms and provisions of the Operating Agreement, then, as between the parties, the terms and provisions of the Operating Agreement shall control.

7.  This agreement shall be binding upon each Non-Operator when this agreement or a counterpart thereof has been executed by such Non-Operator and Operator notwithstanding that this agreement is not then or thereafter executed by all of the parties to which it is tendered or which are listed on Exhibit "A" as owning an interest in the Contract Area or which own, in fact, an interest in the Contract Area. In the event that any provision herein is illegal or unenforceable, the remaining provisions shall not be affected, and shall be enforced as if the illegal or unenforceable provision did not appear herein.

IN WITNESS WHEREOF, this agreement shall be effective as of June 17, 2016.

OPERATOR

SKLAR EXPLORATION COMPANY L.L.C.

_____
Steven Hatcher

_____
J. Marshall Jones III

_____
DAVID A. BARLOW,
President-Chief Operating Officer

NON-OPERATORS

SKLARCO L.L.C.

_____
Steven Hatcher

_____
J. Marshall Jones IV

_____
DAVID A. BARLOW,
President-Chief Operating Officer

BUNDERO INVESTMENT COMPANY, L.L.C.

_____

_____
ROBERT P. BOWMAN, Manager

_____

_____

CCL&T 3-7 #1 RS

2017  306
Recorded in the Above
Deed  Book & Page
04-17-2017 at 2:37:57 PM

termination, and each party hereto agrees to execute such a notice of termination as to such party's interest, upon the request of Operator, if Operator has complied with all of its financial obligations.

5.  This agreement and the Operating Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, devisees, legal representatives, successors and assigns. No sale, encumbrance, transfer or other disposition shall be made by any party of any interest in the Leases or Interests subject hereto except as expressly permitted under the Operating Agreement and, if permitted, shall be made expressly subject to this agreement and the Operating Agreement and without prejudice to the rights of the other parties. If the transfer is permitted, the assignee of an ownership interest in any Oil and Gas Lease shall be deemed a party to this agreement and the Operating Agreement as to the interest assigned from and after the effective date of the transfer of ownership; provided, however, that the other parties shall not be required to recognize any such sale, encumbrance, transfer or other disposition for any purpose hereunder until thirty (30) days after they have received a copy of the instrument of transfer or other satisfactory evidence thereof in writing from the transferor or transferee. No assignment or other disposition of interest by a party shall relieve such party of obligations previously incurred by such party under this agreement or the Operating Agreement with respect to the interest transferred, including without limitation the obligation of a party to pay all costs attributable to an operation conducted under this agreement and the Operating Agreement in which such party has agreed to participate prior to making such assignment, and the lien and security interest granted by Article VII.B. of the Operating Agreement and hereby shall continue to burden the interest transferred to secure payment of any such obligations.

6.  In the event of a conflict between the terms and provisions of this agreement and the terms and provisions of the Operating Agreement, then, as between the parties, the terms and provisions of the Operating Agreement shall control.

7.  This agreement shall be binding upon each Non-Operator when this agreement or a counterpart thereof has been executed by such Non-Operator and Operator notwithstanding that this agreement is not then or thereafter executed by all of the parties to which it is tendered or which are listed on Exhibit "A" as owning an interest in the Contract Area or which own, in fact, an interest in the Contract Area. In the event that any provision herein is illegal or unenforceable, the remaining provisions shall not be affected, and shall be enforced as if the illegal or unenforceable provision did not appear herein.

IN WITNESS WHEREOF, this agreement shall be effective as of June 17, 2016.

OPERATOR

SKLAR EXPLORATION COMPANY L.L.C.

Steven Hotchen

J. Marshall Jones III

DAVID A. BARLOW,
President-Chief Operating Officer

NON-OPERATORS

SKLARCO L.L.C.

Steven Hotchen

J. Marshall Jones III

DAVID A. BARLOW,
President-Chief Operating Officer

BUNDERO INVESTMENT COMPANY, L.L.C.

Robert S. Barefoot

Lisa E. Allen

ROBERT P. BOWMAN, Manager

Page 4 of 21

CCL&T 3-7 #1 RS

2017  307
Recorded in the Above
Deed Book & Page
01-17-2017 12:37:57 PM

CRAFT EXPLORATION COMPANY L.L.C.

STEVEN H. CRAFT, Managing Member

DICKSON OIL & GAS, LLC

C. BICKHAM DICKSON, III, Member

FANT ENERGY LIMITED
Richard E. Fant, LLC,
General Partner of Fant Energy Limited

RICHARD E. FANT,
Manager of Richard E. Fant, LLC, the
General Partner of Fant Energy Limited

JF HOWELL INTERESTS, LP

DAVID MORGAN,
Manager of Howell Investments, LLC,
General Partner of JF Howell Interests, LP

JJS INTERESTS ESCAMBIA, LLC

JUSTIN SIMONS, PRESIDENT

KUDZU OIL PROPERTIES, LLC

WIRT A. YERGER, III, Manager

Page 5 of 21

CCL&T 3-7 #1 RS

2017   308
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM

CRAFT EXPLORATION COMPANY L.L.C.

_____

_____                STEVEN H. CRAFT, Managing Member

_____


DICKSON OIL & GAS, LLC

_____

_____                C. BICKHAM DICKSON, III, Member


FANT ENERGY LIMITED
Richard E. Fant, LLC,
General Partner of Fant Energy Limited

_____

_____                RICHARD E. FANT,
                                         Manager of Richard E. Fant, LLC, the
_____                General Partner of Fant Energy Limited


JF HOWELL INTERESTS, LP

_____

_____                DAVID MORGAN,
                                         Manager of Howell Investments, LLC,
_____                General Partner of JF Howell Interests, LP


JJS INTERESTS ESCAMBIA, LLC

_____

_____                JUSTIN SIMONS, PRESIDENT

_____


KUDZU OIL PROPERTIES, LLC

_____

_____                WIRT A. YERGER, III, Manager

_____

CCL&T 3-7 #1 RS

2017 309
Recorded in the Above
Deed Book & Page
01-17-2017 12:37:57 PM

CRAFT EXPLORATION COMPANY L.L.C.

_____

STEVEN H. CRAFT, Managing Member

_____

DICKSON OIL & GAS, LLC

_____

C. BICKHAM DICKSON, III, Member

_____

FANT ENERGY LIMITED
Richard E. Fant, LLC,
General Partner of Fant Energy Limited

_____

RICHARD E. FANT,
Manager of Richard E. Fant, LLC, the
General Partner of Fant Energy Limited

_____

JF HOWELL INTERESTS, LP

_____

DAVID MORGAN,
Manager of Howell Investments, LLC,
General Partner of JF Howell Interests, LP

_____

JJS INTERESTS ESCAMBIA, LLC

_____

JUSTIN SIMONS, PRESIDENT

_____

KUDZU OIL PROPERTIES, LLC

_____

WIRT A. YERGER, III, Manager

_____

CCL&T 3-7 #1 RS

2017   310
Recorded in the Above
Book & Page
01-17-2017 12:37:57 PM

CRAFT EXPLORATION COMPANY, LLC

_____

STEVEN H. CRAFT, Managing Member

DICKSON OIL & GAS, LLC

_____

C. BICKHAM DICKSON, III, Member

FANT ENERGY LIMITED
Richard E. Fant, LLC,
General Partner of Fant Energy Limited

_____

RICHARD E. FANT,
Manager of Richard E. Fant, LLC, the
General Partner of Fant Energy Limited

JF HOWELL INTERESTS, LP

_____

DAVID MORGAN,
Manager of Howell Investments, LLC,
General Partner of JF Howell Interests, LP

JJS INTERESTS ESCAMBIA, LLC

_____

JUSTIN SIMONS, PRESIDENT

KUDZU OIL PROPERTIES, LLC

_____

WIRT A. YERGER, III, Manager

CCL&T 3-7 #1 RS

2017   311
Recorded in the Above
Deed   Book & Page

CRAFT EXPLORATION COMPANY, LLC.

_____     _____
                                   STEVEN H. CRAFT, Managing Member


                                   DICKSON OIL & GAS, LLC


_____     _____
                                   C. BICKHAM DICKSON, III, Member
_____


                                   FANT ENERGY LIMITED
                                   Richard E. Fant, LLC,
                                   General Partner of Fant Energy Limited

_____     _____
                                   RICHARD E. FANT,
                                   Manager of Richard E. Fant, LLC, the
                                   General Partner of Fant Energy Limited


                                   JF HOWELL INTERESTS, LP

_____     _____
                                   DAVID MORGAN,
                                   Manager of Howell Investments, LLC,
_____     General Partner of JF Howell Interests, LP


                                   JJS INTERESTS ESCAMBIA, LLC

_____     _____
DANIEL W. DEVALCH                  JUSTIN SIMONS, PRESIDENT
Ashley Kinnard


                                   KUDZU OIL PROPERTIES, LLC

_____     _____
                                   WIRT A. YERGER, III, Manager
_____

                                   CCL&T 3-7 #1 RS

2017   312
Recorded in the Above
Deed Book & Page
01-11-2017 12:37:57 PM

CRAFT EXPLORATION COMPANY, LLC

_____

STEVEN H. CRAFT, Managing Member


DICKSON OIL & GAS, LLC

_____

C. BICKHAM DICKSON, III, Member


FANT ENERGY LIMITED
Richard E. Fant, LLC,
General Partner of Fant Energy Limited

_____

RICHARD E. FANT,
Manager of Richard E. Fant, LLC, the
General Partner of Fant Energy Limited


JF HOWELL INTERESTS, LP

_____

DAVID MORGAN,
Manager of Howell Investments, LLC,
General Partner of JF Howell Interests, LP


JJS INTERESTS ESCAMBIA, LLC

_____

JUSTIN SIMONS, PRESIDENT


KUDZU OIL PROPERTIES, LLC

_____

WIRT A. YERGER, III, Manager


Page 5 of 21

CCL&T 3-7 #1 RS

2017   313
Recorded in the Above
Book & Page
01-17-2017 12:37:57 PM

LANDMARK EXPLORATION

*Rachel Bridges*

~~LARRY JOHNSON, Managing Member~~
Michael Johnson  Manager

MARKSCO, L.L.C.

_____
MARK P. SEALY, Member


PICKENS FINANCIAL GROUP, LLC

_____
MICHAEL K. PICKENS, Vice President


RESOURCE VENTURES, LLC

_____
MARK A. ARNOLD, General Manager


THE RUDMAN PARTNERSHIP

_____
W.R. (TREY) SIBLEY, III, AIF


TAUBER EXPLORATION & PRODUCTION CO.

_____
JOHN ROBINSON, Vice President - Land


TIEMBO, LTD.
Simba Investors, L.L.C., its General Partner

_____
MARK RAUCH,
Member of Simba Investors, L.L.C.,
The General Partner of Tiembo, Ltd.

CCL&T 3-7 #1 RS

2017   314
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM

LANDMARK EXPLORATION, LLC

_____

LARRY JOHNSON, Managing Member

_____


MARKSCO, L.L.C.

_____

MARK P. SEALY, Member


PICKENS FINANCIAL GROUP, LLC

_____

MICHAEL K. PICKENS, Vice President

_____


RESOURCE VENTURES, LLC

_____

MARK A. ARNOLD, General Manager

_____


THE RUDMAN PARTNERSHIP

_____

W.R. (TREY) SIBLEY, III, AIF

_____


TAUBER EXPLORATION & PRODUCTION CO.

_____

JOHN ROBINSON, Vice President - Land

_____


TIEMBO, LTD.
Simba Investors, L.L.C., its General Partner

_____

MARK RAUCH,
Member of Simba Investors, L.L.C.,
The General Partner of Tiembo, Ltd.

Page 6 of 21

CCL&T 3-7 #1 RS

```
2017   316
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM
```

LANDMARK EXPLORATION, LLC

_____          _____
                                         LARRY JOHNSON, Managing Member

_____


MARKSCO, L.L.C.

_____          _____
                                         MARK P. SEALY, Member

_____


PICKENS FINANCIAL GROUP, LLC

_____          _____
                                         MICHAEL K. PICKENS, Vice President

_____


RESOURCE VENTURES, LLC

_____          _____
                                         MARK A. ARNOLD, General Manager


THE RUDMAN PARTNERSHIP

_____          _____
                                         W.R. (TREY) SIBLEY, III, AIF

_____


TAUBER EXPLORATION & PRODUCTION CO.

_____          _____
                                         JOHN ROBINSON, Vice President - Land

_____


TIEMBO, LTD.
Simba Investors, L.L.C., its General Partner

_____          _____
                                         MARK RAUCH,
                                         Member of Simba Investors, L.L.C.,
                                         The General Partner of Tiembo, Ltd.

CCL&T 3-7 #1 RS

2017   315
Recorded in the Above
Deed Book & Page
LANDMARK EXPLORATION, LLC   04-12-2017 12:37:57 PM

_____        _____
                                        LARRY JOHNSON, Managing Member



                                        MARKSCO, L.L.C.

_____        _____
                                        MARK P. SEALY, Member



                                        PICKENS FINANCIAL GROUP, LLC

_____        _____
                                        MICHAEL K. PICKENS, Vice President



                                        RESOURCE VENTURES, LLC

_____        _____
                                        MARK A. ARNOLD, General Manager



                                        THE RUDMAN PARTNERSHIP

_____        _____
                                        W.R. (TREY) SIBLEY, III, AIF



                                        TAUBER EXPLORATION & PRODUCTION CO.

_____        _____
                                        JOHN ROBINSON, Vice President - Land



                                        TIEMBO, LTD.
                                        Simba Investors, L.L.C., its General Partner

_____        _____
                                        MARK RAUCH,
                                        Member of Simba Investors, L.L.C.,
                                        The General Partner of Tiembo, Ltd.

Page 6 of 21

CCL&T 3-7 #1 RS

Sign. .re Page
Memorandum of JOA - CCL&T 3-7 #1 Well

LANDMARK EXPLORATION, LLC

2017 317
Recorded in the Above
Deed Book & Page
01-17-2017 12:37:57 PM

_____

LARRY JOHNSON, Managing Member

_____

MARKSCO, L.L.C.

_____

MARK P. SEALY, Member

_____

PICKENS FINANCIAL GROUP, LLC

_____

MICHAEL K. PICKENS, Vice President

_____

RESOURCE VENTURES, LLC

_____

MARK A. ARNOLD, General Manager

_____

THE RUDMAN PARTNERSHIP

*

W.R. (TREY) SIBLEY, III, AIF

TAUBER EXPLORATION & PRODUCTION CO.

_____

JOHN ROBINSON, Vice President - Land

_____

TIEMBO, LTD.
Simba Investors, L.L.C., its General Partner

_____

MARK RAUCH,
Member of Simba Investors, L.L.C.,
The General Partner of Tiembo, Ltd.

*Subject to Conditional Letter of
Acceptance dated July 6, 2016

CCL&T 3-7 #1 RS

```
2017  318
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM
```

LANDMARK EXPLORATION, LLC

_____    LARRY JOHNSON, Managing Member
_____

MARKSCO, L.L.C.

_____    MARK P. SEALY, Member
_____

PICKENS FINANCIAL GROUP, LLC

_____    MICHAEL K. PICKENS, Vice President
_____

RESOURCE VENTURES, LLC

_____    MARK A. ARNOLD, General Manager
_____

THE RUDMAN PARTNERSHIP

_____    W.R. (TREY) SIBLEY, III, AIF
_____

*Connie M Dubiel*    TAUBER EXPLORATION & PRODUCTION CO.

*John Robinson*    RICHARD E. TAUBER, President

TIEMBO, LTD.
Simba Investors, L.L.C., its General Partner

_____    MARK RAUCH,
Member of Simba Investors, L.L.C.,
The General Partner of Tiembo, Ltd.

Page 6 of 21

CCL&T 3-7 #1 RS

2017    320
Recorded in the Above
Deed Book & Page
01-17-2017 12:37:57 PM

FLETCHER EXPLORATION, LLC

By _____
As its Managing Member

_____
JOHN C. NIX, JR.

ELBA EXPLORATION, LLC

By_____
As its_____

_____
ED L. DUNN

_____
WILLIAM R. ROLLO

_____
GLORIA ROLLO

BARNES CREEK DRILLING, LLC

By_____
As its_____

_____
WILLIAM S. SCHRIER

CCL&T 3-7 #1 RS

3052940844                           p.3

TAUBER EXPLORATION & PRODUCTION CO.

JOHN ROBINSON, Vice President - Land

TIEMBO, LTD.
Sihoka Investors, L.L.C., its General Partner

MARK RAFCH
Member of Sihoka Investors, L.L.C.
The General Partner of Tiembo, Ltd

Page 6 of 21

OCERT 2-7-01 RA

2017   319
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM

2017    323
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM

FLETCHER EXPLORATION, LLC

By_____
As its_____


JOHN C. NIX, JR.


ELBA EXPLORATION, LLC

By_____
As its_____


ED L. DUNN


WILLIAM R. ROLLO


GLORIA ROLLO


BARNES CREEK DRILLING, LLC

By_____
As its_____


WILLIAM S. SCHREIER

CCL&T 3-7 #1 RS

2017   321
Recorded in the Above
Deed  Book & Page
FLETCHER EXPLORATION 11-17-2017 12:37:57 PM

By_____
As its_____

_____        _____
                                         JOHN C. NIX, JR.


ELBA EXPLORATION, LLC

_____        By_____
                                         As its_____

_____

_____        _____
                                         ED L. DUNN
_____

_____        _____
                                         WILLIAM R. ROLLO

_____        _____
                                         GLORIA ROLLO
_____


BARNES CREEK DRILLING, LLC

_____        By_____
                                         As its_____

_____

_____        _____
                                         WILLIAM S. SCHRIER

_____


Page 7 of 21

CCL&T 3-7 #1 RS

2017   322
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM

FLETCHER EXPLORATION, LLC

By_____
As its_____


JOHN C. NIX, JR.


ELBA EXPLORATION, LLC

By_____
As its_____


ED L. DUNN


WILLIAM R. ROLLO


GLORIA ROLLO


BARNES CREEK DRILLING, LLC

By _____
As its _MANAger_


WILLIAM S. SCHRIER

CCL&T 3-7 #1 RS

2017   324
Recorded in the Above
Deed Book & Page
01-17-2017 12:37:57 PM

JOHN KUBALA

MICHAEL MANAGEMENT, INC.

By_____
As its_____

RONNIE FOUTS

SPANISH FORT ROYALTY, LLC

By_____
As its_____

JANET F. DUNN

CENTRAL EXPLORATION CO., INC.

By_____
As its_____

STRAGO PETROLEUM CORP.

By_____
As its_____

ROOSTH 806, LTD.,
A TEXAS LIMITED PARTNERSHIP

By_____
As its_____

CCL&T 3-7 #1 RS

2017   327
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM

JOHN KUBALA


MICHAEL MANAGEMENT, INC.

By_____
As its_____




RONNIE FOUTS



SPANISH FORT ROYALTY, LLC

By_____
As its_____




JANET F. DUNN


CENTRAL EXPLORATION CO., INC.

By_____
As its_____



STRAGO PETROLEUM CORP.

By_____
As its_____



ROOSTH 806, LTD.,
A TEXAS LIMITED PARTNERSHIP

By_____
As its_____

CCL&T 3-7 #1 RS

2017   325
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM

JOHN KUBALA

_____

_____

MICHAEL MANAGEMENT, INC.

By _____
As its _____

_____

_____

RONNIE FOUTS

_____

SPANISH FORT ROYALTY, LLC

By_____
As its_____

_____

JANET F. DUNN

_____

CENTRAL EXPLORATION CO., INC.

By_____
As its_____

_____

STRAGO PETROLEUM CORP.

By_____
As its_____

_____

ROOSTH 806, LTD.,
A TEXAS LIMITED PARTNERSHIP

By_____
As its_____

_____

Page 8 of 21

CCL&T 3-7 #1 RS

2017   326
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM

JOHN KUBALA

MICHAEL MANAGEMENT, INC.

By_____
As its_____

RONNIE FOUTS

SPANISH FORT ROYALTY, LLC

By_____
As its_____

JANET F. DUNN

CENTRAL EXPLORATION CO., INC.

By_____
As its_____

STRAGO PETROLEUM CORP.

By_____
As its_____

ROOSTH 806, LTD.,
A TEXAS LIMITED PARTNERSHIP

By_____
As its_____

Page 8 of 21

CCL&T 3-7 #1 RS

2017    328
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM

JOHN KUBALA


MICHAEL MANAGEMENT, INC.


By_____
As its_____




RONNIE FOUTS


SPANISH FORT ROYALTY, LLC


By_____
As its_____


Cindy Carpenter                          _Janet F. Dunn_____
As [signature]                           JANET F. DUNN


CENTRAL EXPLORATION CO., INC.


By_____
As its_____




STRAGO PETROLEUM CORP.


By_____
As its_____




ROOSTH 806, LTD.,
A TEXAS LIMITED PARTNERSHIP


By_____
As its_____

CCL&T 3-7 #1 RS

2017  329
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM

JOHN KUBALA

MICHAEL MANAGEMENT, INC.

By_____
As its_____

RONNIE FOUTS

SPANISH FORT ROYALTY, LLC

By_____
As its_____

JANET F. DUNN

CENTRAL EXPLORATION CO., INC.

By _William E. Jackson_____
As its _President_____

STRAGO PETROLEUM CORP.

By_____
As its_____

ROOSTH 806, LTD.,
A TEXAS LIMITED PARTNERSHIP

By_____
As its_____

CCL&T 3-7 #1 RS

2017   330
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM

_____          JOHN KUBALA

_____

                                       MICHAEL MANAGEMENT, INC.

_____          By_____
                                       As its_____
_____


_____          RONNIE FOUTS

_____

                                       SPANISH FORT ROYALTY, LLC

_____          By_____
                                       As its_____
_____


_____          JANET F. DUNN

_____

                                       CENTRAL EXPLORATION CO., INC.

_____          By_____
                                       As its_____
_____


                                       STRAGO PETROLEUM CORP.

_____          By_____
                                       As its_____
_____                PRESIDENT


                                       ROOSTH 806, LTD.,
                                       A TEXAS LIMITED PARTNERSHIP

_____          By_____
                                       As its_____
_____

                                                 CCL&T 3-7 #1 RS

2017   331
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM

_____

_____                JOHN KUBALA


_____                MICHAEL MANAGEMENT, INC.


_____                By_____
                                         As its_____

_____

_____                RONNIE FOUTS


_____                SPANISH FORT ROYALTY, LLC


_____                By_____
                                         As its_____

_____


_____                JANET F. DUNN

_____

_____                CENTRAL EXPLORATION CO., INC.


_____                By_____
                                         As its_____

_____


_____                STRAGO PETROLEUM CORP.


_____                By_____
                                         As its_____

_____


_Opal Y. Harrah_                         ROOSTH 806, LTD, acting by and through its sole
                                         general partner Roosth Mineral Management, LLC
_Callea Dunn_
                                         By: _____
                                         DAVID L. DECKER, VICE PRESIDENT

                                         CCL&T 3-7 #1 RS

2017    332
Recorded in the Above
Deed Book & Page
01-17-2017 12:37:57 PM

KIDD PRODUCTION, LTD.
KIDD MANAGEMENT, LLC,
Its General Partner

By _____
As its _____ President _____


STEVEN C. CALHOUN


KWAZAR RESOURCES, LLC


By _____
As its _____

CCL&T 3-7 #1 RS

2017   333
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM

KIDD PRODUCTION, LTD.

By_____
As its_____

STEVEN K. CALHOUN
E,

KWAZAR RESOURCES, LLC

By_____
As its_____

CCL&T 3-7 #1 RS

```
2017   334
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM
```

KIDD PRODUCTION, LTD.

By_____
As its_____


_____
STEVEN C. CALHOUN


KWAZAR RESOURCES, LLC

By_____
As its_____MANAGER_____

CCL&T 3-7 #1 RS

2017   335
Recorded in the Above
Deed Book & Page
01-17-2017 12:37:57 PM

## ACKNOWLEDGMENTS

STATE OF Colorado )

COUNTY/PARISH OF Boulder )

   I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that DAVID A. BARLOW, whose name as President and Chief Operating Officer of SKLAR EXPLORATION COMPANY L.L.C., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such President and Chief Operating Officer and with full authority executed the same voluntarily for and as the act of said company.

   Given under my hand and official seal on this the 23 day of June , 2016.

CAMILLE CULPEPPER JENKINS
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20154003785
MY COMMISSION EXPIRES JANUARY 27, 2019
[affix notarial seal]

Camille Jenkins
NOTARY PUBLIC

My commission expires: 1/27/2019

STATE OF Colorado )

COUNTY/PARISH OF Boulder )

   I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that DAVID A. BARLOW, whose name as President and Chief Operating Officer of SKLARCO L.L.C., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such President and Chief Operating Officer and with full authority executed the same voluntarily for and as the act of said company.

   Given under my hand and official seal on this the 23 day of June , 2016.

CAMILLE CULPEPPER JENKINS
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20154003785
MY COMMISSION EXPIRES JANUARY 27, 2019
[affix notarial seal]

Camille Jenkins
NOTARY PUBLIC

My commission expires: 1/27/2019

STATE OF _____ )

COUNTY/PARISH OF _____ )

   I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that ROBERT P. BOWMAN, whose name as Manager of BUNDERO INVESTMENT COMPANY, L.L.C., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Manager and with full authority executed the same voluntarily for and as the act of said company.

   Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

CCL&T 3-7 #1 RS

2017   338
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM

STATE OF _____ )

COUNTY/PARISH OF _____ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that STEVEN H. CRAFT, whose name as Managing Member of CRAFT EXPLORATION COMPANY, L.L.C., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Managing Member and with full authority executed the same voluntarily for and as the act of said company.

    Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____


STATE OF _Louisiana_ )

COUNTY/PARISH OF_Caddo_ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that C. BICKHAM DICKSON, III, whose name as Member of DICKSON OIL & GAS LLC, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Member and with full authority executed the same voluntarily for and as the act of said company.

    Given under my hand and official seal on this the _9 TH_ day of_September_, 2016.

_____
NOTARY PUBLIC

GEORGE PORTOCARRERO
NOTARY PUBLIC - LOUISIANA
CADDO - BOSSIER PARISH
NOTARY ID NUMBER 056297
My Commission Is For Life

[affix notarial seal]

My commission expires: _____


STATE OF _____ )

COUNTY/PARISH OF _____ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that RICHARD E. FANT, whose name as Manager of Richard E. Fant, LLC, General Partner of FANT ENERGY LIMITED, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Manager and with full authority executed the same voluntarily for and as the act of said entity.

    Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

CCL&T 3-7 #1 RS

2017  336
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM

**ACKNOWLEDGMENTS**

STATE OF __Colorado__ )

COUNTY/PARISH OF __Boulder__ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that DAVID A. BARLOW, whose name as President and Chief Operating Officer of SKLAR EXPLORATION COMPANY L.L.C., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such President and Chief Operating Officer and with full authority executed the same voluntarily for and as the act of said company.

    Given under my hand and official seal on this the __23__ day of __June__, 2016.

> CAMILLE CULPEPPER JENKINS
> NOTARY PUBLIC
> STATE OF COLORADO
> NOTARY ID 20154003785
> MY COMMISSION EXPIRES JANUARY 27, 2019
> [affix notarial seal]

NOTARY PUBLIC

My commission expires: __1/27/2019__

STATE OF __Colorado__ )

COUNTY/PARISH OF __Boulder__ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that DAVID A. BARLOW, whose name as President and Chief Operating Officer of SKLARCO L.L.C., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such President and Chief Operating Officer and with full authority executed the same voluntarily for and as the act of said company.

    Given under my hand and official seal on this the __23__ day of __June__, 2016.

> CAMILLE CULPEPPER JENKINS
> NOTARY PUBLIC
> STATE OF COLORADO
> NOTARY ID 20154003785
> MY COMMISSION EXPIRES JANUARY 27, 2019
> [affix notarial seal]

NOTARY PUBLIC

My commission expires: __1/27/2019__

STATE OF __Louisiana__ )

~~COUNTY~~/PARISH OF __Caddo__ )

    I, the undersigned authority, a Notary Public, in and for said State and ~~County~~/Parish, hereby certify that ROBERT P. BOWMAN, whose name as Manager of BUNDERO INVESTMENT COMPANY, L.L.C., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Manager and with full authority executed the same voluntarily for and as the act of said company.

    Given under my hand and official seal on this the __19th__ day of __August__, 2016.

NOTARY PUBLIC

[affix notarial seal]

My commission expires: __life__

> DEBORAH W. COX  26623
> Notary Public
> Parish of Caddo
> State of Louisiana

Page 10 of 21

STATE OF MISSISSIPPI )

COUNTY/PARISH OF MADISON )

2017   337
Recorded in the Above
Deed   Book & Page
01-17-2017 12:37:57 PM

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that STEVEN H. CRAFT, whose name as Managing Member of CRAFT EXPLORATION COMPANY, L.L.C., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Managing Member and with full authority executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the 5th day of July, 2016.

[affix notarial seal]

NOTARY PUBLIC   Julie Ann Heintz

My commission expires: 10.15.16

ID No 103723
Comm Expires
October 15,2016
NOTARY PUBLIC
MADISON COUNTY

STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that C. BICKHAM DICKSON, III, whose name as Member of DICKSON OIL & GAS LLC, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Member and with full authority executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the _____ day of _____, 2016.

[affix notarial seal]

NOTARY PUBLIC

My commission expires: _____

STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that RICHARD E. FANT, whose name as Manager of Richard E. Fant, LLC, General Partner of FANT ENERGY LIMITED, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Manager and with full authority executed the same voluntarily for and as the act of said entity.

Given under my hand and official seal on this the _____ day of _____, 2016.

[affix notarial seal]

NOTARY PUBLIC

My commission expires: _____

Page 11 of 21

CCL&T 3-7 #1 RS

STATE OF _____ )

COUNTY/PARISH OF _____ )

2017   339
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM

     I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that STEVEN H. CRAFT, whose name as Managing Member of CRAFT EXPLORATION COMPANY, L.L.C., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Managing Member and with full authority executed the same voluntarily for and as the act of said company.

     Given under my hand and official seal on this the _____ day of _____, 2016.


_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____


STATE OF _____ )

COUNTY/PARISH OF _____ )

     I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that C. BICKHAM DICKSON, III, whose name as Member of DICKSON OIL & GAS LLC, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Member and with full authority executed the same voluntarily for and as the act of said company.

     Given under my hand and official seal on this the _____ day of _____, 2016.


_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____


STATE OF _Texas_____ )

COUNTY/PARISH OF _Harris___ )

     I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that RICHARD E. FANT, whose name as Manager of Richard E. Fant, LLC, General Partner of FANT ENERGY LIMITED, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Manager and with full authority executed the same voluntarily for and as the act of said entity.

     Given under my hand and official seal on this the 30th day of June, 2016.

```
KARI DIANE COOKSEY
Notary Public, State of Texas
Comm  Expires 02-09 2020
Notary ID 130530488
```

_Kari Diane Cooksey_
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _2-9-2020_____

CCL&T 3-7 #1 RS

STATE OF ___Louisiana___ )

COUNTY/PARISH OF ___Caddo___ )

2017   340
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that DAVID MORGAN, whose name as Manager of Howell Investments, LLC, General Partner of JF HOWELL INTERESTS, LP, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Manager and with full authority executed the same voluntarily for and as the act of said partnership.

Given under my hand and official seal on this the 19th day of August, 2016.

NOTARY PUBLIC Melissa R. Ekart
68325

[affix notarial seal]

My commission expires: is for Life

STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that JUSTIN SIMONS, whose name as President of JJS INTERESTS ESCAMBIA, LLC is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such President and with full authority executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that WIRT A. YERGER, III, whose name as Manager of KUDZU OIL PROPERTIES, LLC, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Manager and with full authority executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

Page 12 of 21

CCL&T 3-7 #1 RS

2017  341
Recorded in the Above
Deed Book & Page
01-17-2017 12:37:57 PM

STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that DAVID MORGAN, whose name as Manager of Howell Investments, LLC, General Partner of JF HOWELL INTERESTS, LP, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Manager and with full authority executed the same voluntarily for and as the act of said partnership.

Given under my hand and official seal on this the _____ day of _____, 2016.


_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____


STATE OF __TEXAS_____ )

COUNTY/PARISH OF __HARRIS__ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that JUSTIN SIMONS, whose name as President of JJS INTERESTS ESCAMBIA, LLC is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such President and with full authority executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the 23rd day of AUGUST, 2016.

DAPHENE R. NORWOOD
Notary Public, State of Texas
Comm. Expires 05-13-2018
Notary ID 129817322

_Daphene R. Norwood_
NOTARY PUBLIC

[affix notarial seal]

My commission expires: MAY 13, 2018


STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that WIRT A. YERGER, III, whose name as Manager of KUDZU OIL PROPERTIES, LLC, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Manager and with full authority executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the _____ day of _____, 2016.


_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

CCL&T 3-7 #1 RS

2017   342
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM

STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County, hereby certify that DAVID MORGAN, whose name as Manager of Howell Investments, LLC, General Partner of JF HOWELL INTERESTS, LP, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Manager and with full authority executed the same voluntarily for and as the act of said partnership.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that JUSTIN SIMONS, whose name as President of JJS INTERESTS ESCAMBIA, LLC is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such President and with full authority executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _MS_____ )

COUNTY/PARISH OF _Madison_____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that WIRT A. YERGER, III, whose name as Manager of KUDZU OIL PROPERTIES, LLC, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Manager and with full authority executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the _23_ day of _June_, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _July 18, 2017_

STATE OF MISSISSIPPI
NOTARY PUBLIC
ID # 63506
PAMELA F. SEBREN
Commission Expires
July 18, 2017
RANKIN COUNTY

Page 12 of 21

CCL&T 3-7 #1 RS

2017  343
Recorded in the Above
Deed Book & Page
01-17-2017 12:37:57 PM

STATE OF _Mississippi_ )

COUNTY/PARISH OF _Rankin_ )

michal   I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that ~~LARRY~~ JOHNSON, whose name as ~~Managing Member~~ of LANDMARK EXPLORATION, LLC, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Managing Member and with full authority executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the 23rd day of June, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _2/23/20_

STATE OF MISSISSIPPI
NOTARY PUBLIC
ID # 88248
CARMEN H. CROTWELL
Commission Expires
Feb. 23, 2020
RANKIN COUNTY

STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that MARK P. SEALY, whose name as Member of MARKSCO, L.L.C., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Member and with full authority executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that MICHAEL K. PICKENS, whose name as Vice President of PICKENS FINANCIAL GROUP, LLC, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Vice President and with full authority executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

Page 13 of 21                    CCL&T 3-7 #1 RS

2017  344
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM

STATE OF _____ )

COUNTY/PARISH OF _____ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that LARRY JOHNSON, whose name as Managing Member of LANDMARK EXPLORATION, LLC, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Managing Member and with full authority executed the same voluntarily for and as the act of said company.

    Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _Louisiana_____ )

COUNTY/PARISH OF _Caddo_ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that MARK P. SEALY, whose name as Member of MARKSCO, L.L.C., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Member and with full authority executed the same voluntarily for and as the act of said company.

    Given under my hand and official seal on this the _22_ day of _July_, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

AUNGEL PATTISON
Embossed Hereon Is My
DeSoto, Caddo, Bossier Parishes
Louisiana Notary Public Seal
Notary ID No. 063733
My Commission Expires Upon My Death

STATE OF _____ )

COUNTY/PARISH OF _____ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that MICHAEL K. PICKENS, whose name as Vice President of PICKENS FINANCIAL GROUP, LLC, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Vice President and with full authority executed the same voluntarily for and as the act of said company.

    Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

CCL&T 3-7 #1 RS

2017  346
Recorded in the Above
Deed Book & Page
01-17-2017 12:37:57 PM

STATE OF _Colorado_ )

COUNTY/PARISH OF _Douglas_ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that MARK A. ARNOLD, whose name as General Manager of RESOURCE VENTURES, LLC, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such General Manager and with full authority executed the same voluntarily for and as the act of said company.

    Given under my hand and official seal on this the _12th_ day of _July_, 2016.

                               NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

> JOANNE SCHERFEL
> Notary Public
> State of Colorado
> Notary ID 20014001784
> My Commission Expires Mar 5, 2017

STATE OF _____ )

COUNTY/PARISH OF _____ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that W.R. (TREY) SIBLEY, III, whose name as Attorney-in-Fact for THE RUDMAN PARTNERSHIP, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Attorney-in-Fact and with full authority executed the same voluntarily for and as the act of said partnership.

    Given under my hand and official seal on this the _____ day of _____, 2016.

