# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE:<br>SKLAR EXPLORATION COMPANY, LLC,<br>EIN: 72-1417930<br><br>   Debtor. | Case No. 20-12377-EEB<br>Chapter 11 |
| SKLARCO, LLC,<br>EIN: 72-1425432<br><br>   Debtor. | Case No. 20-12380-EEB<br>Chapter 11 |

**EAST WEST BANK'S OBJECTION TO THE "RESPONSE" OF THE RUDMAN PARTNERSHIP, CTM 2005, LTD., AND MER ENERGY, LTD TO MINUTE ORDER REQUIRING THE FILING OF REVISED INVOICES**

Secured creditor, East West Bank, a California state banking corporation ("EWB"), in its capacity as a lender and the administrative agent under the Credit Agreement dated June 15, 2018 with Sklar Exploration Company, LLC ("SEC") and Sklarco, LLC ("Sklarco") (collectively, the "Debtors"), through counsel, hereby objects to the so-called *Response of the Rudman Partnership, CTM 2005, Ltd., and MER Energy, Ltd to Minute Order Regarding the Filing of Revised Invoices*, filed by the Rudman Parties[1] on March 18, 2022 [ECF No. 1658] (the "Response") in support of the Rudman Parties' *Application of the Rudman Partnership, CTM 2005, Ltd., and MER Energy, Ltd for Allowance of Administrative Expenses under 11 U.S.C. § 503(b)(3)(D) for Substantial Contribution to These Chapter 11 Cases*, filed on October 22, 2021 [ECF No. 1493] (the "Application").

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Application.

4878-3171-7146

EWB respectfully requests that the Response be rejected, and the Application be denied in its entirety. In further support of this objection, EWB respectfully submits as follows:

1. In the Court's *Minute Order* entered on March 1, 2022 [ECF No. 1644] ("<u>Minute Order</u>"), the Rudman Parties were ordered to supplement their Application with revised billing records by March 18, 2022. This Court made clear at the hearing that the block-billed time entries, which are billed largely in half-hour or whole-hour increments are improper, and that the Rudman Parties were required to submit detailed time records broken down into appropriate time entries and in tenth-hour increments.

2. The Rudman Parties chose to ignore or evade this Court's direction. Rather than submit appropriately revised invoices, the Rudman Parties resubmitted the same billing records without revision to the time entries, and merely added abbreviations purporting to identify the "category" to which each time entry allegedly belongs.

3. The Rudman Parties admit they cannot revise their invoices to tenth-hour increments because to do so "would be a speculative enterprise at best." Response, ¶ 3. This admission is fatal to the Application. The fact that the Rudman Parties cannot even speculate how to break down their time entries in 0.10 increments proves that the parties and this Court have no conceivable way to determine the reasonableness of the claimed compensation. The Application should be denied on this basis alone.

4. Moreover, the "revised" invoices still fail to comply with Federal Rule of Bankruptcy Procedure 2016, which applies not only to estate professionals but to any "entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate." Fed. R. Bankr. P. 2016(a). This includes creditors seeking compensation for attorneys' services under § 503(b)(3)(D) and (b)(4). *See id*. ("The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other entity."); *see also* 9 Collier on Bankruptcy ¶ 2016.03 (16th ed. 2022).

5. Rule 2016(a) requires any such entity to "file an application setting forth a detailed statement of: (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed. R. Bankr. P. 2016(a).[2] This requirement "gives to the court authority to ensure that the application is both comprehensive and detailed." Rule 2016(a) Advisory Committee's Note to 1987 Amendment. Block-billed time entries violate the spirit and intent of Rule 2016, as no one can determine the time expended for each task for which compensation is being sought. Preparing an email to a client or having a telephone conversation, for example, could have taken the Rudman Parties' counsel as little as one minute, yet throughout the Application the time billed for such a task is at least 0.50, representing $300 of compensation sought. Moreover, when such task is part of larger block-billed time entry, there's simply no way to tell how much of the overall time entry is allocable to such a minor task. It is the height of inequity for creditors to be forced to pay compensation to attorneys (1) the creditors did not agree to hire, and (2) whose fees are of wholly indiscernible reasonableness and benefit.

6. The Rudman Parties cite to various cases in an attempt to justify the deficiencies of their improper billing records. Those cases, however, are distinguishable and unavailing. This Court's decision of *In re Threadneedle St., LLC*, 2012 WL 243765, 2012 Bankr. LEXIS 249 (Bankr. D. Colo. Jan. 25, 2012), for example, involved an oversecured creditor seeking allowance of its reasonable attorney's fees and costs under section 506(b) of the Bankruptcy Code. Unlike section 503(b)(3)(D) and (b)(4), section

---

[2] Rule 2016 also requires, among other things, "a statement as to what payments have theretofore been made or promised to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation previously received has been shared and whether an agreement or understanding exists between the applicant and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any sharing of compensation or agreement or understanding therefor . . . ." Fed. R. Bankr. P. 2016(a). EWB has been forced to propound written discovery and document production requests regarding these and related matters that the Rudman Parties should have disclosed with its Application.

3

506(b) does not call for a review of professional fees "based on the time, the nature, the extent, and the value of such services, and the cost of comparable services" in making a measurable substantial contribution to the case. *See* 11 U.S.C. § 503(b)(4). Rather, section 506(b) requires only that an oversecured creditor's fees be reasonable. *Id*. § 506(b). If such fees are reasonable, they constitute part of the oversecured creditor's allowed claim. *Id*. ("[T]here shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose").

