**Fill in this information to identify the case:**

| Debtor 1 | Sklar Exploration Company, LLC |
| Debtor 2 (Spouse, if filing) | |

United States Bankruptcy Court for the: District of Colorado

Case number  20-12377

Filed: USBC - District of Colorado
Sklar Exploration Company, LLC, et al (B10)
20-12377 (EEB)

SKR

0000000244

RECEIVED

SEP 2 3 2020

LEGAL SERVICES

## Official Form 410

# Proof of Claim

12/15

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1:    Identify the Claim

| | |
|---|---|
| **1. Who is the current creditor?** | Stoneham Drilling Corporation<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor |
| **2. Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes. From whom? |
| **3. Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>Stoneham Drilling Corp., c/o Bradley, Attn: James Bailey<br>Name<br>1819 Fifth Avenue North<br>Number    Street<br>Birmingham        AL        35203<br>City        State        ZIP Code<br><br>Contact phone 205-521-8000<br>Contact email jbailey@bradley.com | **Where should payments to the creditor be sent? (if different)**<br><br>Stoneham Drilling Corp.<br>Name<br>1700, 215 - 9th Avenue SW<br>Number    Street<br>Calgary        Alberta , Canada T2P 1K3<br>City        State        ZIP Code<br><br>Contact phone<br>Contact email |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

| | |
|---|---|
| **4. Does this claim amend one already filed?** | ☑ No<br>☐ Yes. Claim number on court claims registry (if known) _____        Filed on _____ MM / DD / YYYY |
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes. Who made the earlier filing? |

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

**7. How much is the claim?**   $_____1,600,141.65   Does this amount include interest or other charges?

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

see attached Addendum to Proof of Claim

**9. Is all or part of the claim secured?**

☐ No

☑ Yes.  The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☑ Other. Describe:   mineral lien

**Basis for perfection:**   See attached Addendum to Proof of Claim

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:   $_____

Amount of the claim that is secured:   $_____1,598,449.37

Amount of the claim that is unsecured:  $_____1,692.28 (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:   $_____

Annual Interest Rate (when case was filed) 18.00 %

☑ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.   $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| | | Amount entitled to priority |
|---|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | |
| | ☐ Yes. Check one: | |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

**Part 3:   Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   09 / 23 / 2020
                   MM /  DD  /  YYYY

_Signature_

Print the name of the person who is completing and signing this claim:

| | | | |
|---|---|---|---|
| Name | Peter Balkwill | | |
| | First name | Middle name | Last name |
| Title | Vice President, Finance | | |
| Company | Stoneham Drilling Corporation | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 1700, 215 - 9th Avenue SW | | |
| | Number      Street | | |
| | Calgary | Alberta, Canada | T2P 1K3 |
| | City | State | ZIP Code |
| Contact phone | _____ | Email | _____ |

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC, | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 20-12380-EEB |
| SKLARCO, LLC, | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |

## ADDENDUM TO PROOF OF CLAIM

As provided by Rule 3003(c)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Section 501(a) of Title 11 of the United States Code (the "Bankruptcy Code"), Stoneham Drilling Corporation ("Stoneham") files this proof of claim (the "Proof of Claim") in the bankruptcy cases of Sklar Exploration Company, LLC ("Sklar") and Sklarco, LLC ("Sklarco" and, collectively with Sklar, the "Debtors"), and states as follows:

1.     Stoneham has provided certain drilling services to Sklar pursuant to the terms of a Drilling Bid Proposal and Daywork Drilling Contract (the "Drilling Contract"). The Drilling Contract is attached hereto as **Attachment A** and incorporated by reference.

2.     The Debtors have failed and refused to pay Stoneham for the balance owing for goods and services provided under the Drilling Contract. The Drilling Contract provides that Stoneham may recover interest on amounts due and owing. Stoneham is also entitled to recover attorney's fees and costs of collecting amounts due under the Drilling Contract.

3.     On May 15, 2020, Stoneham filed a valid Mineral Lien Affidavit, under Instrument No. 356066, Bk 88-Doc Pg 162-196, with the County Clerk of Phillips County, Montana, such that Stoneham is a secured creditor against the Debtors to the entire extent of said lien (the "Lien").

4.     On May 29, 2020, Stoneham filed Stoneham Drilling Corporation's Notice of Perfection of Lien Against Mineral Property Pursuant to 11 U.S.C. § 546(b)(2) [Case No. 20-12377, Docket No. 368] (the "546 Notice"). A copy of the 546 Notice is attached hereto as **Attachment B** and incorporated by reference.

1

5.    The amounts due under the Drilling Contract and secured by the Lien are summarized as follows:

| Description | Amount |
|---|---|
| INV0001604 | $709,888.93 |
| INV0001631 | $17,400.00 |
| INV0001640 | $1,993.75 |
| INV0001655 | $18,575.00 |
| INV0001659 | $648,700.16 |
| INV0001661 | $4,020.50 |
| INV0001671 | $12,020.60 |
| Accrued Interest as of 9/28/2020 | $140,109.47 |
| Legal Fees and Costs as of 8/31/2020 | $45,740.96 |
| **Total** | **$1,598,449.37** |

6.    Accordingly, Stoneham holds a secured claim against the Debtors in the total amount of **$1,598,449.37**. The invoices referenced in the preceding table are attached to the 546 Notice.

7.    Stoneham's claim is secured by the Lien against the Debtors' interest in the property more particularly described in the 546 Notice, including without limitation, all property or property interests subject to the Lien as provided in Title 71 of the Montana Code or other applicable law

8.    Stoneham also holds an unsecured claim in the amount of **$1,692.28** based upon INV0001688, which is attached hereto as **Attachment C**.

9.    Attorneys' fees, costs, and interest continue to accrue on all amounts due and owing to Stoneham. Without limiting the foregoing, Stoneham reserves, to the fullest extent allowed by applicable law, the right to amend, modify, renew, extend, restate, supplement, and/or withdraw, for any reason, this Proof of Claim.

10.    Stoneham reserves its rights and remedies against the Debtors and any other parties. Nothing herein shall be construed as a waiver or release of Stoneham's rights against any parties.

11.    Stoneham reserves, without limitation, all setoff, recoupment, netting, and similar rights, if any, under any applicable contract, statute, common law, or equitable principle. At present, the full amount of such rights is undetermined, and, therefore, Stoneham does not state a value for all such rights. Stoneham reserves, without limitation, the right to amend or supplement this Proof of Claim to add such information in the future.

12.    Stoneham and the Debtors may also be parties to contracts and/or agreements not

2

specifically described herein. Stoneham hereby expressly reserves its rights to assert any and all claims under such contracts or agreements.

      13.    Stoneham may also have additional prepetition and/or post-petition claims that are unliquidated as of the date hereof, and Stoneham expressly reserves the right to amend this Proof of Claim to include such claims as they are liquidated.

      14.    Stoneham reserves all of its rights relating to any plan of reorganization proposed in the Debtors' chapter 11 cases.

      15.    The filing of this Proof of Claim is not and shall not be deemed or construed as:

    a.  a waiver of Stoneham's rights to (i) file or otherwise assert a claim for rejection damages under Section 502 of the Bankruptcy Code, (ii) file or otherwise assert an administrative claim under Section 503 of the Bankruptcy Code, including with respect to any amounts asserted in this Proof of Claim, or (iii) file or otherwise assert a claim under Section 365(b) of the Bankruptcy Code;

    b.  a waiver of Stoneham's rights to seek arbitration of any and all disputes with the Debtors or any third parties;

    c.  a consent by Stoneham to the jurisdiction of this court or any other court with respect to proceedings, if any, commenced against or otherwise involving Stoneham;

    d.  a waiver or release of Stoneham's right to a trial by jury in this court or any other court in any proceeding as to any and all matters triable in such court, whether or not the same may be designated legal or private rights or in any case, controversy, or proceeding related to this Proof of Claim, notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. § 157, and whether such jury trial right is pursuant to statute or the United States Constitution;

    e.  a consent by Stoneham to a jury trial in this court or any other court in any proceeding as to any and all matters so triable in such court in any case, controversy, or proceeding related to this Proof of Claim, pursuant to 28 U.S.C. § 157 or otherwise;

    f.  a waiver or release of Stoneham's right to have any and all final orders entered only after *de novo* review by a United States District Court;

    g.  a waiver of Stoneham's rights to move to withdraw the reference with respect to the subject matter of this Proof of Claim, any objection to this Proof of Claim,

or other proceeding that may be commenced in this case against or otherwise involving Stoneham; or

h.  an election of remedies.

4

# ATTACHMENT A

Revised November 2013

NOTE: This form contract is a suggested guide only and use of this form or any variation thereof shall be at the sole discretion and risk of the user parties. Users of the form contract or any portion or variation thereof are encouraged to seek the advice of counsel to ensure that their contract reflects the complete agreement of the parties and applicable law. The International Association of Drilling Contractors disclaims any liability whatsoever for loss or damages which may result from use of the form contract or portions or variations thereof.

 **INTERNATIONAL ASSOCIATION OF DRILLING CONTRACTORS**
## DRILLING BID PROPOSAL
### AND
## DAYWORK DRILLING CONTRACT - U.S.

**IADC**

TO: ___Steven Hatcher___

Please submit a bid on this drilling contract form for performing the services outlined below, upon the terms and for the consideration set forth, with the understanding that if the bid is accepted by _____.

this instrument will constitute a Contract between the parties identified as Operator and Contractor below. The bid should be mailed or delivered not later than

_____ P.M. on _____, 20_____ to the following address: _____
_____
_____

## THIS CONTRACT CONTAINS PROVISIONS RELATING TO INDEMNITY, RELEASE OF LIABILITY, AND ALLOCATION OF RISK - SEE PARAGRAPHS 4.8, 6.3(d), 10, 12, AND 14

This Contract is made and entered into on the date as hereinafter set forth on the signature page hereto (the "Effective Date") by and between the parties herein designated as "Operator" and "Contractor".

| | |
|---|---|
| **OPERATOR:** | ___Sklar Exploration Company, LLC___ |
| **Address:** | ___401 Edwards St. Ste. 1601___ |
| | ___Shreveport, LA 71101___ |
| **CONTRACTOR:** | ___Stoneham Drilling Corporation___ |
| **Address:** | ___707 17th Street, Suite 3250___ |
| | ___Denver, CO 80202___ |

IN CONSIDERATION of the mutual promises, conditions and agreements herein contained and the specifications and special provisions set forth in Exhibit "A" and Exhibit "B" attached hereto and made a part hereof (this "Contract"), Operator engages Contractor to provide the services specified herein on a Daywork Basis.

For purposes hereof, the term "Daywork" or "Daywork Basis" means Contractor shall furnish the equipment, labor, and perform the services required of Contractor herein, for a specified sum per day under the direction, supervision and control of Operator, or any employee, agent, consultant or subcontractor engaged by Operator, who shall direct the drilling and all other well operations. *Contractor shall be fully paid at the applicable rates of payment and assumes only the obligations and liabilities stated herein. Except for such obligations and liabilities specifically assumed by Contractor herein, Operator shall be solely responsible and assumes liability for all consequences of operations by both parties, including results and all other risks or liabilities incurred in or incident to such operations. Except as otherwise expressly provided in this Contract, Contractor makes no warranty of any kind, express or implied (including, without limitation, implied warranties of merchantability, fitness for a particular purpose or good and workmanlike performance), regarding the services provided hereunder.*

1. **LOCATION OF WELL:**

   **1.1 Initial Well:**
   Well Name
   and Number: **CORWIN #5 -1**
   Parish/
   County: **PHILLIPS**          State: **MT**          Field Name: _____
   Well location and
   land description: **SEC 5, T 32N, R 33E**

   1.2 Additional Well(s) Locations or Areas: ___Bowdoin #2___

The information in this Paragraph 1 is for well and Contract identification only and Contractor assumes no liability whatsoever for a proper survey or location stake on Operator's lease.

2. **COMMENCEMENT DATE:**

   Contractor agrees to use reasonable efforts to commence operations for the initial well hereunder by the ___1st___ day of ___November___, 20___19___.
   or ___AS MUTUALLY AGREED UPON BY BOTH PARTIES___

Revised November 2013

3.  **WELL DEPTH:**

The well(s) will be drilled to a depth of approximately _____7000_____ feet, or to the _____N/A_____

formation, whichever is deeper, but Contractor shall not be required hereunder to drill said well(s) below a maximum depth of _____7500_____ feet, unless Contractor

and Operator mutually agree in writing to drill to a greater depth.

4.  **COMPENSATION:**

Operator shall pay Contractor the following rates for the services specified herein.

**4.1 Mobilization:**

(a) Initial Well:  Operator shall pay Contractor a mobilization fee of $___N/A_____

and a mobilization rate of $__75% OF OPERATING DAYRATE_____ per day from the time Contractor commences mobilization

of its rig and equipment to the initial location hereunder until the rig is rigged up at, or positioned over, such location. These amounts shall be due and payable in

full at the time the rig is rigged up at, or positioned over, the initial location. The mobilization rate per day shall be pro-rated only when another rate applies during

that day. Initial mobilization shall include:

**LABOR AND SUPERVISION TO RIG UP AND POSITION THE CONTRACTORS EQUIPMENT OVER THE HOLE. DAYWORK BEGINS WHEN CONTRACTORS**

**EQUIPMENT IS RIGGED UP AND POSITIONED OVER THE HOLE**

(b) Additional Wells:  For moves to additional wells hereunder, Operator shall pay Contractor a mobilization fee of $___N/A_____

and a mobilization rate of $__75% OF OPERATING DAYRATE_____ per day for mobilization of Contractor's rig and equipment

from the time the rig is released from the previous well until the rig is rigged up at, or positioned over, the next location. These amounts shall be due and payable

in full at the time the rig is rigged up at, or positioned over, the next location. The mobilization rate per day shall be pro-rated only when another rate applies during

that day. Mobilization to additional locations shall include:

**LABOR AND SUPERVISION TO RIG UP AND POSITION THE CONTRACTORS EQUIPMENT OVER THE HOLE. DAYWORK BEGINS WHEN CONTRACTORS**

**EQUIPMENT IS RIGGED UP AND POSITIONED OVER THE HOLE**

**4.2 Demobilization:**  Operator shall pay Contractor a demobilization fee of $___N/A_____ and a

demobilization rate during tear down of $__75% OF OPERATING DAYRATE_____ per day for demobilization of Contractor's

rig and equipment from the time the rig is released from the last well drilled hereunder and fully rigged down and ready to be moved off the location; provided,

however, no demobilization fee shall be payable if this Contract is terminated due to the total loss or destruction of the rig. The demobilization rate per day shall

be pro-rated only when another rate applies during that day. Demobilization shall include:

**LABOR AND SUPERVISION TO RIG DOWN, CLEAN AND STACK THE RIG AT A SECURE LOCATION IN WRIGHT, WY.**

_____

**4.3 Operating Rate:**  For services performed with a ___FIVE (5)_____ person crew, Operator shall pay Contractor the following

operating rate:

| Depth Intervals | | | | | |
|---|---|---|---|---|---|
| From | To | Without Drill Pipe | | With Drill Pipe | |
| _____ | _____ | $ 16,000 _____ per day | | $ 18,000 _____ per day | |
| _____ | _____ | $_____ per day | | $_____ per day | |
| _____ | _____ | $_____ per day | | $_____ per day | |

Using Operator's drill pipe $_____N/A_____ per day.

The operating rate will begin when the rig is rigged up at or positioned over, the location; and will cease when the well head is secured, the pits and rig are cleaned
and the rig is released.

Operator shall pay Contractor additional compensation for any drill pipe actually used, at the rates specified below, computed on the basis of the maximum drill

pipe in use at any time during each day.

**DRILL PIPE RATE PER 24-HOUR DAY**

| Straight Hole | | Size | Grade | Directional or Uncontrollable Deviated Hole | | Size | Grade |
|---|---|---|---|---|---|---|---|
| $ N/A _____ per ft. | | _____ | _____ | $_____ per ft. | | _____ | _____ |
| $_____ per ft. | | _____ | _____ | $_____ per ft. | | _____ | _____ |
| $_____ per ft. | | _____ | _____ | $_____ per ft. | | _____ | _____ |

Directional or uncontrolled deviated hole will be deemed to exist when deviation exceeds _____N/A_____ degrees or when the change of angle

exceeds _____N/A_____ degrees per one hundred feet. Maintaining a hole within the accepted limits of deviation is at the direction of

Operator and wholly the responsibility of Operator.

Drill pipe shall be considered in use not only when in actual use but also while it is being picked up or laid down. When drill pipe is standing in the derrick, it shall

not be considered in use; provided, however, if Contractor furnishes special strings of drill pipe, drill collars, and handling tools as provided for in Exhibit "A", the

same shall be considered in use at all times when on location or until released by Operator. In no event shall fractions of an hour be considered in computing the

amount of time drill pipe is in use but such time shall be computed to the nearest hour, with thirty minutes or more being considered a full hour and less than thirty

minutes not to be counted.

Revised November 2013

4.4 Repair Time: In the event it is necessary to shut down for repairs to Contractor's rig, excluding routine rig servicing, Operator shall pay Contractor at the applicable operating rate for such shut down time up to a maximum of _____ 24 _____ hours for any one rig repair job, but not to exceed _____ 4 _____ hours of such compensation for any calendar month. Thereafter, Operator shall pay Contractor a repair time rate of $_____ ZERO _____ _____ per day. Routine rig servicing shall include, but not be limited to, cutting and slipping drilling line, servicing the top drive, if any, changing pump or swivel expendables, testing BOP equipment, lubricating the rig and associated equipment, and_____ _____.

4.5 Standby Time Rate: Operator shall pay Contractor a standby time rate of $_____ 85½ OF OPERATING DAYRATE _____ per day. Standby time shall be defined to include time when the rig is shut down while Contractor is waiting on orders by or on behalf of Operator or on equipment, materials, services or other items to be furnished by Operator.

4.6 Drilling Fluid Rates: When drilling fluids of a type and characteristic that increases Contractor's cost of performance hereunder, including, but not limited to, oil-based mud or potassium chloride, are used, Operator shall pay Contractor, in addition to the operating rate specified above:

    (a) $_30_____ per person per day for Contractor's rig-site personnel;

    (b) $_N/A_____ per day additional operating rate;

    (c) Cost of all additional labor, material and services; and

    (d) __AS NEEDED_____ hours operating rate or a lump sum of $__N/A_____ to clean the rig and related equipment.

4.7 Force Majeure Rate: Operator shall pay Contractor a Force Majeure rate of $_____ 85% OF OPERATING DAYRATE _____ _____ per day for any period that normal operations are suspended or cannot be carried on due to a Force Majeure Event as defined in Paragraph 17 hereof. It is, however, understood that Operator may terminate this Contract pursuant to Subparagraph 6.3(b) below; provided, however, such termination shall not be effective until the rig has been fully rigged down and conditions will permit the rig to be moved from the location.

4.8 Reimbursable Costs: Operator shall reimburse Contractor for the costs of equipment, materials or services that are to be furnished by Operator as provided for herein but which for convenience are actually furnished by Contractor at Operator's request, plus _____ 10 _____ percent, as a handling fee. *When, at Operator's request and with Contractor's agreement, Contractor furnishes or subcontracts for certain items or services that Operator is required herein to provide, for purposes of the indemnity and release provisions of this Contract said items or services shall be deemed to be Operator furnished items or services. Any subcontractors so hired by Contractor shall be deemed to be Operator's contractor, and Operator shall not be relieved of any of its liabilities in connection therewith.*

4.9 Revision in Rates: The rates and/or payments herein set forth due to Contractor from Operator shall be revised to reflect the change in costs if the costs of any of the items hereinafter listed shall vary by more than _____ FIVE (5) _____ percent from the costs thereof on the Effective Date or by the same percent after the date of any revision pursuant to this Subparagraph:

    (a) Labor costs, including all benefits, of Contractor's personnel;

    (b) Contractor's cost of insurance premiums;

    (c) Contractor's cost of fuel, including all taxes and fees; the cost per gallon/MCF being $__ OPERATOR PAYS FOR ALL FUEL _____;

    (d) Contractor's cost of catering, when applicable;

    (e) If Operator requires Contractor to increase or decrease the number of Contractor's personnel;

    (f)

    (g) If there is any change in legislation or regulations in the area in which Contractor is providing services or other unforeseen, unusual event that alters Contractor's financial burden.

