UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC ) | |
| EIN: 72-1417930 ) | Chapter 11 |
| ) | |
|   Debtor. ) | |
| ) | |
| ) | Case No. 20-12380-EEB |
| SKLARCO, LLC ) | |
| EIN: 72-1425432 ) | Chapter 11 |
|   Debtor. ) | |

**MOTION FOR SUMMARY JUDGMENT ON MAREN SILBERSTEIN REVOCABLE TRUST'S APPLICATION FOR ALLOWANCE OF ADMINISTRATIVE CLAIM AND CURE CLAIM**

    The Reorganized Debtors, Sklar Exploration Company, LLC ("SEC") and Sklarco, LLC ("Sklarco" and together "Debtors"), by and through their attorneys, Kutner Brinen Dickey Riley, P.C., move this Court for entry of an Order granting summary judgment in favor of the Debtors and against the Maren Silberstein Revocable Trust with respect to *Maren Silberstein Revocable Trust's Application for Allowance of Administrative Claim and Cure Claim* ("Maren Trust Motion") (Docket No. 1479) pursuant to Fed. R. Civ. P. 56, Fed. R. Bankr. P. 7056, and L.B.R. 7056-1.

    As set forth in greater detail in the Memorandum Brief in Support of Motion for Summary Judgment, there are no genuine issues of material facts in dispute, and the Debtors are entitled to summary judgment as a matter of law in accordance with Rule 7056 of the Federal Rules of Bankruptcy Procedure.

DATED:  November 16, 2022        Respectfully Submitted,

        By: *s/ Keri L. Riley*
           Keri L. Riley, #47605
           **KUTNER BRINEN DICKEY RILEY, P.C.**
           1660 Lincoln Street, Suite 1850
           Denver, CO 80264
           Telephone:  (303) 832-2400
           Email: klr@kutnerlaw.com

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC ) | |
| EIN: 72-1417930 ) | Chapter 11 |
| ) | |
|   Debtor. ) | |
| ) | |
| ) | Case No. 20-12380-EEB |
| SKLARCO, LLC ) | |
| EIN: 72-1425432 ) | Chapter 11 |
|   Debtor. ) | |

**MEMORANDUM BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

The Reorganized Debtors, Sklar Exploration Company, LLC ("SEC") and Sklarco, LLC ("Sklarco" and together "Debtors"), by and through their attorneys, Kutner Brinen Dickey Riley, P.C., state their Memorandum Brief in Support of its Motion for Summary Judgment as follows:

**I.      Introduction**

Absent an agreement by the parties, a bankruptcy filing does not alter or change the terms of a contractual relationship between two parties. While this is a basic premise, the Maren Silberstein Revocable Trust ("Maren Trust") seeks to do just that by asserting that it should be required to pay the Agency Services Fee contractually assessed against it, and that all amounts assessed for the Agency Services Fee should form the basis for a cure claim and/or administrative expense claim. As set forth more fully herein, the Maren Trust has waived its ability to assert a cure claim, as it did not assert such claim prior to the Effective Date of the Plan, and has further failed to assert a default under the applicable contracts between the parties. The Maren Trust has further failed to establish an ownership interest in any funds received by Sklarco, and therefore cannot establish an administrative expense claim. Accordingly, for the reasons set forth herein, the Debtors are entitled to summary judgment with respect the Maren Trust's Motion.

**II.     Burden of Proof**

Summary judgment is appropriate when the moving party demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Bankr. P. 7056. The moving party bears the burden of establishing that the evidence, even

1

when viewed in the light most favorable to the non-moving party, demonstrates the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Koch v. Koch Indus.*, 203 F.3d 1202, 1212 (10th Cir. 2000); *Thalos v. Dillon Companies, Inc.*, 86 F. Supp. 2d 1079, 1082 (D. Colo. 2000). The non-moving party has the burden of establishing that there are material issues of fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party claiming entitlement to an administrative expense priority has the burden of proof with respect to its claim. *In re Mid-Region Petroleum*, 1 F.3d 1130, 1132 (1993).

