UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 20-12377-EEB |
| SKLAR EXPLORATION COMPANY, LLC ) | |
| EIN: 72-1417930 ) | Chapter 11 |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |
| ) | |
| ) | Case No. 20-12380-EEB |
| SKLARCO, LLC ) | |
| EIN: 72-1425432 ) | Chapter 11 |
| ) | |
| Debtor. | |

**MAREN SILBERSTEIN REVOCABLE TRUST'S SECOND AMENDED PARTIAL MOTION FOR SUMMARY JUDGMENT THAT DEBTOR SKLARCO WAS IN BREACH OF CONTRACT GIVING RISE TO A DUTY TO CURE AND/OR ADMINISTRATIVE CLAIM**

The Maren Silberstein Revocable Trust ("Trust") files this partial motion for summary judgment ("Partial MSJ") that the Debtor Sklarco, LLC ("Sklarco") breached the Asset Services Agreement ("ASA") with the Trust. The Court extended the deadline for filing motions for summary judgment at the Reorganized Debtors' request. (ECF 1889). As such, the Trust files this second amended motion for summary judgment providing additional support for summary judgment which supersedes the prior amended motion for summary judgment.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 56(c) is applicable to this matter under Federal Rule of Bankruptcy Procedure 7056(c). Pursuant to Rule 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is

1

entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)**.** A genuine issue of material fact exists only if a reasonable jury could enter a verdict for the non- moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). After the moving party satisfies its initial burden, the opposing party must establish with competent and admissible summary judgment evidence that a genuine issue of material fact does exist for trial. Id. at 249.

## UNDISPUTED FACTS

1. The Debtors filed bankruptcy on April 1, 2020.

2. The Maren Silberstein Revocable Trust ("Trust") is the successor in interest to the Judy Trust for the Benefit of Maren Silberstein ("Judy Trust").

3. The Trustee for the Trust received notice of the Sklarco bankruptcy after the Plan and Disclosure Statement were filed and a creditor reached out to the Trustee.

4. Sklarco and the Judy Trust were parties to an Agency Services Agreement ("ASA")[1] which provided for a $15,000 monthly payment ("Agency Services Fee") for Sklarco to manage the Trust's oil and gas properties and royalty interests.

5. The ASA provided that Sklarco was the agent for the Trust. Exhibit A, Sec. 1.1.

6. Sklarco was a fiduciary that was supposed to act in the interests of the Trust as its agent. As an agent, it owed the Trust a duty of care, duty of loyalty and a fiduciary duty.

7. The ASA provides that Louisiana law controls. Exhibit A, Sec. 6.5.

8. Under the terms of the ASA, Sklarco had a duty to take all actions to protect the Trust's interests. Instead, as the record of this case and the certificates of service show, Sklarco

---

[1] *See,* **Exhibit A**.

2

concealed its bankruptcy[2], concealed financial irregularities, lacked sufficient financial controls, and breached its duty to the Trust by such non-disclosures.

9. Sklarco's actions were a breach of its duty as agent to the Trust was grossly negligent in representing the Trust's interests by failing to make sure the Trust was noticed with the bankruptcy or informed of maladministration of royalty funds by the Debtor and/or was the result of willful misconduct.

10. As shown by the record of the case, Sklarco provided no notice to the Trust of any pleading that should have been noticed to all creditors and parties in interest during the case. The Court can take judicial notice of the record of the jointly administered case, as well as the separate case filed for Sklarco.

11. Sklarco's statement of financial affairs referred to the Trust as receiving one transfer at Item 30.3, but none of the Debtors' filings provided the full name of the Trust with the address for the trust. *See*, Case No. 20-12380, ECF 27, 41, 51, 87 and 88; and, *e.g.,* Case No. 20-12377, ECF 324 . The ASA agreement was never scheduled on Schedule G by the Debtor. The Trust was not included in the creditor mailing matrix until after the confirmation hearing commenced.

12. At the time the bankruptcy was filed and throughout, the Debtor failed to comply with the Bankruptcy Rules and failed to ensure that the Trust's rights were being property asserted

---

[2] The Reorganized Debtors may argue that the beneficiary of the Trust, Maren Silberstein, had constructive notice of Sklarco's bankruptcy. Whether the Trust had constructive notice of the bankruptcy is a disputed fact, but what is undisputed by the record of the case is that the Trust did not receive direct notice of any filings in the case until the confirmation process commenced. The Trust received no notice of key steps in the bankruptcy process such as: the proof of claim deadline, opportunity to serve on the unsecured creditors committee, opportunity to attend discovery depositions, or respond to pleadings in the case prior to the filing of the Plan. This hindered the Trust's ability to manage its rights viz a vis the Debtors and provided the Debtors the benefit of controlling the Trust's assets and revenue for the benefit of the Debtors' Estates.

as the agent for the Trust.

