<u>**AGENCY SERVICES AGREEMENT**</u>

This **Agency Services Agreement** ("**Agreement**"), made and entered into effective as of the date specified in Section 4.1 below, by and between **SKLARCO L.L.C.**, a Louisiana limited liability company ("**Sklarco**") and **Stanley Silberstein and Carey Fields, co-trustees of the Judy Trust for the Benefit of Maren Silberstein established Under the Last Will and Testament of Judy Sklar Silberstein**, ("**Principal**");

<u>**WITNESSETH**</u>

WHEREAS, Sklarco, as the nominee of Principal, currently holds title to and maintains various rights, titles and interests in property of Principal, movable and immovable, personal and real, corporeal and incorporeal, tangible or intangible, and otherwise (herein collectively referred to as the "Property");

WHEREAS, Principal has retained Sklarco to maintain and manage such interests on behalf of Principal, including, but not limited to, the maintenance and management of all oil and gas properties, records, accounting, personnel, equipment and legal affairs, with full authority to transact all matters relating thereto for such price and on such terms and conditions set forth in this Agreement; and

WHEREAS, Sklarco and Principal have agreed to enter into this Agreement to memorialize their agreement as to the basis by which Sklarco provides said services, to formalize the relationship between the parties and to ratify prior acts performed by Sklarco on behalf of Principal.

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and agreements herein, the parties hereto agree as follows:

<u>**AGREEMENT**</u>

1. <u>**Powers and Authority of Sklarco.**</u>

    1.1   To facilitate Sklarco's management of the Property, Principal does hereby make Sklarco its true and lawful agent and attorney in fact, for Principal, in his name, place and stead, to do any and every act and to exercise any and every power that Principal might or could do or exercise through any other person with respect to the Property, including not only all matters of administration but also all acts of ownership and the doing of whatever may appear to Sklarco to be conducive to the interests of Principal.  Sklarco hereby agrees to serve as Principal's agent and attorney in fact in accordance with the terms and conditions of this Agreement.  Principal specifically acknowledges and agrees that the rights, titles and interests in the Property shall be recorded and held in the name of Sklarco, as nominee for Principal.

    1.2   Without in any manner limiting or restricting any of the foregoing, Principal hereby grants unto said agent and attorney in fact, for Principal and in Principal's name, place and stead, full power and authority:

(1) To accept as a gift or donation or to purchase or otherwise acquire, in any manner, all kinds of things or property, whether movable or immovable, personal or real, corporeal or incorporeal, tangible or intangible, wheresoever situated, in whole or in part, or an undivided interest therein (such property so acquired shall also be included in the term "Property" as used herein);

(2) To do the following things and perform the following acts with respect to Principal's interest, or any part thereof, or an undivided interest therein, in the Property:

    (a) To pledge, pawn, mortgage or otherwise encumber the same in any manner;

    (b) To subject the same to options, easements or servitudes, mineral or otherwise;

    (c) To grant royalty interests affecting the same;

    (d) To grant leases or subleases covering or affecting the same, including, but without being limited to, oil, gas and mineral leases and subleases, with or without provisions for the pooling of the leased premises, in whole or in part, with other lands and mineral interests;

    (e) To use, administer, build upon or otherwise improve, repair, demolish, partition, divide or subdivide the Property in any manner;

    (f) To exchange, sell, convey, assign or otherwise dispose of the Property, in whole or in part, in any manner which Sklarco deems advisable;

    (g) To make and sign all kinds of agreements pertaining to the Property, including, but without being limited to, the making and signing of assignments, farmout agreements, operating agreements, gas purchase agreements, pooling agreements, unitization agreements, division orders and transfer orders, and agreements supplementing, amending or rescinding such agreements, whether made by Principal personally or through an agent, pertaining to the doing of anything which Sklarco is authorized to do hereunder;

(3) To borrow money or otherwise contract loans, to acknowledge debts, to make or endorse promissory notes and to make or accept all kinds of bills of exchange;

