IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLORADO

_____

In re:

SKLAR EXPLORATION COMPANY, LLC          Case No.: 20-12377 EEB
AND SKLARCO, LLC,

(Chapter 11)

Debtors.

Evidentiary Hearing on: (1)     Courtroom F
confirmation of the Debtors'    U.S. Bankruptcy Court
Second Amended Plan;            721 19th Street
and (2) Sklarco's Motions to    Denver, CO 80202
Assume Operating Agreements
and the objections by Fant      August 16, 2021
Energy.                         9:34 AM

BEFORE THE HONORABLE ELIZABETH E. BROWN, Judge

APPEARANCES:

For Howard Sklar Exploration    Keri L. Riley, Esq.
Company:                        KUTNER BRINEN DICKEY RILEY,
                                P.C.
                                1660 Lincoln Street
                                Suite 1720
                                Denver, CO 80264

For East West Bank:             Bryce A. Suzuki, Esq.
                                SNELL & WILMER LLP
                                One Arizona Center
                                400 East Van Buren Street,
                                Suite 1900
                                Phoenix, AZ 85004

For Creditors' Committee:       Christopher D. Johnson, Esq.
                                John Cornwell, Esq.
                                (Telephonically)
                                MUNSCH HARDT KOPF & HARR, P.C.
                                700 Milam Street
                                Suite 800
                                Houston, TX 77002



```
 1   For Ad Hoc Committee of        Timothy M. Swanson, Esq.
     Working Interest Owners:       MOYE WHITE, LLP
 2                                  3615 Delgany Street
                                    Suite 1100
 3                                  Denver, CO 80216

 4   For Howard F. Sklar:          Adam L. Hirsch, Esq.
                                    DAVIS GRAHAM & STUBBS LLP
 5                                  1550 17th Street
                                    Suite 500
 6                                  Denver, CO 80202

 7   For Rudman Partnership, CTM    Thomas H. Shipps, Esq.
     2005, Ltd., and MER Energy,   MAYNES, BRADFORD, SHIPPS &
 8   Ltd.:                          SHEFTEL, LLP
                                    835 East Second Avenue
 9                                  Suite 123
                                    Durango, CO 81301
10
                                    Barnet B. Skelton, Jr., Esq.
11                                  (Telephonically)
                                    BARNET B. SKELTON, JR.,
12                                  ATTORNEY AT LAW
                                    815 Walker Street
13                                  Suite 1502
                                    Houston, TX 77002
14
     For Fant Energy Limited:       Brent R. Cohen, Esq.
15                                  LEWIS ROCA ROTHGERBER CHRISTIE
                                    LLP
16                                  1601 19th Street
                                    Suite 1000
17                                  Denver, CO 80202

18   For Maren Silberstein         Deirdre C. Brown, Esq.
     Revocable Trust:               (Telephonically)
19                                  FORSHEY PROSTOK LLP
                                    1990 Post Oak
20                                  Suite 2400
                                    Houston, TX 77056
21
     For JF Howell Interests, LP:   David R. Taggart, Esq.
22                                  (Telephonically)
                                    BRADLEY MURCHISON KELLY & SHEA
23                                  401 Edwards Street
                                    Suite 1000
24                                  Shreveport, LA 71101

25
```



