<div style="text-align:center">

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

</div>

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 20-12377 MER |
| SKLAR EXPLORATION COMPANY, LLC ) | |
| EIN: 72-1417930 ) | Chapter 11 |
| ) | |
|     Debtor. ) | |
| ) | |
| ) | Case No. 20-12380 MER |
| SKLARCO, LLC ) | |
| EIN: 72-1425432 ) | Chapter 11 |
| ) | |
|     Debtor. ) | |
| ) | |

<div style="text-align:center">

***EX PARTE* MOTION FOR EXAMINATION OF REORGANIZED DEBTORS**
**PURSUANT TO FED.R.BANKR.P. 2004 AND L.B.R. 2004-1**

</div>

Fant Energy Limited ("Fant Energy"), by and through its undersigned attorneys, hereby moves pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 2004-1 (the "Motion") to conduct an examination of Sklar Exploration Company, LLC ("SEC") and Sklarco, LLC ("Sklarco," together, the "Reorganized Debtors"), and states as follows:

<div style="text-align:center">

**INTRODUCTION**

</div>

1.  Fant Energy is a working interest owner with a prepetition claim against SEC, representing unpaid distributions owed pursuant to various operating agreements and participating agreements, under which SEC served as operator. Since confirmation of the Debtors' Second Amended and Restated Plan of Reorganization (the "Plan") [ECF No. 1251], Fant Energy has served as a member on the Sklar Creditor Trust Oversight Committee.

122471854.1

2. The Reorganized Debtors are currently in default under the Plan as a result of their failure to pay East West Bank ("EWB") in full by September 7, 2023. Fant Energy and others have expressed an interest in acquiring substantially all of the Reorganized Debtors' assets for an amount at least sufficient to meet their Plan obligations. However, Fant Energy's efforts in this regard have been thwarted by the Reorganized Debtors, who refuse to provide the information necessary for Fant to conduct due diligence for such a transaction.

## JURISDICTION

3. This Court has jurisdiction over these Chapter 11 cases pursuant to 28 U.S.C. §§ 157(a) and (b) and 1334(a) and (b). This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O), as it is a proceeding to conduct an examination pursuant to Rule 2004. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

4. The Plan was confirmed pursuant to the Court's Order Confirming Second Amended and Restated Plan of Reorganization Dated December 18, 2020, As Amended on August 24, 2021. [ECF No. 1433]

5. The Plan was a product of intensive negotiations, assisted by a mediator, between the Reorganized Debtors, EWB and the Official Unsecured Creditors Committee (the "Committee"). As confirmed, the salient points of the Plan are:

- The allowed amount of EWB's secured claim, defined as the "EWB Secured Claim," was set at $24 million. Plan, § 1.43.

- Subsequent to Plan confirmation, 90% of Available Cash, as defined in the Plan, was to be applied to repayment of the EWB Secured Claim. *Id.*, § 5.1(b).

- On the second anniversary of the Effective Date of the Plan, September 7, 2023,

122471854.1

the remaining balance of the EWB Secured Claim "shall become due and payable." The amount then owing to EWB "shall be paid through sale of assets or refinance." *Id.*, § 5.1(d).

- The retirement of the EWB Secured Claim by asset sale or refinance "shall be considered a Monetizing Event, and the proceeds shall be distributed in accordance with Section 8.8 herein." *Id.*

- Upon the occurrence of a Monetizing Event, up to $21 million of the EWB Secured Claim is paid. The next $3 million is paid to the Creditors Trust, "flowing from the agreed allocation of the EWB Secured Claim." *Id.*, § 8.8.

6. Based on the foregoing, in the event of a refinance of the EWB Secured Claim, the following terms of the Plan are beyond dispute:

- No later than the second anniversary of the Effective Date, the remaining balance of the EWB Secured Claim, initially valued at $24 million, must be paid in full.

- Even though its claim was initially valued at $24 million, EWB agreed to accept payment of $21 million "as satisfaction in full of the EWB Secured Claim."

- The difference between $24 million and $21 million--$3 million—was allocated to the Creditor Trust.

