**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero**

| | |
|---|---|
| In re:<br><br>Sklar Exploration Company, LLC,<br>Debtor. | Case No. 20-12377 MER<br>Chapter 11 |
| In re:<br><br>Sklarco, LLC,<br>Debtor | Case No. 20-12380 MER<br>Chapter 11<br><br>**Jointly Administered Under<br>Case No. 20-12377 MER** |

**ORDER GRANTING MOTION TO RECONSIDER**

THIS MATTER comes before the Court on the Motion for Reconsideration of Order Granting Motion for 2004 Examination ("Motion to Reconsider") filed by the Reorganized Debtors, Sklar Exploration Co., Inc. and Sklarco LLC (collectively "Reorganized Debtors") and the response filed by Fant Energy Limited ("Fant").

On September 22, 2023, Fant filed a Motion for 2004 Examination ("2004 Motion") seeking authority to examine the Reorganized Debtors pursuant to Fed. R. Bankr. P. 2004.[1]  Fant seeks documents from the Reorganized Debtors relating to their current oil and gas assets.  Fant asks for this information because it is interested in buying those assets and is hoping to perform "due diligence" prior to making an offer.  Reorganized Debtors argue this is an improper use of Rule 2004, especially in the post-confirmation context.

Rule 2004 provides, in relevant part, that the scope of an examination "may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right of discharge."[2]  The scope of Rule 2004 is usually considered quite broad.  However, that scope becomes more circumscribed in the post-confirmation context because there is no longer any bankruptcy estate and the Court's jurisdiction

---

[1] ECF No. 2014.  Unless otherwise noted, all references to "Section," "§," "Bankruptcy Code" and "Code" and "Rules" refer to the U.S. Bankruptcy Code, 11 U.S.C. § 101, *et seq.* and the Federal Rules of Bankruptcy Procedure, Rule 1001, *et seq.*

[2] Fed. R. Bankr. P. 2004(b).

becomes more limited.[3]  As such, a Rule 2004 examination must be limited to issues that a bankruptcy court "still has the power to entertain . . .  [t]hat is, it is restricted to the administration of the case post-confirmation."[4]

In this case, the Reorganized Debtors confirmed their chapter 11 plan (the "Plan") over two years ago.[5]  The Plan provided for the creation of a "Creditor Trust," funded with certain assets of the Debtors.  All unsecured creditors received a beneficial interest in the Creditor Trust in exchange for their claims.  The Creditor Trust and the Creditor Trustee are tasked with receiving and distributing certain funds to trust beneficiaries in accordance with the Plan.  Fant, who formerly held an unsecured claim against the Debtors, is a beneficiary of the Creditor Trust.

Fant argues its 2004 Motion is related to administration of the post-confirmation case because it was "necessitated by the Reorganized Debtors' default" of the Plan.[6]  This Court has not determined, and has not been asked to determine, whether the Reorganized Debtors are in default of their Plan obligations.  Nor has any party sought enforcement of the Plan under 11 U.S.C. § 1142.  Nevertheless, Fant contends the Reorganized Debtors have breached § 5.1(d) of the Plan.  That section describes the treatment of the secured claim held by East West Bank ("EWB").  Section 5.1(d) states that "[t]he EWB Secured Claim shall become due and payable on [September 7, 2023], which amount shall be paid through sale of assets or refinance of the EWB Secured Claim."[7]  It further provides the Reorganized Debtors "shall make an election no later than [April 7, 2023] either to pursue a refinancing based on a commercially reasonable likelihood that a refinancing will occur, or to market and sell the Reorganized Debtors' assets."[8]  Whether the Reorganized Debtors elect a sale or refinance or allow foreclosure, that event is defined to be a "Monetizing Event" with the proceeds to be distributed in accordance with § 8.8 of the Plan.  Section 8.8 describes a four-level "waterfall" for the proceeds, which are to be paid: "[f]irst to EWB up to $21 million, less any [payments already received];" and "[s]econd to the Creditor Trust up to the amount of $3 million flowing from the agreed allocation of the EWB Secured Claim […];" and third and fourth in a manner not relevant here.

The Reorganized Debtors have represented to this Court they timely elected to pursue a refinancing of EWB's claim—not a sale of assets.  Reorganized Debtors admit they have not yet completed a refinance and have therefore not yet paid off the EWB Secured Claim, even though that debt is now due and payable.  Regardless, when the refinance is complete, Reorganized Debtors indicate they intend to honor the waterfall

---

[3] *In re Cinderella Clothing Indus., Inc.*, 93 B.R. 373, 377-78 (Bankr. E.D. Pa. 1988).

[4] *Id*. at 377.

[5] ECF No. 1251.

[6] 2004 Motion, ECF No. 2014, at 7.

[7] Plan, § 5.1(d).

[8] *Id*.

2

provision. Reorganized Debtors anticipate proceeds reaching only the first level of the waterfall, *i.e.*, payment to EWB. There will likely be no proceeds paid to the Creditor Trust.[9]

Fant argues the Reorganized Debtors defaulted under the Plan by not paying EWB's claim by the September 7 deadline and that the Reorganized Debtors' statements about possible payments or lack thereof of the Creditor Trust amount to an "anticipatory repudiation" of the Plan. Fant contends it wants to offer to buy the Reorganized Debtors' assets to "enable the Reorganized Debtors to meet their plan obligations."[10]

Although the Court need not decide the issue for purposes of the Motion to Reconsider, the Court has doubts about Fant's interpretation of § 5.1(d) and § 8.8 of the Plan, neither of which appear to guarantee payment of $3 million to the Creditor Trust. Fant's argument is based largely on language contained in a supporting brief, not the Plan itself. Regardless, § 5.1(d) gives the Reorganized Debtors—not the Creditor Trust—sole discretion to elect between a refinance and a sale of assets. Nothing in the Plan requires the Reorganized Debtors to consider sale offers once it has made the election to seek a refinance. In fact, § 5.1(d) specifically states the Creditor Trust "does not have the ability or authority to veto the decisions made by the Reorganized Debtor."[11] Nor does the Plan require the Reorganized Debtors to obtain Court approval of their election. Given these provisions, Fant's desire to pursue a sale of assets is irrelevant to the post-confirmation case. Neither Fant nor the Creditor Trust have the power to force a sale of assets.

Once the Reorganized Debtors complete a refinance, they will have to distribute the proceeds in accordance with the waterfall provision. Whether the Reorganized Debtors ultimately honor the waterfall provision in the Plan is an issue for another day. If, at some point in the future, the Creditor Trust believes the Reorganized Debtors have not honored the waterfall provision, the Creditor Trust may pursue remedies for that breach. Fant, as a mere beneficiary of the Creditor Trust, is not the appropriate party to seek such relief.[12]

For these reasons, the Reorganized Debtors' Motion to Reconsider is GRANTED. Fant's Rule 2004 Motion is DENIED. This Court's prior order granting the Rule 2004 Motion (ECF No. 2015) is hereby VACATED.

---

[9] *See* Reorganized Debtors' Status Report, ECF No. 1993, ¶ 34.

[10] 2004 Motion, ECF No. 2014, at 5.

[11] Plan § 5.1(d).

[12] *See* Creditor Trust Agreement, ECF No. 1247, § 3.3 ("No Creditor Trust Beneficiary shall have any right by virtue of any provision of this Creditor Trust Agreement to institute any action or proceeding, at law or in equity, against any person, including the Creditor Trustee, with respect to the Trust Assets.").

3

Dated: October 23, 2023

BY THE COURT:

Michael E. Romero, Judge
United States Bankruptcy Court