                          _____
                          NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _____ )

COUNTY/PARISH OF _____ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that JOHN ROBINSON, whose name as Vice President - Land of TAUBER EXPLORATION & PRODUCTION COMPANY, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Vice President and with full authority executed the same voluntarily for and as the act of said company.

    Given under my hand and official seal on this the _____ day of _____, 2016.

                          _____
                          NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

CCL&T 3-7 #1 RS

2017   345
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM

STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that LARRY JOHNSON, whose name as Managing Member of LANDMARK EXPLORATION, LLC, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Managing Member and with full authority executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that MARK P. SEALY, whose name as Member of MARKSCO, L.L.C., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Member and with full authority executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _Texas_____ )

COUNTY/PARISH OF _Dallas_____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that MICHAEL K. PICKENS, whose name as Vice President of PICKENS FINANCIAL GROUP, LLC, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Vice President and with full authority executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the _24_ day of _June_, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _10/29/2018_

KATHY LAUX
My Commission Expires
October 29, 2018
CCL&T 3-7 #1 RS

Page 13 of 21

STATE OF _____ )

COUNTY/PARISH OF _____ )

2017    347
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that MARK A. ARNOLD, whose name as General Manager of RESOURCE VENTURES, LLC, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such General Manager and with full authority executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF __Texas_____ )

COUNTY/PARISH OF __Dallas____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that W.R. (TREY) SIBLEY, III, whose name as Attorney-in-Fact for THE RUDMAN PARTNERSHIP, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Attorney-in-Fact and with full authority executed the same voluntarily for and as the act of said partnership.

Given under my hand and official seal on this the 3rd day of July, 2016.

ROBERT HIRAM LUCIUS
ID # 01049811-5
Notary Public, State of Texas
My Commission Expires
04/15/2020

_Robert Hiram Lucius_
NOTARY PUBLIC

[affix notarial seal]

My commission expires: 4-15-20 _____

STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that JOHN ROBINSON, whose name as Vice President - Land of TAUBER EXPLORATION & PRODUCTION COMPANY, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Vice President and with full authority executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

CCL&T 3-7 #1 RS

2017   348
Recorded in the Above
Deed Book & Page
01-17-2017 12:37:57 PM

STATE OF _____ )

COUNTY/PARISH OF _____ )

     I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that MARK A. ARNOLD, whose name as General Manager of RESOURCE VENTURES, LLC, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such General Manager and with full authority executed the same voluntarily for and as the act of said company.

     Given under my hand and official seal on this the _____ day of _____, 2016.

                                  _____
                                  NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _____ )

COUNTY/PARISH OF _____ )

     I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that W.R. (TREY) SIBLEY, III, whose name as Attorney-in-Fact for THE RUDMAN PARTNERSHIP, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Attorney-in-Fact and with full authority executed the same voluntarily for and as the act of said partnership.

     Given under my hand and official seal on this the _____ day of _____, 2016.

                                    _____
                                  NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _*TEXAS*_ )

COUNTY/~PARISH~ OF _*HARRIS*_ )

     I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that RICHARD E. TAUBER, whose name as President of TAUBER EXPLORATION & PRODUCTION CO., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Vice President and with full authority executed the same voluntarily for and as the act of said company.

     Given under my hand and official seal on this the *27th* day of *JUNE*, 2016.

                                  *Myla Wunderlich*
                                  NOTARY PUBLIC

[affix notarial seal]

                          MYLA WUNDERLICH
                 Notary Public, State of Texas
                Commission Expires 02-11-2020
                   Notary ID 12482280-0

                                                                            CCL&T 3-7 #1 RS

2017   350
Recorded in the Above
Deed Book & Page
01-17-2017 12:37:57 PM

STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that MARK RAUCH, whose name as Member of Simba Investors, L.L.C., as General Partner of TIEMBO, LTD., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Member and with full authority executed the same voluntarily for and as the act of said entity.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _Alabama_____ )

COUNTY/PARISH OF _Baldwin_ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that _Rick Fletcher_____, whose name as _Managing Member_____ of FLETCHER EXPLORATION, LLC, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such _Managing Member_____ and with full authority executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the _29th_ day of _June___, 2016.

_Daniel S. Huckleberry_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _April 29, 2016___

STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that JOHN C. NIX, JR., whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he executed the same voluntarily.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

Page 15 of 21

CCL&T 3-7 #1 RS

STATE OF _TEXAS_ )
COUNTY/PARISH OF _HARRIS_

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that MARK RAUCH, whose name as Member of Simba Investors, L.L.C., as General Partner of TIEMBO, LTD., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Member and with full authority executed the same voluntarily for and as the act of said entity.

Given under my hand and official seal on this the _18_ day of _Aug_ 2016.

_(signature)_
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _____
COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that _____ whose name as _____ of FLETCHER EXPLORATION, LLC, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such _____ and with full authority executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _____ ;

2017   349
Recorded in the Above
Deed Book & Page
01-17-2017 12:37:57 PM

STATE OF _____ )

COUNTY/PARISH OF _____ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that MARK RAUCH, whose name as Member of Simba Investors, L.L.C., as General Partner of TIEMBO, LTD., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Member and with full authority executed the same voluntarily for and as the act of said entity.

    Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _____ )

COUNTY/PARISH OF _____ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that _____ whose name as _____ of FLETCHER EXPLORATION, LLC, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such _____ and with full authority executed the same voluntarily for and as the act of said company.

    Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _Florida_ )

COUNTY/PARISH OF _Santa Rosa_ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that JOHN C. NIX, JR., whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he executed the same voluntarily.

    Given under my hand and official seal on this the _23rd_ day of _June_, 2016.

REGINA P. ATCHISON
COMMISSION # FF14355
EXPIRES: July 22, 2017

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _07-22-2017_

CCL&T 3-7 #1 RS

2017   352
Recorded in the Above
Deed Book & Page
01-17-2017 12:37:57 PM

STATE OF _Florida_ )
COUNTY/PARISH OF _Santa Rosa_

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that _Julie K. Nix_ whose name as _Managing Member_ of ELBA EXPLORATION, LLC, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such _Managing Member_ and with full authority executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the _24th_ day of _June_, 2016.

REGINA P. ATCHISON
COMMISSION # FF14355
EXPIRES: July 22, 2017
[affix notarial seal]

_Regina P. Atchison_
NOTARY PUBLIC

My commission expires: _07-22-2017_

STATE OF _Florida_ )
COUNTY/PARISH OF _Santa Rosa_

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that ED L. DUNN, whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he executed the same voluntarily.

Given under my hand and official seal on this the _23rd_ day of _June_, 2016.

REGINA P. ATCHISON
COMMISSION # FF14355
EXPIRES: July 22, 2017
[affix notarial seal]

_Regina P. Atchison_
NOTARY PUBLIC

My commission expires: _07-22-2017_

STATE OF _Florida_ )
COUNTY/PARISH OF _Santa Rosa_

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that WILLIAM R. ROLLO, whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he executed the same voluntarily.

Given under my hand and official seal on this the _24th_ day of _June_, 2016.

REGINA P. ATCHISON
COMMISSION # FF14355
EXPIRES: July 22, 2017
[affix notarial seal]

_Regina P. Atchison_
NOTARY PUBLIC

My commission expires: _07-22-2017_

Page 16 of 21

CCL&T 3-7 #1 RS

STATE OF _~Florida~_ )

COUNTY/PARISH OF _~Santa Rosa~_ )

2017   353
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that GLORIA ROLLO, whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, she executed the same voluntarily.

Given under my hand and official seal on this the _~9th~_ day of _~July~_, 2016.

REGINA P. ATCHISON
COMMISSION # FF14355
EXPIRES: July 22, 2017

_~Regina P. Atchison~_
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _~07.22.2017~_

STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that _____ whose name as _____ of BARNES CREEK DRILLING, LLC, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such _____ and with full authority executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that WILLIAM S. SCHRIER, whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he executed the same voluntarily.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

Page 17 of 21

CCL&T 3-7 #1 RS

この部分は

2017   354
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM

STATE OF _____ )

COUNTY/PARISH OF _____ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that GLORIA ROLLO, whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, she executed the same voluntarily.

    Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _Mississippi_ )

COUNTY/PARISH OF _Marion_ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that _Ann A. Simmons_ whose name as _Manager_ of BARNES CREEK DRILLING, LLC, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such _Manager_ and with full authority executed the same voluntarily for and as the act of said company.

    Given under my hand and official seal on this the _30th_ day of _June_, 2016.

_Brenda Laird Ingram_
NOTARY PUBLIC

ID # 98252
BRENDA LAIRD INGRAM
Commission Expires
Feb. 15, 2019

[affix notarial seal]

My commission expires: _February 15, 2019_

STATE OF _____ )

COUNTY/PARISH OF _____ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that WILLIAM S. SCHRIER, whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he executed the same voluntarily.

    Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

CCL&T 3-7 #1 RS

STATE OF _____ )

COUNTY/PARISH OF _____ )

2017   355
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that GLORIA ROLLO, whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, she executed the same voluntarily.

    Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _____ )

COUNTY/PARISH OF _____ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that _____, whose name as _____ of BARNES CREEK DRILLING, LLC, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such _____ and with full authority executed the same voluntarily for and as the act of said company.

    Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF New York )

COUNTY/PARISH OF New York )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that WILLIAM S. SCHREIER, whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he executed the same voluntarily.

    Given under my hand and official seal on this the 27th day of October, 2016.

DAVID SANTOS
Notary Public - State of New York
NO. 01SA6334917
Qualified in New York County
My Commission Expires Dec 28, 2019

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: Dec 28th 2019

CCL&T 3-7 #1 RS

STATE OF ___*Texas*___ )

COUNTY/PARISH OF ___*Harris*___ )

2017   356
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that JOHN KUBALA, whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he executed the same voluntarily.

Given under my hand and official seal on this the _15_ day of _November_, 2016.

SARAH D. DELAROSA
Notary Public, State of Texas
Comm. Expires 01-21-2020
Notary ID 130506844

NOTARY PUBLIC

[affix notarial seal]

My commission expires: ___1/21/2020___

STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that _____, whose name as _____ of MICHAEL MANAGEMENT, INC., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such _____ and with full authority executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that RONNIE FOUTS, whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he executed the same voluntarily.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

CCL&T 3-7 #1 RS

2017   357
Recorded in the Above
Deed Book & Page
01-17-2017 12:37:57 PM

STATE OF _____ )

COUNTY/PARISH OF _____ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that JOHN KUBALA, whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he executed the same voluntarily.

    Given under my hand and official seal on this the _____ day of _____, 2016.

                            _____
                            NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _A_L_A_B_A_M_A_ )

COUNTY/PARISH OF _B_A_L_D_W_I_N_ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that _M_ _T_I_M_O_T_H_Y_ _M_I_C_H_A_E_L_, whose name as _P_R_E_S_I_D_E_N_T_ of MICHAEL MANAGEMENT, INC., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such _P_R_E_S_I_D_E_N_T_ and with full authority executed the same voluntarily for and as the act of said company.

    Given under my hand and official seal on this the _24_ day of _J_u_n_e_, 2016.

                            _____
                            NOTARY PUBLIC

[affix notarial seal]

MY COMMISSION EXPIRES JULY 22, 2017

My commission expires: _____

STATE OF _____ )

COUNTY/PARISH OF _____ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that RONNIE FOUTS, whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he executed the same voluntarily.

    Given under my hand and official seal on this the _____ day of _____, 2016.

                            _____
                            NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

                                      CCL&T 3-7 #1 RS

STATE OF _____ )

COUNTY/PARISH OF _____ )

2017   358
Recorded in the Above
Deed  Book & Page
2:37:57 PM

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that JOHN KUBALA, whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he executed the same voluntarily.

    Given under my hand and official seal on this the _____ day of _____, 2016.

                            _____
                                NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____ ____

STATE OF _____ )

COUNTY/PARISH OF _____ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that _____, whose name as _____ of MICHAEL MANAGEMENT, INC., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such _____ and with full authority executed the same voluntarily for and as the act of said company.

    Given under my hand and official seal on this the _____ day of _____, 2016.

                            _____
                                NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____ ____

STATE OF *Alabama* )

COUNTY/PARISH OF *Jefferson* )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that RONNIE FOUTS, whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he executed the same voluntarily.

    Given under my hand and official seal on this the *24* day of *June*, 2016.

                            _____
                                  NOTARY PUBLIC

[affix notarial seal]

My commission expires: *12-16-17*

Page 18 of 21

CCL&T 3-7 #1 RS

STATE OF _Alabama_ )

COUNTY/PARISH OF _Baldwin_ )

2017   359
Recorded in the Above
Deed Book & Page
01-17-2017 12:37:57 PM

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that _____ Carl D Williams_____, whose name as _Own Manager_ of SPANISH FORT ROYALTY, LLC., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such _officer_ and with full authority executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the _24th_ day of _June_, 2016.

DAWN MARIE HUDSON
My Commission Expires
June 24, 2018

_Dawn Marie Hudson_
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _June 24, 2018_


STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that JANET F. DUNN, whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, she executed the same voluntarily.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____


STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that _____, whose name as _____ of CENTRAL EXPLORATION CO., INC., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such _____ and with full authority executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

CCL&T 3-7 #1 RS

STATE OF _____ )

COUNTY/PARISH OF _____ )

2017   360
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM

    I, the undersigned authority, a Notary Public, in and for said State and County, hereby certify that _____, whose name as _____ of SPANISH FORT ROYALTY, LLC., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such _____ and with full authority executed the same voluntarily for and as the act of said company.

    Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF Florida _____ )

COUNTY/PARISH OF Gulf _____ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that JANET F. DUNN, whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, she executed the same voluntarily.

    Given under my hand and official seal on this the 28th day of June, 2016.

_Cindy Carpenter_
NOTARY PUBLIC

[affix notarial seal]

My commission expires: 12-15-19

STATE OF _____ )

COUNTY/PARISH OF _____ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that _____, whose name as _____ of CENTRAL EXPLORATION CO., INC., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such _____ and with full authority executed the same voluntarily for and as the act of said company.

    Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

Page **19** of **21**

CCL&T 3-7 #1 RS

STATE OF _____ )

COUNTY/PARISH OF _____ )

2017    361
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that _____, whose name as _____ of SPANISH FORT ROYALTY, LLC., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such _____ and with full authority executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

---

STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that JANET F. DUNN, whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, she executed the same voluntarily.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

---

STATE OF Mississippi )

COUNTY/PARISH OF Lincoln )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that William E Hathorn, whose name as President of CENTRAL EXPLORATION CO., INC., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such president and with full authority executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the 5 day of July, 2016.

_____
NOTARY PUBLIC
by J Lewis

[affix notarial seal]

My commission expires: 1-1-20

CCL&T 3-7 #1 RS

STATE OF *TEXAS* )

COUNTY/PARISH OF *Brazoria* )

2017  362
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that *L.F. Goza* , whose name as *President* of STRAGO PETROLEUM CORP., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such *President* and with full authority executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the *30th* day of *June* , 2016.

ROBBIE LEANNA THOMPSON
MY COMMISSION EXPIRES
September 1, 2018

*Robbie L. Thompson*
NOTARY PUBLIC

[affix notarial seal]

My commission expires: *09-01-2018*

STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that _____ , whose name as _____ of ROOSTH 806, LTD., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such _____ and with full authority executed the same voluntarily for and as the act of said entity.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that _____ , whose name as _____ of KIDD PRODUCTION, LLC., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such _____ and with full authority executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

CCL&T 3-7 #1 RS

2017   363
Recorded in the Above
Deed Book & Page
01-17-2017 12:37:57 PM

STATE OF _____ )

COUNTY/PARISH OF _____ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that _____, whose name as _____ of STRAGO PETROLEUM CORP., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such _____ and with full authority executed the same voluntarily for and as the act of said company.

    Given under my hand and official seal on this the _____ day of _____, 2016.

                            _____
                            NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____


STATE OF TEXAS        §

COUNTY OF SMITH      §

    I, the undersigned authority, a Notary Public, in and for said State and County, hereby certify that **DAVID L. DECKER**, whose name as Vice President of Roosth Mineral Management, LLC, sole general partner of Roosth 806, Ltd., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Vice President and with full authority executed the same voluntarily for and as the act of said entity.

    Given under my hand and official seal on this the 7th day of July, 2016.

KATHY J. HARDY
Notary Public
STATE OF TEXAS
ID#124601332
My Comm. Exp. 08/02/2016

                            NOTARY PUBLIC, STATE OF TEXAS

[affix notarial seal]

My commission expires: _____


STATE OF _____ )

COUNTY/PARISH OF _____ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that _____, whose name as _____ of KIDD PRODUCTION, LLC., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such _____ and with full authority executed the same voluntarily for and as the act of said company.

    Given under my hand and official seal on this the _____ day of _____, 2016.

                            _____
                            NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

CCL&T 3-7 #1 RS

2017   364
Recorded in the Above
Deed Book & Page
01-17-2017 12:37:57 PM

STATE OF _____ )

COUNTY/PARISH OF _____ )

that    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify
_____, whose       name       as
_____ of STRAGO PETROLEUM CORP., is signed to the foregoing
instrument and who is known to me, acknowledged before me on this day that, being informed of the
contents of said instrument, he as such _____ and with full authority
executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF TEXAS                §

COUNTY OF SMITH              §

I, the undersigned authority, a Notary Public, in and for said State and County, hereby certify that **DAVID L. DECKER**, whose name as Vice President of Roosth Mineral Management, LLC, sole general partner of Roosth 806, Ltd., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Vice President and with full authority executed the same voluntarily for and as the act of said entity.

Given under my hand and official seal on this the 7th day of July, 2016.

KATHY J. HARDY
Notary Public
STATE OF TEXAS
ID#124801332
My Comm. Exp. 08/02/2016

_____
NOTARY PUBLIC, STATE OF TEXAS

[affix notarial seal]

My commission expires: _____

STATE OF __TEXAS_____, )

COUNTY/PARISH OF _SMITH_____ )

that    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify
__Trant L. Kidd_____, whose       name       as    President of
KIDD MANAGEMENT, LLC, General of KIDD PRODUCTION, LLC., is signed to the foregoing
instrument and who is known to me, acknowledged before me on this day that, being informed of the
contents of said instrument, he as such __President_____ and with full authority
executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the 8th day of _July_____, 2016.

LAVERNE PRUITT
MY COMMISSION EXPIRES
January 31, 2017

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: __1/31/17_____

Page 20 of 21

CCL&T 3-7#1 RS

STATE OF ___Texas___ )

COUNTY/~~PARISH~~ OF ___Smith___ )

2017   365
Recorded in the Above
Deed Book & Page
01-17-2017 12:37:57 PM

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that STEVEN E. CALHOUN, whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, she executed the same voluntarily.

    Given under my hand and official seal on this the _20_ day of _September_, 2016.

JORDAN DAUGHTRY
Notary Public, State of Texas
Comm. Expires 02-28-2018
Notary ID 12547141-6

[affix notarial seal]

NOTARY PUBLIC

My commission expires: _2-28-2018_

STATE OF _____ )

COUNTY/PARISH OF _____ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that _____, whose name as _____ of KWAZAR RESOURCES, LLC., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such _____ and with full authority executed the same voluntarily for and as the act of said company.

    Given under my hand and official seal on this the _____ day of _____, 2016.

NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

This instrument prepared by:
Ben Y. Ford
Armbrecht Jackson LLP
P.O. Box 290
Mobile, AL 36601

Page 21 of 21

CCL&T 3-7 #1 RS

STATE OF _____ )

COUNTY/PARISH OF _____ )

2017   366
Recorded in the Above
Deed Book & Page
01-17-2017 12:37:57 PM

      I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that STEVEN C. CALHOUN, whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, she executed the same voluntarily.

      Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____


STATE OF _Alabama_____ )

COUNTY/PARISH OF _Baldwin_ )

      I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that _Jackson Woodson_____, whose name as _Manager_____ of KWAZAR RESOURCES, LLC., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such _Manager_____ and with full authority executed the same voluntarily for and as the act of said company.

      Given under my hand and official seal on this the _6th_ day of _July_, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _3-14-17_____

MICHELLE ANDERSON
NOTARY
PUBLIC
ALABAMA STATE AT LARGE
My Commission Expires...


**This instrument prepared by:**
Ben Y. Ford
Armbrecht Jackson LLP
P.O. Box 290
Mobile, AL 36601

Page 21 of 21

CCL&T 3-7 #1 RS

2017 367
Recorded in the Above
Deed Book & Page
01-17-2017 12:37:57 PM

EXHIBIT "A"

CCL&T 3-7 #1

Attached to and made a part of that certain Operating Agreement effective June 17, 2016 by and between SKLAR EXPLORATION COMPANY L.L.C., as Operator, and SKLARCO L.L.C. et al., as Non-Operators

1) **Identification of lands subject to this agreement:**

Contract Area

TOWNSHIP 3 NORTH, RANGE 13 EAST
CONECUH COUNTY, ALABAMA

Section 3: Northeast Quarter (NE/4).

**And being further described as all lands, oil and gas leasehold interest and oil and gas interests lying within the red boundary as shown on the plat designated as Exhibit "A-2".**

2) **Restrictions, if any, as to depths, formations, or substances:**

There are no restrictions except as may be provided for in any lease or contract subject to this Operating Agreement.

3) **Decimal Interest and names of Parties to this Agreement:**

a.      The following parties (who are sometimes referred to in this Exhibit "A", in the Operating Agreement to which this exhibit is attached and other exhibits thereto as the "Sklar Parties") own Oil, Gas and Mineral Lease 1 described under the heading "Sklar Lease" in Exhibit "A-1" in the following fractional interests:

| Owner | Interest |
|---|---|
| Bundero Investment Company, L.L.C. | 0.06000000 |
| Craft Exploration Company L.L.C. | 0.00750000 |
| Dickson Oil & Gas, LLC | 0.00875000 |
| Fant Energy Limited | 0.08750000 |
| Fleet Howell | 0.04000000 |
| JJS Interests Escambia, LLC | 0.18193750 |
| Kudzu Oil Properties, LLC | 0.01500000 |
| Landmark Exploration, LLC | 0.01500000 |
| Marksco, L.L.C. | 0.01750000 |
| Pickens Financial Group, LLC | 0.03750000 |
| Resource Ventures LLC | 0.00093750 |
| The Rudman Partnership | 0.09375000 |
| Sklarco, LLC | 0.40087500 |
| Tauber Exploration & Production Company | 0.01875000 |
| Tiembo Ltd. | 0.01500000 |

b.      The following parties (who are sometimes referred to in this Exhibit "A", in the Operating Agreement to which this exhibit is attached and other exhibits thereto as the "Fletcher I Parties") own Oil, Gas and Mineral Leases 2 through 4 described under the heading "Fletcher I Leases" in Exhibit "A-1" in the following fractional interests:

2017   368
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM

| Owner | Interest |
|---|---|
| Fletcher Exploration, LLC | 0.39130303 |
| John C. Nix, Jr. | 0.03545453 |
| Elba Exploration, LLC | 0.04850000 |
| Ed L. Dunn | 0.07645455 |
| William R. Rollo & Gloria Rollo, JTWROS | 0.04925000 |
| Barnes Creek Drilling, LLC | 0.02834090 |
| William S. Schrier | 0.04848485 |
| John Kabasa | 0.02424242 |
| Michael Management, Inc. | 0.04028788 |
| Ronnie Fouts | 0.04028788 |
| Spanish Fort Royalty, LLC | 0.10966667 |
| Janet F. Dunn | 0.01500000 |
| Central Exploration Co., Inc. | 0.02000000 |
| Strago Petroleum Corp. | 0.07272727 |

c.    The following parties (who are sometimes referred to in this Exhibit "A", in the Operating Agreement to which this exhibit is attached and other exhibits thereto as the "Fletcher II Parties") own Oil, Gas and Mineral Lease 5 described under the heading "Fletcher II Lease" in Exhibit "A-1" in the following fractional interests:

| Owner | Interest |
|---|---|
| Fletcher Exploration, LLC | 0.44613637 |
| John C. Nix, Jr. | 0.03545453 |
| Elba Exploration, LLC | 0.04850000 |
| Ed L. Dunn | 0.07645455 |
| William R. Rollo & Gloria Rollo, JTWROS | 0.04925000 |
| Barnes Creek Drilling, LLC | 0.02834090 |
| William S. Schrier | 0.04848485 |
| John Kabasa | 0.02424242 |
| Michael Management, Inc. | 0.06770455 |
| Ronnie Fouts | 0.06770455 |
| Janet F. Dunn | 0.01500000 |
| Central Exploration Co., Inc. | 0.02000000 |
| Strago Petroleum Corp. | 0.07272727 |

d.    The following parties (who are sometimes referred to in this Exhibit "A", in the Operating Agreement to which this exhibit is attached and other exhibits thereto as the "Kidd Parties") own Oil, Gas and Mineral Lease 6 described under the heading "Kidd Lease" in Exhibit "A-1" in the following fractional interests:

| Owner | Interest |
|---|---|
| Roosth 806, Ltd, a Texas Limited Partnership | 0.50000000 |
| Kidd Production, Ltd. | 0.30000000 |
| Steven C. Calhoun | 0.10000000 |
| Kwazar Resources, LLC | 0.10000000 |

e.    Initial billing and revenue interests will be based on the ownership information in a-d, above, and the title and survey information presently available to Operator.  Some of the interests shown above extend beyond seven decimal places but are rounded to the eighth decimal place in this exhibit; so, the lease ownership decimal interests shown above may not total to 1.0000000 due to rounding.

4)    Oil and gas lease and/or oil and gas interests subject to this agreement:
See Exhibit "A-1" Description of Leases.

2017  369
Recorded in the Above
Deed Book & Page
01-17-2017 12:37:57 PM

5)    Addresses of parties for notice purposes:

Sklar Exploration Company L.L.C., Agent and Nominee for the Sklar Parties
5395 Pearl Parkway, Ste. 200
Boulder, CO 80301

Sklarco, L.L.C.
5395 Pearl Parkway, Ste. 200
Boulder, CO 80301

Bundero Investment Company, L.L.C.
401 Edwards Street, Suite 820
Shreveport, LA 71101

Craft Exploration Company L.L.C.
PO Box 2430
Madison, MS 39130

Dickson Oil & Gas, LLC
P.O. Box 52479
Shreveport, LA 71135

Fant Energy Limited
P.O. Box 55205
Houston, TX 77255

JF Howell Interests, LP
416 Travis Street, Suite 715
Shreveport, LA 71101

JJS Interests Escambia, LLC
4295 San Felipe, Suite 207
Houston, TX 77027

Kudzu Oil Properties, LLC
300 Concourse Blvd., Suite 101
Ridgeland, MS 39157

Landmark Exploration, LLC
P. O. Box 12004
Jackson, MS 39236

Marksco, L.L.C.
333 TX Street, Suite 1050
Shreveport, LA 71101

Pickens Financial Group, LLC
10100 N. Central Expressway, Suite 200
Dallas, TX 75231-4159

Resource Ventures, LLC
8369 SouthPark Lane, Suite B
Littleton, CO 80120

The Rudman Partnership
1700 Pacific Ave., Suite 4200
Dallas, TX 75201-4620

2017   370
Recorded in the Above
Deed   Book & Page
01-17-2017 12:37:57 PM

Tauber Exploration & Production Company
55 Waugh Drive, Suite 600
Houston, TX 77007

Tiembo Ltd.
P. O. Box 270415
Houston, TX  77277-0415

Fletcher Exploration, LLC
P. O.  Box 2147
Fairhope, AL 36533-2147

John C. Nix, Jr.
P.O. Box 807
Milton, FL 32572

Elba Exploration, LLC
P.O. Box 807
Milton, FL 32572

Ed L. Dunn
P.O. Box 94
Milton, FL 32572

William R. Rollo
P.O. Box 894
Milton, FL 32572

Gloria R. Rollo
P.O. Box 894
Milton, FL 32572

Barnes Creek Drilling, LLC
320 Second Street
Columbia, MS 39601

William S. Schrier
320 Second Street
Columbia, MS 39601

John Kabasa
320 Second Street
Columbia, MS 39601

Michael Management, Inc.
P.O. Box 922
Fairhope, AL 36533

Ronnie Fouts
P.O. Box 660566
Birmingham, AL 35266

Spanish Fort Royalty, LLC
P.O. Box 7429
Spanish Fort, AL 36577

Janet F. Dunn
5109 Sandbar Drive
Port St. Joe, FL 32456

2017  371
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM

Central Petroleum, Inc.
733 Hwy 583 SE
Brookhaven, MS 39601

Strago Petroleum Corp.
3209 Hamm Road
Pearland, TX 77581

Roosth 806, Ltd.
P. O. Box 8300
Tyler, TX 75711

Kidd Production, Ltd.
102 North College, Suite 310
Tyler, TX 75702

Steven E. Calhoun
P. O. Box 7621
Tyler, TX 75711

Kwazar Resources, LLC
P. O. Box 7417
Spanish Fort, AL 36577

2017  372
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM

EXHIBIT "A-1"

CCL&T 3-7 #1

Attached to and made a part of that certain Operating Agreement effective June 17, 2016 by and between SKLAR EXPLORATION COMPANY L.L.C. as Operator, and SKLARCO L.L.C. et al., as Non-Operators

## DESCRIPTION OF LEASES

### SKLAR LEASE

1.  Oil, Gas and Mineral Lease with an effective date of May 9, 2015, by and between Cedar Creek Land & Timber, Inc., as Lessor, and Sklarco, LLC, as Lessee, the memorandum of which is recorded in Book 2015, Page 3266, of the Probate Records of Conecuh County, Alabama.

### FLETCHER I LEASES

2.  Oil, Gas and Mineral Lease dated February 13, 2014, by and between Larry J. Findley, as Lessor, and Avery Producing, LLC, as Lessee, recorded in Book 2014, Page 856, of the Conecuh County Probate Records.

3.  Oil, Gas and Mineral Lease dated February 18, 2014, by and between James C. Findley, as Lessor, and Avery Producing, LLC, as Lessee, recorded in Book 2014, Page 854, of the Conecuh County Probate Records.

4.  Oil, Gas and Mineral Lease dated February 18, 2014, by and between Robert A. Findley, as Lessor, and Avery Producing, LLC, as Lessee, recorded in Book 2014, Page 2486, of the Conecuh County Probate Records.

### FLETCHER II LEASE

5.  Oil, Gas and Mineral Lease dated December 14, 2012, by and between Bama Land and Timber Company, Inc., as Lessor, and Suncreek Energy, LLC, as Lessee, recorded in Book 2013, Page 852, of the Conecuh County Probate Records, and extended pursuant to instrument dated December 1, 2015, recorded in Book 2015, Page 5972, of said Records.

### KIDD LEASE

6.  Oil, Gas and Mineral Lease dated April 18, 2011, by and between Berryhill Farms, Inc., as Lessor, and Trant L. Kidd, as Lessee, recorded in Book 2011, Page 1790, of the Conecuh County Probate Records, and extended pursuant to instrument dated March 20, 2015, recorded in Book 2015, Page 2744, of said Records.

INSOFAR AND ONLY INSOFAR AS SAID OIL, GAS AND MINERAL LEASES COVER ACREAGE LYING WITHIN THE NORTHEAST QUARTER (NE/4) OF SECTION 3, TOWNSHIP 3 NORTH, RANGE 13 EAST, CONECUH COUNTY, ALABAMA.

EXHIBIT "A-2"

CCL&T 3-7 #1

2017  373
Recorded in the Above
Deed  Book & Page
01-17-2017 12:37:57 PM
Rosene Booker, Probate Judge
Conecuh County, Alabama

Attached to and made part of that certain Operating Agreement effective June 17, 2016, by and between SKLAR EXPLORATION COMPANY L.L.C., as Operator, and SKLARCO, L.L.C. et al., as Non-Operators



WELL LOCATION
FOR
**SKLAR EXPLORATION COMPANY L.L.C.**
SECTION 3, T3N – R13E
CONECUH COUNTY, ALABAMA

BY

ENGINEERING SERVICE – MOBILE, ALABAMA

DRILLING UNIT: NE/4  ±160 Ac.

NOTE:
Coordinates Based On Transverse
Mercator–Alabama West Zone, NAD27.