7. In *Threadneedle*, this Court appropriately refused to require billing records broken down into tenths of an hour or compliance with Rule 2016, as the oversecured creditor in that case was seeking allowance of fees as part of its statutory entitlement on account of its allowed oversecured claim. *See In re Sun "N Fun Waterpark LLC*, 408 B.R. 361, 373 (B.A.P. 10th Cir. 2009) (Rule 2016 is inapplicable to an oversecured creditor's recovery of reasonable prepetition attorneys' fees); *accord In re Powe*, 278 B.R. 539 (Bankr. S.D. Ala. 2002) (disclosing attorneys' fees on face of proof of claim was sufficient disclosure for both pre- and post-petition attorneys' fees of oversecured creditor in various chapter 13 cases). Thus in *Threadneedle*, this Court concluded that its review for reasonableness under section 506(b) did not require the level of detail required in other contexts, particularly as the case exhibited the hallmarks of a debtor's bad-faith filing and there was no indication the creditor acted inappropriately during the case. Here, unlike in *Threadneedle*, the Rudman Parties are seeking compensation for a **substantial contribution** to the case, a necessarily fact-intensive inquiry into the actual, measurable benefit allegedly provided to creditors by the Rudman Parties' efforts. The nature of the inquiry itself, and the clear applicability of section 503(b)(4) and Rule 2016 to the Rudman Parties' Application, clearly distinguish this case from *Threadneedle*.

8. In addition, EWB, the Reorganized Debtors, and the official committee of unsecured creditors (as succeeded by the Creditor Trust) all have objected to the

4

Application based, in part, on the Rudman Parties' unreasonable and self-interested conduct in driving up the expenses in this case unnecessarily. In short, the Rudman Parties are hardly comparable to the oversecured creditor in *Threadneedle*.

9. The other cases cited by the Rudman Parties are equally unavailing. In *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998), attorney's fees were requested as part of a civil rights suit, pursuant to 42 U.S.C. § 1988(b). And in *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1214-15 (10th Cir. 2000), the litigant sought an award of attorney's fees as the prevailing party in a Title VII sexual harassment lawsuit. Again, section 503(b)(4) and Rule 2016 require more than these other, inapplicable statutes. By the very terms of the Bankruptcy Code, recovery of attorneys' fees for substantial contribution must be reasonable "based on the time, nature, extent, and value of such services." 11 U.S.C. § 503(b)(4). Such assessment simply cannot be made without appropriate billing records.

10. The Rudman Parties are represented by experienced bankruptcy counsel. The consequences of their failure to keep proper time entries—non-block-billed and in tenths of an hour—must be borne by their clients, not the estates at the direct expense of creditors. As EWB stated in its initial objection to the Application, perhaps the Rudman Parties are happy to pay their counsel in half- and whole-hour increments based on block-billed time entries, but EWB and the other creditors certainly are not.

11. The Rudman Parties' improper time entries not only prevent the Court from ensuring the Application is comprehensive and detailed, but thwarts the ability of the Court and other parties to determine whether the various tasks were performed expeditiously and within a reasonable time. *See In re Recycling Industries, Inc.*, 243 B.R. 396, 406–07 (Bankr. D. Colo. 2000) ("Lumping practice universally disapproved by the bankruptcy courts for two reasons. One, it permits an applicant to claim compensation for rather minor tasks which, if reported individually, would not be compensable. Two, it prevents the Court from determining whether individual tasks were expeditiously performed within a

reasonable period of time because it is impossible to separate into components the services which have been lumped together."). Indeed, the Rudman Parties seek compensation for at least eleven different block-billed time entries that exceed six hours of billable time. *See id.* at 407 ("Except in unusual circumstances it is not realistic for an attorney to bill in excess of six to seven hours per day.").

12. Because the Rudman Parties' have failed to provide sufficient to detail to carry their burden and have failed to amend their improper time entries as instructed by the Court, the Application must be denied. At a minimum, the Court should order that the maximum potential award be capped at 50% of the total claimed amount, with that reduced amount still being subject to review for reasonableness and substantial contribution at the evidentiary hearing currently scheduled for May 23, 2022. *See In re Bownetree, LLC*, 2009 WL 2843278, at *2 (Bankr. E.D.N.Y. 2009) (reducing block billed fees by 50%); *In re New Towne Development Group, LLC*, 2010 WL 1451480, at *5 (Bankr. M.D. La. 2010) (reducing fees by one-half for all lumped billing entries); *Wilhelm v. TLC Lawn Care, Inc.*, 2009 WL 57133, at *4 (D. Kan. Jan. 8, 2009) (reducing remaining fee award by 50% because counsel's block billing made it virtually impossible for the court to allocate precise measure of time to any one task); *Barbosa v. Nat'l Beef Packing Co., LLC*, 2015 WL 4920292, at *9 (D. Kan. Aug. 18, 2015) (court applied a general 50% reduction to block-billed entries).

…

…

…

…

WHEREFORE, EWB respectfully requests that the Court deny the Application, and grant to EWB such other and further relief as it deems just and proper.

DATED this 6th day of April, 2022.

                                              SNELL & WILMER L.L.P.

By: */s/ Bryce A. Suzuki*
     Bryce A. Suzuki
     One Arizona Center
     400 E. Van Buren, Suite 1900
     Phoenix, Arizona 85004-2202
     Phone: 602-382-6000
     Email: bsuzuki@swlaw.com

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on this 6th day of April 2022, a copy of the foregoing document was filed via ECF and was served by electronic transmission to all registered ECF users appearing in this case.

                                        */s/ Bryce A. Suzuki*

4878-3171-7146