5.     TIME OF PAYMENT:

Payment is due by Operator to Contractor as follows:

5.1 Payment for mobilization, drilling and other services performed at applicable rates, and all other applicable charges shall be due, upon Contractor's presentation to Operator of an invoice therefor, upon completion of mobilization, demobilization, rig release or at the end of the month in which such services were performed or other charges incurred, whichever shall first occur. All invoices may be mailed to Operator at the address hereinabove shown, unless Operator does hereby designate that such invoices shall be mailed as follows:____ SKLAR EXPLORATION COMPANY, LLC 401 EDWARDS ST. STE 1601 SHREVEPORT, LA. 71101 _____

5.2 Disputed Invoices and Late Payment: Operator shall pay all invoices within _____ 21 _____ days after receipt except that if Operator disputes an invoice or any item thereof, Operator shall, within fifteen (15) days after receipt of such invoice, notify Contractor of the item disputed, specifying the reason therefor, and payment of the disputed item may be withheld until settlement of the dispute, but timely payment shall be made of any undisputed item. Any sums (including amounts ultimately paid with respect to a disputed item) not paid within the above specified days shall bear interest at the rate of _____ 1.5 _____ percent or the maximum legal rate, whichever is less, per month from the due date until paid. If Operator does not pay undisputed items within the above stated time, Contractor may suspend operations hereunder or terminate this Contract as specified under Subparagraph 6.3(c).

6.     TERM:

6.1 Contract Term: The term of this Contract ("Contract Term") shall be as set forth in (a) or (b) below.

    (a) If this Contract is for a specified number of wells, this Contract shall remain in full force and effect from the Effective Date until Contractor's rig and equipment have been demobilized from the final well hereunder. Contractor and Operator agree that this Contract is for _____ TWO (2) _____ consecutive well(s), unless extended pursuant to Subparagraph 6.2 below.

6.2 Extension of Term: Operator may extend this Contract for _____ ONE _____ well(s) or for a period of __ N/A _____ by giving written notice to Contractor at least ___ 30 _____ days prior to completion of the well then being drilled or by __ MUTUAL AGREEMENT _____.

*(U.S. Daywork Contract - Page 3)*
Copyright © 2013 International Association of Drilling Contractors.

Revised November 2013

**6.3 Early Termination:**

(a) By Either Party: Upon giving of written notice, either party may terminate this Contract when total loss or destruction of the rig, or a major breakdown with indefinite repair time, necessitates stopping operations hereunder.

(b) By Operator: Notwithstanding the provisions of Paragraph 3 with respect to the depth to be drilled, Operator shall, in addition to the provisions of Subparagraph 4.7 above, have the right to terminate this Contract at any time even though Contractor has made no default hereunder. In such event Operator shall pay Contractor the applicable termination compensation as set forth in Subparagraph 6.4 hereof.

(c) By Contractor: Notwithstanding anything herein to the contrary, in the event Operator shall become insolvent, or be adjudicated a bankrupt, or file, by way of petition or answer, a debtor's petition or other pleading seeking adjustment of Operator's debts, under any bankruptcy or debtor's relief laws now or hereafter prevailing, or if any such be filed against Operator, or in case a receiver be appointed of Operator or Operator's property, or any part thereof, or Operator's affairs be placed in the hands of a creditors' committee, or, following no less than _____ 10 _____ business business days prior written notice to Operator if Operator does not pay Contractor within the time specified in Paragraph 5 all undisputed items due and owing. Contractor may, at its option: (1) terminate this Contract and Contractor's right to compensation shall be as set forth in Subparagraph 6.4 hereof; or (2) suspend operations hereunder until payment is made by Operator in which event the standby time rate contained in Subparagraph 4.5 shall apply until payment is made by Operator and operations are resumed. If Contractor terminates this Contract in accordance with Subparagraph 6.3, Contractor shall have the right to remove its rig, equipment, and personnel from the location.

**(d) If this Contract is suspended or terminated by either party, Operator hereby expressly agrees to protect, defend and indemnify Contractor from and against any claims, demands and causes of action, including all costs of defense, in favor of Operator, Operator's co-venturers, co-lessees and joint owners, or any other parties arising out of any drilling commitments or obligations contained in any lease, farmout agreement or other agreement, which may be affected by such suspension of operations or termination of performance hereunder.**

**6.4** Early Termination Compensation: If this Contract is terminated prior to completion of the Contract Term, the parties agree that Contractor's damages would be difficult to determine and that the following liquidated damages are fair and reasonable under the circumstances and do not constitute a penalty.

(a) When the Contract Term specified in Subparagraph 6.1 is for one or more wells:

(i) Prior to Commencement of Initial Mobilization: In the event this Contract is terminated prior to commencement of mobilization of Contractor's rig or equipment to the initial well hereunder, Operator shall pay Contractor a sum equal to the standby time rate for a period of _____ THIRTY(30) _____ days or a lump sum of $_____ N/A _____, whichever is greater.

(ii) Subsequent to Commencement of Initial Mobilization: In the event this Contract is terminated after commencement of mobilization of Contractor's rig or equipment to the initial well hereunder, Operator shall pay to Contractor the sum of the following: (1) the amount for all applicable rates and all other charges and reimbursements due to Contractor through demobilization, but in no event shall such sum be less than would have been earned for FIFTEEN (15) _____ days at the operating rate; and (2) all additional expenses reasonably and necessarily incurred and to be incurred by Contractor by reason of this Contract and by reason of the premature termination of the services hereunder, plus _____ 15 _____% of the amount of such reimbursable expenses; provided, however, if this Contract is for a term of more than one well, Operator shall pay Contractor, in addition to the above, a lump sum of $ _____ 250,000 _____ _____ for each additional well hereunder for which Contractor has not commenced services.

**7.      CASING PROGRAM:**

Operator shall designate the points at which casing will be set and the manner of setting, cementing and testing. The casing program will be as set forth in Exhibit "A". Operator may modify the casing program. However, any such modification which materially increases Contractor's hazards or costs can only be made by mutual written consent of Operator and Contractor and upon written agreement as to the additional compensation to be paid Contractor as a result thereof.

**8.      DRILLING METHODS AND PRACTICES:**

8.1 Subject to, and without waiving the provisions of, Paragraph 14, Contractor shall maintain its well control equipment in good condition at all times and shall use reasonable means to prevent and control fires and blowouts.

8.2 Subject to the terms hereof, at all times Operator, at its cost, shall control the mud program, and the drilling fluid must be of a type and have characteristics and be maintained by Contractor in accordance with the specifications shown in Exhibit "A" or as otherwise agreed by Operator and Contractor.

8.3 Subject to, and without waiving the provisions of, Paragraph 14, each party hereto agrees to comply with all laws, rules, and regulations of any federal, state or local governmental authority which are now or may become applicable to that party's operations covered by or arising out of the performance of this Contract. When required by law, the terms of Exhibit "B" shall apply to this Contract.

8.4 Contractor shall keep and furnish to Operator an accurate record of the services performed on the IADC-API Daily Drilling Report Form or other form acceptable to Operator. A legible copy of said form shall be furnished by Contractor to Operator.

**9.      INGRESS, EGRESS, AND LOCATION:**

Operator hereby assigns to Contractor all necessary rights of ingress and egress with respect to the tract on which each well is to be located for the performance by Contractor of all services contemplated by this Contract. Should Contractor be denied free access to the location for any reason not reasonably within Contractor's control, any time lost by Contractor as a result of such denial shall be paid for at the standby time rate. Operator agrees at all times to maintain the road and location in such a condition that will allow free access and movement to and from the location in an ordinarily equipped highway type vehicle. If Contractor is required to use bulldozers, tractors, four-wheel drive vehicles, or any other specialized transportation equipment for the movement of necessary personnel, machinery, or equipment over access roads or on the location, Operator shall furnish the same at its expense and without cost to Contractor. The

Revised November 2013

actual cost of repairs to any transportation equipment furnished by Contractor or its personnel damaged as a result of the condition of access roads or location will be charged to and paid by Operator. Operator shall reimburse Contractor for all amounts reasonably expended by Contractor for repairs and/or reinforcement of roads, bridges and related or similar facilities (public and private) required as a direct result of a rig move pursuant to performance hereunder. Operator shall be responsible for any costs associated with leveling the rig because of location settling.

10.   SOUND LOCATION:

*Operator shall prepare a sound location adequate in size and capable of properly supporting Contractor's rig and related equipment, and shall be responsible for a casing and cementing program adequate to prevent soil and subsoil wash out. It is recognized that Operator has superior knowledge of the location and access routes to and from the location, and must advise Contractor of any subsurface conditions, or obstructions (including, but not limited to, mines, caverns, sink holes, streams, pipelines, power lines and communication lines) which might be encountered while en route to or from or at the location. In theevent subsurface conditions cause a cratering or shifting of the location surface, or if seabed conditions prove unsatisfactory to properly support the rig during marine operations hereunder, and loss or damage to the rig or its associated equipment results therefrom for any reason, Operator shall, without regard to any other provisions of this Contract, including Subparagraph 14.3 hereof, indemnify Contractor for all such loss or damage including removal of debris and payment of Force Majeure rate during repair and/or demobilization if applicable.*

11.   EQUIPMENT CAPACITY:

Subject to, and without waiving the provisions of, Paragraph 14, operations shall not be attempted under any conditions which exceed the capacity of the equipment to be used hereunder and Contractor shall have the right, but not the obligation, to make the final decision as to when an operation or attempted operation would exceed the capacity of such equipment. Operations shall not be attempted where canal or water depths are in excess of _____ N/A _____ feet.

12.   TERMINATION OF LOCATION LIABILITY:

*When Contractor has concluded operations at the location, Operator shall thereafter be liable for damage to property, personal injury or death of any person which occurs as a result of conditions of the location and Contractor shall be relieved of such liability; provided, however, if Contractor shall subsequently reenter upon the location for any reason, including removal of the rig, any provision of the Contract relating to such reentry activity shall become applicable during such period.*

13.   INSURANCE:

13.1 Contractor shall at Contractor's expense maintain, with an insurance company or companies authorized to do business in the state where the services are to be performed or through a self-insurance program, insurance coverages of the kind and in the amounts set forth in Exhibit "A", insuring the risks, liabilities and indemnity obligations specifically assumed by Contractor herein, including, but not limited to, Paragraph 14 of this Contract. Contractor shall procure from the company or companies writing said insurance a certificate, or certificates, confirming that said insurance is in full force and effect and that said insurance shall not be canceled or materially changed without at least ten (10) days prior written notice. For the risks, liabilities and indemnity obligations assumed hereunder by Contractor, its insurance shall be endorsed to provide that the underwriters waive their right of subrogation against Operator Group. Contractor shall cause its underwriters to name Operator Group as additional insureds but only to the extent of the risks, obligations, liabilities and indemnification obligations assumed by Contractor herein. Contractor agrees that the Contractor Group shall not be entitled to assert a claim against Operator's insurance with respect to risks and liabilities assumed by Contractor or as to which Contractor has agreed to indemnify Operator under the Contract.

13.2 Operator shall at Operator's expense maintain, with an insurance company or companies authorized to do business in the state where the services are to be performed or through a self-insurance program, insurance coverages of the kind and in the amounts set forth in Exhibit "A", insuring the risks, liabilities and indemnity obligations specifically assumed by Operator herein, including, but not limited to, Paragraph 14 of this Contract. Operator shall procure from the company or companies writing said insurance a certificate, or certificates, confirming that said insurance is in full force and effect and that said insurance shall not be canceled or materially changed without at least ten (10) days prior written notice. For the risks, liabilities and indemnity obligations assumed hereunder by Operator, its insurance shall be endorsed to provide that the underwriters waive their right of subrogation against Contractor Group. Operator shall cause its underwriters to name Contractor Group as additional insureds but only to the extent of the risks, liabilities and indemnification obligations assumed by Operator herein.

13.3 The indemnifying party's liability insurance shall be primary to the extent of the releases, indemnification obligations and assumptions of liability of the indemnifying party under this Contract. Operator agrees that the Operator Group shall not be entitled to assert a claim against Contractor's insurance with respect to risks and liabilities assumed by Operator or as to which Operator has agreed to indemnify Contractor under the Contract. Contractor agrees that the Contractor Group shall not be entitled to assert a claim against Operator's insurance with respect to risks and liabilities assumed by Contractor or as to which Contractor has agreed to indemnify Operator under the Contract.

13.4 Notwithstanding any other provisions of this Contract to the contrary, the parties hereby acknowledge and agree that the insurance and indemnity obligations are separate and distinct duties under this Contract. Except as may be mandated by applicable state law, the indemnity obligations contained in this Contract shall not be limited by the insurance requirements of this Paragraph 13 and Exhibit "A" hereto.

14.   RESPONSIBILITY FOR LOSS OR DAMAGE, INDEMNITY, RELEASE OF LIABILITY AND ALLOCATION OF RISK:

14.1   *In this Contract the term "Operator Group" means any and all of the following:*
   *(a) Operator;*
   *(b) Operator's co-venturers, co-lessees and other non-operating working interest owners;*
   *(c) General and limited partners of (a) and (b);*
   *(d) Parents and subsidiaries of (a), (b) and (c);*
   *(e) Shareholders, directors, officers and employees of (a), (b), (c) and (d); and*

Revised November 2013

*(f) The heirs, successors, assigns and insurers of (a), (b), (c), (d) and (e).*

14.2    *In this Contract the term "Contractor Group" means any and all of the following:*
*(a) Contractor;*
*(b) Contractor's general and limited partners;*
*(c) Parents, subsidiaries and affiliates of (a) and (b);*
*(d) Shareholders, directors, officers and employees of (a), (b) and (c); and*
*(e) The heirs, successors, assigns and insurers of (a), (b), (c) and (d).*

14.3    *Contractor's Surface Equipment: Contractor shall assume liability at all times for loss of, damage to or destruction of Contractor's surface equipment, regardless of when or how such loss, damage or destruction occurs, and Contractor shall release Operator Group of any liability for any such loss, damage or destruction, except loss, damage or destruction under the provisions of Paragraphs 9 or 10 or Subparagraph 14.5.*

14.4    *Contractor's In-Hole Equipment: Notwithstanding the provisions of Subparagraph 14.10, Operator shall assume liability at all times for loss of, damage to or destruction of Contractor's and its subcontractors' in-hole equipment, including, but not limited to, drill pipe, drill collars, and tool joints, and Operator shall reimburse Contractor for the value of any such loss or damage; the value to be determined by agreement between Contractor and Operator as current repair costs or _____100%_____ percent of current new replacement cost of such equipment delivered to the location.*

14.5    *Contractor's and its Subcontractors' Equipment - Environmental Loss or Damage: Notwithstanding the provisions of Subparagraphs 14.3 and 14.10, Operator shall assume liability at all times for loss of, damage to or destruction of, including corrosion and contamination, Contractor's and its subcontractors' equipment resulting from the presence of $H_2S$, $CO_2$ or other corrosive, destructive or abrasive elements introduced into the drilling fluid (including elements introduced from the hole). Operator shall pay the cost of repairing and/or decontaminating damaged equipment if repairable. In the case where such equipment is so lost, destroyed, damaged or contaminated beyond repair, Operator shall reimburse Contractor an amount equal to _____100%_____ percent of current new replacement cost of such equipment delivered to the location. In addition, notwithstanding the provisions of Subparagraph 4.4 of this Contract, the standby time rate shall apply with respect to any downtime that may occur or result from such damage, including decontamination operations.*

14.6    *Operator's Equipment: Operator shall assume liability at all times for loss of, damage to or destruction of Operator's or its co-venturers', co-lessees' or other non-operating working interest owners' equipment, including, but not limited to, casing, tubing, and well head equipment regardless of when or how such loss, damage or destruction occurs, and Operator shall release Contractor Group of any liability for any such loss, damage or destruction and shall protect, defend and indemnify Contractor Group from and against any and all claims, liability and expense relating to such loss, damage or destruction.*

14.7    *The Hole: In the event the hole should be lost or damaged, Operator shall be solely responsible for such damage to or loss of the hole, including the casing therein.  Operator shall release Contractor Group and each of their equipment manufacturers, suppliers, contractors and subcontractors of any tier of any liability for damage to or loss of the hole, and shall protect, defend and indemnify Contractor Group and each of their equipment manufacturers, suppliers, contractors and subcontractors of any tier from and against any and all claims, liability, and expense relating to such damage to or loss of the hole.*

14.8    *Underground Damage: Operator shall release Contractor Group and each of their equipment manufacturers, suppliers, contractors and subcontractors of any tier of any liability for, and shall protect, defend and indemnify Contractor Group and each of their equipment manufacturers, suppliers, contractors and subcontractors of any tier from and against any and all claims, liability, and expense resulting from operations under this Contract on account of injury to, destruction of, or loss or impairment of any property right in or to oil, gas, or other mineral substance or water, if at the time of the act or omission causing such injury, destruction, loss, or impairment, said substance had not been reduced to physical possession above the surface of the earth, and for any loss or damage to any property, equipment, structure, formation, strata, or reservoir beneath the surface of the earth.*

14.9    *Materials Furnished by Operator: Except as provided in Subparagraphs 14.3 and 14.10, Contractor shall not be liable for any loss or damage resulting from the use of, or failure to use, machinery, equipment, tools, materials, supplies or instruments furnished by Operator, and Operator shall release Contractor Group from, and shall protect, defend and indemnify Contractor Group from and against any and all claims, liability, and expense arising in connection with the use of, or failure to use, machinery, equipment, tools, materials, supplies or instruments furnished by Operator.*

14.10    *Contractor's Indemnification of Operator: Contractor shall release Operator Group of any liability for, and shall protect, defend and indemnify Operator Group from and against all claims, demands, and causes of action of every kind and character on account of bodily injury, illness or death of Contractor's employees or Contractor's subcontractors of any tier (inclusive of any agent or consultant engaged by Contractor) or their employees, or Contractor's invitees or damage to their property.  Contractor's indemnity under this Paragraph shall be without regard to and without any right to contribution from any insurance maintained by Operator pursuant to Paragraph 13.  If it is judicially determined that the monetary limits of insurance required hereunder or of the indemnities voluntarily assumed under Subparagraph 14.10 (which Contractor and Operator hereby agree will be supported either by liability insurance, under which the insurer has no right of subrogation against the indemnitees, or voluntarily self-insured) exceed the maximum limits permitted under applicable law, it is agreed that said insurance requirements or indemnities shall automatically be amended to conform to the maximum monetary limits permitted under such law.*

Revised November 2013

14.11 *Operator's Indemnification of Contractor:* Operator shall release Contractor Group of any liability for, and shall protect, defend and indemnify Contractor Group from and against all claims, demands, and causes of action of every kind and character, on account of bodily injury, illness or death of Operator's employees or Operator's contractors of any tier (inclusive of any agent, consultant or subcontractor engaged by Operator) or their employees, or Operator's invitees (other than those parties identified in Subparagraph 14.10) or damage to their property. Operator's indemnity under this Paragraph shall be without regard to and without any right to contribution from any insurance maintained by Contractor pursuant to Paragraph 13. If it is judicially determined that the monetary limits of insurance required hereunder or of the indemnities voluntarily assumed under Subparagraph 14.11 (which Contractor and Operator hereby agree will be supported either by liability insurance, under which the insurer has no right of subrogation against the indemnitees, or voluntarily self-insured) exceed the maximum limits permitted under applicable law, it is agreed that said insurance requirements or indemnities shall automatically be amended to conform to the maximum monetary limits permitted under such law.

14.12 *Cost of Control and Debris Removal:* Operator shall assume all responsibility and liability for and shall release, protect, defend and indemnify Contractor Group and each of its equipment manufacturers, suppliers, contractors and subcontractors of any tier for:

(a) the cost of regaining control of any wild well;

(b) the cost of removal of debris, including Contractor's rig and related equipment, and property remediation and restoration; and

(c) all claims, demands and causes of action arising directly or indirectly from the wild well, other than those by any member of Contractor Group or any of their respective equipment manufacturers, suppliers, contractors and subcontractors of any tier.

14.13 *Pollution or Contamination:* Notwithstanding anything to the contrary contained in this Contract, except the provisions of Paragraphs 10 and 12, and Subparagraphs 14.10 and 14.11, it is understood and agreed by and between Contractor and Operator that the responsibility for pollution or contamination shall be as follows:

(a) Contractor shall assume all responsibility and liability for, including control and removal of, and shall release, protect, defend and indemnify Operator Group from and against all claims, demands and causes of action of every kind and character arising from pollution or contamination, which originates above the surface of the land or water from spills of fuels, lubricants, motor oils, pipe dope, paints, solvents, ballast, bilge and garbage, except unavoidable pollution of or from reserve pits, wholly in Contractor's possession and control and directly associated with Contractor's equipment and facilities.