### III.   Statement of Undisputed Material Facts

The following facts are undisputed:

1. The Debtors filed their voluntary petitions pursuant to Chapter 11 of the Bankruptcy Code on April 1, 2020 ("Petition Date"). The Reorganized Debtors' *Second Amended and Restated Joint Plan of Reorganization* ("Plan") (Docket No. 1251) was confirmed on August 24, 2021 and became effective on September 7, 2021.

2. SEC was engaged in business as an independent exploration and production company in the oil and gas industry with its principal business offices in Boulder, Colorado.

3. Sklarco is engaged in business as the holder of oil and gas interests located primarily in Alabama, Louisiana, Texas, and Florida.

4. On the Petition Date, the Debtors were a party to an Agency Services Agreement, by and between the Debtors, Howard Sklar, the Howard Sklar Irrevocable Trust, the Alan Sklar Irrevocable Trust, the Jacob Sklar Irrevocable Trust, and the Succession of Miriam Mandel Sklar.

5. Sklarco was also a party to an Agency Services Agreement ("Maren Trust ASA") with the Judy Trust for the Benefit of Maren Silberstein n/k/a The Maren Silberstein Revocable Trust ("Maren Trust") dated April 1, 2008. A copy of the Agency Services Agreement with the Maren Trust is attached hereto as Exhibit B.

6. Pursuant to the Maren Trust ASA, the Maren Trust contracted with Sklarco to "maintain and manage" oil and gas interests attributed to the Maren Trust. Ex. B at 1.

7. The Maren Trust ASA provides that "Sklarco shall promptly pay and discharge expenses incurred in relation to the [oil and gas interests]" and that the Maren Trust was required to reimburse Sklarco for such expenses within fifteen (15) days after the receipt of invoices. Ex.

B at 4. The Maren Trust ASA further allows Sklarco to "deduct such charges from any funds held by Sklarco for [the Maren Trust's] account." Ex. B at 4.

8. As consideration for services provided by Sklarco under the Maren Trust ASA, including specifically the management of oil and gas assets and providing resources in connection therewith, including engineering and landman services, the Maren Trust ASA provides that the Maren Trust "will pay each month to Sklarco the sum of $15,000" (the "Agency Services Fee"). Ex. B at 4-5.

9. On the Petition Date, none of the oil and gas interests attributed to the Maren Trust were in wells operated by SEC. Rather, all of the oil and gas interests attributed to the Maren Trust were in wells operated by third parties. Declaration of Bradley Walker, attached hereto as Exhibit A.

10. On the Petition Date, the Maren Trust had an outstanding balanced owed to Sklarco in the amount of $12,880.80. A copy of the Settlement Statements from April 2020 through September 2021 are attached hereto as Exhibit C.[1]

11. At all times relevant hereto, including prior to confirmation of the Plan, Sklarco continued to manage oil and gas assets attributed to the Maren Trust, including paying all expenses in connection therewith, and continued to provide oil and gas engineers and landman necessary to the management of such oil and gas assets. Ex. A.

12. In accordance with the Maren Trust ASA, Sklarco continued to assess the Agency Services Fee against the interest. Ex. C at 1, 12, 24, 36, 47, 59, 70, 82, 95, 107, 117, 125, 137, 149, 160, 172, 184.

13. As a result of decreased oil prices, the revenue generated by the assets attributed to the Maren Trust was insufficient to cover the expenses associated therewith and by the end of 2020, the Maren Trust had an outstanding balance owed to Sklarco in the amount of $131,906.69, and had not made a payment to Sklarco since May 4, 2020. *See* Ex. C at 12, 106.

---

[1] The Settlement Statements attached as Exhibit C are the summary sections, detailing all income and expenses for the various interests and the assessment of the management fee. The full Settlement Statements include detail for each interest, including whether the income was from oil or gas sales and the expenses, and are between 200 and 600 pages long depending on the month. A full copy of the Settlement Statements were previously produced to the Maren Trust and is available upon request.