13. Debtor's counsel stated the following regarding the Plan treatment of the Trust's claims ratifying that all rights were preserved by the Plan (See, Exhibit B):

> From: Keri Riley
> To: Deirdre Brown; Jeffrey Brinen
> Subject: [External] RE: Sklar - Maren Silberstein Revocable Trust ("Trust")
> Date: Tuesday, July 27, 2021 6:13:48 PM
> Attachments: Amended Sklarco Schedules rev 6.30.pdf
> second amended and restated joint plan of reorganization.pdf
> Amended SEC Schedules.pdf
> 101~JUD 20210131.pdf
> 2.ASA AGREEMENT.pdf
>
> Deidre,
>
> Thank you for reaching out. I will give you a call tomorrow morning to discuss this matter further, but in the interim, I have attached a copy of the most recent amended schedules filed by Sklarco and the schedules filed by Sklar Exploration Company (referred to in pleadings as "SEC"), as well as a copy of the Second Amended and Restated Chapter 11 Plan, which is currently pending before the bankruptcy court, but which has not been confirmed.
>
> Specifically with respect to the assets to which the Maren Trust may assert an interest, I have attached a copy of the January JIB statement here. I am working on getting an updated copy from the company. Last week we were also advised that the Maren Trust may be a party to a separate Agency Services Agreement, which I have attached here for your reference. We have not taken any action with respect to this particular agreement, as we were only recently advised of its existence.
>
> We are still working to verify that notice was provided previously. In the interim, if you can provide an address for the trustees, we will certainly ensure that all future notices go to them as well. As you will see from the Plan, all rights with respect to any of the assets in which the Maren Trust may have an interest are fully preserved.
>
> Happy to provide any additional information that you would like as well, and I will be more than happy to provide some additional background on the phone tomorrow. In the interim, please let me know if I can provide anything further.
>
> Thanks,
>
> Keri L. Riley, Esq.
> Kutner Brinen Dickey Riley, P.C.
> 1660 Lincoln St., Suite 1720
> Denver, CO 80264
> 303-832-2910 Direct
> 303-832-2400 Main

14. While the Debtors' counsel stated it was unaware that the Trust had a separate ASA until shortly before counsel for the Trust reached out to her, the record of the case shows several prior references to the Trust where the Debtor was on notice that the Trust should have

4

been on the creditor mailing matrix. A couple non-exclusive examples where filings referenced the Trust are: 1) the unsecured creditors committee conducted discovery regarding the Trust in October 2020 (ECF 577); 2) the Debtors' proposed a motion to assume an executory contract on April 5, 2021 where it referenced the Trust but then dropped the reference before the motion was approved (ECF 1174); and, 3) the Amended Plan filed on March 11, 2011 referred to the Trust but did not serve the Plan on the Trust (ECF 1080).

15. In addition to the Debtors' counsel ratifying that the Plan preserved all of the Trust's rights, the Confirmation Order also provided for a preservation of rights and provided that any administrative claim or cure amount was to be determined by the Court in the event of a dispute:

> Case:20-12377-EEB Doc#:1433 Filed:08/24/21 Entered:08/24/21 13:08:58 Page3 of 3
>
> *That notwithstanding* any other provision in the Plan, on and after the Effective Date, Revenue Parties shall retain all royalty and working interests, to the extent applicable, in full force and effect in accordance with the terms of the granting instruments or other governing documents applicable to such Revenue Parties. Revenue Parties' rights shall not be modified, affected or impaired in any manner by any provision of the Plan or this Confirmation Order, including but not limited to any injunctive or stay relief, and the legal and equitable rights, interests, defenses, and obligations of Revenue Parties shall not be modified, affected or impaired in any manner by the provisions of the Plan or this Confirmation Order, except that the Bankruptcy Court shall make any determination as to any administrative claim, rejection damages claim, or the cure amount in the event of a dispute. Nor shall the Plan or this Confirmation Order modify, affect or impair the rights and defenses of the Debtors, Reorganized Debtors, and Creditor Trust with respect to claims or interests related to the Revenue Parties, and the Debtors', Reorganized Debtors', and Creditor Trust's right to dispute the amounts owing on account of the Revenue Parties, and the right to assert any claims, defenses, or challenge ownership as to any Disputed Assets are expressly preserved and reserved.
>
> *That* any and all Administrative Expense Claims shall be filed not later than forty-five (45) days following the Effective Date of the Plan.

16. The confirmation order preserved all rights to assert such claims regardless of the confirmation of the Plan.

17. All exhibits attached to the reply at ECF 1606 are incorporated herein. The statements for the Trust's accounts show that SEC was also involved in the handling of the Trust's assets at all times. The settlement statements each show that SEC was operating the assets for Sklarco. All settlement statements came from Sklarco with line items for amounts paid to SEC. As such, the Estates benefitted from the cash flow generated by the Trust's assets.