(4) To endorse, collect and receive the proceeds of any promissory note, draft, check or other bill of exchange made payable to Sklarco in its capacity as nominee for Principal, or to Principal or to Principal's order and give receipt therefor, and to endorse for deposit in or for collection by any bank or corporate institution, wheresoever situated, drafts, checks or other bills of exchange made payable to Principal or to Principal's order;

(5) To commingle Principal's funds with other funds held by Sklarco as agent or otherwise, subject to Sklarco's obligations as to accounting and reporting set forth in this Agreement;

(6) To adjust, settle, compromise or submit to arbitration all matters concerning the Property;

(7) To demand, make allowances in respect to, remit or recover and receive anything due or belonging to Principal and relating to the Property;

(8) To commence, prosecute, discontinue, arbitrate, compromise, settle, confess judgment or defend all kinds of claims, actions and proceedings concerning the Property in any manner, with full power to waive citation, to accept service, to plead prescription and to apply for writs and all other process, including appeal;

(9) To prepare, execute and file any application, tax return, report, notice, statement, consent, protest, waiver, petition or agreement or document required or permitted to be filed with respect to the Property under any law, ordinance, resolution, rule, regulation or directive of the United States of America, of any State of the United States of America, or of any department of, or corporation, board, authority, agency, political subdivision or instrumentality heretofore or hereafter created, designated or established by the United States of America or any State thereof; to represent Principal before the proper office, officer or court with respect to all such documents and the matters to which they pertain; and, without limiting or in any manner restricting the foregoing, to receive, endorse and collect checks in payment of refund of taxes, licenses, penalties or interest; and to receive and inspect confidential information with respect to Principal's liability under any law, ordinance, resolution, rule, regulation or directive above described;

(10) To contract concerning the Property on behalf of the Principal with itself and with third parties for whom Sklarco also serves as agent and nominee;

(11) To employ any person or persons, firm or corporate institution to perform any act or acts or to do anything which Sklarco deems to Principal's interest and to pay therefor from Principal's funds and to terminate such employment;

163253-1

MSTrust_000003

(12) To appoint any other person or persons as the substitute of Sklarco to do any act or exercise any power which Sklarco could do or exercise hereunder;

(13) To exercise any and all of the powers herein granted to Sklarco, as and when, to the extent, in the manner, for such price or other consideration or reason and subject to such terms and conditions, usual or unusual, as are acceptable to Sklarco;

(14) To execute and deliver all kinds of instruments to evidence the exercise by Sklarco of the powers herein granted to Sklarco; and

(15) To do and perform all and every act and thing whatsoever requisite and necessary to be done in the premises, as fully and to all intents and purposes as Principal might or could do if personally present.

1.3 Principal hereby ratifies and confirms, and promises at all times to ratify and confirm, all and whatsoever Sklarco has done, or shall lawfully do or cause to be done under this Agreement, including anything which shall be done between the expiration or revocation of this Agreement and notice of such expiration or revocation reaching Sklarco, and Principal does hereby declare that, as against Principal and all persons claiming under Principal, everything which Sklarco shall do or cause to be done in pursuance hereof after such expiration or revocation shall be valid and effectual in favor of any person claiming the benefit thereof who before the doing thereof shall not have had actual or constructive notice of such expiration or revocation.

1.4 Principal acknowledges that Sklarco has maintained and managed the Property on behalf of Principal prior to the effective date of this Agreement. Principal hereby ratifies and confirms all actions which Sklarco has taken with respect to the Property prior to the date of this Agreement which are consistent with the power and authority granted by Principal to Sklarco under the terms of this Agreement, as fully as if this Agreement had been executed and in effect at the time of such prior acts of maintenance and management.

2. **Payments and Accounting**.

2.1 Except as herein otherwise specifically provided, Sklarco shall promptly pay and discharge expenses incurred in relation to the Property. Each month Sklarco shall invoice Principal on or before the 15th day of each month for his respective proportionate share of such expenses incurred during the preceding month, together with the Agency Services Fee determined pursuant to Section 2.2. A statement which identifies the Property involved, and all charges and credits summarized by appropriate classifications of income and expense, shall accompany such invoice. Principal shall pay such charges within fifteen (15) days after receipt of the invoice, or, in the alternative, Sklarco may deduct such charges from any funds held by Sklarco for Principal's account. Sklarco shall keep an accurate record of such expenditures together with any credits to which Principal is entitled.