| 1 | For Strago Petroleum | Robert L. Paddock, Esq. |
|---|---|---|
| | Corporation, Meritage Energy | (Telephonically) |
| 2 | Ltd, Gateway Exploration, | BUCK KEENAN |
| | Harvest Gas Management, G Crew | 2229 San Felipe |
| 3 | Properties: | Suite 1000 |
| | | Houston, TX 77019 |
| 4 | | |
| | For FPCC USA, Inc.: | Madison M. Tucker, Esq. |
| 5 | | (Telephonically) |
| | | JONES WALKER LLP |
| 6 | | 201 Saint Charles Avenue |
| | | New Orleans, LA 70170 |
| 7 | | |
| | | Joseph E. Bain, Esq. |
| 8 | | (Telephonically) |
| | | JONES WALKER LLP |
| 9 | | 811 Main Street |
| | | Suite 2900 |
| 10 | | Houston, TX 77002 |
| 11 | For Pruet Production Co.: | Jeremy L. Retherford, Esq. |
| | | (Telephonically) |
| 12 | | BALCH & BINGHAM |
| | | 1901 Sixth Avenue North |
| 13 | | Suite 1500 |
| | | Birmingham, AL 35203 |
| 14 | | |
| | | Matthew J. Ochs, Esq. |
| 15 | | (Telephonically) |
| | | HOLLAND & HART LLP |
| 16 | | 555 17th Street |
| | | Suite 3200 |
| 17 | | Denver, CO 80202 |
| 18 | For Franks Exploration Co, AEH | Jordan B. Bird, Esq. |
| | Investments, J & A Harris | (Telephonically) |
| 19 | Bundero Investment Co., | COOK, YANCEY, KING & GALLOWAY |
| | Kingston, Hughes Oil South, | 333 Texas Street |
| 20 | KMR Investments, Tommy | Suite 1700 |
| | Youngblood: | Shreveport, LA 71101 |
| 21 | | |
| | Special Alabama Counsel for | Duane A. Graham, Esq. |
| 22 | Debtors: | (Telephonically) |
| | | Benjamin Y. Ford, Esq. |
| 23 | | (Telephonically) |
| | | ARMBRECHT JACKSON LLP |
| 24 | | 11 North Water Street |
| | | 27th Floor |
| 25 | | Mobile, AL 36602 |



|   |   |   |
|---|---|---|
| 1 | For Anderson Exploration | J. Eric Lockridge, Esq. |
|   | Energy Co., TCP Cottonwood, | (Telephonically) |
| 2 | L.P., AEEC II, LLC and Sugar | KEAN MILLER LLP |
|   | Oil Properties: | 400 Convention Street |
| 3 |   | Suite 700 |
|   |   | Baton Rouge, LA 70802 |
| 4 |   |   |
|   | For McCombs Energy, Ltd. | Stephen K. Lecholop, II, Esq. |
| 5 |   | (Telephonically) |
|   |   | ROSENTHAL PAUERSTEIN SANDOLOSKI |
| 6 |   | AGATHER LLP |
|   |   | 755 East Mulberry Avenue |
| 7 |   | Suite 200 |
|   |   | San Antonio, TX 78212 |
| 8 |   |   |
|   | Also Present: | James Katchadurian |
| 9 |   | CRO, Debtors |
|   |   |   |
| 10 |   | Thane L. Huggs, Esq. |
|   |   | (Telephonically) |
| 11 |   | Stroud Petroleum Inc. |
|   |   |   |
| 12 |   | David Hilton |
|   |   | (Telephonically) |
| 13 |   | Pruet Production Co. |
|   |   |   |
| 14 |   | Randy James |
|   |   | (Telephonically) |
| 15 |   | Pruet Production Co. |
|   |   |   |
| 16 |   | Stanley Kynerd, Esq. |
|   |   | Pruet Production Co. |
| 17 |   |   |
|   |   | William R. 'Trey' Sibley, III, |
| 18 |   | Esq. |
|   |   | (Telephonically) |
| 19 |   | Rudman Partnership |
| 20 |   |   |
| 21 |   |   |

Proceedings recorded by electronic sound recording; transcript
produced by eScribers.
Transcript requested by: Stephen T. Loden
Date Ordered: 09/06/2023
Date Delivered:09/11/2023
Timeframe Requested: 7 Days
Cost Per Page: $4.85
Total Cost: $116.40


www.escribers.net | 800-257-0885

1               August 16, 2021

2               THE CLERK:  All rise.  The United States Bankruptcy

3   Court for the District of Colorado is now in session, the

4   Honorable Elizabeth E. Brown presiding.

5               THE COURT:  Please be seated.  Good morning, all.  We

6   are here in the case of Sklar Exploration Company, LLC and

7   Sklarco, LLC, with our first in-person hearing.  It's case

8   number 20-12377.  We're here on both confirmation and motions

9   to assume.