- "Satisfaction in full of the EWB Secured Claim" could only be accomplished by payment of the $3 million to the Creditor Trust "flowing from the agreed allocation of the EWB Secured Claim."

7. To ensure a clear understanding among the Court and creditors of how the Plan would operate in the event of a refinance of the EWB Secured Claim, the Debtors and the Committee authored and filed a Brief in Support of Confirmation of Second Amended and

122471854.1

Restated Joint Plan of Reorganization ("Plan Brief"). [ECF No. 1338] EWB filed a joinder in the Plan Brief. [ECF No. 1340] The Plan Brief provides:

> Additionally, upon the occurrence of Monetizing Event, which can occur at any time after the Effective Date of the Plan but no later than two years after the Effective Date, that results in a refinancing transaction, the Creditor Trust will receive $3 million from the proceeds of the refinance. Alternatively, if there is a sale transaction, the Creditor Trust will receive the excess proceeds after payment of the then outstanding balance of the EWB Secured Claim.

Plan Brief, p. 2.

8. The foregoing represents the expression of the three principal participants in the drafting and promulgation of the Plan and the mechanics of payment to EWB and the Creditor Trust in the event of a refinancing transaction. These representations were made with the intent that the Court and the creditors would rely on them in determining whether confirmation of the Plan was appropriate. The efforts to sell the Plan were successful. As of the confirmation hearing, the creditor vote was overwhelmingly in favor of the Plan and all objections were withdrawn. *See* Declaration of James Katchadurian in Support of Confirmation of Second Amended and Restated Joint Plan of Reorganization Dated December 18, 2020. [ECF No. 1417] The Court agreed, as reflected by entry of the Confirmation Order.

9. The statements of the Debtors, Creditors Committee and EWB are in harmony with the Plan terms. Under the Plan, a refinancing transaction must pay the entire outstanding amount owed to EWB to accomplish a "full satisfaction of the EWB Secured Claim." Whatever amount is required to accomplish "satisfaction in full of the EWB Secured Claim" must necessarily generate $3 million to the Creditor Trust "flowing from the agreed allocation of the EWB Secured Claim."

10. At the status conference held on August 30, 2023, counsel for the Reorganized Debtors attempted to distance themselves from the language of the Plan and the statements made in the Plan Brief, insisting that the Creditor Trust was not entitled to $3 million in the event of a

122471854.1

refinance of the EWB Secured Claim. It was made clear that any refinancing transaction would be limited to the amount necessary to pay the remaining balance owed to EWB, without regard to the $3 million owing to the Creditor Trust "flowing from the agreed allocation of the EWB Secured Claim."

11. As a result of the failure of the Reorganized Debtors to timely retire the EWB Secured Claim, EWB issued a Notice of Default, dated September 8, 2023, attached as **Exhibit A**. EWB indicates that the amount currently outstanding is $8,652,361.86, based on a beginning balance of $21 million. Having failed to pay the EWB Secured Claim in full on the specified deadline, the Reorganized Debtors are now in default under the Plan. Moreover, they have represented that they have no intention of paying the required $3 million to the Creditor Trust in the event they are able to arrange to refinance. This is essentially an anticipatory repudiation of their obligations under the Plan. For this reason, Fant Energy seeks to explore a transaction that will enable the Reorganized Debtors to meet their Plan obligations.

12. Prior to filing this Motion, Fant Energy attempted to obtain information from the Reorganized Debtors on an informal basis, offering to execute the necessary non-disclosure agreement. The Reorganized Debtors responded by insisting that any use of disclosed information would be limited to a refinancing transaction and prohibiting use of the information for a sale of assets. In subsequent discussions with representatives of the Creditor Trust, the Reorganized Debtors have insisted that any information disclosed cannot be shared with anyone "who has expressed an interest in purchasing assets." By withholding essential information, the Reorganized Debtors have made it impossible for anyone to even negotiate the purchase of assets necessary to allow Plan compliance.