OCTOBER 1, 2014;  REV. 04/20/16;
REV. 05/04/16;  REV. 05/13/16

Conecuh County, Alabama
I certify this instrument was filed on
01-17-2017 12:37:57 PM
and recorded in Deed Book
2017 at pages 302 - 373
Rosene Booker, Probate Judge


Book/Pg: 2017/302
Term/Cashier: CONECUHS-PC / crl
Tran: 13969.69460.86377
Recorded: 01-17-2017 12:48:13
INF Indexing Fee (Computer Fnd)     5.00
NTX NO TAX COLLECTED                0.00
REC Recording Fee                 216.00
Total Fees:  $ 221.00

A.A.P.L. FORM 610-1982

# MODEL FORM OPERATING AGREEMENT

### Cedar Creek Land & Timber 3-7 #1 Well
### NE ¼, Section 3
### Township 3 North, Range 13 East
### Conecuh County, Alabama

OPERATING AGREEMENT

DATED

_____June 17_____ , __2016__ ,
*year*

OPERATOR   **Sklar Exploration Company L.L.C.**

CONTRACT AREA   **As shown on Exhibit "A" to this Agreement**

COUNTY OR PARISH OF   **Conecuh**                STATE OF      **Alabama**

COPYRIGHT 1982 – ALL RIGHTS RESERVED
AMERICAN ASSOCIATION OF PETROLEUM
LANDMEN, 4100 FOSSIL CREEK BLVD., FORT
WORTH, TEXAS, 76137-2791, APPROVED
FORM. A.A.P.L. NO. 610 – 1982 REVISED

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

## TABLE OF CONTENTS

| Article | Title | Page |
|---|---|---|
| I. | DEFINITIONS | 1 |
| II. | EXHIBITS | 1 |
| III. | INTERESTS OF PARTIES | 2 |
| | A. OIL AND GAS INTERESTS | 2 |
| | B. INTERESTS OF PARTIES IN COSTS AND PRODUCTION | 2 |
| | C. EXCESS ROYALTIES, OVERRIDING ROYALTIES AND OTHER PAYMENTS | 2 |
| | D. SUBSEQUENTLY CREATED INTERESTS | 2 |
| IV. | TITLES | 2 |
| | A. TITLE EXAMINATION | 2-3 |
| | B. LOSS OF TITLE | 3 |
| | 1. Failure of Title | 3 |
| | 2. Loss by Non-Payment or Erroneous Payment of Amount Due | 3 |
| | 3. Other Losses | 3 |
| V. | OPERATOR | 4 |
| | A. DESIGNATION AND RESPONSIBILITIES OF OPERATOR | 4 |
| | B. RESIGNATION OR REMOVAL OF OPERATOR AND SELECTION OF SUCCESSOR | 4 |
| | 1. Resignation or Removal of Operator | 4 |
| | 2. Selection of Successor Operator | 4 |
| | C. EMPLOYEES | 4 |
| | D. DRILLING CONTRACTS | 4 |
| VI. | DRILLING AND DEVELOPMENT | 4 |
| | A. INITIAL WELL | 4-5 |
| | B. SUBSEQUENT OPERATIONS | 5 |
| | 1. Proposed Operations | 5 |
| | 2. Operations by Less than All Parties | 5-6-7 |
| | 3. Stand-By Time | 7 |
| | 4. Sidetracking | 7 |
| | C. TAKING PRODUCTION IN KIND | 7 |
| | D. ACCESS TO CONTRACT AREA AND INFORMATION | 8 |
| | E. ABANDONMENT OF WELLS | 8 |
| | 1. Abandonment of Dry Holes | 8 |
| | 2. Abandonment of Wells that have Produced | 8-9 |
| | 3. Abandonment of Non-Consent Operations | 9 |
| VII. | EXPENDITURES AND LIABILITY OF PARTIES | 9 |
| | A. LIABILITY OF PARTIES | 9 |
| | B. LIENS AND PAYMENT DEFAULTS | 9 |
| | C. PAYMENTS AND ACCOUNTING | 9 |
| | D. LIMITATION OF EXPENDITURES | 9-10 |
| | 1. Drill or Deepen | 9-10 |
| | 2. Rework or Plug Back | 10 |
| | 3. Other Operations | 10 |
| | E. RENTALS, SHUT-IN WELL PAYMENTS AND MINIMUM ROYALTIES | 10 |
| | F. TAXES | 10 |
| | G. INSURANCE | 11 |
| VIII. | ACQUISITION, MAINTENANCE OR TRANSFER OF INTEREST | 11 |
| | A. SURRENDER OF LEASES | 11 |
| | B. RENEWAL OR EXTENSION OF LEASES | 11 |
| | C. ACREAGE OR CASH CONTRIBUTIONS | 11-12 |
| | D. MAINTENANCE OF UNIFORM INTEREST | 12 |
| | E. WAIVER OF RIGHTS TO PARTITION | 12 |
| | F. PREFERENTIAL RIGHT TO PURCHASE | 12 |
| IX. | INTERNAL REVENUE CODE ELECTION | 12 |
| X. | CLAIMS AND LAWSUITS | 13 |
| XI. | FORCE MAJEURE | 13 |
| XII. | NOTICES | 13 |
| XIII. | TERM OF AGREEMENT | 13 |
| XIV. | COMPLIANCE WITH LAWS AND REGULATIONS | 14 |
| | A. LAWS, REGULATIONS AND ORDERS | 14 |
| | B. GOVERNING LAW | 14 |
| | C. REGULATORY AGENCIES | 14 |
| XV. | OTHER PROVISIONS | 14 |
| XVI. | MISCELLANEOUS | 15 |

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

1                                    OPERATING AGREEMENT
2
3        THIS AGREEMENT, entered into by and between ___Sklar Exploration Company L.L.C.___
4    _____, hereinafter designated and
5    referred to as "Operator", and the signatory party or parties other than Operator, sometimes hereinafter referred to individually herein
6    as "Non-Operator", and collectively as "Non-Operators".
7
8                                        WITNESSETH:
9
10       WHEREAS, the parties to this agreement are owners of oil and gas leases and/or oil and gas interests in the land identified in
11   Exhibit "A", and the parties hereto have reached an agreement to explore and develop these leases and/or oil and gas interests for the
12   production of oil and gas to the extent and as hereinafter provided.
13
14       NOW, THEREFORE, it is agreed as follows:
15
16                                        ARTICLE I.
17                                        DEFINITIONS
18
19       As used in this agreement, the following words and terms shall have the meanings here ascribed to them:
20       A. The term "oil and gas" shall mean oil, gas, casinghead gas, gas condensate, and all other liquid or gaseous hydrocarbons
21   and other marketable substances produced therewith, unless an intent to limit the inclusiveness of this term is specifically stated.
22       B. The terms "oil and gas lease", "lease" and "leasehold" shall mean the oil and gas leases covering tracts of land
23   lying within the Contract Area which are owned by the parties to this agreement.
24       C. The term "oil and gas interests" shall mean unleased fee and mineral interests in tracts of land lying within the
25   Contract Area which are owned by parties to this agreement.
26       D. The term "Contract Area" shall mean all of the lands, oil and gas leasehold interests and oil and gas interests intended to be
27   developed and operated for oil and gas purposes under this agreement. Such lands, oil and gas leasehold interests and oil and gas interests
28   are described in Exhibit "A".
29       E. The term "drilling unit" shall mean the area fixed for the drilling of one well by order or rule of any state or
30   federal body having authority. If a drilling unit is not fixed by any such rule or order, a drilling unit shall be the drilling unit as establish-
31   ed by the pattern of drilling in the Contract Area or as fixed by express agreement of the Drilling Parties.
32       F. The term "drillsite" shall mean the oil and gas lease or interest on which a proposed well is to be located.
33       G. The terms "Drilling Party" and "Consenting Party" shall mean a party who agrees to join in and pay its share of the cost of
34   any operation conducted under the provisions of this agreement.
35       H. The terms "Non-Drilling Party" and "Non-Consenting Party" shall mean a party who elects not to participate
36   in a proposed operation.
37
38       Unless the context otherwise clearly indicates, words used in the singular include the plural, the plural includes the
39   singular, and the neuter gender includes the masculine and the feminine.
40
41                                        ARTICLE II.
42                                        EXHIBITS
43
44       The following exhibits, as indicated below and attached hereto, are incorporated in and made a part hereof:
45 ☑   A. Exhibit "A", shall include the following information:
46           (1) Identification of lands subject to this agreement,
47           (2) Restrictions, if any, as to depths, formations, or substances,
48           (3) Percentages or fractional interests of parties to this agreement,
49           (4) Oil and gas leases and/or oil and gas interests subject to this agreement,
50           (5) Addresses of parties for notice purposes.
51 ☑   B. Exhibit "B", Form of Lease.
52 ☑   C. Exhibit "C", Accounting Procedure.
53 ☑   D. Exhibit "D", Insurance.
54 ☑   E. Exhibit "E", Gas Balancing Agreement.
55 ☐   ~~F. Exhibit "F", Non-Discrimination and Certification of Non-Segregated Facilities.~~
56 ☐   ~~G. Exhibit "G", Tax Partnership.~~
57       If any provision of any exhibit, except Exhibits "E" ~~and "G"~~, is inconsistent with any provision contained in the body
58   of this agreement, the provisions in the body of this agreement shall prevail.
59
60
61
62
63
64
65
66
67
68
69
70

- 1 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

ARTICLE III.
INTERESTS OF PARTIES

**A.   Oil and Gas Interests:**

If any party owns an oil and gas interest in the Contract Area, that interest shall be treated for all purposes of this agreement and during the term hereof as if it were covered by the form of oil and gas lease attached hereto as Exhibit "B", and the owner thereof shall be deemed to own both the royalty interest reserved in such lease and the interest of the lessee thereunder.

**B.   Interests of Parties in Costs and Production:**

Unless changed by other provisions, all costs and liabilities incurred in operations under this agreement shall be borne and paid, and all equipment and materials acquired in operations on the Contract Area shall be owned, by the parties as their interests are set forth in Exhibit "A". In the same manner, the parties shall also own all production of oil and gas from the Contract Area subject to the **and other burdens, if any, due on its share of production** payment of royalties / to the extent of _____ **twenty-five percent (25%)** _____ which shall be borne as hereinafter set forth.

Regardless of which party has contributed the lease(s) and/or oil and gas interest(s) hereto on which royalty is due and payable, each party entitled to receive a share of production of oil and gas from the Contract Area shall bear and shall pay or deliver, or cause to be paid or delivered, to the extent of its interest in such production, the royalty amount stipulated hereinabove and shall hold the other parties free from any liability therefor. No party shall ever be responsible, however, on a price basis higher than the price received by such party, to any other party's lessor or royalty owner, and if any such other party's lessor or royalty owner should demand and receive settlement on a higher price basis, the party contributing the affected lease shall bear the additional royalty burden attributable to such higher price.

Nothing contained in this Article III.B. shall be deemed an assignment or cross-assignment of interests covered hereby.

**C.   Excess Royalties, Overriding Royalties and Other Payments:**

Unless changed by other provisions, if the interest of any party in any lease covered hereby is subject to any royalty, overriding royalty, production payment or other burden on production in excess of the amount stipulated in Article III.B., such party so burdened shall assume and alone bear all such excess obligations and shall indemnify and hold the other parties hereto harmless from any and all claims and demands for payment asserted by owners of such excess burden.

**D.   Subsequently Created Interests:**

If any party should hereafter create an overriding royalty, production payment or other burden payable out of production attributable to its working interest hereunder, or if such a burden existed prior to this agreement and is not set forth in Exhibit "A", or was not disclosed in writing to all other parties prior to the execution of this agreement by all parties, or is not a jointly acknowledged and accepted obligation of all parties (any such interest being hereinafter referred to as "subsequently created interest" irrespective of the timing of its creation and the party out of whose working interest the subsequently created interest is derived being hereinafter referred to as "burdened party"), and:

1.      If the burdened party is required under this agreement to assign or relinquish to any other party, or parties, all or a portion of its working interest and/or the production attributable thereto, said other party, or parties, shall receive said assignment and/or production free and clear of said subsequently created interest and the burdened party shall indemnify and save said other party, or parties, harmless from any and all claims and demands for payment asserted by owners of the subsequently created interest; and,

2.      If the burdened party fails to pay, when due, its share of expenses chargeable hereunder, all provisions of Article VII.B. shall be enforceable against the subsequently created interest in the same manner as they are enforceable against the working interest of the burdened party.

ARTICLE IV.
TITLES

**A.   Title Examination:**

Title examination shall be made on the drillsite of any proposed well prior to commencement of drilling operations or, if the Drilling Parties so request, title examination shall be made on the leases and/or oil and gas interests included, or planned to be included, in the drilling unit around such well. The opinion will include the ownership of the working interest, minerals, royalty, overriding royalty and production payments under the applicable leases. At the time a well is proposed, each party contributing leases and/or oil and gas interests to the drillsite, or to be included in such drilling unit, shall furnish to Operator all abstracts (including federal lease status reports), title opinions, title papers and curative material in its possession free of charge. All such information not in the possession of or made available to Operator by the parties, but necessary for the examination of the title, shall be obtained by Operator. Operator shall **Upon request, copies** cause title to be examined by attorneys on its staff or by outside attorneys. Copies-/ of all title opinions shall be furnished to each party hereto. The cost incurred by Operator in this title program shall be borne as follows:

☐   Option No. 1:   Costs incurred by Operator in procuring abstracts and title examination (including preliminary, supplemental, shut-in gas royalty opinions and division order title opinions) shall be a part of the administrative overhead as provided in Exhibit "C", and shall not be a direct charge, whether performed by Operator's staff attorneys or by outside attorneys.

- 2 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

**ARTICLE IV**
continued

1  ☑  Option No. 2:  Costs incurred by Operator in procuring abstracts / and fees paid outside attorneys / for title examination
2  (including preliminary, supplemental, shut-in gas royalty opinions and division order title opinions) / shall be borne by the Drilling Parties
3  in the proportion that the interest of each Drilling Party bears to the total interest of all Drilling Parties as such interests appear in Ex-
4  hibit "A". ~~Operator shall make no charge for services rendered by its staff attorneys or other personnel in the performance of the above~~
5  ~~functions.~~
6
7       Each party shall be responsible for securing curative matter and pooling amendments or agreements required in connection
8  with leases or oil and gas interests contributed by such party. Operator shall be responsible for the preparation and recording of pooling
9  designations or declarations as well as the conduct of hearings before governmental agencies for the securing of spacing or pooling orders.
10  This shall not prevent any party from appearing on its own behalf at any such hearing.
11
12      No well shall be drilled on the Contract Area until after (1) the title to the drillsite or drilling unit has been examined as above
13  provided, and (2) the title has been approved by the examining attorney or title has been accepted by ~~all of the parties who are to par-~~
14  ~~ticipate in the drilling of the well.~~ Operator.
15
16  B.   Loss of Title:
17
18      1. Failure of Title:  Should any oil and gas interest or lease, or interest therein, be lost through failure of title, which loss results in a
19  reduction of interest from that shown on Exhibit "A", the party contributing the affected lease or interest shall have ninety (90) days
20  from final determination of title failure to acquire a new lease or other instrument curing the entirety of the title failure, which acquisi-
21  tion will not be subject to Article VIII.B., and failing to do so, this agreement, nevertheless, shall continue in force as to all remaining oil
22  and gas leases and interests: and,
23      (a)  The party whose oil and gas lease or interest is affected by the title failure shall bear alone the entire loss and it shall not be
24  entitled to recover from Operator or the other parties any development or operating costs which it may have theretofore paid or incurred,
25  but there shall be no additional liability on its part to the other parties hereto by reason of such title failure;
26      (b)  There shall be no retroactive adjustment of expenses incurred or revenues received from the operation of the interest which has
27  been lost, but the interests of the parties shall be revised on an acreage basis, as of the time it is determined finally that title failure has oc-
28  curred, so that the interest of the party whose lease or interest is affected by the title failure will thereafter be reduced in the Contract
29  Area by the amount of the interest lost:
30      (c)  If the proportionate interest of the other parties hereto in any producing well theretofore drilled on the Contract Area is
31  increased by reason of the title failure, the party whose title has failed shall receive the proceeds attributable to the increase in such in-
32  terest (less costs and burdens attributable thereto) until it has been reimbursed for unrecovered costs paid by it in connection with such
33  well;
34      (d)  Should any person not a party to this agreement, who is determined to be the owner of any interest in the title which has
35  failed, pay in any manner any part of the cost of operation, development, or equipment, such amount shall be paid to the party or parties
36  who bore the costs which are so refunded;
37      (e)  Any liability to account to a third party for prior production of oil and gas which arises by reason of title failure shall be
38  borne by the party or parties whose title failed in the same proportions in which they shared in such prior production; and,
39      (f)  No charge shall be made to the joint account for legal expenses, fees or salaries, in connection with the defense of the interest
40  claimed by any party hereto, it being the intention of the parties hereto that each shall defend title to its interest and bear all expenses in
41  connection therewith.
42
43  ~~2. Loss by Non-Payment or Erroneous Payment of Amount Due:  If, through mistake or oversight, any rental, shut-in well~~
44  ~~payment, minimum royalty or royalty payment, is not paid or is erroneously paid, and as a result a lease or interest therein terminates,~~
45  ~~there shall be no monetary liability against the party who failed to make such payment. Unless the party who failed to make the required~~
46  ~~payment secures a new lease covering the same interest within ninety (90) days from the discovery of the failure to make proper payment,~~
47  ~~which acquisition will not be subject to Article VIII.B., the interests of the parties shall be revised on an acreage basis, effective as of the~~
48  ~~date of termination of the lease involved, and the party who failed to make proper payment will no longer be credited with an interest in~~
49  ~~the Contract Area on account of ownership of the lease or interest which has terminated. In the event the party who failed to make the~~
50  ~~required payment shall not have been fully reimbursed, at the time of the loss, from the proceeds of the sale of oil and gas attributable to~~
51  ~~the lost interest, calculated on an acreage basis, for the development and operating costs theretofore paid on account of such interest, it~~
52  ~~shall be reimbursed for unrecovered actual costs theretofore paid by it (but not for its share of the cost of any dry hole previously drilled~~
53  ~~or wells previously abandoned) from so much of the following as is necessary to effect reimbursement:~~
54  ~~(a)  Proceeds of oil and gas, less operating expenses, theretofore accrued to the credit of the lost interest, on an acreage basis,~~
55  ~~up to the amount of unrecovered costs;~~
56  ~~(b)  Proceeds, less operating expenses, thereafter accrued attributable to the lost interest on an acreage basis, of that portion of~~
57  ~~oil and gas thereafter produced and marketed (excluding production from any wells thereafter drilled) which, in the absence of such lease~~
58  ~~termination, would be attributable to the lost interest on an acreage basis, up to the amount of unrecovered costs, the proceeds of said~~
59  ~~portion of the oil and gas to be contributed by the other parties in proportion to their respective interest; and,~~
60  ~~(c)  Any monies, up to the amount of unrecovered costs, that may be paid by any party who is, or becomes, the owner of the interest~~
61  ~~lost, for the privilege of participating in the Contract Area or becoming a party to this agreement.~~
62
63      3. Other Losses:  All losses incurred, other than those set forth in Articles IV.B.1. and IV.B.2. above, shall be joint losses
64  and shall be borne by all parties in proportion to their interests. There shall be no readjustment of interests in the remaining portion of
65  the Contract Area.
66  * curative matters and materials
67  ** landmen and consultants
    *** and for applications and hearings
68
69
70

- 3 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

ARTICLE V.
OPERATOR

**A.   Designation and Responsibilities of Operator:**

_____Sklar Exploration Company L.L.C._____ shall be the Operator of the Contract Area, and shall conduct and direct and have full control of all operations on the Contract Area as permitted and required by, and within the limits of this agreement. It shall conduct all such operations in a good and workmanlike manner, but it shall have no liability as Operator to the other parties for losses sustained or liabilities incurred, except such as may result from gross negligence or willful misconduct.

**B.   Resignation or Removal of Operator and Selection of Successor:**

1. Resignation or Removal of Operator:  Operator may resign at any time by giving written notice thereof to Non-Operators. If Operator terminates its legal existence, no longer owns an interest hereunder in the Contract Area, or is no longer capable of serving as Operator, Operator shall be deemed to have resigned without any action by Non-Operators, except the selection of a successor. Operator may be removed if it fails or refuses to carry out its duties hereunder, or becomes insolvent, bankrupt or is placed in receivership, by the affirmative vote of two (2) or more Non-Operators owning a / majority interest based on ownership as shown on Exhibit "A" remaining [51% or greater] after excluding the voting interest of Operator. Such resignation or removal shall not become effective until 7:00 o'clock A.M. on the first day of the calendar month following the expiration of ninety (90) days after the giving of notice of resignation by Operator or action by the Non-Operators to remove Operator, unless a successor Operator has been selected and assumes the duties of Operator at an earlier date. Operator, after effective date of resignation or removal, shall be bound by the terms hereof as a Non-Operator / . [to the extent that Operator owns an interest in the contract area.] A change of a corporate name or structure of Operator or transfer of Operator's interest to any single subsidiary, parent or successor corporation shall not be the basis for removal of Operator.

2. Selection of Successor Operator:  Upon the resignation or removal of Operator, a successor Operator shall be selected by the parties. The successor Operator shall be selected from the parties owning an interest in the Contract Area at the time such successor Operator is selected. The successor Operator shall be selected by the affirmative vote of two (2) or more parties owning a majority / interest [51% or greater] based on ownership as shown on Exhibit "A"; provided, however, if an Operator which has been removed fails to vote or votes only to succeed itself, the successor Operator shall be selected by the affirmative vote of two (2) or more parties owning a majority / interest based [51% or greater] on ownership as shown on Exhibit "A" remaining after excluding the voting interest of the Operator that was removed.

**C.   Employees:**

The number of employees used by Operator in conducting operations hereunder, their selection, and the hours of labor and the compensation for services performed shall be determined by Operator, and all such employees shall be the employees of Operator.

**D.   Drilling Contracts:**

All wells drilled on the Contract Area shall be drilled on a competitive contract basis at the usual rates prevailing in the area. If it so desires, Operator may employ its own tools and equipment in the drilling of wells, but its charges therefor shall not exceed the prevailing rates in the area and the rate of such charges shall be agreed upon by the parties in writing before drilling operations are commenced, and such work shall be performed by Operator under the same terms and conditions as are customary and usual in the area in contracts of independent contractors who are doing work of a similar nature.

ARTICLE VI.
DRILLING AND DEVELOPMENT

**A.   Initial Well:**

Subject to rig availability and approval by the Alabama Oil and Gas Board, on / On or before the ___31st___ day of ___July___ , (year) 2016 , Operator shall / commence the drilling of a well for [use its best efforts to] oil and gas at the following location:
SHL:  1,351' FEL and 1,145 FNL of the NE ¼ of Section 3, Township 3 North, Range 13 East, Conecuh County, Alabama
BHL:  1,434' FEL and 1,341' FSL of the NE ¼ of Section 3, Township 3 North, Range 13 East, Conecuh County, Alabama

and shall thereafter continue the drilling of the well with due diligence to 11,900 feet, measured depth subsurface, or a depth sufficient to test the stratigraphic equivalent of the Smackover formation

unless granite or other practically impenetrable substance or condition in the hole, which renders further drilling impractical, is encountered at a lesser depth, or unless all parties agree to complete or abandon the well at a lesser depth.

Operator shall make reasonable tests of all formations encountered during drilling which give indication of containing oil and gas in quantities sufficient to test, unless this agreement shall be limited in its application to a specific formation or formations, in which event Operator shall be required to test only the formation or formations to which this agreement may apply.

- 4 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

**Page Intentionally Left Blank**

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

### ARTICLE VI
### continued

1    If, in Operator's judgment, the well will not produce oil or gas in paying quantities, and it wishes to plug and abandon the
2  well as a dry hole, the provisions of Article VI.E.1. shall thereafter apply.
3
4
5
6  B.    Subsequent Operations:
7
8    1. Proposed Operations:  Should any party hereto desire to drill any well on the Contract Area other than the well provided
9  for in Article VI.A., or to rework, **reenter, recomplete, sidetrack,** deepen or plug back a dry hole drilled at the joint expense of all parties or a well jointly owned by all
10  the parties and not then producing **or capable of producing** in paying quantities, **reenter, recomplete, sidetrack,** the party desiring to drill, rework, **/** deepen or plug back such a well shall give the
11  other parties written notice of the proposed operation, specifying the work to be performed, the location, proposed depth, objective forma-
12  tion and the estimated cost of the operation. The parties receiving such a notice shall have thirty (30) days after receipt of the notice
13  within which to notify the party wishing to do the work whether they elect to participate in the cost of the proposed operation. If a drill- **within the contract area**
14  ing rig is on location **/** , notice of a proposal to rework, plug back or drill deeper may be given by telephone and the response period shall be
15  limited to forty-eight (48) hours, exclusive of Saturday, Sunday, and legal holidays. Failure of a party receiving such notice to reply within
16  the period above fixed shall constitute an election by that party not to participate in the cost of the proposed operation. Any notice or
17  response given by telephone shall be promptly confirmed in writing.
18
19
20
21    If all parties elect to participate in such a proposed operation, Operator shall, within ninety (90) days after expiration of the notice
22  period of thirty (30) days (or as promptly as possible after the expiration of the forty-eight (48) hour period when a drilling rig is on loca-
23  tion, as the case may be), actually commence the proposed operation and complete it with due diligence at the risk and expense of all par-
24  ties hereto; provided, however, said commencement date may be extended upon written notice of same by Operator to the other parties,
25  for a period of up to thirty (30) additional days if, in the sole opinion of Operator, such additional time is reasonably necessary to obtain
26  permits from governmental authorities, surface rights (including rights-of-way) or appropriate drilling equipment, or to complete title ex-
27  amination or curative matter required for title approval or acceptance. Notwithstanding the force majeure provisions of Article XI, if the
28  actual operation has not been commenced within the time provided (including any extension thereof as specifically permitted herein) and
29  if any party hereto still desires to conduct said operation, written notice proposing same must be resubmitted to the other parties in accor-
30  dance with the provisions hereof as if no prior proposal had been made.
31
32
33
34    2. Operations by Less than All Parties:  If any party receiving such notice as provided in Article VI.B.1. or VII.D.1. (Option
35  No. 2) elects not to participate in the proposed operation, then, in order to be entitled to the benefits of this Article, the party or parties
36  giving the notice and such other parties as shall elect to participate in the operation shall, within ninety (90) days after the expiration of
37  the notice period of thirty (30) days (or as promptly as possible after the expiration of the forty-eight (48) hour period when a drilling rig is
38  on location, as the case may be) actually commence the proposed operation and complete it with due diligence. Operator shall perform all
39  work for the account of the Consenting Parties; provided, however, if no drilling rig or other equipment is on location, and if Operator is
40  a Non-Consenting Party, the Consenting Parties shall either: (a) request Operator to perform the work required by such proposed opera-
41  tion for the account of the Consenting Parties, or (b) designate one (1) of the Consenting Parties as Operator to perform such work. Con-
42  senting Parties, when conducting operations on the Contract Area pursuant to this Article VI.B.2., shall comply with all terms and con-
43  ditions of this agreement.
44
45
46
47    If less than all parties approve any proposed operation, the proposing party, immediately after the expiration of the applicable
48  notice period, shall advise the Consenting Parties of the total interest of the parties approving such operation and its recommendation as
49  to whether the Consenting Parties should proceed with the operation as proposed. Each Consenting Party, within forty-eight (48) hours
50  (exclusive of Saturday, Sunday and legal holidays) after receipt of such notice, shall advise the proposing party of its desire to (a) limit par-
51  ticipation to such party's interest as shown on Exhibit "A" or (b) carry its proportionate part of Non-Consenting Parties' interests, and
52  failure to advise the proposing party shall be deemed an election under (a). In the event a drilling rig is on location, the time permitted for
53  such a response shall not exceed a total of forty-eight (48) hours (inclusive of Saturday, Sunday and legal holidays). The proposing party,
54  at its election, may withdraw such proposal if there is insufficient participation and shall promptly notify all parties of such decision.
55
56
57
58    The entire cost and risk of conducting such operations shall be borne by the Consenting Parties in the proportions they have
59  elected to bear same under the terms of the preceding paragraph. Consenting Parties shall keep the leasehold estates involved in such
60  operations free and clear of all liens and encumbrances of every kind created by or arising from the operations of the Consenting Parties.
61  If such an operation results in a dry hole, the Consenting Parties shall plug and abandon the well and restore the surface location at their
62  sole cost, risk and expense. If any well drilled, **/** reworked, **recompleted, sidetracked,** deepened or plugged back under the provisions of this Article results in a pro-
63  ducer of oil and/or gas in paying quantities, the Consenting Parties shall complete and equip the well to produce at their sole cost and risk.
64
65
66
67
68
69
70

- 5 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

### ARTICLE VI
continued

1 and the well shall then be turned over to Operator and shall be operated by it at the expense and for the account of the Consenting Par-
2 ties. Upon commencement of operations for the drilling, reworking, deepening or plugging back of any such well by Consenting Parties
2a recompleting, sidetracking
3 in accordance with the provisions of this Article, each Non-Consenting Party shall be deemed to have relinquished to Consenting Parties,
4 and the Consenting Parties shall own and be entitled to receive, in proportion to their respective interests, all of such Non-Consenting
5 Party's interest in the well and share of production therefrom until the proceeds of the sale of such share, calculated at the well, or
6 market value thereof if such share is not sold, (after deducting production taxes, excise taxes, royalty, overriding royalty and other in-
6a severance taxes, windfall profit taxes, similar taxes,
7 terests not excepted by Article III.D. payable out of or measured by the production from such well accruing with respect to such interest
8 until it reverts) shall equal the total of the following:

9

10

11

12        (a)  100% of each such Non-Consenting Party's share of the cost of any newly acquired surface equipment beyond the wellhead
13 connections (including, but not limited to, stock tanks, separators, treaters, pumping equipment and piping), plus 100% of each such
14 Non-Consenting Party's share of the cost of operation of the well commencing with first production and continuing until each such Non-
15 Consenting Party's relinquished interest shall revert to it under other provisions of this Article, it being agreed that each Non-
16 Consenting Party's share of such costs and equipment will be that interest which would have been chargeable to such Non-Consenting
17 Party had it participated in the well from the beginning of the operations; and

18

19

20

21        (b)  ____500____ % of that portion of the costs and expenses of drilling, reworking, deepening, plugging back, testing and completing,
21a recompleting, sidetracking
22 after deducting any cash contributions received under Article VIII.C., and _____500_____ % of that portion of the cost of newly acquired equip-
23 ment in the well (to and including the wellhead connections), which would have been chargeable to such Non-Consenting Party if it had
24 participated therein.

25

26

27

28        An election not to participate in the drilling or the deepening of a well shall be deemed an election not to participate in any re-
28a recompleting, sidetracking
29 working / or plugging back operation proposed in such a well, or portion thereof, to which the initial Non-Consent election applied that is
30 conducted at any time prior to full recovery by the Consenting Parties of the Non-Consenting Party's recoupment account. Any such
30a recompleting, sidetracking
31 reworking / or plugging back operation conducted during the recoupment period shall be deemed part of the cost of operation of said well
31a recompleting, sidetracking
31b five
32 and there shall be added to the sums to be recouped by the Consenting Parties / one hundred percent / (100%) of that portion of the costs of
32a (500%)
33 the reworking / or plugging back operation which would have been chargeable to such Non-Consenting Party had it participated therein. If
33a recompleting, sidetracking
34 such a reworking / or plugging back operation is proposed during such recoupment period, the provisions of this Article VI.B. shall be ap-
34a recompleting, sidetracking
35 plicable as between said Consenting Parties in said well.

36

37

38

39        During the period of time Consenting Parties are entitled to receive Non-Consenting Party's share of production, or the
40 proceeds therefrom, Consenting Parties shall be responsible for the payment of all production, severance, excise, gathering and other
41 taxes, and all royalty, overriding royalty and other burdens applicable to Non-Consenting Party's share of production not excepted by Ar-
42 ticle III.D.

43

44

45

46        In the case of any reworking, plugging back or deeper drilling operation, the Consenting Parties shall be permitted to use, free
46a recompleting, sidetracking
47 of cost, all casing, tubing and other equipment in the well, but the ownership of all such equipment shall remain unchanged; and upon
48 abandonment of a well after such reworking, plugging back or deeper drilling, the Consenting Parties shall account for all such equip-
48a recompleting, sidetracking
49 ment to the owners thereof, with each party receiving its proportionate part in kind or in value, less cost of salvage.

50

51

52

53        Within sixty (60) days after the completion of any operation under this Article, the party conducting the operations for the
54 Consenting Parties shall furnish each Non-Consenting Party with an inventory of the equipment in and connected to the well, and an
55 itemized statement of the cost of drilling, deepening, plugging back, testing, completing, and equipping the well for production; or, at its
56 option, the operating party, in lieu of an itemized statement of such costs of operation, may submit a detailed statement of monthly bill-
57 ings. Each month thereafter, during the time the Consenting Parties are being reimbursed as provided above, the party conducting the
58 operations for the Consenting Parties shall furnish the Non-Consenting Parties with an itemized statement of all costs and liabilities in-
59 curred in the operation of the well, together with a statement of the quantity of oil and gas produced from it and the amount of proceeds
60 realized from the sale of the well's working interest production during the preceding month. In determining the quantity of oil and gas
61 produced during any month, Consenting Parties shall use industry accepted methods such as, but not limited to, metering or periodic
62 well tests. Any amount realized from the sale or other disposition of equipment newly acquired in connection with any such operation
63 which would have been owned by a Non-Consenting Party had it participated therein shall be credited against the total unreturned costs
64 of the work done and of the equipment purchased in determining when the interest of such Non-Consenting Party shall revert to it as
65 above provided; and if there is a credit balance, it shall be paid to such Non-Consenting Party.

66

67

68

69

70

- 6 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

**ARTICLE VI**
**continued**

If and when the Consenting Parties recover from a Non-Consenting Party's relinquished interest the amounts provided for above, the relinquished interests of such Non-Consenting Party shall automatically revert to it, and, from and after such reversion, such Non-Consenting Party shall own the same interest in such well, the material and equipment in or pertaining thereto, and the production therefrom as such Non-Consenting Party would have been entitled to had it participated in the drilling, reworking, / deepening or plugging ^(recompleting, sidetracking) back of said well. Thereafter, such Non-Consenting Party shall be charged with and shall pay its proportionate part of the further costs of the operation of said well in accordance with the terms of this agreement and the Accounting Procedure attached hereto.

Notwithstanding the provisions of this Article VI.B.2., it is agreed that without the mutual consent of all parties, no wells shall be completed in or produced from a source of supply from which a well located elsewhere on the Contract Area is producing, unless such well conforms to the then-existing well spacing pattern for such source of supply; **provided that an exceptional well location that is approved by the State Oil and Gas Board of Alabama shall be deemed to conform to the then-existing spacing pattern.**

The provisions of this Article shall have no application whatsoever to the drilling of the initial well described in Article VI.A. except (a) as to Article VII.D.1. (Option No. 2), if selected, or (b) as to the reworking, / deepening and plugging back of such initial well ^(recompleting, sidetracking,) after it has been drilled to the depth specified in Article VI.A. if it shall thereafter prove to be a dry hole or, if initially completed for production, ceases to produce in paying quantities.

3. Stand-By Time:  When a well which has been drilled or deepened has reached its authorized depth and all tests have been completed, and the results thereof furnished to the parties, stand-by costs incurred pending response to a party's notice proposing a reworking, deepening, plugging back or completing operation in such a well shall be charged and borne as part of the drilling or deepening operation just completed. Stand-by costs subsequent to all parties responding, or expiration of the response time permitted, whichever first occurs, and prior to agreement as to the participating interests of all Consenting Parties pursuant to the terms of the second grammatical paragraph of Article VI.B.2., shall be charged to and borne as part of the proposed operation, but if the proposal is subsequently withdrawn because of insufficient participation, such stand-by costs shall be allocated between the Consenting Parties in the proportion each Consenting Party's interest as shown on Exhibit "A" bears to the total interest as shown on Exhibit "A" of all Consenting Parties.

4. Sidetracking:  Except as hereinafter provided, those provisions of this agreement applicable to a "deepening" operation shall also be applicable to any proposal to directionally control and intentionally deviate a well from vertical so as to change the bottom hole location (herein call "sidetracking"), unless done to straighten the hole or to drill around junk in the hole or because of other mechanical difficulties. Any party having the right to participate in a proposed sidetracking operation that does not own an interest in the affected well bore at the time of the notice shall, upon electing to participate, tender to the well bore owners its proportionate share (equal to its interest in the sidetracking operation) of the value of that portion of the existing well bore to be utilized as follows:

(a) If the proposal is for sidetracking an existing dry hole, reimbursement shall be on the basis of the actual costs incurred in the initial drilling of the well down to the depth at which the sidetracking operation is initiated.

(b) If the proposal is for sidetracking a well which has previously produced, reimbursement shall be on the basis of the well's salvable materials and equipment down to the depth at which the sidetracking operation is initiated, determined in accordance with the provisions of Exhibit "C", less the estimated cost of salvaging and the estimated cost of plugging and abandoning.

In the event that notice for a sidetracking operation is given while the drilling rig to be utilized is on location, the response period shall be limited to forty-eight (48) hours, ~~exclusive~~ ^(inclusive) of Saturday, Sunday and legal holidays; provided, however, any party may request and receive up to eight (8) additional days after expiration of the forty-eight (48) hours within which to respond by paying for all stand-by time incurred during such extended response period. If more than one party elects to take such additional time to respond to the notice, stand by costs shall be allocated between the parties taking additional time to respond on a day-to-day basis in the proportion each electing party's interest as shown on Exhibit "A" bears to the total interest as shown on Exhibit "A" of all the electing parties. In all other instances the response period to a proposal for sidetracking shall be limited to thirty (30) days.

C.  TAKING PRODUCTION IN KIND:

Each party shall / ^(have the right to) take in kind or separately dispose of its proportionate share of all oil and gas produced from the Contract Area, exclusive of production which may be used in development and producing operations and in preparing and treating oil and gas for marketing purposes and production unavoidably lost. Any extra expenditure incurred in the taking in kind or separate disposition by any party of its proportionate share of the production shall be borne by such party. Any party taking its share of production in kind shall be

- 7 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

### ARTICLE VI
### continued

1  required to pay for only its proportionate share of such part of Operator's surface facilities which it uses.
2
3     Each party shall execute such division orders and contracts as may be necessary for the sale of its interest in production from
4  the Contract Area, and, except as provided in Article VII.B., shall be entitled to receive payment directly from the purchaser thereof for
5  its share of all production.
6
7     In the event any party shall fail to make the arrangements necessary to take in kind or separately dispose of its proportionate share of
8  the oil and/or gas produced from the Contract Area, Operator shall have the right, subject to the revocation at will by the party owning it, but not
9  the obligation, to purchase such oil and/or gas or sell it to others at any time and from time to time, for the account of the non-taking party at the
10  best price obtainable in the area for such production. Any such purchase or sale by Operator shall be subject always to the right of the
11  owner of the production to exercise at any time its right to take in kind, or separately dispose of, its share of all oil and/or gas not previously
12  delivered to a purchaser. Any purchase or sale by Operator of any other party's share of oil and/or gas shall be only for such reasonable periods of
13  time as are consistent with the minimum needs of the industry under the particular circumstances, but in no event for a period in excess
14  of one (1) year.
15
16     In the event one or more parties' separate disposition of its share of the gas causes split-stream sales or deliveries to separate pipelines and/or
17  deliveries which on a day-to-day basis for any reason are not exactly equal to a party's respective proportionate share of total gas sales to
18  be allocated to it, the balancing or accounting between the respective accounts of the parties shall be in accordance with any gas balancing
19  agreement between the parties hereto, whether such an agreement is attached as Exhibit "E", or is a separate agreement.
20
21  D.   Access to Contract Area and Information:
22
23     Each consenting party shall have access to the Contract Area at all reasonable times, at its sole cost and risk to inspect or observe operations,
24  and shall have access at reasonable times to information pertaining to the development or operation thereof, including Operator's books
25  and records relating thereto. Operator, upon request, shall furnish each of the other parties with copies of all forms or reports filed with
26  governmental agencies, daily drilling reports, well logs, tank tables, daily gauge and run tickets and reports of stock on hand at the first of
27  each month, and shall make available samples of any cores or cuttings taken from any well drilled on the Contract Area. The cost of
28  gathering and furnishing information to Non-Operator, other than that specified above, shall be charged to the Non-Operator that re-
29  quests the Information.
30
31  E.   Abandonment of Wells:
32
33     1. Abandonment of Dry Holes:  Except for any well drilled or deepened pursuant to Article VI.B.2., any well which has been
34  drilled or deepened under the terms of this agreement and is proposed to be completed as a dry hole shall not be plugged and abandoned
35  without the consent of all parties. Should Operator, after diligent effort, be unable to contact any party, or should any party fail to reply
36  within forty-eight (48) hours inclusive exclusive of Saturday, Sunday and legal holidays) after receipt of notice of the proposal to plug and abandon
37  such well, such party shall be deemed to have consented to the proposed abandonment. All such wells shall be plugged and abandoned in
38  accordance with applicable regulations and at the cost, risk and expense of the parties who participated in the cost of drilling or deepening
39  such well. Any party who objects to plugging and abandoning such well shall immediately have the right to take over the well and conduct further
40  operations in search of oil and/or gas subject to the provisions of Article VI.B. at such party's sole cost, risk and expense.
41
42     2. Abandonment of Wells that have Produced:  Except for any well in which a Non-Consent operation has been conducted
43  hereunder for which the Consenting Parties have not been fully reimbursed as herein provided, any well which has been completed as a
44  producer shall not be plugged and abandoned without the consent of all parties who have a present working interest in such well. If all parties consent to such abandonment, the well shall
45  be plugged and abandoned in accordance with applicable regulations and at the cost, risk and expense of all the parties hereto. If, within
46  thirty (30) days or within forty-eight (48) hours if a rig is on location after receipt of notice of the proposed abandonment of any well, all parties do not agree to the abandonment of such well,
47  those wishing to continue its operation from the interval(s) of the formation(s) then open to production shall tender to each of the other
48  parties its proportionate share of the value of the well's salvable material and equipment, determined in accordance with the provisions of
49  Exhibit "C", less the estimated cost of salvaging and the estimated cost of plugging and abandoning. Failure to respond to said notice shall constitute an election to plug and abandon said well. Each abandoning party shall assign
50  the non-abandoning parties, without warranty, express or implied, as to title or as to quantity, or fitness for use of the equipment and
51  material, all of its interest in the well and related equipment, together with its interest in the leasehold estate as to, but only as to, the in-
52  terval or intervals of the formation or formations then open to production. If the interest of the abandoning party is or includes an oil and
53  gas interest, such party shall execute and deliver to the non-abandoning party or parties an oil and gas lease, limited to the interval or in-
54  tervals of the formation or formations then open to production, for a term of one (1) year and so long thereafter as oil and/or gas is pro-
55  duced from the interval or intervals of the formation or formations covered thereby, such lease to be on the form attached as Exhibit
56
57  * Failure of a party to respond within the thirty (30) day period provided for the proposed abandonment (or within forty-eight (48) hours if a rig is on location) shall be deemed an election by the party to participate in the abandonment of such well.
58
59
60
61
62
63
64
65
66
67
68
69
70

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

ARTICLE VI
continued

required to pay for only its proportionate share of such part of Operator's surface facilities which it uses.