(b) Operator shall assume all responsibility and liability for, including control and removal of, and shall release, protect, defend and indemnify Contractor Group and each of their equipment manufacturers, suppliers, contractors and subcontractors of any tier from and against all claims, demands, and causes of action of every kind and character arising directly or indirectly from all pollution or contamination other than that described in Subparagraph 14.13(a) above, including, but not limited to, that which may result from fire, blowout, cratering, seepage or any flow of oil, gas, water or other substance, or the use or disposition of drilling and completion fluids (including oil emulsion, oil base or chemically treated fluids), contaminated cuttings or cavings, lost circulation and fish recovery materials and fluids.

(c) In the event a third party commits an act or omission which results in pollution or contamination for which either Contractor or Operator, for whom such party is performing work, is held to be legally liable, the responsibility therefor shall be considered, as between Contractor and Operator, to be the same as if the party for whom the work was performed had performed the same and all of the obligations respecting protection, defense, indemnity and limitation of responsibility and liability, as set forth in (a) and (b) above, shall be specifically applied.

14.14 *Consequential Damages:* Without prejudice to Subparagraph 6.4 and the provisions of this Contract regarding risk of loss, release and indemnity, each party shall at all times be responsible for and release, protect, defend and indemnify the other party from and against its own special, indirect or consequential damages, and the parties agree that special, indirect or consequential damages shall be deemed to include (whether special, indirect or consequential under applicable law), without limitation, the following: loss of profit or revenue (excluding, however, Contractor's profit or revenue under this Contract); costs and expenses resulting from business interruptions including cost of overheads incurred during such interruptions; loss of or delay in production; loss of or damage to the leasehold; loss of or delay in drilling or operating rights; cost of or loss of use of property, equipment, materials and services, including without limitation those provided by contractors or subcontractors of every tier or by third parties. Operator shall at all times be responsible for and release, protect, defend and indemnify Contractor Group and each of their equipment manufacturers, suppliers, contractors and subcontractors of any tier from and against all claims, demands and causes of action of every kind and character in connection with such special, indirect or consequential damages suffered by any member of Operator Group.

14.15 *Indemnity Obligation:* Except as otherwise expressly limited in this Contract, it is the intent of parties hereto that all releases, indemnity obligations and/or liabilities assumed by such parties under terms of this Contract, including, without limitation, Subparagraphs 4.8 and 6.3(c), Paragraphs 10, 12 and 14 hereof, shall apply to all claims, demands, causes of action, damages, fines, penalties, judgments and awards of any kind or character arising in connection herewith, and without regard to the cause or

Revised November 2013

causes thereof, including but not limited to pre-existing conditions, defect or ruin of premises or equipment, strict liability, regulatory or statutory liability, products liability, breach of representation or warranty (express or implied), breach of duty (whether statutory, contractual or otherwise), any theory of tort, breach of contract, fault, the negligence of any degree or character (regardless of whether such negligence is sole, joint or concurrent, active, passive or gross) of any party or parties, including the party seeking the benefit of the release, indemnity or assumption of liability, or any other theory of legal liability. Except as expressly provided herein, all releases, indemnity obligations, and assumptions of liability shall include the duty to defend (including payment of reasonable attorneys' fees and costs of litigation). The indemnities, releases and assumptions of liability extended by Contractor under the provisions of Paragraphs 12 and 14 shall inure to the benefit of each of the members of Operator Group. The indemnities, releases and assumptions of liability extended by Operator under the provisions of Subparagraphs 4.8 and 6.3 and Paragraphs 10, 12 and 14 shall inure to the benefit of each of the members of Contractor Group and, where specified in Paragraph 14, Contractor's equipment manufacturers, suppliers, contractors and subcontractors of every tier. Except as otherwise provided herein, such indemnification and assumptions of liability shall not be deemed to create any rights to indemnification in any person or entity not a party to this Contract, either as a third party beneficiary or by reason of any agreement of indemnity between one of the parties hereto and another person or entity not a party to this Contract.

**15.     AUDIT:**

If any payment provided for hereunder is made on the basis of Contractor's costs, Operator shall have the right, for a period of _____ONE (1)_____ years from the date such costs were incurred, to audit Contractor's books and records relating to such costs. Contractor agrees to maintain such books and records for the same period and to make such books and records available to Operator at any reasonable time or times.

**16.     NO WAIVER EXCEPT IN WRITING:**

It is fully understood and agreed that none of the requirements of this Contract shall be considered as waived by either party unless the same is done in writing, and then only by the persons executing this Contract, or other duly authorized agent or representative of the party.

**17.     FORCE MAJEURE:**

Except as provided in this Paragraph 17 and without prejudice to the risk of loss, release and indemnity obligations and limits of liability under this Contract, each party to this Contract shall be excused from complying with the terms of this Contract, except for the payment of monies when due, if and for so long as such compliance is hindered or prevented by a Force Majeure Event. As used in this Contract, "Force Majeure Event" includes: acts of God, action of the elements, wars (declared or undeclared), insurrection, revolution, rebellions or civil strife, piracy, civil war or hostile action, terrorist acts, riots, strikes, differences with workmen, acts of public enemies, federal or state laws, rules, regulations, dispositions or orders of any governmental authorities having jurisdiction in the premises or of any other group, organization or informal association (whether or not formally recognized as a government), inability to procure material, equipment, fuel or necessary labor in the open market, acute and unusual labor or material, equipment or fuel shortages, or any other causes (except financial) beyond the control of either party. Neither Operator nor Contractor shall be required against its will to adjust any labor or similar disputes except in accordance with applicable law. In the event that either party hereto is rendered unable, wholly or in part, by any of these causes to carry out its obligation under this Contract, it is agreed that such party shall give notice and details of the Force Majeure Event in writing to the other party as promptly as possible after its occurrence. In such cases, the obligations of the party giving the notice shall be suspended during the continuance of any inability so caused except that Operator shall be obligated to pay to Contractor the Force Majeure rate provided for in Subparagraph 4.7 above.

**18.     GOVERNING LAW:**

This Contract shall be construed, governed, interpreted, enforced and litigated, and the relations between the parties determined in accordance with the laws of the State of _____TEXAS_____, without regard to its choice or conflict of law principles.

**19.     VENUE:**

The parties agree to the exclusive jurisdiction and venue of the State or Federal Courts having jurisdiction in the County of _____DALLAS_____, in the State of _____TEXAS_____, for resolution of any claim or dispute relating to this Contract and hereby waive any argument of lack of personal jurisdiction or inconvenience of forum regarding such courts.

**20.     INFORMATION CONFIDENTIAL:**

Information obtained by Contractor in the conduct of operations hereunder, including, but not limited to, depth, formations penetrated, the results of coring, testing and surveying, shall be considered confidential and shall not be divulged by Contractor or its employees, to any person, firm, or corporation other than Operator's designated representatives; provided, however, Contractor and its employees may divulge such information if required by (i) applicable law, rule or regulation (including stock exchange regulations) or if requested or required in a judicial, administrative or governmental proceeding or investigation; (ii) a merger, acquisition or divestiture; or (iii) other parties under an obligation to keep all such information confidential, to the extent necessary to perform their respective duties. This Paragraph 20 will not apply to information that (a) is public or becomes public through no fault of Contractor; (b) is already in possession of Contractor at the time of the disclosure; (c) is disclosed to Contractor by a third party; or (d) is independently developed by Contractor without reliance on the confidential information received from Operator.

**21.     INDEPENDENT CONTRACTOR:**

It is understood and agreed that Contractor is and shall be an independent contractor as set out below. Contractor shall perform the services under the direction, supervision and control of Operator, or any employee, agent, consultant or subcontractor engaged by Operator, who shall direct the drilling, and all other well operations. All employees of and workers furnished by Contractor and Contractor's subcontractors shall be and remain the employees of Contractor or Contractor's subcontractors at all times, and they shall not be deemed employees, borrowed servants or agents of Operator. It is expressly agreed that neither Contractor, Contractor's subcontractors, nor any of their employees shall be entitled to any Operator benefit plans. Neither Contractor nor Contractor's subcontractors shall be deemed to occupy the status of an employee, agent or representative of Operator or to have the authority to bind Operator. All employees

Revised November 2013

of and workers furnished by Operator and Operator's subcontractors shall be and remain the employees of Operator or Operator's subcontractors at all times, and they shall not be deemed employees, borrowed servants or agents of Contractor. It is expressly agreed that neither Operator, Operator's subcontractors, nor any of their employees shall be entitled to any Contractor benefit plans. Neither Operator nor Operator's subcontractors shall be deemed to occupy the status of an employee, agent or representative of Contractor or to have the authority to bind Contractor.

**22.    SUBCONTRACTS:**

Either party may employ other contractors to perform any of the operations or services to be provided or performed by it according to Exhibit "A".

**23.    ATTORNEY'S FEES:**

If this Contract is placed in the hands of an attorney for enforcement of any provision hereof or collection of any sums due hereunder, or suit is brought on same, or sums due hereunder are collected through bankruptcy, arbitration or other proceedings, then the prevailing party shall be entitled to recover reasonable attorney's fees and costs.

**24.    CLAIMS AND LIENS:**

Contractor agrees to pay all valid claims for labor, material, services, and supplies to be furnished by Contractor hereunder, and agrees to allow no lien by such third parties to be fixed upon the lease, the well, or other property of the Operator or the land upon which said well is located. Similarly, Operator shall not allow its other contractors, subcontractors and suppliers providing equipment, goods, personnel and services to the well location to lien or encumber the rig and other equipment of the Contractor.

**25.    ASSIGNMENT:**

Neither party may assign this Contract without the prior written consent of the other, and prompt notice of any such intent to assign shall be given to the other party.  In the event of such assignment, the assigning party shall remain liable to the other party as a guarantor of the performance by the assignee of the terms of this Contract.  If any assignment is made that materially alters Contractor's financial burden, Contractor's compensation shall be adjusted to give effect to any increase or decrease in Contractor's operating costs.

**26.    NOTICES AND PLACE OF PAYMENT:**

Notices, reports, and other communications required or permitted by this Contract to be given or sent by one party to the other shall be delivered by hand, mailed, digitally transmitted or telecopied to the address hereinabove shown.  All sums payable hereunder to Contractor shall be payable at its address hereinabove shown unless otherwise specified herein.

**27.    CONTINUING OBLIGATIONS:**

Notwithstanding the termination of this Contract, the parties shall continue to be bound by the provisions of this Contract that reasonably require some action or forbearance after such termination.

**28.    ENTIRE AGREEMENT:**

This Contract constitutes the full understanding of the parties, and a complete and exclusive statement of the terms of their agreement, and shall exclusively control and govern all work performed hereunder. Each of the parties hereto expressly warrants and represents, and does hereby affirm and stipulate

(a) that no representation, promise or agreement, or statement of a past or existing fact, not expressed in this Contract, was made to induce the execution of same;

(b) that they have not relied upon any representation, promise or agreement, or statement of a past or existing fact, which is not expressed in this Contract; and

(c) that this Paragraph is binding, as a matter of law and fact, and shall preclude them from asserting that they were wrongfully induced to enter into this Contract by any representation, promise or agreement, or statement of a past or existing fact, which is not found within the four corners of this Contract.

**29.    SEVERABILITY:**

If any provision of this Contract becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable or void, the portions of such provision, or such provision in its entirety, to the extent necessary, shall be severed from this Contract, and such court will replace such illegal, void or unenforceable provision with a valid and enforceable provision that will achieve, to the extent possible, the same economic, business and other purposes of the illegal, void, or unenforceable provision.  The balance of this Contract shall be enforceable in accordance with its terms.

**30.    SECTION HEADINGS:**

The headings of Paragraphs and Subparagraphs in this Contract are provided for convenience only and will not affect its construction or interpretation.

**31.    MUTUAL PREPARATION:**

This Contract has been prepared by the combined efforts of the parties hereto and shall not be construed against either party as the draftsman of this Contract.

**32.    SPECIAL PROVISIONS:**

32.1    Contractor shall provide pre-spud inspection of Contractor provided drill pipe, drill collars and subs to DS1 Category 3 specifications. Operator to provide same standard of inspection at rig release as well as with all transportation including hard banding. Operator agrees to complete a DS1 III inspection of drill pipe every 100,000 ft. drilled with provided string. Operator will repair or replace tubulars downgraded below premium class.

32.2    Operator will be responsible for re-hard banding.

32.3    Operator to pay all costs associated with pipe inspection, repairs, hard banding including trucking.

32.4    Chemical additives to the mud for preventing oxidation of the drill string and hydrogen sulfide scavenging chemicals to treat the mud or drilling fluids are necessary to remove all traces of H2S and to control oxygen corrosion to levels not exceeding 1.5 pounds per square foot per year to be furnished by the OPERATOR.

32.5    Upon rig release of both the first and final wells, Rig must be steam cleaned before Demobilization to rack site at cost to Operator.

Revised November 2013

32.6   In the event Rig requires additional cleaning beyond normal cleaning duties during operation power wash crew will be at cost to Operator.

32.7   Rig crews work (2) twelve hour shifts, each with five man crews, any overtime (Crew Overage) from the twelve hour shift shall be at cost to Operator, and any shortage of 12 hours worked or shortage of personnel shall be credited back to Operator (Crew Shortage).

32.8   Statutory (US) Holiday: Incremental wage premium will be billed to the Operator at cost.

32.9   In the event rig efficiencies need to be increased such as but not limited to a lay down crew, string up crew, Man lift (as needed , rigging up/down   purposes), or BOP nipple up/down crew will be at cost to the Operator.

32.10   Operator to pay all trucking costs including but not limited to MOB/DEMOB and pipe repairs.

32.11   Contractor to provide forklift, Operator to pay $150.00/Day + Fuel.

32.12   Contractor to provide Boiler and shall invoice the Operator $640.00 per day when pressured up and ready for use.

32.13   If a 6th Man per Tour is requested and is required by the Operator, the 6th man shall be  provided by Contractor at the cost of ($630/12 Hour shift lease hand) / ($730/12 Hour shift, derrick hand)to be billed on the drilling invoice.

32.14   Operator to pay per diam of $35.00 per man per day including Rig Manager.

32.15   Contractor to provide a 2 (two) unit Texas camp (crew quarters) rigged up on location at a cost of $100 per day to Operator. While camp is on location Operator is responsible for power generation, potable water, related sewer costs, and internet connection including all hook ups. In the event the camp does not stay on location the daily cost of rental site, utilities, and trucking to and from site will be billed to the operator at cost.

32.16   If the drill pipe and/or top drive is subject to non-routine operations such as, but not limited to jarring, high dogleg severity, corrosive and/or abrasive environments, with down hole or at surface that may contribute to damage or excessive wear the Operator will compensate the Contractor for inspection charges and repair or replacement charges attributable to these severe services as described.

32.17   CONTRACTOR shall furnish initial tested annular preventer element.  If the element is damaged during the job due to destructive elements introduced to the mud, stripping or excessive testing.  The OPERATOR agrees to furnish a new element. Contractor to provide 6" pipe rams included in day rate. If any rubber elements become damaged by or due to destructive elements introduced into the mud, and or excessive or testing or  stripping operations  Contractor will bill the Operator for repair/ replacement of such items.

32.18   Operator to pay for any modifications or changes made to BOP stack configuration, flowline end or choke manifold

32.19   Extra costs related to rigging up for oil base mud jobs shall be at OPERATORS expense.

32.20   OPERATOR, OPERATOR's representative and OPERATOR's subcontractors shall support CONTRACTOR's safety policies and procedures in general and in particular will comply with all CONTRACTOR's personal protective equipment requirements. CONTRACTOR shall support OPERATOR's safety standards. All safety standards shall meet or exceed OSHA requirments.

32.21   CONTRACTOR agrees to utilize the mud pumps to a maximum of 85% of pump manufacturer's rates for strokes and pressure . When Operator requires Contractor to utilize both pumps simultaneously the rig cannot be placed on downtime for pump failure unless both pumps are down and the rig is unable circulate the hole .

32.22   CONTRACTOR will provide one (1) size of mud pump liners.  Any additional sizes required by OPERATOR will be provided at OPERATOR's expense.

32.23   CONTRACTOR agrees to utilize drill pipe up to 80% of API premium.

32.24   For periods of delay during rig moves, caused by circumstances beyond Contractor's control, including, but not limited to, inclement weather, by lack of availability of roads, location or transportation equipment or permits, Operator shall pay Contractor a delay rate equal to 100% of the Operating  Rate per day.

32.25   Operator to pay for all pump expendables

32.26   Operator agrees to furnish all bop spools and flanges required to connect the Operators well head.

32.27   Both Operator and Contractor understand that the second well to be drilled under this contract (Bowdoin #2) will not begin immediately after completion of the initial well, and that in addition to the provisions contained in this contract, Operator is solely responsible for all costs to stack and secure the rig prior to beginning operations on the second well, including, but not limited to applicable rates, trucking costs, rack site rental, 24/7 security, and theft of or damage to the rig and associated equipment. Operator intends to commence operations on the second well on or before April 15, 2020. If operations have not commenced by April 15, 2020, or the Operator elects not to drill the second well, the provisions of Section 6 will apply immediately, unless otherwise mutually agreed in writing.

32.28   All Taxes to be paid by the contractor including, but not limited to, any state tax, use tax, and property tax (including Ad Valorem Tax) are to be reimbursed by the operator at cost. Federal income tax will remain the responsibility of the Contractor. The Contractor shall invoice the Operator for all taxes as the taxes are incurred.

32.29   At all times, Contractor will provide a drill string and rig capable of pulling 100,000 lbs above string weight. No new hardband drill pipewill be run in surface casing.

*Revised November 2013*

32.30    Contractor will haul off or dispose of contractor's trash and contractor's expendable items in proper trash bins/trailers, including, but not limited to: drill line, motor and chain oils, dope and paint buckets, chains, pump parts, etc. and at no time will the reserve pit be used for such disposal.

32.31    Contractor will provide B.O.P., annular preventer, choke line, choke manifold, and any other well control equipment specified in the attached rig inventory. Such equipment will be maintained in working order and test to state guidelines. For the initial test only, the rig will go on downtime if this equipment does not test as outlined herein. Subsequent testing will be at Operator's expense.

32.32    Contractor agrees to provide all equipment listed in attached inventory and maintain such in acceptable working condition.

32.33    Contractor will have at a minimum tool pushers and drillers current in Certified Well Control.

32.34    Wear bushing will be utilized when drilling below surface casing. Operator will supply.

The rates contained in this Contract are based on the rig inventory attached hereto. Any modification or addition to the rig requested by the OPERATOR will be at the OPERATOR's expense.

Revised November 2013

33.     ACCEPTANCE OF CONTRACT:

*The foregoing Contract, including the provisions relating to indemnity, release of liability and allocation of risk of Subparagraphs 4.8 and 6.3(c), Paragraphs 10, 12, and 14, is acknowledged, agreed to and accepted by Operator this* __30TH__ *day of* __SEPTEMBER__, 20 __19__ .

OPERATOR   SKLAR EXPLORATION COMPANY, LLC

By _____

Title   *VP - LAND + LEGAL*

*The foregoing Contract, including the provisions relating to indemnity, release of liability and allocation of risk of Subparagraphs 4.8 and 6.3(c), Paragraphs 10, 12, and 14, is acknowledged, agreed to and accepted by Contractor this* __2nd__ *day of* __October__ 20 __19__ , *which is the Effective Date of this Contract, subject to rig availability, and subject to all of its terms and provisions, with the understanding that unless said Contract is thus executed by Operator within* __N/A__ *days of the above date, Contractor shall be in no manner bound by its signature thereto.*

CONTRACTOR   STONEHAM DRILLING CORPORATION

By _____

Title  *VP Operations & BD*

*Revised November 2013*

**EXHIBIT "A"**

To Daywork Contract dated _____ 9-25 _____, 20 _19_

Operator _SKLAR EXPLORATION COMPANY, LLC_____ Contractor _STONEHAM DRILLING CORPORATION_____

Well Name and Number ____CORWIN #5 - 1_____

**SPECIFICATIONS AND SPECIAL PROVISIONS**

**1. CASING PROGRAM (See Paragraph 7) PER OPERATOR**

|  | Hole Size | Casing Size | Weight | Grade | Approximate Setting Depth | Wait on Cement Time |
|---|---|---|---|---|---|---|
| Conductor | ____ in. | ____ in. | ____ lbs/ft. | ____ | ____ ft. | ____ hrs |
| Surface | ____ in. | ____ in. | ____ lbs/ft. | ____ | ____ ft. | ____ hrs |
| Protection | ____ in. | ____ in. | ____ lbs/ft. | ____ | ____ ft. | ____ hrs |
|  | ____ in. | ____ in. | ____ lbs/ft. | ____ | ____ ft. | ____ hrs |
| Production | ____ in. | ____ in. | ____ lbs/ft. | ____ | ____ ft. | ____ hrs |
| Liner | ____ in. | ____ in. | ____ lbs/ft. | ____ | ____ ft. | ____ hrs |
|  | ____ in. | ____ in. | ____ lbs/ft. | ____ | ____ ft. | ____ hrs |

**2. MUD CONTROL PROGRAM (See Subparagraph 8.2) PER OPERATOR BUT CONSISTENT WITH GOOD DRILLING PRACTICES FOR THE AREA**

| Depth Interval (ft) From | To | Type Mud | Weight (lbs./gal.) | Viscosity (Secs) | Water Loss (cc) |
|---|---|---|---|---|---|
| ____ | ____ | ____ | ____ | ____ | ____ |
| ____ | ____ | ____ | ____ | ____ | ____ |
| ____ | ____ | ____ | ____ | ____ | ____ |
| ____ | ____ | ____ | ____ | ____ | ____ |
| ____ | ____ | ____ | ____ | ____ | ____ |

Other mud specifications: _____

_____

_____

_____

**3. INSURANCE (See Paragraph 13)**

3.1 Adequate Workers' Compensation Insurance complying with State Laws applicable or Employers' Liability Insurance with limits of $__STATUTORY____ covering all of Contractor's employees working under this Contract.