14. Losses continued to accrue into 2021 without payment from the Maren Trust, and as of September 1, 2021, just shortly prior to the Effective Date of the Plan, the Maren Trust owed an outstanding balance to Sklarco of $145,920.69. Ex. C at 196.

15. During Sklarco's bankruptcy case, the assets attributed to the Maren Trust generated revenue in the amount of $282,079.09, and incurred expenses in the amount of $427,999.74, including Agency Services Fees in the amount of $255,000. A summary of the invoices attached hereto as Exhibit C is as follows:

|  | Revenue | Expenses | Payments | Balance Due to Sklarco |
|---|---|---|---|---|
| April 2020 | $15,516.98 | $26,039.13 | $0.00 | $23,402.95 |
| May 2020 | $12,785.28 | $25,978.15 | $12,880.80 | $23,715.02 |
| June 2020 | $7,532.77 | $26,723.61 | $0.00 | $42,905.86 |
| July 2020 | $6,482.07 | $25,571.61 | $0.00 | $61,995.40 |
| August 2020 | $10,914.75 | $23,662.83 | $0.00 | $74,743.48 |
| September 2020 | $9,530.37 | $23,370.12 | $0.00 | $88,583.23 |
| October 2020 | $15,263.21 | $24,380.04 | $0.00 | $97,700.06 |
| November 2020 | $14,804.64 | $33,841.30 | $0.00 | $116,736.72 |
| December 2020 | $11,586.17 | $26,756.14 | $0.00 | $131,906.69 |
| January 2021 | $15,387.31 | $21,485.61 | $0.00 | $138,004.99 |
| February 2021 | $10,312.31 | $18,798.41 | $0.00 | $146,491.09 |
| March 2021 | $24,556.15 | $24,208.76 | $0.00 | $146,143.70 |
| April 2021 | $23,751.33 | $24,613.23 | $0.00 | $147,005.60 |
| May 2021 | $32,387.87 | $24,164.34 | $0.00 | $138,782.07 |
| June 2021 | $16,952.20 | $29,862.85 | $0.00 | $151,692.72 |
| July 2021 | $20,072.24 | $23,236.88 | $0.00 | $154,857.36 |
| August 2021 | $34,243.43 | $25,306.73 | $0.00 | $145,920.66 |
| **Total** | **$282,079.08** | **$427,999.74** | **$12,880.80** |  |

16. Due to an oversight, the Maren Trust ASA was inadvertently left off of Sklarco's Schedule G. However, Maren Silberstein, the beneficiary of the Maren Trust had actual knowledge of Sklarco's bankruptcy filing since at least January 2021. The email communication between Ms. Silberstein and Marshall Jones, the Chief Operating Officer of the Debtors in January 2021, is attached hereto as Exhibit D.

17. Despite having actual knowledge of the bankruptcy case, the Maren Trust did not seek to compel Sklarco to assume or reject its contract, nor did it seek to have assets attributed to it abandoned out of the estate. Instead, the Maren Trust continued to take advantage of the

management services provided by Sklarco and waited until approximately July 2022 to retain counsel. *See* Ex. A to Reply filed by Maren Trust, Docket No. 1606.

18. On August 16, 2021, counsel for the Maren Trust entered her appearance in the bankruptcy case. After entering its appearance, the Maren Trust did not object to confirmation of the Plan, nor seek to have the Maren Trust ASA rejected, nor take any action to otherwise remove assets attributed to the Maren Trust from Sklarco's estate.

19. Pre-petition, the Maren Trust received statements on a monthly basis and did not object to, or otherwise seek to avoid the Agency Services Fee. Ex. A.

20. Post-petition, the Maren Trust continued to receive statements, but did not object to, or otherwise seek to avoid the Agency Services Fee. Ex. A.

21. Pre-petition, the Maren Trust did no object to, or otherwise seek to avoid the expenses assessed against the assets attributed to the Maren Trust by third party operators. Ex. A.

22. Post-petition, the Maren Trust did no object to, or otherwise seek to avoid the expenses assessed against the assets attributed to the Maren Trust by third party operators. Ex. A.