18. The Debtors have judicially admitted that they failed to provide all services due to the Trust under the ASA. On April 15, 2021, the Debtors jointly filed a motion to assume an agency services agreement. ECF 1174. In that Motion, the Debtors acknowledge that the Trust was "no longer receiving the full value of the services provided by Sklarco. Id. at para 11. The Trust's ASA was only with Sklarco, unlike other parties that had a ASA that had Sklar Exploration Company as a party to the agreement. The ASA attached to the motion at ECF 1174 did not include the ASA for the Trust. The Motion at ECF 1174 was objected to by the Rudman Parties raising a concern with the reference to the Trust.

19. The Plan provides as follows for the assumption of executory contracts by Sklarco:

20. Arguably, for any claims related to royalty interests the administrative and cure claim had no specific time to be filed under the terms of the Confirmation Order. However, out of an abundance of caution, the Trust's administrative claim and cure claim was filed within the time set by the Confirmation Order for an administrative claim.

21. Any dispute regarding the amounts for the cure claim or administrative claim were to be decided by the Court.

22. Post-petition the Debtors continued to control the Trust's assets and direct how the Trust's revenues would be handled, including applying a $15,000 management fee each month and applying other expenses. The Debtor used these assets to benefit the Estate and show ongoing operations for reorganization even going so far as to assume all executory contracts between Skarlco and others in the Plan.

23. The Trust's administrative claim and/or cure claim was limited to damages that were incurred post-petition by the Debtor's breach of the ASA which included the failure to provide all services as well as the failure to provide the most basic administrative services by providing notice to the Trust of the actions in the jointly administered bankruptcies which could impact the Trust, not providing copies of the filings in the case to the Trust, not providing the Trust with the deadline for filing a proof of claim, not advising the Trust on pending motions, etc.

24. Not only was Sklarco obliged to be a good fiduciary to the Trust under the ASA in the management of the assets including advising the Trust about the Sklarco and SEC bankruptcies, Sklarco was obligated to provide notice under the Bankruptcy Code.

25. The record of the case suggests that the Trust was knowingly omitted from the service lists since the Trust was referenced in the Statement of Financial Affairs, discovery requests and a motion to assume executory contract.

26. The Debtor had a duty to keep the Trust informed and the failure to do so was a breach of the ASA giving rise to damages to the Trust.

27. The Trust alleges that while the damages may exceed the management fee given the

opportunity costs, that at a minimum it should recover the management fee assessed to the trust from the date the bankruptcy was filed until confirmation.

28. More recently, the Reorganized Debtors started providing financial statements that show improper accounting on the statements for post-confirmation activity related to the Trust's assets. The issue regarding the problematic accounting was raised to the Reorganized Debtors. To date, the Trust has not received any explanation for the fuzzy accounting and reserves all rights to pursue claims for any post-confirmation mismanagement or defalcation of funds.

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order Confirming the Plan and Article 11.2 of the Second Amended Plan (ECF 1251 and 1433). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## LAW AND ARGUMENT

**The Trust Is Entitled to a Cure Claim for the Assumption of the ASA or Absent Cure a Disgorgement of All Revenue the Debtors Received and Recission of the ASA**

In pertinent part, 11 U.S.C. § 365(b)(1) sets forth that:

> (1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

Section 503(b) of the Bankruptcy Code defines which claims against the debtor are characterized as administrative expenses. 11 U.S.C. § 503(b). Under § 507(a), administrative expenses are given priority over all other unsecured claims

Section 503(b)(1)(A) defines an administrative expense to include "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). The Fifth Circuit has held that a § 503(b)(1)(A) expense "must have been of benefit to the estate and its creditors." *Tex. v. Lowe (In re H.L.S. Energy Co., Inc.),* 151 F.3d 434, 437 (5th Cir. 1998).

### The Trust Is Entitled to Partial Summary Judgment of its Claims that Sklarco Breached the ASA

There is no genuine issue as to material fact that Sklarco had a contract with the Trust which it breached and where it was to serve as the Trust's fiduciary. Sklarco's filing of bankruptcy was a material issue of fact concealed from the Trust. Sklarco had a duty under the bankruptcy rules and the ASA to provide timely notice of the Skarlco bankruptcy to the Trust, as well as the other material information that was disclosed in the Bankruptcy.

Sklarco breached the duties and obligations it owed to the Trust under the ASA which is starkly evident given Sklarco's failure to comply with the Bankruptcy law which required direct notice to the Trust, as well as breaching its duty under the ASA to provide direct notice. Further, the Debtors made a judicial admission that all services under the ASA were not being provided further showing that the Debtors were in breach under the ASA.