2.2 Notwithstanding the provisions of Section 2.1, in consideration of the services rendered by Sklarco pursuant to this Agreement, Principal will pay each month to Sklarco the

sum of $15,000.00 (the "Agency Services Fee"). The Agency Services Fee will be adjusted annually, as of January 1 each year, commencing January 1, 2008, based upon the percentage change in the average of the Consumer Price Index for Urban Wage Earners and Clerical Workers, U.S. City Average, for all items (1982-84=100), as published by the Department of Labor, Bureau of Labor and Statistics ("CPI-W") for the year 2006 compared to the average of the CPI-W for the year immediately preceding the date of adjustment. If the United States Department of Labor discontinues issuing, or substantially changes the bases of this Index, Sklarco and Principal will substitute and apply prospectively, a different, mutually agreeable index. Likewise, if the parties in good faith discover that the Index does not provide a proper basis for its intended use, the parties will select and prospectively apply a more appropriate index to reflect the effects of inflation/deflation more accurately

    2.3    The parties recognize that from time to time sums may be advanced by Sklarco to pay expenses of the Principal and at other times sums held for Principal by Sklarco may be utilized by Sklarco in connection with its operations. Whether Sklarco advances its own funds to discharge expenses owed by Principal in connection with the Property, or applies funds held on behalf of Principal to the operations of Sklarco, no interest shall be due to Sklarco from Principal or from Principal to Sklarco in either event. Upon written request of Principal, Sklarco will transfer to Principal any credit balances held by Sklarco on behalf of Principal.

    2.4    Sklarco, at its election, shall have the right from time to time to demand and receive from Principal payment in advance of its respective share of the estimated amount of the expense to be incurred related to the Property during the next succeeding month, which right may be exercised only by submission to Principal of an itemized statement of such estimated expense, together with an invoice for its share thereof. Each such statement and invoice for the payment in advance of estimated expense shall be submitted on or before the 15th day of the next preceding month. Principal shall pay to Sklarco its proportionate share of such estimate within ten (10) days after such estimate and invoice is received.

    2.5    If Principal fails to pay its share of the statements issued by Sklarco pursuant to Sections 2.1 and 2.4 above within the time period provided, the amount due shall bear interest monthly at the prime rate in effect as published in The Wall Street Journal on the first day of the month in which such delinquency occurs plus 1%, or the maximum contract rate permitted by the applicable usury laws of the State of Louisiana, whichever is the lesser, plus attorney's fees, court costs, and other costs incurred in connection with the collection of such unpaid amounts.

    2.6    Payment of any invoices issued pursuant to this Agreement shall not prejudice the right of Principal to protest or question the correctness thereof; provided, however, all invoices and statements rendered to Principal by Sklarco during any calendar year shall conclusively be presumed to be true and correct after twelve (12) months following the end of any such calendar year, unless within the said twelve (12) month period Principal takes written exception thereto and makes claim on Sklarco for adjustment. No adjustment favorable to Sklarco shall be made unless it is made within the same prescribed period.

    2.7    Principal and its auditors, counsel and duly authorized agents, at Principal's sole expense, shall be entitled at all reasonable times during normal business hours to examine any and all records, reports, accounts, plans, books, correspondence and documents of Sklarco relating to the Property, and, upon notice in writing to Sklarco, shall have the right to audit

Sklarco's accounts and records relating to the Property for any calendar year within the twelve (12) month period following the end of such calendar year; provided, however, the making of an audit shall not extend the time for the taking of written exception to and the adjustments of accounts as provided for in Section 2.4 of this Section. Sklarco shall bear no portion of Principal's audit cost incurred under this Section unless agreed to by Sklarco. Such audit shall not be conducted more than once each year, without the prior approval of Sklarco, such approval not to be unreasonably withheld.