10              Could we have appearances, please.

11              MS. RILEY:  Good morning, Your Honor.  Keri Riley,

12  appearing on behalf of the debtor Sklar Exploration Company and

13  Sklarco.  And with me at counsel table today is Mr.

14  Katchadurian, the chief restructuring officer of the debtors.

15              THE COURT:  Okay.  Thank you.

16              MS. RILEY:  Thank you.

17              MR. SUZUKI:  Morning, Your Honor.  Bryce Suzuki of

18  Snell & Wilmer on behalf of East West Bank.

19              THE COURT:  Thank you.

20              MR. JOHNSON:  Good morning, Your Honor.  Chris

21  Johnson with Munsch Hardt on behalf of the official committee

22  of unsecured creditors.

23              THE COURT:  Thank you.  Were you all given the notice

24  or something that you had to wear a mask, or are you just

25  choosing to?



```
1              MR. JOHNSON:  I understood that it was required.

2              THE COURT:  Oh.

3              THE CLERK:  It is in the building.

4              MR. JOHNSON:  But if it's not --

5              THE COURT:  It is?

6              THE CLERK:  In public, there is in the building.

7              THE COURT:  Well, we haven't gotten the word.  I

8    haven't gotten the word.

9              THE CLERK:  Well, I think in the courtroom, it's left

10   to your discretion.

11             THE COURT:  Okay.  If people would prefer to take

12   them off.  You don't have to.  I'm just giving you that

13   option --

14             MR. JOHNSON:  Thank you, Your Honor.

15             UNIDENTIFIED SPEAKER:  Thank you.

16             THE COURT:  -- because I know how unpleasant it is.

17             MR. SWANSON:  Thank you, Your Honor.  Tim Swanson, on

18   behalf of the ad hoc committee of working interest owners.  And

19   it's great to see everyone in person today.

20             THE COURT:  Yes.  Thank you.

21             MR. HIRSCH:  Morning, Your Honor.  Adam Hirsch on

22   behalf of Howard Sklar and all the trustee oversees.

23             THE COURT:  Okay.  Thank you.

24             MR. HIRSCH:  And fully vaccinated.

25             THE COURT:  Me, too.
```



```
 1                    MR. SHIPPS:  Good morning, Your Honor.  Tom Shipps on
 2       behalf of the Rudman parties.
 3                    THE COURT:  Thank you.
 4                    MR. COHEN:  Good morning.  Brent Cohen on behalf of
 5       Fant Energy Limited.
 6                    THE COURT:  Thank you.  And Mr. Cohen, don't go so
 7       far -- well, you may want to for vaccination purposes or
 8       something, but you're going to be a lot of the focus, I think,
 9       of what's remaining.
10                    MR. COHEN:  We've resolved our objections, Your
11       Honor, so I won't --
12                    THE COURT:  Okay.
13                    MR. COHEN:  -- have a major role today's hearing.
14                    THE COURT:  Well, you did reach an agreement, right?
15                    MR. COHEN:  Correct.
16                    THE COURT:  And I don't know the terms of that.  So
17       somebody needs to tell me.  If you want Ms. Riley to, that's
18       all right.
19                    MR. COHEN:  Oh, we can take care of that now, Your
20       Honor, however you would like to proceed.
21                    THE CLERK:  We have people on the phone too.
22                    THE COURT:  Oh, we do.  Let's go ahead and finish
23       appearances, then.
24                    On the phone, who do we have?
25                    MS. BROWN:  Dierdre Brown on behalf --
```



```
 1               MR. TAGGART:  David Taggart (indiscernible) --
 2               THE COURT:  Okay.  It's hard because I don't see your
 3     face with your name anymore, so let's try this again because
 4     they were both speaking over each other.
 5               Do we have the old list, and I could just go down it
 6     and --
 7               THE CLERK:  I think it's the docket that I have.
 8               THE COURT:  Yeah.  Okay.
 9               THE CLERK:  It's (indiscernible) --
10               MR. TAGGART:  Your Honor, this is David Taggart.
11               MS. BROWN:  Your Honor, Dierdre Brown.
12               THE COURT:  Let me go with the -- I think I hear a
13     woman's voice, or maybe it's a faint man's --
14               MS. BROWN:  Yes.  Deirdre Brown.  The woman's voice
15     was Deirdre Brown on behalf of the Maren Silberstein Revocable
16     Trust, and we had late notice of the bankruptcy, but we
17     resolved our issues with the debtors.
18               THE COURT:  Very good.  Thank you.
19               Next.
20               MR. TAGGART:  David Taggart, Your Honor, JF Howell
21     Interests.
22               THE COURT:  Thank you.
23               MR. HUGGS:  This is Thane Huggs for Stroud Petroleum
24     Inc., Your Honor.
25               THE COURT:  Thank you.
```