122471854.1

**REQUESTED RELIEF**

13. Fant Energy seeks an order pursuant to Rule 2004 authorizing the examination of the Reorganized Debtors for purposes of conducting the necessary due diligence on their oil and gas assets, including the issuance and service of subpoenas requiring the production of documents. A copy of the proposed document request is attached as **Exhibit B**. Depending on the quality and nature of the information produced, further examination of the Reorganized Debtors may be necessary. Fant Energy reserves the right to seek additional relief under Rule 2004.

**DISCUSSION**

14. The Plan provides that, as part of the satisfaction of the EWB Secured Claim, the Creditor Trust is to receive $3 million. This is confirmed by the language of the Plan and representations made to the Court and the creditor body in the Plan Brief.[1] The Reorganized Debtors are currently in default under the Plan. They have failed to retire the EWB Secured Claim by the specified deadline. In addition, they have made it clear that they have no intention of paying the required $3 million to the Creditor Trust in the event that the EWB Secured Claim is refinanced. As a result of the Reorganized Debtors' default under the terms of the Plan, any interested party may seek an order requiring compliance.

15. Section 1142(b) of the Bankruptcy Code specifies that:

> The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution and delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

---

[1] The Reorganized Debtors are bound by the statements made in the Plan Brief under the doctrine of judicial estoppel. *New Hampshire v. Maine*, 532 U.S. 742, 749-750 (2001) (courts have uniformly recognized that the purpose of judicial estoppel is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing position according to the exigencies of the moment."); *Liberty Mutual Fire Insurance Co. v. Woolman*, 913 F.3d 977, 990 (10th Cir. 2019).

122471854.1

16. Courts have broad authority under Section 1142(b) to order actions necessary to ensure compliance with a confirmed plan. *See In re Lacy*, 304 B.R. 349, 447 (D. Colo. 2004), *citing In re Goldblatt Bros., Inc.,* 132 B.R. 736, 741 (Bankr. N.D. Ill. 1991)); *Harlow v. Palouse Producers, Inc. (In re Harlow Prop., Inc.*), 56 B.R. 794, 798 (B.A.P. 9th Cir. 1985) (directing debtor to sell property in accordance with plan); *In re Coral Air,* 40 B.R. 979, 983–84 (D. V.I. 1984) (ordering payments to creditors from certain accounts and requiring that funds be held to implement the plan). Here, the Reorganized Debtors have always had the ability to comply with their Plan obligations. They have elected not to do so. The Court is authorized to require compliance. That may result in the sale of assets sufficient to meet the Reorganized Debtors' obligations under the Plan.

17. Rule 2004 permits examination of any entity with regard to the "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter to which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." The scope of inquiry under Rule 2004 is broad. *See In re Martino*, 211WL5856327 (Bankr. Colo. Nov. 17, 2011); *In re Blinder Robinson & Co., Inc.*, 127 B.R. 267, 275 (D. Colo. 1991).

18. Use of Rule 2004 is authorized after plan confirmation with respect to matters related to the administration of the case. *In re Cinderella Clothing Industries*, 93, B.R. 373, 377 (Bankr. E.D. Pa. 1988); *In re Express One International, Inc.*, 217 B.R. 215, 216-217 (Bankr. E.D. Tex. 1998). Here, Fant Energy's request for information regarding the assets of the Reorganized Debtors for purposes of a potential sale is necessitated by the Reorganized Debtors' default and is thus related to administration of the case.

19. Fant Energy and any parties evaluating the produced information are willing to execute non-disclosure agreements with respect to the information requested herein.

122471854.1

WHEREFORE, Fant Energy respectfully requests that the Court enter its order authorizing the examination of the Debtors pursuant to Rule 2004, including the issuance and service of subpoenas seeking the documents specified on **Exhibit B**, and for such other and further relief as is appropriate.