Each party shall execute such division orders and contracts as may be necessary for the sale of its interest in production from the Contract Area, and, except as provided in Article VII.B., shall be entitled to receive payment directly from the purchaser thereof for its share of all production.

In the event any party shall fail to make the arrangements necessary to take in kind or separately dispose of its proportionate share of the oil and gas produced from the Contract Area, Operator shall have the right, subject to the revocation at will by the party owning it, but not the obligation, to purchase such oil and gas or sell it to others at any time and from time to time, for the account of the non-taking party at the best price obtainable in the area for such production. Any such purchase or sale by Operator shall be subject always to the right of the owner of the production to exercise at any time its right to take in kind, or separately dispose of, its share of all oil and gas not previously delivered to a purchaser. Any purchase or sale by Operator of any other party's share of oil and gas shall be only for such reasonable periods of time as are consistent with the minimum needs of the industry under the particular circumstances, but in no event for a period in excess of one (1) year. Notwithstanding the foregoing, Operator shall not make a sale, including one into interstate commerce, of any other party's share of gas production without first giving such other party thirty (30) days notice of such intended sale.

D.    Access to Contract Area and Information:

Each party shall have access to the Contract Area at all reasonable times, at its sole cost and risk to inspect or observe operations, and shall have access at reasonable times to information pertaining to the development or operation thereof, including Operator's books and records relating thereto. Operator, upon request, shall furnish each of the other parties with copies of all forms or reports filed with governmental agencies, daily drilling reports, well logs, tank tables, daily gauge and run tickets and reports of stock on hand at the first of each month, and shall make available samples of any cores or cuttings taken from any well drilled on the Contract Area. The cost of gathering and furnishing information to Non-Operator, other than that specified above, shall be charged to the Non-Operator that requests the Information.

E.    Abandonment of Wells:

1. Abandonment of Dry Holes. Except for any well drilled or deepened pursuant to Article VI.B.2., any well which has been drilled or deepened under the terms of this agreement and is proposed to be completed as a dry hole shall not be plugged and abandoned without the consent of all parties. Should Operator, after diligent effort, be unable to contact any party, or should any party fail to reply within forty-eight (48) hours (exclusive of Saturday, Sunday and legal holidays) after receipt of notice of the proposal to plug and abandon such well, such party shall be deemed to have consented to the proposed abandonment. All such wells shall be plugged and abandoned in accordance with applicable regulations and at the cost, risk and expense of the parties who participated in the cost of drilling or deepening such well. Any party who objects to plugging and abandoning such well shall have the right to take over the well and conduct further operations in search of oil and/or gas subject to the provisions of Article VI.B.

2. Abandonment of Wells that have Produced. Except for any well in which a Non-Consent operation has been conducted hereunder for which the Consenting Parties have not been fully reimbursed as herein provided, any well which has been completed as a producer shall not be plugged and abandoned without the consent of all parties. If all parties consent to such abandonment, the well shall be plugged and abandoned in accordance with applicable regulations and at the cost, risk and expense of all the parties hereto. If, within thirty (30) days after receipt of notice of the proposed abandonment of such well, all parties do not agree to the abandonment of such well, those wishing to continue its use from the interval(s) of the formation(s) then open to production shall tender to each of the other parties its proportionate share of the value of the well's salvable material and equipment, determined in accordance with the provisions of Exhibit "C", less the estimated cost of salvaging and the estimated cost of plugging and abandoning. Each abandoning party shall assign the non-abandoning parties, without warranty, express or implied, as to title or as to quantity, or fitness for use of the equipment and material, all of its interest in the well and related equipment, together with its interest in the leasehold estate as to, but only as to, the interval or intervals of the formation or formations then open to production. If the interest of the abandoning party is or includes an oil and gas interest, such party shall execute and deliver to the non-abandoning party or parties an oil and gas lease, limited to the interval or intervals of the formation or formations then open to production, for a term of one (1) year and so long thereafter as oil and/or gas is produced from the interval or intervals of the formation or formations covered thereby, such lease to be on the form attached as Exhibit

- 8 alternate -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

### ARTICLE VI
### continued

"B". The assignments or leases so limited shall encompass the "drilling unit" upon which the well is located. The payments by, and the assignments or leases to, the assignees shall be in a ratio based upon the relationship of their respective percentage of participation in the Contract Area to the aggregate of the percentages of participation in the Contract Area of all assignees. There shall be no readjustment of interests in the remaining portion of the Contract Area.

Thereafter, abandoning parties shall have no further responsibility, liability, or interest in the operation of or production from the well in the interval or intervals then open other than the royalties retained in any lease made under the terms of this Article. Upon request, Operator shall continue to operate the assigned well for the account of the non-abandoning parties at the rates and charges contemplated by this agreement, plus any additional cost and charges which may arise as the result of the separate ownership of the assigned well. Upon proposed abandonment of the producing interval(s) assigned or leased, the assignor or lessor shall then have the option to repurchase its prior interest in the well (using the same valuation formula) and participate in further operations therein subject to the provisions hereof.

3. Abandonment of Non-Consent Operations: The provisions of Article VI.E.1. or VI.E.2 above shall be applicable as between Consenting Parties in the event of the proposed abandonment of any well excepted from said Articles; provided, however, no well shall be permanently plugged and abandoned unless and until all parties having the right to conduct further operations therein have been notified of the proposed abandonment and afforded the opportunity to elect to take over the well in accordance with the provisions of this Article VI.E.

### ARTICLE VII.
### EXPENDITURES AND LIABILITY OF PARTIES

**A.   Liability of Parties:**

The liability of the parties shall be several, not joint or collective. Each party shall be responsible only for its obligations, and shall be liable only for its proportionate share of the costs of developing and operating the Contract Area. Accordingly, the liens granted among the parties in Article VII.B. are given to secure only the debts of each severally. It is not the intention of the parties to create, nor shall this agreement be construed as creating, a mining or other partnership or association, or to render the parties liable as partners.

**B.   Liens and Payment Defaults:**

Each Non-Operator grants to Operator a lien upon its oil and gas rights in the Contract Area, and a security interest in its share of oil and/or gas when extracted and its interest in all equipment, to secure payment of its share of expense, together with interest thereon at the rate provided in Exhibit "C". To the extent that Operator has a security interest under the Uniform Commercial Code of the state, Operator shall be entitled to exercise the rights and remedies of a secured party under the Code. The bringing of a suit and the obtaining of judgment by Operator for the secured indebtedness shall not be deemed an election of remedies or otherwise affect the lien rights or security interest as security for the payment thereof. In addition, upon default by any Non-Operator in the payment of its share of expense, Operator shall have the right, without prejudice to other rights or remedies, to collect from the purchaser the proceeds from the sale of such Non-Operator's share of oil and/or gas until the amount owed by such Non-Operator, plus interest, has been paid. Each purchaser shall be entitled to rely upon Operator's written statement concerning the amount of any default. Operator grants a like lien and security interest to the Non-Operators to secure payment of Operator's proportionate share of expense.

~~If any party fails or is unable to pay its share of expense within sixty (60) days after rendition of a statement therefor by Operator, the non-defaulting parties, including Operator, shall, upon request by Operator, pay the unpaid amount in the proportion that the interest of each such party bears to the interest of all such parties. Each party so paying its share of the unpaid amount shall, to obtain reimbursement thereof, be subrogated to the security rights described in the foregoing paragraph.~~

**C.   Payments and Accounting:**

Except as herein otherwise specifically provided, Operator shall promptly pay and discharge expenses incurred in the development and operation of the Contract Area pursuant to this agreement and shall charge each of the parties hereto with their respective proportionate shares upon the expense basis provided in Exhibit "C". Operator shall keep an accurate record of the joint account hereunder, showing expenses incurred and charges and credits made and received.

Operator, at its election, shall have the right from time to time to demand and receive from the other parties payment in advance of their respective shares of the estimated amount of the expense to be incurred in operations hereunder during the next succeeding month, which right may be exercised only by submission to each such party of an itemized statement of such estimated expense, together with an invoice for its share thereof. ~~Each such statement and invoice for the payment in advance of estimated expense shall be submitted on or before the 20th day of the next preceding month.~~ Each party shall pay to Operator its proportionate share of such estimate within ~~fifteen (15)~~ ten (10) days after such estimate and invoice is received. If any party fails to pay its share of said estimate within said time, the amount due shall bear interest as provided in Exhibit "C" until paid. Proper adjustment shall be made monthly between advances and actual expense to the end that each party shall bear and pay its proportionate share of actual expenses incurred, and no more.

**D.   Limitation of Expenditures:**

1. Drill or Deepen: Without the consent of all parties, no well shall be drilled or deepened, except any well drilled or deepened pursuant to the provisions of Article VI.B.2. of this agreement. Consent to the drilling or deepening shall include:

- 9 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

**ARTICLE VII**

**continued**

1 ☐  ~~Option No. 1: All necessary expenditures for the drilling or deepening, testing, completing and equipping of the well, including~~
2 ~~necessary tankage and/or surface facilities.~~
3
4 ☑   Option No. 2:  All necessary expenditures for the drilling or deepening and testing of the well. When such well has reached its
5 authorized depth, and all tests have been completed, and the results thereof / furnished to the parties, Operator shall give immediate notice
  (including all logs)
6 to the Non-Operators who have the right to participate in the completion costs. The parties receiving such notice shall have forty-eight
7 (48) hours (exclusive of Saturday, Sunday and legal holidays) in which to elect to participate in the setting of casing and the completion at-
8 tempt. Such election, when made, shall include consent to all necessary expenditures for the completing and equipping of such well, in-
9 cluding necessary tankage and/or surface facilities. Failure of any party receiving such notice to reply within the period above fixed shall
10 constitute an election by that party not to participate in the cost of the completion attempt. If one or more, but less than all of the parties,
11 elect to set pipe and to attempt a completion, the provisions of Article VI.B.2. hereof (the phrase "reworking, / deepening or plugging
                                                                                                              recompleting, sidetracking,
12 back" as contained in Article VI.B.2. shall be deemed to include "completing") shall apply to the operations thereafter conducted by less
13 than all parties.
14
15    2. Rework or Plug Back:  Without the consent of all parties, no well shall be reworked or plugged back except a well reworked or
16 plugged back pursuant to the provisions of Article VI.B.2. of this agreement. Consent to the reworking or plugging back of a well shall
17 include all necessary expenditures in conducting such operations and completing and equipping of said well, including necessary tankage
18 and/or surface facilities.
19
20    3. Other Operations:  Without the consent of all parties, Operator shall not undertake any single project reasonably estimated
21 to require an expenditure in excess of _____Fifty Thousand and No/100 --------------------- Dollars ($_____50,000.00_____)
                                                                 sidetracking,
22 except in connection with a well, the drilling, reworking, / deepening, completing, recompleting, or plugging back of which has been
23 previously authorized by or pursuant to this agreement; provided, however, that, in case of explosion, fire, flood or other sudden
24 emergency, whether of the same or different nature, Operator may take such steps and incur such expenses as in its opinion are required
25 to deal with the emergency to safeguard life and property but Operator, as promptly as possible, shall report the emergency to the other
26 parties. If Operator prepares an authority for expenditure (AFE) for its own use, Operator shall furnish any Non-Operator so requesting
27 an information copy thereof for any single project costing in excess of_____Fifty Thousand and No/100 ---------------------------
28 Dollars ($_____50,000.00_____) but less than the amount first set forth above in this paragraph.
29
30 E.  Rentals, Shut-in Well Payments and Minimum Royalties:
31
32    Rentals, shut-in well payments and minimum royalties which may be required under the terms of any lease shall be paid by the
33 party or parties who subjected such lease to this agreement at its or their expense. In the event two or more parties own and have con-
34 tributed interests in the same lease to this agreement, such parties may designate one of such parties as Operator for and on
35 behalf of all such parties. Any party may request, and shall be entitled to receive, proper evidence of all such payments. In the event of
36 failure to make proper payment of any rental, shut-in well payment or minimum royalty through mistake or oversight where such pay-
37 ment is required to continue the lease in force, any loss which results from such non-payment shall be borne in accordance with the pro-
38 visions of Article IV.B.2.
39
40    Operator shall notify Non-Operator of the anticipated completion of a shut-in gas well, or the shutting in or return to production
41 of a producing gas well, at least five (5) days (excluding Saturday, Sunday and legal holidays), or at the earliest opportunity permitted by
42 circumstances, prior to taking such action, but assumes no liability for failure to do so. In the event of failure by Operator to so notify
43 Non-Operator, the loss of any lease contributed hereto by Non-Operator for failure to make timely payments of any shut-in well payment
44 shall be borne jointly by the parties hereto under the provisions of Article IV.B.3.
45
46 F.  Taxes:
47
48    Beginning with the first calendar year after the effective date hereof, Operator shall render for ad valorem taxation all property
49 subject to this agreement which by law should be rendered for such taxes, and it shall pay all such taxes assessed thereon before they
50 become delinquent. Prior to the rendition date, each Non-Operator shall furnish Operator information as to burdens (to include, but not
51 be limited to, royalties, overriding royalties and production payments) on leases and oil and gas interests contributed by such Non-
52 Operator. If the assessed valuation of any leasehold estate is reduced by reason of its being subject to outstanding excess royalties, over-
53 riding royalties or production payments, the reduction in ad valorem taxes resulting therefrom shall inure to the benefit of the owner or
54 owners of such leasehold estate, and Operator shall adjust the charge to such owner or owners so as to reflect the benefit of such reduc-
55 tion. If the ad valorem taxes are based in whole or in part upon separate valuations of each party's working interest, then notwithstanding
56 anything to the contrary herein, charges to the joint account shall be made and paid by the parties hereto in accordance with the tax
57 value generated by each party's working interest. Operator shall bill the other parties for their proportionate shares of all tax payments in
58 the manner provided in Exhibit "C".
59
60    If Operator considers any tax assessment improper,  Operator may, at its discretion, protest within the time and manner
61 prescribed by law, and prosecute the protest to a final determination, unless all parties agree to abandon the protest prior to final deter-
62 mination. During the pendency of administrative or judicial proceedings, Operator may elect to pay, under protest, all such taxes and any
63 interest and penalty. When any such protested assessment shall have been finally determined, Operator shall pay the tax for the joint ac-
64 count, together with any interest and penalty accrued, and the total cost shall then be assessed against the parties, and be paid by them, as
65 provided in Exhibit "C".
66
67    Each party shall pay or cause to be paid all production, severance, excise, gathering and other taxes imposed upon or with respect
68 to the production or handling of such party's share of oil and/or gas produced under the terms of this agreement.
69
70

- 10 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

ARTICLE VII
continued

1 G.    Insurance:
2
3       At all times while operations are conducted hereunder, Operator shall comply with the workmen's compensation law of
4 the state where the operations are being conducted; provided, however, that Operator may be a self-insurer for liability under said com-
5 pensation laws in which event the only charge that shall be made to the joint account shall be as provided in Exhibit "C". Operator shall
6 also carry or provide insurance for the benefit of the joint account of the parties as outlined in Exhibit "D", attached to and made a part
7 hereof. Operator shall require all contractors engaged in work on or for the Contract Area to comply with the workmen's compensation
8 law of the state where the operations are being conducted and to maintain such other insurance as Operator may require.
9
10      In the event automobile public liability insurance is specified in said Exhibit "D", or subsequently receives the approval of the
11 parties, no direct charge shall be made by Operator for premiums paid for such insurance for Operator's automotive equipment.
12
13                              ARTICLE VIII.
14              ACQUISITION, MAINTENANCE OR TRANSFER OF INTEREST
15
16 A.    Surrender of Leases:
17
18      The leases covered by this agreement, insofar as they embrace acreage in the Contract Area, shall not be surrendered in whole
19 or in part unless all parties consent thereto.
20
21      However, should any party desire to surrender its interest in any lease or in any portion thereof, and the other parties do not
22 agree or consent thereto, the party desiring to surrender shall assign, without express or implied warranty of title, all of its interest in
23 such lease, or portion thereof, and any well, material and equipment which may be located thereon and any rights in production
24 thereafter accrued, to the parties not consenting to such surrender. If the interest of the assigning party is or includes an oil and gas in-
25 terest, the assigning party shall execute and deliver to the party or parties not consenting to such surrender an oil and gas lease covering
26 such oil and gas interest for a term of one (1) year and so long thereafter as oil and/or gas is produced from the land covered thereby, such
27 lease to be on the form attached hereto as Exhibit "B". Upon such assignment or lease, the assigning party shall be relieved from all
28 obligations thereafter accruing, but not theretofore accrued, with respect to the interest assigned or leased and the operation of any well
29 attributable thereto, and the assigning party shall have no further interest in the assigned or leased premises and its equipment and pro-
30 duction other than the royalties retained in any lease made under the terms of this Article. The party assignee or lessee shall pay to the
31 party assignor or lessor the reasonable salvage value of the latter's interest in any wells and equipment attributable to the assigned or leas-
32 ed acreage. The value of all material shall be determined in accordance with the provisions of Exhibit "C", less the estimated cost of
33 salvaging and the estimated cost of plugging and abandoning. If the assignment or lease is in favor of more than one party, the interest
34 shall be shared by such parties in the proportions that the interest of each bears to the total interest of all such parties.
35
36      Any assignment, lease or surrender made under this provision shall not reduce or change the assignor's, lessor's or surrendering
37 party's interest as it was immediately before the assignment, lease or surrender in the balance of the Contract Area; and the acreage
38 assigned, leased or surrendered, and subsequent operations thereon, shall not thereafter be subject to the terms and provisions of this
39 agreement.
40
41 B.    Renewal or Extension of Leases:
42
43      If any party secures a renewal of any oil and gas lease subject to this agreement, all other parties shall be notified promptly, and
44 shall have the right for a period of thirty (30) days following receipt of such notice in which to elect to participate in the ownership of the
45 renewal lease, insofar as such lease affects lands within the Contract Area, by paying to the party who acquired it their several proper pro-
46 portionate shares of the acquisition cost allocated to that part of such lease within the Contract Area, which shall be in proportion to the
47 interests held at that time by the parties in the Contract Area.
48
49      If some, but less than all, of the parties elect to participate in the purchase of a renewal lease, it shall be owned by the parties
50 who elect to participate therein, in a ratio based upon the relationship of their respective percentage of participation in the Contract Area
51 to the aggregate of the percentages of participation in the Contract Area of all parties participating in the purchase of such renewal lease.
52 Any renewal lease in which less than all parties elect to participate shall not be subject to this agreement.
53
54      Each party who participates in the purchase of a renewal lease shall be given an assignment of its proportionate interest therein
55 by the acquiring party.
56
57      The provisions of this Article shall apply to renewal leases whether they are for the entire interest covered by the expiring lease
58 or cover only a portion of its area or an interest therein. Any renewal lease taken before the expiration of its predecessor lease, or taken or
59 contracted for within six (6) months after the expiration of the existing lease shall be subject to this provision; but any lease taken or con-
60 tracted for more than six (6) months after the expiration of an existing lease shall not be deemed a renewal lease and shall not be subject to
61 the provisions of this agreement.
62
63      The provisions in this Article shall also be applicable to extensions of oil and gas leases.
64
65 C.    Acreage or Cash Contributions:
66
67      While this agreement is in force, if any party contracts for a contribution of cash towards the drilling of a well or any other
68 operation on the Contract Area, such contribution shall be paid to the party who conducted the drilling or other operation and shall be
69 applied by it against the cost of such drilling or other operation. If the contribution be in the form of acreage, the party to whom the con-
70 tribution is made shall promptly tender an assignment of the acreage, without warranty of title, to the Drilling Parties in the proportions

- 11 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

### ARTICLE VIII
### continued

1 ~~said Drilling Parties shared the cost of drilling the well. Such acreage shall become a separate Contract Area and, to the extent possible, be~~
2 ~~governed by provisions identical to this agreement. Each party shall promptly notify all other parties of any acreage or cash contributions~~
3 ~~it may obtain in support of any well or any other operation on the Contract Area. The above provisions shall also be applicable to op-~~
4 ~~tional rights to earn acreage outside the Contract Area which are in support of a well drilled inside the Contract Area.~~
5
6 ~~If any party contracts for any consideration relating to disposition of such party's share of substances produced hereunder, such~~
7 ~~consideration shall not be deemed a contribution as contemplated in this Article VIII.C.~~
8
9 **D.    Maintenance of Uniform Interests:**
10
11    For the purpose of maintaining uniformity of ownership in the oil and gas leasehold interests covered by this agreement, no
12 party shall sell, encumber, transfer or make other disposition of its interest in the leases embraced within the Contract Area and in wells,
13 equipment and production unless such disposition ~~covers either:~~
14
15 ~~1.   the entire interest of the party in all leases and equipment and production; or~~
16
17 ~~2.   an equal undivided interest in all leases and equipment and production in the Contract Area.~~
18
19 ~~Every such sale, encumbrance, transfer or other disposition made by any party~~ shall be made expressly subject to this agreement
20 and shall be made without prejudice to the right of the other parties. **Any extra expenditures incurred as a result of a partial disposition,**
21 **including any additional marketing or metering expense shall be borne by the party to which such interest is transferred.**
22 ~~If, at any time the interest of any party is divided among and owned by four or more co-owners, Operator, at its discretion, may~~
23 ~~require such co-owners to appoint a single trustee or agent with full authority to receive notices, approve expenditures, receive billings for~~
24 ~~and approve and pay such party's share of the joint expenses, and to deal generally with, and with power to bind, the co-owners of such~~
25 ~~party's interest within the scope of the operations embraced in this agreement; however, all such co-owners shall have the right to enter~~
26 ~~into and execute all contracts or agreements for the disposition of their respective shares of the oil and gas produced from the Contract~~
27 ~~Area and they shall have the right to receive, separately, payment of the sale proceeds thereof.~~ **In the event a disposition is made to a third**
28 **party who, at the time of disposition is in receivership or has filed for or has been petitioned into bankruptcy, the disposing party shall**
29 **also be liable to the other parties for all amounts accrued for operations in which the disposing party chose to participate under this**
   **Agreement, attributable to the disposed interest prior to the effective date of the disposition.**
30
31 **E.    Waiver of Rights to Partition:**
32
33    If permitted by the laws of the state or states in which the property covered hereby is located, each party hereto owning an
34 undivided interest in the Contract Area waives any and all rights it may have to partition and has set aside to it in severalty its undivided
35 interest therein.
36
37 ~~F.    Preferential Right to Purchase:~~
38
39 ~~Should any party desire to sell all or any part of its interests under this agreement, or its rights and interests in the Contract~~
40 ~~Area, it shall promptly give written notice to the other parties, with full information concerning its proposed sale, which shall include the~~
41 ~~name and address of the prospective purchaser (who must be ready, willing and able to purchase), the purchase price, and all other terms~~
42 ~~of the offer. The other parties shall then have an optional prior right, for a period of ten (10) days after receipt of the notice, to purchase~~
43 ~~on the same terms and conditions the interest which the other party proposes to sell; and, if this optional right is exercised, the purchas-~~
44 ~~ing parties shall share the purchased interest in the proportions that the interest of each bears to the total interest of all purchasing par-~~
45 ~~ties. However, there shall be no preferential right to purchase in those cases where any party wishes to mortgage its interests, or to~~
46 ~~dispose of its interests by merger, reorganization, consolidation, or sale of all or substantially all of its assets to a subsidiary or parent com-~~
47 ~~pany or to a subsidiary of a parent company, or to any company in which any one party owns a majority of the stock.~~
48
49 ### ARTICLE IX.
50 ### INTERNAL REVENUE CODE ELECTION
51
52    This agreement is not intended to create, and shall not be construed to create, a relationship of partnership or an association
53 for profit between or among the parties hereto. Notwithstanding any provision herein that the rights and liabilities hereunder are several
54 and not joint or collective, or that this agreement and operations hereunder shall not constitute a partnership, if, for federal income tax
55 purposes, this agreement and the operations hereunder are regarded as a partnership, each party hereby affected elects to be excluded
56 from the application of all of the provisions of Subchapter "K", Chapter 1, Subtitle "A", of the Internal Revenue Code of 1986 1954, as per-
57 mitted and authorized by Section 761 of the Code and the regulations promulgated thereunder. Operator is authorized and directed to ex-
58 ecute on behalf of each party hereby affected such evidence of this election as may be required by the Secretary of the Treasury of the
59 United States or the Federal Internal Revenue Service, including specifically, but not by way of limitation, all of the returns, statements,
60 and the data required by Federal Regulations 1.761. Should there be any requirement that each party hereby affected give further
61 evidence of this election, each such party shall execute such documents and furnish such other evidence as may be required by the
62 Federal Internal Revenue Service or as may be necessary to evidence this election. No such party shall give any notices or take any other
63 action inconsistent with the election made hereby. If any present or future income tax laws of the state or states in which the Contract
64 Area is located or any future income tax laws of the United States contain provisions similar to those in Subchapter "K", Chapter 1,
65 Subtitle "A", of the Internal Revenue Code of 1986 1954, under which an election similar to that provided by Section 761 of the Code is per-
66 mitted, each party hereby affected shall make such election as may be permitted or required by such laws. In making the foregoing elec-
67 tion, each such party states that the income derived by such party from operations hereunder can be adequately determined without the
68 computation of partnership taxable income.
69
70

- 12 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

ARTICLE X.
CLAIMS AND LAWSUITS

Operator may settle any single uninsured third party damage claim or suit arising from operations hereunder if the expenditure does not exceed _____Fifty Thousand and No/100 Dollars------------------------------------------------------------------------ Dollars ($_____50,000.00_____ ) and if the payment is in complete settlement of such claim or suit. If the amount required for settlement exceeds the above amount, the parties hereto shall assume and take over the further handling of the claim or suit, unless such authority is delegated to Operator. All costs and expenses of handling, settling, or otherwise discharging such claim or suit shall be at the joint expense of the parties participating in the operation from which the claim or suit arises. If a claim is made against any party or if any party is sued on account of any matter arising from operations hereunder over which such individual has no control because of the rights given Operator by this agreement, such party shall immediately notify all other parties, and the claim or suit shall be treated as any other claim or suit involving operations hereunder.

ARTICLE XI.
FORCE MAJEURE

If any party is rendered unable, wholly or in part, by force majeure to carry out its obligations under this agreement, other than the obligation to make money payments, that party shall give to all other parties prompt written notice of the force majeure with reasonably full particulars concerning it; thereupon, the obligations of the party giving the notice, so far as they are affected by the force majeure, shall be suspending during, but no longer than, the continuance of the force majeure. The affected party shall use all reasonable diligence to remove the force majeure situation as quickly as practicable.

The requirement that any force majeure shall be remedied with all reasonable dispatch shall not require the settlement of strikes, lockouts, or other labor difficulty by the party involved, contrary to its wishes; how all such difficulties shall be handled shall be entirely within the discretion of the party concerned.

The term "force majeure", as here employed, shall mean an act of God, strike, lockout, or other industrial disturbance, act of the public enemy, war, blockade, public riot, lightning, fire, storm, flood, explosion, governmental action, governmental delay, restraint or inaction, unavailability of equipment, and any other cause, whether of the kind specifically enumerated above or otherwise, which is not reasonably within the control of the party claiming suspension.

ARTICLE XII.
NOTICES

All notices authorized or required between the parties and required by any of the provisions of this agreement, unless otherwise specifically provided, shall be given in writing by mail or telegram, postage or charges prepaid, or by telex / or telecopier and addressed to the parties to whom the notice is given at the addresses listed on Exhibit "A". The originating notice given under any provision hereof shall be deemed given only when received by the party to whom such notice is directed, and the time for such party to give any notice in response thereto shall run from the date the originating notice is received. The second or any responsive notice shall be deemed given when deposited in the mail or with the telegraph company, with postage or charges prepaid, or sent by telex / or telecopier. Each party shall have the right to change its address at any time, and from time to time, by giving written notice thereof to all other parties.

ARTICLE XIII.
TERM OF AGREEMENT

This agreement shall remain in full force and effect as to the oil and gas leases and/or oil and gas interests subject hereto for the period of time selected below; provided, however, no party hereto shall ever be construed as having any right, title or interest in or to any lease or oil and gas interest contributed by any other party beyond the term of this agreement.

☐   ~~Option No. 1: So long as any of the oil and gas leases subject to this agreement remain or are continued in force as to any part of the Contract Area, whether by production, extension, renewal, or otherwise.~~

☑   Option No. 2: In the event the well described in Article VI.A., or any subsequent well drilled under any provision of this agreement, results in production of oil and/or gas in paying quantities, this agreement shall continue in force so long as any such well or wells produce, or are capable of production, and for an additional period of _____120_____ days from cessation of all production; provided, however, if, prior to the expiration of such additional period, one or more of the parties hereto are engaged in drilling, reworking, deepening, plugging back, testing or attempting to complete a well or wells hereunder, this agreement shall continue in force until such operations have been completed and if production results therefrom, this agreement shall continue in force as provided herein. In the event the well described in Article VI.A., or any subsequent well drilled hereunder, results in a dry hole, and no other well is producing, or capable of producing oil and/or gas from the Contract Area, this agreement shall terminate unless drilling, deepening, plugging back or reworking operations are commenced within _____120_____ days from the date of abandonment of said well.

It is agreed, however, that the termination of this agreement shall not relieve any party hereto from any liability which has accrued or attached prior to the date of such termination.

- 13 -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

ARTICLE XIV.
COMPLIANCE WITH LAWS AND REGULATIONS

A.  Laws, Regulations and Orders:

This agreement shall be subject to the conservation laws of the state in which the Contract Area is located, to the valid rules, regulations, and orders of any duly constituted regulatory body of said state; and to all other applicable federal, state, and local laws, ordinances, rules, regulations, and orders.

B.  Governing Law:

This agreement and all matters pertaining hereto, including, but not limited to, matters of performance, non-performance, breach, remedies, procedures, rights, duties, and interpretation or construction, shall be governed and determined by the law of the state in which the Contract Area is located. If the Contract Area is in two or more states, the law of the state of _____ Alabama _____ shall govern.

C.  Regulatory Agencies:

Nothing herein contained shall grant, or be construed to grant, Operator the right or authority to waive or release any rights, privileges, or obligations which Non-Operators may have under federal or state laws or under rules, regulations or orders promulgated under such laws in reference to oil, gas and mineral operations, including the location, operation, or production of wells, on tracts offsetting or adjacent to the Contract Area.

With respect to operations hereunder, Non-Operators agree to release Operator from any and all losses, damages, injuries, claims and causes of action arising out of, incident to or resulting directly or indirectly from Operator's interpretation or application of rules, rulings, regulations or orders of the Department of Energy or predecessor or successor agencies to the extent such interpretation or application was made in good faith. Each Non-Operator further agrees to reimburse Operator for any amounts applicable to such Non-Operator's share of production that Operator may be required to refund, rebate or pay as a result of such an incorrect interpretation or application, together with interest and penalties thereon owing by Operator as a result of such incorrect interpretation or application.

Non-Operators authorize Operator to prepare and submit such documents as may be required to be submitted to the purchaser of any crude oil sold hereunder or to any other person or entity pursuant to the requirements of the "Crude Oil Windfall Profit Tax Act of 1980", as same may be amended from time to time ("Act"), and any valid regulations or rules which may be issued by the Treasury Department from time to time pursuant to said Act. Each party hereto agrees to furnish any and all certifications or other information which is required to be furnished by said Act in a timely manner and in sufficient detail to permit compliance with said Act.

ARTICLE XV.
OTHER PROVISIONS

A.  If a Non Operator has a past due balance for thirty (30) days or greater, and the Lien conferred by Article VII.B. has been enforced by notice from the Operator to the defaulting Non-Operator, for so long as the affected party remains in default, it shall have no further access to the Contract Area or information obtained in connection with operations hereunder and shall not be entitled to vote on any matter hereunder. Also, if the Operator has been notified in writing by the Non-Operator of a grievance over an alleged "past due balance" or "default" which is being negotiated, as to any proposed operation in which it otherwise would have the right to participate, such party shall have the right to be a Non-Consenting Party to that operation. If the Operator becomes in default under the terms and conditions of this agreement, the terms of this Article XV.D. shall also apply to said Operator.

B.  All the terms, conditions and provisions of this Operating Agreement shall extend to and be binding upon each of such parties hereto and their respective successors and assigns. The parties agree that in the event any party hereto in any way conveys, sells, transfers, assigns, mortgages or pledges all or any part of its interest in the leases comprising the Contract Area hereunder, such Assignment shall be made expressly subject to the terms and provisions of this Operating Agreement.

C.  If, following the granting of relief under the Bankruptcy Code to any party or debtor thereunder, this Operating Agreement should be held to be an executory contract within the meaning of 11 U.S.C. Section 365, then the Operator or if the Operator is the debtor in Bankruptcy or other party hereto, shall be entitled to receive a determination by debtor, or any trustee for debtor within 30 days from the date an Order for Relief is entered under the Bankruptcy Code of such debtor's or trustee's rejection or assumption of the Operating Agreement. In the event of an assumption, Operator or other said party shall be entitled to receive adequate assurances from such debtor or trustee as to the future performance of debtor's obligations hereunder and the protection of the interest of all parties hereto.

D.  Any Consenting Party that fails to pay its proportionate share of invoices for actual drilling or estimated drilling, completion or other costs in connection with the Initial Well in a timely manner as provided in Article VII.C. will be deemed to be a Non-Consenting Party as defined herein for all purposes, including but not limited to the provisions of Article VI.B.

E.  The Operator of the Contract Area shall conduct and direct and have full control of all operations on the Contract Area as permitted and required by and within the limits of this Agreement. In its performance of services hereunder for the Non-Operators, Operator shall be an independent contractor not subject to the control of the Non-Operators except as to the type of Operations to be undertaken in accordance with the election procedures contained in this Agreement. Operator shall not be deemed or hold itself out as the agent of the Non-Operators with authority to bind them to any obligations or liability assumed or incurred by the Operator vis-à-vis any third party. Operator shall conduct its activities under this Agreement as a reasonable and prudent Operator, i.e. in a good and workmanlike manner with due diligence and dispatch in accordance with good oilfield practice, in compliance with all applicable lease(s) and agreement(s) and in compliance with applicable law and regulation.