3.2 Commercial (or Comprehensive) General Liability Insurance, including the contractual obligations under this Contract and proper coverage for all other obligations assumed in this Contract. The limit shall be $___1,000,000_____ combined single limit per occurrence for Bodily Injury and Property Damage.

3.3 Automobile Bodily Injury and Property Damage Liability Insurance with limits of $____1,000,000_____ combined single limit per occurrence.

3.6 Other Insurance: _$5,000,000 EXCCESS LIABILITY UMBRELLA_____

**4. EQUIPMENT, MATERIALS AND SERVICES TO BE FURNISHED BY CONTRACTOR:**

The machinery, equipment, tools, materials, supplies, instruments, services and labor hereinafter listed, including any transportation required for such items, shall be provided at the well location at the expense of Contractor unless otherwise noted by this Contract.

4.1 Rig: ☐ Specified Below ☒ Rig Inventory Attached

Complete rig, designated by Contractor as its Rig No. ___11_____, the major items of equipment being:

Drawworks: Make and Model _____ SEE ATTACHED INVENTORY_____

*(U.S. Daywork Contract - Exhibit "A" - Page 1)*
Copyright © 2013 International Association of Drilling Contractors

*Revised November 2013*

Engines: Make, Model, and H.P. _____ <u>SEE ATTACHED INVENTORY</u> _____

     No. on Rig _____ <u>SEE ATTACHED INVENTORY</u> _____

Pumps: No. 1 Make, Size, and Power _____ <u>SEE ATTACHED INVENTORY</u> _____

     No. 2 Make, Size, and Power _____ <u>SEE ATTACHED INVENTORY</u> _____

Mud Mixing Pump: Make, Size, and Power _____ <u>SEE ATTACHED INVENTORY</u> _____

Boilers: Number, Make, H.P. and W.P. _____ <u>SEE ATTACHED INVENTORY</u> _____

Derrick or Mast: Make, Size, and Capacity _____ <u>SEE ATTACHED INVENTORY</u> _____

Substructure: Size and Capacity _____ <u>SEE ATTACHED INVENTORY</u> _____

Rotary Drive: Type _____ <u>SEE ATTACHED INVENTORY</u> _____

Drill Pipe: Size _____ <u>SEE ATTACHED INVENTORY</u> ____ in. _____ ft.;  Size _____ in. _____ ft.

Drill Collars: Number and Size _____ <u>SEE ATTACHED INVENTORY</u> _____

Blowout Preventers: ____ <u>SEE ATTACHED INVENTORY</u> _____

| Size | Series or Test Pr. | Make & Model | Number |
|------|--------------------|--------------|--------|
| | | | |
| | | | |
| | | | |
| | | | |

B.O.P. Closing Unit: __<u>SEE ATTACHED INVENTORY</u>_____

B.O.P. Accumulator: __<u>SEE ATTACHED INVENTORY</u>_____

   4.2    Derrick timbers.
   4.3    Normal strings of drill pipe and drill collars specified above.
   4.4    Conventional drift indicator.
   4.5    Circulating mud pits.
   4.6    Necessary pipe racks and rigging up material.
   4.7    Normal storage for mud and chemicals.
   4.8    Shale Shaker.
   4.9    _____
   4.10    _____
   4.11    _____
   4.12    _____
   4.13    _____
   4.14    _____
   4.15    _____
   4.16    _____
   4.17    _____
   4.18    _____
   4.19    _____
   4.20    _____

**5. EQUIPMENT, MATERIALS AND SERVICES TO BE FURNISHED BY OPERATOR:**

     The machinery, equipment, tools, materials, supplies, instruments, services and labor hereinafter listed, including any transportation required for such

items, shall be provided at the well location at the expense of Operator unless otherwise noted by this Contract.

   5.1    Furnish and maintain adequate roadway and/or canal to location, right-of-way, including rights-of-way for fuel and water lines, river crossings,
        highway crossings, gates and cattle guards.
   5.2    Stake location, clear and grade location, and provide turnaround, including surfacing when necessary.
   5.3    Test tanks with pipe and fittings.
   5.4    Mud storage tanks with pipe and fittings.
   5.5    Separator with pipe and fittings.
   5.6    Labor and materials to connect and disconnect mud tank, test tank, and mud gas separator.
   5.7    Labor to disconnect and clean test tanks and mud gas separator.
   5.8    Drilling mud, chemicals, lost circulation materials and other additives.
   5.9    Pipe and connections for oil circulating lines.
   5.10    Labor to lay, bury and recover oil circulating lines.
   5.11    Drilling bits, reamers, reamer cutters, stabilizers and special tools.
   5.12    Contract fishing tool services and tool rental.
   5.13    Wire line core bits or heads, core barrels and wire line core catchers if required.
   5.14    Conventional core bits, core catchers and core barrels.
   5.15    Diamond core barrel with head.
   5.16    Cement and cementing service.
   5.17    Electrical wireline logging services.
   5.18    Directional, caliper, or other special services.
   5.19    Gun or jet perforating services.
   5.20    Explosives and shooting devices.
   5.21    Formation testing, hydraulic fracturing, acidizing and other related services.
   5.22    Equipment for drill stem testing.

Revised November 2013

| | |
|---|---|
| 5.23 | Mud logging services. |
| 5.24 | Sidewall coring service. |
| 5.25 | Welding service for welding bottom joints of casing, guide shoe, float shoe, float collar and in connection with installing of well head equipment if required. |
| 5.26 | Casing, tubing, liners, screen, float collars, guide and float shoes and associated equipment. |
| 5.27 | Casing scratchers and centralizers. |
| 5.28 | Well head connections and all equipment to be installed in or on well or on the premises for use in connection with testing, completion and operation of well. |
| 5.29 | Special or added storage for mud and chemicals. |
| 5.30 | Casinghead, API series, to conform to that shown for the blowout preventers specified in Subparagraph 4.1 above. |
| 5.31 | Blowout preventer testing packoff and testing services. |
| 5.32 | Replacement of BOP rubbers, elements and seals, if required, after initial test. |
| 5.33 | Casing Thread Protectors and Casing Lubricants. |
| 5.34 | H₂S training and equipment as necessary or as required by law. |
| 5.35 | Site septic systems. |
| 5.36 | MAN LIFTS AS NEEDED |
| 5.37 | DITCHING AS NEEDED |
| 5.38 | THIRD PARTY BOP NIPPLE UP AND TESTING |
| 5.39 | TOP DRIVE TECHNICIAN – AT COST FOR INSPECTION IMMEDIATELY AFTER ANY STUCK PIPE OR JARRING OPERATIONS HAVE OCCURRED ON THE RIG |
| 5.40 | ALL TESTING, REPAIRS, AND REPLACEMENT OF THE TOP DRIVE "UPPER HYDRAULICALLY ACTUATED WELL CONTROL SAFETY VALVE" (TIW BOP VALVE) |
| 5.41 | ALL TESTING REPAIRS AND REPLACEMENT OF THE TOP DRIVE "LOWER MANUAL WELL CONTROL SAFETY VALVE" (TIW BOP) |
| 5.42 | |
| 5.43 | |
| 5.44 | |
| 5.45 | |
| 5.46 | |
| 5.47 | |
| 5.48 | |
| 5.49 | |
| 5.50 | |

**6. EQUIPMENT, MATERIALS AND SERVICES TO BE FURNISHED BY DESIGNATED PARTY:**

The machinery, equipment, tools, materials, supplies, instruments, services, and labor listed as the following numbered items, including any transportation required for such items unless otherwise specified, shall be provided at the well location and at the expense of the party hereto as designated by an X mark in the appropriate column.

| | Item | To Be Provided By and At The Expense Of | |
|---|---|---|---|
| | | Operator | Contractor |
| 6.1 | Cellar | X | |
| 6.2 | Ditches and sumps | X | |
| 6.3 | Fuel (located at __RIG SITE__ ) | X | |
| 6.4 | Fuel Lines (length __AS NEEDED__ ) | | X |
| 6.5 | Water at source, including required permits | X | |
| 6.6 | Water well, including required permits | X | |
| 6.7 | Water lines, including required permits | X | |
| 6.8 | Water storage tanks PER INVENTORY capacity | | X |
| 6.9 | Potable water | X | |
| 6.10 | Labor to operate water well or water pump (RIG CREWS ONLY) | | X |
| 6.11 | Maintenance of water well, if required | X | |
| 6.12 | Water Pump | X | |
| 6.13 | Fuel for water pump | X | |
| 6.14 | Mats for engines and boilers, or motors and mud pumps | | X |
| 6.15 | Transportation of Contractor's property: | | |
| | Move in | X | |
| | Move out | X | |
| 6.16 | Materials for "boxing in" rig and derrick | N/A | |
| 6.17 | Special strings of drill pipe and drill collars as follows: | | |
| | | X | |
| | | | |
| | | | |
| 6.18 | Kelly joints, subs, elevators, tongs, slips and BOP rams for use with special drill pipe | X | |
| 6.19 | Drill pipe protectors for Kelly joint and each joint of drill pipe running inside of Surface Casing as required, for use with normal strings of drill pipe | X | |
| 6.20 | Drill pipe protectors for Kelly joint and drill pipe running inside of Protection Casing | X | |
| 6.21 | Rate of penetration recording device | X(PASON) | |
| 6.22 | Extra labor for running and cementing casing (Casing crews) | X | |
| 6.23 | Casing tools | X | |
| 6.24 | Power casing tongs | X | |
| 6.25 | Laydown and pickup machine | X | |
| 6.26 | Tubing tools | X | |
| 6.27 | Power tubing tong | X | |

(U.S. Daywork Contract - Exhibit "A" - Page 3)
Copyright © 2013 International Association of Drilling Contractors

Revised November 2013

| | Item | To Be Provided By and At The Expense Of | |
|---|---|---|---|
| | | Operator | Contractor |
| 6.28 | Crew Boats, Number | N/A | |
| 6.29 | Service Barge | N/A | |
| 6.30 | Service Tug Boat | N/A | |
| 6.31 | Rat Hole | N/A | |
| 6.32 | Mouse Hole | X | |
| 6.33 | Reserve Pits | X | |
| 6.34 | Upper Kelly Cock | | X |
| 6.35 | Lower Kelly Valve | | X |
| 6.36 | Drill Pipe Safety Valve | | X |
| 6.37 | Inside Blowout Preventer | | X |
| 6.38 | Drilling hole for or driving for conductor pipe | X | |
| 6.39 | Charges, cost of bonds for public roads | X | |
| 6.40 | Portable Toilet | X | |
| 6.41 | Trash Receptacle | X | |
| 6.42 | Linear Motion Shale Shaker (PER INVENTORY) | | X |
| 6.43 | Shale Shaker Screens | X | |
| 6.44 | Mud Cleaner | X | |
| 6.45 | Mud/Gas Separator(PER INVENTORY) | | X |
| 6.46 | Desander | X | |
| 6.47 | Desilter | X | |
| 6.48 | Degasser | X | |
| 6.49 | Centrifuge | X | |
| 6.50 | Rotating Head | X | |
| 6.51 | Rotating Head Rubbers | X | |
| 6.52 | Hydraulic Adjustable Choke | X | |
| 6.53 | Pit Volume Totalizer | X | |
| 6.54 | Communication, type ___EACH THEIR OWN___ | X | X |
| 6.55 | Forklift, capacity ___SEE SEC. 32.11___ | | X |
| 6.56 | Corrosion Inhibitor for protecting drill string SEE SEC. 32.4 | X | |
| 6.57 | | | |
| 6.58 | | | |
| 6.59 | | | |
| 6.60 | | | |

**7. OTHER PROVISIONS:**

Revised November 2013

## EXHIBIT "B"

(See Subparagraph 8.3)

The following clauses, when required by law, are incorporated in the Contract by reference as if fully set out:

(1)    The Equal Opportunity Clause prescribed in 41 CFR 60-1.4.

(2)    The Affirmative Action Clause prescribed in 41 CFR 60-250.4 regarding veterans and veterans of the Vietnam era.

(3)    The Affirmative Action Clause for handicapped workers prescribed in 41 CFR 60-741.4.

(4)    The Certification of Compliance With Environmental Laws prescribed in 40 CFR 15.20.

*Revised November 2013*



# RIG 11 - TELESCOPIC TRIPLE
## Depth Capacity (TVD) : 16,400'   Summer Rig Loads : 35

**MAST**

| | | | |
|---|---|---|---|
| Mast Type | Telescopic Triple | Drill Line Size | 1-1/4" |
| Mast MFG | Mastco | Number of Lines | 10 |
| Static Hook Load (lb) | 600,000 | 3:1 Capacity (lb) | 433,000 |
| Mast Clear Height | 133' | 2:1 Capacity (lb) | 650,000 |

Drill Line API Specification for EIPS 6 x19 is:
3 : 1 Safety factor drilling; 2 : 1 Safety factor running casing or stuck pipe.

**SUBSTRUCTURE**

| | | | |
|---|---|---|---|
| Substructure Type | One Piece, Step-down | Racking Capacity (4") * | 21,300' |
| Substructure MFG | Mastco | Racking Capacity (4-1/2") * | 16,600' |
| Setback Capacity (lb) | 400,000 | Racking Capacity (5") * | 16,600' |
| Clear Working Height ** | 17' | Rotary Table MFG | SJ Petro |
| Floor To Ground *** | 19' | Rotary Table Capacity (lb) | 500,000 |
| Pony Sub Height | 2'-6" | Rotary Table Size | 20.5" |

* Racking Capacity does NOT take into account the added weights of HWDP or drill collars.
** Includes 6" rig mat, 2'-6" pony, and 1'-6" inside rotary table beam.
*** Includes 6" rig mat, 2'-6" pony, and 6" to top of rotary table.

**DRAWWORKS (MECHANICAL)**

| | | | |
|---|---|---|---|
| Drawworks MFG | TSM | Drawworks Drive | CAT 3412 |
| Drawworks Model | TSM 6000 | Drive Rating (hp) | 660 |
| Single Line Pull (lb) | 62,500 | Auxiliary Brake | Eaton 236WCBD |
| Rated Power (hp) | 1,200 | Transmission | Allison S6610H |

**OVERHEAD EQUIPMENT**

| | | | |
|---|---|---|---|
| Topdrive | Tesco 250-HXI-700 | Make-Up Torque (ft-lb) | 32,000 |
| Continuous Torque (ft-lb) | 24,000 | Break Out Torque (ft-lb) | 32,000 |
| Block Model | McKissick 350T | Block Capacity (ton) | 350 |
| Becket Model | McKissick 350T | Becket Capacity (ton) | 350 |

**HIGH PRESSURE CIRCULATING SYSTEM**

| | |
|---|---|
| System Pressure (psi) | 5,000 |

**MUD PUMPS**

| | | | |
|---|---|---|---|
| Pump MFG & Model (qty) | Gardner Denver PZ-11 (2) | Mud Pump Drive (qty) | CAT 3512 (2) |
| Pump Rated Power (hp) | 1,600 (Each) | Pump Drive Rating (hp) | 1,500 (Each) |
| Pump Stroke Length | 11" | | |

**MUD SYSTEM**

| | | | |
|---|---|---|---|
| Total Volume (bbl) | 1,000 | # of Mud Tanks | 2 |
| Active Volume (bbl) | 627 | # of Compartments | 5 + 1 Trip + 1 Pill |
| Trip Tank Volume (bbl) | 27 | Pill Tank Volume (bbl) | 35 |
| Agitators Power (qty) | 7.5 hp (3) | Mixing Hopper (qty) | Chemical Shearer (1) |
| Shale Shaker (qty) | Derrick FLC 2000 (2) | | Conventional (1) |
| Centrifugal Pump Quantity | 4 | Centrifugal Pump Size | 6" x 5" x 11" (3) |
| Mud Gas Separator Size | 36" (2) | | 6" x 6" x 11" (1) |
| Mud Gas Separator Tank | 104.4 bbl | | |

Version 1.1 - September 2019                    Rig #11                    Page 1 of 2

Revised November 2013

 **STONEHAM**
DRILLING CORPORATION

**Sales and Marketing**
**Stoneham Drilling Corporation**
Tel: 720-354-3658 Email: sales@stonehamdrilling.com

| **BOPs (NACE)** | | | |
|---|---|---|---|
| Annular | T3 7082 Spherical | Pressure Rating & Size | 5,000 psi, 11" |
| Ram #1 | T3 6011I - Single | Pressure Rating & Size | 5,000 psi, 11" |
| Ram #2 | T3 6011I - Single | Pressure Rating & Size | 5,000 psi, 11" |
| Ram #3 | T3 6011I - Single | Pressure Rating & Size | 5,000 psi, 11" |
| **ACCUMULATOR** | | | |
| Accumulator MFG | Control Technology | Operating Pressure (psi) | 3,000 |
| Accumulator Vol. (US gal) | 168 | # of Stations | 6 |
| **CHOKE MANIFOLD (NACE)** | | | |
| Type | Single Gut | Pressure Rating (psi) | 5,000 |
| Size | 3-1/8" | | |
| **GENERATOR SETS** | | | |
| Generator MFG | Marathon | Engine MFG | CAT |
| Generator Model (qty) | 572RSL4027 (2) | Engine Model (qty) | 3456 (2) |
| Prime Rating (hp) | 590 (Each) | Voltage (V) | 208 / 480 |
| **MISCELLANEOUS EQUIPMENT** | | | |
| Fuel Tank Capacity (bbl) | 150 (Total) | Catwalk | Hydraulic |
| # of Fuel Tanks | 1 | Catwalk Clear Height | 6-1/2" |
| Water Tank Capacity (bbl) | 540 (Total) | Catwalk Clear Width | 72" |
| # of Water Tanks | 1 | | |
| **TUBULARS** | | | |
| Drill Pipe (5") | 10,350' | Drill Collars (6-1/2") | 652' |
| Drill Pipe Type | TSS-95 Range III | Drill Collars (8") | 95' |
| HWDP (5") | 189' | | |
| **RENTAL** | | | |
| Boiler MFG | Sask. Boiler MFG. Co. Ltd. | Boiler Rating (hp) | 125 |

*Standard specifications represent the typical rig configuration, but could be subject to slight modifications from time to time due to customer requirements.*

---

Version 1.1 - September 2019       **Rig #11**                    Page 2 of 2

(U.S. Daywork Contract - Exhibit "B" - Page 3)
Copyright © 2013 International Association of Drilling Contractors



**STONEHAM**
DRILLING CORPORATION
*A Western Co.*

January 8th, 2020

Sklar Exploration Company, LLC
5395 Pearl Parkway, Suite 200
Boulder, CO 80301

**Attention: Mr. Steven Hatcher**

Subject:  **Drilling Agreement Amendment for Contract Agreement Dated November 1, 2019 (the "Contract")
between Sklar Exploration Company, LLC ("Operator") and Stoneham Drilling Corporation
("Contractor") for Stoneham Rig 11**

Pursuant to the conversation and mutual agreement by Ian Killough of Stoneham Drilling Corporation and Steven Hatcher
of Sklar Exploration Company, LLC, Contractor and Operator hereby agree to modify the Contract under the following
Terms and Conditions:

> **Special Provisions Section 32:**
>
> - Section 32 will be amended to include the following:
>   - 32.35 After completion of operations on the initial well, Contractor will provide living
>     quarters for one person to serve as a watchman for the rig prior to spudding the second well
>     for Operator. Operator agrees to pay a watchman rate of $600 per day to Contractor, and to
>     continue to provide potable water, power generation, etc. as specified in 32.15. This rate will
>     cease to be billed once mobilization begins to the second well or any other rate applies.