23. Post-confirmation, the Maren Trust filed its *Application for Allowance of Administrative Claim and Cure Claim* ("Maren Trust Motion"), asserting a cure and/or administrative expense claim in the amount of the Agency Services Fees assessed against the Maren Trust during the bankruptcy case, and additional amounts for "additional expenses."

### IV. Elements of Claim Asserted

Pursuant to 11 U.S.C. § 503(b)(1)(A), a creditor may receive an allowed administrative expense claim for "the actual necessary costs and expenses of preserving the estate[.]" A party seeking to assert an administrative expense claim bears of burden of proving: 1) that the expense arose out a transaction between the creditor and the debtor-in-possession; and 2) that it provided an actual benefit to the debtor-in-possession in the operation of the business. *In re Mid-Region Petroleum*, 1 F.3d 1130 (10th Cir. 1993) (citing *In re Amarex, Inc.*, 853 F.2d 1526, 1530 (10th Cir. 1988)).

In evaluating the first element, courts look to when the transaction at issue actually occurred. *Bachman v. Commercial Fin. Servs. (In re Commercial Fin. Servs.)*, 246 F.3d 1291, 1295 (10th Cir. 2001). "[T]he liability must arise post-petition; it is not enough that the right to payment arose after the debtor in possession assumed control." *Id.* Courts must also evaluate whether the estate received an actual benefit from the transaction. "Potential benefit to the estate

5

does not satisfy this requirement, nor does mere possession." *In re Native. Am. Sys.*, 368 B.R. 75, 79 (Bankr. D. Colo. 2006) (quoting *Mid-Region Petroleum*, 1 F.3d at 1133).

Pursuant to 11 U.S.C. § 365(b), "[i]f there has been a default in an executory contract. . . the trustee may not assume such contract. . . unless, at the time of assumption of such contract . . . the trustee – (A) cures, or provides adequate assurance that the trustee will promptly cure, such default[.]" "By its terms, section 365(b) applies only when there has been a default other than a default relating to bankruptcy or financial condition. If there has been no default, the trustee need not comply with the cure, compensation and adequate assurance requirements of section 365(b)." 3 Collier on Bankruptcy P 365.06 (16th 2022).

## V. Statement of Calculation of Damages

The Debtors are not asserting any claim for damages.

## VI. Citations of Law in Support of Summary Judgment

### A. *The Maren Trust Cannot Establish a Basis for a Cure Claim*

The Maren Trust asserts that Sklarco has an obligation to provide a cure payment to the Maren Trust. In raising this argument, the Maren Trust fails to identify how Sklarco has breached the Maren Trust ASA or any basis to argue that the Maren Trust ASA is unenforceable by Sklarco, instead generally asserting that no Agency Services Fee should have been assessed because the Maren Trust was not notified of the bankruptcy filing, and that there were "improper management strategies used by and between the Debtors over the years." This argument fails because any alleged cure was waived under the terms of the Plan, and further fails because the Maren Trust has failed to establish a breach of the Maren Trust ASA.

The Plan, upon confirmation, constitutes a new contract between the Debtors and their respective creditors. "A contract which is complete and free from ambiguity represents the objective intent of the parties and will be enforced according to its plain language." *Bass v. Parsons (In re Parsons)*, 272 B.R. 735, 753 (D. Colo. 2001)(citing *Board of County Comm'rs v. E-470 Pub. Highway Auth.*, 881 P.2d 412, 420 (Colo. App. 1994)). " Unless there is an ambiguity in its terms, a court should avoid strained interpretations, give effect to the terms according to their ordinary meaning, and enforce the contract as written." *Id.* (citing *State Farm Mut. Auto. Ins. Cas. Co. v. Graham*, 860 P.2d 556, 568 (Colo. Ct. App. 1993)).