The amount to cure the breach of the ASA remains a disputed issue of fact. This motion merely seeks a finding that the Debtor, Sklarco, was in breach of the ASA by failing to provide the services contemplated by the agreement and by beaching its fiduciary duty to the Trust.

A fiduciary duty exists where there is a relationship between the person holding the fiduciary duty and the person entitled to be the beneficiary of it. A fiduciary is required to act in the highest good faith toward his or her principal and not seek to obtain any advantage over him or her by the slightest misrepresentation or concealment. Full and complete disclosure of all important information is required even if the relationship between them becomes strained or is in conflict. *Dela Vergne v. Hughes J. Dela Vergne*, (La. App. 4 Cir. 1999), 745 So.2d 1271.

The Court held that "an agent who acquires his principal's property or one who otherwise acts in a fiduciary capacity bears the burden of establishing that the transaction was an arms length affair. This means that the agent or fiduciary must handle the manner as though it were his own affair. It also means that the agent or fiduciary may not take even the slightest advantage, but must zealously, diligently and honestly guard and champion the rights of his principal against all other persons whom so ever, and is bound not to act with antagonism, opposition or conflict with the interest of the principal to even the slightest extent. *Noe v. Roussel*, 310 So.2d 806 (La. 1975).

The record of the case is clear that the Trust received no notice and was being referred to at times in motions, discovery or otherwise without any knowledge of the Trust and no direct notice to the Trust. Sklarco did not champion the rights of the Trust, to the contrary Sklarco concealed the Bankruptcy, deposition dates, discovery, and information being revealed during the Bankruptcy.

**Sklarco Had a Duty to Disclose**

"It has long been held that the duty to disclose exists where the parties stand in *1384 some confidential[4] or fiduciary relation to one another, such as that of principal and agent or executor and beneficiary of an estate. Contracts, such as those of suretyship or guaranty, can also impose such a duty. More recently, courts have tended to impose a duty when the circumstances are such that the failure to disclose would violate a standard requiring conformity to what the ordinary ethical person would have disclosed." *Bunge Corp. v. GATX Corp.*, 557 So. 2d 1376, 1383-1384 (1990).

The duty to disclose exists where the parties stand in some confidential or fiduciary relation to one another. *Louisiana State University System Research & Technology Foundation v. Qyntessa Biologics, L.L.C.,* 168 So.3d 468, 474 (La. App. 1st Cir. 12/12/14), (*citing Bunge Corporation v. GATX Corporation*, 557 So.2d 1376, 1383-84 (La. 1990)). Although not every contractual relationship involves a fiduciary relationship, the defining characteristic of the latter is a special relationship of confidence or trust imposed by one in another who undertakes to act primarily for the benefit of the principal in a particular endeavor. Id. at 474.

"A fiduciary cannot further his own interests and enjoy the fruits of an advantage of such a relationship and must make a full disclosure of all material facts surrounding the transaction that might affect the decision of his principal." Id.

In this case, the ASA is an explicit agency agreement where the Trust put all confidence in the Debtor Sklarco to honestly, transparently and responsibly manage the Trust's assets. But, in this instance, it was as if the Debtor kept the Trust and its trustees out of the loop in order to keep generating management fees and controlling the revenue derived from the Trust's assets.

The Debtors furthered there own interests to the detriment of the Trust leaving the Trust to learn of all the sordid details disclosed in the bankruptcy belatedly with many of the deadlines and rights for the Trust to have meaningful participation in the bankruptcy having passed.

The ASA was breached and the Trust should have an administrative claim for the funds that undeniably were revenues of the Trust charged as management fees.

## **PRAYER**

Based on the plain language of the ASA, Sklarco was in breach of its duties by failing to provide services and by failing to advise the Debtor each step of the way in the bankruptcy of Sklarco and Sklar Exploration Company as it continued to do business with SEC and failure to

advise of the improprieties raised by creditors in a timely manner. The Trust prays for a partial summary judgment finding that Sklarco was in breach of the ASA.

DATED: November 16, 2022

Respectfully submitted,

By: */s/ Deirdre Carey Brown*
      DEIRDRE CAREY BROWN,pllc
      FORSHEY & PROSTOK LLP
      1990 Post Oak Blvd Suite 2400
      Houston, Texas 77056
      Telephone: 832.367.5722
      dbrown@forsheyprostok.com

ATTORNEY FOR MAREN SILBERSTEIN REVOCABLE TRUST

## CERTIFICATE OF SERVICE

On November 16, 2022, the foregoing second amended motion for summary judgment was served on all parties registered to receive ECF in this case.

*/s/ Deirdre Carey Brown*
DEIRDRE CAREY BROWN