3. **Relationship Between Principal and Sklarco**

    3.1    The relationship between Principal and Sklarco hereunder is intended to be that of principal and agent, respectively. Nothing contained herein shall be construed so as to constitute the parties as partners or joint venturers, or either party as the employee of the other, or the employees of either party as employees of the other.

4. **Term**

    4.1    This Agreement shall be effective as of April 1, 2008, and shall continue in full force and effect for an initial term of one year and thereafter for consecutive one year terms; provided that is the event of the sale by Principal of all of the Property, then this Agreement shall terminate thirty (30) days after receipt by Sklarco of notice of such sale.

    4.2    Upon the termination of this Agreement for any reason, Sklarco shall prepare, execute and record such assignments to Principal covering the various interests in the Property which are held by Sklarco as nominee for Principal pursuant to this Agreement as necessary to transfer record title to the Property to Principal. All costs of preparing such assignments and recording same in the appropriate public records shall be invoiced by Sklarco to, and paid by, Principal. The termination of this Agreement shall be effective as of the date all of such assignments have been recorded in the Conveyance Records of all requisite parishes and counties where the Property is located. Upon the completion of the recordation of such assignments, either party may record a notice of termination of this Agreement in the Conveyance Records of Caddo Parish, Louisiana, which notice shall constitute constructive notice to third parties of the termination of this Agreement.

5. **Limitations of Liability and Indemnification**

    5.1    <u>Limitations on Liability</u> - In no event shall Sklarco be liable (whether in contract or in negligence, fault or strict liability) to Principal, his agents, employees or insurers, arising from claims for any damages of any kind or character (including damages arising from claims by third parties) resulting from performance, nonperformance, or delay in performance of its obligations under this Agreement or from delay, termination or suspension of this Agreement unless such damages shall have resulted from the gross negligence or willful misconduct of Sklarco, its agents or employees.

    5.2    <u>Survival of Liability Provisions</u> - The provisions of this Article 5 shall apply to the full extent permitted by law and shall survive termination of this Agreement.

6. **Miscellaneous**

6.1 <u>Notices</u> - All notices and other communications provided for or required by this Agreement shall be in writing and shall be deemed to have been duly given when delivered by hand or three business days after deposit in the United States mail, return receipt requested, postage prepaid, addressed to the person to whom such notice is intended to be given at the addresses specified below:

(a) If to Sklarco:

Sklarco, L.L.C.
401 Edwards Street, Suite 1601
Shreveport, Louisiana 71101
Attention: David A. Barlow

(b) If to Principal:
Stanley Silberstein and Carey Fields, Co-Trustees of the
Judy Trust for the Benefit of Maren Silberstein
c/o Kaufmann, Feiner, Yamin, Gildin & Robbins L.L.P.
777 Third Avenue
New York, NY 10017

Attention: Mr. Daniel Gildin

The designation of the persons to be notified, or the addresses of such persons, may be changed at any time by any party upon written notification to the other party.

6.2 <u>Entire Agreement</u>. This Agreement (together with any Exhibits hereto) constitutes the entire agreement by and between the parties hereto and supersedes any other agreement, whether written or oral, that may have been made or entered into by Sklarco or Principal (or by any officer or representative of such parties) relating to the matters contemplated hereby.

6.3 <u>Assignment</u>. Neither Sklarco nor Principal shall assign this Agreement or any interest herein or rights hereunder or delegate any duties hereunder to any person or entity without the prior written consent of the other party hereto, which consent shall not be unreasonably withheld.

6.4 <u>Amendments, Supplements, Etc.</u> This Agreement or the Exhibits hereto may be amended or supplemented at any time by additional written agreements or exhibits, as may mutually be determined by the parties hereto to be necessary, desirable or appropriate to further the purposes of this Agreement or to clarify the intention of the parties hereto.

6.5 <u>Applicable Law</u>. This Agreement and the legal relations between the parties hereto shall be governed by and construed in accordance with the substantive laws of the State of Louisiana, without giving effect to the principles of conflict of laws thereof.