www.escribers.net | 800-257-0885

1          MR. PADDOCK:  This is Robert Paddock on behalf of the

2     Strago Group.

3          THE COURT:  Thank you.

4          MS. TUCKER:  Good morning, Your Honor.  Madison

5     Tucker and Joe Bain on behalf of FPCC USA, Incorporated.

6          THE COURT:  Thank you.

7          MR. RETHERFORD:  Good morning, Your Honor.  Jeremy

8     Rutherford and Matt Ochs on behalf of Pruet Production Company.

9          THE COURT:  Thank you.

10         Okay.  Anybody else?

11         MR. GRAHAM:  Your Honor, Duane --

12         MR. BIRD:  Good morning, Your Honor.  Jordan Bird on

13    behalf of Franks Exploration Group.

14         THE COURT:  Thank you.

15         MR. GRAHAM:  Your Honor, Duane Graham, special

16    Alabama counsel for debtors.

17         THE COURT:  Okay.

18         MR. LOCKRIDGE:  (Indiscernible) Eric Lockridge --

19         MR. CORNWELL:  Good morning, Your Honor.  John

20    Cornwell also on behalf of the committee.

21         THE COURT:  Okay.  Thank you.

22         MR. LOCKRIDGE:  Your Honor, Eric Lockridge on behalf

23    of the Anderson parties.

24         THE COURT:  Mr. Lockridge, I forget, which energy

25    parties?  I missed the first word of your client.



```
 1              MR. LOCKRIDGE:  Oh, sure.

 2              THE CLERK:  Anderson.

 3              MR. LOCKRIDGE:  Sure.  The Anderson.

 4              THE COURT:  Anderson, got it.  Thank you.

 5              MR. LECHOLOP:  Steve Lecholop, Your Honor, on behalf

 6    of McCombs Energy.

 7              THE COURT:  Thank you.

 8              That everyone?  Okay.

 9              MR. HILTON:  David Hilton and Randy James with Pruet

10    Production Company.

11              THE COURT:  Okay.  Thank you.

12              MR. SIBLEY:  Trey Sibley with the Rudman Partnership

13    for the Rudman parties.

14              THE COURT:  Okay.  Thank you.

15              MR. SKELTON:  Barnet Skelton for the Rudman parties.

16              THE COURT:  Okay.  Thank you.

17              MR. KYNERD:  Stan Kynerd with Pruet Production

18    Company.

19              THE COURT:  Okay.  Anyone else?

20              MR. FORD:  Your Honor, Ben Ford, special 1 gas (ph.)

21    counsel for the debtor.

22              THE COURT:  Okay.  Do we have everyone now?

23              Okay.  Ms. Riley, do you want to begin?  I think,

24    before we talk about confirmation, I want to find out more

25    about the motions to assume.
```



1          MS. RILEY:  Certainly, Your Honor.

2          THE COURT:  Okay.

3          MS. RILEY:  So with respect to the motions to assume,

4   by and large, all of the objections filed to some of the 111

5   motions to assume that were filed have been resolved.