DATED: September 22, 2023            Respectfully submitted,

**LEWIS ROCA ROTHGERBER CHRISTIE LLP**

*/s/ Brent R. Cohen*
Brent R. Cohen, No. 11297
1601 19th Street, Suite 1000
Denver, CO 80202
Tel: (303) 623-9000
Email: bcohen@lewisroca.com

*Counsel for Fant Energy Limited*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on September 22, 2023, a true and correct copy of the foregoing *EX PARTE* MOTION FOR EXAMINATION OF REORGANIZED DEBTORS PURSUANT TO FED.R.BANKR.P. 2004 AND L.B.R. 2004-1 was electronically filed and served via CM/ECF pursuant to L.B.R. 9036-1 and 2082-1(a) and (b) and was served upon the following listed below by depositing same in the United States mail, first-class postage prepaid, addressed to the following**:**

**James B. Bailey**
jbailey@bradley.com

**Joseph Eric Bain**
jbain@joneswalker.com

**Grant Matthew Beiner**
Munsch Hardt Kopf & Harr, PC
gbeiner@munsch.com

**Jordan B. Bird**
Cook, Yancey, King & Galloway
jordan.bird@cookyancey.com

**Duane Brescia**
Clark Hill Strasburger
dbrescia@clarkhill.com

**Jeffrey S. Brinen**
jsb@kutnerlaw.com

**John Cornwell**
Munsch Hardt Kopf & Harr PC
jcornwell@munsch.com

**Shay L. Denning**
sdenning@mbssllp.com

**Benjamin Y. Ford**
RSA Tower, 27th Floor
11 North Water Street
Mobile, AL 36602

**Craig M. Geno**
Law Offices of Craig M. Geno, PLLC
cmgeno@cmgenolaw.com

**Michael J. Guyerson**
mike@kjblawoffice.com

**Christopher D. Johnson**
Munsch Hardt Kopf & Harr PC
cjohnson@munsch.com

**Lee M. Kutner**
lmk@kutnerlaw.com

**Stephen K. Lecholop, II**
Rosenthal Pauerstein Sandoloski Agather LLP
slecholop@rpsalaw.com

**Eric Lockridge**
eric.lockridge@keanmiller.com

**Armistead Mason Long**
Gordon, Arata, Montgomery, Barnett, McCollam, Duplantis & Eagan, LLC
along@gamb.law

**Ryan Lorenz**
RLorenz@ClarkHill.com

**Christopher Meredith**
Copeland, Cook, Taylor & Bush P.A.
cmeredith@cctb.com

**David M. Miller**
Spencer Fane LLP
dmiller@spencerfane.com

**Timothy C. Mohan**
tmohan@foley.com

**Paul Moss**
Byron G. Rogers Federal Building
Paul.Moss@usdoj.gov

**Kevin S. Neiman**
kevin@ksnpc.com

9

122471854.1

<div style="column-count:2">

**Jennifer Norris Soto**
Ayres, Shelton, Williams, Benson & Paine, LLC
jennifersoto@arklatexlaw.com

**Matthew J. Ochs**
mjochs@hollandhart.com

**Matthew Okin**
Okin Adams LLP
mokin@okinadams.com

**John Thomas Oldham**
joldham@okinadams.com

**Robert L Paddock**
Buck Keenan
rpaddock@buckkeenan.com

**Robert Padjen**
Robert.padjen@coag.gov

**Jeremy L Retherford**
Balch & Bingham
jretherford@balch.com

**Brian Rich**
Berger Singerman LLP
brich@bergersingerman.com

**Keri L. Riley**
klr@kutnerlaw.com

**Timothy Michael Riley**
Hopping Green & Sams
timothyr@hgslaw.com