- 14a -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

F. This Operating Agreement may be executed in counterparts, each of which so executed shall be given the effect of the original Operating Agreement. Failure of any party hereto to execute this Operating Agreement shall not render it ineffective as to any party hereto who does execute the same. If this Operating Agreement is executed in counterparts, the signature and acknowledgement pages of the various counterparts may be combined by Operator in one or more copies of this Operating Agreement and treated and given effect for all purposes, including recording, as separate and complete instruments.

G. Operator is authorized to take all reasonable action in any emergency situation at the joint expense of the parties without prior consent of the parties where such action is prudent under the circumstances on the jointly owned properties subject to this Operating Agreement; provided however, Operator shall promptly notify all parties as soon as reasonably possible of the development of such emergency situation and the action taken by it under the circumstances.

H. Regardless of anything contained herein to the contrary, the Operator is not required to begin any operation unless and until its invoice(s) there for have been paid in full and the funds to drill, rework, deepen, sidetrack, plug back or conduct any operation under this agreement have been received by Operator at least thirty (30) days before any drilling or pre-drilling operation begins. Operator, at its sole option, may elect to proceed prior to the receipt of funds, provided, however, the consenting interests shall remain fully liable to provide such funding.

I. Notwithstanding any provisions to the contrary in Article VI.B., or elsewhere in this Operating Agreement, should any party hereto desire to rework, recomplete, sidetrack, deepen, plug back, add additional perforations, recomplete or sidetrack a well jointly owned by all parties hereto, which is then producing, or capable of producing in commercial quantities, such party shall give notice of the proposed operations pursuant to this Operating Agreement.

J. PRECEDENCE OF OPERATIONS

Where a well that has been authorized under the terms of this Agreement by all parties, has been drilled to the proposed depth or the objective formation, or a depth at which further drilling is impractical, whichever is the lesser, and the consenting parties participating in the well cannot agree upon the sequence and timing of further operations regarding such well, the following elections shall control in the order enumerated below:

|        |     |                                                                                                                                                    |
|--------|-----|----------------------------------------------------------------------------------------------------------------------------------------------------|
|        | (1) | An election to perform additional logging, coring or testing;                                                                                      |
|        | (2) | An election to attempt to complete the well at the deepest drilled depth proposed for completion by any Party;                                      |
|        | (3) | An election to plug back and attempt to complete the well in a shallower depth or formation;                                                       |
|        | (4) | An election to deepen the well to a new objective formation;                                                                                       |
|        | (5) | An election to sidetrack the well;                                                                                                                 |
|        | (6) | An election to rework the well by generally accepted stimulation techniques whether or not the well had previously produced in commercial quantities or is capable of commercial production; |
|        | (7) | An election to plug and abandon the well.                                                                                                           |

It is provided, however, that if at any time said consenting parties are considering the above election, the wellbore is in such a condition that, in the opinion of a majority in interest (not in number) of the consenting parties, a reasonably prudent operator would not conduct the operations contemplated by the particular election involved for fear of placing the hole in jeopardy or losing the same prior to completing the well in the objective depth or objective formation, such election shall not be given the priority herein above set forth. In such event, the operation, which, in the opinion of said majority in interest is less likely to jeopardize the well, will be given priority. Should the consenting parties be equally divided in their opinion, then the opinion of the Operator shall prevail. It is further understood that if some, but not all parties, elect to participate in the additional logging, coring or testing, they may do so at their expense and risk, but should the party or parties not participate in such additional logging, coring, or testing, later elect to participate in a proposed operation based on the information obtained from the additional logging, coring, or testing, then the party or parties so electing shall be required to pay their proportionate share of the cost of said logging, coring, or testing, and shall be entitled to the logs, cores or the results of the tests. For the purpose of this paragraph the proposed depth shall be the depth as set forth in the AFE or in the proposal for the proposed operation, and the objective formation shall be the formation as set forth in the AFE or in the proposal for the proposed operation.

K. HOLIDAYS

The word "holidays" when used herein is defined as a legal holiday observed by the United States government and its agencies.

L. DISPUTES AS TO PROPOSED DEPTHS

If during the drilling of any well drilled hereunder, a bona fide dispute shall exist as to whether the proposed depth has been reached in such well (as for example, whether a well has been drilled to a depth sufficient to test a particular sand or formation or if the well has reached the stratigraphic equivalent of a particular depth), the opinion of a majority in ownership of the total possessory, cost-bearing interest (and not in number) of the owners as shown by Exhibit "A" shall control and be binding upon all parties. If the parties are equally divided, the opinion of the Operator will prevail.

M. INDEMNITY

Each Non-Operator shall defend, indemnify and hold Operator harmless against any and all liability in excess of insurance coverage carried for the joint account for injury to each such Non-Operator's officers, employees and/or agents, resulting from or in any way relating to such officers, employees, and/or agents presence on a drilling rig on the Contract Area or from such person traveling by air or water between any point and such drilling rig, including, without limitation, claims arising out of THE FAULT, LIABILITY, NEGLIGENCE, OR GROSSS NEGLIGENCE OF OPERATOR. Such indemnity to Operator shall also apply to any other person whose presence on the rig or transportation to or from such rig is at the request of the indemnifying Non-Operator.

N. SEVERABILITY

If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any rule of law or public policy, all other conditions and provisions of this Agreement shall nevertheless remain in full force and effect so

- 14b -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any party.  Upon any binding determination that any term or other provision is invalid, illegal or incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in an acceptable and legally enforceable manner.

O.  NO WAIVERS

No failure or delay by any party in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or exercise of any other right, power or privilege.  The rights and remedies herein provided shall be cumulative and not exclusive of any rights or remedies provided by law.

P.  PRIOR AGREEMENTS

The Sklar Parties (as designated in Exhibit "A" attached hereto) are also parties, or successors to parties, to another operating agreement (the "Sklar JOA") by and between Sklar Exploration Company L.L.C., as Operator, and the Sklar Parties, as Non-Operators, covering lands that include, among other lands, the Contract Area of this Agreement.  The Sklar JOA is referred to herein as "the Prior Agreement."  None of the parties to this Agreement shall have any rights or obligations under the Prior Agreement unless he/she/it is now, or later becomes by separate instrument, a Party to such Prior Agreement.  If there is a conflict between this Agreement and the Prior Agreement, then, as between the parties to the Prior Agreement, the Prior Agreement shall govern and prevail.  Except as provided in the preceding sentence, this Agreement shall control as among the parties hereto with respect to the matters covered hereby.

Q.  INTERESTS OF THE PARTIES & TITLES

Subject to the provisions of Article XV.P above, the provisions set forth in this Article XV.Q shall apply and govern in lieu of the provisions of Article III.B, C and D and Article IV, to the extent the provisions of this Article XV.Q are inconsistent with those provisions.

The "Sklar Pa___" ___ "A" hereto) own Oil, Gas and Mineral Lease No. 1 (hereinafter the "Sklar Lease" ___ing Agreement.  The Sklar Parties alone shall bear, in proportion to ___ to this Operating Agreement, all burdens, losses and cos___ uding, without limitation, the following: (i) all of their pr___ payments or other burdens on production to which the ___ of losses associated with the Sklar Lease, through fail___ re of such costs attributable to the working interest in t___ al Well.

The "Fletc___ il, Gas and Mineral Lease Nos. 2, 3, and 4 (hereinaft___ Operating Agreement.  The Fletcher I Parties alone sha___ s set forth in Exhibit "A" to this Operating Agreeme___ luding, without limitation, the following: (i) all royalties___ n production to which the Fletcher I Leases are subject;___ ailure of title or otherwise; and (iii) such costs attribut___ ses' share of the costs to drill the Initial Well.

The "___ Oil, Gas and Mineral Lease No. 5 (hereinafter the "Fletc___ reement.  The Fletcher II Parties alone shall bear, in pro___ bit "A" to this Operating Agreement, all burdens, losses___ itation, the following: (i) all royalties, overriding royalties, pro___ which the Fletcher II Lease is subject; (ii) all losses associated with the Fletch___ otherwise; and (iii) such costs attributable to the working interest in the Fletcher II Lease as ___ e costs to drill the Initial Well.

The "Kidd Parties" (as designated in Exhibit "A" hereto) own Oil, Gas and Mineral Lease No. 6 (hereinafter the "Kidd Lease") described in Exhibit "A-1" to this Operating Agreement.  The Kidd Parties shall bear, in proportion to its interest in the Kidd Lease set forth in Exhibit "A" to this Operating Agreement, all burdens, losses and costs attributable to that lease, including, without limitation, the following: (i) all royalties, overriding royalties, production payments or other burdens on production to which the Kidd Lease is subject; (ii) all losses associated with the Kidd Lease, through failure of title or otherwise; and (iii) such costs attributable to the working interest in the Kidd Lease as that lease's share of the costs to drill the Initial Well.

The Sklar Parties, the Fletcher I Parties, and the Kidd Parties agree to share costs within the Contract Area in the proportion that the interest of each bears to the total interest of all of them as determined by title examination to the drilling unit for the Initial Well more particularly described as the NE ¼ of Section 3, Township 3 North, Range 13 East, Conecuh County, Alabama.  Operator may rely upon said title examination for the purpose of invoicing costs between each of the said Non-Operator parties. Costs attributable to any non-participating oil and gas interest or oil and gas lease shall be carried by each of the Non-Operator parties in the same proportion. The voting interest or interest to make other decisions required or permitted by the Non-Operators hereunder shall be allocated between each of the Non-Operators in the same manner.  Notwithstanding any provisions of this paragraph or any other provisions of this Operating Agreement to the contrary, if Operator invoices the Non-Operators for costs associated with the Initial Well based upon title examination of the drilling unit for that well as of a date prior to the commencement of operations for the drilling of that well, and if any of the oil and gas leases described in Exhibit "A-1" terminate prior to the commencement of operations for the drilling of the Initial Well or if additional information, title examination, curative instruments or surveys reveal different ownership interests among Non-Operators in the drilling unit, then, in that event, Operator shall cause its title examination to the drilling unit to be updated and shall invoice the Non-Operators for all costs associated with the Initial Well based upon the updated title examination and shall credit any amounts previously invoiced and refund any amounts previously over-paid by any Non-Operators based upon the prior title examination.  Nothing herein shall prevent any Non-Operator from contesting the accuracy or validity of any title opinion if it believes in good faith that the title opinion is inaccurate or invalid.

Notwithstanding anything herein to the contrary, the Sklar Parties, or Sklar Exploration Company L.L.C. on their behalf, may perform curative work or otherwise protect the Sklar Lease against title loss, and bear no obligation to

- 14c -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

1 offer extensions, amendments, renewals, ratifications or other curative instruments relating to the Sklar Lease or lands
2 covered by that lease to any other party or parties. The Fletcher I Parties may perform curative work or otherwise
3 protect the Fletcher I Leases against title loss, and bears no obligation to offer extensions, amendments, renewals,
4 ratifications or other curative instruments relating to the Fletcher I Leases or lands covered by those leases to any
5 other party or parties. The Fletcher II Parties, may perform curative work or otherwise protect the Fletcher II Lease
6 against title loss, and bear no obligation to offer extensions, amendments, renewals, ratifications or other curative
7 instruments relating to the Fletcher II Lease or lands covered by that lease to any other party or parties. The Kidd
8 Parties may perform curative work or otherwise protect the Kidd Lease against title loss, and bears no obligation to
9 offer extensions, amendments, ratifications or other curative instruments relating to the Kidd Lease or lands
covered by that lease to any other party or parties.

10 The Sklar Parties shall be entitled to, in proportion to their interest in the Sklar Lease set forth in Exhibit "A" and
11 subject to all burdens affecting said lease, the share of the proceeds from the sale of oil and gas produced from the
12 Initial Well or Subsequent Wells drilled and completed hereunder attributable to the Sklar Lease.  The Fletcher I
13 Parties shall be entitled to, in proportion to their interest in the Fletcher I Leases set forth in Exhibit "A" and subject
14 to all burdens affecting said leases, the share of the proceeds, from the sale of oil and gas produced from the Initial
15 Well or Subsequent Wells drilled and completed hereunder attributable to the Fletcher I Leases. The Fletcher II
16 Parties shall be entitled to, in proportion to their interest in the Fletcher II Lease set forth in Exhibit "A" and subject
17 to all burdens affecting said lease, the share of the proceeds from the sale of oil and gas produced from the Initial Well
18 or Subsequent Wells drilled and completed hereunder attributable to the Fletcher II Lease. The Kidd Parties shall be
19 entitled to, in proportion to their interest in the Kidd Lease set forth in Exhibit "A" and subject to all burdens affecting
20 said lease, the share of the proceeds from the sale of oil and gas produced from the Initial Well or Subsequent Wells
21 drilled and completed hereunder attributable to the Kidd Lease.  The Sklar Parties, Fletcher I Parties, Fletcher II
22 Parties, and Kidd Parties agree to share the proceeds from the sale of oil and gas produced from the Initial Well or
23 Subsequent Wells drilled and completed hereunder in the proportion that the interest of each bears to the total interest
of all as determined by title examination to the producing unit for such well.  Operator may rely upon said title
examination for the purpose of disbursing proceeds between each of the Sklar Parties, Fletcher I Parties, Fletcher II
Parties and Kidd Parties.

25 R.  NON-CONSENT

27 All of the Sklar Parties, Fletcher I Parties, Fletcher II Parties and Kidd Parties have consented to participate in the
28 drilling of the Initial Well pursuant to Article VI.A of this Agreement. With respect to the Sklar Parties, elections to
29 participate in any subsequent operations under Article VI.B of this Agreement shall be made by Sklar Exploration
30 Company, LLC on behalf of all the Sklar Parties.  If one or more of the Sklar Parties elects not to participate in a
31 subsequent operation, the non-consent interest shall be assumed by the remaining Sklar Parties pursuant to the terms
32 of the Sklar JOA.  Accordingly, insofar as the Sklar Parties are concerned, the provisions of Article VI.B.2 of this
33 Agreement shall only apply to elections to which Sklar Exploration Company, LLC non-consents on behalf of all of the
Sklar Parties.

35 S.  EXECUTION

36 This Agreement shall be binding upon each party that executes this Agreement without regard to whether this same
37 instrument, or any copy or counterpart hereof shall be executed by any other parties.

39 T.  HEADINGS FOR CONVENIENCE

41 The headings used in this Agreement are inserted for convenience only and shall not be regarded in construing or
interpreting this Agreement.

43 U.  RELATIONSHIP OF THE PARTIES

45 In their relations with each other under this Agreement, the parties shall not be considered fiduciaries or to have
46 established a confidential relationship but rather shall be free to act on an arm's length basis in accordance with their
47 own self interests.

48 V.  PAYMENT OF LEASE ROYALTIES AND OTHER BURDENS

50 If requested, Operator may, but is not obligated to, pay any royalty, overriding royalty, production payment, or other
51 burden on production (regardless of whether or not it exceeds the amount stipulated in Article III.B.) on behalf of the
52 party obligated to make such payment.  And if Operator makes such payment, it shall not be liable for any mistake
53 made in making the payment, and the party who is obligated to make such payment agrees to reimburse Operator for
54 any additional cost or expense that may be incurred in connection with making such payment and to save Operator
55 harmless from, and indemnify Operator against, any loss, cost, damage or expense of any nature whatsoever (including
56 reasonable attorneys' fees and regardless of whether or not caused by negligence of Operator) arising out of any claim
57 or suit relating to payments made or not made by Operator on behalf of such party.  If Operator commences making
58 such payments on behalf of any party hereto, it may thereafter cease making such payments provided that, thirty (30)
days prior to such cessation, it notifies the party in question that it intends to cease making such payments.

60 W.  POOLING

61 Many of the Leases described on Exhibit A-1 grant to the lessee thereunder the right to pool or unitize the Lease and
62 the lands covered thereby (or portions thereof) with other lands or leases (or portions thereof) to establish units for
63 wells.  The parties for themselves and for their successors and assigns hereby grant to Operator and its successors the
64 non-exclusive right, as limited to the Contract Area of this Agreement, to exercise any such pooling or unitization
65 rights so granted to them, or any of them, with full authority to execute (for them and on their behalf) any documents
66 deemed necessary or appropriate to effectuate said pooling or unitization and hereby agree and stipulate that any
67 instrument or declaration executed by the Operator (or its successor) with respect to any such pooling or unitization
68 shall have the same force and effect as one executed by all of the parties to this Agreement (and their successors and
69 assigns). Nothing in this paragraph shall limit or alter a party's right to consent or not consent to any operation in
70 accordance with and subject to the terms of this Agreement, and the power and authority granted to the Operator in
this Section shall remain in effect so long as this Agreement remains in effect and shall not be affected by the death or
incompetency of any party who is a natural person.

- 14d -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

X.  Waiver of Right to Trial by Jury

Each of the parties to this Agreement hereby waives the right to trial by jury in any litigation between any of the parties relating to this Agreement.

Y.  CONFLICTS WITH OTHER PROVISIONS

Should any provision of this Article XV conflict or be inconsistent with any other provision of this Agreement, then the provision of this Article XV shall govern and control.

- 14c -

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

ARTICLE XVI.
MISCELLANEOUS

This agreement shall be binding upon and shall inure to the benefit of the parties hereto and to their respective heirs, devisees, legal representatives, successors and assigns.

This instrument may be executed in any number of counterparts, each of which shall be considered an original for all purposes.

IN WITNESS WHEREOF, this agreement shall be effective as of _____ 17th _____ day of _____ June _____, (year) __2016__

~~_____, who has prepared and circulated this form for execution, represents and warrants that the form was printed from and with the exception listed below, is identical to the AAPL Form 610 1982 Model Form Operating Agreement, as published in computerized form by Forms-On-A-Disk, Inc. No changes, alterations, or modifications, other than those in Articles _____ have been made to the form.~~

OPERATOR

SKLAR EXPLORATION COMPANY L.L.C.

_____
DAVID A. BARLOW,
President-Chief Operating Officer

NON-OPERATORS

SKLARCO L.L.C.

_____
DAVID A. BARLOW,
President-Chief Operating Officer

BUNDERO INVESTMENT COMPANY, L.L.C.

_____
ROBERT P. BOWMAN, Manager

CRAFT EXPLORATION COMPANY L.L.C.

_____
STEVEN H. CRAFT, Managing Member

DICKSON OIL & GAS, LLC

_____
C. BICKHAM DICKSON, III, Member

FANT ENERGY LIMITED
Richard E. Fant, LLC, General Partner of Fant Energy Limited

_____
RICHARD E. FANT, Manager of Richard E. Fant, LLC, the General Partner of Fant Energy Limited

JOA – CCL&T 3-7 #1
NE ¼, Sec. 3, T3N, R13E, Conecuh County, AL

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

JF Howell Interests, LP

_____
DAVID MORGAN, Manager of Howell Investments,
LLC, General Partner of JF Howell Interests, LP
_____

JJS INTERESTS ESCAMBIA, LLC

_____
JUSTIN SIMONS, PRESIDENT
_____

KUDZU OIL PROPERTIES, LLC

_____
WIRT A. YERGER, III, Manager
_____

LANDMARK EXPLORATION, LLC

_____
LARRY JOHNSON, Managing Member
_____

MARKSCO, L.L.C.

_____
MARK P. SEALY, Member
_____

PICKENS FINANCIAL GROUP, LLC

_____
MICHAEL K. PICKENS, Vice President
_____

RESOURCE VENTURES, LLC

_____
MARK A. ARNOLD, General Manager
_____

THE RUDMAN PARTNERSHIP

_____
W.R. (TREY) SIBLEY, III, AIF
_____

TAUBER EXPLORATION & PRODUCTION COMPANY

_____
JOHN ROBINSON, Vice President - Land
_____

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

**TIEMBO, LTD.**
Simba Investors, L.L.C., its General Partner

_____
**MARK RAUCH, Member of Simba Investors, L.L.C., the General Partner of Tiembo, Ltd.**

**FLETCHER EXPLORATION, LLC**

By_____
As its_____

**JOHN C. NIX, JR.**

**ELBA EXPLORATION, LLC**

By_____
As its_____

**ED L. DUNN**

**WILLIAM R. ROLLO**

**GLORIA ROLLO**

**BARNES CREEK DRILLING, LLC**

By_____
As its_____

**WILLIAM S. SCHRIER**

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

```
1    _____
2    _____        JOHN KABASA
3
4    _____
5
6                                                MICHAEL MANAGEMENT, INC.
7
8
9    _____        By_____
10   _____        As its_____
11
12   _____
13
14
15
16
17   _____
18   _____        RONNIE FOUTS
19   _____
20
21
22   _____        SPANISH FORT ROYALTY, LLC
23
24
25   _____        By_____
26   _____        As its_____
27
28   _____
29
30
31
32
33   _____
34   _____        JANET F. DUNN
35   _____
36
37
38
39                                               CENTRAL EXPLORATION CO., INC.
40
41   _____        By_____
42                                               As its_____
43   _____
44
45
46                                               STRAGO PETROLEUM CORP.
47
48
49   _____        By_____
50                                               As its_____
51   _____
52
53
54                                               ROOSTH 806, LTD., A TEXAS LIMITED PARTNERSHIP
55
56
57   _____        By_____
58   _____        As its_____
59
60
61
62                                               KIDD PRODUCTION, LTD.
63
64
65   _____        By_____
66   _____        As its_____
67
68   _____
69
70
```

JOA – CCL&T 3-7 #1
NE ¼. Sec. 3, T3N. R13E, Conecuh County, AL.

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

```
 1  _____
 2  _____
 3                                              STEVEN C. CALHOUN
 4  _____
 5
 6
 7                                              KWAZAR RESOURCES, LLC
 8
 9
10  _____     By_____
11                                              As its_____
12  _____
13
14
15
16
17
18
19  STATE OF _Colorado_____ )
20
21  COUNTY/PARISH OF _Boulder_ )
22
23       I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that DAVID A.
24  BARLOW, whose name as President and Chief Operating Officer of SKLAR EXPLORATION COMPANY L.L.C., is signed to the
25  foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said
26  instrument, he as such President and Chief Operating Officer and with full authority executed the same voluntarily for and as the act
    of said company.
27       Given under my hand and official seal on this the 23 day of June , 2016.
28       ┌─────────────────────────────────┐
29       │   CAMILLE CULPEPPER JENKINS      │
30       │        NOTARY PUBLIC             │       _Camille Jenkins_____
31       │      STATE OF COLORADO           │       NOTARY PUBLIC
32       │    NOTARY ID 20154003785         │
33       │ MY COMMISSION EXPIRES JANUARY 27, 2019 │
    [affix notarial seal]
    My commission expires: _1/27/2019_
34
35
36  STATE OF _Colorado_____ )
37
38  COUNTY/PARISH OF _Boulder_ )
39
40       I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that DAVID A.
41  BARLOW, whose name as President and Chief Operating Officer of SKLARCO L.L.C., is signed to the foregoing instrument and
42  who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such President
    and Chief Operating Officer and with full authority executed the same voluntarily for and as the act of said company.
43       Given under my hand and official seal on this the 23 day of June , 2016.
44       ┌─────────────────────────────────┐
45       │   CAMILLE CULPEPPER JENKINS      │
46       │        NOTARY PUBLIC             │       _Camille Jenkins_____
47       │      STATE OF COLORADO           │       NOTARY PUBLIC
48       │    NOTARY ID 20154003785         │
49       │ MY COMMISSION EXPIRES JANUARY 27, 2019 │
    [affix notarial seal]
    My commission expires: _1/27/2019_
50
51
52
53
54  STATE OF _____ )
55
56  COUNTY/PARISH OF _____ )
57
58       I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that ROBERT P.
59  BOWMAN, whose name as Manager of BUNDERO INVESTMENT COMPANY, L.L.C., is signed to the foregoing instrument and
60  who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Manager
    and with full authority executed the same voluntarily for and as the act of said company.
61       Given under my hand and official seal on this the _____ day of _____, 2016.
62
63
64
65                                              _____
66  [affix notarial seal]                        NOTARY PUBLIC
67
68  My commission expires: _____
69
70
```

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that STEVEN H. CRAFT, whose name as Managing Member of CRAFT EXPLORATION COMPANY, L.L.C., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Managing Member and with full authority executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that C. BICKHAM DICKSON, III, whose name as Member of DICKSON OIL & GAS LLC, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Member and with full authority executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that RICHARD E. FANT, whose name as Manager of Richard E. Fant, LLC, General Partner of FANT ENERGY LIMITED, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Manager and with full authority executed the same voluntarily for and as the act of said entity.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that DAVID MORGAN, whose name as Manager of Howell Investments, LLC, General Partner of JF HOWELL INTERESTS, LP, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Manager and with full authority executed the same voluntarily for and as the act of said partnership.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

STATE OF _____ )

COUNTY/PARISH OF _____ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that JUSTIN SIMONS, whose name as President of JJS INTERESTS ESCAMBIA, LLC is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such President and with full authority executed the same voluntarily for and as the act of said company.

    Given under my hand and official seal on this the _____ day of _____, 2016.

    ,

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _____ )

COUNTY/PARISH OF _____ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that WIRT A. YERGER, III, whose name as Manager of KUDZU OIL PROPERTIES, LLC, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Manager and with full authority executed the same voluntarily for and as the act of said company.

    Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _____ )

COUNTY/PARISH OF _____ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that LARRY JOHNSON, whose name as Managing Member of LANDMARK EXPLORATION, LLC, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Managing Member and with full authority executed the same voluntarily for and as the act of said company.

    Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _____ )

COUNTY/PARISH OF _____ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that MARK P. SEALY, whose name as Member of MARKSCO, L.L.C., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Member and with full authority executed the same voluntarily for and as the act of said company.

    Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that MICHAEL K. PICKENS, whose name as Vice President of PICKENS FINANCIAL GROUP, LLC, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Vice President and with full authority executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that MARK A. ARNOLD, whose name as General Manager of RESOURCE VENTURES, LLC, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such General Manager and with full authority executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that W.R. (TREY) SIBLEY, III, whose name as Attorney-in-Fact for THE RUDMAN PARTNERSHIP, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Attorney-in-Fact and with full authority executed the same voluntarily for and as the act of said partnership.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that JOHN ROBINSON, whose name as Vice President - Land of TAUBER EXPLORATION & PRODUCTION COMPANY, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Vice President and with full authority executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

STATE OF _____ )

COUNTY/PARISH OF _____ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that MARK RAUCH, whose name as Member of Simba Investors, L.L.C., as General Partner of TIEMBO, LTD., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such Member and with full authority executed the same voluntarily for and as the act of said entity.

    Given under my hand and official seal on this the _____ day of _____, 2016.


                                              _____

[affix notarial seal]                        NOTARY PUBLIC

My commission expires: _____

STATE OF _____ )

COUNTY/PARISH OF _____ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that _____, whose name as _____ of FLETCHER EXPLORATION, LLC, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such _____ and with full authority executed the same voluntarily for and as the act of said company.

    Given under my hand and official seal on this the _____ day of _____, 2016.


                                              _____

[affix notarial seal]                        NOTARY PUBLIC

My commission expires: _____

STATE OF _____ )

COUNTY/PARISH OF _____ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that JOHN C. NIX, JR., whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he executed the same voluntarily.

    Given under my hand and official seal on this the _____ day of _____, 2016.


                                              _____

[affix notarial seal]                        NOTARY PUBLIC

My commission expires: _____

STATE OF _____ )

COUNTY/PARISH OF _____ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that _____, whose name as _____ of ELBA EXPLORATION, LLC, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such _____ and with full authority executed the same voluntarily for and as the act of said company.

    Given under my hand and official seal on this the _____ day of _____, 2016.


                                              _____

[affix notarial seal]                        NOTARY PUBLIC

My commission expires: _____

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

STATE OF _____ )

COUNTY/PARISH OF _____ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that ED L. DUNN, whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he executed the same voluntarily.

    Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _____ )

COUNTY/PARISH OF _____ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that WILLIAM R. ROLLO, whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he executed the same voluntarily.

    Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _____ )

COUNTY/PARISH OF _____ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that GLORIA ROLLO, whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, she executed the same voluntarily.

    Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _____ )

COUNTY/PARISH OF _____ )

    I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that _____, whose name as _____ of BARNES CREEK DRILLING, LLC, is signed to the foregoing instrument, he as such _____ and with full authority executed the same voluntarily for and as the act of said company.

    Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that WILLIAM S. SCHRIER, whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he executed the same voluntarily.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that JOHN KABASA, whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he executed the same voluntarily.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that _____, whose name as _____ of MICHAEL MANAGEMENT, INC., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such _____ and with full authority executed the same voluntarily for and as the act of said company.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

STATE OF _____ )

COUNTY/PARISH OF _____ )

I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that RONNIE FOUTS, whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he executed the same voluntarily.

Given under my hand and official seal on this the _____ day of _____, 2016.

_____
NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

JOA – CCL&T 3-7 #1
NE ¼, Sec. 3, T3N, R13E, Conecuh County, AL

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

1
2 STATE OF _____ )
3 COUNTY/PARISH OF _____ )
4
5      I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that
_____, whose name as _____ of SPANISH FORT
6 ROYALTY, LLC., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being
7 informed of the contents of said instrument, he as such _____ and with full authority executed the same
8 voluntarily for and as the act of said company.
9
10      Given under my hand and official seal on this the _____ day of _____, 2016.
11
12
13                                                        _____
14 [affix notarial seal]                                                NOTARY PUBLIC
15 My commission expires: _____
16
17
18
19 STATE OF _____ )
20
21 COUNTY/PARISH OF _____ )
22      I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that JANET F.
23 DUNN, whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being
24 informed of the contents of said instrument, she executed the same voluntarily.
25
26      Given under my hand and official seal on this the _____ day of _____, 2016.
27
28
29                                                        _____
30 [affix notarial seal]                                                NOTARY PUBLIC
31
32 My commission expires: _____
33
34 STATE OF _____ )
35
36 COUNTY/PARISH OF _____ )
37
38      I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that
_____, whose name as _____ of CENTRAL
39 EXPLORATION CO., INC., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that,
40 being informed of the contents of said instrument, he as such _____ and with full authority executed the
41 same voluntarily for and as the act of said company.
42      Given under my hand and official seal on this the _____ day of _____, 2016.
43
44
45
46                                                        _____
47 [affix notarial seal]                                                NOTARY PUBLIC
48 My commission expires: _____
49
50
51 STATE OF _____ )
52
53 COUNTY/PARISH OF _____ )
54
55      I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that
_____, whose name as _____ of STRAGO PETROLEUM
56 CORP., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of
57 the contents of said instrument, he as such _____ and with full authority executed the same voluntarily
58 for and as the act of said company.
59      Given under my hand and official seal on this the _____ day of _____, 2016.
60
61
62
63                                                        _____
64 [affix notarial seal]                                                NOTARY PUBLIC
65 My commission expires: _____
66
67
68
69
70

A.A.P.L. FORM 610 - MODEL FORM OPERATING AGREEMENT - 1982

STATE OF _____ )

COUNTY/PARISH OF _____ )

     I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that _____, whose name as _____ of ROOSTH 806, LTD., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such _____ and with full authority executed the same voluntarily for and as the act of said entity.

     Given under my hand and official seal on this the _____ day of _____, 2016.

_____
     NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____


STATE OF _____ )

COUNTY/PARISH OF _____ )

     I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that _____, whose name as _____ of KIDD PRODUCTION, LLC., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such _____ and with full authority executed the same voluntarily for and as the act of said company.

     Given under my hand and official seal on this the _____ day of _____, 2016.

_____
     NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____


STATE OF _____ )

COUNTY/PARISH OF _____ )

     I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that STEVEN C. CALHOUN, whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, she executed the same voluntarily.

     Given under my hand and official seal on this the _____ day of _____, 2016.

_____
     NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____


STATE OF _____ )

COUNTY/PARISH OF _____ )

     I, the undersigned authority, a Notary Public, in and for said State and County/Parish, hereby certify that _____, whose name as _____ of KWAZAR RESOURCES, LLC., is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he as such _____ and with full authority executed the same voluntarily for and as the act of said company.

     Given under my hand and official seal on this the _____ day of _____, 2016.

_____
     NOTARY PUBLIC

[affix notarial seal]

My commission expires: _____

EXHIBIT "A"

CCL&T 3-7 #1

Attached to and made a part of that certain Operating Agreement effective June 17, 2016 by and between SKLAR EXPLORATION COMPANY L.L.C., as Operator, and SKLARCO L.L.C. et al., as Non-Operators

1)   **Identification of lands subject to this agreement:**

Contract Area

TOWNSHIP 3 NORTH, RANGE 13 EAST
CONECUH COUNTY, ALABAMA

Section 3: Northeast Quarter (NE/4).

**And being further described as all lands, oil and gas leasehold interest and oil and gas interests lying within the red boundary as shown on the plat designated as Exhibit "A-2".**

2)   **Restrictions, if any, as to depths, formations, or substances:**

There are no restrictions except as may be provided for in any lease or contract subject to this Operating Agreement.

3)   **Decimal Interest and names of Parties to this Agreement:**

a.     The following parties (who are sometimes referred to in this Exhibit "A", in the Operating Agreement to which this exhibit is attached and other exhibits thereto as the "Sklar Parties") own Oil, Gas and Mineral Lease 1 described under the heading "Sklar Lease" in Exhibit "A-1" in the following fractional interests:

| Owner | Interest |
|---|---|
| Bundero Investment Company, L.L.C. | 0.06000000 |
| Craft Exploration Company L.L.C. | 0.00750000 |
| Dickson Oil & Gas, LLC | 0.00875000 |
| Fant Energy Limited | 0.08750000 |
| Fleet Howell | 0.04000000 |
| JJS Interests Escambia, LLC | 0.18193750 |
| Kudzu Oil Properties, LLC | 0.01500000 |
| Landmark Exploration, LLC | 0.01500000 |
| Marksco, L.L.C. | 0.01750000 |
| Pickens Financial Group, LLC | 0.03750000 |
| Resource Ventures LLC | 0.00093750 |
| The Rudman Partnership | 0.09375000 |
| Sklarco, LLC | 0.40087500 |
| Tauber Exploration & Production Company | 0.01875000 |
| Tiembo Ltd. | 0.01500000 |

b.     The following parties (who are sometimes referred to in this Exhibit "A", in the Operating Agreement to which this exhibit is attached and other exhibits thereto as the "Fletcher I Parties") own Oil, Gas and Mineral Leases 2 through 4 described under the heading "Fletcher I Leases" in Exhibit "A-1" in the following fractional interests:

| Owner | Interest |
|---|---|
| Fletcher Exploration, LLC | 0.39130303 |
| John C. Nix, Jr. | 0.03545453 |
| Elba Exploration, LLC | 0.04850000 |
| Ed L. Dunn | 0.07645455 |
| William R. Rollo & Gloria Rollo, JTWROS | 0.04925000 |
| Barnes Creek Drilling, LLC | 0.02834090 |
| William S. Schrier | 0.04848485 |
| John Kabasa | 0.02424242 |
| Michael Management, Inc. | 0.04028788 |
| Ronnie Fouts | 0.04028788 |
| Spanish Fort Royalty, LLC | 0.10966667 |
| Janet F. Dunn | 0.01500000 |
| Central Exploration Co., Inc. | 0.02000000 |
| Strago Petroleum Corp. | 0.07272727 |

c.     The following parties (who are sometimes referred to in this Exhibit "A", in the Operating Agreement to which this exhibit is attached and other exhibits thereto as the "Fletcher II Parties") own Oil, Gas and Mineral Lease 5 described under the heading "Fletcher II Lease" in Exhibit "A-1" in the following fractional interests:

| Owner | Interest |
|---|---|
| Fletcher Exploration, LLC | 0.44613637 |
| John C. Nix, Jr. | 0.03545453 |
| Elba Exploration, LLC | 0.04850000 |
| Ed L. Dunn | 0.07645455 |
| William R. Rollo & Gloria Rollo, JTWROS | 0.04925000 |
| Barnes Creek Drilling, LLC | 0.02834090 |
| William S. Schrier | 0.04848485 |
| John Kabasa | 0.02424242 |
| Michael Management, Inc. | 0.06770455 |
| Ronnie Fouts | 0.06770455 |
| Janet F. Dunn | 0.01500000 |
| Central Exploration Co., Inc. | 0.02000000 |
| Strago Petroleum Corp. | 0.07272727 |

d.     The following parties (who are sometimes referred to in this Exhibit "A", in the Operating Agreement to which this exhibit is attached and other exhibits thereto as the "Kidd Parties") own Oil, Gas and Mineral Lease 6 described under the heading "Kidd Lease" in Exhibit "A-1" in the following fractional interests:

| Owner | Interest |
|---|---|
| Roosth 806, Ltd, a Texas Limited Partnership | 0.50000000 |
| Kidd Production, Ltd. | 0.30000000 |
| Steven C. Calhoun | 0.10000000 |
| Kwazar Resources, LLC | 0.10000000 |

e.     Initial billing and revenue interests will be based on the ownership information in a-d, above, and the title and survey information presently available to Operator.  Some of the interests shown above extend beyond seven decimal places but are rounded to the eighth decimal place in this exhibit; so, the lease ownership decimal interests shown above may not total to 1.0000000 due to rounding.