> Except as expressly provided above, all terms and conditions set forth in the original contract remaining
> unchanged and in effect.

**If the above is in order and you are agreeable to the terms outlined please sign and return one copy of this letter
agreement for our files.**

Best Regards,

Jack Pepper
VP, Operations and Business Development
Stoneham Drilling Corporation

Steven Hatcher
Vice President, Land & Legal
Sklar Exploration Company, LLC

---

Stoneham Drilling Corporation - Corporate
707 – 17th Street, Suite 3250
Denver, CO 80202
Tel (720) 354-3650

Stoneham Drilling Corporation – Operations
14067 Jackson Street
Williston, ND 58801
Tel (701) 774-8011

# ATTACHMENT B

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: | ) |
| | ) Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC, | ) |
| | ) Chapter 11 |
| Debtor. | ) |
| | ) |

| | |
|---|---|
| In re: | ) |
| | ) Case No. 20-12380-EEB |
| SKLARCO, LLC, | ) |
| | ) Chapter 11 |
| Debtor. | ) |

## STONEHAM DRILLING CORPORATION'S NOTICE OF PERFECTION OF LIEN AGAINST MINERAL PROPERTY PURSUANT TO 11 U.S.C. § 546(b)(2)

Stoneham Drilling Corporation ("Stoneham") hereby gives Notice of Perfection of Lien Against Mineral Property Pursuant to 11 U.S.C. § 546(b)(2) (the "Notice"), as follows:

1.    Stoneham is an oilfield service company that provides contract drilling services.

2.    Between November 4, 2019 and April 11, 2020, at the special insistence and request of Sklar Exploration Company, LLC ("Sklar"), Stoneham provided certain services to Sklar, Sklarco LLC (together with Sklar, the "Debtors"), and the other owners of the Property described herein.

3.    The Debtors and the other owners of the Property described herein have failed and refused to pay Stoneham for the balance owing for goods and services provided.

4.    On May 15, 2020, Stoneham filed a valid Mineral Lien Affidavit, under Instrument No. 356066, Bk 88-Doc Pg 162-196, with the County Clerk of Phillips County, Montana, such that Stoneham is a secured creditor to the entire extent of said lien (the "Lien"). A true and correct copy of the Lien is attached hereto as **Exhibit 1** and incorporated herein by reference.

1

5. Stoneham claims a lien in the amount of ONE MILLION, FOUR-HUNDRED NINETEEN THOUSAND, ONE HUNDRED AND NINETY-EIGHT AND 94/100 DOLLARS ($1,419,198.94), against the following property (the "Property"):

o Corwin #5-1 Well (API No. 25071233390000), Phillips County, Montana;

o All right, title and interest of the Owners (as defined in the Lien) in the Property pursuant to that certain Participation Agreement dated effective as of July 1, 2019 by and between the Owners described above;

o All right, title and interest of the Owners in the Property pursuant to that Restated Farmout Agreement, Bowdoin Dome Project, Phillips and Valley Counties, Montana, dated effective as of May 21, 2019, by and between Scout Energy Partners II, LP, as farmor, and Twin Bridges Resources, LLC, Charter Energy Partners, LLC and Liberty International, LLC, as farmees, as amended by that certain First Amendment to Restated Farmout Agreement dated effective as of May 21, 2019; and

o All right, title and interest of the Owners in the following leases and/or leaseholds:

| Lease Name | Lease Date | Township | Range | Section | Description | Book | Page | County | State |
|---|---|---|---|---|---|---|---|---|---|
| GT Johnson ET UX | 4/21/1944 | INSOFAR & ONLY INSOFAR AS: | | | | 4 | 382 | Phillips | MT |
| | | 33N | 32E | 35 | E/2NE, NESE | | | | |
| | | 32N | 33E | 5 | NWSW | | | | |
| | | 32N | 33E | 6 | LOTS 1(NENE-45.80), 2(NWNE-45.95), E/2SW, SWSE, E/2SE, S/2NE | | | | |
| | | 32N | 33E | 7 | NWNE | | | | |
| | | 32N | 33E | 8 | SWNE, E/2SE | | | | |
| USA MTGF-084395 | 7/1/1942 | INSOFAR & ONLY INSOFAR AS: | | | | | | Phillips | MT |
| | | 32N | 33E | 5 | SE/4, SWNE, LOTS 2(NWNE-45.19), 3(NENW-45.41), 4(NWNW-45.61) | | | | |
| USA-MTGF-056765 | 1/1/1940 | INSOFAR & ONLY INSOFAR AS: | | | | | | Phillips | MT |

2

|  |  | 32N | 33E | 5 | E/2SW, S/2NW |  |  |  |  |
|---|---|---|---|---|---|---|---|---|---|
|  |  | 32N | 33E | 8 | N/2NE |  |  |  |  |
| RALPH J HYDE ET AL | 4/13/1945 | 32N | 33E | 5 | SWSW | 5 | 546 | Phillips | MT |
|  |  | 32N | 33E | 8 | N/2NW |  |  |  |  |
| O M CORWIN COMPANY | 9/4/1931 | INSOFAR & ONLY INSOFAR AS: |  |  |  | 4 | 44 | Phillips | MT |
|  |  | 32N | 33E | 5 | LOT 1(NENE-44.99), SENE |  |  |  |  |

6.    The Lien is properly perfected pursuant to Title 71 of the Montana Code and all other applicable law.

7.    Stoneham hereby provides notice of its perfected Lien in accordance with 11 U.S.C. § 546(b) to the Debtors, their counsel, the Office of the United States Trustee, and other parties in interest.

8.    Stoneham reserves all rights with respect to the scope of its perfected Lien and its interests in (i) the whole of the leaseholds on the Property as identified in the Lien, (ii) the appurtenances on the Property, (iii) all materials owned by the owners of the leaseholds and used in the digging, drilling, torpedoing, completing, operating, or repairing of the oil or gas wells or oil or gas pipelines on the Property, (iv) all oil or gas wells located on the leaseholds on the Property, (v) all oil or gas produced from the leaseholds on the Property, (vi) all other property or property interests identified in the Lien, and (vii) any other property or property interests subject to the Lien as provided in Title 71 of the Montana Code or other applicable law.

3

9.      Stoneham further provides notice that it objects and does not consent to (i) any effort to prime its perfected Lien against the Property and all other property or property interests identified in the Lien, or (ii) the use of any cash collateral subject to the Lien.

10.     Stoneham reserves the right to request relief from the automatic stay of 11 U.S.C. § 362, or any other appropriate relief, to enforce and defend its perfected Lien against the Property or any other property or property interests of the Debtors.

11.     This Notice shall not be deemed an admission that any filing is necessary to perfect or maintain perfection of the Lien under the Bankruptcy Code, the Montana Code, or any other applicable law.

12.     Stoneham reserves the right to supplement or amend this Notice, including the amounts owed and to itemize any further attorneys' fees, costs, interest, or other amounts recoverable under applicable law.

13.     Stoneham reserves the right to request allowance and payment of administrative expense claims under 11 U.S.C. § 503.

14.     Stoneham files this Notice without limitation or waiver of all rights, claims, and defenses against the Debtors, their bankruptcy estates, and any third parties.

Dated: May 29, 2020          By: _____ /s/ *James B. Bailey* _____
                             BRADLEY ARANT BOULT CUMMINGS LLP
                             James B. Bailey
                             One Federal Place
                             1819 Fifth Avenue North
                             Birmingham, Alabama 35203
                             Telephone: (205) 521-8000
                             Email: jbailey@bradley.com

                             ***Counsel for Stoneham Drilling Corporation***

4

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Lee M. Kutner
1660 Lincoln St.
Ste. 1850
Denver, CO 80264
Email: lmk@kutnerlaw.com

Keri L. Riley
1660 Lincoln St., Ste.1850
Denver, CO 80202
303-832-2400
Email: klr@kutnerlaw.com

Paul Moss
Byron G. Rogers Federal Building
1961 Stout St.
Ste. 12-200
Denver, CO 80294
Email: Paul.Moss@usdoj.gov

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

Sklar Exploration Company LLC
5395 Pearl Parkway, Suite 200
Boulder, CO 80301

Sklarco LLC
5395 Pearl Parkway, Suite 200
Boulder, CO 80301

/s/ James B. Bailey
OF COUNSEL

5

# EXHIBIT 1

**356066**

| THE STATE OF MONTANA | § | 356066 Fee: $255.00  35 Pgs Bk 88-DOC Pg 162-196 |
|---|---|---|
| | § | PHILLIPS COUNTY, MT  Recorded 5/15/2020 At 3:15 PM |
| | § | Lynnel LaBrie, Clk & Rcdr By ____ *signature* |
| COUNTY OF PHILLIPS | § | Return to: PETER SCAFF |
| | | BRADLEY ARANT BOULT CUMMINGS LLP |
| | | 600 TRAVIS STREET, SUITE 4800 |
| | | HOUSTON TX  77002 |

## MINERAL LIEN AFFIDAVIT

BEFORE ME, the undersigned authority, on this day appeared Heather Stickel, Director of Credit and Collections of Stoneham Drilling Corporation, and stated on oath as follows:

1.  My name is Heather Stickel.  I am the Director of Credit and Collections for Stoneham Drilling Corporation ("Claimant").  I am over twenty-one years of age, am of sound mind and competent to make this affidavit.  The matters contained in this affidavit are within my personal knowledge and are true and correct.

2.  The mailing address of Claimant is as follows:

    **Stoneham Drilling Corporation**
    **1700, 215 - 9th Avenue SW**
    **Calgary, Alberta T2P 1K3**

3.  The owners of the mineral Property described herein (the "Owners"), and upon whose right, title and interest this mineral lien is claimed, are believed to be the following:

**Sklar Exploration Company L.L.C.**
**Pearl Parkway, Suite 200**
**Boulder, CO 80301**

**Fant Energy Limited**
**P.O. Box 55205**
**Houston, TX 77255**

**Sklarco L.L.C.**
**Pearl Parkway, Suite 200**
**Boulder, CO 80301**

**Genesis Resources, L.L.C.**
**4450 Old Canton Road, Suite 207**
**Jackson, MS 39211**

**Twin Bridges Resources L.L.C.**
**17th Street, Suite 900**
**Denver, CO 80202**

**JJS Working Interests L.L.C.**
**2001 Kirby Drive, Suite 1110**
**Houston, TX 77019**

**Charter Energy Partners L.L.C.**
**633 17th Street, Suite 2170**
**Denver, CO 80202**

**Jones Energy Company L.L.C.**
**2124 Fairfield Avenue**
**Shreveport, LA 77104**

**Scout Energy Partners II, LP**
**4901 LBJ Freeway, Suite 300**
**Dallas, TX 75244**

**Kudzu Oil Properties, L.L.C.**
**300 Concourse Boulevard, Suite 101**
**Ridgeland, MS 39157**

Case 20-12377-EEB    Doc #1823-1    Filed 04/06/22    Entered 04/06/22 21:36:58    Page 34 of 75
Case 20-12377-EEB    Claim 106-2 Part 4    Filed 09/23/20    Desc Attachment B    Page 7 of 40

88. 163

LCJ Resources, L.L.C.
1250 N.E. Loop 410
San Antonio, TX 78209

HBRada L.L.C.
2010 Alpine Drive
Boulder, CO 80304

Lechwe, L.L.C.
P.O. Box 270415
Houston, TX 77277

Cold Spring Energy L.L.C.
6 Spring Street
Cold Spring Harbor, NY 11724

Black Banks, L.L.C.
1310 S. Pennsylvania Street
Denver, CO 80210

Kirkiez L.L.C.
3073 Red Deer Trail
Lafayette, CO 80026

Rosebud Energy Development, L.L.C.
375 Deer Meadow Lane
Littleton, CO 80124

3 Lloyds Exploration Company, L.L.C.
1847 Broken Bend Drive
Westlake, TX 76262

TST Energy L.L.C.
3238 Barksdale Boulevard
Bossier City, LA 71112

Trinity Exploration L.L.C.
776 Old Wagon Trail Circle
Lafayette, CO 80026

SDMF Holdings, L.L.C.
5222 Stonegate Road
Dallas, TX 75209

Source Oil and Gas, L.L.C.
1230 Oak View Court
Oak Point, TX 75068

4.      Claimant performed labor or furnished material or services used in the digging, drilling, torpedoing, completing, operating, or repairing an oil or gas well or oil or gas pipeline or furnished material or services or performed labor in constructing or putting together any of the machinery used in digging, drilling, torpedoing, operating, completing, or repairing an oil or gas well or oil or gas pipeline, including associated transportation and mileage charges, or some combination of the foregoing under a contract with:

        Sklar Exploration Company L.L.C.
        5395 Pearl Parkway, Suite 200
        Boulder, CO 80301

5.      The labor, services and materials that Claimant provided and invoiced began on or about **November 4, 2019** and continued through **April 11, 2020**.

6.      The labor, services and materials that Claimant provided, and to which Claimant asserts a lien, to the greatest extent allowed by law, involved the land set forth and described below, which is collectively referred to herein as the "Property":

Page 2 of 5

o  Corwin #5-1 Well (API No. 25071233390000), Phillips County, Montana;

o  All right, title and interest of the Owners in the Property pursuant to that certain Participation Agreement dated effective as of July 1, 2019 by and between the Owners described above;

o  All right, title and interest of the Owners in the Property pursuant to that Restated Farmout Agreement, Bowdoin Dome Project, Phillips and Valley Counties, Montana, dated effective as of May 21, 2019, by and between Scout Energy Partners II, LP, as farmor, and Twin Bridges Resources, LLC, Charter Energy Partners, LLC and Liberty International, LLC, as farmees, as amended by that certain First Amendment to Restated Farmout Agreement dated effective as of May 21, 2019; and

o  All right, title and interest of the Owners in the following leases and/or leaseholds:

| Lease Name | Lease Date | Township | Range | Section | Description | Book | Page | County | State |
|---|---|---|---|---|---|---|---|---|---|
| GT Johnson ET UX | 4/21/1944 | INSOFAR & ONLY INSOFAR AS: | | | | 4 | 382 | Phillips | MT |
| | | 33N | 32E | 35 | E/2NE, NESE | | | | |
| | | 32N | 33E | 5 | NWSW | | | | |
| | | 32N | 33E | 6 | LOTS 1(NENE-45.80), 2(NWNE-45.95), E/2SW, SWSE, E/2SE, S/2NE | | | | |
| | | 32N | 33E | 7 | NWNE | | | | |
| | | 32N | 33E | 8 | SWNE, E/2SE | | | | |
| USA MTGF-084395 | 7/1/1942 | INSOFAR & ONLY INSOFAR AS: | | | | | | Phillips | MT |
| | | 32N | 33E | 5 | SE/4, SWNE, LOTS 2(NWNE-45.19), 3(NENW-45.41), 4(NWNW-45.61) | | | | |
| USA-MTGF-056765 | 1/1/1940 | INSOFAR & ONLY INSOFAR AS: | | | | | | Phillips | MT |
| | | 32N | 33E | 5 | E/2SW, S/2NW | | | | |
| | | 32N | 33E | 8 | N/2NE | | | | |
| RALPH J HYDE ET AL | 4/13/1945 | 32N | 33E | 5 | SWSW | 5 | 546 | Phillips | MT |

| | | 32N | 33E | 8 | N/2NW | | | | |
|---|---|---|---|---|---|---|---|---|---|
| O M CORWIN COMPANY | 9/4/1931 | INSOFAR & ONLY INSOFAR AS: | | | | 4 | 44 | Phillips | MT |
| | | 32N | 33E | 5 | LOT 1(NENE-44.99), SENE | | | | |

The Property against which a lien is claimed includes the whole of the leasehold; the appurtenances on the leasehold; all material owned by the Owners of the leasehold and used in the digging, drilling, torpedoing, completing, operating, or repairing of the oil or gas well; all oil and gas wells located on the leasehold; and all oil or gas produced from the leasehold, subject to the provisions of Montana Code Title 71, chapter 3, part 10, et. seq.

7.  The particular items or services provided and/or material, machinery and supplies furnished, the dates of performance and/or furnishing, and the amounts claimed by Claimant for the mineral activities provided are as follows and as further described in the invoices attached here to as **Exhibit A** and incorporated by referenced as if set forth fully herein:

| Invoice No. | Work Description | Date of Invoice | Invoice Amount (including tax) |
|---|---|---|---|
| 1604 | Demobilization, Daywork, Standby, Equipment, Per Diem, Lodging | Jan. 9, 2020 | $709,888.93 |
| 1631 | Rig Watch | Feb. 29, 2020 | $17,400.00 |
| 1640 | Third Party Charges | Mar. 11, 2020 | $1,993.75 |
| 1655 | Rig Watch | Mar. 31, 2020 | $18,575.00 |
| 1659 | Standby, Rig Cleaning, Rig Down, Termination Fee, Demobilization | Apr. 8, 2020 | $648,700.16 |
| 1660 | Rig Watch | Apr. 1, 2020 | $600.00 |
| 1661 | Repair of equipment | Apr. 6, 2020 | $4,020.50 |
| 1671 | Taxes | Mar. 31, 2020 | $12,020.60 |
| 1672 | Rig Watch | April 11, 2020 | $6,000 |
| **TOTAL** | | | **$1,419,198.94** |

8.  As of the date of this affidavit, the account is overdue, and unpaid in the aggregate amount of **$1,419,198.94**, plus contractual interest and attorney's fees, which continue to accrue, and Claimant seeks a lien on the Property in this amount. Further and without waiver, Claimant reserves the right to increase the amount of its asserted lien in the event that any previously received payments are challenged, avoided, or recovered under Title 11 of the United States Code or other applicable law.

9.  Claimant has provided a copy of this lien via certified mail, return receipt requested and regular mail, to the Owners referenced above.

10.     Claimant claims to the full extent of the applicable statutes of the State of Montana, a lien against the Property, all oil, gas, or water wells, oil or gas pipelines, oil or gas pipeline rights-of-way, buildings, and appurtenances located on the Property, all leasehold interests, all material, machinery, and supplies used for mineral activities on the Property and owned and/or operated by the Owners.

**Stoneham Drilling Corporation**

Heather Stickel, Director of Credit and Collections

CANADA              §
                                 §

PROVINCE OF ALBERTA    §

       SUBSCRIBED AND SWORN TO before me on this 12 day of May, 2020.