Paragraph 9.1 of the Plan provides, "On the Effective Date, all Executory Contracts of Sklarco shall be deemed assumed in accordance with the provisions and requirements of

6

Bankruptcy Code §§ 365 and 1123." Paragraph 9.3 of the Plan further provides "on the Effective Date, the applicable Debtor or Reorganized Debtor, as the case may be, shall cure any and all undisputed defaults under any Executory Contract that is assumed pursuant to the Plan in accordance with section 365 of the Bankruptcy Code." Thus, the Maren Trust was required to assert a default under the Maren Trust ASA and a cure claim prior to the Effective Date of the Plan, barring which the claim was waived.

The Maren Trust did not take any action prior to the Effective Date of the Plan to assert a default under the Maren Trust ASA or assert a cure claim. Nor did the Maren Trust seek to have the Maren Trust ASA rejected at the time of or prior to the Effective Date of the Plan. Because the Maren Trust took no action to establish a cure claim, any asserted cure claim has been waived.

The Maren Trust instead asserts that the *Order Confirming Second Amended and Restated Plan of Reorganization Dated December 18, 2020, As Amended* (Docket No. 1433) ("Confirmation Order") preserves the Maren Trust's ability to later assert a cure claim related to the Maren Trust ASA. This argument fails under the plain language of the Plan and the Confirmation Order. The Confirmation Order provides that "Revenue Parties' rights shall not be modified, affected or impaired in any manner by any providing of the Plan or this Confirmation Order . . . except that the Bankruptcy Court shall make any determination as to any administrative claim, rejection claim, or cure amount in the event of a dispute."

The Plan defines a "Revenue Party" as "working interest holders, overriding royalty interest holders, and royalty interest holders holding an interest in the wells operated by SEC on the Effective Date of the Plan." Under the plain language of the Plan, the Maren Trust is not a "Revenue Party." At no time relevant hereto did the Maren Trust directly hold any interests in in oil and gas wells, and therefore did not hold any interests in wells operated by SEC. Instead, the Maren Trust has a contractual relationship with Sklarco, wherein assets are held by Sklarco and managed by Sklarco, but revenue and expenses are attributed to the Maren Trust in accordance with the Maren Trust ASA. The Maren Trust is therefore not a "working interest holder, overriding royalty interest holder, or royalty interest holder" and therefore cannot be a "Revenue Party" under the Plan. Furthermore, all of the interests attributed to the Maren Trust were in wells operated by third party operators, not SEC, thus further establishing that the Maren Trust is not a "Revenue Party" under the Plan, and any reservation of rights in the Confirmation Order is inapplicable to the Maren Trust. Even to the extent the Maren Trust is a "Revenue Party" under the Plan, the

7

Confirmation Order only allows the Bankruptcy Court to determine the amount of *an already disputed* cure claim that was already asserted as of the Effective Date. It does not create the right to assert a cure claim after the Effective Date has already occurred.

Accordingly, the Maren Trust failed to assert or preserve any cure claim that they may have asserted, as no cure claim was asserted prior to the Effective Date of the Plan and such claim is therefore waived. The Debtors are therefore entitled to judgment as a matter of law with respect to the Maren Trust Motion.

Even to the extent that the Maren Trust preserved its right to assert a cure claim, the Maren Trust has failed to establish a default under the contract that would give rise to a cure claim. Pursuant to the Maren Trust ASA, Sklarco is engaged to act as an agent nominee for the Maren Trust for the purposes of "the maintenance and management of all oil and gas properties, records, accounting, personnel, equipment and legal affairs[.]" To effectuate Sklarco's management of the oil and gas interests, Sklarco is vested with the full power and authority to take certain actions with respect to the interests, including the ability to commingle funds from the interests attributed to the Maren Trust with other funds received by Sklarco and to pay all expenses related to the various interests on behalf of the Maren Trust.