6.6 **Execution in Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

6.7 **References.** Titles and headings to sections herein are inserted for convenience of reference only, and are not intended to be a part of or to affect the meaning or interpretation of this Agreement. Where the context requires, references to the masculine shall also refer to the feminine or neuter, and references to the singular shall also refer to the plural.

6.8 **Severability.** In the event that any of the terms, covenants or conditions of this Agreement or the application of any such term, covenant or condition, shall be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other term, covenant or condition hereof and this Agreement shall be construed as if such invalid, illegal or unenforceable term, covenant or condition had never been contained herein.

**IN WITNESS WHEREOF**, the undersigned representative of Sklarco L.L.C., has executed this Agreement in duplicate originals on behalf of Sklarco L.L.C. on the date set forth below, effective as of the date specified in Section 4.1, in the presence of the undersigned witnesses.

**WITNESSES:**

_Bettye LaCour_
BETTYE LACOUR

_Devin Allen_
Devin Allen

**SKLARCO L.L.C.**

By: _David A. Barlow_
David A. Barlow, Vice President-
Chief Operating Officer

Date: APRIL 14, 2008

**(Signatures Continued on Following Pages)**

IN WITNESS WHEREOF, the undersigned co-trustees of the Judy Trust for Maren Silberstein under the Last Will and Testament of Judy Sklar Silberstein has each executed this Agreement in duplicate originals on behalf of the Judy Trust for Maren Silberstein under the Last Will and Testament of Judy Sklar Silberstein on the date set forth below their respective signatures, effective as of the date specified in Section 4.1, in the presence of the undersigned witnesses.

**WITNESSES**:

_____
PAMELA Irizarry

_____
KEVIN M. SHELLEY

_____
Stanley Silberstein, Co-Trustee of the Judy Trust For the Benefit of Maren Silberstein

Date: 7/14/08

_____
PAMELA Irizarry

_____
KEVIN M. SHELLEY

_____
Carey Fields, Co-Trustee of the Judy Trust For the Benefit of Maren Silberstein

Date: 7/14/07

**STATE OF LOUISIANA,**

**PARISH OF CADDO.**

On this 14th day of APRIL, 2007, before me appeared **David A. Barlow**, to me known, who, being by me duly sworn, did say:

That he is the **Vice President-Chief Operating Officer of Sklarco L.L.C.**, a Louisiana limited liability company, and that the foregoing instrument was signed on behalf of said Company by authority of its members, and said Appearer acknowledged said instrument to be the free act and deed of said company.

**IN WITNESS WHEREOF**, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC in and for
Caddo Parish, Louisiana

MALCOM S. MURCHISON, 9836
Notary Public in and for
The State of Louisiana
My Commission is for Life

**STATE OF NEW YORK,**

**COUNTY OF** New York.

On this 14 day of May, 2007, before me appeared Stanley Silberstein, to me known, who, being by me duly sworn, did say:

That he is the duly authorized Co-Trustee of the Judy Trust for the Benefit of Maren Silberstein, and that the foregoing instrument was signed in behalf of said Trust, and said Appearer acknowledged said instrument to be the free act and deed of said Trust

**IN WITNESS WHEREOF**, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC in and for
_____, _____.

My Commission expires: _____

DANIEL GILDIN
NOTARY PUBLIC, State of New York
No. 31-4664971
Qualified in New York County
Commission Expires September 30, 20 10

**STATE OF NEW YORK,**

**COUNTY OF** _New York_.

On this _14_ day of _May_, 2008, before me appeared Cary Field, to me known, who, being by me duly sworn, did say:

That he is the duly authorized Co-Trustee of the Judy Trust for the Benefit of Maren Silberstein, and that the foregoing instrument was signed in behalf of said Trust, and said Appearer acknowledged said instrument to be the free act and deed of said Trust.

**IN WITNESS WHEREOF**, I hereunto set my hand and official seal.

_____
NOTARY PUBLIC in and for
_____, _____.

My Commission expires: _____

DANIEL GILDIN
NOTARY PUBLIC, State of New York
No. 31-4664971
Qualified in New York County
Commission Expires September 30, 20__

163253-1

11

MSTrust_000011