6   Specifically, the Rudman Partnership has withdrawn their

7   objections to the assumption motions, and there are just

8   several remaining that were filed by Fant Energy that have also

9   been resolved, at least in principle, subject to completion of

10  a stipulation resolving those.  And those objections are to the

11  North Beach participation and operating agreement, the

12  objection at docket number 1,116, Shipps Creek objection at

13  docket number 1,091, the Southeast Brooklyn Unit objection at

14  docket number 1,093, the Southwest Brooklyn Unit objection at

15  docket number 1,095, and --

16         THE COURT:  Okay.  Just go a little slower.  East

17  Southwest --

18         MS. RILEY:  Certainly.  Yes, the Southwest objection

19  at docket number 1,095, and Kingston, with the objection at

20  docket number 1,088.

21         The primary basis for the objection asserted by Fant

22  was that there was a cure obligation owed by Sklarco as a

23  result of alleged unpaid cash call advances.  Sklarco, of

24  course, disputed this, and the operator, being Sklar

25  Exploration Company, was not asserting that any cure payment



1    was owed either.

2           In principle, we have reached an agreement, pursuant

3    to which Sklarco will pay 30,000 dollars as a cure payment to

4    Pruet Production Company once Pruet Production Company takes

5    over operations of the units.  So it would be paid to the new

6    operator and then applied as a credit to the joint account of

7    the various working interest owners.

8           THE COURT:  Is this on a particular project?

9           MS. RILEY:  I believe, Your Honor, that it would be

10   allocated to either one or both of the Brooklyn units, but that

11   is one of the details that will need to be confirmed as we

12   complete a stipulation as well.

13          THE COURT:  Okay.  As I was thinking about this case

14   in the last few days and thought that we were going to have a

15   contested hearing on the motions to assume, the first question

16   that came to mind was standing.  If any one working interest

17   owner can object and bringing, essentially, a lawsuit somewhere

18   in the country and another one brings it in another, I just

19   can't imagine that that would be a good way to run an

20   agreement.

21          So that made me then leap to the thought -- and

22   standing's not an issue, obviously, anymore, because you've

23   stipulated.  But that took me to the next thought, which is

24   we're in an unusual posture with two debtors, one of which has

25   already rejected these agreements, or at least many of them.

1    And that's where I kind of need to see a full chart of who was

2    the operator on these various things.

3            And there are some cases in case law that indicate

4    that when you have two debtors, one of which is rejecting a

5    lease or a contract and the other which wants to assume it,

6    some courts have said that's okay.  You can have one assume and

7    one reject, which is strange, and that this is normally in the

8    context of a two-party dispute where it's like a lease, and

9    there's a landlord and there's a tenant.

10           And there's a bankruptcy court decision out of New

11   Mexico, and we'll put these two cites in the minutes of

12   proceeding so you can see them.  But there is a New Mexico case

13   that that says if one debtor needs out of it, that trumps the

14   other debtor's ability to assume it.  And then the other case

15   goes the other way.

16           This is a different situation in that this is a

17   multi-party contract, and it clearly has provisions in it for

18   substitution of an operator.  I acknowledge that.  And I know

19   that rejection by itself does not equal termination of a

20   contract.

21           But when you don't have an operator to say, hey,

22   we're owed cure -- I mean, we do, but there's a huge conflict

23   of interest at this point between these two debtors.  I mean,

24   it's not that they are in conflict with each other, but they

25   have allegiances to each other that might cause one not to

1    raise a you-owe-a-lot-more-in-cure-than -- that Sklarco owns a

2    lot of cure when -- so my question has to do with I would like

3    parties to brief this however shortly.  They just don't need to

4    be beautiful briefs.  We're at the tail end of this case, and

5    everybody wants to be done with it.  But if confirmation hinges

6    on Sklarco's ability to assume these contracts, then I need to

7    have a clear path for allowing that to happen when SEC has

8    already rejected many of them.

9           MS. RILEY:  And certainly, Your Honor.  Given that

10   there are only -- or were only objections pending to five of

11   the units --

12          THE COURT:  But just the fact that there is not an

13   objection, the Court still has to do its job of making sure

14   we're coloring inside the lines.  So if you'd stipulated a

15   couple of weeks ago, maybe I wouldn't be thinking this through

16   and having this problem in my mind with this.  But I do, and so

17   I need some assurance that this is okay.

18          I would imagine there is case law out there with

19   these multi-party contracts.  And so I'm hoping it'll be a

20   simple here's twelve cases, and you just cite them.  I can have

21   a memorandum of authorities.  I'd prefer if you tell me what

22   you think the cases mean and your analysis.  But I don't need a

23   beautiful brief that's thirty pages long.  In fact, I'd prefer

24   not to have that so --

25          MS. RILEY:  Certainly, Your Honor.  We can certainly



1    provide that.  I would suggest, just given that we are towards

2    the end of this case and this is one of the final issues that

3    needs to be resolved, that we would set a fairly short deadline

4    so perhaps filing briefs within a week.