**Katherine A Ross**
katherine.ross@usdoj.gov

**Michael D Rubenstein**
Liskow and Lewis
mdrubenstein@liskow.com

**Craig K. Schuenemann**
craig.schuenemann@bryancave.com

**Ryan Seidemann**
Louisiana Department of Justice
seidemannr@ag.louisiana.gov

**Thomas H Shipps**
Maynes, Bradford, Shipps & Sheftel, LLP
tshipps@mbssllp.com

**Barnet B Skelton, Jr**
Barnet B. Skelton, Jr.,
barnetbjr@msn.com

**Jim F Spencer, Jr**
Watkins & Eager PLLC
jspencer@watkinseager.com

**Bryce Suzuki**
Bryce Suzuki
bryce.suzuki@bclplaw.com

**Timothy M. Swanson**
tim.swanson@moyewhite.com

**David R Taggart**
Bradley Murchison Kelly & Shea
dtaggart@bradleyfirm.com

**Glenn Taylor**
Copeland, Cook, Taylor & Bush P.A.
gtaylor@cctb.com

**Madison M. Tucker**
Jones Walker LLP
mtucker@joneswalker.com

**Amy Vazquez**
Jones Walker LLP
avazquez@joneswalker.com

**Deanna L. Westfall**
Office of the Colorado Attorney General
deanna.westfall@coag.gov

</div>

*s/Jennifer Eastin*
LEWIS ROCA ROTHGERBER CHRISTIE LLP

122471854.1

10

# EXHIBIT A



**BENJAMIN Y. FORD**
*Direct Dial:* 251.405.1310
*Email:* byf@ajlaw.com

RSA Tower, 27th Floor
11 North Water Street
Mobile, Alabama 36602

*Mailing Address:*
Post Office Box 290
Mobile, Alabama 36601

*Phone:* 251.405.1300
*Fax:* 251.432.6843

January 5, 2021

Fant Energy Ltd.
P.O. Box 55205
Houston, TX 77255

Re:   Notice of Default

Dear Sir or Madam:

I previously wrote to you on behalf of Sklar Exploration Company L.L.C. ("SEC") regarding Fant Energy Limited's ("Fant") unpaid joint interest billing ("JIB") obligations for SEC-operated wells, units and/or prospects. Specifically, Fant has continually failed to pay its JIBs within the time set forth in the COPAS provisions of its relevant operating agreement(s) with SEC. As of the date of this letter, Fant has still not satisfied its outstanding indebtedness. **Accordingly, you are hereby notified that Fant is in default under the operating agreement(s).**

Fant currently owes SEC **$83,712.40**, plus interest in accordance with the operating agreement(s). A summary statement listing Fant's unpaid invoices is attached hereto. If Fant's debt is not paid to SEC within fourteen (14) days from the date of this letter, SEC plans to commence efforts to foreclose its lien and sell Fant's interest in accordance with the operating agreement(s). During this process, SEC will suspend all of Fant's revenue payments. SEC reserves all other available rights and remedies.

Sincerely,

ARMBRECHT JACKSON LLP

By: _____
Benjamin Y. Ford

BYF/chs
Enclosure
Doc. 1227317

| 01/04/2021 02:10 pm | | | Sklar Exploration Co., L.L.C. | | | | Page 1 |
| Company-Acct:00SEC-0301 | | | Aged Trial Balance as of 01/04/2021 | | | | |