4)     <u>Oil and gas lease and/or oil and gas interests subject to this agreement:</u>
       See Exhibit "A-1" Description of Leases.

5) <u>Addresses of parties for notice purposes:</u>

**Sklar Exploration Company L.L.C., Agent and Nominee for the Sklar Parties**
5395 Pearl Parkway, Ste. 200
Boulder, CO 80301

**Sklarco, L.L.C.**
5395 Pearl Parkway, Ste. 200
Boulder, CO 80301

**Bundero Investment Company, L.L.C.**
401 Edwards Street, Suite 820
Shreveport, LA 71101

**Craft Exploration Company L.L.C.**
PO Box 2430
Madison, MS 39130

**Dickson Oil & Gas, LLC**
P.O. Box 52479
Shreveport, LA 71135

**Fant Energy Limited**
P.O. Box 55205
Houston, TX 77255

**JF Howell Interests, LP**
416 Travis Street, Suite 715
Shreveport, LA 71101

**JJS Interests Escambia, LLC**
4295 San Felipe, Suite 207
Houston, TX 77027

**Kudzu Oil Properties, LLC**
300 Concourse Blvd., Suite 101
Ridgeland, MS 39157

**Landmark Exploration, LLC**
P. O. Box 12004
Jackson, MS 39236

**Marksco, L.L.C.**
333 TX Street, Suite 1050
Shreveport, LA 71101

**Pickens Financial Group, LLC**
10100 N. Central Expressway, Suite 200
Dallas, TX 75231-4159

**Resource Ventures, LLC**
8369 SouthPark Lane, Suite B
Littleton, CO 80120

**The Rudman Partnership**
1700 Pacific Ave., Suite 4200
Dallas, TX 75201-4620

Tauber Exploration & Production Company
55 Waugh Drive, Suite 600
Houston, TX 77007

Tiembo Ltd.
P. O. Box 270415
Houston, TX  77277-0415

Fletcher Exploration, LLC
P. O.  Box 2147
Fairhope, AL 36533-2147

John C. Nix, Jr.
P.O. Box 807
Milton, FL 32572

Elba Exploration, LLC
P.O. Box 807
Milton, FL 32572

Ed L. Dunn
P.O. Box 94
Milton, FL 32572

William R. Rollo
P.O. Box 894
Milton, FL 32572

Gloria R. Rollo
P.O. Box 894
Milton, FL 32572

Barnes Creek Drilling, LLC
320 Second Street
Columbia, MS 39601

William S. Schrier
320 Second Street
Columbia, MS 39601

John Kabasa
320 Second Street
Columbia, MS 39601

Michael Management, Inc.
P.O. Box 922
Fairhope, AL 36533

Ronnie Fouts
P.O. Box 660566
Birmingham, AL 35266

Spanish Fort Royalty, LLC
P.O. Box 7429
Spanish Fort, AL 36577

Janet F. Dunn
5109 Sandbar Drive
Port St. Joe, FL 32456

Central Petroleum, Inc.
733 Hwy 583 SE
Brookhaven, MS 39601

Strago Petroleum Corp.
3209 Hamm Road
Pearland, TX 77581

Roosth 806, Ltd.
P. O. Box 8300
Tyler, TX 75711

Kidd Production, Ltd.
102 North College, Suite 310
Tyler, TX 75702

Steven E. Calhoun
P. O. Box 7621
Tyler, TX 75711

Kwazar Resources, LLC
P. O. Box 7417
Spanish Fort, AL 36577

EXHIBIT "A-1"

CCL&T 3-7 #1

Attached to and made a part of that certain Operating Agreement effective June 17, 2016 by and between SKLAR EXPLORATION COMPANY L.L.C. as Operator, and SKLARCO L.L.C. et al., as Non-Operators

## DESCRIPTION OF LEASES

### SKLAR LEASE

1. Oil, Gas and Mineral Lease with an effective date of May 9, 2015, by and between Cedar Creek Land & Timber, Inc., as Lessor, and Sklarco, LLC, as Lessee, the memorandum of which is recorded in Book 2015, Page 3266, of the Probate Records of Conecuh County, Alabama.

### FLETCHER I LEASES

2. Oil, Gas and Mineral Lease dated February 13, 2014, by and between Larry J. Findley, as Lessor, and Avery Producing, LLC, as Lessee, recorded in Book 2014, Page 856, of the Conecuh County Probate Records.

3. Oil, Gas and Mineral Lease dated February 18, 2014, by and between James C. Findley, as Lessor, and Avery Producing, LLC, as Lessee, recorded in Book 2014, Page 854, of the Conecuh County Probate Records.

4. Oil, Gas and Mineral Lease dated February 18, 2014, by and between Robert A. Findley, as Lessor, and Avery Producing, LLC, as Lessee, recorded in Book 2014, Page 2486, of the Conecuh County Probate Records.

### FLETCHER II LEASE

5. Oil, Gas and Mineral Lease dated December 14, 2012, by and between Bama Land and Timber Company, Inc., as Lessor, and Suncreek Energy, LLC, as Lessee, recorded in Book 2013, Page 852, of the Conecuh County Probate Records, and extended pursuant to instrument dated December 1, 2015, recorded in Book 2015, Page 5972, of said Records.

### KIDD LEASE

6. Oil, Gas and Mineral Lease dated April 18, 2011, by and between Berryhill Farms, Inc., as Lessor, and Trant L. Kidd, as Lessee, recorded in Book 2011, Page 1790, of the Conecuh County Probate Records, and extended pursuant to instrument dated March 20, 2015, recorded in Book 2015, Page 2744, of said Records.

**INSOFAR AND ONLY INSOFAR AS SAID OIL, GAS AND MINERAL LEASES COVER ACREAGE LYING WITHIN THE NORTHEAST QUARTER (NE/4) OF SECTION 3, TOWNSHIP 3 NORTH, RANGE 13 EAST, CONECUH COUNTY, ALABAMA.**

EXHIBIT "A-2"

CCL&T 3-7 #1

Attached to and made part of that certain Operating Agreement effective June 17, 2016, by and between SKLAR EXPLORATION COMPANY L.L.C., as Operator, and SKLARCO, L.L.C. et al., as Non-Operators



Exhibit B

*Instrument Prepared By:* _____, _____, _____
                      (Name & address)

Producers 88 - Paid Up
With Pooling Provision

# OIL, GAS AND MINERAL LEASE

THIS AGREEMENT made to be effective _____ __, 201__, by and between,

_____, lessor
(whether one or more), who is/are _____(state marital status) and  whose address is:_____

and _____, lessee, whose address is _____, WITNESSETH:

1. Lessor, in consideration of TEN Dollars ($10.00) & Other Valuable Consideration, the receipt and sufficiency of which is hereby acknowledged, and the covenants and agreements of lessee hereinafter contained, does hereby grant, lease and let unto lessee the land covered hereby for the purposes and with the exclusive right of exploring, drilling, mining and operating for, producing and owning oil, gas, sulphur and all other minerals (whether or not similar to those mentioned), together with the right to make surveys on said land, lay pipe lines, establish and utilize facilities for surface or subsurface disposal of salt water, construct roads and bridges, dig canals, build tanks,  power stations, power lines, telephone lines, employee houses and other structures on said land, necessary or useful in lessee's operations in exploring, drilling for, producing, treating, storing and transporting minerals produced from the land covered hereby or any other land adjacent thereto.  The land covered hereby, herein called "said land", is located in the County of _____, State of **Alabama**, and is described as follows:

TOWNSHIP _ NORTH, RANGE _ EAST

Section ____:

It is the intention of the Lessor to lease, and the Lessor does hereby grant, let and lease to the Lessee, all minerals owned or claimed in said Section _ whether correctly or completely  described herein or not.

Wherever the fraction of "one-eighth" (1/8) appears in Paragraph 3 below, it is hereby changed to read _____ percent (__%).

This lease also covers and includes, in addition to that above described, all land, if any, contiguous or adjacent to or adjoining the land above described and (a) owned or claimed by lessor by limitation, prescription, possession, reversion or unrecorded instrument or (b) as to which lessor has a preference right of acquisition.  Lessor agrees to execute any supplemental instrument requested by lessee for a more complete or accurate description of said land.  For the purpose of determining the amount of any bonus or shut-in royalty payment hereunder, said land shall be deemed to contain ____acres, whether actually containing more or less, and the above recital of acreage in any tract shall be deemed to be the true acreage thereof.  Lessor accepts the bonus as lump sum consideration for this lease and all rights, and options hereunder.

2. Unless sooner terminated or longer kept in force under other provisions hereof, this lease shall remain in force for a term of Three (3) years from the effective date hereof, hereinafter called "primary term", and as long thereafter as operations, as hereinafter defined, are conducted upon said land with no cessation for more than ninety (90) consecutive days.

3. As royalty, lessee covenants and agrees:  (a) To deliver to the credit of lessor, in the pipe line to which lessee may connect its wells, the equal one-eighth part of all oil produced and saved by lessee from said land, or from time to time, at the option of lessee, to pay lessor the average posted market price of such one-eighth part of such oil at the well as of the day it is run to the pipe line or storage tanks, lessor's interest, in either case, to bear one-eighth of the cost of treating oil to render it marketable pipe line oil; (b) To pay lessor on gas and casinghead gas produced from said land (1) when sold by lessee, one-eighth of the amount realized by lessee, computed at the mouth of the well, or (2) when used by lessee off said land or in the manufacture of gasoline or other products, the market value, at the mouth of the well, of one-eighth of such gas and casinghead gas, lessor's interest, in either case, to bear one-eighth of the cost of treating or processing gas to extract liquids or to render it marketable pipe line gas; (c) To pay lessor on all other minerals mined and marketed or utilized by lessee from said land, one-tenth either in kind or value at the well or mine at lessee's election, except that on sulphur mined and marketed the royalty shall be one dollar ($1.00) per long ton.  If, at the expiration of the primary term or at any time or times thereafter, there is any well on said land or on lands with which said land or any portion thereof has been pooled, capable of producing gas or any other mineral covered hereby, and all such wells are shut-in, this lease shall, nevertheless, continue in force as though operations were being conducted on said land for so long as said wells are shut-in, and thereafter this lease may be continued in force as if no shut-in had occurred.  Lessee covenants and agrees to use reasonable diligence to produce, utilize, or market the minerals capable of being produced from said wells, but in the exercise of such diligence, lessee shall not be obligated to install or furnish facilities other than well facilities and ordinary lease facilities of flow lines, separator, and lease tank, and shall not be required to settle labor trouble or to market gas upon terms unacceptable to lessee.  If, at any time or times after the expiration of the primary term, all such wells are shut-in for a period of ninety consecutive days, and during such time there are no operations on said land, then at or before the expiration of said ninety day period, lessee shall pay or tender by check or draft of lessee, as royalty, a sum equal to one dollar ($1.00) for each acre of land then covered hereby.  Lessee shall make like payments or tenders at or before the end of each anniversary of the expiration of said ninety day period if upon such anniversary this lease is being continued in force solely by reason of the provisions of this sub-paragraph.  Each such payment or tender shall be made to the parties who at the time of payment would be entitled to receive the royalties which would be paid under this lease if the wells were producing or may be deposited to such parties credit in the  **pay directly to the lessor at the above address**  bank, or its successors which shall continue as the depositories regardless of changes in ownership of shut-in royalty.  If at any time that lessee pays or tenders shut-in royalty, two or more parties are, or claim to be, entitled to receive same, lessee may in lieu of any other method of payment herein provided, pay or tender such shut-in royalty, in the manner above specified, either jointly to such parties or separately to each in accordance with their respective ownerships thereof, as lessee may elect.  Any payment hereunder may be made by check or draft of lessee deposited in the mail or delivered to the party entitled to receive payment or to a depository bank provided for above on or before the last date for payment.  Nothing herein shall impair lessee's right to release as provided in paragraph 5 hereof.  In the event of assignment of this lease in whole or in part, liability for payment hereunder shall rest exclusively on the then owner or owners of this lease, severally as to acreage owned by each.

4. Lessee is hereby granted the right, at its option, to pool or unitize all or any part of said land and of this lease as to any or all minerals or horizons thereunder, with other lands, lease or leases, or portion or portions thereof, or mineral or horizon thereunder, so as to establish units containing not more than 160 surface acres plus 10% acreage tolerance; provided, however, a unit may be established or an existing unit may be enlarged to contain not more than 640 acres plus 10% acreage tolerance, if unitized only as to gas or only as to gas and liquid hydrocarbons (condensate) which are not a liquid in the subsurface reservoir.  If larger units are permitted or required, under any governmental rule or order, for the drilling or operation of a well at a regular location, for obtaining maximum allowable from any well to be drilled, drilling or already drilled, or for any other lawful purpose, any such unit may be established or enlarged, to conform to the size permitted or required by such governmental order or rule.  Lessee shall exercise said option as to each desired unit by either (1) filing a drilling permit application or other application or instrument with the state oil and gas board identifying such unit, provided that any requested permit or amended permit is issued within a reasonable time thereafter, (2) obtaining a force pooling order from the state oil and gas board for a unit including all or a portion of said land, or (3) filing for record in the public office in which this lease is recorded an instrument or plat identifying the unit, whichever shall first occur.  Each of said options may be exercised by lessee from time to time, and whether before or after production has been established either on said land or on the portion of said land included in the unit or on other land unitized therewith and any such unit may include any well to be drilled, being drilled or already completed.  A unit established hereunder shall be valid and effective for all purposes of this lease even though there may be land or mineral, royalty or leasehold interests in land within the unit which are not pooled or unitized.  Any operations conducted on any part of such unitized land shall be considered, for all purposes, except the payment of royalty, operations conducted under this lease.  There shall be allocated to the land covered by this lease included in any such unit that proportion of the total production of unitized minerals from wells, in the unit, after deducting any used in lease or unit operations, which the number of surface acres in the land covered by this lease included in the unit bears to the total number of surface acres in the unit.  The production so allocated shall be considered for all purposes, including the payment or delivery of royalty, overriding royalty, and any other payments out of production, to be the entire production of unitized minerals from the portion of said land covered hereby and included in such unit in the same manner as though produced from said land under the terms of this lease.  The owner of the reversionary estate of any term royalty or mineral estate agrees that the accrual of royalties pursuant to this paragraph or of shut-in royalties from a well on the unit shall satisfy any limitation of term requiring production of oil or gas.  The formation of such unit shall not have the effect of changing the ownership of any shut-in production royalty which may become payable under this lease.  Neither shall it impair the right of lessee to release as provided in paragraph 5 hereof as to lands all or any portion of said land, except that lessee may not so release as to lands within a unit while there are operations thereon for unitized minerals unless all pooled leases are released

cpu3dng1089413

as to lands within the unit. Lessee may dissolve any unit established hereunder by filing for record in the public office where this lease is recorded a declaration to that effect, if at that time no operations are being conducted thereon for unitized minerals or if the unit is reformed by the State Oil and Gas Board of Alabama.  Subject to the provisions of this paragraph 4, a unit once established hereunder shall remain in force so long as any lease subject thereto shall remain in force. A unit may be so established, modified, or dissolved during the life of this lease.

5. Lessee may at any time and from time to time execute and deliver to lessor or file for record a release or releases of this lease as to any part or all of said land or of any mineral or horizon thereunder, and thereby be relieved of all obligations as to the released acreage or interest.

6. This is a PAID-UP LEASE.  In consideration of the down cash payment, Lessor agrees that Lessee shall not be obligated except as otherwise provided herein, to commence or continue any operations during the primary term.  Whenever used in this lease the word "operations" shall mean operations for and any of the following: drilling, testing, completing, reworking, recompleting, deepening, plugging back or repairing of a well in search for or in an endeavor to obtain production of oil, gas, sulphur or other minerals, excavating a mine, or production of oil, gas, sulphur or other mineral, whether or not in paying quantities.

7.  Lessee shall have the use, free from royalty of water, other than from lessor's water wells, and of oil and gas produced from said land in all operations hereunder.  Lessee shall have the right at any time to remove all machinery and fixtures placed on said land, including the right to draw and remove casing. No well shall be drilled nearer than 200 feet to the house or barn now on said land without the consent of the lessor.  Lessee shall pay for damages caused by its operations to growing crops and timber on said land.

8. The rights and estate of any party hereto may be assigned from time to time in whole or in part and as to any mineral or horizon.  All of the covenants, obligations, and considerations of this lease shall extend to and be binding upon the parties hereto, their heirs, successors, assigns, and successive assigns.  No change or division in the ownership of said land, royalties, or other moneys, or any part thereof, howsoever effected, shall increase the obligations or diminish the rights of lessee, including, but not limited to, the location and drilling of wells and the measurement of production.  Notwithstanding any other actual or constructive knowledge or notice thereof of or to lessee, its successors or assigns, no change or division in the ownership of said land or of the royalties, or other moneys, or the right to receive the same, howsoever effected, shall be binding upon the then record owner of this lease until thirty (30) days after there has been furnished to such record owner at his or its principal place of business by lessor or lessor's heirs, successors, or assigns, notice of such change or division, supported by either originals or duly certified copies of the instruments which have been properly filed for record and which evidence such change or division, and of such court records and proceedings, transcripts, or other documents as shall be necessary in the opinion of such record owner to establish the validity of such change or division.  If any such change in ownership occurs by reason of the death of the owner, lessee may, nevertheless, pay or tender such royalties, or other moneys, or part thereof, to the credit of the decedent in a depository bank or at the address provided for above.

9.  In the event lessor considers that lessee has not complied with all its obligations hereunder, both express and implied, lessor shall notify lessee in writing, setting out specifically in what respects lessee has breached this contract.  Lessee shall then have sixty (60) days after receipt of said notice within which to meet or commence to meet all or any part of the breaches alleged by lessor.  The service of said notice shall be precedent to the bringing of any action by lessor on said lease for any cause, and no such action shall be brought until the lapse of sixty (60) days after service of such notice on lessee.  Neither the service of said notice nor the doing of any acts by lessee aimed to meet all or any of the alleged breaches shall be deemed an admission or presumption that lessee has failed to perform all its obligations hereunder.  Should it be asserted in any notice given to the lessee under the provisions of this paragraph that lessee has failed to comply with any implied obligation or covenant hereof, this lease shall not be subject to cancellation for any such cause except after final judicial ascertainment that such failure exists and lessee has then been afforded a reasonable time to prevent cancellation by complying with and discharging its obligations as to which lessee has been judicially determined to be in default.  **In the event that any dispute relating to this lease or to the performance of lessee hereunder results in litigation, lessor and lessee each hereby waives his/her/its right to trial by jury in any such litigation.**  If this lease is cancelled for any cause, it shall nevertheless remain in force and effect as to (1) sufficient acreage around each well as to which there are operations to constitute a drilling or maximum allowable unit under applicable government regulations (but in no event less than forty acres), such acreage to be designated by lessee as nearly as practicable in the form of a square centered at the well, or in such shape as then existing spacing rules permit or require; and (2) any part of said land included in a pooled unit on which there are operations. Lessee shall also have such easements on said land as are necessary to operations on the acreage so retained.

10. Lessor hereby warrants and agrees to defend title to said land against the claims of all persons whomsoever.  Lessor's rights and interests hereunder shall be charged primarily with any mortgages, taxes or other liens, or interest and other charges on said land, but lessor agrees that lessee shall have the right at any time to pay or reduce same for lessor, either before or after maturity, and be subrogated to the rights of the holder thereof and to deduct amounts so paid from royalties or other payments payable or which may become payable to lessor and/or assigns under this lease. Lessee is hereby given the right to acquire for its own benefit, deeds, leases, or assignments covering any interest or claim in said land which lessee or any other party contends is outstanding and not covered hereby and even though such outstanding interest or claim be invalid or adverse to lessor. If this lease covers a less interest in the oil, gas, sulphur, or other minerals in all or any part of said land than the entire and undivided fee simple estate (whether lessor's interest is herein specified or not), or no interest therein, then the royalties, and other moneys accruing from any part as to which this lease covers less than such full interest, shall be paid only in the proportion which the interest therein, if any, covered by this lease, bears to the whole and undivided fee simple estate therein.  All royalty interest covered by this lease (whether or not owned by lessor) shall be paid out of the royalty herein provided.  This lease shall be binding upon each party who executes it without regard to whether it is executed by all those named herein as lessor.

11. If, while this lease is in force, at, or after the expiration of the primary term hereof, it is not being continued in force by reason of the shut-in well provisions of paragraph 3 hereof, and lessee is not conducting operations on said land by reason of (1) any law, order, rule or regulation, (whether or not subsequently determined to be invalid) or (2) any other cause, whether similar or dissimilar, (except financial), beyond the reasonable control of lessee, the primary term hereof shall be extended until the first anniversary date hereof occurring ninety (90) or more days following the removal of such delaying cause, and this lease may be extended thereafter by operations as if such delay had not occurred.

IN WITNESS WHEREOF, this instrument is executed to be effective on the date first above written.

_____

_____

_____

_____

ACKNOWLEDGEMENT

STATE OF _____
COUNTY OF _____

I _____, a notary public in and for said County in said State, hereby certify that _____ _____ whose name(s) is/are signed to the foregoing conveyance, and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he/she/they executed the same voluntarily on the day the same bears date.

Given under my hand and official seal, this _____ day of _____, A.D., 20__.

(Affix Seal)

_____
Notary Public
My commission expires: _____,     in and for _____ County, _____

_____

For recording purposes only, this lease is deemed cover _____ mineral acres and has a primary term of less than10 years.

cpe2dep10041X



COPAS 2005 Accounting Procedure
Recommended by COPAS

# Exhibit " C "
# ACCOUNTING PROCEDURE
# JOINT OPERATIONS

Attached to and made part of  that certain Operating Agreement dated June 17, 2016 by and between Sklar Exploration Company
L.L.C., as Operator, and Sklarco L.L.C. et al., as non-operators regarding the CCL&T 3-7 #1 Well, NE ¼, Section 3, Township 3 North,
Range 13 East, Conecuh County, Alabama

## I. GENERAL PROVISIONS

IF THE PARTIES FAIL TO SELECT EITHER ONE OF COMPETING "ALTERNATIVE" PROVISIONS, OR SELECT ALL THE
COMPETING "ALTERNATIVE" PROVISIONS, ALTERNATIVE 1 IN EACH SUCH INSTANCE SHALL BE DEEMED TO HAVE
BEEN ADOPTED BY THE PARTIES AS A RESULT OF ANY SUCH OMISSION OR DUPLICATE NOTATION.

IN THE EVENT THAT ANY "OPTIONAL" PROVISION OF THIS ACCOUNTING PROCEDURE IS NOT ADOPTED BY THE
PARTIES TO THE AGREEMENT BY A TYPED, PRINTED OR HANDWRITTEN INDICATION, SUCH PROVISION SHALL NOT
FORM A PART OF THIS ACCOUNTING PROCEDURE, AND NO INFERENCE SHALL BE MADE CONCERNING THE INTENT
OF THE PARTIES IN SUCH EVENT.

1.   **DEFINITIONS**

All terms used in this Accounting Procedure shall have the following meaning, unless otherwise expressly defined in the Agreement:

"**Affiliate**" means for a person, another person that controls, is controlled by, or is under common control with that person. In this
definition, (a) control means the ownership by one person, directly or indirectly, of more than fifty percent (50%) of the voting securities
of a corporation or, for other persons, the equivalent ownership interest (such as partnership interests), and (b) "person" means an
individual, corporation, partnership, trust, estate, unincorporated organization, association, or other legal entity.

"**Agreement**" means the operating agreement, farmout agreement, or other contract between the Parties to which this Accounting
Procedure is attached.

"**Controllable Material**" means Material that, at the time of acquisition or disposition by the Joint Account, as applicable, is so classified
in the Material Classification Manual most recently recommended by the Council of Petroleum Accountants Societies (COPAS).

"**Equalized Freight**" means the procedure of charging transportation cost to the Joint Account based upon the distance from the nearest
Railway Receiving Point to the property.

"**Excluded Amount**" means a specified excluded trucking amount most recently recommended by COPAS.

"**Field Office**" means a structure, or portion of a structure, whether a temporary or permanent installation, the primary function of which is
to directly serve daily operation and maintenance activities of the Joint Property and which serves as a staging area for directly chargeable
field personnel.

"**First Level Supervision**" means those employees whose primary function in Joint Operations is the direct oversight of the Operator's
field employees and/or contract labor directly employed On-site in a field operating capacity. First Level Supervision functions may
include, but are not limited to:

* Responsibility for field employees and contract labor engaged in activities that can include field operations, maintenance,
  construction, well remedial work, equipment movement and drilling·
* Responsibility for day-to-day direct oversight of rig operations
* Responsibility for day-to-day direct oversight of construction operations
* Coordination of job priorities and approval of work procedures
* Responsibility for optimal resource utilization (equipment, Materials, personnel)
* Responsibility for meeting production and field operating expense targets
* Representation of the Parties in local matters involving community, vendors, regulatory agents and landowners, as an incidental
  part of the supervisor's operating responsibilities
* Responsibility for all emergency responses with field staff
* Responsibility for implementing safety and environmental practices
* Responsibility for field adherence to company policy
* Responsibility for employment decisions and performance appraisals for field personnel
* Oversight of sub-groups for field functions such as electrical, safety, environmental, telecommunications, which may have group
  or team leaders.

"**Joint Account**" means the account showing the charges paid and credits received in the conduct of the Joint Operations that are to be
shared by the Parties, but does not include proceeds attributable to hydrocarbons and by-products produced under the Agreement.

"**Joint Operations**" means all operations necessary or proper for the exploration, appraisal, development, production, protection,
maintenance, repair, abandonment, and restoration of the Joint Property.

COPYRIGHT © 2005 by Council of Petroleum Accountants Societies, Inc. (COPAS)

1



COPAS 2005 Accounting Procedure
Recommended by COPAS, Inc.

1
2
3    **"Joint Property"** means the real and personal property subject to the Agreement.
4
5    **"Laws"** means any laws, rules, regulations, decrees, and orders of the United States of America or any state thereof and all other
6    governmental bodies, agencies, and other authorities having jurisdiction over or affecting the provisions contained in or the transactions
7    contemplated by the Agreement or the Parties and their operations, whether such laws now exist or are hereafter amended, enacted,
     promulgated or issued.

8    **"Material"** means personal property, equipment, supplies, or consumables acquired or held for use by the Joint Property.

10   **"Non-Operators"** means the Parties to the Agreement other than the Operator.

12   **"Offshore Facilities"** means platforms, surface and subsea development and production systems, and other support systems such as oil and
13   gas handling facilities, living quarters, offices, shops, cranes, electrical supply equipment and systems, fuel and water storage and piping,
14   heliport, marine docking installations, communication facilities, navigation aids, and other similar facilities necessary in the conduct of
15   offshore operations, all of which are located offshore.

17   **"Off-site"** means any location that is not considered On-site as defined in this Accounting Procedure.

19   **"On-site"** means on the Joint Property when in direct conduct of Joint Operations. The term "On-site" shall also include that portion of
20   Offshore Facilities, Shore Base Facilities, fabrication yards, and staging areas from which Joint Operations are conducted, or other
21   facilities that directly control equipment on the Joint Property, regardless of whether such facilities are owned by the Joint Account.

23   **"Operator"** means the Party designated pursuant to the Agreement to conduct the Joint Operations.

25   **"Parties"** means legal entities signatory to the Agreement or their successors and assigns. Parties shall be referred to individually as
26   "Party."

28   **"Participating Interest"** means the percentage of the costs and risks of conducting an operation under the Agreement that a Party agrees,
29   or is otherwise obligated, to pay and bear.

31   **"Participating Party"** means a Party that approves a proposed operation or otherwise agrees, or becomes liable, to pay and bear a share of
32   the costs and risks of conducting an operation under the Agreement.

34   **"Personal Expenses"** means reimbursed costs for travel and temporary living expenses.

36   **"Railway Receiving Point"** means the railhead nearest the Joint Property for which freight rates are published, even though an actual
37   railhead may not exist.

39   **"Shore Base Facilities"** means onshore support facilities that during Joint Operations provide such services to the Joint Property as a
40   receiving and transshipment point for Materials; debarkation point for drilling and production personnel and services; communication,
41   scheduling and dispatching center; and other associated functions serving the Joint Property.

43   **"Supply Store"** means a recognized source or common stock point for a given Material item.

45   **"Technical Services"** means services providing specific engineering, geoscience, or other professional skills, such as those performed by
46   engineers, geologists, geophysicists, and technicians, required to handle specific operating conditions and problems for the benefit of Joint
47   Operations; provided, however, Technical Services shall not include those functions specifically identified as overhead under the second
48   paragraph of the introduction of Section III (*Overhead*). Technical Services may be provided by the Operator, Operator's Affiliate, Non-
49   Operator, Non-Operator Affiliates, and/or third parties.

51   2.   **STATEMENTS AND BILLINGS**

53   The Operator shall bill Non-Operators on or before the last day of the month for their proportionate share of the Joint Account for the
54   preceding month. Such bills shall be accompanied by statements that identify the AFE (authority for expenditure), lease or facility, and all
55   charges and credits summarized by appropriate categories of investment and expense. Controllable Material shall be separately identified
56   and fully described in detail, or at the Operator's option, Controllable Material may be summarized by major Material classifications.
57   Intangible drilling costs, audit adjustments, and unusual charges and credits shall be separately and clearly identified.

59   The Operator may make available to Non-Operators any statements and bills required under Section I.2 and/or Section I.3.A (*Advances
60   and Payments by the Parties*) via email, electronic data interchange, internet websites or other equivalent electronic media in lieu of paper
61   copies. The Operator shall provide the Non-Operators instructions and any necessary information to access and receive the statements and
62   bills within the timeframes specified herein. A statement or billing shall be deemed as delivered twenty-four (24) hours (exclusive of
63   weekends and holidays) after the Operator notifies the Non-Operator that the statement or billing is available on the website and/or sent via
64   email or electronic data interchange transmission. Each Non-Operator individually shall elect to receive statements and billings
65   electronically, if available from the Operator, or request paper copies. Such election may be changed upon thirty (30) days prior written
66   notice to the Operator.

COPYRIGHT © 2005 by Council of Petroleum Accountants Societies, Inc. (COPAS)



COPAS 2005 Accounting Procedure
Recommended by COPAS, Inc.

3.   **ADVANCES AND PAYMENTS BY THE PARTIES**

A.   Unless otherwise provided for in the Agreement, the Operator may require the Non-Operators to advance their share of the estimated cash outlay for the succeeding month's operations within / ~~fifteen (15)~~ ten (10) days after receipt of the advance request or by the first day of the month for which the advance is required, whichever is later. The Operator shall adjust each monthly billing to reflect advances received from the Non-Operators for such month. If a refund is due, the Operator shall apply the amount to be refunded to the subsequent month's billing or advance, unless the Non-Operator sends the Operator a written request for a cash refund. The Operator shall remit the refund to the Non-Operator within fifteen (15) days of receipt of such written request.

B.   Except as provided below, each Party shall pay its proportionate share of all bills in full within fifteen (15) days of receipt date. If payment is not made within such time, the unpaid balance shall bear interest compounded monthly at the prime rate published by the *Wall Street Journal* on the first day of each month the payment is delinquent, plus three percent (3%), per annum, or the maximum contract rate permitted by the applicable usury Laws governing the Joint Property, whichever is the lesser, plus attorney's fees, court costs, and other costs in connection with the collection of unpaid amounts. If the *Wall Street Journal* ceases to be published or discontinues publishing a prime rate, the unpaid balance shall bear interest compounded monthly at the prime rate published by the Federal Reserve plus three percent (3%), per annum. Interest shall begin accruing on the first day of the month in which the payment was due. Payment shall not be reduced or delayed as a result of inquiries or anticipated credits unless the Operator has agreed. Notwithstanding the foregoing, the Non-Operator may reduce payment, provided it furnishes documentation and explanation to the Operator at the time payment is made, to the extent such reduction is caused by:

(1)   being billed at an incorrect working interest or Participating Interest that is higher than such Non-Operator's actual working interest or Participating Interest, as applicable; or

(2)   being billed for a project or AFE requiring approval of the Parties under the Agreement that the Non-Operator has not approved or is not otherwise obligated to pay under the Agreement; or

(3)   being billed for a property in which the Non-Operator no longer owns a working interest, provided the Non-Operator has furnished the Operator a copy of the recorded assignment or letter in-lieu. Notwithstanding the foregoing, the Non-Operator shall remain responsible for paying bills attributable to the interest sold or transferred for any bills rendered during the thirty (30) day period following the Operator's receipt of such written notice; or

(4)   charges outside the adjustment period, as provided in Section I.4 (*Adjustments*).

4.   **ADJUSTMENTS**

A.   Payment of any such bills shall not prejudice the right of any Party to protest or question the correctness thereof; however, all bills and statements, including payout statements, rendered during any calendar year shall conclusively be presumed to be true and correct, with respect only to expenditures, after twenty-four (24) months following the end of any such calendar year, unless within said period a Party takes specific detailed written exception thereto making a claim for adjustment. The Operator shall provide a response to all written exceptions, whether or not contained in an audit report, within the time periods prescribed in Section I.5 (*Expenditure Audits*).

B.   All adjustments initiated by the Operator, except those described in items (1) through (4) of this Section I.4.B, are limited to the twenty-four (24) month period following the end of the calendar year in which the original charge appeared or should have appeared on the Operator's Joint Account statement or payout statement. Adjustments that may be made beyond the twenty-four (24) month period are limited to adjustments resulting from the following:

(1)   a physical inventory of Controllable Material as provided for in Section V (*Inventories of Controllable Material*), or

(2)   an offsetting entry (whether in whole or in part) that is the direct result of a specific joint interest audit exception granted by the Operator relating to another property, or

(3)   a government/regulatory audit, or

(4)   a working interest ownership or Participating Interest adjustment.

5.   **EXPENDITURE AUDITS**

A.   A Non-Operator, upon written notice to the Operator and all other Non-Operators, shall have the right to audit the Operator's accounts and records relating to the Joint Account within the twenty-four (24) month period following the end of such calendar year in which such bill was rendered; however, conducting an audit shall not extend the time for the taking of written exception to and the adjustment of accounts as provided for in Section I.4 (*Adjustments*). Any Party that is subject to payout accounting under the Agreement shall have the right to audit the accounts and records of the Party responsible for preparing the payout statements, or of the Party furnishing information to the Party responsible for preparing payout statements. Audits of payout accounts may include the volumes of hydrocarbons produced and saved and proceeds received for such hydrocarbons as they pertain to payout accounting required under the Agreement. Unless otherwise provided in the Agreement, audits of a payout account shall be conducted within the twenty-four (24) month period following the end of the calendar year in which the payout statement was rendered.

Where there are two or more Non-Operators, the Non-Operators shall make every reasonable effort to conduct a joint audit in a manner that will result in a minimum of inconvenience to the Operator. The Operator shall bear no portion of the Non-Operators' audit cost incurred under this paragraph unless agreed to by the Operator. The audits shall not be conducted more than once each year without prior approval of the Operator, except upon the resignation or removal of the Operator, and shall be made at the expense of

COPYRIGHT © 2005 by Council of Petroleum Accountants Societies, Inc. (COPAS)

3

COPAS 2005 Accounting Procedure
Recommended by COPAS, Inc.

Operator shall notify all Non-Operators of the Operator's proposal and the agreement or approval of a majority in interest of the Non-Operators shall be controlling on all Non-Operators.

This Section I.6.A applies to specific situations of limited duration where a Party proposes to change the accounting for charges from that prescribed in this Accounting Procedure. This provision does not apply to amendments to this Accounting Procedure, which are covered by Section I.6.B.

B.   AMENDMENTS

If the Agreement to which this Accounting Procedure is attached contains no contrary provisions in regard thereto, this Accounting Procedure can be amended by an affirmative vote of _____**two**_____ (__**2**__) or more Parties, one of which is the Operator, having a combined working interest of at least _____**fifty-one**_____ percent (__**51**__%), which approval shall be binding on all Parties, provided, however, approval of at least one (1) Non-Operator shall be required.