Notary Public, the Province of Alberta

*Thomas Brookes, a commissioner for oaths and notary public in and for the Province of Alberta*

After recording, return to:
Peter Scaff
Bradley Arant Boult Cummings LLP
600 Travis Street, Suite 4800
Houston, Texas 77002

Page 5 of 5



Case 20-12377-MFW   Doc 1783-1   Filed 04/06/22   Entered 04/06/22 21:56:58   Page 38 of 75
Case 20-12377-EEB   Claim 106-2 Part 4   Filed 09/23/20   Desc Attachment B   Page 11 of 40

73

88.167

# Exhibit A

88.168



# Stoneham Drilling Corporation

## INVOICE

**Date:** January 09, 2020

**Number:** INV0001604

**Bill to:** SKLAR EXPLORATION COMPANY,LLC
5395 PEARL PARKWAY, SUITE 200
BOULDER, CO 80301

| | |
|---|---|
| **Rig:** | 11    Job 48 |
| **Location:** | Corwin #5 1 |
| **AFE Number:** | |
| **Move-In Hours:** | |
| **Rig Spud Date:** | 18:00    11/15/2019 |
| **Rig Release Date:** | 06:00    12/29/2019 |
| **Move-Out/Tear-Out Hours:** | 24.00 |

Progress Billing: Nov 27, 2019 to Jan 7, 2020

| Contract Item | Quantity | Rate | Description | Amount ($) |
|---|---|---|---|---|
| 4.2 | 24.00 Hour(s) | 500.00 | Demobilization | 12,000.00 |
| 4.3 | 768.00 Hour(s) | 666.67 | Daywork | 512,002.56 |
| 32.24 | 198.00 Hour(s) | 666.67 | Waiting on Operator /Trucks | 132,000.66 |
| 32.11 | 42.00 Day(s) | 150.00 | Forklift | 6,300.00 |
| 32.12 | 792.00 Hour(s) | 26.67 | Boiler | 21,122.64 |
| 32.14 | 447.00 Man/Day(s) | 35.00 | Crew Per Diem | 15,645.00 |
| 32.15 | 42.00 Day(s) | 100.00 | Texas Camp | 4,200.00 |
| 32.7 | 1.00 Each | 8,780.38 | Crew Overage | 8,780.38 |
| 32.7 | -1.00 Each | 8,695.00 | Crew Shortage | -8,695.00 |
| 32.8 | 1.00 Day(s) | 6,532.69 | Fed Holiday (Thanksgiving, Christmas & New Year's) | 6,532.69 |

| | |
|---|---|
| **Subtotal** | 709,888.93 |
| **TOTAL (USD)** | 709,888.93 |

**Remittance Address:**
**Stoneham Drilling Corporation**
707 - 17th Street, Suite 3250
Denver, CO 80202
Phone: (720) 354-3650  Fax: (720) 354-3679
AccountsReceivable@stonehamdrilling.com
Payment Terms: Net 30

1/9 emailed to Marten Stoneham, USA
- to ship to Sklar, LA



| Rig # | 11 |
|---|---|
| Job # | 48 |
| Operator | Sklar Exploration Company LLC |
| Operator's Rep | Ken Smith |
| Well Name | CORWIN #5-1 |

| Spud | 11/15/2019 | 18:00 |
|---|---|---|
| Release | 12/29/2019 | 6:00 |
| TD | 7,132 | |
| Rig Manager | WE Victorine | |

| Date | Demobilization | Daywork | Rig Repair | Waiting on Operator | Forklift | Boiler | Crew Per Diem | Texas Camp | Crew Overage | Crew Shortage | Federal Holiday |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MM/DD/YYYY | 4.2 | 4.3 | 4.4 | 32.24 | 32.11 | 32.12 | 32.14 | 32.15 | 32.7 | 32.7 | 32.8 |
| 11/27/2019 | | 24.00 | | | 1.00 | 24.00 | 11.00 | 1.00 | | | |
| 11/28/2019 | | 24.00 | | | 1.00 | 24.00 | 11.00 | 1.00 | | | |
| 11/29/2019 | | 24.00 | | | 1.00 | 24.00 | 11.00 | 1.00 | | | |
| 11/30/2019 | | 24.00 | | | 1.00 | 24.00 | 11.00 | 1.00 | | | |
| 12/1/2019 | | 24.00 | | | 1.00 | 24.00 | 11.00 | 1.00 | | | |
| 12/2/2019 | | 24.00 | | | 1.00 | 24.00 | 11.00 | 1.00 | | | |
| 12/3/2019 | | 24.00 | | | 1.00 | 24.00 | 11.00 | 1.00 | | | |
| 12/4/2019 | | 24.00 | | | 1.00 | 24.00 | 11.00 | 1.00 | | | |
| 12/5/2019 | | 24.00 | | | 1.00 | 24.00 | 11.00 | 1.00 | | | |
| 12/6/2019 | | 24.00 | | | 1.00 | 24.00 | 12.00 | 1.00 | | | |
| 12/7/2019 | | 24.00 | | | 1.00 | 24.00 | 11.00 | 1.00 | | | |
| 12/8/2019 | | 24.00 | | | 1.00 | 24.00 | 11.00 | 1.00 | | | |
| 12/9/2019 | | 24.00 | | | 1.00 | 24.00 | 11.00 | 1.00 | | | |
| 12/10/2019 | | 24.00 | | | 1.00 | 24.00 | 11.00 | 1.00 | | | |
| 12/11/2019 | | 24.00 | | | 1.00 | 24.00 | 11.00 | 1.00 | | | |
| 12/12/2019 | | 24.00 | | | 1.00 | 24.00 | 11.00 | 1.00 | | | |
| 12/13/2019 | | 24.00 | | | 1.00 | 24.00 | 11.00 | 1.00 | | | |
| 12/14/2019 | | 24.00 | | | 1.00 | 24.00 | 11.00 | 1.00 | | | |
| 12/15/2019 | | 24.00 | | | 1.00 | 24.00 | 11.00 | 1.00 | | | |
| 12/16/2019 | | 24.00 | | | 1.00 | 24.00 | 14.00 | 1.00 | | | |
| 12/17/2019 | | 24.00 | | | 1.00 | 24.00 | 11.00 | 1.00 | | | |
| 12/18/2019 | | 24.00 | | | 1.00 | 24.00 | 11.00 | 1.00 | | | |
| 12/19/2019 | | 24.00 | | | 1.00 | 24.00 | 11.00 | 1.00 | | | |
| 12/20/2019 | | 24.00 | | | 1.00 | 24.00 | 11.00 | 1.00 | | | |
| 12/21/2019 | | 24.00 | | | 1.00 | 24.00 | 11.00 | 1.00 | | | |
| 12/22/2019 | | 24.00 | | | 1.00 | 24.00 | 11.00 | 1.00 | | | |
| 12/23/2019 | | 24.00 | | | 1.00 | 24.00 | 11.00 | 1.00 | | | |
| 12/24/2019 | | 24.00 | | | 1.00 | 24.00 | 11.00 | 1.00 | | | |
| 12/25/2019 | | 24.00 | | | 1.00 | 24.00 | 11.00 | 1.00 | | | |
| 12/26/2019 | | 24.00 | | | 1.00 | 24.00 | 14.00 | 1.00 | | | |
| 12/27/2019 | | 24.00 | | | 1.00 | 24.00 | 11.00 | 1.00 | | | |
| 12/28/2019 | | 24.00 | | | 1.00 | 24.00 | 11.00 | 1.00 | | | |
| 12/29/2019 | 24.00 | | | | 1.00 | 24.00 | 11.00 | 1.00 | | | |
| 12/30/2019 | | | | 24.00 | 1.00 | - | 11.00 | 1.00 | | | |
| 12/31/2019 | | | | 24.00 | 1.00 | - | 11.00 | 1.00 | | | |
| 1/1/2020 | | | | 24.00 | 1.00 | - | 11.00 | 1.00 | | | |
| 1/2/2020 | | | | 24.00 | 1.00 | - | 11.00 | 1.00 | | | |
| 1/3/2020 | | | | 24.00 | 1.00 | - | 11.00 | 1.00 | | | |
| 1/4/2020 | | | | 24.00 | 1.00 | - | 9.00 | 1.00 | | | |
| 1/5/2020 | | | | 24.00 | 1.00 | - | 6.00 | 1.00 | | | |
| 1/6/2020 | | | | 24.00 | 1.00 | - | 6.00 | 1.00 | | | |
| 1/7/2020 | | | | 6.00 | 1.00 | - | 6.00 | 1.00 | | | |
| **Total** | 24.00 | 768.00 | - | 198.00 | 42.00 | 792.00 | 447.00 | 42.00 | 1.00 | 1.00 | 1.00 |
| Units | Hour | Hour | Hour | Hour | Day | Hour | Man/Day | Day | Each | Each | Each |
| Rate | 500.00 | 666.67 | 666.67 | 666.67 | 150.00 | 26.67 | 35.00 | 100.00 | 8,780.38 | (8,695.00) | 6,532.69 |
| Total | 12,000.00 | 512,002.56 | - | 132,000.66 | 6,300.00 | 21,122.64 | 15,645.00 | 4,200.00 | 8,780.38 | (8,695.00) | 6,532.69 |

Total 709,888.93

**Rig Repair:** Maximum of 4 hours for any one rig repair job, but not to exceed 24 hours of such compensation in any one calendar month.

| Date | Actual | Allowable | Credit |
|---|---|---|---|
| 12/12/2019 | (0.50) | (0.50) | - |
| 12/12/2019 | (3.50) | (3.50) | - |
| 12/13/2019 | (0.50) | (0.50) | - |
| 12/17/2019 | (0.50) | (0.50) | - |
| 12/18/2019 | (0.50) | (0.50) | - |
| Total repairs for month | (5.50) | (5.50) | - |

| Rig # | 11 |
|---|---|
| Job # | 49 |
| Operator | Sklar Exploration Company LLC |
| Operator's Rep | Ken Smith |
| Well Name | CORWIN #5-1 |

| Spud | | 11/15/2019 | 18:00 |
|---|---|---|---|
| Release | | 12/29/2019 | 6:00 |
| TD | | 7,132 | |
| Rig Manager | | Will Victorine | |

**CREW OVERAGE**

| Date MM/DD/YYYY | Rig Manager Per Diem | Driller Regular | Driller OT | Derrichand Regular | Derrichand OT | Motorhand Regular | Motorhand OT | Floorhand Regular | Floorhand OT | Leasehand Regular | Leasehand OT |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/27/2019 | | 0.50 | 0.50 | 0.50 | 0.50 | | 1.00 | 1.00 | 1.00 | | |
| 11/28/2019 | | | | | | | | | | | |
| 11/29/2019 | | | 1.00 | 0.50 | 0.50 | | 1.00 | 1.00 | 1.00 | | |
| 11/30/2019 | | | 1.00 | | 1.00 | | 1.00 | 0.50 | 1.50 | | |
| 12/1/2019 | | 1.00 | 1.00 | | 1.00 | | 1.00 | 0.50 | 1.50 | | |
| 12/2/2019 | | 1.00 | | 1.00 | | 1.00 | | 2.00 | | | |
| 12/3/2019 | | 1.00 | | 1.00 | | 1.00 | | 2.00 | | | |
| 12/4/2019 | | | 1.00 | 1.00 | | | | 2.00 | | | |
| 12/5/2019 | | | 1.50 | 0.50 | 1.00 | 0.50 | 1.00 | | 1.50 | | |
| 12/6/2019 | | | 1.00 | 0.50 | 1.00 | 0.50 | 1.00 | 0.50 | 3.00 | | |
| 12/7/2019 | | 1.00 | 1.00 | 1.00 | 0.50 | 1.00 | 0.50 | | 1.50 | | |
| 12/8/2019 | | 1.00 | | 1.00 | | 1.00 | 0.50 | 2.00 | 1.50 | | |
| 12/9/2019 | | 1.00 | | 1.00 | | 1.00 | 2.00 | 2.00 | | | |
| 12/10/2019 | | | 1.00 | 1.00 | 1.00 | 1.00 | 2.00 | 2.00 | | | |
| 12/11/2019 | | | 1.00 | | 1.00 | 1.00 | | | | | |
| 12/12/2019 | | | | | | | | | | | |
| 12/13/2019 | | | | | | | | | | | |
| 12/14/2019 | | | | | | | | | | | |
| 12/15/2019 | | 1.50 | | 1.50 | | 1.50 | 0.50 | 3.00 | 1.50 | | |
| 12/16/2019 | | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 2.00 | 2.00 | | |
| 12/17/2019 | | 1.00 | 1.00 | 1.00 | 1.00 | 0.50 | 1.00 | 2.00 | 2.00 | | |
| 12/18/2019 | | | 1.00 | | 1.00 | | 1.00 | 0.50 | 2.00 | | |
| 12/19/2019 | | | | | | | | | | | |
| 12/20/2019 | | | | | | | | | | | |
| 12/21/2019 | | | | | | | | | | | |
| 12/22/2019 | | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 0.50 | 2.00 | 2.50 | | |
| 12/23/2019 | | 1.00 | 1.00 | 1.00 | 0.50 | 1.00 | 0.50 | 2.00 | 1.50 | | |
| 12/24/2019 | | 1.00 | 1.00 | 1.00 | 0.50 | 1.00 | 1.00 | 2.00 | 1.50 | | |
| 12/25/2019 | | 0.50 | | 0.50 | 0.50 | 0.50 | | 0.50 | 2.00 | | |
| 12/26/2019 | | 0.50 | | 0.50 | 1.00 | | 0.50 | 0.50 | | | |
| 12/27/2019 | | | | | | | | 0.50 | | | |
| 12/28/2019 | | | | | | | | | | | |
| 12/29/2019 | | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 2.00 | 2.00 | | |
| 12/30/2019 | | 1.00 | 1.00 | 1.00 | 0.50 | 1.00 | 1.00 | 2.00 | 1.50 | | |
| 12/31/2019 | | 1.00 | 1.00 | 0.50 | 1.00 | 1.00 | 0.50 | 2.00 | 1.50 | | |
| 1/1/2020 | | | | | | | | | 2.00 | | |
| 1/2/2020 | | | 1.00 | 0.50 | 0.50 | | 1.00 | | 2.00 | | |
| 1/3/2020 | | | 1.00 | 0.50 | 1.00 | | 1.00 | | 1.50 | | |
| 1/4/2020 | | | 1.00 | 0.50 | | | 0.50 | | 1.00 | | |
| 1/5/2020 | | 0.50 | 0.50 | 0.50 | | 0.50 | | 1.00 | | | |
| 1/6/2020 | | 0.50 | | 0.50 | | 0.50 | | 1.00 | | | |
| 1/7/2020 | | 0.50 | | 0.50 | | 0.50 | | 1.00 | | | |
| **Total** | | 19.00 | 22.50 | 22.50 | 19.00 | 19.50 | 22.00 | 40.50 | 41.00 | 27.25 | 40.88 |
| Units: | day | hour | hour | hour | hour. | hour | hour | hour | hour | hour | hour |
| Rate: | 1,045.00 | 42.50 | 63.75 | 36.25 | 54.38 | 32.50 | 48.75 | 29.25 | 43.88 | | |
| Total: | | 807.50 | 1,434.38 | 815.63 | 1,033.13 | 633.75 | 1,072.50 | 1,184.63 | 1,798.88 | | |

| | Total |
|---|---|
| | 8,780.39 |

| Rig # | 11 |
|---|---|
| Job # | 48 |
| Operator | Sklar Exploration Company LLC |
| Operator's Rep | Ken Smith |
| Well Name | CORWIN #5-1 |

| Spud | 11/15/2019 | 18:00 |
|---|---|---|
| Release | 12/29/2019 | 6:00 |
| TD | 7,132 | |
| Rig Manager | Will Victorine | |

## CREW SHORTAGE

| Date MM/DD/YYYY | Driller Regular | Driller OT | Derrickhand Regular | Derrickhand OT | Motorhand Regular | Motorhand OT | Floorhand Regular | Floorhand OT | Leasehand Regular | Leasehand OT |
|---|---|---|---|---|---|---|---|---|---|---|
| 1/2/2020 | | | (8.00) | | | | | | | |
| 1/3/2020 | (8.00) | | (8.00) | | (8.00) | | (16.00) | | | |
| 1/4/2020 | (12.00) | | (12.00) | | (12.00) | | (32.00) | | | |
| 1/5/2020 | (12.00) | | (12.00) | | (12.00) | | (24.00) | | | |
| 1/6/2020 | (12.00) | | (12.00) | | (12.00) | | (24.00) | | | |
| **Total** | (44.00) | - | (52.00) | - | (44.00) | - | (120.00) | - | - | - |
| Units: | hour | hour | hour | hour | hour | hour | hour | hour | hour | hour |
| Rate: | 42.50 | 63.75 | 36.25 | 54.38 | 32.50 | 48.75 | 29.25 | 43.88 | 27.25 | 40.88 |
| Total: | (1,870.00) | - | (1,885.00) | - | (1,430.00) | - | (3,510.00) | - | - | - |

Total (8,695.00)



| Rig # | 11 |
|---|---|
| Job # | 48 |
| Operator | Sklar Exploration Company LLC |
| Operator's Rep | Ken Smith |
| Well Name | CORWIN #5-1 |

| Spud | 11/15/2019 | 18:00 |
|---|---|---|
| Release | 12/29/2019 | 6:00 |
| TD | 7,132 | |
| Rig Manager | Will Victorine | |

**Federal Holiday**

*Thanksgiving Day*                                     28-Nov-2019

| Position | Number of Employees | Incremental Rate per person | Total Incremental Holiday Pay |
|---|---|---|---|
| Rig Manager | 1 | 522.50 | 522.50 |
| Night Supervisor | 0 | | - |
| Driller | 2 | 201.88 | 403.75 |
| Derrickhand | 2 | 172.19 | 344.38 |
| Motorhand | 2 | 154.38 | 308.75 |
| Floorhand | 4 | 138.94 | 555.75 |
| Leasehand | 0 | | - |
| | | $ | 2,135.13 |

Case 20-12377-EEB Claim 106-2 Part 4 Filed 09/23/20 Desc Attachment B Page 173

17 of 40



| Rig # | 11 |
|---|---|
| Job # | 48 |
| Operator | Sklar Exploration Company LLC |
| Operator's Rep | Ken Smith |
| Well Name | CORWIN #5-1 |

| Spud | 11/15/2019 | 18:00 |
|---|---|---|
| Release | 12/29/2019 | 6:00 |
| TD | 7,132 | |
| Rig Manager | Will Victorine | |

### Federal Holiday

*Christmas Day*      25-Dec-2019

| Position | Number of Employees | Incremental Rate per person | Total Incremental Holiday Pay |
|---|---|---|---|
| Rig Manager | 1 | 522.50 | 522.50 |
| Night Supervisor | 0 | | - |
| Driller | 2 | 217.81 | 435.63 |
| Derrickhand | 2 | 185.78 | 371.56 |
| Motorhand | 2 | 166.56 | 333.13 |
| Floorhand | 4 | 149.91 | 599.63 |
| Leasehand | 0 | | |

$      2,262.44

Case 20-12377-EEB   Claim 106-2 Part 4   Filed 09/23/20   Desc   Attachment B   Page 174
18 of 40

| Rig # | 11 |
|---|---|
| Job # | 48 |
| Operator | Sklar Exploration Company LLC |
| Operator's Rep | Ken Smith |
| Well Name | CORWIN #5-1 |

| Spud | 11/15/2019 | 18:00 |
|---|---|---|
| Release | 12/29/2019 | 6:00 |
| TD | 7,132 | |
| Rig Manager | Will Victorine | |

**Federal Holiday**

*New Year's Day*                                      1-Jan-2020

| Position | Number of Employees | Incremental Rate per person | Total Incremental Holiday Pay |
|---|---|---|---|
| Rig Manager | 1 | 522.50 | 522.50 |
| Night Supervisor | 0 | | - |
| Driller | 2 | 201.88 | 403.75 |
| Derrickhand | 2 | 172.19 | 344.38 |
| Motorhand | 2 | 154.38 | 308.75 |
| Floorhand | 4 | 138.94 | 555.75 |
| Leasehand | 0 | | - |
| | | $ | 2,135.13 |

88.175



# Stoneham Drilling Corporation

## INVOICE

**Date:** February 29, 2020

**Number:** INV0001631

**Bill to:** SKLAR EXPLORATION COMPANY,LLC
5395 PEARL PARKWAY, SUITE 200
BOULDER, CO 80301

**Rig:** 11    **Job 48**

**Location:** Corwin #5-1
**AFE Number:**

**Move-In Hours:**

**Rig Spud Date:**

**Rig Release Date:**

**Move-Out/Tear-Out Hours:**

| Contract Item | Quantity | Rate | Description | Amount ($) |
|---|---|---|---|---|
| | | | Progress Billing: February 1 - 29, 2020 | |
| | | | - 02/01 - 02/29 = 29 days x 24h = 696 hours | |
| | | | - $600 per day / 24h = $25/h | |
| 32.35 | 696.00 Each | 25.00 | Rig Watch | 17,400.00 |

| | | |
|---|---|---|
| **Subtotal** | | 17,400.00 |
| | | |
| **TOTAL (USD)** | | 17,400.00 |

**Remittance Address:**
**Stoneham Drilling Corporation**
**707 - 17th Street, Suite 3250**
**Denver, CO 80202**
**Phone: (720) 354-3650  Fax: (720) 354-3679**
**AccountsReceivable@stonehamdrilling.com**
**Payment Terms: Net 30**



**STONEHAM**
DRILLING CORPORATION
A Western Co.

January 8th, 2020

Sklar Exploration Company, LLC
5395 Pearl Parkway, Suite 200
Boulder, CO 80301

**Attention: Mr. Steven Hatcher**

**Subject:**    **Drilling Agreement Amendment for Contract Agreement Dated November 1, 2019 (the "Contract")
between Sklar Exploration Company, LLC ("Operator") and Stoneham Drilling Corporation
("Contractor") for Stoneham Rig 11**

Pursuant to the conversation and mutual agreement by Ian Killough of Stoneham Drilling Corporation and Steven Hatcher
of Sklar Exploration Company, LLC, Contractor and Operator hereby agree to modify the Contract under the following
Terms and Conditions:

**Special Provisions Section 32:**

- Section 32 will be amended to include the following:
  - 32.35 After completion of operations on the initial well, Contractor will provide living
    quarters for one person to serve as a watchman for the rig prior to spudding the second well
    for Operator. Operator agrees to pay a watchman rate of $600 per day to Contractor, and to
    continue to provide potable water, power generation, etc. as specified in 32.15. This rate will
    cease to be billed once mobilization begins to the second well or any other rate applies.