The Maren Trust has not asserted a breach of contract by Sklarco. The Maren Trust has not asserted that Sklarco failed to manage the assets or otherwise maintain the assets. The *only* basis the Maren Trust raises in an attempt to evade its contractual obligation to pay the Agency Services Fee is that the Maren Trust was not immediately notified of Sklarco's bankruptcy filing, and general financial mismanagement. The Maren Trust does not identify any financial mismanagement of the interests attributed to the Maren Trust nor could the Maren Trust do so, as Sklarco maintained a detailed accounting for the assets at all times during the case. Additionally, lack of notice of Sklarco's bankruptcy filing a not a sufficient basis to assert a default of the Maren Trust ASA such that Sklarco could not enforce the terms of the Maren Trust ASA and assess the Agency Services Fee.

Instead of establishing a default under the Maren Trust ASA, the Maren Trust seems to assert that it should be alleviated from its obligations under the Maren Trust ASA while still retaining all of the benefits. "The terms of a contract do not when either party files for bankruptcy." *In re Terrell*, 892 F.2d 469, 473 (6th Cir. 1989). The sole fact that Sklarco filed for bankruptcy does not entitle the Maren Trust to unilaterally relieve itself of the obligation Agency Services Fee

8

duly assessed in accordance with the Maren Trust ASA, particularly when Sklarco has continued to hold and manage the interests attributed to the Maren Trust and provide the Maren Trust with an accounting of revenue and expenses with respect to such interests. To allow the Maren Trust to alleviate itself of the Agency Services Fee would be to allow the Maren Trust to receive all of the benefit of the Maren Trust ASA without any of the burdens. There is simply no justification for such a result under applicable Bankruptcy Law, State Law, or in fact or equity.

Absent an established default under the Maren Trust ASA, the Maren Trust has not basis to assert a cure claim, even to the extent its right to assert such a claim was preserved. Accordingly, the Maren Trust Motion fails as a matter of law, and the Debtors are entitled to summary judgment with respect to the Maren Trust Motion.

### B. *The Maren Trust Has Not Established a Basis for an Administrative Expense Claim*

Pursuant to 11 U.S.C. § 503(b), a creditor may receive an allowed administrative expense claim for "the actual necessary costs and expenses of preserving the estate[.]" A party seeking to assert an administrative expense claim bears of burden of proving: 1) that the expense arose out a transaction between the creditor and the debtor-in-possession; and 2) that it provided an actual benefit to the debtor-in-possession in the operation of the business. *In re Mid-Region Petroleum*, 1 F.3d 1130 (10th Cir. 1993) (citing *In re Amarex, Inc.*, 853 F.2d 1526, 1530 (10th Cir. 1988)).

The Maren Trust asserts that it is entitled to an administrative expense claim for any revenue received for interests attributed to it. In raising this argument, the Maren Trust fails to establish that it has an ownership interest in any funds received by Sklarco on a post-petition basis. The Maren Trust does not have a direct ownership interest in any oil and gas interests. Rather the assets are held by Sklarco and attributed to the Maren Trust in accordance with the Maren Trust ASA. The Maren Trust has not asserted any basis for an ownership interest in any funds received by Sklarco. Even to the extent the Maren Trust could assert an ownership interest, the Maren Trust makes no effort to identify the funds in which it can assert such an interest, nor establish that Sklarco used and funds owned by the Maren Trust for the benefit of the estate.

Because the Maren Trust cannot establish an ownership interest in any funds received by Sklarco, the Maren Trust cannot establish a basis for an administrative expense claim as a matter of law. The Debtors are therefore entitled to summary judgment with respect to the Maren Trust Motion.

WHEREFORE the Debtor prays that the Court enter an Order granting the Debtors' Motion for Summary Judgment, entering judgment against the Maren Trust with respect to its *Application for Allowance of Administrative Claim and Cure Claim* (Docket No. 1495) and in favor of the Debtor, and for such further and additional relief as to the Court may appear proper.

DATED: November 16, 2022 Respectfully Submitted,

By: *s/ Keri L. Riley*
Keri L. Riley, #47605
**KUTNER BRINEN DICKEY RILEY, P.C.**
1660 Lincoln Street, Suite 1720
Denver, CO 80264
Telephone: (303) 832-2400
Telephone: (303) 832-2910
Email: klr@kutnerlaw.com