5            THE COURT:  Okay.  Anybody have a -- anybody that

6    might want to also brief it -- you're not required to, but if

7    anybody else wants to, anybody need more than a week?

8            MR. JOHNSON:  No, Your Honor.  On behalf the

9    committee, a week is fine.  Thank you.

10           THE COURT:  Okay.

11           MR. SUZUKI:  That's fine with the bank as well, Your

12   Honor.

13           THE COURT:  Okay.  Great.  I just, this came up in

14   the last couple of days, and so I didn't have time to give you

15   advance notice of this.  And certainly don't mean to put you on

16   the spot without a chance to prepare to address the issue.  So

17   I think a brief is probably the best way.

18           MS. RILEY:  Certainly, Your Honor.

19           THE COURT:  Okay.  So go ahead and tell me anything

20   else you want on confirmation or otherwise now.

21           MS. RILEY:  Certainly, Your Honor.  Well, with

22   respect to confirmation, the debtors are prepared to proceed to

23   confirmation of the plan.  We recognize that, of course, this

24   issue with the assumptions has arisen.  There are properties

25   outside of those operated by SEC.  There are a number of

1    properties in which Sklarco holds an interest that SEC does not

2    operate as well.  So there are still assets that would not be

3    subject to this particular question.

4            In any event, the debtors are proceed to -- excuse

5    me, the debtors are prepared to proceed with confirmation.  We

6    have at this point resolved all of the objections to

7    confirmation, either through a withdrawal of those objections

8    or a stipulation with the various parties to plan treatment or

9    otherwise that has resulted in a resolution of the objection.

10            The plan, as proposed, does provide the best option

11   for creditors in this case and will result in them receiving

12   significantly more than they would otherwise receive in a

13   Chapter 7, particularly as to those creditors of SEC who are in

14   the estate that has less assets than the creditors of Sklarco.

15            With respect to an evidentiary basis for

16   confirmation, the debtors would offer as a proffer of evidence

17   the declaration of James Katchadurian that was filed at docket

18   number 1,417.  Mr. Katchadurian, of course, is present and

19   available for cross-examination and if called, would testify to

20   the statements and assertions in his declaration as well, which

21   I am happy to run through for the Court, if you would prefer.

22            THE COURT:  It's up to you.

23            MS. RILEY:  So specifically, Mr. Katchadurian would

24   testify that the plan does comply with all applicable

25   provisions of the Bankruptcy Code and that he has been involved



1     in this case since his appointment as the chief restructuring

2     officer.  He's familiar with the debtor, their operations, and

3     their books and records.

4          That the plan has been proposed in good faith and not

5     by any means forbidden by law, in an effort to provide

6     creditors with significantly more than they would otherwise

7     receive in a Chapter 7.  The plan itself, of course, does

8     embody a number of settlements with the various parties as

9     between the debtors and the committee, the debtors and East

10    West Bank, East West Bank and the committee, and a variety of

11    working interest owners as well.

12         He would further testify that the disclosure

13    statement, which has been approved, has been sent out to all

14    creditors with the plan and the order and ballots for

15    solicitation by Epiq, and the certificate of service for that

16    is at docket number 1,176.

17         The disclosure statement further identifies

18    individuals who will be appointed to effectuate the plan

19    following confirmation.  Specifically, Brad Walker will be

20    appointed as the independent manager to oversee the wind-down

21    liquidation and transition of SEC to new operators on the

22    various parties.  And then Mr. Walker will remain in place as

23    the independent manager as to Sklarco to oversee ongoing

24    operations as a nonoperated working interest owner going

25    forward, essentially making those payments under the plan.