| Inv Date | Invoice# | Invoice Description | Inv Amount | Current | 30 days | 60 days | 90 days |
|---|---|---|---:|---:|---:|---:|---:|
| FANE01 | | Fant Energy Limited | (713)316-1195 | | | | |
| | | P.O. Box 55205 | | | | | |
| | | Houston, TX  77255 | | | | | |
| 03/05/2020 | 1EDWREL | Release Cash Call on Edwards Family Trust 26-6 #1 dated 09-11-19 | 28,460.19- | | | | 28,460.19- |
| 03/31/2020 | 1ABB01/924 | Abbyville Plant | 6.30 | | | | 6.30 |
| 03/31/2020 | 1BAT03/924 | Bates 2-2 #1 | 5,269.19 | | | | 5,269.19 |
| 03/31/2020 | 1BEA01/924 | North Beach Prospect | 20.48 | | | | 20.48 |
| 03/31/2020 | 1BEA02/924 | N Beach Prospect Pipeline/Plt | 36.46 | | | | 36.46 |
| 03/31/2020 | 1BOW01/924 | Bowdoin Dome Prospect | 21.74 | | | | 21.74 |
| 03/31/2020 | 1BRO04/924 | Southeast Brooklyn Oil Unit | 14,685.96 | | | | 7,005.32 |
| | 03/31/2020 | Prepayment Application-Multi | 7,680.64- | | | | |
| 03/31/2020 | 1BRO05/924 | Southwest Brooklyn Oil Unit | 25,142.12 | | | | 24,937.82 |
| | 03/31/2020 | Prepayment Application-Multi | 204.30- | | | | |
| 03/31/2020 | 1CAR04/924 | Mt. Carmel Prospect | 148.98 | | | | 148.98 |
| 03/31/2020 | 1CAS01/924 | Castleberry Prospect | 102.21 | | | | 102.21 |
| 03/31/2020 | 1CED38/924 | CCL&T 24-1 #1 | 269.49 | | | | 269.49 |
| 03/31/2020 | 1CED68/924 | CCL&T 13-11 #1 | 1,448.91 | | | | 1,448.91 |
| 03/31/2020 | 1CED69/924 | CCL&T 18-13#1 | 1,538.52 | | | | 1,538.52 |
| 03/31/2020 | 1CED72/924 | CCL&T 13-15 #1 ST | 1,252.65 | | | | 1,252.65 |
| 03/31/2020 | 1CED75/924 | CCL&T 2-15 #1 | 403.24 | | | | 403.24 |
| 03/31/2020 | 1CIN01/924 | Cindy Lou Cloyd #1; U HOSS SUK | 3.69 | | | | 3.69 |
| 03/31/2020 | 1CRA17/924 | Craft-Mack 17-4 #1 | 775.55 | | | | 775.55 |
| 03/31/2020 | 1EDW01/924 | Edwards Family Trust 26-6 #1 | 2,178.42 | | | | 257.60 |
| | 03/31/2020 | Prepayment Application-289-W | 1,920.82- | | | | |
| 03/31/2020 | 1ESC01/924 | Escambia Prospect | 99.41 | | | | 99.41 |
| 03/31/2020 | 1ESC02/924 | Escambia Prospect Pipeline | 4,873.08- | | | | 4,873.08- |
| 03/31/2020 | 1FAV01/924 | John T. Favell etal #1 | 203.04 | | | | 203.04 |
| 03/31/2020 | 1FIS01/924 | Fishpond Oil Unit | 4,434.35 | | | | 4,434.35 |
| 03/31/2020 | 1HAM02/924 | Craft-Hamiter 20-11 #1 | 2,678.29 | | | | 2,678.29 |
| 03/31/2020 | 1KEY02/924 | Albert Key etal #1 | 227.43 | | | | 227.43 |
| 03/31/2020 | 1LIT02/924 | Little Cedar Creek Oil Unit #2 | 28,577.69 | | | | 28,577.69 |
| 03/31/2020 | 1LIT03/924 | Little Cedar Creek Oil Unit IV | 6,028.10 | | | | 6,028.10 |
| 03/31/2020 | 1MER01/924 | JC Merritt #1; L HOSS RA SUC | 9.46 | | | | 9.46 |
| 03/31/2020 | 1PAC01/924 | North Pachuta Prospect | 558.41 | | | | 558.41 |
| 03/31/2020 | 1PER02/924 | Perry Ranch 30-7 #1 | 120.19 | | | | 120.19 |
| 03/31/2020 | 1PIT01/924 | Pitnic Limited 16-3 #1 | 5,375.15 | | | | 5,375.15 |
| 03/31/2020 | 1POL02/924 | Polk Estate etal 13-5 #1 | 2,350.66 | | | | 2,350.66 |
| 03/31/2020 | 1SPR01/924 | Spring Lake Prospect | 37.42 | | | | 37.42 |
| 03/31/2020 | 2FIN02/924 | Findley 2-5 #1 | 41.12 | | | | 41.12 |
| 03/31/2020 | 2HAM01/924 | Hamiter 17-16 | 297.56 | | | | 297.56 |
| 03/31/2020 | 2HAR09/924 | Hart 17-16 #1 (Fletcher Pet) | 39.37 | | | | 39.37 |
| 03/31/2020 | 2LIT01/924 | Little Cedar Creek Unit(Pruet) | 196.01 | | | | 196.01 |
| 03/31/2020 | 2PAT09/924 | Pate 3-9 #1 (Fletcher Pet) | 173.37 | | | | 173.37 |
| 09/14/2020 | CC308-20 | Cash Call- CCL&T 2-11 #1 Workover | 7,110.68 | | | | 7,110.68 |
| 10/13/2020 | CC309-10 | Cash Call -CCL&T 34-12 #1, Southeast Brooklyn Oil Unit | 4,066.23 | | | 4,066.23 | |
| 10/13/2020 | CC309-W9 | Cash Call - CCL&T 3-4 #1, Southeast Brooklyn Oil Unit | 4,259.86 | | | 4,259.86 | |
| 12/21/2020 | CC308-21 | Cash Call - Graddy 34-10 #1 | 6,663.72 | 6,663.72 | | | |
| **TOTAL: Fant Energy** | | | **83,712.40** | **6,663.72** | **0.00** | **8,326.09** | **68,722.59** |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 01/04/2021 02:10 pm | | Sklar Exploration Co., L.L.C. | | | | | Page 2 |
| Company-Acct:00SEC-0301 | | Aged Trial Balance as of 01/04/2021 | | | | | |