C.   AFFILIATES

For the purpose of administering the voting procedures of Sections I.6.A and I.6.B, if Parties to this Agreement are Affiliates of each other, then such Affiliates shall be combined and treated as a single Party having the combined working interest or Participating Interest of such Affiliates.

For the purposes of administering the voting procedures in Section I.6.A, if a Non-Operator is an Affiliate of the Operator, votes under Section I.6.A shall require the majority in interest of the Non-Operator(s) after excluding the interest of the Operator's Affiliate.

## II. DIRECT CHARGES

The Operator shall charge the Joint Account with the following items:

1.   **RENTALS AND ROYALTIES**

Lease rentals and royalties paid by the Operator, on behalf of all Parties, for the Joint Operations.

2.   **LABOR**

A.   Salaries and wages, including incentive compensation programs as set forth in COPAS MFI-37 ("Chargeability of Incentive Compensation Programs"), for:

(1)   Operator's field employees directly employed On-site in the conduct of Joint Operations,

(2)   Operator's employees directly employed on Shore Base Facilities, Offshore Facilities, or other facilities serving the Joint Property if such costs are not charged under Section II.6 (*Equipment and Facilities Furnished by Operator*) or are not a function covered under Section III (*Overhead*),

(3)   Operator's employees providing First Level Supervision,

(4)   Operator's employees providing On-site Technical Services for the Joint Property if such charges are excluded from the overhead rates in Section III (*Overhead*),

(5)   Operator's employees providing Off-site Technical Services for the Joint Property if such charges are excluded from the overhead rates in Section III (*Overhead*).

Charges for the Operator's employees identified in Section II.2.A may be made based on the employee's actual salaries and wages, or in lieu thereof, a day rate ~~representing the Operator's average salaries and wages of the employee's specific job category per~~ ~~person, based upon day rates generally accepted in the industry for consultants or independent contractors performing like~~ ~~jobs.~~

Charges for personnel chargeable under this Section II.2.A who are foreign nationals shall not exceed comparable compensation paid to an equivalent U.S. employee pursuant to this Section II.2, unless otherwise approved by the Parties pursuant to Section I.6.A (*General Matters*).

B.   Operator's cost of holiday, vacation, sickness, and disability benefits, and other customary allowances paid to employees whose salaries and wages are chargeable to the Joint Account under Section II.2.A, excluding severance payments or other termination allowances. Such costs under this Section II.2.B may be charged on a "when and as-paid basis" or by "percentage assessment" on the amount of salaries and wages chargeable to the Joint Account under Section II.2.A. If percentage assessment is used, the rate shall be based on the Operator's cost experience.

C.   Expenditures or contributions made pursuant to assessments imposed by governmental authority that are applicable to costs chargeable to the Joint Account under Sections II.2.A and B.

COPYRIGHT © 2005 by Council of Petroleum Accountants Societies, Inc. (COPAS)



COPAS 2005 Accounting Procedure
Recommended by COPAS, Inc.

D. Personal Expenses of personnel whose salaries and wages are chargeable to the Joint Account under Section II.2.A when the expenses are incurred in connection with directly chargeable activities.

E. Reasonable relocation costs incurred in transferring to the Joint Property Joint Property personnel whose salaries and wages are chargeable to the Joint Account under Section II.2.A. Notwithstanding the foregoing, relocation costs that result from reorganization or merger of a Party, or that are for the primary benefit of the Operator, shall not be chargeable to the Joint Account. Extraordinary relocation costs, such as those incurred as a result of transfers from remote locations, such as Alaska or overseas, shall not be charged to the Joint Account unless approved by the Parties pursuant to Section I.6.A (*General Matters*).

F. Training costs as specified in COPAS MFI-35 ("Charging of Training Costs to the Joint Account") for personnel whose salaries and wages are chargeable under Section II.2.A. This training charge shall include the wages, salaries, training course cost, and Personal Expenses incurred during the training session. The training cost shall be charged or allocated to the property or properties directly benefiting from the training. The cost of the training course shall not exceed prevailing commercial rates, where such rates are available.

G. Operator's current cost of established plans for employee benefits, as described in COPAS MFI-27 ("Employee Benefits Chargeable to Joint Operations and Subject to Percentage Limitation"), applicable to the Operator's labor costs chargeable to the Joint Account under Sections II.2.A and B based on the Operator's actual cost not to exceed the employee benefits limitation percentage most recently recommended by COPAS.

H. Award payments to employees, in accordance with COPAS MFI-49 ("Awards to Employees and Contractors") for personnel whose salaries and wages are chargeable under Section II.2.A.

3. **MATERIAL**

Material purchased or furnished by the Operator for use on the Joint Property in the conduct of Joint Operations as provided under Section IV (Material *Purchases, Transfers, and Dispositions*). Only such Material shall be purchased for or transferred to the Joint Property as may be required for immediate use or is reasonably practical and consistent with efficient and economical operations. The accumulation of surplus stocks shall be avoided.

4. **TRANSPORTATION**

A. Transportation of the Operator's, Operator's Affiliate's, or contractor's personnel necessary for Joint Operations.

B. Transportation of Material between the Joint Property and another property, or from the Operator's warehouse or other storage point to the Joint Property, shall be charged to the receiving property using one of the methods listed below. Transportation of Material from the Joint Property to the Operator's warehouse or other storage point shall be paid for by the Joint Property using one of the methods listed below:

   (1) If the actual trucking charge is less than or equal to the Excluded Amount the Operator may charge actual trucking cost or a theoretical charge from the Railway Receiving Point to the Joint Property. The basis for the theoretical charge is the per hundred weight charge plus fuel surcharges from the Railway Receiving Point to the Joint Property . The Operator shall consistently apply the selected alternative.

   (2) If the actual trucking charge is greater than the Excluded Amount, the Operator shall charge Equalized Freight. Accessorial charges such as loading and unloading costs, split pick-up costs, detention, call out charges, and permit fees shall be charged directly to the Joint Property and shall not be included when calculating the Equalized Freight.

5. **SERVICES**

The cost of contract services, equipment, and utilities used in the conduct of Joint Operations, except for contract services, equipment, and utilities covered by Section III (*Overhead*), or Section II.7 (*Affiliates*), or excluded under Section II.9 (*Legal Expense*). Awards paid to contractors shall be chargeable pursuant to COPAS MFI-49 ("Awards to Employees and Contractors").

The costs of third party Technical Services are chargeable to the extent excluded from the overhead rates under Section III (*Overhead*).

6. **EQUIPMENT AND FACILITIES FURNISHED BY OPERATOR**

In the absence of a separately negotiated agreement, equipment and facilities furnished by the Operator will be charged as follows:

A. The Operator shall charge the Joint Account for use of Operator-owned equipment and facilities, including but not limited to production facilities, Shore Base Facilities, Offshore Facilities, and Field Offices, at rates commensurate with the costs of ownership and operation. The cost of Field Offices shall be chargeable to the extent the Field Offices provide direct service to personnel who are chargeable pursuant to Section II.2.A (*Labor*). Such rates may include labor, maintenance, repairs, other operating expense, insurance, taxes, depreciation using straight line depreciation method, and interest on gross investment less accumulated depreciation not to exceed _____ten_____ percent (____10____%) per annum; provided, however, depreciation shall not be charged when the

COPYRIGHT © 2005 by Council of Petroleum Accountants Societies, Inc. (COPAS)

6



COPAS 2005 Accounting Procedure
Recommended by COPAS, Inc.

C O P A S

equipment and facilities investment have been fully depreciated. The rate may include an element of the estimated cost for abandonment, reclamation, and dismantlement. Such rates shall not exceed the average commercial rates currently prevailing in the immediate area of the Joint Property.

B.   In lieu of charges in Section II.6.A above, the Operator may elect to use average commercial rates prevailing in the immediate area of the Joint Property, less twenty percent (20%). If equipment and facilities are charged under this Section II.6.B, the Operator shall adequately document and support commercial rates and shall periodically review and update the rate and the supporting documentation. For automotive equipment, the Operator may elect to use rates published by the Petroleum Motor Transport Association (PMTA) or such other organization recognized by COPAS as the official source of rates.

7.   **AFFILIATES**

A.   Charges for an Affiliate's goods and/or services used in operations requiring an AFE or other authorization from the Non-Operators may be made without the approval of the Parties provided (i) the Affiliate is identified and the Affiliate goods and services are specifically detailed in the approved AFE or other authorization, and (ii) the total costs for such Affiliate's goods and services billed to such individual project do not exceed $ __15,000.00__ If the total costs for an Affiliate's goods and services charged to such individual project are not specifically detailed in the approved AFE or authorization or exceed such amount, charges for such Affiliate shall require approval of the Parties, pursuant to Section I.6.A (*General Matters*).

B.   For an Affiliate's goods and/or services used in operations not requiring an AFE or other authorization from the Non-Operators, charges for such Affiliate's goods and services shall require approval of the Parties, pursuant to Section I.6.A (*General Matters*), if the charges exceed $ __50,000.00__ in a given calendar year.

C.   The cost of the Affiliate's goods or services shall not exceed average commercial rates prevailing in the area of the Joint Property, unless the Operator obtains the Non-Operators' approval of such rates. The Operator shall adequately document and support commercial rates and shall periodically review and update the rate and the supporting documentation; provided, however, documentation of commercial rates shall not be required if the Operator obtains Non-Operator approval of its Affiliate's rates or charges prior to billing Non-Operators for such Affiliate's goods and services. Notwithstanding the foregoing, direct charges for Affiliate-owned communication facilities or systems shall be made pursuant to Section II.12 (*Communications*).

If the Parties fail to designate an amount in Sections II.7.A or II.7.B, in each instance the amount deemed adopted by the Parties as a result of such omission shall be the amount established as the Operator's expenditure limitation in the Agreement. If the Agreement does not contain an Operator's expenditure limitation, the amount deemed adopted by the Parties as a result of such omission shall be zero dollars ($ 0.00).

8.   **DAMAGES AND LOSSES TO JOINT PROPERTY**

All costs or expenses necessary for the repair or replacement of Joint Property resulting from damages or losses incurred, except to the extent such damages or losses result from a Party's or Parties' gross negligence or willful misconduct, in which case such Party or Parties shall be solely liable.

The Operator shall furnish the Non-Operator written notice of damages or losses incurred as soon as practicable after a report has been received by the Operator.

9.   **LEGAL EXPENSE**

Recording fees and costs of handling, settling, or otherwise discharging litigation, claims, and liens incurred in or resulting from operations under the Agreement, or necessary to protect or recover the Joint Property, to the extent permitted under the Agreement. Costs of the Operator's or Affiliate's legal staff or outside attorneys, including fees and expenses, are not chargeable unless approved by the Parties pursuant to Section I.6.A (*General Matters*) or otherwise provided for in the Agreement.

Notwithstanding the foregoing paragraph, costs for procuring abstracts, fees paid to outside attorneys / landmen and contractors for title examinations (including preliminary, supplemental, shut-in royalty opinions, division order title opinions), and curative work shall be chargeable to the extent permitted as a direct charge in the Agreement.

10.   **TAXES AND PERMITS**

All taxes and permitting fees of every kind and nature, assessed or levied upon or in connection with the Joint Property, or the production therefrom, and which have been paid by the Operator for the benefit of the Parties, including penalties and interest, except to the extent the penalties and interest result from the Operator's gross negligence or willful misconduct.

If ad valorem taxes paid by the Operator are based in whole or in part upon separate valuations of each Party's working interest, then notwithstanding any contrary provisions, the charges to the Parties will be made in accordance with the tax value generated by each Party's working interest.

COPYRIGHT © 2005 by Council of Petroleum Accountants Societies, Inc. (COPAS)



COPAS 2005 Accounting Procedure
Recommended by COPAS, Inc.

Costs of tax consultants or advisors, the Operator's employees, or Operator's Affiliate employees in matters regarding ad valorem or other tax matters, are not permitted as direct charges unless approved by the Parties pursuant to Section I.6.A (*General Matters*).

Charges to the Joint Account resulting from sales/use tax audits, including extrapolated amounts and penalties and interest, are permitted, provided the Non-Operator shall be allowed to review the invoices and other underlying source documents which served as the basis for tax charges and to determine that the correct amount of taxes were charged to the Joint Account. If the Non-Operator is not permitted to review such documentation, the sales/use tax amount shall not be directly charged unless the Operator can conclusively document the amount owed by the Joint Account.

**11.   INSURANCE**

Net premiums paid for insurance required to be carried for Joint Operations for the protection of the Parties. If Joint Operations are conducted at locations where the Operator acts as self-insurer in regard to its worker's compensation and employer's liability insurance obligation, the Operator shall charge the Joint Account manual rates for the risk assumed in its self-insurance program as regulated by the jurisdiction governing the Joint Property. In the case of offshore operations in federal waters, the manual rates of the adjacent state shall be used for personnel performing work On-site, and such rates shall be adjusted for offshore operations by the U.S. Longshoreman and Harbor Workers (USL&H) or Jones Act surcharge, as appropriate.

**12.   COMMUNICATIONS**

Costs of acquiring, leasing, installing, operating, repairing, and maintaining communication facilities or systems, including satellite, radio and microwave facilities, between the Joint Property and the Operator's office(s) directly responsible for field operations in accordance with the provisions of COPAS MFI-44 ("Field Computer and Communication Systems"). If the communications facilities or systems serving the Joint Property are Operator-owned, charges to the Joint Account shall be made as provided in Section II.6 (*Equipment and Facilities Furnished by Operator*). If the communication facilities or systems serving the Joint Property are owned by the Operator's Affiliate, charges to the Joint Account shall not exceed average commercial rates prevailing in the area of the Joint Property. The Operator shall adequately document and support commercial rates and shall periodically review and update the rate and the supporting documentation.

**13.   ECOLOGICAL, ENVIRONMENTAL, AND SAFETY**

Costs incurred for Technical Services and drafting to comply with ecological, environmental and safety Laws or standards recommended by Occupational Safety and Health Administration (OSHA) or other regulatory authorities. All other labor and functions incurred for ecological, environmental and safety matters, including management, administration, and permitting, shall be covered by Sections II.2 (*Labor*), II.5 (*Services*), or Section III (*Overhead*), as applicable.

Costs to provide or have available pollution containment and removal equipment plus actual costs of control and cleanup and resulting responsibilities of oil and other spills as well as discharges from permitted outfalls as required by applicable Laws, or other pollution containment and removal equipment deemed appropriate by the Operator for prudent operations, are directly chargeable.

**14.   ABANDONMENT AND RECLAMATION**

Costs incurred for abandonment and reclamation of the Joint Property, including costs required by lease agreements or by Laws.

**15.   OTHER EXPENDITURES**

Any other expenditure not covered or dealt with in the foregoing provisions of this Section II (*Direct Charges*), or in Section III (*Overhead*) and which is of direct benefit to the Joint Property and is incurred by the Operator in the necessary and proper conduct of the Joint Operations. Charges made under this Section II.15 shall require approval of the Parties, pursuant to Section I.6.A (*General Matters*).

**III. OVERHEAD**

As compensation for costs not specifically identified as chargeable to the Joint Account pursuant to Section II (*Direct Charges*), the Operator shall charge the Joint Account in accordance with this Section III.

Functions included in the overhead rates regardless of whether performed by the Operator, Operator's Affiliates or third parties and regardless of location, shall include, but not be limited to, costs and expenses of:

- warehousing, other than for warehouses that are jointly owned under this Agreement
- design and drafting (except when allowed as a direct charge under Sections II.13, III.1.A(ii), and III.2, Option B)
- inventory costs not chargeable under Section V (*Inventories of Controllable Material*)
- procurement
- administration
- accounting and auditing
- gas dispatching ~~and gas chart integration~~

COPYRIGHT © 2005 by Council of Petroleum Accountants Societies, Inc. (COPAS)



- human resources
- management
- supervision not directly charged under Section II.2 (*Labor*)
- legal services not directly chargeable under Section II.9 (*Legal Expense*)
- taxation, other than those costs identified as directly chargeable under Section II.10 (*Taxes and Permits*)
- preparation and monitoring of permits and certifications; preparing regulatory reports; appearances before or meetings with governmental agencies or other authorities having jurisdiction over the Joint Property, other than On-site inspections; reviewing, interpreting, or submitting comments on or lobbying with respect to Laws or proposed Laws.

Overhead charges shall include the salaries or wages plus applicable payroll burdens, benefits, and Personal Expenses of personnel performing overhead functions, as well as office and other related expenses of overhead functions.

1.  **OVERHEAD—DRILLING AND PRODUCING OPERATIONS**

    As compensation for costs incurred but not chargeable under Section II (*Direct Charges*) and not covered by other provisions of this Section III, the Operator shall charge on either:

    ☑ **(Alternative 1)** Fixed Rate Basis, Section III.1.B.
    ☐ ~~(Alternative 2)  Percentage Basis, Section III.1.C.~~

    A.  TECHNICAL SERVICES

    (i)   Except as otherwise provided in Section II.13 (*Ecological, Environmental, and Safety*) and Section III.2 (*Overhead – Major Construction and Catastrophe*), or by approval of the Parties pursuant to Section I.6.A (*General Matters*), the salaries, wages, related payroll burdens and benefits, and Personal Expenses for **On-site** Technical Services, including third party Technical Services:

    ☑ **(Alternative 1 – Direct)** shall be charged **direct** to the Joint Account.
    ☐ ~~(Alternative 2 – Overhead) shall be covered by the overhead rates.~~

    (ii)  Except as otherwise provided in Section II.13 (*Ecological, Environmental, and Safety*) and Section III.2 (*Overhead – Major Construction and Catastrophe*), or by approval of the Parties pursuant to Section I.6.A (*General Matters*), the salaries, wages, related payroll burdens and benefits, and Personal Expenses for **Off-site** Technical Services, including third party Technical Services:

    ☐ ~~(Alternative 1 – All Overhead) shall be covered by the overhead rates.~~

    ☑ **(Alternative 2 – All Direct)** shall be charged **direct** to the Joint Account.

    ☐ ~~(Alternative 3 – Drilling Direct) shall be charged direct to the Joint Account, only to the extent such Technical Services are directly attributable to drilling, redrilling, deepening, or sidetracking operations, through completion, temporary abandonment, or abandonment if a dry hole. Off-site Technical Services for all other operations, including workover, recompletion, abandonment of producing wells, and the construction or expansion of fixed assets not covered by Section III.2 (Overhead–Major Construction and Catastrophe) shall be covered by the overhead rates.~~

    Notwithstanding anything to the contrary in this Section III, Technical Services provided by Operator's Affiliates are subject to limitations set forth in Section II.7 (*Affiliates*). Charges for Technical personnel performing non-technical work shall not be governed by this Section III.1.A, but instead governed by other provisions of this Accounting Procedure relating to the type of work being performed.

    B.  OVERHEAD—FIXED RATE BASIS

    (1)   The Operator shall charge the Joint Account at the following rates per well per month:

    Drilling Well Rate per month $  15,000.00  (prorated for less than a full month)

    Producing Well Rate per month $  1,500.00

    (2)   Application of Overhead—Drilling Well Rate shall be as follows:

    (a)   Charges for onshore drilling wells shall begin on the spud date and terminate on the date the drilling and/or completion equipment used on the well is released, whichever occurs later. Charges for offshore and inland waters drilling wells shall begin on the date the drilling or completion equipment arrives on location and terminate on the date the drilling or completion equipment moves off location, or is released, whichever occurs first. No charge shall be made during suspension of drilling and/or completion operations for fifteen (15) or more consecutive calendar days.

COPYRIGHT © 2005 by Council of Petroleum Accountants Societies, Inc. (COPAS)



COPAS 2005 Accounting Procedure
Recommended by COPAS, Inc.

(b)    Charges for any well undergoing any type of workover, recompletion, and/or abandonment ~~for a period of five (5) or more~~ ~~consecutive work days~~ shall be made at the Drilling Well Rate. Such charges shall be applied for the period from date operations, with rig or other units used in operations, commence through date of rig or other unit release, except that no charges shall be made during suspension of operations for fifteen (15) or more consecutive calendar days.

(3)    Application of Overhead—Producing Well Rate shall be as follows:

(a)    An active well that is produced, injected into for recovery or disposal, or used to obtain water supply to support operations for any portion of the month shall be considered as a one-well charge for the entire month.

(b)    Each active completion in a multi-completed well shall be considered as a one-well charge provided each completion is considered a separate well by the governing regulatory authority.

(c)    A one-well charge shall be made for the month in which plugging and abandonment operations are completed on any well, unless the Drilling Well Rate applies, as provided in Sections III.1.B.(2)(a) or (b). This one-well charge shall be made whether or not the well has produced.

(d)    An active gas well shut in because of overproduction or failure of a purchaser, processor, or transporter to take production shall be considered as a one-well charge provided the gas well is directly connected to a permanent sales outlet.

(e)    Any well not meeting the criteria set forth in Sections III.1.B.(3) (a), (b), (c), or (d) shall not qualify for a producing overhead charge provided that 50% of the monthly producing well rate shall be applicable to an inactive well that was previously an active well or injection well.

(4)    The well rates shall be adjusted on the first day of April each year following the effective date of the Agreement; provided, however, if this Accounting Procedure is attached to or otherwise governing the payout accounting under a farmout agreement, the rates shall be adjusted on the first day of April each year following the effective date of such farmout agreement. The adjustment shall be computed by applying the adjustment factor most recently published by COPAS. The adjusted rates shall be the initial or amended rates agreed to by the Parties increased or decreased by the adjustment factor described herein, for each year from the effective date of such rates, in accordance with COPAS MFI-47 ("Adjustment of Overhead Rates").

~~C.   OVERHEAD - PERCENTAGE BASIS~~

~~(1)   Operator shall charge the Joint Account at the following rates:~~

~~(a)   Development Rate _____ percent (_____)% of the cost of development of the Joint Property, exclusive of costs provided under Section II.9 (Legal Expense) and all Material salvage credits.~~

~~(b)   Operating Rate _____ percent (_____%) of the cost of operating the Joint Property, exclusive of costs provided under Sections II.1 (Rentals and Royalties) and II.9 (Legal Expense), all Material salvage credits; the value of substances purchased for enhanced recovery; all property and ad valorem taxes, and any other taxes and assessments that are levied, assessed, and paid upon the mineral interest in and to the Joint Property.~~

~~(2)   Application of Overhead—Percentage Basis shall be as follows:~~

~~(a)   The Development Rate shall be applied to all costs in connection with:~~

~~[i]   drilling, redrilling, sidetracking, or deepening of a well~~
~~[ii]  a well undergoing plugback or workover operations for a period of five (5) or more consecutive work days~~
~~[iii] preliminary expenditures necessary in preparation for drilling~~
~~[iv]  expenditures incurred in abandoning when the well is not completed as a producer~~
~~[v]   construction or installation of fixed assets, the expansion of fixed assets and any other project clearly discernible as a fixed asset, other than Major Construction or Catastrophe as defined in Section III.2 (Overhead-Major Construction and Catastrophe).~~

~~(b)   The Operating Rate shall be applied to all other costs in connection with Joint Operations, except those subject to Section III.2 (Overhead-Major Construction and Catastrophe).~~

2.    OVERHEAD—MAJOR CONSTRUCTION AND CATASTROPHE

To compensate the Operator for overhead costs incurred in connection with a Major Construction project or Catastrophe, the Operator shall either negotiate a rate prior to the beginning of the project, or shall charge the Joint Account for overhead based on the following rates for any Major Construction project in excess of the Operator's expenditure limit under the Agreement, or for any Catastrophe regardless of the amount. If the Agreement to which this Accounting Procedure is attached does not contain an expenditure limit, Major Construction Overhead shall be assessed for any single Major Construction project costing in excess of $100,000 gross.

COPYRIGHT © 2005 by Council of Petroleum Accountants Societies, Inc. (COPAS)



COPAS 2005 Accounting Procedure
Recommended by COPAS, Inc.

Major Construction shall mean the construction and installation of fixed assets, the expansion of fixed assets, and any other project clearly discernible as a fixed asset required for the development and operation of the Joint Property, or in the dismantlement, abandonment, removal, and restoration of platforms, production equipment, and other operating facilities.

Catastrophe is defined as a sudden calamitous event bringing damage, loss, or destruction to property or the environment, such as an oil spill, blowout, explosion, fire, storm, hurricane, or other disaster. The overhead rate shall be applied to those costs necessary to restore the Joint Property to the equivalent condition that existed prior to the event.

A.   If the Operator absorbs the engineering, design and drafting costs related to the project:

(1)    5    % of total costs if such costs are less than $100,000; plus

(2)    2    % of total costs in excess of $100,000 but less than $1,000,000; plus

(3)    2    % of total costs in excess of $1,000,000.

B.   If the Operator charges engineering, design and drafting costs related to the project directly to the Joint Account:

(1)    5    % of total costs if such costs are less than $100,000; plus

(2)    2    % of total costs in excess of $100,000 but less than $1,000,000; plus

(3)    2    % of total costs in excess of $1,000,000.

Total cost shall mean the gross cost of any one project. For the purpose of this paragraph, the component parts of a single Major Construction project shall not be treated separately, and the cost of drilling and workover wells and purchasing and installing pumping units and downhole artificial lift equipment shall be excluded. For Catastrophes, the rates shall be applied to all costs associated with each single occurrence or event.

~~On each project, the Operator shall advise the Non-Operator(s) in advance which of the above options shall apply.~~

For the purposes of calculating Catastrophe Overhead, the cost of drilling relief wells, substitute wells, or conducting other well operations directly resulting from the catastrophic event shall be included. Expenditures to which these rates apply shall not be reduced by salvage or insurance recoveries. Expenditures that qualify for Major Construction or Catastrophe Overhead shall not qualify for overhead under any other overhead provisions.

In the event of any conflict between the provisions of this Section III.2 and the provisions of Sections II.2 (*Labor*), II.5 (*Services*), or II.7 (*Affiliates*), the provisions of this Section III.2 shall govern.

3.   AMENDMENT OF OVERHEAD RATES

The overhead rates provided for in this Section III may be amended from time to time if, in practice, the rates are found to be insufficient or excessive, in accordance with the provisions of Section I.6.B (*Amendments*).

IV. MATERIAL PURCHASES, TRANSFERS, AND DISPOSITIONS

The Operator is responsible for Joint Account Material and shall make proper and timely charges and credits for direct purchases, transfers, and dispositions. The Operator shall provide all Material for use in the conduct of Joint Operations; however, Material may be supplied by the Non-Operators, at the Operator's option. Material furnished by any Party shall be furnished without any express or implied warranties as to quality, fitness for use, or any other matter.

1.   DIRECT PURCHASES

Direct purchases shall be charged to the Joint Account at the price paid by the Operator after deduction of all discounts received. The Operator shall make good faith efforts to take discounts offered by suppliers, but shall not be liable for failure to take discounts except to the extent such failure was the result of the Operator's gross negligence or willful misconduct. A direct purchase shall be deemed to occur when an agreement is made between an Operator and a third party for the acquisition of Material for a specific well site or location. Material provided by the Operator under "vendor stocking programs," where the initial use is for a Joint Property and title of the Material does not pass from the manufacturer, distributor, or agent until usage, is considered a direct purchase. If Material is found to be defective or is returned to the manufacturer, distributor, or agent for any other reason, credit shall be passed to the Joint Account within sixty (60) days after the Operator has received adjustment from the manufacturer, distributor, or agent.

COPYRIGHT © 2005 by Council of Petroleum Accountants Societies, Inc. (COPAS)



C O P A S

2. **TRANSFERS**

A transfer is determined to occur when the Operator (i) furnishes Material from a storage facility or from another operated property, (ii) has assumed liability for the storage costs and changes in value, and (iii) has previously secured and held title to the transferred Material. Similarly, the removal of Material from the Joint Property to a storage facility or to another operated property is also considered a transfer; provided, however, Material that is moved from the Joint Property to a storage location for safe-keeping pending disposition may remain charged to the Joint Account and is not considered a transfer. Material shall be disposed of in accordance with Section IV.3 (*Disposition of Surplus*) and the Agreement to which this Accounting Procedure is attached.

A. **PRICING**

The value of Material transferred to/from the Joint Property should generally reflect the market value on the date of physical transfer. Regardless of the pricing method used, the Operator shall make available to the Non-Operators sufficient documentation to verify the Material valuation. When higher than specification grade or size tubulars are used in the conduct of Joint Operations, the Operator shall charge the Joint Account at the equivalent price for well design specification tubulars, unless such higher specification grade or sized tubulars are approved by the Parties pursuant to Section I.6.A (*General Matters*). Transfers of new Material will be priced using one of the following pricing methods; provided, however, the Operator shall use consistent pricing methods, and not alternate between methods for the purpose of choosing the method most favorable to the Operator for a specific transfer:

(1)  Using published prices in effect on date of movement as adjusted by the appropriate COPAS Historical Price Multiplier (HPM) or prices provided by the COPAS Computerized Equipment Pricing System (CEPS).

    (a)  For oil country tubulars and line pipe, the published price shall be based upon eastern mill carload base prices (Houston, Texas, for special end) adjusted as of date of movement, plus transportation cost as defined in Section IV.2.B (*Freight*).

    (b)  For other Material, the published price shall be the published list price in effect at date of movement, as listed by a Supply Store nearest the Joint Property where like Material is normally available, or point of manufacture plus transportation costs as defined in Section IV.2.B (*Freight*).

(2)  Based on a price quotation from a vendor that reflects a current realistic acquisition cost.

(3)  Based on the amount paid by the Operator for like Material in the vicinity of the Joint Property within the previous twelve (12) months from the date of physical transfer.

(4)  As agreed to by the Participating Parties for Material being transferred to the Joint Property, and by the Parties owning the Material for Material being transferred from the Joint Property.

B. **FREIGHT**

Transportation costs shall be added to the Material transfer price using the method prescribed by the COPAS Computerized Equipment Pricing System (CEPS). If not using CEPS, transportation costs shall be calculated as follows:

(1)  Transportation costs for oil country tubulars and line pipe shall be calculated using the distance from eastern mill to the Railway Receiving Point based on the carload weight basis as recommended by the COPAS MFI-38 ("Material Pricing Manual") and other COPAS MFIs in effect at the time of the transfer.

(2)  Transportation costs for special mill items shall be calculated from that mill's shipping point to the Railway Receiving Point. For transportation costs from other than eastern mills, the 30,000-pound interstate truck rate shall be used. Transportation costs for macaroni tubing shall be calculated based on the interstate truck rate per weight of tubing transferred to the Railway Receiving Point.

(3)  Transportation costs for special end tubular goods shall be calculated using the interstate truck rate from Houston, Texas, to the Railway Receiving Point.

(4)  Transportation costs for Material other than that described in Sections IV.2.B.(1) through (3), shall be calculated from the Supply Store or point of manufacture, whichever is appropriate, to the Railway Receiving Point

Regardless of whether using CEPS or manually calculating transportation costs, transportation costs from the Railway Receiving Point to the Joint Property are in addition to the foregoing, and may be charged to the Joint Account based on actual costs incurred. All transportation costs are subject to Equalized Freight as provided in Section II.4 (*Transportation*) of this Accounting Procedure.

C. **TAXES**

Sales and use taxes shall be added to the Material transfer price using either the method contained in the COPAS Computerized Equipment Pricing System (CEPS) or the applicable tax rate in effect for the Joint Property at the time and place of transfer. In either case, the Joint Account shall be charged or credited at the rate that would have governed had the Material been a direct purchase.

COPYRIGHT © 2005 by Council of Petroleum Accountants Societies, Inc. (COPAS)



COPAS 2005 Accounting Procedure
Recommended by COPAS, Inc.

D.   CONDITION

(1)   Condition "A" – New and unused Material in sound and serviceable condition shall be charged at one hundred percent (100%) of the price as determined in Sections IV.2.A (*Pricing*), IV.2.B (*Freight*), and IV.2.C (*Taxes*). Material transferred from the Joint Property that was not placed in service shall be credited as charged without gain or loss; provided, however, any unused Material that was charged to the Joint Account through a direct purchase will be credited to the Joint Account at the original cost paid less restocking fees charged by the vendor. New and unused Material transferred from the Joint Property may be credited at a price other than the price originally charged to the Joint Account provided such price is approved by the Parties owning such Material, pursuant to Section I.6.A (*General Matters*). All refurbishing costs required or necessary to return the Material to original condition or to correct handling, transportation, or other damages will be borne by the divesting property. The Joint Account is responsible for Material preparation, handling, and transportation costs for new and unused Material charged to the Joint Property either through a direct purchase or transfer. Any preparation costs incurred, including any internal or external coating and wrapping, will be credited on new Material provided these services were not repeated for such Material for the receiving property.

(2)   Condition "B" – Used Material in sound and serviceable condition and suitable for reuse without reconditioning shall be priced by multiplying the price determined in Sections IV.2.A (*Pricing*), IV.2.B (*Freight*), and IV.2.C (*Taxes*) by seventy-five percent (75%).

Except as provided in Section IV.2.D(3), all reconditioning costs required to return the Material to Condition "B" or to correct handling, transportation or other damages will be borne by the divesting property.

If the Material was originally charged to the Joint Account as used Material and placed in service for the Joint Property, the Material will be credited at the price determined in Sections IV.2.A (*Pricing*), IV.2.B (*Freight*), and IV.2.C (*Taxes*) multiplied by sixty-five percent (65%).

Unless otherwise agreed to by the Parties that paid for such Material, used Material transferred from the Joint Property that was not placed in service on the property shall be credited as charged without gain or loss.

(3)   Condition "C" – Material that is not in sound and serviceable condition and not suitable for its original function until after reconditioning shall be priced by multiplying the price determined in Sections IV.2.A (*Pricing*), IV.2.B (*Freight*), and IV.2.C (*Taxes*) by fifty percent (50%).

The cost of reconditioning may be charged to the receiving property to the extent Condition "C" value, plus cost of reconditioning, does not exceed Condition "B" value.

(4)   Condition "D" – Material that (i) is no longer suitable for its original purpose but useable for some other purpose, (ii) is obsolete, or (iii) does not meet original specifications but still has value and can be used in other applications as a substitute for items with different specifications, is considered Condition "D" Material. Casing, tubing, or drill pipe used as line pipe shall be priced as Grade A and B seamless line pipe of comparable size and weight. Used casing, tubing, or drill pipe utilized as line pipe shall be priced at used line pipe prices. Casing, tubing, or drill pipe used as higher pressure service lines than standard line pipe, e.g., power oil lines, shall be priced under normal pricing procedures for casing, tubing, or drill pipe. Upset tubular goods shall be priced on a non-upset basis. For other items, the price used should result in the Joint Account being charged or credited with the value of the service rendered or use of the Material, or as agreed to by the Parties pursuant to Section I.6.A (*General Matters*).

(5)   Condition "E" – Junk shall be priced at prevailing scrap value prices.

E.   OTHER PRICING PROVISIONS

(1)   Preparation Costs

Subject to Section II (*Direct Charges*) and Section III (*Overhead*) of this Accounting Procedure, costs incurred by the Operator in making Material serviceable including inspection, third party surveillance services, and other similar services will be charged to the Joint Account at prices which reflect the Operator's actual costs of the services. Documentation must be provided to the Non-Operators upon request to support the cost of service. New coating and/or wrapping shall be considered a component of the Materials and priced in accordance with Sections IV.1 (*Direct Purchases*) or IV.2.A (*Pricing*), as applicable. No charges or credits shall be made for used coating or wrapping. Charges and credits for inspections shall be made in accordance with COPAS MFI-38 ("Material Pricing Manual").

(2)   Loading and Unloading Costs

Loading and unloading costs related to the movement of the Material to the Joint Property shall be charged in accordance with the methods specified in COPAS MFI-38 ("Material Pricing Manual").

COPYRIGHT © 2005 by Council of Petroleum Accountants Societies, Inc. (COPAS)



COPAS 2005 Accounting Procedure
Recommended by COPAS, Inc.

3. **DISPOSITION OF SURPLUS**

Surplus Material is that Material, whether new or used, that is no longer required for Joint Operations. The Operator may purchase, but shall be under no obligation to purchase, the interest of the Non-Operators in surplus Material.

Dispositions for the purpose of this procedure are considered to be the relinquishment of title of the Material from the Joint Property to either a third party, a Non-Operator, or to the Operator. To avoid the accumulation of surplus Material, the Operator should make good faith efforts to dispose of surplus within twelve (12) months through buy/sale agreements, trade, sale to a third party, division in kind, or other dispositions as agreed to by the Parties.

Disposal of surplus Materials shall be made in accordance with the terms of the Agreement to which this Accounting Procedure is attached. If the Agreement contains no provisions governing disposal of surplus Material, the following terms shall apply:

- The Operator may, through a sale to an unrelated third party or entity, dispose of surplus Material having a gross sale value that is less than or equal to the Operator's expenditure limit as set forth in the Agreement to which this Accounting Procedure is attached without the prior approval of the Parties owning such Material.