Except as expressly provided above, all terms and conditions set forth in the original contract remaining
unchanged and in effect.

**If the above is in order and you are agreeable to the terms outlined please sign and return one copy of this letter
agreement for our files.**

Best Regards,

Jack Pepper
VP, Operations and Business Development
Stoneham Drilling Corporation

Steven Hatcher
Vice President, Land & Legal
Sklar Exploration Company, LLC

Stoneham Drilling Corporation - Corporate
707 – 17th Street, Suite 3250
Denver, CO 80202
Tel (720) 354-3650

Stoneham Drilling Corporation – Operations
14067 Jackson Street
Williston, ND 58801
Tel (701) 774-8011



| Rig # | 11 |
|---|---|
| Job # | 48 |
| Operator | Sklar Exploration Company LLC |
| Operator's Rep | Ken Smith |
| Well Name | CORWIN #5-1 |

| Date | Rig Watcher |
|---|---|
| MM/DD/YYYY | 32.35 |
| 2/1/2020 | 24.00 |
| 2/2/2020 | 24.00 |
| 2/3/2020 | 24.00 |
| 2/4/2020 | 24.00 |
| 2/5/2020 | 24.00 |
| 2/6/2020 | 24.00 |
| 2/7/2020 | 24.00 |
| 2/8/2020 | 24.00 |
| 2/9/2020 | 24.00 |
| 2/10/2020 | 24.00 |
| 2/11/2020 | 24.00 |
| 2/12/2020 | 24.00 |
| 2/13/2020 | 24.00 |
| 2/14/2020 | 24.00 |
| 2/15/2020 | 24.00 |
| 2/16/2020 | 24.00 |
| 2/17/2020 | 24.00 |
| 2/18/2020 | 24.00 |
| 2/19/2020 | 24.00 |
| 2/20/2020 | 24.00 |
| 2/21/2020 | 24.00 |
| 2/22/2020 | 24.00 |
| 2/23/2020 | 24.00 |
| 2/24/2020 | 24.00 |
| 2/25/2020 | 24.00 |
| 2/26/2020 | 24.00 |
| 2/27/2020 | 24.00 |
| 2/28/2020 | 24.00 |
| 2/29/2020 | 24.00 |

| Total | 696.00 | |
|---|---|---|
| Units | Hour | |
| Rate | 25.00 | Total |
| Total | 17,400.00 | 17,400.00 |



# Stoneham Drilling Corporation

## INVOICE

**Date:** March 11, 2020

**Number:** INV0001640

**Bill to:** SKLAR EXPLORATION COMPANY,LLC
5395 PEARL PARKWAY, SUITE 200
BOULDER, CO 80301

**Rig:** 11   Job 48
**Location:** Corwin #5-1
**AFE Number:**
**Move-In Hours:**
**Rig Spud Date:**
**Rig Release Date:**
**Move-Out/Tear-Out Hours:**

| Contract Item | Quantity | Rate | Description | Amount ($) |
|---|---|---|---|---|
| | 14.50 Each | 125.00 | WOLVERINE TRUCKING, INC., #20-256 | 1,812.50 |
| | 0.10 Each | 1,812.50 | - 10% handling fee | 181.25 |
| | | | - hauling of DCs, DP & subs for repairs | |

| | |
|---|---|
| Subtotal | 1,993.75 |
| TOTAL (USD) | 1,993.75 |

**Remittance Address:**
Stoneham Drilling Corporation
707 - 17th Street, Suite 3250
Denver, CO 80202
Phone: (720) 354-3650  Fax: (720) 354-3679
AccountsReceivable@stonehamdrilling.com
Payment Terms: Net 30

Wolverine Trucking, Inc.

1623 15th Ave. W.
Dickinson, ND 58601


kwiktag®    267 463 777

# Invoice

| Date | Invoice # |
|------|-----------|
| 2/26/2020 | 20-256 |

**Bill To**

Stoneham Drilling Corporation
1700, 215-9th Avenue SW
Calgary, AB, Canada T2P 1K3

RECEIVED
FEB 2 8 2020
IN ACCOUNTING

| P.O. No. | Terms | Project |
|----------|-------|---------|
| SDC2609 | Net 30 | |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 14.5 | (1/30/20) - BOL #29786 - Semi - traveled from Wolverine Yard to Glasgow, MT to stay the night in a motel, departed for Rig 11 Corwin 5-1 near Saco, MT and loaded (2) heaters delivered to Stoneham Yard and (6) 6-1/2" drill collars, (9) joints 5" drill pipe, (1) bit sub and (1) crossover sub delivered to CP Machine in Williston. (Travel was difficult with the fog and freezing rain-see attached BOL for more detail.) | 125.00 | 1,812.50 |

Thank you for your business.

| | **Total** | $1,812.50 |

# WOLVERINE TRUCKING, INC.    29786

**BILL OF LADING ORIGINAL · NOT NEGOTIABLE**

Date _____ 1 36 20

Dispatch Ticket # _____

**US DOT # 2120166**                    Wolverine Trucking, Inc.                    **MC # 738960**
(Name of Carrier)

RECEIVED, subject to the classifications and tariffs in effect on the date of this issue of this Bill of Lading.

Billed To **Stoneham** _____ Job Ordered By _____
(Company)

Picked Up **Rig 11** **Corwin # 5-1**
(location)

Pick Up Address **Saco** _____ **MT** _____
(City)    (State)    (County)

Deliver To **CP Machine**
(Location/Lease #)

Delivery Address **Williston** _____ **ND** **Williams**
(City)    (State)    (County)

Driver Name **Eric Hampaa**

Received by Stoneham

Date: 2-6-20

Sign: _____

Print Name: _____ WASS

Truck # **9**    Trailer # **W-20**    Miles _____

| SPECIFIC JOB DESCRIPTION | HOURS | RATE | TOTAL |
|---|---|---|---|
| Deported Watkinson Yd 5 am 1:30 due Toy Trail Freezing wind windshell Stopped in Alexander Truck Stop Till Toy lifted. Departed at 9 am Brdwich in Glasgow MT - yet colel Been Did not change for Time At Truck Stop. Got up 4 Line Exposible 3i - Freezing my trk with Hunter, pipe. Silica etc. Had to take Alt Route to move In Icey Brdge Teal Rusho looking in his PU Truck To think out Route didn't want me stuck on a Icy stretch sid or in Track Talk about few extra hr. To drive. He was Thinking Safety, which is good! | 14 | 125 hr | 2375 |
|  | 14.5 |  | 1812.50 |
| Loaded |  |  |  |
| 1 Storm Heater ) Delivered to Stoneham Yd |  |  |  |
| 1 Elec Heater ) |  |  |  |
| 6 - 6/1 Drill Collars    1- Bit Sub |  |  |  |
| 9 - Joints 5" Drill Pipe    1- Crossover Sub |  | **SUB TOTAL** |  |
|  Delivered to CP machine |  |  |  |
|  |  | **TOTAL** | 2375 |

AFE # _____

PO # _____

JOB # _____

1812.50

RECEIVED BY _____
SIGNATURE

PRINTED NAME **JOHN G WITTIG**
PLEASE PRINT

CONTACT PHONE NUMBER _____

**NOTICE:** IF LEGAL ACTION IS REQUIRED TO EFFECT PAYMENT ON THIS INVOICE, CUSTOMER AGREES TO PAY ALL COURT COSTS AND REASONABLE ATTORNEY FEES.
**TERMS:** NET 30 DAYS. A SERVICE CHARGE OF 1.5% PER MONTH WILL BE CHARGED ON ALL PAST DUE ACCOUNTS WHICH IS AN ANNUAL PERCENTAGE RATE OF 18%.

1911 125th Ave NW • Watford City, ND 58854 • Main 906-201-2288
Email: wolverinetruckinginc@gmail.com

Quality Quick Print, Dickinson, ND

88·181

<table>
<tr><td>

**Bill To:**
Stoneham Drilling Corporation
#1700, 215 - 9th Avenue SW
Calgary, AB T2P 1K3
Ph.:  855-273-8445
Fax:  403-984-5917

</td><td>



</td><td>

**Stoneham Drilling Corporation**

# PURCHASE
# ORDER

RCToo38214

</td></tr>
</table>

| Supplier: | **WOLVERINE TRUCKING INC** | | |
|---|---|---|---|
| | 1623 15TH AVE W | | |
| | DICKINSON, ND 58601 | | |

| | | **SDC0002609** |
|---|---|---|
| Ph. 906-201-2288    Fax: – | | QUOTE ABOVE NUMBER ON ALL INVOICES |
| Contact: | | P.O. Date:   06-Feb-2020 |

| AFE #: | | Requested By:   Ryan Hass | **SHIP TO:** |
|---|---|---|---|
| Rebill:  yes | | Buyer:   Ryan Hass | #1700, 215 - 9th Avenue SW |
| To:   Sklar Exploration | | Shipping Method: DELIVERY | Calgary, AB T2P 1K3 |
| | | | Ph. 855-273-8445 |
| | | | Fax: 403-984-5917 |

Comments:

| L/N | Quantity | Description / Reference Number | Rig # | Rate | Amount |
|---|---|---|---|---|---|
| 1 | 14.50 | THIRDPARTY<br>Haul drill pipe to Williston for Repairs | 11 | 125.00 EACH | 1,812.50 |

ol S Vettetow
2/6/2020

kwiktag ·   198 187 832

_(Authorized Signature)_

February 06, 2020   9:15:51 am          Page 1 of 1

| Subtotal | | $1,812.50 |
|---|---|---|
| Tax | | $0.00 |
| Order Total | USD | $1,812.50 |



# Stoneham Drilling Corporation

## INVOICE

**Date:**      March 31, 2020

**Number:**   INV0001655

**Bill to:**   SKLAR EXPLORATION COMPANY,LLC
5395 PEARL PARKWAY, SUITE 200
BOULDER, CO 80301

**Rig:**                  11          Job 48
**Location:**          Corwin #5-1
**AFE Number:**
**Move-In Hours:**
**Rig Spud Date:**
**Rig Release Date:**
**Move-Out/Tear-Out Hours:**

| Contract Item | Quantity | Rate | Description | Amount ($) |
|---|---|---|---|---|
| | | | Progress Billing: March 1 - 31, 2020 | |
| | | | - 03/01 - 03/31 = 31 days x 24h = 744 hours | |
| | | | - 03/08 DST - spring ahead 1 hour | |
| | | | - $600 per day / 24h = $25/h | |
| 32.35 | 743.00  Each | 25.00 | Rig Watch | 18,575.00 |

| | |
|---|---|
| Subtotal | 18,575.00 |
| | |
| TOTAL (USD) | 18,575.00 |

**Remittance Address:**
**Stoneham Drilling Corporation**
**707 - 17th Street, Suite 3250**
**Denver, CO 80202**
**Phone: (720) 354-3650  Fax: (720) 354-3679**
**AccountsReceivable@stonehamdrilling.com**
**Payment Terms: Net 30**



**STONEHAM**
**DRILLING CORPORATION**
*A Western Co.*

January 8th, 2020

Sklar Exploration Company, LLC
5395 Pearl Parkway, Suite 200
Boulder, CO 80301

**Attention: Mr. Steven Hatcher**

| Subject: | Drilling Agreement Amendment for Contract Agreement Dated November 1, 2019 (the "Contract") between Sklar Exploration Company, LLC ("Operator") and Stoneham Drilling Corporation ("Contractor") for Stoneham Rig 11 |
|---|---|

Pursuant to the conversation and mutual agreement by Ian Killough of Stoneham Drilling Corporation and Steven Hatcher of Sklar Exploration Company, LLC, Contractor and Operator hereby agree to modify the Contract under the following Terms and Conditions:

      **Special Provisions Section 32:**

- Section 32 will be amended to include the following:
  - 32.35 After completion of operations on the initial well, Contractor will provide living quarters for one person to serve as a watchman for the rig prior to spudding the second well for Operator. Operator agrees to pay a watchman rate of $600 per day to Contractor, and to continue to provide potable water, power generation, etc. as specified in 32.15. This rate will cease to be billed once mobilization begins to the second well or any other rate applies.

Except as expressly provided above, all terms and conditions set forth in the original contract remaining unchanged and in effect.

**If the above is in order and you are agreeable to the terms outlined please sign and return one copy of this letter agreement for our files.**

Best Regards,

Jack Pepper
VP, Operations and Business Development
Stoneham Drilling Corporation

Steven Hatcher
Vice President, Land & Legal
Sklar Exploration Company, LLC

Stoneham Drilling Corporation - Corporate
707 – 17th Street, Suite 3250
Denver, CO 80202
Tel (720) 354-3650

Stoneham Drilling Corporation – Operations
14067 Jackson Street
Williston, ND 58801
Tel (701) 774-6011



| Rig # | 11 |
|---|---|
| Job # | 48 |
| Operator | Sklar Exploration Company LLC |
| Operator's Rep | Ken Smith |
| Well Name | CORWIN #5-1 |

| Date | Rig Watcher |
|---|---|
| MM/DD/YYYY | 32.35 |
| 3/1/2020 | 24.00 |
| 3/2/2020 | 24.00 |
| 3/3/2020 | 24.00 |
| 3/4/2020 | 24.00 |
| 3/5/2020 | 24.00 |
| 3/6/2020 | 24.00 |
| 3/7/2020 | 24.00 |
| 3/8/2020 | 23.00 |
| 3/9/2020 | 24.00 |
| 3/10/2020 | 24.00 |
| 3/11/2020 | 24.00 |
| 3/12/2020 | 24.00 |
| 3/13/2020 | 24.00 |
| 3/14/2020 | 24.00 |
| 3/15/2020 | 24.00 |
| 3/16/2020 | 24.00 |
| 3/17/2020 | 24.00 |
| 3/18/2020 | 24.00 |
| 3/19/2020 | 24.00 |
| 3/20/2020 | 24.00 |
| 3/21/2020 | 24.00 |
| 3/22/2020 | 24.00 |
| 3/23/2020 | 24.00 |
| 3/24/2020 | 24.00 |
| 3/25/2020 | 24.00 |
| 3/26/2020 | 24.00 |
| 3/27/2020 | 24.00 |
| 3/28/2020 | 24.00 |
| 3/29/2020 | 24.00 |
| 3/30/2020 | 24.00 |
| 3/31/2020 | 24.00 |

| | | |
|---|---|---|
| Total | 743.00 | |
| Units | Hour | |
| Rate | 25.00 | Total |
| Total | 18,575.00 | 18,575.00 |



## Stoneham Drilling Corporation

### INVOICE

| | |
|---|---|
| Date: | April 08, 2020 |
| Number: | INV0001659 |
| Bill to: | SKLAR EXPLORATION COMPANY,LLC<br>5395 PEARL PARKWAY, SUITE 200<br>BOULDER, CO 80301 |

| | | |
|---|---|---|
| Rig: | 11 | Job 48 |
| Location: | Corwin #5-1 | |
| AFE Number: | | |
| Move-In Hours: | | |
| Rig Spud Date: | | |
| Rig Release Date: | | |
| Move-Out/Tear-Out Hours: | | |

| Contract Item | Quantity | Rate | Description | Amount ($) |
|---|---|---|---|---|
| | | | Progress Billing: April 8, 2020 | |
| 4.2 | 48.00 Hour(s) | 566.67 | Standby Steam-Cleaning | 27,200.16 |
| 4.5 | 168.00 Manhour(s) | 500.00 | Rig Down & Move | 84,000.00 |
| 6.4 | 1.00 Each | 250,000.00 | Termination Fee | 250,000.00 |
| 4.2 | 1.00 Each | 250,000.00 | Mobilization Trucking | 250,000.00 |
| 6.4 | 0.15 Each | 250,000.00 | 15% Markup | 37,500.00 |

| | |
|---|---|
| Subtotal | 648,700.16 |
| | |
| TOTAL (USD) | 648,700.16 |

Remittance Address:
**Stoneham Drilling Corporation**
**707 - 17th Street, Suite 3250**
**Denver, CO 80202**
**Phone: (720) 354-3650   Fax: (720) 354-3679**
**AccountsReceivable@stonehamdrilling.com**
**Payment Terms: Net 30**

88:186



**STONEHAM DRILLING CORPORATION**
*\\ A Western Co.*

# Stoneham Drilling Corporation

## INVOICE

Date:    April 01, 2020

Number:    **INV0001660**

Bill to:    SKLAR EXPLORATION COMPANY,LLC
5395 PEARL PARKWAY, SUITE 200
BOULDER, CO 80301

Rig:    11    Job 48
Location:    Corwin #5-1
AFE Number:
Move-In Hours:
Rig Spud Date:
Rig Release Date:

Move-Out/Tear-Out
Hours:

| Contract Item | Quantity | Rate | Description | Amount ($) |
|---|---|---|---|---|
| | | | Progress Billing: April 1, 2020 | |
| 32.35 | 24.00  Each | 25.00 | Rig Watch | 600.00 |

| | |
|---|---|
| Subtotal | 600.00 |
| | |
| TOTAL (USD) | 600.00 |

**Remittance Address:**
Stoneham Drilling Corporation
707 - 17th Street, Suite 3250
Denver, CO 80202
Phone: (720) 354-3650  Fax: (720) 354-3679
AccountsReceivable@stonehamdrilling.com
Payment Terms: Net 30





| Rig # | 11 |
|---|---|
| Job # | 48 |
| Operator | Sklar Exploration Company LLC |
| Operator's Rep | Ken Smith |
| Well Name | CORWIN #5-1 |

| Date | Rig Watcher | |
|---|---|---|
| MM/DD/YYYY | 32.35 | |
| 4/1/2020 | 24.00 | |
| Total | 24.00 | |
| Units | Hour | |
| Rate | 25.00 | **Total** |
| Total | 600.00 | **600.00** |



# Stoneham Drilling Corporation

## INVOICE

| | |
|---|---|
| Date: | April 06, 2020 |
| Number: | INV0001661 |
| Bill to: | SKLAR EXPLORATION COMPANY,LLC<br>5395 PEARL PARKWAY, SUITE 200<br>BOULDER, CO 80301 |

| | |
|---|---|
| Rig: | 11    Job 48 |
| Location: | Corwin #5 - 1 |
| AFE Number: | |
| Move-In Hours: | |
| Rig Spud Date: | |
| Rig Release Date: | |
| Move-Out/Tear-Out Hours: | |

| Contract Item | Quantity | Rate | Description | Amount ($) |
|---|---|---|---|---|
| | 1.00  Each | 3,655.00 | CP MACHINE INC., #10055 | 3,655.00 |
| | 0.10  Each | 3,655.00 | - 10% handling fee | 365.50 |
| | | | - repair of DP, DCs and subs | |

| | |
|---|---|
| Subtotal | 4,020.50 |
| | |
| TOTAL (USD) | 4,020.50 |

**Remittance Address:**
**Stoneham Drilling Corporation**
**707 - 17th Street, Suite 3250**
**Denver, CO 80202**
**Phone: (720) 354-3650  Fax: (720) 354-3679**
**AccountsReceivable@stonehamdrilling.com**
**Payment Terms: Net 30**

88.189



# Invoice

| Date | Invoice # |
|------|-----------|
| 3/30/2020 | 10055 |

**Bill To**

Stoneham Drilling Corporation
1400 E Jackson St.
Williston, ND 58801

**P.O.#**

**Terms**

Net 30

| Contact Name: | Phone # | Location | RIG. | Well | JOB # | W O # |
|---|---|---|---|---|---|---|
| Ryan Hass | (701) 570-0828 | Williston ND | Stoneham 13 | | NA | 8000 |

| Quantity | Description | Rate | Amount |
|---|---|---|---|
| 3 | 4 1/2 XH Box Rework on Range 3 DC's | 150.00 | 450.00 |
| 1 | 4 1/2 XH Pin Rework on Range 3 DC's | 180.00 | 180.00 |
| 2 | 4 1/2 IF Box Rework on Range 3 DC's | 160.00 | 320.00 |
| 8 | Straighten 8" Range 3 DP | 200.00 | 1,600.00 |
| 2 | 4 1/2 XH Box Rework on Subs | 150.00 | 300.00 |
| 1 | Trucking from CP Machine to Stoneham Yard | 175.00 | 175.00 |
| | Thank You! | | |
| | ND State Sales Tax | 5.0% | 0.00 |

Received by Stoneham
Date: 4-1-20
Sign:
Williston Office
Print Name: Ryan Hass

| Customer Signature: | Date: 3/30/20 | **Total** | $3,055.00 |

Billing Address: 3534 20th Ave W Williston  ND 58801  Physical Address: 8231 142nd Drive NW Williston  ND 58801
For any AP/AR questions contact Karen Moore  Email: karenm@cpmachineinc.com  Phone: (701) 580-3165  Thank you

88:190

**James Kozan**

---

| | |
|---|---|
| **From:** | Eric Tymensen |
| **Sent:** | April 06, 2020 3:12 PM |
| **To:** | James Kozan |
| **Subject:** | RE: S11-48/3P INV0001661 $4020.50 |
| **Attachments:** | INV0001661-signed.pdf |

Posted.