1          Additionally, that all creditors who are able to vote
2    on the plan have voted to accept the plan, and all other
3    creditors are unimpaired and therefore deemed to have accepted
4    the plan.  And this is further established by the declaration
5    of Emily Young at docket number 1,261.
6          Mr. Katchadurian would further testify that there is
7    no additional reorganization or liquidation that is
8    contemplated by these plans, other than what is -- or excuse
9    me, there is no other reorganization or liquidation that is
10   foreseeable outside of what is already contemplated in the
11   plan.  Specifically, SEC will be winding down and liquidating
12   and closing after it has completed its resignation and
13   transition to new operators.  And --
14          THE COURT:  Tell me a little bit about that process.
15          MS. RILEY:  Certainly.
16          THE COURT:  Okay.
17          MS. RILEY:  So currently, ballots have been sent out
18   for all Alabama properties.  And the debtor is, I think,
19   preparing solicitation packages for replacement operators on
20   some of the adjacent states as well.  I believe that Florida
21   and Louisiana are next, followed by Texas and Mississippi.
22          There have been a number of different operators who
23   have expressed an interest in coming in as the replacement
24   operator.  And where Pruet has, of course, indicated their
25   intention to become the replacement operator, Sklarco has



1   agreed to support Pruet in their efforts to become the

2   replacement operator.  We --

3           THE COURT:  How long do you think that transition

4   will take?

5           MS. RILEY:  Well, Your Honor, with respect to the

6   transition itself, a lot of it is somewhat dependent on the

7   regulatory authorities in the various states.  So after the

8   ballots are sent out and a replacement operator is identified

9   through the selection process, then all of the --

10          THE COURT:  Let's take it in steps.  How long do you

11  think until we have replacement operators who then have to

12  approach the regulatory people?

13          MS. RILEY:  I would estimate that that process would

14  be completed either by the end of August or maybe mid-

15  September.

16          THE COURT:  Okay.  So if I end up -- after I get your

17  briefs, if I end up still troubled by the ability to assume

18  these agreements because we don't have an operator, then the

19  worst case is it's a delay of confirmation until mid-September.

20          MS. RILEY:  Potentially, yes.  Again, there is a gap

21  in time until the replacement operator takes over operations.

22  For instance, on the Brooklyn units where the voting has been

23  completed, Pruet has been designated as the successor operator,

24  and they have begun the regulatory approvals with the Alabama

25  Oil and Gas Board.  There is a set date of November 1st for



1    them to take over operations of those Brooklyn units.

2              The Brooklyn units, of course, are the more complex

3    of all of the properties operated by SEC.  So it is possible

4    that the regulatory approvals would go faster on the other

5    properties.

6              THE COURT:  Um-hum.

7              MS. RILEY:  But at least, if we're using that as a

8    metric, that would be the date by which that transition would

9    be effective.

10             THE COURT:  Okay.  So we might have new successor

11   operators identified by mid-September, but they wouldn't

12   transition in until sometime after the 1st of November.

13             MS. RILEY:  Potentially.  In some instances, it may

14   be able to be effectuated sooner.

15             THE COURT:  Um-hum.

16             MS. RILEY:  It just depends on the various approvals

17   that are required.

18             THE COURT:  Okay.  And then how long for the

19   regulatory process?

20             MS. RILEY:  So the regulatory process would be

21   completed within that time frame, ahead of the official

22   transition.  So for instance, on the Brooklyn units, between

23   now and November 1st, all of those regulatory approvals would

24   be processed and completed.

25             THE COURT:  Okay.  Anybody else have a different view



1    of that process and the timetable that's expected?

2              Mr. Suzuki.

3              MR. SUZUKI:  Your Honor, Bryde Suzuki.  I think the

4    timetable is accurate from our understanding.  The piece on

5    this that may be missing in terms of moving this through

6    confirmation perhaps a little more quickly if Your Honor gets

7    comfortable with the legal issues is that these are still being

8    operated --

9              THE COURT:  Um-hum.

10             MR. SUZUKI:  -- by SEC currently.  In my

11   understanding, it's quite typical in the oil and gas space to

12   have that transition maybe even start to go through

13   anticipating the regulatory approval.