| Inv Date | Invoice# | Invoice Description | Inv Amount | Current | 30 days | 60 days | 90 days |
|---|---|---|---|---|---|---|---|
| 1 | Total | | 83,712.40 | 6,663.72 | 0.00 | 8,326.09 | 68,722.59 |
| | % | | | 8.0 % | 0.0 % | 9.9 % | 82.1 % |
| | # of Invoices | | 39 | 1 | 0 | 2 | 36 |

# EXHIBIT B

## DEFINITIONS

1. "Sklarco" means Sklarco, LLC.

2. "Wells" means oil and gas wells wherever located in which Sklarco is the owner of an interest of any kind.

3. "Oil and Gas Properties" shall mean the leasehold interests, working interests, operating rights, permits, licenses and/or other similar interests in which Sklarco owns an interest covering or relating to the Wells.

4. "Agreement" shall mean (a) all contracts and agreements that in any way relate to the Wells, including the oil, gas and mineral leases, joint operating agreements, exploration agreements, production, storage, treatment, transportation, processing, purchase, sale or other disposal of oil and gas from or in connection with the Wells, (b) governmental permits and licenses of Sklarco (other than bonds) relating to the Wells to the extent such permits and licenses are transferable, (c) easements and rights of way used or held for use in connection with the Wells, and (d) amendments, ratification or extensions of the foregoing.

5. "Document" and/or "documents" means any writing or other form of record (including any writing or data stored on electronic storage devices) within the scope of the word "document" as that term is used in Rules 26 and 34 of the Federal Rules of Civil Procedure (as incorporated by FED. R. BANKR. P. 7026 and 7034) and includes (without limitation) all types of written, typed, printed, recorded or graphic material, however produced or reproduced, of any kind and description, and whether an original, master, duplicate or copy, including (but not limited to) papers, notes of conversations, contracts, electronic mail, computer files, agreements, drawings, telegrams, tape recordings, communications, letters, memoranda, handwritten notes, reports, studies, working papers, corporate records, minutes of meetings (including board or committee meetings), notebooks, bank deposit slips, bank checks, canceled checks, diaries, diary entries, appointment books, calendars, photographs, transcriptions or sound recordings of any type of personal or telephone conversations or negotiations, notes or records of meetings or conferences, or things similar to any of the foregoing, including any data, information or statistics contained within any data storage modules, tapes, discs, or other memory device, or other information retrievable from storage systems, including (but not limited) to computer generated reports and print-outs or data compilations from which information can be obtained and translated, if necessary. Any copy containing (or having attached) any alterations, notes, comments, or other materials not included in the originals or copies referred to in the preceding sentence shall be deemed a separate document within the foregoing definition.

6. "Relating to" or "relate to" means discussing, describing, pertaining to, containing, analyzing, evaluating, studying, recording, memorializing, reporting on, commenting on, reviewed in conjunction with, evidencing, setting forth, considering, recommending, or constituting, in whole or in part.

7. The term "Communication" means, without limitation, any correspondence, memoranda, voice mail, e-mail, contact, discussion, or other kind of written, oral, or electronic

exchange between two or more persons, including, but not limited to, all telephone conversations, face-to-face conversations, meetings, visits, and conferences.