- If the gross sale value exceeds the Agreement expenditure limit, the disposal must be agreed to by the Parties owning such Material.

- Operator may purchase surplus Condition "A" or "B" Material without approval of the Parties owning such Material, based on the pricing methods set forth in Section IV.2 (*Transfers*).

- Operator may purchase Condition "C" Material without prior approval of the Parties owning such Material if the value of the Materials, based on the pricing methods set forth in Section IV.2 (*Transfers*), is less than or equal to the Operator's expenditure limitation set forth in the Agreement. The Operator shall provide documentation supporting the classification of the Material as Condition C.

- Operator may dispose of Condition "D" or "E" Material under procedures normally utilized by Operator without prior approval of the Parties owning such Material.

4. **SPECIAL PRICING PROVISIONS**

A. PREMIUM PRICING

Whenever Material is available only at inflated prices due to national emergencies, strikes, government imposed foreign trade restrictions, or other unusual causes over which the Operator has no control, for direct purchase the Operator may charge the Joint Account for the required Material at the Operator's actual cost incurred in providing such Material, making it suitable for use, and moving it to the Joint Property. Material transferred or disposed of during premium pricing situations shall be valued in accordance with Section IV.2 (*Transfers*) or Section IV.3 (*Disposition of Surplus*), as applicable.

B. SHOP-MADE ITEMS

Items fabricated by the Operator's employees, or by contract laborers under the direction of the Operator, shall be priced using the value of the Material used to construct the item plus the cost of labor to fabricate the item. If the Material is from the Operator's scrap or junk account, the Material shall be priced at either twenty-five percent (25%) of the current price as determined in Section IV.2.A (*Pricing*) or scrap value, whichever is higher. In no event shall the amount charged exceed the value of the item commensurate with its use.

C. MILL REJECTS

Mill rejects purchased as "limited service" casing or tubing shall be priced at eighty percent (80%) of K-55/J-55 price as determined in Section IV.2 (*Transfers*). Line pipe converted to casing or tubing with casing or tubing couplings attached shall be priced as K-55/J-55 casing or tubing at the nearest size and weight.

## V. INVENTORIES OF CONTROLLABLE MATERIAL

The Operator shall maintain records of Controllable Material charged to the Joint Account, with sufficient detail to perform physical inventories.

Adjustments to the Joint Account by the Operator resulting from a physical inventory of Controllable Material shall be made within twelve (12) months following the taking of the inventory or receipt of Non-Operator inventory report. Charges and credits for overages or shortages will be valued for the Joint Account in accordance with Section IV.2 (*Transfers*) and shall be based on the Condition "B" prices in effect on the date of physical inventory unless the inventorying Parties can provide sufficient evidence another Material condition applies.

COPYRIGHT © 2005 by Council of Petroleum Accountants Societies, Inc. (COPAS)

14



COPAS 2005 Accounting Procedure
Recommended by COPAS, Inc.

**1.   DIRECTED INVENTORIES**

Physical inventories shall be performed by the Operator upon written request of a majority in working interests of the Non-Operators (hereinafter, "directed inventory"); provided, however, the Operator shall not be required to perform directed inventories more frequently than once every five (5) years. Directed inventories shall be commenced within one hundred eighty (180) days after the Operator receives written notice that a majority in interest of the Non-Operators has requested the inventory. All Parties shall be governed by the results of any directed inventory.

Expenses of directed inventories will be borne by the Joint Account; provided, however, costs associated with any post-report follow-up work in settling the inventory will be absorbed by the Party incurring such costs. The Operator is expected to exercise judgment in keeping expenses within reasonable limits. Any anticipated disproportionate or extraordinary costs should be discussed and agreed upon prior to commencement of the inventory. Expenses of directed inventories may include the following:

A.   A per diem rate for each inventory person, representative of actual salaries, wages, and payroll burdens and benefits of the personnel performing the inventory or a rate agreed to by the Parties pursuant to Section I.6.A (*General Matters*). The per diem rate shall also be applied to a reasonable number of days for pre-inventory work and report preparation.

B.   Actual transportation costs and Personal Expenses for the inventory team.

C.   Reasonable charges for report preparation and distribution to the Non-Operators.

**2.   NON-DIRECTED INVENTORIES**

A.   OPERATOR INVENTORIES

Physical inventories that are not requested by the Non-Operators may be performed by the Operator, at the Operator's discretion. The expenses of conducting such Operator-initiated inventories shall not be charged to the Joint Account.

B.   NON-OPERATOR INVENTORIES

Subject to the terms of the Agreement to which this Accounting Procedure is attached, the Non-Operators may conduct a physical inventory at reasonable times at their sole cost and risk after giving the Operator at least ninety (90) days prior written notice. The Non-Operator inventory report shall be furnished to the Operator in writing within ninety (90) days of completing the inventory fieldwork.

C.   SPECIAL INVENTORIES

The expense of conducting inventories other than those described in Sections V.1 (*Directed Inventories*), V.2.A (*Operator Inventories*), or V.2.B (*Non-Operator Inventories*), shall be charged to the Party requesting such inventory; provided, however, inventories required due to a change of Operator shall be charged to the Joint Account in the same manner as described in Section V.1 (*Directed Inventories*).

COPYRIGHT © 2005 by Council of Petroleum Accountants Societies, Inc. (COPAS)

## EXHIBIT "D"

### CCL&T 3-7 #1

Attached to and made a part of that certain Operating Agreement effective as of June 17, 2016, by and between SKLAR EXPLORATION COMPANY L.L.C., as Operator, and SKLARCO L.L.C. et al., as Non-Operators

### INSURANCE

Operator shall carry the following insurance with the limits stipulated below for the joint account. Operator shall have the right to charge the joint account premiums for the insurance coverage required by this Exhibit. Such premiums shall be allocated to the joint account using a fair and reasonable method based on the nature of the operations covered by this Agreement. Non-operating working interest owners shall be named as additional insured on the liability policies. This insurance shall be primary. Certificates of insurance will be provided upon request.

I.      WORKERS' COMPENSATION AND EMPLOYER'S LIABILITY

Workers' Compensation Insurance covering the employees of Operator engaged in operations hereunder in compliance with the applicable State and Federal Laws.

Employers Liability Insurance coverage at limits of $1,000,000 each accident for bodily injury by accident/$1,000,000 policy limit for bodily injury by disease/$1,000,000 each employee for bodily injury by disease.

II      COMPREHENSIVE GENERAL LIABILITY

Coverage for all operations conducted hereunder by Operator for the Joint Account with limits of $1,000,000 per occurrence/$2,000,000 general aggregate for bodily injury and property damage. Said Comprehensive General Liability Insurance shall include contractual liability coverage.

III     AUTOMOBILE LIABILITY

Coverage shall include owned, non-owned and hired vehicles. Limit $1,000,000 combined single limit each occurrence for bodily injury and property damage.

IV      EXCESS LIABILITY

Operator shall carry excess liability insurance in an amount not less than $20,000,000.

V.      EXTRA EXPENSE LIABILITY

Operator's Extra Expense coverage including control of well, seepage, pollution and contamination coverage, cleanup and/or containment coverage, redrilling and/or restoring, shall be carried by Operator, subject to limit(s) as shown below and subject to deductible not to exceed $200,000 per occurrence.

Liability Limit: $10,000,000

VI.     OIL LEASE PROPERTY

Oil Lease Property Insurance (Inland Marine) covering tanks, pumps, machinery, pipe and similar equipment of a mobile nature usual to the operation of a producing oil or gas well and crude oil while contained in tanks with limit of not less than $10,000,000 and subject to a deductible of $5,000.

VII.    ADDITIONAL INSURANCE

Operator shall be entitled to carry or provide any additional insurance for the benefit of the Joint Account, which is of direct benefit to the joint property and is incurred by the Operator in the necessary and proper conduct of the joint operations. The premium for all such insurance so carried shall be paid by Operator and charged to the Joint Account. Operator shall, at any time requested, furnish Non-Operator with information concerning the kind, character and amounts of insurance carried.

ANY PARTY, at its own expense, may acquire such additional insurance as it may deem necessary to protect its own interest against claims, losses, damages or destruction to property arising out of operations hereunder. Further, any party, at its own expense, may carry its own coverage for Extra Expense Liability Insurance with limits as set forth in Section V, above. Any party so electing must notify Operator of such election prior to commencement of operations and provide a certificate of insurance evidencing the appropriate limits of liability. Upon timely notification such party will not be charged by Operator for the coverage.

## EXHIBIT "E"

### CCL&T 3-7 #1

Attached to and made a part of that certain Operating Agreement effective June 17, 2016 by and between SKLAR EXPLORATION COMPANY L.L.C., as Operator, and SKLARCO L.L.C. et al., as Non-Operators

### GAS BALANCING AGREEMENT

Subject to and under the terms of the above described Operating Agreement, the parties hereto own and are entitled to share in the oil and gas produced from the wells completed on the Joint Operating Area described in the Operating Agreement (the "JOA").

Each party shall have the right, but not the obligation, to make arrangements to sell or utilize its share of the gas produced from said JOA. However, one or more of the parties may be unable to take or market its interest in the gas production from time to time; therefore, to permit any party to produce and dispose of its interest in the gas production from the JOA with as much flexibility as possible, the parties hereto agree to the storage and balancing agreement herein set forth.

1.

Subject to the provisions of the Operating Agreement to which this Exhibit is attached, during the period or periods when any party hereto has no market for, or its purchaser is unable to take or if any party elects not to take its share of gas, the other parties, or any of them, shall be entitled to produce and take said share, and each of such taking parties shall have the right to take all or any part of its pro rata share thereof, said pro rata share being based on the ratio of its participation percentage under this Operating Agreement to the participation percentages of all taking parties. All parties hereto shall share in and own the condensate recovered at the surface in accordance with their respective interest, but each party taking such gas shall own all of the gas delivered to its purchaser. Any party whose share of gas is not marketed shall be credited with gas in storage equal to its share of the gas produced, less its share of the gas used in lease operation, vented or lost. Operator shall maintain a current account of the gas balance between the parties and shall furnish all parties hereto statements showing the total quantity of gas produced, used in lease operations, vented or lost, and the total quantity of condensate recovered.

2.

After notice to Operator, any party may begin taking or delivering its share of the gas produced. In addition to its share, each party, until it has recovered its gas in storage and balanced its gas account, shall be entitled to take or deliver a volume of gas equal to fifty percent (50%) of each overproduced party's share of gas produced. If more than one party is entitled to the stated volume of the overproduced parties' share of gas, each shall have the right to take all or any part of its pro rata share thereof, said pro rata share being based on the ration of its participation percentage under this Operating Agreement to the participating percentages of all entitled parties. Each party shall at all times use its best efforts to regulate its takes and deliveries from the Unit Area so the lease will not be shut-in for overproducing the allowable, it any, assigned thereto by the regulatory body having jurisdiction.

3.

At all times while gas is produced from the Contract Area, any party taking or marketing gas shall furnish to the Operator monthly reports of the volumes of gas delivered to its purchaser during the preceding month and to the revenue attributable thereto; and any such party shall pay to the Operator a percentage of the proceeds of such sale equal to the aggregate percentage of any and all royalties and overriding royalties which are payable on gas produced by any such party, and Operator will, in turn, make settlement for all royalties and overriding royalties which are payable on gas produced from the Contract Area. In the event that the total royalties and overriding royalties so paid to the Operator be insufficient to discharge royalty and overriding royalty obligations on gas produced and marketed from the Contract Area, then any such deficiency will be borne by the party whose interest is burdened by the royalty or overriding royalty as to which the deficiency was asserted. Any party or parties contributing separate leases to the Contract Area shall furnish the Operator with division order title opinions on which Operator shall be entitled to rely in making distribution of royalties and overriding royalties share of production of liquid hydrocarbons recovered from the gas by lease equipment.

4.

Any party producing and taking or delivering gas to the purchaser shall pay any and all production taxes due on such gas. Also, any party producing and taking or delivering gas to its purchaser shall pay, or cause to be paid, royalty and other obligations payable out of production due to its royalty owners based on the volume of gas actually taken for its account.

–1–

5.

Nothing herein shall be construed to deny any party the right, from time to time, to produce and take or deliver to the purchaser its full share of the allowable gas production to meet the deliverability tests required by its purchaser.

6.

Should production of gas from any reservoir or producing formation of each wellbore be permanently discontinued before the gas account is balanced, cash settlement will be made between the underproduced and overproduced parties. In making such cash settlement, each overproduced party shall make payment to Operator along with sufficient accounting documentation as hereinafter described and Operator shall make disbursement to the underproduced parties. In making such settlement, the underproduced party or parties will be paid a sum of money by the overproduced party or parties attributable to the overproduction which said overproduced party sold, less applicable production taxes and royalties theretofore paid, less any reasonable dehydration, compression, treating, processing, gathering or transportation costs actually incurred, including amortized capital costs associated with the design, construction or operation of any plants to dehydrate, compress, treat or process gas, in connection with the sale of the overproduction, at the price and based on the proceeds actually received by the overproduced party at the time and from time to time the overproduced party delivered and sold that portion of production that was attributable to the share of the underproduced party. For gas taken but not sold, settlement shall be based on the price which the taking party would have received under its purchase agreement if the gas had been sold at the time taken, or, in absence of a contract, at the weighted average price of the parties selling gas at the time the gas was taken.

In the event any gas sold under this Agreement is subject to a regulated price by the FERC or a successor agency or governmental authority with jurisdiction thereover, the price basis shall be the rate collected, from time to time, which is not subject to possible refund, as provided by NGPA or as required by the FERC pursuant to the final determination, order, or settlement applicable to the gas sold from any reservoir (other than the general refund obligation of 18 CFR Section 273.301 or its successor regulation and the potential refund obligations arising from the lack of absolute finality provided by Section 502 (d) (1) and (2) of the NGPA plus any additional collected amount to be accounted for at such time as final determination is made with respect thereto but shall not exceed their contractually entitled price of the underproduced party). Notwithstanding the foregoing, should the underproduced party desire to receive such additional collected amount which is subject to possible refund pending the issuance of said final determination, order, or settlement, such underproduced party shall be entitled to the payment thereof from the overproduced party of parties upon the underproduced party executing and delivering to said overproduced party or parties an acceptable agreement in which the underproduced party agrees to repay to the overproduced party of parties that amount so paid that is required by said final determination, order, or settlement to be refunded, plus the interest thereon specified in the pertinent Order of the Commission.

Notwithstanding anything within this Agreement to the contrary, in no event shall an underproduced party be entitled to an overproduction payment which is attributable to a price which was higher than the underproduced party could have collected under the terms of its gas purchase contract, if in existence, at the time the gas was taken by the overproduced party. Further, no overproduced party shall ever be required to make an overproduction payment to any underproduced party, which exceeds the amount the overproduced party actually received for the gas at the time it was produced.

7.

This Agreement shall be and remain in force and effect for a term concurrent with the term of that certain Operating Agreement between the parties described above to which it comprises the exhibit noted hereinabove.

8.

Nothing herein shall change or affect each party's obligation to pay its proportionate share of all costs and liabilities incurred in JOA operations as its share thereof is set forth in the above described Joint Operating Agreement.

9.

The terms, covenants and conditions of this Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns. The parties hereto agree to give notice of the existence of this agreement to any successor in interest and make any transfer of any interest in the lease or any part thereof subject to the terms of this Agreement.

–2–

2016  2360
Recorded in the Above
Deed Book & Page
08-02-2016 12:24:02 PM
Rogene Booker, Probate Judge
Conecuh County, Alabama

**Amendment to Assignment of Oil and Gas Lease**

As of January 1, 2016, the contract entitled Assignment of Oil and Gas Lease between Trant L. Kidd and Roosth 806, Ltd, Kidd Production, Ltd, Steven E. Calhoun and Kwazar Resources, which is recorded at Deed Book 2015, Page 2724 in the records of Conecuh County, Alabama will be changed as follows:

"Prepared By: Trant L. Kidd, 102 North College, Suite 106, Tyler, Texas 75702" is inserted to the top of the above mentioned instrument

This change is the only change to the original contract. The entire remainder of the original contract remains in full force.

Signed for Identification:                                    Date:

By: Jackson Woodson, Agent for Trant L. Kidd         8/1/2016

PREPARED BY: JACKSON WOODSON
P.O. BOX 7417
SPANISH FORT, AL 36577

Book/Pg: 2016/2360
Term/Cashier: CONECUH-SPARE-P / nce
Tran: 13759.66929.83587
Recorded: 08-02-2016 12:24:21
DFE Deed Tax                              0.50
INF Indexing Fee (Computer Fnd)          5.00
MTX Mineral Tax                          5.15
REC Recording Fee                       15.00
Total Fees:  $ 25.65

_015 2724
Recorded in the Above
Deed Book & Page
04-20-2015 09:14:53 AM
Rosene Booker, Probate Judge
Conecuh County, Alabama

## ASSIGNMENT OF OIL AND GAS LEASE

THE STATE OF ALABAMA §

COUNTY OF CONECUH §

Reference is hereby made for all purposes to the Oil, Gas and Mineral Lease from Berryhill Farms, Inc. to Trant L. Kidd, dated April 18, 2011, recorded in Book 2011, Page 1790 of the Probate Judge Records of Conecuh County, Alabama, covering the following described lands in said county:

### Township 3 North, Range 13 East

Section 2: All that part of the NW ¼ of the NW ¼ of said Section 2 lying and being situated South of the Brooklyn-Andalusia Road, containing 33 acres, more or less; and the SW ¼ of the NW ¼, containing 43 acres, more or less; and,

Section 3: The E ½ of the SE ¼ of the NE ¼, containing 22 acres, more or less; and

Section 3: A fraction of the NE ¼ of the NE ¼, containing 10 acres;

Together with and including all of Lessor's right, title and interest in and to any right of way, roads, servitudes, easements, creeks, steams, rivers and any other bodies of water, either adjacent to, contained within or traversing across said lands.

Said lease was for an initial primary term of three years with an option for Lessee to extend the primary term for an additional three years by paying the amount set forth therein, which extension option was timely and properly paid and exercised by Lessee so said lease has a 6-year primary term ending April 17, 2017, for all of said leased acreage.

The Lessee, Trant L. Kidd, desires to assign said lease to his investors as set forth below:

For Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, TRANT L. KIDD does hereby assign and convey said lease and any related personal property equipment appurtenant thereto, to the following parties in the following undivided amounts, so same is now owned as follows:

2016 2361
Recorded in the Above
Deed Book & Page
08-02-2016 12:24:02 PM

'015   2725
Recorded in the Above
Deed Book & Page
04-20-2015 09:14:53 AM

Roosth 806, Ltd., a Texas
limited partnership
P. O. Box 8300
Tyler, Texas 75711 .................................................. 1/2

Kidd Production, Ltd.
102 North College, Suite 106
Tyler, Texas 75702 .................................................. 3/10

Steven E. Calhoun
P. O. Box 7621
Tyler, Texas 75711 .................................................. 1/10

Kwazar Resources, LLC
P. O. Box 7417
Spanish Fort, AL 36577 ........................................... 1/10

EXECUTED, This _3l_ day of March, 2015.

Trant L. Kidd
102 North College, Suite 106
Tyler, TX 75702

THE STATE OF TEXAS §

COUNTY OF  SMITH §

     I hereby certify that on this day, before me, a Notary Public duly authorized in the
state and county aforesaid to take acknowledgments, personally appeared TRANT L. KIDD,
to me known to be the person described in and who executed the foregoing assignment, and
he acknowledged before me that, being informed of the contents of the same, he voluntarily
signed and delivered the within and foregoing instrument for the purposes and consideration
therein expressed and in the capacity therein stated on the day and year therein mentioned.

     GIVEN UNDER MY HAND AND SEAL OF OFFICE, This _3l_ day of March,
2015.

LAVERNE PRUITT
MY COMMISSION EXPIRES
January 31, 2017

Notary Public in and for the State of Texas

My commission expires:
1-31-17

-2-

2016   2362
Recorded in the Above
Deed Book & Page
08-02-2016 12:24:02 PM

After recording, return to:

Kidd Production, Ltd.
102 North College, Suite 106
Tyler, Texas 75702

2015   2726
Recorded in the Above
Deed  Book & Page
04-20-2015 09:14:53 AM
Rosene Booker, Probate Judge
Conecuh County, Alabama
Book/Pg: 2015/2724
Term/Cashier: CONECUH5-PC / SRC
Tran: 10160.54683.70468
Recorded: 04-20-2015 09:15:27
DFE Deed Tax                              4.50
INF Indexing Fee (Computer Fnd)           5.50
REC Recording Fee                         5.00
Total Fees:  $ 14.50

2016   2363
Recorded in the Above
Deed  Book & Page
08-02-2016 12:24:02 PM

-3-

## *** Certified Copy Page ***

2016   2364
Recorded in the Above
Deed  Book & Page
08-02-2016 12:24:02 PM
Rogene Booker, Probate Judge
Conecuh County, Alabama

I, Rogene Booker, Judge of Probate, do hereby certify that
the foregoing is a FULL, TRUE and CORRECT copy of the
Instruments(s) herewith set out as same appears of record in:

Deed BOOK - 2015,  AT PAGE - 2724  in said court.

Witness my hand and seal this 1 Day of August, 2016.

Judge of Probate
Conecuh County, Alabama

Printed:  08-01-2016 04:05:13 PM
Optical file reference:  DAA4.7DF

2015    2724
Recorded in the above
Deed  Book & Page
04-20-2015 09:14:53 AM
Rosene Booker, Probate Judge
Conecuh County, Alabama

## ASSIGNMENT OF OIL AND GAS LEASE    *2015-2724*

THE STATE OF ALABAMA    §

COUNTY  OF  CONECUH    §

Reference is hereby made for all purposes to the Oil, Gas and Mineral Lease from Berryhill Farms, Inc. to Trant L. Kidd, dated April 18, 2011, recorded in Book 2011, Page 1790 of the Probate Judge Records of Conecuh County, Alabama, covering the following described lands in said county:

### Township 3 North, Range 13 East

Section 2: All that part of the NW ¼ of the NW ¼ of said Section 2 lying and being situated South of the Brooklyn-Andalusia Road, containing 33 acres, more or less; and the SW ¼ of the NW ¼, containing 43 acres, more or less; and,

Section 3: The E ½ of the SE ¼ of the NE ¼, containing 22 acres, more or less; and

Section 3: A fraction of the NE ¼ of the NE ¼, containing 10 acres;

Together with and including all of Lessor's right, title and interest in and to any right of way, roads, servitudes, easements, creeks, steams, rivers and any other bodies of water, either adjacent to, contained within or traversing across said lands.

Said lease was for an initial primary term of three years with an option for Lessee to extend the primary term for an additional three years by paying the amount set forth therein, which extension option was timely and properly paid and exercised by Lessee so said lease has a 6-year primary term ending April 17, 2017, for all of said leased acreage.

The Lessee, Trant L. Kidd, desires to assign said lease to his investors as set forth below:

For Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, TRANT L. KIDD does hereby assign and convey said lease and any related personal property equipment appurtenant thereto, to the following parties in the following undivided amounts, so same is now owned as follows:

2015  2725
Recorded in the Above
Deed  Book & Page
04-20-2015 09:14:53 AM

Roosth 806, Ltd., a Texas
limited partnership
P. O. Box 8300
Tyler, Texas 75711 ...................................................  1/2

Kidd Production, Ltd.
102 North College, Suite 106
Tyler, Texas 75702 ....................................................  3/10

Steven E. Calhoun
P. O. Box 7621
Tyler, Texas 75711 .......................................................  1/10

Kwazar Resources, LLC
P. O. Box 7417
Spanish Fort, AL 36577 ............................................  1/10

EXECUTED, This _3lst_ day of March, 2015.

_Trant Kidd_

Trant L. Kidd
102 North College, Suite 106
Tyler, TX 75702

THE STATE OF TEXAS  §

COUNTY  OF   SMITH  §

    I hereby certify that on this day, before me, a Notary Public duly authorized in the
state and county aforesaid to take acknowledgments, personally appeared TRANT L. KIDD,
to me known to be the person described in and who executed the foregoing assignment, and
he acknowledged before me that, being informed of the contents of the same, he voluntarily
signed and delivered the within and foregoing instrument for the purposes and consideration
therein expressed and in the capacity therein stated on the day and year therein mentioned.

    GIVEN UNDER MY HAND AND SEAL OF OFFICE, This _3lst_ day of March,
2015.

LAVERNE PRUITT
MY COMMISSION EXPIRES
January 31, 2017

_Laverne Pruitt_

Notary Public in and for the State of Texas

My commission expires:
_1-31-17_

-2-

After recording, return to:

Kidd Production, Ltd.
102 North College, Suite 106
Tyler, Texas 75702

2015   2726
Recorded in the Above
Deed   Book & Page
04-20-2015 09:14:53 AM
Roxene Bonker, Probate Judge
Conecuh County, Alabama
Book/Pg: 2015/2724
Term/Cashier: CONECUH5-PC / REC
Tran: 10160.54683.78468
Recorded: 04-20-2015 09:15:27
DEE Deed Tax
INF Indexing Fee (Computer Fnd)
REC Recording Fee
Total Fees:   $ 14.50

-3-

## *** Certified Copy Page ***

2016   2370
Recorded in the Above
Deed  Book & Page
08-02-2016 12:27:27 PM
Rogene Booker, Probate Judge
Conecuh County, Alabama

I, Rogene Booker, Judge of Probate, do hereby certify that
the foregoing is a FULL, TRUE and CORRECT copy of the
Instruments(s) herewith set out as same appears of record in:

Deed BOOK - 2011, AT PAGE - 1790 in said court.

Witness my hand and seal this 1 Day of August, 2016.

Judge of Probate
Conecuh County, Alabama

Printed:  08-01-2016 04:02:59 PM
Optical file reference:  D6FE.7DB

2011    1790
Recorded in the Above
Deed Book & Page——Jackson, Mississippi
04-20-2011 08:39:12 AM
, Probate Judge
Conecuh County, Alabama

## OIL, GAS AND MINERAL LEASE

THIS AGREEMENT made this ____18th____ day of ____April____ , 20__11__ between

BERRYHILL FARMS, INC. an Alabama Corporation

lessor (whether one or more), whose address is:  P. O. Box 1292 Andalusia, Al 36420
and Trant L. Kidd of 102 N. College Ste. 310 Tyler, Texas 75702 lessee, WITNESSETH:

1. Lessor, in consideration of Ten and No/100 and other valuable consideration Dollars

County of ____Conecuh____ State of ____Alabama____

THE LANDS COVERED BY THIS LEASE ARE DESCRIBED IN THE ATTACHED EXHIBIT
"A" OTHER PROVISIONS OF EXHIBIT "A" AMEND THIS LEASE TO THE EXTENT PROVIDED
IN SAID EXHIBIT. THE ENTIRETY OF EXHIBIT "A" IS INCORPORATED HEREIN BY
REFERENCE AND MADE A PART HEREOF FOR ALL PURPOSES

105.5 acres

2016     2366
Recorded in the Above
Deed Book & Page
08-02-2016 12:27:27 PM

8. The rights and estate of any party hereto may be assigned from time to time in whole or in part and as to any mineral or horizon. All of the covenants, obligations, and considerations of this lease shall extend to and be binding upon the parties hereto, their heirs, successors, assigns, and successive assigns. No change or division in the ownership of said land, royalties, or other money, or any part thereof, howsoever effected, shall increase the obligations or diminish the rights of lessee, including, but not limited to, the location and drilling of wells and the measurement of production. Notwithstanding any other actual or constructive knowledge or notice thereof of or to lessee, its successors or assigns, no change in the ownership of said land or of the royalties, or other moneys, or the right to receive the same, howsoever effected, shall be binding upon the then record owner of this lease until thirty (30) days after there has been furnished to such record owner at his or its principal place of business by lessor or lessor's heirs, successors, or assigns, notice of such change or division, supported by either originals or duly certified copies of the instruments which have been properly filed for record and which evidence such change in ownership, and the validity of such sworn records and proceedings, transcripts, or other documents as shall be necessary in the opinion of such record owner to establish the validity of such change or division may of not change in ownership occur by reason of the death of the owner, lessee may, nevertheless, pay or tender such royalties, or other moneys, or part thereof, to the credit of the decedent in a depository bank provided for above.

9. In the event lessor considers that lessee has not complied with all its obligations hereunder, both express and implied, lessor shall notify lessee in writing, setting out specifically in what respects lessee has breached this contract. Lessee shall then have sixty (60) days after receipt of said notice within which to meet or commence to meet all or any part of the breaches alleged by lessor. The service of said notice shall be precedent to the bringing of any action by lessor on said lease for any cause, and no such action shall be brought until the lapse of sixty (60) days after service of such notice on lessee. Neither the service of said notice nor the doing of any acts by lessee aimed to meet all or any of the alleged breaches shall be deemed an admission or presumption that lessee has failed to perform all its obligations hereunder. Should it be asserted in any action against lessee that lessee has breached any of the provisions of this paragraph that lessee has failed to comply with any implied obligation or covenant hereof, this lease shall not be subject to cancellation for any such cause except after final judicial ascertainment that such failure exists and lessee has then been afforded a reasonable time to prevent remediation by complying with and discharging its obligations as to which lessee has been judicially determined to be in default. If this lease is canceled for any reason, it shall nevertheless remain in force and effect as to (1) sufficient acreage around each well as to which there are operations to constitute a drilling or maximum allowable unit under applicable governmental regulations, (but in no event less than forty acres), such acreage to be designated by lessee as nearly as practicable in the form of a square centered at the well, or in such shape as then existing spacing rules require; and (2) any part of said land included in a pooled unit on which there are operations. Lessee shall also have such easements on said land as are necessary to operations on the acreage so retained.

10. Lessor hereby warrants and agrees to defend title to said land against the claims of all persons whomsoever. Lessor's rights and interests hereunder shall be charged primarily with any mortgage, taxes or other liens, or interest and other charges on said land, but lessor agrees that lessee shall have the right at any time to pay or reduce same for lessor, either before or after maturity, and be subrogated to the rights of the holder thereof and to deduct amounts so paid from royalties or other payments payable or which may become payable to lessor and/or assigns under this lease. Lessee is hereby given the right to acquire for its own benefit, deeds, leases, or assignments covering any interest or claim in said land which lessor or any other party contends is outstanding and not covered hereby; and even though such outstanding interest or claim be invalid or adverse to lessor, if this lease covers a less interest in the oil, gas, sulphur, or other minerals in all or any part of said land than the entire and undivided fee simple estate (whether lessor's interest is herein specified or not), or no interest therein, then the royalties and other moneys accruing from any part as to which this lease covers less than such full interest, shall be paid only in the proportion which the interest therein, if any, covered by this lease, bears to the whole and undivided fee simple estate therein. All royalty interest covered by this lease (whether or not owned by lessor) shall be paid out of the royalty herein provided. This lease shall be binding upon each party who executes it without regard to whether it is executed by all those named herein as lessor.

11. If, while this lease is in force, at or after the expiration of the primary term hereof, it is not being operated in force by reason of the shut-in well provision of paragraph 3 hereof, and lessor is not conducting operations on said land by reason of (1) any law, order, rule or regulation, (whether or not subsequently determined to be invalid) or (2) any other cause, whether similar or dissimilar, (except financial) beyond the reasonable control of lessee, the primary term hereof shall be extended until the first anniversary date hereof occurring ninety (90) or more days following the removal of such delaying cause, and this lease may be extended thereafter by operations as if such delay had not occurred.

IN WITNESS WHEREOF, this instrument is executed on the date first above written.

_____ (SEAL)

BERRYHILL FARMS, INC.

By _____ (SEAL)
Larry J. Findley, President

_____ (SEAL)

JOINT OR SINGLE ACKNOWLEDGMENT
(MISSISSIPPI-ALABAMA-FLORIDA)

STATE OF        Alabama
COUNTY OF       Conecuh

I hereby certify, that on this day, before me, a     A Notary Public
duly authorized in the state and county aforesaid to take acknowledgments, personally appeared     Larry J. Findley,
President of Berryhill Farms, Inc.

to me known to be the person _____ described in and who executed the foregoing instrument and _____ he _____
acknowledged before me that, being informed of the contents of the same, _____ he _____ voluntarily signed and delivered
the within and foregoing instrument on the day and year therein mentioned.

Given under my hand and official seal, this     18th     day of     April     A.D. 20 2011

(Affix Seal)
Norma J. Cobb
My Commission Expires 3-1-2013

_____ (Title of Official)

My commission expires _____ in and for _____ County.

WITNESS ACKNOWLEDGMENT
(MISSISSIPPI-ALABAMA-FLORIDA)

STATE OF _____
COUNTY OF _____

I, a _____ in and for the aforesaid jurisdiction, hereby certify that _____

a subscribing witness to the foregoing instrument, known to me, appeared before me on this day, and being sworn, stated that

the grantor(s), having been informed of the contents thereof, voluntarily executed and delivered the same in his presence, and in the presence of the other subscribing witness, on the day the same bears date; that he attested the same in the presence of the grantor(s), and of the other witness, and that such other witness subscribed his name as a witness in his presence.

Given under my hand and official seal, this _____ day of _____

(Affix Seal)

My commission expires _____ in and for _____ County.

(Subscribing Witness)
2011    1791
Recorded in the Above
Deed Book & Page

2016    2367
Recorded in the Above
Deed Book & Page
08/--/2016 12:27:27 PM

2011   1792
Recorded in the Above
Deed Book & Page
04-20-2011 08:39:12 AM

EXHIBIT "A"

2016   2368
Recorded in the Above
Deed Book & Page
08-02-2016 12:27:27 PM

**THIS LEASE SHALL COVER THE FOLLOWING DESCRIBED LANDS SITUATED IN CONECUH COUNTY, ALABAMA:**

**IN TOWNSHIP 2 NORTH, RANGE 12 EAST:**

Section 2: All that part of the NW ¼ of the NW ¼ of said Section 2 lying and being situated South of the Brooklyn – Andalusia Road, containing 33 acres, more or less; and the SW ¼ of the NW ¼, containing 43 acres, more or less; and,

Section 3: The E ½ of the SE ¼ of the NE ¼, containing 22 acres, more or less.

Section 3:  A fraction of the NE1/4, of the NE1/4 containing 10 acres.

together with and including all of Lessor's right, title and interest in and to any right-of-way, roads, servitudes, easements, creeks, streams, rivers and any other bodies of water, either adjacent to, contained within or traversing across said lands.

Notwithstanding anything to the contrary contained in the foregoing Oil, Gas and Mineral Lease, the said lease is hereby amended as follows:

I.   The royalties to be paid by Lessee are:

A.   On oil, **20%** of that produced and saved from said land;

B.   On gas including casinghead gas, carbon dioxide or other gaseous or vaporous substance, **20%** of that produced and saved from the above described leasehold premises;

C.   On all other minerals expressly including sulfur mined and marketed, Lessor shall be paid **20%** of the current market price produced when sold by Lessee.

II.  Lessee shall commence payment to Lessor of the aforesaid royalties no later than 90 days after the end of the first month, or part thereof, when sales of production from the leased premises are achieved, and thereafter at monthly intervals, while production is maintained. Should Lessor not "receive payment" by the end of the 90th day after the end of the first month, or part thereof, when sales of production from the leased premises are achieved, Lessor may, at any time thereafter, make written demand upon Lessee herein by certified mail, at the address noted for Lessor on the face of this lease, for cumulative payment of royalties due. If payment has not been received thirty (30) days after written notice was postmarked, this lease will automatically become null and void; provided, however, that if there is a bona fide dispute as to the amount due, and all undisputed amounts are paid, said thirty (30) day period shall be extended until twenty (20) days after dispute is settled by final court decree, arbitration or mutual agreement. Each royalty payment received shall contain sufficient information so that the location or locations of the property to which the royalty payment is applicable can be readily determined.

III. No cost shall be charged to the Royalty Interest created under this lease, except severance and applicable taxes.

IV.  After the primary term, this Lease may not be kept in force solely by the payment of shut-in royalties hereunder for more than a period of two (2) consecutive years after the date of the first payment of any shut-in royalty hereunder.

Book/Pg: 2011/1790
Term/Cashier: FRONT1 / slde
Tran: 3736.32474.43424
Recorded: 04-20-2011 08:39:52
DFE Deed Tax                        18.50
INF Indexing Fee (Computer Fnd)      5.00
MTX Mineral Tax                      5.15
REC Recording Fee                   12.00
Total Fees:  $ 40.65



RECEIVED

SEP 2 4 2020

LEGAL SERVICES

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning**: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.