Eric

**From:** James Kozan
**Sent:** April 06, 2020 2:11 PM
**To:** Eric Tymensen
**Subject:** FW: S11-48/3P INV0001661 $4020.50

Another invoice to post

040620 JK JP 3P

**From:** Chris Rodway
**Sent:** April 06, 2020 2:09 PM
**To:** James Kozan
**Subject:** RE: S11-48/3P INV0001661 $4020.50

Heather said to submit as you typically would to Sklar.

**From:** James Kozan
**Sent:** April 6, 2020 2:02 PM
**To:** Chris Rodway <crodway@horizondrilling.ca>
**Subject:** FW: S11-48/3P INV0001661 $4020.50

So good to post?
Just not submit, obviously

**From:** Jack Pepper
**Sent:** April 06, 2020 1:29 PM
**To:** James Kozan
**Cc:** Chris Rodway
**Subject:** RE: S11-48/3P

Approved

**From:** James Kozan
**Sent:** Monday, April 06, 2020 1:25 PM
**To:** Jack Pepper <JPepper@stonehamdrilling.com>
**Cc:** Chris Rodway <crodway@horizondrilling.ca>
**Subject:** S11-48/3P

1

Afternoon

Here is a 3p for S11/Sklar for repair of DP, DCs and subs

James Kozan
Senior Billings Coordinator



**STONEHAM**
**DRILLING CORPORATION**
*A Western Co.*

Direct: 403.984.5689
Email: jkozan@horizondrilling.ca
*Our Key to Success is: Planning – Teaching – Learning – Caring*

Horizon Drilling | 1700, 215 - 9th Avenue SW | Calgary, Alberta | T2P 1K3 | 403.984.5916 | www.horizondrilling.ca

The information transmitted, including attachments, is intended only for the person(s) or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of or taking of any action in reliance upon this information by person(s) or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and destroy any copies of this information.

88:19 2



# Stoneham Drilling Corporation

## INVOICE

| | | | |
|---|---|---|---|
| Date: | March 31, 2020 | Rig: | 11 Job 48 |
| | | Location: | Corwin #5-1 |
| Number: | INV0001671 | AFE Number: | |
| | | Move-In Hours: | |
| Bill to: | SKLAR EXPLORATION COMPANY,LLC | Rig Spud Date: | |
| | 5395 PEARL PARKWAY, SUITE 200 | Rig Release Date: | |
| | BOULDER, CO 80301 | | |
| | | Move-Out/Tear-Out Hours: | |

| Contract Item | Quantity | | Rate | Description | Amount ($) |
|---|---|---|---|---|---|
| Attached Invoice | 1.00 | Each | 1,454.26 | 2019 Property Tax | 1,454.26 |
| 6.4 | 1.00 | Each | 218.14 | - 15% Markup | 218.14 |
| Attached Invoice | 1.00 | Each | 8,998.44 | 2020 Property Tax | 8,998.44 |
| 6.4 | 1.00 | Each | 1,349.76 | - 15% markup | 1,349.76 |
| | | | | - various taxes | |

| | | |
|---|---|---|
| **Subtotal** | | 12,020.60 |
| | | |
| **TOTAL (USD)** | | 12,020.60 |

**Remittance Address:**
**Stoneham Drilling Corporation**
707 - 17th Street, Suite 3250
Denver, CO 80202
Phone: (720) 354-3650  Fax: (720) 354-3679
AccountsReceivable@stonehamdrilling.com
Payment Terms: Net 30

88:193

'PHONE
(406) 654-1242

# COUNTY OF PHILLIPS – STATE OF MONTANA

TAXPAYER NO
0000868270

P.O. BOX 49     MALTA, MONTANA 59538

STONEHAM DRILLING CORP     **Levy Dist: 12R   PERSONAL PROPERTY for Tax Year 2019**

Statement#: 216

**MARKET 227,496**     **MILL LEVY: 426.220**     **TAXABLE VALUE: 3,412**

| LAND DESCRIPTION | FUND DESCRIPTION | 1ST HALF | 2ND HALF | TOTAL DUE |
|---|---|---|---|---|
| ( ) 11- | ROAD | 123.34 | 0.00 | 123.34 |
| PERSONAL PROPERTY | AGING | 7.71 | 0.00 | 7.71 |
| | AIRPORT | 14.57 | 0.00 | 14.57 |
| | BRIDGE | 36.85 | 0.00 | 36.85 |
| | CNTY EDUC | 196.73 | 0.00 | 196.73 |
| | DIST COURT | 13.48 | 0.00 | 13.48 |
| | STATE EDUC | 344.61 | 0.00 | 344.61 |
| | FAIR | 5.80 | 0.00 | 5.80 |
| | GENERAL | 164.56 | 0.00 | 164.56 |
| | GRANDVIEW | 7.03 | 0.00 | 7.03 |
| | MUSEUM | 15.39 | 0.00 | 15.39 |
| | VOTED LEVY | 30.47 | 0.00 | 30.47 |
| | PUB SAFETY | 104.00 | 0.00 | 104.00 |
| | DIST SCH | 378.32 | 0.00 | 378.32 |
| | WEED | 11.60 | 0.00 | 11.60 |

DELINQUENT TAXES

YEAR          AMOUNT

Penalty and interest on these delinquent
taxes figured through

P&I figured to: 01/06/2020

NO SECOND HALF NOTICE WILL BE SENT. YOUR CHECK IS YOUR
RECEIPT. STUB (BELOW) MUST ACCOMPANY PAYMENT. FOR A
COPY OF THE TAX RECEIPT INCLUDE A SELF ADDRESSED
STAMPED ENVELOPE.          **PAY →**

**$1,454.26**     **$0.00**     **$1,454.26**
DUE  01/06/2020     DUE  01/06/2020     OR PAY TOTAL

## SEE REVERSE SIDE FOR IMPORTANT INFORMATION

$344.61     $678.48     $378.32     $0.00     $52.85

*RETURN THIS STUB WITH 1ST PAYMENT TO COUNTY TREASURER*

PHILLIPS COUNTY TREASURER
JEAN MAVENCAMP
PO BOX 49
314 S 2ND AVE WEST
MALTA, MT  59538

Name:  STONEHAM DRILLING CORP
MAIL TO LB WALKER & ASSOC
13111 NORTHWEST FWY STE 125
HOUSTON, TX  77040-6321

**DUE:  01/06/2020**          **$1,454.26**

*0000868270*

*RETURN THIS STUB WITH 2ND PAYMENT TO COUNTY TREASURER*

PHILLIPS COUNTY TREASURER
JEAN MAVENCAMP
PO BOX 49
314 S 2ND AVE WEST
MALTA, MT  59538

Name:  STONEHAM DRILLING CORP
MAIL TO LB WALKER & ASSOC
13111 NORTHWEST FWY STE 125
HOUSTON, TX  77040-6321

**DUE:  01/06/2020**          **$0.00**

*0000868270*

## 2020 Classification and Appraisal Notice
### Phillips County

Please review the information below carefully. The current assessed value column shows the depreciated value of personal property (i.e., business equipment) minus any exempt amount as of January 1, 2020. For itemized reports of your personal property valuation, go to *property.mt.gov*.

Owner(s):

STONEHAM DRILLING CORP

Assessment Code: 0000868270

Levy District: 1C03-12R

| Property Classification | Quantity | Previous Assessed Value | Current Assessed Value | Previous Taxable Value | Current Taxable Value | Prior Year Millage Rate | Estimated 2020 General Taxes** |
|---|---|---|---|---|---|---|---|
| **PERSONAL PROPERTY** | | | | | | | 11-0000868270-001• |
| 6520 - Oil Drill Rigs | 1.00 | 227,498 | 1,326,733 | 3,412 | 19,901 | | |
| Totals: | | 227,498 | 1,326,733 | 3,412 | 19,901 | 452.160 | $8,998.44** |

\* The property ID is the unique identifier for this property.

\*\*The tax amount(s) shown is only an estimate of your general property taxes for 2020 based upon the 2019 millage rate where your property is located. Your property may be subject to your local government's special assessments and fees in addition to your general taxes. Review your previous tax bill or contact your county treasurer's office for more information about special assessments and fees.

Montana Department of Revenue
Malta Field Office
PO Box 1734
Malta, MT  59538-1734
(406) 654-2123



0000868270

STONEHAM DRILLING CORP
MAIL TO LB WALKER & ASSOC
13111 NORTHWEST FWY STE 125
HOUSTON, TX 77040-6321

Assessment Code: 0000868270

Date: 05/08/2020

## THIS IS YOUR PROPERTY CLASSIFICATION AND APPRAISAL NOTICE

This notice is to inform you how your personal property is classified and valued for property assessment and tax billing.

**THIS IS NOT A TAX BILL.** Your county treasurer will bill your 2020 general property taxes based upon the values shown on this notice.

### Informal Classification and Appraisal Review and Appeal Process

If you disagree with the property classification or values on this notice, you have 30 days from the date shown above to request the department to conduct an informal review. You need to submit a Request for Informal Classification and Appraisal Review (Form AB-26).

You may appeal the classification or values shown on this notice directly to your local county tax appeal board (CTAB) rather than submitting a Form AB-26. If you choose to appeal directly to the CTAB, you must submit your appeal to your county clerk and recorder within 30 days from the date shown above.

For forms and more information on the informal review and appeal processes, call our office at (406) 654-2123 or go to *MTRevenue.gov*.

### Paying Taxes Under Protest

If you want to be eligible for a tax refund from a classification or appraisal appeal, you need to pay the property taxes under protest before they become delinquent (15-1-402, MCA).

Your county treasurer can give you more information about protesting your taxes.



## Stoneham Drilling Corporation

### INVOICE

**A Western Co.**

| | | | | |
|---|---|---|---|---|
| **Date:** | April 11, 2020 | | **Rig:** | 11     Job 48 |
| | | | **Location:** | Corwin #5-1 |
| **Number:** | INV0001672 | | **AFE Number:** | |
| | | | **Move-In Hours:** | |
| **Bill to:** | SKLAR EXPLORATION COMPANY,LLC | | **Rig Spud Date:** | |
| | 5395 PEARL PARKWAY, SUITE 200 | | **Rig Release Date:** | |
| | BOULDER, CO 80301 | | | |
| | | | **Move-Out/Tear-Out Hours:** | |

| Contract Item | Quantity | Rate | Description | Amount ($) |
|---|---|---|---|---|
| | | | Progress Billing: April 2 - 11, 2020 | |
| 32.35 | 10.00  Each | 600.00 | Rig Watch | 6,000.00 |

| | |
|---|---|
| **Subtotal** | 6,000.00 |
| | |
| | |
| **TOTAL (USD)** | 6,000.00 |

**Remittance Address:**
**Stoneham Drilling Corporation**
**707 - 17th Street, Suite 3250**
**Denver, CO 80202**
**Phone: (720) 354-3650  Fax: (720) 354-3679**
**AccountsReceivable@stonehamdrilling.com**
**Payment Terms: Net 30**

# Stoneham Drilling Corporation

**ATTACHMENT C**

## INVOICE

**A Western Co.**

**Date:** September 09, 2020

**Number:** INV0001688

**Bill to:** SKLAR EXPLORATION COMPANY,LLC
5395 PEARL PARKWAY, SUITE 200
BOULDER, CO 80301

| | |
|---|---|
| **Rig:** | 11    Job 48 |
| **Location:** | Corwin #5-1 |
| **State:** | MT-3P |
| **AFE Number:** | |
| **Move-In Hours:** | |
| **Rig Spud Date:** | |
| **Rig Release Date:** | |
| **Move-Out/Tear-Out Hours:** | |

| Contract Item | Quantity | Rate | Description | Amount ($) |
|---|---|---|---|---|
| | 1.00  Each | 984.73 | RDO EQUIPMENT CO., #PICPAK | 984.73 |
| | 0.06  Each | 984.73 | - 6% ND tax | 59.08 |
| | 0.10  Each | 984.73 | - 10% handling fee | 98.47 |
| | | | - replacement of Forklift windows | |
| | | | - damaged beyond repair | |
| | 1.00  Each | 500.00 | CASCADE GLASS & SIGNS, #10754 | 500.00 |
| | 0.10  Each | 500.00 | - 10% handling fee | 50.00 |
| | | | - replacement of Crew Truck windshield | |
| | | | - damaged beyond repair | |

| Subtotal | 1,692.28 |
|---|---|
| | |
| **TOTAL (USD)** | 1,692.28 |

**Remittance Address:**
**Stoneham Drilling Corporation**
**707 - 17th Street, Suite 3250**
**Denver, CO 80202**
**Phone: (720) 354-3650  Fax: (720) 354-3679**
**AccountsReceivable@stonehamdrilling.com**
**Payment Terms: Net 30**



**RDO Equipment Co.**
14057 49th St NW
Williston, ND 58801
701-577-0736
Fax: 701-577-0740

Parts Manager: WI.Parts@rdoequipment.com
General Manager: WI.GenMgr@rdoequipment.com
www.rdoequipment.com

Ship to: N/A

| | |
|---|---|
| **Branch**<br>WILLISTON, ND | AYYNYY |

| **Date**<br>08/31/20 | **Time**<br>09:06:51 (R) | **Page**<br>01 |
|---|---|---|

| **Account No.**<br>6685004 | **Phone No.**<br>8552736445 | **Invoice No.**<br>PICPAK |
|---|---|---|

Invoice to:
STONEHAM DRILLING CORPORATION
1700, 215 - 9TH AVENUE SW
CALGARY AB   T2P 1K3
Canada

**Ship Via**

**Purchase Order**
SOC0002681

**Tax Exemption Number**     **Federal ID Number**

**Salesperson**
RPH

)ICE

ORDER#: 107750.01        *Stoneham*

| Part# | Description | Bin | ORD | ISS | SHP | B/O | UTTTT | Price | Amount | |
|---|---|---|---|---|---|---|---|---|---|---|
| T244711 | WINDOW | L600 | 1 | 1 | 1 | | * | 372.10 | 372.10 | 2 |
| T230096 | WINDSHIELD | U2600 | 1 | 1 | 1 | | * | 574.83 | 574.83 | 1 |
| T167594 | HINGE | V15F5 | 2 | 2 | 2 | | * | 18.90 | 37.80 | 1 |

Ryan 7)15700825 called and ordered 8/31/20 RP
DW544K2621913

|  |  |
|---|---|
| SUB TOTAL==> | 984.73 |
| ND WILLIAMS COUNTY 6% | 59.08 |
| TOTAL DUE RDO | 1043.81 |

+-----------------------------------------------+
| Payments are due on your RDO account 30 days from the invoice date |
+-----------------------------------------------+

*********************************************************
PLEASE REMIT TO:   RDO EQUIPMENT CO.
                   P.O. BOX 7160
                   FARGO, ND 58106-7160
*********************************************************

TOTAL WEIGHT=>   172.12

Received by Stoneham
Date: 9-2-20
Sign:
Print Name:

**This is not an invoice.  Do not pay from this packing slip.**

Stocked parts can be returned within 30 days with copy of invoice.  Special order parts $20.00 and up may be returned within 30 days with copy of invoice.
20% restock charge will apply to all special order parts.  All sales are final on special order non-returnable parts.  All parts must be new, uninstalled and in
original packaging  No returns on electrical components  No refunds on freight charges.



**Bill To:**
Stoneham Drilling Corporation
#1700, 215 - 9th Avenue SW
Calgary, AB T2P 1K3
Ph.:  855-273-6445
Fax:  403-984-5917

Stoneham Drilling Corporation
# PURCHASE
# ORDER

Supplier: **RDO EQUIPMENT COMPANY**
RDO TRUST #80-5800
PO BOX 7160
FARGO, ND 58106
Ph. 701-577-0736    Fax: 701-577-0740
Contact:

# SDC0002681
QUOTE ABOVE NUMBER ON ALL INVOICES

P.O. Date:    **31-Aug-2020**

| AFE #: | Requested By:  Ryan Hass | SHIP TO: |
|---|---|---|
| Rebill: | Buyer:  Robin Murten | #1700, 215 - 9th Avenue SW |
| To: | Shipping Method: PICKUP | Calgary, AB T2P 1K3 |
| | | Ph. 855-273-6445 |
| | | Fax: 403-984-5917 |

Comments:

| L/N | Quantity | Description / Reference Number | Rig # | Rate | Amount |
|---|---|---|---|---|---|
| 1 | 1.00 | THIRDPARTY<br>Third Party Charges - Front window, side window, hinge | 11 | 984.73 EACH | 984.73 |
| 2 | 1.00 | THIRDPARTY<br>sales tax | 11 | 59.08 EACH | 59.08 |

| | | |
|---|---|---|
| Subtotal | | $1,043.81 |
| Tax | | $0.00 |
| Order Total | USD | $1,043.81 |

Authorized Signature

September 02, 2020   3:27:55 pm          Page 1 of 1





**CASCADE GLASS & Signs**

1404 - 4th Ave NE
Watford City, ND 58854

**701.609.0713**

No. 10754

TODAY'S Date: _____
Location/Site: _____
Technician: _____

Customer Name

Phone Number

Email Address

Part# _____
PO# _____

**SAFE DRIVE TIME**

Price: _____ Tax: _____ Total: _____
DEPOSIT  $ _____  AU _____
BALANCE DUE _____
CHECK# _____    ACCOUNT _____ (CHECK FOR YES)
AUTH# _____

**LEGEND:**
S - Scratched
P - Peeled Paint
D - Dented
C - Chipped
M - Missing
R - Rust
O - Other

**PRE INSPECTION**

Received by Stoneham
Date: _____
Sign _____
Print Name: _____

**Sika®**

**PLACE ADHESIVE DECAL HERE**

Year
Model
License Plate#

Make
Truck#
MILEAGE

**POST INSPECTION NOTES:** _____

Vehicle VIN Number

Customer Signature

COMPLETION DATE



**Bill To:**
**Stoneham Drilling Corporation**
**#1700, 215 - 9th Avenue SW**
**Calgary, AB T2P 1K3**
**Ph.:  855-273-6445**
**Fax:  403-984-5917**

Stoneham Drilling Corporation

# PURCHASE

# ORDER

| Supplier: | **CASCADE GLASS & SIGN SHOP** | **SDC0002687** |
|---|---|---|
| | 1404 - 4 AVE NE | |
| | WATFORD CITY, ND 58854 | QUOTE ABOVE NUMBER ON ALL INVOICES |

Ph. 701-609-0713    Fax: --
Contact:

**P.O. Date:    02-Sep-2020**

| AFE #:  CORWIN #5-1 | Requested By:    Ryan Hass | **SHIP TO:** |
|---|---|---|
| Rebill:  YES | Buyer:    Ryan Hass | #1700, 215 - 9th Avenue SW |
| To:    Sklar Exploration | Shipping Method: PICKUP | Calgary, AB T2P 1K3 |
| | | Ph. 855-273-6445 |
| | | Fax: 403-984-5917 |

Comments:

| L/N | Quantity | Description / Reference Number | Rig # | Rate | Amount |
|---|---|---|---|---|---|
| 1 | 1.00 | THIRDPARTY | 11 | 500.00 EACH | 500.00 |
| | | Third Party Charges - LABOR FOR WINDSHIELD REPLACEMENT | | | |

Authorized Signature

September 02, 2020  3:19:16 pm                Page 1 of 1

| Subtotal | | $500.00 |
|---|---|---|
| Tax | | $0.00 |
| Order Total | USD | $500.00 |

C
O
U
R
T

D
O
C
K
E
T

| 20-12377 | 106-2 | 9/29/2020 | D. GERTH |
|---|---|---|---|
| CASE NO. | COURT CLAIM NO. | DATE RETRIEVED | RECEIVED BY |