14             So from our perspective, what we'd hate to see is

15   confirmation being delayed until November because we're waiting

16   on this because SEC continues to operate.  The transition

17   process is ongoing.  I understand the independent manager

18   representative is already working with Pruet.  He was brought

19   in as an operations person --

20             THE COURT:  Okay.

21             MR. SUZUKI:  -- on behalf of the debtors, and I

22   understand that process is going very smoothly.

23             THE COURT:  Okay.

24             MR. SUZUKI:  So from our perspective, the timeline

25   seems correct, but getting to absolute regulatory approval and



1    waiting for confirmation till that timeline, that's not

2    something we'd like to see.  We'd like to see confirmation

3    happen and have that process play out post-confirmation if

4    possible.

5              THE COURT:  Yeah.  I understand that.

6              MR. SUZUKI:  Thank you.

7              THE COURT:  I do.  And as you're doing your research,

8    maybe make the distinction of whether it's necessary to have

9    all the regulatory approvals in place versus just got to have

10   another counterparty to the contract, meaning the operator.

11             And I would like -- do you think, also, with the

12   deadline for the brief, Ms. Riley, if you could give me a chart

13   of the 111 contracts stating their contract name, the operator,

14   and that's probably about it.

15             MS. RILEY:  Certainly, Your Honor.

16             THE COURT:  Okay.  Well, I guess you could have a

17   column for where you have identified the successor operator and

18   show the Pruet ones.

19             MS. RILEY:  Certainly, Your Honor.

20             THE COURT:  Okay.

21             MS. RILEY:  We're more than happy to provide that for

22   those SEC properties.

23             THE COURT:  Okay.

24             MS. RILEY:  So with that, Your Honor, again, we do

25   believe the plan is confirmable pursuant to Section 1129(a).



1    We do believe the declaration is a sufficient evidentiary basis

2    for that confirmation.  And not anticipating these additional

3    issues, we have submitted a proposed confirmation order --

4              THE COURT:  Um-hum.

5              MS. RILEY:  -- that we did have one requested

6    modification to as well --

7              THE COURT:  Okay.

8              MS. RILEY:  -- so would need to make just very slight

9    revisions.  And that's specifically paragraph 9 to incorporate

10   stipulations as well as plans so that we're not revesting free

11   of any stipulations that are entered into.

12             THE COURT:  Okay.  Okay.  Very good.

13             MS. RILEY:  Thank you, Your Honor.

14             THE COURT:  Thank you.

15             Anybody else want to bring up anything?  You don't

16   have to.  Just giving you a chance.

17             Anybody on the phone wish to say anything?

18             Okay.  Well, I just want to commend you all.  You had

19   a lot of hard-fought disputes going in this case.  And

20   everybody came into the case with very raw feelings about what

21   had gone on or what they suspected had gone on.  And you've

22   done a Herculean effort to work your way through that.  And all

23   the various constituents and parties have really contributed

24   well to that process, I think.  So I thank you for that, and I

25   hope -- my fingers are crossed that I get over this last hurdle



1    and that we can get you a confirmation order in due course.

2            I will also tell you that we have finished our draft

3    of the opinion in the Pruet advisory action, and we're just

4    setting that aside for a couple of days so we look again and

5    make sure we get all the typos out, that sort of thing.  So by

6    the end of the week, for sure, you'll see that opinion.

7            So if there's no other business for the Court today,

8    then I'll send you on your way.  And thank you.

9            MS. RILEY:  Thank you, Your Honor.

10           THE CLERK:  All rise.  This court is now in recess.

11        (Proceedings concluded at 9:58 AM)

12

13        I certify that the foregoing is a correct transcript from

14    the record of proceedings in the above-entitled matter.

15

16

17    Dated: September 9, 2023

                                    _____
18                                  eScribers, LLC
                                    7227 North 16th Street
                                    Suite 207
19                                  Phoenix, AZ 85020

20

21

22

23

24

25