## INSTRUCTIONS

A. Each request shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive. Any request propounded in the singular shall also be read as if propounded in the plural and vice versa. Any request propounded in the present tense shall also be read as if propounded in the past tense and vice versa.

B. The documents responsive to these requests shall be produced as they have been kept in the usual course of business or shall be organized and labeled to correspond with the enumerated categories in this request. If produced as kept in the usual course of business, all documents (other than electronically stored information) shall be produced with a copy of the file folder (if any) in which the documents are kept or maintained.

C. If you object to the production of any document sought by these document requests, whether in whole or in part, on the grounds of the attorney-client privilege, work product immunity, or other privilege or immunity, as much of the document concerned as to which no claim of privilege or immunity is made shall be produced. With respect to documents or portions of documents for which a claim of privilege or immunity is made, state the following for each document:

(i) a description of the type of document withheld from production (e.g., memorandum, letter, e-mail);

(ii) the date shown on the document;

(iii) the author of the document and, if applicable, the name of the person(s) to whom it was addressed and/or to whom it was copied;

(iv) a general description of the subject matter of the document that is sufficiently specific to permit a fair evaluation of the merits of Recovery Energy's reasons for not producing the document; and

(v) the reason the document was withheld from production.

D. If any document responsive to these requests has been lost, destroyed, or otherwise disposed of, such document is to be identified as completely as possible, including the following information: contents; author(s); recipient(s); sender(s); copied recipient(s) (indicated or blind); date prepared and received; date of disposal; manner of disposition; person(s) last in possession of the document; and person(s) disposing of the document.

E. Unless otherwise specified in an individual document request, the scope of the documents requested herein shall be limited to 3 years preceding the Petition Date.

2

## DOCUMENT REQUESTS

1. All documents containing a current list of Sklarco's Wells, and with respect to each Well designated:

    a. Whether such Well produces oil or gas, or both;
    b. The current operator of the Well;
    c. The unit, field and location of the Well;
    d. Whether the Well is designated as producing, shut-in or service.

2. All operating Agreements and amendments encumbering any interest of Sklarco in the Wells and/or the Oil and Gas Properties;

3. All oil and gas leases owned by Sklarco or in which Sklarco owns an interest (producing and non-producing).

4. All assignments whereby Sklarco acquired its interests in the Wells (if applicable), and assignments of interests in Wells by Sklarco to third parties.

5. All other Agreements (and amendments thereo) encumbering the interest of Sklarco in the Wells and/or Oil and Gas Properties, including farm-in and farmout agreements, gas balancing agreements, participation agreements, gathering and processing agreements, signed division orders, equipment rental agreements (if applicable).

6. All marketing Agreements reflecting whether the production from the Wells is being marketed and paid by the operator.

7. All seismic licenses owned by Sklarco relating to the Wells.

8. All notices to cancel, rescind or reform any Agreement relating to the Wells.

9. All documents reflecting gross working and net revenue interests of Sklarco in each of the Wells.

10. All title opinions that relate to the interest of Sklarco in the Wells, including but not limited to preliminary title and division order opinions.

11. All documents relating to whether the gross and revenue interest of Sklarco in any Well includes an allocation of cost and revenue not directly attributable to the interest of Sklarco, such as an allocation of cost attributable to a third party (eg., carrying of non-consent interests in a Well).

12. All documents relating to historical accounting data reflecting the payment of revenues to Sklarco and payment of expenses by Sklarco.

13. All documents relating to the current status of payables owed by Sklarco on joint interest billings.

14. All documents relating to proposals for operations affecting the Wells made by Sklarco or a third party.

15. All documents reflecting as balancing information applicable to the Wells.

16. All land, engineering, accounting, regulatory and litigation files and records of Sklarco relating to the Wells and/or Oil and Gas Properties.

17. All organizational documents of Sklarco.

18. All documents relating to claims (including governmental and administrative claims) currently asserted against Sklarco affecting any of the Wells, or which may affect the Wells, including all litigation relating to the Wells. This will include (i) claims filed against an operator that may affect the Wells, and (ii) spills, discharges, pollutants and hazardous substances from the Wells.